# No. 25-2271

## In the United States Court of Appeals
## For the Third Circuit

In re: National Football League Players' Concussion
Injury Litigation

Robin Cornish and Carleen Hastings

Plaintiffs – Appellants

v.

National Football League and NFL Properties LLC

Defendants – Appellees

On Appeal from the United States District Court for the
Eastern District of Pennsylvania, Case No. 2:12-md-02323

### Brief of Appellants

David J. Campbell

THOMPSON & HORTON LLP

8300 N. MoPac Expressway
Suite 220
Austin, TX 78759
(512) 615-2350
**Counsel for Appellants**

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS ..................................................................iv

PRELIMINARY STATEMENT ...........................................................1

JURISDICTION ...................................................................................3

ISSUE..................................................................................................3

RELATED CASES AND PROCEEDINGS .........................................4

STATEMENT OF THE CASE ............................................................6

   I.   Relevant Factual Background...................................................6

     A. The Settlement Agreement imposed no deadline for
       absent class members to obtain a Qualifying Diagnosis
       of Death with CTE.................................................................. 6

     B. The Notices sent to absent class members did not
       provide notice of any deadline to obtain a Qualifying
       Diagnosis of Death with CTE. ............................................... 8

       1. The Notices provided absent class members with the
         deadline to opt out of the Settlement Agreement.............. 8

       2. The Long-Form Notice did not disclose any deadline for
         a Qualifying Diagnosis of Death with CTE........................ 8

       3. The Summary Notice did not disclose any deadline for
         a Qualifying Diagnosis of Death with CTE........................ 9

     C. After the Opt Out Deadline (and without notice to
       absent class members) a deadline for CTE diagnoses
       was added to an Amended Settlement Agreement. ............ 10

II.    Timeline of the CTE Diagnosis Language Before and After the Opt Out Deadline..................................................12

III.    Procedural Background.........................................................13

SUMMARY OF THE ARGUMENT....................................................16

ARGUMENT .................................................................................18

I.  The District Court erred by denying Appellants' claims for monetary relief. ....................................................... 18

A. The District Court erred because the plain language of the Settlement Agreement imposes no deadline to obtain a CTE diagnosis. ........................................................ 20

1.  The relevant provision of the Settlement Agreement imposes no deadline for obtaining a post-mortem CTE diagnosis. ............................................................. 21

2.  No other provisions of the Settlement Agreement create a CTE diagnosis deadline........................................ 25

3.  The Special Master creates a conflict where none exists. ................................................................. 27

B. The District Court also erred because if there was a diagnosis deadline, Appellants satisfied the deadline based on the NFL's own statements. ................................... 29

CONCLUSION & PRAYER ................................................................32

COMBINED CERTIFICATIONS ........................................................34

# TABLE OF CITATIONS

Page

**Cases**

*Allied Erecting & Dismantling, Co. v. USX Corp.,*
249 F.3d 191 (3d Cir. 2001) ...................................................... 19

*Am. Eagle Outfitters v. Lyle & Scott Ltd.,*
584 F.3d 575 (3d Cir.2009) ...................................................... 19

*Glenn Distribs. Corp. v. Carlisle Plastics, Inc.,*
297 F.3d 294 (3d Cir. 2002) ...................................................... 19

*Hansberry v. Lee,*
311 U.S. 32 (1940) ...................................................... 20

*In re Baby Prods. Antitrust Litig.,*
708 F.3d 163 (3d Cir. 2013) .............................................. 20, 29

*In re Cendant Corp. Prides Litig.,*
233 F.3d 188 (3d Cir. 2000) ...................................................... 18

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.,*
706 F.3d 217 (3d Cir. 2013) ...................................................... 18

*In re Diet Drugs Prods. Liab. Litig.,*
431 F.3d 141 (3d Cir. 2005) ...................................................... 20

*In re Diet Drugs Prods. Liab. Litig.,*
543 F.3d 179 (3d Cir. 2008) ...................................................... 18

*In re: National Football League Players' Concussion Injury Litigation (NFL II),*
923 F.3d 96 (3d Cir. 2019) .............................................. 5, 19

*Oddi v. Ford Motor Co.*,
　234 F.3d 136 (3d Cir. 2000) ....................................................... 18

*Ram Constr. Co. v. Am. States Ins. Co.*,
　749 F.2d 1049 (3d Cir. 1984) .................................................... 19

