No. 25-2271

# UNITED STATES COURT OF APPEALS

# FOR THE THIRD CIRCUIT

―――――――――――

ROBIN CORNISH AND CARLEEN HASTINGS,
*Plaintiffs-Appellants,*

v.

NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC,
*Defendants-Appellees,*

―――――――――――

On Appeal from the United States District Court
for the Eastern District of Pennsylvania, No. 2:12-md-02323 (Brody, A.)

―――――――――――

**APPENDIX VOLUME I (pp. 1-29)**

―――――――――――

DAVID J. CAMPBELL

THOMPSON & HORTON LLP

8300 N. MOPAC EXPRESSWAY, SUITE 220

AUSTIN, TEXAS 78759

(512) 615-2350

October 8, 2025

# TABLE OF CONTENTS

## VOLUME I (BOUND WITH BRIEF)

Order, Dkt. No. 12001, Feb. 24, 2023 ........................................................................1

Order, Dkt. No. 12469, June 9, 2025 ........................................................................3

Special Master Decision, Dkt. No. 12469-1, June 9, 2025.......................................5

Notice of Appeal, Dkt. No. 12479, July 7, 2025.....................................................27

### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br>ALL CLAIMS LISTED BELOW. | **Hon. Anita B. Brody** |

### <u>ORDER</u>

**AND NOW**, this 24th day of February, 2023, it is **ORDERED** that the Objections of the following Class Members are **DENIED** because the claims packages are insufficient:

1. SPID 950011814

2. SPID 950011815

3. SPID 950011818

4. SPID 950011819

5. SPID 950011820

6. SPID 950011821

7. SPID 950011822

8. SPID 950013154

9. SPID 950013174

10. SPID 950013176

11. SPID 950013178

12. SPID 950013179

13. SPID 950013223

14. SPID 950013403

15. SPID 950013520

16. SPID 950013523

17. SPID 950013608

18. SPID 950015171

It is further **ORDERED** that the Objections of the following Class Members are **REMANDED** to the Special Master. The Special Master is instructed to return the claims to the Claims Administrator to further determine the sufficiency of the claims packages:

1.  SPID 950013395

2.  SPID 950012548


BY THE COURT:


_____s/ANITA B. BRODY, J._
ANITA B. BRODY, J.

2

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : | No. 2:12-md-02323-AB |
|  | : | MDL No. 2323 |
|  | : | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: | : : |  |
| SPID No. 950012548 (R.C.) SPID No. 950013395 (C.H.) | : : : |  |

## SETTLEMENT IMPLEMENTATION DETERMINATION

R.C. and C.H. each sought a sought monetary award from this class action settlement as a Representative Claimant of a deceased Retired NFL Football Player. The Claims Administrator denied their claims because of untimely diagnoses. The Special Master affirmed those determinations in a consolidated opinion issued on October 7, 2023, which I attach here.

R.C. and C.H. each objected to the Special Master's determination. I have reviewed the Special Master's legal conclusions *de novo* and find that they fully resolve the questions presented in the claimants'

objections. I adopt the Special Master's thorough and well-reasoned decision denying the claimants' appeal.

**AND NOW**, this 9th day of June, 2025, it is **ORDERED** that the Objections to the Special Master's Decision (Doc. ID Nos. 291993 & 291995) are **OVERRULED** and that the Special Master's consolidated decision dated October 7, 2023 upholding the determinations of the Claims Administrator is **AFFIRMED**.

<u>s/ANITA B. BRODY, J.</u>
ANITA B. BRODY

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : | No. 2:12-md-02323-AB

MDL No. 2323 |
| THIS DOCUMENT RELATES TO: APPEALS OF REPRESENTATIVE CLAIMANTS ██████ AND ████████ REGARDING DENIALS OF MONETARY AWARDS | : : : : : : : : | **Hon. Anita B. Brody** |

## INTRODUCTION

I consolidate two Representative Claims for decision: one by ██████, and the other by ██████. Both act for players who died in 2008. Years later—at some time after April 2015—both players were posthumously diagnosed with Chronic Traumatic Encephalopathy (CTE) after a neuropathologist examined slides containing their brain tissue.

After various procedural detours, the Claims Administrator denied both Claims solely because they were untimely under Section 6.3(f) of the Amended Class Action Settlement Agreement.[1] Ms. ██████ and Ms. ██████ have appealed, raising two core arguments.[2]

First, they assert that they have satisfied the diagnostic deadline for a Qualifying Diagnosis of Death with CTE, because a "diagnosis" occurs at death. Relying on the plain text of the Amended Settlement Agreement, I disagree and find that a Diagnosis of Death with CTE occurs when the neuropathologist conducts his or her medical examination and reaches a judgment.

---

[1] *See* Amended Settlement Agreement, Section 6.3(f) ("A Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the Final Approval Date, through a post-mortem diagnosis made by a board-certified neuropathologist prior to the Final Approval Date, provided that a Retired NFL Football Player who died between July 7, 2014 and the Final Approval Date shall have until 270 days from his date of death to obtain such a post-mortem diagnosis."). The Final Approval Date was April 22, 2015.

[2] In this round of briefing, Claimants make a third argument: that Judge Brody has already determined their claims to be timely, having somehow "agreed" with their earlier objection. ██████ Doc. 284510 at 1; ██████ Doc. 284543 at 1. This did not happen; Counsel has misread the Court's remand Order. To avoid more delay, I have resolved their arguments on the merits, after having given all parties a chance to file supplemental briefing on the interpretative issues at the heart of the Appeal. I also re-read Claimants' previous briefing, which made the nature of their contentions crystal clear.

Second, even if the Amended Settlement Agreement's deadline has passed, Claimants maintain that the unamended Settlement Agreement contained no such rule. The absence of an original deadline would mean (they argue) that it violated due process to amend the Agreement without distributing new class notice and permitting objections. After extensive review, I conclude that the unamended Settlement Agreement would also have imposed a CTE diagnosis deadline.

I therefore deny the Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND



Claimants' paths to today's consolidated decision are similar. Ms. ███ acts on behalf of her late husband, ███, a Retired NFL Football Player, who died at age 40 on August 23, 2008. ███ Doc. 199406.[3] On August 24, 2008, an autopsy confirmed that Mr. ███ cause of death was "sudden adult death with evidence of hypertensive heart disease." Doc. 199407. Ms. ███ meanwhile, stands in for her late son, ███, also a Retired NFL Football Player, who died on October 15, 2008 at age 38. ███ Doc. 199437. An autopsy, performed the next day, determined the cause of death to be dilated cardiomyopathy. ███ Doc. 199440.

Years passed, and eventually the Court approved the Amended Class Action Settlement Agreement and this claim appeal process. Unpacking Ms. ███ and Ms. ███ arguments on appeal requires a short detour into the Settlement's procedural history, specifically around the deadline for a Qualifying Diagnosis of Death with CTE.

### 1. **Relevant Settlement History**

The parties initially moved for approval of a Settlement in January 2014.[4] The Court denied that motion without prejudice,[5] and the parties negotiated toward a revised agreement over several months.[6] They then sought preliminary approval for a (first) Revised Settlement Agreement, dated June 24, 2014 (the "June Agreement"). The June Agreement provided, at Section 6.3(f), that a "Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order [i.e., July 7, 2014], through a post-mortem diagnosis by a board-certified neuropathologist of CTE."[7]

---

[3] For clarity, I have identified documents by which Claimant's portal they come from.

[4] ECF No. 5634, Motion of Proposed Class Counsel for an Order: (1) Granting Preliminary Approval of the Class Action Settlement Agreement, etc. (Jan. 6, 2014); ECF No. 5634-2, Proposed Class Action Settlement (Jan. 6, 2014).

[5] ECF No. 5658, Order Denying Plaintiffs' Motion for Preliminary Approval and Class Certification Without Prejudice (Jan. 14, 2014).

[6] ECF No. 6509, Memorandum Accompanying Order Granting Final Approval of the Class Action Settlement (Apr. 22, 2015), at 11 (explaining that after the denial of preliminary approval in January 2014, "[f]ive more months of arm's-length, hard fought negotiations followed").

[7] ECF No. 6087, Class Action Settlement as of June 25, 2014 (Jul. 7, 2014), at 32.