*Van Gemert v. Boeing Co.*,
　590 F.2d 433 (2d Cir. 1978) ...................................................... 20

## Statutes

28 U.S.C. § 1291 ............................................................................. 3

28 U.S.C. § 1332(d) ........................................................................ 3

## Other Authorities

Arenn Faye Carlose, et al., *From brain collections to modern brain banks: A historical perspective*, ALZHEIMER'S & DEMENTIAL: TRANSLATIONAL RESEARCH & CLINICAL INTERVENTIONS 5, 52, 52–59 (2019) ................................................................... 24

Patterson, *The Interpretation and Construction of Contracts*, 64 Colum. L. Rev. 833 (1964) .................................. 19

# PRELIMINARY STATEMENT

This appeal arise from an order denying Appellants' claims for monetary relief under the NFL-concussion settlement. A.3–4, 27. [1] Appellants are absent class members who submitted claims as representative claimants on behalf of their deceased loved ones who played in the NFL before they died.

Appellants each obtained a post-mortem diagnosis of Chronic Traumatic Encephalopathy ("CTE") from a board-certified neuropathologist who reviewed the Players' brain tissue, but the District Court affirmed the denial of their claims based on the erroneous conclusion that the Settlement Agreement required the CTE diagnosis to occur on or before April 22, 2015. A.3–4, A.26. In doing so, the District Court erred because the Settlement Agreement imposed no deadline for CTE diagnoses, and the notices

---

[1]    Citations to the Appendix are shown as "A.[page number]." Volume I of the Appendix contains A.1–29. Volume II of the Appendix contains A.30–1902. Volume III of the Appendix contains A.1903–3129. Volume IV of the Appendix contains A.3130–4977.

sent to absent class members confirmed there was no CTE diagnosis deadline.

Appellants did not opt out of the Settlement and obtained the CTE diagnoses based on the language in the Settlement Agreement, which imposed no deadline on the CTE diagnoses. Only after the opt out deadline had passed did the NFL Parties attempt to smuggle a CTE diagnosis deadline into the settlement agreement. But that deadline — which is now being used to deny Appellants' claims — could not be added to the Settlement Agreement after the opt out deadline and without notice to Appellants and the other absent class members. For that reason alone, the District Court erred.

Additionally, in the alternative, even if the CTE diagnosis deadline could be considered, the NFL Parties previously represented that the date of the Qualifying Diagnosis for Death with CTE is "the date of the Player's death, even though the diagnosis is not made until after the Player dies." A.3314. This would mean that even if there was a CTE diagnosis deadline, Appellants' diagnoses would have been timely because the Player's

deaths each occurred before April 22, 2015. For that additional reason, the District Court erred in denying Appellants' claims.

## JURISDICTION

The District Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(d). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## ISSUE

Did the District Court err by denying Appellants' claims for monetary relief under the NFL-concussion settlement when it is undisputed that Appellants obtained a post-mortem CTE diagnosis by a board-certified neuropathologist?

# RELATED CASES AND PROCEEDINGS

- *In re: National Football League Players' Concussion Injury Litigation (Goldberg, Persky & White, P.C., Appellant)*, No. 24-2839, 2025 WL 2465746 (3d Cir. Aug. 27, 2025)

- *In re: National Football League Players' Concussion Injury Litigation (Byron Cuthbert & Associates, LLC, et al., Appellants)*, No. 24-1910, 2025 WL 1639402 (3d Cir. June 10, 2025)

- *In re: National Football League Players' Concussion Injury Litigation (Yvonne Sagapolutele, et al., Appellants)*, No. 23-1585, 2025 WL 560631 (3d Cir. Feb. 20, 2025)

- *In re: National Football League Players' Concussion Injury Litigation (Thrivest Specialty Funding, LLC, Appellant)*, No. 22-2381, 2023 WL 7099271 (3d Cir. Oct. 27, 2023)

- *In re: National Football League Players' Concussion Injury Litigation (Alain Kashama, Appellant)*, No. 22-2441, 2022 WL 17974457 (3d Cir. Dec. 28, 2022)

- *In re: National Football League Players' Concussion Injury Litigation (Amon Gordon, Appellant)*, No. 19-2753, 2021 WL 5505402 (3d Cir. Nov. 24, 2021)

- *In re: National Football League Players' Concussion Injury Litigation (NFL V)*, 826 F. App'x 136 (3d Cir. 2020)

- *In re: National Football League Players' Concussion Injury Litigation (NFL IV)*, 962 F.3d 94 (3d Cir. 2020)