The Injury Definition for Death with CTE provided: "For Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order, a post-mortem diagnosis of CTE made by a board-certified Neuropathologist."[8]

Because a Qualifying Diagnosis for CTE under the June Agreement could only come post-mortem, the only Claimants would be Representative ones, belonging to "Subclass 2": "Representative Claimants of deceased Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to death or who died prior to the date of the Preliminary Approval and Class Certification Order and who received a post-mortem diagnosis of CTE."[9]

On June 25, 2014, moving for approval of this Agreement, proposed Class Counsel wrote twice that "Death with CTE" required a "post-mortem diagnosis prior to the date of the Preliminary Approval and Class Certification Order."[10]

Additionally, proposed Class Counsel moved for approval of the draft Long- and Short-Form Notices,[11] which were expressly incorporated into the June Agreement.[12] The draft Short-Form Notice provided that Monetary Awards were available for "diagnoses of ALS (Lou Gehrig's disease), Alzheimer's Disease, Parkinson's Disease, Dementia and *certain cases of chronic traumatic encephalopathy or CTE (a neuropathological finding) diagnosed after death*."[13]

In the draft Long-Form Notice, the section entitled "What are the benefits of the Settlement?" included the following description:

> Monetary awards for diagnoses of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) and Death with CTE prior to [Date of Preliminary Approval Order].[14]

At the same time, the draft Long-Form Notice later noted:

> Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death

---

[8] *Id.* at 110.

[9] *Id.* at 126. Subclass 1, for Claimants who had not been diagnosed as of the date of the preliminary approval, did not mention CTE at all. *Id.* at 125.

[10] ECF No. 6073-5, Memorandum of Law in Support of Motion of Proposed Class Counsel for an Order: (1) Granting Preliminary Approval of the Class Action Settlement Agreement, etc. (Jun. 25, 2014), at 14, 25.

[11] ECF No. 6073, Motion of Proposed Class Counsel for an Order . . . Approving the Dissemination of Class Notice.

[12] *See* ECF No. 6073-2, at 129 ("This Order and Judgment incorporates and makes a part hereof: (a) the Settlement Agreement and exhibits filed with the Court on June 25, 2014, including definitions of the terms used therein and (b) the Settlement Class Notice Plan and the Summary Notice, both of which were filed with the Court on June 25, 2014.").

[13] ECF No. 6073-3, at 86 (emphasis added).

[14] ECF No. 6073-2, at 147 (emphasis in original).

with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis *may occur at any time until the end of the 65-year term of the Monetary Award Fund*.[15]

The motion for preliminary approval and the draft Notices were contested. The Morey respondents' July 2, 2014 objection focused on the fact that "while ***past*** diagnosed cases of CTE are covered if a class member dies before preliminary approval, ***no future cases of CTE post-preliminary approval are covered***."[16] They argued that the proposed Long- and Short-Form Notices did not clearly explain that "if a player is diagnosed with CTE after the preliminary approval stage, he is entitled to ***nothing forever***."[17]

On July 7, 2014, the District Court granted preliminary approval of the June Agreement.[18] On July 8, 2014, Class Counsel moved for approval of the final Long- and Short-Form Notices.[19] On July 9, 2014, the Court approved these completed versions.[20] In addition to approving the "dissemination of notice," the Court found that the "form and content of the proposed Long-Form and Summary Notice also satisfy the requirements of Rule 23 and the Due Process clause."[21]

The final Short-Form Notice was identical to the draft with respect to Death with CTE.[22] But the final Long-Form Notice, under "What are the benefits of the Settlement?" read differently. It tightened the draft language in which "diagnoses" was spatially—if not grammatically—separated from "Death with CTE" and the relevant cutoff date. Now, it read:

> Monetary awards for diagnoses of Death with CTE prior to **July 7, 2014**, ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment

---

[15] *Id.* at 151 (emphasis added).

[16] ECF No. 6082, Objection to June 25, 2014 Class Action Settlement and Opposition to Motion for Preliminary Approval of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine, (July 2, 2014), at 40 (emphasis in original).

[17] *Id.* at 40–41 (emphasis in original).

[18] ECF No. 6084, Order Granting Preliminary Approval of the Proposed Class Action Settlement Agreement (July 7, 2014).

[19] ECF No. 6086, Motion for Approval of Completed Versions of Long-Form Notice and Summary Notice (July 8, 2014).

[20] ECF No. 6093, Order Approving the Completed Versions of the Long-Form Notice and the Summary Notice (July 9, 2014), at 7. The NFL Parties argue that for Ms. ███ and Ms. ███ respectively, "her due process argument rests on the Notice that she *actually received*, not the terms of the Unamended Settlement." ███ Doc. 289333 at 10 (emphasis in original); ███ Doc. 289332 at 10 (emphasis in original). I discuss the draft notices here not to obscure the fact that Ms. ███ and Ms. ███ received the final notices, not the drafts, but rather to illuminate parties' efforts to make the diagnosis deadline more explicit between the draft and final versions. And the terms of the Unamended Settlement do matter to Ms. ███ and Ms. ███ arguments, because the question is whether the Notices they *actually received* adequately communicated the contents of the Unamended Settlement. Clarity about the contents of the Unamended Settlement is central to that inquiry.

[21] ECF No. 6083, Memorandum Accompanying the Order Granting Preliminary Approval of the Proposed Class Action Settlement Agreement (July 7, 2014), at 18–19.

[22] *See* ECF No. 6093-2, Order Approving the Completed Versions of the Long-Form Notice and the Summary Notice [ECF No. 6086] (July 9, 2014).

(*i.e.*, moderate Dementia) and Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia).[23]

Like the draft Long-Form Notice, the final Long-Form Notice later noted:

> Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis *may occur at any time until the end of the 65-year term of the Monetary Award Fund.*[24]

Multiple parties objected to the Settlement.[25] The Morey objectors' October 6, 2014 filing was again notable.[26] Central to that document was the understanding that CTE diagnoses were cut off at the date of preliminary approval.[27] It was wrong, they argued, that "a CTE diagnosis *before* preliminary approval should be sufficient to demonstrate entitlement to a multi-million dollar award while a *future* diagnosis entitles a class member to nothing."[28]

Other objectors agreed that under the June Agreement, CTE diagnoses must occur before July 2014 (and that this was unfair).[29] One group objected because "a 'Death with CTE' qualifying diagnosis requires retirees to have died *and been diagnosed with CTE prior to July 7, 2014.*"[30] Another claimed that the Settlement was "flawed" in excluding "CTE victims diagnosed *after* the settlement while including CTE victims diagnosed *before* the settlement."[31]

---

[23] ECF No. 6093-1, Order Approving the Completed Versions of the Long-Form Notice and the Summary Notice [ECF No. 6086] (July 9, 2014), at 7 (emphasis in original).

[24] *Id.* at 11 (emphasis added).

[25] *See, e.g.*, ECF 6109, Reply in Further Support of Motion to Intervene by Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine (July 29, 2014), at 6 (opposing the fact that "none" of the Monetary Award Fund would be "available to assist retired players. . . should they be diagnosed with CTE post-settlement.").

[26] ECF No. 6201, Objection of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick "Rock" Cartwright, Jeff Rohrer, and Sean Considine to Class Action Settlement (Oct. 6, 2014).

[27] *See id.* at 27 (arguing that the January 2014 proposed Settlement "arbitrarily denied compensation to individuals whose CTE went undetected until after preliminary approval"); *id.* at 35 (arguing that as in the January 2014 proposed Settlement, in the June 2014 proposed Settlement "[c]lass members whose CTE is discovered in the future receive nothing").

[28] *Id.* at 28. (emphasis in original).

[29] *See* ECF 6213, at 2 (Miller Objection, Oct. 14, 2014) ("The settlement favors currently injured class members at the expense of those who will die or be diagnosed with CTE in the future."); ECF 6235, at 3-4 (Jones Objection, Oct. 14, 2014) (arguing that it is arbitrary not to compensate CTE diagnosed after the approval date); ECF 6400, at 2 (McFarland Objection, Nov. 3, 2014) ("Future Cases of CTE are apparently not included as a qualifying diagnosis."); ECF 6409, at 4 (Carrington Objection, Nov. 3, 2014) ("There is no additional monetary compensation for athletes who die after the preliminary approval order or who are diagnosed with CTE after the preliminary approval hearing."); ECF 6412, at 2 (Werner Objection, Nov. 3, 2014) ("If it's monetary acceptable for those who suffered before July 7th 2014 but not for those diagnosed after this date? . . . What is the NFL saying here???").