- *In re: National Football League Players' Concussion Injury Litigation (NFL III)*, 814 F. App'x 678 (3d Cir. 2020)

- *In re: National Football League Players' Concussion Injury Litigation (John Lorentz, Appellant)*, 790 F. App'x 391 (3d Cir. 2019)

- *In re: National Football League Players' Concussion Injury Litigation (NFL II)*, 923 F.3d 96 (3d Cir. 2019)

- *In re: National Football League Players' Concussion Injury Litigation (NFL I)*, 821 F.3d 410 (3d Cir. 2016)

- *In re: National Football League Players' Concussion Injury Litigation*, 775 F.3d 570 (3d Cir. 2016)

# STATEMENT OF THE CASE

## I.  Relevant Factual Background

Appellants chose not to opt out of the NFL's Settlement based on the Settlement Agreement that was approved before the opt out deadline and the notices they received about the Settlement Agreement. The Settlement Agreement imposed no deadline on Appellants (or other absent class members) to obtain a Qualifying Diagnosis of Death with CTE. And the notices sent to the absent class members told them they could obtain a Qualifying Diagnosis at any time during the 65-year term of the Settlement Agreement's Monetary Award Fund. Based on the post-mortem CTE diagnosis each Appellant received from a board-certified neuropathologist, Appellants' claims should not have been denied.

### A.  The Settlement Agreement imposed no deadline for absent class members to obtain a Qualifying Diagnosis of Death with CTE.

The Settlement Agreement the District Court approved before the opt-out deadline imposed no deadline on Class Members seeking to obtain a Qualifying Diagnosis of Death with CTE.  *See* A.904. It only required that absent class members obtain a post-

mortem diagnosis of CTE "for Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification" and it required the diagnosis be a "post-mortem diagnosis by a board-certified neuropathologist":

> (f)    A Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order, through a post-mortem diagnosis by a board-certified neuropathologist of CTE.

*Id.* Although the Settlement Agreement stated that the Retired NFL Player must have died before the date of the Preliminary Approval and Class Certification Order, the Settlement Agreement did not impose any deadline for the "post-mortem diagnosis." *Id.*

On July 7, 2014, the district court signed the Preliminary Approval and Class Certification Order. A.1278–86. The district court's order required notice of the Settlement Agreement be provided to class members and included drafts of the Long-Form Notice and Summary Notice. A.1282, 1287–1307.

At this time, Carleen Hastings and Robin Cornish were absent class members — neither was represented by counsel. *See* A.3076–83, 3101–07.

**B. The Notices sent to absent class members did not provide notice of any deadline to obtain a Qualifying Diagnosis of Death with CTE.**

The Notices that were sent to the absent class members did not provide notice of any deadline to obtain a Qualifying Diagnosis of Death with CTE. A.1498–1520. To the contrary, the Notices expressly told absent class members that a qualifying diagnosis "may occur at any time until the end of the 65-year term of the Monetary Award Fund." A.1509.

**1. The Notices provided absent class members with the deadline to opt out of the Settlement Agreement.**

The Notices provided to absent class members included a link they could use to review the Settlement Agreement. A.1514, 1519. The Notices told absent class members they would be bound by the Settlement Agreement unless they opted out by October 14, 2014. A.1515, 1519, 1520.

**2. The Long-Form Notice did not disclose any deadline for a Qualifying Diagnosis of Death with CTE.**

The Long-Form Notice described no deadline for obtaining a CTE diagnosis. *See* A.1500–29. Quite the opposite. The Long-Form

Notice expressly told absent class members that a Qualifying Diagnosis of Death with CTE merely required that CTE be "diagnosed after death." A.1510. The Notice expressly represented that a Qualifying Diagnosis may occur *at any time* until the end of the 65-year term of the Monetary Award Fund:



A.1509.

At the end of the Long-Form Notice, Class Members were provided a list of "Important Dates." A.1519. Nowhere in this list of important dates is there any deadline to obtain a Qualifying Diagnosis of Death with CTE. *Id.*

### 3. The Summary Notice did not disclose any deadline for a Qualifying Diagnosis of Death with CTE.

The Summary Notice was a single page summary of the Settlement Agreement. A.1520. It also did not disclose any deadline for obtaining a post-mortem diagnosis of CTE. *Id.* To the contrary, the Summary Notice told absent class members that the

Settlement provides monetary awards for CTE "diagnosed after death." *Id.* The Summary Notice contained the opt-out deadline (October 14, 2014) in bold typeface, but it contained no similar deadline to obtain a post-mortem CTE diagnosis. *See id.*

### C. After the Opt Out Deadline (and without notice to absent class members) a deadline for CTE diagnoses was added to an Amended Settlement Agreement.