[30] ECF No. 6233, at 18 (Armstrong Objection, Oct. 14, 2014) (emphasis added).

[31] ECF No. 6242, at 2 (Chelsey Objection, Oct. 14, 2014) (emphasis in original).

Objectors also raised concerns about the class notice.[32] The Morey objectors, for example, argued that the Long-Form Notice "states that '[a] Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund,' which is false as applied to *every* future diagnosis of 'Death with CTE.'"[33]

The objectors were not alone in the view that the June Agreement provided no recovery for every future diagnosis of Death with CTE. Class Counsel and the NFL Parties expressed that understanding throughout 2014. For instance, economic reports generated by experts on both sides in February 2014 reveal that the parties explicitly assumed the preliminary approval date was a cutoff for CTE *diagnoses*, not just deaths. Class Counsel's expert report read, "In the case of Death with CTE, this analysis assumes that only those cases that had a confirmed diagnosis pre-settlement will be compensated. Therefore, the model does not forecast any future cases of CTE."[34] Similarly, the NFL Parties' expert wrote, "Because the Settlement will not provide monetary awards for CTE for players diagnosed with CTE after the date of Preliminary Approval, the model assumes that no other players will be diagnosed with CTE."[35] Both of these reports were filed on the docket on September 12, 2014.

In October 2014, proposed Class Counsel defended the CTE cutoff date as follows:

However, as retired players deceased before preliminary approval would not have recognized the need to seek or obtain a medical diagnosis to confirm their rights and entitlements under the Settlement, the proposed Settlement affords an opportunity for compensation to their families *in the event the retired player received a post-mortem neuropathological diagnosis of CTE*.[36]

The past tense language—"received"—reinforces the June and July motion practice in indicating that the June Agreement would only compensate Death with CTE diagnoses already made by the cutoff date. Similarly, the NFL Parties acknowledged that "the settlement fails to

---

[32] One particularly colorful objection dramatized a living room scene in a fictional Retired NFL Player's household, imagining a conversation between the Retired NFL Player and his wife and son upon receiving the Long-Form Notice. *See* ECF No. 6241, at 33-35 (Duerson Objection, Oct. 14, 2014). The fictional family did not understand the cutoff date for CTE, and the objector urged the Court to "save them from the empty promises" by sending out supplemental notice to inform readers "point blank, that NO CTE CLAIMS WILL BE PAID FOR A DEATH OCCURRING AFTER JULY 7, 2014"). *Id.* at 35.

[33] ECF No. 6201, Objection of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick "Rock" Cartwright, Jeff Rohrer, and Sean Considine to Class Action Settlement (Oct. 6, 2014), at 57 (emphasis in original).

[34] ECF No. 6167, NFL Concussion Liability Forecast, Prepared by Thomas Vasquez Ph.D. on February 10, 2014 (Sept. 12, 2014), at 23.

[35] ECF No. 6168, Report of the Segal Group to Special Master Perry Golkin (Sept. 12, 2014), at 28, n. 18.

[36] ECF No. 6183, Co-Lead Class Counsel's Memorandum of Law in Response to Motion of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeffrey Rohrer, and Sean Considine for Leave to Conduct Limited Discovery (Oct. 2, 2014), at 4, n. 3 (emphasis added).

compensate CTE *diagnosed* after July 7, 2014."[37] Class Counsel and the NFL Parties also defended the notice against objectors' due process arguments.[38]

In November 2014, the NFL Parties again highlighted the diagnosis deadline: "[T]he Agreement does not (for good reason) compensate a post-mortem pathological diagnosis of CTE after preliminary approval."[39] Class Counsel similarly addressed the timing issue.[40] Reiterating that the June Agreement required "Death with CTE (post-mortem diagnosis prior to July 7, 2014),"[41] Class Counsel defended that deadline as the result of a bargained-for process: the NFL Parties drew a line in the sand on CTE, but made concessions in other areas, such as uncapping the Monetary Award Fund.[42]

On November 19, 2014, the Court conducted a Fairness Hearing.[43] Objectors again contended that the Settlement was unfair in limiting compensation for Death with CTE to diagnoses prior to preliminary approval,[44] and again the Parties defended this limit.[45] At the Hearing, objectors emphasized that the Long-Form Notice was misleading:

> When you look to the long-form notice at Section 14. . . it says that "Monetary awards are available for the diagnosis of ALS, Parkinson's Alzheimer, Level 1 neurocognitive impairment, early dementia, or death with CTE." And then they take death with CTE, along with those others, and they give it a defined term, they call it a qualifying diagnosis. And then it says, "A qualifying diagnosis may occur at any time until the end of a 65-year term of the monetary award fund." Well that's

---

[37] ECF No. 6185, Response of the NFL Parties in Opposition to Motion for Leave to Conduct Limited Discovery (Oct. 2, 2014), at 7 (emphasis added).

[38] *See* ECF No. 6184, Co-Lead Counsel's Omnibus Response to Motions (Oct. 2, 2014), at 6 ("The class notice makes clear that only claims for diagnoses of Death with CTE prior to July 7, 2014 will be paid."); ECF No. 6186, Response of the NFL Parties in Opposition to Emergency Motions (Oct. 2, 2014), at 10 ("The Settlement Class Notice also objectively and neutrally appraises all Settlement Class Members of the nature of the action and the Settlement Class claims and issues, including, as relevant here . . . that the Qualifying Diagnosis of Death with CTE includes only 'diagnoses of death with CTE prior to **July 7, 2014.**'").

[39] ECF No. 6422, Memorandum of Law in Support of Final Approval of the Class Action Settlement Agreement and in Response to Objections (Nov. 12, 2014), at 78-79.

[40] ECF No. 6423-1, Memorandum of Law in Support of Class Plaintiffs' Motion for an Order Granting Final Approval of Settlement and Certification of Class and Subclasses (Nov. 12, 2014), at 17 ("Subclass 2 is defined as . . . the Representative Claimants of deceased Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to death, or who died prior to July 7, 2014 and who received a post-mortem diagnosis of CTE.").

[41] *Id.*

[42] *See id.* at 69 ("During the negotiations, however, Class Counsel determined which conditions the NFL Parties were willing to resolve on a global basis and which they were not. In short, Class Counsel determined where the NFL Parties would draw the ultimate line and refuse to settle.").

[43] ECF No. 6449, Transcript of Fairness Hearing (held on Nov. 19, 2014, entered Nov. 28, 2014).

[44] *See id.* at 123:2-6 ("At the settlement table in this case no class representative was there to advocate for the people who died with CTE. No one. No one was advocating that post-July 7th CTE needs to be compensated.").

[45] *See id.* at 192:5-13 ("The settlement covers death with CTE prepreliminary approval precisely because obviously by definition players who have deceased prior to prepreliminary approval cannot get a qualifying diagnosis and be covered. So the coverage for death with CTE prepreliminary approval was an expansion of the settlement so those players who had CTE and were deceased were covered.").

certainly not true if in fact death with CTE before July 7th of 2014 is what gets you an award. So again, a player reading the long-form notice would be misled.[46]

In response, Class Counsel drew the Court's attention to "the section entitled 'What are the benefits of the settlement?'" and explained:

That's the section. Right under there it says monetary awards for diagnosis of death with CTE prior to July 7, 2014. I think if you're reading this notice, the section if you want to know what your benefits are, you're probably going to go to the section that says, what are the benefits of the settlement? The notice does that.[47]

After the Fairness Hearing, objectors reiterated concerns about the Long-Form Notice[48] and the cutoff date for CTE.[49] And Class Counsel again underscored the prevailing understanding that the cutoff date for CTE Awards meant cutoff for date of Diagnosis, as well as date of death: "Class Counsel fought to secure recovery for the families of those who died and whose brains revealed a pathological finding of CTE before this Settlement came to fruition."[50]

On February 2, 2015, the Court suggested that the parties propose changes to the Revised Agreement.[51] The only suggestion touching CTE was that the "Qualifying Diagnosis of Death with CTE should include Retired NFL Football Players who die between preliminary approval and final approval of the Settlement."[52]

The parties offered amendments on February 13, 2015.[53] The amendments added to 6.3(f) the now controlling language that "a post-mortem diagnosis made by a board-certified neuropathologist" must be "prior to the Final Approval Date, provided that a Retired NFL Football Player who died between July 7, 2014 and the Final Approval Date shall have until 270 days from his date of death to obtain such a post-mortem diagnosis."[54] The parties jointly wrote:

The Settlement Agreement currently provides for a Death with CTE Qualifying Diagnosis for Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order and who had a post-mortem diagnosis of CTE made by a board-certified neuropathologist.