Months later — and without notice to absent class members — language was added to an Amended Settlement Agreement that purported to impose a CTE diagnosis deadline. A.2805. This change was made in February 2015, four months after the opt out deadline and without notice to Class Members. *See id.*

Unlike the Settlement Agreement approved before the opt out deadline and described in the Summary Notice and Long-Form Notice, which simply required a post-mortem diagnosis of CTE made by a board-certified neuropathologist, the NFL Parties added language to an amended settlement agreement that imposed a new deadline for the CTE diagnosis:

> A Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died

prior to the date of the **Final** ~~Preliminary~~ Approval **Date** ~~and Class Certification Order~~, through a post-mortem diagnosis **made** by a board-certified neuropathologist ~~of CTE~~ **prior to the Final Approval Date**.

*Compare id. with* A.904 (edits shown in boldface and strikethrough font).  No notice was sent to absent class members notifying them of this significant and prejudicial change to the Settlement and they were not offered an opportunity to opt out after this substantial change was made.

## II. Timeline of the CTE Diagnosis Language Before and After the Opt Out Deadline

June 25, 2014    *Settlement Agreement (A.904)*

5. **<u>Death with [CTE]</u>**

For Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order, a post-mortem diagnosis of CTE made by a board-certified neuropathologist.

July 9, 2014    *Long Form Notice (A.1509)*

**14. WHAT DIAGNOSES QUALIFY FOR MONETARY AWARDS?**

Monetary awards are available for the diagnosis of . . . Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund.

July 9, 2014    *Summary Notice (A.1520)*

The Settlement provides . . . [m]onetary awards for diagnoses of . . . certain cases of [CTE] diagnosed after death.

Oct. 14, ,2014    *Opt Out Deadline (A.1514, 1519)*

Feb. 13, 2015    *Amended Settlement Agreement (A.2805)[2]*

### 5. **Death with [CTE]**

For Retired NFL Football Players who died prior to the **Final Approval Date**, a post-mortem diagnosis of CTE made by a board-certified neuropathologist **prior to the Final Approval Date, provided that a Retired NFL Football Player who died between July 7, 2014 and the Final Approval Date shall have until 270 days from his date of death to obtain such a post-mortem diagnosis**.

## III.   Procedural Background

In 2017, Appellants filed their claims with the settlement administrator. A.3076–3116.

Two years later, in June 2019, Appellants were notified that their claims were being denied. A.3309, 3422. Appellants immediately filed an administrative appeal of that denial

---

[2] The boldfaced and red language is added to highlight the language added after the opt out deadline.

explaining that their claims should not be denied. A.3310–3421, 3452–3547.

One year later, in June 2020, the District Court remanded Appellants' claims because their claims had been denied, in part, for "failure to provide proof that a physician examined the deceased's brain-tissue." A.4243. But Appellants had both provided records showing that "a doctor personally examined the slides with brain tissue of the deceased player(s)." *Id.* When the Special Master again denied the claims, A.4249, Appellants filed objections to the Special Master's Decision. A.3577–3681, 3690–3821, 3845–50.

Three years later, the District Court again remanded Appellants' claims to the Special Master. A.3867–70. Appellants again briefed why their claims should not be denied. A.3879–4269, 4290–4717, 4786–4809. The Special Master then issued a new decision, which again denied Appellants' claims. A.4862–4905. Appellants again timely objected. A.4908–29.

Another two years passed and then, in June 2025, the District Court "reviewed the Special Master's legal conclusions *de novo*"

and affirmed the Special Master's most-recent decision denying Appellant's claims. A.1–2. So, after eight years in the settlement administration process that resulted in two remands from the District Court, Appellants' claims were denied. *Id.* Appellants timely appealed to this Court. A.27.

# SUMMARY OF THE ARGUMENT

Appellants are entitled to the benefit of the bargain provided by the Settlement Agreement that they agreed to when they did not opt out of the Settlement. That Settlement Agreement required Appellants to obtain a "post-mortem diagnosis by a board-certified neuropathologist." A.904. Which they did. The Settlement Agreement did not impose any deadline for this post-mortem CTE diagnosis, and the notices sent to Appellants and other absent class members confirmed there was no impending deadline.