---

[46] *Id.* at 94:15-25; 95:1-9.

[47] *Id.* at 199:5-13.

[48] The Morey Objectors, for example, contended that the settling parties' Fairness Hearing argument that "a different part of the notice clarifies that the Settlement provides recovery for 'Death with CTE *prior to July 7, 2014*'" was insufficient and that the Notice was "defective as a matter of law" for containing "both false and technically true statements." ECF No. 6455, Post-Fairness Hearing Supplemental Briefing of Objectors Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine (Dec. 2, 2014), at 31.

[49] *See, e.g.*, ECF No. 6456 (Duerson Suppl. Obj., Dec. 2, 2014), at 4 ("If final approval is granted, CTE will forever disappear from the NFL's lexicon, as no player's family will ever qualify for a death benefit after July 7, 2014.").

[50] ECF No. 6467, Class Counsel's Omnibus Response to Post-Fairness Hearing Submissions (Dec. 12, 2014), at 34.

[51] ECF No. 6479, Order Proposing Changes to the Proposed Settlement Agreement (Feb. 2, 2015).

[52] *Id.* at 2.

[53] ECF No. 6481, Joint Submission in Response to the Feb. 2, 2015 Order (Feb. 13, 2015).

[54] ECF No. 6481-1, at 37.

(Settlement Agreement, Ex. 1.) The Settlement Agreement, as amended, extends this deadline from the date of preliminary approval to the Final Approval Date, which is defined as the date that the Court enters the Final Order and Judgment. (Settlement Agreement, as amended, §§2.1(mm), 6.3(f), Ex. 1.).

In addition, consistent with the Parties' intent under the original Settlement Agreement, and recognizing that obtaining such a diagnosis may take several months post-death, the Parties have provided for a grace period of 270 days following any date of death between preliminary approval and the Final Approval Date to allow Claimants to obtain the necessary diagnosis.[55]

Several objections followed on the ground that the amendments did not cure purported defects related to CTE.[56] None that I have found suggested that it was a novel requirement that the Diagnosis of Death with CTE, like the death itself, pre-date the Approval Date. And at least one filed objection strongly suggested to the contrary.[57]

The prevailing understanding of the diagnosis rule reappeared in a joint submission—filed by the NFL Parties and joined by Class Counsel—of proposed findings of fact and conclusions of law: "Post Final Approval, a post-mortem diagnosis of CTE is not compensated," with the one exception of Players who died between Preliminary and Final Approval.[58] Likewise, Class Counsel's letter notifying opt outs of the amendments stated that to receive an Award for Death with CTE, Retired Players needed to have "received a post-mortem diagnosis by the date of the Final Approval (or 270 days following any death between Preliminary Approval and Final Approval to allow time for the necessary diagnosis)."[59]

On April 22, 2015, Judge Brody, approving the amendments, found that because "these changes improved the deal for Class Members without providing any concessions to the NFL Parties, an additional round of notice for Class Members is unnecessary."[60] She stated that the relevant change to the CTE benefit was that it (now) "compensates Death with CTE up until the Final Approval Date, instead of the Preliminary Approval Date."[61]

Judge Brody also considered objections to the Long-Form and Summary Notices:

The Summary Notice states that only "certain cases of chronic traumatic encephalopathy" receive Monetary Awards. Summary Notice at 1 (emphasis

---

[55] ECF No. 6481 at 4-5 (cleaned up).

[56] *See, e.g.*, ECF No. 6503 (Armstrong Suppl. Obj., Apr. 13, 2015); ECF No. 6484 (Miller Suppl. Obj., Feb. 27, 2015).

[57] *Cf.* ECF No. 6484 (suggesting that the amendment created a perverse change which could motivate player suicide by making a deadline for benefits in the future, the final approval date, and not in the past).

[58] ECF No. 6497, Class Counsel and the NFL Parties' Joint Proposed Findings of Fact and Conclusions of Law in Support of Final Approval of the Class Action Settlement (Mar. 12, 2015), at 38.

[59] ECF No. 6500-1, Notice to Opt-Outs (Mar. 31, 2015), at 2.

[60] ECF No. 6509, Memorandum Regarding Final Approval of the Settlement (Apr. 22, 2015), at 56.

[61] *Id.* at 78.

added). In context, this is more than adequate: none of the other Qualifying Diagnoses listed contain any type of limiting language . . .

Objectors unsuccessfully argue that the Long-Form Notice is also misleading. Objectors concede that that the Long-Form Notice states that compensation is limited to "diagnoses of Death with CTE prior to July 7, 2014." Yet they maintain that this statement is misleading because it "does not outright disclose" that those who die after that date will not be compensated. This is not enough to confuse a careful reader . . . Objectors further argue that the Long-Form Notice is confusing because the term "Death with CTE" appears several times without the accompanying cutoff date. See Morey Obj. at 43- 44. Both the Summary Notice and the Long-Form Notice indicate that only "certain" cases of CTE are covered. See Summary Notice at 1; Long-Form Notice at 1.

Even if the Long-Form Notice were unclear, it repeatedly instructs readers to sources that can answer their questions. Like the Summary Notice, the Long-Form Notice contains a banner at the bottom of each page directing those with "Questions?" to call a toll-free support number or visit the Settlement Website. Warnings that the Long-Form Notice is only a summary and that readers should look to the Settlement for specific details appear five times in the Long-Form Notice. . .[62]

Finally, Judge Brody wrote that the "Parties provided compensation for Death with CTE until the Final Approval Date because they recognized that Retired Players who died prior to final approval did not have sufficient notice that they had to obtain Qualifying Diagnoses."[63]

The Third Circuit, approving the Settlement, held "that the content of the class notice . . . satisfied Rule 23 and due process."[64] It also found "that the settlement's treatment of CTE does not render the agreement fundamentally unfair."[65]

Almost a year after final denial of certiorari, on August 15, 2017, Settlement Class Member Yvonne Sagapolutele moved to "Modify the Amended Final Order and Judgment."[66] That motion argued that the Amended Settlement Agreement's diagnosis deadline was neither contemplated

---

[62] *Id.* at 51-52 (internal citations omitted) (paragraph breaks added).

[63] *Id.* at 81.

[64] In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 435-36 (3d Cir. 2016), amended (May 2, 2016), cert. denied, 137 S. Ct. 591 (2016), and cert. denied, 137 S. Ct. 607 (2016). The Third Circuit, in the context of another class action settlement, refused to revisit its earlier ruling on the adequacy of notice. *See* In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig., 385 F.3d 386, 396 (3d Cir. 2004) ("Moreover, this Court has already addressed the notice and adequacy of representation with respect to the original Settlement Agreement and we found the requirements of due process satisfied . . . Due process does not require this Court to entertain challenges to adequacy of notice and representation every time any case related to a class action judgment comes up on appeal.").

[65] *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d, at 444.

[66] ECF No. 8263, Motion to Modify the Amended Final Order and Judgment (Aug. 15, 2017).

by the June Agreement, nor fairly presented in the Notices.[67] As far as I have been able to tell, this was the first time that *anyone* articulated a reading of the June Agreement which would permit post-Approval Date diagnoses so long as a Player's death preceded it.[68]

Judge Brody denied that motion without prejudice on October 26, 2017, stating that "[b]efore Plaintiff can attempt the extraordinary action of modifying the Settlement Agreement, she must first show that she would be entitled to recover but for the Death with CTE diagnosis deadline," and noting that the due process argument could be raised in the claim appeal process.[69]

### 2. Procedural History of Today's Claims



I now turn back to today's Claims. Ms. ███ and Ms. ███ filed their respective Claims on February 6, 2019. ███ Doc. 199403; ███ Doc. 198425. Dr. ███████████, a board-certified neuropathologist, provided an undated letter stating that he examined the late Mr. ███████ brain tissue using "three H&E stained slides" received from the ███ County Medical Examiner. ███ Doc. 199405. Dr. ████████ concluded that the "histopathologic findings are diagnostic of CTE" and that "███████████ had CTE." *Id.* Dr. ███████ provided a similarly undated letter stating that he examined the late Mr. ███ brain tissue using "10 unstained slides from 8 tissue blocks" received from the ███████ County Department of Medical Examiner-Coroner. ████████ Doc. 199435. He concluded that his "findings are diagnostic of CTE" and that "██████████████ had CTE." *Id.*

As counsel has now confirmed, Dr. ███████ undated examination and diagnoses of both Mr. ███████ and Mr. ███ in fact post-dated April 22, 2015. ███ Doc. 284510 at 8; ████████ Doc. 284543 at 8.