Only after the opt out deadline had passed did the NFL attempt to add a diagnosis deadline for this post-mortem CTE diagnosis that would have been difficult (if not impossible) for Appellants and other absent class members who did not yet have a post-mortem CTE diagnosis to satisfy if they had been provided notice of this change. But they weren't provided notice of this change. If that deadline had been in the Settlement Agreement and the accompanying notices, there would have been no reason for Appellants and absent class members to remain in the settlement class. They would have opted out.

Instead of opting out of the Settlement, Appellants each filed claims and obtained a post-mortem diagnosis by a board-certified neuropathologist. Despite their compliance with the terms of the Settlement Agreement, their claims have been denied.

The District Court erred in denying Appellants' claims based on a CTE diagnosis deadline that was not in the Settlement Agreement or disclosed in any of the notices. The NFL's attempt to add this diagnosis deadline after the opt out deadline had passed should be categorically condemned.

Additionally, even if a CTE diagnosis deadline could be added, the NFL's public representations would prevent Appellants' claims from being denied because the NFL has publicly stated that the diagnosis date for a Death with CTE diagnosis is "the date of the player's death, even though the diagnosis is not made until after the Player dies." A.3417. Thus, even if there were a diagnosis deadline, it would not allow Appellants' claims to be denied because the Players' deaths occurred before the diagnosis deadline.

# ARGUMENT

## I. The District Court erred by denying Appellants' claims for monetary relief.

The standard of review is *de novo*[3] because the District Court's order is based on a *de novo* review of the Special Master's interpretation of the Settlement Agreement. A.3.

This Court has recognized that settlement agreements are generally interpreted according to "basic contract principles." *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 706 F.3d 217, 223 (3d Cir. 2013) (quoting *In re Cendant Corp. Prides Litig.,* 233 F.3d 188, 193 (3d Cir. 2000)). Under basic contract interpretation principles, when the terms of a written contract are clear and unambiguous, the contract's meaning "must

---

[3] Moreover, even if an abuse of discretion standard applied, it would not matter because a district court abuses its discretion when it errs in its conclusions of law or in applying the law to the facts. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000) (explaining that it is abuse of discretion when a district court's decision rests on an "errant conclusion of law or an improper application of law to fact"); *see also In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d 179, 184 n.10 (3d Cir. 2008) (same).

be determined from the four corners of the contract." *Id.*; *see NFL II*, 923 F.3d at 107 ("The District Court's conclusion as to how the settlement agreement applies to the assignment agreements is an issue of construction that is properly reviewed de novo.").[4] The Court has often referred to this process of interpreting the legal meaning and impact of an unambiguous contract as "contract construction." *See, e.g., NFL II*, 923 F.3d at 107.[5]

---

[4] *See also Glenn Distribs. Corp. v. Carlisle Plastics, Inc.,* 297 F.3d 294, 300 (3d Cir. 2002); *Allied Erecting & Dismantling, Co. v. USX Corp.,* 249 F.3d 191, 201 (3d Cir. 2001); *see Ram Constr. Co. v. Am. States Ins. Co.,* 749 F.2d 1049, 1052–53 (3d Cir. 1984) (explaining that an interpretation of what a contract means is "freely reviewable" and discussing Patterson, *The Interpretation and Construction of Contracts*, 64 Colum. L. Rev. 833, 835 (1964)); *see also Am. Eagle Outfitters v. Lyle & Scott Ltd.,* 584 F.3d 575, 587 (3d Cir. 2009) ("When the words are clear and unambiguous, the intent of the parties must be determined from the express language of the agreement." (internal quotation marks omitted)).

[5] *See also Ram Constr. Co. v. Am. States Ins. Co.,* 749 F.2d 1049, 1052–53 (3d Cir. 1984) (explaining that "contract construction" relates to the legal determination of the contract's meaning, as a matter of law).

## A. The District Court erred because the plain language of the Settlement Agreement imposes no deadline to obtain a CTE diagnosis.

A class settlement agreement can only impose requirements on absent class members that are explicit in the settlement agreement. *See Hansberry v. Lee*, 311 U.S. 32, 42 (1940); *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d 141, 145 (3d Cir. 2005); *see also* Fed. R. Civ. P. 23(a)(4); *see also Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n.15 (2d Cir. 1978). Only explicit terms of the settlement can be enforced against absent class members because absent class members are forced to rely on the explicit terms of the settlement agreement to "make informed decisions on whether they should take steps to protect their rights." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013); *see Hansberry*, 311 U.S. at 42.