The Claims Administrator denied Ms. ████████ Claim on June 25, 2019, and Ms. ███████ Claim on July 30, 2019. ███ Doc. 209824; ███ Doc. 211985. Both Claimants appealed. ███ Doc. 210928; ████ Doc. 213485. On September 26, 2019 (for Ms. ███ and October 31, 2019 (for Ms. ████ Special Master Pritchett denied the Appeals, stating for each that "Appellant did not show clear and convincing evidence of error in the Claims Administrator's decision." ████ Doc. 215686; ████ Doc. 217483.

---

[67] *Id.*

[68] Some class members erroneously believed that the June Agreement would permit post-Approval Date diagnoses of post-Approval Date deaths. *See* ECF No. 6345, at 3 (Williams Objection, Nov. 3, 2014) ("Players diagnosed with CTE (living) today, have to kill themselves or die for their family to ever benefit."); ECF No. 6347, at 1 (Flint Objection; Nov. 3, 2014) ("It seems an injustice not to consider CTE in a living player because we cannot enjoy the benefits dead. I love my family and would like for them to be compensated if that condition is found but as a player I would rather my family and I could enjoy the benefits together while I'm alive."). And a few objectors argued that Representative Claimants of Retired NFL Players who died before January 1, 2006, should be able to prove Death with CTE by alternative means other than a post-mortem diagnosis by a board-certified neuropathologist. *See* ECF No. 6222 (Komlo Objection, Oct. 14, 2014); ECF No. 6362 (O'Hanley Objection, Nov. 3, 2014). But none of these objections raise the situation at issue here: that a Retired NFL Player might die between January 1, 2006, and the Approval Date and receive a diagnosis of Death with CTE by a board-certified neuropathologist after the Approval Date.

[69] ECF No. 8557, Order Denying Motion to Modify the Amended Final Order and Judgment (Oct. 26, 2017), at 1.

Judge Brody remanded both Claims for further explanation, noting that the Special Master's decision "did not specify whether . . . [it] applied to *both* of the Claims Administrator's reasons or only *one* of those reasons" for denial. ███ Doc. 225723 at 1; ███ Doc. 225731 at 1. On July 15, 2020, I denied Ms. ███ Claim after remand, writing:

> The Claims Administrator denied Ms. ███ claim for two independent reasons.
>
> First, the claim was denied based upon a lack of proof that the diagnosis was timely. I find that there is no evidence that the diagnosis of Death with CTE was obtained before the appropriate deadline.
>
> Second, the claim was denied for failure of the diagnosing physician to personally examine the Player's brain tissue. However, the evidence suggests that Dr. ███ did examine the late Mr. ███ brain tissue as is necessary to diagnose Death with CTE.
>
> The Claims Administrator correctly concluded that Ms. ███ failed to show that the diagnosis was obtained before the appropriate deadline. I thus affirm the denial solely on the first basis.

███ Doc. 226586 at 4.

I similarly denied Ms. ███ Claim, writing:

> The Claims Administrator denied Ms. ███ claim for two independent reasons. First, the claim was denied based upon a lack of proof that the diagnosis was timely. I find that there is no evidence that the diagnosis of Death with CTE was obtained before the appropriate deadline. Second, the claim was denied for failure of the diagnosing physician to personally examine the Player's brain tissue. However, the evidence suggests that Dr. ███ did examine the late Mr. ███ brain tissue as is necessary to diagnose Death with CTE.
>
> The Claims Administrator correctly concluded that Ms. ███ failed to show that the diagnosis was obtained before the appropriate deadline. I thus affirm the denial solely on the first basis.

███ Doc. 226585 at 4.

On February 24, 2023, Judge Brody remanded both Claims for a second time, instructing the Special Masters to return them to the Claims Administrator "to further determine the sufficiency of the claims packages." ███ Doc. 278160 at 2; ███ Doc. 278167 at 2. This Order required the Claims Administrator to ensure that Dr. ███ examination of the

decedents' tissue substantively and sufficiently supported a Diagnosis of Death with CTE in each Claim. It did not conclude that the Claims were timely.

The Claims Administrator, after assigning the files to a member of the Appeals Advisory Panel (AAP), assured itself that Dr. ███████ analysis substantively and sufficiently supported a Diagnosis for both Claims. ███████ Doc. 282802; ███████ Doc. 282803. The Claims Administrator then denied both Claims on the sole basis that the relevant Diagnoses were untimely. ███████ Doc. 282802; ███████ Doc. 282803.

Both Representative Claimants appealed. ███████ Doc. 284510; ███████ Doc. 284543.

**DISCUSSION**

I make the following factual findings.

(1) Dr. ███████ is a board-certified neuropathologist;
(2) Dr. ███████ examined slides containing Mr. ███████ and Mr. ███████ brain tissue and diagnosed them both posthumously with CTE;
(3) Dr. ███████ examinations post-dated April 22, 2015;[70]
(4) But for their timing, those examinations sufficiently supported an Award of Death with CTE under Section 6.3(f) of the Amended Settlement Agreement.

These factual findings clarify what remains to be decided. Both Claimants satisfy the Settlement's requirement that a board-certified neuropathologist diagnosed the Retired NFL Players with CTE after posthumous examination of brain tissue.[71] However, both Diagnoses post-date April 22, 2015, and are therefore untimely under Section 6.3(f) of the Amended Settlement Agreement. Claimants offer two reasons why the untimeliness of Dr. ███████ examinations and diagnoses should not preclude their recovery.

### 1. Claimants' Diagnosis Deadline Argument

*First*, Claimants state that the "claims package is not insufficient based on the purported untimeliness of the diagnosis because the date of the Qualifying Diagnosis is the date of the Player's

---

[70] I cannot make a finding as to the precise day on which the examinations and the diagnoses occurred because the relevant letter is undated and counsel has not disclosed the date. Counsel concedes only that the examination occurred after April 22, 2015. *See* ███████ Doc. 284510 at 8 ("The Claims Administrator has again denied Class Member's claim because Dr. ███████ CTE diagnosis was not made before April 22, 2015, which is the Final Approval Date for the Amended Settlement."); ███████ Doc. 284543 at 8 (same).

[71] As the Court wrote in the Final Order and Judgment approving the Settlement, "no one can conclusively say that someone had CTE until a scientist looks at sections of that person's brain under a microscope to see if abnormally phosphorylated tau protein ('abnormal tau protein') is present, and if so whether it is present in a reportedly unique pattern." In re Nat'l Football League Players' Concussion Injury Litig., 307 F.R.D. 351, 391 (E.D. Pa. 2015). To conclusively diagnose CTE, therefore, the diagnosing neuropathologist must examine the deceased Player's brain tissue.

death, even though the diagnosis is not made until after the Player Dies." ████ Doc. 284510 at 8; ████ Doc. 284543 at 8. Claimants rely on FAQ #99 (from 2019), now restyled as FAQ #100:

> The physician making a Qualifying Diagnosis of a Retired NFL Football Player must determine and verify the date on which that Qualifying Diagnosis was made. This date is important under the Settlement Agreement. It affects the amount of a Monetary Award, because the younger a Player is at the time of the Qualifying Diagnosis, the larger the award. The diagnosing physician uses his or her professional medical judgment in deciding when the Player had the conditions amounting to a Qualifying Diagnosis under Exhibit 1 to the Settlement Agreement. There are some basic rules about this: … (a) *Death with CTE*: For these claims, the date of the Qualifying Diagnosis is the date of the Player's death, even though the diagnosis is not made until after the Player dies. The Monetary Award is based on the Player's age when he died. [72]

The FAQ is awkwardly phrased. But contrary to Claimants' supplemental briefing, the FAQ is not part of "the language in the amended settlement agreement." ████ Doc. 289319 at 1; ████ Doc. 289320 at 1.