The Settlement Agreement contains no explicit diagnosis deadline for CTE. *See* A.904. Indeed, the Settlement Agreement clearly demonstrates there is no diagnosis deadline and merely requires a "post-mortem diagnosis by a board-certified neuropathologist" for "Retired NFL Football Players who died

prior to the date of the Preliminary Approval and Class Certification Order." A.904. That language limits the Qualifying Diagnosis to players who died before a certain date, but it imposes no restrictions on the timing of the CTE diagnosis other than the requirement that it be "post-mortem." *Id.* That plain-language reading of the Settlement Agreement is consistent with the notices that were sent to Appellants and other absent class members.

The District Court erred in affirming the Special Master's denial of Appellant's claim because the Special Master's interpretation of the Settlement Agreement strayed from the plain language of the agreement without any convincing basis for doing so. *See* A.20–22.

### 1.    The relevant provision of the Settlement Agreement imposes no deadline for obtaining a post-mortem CTE diagnosis.

The Special Master initially reasoned that because the Settlement Agreement limited Death with CTE diagnoses to players who died "prior to the date of the Preliminary Approval and Class Certification Order," the Settlement Agreement must have intended for that same deadline to apply to the CTE

diagnosis. *See* A.20. But that makes no sense based on logic, grammar, or common sense.

As to logic, the Special Master made an "intuitive connection" that is not logical and is nothing more than an *a priori* assumption. *See id.* By assuming that the date must apply to *both* the Player's death and the post-mortem CTE diagnosis, the Special Master put the cart before the horse and assumed the very thing that is in dispute — the existence of a deadline for the CTE diagnosis. *See* A.20. Logically there is no reason to assume that there must be a deadline for the post-mortem diagnosis. And the notices sent to Appellants and other absent class members confirmed that a diagnosis could occur *at any time* until the end of the 65-year term of the Monetary Award Fund. A.1509.

As to grammar, the Special Master indicated that by using "the function word" "through," the Settlement Agreement must have intended for the diagnosis to "be subject to the same cutoff date" as the deadline for the Players' deaths. A.20. That makes no grammatical sense. The word "through" introduces a second condition to the Qualifying Diagnosis of Death with CTE. The

primary clause of the sentence imposes the first condition (i.e., that the Player "died prior to the date of the Preliminary Approval and Class Certification Order") and the secondary clause imposes a second condition (i.e., that the Qualifying Diagnosis must be provided "through" a post-mortem diagnosis by a board-certified neuropathologist). *See* A.904. Nothing in the grammar of the sentence indicates that the second condition (i.e., the diagnosis) must occur by the deadline set for the first condition (i.e., the Player's death). If the Settlement Agreement had intended the cutoff date to apply to the diagnosis there are any number of ways the sentence could be rewritten to do so, but using the word "through" does not get you there grammatically.

Finally, as to common sense, the relevant language in the Settlement Agreement itself indicates that the CTE diagnosis will occur after the cutoff date for Players' deaths, which means the two "events" obviously occur on *different* dates. When a Player dies, a CTE diagnosis by a board-certified neuropathologist does not automatically materialize. Board-certified neuropathologists are not easy to find and the process of having brain tissue prepared for

a diagnosis may not happen without some delay. Although the Special Master opined that "most post-mortem diagnoses are proximate to death," that is not true of post-mortem examinations by a board-certified neuropathologist examining brain tissue for a CTE diagnosis. Indeed, it is common for a post-mortem CTE diagnosis by a neuropathologist to occur at some point long after death — days, weeks, months, or even years later.[6]

In a document as important as a Settlement Agreement involving a class settlement of this size and scope, if the Settlement Agreement was intended to include a deadline for post-mortem CTE diagnoses, the Settlement Agreement would have stated the deadline, not implied a deadline based on intuition or assumptions. The Special Master's attempt to intuit a CTE diagnosis deadline is inconsistent with the plain language of the Settlement Agreement.

---

[6]  *See, e.g.*, Arenn Faye Carlose, et al., *From brain collections to modern brain banks: A historical perspective*, ALZHEIMER'S & DEMENTIAL: TRANSLATIONAL RESEARCH & CLINICAL INTERVENTIONS 5, 52, 52–59 (2019) (describing the development of modern brain banks where brain tissue is stored for decades to allow for later testing of brain tissue for purposes of post-mortem diagnoses of neurological disorders).