Given the Amended Settlement's text at 6.3(f), which controls, and the FAQ's preamble language, the FAQ must set the date from which *payment* for the Diagnosis is calculated for the Program's payment grid, not the moment at which the Diagnosis occurs. Any other result would run afoul of the text of the Amended Settlement.[73]

That's because Section 6.3(f) creates two conditions for recovery: the date of the Qualifying Diagnosis *and* the date of the neuropathologist's post-mortem examination must be prior to April 22, 2015. Claimants would collapse these two into one, writing the second out of the Agreement entirely. And since the Diagnosis must be "made by" a neuropathologist, it cannot occur automatically at the time of death. Relying on this text, I conclude that a Diagnosis for the purposes of 6.3(f) of the Amended Settlement Agreement occurs when a board-certified neuropathologist personally examines the decedent's brain tissue and concludes that it is marked by CTE.

## 2. **Claimants' Due Process Argument**

In the alternative, Claimants argue:

> [T]he language the Claims Administrator relies on could not have added a diagnosis-date requirement because it was added to the settlement agreement after

---

[72] *Frequently Asked Questions: FAQ #100* (How is the date of a Qualifying Diagnosis determined?), NFL CONCUSSION SETTLEMENT, https://www.nflconcussionsettlement.com.

[73] *See* Special Master Ruling on Untimely Claim Package, at 3 (Oct. 10, 2022), https://www.nflconcussionsettlement.com/Docs/untimely_claim_package_SM.pdf ("FAQs cannot create rights the Settlement disclaims."). The Claims Administrator should revise FAQ #100 to make it even more clear.

the opt out deadline without notice to Class Member and other absent class members. In all notices that were provided regarding the settlement agreement, Class Member and other absent class members were told they could obtain a CTE diagnosis at any time within the 65-year life of the Monetary Award Fund.

██████ Doc. 284510 at 8; ██████ Doc. 284543 at 8.

Having considered the record with care, I am convinced that this argument is without factual or legal merit.[74] Analytically, the first step in proving that the Amended Settlement Agreement unfairly curtailed Claimants' rights would be to show that the June Agreement *lacked* a cutoff for Diagnoses of Death with CTE. If the June Agreement had such a rule, and was so-understood at the time, amending it to add more words to the same effect could not violate due process.

The question then is how to best interpret the June Agreement. It, like the Amended Settlement Agreement, was a (proposed) contract governed by New York law.[75] The Third Circuit interprets settlement agreements as contracts,[76] including when applying New York law.[77] And yet, because of the unique way in which "a court retains special responsibility to see to the administration of justice" in a class action settlement, exclusive reliance on "black-letter contract law is unavailing."[78] In addition to ascertaining the parties' intent using ordinary contract law

---

[74] I gave the parties to this Appeal an opportunity to file supplementary submissions. Ms. █████ Ms. █████ and the NFL Parties did so. █████ Docs. 289333; 289319; █████ Docs. 289332; 289320. Class Counsel did not.

[75] ECF No. 6087, at 93 ("Notwithstanding any contrary law applicable to the underlying claims, this Settlement Agreement and the Releases hereunder will be interpreted and enforced in accordance with the laws of the State of New York, without regard to conflict of law principles.").

[76] *See* Sullivan v. DB Investments, Inc., 667 F.3d 273, 312 (3d Cir. 2011) ("It is well established that 'settlement agreements are creatures of private contract law.'") (quoting Bauer v. Trans. Sch. Dist. of City of St. Louis, 255 F.3d 478, 482 (8th Cir. 2001); Ehreart v. Verizon Wireless, 609 F.3d 590, 594 (3d Cir. 2010) ("We have no doubt that the settlement agreement reached in this case is a binding and enforceable contract under general principles of contract interpretation."). Like the settlement agreement in *Ehreart*, here the Settlement "was negotiated through and executed by experienced counsel on both sides, following mediation with a well-respected and experienced mediator." *Id.*

[77] *See* In re Cendant Corp. Prides Litig., 233 F.3d 188, 193 n.6 (3d Cir. 2000) (applying "New York contract law, which governs this case" to interpreting provisions in a settlement agreement). New York law interprets settlements as it does contracts. Brad H. v. City of New York, 951 N.E.2d 743, 746 (N.Y. 2011) ("The settlement agreement is a contract and its meaning must be discerned under several cardinal principles of contractual interpretation. A written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties."); Cordero v. Transamerica Annuity Service Corp., 211 N.E.3d 663, 670 (N.Y. 2023) (looking to "what the parties would have expected under the contract" to interpret a structured settlement agreement).

[78] *Id.* at 194. Some have argued for a "distinctive interpretive regime" to adjudicate disputes about contractual meaning in Settlements. *See* Howard M. Erichson & Ethan J. Leib, *Class Action Settlements as Contracts?*, 102 N. C. L. Rev. 1, 6 (forthcoming 2023) ("Our argument is that structural facts about class action settlements—both the nature of their binding effect and the dynamics of their negotiation—militate in favor of an interpretive approach that brings skepticism to the idea that the judge's role in these contexts is merely to promote the 'intent of the parties.'"). I am governed by the Third Circuit's approach, as *Cendant* lays out.

principles, the Court also retains responsibility "for the protection of class members" until the settlement fund has been distributed.[79]

Under New York law, the "fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent."[80] The best evidence of parties' intent comes from "a written agreement that is complete, clear and unambiguous on its face."[81] Only if the agreement is ambiguous, i.e., not "reasonably susceptible of only one meaning," may a court consider extrinsic evidence of parties' intent.[82]

I start with the June Agreement's text.

### a. The Settlement's Plain Meaning

Paragraph 6.3(f) of the June Agreement creates a cutoff for the date of Death with CTE. Whether it does so for the date of Diagnosis is less clear. This is the key text:

> Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order [i.e., July 7, 2014], through a post-mortem diagnosis by a board-certified neuropathologist of CTE.[83]

Claimants assert that this language creates no deadline for diagnoses of Death with CTE at all. But that is not a plausible interpretation.

*First*, the text connects the Player's death to a post-mortem diagnosis using the function word "through," while offering only one date by which those events can occur. Since most post-mortem diagnoses are proximate to death,[84] the most natural reading is that the drafters intended that diagnoses and death would be subject to the same cutoff date. Given that intuitive connection, had the parties intended there to be no deadline for diagnoses, it would be reasonable to expect that 6.3(f) would have stated such a surprising outcome expressly.

*Second*, other parts of the June Agreement indicate that CTE diagnoses would be proximate to death. Namely, the Subclass 2 definition paragraph, which gives 6.3(f) its scope, encompasses those who died prior to the Approval Date "and" who "received" a post-mortem diagnosis of

---

[79] Cendant Corp. Prides, 233 F.3d at 194.

[80] Greenfield v. Phillies Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002).

[81] *Id.*

[82] *Id.*

[83] ECF No. 6087, at 32.

[84] New York looks to Black's Law Dictionary to aid in ascertaining the plain meaning of contested terms. *See, e.g.*, De La Cruz v. Caddell Dry Dock & Repair Co., Inc., 997 N.E.2d 1223, 1227-1228 (N.Y. 2013). The 10th edition of Black's Law Dictionary—contemporaneous with the June Agreement—refers readers looking for "postmortem examination" to "autopsy," and defines "autopsy" in turn as a "medical examination of a corpse to determine the cause of death, esp. in a criminal investigation." *Black's Law Dictionary* (10th ed. 2014). The inclusion of "corpse" implies that the examination occurs close in time to the death.

CTE.[85] The conjunctive word strongly implies that the diagnosis and the death must both happen prior to the same event. Additionally, the past tense of "received" is evidence that the diagnosis needed to have happened already—before the Preliminary Approval Date. Again, had the parties intended an open-ended diagnosis deadline, with all the long-tail risk that such a deadline would create, they would have phrased this as those who died prior to the Approval Date and who "receive" a post-mortem diagnosis of CTE.

*Third*, the June Agreement's exhibits offer still more textual evidence. The June Agreement provides that "its exhibits, attachments, and appendices will constitute the entire agreement and understanding among the parties" and that "[a]ll of the exhibits attached hereto are hereby incorporated by references as though fully set forth herein."[86] As I have already indicated, the draft Long-Form Notice explicitly cut-off CTE awards in time: "diagnoses of . . . Death with CTE prior to [Date of Preliminary Approval Order]."[87] This fits with the other textual evidence to form a coherent picture.