### 2. No other provisions of the Settlement Agreement create a CTE diagnosis deadline.

The Special Master also concluded that "other parts" of the Settlement Agreement — specifically Exhibit B-4 to the Settlement Agreement, which includes a provision defining "Subclass 2" — indicate that the "CTE diagnoses would be proximate to death." A.20–21; *see also* A.993–95. But this conclusion is also unconvincing.

Looking at the Settlement Agreement's definition of Subclass 2, the Special Master explained that a member of Subclass 2 will have a claim if the Player "died prior to the Approval Date 'and' who 'received' a post-mortem diagnosis of CTE." A.20–21. As with the previously-discussed provision, this language sets a deadline (i.e., the Approval Date) for the Player's date of death without setting any deadline for receiving a post-mortem diagnosis of CTE. By using the word "and", the text simply recognizes that there are two conditions to a Death with CTE Qualifying Diagnosis, the Player must be a player "[1] who died prior to the date of the Preliminary Approval and Class Certification Order *and* [2] who

received a post-mortem diagnosis of CTE." A.995. The word "and" does not indicate, in any way, that the date provides a deadline for both the player's death and the post-mortem diagnosis. To the contrary, the text of this provision indicates that the date clearly applies only to the date of the player's death.

Next, the Special Master focuses on the word "received" and says that shows that the diagnosis must have occurred in the past. But as an initial matter, it is not clear that by using the word "received," the Settlement Agreement intended to exclude any post-mortem CTE diagnosis that had not yet been finalized. *See* A.995. In any case, the Special Master's discussion of Subclass 2 ignores Subclass 1, and Subclass 1 includes all class members (including Representative Claimants and Derivative Claimants) who did not receive a diagnosis prior to the date of the Preliminary Approval and Class Certification Order. *Compare* A.20 *with* A.994–95; *see also* A.1016 (explaining that Subclass 1 includes "Death with CTE" class members). Nothing in the Settlement Agreement prevents members of Subclass 1, who were not

diagnosed prior to the Preliminary Approval date, from recovering monetary awards under the Settlement Agreement.

### 3. The Special Master creates a conflict where none exists.

The Special Master candidly recognized that adding the diagnosis deadline to the Settlement Agreement creates some consistency problems with the notices provided to class members. A.21–22. Recognizing that absent class members had been told that a "Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund," the Special Master wrote that this "language is confounding" and "seemingly muddied the waters." A.21. But this language is only "confounding" if you assume the Settlement Agreement implied some sort of CTE diagnosis deadline. The language is only a problem for the Special Master because it shows that his interpretation of the Settlement Agreement is an attempt to fit a square peg in a round hole.

On the other hand, Appellants' starightforward interpretation of the Settlement Agreement without attempting to forcefully intuit a diagnosis deadline into the text is consistent with both the

plain language of the Settlement Agreement and the notices sent to class members.

*     *     *

By limiting a Qualifying Diagnosis of Death with CTE to Players who died before a certain date, the Settlement Agreement provided the NFL Parties with a benefit that capped their liability. Having done so, the Settlement Agreement naturally saw no need to provide a deadline for class members to obtain a post-mortem CTE diagnosis. Instead, the Settlement Agreement simply required that the post-mortem CTE diagnosis be provided by one of the handful of board-certified neuropathologists in the country.

Based on the plain language of the Settlement Agreement, Appellants' claims, which each included a post-mortem CTE diagnosis by a board-certified neuropathologist who examined brain tissue, should not have been denied. For this reason alone, the District Court erred and its order should be reversed.

**B. The District Court also erred because if there was a diagnosis deadline, Appellants satisfied the deadline based on the NFL's own statements.**

The District Court also erred because if there was a diagnosis deadline, the NFL's own representations to class members establish that the date of the diagnosis is "the date of the Player's death, even though the diagnosis is not made until after the Player dies." A.3417; *see* A.4923–24.

Absent class members are entitled to receive clear notice about the terms of settlement agreements because they rely on that notice to figure out what they need to do to protect their rights." *In re Baby Prods. Antitrust Litig.*, 708 F.3d at 180.