But the following Q&A then seemingly muddied the waters:

> Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis *may occur at any time until the end of the 65-year term of the Monetary Award Fund.*[88]

This language is confounding, but needs to be harmonized with the rest of the text.[89] Given the plain text of 6.3(f), the Subclass 2 definition, and the notice limiting "Monetary awards for diagnoses of . . . Death with CTE prior to [Date of Preliminary Approval Order],"[90] the overall effect is reasonably clear. The specific and explicit CTE deadline controls the more general Q&A's "at any time" statement, under the *noscitur a sociis* principle, and following the text's injunction to have the exhibits give way to the main text.[91] New York courts read contracts as a whole, making

---

[85] ECF No. 6087, at 126.

[86] ECF No. 6073-2, at 96 §§ 30.3, 30.5. The notices do not determine the Class's rights; the Settlement Agreement itself does. I include them here as interpretive evidence. As the NFL Parties point out, Ms. ███████ and Ms. ███████ received the final notice, which is clearer than the draft notice with respect to the diagnosis deadline for Death with CTE.

[87] ECF No. 6073-2, at 147.

[88] *Id.* at 151 (emphasis added).

[89] Indeed, it must be, as the June Agreement provides that "Notwithstanding the foregoing, any inconsistency between this Settlement Agreement and any attachments, exhibits, or appendices hereto will be resolved in favor of this Settlement Agreement." ECF No. 6073-2, at 96, § 30.3.

[90] ECF No. 6073-2, at 147.

[91] *See supra* note 89; *see also* Ethan J. Leib, *The Textual Canons in Contract Cases: A Preliminary Study*, 5 WIS. L. REV. 1109, 1118 (2022) ("This canon holds that courts should know words by their associates and interpret more comprehensive words in a series to be limited by the more specific and less comprehensive enumerated items.").

each provision fit with others to the extent possible.[92] Simply put, it makes no sense in context for the drafters to have created a deadline for Death with CTE but not its diagnosis without making that concession explicit. The most natural plain reading is that a Diagnosis must occur by the Date of the Preliminary Approval Order.

True, the June Agreement's 6.3(f) text is not as clear as it could have been—nor as explicit as the same paragraph in the Amended Settlement Agreement became. But a "contract's silence on an issue" does not, by itself, create an ambiguity that can be resolved by extrinsic evidence.[93] Rather, an ambiguity only arises out of "what was written so blindly and imperfectly that its meaning is doubtful."[94] I have just explained why I do not think it likely that a New York court would find that 6.3(f)'s apparent silence on the diagnosis deadline creates such an ambiguity. But I concede that some might identify in 6.3(f) a gap—and thus a latent ambiguity—to be filled.

### b. Contemporaneous Extrinsic Evidence

I predict that if a New York court were to find the June Agreement ambiguous about whether it contains a diagnostic deadline, that ambiguity would be conclusively resolved by contemporaneous extrinsic evidence of the parties' publicly expressed intent.[95]

"There is no surer way to find out what parties meant, than to see what they have done."[96] The Settlement's procedural history between June 2014 and February 2015 offers just this—a kind of practical construction.[97] I reviewed that evidence extensively above. Since it was pre-dispute, public, intended to probe June Agreement's function, and subject to contestation, it provides highly reliable evidence of meaning.[98] I predict a New York court would find it invaluable in

---

[92] *See* Ellington v. EMI Music, Inc., 21 N.E.3d 1000, 1003 (N.Y. 2014) ("Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole.").

[93] Donohue v. Cuomo, 184 N.E.3d 860, 866 (N.Y. 2022).

[94] *Id.* at 867 (quoting Trustees of Southampton v. Jessup, 173 N.Y. 84, 90 (1903)).

[95] *Cf.* Evans v. Famous Music Corp., 807 N.E.2d 869, 873 (N.Y. 2004) (turning first to, and relying on, extrinsic evidence of how parties behaved under a set of royalty contracts "for guidance as to which interpretation should prevail" with respect to an "ambiguity" in those contracts).

[96] Brooklyn Life Ins. Co. of New York v. Dutcher, 95 U.S. 269, 273 (1877) (*quoted with approval in* Town of Pelham v. City of Mount Vernon, 304 N.Y. 15, 23 (1952). Indeed, the "best evidence of the intent of the parties to a contract is their conduct after the contract is formed." Waverly Corp. v. City of New York, 851 N.Y.S.2d 176, 179 (1st Dept. 2008).

[97] Admittedly, it is somewhat unclear how to characterize the extrinsic evidence here. The June Agreement was not the parties' final word, and they never performed under the original 6.3(f). It is thus not classically "course of performance" evidence. But it is not course of negotiation or course of dealing either, and, like other kinds of practical construction, it demonstrates what the parties thought about the relevant contract language before they had incentives to behave strategically.

[98] Overall, "the parties' practical construction of the provision at issue during the course of performance. . . is given the greatest weight" relative to other types of extrinsic evidence, such as course of dealings and custom and usage. 28 GLEN BANKS, N.Y. PRAC., CONTRACT LAW § 9:28 (2023).

resolving ambiguity. In so concluding, I follow courts interpreting settlement agreements that relied on contemporaneous motion practice to determine meaning.[99]

Starting with the Proposed Class Counsel Memorandum of June 25, 2014, which introduced the June Agreement, the drafting parties themselves made crystal clear that they intended the dual deadline. In that document, proposed Class Counsel stated twice that for Death with CTE, a "post-mortem diagnosis prior to the date of the Preliminary Approval and Class Certification Order" was required.[100] Proposed Class Counsel's Motion for Approval of Completed Versions of Long-Form Notice and Summary Notice of July 8, 2014 included the Long-Form Notice, which explained that the June Agreement established "[m]onetary awards for diagnoses of Death with CTE prior to [the Date of the Preliminary Approval Order, i.e.,] **July 7, 2014**."[101] This language resulted from edits to the Notice from its draft to completed versions in early July, 2014, sharpening the dual deadline.[102] And the NFL Parties' response to multiple objections in the Fall reinforces the point: the drafting parties all believed that the June Agreement cut off CTE diagnoses as of July 7, 2014.[103]

Claimants point to one phrase in the *distributed* Long-Form Notice, stating that Qualifying Diagnoses may occur at any time. But as I've just referenced, both the distributed and draft Notice even more specifically state that "diagnoses" of CTE must occur prior to July 7, 2014, and followed a memorandum making that deadline explicit. As Class Counsel argued in the Fairness Hearing, a reasonable reader of the Notice and the June Agreement could not have concluded that the deadline to obtain a Diagnosis was open-ended.

Further resolving any doubts, the Long-Form Notice directed the reader to multiple other resources which reinforced the dual deadline.[104] At the bottom of every page of the Long-Form Notice was a banner which directed readers to call a toll-free number or visit the Settlement website for more information.[105] On the Settlement website, Class Members could find the Settlement Agreement itself, the Court's preliminary order and opinion, Class Counsel's motions in support of preliminary approval, and Frequently Asked Questions which provided—once again—the toll-free hotline Class Members could use to get their questions answered.[106] The written sources, at the very least, would have reinforced the diagnostic deadline.

---

[99] *See, e.g.,* Boston Exec. Helicopters, LLC v. Maguire, 45 F.4th 506, 511, 519 (1st Cir. 2022) (relying in part on parties' "motion practice regarding the terms of the settlement" to hold that the "lead-up to the signing of the settlement agreement resolves any relevant ambiguity about the meaning of the term 'standard form, non-exclusive lease' as intended by the parties"); Jensen v. Minnesota Department of Human Services, 897 F.3d 908, 915 (8th Cir. 2018) (relying in part on parties' court-filed letters, reports, responses, motions, and memoranda throughout a relevant time period to resolve an ambiguity in a class action settlement).

[100] ECF No. 6073-5, at 14, 25.

[101] ECF No. 6086-1, at 7 (emphasis in original).

[102] *Compare* ECF No. 6073-2, at 147 (draft version) *with* ECF No. 6086-1, at 7 (completed version).

[103] *See supra* at the record described in notes 34 through 39.

[104] *See* ECF No. 6422, at 177 (listing the various resources class members could access in addition to the Long-Form Notice on the Settlement website).

[105] Long-Form Notice, NFL CONCUSSION SETTLEMENT, https://www.nflconcussionsettlement.com/Docs/Long-Form%20Notice.pdf.