Here, absent class members who chose not to opt out of the Settlement had to make decisions about how to obtain a post-mortem CTE diagnosis. For example, how could they obtain brain tissue from their deceased family member? Where could they find a board-certified neuropathologist to provide a diagnosis? And if they found a board-certified neuropathologist, how could they get the brain tissue to the neuropathologist for a CTE diagnosis. For the reasons described above, it was reasonable for absent class

members to determine that there was no impending CTE diagnosis deadline based on the plain language of the Settlement Agreement and the other notices sent to absent class members. However, if there was any doubt, the NFL's public FAQ responses confirmed that there was no imminent deadline for obtaining a CTE diagnosis.

In the FAQ's prepared by the NFL and posted on the Settlement website, the NFL represented to absent class members that regardless of when the CTE diagnosis is made, the date of the diagnosis is the date of the Player's death:



**93. How is the date of a Qualifying Diagnosis determined?**

The physician making a Qualifying Diagnosis of a Retired NFL Football Player must determine and verify the date on which that Qualifying Diagnosis was made. This date is important under the Settlement Agreement. It affects the amount of a Monetary Award, because the younger a Player is at the time of the Qualifying Diagnosis, the larger the award.

The diagnosing physician uses his or her professional medical judgment in deciding when the Player had the conditions amounting to a Qualifying Diagnosis under Exhibit 1 to the Settlement Agreement. There are some basic rules about this:

(a) *Death with CTE:* For these claims, the date of the Qualifying Diagnosis is the date of the Player's death, even though the diagnosis is not made until after the Player dies. The Monetary Award is based on the Player's age when he died.

A.3417.

Based on this language, any deadline regarding the Qualifying Diagnosis for Death with CTE would be satisfied if the Player died before that deadline and a post-mortem diagnosis of CTE was obtained from a board-certified neuropathologist. A.3417.

In this case, it is undisputed that Appellants obtained a post-mortem diagnosis of CTE from a board-certified neuropathologist. Additionally, the Appellants' deceased family members who were NFL players died before the date of the Preliminary Approval and Class Certification Order. *See* A.3078, 3103. Thus, the date of each Qualify Diagnosis of Death with CTE is before the date of the Preliminary Approval and Class Certification Order.

* * *

The Court should reverse the District Court's decision because the plain language of the Settlement Agreement imposed no deadline for obtaining a post-mortem CTE diagnosis, and the notices sent to class members confirm that a Qualifying Diagnosis can be obtained at any time during the life of the Monetary Award Fund. But even if that were not the case, the NFL's representation that the date of a Qualifying Diagnosis of Death with CTE "is the

date of the Player's death, even though the diagnosis is not made until after the Player dies," A.3417, means that the date of Appellants' post-mortem diagnoses of CTE satisfy any diagnosis deadline the NFL has attempted to add.

## CONCLUSION & PRAYER

The District Court erred in denying Appellants' claims under the settlement agreement based on a CTE diagnosis deadline that is not in the Settlement Agreement and is inconsistent with the notices sent to Appellants and other absent class members. The plain language of the Settlement Agreement merely requires a post-mortem CTE diagnosis by a board-certified neuropathologist.

The District Court erred by denying Appellants' claims. This Court should reverse that order, render judgment that Appellants' claims should not have been denied, and remand for calculation and payment of the appropriate monetary award.

Respectfully submitted,

*/s/ David J. Campbell*
David J. Campbell
Texas State Bar No. 24057033
Thompson & Horton LLP
8300 N. MoPac Expressway
Suite 220
Austin, TX 78759
Telephone: (512) 615-2350
Facsimile: (713) 583-8884
dcampbell@thompsonhorton.com

**Counsel for Plaintiffs-Appellants**

# COMBINED CERTIFICATIONS

I, the undersigned, certify the following:

1.    I am a member of the Bar of the United State Court of Appeals for the Third Circuit.

2.    The brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(i)'s type-volume limitation because it contains 5,046 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

3.    The brief complies with Federal Rule of Appellate Procedure 32(a)(5)'s typeface requirements and Federal Rule of Appellate Procedure 32(a)(6)'s typestyle requirements because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

4.    The text of the electronic and paper versions of the foregoing brief are identical.

5.    A virus check was performed on this brief by SentinelOne version 22.3.2.373 and no virus was indicated.

6.    On October 8, 2025, the foregoing brief and Appendix Volume I were electronically filed with the Clerk of Court using

the CM/ECF System, which will send notice of such filing to all

registered users.

    Dated: October 8, 2025

                          Respectfully submitted,

                          */s/ David J. Campbell*
                         David J. Campbell
                         **Counsel for Appellants**