[106] ECF No. 6422, at 177.

That all said, the Third Circuit has stated that contract interpretation of a class action settlement must attend to the class's interests, not just the parties' expressed intent. I take that to mean that the class's reasonable expectations—the received meaning of the language—should bear some interpretative weight. To that end, I have searched the record in vain to find any examples of *anyone* reading the June Agreement as the Claimants did before 2017. Rather, multiple objectors to the June Agreement contemporaneously stated it meant that the deadline applied to Diagnoses *and* deaths. Their arguments—that this deadline was arbitrary and not clearly communicated in the Long-Form Notice—reinforce the prevailing understanding that the CTE *Diagnosis* deadline was real, controversial, and distinct from other parts of the Agreement.[107]

The Morey objectors' July 2, 2014 filing is illustrative.[108] After arguing that it was unfair that "the settlement would compensate only those few cases of CTE detected before preliminary approval of the settlement, to the exclusion of all future cases,"[109] the document goes on to argue that in an attempt to "***sell*** the settlement to players," neither Notice "explains—or so much as indicates—that while ***past*** diagnosed cases of CTE are covered if a class member dies before preliminary approval, ***no future cases of CTE post-preliminary approval are covered***."[110] These parties, and many others, were clear that the June Agreement created a binding dual deadline.[111]

In their supplemental briefing, Claimants point to a hypothetical raised in the Morey objection from October of 2014: "Thus, while CTE found in a retired player who died on the eve of preliminary approval allows a $4 million payment, that same condition goes uncompensated if the player dies one day later, after preliminary approval."[112] Claimants argue that this hypothetical proves that the June Agreement had no diagnosis deadline because "[i]f that were the case, it would be impossible for any hypothetical player who died shortly before the preliminary approval date to obtain a post-mortem diagnosis in time." ▮▮▮▮▮ Doc. 289319 at 8; ▮▮▮▮▮ Doc. 289320 at 8.

But this hypothetical cuts against Claimants' preferred interpretation. It was the unfairness of just such a scenario—a death that could not be immediately diagnosed—that led the District Court to suggest, and the parties to adopt, an amendment to allow time to obtain a diagnosis. As the NFL Parties explain in their supplemental briefs:

---

[107] *See generally supra* at pages 5 though 9.

[108] ECF No. 6082.

[109] *Id.* at 22.

[110] *Id.* at 39-40 (emphasis in original).

[111] Judge Brody's memorandum approving the Amended Settlement appears to confirm that understanding. As she wrote: the "*Parties provided compensation for Death with CTE until the Final Approval Date* because they recognized that Retired Players who died prior to final approval did not have sufficient notice that they had to obtain Qualifying Diagnoses." ECF No. 6509, at 81 (emphasis added). In approving that result, as well as the relevant notices against due process challenges, Judge Brody specifically denied that the Notice was unlawfully confusing or obscure. *Id.* at 52 ("Even if the Long-Form Notice were unclear, it repeatedly instructs readers to sources that can answer their questions.").

[112] ECF No. 6201, at 40.

The 270-day grace period would be wholly superfluous if there were no diagnosis deadline in the [June Agreement], as moving the date of death deadline to Final Approval would have been sufficient to expand that benefit. If, as [Claimants argue], the [June Agreement] required only that a Retired Player died prior to the deadline in order for a diagnosis made at *any unlimited future date* to be timely, the February 2015 amendments would not have added language providing that a Retired Player who died between July 7, 2014 and April 15, 2015 "*shall have until 270 days from his date of death to obtain such a post-mortem diagnosis.*"

██████ Doc. 289333 at 8; ██████ Doc. 289332 at 8.

I conclude that the June Agreement would have denied recovery for a Death with CTE that preceded July 7, 2014, but which was diagnosed by examination of brain tissue after that date. I reach that view by focusing on the plain text of the June Agreement itself. My interpretation finds further support in (i) the papers that moved the June Agreement to the Court's attention; (ii) the explicit statement of a timing rule for CTE diagnoses in the distributed Long-Form Notice; and (iii) the subsequent months of reactions to those developments, which affirmed that the diagnostic cutoff matched that for Death with CTE.

Given this interpretation of what the June Agreement would have compelled had *it* been the operative document in this Settlement, I cannot agree that the proposed February Amendments, later approved in April 2015, cut back on Claimants' rights by making 6.3(f) more explicit. Those amendments, as Judge Brody already held, improved the deal without taking rights away. Claimants' Appeal must fail at its first step: they cannot show that they were harmed by the 2015 amendments.

I will go no further. I agree with Claimants that if the June Agreement contained no diagnostic deadline, the due process consequences would be complex. Claimants argue that new notices should have been required, and that they should be able to amend the Agreement now in their favor. The NFL Parties deny that result, defending the accuracy and completeness of the Long-Form Notice that Claimants received. Both parties appear to ask me to resolve this aspect of Claimants' due process challenge.

But my limited charge is "to take all steps necessary to faithfully oversee the implementation and administration of the Settlement Agreement."[113] The relevant Notices and Agreement have been approved by the District Court and the Third Circuit: it goes well-beyond my writ to opine on their legality. I will leave further due process questions to the District Court, should it see the need to reach them.

I merely interpret the (operative) April 2015 Amended Class Action Settlement and the proposed June 2014 Agreement to contain the same basic requirement for an Award of Death with

---

[113] Settlement Agreement, Section 10.1(a)(ii).

CTE: that the post-mortem Diagnosis, by a board-certified neuropathologist, occur by the relevant Approval Date.[114]

## CONCLUSION

Ms. ███████ and Ms. ███████ are Representative Claimants for Retired Players who died in 2008 and suffered from CTE. For the purposes of the Amended Settlement Agreement, both sufficiently demonstrated the latter fact through a post-mortem diagnosis by a neuropathologist. But both diagnoses occurred after April 22, 2015.

As such, their diagnoses came too late under the Amended Settlement Agreement, Section 6.3(f). The Claims Administrator correctly applied the Amended Settlement Agreement's clear textual command.

At the urging of the parties to these Appeals, I have analyzed whether this outcome would have arisen under the proposed Agreement of June 25, 2014. I conclude that the requirement that death and diagnosis both occur prior to the final approval date was not novel to the Amended Agreement but was present in the June Agreement as well.

Both Claimants argue that application of Section 6.3(f) raises due process issues. They can renew those arguments, as well as any objections to my analysis of the June Agreement, in the District Court.[115] The Appeals are denied.

Date: October 7, 2023

_David A. Hoffman_

David Hoffman, Special Master

---

[114] They are not precisely the same for those Claimants dying between June 2014 and April 2015, who receive in the Amended Agreement the right to recover for Diagnoses occurring up to 270 days from death.

[115] I certify that my contract interpretation discussion is reviewable *de novo* under FRCP 53(f)4 and the Rule 31 of the Rules Governing Appeals of Claim Determinations. Only my factual conclusions, on page 13, are final.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

IN RE: NATIONAL FOOTBALL §        No. 2:12-md-02323-AB
LEAGUE PLAYERS' §
CONCUSSION §
INJURY LITIGATION §            MDL No. 2323
§
§         **Hon. Anita B. Brody**
THIS DOCUMENT RELATES TO: §
ALL ACTIONS §

## NOTICE OF APPEAL

Notice is hereby given that Class Members Robin Cornish (SPID 950012548) and Carleen Hastings (SPID 950013395) ("Class Members") appeal to the United States Court of Appeals for the Third Circuit from the Order Denying their Objections (Dkt. No. 12469), which was entered on June 9, 2025.

Dated: July 7, 2025

Respectfully Submitted,

*/s/ David Campbell*

Justin Demerath
Texas State Bar No. 24034415
O'Hanlon, Demerath & Castillo
808 West Avenue
Austin, Texas 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919

jdemerath@808west.com

David Campbell
Texas State Bar No. 24057033
Thompson & Horton LLP
8300 N. MoPac Expressway, Suite 220
Austin, TX 78759
Telephone: (512) 615-2350
Facsimile: (713) 583-8884
dcampbell@thompsonhorton.com

**Counsel for the Class Members**

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2025, a true and correct copy of the foregoing

Notice of Appeal was filed via the Electronic Case Filing System in the United States

District Court for the Eastern District of Pennsylvania on all parties registered for

CM/ECF in this litigation.


_/s/ David Campbell_
David Campbell