No. 25-2271

# UNITED STATES COURT OF APPEALS

# FOR THE THIRD CIRCUIT

———————

ROBIN CORNISH AND CARLEEN HASTINGS,

*Plaintiffs-Appellants,*

v.

NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC,

*Defendants-Appellees,*

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania, No. 2:12-md-02323 (Brody, A.)

———————

**APPENDIX VOLUME II (pp. 30-1902)**

———————

DAVID J. CAMPBELL

THOMPSON & HORTON LLP

8300 N. MOPAC EXPRESSWAY, SUITE 220

AUSTIN, TEXAS 78759

(512) 615-2350

October 8, 2025

# TABLE OF CONTENTS

## VOLUME II

Docket Sheet, E. Pen. No. 2:12-md-02323 .............................................................30

Motion of Proposed Class Counsel for an Order, Dkt. No. 6073, Jun. 25, 2014
............................................................................................................829

  Exhibit A: Proposed Order, Dkt. No. 6073-1, Jun. 25, 2014 ...........834

  Exhibit B: Class Action Settlement Agreement as of June 25, 2014, Dkt. No. 6073-2, Jun. 25, 2014 ................................................869

  Exhibit C: Declaration of Katherine Kinsella, Dkt. No. 6073-3, Jun. 25, 2014 .................................................................1032

  Exhibit D: Declaration of Mediator and Former US District Court Judge Layn R. Phillips in Support of Preliminary Approval of Settlement, Dkt. No. 6073-4, Jun. 25, 2014 ...............................1118

 Memorandum of Law in Support of Motion of Proposed Class Counsel for an Order, Dkt. No. 6073-5, Jun. 25, 2014...........................................1129

Objection to June 25, 2014 Class Action Settlement and Opposition to Motion for Preliminary Approval of Sean Morey, Alan Faneca, Bem Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine, Dkt. No 6082, July 2, 2014.......................................................1220

Order, Dkt. No. 6084, July 7, 2014....................................................1278

 NFL Concussion Settlement, Dkt. No. 6084-1, July 7, 2014....................1287

 NFL Concussion Settlement Notice, Dkt. No. 6084-2, July 7, 2014 ........1307

Class Action Settlement Agreement as of June 25, 2014, Dkt. No. 6087, July 7, 2014 ...........................................................................1308

Motion for Approval of Completed Versions of Long-Form Notice and Summary Notice, Dkt. No. 6086, July 8, 2014 ........................................1470

 NFL Concussion Settlement Notice (Long Form), Dkt. No. 6086-1, July 8, 2014.............................................................................1472

 NFL Concussion Settlement Notice (Summary), Dkt. No. 6086-2, July 8, 2014 .............................................................................1493

 [Proposed] Order, Dkt. No. 6086-3, July 8, 2014 ....................................1496

i

Order, Dkt. No. 6093, Jul. 9, 2014 ...................................................................1498

    Exhibit 1: NFL Concussion Settlement Notice (Long-Form), Dkt. No. 6093-1, Jul. 9, 2014 ..........................................................1499

    Exhibit 2: NFL Concussion Settlement Notice, Dkt. No. 6093-2, Jul. 9, 2014 ...............................................................1520

Objection of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick "Rock" Cartwright, Jeff Rohrer, and Sean Considine, to Class Action Settlement, Dkt. No. 6201, Oct. 6, 2014 ..............................1521

    Declaration of Eric R. Nitz, Dkt. No. 6201-1, Oct. 6, 2014 ......................1646

    Exhibit 1: Seeger Weiss Up-to-Date Information on NFL Football Concussions, Dkt. No. 6201-2, Oct. 6, 2014 ...................1661

    Exhibit 2: NFL, Retired Players Resolve Concussion Litigation; Court-Appointed Mediator Hails "Historic" Agreement, Dkt. No. 6201-2, Oct. 6, 2014 .................................................................1664

    Exhibit 3: Concussion Committee Breaks with Predecessor, Dkt. No. 6201-2, Oct. 6, 2014 ..........................................................1667

    Exhibit 4: N.F.L Acknowledges Long-Term Concussion Effects, Dkt. No. 6201-2, Oct. 6, 2014 ..........................................................1675

    Exhibit 5: The Spectrum of disease in chronic traumatic encephalopathy, Dkt. No. 6201-2, Oct. 6, 2014 ..............................1679

    Exhibit 6: The clinical spectrum of sport-related traumatic brain injury, Dkt. No. 6201-3, Oct. 6, 2014 ..............................................1702

    Exhibit 7: Chronic Traumatic Encephalopathy: A Review, Dkt. No. 6201-3, Oct. 6, 2014 ................................................................1712

    Exhibit 8: Tauopathy PET and amyloid PET in the diagnosis of chronic traumatic encephalopathy: studies of a retired NFL player and of a man with FTD and a severe head injury, Dkt. No. 6201-3, Oct. 6, 2014 ........................................................1723

    Exhibit 9: Current Understanding of Chronic Traumatic Encephalopathy, Dkt. No. 6201-4, Oct. 6, 2014 ..............................1732

    Exhibit 10: Clinical subtypes of chronic traumatic encephalopathy: literature review and proposed research

diagnostic criteria for traumatic encephalopathy syndrome, Dkt. No. 6201-4, Oct. 6, 2014 ................................................................1746

Exhibit 11: Chronic Traumatic Encephalopathy: A Potential Late Effect of Sport-Related Concussive and Subconcussive Head Trauma, Dkt. No. 6201-4, Oct. 6, 2014 .................................1764

Exhibit 12: Clinical presentation of chronic traumatic encephalopathy, Dkt. No. 6201-4, Oct. 6, 2014.............................1775

Exhibit 13: Written Testimony of Robert A. Stern, Ph.D., Dkt. No. 6201-5, Oct. 6, 2014................................................................1786

Exhibit 14: 76 of 79 Deceased NFL Players Found to Have Brain Disease, Dkt. No. 6201-5, Oct. 6, 2014 .................................1795

Exhibit 15: Expert Ties Ex-Player's Suicide to Brain Damage, Dkt. No. 6201-5, Oct. 6, 2014.........................................................1798

Exhibit 16: Brain and nervous system disorders among NFL Players, Dkt. No. 6201-6, Oct. 6, 2014 ...........................................1804

Exhibit 17: Chronic traumatic encephalopathy: neurodegeneration following repetitive concussive and subconcussive brain trauma, Dkt. No. 6201-6, Oct. 6, 2014 ..........1809

Exhibit 18: Neurodegenerative causes of death among retired National Football Leave players, Dkt. No. 6201-6, Oct. 6, 2014 ...1821

Exhibit 19: Brain Trauma Extends Reach Into Soccer, Dkt. No. 6201-6, Oct. 6, 2014.......................................................................1829

Exhibit 20: How Many Times Will you Crash Your Car?, Dkt. No. 6201-6, Oct. 6, 2014................................................................1833

Exhibit 21: Traumatic brain injury may be an independent rick factor for stroke, Dkt. No. 6201-6, Oct. 6, 2014 .............................1837

Exhibit 22: Neuropsychology and clinical neuroscience of persistent post-concussive syndrome, Dkt. No. 6201-6, Oct. 6, 2014 ........................................................................................1847

Exhibit 23: Is there Chronic Brain Damage in Retired NFL Players? Neuroradiology, Neuropsychology, and Neurology

Examinations of 45 Retired Players, Dkt. No. 6201-6, Oct. 6, 2014 ................................................................................................1870

Exhibit 24: Cerebral microbleeds: a new dilemma in stroke medicine, Dkt. No. 6201-6, Oct. 6, 2014 ........................................1883

Exhibit 25: NFL Europe's injured flown to Birmingham, Dkt. No. 6201-6, Oct. 6, 2014 .................................................................1899

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:12-md-02323-AB

MDL-2323 IN RE: NATIONAL FOOTBALL LEAGUE
PLAYERS' CONCUSSION INJURY LITIGATION
Assigned to: DISTRICT JUDGE ANITA B. BRODY
all others Case: 2:20-cv-04165-AB
Case in other court:  USCA FOR THE THIRD CIRCUIT, 14-
03520
USCA FOR THE THIRD CIRCUIT, 14-03693
USCA FOR THE THIRD CIRCUIT, 15-02206
USCA FOR THE THIRD CIRCUIT, 15-02217
USCA FOR THE THIRD CIRCUIT, 15-02230
USCA FOR THE THIRD CIRCUIT, 15-02234
USCA FOR THE THIRD CIRCUIT, 15-02272
USCA FOR THE THIRD CIRCUIT, 15-02273
USCA FOR THE THIRD CIRCUIT, 15-02290
USCA FOR THE THIRD CIRCUIT, 15-02291
USCA FOR THE THIRD CIRCUIT, 15-02292
USCA FOR THE THIRD CIRCUIT, 15-02294
USCA FOR THE THIRD CIRCUIT, 15-02304
USCA FOR THE THIRD CIRCUIT, 15-02305
USCA FOR THE THIRD CIRCUIT, 18-01040
USCA FOR THE THIRD CIRCUIT, 18-01482
USCA FOR THE THIRD CIRCUIT, 18-01639
USCA, 18-02012
USCA FOR THE THIRD CIRCUIT, 18-02184
USCA FOR THE THIRD CIRCUIT, 18-02225
USCA FOR THE THIRD CIRCUIT, 18-02249
USCA, 18-02253
USCA, 18-02332
USCA, 18-02416
USCA, 18-02417
USCA, 18-02418
USCA, 18-02419
USCA, 18-02422
USCA, 18-02582
USCA FOR THE THIRD CIRCUIT, 18-02650
USCA FOR THE THIRD CIRCUIT, 18-02651
USCA FOR THE THIRD CIRCUIT, 18-02661
USCA, 18-02684
USCA, 18-02724
USCA, 19-01385
USCA, 19-01760
USCA, 19-01771

Date Filed: 01/31/2012
Jury Demand: None
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**-30-**

USCA, 19-02085
USCA, 19-02753
USCA, 20-03401
USCA for the Third Circuit, 22-02381
USCA for the Third Circuit, 22-02441
USCA for the Third Circuit, 23-01585
THIRD CIRCUIT, 24-01910
USCA for the Third Circuit, 24-02684
USCA for the Third Circuit, 24-02839
US COURT OF APPEALS, 25-02271

Cause: 28:1332 Diversity-Personal Injury

**IN RE:**

**IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION**     represented by    **DAVID D. LANGFITT**
Langfitt PLLC
P.O. Box 302
Gladwyne, PA 19035
610-787-1706
Email: david@langfittpllc.com
*ATTORNEY TO BE NOTICED*

**JAMES R. DUGAN , II**
THE DUGAN LAW FIRM
365 CANAL ST STE 1000
NEW ORLEANS, LA 70130
504-648-0180
Email: jdugan@dugan-lawfirm.com
*ATTORNEY TO BE NOTICED*

**JOHN D. GIDDENS**
JOHN D. GIDDENS LAW FIRM
P.O. BOX 22546
JACKSON, MS 39225
601-355-2022
Email: john@law-inc.com
*ATTORNEY TO BE NOTICED*

**KELLY ELAINE FERRARO**
BERKOWITZ & HANNA LLC
733 SUMMER ST 2ND FL
STAMFORD, CT 06901
203-324-7909
Email: kferraro@theberkowitzlawfirm.com
*ATTORNEY TO BE NOTICED*

**Russell Berkowitz**
Berkowitz and Hanna LLC
2 Corporate Drive
Ste 3rd Floor
Shelton, CT 06484
203-324-7909
Fax: 203-324-5067
Email:

**-31-**

rberkowitz@theberkowitzlawfirm.com
*ATTORNEY TO BE NOTICED*

**Special Master**

**PERRY GOLKIN**                                  represented by   **PERRY GOLKIN**
                                                                  500 PARK AVE 4TH FL
                                                                  NEW YORK, NY 10022
                                                                  646-205-1220
                                                                  Email: pgolkin@ppcenterprises.com
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

**Special Master**

**WENDELL E. PRITCHETT**                          represented by   **DENNIS R. SUPLEE**
*TERMINATED: 03/04/2024*                                          Welsh & Recker, P.C.
                                                                  306 Walnut Street
                                                                  Philadelphia, PA 19106
                                                                  267-764-5500
                                                                  Email: dsuplee@welshrecker.com
                                                                  *TERMINATED: 03/04/2024*
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **WENDELL E. PRITCHETT**
                                                                  UNIVERSITY OF PENNSYLVANIA LAW
                                                                  SCHOOL
                                                                  1901 WALNUT STREET
                                                                  APT. 16C
                                                                  PHILADELPHIA, PA 19103
                                                                  215-760-7538
                                                                  Email: pritchet@law.upenn.edu
                                                                  *TERMINATED: 03/04/2024*
                                                                  *LEAD ATTORNEY*

**Special Master**

**JO-ANN M. VERRIER**                             represented by   **DENNIS R. SUPLEE**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **JO-ANN M. VERRIER**
                                                                  UNIVERSITY OF PENNSYLVANIA LAW
                                                                  SCHOOL
                                                                  3501 SANSOM STREET
                                                                  PHILADELPHIA, PA 19104
                                                                  215-898-6746
                                                                  Email: jverrier@penncareylaw.upenn.edu
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

**Special Master**

**SPECIAL INVESTIGATOR**
**LAWRENCE F. STENGEL**

**Special Master**

**SUSAN M. LIN**    represented by **SUSAN M. LIN**
                 KAIRYS RUDOVSKY MESSING
                 FEINBERG & LIN LLP
                 THE CAST IRON BUILDING
                 718 ARCH ST SUITE 501 SOUTH
                 PHILADELPHIA, PA 19106
                 215-925-4400
                 Fax: 215-915-5365
                 Email: slin@krlawphila.com
                 *LEAD ATTORNEY*
                 *ATTORNEY TO BE NOTICED*

**Special Master**

**DAVID HOFFMAN**    represented by **DAVID HOFFMAN**
                 UNIVERSITY OF PENNSYLVANIA
                 CAREY LAW SCHOOL
                 3501 SANSOM ST.
                 PHILADELPHIA, PA 19104
                 215.898.9170
                 Email: dhoffman@law.upenn.edu
                 PRO SE

                 **DENNIS R. SUPLEE**
                 (See above for address)
                 *LEAD ATTORNEY*
                 *ATTORNEY TO BE NOTICED*

**Adminstrator**

**CLAIMS ADMINISTRATOR**    represented by **ORRAN L. BROWN**
                 BROWNGREER PLC
                 250 Rocketts Way
                 RICHMOND, VA 23231
                 804-521-7201
                 Fax: 804-521-7299
                 Email: obrown@browngreer.com
                 *ATTORNEY TO BE NOTICED*

                 **Roma Petkauskas**
                 BrownGreer Plc
                 250 Rocketts Way
                 Richmond, VA 23231
                 804-521-7218
                 Email: rpetkauskas@browngreer.com
                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**TIM HOWARD HOWARD AND**  represented by **TIM HOWARD HOWARD AND**
**ASSOCIATES ATTORNEYS AT LAW,**      **ASSOCIATES ATTORNEYS AT LAW,**
**P.A.**                 **P.A.**
                 Email: Tim@HowardJustice.com
                 PRO SE

**PHILLIP TIMOTHY HOWARD**
HOWARD & ASSOCIATES
1415 EAST PIEDMONT DRIVE
SUITE 5
TALLAHASSEE, FL 32308
850-298-4455
Email: tim@howardjustice.com
*TERMINATED: 02/16/2023*

**WADE H. TOMLINSON**
POPE MCGLAMRY KILPATRICK
MORRISON & NORWOOD PC
1111 BAY AVE SUITE 450
POBOX 2128
COLUMBUS, GA 31901
706-324-0050
Email: triptomlinson@pmkm.com
*TERMINATED: 02/09/2022*

**Plaintiff**

**EDDIE ANDERSON**                    represented by  **JAMES R. DUGAN , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

**WADE H. TOMLINSON**
(See above for address)
*TERMINATED: 02/09/2022*

**Plaintiff**

**Acosta and Associates LLC**          represented by  **MICHAEL J. ACOSTA**
ACOSTA AND ASSOCIATES LLC
8558 GLEN CAMPBELL ROAD
PHILADELPHIA, PA 19128
610-462-3332
Email: info@lawacosta.com
*ATTORNEY TO BE NOTICED*

**WADE H. TOMLINSON**
(See above for address)
*TERMINATED: 02/09/2022*

**Plaintiff**

**KEVIN HENRY**                        represented by  **STEVEN N. HERMAN**
Zuckerman Spaeder LLP
2100 L Street, NW
Ste 400
Washington, DC 20036
202-778-1883
Email: sherman@zuckerman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CYRIL V. SMITH**
ZUCKERMAN SPAEDER LLP

**-34-**

100 EAST PRATT STREET
SUITE 2440
BALTIMORE, MD 21202
410-332-0444
Fax: 410-659-0436
Email: csmith@zuckerman.com
*ATTORNEY TO BE NOTICED*

**EZRA B. MARCUS**
Zuckerman Spaeder LLP
2100 L Street NW
Ste 400
Washington, DC 20037-1525
202-778-1800
Email: emarcus@zuckerman.com *(Inactive)*
*ATTORNEY TO BE NOTICED*

**WADE H. TOMLINSON**
(See above for address)
*TERMINATED: 02/09/2022*

**Plaintiff**

**Najeh Davenport**                    represented by **STEVEN N. HERMAN**
                                       (See above for address)
                                       *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*

                                       **CYRIL V. SMITH**
                                       (See above for address)
                                       *ATTORNEY TO BE NOTICED*

                                       **EZRA B. MARCUS**
                                       (See above for address)
                                       *TERMINATED: 03/09/2022*

                                       **WADE H. TOMLINSON**
                                       (See above for address)
                                       *TERMINATED: 02/09/2022*

**Plaintiff**

**Langfitt Garner PLLC**               represented by **DAVID D. LANGFITT**
                                       (See above for address)
                                       *ATTORNEY TO BE NOTICED*

                                       **WADE H. TOMLINSON**
                                       (See above for address)
                                       *TERMINATED: 02/09/2022*

**Plaintiff**

**RICHARD COLLINS**                    represented by **RICHARD B. COLLINS**
                                       COLLINS & TRUETT ATTORNEYS PA
                                       113 S. MONROE STREET
                                       TALLAHASSEE, FL 32301
                                       850-765-5798

**-35-**

Fax: 904-385-4932
Email: RBC@CollinsTruett.com
*ATTORNEY TO BE NOTICED*

**WADE H. TOMLINSON**
(See above for address)
*TERMINATED: 02/09/2022*

**Plaintiff**

**TYRONE CARTER**                    represented by  **TYRONE CARTER**
                                                     PRO SE

**Plaintiff**

**APRIL CARTER**                     represented by  **APRIL CARTER**
                                                     PRO SE

**Plaintiff**

**Margrit Dyko**                     represented by  **DAVID J. CAMPBELL**
                                                     Thompson & Horton, LLP
                                                     Thompson & Horton, LLP
                                                     8300 N. MoPac Expressway
                                                     Suite 220
                                                     78759
                                                     Austin, TX 78759
                                                     512-615-2350
                                                     Email: dcampbell@thompsonhorton.com
                                                     *ATTORNEY TO BE NOTICED*

                                                     **JUSTIN BROOKS DEMERATH**
                                                     O'HANLN, DEMERATH & CASTILLO
                                                     808 WEST AVENUE
                                                     AUSTIN, TX 78701
                                                     512-494-9949
                                                     Email: jdemerath@808west.com
                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Andre Howard**                     represented by  **DAVID J. CAMPBELL**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **JUSTIN BROOKS DEMERATH**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Donna Martin**                     represented by  **DAVID J. CAMPBELL**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **JUSTIN BROOKS DEMERATH**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

**-36-**

**Plaintiff**

**Rhonda Duncan**                    represented by **DAVID J. CAMPBELL**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

                                     **JUSTIN BROOKS DEMERATH**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lenore Stehouwer**                 represented by **DAVID J. CAMPBELL**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

                                     **JUSTIN BROOKS DEMERATH**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mindy Stubbs**                     represented by **DAVID J. CAMPBELL**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

                                     **JUSTIN BROOKS DEMERATH**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ellen Morin**                      represented by **DAVID J. CAMPBELL**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

                                     **JUSTIN BROOKS DEMERATH**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rona Taylor**                      represented by **DAVID J. CAMPBELL**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

                                     **JUSTIN BROOKS DEMERATH**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lisa Chamberlin**                  represented by **DAVID J. CAMPBELL**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

                                     **JUSTIN BROOKS DEMERATH**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

**-37-**

**Plaintiff**

Nina Hunter                                    represented by    **DAVID J. CAMPBELL**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **JUSTIN BROOKS DEMERATH**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

YVONNE SAGAPOLUTELE                            represented by    **DAVID J. CAMPBELL**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **JUSTIN BROOKS DEMERATH**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

Wanda Cayolle-Payne                            represented by    **DAVID J. CAMPBELL**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **JUSTIN BROOKS DEMERATH**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

Gwendolyn Daniels                              represented by    **DAVID J. CAMPBELL**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **JUSTIN BROOKS DEMERATH**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

Sexton Holmes                                  represented by    **DAVID J. CAMPBELL**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **JUSTIN BROOKS DEMERATH**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

Ella McGill                                    represented by    **DAVID J. CAMPBELL**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **JUSTIN BROOKS DEMERATH**

**-38-**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Holly Oliver**                          represented by    **DAVID J. CAMPBELL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JUSTIN BROOKS DEMERATH**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gary Schuh**                            represented by    **DAVID J. CAMPBELL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JUSTIN BROOKS DEMERATH**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John H. Baker, III**                    represented by    **DAVID J. CAMPBELL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JUSTIN BROOKS DEMERATH**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Henry McMillian**                       represented by    **IAN P. CLOUD**
**HEARD ROBINS CLOUD BALCK &**
**LUBEN**
3800 BUFFALO SPEEDWAY
5TH FLOOR
HOUSTON, TX 77098
713-650-1200
Email: icloud@robinscloud.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CLASS COUNSEL**                         represented by    **CHRISTOPHER A. SEEGER**
**SEEGER WEISS LLP**
55 CHALLENGER ROAD, 6th FL
RIDGEFIELD PARK, NJ 07660
212-584-0700
Email: cseeger@seegerweiss.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robin Cornish**                         represented by    **Robin Cornish**
PRO SE

**Plaintiff**

**Carleen Hastings**                        represented by **Carleen Hastings**
                                             PRO SE


V.

**Petitioner**

**Robins Cloud LLP**                        represented by **IAN P. CLOUD**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*


**Petitioner**

**The Dugan Law Firm, APLC**                represented by **JAMES R. DUGAN , II**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*


V.

**Movant**

**SEAN MOREY**                              represented by **WILLIAM T. HANGLEY**
*TERMINATED: 07/29/2014*                     HANGLEY ARONCHICK SEGAL &
                                             PUDLIN
                                             ONE LOGAN SQUARE, 27TH FLOOR
                                             PHILADELPHIA, PA 19103-6933
                                             215-496-7001
                                             Email: whangley@hangley.com
                                             *TERMINATED: 03/01/2021*
                                             *LEAD ATTORNEY*

                                             **ERIC R. NITZ**
                                             MOLOLAMKEN LLP
                                             600 NEW HAMPSHIRE AVE NW
                                             SUITE 660
                                             WASHINGTON, DC 20037
                                             202-556-2000
                                             Email: enitz@mololamken.com
                                             *TERMINATED: 03/01/2021*

                                             **KAITLIN R. O'DONNELL**
                                             MOLOLAMKEN LLP
                                             540 MADISON AVE
                                             NEW YORK, NY 10022
                                             212-607-8167
                                             *TERMINATED: 03/01/2021*

                                             **LINDA SUSAN MULLENIX**
                                             2305 BARTON CREEK BLVD UNIT 2
                                             AUSTIN, TX 78735
                                             512-263-9330
                                             Email: lmullenix@hotmail.com
                                             *TERMINATED: 03/01/2021*

**-40-**

**MARTIN VINCENT TOTARO**
MOLOLAMKEN LLP
600 NEW HAMPSHIRE AVE NW SUITE 660
WASHINGTON, DC 20037
202-556-2013
*TERMINATED: 03/01/2021*

**MICHELE D. HANGLEY**
HANGLEY ARONCHICK SEGAL & PUDLIN
ONE LOGAN SQUARE 27TH FLOOR
PHILADELPHIA, PA 19103-6933
215-496-7061
Email: mhangley@hangley.com
*TERMINATED: 03/01/2021*

**STEVEN F. MOLO**
MOLOLAMKEN LLP
430 PARK AVE
NEW YORK, NY 10022
212-607-8160
Email: smolo@mololamken.com
*TERMINATED: 03/01/2021*

**THOMAS J. WIEGAND**
MOLOLAMKEN LLP
430 PARK AVE
NEW YORK, NY 10022
212-607-8160
Email: twiegand@mololamken.com
*TERMINATED: 03/01/2021*

**Movant**

**ALAN FANECA**
*TERMINATED: 07/29/2014*

represented by **WILLIAM T. HANGLEY**
(See above for address)
*TERMINATED: 03/01/2021*
*LEAD ATTORNEY*

**ERIC R. NITZ**
(See above for address)
*TERMINATED: 03/01/2021*

**KAITLIN R. O'DONNELL**
(See above for address)
*TERMINATED: 03/01/2021*

**LINDA SUSAN MULLENIX**
(See above for address)
*TERMINATED: 03/01/2021*

**MARTIN VINCENT TOTARO**
(See above for address)
*TERMINATED: 03/01/2021*

**-41-**

**MICHELE D. HANGLEY**
(See above for address)
*TERMINATED: 03/01/2021*

**STEVEN F. MOLO**
(See above for address)
*TERMINATED: 03/01/2021*

**THOMAS J. WIEGAND**
(See above for address)
*TERMINATED: 03/01/2021*

**Movant**

**BEN HAMILTON**                    represented by    **WILLIAM T. HANGLEY**
*TERMINATED: 07/29/2014*                              (See above for address)
                                                      *TERMINATED: 03/01/2021*
                                                      *LEAD ATTORNEY*

**ERIC R. NITZ**
(See above for address)
*TERMINATED: 03/01/2021*

**KAITLIN R. O'DONNELL**
(See above for address)
*TERMINATED: 03/01/2021*

**LINDA SUSAN MULLENIX**
(See above for address)
*TERMINATED: 03/01/2021*

**MARTIN VINCENT TOTARO**
(See above for address)
*TERMINATED: 03/01/2021*

**MICHELE D. HANGLEY**
(See above for address)
*TERMINATED: 03/01/2021*

**STEVEN F. MOLO**
(See above for address)
*TERMINATED: 03/01/2021*

**THOMAS J. WIEGAND**
(See above for address)
*TERMINATED: 03/01/2021*

**Movant**

**ROBERT ROYAL**                    represented by    **WILLIAM T. HANGLEY**
*TERMINATED: 07/29/2014*                              (See above for address)
                                                      *TERMINATED: 03/01/2021*
                                                      *LEAD ATTORNEY*

**ERIC R. NITZ**

(See above for address)
*TERMINATED: 03/01/2021*

**KAITLIN R. O'DONNELL**
(See above for address)
*TERMINATED: 03/01/2021*

**LINDA SUSAN MULLENIX**
(See above for address)
*TERMINATED: 03/01/2021*

**MARTIN VINCENT TOTARO**
(See above for address)
*TERMINATED: 03/01/2021*

**MICHELE D. HANGLEY**
(See above for address)
*TERMINATED: 03/01/2021*

**STEVEN F. MOLO**
(See above for address)
*TERMINATED: 03/01/2021*

**THOMAS J. WIEGAND**
(See above for address)
*TERMINATED: 03/01/2021*

**Movant**

**RODERICK CARTWRIGHT**                    represented by    **WILLIAM T. HANGLEY**
*TERMINATED: 07/29/2014*                                     (See above for address)
                                                             *TERMINATED: 03/01/2021*
                                                             *LEAD ATTORNEY*

                                                             **ERIC R. NITZ**
                                                             (See above for address)
                                                             *TERMINATED: 03/01/2021*

                                                             **KAITLIN R. O'DONNELL**
                                                             (See above for address)
                                                             *TERMINATED: 03/01/2021*

                                                             **LINDA SUSAN MULLENIX**
                                                             (See above for address)
                                                             *TERMINATED: 03/01/2021*

                                                             **MARTIN VINCENT TOTARO**
                                                             (See above for address)
                                                             *TERMINATED: 03/01/2021*

                                                             **MICHELE D. HANGLEY**
                                                             (See above for address)
                                                             *TERMINATED: 03/01/2021*

                                                             **STEVEN F. MOLO**

**-43-**

(See above for address)
*TERMINATED: 03/01/2021*

**THOMAS J. WIEGAND**
(See above for address)
*TERMINATED: 03/01/2021*

**Movant**

**JEFF ROHRER**
*TERMINATED: 07/29/2014*

represented by    **WILLIAM T. HANGLEY**
(See above for address)
*TERMINATED: 03/01/2021*
*LEAD ATTORNEY*

**ERIC R. NITZ**
(See above for address)
*TERMINATED: 03/01/2021*

**KAITLIN R. O'DONNELL**
(See above for address)
*TERMINATED: 03/01/2021*

**LINDA SUSAN MULLENIX**
(See above for address)
*TERMINATED: 03/01/2021*

**MARTIN VINCENT TOTARO**
(See above for address)
*TERMINATED: 03/01/2021*

**MICHELE D. HANGLEY**
(See above for address)
*TERMINATED: 03/01/2021*

**STEVEN F. MOLO**
(See above for address)
*TERMINATED: 03/01/2021*

**THOMAS J. WIEGAND**
(See above for address)
*TERMINATED: 03/01/2021*

**Movant**

**SEAN CONSIDINE**
*TERMINATED: 07/29/2014*

represented by    **WILLIAM T. HANGLEY**
(See above for address)
*TERMINATED: 03/01/2021*
*LEAD ATTORNEY*

**ERIC R. NITZ**
(See above for address)
*TERMINATED: 03/01/2021*

**KAITLIN R. O'DONNELL**
(See above for address)
*TERMINATED: 03/01/2021*

**-44-**

**LINDA SUSAN MULLENIX**
(See above for address)
*TERMINATED: 03/01/2021*

**MARTIN VINCENT TOTARO**
(See above for address)
*TERMINATED: 03/01/2021*

**MICHELE D. HANGLEY**
(See above for address)
*TERMINATED: 03/01/2021*

**STEVEN F. MOLO**
(See above for address)
*TERMINATED: 03/01/2021*

**THOMAS J. WIEGAND**
(See above for address)
*TERMINATED: 03/01/2021*

**Movant**

**ARIZONA CARDINALS FOOTBALL CLUB LLC**                    represented by **ALEXANDRA M. WALSH**
Anapol Weiss
14 Ridge Square NW Suite 342
Ste 342
Washington, DC 20016
202-780-3014
Fax: 215-735-2211
Email: awalsh@wilkinsonwalsh.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BETH A. WILKINSON**
WILKINSON STEKLOFF LLP
2001 M Street NW
10th Floor
Washington, DC 20036
United Sta
202-847-4010
Fax: 202-847-4005
Email: bwilkinson@wilkinsonstekloff.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BRAD S. KARP**
PAUL WEISS RIFKIND WHARTON & GARRISON LLP
1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
212-373-3316
Email: bkarp@paulweiss.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**-45-**

**BRUCE BIRENBOIM**
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP
1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
212-373-3165
Email: bbirenboim@paulweiss.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CASEY O. HOUSLEY**
Sanders Warren & Russell LLP
11225 College Boulevard
Suite 450
66210, Suite 1250
Overland Park, KS 66210
913-234-6100
Fax: 913-234-6199
Email: c.housley@swrllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**JOHN LORENTZ**    represented by    **MICHAEL H. MOIRANO**
MOIRANO GORMAN KENNY LLC
135 S. LASALLE ST
SUITE 2200
CHICAGO, IL 60603
312-614-1260
Email: mmoirano@mgklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John W Lorentz**
The Lorentz Law Firm, PA
398 Snow Dr
Ft Myers, FL 33919
651-483-4400
Fax: 651-204-0065
Email: john@lorentzlaw.com
*ATTORNEY TO BE NOTICED*

**RON A. COHEN**
100 North LaSalle Street
25th Floor
Chicago, IL 60602
312-346-1145
Email: rac@slavinlegal.com
*ATTORNEY TO BE NOTICED*

**Movant**

**THE LOCKS LAW FIRM**    represented by    **DAVID D. LANGFITT**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**GENE LOCKS**
LOCKS LAW FIRM PLLC
747 THIRD AVE 37TH FL
NEW YORK, NY 10017
212-838-3333
Email: glocks@lockslaw.com
*ATTORNEY TO BE NOTICED*

**MICHAEL B. LEH**
LOCKS LAW FIRM
601 WALNUT ST STE 720 EAST
PHILADELPHIA, PA 19106
215-893-3410
Fax: 215-893-3444
Email: mleh@lockslaw.com
*ATTORNEY TO BE NOTICED*

**TOBIAS BARRINGTON WOLFF**
UNIVERSITY OF PENNSYLVANIA LAW
SCHOOL
3501 SANSOM STREET
PHILADELPHIA, PA 19104
Email: twolff@law.upenn.edu
*ATTORNEY TO BE NOTICED*

**Movant**

**Patrick J Tighe**                    represented by **PATRICK JOSEPH TIGHE**
X1LAW
721 US HWY 1 # 101
NORTH PALM BEACH, FL 33408
561-537-3319
Fax: 561-537-7193
Email: Pat@x1law.com
*ATTORNEY TO BE NOTICED*

**Movant**

**Steckler Wayne Cochran PLLC**        represented by **BRUCE W. STECKLER**
Steckler Wayne Cherry & Love PLLC
12720 Hillcrest Rd
Suite 1045
Dallas, TX 75230
972-387-4040
Fax: 972-387-4041
Email: bruce@stecklerlaw.com
*ATTORNEY TO BE NOTICED*

**Movant**

**MARCUS BUCKLEY**                     represented by **BRUCE W. STECKLER**
(See above for address)
*ATTORNEY TO BE NOTICED*

**-47-**

**Movant**

**Steckler Wayne & Love PLLC**                represented by   **BRUCE W. STECKLER**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**TIM HOWARD HOWARD AND**
**ASSOCIATES ATTORNEYS AT LAW,**
**P.A.**

**Claimant**

**Justin Wyatt**                              represented by   **JUSTIN R. WYATT**
                                                              JR Wyatt Law, PLLC
                                                              295 Madison Avenue
                                                              21 st Floor
                                                              New York, NY 10017
                                                              212-557-2776
                                                              Fax: 646-349-2776
                                                              Email: justin@jrwyattlaw.com
                                                              *ATTORNEY TO BE NOTICED*

**Interested Party**

**PROFESSOR WILLIAM B.**
**RUBENSTEIN**

**Interested Party**

**PROASSURANCE CORPORATION**                  represented by   **Craig Kelley**
                                                              Kelley Kaplan & Eller, PLLC
                                                              1665 Palm Beach Lakes Blvd
                                                              Ste 1000
                                                              West Palm Beach, FL 33401
                                                              561-491-1200
                                                              Fax: 561-684-3773
                                                              Email: craig@kelleylawoffice.com
                                                              *ATTORNEY TO BE NOTICED*

**Interested Party**

**John Giddens**                              represented by   **JOHN D. GIDDENS**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Interested Party**

**John Giddens**

**Amicus**

**BRAIN INJURY ASSOCIATION OF**               represented by   **CHRISTOPHER J. WRIGHT**
**AMERICA**                                                   WILTSHIRE & GRANNIS LLP
                                                              1200 EIGHTEENTH ST NW
                                                              WASHINGTON, DC 20036
                                                              202-730-1325
                                                              Email: cwright@wiltshiregrannis.com

**-48-**

*TERMINATED: 06/06/2017*
*LEAD ATTORNEY*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/31/2012 | 1 | Copy of Transfer Order from the Judicial Panel on Multidistrict Litigation that pursuant to 28 U.S.C. 1407 the actions listed on Schedule A are transferred to the ED-PA and assigned to the Honorable Anita B. Brody for coordinated or consolidated pretrial proceedings in that district. (Applies to C.A. 11-5209). (tjd) (Entered: 01/31/2012) |
| 02/14/2012 | 2 | Copy of Conditional Transfer Order (CTO-1) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody. (tjd) (Entered: 02/14/2012) |
| 02/23/2012 | 3 | Copy of Conditional Transfer Order (CTO-2) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: FL-S 1:12-20269. (tjd) (Entered: 02/23/2012) |
| 03/06/2012 | 4 | CASE MANAGMENT ORDER NO. 1 RE: PRACTICE AND PROCEDURE ORDER UPON TRANSFER PURSUANT TO 28 U.S.C. 1407(a) GOVERNING ALL TAG-ALONG AND ANY OTHER ACTION TRANSFERRED TO THIS COURT PURSUANT TO RULE 7.1 OF THE JPML; AN INITIAL ORGANIZATION CONFERENCE WILL BE HELD ON APRIL 25, 2012 AT 10:30 AM IN COURTROOM 7-B; BY MARCH 30, 2012 ANY PARTY WHO FILED A MOTION IN ANY ACTION TO DATE MUST REFILE THAT MOTION ON THIS COURT'S ECF IN THE MASTER DOCKET CASE FILE AND ANY APPLICABLE INDIVIDUAL CASE DOCKETS AS WELL; BY APRIL 4, 2012 COUNSEL MUST FILE ON ECF A PROPOSED CASE MANAGEMENT ORDER AND A PROPOSED CONFERENCE AGENDA AS OUTLINED HEREIN; BY APRIL 4, 2012 ANY COUNSEL WHO WISHES TO SERVE AS LEAD COUNSEL, LIAISON COUNSEL, OR STEERING COMMITTEE MEMBER MUST FILE AN APPLICATION; ALL COUNSEL MUST BE REGISTERED ON THIS COURT'S ECF AND ALL ORDERS WILL BE TRANSMITTED TO COUNSEL ONLY BY ECF; ALL PLEADINGS AND OTHER PAPERS MUST BE FILED ON ECF WITH NO OTHER SERVICE OF FILING NECESSARY; COUNSEL MUST PROVIDE CHAMBERS WITH TWO HARD COPIES OF ALL FILINGS; COUNSEL WHO APPEARED IN THE TRANSFEROR COURT NEED NOT ENTER A SEPARATE APPEARANCE IN THIS COURT; ATTORNEYS ADMITTED TO PRACTICE AND ARE IN GOOD STANDING IN ANY U.S. DISTRICT COURT ARE ADMITTED PRO HAC VICE IN THIS LITIGATION; PARTIES ARE NOT REQUIRED TO RETAIN LOCAL COUNSEL, ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 3/6/2012; 3/6/2012 ENTERED AND COPIES MAILED AND E-MAILED. (APPLIES TO ALL ACTIONS).(tjd) (Entered: 03/06/2012) |
| 03/08/2012 | 5 | Copy of Conditional Transfer Order (CTO-3) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: LA-E 2:12-459. (tjd) (Entered: 03/08/2012) |
| 03/09/2012 | 6 | NOTICE of Appearance by DANIEL E. GUSTAFSON on behalf of PLAINTIFF(S) with Certificate of Service(GUSTAFSON, DANIEL) (Entered: 03/09/2012) |

| 03/09/2012 | 7 | NOTICE of Appearance by JASON S. KILENE on behalf of PLAINTIFF(S) with Certificate of Service(KILENE, JASON) (Entered: 03/09/2012) |
| --- | --- | --- |
| 03/12/2012 | 8 | NOTICE of Appearance by GRAHAM B. LIPPSMITH on behalf of PLAINTIFF(S) with Certificate of Service(LIPPSMITH, GRAHAM) (Entered: 03/12/2012) |
| 03/12/2012 | 9 | NOTICE of Appearance by CELENE SHI-LING CHAN on behalf of PLAINTIFF(S) with Certificate of Service(CHAN, CELENE) (Entered: 03/12/2012) |
| 03/13/2012 | 10 | NOTICE by PLAINTIFF(S) *Notice of Attorney Service List Corrections* (MCGLAMRY, MICHAEL) (Entered: 03/13/2012) |
| 03/14/2012 | 11 | NOTICE by PLAINTIFF(S) *Re: Attorney Service List Correction for Richard S. Lewis* (KENNEY, JEANNINE) (Entered: 03/14/2012) |
| 03/14/2012 | 12 | Copy of Conditional Transfer Order (CTO-4) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: TX-S 4:12-582. (tjd) Modified on 3/15/2012 (tjd). (Entered: 03/15/2012) |
| 03/15/2012 | 13 | NOTICE by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC. *of Attorney Service List Correction* (DOHERTY, MARY) (Entered: 03/15/2012) |
| 03/16/2012 | 14 | NOTICE by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC *OF ATTORNEY SERVICE LIST CORRECTIONS* (KLINGES, DANA) (Entered: 03/16/2012) |
| 03/19/2012 | 15 | NOTICE by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC *CORRECTED NOTICE OF ATTORNEY SERVICE LIST CORRECTIONS* (KLINGES, DANA) (Entered: 03/19/2012) |
| 03/19/2012 | 16 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To PLAINTIFF ANDREW GLOVER(SEEGER, CHRISTOPHER) (Entered: 03/19/2012) |
| 03/27/2012 | 17 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)* filed by NATIONAL FOOTBALL LEAGUE, INC..Memorandum, Declaration, Certificate of Service. (Attachments: # 1 Memorandum of Law, # 2 Proposed Order, # 3 Certificate of Service, # 4 Declaration of Dennis L. Curran, # 5 Exhibit 1, # 6 Exhibit 2, # 7 Exhibit 3, # 8 Exhibit 4 (Part 1 of 2), # 9 Exhibit 4 (Part 2 of 2), # 10 Exhibit 5 (Part 1 of 2), # 11 Exhibit 5 (Part 2 of 2), # 12 Exhibit 6 (Part 1 of 5), # 13 Exhibit 6 (Part 2 of 5), # 14 Exhibit 6 (Part 3 of 5), # 15 Exhibit 6 (Part 4 of 5), # 16 Exhibit 6 (Part 5 of 5), # 17 Exhibit 7 (Part 1 of 6), # 18 Exhibit 7 (Part 2 of 6), # 19 Exhibit 7 (Part 3 of 6), # 20 Exhibit 7 (Part 4 of 6), # 21 Exhibit 7 (Part 5 of 6), # 22 Exhibit 7 (Part 6 of 6), # 23 Exhibit 8 (Part 1 of 5), # 24 Exhibit 8 (Part 2 of 5), # 25 Exhibit 8 (Part 3 of 5), # 26 Exhibit 8 (Part 4 of 5), # 27 Exhibit 8 (Part 5 of 5), # 28 Exhibit 9 (Part 1 of 5), # 29 Exhibit 9 (Part 2 of 5), # 30 Exhibit 9 (Part 3 of 5), # 31 Exhibit 9 (Part 4 of 5), # 32 Exhibit 9 (Part 5 of 5), # 33 Exhibit 10 (Part 1 of 4), # 34 Exhibit 10 (Part 2 of 4), # 35 Exhibit 10 (Part 3 of 4), # 36 Exhibit 10 (Part 4 of 4), # 37 Exhibit 11 (Part 1 of 2), # 38 Exhibit 11 (Part 2 of 2), # 39 Exhibit 12 (Part 1 of 2), # 40 Exhibit 12 (Part 2 of 2), # 41 Exhibit 13 (Part 1 of 2), # 42 Exhibit 13 (Part 2 of 2), # 43 Exhibit 14 (Part 1 of 2), # 44 Exhibit 14 (Part 2 of 2), # 45 Exhibit 15 (Part 1 of 2), # 46 Exhibit 15 (Part 2 of 2), # 47 Exhibit 16 (Part 1 of 2), # 48 Exhibit 16 (Part 2 of 2), # 49 Exhibit 17 (Part 1 of 3), # 50 Exhibit 17 (Part 2 of 3), # 51 Exhibit 17 (Part 3 of 3), # 52 Exhibit 18, # 53 Exhibit 19, # 54 Exhibit 20, # 55 Exhibit 21, # 56 Exhibit 22, # 57 Exhibit 23 (Part 1 of 2), # 58 Exhibit 23 (Part 2 of 2), # 59 Exhibit 24 (Part 1 of 2), # 60 Exhibit 24 (Part 2 of 2), # 61 Exhibit 25 (Part |

| | | |
|---|---|---|
| | | 1 of 2), # [62](#) Exhibit 25 (Part 2 of 2), # [63](#) Exhibit 26 (Part 1 of 2), # [64](#) Exhibit 26 (Part 2 of 2), # [65](#) Exhibit 27 (Part 1 of 2), # [66](#) Exhibit 27 (Part 2 of 2), # [67](#) Exhibit 28)(KLINGES, DANA) Modified on 5/3/2012 (kk, ). (Entered: 03/27/2012) |
| 03/29/2012 | [18](#) | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.MEMORANDUM OF POINTS AND AUTHORITIES, CERTIFICATE OF SERVICE. (Attachments: # [1](#) Proposed Order, # [2](#) Declaration of Dennis L. Curran, # [3](#) Exhibit 1, # [4](#) Exhibit 2, # [5](#) Exhibit 3, # [6](#) Exhibit 4, # [7](#) Exhibit 5, # [8](#) Exhibit 6, # [9](#) Exhibit 7 (Part 1 of 2), # [10](#) Exhibit 7 (Part 2 of 2), # [11](#) Exhibit 8 (Part 1 of 2), # [12](#) Exhibit 8 (Part 2 of 2), # [13](#) Exhibit 9 (Part 1 of 2), # [14](#) Exhibit 9 (Part 2 of 2), # [15](#) Exhibit 10 (Part 1 of 2), # [16](#) Exhibit 10 (Part 2 of 2), # [17](#) Exhibit 11, # [18](#) Exhibit 12, # [19](#) Exhibit 13, # [20](#) Exhibit 14, # [21](#) Exhibit 15, # [22](#) Exhibit 16, # [23](#) Exhibit 17, # [24](#) Exhibit 18, # [25](#) Exhibit 19, # [26](#) Exhibit 20, # [27](#) Exhibit 21, # [28](#) Exhibit 22, # [29](#) Exhibit 23, # [30](#) Exhibit 24, # [31](#) Exhibit 25, # [32](#) Exhibit 26, # [33](#) Exhibit 27, # [34](#) Exhibit 28, # [35](#) Certificate of Service)(KLINGES, DANA) (Entered: 03/29/2012) |
| 03/29/2012 | [19](#) | REPLY to Response to Motion re [18](#) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # [1](#) Certificate of Service)(KLINGES, DANA) (Entered: 03/29/2012) |
| 03/29/2012 | [20](#) | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.MEMORANDUM OF POINTS AND AUTHORITIES, CERTIFICATE OF SERVICE. (Attachments: # [1](#) Proposed Order, # [2](#) Declaration of Dennis L. Curran, # [3](#) Exhibit 1, # [4](#) Exhibit 2, # [5](#) Exhibit 3, # [6](#) Exhibit 4, # [7](#) Exhibit 5, # [8](#) Exhibit 6, # [9](#) Exhibit 7 (Part 1 of 2), # [10](#) Exhibit 7 (Part 2 of 2), # [11](#) Exhibit 8 (Part 1 of 2), # [12](#) Exhibit 8 (Part 2 of 2), # [13](#) Exhibit 9 (Part 1 of 2), # [14](#) Exhibit 9 (Part 2 of 2), # [15](#) Exhibit 10 (Part 1 of 2), # [16](#) Exhibit 10 (Part 2 of 2), # [17](#) Exhibit 11, # [18](#) Exhibit 12, # [19](#) Exhibit 13, # [20](#) Exhibit 14, # [21](#) Exhibit 15, # [22](#) Exhibit 16, # [23](#) Exhibit 17, # [24](#) Exhibit 18, # [25](#) Exhibit 19, # [26](#) Exhibit 20, # [27](#) Exhibit 21, # [28](#) Exhibit 22, # [29](#) Exhibit 23, # [30](#) Exhibit 24, # [31](#) Exhibit 25, # [32](#) Exhibit 26, # [33](#) Exhibit 27, # [34](#) Exhibit 28, # [35](#) Certificate of Service)(KLINGES, DANA) (Entered: 03/29/2012) |
| 03/29/2012 | [21](#) | REPLY to Response to Motion re [20](#) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # [1](#) Certificate of Service)(KLINGES, DANA) (Entered: 03/29/2012) |
| 03/29/2012 | [22](#) | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.MEMORANDUM OF POINTS AND AUTHORITIES, CERTIFICATE OF SERVICE. (Attachments: # [1](#) Proposed Order, # [2](#) Declaration of Dennis L. Curran, # [3](#) Exhibit 1, # [4](#) Exhibit 2, # [5](#) Exhibit 3, # [6](#) Exhibit 4, # [7](#) Exhibit 5, # [8](#) Exhibit 6, # [9](#) Exhibit 7 (Part 1 of 2), # [10](#) Exhibit 7 (Part 2 of 2), # [11](#) Exhibit 8 (Part 1 of 2), # [12](#) Exhibit 8 (Part 2 of 2), # [13](#) Exhibit 9 (Part 1 of 2), # [14](#) Exhibit 9 (Part 2 of 2), # [15](#) Exhibit 10 (Part 1 of 2), # [16](#) Exhibit 10 (Part 2 of 2), # [17](#) Exhibit 11, # [18](#) Exhibit 12, # [19](#) Exhibit 13, # [20](#) Exhibit 14, # [21](#) Exhibit 15, # [22](#) Exhibit 16, # [23](#) Exhibit 17, # [24](#) Exhibit 18, # [25](#) Exhibit 19, # [26](#) Exhibit 20, # [27](#) Exhibit 21, # [28](#) Exhibit 22, # [29](#) Exhibit 23, # [30](#) Exhibit 24, # [31](#) Exhibit 25, # [32](#) Exhibit 26, # [33](#) Exhibit 27, # [34](#) Exhibit 28, # [35](#) Certificate of Service)(KLINGES, DANA) (Entered: 03/29/2012) |
| 03/29/2012 | [23](#) | REPLY to Response to Motion re [22](#) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by NATIONAL FOOTBALL LEAGUE, INC., NFL |

**-51-**

| | | |
|---|---|---|
| | | PROPERTIES LLC. (Attachments: # 1 Certificate of Service)(KLINGES, DANA) (Entered: 03/29/2012) |
| 03/29/2012 | 24 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaints Pursuant to Rules 8 and 12(b)(6), Memorandum of Points and Authorities, Certificate of Service. (Attachments: # 1 Proposed Order, # 2 Certificate of Service)(DARRELL, EDEN) (Entered: 03/29/2012) |
| 03/29/2012 | 25 | MOTION Request for Judicial Notice re 24 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Certificate of Service. (Attachments: # 1 Proposed Order, # 2 Exhibit A (Part 1 of 2), # 3 Exhibit A (Part 2 of 2), # 4 Certificate of Service)(DARRELL, EDEN) (Entered: 03/29/2012) |
| 03/29/2012 | 37 | Copy of Conditional Transfer Order (CTO-5) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: TX-S 4:12-794. (tjd) (Entered: 03/30/2012) |
| 03/30/2012 | 26 | REPLY to Response to Motion re 24 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B (part 1 of 3), # 3 Exhibit B (part 2 of 3), # 4 Exhibit B (part 3 of 3), # 5 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 27 | REPLY to Response to Motion re 25 MOTION Request for Judicial Notice re 24 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Certificate of Service) (DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 28 | MOTION to Sever filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Notice of Motion and Motion to Sever Pursuant to FRCP 20 and 21, Memorandum of Points and Authorities, Declaration of Paul Cereghini, Certificate of Service. (Attachments: # 1 Proposed Order, # 2 Declaration of Paul Cereghini, # 3 Exhibit A, # 4 Exhibit B, # 5 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 29 | MOTION Request for Judicial Notice re 28 MOTION to Sever filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Certificate of Service. (Attachments: # 1 Proposed Order, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 30 | REPLY to Response to Motion re 28 MOTION to Sever filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL |

| | | |
|---|---|---|
| | | SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 31 | REPLY to Response to Motion re 29 MOTION Request for Judicial Notice re 28 MOTION to Sever filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 32 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Notice of Motion and Motion to Dismiss Plaintiffs' Second Amended Complaint; Certificate of Service. (Attachments: # 1 Proposed Order, # 2 Exhibit A, # 3 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 33 | MOTION Request for Judicial Notice re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Certificate of Service. (Attachments: # 1 Proposed Order, # 2 Exhibit A (part 1 of 2), # 3 Exhibit A (part 2 of 2), # 4 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 34 | REPLY to Response to Motion re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Exhibit A (part 1 of 5), # 2 Exhibit A (part 2 of 5), # 3 Exhibit A (part 3 of 5), # 4 Exhibit A (part 4 of 5), # 5 Exhibit A (part 5 of 5), # 6 Certificate of Service)(DARRELL, EDEN) (Additional attachment(s) added on 5/10/2018: # 7 sealed document) (tjd, ). (Entered: 03/30/2012) |
| 03/30/2012 | 35 | REPLY to Response to Motion re 33 MOTION Request for Judicial Notice re 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Exhibit A, # 2 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 36 | MOTION to Sever filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Notice of Motion and Motion to Sever Pursuant to FRCP 20 and 21; Certificate of Service. (Attachments: # 1 Proposed Order, # 2 Exhibit A (part 1 of 3), # 3 Exhibit A (part 2 of 3), # 4 Exhibit A (part 3 of 3), # 5 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |

| 03/30/2012 | 38 | MOTION Request for Judicial Notice re 36 MOTION to Sever filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Certificate of Service. (Attachments: # 1 Proposed Order, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
|---|---|---|
| 03/30/2012 | 39 | REPLY to Response to Motion re 36 MOTION to Sever filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Exhibit A, # 2 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 40 | MOTION for Discovery *Request to Conduct Pretrial Discovery* filed by PLAINTIFF(S).Memorandum. (Attachments: # 1 Exhibit A)(COBEN, LARRY) (Entered: 03/30/2012) |
| 03/30/2012 | 41 | NOTICE by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC *Letter Requesting Extension Of Deadline To File Case Management Order And Conference Agenda Enclosing [Proposed] Order* (KLINGES, DANA) (Entered: 03/30/2012) |
| 03/30/2012 | 42 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Notice of Motion and Motion to Dismiss Plaintiffs' First Amended Complaint; Certificate of Service. (Attachments: # 1 Proposed Order, # 2 Exhibit A, # 3 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 43 | MOTION Request for Judicial Notice re 42 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Certificate of Service. (Attachments: # 1 Proposed Order, # 2 Exhibit A (part 1 of 2), # 3 Exhibit A (part 2 of 2), # 4 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 44 | REPLY to Response to Motion re 42 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Exhibit A (part 1 of 4), # 2 Exhibit A (part 2 of 4), # 3 Exhibit A (part 3 of 4), # 4 Exhibit A (part 4 of 4), # 5 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 45 | REPLY to Response to Motion re 43 MOTION Request for Judicial Notice re 42 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Exhibit A, # 2 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 46 | MOTION to Sever filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Notice of |

| | | |
|---|---|---|
| | | Motion and Motion to Sever Pursuant to FRCP 20 and 21, Certificate of Service. (Attachments: # 1 Proposed Order, # 2 Exhibit A (part 1 of 3), # 3 Exhibit A (part 2 of 3), # 4 Exhibit A (part 3 of 3), # 5 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 47 | MOTION Request for Judicial Notice re 46 MOTION to Sever filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Certificate of Service. (Attachments: # 1 Proposed Order, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 48 | REPLY to Response to Motion re 46 MOTION to Sever filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Exhibit A, # 2 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 49 | REPLY to Response to Motion re 47 MOTION Request for Judicial Notice re 46 MOTION to Sever filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Exhibit A, # 2 Certificate of Service)(DARRELL, EDEN) (Entered: 03/30/2012) |
| 03/30/2012 | 50 | NOTICE of Appearance by GARRETT DENNIS BLANCHFIELD, JR on behalf of PLAINTIFF(S) with Certificate of Service(BLANCHFIELD, GARRETT) (Entered: 03/30/2012) |
| 03/30/2012 | 51 | NOTICE by NATIONAL FOOTBALL LEAGUE, INC. *OF WITHDRAWAL OF MOTION FOR A STAY OF PROCEEDINGS* (KLINGES, DANA) (Entered: 03/30/2012) |
| 04/02/2012 | 52 | ORDER that THE FOLLOWING CORRESPONDING SENTENCE OF PARAGRAPH 4 OF CASE MANAGMENT ORDER NO. 1 IS MODIFIED AS FOLLOWS: BY APRIL 11, 2012, COUNSEL MUST FILE ON ECF A PROPOSED CASE MANAGMENT ORDER AND PROPOSED CONFERENCE AGENDA. ALL OTHER TERMS OF CASE MANAGMENT ORDER NO. 1 REMAIN UNCHANGED.. SIGNED BY HONORABLE JOEL SLOMSKY AS EMERGENCY JUDGE FOR THE HONORABLE ANITA B. BRODY ON 4/2/2012. 4/2/2012 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) Modified on 4/2/2012 (mo, ). Modified on 4/2/2012 (mo, ). (Entered: 04/02/2012) |
| 04/02/2012 | 53 | RESPONSE in Opposition re 40 MOTION for Discovery *Request to Conduct Pretrial Discovery* filed by NATIONAL FOOTBALL LEAGUE, INC.. (Attachments: # 1 Proposed Order, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Certificate of Service)(KLINGES, DANA) (Entered: 04/02/2012) |
| 04/03/2012 | 54 | *Joint Application for Appointment of Plaintiffs' Executive Committee, Plaintiffs' Steering Committee, and Plaintiffs' Liaison Counsel* by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Certificate of Service) (KENNEY, JEANNINE) Modified on 4/4/2012 (tjd). (Entered: 04/03/2012) |
| 04/04/2012 | 55 | NOTICE of Appearance by ERIN C. BURNS on behalf of PLAINTIFF(S) with Certificate of Service(BURNS, ERIN) (Entered: 04/04/2012) |

| | | |
|---|---|---|
| 04/04/2012 | 61 | COPY OF MOTION FOR APPOINTMENT OF ATTORNEY DAVID S. CASEY, JR. TO STEERING COMMITTEE.(tjd) (Entered: 04/18/2012) |
| 04/11/2012 | 56 | NOTICE of Appearance by MICHAEL D. HAUSFELD on behalf of PLAINTIFF(S) (HAUSFELD, MICHAEL) (Entered: 04/11/2012) |
| 04/11/2012 | 57 | NOTICE by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC *Of Filing Proposed Case Management Order No. 3* (Attachments: # 1 Proposed Case Management Order No. 3 )(KLINGES, DANA) (Entered: 04/11/2012) |
| 04/11/2012 | 58 | NOTICE by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC *of Filing Proposed Conference Agenda* (Attachments: # 1 Proposed Conference Agenda) (KLINGES, DANA) (Entered: 04/11/2012) |
| 04/12/2012 | 59 | NOTICE of Appearance by J. GORDON RUDD on behalf of PLAINTIFF(S) (RUDD, J.) (Entered: 04/12/2012) |
| 04/16/2012 | 60 | APPLICATION of Attorney Derriel C. McCorvey For the Appointment to the Plaintiffs' Steering Committee. (tjd) (Entered: 04/17/2012) |
| 04/20/2012 | 62 | APPLICATION/PETITION *of Anthony G. Buzbee for Appointment to the Plaintiffs' Steering Committee* by PLAINTIFF(S). **(FILED IN ERROR BY ATTY, INCOMPLETE PDF, ATTY WILL RESUBMIT ENTRY)** (BUZBEE, ANTHONY) Modified on 4/20/2012 (tjd). (Entered: 04/20/2012) |
| 04/20/2012 | 63 | APPLICATION *of Anthony G. Buzbee for Appointment to the Plaintiffs' Steering Commitee* by PLAINTIFF(S). (BUZBEE, ANTHONY) Modified on 4/23/2012 (tjd). (Entered: 04/20/2012) |
| 04/26/2012 | 64 | CASE MANAGMENT ORDER NO. 2 - FOLLOWING THE APRIL 25, 2012 INITIAL ORGANIZATION CONFERENCE, IT IS ORDERED: I. THE COURT MAKES THE FOLLOWING APPOINTMENTS:(1-footnote)... IV ADDITIONAL. THE COURT WILL ISSUE ADDITIONAL ORDERS AS NEEDED..... SIGNED BY HONORABLE ANITA B. BRODY ON 4/26/2012. 4/26/2012 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) (Entered: 04/26/2012) |
| 04/30/2012 | 65 | Copy of Conditional Transfer Order (CTO-7) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: LAE 2:12-941.(kk, ) (Entered: 04/30/2012) |
| 05/01/2012 | 66 | ORDER that THE NATIONAL FOOTBALL LEAGUE'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(1) AND 12(b)(6)(ECF NO. 19) AND THE NATIONAL FOOTBALL LEAGUE'S MOTION FOR A STAY OF PROCEEDINGS (ECF NO. 21 ARE DENIED AS MOOT.. SIGNED BY HONORABLE ANITA B. BRODY ON 4/30/2012. 5/1/2012 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) (Entered: 05/01/2012) |
| 05/03/2012 | 67 | Application of Thomas Walter Umphrey for Appointment To The Plaintiffs' Steering Committee filed by PLAINTIFF(S).(MATHENY, MATTHEW) Modified on 5/9/2012 (tjd). (Entered: 05/03/2012) |
| 05/04/2012 | 68 | APPLICATION *of Thomas Walter Umphrey for Appointment to The Plaintiffs' Steering Committee* by PLAINTIFF(S). (MATHENY, MATTHEW) Modified on 5/9/2012 (tjd). (Entered: 05/04/2012) |
| 05/04/2012 | 69 | NOTICE of Appearance by RICHARD S. LEWIS on behalf of PLAINTIFF(S) (LEWIS, RICHARD) (Entered: 05/04/2012) |

| 05/08/2012 | 70 | Report Of *Plaintiffs' Executive Committee and Plaintiffs' Steering Committee Regarding Leadership Appointments* by PLAINTIFF(S). (Attachments: # 1 Proposed Case Management Order No. 3, # 2 Certificate of Service)(KENNEY, JEANNINE) (Entered: 05/08/2012) |
|---|---|---|
| 05/10/2012 | 71 | TRANSCRIPT of Organizational Courtroom Conference held on April 25, 2012 before The Honorable Anita B. Brody. (tjd) (mbh, ). (Entered: 05/10/2012) |
| 05/11/2012 | 72 | CASE MANAGEMENT ORDER NO. 3 ORDER RE 70 Report Of The Plaintiffs' Executive Committee and Plaintiffs' Steering Committee Regarding Leadership Appointments, filed by PLAINTIFF(S) Ordered that Sol Weiss, Esq. is appointed as Plaintiffs' Co-Lead Counsel to serve together with Christopher Seeger, Esq., and David S. Casey, Esq. and Derriel C. McCorvey, Esq. are appointed as additional members of the Plaintiffs' Steering Committee.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/10/12. 5/11/12 ENTERED AND COPIES MAILED, E-MAILED AND FAXED. (mef, ) (tjd, ). (Entered: 05/11/2012) |
| 05/11/2012 | 73 | Copy of Conditional Transfer Order (CTO-8) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: LA-E 2:12-1034; MS-S 3:12-281; TX-S 4:12-1244, 12-1296. (tjd) (Entered: 05/11/2012) |
| 05/15/2012 | 74 | NOTICE of Appearance by JONATHAN SHUB on behalf of PLAINTIFF(S) with Certificate of Service (Attachments: # 1 Exhibit Certificate of Service)(SHUB, JONATHAN) (Entered: 05/15/2012) |
| 05/15/2012 | 75 | NOTICE by PLAINTIFF(S) *of Tolling Agreement between Plaintiffs and National Football League Defendants* (Attachments: # 1 Exhibit A, # 2 Certificate of Service) (KENNEY, JEANNINE) (Entered: 05/15/2012) |
| 05/18/2012 | 76 | Copy of Conditional Transfer Order (CTO-9) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings and assigned to the Honorable Anita B. Brody: GA-N 1:12-1541. (tjd) (Entered: 05/18/2012) |
| 05/21/2012 | 77 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 05/21/2012) |
| 05/25/2012 | 78 | Copy of Conditional Transfer Order (CTO-10) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings and assigned to the Honorable Anita B. Brody: CA-N 3:12-2290. (tjd) (Entered: 05/25/2012) |
| 06/04/2012 | 79 | Copy of Conditional Transfer Order (CTO-11) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: GA-N 1:12-1739; LA-E 2:12-1303; TX-S 4:12-1548. (tjd) (Entered: 06/04/2012) |
| 06/04/2012 | 80 | NOTICE of Appearance by PHILIP W. THOMAS on behalf of PLAINTIFF(S) with Certificate of Service(THOMAS, PHILIP) (Entered: 06/04/2012) |
| 06/06/2012 | 81 | Letter Requesting Extension of Time to File *Short-form Complaint* filed by PLAINTIFF(S).**(INCORRECTLY FILED AS A MOTION BY ATTY; COPY OF LETTER AND PROPOSED ORDER SENT TO CHAMBERS)**. (Attachments: # 1 Text of Proposed Order)(KENNEY, JEANNINE) Modified on 6/7/2012 (tjd). (Entered: 06/06/2012) |

| 06/07/2012 | 82 | NOTICE of Appearance by A. ELIZABETH BALAKHANI on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC with Certificate of Service(BALAKHANI, A.) (Entered: 06/07/2012) |
|---|---|---|
| 06/07/2012 | 83 | PLAINTIFFS' MASTER ADMINISTRATIVE LONG-FORM COMPLAINT. JURY DEMAND, CERTIFICATE OF SERVICE. (Attachments: # 1 Cert of service)(tjd) (Entered: 06/07/2012) |
| 06/07/2012 | 84 | PLAINTIFFS' MASTER ADMINISTRATIVE CLASS ACTION COMPLAINT FOR MEDICAL MONITORING. JURY DEMAND. (APPLIES TO C.A 11-5209, 12-1035, 12-1036, 12-262, 12-287, 12-1037, 12-1423, 12-2464, 12-2505, 12-2799, 12-3224). (tjd) (Main Document 84 replaced on 6/7/2012) (tjd, ). (Entered: 06/07/2012) |
| 06/07/2012 | 85 | ORDER - UPON CONSIDERATION OF A LETTER REQUEST EXPRESSING THE AGREEMENT OF ALL PARTIES IN THE ABOVE-CAPTIONED MATTER TO AN EXTENSION OF TIME FOR THE SUMBISSION OF A SHORT-FORM COMPLAINT, IT IS HEREBY ORDERED THAT PLAINTIFFS SHALLFILE AN AGREED-UPON SHORT-FORM COMPLAINT ON OR BEFORE FRIDAY, JUNE 15, 2012. ALL OTHER DEADLINES SET BY CASE MANAGMENT ORDER NO. 2 ARE UNCHANGED. SIGNED BY HONORABLE ANITA B. BRODY ON 6/7/2012. 6/7/2012 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) (Entered: 06/07/2012) |
| 06/08/2012 | 86 | Letter to Hon. Anita B. Brody by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KLINGES, DANA) (Entered: 06/08/2012) |
| 06/11/2012 | 87 | NOTICE by PLAINTIFF(S) re 86 Praecipe/Request *(Response to Defendants Letter of June 8, 2012 Seeking Clarification of CMO 1 and Request to Stay Briefing on all Subsequently filed Remand Motions* (KENNEY, JEANNINE) (Entered: 06/11/2012) |
| 06/13/2012 | 88 | Copy of Conditional Transfer Order (CTO-12) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CO-D 1:12-1396; NJ-D 1:12-3140. (tjd) (Entered: 06/13/2012) |
| 06/13/2012 | 89 | ORDER that IN CONSIDERATION OF LETTERS FROM NFL DEFENDANTS AND PLAINTIFFS (ECF NOS. 86, 87), IT IS ORDERED AS FOLLOWS:. THE TIME FOR NFL DEFENDANTS AND RIDDELL DEFENDANTS TO RESPOND TO ANY MOTION TO REMAND FILED IN ANY ACTION - PRESENTLY CONSOLIDATED BEFORE THIS COURT IN THIS MULTIDISTRICT LITIGATION, OR SUBSEQUENTLY TRANSFERRED TO THIS COURT BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION PURSUANT TO RULE 7.1. OF THE RULES OF PROCEDURE OF THE PANEL, OR OTHERWISE TRANSFERRED OR REMOVED TO THIS COURT - IS STAYED UNTIL FURTHER ORDER FROM THIS COURT.. IN ACCCORDANCE WITH THIS COURTS'S POLICIES AND PROCEDURES.... SIGNED BY HONORABLE ANITA B. BRODY ON 6/13/2012. 6/13/2012 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) (Entered: 06/13/2012) |
| 06/15/2012 | 90 | NOTICE of Appearance by DAVID BAYLIS FRANCO on behalf of PLAINTIFF(S) with Certificate of Service(FRANCO, DAVID) (Entered: 06/15/2012) |
| 06/15/2012 | 91 | Copy of Conditional Transfer Order (CTO-13) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-C 2:12-4759, 12-4761, 12-4763; GA-N 1:12-1905; LA-E 2:12-1416. (tjd) (Entered: 06/15/2012) |

**-58-**

| 06/15/2012 | 92 | NOTICE by PLAINTIFF(S) *of Filing of Short-Form Complaint* (Attachments: # 1 Exhibit A, # 2 Certificate of Service)(KENNEY, JEANNINE) (Entered: 06/15/2012) |
| 06/18/2012 | 93 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). NATIONAL FOOTBALL LEAGUE, INC. waiver sent on 6/6/2012, answer due 8/6/2012. (THOMAS, PHILIP) (Entered: 06/18/2012) |
| 06/18/2012 | 3138 | PER CHAMBERS, COPY OF PLAINTIFFS' MOTION TO REMAND, FOR DISCOVERY IN AID OF REMAND, AND FOR SANCTIONS, COSTS AND ATTORNEY'S FEES. MEMORANDUM, CERTIFICATE OF SERVICE. (APPLIES TO C.A. 12-2728).(tjd) (Entered: 08/14/2012) |
| 06/19/2012 | 94 | NOTICE by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC *OF FILING OF PROPOSED CASE MANAGEMENT ORDER NO. 4* (Attachments: # 1 [PROPOSED] CASE MANAGEMENT ORDER NO. 4)(KLINGES, DANA) (Entered: 06/19/2012) |
| 06/19/2012 | 95 | NOTICE by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC. re 83 Complaint *(Brief Regarding Plaintiffs' Master Administrative Long-Form Complaint)*. Certificate of Service. (CEREGHINI, PAUL) Modified on 6/20/2012 (tjd). (Entered: 06/19/2012) |
| 06/20/2012 | 96 | NOTICE of Appearance by PHILIP FRANCIS COSSICH, JR on behalf of PLAINTIFF(S) with Certificate of Service(COSSICH, PHILIP) (Entered: 06/20/2012) |
| 06/20/2012 | 97 | NOTICE of Appearance by CHRISTINA MARIE COSSICH on behalf of PLAINTIFF(S) with Certificate of Service(COSSICH, CHRISTINA) (Entered: 06/20/2012) |
| 06/21/2012 | 98 | CASE MANAGEMENT ORDER NO. 4 that... TO PROMOTE JUDICIAL ECONOMY AND AVOID DUPLICATION, AND UPON CONSIDERATION OF THE AGREEMENT BY REPRESENTATIVES OF THE PARTIES WHO HAVE MET AND CONFERRED: THE COURT HEREBY ORDERS AS FOLLOWS:... ANY SUCH PERMISSIBLE MOTIONS TO DISMISS, INCLUDING BUT NOT LIMITED TO MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM OR FOR THE RUNNING OF STATUTES OF LIMITATION, MAY BE FILED PURSUANT TO A SCHEDULE SET FORTH BY THE COURT AT A LATER DATE.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/21/2012. 6/21/2012 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) (Entered: 06/21/2012) |
| 06/25/2012 | 99 | ORDER that PLAINTIFFS SUBMIT A RESPONSE TO RIDDELL DEFENDANTS' BRIEF REGARDING PLAINTIFFS' MASTER ADMINISTRATIVE LONG-FORM COMPLAINT (ECF NO. 95) BY JULY 9, 2012.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/25/2012. 6/25/2012 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) (Entered: 06/25/2012) |
| 06/25/2012 | 100 | MOTION to Remand *and Motion for Discovery in Aid of Remand* filed by PLAINTIFF(S).Plaintiffs Motion to Remand and Motion for Discovery in Aid of Remand. (Attachments: # 1 Text of Proposed Order Proposed Order 1, # 2 Text of Proposed Order Proposed Order 2, # 3 Memorandum, # 4 Exhibit Exhibit A, # 5 Exhibit Exhibit B, # 6 Exhibit Exhibit C-1, # 7 Exhibit Exhibit C-2, # 8 Certificate of Service)(MILLER, JONATHAN) (Entered: 06/25/2012) |
| 06/26/2012 | 101 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 06/26/2012) |

| 06/26/2012 | 102 | Copy of Conditional Transfer Order (CTO-14) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-C 2:12-5012; GA-N 1:12-1931, 12-1979; TX-S 4:12-1725, 12-1727. (tjd) (Entered: 06/27/2012) |
| --- | --- | --- |
| 06/29/2012 | 103 | Minute Sheet for proceedings held before HONORABLE ANITA B. BRODY: Telephone Conference held on June 28, 2012. Court Reporter: James F. G. Scheidt. (tjd) (Entered: 06/29/2012) |
| 07/02/2012 | 104 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). NFL PROPERTIES LLC waiver sent on 6/5/2012, answer due 8/6/2012. (THOMAS, PHILIP) (Entered: 07/02/2012) |
| 07/03/2012 | 105 | Copy of Conditional Transfer Order (CTO-15) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: GA-N 1:12-2088. (tjd) (Entered: 07/03/2012) |
| 07/04/2012 | 106 | SUMMONS Returned Executed by PLAINTIFF(S) served Summons and Complaint upon ALL AMERICAN SPORTS CORPORATION. (FRANCO, DAVID) (Entered: 07/04/2012) |
| 07/04/2012 | 107 | SUMMONS Returned Executed by PLAINTIFF(S) served Summons and Complaint upon NATIONAL FOOTBALL LEAGUE, INC.. NATIONAL FOOTBALL LEAGUE, INC. served on 5/15/2012, answer due 8/6/2012. (FRANCO, DAVID) (Entered: 07/04/2012) |
| 07/04/2012 | 108 | SUMMONS Returned Executed by PLAINTIFF(S) served Summons and Complaint upon RIDDELL SPORTS GROUP, INC.. (FRANCO, DAVID) (Entered: 07/04/2012) |
| 07/04/2012 | 109 | SUMMONS Returned Executed by PLAINTIFF(S) served Summons and Complaint upon RIDDELL, INC.. (FRANCO, DAVID) (Entered: 07/04/2012) |
| 07/05/2012 | 110 | STIPULATION AND ORDER - THIS STIPULATION AND AGREEMENT IS MADE THIS DAY, JULY 2, 2012 BY AND BETWEEN THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC (THE "NFL DEFENDANTS"), RIDDELL DEFENDANTS,1(footnote) AND, BY AND THROUGH THE PLAINTIFFS' EXECUTIVE COMMITTEE, ALL PLAINTIFFS.... 4. THE PARTIES SHALL FOLLOWTHIS COURT'S RESOLUTION OF MOTIONS FILED PURSUANT TO CMO NO. 2 AND PARAGRAPH 3 OF CMO NO.4, MEET AND CONFER REGARDING THE MOST APPROPRIATE MEANS OF OBTAINING DOCKET NUMBERS FOR INDIVIDUAL SFCS FILED IN THE ABOVE-CAPTIONED MULTIDISTRICT LITIGATION.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/3/2012. 7/5/2012 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) (Entered: 07/05/2012) |
| 07/06/2012 | 113 | Short Form Complaint - Marco Battaglia by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 114 | Short Form Complaint - Peter Bercich by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 115 | Short Form Complaints - Josh Bidwell by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 116 | Short Form Complaint - Ryon Bingham by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |

| 07/06/2012 | 117 | Short Form Complaint - Ruben Scott Blanton by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 118 | Short Form Complaint - Ryan Boschetti by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 119 | Short Form Complaint - Robert Buczkowski by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 120 | Short Form Complaint - Glenn Cadrez by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 121 | Short Form Complaint - Antoine Cash by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 122 | Short Form Complaint - Vinny Ciurciu by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 123 | Short Form Complaint - Kenneth Clark by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 124 | Short Form Complaint - Michael/Jennifer Cloud by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 125 | Short Form Complaint - Earl Dotson by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 126 | Short Form Complaint - Dovonte Edwards by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 127 | Short Form Complaint - John Elliott by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 128 | Short Form Complaint - Mark Fields by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 129 | Short Form Complaint - Lorenzo Freeman by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 130 | Short Form Complaint - Michael/Koren Furrey by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 131 | Short Form Complaint - Kelvin Garmon by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 132 | Short Form Complaint - Hunter/Amber Goodwin by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 133 | Short Form Complaint - Gaston Green by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 134 | Short Form Complaint - Conrad Hamilton by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 135 | Short Form Complaint - Antoine/Farishad Harris by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 136 | Short Form Complaint - Marques Harris by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |

| 07/06/2012 | 137 | Short Form Complaint - Carlton/Michelle Haselrig by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 138 | Short Form Complaint - Lincoln Hodgdon by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 139 | Short Form Complaint - Chris Hoke by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 140 | Short Form Complaint - Greg Horton by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 141 | Short Form Complaint - Scott Jackson by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 142 | Short Form Complaint - Carlos Jenkins by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 143 | Short Form Complaint - Eric Johnson by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 144 | Short Form Complaint - John V. Johnson by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 145 | Short Form Complaint - Brian Jones by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 146 | Short Form Complaint - Roger Knight by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 147 | Short Form Complaint - Scott Kooistra by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 148 | Short Form Complaint - Brody Liddiard by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 149 | Short Form Complaint - Samuel Lilly, IV by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 150 | Short Form Complaint - Christopher Liwienski by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 151 | Short Form Complaint - Antonio London by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 152 | Short Form Complaint - Duval Love by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 153 | Short Form Complaint - Derek Loville by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 154 | Short Form Complaint - Damion McIntosh by PLAINTIFF(S). (Applies to 14-cv-2754). (THOMPSON, JULIE) Modified on 7/9/2014 (tjd). (Entered: 07/06/2012) |
| 07/06/2012 | 155 | Short Form Complaint - Seth McKinney by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | 156 | Short Form Complaint - Steve McKinney by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |

**-62-**

| 07/06/2012 | [157](#) | Short Form Complaint - James McMahon by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [158](#) | Short Form Complaint - Darren Mickell by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [159](#) | Short Form Complaint - Jamir Miller by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [160](#) | Short Form Complaint - Larry Ned by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [161](#) | Short Form Complaint - Patrick Pass by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [162](#) | Short Form Complaint - Jason Peter by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [163](#) | Short Form Complaint - Keith Poole by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [164](#) | Short Form Complaint - James Price by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [165](#) | Short Form Complaint - Craig Sauer by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [166](#) | Short Form Complaint - A.J. Schable by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [167](#) | Short Form Complaint - Muhammad Shamsid-Deen by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [168](#) | Short Form Complaint - Jerald/Lisa Sisemore by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [169](#) | Short Form Complaint - Barry Stokes by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [170](#) | Short Form Complaint - Dan Stryzinski by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [171](#) | Short Form Complaint - Doug Thomas by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [172](#) | Short Form Complaint - Joseph/Nicole Thomas by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [173](#) | Short Form Complaint - James Trapp by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [174](#) | Short Form Complaint - Ryan Tucker by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [175](#) | Short Form Complaint - Zach Walz by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [176](#) | Short Form Complaint - Chris Warren by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |

| 07/06/2012 | [177](#) | Short Form Complaint - Larry Whigham by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [178](#) | Short Form Complaint - Brian Williams by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [179](#) | Short Form Complaint - Randal/Anabela Williams by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [180](#) | Short Form Complaint - Derrick Witherspoon by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [181](#) | Short Form Complaint - Anthony Wright by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [182](#) | Short Form Complaint - Micheal Young by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [183](#) | Short Form Complaint - Janet Duranko, Executrix of the Estate of Pete Duranko by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/06/2012 | [184](#) | Short Form Complaint - Eric Hilgenberg, Wrongful Death Trustee for the Estate of Wally Hilgenberg by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/06/2012) |
| 07/09/2012 | [185](#) | Short Form Complaint - Allen Dunbar by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [186](#) | Short Form Complaint - Arnold Miller by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [187](#) | Short Form Complaint - Brad Franklin by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [188](#) | Short Form Complaint - Bradley Sams by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [189](#) | Short Form Complaint - Brandon Winey by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [190](#) | Short Form Complaint - Carlos Pennywell by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [191](#) | Short Form Complaint - Charlie and Barbara Granger by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [192](#) | Short Form Complaint - Chris Carrier by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [193](#) | Short Form Complaint - Christopher White by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [194](#) | Short Form Complaint - Clinton and Jane James by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [195](#) | Short Form Complaint - Corey Raymond by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [196](#) | Short Form Complaint - Eddie Fuller by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |

| 07/09/2012 | [197](#) | Short Form Complaint - Eddie Kennison, III by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| --- | --- | --- |
| 07/09/2012 | [198](#) | Short Form Complaint - Edward Johnson, III by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [199](#) | Short Form Complaint - Elliott Jackson, Jr. by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [200](#) | Short Form Complaint - Errict Rhett by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [201](#) | Short Form Complaint - Gabe Northern by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [202](#) | Short Form Complaint - Harold Bishop by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [203](#) | Short Form Complaint - Herman Fontenot by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [204](#) | Short Form Complaint - James and Henrietta Davis by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [205](#) | Short Form Complaint - Joseph and Nancy Breen by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [206](#) | Short Form Complaint - Justin Jenkins by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [207](#) | Short Form Complaint - Justin Vincent by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [208](#) | Short Form Complaint - Karl Hankton by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [209](#) | Short Form Complaint - Kendel Shello by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [210](#) | Short Form Complaint - Liffort Hobley by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [211](#) | Short Form Complaint - Lyman White by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [212](#) | Short Form Complaint - Marcus Garrett by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [213](#) | Short Form Complaint - Michael Brooks by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [214](#) | Short Form Complaint - Phillip Hawkins by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [215](#) | Short Form Complaint - Raymond and Venna Jones by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [216](#) | *Short Form Complaint - John Avery* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |

| 07/09/2012 | 217 | Short Form Complaint - Reginald Freeman by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | 218 | Short Form Complaint - Reginald Nelson by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | 219 | Short Form Complaint - Rodney Phillips by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | 220 | Short Form Complaint - Shawn King by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | 221 | Short Form Complaint - Willie and Brenda Teal by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | 222 | *Short Form Complaint - Brian Baldinger* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 223 | Short Form Complaint - Delphrine Lee by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | 224 | *Short Form Complaint - Brad Quast* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 225 | *Short Form Complaint - Michael Schad* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 226 | *Short Form Complaint - Douglas C. Skene* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 227 | *Short Form Complaint - Michael Stromberg* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 228 | Short Form Complaint - Gerald/Margaret Feehery by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/09/2012) |
| 07/09/2012 | 229 | *Short Form Complaint - Maa Tanuvasa* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 230 | *Short Form Complaint - Anthony Thomas* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 231 | *Short Form Complaint - Eric Unverzagt* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 232 | *Short Form Complaint - Eric Wright* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 233 | *Short Form Complaint - Rodney Bellinger* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 234 | *Short Form Complaint - Courtland Bullard* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 235 | *Short Form Complaint - James Burgess* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 236 | *Short Form Complaint - Leroy Butler* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |

| 07/09/2012 | [237](#) | *Short Form Complaint - Keith Byars* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [238](#) | *Short Form Complaint - Derek Engler* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [239](#) | *Short Form Complaint - Keith Hamilton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [240](#) | *Short Form Complaint - Bryan Hinkle* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [241](#) | *Short Form Complaint - Michael Mason* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [242](#) | *Short Form Complaint - Frederick NIxon* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [243](#) | *Short Form Complaint - Ron Porter* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [244](#) | *Short Form Complaint - Roell Preston* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [245](#) | *Short Form Complaint - John E. Rogers* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [246](#) | *Short Form Complaint - Daniel Stubbs* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [247](#) | *Short Form Complaint - Reginald Sutton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [248](#) | *Short Form Complaint - Warren Bankston* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [249](#) | *Short Form Complaint - Tom Cassese* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [250](#) | *Short Form Complaint - Joe Cocozzo* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [251](#) | Short Form Complaint - Ronnie Halliburton by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | [252](#) | *Short Form Complaint - Scott Dierking* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [253](#) | *Short Form Complaint - Nuu K. Faaola* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [254](#) | *Short Form Complaint - Lamarr Glenn* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [255](#) | *Short Form Complaint - David Greenwood* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | [256](#) | *Short Form Complaint - Britt Hager* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |

| 07/09/2012 | 257 | *Short Form Complaint - Bruce W. Herron* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 258 | *Short Form Complaint - Darrel Earl Jones* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 259 | *Short Form Complaint - Leroy Kelly* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 260 | *Short Form Complaint - Gern Nagler* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 261 | *Short Form Complaint - Brent Novoselsky* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 262 | *Short Form Complaint - Christian Peter* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 263 | *Short Form Complaint - Michael Pitts* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 264 | Response re 95 Notice (Other), *Response to the Riddell Defendants Brief Regarding the Master Administrative Long-Form Complaint* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service) (KENNEY, JEANNINE) (Entered: 07/09/2012) |
| 07/09/2012 | 265 | MOTION to Substitute Party *and Suggestion of Death for Gerald J. Tubbs* filed by PLAINTIFF(S)..(MATHENY, MATTHEW) (Entered: 07/09/2012) |
| 07/09/2012 | 266 | SUGGESTION OF DEATH Upon the Record as to Gerald J. Tubbs by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/09/2012) |
| 07/09/2012 | 267 | *Short Form Complaint - Bill Howton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 268 | *Short Form Complaint - Billy Ray Barnes* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 269 | *Short Form Complaint - Bob DeMarco* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 270 | *Short Form Complaint - Brad Legget* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 271 | *Short Form Complaint - Derrick Burroughs* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 272 | *Short Form Complaint - Earl L. Thomas* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 273 | *Short Form Complaint - John Charles* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 274 | *Short Form Complaint - John Haines* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 275 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). NATIONAL FOOTBALL LEAGUE, INC. waiver sent on 4/25/2012, answer due 8/6/2012. (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | 276 | *Short Form Complaint - Johnnie Roland* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |

| 07/09/2012 | 277 | *Short Form Complaint - Keith VanHorne* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 278 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). NATIONAL FOOTBALL LEAGUE, INC. waiver sent on 7/5/2012, answer due 9/4/2012. (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | 279 | *Short Form Complaint - Ken Bell* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 280 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 07/09/2012) |
| 07/09/2012 | 281 | *Short Form Complaint - Kenneth Davis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 282 | *Short Form Complaint - Marc E. May* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 283 | *Short Form Complaint - Richard David Preston* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 284 | *Short Form Complaint - Rick Razzano, Sr.* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 285 | *Short Form Complaint - Ronald Moten* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 286 | *Short Form Complaint - Seth Joyner* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 287 | *Short Form Complaint - Steve Pisarkiewicz* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 288 | *Short Form Complaint - Thomas F. Louderback* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 289 | *Short Form Complaint - Todd Howard* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 290 | *Short Form Complaint - Troy Davis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 291 | *Short Form Complaint - David F. Alexander and Kathryn J. Alexander* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 292 | *Short Form Complaint - Christopher E. Barber and Veronica Barber* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 293 | *Short Form Complaint - Grantis Bell and Carla Bell* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 294 | *Short Form Complaint - Troy B. Benson and Jeryl Benson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 295 | *Short Form Complaint - Richard A. Bielski and Johan Bielski* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |
| 07/09/2012 | 296 | *Short Form Complaint - Gary T. Ellerson and Martha F. Ellerson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/09/2012) |

| 07/09/2012 | 297 | Short Form Complaint - Khalid Abdullah by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 298 | Short Form Complaint - Robert Brazile by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 299 | Short Form Complaint - Marcus Dupree by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 300 | Short Form Complaint - James "Jim" Grier by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 301 | Short Form Complaint - Demetrius Hill by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 302 | Short Form Complaint - John Jennings and Tanesha Jennings by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 303 | Short Form Complaint - Michael Jones by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 304 | Short Form Complaint - Dexter McCleon by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 305 | Short Form Complaint - Ben McGee, Jr. and Claudine N. McGee by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 306 | Short Form Complaint - Tobiath Myles and Lynn Denise Myles by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 307 | Short Form Complaint - Vernon Perry by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 308 | Short Form Complaint - TJ Slaughter by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 309 | Short Form Complaint - Fred Smoot and Summer Smoot by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 310 | Short Form Complaint - Roscoe Word, Jr., and Joyce Word by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 311 | Short Form Complaint - Khalid Abdullah by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 312 | Short Form Complaint - Robert Brazile by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 313 | Short Form Complaint - Marcus Dupree by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/09/2012 | 314 | Short Form Complaint - James "Jim"Grier by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/09/2012) |
| 07/10/2012 | 315 | *Short Form Complaint - Steve Everitt and Amy Everitt* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 316 | *Short Form Complaint - Scott Galyon and Chasity Galyon* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |

| 07/10/2012 | 317 | *Short Form Complaint - Dennis Gentry and Jaye Gentry* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 318 | *Short Form Complaint - Leo Goeas and Kathryn Goeas* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 319 | *Short Form Complaint - Andy Harmon and Kristy Harmon* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 320 | *Short Form Complaint - Eddie G. Hinton and Heidi Hinton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 321 | *Short Form Complaint - Jerry Holmes and Patricia A. Holmes* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 322 | *Short Form Complaint - Clinton Jones and Rosielee Jones* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 323 | *Short Form Complaint - Mark Kevin Kafentzis and Debra Kafentzis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 324 | *Short Form Complaint - Kenneth Leon King and Wanda King* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 325 | *Short Form Complaint - Jeff Kopp and Alycia Kopp* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 326 | *Short Form Complaint - Robert Landsee and Sharon Landsee* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 327 | *Short Form Complaint - Scott Lockwood and Sara Lockwood* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 328 | *Short Form Complaint - Michael McDonald and Cathryn McDonald* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 329 | *Short Form Complaint - Pete Mitchell and Tamara Mitchell* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 330 | *Short Form Complaint - Fred L. Morrison and Sophie Morrison* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 331 | *Short Form Complaint - John Neidert and Lindy Neidert* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 332 | *Short Form Complaint - Keith Neubert and Paula Neubert* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 333 | *Short Form Complaint - Dave Pivec and Sharon Pivec* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 334 | *Short Form Complaint - Jon Michael Reichenback and Lynne Reichenback* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 335 | *Short Form Complaint - Joseph W. Righetti and Rachel S. Righetti* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 336 | *Short Form Complaint - Kamal Ali Salaam-El and Aliyah Salaam-El* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |

| 07/10/2012 | 337 | *Short Form Complaint - Glenn Steele and Shawanda Steele* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 338 | *Short Form Complaint - Michael D. Stonebreaker and Catherine Stonebreaker* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 339 | *Short Form Complaint - Jeremiah Trotter and Tammi Trotter* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 340 | *Short Form Complaint - David Wasick and Carol Coates* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 341 | *Short Form Complaint - Cephus Weatherspoon and Michelle Weatherspoon* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 342 | *Short Form Complaint - Adrian Young and Pamela Young* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 343 | *Short Form Complaint - Robert Avellini* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 344 | *Short Form Complaint - Mark Collins* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 345 | *Short Form Complaint - Randy Cuthbert* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 346 | *Short Form Complaint - Elgin Davis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 347 | *Short Form Complaint - Ben Smith* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 348 | *Short Form Complaint - Robert B. Adams and Rachael Ann Adams* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 349 | *Short Form Complaint - Bruce Bell and Deborah Bell* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 350 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). NATIONAL FOOTBALL LEAGUE, INC. waiver sent on 6/5/2012, answer due 9/4/2012. (BEIGHTOL, KRISTEN) (Entered: 07/10/2012) |
| 07/10/2012 | 351 | *Short Form Complaint - John Brodie and Sue Brodie* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 352 | *Short Term Complaint - Michael Cheever and Shelley Cheever* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 353 | *Short Term Complaint - Terry Cousin and Carmen Cousin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 354 | *Short Term Complaint - James C. Culbreath, Jr. and Audrey Culbreath* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 355 | *Short Term Complaint - Michael A. D'Amato and Rita A. D'Amato* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 356 | *Short Term Complaint - Donald V. Davey and Kristen K. Davey* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |

| 07/10/2012 | [357](#) | *Short Term Complaint - Ronald Davis and Diane Davis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
|---|---|---|
| 07/10/2012 | [358](#) | *Short Term Complaint - Mark Duda and Denise Duda* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [359](#) | *Short Term Complaint - Kenneth Dunek and Theresa Dunek* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [360](#) | *Short Term Complaint - Ray Ellis and Darice Ellis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [361](#) | *Short Term Complaint - Michael Esposito and Lee Esposito* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [362](#) | *Short Term Complaint - William Frizzelle and Cheryl Frizzelle* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [363](#) | *Short Term Complaint - John W. Griffin and Carol Griffin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [364](#) | *Short Term Complaint - Don B. Herrmann and Anne H. Herrmann* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [365](#) | *Short Term Complaint - Eric Holle and Michelle Holle* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [366](#) | *Short Term Complaint - Heath Irwin and Molly Irwin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [367](#) | *Short Term Complaint - Izel Jenkins, Jr. and Justina Jenkins* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [368](#) | *Short Term Complaint - Alex Dexter Johnson and Keisha Iroko Johnson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [369](#) | *Short Term Complaint - John Johnson and Eileen Johnson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [370](#) | *Short Term Complaint - Douglas C. Jones and Joyce A. Jones* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [371](#) | *Short Term Complaint - Matthew Monger and Karis Monger* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [372](#) | *Short Term Complaint - Curtis Shane Nelson and Shannon Nelson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [373](#) | *Short Term Complaint - Reginald Rod Payne and Carie Payne* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [374](#) | *Short Term Complaint - George W. Rogers, Jr. and Loretta L. Rogers* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [375](#) | *Short Term Complaint - Theron Sapp and Kay Sapp* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [376](#) | *Short Term Complaint - Clarence Scott and Shellye Archambeau* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |

| 07/10/2012 | 377 | *Short Term Complaint - Charles J. Shonta and Karen M. Shonta* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 378 | *Short Term Complaint - Tom Skladany and Deborah Skladany* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 379 | *Short Term Complaint - James Spencer and Lillian Spencer* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 380 | *Short Term Complaint - Andrew Stewart and Sharon Stewart* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 381 | *Short Term Complaint - Jeffrey L. Sydner and Natevia Thornton-Sydner* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 382 | *Short Term Complaint - Richard Trapp and Sharyn Trapp* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 383 | *Short Term Complaint - Garo Yepermian and Maritza Yepermian* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 384 | *Short Term Complaint - James J. Fahnhorst and Kimberly Fahnhorst* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 385 | *Short Form Complaint - C. Martin Amsler and Jean Amsler* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 386 | *Short Form Complaint - William Austin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 387 | *Short Form Complaint - Robert Cary Blanchard and Mindi Blanchard* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 388 | *Short Form Complaint - Jarrod Bunch and Robin Emtage Bunch* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 389 | *Short Form Complaint - Carl Byrum and Helen Byrum* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 390 | *Short Form Complaint - Woodrow L. Campbell and Cheryl Y Campbell* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 391 | *Short Form Complaint - Marion Earl Cooper and Maxine Kay Benson-Cooper* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 392 | *Short Form Complaint - Lindon Crow and Sandy Crow* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 393 | *Short Form Complaint - John H. Davis, Jr. and Hester S. Davis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 394 | *Short Form Complaint - Glenn Derby and Susan Derby* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 395 | *Short Form Complaint - Billy Joe Dupree and Marsha Dupree* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 396 | *Short Form Complaint - Richard H. Ellis and Grace Ellis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |

| 07/10/2012 | [397](#) | *Short Form Complaint - Jacob Green and Janet L. Green* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [398](#) | *Short Form Complaint - Frank Griffin and Erin Griffin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [399](#) | *Short Form Complaint - Carl Hairston and Cynthia Hairston* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [400](#) | *Short Form Complaint - John Hicks and Cindy Hicks* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [401](#) | *Short Form Complaint - Fair Hooker and Carmen D. Hooker* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [402](#) | *Short Form Complaint - David Humm and Kellye Robinette Humm* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [403](#) | *Short Form Complaint - Kendyl Jacox and Tiffany Jacox* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [404](#) | Copy of Conditional Transfer Order (CTO-16) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CAC 2:12-05435.(kk, ) (Entered: 07/10/2012) |
| 07/10/2012 | [405](#) | *Short Form Complaint - James W. Jeffcoat, Jr. and Tamara Jeffcoat* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [406](#) | *Short Form Complaint - Michael Kiselak and Kim Kiselak* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [407](#) | *Short Form Complaint - Joseph Krakoski and Kay Krakoski* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [408](#) | *Short Form Complaint - Dan Larose and Janet Larose* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [409](#) | *Short Form Complaint - Burnie Legette and Michelle Marin-Legette* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [410](#) | *Short Form Complaint - Andre Lott and Jackie Lott* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [411](#) | *Short Form Complaint - Wade Manning and Nicole Manning* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [412](#) | *Short Form Complaint - Reese McCall, Jr. and Mary C. McCall* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [413](#) | *Short Form Complaint - Mark A. McGrath and Kathleen McGrath* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [414](#) | *Short Form Complaint - Doug Nettles and Janet Nettles* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [415](#) | *Short Form Complaint - Karl Noonan and Rebecca Grace Noonan* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [416](#) | *Short Form Complaint - Steve Pierce and Jeanne Pierce* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |

| 07/10/2012 | [417](#) | *Short Form Complaint - Richard H. Quast and Dianne M. Bradley Quast* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| --- | --- | --- |
| 07/10/2012 | [418](#) | *Short Form Complaint - Les Shy and Sandra A. Shy* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [419](#) | *Short Form Complaint - Daryle Skaugstad and Thida Paing* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [420](#) | *Short Form Complaint - Chris Williams and Nydia Williams* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [421](#) | *Short Form Complaint - Fred Williamson and Linda Williamson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [422](#) | *Short Form Complaint - Stephen T. Wright and Sandy Wright* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [423](#) | *Short Form Complaint - Derwin Williams and Coleen Williams* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [424](#) | Short Form Complaint - Khalid Abdullah by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/10/2012) |
| 07/10/2012 | [425](#) | Short Form Complaint - Robert Brazile by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/10/2012) |
| 07/10/2012 | [426](#) | Short Form Complaint - Marcus Dupree by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/10/2012) |
| 07/10/2012 | [427](#) | Short Form Complaint - James "Jim" Grier by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/10/2012) |
| 07/10/2012 | [428](#) | Short Form Complaint - Demetrius Hill by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/10/2012) |
| 07/10/2012 | [429](#) | Short Form Complaint - John Jennings and Tanesha Jennings by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/10/2012) |
| 07/10/2012 | [430](#) | Short Form Complaint - Michael Jones by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/10/2012) |
| 07/10/2012 | [431](#) | Short Form Complaint - Dexter McCleon by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/10/2012) |
| 07/10/2012 | [432](#) | Short Form Complaint - Ben McGee, Jr., and Claudine N. McGee by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/10/2012) |
| 07/10/2012 | [433](#) | Short Form Complaint - Tobiath Myles and Lynn Denise Myles by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/10/2012) |
| 07/10/2012 | [434](#) | Short Form Complaint - Vernon Perry by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/10/2012) |
| 07/10/2012 | [435](#) | Short Form Complaint - TJ Slaughter by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/10/2012) |
| 07/10/2012 | [436](#) | Short Form Complaint - Fred Smoot and Summer Smoot by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/10/2012) |

| 07/10/2012 | [437](#) | Short Form Complaint - Roscoe Word, Jr., and Joyce Word by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/10/2012) |
| 07/10/2012 | [438](#) | *Short Form Complaint - Luther R. Broughton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [439](#) | *Short Form Complaint - Edward Brown* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [440](#) | *Short Form Complaint - Anthony F. Cline, Sr.* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [441](#) | *Short Form Complaint - Marvin Cobb* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [442](#) | *Short Form Complaint - Marcus Cotton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [443](#) | *Short Form Complaint - Anthony C. Dickerson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [444](#) | *Short Form Complaint - Kirk Dodge* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [445](#) | *Short Form Complaint - Ty Douthard* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [446](#) | *Short Form Complaint - Jessie R. Green* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [447](#) | *Short Form Complaint - Joseph J. Krakoski* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [448](#) | *Short Form Complaint - Bill Lewis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [449](#) | *Short Form Complaint - George Wayne McCullough, Jr.* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [450](#) | *Short Form Complaint - Brett Miller* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [451](#) | *Short Form Complaint - Jethro Pugh, Jr.* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [452](#) | *Short Form Complaint - Andrew P. Selfridge* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [453](#) | *Short Form Complaint - Irvin Smith* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [454](#) | *Short Form Complaint - Chuck Thomas* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [455](#) | *Short Form Complaint - Billy Van Heusen* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [456](#) | *Short Form Complaint - Jon Arnett and Jane Arnett* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |

| 07/10/2012 | 457 | *Short Form Complaint - Kurt Becker and Gloria Becker* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 458 | *Short Form Complaint - Don Beebe and Diana Beebe* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 459 | *Short Form Complaint - Vaughn Broadnax and Josephine Broadnax* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 460 | *Short Form Complaint - Roger Brown and Kay A. Brown* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 461 | *Short Form Complaint - Randall William Burke and Amy Marie Burke* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 462 | *Short Form Complaint - Russell Davis and Brenda Diane Davis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 463 | *Short Form Complaint - Irvin H. Eatman and Maureen E. Eatman* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 464 | *Short Form Complaint - Kenneth A. Ellis and Joyce Ellis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 465 | *Short Form Complaint - Austin Gonsoulin and Nickie Gonsoulin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 466 | *Short Form Complaint - Kurt Gouveia and Julie Ann Gouveia* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 467 | *Short Form Complaint - James Grabowski and Kathleen Grabowski* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 468 | *Short Form Complaint - Darryl Grant and Theresa Grant* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 469 | *Short Form Complaint - Edgar E. Henke and Rocelle Henke* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 470 | *Short Form Complaint - Mike Horan and Kim Horan* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 471 | *Short Form Complaint - Mitchell A. Johnson and Jane Fox-Johnson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 472 | *Short Form Complaint - Randall Kirk and Donna Kirk* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 473 | *Short Form Complaint - Le-lo Lang and Monica Lang* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 474 | *Short Form Complaint - Dwight Douglas Lewis and Diane Walters Lewis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 475 | *Short Form Complaint - Larry Linne and Deborah Linne* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 476 | *Short Form Complaint - Gregory L. Lloyd, Sr. and Stephanie Smith-Lloyd* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |

| 07/10/2012 | 477 | *Short Form Complaint - Ronald W. Lou and LIng T. Ngo Lou* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 478 | *Short Form Complaint - Tim Manoa and Devirce Manoa* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 479 | *Short Form Complaint - Anthony Martin and Kathy Martin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 480 | *Short Form Complaint - Roland O. McDole and Antoinette McDole* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 481 | *Short Form Complaint - Donald McNeal and Rhonda McNeal* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 482 | *Short Form Complaint - Ezekiel Moore, Jr. and Carolyn Moore* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 483 | *Short Form Complaint - Dave Osborn and Beverly Osborn* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 484 | *Short Form Complaint - B. Frank Parker and Carla Parker* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 485 | *Short Form Complaint - Brent Parkinson and Kimberly Sue Parkinson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 486 | *Short Form Complaint - Ralph J. Perretta and Joanne M. Peretta* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 487 | *Short Form Complaint - Craig S. Powell and Christine L. Powell* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 488 | *Short Form Complaint - Joe Profit and Wanda Profit* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 489 | *Short Form Complaint - Ervin Randle and Bridget Randle* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 490 | *Short Form Complaint - Bucky Richardson and Tracey Richardson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 491 | *Short Form Complaint - Paul Gordon Rochester and Nancy Kay Rochester* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 492 | *Short Form Complaint - Dick Schafrath and Judith Rush* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 493 | *Short Form Complaint - Kenneth M. Schroy and Susan Schroy* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 494 | *Short Form Complaint - Timothy Sherwin and Jannice Sherwin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 495 | *Short Form Complaint - David L. Smith and Katrina Welch-Smith* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 496 | *Short Form Complaint - James Summers and Diane Scott-Summers* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |

| 07/10/2012 | 497 | *Short Form Complaint - Thomas J. Toth and Gail L. Toth* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 498 | *Short Form Complaint - Mitch Willis and Carie Williams* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 499 | *Short Form Complaint - Edward A. Wilson and Nancy J. Thrana* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 500 | *Short Form Complaint - Eric Allen and Lynn Allen* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 501 | *Short Form Complaint - Erick Anderson and Hilary Anderson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 502 | *Short Form Complaint - Dale Carter and Tracey Carter* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 503 | *Short Form Complaint - Vincent Clark and Jana Carter-Clark* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 504 | *Short Form Complaint - Tom Cox and Gretchen Cox* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 505 | *Short Form Complaint - Jeff Donaldson and Jessie Donaldson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 506 | *Short Form Complaint - Dan Fike and Karen Fike* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 507 | *Short Form Complaint - George Gaiser and Phyllis Gaiser* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 508 | *Short Form Complaint - Brad Goebel and Kristi Goebel* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 509 | *Short Form Complaint - Donny Anderson* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 510 | *Short Form Complaint - Leonard W. Gotshalk and Linda W. Gotshalk* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 511 | *Short Form Complaint - Reginald Grant and Tina Treasure Owens-Grant* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 512 | *Short Form Complaint - Howard Griffith and Kim Griffith* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 513 | *Short Form Complaint - Jerry Broadnax* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 514 | *Short Form Complaint - Ronald Brown* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 515 | *Short Form Complaint - Melvin Jackson, Jr. and Kimberle E. Jackson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 516 | *Short Form Complaint - Larry Cole* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |

| 07/10/2012 | 517 | *Short Form Complaint - Kermit Johnson and Brenda Johnson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 518 | *Short Form Complaint - Rex W. Kern and Nancy L. Kern* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 519 | *Short Form Complaint - James R. Colvin* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 520 | *Short Form Complaint - Linden King and Dana King* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 521 | *Short Form Complaint - Michael Connelly* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 522 | *Short Form Complaint - Don B. Latimer and Cynthia Latimer* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 523 | *Short Form Complaint - Lonnie Marts, Jr. and Gionne T. Marts* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 524 | *Short Form Complaint - Reginald Doss* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 525 | *Short Form Complaint - John Fitzgerald* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 526 | *Short Form Complaint - Jim Merlo and Rhonda Merlo* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 527 | *Short Form Complaint - Michael Moody and Lisa Moody* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 528 | *Short Form Complaint - Walter Garrison* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 529 | *Short Form Complaint - Anthony Newman and Teri Newman* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 530 | *Short Form Complaint - Gary Allen Hammond* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 531 | *Short Form Complaint - Irvin L. Pankey II and Coleen Pankey* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 532 | *Short Form Complaint - Harrold Hays* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 533 | *Short Form Complaint - David Pool and Gina Pool* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 534 | *Short Form Complaint - David Hill* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 535 | *Short Form Complaint - Eugene Prebola and Patricia Prebola* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 536 | *Short Form Complaint - Kenneth Reeves and Lysette Reeves* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |

| | | |
|---|---|---|
| 07/10/2012 | [537](#) | *Short Form Complaint - David Richie and Carin Richie* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [538](#) | *Short Form Complaint - Lenard Rohde and Beverly Rohde* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [539](#) | *Short Form Complaint - David Hill* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [540](#) | *Short Form Complaint - Jeff Smith and Christie Smith* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [541](#) | *Short Form Complaint - Jackie Squirek and Penny Squirek* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [542](#) | *Short Form Complaint - Charles Howley* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [543](#) | *Short Form Complaint - John Tice and Barbara Tice* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [544](#) | *Short Form Complaint - Mick Tingelhoff and Phyllis Tingelhoff* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [545](#) | *Short Form Complaint - Lee Roy Jordan* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [546](#) | *Short Form Complaint - Frank Varrichione and Millicent Varrichione* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [547](#) | *Short Form Complaint - Angelo King* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [548](#) | *Short Form Complaint - Ken Walter and Chante Walter* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [549](#) | *Short Form Complaint - Donald McIlhenny* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [550](#) | *Short Form Complaint - Frank L. Wattelet II and Tara L. Wattelet* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [551](#) | *Short Form Complaint - Brent Williams and Jacqueline Williams* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [552](#) | *Short Form Complaint - Anthony Miller* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [553](#) | *Short Form Complaint - Steve Wilson and Cathy Wilson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [554](#) | *Short Form Complaint - James Montgomery* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [555](#) | *Short Form Complaint - Robert Delpino* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | [556](#) | *Short Form Complaint - Tyrone Montgomery* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |

| 07/10/2012 | 557 | *Short Form Complaint - Chris Geile* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 558 | *Short Form Complaint - Leonard Renfro* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 559 | *Short Form Complaint - Ralph Neely* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 560 | *Short Form Complaint - Sean Salisbury* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 561 | *Short Form Complaint - Jerry Ray Norton* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 562 | *Short Form Complaint - Ernest Spears* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 563 | *Short Form Complaint - Steve Wright* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 564 | *Short Form Complaint - Kris Pollack and Morgan Pollack* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/10/2012) |
| 07/10/2012 | 565 | *Short Form Complaint - Preston Pearson* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 566 | *Short Form Complaint - James Smith* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 567 | *Short Form Complaint - Diron V. Talbert* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 568 | *Short Form Complaint - Don Talbert* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 569 | *Short Form Complaint - Marlene Tubbs, a/n/f of Gerald J. Tubbs, Deceased* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 570 | *Short Form Complaint - Malcolm Walker, Jr.* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 571 | *Short Form Complaint - Charles Waters* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 572 | *Short Form Complaint - Randy White* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 573 | *Short Form Complaint - Rayfield Wright* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 574 | *Short Form Complaint - Robert Lilly* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 575 | *Short Form Complaint - Jill Stautner, As Personal Representative of the Estate of Ernie Stautner* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 576 | *Short Form Complaint - Charles Edward Brown* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |

| 07/10/2012 | [577](#) | *Short Form Complaint - Guy Brown* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [578](#) | *Short Form Complaint - Bobby Joe Conrad* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [579](#) | *Short Form Complaint - Eric Dickerson* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [580](#) | *Short Form Complaint - Hoyle Granger* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [581](#) | *Short Form Complaint - Harry Gunner* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [582](#) | *Short Form Complaint - Daryl Ray Hobbs* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [583](#) | *Short Form Complaint - John Curley Johnson, Sr.* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [584](#) | *Short Form Complaint - Nancy Lunceford as Personal Representative of the Estate of David Lunceford* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [585](#) | *Short Form Complaint - John Gipson Roach* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [586](#) | *Short Form Complaint - Thomas James Roussel* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [587](#) | Short Form Complaint - Andrew Glover by PLAINTIFF(S). (NAST, DIANNE) (Entered: 07/10/2012) |
| 07/10/2012 | [588](#) | *Short Form Complaint - Willie Carroll Townes* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [589](#) | *Short Form Complaint - John Randle* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [590](#) | *Short Form Complaint - Patrick H. Gibbs* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [591](#) | *Short Form Complaint - Lucious Smith* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [592](#) | *Short Form Complaint - Randy Hughes* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [593](#) | *Short Form Complaint - Darryl Talley* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [594](#) | *Short Form Complaint - Andrew b. Frederick* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [595](#) | *Short Form Complaint - Jerry LeVias* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [596](#) | Short Form Complaint--Roy Barker by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/10/2012) |

| 07/10/2012 | [597](#) | *Short Form Complaint - James Arneson* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [598](#) | Short Form Complaint--Kevin Bentley by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/10/2012) |
| 07/10/2012 | [599](#) | *Short Form Complaint - Danny White* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [600](#) | *Short Form Complaint - John Doug Wyatt* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [601](#) | Short Form Complaint--Henri Crockett by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/10/2012) |
| 07/10/2012 | [602](#) | Short Form Complaint--Jay Foreman by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/10/2012) |
| 07/10/2012 | [603](#) | *Short Form Complaint - John David Crow* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [604](#) | Short Form Complaint--Oronde Gadsden by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/10/2012) |
| 07/10/2012 | [605](#) | *Short Form Complaint - John Niland* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [606](#) | Short Form Complaint--Robert Harris by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/10/2012) |
| 07/10/2012 | [607](#) | Short Form Complaint--Marvin Jones by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/10/2012) |
| 07/10/2012 | [608](#) | *Short Form Complaint - Pete Lammons* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [609](#) | Short Form Complaint--Hurvin McCormack by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/10/2012) |
| 07/10/2012 | [610](#) | *Short Form Complaint - Warren Wells* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [611](#) | Short Form Complaint--Daryl Porter by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/10/2012) |
| 07/10/2012 | [612](#) | *Short Form Complaint - Samuel J. Davis* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [613](#) | *Short Form Complaint - Everette Pedescleaux* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [614](#) | *Short Form Complaint - Charles D. Frazier* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [615](#) | *Short Form Complaint - Willie Frazier* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | [616](#) | *Short Form Complaint - Andrew Rice, Sr.* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |

| 07/10/2012 | 617 | *Short Form Complaint - Scott Kellar* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 618 | *Short Form Complaint - Donovan Greer* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 619 | *Short Form Complaint - Eugene Seale* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 620 | *Short Form Complaint - Kevin Williams* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 621 | *Short Form Complaint - Roosevelt Williams* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 622 | *Short Form Complaint - Morris Anderson* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 623 | *Short Form Complaint - Kori Dickerson* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 624 | *Short Form Complaint - Lee Webb* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 625 | *Short Form Complaint - Reginald Doster* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 626 | *Short Form Complaint - Giles Cole* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 627 | *Short Form Complaint - Dialleo Burks* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 628 | *Short Form Complaint - Sean Pete Weston* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 629 | *Short Form Complaint - Erwin Swiney* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 630 | *Short Form Complaint - Lorenzo Diamond* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 631 | *Short Form Complaint - Lee Mays, Jr.* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/10/2012 | 632 | *Short Form Complaint - Barry Gardner* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/10/2012) |
| 07/11/2012 | 633 | *Short Form Complaint - Roc Alexander* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 634 | *Short Form Complaint - Michael Sean Batiste* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 635 | *Short Form Complaint - John R. Cannon* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 636 | *Short Form Complaint - Lavonya Quintelle Carter* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |

| 07/11/2012 | 637 | *Short Form Complaint - Mark Catano* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 638 | *Short Form Complaint - John Contoulis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 639 | *Short Form Complaint - Jason Craft* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 640 | *Short Form Complaint - Frank Garcia* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 641 | *Short Form Complaint - Kelly Herdon* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 642 | *Short Form Complaint - Darryl Ingram* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 643 | *Short Form Complaint - Bruce Kimball* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 644 | *Short Form Complaint - Eric Lane* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 645 | *Short Form Complaint - Tom Lopienski* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 646 | *Short Form Complaint - Gary McArthur* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 647 | *Short Form Complaint - Ronald Middleton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 648 | *Short Form Complaint - Michael Gene Mosley* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 649 | *Short Form Complaint - Omar Nazel* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 650 | *Short Form Complaint - Darrin Nelson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 651 | *Short Form Complaint - Robert E. Poole* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 652 | *Short Form Complaint - Mark Rypien* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 653 | *Short Form Complaint - Kevin Sargent* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 654 | *Short Form Complaint - Ricky Siglar* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 655 | *Short Form Complaint - James W. Steffen* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 656 | *Short Form Complaint - Roger L. Wallace* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |

| 07/11/2012 | 657 | *Short Form Complaint - Brian W. Washington* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 658 | *Short Form Complaint - Gerald Whillhite* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 659 | *Short Form Complaint - Dennis E. Winston, Sr.* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 660 | *Short Form Complaint - Arnold Ale and Sive Ale* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 661 | *Short Form Complaint - Ralph Baker and Bertha E. Baker* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 662 | *Short Form Complaint - Richard Baldinger and Mimi Baldinger* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 663 | *Short Form Complaint - Charles Benson and Denise Benson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 664 | *Short Form Complaint - Keith A. Biggers and Natasha Biggers* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 665 | *Short Form Complaint - Joseph D. Biscaha and Beverly Biscaha* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 666 | *Short Form Complaint - Andrew Bolton and Mary K. Bolton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 667 | *Short Form Complaint - Emil N. Boures III and Michelle Boures* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 668 | *Short Form Complaint - Sam Tyrone Bowers and Rebecca Bowers* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 669 | *Short Form Complaint - Edward Bradley, Jr. and Jeannine Bradley* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 670 | *Short Form Complaint - James J. Brophy and Tara M. Brophy* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 671 | *Short Form Complaint - Aaron C. Brown and Sylvia Brown* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 672 | *Short Form Complaint - Norman Bulaich and Susan Bulaich* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 673 | *Short Form Complaint - Dexter M. Bussey and Kay F. Bussey* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 674 | *Short Form Complaint - James D. Cadile and Carol Cadile* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 675 | *Short Form Complaint - Scott Case and Connie Case* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 676 | *Short Form Complaint - Gordon Ceresino and Mary Ceresino* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |

| 07/11/2012 | 677 | *Short Form Complaint - Tony Coats and Alicia Coats* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 678 | *Short Form Complaint - Scott Conover and Courtney Conover* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 679 | *Short Form Complaint - Ronald C. Crosby and Kathy Crosby* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 680 | *Short Form Complaint - Wendell Davis and Patricia Davis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 681 | *Short Form Complaint - Chuck Detwiler and Connie Detwiler* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 682 | *Short Form Complaint - Jason Doering and Samantha Doering* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 683 | *Short Form Complaint - Doug Donley and Dina Donley* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 684 | *Short Form Complaint - Maurice G. Douglass and Camela Douglass* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 685 | *Short Form Complaint - Douglas J. Dressler and Jody K. Rose-Dressler* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 686 | *Short Form Complaint - Chris Duliban and Heather Duliban* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 687 | *Short Form Complaint - Jonathan Dumbauld and Kathy Dumbauld* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 688 | *Short Form Complaint - Bert Emanuel and Teri Emanuel* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 689 | *Short Form Complaint - Brad Fichtel and Suzanne Fichtel* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 690 | *Short Form Complaint - James J. Flannigan and Leatrice Flannigan* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 691 | *Short Form Complaint - Flint E. Fleming and Tomi Fleming* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 692 | *Short Form Complaint - Elbert Foules and Denise Foules* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 693 | *Short Form Complaint - Byron P. Franklin, Sr. and Meriam Louise Franklin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 694 | *Short Form Complaint - David Fulcher, Sr. and Judy P. Fulcher* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 695 | *Short Form Complaint - Michael D. Fuller and Penny Fuller* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 696 | *Short Form Complaint - A. Scott Galbraith and Carla L. Galbraith* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |

| 07/11/2012 | 697 | *Short Form Complaint - Ray Griffin and Jennifer Griffin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 698 | *Short Form Complaint - Terry Hanratty and Kelly Hanratty* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 699 | *Short Form Complaint - Al Harris and Maggie Harris* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 700 | *Short Form Complaint - Leonard Harris and Angela Bachert* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 701 | *Short Form Complaint - Sean Harris and Cha-ron Harris* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 702 | *Short Form Complaint - Frank Hartley and Maxine Hartley* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 703 | *Short Form Complaint - Johnny Hector and Karla Hector* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 704 | *Short Form Complaint - Wyatt Henderson and Jeannie Henderson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 705 | *Short Form Complaint - David Hill and Anne Hill* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 706 | *Short Form Complaint - Terrell Hoage and Jennifer Hoage* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 707 | *Short Form Complaint - Ethan Horton and Lawanda Horton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 708 | *Short Form Complaint - Clarence J. Jackson and Sherry D. Jackson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 709 | *Short Form Complaint - Ernie Janet and Donna Janet* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 710 | *Short Form Complaint - Curtis W. Johnson and Tara K. Johnson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 711 | *Short Form Complaint - Scott Kowalkowski and Michele Kowalkowski* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 712 | *Short Form Complaint - Kyle Kramer and Christine Kramer* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 713 | *Short Form Complaint - Edward D. Lothamer and Elisabeth Ann Lothamer* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 714 | *Short Form Complaint - Reno Mahe and Sunny Mahe* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 715 | *Short Form Complaint - Tony Mandarich and Charlavan Mandarich* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 716 | *Short Form Complaint - Todd Marinovich and Alexandria Marinovich* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |

| | | |
|---|---|---|
| 07/11/2012 | 717 | *Short Form Complaint - Curt Marsh and Pamela Marsh* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 718 | *Short Form Complaint - Douglas Martin and Audrey Martin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 719 | *Short Form Complaint - Jamar Martin and Angela Martin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 720 | *Short Form Complaint - William J. Masters and Georgia Masters* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 721 | *Short Form Complaint - Lance Mehl and Linda Mehl* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 722 | *Short Form Complaint - John Michels and Melissa Michels* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 723 | *Short Form Complaint - Thomas Moriarty and Cindy Moriarty* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 724 | *Short Form Complaint - William W. Neighbors and Susan Neighbors* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 725 | *Short Form Complaint - Jack L. Nix and Celia Nix* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 726 | *Short Form Complaint - Jeremy Nunley and Marti Nunley* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 727 | *Short Form Complaint - Harold Olson and Wanda Olson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 728 | *Short Form Complaint - Charles W. Owens andTerri D. Owens* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 729 | *Short Form Complaint - Mark Pattison and Renee Pattison* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 730 | *Short Form Complaint - John S. Pergine and Helene Pergine* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 731 | *Short Form Complaint - Mickey Pruitt and Stephanie Pruitt* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 732 | *Short Form Complaint - Mike Raines and Robin Raines* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 733 | *Short Form Complaint - Faud Reveiz and Merida Gayle Reveiz* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 734 | *Short Form Complaint - Constantin Ritzmann and Christina Ritzmann* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 735 | *Short Form Complaint- Jamal Anderson* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 736 | *Short Form Complaint - James E. Roberson and Inger Roberson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |

| 07/11/2012 | [737](#) | *Short Form Complaint - Michael Rockwood and Darlene Rockwood* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [738](#) | *Short Form Complaint - Michael Seidman and Nicole Seidman* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [739](#) | *Short Form Complaint - Robert Selby and Susan Selby* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [740](#) | *Short Form Complaint - Edward Simmons and Dilia Simmons* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [741](#) | *Short Form Complaint - John P. Skorupan and Debbie Skorupan* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [742](#) | *Short Form Complaint - David Sloan and Jennifer Sloan* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [743](#) | *Short Form Complaint - Russ Smith and Judy Smith* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [744](#) | *Short Form Complaint- Karsten Bailey* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | [745](#) | *Short Form Complaint - Richard Stachon and Kathy Stachon* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [746](#) | *Short Form Complaint - Walter Stanley and Elizabeth Stanley* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [747](#) | *Short Form Complaint - John P. Sullivan and Ayn Sullivan* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [748](#) | *Short Form Complaint - Patrick R. Swoopes and Cheryl M. Swoopes* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [749](#) | *Short Form Complaint - Joseph A. Taffoni and Susan J. Taffoni* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [750](#) | *Short Form Complaint - Kevin Thomas and Schameka Thomas* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [751](#) | *Short Form Complaint- Fred Banks* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | [752](#) | *Short Form Complaint - Vince Thomson and Susan Thomson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [753](#) | *Short Form Complaint - Glen Titensor and Sherry Titensor* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [754](#) | *Short Form Complaint - Don Trull and Judy Trull* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [755](#) | *Short Form Complaint - John Turner and Tiffany Hand* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [756](#) | *Short Form Complaint - Tony Walker and Estoshia Walker* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |

| 07/11/2012 | [757](#) | *Short Form Complaint - Alvin Washington and Tamyra Washington* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [758](#) | *Short Form Complaint - James Curtis White and Darlene R. Ford* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [759](#) | *Short Form Complaint - James Yarbrough and Beverly Yarbrough* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [760](#) | *Short Form Complaint- Terry Beasley & Marlene Beasley* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | [761](#) | *Short Form Complaint- Anthony Blaylock* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | [762](#) | *Short Form Complaint- Guy Bingham & Sharon Bingham* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | [763](#) | *Short Form Complaint- David Brandon & Zondra Brandon* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | [764](#) | *Short Form Complaint- Timothy Broady* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | [765](#) | *Short Form Complaint- Steven Broussard* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | [766](#) | *Short Form Complaint- Curtis Brown* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | [767](#) | *Short Form Complaint- Keith Browner* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | [768](#) | *Short Form Complaint - Michael Carter* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [769](#) | *Short Form Complaint- Ross Browner & Shayla Browner* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | [770](#) | *Short Form Complaint - Edward G. Cooke* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [771](#) | *Short Form Complaint - Quentin Coryatt* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [772](#) | *Short Form Complaint - John E. DeMarie* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [773](#) | *Short Form Complaint - Kevin Garrett* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [774](#) | *Short Form Complaint - Carlton Gray* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | [775](#) | *Short Form Complaint- Jeffery Bryant* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | [776](#) | *Short Form Complaint - Reuben Henderson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |

| 07/11/2012 | 777 | *Short Form Complaint - Michael Jackson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 778 | *Short Form Complaint - Kent Kafentzis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 779 | *Short Form Complaint - Paul Lewis Latzke* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 780 | *Short Form Complaint - Mark Maddox* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 781 | *Short Form Complaint - Michael McCaffrey* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 782 | *Short Form Complaint- Warren Bryant* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 783 | *Short Form Complaint - Russell E. Mikeska* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 784 | *Short Form Complaint - James Brockman Olivo* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 785 | *Short Form Complaint - John "Golden" Richards* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 786 | *Short Form Complaint - Shafer Suggs* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 787 | *Short Form Complaint - Roger Taylor* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 788 | *Short Form Complaint - Arthur Whittington* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 789 | *Short Form Complaint - Sid Abramowitz and Sherri Abramowitz* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 790 | *Short Form Complaint - Vernest R. Alexander and Marcel R. Alexander* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 791 | *Short Form Complaint - Charles Babb and Leslie Babb* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 792 | *Short Form Complaint - James E. Barton and Kay A. Barton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 793 | *Short Form Complaint - Gary J. Berry and Maile Berry* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 794 | *Short Form Complaint- Daniel Buggs & Angela Buggs* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 795 | *Short Form Complaint - Michael Brooks and Robin Freeman-Brooks* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 796 | *Short Form Complaint - Blair Bush and Rachel Bush* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |

| 07/11/2012 | 797 | *Short Form Complaint - James Cannida and Leesha Cannida* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 798 | *Short Form Complaint - Carmen Cavalli and Fritzi Cavalli* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 799 | *Short Form Complaint - Randy Clark and Paula Curry-Clark* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 800 | *Short Form Complaint - Sebastian Paul Costa and Lillian Costa* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 801 | *Short Form Complaint - Carl M. Cunningham and Kathryn G. Cunningham* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 802 | *Short Form Complaint- Joe Burns & Tiffany Burns* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 803 | *Robert J. Dirico and Nancy Franciotti* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 804 | *Short Form Complaint - Adam Duhe and Frances Duhe* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 805 | *Short Form Complaint - Leonard Dunlap and Sherry Dunlap* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 806 | *Short Form Complaint - Tracey Eaton and Kimberly Eaton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 807 | *Short Form Complaint- Raymond Butler* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 808 | *Short Form Complaint - Jeff Faulkner and Vicki Faulkner* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 809 | *Short Form Complaint - Jamal Fountaine and Staci Fountaine* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 810 | *Short Form Complaint - Brian Glasgow and Deborah Glasgow* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 811 | *Short Form Complaint - Keith Guthrie and Brenda Lee Guthrie* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 812 | *Short Form Complaint - Steven Hamilton and Kathleen D. Hamilton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 813 | *Short Form Complaint- William Carr* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 814 | *Short Form Complaint - James L. Hargrove and Cherry D. Hargrove* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 815 | *Short Form Complaint - Clarence Harmon, Jr. and Veronica Joyce Harmon* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 816 | *Short Form Complaint - Leonard M. Hauss and Janis J. Hauss* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |

| 07/11/2012 | 817 | *Short Form Complaint - Dale Hellestrae and Brooke Hellestrae* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 818 | *Short Form Complaint - Michael Wesley Hinnant and Jessica Hinnant* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 819 | *Short Form Complaint - William Hoggard and Deitra Hoggard* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 820 | *Short Form Complaint- Alphonso Carreker & Kimberly Carreker* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 821 | *Short Form Complaint - Alfred Jenkins and Saundra F. Jenkins* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 822 | *Short Form Complaint - Jarrod Johnson and Tarra Johnson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 823 | *Short Form Complaint - David Knight and Susan Knight* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 824 | *Short Form Complaint - Daniel L. Kratzer and Suzanne Marie Kratzer* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 825 | *Short Form Complaint - Bill Larson and Linda Moore Larson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 826 | *Short Form Complaint- Travis Carroll* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 827 | *Short Form Complaint - A.D. Laster and Wanda Laster* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 828 | *Short Form Complaint - Chip Lohmiller and Kari Lohmiller* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 829 | *Short Form Complaint - David Long and Therese Long* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 830 | *Short Form Complaint - Matt Martin and Sarah Martin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 831 | *Short Form Complaint -Frederick H. Mazurek and Suzanne Mazurek* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 832 | *Short Form Complaint - David Morton and Patti Morton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 833 | *Short Form Complaint - Mark Murphy and Pamela Murphy* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 834 | *Short Form Complaint- Lavonya Carter* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 835 | *Short Form Complaint - Louis J. Piccone and Joanne Piccone* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 836 | *Short Form Complaint - Derek Price and Heather Price* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |

| 07/11/2012 | 837 | *Short Form Complaint - Brandon Register and Charner Rogers Register* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 838 | *Short Form Complaint - Brian Roche and Morgan Roche* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 839 | *Short Form Complaint - Carl Douglas Smith and Debbie Smith* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 840 | *Short Form Complaint - Ed Sutter and Tracy Sutter* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 841 | *Short Form Complaint- Robert Chancey & Lashwanza Chancey* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 842 | *Short Form Complaint - Ray C. Thielemann and Laura Thielemann* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 843 | *Short Form Complaint - David W. Thompson and Bonnie D. Thompson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 844 | *Short Form Complaint - Curt Warner and Ana Warner* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 845 | *Short Form Complaint - Tom Welter and Louise Welter* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 846 | *Short Form Complaint - J.R. Wilburn and Leslie Wilburn* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 847 | *Short Form Complaint - Joel Williams and Marie Williams* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 848 | *Short Form Complaint - Joe Wolf and Jeanmarie Wolf* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 849 | *Short Form Complaint- Herbert Christopher & Bessie Christopher* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 850 | *Short Form Complaint - Carl Zander and Maria Zander* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 851 | Short Form Complaint *Charles Ray Easterling* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 852 | *Short Form Complaint- Stepehn Clark & Charl Clark* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 853 | Short Form Complaint *Steve and Carol Kiner* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 854 | Short Form Complaint *Wayne and Garland Radloff* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 855 | Short Form Complaint *Akmal Akbar* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 856 | Short Form Complaint *Terry Allen* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |

| 07/11/2012 | 857 | Short Form Complaint *Mike and Tanya Banks* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 858 | Short Form Complaint *Michael Boulware* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 859 | Short Form Complaint *Jerome Carter* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 860 | *Short Form Complaint- Felipe Claybrooks* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 861 | Short Form Complaint *Quentin Coryatt* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 862 | Short Form Complaint *Michael Haynes* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 863 | Short Form Complaint *Burton Ioane* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 864 | *Short Form Complaint- Cosey Coleman & Rernitval Coleman* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 865 | Short Form Complaint *Keith Jennings* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 866 | Short Form Complaint *Abner Junkins* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 867 | Short Form Complaint *Thomas Lewis* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 868 | Short Form Complaint *Mike and Kia McCoy* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 869 | *Short Form Complaint- Roderick Coleman & Sequoia Coleman* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 870 | Short Form Complaint *Travis Minor* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 871 | Short Form Complaint *Mel Mitchell* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 872 | Short Form Complaint *Otis Moore* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 873 | Short Form Complaint *Ryan Neufeld* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 874 | *Short Form Complaint- Calvin Collins & Felisha Collins* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 875 | Short Form Complaint *Matt O'Dwyer* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 876 | Short Form Complaint *Anthony Phillips* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |

| 07/11/2012 | 877 | Short Form Complaint *Gary Plummer* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| --- | --- | --- |
| 07/11/2012 | 878 | *Short Form Complaint- Robert Thomas Cooksey & Cynthia Cooksey* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 879 | Short Form Complaint *Jason Pociask* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 880 | Short Form Complaint *Tommy Polley* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 881 | Short Form Complaint *Carl and Shenica Powell* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 882 | Short Form Complaint *Michael Pucillo* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 883 | Short Form Complaint *Jonathan and Carissa Quinn* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 884 | Short Form Complaint *Willis Reed* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 885 | *Short Form Complaint- Deke Cooper & Gwen Cooper* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 886 | Short Form Complaint *Kristopher Richard* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 887 | Short Form Complaint *Samuel Rogers* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 888 | Short Form Complaint *James Sayler* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 889 | *Short Form Complaint- Danny Lamar Copeland & Joann Copeland* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 890 | Short Form Complaint *Zuriel Smith* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 891 | Short Form Complaint *Phillippi Sparks* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 892 | *Short Form Complaint- Danny Lamar Copeland & Joann Copeland* by PLAINTIFF(S).(FILED IN ERROR ATTORNEY TO RE-FILE) (MCGLAMRY, MICHAEL) Modified on 7/11/2012 (kk, ). (Entered: 07/11/2012) |
| 07/11/2012 | 893 | Short Form Complaint *Bill and Nona Staley* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 894 | Short Form Complaint *Aaron Stecker* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 895 | Short Form Complaint *Hollis Thomas* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 896 | *Short Form Complaint- Michael Curcio* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |

| 07/11/2012 | 897 | Short Form Complaint *Nate and Jennifer Webster* by PLAINTIFF(S). (COBEN, LARRY) (Entered: 07/11/2012) |
| 07/11/2012 | 898 | *Short Form Complaint- Reginald Austin & Cynthia Austin* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 899 | *Short Form Complaint- Robert Bailey & Tina Bailey* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 900 | *Short Form Complaint - William Austin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 901 | *Short Form Complaint - Ronald Bolton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 902 | *Short Form Complaint- Vaughn Booker* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 903 | *Short Form Complaint - Gregory L. Bracelin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 904 | *Short Form Complaint - Jeffrey B. Bregel* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 905 | *Short Form Complaint - Robin Earl* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 906 | *Short Form Complaint- Melvin Bratton & Eugenia Bratton* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 907 | *Short Form Complaint - Paul Green* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 908 | *Short Form Complaint - Leroy Holt, Jr.* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 909 | *Short Form Complaint - Michael O. Josiah* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 910 | *Short Form Complaint- Reggie Brown & Kerrie Brown* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 911 | *Short Form Complaint - Matt Robinson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 912 | *Short Form Complaint - Jackie Walker* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 913 | *Short Form Complaint - Larry Wallace* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/11/2012) |
| 07/11/2012 | 914 | *Short Form Complaint- Lamar Campbell & Sharon Campbell* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 915 | Amended Short Form Complaint - Kevin Williams by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 916 | Amended Short Form Complaint - Lee Webb by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |

| 07/11/2012 | 917 | Amended Short Form Complaint - Morris Anderson by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 918 | Short Form Complaint--Leon Searcy by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/11/2012) |
| 07/11/2012 | 919 | Amended Short Form Complaint - Kori Dickerson by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 920 | Short Form Complaint--Patrick Surtain by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/11/2012) |
| 07/11/2012 | 921 | Short Form Complaint--Lamar Thomas by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/11/2012) |
| 07/11/2012 | 922 | Short Form Complaint--Donnell Bennett and Adrienne Bennett, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/11/2012) |
| 07/11/2012 | 923 | Short Form Complaint--Cam Cleeland and Mindy Cleeland, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/11/2012) |
| 07/11/2012 | 924 | Amended Short Form Complaint - Reginald Doster by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 925 | Short Form Complaint--Lional Dalton and Tiffany Edwards, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/11/2012) |
| 07/11/2012 | 926 | Short Form Complaint--Troy Drayton and Tyrhonda Drayton, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/11/2012) |
| 07/11/2012 | 927 | *Short Form Complaint- Kenneth Clarke* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 928 | Short Form Complaint--Sean Hill and Shannon Hill, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/11/2012) |
| 07/11/2012 | 929 | Amended Short Form Complaint - Giles Cole by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 930 | Short Form Complaint--Kevin Lewis and Lisa Henderson, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/11/2012) |
| 07/11/2012 | 931 | Amended Short Form Complaint - Dialleo Burks by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 932 | Short Form Complaint--Kyle Turley and Stacy Turley, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/11/2012) |
| 07/11/2012 | 933 | Amended Short Form Complaint - Sean Pete Weston by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 934 | Short Form Complaint--Jed Weaver and Jori Weaver, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/11/2012) |
| 07/11/2012 | 935 | Short Form Complaint--Mitch White and Jennifer White, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/11/2012) |
| 07/11/2012 | 936 | Amended Short Form Complaint - Lee E. Mays, Jr. by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |

| 07/11/2012 | 937 | *Short Form Complaint- Arthur Cox* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 938 | Amended Short Form Complaint - Erwin Swiney by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 939 | Short Form Complaint *Jerrell Pippens* by PLAINTIFF(S). (CALDES, WILLIAM) (Entered: 07/11/2012) |
| 07/11/2012 | 940 | Amended Short Form Complaint - Barry Gardner by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 941 | Amended Short Form Complaint - Lorenzo Diamond by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 942 | Short Form Complaint *Floyd Wedderburn* by PLAINTIFF(S). (CALDES, WILLIAM) (Entered: 07/11/2012) |
| 07/11/2012 | 943 | *Short Form Complaint- Miguel "Mike" Bryce Dingle & Amanda Renee Dingle* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 944 | Amended Short Form Complaint - Damon Griffin by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 945 | Amended Short Form Complaint - Roosevelt Williams by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 946 | *Short Form Complaint- Ernest Dixon & Pamela Dixon* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 947 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Sirr Parker(CALDES, WILLIAM) (Entered: 07/11/2012) |
| 07/11/2012 | 948 | *Short Form Complaint- Major Everett & Valarie Everett* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 949 | *Short Form Complaint- Terry Fair & Sherlone Fair* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 950 | *Short Form Complaint- Edgar E. Fields* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 951 | *Short Form Complaint- Ernest Gibson & Barbara Gibson* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 952 | Short Form Complaint - Mario Edwards by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 953 | *Short Form Complaint- Randall Godfrey* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 954 | Short Form Complaint - Jammi German by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 955 | Short Form Complaint - Jack Golden by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 956 | Short Form Complaint - Mark Gunn by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |

| | | |
|---|---|---|
| 07/11/2012 | 957 | Short Form Complaint - Darren Hambrick by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 958 | Short Form Complaint - Troy Hambrick by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 959 | *Short Form Complaint- George Greene & Bernadette Greene* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 960 | Short Form Complaint - George Jones by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 961 | *Short Form Complaint- Sedrick Hodge & Farrah Hodge* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 962 | Short Form Complaint - Otis Leverette by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 963 | Short Form Complaint - Nicolas Luchey by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 964 | *Short Form Complaint- Daryll Jones & Betty Jones* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 965 | Short Form Complaint - Shane Matthews by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 966 | Short Form Complaint - Tim McKyer by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 967 | Short Form Complaint - Rondorick D. Merkerson by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 968 | *Short Form Complaint- Horace King & Mitzi King* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 969 | Short Form Complaint - Ken Oxendine by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 970 | Short Form Complaint - Ed Perry by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 971 | Short Form Complaint - Wali Rainer by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 972 | Short Form Complaint - Lamont Reid by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 973 | Short Form Complaint - Jacoby Rhinehart by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 974 | *Short Form Complaint- Karon Riley & Terry Riley* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 975 | Short Form Complaint - Todd Rucci by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/11/2012) |
| 07/11/2012 | 976 | Short Form Complaint--Bobby Abrams, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |

| | | |
|---|---|---|
| 07/11/2012 | 977 | *Short Form Complaint- Karon Riley & Terry Riley* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 978 | Short Form Complaint-Stefon Adams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 979 | *Short Form Complaint- Paul Ryczek & Carol Ryczek* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 980 | *Short Form Complaint- Roderick Saddler & Simone Saddler* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 981 | *Short Form Complaint- Sam Simmons and Janice Roye* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 982 | Short Form Complaint - David M. Kreig by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/11/2012) |
| 07/11/2012 | 983 | *Short Form Complaint- Sam Simmons and Janice Roye* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 984 | *Short Form Complaint- Larry Tharpe* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 985 | Short Form Complaint - George Adams and Michelle Adams by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/11/2012) |
| 07/11/2012 | 986 | *Short Form Complaint- Jon Vaughn* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 987 | Short Form Complaint-Timothy Barnett by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 988 | Short Form Complaint-Marc Boutte by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 989 | Short Form Complaint-Marty Carter by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 990 | *Short Form Complaint- Kerwin Waldroup* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 991 | Short Form Complaint-Horace Copeland by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 992 | Short Form Complaint-Francisco Craig by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 993 | Short Form Complaint - Jay Taylor by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/11/2012) |
| 07/11/2012 | 994 | Short Form Complaint-Harry M. Crump and Andrea Crump by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 995 | Short Form Complaint - Kerry Justin and Lisa Justin by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/11/2012) |
| 07/11/2012 | 996 | Short Form Complaint-Lional Dalton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |

**-104-**

| 07/11/2012 | 997 | *Short Form Complaint- Joel Williams & Carolyn Williams* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 998 | Short Form Complaint - Lincoln Kennedy and Patricia Kennedy by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/11/2012) |
| 07/11/2012 | 999 | *Short Form Complaint- Ken Woodard* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1000 | Short Form Complaint *Steve Wallace* by PLAINTIFF(S). (BEIGHTOL, KRISTEN) (Entered: 07/11/2012) |
| 07/11/2012 | 1001 | Short Form Complaint-Lorenzo Davis by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1002 | Short Form Complaint-Tony Dorsett and Janet Dorsett by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1003 | Short Form Complaint-Santana Dotson and Monique Dotson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1004 | Short Form Complaint-James Elrod and Marlene Elrod by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1005 | Short Form Complaint-Bernard Ford by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1006 | Short Form Complaint-Barry Foster by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1007 | Short Form Complaint-Mike Gann and Karen Gann by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1008 | Short Form Complaint-Lorenzo Hampton and Marcia Hampton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1009 | Amended Short Form Complaint - Jill Stautner, as Personal Representative of the Estate of Ernie Stautner by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 1010 | Short Form Complaint-Dwight Harrison by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1011 | Amended Short Form Complaint - Charles Edward Brown by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 1012 | Amended Short Form Complaint - Guy Brown by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 1013 | Amended Short Form Complaint - Bobby Joe Conrad by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 1014 | Amended Short Form Complaint - Eric Dickerson by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 1015 | Amended Short Form Complaint - Hoyle Granger by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 1016 | Amended Short Form Complaint - Harry Gunner by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |

| 07/11/2012 | 1017 | Short Form Complaint-Keith Henderson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1018 | Amended Short Form Complaint - Daryl Ray Hobbs by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 1019 | Amended Short Form Complaint - John Curley Johnson, Sr. by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 1020 | Short Form Complaint-Wade Key and Catherine Key by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1021 | Amended Short Form Complaint - John Gipson Roach by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 1022 | Amended Short Form Complaint - Thomas James Roussel by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 1023 | Amended Short Form Complaint - Nancy Lunceford as Personal Representative of the Estate of David Lunceford by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 1024 | Short Form Complaint-Emanuel King and Kendra King by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1025 | Amended Short Form Complaint - Willie Carroll Townes by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 1026 | Short Form Complaint-Henry Lawrence by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1027 | Short Form Complaint-Michael Lush and Debra Lush by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1028 | Short Form Complaint-Anthony Marshall by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1029 | Short Form Complaint-Deems May and Susan May by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1030 | Short Form Complaint-Emanuel Martin by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1031 | Short Form Complaint-Eric Martin and Stacy Martin by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1032 | *Short Form Complaint - Christine Dronett* by PLAINTIFF(S). (Attachments: # 1 Exhibit Letters Testamentary)(MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1033 | Short Form Complaint-Fred McCrary and Nerma McCrary by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1034 | Short Form Complaint-Antonio McGee and Sue McGee by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/11/2012) |
| 07/11/2012 | 1035 | Amended Short Form Complaint - John Anthony Randle by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |
| 07/11/2012 | 1036 | Amended Short Form Complaint - Patrick H. Gibbs by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/11/2012) |

| 07/11/2012 | 1037 | *Short Form Complaint - Jamal Lewis* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
|---|---|---|
| 07/11/2012 | 1038 | *Short Form Complaint - Fulton Kuykendall* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1039 | *Short Form Complaint - Ryan Stewart* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1040 | *Short Form Complaint - Dorsey Levens* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1041 | *Short Form Complaint - Johndale Carty* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1042 | *Short Form Complaint - Mitchell L. Davis* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1043 | *Short Form Complaint - Wallace Davis* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1044 | *Short Form Complaint - Curtis R. Dickey, Deanna Dickey* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1045 | *Short Form Complaint - Floyd Dixon, Katrina Dixon* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1046 | *Short Form Complaint - Christopher J. Doleman* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1047 | *Short Form Complaint - Eric Dorsey* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1048 | *Short Form Complaint - Jamie R. Duncan* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1049 | Short Form Complaint *William S. Rademacher* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1050 | *Short Form Complaint - Marc Edwards, Darsi Edwards* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1051 | Short Form Complaint *Joel Steed* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1052 | Short Form Complaint *Larry Barnes* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1053 | *Short Form Complaint - Melvin Farr Jr.* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1054 | Short Form Complaint *Woodrow Bennett, Jr.* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1055 | Short Form Complaint *Cedric Brown* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1056 | *Short Form Complaint - Michael Farr, Cynthia Farr* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |

**-107-**

| 07/11/2012 | 1057 | Short Form Complaint *Joseph Brown and Jean Brown* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1058 | Short Form Complaint *Rudolph Bukich and Patricia Bukich* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1059 | *Short Form Complaint - Elliot Fortune* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1060 | Short Form Complaint *Michael Cloud* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1061 | Short Form Complaint *Brian Holloway* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1062 | *Short Form Complaint - James Geathers* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1063 | Short Form Complaint *Jimmie Giles* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1064 | Short Form Complaint *Danny Noonan* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1065 | *Short Form Complaint - Victor Green, Esther Green* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1066 | Short Form Complaint *Joe Phillips* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1067 | Short Form Complaint *Gregory Roberts* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1068 | *Short Form Complaint - D. Kris Haines, Mary Ann Haines* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1069 | Short Form Complaint *Jesse Solomon* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1070 | Short Form Complaint *James Wilder* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1071 | *Short Form Complaint - Ruffin Hamilton, Dena Hamilton* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/11/2012) |
| 07/11/2012 | 1072 | Short Form Complaint *Wrongful Death CAROLYN LENS (Gregory Lens)* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1073 | Short Form Complaint *Ralph Wenzel and Dr. Eleanor Perfetto* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/11/2012 | 1074 | Short Form Complaint *Wrongful Death Dr. ELEANOR PERFETTO (Ralph Wenzel)* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/11/2012) |
| 07/12/2012 | 1075 | Short Form Complaint--Donald Bessillieu by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1076 | Short Form Complaint-William C. Bradley and Susan Bradley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |

| 07/12/2012 | 1077 | Short Form Complaint-Jeff Burris by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1078 | Short Form Complaint-Chris Calloway by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1079 | Short Form Complaint-Shante Carver by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1080 | Short Form Complaint-Raymond Clayborn and Kimberly Clayborn by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1081 | Short Form Complaint-Anthony Collins and Trudy Collins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1082 | Short Form Complaint-Tony Covington by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1083 | Short Form Complaint-Vernon Dean by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1084 | Short Form Complaint-Mark S. Duper by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1085 | Short Form Complaint-Robert J. Fredrickson and Barbara A. Fredrickson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1086 | Short Form Complaint-Duane Galloway by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1087 | Short Form Complaint-Antonio Gibson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1088 | Short Form Complaint-George and Geneve Goeddeke by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1089 | Short Form Complaint-Chris Goode by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1090 | Short Form Complaint-Kerry and Tanja Goode by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1091 | Short Form Complaint-Rory Graves by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1092 | Short Form Complaint-Rodney and Andetria Hampton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1093 | Short Form Complaint-Anthony and Paula Hancock by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1094 | Short Form Complaint-Anthony Hargain by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1095 | Short Form Complaint-Joseph A. Harris and Lydia Harris by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1096 | Short Form Complaint-Wayne and Sharon Hawkins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |

| 07/12/2012 | 1097 | Short Form Complaint-Patrick and Sharron Heenan by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1098 | Short Form Complaint-Lonzell Hill and Lanita Hill by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1099 | Short Form Complaint-James Hood and Bonita Hood by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1100 | Short Form Complaint-Bryan Hooks by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1101 | Short Form Complaint-Harold L. Jackson and Carolyn Jackson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1102 | Short Form Complaint-Roland James and Carmel James by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1103 | *Short Form Complaint - James Althoff* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1104 | *Short Form Complaint - Dennis Bragonier* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1105 | *Short Form Complaint - Gail A. Clark* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1106 | Short Form Complaint-George Jamison and Arnella Jamison by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1107 | *Short Form Complaint - Shawn L. Collins* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1108 | *Short Form Complaint - Charles Wayne Crow* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1109 | Short Form Complaint-Melvin Jenkins and Javoni Jenkins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1110 | *Short Form Complaint - Mitchell Geier* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1111 | Short Form Complaint-Todd Johnson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1112 | *Short Form Complaint - Hubert Lee Ginn* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1113 | *Short Form Complaint - Kwame Harris* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1114 | *Short Form Complaint - Brandon Hayes* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1115 | Short Form Complaint-Anthony Jones by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1116 | *Short Form Complaint - Undra Johnson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

**-110-**

| 07/12/2012 | 1117 | *Short Form Complaint - Derrick Lassic* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1118 | Short Form Complaint-Broderick Jones by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1119 | *Short Form Complaint - Gregory Lewis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1120 | *Short Form Complaint - Fran Lynch* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1121 | Short Form Complaint-Gary Jones by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1122 | *Short Form Complaint - Joshua Norman* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1123 | *Short Form Complaint - Garin J. Patrick* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1124 | Short Form Complaint-Kirk C. Jones by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1125 | *Short Form Complaint - Donald T. Pederson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1126 | *Short Form Complaint - Gregory Randall* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1127 | *Short Form Complaint - Carver Shannon* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1128 | Short Form Complaint-Larry M. Kaminski and Linda B. Kaminski by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1129 | *Short Form Complaint - Tony Smith* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1130 | *Short Form Complaint - Larry Tearry* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1131 | Short Form Complaint-Kelly Kirchbaum and Wilheamena Kirchbaum by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1132 | *Short Form Complaint - Felix Wright* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1133 | *Short Form Complaint - Henry Louis Adams and Michelle Adams* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1134 | *Short Form Complaint - Terry Hardy, Lakesha Hardy* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1135 | Short Form Complaint-David Kocourek and Mary Lee Kocourek by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1136 | *Short Form Complaint - Cornelius Anthony and Sherryl Anthony* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | 1137 | *Short Form Complaint - Derrick Beasley and Tina Beasley* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1138 | *Short Form Complaint - Andy Bushak and Mary Ann Bushak* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1139 | Short Form Complaint -*Steve Korte and Karelis Korte* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1140 | *Short Form Complaint - Duriel Harris, Julie Harris* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1141 | *Short Form Complaint - Brett Carolan and Amy Carolan* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1142 | *Short Form Complaint - Garry Cobb and Gwendolyn Cobb* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1143 | Short Form Complaint-Edward P. Lee and Susan Jackson-Lee by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1144 | *Short Form Complaint - Mo Collins and Jolin Collins* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1145 | *Short Form Complaint - Garrison Hearst* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1146 | Short Form Complaint-David Lewis and Bonnie Asberry-Lewis by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1147 | *Short Form Complaint - Glen Condren and Sheila Condren* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1148 | *Short Form Complaint - Robert J. Cryder and Lisa Cryder* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1149 | *Short Form Complaint - Efrem Hill, Tiya Hill* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1150 | *Short Form Complaint - Tyrone Davis and Dana Davis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1151 | *Short Form Complaint - Brian Deroo and Penny Deroo* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1152 | *Short Form Complaint - Coy Leon Donohue and Judy Donohue* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1153 | *Short Form Complaint - David Douglas and Karla H. Douglas* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1154 | *Short Form Complaint - Stephen Hobbs, Dee Hobbs* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1155 | *Short Form Complaint - Dave Elmendorf and Mamie Elmendorf* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1156 | *Short Form Complaint - Kevin Everett and Wiande Everett* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | 1157 | *Short Form Complaint - Kelly Holcomb, Lorie Holcomb* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1158 | Short Form Complaint-Danny Miller by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1159 | *Short Form Complaint - Rodney Holman, Sandra Holman* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1160 | *Short Form Complaint - Neil Graff and Debra Graff* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1161 | *Short Form Complaint - Tom A. Goosby and Lovette Goosby* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1162 | *Short Form Complaint - Kevin Hancock and Betsy Hancock* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1163 | *Short Form Complaint - Bruce B. Holmes* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1164 | Short Form Complaint-Reginald Moore by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1165 | Short Form Complaint-Zefross Moss by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1166 | *Short Form Complaint - Sedrick Irvin* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1167 | *Short Form Complaint - Greg Hartle and Robin Hartle* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1168 | Short Form Complaint-John Outlaw by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1169 | *Short Form Complaint - Jeffrey Jones and April Jones* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1170 | *Short Form Complaint - Chris Jacke* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1171 | *Short Form Complaint - David T. Jordan and Amanda Jones* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1172 | Short Form Complaint-Dave Pear and Heidi Pear by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1173 | *Short Form Complaint - Alex Karras and Susan Clark* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1174 | Short Form Complaint-Lee Rouson and Lisa Rouson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1175 | *Short Form Complaint - Alfred Jenkins* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1176 | *Short Form Complaint - Jim Kitts and Jennifer Kitts* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | 1177 | Short Form Complaint-James Pruitt by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1178 | *Short Form Complaint - Bruce Klostermann and Nancy Klostermann* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1179 | *Short Form Complaint - Anthony Johnson* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1180 | *Short Form Complaint - Bryan Knight and Raahna Knight* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1181 | *Short Form Complaint - Sammy Knight and Freda Knight* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1182 | Short Form Complaint-Johnny Rembert and Miltena Rembert by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1183 | *Short Form Complaint - Eddie Lewis and Elena Lewis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1184 | *Short Form Complaint - Larry Johnson, Sr., Cathy Johnson* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1185 | *Short Form Complaint - Dale Messer and Shirlee Messer* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1186 | *Short Form Complaint - Carl Miller and Cynthia Miller* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1187 | Short Form Complaint-Willie Richardson and Earline Richardson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1188 | *Short Form Complaint - Anthony Montgomery and Angela Montgomery* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1189 | *Short Form Complaint - Sidney Johnson, Catrice Johnson* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1190 | *Short Form Complaint - Jerald Moore and Latosha Moore* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1191 | Short Form Complaint-Lance Smith by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1192 | *Short Form Complaint - Thomas Newberry and Stephanie Finn* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1193 | *Short Form Complaint - Michael Newell and Kate Newell* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1194 | *Short Form Complaint - Joseph Brian Johnston, Mes Johnston* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1195 | *Short Form Complaint - Robert V. Newland and Christie Cole Newland* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1196 | Short Form Complaint-David Sims by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |

| 07/12/2012 | 1197 | *Short Form Complaint - Brian D. Noble and Cindy A. Noble* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1198 | *Short Form Complaint - Jeff Novak and Kim Novak* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1199 | Short Form Complaint-Robert Suci and Merita Suci by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1200 | *Short Form Complaint - Mike Pagel and Lisa Pagel* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1201 | Short Form Complaint-Wendell Tyler and Carmen Tyler by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1202 | *Short Form Complaint - Mark Pike and Sharon Pike* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1203 | *Short Form Complaint - Arthur S. Plunkett and Jeri Plunkett* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1204 | Short Form Complaint-James VanWagner and Kelley VanWagner by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1205 | *Short Form Complaint - Marvin Powell and Mona Powell* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1206 | *Short Form Complaint - Robert Prout and Theresia Prout* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1207 | Short Form Complaint-Calvin Williams and Charese Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1208 | *Short Form Complaint - Michael Rusinek and Tonette Rusinek* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1209 | *Short Form Complaint - Santo S. Stephens and Damaris Stephens* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1210 | *Short Form Complaint - James H. Strong, Jr. and Eileen Strong* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1211 | Short Form Complaint-Ronnie Lippett by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1212 | *Short Form Complaint - Clarence Vaughn and Brooke Vaughn* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1213 | *Short Form Complaint - Charles Weaver and Janie Weaver* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1214 | *Short Form Complaint - Darryl Williams and Tammy Williams* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1215 | Short Form Complant-Willilam H. Mandley and Teresa S. Mandley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1216 | *Short Form Complaint - Troy Wilson and Stephanie Wilson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | 1217 | *Short Form Complaint - Jeff Yeates and Becky Yeates* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1218 | Short Form Complaint-Vernon Maxwell by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1219 | *Short Form Complaint - Kory Blackwell and Sonja Blackwell* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1220 | Short Form Complaint-Fred McNeill and Tia McNeill by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1221 | *Short Form Complaint - Ted Brown and Brenda Brown* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1222 | *Short Form Complaint - William Brown and Darlene Brown* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1223 | Short Form Complaint-Richard Mercier by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1224 | *Short Form Complaint - Charles H. Buchanan and Gwenell N. Buchanan* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1225 | *Short Form Complaint - Louis Cheek and Suzanne Cheek* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1226 | *Short Form Complaint - Christopher Coleman and Anna Coleman* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1227 | Short Form Complaint-Charles E. Miller by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1228 | *Short Form Complaint - Robert Davis and Mary Davis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1229 | *Short Form Complaint - Byron Evans and Alva Evans* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1230 | *Short Form Complaint - Joe Fields and Ellen Fields* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1231 | Short Form Complaint-Lyvonia A. Mitchell by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1232 | *Short Form Complaint - Thomas A. Geredine, Sr. and Denice H. Geredine* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1233 | *Short Form Complaint - Tim Green and Illyssa Green* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1234 | Short Form Complaint-Alvin Moore and Odetta Moore by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1235 | *Short Form Complaint - Halvor Hagen and Sandra A. Hagen* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1236 | Short Form Complaint-Steve Nelson and Angela R. Nelson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |

| 07/12/2012 | 1237 | *Short Form Complaint - Gene Heeter and Sandra Heeter* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
|---|---|---|
| 07/12/2012 | 1238 | *Short Form Complaint - John F. Hoffman and Jody L. Mathie* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1239 | Short Form Complaint-Edward Payton and Rica Payton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1240 | *Short Form Complaint - Robbie Jones and Michele King-Jones* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1241 | *Short Form Complaint - Crawford Ker and Melissa Ker* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1242 | Short Form Complaint-Thomas C. Randolph and Evelyn A. Randolph by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1243 | *Short Form Complaint - Bob Kilcullen and Kathryn E. Kilcullen* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1244 | *Short Form Complaint - Ronald Mattes and Susan E. Mattes* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1245 | Short Form Complaint-Steve Reese and Marilyn Reese by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1246 | *Short Form Complaint - Mike McGill and Geraldine McGill* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1247 | Short Form Complaint-Derrick S. Reynolds by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1248 | *Short Form Complaint - Thomas Daniel Neal and Barbara Neal* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1249 | *Short Form Complaint - Robert L. Nelson and Michele Nelson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1250 | Short Form Complaint-Mike C. Richardson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1251 | Amended Short Form Complaint - Lee Roy Jordan by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1252 | *Short Form Complaint - James B. Nicholson and Sheila C. Enos* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1253 | *Short Form Complaint - Donald Nickey and Katie Nickey* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1254 | Short Form Complaint-James Tootie Robbins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1255 | Amended Short Form Complaint - Ronald Brown by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1256 | Short Form Complaint - Matthias Askew by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |

| 07/12/2012 | 1257 | *Short Form Complaint - Ben Nowland and Hillary Nowland* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1258 | *Short Form Complaint- Robert J. Kelly, III & Emily Kelly* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1259 | *Short Form Complaint - Homer V. Post and Helen F. Post* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1260 | Amended Short Form Complaint - Jerry Ray Norton by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1261 | Short Form Complaint-Reggie Rogers and Laura Rogers by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1262 | Short Form Complaint - Kevan Barlow by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1263 | *Short Form Complaint - Troy Sadowski and Beth Sadowski* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1264 | Amended Short Form Complaint - Preston Pearson by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1265 | *Short Form Complaint - Joe Schmiesing and Cynthia Schmiesing* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1266 | Short Form Complaint-Leonard Russell and Tasha Russell by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1267 | Short Form Complaint - Reggie Barlow by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1268 | *Short Form Complaint - Richard Strenger and Karen Strenger* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1269 | *Short Form Complaint- Allan Kennedy* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1270 | *Short Form Complaint - Don Strock and Debby Strock* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1271 | Short Form Complaint - Lamont Brightful by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1272 | *Short Form Complaint -Cliff R. Thrift and Susan G. Adair-Thrift* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1273 | Short Form Complaint-James M. Schnitker and Beverlee Schnitker by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1274 | *Short Form Complaint - Matt Vanderbeek and Brandi Vanderbeek* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1275 | Short Form Complaint - Vincent Brisby by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1276 | *Short Form Complaint - Alvin Walton and Janet Walton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | 1277 | Short Form Complaint-Philip Smith by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1278 | *Short Form Complaint - Daniel Whyte and Karen Whyte* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1279 | *Short Form Complaint- Ed King & Angela Gwen King* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1280 | *Short Form Complaint - Malcolm Carson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1281 | *Short Form Complaint - William Delahoussaye* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1282 | Short Form Complaint-Lewis D. Tillman and Kathy K. Tillman by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1283 | *Short Form Complaint - Gary M. Jeter* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1284 | Short Form Complaint - Regilyn "Reggie" Brown by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1285 | *Short Form Complaint- Jevon Langford & Jayna Langford* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1286 | Short Form Complaint-George Visger and Kristie Visger by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1287 | *Short Form Complaint - Marc Lillibridge* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1288 | *Short Form Complaint - Freddie Milons, Jr.* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1289 | Amended Short Form Complaint - James Smith by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1290 | Short Form Complaint - Byron Chamberlain by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1291 | *Short Form Complaint-Bruce Walker and Vanisha Walker* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1292 | *Short Form Complaint - Andre Royal* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1293 | Amended Short Form Complaint - Diron V. Talbert by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1294 | *Short Form Complaint- Robert L. Lavette, Jr.* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1295 | Short Form Complaint - Jarrod Cooper by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1296 | *Short Form Complaint - Fulton Walker* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | 1297 | Amended Short Form Complaint - Don Talbert by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
|---|---|---|
| 07/12/2012 | 1298 | Short Form Complaint-Robert Weathers by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1299 | Amended Short Form Complaint - Marlene Tubbs, a/n/f of Gerald J. Tubbs, Deceased by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1300 | Short Form Complaint-David J. White and Monica J. White by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1301 | Short Form Complaint - James Cotton by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1302 | *Short Form Complaint- Kevin Lee & Nicole Lee* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1303 | Short Form Complaint-Kendall Williams and Ingrid Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1304 | Short Form Complaint - Kalimba Edwards by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1305 | Short Form Complaint - Patrick Z. Sapp by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1306 | Short Form Complaint-Newton Williams and Jacqueline Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1307 | *Short Form Complaint - Keith Adams and Yolanda Adams* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1308 | *Short Form Complaint - Scott Adams and Tishara Adams* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1309 | *Short Form Complaint- Steve Luke & Lori Luke* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1310 | Short Form Complaint - Taveres (T.J.) Slaughter by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1311 | *Short Form Complaint - Michael Anderson and Andrea Evans* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1312 | Short Form Complant-James E. Willis and Shalane Willis by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1313 | Short Form Complaint - Armegis Spearman by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1314 | *Short Form Complaint - Gary Baldinger and Denise Baldinger* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1315 | *Short Form Complaint - Lew Barnes and Kim Barnes* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1316 | Short Form Complaint - Terrell Sutton by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |

| 07/12/2012 | 1317 | *Short Form Complaint-Terry Wright* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1318 | Short Form Complaint - Kevin Turner by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1319 | Short Form Complaint-Toby L. Wright and Jandi Wright by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1320 | Short Form Complaint - Eddie "Boo" Williams by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1321 | *Short Form Complaint - Ken Blackman and Charity Blackman* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1322 | Short Form Complaint - Reinard Wilson by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1323 | *Short Form Complaint - Stephen Braggs and Virginia Braggs* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1324 | Short Form Complaint-Renard Young by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1325 | *Short Form Complaint- Don Majkowski & Kelly Majkowski* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1326 | *Short Form Complaint - Greg Brewton and Angela Brewton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1327 | *Short Form Complaint - Greg Christy and Lori Christy* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1328 | Short Form Complaint-Steve Zabel and Susan Zabel by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1329 | *Short Form Complaint - Sherman Cocroft and Lisa Cocroft* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1330 | *Short Form Complaint - Jeff Beaver and Carol Beaver* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1331 | *Short Form Complaint- Dewey McClain & Linda McClain* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1332 | *Short Form Complaint - David H. Crossan and Nancy Crossan* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1333 | Short Form Complaint--Myron Pottios and Doreen Pottios by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1334 | *Short Form Complaint - Charles Ehin and Leslie Ehin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1335 | *Short Form Complaint - Phillip Epps and Janice Epps* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1336 | *Short Form Complaint - Michael J. Freeman and Lola Morgan* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| | | |
|---|---|---|
| 07/12/2012 | 1337 | Amended Short Form Complaint - Malcolm Walker, Jr. by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1338 | Short Form Complaint-Ron Pritchard and Claudia Pritchard by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1339 | *Short Form Complaint - Chris Gedney and Kathy Gedney* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1340 | *Short Form Complaint - Samuel Haddix and Camillia Haddix* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1341 | Short Form Complaint-Gregory Pruitt by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1342 | *Short Form Complaint- Dana McLemore & Karyn McLemore* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1343 | Amended Short Form Complaint - Charles Waters by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1344 | Short Form Complaint - Richard Jordan and Francoise Jordan, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1345 | *Short Form Complaint - Samuel Haddix and Camillia Haddix* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1346 | Short Form Complaint-Terry Ray and Marie Ray by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1347 | *Short Form Complaint - Jeff Hart and Geneva Hart* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1348 | Short Form Complaint - Cedric Killlings and Shavondra Killings, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1349 | Amended Short Form Complaint - Randy White by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1350 | *Short Form Complaint - Ron Heller and Connie Heller* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1351 | Amended Short Form Complaint - Rayfield Wright by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1352 | *Short Form Complaint - Ronald Hester and Kimberly Hester* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1353 | *Short Form Complaint- Robert Micho* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1354 | Short Form Complaint-Melvin Renfro and Elizabth Renfro by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1355 | Short Form Complaint - Tommy Knight and Tracy Knight, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1356 | *Short Form Complaint - Michael Hoban and Gail Hoban* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| | | |
|---|---|---|
| 07/12/2012 | 1357 | *Short Form Complaint - Jeff Hostetler and Vicky Hostetler* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1358 | Short Form Complaint - Robert Kratch and Kristi Kratch, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1359 | *Short Form Complaint - Martin Imhof and Lori Imhof* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1360 | Amended Short Form Complaint - Robert Lilly by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1361 | Short Form Complaint-Gloster Richardson and Betty Richardson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1362 | *Short Form Complaint - Dexter Jackson and Melanise Jackson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1363 | Short Form Complaint - Teddy Lehman and Erin Lehman, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1364 | *Short Form Complaint - Jerry Jensen and Marcelle Jensen* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1365 | Short Form Complaint - Timothy L. Lester and Natalie Lester, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1366 | *Short Form Complaint - Thomas Jeter and Stacey Jeter* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1367 | Short Form Complaint-Randy Robbins and Tracy Robbins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1368 | *Short Form Complaint- Jermaine Miles & Cassandra Miles* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1369 | *Short Form Complaint - Donald Jones and Karen Jones* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1370 | *Short Form Complaint - Carlton Kammerer and Patricia Kammerer* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1371 | Short Form Complaint - Gerald McBurrows and Reba McBurrows, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1372 | Short Form Complaint-Edward Robinson, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1373 | *Short Form Complaint - Theodore G. Karras and Anna Karras* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1374 | Short Form Complaint - Dell McGee and Sue McGee, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1375 | *Short Form Complaint - Lamar King and Carmela King* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1376 | Short Form Complaint - Edwin Mulitalo and Laura Mulitalo, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |

| 07/12/2012 | 1377 | *Short Form Complaint - Kenneth Lanier and Arlene Lanier* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1378 | Short Form Complaint-Bernard Robertson and Rheneisha Robertson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1379 | *Short Form Complaint - Mitchell Daren Marrow and Hilary Marrow* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1380 | Short Form Complaint - Antonio Newson and Maxine Newson, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1381 | *Short Form Complaint - Karl Mecklenburg and Katherine Mecklenburg* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1382 | Short Form Complaint-Clarence Sanders by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1383 | *Short Form Complaint - Frank Middleton and Kristina A. Middleton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1384 | *Short Form Complaint - Marvin Montgomery and Jane Montgomery* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1385 | Amended Short Form Complaint - James R. Colvin by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1386 | *Short Form Complaint - Leon Neal and J. Denise Neal* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1387 | Short Form Complaint-Ricahrd Schafrath and Judityh Schafrath by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1388 | Amended Short Form Complaint - Gary Allen Hammond by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1389 | Short Form Complaint - Scot Osborne and Jamie Osborne, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1390 | *Short Form Complaint - Robert M. Neff and Barbara L. Neff* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1391 | Amended Short Form Complaint - Harold Hays by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1392 | Short Form Complaint-Michael Schneck and Amanda Schneck by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1393 | Short Form Complaint - Jamal Robertson and Patara Robertson, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1394 | *Short Form Complaint - Tupe Peko and Valerie Peko* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1395 | Amended Short Form Complaint - David Hill by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1396 | *Short Form Complaint - Raymond Preston and Lisa Preston* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| | | |
|---|---|---|
| 07/12/2012 | 1397 | *Short Form Complaint- Calvin Miller & Dee Miller* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1398 | Short Form Complaint - Noel Scarlett and Naomi Scarlett, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1399 | Amended Short Form Complaint - Angelo King by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1400 | *Short Form Complaint - Saleem Rasheed and Hadam Benachou* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1401 | *Short Form Complaint - Mike Richardson and Cindy W. Richardson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1402 | Short Form Complaint - Paul Shields and Kimberly Shields, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1403 | Short Form Complaint-Curtis Shearer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1404 | Amended Short Form Complaint - Larry Cole by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1405 | *Short Form Complaint - Thomas G. Ricketts, Jr. and Sandra Ricketts* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1406 | Short Form Complaint - Nate Singleton and Kimberly Singleton, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1407 | *Short Form Complaint - Dennis W. Shaw and Elizabeth M. Shaw* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1408 | Short Form Complaint-Franky Smith and Linda Smith by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1409 | *Short Form Complaint - King Simmons and Ribin Latanya Simmons* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1410 | Short Form Complaint - Torrance Small and Denise Small, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1411 | *Short Form Complaint- Shannon L. Mitchell & Frenchie Mitchell* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1412 | *Short Form Complaint - Dennis Smith and Andree' Smith* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1413 | Short Form Complaint - Gregory "Greg" Spires and Alzadia Spires, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1414 | *Short Form Complaint - Thomas L. Smith, Jr. and Lydia Smith* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1415 | ShortForm Complaint-Kendrick Rogers by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1416 | Short Form Complaint - Barron Tanner and Dionna Chambers, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |

| 07/12/2012 | [1417](#) | Short Form Complaint - Travares Tillman and Kiki Tillman, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | [1418](#) | *Short Form Complaint - Richard Stevens and Patricia Stevens* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1419](#) | *Short Form Complaint- Stevon Moore & Jondena Moore* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | [1420](#) | Amended Short Form Complaint - Walter Garrison by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | [1421](#) | *Short Form Complaint - William F. Story and Evelyn Story* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1422](#) | Short Form Complaint-John Henry Smith by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | [1423](#) | *Short Form Complaint - Pat Studstill and Rita Studstill* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1424](#) | Short Form Complaint - Darryl Williams and Marlina Williams, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | [1425](#) | *Short Form Complaint - Dennis Tripp and Melanie Tripp* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1426](#) | *Short Form Complaint - Wendell Tucker and Pamela Tucker* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1427](#) | Short Form Complaint - Jimmy Wyrick and Leena Wyrick, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | [1428](#) | Short Form Complaint-Ralph Stocikemer and Jessica Stockemer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | [1429](#) | *Short Form Complaint- Zeke Mowatt* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | [1430](#) | *Short Form Complaint - Bert Weidner and Renee Weidner* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1431](#) | *Short Form Complaint - Jonathan Welsh and Jennifer Welsh* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1432](#) | *Short Form Complaint - Derek West and Khara West* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1433](#) | *Short Form Complaint - Dennis A. Wirgowski and Bethany Wirgowski* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1434](#) | Short Form Complaint-James Stewart and Melissa Stewart by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | [1435](#) | *Short Form Complaint - Richard L. Woodley and Patricia Woodley* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1436](#) | *Short Form Complaint - Monty Beisel* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | 1437 | *Short Form Complaint - Jason Chorak* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1438 | Short Form Complaint-Tyronne Stowe and Elise Stowe by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1439 | *Short Form Complaint - Larry E. Evans* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1440 | *Short Form Complaint - Jim Gatziolis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1441 | *Short Form Complaint - Ronnie Ghent* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1442 | Short Form Complaint-Michael Strachan and Loretta Strachan by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1443 | *Short Form Complaint - Jeff Gossett* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1444 | *Short Form Complaint- Hubert Oliver & Rosalyn Wade* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1445 | *Short Form Complaint - Herman Heard* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1446 | Short Form Complaint-Eric Sutton and Tywana Sutton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1447 | *Short Form Complaint - Jason D. Horton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1448 | *Short Form Complaint - Russell Jensen* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1449 | Short Form Complaint-Eugene Taylor by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1450 | *Short Form Complaint - Kevin Johnson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1451 | *Short Form Complaint- Brian O'Neal* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1452 | *Short Form Complaint - J.J. Lasley* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1453 | *Short Form Complaint - Kevin L. McArthur* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1454 | Short Form Complaint-Odessa Turner by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1455 | *Short Form Complaint - Willie Oshodin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1456 | *Short Form Complaint - Robert Otto* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | 1457 | *Short Form Complaint - Tag Rome* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1458 | Short Form Complaint-Stephen Towle and Janette Towle by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1459 | *Short Form Complaint- Sterling Palmer* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1460 | *Short Form Complaint - Dedrick Roper* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1461 | *Short Form Complaint - Mark Seay* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1462 | *Short Form Complaint - Rodell Thomas* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1463 | Short Form Complaint-Mark Walczak by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1464 | *Short Form Complaint- Roosevelt Patterson & Kiki G. Patterson* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1465 | Short Form Complaint-Ward Walsh by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1466 | Short Form Complaint-Russell White and Aminah White by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1467 | Short Form Complaint - Aaron Beasley and Yumme Beasley, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1468 | Short Form Complaint - Eric Beverly and Danielle Beverly, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1469 | Short Form Complaint-Scott Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1470 | *Short Form Complaint - Jeff Beaver and Carol Beaver* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1471 | *Short Form Complaint- Brett Perriman & Laundria Perriman* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1472 | Short Form Complaint - Willie Blade and Angela Blade, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1473 | Short Form Complaint-Donald Wilson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1474 | Short Form Complaint - Chad Brown and Cristin Brown, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1475 | Short Form Complaint-Quincy Wilson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1476 | Short Form Complaint - Deauntae Brown and Nikeisha Brown, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |

| 07/12/2012 | 1477 | Short Form Complaint-Darryl Wren and Charlene Wren by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| --- | --- | --- |
| 07/12/2012 | 1478 | Short Form Complaint - Duane Butler and Angela Situ, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1479 | Short Form Complaint - Chris Chambers and Stacey Chambers, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1480 | *Short Form Complaint- Keith Ponder & Janet Ponder* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1481 | Short Form Complaint-Torrey Wright by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1482 | Short Form Complaint - Ben Coates and Yvette Coates, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1483 | Short Form Complaint - Ben Coleman and Krista Coleman, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1484 | Short Form Complaint-Emanuel Zanders and Yvonne Zanders by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1485 | Short Form Complaint - Chris Cooper and Mattie Cooper, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1486 | *Short Form Complaint- Stanley Pritchett Jr.* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1487 | Short Form Complaint - Vernon Crawford and Tuere Crawford, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1488 | Short Form Complaint-Chidi Ahanotu by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1489 | Short Form Complaint - Chartric "Chuck" Darby and Charlette Darby, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1490 | Short Form Complaint - Greg Delong and Carrie Delong, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1491 | Short Form Complaint-Steve Baack by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1492 | Short Form Complaint-Elmer Bailey by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1493 | *Short Form Complaint- Wesley Pritchett* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1494 | Short Form Complaint - Dusty Dvoracek and Lacy Dvoracek, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1495 | Short Form Complaint-Idrees Bashir by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1496 | Amended Short Form Complaint - Reginald Doss by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |

| 07/12/2012 | 1497 | Short Form Complaint - Edward Ellis and Barbara Ellis, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1498 | Short Form Complaint-Brian Ingram by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1499 | Short Form Complaint - Matt Finkes and Meridith Finkes, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1500 | Short Form Complaint-Brian Blades and Tisha Blades by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1501 | Short Form Complaint - Jarvis Green and Rakia Green, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1502 | *Short Form Complaint - Daniel Jame Audick* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1503 | Short Form Complaint - Steven "Steve" Herndon and Heather Herndon, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1504 | Short Form Complaint-Horatio Blades and Linda Blades by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1505 | *Short Form Complaint- Gary Reasons & Terri Reasons* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1506 | *Short Form Complaint - Tomur Barnes* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1507 | Short Form Complaint - Lamarcus Hicks and Ashley Hicks, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1508 | *Short Form Complaint - Reggie Berry* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1509 | Short Form Complaint-Phillip Bobo by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1510 | *Short Form Complaint - Lynne R. Boden* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1511 | Short Form Complaint - Willie Jones and Jaquedia Jones, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1512 | *Short Form Complaint - Peter Campion* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1513 | Short Form Complaint-Robert Brown and Dawn Brown by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1514 | *Short Form Complaint - Marlon Chambers* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1515 | *Short Form Complaint - Dereck Faulkner* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1516 | Short Form Complaint-Robert Brunet and Lydia Brunet by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |

| 07/12/2012 | 1517 | *Short Form Complaint - Russell Gary* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1518 | *Short Form Complaint - Alex Gordon* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1519 | *Short Form Complaint - Samuel L. Green* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1520 | *Short Form Complaint - Robert Hewko* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1521 | Short Form Complaint-Robert C. Butler and Cyrillyn Y. Butler by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1522 | *Short Form Complaint - Charlie McShane* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1523 | *Short Form Complaint - Derrie Nelson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1524 | Short Form Complaint-Lindsey Chapman by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1525 | *Short Form Complaint - Paul Palmer* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1526 | *Short Form Complaint - Jarvis J. Redwine* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1527 | *Short Form Complaint - Scott Scharff* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1528 | Short Form Complaint-Harvey Clayton and Carla K. Clayton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1529 | *Short Form Complaint- Kenneth Reaves* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1530 | *Short Form Complaint - Willie Tullis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1531 | Short Form Complaint-Eric Curry and Wilatreal Curry by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1532 | *Short Form Complaint - Kevin Williams* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1533 | *Short Form Complaint - Sam Williams* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1534 | Short Form Complaint-George J. Curry and Dawn M. Curry by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1535 | *Short Form Complaint - Randy R. Beverly, Sr. and Sharon R. Beverly* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1536 | *Short Form Complaint- Alpette Richardson* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |

| 07/12/2012 | 1537 | *Short Form Complaint - Joycelyn Borgella and Katina Borgella* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1538 | Short Form Complaint-Steve Doig by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1539 | *Short Form Complaint - Frank Boudreaux and Kathy Boudreaux* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1540 | *Short Form Complaint - Isaac Byrd and Lumarys Matos-Byrd* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1541 | Amended Short Form Complaint - John Fitzgerald by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1542 | Short Form Complaint-John Ebersolel and Janice Ebersole by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1543 | *Short Form Complaint - Curtis Enis and Michelle Ann Enis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1544 | *Short Form Complaint - Frank Gallagher and Margret Gallagher* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1545 | *Short Form Complaint- Robert L. Robertson, Jr. & Nneka Robertson* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1546 | *Short Form Complaint - Jon Michael Goldsberry and Rachael Ann Goldsberry* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1547 | *Short Form Complaint - Roland Harper and Donnal Aguirre-Harper* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1548 | Short Form Complaint-Gregory G. Evans by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1549 | *Short Form Complaint - Leotis Harris and Gloria J. Harris* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1550 | *Short Form Complaint - Steve Hegdale and Angie Hegdale* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1551 | Short Form Complaint-Ascotti Fields and Donna Fields by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1552 | *Short Form Complaint - James B. Heidel and Joanna P. Heidel* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1553 | Short Form Complaint-Brad Ford by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1554 | *Short Form Complaint - James E. Houston, Sr. and Donna Jean Houston* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1555 | Short Form Complaint-Mark Garalczyk by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1556 | *Short Form Complaint - Frank Jackson and Mary Nell Jackson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | [1557](#) | *Short Form Complaint - Gary Larsen and Wende Larsen* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1558](#) | *Short Form Complaint- Jim Romano & Brigitte Romano* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | [1559](#) | Short Form Complaint-Cornell Gowdy by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | [1560](#) | *Short Form Complaint - Gregory Lasker and Rosa Lasker* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1561](#) | *Short Form Complaint - Gary Lowe, Sr. and Deone Lowe* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1562](#) | *Short Form Complaint - Sean Lumpkin and Tracy Lumpkin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1563](#) | Short Form Complaint-Hugh Green and Guy Green by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | [1564](#) | *Short Form Complaint - Aubrey Matthews and Angela Matthews* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1565](#) | *Short Form Complaint - Andy Mauer and Jean Mauer* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1566](#) | Short Form Complaint-David Grayson, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | [1567](#) | *Short Form Complaint - Mark E. May and Kathy May* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1568](#) | *Short Form Complaint- Johnny Rutledge & Gia Rutledge* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | [1569](#) | *Short Form Complaint - Glenn McCombs and Stacey McCombs* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1570](#) | Amended Short Form Complaint - Ralph Neely by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | [1571](#) | *Short Form Complaint - Jeff Nixon and Joyce Nixon* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1572](#) | Short Form Complaint-Roy Green by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | [1573](#) | *Short Form Complaint - Jay L. Pennison and Bonnie Pennison* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1574](#) | *Short Form Complaint - John Rienstra and Tamara Rienstra* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1575](#) | Amended Short Form Complaint - Donny Anderson by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | [1576](#) | Short Form Complaint-William Hardison by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |

| 07/12/2012 | 1577 | Amended Short Form Complaint - Anthony Miller by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1578 | *Short Form Complaint - Timohty Rossovich and Lauren Rossovich* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1579 | *Short Form Complaint - Stacey Simmons and Hortensia Simmons* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1580 | Short Form Complaint-Frederick R. Hayes by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1581 | *Short Form Complaint - Jeffery Hugh Staggs and Sarah Joyce Staggs* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1582 | Amended Short Form Complaint - Tyrone Montgomery by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1583 | *Short Form Complaint- O.J. Santiago* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1584 | *Short Form Complaint - John C. Stofa and Kathryn Stofa* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1585 | Short Form Complaint-Floyd Hodge and Terry Hodge by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1586 | Amended Short Form Complaint - James Montgomery by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1587 | *Short Form Complaint - David Viaene and Kelly Viaene* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1588 | Amended Short Form Complaint - Jerry Broadnax by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1589 | *Short Form Complaint - Robert L. Wilson and Tiffany Wilson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1590 | Short Form Complaint-James Jensen and Darlene Jensen by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1591 | Amended Short Form Complaint - Charles Howley by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1592 | *Short Form Complaint- John W. Sawyer* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1593 | Amended Short Form Complaint - Donald McIlhenny by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1594 | Short Form Complaint *Akili J. Johnson* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1595 | Short Form Complaint - Carl Richardson, Jr. by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1596 | Amended Short Form Complaint - Michael Connelly by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |

| 07/12/2012 | 1597 | Short Form Complaint-Markeysia Donta Jones by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1598 | Short Form Complaint - Derek H. Ross by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1599 | Short Form Complaint-William Judson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1600 | Short Form Complaint - Larry (Lance) Schulters by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1601 | Short Form Complaint-Paul Laaveg by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1602 | Short Form Complaint - Tracy Scroggins by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1603 | *Short Form Complaint- Lindsay Scott & Ronda Scott* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1604 | Short Form Complaint-Keith L. Lee by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1605 | Short Form Complaint - Tracy Scroggins by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1606 | Short Form Complaint - Hollis Thomas by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1607 | Short Form Complaint-Marc Logan by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1608 | Short Form Complaint - Randy Thomas by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1609 | Short Form Complaint-Van Malone III and Nedra Malone by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1610 | Short Form Complaint - Fred Weary by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1611 | Short Form Complaint - Jose White by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1612 | Short Form Complaint - Bernard Whittington by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1613 | Short Form Complaint - Jermaine Wiggins by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1614 | Short Form Complaint - Maurece (Mo) Williams by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1615 | Short Form Complaint-Kim Anderson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1616 | *Short Form Complaint- Christopher Shelling & Karen Ray* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |

| 07/12/2012 | 1617 | Short Form Complaint-Akbar Gbajabiamila and Crystal Gbajabiamila by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1618 | Short Form Complaint-Thomas Henderson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1619 | Short Form Complaint-James Jackson and Greta Jackson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1620 | *Short Form Complaint- Fernando Smith* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1621 | Short Form Complaint-Jeffrey Jackson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1622 | Short Form Complaint - Darryl Ashmore by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1623 | Short Form Complaint-John Janata by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1624 | *Short Form Complaint - Jahine Arnold* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1625 | Short Form Complaint - Najeh Davenport by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1626 | Short Form Complaint-Dameian Jeffries and Javoni Jeffries by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1627 | *Short Form Complaint- Rico Smith & Guimay Smith* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1628 | Short Form Complaint - Glenn Foley by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1629 | Short Form Complaint - Oliver Gibson by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1630 | *Short Form Complaint - Patrick Batteaux* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1631 | *Short Form Complaint - Ainsley Battles* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1632 | Short Form Complaint - Jeff Herrod by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1633 | Short Form Complaint-Ronney Jenkins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1634 | *Short Form Complaint - Cornell Brown* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1635 | Short Form Complaint - Sean Key by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1636 | *Short Form Complaint - Peter Cusick* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | 1637 | Short Form Complaint-Marty Johnson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1638 | Short Form Complaint - Issac Keys by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1639 | *Short Form Complaint - Clarence E. Davis, Jr.* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1640 | *Short Form Complaint - Quinn Early* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1641 | Short Form Complaint - Max Lane by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1642 | *Short Form Complaint- Ralph Staten Jr.* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1643 | *Short Form Complaint - John El-Masry* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1644 | Short Form Complaint-Douglas Jones by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1645 | Short Form Complaint - Mike Lodish by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1646 | *Short Form Complaint - Brian Forde* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1647 | Short Form Complaint - Khari Long by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1648 | *Short Form Complaint - Andy R. Headen* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1649 | Short Form Complaint-Derek Kennard and Denise Kennard by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1650 | Short Form Complaint - Omare Lowe by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1651 | *Short Form Complaint - Damian Johnson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1652 | *Short Form Complaint - Rien Long* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1653 | *Short Form Complaint - Henry Dejhown Mandley* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1654 | *Short Form Complaint - Ahmad Merritt* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1655 | Short Form Complaint-Steve King by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1656 | *Short Form Complaint - Mathias Nkwenti* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | 1657 | *Short Form Complaint- Terry W. Tausch & Elizabeth Tausch* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1658 | *Short Form Complaint - Dave Robinson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1659 | Short Form Complaint-Robert Kohrs and Linda Kohrs by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1660 | Short Form Complaint-Paul J. Lane, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1661 | *Short Form Complaint- Gregory Taylor* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1662 | Short Form Complaint-Zechariah Lord by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1663 | *Short Form Complaint - Daniel Upperco* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1664 | *Short Form Complaint - Brian S. Allen and April E. Allen* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1665 | Short Form Complaint-David Lucas by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1666 | *Short Form Complaint - Kole Ayi and Rhianna Ayi* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1667 | *Short Form Complaint - Jon Baker and Shanequa Baker* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1668 | *Short Form Complaint - Keith Baldwin and Kelly Baldwin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1669 | *Short Form Complaint- Adalius Donquail Thomas* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1670 | *Short Form Complaint - Alden Glenn Bass and Jeanmarie Bass* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1671 | *Short Form Complaint - Kendrell Bell and Tahira Bell* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1672 | *Short Form Complaint - Gregory Best and Renea Best* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1673 | Short Form Complaint-Ira R. Matthews, III by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1674 | *Short Form Complaint - Graig M. Bingham and Lynne Bingham* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1675 | *Short Form Complaint - William Fulcher and Bequi Fulcher* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1676 | *Short Form Complaint- Lavale Thomas* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |

| 07/12/2012 | 1677 | *Short Form Complaint - Jackie Gehrke and Deborah Chelemes* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1678 | Short Form Complaint-Alonzo Mayes by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1679 | *Short Form Complaint - Stacey Hairston and Johanne Hairston* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1680 | *Short Form Complaint - Gary Hayman and Barbara Hayman* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1681 | Short Form Complaint-Kenneth McClendan by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1682 | *Short Form Complaint - Bill Hesse and Andrea Hesse* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1683 | *Short Form Complaint - Maurice Johnson and Michelle Johnson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1684 | *Short Form Complaint- Jeffery E. Tootle & LaDonna Tootle* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1685 | *Short Form Complaint - Calvin Lewis and Tanisha Lewis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1686 | Short Form Complaint-Derrell Mitchell by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1687 | Short Form Complaint - Freddie Jones and Miesha Jones, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1688 | *Short Form Complaint - David Rozumek and Mary Ann Rozumek* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1689 | *Short Form Complaint - Donnie Shell and Paulette Shell* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1690 | Short Form Complaint - John Mangum and Stacy Mangum, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1691 | Short Form Complaint-Singor Mobley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1692 | *Short Form Complaint - Curt Stephenson and Katherine Stephenson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1693 | Short Form Complaint - Kevin Peoples and Chamonica Peoples, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1694 | *Short Form Complaint - Thomas D. Stincic and Carol Stincic* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1695 | *Short Form Complaint- Jessie Tuggle & DuJuan Tuggle* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1696 | Short Form Complaint-Byron Bam Morris and Samar Morris by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |

**-139-**

| 07/12/2012 | 1697 | Short Form Complaint - Kevin Levon Prentiss and Pasha Prentiss, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1698 | *Short Form Complaint - Ryan Szokola and Sarah Joyce Szokola* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1699 | *Short Form Complaint - Rod Trafford and Jamie Duva Trafford* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1700 | Short Form Complaint-Calvin Murray and Jeri L. Murray by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1701 | *Short Form Complaint - Brandon Whiting and Amanda Whiting* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1702 | Short Form Complaint - Jimmy Robinson and Amanda Robinson, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1703 | *Short Form Complaint - William Wynn and Augustine Wynn* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1704 | Short Form Complaint - Steve Smith and Chie Smith, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1705 | Short Form Complaint-McDonald Oden by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1706 | *Short Form Complaint- Sammy Walker* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1707 | Short Form Complaint - Santonio Thomas and Faryl Thomas, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1708 | Short Form Complaint-Chris Oldham and Eliza Oldham by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1709 | Short Form Complaint - Michael Wiley and Quiana Wiley, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1710 | Short Form Complaint-Loren Steve Owens and Barbara Owens by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1711 | *Short Form Complaint- Mike L. Washington & Veronica Washington* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1712 | Short Form Complaint-Morris Owens by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1713 | Short Form Complaint-Richard Palmer and Debora Palmer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1714 | *Short Form Complaint- Theodore Watts* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1715 | Short Form Complaint-Chris Pane and Terrie Pane by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1716 | Short Form Complaint-Ezekiel Parker by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |

| 07/12/2012 | 1717 | Short Form Complaint - Ronald Acks and Judith Acks, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1718 | *Short Form Complaint- Patrick White* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1719 | Short Form Complaint - George Adams and Michelle Adams, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1720 | Short Form Complaint-Dan Pastorini by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1721 | Short Form Complaint-Christopher Penn by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1722 | Short Form Complaint - Vashone Adams by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1723 | Short Form Complaint-Antonio Perkins and Monica Perkins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1724 | Short Form Complaint-Delvic Philyaw and Angela Phhilyaw by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1725 | *Short Form Complaint- James Whitley* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1726 | Short Form Complaint-Fred Barnett and Lindsay Barnett by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1727 | Short Form Complaint - Brandon Childress and Brandie Childress, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1728 | Short Form Complaint - Ronald Curry and Stacie Curry, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1729 | Short Form Complaint - Alfred Anderson and Kimberly Anderson, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1730 | Short Form Complaint - Michael Dulaney and Alissia Dulaney, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1731 | Short Form Complaint - Mario Fatafehi and Brittany Fatafehi, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1732 | Short Form Complaint - Rod Gardner and Leticia Clouston, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1733 | Short Form Complaint - Richard Arndt and Josephine Arndt, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1734 | Short Form Complaint - Greg Huntington and Tara Huntington, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1735 | Short Form Complaint - Mark Arneson and Kristine Arneson, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1736 | Short Form Complaint-Brent McClahanan and Diane McClahanan by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |

| 07/12/2012 | 1737 | Short Form Complaint - Jerry Johnson and Dana Johnson, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1738 | *Short Form Complaint- Kevin Whitley & Star Whitley* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1739 | Short Form Complaint-Gregory McCrary by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1740 | Short Form Complaint - James Arnold by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1741 | Short Form Complaint - Robert Babich and Barbara Babich, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1742 | Short Form Complaint-Jeff McIntyre by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1743 | *Short Form Complaint- Kevin Willhite & Karen Willhite* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/12/2012) |
| 07/12/2012 | 1744 | Short Form Complaint-Reginald McKenzie by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1745 | Short Form Complaint - Larry Bates and Joan Wakeley, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1746 | Short Form Complaint-Kevin McLeod by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1747 | Short Form Complaint - James Battle and Dorothy Battle, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1748 | Short Form Complaint-Rodney McSwain by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1749 | Short Form Complaint - Steven Baumgartner and Mary Baumgartner, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1750 | Short Form Complaint - Lyle Blackwood, Jr. by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1751 | Short Form Complaint-Art Monk by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1752 | Short Form Complaint - Dominec Boddie by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1753 | Short Form Complaint-Stanley Morgan and Rholedia Morgan by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1754 | Short Form Complaint - Scott Bolzan and Joan Bolzan, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1755 | Short Form Complaint - Bobby Boyd and Wanda Boyd, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1756 | Short Form Complaint-David L. Palmer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |

| 07/12/2012 | 1757 | Short Form Complaint - Otha Bradley and Willa Bradley, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1758 | Short Form Complaints-Roosevelt Potts and Tenisha Potts by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1759 | Short Form Complaint - Solomon Brannan, Jr. and Delores Brannan, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1760 | Short Form Complaint-William Roberts by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1761 | Short Form Complaint - Charles Brown and Sarah Brown, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1762 | Short Form Complaint - Lance Brown and Jill Brown, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1763 | Short Form Complaint-Council Rudolph and Anne Rudolph by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1764 | *Short Form Complaint-Reynard Rutherford and Marcia Rutherford* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1765 | Amended Short Form Complaint - Charles D. Frazier by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1766 | Amended Short Form Complaint - Donovan Greer by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1767 | Short Form Complaint-Richard Sanford and Allison Sanford by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1768 | Amended Short Form Complaint - Scott Kellar by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1769 | Short Form Complaint-Sanders Shiver and Penny Shiver by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1770 | Amended Short Form Complaint - Eugene Seale by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1771 | Amended Short Form Complaint - Willie Frazier by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1772 | Short Form Complaint-John T. Smith and Monica Smith by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1773 | Amended Short Form Complaint - Everette Pedescleaux by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1774 | Short Form Complaint - L. Drew Buie and Pamela Buie, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1775 | Amended Short Form Complaint - Samuel J. Davis by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1776 | Short Form Complaint--Maurice Spencer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |

| 07/12/2012 | 1777 | Short Form Complaint - Michael Butler and Darlene Butler, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1778 | Amended Short Form Complaint - Warren Wells by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1779 | Short Form Complaint - Richard Camarillo and Mary Camarillo, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1780 | Amended Short Form Complaint - Pete S. Lammons by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1781 | Short Form Complaint-Tony L. Stargell by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1782 | Amended Short Form Complaint - John Niland by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1783 | Amended Short Form Complaint - John David Crow by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1784 | Short Form Complaint-Rich Stephens by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1785 | Short Form Complaint-Dwight Stone and Jennifer Stone by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1786 | Amended Short Form Complaint - John Doug Wyatt by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1787 | Short Form Complaint-Rodney Thomas and Jean Thomas by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1788 | Amended Short Form Complaint - Danny White by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1789 | Short Form Complaint-Alexander W. Thompson and Stacy Thompson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1790 | Short Form Complaint-Maurice Tyler and Penelope Tyler by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1791 | Short Form Complaint-Patrick Venzke and Willow Venzke by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1792 | Short Form Complaint-Jeffrey Walker by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1793 | Short Form Complaint - Ronald Carpenter, Jr. and Tamara Carpenter, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1794 | Short Form Complaint - James A. Arneson by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1795 | Short Form Complaint - Rubin Carter and Karen Carter, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1796 | Short Form Complaint - Richard Cash and Joan Cash, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |

| 07/12/2012 | 1797 | Amended Short Form Complaint - Jerry LeVias by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1798 | *Short Form Complaint - Ken Bungarda* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1799 | Short Form Complaint - Cecil Chase by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1800 | *Short Form Complaint - Vencie Glenn* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1801 | Short Form Complaint - Jim Cheyunski and Patricia Cheyunski, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1802 | Short Form Complaint - Gail Cogdill and Dian Cogdill, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1803 | Short Form Complaint - Robert Coons and Holly Coons, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1804 | *Short Form Complaint - Kim R. Jones* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1805 | *Short Form Complaint -Geoffrey Pope* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1806 | *Short Form Complaint - William Palmer Pyle, Jr.* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1807 | Amended Short Form Complaint - Andrew B. Frederick by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1808 | *Short Form Complaint - Trevor Insley and Nicki Insley* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1809 | *Short Form Complaint - Eric Ogbogu and Glynnis Ogbogu* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1810 | Short Form Complaint - Curley Culp by PLAINTIFF(S). (RUDD, J.) (Entered: 07/12/2012) |
| 07/12/2012 | 1811 | *Short Form Complaint - Dan O'Leary, Jr. and Kathleen O'Leary* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1812 | *Short Form Complaint - Bobby Ply and Peggy Ply* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1813 | *Short Form Complaint - Anthony Simmons and Jennifer Simmons* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1814 | *Short Form Complaint - Jay W. Tant and Natalie M. Tant* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1815 | *Short Form Complaint - Mike Thomas and Sylvia Thomas* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1816 | *Short Form Complaint - Glenn E. Young and Darlene J. Young* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | 1817 | Amended Short Form Complaint - Darryl Talley by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1818 | *Short Form Complaint - Julius Adams and Terri Adams* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1819 | *Short Form Complaint - William E. Bergey and Micky Kay Bergey* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1820 | *Short Form Complaint - Crance Clemons and Alma Clemons* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1821 | Amended Short Form Complaint - Randy Hughes by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1822 | *Short Form Complaint - Steven Deberg and Jennifer Zmurk-Deberg* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1823 | Amended Short Form Complaint - Lucious Smith by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1824 | *Short Form Complaint - Charles M. Getty and Carol A. Getty* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1825 | Amended Short Form Complaint - Andrew Rice, Sr. by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/12/2012) |
| 07/12/2012 | 1826 | *Short Form Complaint - Bob Grant and Katherine Grant* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1827 | *Short Form Complaint - Az-Zahir Hakim and Tammy Neihart* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1828 | Short Form Complaint - Rahim Abdullah and Denise Torrance, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1829 | Short Form Complaint - Carlton Bailey and Jodie Bailey, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1830 | *Short Form Complaint - Sam D. Ball* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1831 | *Short Form Complaint - Anthony Bell* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1832 | Short Form Complaint - Ladell Betts and Shatarah Betts, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1833 | Short Form Complaint - Casey Cramer and Kelsey Cramer, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1834 | *Short Form Complaint - Edward Bell* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1835 | Short Form Complaint - Ken Dilger and Heidi Dilger, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1836 | *Short Form Complaint - Joe Bock* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | 1837 | *Short Form Complaint - Mario Clark* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1838 | Short Form Complaint - Demetric Evans and Aungel L. Evans, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1839 | Short Form Complaint - Olandis Gary and Lapreea Gary, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1840 | *Short Form Complaint - John Hannah* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1841 | *Short Form Complaint - Anderson Lorenzo Graham* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1842 | Short Form Complaint - Nick Greisen and Caroline Greisen, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1843 | Short Form Complaint - Larry Griffin and Tammy Griffin, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1844 | *Short Form Complaint - Frank Collins* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1845 | Short Form Complaint - Monty Grow and Jessica Grow, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1846 | *Short Form Complaint - Kevin "KAY JAY" Harris* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1847 | *Short Form Complaint - Wes Hopkins* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1848 | *Short Form Complaint - Richard W. Parson, Jr.* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1849 | Short Form Complaint - Charles Jordan and Sheri Jordan, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1850 | *Short Form Complaint - Shyrone Stith* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1851 | Short Form Complaint - Robert Bradley Kassell and Marcy Kassell, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1852 | *Short Form Complaint - Dalva Allen and Tilda Walker Allen* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1853 | *Short Form Complaint - Bobby Burnett and Dorothy Burnett* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1854 | *Short Form Complaint - Joseph P. Carollo and Kandace Carollo* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1855 | *Short Form Complaint - Wayne Clark and Carol Clark* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1856 | *Short Form Complaint - Dexter W. Davis and Tajma L. Davis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | 1857 | Short Form Complaint-Charles Anthony and Janice M. Reeves by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1858 | *Short Form Complaint - Timothy Eric Edwards, Jr. and Mary Kathryn Edwards* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1859 | *Short Form Complaint - Timothy Eric Rockne "Makoa" Freitas and Leilani Freitas* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1860 | Short Form Complaint-Joseph P. Aska and Tina M. Aska by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1861 | *Short Form Complaint - Timothy Anthony J. Furjanic and Lynn Furjanic* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1862 | *Short Form Complaint - Noah Herron and Anna Herron* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1863 | Short Form Complaint-Mario Bailey by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1864 | *Short Form Complaint - Joe T. Owens and Burtaniel Owens* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1865 | *Short Form Complaint - Alan Reuber, Jr. and Dori Reuber* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1866 | *Short Form Complaint - John Roman and Kathleen Roman* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1867 | Short Form Complaint-Michael Bankston and Ketyona M. Bankston by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/12/2012) |
| 07/12/2012 | 1868 | *Short Form Complaint - Daimon Shelton and Stephanie Shelton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1869 | *Short Form Complaint - Roger Anderson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1870 | *Short Form Complaint - James Edward Arnold* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1871 | Short Form Complaint - Carl Kidd and Tiffany McFadden Kidd, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1872 | *Short Form Complaint - James M. Baisley, Jr.* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1873 | *Short Form Complaint - Al Davis* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1874 | *Short Form Complaint - Joseph Iorio* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1875 | Short Form Complaint - Alex Lewis and Christina Lewis, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1876 | *Short Form Complaint - Robert Earl Penchion* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | 1877 | *Short Form Complaint - Arthur L. Stringer* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1878 | Short Form Complaint - Eugene Lockhart, Jr. and Sharon Lockhart, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1879 | *Short Form Complaint - Zachary Valentine* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1880 | *Short Form Complaint - Dedric Ward* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1881 | Short Form Complaint - Curtis McGee and Chelsey McGee, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1882 | *Short Form Complaint - Joseph P. Tafoya and Brandelyn Tafoya* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1883 | Short Form Complaint - Kyle Moore and Janice Moore, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1884 | *Short Form Complaint - Robert Woods and Claudia Woods* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1885 | *Short Form Complaint - Renaldo Wynn and Latanya Wynn* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1886 | Short Form Complaint - Isaia (Ike) Reese and Renita Reese, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1887 | *Short Form Complaint - Daniel R. Brandenburg and Kelly O. Brandenburg* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1888 | Short Form Complaint - Sam Shade and Jaquetta Shade, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1889 | *Short Form Complaint - Virgil R. Carter and Donna M. Carter* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1890 | Short Form Complaint - Scott Starks and Teresa Starks, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1891 | *Short Form Complaint - Brad John Broward Culpepper and Monica Culpepper* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1892 | *Short Form Complaint - Michael P. Donohoe and Betty Donohoe* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1893 | *Short Form Complaint - Paul Ernster and Jenna Ernster* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1894 | Short Form Complaint - Darrell Thompson and Stephanie Thompson, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1895 | *Short Form Complaint - Curtis W. Greer and Marcia C. Greer* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1896 | Short Form Complaint - Byron Keith Traylor and Krista Traylor, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |

| 07/12/2012 | 1897 | *Short Form Complaint - Drew Haddad and Collen Haddad* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1898 | Short Form Complaint - Kurt F. Vollers and Heather Vollers, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1899 | Short Form Complaint - Mike Whittington and Pam Whittington, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/12/2012) |
| 07/12/2012 | 1900 | *Short Form Complaint - David Hadley and Eva C. Hadley* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1901 | *Short Form Complaint - Robert L. Miller and Lennie Miller* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1902 | *Short Form Complaint - Jayice Pearson and Joi A. Pearson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1903 | *Short Form Complaint - Eric Bassey* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1904 | *Short Form Complaint - Fakhir Brown* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1905 | *Short Form Complaint - Dave D'Addio* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1906 | *Short Form Complaint - Solomon Freelon* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1907 | *Short Form Complaint - Keith Griffin* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1908 | *Short Form Complaint - Michael Harden* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1909 | *Short Form Complaint - Theodore R. McKnight* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1910 | *Short Form Complaint - Edward Lee West III* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1911 | *Short Form Complaint -Michael C. Williams* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1912 | *Short Form Complaint -Edward L. Budde and Carolyn Budde* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1913 | *Short Form Complaint -Albert R. Carmichael and Barbara Carmichael* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1914 | *Short Form Complaint - Jeffrey A. Christy and Kristen L. Christy* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1915 | *Short Form Complaint - Glenn L. Collins and Charlotte D. Collins* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1916 | *Short Form Complaint - Chad Eaton and Tina Eaton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | [1917](#) | *Short Form Complaint - Lawrence G. Estes and Joyce A. Estes* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1918](#) | *Short Form Complaint - Paul B. Gruber and Brenda Gruber* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1919](#) | *Short Form Complaint - James Lamont Hall and Althea Hall* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1920](#) | *Short Form Complaint - Dana Howard Patrice Howard* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1921](#) | *Short Form Complaint - Raghib Ismail and Melani Ismail* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1922](#) | *Short Form Complaint - Kenard Lang and Meredith Lang* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1923](#) | *Short Form Complaint - Jason H. Phillips and Kimberly Phillips* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1924](#) | *Short Form Complaint - Donald E. Rives and Sammy R.Rives* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1925](#) | *Short Form Complaint - Roy Shivers and Carol Shivers* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1926](#) | *Short Form Complaint - Sidney Thornton and Beverly Thornton* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | [1927](#) | Short Form Complaint--Roy Barker *(Amended/Corrected)* by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/12/2012) |
| 07/12/2012 | [1928](#) | Short Form Complaint--Kevin Bentley *(Amended/Corrected)* by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/12/2012) |
| 07/12/2012 | [1929](#) | Short Form Complaint--Henri Crockett *(Amended/Corrected)* by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/12/2012) |
| 07/12/2012 | [1930](#) | Short Form Complaint--Jay Foreman *(Amended/Corrected)* by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/12/2012) |
| 07/12/2012 | [1931](#) | Short Form Complaint--Oronde Gadsden *(Amended/Corrected)* by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/12/2012) |
| 07/12/2012 | [1932](#) | Short Form Complaint--Robert Harris *(Amended/Corrected)* by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/12/2012) |
| 07/12/2012 | [1933](#) | Short Form Complaint--Marvin Jones *(Amended/Corrected)* by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/12/2012) |
| 07/12/2012 | [1934](#) | Short Form Complaint--Hurvin McCormack *(Amended/Corrected)* by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/12/2012) |
| 07/12/2012 | [1935](#) | Short Form Complaint--Daryl Porter *(Amended/Corrected)* by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/12/2012) |
| 07/12/2012 | [1936](#) | Short Form Complaint - Daniel R. Buenning and Ashley M.T. Buenning by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |

| 07/12/2012 | 1937 | Short Form Complaint - Adam Haayer and Summer Haayer by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1938 | Short Form Complaint - Craig Heimburger and Dawn Heimburger by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1939 | Short Form Complaint - Gennaro Dinapoli by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1940 | Short Form Complaint - Reginald Wayman Wilkes and Annina N. Wilkes by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1941 | Short Form Complaint - Frank LeMaster and Mary Lou Robinson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1942 | Short Form Complaint - Michael L. Haddix and Yolanda Haddix by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1943 | Short Form Complaint - Lawrence Watkins and Lasandra Watkins by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1944 | Short Form Complaint - Jim Bundren by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1945 | Short Form Complaint - Ashley Lelie by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1946 | Short Form Complaint - Aaron Merz by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1947 | Short Form Complaint - Joey Hollenbeck and Kate Hollenbeck by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1948 | Short Form Complaint - Albert Johnson, III and Jenise Johnson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1949 | Short Form Complaint - Dave Moore and Ann Marie Moore by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/12/2012 | 1950 | Short Form Complaint - Richard F. Owens and Tina Owens by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2012) |
| 07/13/2012 | 1951 | Short Form Complaint-Matthew Dorsett by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1952 | Short Form Complaint-Rome Douglas and Maylana Douglas by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1953 | Short Form Complaint-London Dunlap by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1954 | Short Form Complaint-Tyrone Edwards and Tammy Edwards by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1955 | Short Form Complaint-Keith T. Ferguson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1956 | Short Form Complaint-Roy Foster by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |

| 07/13/2012 | 1957 | Short Form Complaint-Dominic Furio and Michelle Furio by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1958 | Short Form Complaint-Percell M. Gaskins and Dionna Gaskins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1959 | Short Form Complaint-Darrell Gill and Veda Gill by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1960 | Short Form Complaint-Reginald Gipson and Gerrilyn Gipson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1961 | Short Form Complaint-William Graham and Laura Lisa Graham by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1962 | Short Form Complaint-Marshane Graves and Sophia Graves by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1963 | Short Form Complaint-Terry Gray by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1964 | Short Form Complaint-Carl Greenwood by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1965 | Short Form Complaint-Jeff Griffin by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1966 | Short Form Complaint-Eric Guliford by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1967 | Short Form Complaint-Jermaine Hampton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1968 | Short Form Complaint-Elroy Harris, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1969 | Short Form Complaint-Lloyd Harrison by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1970 | Short Form Complaint-Darrell Hill by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1971 | Short Form Complaint-J.D. Hill and Caryl Hill by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1972 | Short Form Complaint-Kahlil Hill by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1973 | Short Form Complaint-Marcus Hill by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1974 | Short Form Complaint-Joseph Holmes and Debra Holmes by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1975 | Short Form Complaint-Tamburo Hopkins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1976 | Short Form Complaint-Artis Houston and LaVerne Houston by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |

| 07/13/2012 | 1977 | Short Form Complaint-David Hughes and Holly Hughes by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1978 | Short Form Complaint-Robert Kuechenberg by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1979 | Short Form Request-Patrick Hunter by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1980 | Short Form Complaint-Carlence Mitchell by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1981 | Short Form Complaint-Aubrey Beavers by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1982 | Short Form Complaint-Rogers Beckett and Carla Beckett by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1983 | Short Form Complaint-Mitchell Benson and Theresa Benson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1984 | Short Form Complaint-Michael Blazitz by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1985 | Short Form Complaint-Keith Bostic and Natalie A. Bostic by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1986 | Short Form Complaint-Charles E. Bowser by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1987 | Short Form Complaint--Kyle J. Brady and Kristin K. Brady by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1988 | Short Form Complaint-Kevin Brooks and Tiffany Brooks by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1989 | Short Form Complaint-Reginald Brown by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1990 | Short Form Complaint-Terry Brown and Ann Brown by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1991 | Short Form Complaint-Maurice Bryant by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1992 | Short Form Complaint-Courtland Bullard by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1993 | Short Form Complaint-Jonathan Carter by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1994 | Short Form Complaint-Darry Clack and Juanita Clack by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1995 | Short Form Complaint by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1996 | Short Form Complaint-Jonathan Clinkscale by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |

| 07/13/2012 | 1997 | Short Form Complaint-Lincoln C. Coleman, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1998 | Short Form Complaint-Obadiah Cooper by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 1999 | Short Form Complaint-Frank E. Cornish, III and Barbara Cornish by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 2000 | Short Form Complaint-Eric Crabtree and Cheryl A. Crabtree by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 2001 | Short Form Complaint-Cleveland Crosby and Angelia L. Crosby by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 2002 | Short Form Complaint - James Druckenmiller by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2003 | Short Form Complaint - Arthur Douglas Easlick by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2004 | Short Form Complaint - Tom Nutten by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2005 | Short Form Complaint-Antico Dalton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 2006 | Short Form Complaint - Lee Suggs, Jr. by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2007 | Short Form Complaint - K. Cory Withrow by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2008 | Short Form Complaint-Matthew Darby by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 2009 | Short Form Complaint - Lawrence Ethan Albright and Katherine Kugel Albright by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2010 | Short Form Complaint - Jon Carman and Candice Carman by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2011 | Short Form Complaint-Kenneth Davidson and Tamara Davidson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 2012 | Short Form Complaint-Oliver Davis by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 2013 | Short Form Complaint - Trey Darilek and Karla Darilek by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2014 | Short Form Complaint-Thabiti Davis by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 2015 | Short Form Complaint - William J. Ferrario and Stephanie Ferrario by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2016 | Short Form Complaint-Stacey Dillard and Vidky Dillard by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |

| 07/13/2012 | 2017 | Short Form Complaint - Corey Hulsey and Casey Hulsey by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2018 | Short Form Complaint - Rene Ingoglia and Jessica Ingoglia by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2019 | Short Form Complaint-Adrian Dingle by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 2020 | Short Form Complaint - Al Johnson and Brandy Johnson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2021 | Short Form Complaint - Rob Johnson and Dana Johnson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2022 | Short Form Complaint-Hanford L.Dixon by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 2023 | Corrected Short Form Complaint-Lloyd Harrison and Rachell D. Harrison by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 2024 | Short Form Complaint-Talman Gardner and Debora Gardner by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2012) |
| 07/13/2012 | 2025 | Short Form Complaint - Pete Koch by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/13/2012) |
| 07/13/2012 | 2026 | Short Form Complaint - Scott Darwin Player and Julianne Player by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/13/2012) |
| 07/13/2012 | 2027 | Short Form Complaint - Sydney Justin and Mari Justin by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/13/2012) |
| 07/13/2012 | 2028 | Short Form Complaint - Victor Jones and Stacey Jones by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/13/2012) |
| 07/13/2012 | 2029 | Short Form Complaint - Deon Anderson by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2030 | Short Form Complaint - Tim Anderson by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2031 | Short Form Complaint - Mike Arthur by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2032 | Short Form Complaint - Thomas Backes by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2033 | Short Form Complaint - Robert Banks by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2034 | Short Form Complaint - Tommy Barnhardt by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2035 | Short Form Complaint - Jason Bell by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2036 | Short Form Complaint - Donny Brady by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |

| 07/13/2012 | 2037 | Short Form Complaint - Terrance D. (Chet) Brooks by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2038 | Short Form Complaint - Courtney L. Brown by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2039 | Short Form Complaint - Gilbert Brown by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2040 | Short Form Complaint - Tony Bryant by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2041 | Short Form Complaint - Khary K. Campbell by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2042 | Short Form Complaint - Jesse Chatman by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2043 | Short Form Complaint - Frederick D. Coleman by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2044 | Short Form Complaint - Marcus Coleman by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2045 | Short Form Complaint - Todd Collins by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2046 | Short Form Complaint - Tim Couch by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2047 | Short Form Complaint - Johnny Davis by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2048 | Short Form Complaint - Delbert Cowsette by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2049 | Short Form Complaint - Anthony (T.J.) Cunningham, Jr. by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2050 | Short Form Complaint - John Isaac Davis by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2051 | Short Form Complaint - Keith L. Davis by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2052 | Short Form Complaint - Michael Downs by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2053 | Short Form Complaint - Frederick Dean and Vivian Dean, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2054 | Short Form Complaint - Kenneth Dickerson, Sr. and Marie Dickerson, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2055 | Short Form Complaint - Chris Dieterich by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2056 | Short Form Complaint - Douglas Dilts by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |

| 07/13/2012 | 2057 | Short Form Complaint - Vernon Edwards by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2058 | Short Form Complaint - Douglas E. Evans by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2059 | Short Form Complaint - Sandy Durko and Teresa Nielsen Durko, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2060 | Short Form Complaint - Eric E. Everett by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2061 | Short Form Complaint - Thomas G. Everett by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2062 | Short Form Complaint - Ronald Egloff and Julee Egloff, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2063 | Short Form Complaint - Christopher Floyd by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2064 | Short Form Complaint - Rick Fenney by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2065 | Short Form Complaint - Anthony Fogle by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2066 | Short Form Complaint - Levar Fisher and Jacinta Fisher, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2067 | Short Form Complaint - Charles Frye by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2068 | Short Form Complaint - Joe Garten by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2069 | Short Form Complaint - Charles L. Gessner by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2070 | Short Form Complaint - Tim Goad by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2071 | Short Form Complaint - Orantes L. Grant by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2072 | Short Form Complaint - Bobby Franklin and Jo An Franklin, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2073 | Short Form Complaint - Steve Grant by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2074 | Short Form Complaint - Damacio Green by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2075 | Short Form Complaint - John Fuqua and Sheree Fuqua, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2076 | Short Form Complaint - Anthony G. Griggs by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |

| 07/13/2012 | 2077 | Short Form Complaint - Bobby J. Hamilton by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2078 | Short Form Complaint - Kenneth Geddes and Carole Geddes, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2079 | Short Form Complaint - Ernest Gibson and Barbara Gibson, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2080 | Short Form Complaint - Robert Gladieux and Ingeborg Gladieux, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2081 | Short Form Complaint - Kelvin Harris by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2082 | Short Form Complaint - Conrad Goode by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2083 | Short Form Complaint - Lawrence Hart by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2084 | Short Form Complaint - Keith C. Heinrich by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2085 | Short Form Complaint - Woodrow Green, Jr. by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2086 | Short Form Complaint - Kevin Henry by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2087 | Short Form Complaint - Maurice Hicks by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2088 | Short Form Complaint - Kenneth Greene and Tina Hunter Greene, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2089 | Short Form Complaint - Reese Hicks by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2090 | Short Form Complaint - William Griggs, III and Christine Griggs, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2091 | Short Form Complaint - Ronald Humphrey by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2092 | Short Form Complaint - Ralph Pete Hunter by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2093 | Short Form Complaint - James JJ Johnson by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2094 | Short Form Complaint - Randy Fuller by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2095 | Short Form Complaint - Carlos Jones by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2096 | Short Form Complaint - Christopher Jones by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |

| 07/13/2012 | 2097 | Short Form Complaint - Garrick D. Jones by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2098 | Short Form Complaint - Lawrence (Larry) Jones by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2099 | Short Form Complaint - Omari Jordan by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2100 | Short Form Complaint - Michael Guman and Karen Guman, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2101 | Short Form Complaint - Ronald Hall and Jayne Hall by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2102 | Short Form Complaint - Ronald Hallstrom by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2103 | Short Form Complaint - Samuel Havrilak and Terry Havrilak, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2104 | Short Form Complaint - Thomas Hendricks by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2105 | Short Form Complaint - Charles Hennigan by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2106 | Short Form Complaint - Terry Hermeling by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2107 | Short Form Complaint - John Hicks by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2108 | Short Form Complaint - Stephen Holden and Veronica Holden, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2109 | Short Form Complaint - Robert Horn and Deborah Horn, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2110 | Short Form Complaint - Samuel Horner, III and Lynne Ford Horn, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2111 | Short Form Complaint - David Howard and Jacqueline Howard, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2112 | Short Form Complaint - Leonard Humphries and Jennifer Humphries, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2113 | Short Form Complaint - Eric King by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2114 | Short Form Complaint - Earl Little by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2115 | Short Form Complaint - James Lynch by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2116 | Short Form Complaint - Anthony McCoy by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |

| 07/13/2012 | 2117 | *Short Form Complaint - Ernest Thompson, Cassandra Thompson* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/13/2012) |
| 07/13/2012 | 2118 | Short Form Complaint - Marcus A. McFadden by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2119 | Short Form Complaint - William (Willie) Middlebrooks by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2120 | Short Form Complaint - Nathan Miller by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2121 | Short Form Complaint - Marvin Minnis by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2122 | Short Form Complaint - Derrick Oden by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2123 | Short Form Complaint - Adewale Ogunleye by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2124 | Short Form Complaint - Anthony W. Parrish by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2125 | Short Form Complaint - Perry Phenix by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2126 | Short Form Complaint - William Poole by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2127 | Short Form Complaint - Ryan Prince by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2128 | Short Form Complaint - Ricky Hunley and Camille Moore-Hunley, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2129 | Short Form Complaint - Gerald Robinson by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2130 | Short Form Complaint - Lauvale Sape by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2131 | Short Form Complaint - Daniel Hunter, Jr. and Bevelyn Hunter, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2132 | Short Form Complaint - Scott Hutchinson and Sharyn Hutchinson, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2133 | Short Form Complaint - Jerry Inman and Barbara Inman, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2134 | *Short Form Complaint - Donald Macek* by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2135 | Short Form Complaint - Corey Sawyer by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2136 | Short Form Complaint - Gerald Irons, Sr. and Myrna Irons, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |

| 07/13/2012 | 2137 | Short Form Complaint - Rashaan A. Shehee by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2138 | Short Form Complaint - Marcel Shipp by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2139 | Short Form Complaint - James Jensen and Dawn Jensen, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 07/13/2012) |
| 07/13/2012 | 2140 | Short Form Complaint - Kelly Sims by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2141 | Short Form Complaint - Joel Smeenge by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2142 | Short Form Complaint - Jerald Sowell by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2143 | Short Form Complaint - Donald Manoukian by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2144 | Short Form Complaint - Ernest Jones by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2145 | Short Form Complaint - Nick Steitz by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2146 | Short Form Complaint - James Stewart by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2147 | Short Form Complaint - Hassan Jones by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2148 | Short Form Complaint - Vinny Sutherland by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2149 | Short Form Complaint - Fred Taylor by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2150 | Short Form Complaint - Selwyn Jones and Raquel Jones, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2151 | Short Form Complaint - John Thiery by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2152 | Short Form Complaint - Ratcliff Thomas by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2153 | Short Form Complaint - Leander Jordan by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2154 | Short Form Complaint - Robert L. Thomas by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2155 | Short Form Complaint - Gary Knafelc and Emily Knafelc, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2156 | Short Form Complaint - Bennie Thompson by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |

**-162-**

| 07/13/2012 | 2157 | Short Form Complaint - John Kompara and Diane Kompara, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2158 | Short Form Complaint - Derrius D. Thompson by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2159 | Short Form Complaint - Tyson Thompson by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2160 | Short Form Complaint - Torrin L. Tucker by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2161 | Short Form Complaint - Kenneth Kortas and Judith Kortas, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2162 | Short Form Complaint - Jack Walker by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2163 | Short Form Complaint - Ralph Kurek and Connie Kurek, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2164 | Short Form Complaint - Aaron Wallace by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2165 | Short Form Complaint - John Welbourn by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2166 | Short Form Complaint - Anthony Liscio and Annette Liscio, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2167 | Short Form Complaint - Roy L.Williams by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2168 | Short Form Complaint - Floyd Little by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2169 | Short Form Complaint - Wally Williams by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2170 | Short Form Complaint - William Lueck and Mary Lueck, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2171 | Short Form Complaint - Fred Marion, Sr. and Annie Marion, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2172 | Short Form Complaint - D'Artagnan Martin by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2173 | Short Form Complaint - Michael McCoy and Janet Brown McCoy, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2174 | Short Form Complaint - Anthony McGee and Novena McGee, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2175 | Short Form Complaint - Anthony Miller by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 07/13/2012) |
| 07/13/2012 | 2176 | Short Form Complaint - Robert Abraham by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |

| 07/13/2012 | 2177 | Short Form Complaint - Anthony Adams by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2178 | Short Form Complaint - Rod Martin by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2179 | Short Form Complaint - Margene Adkins by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2180 | Short Form Complaint - William Matan by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2181 | Short Form Complaint - David Ahrens by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2182 | Short Form Complaint - Donald McCauley by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2183 | Short Form Complaint - Samaji Akili by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2184 | Short Form Complaint - Leonard McDowell by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2185 | Short Form Complaint - Donald Greco by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2186 | Short Form Complaint - Donnie Green by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2187 | Short Form Complaint - Jacquez Green by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2188 | Short Form Complaint - Willie Green by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2189 | Short Form Complaint - Robert Gregor by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2190 | Short Form Complaint - Alfred Gross by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2191 | Short Form Complaint - Dennis McKnight by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2192 | Short Form Complaint - Dale Hackbart by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2193 | Short Form Complaint - Michael Meade by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2194 | Short Form Complaint - Bobby Harden by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2195 | Short Form Complaint - Jon Melander by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2196 | Short Form Complaint - Cedrick Hardman by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |

**-164-**

| 07/13/2012 | 2197 | Short Form Complaint - Dennis Harrah by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2198 | Short Form Complaint - Jody Mercein by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2199 | Short Form Complaint - Charley Harraway by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2200 | Short Form Complaint - James Harrell by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2201 | Short Form Complaint - Cliff Harris by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2202 | Short Form Complaint - Tony McGee and Jacqueline London, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2203 | Short Form Complaint - Curtis McGriff and Maurie Morris, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2204 | Short Form Complaint - Robert Meeks, Jr. and Fernon Meeks, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2205 | Short Form Complaint - Terrance Metcalf by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2206 | Short Form Complaint - Frank Middleton by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2207 | Short Form Complaint - Bryan Millard by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2208 | Short Form Complaint - Bronzell Miller by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2209 | Short Form Complaint - Robert Miller by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2210 | Short Form Complaint - Claudie Minor, Jr. and Vicki Ann Minor, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2211 | Short Form Complaint - Emery Moorehead by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2212 | Short Form Complaint--Kevin Bentley by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/13/2012) |
| 07/13/2012 | 2213 | Short Form Complaint - Randall Morris by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2214 | Short Form Complaint - James Mueller and Mary Mueller, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2215 | Short Form Complaint - Robert Newton by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2216 | Short Form Complaint - Frank Nunley and Lynn Nunley, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |

| 07/13/2012 | 2217 | Short Form Complaint - Joseph Pagliei and Rita Pagliei, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2218 | Short Form Complaint - Charles Mercein by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2219 | Short Form Complaint - Erric Pegram and Michelle Pegram, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2220 | Short Form Complaint - Michael Merriweather by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2221 | Short Form Complaint - Caleb Miller by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2222 | Short Form Complaint - David Pivec and Sharon Pivec, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2223 | Short Form Complaint - Karl Powe and Melissa Powe, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2224 | Short Form Complaint - Cleophus Miller by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2225 | Short Form Complaint - Mickey Pruitt by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2226 | Short Form Complaint - Charles Mercein by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2227 | Short Form Complaint - John Reeves, Jr. by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2228 | Short Form Complaint - Donald Rolle by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2229 | Short Form Complaint - Chilton Hawkins by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2230 | Short Form Complaint - Kory Minor by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2231 | Short Form Complaint - Victor Hicks by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2232 | Short Form Complaint - Kent Hill by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2233 | Short Form Complaint - Don Horn by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2234 | Short Form Complaint - Ronnie Hornsby by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2235 | Short Form Complaint - James Hough by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2236 | Short Form Complaint - John Houser by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |

| 07/13/2012 | 2237 | Short Form Complaint - Paul Howard by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2238 | Short Form Complaint - Delles Howell by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2239 | Short Form Complaint - Michael Hull by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2240 | Short Form Complaint - David Humm by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2241 | Short Form Complaint--Robert Harris and Marlo Harris, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/13/2012) |
| 07/13/2012 | 2242 | Short Form Complaint - Bill Hurley by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2243 | Short Form Complaint - Darrell Irvin by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2244 | Short Form Complaint - Brad Jackson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2245 | Short Form Complaint - Charles Hannah by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2246 | Short Form Complaint - William Hayhoe II by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2247 | Short Form Complaint - Frank Pollard by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2248 | Short Form Complaint - Philip Vandersea by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2249 | Short Form Complaint - Mark Chmura and Angela Chmura by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2250 | Short Form Complaint - David Roller and Marion Roller, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2251 | Short Form Complaint - James Rourke and Carol Rourke, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2252 | Short Form Complaint - Eugene Ceppitelli by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2253 | Short Form Complaint - Ricky Nattiel and Tammy Nattiel by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2254 | Short Form Complaint - John Rowser and Constance Rowser, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2255 | Short Form Complaint - Paul Carrington by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2256 | Short Form Complaint - Joe Panos by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |

**-167-**

| 07/13/2012 | 2257 | Short Form Complaint - Calvin Jackson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2258 | Short Form Complaint - Reginald Rucker and Darlene Rucker, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2259 | Short Form Complaint - Richard Miano and Lori Miano by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/13/2012) |
| 07/13/2012 | 2260 | Short Form Complaint - Jerry Rush and Liliane Rush, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2261 | Short Form Complaint - Michael Sandusky and Barbara Sandusky, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2262 | Short Form Complaint - Gregg Schumacher and Donna Schumacher, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2263 | Short Form Complaint - Patrick Shea and Marguerite Shea, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2264 | Short Form Complaint - Thomas Sherman and Ruth Ann Sherman, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2265 | Short Form Complaint - Jeffrey Smith and Christie Smith, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2266 | Short Form Complaint - Noland Smith and Gloria Jean Smith, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2267 | Short Form Complaint - Timothy Smith by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2268 | Short Form Complaint - James Snowden and Joelle Snowden, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2269 | Short Form Complaint - Tom Sorensen and Joyce Sorensen, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2270 | Short Form Complaint - Ralph Stockemer and Jessica Stockemer, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2271 | Short Form Complaint - Terry Stoepel and Renita Stoepel, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2272 | Short Form Complaint - Bill Swain and Jane Frederickson, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2273 | Short Form Complaint - Reggie Swinton by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2274 | Short Form Complaint - Vestee Jackson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2275 | Short Form Complaint - Anthony Thompson and Lori Ann Thompson, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2276 | Short Form Complaint - Robert Tucker and Janet Tucker, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |

| 07/13/2012 | 2277 | Short Form Complaint - J. Bruce Jarvis by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
|---|---|---|
| 07/13/2012 | 2278 | Short Form Complaint - Leon Jarvis by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2279 | Short Form Complaint - Godwin Turk and Joyce Turk, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2280 | Short Form Complaint - Noel Jenke by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2281 | Short Form Complaint - Aoron Mitchell by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2282 | Short Form Complaint - Thomas Vaughn and Cynthia Vaughn, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2283 | Short Form Complaint - Alfred R. Camarena by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/13/2012) |
| 07/13/2012 | 2284 | Short Form Complaint - Alan Veingrad by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2285 | Short Form Complaint - Anthony Jeter by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2286 | Short Form Complaint - Jim Jodat by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2287 | Short Form Complaint - Derland Moore by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2288 | Short Form Complaint - Michael Morton by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2289 | Short Form Complaint - Stuart Voigt and Linda Voigt, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2290 | Short Form Complaint - Charles Myrtle by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2291 | Short Form Complaint - Wayne Walker and Sylvia Walker, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2292 | Short Form Complaint - John Williams by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2293 | Short Form Complaint - Ira Watley by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2294 | Short Form Complaint - Mark Nichols by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2295 | Short Form Complaint - Byron Williams and Beverly Williams, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2296 | Short Form Complaint - John Williams and Barbara Butts Williams, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |

| 07/13/2012 | 2297 | Short Form Complaint - Jack Johnson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2298 | Short Form Complaint - Brandon Winey by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2299 | Short Form Complaint - Tommy Nobis by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2300 | Short Form Complaint - Orlick Johnson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2301 | Short Form Complaint - John Wojciechowski and Sheryl Wojciechowski, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2302 | Short Form Complaint - Joe Norman by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2303 | Short Form Complaint - Troy Johnson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2304 | Short Form Complaint - Jerry Woods and Rhonda Woods, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2305 | Short Form Complaint - Maurice Youmans and Betty Youmans, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 07/13/2012) |
| 07/13/2012 | 2306 | Short Form Complaint - Keith Nord by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2307 | Short Form Complaint - Trumaine Johnson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2308 | Short Form Complaint - August Otto by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2309 | Short Form Complaint - Aaron Jones by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2310 | Short Form Complaint - Gary Padjen by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2311 | Short Form Complaint - James Jones by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2312 | Short Form Complaint - Kenneth Jones by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2313 | Short Form Complaint - Steve Jones by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2314 | Short Form Complaint - Terry Owens by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2315 | Short Form Complaint - Joseph Kapp by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2316 | Short Form Complaint - Donald Parrish by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |

| 07/13/2012 | 2317 | Short Form Complaint - Ernest Kellerman by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2318 | Short Form Complaint - Kurt Petersen by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2319 | Short Form Complaint - Warren Powers by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2320 | Short Form Complaint - Louis Kirouac by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2321 | Short Form Complaint - Mark Koncar by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2322 | Short Form Complaint - Mervin Krakau by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2323 | Short Form Complaint - Anthony Prior by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2324 | Short Form Complaint - Paul Krause by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2325 | Short Form Complaint - Randy Ragon by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2326 | Short Form Complaint - David Recher by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2327 | Short Form Complaint - Rudy Redmond by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2328 | Short Form Complaint - Robert Kroll by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2329 | Short Form Complaint - Clarence Reece by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2330 | Short Form Complaint - Walter Roberts by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2331 | Short Form Complaint - Jerry Robinson by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2332 | Short Form Complaint - Mark Robinson by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2333 | Short Form Complaint - Rodrick Rodgers by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/13/2012) |
| 07/13/2012 | 2334 | Short Form Complaint - Thaddeus Kwalick by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2335 | Short Form Complaint - Bruce Laird by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2336 | Short Form Complaint - MacArthur Lane by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |

| 07/13/2012 | 2337 | Short Form Complaint - Gene Lang by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2338 | Short Form Complaint - William Laskey by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2339 | Short Form Complaint - Peter Lazetich by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2340 | Short Form Complaint - Jack Lee by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2341 | Short Form Complaint - Frank Lewis by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2342 | Short Form Complaint - Thomas Lott by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2343 | Short Form Complaint - Warren Loving by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2344 | Short Form Complaint - Robert Lurtsema by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2345 | Short Form Complaint - Fred Anderson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2346 | Short Form Complaint - Garry Anderson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2347 | Short Form Complaint - Richard Anderson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2348 | Short Form Complaint - Reidel Anthony by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2349 | Short Form Complaint - Lionel Antoine by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2350 | Short Form Complaint - Harvey Armstrong by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2351 | Short Form Complaint - Mark Arneson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2352 | Short Form Complaint - Peter Athas by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2353 | Short Form Complaint - Mike Augustyniak by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2354 | Short Form Complaint - John Banaszak by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2355 | Short Form Complaint - Jeff Barnes by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2356 | Short Form Complaint - Lemuel Barney by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |

**-172-**

| 07/13/2012 | 2357 | Short Form Complaint - Steve Bartkowski by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2358 | Short Form Complaint - Mike Bass by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2359 | Short Form Complaint - Doug Beaudoin by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2360 | Short Form Complaint - Thomas J. Beer by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2361 | Short Form Complaint - Billy Bell by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2362 | Short Form Complaint - Nicholas Bell by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2363 | Short Form Complaint - Robert Bell by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2364 | Short Form Complaint - Robert Berry by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2365 | Short Form Complaint - Nicholas Bolkovac by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2366 | Short Form Complaint - James Bowman by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2367 | Short Form Complaint - Brent Boyd by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2368 | Short Form Complaint - Gregory Boyd by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2369 | Short Form Complaint - Henry Bradley by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2370 | Short Form Complaint - Marc Brown by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2371 | Short Form Complaint - Raymond Brown by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2372 | Short Form Complaint - Noah Burroughs by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2373 | Short Form Complaint - Kenneth Burrow by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2374 | Short Form Complaint - William Cahill by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2375 | Short Form Complaint - John Cappelletti by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2376 | Short Form Complaint - Roger Carr by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |

| 07/13/2012 | 2377 | Short Form Complaint - Allen Carter by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2378 | Short Form Complaint - Melvin Carver by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2379 | Short Form Complaint - Mario Celotto by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2380 | Short Form Complaint - Earl Christy by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2381 | Short Form Complaint - Allan Clark by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2382 | Short Form Complaint - Reginald Clark by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2383 | Short Form Complaint - Anthony Cline Jr. by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/13/2012) |
| 07/13/2012 | 2384 | Amended Short Form Complaint *William S. Rademacher* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2385 | Amended Short Form Complaint *Joel Steed* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2386 | Amended Short Form Complaint *Larry Barnes* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2387 | Amended Short Form Complaint *Woodrow Bennett, Jr.* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2388 | Amended Short Form Complaint *Scot Brantley* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2389 | Amended Short Form Complaint *Cedric Brown* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2390 | Amended Short Form Complaint *Joseph Brown and Jean Brown* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2391 | Amended Short Form Complaint *Rudolph Bukich and Patricia Bukich* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2392 | Amended Short Form Complaint *Jimmie Giles* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2393 | Amended Short Form Complaint *Brian Holloway* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2394 | Amended Short Form Complaint *Danny Noonan* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2395 | Amended Short Form Complaint *Joe Phillips* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2396 | Amended Short Form Complaint *Gregory Roberts* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |

| 07/13/2012 | 2397 | Amended Short Form Complaint *Jesse Solomon* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2398 | Amended Short Form Complaint *James Wilder* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2399 | Amended Short Form Complaint Wrongful Death *Carolyn Lens (Greg Lens, dec)* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2400 | Amended Short Form Complaint *Ralph Wenzel and Dr. Eleanor Perfetto* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2401 | Amended Short Form Complaint Wrongful Death *Dr. Eleanor Perfetto (Ralph Wenzel, dec.)* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2402 | Amended Short Form Complaint *Michael Cloud* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 07/13/2012) |
| 07/13/2012 | 2476 | Minute Sheet for proceedings held before HONORABLE ANITA B. BRODY: Courtroom Organizational Conference held on April 25, 2012. (tjd) (Entered: 07/16/2012) |
| 07/14/2012 | 2403 | Short Form Complaint - Ron Coder by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2404 | Short Form Complaint - William Cody by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2405 | Short Form Complaint - Daniel Colchico by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2406 | Short Form Complaint - William Cooke by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2407 | Short Form Complaint - Mark Cooper by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2408 | Short Form Complaint - Douglas Cosbie by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2409 | Short Form Complaint - David Costa by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2410 | Short Form Complaint - Mark Cotney by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2411 | Short Form Complaint - James Covert by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2412 | Short Form Complaint - Neal Craig by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2413 | Short Form Complaint - Joe Cribbs by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2414 | Short Form Complaint - Peter Cronan by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2415 | Short Form Complaint - William Curran by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |

| 07/14/2012 | 2416 | Short Form Complaint - Craig Curry by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2417 | Short Form Complaint - Tom Curtis by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2418 | Short Form Complaint - William Daniel by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2419 | Short Form Complaint - Michael Davis by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2420 | Short Form Complaint - Joseph DeLamielleure by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2421 | Short Form Complaint - Herbert Dobbins by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2422 | Short Form Complaint - Conrad Dobler by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2423 | Short Form Complaint - James Duncan by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2424 | Short Form Complaint - Jon Dupard by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2425 | Short Form Complaint - Kenneth Easley by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2426 | Short Form Complaint - Scott Eaton by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2427 | Short Form Complaint - Craig Ellis by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2428 | Short Form Complaint - Ken Fantetti by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2429 | Short Form Complaint - Joe Ferguson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2430 | Short Form Complaint - Steve Foley by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2431 | Short Form Complaint - Lee Folkins by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2432 | Short Form Complaint - Fred Forsberg by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2433 | Short Form Complaint - Timothy Fox by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2434 | Short Form Complaint - Phillip Freeman by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2435 | Short Form Complaint - Darrell Fullington by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |

| 07/14/2012 | 2436 | Short Form Complaint - Derrick Gaffney by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2437 | Short Form Complaint - Lawrence Gagner by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2438 | Short Form Complaint - James Garcia by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2439 | Short Form Complaint - Robin Rubick by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2440 | Short Form Complaint - Hubert Ginn by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2441 | Short Form Complaint - Frank Ryan by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2442 | Short Form Complaint - Randy Gradishar by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2443 | Short Form Complaint - Steven Schubert by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2444 | Short Form Complaint - Melvin Gray by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2445 | Short Form Complaint - William Shields by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2446 | Short Form Complaint - Edward Simonini by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2447 | Short Form Complaint - Keith Sims by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2448 | Short Form Complaint - Harry Jacobs by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2449 | Short Form Complaint - Fred Smerlas by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2450 | Short Form Complaint - Jerome Barkum by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2451 | Short Form Complaint - Charlie Smith by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2452 | Short Form Complaint - Tommy Mason by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/14/2012) |
| 07/14/2012 | 2453 | Short Form Complaint - Michael Sommer by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2454 | Short Form Complaint - Arthur Still by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2455 | Short Form Complaint - Bryan Stoltenberg by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |

| 07/14/2012 | 2456 | Short Form Complaint - Daniel Sullivan by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2457 | Short Form Complaint - Willie Taylor by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2458 | Short Form Complaint - Charles Thomas by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2459 | Short Form Complaint - Steve Thurlow by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2460 | Short Form Complaint - Love James Tolbert by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2461 | Short Form Complaint - William Truax by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2462 | Short Form Complaint - Clarence Verdin by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2463 | Short Form Complaint - Phil Villapiano by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2464 | Short Form Complaint - Dave Washington, Jr. by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2465 | Short Form Complaint - Joe Washington by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2466 | Short Form Complaint - Larry Webster by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2467 | Short Form Complaint - Michael Weddington by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2468 | Short Form Complaint - Edward White by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2469 | Short Form Complaint - James Williams by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2470 | Short Form Complaint - Jerry Wilson by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2471 | Short Form Complaint - Mike Wood by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2472 | Short Form Complaint - Larry Woods by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2473 | Short Form Complaint - Marvin Woodson by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/14/2012 | 2474 | Short Form Complaint - Frank Youso by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2012) |
| 07/16/2012 | 2475 | Short Form Complaint-Leonard Marshall by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/16/2012) |

**-178-**

| 07/16/2012 | 2477 | Short Form Complaint - Gregory Brown and Vallery Brown by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2478 | Short Form Complaint - W. Michael Evans and Kathleen Evans by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2479 | Short Form Complaint - Gregory Landry and Jeannine Landry by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2480 | Short Form Complaint - Shoals by PLAINTIFF(S). (LEVIN, ARNOLD) (Entered: 07/16/2012) |
| 07/16/2012 | 2481 | Short Form Complaint - Gregory K. Larson and Josepine Larson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2482 | Short Form Complaint - Pete Larson and Donna Larson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2483 | Short Form Complaint - Thomas McDonald and Patricia McDonald by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2484 | - Short Form Complaint (Henesey) by PLAINTIFF(S). (LEVIN, ARNOLD) (Entered: 07/16/2012) |
| 07/16/2012 | 2485 | Short Form Complaint - Peter Monty and Muriel Monty by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2486 | Short Form Complaint - Jason Short and Kierston Short by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2487 | Short Form Complaint - Ryan Sutter and Trista Sutter by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2488 | Short Form Complaint - Scott Ross by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2489 | Short Form Complaint - Ron Solt by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2490 | Short Form Complaint - Robert Grupp by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2491 | Short Form Complaint - James Betterson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2492 | *Short Form Complaint- Nathaniel Abraham & Tunisia Abraham* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2493 | Short Form Complaint - Al Dave by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2494 | Short Form Complaint - Barry Krauss by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2495 | Short Form Complaint - Joseph F. Kowalweski by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2496 | Short Form Complaint - Gerry Allen and Patricia Allen by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |

| 07/16/2012 | 2497 | *Short Form Complaint- Hiram Alex* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2498 | Short Form Complaint - Ronald Lee Fellows and Debra Lynn Fellows by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2499 | Short Form Complaint - David Little and Laura Little by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |
| 07/16/2012 | 2500 | *Short Form Complaint- John W. Alexander, Jr.* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2501 | *Short Form Complaint- Antonio Anderson & Ana Marie Anderson* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2502 | *Short Form Complaint- Gene Atkins, Sr.* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2503 | *Short Form Complaint- James A. Baker & Sabrina Baker* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2504 | *Short Form Complaint- Randy Baldwin* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2505 | *Short Form Complaint- Tatum Bell* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2506 | *Short Form Complaint- Jesse Bendross* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2507 | *Short Form Compalint- Luther Blue & Debra L. Cain-Blue* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2508 | *Short Form Compalint- Ronald Jerome Blye & Harriette Blye* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2509 | *Short Form Complaint- Reginaldo Branch* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2510 | *Short Form Complaint- John Brantley, Jr. & Diane Brantley* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2511 | *Short Form Complaint- Anthony Carter & Kimberly Carter* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2512 | *Short Form Complaint- Aveion Cason* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2513 | *Short Form Complaint- Jeremiah Castille & Lori Jean Castille* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2514 | *Short Form Complaint- J'Juan Cherry* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2515 | *Short Form Complaint- Henry Childs & Cynthia Childs* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2516 | Short Form Complaint - William E. Bain and Elizabeth A. Bain by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/16/2012) |

| 07/16/2012 | 2517 | *Short Form Complaint- John Copeland & Melissa Copeland* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2518 | *Short Form Compalint- Anthony Davis & Kelly Davis* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2519 | *Short Form Compalint- Christopher Doering & Tiffany Doering* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2520 | Short Form Complaint-Anthony Thomas and Hayley Thomas by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/16/2012) |
| 07/16/2012 | 2521 | Short Form Complaint-Kenneth Jenkins and Amy Jenkins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/16/2012) |
| 07/16/2012 | 2522 | *Short Form Complaint- Anthony Dorsett, Jr.* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2523 | Short Form Complaint-Leon Searcy by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/16/2012) |
| 07/16/2012 | 2524 | *Short Form Complaint- Randy L. Fuller & Gussie Fuller* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2525 | Short Form Complaint-Chris Hudson and Denise Hudson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/16/2012) |
| 07/16/2012 | 2526 | Short Form Complaint-Billy Jo Dupree and Marsha Dupree by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/16/2012) |
| 07/16/2012 | 2527 | *Short Form Complaint- Brent Fullwood & Lanette Fullwood* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2528 | *Short Form Complaint- Derrick L. Gainer* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2529 | *Short Form Complaint- Eugene Goodlow* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2530 | *Short Form Complaint- Dennis Harrison & Ida Harrison* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2531 | *Short Form Complaint- Verron Haynes & Sheena Haynes* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2532 | *Short Form Complaint- David T. Hendrix & Monica Hendrix* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2533 | *Short Form Complaint- Thomas Michael Hennigan & Leslie Hennigan* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2534 | *Short Form Complaint- Kevin N. House, Sr.* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2535 | *Short Form Complaint- Tyrone L. Howard* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2536 | *Short Form Complaint- Charles Hurston & Thomasina Hurston* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |

| 07/16/2012 | 2537 | Amended Short Form Complaint - Harry Jacobs by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/16/2012) |
| --- | --- | --- |
| 07/16/2012 | 2538 | *Short Form Complaint- Courtney Jackson* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2539 | Amended Short Form Complaint - Jerome Barkum by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/16/2012) |
| 07/16/2012 | 2540 | Amended Short Form Complaint - Tommy Mason by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/16/2012) |
| 07/16/2012 | 2541 | *Short Form Complaint- Lenzie Jackson & Sherrie Jackson* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2542 | *Short Form Complaint- Lindel G. Jaquess & Bertha M. Jaquess* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2543 | *Short Form Complaint- Eric K. Johnson & Stacey Johnson* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2544 | *Short Form Complaint- Marvin Kellum & Sandra Kellum* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2545 | *Short Form Complaint- William Kilmer & Sandy Kilmer* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2546 | *Short Form Complaint- Antonio Langham* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2547 | *Short Form Complaint- Reginald James Lowe* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2548 | *Short Form Complaint- Tony Martin* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2549 | *Short Form Complaint- Norris E. McCleary, II* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2550 | *Short Form Complaint- Joe Mickles* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2551 | *Short Form Complaint- Christopher A. Mitchell* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2552 | Short Form Complaint - Ken Huff by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/16/2012) |
| 07/16/2012 | 2553 | Short Form Complaint - Brad Edelman by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/16/2012) |
| 07/16/2012 | 2554 | Short Form Complaint - Charles Krueger by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/16/2012) |
| 07/16/2012 | 2555 | *Short Form Complaint- Sam Olajubutu, Jr.* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2556 | *Short Form Complaint- Tito Paul & Tamara Paul* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |

**-182-**

| 07/16/2012 | 2557 | *Short Form Complaint- Gerald Perry, Sr.* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| --- | --- | --- |
| 07/16/2012 | 2558 | *Short Form Complaint- David Rocker & Tiffany Rocker* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2559 | *Short Form Complaint- Allen Rossum & Angela Rossum* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2560 | *Short Form Complaint- Dantrell Savage* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2561 | *Short Form Complaint- Reginald Bernard Slack* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2562 | *Short Form Complaint- Charles Smith & Mynique Smith* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2563 | *Short Form Complaint- Robert Vinson Smith & Maria Robinson-Smith* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2564 | *Short Form Complaint- James W. Steffen* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2565 | *Short Form Complaint- Matthew Stevens* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2566 | *Short Form Complaint- Matthew R. Storm & Jennifer Storm* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2567 | *Short Form Complaint- Arthur Ray Strahan & Deloris Jean Strahan* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2568 | First Amended Short Form Complaint-Marc Logan and Amoy Chin-Logan by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/16/2012) |
| 07/16/2012 | 2569 | Short Form Complaint - RC Owens by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 07/16/2012) |
| 07/16/2012 | 2570 | *Short Form Complaint- Cornell M. Thomas & Deidre Thomas* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2571 | *Short Form Complaint- Lawyer J. Tillman, Jr. & Vickie B. Tillman* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2572 | *Short Form Complaint- Joe Walker* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2573 | *Short Form Complaint- Ken Watson* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2574 | *Short Form Complaint- Fred Weary & Casey Weary* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2575 | *Short Form Complaint- Terry Williams & Tonya Williams* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2576 | *Short Form Complaint- Eric Yarber & Michele Yarber* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |

| 07/16/2012 | 2577 | *Short Form Complaint- Christopher L. Young* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2578 | Short Form Complaint--Ronald Hallstrom by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/16/2012) |
| 07/16/2012 | 2579 | Short Form Complaint--Jeffrey Bregel by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/16/2012) |
| 07/16/2012 | 2580 | Short Form Complaint--Leonard "Bubba" McDowell by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/16/2012) |
| 07/16/2012 | 2581 | Short Form Complaint--Ryan Fowler by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 07/16/2012) |
| 07/16/2012 | 2582 | Short Form Complaint-Broderick Thomas and Yvonne Thomas by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/16/2012) |
| 07/16/2012 | 2583 | STIPULATION AND ORDER that... IT IS STIPULATED AND AGREED BY AMONG THE PARTIES AND/OR THEIR RESPECTIVE COUNSEL AS FOLLOWS: 1. PLAINTIFFS SHALL FILE THEIR AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT WITHIN TWO BUSINESS DAYS AFTER ENTRY OF THIS STIPULATION AND ORDER; 2. ALL DATES WITH RESPECT TO THE NFL DEFENDANTS' UPCOMING MOTION TO DISMISS ON PREEMPTION GROUNDS, AND THE RIDDELL DEFENDANTS UPCOMING MOTION TO SEVER AND MOTION TO DISMISS ON PREEMPTION GROUNDS, AS SET FORTH IN CASE MANAGMENT ORDER NO. 2 (AS FURTHER EXPLAINED IN CASE MANAGEMENT ORDER NO. 4 AND OTHER SUBSEQUENT ORDERS) ARE EXTENDED BY THREE (3) WEEKS, AS FOLLOWS:.... APPROVED BY THE COURT:. SIGNED BY HONORABLE LEGROME D. DAVIS, AS EMERGENCY JUDGE FOR THE HONORABLE ANITA B. BRODY ON 7/16/2012. 7/16/2012 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) (Entered: 07/16/2012) |
| 07/16/2012 | 2584 | Short Form Complaint - Lomas Brown and Wendy Brown by . (VARGHESE, MANOJ) Modified on 7/17/2012 (tjd). (Entered: 07/16/2012) |
| 07/16/2012 | 2585 | Short Form Complaint - Myron Guyton and Lisa M. Guyton by . (VARGHESE, MANOJ) Modified on 7/17/2012 (tjd). (Entered: 07/16/2012) |
| 07/16/2012 | 2586 | Short Form Complaint - Jessie Small and Renassa Small by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (VARGHESE, MANOJ) (Entered: 07/16/2012) |
| 07/16/2012 | 2587 | Short Form Complaint - Willie Whitehead and Marsha Whitehead by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (VARGHESE, MANOJ) (Entered: 07/16/2012) |
| 07/16/2012 | 2588 | Short Form Complaint - John Leake by PLAINTIFF(S). (ASHBY, ANDREW) (Entered: 07/16/2012) |
| 07/16/2012 | 2589 | Short Form Complaint - Frank Sanders by PLAINTIFF(S). (ASHBY, ANDREW) (Entered: 07/16/2012) |
| 07/16/2012 | 2590 | Short Form Complaint - Eric Hipple by PLAINTIFF(S). (ASHBY, ANDREW) (Entered: 07/16/2012) |
| 07/16/2012 | 2591 | Short Form Complaint - Jim Finn by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/16/2012) |

| 07/16/2012 | 2592 | Short Form Complaint - Jamaica Rector and Cara Rector by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/16/2012) |
| 07/16/2012 | 2593 | Short Form Complaint - *Bernard Paul Parrish* by PLAINTIFF(S). (FERRARA, MICHAEL) (Entered: 07/16/2012) |
| 07/16/2012 | 2594 | Short Form Complaint - Sean Ryan by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/16/2012) |
| 07/16/2012 | 2595 | Short Form Complaint - Brad Scioli and Dana Scioli by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/16/2012) |
| 07/16/2012 | 2596 | Short Form Complaint - Kywin Supernaw and Amy Supernaw by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/16/2012) |
| 07/16/2012 | 2597 | Short Form Complaint - Tyrone Hughes by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2598 | Short Form Complaint - Chris Walsh by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/16/2012) |
| 07/16/2012 | 2599 | Short Form Complaint - Paul Zukauskas by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/16/2012) |
| 07/16/2012 | 2600 | Short Form Complaint - Corey Miller by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/16/2012) |
| 07/16/2012 | 2601 | Short Form Complaint - Henry Taylor by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/16/2012) |
| 07/16/2012 | 2602 | Short Form Complaint - Langston Moore by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/16/2012) |
| 07/16/2012 | 2603 | Short Form Complaint - Stephen/Deedee Davis by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/16/2012) |
| 07/16/2012 | 2604 | Short Form Complaint - Joe Horn by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/16/2012) |
| 07/16/2012 | 2605 | Short Form Complaint - Travis Williams by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/16/2012) |
| 07/16/2012 | 2606 | Short Form Complaint - Sean Berton by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/16/2012) |
| 07/16/2012 | 2607 | Short Form Complaint - JoJuan Armour and Myriah Armour by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/16/2012) |
| 07/16/2012 | 2608 | Short Form Complaint - Eric Hill and Dewana Hill by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2609 | Short Form Complaint - Roy Curtis Baham and Leslie Ann Baham by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2610 | Short Form Complaint -Charles Alexander by PLAINTIFF(S). (BUZBEE, ANTHONY) (Entered: 07/16/2012) |
| 07/16/2012 | 2611 | Short Form complaint -Gregory LaFleur by PLAINTIFF(S). (BUZBEE, ANTHONY) (Entered: 07/16/2012) |

**-185-**

| 07/16/2012 | 2612 | Short Form Complaint - Scott Dragos by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/16/2012) |
|---|---|---|
| 07/16/2012 | 2613 | Short Form Complaint -Lamar Lathon by PLAINTIFF(S). (BUZBEE, ANTHONY) (Entered: 07/16/2012) |
| 07/16/2012 | 2614 | Short Form Complaint -Michael Myers by PLAINTIFF(S). (BUZBEE, ANTHONY) (Entered: 07/16/2012) |
| 07/16/2012 | 2615 | Short Form Complaint -Matt Schobel by PLAINTIFF(S). (BUZBEE, ANTHONY) (Entered: 07/16/2012) |
| 07/16/2012 | 2616 | Short Form Complaint - John Fourcade by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2617 | Short Form Complaint - Matt Joyce by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/16/2012) |
| 07/16/2012 | 2618 | Short Form Complaint - Isaiah Kacyvenski by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/16/2012) |
| 07/16/2012 | 2619 | Short Form Complaint - Raion Hill by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2620 | Short Form Complaint - Jerome Pathon by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/16/2012) |
| 07/16/2012 | 2621 | Short Form Complaint - Maurice R. Hurst and Alleasia D. Hurst by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2622 | Short Form Complaint - Treverane Faulk and Rachael Faulk by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2623 | Short Form Complaint - Keaton Cromartie by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2624 | Short Form Complaint - Vince Buck and Erika Buck by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2625 | Short Form Complaint - Charles E. Commiskey by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2626 | Short Form Complaint - Tyrone Legette by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2627 | Short Form Complaint - Rickey Jackson by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2628 | Short Form Complaint - Gary W. Barbaro and Karen Barbaro by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2629 | Short Form Complaint - Brett Bech and Cheri Bech by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2630 | Short Form Complaint - Fred Barnett by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/16/2012) |
| 07/16/2012 | 2631 | Short Form Complaint - Corey D. Dixon and Farrah V. Dixon by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |

| 07/16/2012 | 2632 | Short Form Complaint - Vaughan M. Johnson and Shirley Johnson by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2633 | Short Form Complaint - Keith Joseph and Afton McDonald Joseph by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2634 | Short Form Complaint - Percy Keith and Annette Keith by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2635 | Short Form Complaint - Derrick L. Lewis and Noel Lewis by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2636 | Short Form Complaint - Richard S. Jackson and Katherine C. Jackson by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2637 | Short Form Complaint - Frank Lockett and Dana Lockett by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2638 | Short Form Complaint - Tommy McCleskey and Susan McCleskey by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2639 | Short Form Complaint - Jimmy Spencer and Tanya Spencer by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/16/2012 | 2640 | Amended Short Form Complaint - Jimmy Spencer and Tanya Spencer by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/16/2012) |
| 07/17/2012 | 2641 | Notice of Withdrawal of Short Form Complaint - Hubert Lee Ginn by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/17/2012) |
| 07/17/2012 | 2642 | PLAINTIFFS' AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT. JURY DEMAND, CERTIFICATE OF SERVICE. (APPLIES TO ALL ACTIONS). (Attachments: # 1 Certificate of Service)(tjd) (Entered: 07/18/2012) |
| 07/17/2012 | 2643 | Copy of Conditional Transfer Order (CTO-17) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: SC-D 3:12-1864; TX-S 3:12-199. (tjd) (Entered: 07/18/2012) |
| 07/18/2012 | 2644 | Short Form Complaint - Byron P. Franklin, Sr. and Meriam Louise Franklin by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/18/2012) |
| 07/18/2012 | 2645 | Short Form Complaint - David D. Studdard by PLAINTIFF(S). (KATZ, SETH) (Entered: 07/18/2012) |
| 07/19/2012 | 2646 | Short Form Complaint - Connie Zelencik and Kathy Doyle by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/19/2012) |
| 07/19/2012 | 2647 | Notice of Withdrawal of Short Form Complaint - Bruce Herron and LaGuina Herron by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/19/2012) |
| 07/23/2012 | 2648 | ORDER that THE MOTION FOR APPOINTMENT OF DAVID CASEY TO STEERING COMMITTEE (NO. 12-CV-1700, ECF NO. 2; NO. 12-MD-2353, ECF NO. 61) IS DENIED AS MOOT.1(footnote). SIGNED BY HONORABLE ANITA B. BRODY ON 7/20/2012.7/23/2012 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) (Entered: 07/23/2012) |
| 07/23/2012 | 2649 | Short Form Complaint - Mike Bell by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |

| 07/23/2012 | 2650 | Short Form Complaint - Berryman by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2651 | Short Form Complaint - Brian Blankenship & Michel Blankenship by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2652 | Short Form Complaint - Dennis Bligen by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2653 | Short Form Complaint - James Boyd by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2654 | Short Form Complaint - Steven Brannon & Loretta Lombardi Brannon by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2655 | Short Form Complaint - Vincent Brisby by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2656 | Short Form Complaint - Walter Brister & Bonnie Brister by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2657 | Short Form Complaint - Bobby Brooks & Rayna Brooks by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2658 | Short Form Complaint - Chris Brown by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2659 | Short Form Complaint - Steven Bush & Teresa Bush by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2660 | Short Form Complaint - Chad Cascadden & Melissa Cascadden by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2661 | Short Form Complaint - Richard Caster by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2662 | Short Form Complaint - Greg Clark & Regan Clark by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2663 | Short Form Complaint - Anthony Cook & Shawn Cook by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2664 | Short Form Complaint - Keith Council by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2665 | Short Form Complaint - Terrence Crosby by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2666 | Short Form Complaint - John Curtis & Deborah Curtis by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2667 | Short Form Complaint - Mike Davis & Mary Davis by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2668 | Short Form Complaint - Michael Douglass & Olga Douglass by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2669 | Short Form Complaint - Allan Ellis by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |

| 07/23/2012 | 2670 | Short Form Complaint - Tommy Fagan & Anita Fagan by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2671 | Short Form Complaint - Anthony Florence & Judy Florence by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2672 | Short Form Complaint - Brandon Frye by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2673 | Short Form Complaint - Dwight Garner & Vida Garner by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2674 | Short Form Complaint - Randy Grimes & Lydia Grimes by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2675 | Short Form Complaint - Barry Dean Hackett & Cindy Hackett by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2676 | Short Form Complaint - James Hanna by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2677 | Short Form Complaint - Bruce Harper & Nancy Harper by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2678 | Short Form Complaint - Maurice Harvey by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2679 | Short Form Complaint - Steve Heimkreiter by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2680 | Short Form Complaint - Darren Hughes & Felicia Hughes by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2681 | Short Form Complaint - Cletidus Hunt by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2682 | Short Form Complaint - Michael Hunt & Paula Lemke-Hunt by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2683 | Short Form Complaint - Herman Hunter by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2684 | Short Form Complaint - Robert L. Jackson by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2685 | Short Form Complaint - Charles Jefferson & Deborah Jefferson by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2686 | Short Form Complaint - Curtis Johnson by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2687 | Short Form Complaint - Darrius Johnson by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2688 | Short Form Complaint - Richard Johnson by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2689 | Short Form Complaint - Chris Jones by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |

| 07/23/2012 | 2690 | Short Form Complaint - Keith Jones & Jeanne L. Jones by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/23/2012 | 2691 | Short Form Complaint - Tony Jones by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/23/2012) |
| 07/24/2012 | 2692 | *Short Form Complaint - Thomas Brown* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2693 | *Short Form Complaint - Aundray Bruce* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2694 | *Short Form Complaint - Dion L. Foxx* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2695 | *Short Form Complaint - Brandon Harrison* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2696 | *Short Form Complaint - Samuel Kay Hunt* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2697 | *Short Form Complaint - Milton Plum* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2698 | *Short Form Complaint - Eric Powell* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2699 | *Short Form Complaint - Damien A. Richardson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2700 | *Short Form Complaint - Amos Zereou* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2701 | *Short Form Complaint - Nathaniel S. Allen and Linda Rae Kelly-Allen* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2702 | *Short Form Complaint - Steve August and Kellie August* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2703 | *Short Form Complaint - John Karl Baldischwiler and Rhonda Elaine Baldischwiler* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2704 | *Short Form Complaint - Shawn Williams Barber and Nicole R. Barber* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2705 | *Short Form Complaint - David Bavaro and Erin Bavaro* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2706 | *Short Form Complaint - Lajourdain Birden and Raina Birden* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2707 | *Short Form Complaint - Paul Fairchild and Michele Fairchild* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2708 | *Short Form Complaint - Dan Ficca and Phyllis Ann Ficca* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2709 | *Short Form Complaint - Luke Fisher and Heather Fisher* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |

| 07/24/2012 | 2710 | *Short Form Complaint - David L. Galloway and Josephine W. Galloway* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2711 | *Short Form Complaint - Casey S. Gamble and Dionne Gamble* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2712 | *Short Form Complaint - Earnest D. Hodge and Juraldine Hodge* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2713 | *Short Form Complaint - Harlan Charles Huckleby and Michelle Angela Huckleby* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2714 | *Short Form Complaint - Joseph E. Jacoby and Irene G. Jacoby* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2715 | *Short Form Complaint - Ilia Jarostchuk and Karen Jarostchuk* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2716 | *Short Form Complaint - Earnest L. Jones and Maria A. Jones* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2717 | *Short Form Complaint - Gregory Jones and Valerie Jones* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2718 | *Short Form Complaint - Joseph Kohlbrand and Maria Kohlbrand* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2719 | *Short Form Complaint - Michael Kracalik and Michelle Castle* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2720 | *Short Form Complaint - Brian Harper Lebel and Magda Lebel* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2721 | *Short Form Complaint - Kevin Lockett and Cheryl L. Lockett* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2722 | *Short Form Complaint - Kendrick Anthony Redmon and Stephanie Roberts Redmon* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2723 | *Short Form Complaint - Benito Ricardo and Monique Ricardo* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2724 | *Short Form Complaint - Frank Robinson and Fanya Robinson* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2725 | *Short Form Complaint - Roosevelt Smith and Diane Smith* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2726 | *Short Form Complaint - Tommie D. Stowers, Jr. and Kim Stowers* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2727 | *Short Form Complaint - Malcolm Thomas and Sylvia Thomas* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2728 | *Short Form Complaint - Lenny Walls and Yvonne Aceves-Walls* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2729 | *Short Form Complaint - Richard J. Watters and Catherina Watters* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |

| 07/24/2012 | 2730 | *Short Form Complaint - Clayton Weishuhn and Diane Weishuhn* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2731 | *Short Form Complaint - James W. Wright and Janett Askew Wright* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2732 | *Short Form Complaint - Charles Yancy and Christina Yancy* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2733 | Short Form Complaint- Steve Jordan and Anita Jordan by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2734 | Short Form Complaint- Jason Kaiser and Sheri Kaiser by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2735 | Short Form Complaint- Mark Lee and Lorrie Lee by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2736 | Short Form Complaint- Jonas Lewis and Kimberly Sonico-Lewis by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2737 | Short Form Complaint- William Maas and Sarah Maas by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2738 | Short Form Complaint- Kenneth McAllister by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2739 | Short Form Complaint- Buford L. McGee and Jeanette Ortiz by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2740 | Short Form Complaint- John Meyer and Carrie Meyer by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2741 | Short Form Complaint- Derrick Ned by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2742 | Short Form Complaint- Michael Obrovac by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2743 | Short Form Complaint- Christian Okoye by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2744 | Short Form Complaint- Christian Okoye by PLAINTIFF(S). (TARRICONE, ANTHONY) (DUPLICATE FILING OF DOCUMENT #2743) Modified on 7/24/2012 (nd, ). (Entered: 07/24/2012) |
| 07/24/2012 | 2745 | Short Form Complaint- Muhammed Oliver and Cassandra Oliver by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2746 | Short Form Complaint- Jeffrey Pegues by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2747 | Short Form Complaint- Bruce Perkins and Orelynette Perkins by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2748 | Short Form Complaint- Walter Pesuit by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2749 | Short Form Complaint- Stan Petry and Bridgette Petry by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |

| 07/24/2012 | 2750 | Short Form Complaint- Charles Philyaw by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2751 | Short Form Complaint- Bryan Pittman and Suzanne Pittman by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2752 | Short Form Complaint- Bryan Pittman and Suzanne Pittman by PLAINTIFF(S). (TARRICONE, ANTHONY) (DUPLICATE FILING OF DOCUMENT #2751) Modified on 7/24/2012 (nd). (Entered: 07/24/2012) |
| 07/24/2012 | 2753 | Short Form Complaint- Jebediah Putzier and Jaclyn Putzier by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2754 | Short Form Complaint- Guy Roberts by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2755 | Short Form Complaint- Charles Rutkowski and Connie Rutkowski by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2756 | Copy of Conditional Transfer Order (CTO-18) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody. (tjd) (Entered: 07/24/2012) |
| 07/24/2012 | 2757 | Short Form Complaint - Frederick Willis and Darlene Willis by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2758 | TRANSCRIPT of Telephone Conference held on June 28, 2012 before The Honorable Anita B. Brody. (tjd) (Entered: 07/24/2012) |
| 07/24/2012 | 2759 | Short Form Complaint - Jerome Sally & Debbie Sally by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2760 | Short Form Complaint - Ed Scott by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2761 | Short Form Complaint - Reggie Singletary & Janice Singletary by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2762 | Short Form Complaint - Derek Smith & Taryn Smith by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2763 | Short Form Complaint - Edward Smith by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2764 | Short Form Complaint - Vernon Studdard by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2765 | Short Form Complaint - Ivory Sully & Sylvia Sully by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2766 | Short Form Complaint - Terry Taylor & Michelle Taylor by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2767 | Short Form Complaint - Ryan Terry & Ann-Marie Terry by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2768 | Short Form Complaint - John Thornton by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |

| 07/24/2012 | 2769 | Short Form Complaint - Paul Tripoli & Cheryl Tripoli by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2770 | Short Form Complaint - Cecil Turner & Margo Turner by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2771 | Short Form Complaint - Rick Upchurch & Donna Upchurch by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2772 | Short Form Complaint - Robert Wallace & Dene Wallace by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2773 | Short Form Complaint - John Washington & Terri Washington by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2774 | Short Form Complaint - Dennis Watkins by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2775 | Short Form Complaint - Sammy White & Penny White by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2776 | Short Form Complaint - Alphonso Williams & Tessie Williams by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2777 | Short Form Complaint - Jerome Woods & Dana Woods by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 07/24/2012) |
| 07/24/2012 | 2778 | Short Form Complaint - Lee Bouggess and Barbara Bouggess by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2779 | Short Form Complaint - Carl Brettschneider and Louise Brettschneider by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2780 | *Short Form Complaint - Monte Julius Crockett and Peggy Crockett* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2781 | *Short Form Complaint - Ray Lucas and CeCilia Lucas* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2782 | *Short Form Complaint - Rod Manuel and Willecia Manuel* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2783 | *Short Form Complaint - Marty Moore and Wendy Moore* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2784 | Short Form Complaint - Marty Moore and Wendy Moore by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2785 | Short Form Complaint - Calvin O'Neal and Mary O'Neal by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2786 | Short Form Complaint - Reggie Rivers and Stephanie Rivers by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2787 | Short Form Complaint - Billy Ray Smith, Jr. and Kimberly Smith by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2788 | Short Form Complaint - Donald R. Testerman and Deborah White by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |

**-194-**

| 07/24/2012 | 2789 | *Short Form Complaint - Bob Trumpy and Patricia Trumpy* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2790 | Short Form Complaint - Leo Joseph Wisniewski and Cynthia Emily Wisniewski by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2791 | Short Form Complaint - Stephen Wisniewski and Jeanne Wisniewski by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2792 | Short Form Complaint - Todd Matthew Yoder and Susan Yoder by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2793 | Short Form Complaint - Larry Glen Bowie by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2794 | Short Form Complaint - Kyle Clement by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2795 | Short Form Complaint - Byron Hunt by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2796 | Short Form Complaint - Frederick Jones by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2797 | Short Form Complaint - George Nock by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2798 | Short Form Complaint - Neal Olkewicz by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/24/2012) |
| 07/24/2012 | 2799 | Amended Short Form Complaint -*Demetrius Hill* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/24/2012) |
| 07/24/2012 | 2800 | Amended Short Form Complaint - *Tobiath Myles and Lynn Denise Myles* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 07/24/2012) |
| 07/25/2012 | 2801 | Short Form Complaint - Ted Albrecht and Marie Albrecht by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2802 | Short Form Complaint - Ocie Austin and Laura Austin by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2803 | *Short Form Complaint - Carl Barzilauskas and Cathi Barzilauskas* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2804 | *Short Form Complaint - Albert Bemiller and Wanda Bemiller* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2805 | *Short Form Complaint - Kerlin Blaise and Lanee Blaise* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2806 | Short Form Complaint - Matt Bouza and Marianne Bouza by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2807 | *Short Form Complaint - Thomas Braatz and Geraldine Braatz* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2808 | *Short Form Complaint - Jim Bradshaw and Theo Bradshaw* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |

**-195-**

| 07/25/2012 | 2809 | Short Form Complaint - Sam Brunelli and Robin Read Brunelli by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2810 | *Short Form Complaint - Scott Brunner and Helane Becker* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2811 | Short Form Complaint - Glenn Bujnoch and Susan Bujnoch by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2812 | *Short Form Complaint - Walter J. Burkett and Jacqueline Burkett* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2813 | Short Form Complaint - Lem Burnham and Barbara Burnham by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2814 | *Short Form Complaint - Ken Byers and Diane Byers* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2815 | Short Form Complaint - Robert J. Cappadona and Josephine Cappadona by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2816 | *Short Form Complaint - Ben Cavil and Nyesha J. Cavil* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2817 | Short Form Complaint - Ralph Cindrich and Mary Cindrich by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2818 | Short Form Complaint - Chris Claiborne and Desiree Claiborne by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2819 | *Short Form Complaint - Berman Corbell and Dawn Corbell* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2820 | *Short Form Complaint - Thomas Dinkle and Jeni Lee Dinkle* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2821 | Short Form Complaint - Gary Evans and Kim Evans by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2822 | *Short Form Complaint - Ross W. Fichtner and Karen Fichtner* by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2823 | Short Form Complaint - James M. Flanigan and Susan P. Flanigan by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2824 | Short Form Complaint - Gregg D. Garrity and Linda Garrity by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2825 | Short Form Complaint - Walker Gillette and Rebecca Gillette by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2826 | Short Form Complaint - Bill Glass and Mavis Glass by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2827 | Short Form Complaint - John Goode and Fatimah Goode by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2828 | Short Form Complaint - John Goodman and Patricia Goodman by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |

| 07/25/2012 | 2829 | Short Form Complaint - Arthur Graham and Judith A. Graham by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2830 | Short Form Complaint - Harold Green and Andrea Green by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2831 | Short Form Complaint - William P. Gregory, Jr. and Carol J. Gregory by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2832 | Short Form Complaint - Courtney Griffin and Tina Griffin by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2833 | Short Form Complaint - Hueland Howard Hale and Cheryl Hale by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2834 | Short Form Complaint - Darryl E. Hall and Tammy K. Hall by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2835 | Short Form Complaint - Bruce Hardy and Lori Hardy by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2836 | Short Form Complaint - Clinton C. Harris and Robbyn M. Harris by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2837 | Short Form Complaint - Robby He'bert, Jr. and Joan He'bert by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2838 | Short Form Complaint - Tom Hicks and Aislinn Hicks by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2839 | Short Form Complaint - John S. Hill and Denise Hill by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2840 | Short Form Complaint - Geoge F. Hoaglin, Jr. and Janet Hoaglin by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2841 | Short Form Complaint - Dennis Homan and Charlotte T. Homan by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2842 | Short Form Complaint - Phillip James and Diatra James by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2843 | Short Form Complaint - Monte C. Johnson and Phyllis Johnson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2844 | Short Form Complaint - Cedric Jones and Suzy Jones by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2845 | Short Form Complaint - Daniel Jones and Kristin Jones by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2846 | Short Form Complaint - Howard W. Kindig, Jr. and Selena D. Kindig by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2847 | Short Form Complaint - John S. Klotz and Kathleen Klotz by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2848 | Short Form Complaint - Ed Koontz and Cary Koontz by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |

| 07/25/2012 | 2849 | Short Form Complaint - Roger Leclerc and Franes Leclerc by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2850 | Short Form Complaint - Kevin F. Long and Frankie E. Long by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2851 | Short Form Complaint - Michael Martin and Michelle L. Martin by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2852 | Short Form Complaint - Ricardo McDonald and Tammara McDonald by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2853 | Short Form Complaint - Jim Morrissey and Amy Morrissey by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2854 | Short Form Complaint - Edward P. Murray and Cynthia M. Murray by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2855 | Short Form Complaint - Jim Obradovich and Karen Obradovich by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2856 | Short Form Complaint - Louis Oubre, III and Dana Oubre by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2857 | Short Form Complaint - Walter Patulski and Karen Patulski by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2858 | Short Form Complaint - Malcolm Marlo Perry and Sabrina C. Perry by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2859 | Short Form Complaint - Johnny A. Poe and Sharon Poe by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2860 | Short Form Complaint - David Reavis and Vicki Reavis by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2861 | Short Form Complaint - Mikhael Ricks and Kristi Ricks by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2862 | Short Form Complaint - Robert Scholtz and Barbara Scholtz by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2863 | Short Form Complaint - Barrett B. Smith and Mary Ann Stiles by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2864 | Short Form Complaint - Clifton Smith, II and Judy Smith by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2865 | Short Form Complaint - Thomas Spriggs and Niah Spriggs by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2866 | Short Form Complaint - Daleroy Stewart and Danielle Stewart by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2867 | Short Form Complaint - Jim Stienke and Kathy Stienke by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2868 | Short Form Complaint - Blair Thomas and Lisa Thomas by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |

| 07/25/2012 | 2869 | Short Form Complaint - Billy Joe Tolliver and Shiela Enos by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2870 | Short Form Complaint - Richard Umphrey, III and Jackie Umphrey by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2871 | Short Form Complaint - Roger Wehrli and Gayle Wehrli by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2872 | Short Form Complaint - Clyde Werner and Constance Joy Werner by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2873 | Short Form Complaint - Jeff Wiska and Kim Wiska by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2874 | Short Form Complaint - Anthony Ronald Yary and Jamie Suzanne Yary by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2875 | Short Form Complaint - Richard Ackerman by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2876 | Short Form Complaint - Autry Beamon, Jr. by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2877 | Short Form Complaint - Tony Brown by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2878 | Short Form Complaint - Ronnie Bull by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2879 | Short Form Complaint - Sedric Clark by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2880 | Short Form Complaint - Howard J. Dinkins by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2881 | Short Form Complaint - Walter Chuck Foreman by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2882 | Short Form Complaint - Maurice Harvey by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2883 | Short Form Complaint - Ted Hendricks by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2884 | Short Form Complaint - Darvell Huffman by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2885 | Short Form Complaint - Brian Iwuh by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2886 | Short Form Complaint - Curtis I. Keaton by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2887 | Short Form Complaint - Rodney Lewis by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2888 | Short Form Complaint - Howard Richards by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |

| 07/25/2012 | 2889 | Short Form Complaint - John A. Schultz by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2890 | Short Form Complaint - Rod Smith by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2891 | Short Form Complaint - Mike Tomczak by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2892 | Short Form Complaint - Johnny A. Watson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2893 | Short Form Complaint - Rick Woods by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2894 | Short Form Complaint - Tony Zendejas by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/25/2012) |
| 07/25/2012 | 2895 | First Amended Short Form Complaint-David Hughes and Holly Hughes by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/25/2012) |
| 07/25/2012 | 2896 | Joseph E. Thomas/Nicole Thomas - AMENDED Short Form Complaint by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/25/2012) |
| 07/25/2012 | 2897 | ROBERT Scott Blanton - AMENDED Short Form Complaint by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/25/2012) |
| 07/26/2012 | 2898 | Short Form Complaint - Virginia Grimsley on behalf of the Estate of John G. Grimsley by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/26/2012) |
| 07/26/2012 | 2899 | Short Form Complaint - Mike Maslowski by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/26/2012) |
| 07/26/2012 | 2900 | Short Form Complaint - Bobby Shaw, II by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/26/2012) |
| 07/26/2012 | 2901 | Short Form Complaint - Courtney Van Buren by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/26/2012) |
| 07/26/2012 | 2902 | Short Form Complaint - Bryant Westbrook by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/26/2012) |
| 07/27/2012 | 2903 | Short Form Complaint - Chad Levitt by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/27/2012) |
| 07/27/2012 | 2904 | Short Form Complaint - William Baber by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/27/2012) |
| 07/27/2012 | 2905 | Short Form Complaint - Victor Bailey by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/27/2012) |
| 07/27/2012 | 2906 | Short Form Complaint - Greg Hill by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/27/2012) |
| 07/27/2012 | 2907 | Short Form Complaint - John/Carolyn Alt by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/27/2012) |
| 07/27/2012 | 2908 | Short Form Complaint - Ben/Karyn Utecht by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/27/2012) |

| 07/27/2012 | 2909 | Short Form Complaint - Troy Edwards by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/27/2012) |
| 07/27/2012 | 2910 | Short Form Complaints - Paul Smith by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/27/2012) |
| 07/27/2012 | 2911 | Short Form Complaint - Derrick Burgess by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/27/2012) |
| 07/27/2012 | 2912 | Short Form Complaint - Jamie Henderson by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/27/2012) |
| 07/27/2012 | 2913 | Short Form Complaint - Robert Jenkins by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/27/2012) |
| 07/27/2012 | 2914 | Short Form Complaint - Rex Tucker by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/27/2012) |
| 07/27/2012 | 2915 | Copy of Conditional Transfer Order (CTO-19) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-C 2:12-6008. (tjd) (Entered: 07/27/2012) |
| 08/01/2012 | 2916 | Short Form Complaint - Stephanie Moore by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2917 | Short Form Complaint - Katherine Moppin by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2918 | Short Form Complaint - Sally Stern by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2919 | Short Form Complaint - Shane Laakso by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2920 | Short Form Complaint - Judith Hill Horton by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2921 | Short Form Complaint - Djuanna Oglesby by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2922 | Short Form Complaint - John Harris by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2923 | Short Form Complaint - George Martin & Diane Martin by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2924 | Short Form Complaint - Eric Allen by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2925 | Short Form Complaint - Ottis Andersen & Wanda Andersen by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2926 | Short Form Complaint - Deron Cherry & Hope Cherry by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2927 | Short Form Complaint - Charles Davis by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2928 | Short Form Complaint - Greg Engel by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |

| 08/01/2012 | 2929 | Short Form Complaint - Larry Franklin by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
|---|---|---|
| 08/01/2012 | 2930 | Short Form Complaint - Hank Goebel & Sandra Goebel by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2931 | Short Form Complaint - DeMingo Graham by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2932 | Short Form Complaint - Joseph Hackett, Jr & Deborah Hackett by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2933 | Short Form Complaint - Reginald Hayward by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2934 | Short Form Complaint - Oliver Hoyte by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2935 | Short Form Complaint - Ivy Joe Hunter by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2936 | Short Form Complaint - Jimmie Lee Jones by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2937 | Short Form Complaint - Melvin Jones & Mary Margarite Jones by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2938 | Short Form Complaint - Charles Klingbeil & Doreen Klingbeil by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2939 | Short Form Complaint - Matt Kranchick & Jeannine Kranchick by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2940 | Short Form Complaint - Kenneth Lewis & Theresa Lewis by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2941 | Short Form Complaint - Steve McMichael & Misty McMichael by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2942 | Short Form Complaint - Greg Meisner & Jean Meisner by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2943 | Short Form Complaint - Paul Miles & Lisa Miles by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2944 | Short Form Complaint - Lincoln Minor by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2945 | Short Form Complaint - Joe O'Malley & Joyce O'Malley by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2946 | Short Form Complaint - Donald Perkins by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2947 | Short Form Complaint - Rollin Putzier & Susan Corbett by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2948 | Short Form Complaint - Eric Ravotti & Neva Ravotti by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |

| 08/01/2012 | 2949 | Short Form Complaint - Paul Robinson by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2950 | Short Form Complaint - Anthony Shelton & Angie Shelton by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2951 | Short Form Complaint - John Shinners by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2952 | Short Form Complaint - Stanley Smagala & Bridget Smagala by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2953 | Short Form Complaint - Bruce Smith & Carmen Smith by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2954 | Short Form Complaint - Jimmy L Smith by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2955 | Short Form Complaint - Johnny Thomas by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2956 | Short Form Complaint - Wesley Walker by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2957 | Short Form Complaint - Robert West & Marguerite West by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2958 | Short Form Complaint - Greg Williams & Jennifer Williams by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2959 | Short Form Complaint - Nathaniel Wright by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/01/2012) |
| 08/01/2012 | 2960 | Notice of Withdrawal of Short Form Complaint - Steve Pierce and Jeanne Pierce by PLAINTIFF(S). (LOCKS, GENE) (Entered: 08/01/2012) |
| 08/01/2012 | 2961 | Notice of Withdrawal of Short Form Complaint - Jeff Smith and Christie Smith by PLAINTIFF(S). (LOCKS, GENE) (Entered: 08/01/2012) |
| 08/01/2012 | 2962 | Notice of Withdrawal of Short Form Complaint - John Hicks and Cindy Hicks by PLAINTIFF(S). (LOCKS, GENE) (Entered: 08/01/2012) |
| 08/01/2012 | 2963 | Notice of Withdrawal of Short Form Complaint - Chuck Thomas by PLAINTIFF(S). (LOCKS, GENE) (Entered: 08/01/2012) |
| 08/01/2012 | 2964 | ORDER THAT THE NFL DEFENDANTS' MOTION TO DISMISS; THE RIDDELL DEFENDANTS' MOTION TO DISMISS; THE RIDDELL DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS; THE RIDDELL DEFENDANTS' MOTION TO SEVER; AND THE RIDDELL DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO SEVER ARE ALL DENIED WITHOUT PREJUDICE, ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 7/31/2012;8/1/2012 ENTERED AND COPIES E-MAILED. (APPLIES TO C.A. 12-1023, 12-1024, 12-1025).(tjd) (Entered: 08/01/2012) |
| 08/02/2012 | 2965 | Short Form Complaint - Johnny/Beth McWilliams by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/02/2012) |
| 08/02/2012 | 2966 | Short Form Complaint - Mike Pearson by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/02/2012) |

| 08/02/2012 | 2967 | Short Form Complaint - Joe D. King by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/02/2012) |
| 08/02/2012 | 2968 | Short Form Complaint - Ricky A. Williams by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/02/2012) |
| 08/02/2012 | 2969 | Short Form Complaint - Michael Jones by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/02/2012) |
| 08/02/2012 | 2970 | Short Form Complaint - RJ Kors by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/02/2012) |
| 08/02/2012 | 2971 | Short Form Complaint - Hank Fraley by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/02/2012) |
| 08/02/2012 | 2972 | Amended Short Form Complaint - Mike Bass by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/02/2012) |
| 08/02/2012 | 2973 | Amended Short Form Complaint - Billy Bell by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/02/2012) |
| 08/02/2012 | 2974 | Short Form Complaint *of Robert L. Edwards and Tracy Henderson-Edwards* by PLAINTIFF(S). (VARGHESE, MANOJ) (Entered: 08/02/2012) |
| 08/02/2012 | 2975 | Short Form Complaint *of Kenneth B. Callicutt and Mary E. Callicutt* by PLAINTIFF(S). (VARGHESE, MANOJ) (Entered: 08/02/2012) |
| 08/02/2012 | 2976 | Short Form Complaint *of Byron K. Ingram and Stacy Ingram* by PLAINTIFF(S). (VARGHESE, MANOJ) (Entered: 08/02/2012) |
| 08/02/2012 | 2977 | Short Form Complaint *of Todd E. Kelly and Renee Kelly* by PLAINTIFF(S). (VARGHESE, MANOJ) (Entered: 08/02/2012) |
| 08/02/2012 | 2978 | Copy of Conditional Transfer Order (CTO-20) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: LA-E 2:12-1876. (tjd) (Entered: 08/02/2012) |
| 08/02/2012 | 2979 | STIPULATION *to Amend Complaint* by PLAINTIFF(S).**(COPY SENT TO CHAMBERS FOR APPROVAL)** (Attachments: # 1 Certificate of Service) (HEATHER, FRED) Modified on 8/28/2012 (tjd). (Entered: 08/02/2012) |
| 08/02/2012 | 2980 | AMENDED DOCUMENT by PLAINTIFF(S). *First Amended Complaint*. (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/02/2012) |
| 08/03/2012 | 2981 | AMENDED Short Form Complaint - John Elliott by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/03/2012) |
| 08/03/2012 | 2982 | Copy of Transfer Order from the JPML that pursuant to 28 U.S.C. 1407 this action is transferred to the ED-PA and assigned to the Honorable Anita B. Brody for inclusion in the coordinated or consolidated pretrial proceedings: Duerson, IL-N, 1:12-2513. (tjd) (Entered: 08/03/2012) |
| 08/03/2012 | 2983 | Short Form Complaint - Richard Anderson by PLAINTIFF(S). (SHUB, JONATHAN) (Entered: 08/03/2012) |
| 08/03/2012 | 2984 | Short Form Complaint - Jerry Wunsch by PLAINTIFF(S). (SHUB, JONATHAN) (Entered: 08/03/2012) |

**-204-**

| 08/06/2012 | 2985 | Short Form Complaint - *Dominic Austin* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 2986 | Short Form Complaint - *Stephen Avery* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 2987 | Short Form Complaint - *Jocelyn Borgella* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 2988 | Short Form Complaint - *Doug Chapman* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 2989 | Short Form Complaint - *Evan Cooper* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 2990 | Short Form Complaint - *Roosevelt Davis* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 2991 | Short Form Complaint - *Dermontti Dawson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 2992 | Short Form Complaint - *Dennis DeVaughn* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 2993 | Short Form Complaint - *Jim Duffner* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 2994 | Short Form Complaint - *Chad Fann* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 2995 | Short Form Complaint - *James Ford* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 2996 | Short Form Complaint - *Richard Graf* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 2997 | Short Form Complaint - *Jeff Graham* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 2998 | Short Form Complaint - *Melvin Gray* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 2999 | Short Form Complaint - *Clarence Jones* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3000 | Short Form Complaint - *Tim Kohn* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3001 | Short Form Complaint - *Nate Lewis* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3002 | Short Form Complaint - *Stacey Mack* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3003 | Short Form Complaint - *James Marshall* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3004 | Short Form Complaint - *David H. O'Brien* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |

| 08/06/2012 | 3005 | Short Form Complaint - *Ervin Parker* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
|---|---|---|
| 08/06/2012 | 3006 | Short Form Complaint - *Lawrence D. Pillers* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3007 | Short Form Complaint - *Elex Price, Sr.,* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3008 | Short Form Complaint - *Henry Rhodes* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3009 | Short Form Complaint - *John Sanders* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3010 | Short Form Complaint - *Greg Scott* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3011 | Short Form Complaint - *Ollie Smith* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3012 | Short Form Complaint - *Jonathan Staggers* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3013 | Short Form Complaint - *Frank Sutton* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3014 | Short Form Complaint - *Patrick Thomas* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3015 | Short Form Complaint - *Jeffrey Thomason* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3016 | Short Form Complaint - *Andrew Williams* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3017 | Short Form Complaint - *Maury Youmans* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3018 | Short Form Complaint - *Rickey Young* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3019 | Short Form Complaint - *Edmond Blevins* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/06/2012) |
| 08/06/2012 | 3020 | Short Form Complaint - Jonathan Arrington by PLAINTIFF(S). (SHUB, JONATHAN) (Entered: 08/06/2012) |
| 08/06/2012 | 3021 | *Short Form Complaint - Benjamin Scotti* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/06/2012) |
| 08/06/2012 | 3022 | *Short Form Complaint - Brad Booth* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/06/2012) |
| 08/06/2012 | 3023 | *Short Form Complaint - Brian C. Dudley* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/06/2012) |
| 08/06/2012 | 3024 | *Short Form Complaint - Chris Hale* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/06/2012) |

| 08/06/2012 | 3025 | *Short Form Complaint - Darryl Crane* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/06/2012) |
| 08/06/2012 | 3026 | *Short Form Complaint - Dennis and Stacey Clay* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/06/2012) |
| 08/06/2012 | 3027 | *Short Form Complaint - John and Ann Frances Jackson* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/06/2012) |
| 08/06/2012 | 3028 | *Short Form Complaint - Johnnie Morton* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/06/2012) |
| 08/06/2012 | 3029 | *Short Form Complaint - Kez McCorvey* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/06/2012) |
| 08/06/2012 | 3030 | *Short Form Complaint - Kurt Barber* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/06/2012) |
| 08/06/2012 | 3031 | *Short Form Complaint - Mike Sherrard* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/06/2012) |
| 08/06/2012 | 3032 | *Short Form Complaint - Norman and Stephanie Byers* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/06/2012) |
| 08/06/2012 | 3033 | *Short Form Complaint - Ralph Guglielmi* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/06/2012) |
| 08/06/2012 | 3034 | *Short Form Complaint - Stockar and Octavia McDougle* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/06/2012) |
| 08/06/2012 | 3035 | *Short Form Complaint - Toi and Kristine Cook* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 08/06/2012) |
| 08/07/2012 | 3036 | Copy of Conditional Transfer Order (CTO-22) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-N 5:12-3796; FL-S 1:12-22680; GA-N 1:12-2540, 12-2541; MI-E 2:12-13238. (tjd) (Entered: 08/08/2012) |
| 08/08/2012 | 3037 | Short Form Complaint *Carl Simpson* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/08/2012 | 3038 | Short Form Complaint *Alexander Cooper* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/08/2012 | 3039 | Short Form Complaint *Curtis Cotton* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/08/2012 | 3040 | Short Form Complaint *Dexter Carter* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/08/2012 | 3041 | Short Form Complaint *Dominic Douglas* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/08/2012 | 3042 | Short Form Complaint *Eric Butler* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/08/2012 | 3043 | Short Form Complaint *Gordon Bell* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |

| 08/08/2012 | 3044 | Short Form Complaint *Henry Dyer* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/08/2012 | 3045 | Short Form Complaint *Jon Autry* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/08/2012 | 3046 | Short Form Complaint *Joseph P. Howard-Johnson* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/08/2012 | 3047 | Short Form Complaint *Leonard Garrett* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/08/2012 | 3048 | Short Form Complaint *Chris Montane Smith and Billie Smith* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/08/2012 | 3049 | Short Form Complaint *Rydell Malancon, Sr. and Yvette Malancon* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/08/2012 | 3050 | Short Form Complaint *Sylvester Stamps* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/08/2012 | 3051 | Short Form Complaint *Willie Jackson* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/08/2012 | 3052 | Short Form Complaint *Corey Fuller* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/08/2012 | 3053 | Short Form Complaint *Michael Storey* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 08/08/2012) |
| 08/09/2012 | 3054 | Short Form Complaint - *John DiGiorgio* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/09/2012) |
| 08/09/2012 | 3055 | Short Form Complaint - *Ronald Dixon* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/09/2012) |
| 08/09/2012 | 3056 | Short Form Complaint - *Earl Gregory* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/09/2012) |
| 08/09/2012 | 3057 | Short Form Complaint - *Isaac Griffin* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/09/2012) |
| 08/09/2012 | 3058 | Short Form Complaint - *Jon Hand* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/09/2012) |
| 08/09/2012 | 3059 | Short Form Complaint - *Tim Massaquoi* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/09/2012) |
| 08/09/2012 | 3060 | Short Form Complaint - *Ricky Patton* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/09/2012) |
| 08/09/2012 | 3061 | Short Form Complaint - *Jay Williams* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/09/2012) |
| 08/09/2012 | 3062 | Short Form Complaint - *Sammy Williams* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/09/2012) |
| 08/09/2012 | 3063 | Short Form Complaint - Edwin Bailey by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |

| 08/09/2012 | 3064 | Short Form Complaint - Eric Bailey by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
|---|---|---|
| 08/09/2012 | 3065 | Short Form Complaint - Randall Beisler by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3066 | Short Form Complaint - Bobby Bell by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3067 | Short Form Complaint - Ron Billingsley by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3068 | Short Form Complaint - Gary Brown by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3069 | Short Form Complaint - Clifford Charlton by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3070 | Short Form Complaint - O.J. Childress by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3071 | Short Form Complaint - Michael Clark by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3072 | Short Form Complaint - Robert Clasby by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3073 | Short Form Complaint - Bruce Davis by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3074 | Short Form Complaint - Robert Duhon by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3075 | Short Form Complaint - Donald Dykes by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3076 | Short Form Complaint - Hart Dykes by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3077 | Short Form Complaint - Bruce Elia by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3078 | Short Form Complaint - Ricky Feacher by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3079 | Short Form Complaint - Tony Galbreath by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3080 | Short Form Complaint - Kerry Glenn by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3081 | Short Form Complaint - John Grant by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3082 | Short Form Complaint - Wesley Grant by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3083 | Short Form Complaint - Mack Herron by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |

| | | |
|---|---|---|
| 08/09/2012 | 3084 | Short Form Complaint - Robert Holt, Jr. by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3085 | Short Form Complaint - Roland Hooks and Debra Lynn Hooks, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3086 | Short Form Complaint - Melvin Hoover by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3087 | Short Form Complaint - Bobby Howard by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3088 | Short Form Complaint - Sherman Howard and Jeanette Howard, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3089 | Short Form Complaint - Robert Hubble and Annette Hubble, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3090 | Short Form Complaint - LaMonte Hunley and Stephanie Hunley, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3091 | Short Form Complaint - Grant Irons by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3092 | Short Form Complaint - Joe Bob Isbell by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3093 | Short Form Complaint - Robert Jackson, Jr. by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3094 | Short Form Complaint - Jeffery Jackson by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3095 | Short Form Complaint - Haywood Jeffires, II by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3096 | Short Form Complaint - Mark Jerue and Deborah Jerue, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3097 | Short Form Complaint - Malcolm Johnson and Joanne Johnson, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/09/2012 | 3098 | Short Form Complaint - Ron Johnson by PLAINTIFF(S). (RUDD, J.) (Entered: 08/09/2012) |
| 08/10/2012 | 3099 | Short Form Complaint - Adeyanju by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3100 | Short Form Complaint - Aldridge by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3101 | Short Form Complaint - Blackwell by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3102 | Short Form Complaint - Buckley by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3103 | Short Form Complaint - Cook by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |

**-210-**

| 08/10/2012 | 3104 | Short Form Complaint - Davis by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3105 | Short Form Complaint - Flanagan by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3106 | Short Form Complaint - Fraser by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3107 | Short Form Complaint - Ganther by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3108 | Short Form Complaint - Ghiaciuc by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3109 | Short Form Complaint - Green by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3110 | Short Form Complaint - Harper by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3111 | Short Form Complaint - Hilton by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3112 | Short Form Complaint - Ivy by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3113 | Short Form Complaint - Jackson by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3114 | Short Form Complaint - Johnson by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3115 | Short Form Complaint - Lacina by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3116 | Short Form Complaint - Leman by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3117 | Short Form Complaint - Lyons by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3118 | Short Form Complaint - Manley by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3119 | Short Form Complaint - McCall by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3120 | Short Form Complaint - Robert McQuarters by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3121 | Short Form Complaint - Mitchell by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3122 | Short Form Complaint - Mitchell by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3123 | Short Form Complaint - Moreno by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |

| 08/10/2012 | 3124 | Short Form Complaint - Palepoi by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
|---|---|---|
| 08/10/2012 | 3125 | Short Form Complaint - Roye by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3126 | Short Form Complaint - Salaam by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3127 | Short Form Complaint - Savage by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3128 | Short Form Complaint - Shepherd by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3129 | Short Form Complaint - Smith by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3130 | Short Form Complaint - Spachman by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3131 | Short Form Complaint - Tubbs by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3132 | Short Form Complaint - Wallace by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/10/2012 | 3133 | Short Form Complaint - Walter by PLAINTIFF(S). (COBEN, LARRY) (Entered: 08/10/2012) |
| 08/14/2012 | 3134 | Short Form Complaint - Richard Absher, Jr. and Katherine Absher, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3135 | Short Form Complaint - C. Martin "Marty" Amsler and Jean Amsler, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3136 | Short Form Complaint - Lawrence Anderson and Linda Anderson, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3137 | Short Form Complaint - Michael Attardi and Colleen Attardi, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3139 | Short Form Complaint - Ken Avery and Joella Avery, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3140 | Short Form Complaint - Edward Beard and Barbara Beard, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3141 | Short Form Complaint - Ceasar Belser and Lisa Belser, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3142 | Short Form Complaint - Guy Benjamin and Mary Chanel-Benjamin, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3143 | Short Form Complaint - Rufus Bess and Sonia Bess, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3144 | Short Form Complaint - Ervin "Sonny" Bishop and Maryann Bishop, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |

| 08/14/2012 | 3145 | Short Form Complaint - Leon Bright, Jr. and Tammy Bright, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3146 | Short Form Complaint - Eddie Brown and Nicole Brown, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3147 | Short Form Complaint - Boyd Brown, Jr. and Sheri Brown, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3148 | Short Form Complaint - Willie Buchanon and Gwendolyn Buchanon, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3149 | Short Form Complaint - Jeff Carlson and Galyn Carlson, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3150 | Short Form Complaint - David Casper and Susan Casper, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3151 | Short Form Complaint - Barney Chavous and Odessa Chavous, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3152 | Short Form Complaint - George Cumby and Rose Cumby, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3153 | Short Form Complaint - Richard Cunningham and Carole Cunningham, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3154 | Short Form Complaint - J. Lin Dawson and Margo Dawson, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3155 | Short Form Complaint - Charles DeJurnett and Alice DeJurnett, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3156 | Short Form Complaint - Thomas Dempsey and Ruth Charlene Dempsey, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3157 | Short Form Complaint - Alfred "Al" Denson and Geraldine Denson, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3158 | Short Form Complaint - Keith Denson and Debra Denson, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3159 | Short Form Complaint - Rickey Dixon and Lorraine Dixon, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3160 | Short Form Complaint - Dale Dodrill and Janette Dodrill, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3161 | Short Form Complaint - Richard Eber and Ellen Eber, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3162 | Short Form Complaint - Earl Edwards and Janice Edwards, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3163 | Short Form Complaint - Jay Evans and Pam Evans, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3164 | Short Form Complaint - Charles Ferguson and Janice Ferguson, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |

| 08/14/2012 | 3165 | Short Form Complaint - Judson Flint and Dianne Flint, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3166 | Short Form Complaint - Donald "Ike" Forte and Glenda Forte, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3167 | Short Form Complaint - Byron Franklin, Sr. and Meriam Franklin, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3168 | Short Form Complaint - Robert Fry and Vonnie Fry, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3169 | Short Form Complaint - Gary Glick and Colleen Glick, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3170 | Short Form Complaint - Tommy Graham by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3171 | Short Form Complaint - Earnest Gray and Helen Gray, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3172 | Short Form Complaint - Ryan Hannam and April Hannam, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3173 | Short Form Complaint - John Holland and Deborah Holland, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/14/2012 | 3174 | Short Form Complaint - David Hollis and Miyisha Hollis, his wife by PLAINTIFF(S). (RUDD, J.) (Entered: 08/14/2012) |
| 08/15/2012 | 3175 | Copy of Conditional Transfer Order (CTO-23) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: NY-S 1:12-5633; TX-S 4:12-2302. (tjd) (Entered: 08/15/2012) |
| 08/17/2012 | 3176 | Short Form Complaint - William Jones and Nicole Jones, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3177 | Short Form Complaint - Willie Jones by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3178 | Short Form Complaint - Jim Kelly and Diane Kelly, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3179 | Short Form Complaint - Brady Keys, Jr. and Anna Keys, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3180 | Short Form Complaint - Carl Lee, III and Donna Marie Lee, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3181 | Short Form Complaint - Darryll Lewis by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3182 | Short Form Complaint - Richard Lewis and Jane Frank, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3183 | Short Form Complaint - Andrew Livingston and Lorena Livingston, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3184 | Short Form Complaint - Bruce Maher and Gerda Maher, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |

| 08/17/2012 | 3185 | Short Form Complaint - Brison Manor, Jr. and DeLois Manor, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3186 | Short Form Complaint - Frank Marion, II and Patricia Marion, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3187 | Short Form Complaint - David Marshall and Lavinia Marshall, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3188 | Short Form Complaint - William Matthews and Barbara Matthews, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3189 | Short Form Complaint - Richard McCullough and Connie McCullough, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3190 | Short Form Complaint - Odis McKinney by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3191 | Short Form Complaint - Ron Medved and Calli Medved, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3192 | Short Form Complaint - Larry Mialik and Jane Mialik, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3193 | Short Form Complaint - Ernie Mills by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/17/2012) |
| 08/17/2012 | 3194 | Short Form Complaint - Peter Adams by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3195 | Short Form Complaint - Anthony Allen by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3196 | Short Form Complaint - Patrick Allen by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3197 | Short Form Complaint - Steve Atkins by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3198 | Short Form Complaint - Eric Brown by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3199 | Short Form Complaint - Thomas M. Brown by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3200 | Short Form Complaint - Joey Browner by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3201 | Short Form Complaint - Aloyouis Chesley by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3202 | Short Form Complaint - Mark Clayton by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3203 | Short Form Complaint - Robert Cornell by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3204 | Short Form Complaint - Delbert Cowsette by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |

| 08/17/2012 | 3205 | Short Form Complaint - Tyree Davis by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3206 | Short Form Complaint - Deon Dyer by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3207 | Short Form Complaint - Lawrence Eisenhauer by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3208 | Short Form Complaint - Neil Elshire by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3209 | Short Form Complaint - Stephen Fuller by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3210 | Short Form Complaint - Jeff George by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3211 | Short Form Complaint - Irv Goode by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3212 | Short Form Complaint - James Graham by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3213 | Short Form Complaint - Frank Grant by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3214 | Short Form Complaint - Charles Green by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3215 | Short Form Complaint - David Herman by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3216 | Short Form Complaint - Adam Herzing by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3217 | Short Form Complaint - Sylvester Hicks by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3218 | Short Form Complaint - Ronald Howard by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3219 | Short Form Complaint - Ezra Johnson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3220 | Short Form Complaint - William Johnson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3221 | Short Form Complaint - Edward Judie by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3222 | Short Form Complaint - Jonathan Keyworth by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3223 | Short Form Complaint - Scott Lefko by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3224 | Short Form Complaint - Aaron Martin by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |

**-216-**

| 08/17/2012 | 3225 | Short Form Complaint - Stafford Mays by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3226 | Short Form Complaint - Michael McBath by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3227 | Short Form Complaint - John Paul McCrumbly by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3228 | Short Form Complaint - Garald McDougall by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3229 | Short Form Complaint - Steve McMillon by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3230 | Short Form Complaint - Kim McQuilken by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3231 | Short Form Complaint - Tim Meamber by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3232 | Short Form Complaint - John Mendenhall by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3233 | Short Form Complaint - Pete Mikolajewski by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3234 | Short Form Complaint - Michael Montler by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3235 | Short Form Complaint - Martin Moss by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/17/2012) |
| 08/17/2012 | 3236 | Short Form Complaint - Gene Mruczkowski by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/18/2012) |
| 08/18/2012 | 3237 | Short Form Complaint - Spain Musgrove by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/18/2012) |
| 08/18/2012 | 3238 | Short Form Complaint - John Niland by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/18/2012) |
| 08/18/2012 | 3239 | Short Form Complaint - Burgess Owens by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/18/2012) |
| 08/18/2012 | 3240 | Short Form Complaint - Solomon Page by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/18/2012) |
| 08/18/2012 | 3241 | Short Form Complaint - Vito Parilli by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/18/2012) |
| 08/18/2012 | 3242 | Short Form Complaint - Lonnie Perrin by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/18/2012) |
| 08/18/2012 | 3243 | Short Form Complaint - Duane Putnam by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/18/2012) |
| 08/18/2012 | 3244 | Withdrawal of Short Form Complaint - Lavonya Quintelle Carter by PLAINTIFF(S). (LEH, MICHAEL) (Entered: 08/18/2012) |

**-217-**

| | | |
|---|---|---|
| 08/18/2012 | 3245 | Withdrawal of Short Form Complaint - C. Martin Amsler and Jean Amsler by PLAINTIFF(S). (LEH, MICHAEL) (Entered: 08/18/2012) |
| 08/18/2012 | 3246 | Short Form Complaint - Ricky Ray by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/18/2012) |
| 08/18/2012 | 3247 | Short Form Complaint - Kyle Richardson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/18/2012) |
| 08/18/2012 | 3248 | Short Form Complaint - Martin Sartin by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/18/2012) |
| 08/18/2012 | 3249 | Short Form Complaint - Virgil Seay by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/18/2012) |
| 08/18/2012 | 3250 | Short Form Complaint - Rod Sherman by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/18/2012) |
| 08/19/2012 | 3251 | Short Form Complaint - Derek Smith by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/19/2012 | 3252 | Short Form Complaint - Jesse Daley Smith by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/19/2012 | 3253 | Short Form Complaint - Kevin Smith by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/19/2012 | 3254 | Short Form Complaint - Ken Stabler by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/19/2012 | 3255 | Short Form Complaint - John Stufflebeem by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/19/2012 | 3256 | Short Form Complaint - Galand Thaxton by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/19/2012 | 3257 | Short Form Complaint - Dexter Tisby by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/19/2012 | 3258 | Short Form Complaint - Marcus Turner by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/19/2012 | 3259 | Short Form Complaint - Thomas Turnure by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/19/2012 | 3260 | Short Form Complaint - Ted Vactor by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/19/2012 | 3261 | Short Form Complaint - Ross Verba by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/19/2012 | 3262 | Short Form Complaint - Richard Volk by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/19/2012 | 3263 | Short Form Complaint - Harmon Wages by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/19/2012 | 3264 | Short Form Complaint - Mark Washington by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |

| 08/19/2012 | 3265 | Short Form Complaint - Michael Wilcher by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/19/2012 | 3266 | Short Form Complaint - Tyrone Young by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/19/2012 | 3267 | Short Form Complaint - Lance Zeno by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/19/2012) |
| 08/20/2012 | 3268 | Short Form Complaint - Billy Milner by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3269 | Short Form Complaint - Roderick Milstead, Jr. by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3270 | Short Form Complaint - Orson Mobley by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3271 | Short Form Complaint - Robert Moore and Cassandra Moore, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3272 | Short Form Complaint - Jack Morris and Lois Morris, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3273 | Short Form Complaint - Larry Craig Morton and Kym Galloway, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3274 | Short Form Complaint - Jesse Penn, II and Penny Penn, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3275 | Short Form Complaint - Vernon Pinkney and Rose Pinkney, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3276 | Short Form Complaint - Ray Pinney by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3277 | Short Form Complaint - Tony Plummer and Carolyn Plummer, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3278 | Short Form Complaint - Derrick Ramsey and Jalcia Ramsey, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3279 | Short Form Complaint - Kenyon Rasheed and Traci Wiedenfeld-Rasheed, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3280 | Short Form Complaint - Donald Ratliff by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3281 | Short Form Complaint - John Reece, III and Elianna Reece, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3282 | Short Form Complaint - Elston Ridgle by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3283 | Short Form Complaint - Gerald Riggs and Sherry Blanton-Riggs, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3284 | Short Form Complaint - C.R. Roberts and Yvonne Roberts, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |

| 08/20/2012 | 3285 | Short Form Complaint - Gerald Robinson and Melissa Robinson, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3286 | Short Form Complaint - Roger Rosema and Darlene Rosema, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3287 | Short Form Complaint - Louis Ross and Arnetta Ross, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3288 | Short Form Complaint - Reggie Rusk and Felicia Hanlon-Rusk, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3289 | Short Form Complaint - William Russell, III and Joanne Russell, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3290 | Short Form Complaint - Ricky Shaw by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3291 | Short Form Complaint - H.R. Silvagni and Jo Silvagni, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3292 | Short Form Complaint - Keith Simpson and Rose Simpson, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3293 | Short Form Complaint - Otis Sistrunk and Carol Green-Sistrunk, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3294 | Short Form Complaint - Antoinette Pellegrini, Executrix for the Estate of Robert Pellegrini by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 08/20/2012) |
| 08/20/2012 | 3295 | Short Form Complaint - George Small by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3296 | Short Form Complaint - Edwin Smith and Pia Dennis Smith, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3297 | ORDER THAT UPON THE SUGGESTION OF DEATH FILED BY MARLENE H. TUBBS THE MOTION 265 FOR SUBSTITUTION OF PARTIES IN C.A. 12-2802 IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 8/20/2012;8/20/2012 ENTERED AND COPIES E-MAILED. (APPLIES TO C.A. 12-2802).(tjd) (Entered: 08/20/2012) |
| 08/20/2012 | 3298 | Short Form Complaint - Richard Smith and Jacqueline Smith, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3299 | Short Form Complaint - Angelo Snipes and Detter Willingham-Snipes, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3300 | Short Form Complaint - David Spates by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3301 | Short Form Complaint - William Stanfill and Gail Stanfill, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3302 | Short Form Complaint - Andre Stevenson by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3303 | Short Form Complaint - Lemuel Stinson by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |

| 08/20/2012 | 3304 | Short Form Complaint - Ron Stone and Roxanne Stone, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3305 | Short Form Complaint - Calvin Sweeney and Zivia Sweeney, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3306 | Short Form Complaint - Walt Sweeney and Nancy Sweeney, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3307 | Short Form Complaint - Myron Taliaferro and Kathleen Taliaferro, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3308 | Short Form Complaint - Eric Thomas by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3309 | Short Form Complaint - Norman Thompson, Sr. and Gwendolyn Thompson, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3310 | Short Form Complaint - Patrick Tilley by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3311 | Short Form Complaint - Andre Tillman and Patricia Tillman, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3312 | Short Form Complaint - Willie Tolbert and Terrie Tolbert, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3313 | Short Form Complaint - Floyd Turner, Jr. and Lorri Turner, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3314 | Short Form Complaint - Richard Van Druten by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3315 | Short Form Complaint - Val Joe Walker and Sally Harris Walker, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3316 | Short Form Complaint - Keith Washington and Bridget Washington, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3317 | Short Form Complaint - Clarence Williams and Icy Williams, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3318 | Short Form Complaint - Jeffrey Winans by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3319 | Short Form Complaint - Sammy Winder and Filista Winder, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3320 | Short Form Complaint - Richard Wood and Karen Wood, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3321 | Short Form Complaint - Elbert Woods by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3322 | Short Form Complaint - Donnell Woolford by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | 3323 | Short Form Complaint - Nasrallah Worthen and Monique Worthen, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |

**-221-**

| 08/20/2012 | [3324](#) | Short Form Complaint - Keith Wortman and Kathleen Wortman, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | [3325](#) | Short Form Complaint - Mack Yoho by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/20/2012 | [3326](#) | Short Form Complaint - Robert Young and Latricia Nicole Evans-Young, his wife by PLAINTIFF(S). (GUDMUNDSON, BRIAN) (Entered: 08/20/2012) |
| 08/21/2012 | [3327](#) | Short Form Complaint--Lawyer Milloy and Claudine Milloy, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3328](#) | Short Form Complaint--Brandon Moore and Sheree Moore, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3329](#) | Short Form Complaint--Stephen Alexander and Amanda Alexander, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3330](#) | Short Form Complaint--Frederick Beasley and Jackie Beasley, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3331](#) | Short Form Complaint--John Bronson and Dawn Bronson, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3332](#) | Short Form Complaint--Robert Burnett and Marianella Burnett, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3333](#) | Short Form Complaint--Larry Chester and Nicole Chester, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3334](#) | Short Form Complaint--Darius N. Clark and Angela Clark, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3335](#) | Short Form Complaint--James R. Conrad and Keisha Conrad, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3336](#) | Short Form Complaint--Kirby Dar Dar and Nanette Dar Dar, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3337](#) | Short Form Complaint--Randy Dixon and Patricia Dixon, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3338](#) | Short Form Complaint--Gary Dunn and Caron Dunn, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3339](#) | Short Form Complaint--Kyle Eckel and Tatiana Eckel, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3340](#) | Short Form Complaint--Anthony G. Fitzpatrick and Sherri Fitzpatrick, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3341](#) | Short Form Complaint--Zeron Flemister and Corie Flemister, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3342](#) | Short Form Complaint--Charlie Garner, III and Angela Garner, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | [3343](#) | Short Form Complaint--John Harty and Monica Harty, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |

| | | |
|---|---|---|
| 08/21/2012 | 3344 | Short Form Complaint--Eric C. Hickson, Sr. and Keisha Hickson, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3345 | Short Form Complaint--James Jett and Amy Jett, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3346 | Short Form Complaint--Olrick Johnson and Amirah Johnson, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3347 | Short Form Complaint--William Leon Johnson and Venessa Johnson, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3348 | Short Form Complaint--Lawrence Kubin and Mary Kubin, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3349 | Short Form Complaint--Eddie Lee Mason and Sonya RS Mason, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3350 | Short Form Complaint--Jerome McDougle and Jaceaite McDougle, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3351 | Short Form Complaint--Alvin McKinley and Ebony McKinley, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3352 | Short Form Complaint--Kelvin Porter and Annjela Porter, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3353 | Short Form Complaint--Fred Robinson and Brenda Robinson, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3354 | Short Form Complaint--Tyrone Rogers and Vonita Rogers, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3355 | Short Form Complaint--Philip "P.K." Sam and Nicole Sam, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3356 | Short Form Complaint--Scott Schewedes and Jodi Schewedes, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3357 | Amended Short Form Complaint - *Melvin Gray and Toni M. Gray* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/21/2012) |
| 08/21/2012 | 3358 | Short Form Complaint--Ian Scott and Crystal Scott, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3359 | Short Form Complaint--Tawambi Settles and Melanie Settles, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3360 | Short Form Complaint--Bobby Singh and Alexis Singh, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3361 | Short Form Complaint--Thomas Tapeh and Jovan Tapeh, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3362 | Short Form Complaint--Craig Terrill and Rachel Terrill, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3363 | Short Form Complaint--Lamont Thompson and Vineta Thompson, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |

| 08/21/2012 | 3364 | Short Form Complaint--Robert Wade, Jr. and Thezaray Wade, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3365 | Short Form Complaint--Aaron Walker and Michelle Walker, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3366 | Short Form Complaint--Frank Wainwright and Stacie T. Wainwright, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3367 | Short Form Complaint--Victor Allotey by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3368 | Short Form Complaint--Kimble Anders by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3369 | Short Form Complaint--Stevie Anderson by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3370 | Short Form Complaint--Anthony Ray Anderson by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3371 | Short Form Complaint--Jamie Asher by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3372 | Short Form Complaint--John Booty by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3373 | Short Form Complaint--Larry Bowie by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3374 | Short Form Complaint--Stephen Boyd by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3375 | Short Form Complaint--Kerry Carter by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3376 | Short Form Complaint--Rafael Cooper by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3377 | Short Form Complaint--Damane Duckett by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3378 | Short Form Complaint--Ryan Fowler by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3379 | Short Form Complaint - John E. Browning, II by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/21/2012) |
| 08/21/2012 | 3380 | Short Form Complaint - Arlen/Heather Harris by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/21/2012) |
| 08/21/2012 | 3381 | Short Form Complaint - Everett Lindsay by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/21/2012) |
| 08/21/2012 | 3382 | Short Form Complaint - Terrence O. Metcalf by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/21/2012) |
| 08/21/2012 | 3383 | Short Form Complaint - William Roaf by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/21/2012) |

| 08/21/2012 | 3384 | ORDER THAT PLAINTIFFS' MOTION 40 FOR DISCOVERY IS DENIED WITHOUT PREJUDICE. SIGNED BY HONORABLE ANITA B. BRODY ON 8/20/2012; 8/21/2012 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS).(tjd) Modified on 8/21/2012 (tjd). (Entered: 08/21/2012) |
|---|---|---|
| 08/21/2012 | 3385 | Short Form Complaint--Cortez Hankton, Jr. by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3386 | Short Form Complaint--Andre Hardy by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3387 | Short Form Complaint--Leon Joe by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3388 | Short Form Complaint--Ted Johnson by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3389 | Short Form Complaint--Thomas E. Johnson by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3390 | Short Form Complaint--Ellis Johnson by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3391 | Short Form Complaint--Thomas Jones by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3392 | Short Form Complaint--Tyrone Jones by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3393 | Short Form Complaint--Ethan Kelley by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3394 | Short Form Complaint--Kamil Loud by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3395 | Short Form Complaint--John Madsen by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3396 | Short Form Complaint--Mike Mamula by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3397 | Short Form Complaint--Eric Matthews by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3398 | Short Form Complaint--Corey Mays by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3399 | Short Form Complaint--Michael C. McCrary by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3400 | Short Form Complaint--Devon McDonald by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3401 | Short Form Complaint--Kawika Mitchell by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3402 | Short Form Complaint--Donte Nicholson by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |

| 08/21/2012 | 3403 | Short Form Complaint--Herb Orvis by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3404 | Short Form Complaint--Willie Pile by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3405 | Short Form Complaint--Dennis Ransom by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3406 | Short Form Complaint--Joseph Tuipala by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3407 | Short Form Complaint--Raymond D. Wallace by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3408 | Short Form Complaint--Klaus Wilmsmeyer by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/21/2012 | 3409 | Short Form Complaint--Al Wilson by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 08/21/2012) |
| 08/23/2012 | 3410 | Short Form Complaint - James Folston by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/23/2012) |
| 08/23/2012 | 3411 | Short Form Complaint - Roger Anderson, Senior by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3412 | Short Form Complaint - Joseph Beauchamp by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3413 | Short Form Complaint - David Cadigan by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3414 | Short Form Complaint - Jim Collins by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3415 | Short Form Complaint - Craig Cotton by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3416 | Short Form Complaint - Johnnie Dirden by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3417 | Short Form Complaint - Hugh Douglas by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3418 | Short Form Complaint - Reuben Droughns by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3419 | Short Form Complaint - Leslie Duncan by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3420 | Short Form Complaint - Clarence Duren by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3421 | Short Form Complaint - Earle Faison by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3422 | Short Form Complaint - Brett Faryniarz by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |

| 08/23/2012 | 3423 | Short Form Complaint - Bob Gagliano by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3424 | Short Form Complaint - Edward Galigher by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3425 | Short Form Complaint - Willie Germany by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3426 | Short Form Complaint - Hubert Ginn by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3427 | Short Form Complaint - Andrew Gissinger by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3428 | Short Form Complaint - Wilfred Grant by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3429 | Short Form Complaint - Matthew Hatchette by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3430 | Short Form Complaint - Michael Jameson, Junior by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3431 | Short Form Complaint - Jon Jaqua by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3432 | Short Form Complaint - Reginald Johnson by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3433 | Short Form Complaint - Myron Jones by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3434 | Short Form Complaint - Michael Kadish by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3435 | Short Form Complaint - Joe Kapp by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3436 | Short Form Complaint - Paul Lowe by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3437 | Short Form Complaint - Dennis McKinley by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3438 | Short Form Complaint - Tom Myers by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3439 | Short Form Complaint - Jim Peterson by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3440 | Short Form Complaint - Robert Petrich by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3441 | Short Form Complaint - Michael Pittman by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3442 | Short Form Complaint - Marvin Smith by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |

| 08/23/2012 | 3443 | Short Form Complaint - Terrelle Smith by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3444 | Short Form Complaint - Timothy Stokes by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3445 | Short Form Complaint - Walt Sweeney by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3446 | Short Form Complaint - Tamarick Vanover by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3447 | Short Form Complaint - James Washington by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3448 | Short Form Complaint - Richard Westmoreland by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3449 | Short Form Complaint - Nathaniel Whitmyer by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3450 | Short Form Complaint - Eric Williams by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/23/2012 | 3451 | Short Form Complaint - Eric Williams by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/23/2012) |
| 08/24/2012 | 3452 | MOTION for Leave to File Excess Pages (Uncontested) filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.Certificate of Counsel, Certificate of Service. (Attachments: # 1 Text of Proposed Order)(MCCLELLAN, NATHAN) (Entered: 08/24/2012) |
| 08/24/2012 | 3453 | Short Form Complaint - Booker and Jacqueline Brown by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/24/2012) |
| 08/24/2012 | 3454 | Short Form Complaint - William and Lisa Becker Cesare by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/24/2012) |
| 08/24/2012 | 3455 | Short Form Complaint - Mark and Carol Cotney by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/24/2012) |
| 08/24/2012 | 3456 | Short Form Complaint - Sam "Bam" Cunningham by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/24/2012) |
| 08/24/2012 | 3457 | Short Form Complaint - Michael and Toni Dennis by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/24/2012) |
| 08/24/2012 | 3458 | Short Form Complaint - Parnell and Ernestine Dickinson by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/24/2012) |
| 08/24/2012 | 3459 | Short Form Complaint - Alvin Garrett by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/24/2012) |
| 08/24/2012 | 3460 | Short Form Complaint - Cecil Johnson and Octavia Little by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/24/2012) |
| 08/24/2012 | 3461 | Short Form Complaint - Charlie Phillips by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/24/2012) |
| 08/24/2012 | 3462 | Short Form Complaint - George Ragsdale by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/24/2012) |

| 08/24/2012 | 3463 | Short Form Complaint - Danny and Kimberly Reece by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/24/2012) |
| 08/24/2012 | 3464 | Short Form Complaint - Jim Wilks by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/24/2012) |
| 08/27/2012 | 3465 | Short Form Complaint - Mary Riehm by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/27/2012) |
| 08/27/2012 | 3466 | Amended Short Form Complaint - Darrius Johnson by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/27/2012) |
| 08/27/2012 | 3467 | Amended Short Form Complaint - Michael Obrovac by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/27/2012) |
| 08/27/2012 | 3468 | Amended Short Form Complaint - Rick and Donna Upchurch by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/27/2012) |
| 08/27/2012 | 3469 | Amended Short Form Complaint - Alphonso & Tessie Williams by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/27/2012) |
| 08/28/2012 | 3470 | MOTION to Appoint Counsel *Robert C. Heim as Co-Liason Counsel* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.Certificate of Service.(MCCLELLAN, NATHAN) (Entered: 08/28/2012) |
| 08/28/2012 | 3471 | Short Form Complaint for Rashad Bauman and Veronica Bauman by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3472 | Short Form Complaint for John W. Beasley and Patricia A. Beasley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3473 | Short Form Complaint for Jeff Blackshear by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3474 | Short Form Complaint for Carlton Brewster by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3475 | Short Form Complaint for Joseph Campbell, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3476 | Short Form Complaint for Fred H. Cook III by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3477 | Short Form Complaint for Corey V. Croom by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3478 | Short Form Complaint for Patrick "Rick" Cunningham and Debbie G. Cunningham by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3479 | Short Form Complaint for Timothy Daniel by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3480 | Short Form Complaint for Ennis R. Davis II by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3481 | Short Form Complaint for Michael Davis by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3482 | Short Form Complaint for Kevin Devine by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |

**-229-**

| 08/28/2012 | 3483 | Short Form Complaint for Arnold Fields and Olga Fields by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3484 | Short Form Complaint for Laurie Finnie, Personal Rep. for Rogers L. Finnie, Deceased by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3485 | Short Form Complaint for Darrell Ford by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3486 | Short Form Complaint for Donald Frank by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3487 | Short Form Complaint for Larry Foster by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3488 | Short Form Complaint for David Gibson and Jennifer Gibson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3489 | Short Form Complaint for Isaac Hagins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3490 | Short Form Complaint for Nathaniel Hemsley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3491 | Short Form Complaint for Othello Henderson III by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3492 | Short Form Complaint for Kenneth Herock and Antoinette Herock by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3493 | Short Form Complaint for Jessie Lee Hester and Gerlienus Hester by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3494 | Short Form Complaint for Dallas Hickman and Celeste Hickman by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3495 | Short Form Complaint for Gaylon Hyder and Melinda Hyder by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3496 | Short Form Complaint for Eddie Lee Ivery and Antoinette Ivery by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3497 | Short Form Complaint for Stephen W. Jackson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3498 | Short Form Complaint for William Jaco and Joan Jaco by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3499 | Short Form Complaint for Dirk Johnson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3500 | Short Form Complaint for John Kaiser and Resa Kaiser by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3501 | Short Form Complaint for James L. Marshall and Susan Landwehr Marshall by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3502 | Short Form Complaint for Corey Mayfield and Tonia Mayfield by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |

**-230-**

| 08/28/2012 | 3503 | Short Form Complaint for David McMillan, III by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3504 | Short Form Complaint for Erik Norgard and Lisa Norgard by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3505 | Short Form Complaint for Marvin D. Owens and Romell Foster-Owens by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3506 | Short Form Complaint for Ricky D. Parker by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3507 | STIPULATION *for Second Amended Complaint* by PLAINTIFF(S).**(COPY SENT TO CHAMBERS FOR APPROVAL)** (Attachments: # 1 Certificate of Service) (HEATHER, FRED) Modified on 8/28/2012 (tjd). (Entered: 08/28/2012) |
| 08/28/2012 | 3508 | Short Form Complaint for Marion Todd Peat and Jana Dolinsek-Peat by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3509 | Short Form Complaint for Charles Pharms III by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3510 | Short Form Complaint for Damon Pieri and Jennifer Pieri by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3511 | Short Form Complaint for Juan A. Roque and Jennifer Roque by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3512 | Short Form Complaint for Willard Scissum and Andreuille Scissum by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3513 | Short Form Complaint for Jason Shelley and Janine Shelley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3514 | Short Form Complaint for Omar Smith and Rachel Smith by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3515 | Short Form Complaint for Trent Smith by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3516 | Short Form Complaint for Alphonso Taylor and Heather Taylor by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3517 | Short Form Complaint *for Anthony Wallace and Keisha Wallace* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3518 | Short Form Complaint *for Wesley Walls and Christy Walls* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3519 | Short Form Complaint for Derek Ware and Vivian Ware by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3520 | Short Form Complaint for Tina Ricks, Personal Rep. of Estate of Andre M. Waters by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3521 | Short Form Complaint for Kenny Watson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3522 | Short Form Complaint for Jonathan Wells by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |

| 08/28/2012 | 3523 | Short Form Complaint for Kenneth Wheaton and Franchell Wheaton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
|---|---|---|
| 08/28/2012 | 3524 | Short Form Complaint for James David Wilkins, II by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3525 | Short Form Complaint for David Williams and Laurie Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3526 | Short Form Complaint for Lester Joe Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3527 | Short Form Complaint for Sirmawn Wilson and Heather Wilson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3528 | Short Form Complaint for Scott Zimmerman and Lindsey Zimmerman by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3529 | Short Form Complaint *for Eric Zomalt and Cynthia Zomalt* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/28/2012) |
| 08/28/2012 | 3530 | ORDER... that THE PAGE LIMIT FOR THE FORTHCOMING MOTIONS TO DISMISS ON PREEMPTION GROUNDS TO BE FILED BY THE NFL DEFENDANTS AND THE RIDDELL DEFENDANTS SHALL BE INCREASED TO 35 PAGES. IT IS FURTHER ORDERED that THE PAGE LIMITS FOR PLAINTIFFS' RESPONSES TO THOSE MOTIONS SHALL BE INCREASED TO 35 PAGES.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/27/2012.8/28/2012 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) (Entered: 08/28/2012) |
| 08/28/2012 | 3531 | Short Form Complaint - William Ard and Martha Ard by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3532 | Short Form Complaint - William Banks by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3533 | Short Form Complaint - Avion Black and Shakeyah Black by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3534 | Short Form Complaint - Dieter Ralph Brock and Jamie Brock by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3535 | Short Form Complaint - Charles E. Brown and Sarah Brown by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3536 | Short Form Complaint - Ronney Daniels and Mecoya Daniels by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3537 | Short Form Complaint - Dwight Drane and Vicki L. Drane by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3538 | Short Form Complaint - Doug Dubose by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3539 | Short Form Complaint - Keldrick Dunn by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3540 | Short Form Complaint - Glen Edwards by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |

| 08/28/2012 | 3541 | Short Form Complaint - Lethon Flowers, III by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3542 | Short Form Complaint - David Frye by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3543 | Short Form Complaint - Dwight E. Garner and Vida Garner by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3544 | Short Form Complaint - Glenn M. Glass and Rebecca B. Glass by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3545 | Short Form Complaint - Tom Hannon and Joyce Hannon by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3546 | Short Form Complaint - Estus Hood, III and Diane Hood by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3547 | Short Form Complaint - Pat Howell and Michelle Howell by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3548 | Short Form Complaint - Bradley Hubbert by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3549 | Short Form Complaint - Robert D. Hudson Sr. by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3550 | Short Form Complaint - Larron D. Jackson and Harriett Williams-Jackson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3551 | Short Form Complaint - Edward Jasper by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3552 | Short Form Complaint - Henry Johnson and Amika Johnson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3553 | Short Form Complaint - Roderick Jones and Carla Jones by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3554 | Short Form Complaint - Joe Kelly by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/28/2012 | 3555 | Short Form Complaint - Richard S. Lasse and Dorothy Lasse by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/28/2012) |
| 08/29/2012 | 3556 | Short Form Complaint - Sean S. Love and Renee Love by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3557 | Short Form Complaint - Loyd Lowe and Ann Lowe by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3558 | Short Form Complaint - Ronald E. Mabra, Sr. by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3559 | Short Form Complaint - Alvoid Mays by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3560 | Short Form Complaint - Jerry Dewayne Mays and Gloria Mays by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |

| 08/29/2012 | 3561 | Short Form Complaint - LeCharls McDaniel and Sheryl McDaniel by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3562 | Short Form Complaint - Terdell Middleton by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3563 | Short Form Complaint - Adesola Moronkola by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3564 | Short Form Complaint - Michael Nattiel by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3565 | Short Form Complaint - Anthony Peters and Jewell Peters by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3566 | Short Form Complaint - Terry M. Peters and Arva Peters by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3567 | Short Form Complaint - Tyrell Peters by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3568 | Short Form Complaint - Ted Petersen and Marian Petersen by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3569 | Short Form Complaint - Zachary Piller by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3570 | Short Form Complaint - Frank R. Reed and Delbra Reed by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3571 | Short Form Complaint - Matthew Rice by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3572 | Short Form Complaint - Damien Robinson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3573 | Short Form Complaint - Jeroy Robinson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3574 | Short Form Complaint - Johnny D. Robinson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3575 | Short Form Complaint - Benjamin Rudolph and Leslie Rudolph by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3576 | Short Form Complaint - Eric Sanders and Irene Sanders by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3577 | Short Form Complaint - Lonnie Sanders and Anita Sanders by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3578 | Short Form Complaint - Elbert Vernell Shelley by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3579 | Short Form Complaint - Roy Franklin Simmons by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3580 | Short Form Complaint - Kinnon R. Tatum, II by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |

| 08/29/2012 | 3581 | Short Form Complaint - Jack Trudeau by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
|---|---|---|
| 08/29/2012 | 3582 | Short Form Complaint - Benjamin Michael Utt and Elizabeth Utt by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3583 | Short Form Complaint - Robert P. Williams and Linda Williams by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3584 | Short Form Complaint - Bobby Wilson and Crystal Wilson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 08/29/2012) |
| 08/29/2012 | 3585 | Short Form Complaint - Derrick Walker by PLAINTIFF(S). (COSTA, DAVID) (Entered: 08/29/2012) |
| 08/29/2012 | 3586 | Copy of Conditional Transfer Order (CTO-25) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: NY-S 1:12-6191; TX-S 4:12-2395. (tjd) (Entered: 08/29/2012) |
| 08/29/2012 | 3587 | ORDER - UPON CONSIDERATION OF THE UNCONTESTED MOTI0N FOR APPOINTMENT OF CO-LIAISON COUNSEL FILED BY THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC (COLLECTIVELY, THE "NFL DEFENDANTS"), IT IS HEREBY ORDERED THAT ROBERT C. HEIM IS APPOINTED CO-LIAISON COUNSEL FOR THENFL DEFENDANTS.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/28/2012.8/29/2012 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) (Entered: 08/29/2012) |
| 08/30/2012 | 3588 | Amended Short Form Complaint - Mary Riehm by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/30/2012) |
| 08/30/2012 | 3589 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *The Amended Master Administrative Long-Form Complaint* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.Certificate of Service. (Attachments: # 1 Memorandum of Law, # 2 Text of Proposed Order, # 3 Declaration of Dennis L. Curran, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3-1, # 7 Exhibit 3-2, # 8 Exhibit 4-1, # 9 Exhibit 4-2, # 10 Exhibit 4-3, # 11 Exhibit 5-1, # 12 Exhibit 5-2, # 13 Exhibit 5-3, # 14 Exhibit 6-1, # 15 Exhibit 6-2, # 16 Exhibit 6-3, # 17 Exhibit 6-4, # 18 Exhibit 6-5, # 19 Exhibit 6-6, # 20 Exhibit 6-7, # 21 Exhibit 6-8, # 22 Exhibit 6-9, # 23 Exhibit 7-1, # 24 Exhibit 7-2, # 25 Exhibit 7-3, # 26 Exhibit 7-4, # 27 Exhibit 7-5, # 28 Exhibit 7-6, # 29 Exhibit 7-7, # 30 Exhibit 7-8, # 31 Exhibit 7-9, # 32 Exhibit 7-10, # 33 Exhibit 7-11, # 34 Exhibit 8-1, # 35 Exhibit 8-2, # 36 Exhibit 8-3, # 37 Exhibit 8-4, # 38 Exhibit 8-5, # 39 Exhibit 8-6, # 40 Exhibit 8-7, # 41 Exhibit 8-8, # 42 Exhibit 8-9, # 43 Exhibit 8-10, # 44 Exhibit 8-11, # 45 Exhibit 8-12, # 46 Exhibit 9-1, # 47 Exhibit 9-2, # 48 Exhibit 9-3, # 49 Exhibit 9-4, # 50 Exhibit 9-5, # 51 Exhibit 9-6, # 52 Exhibit 9-7, # 53 Exhibit 9-8, # 54 Exhibit 9-9, # 55 Exhibit 9-10, # 56 Exhibit 9-11, # 57 Exhibit 9-12, # 58 Exhibit 9-13, # 59 Exhibit 10-1, # 60 Exhibit 10-2, # 61 Exhibit 10-3, # 62 Exhibit 10-4, # 63 Exhibit 10-5, # 64 Exhibit 10-6, # 65 Exhibit 10-7, # 66 Exhibit 10-8, # 67 Exhibit 10-9, # 68 Exhibit 10-10, # 69 Exhibit 10-11, # 70 Exhibit 10-12, # 71 Exhibit 11-1, # 72 Exhibit 11-2, # 73 Exhibit 11-3, # 74 Exhibit 11-4, # 75 Exhibit 11-5, # 76 Exhibit 11-6, # 77 Exhibit 11-7, # 78 Exhibit 11-8, # 79 Exhibit 11-9, # 80 Exhibit 11-10, # 81 Exhibit 11-11, # 82 Exhibit 11-12, # 83 Exhibit 11-13, # 84 Exhibit 11-14, # 85 Exhibit 11-15, # 86 Exhibit 11-16, # 87 Exhibit 11-17, # 88 Exhibit 11-18, # 89 Exhibit 11-19, # 90 Exhibit 11-20, # 91 Exhibit 12-1, # 92 Exhibit 12-2, # 93 Exhibit 12-3, # 94 Exhibit 12-4, # 95 Exhibit 13, # 96 Exhibit 14-1, # 97 Exhibit 14-2, # 98 Exhibit 14-3, # 99 Exhibit 14-4)(MCCLELLAN, NATHAN) (Entered: 08/30/2012) |

| | | |
|---|---|---|
| 08/30/2012 | 3590 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *The Master Administrative Class Action Complaint* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.Certificate of Service. (Attachments: # 1 Memorandum of Law, # 2 Text of Proposed Order, # 3 Declaration of Dennis L. Curran, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3-1, # 7 Exhibit 3-2, # 8 Exhibit 4-1, # 9 Exhibit 4-2, # 10 Exhibit 4-3, # 11 Exhibit 5-1, # 12 Exhibit 5-2, # 13 Exhibit 5-3, # 14 Exhibit 6-1, # 15 Exhibit 6-2, # 16 Exhibit 6-3, # 17 Exhibit 6-4, # 18 Exhibit 6-5, # 19 Exhibit 6-6, # 20 Exhibit 6-7, # 21 Exhibit 6-8, # 22 Exhibit 6-9, # 23 Exhibit 7-1, # 24 Exhibit 7-2, # 25 Exhibit 7-3, # 26 Exhibit 7-4, # 27 Exhibit 7-5, # 28 Exhibit 7-6, # 29 Exhibit 7-7, # 30 Exhibit 7-8, # 31 Exhibit 7-9, # 32 Exhibit 7-10, # 33 Exhibit 7-11, # 34 Exhibit 8-1, # 35 Exhibit 8-2, # 36 Exhibit 8-3, # 37 Exhibit 8-4, # 38 Exhibit 8-5, # 39 Exhibit 8-6, # 40 Exhibit 8-7, # 41 Exhibit 8-8, # 42 Exhibit 8-9, # 43 Exhibit 8-10, # 44 Exhibit 8-11, # 45 Exhibit 8-12, # 46 Exhibit 9-1, # 47 Exhibit 9-2, # 48 Exhibit 9-3, # 49 Exhibit 9-4, # 50 Exhibit 9-5, # 51 Exhibit 9-6, # 52 Exhibit 9-7, # 53 Exhibit 9-8, # 54 Exhibit 9-9, # 55 Exhibit 9-10, # 56 Exhibit 9-11, # 57 Exhibit 9-12, # 58 Exhibit 9-13, # 59 Exhibit 10-1, # 60 Exhibit 10-2, # 61 Exhibit 10-3, # 62 Exhibit 10-4, # 63 Exhibit 10-5, # 64 Exhibit 10-6, # 65 Exhibit 10-7, # 66 Exhibit 10-8, # 67 Exhibit 10-9, # 68 Exhibit 10-10, # 69 Exhibit 10-11, # 70 Exhibit 10-12, # 71 Exhibit 11-1, # 72 Exhibit 11-2, # 73 Exhibit 11-3, # 74 Exhibit 11-4, # 75 Exhibit 11-5, # 76 Exhibit 11-6, # 77 Exhibit 11-7, # 78 Exhibit 11-8, # 79 Exhibit 11-9, # 80 Exhibit 11-10, # 81 Exhibit 11-11, # 82 Exhibit 11-12, # 83 Exhibit 11-13, # 84 Exhibit 11-14, # 85 Exhibit 11-15, # 86 Exhibit 11-16, # 87 Exhibit 11-17, # 88 Exhibit 11-18, # 89 Exhibit 11-19, # 90 Exhibit 11-20, # 91 Exhibit 12-1, # 92 Exhibit 12-2, # 93 Exhibit 12-3, # 94 Exhibit 12-4, # 95 Exhibit 13, # 96 Exhibit 14-1, # 97 Exhibit 14-2, # 98 Exhibit 14-3, # 99 Exhibit 14-4)(MCCLELLAN, NATHAN) (Entered: 08/30/2012) |
| 08/30/2012 | 3591 | MOTION to Dismiss *Plaintiffs' Complaints* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.Certificate of Service. (Attachments: # 1 Memorandum of Law, # 2 Text of Proposed Order, # 3 Declaration of Anastasia Danias)(MCCLELLAN, NATHAN) (Entered: 08/30/2012) |
| 08/30/2012 | 3592 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Brief, Certificate of Service. (Attachments: # 1 Brief in Support, # 2 Text of Proposed Order)(CEREGHINI, PAUL) (Entered: 08/30/2012) |
| 08/30/2012 | 3593 | MOTION to Sever filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Brief, Certificate of Service. (Attachments: # 1 Brief in Support, # 2 Appendix 1, # 3 Appendix 2, # 4 Text of Proposed Order)(CEREGHINI, PAUL) (Entered: 08/30/2012) |
| 08/30/2012 | 3594 | NOTICE by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC. re 3593 MOTION to Sever *Request for Judicial Notice* (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(CEREGHINI, PAUL) (Entered: 08/30/2012) |
| 08/31/2012 | 3595 | Short Form Complaint *by Ralph E. Tamm* by PLAINTIFF(S). (KATZ, SETH) (Entered: 08/31/2012) |
| 08/31/2012 | 3596 | *Short Form Complaint - Randall Gay, Jr. and Desha Gay* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 08/31/2012) |

| 08/31/2012 | 3597 | *Short Form Complaint - Warren Capone and Rose Capone* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 08/31/2012) |
| 08/31/2012 | 3598 | *Short Form Complaint - Kerry Parker and Lisa Parker* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 08/31/2012) |
| 08/31/2012 | 3599 | *Short Form Complaint - Alden Roche Jr. and Linda Roche* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 08/31/2012) |
| 08/31/2012 | 3600 | *Short Form Complaint - Elvis Joseph* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 08/31/2012) |
| 08/31/2012 | 3601 | *Short Form Complaint - Bo Harris and Amy Harris* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 08/31/2012) |
| 08/31/2012 | 3602 | *Short Form Complaint - Eddie Anderson, Jr. and Lawnya Anderson* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 08/31/2012) |
| 08/31/2012 | 3603 | *Short Form Complaint - David Gagnon and Judy Gagnon* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 08/31/2012) |
| 08/31/2012 | 3604 | *Short Form Complaint - Sean Smith and Lisa Marie Smith* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 08/31/2012) |
| 08/31/2012 | 3605 | STIPULATION AND ORDER THAT THE PLAINTIFFS IN C.A. 12-4087 MAY FILE AN AMENDED COMPLAINT. SIGNED BY HONORABLE ANITA B. BRODY ON 8/30/2012; 9/4/2012 ENTERED AND COPIES E-MAILED. (APPLIES TO C.A. 12-4087).(tjd) (Entered: 09/04/2012) |
| 09/04/2012 | 3606 | Short Form Complaint - James Everett and Rachel Everett by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 09/04/2012) |
| 09/04/2012 | 3607 | Short Form Complaint - Willis Thomas Owen and Mary Ellen Owen by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 09/04/2012) |
| 09/05/2012 | 3608 | NOTICE of Appearance by DWIGHT P. BOSTWICK on behalf of PLAINTIFF(S) with Certificate of Service(BOSTWICK, DWIGHT) (Entered: 09/05/2012) |
| 09/05/2012 | 3609 | Short Form Complaint *Harrington Darnell Autry* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3610 | Short Form Complaint *Ryan Thelwell* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3611 | Short Form Complaint *JERRY AZUMAH* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3612 | Short Form Complaint *D'WAYNE BATES* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3613 | Short Form Complaint *WES BAUTOVICH* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3614 | Short Form Complaint *ROBERT D. BEAN* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3615 | Short Form Complaint *ED BERNET* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3616 | Short Form Complaint *JAMES BOEKE* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |

| 09/05/2012 | 3617 | Short Form Complaint *LAMONT BOYKIN* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| --- | --- | --- |
| 09/05/2012 | 3618 | Short Form Complaint *COREY BRADFORD* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3619 | Short Form Complaint *ROBERT BREUNIG* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3620 | Short Form Complaint *DYSHOD CARTER* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3621 | Short Form Complaint *BRADFORD L. CROWLEY* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3622 | Short Form Complaint *MILLER FARR* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3623 | Short Form Complaint *MELVIN FOWLER, JR.* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3624 | Short Form Complaint *D'ANDRE JARON HARDEMAN* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3625 | Short Form Complaint *KELVIN INGRAM* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3626 | Short Form Complaint *LEROY IRVIN, JR.* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3627 | Short Form Complaint *LEVI J. JONES* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3628 | Short Form Complaint *JEFF M. KELLY, III* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3629 | Short Form Complaint *ERNEST KOY* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3630 | Short Form Complaint *RONALD MACK LEWIS* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3631 | Short Form Complaint *MARCUS J. MAXEY* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3632 | Short Form Complaint *ROBERT MCLEOD* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3633 | Short Form Complaint *R.C. MULLIN, JR.* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3634 | Short Form Complaint *OMAR NAZEL* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3635 | Short Form Complaint *SIRR PARKER* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3636 | Short Form Complaint *MICHAEL PLEASANT* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |

| 09/05/2012 | 3637 | Short Form Complaint *THOMAS RAFFERTY* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3638 | Short Form Complaint *SIMEON RICE* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3639 | Short Form Complaint *ADRIAN ROSS* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3640 | Short Form Complaint *KHARI IMAN MITCHELL-SAMUEL* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3641 | Short Form Complaint *DARREN SHARPER* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3642 | Short Form Complaint *DERRICK R. SPILLER* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3643 | Short Form Complaint *NATHANIEL TURNER* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3644 | Short Form Complaint *TRAYVON WALLER* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3645 | Short Form Complaint *STEVE WARREN* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 09/05/2012) |
| 09/05/2012 | 3646 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Tony Mandarich and Charlavan Mandarich* (LEH, MICHAEL) (Entered: 09/05/2012) |
| 09/05/2012 | 3647 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Peter Monty and Muriel Monty* (LEH, MICHAEL) (Entered: 09/05/2012) |
| 09/05/2012 | 3648 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Ryan Sutter and Trista Sutter* (LEH, MICHAEL) (Entered: 09/05/2012) |
| 09/05/2012 | 3649 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Robert Grupp* (LEH, MICHAEL) (Entered: 09/05/2012) |
| 09/06/2012 | 3650 | Copy of Conditional Transfer Order (CTO-26) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-C 2:12-7251; CA-S 3:12-2077; NY-S 1:12-6535. (tjd) (Entered: 09/06/2012) |
| 09/06/2012 | 3651 | Amended Short Form Complaint -Charles Alexander by PLAINTIFF(S). (BUZBEE, ANTHONY) (Entered: 09/06/2012) |
| 09/06/2012 | 3652 | Short Form Complaint *William and Gladys Andrews* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/06/2012) |
| 09/06/2012 | 3653 | Short Form Complaint - Tim Castille by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/06/2012) |
| 09/06/2012 | 3654 | Short Form Complaint *Fred Otis Amey and Tyreina Amey* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/06/2012) |
| 09/06/2012 | 3655 | Short Form Complaint *Aaron Beasley and Umme Beasley* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/06/2012) |

| 09/06/2012 | 3656 | Short Form Complaint *Antwon Burton and Terah Burton* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/06/2012) |
| 09/06/2012 | 3657 | Short Form Complaint *Tyrone Carter and April Carter* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/06/2012) |
| 09/06/2012 | 3658 | Short Form Complaint *Orin Childress* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/06/2012) |
| 09/06/2012 | 3659 | Short Form Complaint *Carey Davis* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/06/2012) |
| 09/06/2012 | 3660 | Short Form Complaint *Chris Jackson and Michelle Jackson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/06/2012) |
| 09/06/2012 | 3661 | Short Form Complaint *Lance Johnstone and Jerika Johnstone* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/06/2012) |
| 09/06/2012 | 3662 | Short Form Complaint *Ronald Johnson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/06/2012) |
| 09/06/2012 | 3663 | Short Form Complaint *Matt Wilhelm and Vanessa Wilhelm* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/06/2012) |
| 09/06/2012 | 3664 | *Short For Complaint - Roy Foster* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 09/06/2012) |
| 09/06/2012 | 3665 | *Short Form Complaint - Atlas Herrion and Syreeta Herrion* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 09/06/2012) |
| 09/06/2012 | 3666 | *Short Form Complaint - Todd Kinchen and Mary Kinchen* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 09/06/2012) |
| 09/06/2012 | 3667 | *Short Form Complaint - Dante' D. Jones and Pamela R. Jones* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 09/06/2012) |
| 09/06/2012 | 3668 | *Short Form Complaint - Gus Parnham* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 09/06/2012) |
| 09/06/2012 | 3669 | *Short Form Complaint - Ricky Moore and Jan Moore* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 09/06/2012) |
| 09/06/2012 | 3670 | *Short Form Complaint - James Gueno and Billie Gueno* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 09/06/2012) |
| 09/06/2012 | 3671 | *Short Form Complaint - Barbara King on behalf of the Estate of Ollie Matson, II* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 09/06/2012) |
| 09/06/2012 | 3674 | Copy of Order from the JPML that the stay of the Panel's conditional transfer order designated as "CTO-24" is LIFTED insofar as it relates to this action; the action is transferred to the ED-PA for inclusion in the coordinated or consolidated pretrial proceedings under 28 U.S.C. 1407 being conducted by the Honorable Anita B. Brody: Gayle, IL-N, 1:12-6332. (tjd) (Entered: 09/07/2012) |
| 09/07/2012 | 3672 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - James H. Strong, Jr. and Eileen Strong* (LEH, MICHAEL) (Entered: 09/07/2012) |
| 09/07/2012 | 3673 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - John Michels and Melissa Michels* (LEH, MICHAEL) (Entered: 09/07/2012) |

| 09/07/2012 | 3675 | Short Form Complaint Francis "B.J." Cohen by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3676 | Short Form Complaint Tony Curtis by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3677 | Short Form Complaint Will Franklin by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3678 | Aaron Golliday by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3679 | Short Form Complaint Kris Griffin by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3680 | Short Form Complaint Greg Hanoian by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3681 | Short Form Complaint Dwayne Harper by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3682 | Short Form Complaint Reggie Harrell by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3683 | Short Form Complaint Reggie Harrell by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3684 | Short Form Complaint Jonathan Ingram by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3685 | Short Form Complaint Khari Long by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3686 | Short Form Complaint Central McClellion by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3687 | Short Form Complaint Norman Miller by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3688 | Short Form Complaint Kendrick Mosley by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3689 | *Amended Short Form Complaint - Randall Gay Jr. and Desha Gay* by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 09/07/2012) |
| 09/07/2012 | 3690 | Short Form Complaint Ryan O'Callaghan by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3691 | Short Form Complaint Steven Octavien by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3692 | Short Form Complaint David Patterson by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3693 | Short Form Complaint Tab Perry by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3694 | Short Form Complaint Marcus Price by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3695 | Short Form Complaint Keith Rucker by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |

| 09/07/2012 | 3696 | Short Form Complaint Kevin Sampson by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
|---|---|---|
| 09/07/2012 | 3697 | Short Form Complaint Chris Terry by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/07/2012) |
| 09/07/2012 | 3698 | MOTION for Order filed by PLAINTIFF(S).Plaintiffs' Uncontested Motion for Order Establishing a Time and Expense Reporting Protocol and Appointing Auditor. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Text of Proposed Order, # 7 Text of Proposed Order Attachment A, # 8 Certificate of Service)(KENNEY, JEANNINE) (Entered: 09/07/2012) |
| 09/07/2012 | 3699 | Short Form Complaint - Dennis Johnson by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 09/07/2012) |
| 09/10/2012 | 3700 | Short Form Complaint Richard Bryant by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/10/2012) |
| 09/10/2012 | 3701 | Short Form Complaint David Hollie and Joslyn Hollie by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/10/2012) |
| 09/10/2012 | 3702 | Short Form Complaint Christopher McAlister by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/10/2012) |
| 09/10/2012 | 3703 | Short Form Complaint James McAlister by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/10/2012) |
| 09/10/2012 | 3704 | Short Form Complaint Reginald McElroy and Sharon McElroy by PLAINTIFF(S). (FLEISHMAN, WENDY) Modified on 9/14/2012 (tjd). (Entered: 09/10/2012) |
| 09/10/2012 | 3705 | Short Form Complaint Greg Montgomery by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/10/2012) |
| 09/10/2012 | 3706 | Short Form Complaint Marcus Ray by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/10/2012) |
| 09/10/2012 | 3707 | Short Form Complaint Reginald Stephens by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/10/2012) |
| 09/10/2012 | 3708 | Short Form Complaint Samuel Sword and Raven Sword by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/10/2012) |
| 09/10/2012 | 3709 | Short Form Complaint Calvin Williams by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/10/2012) |
| 09/11/2012 | 3710 | ORDER granting 3698 MOTION... THE INITIAL TIME AND EXPENSE REPORT SHALL COVER THE TIME PERIOD FROM INCEPTION OF THE CASE THROUGH SEPTEMBER 30, 2012 AND SHALL BE SUBMITTED BY OCTOBER 31, 2012.... APPROVED BY THE COURT.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/10/2012.9/11/2012 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/11/2012) |
| 09/11/2012 | 3711 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To George Adams and Michelle Adams (Attachments: # 1 Certificate of Service)(TARRICONE, ANTHONY) (Entered: 09/11/2012) |
| 09/12/2012 | 3712 | Short Form Complaint - Harold C. Bailey by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |

| 09/12/2012 | 3713 | Short Form Complaint - Bill Capece by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3714 | Short Form Complaint - Reuben Davis by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3715 | Short Form Complaint - Roger Jackson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3716 | Short Form Complaint - Ronald Po James by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3717 | Short Form Complaint - Joey Larocque by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3718 | Short Form Complaint - Jeremy Lincoln by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3719 | Short Form Complaint - Randy Marshall by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3720 | Short Form Complaint - Guido Merkens by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3721 | Short Form Complaint - Lloyd Mumphord by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3722 | Short Form Complaint - Rob Porter by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3723 | Short Form Complaint - Shelton Robinson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3724 | Short Form Complaint - Michael St. Clair by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3725 | Short Form Complaint - Hurley J. Tarver, Jr. by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3726 | Short Form Complaint - Stephen Trejo by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3727 | Short Form Complaint - George Andrie and Mary Lou Andrie by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3728 | Short Form Complaint - Joe Armentrout and Pam Armentrout by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3729 | Short Form Complaint - Coleman Bell, II and Ingrid Bell by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3730 | Short Form Complaint - Frank Bernardi and Susie Bernardi by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3731 | Short Form Complaint - Willie Blackwell and Kathy Blackwell by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3732 | Short Form Complaint - Garland Dean Boyette and Winetta B. Boyette by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |

| 09/12/2012 | 3733 | Short Form Complaint - James Brown and Renee Brown by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3734 | Short Form Complaint - Ross Brupbacher and Barbara Brupbacher by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3735 | Short Form Complaint - Willie Clay and Rayshawn Clay by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3736 | Short Form Complaint - Rod Davis and Blossom Davis by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3737 | Short Form Complaint - Jeff Delaney and Veronica Delaney by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3738 | Short Form Complaint - Alan Dixon and Belinda Dixon by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3739 | Short Form Complaint - Richard D. Druschel and Pamela Druschel by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3740 | Short Form Complaint - Thomas Ehlers and Gwen Ehlers by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3741 | Short Form Complaint - Terry L. Falcon and Becky Falcon by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3742 | Short Form Complaint - David E. Foley and Linda Foley by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3743 | Short Form Complaint - Donald J. Gault and Mary Lou Gault by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3744 | Short Form Complaint - James Gibbons and Gayle Gibbons by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3745 | Short Form Complaint - Michael Hamby and Debbie Hamby by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3746 | Short Form Complaint - Bob Harris and Emily Harris by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3747 | Short Form Complaint - Thomas Haynes and Maile Haynes by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3748 | Short Form Complaint - Douglas Hollie and Sharon Hollie by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3749 | Short Form Complaint - David Hubbard and Melinda Hubbard by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3750 | Short Form Complaint - Jeff Jordan and Merilee Jordan by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3751 | Short Form Complaint - Todd Kalis and Kristen Kalis by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3752 | Short Form Complaint - Dan Land and Theresa Land by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |

| 09/12/2012 | 3753 | Short Form Complaint - John McCambridge and Christine McCambridge by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3754 | Short Form Complaint - Randy McClanahan and Jackie McClanahan by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3755 | Short Form Complaint - Brian T. McConnell and Pier McConnell by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3756 | Short Form Complaint - Scott McGarrahan and Lindsay McGarrahan by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3757 | Short Form Complaint - Bruce Mesner and Candace Mesner by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3758 | Short Form Complaint - Alton Montgomery, Jr. and Connie K. Montgomery by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3759 | Short Form Complaint - Jim Osborne and Wanda Osborne by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3760 | Short Form Complaint - Barry Pearson and Linda Pearson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3761 | Short Form Complaint - Danny Pittman and Karen Pittman by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3762 | Short Form Complaint - Terry Schmidt and Nancy Schmidt by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3763 | Short Form Complaint - Ray Sydnor and Patricia Sydnor by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3764 | Short Form Complaint - Stephen Thompson and Starla Rae Thompson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3765 | Short Form Complaint - Jeffry C. Tupper and Johnna Tupper by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3766 | Short Form Complaint - Jim Walsh and Marie Walsh by PLAINTIFF(S). (LOCKS, GENE) (Entered: 09/12/2012) |
| 09/12/2012 | 3767 | Short Form Complaint *Calvin Williams* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3768 | Short Form Complaint *Rian Wallace* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3769 | Short Form Complaint *Marques Sullivan and Veronica Sullivan* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3770 | Short Form Complaint *Jamain Stephens* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3771 | Short Form Complaint *Keith Smith and Bianca Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3772 | Short Form Complaint *Anthony Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |

| 09/12/2012 | 3773 | Short Form Complaint *Rodrick Rutledge* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3774 | Short Form Complaint *Larry Roberts* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3775 | Short Form Complaint *Christopher Roberson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3776 | Short Form Complaint *Andre Reed and Cyndi Reed* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3777 | Short Form Complaint *Bruce Pickens and Jennifer Pickens* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3778 | Short Form Complaint *Deshone Myles and Jordana Myles* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3779 | Short Form Complaint *Joseph Montgomery and Jenean Montgomery* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3780 | Short Form Complaint *Jamar Martin and Angela Martin* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3781 | Short Form Complaint *David Macklin* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3782 | Short Form Complaint *Larry Lee* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3783 | Short Form Complaint *Tony Jones* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3784 | Short Form Complaint *Burudi Johnson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3785 | Short Form Complaint *Tyronne Gross and Raquel Gross* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3786 | Short Form Complaint *Quinn Gray* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3787 | Short Form Complaint *Dwayne Goodrich* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3788 | Short Form Complaint *Levar Fisher and Jacinta Fisher* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3789 | Short Form Complaint *Ronald Dixon and Jennifer Dixon* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3790 | Short Form Complaint *Gus Parham* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 09/12/2012) |
| 09/12/2012 | 3791 | STIPULATION *by Alfred R. Camarena* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 09/12/2012) |
| 09/13/2012 | 3792 | Short Form Complaint - Betty J. Catlin by PLAINTIFF(S). (Attachments: # 1 Exhibit Letters Testamentary)(MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |

| 09/13/2012 | 3793 | Short Form Complaint - Robin R. Jackson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3794 | Short Form Complaint - Lisa McHale by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3795 | Short Form Complaint - Eugene Baker by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3796 | Short Form Complaint - Johnny Baldwin, III by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3797 | Short Form Complaint - Stanley Blinka and Kathy Blinka by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3798 | Short Form Complaint - Jeff L. Bostic and Lynn Bostic by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3799 | Short Form Complaint - Raymond L. Buchanan and Bethlehem D. Buchanan by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3800 | Short Form Complaint - Gerald L. Carter and Ann Carter by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3801 | Short Form Complaint - Larry Flowers by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3802 | Short Form Complaint - Jacob Ford and Done' Ford by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3803 | Short Form Complaint - Nicholas Graham by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3804 | Short Form Complaint - Brian Gray by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3805 | Short Form Complaint - Reynaldo Hill and Janina Hill by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3806 | Short Form Complaint - John Holt and Janet Holt by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3807 | Short Form Complaint - Cleveland Lee Jackson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3808 | Short Form Complaint - Larry Kinnebrew by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3809 | Short Form Complaint - Michael G. Landrum and Amy P. Landrum by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3810 | Short Form Complaint - Albert Lewis by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3811 | Short Form Complaint - Kirk McMullen and Gretchen McMullen by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3812 | Short Form Complaint - Anthony C. McSwain and Alicia McSwain by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |

| 09/13/2012 | 3813 | Short Form Complaint - Soloman Miller by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3814 | Short Form Complaint - Benny Perrin and Courtney Perrin by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3815 | Short Form Complaint - Steve Bernard Stephens and Marion Dowling by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3816 | Short Form Complaint - Adam C Walker and Lori Walker by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3817 | Short Form Complaint - Gary C. Wilkins and Beatrice Wilkins by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3818 | Short Form Complaint - Doug Williams and Carol Williams by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 09/13/2012) |
| 09/13/2012 | 3819 | RESPONSE to Motion re 3591 MOTION to Dismiss *Plaintffs' Complaints* filed by PLAINTIFF(S). Certificate of Service. (Attachments: # 1 Text of Proposed Order) (JOHNS, CHRISTOPHER) Modified on 9/17/2012 (tjd, ). (Entered: 09/13/2012) |
| 09/14/2012 | 3820 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Mickey Pruitt and Stephanie Pruitt* (LEH, MICHAEL) (Entered: 09/14/2012) |
| 09/14/2012 | 3821 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Byron P. Franklin, Sr. and Meriam Louis Franklin* (LEH, MICHAEL) (Entered: 09/14/2012) |
| 09/18/2012 | 3822 | Copy of Conditional Transfer Order (CTO-28) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: GA-N 1:12-3048; LA-E 2:12-2205; MS-S 3:12-610. (tjd) (Entered: 09/18/2012) |
| 09/18/2012 | 3823 | *Short Form Complaint - Jim Hudson* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 09/18/2012) |
| 09/18/2012 | 3824 | *Amended Short Form Complaint - Kez McCorvey and Lori Ann McCorvey* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 09/18/2012) |
| 09/20/2012 | 3825 | Short Form Complaint -Maxwell Jones by PLAINTIFF(S). (JOHNS, CHRISTOPHER) (Entered: 09/20/2012) |
| 09/20/2012 | 3826 | Short Form Complaint -Kenneth F. Rose by PLAINTIFF(S). (JOHNS, CHRISTOPHER) (Entered: 09/20/2012) |
| 09/21/2012 | 3827 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Peter Campion* (LEH, MICHAEL) (Entered: 09/21/2012) |
| 09/21/2012 | 3828 | STIPULATION AND ORDER THAT THE PLAINTIFFS IN C.A. 12-4087 MAY FILE A SECOND AMENDED COMPLAINT. SIGNED BY HONORABLE ANITA B. BRODY ON 9/20/2012. 9/24/2012 ENTERED AND COPIES E-MAILED.(APPLIES TO C.A.12-4087)(kk, ) (Entered: 09/24/2012) |
| 09/24/2012 | 3829 | ORDER that THE NATIONAL FOOTBALL LEAGUE'S MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT ARE DENIED; that PLAINTIFFS HAVE UNTIL OCTOBER 18, 2012, TO EFFECT SERVICE ON DEFENDANT; AND THAT PLAINTIFFS ARE NOT REQURIED TO REFILE THEIR CASES.. SIGNED BY |

| | | HONORABLE ANITA B. BRODY ON 9/21/2012.9/24/2012 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/24/2012) |
|---|---|---|
| 09/25/2012 | [3830](#) | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Mike Thomas and Sylvia Thomas* (LOCKS, GENE) (Entered: 09/25/2012) |
| 09/26/2012 | [3831](#) | NOTICE of Appearance by ANNE MCGINNESS KEARSE on behalf of PLAINTIFF(S). Certificate of Service. (KEARSE, ANNE) Modified on 9/27/2012 (tjd). (Entered: 09/26/2012) |
| 09/26/2012 | [3832](#) | NOTICE of Appearance by DONALD A. MIGLIORI on behalf of PLAINTIFF(S). Certificate of Service. (MIGLIORI, DONALD) Modified on 9/27/2012 (tjd). (Entered: 09/26/2012) |
| 09/27/2012 | [3833](#) | *Short Form Complaint for April Branch and Colin Branch* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 09/27/2012) |
| 09/27/2012 | [3834](#) | *Short Form Complaint for Robert Green and Pamela Green* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 09/27/2012) |
| 09/27/2012 | [3835](#) | *Short Form Complain for Hessley J. Hempstead II* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 09/27/2012) |
| 09/27/2012 | [3836](#) | *Short Form Complaint for Bradley R. Hoover and Brandi Hoover* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 09/27/2012) |
| 09/27/2012 | [3837](#) | *Short Form Complaint for Adrian B. Murrell* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 09/27/2012) |
| 09/27/2012 | [3838](#) | *Short Form Complainf for Craig A. Thompson* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 09/27/2012) |
| 09/27/2012 | [3839](#) | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Jocelyn Borgella* (THOMAS, PHILIP) (Entered: 09/27/2012) |
| 09/27/2012 | [3840](#) | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Sammy Williams* (THOMAS, PHILIP) (Entered: 09/27/2012) |
| 09/27/2012 | [3841](#) | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Maury Youmans* (THOMAS, PHILIP) (Entered: 09/27/2012) |
| 09/28/2012 | [3842](#) | Copy of Conditional Transfer Order (CTO-29) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-S 3:12-2245; FL-M 3:12-1015; MD-D 1:12-2728. (tjd) (Entered: 09/28/2012) |
| 09/28/2012 | [3843](#) | Short Form Complaint for Allen Trammell by PLAINTIFF(S). (SCHENK, FREDERICK) (Entered: 09/28/2012) |
| 09/28/2012 | [3844](#) | Short Form Complaint for Ernest Green and Della Green by PLAINTIFF(S). (SCHENK, FREDERICK) (Entered: 09/28/2012) |
| 09/28/2012 | [3845](#) | Short Form Complaint for Eugene Morris by PLAINTIFF(S). (SCHENK, FREDERICK) (Entered: 09/28/2012) |
| 09/28/2012 | [3846](#) | Short Form Complaint for Donte Curry and Crystal Curry by PLAINTIFF(S). (SCHENK, FREDERICK) (Entered: 09/28/2012) |
| 09/28/2012 | [3847](#) | Short Form Complaint for Roy Lee Jefferson and Camille Jefferson by PLAINTIFF(S). (SCHENK, FREDERICK) (Entered: 09/28/2012) |

| 09/28/2012 | 3848 | Short Form Complaint for Jack Simpson by PLAINTIFF(S). (SCHENK, FREDERICK) (Entered: 09/28/2012) |
| 09/30/2012 | 3849 | NOTICE by PLAINTIFF(S) re 3824 Praecipe/Request *Plaintiffs' Notice of Errata re: Short Form Complaint to Kez McCorvey & Loris Ann McCorvey* (Attachments: # 1 Certificate of Service)(HEATHER, FRED) (Entered: 09/30/2012) |
| 09/30/2012 | 3850 | NOTICE by PLAINTIFF(S) re 3823 Praecipe/Request *Plaintiffs' Notice of Errata re Short Form Complaint to Jim Hudson* (Attachments: # 1 Certificate of Service) (HEATHER, FRED) (Entered: 09/30/2012) |
| 10/02/2012 | 3851 | *SFC Anderson, Willie Lee* by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 10/02/2012) |
| 10/02/2012 | 3852 | *SFC Bates, Jackie* by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 10/02/2012) |
| 10/02/2012 | 3853 | *SFC Bolden, Juran* by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 10/02/2012) |
| 10/02/2012 | 3854 | *SFC Bouman, Todd* by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 10/02/2012) |
| 10/02/2012 | 3855 | *SFC Elliss, Luther* by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 10/02/2012) |
| 10/02/2012 | 3856 | *SFC Jones, Mark* by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 10/02/2012) |
| 10/02/2012 | 3857 | *SFC McDonald, Shawn* by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 10/02/2012) |
| 10/02/2012 | 3858 | *SFC Schuening, Roy* by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 10/02/2012) |
| 10/02/2012 | 3859 | *SFC Warren, Paris* by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 10/02/2012) |
| 10/02/2012 | 3860 | *SFC Wilson, Troy* by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 10/02/2012) |
| 10/02/2012 | 3861 | Short Form Complaint - Daren Gilbert and Alayna Gilbert by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2012) |
| 10/03/2012 | 3862 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Quentin Coryatt* (LOCKS, GENE) (Entered: 10/03/2012) |
| 10/03/2012 | 3863 | Notice of Withdrawal of Short Form Complaint of Plaintiff Jeffrey Bregel by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 10/03/2012) |
| 10/03/2012 | 3864 | Notice of Withdrawal of Short Form Complaint of Plaintiff Ronald Hallstrom by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 10/03/2012) |
| 10/04/2012 | 3865 | Copy of Conditional Transfer Order (CTO-30) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: GA-N 1:12-3269. (tjd) (Entered: 10/04/2012) |
| 10/04/2012 | 3866 | Short Form Complaint-Rodney Bailey by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3867 | Short Form Complaint-Stacey Bailey and Kellie Bailey by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3868 | Short Form Complaint-Jeff Baker and Patricia Baker by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3869 | Short Form Complaint-Sean Brewer and Jaimi Brewer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |

| 10/04/2012 | 3870 | Short Form Complaint-Clifford Brown by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3871 | Short Form Complaint-Jonathan Brown and Diniki Brown by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3872 | Short Form Complaint-Michael Carter and Sandra Carter by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3873 | Short Form Complaint-Raymond T. Chester by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3874 | Short Form Complaint-Darren Comeaux and Karen Comeaux by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3875 | Short Form Complaint-Aaron Cox by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3876 | Short Form Complaint-Claude Crabb and Carolyn Crabb by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3877 | Short Form Complaint-Julian Douglas Cunningham and Katherine Allen Cunningham by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3878 | Short Form Complaint-Aaron Emanuel by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3879 | Short Form Complaint-Michael Fanning by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3880 | Short Form Complaint-Delton Hall by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3881 | Short Form Complaint-Lynell Hamilton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3882 | Short Form Complaint-Greg Hawthorne by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3883 | Short Form Complaint-Thomas Hayes, Jr. and Sallie Hayes by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3884 | Short Form Complaint-Richard Himes and Sylvia Himes by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3885 | Short Form Complaint-Leroy Jones and Sherry Jones by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3886 | Short Form Complaint-Kareem Kelly by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3887 | Short Form Complaint-Charles Lamson and Madeline Lamson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3888 | Short Form Complaint-Louis Lipps and Leah Lipps by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3889 | Short Form Complaint-Darrol Ray and Diane Ray by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |

| 10/04/2012 | 3890 | Short Form Complaint-Daniel Reece and Kimberly Reece by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
|---|---|---|
| 10/04/2012 | 3891 | Short Form Complaint-Lawrence Schreiber by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3892 | Short Form Complaint-Michael Sowald by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3893 | Short Form Complaint-Gregory D. Tolver, Jr by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3894 | Short Form Complaint-John Henry Ward and Gayle Ward by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3895 | Short Form Complaint-Theodore Wheeler III and Sharon Wheeler by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3896 | Short Form Complaint-Sherman White by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3897 | Short Form Complaint-Marcus Williams, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3898 | Short Form Complaint-Oliver Williams, Jr. and Kimberly Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3899 | Short Form Complaint-Kyle Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3900 | Short Form Complaint-Kyries Herbert by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/04/2012 | 3901 | Short Form Complaint-Drew Mahalic by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/04/2012) |
| 10/08/2012 | 3902 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Ryan Hannam and April Hannam(GUDMUNDSON, BRIAN) (Entered: 10/08/2012) |
| 10/08/2012 | 3903 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Short Form Complaint of Plaintiff Gus Parham* (FRANCO, DAVID) (Entered: 10/08/2012) |
| 10/09/2012 | 3904 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Short Form Complaint of Plaintiffs Jamar and Angela Martin* (FLEISHMAN, WENDY) (Entered: 10/09/2012) |
| 10/09/2012 | 3905 | Short Form Complaint - *Maurice Aikens* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3906 | Short Form Complaint - *Frank Bernardi* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3907 | Short Form Complaint - *Tony Berti* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3908 | Short Form Complaint - *Michael Blazitz* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3909 | Short Form Complaint - *David Boston* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |

| 10/09/2012 | 3910 | Short Form Complaint - *Charles Brown and Shirley Brown* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3911 | Short Form Complaint - *Kenneth Burrough* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3912 | Short Form Complaint - *Richard Byrd* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3913 | Short Form Complaint - *Patrick Chukwurah* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3914 | Short Form Complaint - *Michael Davis Denson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3915 | Short Form Complaint - *Ray Donaldson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3916 | Short Form Complaint - *James Duggan* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3917 | Short Form Complaint - *Perry Dunn and Lila Dunn* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3918 | Short Form Complaint - *Tyler Everett* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3919 | Short Form Complaint - *Tommie Funchess* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3920 | Short Form Complaint - *William Gaines* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3921 | Short Form Complaint - *Richard Gardner* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3922 | Short Form Complaint - *Winfield Garnett* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3923 | Short Form Complaint - *Tim George* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3924 | Short Form Complaint - *Jeff Grau* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3925 | Short Form Complaint - *Cleveland Carl Green* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3926 | Short Form Complaint - *Odie Harris* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3927 | Short Form Complaint - *Jeffrey Hartings* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3928 | Short Form Complaint - *Robert Hughes* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3929 | Short Form Complaint - *Cameron Jacobs and Keri Ann Jacobs* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |

| | | |
|---|---|---|
| 10/09/2012 | 3930 | Short Form Complaint - *Brian Johnson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3931 | Short Form Complaint - *Rickey Jones* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3932 | Short Form Complaint - *Roshad Kent* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3933 | Short Form Complaint - *Chris Kern* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3934 | Short Form Complaint - *Terry Killens, Jr.* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3935 | Short Form Complaint - *Adam Linger* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3936 | Short Form Complaint - *Gerald Loper* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3937 | Short Form Complaint - *Joe Lowery* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3938 | Short Form Complaint - *Curtice Macfarlane and Angela Macfarlane* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3939 | Short Form Complaint - *Frank Marchlewski* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3940 | Short Form Complaint - *Wayne Martin* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3941 | Short Form Complaint - *Reginald Mathis* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3942 | Short Form Complaint - *Patrick McCoy and Rebekah R. McCoy* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3943 | Short Form Complaint - *Mardye McDole* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3944 | Short Form Complaint - *Audray McMillian* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3945 | Short Form Complaint - *Lloyd Mumphord* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3946 | Short Form Complaint - *Marc Munford* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3947 | Short Form Complaint - *James Nelson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3948 | Short Form Complaint - *Ernest Richardson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3949 | Short Form Complaint - *Dwyane Rudd* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |

| 10/09/2012 | 3950 | Short Form Complaint - *Bobby Smith* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3951 | Short Form Complaint - *Jimmy Smith* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3952 | Short Form Complaint - *Greg Stemrick and Gwen Stemrick* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3953 | Short Form Complaint - *Malcolm Taylor* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3954 | Short Form Complaint - *Tim Watson and Audrey Watson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3955 | Short Form Complaint - *Terrence Wells and Cheryl Wells* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3956 | Short Form Complaint - *Reginald White* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3957 | Short Form Complaint - *Reginald Williams* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/09/2012 | 3958 | Short Form Complaint - *Ronald Williams* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/09/2012) |
| 10/10/2012 | 3959 | Short Form Complaint - Bill Barnett and Linda D. Barnett by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3960 | Short Form Complaint - Michael Bass and Rosita Bass by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3961 | Short Form Complaint - Chuck Correal and Deborah Correal by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3962 | Short Form Complaint - Jay Conningham and Betty Cunningham by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3963 | Short Form Complaint - Francis Davidson and Carolyn Davidson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3964 | Short Form Complaint - Moses Denson and Beverly Denson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3965 | Short Form Complaint - John Evans and Shelley Evans by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3966 | Short Form Complaint - Mike Friede and Sue Friede by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3967 | Short Form Complaint - Nicholas A. Giaquinto and Mary Barbara Giaquinto by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3968 | Short Form Complaint - Gale Gilbert and Kim Gilbert by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3969 | Short Form Complaint - Jonathan Andrew Hesse and Amy Hesse by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |

| 10/10/2012 | 3970 | Short Form Complaint - J. Ed Holler and Renee Holler by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3971 | Short Form Complaint - Issiac Holt and Sherry Holt by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3972 | Short Form Complaint - Craig Keith and Demethris Keith by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3973 | Short Form Complaint - Roger Lawson and Lonetta Lawson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3974 | Short Form Complaint - Gene Layton and Carol Layton by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3975 | Short Form Complaint - Tyrus McCloud and Mona McCloud by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3976 | Short Form Complaint - Rodney McNeill and Pamela McNeill by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3977 | Short Form Complaint - Karl Nelson and Inga Grossman Nelson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3978 | Short Form Complaint - Will Parker and Gail Parker by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3979 | Short Form Complaint - Mike Phipps and Carole L. Phipps by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3980 | Short Form Complaint - Pat Ryan and Pat Ryan by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3981 | Short Form Complaint - William Sandeman and Mary Sandeman by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3982 | Short Form Complaint - Goldie Sellers and Vasa "Peaches" Sellers by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3983 | Short Form Complaint - Terry Stieve and Robyn Stieve by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3984 | Short Form Complaint - Doug Sutherland and Kriss Sutherland by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3985 | Short Form Complaint - Justin Swift and Trina Swift by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3986 | Short Form Complaint - J.T. Thomas and Deborah Thomas by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3987 | Short Form Complaint - Tom Vigorito and Dianne Vigorito by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3988 | Short Form Complaint - Azizuddin Abdur-Ra'oof by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3989 | Short Form Complaint - Bob Brudzinski by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |

| 10/10/2012 | 3990 | Short Form Complaint - Jason Carthen by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3991 | Short Form Complaint - Wesley S. Chandler by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3992 | Short Form Complaint - Carl Hilton by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3993 | Short Form Complaint - Ron McCartney by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3994 | Short Form Complaint - Terry Nugent by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3995 | Short Form Complaint - Curt Singer by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/10/2012) |
| 10/10/2012 | 3996 | Copy of Conditional Transfer Order (CTO-31) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: TX-S 4:12-2875. (tjd) (Entered: 10/10/2012) |
| 10/10/2012 | 3997 | Short Form Complaint - John C. Mott by PLAINTIFF(S). (KATZ, SETH) (Entered: 10/10/2012) |
| 10/11/2012 | 3998 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - David Humm and Kellye Robinette Humm* (LEH, MICHAEL) (Entered: 10/11/2012) |
| 10/11/2012 | 3999 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Mike Bass and Rosita Bass* (LEH, MICHAEL) (Entered: 10/11/2012) |
| 10/17/2012 | 4015 | Short-Form Complaint filed by PLAINTIFF ANTHONY RICARDO YOUNG. Jury Demand. (Applies to C.A. 12-5908). (tjd) (Entered: 10/19/2012) |
| 10/18/2012 | 4000 | Copy of Conditional Transfer Order (CTO-32) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: GA-N 1:12-3399, NY-S 1:12-7289, SC-D 3:12-2856. (tjd) (Entered: 10/18/2012) |
| 10/18/2012 | 4001 | Amended Short Form Complaint - *Robert Hughes* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/18/2012) |
| 10/19/2012 | 4002 | NOTICE of Appearance by ELIZABETH ANN ALEXANDER on behalf of PLAINTIFF(S) with Certificate of Service(ALEXANDER, ELIZABETH) (Entered: 10/19/2012) |
| 10/19/2012 | 4003 | Short Form Complaint - Steve Bowman by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 10/19/2012) |
| 10/19/2012 | 4004 | Short Form Complaint - Michael Early by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 10/19/2012) |
| 10/19/2012 | 4005 | Short Form Complaint - Estate of Robert Lytle by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 10/19/2012) |
| 10/19/2012 | 4006 | Short Form Complaint - Fletcher Jenkins by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 10/19/2012) |

| 10/19/2012 | 4007 | Short Form Complaint - Carlton Oats by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 10/19/2012) |
| 10/19/2012 | 4008 | Short Form Complaint - DaShon Polk by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 10/19/2012) |
| 10/19/2012 | 4009 | Short Form Complaint - Irving Spikes by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 10/19/2012) |
| 10/19/2012 | 4010 | Short Form Complaint - Herschel Turner by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 10/19/2012) |
| 10/19/2012 | 4011 | Short Form Complaint - Andre White by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 10/19/2012) |
| 10/19/2012 | 4012 | Short Form Complaint - Karl Wilson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 10/19/2012) |
| 10/19/2012 | 4013 | Short Form Complaint - Charles Yancy by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 10/19/2012) |
| 10/19/2012 | 4014 | Short Form Complaint - David Zawatson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 10/19/2012) |
| 10/19/2012 | 4016 | Amended Short Form Complaint - *Tommie Funchess* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/19/2012) |
| 10/19/2012 | 4017 | Amended Short Form Complaint - *Adam Lingner* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/19/2012) |
| 10/19/2012 | 4018 | Amended Short Form Complaint - *Terence Wells and Cheryl Wells* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/19/2012) |
| 10/19/2012 | 4019 | Amended Short Form Complaint - *Roland Williams* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/19/2012) |
| 10/19/2012 | 4020 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint of Plaintiff, Phillippi Sparks* (THOMPSON, JULIE) (Entered: 10/19/2012) |
| 10/19/2012 | 4021 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint for Plaintiff, Shaun McDonald* (THOMPSON, JULIE) (Entered: 10/19/2012) |
| 10/19/2012 | 4022 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint for Plaintiff, Brett Basanez* (THOMPSON, JULIE) (Entered: 10/19/2012) |
| 10/19/2012 | 4023 | Amended Short Form Complaint - *Tim Watson and Audrey Watson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 10/19/2012) |
| 10/23/2012 | 4024 | Short Form Complaint *William Atessis* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4025 | Short Form Complaint *Darwin Brown* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4026 | Short Form Complaint *Ralph Brown* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4027 | Short Form Complaint Keyuo Craver by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |

| 10/23/2012 | 4028 | Short Form Complaint *Ramsey Dardar* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4029 | Short Form Complaint *Demarcus Faggins* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4030 | Short Form Complaint *Cecil Doggette* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4031 | Short Form Complaint *Bobby Gray* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4032 | Short Form Complaint *Dejuan Groce* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4033 | Short Form Complaint *Vershan Jackson* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4034 | Michael Leinert by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4035 | Short Form Complaint *Audray McMillian* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4036 | Short Form Complaint *Carlence Mitchell* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4037 | Short Form Complaint *Delmonico Montgomery* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4038 | Short Form Complaint *Phil Pozderac* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4039 | Short Form Complaint *Patrick Scott* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4040 | Short Form Complaint *Jerry Stovall* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4041 | Short Form Complaint *Derrick Strait* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4042 | Short Form Complaint *Erwin Swiney* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4043 | Short Form Complaint *Broderick Thomas* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4044 | Short Form Complaint *Charlie Vatterott* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4045 | Short Form Complaint *Greg Wesley* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4046 | Short Form Complaint *Paul Wiggins* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4047 | Short Form Complaint *Roy Winston* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 10/23/2012) |
| 10/23/2012 | 4048 | Short Form Complaint - Joe Earl Bostic, Jr. and Jami Bostic by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |

| 10/23/2012 | 4049 | Short Form Complaint - Wendell H. Davis by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| --- | --- | --- |
| 10/23/2012 | 4050 | Short Form Complaint - Glenn A. Dennison by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4051 | Short Form Complaint - Donald Lee Evans and Debra Evans by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4052 | Short Form Complaint - Billy Thurman Jackson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4053 | Short Form Complaint - Robert E. Johnson, Jr. and Gia D. Johnson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4054 | Short Form Complaint - Albert Latimer and Denene Latimer by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4055 | Short Form Complaint - Jeremy LeSueur by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4056 | Short Form Complaint - Mack Moore and Susan Moore by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4057 | Short Form Complaint - Terrence Murphy and Erica Murphy by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4058 | Short Form Complaint - Jamie Nails by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4059 | Short Form Complaint - Thomas O. Neville by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4060 | Short Form Complaint - Max Runager by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4061 | Short Form Complaint - Mikal Abdul-Saboor and Andrea Jefferson-Saboor by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4062 | Short Form Complaint - Michael J. Siwek and Patricia Siwek by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4063 | Short Form Complaint - Andre Townsend and Lisa Townsend by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4064 | Short Form Complaint - Paul William Troup by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4065 | Short Form Complaint - Sean J. Vanhorse and Juilee J. Vanhorse by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4066 | Short Form Complaint - Gerald Willhite by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4067 | Short Form Complaint - Chester O'Neal Willis by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |
| 10/23/2012 | 4068 | Short Form Complaint - Carlton Williamson and Donna A. Williamson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/23/2012) |

| 10/24/2012 | 4069 | Copy of Conditional Transfer Order (CTO-33) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: GA-N 1:12-3399, NY-S 1:12-7289, SC-D 3:12-2856. (tjd) Modified on 11/26/2012 (tjd, ). (Entered: 10/24/2012) |
|---|---|---|
| 10/24/2012 | 4070 | Short Form Complaint - Kiwaukee and Tanessa Thomas by PLAINTIFF(S). (ASHBY, ANDREW) (Entered: 10/24/2012) |
| 10/24/2012 | 4071 | Short Form Complaint - Daniel and Tamara Clark by PLAINTIFF(S). (ASHBY, ANDREW) (Entered: 10/24/2012) |
| 10/24/2012 | 4072 | Short Form Complaint - David and Kina Young by PLAINTIFF(S). (ASHBY, ANDREW) (Entered: 10/24/2012) |
| 10/24/2012 | 4073 | Short Form Complaint - Sherrod Coates by PLAINTIFF(S). (ASHBY, ANDREW) (Entered: 10/24/2012) |
| 10/25/2012 | 4074 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Charles Anthony(LEWIS, RICHARD) (Entered: 10/25/2012) |
| 10/25/2012 | 4075 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Ira Matthews(LEWIS, RICHARD) (Entered: 10/25/2012) |
| 10/25/2012 | 4076 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Jeff McIntyre(LEWIS, RICHARD) (Entered: 10/25/2012) |
| 10/25/2012 | 4077 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Jeffrey Walker(LEWIS, RICHARD) (Entered: 10/25/2012) |
| 10/25/2012 | 4078 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Mark Arneson(LEWIS, RICHARD) (Entered: 10/25/2012) |
| 10/25/2012 | 4079 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Rick Sanford(LEWIS, RICHARD) (Entered: 10/25/2012) |
| 10/25/2012 | 4080 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Terrance Metcalf(LEWIS, RICHARD) (Entered: 10/25/2012) |
| 10/29/2012 | 4081 | Short Form Complaint - Robert Massey by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4082 | Short Form Complaint - Benny and Laura Malone by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4083 | Short Form Complaint - Keith Wagner by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4084 | Short Form Complaint - Pat and Synorica Carter by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4085 | Short Form Complaint - Bennie L. Cunningham, Jr. by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4086 | Short Form Complaint - Emerson F. Martin, Jr. and Keschia Martin by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4087 | Short Form Complaint - Eugene Mingo and Sally Schein by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |

| 10/29/2012 | 4088 | Short Form Complaint - Rodrigo Barnes by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
|---|---|---|
| 10/29/2012 | 4089 | Short Form Complaint - Lydell and Jeanette Mitchell by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4090 | Short Form Complaint - Eric Stocz by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4091 | Short Form Complaint - John Isenbarger by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4092 | Short Form Complaint - Michael Reilly by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4093 | Short Form Complaint - Thomas and Sonia Goode by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4094 | Short Form Complaint - Baigeh and Nicole Tucker by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4095 | Short Form Complaint - Toussaint Tyler by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4096 | Short Form Complaint - Marquette and Sherri Smith by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4097 | Short Form Complaint - Keith and Christina Cash by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4098 | Short Form Complaint - Gary and Michelle Lewis by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4099 | Short Form Complaint - Titus Dixon and Melinda Clark by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4100 | Short Form Complaint - Derrick Deese by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4101 | Short Form Complaint - Michael and Shelley Cheever by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4102 | Short Form Complaint - Gary Burley and Barbara Knight by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4103 | Short Form Complaint - George and Sue Ann Flint by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4104 | Short Form Complaint - Tony and Tamara Casillas by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4105 | Short Form Complaint - Willie Rosborough and Jena Barfield-Rosborough by PLAINTIFF(S). (RUDD, J.) (Entered: 10/29/2012) |
| 10/29/2012 | 4106 | Short Form Complaint - Estate of Duerson by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 10/29/2012) |
| 10/30/2012 | 4107 | MOTION for Extension of Time to File filed by PLAINTIFF(S). Plaintiffs' Uncontested Motion for Extension of Deadline to Submit Initial Time & Expense Reports. Certificate of Service. (Attachments: # 1 Text of Proposed Order)(KENNEY, JEANNINE) Modified on 11/6/2012 (tjd). (Entered: 10/30/2012) |

| 10/30/2012 | 4108 | NOTICE by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC. re 3592 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Notice of Correction)*. Certificate of Service. (WISE, ROBERT) Modified on 11/6/2012 (tjd). (Entered: 10/30/2012) |
|---|---|---|
| 10/31/2012 | 4109 | Short Form Complaint - Louis Breeden by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4110 | Short Form Complaint - Jack Brewer by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4111 | Short Form Complaint - Ronnie Cruz by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4112 | Short Form Complaint - Barrett Green by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4113 | Short Form Complaint - Rondell T. Jones by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4114 | Short Form Complaint - Joseph Robert Redmond by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4115 | Short Form Complaint - Avon Riley by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4116 | Short Form Complaint - Ronald Smith by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4117 | Short Form Complaint - Richard L. Braham, Jr. and Connie J. Braham by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4118 | Short Form Complaint - John Fina and Melissa Fina by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4119 | Short Form Complaint - Dennis Fowlkes and Janice Fowlkes by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4120 | Short Form Complaint - Kenneth D. Gant and Theresa L. Gant by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4121 | Short Form Complaint - Donald Hayes and Libby Hayes by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4122 | Short Form Complaint - Zachary Hilton and Jenna Hilton by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4123 | Short Form Complaint - Earl Johnson and Jewell Johnson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4124 | Short Form Complaint - James Lockette and Tracy Lockette by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4125 | Short Form Complaint - Alex Molden and Christin Molden by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4126 | Short Form Complaint - Mark Mullaney and Lynette Mullaney by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |

| 10/31/2012 | 4127 | Short Form Complaint - Matt Patchan and Deane Patchan by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4128 | Short Form Complaint - Grady Richardson and Cynthia Abdallah-Richardson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4129 | Short Form Complaint - Robert Sowell and Gail Sowell by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/31/2012) |
| 10/31/2012 | 4130 | RESPONSE in Opposition re 3589 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *The Amended Master Administrative Long-Form Complaint* filed by PLAINTIFF(S), PLAINTIFFS' STEERING COMMITTEE. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(WEISS, SOL) (Entered: 10/31/2012) |
| 10/31/2012 | 4131 | RESPONSE in Opposition re 3590 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *The Master Administrative Class Action Complaint* filed by PLAINTIFF(S), PLAINTIFFS' STEERING COMMITTEE. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(WEISS, SOL) (Entered: 10/31/2012) |
| 10/31/2012 | 4132 | RESPONSE in Opposition re 3589 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *The Amended Master Administrative Long-Form Complaint* filed by PLAINTIFF(S). (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service) (LIPPSMITH, GRAHAM) (Entered: 10/31/2012) |
| 10/31/2012 | 4133 | RESPONSE in Opposition re 3592 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by PLAINTIFF(S), PLAINTIFFS' STEERING COMMITTEE. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(WEISS, SOL) (Entered: 10/31/2012) |
| 10/31/2012 | 4134 | RESPONSE in Opposition re 3593 MOTION to Sever filed by PLAINTIFF(S), PLAINTIFFS' STEERING COMMITTEE. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(WEISS, SOL) (Entered: 10/31/2012) |
| 10/31/2012 | 4135 | ORDER - UPON CONSIDERATION OF PLAINTIFFS' UNCONTESTED MOTION FOR EXTENSION OF DEADLINE TO FILE INITIAL TIME & EXPENSE REPORTS, IT IS HEREBY ORDERED that PLAINTIFFS' MOTION GRANTED. PLAINTIFFS' COUNSEL SHALL, ON OR BEFORE NOVEMBER 7, 2012, SUBMIT THEIR INITIAL TIME AND EXPENSE REPORTS FOR THE TIME PERIOD OF INCEPTION OF THIS MDL THROUGH SEPTEMBER 30, 2012.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/31/2012.10/31/2012 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/31/2012) |
| 10/31/2012 | 4136 | RESPONSE in Opposition re 3593 MOTION to Sever filed by PLAINTIFF(S), PLAINTIFFS' STEERING COMMITTEE. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(WEISS, SOL) (Entered: 10/31/2012) |
| 10/31/2012 | 4137 | RESPONSE in Opposition re 3593 MOTION to Sever filed by PLAINTIFF(S), PLAINTIFFS' STEERING COMMITTEE. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(WEISS, SOL) (Entered: 10/31/2012) |
| 11/01/2012 | 4138 | Short Form Complaint - Billy Davis by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 11/01/2012) |
| 11/01/2012 | 4139 | Short Form Complaint - Todd Sauerbraun by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 11/01/2012) |
| 11/01/2012 | 4140 | Short Form Complaint - DeMarcus Curry and Roxanne Curry by PLAINTIFF(S). (VARGHESE, MANOJ) (Entered: 11/01/2012) |

| 11/01/2012 | 4141 | Short Form Complaint - Paul Miranda and Kimberlie Miranda by PLAINTIFF(S). (VARGHESE, MANOJ) (Entered: 11/01/2012) |
| 11/06/2012 | 4142 | MOTION for Extension of Time to File filed by PLAINTIFF(S).Plaintiffs' Uncontested Motion for Additional Extension of Deadline to Submit Initial Time & Expense Reports. Certificate of Service. (Attachments: # 1 Text of Proposed Order)(KENNEY, JEANNINE) Modified on 11/7/2012 (tjd). (Entered: 11/06/2012) |
| 11/08/2012 | 4143 | ORDER - UPON CONSIDERATION OF PLAINTIFFS' UNCONTESTED MOTION FOR ADDITIONAL EXTENSION OF DEADLINE TO FILE INITIAL TIME & EXPENSE REPORTS, IT IS HEREBY ORDERED that PLAINTIFFS' MOTION IS GRANTED. PLAINTIFFS' COUNSEL SHALL, ON OR BEFORE NOVEMBER 14, 2012, SUBMIT THEIR INITIAL TIME AND EXPENSE REPORTS FOR THE TIME PERIOD OF INCEPTION OF THIS MDL THROUGH SEPTEMBER 30, 2012.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/8/2012.11/8/2012 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/08/2012) |
| 11/12/2012 | 4144 | Short Form Complaint - Melvin Hayes and Jennifer Hayes by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/12/2012) |
| 11/12/2012 | 4145 | Short Form Complaint - James Thornton by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/12/2012) |
| 11/12/2012 | 4146 | Short Form Complaint - Lester Ricard, Jr. by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/12/2012) |
| 11/13/2012 | 4147 | Short Form Complaint *of Regina Antwine Loonie* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 11/13/2012) |
| 11/16/2012 | 4148 | Short Form Complaint - Lynier Bailey by PLAINTIFF(S). (RUDD, J.) (Entered: 11/16/2012) |
| 11/16/2012 | 4149 | Short Form Complaint - Brandi Winans by PLAINTIFF(S). (RUDD, J.) (Entered: 11/16/2012) |
| 11/16/2012 | 4150 | Short Form Complaint - Tarralyn Jones by PLAINTIFF(S). (RUDD, J.) (Entered: 11/16/2012) |
| 11/16/2012 | 4151 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Michael Brooks and Robin Brooks* (LEH, MICHAEL) (Entered: 11/16/2012) |
| 11/16/2012 | 4152 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short-Form Complaint - Douglas C. Jones and Joyce Jones* (LEH, MICHAEL) (Entered: 11/16/2012) |
| 11/16/2012 | 4153 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Charles Yancy and Christina Yancy* (LEH, MICHAEL) (Entered: 11/16/2012) |
| 11/20/2012 | 4154 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Short Form Complaint of Douglas C. Jones* (LUCKASEVIC, JASON) (Entered: 11/20/2012) |
| 11/21/2012 | 4155 | NOTICE by PLAINTIFF(S) *of Reinstatement Of Complaint of Peter Monty and Muriel Monty* (LOCKS, GENE) (Entered: 11/21/2012) |
| 11/21/2012 | 4156 | Short Form Complaint - Jacob Bell by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 11/21/2012) |
| 11/21/2012 | 4157 | Short Form Complaint - Darius Holland by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 11/21/2012) |

| 11/21/2012 | 4158 | Short Form Complaint - George Foster by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 11/21/2012) |
|---|---|---|
| 11/21/2012 | 4159 | Short Form Complaint - Jason Wright by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 11/21/2012) |
| 11/21/2012 | 4160 | Short Form Complaint - J.D. Runnels by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 11/21/2012) |
| 11/21/2012 | 4161 | Short Form Complaint - Jon Ritchie by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 11/21/2012) |
| 11/21/2012 | 4162 | Short Form Complaint - Michael Crawford by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 11/21/2012) |
| 11/21/2012 | 4163 | Short Form Complaint - Todd Devoe by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 11/21/2012) |
| 11/26/2012 | 4164 | AMENDED Short Form Complaint - Glenn and Brande Cadrez by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 11/26/2012) |
| 11/26/2012 | 4165 | Copy of Conditional Transfer Order (CTO-35) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-C 2:12-9465. (tjd) (Entered: 11/26/2012) |
| 11/26/2012 | 4166 | Short Form Complaint - Walker Lee Ashley, Jr. by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4167 | Short Form Complaint - Steve Baylark by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4168 | Short Form Complaint - Cuncho Brown by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4169 | Short Form Complaint - Sean Estrada by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4170 | Short Form Complaint - Scott Farley by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4171 | Short Form Complaint - Anthony Greene by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4172 | Short Form Complaint - Ralph D. Malone by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4173 | Short Form Complaint - Arthur May by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4174 | Short Form Complaint - Jerry Moore by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4175 | Short Form Complaint - Carl Morris by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4176 | Short Form Complaint - Richard Osborne by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4177 | Short Form Complaint - Thomas L. Rentzel by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |

| 11/26/2012 | 4178 | Short Form Complaint - Ronnie Washington by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4179 | Short Form Complaint - Grady Alderman and Nancy J. Alderman by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4180 | Short Form Complaint - John W. Baker and Ellen Priscilla Baker by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4181 | Short Form Complaint - Marion S. Barber, Jr. and Karen P. Barber by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4182 | Short Form Complaint - William A. Belk and Linda J. Belk by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4183 | Short Form Complaint - Vantoniea B. Bowick and Michele A. Bowick by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4184 | Short Form Complaint - Byron Braggs and Annmarie Braggs by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4185 | Short Form Complaint - Michael Brooks and Tara Brooks by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4186 | Short Form Complaint - George Burman and Janet Berl Burman by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4187 | Short Form Complaint - Joseph Caravello and Lisa Caravello by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4188 | Short Form Complaint - John Didion and Anne Marie Didion by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4189 | Short Form Complaint - Mike Dirks and Connie Dirks by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4190 | Short Form Complaint - Joseph C. Ehrmann and Paula Peach Ehrmann by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4191 | Short Form Complaint - Mervyn Fernandez and Brenda Fernandez by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4192 | Short Form Complaint - Mickey Fitzgerald and Suellen Baggette by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4193 | Short Form Complaint - Daniel Fowler and Melanie Fowler by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4194 | Short Form Complaint - Donald Goode and Florence Goode by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4195 | Short Form Complaint - Kenneth Harris and Angela Harris by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4196 | Short Form Complaint - Kenneth Harrison and Debra Harrison by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4197 | Short Form Complaint - Reggie Holmes and Sheila Holmes by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |

| 11/26/2012 | 4198 | Short Form Complaint - Brian Hutson and Angie Hutson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4199 | Short Form Complaint - Lawrence Johnson and Bernetta Johnson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4200 | Short Form Complaint - Robert Jones and Maneesha Jones by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4201 | Short Form Complaint - Andrew Jordan, Jr. and Cynthia A. Jordan by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4202 | Short Form Complaint - Dwight A. Kelley and Barbara Kelley by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4203 | Short Form Complaint - Aaron M. Laing and Holly L. Laing by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4204 | Short Form Complaint - Richard E. McGeorge and Bonnie McGeorge by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4205 | Short Form Complaint - James H. Mitchell and Linda T. Mitchell by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4206 | Short Form Complaint - William M. Neill and Debra Neill by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4207 | Short Form Complaint - Joseph Pellegrini and Valerie Mitchner by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4208 | Short Form Complaint - Robert Brett Petersmark and Lisa E. Petersmark by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4209 | Short Form Complaint - Ronald Pitts and B. Perry Pitts by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/26/2012 | 4210 | Short Form Complaint - George W. Ransdell and Diedre Ransdell by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/26/2012) |
| 11/27/2012 | 4211 | Short Form Complaint - Hugh Richter and Renee Richter by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/27/2012) |
| 11/27/2012 | 4212 | Short Form Complaint - Andre L. Riley and Dawn Riley by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/27/2012) |
| 11/27/2012 | 4213 | Short Form Complaint - Eric Schubert and Michelle Schubert by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/27/2012) |
| 11/27/2012 | 4214 | Short Form Complaint - Charles Walker and Marcia Walker by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/27/2012) |
| 11/27/2012 | 4215 | Short Form Complaint - Edwin Watson, II and Evona Watson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/27/2012) |
| 11/27/2012 | 4216 | Short Form Complaint - William Casey Weldon and Lori Weldon by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/27/2012) |
| 11/27/2012 | 4217 | Short Form Complaint - James Michael White and Phyllis H. White by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/27/2012) |

| 11/27/2012 | 4218 | Short Form Complaint - George Ron Widby and Debbie Widby by PLAINTIFF(S). (LOCKS, GENE) (Entered: 11/27/2012) |
|---|---|---|
| 11/27/2012 | 4219 | ORDER that PLAINTIFF CHRISTOPHER MITCHELL'S CONSENT MOTION FOR LEAVE TO FILE AN AMENDED ABBREVIATED SHORT FORM COMPLAINT IS GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/27/2012. 11/27/2012 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/27/2012) |
| 11/27/2012 | 4220 | Amended Short Form Complaint - Christopher Mitchell and Sharon Mitchell by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/27/2012) |
| 11/29/2012 | 4221 | Copy of Conditional Transfer Order (CTO-36) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: MD-D 1:12-3341. (tjd) (Entered: 11/29/2012) |
| 11/30/2012 | 4222 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Pat Studstill and Rita Studstill* (LOCKS, GENE) (Entered: 11/30/2012) |
| 12/04/2012 | 4223 | Copy of Conditional Transfer Order (CTO-37) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: FLS 1:12-24070; GAN 1:12-3878; MSS 3:12-761; NYS 1:12-8055. (kk, ) (Entered: 12/04/2012) |
| 12/04/2012 | 4224 | MOTION for Leave to File Excess Pages filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.Memorandum, Certificate of Service.(MCCLELLAN, NATHAN) (Entered: 12/04/2012) |
| 12/05/2012 | 4225 | ORDER that PLAINTIFFS SHOW CAUSE NO LATER THAN FRIDAY, DECEMBER 7, 2012, WHY THIS COURT SHOULD NOT GRANT NFL DEFENDANTS' MOTION FOR EXTENSION OF PAGE LIMITS (DKT. NO. 4224). SIGNED BY HONORABLE ANITA B. BRODY ON 12/5/2012. 12/5/2012 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/05/2012) |
| 12/07/2012 | 4226 | Short Form Complaint for Carol Livingston by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/07/2012) |
| 12/07/2012 | 4227 | Short Form Complaint - Al Woodall and Jackie Woodall by PLAINTIFF(S). (LOCKS, GENE) (Entered: 12/07/2012) |
| 12/07/2012 | 4228 | RESPONSE in Opposition re 4224 MOTION for Leave to File Excess Pages filed by PLAINTIFF(S). Certificate of Service. (SEEGER, CHRISTOPHER) Modified on 12/10/2012 (tjd). (Entered: 12/07/2012) |
| 12/10/2012 | 4229 | ORDER that NFL DEFENDANTS' MOTION FOR EXTENSION OF PAGE LIMITS (DKT. NO. 4224) IS GRANTED. HOWEVER, PLAINTIFFS ARE PERMITTED TO FILE A SURREPLY OF EQUAL LENGTH (30 PAGES) NO LATER THAN JANUARY 28, 2013.. SIGNED BY HONORABLE ANITA B. BRODY ON 12/10/2012.12/10/2012 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/10/2012) |
| 12/11/2012 | 4230 | NOTICE of Change of Address by DIANNE M. NAST(NAST, DIANNE) (Entered: 12/11/2012) |
| 12/11/2012 | 4231 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Short Form Complaint of Plaintiff Carlence Mitchell* (LUCKASEVIC, JASON) (Entered: 12/11/2012) |

| | | |
|---|---|---|
| 12/11/2012 | 4232 | Copy of Transfer Order from the JPML that pursuant to 28 U.S.C. 1407 these actions are transferred to the ED-PA and assigned to the Honorable Anita B. Brody for inclusion in the coordintaed or consolidated pretrial proceedings: Woods, FL-M, 8:12-1620; Pyle, NY-S, 1:12-6493. (tjd) (Entered: 12/11/2012) |
| 12/12/2012 | 4233 | Short Form Complaint *Aronson, Douglas* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 12/12/2012) |
| 12/12/2012 | 4234 | Short Form Complaint *Brown, Fred* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 12/12/2012) |
| 12/12/2012 | 4235 | Short Form Complaint *Esene, Levi* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 12/12/2012) |
| 12/12/2012 | 4236 | Short Form Complaint *Ellis, Russell* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 12/12/2012) |
| 12/12/2012 | 4237 | Short Form Complaint *Simpson, Nathan* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 12/12/2012) |
| 12/12/2012 | 4238 | Short Form Complaint *Glover, Richard* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 12/12/2012) |
| 12/12/2012 | 4239 | Short Form Complaint - Kathryn Komlo, as Personal Representative of the Estate of William Jeff Komlo by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 12/12/2012) |
| 12/12/2012 | 4240 | Short Form Complaint - Jason Ogden Buck and Roxi Buck by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 12/12/2012) |
| 12/12/2012 | 4241 | Short Form Complaint - Brian Hansen and Laurie Hansen by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 12/12/2012) |
| 12/12/2012 | 4242 | Short Form Complaint - Lionel James and Kesha James by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 12/12/2012) |
| 12/12/2012 | 4243 | Short Form Complaint - Kelvin Martin and Lynn Martin by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 12/12/2012) |
| 12/12/2012 | 4244 | Short Form Complaint - Leeland McElroy by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 12/12/2012) |
| 12/12/2012 | 4245 | Short Form Complaint - Lucius Sanford by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 12/12/2012) |
| 12/12/2012 | 4246 | Short Form Complaint - Anthony Semple and Dawn Semple by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 12/12/2012) |
| 12/12/2012 | 4247 | Short Form Complaint - Marvin Sims by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 12/12/2012) |
| 12/12/2012 | 4248 | Short Form Complaint - Herbert Welch and Katie Welch by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 12/12/2012) |
| 12/14/2012 | 4249 | Copy of Conditional Transfer Order (CTO-39) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-C 2:12-10184; FL-S 1:12-24261; LA-E 2:12-2881. (tjd) (Entered: 12/14/2012) |

| 12/17/2012 | 4250 | Short Form Complaint - Gordon Smith and Maetha Smith by PLAINTIFF(S). (LOCKS, GENE) (Entered: 12/17/2012) |
|---|---|---|
| 12/17/2012 | 4251 | NOTICE of Appearance by NATHAN M. MCCLELLAN on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC with Certificate of Service for Entry of Appearance of Paul Clement.**(FILED IN ERROR BY ATTY)** (MCCLELLAN, NATHAN) Modified on 12/18/2012 (tjd). (Entered: 12/17/2012) |
| 12/17/2012 | 4252 | REPLY to Response to Motion re 3589 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *The Amended Master Administrative Long-Form Complaint with Certificate of Service* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Declaration and Exhibit)(MCCLELLAN, NATHAN) (Entered: 12/17/2012) |
| 12/17/2012 | 4253 | REPLY to Response to Motion re 3590 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *The Master Administrative Class Action Complaint with Certificate of Service* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Declaration with Exhibit)(MCCLELLAN, NATHAN) (Entered: 12/17/2012) |
| 12/17/2012 | 4254 | REPLY to Response to Motion re 3589 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *The Amended Master Administrative Long-Form Complaint with Certificate of Service* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (MCCLELLAN, NATHAN) (Entered: 12/17/2012) |
| 12/17/2012 | 4255 | REPLY to Response to Motion re 3592 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (CEREGHINI, PAUL) (Entered: 12/17/2012) |
| 12/17/2012 | 4256 | REPLY to Response to Motion re 3593 MOTION to Sever filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (CEREGHINI, PAUL) (Entered: 12/17/2012) |
| 12/17/2012 | 4257 | REPLY to Response to Motion re 3593 MOTION to Sever *re Request for Judicial Notice 3594* filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (CEREGHINI, PAUL) (Entered: 12/17/2012) |
| 12/18/2012 | 4258 | Short Form Complaint *Patrick White* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/18/2012) |
| 12/18/2012 | 4259 | Short Form Complaint *RAHIM ABDULLAH and DENISE ABDULLAH* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/18/2012) |
| 12/18/2012 | 4260 | Short Form Complaint *TONY McCOMBS* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/18/2012) |
| 12/18/2012 | 4261 | Short Form Complaint *JEWERL THOMAS* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/18/2012) |
| 12/18/2012 | 4262 | Short Form Complaint *ERVIN FARRIS* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/18/2012) |

| 12/18/2012 | 4263 | Short Form Complaint *HENRY PHILLIPS and CAPRICE PHILLIPS* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/18/2012) |
| 12/18/2012 | 4264 | Short Form Complaint *PATRICK WHITE* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/18/2012) |
| 12/18/2012 | 4265 | Short Form Complaint *FERNANDO SMITH* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/18/2012) |
| 12/18/2012 | 4266 | Short Form Complaint *WESLEY LYONS* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/18/2012) |
| 12/18/2012 | 4267 | Short Form Complaint *DOMINIQUE ROSS* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/18/2012) |
| 12/18/2012 | 4268 | Short Form Complaint *KELVIN KINNEY* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/18/2012) |
| 12/18/2012 | 4269 | Short Form Complaint *KENNETH WALTER* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/18/2012) |
| 12/18/2012 | 4270 | Short Form Complaint *RONALD WAYNE WALKER* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/18/2012) |
| 12/19/2012 | 4271 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Larry Glen Bowie* (LOCKS, GENE) (Entered: 12/19/2012) |
| 12/20/2012 | 4272 | Short Form Complaint--Andrew Leon Jackson by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4273 | Short Form Complaint--Hannibal Navies by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4274 | Short Form Complaint--Gary Baxter by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4275 | Short Form Complaint--Steve R. Foley by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4276 | Short Form Complaint--Dante Hall by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4277 | Short Form Complaint--Willis Peguese by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4278 | Short Form Complaint--Matt Snider by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4279 | Short Form Complaint--Bruce Thornton by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4280 | Short Form Complaint--Eric Warfield by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4281 | Short Form Complaint--Damon Watts by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4282 | Short Form Complaint--Mark Wheeler by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |

| 12/20/2012 | 4283 | Short Form Complaint--Mark A. Campbell and Kendra Campbell, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
|---|---|---|
| 12/20/2012 | 4284 | Short Form Complaint--Marq V. Cerqua and Andrea Cerqua, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4285 | Short Form Complaint--Stalin Colinet and Kylon Colinet, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4286 | Short Form Complaint--Kevin Bernard Glover and Cestaine Glover, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4287 | Short Form Complaint--Anthony Green and Necole L. Green, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4288 | Short Form Complaint--Donald Anderson and Sheila Anderson, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4289 | Short Form Complaint--Ellis H. Hobbs, III and Monique Hobbs, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4290 | Short Form Complaint--Arthur Jimerson and Angela Jimerson, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4291 | Short Form Complaint--Kris Mangum and Mary Ellen Mangum, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4292 | Short Form Complaint--Alex Moyer and Veletta Marshall Moyer, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4293 | Short Form Complaint--Walter Rasby and Courtney Rasby, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4294 | Short Form Complaint--Adam Schreiber and Angie Schreiber, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4295 | Short Form Complaint--Darwin Walker and Danielle Walker, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/20/2012 | 4296 | Short Form Complaint--Eugene Wilson and Jamie Wilson, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 12/20/2012) |
| 12/21/2012 | 4297 | Short Form Complaint - Lee Jones by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/21/2012) |
| 12/27/2012 | 4298 | Copy of Conditional Transfer Order (CTO-40) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: IL-N 1:12-09957; NY-S 1:12-8977.(kk, ) (Entered: 12/27/2012) |
| 12/28/2012 | 4299 | NOTICE of Withdrawal of Appearance by JOHN MICHAEL RAPPAPORT on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC(RAPPAPORT, JOHN) (Entered: 12/28/2012) |
| 01/02/2013 | 4300 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Short Form Complaint of Roy Foster* (LUCKASEVIC, JASON) (Entered: 01/02/2013) |
| 01/02/2013 | 4301 | NOTICE of Appearance by PAUL D. CLEMENT on behalf of NATIONAL FOOTBALL LEAGUE, INC. with Certificate of Service(CLEMENT, PAUL) (Entered: 01/02/2013) |

**-273-**

| | | |
|---|---|---|
| 01/03/2013 | 4302 | Copy of Conditional Transfer Order (CTO-41) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: NY-S 1:12-9269, 12-9270. (tjd) (Entered: 01/03/2013) |
| 01/03/2013 | 4303 | Short Form Complaint-Charles Dimry, III by PLAINTIFF(S). (SIZEMORE, JESSICA) (Entered: 01/03/2013) |
| 01/03/2013 | 4304 | Short Form Complaint-Craig McEwen by PLAINTIFF(S). (SIZEMORE, JESSICA) (Entered: 01/03/2013) |
| 01/03/2013 | 4305 | Short Form Complaint-Natrone Means and Lashonda Means by PLAINTIFF(S). (SIZEMORE, JESSICA) (Entered: 01/03/2013) |
| 01/03/2013 | 4306 | Short Form Complaint-William W. Peterson and Cristina P. Peterson by PLAINTIFF(S). (SIZEMORE, JESSICA) (Entered: 01/03/2013) |
| 01/03/2013 | 4307 | Short Form Complaint-Alfred Pupunu by PLAINTIFF(S). (SIZEMORE, JESSICA) (Entered: 01/03/2013) |
| 01/03/2013 | 4308 | Short Form Complaint-Donald P. Sutton by PLAINTIFF(S). (SIZEMORE, JESSICA) (Entered: 01/03/2013) |
| 01/03/2013 | 4309 | Short Form Complaint-Aaron M. Taylor by PLAINTIFF(S). (SIZEMORE, JESSICA) (Entered: 01/03/2013) |
| 01/07/2013 | 4310 | Short Form Complaint - Terrence Melton and Margaret Fox by PLAINTIFF(S). (PLYMALE, DOUGLAS) (Entered: 01/07/2013) |
| 01/07/2013 | 4311 | Short Form Complaint - Wallace Dickey and Gleta Dickey by PLAINTIFF(S). (PLYMALE, DOUGLAS) (Entered: 01/07/2013) |
| 01/07/2013 | 4312 | STIPULATION AND ORDER... IT IS HEREBY STIPULATED that DEFENDANTS CONSENT TO PLAINTIFFS' FILING OF A FIRST AMENDED COMPLAINT. APPROVED BY THE COURT:. SIGNED BY HONORABLE ANITA B. BRODY ON 1/3/2013. 1/7/2013 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/07/2013) |
| 01/07/2013 | 4313 | Short Form Complaint - Bobby McCray by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 01/07/2013) |
| 01/07/2013 | 4314 | Short Form Complaint - C.C. Brown by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 01/07/2013) |
| 01/07/2013 | 4315 | Short Form Complaint - Darcy Johnson by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 01/07/2013) |
| 01/07/2013 | 4316 | Short Form Complaint - Deon Anderson by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 01/07/2013) |
| 01/07/2013 | 4317 | Short Form Complaint - Jimmy Kennedy by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 01/07/2013) |
| 01/07/2013 | 4318 | Short Form Complaint - Jon Cooper by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 01/07/2013) |
| 01/07/2013 | 4319 | Short Form Complaint - Keith Lewis by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 01/07/2013) |
| 01/07/2013 | 4320 | Short Form Complaint - Prince Daniels by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 01/07/2013) |

| 01/07/2013 | 4321 | Short Form Complaint - Stacy Andrews by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 01/07/2013) |
| 01/07/2013 | 4322 | Short Form Complaint - Wendell Bryant by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 01/07/2013) |
| 01/08/2013 | 4323 | Short Form Complaint - Wallace Chambers by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/08/2013) |
| 01/08/2013 | 4324 | Short Form Complaint - Greg Fields by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/08/2013) |
| 01/08/2013 | 4325 | Short Form Complaint - Dustin Fox by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/08/2013) |
| 01/08/2013 | 4326 | Short Form Complaint - Steve Grogan by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/08/2013) |
| 01/08/2013 | 4327 | Short Form Complaint - William Kirksey, Jr. by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/08/2013) |
| 01/08/2013 | 4328 | Short Form Complaint - Pete Mikolajewski by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/08/2013) |
| 01/08/2013 | 4329 | Short Form Complaint - Herbert Mul-Key by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/08/2013) |
| 01/08/2013 | 4330 | Short Form Complaint - Freddie Nunn by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/08/2013) |
| 01/08/2013 | 4331 | Short Form Complaint - Michael Perez by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/08/2013) |
| 01/08/2013 | 4332 | Short Form Complaint - Kurt Pierce by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/08/2013) |
| 01/09/2013 | 4333 | Short Form Complaint - Tony L. Bennett by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 01/09/2013) |
| 01/09/2013 | 4334 | Short Form Complaint - Frederick Brock and Shannon Brock by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 01/09/2013) |
| 01/09/2013 | 4335 | Short Form Complaint - William H. Kay and Lauren Kay by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 01/09/2013) |
| 01/09/2013 | 4336 | Short Form Complaint - Quentin Lowry and Tammy Lowry by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 01/09/2013) |
| 01/09/2013 | 4337 | Short Form Complaint - Willie McClendon and Susan McClendon by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 01/09/2013) |
| 01/09/2013 | 4338 | Short Form Complaint - Timothy Roberts and Bridgette Hallmon by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 01/09/2013) |
| 01/09/2013 | 4339 | Short Form Complaint - Anthony Simmons by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 01/09/2013) |
| 01/09/2013 | 4340 | Short Form Complaint - Howard Smothers and Evelyn Smothers by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 01/09/2013) |

| 01/09/2013 | 4341 | Short Form Complaint - Eric W. Wilson and Belinda Wilson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 01/09/2013) |
| 01/09/2013 | 4342 | Short Form Complaint - Ralph Caldwell by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4343 | Short Form Complaint - Zachary Henderson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4344 | Short Form Complaint - Freddie Mitchell by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4345 | Short Form Complaint - Bryan Wagner by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4346 | Short Form Complaint - Egypt Allen and Belinda Allen by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4347 | Short Form Complaint - Brian Bertoia and Holly Bertoia by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4348 | Short Form Complaint - Ken Burke and Karen Burke by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4349 | Short Form Complaint - Stoney Case and Kimberly Case by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4350 | Short Form Complaint - Lazarus Chavez and Donna Chavez by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4351 | Short Form Complaint - Donald P. Dufek and Candace Carver Dufek by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4352 | Short Form Complaint - Stan Eisenhooth and Kari Eisenhooth by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4353 | Short Form Complaint - Wallace Francis and Cheryl Francis by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4354 | Short Form Complaint - Derrick Graham and Kendra Graham by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4355 | Short Form Complaint - Burt Grossman and Liliana Grossman by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4356 | Short Form Complaint - Dean Halverson and Marsha Halverson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4357 | Short Form Complaint - Harold Henson and Karen Henson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4358 | Short Form Complaint - Billy Joe Hobert and Danielle Hobert by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4359 | Short Form Complaint - Joseph Jackson and Terill Jackson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4360 | Short Form Complaint - Jim Kanicki and Sandra Kanicki by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |

| 01/09/2013 | 4361 | Short Form Complaint - Allen Lyday and Teresa Lyday by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4362 | Short Form Complaint - Edward R. Martin, Jr. and Michelke Patricia Gittens-Martin by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4363 | Short Form Complaint - Brady McDonnell and Sherri McDonnell by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4364 | Short Form Complaint - Ken E. Mendenhall and Myerlane Mendenhall by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4365 | Short Form Complaint - Frank Buckley Pope, III and Barbara Pope by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4366 | Short Form Complaint - Kemp Rasmussen and Heather Rasmussen by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4367 | Short Form Complaint - Brian Salonen and Jo May Salonen by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4368 | Short Form Complaint - Daryl Sanders and Barbara T. Sanders by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4369 | Short Form Complaint - William Scribner and Cynthia Scribner by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4370 | Short Form Complaint - Gary Spann and Sandra Sapnn by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4371 | Short Form Complaint - Bruce Taylor and Terrez Taylor by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4372 | Short Form Complaint - James Welch and Betty Welch by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4373 | Short Form Complaint - Alan Wenglikowski and Melissa Wenglikowski by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4374 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Brian Salonen and Jo May Salonen* (LOCKS, GENE) (Entered: 01/09/2013) |
| 01/09/2013 | 4375 | NOTICE of Appearance by ANNE MCGINNESS KEARSE on behalf of PLAINTIFFS with Certificate of Service(KEARSE, ANNE) Modified on 1/10/2013 (tjd). (Entered: 01/09/2013) |
| 01/09/2013 | 4376 | NOTICE of Appearance by DONALD A. MIGLIORI on behalf of PLAINTIFFS with Certificate of Service(MIGLIORI, DONALD) Modified on 1/10/2013 (tjd). (Entered: 01/09/2013) |
| 01/09/2013 | 4377 | Short Form Complaint - *Allen Rice* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4378 | Short Form Complaint - *Anthony Newsome* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4379 | Short Form Complaint - *Baldwin Malcom Frank* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4380 | Short Form Complaint - *Ben Bronson* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |

| 01/09/2013 | 4381 | Short Form Complaint - *Christopher Crooms* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4382 | Short Form Complaint - *Emanuel McNeil* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4383 | Short Form Complaint - *Eric Kelly* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4384 | Short Form Complaint - *Larry Centers* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4385 | Short Form Complaint - *Leland C. Douglas, Jr.* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4386 | Short Form Complaint - *Melvin Aldridge* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4387 | Short Form Complaint - *Patrick Jackson* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4388 | Short Form Complaint - *Patrise Alexander* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4389 | Short Form Complaint - *Patsy Lewis* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4390 | Short Form Complaint - *Richard Johnson* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4391 | Short Form Complaint - *Robert Pollard* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4392 | Short Form Complaint - *Ronnie Coleman* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4393 | Short Form Complaint - *Tim Denton* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4394 | Short Form Complaint - *Tyrone Smith* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/09/2013 | 4395 | Short Form Complaint - *Cassandra Bailey* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/09/2013) |
| 01/10/2013 | 4396 | Short Form Complaint - *Anthony Guillory* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4397 | Short Form Complaint - *Darrell Colbert* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4398 | Short Form Complaint - *Derrick Harris* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4399 | Short Form Complaint - *Edwin Weatherspoon* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4400 | Short Form Complaint - *Fulton Johnson* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |

| 01/10/2013 | 4401 | Short Form Complaint - *Gerald McNeil* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4402 | Short Form Complaint - *Glenell Sanders* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4403 | Short Form Complaint - *James Francis* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4404 | Short Form Complaint - *Jimmy Robinson* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4405 | Short Form Complaint - *Joseph Searles* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4406 | Short Form Complaint - *Keith Woodside* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4407 | Short Form Complaint - *Matthew Sinclair* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4408 | Short Form Complaint - *Michael Dumas* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4409 | Short Form Complaint - *Milton Wynn* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4410 | Short Form Complaint - *Rance Olison* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4411 | Short Form Complaint - *Reatha Brown* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4412 | Short Form Complaint - *Richard Sowells* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4413 | Short Form Complaint - *Ryan McCoy* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4414 | Short Form Complaint - *Thomas Sanders* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4415 | Short Form Complaint - *Victor Jones* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4416 | Short Form Complaint - *Willie Ellison* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/10/2013) |
| 01/10/2013 | 4417 | Short Form Complaint *Marvin Fleming* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4418 | Short Form Complaint - *Charles Logan and Ellen Logan* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4419 | Short Form Complaint - *Quintas McDonald* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4420 | Short Form Complaint - *Alonzo Mitz* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |

| 01/10/2013 | 4421 | Short Form Complaint - *Lawrence Sampleton, Jr. and Edythe Sampleton* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4422 | Short Form Complaint - *Anthony Smith and Teresa Smith* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4423 | Short Form Complaint - *Stephen Starring* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4424 | Short Form Complaint - *Rickie Harris* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4425 | Short Form Complaint - *James Skow and Susan Skow* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4426 | Short Form Complaint - *Mark Higgs* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4427 | Short Form Complaint - *Albert Dixon and Charlene Frost-Dixon* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4428 | Short Form Complaint - *Terry Nelson and Frances Nelson* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4429 | Short Form Complaint - *Donald Westbrook, Jr. and Alfreda Westbrook* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4430 | Short Form Complaint - *Milton Mack and Dawn Nunley* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4431 | Short Form Complaint - *Rick Parros* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4432 | Short Form Complaint - *George Atkinson* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4433 | Short Form Complaint - *Richard Turner and Teresa Turner* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4434 | Short Form Complaint - *William Ryckman* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4435 | Short Form Complaint - *Greg Tremble and Abigail Tremble* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4436 | Short Form Complaint - *Vaughn Lusby* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4437 | Short Form Complaint - *Michael Jolly and Joy Jolly* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4438 | Short Form Complaint - *Jerris McPhail and Mahogany McPhail* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4439 | Short Form Complaint - *Daniel Johnson* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4440 | Short Form Complaint - *Damian Gregory* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |

| 01/10/2013 | 4441 | Short Form Complaint - *Saladin Martin* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4442 | Short Form Complaint - *Ronnie Caveness, Sr.* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4443 | Short Form Complaint - *Bruce Thornton and Janet Thornton* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4444 | Short Form Complaint - *Andrew Provence and Angie Provence* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/10/2013) |
| 01/10/2013 | 4445 | Short Form Complaint - *Estes Banks* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4446 | Short Form Complaint - *Eugene Bowen* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4447 | Short Form Complaint - *Joshua Burr* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4448 | Short Form Complaint - *Vincent Carter* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4449 | Short Form Complaint - *Preston Davis* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4450 | Short Form Complaint - *Enoch Demar* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4451 | Short Form Complaint - *Ernest Dye* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4452 | Short Form Complaint - *Jason Fisk* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4453 | Short Form Complaint - *Steve Gage* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4454 | Short Form Complaint - *Kevin Gogan and Heather Gogan* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4455 | Short Form Complaint - *Ahman Green* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4456 | Short Form Complaint - *Willie Harper* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4457 | Short Form Complaint - *Victor Hobson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4458 | Short Form Complaint - *Keith Jackson and Marion Jackson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4459 | Short Form Complaint - *Claudis James and Emma James* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4460 | Short Form Complaint - *Joe Johnson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |

| 01/10/2013 | 4461 | Short Form Complaint - *James Juriga* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4462 | Short Form Complaint - *Jimmie Kennedy and Jerrilyn Kennedy* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4463 | Short Form Complaint - *Gordon Laro* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4464 | Short Form Complaint - *Clarence Love* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4465 | Short Form Complaint - *Kay McFarland* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4466 | Short Form Complaint - *Kevin McLain* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4467 | Short Form Complaint - *Clifton McNeil* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4468 | Short Form Complaint - *Joe Nastasi* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4469 | Short Form Complaint - *Tony Nathan* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4470 | Short Form Complaint - *Tori Noel* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4471 | Short Form Complaint - *Leon Perry* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4472 | Short Form Complaint - *Leon Seals* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4473 | Short Form Complaint - *Mark Smith* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4474 | Short Form Complaint - *Benjamin Stanley* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4475 | Short Form Complaint - *Damon Thomas* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4476 | Short Form Complaint - *Jimmy Thomas* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4477 | Short Form Complaint - *Jim Weatherly* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4478 | Short Form Complaint - *Rhondy Weston* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4479 | Short Form Complaint - *Raymond White* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4480 | Short Form Complaint - *Erik Williams* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |

| 01/10/2013 | 4481 | Short Form Complaint - *Lee Williamson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/10/2013 | 4482 | Short Form Complaint - *Sean Woodson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/10/2013) |
| 01/11/2013 | 4483 | Short Form Complaint-MIchael Baldassin and Mary Baldissin by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4484 | Short Form Complaint-Tony Bouie and Allison Bouie by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4485 | Short Form Complaint-Irv Cross and Elizabeth Cross by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4486 | Short Form Complaint-Larry Edwards by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4487 | Short Form Complaint-Paul Flatley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4488 | Short Form Complaint-David L. Grayson, Sr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4489 | Short Form Complaint-Melvin Hoover by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4490 | Short Form Complaint-Kristie Long, Adm. of Estate of Douglas M. Long, Deceased by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4491 | Short Form Complaint-Marvin Mattox by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4492 | Short Form Complaint-MIchael McKibben and Randi McKibben by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4493 | Short Form Complaint-Bruce McNorton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4494 | Short Form Complaint-Reggie Rembert by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4495 | Short Form Complaint-Joseph Sweet by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4496 | Copy of Conditional Transfer Order (CTO-42) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: NY-S 1:12-9249. (tjd) (Entered: 01/11/2013) |
| 01/11/2013 | 4497 | Short Form Complaint-Greg Turner and Rhonda Turner by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4498 | Short Form Complaint-Delvin Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4499 | Short Form Complaint-Michael Alford by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4500 | Short Form Complaint-Deon Anderson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |

| 01/11/2013 | 4501 | Short Form Complaint-Anthony Banks by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4502 | Short Form Complaint-Larry Bates by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4503 | Short Form Complaint-Charles Beatty by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4504 | Short Form Complaint-Edward Bell by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4505 | Short Form Complaint-Samuel Blackwell by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4506 | Short Form Complaint-Jerametrius Butler by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4507 | Short Form Complaint-Brandon Christenson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4508 | Short Form Complaint-Roosevelt Collins, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4509 | Short Form Complaint-John Corker by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4510 | Short Form Complaint-Anthony Curtis by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4511 | Short Form Complaint-Ronald Davis by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4512 | Short Form Complaint-Dennis DeVaughn by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4513 | Short Form Complaint-Robert Farmer II by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4514 | Short Form Complaint-John Farris by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4515 | Short Form Complaint-Casey FitzSimmons by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4516 | Short Form Complaint-Reuben Gibson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4517 | Short Form Complaint-Bernardo Harris by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4518 | Short Form Complaint-Cedrick Hardman by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4519 | Short Form Complaint-Steven Kenney by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4520 | Short Form Complaint-Everett Little by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |

| 01/11/2013 | 4521 | *Short Form Complaint-Larry Mallory* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4522 | Short Form Complaint-Corey Mayfield by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4523 | Short Form Complaint-Vincent McCoy by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4524 | Short Form Complaint-Vincent McCoy by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4525 | Short Form Complaint-William Ray Mickens by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4526 | Short Form Complaint-John Milks by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4527 | Short Form Complaint-Eric Mitchel by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4528 | Short Form Complaint-Donald Mosebar by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4529 | Short Form Complaint-Jerry Overton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4530 | Short Form Complaint-Andre President by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4531 | Short Form Complaint-David Richards by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4532 | Short Form Complaint-Isiah Robertson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4533 | Short Form Complaint-Ralph Gregory Sampson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4534 | Short Form Complaint-Jeffrey Severson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4535 | Short Form Complaint-Eric Smedley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4536 | Short Form Complaint-David Smith by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4537 | Short Form Complaint-Donnell Smith by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4538 | Short Form Complaint-Ron Smith by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4539 | Short Form Complaint-Richard Stafford by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4540 | Short Form Complaint-Benjamin Stanley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |

| 01/11/2013 | 4541 | Short Form Complaint-Ralph Stockemer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4542 | Short Form Complaint-Richard Van Druten by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4543 | Short Form Complaint-Bobby Watkins, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4544 | Short Form Complaint-Cephus Weatherspoon by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4545 | Short Form Complaint-Mickell Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4546 | Short Form Complaint-Walter Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4547 | Short Form Complaint-William Keith Wright by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/11/2013) |
| 01/11/2013 | 4548 | Short Form Complaint *Diane Huth, et al.* by PLAINTIFF(S). (RUDD, J.) (Entered: 01/11/2013) |
| 01/14/2013 | 4549 | Short Form Complaint--Corwin Brown and Melissa Brown, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 01/14/2013) |
| 01/14/2013 | 4550 | Short Form Complaint--Langston Walker by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 01/14/2013) |
| 01/15/2013 | 4551 | Short Form Complaint - *Todd Scott* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 01/15/2013) |
| 01/17/2013 | 4552 | Copy of Conditional Transfer Order (CTO-43) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: MO-W 4:12-1492. (tjd) (Entered: 01/17/2013) |
| 01/22/2013 | 4553 | Short Form Complaint *Larry Atkins* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4554 | Short Form Complaint *Antonio Beckham* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4555 | Short Form Complaint *Michael Bennett* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4556 | Short Form Complaint *Peter Brock* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4557 | Short Form Complaint *Anthony Brown* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4558 | Short Form Complaint *Kevin Brown* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4559 | Short Form Complaint *Kenneth Clark* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4560 | Short Form Complaint *Aaron Craver* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |

| 01/22/2013 | 4561 | Short Form Complaint *Prince A. Daniels, Jr.* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4562 | Short Form Complaint *Brian Edwards* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4563 | Short Form Complaint *Raymond Ethridge* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4564 | Short Form Complaint *Justin Fargas* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4565 | Short Form Complaint *Terrell Fletcher* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4566 | Short Form Complaint *Gregg Guenther* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4567 | Short Form Complaint *Michael Harden* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4568 | Short Form Complaint *Matthew Hatchette* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4569 | Short Form Complaint *Chris Hayes* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4570 | Short Form Complaint *Bertell Hollinquest* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4571 | Short Form Complaint *Michael Holmes* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4572 | Short Form Complaint *Darcy Johnson* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4573 | Short Form Complaint *Freddy Keiaho* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4574 | Short Form Compliant *Wali Lundy* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4575 | Short Form Complaint *Elic Mahone* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4576 | Short Form Complaint *Larry Parker, Jr.* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4577 | Short Form Complaint *Stevem Rhem* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4578 | Short Form Complaint *Clifton Ryan, IV* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4579 | Short Form Complaint *Ephraim Salaam* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4580 | Short Form Complaint *Talance Sawyer* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |

| 01/22/2013 | 4581 | Short Form Complaint *Joseph Toledo* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
|---|---|---|
| 01/22/2013 | 4582 | Short Form Complaint *James Washington* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4583 | Short Form Complaint *Jimmy Kennedy* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/22/2013 | 4584 | Short Form Complaint *Christian Netane Maumalanga* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 01/22/2013) |
| 01/23/2013 | 4585 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Plaintiff Steve Kenney ONLY(LIPPSMITH, GRAHAM) (Entered: 01/23/2013) |
| 01/24/2013 | 4586 | Amended Short Form Complaint - *Joe Nastasi* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 01/24/2013) |
| 01/24/2013 | 4587 | Copy of Conditional Transfer Order (CTO-44) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: NY-S 1:12-9269, 12-9270. (tjd) (Entered: 01/25/2013) |
| 01/25/2013 | 4588 | NOTICE of Appearance by KENNETH J. HOLLOWAY on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC with Certificate of Service(HOLLOWAY, KENNETH) (Entered: 01/25/2013) |
| 01/28/2013 | 4589 | SURREPLY OF PLAINTIFFS IN RESPONSE TO DEFENDANTS NATIONAL FOOTBALL LEAGUES AND NFL PROPERTIES LLCS REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT filed by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(WEISS, SOL) Modified on 1/28/2013 (kk, ). (Entered: 01/28/2013) |
| 01/28/2013 | 4590 | NOTICE of Change of Address by JESSICA SIZEMORE(SIZEMORE, JESSICA) (Entered: 01/28/2013) |
| 01/28/2013 | 4591 | REPLY to Response to Motion re 3590 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *The Master Administrative Class Action Complaint SURREPLY OF PLAINTIFFS IN RESPONSE TO DEFENDANTS NATIONAL FOOTBALL LEAGUE'S AND NFL PROPERTIES LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE MASTER ADMINISTRATIVE CLASS ACTION COMPLAINT* filed by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(WEISS, SOL) (Entered: 01/28/2013) |
| 01/29/2013 | 4592 | Short Form Complaint - Thomas A. Baugh and Jean M. Baugh by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/29/2013) |
| 01/29/2013 | 4593 | Short Form Complaint - Patrick Fischer by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/29/2013) |
| 01/29/2013 | 4594 | Short Form Complaint - William Patrick Kenney and Sandra Louise Kenney by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/29/2013) |
| 01/29/2013 | 4595 | Short Form Complaint - William Michael J. Pyle and Candy Pyle by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/29/2013) |
| 01/29/2013 | 4596 | ORDER that ORAL ARGUMENT WILL BE HELD ON TUESDAY, APRIL 9, 2013 AT 10:00 A.M. IN COURTROOM 7-B ON THE 7TH FLOOR OF THE U.S. COURTHOUSE, 601 MARKET ST., PHILADELPHIA, PA.. THE FIRST |

| | | |
|---|---|---|
| | | ARGUMENT WILL COVER THE QUESTION OF PREEMPTION. THE MOTIONS TO BE ARGUED ARE:... IMMEDIATELY FOLLOWING THE PREEMPTION ARGUMENT, I WILL HEAR ARGUMENT ON THE MOTION TO SEVER (ECF #3593) FILED BY ALL AMERICAN SPORTS CORPORATION, ET AL. DEFENDANTS AND PLAINTIFFS WILL EACH HAVE APPROXIMATELY 15 MINUTES TO ARGUE THE MOTION.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/29/2013. 1/29/2013 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/29/2013) |
| 01/31/2013 | 4597 | Short Form Complaint - Tricou Brabham by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/31/2013) |
| 02/01/2013 | 4598 | NOTICE by PLAINTIFF(S) *Notice of Change of Firm Affiliation for Attorney Kellie Lerner*. Certificate of Service. (LERNER, KELLIE) Modified on 2/4/2013 (tjd). (Entered: 02/01/2013) |
| 02/04/2013 | 4599 | Amended Short Form Complaint - *Jimmie Kennedy* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 02/04/2013) |
| 02/04/2013 | 4600 | NOTICE by PLAINTIFF(S) *of Withdrawal of Only Plaintiff Jerrilyn Kennedy from the Short Form Complaint* (THOMAS, PHILIP) (Entered: 02/04/2013) |
| 02/05/2013 | 4601 | NOTICE by PLAINTIFF(S) *of Change of Firm Affiliation* . Certificate of Service. (LERNER, KELLIE) Modified on 2/6/2013 (tjd). (Entered: 02/05/2013) |
| 02/07/2013 | 4602 | Copy of Transfer Order from the JPML that pursuant to 28 U.S.C. 1407 this action is transferred to the ED-PA and assigned to the Honorable Anita B. Brody for inclusion in the coordinated or consolidated pretrial proceedings: MO-WD 4:12-1275; NY-SD 1:12-8284(kk, ) (Entered: 02/08/2013) |
| 02/08/2013 | 4603 | Short Form Complaint - Karen Haynes, Executor of the Estate of Louis Haynes, deceased by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 02/08/2013) |
| 02/08/2013 | 4604 | Short Form Complaint - Dwannah Montgomery, Executor of the Estate of Glenn Montgomery, deceased by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 02/08/2013) |
| 02/08/2013 | 4605 | Short Form Complaint - Shawn Andrews by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 02/08/2013) |
| 02/08/2013 | 4606 | Short Form Complaint - Demetrin Veal by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 02/08/2013) |
| 02/08/2013 | 4607 | Short Form Complaint - Ron Dayne by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 02/08/2013) |
| 02/08/2013 | 4608 | Short Form Complaint - Adrian Cooper by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 02/08/2013) |
| 02/08/2013 | 4609 | Short Form Complaint - Gary Stills by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 02/08/2013) |
| 02/08/2013 | 4610 | STIPULATION *for First Amended Complaint (Dominic Austin, et al.)* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 02/08/2013) |
| 02/08/2013 | 4611 | STIPULATION *for First Amended Complaint (Maurice Aikens, et al.)* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 02/08/2013) |
| 02/12/2013 | 4612 | Amended Short Form Complaint - James Jones by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 02/12/2013) |

| | | |
|---|---|---|
| 02/12/2013 | 4613 | Copy of Conditional Transfer Order (CTO-45) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: LA-E 2:13-138, 13-164. (tjd) (Entered: 02/12/2013) |
| 02/12/2013 | 4614 | Amended Short Form Complaint - *Bobby Smith and Adrienne Smith* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 02/12/2013) |
| 02/12/2013 | 4615 | Amended Short Form Complaint - *Roosevelt Davis and Evelyn Davis* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 02/12/2013) |
| 02/12/2013 | 4616 | Amended Short Form Complaint - *Frank Sutton and Harriet Sutton* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 02/12/2013) |
| 02/13/2013 | 4617 | Amended Short Form Complaint - Anthony Guillory by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/13/2013) |
| 02/13/2013 | 4618 | Amended Short Form Complaint - Joseph Searles by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/13/2013) |
| 02/13/2013 | 4619 | Amended Short Form Complaint- Reatha Brown by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/13/2013) |
| 02/13/2013 | 4620 | Amended Short Form Complaint - Richard Sowells by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/13/2013) |
| 02/13/2013 | 4621 | Amended Short Form Complaint- Willie Ellison by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/13/2013) |
| 02/13/2013 | 4622 | Amended Short Form Complaint- Patsy Lewis by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/13/2013) |
| 02/13/2013 | 4623 | Amended Short Form Complaint- Robert Pollard by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/13/2013) |
| 02/14/2013 | 4624 | Short Form Complaint - *Michael A. Jackson and Kathy Jackson* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 02/14/2013) |
| 02/14/2013 | 4625 | Short Form Complaint - *Frank Pillow* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 02/14/2013) |
| 02/14/2013 | 4626 | Short Form Complaint - *Perry Hartnett* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 02/14/2013) |
| 02/14/2013 | 4627 | Short Form Complaint - *Tony M. Scott* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 02/14/2013) |
| 02/14/2013 | 4628 | Short Form Complaint by PLAINTIFF(S). (BARTIMUS, JAMES) (Entered: 02/14/2013) |
| 02/18/2013 | 4629 | Short Form Complaint - William H. Mathis, Jr. and Mary B. Mathis by PLAINTIFF(S). (LOCKS, GENE) (Entered: 02/18/2013) |
| 02/19/2013 | 4630 | *Short Form Complaint - Gerald Sullivan* by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 02/19/2013) |
| 02/19/2013 | 4631 | *Short Form Complaint - Raymond Austin* by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 02/19/2013) |
| 02/19/2013 | 4632 | *Short Form Complaint - Bruce Herron* by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 02/19/2013) |

| 02/19/2013 | 4633 | NOTICE by PLAINTIFF(S) *of Change of Firm Affiliation* filed by Hollis Salzman. Certificate of Service. (SALZMAN, HOLLIS) Modified on 2/21/2013 (tjd). (Entered: 02/19/2013) |
| 02/25/2013 | 4634 | Short Form Complaint *by Derrick and Alicia McAdoo* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 02/25/2013) |
| 02/25/2013 | 4635 | Short Form Complaint - Curtis McClinton, Jr. and Devanne McClinton by PLAINTIFF(S). (LOCKS, GENE) (Entered: 02/25/2013) |
| 02/28/2013 | 4636 | Copy of Conditional Transfer Order (CTO-46) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: GA-N 1:13-461; TX-S 4:13-318. (tjd) (Entered: 02/28/2013) |
| 03/01/2013 | 4637 | Short Form Complaint *for Paul and Kimberly Irons* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 03/01/2013) |
| 03/01/2013 | 4638 | Short Form Complaint *for Oliver Celestin* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 03/01/2013) |
| 03/04/2013 | 4639 | Short Form Complaint - *Roydell Williams and Annabelle Williams* by PLAINTIFF(S). (PLYMALE, DOUGLAS) (Entered: 03/04/2013) |
| 03/05/2013 | 4640 | NOTICE of Appearance by DWIGHT P. BOSTWICK on behalf of PLAINTIFF(S) with Certificate of Service(BOSTWICK, DWIGHT) (Entered: 03/05/2013) |
| 03/05/2013 | 4641 | NOTICE of Appearance by DWIGHT P. BOSTWICK on behalf of PLAINTIFF(S) with Certificate of Service(BOSTWICK, DWIGHT) (Entered: 03/05/2013) |
| 03/07/2013 | 4642 | Short Form Complaint *Richard Compton* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 03/07/2013) |
| 03/07/2013 | 4643 | Short Form Complaint *Pettis Norman* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 03/07/2013) |
| 03/07/2013 | 4644 | Copy of Conditional Transfer Order (CTO-47) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: NY-S 1:13-988, 13-1066. (tjd) (Entered: 03/07/2013) |
| 03/12/2013 | 4645 | Short Form Complaint - Dave Butz by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4646 | Short Form Complaint - Brad Cieslak by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4647 | Short Form Complaint - Wayne Roby by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4648 | Short Form Complaint - Charles Sumner by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4649 | Short Form Complaint - Ben Wilson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4650 | Short Form Complaint - William L. Aydelette and Rebecca B. Aydelette by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |

| 03/12/2013 | 4651 | Short Form Complaint - Levert Carr and Carol Carr by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4652 | Short Form Complaint - David Diaz-Infante and Audra Diaz-Infante by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4653 | Short Form Complaint - Ken Frost and Marianna Frost by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4654 | Short Form Complaint - Robert Geathers and Debra Geathers by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4655 | Short Form Complaint - Jon Ray Gilliam and Becki Mae Gilliam by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4656 | Short Form Complaint - Derwin L. Gray and Vicki Gray by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4657 | Short Form Complaint - Bob Hyland and Elizabeth Hyland by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4658 | Short Form Complaint - Pete Lougheed and Leslie Lougheed by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4659 | Short Form Complaint - William Mack and Jean Mack by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4660 | Short Form Complaint - Dan McGrew and Brenda McGrew by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4661 | Short Form Complaint - Daniel Medlin and Sara Medlin by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4662 | Short Form Complaint - Barry Pettyjohn and Billie Pettyjohn by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4663 | Short Form Complaint - John Talley and Rebecca Talley by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4664 | Short Form Complaint - Cecil Taylor and Patricia Taylor by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4665 | Short Form Complaint - Tom Tupa and Beth Tupa by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4666 | Short Form Complaint -Christopher Washington and Patricia Ann Siefert-Washington by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4667 | Short Form Complaint - Edward L. Weisacosky and Kim Weisacosky by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/12/2013 | 4668 | Short Form Complaint - Blaise Winter and Angela Winter by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/12/2013) |
| 03/13/2013 | 4669 | NOTICE of Appearance by ROBERT WILLIAM STANKO on behalf of ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC. (STANKO, ROBERT) (Entered: 03/13/2013) |

**-292-**

| 03/13/2013 | 4670 | NOTICE of Appearance by MARTIN N. BUCHANAN on behalf of PLAINTIFF(S) with Certificate of Service (Attachments: # 1 Certificate of Service)(BUCHANAN, MARTIN) (Entered: 03/13/2013) |
| --- | --- | --- |
| 03/14/2013 | 4671 | Short Form Complaint - Corey Dowden by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 03/14/2013) |
| 03/14/2013 | 4672 | Short Form Complaint - Patrick L. Swilling and Robin R. Swilling by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 03/14/2013) |
| 03/14/2013 | 4673 | Short Form Complaint - Norman F. Hodgins, Jr. and Caroline L. Hodgins by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 03/14/2013) |
| 03/14/2013 | 4674 | Short Form Complaint - Dalton Hilliard and Andrea Hilliard by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 03/14/2013) |
| 03/15/2013 | 4675 | Copy of Conditional Transfer Order (CTO-48) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-S 3:13-476, 13-478; MO-W 4:13-200; TX-S 4:13-455. (tjd) (Entered: 03/15/2013) |
| 03/19/2013 | 4676 | Copy of Conditional Transfer Order (CTO-49) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: GA-N 1:13-726; NY-S 1:13-1396. (tjd) (Entered: 03/19/2013) |
| 03/20/2013 | 4677 | Short Form Complaint - Bernard and Nikisha Russ by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 03/20/2013) |
| 03/20/2013 | 4678 | Short Form Complaint - Myron and Kimberly Bell by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 03/20/2013) |
| 03/20/2013 | 4679 | Short Form Complaint - Edgerton Hartwell by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 03/20/2013) |
| 03/20/2013 | 4680 | Short Form Complaint - Robert Tardio by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 03/20/2013) |
| 03/25/2013 | 4681 | Short Form Complaint - Curtis McClinton, Jr. by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4682 | Short Form Complaint - Marvin Allen by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4683 | Short Form Complaint - Bert Askson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4684 | Short Form Complaint - Solomon Bates by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4685 | Short Form Complaint - Chad Bratzke by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4686 | Short Form Complaint - Giovanni Carmazzi by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4687 | Short Form Complaint - Michael Pinkard by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |

| 03/25/2013 | 4688 | Short Form Complaint - John M. Babinecz and Valerie Babinecz by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4689 | Short Form Complaint - Richard Joseph Coady, IV and Kelsey Rae Coady by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4690 | Short Form Complaint - Eddie Lee Cole and Rowena Jenkins Cole by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4691 | Short Form Complaint - Jed Devries and Amy Devries by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4692 | Short Form Complaint - Stan Edwards and Carolyn Edwards by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4693 | Short Form Complaint - Lawrence O. Ely, Jr. and Cheryl Ely by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4694 | Short Form Complaint - Michael Frederick and Cheryl Frederick by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4695 | Short Form Complaint - James Goode and Crystal Goode by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4696 | Short Form Complaint - Byron Hanspard, Sr. and Yolanda Hanspard by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4697 | Short Form Complaint - Mark Herrmann and Susie Herrmann by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4698 | Short Form Complaint - Todd Husak and Kathryn Husak by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4699 | Short Form Complaint - Ronnie Lee and Denise Lee by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4700 | Short Form Complaint - Ronnie Lee and Denise Lee by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/25/2013 | 4701 | Short Form Complaint - Earlie Thomas and Kathleen Thomas by PLAINTIFF(S). (LOCKS, GENE) (Entered: 03/25/2013) |
| 03/27/2013 | 4702 | Short Form Complaint - Arnold Brown and LaRhonda Brown by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4703 | Short Form Complaint - Anthony Bryant by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4704 | Short Form Complaint - Hayward Clay and Sonja Clay by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4705 | *Short Form Complaint - Torrie Cox and Kawana Cox* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4706 | Short Form Complaint - Will Demps by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4707 | Short Form Complaint - Mijoshski Evans by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |

| 03/27/2013 | 4708 | Short Form Complaint - Timothy G. Golden and Nicole Marshall-Golden by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4709 | Short Form Complaint - Bernardo J. Harris and Kellie Harris by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4710 | Short Form Complaint - John A. Jones and Phyllis Jones by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4711 | Short Form Complaint - Bob Maddox and Denise Maddox by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4712 | Short Form Complaint - Jake W. Martin and Barbara Martin by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4713 | Short Form Complaint - Kenneth Miller by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4714 | Short Form Complaint - Ron Morris by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4715 | Short Form Complaint - Rufus Porter by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4716 | Short Form Complaint - Brian Salonen and Jo May Salonen by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4717 | Short Form Complaint - Chuck Scott and Julie Scott by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4718 | Short Form Complaint - Patrick Scott and Tara Dimmer by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4719 | Short Form Complaint - Rodney Soward by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4720 | Short Form Complaint - Raymond Strong, Jr. by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/27/2013 | 4721 | Short Form Complaint - Willie A. Williams by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 03/27/2013) |
| 03/29/2013 | 4722 | Copy of Conditional Transfer Order (CTO-50) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-C 2:13-1755; LA-E 2:13-478. (tjd) (Entered: 03/29/2013) |
| 04/01/2013 | 4723 | Amended Short Form Complaint *Randy Thomas and Teresa Thomas, his wife* by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 04/01/2013) |
| 04/01/2013 | 4724 | Copy of Transfer Order from the JPML that pursuant to 28 U.S.C. 1407 these actions are transferred to the ED-PA and assigned to the Honorable Anita B. Brody for inclusion in the coordinated or consolidated pretrial proceedings: Abbruzzese, NY-S, 1:12-9250. (tjd) (Entered: 04/02/2013) |
| 04/02/2013 | 4725 | Short Form Complaint-Bell by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 04/02/2013) |
| 04/02/2013 | 4726 | Short Form Complaint-Marve by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 04/02/2013) |

| 04/02/2013 | 4727 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Patrick White against Defendant National Football League. Certificate of Service.(FLEISHMAN, WENDY) Modified on 4/3/2013 (tjd). (Entered: 04/02/2013) |
| 04/02/2013 | 4728 | NOTICE by PLAINTIFF(S) *Entry of Appearance by David C. Frederick, Esquire* (WEISS, SOL) (Entered: 04/02/2013) |
| 04/02/2013 | 4729 | NOTICE by PLAINTIFF(S) *Entry of Appearance by Joshua D. Branson, Esquire* (WEISS, SOL) (Entered: 04/02/2013) |
| 04/02/2013 | 4730 | NOTICE by PLAINTIFF(S) *Entry of Appearance by Scott H. Angstreich, Esquire* (WEISS, SOL) (Entered: 04/02/2013) |
| 04/03/2013 | 4731 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Patrick White(MCGLAMRY, MICHAEL) (Entered: 04/03/2013) |
| 04/04/2013 | 4732 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 04/04/2013) |
| 04/04/2013 | 4733 | Notice of Withdrawal of Short Form Complaint of Plaintiffs Olrick Johnson and Amirah Johnson by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 04/04/2013) |
| 04/04/2013 | 4734 | Notice of Withdrawal of Short Form Complaint of Plaintiff Leonard "Bubba" McDowell by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 04/04/2013) |
| 04/06/2013 | 4735 | NOTICE by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC. re 3593 MOTION to Sever *filing Supplemental Appendix 1* (WISE, ROBERT) (Entered: 04/06/2013) |
| 04/08/2013 | 4736 | RESPONSE in Opposition re 28 MOTION to Sever filed by PLAINTIFF(S). (Attachments: # 1 Exhibit)(WEISS, SOL) (Entered: 04/08/2013) |
| 04/09/2013 | 4737 | 🔊 Audio File 4-9-13 10AM, regarding Oral Agrument held on 4-9-13, before HONORABLE ANITA B. BRODY (jlr, ) (Entered: 04/09/2013) |
| 04/09/2013 | 4738 | 🔊 Audio File 4-9-13 11:10AM, regarding Oral Argument PART 2 held on 4-9-13, before HONORABLE ANITA B. BRODY (jlr, ) (Entered: 04/09/2013) |
| 04/12/2013 | 4739 | Amended Short Form Complaint filed by Ethan Kelley and Antoinette Kelley, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 04/12/2013) |
| 04/12/2013 | 4740 | Amended Short Form Complaint filed by Joseph Tuipala and Leah Tuipala, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 04/12/2013) |
| 04/12/2013 | 4741 | Amended Short Form Complaint filed by Kevin Henry and Pamula Henry, his wife by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 04/12/2013) |
| 04/12/2013 | 4742 | Minute Sheet for proceedings held before HONORABLE ANITA B. BRODY: Motion Hearing held on April 9, 2013 re 3590 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; 3589 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; 3593 MOTION to Sever. Court Reporter: Rosalind Burton-Hoop. (tjd) (pc). (Entered: 04/12/2013) |
| 04/12/2013 | 4743 | Short Form Complaint - Greg Camarillo by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 04/12/2013) |
| 04/12/2013 | 4744 | Short Form Complaint - Kelly Talavou by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 04/12/2013) |

| 04/12/2013 | 4745 | Short Form Complaint - Mark Johnson by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 04/12/2013) |
|---|---|---|
| 04/12/2013 | 4746 | Short Form Complaint - Orlando Ruff by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 04/12/2013) |
| 04/12/2013 | 4747 | Short Form Complaint - Reggie Tongue by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 04/12/2013) |
| 04/15/2013 | 4748 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Short Form Complaint for Jason Wright* (Attachments: # 1 Certificate of Service)(THOMPSON, JULIE) (Entered: 04/15/2013) |
| 04/15/2013 | 4749 | Short Form Complaint - Bryant Ortego by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 04/15/2013) |
| 04/15/2013 | 4750 | Short Form Complaint - *Tyler Seau; Sydney Seau; Gina Seau on behalf of H. Seau and J. Seau; Bette Hoffman as trustee of the Tiaina B. Seau, Jr. 2002 Trust* by PLAINTIFF(S). (STRAUSS, STEVEN) (Entered: 04/15/2013) |
| 04/15/2013 | 4751 | Short Form Complaint-Tiaina T. Seau and Luisa T. Seau by PLAINTIFF(S). (SIZEMORE, JESSICA) (Entered: 04/15/2013) |
| 04/16/2013 | 4752 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Short Form Complaint by Victor Adeyanju* (Attachments: # 1 Certificate of Service)(THOMPSON, JULIE) (Entered: 04/16/2013) |
| 04/18/2013 | 4753 | Copy of Conditional Transfer Order (CTO-51) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: FL-S 1:13-21205. (tjd) (Entered: 04/18/2013) |
| 04/18/2013 | 4754 | TRANSCRIPT of Oral Arguments held on April 9, 2013 before The Honorable Anita B. Brody. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/9/2013. Redacted Transcript Deadline set for 5/20/2013. Release of Transcript Restriction set for 7/17/2013. (tjd) (Entered: 04/18/2013) |
| 04/18/2013 | 4755 | Notice of Filing of Official Transcript with Certificate of Service re 4754 Transcript - PDF, 4/18/2013 Entered and Copies Emailed to Liaison Counsel. (tjd) (Entered: 04/18/2013) |
| 04/19/2013 | 4756 | MOTION For Leave to Amend *Civil Action Complaint for Declaratory Relief, Medical Monitoring, Injunctive Relief and Damages* filed by PLAINTIFF(S). Memorandum, Certificate of Service. (Applies to C.A. 12-6774). (Attachments: # 1 Memorandum, # 2 Exhibit A, # 3 Text of Proposed Order, # 4 Certificate of Service)(FLEISHMAN, WENDY) Modified on 4/22/2013 (tjd). (Entered: 04/19/2013) |
| 04/25/2013 | 4757 | Copy of Conditional Transfer Order (CTO-52) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: FL-S 1:13-21213, 13-21262; NY-S 1:13-2273. (tjd) (Entered: 04/25/2013) |
| 04/26/2013 | 4758 | Short Form Complaint - Kay W. Morris by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 04/26/2013) |
| 04/30/2013 | 4759 | NOTICE by PLAINTIFF(S) *Short Form Complaint - Joseph Conwell & Laura McGettigan* (SOHN, BRADFORD) (Entered: 04/30/2013) |

| 04/30/2013 | 4760 | NOTICE by PLAINTIFF(S) *Short Form Complaint - Jeffrey Dellenbach & Mary Dellenbach* (SOHN, BRADFORD) (Entered: 04/30/2013) |
| 04/30/2013 | 4761 | NOTICE by PLAINTIFF(S) *Short Form Complaint - Antoine Fisher* (SOHN, BRADFORD) (Entered: 04/30/2013) |
| 04/30/2013 | 4762 | NOTICE by PLAINTIFF(S) *Short Form Complaint - Randal Hill* (SOHN, BRADFORD) (Entered: 04/30/2013) |
| 04/30/2013 | 4763 | NOTICE by PLAINTIFF(S) *Short Form Complaint - Darrell Malone & Judith Malone* (SOHN, BRADFORD) (Entered: 04/30/2013) |
| 04/30/2013 | 4764 | NOTICE by PLAINTIFF(S) *Short Form Complaint - Shawn Moore* (SOHN, BRADFORD) (Entered: 04/30/2013) |
| 04/30/2013 | 4765 | NOTICE by PLAINTIFF(S) *Short Form Complaint - Joseph Valerio & Jennifer Valerio* (SOHN, BRADFORD) (Entered: 04/30/2013) |
| 04/30/2013 | 4766 | NOTICE by PLAINTIFF(S) *Short Form Complaint - Terrance Glenn* (SOHN, BRADFORD) (Entered: 04/30/2013) |
| 04/30/2013 | 4767 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). NATIONAL FOOTBALL LEAGUE, INC. waiver sent on 4/22/2013, answer due 6/21/2013. (SOHN, BRADFORD) (Entered: 04/30/2013) |
| 04/30/2013 | 4768 | WAIVER OF SERVICE Returned Executed by NFL PROPERTIES LLC. NFL PROPERTIES LLC waiver sent on 4/22/2013, answer due 6/21/2013. (SOHN, BRADFORD) (Entered: 04/30/2013) |
| 04/30/2013 | 4769 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). (SOHN, BRADFORD) (Entered: 04/30/2013) |
| 04/30/2013 | 4770 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). (SOHN, BRADFORD) (Entered: 04/30/2013) |
| 05/01/2013 | 4771 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint on Behalf of Plaintiffs Karl and Melissa M. Powe* (GUDMUNDSON, BRIAN) (Entered: 05/01/2013) |
| 05/01/2013 | 4772 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint on Behalf of Plaintiff Melvin Hoover* (RUDD, J.) (Entered: 05/01/2013) |
| 05/02/2013 | 4773 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Troy Wilson(THOMPSON, JULIE) (Entered: 05/02/2013) |
| 05/02/2013 | 4774 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint TROY WILSON* (THOMPSON, JULIE) (Entered: 05/02/2013) |
| 05/02/2013 | 4775 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To ANDRE REED(THOMPSON, JULIE) (Entered: 05/02/2013) |
| 05/02/2013 | 4776 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Leander Jordan(THOMPSON, JULIE) (Entered: 05/02/2013) |
| 05/02/2013 | 4777 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Hollis Thomas(THOMPSON, JULIE) (Entered: 05/02/2013) |
| 05/02/2013 | 4778 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint by Hollis Thomas* (THOMPSON, JULIE) (Entered: 05/02/2013) |

| 05/02/2013 | 4779 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Maurice Harvey* (LOCKS, GENE) (Entered: 05/02/2013) |
| 05/02/2013 | 4780 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Henry Dejhown Mandley* (LOCKS, GENE) (Entered: 05/02/2013) |
| 05/02/2013 | 4781 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Tom Cox and Gretchen Cox* (LOCKS, GENE) (Entered: 05/02/2013) |
| 05/02/2013 | 4782 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Plaintiff TJ "Travis" Slaughter* (THOMAS, PHILIP) (Entered: 05/02/2013) |
| 05/02/2013 | 4783 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Plaintiff Ronald Dixon* (THOMAS, PHILIP) (Entered: 05/02/2013) |
| 05/03/2013 | 4784 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Deon Anderson(THOMPSON, JULIE) (Entered: 05/03/2013) |
| 05/03/2013 | 4785 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint for Deon Anderson* (THOMPSON, JULIE) (Entered: 05/03/2013) |
| 05/03/2013 | 4786 | Copy of Conditional Transfer Order (CTO-53) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: NY-S 1:13-2579. (tjd) (Entered: 05/03/2013) |
| 05/03/2013 | 4787 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Aaron Wallace(THOMPSON, JULIE) (Entered: 05/03/2013) |
| 05/03/2013 | 4788 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint for Aaron Wallace* (THOMPSON, JULIE) (Entered: 05/03/2013) |
| 05/03/2013 | 4789 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Khari Long(THOMPSON, JULIE) (Entered: 05/03/2013) |
| 05/03/2013 | 4790 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint for Khari Long* (THOMPSON, JULIE) (Entered: 05/03/2013) |
| 05/06/2013 | 4791 | Short Form Complaint - Fletcher Perry by PLAINTIFF(S). (LOCKS, GENE) (Entered: 05/06/2013) |
| 05/06/2013 | 4792 | Short Form Complaint - William Thomas Bettis by PLAINTIFF(S). (LOCKS, GENE) (Entered: 05/06/2013) |
| 05/06/2013 | 4793 | Short Form Complaint - William Quinlan and Beatrice Quinlan by PLAINTIFF(S). (LOCKS, GENE) (Entered: 05/06/2013) |
| 05/08/2013 | 4794 | Short Form Complaint - Gary Anderson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 05/08/2013) |
| 05/08/2013 | 4795 | Short Form Complaint - Phillip Cancik by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 05/08/2013) |
| 05/08/2013 | 4796 | Short Form Complaint - Christopher Duncan by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 05/08/2013) |
| 05/08/2013 | 4797 | Short Form Complaint - William Gay by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 05/08/2013) |
| 05/08/2013 | 4798 | Short Form Complaint - Harry Jones by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 05/08/2013) |

| 05/08/2013 | 4799 | Short Form Complaint - Charles Milstead by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 05/08/2013) |
| 05/08/2013 | 4800 | Short Form Complaint - George Walker by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 05/08/2013) |
| 05/08/2013 | 4801 | Short Form Complaint - Toby Williams by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 05/08/2013) |
| 05/08/2013 | 4802 | Short Form Complaint - James Wilson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 05/08/2013) |
| 05/08/2013 | 4803 | ORDER THAT PLAINTIFFS' MOTION 4756 TO AMEND IN C.A. 12-6774 IS GRANTED; THE AMENDED COMPLAINT ATTACHED TO PLAINTIFFS' MOTION TO AMEND SHALL BE DEEMED FILED. SIGNED BY HONORABLE ANITA B. BRODY ON 5/7/2013;5/9/2013 ENTERED AND COPIES E-MAILED. (APPLIES TO CA. 12-6774).(tjd) (Entered: 05/09/2013) |
| 05/09/2013 | 4804 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Matthew Monger(ROSEN, DAVID) (Entered: 05/09/2013) |
| 05/09/2013 | 4805 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Jimmie Giles(ROSEN, DAVID) (Entered: 05/09/2013) |
| 05/09/2013 | 4806 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Michael Cloud(ROSEN, DAVID) (Entered: 05/09/2013) |
| 05/09/2013 | 4807 | NOTICE by PLAINTIFF(S) *Jimmie Giles, Withdrawal of Short Form Complaint* (ROSEN, DAVID) (Entered: 05/09/2013) |
| 05/09/2013 | 4808 | NOTICE by PLAINTIFF(S) *Michael Clouds Notice of Withdrawal of Short Form Complaint* (ROSEN, DAVID) (Entered: 05/09/2013) |
| 05/09/2013 | 4809 | Short Form Complaint David Lee Allen by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4810 | Short Form Complaint Scotty Anderson by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4811 | Short Form Complaint Tyji Armstrong by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4812 | Short Form Complaint Rodney Bailey by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4813 | Short Form Complaint Mitchell Berger by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4814 | Short Form Complaint Edward W. Berlin by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4815 | Short Form Complaint Kevin Breedlove by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4816 | Short Form Complaint Ceandris "C.C" Brown by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4817 | Short Form Complaint Darrick Brown by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |

| 05/09/2013 | 4818 | Short Form Complaint Kenneth "Ki-Jana" Carter by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4819 | Short Form Complaint Albert Connell by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4820 | Short Form Complaint Sam Cowart by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4821 | Short Form Complaint Anthony Sherrod Davis by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4822 | Short Form Complaint Calvert Ray Dixon, III by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4823 | Short Form Complaint Kevin Ray Dogins by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4824 | Short Form Complaint Lionel Eugene Dotson, Jr. by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4825 | Short Form Complaint Gregory Michael Estandia by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4826 | Short Form Complaint Gregory Favors by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4827 | Short Form Complaint Kenneth Hamlin by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4828 | Short Form Complaint Brandon Haw by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4829 | Short Form Complaint Chris Hetherington by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4830 | Short Form Complaint Tyrone Hopson, Jr. by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4831 | Short Form Complaint Paul Ellis Hubbard, III by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4832 | Short Form Complaint Jarious Jackson by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4833 | Short Form Complaint Max Jean-Gilles by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4834 | Short Form Complaint Jamal Lord by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4835 | Short Form Complaint Sinorice Moss by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4836 | Short Form Complaint Deltha Lee O'Neal, III by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4837 | Short Form Complaint Shantee Orr by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |

| 05/09/2013 | 4838 | Short Form Complaint Samie Parker by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4839 | Short Form Complaint Christopher Raymond Patrick by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4840 | Short Form Complaint Arman Shields by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4841 | Short Form Complaint Darrell Strong by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4842 | Short Form Complaint Donnie M. Walker by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4843 | Short Form Complaint Cedrick Wilson by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4844 | Short Form Complaint Titus Adams and Miranda Adams, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4845 | Short Form Complaint Antonio Armstrong and Dawn Armstrong, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4846 | Short Form Complaint Arno "Chad" Askew and Robin Askew, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4847 | Short Form Complaint Jimmie Bell and Tara Bell, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4848 | Short Form Complaint Tyrone Edward Bell and Alethea Bell, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4849 | Short Form Complaint Cliff Benson and Nancy Benson, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4850 | Short Form Complaint Robert Blackmon and Miran Gayle Blackmon, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4851 | Short Form Complaint Lorenzo Bromell and Alexandria Bromell, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4852 | Short Form Complaint Rico Cannon and Shalon Cannon, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4853 | Short Form Complaint Eric Carter and Tupreme Carter, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4854 | Short Form Complaint Roger Chanoine, Jr and Yolanda Chanoine, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4855 | Short Form Complaint Quincy Coleman and Temeka Coleman, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4856 | Short Form Complaint Troy Adam Drake and Traci Drake, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4857 | Short Form Complaint Joaquin Gonzalez and Yesmi Gonzalez, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |

| 05/09/2013 | 4858 | Short Form Complaint Roy Hart and Amanita Faust-Hart, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4859 | Short Form Complaint Corey Ivy and Emilia Ivy, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4860 | Short Form Complaint Greg Jefferson and Twana Jefferson, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4861 | Short Form Complaint Charles E. Johnson and Tanisha Johnson, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4862 | Short Form Complaint James Joseph and Mary Beth Joseph, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4863 | Short Form Complaint Darren Glenn Lewis and Tammie Lewis, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4864 | Short Form Complaint Wesly Mallard and Whitney Mallard, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4865 | Short Form Complaint Ricky Manning, Jr and Tosha Manning, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4866 | Short Form Complaint Allama Matthews and Theresa Matthews, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4867 | Short Form Complaint Jonathan Adam Meadows and Courtney Carey Meadows, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4868 | Short Form Complaint Lorenzo Neal and Denisha Neal , *his wife* by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4869 | Short Form Complaint Dat Nguyen and Becky Nguyen, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4870 | Short Form Complaint Jeremy M. Parquet and Kristen Parquet, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4871 | Short Form Complaint Elton Patterson and Janice Patterson, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4872 | Short Form Complaint John Pitts and Joyce Pitts, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4873 | Short Form Complaint Joseph Porter and Joi Porter, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4874 | Short Form Complaint Marcellus Rivers and Latasha Rivers, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4875 | Short Form Complaint Bernard Russ and Nikisha Russ, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4876 | Short Form Complaint Marvel Smith and Aellie Smith, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4877 | Short Form Complaint Robaire Fredrick Smith and Monek Smith, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |

| 05/09/2013 | 4878 | Short Form Complaint Brian St. Pierre and Jocelyn St. Pierre, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4879 | Short Form Complaint Kenyatta Walker and Kellie Walker, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4880 | Short Form Complaint Walter Williams and Raina Williams, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/09/2013 | 4881 | Short Form Complaint Grant Wistrom and Melissa Wistrom, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 05/09/2013) |
| 05/10/2013 | 4882 | NOTICE of Appearance by DWIGHT P. BOSTWICK on behalf of PLAINTIFF(S) with Certificate of Service(BOSTWICK, DWIGHT) (Entered: 05/10/2013) |
| 05/10/2013 | 4883 | NOTICE by PLAINTIFF(S) of Withdrawal of Short Form Complaint of Leon Searcy (LUCKASEVIC, JASON) (Entered: 05/10/2013) |
| 05/10/2013 | 4884 | NOTICE by PLAINTIFF(S) of Withdrawal of Short Form Complaint on Behalf of Plaintiff Ralph Stockemer (RUDD, J.) (Entered: 05/10/2013) |
| 05/13/2013 | 4885 | Copy of Conditional Transfer Order (CTO-54) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: MA-D 1:13-11021. (tjd) (Entered: 05/13/2013) |
| 05/13/2013 | 4886 | NOTICE by PLAINTIFF(S) Notice of Withdrawal of Short Form Complaint - Audray McMillian (THOMAS, PHILIP) (Entered: 05/13/2013) |
| 05/14/2013 | 4887 | NOTICE by PLAINTIFF(S) of Withdrawal of Short Form Complaint of Dell McGee and Sue McGee (MARTINEZ-CID, RICARDO) (Entered: 05/14/2013) |
| 05/15/2013 | 4888 | NOTICE by PLAINTIFF(S) of Withdrawal of Short Form Complaint - Joseph F. Kowalweski (LOCKS, GENE) (Entered: 05/15/2013) |
| 05/15/2013 | 4889 | NOTICE by PLAINTIFF(S) of Withdrawal of Short Form Complaint - David Little and Laura Little (LOCKS, GENE) (Entered: 05/15/2013) |
| 05/15/2013 | 4890 | NOTICE by PLAINTIFF(S) of Withdrawal of Short Form Complaint - Ronald Lee Fellows and Debra Lynn Fellows (LOCKS, GENE) (Entered: 05/15/2013) |
| 05/15/2013 | 4891 | NOTICE by PLAINTIFF(S) of Withdrawal of Short Form Complaint - Gerry Allen and Patricia Allen (LOCKS, GENE) (Entered: 05/15/2013) |
| 05/15/2013 | 4892 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To William Roaf(THOMPSON, JULIE) (Entered: 05/15/2013) |
| 05/15/2013 | 4893 | NOTICE by PLAINTIFF(S) Withdrawal of Short Form Complaint by William Roaf (THOMPSON, JULIE) (Entered: 05/15/2013) |
| 05/15/2013 | 4894 | Short Form Complaint Jimmy Dixon III by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4895 | SHORT FORM COMPLAINT GREGORY BRIGGS by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4896 | Short Form Complaint by Anthony Toney by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 05/15/2013) |
| 05/15/2013 | 4897 | SHORT FORM COMPLAINT RONALD MCCLENDON by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |

| 05/15/2013 | 4898 | Short Form Complaint *by Charles E. Arbuckle* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 05/15/2013) |
| 05/15/2013 | 4899 | Short Form Complaint *by Charlie Anderson* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 05/15/2013) |
| 05/15/2013 | 4900 | Short Form Complaint *by Clyde P. Glosson* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 05/15/2013) |
| 05/15/2013 | 4901 | Short Form Complaint *by Curtis Ceasar, Jr.* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 05/15/2013) |
| 05/15/2013 | 4902 | *SHORT FORM COMPLAINT UPTON TYRONE WILLIAMS* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4903 | Short Form Complaint *by Elbert Crawford III* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 05/15/2013) |
| 05/15/2013 | 4904 | Short Form Complaint *by Eric J. Swann* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 05/15/2013) |
| 05/15/2013 | 4905 | Short Form Complaint *by Frankie Smith* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 05/15/2013) |
| 05/15/2013 | 4906 | Short Form Complaint *by Harry Colon* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 05/15/2013) |
| 05/15/2013 | 4907 | Short Form Complaint *by Jermaine Smith* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 05/15/2013) |
| 05/15/2013 | 4908 | Short Form Complaint *by Rod Bernstine* by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 05/15/2013) |
| 05/15/2013 | 4909 | *SHORT FORM COMPLAINT LOUIS D. HOLMES* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4910 | *SHORT FORM COMPLAINT PIERRE WALTERS* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4911 | *SHORT FORM COMPLAINT SEDRICK DEMON CURRY ROBINETT* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4912 | *SHORT FORM COMPLAINT MARCUS MCCAULLEY* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4913 | *SHORT FORM COMPLAINT DEVIN PITTS* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4914 | *SHORT FORM COMPLAINT JELANI HAWKINS* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4915 | *SHORT FORM COMPLAINT JAMAL POWELL* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4916 | *SHORT FORM COMPLAINT AMON ARNOLD* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4917 | *SHORT FORM COMPLAINT BUSTER DAVIS* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |

| 05/15/2013 | 4918 | *SHORT FORM COMPLAINT NATE HYBL* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4919 | *SHORT FORM COMPLAINT JOHN DAVID BOOTY* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4920 | *SHORT FORM COMPLAINT ADAM BERGEN* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4921 | *SHORT FORM COMPLAINT TYREE WASHINGTON* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4922 | *SHORT FORM COMPLAINT SEAN PETE WESTON* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4923 | *SHORT FORM COMPLAINT TOYA JONES* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4924 | *SHORT FORM COMPLAINT SALADIN MCCULLOUGH* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4925 | *SHORT FORM COMPLAINT JAY MOORE* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4926 | *SHORT FORM COMPLAINT DEVON SMITH* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4927 | *SHORT FORM COMPLAINT RICKEY R. AUSTIN* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4928 | *SHORT FORM COMPLAINT JERRY AZUMAH* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4929 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Short Form Complaint - Frank Bernardi* (THOMAS, PHILIP) (Entered: 05/15/2013) |
| 05/15/2013 | 4930 | *SHORT FORM COMPLAINT JOSH BOOTY* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4931 | *SHORT FORM COMPLAINT KENDRICK STARLING* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4932 | *SHORT FORM COMPLAINT JONATHAN JACKSON* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4933 | *SHORT FORM COMPLAINT ANTONIO CHATMAN* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4934 | *SHORT FORM COMPLAINT EDELL SHEPHERD* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4935 | *SHORT FORM COMPLAINT JEROME MATHIS* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4936 | *SHORT FORM COMPLAINT DAYLON MCCUTCHEON* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4937 | *SHORT FORM COMPLAINT BRANDON MANUMALEUNA* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |

| 05/15/2013 | 4938 | *SHORT FORM COMPLAINT CHARLES ALI* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4939 | *SHORT FORM COMPLAINT SULTAN MCCOLLOUGH* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4940 | *SHORT FORM COMPLAINT JAMMAL LORD* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4941 | *SHORT FORM COMPLAINT RODERICK RUTHERFORD* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4942 | *SHORT FORM COMPLAINT JOHNATHAN SMITH* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4943 | *SHORT FORM COMPLAINT PATRICK LYNN SCOTT* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4944 | *SHORT FORM COMPLAINT KEVIN SMITH* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4945 | *SHORT FORM COMPLAINT ANTHONY TAG ROME* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/15/2013 | 4946 | *SHORT FORM COMPLAINT JOJUAN ARMOUR* by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 05/15/2013) |
| 05/16/2013 | 4947 | Copy of Conditional Transfer Order (CTO-55) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: FL-S 1:13-21566. (tjd) (Entered: 05/16/2013) |
| 05/17/2013 | 4948 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Darcy Johnson. Certificate of Service.(THOMPSON, JULIE) Modified on 5/20/2013 (tjd). (Entered: 05/17/2013) |
| 05/17/2013 | 4949 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint for Darcy Johnson*. Certificate of Service. (THOMPSON, JULIE) Modified on 5/20/2013 (tjd). (Entered: 05/17/2013) |
| 05/17/2013 | 4950 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Jimmy Kennedy. Certificate of Service.(THOMPSON, JULIE) Modified on 5/20/2013 (tjd). (Entered: 05/17/2013) |
| 05/17/2013 | 4951 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint for Jimmy Kennedy*. Certificate of Service. (THOMPSON, JULIE) Modified on 5/20/2013 (tjd). (Entered: 05/17/2013) |
| 05/20/2013 | 4952 | NOTICE of Appearance by ANNE MCGINNESS KEARSE on behalf of PLAINTIFF(S) with Certificate of Service(KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4953 | NOTICE of Appearance by DONALD A. MIGLIORI on behalf of PLAINTIFF(S) with Certificate of Service(MIGLIORI, DONALD) (Entered: 05/20/2013) |
| 05/20/2013 | 4954 | *Short Form Complaint - Willie B. Fears, II* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4955 | *Short Form Complaint - Brian "Skip" Hicks* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4956 | *Short Form Complaint - Fred McCrary* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 05/20/2013) |

| 05/20/2013 | 4957 | *Short Form Complaint - Gijon Robinson* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4958 | *Short Form Complaint - Rodney Williams* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4959 | *Short Form Complaint - James Amere Wofford* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4960 | *Short Form Complaint - Tory M. Woodbury* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4961 | Short Form Complaint *for Timothy Petersen* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 05/20/2013) |
| 05/20/2013 | 4962 | Short Form Complaint for Margaret E. Averno, on Behalf of the Estate of Sisto J. Averno, Sr. by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 05/20/2013) |
| 05/20/2013 | 4963 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Kenneth Clark(KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4964 | NOTICE by PLAINTIFF(S) re 4559 Praecipe/Request *Withdrawal of Short Form Complaint for Kenneth Clark* (KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4965 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Prince A. Daniels, Jr. (KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4966 | NOTICE by PLAINTIFF(S) re 4561 Praecipe/Request *Withdrawal of Short Form Complaint for Prince A. Daniels, Jr.* (KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4967 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Matthew Hatchette(KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4968 | NOTICE by PLAINTIFF(S) re 4568 Praecipe/Request *Withdrawal of Short Form Complaint for Matthew Hatchette* (KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4969 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Ephraim Salaam(KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4970 | NOTICE by PLAINTIFF(S) re 4579 Praecipe/Request *Withdrawal of Short Form Complaint for Ephraim Salaam* (KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4971 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To James Washington(KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/20/2013 | 4972 | NOTICE by PLAINTIFF(S) re 4582 Praecipe/Request *Withdrawal of Short Form Complaint for James Washington* (KEARSE, ANNE) (Entered: 05/20/2013) |
| 05/21/2013 | 4973 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Charles Anthony. (Applies to C.A. 12-92).(LEWIS, RICHARD) Modified on 5/22/2013 (tjd). (Entered: 05/21/2013) |
| 05/21/2013 | 4974 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Randy Ragon. (Applies to C.A. 12-92). (LEWIS, RICHARD) Modified on 5/22/2013 (tjd). (Entered: 05/21/2013) |
| 05/21/2013 | 4975 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Joe DeLamielleure and his wife Gerri DeLamielleure. (Applies to C.A. 12-92). (LEWIS, RICHARD) Modified on 5/22/2013 (tjd). (Entered: 05/21/2013) |
| 05/21/2013 | 4976 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Edward White and his wife Joan White. (Applies to C.A. 12-92). (LEWIS, RICHARD) Modified on 5/22/2013 |

| | | (tjd). Modified on 5/28/2013 (tjd, ). (Entered: 05/21/2013) |
|---|---|---|
| 05/22/2013 | 4977 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint of Lloyd Mumphord.* Certificate of Service. (LOCKS, GENE) Modified on 5/22/2013 (tjd). (Entered: 05/22/2013) |
| 05/22/2013 | 4978 | Copy of Conditional Transfer Order (CTO-56) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: TX-S 4:13-1315. (tjd) (Entered: 05/22/2013) |
| 05/24/2013 | 4979 | Short Form Complaint *Cedric Cobbs* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4980 | Short Form Complaint *Robin Cole* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4981 | Short Form Complaint *Howard Ballard and Dwilda Ballard* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4982 | Short Form Complaint *Wilbert Cunningham* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4983 | Short Form Complaint *Dennis Cole* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4984 | Short Form Complaint *Anthony Hargrove* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4985 | Short Form Complaint *Darrell Crawford* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4986 | Short Form Complaint *Cornelius Turner* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4987 | Short Form Complaint *David King* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4988 | Short Form Complaint *Will Hill* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4989 | Short Form Complaint *Karl Powe* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4990 | Short Form Complaint *Donald Sewell* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4991 | Short Form Complaint *Brian Williams* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4992 | Short Form Complaint *Tim Duckworth* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4993 | Short Form Complaint *James Bowers* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4994 | Short Form Complaint *Dennis Haley* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4995 | Short Form Complaint *Derrick Crudup* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |

| 05/24/2013 | 4996 | Short Form Complaint *Raheem Brock* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4997 | Short Form Complaint *Mackel Harris* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4998 | Short Form Complaint *Michael Basnight* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 4999 | Short Form Complaint *Joe Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5000 | Short Form Complaint *Robert Hicks* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5001 | Short Form Complaint *Ira Hillary* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5002 | Short Form Complaint *Anthony Mix* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5003 | Short Form Complaint *LaBrandon Toefield* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5004 | Short Form Complaint *Ryan Yarborough* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5005 | Short Form Complaint *Sean Foster* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5006 | Short Form Complaint *Wamon Buggs* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5007 | Short Form Complaint *Greg Gordon* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5008 | Short Form Complaint *Richard Cooper* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5009 | Short Form Complaint *Derrick Burroughs* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5010 | Short Form Complaint *Daryl Hart* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5011 | Short Form Complaint *Rodney Williams* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5012 | Short Form Complaint *Austin Robbins* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5013 | Short Form Complaint *Thomas Howard* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5014 | Short Form Complaint *Bryant McFadden* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5015 | Short Form Complaint *Bryant Randall* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |

| 05/24/2013 | 5016 | Short Form Complaint *Bernard Williams* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5017 | Short Form Complaint *Chris Miller* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/24/2013) |
| 05/24/2013 | 5018 | Short Form Complaint *for Stanley Winfrey* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 05/24/2013) |
| 05/28/2013 | 5019 | Short Form Complaint - Eran T. Scoggins, Special Administrator for the Estate of Eric T. Scoggins, Sr. by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 05/28/2013) |
| 06/04/2013 | 5020 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Edward White and Joan White* (LEWIS, RICHARD) (Entered: 06/04/2013) |
| 06/04/2013 | 5021 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Joe DeLamielleure and Gerri DeLamielleure* (LEWIS, RICHARD) (Entered: 06/04/2013) |
| 06/04/2013 | 5022 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Mark Arneson and Kristine Arneson* (LEWIS, RICHARD) (Entered: 06/04/2013) |
| 06/04/2013 | 5023 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Randy Ragon* (LEWIS, RICHARD) (Entered: 06/04/2013) |
| 06/05/2013 | 5024 | Short Form Complaint - Darryl and Linda Irvin by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 06/05/2013) |
| 06/05/2013 | 5025 | Short Form Complaint - Derek Tennell by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 06/05/2013) |
| 06/05/2013 | 5026 | Short Form Complaint - Donnell Bennett by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 06/05/2013) |
| 06/05/2013 | 5027 | Short Form Complaint - Jermaine Fazande by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 06/05/2013) |
| 06/05/2013 | 5028 | Short Form Complaint - Kevan Barlow by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 06/05/2013) |
| 06/05/2013 | 5029 | Short Form Complaint - Matt Lawrence by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 06/05/2013) |
| 06/05/2013 | 5030 | Short Form Complaint - Monty Beisel by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 06/05/2013) |
| 06/05/2013 | 5031 | Short Form Complaint - Nick Eason by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 06/05/2013) |
| 06/05/2013 | 5032 | Short Form Complaint - Timothy and Jennifer Baker by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 06/05/2013) |
| 06/05/2013 | 5033 | Short Form Complaint - Tony Bertuca by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 06/05/2013) |
| 06/06/2013 | 5034 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To John Niland and Shaughn Niland . (Applies to C.A. 12-4186). (LEWIS, RICHARD) Modified on 6/10/2013 (tjd). (Entered: 06/06/2013) |
| 06/06/2013 | 5035 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - John Niland and Shaughn Niland*. (Applies to C.A. 12-4186). (LEWIS, RICHARD) Modified on 6/10/2013 (tjd). (Entered: 06/06/2013) |

| 06/06/2013 | 5036 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Joseph Kapp and Jennifer Kapp. (Applies to C.A. 12-92). (LEWIS, RICHARD) Modified on 6/10/2013 (tjd). (Entered: 06/06/2013) |
| 06/06/2013 | 5037 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Joseph Kapp and Jennifer Kapp* . (Applies to C.A. 12-92). (LEWIS, RICHARD) Modified on 6/10/2013 (tjd). (Entered: 06/06/2013) |
| 06/06/2013 | 5038 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Mark Cotney and Carol Cotney. (Applies to C.A. 12-92). (LEWIS, RICHARD) Modified on 6/10/2013 (tjd). (Entered: 06/06/2013) |
| 06/06/2013 | 5039 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Mark Cotney and Carol Cotney*. (Applies to C.A. 12-92). (LEWIS, RICHARD) Modified on 6/10/2013 (tjd). (Entered: 06/06/2013) |
| 06/06/2013 | 5040 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Pete Mikolajewski. (Applies to C.A. 12-4186). (LEWIS, RICHARD) Modified on 6/10/2013 (tjd). (Entered: 06/06/2013) |
| 06/06/2013 | 5041 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Pete Mikolajewski*. (Applies to C.A. 12-4186). (LEWIS, RICHARD) Modified on 6/10/2013 (tjd). (Entered: 06/06/2013) |
| 06/06/2013 | 5042 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Garry "Donny" Anderson. (Applies to C.A. 12-92). (LEWIS, RICHARD) Modified on 6/10/2013 (tjd). (Entered: 06/06/2013) |
| 06/06/2013 | 5043 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Garry "Donny" Anderson*. (Applies to C.A. 12-92). (LEWIS, RICHARD) Modified on 6/10/2013 (tjd). (Entered: 06/06/2013) |
| 06/07/2013 | 5044 | Copy of Conditional Transfer Order (CTO-57) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: FL-S 1:13-21802. (tjd) (Entered: 06/07/2013) |
| 06/07/2013 | 5045 | NOTICE of Withdrawal of Appearance by NEIL ROBERT LIEBERMAN on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. Certificate of Service.(LIEBERMAN, NEIL) Modified on 6/10/2013 (tjd). (Entered: 06/07/2013) |
| 06/10/2013 | 5046 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Edell Shepherd . Certificate of Service. (Applies to C.A. 12-4018). (THOMPSON, JULIE) Modified on 6/11/2013 (tjd). (Entered: 06/10/2013) |
| 06/10/2013 | 5047 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint for Edell Shepherd*. Certificate of Service. (Applies to C.A. 12-4018). (THOMPSON, JULIE) Modified on 6/11/2013 (tjd). (Entered: 06/10/2013) |
| 06/10/2013 | 5048 | NOTICE -- IN RESPONSE TO INQUIRIES BY COUNSEL AND OTHER INTERESTED PARTIES, THE COURT EXPECTS TO ISSUE ITS DECISION ON THE NFL'S MOTION TO DISMISS (DOC. NO. 3589) ON JULY 22, 2013.6/10/2013 ENTERED AND COPIES SENT VIA ECF.(mo, ) (Entered: 06/10/2013) |
| 06/10/2013 | 5049 | NOTICE by PLAINTIFF(S) *Johnny Williams' Short Form Complaint* (CARLSON, CURTIS) (Entered: 06/10/2013) |
| 06/10/2013 | 5050 | NOTICE by PLAINTIFF(S) *Glenn Holt's Short Form Complaint* (CARLSON, CURTIS) (Entered: 06/10/2013) |

| 06/10/2013 | 5051 | Copy of Order from the JPML that the stay of the Panel's conditional transfer order designated as "CTO-56" is LIFTED insofar as it relates to this action and transferred to the ED-PA for inclusion in the coordinated or consolidated pretrial proceedings under 28 U.S.C. 1407 being conducted by the Honorable Anita B. Brody: Gillis, NY-S, 1:13-3027. (tjd) (Entered: 06/11/2013) |
|---|---|---|
| 06/11/2013 | 5052 | Copy of Transfer Order from the JPML that pursuant to 28 U.S.C. 1407 these actions are transferred to the ED-PA and assigned to the Honorable Anita B. Brody for inclusion in the coordinated or consolidated pretrial proceedings: NY-S 1:13-1063, 13-1067, 13-1069, 13-1072, 13-1074, 13-1100. (tjd) (Entered: 06/11/2013) |
| 06/12/2013 | 5053 | Short Form Complaint - Chris Horton by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 06/12/2013) |
| 06/12/2013 | 5054 | Short Form Complaint - Jeff Stover by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 06/12/2013) |
| 06/12/2013 | 5055 | Short Form Complaint - Francis Peay by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 06/12/2013) |
| 06/14/2013 | 5056 | Copy of Conditional Transfer Order (CTO-59) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: NY-S 1:13-3611. (tjd) (Entered: 06/14/2013) |
| 06/17/2013 | 5057 | Short Form Complaint - Darian Barnes and Rebecca Barnes by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5058 | Short Form Complaint - Luke Lawton by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5059 | Short Form Complaint - Michael Siani by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5060 | Short Form Complaint - David L. Smith and Katrina Welch-Smith by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5061 | Short Form Complaint - Michael C. Williams by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5062 | Short Form Complaint - Leonard St. Jean and Susan St. Jean by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5063 | Short Form Complaint - Kenneth W. Blair by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5064 | Short Form Complaint - Jason Brookins by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5065 | Short Form Complaint - Curtis Brown by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5066 | Short Form Complaint - Jerry Drake by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5067 | Short Form Complaint - Robert D. Riggle by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5068 | Short Form Complaint - Mike Roberg by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |

| 06/17/2013 | 5069 | Short Form Complaint - Richard L. Costanzo and Cynthia G. Costanzo by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5070 | Short Form Complaint - Jorge A. Diaz and Katherine Bennet Diaz by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5071 | Short Form Complaint - Patrick Neil Dunsmore and Blanca Dunsmore by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5072 | Short Form Complaint - Michael Gruttandauria and Christine M. Gruttandauria by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5073 | Short Form Complaint - Michael Krenk and Judy Krenk by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5074 | Short Form Complaint - Deandre Maxwell and Tenaya L. Yarbrough-Maxwell by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5075 | Short Form Complaint - Kevin E. McKenzie and Le'ane Marie McKenzie by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5076 | Short Form Complaint - Jeff Miller and Tarsha Miller by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5077 | Short Form Complaint - Johnnie Walton and Earlien Walton by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5078 | Short Form Complaint - Terrence Jackson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5079 | Short Form Complaint - Kyle Kafentzis by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5080 | Short Form Complaint - Nick O'Brien by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5081 | Short Form Complaint - James Broods and Margie Robbins by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5082 | Short Form Complaint - Barney Chavous and Odessa Chavous by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5083 | Short Form Complaint - James Owens by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5084 | Short Form Complaint - Stephen J. Potter by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5085 | Short Form Complaint - Taz Anderson and Jane Gregory Anderson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5086 | Short Form Complaint - Patrick Coleman and Geraldine Coleman by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5087 | Short Form Complaint - Robert Gresham and Joyce Gresham by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5088 | Short Form Complaint - Alfonse Hunter and Rebecca Hunter by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |

| 06/17/2013 | 5089 | Short Form Complaint - Justin Lucas and Coleen Lucas by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5090 | Short Form Complaint - Rohn T. Stark and Ann K. Stark by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5091 | Short Form Complaint - Scott Stauch and Kimberley Stauch by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5092 | Short Form Complaint - Samuel Tidmore and Carol Tidmore by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5093 | Short Form Complaint - James Brooks and Angela M. Brooks by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5094 | Short Form Complaint - Billy Taylor by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5095 | Short Form Complaint - Hank Bjorklund and Victoria B. Bjorklund by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5096 | Short Form Complaint - Howard Carson and Cheryl Carson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5097 | Short Form Complaint - Glenn Ressler and Sandra Ressler by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/17/2013 | 5098 | Short Form Complaint - Richard H. Tyson and Theresa W. Tyson by PLAINTIFF(S). (LOCKS, GENE) (Entered: 06/17/2013) |
| 06/20/2013 | 5099 | Short Form Complaint filed by Gregory Baty by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 06/20/2013) |
| 06/20/2013 | 5100 | Short Form Complaint filed by Anthony Johnson and Shelley Johnson, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 06/20/2013) |
| 06/20/2013 | 5101 | Short Form Complaint filed by Maurice A. Morris and Paula Morris, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 06/20/2013) |
| 06/20/2013 | 5102 | Short Form Complaint filed by Tom Nalen and Denise Nalen, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 06/20/2013) |
| 06/20/2013 | 5103 | Short Form Complaint filed by Jacob Rogers by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 06/20/2013) |
| 06/20/2013 | 5104 | Short Form Complaint filed by Christopher C. Slade and Talisa Slade, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 06/20/2013) |
| 06/20/2013 | 5105 | Short Form Complaint filed by Keith Taylor and Kimberly Taylor, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 06/20/2013) |
| 06/20/2013 | 5106 | Short Form Complaint filed by David H. Widell, Jr. and Shawn Widell, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 06/20/2013) |
| 06/20/2013 | 5107 | Short Form Complaint filed by Douglas J. Widell and Colleen Widell, his wife by PLAINTIFF(S). (MARTINEZ-CID, RICARDO) (Entered: 06/20/2013) |
| 06/24/2013 | 5108 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). NATIONAL FOOTBALL LEAGUE, INC. waiver sent on 6/13/2013, answer due 8/12/2013. (SOHN, BRADFORD) (Entered: 06/24/2013) |

| 06/24/2013 | 5109 | NOTICE by PLAINTIFF(S) *Short Form Complaint - Glenn Earl* (SOHN, BRADFORD) (Entered: 06/24/2013) |
| 06/25/2013 | 5110 | Copy of Conditional Transfer Order (CTO-60) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: NY-S 1:13-3707; WI-E 2:13-624. (tjd) (Entered: 06/25/2013) |
| 06/28/2013 | 5111 | Copy of Conditional Transfer Order (CTO-61) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: FL-S 1:13-22092. (tjd) (Entered: 06/28/2013) |
| 06/28/2013 | 5112 | Short Form Complaint - Bette Schwager, Executrix for the Estate of Bruce Schwager by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 06/28/2013) |
| 06/28/2013 | 5113 | Amended Short Form Complaint *Ervin Farris* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/28/2013) |
| 06/28/2013 | 5114 | Amended Short Form Complaint *Kelvin Kinney* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/28/2013) |
| 06/28/2013 | 5115 | Amended Short Form Complaint *Wesley Lyons* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/28/2013) |
| 06/28/2013 | 5116 | Amended Short Form Complaint *Tony McCombs* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/28/2013) |
| 06/28/2013 | 5117 | Amended Short Form Complaint *Henry Phillips and Caprice Phillips* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/28/2013) |
| 06/28/2013 | 5118 | Amended Short Form Complaint *Dominique Ross* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/28/2013) |
| 06/28/2013 | 5119 | Amended Short Form Complaint *Jewerl Thomas* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/28/2013) |
| 06/28/2013 | 5120 | Amended Short Form Complaint *Ronald Wayne Walker* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/28/2013) |
| 06/28/2013 | 5121 | Amended Short Form Complaint *Kenneth Walter* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/28/2013) |
| 06/28/2013 | 5122 | Amended Short Form Complaint *Thornton Chandler and Karen Chandler* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/28/2013) |
| 06/28/2013 | 5123 | Amended Short Form Complaint *Darryl Oliver and Monica Oliver* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/28/2013) |
| 06/28/2013 | 5124 | Amended Short Form Complaint *Benjamin Rudolph and Leslie Rudolph* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/28/2013) |
| 06/28/2013 | 5125 | Amended Short Form Complaint *Tracy Sanders and Twanda Sanders* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/28/2013) |
| 06/28/2013 | 5126 | Amended Short Form Complaint *Fernando Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/28/2013) |
| 06/28/2013 | 5127 | Amended Short Form Complaint *Godfrey Turner and Sharon Turner* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/28/2013) |

| 07/08/2013 | 5128 | ORDER THAT THE PARTIES ARE TO ENGAGE IN MEDIATION TO DETERMINE IF CONSENSUAL RESOLUTION IS POSSIBLE; THE COURT APPOINTS RETIRED U.S. DISTRICT JUDGE LAYN PHILLIPS AS MEDIATOR WHO IS TO REPORT BACK TO THE COURT ON OR BEFORE 9/3/2013 ON THE RESULTS OF THE MEDIATION; THE PARTIES AND COUNSEL ARE TO REFRAIN FROM PUBLICLY DISCUSSING THE MEDIATION PROCESS OR DISCLOSING ANY DISCUSSIONS THEY MAY HAVE AS PART OF THAT PROCESS WITHOUT FURTHER ORDER OF THE COURT. SIGNED BY HONORABLE ANITA B. BRODY ON 7/8/2013; 7/8/2013 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS).(tjd) (Entered: 07/08/2013) |
|---|---|---|
| 07/09/2013 | 5129 | Short Form Complaint *of David Parks* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/09/2013) |
| 07/09/2013 | 5130 | Short Form Complaint *of Forrest Gregg* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/09/2013) |
| 07/09/2013 | 5131 | Short Form Complaint *of James David* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/09/2013) |
| 07/09/2013 | 5132 | Short Form Complaint *of Richard Davis* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 07/09/2013) |
| 07/11/2013 | 5133 | Copy of Conditional Transfer Order (CTO-62) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: GA-N 1:13-2101; IL-N 1:13-4658. (tjd) (Entered: 07/11/2013) |
| 07/12/2013 | 5134 | Short Form Complaint - Beverly Ann Holt Carpenter, Executrix of the Estate of Lewis Glen Carpenter, Deceased by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/12/2013) |
| 07/16/2013 | 5135 | Copy of Conditional Transfer Order (CTO-63) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-C 2:13-4718. (tjd) (Entered: 07/16/2013) |
| 07/17/2013 | 5136 | Short Form Complaint - Robert A. Watkins, Jr. and Rillis M. Watkins by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/17/2013) |
| 07/17/2013 | 5137 | NOTICE of Withdrawal of Appearance of RICHARD S. LEWIS on behalf of PLAINTIFF(S). Certificate of Service. (ROSEN, DAVID) Modified on 8/2/2013 (tjd). (Entered: 07/17/2013) |
| 07/17/2013 | 5138 | NOTICE of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S) with certificate of service(ROSEN, DAVID) (Entered: 07/17/2013) |
| 07/22/2013 | 5139 | Copy of Conditional Transfer Order (CTO-64) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: HI-D 1:13-330; NY-S 1:13-4673. (tjd) (Entered: 07/22/2013) |
| 07/23/2013 | 5140 | Short Form Complaint - Estate of Leon Gray by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/23/2013) |
| 07/23/2013 | 5141 | Short Form Complaint - Shane Bonham and Laura Bonham by PLAINTIFF(S). (VARGHESE, MANOJ) (Entered: 07/23/2013) |

| 07/24/2013 | 5142 | MOTION to Substitute Attorney filed by PLAINTIFF(S).Certificate of Conference, Certificate of Service. (Attachments: # 1 Certificate of Conference, # 2 Certificate of Service, # 3 Text of Proposed Order)(WASHINGTON, MICKEY) (Entered: 07/24/2013) |
| --- | --- | --- |
| 07/24/2013 | 5143 | MOTION to Amend/Correct *Civil Action Complaint for Declaratory Relief, Medical Monitoring, Injunctive Relief and Damages* filed by PLAINTIFF(S).Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Exhibit A, # 3 Text of Proposed Order, # 4 Certificate of Service)(WASHINGTON, MICKEY) (Entered: 07/24/2013) |
| 07/24/2013 | 5144 | MOTION to Amend/Correct *Civil Action Complaint for Declaratory Relief, Medical Monitoring, Injunctive Relief and Damages* filed by PLAINTIFF(S).Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Exhibit A, # 3 Text of Proposed Order, # 4 Certificate of Service)(WASHINGTON, MICKEY) (Entered: 07/24/2013) |
| 07/24/2013 | 5145 | MOTION to Amend/Correct *Civil Action Complaint for Declaratory Relief, Medical Monitoring, Injunctive Relief and Damages* filed by PLAINTIFF(S).Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Exhibit A, # 3 Text of Proposed Order, # 4 Certificate of Service)(WASHINGTON, MICKEY) (Entered: 07/24/2013) |
| 07/24/2013 | 5146 | MOTION to Amend/Correct *Civil Action Complaint for Declaratory Relief, Medical Monitoring, Injunctive Relief and Damages* filed by PLAINTIFF(S).Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Exhibit A, # 3 Text of Proposed Order, # 4 Certificate of Service)(WASHINGTON, MICKEY) (Entered: 07/24/2013) |
| 07/25/2013 | 5147 | Short Form Complaint - Michael Ball, Jr. by PLAINTIFF(S). (RUDD, J.) (Entered: 07/25/2013) |
| 07/25/2013 | 5148 | Short Form Complaint - Curtis Delgardo by PLAINTIFF(S). (RUDD, J.) (Entered: 07/25/2013) |
| 07/25/2013 | 5149 | Short Form Complaint - Timothy and Sharlene Muhammad by PLAINTIFF(S). (RUDD, J.) (Entered: 07/25/2013) |
| 07/25/2013 | 5150 | Short Form Complaint - Sean Jackson and Khalilah Muhammad by PLAINTIFF(S). (RUDD, J.) (Entered: 07/25/2013) |
| 07/25/2013 | 5151 | Short Form Complaint - Donald and Joyce Webb by PLAINTIFF(S). (RUDD, J.) (Entered: 07/25/2013) |
| 07/29/2013 | 5152 | AMENDED Short Form Complaint - Adrian and Trina Cooper by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/29/2013) |
| 07/29/2013 | 5153 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Kevan Barlow(THOMPSON, JULIE) (Entered: 07/29/2013) |
| 07/29/2013 | 5154 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint for Kevan Barlow* (THOMPSON, JULIE) (Entered: 07/29/2013) |
| 07/29/2013 | 5155 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Donnell Bennett(THOMPSON, JULIE) (Entered: 07/29/2013) |
| 07/29/2013 | 5156 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint for Donnell Bennett* (THOMPSON, JULIE) (Entered: 07/29/2013) |

| 07/31/2013 | 5157 | Short Form Complaint - Mark Schleicher, Administrator on behalf of the Estate of Maurice Schleicher, deceased by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 07/31/2013) |
|---|---|---|
| 07/31/2013 | 5158 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Jeff Kopp and Alycia Kopp* (LOCKS, GENE) (Entered: 07/31/2013) |
| 08/01/2013 | 5159 | Copy of Conditional Transfer Order (CTO-65) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-S 3:13-1676. (tjd) (Entered: 08/01/2013) |
| 08/01/2013 | 5160 | NOTICE by PLAINTIFF(S) *of Reinstatement of Complaint of Peter Campion* (LOCKS, GENE) (Entered: 08/01/2013) |
| 08/01/2013 | 5161 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint - Ricky Moore and Jan Moore* (FRANCO, DAVID) (Entered: 08/01/2013) |
| 08/05/2013 | 5162 | Barnes, Michael - Short Form Complaint by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 08/05/2013) |
| 08/06/2013 | 5163 | NOTICE by PLAINTIFF(S) *CEANDRIS "CC" BROWN WITHDRAWAL OF SHORT FORM COMPLAINT* (MARKS, STEVEN) (Entered: 08/06/2013) |
| 08/09/2013 | 5164 | SFC-12-cv-02728_Matthew Lawrence *Short Form Complaint* by PLAINTIFF(S). (FICK, NATHANIEL) (Entered: 08/09/2013) |
| 08/09/2013 | 5165 | Short Form Complaint *for Dameane Douglas* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 08/09/2013) |
| 08/12/2013 | 5166 | Short Form Complaint-Vince Albritton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5167 | Short Form Complaint-Fred Anderson and Darla Anderson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5168 | Short Form Complaint-Elvin Bethea by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5169 | Short Form Complaint-Keith Biggers by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5170 | Short Form Complaint-Carl Bland and Jonnitra Bland by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5171 | Short Form Complaint-Ahmad Carroll by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5172 | Short Form Complaint-Duane Clemons by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5173 | Short Form Complaint-Gary Dandridge by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5174 | Short Form Complaint-Darrell Davis and Sharron Davis by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5175 | Short Form Complaint-Joe DeLamielleure and Gerri Delamielleure by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |

| 08/12/2013 | 5176 | Short Form Complaint-Bobby Duckworth by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5177 | Short Form Complaint-Alex Espinoza by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5178 | Short Form Complaint-Howard Fest and Marye B. Fest by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5179 | Short Form Complaint-Jon Giesler and Marybeth Giesler by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5180 | Short Form Complaint-Derrel Gofourth and Milissa Gofourth by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5181 | Short Form Complaint-Malcolm Hamilton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5182 | Short Form Complaint-David H. Humm by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5183 | Short Form Complaint-Jabari Jackson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5184 | Short Form Complaint-Noel Jenke by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5185 | Short Form Complaint-Chad Lucas by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5186 | Short Form Complaint-Henry Dejhown Mandley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5187 | Short Form Complaint-Marvin Marshall and LaScotia Marshall by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5188 | Short Form Complaint-Richard Mitchell Palmer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5189 | Short Form Complaint-John M. Pitts and Joyce Pitts by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5190 | Short Form Complaint-Daniel P. Rains and Deborah Rains by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5191 | Short Form Complaint-Thomas Lance Rentzel by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5192 | Short Form Complaint-Randy W. Rich and Cathy Rich by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5193 | Short Form Complaint-Melvin Bo Robinson and Nelda Robinson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5194 | Short Form Complaint-Tyrone Rodgers by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5195 | Short Form Complaint-John C. Rudnay and Linda Rudnay by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |

| 08/12/2013 | 5196 | Short Form Complaint-William Schultz and Rebecca Schultz by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
|---|---|---|
| 08/12/2013 | 5197 | Short Form Complaint-Charles Stackhouse, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5198 | Short Form Complaint-Arthur A. Strozier by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5199 | Short Form Complaint-Arthur W. Thoms, Jr. and Darlene Thoms by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5200 | Short Form Complaint-Edward A. White and Joan White by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5201 | Short Form Complaint-James H. Williams and Crystal Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5202 | Short Form Complaint-John A. Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/12/2013 | 5203 | Short Form Complaint-Edward R. Zeman by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 08/12/2013) |
| 08/15/2013 | 5204 | Short Form Complaint - John Brandes by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/15/2013) |
| 08/15/2013 | 5205 | Short Form Complaint - Kevin M. Edwards by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/15/2013) |
| 08/15/2013 | 5206 | Short Form Complaint - Stephen F. Jackson by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/15/2013) |
| 08/15/2013 | 5207 | Short Form Complaint - Beau Jarrell by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/15/2013) |
| 08/15/2013 | 5208 | Short Form Complaint - Cameron Newton by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/15/2013) |
| 08/15/2013 | 5209 | Short Form Complaint - Roger D. Reynolds by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/15/2013) |
| 08/15/2013 | 5210 | Short Form Complaint - Ronnie Smith by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/15/2013) |
| 08/15/2013 | 5211 | Short Form Complaint - Ronald P. Svarc by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/15/2013) |
| 08/15/2013 | 5212 | Short Form Complaint - A.D. Whitfield, Jr. by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 08/15/2013) |
| 08/16/2013 | 5213 | Amended Short Form Complaint - Matthew Lawrence by PLAINTIFF(S). (FICK, NATHANIEL) (Entered: 08/16/2013) |
| 08/16/2013 | 5214 | Short Form Complaint - Bruce Davis by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/16/2013) |
| 08/16/2013 | 5215 | Short Form Complaint - Damon Mays by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/16/2013) |

| 08/16/2013 | 5216 | Short Form Complaint - Jamal Williams by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/16/2013) |
| 08/16/2013 | 5217 | Short Form Complaint - Jason Kyle by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/16/2013) |
| 08/16/2013 | 5218 | Short Form Complaint - Jason Perry by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/16/2013) |
| 08/16/2013 | 5219 | Short Form Complaint - Jay Moore by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/16/2013) |
| 08/16/2013 | 5220 | Short Form Complaint - John Hall by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/16/2013) |
| 08/16/2013 | 5221 | Short Form Complaint - Junior Siavii by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/16/2013) |
| 08/16/2013 | 5222 | Short Form Complaint - Kareem Moore by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/16/2013) |
| 08/16/2013 | 5223 | Short Form Complaint - Kenneth Tippins by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/16/2013) |
| 08/16/2013 | 5224 | Short Form Complaint - Marquez Branson by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/16/2013) |
| 08/16/2013 | 5225 | Short Form Complaint - Rudy Carpenter by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/16/2013) |
| 08/16/2013 | 5226 | Short Form Complaint - Thomas Williams by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 08/16/2013) |
| 08/20/2013 | 5227 | NOTICE of Appearance by ANNE MCGINNESS KEARSE on behalf of PLAINTIFF(S) with Certificate of Service(KEARSE, ANNE) (Entered: 08/20/2013) |
| 08/20/2013 | 5228 | Robin E. Spiser *Short Form Complaint* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 08/20/2013) |
| 08/20/2013 | 5229 | NOTICE of Appearance by DONALD A. MIGLIORI on behalf of PLAINTIFF(S) with Certificate of Service(MIGLIORI, DONALD) (Entered: 08/20/2013) |
| 08/20/2013 | 5230 | ORDER THAT PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED ORIGINAL COMPLAINT IN C.A. 13-3092 IS DENIED AS MOOT. SIGNED BY HONORABLE ANITA B. BRODY ON 8/19/2013; 8/20/2013 ENTERED AND COPIES E-MAILED. (APPLIES TO C.A. 13-3092).(tjd) (Entered: 08/20/2013) |
| 08/22/2013 | 5231 | Copy of Conditional Transfer Order (CTO-66) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: GA-N 1:13-2564. (tjd) (Entered: 08/22/2013) |
| 08/27/2013 | 5232 | NOTICE of Appearance by JOHN P. FISKE on behalf of PLAINTIFF(S) with Certificate of Service(FISKE, JOHN) (Entered: 08/27/2013) |
| 08/27/2013 | 5233 | NOTICE of Appearance by STEPHANIE S. POLI on behalf of PLAINTIFF(S) with Certificate of Service(POLI, STEPHANIE) (Entered: 08/27/2013) |
| 08/28/2013 | 5234 | Amended Short Form Complaint - *Michael Jones* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 08/28/2013) |

| 08/29/2013 | 5235 | ORDER... AND NOW this 29th DAY OF AUGUST 2013, THE ORDER OF JULY 8, 2013 (ECF NO. 5128) IS MODIFIED TO ALLOW THE PARTIES TO ANNOUNCE THE TERMS OF THE SETTLEMENT OF THE PLAINTIFFS' CLAIMS AGAINST THE NFL DEFENDANTS. BECAUSE THE PROPOSED SETTLEMENT DOES NOT INCLUDE THE RIDDELL DEFENDANTS, THE ORDER OF JULY 8, 2013 REMAINS IN EFFECT AS TO ALL OF THE RIDDELL DEFENDANTS: THEY AND THEIR COUNSEL MUST REFRAIN FORM PUBLICLY DISCUSSING THE MEDIATION PROCESS OR DISCLOSING ANY DISCUSSIONS THEY MAYHAVE AS PART OF THE PROCESS.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/29/2013. 8/29/2013 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/29/2013) |
|---|---|---|
| 08/29/2013 | 5236 | Copy of Conditional Transfer Order (CTO-67) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-C 2:13-5902; FL-S 1:13-22884; IL-N 1:13-5761; TX-S 4:13-2326. (tjd) (Entered: 08/29/2013) |
| 09/05/2013 | 5237 | Copy of Conditional Transfer Order (CTO-68) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: MS-S 3:13-495; NY-S 1:13-5691. (tjd) (Entered: 09/05/2013) |
| 09/06/2013 | 5238 | NOTICE of Withdrawal of Appearance by JESSICA SIZEMORE on behalf of PLAINTIFF(S)(SIZEMORE, JESSICA) (Entered: 09/06/2013) |
| 09/09/2013 | 5239 | Short Form Complaint - William Budness by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 09/09/2013) |
| 09/09/2013 | 5240 | Short Form Complaint - Tony Caldwell by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 09/09/2013) |
| 09/09/2013 | 5241 | Short Form Complaint - Damon Gibson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 09/09/2013) |
| 09/09/2013 | 5242 | Short Form Complaint - Landon Johnson by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 09/09/2013) |
| 09/09/2013 | 5243 | Short Form Complaint - Jimmie H. Jones by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 09/09/2013) |
| 09/09/2013 | 5244 | Short Form Complaint - Jack Laraway by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 09/09/2013) |
| 09/09/2013 | 5245 | Short Form Complaint - James Reaford by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 09/09/2013) |
| 09/09/2013 | 5246 | Short Form Complaint - Joe Rizzo by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 09/09/2013) |
| 09/09/2013 | 5247 | Short Form Complaint - Jimmy Rogers by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 09/09/2013) |
| 09/09/2013 | 5248 | Short Form Complaint - Eugene Sykes by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 09/09/2013) |
| 09/09/2013 | 5249 | Short Form Complaint - Charley Taylor by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 09/09/2013) |

| 09/09/2013 | 5250 | Short Form Complaint - Ralph Williams by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 09/09/2013) |
| 09/09/2013 | 5251 | Short Form Complaint-McElroy *William V.* by PLAINTIFF(S). (BUZBEE, ANTHONY) (Entered: 09/09/2013) |
| 09/09/2013 | 5252 | Praecipe *Short Form Complaint, Bryan Caldwell, plaintiff* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 09/09/2013) |
| 09/09/2013 | 5253 | Praecipe *Short Form Complaint, Severn Reece, Plaintiff* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 09/09/2013) |
| 09/09/2013 | 5254 | Praecipe *Short Form Complaint, Charlie Phillips, plaintiff* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 09/09/2013) |
| 09/09/2013 | 5255 | Praecipe *Short Form Complaint, Pettis Norman and Ivette Norman, plaintiffs* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 09/09/2013) |
| 09/09/2013 | 5256 | Short Form Complaint, Calvin and Henrietta Sears Woods a/n/f Aaron Sears by PLAINTIFF(S). (PECKHAM, CHARLES) (Entered: 09/09/2013) |
| 09/09/2013 | 5257 | Short Form Complaint, Donald Smith by PLAINTIFF(S). (PECKHAM, CHARLES) (Entered: 09/09/2013) |
| 09/09/2013 | 5258 | Short Form Complaint, Jimmie Giles by PLAINTIFF(S). (PECKHAM, CHARLES) (Entered: 09/09/2013) |
| 09/11/2013 | 5259 | Short Form Complaint - Anthony Herrera by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5260 | Short Form Complaint - William Schroeder by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5261 | Short Form Complaint - Bob Nelson by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5262 | Short Form Complaint - Charlie Williams by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5263 | Short Form Complaint - Darrell McClover by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5264 | Short Form Complaint - Derrick Rodgers by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5265 | Short Form Complaint - George Darrah by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5266 | Short Form Complaint - Ian Allen by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5267 | Short Form Complaint - John Gilmore by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5268 | Short Form Complaint - Karl Williams by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5269 | Short Form Complaint - Kenny King by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |

| 09/11/2013 | 5270 | Short Form Complaint - Kevin Mathis by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5271 | Short Form Complaint - Martin Harrison-Sherrod by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5272 | Short Form Complaint - Nate Chittick-Hobgood by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5273 | Short Form Complaint - Paul L. Smith by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5274 | Short Form Complaint - Roderick Lewis by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5275 | Short Form Complaint - Roman Oben by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5276 | Short Form Complaint - Sean Jones by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5277 | Short Form Complaint - Todd McMillon by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5278 | Short Form Complaint - Travis Fisher by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5279 | Short Form Complaint - Jeffrey Holmes, Administrator, for the Estate of Ronald Holmes, deceased by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5280 | Short Form Complaint - Billy Volek by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5281 | Short Form Complaint - Bobby Gray by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5282 | Short Form Complaint - Chansi Stuckey by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5283 | Short Form Complaint - Derek Stanley by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5284 | Short Form Complaint - Ed King by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5285 | Short Form Complaint - Ed McCall by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5286 | Short Form Complaint - Fred Thomas by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5287 | Short Form Complaint - James Dearth by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5288 | Short Form Complaint - Jerry Jones by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5289 | Short Form Complaint - Jim Stuckey by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |

| 09/11/2013 | 5290 | Short Form Complaint - Keilen Dykes by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5291 | Short Form Complaint - Martin Bayless by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5292 | Short Form Complaint - Ryan Sims by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5293 | Short Form Complaint - Tony Gaiter by PLAINTIFF(S). (THOMPSON, JULIE) (Entered: 09/11/2013) |
| 09/11/2013 | 5294 | Short Form Complaint - Dee Bush by PLAINTIFF(S). (MARKOWITZ, NEAL) (Entered: 09/11/2013) |
| 09/12/2013 | 5295 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance of Gene Locks on behalf of Jeff Nixon and Joyce Nixon* (LOCKS, GENE) (Entered: 09/12/2013) |
| 09/13/2013 | 5296 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance of David D. Langfitt on behalf of Jeff Nixon and Joyce Nixon* (LANGFITT, DAVID) (Entered: 09/13/2013) |
| 09/13/2013 | 5297 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance of Michael B. Leh on behalf of Jeff Nixon and Joyce Nixon* (LEH, MICHAEL) (Entered: 09/13/2013) |
| 09/16/2013 | 5298 | Short Form Complaint - Rabih Abdullah by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5299 | Short Form Complaint - Buster Barnett and Sandra E. Barnett by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5300 | Short Form Complaint - Steven Collier by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5301 | Short Form Complaint - Linzy Collins and Sandra Collins by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5302 | Short Form Complaint - Greg Fairchild by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5303 | Short Form Complaint - Alfred Fincher by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5304 | Short Form Complaint - Willie J. Germany and Glorietta Germany by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5305 | Short Form Complaint - William Green and Asia Green by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5306 | Short Form Complaint - Donnie R. Humphry by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |

| 09/16/2013 | 5307 | Short Form Complaint - Peter M. Johns and Patricia B. Johns by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| --- | --- | --- |
| 09/16/2013 | 5308 | Short Form Complaint - Roosevelt Jordan by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5309 | Short Form Complaint - Christopher A. Lindstrom and Dawn Lindstrom by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5310 | Short Form Complaint - Brandon Lynch and Francesca Lynch by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5311 | Short Form Complaint - Tony Mayberry and Rachel Mayberry by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5312 | Short Form Complaint - Andy Parker and Jennifer Parker by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5313 | Short Form Complaint - Michael Renfro and Denise Renfro by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5314 | Short Form Complaint - Courtney Watson by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5315 | Short Form Complaint *of Abdul Hodge and Chabli Hodge, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/16/2013) |
| 09/16/2013 | 5316 | Short Form Complaint *of Andre Purvis and Barbara Purvis, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/16/2013) |
| 09/16/2013 | 5317 | Short Form Complaint *of Basil Mitchell and Santercia Mitchell, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/16/2013) |
| 09/16/2013 | 5318 | Short Form Complaint *Bernard Parmalee and Angela Parmalee, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/16/2013) |
| 09/16/2013 | 5319 | Short Form Complaint *of Brandon Middleton and Denise Middleton, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/16/2013) |
| 09/16/2013 | 5320 | Short Form Complaint - Andre B. Young by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (MCGLAMRY, MICHAEL) (Entered: 09/16/2013) |
| 09/16/2013 | 5321 | Short Form Complaint - Estate of Forrest Blue by PLAINTIFF(S). (Attachments: # 1 Exhibit)(GIBBS, WILLIAM) (Entered: 09/16/2013) |
| 09/16/2013 | 5322 | Short Form Complaint *of Brian Lewis Howard and Samantha Howard, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/16/2013) |
| 09/16/2013 | 5323 | Short Form Complaint *of Chijioke Nwokorie and Jamili Nwokorie, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/16/2013) |

| 09/16/2013 | 5324 | Short Form Complaint *of Christopher Scott and Debra Scott, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/16/2013) |
| 09/16/2013 | 5325 | Short Form Complaint *of Christopher Todd Massey and Sarah Massey, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/16/2013) |
| 09/16/2013 | 5326 | Short Form Complaint *of Curome Cox and Lasonya Cox, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/16/2013) |
| 09/16/2013 | 5327 | Short Form Complaint *of Damion Cook and Janiece Cook, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/16/2013) |
| 09/17/2013 | 5328 | Short Form Complaint *of Darnerien McCants and Roshanda McCants, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/17/2013) |
| 09/17/2013 | 5329 | Short Form Complaint *of David Ball and Carrie Ball, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/17/2013) |
| 09/17/2013 | 5330 | Short Form Complaint *of Derrick Ward and Naomi Ward, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/17/2013) |
| 09/17/2013 | 5331 | Short Form Complaint *of Devin Bush and Kesha Bush, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/17/2013) |
| 09/17/2013 | 5332 | Short Form Complaint *of Dino Mangiero and Jamie Mangiero, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/17/2013) |
| 09/17/2013 | 5333 | Short Form Complaint *of Elliot Eric Silvers and Lauren Silvers, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/17/2013) |
| 09/17/2013 | 5334 | Short Form Complaint *of Freddie Lee Solomon and Angie Solomon, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/17/2013) |
| 09/17/2013 | 5335 | Short Form Complaint *of Gregory Mark and Jessica Mark, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/17/2013) |
| 09/17/2013 | 5336 | Short Form Complaint *of Henry Poteat and Jasmine Poteat, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/17/2013) |
| 09/17/2013 | 5337 | Short Form Complaint *of Howard Stevens and Joyce Stevens, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/17/2013) |
| 09/17/2013 | 5338 | Copy of Conditional Transfer Order (CTO-69) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: GA-N 1:13-2884; LA-E 2:13-5715; NY-S 1:13-6068, 13-6102. (tjd) (Entered: 09/17/2013) |
| 09/18/2013 | 5339 | Short Form Complaint - *Marcus Anderson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5340 | Short Form Complaint - *Ephesians Bartley, II* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5341 | Short Form Complaint - *Richard Bielski* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5342 | Short Form Complaint - *Chris Burkett* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |

| 09/18/2013 | 5343 | Short Form Complaint - *Larry Cowan* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5344 | Short Form Complaint - *Clifton Crosby* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5345 | Short Form Complaint - *James Demerritt* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5346 | Short Form Complaint - *Glenn Derby* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5347 | Short Form Complaint - *Frank Garcia* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5348 | Short Form Complaint - *David Geralds* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5349 | Short Form Complaint - *L. C. Greenwood* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5350 | Short Form Complaint - *Perry Harrington* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5351 | Short Form Complaint - *Russell Todd Hilger* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5352 | Short Form Complaint - *Gerald Jackson, Sr., and Essie Jackson, wife,* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5353 | Short Form Complaint - *Van Jakes* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5354 | Short Form Complaint - *Gregory Johnson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5355 | Short Form Complaint - *Duval Love* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5356 | Short Form Complaint - *Derrell Marshall* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5357 | Short Form Complaint - *John McDougle* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5358 | Short Form Complaint - *Carl Mims* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5359 | Short Form Complaint - *Jeff Moore* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5360 | Short Form Complaint - *Jethro Pugh, Jr.* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5361 | Short Form Complaint - *David Recher* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5362 | Short Form Complaint - *Bobby Riley* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |

| 09/18/2013 | 5363 | Short Form Complaint - *Jay Schroeder* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5364 | Short Form Complaint - *Peter Shorts* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5365 | Short Form Complaint - *Kaseem Sinceno* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5366 | Short Form Complaint - *Bobby L. Smith* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5367 | Short Form Complaint - *Timothy Walton* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5368 | Short Form Complaint - *Reginald E. White, Sr.* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 09/18/2013) |
| 09/18/2013 | 5369 | Short Form Complaint *of Jeremy McKinney and Anya Mckinney his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/18/2013) |
| 09/18/2013 | 5370 | Short Form Complaint *of John Tye Heath Hill and Alexis Hill, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/18/2013) |
| 09/18/2013 | 5371 | Short Form Complaint *of Joseph Odom and Aline Souza, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/18/2013) |
| 09/18/2013 | 5372 | Short Form Complaint *of Kareem Larrimore and Sherron Larrimore, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/18/2013) |
| 09/18/2013 | 5373 | Short Form Complaint *of Kenneth Michael Moore and Cathy Moore, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/18/2013) |
| 09/18/2013 | 5374 | Short Form Complaint *of Kyle Blaine Kosier and Jennifer Kosier, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/18/2013) |
| 09/18/2013 | 5375 | Short Form Complaint *of Michael Rumph and Veronica Rumph, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/18/2013) |
| 09/18/2013 | 5376 | Short Form Complaint *of Mike Compton and Letonya Compton, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/18/2013) |
| 09/18/2013 | 5377 | Short Form Complaint *of Paris Johnson and Michelle Johnson, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/18/2013) |
| 09/18/2013 | 5378 | Short Form Complaint *of Ross Kolodziej and Miriam Kolodziej, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/18/2013) |
| 09/18/2013 | 5379 | Short Form Complaint *of Stephen Spach and Katey Spach, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/18/2013) |
| 09/18/2013 | 5380 | Short Form Complaint *of Todd McNair and Lynnette McNair, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/18/2013) |
| 09/18/2013 | 5381 | Short Form Complaint *of William Duff and Jenifer Duff, his wife* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/18/2013) |
| 09/19/2013 | 5382 | Short Form Complaint *of Chris Akins* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |

| 09/19/2013 | 5383 | Short Form Complaint of *Carlos Humberto Bradley* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5384 | Short Form Complaint of *Vincent B. Brown* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5385 | Short Form Complaint of *Romby Bryant* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5386 | Short Form Complaint of *William Bryant, Jr.* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5387 | Short Form Complaint of *Kendrick Burton* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5388 | Short Form Complaint of *Stanley Patrick Cobbs* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5389 | Short Form Complaint of *Shadwick L. Criss* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5390 | Short Form Complaint of *Daunte Culpepper* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5391 | Short Form Complaint of *Jarius Omar Hayes* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5392 | Short Form Complaint of *Thomas (T.J.) Hollowell* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5393 | Short Form Complaint of *Rashad Holman* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5394 | Short Form Complaint of *Benjamin Ishola* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5395 | Short Form Complaint of *Pasha Aaron Jackson* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5396 | Short Form Complaint of *Chad Jackson* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5397 | Short Form Complaint of *Corey La Vester Jenkins* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5398 | Short Form Complaint of *Bethel Johnson* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5399 | Short Form Complaint of *Doug Johnson* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5400 | Short Form Complaint of *Dwaune Jones* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/19/2013 | 5401 | Short Form Complaint of *Samuel Louis Joseph* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/19/2013) |
| 09/20/2013 | 5402 | Short Form Complaint of *Anthonia Wayne Lee* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |

| 09/20/2013 | 5403 | Short Form Complaint *of Jason Christopher McAddley* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
|---|---|---|
| 09/20/2013 | 5404 | Short Form Complaint *of Prentice McCray* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5405 | Short Form Complaint *of Chris McGaha* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5406 | Short Form Complaint *of Glenn Rashad Moore* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5407 | Short Form Complaint *of Robert S. Moore* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5408 | Short Form Complaint *of Roderick Louis Mullen* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5409 | Short Form Complaint *of Chad A. Mustard* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5410 | Short Form Complaint *of Jerel Myers* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5411 | Short Form Complaint *of Reginald Myles* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5412 | Short Form Complaint *of Brandon Noble* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5413 | Short Form Complaint *of David Nugent* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5414 | Short Form Complaint *of Tom Orosz* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5415 | Short Form Complaint *of Anthony Parker* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5416 | Short Form Complaint *of Clinton Portis* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5417 | Short Form Complaint *of Scott Radecic* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5418 | Short Form Complaint *of Raleigh Roundtree* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5419 | Short Form Complaint *of Timothy Ruddy* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5420 | Short Form Complaint *of Kevin Scott* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5421 | Short Form Complaint *of Timothy Seder* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5422 | Short Form Complaint *of Joshua Shaw* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |

**-332-**

| 09/20/2013 | 5423 | Short Form Complaint *of Travian Smith* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5424 | Short Form Complaint *of Blane E. Smith* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5425 | Short Form Complaint *of Otis Smith* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5426 | Short Form Complaint *of Leonard Stephens, Jr.* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5427 | Short Form Complaint *of Craig Swoope, Sr.* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5428 | Short Form Complaint *of Edward Thomas* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5429 | Short Form Complaint *of Fred Williams* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5430 | Short Form Complaint *Carnell Cadillac Williams* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/20/2013 | 5431 | Short Form Complaint *of Jerron Wishom* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 09/20/2013) |
| 09/23/2013 | 5432 | Short Form Complaint *Nathaniel Wonsley* by PLAINTIFF(S). (PECKHAM, CHARLES) (Entered: 09/23/2013) |
| 09/23/2013 | 5433 | Short Form Complaint *Jesse Anderson* by PLAINTIFF(S). (PECKHAM, CHARLES) (Entered: 09/23/2013) |
| 09/23/2013 | 5434 | Short Form Complaint *Alan Bush* by PLAINTIFF(S). (PECKHAM, CHARLES) (Entered: 09/23/2013) |
| 09/23/2013 | 5435 | Short Form Complaint *Larry Friday* by PLAINTIFF(S). (PECKHAM, CHARLES) (Entered: 09/23/2013) |
| 09/23/2013 | 5436 | Short Form Complaint *Etric Pruitt* by PLAINTIFF(S). (PECKHAM, CHARLES) (Entered: 09/23/2013) |
| 09/24/2013 | 5437 | Copy of Conditional Transfer Order (CTO-70) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: LA-E 2:13-5798. (tjd) (Entered: 09/24/2013) |
| 09/24/2013 | 5438 | NOTICE of Change of Address by FRANK P. BARBARO(BARBARO, FRANK) (Entered: 09/24/2013) |
| 09/24/2013 | 5439 | NOTICE of Change of Address by FRANK P. BARBARO(BARBARO, FRANK) (Entered: 09/24/2013) |
| 09/24/2013 | 5440 | NOTICE of Change of Address by FRANK P. BARBARO(BARBARO, FRANK) (Entered: 09/24/2013) |
| 09/24/2013 | 5441 | NOTICE of Change of Address by FRANK P. BARBARO(BARBARO, FRANK) (Entered: 09/24/2013) |
| 09/24/2013 | 5442 | NOTICE of Change of Address by FRANK P. BARBARO(BARBARO, FRANK) (Entered: 09/24/2013) |

| 09/24/2013 | 5443 | NOTICE of Change of Address by FRANK P. BARBARO(BARBARO, FRANK) (Entered: 09/24/2013) |
| 09/24/2013 | 5444 | NOTICE of Change of Address by FRANK P. BARBARO(BARBARO, FRANK) (Entered: 09/24/2013) |
| 09/24/2013 | 5445 | NOTICE of Change of Address by FRANK P. BARBARO(BARBARO, FRANK) (Entered: 09/24/2013) |
| 09/24/2013 | 5446 | NOTICE of Change of Address by FRANK P. BARBARO(BARBARO, FRANK) (Entered: 09/24/2013) |
| 09/24/2013 | 5447 | NOTICE of Change of Address by FRANK P. BARBARO(BARBARO, FRANK) (Entered: 09/24/2013) |
| 09/24/2013 | 5448 | NOTICE of Change of Address by FRANK P. BARBARO(BARBARO, FRANK) (Entered: 09/24/2013) |
| 09/24/2013 | 5449 | NOTICE of Change of Address by FRANK P. BARBARO(BARBARO, FRANK) (Entered: 09/24/2013) |
| 09/25/2013 | 5450 | Short Form Complaint - Jimmy Williams and Chandra Williams by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 09/25/2013) |
| 09/25/2013 | 5451 | Short Form Complaint - Nolan Franz by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 09/25/2013) |
| 09/25/2013 | 5452 | Short Form Complaint - Rich Mauti and Nancy Mauti by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 09/25/2013) |
| 09/25/2013 | 5453 | Short Form Complaint - Jimmy Keyes and Billie Keyes by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 09/25/2013) |
| 09/26/2013 | 5454 | Copy of Conditional Transfer Order (CTO-71) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-S 3:13-2137; FL-S 1:13-23270, 13-23271, 13-23274; GA-N 1:13-2896; MS-S 3:13-571. (tjd) (Entered: 09/26/2013) |
| 10/02/2013 | 5455 | Short Form Complaint *for Marvin B. Dunn and Linda Dunn* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5456 | Short Form Complaint *for Donald Igwebuike and Princess Igwebuike* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5457 | Short Form Complaint *Tyree Washington and his wife Monica Washington* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5458 | Short Form Complaint *Joseph Ferraro and Genevieve Ferraro* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5459 | Short Form Complaint *Joseph D. Green and Susan Green* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5460 | Short Form Complaint *Charles H. Green and Susan Green* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5461 | Short Form Complaint *for Roger Caron* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |

| 10/02/2013 | 5462 | Short Form Complaint *for Jamar Williams* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5463 | Short Form Complaint *for Donald Herron* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5464 | Short Form Complaint *for Steve Davis and Julia Davis* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5465 | Short Form Complaint *for Michael Flores* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5466 | Short Form Complaint *for Gary Bugenhagen and Denise Bugenhagen* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5467 | Short Form Complaint *for John Fletcher and Shannon Fletcher* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5468 | Short Form Complaint *for Gregory Scales* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5469 | Short Form Complaint *for Joseph W. Washington* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5470 | Short Form Complaint *for Daniel Spradlin* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5471 | Short Form Complaint *for George Harris* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/02/2013 | 5472 | Short Form Complaint *for Vernon Roberson* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/02/2013) |
| 10/03/2013 | 5473 | Short Form Complaint - Davis, Chauncey by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 10/03/2013) |
| 10/04/2013 | 5474 | Short Form Complaint *for Daniel Spradlin and Christie Spradlin* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/04/2013) |
| 10/04/2013 | 5475 | Short Form Complaint *for Carma L. Davis* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/04/2013) |
| 10/09/2013 | 5476 | MOTION Additional Time to Serve Defendant *Riddell, Inc., individually and d/b/a Riddell Sports Group, Inc.* filed by PLAINTIFF(S). Certificate of Service. (Attachments: # 1 Affidavit, # 2 Text of Proposed Order)(PECKHAM, CHARLES) Modified on 10/10/2013 (tjd). (Entered: 10/09/2013) |
| 10/10/2013 | 5477 | ORDER... that THE PLAINTIFFS ARE GRANTED AN ADDITIONAL NINETY (90) DAYS IN WHICH TO SERVE DEFENDANT, RIDDELL, INC., INDIVIDUALLY AND D/B/A RIDDELL SPORTS GROUP, INC., AND THE PLAINTIFFS HAVE NINETY (90) DAYS FROM AND AFTER THE DATE OF THE ORDER TO SERVE DEFENDANT, RIDDELL, INC., INDIVIDUALLY AND D/B/A RIDDELL SPORTS GROUP, INC.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/10/2013.10/10/2013 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/10/2013) |
| 10/11/2013 | 5478 | Short Form Complaint *Antwain and Tiffany Spann* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |

| 10/11/2013 | 5479 | Short Form Complaint *Cory and Jennifer Terry* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5480 | Short Form Complaint *Cory and Lisa Allen* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5481 | Short Form Complaint *Craig Taylor* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5482 | Short Form Complaint *Craig Walendy* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5483 | Short Form Complaint *Dallis Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5484 | Short Form Complaint *Damon Washington* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5485 | Short Form Complaint *David Richardson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5486 | Short Form Complaint *Jerel Stokes* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5487 | Short Form Complaint *John and Dana Fisher* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5488 | Short Form Complaint *J'vonne Parker* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5489 | Short Form Complaint *Larry Croom* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5490 | Short Form Complaint *Luis and Melodie Sharpe* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5491 | Short Form Complaint *Michael and Rosita Bass* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5492 | Short Form Complaint *Nic Harris* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5493 | Short Form Complaint *Pepe Pearson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5494 | Short Form Complaint *Robert Farmer* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5495 | Short Form Complaint *Robert Morris* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5496 | Short Form Complaint *Terence Mathis* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5497 | Short Form Complaint *Timothy Goodwell* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/11/2013 | 5498 | Short Form Complaint *Troy Hambreck-Grant* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |

| 10/11/2013 | 5499 | Short Form Complaint *Vincent Clark* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 10/11/2013) |
| 10/16/2013 | 5500 | Copy of Conditional Transfer Order (CTO-72) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: GA-N 1:13-3184. (tjd) (Entered: 10/16/2013) |
| 10/17/2013 | 5501 | SUMMONS Returned Executed by PLAINTIFF(S) re: Dawn Crosby served Summons and Complaint upon RIDDELL SPORTS GROUP, INC., RIDDELL, INC. by Certified Mail. RIDDELL SPORTS GROUP, INC. served on 8/2/2013, answer due 8/23/2013; RIDDELL, INC. served on 8/2/2013, answer due 8/23/2013. (Attachments: # 1 Supplement)(PECKHAM, CHARLES) (Entered: 10/17/2013) |
| 10/17/2013 | 5502 | Short Form Complaint - The Estate of Gregory McCrary, through Phillip Clinton McCrary, Sr. by PLAINTIFF(S). (Attachments: # 1 Exhibit Letters of Administration) (MCGLAMRY, MICHAEL) (Entered: 10/17/2013) |
| 10/17/2013 | 5503 | Copy of Conditional Transfer Order (CTO-73) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: LA-E 2:13-6056; TX-S 4:13-2914. (kk, ) Modified on 10/29/2013 (tjd). (Entered: 10/17/2013) |
| 10/21/2013 | 5504 | MOTION TO INTERVENE INTO THE ADJUDICATION OF THIS CASE FILED BY JOHN A. DZENDROWSKI. IFP ATTACHED.(tjd) (Entered: 10/22/2013) |
| 10/23/2013 | 5505 | Short form complaint by PLAINTIFF(S). (PECKHAM, CHARLES) (Entered: 10/23/2013) |
| 10/24/2013 | 5506 | Short Form Complaint - Derek Russell by PLAINTIFF(S). (SOHN, BRADFORD) (Entered: 10/24/2013) |
| 10/24/2013 | 5507 | Short Form Complaint - Michael A. Chalenski by PLAINTIFF(S). (SOHN, BRADFORD) (Entered: 10/24/2013) |
| 10/24/2013 | 5508 | Short Form Complaint - James A. Molinaro, et al by PLAINTIFF(S). (SOHN, BRADFORD) (Entered: 10/24/2013) |
| 10/28/2013 | 5509 | WAIVER OF SERVICE Returned Executed by NATIONAL FOOTBALL LEAGUE, INC.. NATIONAL FOOTBALL LEAGUE, INC. waiver sent on 10/4/2013, answer due 12/3/2013. (SOHN, BRADFORD) (Entered: 10/28/2013) |
| 10/28/2013 | 5510 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). NFL PROPERTIES LLC waiver sent on 10/4/2013, answer due 12/3/2013. (SOHN, BRADFORD) (Entered: 10/28/2013) |
| 10/28/2013 | 5511 | WAIVER OF SERVICE Returned Executed by NATIONAL FOOTBALL LEAGUE, INC.. (SOHN, BRADFORD) (Entered: 10/28/2013) |
| 10/28/2013 | 5512 | WAIVER OF SERVICE Returned Executed by NFL PROPERTIES LLC. (SOHN, BRADFORD) (Entered: 10/28/2013) |
| 10/28/2013 | 5513 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). (SOHN, BRADFORD) (Entered: 10/28/2013) |
| 10/28/2013 | 5514 | WAIVER OF SERVICE Returned Executed by PLAINTIFF(S). (SOHN, BRADFORD) (Entered: 10/28/2013) |

| 10/29/2013 | 5515 | Copy of Conditional Transfer Order (CTO-74) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: LA-E 2:13-6119. (tjd) (Entered: 10/29/2013) |
|---|---|---|
| 10/30/2013 | 5516 | Short Form Request *for Tamala Raglon as Attorney in Fact for Eugene Jeter* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/30/2013) |
| 10/30/2013 | 5517 | Short Form Complaint *for Almon Young JR. and Rosa Young* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/30/2013) |
| 10/30/2013 | 5518 | Short Form Complaint *Andre Roundtree* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/30/2013) |
| 10/30/2013 | 5519 | Short Form Complaint *for Brandon McGowan and Ranee McGowan* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/30/2013) |
| 10/30/2013 | 5520 | Short Form Complaint *Clanton Carter Farmer* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/30/2013) |
| 10/30/2013 | 5521 | Short Form Complaint *for Eugene Milton* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/30/2013) |
| 10/30/2013 | 5522 | Short Form Complaint *for Gordon Kelley and Charlotte Kelley* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/30/2013) |
| 10/30/2013 | 5523 | Short Form Complaint *for Major Hazelton* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/30/2013) |
| 10/30/2013 | 5524 | Short Form Complaint *for Mark Nichols and Cindy Nichols* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/30/2013) |
| 10/30/2013 | 5525 | Short Form Complaint *for Robert Mitchell and Lisa MItchell* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/30/2013) |
| 10/30/2013 | 5526 | Short Form Complaint *for Wendell Davis and Keshauna Davis* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/30/2013) |
| 10/30/2013 | 5527 | Short Form Complaint *for William Bowens* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/30/2013) |
| 10/30/2013 | 5528 | Short Form Complaint *for Wilson Bowie, JR* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 10/30/2013) |
| 11/04/2013 | 5529 | ORDER that THE MOTION TO INTERVENE (ECF NO. 5504) IS DENIED AS FRIVOLOUS.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/4/2013.11/4/2013 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/04/2013) |
| 11/04/2013 | 5530 | Short Form Complaint - Horace Belton and Gwen Belton by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/04/2013) |
| 11/04/2013 | 5531 | Short Form Complaint - Lewis S. Scott and Charlesetta Scott by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/04/2013) |
| 11/05/2013 | 5532 | Copy of Conditional Transfer Order (CTO-75) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: NY-S 1:13-7369. (kk, ) (Entered: 11/05/2013) |

| 11/12/2013 | 5533 | Short Form Complaint - Michael Lewis and Danielle Lewis by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/12/2013) |
| 11/12/2013 | 5534 | Short Form Complaint - Johnnie Harris and Lolita Harris by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/12/2013) |
| 11/12/2013 | 5535 | Short Form Complaint - Ronnie Heard and LaToya Heard by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/12/2013) |
| 11/12/2013 | 5536 | Short Form Complaint - Ronald McKinnon and LaShana McKinnon by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/12/2013) |
| 11/12/2013 | 5537 | Short Form Complaint - Sylvia Mackey as Personal Representative of the Estate of John Mackey by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/12/2013) |
| 11/12/2013 | 5538 | Short Form Complaint - Eldra Buckley by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/12/2013) |
| 11/12/2013 | 5539 | Short Form Complaint - Brent David Adams and Karen Adams by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5540 | Short Form Complaint - Michael Bennett by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5541 | Short Form Complaint - Aundray Bruce by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5542 | Short Form Complaint - Vidal Carlin and Elizabeth Carlin by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5543 | Short Form Complaint - William Dozier, III and Mindy Dozier by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5544 | Short Form Complaint - Adam Edwards, III and Sarah Edwards by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5545 | Short Form Complaint - Terry Erwin by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5546 | Short Form Complaint - Claude Gibson and Nancy Gibson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5547 | Short Form Complaint - Michael Hamlin by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5548 | Short Form Complaint - Honor Jackson, Jr. by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5549 | Short Form Complaint - Keith Jackson, Jr. by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5550 | Short Form Complaint - William Joe and Debra Joe by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5551 | Short Form Complaint - Dwight Johnson and Mia Johnson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5552 | Short Form Complaint - Jerome King and Marionette King by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |

| | | |
|---|---|---|
| 11/12/2013 | 5553 | Short Form Complaint - Gina Mooney, individually and as P.R. of the estate of Michael Mooney by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5554 | Short Form Complaint - Christian Morton and Lakisha Morton by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5555 | Short Form Complaint - James Nemeth and Diane Nemeth by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5556 | Short Form Complaint - Kendall Newson and Tiffany Newson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5557 | Short Form Complaint - Craig Ogletree and Sherrelle Ogletree by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5558 | Short Form Complaint - Stephen Nathan Pierce and Jeanne Pierce by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5559 | Short Form Complaint - Alvin Porter by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5560 | Short Form Complaint - Phillip D. Puzzouli and Jacquie Puzzouli by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5561 | Short Form Complaint - Isaac Readon and Nadine Hamilton by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5562 | Short Form Complaint - Michael Reid and Sherri Reid by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5563 | Short Form Complaint - Herb Roedel and Jessica Wimer by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5564 | Short Form Complaint - Michael Ruether by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5565 | Short Form Complaint - James Runnels, Jr. by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5566 | Short Form Complaint - Darrion Scott and DiMiya Scott by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5567 | Short Form Complaint - King Simmons and Robin Simmons by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5568 | Short Form Complaint - Fred Vinson and Mia Vinson by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5569 | Short Form Complaint - Todd Weiner and Sunny Weiner by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/12/2013 | 5570 | Short Form Complaint - Brandon Williams and Brittani Williams by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 11/12/2013) |
| 11/15/2013 | 5571 | Copy of Conditional Transfer Order (CTO-76) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-S 3:13-2605. (tjd) (Entered: 11/15/2013) |
| 11/18/2013 | 5572 | Short Form Complaint by PLAINTIFF(S). (STOUT, WILLIAM) (Entered: 11/18/2013) |

| 11/21/2013 | 5573 | NOTICE by PLAINTIFF(S) *of Reinstatement of Complaint of James Williams* (LOCKS, GENE) (Entered: 11/21/2013) |
| 11/21/2013 | 5574 | Short Form Complaint- Corris Ervin by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 11/21/2013) |
| 11/21/2013 | 5575 | Short Form Complaint- Derrick Frazier by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 11/21/2013) |
| 11/21/2013 | 5576 | Short Form Complaint- Derrick Pope by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 11/21/2013) |
| 11/21/2013 | 5577 | Short Form Complaint- Doak Field by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 11/21/2013) |
| 11/21/2013 | 5578 | Short Form Complaint- Dwight Scales by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 11/21/2013) |
| 11/21/2013 | 5579 | Short Form Complaint- Herbert Williams by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 11/21/2013) |
| 11/21/2013 | 5580 | Short Form Complaint- James Williams, Jr. by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 11/21/2013) |
| 11/21/2013 | 5581 | Short Form Complaint- James Young, Sr. by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 11/21/2013) |
| 11/21/2013 | 5582 | Short Form Complaint- Jerry Davis by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 11/21/2013) |
| 11/21/2013 | 5583 | Short Form Complaint- Jerry James Moses, Jr. by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 11/21/2013) |
| 11/21/2013 | 5584 | Short Form Complaint- John Owens by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 11/21/2013) |
| 11/21/2013 | 5585 | Short Form Complaint- Richard Siler by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 11/21/2013) |
| 11/21/2013 | 5586 | Short Form Complaint- Roderick Harris by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 11/21/2013) |
| 11/21/2013 | 5587 | Short Form Complaint- Trevor Cobb by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 11/21/2013) |
| 11/21/2013 | 5588 | Short Form Complaint- Wilmer Hicks, Jr. by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 11/21/2013) |
| 11/21/2013 | 5589 | Short Form Complaint - Ronald Krajewski by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/21/2013) |
| 11/21/2013 | 5590 | Short Form Complaint - Dalton Simmons by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/21/2013) |
| 11/21/2013 | 5591 | Short Form Complaint - Thomas Clapp, II and Heather Clapp by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/21/2013) |
| 11/21/2013 | 5592 | Short Form Complaint - G. Karl Bernard and Cassie Bernard by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/21/2013) |

| 11/21/2013 | 5593 | Short Form Complaint - Joe Barnes and Kathy Barnes by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/21/2013) |
|---|---|---|
| 11/21/2013 | 5594 | Short Form Complaint - Bryan Thompson as Public Administrator of the Estate of Pete Louis Pihos by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/21/2013) |
| 11/21/2013 | 5595 | Short Form Complaint - Kenton Keith by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/21/2013) |
| 11/21/2013 | 5596 | Short Form Complaint - Michael Bell by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/21/2013) |
| 11/22/2013 | 5597 | Joint MOTION to Substitute Attorney filed by PLAINTIFF(S). Certificate of Service. (Attachments: # 1 Text of Proposed Order)(MILES, SETH) Modified on 11/25/2013 (tjd). (Entered: 11/22/2013) |
| 11/22/2013 | 5598 | STIPULATION *To Amend Complaint* by PLAINTIFF(S).**(COPY SENT TO CHAMBERS FOR APPROVAL)** (Attachments: # 1 Text of Proposed Order Proposed Order Granting Stipulation to Amend Complaint, # 2 Certificate of Service) (ROSEN, DAVID) Modified on 11/25/2013 (tjd). (Entered: 11/22/2013) |
| 11/25/2013 | 5599 | Short Form Complaint - Annette Lawson, individually and as Executrix of the Estate of Odell Lawson, Sr. by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/25/2013) |
| 11/26/2013 | 5600 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint of James Edward Arnold*. Certificate of Service. (LOCKS, GENE) Modified on 12/4/2013 (tjd). (Entered: 11/26/2013) |
| 12/05/2013 | 5601 | Copy of Conditional Transfer Order (CTO-77) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: IL-N 1:13-8358; NY-S 1:13-8053. (tjd) (Entered: 12/05/2013) |
| 12/11/2013 | 5602 | NOTICE of Appearance by DONALD A. MIGLIORI on behalf of PLAINTIFF(S) with Certificate of Service(MIGLIORI, DONALD) (Entered: 12/11/2013) |
| 12/11/2013 | 5603 | Short Form Complaint *Gregory A. Marx* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 12/11/2013) |
| 12/11/2013 | 5604 | Short Form Complaint *Tony Washington, III* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 12/11/2013) |
| 12/11/2013 | 5605 | Short Form Complaint *Francis Vargo* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 12/11/2013) |
| 12/11/2013 | 5606 | NOTICE of Appearance by ANNE MCGINNESS KEARSE on behalf of PLAINTIFF(S) with Certificate of Service(KEARSE, ANNE) (Entered: 12/11/2013) |
| 12/16/2013 | 5607 | ORDER APPOINTING SPECIAL MASTER - PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 53 AND THE INHERENT AUTHORITY OF THE COURT, I APPOINT MR. PERRY GOLKIN AS SPECIAL MASTER TO ASSIST ME IN EVALUATING THE FINANCIAL ASPECTS OF THE PROPOSED SETTLEMENT BETWEEN THE NFL DEFENDANTS AND THE PLAINTIFFS. I HAVE NOTIFIED COUNSEL TO THE PARTIES, AND THEY HAVE CONSENTED TO THE APPOINTMENT OF A SPECIAL MASTER. THE APPOINTMENT IS WARRANTED BY THE EXPECTED FINANCIAL COMPLEXITY OF THE PROPOSED SETTLEMENT..... SIGNED BY HONORABLE ANITA B. BRODY ON 12/16/2013. 12/16/2013 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/16/2013) |

| 12/17/2013 | 5608 | MOTION to File Amicus Brief filed by BRAIN INJURY ASSOCIATION OF AMERICA.Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order, # 3 Certificate of Service)(WRIGHT, CHRISTOPHER) (Entered: 12/17/2013) |
|---|---|---|
| 12/18/2013 | 5609 | Copy of Conditional Transfer Order (CTO-78) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-C 2:13-8857. (tjd) (Entered: 12/18/2013) |
| 12/18/2013 | 5610 | Short Form Complaint *for Irvin Phillips* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5611 | Short Form Complaint *for Wendell Cason* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5612 | Short Form Complaint *for Lovett Purnell* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5613 | Short Form Complaint *for Bruce Anderson* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5614 | Short Form Complaint *for Walter Landers and his wife Mary Landers* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5615 | Short Form Complaint *for Ray Pinion and his wife Lynell Pinion* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5616 | Short Form Complaint *for George St James* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5617 | Short Form Complaint by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5618 | Short Form Complaint *George Daniel Lanphear and his wife Alice Shea* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5619 | Short Form Complaint *for Anthony Henton and his wife Kimberly Henton* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5620 | Short Form Complaint *Marvin Harvey* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5621 | Short Form Complaint *for James Phillips* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5622 | Short Form Complaint *for Dale Dawson* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5623 | Short Form Complaint *for Paul Bradford and his wife Margarita Bradford* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5624 | Short Form Complaint *for Nathaniel James* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5625 | Short Form Complaint *for James Kalafat and his wife Tonya Kalafat* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/18/2013 | 5626 | Short Form Complaint *for Cleo Simmons and his wife Gwen Simmons* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |

| 12/18/2013 | 5627 | Short Form Complaint *for Edward Modzelewski and his wife Joanne* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 12/18/2013) |
| 12/19/2013 | 5628 | STIPULATION *to Amend Complaint of Katherine Moppin* by PLAINTIFF(S). (Attachments: # 1 Text of Proposed Order)(TARRICONE, ANTHONY) (Entered: 12/19/2013) |
| 12/19/2013 | 5629 | ORDER that PLAINTIFFS AND DEFENDANTS FILED WITH THE COURT A STIPULATION TO AMEND THE COMPLAINT TO ADD ADDITIONAL PARTIES. IT IS ORDERED THAT 1. PLAINTIFFS ARE GRANTED LEAVE TO FILE AN AMENDED COMPLAINT WITHOUT PREJUDICE TO OR WAIVER OF ANY JURISDICTIONAL ARGUMENT PLAINTIFFS MAY WISH TO ASSERT. 2...... SIGNED BY HONORABLE ANITA B. BRODY ON 12/18/2013. 12/19/2013 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/19/2013) |
| 12/20/2013 | 5630 | Copy of Conditional Transfer Order (CTO-79) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: LA-E 2:13-6603. (tjd) (Entered: 12/23/2013) |
| 12/30/2013 | 5631 | Copy of Conditional Transfer Order (CTO-80) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-N 3:13-5708; NY-S 1:13-8763. (tjd) (Entered: 12/30/2013) |
| 12/31/2013 | 5632 | Copy of Conditional Transfer Order (CTO-81) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: TX-S 4:13-3705. (tjd) (Entered: 12/31/2013) |
| 12/31/2013 | 5633 | RESPONSE in Opposition re 5608 MOTION to File Amicus Brief filed by PLAINTIFF(S). Certificate of Service. (Attachments: # 1 Text of Proposed Order) (SEEGER, CHRISTOPHER) Modified on 1/2/2014 (tjd). (Entered: 12/31/2013) |
| 01/06/2014 | 5634 | MOTION OF PROPOSED CO-LEAD CLASS COUNSEL, CLASS COUNSEL, AND SUBCLASS COUNSEL FOR AN ORDER: (1) GRANTING PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT AGREEMENT; (2) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS AND SUBCLASSES; (3) APPOINTING CO-LEAD COUNSEL, CLASS COUNSEL, AND SUBCLASS COUNSEL; (4) APPROVING THE DISSEMINATION OF CLASS NOTICE; (5) SCHEDULING A FAIRNESS HEARING; (6) STAYING CLAIMS AS TO THE NFL PARTIES AND ENJOINING PROPOSED SETTLEMENT CLASS MEMBERS FROM PURSUING RELATED LAWSUITS. EXHIBITS A-D, MEMORANDUM OF LAW. (APPLIES TO ALL ACTIONS, 14-CV-29). (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Memorandum).(tjd) (Entered: 01/06/2014) |
| 01/07/2014 | 5635 | ORDER THAT 5597 JOINT MOTION TO SUBSTITUTE COUNSEL IS GRANTED; JAMES L. FERRARO, ESQ. IS WITHDRAWN AS COUNSEL OF RECORD FOR PLAINTIFFS JEFFREY DELLENBACH, ANTOINE FISHER, SHAWN MOORE, JOSEPH AND JENNIFER VALERIO, DARRELL MALONE, JOSEPH CONWELL AND LAURA MCGETTIGAN, RANDALL AND MICHELLE HILL, TERRANCE GLENN, AND GLENN EARL AND SETH MILES, ESQ., ANDREW B. YAFFA, ESQ., AND BRADFORD R. SOHN, ESQ. BE SUBSTITUTED AS COUNSEL OF RECORD. SIGNED BY HONORABLE ANITA B. BRODY ON 1/7/2014;1/8/2014 ENTERED AND COPIES MAILED AND E-MAILED. (APPLIES TO 13-CV-2418, 13-CV-2419, 13-CV-3890).(tjd) (Entered: 01/08/2014) |

| 01/08/2014 | 5636 | ORDER THAT 5145 MOTION TO AMEND IS GRANTED; PLAINTIFFS SHALL BE PERMITTED TO AMEND THEIR COMPLAINT TO ADD RIDDELL, INC. (D/B/A RIDDELL SPORTS GROUP, INC.), ALL AMERICAN SPORTS CORPORATION (D/B/A RIDDELL/ALL AMERICAN), RIDELL SPORTS GROUP, INC., EASTON-BELL SPORTS, LLC, AND EASTON-BELL SPORTS, INC. AS DEFENDANTS IN 12-CV-5042. SIGNED BY HONORABLE ANITA B. BRODY ON 1/7/2014;1/9/2014 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-CV-5042).(tjd) (Entered: 01/09/2014) |
|---|---|---|
| 01/08/2014 | 5637 | ORDER THAT 5143 MOTION TO AMEND IS GRANTED; PLAINTIFFS SHALL BE PERMITTED TO AMEND THEIR COMPLAINT TO ADD RIDDELL, INC. (D/B/A RIDDELL SPORTS GROUP, INC.), ALL AMERICAN SPORTS CORPORATION (D/B/A RIDDELL/ALL AMERICAN), RIDELL SPORTS GROUP, INC., EASTON-BELL SPORTS, LLC, AND EASTON-BELL SPORTS, INC. AS DEFENDANTS IN 12-CV-4241. SIGNED BY HONORABLE ANITA B. BRODY ON 1/7/2014;1/9/2014 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-CV-4241). (tjd) (Entered: 01/09/2014) |
| 01/08/2014 | 5638 | ORDER THAT 5146 MOTION TO AMEND IS GRANTED; PLAINTIFFS SHALL BE PERMITTED TO AMEND THEIR COMPLAINT TO ADD RIDDELL, INC. (D/B/A RIDDELL SPORTS GROUP, INC.), ALL AMERICAN SPORTS CORPORATION (D/B/A RIDDELL/ALL AMERICAN), RIDELL SPORTS GROUP, INC., EASTON-BELL SPORTS, LLC, AND EASTON-BELL SPORTS, INC. AS DEFENDANTS IN 13-CV-1981. SIGNED BY HONORABLE ANITA B. BRODY ON 1/7/2014;1/9/2014 ENTERED AND COPIES E-MAILED. (APPLIES TO 13-CV-1981). (tjd) (Entered: 01/09/2014) |
| 01/08/2014 | 5639 | ORDER THAT 5144 MOTION TO AMEND IS GRANTED; PLAINTIFFS SHALL BE PERMITTED TO AMEND THEIR COMPLAINT TO ADD RIDDELL, INC. (D/B/A RIDDELL SPORTS GROUP, INC.), ALL AMERICAN SPORTS CORPORATION (D/B/A RIDDELL/ALL AMERICAN), RIDELL SPORTS GROUP, INC., EASTON-BELL SPORTS, LLC, AND EASTON-BELL SPORTS, INC. AS DEFENDANTS IN 12-CV-6671. SIGNED BY HONORABLE ANITA B. BRODY ON 1/7/2014;1/9/2014 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-CV-6671). (tjd) (Entered: 01/09/2014) |
| 01/09/2014 | 5640 | NOTICE of Appearance by TERRIANNE A. BENEDETTO on behalf of PLAINTIFF(S), PLAINTIFFS' STEERING COMMITTEE with Certificate of Service (Attachments: # 1 Certificate of Service)(BENEDETTO, TERRIANNE) (Entered: 01/09/2014) |
| 01/09/2014 | 5641 | NOTICE of Appearance by SCOTT A. GEORGE on behalf of PLAINTIFF(S), PLAINTIFFS' STEERING COMMITTEE with Certificate of Service (Attachments: # 1 Certificate of Service)(GEORGE, SCOTT) (Entered: 01/09/2014) |
| 01/10/2014 | 5642 | Short Form Complaint - John Demarie by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 01/10/2014) |
| 01/10/2014 | 5643 | Short Form Complaint - Patrick Stant and Helene Stant by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 01/10/2014) |
| 01/10/2014 | 5644 | Short Form Complaint - Eugene Sykes by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 01/10/2014) |
| 01/10/2014 | 5645 | Short Form Complaint - Frank Staine-Pyne and Erin Staine-Pyne by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 01/10/2014) |

| 01/10/2014 | 5646 | Short Form Complaint - John Henderson and Aleviar Henderson by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 01/10/2014) |
| --- | --- | --- |
| 01/10/2014 | 5647 | Short Form Complaint - Robert Sanders by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 01/10/2014) |
| 01/10/2014 | 5648 | Short Form Complaint - Christopher Thompson by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 01/10/2014) |
| 01/10/2014 | 5649 | Short Form Complaint - Louis Williams by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 01/10/2014) |
| 01/10/2014 | 5650 | MOTION for Leave to File *Reply Memorandum of Law* filed by BRAIN INJURY ASSOCIATION OF AMERICA.Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Exhibit Masel CV, # 3 Exhibit O'Shanick CV, # 4 Exhibit Ashley CV, # 5 Text of Proposed Order, # 6 Certificate of Service)(WRIGHT, CHRISTOPHER) (Entered: 01/10/2014) |
| 01/13/2014 | 5651 | RESPONSE in Opposition re 5634 MOTION for Order filed by PLAINTIFF(S). Certificate of Service. (THOMAS, PHILIP) Modified on 1/14/2014 (tjd). (Entered: 01/13/2014) |
| 01/13/2014 | 5652 | Memorandum In Support of Opposition to Plaintiffs' Motion of Proposed Co-Lead Class Counsel, Class Counsel, and Subclass Counsel for an Order: (1) Granting Preliminary Approval of the Class Action Settlement Agreement; (2) Conditionally Certifying a Settlement Class and Subclasses; (3) Appointing Co-Lead Class Counsel, Class Counsel, and Subclass Counsel; (4) Approving the Dissemination of Class Notice; (5) Scheduling a Fairness Hearing; and (6) Staying Claims as to the NFL Parties and Enjoining Proposed Settlement Class Members from Pursuing Related Lawsuits by PLAINTIFF(S). Certificate of Service. (THOMAS, PHILIP) Modified on 1/14/2014 (tjd). (Entered: 01/13/2014) |
| 01/13/2014 | 5653 | Short Form Complaint -*Plaintiff Jeremy E. Bridges and Brenda L. Bridges* by PLAINTIFF(S). (ABOOD, NORMAN) (Entered: 01/13/2014) |
| 01/13/2014 | 5654 | Short Form Complaint -*Plaintiff, Johnny E. McWilliams and Elizabeth A. McWilliams* by PLAINTIFF(S). (ABOOD, NORMAN) (Entered: 01/13/2014) |
| 01/13/2014 | 5655 | Short Form Complaint -*Plaintiff, Dante J. Wesley and Renetta L. Wesley* by PLAINTIFF(S). (ABOOD, NORMAN) (Entered: 01/13/2014) |
| 01/13/2014 | 5656 | Short Form Complaint -*Plaintiff, Antwaan L. Randle El and Elizabeth J. Randle El* by PLAINTIFF(S). (ABOOD, NORMAN) (Entered: 01/13/2014) |
| 01/14/2014 | 5657 | MEMORANDUM AND/OR OPINION. SIGNED BY HONORABLE ANITA B. BRODY ON 1/14/2014. 1/14/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/14/2014) |
| 01/14/2014 | 5658 | ORDER of MEMORANDUM AND/OR OPINION (DOC. #5657) that PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL AND CLASS CERTIFICATION (ECF NO. 5634) IS DENIED WITHOUT PREJUDICE. THE PARTIES ARE ORDERED TO SHARE THE DOCUMENTATION REFERRED TO IN THEIR SUBMISSIONS WITH THE COURT THROUGH THE SPECIAL MASTER.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/14/2014. 1/14/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/14/2014) |

| 01/14/2014 | 5659 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Lyle Blackwood. Certificate of Service. (Applies to 12-cv-3533).(LIPPSMITH, GRAHAM) Modified on 1/15/2014 (tjd). (Entered: 01/14/2014) |
| --- | --- | --- |
| 01/14/2014 | 5660 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Larry Bates. Certificate of Service. (Applies to 12-cv-7214). (LIPPSMITH, GRAHAM) Modified on 1/15/2014 (tjd). (Entered: 01/14/2014) |
| 01/14/2014 | 5661 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Richard Van Druten. Certificate of Service. (Applies to 12-cv-7214). (LIPPSMITH, GRAHAM) Modified on 1/15/2014 (tjd). (Entered: 01/14/2014) |
| 01/15/2014 | 5662 | ORDER - UPON CONSIDERATION OF BRAIN INJURY ASSOCIATION OF AMERICA'S MOTION FOR LEAVE TO FILE REPLY BRIEF IN SUPPORT OF ITS MOTION... IT IS HEREBY ORDERED AND DECREEED that MOVANT BRAIN INJURY ASSOCIATION OF AMERICA'S MOTION IS GRANTED..... SIGNED BY HONORABLE ANITA B. BRODY ON 1/14/2014.1/15/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/15/2014) |
| 01/15/2014 | 5663 | REPLY TO RESPONSE to Motion re 5650 MOTION for Leave to File *Reply Memorandum of Law* filed by BRAIN INJURY ASSOCIATION OF AMERICA (CHRISTOPHER J. WRIGHT). (mo, ) (Entered: 01/15/2014) |
| 01/16/2014 | 5664 | Copy of Conditional Transfer Order (CTO-82) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: IL-N 1:14-42. (tjd) (Entered: 01/16/2014) |
| 01/17/2014 | 5665 | Short Form Complaint - James Bowden by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5666 | Short Form Complaint - Dewell Brewer by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5667 | Short Form Complaint - Georgia Buchanan by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5668 | Short Form Complaint - George Atkinson by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5669 | Short Form Complaint - Marlon Favorite by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5670 | Short Form Complaint - Cyndy Feasel by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5671 | Short Form Complaint - Vince Ferragamo by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5672 | Short Form Complaint - John Gilmore by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5673 | Short Form Complaint - Lise Hudson by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5674 | Short Form Complaint - Daughter Callie Hudson by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5675 | Short Form Complaint - Daughter Heather Hudson by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |

**-347-**

| 01/17/2014 | 5676 | Short Form Complaint - Son James Hudson by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5677 | Short Form Complaint - Son Justin Hudson by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5678 | Short Form Complaint - Son Leonard Hudson by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5679 | Short Form Complaint - Antonio Mangini by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5680 | Short Form Complaint - Robert Petitti by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5681 | Short Form Complaint - Dave Stalls by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5682 | Short Form Complaint - Roydell Williams by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5683 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint by Plaintiff Richard Van Druten* (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/17/2014 | 5684 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint by Plaintiff Larry Bates* (LIPPSMITH, GRAHAM) (Entered: 01/17/2014) |
| 01/23/2014 | 5685 | Copy of Conditional Transfer Order (CTO-83) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: TX-S 4:14-30. (tjd) (Entered: 01/23/2014) |
| 01/23/2014 | 5686 | MOTION to Permit *the Dissemination to Counsel of Record of All Data Utilized by Co-Lead Counsel to Reach the Proposed Settlement* filed by PLAINTIFF(S)..(GIBBS, WILLIAM) (Entered: 01/23/2014) |
| 01/24/2014 | 5687 | Short Form Complaint - Satori Lee (Executrix for the Estate of Shawn Lee) by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/24/2014) |
| 01/24/2014 | 5688 | Short Form Complaint - Michael Zofko by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/24/2014) |
| 01/24/2014 | 5689 | Short Form Complaint - Alexander Stewart by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/24/2014) |
| 01/24/2014 | 5690 | Short Form Complaint - Eric Smith by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/24/2014) |
| 01/24/2014 | 5691 | Short Form Complaint - Gale Sayers by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/24/2014) |
| 01/24/2014 | 5692 | Short Form Complaint - Jeffrey Chadwick by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/24/2014) |
| 01/24/2014 | 5693 | Short Form Complaint - Andre Hastings by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/24/2014) |
| 01/24/2014 | 5694 | Short Form Complaint - James McCusker by PLAINTIFF(S). (LEWIS, RICHARD) (Entered: 01/24/2014) |

| 01/24/2014 | 5695 | Statement *Re Proposed Class Action Settlement in In Re: National Football League Players' Concussion Litig.* by PLAINTIFF(S). Certificate of Service. (STRAUSS, STEVEN) Modified on 1/29/2014 (tjd). (Entered: 01/24/2014) |
|---|---|---|
| 01/24/2014 | 5696 | ORDER - UPON CONSIDERATION OF THE MOTION TO SUBSTITUTE COUNSEL FOR PLAINTIFF, GARY JONES (ECF NO. 91), PLAINTIFF'S COUNSEL, MR. JASON E. LUCKASEVIC, IS ORDERED TO SHOW CAUSE ON OR BEFORE MONDAY, FEBRUARY 10,2014 WHY THE MOTION SHOULD NOT BE GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/24/2014. 1/24/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/24/2014) |
| 01/27/2014 | 5697 | MOTION to Withdraw as Attorney *for Gary Jones* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order Proposed Order)(LUCKASEVIC, JASON) (Entered: 01/27/2014) |
| 01/27/2014 | 5698 | NOTICE by PLAINTIFF(S) *Change of Firm Name.* Certificate of Service. (FISKE, JOHN) Modified on 1/28/2014 (tjd). (Entered: 01/27/2014) |
| 01/28/2014 | 5699 | RESPONSE to Motion re 5686 MOTION to Permit *the Dissemination to Counsel of Record of All Data Utilized by Co-Lead Counsel to Reach the Proposed Settlement* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Certificate of Service) (SEEGER, CHRISTOPHER) (Entered: 01/28/2014) |
| 01/29/2014 | 5700 | ORDER - UPON CONSIDERATION OF THE MOTION OF JASON E. LUCKASEVIC AND JASON T. SHIPP OF GOLDBERG, PERSKY & WHITE, P.C., THOMAS V. GIRARDI, GRAHAM LIPPSMITH, AND CELENE S. CHAN OF GIRARDI KEESE, AND HERMAN RUSSOMANNO AND ROBERT BORELLO OF RUSSOMANNO & BORELLO, P.A. TO WITHDRAW AS COUNSEL IN RELATION TO THE CLAIMS OF GARY JONES ONLY IN THIS ACTION, SAID MOTION IS GRANTED. THE ABOVE-IDENTIFIED COUSNEL ARE WITHDRAWN AS COUNSEL FOR GARY JONES.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/28/2014.1/29/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/29/2014) |
| 01/30/2014 | 5701 | Short Form Complaint-Titus Adams by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5702 | Short Form Complaint-Antoine Burns by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5703 | Short Form Complaint-Carlence Mitchell by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5704 | Short Form Complaint-Brandon Hampton by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5705 | Short Form Complaint-Michael Booker by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5706 | Short Form Complaint-Kristopher Wilson by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5707 | Short Form Complaint-Lonny Mitchell by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5708 | Short Form Complaint-Leonard "Bernard" Holsey by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |

| 01/30/2014 | 5709 | Short Form Complaint-Christopher Taylor by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5710 | Short Form Complaint-Gerome D. SAPP by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5711 | Short Form Complaint-Rodney Heath by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5712 | Short Form Complaint-Michael Hicks by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5713 | Short Form Complaint-Jason Mitchell by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5714 | Short Form Complaint-Connell Spain, Jr. by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5715 | Short Form Complaint-Cory Ross by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5716 | Short Form Complaint-Jay Brooks by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5717 | Short Form Complaint-John Charles by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5718 | Short Form Complaint-Romby Bryant by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5719 | Short Form Complaint-Willis Peguese by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5720 | Short Form Complaint-Brandon Rideau by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5721 | Short Form Complaint-Herman Smith by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5722 | Short Form Complaint-Kareem Kelly by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5723 | Short Form Complaint-Michael Montgomery by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5724 | Short Form Complaint-Reggie McNeal by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5725 | Short Form Complaint-Sergio Joachim by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/30/2014 | 5726 | Short Form Complaint-Antuan Edwards by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 01/30/2014) |
| 01/31/2014 | 5727 | Short Form Complaint *Julius Adams and Jerri Adams* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5728 | Short Form Complaint *Sam Adams, Sr.* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |

**-350-**

| 01/31/2014 | 5729 | Short Form Complaint *Adrian Awasom* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5730 | Short Form Complaint *Romeo Bandison* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5731 | Short Form Complaint *Belton Johnson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5732 | Short Form Complaint *Na'il Benjamin and Mylada Benjamin* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5733 | Short Form Complaint *James Bethea* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5734 | Short Form Complaint *Michael Bozeman* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5735 | Short Form Complaint *Robert Brewster* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5736 | Short Form Complaint *Dante Brown* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5737 | Short Form Complaint *Richard Carey and Cheryl Carey* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5738 | Short Form Complaint *Angelo Craig* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5739 | Short Form Complaint *Kwame Ellis* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5740 | Short Form Complaint *James Hadnot* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5741 | Short Form Complaint *Belton Johnson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5742 | Short Form Complaint *Larry Isaac and Henrietta Isaac* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5743 | Short Form Complaint *Michael Landry* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5744 | Short Form Complaint *Chris Lewis* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5745 | Short Form Complaint *Marcus Lewis* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5746 | Short Form Complaint *DeAngelo Lloyd* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5747 | Short Form Complaint *Kelvin Moore* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5748 | Short Form Complaint *Brian Nelson and Pamela Nelson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |

| 01/31/2014 | 5749 | Short Form Complaint *Darryl Pearson and Dannetta Pearson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5750 | Short Form Complaint *DeVonte Peterson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5751 | Short Form Complaint *Joseph Profit* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5752 | Short Form Complaint *Marcus Reese* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5753 | Short Form Complaint *Rex Richards and Jennifer Richards* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5754 | Short Form Complaint *Koren Robinson and Emily Joyce Robinson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5755 | Short Form Complaint *Lamar Rogers* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5756 | Short Form Complaint *Horace Smith and Shonta Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5757 | Short Form Complaint *Shaine Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5758 | Short Form Complaint *John Solomon* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5759 | Short Form Complaint *Jeffrey Ulbrich and Christina Ulbrich* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5760 | Short Form Complaint *Pat Williams* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5761 | Short Form Complaint *Renauld Williams* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5762 | Short Form Complaint *William Yanchar and June Yanchar* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5763 | Short Form Complaint *Ron Yary and Jamie Yary* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5764 | NOTICE of Withdrawal of Appearance by MARY CHARLOTTE DOHERTY on behalf of ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.(DOHERTY, MARY) (Entered: 01/31/2014) |
| 01/31/2014 | 5765 | MOTION to Withdraw as Attorney *for Plaintiff Sean Berton* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Text of Proposed Order) (SEEGER, CHRISTOPHER) (Entered: 01/31/2014) |
| 01/31/2014 | 5766 | MOTION to Intervene filed by BLOOMBERG L.P..Memorandum of Law in Support and Certificate of Service.(SEGAL, ELI) (Entered: 01/31/2014) |
| 01/31/2014 | 5767 | Disclosure Statement Form pursuant to FRCP 7.1 with Certificate of Service by BLOOMBERG L.P..(SEGAL, ELI) (Entered: 01/31/2014) |

| 01/31/2014 | 5768 | Short Form Complaint *Verron Haynes* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5769 | Short Form Complaint *Linden King* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 01/31/2014 | 5770 | Short Form Complaint *Solomon Page* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 01/31/2014) |
| 02/03/2014 | 5771 | Statement *in Response to* 5695 *Statement of Seau Family Re Proposed Class Action Settlement* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(SEEGER, CHRISTOPHER) (Entered: 02/03/2014) |
| 02/03/2014 | 5772 | NOTICE of Withdrawal of Appearance by HOLLIS L. SALZMAN on behalf of PLAINTIFF(S). Certificate of Service.(SALZMAN, HOLLIS) Modified on 2/12/2014 (tjd). (Entered: 02/03/2014) |
| 02/03/2014 | 5773 | NOTICE of Withdrawal of Appearance by KELLIE LERNER on behalf of PLAINTIFF(S). Certificate of Service.(LERNER, KELLIE) Modified on 2/12/2014 (tjd). (Entered: 02/03/2014) |
| 02/04/2014 | 5774 | Copy of Conditional Transfer Order (CTO-84) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: MS-S 3:14-45. (tjd) (Entered: 02/04/2014) |
| 02/04/2014 | 5775 | ORDER granting 5765 MOTION TO WITHDRAW AS ATTORNEY ATTORNEY LINDSEY H. TAYLOR; CHRISTOPHER M. VANDEKIEFT; MOSHE H. HORN and CHRISTOPHER A. SEEGER TERMINATED. SIGNED BY HONORABLE ANITA B. BRODY ON 2/4/2014.2/4/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 02/04/2014) |
| 02/07/2014 | 5776 | NOTICE OF INTERESTED PARTY, CHAPTER 7 TRUSTEE FOR MICHAEL MARTIN AND MICHELLE LYNETTE MARTIN. Certificate of Service. (APPLIES TO 12-CV-4160) (ems) Modified on 2/10/2014 (tjd). (Entered: 02/10/2014) |
| 02/10/2014 | 5777 | RESPONSE in Opposition re 5766 MOTION to Intervene filed by PLAINTIFF(S). Certificate of Service. (SEEGER, CHRISTOPHER) Modified on 2/12/2014 (tjd). (Entered: 02/10/2014) |
| 02/10/2014 | 5778 | Statement *regarding Settlement Approval Process and Request for Status Conference to Coordinate Non-Settling Plaintiffs* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(GIRARD, DANIEL) (Entered: 02/10/2014) |
| 02/12/2014 | 5779 | Amended Short Form Complaint of Todd Scott by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5780 | Amended Short Form Complaint of Allen Rice by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5781 | Amended Short Form Complaint of Anthony Newsom by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5782 | Amended Short Form Complaint of Baldwin Malcolm Frank by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5783 | Amended Short Form Complaint of Ben Bronson by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |

| 02/12/2014 | 5784 | Amended Short Form Complaint of Christopher Crooms by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5785 | Amended Short Form Complaint of Emanuel McNeil by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5786 | Amended Short Form Complaint of Eric Kelly by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5787 | Amended Short Form Complaint of Larry Centers by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5788 | Amended Short Form Complaint of Leland Douglas, Jr. by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5789 | Amended Short Form Complaint of Melvin Aldridge by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5790 | Amended Short Form Complaint of Patrick Jackson by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5791 | Amended Short Form Complaint of Patrise Alexander by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5792 | Amended Short Form Complaint of Richard Johnson by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5793 | Amended Short Form Complaint of Robert Pollard by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5794 | Amended Short Form Complaint of Ronnie Coleman by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5795 | Amended Short Form Complaint of Tim Denton by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5796 | Amended Short Form Complaint of Tyrone Smith by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5797 | Amended Short Form Complaint of Willie Ellison by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5798 | Amended Short Form Complaint of Anthony Guillory by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5799 | Amended Short Form Complaint of Darrell Colbert by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5800 | Amended Short Form Complaint of Derrick Harris by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5801 | Amended Short Form Complaint of Edwin Weatherspoon by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5802 | Amended Short Form Complaint of Fulton Johnson by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5803 | Amended Short Form Complaint of Gerald McNeil by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |

| 02/12/2014 | 5804 | Amended Short Form Complaint of Glenell Sanders by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5805 | Amended Short Form Complaint of James Frances by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5806 | Amended Short Form Complaint of Jimmy Robinson by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5807 | Amended Short Form Complaint of Joseph Searles by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5808 | Amended Short Form Complaint of Keith Woodside by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5809 | Amended Short Form Complaint of Matthew Sinclair by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5810 | Amended Short Form Complaint of Michael Dumas by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5811 | Amended Short Form Complaint of Milton Wynn by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5812 | Amended Short Form Complaint of Rance Olison by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5813 | Amended Short Form Complaint of Reatha Brown by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5814 | Amended Short Form Complaint of Richard Sowell by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5815 | Amended Short Form Complaint of Ryan McCoy by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5816 | Amended Short Form Complaint of Thomas Sanders by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5817 | Amended Short Form Complaint of Victor Jones by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5818 | Amended Short Form Complaint of Anthony Toney by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5819 | Amended Short Form Complaint of Charles Arbuckle by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5820 | Amended Short Form Complaint of Charlie Anderson by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5821 | Amended Short Form Complaint of Clyde Glosson by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5822 | Amended Short Form Complaint of Curtis Ceasar, Jr. by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5823 | Amended Short Form Complaint of Eric Swann by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |

| 02/12/2014 | 5824 | Amended Short Form Complaint of Frankie Smith by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5825 | Amended Short Form Complaint of Harry Colon by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5826 | Amended Short Form Complaint of Jermaine Smith by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5827 | Amended Short Form Complaint of Nilo Silvan by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5828 | Amended Short Form Complaint of Rod Bernstine by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5829 | Amended Short Form Complaint of Elbert Crawford III by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5830 | Amended Short Form Complaint of Corris Ervin by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5831 | Amended Short Form Complaint of Derrick Frazier by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5832 | Amended Short Form Complaint of Derrick Pope by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5833 | Amended Short Form Complaint of Doak Field by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5834 | Amended Short Form Complaint of Dwight Scales by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5835 | Amended Short Form Complaint of Herbert Williams by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5836 | Amended Short Form Complaint of James Williams, Jr. by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5837 | Amended Short Form Complaint of James Young, Sr. by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5838 | Amended Short Form Complaint of Jerry Davis by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5839 | Amended Short Form Complaint of Jerry James Moses, Jr. by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5840 | Amended Short Form Complaint of John Owens by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5841 | Amended Short Form Complaint of Richard Siler by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5842 | Amended Short Form Complaint of Roderick Harris by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5843 | Amended Short Form Complaint of Trevor Cobb by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |

| 02/12/2014 | 5844 | Amended Short Form Complaint of Wilmer Hicks, Jr. by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5845 | Amended Short Form Complaint of Patsy Lewis by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/12/2014 | 5846 | Amended Short Form Complaint of Cassandra Bailey by PLAINTIFF(S). (Attachments: # 1 Attachment A)(WASHINGTON, MICKEY) (Entered: 02/12/2014) |
| 02/17/2014 | 5847 | Short Form Complaint of Robert Douglass by PLAINTIFF(S). (Attachments: # 1 Exhibit Original Complaint)(GIBBS, WILLIAM) (Entered: 02/17/2014) |
| 02/20/2014 | 5848 | MOTION for Leave to File *a Reply in Support of Docket No. 5766 (Intervention and Access)* filed by BLOOMBERG L.P..Memorandum, Certificate of Service.(SEGAL, ELI) (Entered: 02/20/2014) |
| 02/21/2014 | 5849 | Statement *in Response to 5778 The Myers Plaintiffs' Statement* by PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5) (SEEGER, CHRISTOPHER) (Entered: 02/21/2014) |
| 02/25/2014 | 5850 | Short Form Complaint *Clive and Kay Bullian* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 02/25/2014) |
| 02/26/2014 | 5851 | ORDER - AFTER CONSIDERATION OF BLOOMBERG, L.P.'S MOTION FOR LEAVE TO FILE A REPLY IN SUPPORT OF DOCKET NO. 5766 (INTERVENTION AND ACCESS), AND ANY RESPONSES THERETO, IT IS HEREBY ORDERED that THE MOTION IS GRANTED AND THAT BLOOMBERG L.P IS GRANTED LEAVE TO FILE ITS REPLY IN SUPPORT OF DOCKET NO. 5766 (INTERVENTIONAND ACCESS), ATTACHED TO ITS MOTION TO FILE A REPLY AS EXHIBIT A... SIGNED BY HONORABLE ANITA B. BRODY ON 2/26/2014.2/26/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 02/26/2014) |
| 02/26/2014 | 5852 | REPLY IN SUPPORT OF DOCKET NO. 5766 (INTERVENTION AND ACCESS) filed by BLOOMBERG L.P..(ELI SEGAL) (mo, ) (Entered: 02/26/2014) |
| 02/26/2014 | 5853 | MOTION for Leave to File *a Reply in Support of Docket No. 5778* filed by PLAINTIFF(S).Memorandum, Certificate of Service.(GIRARD, DANIEL) (Entered: 02/26/2014) |
| 02/28/2014 | 5854 | Copy of Conditional Transfer Order (CTO-86) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: MD-D 1:14-365. (tjd) (Entered: 02/28/2014) |
| 03/06/2014 | 5855 | ORDER... that THE MOPTION FOR LEAVE TO FILE A REPLY IN SUPPORT OF DOCKET NO. 5778 IS GRANTED and THAT THE MYLES PLAINTIFFS ARE GRANTED LEAVE TO FILE THEIR REPLY IN SUPPORT OF DOCKET NO. 5778, ATTACHED AS EXHIBIT 1 TO THE MYLES PLAINTIFFS' MOTION FOR LEAVE FILE A REPLY.. SIGNED BY HONORABLE ANITA B. BRODY ON 3/4/2014.3/6/2014 ENTERED AND COPIES MAILED, E-MAILED AND FAXED. (mo, ) (Entered: 03/06/2014) |
| 03/06/2014 | 5856 | REPLY - THE MYLES PLAINTIFFS' REPLY IN SUPPORT OF DOCKET NO. 5778 (REGARDING SETTLEMENT APPROVAL PROCESS AND REQUEST FOR STATUS CONFERENCE TO COORDINATE NON-SETTLING PLAINTIFFS) filed by (DANIEL C. GIRARD, GEOFFREY A. MUNROE, PHILIP W. THOMAS, JOHN D. GIDDENS AND BASKIN JONES) ENTERED 3/6/2014 (mo, ) (mo, ). (Entered: 03/06/2014) |

| 03/07/2014 | 5857 | Copy of Conditional Transfer Order (CTO-87) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: GA-N 1:14-472. (tjd) (Entered: 03/07/2014) |
|---|---|---|
| 03/10/2014 | 5858 | Short Form Complaint - *Anthony Q. Brown* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5859 | Short Form Complaint - *Sammie Burroughs, Jr.* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5860 | Short Form Complaint - *Bryan Dickerson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5861 | Short Form Complaint - *Paul Ernster* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5862 | Short Form Complaint - *Scott Fitzkee* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5863 | Short Form Complaint - *Richard Gardner* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5864 | Short Form Complaint - *Jimmy Gary* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5865 | Short Form Complaint - *John Gilliam* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5866 | Short Form Complaint - *Cornell Gordon, Sr.* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5867 | Short Form Complaint - *DeLawrence Grant* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5868 | Short Form Complaint - *Jeffrey Grau* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5869 | Short Form Complaint - *Brian Holloway* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5870 | Short Form Complaint - *Jeffrey James* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5871 | Short Form Complaint - *Kenoy Kennedy* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5872 | Short Form Complaint - *Frank Marchlewski* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5873 | Short Form Complaint - *Todd McArthur* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5874 | Short Form Complaint - *Jeremy McKinney* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5875 | Short Form Complaint - *Frank Middleton* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5876 | Short Form Complaint - *J. Miles* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |

| 03/10/2014 | 5877 | Short Form Complaint - *Romaro Miller* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5878 | Short Form Complaint - *Evan Morris* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5879 | Short Form Complaint - *Tommy Norman* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5880 | Short Form Complaint - *LeMar Parrish* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5881 | Short Form Complaint - *Carl Powell* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5882 | Short Form Complaint - *Troy Ridgley* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5883 | Short Form Complaint - *Charles Romes* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5884 | Short Form Complaint - *Michael Salmon* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5885 | Short Form Complaint - *Chris Sanders* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5886 | Short Form Complaint - *Jerry Sturm* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5887 | Short Form Complaint - *Edward Thomas* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5888 | Short Form Complaint - *Frank Thompson* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5889 | Short Form Complaint - *Marquis Walker* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/10/2014 | 5890 | Short Form Complaint - *David Windham* by PLAINTIFF(S). (THOMAS, PHILIP) (Entered: 03/10/2014) |
| 03/12/2014 | 5891 | Copy of Conditional Transfer Order (CTO-88) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-S 3:14-428, 14-430. (tjd) (Entered: 03/12/2014) |
| 03/20/2014 | 5892 | Copy of Conditional Transfer Order (CTO-90) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: LA-E 2:14-492. (tjd) (Entered: 03/20/2014) |
| 03/28/2014 | 5893 | Short Form Complaint - Linda Williams, Individually and as Surviving Spouse of Delano Roper Williams by PLAINTIFF(S). (Attachments: # 1 Exhibit Executrix papers)(MCGLAMRY, MICHAEL) (Entered: 03/28/2014) |
| 04/02/2014 | 5894 | Copy of Transfer Order from the JPML that pursuant to 28 U.S.C. 1407 this action is transferred to the ED-PA and assigned to the Honorable Anita B. Brody for inclusion in the coordinated or consolidated pretrial proceedings: Lewis, MO-W, 4:14-4. (tjd) (Entered: 04/02/2014) |

| 04/02/2014 | 5895 | Short Form Complaint *Dean Leibson* by PLAINTIFF(S). (PLYMALE, DOUGLAS) (Entered: 04/02/2014) |
| 04/02/2014 | 5896 | Short Form Compliant *Conrad Clarks* by PLAINTIFF(S). (PLYMALE, DOUGLAS) (Entered: 04/02/2014) |
| 04/02/2014 | 5897 | Short Form Complaint *David Pittman* by PLAINTIFF(S). (PLYMALE, DOUGLAS) (Entered: 04/02/2014) |
| 04/07/2014 | 5898 | Copy of Conditional Transfer Order (CTO-92) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-C 2:14-2077. (tjd) (Entered: 04/07/2014) |
| 04/07/2014 | 5899 | MOTION for Joinder / *ESPN, INC.'S MOTION TO JOIN BLOOMBERG L.P.'S MOTIONS TO INTERVENE AND FOR ACCESS (Related Document Nos. 5766 and 5852)* filed by ESPN, INC.. Mamroandum of Law in Suport and Certificate of Service. (SEGAL, ELI) (Entered: 04/07/2014) |
| 04/07/2014 | 5900 | Disclosure Statement Form pursuant to FRCP 7.1 including The Walt Disney Company and The Hearst Corporation with Certificate of Service by ESPN, INC..(SEGAL, ELI) (Entered: 04/07/2014) |
| 04/09/2014 | 5901 | Short Form Complaint *for Carl & Joann Vereen* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 04/09/2014) |
| 04/09/2014 | 5902 | Short Form Complaint *for Charles Wade* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 04/09/2014) |
| 04/09/2014 | 5903 | Short Form Complaint *for Dameyune and Neke Craig* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 04/09/2014) |
| 04/09/2014 | 5904 | Short Form Complaint *for Donald and Carolyn Patterson* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 04/09/2014) |
| 04/09/2014 | 5905 | Short Form Complaint *for Reggie Jones* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 04/09/2014) |
| 04/09/2014 | 5906 | Short Form Complaint *for Robert Hudson* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 04/09/2014) |
| 04/09/2014 | 5907 | Short Form Complaint *Terry & Deborah Love* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 04/09/2014) |
| 04/15/2014 | 5908 | Joint MOTION to Substitute Attorney filed by PLAINTIFF(S). Certificate of Service. (Applies to 13-2418, 13-2419, 13-3890, 13-5768, 13-5767, 13-5769). (Attachments: # 1 Text of Proposed Order)(MILES, SETH) Modified on 4/16/2014 (tjd). (Entered: 04/15/2014) |
| 04/15/2014 | 5909 | RESPONSE in Opposition re 5899 MOTION for Joinder / *ESPN, INC.'S MOTION TO JOIN BLOOMBERG L.P.'S MOTIONS TO INTERVENE AND FOR ACCESS (Related Document Nos. 5766 and 5852)* filed by PLAINTIFF(S). Certificate of Service. (SEEGER, CHRISTOPHER) Modified on 4/16/2014 (tjd). (Entered: 04/15/2014) |

| 04/16/2014 | 5910 | ORDER - PURSUANT TO THE COURT'S JANUARY 14, 2014 ORDER IN CIVIL ACTION NO. 12-2323 [ECF NO. 5658], IT IS ORDERED that THE MOTION FOR PRELIMINARY APPROVAL AND CLASS CERTIFICATION [ECF NO. 2] IS DENIED WITHOUT PREJUDICE.. SIGNED BY HONORABLE ANITA B. BRODY ON 4/15/2014. 4/16/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 04/16/2014) |
|---|---|---|
| 04/16/2014 | 5911 | STIPULATION AND ORDER THAT THE ORDER DATED 4/15/2014 5910 DOES NOT REFLECT ANY NEW RULING OR NEW CONCERNS BY THE COURT; THE PARTIES ARE CONTINUING TO WORK WITH THE COURT AND ITS SPECIAL MASTER TO ADDRESS THE ISSUES RAISED IN THE COURT'S ORDER DATED JANUARY 14, 2014. SIGNED BY THE HONORABLE ANITA B. BRODY ON 4/16/2014; 4/16/2014 ENTERED AND COPIES E-MAILED. (tjd). Modified on 4/17/2014 (tjd). (Entered: 04/16/2014) |
| 04/16/2014 | 5912 | Copy of Conditional Transfer Order (CTO-94) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: LA-E 2:14-779.**(FILED IN ERROR, CTO WAS NOT FINAL, SEE PAPER # 5942 FOR CORRECT ENTRY)** (tjd) Modified on 4/24/2014 (tjd). (Entered: 04/17/2014) |
| 04/17/2014 | 5913 | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon EASTON-BELL SPORTS, INC. by summons. EASTON-BELL SPORTS, INC. served on 2/7/2014, answer due 2/28/2014. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | 5914 | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon NFL PROPERTIES LLC by summons. NFL PROPERTIES LLC served on 2/10/2014, answer due 3/3/2014. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | 5915 | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon EASTON-BELL SPORTS, LLC by summons. EASTON-BELL SPORTS, LLC served on 2/7/2014, answer due 2/28/2014. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | 5916 | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon NATIONAL FOOTBALL LEAGUE, INC. by summons. NATIONAL FOOTBALL LEAGUE, INC. served on 2/10/2014, answer due 3/3/2014. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | 5917 | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon RIDDELL SPORTS GROUP, INC. by summons. RIDDELL SPORTS GROUP, INC. served on 2/7/2014, answer due 2/28/2014. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | 5918 | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon ALL AMERICAN SPORTS CORPORATION by summons. ALL AMERICAN SPORTS CORPORATION served on 2/7/2014, answer due 2/28/2014. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | 5919 | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon RIDDELL, INC. by summons. RIDDELL, INC. served on 2/11/2014, answer due 3/4/2014. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | 5920 | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon EASTON-BELL SPORTS, LLC by summons. (WASHINGTON, |

| 04/17/2014 | [5921](#) | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon EASTON-BELL SPORTS, INC. by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| --- | --- | --- |
| 04/17/2014 | [5922](#) | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon NFL PROPERTIES LLC by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | [5923](#) | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon RIDDELL, INC. by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | [5924](#) | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon RIDDELL SPORTS GROUP, INC. by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | [5925](#) | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon ALL AMERICAN SPORTS CORPORATION by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | [5926](#) | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon NATIONAL FOOTBALL LEAGUE, INC. by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | [5927](#) | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon EASTON-BELL SPORTS, INC. by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | [5928](#) | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon EASTON-BELL SPORTS, LLC by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | [5929](#) | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon RIDDELL SPORTS GROUP, INC. by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | [5930](#) | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon NATIONAL FOOTBALL LEAGUE, INC. by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | [5931](#) | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon RIDDELL, INC. by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | [5932](#) | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon NFL PROPERTIES LLC by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | [5933](#) | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon ALL AMERICAN SPORTS CORPORATION by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | [5934](#) | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon ALL AMERICAN SPORTS CORPORATION by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | [5935](#) | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon RIDDELL, INC. by summons. RIDDELL, INC. served on |

| | | |
|---|---|---|
| | | 2/10/2014, answer due 3/4/2014. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | 5936 | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon EASTON-BELL SPORTS, INC. by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | 5937 | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon EASTON-BELL SPORTS, LLC by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | 5938 | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon RIDDELL SPORTS GROUP, INC. by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | 5939 | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon NFL PROPERTIES LLC by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/17/2014 | 5940 | SUMMONS Returned Executed by PLAINTIFF(S) re: Sue Wyntjes served Summons and Complaint upon NATIONAL FOOTBALL LEAGUE, INC. by summons. (WASHINGTON, MICKEY) (Entered: 04/17/2014) |
| 04/24/2014 | 5941 | MOTION to Modify *CMO No. 4* filed by PLAINTIFF(S). Memorandum, Certificate of Service. (Attachments: # 1 Exhibit 1)(SCHERMERHORN, ANDREW) Modified on 4/25/2014 (tjd). (Entered: 04/24/2014) |
| 04/24/2014 | 5942 | Copy of Conditional Transfer Order (CTO-94) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: LA-E 2:14-779. (tjd) (Entered: 04/24/2014) |
| 05/01/2014 | 5943 | Short Form Complaint for Rufus Alexander by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5944 | Short Form Complaint for Brian W. Alford by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5945 | Short Form Complaint for James Allen by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5946 | Short Form Complaint for Thomas A. Bailey and Jacqueline Bailey by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5947 | Short Form Complaint for Anthony Bass and Dawniqua Bass by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5948 | Short Form Complaint for Roger Craig and Vernessia Craig by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5949 | Short Form Complaint for Walter N. Bowyer, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5950 | Short Form Complaint for Sean L. Boyd by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5951 | Short Form Complaint for Christopher J. Brewer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5952 | Short Form Complaint for John Burch, III by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |

| 05/01/2014 | 5953 | Short Form Complaint for Hillary Butler by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5954 | Short Form Complaint for Jerametrius Butler, Sr. and Maria Butler by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5955 | Short Form Complaint for Barry M. Brooks, Jr. and Amy Brooks by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5956 | Short Form Complaint for Brian Cabral and Rebecca Cabral by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5957 | Short Form Complaint for Ron Collins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5958 | Short Form Complaint for Lou Cordileone and Karen Cordileone by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5959 | Short Form Complaint for James C. Cribbs by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5960 | Short Form Complaint for Robert J. Cryder and Lisa Cryder by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5961 | Short Form Complaint for Troy Davis by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5962 | Short Form Complaint for Ronald L. Dickerson, Jr. and Kendreah Dickerson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5963 | Short Form Complaint for Bobby Joe Edmonds by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5964 | Short Form Complaint for John Blake Galvin, Jr. and Kerri Galvin by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5965 | Short Form Complaint for Kolas D. Elion and Shannon Elion by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5966 | Short Form Complaint for James Boomer Grigsby by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5967 | Short Form Complaint for Clinton Hart and Kelli Hart by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5968 | Short Form Complaint for James Herndon and Cassie Herndon by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5969 | Short Form Complaint for Keenan Howry by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5970 | Short Form Complaint for Earnest Hunter and Kim Hunter by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5971 | Short Form Complaint for Lynn James by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5972 | Short Form Complaint for Alai P. Kalaniuvalu and Renee Kalaniuvalu by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |

| 05/01/2014 | 5973 | Short Form Complaint for Joseph Klopfenstein by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5974 | Short Form Complaint for Mark McCants by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5975 | Short Form Complaint for Anbthony L. McDowell by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5976 | Short Form Complaint for Earthwind Moreland by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5977 | Short Form Complaint for Terna Nande by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5978 | Short Form Complaint for Marcus Nash by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5979 | Short Form Complaint for Ifenayi Ohalete by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5980 | Short Form Complaint for Franklin Oliver and Charisse Oliver by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5981 | Short Form Complaint for Trenton Pollard and Ericka Pollard by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5982 | Short Form Complaint for Theodore Popson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5983 | Short Form Complaint for Rueben Riley, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5984 | Short Form Complaint for *Oliver Ross, III and Gillie Ross* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5985 | Short Form Complaint for *Robert Reed* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5986 | Short Form Complaint for *Raymond Rowe* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5987 | *Short Form Complaint filed by Randy Phillips* by PLAINTIFF(S).**(FILED IN ERROR, ATTY WILL MAIL IN PAPER COPY FOR FILING)** (KIRTMAN, IAN) Modified on 5/1/2014 (tjd). (Entered: 05/01/2014) |
| 05/01/2014 | 5988 | Short Form Complaint for *George Sartin* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5989 | Short Form Complaint for *Robert "Bo" Schobel and Lyndsay Schobel* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5990 | Short Form Complaint for *Mark A. Thomas* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5991 | Short Form Complaint for *Kyle J. Wachholtz* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5992 | Short Form Complaint for Paul A. Wiggins and Semond Wiggins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |

| 05/01/2014 | 5993 | Short Form Complaint for *Samuel "Chuck" Wiley* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5994 | Short Form Complaint for *Gillis Wilson* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5995 | Short Form Complaint for *Mark Wilson and Jessica Wilson* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5996 | Short Form Complaint for *George F. Wrighster, III* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5997 | Short Form Complaint for *Destry Wright* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5998 | Short Form Complaint for *Edward R. Zeman, II* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 5999 | Short Form Complaint for *Max Zendejas* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 6000 | Short Form Complaint for *Michael Webster, Deceased* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 6001 | Short Form Complaint for *Terry L. Long, Deceased* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 6002 | Short Form Complaint for *Estate of Justin Strzelczyk, Deceased* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 6003 | Short Form Complaint for Estate of Andrew Hill, Deceased by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/01/2014 | 6004 | Short Form Complaint for *Estate of Peter W. Perreault, Deceased* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/01/2014) |
| 05/02/2014 | 6005 | Short Form Complaint *for Albert Lewis* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 05/02/2014) |
| 05/02/2014 | 6006 | Short Form Complaint *for Alexander Louis Cooper* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 05/02/2014) |
| 05/02/2014 | 6007 | Short Form Complaint *for Arthur Still and Lizbeth Still* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 05/02/2014) |
| 05/02/2014 | 6008 | Short Form Complaint *for Barry Hackett and Cynthia Hackett* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 05/02/2014) |
| 05/02/2014 | 6009 | Short Form Complaint *for Chris Smith and Billie Smith* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 05/02/2014) |
| 05/02/2014 | 6010 | Short Form Complaint *for Christopher Martin and Yolanda Thompson-Martin* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 05/02/2014) |
| 05/02/2014 | 6011 | Short Form Complaint *for Emile Harry and Lori Harry* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 05/02/2014) |
| 05/02/2014 | 6012 | Short Form Complaint *for Fred Jones* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 05/02/2014) |

**-366-**

| | | |
|---|---|---|
| 05/02/2014 | 6013 | Short Form Complaint *for Joseph Phillips* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 05/02/2014) |
| 05/02/2014 | 6014 | Short Form Complaint *for Kevin Porter and Annjela Hynes-Porter* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 05/02/2014) |
| 05/02/2014 | 6015 | Short Form Complaint *for Leonard Griffin and Dawn Savitra Griffin* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 05/02/2014) |
| 05/02/2014 | 6016 | Short Form Complaint *for Tim Barnett and Chelonda Barnett* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 05/02/2014) |
| 05/02/2014 | 6017 | Short Form Complaint *for Todd McNair and Lynnette McNair* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 05/02/2014) |
| 05/02/2014 | 6018 | Short Form Complaint *for Walker Lee Ashley* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 05/02/2014) |
| 05/05/2014 | 6019 | MOTION to Intervene filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL.Memorandum of Law in Support and Certificate of Service. (Attachments: # 1 Memorandum Memorandum of Law in Support, # 2 Text of Proposed Order) (HANGLEY, WILLIAM) (Entered: 05/05/2014) |
| 05/06/2014 | 6020 | Short Form Complaint for *Damon Wheeler, Sr.* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/06/2014) |
| 05/06/2014 | 6021 | Short Form Complaint for Kathleen Bajgrowicz, Admin Est of Charles Osborne by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 05/06/2014) |
| 05/06/2014 | 6022 | Short Form Complaint for Michael Bates by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 05/06/2014) |
| 05/06/2014 | 6023 | Short Form Complaint for Bob Harrison and Barbara Harrison by PLAINTIFF(S). (LIPPSMITH, GRAHAM) (Entered: 05/06/2014) |
| 05/07/2014 | 6024 | Short Form Complaint for *Richard Eber and Ellen Eber* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/07/2014) |
| 05/07/2014 | 6025 | SUMMONS Returned Executed by NFL PROPERTIES LLC re: Denorris Britt served Summons and Complaint upon NFL PROPERTIES LLC by Summons and Complaint. NFL PROPERTIES LLC served on 2/18/2014, answer due 3/11/2014. (HEYMAN, FREDERIC) (Entered: 05/07/2014) |
| 05/07/2014 | 6026 | SUMMONS Returned Executed by NATIONAL FOOTBALL LEAGUE, INC. re: Denorris Britt served Summons and Complaint upon NATIONAL FOOTBALL LEAGUE, INC. by Summons and Complaint. NATIONAL FOOTBALL LEAGUE, INC. served on 2/18/2014, answer due 3/11/2014. (HEYMAN, FREDERIC) (Entered: 05/07/2014) |
| 05/08/2014 | 6027 | RESPONSE to Motion re 5941 MOTION to Modify *CMO No. 4* filed by PLAINTIFF(S). Certificate of Service. (Applies to 14-cv-1995). (SEEGER, CHRISTOPHER) Modified on 5/9/2014 (tjd). (Entered: 05/08/2014) |
| 05/09/2014 | 6028 | RESPONSE in Opposition re 5941 MOTION to Modify *CMO No. 4* filed by KANSAS CITY CHIEFS FOOTBALL CLUB, INC. Certificate of Service. (Applies to 14-cv-1995). (Attachments: # 1 Text of Proposed Order)(KARP, BRAD) Modified on 5/9/2014 (tjd). (Entered: 05/09/2014) |

| 05/12/2014 | 6029 | Short Form Complaint - Kurt Schulz and Susan Schulz by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 05/12/2014) |
| 05/12/2014 | 6030 | Short Form Complaint - Jason Gesser and Kali Gesser by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 05/12/2014) |
| 05/12/2014 | 6031 | Short Form Complaint - Ronald Plantz and Laura Plantz by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 05/12/2014) |
| 05/12/2014 | 6032 | Short Form Complaint - Kenneth Neil by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 05/12/2014) |
| 05/12/2014 | 6033 | Short Form Complaint - Coolidge Hunt and Connie Hunt by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 05/12/2014) |
| 05/12/2014 | 6034 | Short Form Complaint - Henry Smith by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 05/12/2014) |
| 05/12/2014 | 6035 | Short Form Complaint - Joe Sims by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 05/12/2014) |
| 05/12/2014 | 6036 | Short Form Complaint - James Schmedding and Kathryn Schmedding by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 05/12/2014) |
| 05/12/2014 | 6037 | Short Form Complaint - Wilbert Haslip by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 05/12/2014) |
| 05/12/2014 | 6038 | Short Form Complaint - Gregore Fassitt by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 05/12/2014) |
| 05/15/2014 | 6039 | NOTICE by PLAINTIFF(S) re 5894 Conditional Transfer Order, *of Supplemental Authority in Support of Motion to Remand* (Attachments: # 1 Exhibit 1) (SCHERMERHORN, ANDREW) (Entered: 05/15/2014) |
| 05/15/2014 | 6040 | NOTICE of Appearance by STEVEN F. MOLO on behalf of RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL with Certificate of Service(MOLO, STEVEN) (Entered: 05/15/2014) |
| 05/15/2014 | 6041 | NOTICE of Appearance by THOMAS J. WIEGAND on behalf of RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL with Certificate of Service(WIEGAND, THOMAS) (Entered: 05/15/2014) |
| 05/15/2014 | 6042 | NOTICE of Appearance by KAITLIN R. O'DONNELL on behalf of RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL with Certificate of Service(O'DONNELL, KAITLIN) (Entered: 05/15/2014) |
| 05/15/2014 | 6043 | NOTICE of Appearance by ERIC R. NITZ on behalf of RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL with Certificate of Service(NITZ, ERIC) (Entered: 05/15/2014) |
| 05/15/2014 | 6044 | NOTICE of Appearance by LINDA SUSAN MULLENIX on behalf of RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL with Certificate of Service(MULLENIX, LINDA) (Entered: 05/15/2014) |

| | | |
|---|---|---|
| 05/19/2014 | 6045 | NOTICE of Appearance by MICHELE D. HANGLEY on behalf of RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL with Certificate of Service(HANGLEY, MICHELE) (Entered: 05/19/2014) |
| 05/19/2014 | 6046 | RESPONSE in Opposition re 6019 MOTION to Intervene filed by PLAINTIFF(S). Certificate of Service. (Attachments: # 1 Text of Proposed Order)(SEEGER, CHRISTOPHER) Modified on 5/22/2014 (tjd). (Entered: 05/19/2014) |
| 05/27/2014 | 6047 | MOTION for Leave to File *a Reply Brief in Support of MDL Docket No. 6019 (Motion to Intervene)* filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL. Certificate of Service. (Applies to 14-cv-29). (Attachments: # 1 Text of Proposed Order)(HANGLEY, WILLIAM) Modified on 5/28/2014 (tjd). (Entered: 05/27/2014) |
| 05/30/2014 | 6048 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Tim Castille(WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6049 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint by Tim Castille* (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6050 | Short Form Complaint *ERIK AFFHOLTER* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6051 | Short Form Complaint *RICHARD BISHOP* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6052 | Short Form Complaint *BRUCE CLARK* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6053 | Short Form Complaint *CHRIS DUGAN* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6054 | Short Form Complaint *ANTHONY GRANT* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6055 | Short Form Complaint *MARK GREEN* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6056 | Short Form Complaint *JOHN HUDDLESTON* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6057 | Short Form Complaint *ETHAN JOHNSON* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6058 | Short Form Complaint *LACURTIS JONES* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6059 | Short Form Complaint *PETER MANNING and SUSIE MANNING* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6060 | Short Form Complaint *DAN MARINO* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6061 | Short Form Complaint *TODDRICK MCINTOSH* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6062 | Short Form Complaint *MOSES MORENO* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |

| | | |
|---|---|---|
| 05/30/2014 | 6063 | Short Form Complaint *JACKIE WALLACE* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6064 | Short Form Complaint *STACEY MCCLELLAN and CYNTHIA NORTON* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6065 | Short Form Complaint *KELLY J. STILLWELL* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 05/30/2014 | 6066 | Short Form Complaint *NANCY PETERS* by PLAINTIFF(S). (WEISS, SOL) (Entered: 05/30/2014) |
| 06/03/2014 | 6067 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Dan Marino(WEISS, SOL) (Entered: 06/03/2014) |
| 06/03/2014 | 6068 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint by Dan Marino* (WEISS, SOL) (Entered: 06/03/2014) |
| 06/09/2014 | 6069 | Copy of a Transfer Order from the JPML that pursuant to 28 U.S.C. 1407 these actions are transferred to the ED-PA and assigned to the Honorable Anita B. Brody for inclusion in the coordinated or consolidated pretrial proceedings: MO-W 4:14-131, 14-132, 14-133, 14-195, 14-196. (tjd) (Entered: 06/09/2014) |
| 06/19/2014 | 6070 | Copy of Conditional Transfer Order (CTO-95) from the Judicial Panel on Multidistrict Litigation that the actions listed on the attached schedule are transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-S 3:14-1357; NY-S 1:14-3748. (tjd) (Entered: 06/19/2014) |
| 06/23/2014 | 6071 | NOTICE *of Judgment Lien against Michael J. Williams by Michelle Coelho, formerly Michelle Williams* (Attachments: # 1 Certificate of Service)(FORD, MATTHEW) Modified on 6/24/2014 (tjd). (Entered: 06/23/2014) |
| 06/25/2014 | 6072 | ORDER - IN THE INTEREST OF JUSTICE AND TO PROMOTE JUDICIAL ECONOMY AND AVOID DUPLICATION: THE COURT HEREBY ORDERS AS FOLLOWS:.... SIGNED BY HONORABLE ANITA B. BRODY ON 6/25/2014. 6/25/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 06/25/2014) |
| 06/25/2014 | 6073 | MOTION for an Order *Granting Preliminary Approval of Class Action Settlement; Conditionally Certifying a Settlement Class and Subclasses; Appointing Co-Lead Class Counsel, Class Counsel and Subclass Counsel; Approving the Dissemination of Class Notice; Scheduling a Fairness Hearing; and Staying Matters as to the Released Parties and Enjoining Proposed Settlement Class Members From Pursuing Related Lawsuits* filed by PLAINTIFF(S). Memorandum. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Memorandum)(SEEGER, CHRISTOPHER) Modified on 6/26/2014 (tjd). (Entered: 06/25/2014) |
| 07/02/2014 | 6074 | Short-Form Complaint *Jayice Pearson, Joi Pearson* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 07/02/2014) |
| 07/02/2014 | 6075 | Short-Form Complaint *Neil Smith* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 07/02/2014) |
| 07/02/2014 | 6076 | Short-Form Complaint *Trent Bryant, Robin Bryant* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 07/02/2014) |
| 07/02/2014 | 6077 | Short-Form Complaint *Douglas Terry* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 07/02/2014) |

| 07/02/2014 | 6078 | Short-Form Complaint *Paul Palmer* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 07/02/2014) |
| 07/02/2014 | 6079 | Short-Form Complaint *Darrell Colbert* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 07/02/2014) |
| 07/02/2014 | 6080 | Short-Form Complaint *Charles Mincy* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 07/02/2014) |
| 07/02/2014 | 6081 | Short-Form Complaint *Scott Manuel, as limited conservator of Zoey M. Belcher* by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 07/02/2014) |
| 07/02/2014 | 6082 | RESPONSE in Opposition re 6073 MOTION for Approval *Preliminary Approval of Class Action Settlement* filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL. (Attachments: # 1 Text of Proposed Order)(NITZ, ERIC) (Entered: 07/02/2014) |
| 07/07/2014 | 6083 | MEMORANDUM AND/OR OPINION. SIGNED BY HONORABLE ANITA B. BRODY ON 7/7/2014. 7/7/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/07/2014) |
| 07/07/2014 | 6084 | ORDER GRANTING PRELIMINARY APPROVAL.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/7/2014. (Attachments: # 1 Exhibit, # 2 Exhibit) 7/7/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/07/2014) |
| 07/07/2014 | 6087 | CLASS ACTION SETTLEMENT AGREEMENT AS OF JUNE 25, 2014. (tjd) (Entered: 07/09/2014) |
| 07/08/2014 | 6085 | NOTICE by PLAINTIFF(S) *of Withdrawal of Short Form Complaint of Richard A. Bielski and Johan Bielski* (LOCKS, GENE) (Entered: 07/08/2014) |
| 07/08/2014 | 6086 | MOTION for Approval *of Completed Versions of Long-Form Notice and Summary Notice* filed by PLAINTIFF(S).. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 07/08/2014) |
| 07/09/2014 | 6088 | Short Form Complaint of Michael Henry by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/09/2014) |
| 07/09/2014 | 6089 | Short Form Complaint of Perry Klein by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/09/2014) |
| 07/09/2014 | 6090 | Short-Form Complaint *Cheryl Shepherd* by PLAINTIFF(S). (LEYH, GREGORY) (Entered: 07/09/2014) |
| 07/09/2014 | 6091 | Short-Form Complaint *Joseph Horn* by PLAINTIFF(S). (LEYH, GREGORY) (Entered: 07/09/2014) |
| 07/09/2014 | 6092 | Short-Form Complaint *Tamarick Vanover* by PLAINTIFF(S). (LEYH, GREGORY) (Entered: 07/09/2014) |
| 07/09/2014 | 6093 | ORDER - UPON CONSIDERATION OF THE MOTION OF CO-LEAD CLASS COUNSEL FOR AN ORDER APPROVING THE COMPLETED VERSIONS OF THE LONG-FORM NOTICE AND THE SUMMARY NOTICE (ECF NO. 6086), that THE MOTION IS GRANTED. THE ATTACHED LONG-FORM.... SIGNED BY HONORABLE ANITA B. BRODY ON 7/9/2014. (Attachments: # 1 Exhibit, # 2 Exhibit)7/9/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/09/2014) |
| 07/14/2014 | 6094 | NOTICE of Appearance by DONALD A. MIGLIORI on behalf of PLAINTIFF(S) with Certificate of Service(MIGLIORI, DONALD) (Entered: 07/14/2014) |

| 07/14/2014 | 6095 | NOTICE of Appearance by ANNE MCGINNESS KEARSE on behalf of PLAINTIFF(S) with Certificate of Service(KEARSE, ANNE) (Entered: 07/14/2014) |
| 07/14/2014 | 6096 | Short Form Complaint *Willie D. Parker* by PLAINTIFF(S). (KEARSE, ANNE) (Entered: 07/14/2014) |
| 07/14/2014 | 6097 | NOTICE of Appearance by NORMAN ANTHONY ABOOD on behalf of PLAINTIFF(S) (ABOOD, NORMAN) (Entered: 07/14/2014) |
| 07/15/2014 | 6098 | NOTICE by PLAINTIFF(S) *Withdrawal of Short Form Complaint by Brandon Winey* (MCCORVEY, DERRIEL) (Entered: 07/15/2014) |
| 07/15/2014 | 6099 | MOTION for Relief from Stay and Injunction *as to Green v. Arizona Cardinals Football Club, LLC, Case No. 1422-CC00005-01, in the Circuit Court of the City of St. Louis, State of Missouri* filed by PLAINTIFF(S).Memorandum.(SCHERMERHORN, ANDREW) (Entered: 07/15/2014) |
| 07/21/2014 | 6100 | Copy of Conditional Transfer Order (CTO-93) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: CA-S 3:14-781. (tjd) (Entered: 07/21/2014) |
| 07/24/2014 | 6101 | Amended MOTION to Intervene *to Seek Access to Documents and Information* filed by BLOOMBERG L.P., ESPN, INC..Memorandum of Law in Support and Certificate of Service. (Attachments: # 1 Exhibit 1-3 Part 1, # 2 Exhibit 1-3 Part 2)(SEGAL, ELI) (Entered: 07/24/2014) |
| 07/29/2014 | 6102 | Second MOTION to Permit *the Dissemination of Data* filed by PLAINTIFF(S).Affidavit of Thomas A. Demetrio, Certificate of Service.(GIBBS, WILLIAM) (Entered: 07/29/2014) |
| 07/29/2014 | 6103 | ORDER that THE BRAIN INJURY ASSOCIATION OF AMERICA'S MOTION FOR LEAVE TO FILE AN AMICUS CURIAE BRIEF [ECF NO. 5608] IS DENIED AS MOOT IN LIGHT OF MY JULY 7, 2014 ORDER GRANTING PRELIMINARY APPROVAL OF THE REVISED SETTLEMENT.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/29/2014.7/29/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/29/2014) |
| 07/29/2014 | 6104 | ORDER that THE MOTION TO PERMIT THE DISSEMINATION OF ALL DATA UTILIZED BY CO-LEAD CLASS COUNSEL TO REACH THE INITIAL PROPOSED SETTLEMENT [ECF NO. 5686] IS DENIED AS MOOT IN LIGHT OF THE SECOND MOTION REQUESTING DISSEMINATION OF DATA FILED ON JULY 29, 2014.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/29/2014.7/29/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/29/2014) |
| 07/29/2014 | 6105 | ORDER that IN LIGHT OF THEIR JULY 24, 2014 AMENDED MOTION TO INTERVENE TO SEEK ACCESS TO DOCUMENTS AND INFORMATION [ECF NO. 6101], BLOOMBERG L.P.'S MOTION TO INTERVENE TO SEEK ACCESS TO DOCUMENTS AND INFORMATION [ECF NO. 5766] AND ESPN, INC.'S MOTION TO JOIN BLOOMBERG L.P.'S MOTION [ECF NO. 5899] ARE DENIED AS MOOT.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/29/2014.7/29/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/29/2014) |
| 07/29/2014 | 6106 | ORDER that THE MOTION FOR LEAVE TO FILE A REPLY IN SUPPORT OF THE MOTION TO INTERVENE [ECF NO. 6047] IS GRANTED AND THE REPLY BRIEF ATTACHED TO THE MOTION AS EXHIBIT A IS CONSIDERED FILED.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/29/2014.7/29/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/29/2014) |

| | | |
|---|---|---|
| 07/29/2014 | 6107 | ORDER that THE MOTION TO INTERVENE [ECF NO. 6019] IS DENIED. THE MOVING PARTIES MAY OBJECT TO OR OPT-OUT OF THE SETTLEMENT UNDER THE PROCEDURES SET FORTH IN MY JULY 7, 2014 ORDER.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/29/2014.7/29/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/29/2014) |
| 07/29/2014 | 6108 | RESPONSE in Opposition re 6099 MOTION for Relief from Stay and Injunction *as to Green v. Arizona Cardinals Football Club, LLC, Case No. 1422-CC00005-01, in the Circuit Court of the City of St. Louis, State of Missouri* filed by PLAINTIFF(S). Certificate of Service. (Attachments: # 1 Text of Proposed Order)(SEEGER, CHRISTOPHER) Modified on 7/30/2014 (tjd). (Entered: 07/29/2014) |
| 07/29/2014 | 6109 | Reply in Further Support re 6019 MOTION to Intervene filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL. Certificate of Service. (Applies to 14-cv-29). (tjd) (Entered: 07/30/2014) |
| 07/29/2014 | 6110 | ORDER THAT 5908 MOTION TO SUBSTITUTE COUNSEL IS GRANTED; SETH MILES, ESQUIRE IS WITHDRAWN AS COUNSEL OF RECORD FOR PLAINTIFFS JEFFREY AND MARY DELLENBACH, ANTOINE FISHER, SHAWN MOORE, JOSEPH AND JENNIFER VALERIO, DARRELL MALONE, JOSEPH CONWELL AND LAURA MCGETTIGAN, RANDAL AND MICHELLE HILL, TERRANCE GLENN, GLENN EARL, MICHAEL A. CHALENSKI, DEREK RUSSELL, AND JAMES A. AND ERIN MOLINARO; BRADFORD R. SOHN, ESQUIRE IS SUBSTITUTED AS COUNSEL OF RECORD. SIGNED BY HONORABLE ANITA B. BRODY ON 7/29/2014; 7/30/2014 ENTERED AND COPIES E-MAILED. (APPLIES TO 13-2418, 13-2419, 13-3890, 13-5768, 13-5767, 13-5769).(tjd) (Entered: 07/30/2014) |
| 07/30/2014 | 6111 | MOTION for Leave to File *a Reply Brief in Support of Docket No. 6099 (Motion for Relief from the Stay and Injunction)* filed by PLAINTIFF(S). Memorandum, Certificate of Service. (Attachments: # 1 Exhibit A)(SCHERMERHORN, ANDREW) Modified on 7/31/2014 (tjd). (Entered: 07/30/2014) |
| 07/31/2014 | 6112 | NOTICE of Appearance by DWIGHT P. BOSTWICK on behalf of PLAINTIFF(S) with Certificate of Service(BOSTWICK, DWIGHT) (Entered: 07/31/2014) |
| 07/31/2014 | 6113 | ORDER... that THE MOTION TO MODIFY CASE MANAGMENT ORDER ("CMO") NO. 4 [ECF NO. 5941] IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/31/2014.7/31/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/31/2014) |
| 07/31/2014 | 6114 | MOTION for Extension of Time to File Response/Reply as to 6101 Amended MOTION to Intervene *to Seek Access to Documents and Information* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.Certificate of Service. (Attachments: # 1 Text of Proposed Order)(KARP, BRAD) (Entered: 07/31/2014) |
| 07/31/2014 | 6115 | MOTION to Permit *Access to Medical, Actuarial, and Economic Information Used to Support the Settlement Proposal* filed by PLAINTIFF(S).Memorandum, Certificate of Service. (Attachments: # 1 Text of Proposed Order)(BOSTWICK, DWIGHT) (Attachment 1 replaced on 7/31/2014 per Chambers) (kp, ). (Entered: 07/31/2014) |
| 07/31/2014 | 6116 | FILED IN ERROR. (PLEASE REFER TO DOC NO. 6115 ) Proposed Pretrial Order *Amended Proposed Order to Plaintiffs Motion to Permit Access to Medical, Actuarial, and Economic Information Used to Support the Settlement Proposal* by |

| | | |
|---|---|---|
| | | PLAINTIFF(S). (BOSTWICK, DWIGHT) Modified on 7/31/2014 (kp, ). (Entered: 07/31/2014) |
| 08/01/2014 | 6117 | RESPONSE in Opposition re 6099 MOTION for Relief from Stay and Injunction *as to Green v. Arizona Cardinals Football Club, LLC, Case No. 1422-CC00005-01, in the Circuit Court of the City of St. Louis, State of Missouri* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. Certificate of Service. (Attachments: # 1 Declaration of Douglas M. Burns, # 2 Exhibit A, # 3 Exhibit B, # 4 Text of Proposed Order)(KARP, BRAD) Modified on 8/4/2014 (tjd). (Entered: 08/01/2014) |
| 08/01/2014 | 6118 | MOTION to Intervene filed by ARIZONA CARDINALS FOOTBALL CLUB LLC.Memorandum and Certificate of Service. (Attachments: # 1 Memorandum of Law in Support, # 2 Text of Proposed Order)(KARP, BRAD) (Entered: 08/01/2014) |
| 08/01/2014 | 6119 | Disclosure Statement Form pursuant to FRCP 7.1 with Certificate of Service by ARIZONA CARDINALS FOOTBALL CLUB LLC.(KARP, BRAD) (Entered: 08/01/2014) |
| 08/04/2014 | 6120 | MOTION to Withdraw as Attorney *on behalf of Johnny E. McWilliams & Elizabeth A. McWilliams* filed by PLAINTIFF(S).. Certificate of Service. (Attachments: # 1 Text of Proposed Order Order granting leave to Withdraw)(ABOOD, NORMAN) Modified on 8/5/2014 (ems). (Entered: 08/04/2014) |
| 08/05/2014 | 6121 | NOTICE OF APPEAL as to 6084 Order (Memorandum and/or Opinion) by PLAINTIFF(S). Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (SCHERMERHORN, ANDREW) Modified on 8/6/2014 (ems). (Entered: 08/05/2014) |
| 08/05/2014 | 6122 | Clerk's Notice to USCA re 6121 Notice of Appeal : (ems) (Entered: 08/06/2014) |
| 08/06/2014 | 6123 | ORDER THAT 6114 MOTION OF DEFENDANTS NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC TO EXTEND THE TIME TO RESPOND TO BLOOMBERG L.P.'S AND ESPN, INC.'S AMENDED MOTION TO INTERVENE TO SEEK DOCUMENTS AND INFORMATION (DOC. NO. 6101) IS GRANTED. DEFENDANTS NATIONAL FOOTBALL LEAGUE'S AND NFL PROPERTIES LLC'S TIME TO RESPOND IS EXTENDED TO 9/1/2014. SIGNED BY HONORABLE CYNTHIA M. RUFE FOR THE HONORABLE ANITA B. BRODY ON 8/6/2014. 8/7/2014 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS) (ems) (Entered: 08/07/2014) |
| 08/07/2014 | | USCA Appeal Fees received $ 505 receipt number PPE105716 re 6121 Notice of Appeal filed by PLAINTIFF(S) (ems) (Entered: 08/07/2014) |
| 08/08/2014 | 6124 | MOTION for Extension of Time to File Response/Reply as to 6115 MOTION to Permit *Access to Medical, Actuarial, and Economic Information Used to Support the Settlement Proposal,* 6102 Second MOTION to Permit *the Dissemination of Data,* 6101 Amended MOTION to Intervene *to Seek Access to Documents and Information* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 08/08/2014) |
| 08/08/2014 | 6125 | MOTION for Extension of Time to File Response/Reply as to 6115 MOTION to Permit *Access to Medical, Actuarial, and Economic Information Used to Support the Settlement Proposal,* 6102 Second MOTION to Permit *the Dissemination of Data* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.Certificate of Service. (Attachments: # 1 Text of Proposed Order)(KARP, BRAD) (Entered: 08/08/2014) |

**-374-**

| 08/08/2014 | 6126 | RESPONSE in Opposition re 6125 MOTION for Extension of Time to File Response/Reply as to 6115 MOTION to Permit *Access to Medical, Actuarial, and Economic Information Used to Support the Settlement Proposal*, 6102 Second MOTION to Permit *the Dissemination of Data<, 6124 MOTION for Extension of Time to File Response/Reply as to 6115 MOTION to Permit Access to Medical, Actuarial, and Economic Information Used to Support the Settlement Proposal, 6102 Second MOTION to Permit the Dissemination of Data< filed by PLAINTIFF(S). Certificate of Service. (GIBBS, WILLIAM) Modified on 8/11/2014 (ems). (Entered: 08/08/2014) |
|---|---|---|
| 08/08/2014 | 6127 | ORDER THAT 6124 CO-LEAD CLASS COUNSEL'S MOTION TO EXTEND THE TIME TO RESPOND TO (1) BLOOMBERG L.P. AND ESPN, INC.'S AMENDED MOTION TO INTERVENE TO SEEK ACCESS TO DOCUMENTS AND INFORMATION (DOC. NO. 6101); (2) DUERSON'S SECOND MOTION REQUESTING THE DISSEMINIATION OF DATA (DOC. NO. 6102); AND (3) MOTION OF TWENTY-FOUR PLAINTIFFS TO GAIN ACCESS TO MEDICAL, ACTUARIAL, AND ECONOMIC INFORMATION USED TO SUPPORT THE SETTLEMENT PROPOSAL (DOC. NO. 6115) IS GRANTED. CO-LEAD CLASS COUNSEL'S TIME TO RESPOND IS EXTENDED TO 9/2/2014. SIGNED BY HONORABLE JOEL H. SLOMSKY FOR THE HONORABLE ANITA B. BRODY ON 8/8/2014. 8/8/2014 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS) (ems) (Entered: 08/08/2014) |
| 08/08/2014 | 6128 | ORDER THAT 6125 MOTION FOR EXTENSION OF TIME TO RESPOND IS GRANTED; NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC SHALL RESPOND TO 6102 SECOND MOTION REQUESTING THE DISSEMINATION OF DATA AND 6115 MOTION TO GAIN ACCESS TO MEDICAL, ACTUARIAL, AND ECONOMIC INFORMATION USED TO SUPPORT THE SETTLEMENT PROPOSAL BY SEPTEMBER 2, 2014. SIGNED BY HONORABLE JOEL H. SLOMSKY FOR THE HONORABLE ANITA B. BRODY ON 8/8/2014; 8/8/2014 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS).(tjd) (Entered: 08/08/2014) |
| 08/12/2014 | | NOTICE of Docketing Record on Appeal from USCA re 6121 Notice of Appeal filed by PLAINTIFF(S). USCA Case Number 14-3520 (ems) (Entered: 08/12/2014) |
| 08/12/2014 | 6129 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S). (Applies to 12-cv-92). (Attachments: # 1 Certificate of Service) (ROSEN, DAVID) Modified on 8/15/2014 (tjd). (Entered: 08/12/2014) |
| 08/13/2014 | 6130 | MOTION to Withdraw as Attorney *for Plaintiff C.C. Brown* filed by PLAINTIFF(S). Certificate of Service. (Applies to 12-cv-7235). (Attachments: # 1 Text of Proposed Order)(WEISS, SOL) Modified on 8/15/2014 (tjd). (Entered: 08/13/2014) |
| 08/13/2014 | 6131 | MOTION to Intervene filed by RICHARD DENT, ROY GREEN, J.D. HILL, JAMES MCMAHON, JEREMY NEWBERRY, RON PRITCHARD, RON STONE, KEITH VAN HORNE, MARCELLUS WILEY.Motion to Intervene. (Attachments: # 1 Statement of Claim in Support of Intervention, # 2 Memorandum Memorandum in Support of Motion to Intervene, # 3 Certificate of Service, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Text of Proposed Order)(WHITWORTH, RAMSAY) (Entered: 08/13/2014) |
| 08/13/2014 | 6132 | Copy of Transfer Order from the JPML that pursuant to 28 U.S.C. 1407 this action is transferred to the ED-PA and assigned to the Honorable Anita B. Brody for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket: Kenney, et al., MO-W, 4:14-255. (tjd) (Entered: 08/13/2014) |

| 08/19/2014 | 6133 | MOTION to Withdraw as Attorney *for Plaintiff Charles E. Commiskey* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Text of Proposed Order) (FRANCO, DAVID) (Entered: 08/19/2014) |
|---|---|---|
| 08/20/2014 | 6134 | MOTION to Withdraw as Attorney *for Plaintiffs Vaughan Johnson and Shirley Johnson* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Text of Proposed Order)(FRANCO, DAVID) (Entered: 08/20/2014) |
| 08/20/2014 | 6135 | First MOTION to Withdraw as Attorney *Bruce Jarvis and Cindy Jarvis* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Certificate of Service) (ROSEN, DAVID) (Entered: 08/20/2014) |
| 08/21/2014 | 6136 | NOTICE OF APPEAL as to 6107 Order on Motion to Intervene, by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (MOLO, STEVEN) Modified on 8/22/2014 (ems). (Entered: 08/21/2014) |
| 08/21/2014 | 6137 | Clerk's Notice to USCA re 6136 Notice of Appeal, : (ems) (Entered: 08/22/2014) |
| 08/22/2014 | 6138 | Motion for Leave to Withdraw as Counsel as to Myron Bell and Kimberly Bell by PLAINTIFF(S). Certificate of Service. (Applies to 13-cv-1331). (SEEGER, CHRISTOPHER) Modified on 8/25/2014 (tjd). (Entered: 08/22/2014) |
| 08/25/2014 | | USCA Appeal Fees received $ 505 receipt number PPE106557 re 6136 Notice of Appeal, filed by SEAN CONSIDINE, RODERICK CARTWRIGHT, SEAN MOREY, BEN HAMILTON, JEFF ROHRER, ALAN FANECA, ROBERT ROYAL. (tjd) (Entered: 08/25/2014) |
| 08/29/2014 | | NOTICE of Docketing Record on Appeal from USCA re 6136 Notice of Appeal, filed by SEAN CONSIDINE, RODERICK CARTWRIGHT, SEAN MOREY, BEN HAMILTON, JEFF ROHRER, ALAN FANECA, ROBERT ROYAL. USCA Case Number 14-3693 (ems) (Entered: 08/29/2014) |
| 09/02/2014 | 6139 | RESPONSE in Opposition re 6131 MOTION to Intervene filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. Proposed Order, Certificate of Service. (Attachments: # 1 Text of Proposed Order)(KARP, BRAD) Modified on 9/3/2014 (kk, ). (Entered: 09/02/2014) |
| 09/02/2014 | 6140 | Short Form Complaint by PLAINTIFF(S). (STERN, JEFFREY) (Entered: 09/02/2014) |
| 09/02/2014 | 6141 | RESPONSE to Motion re 6101 Amended MOTION to Intervene *to Seek Access to Documents and Information* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. Certificate of Service. (KARP, BRAD) (Entered: 09/02/2014) |
| 09/02/2014 | 6142 | RESPONSE to Motion re 6102 Second MOTION to Permit *the Dissemination of Data* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. Certificate of Service. (KARP, BRAD) Modified on 9/3/2014 (kk, ). (Entered: 09/02/2014) |
| 09/02/2014 | 6143 | RESPONSE to Motion re 6115 MOTION to Permit *Access to Medical, Actuarial, and Economic Information Used to Support the Settlement Proposal* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. Certificate of Service.(KARP, BRAD) (Entered: 09/02/2014) |
| 09/02/2014 | 6144 | RESPONSE to Motion re 6101 Amended MOTION to Intervene *to Seek Access to Documents and Information* filed by PLAINTIFF(S). Certificate of Service.(SEEGER, CHRISTOPHER) (Entered: 09/02/2014) |

| 09/02/2014 | 6145 | RESPONSE in Opposition re 6131 MOTION to Intervene filed by PLAINTIFF(S). Certificate of Service, Proposed Order. (Attachments: # 1 Text of Proposed Order) (SEEGER, CHRISTOPHER) Modified on 9/3/2014 (kk, ). (Entered: 09/02/2014) |
| --- | --- | --- |
| 09/02/2014 | 6146 | RESPONSE to Motion re 6102 Second MOTION to Permit *the Dissemination of Data* filed by PLAINTIFF(S). Certificate of Service. (SEEGER, CHRISTOPHER) Modified on 9/3/2014 (kk, ). (Entered: 09/02/2014) |
| 09/02/2014 | 6147 | RESPONSE to Motion re 6115 MOTION to Permit *Access to Medical, Actuarial, and Economic Information Used to Support the Settlement Proposal* filed by PLAINTIFF(S). Certificate of Service. (SEEGER, CHRISTOPHER) Modified on 9/3/2014 (kk, ). (Entered: 09/02/2014) |
| 09/03/2014 | 6148 | NOTICE of Appearance by STEPHEN G. GRYGIEL on behalf of RICHARD DENT, ROY GREEN, J.D. HILL, JAMES MCMAHON, JEREMY NEWBERRY, RON PRITCHARD, RON STONE, KEITH VAN HORNE, MARCELLUS WILEY (GRYGIEL, STEPHEN) (Entered: 09/03/2014) |
| 09/03/2014 | 6149 | NOTICE of Appearance by WILLIAM N. SINCLAIR on behalf of RICHARD DENT, ROY GREEN, J.D. HILL, JAMES MCMAHON, JEREMY NEWBERRY, RON PRITCHARD, RON STONE, KEITH VAN HORNE, MARCELLUS WILEY (SINCLAIR, WILLIAM) (Entered: 09/03/2014) |
| 09/03/2014 | 6150 | Short Form Complaint *of Ramon Armstrong, et al* by PLAINTIFF(S). (Attachments: # 1 Civil Cover Sheet, # 2 Designation Form, # 3 Case Management Track Form) (TOUPS, MITCHELL) (Entered: 09/03/2014) |
| 09/03/2014 | 6151 | MOTION for Leave to File *Reply to Co-Lead Counsel's Response (6146)* filed by PLAINTIFF(S).Certificate of Service, Exhibit.(GIBBS, WILLIAM) Modified on 9/4/2014 (kk, ). (Entered: 09/03/2014) |
| 09/04/2014 | 6152 | Short Form Complaint re: Barber, Michael by PLAINTIFF(S). (DAVIES, MARC) (Entered: 09/04/2014) |
| 09/04/2014 | 6153 | Short Form Complaint re: Bowie, Larry by PLAINTIFF(S). (DAVIES, MARC) (Entered: 09/04/2014) |
| 09/04/2014 | 6154 | NOTICE of Appearance by MARC E. DAVIES on behalf of PLAINTIFF(S). Certificate of Service. (DAVIES, MARC) Modified on 9/5/2014 (ems). (Entered: 09/04/2014) |
| 09/05/2014 | 6155 | NOTICE of Appearance by MITCHELL A. TOUPS on behalf of PLAINTIFF(S) with Certificate of Service(TOUPS, MITCHELL) (Entered: 09/05/2014) |
| 09/05/2014 | 6156 | NOTICE of Voluntary Dismissal by PLAINTIFF(S). Certificate of Service. (DAVIES, MARC) Modified on 9/8/2014 (ems). (Entered: 09/05/2014) |
| 09/05/2014 | 6157 | NOTICE of Voluntary Dismissal by PLAINTIFF(S). Certificate of Service. (DAVIES, MARC) Modified on 9/8/2014 (ems). (Entered: 09/05/2014) |
| 09/05/2014 | 6158 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To JOSEPH ADDAI, ET AL. Certificate of Service. (STERN, JEFFREY) Modified on 9/8/2014 (ems). (Entered: 09/05/2014) |
| 09/05/2014 | 6159 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To National Football League and NFL Properties, LLC. Certificate of Service. (TOUPS, MITCHELL) Modified on 9/8/2014 (ems). (Entered: 09/05/2014) |
| 09/08/2014 | 6160 | ORDER - I DIRECT SPECIAL MASTER PERRY GOLKIN TO FILE WITH THE CLERK OF COURT IN MDL NO. 2323, ON OR BEFORE FRIDAY, SEPTEMBER |

| | | |
|---|---|---|
| | | 12, 2014, THE ACTUARIAL AND/OR ECONOMIC REPORTS PROVIDED BY THE NFL PARTIES AND CO-LEAD CLASS COUNSEL TO SPECIAL MASTER GOLKIN, AND THE SUPPLEMENTAL INFORMATION AND/OR TABLULATIONS TO THOSE REPORTS REQUESTED BY AND PROVIDED TO SPECIAL MASTER GOLKIN, AS REFERENCED IN THE NFL PARTIES' AND CO-LEAD CLASS COUNSEL'S RESPONSES TO BLOOMBERG L.P. AND ESPN, INC.'S AMENDED MOTION TO INTERVENE TO SEEK ACCESS TO DOCUMENTS AND INFORMATION (DOC. NOS. 6141, 6144).. SIGNED BY HONORABLE ANITA B. BRODY ON 9/8/2014. 9/8/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/08/2014) |
| 09/09/2014 | 6161 | NOTICE of Appearance by RICHARD L. COFFMAN on behalf of PLAINTIFF(S) with Certificate of Service(COFFMAN, RICHARD) (Entered: 09/09/2014) |
| 09/09/2014 | 6162 | NOTICE of Appearance by JASON C. WEBSTER on behalf of PLAINTIFF(S) with Certificate of Service(WEBSTER, JASON) (Entered: 09/09/2014) |
| 09/10/2014 | 6163 | MOTION for Leave to File *Reply In Support of Motion for Intervention* filed by RICHARD DENT, ROY GREEN, J.D. HILL, JAMES MCMAHON, JEREMY NEWBERRY, RON PRITCHARD, RON STONE, KEITH VAN HORNE, MARCELLUS WILEY.. (Attachments: # 1 Brief, # 2 Certificate of Service, # 3 Text of Proposed Order)(WHITWORTH, RAMSAY) (Entered: 09/10/2014) |
| 09/11/2014 | 6164 | First MOTION to Withdraw as Attorney *David A. Rosen* filed by PLAINTIFF(S).Certificate of Service.(ROSEN, DAVID) (Entered: 09/11/2014) |
| 09/11/2014 | 6165 | MOTION to Permit *the Taking of Mr. Seeger's Deposition* filed by PLAINTIFF(S).Affidavit, Certificate of Service. (Attachments: # 1 Affidavit of Thomas A. Demetrio, # 2 Certificate of Service, # 3 Text of Proposed Order)(GIBBS, WILLIAM) (Entered: 09/11/2014) |
| 09/11/2014 | 6166 | CERTIFIED COPY OF ORDER FROM USCA DATED 9/11/2014 THAT THE FOREGOING PETITION OF OBJECTING CLASS MEMBERS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f) FOR LEAVE TO APPEAL FROM THE DISTRICT COURT'S ORDER GRANTING SETTLEMENT CLASS CERTIFICATION IS DENIED. THE COURT WILL ISSUE AN OPINION IN THIS MATTER AT A LATER TIME. (APPLIES TO 14-CV-29) (ems) (Entered: 09/12/2014) |
| 09/12/2014 | 6167 | Report Of *Class Counsel submitted* by PERRY GOLKIN. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(GOLKIN, PERRY) (Entered: 09/12/2014) |
| 09/12/2014 | 6168 | Report Of *NFL Parties submitted* by PERRY GOLKIN. (Attachments: # 1 Exhibit A - Part 1, # 2 Exhibit A - Part 2, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F)(GOLKIN, PERRY) (Entered: 09/12/2014) |
| 09/13/2014 | 6169 | MOTION for Discovery filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL.Memorandum, Certificate of Service, Proposed Order, Exhibits. (Attachments: # 1 Memorandum of Law in Support of Motion for Limited Discovery, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Text of Proposed Order)(MOLO, STEVEN) Modified on 9/15/2014 (kk, ). (Entered: 09/13/2014) |
| 09/15/2014 | 6170 | MOTION to Withdraw as Attorney filed by PLAINTIFF(S).Certificate of Service, Proposed Order. (Attachments: # 1 Text of Proposed Order)(KIRTMAN, IAN) Modified on 9/17/2014 (kk, ). (Entered: 09/15/2014) |
| 09/18/2014 | 6171 | First MOTION to Withdraw *from Consideration Rose Klein and Marias Motion for Leave to Withdraw as counsel for Plaintiff Brian Holloway only* filed by |

| | | PLAINTIFF(S).Certificate of Service.(ROSEN, DAVID) (Entered: 09/18/2014) |
|---|---|---|
| 09/19/2014 | 6172 | Emergency MOTION to Modify *or Amend the July 7, 2014 Order* 6048 *Requiring Opt-Outs on or before October 14, 2014* filed by PLAINTIFF(S).Certificate of Service.(GIBBS, WILLIAM) (Entered: 09/19/2014) |
| 09/19/2014 | 6173 | Emergency MOTION for Joinder *in Emergency Motion to Modify or Amend the July 7, 2014 ORDER* 6048 *Requiring Opt-Outs On Or Before October 14, 2014* filed by PLAINTIFF(S).Certificate of Service.(MARKOWITZ, NEAL) (Entered: 09/19/2014) |
| 09/22/2014 | 6174 | NOTICE of Appearance by MICHAEL H. ROSENTHAL on behalf of PLAINTIFF(S) with Certificate of Service(ROSENTHAL, MICHAEL) (Entered: 09/22/2014) |
| 09/22/2014 | 6175 | Objections by PLAINTIFF(S) *ANDREW STEWART To Proposed Settlement*. (Attachments: # 1 Exhibit 1-4, # 2 Exhibit 5, # 3 Exhibit 6-7)(ROSENTHAL, MICHAEL) (Entered: 09/22/2014) |
| 09/23/2014 | 6176 | ORDER THAT A TELEPHONE CONFERENCE REGARDING TREGG DUERSON'S EMERGENCY MOTION TO MODIFY OR AMEND THE 7/7/2014 ORDER 6048 REQUIRING OPT-OUTS ON OR BEFORE 10/14/2014 (DOC. NO.6172) AND LEWIS BUSH'S EMERGENCY MOTION FOR JOINDER IN EMERGENCY MOTION TO MODIFY OR AMEND THE 7/7/2014 ORDER 6048 REQUIRING OPT-OUTS ON OR BEFORE 10/14/2014 (DOC. NO.6173) WILL BE HELD ON 10/7/2014, AT 10:30 A.M., ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 9/23/2014. 9/23/2014 ENTERED AND COPIES E-MAILED TO LIAISON.(APPLIES TO ALL ACTIONS)(kk, ) (Entered: 09/23/2014) |
| 09/23/2014 | 6177 | ORDER THAT ALL RESPONSES TO THE FOLLOWING MOTIONS SHALL BE FILED ON OR BEOFRE 10/3/2014: ECF NO. 6165. MOTION TO PERMIT THE TAKING OF MR. SEEGER'S DEPOSITION. ECF NO. 6169. MOTION FOR DISCOVERY. ECF NO. 6172. EMERGENCY MOTION TO MODIFY OR AMEND THE 7/7/2014 ORDER 6048 REQUIRING OPT-OUTS ON OR BEFORE 10/14/2014. ECF NO. 6173. EMERGENCY MOTION FOR JOINDER IN EMERGENCY MOTION TO MODIFY OR AMEND THE 7/7/2014 ORDER 6048 REQUIRING OPT-OUTS ON OR BEFORE 10/14/2014. SIGNED BY HONORABLE ANITA B. BRODY ON 9/23/2014. 9/23/2014 ENTERED AND COPIES E-MAILED TO LIAISON. (APPLIES TO ALL ACTIONS)(kk, ) (Entered: 09/23/2014) |
| 09/23/2014 | 6178 | Emergency MOTION to Modify *the July 7, 2014 Order (ECF No. 6048) by Continuing the Objection and Opt-Out Deadlines* filed by PLAINTIFF(S).Memorandum and Certificate of Service.(GIRARD, DANIEL) (Entered: 09/23/2014) |
| 09/26/2014 | 6179 | RESPONSE in Support re 6173 Emergency MOTION for Joinder *in Emergency Motion to Modify or Amend the July 7, 2014 ORDER* 6048 *Requiring Opt-Outs On Or Before October 14, 2014*, 6172 Emergency MOTION to Modify *or Amend the July 7, 2014 Order* 6048 *Requiring Opt-Outs on or before October 14, 2014* filed by PLAINTIFF(S). CERTIFICATE OF SERVICE. (SCHERMERHORN, ANDREW) Modified on 9/29/2014 (kk, ). (Entered: 09/26/2014) |
| 09/30/2014 | 6180 | MOTION for Leave to File *Amicus Curiae Brief* filed by BRAIN INJURY ASSOCIATION OF AMERICA.Memorandum, Declaration, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Declaration, # 3 Text of Proposed Order, # 4 Certificate of Service)(WRIGHT, CHRISTOPHER) (Entered: 09/30/2014) |
| 10/02/2014 | 6181 | NOTICE of Appearance by MICHAEL A. WARNER on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION with Certificate of Service(WARNER, MICHAEL) (Entered: 10/02/2014) |

| 10/02/2014 | 6182 | RESPONSE in Opposition re 6165 MOTION to Permit *the Taking of Mr. Seeger's Deposition* filed by PLAINTIFF(S). CERTIFICATE OF SERVICE (Attachments: # 1 Text of Proposed Order)(SEEGER, CHRISTOPHER) Modified on 10/6/2014 (kk, ). (Entered: 10/02/2014) |
| --- | --- | --- |
| 10/02/2014 | 6183 | RESPONSE in Opposition re 6169 MOTION for Discovery filed by PLAINTIFF(S).CERTIFICATE OF SERVICE (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(SEEGER, CHRISTOPHER) Modified on 10/6/2014 (kk, ). (Entered: 10/02/2014) |
| 10/02/2014 | 6184 | RESPONSE in Opposition re 6173 Emergency MOTION for Joinder *in Emergency Motion to Modify or Amend the July 7, 2014 ORDER 6084 Requiring Opt-Outs On Or Before October 14, 2014,* 6172 Emergency MOTION to Modify *or Amend the July 7, 2014 Order 6084 Requiring Opt-Outs on or before October 14, 2014 ,* 6179 RESPONSE in Support re 6173 Emergency MOTION for Joinder in Emergency Motion to Modify or Amend the July 7, 2014 ORDER 6084 Requiring Opt-Outs On Or Before October 14, 2014,* 6172 Emergency MOTION to Modify or Amend the July 7, 2014 Order 6084 Requiring Opt-Outs on or before October 14, 2014* filed by PLAINTIFF(S). CERTIFICATE OF SERVICE (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(SEEGER, CHRISTOPHER) Modified on 10/2/2014 (kk, ). Modified on 10/6/2014 (kk, ). (Entered: 10/02/2014) |
| 10/02/2014 | 6185 | RESPONSE in Opposition re 6169 MOTION for Discovery filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. CERTIFICATE OF SERVICE (Attachments: # 1 Declaration of Douglas M. Burns, # 2 Exhibit A, # 3 Text of Proposed Order)(KARP, BRAD) Modified on 10/6/2014 (kk, ). (Entered: 10/02/2014) |
| 10/02/2014 | 6186 | RESPONSE in Opposition re 6173 Emergency MOTION for Joinder *in Emergency Motion to Modify or Amend the July 7, 2014 ORDER 6048 Requiring Opt-Outs On Or Before October 14, 2014,* 6172 Emergency MOTION to Modify *or Amend the July 7, 2014 Order 6048 Requiring Opt-Outs on or before October 14, 2014* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.CERTIFICATE OF SERVICE (Attachments: # 1 Text of Proposed Order)(KARP, BRAD) Modified on 10/6/2014 (kk, ). (Entered: 10/02/2014) |
| 10/03/2014 | 6187 | REPLY to Response to Motion re 6173 Emergency MOTION for Joinder *in Emergency Motion to Modify or Amend the July 7, 2014 ORDER 6048 Requiring Opt-Outs On Or Before October 14, 2014,* 6172 Emergency MOTION to Modify *or Amend the July 7, 2014 Order 6048 Requiring Opt-Outs on or before October 14, 2014* filed by PLAINTIFF(S). CERTIFICATE OF SERVICE (Attachments: # 1 Exhibit A) (SCHERMERHORN, ANDREW) Modified on 10/6/2014 (kk, ). (Entered: 10/03/2014) |
| 10/03/2014 | 6188 | RESPONSE in Opposition re 6178 Emergency MOTION to Modify *the July 7, 2014 Order (ECF No. 6048) by Continuing the Objection and Opt-Out Deadlines* filed by PLAINTIFF(S). CERTIFICATE OF SERVICE (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(SEEGER, CHRISTOPHER) Modified on 10/6/2014 (kk, ). (Entered: 10/03/2014) |
| 10/03/2014 | 6189 | MOTION to Withdraw 6131 MOTION to Intervene ***Proposed Intervenors' Motion to Withdraw Their Motion to Intervene*** filed by RICHARD DENT, ROY GREEN, J.D. HILL, JAMES MCMAHON, JEREMY NEWBERRY, RON PRITCHARD, RON STONE, KEITH VAN HORNE, MARCELLUS WILEY.. (Attachments: # 1 Certificate of Service)(WHITWORTH, RAMSAY) (Entered: 10/03/2014) |
| 10/03/2014 | 6190 | RESPONSE in Opposition re 6178 Emergency MOTION to Modify *the July 7, 2014 Order (ECF No. 6048) by Continuing the Objection and Opt-Out Deadlines* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. CERTIFICATE |

| | | |
|---|---|---|
| | | OF SERVICE (Attachments: # 1 Text of Proposed Order)(KARP, BRAD) Modified on 10/6/2014 (kk, ). (Entered: 10/03/2014) |
| 10/06/2014 | 6191 | NOTICE - A NUMBER OF PARTIES HAVE ASKED TO PARTICIPATE IN THE TELEPHONE CONFERENCE SCHEDULED FOR 10/7/14 AT 10:30 A.M. (ECF NO. 6176). THIS IS NOT FEASIBLE. A RECORDING OF THE CONFERENCE WILL BE AVAILABLE ON ECF SHORTLY AFTER THE CONFERENCE. ANY COMMENTS REGARDING MATTERS DISCUSSED AT THE CONFERENCE MUST BE FILED ON ECF ON OR BEFORE 10/9/14. (ldb, ) (Entered: 10/06/2014) |
| 10/06/2014 | 6192 | MOTION for Leave to File *Reply to Responses 6184 , 6186 to Plaintiff's Emergency Motion to Modify or Amend the July 7, 2014 ORDER 6084 Requiring Opt-Outs On or Before October 14, 2014 6172* filed by PLAINTIFF(S).Certificate of Service.(GIBBS, WILLIAM) (Entered: 10/06/2014) |
| 10/06/2014 | 6193 | NOTICE of Appearance by ERIC R. NITZ on behalf of RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL with Certificate of Service(NITZ, ERIC) (Entered: 10/06/2014) |
| 10/06/2014 | 6194 | NOTICE of Appearance by STEVEN F. MOLO on behalf of RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL with Certificate of Service(MOLO, STEVEN) (Entered: 10/06/2014) |
| 10/06/2014 | 6195 | NOTICE of Appearance by THOMAS J. WIEGAND on behalf of RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL with Certificate of Service(WIEGAND, THOMAS) (Entered: 10/06/2014) |
| 10/06/2014 | 6196 | NOTICE of Appearance by KAITLIN R. O'DONNELL on behalf of RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL with Certificate of Service(O'DONNELL, KAITLIN) (Entered: 10/06/2014) |
| 10/06/2014 | 6197 | NOTICE of Appearance by MARTIN VINCENT TOTARO on behalf of RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL with Certificate of Service(TOTARO, MARTIN) (Entered: 10/06/2014) |
| 10/06/2014 | 6198 | NOTICE of Appearance by LINDA SUSAN MULLENIX on behalf of RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL with Certificate of Service(MULLENIX, LINDA) (Entered: 10/06/2014) |
| 10/06/2014 | 6199 | NOTICE of Appearance by WILLIAM T. HANGLEY on behalf of RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL with Certificate of Service(HANGLEY, WILLIAM) (Entered: 10/06/2014) |
| 10/06/2014 | 6200 | NOTICE of Appearance by MICHELE D. HANGLEY on behalf of RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL with Certificate of Service(HANGLEY, MICHELE) (Entered: 10/06/2014) |
| 10/06/2014 | 6201 | Objections by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL *to Class Action Settlement Agreement dated June 25, 2014 (Dkt. No. 6087).* (Attachments: # 1 |

| | | |
|---|---|---|
| | | Declaration of Eric R. Nitz, # 2 Exhibit 1 to 5, # 3 Exhibit 6 to 8, # 4 Exhibit 9 to 12, # 5 Exhibit 13 to 15, # 6 Exhibit 16 to 25, # 7 Exhibit 26 to 30, # 8 Exhibit 31 to 36, # 9 Exhibit 37 to 44, # 10 Exhibit 45 to 51, # 11 Exhibit 52 to 59, # 12 Exhibit 60 to 66, # 13 Exhibit 67 to 71, # 14 Exhibit 72 to 76, # 15 Exhibit 77 to 82, # 16 Declaration of Robert A. Stern, # 17 Declaration of Sean Morey, # 18 Declaration of Steven F. Molo, # 19 Declaration of Martin V. Totaro, # 20 Declaration of Thomas J. Wiegand, # 21 Declaration of Kaitlin R. O'Donnell, # 22 Declaration of William T. Hangley, # 23 Declaration of Michele D. Hangley, # 24 Declaration of Linda S. Mullenix)(MOLO, STEVEN) (Entered: 10/06/2014) |
| 10/07/2014 | 6202 | 🔊 Audio File 10/7/14, 10:30 A.M., regarding Telephone Conference held on 10/7/14, before HONORABLE ANITA B. BRODY (kah, ) (Entered: 10/07/2014) |
| 10/09/2014 | 6203 | ORDER THAT ANY SETTLEMENT CLASS MEMBERS WHO FILE TIMELY AND VALID OBJECTIONS TO THE SETTLEMENT MAY SUBMIT SUPPLEMENTAL BRIEFING ON SUCH MATTERS REQUESTED BY THE OBJECTORS AND AGREED TO BY THE COURT AT THE FAIRNESS HEARING IN RESPONSE TO THE ISSUES ADDRESSED IN PAPERS FILED IN SUPPORT OF FINAL APPROVAL OF THE SETTLEMENT, OR AT THE FAIRNESS HEARING, ON OR BEFORE DECEMBER 1, 2014. CLASS COUNSEL AND COUNSEL FOR THE NFL PARTIES MAY FILE RESPONSES THERETO ON OR BEFORE DECEMBER 11, 2014.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/9/14. 10/9/14 ENTERED AND COPIES EMAILED.(ldb, ) (Entered: 10/09/2014) |
| 10/09/2014 | 6204 | ORDER FOLLOWING ORAL ARGUMENT AT THE TELEPHONE CONFERENCE HELD ON 10/7/14, THE COURT HEREBY ORDERS THAT THE FOLLOWING MOTIONS ARE DENIED: 1. ECF NO. 6172 (DUERSON MOTION), 2. ECF NO. 6173 (BUSH MOTION), 3. ECF NO. 6178 (MYLES MOTION) AND 4. ECF NO. 6179 (KANSAS CITY CHIEFS MOTION). AN OPINION WILL FOLLOW.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/9/14.10/9/14 ENTERED AND COPIES E-MAILED.(ldb, ) (Entered: 10/09/2014) |
| 10/10/2014 | 6205 | NOTICE of Appearance by DANIEL S. CHAMBERLAIN on behalf of PLAINTIFF(S) with Certificate of Service(CHAMBERLAIN, DANIEL) (Entered: 10/10/2014) |
| 10/10/2014 | 6206 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Telephone Conference held on 10/7/2014 Court Reporter: ESR. (ems) (Entered: 10/10/2014) |
| 10/10/2014 | 6207 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Douglas Cosbie(KENNEY, JEANNINE) (Entered: 10/10/2014) |
| 10/10/2014 | 6208 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Short Form Complaint as to Douglas Cosbie* (KENNEY, JEANNINE) (Entered: 10/10/2014) |
| 10/10/2014 | 6209 | NOTICE of Appearance by MARC E. DAVIES on behalf of PLAINTIFF(S). Certificate of Service. (DAVIES, MARC) Modified on 10/14/2014 (ems). (Entered: 10/10/2014) |
| 10/10/2014 | 6210 | Objections by PLAINTIFF(S) *Susan Owens, Widow RC Owens*. Certificate of Service. (Attachments: # 1 Exhibit A)(DAVIES, MARC) Modified on 10/14/2014 (ems). (Entered: 10/10/2014) |
| 10/13/2014 | 6211 | MOTION for Leave to File *a Reply in Support of Motion for Leave To Conduct Limited Discovery (Dkt. No. 6169)* filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL.. Certificate of Service. (Attachments: # 1 Memorandum in Support of Motion To File a Reply in Support of Motion for Leave To Conduct Limited Discovery (Dkt. |

| | | No. 6169), # 2 Exhibit A, # 3 Text of Proposed Order)(MOLO, STEVEN) Modified on 10/14/2014 (ems). (Entered: 10/13/2014) |
|---|---|---|
| 10/14/2014 | 6212 | NOTICE of Appearance by JOHN J. PENTZ on behalf of PLAINTIFF(S) with Certificate of Service. (PENTZ, JOHN) Modified on 10/16/2014 (kk, ). (Entered: 10/14/2014) |
| 10/14/2014 | 6213 | Objections by PLAINTIFF(S) *to Proposed Settlement* with Certificate of Service. (Attachments: # 1 Declaration)(PENTZ, JOHN) Modified on 10/16/2014 (kk, ). (Entered: 10/14/2014) |
| 10/14/2014 | 6214 | MOTION for Leave to File *Amicus Curiae Memoraundum* filed by PUBLIC CITIZEN, INC..Memorandum. (Attachments: # 1 Memorandum)(MORRISON, ALAN) (Entered: 10/14/2014) |
| 10/14/2014 | 6215 | Joint MOTION to Substitute Attorney filed by PLAINTIFF(S) with Certificate of Service, Exhibits, Proposed Order. (Attachments: # 1 Exhibit Proposed Order) (MCGLAMRY, MICHAEL) Modified on 10/16/2014 (kk, ). (Entered: 10/14/2014) |
| 10/14/2014 | 6216 | MOTION to Withdraw as Attorney filed by PLAINTIFF(S) with Certificate of Service, Proposed Order.(MCGLAMRY, MICHAEL) Modified on 10/16/2014 (kk, ). (Entered: 10/14/2014) |
| 10/14/2014 | 6217 | NOTICE of Appearance by PARAG SHAH on behalf of PLAINTIFF(S) with Certificate of Service (Attachments: # 1 Declaration Declaration of Parag Shah) (SHAH, PARAG) (Entered: 10/14/2014) |
| 10/14/2014 | 6218 | NOTICE of Appearance by ANDREW SCHERMERHORN on behalf of PLAINTIFF(S) with Certificate of Service (Attachments: # 1 Declaration) (SCHERMERHORN, ANDREW) (Entered: 10/14/2014) |
| 10/14/2014 | 6219 | Objections by PLAINTIFF(S) *John Kinard, on behalf of Decedent Frank Kinard* with Certificate of Service. (SCHERMERHORN, ANDREW) Modified on 10/16/2014 (kk, ). (Entered: 10/14/2014) |
| 10/14/2014 | 6220 | Objections by PLAINTIFF(S) *Steven Collier to Proposed Class Settlement*. (SHAH, PARAG) (Entered: 10/14/2014) |
| 10/14/2014 | 6221 | Objections by PLAINTIFF(S) *Estate of Delano Roper Williams to Proposed Class Settlement*. (SHAH, PARAG) (Entered: 10/14/2014) |
| 10/14/2014 | 6222 | Objections by PLAINTIFF(S) *Estate of William Komlo to Proposed Class Settlement*. (SHAH, PARAG) (Entered: 10/14/2014) |
| 10/14/2014 | 6223 | Objections by PLAINTIFF(S) *Reginald Slack and Matthew Rice to Proposed Class Settlement*. (Attachments: # 1 Exhibit Declaration of Reginald Bernard Slack, # 2 Exhibit Retirement Plan)(SHAH, PARAG) (Entered: 10/14/2014) |
| 10/14/2014 | 6224 | NOTICE of Appearance by SCOTT DAVID HILLSTROM on behalf of PLAINTIFF(S) with Certificate of Service (Attachments: # 1 Declaration Declaration of Representation)(HILLSTROM, SCOTT) (Entered: 10/14/2014) |
| 10/14/2014 | 6225 | NOTICE of Appearance by MARC E. DAVIES on behalf of PLAINTIFF(S)with Certificate of Service. (DAVIES, MARC) Modified on 10/16/2014 (kk, ). (Entered: 10/14/2014) |
| 10/14/2014 | 6226 | Objections by PLAINTIFF(S) *Michael Barber, Myron Bell, Jeff Blake et al*with Certificate of Service. (DAVIES, MARC) Modified on 10/16/2014 (kk, ). (Entered: 10/14/2014) |

**-383-**

| 10/14/2014 | 6227 | NOTICE of Appearance by CHRISTOPHER KEVIN GILBERT on behalf of PLAINTIFF(S) with Certificate of Service(GILBERT, CHRISTOPHER) (Entered: 10/14/2014) |
| --- | --- | --- |
| 10/14/2014 | 6228 | NOTICE of Appearance by GARY P. LIGHTMAN on behalf of PLAINTIFF(S) (LIGHTMAN, GARY) (Entered: 10/14/2014) |
| 10/14/2014 | 6229 | NOTICE of Appearance by GLENN A. MANOCHI on behalf of PLAINTIFF(S) (MANOCHI, GLENN) (Entered: 10/14/2014) |
| 10/14/2014 | 6230 | Objections by PLAINTIFF(S) re 6201 Objections,,, *Objection of Craig Heimburger and Dawn Heimburger* with Certificate of Service. (Attachments: # 1 Declaration, # 2 Declaration, # 3 Declaration)(MANOCHI, GLENN) Modified on 10/16/2014 (kk, ). (Entered: 10/14/2014) |
| 10/14/2014 | 6231 | MOTION to Withdraw as Attorney filed by PLAINTIFF(S).Certificate of Service, Proposed Order.(FLEISHMAN, WENDY) Modified on 10/16/2014 (kk, ). (Entered: 10/14/2014) |
| 10/14/2014 | 6232 | Objections by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL *(Supplemental Objection to October 6, 2014 Objection (Dkt. No. 6201))* with Certificate of Service, Exhibit. (Attachments: # 1 Declaration of Sam Gandy, M.D., Ph.D.)(MOLO, STEVEN) Modified on 10/16/2014 (kk, ). (Entered: 10/14/2014) |
| 10/14/2014 | 6233 | Objections by PLAINTIFF(S) *Amended Objection to the June 25, 2014 Class Action Settlement Agreement by Ramon Armstrong, Nathaniel Newton, Jr., Larry Brown, Kenneth Davis, Michael McGruder, Clifton L. Odom, George Teague, Drew Coleman, Dennis DeVaughn, Alvin Harper, Ernest Jones, Michael Kiselak, Jeremy Loyd, Gary Wayne Lewis, Lorenzo Lynch, Hurles Scales, Gregory Evans, David Mims, Evan Oglesby, Phillip E. Epps, Charles L. Haley, Sr., Kevin Rey Smith, Darryl Gerard Lewis, Curtis Berdard Wilson, Kelvin Mack Edwards, Sr., Dwayne Levels, Solomon Page, and Tim McKyer.* (Attachments: # 1 Declaration of Drs. Brent E. Masel and Gregory J. O'Shanick in Support of BIAA's Motion for Leave to File Amicus Curiae Brief, # 2 Declaration of Richard L. Coffman, # 3 Declaration of Mitchell Toups, # 4 Declaration of Jason Webster)(COFFMAN, RICHARD) (Entered: 10/14/2014) |
| 10/14/2014 | 6234 | NOTICE of Appearance by DON K. LEDGARD on behalf of PLAINTIFF(S) with Certificate of Service (Attachments: # 1 Declaration)(LEDGARD, DON) (Entered: 10/14/2014) |
| 10/14/2014 | 6235 | Objections by PLAINTIFF(S) *PRESTON JONES AND KATHERINE JONES to Class Action Settlement Agreement dated June 25, 2014 (Dkt. No. 6087).* (LEDGARD, DON) (Entered: 10/14/2014) |
| 10/14/2014 | 6236 | MOTION for Joinder *of James Garth Jax to Join Armstrong Objection [Doc. 6233]* filed by PLAINTIFF(S).Declaration and Certificate of Service. (Attachments: # 1 Exhibit A - Armstrong Objection, # 2 Exhibit B - Jax Declaration, # 3 Declaration of Chris Gilbert, # 4 Text of Proposed Order Granting Joinder)(GILBERT, CHRISTOPHER) (Entered: 10/14/2014) |
| 10/14/2014 | 6237 | Objections by PLAINTIFF(S) re 6087 Notice of Settlement *Agreement.* (Attachments: # 1 Declaration of Representation, # 2 Declaration of Members)(LUBEL, LANCE) (Entered: 10/14/2014) |
| 10/14/2014 | 6238 | NOTICE of Appearance by LANCE H. LUBEL on behalf of PLAINTIFF(S) (LUBEL, LANCE) (Entered: 10/14/2014) |

| 10/14/2014 | 6239 | NOTICE of Appearance by WILLIAM T GIBBS on behalf of PLAINTIFF(S) with Certificate of Service (Attachments: # 1 Certificate of Service)(GIBBS, WILLIAM) (Entered: 10/14/2014) |
|---|---|---|
| 10/14/2014 | 6240 | NOTICE of Appearance by WILLIAM T GIBBS on behalf of PLAINTIFF(S) with Certificate of Service(GIBBS, WILLIAM) (Entered: 10/14/2014) |
| 10/14/2014 | 6241 | Objections by PLAINTIFF(S) *ESTATE OF DAVID DUERSON, ESTATE OF FORREST BLUE, THOMAS DELEONE, GERALD SULLIVAN, BARRY DARROW, RAY AUSTIN, BRUCE HERRON, JOHN CORNELL, TORI NOEL and MIKE ADAMLE*. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Certificate of Service)(GIBBS, WILLIAM) (Entered: 10/14/2014) |
| 10/14/2014 | 6242 | Objections by PLAINTIFF(S) *Aloyouis Chesley, Delbert Cowsette, Dustin Fox, James "Scottie" Graham, Frank Grant, Jimmie Jones, Herb Mul-key, Spain Musgrove, Lonnie Perrin, Kurt Pierce, Ricky Ray, Virgil Seay, Jesse Solomon, John Stufflebeem, Ted Vactor, and Michael Wilcher to Approval of Settlement*. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(BOSTWICK, DWIGHT) (Entered: 10/14/2014) |
| 10/14/2014 | 6243 | Objections by PLAINTIFF(S) *Ben Utecht*. (Attachments: # 1 Declaration Statement re Class Membership)(HILLSTROM, SCOTT) (Entered: 10/14/2014) |
| 10/15/2014 | 6244 | MOTION To Set a Scheduling Conference Before the November 19, 2014 Fairness Hearing filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL... (Attachments: # 1 Text of Proposed Order)(MOLO, STEVEN) (Entered: 10/15/2014) |
| 10/15/2014 | 6245 | ORDER THAT ECF NO. 6102 (DUERSON'S SECOND MOTION FOR DISSEMINATION OF DATA), ECF NO. 6165 (DUERSON'S MOTION TO DEPOSE CHRIS SEEGER), ECF NO. 6169 (MOREY PLAINTIFFS' MOTION FOR LIMITED DISCOVERY) ARE DENIED; IT IS FURTHER ORDERED THAT ECF NO. 6101 (ESPN AND BLOOMBERG'S MOTION FOR ACTUARIAL DATA) AND ECF NO. 6115 (24 CLASS PLAINTIFFS' MOTIONFOR ACTUARIAL DATA) IS DENIED AS MOOT.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/15/14.10/15/14 ENTERED AND COPIES E-MAILED.(ldb, ) (Entered: 10/15/2014) |
| 10/15/2014 | 6246 | ORDER THAT THE DENT PLAINTIFFS' MOTION TO WITHDRAW (ECF NO. 6189) THEIR MOTION TO INTERVENE (ECF NO. 6131) IS GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/15/14.10/15/14 ENTERED AND COPIES E-MAILED (ldb, ) (Entered: 10/15/2014) |
| 10/16/2014 | 6247 | NOTICE of Appearance by GEORGE WILLARD COCHRAN, JR on behalf of PLAINTIFF(S). CERTIFICATE OF SERVICE. (COCHRAN, GEORGE) Modified on 10/20/2014 (kk, ). (Entered: 10/16/2014) |
| 10/16/2014 | 6248 | Objections by PLAINTIFF(S) *Curtis Anderson*. CERTIFICATE OF SERVICE. (Attachments: # 1 Declaration)(COCHRAN, GEORGE) Modified on 10/20/2014 (kk, ). (Entered: 10/16/2014) |
| 10/16/2014 | 6249 | MOTION To Set a Scheduling Conference Before the November 19, 2014 Fairness Hearing filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Certificate of Service, # 2 Text of Proposed Order)(GIBBS, WILLIAM) (Entered: 10/16/2014) |
| 10/17/2014 | 6250 | RESPONSE in Opposition re 6180 MOTION for Leave to File *Amicus Curiae Brief* filed by PLAINTIFF(S). (Attachments: # 1 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 10/17/2014) |

| | | |
|---|---|---|
| 10/20/2014 | 6251 | NOTICE OF WITHDRAWAL OF PLAINTIFFS GEORGE ROGERS AND LORETTA ROGERS AS A CLASS ACTION MEMBER by PLAINTIFF(S) WITH CERTIFICATE OF SERVICE. (APPLIES TO C.A. 12-861) (kk, ) (Entered: 10/20/2014) |
| 10/21/2014 | 6252 | MOTION Production of Evidence filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL.. (Attachments: # 1 Text of Proposed Order)(MOLO, STEVEN) (Entered: 10/21/2014) |
| 10/21/2014 | 6253 | MOTION to Strike 6248 Objections filed by PLAINTIFF(S).Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Text of Proposed Order, # 6 Certificate of Service)(SEEGER, CHRISTOPHER) (Entered: 10/21/2014) |
| 10/22/2014 | 6254 | NOTICE of Appearance by JAMES T. CAPRETZ on behalf of PLAINTIFF(S) with Certificate of Service (Attachments: # 1 Declaration of Representation)(CAPRETZ, JAMES) (Entered: 10/22/2014) |
| 10/22/2014 | 6255 | RESPONSE to Motion re 6253 MOTION to Strike 6248 Objections *by Curtis Anderson* filed by PLAINTIFF(S). (COCHRAN, GEORGE) (Entered: 10/22/2014) |
| 10/23/2014 | 6256 | NOTICE by PLAINTIFF(S) re 6175 Objections *by Andrew Stewart of Intent to Appear at Fairness Hearing* (ROSENTHAL, MICHAEL) (Entered: 10/23/2014) |
| 10/24/2014 | 6257 | MOTION for Order *Prohibiting Improper Communications with the Class by MoloLamken LLP* filed by PLAINTIFF(S).Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 10/24/2014) |
| 10/27/2014 | 6258 | ORDER that ALL RESPONSES TO CO-LEAD CLASS COUNSEL'S MOTION FOR AN ORDER PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS (ECF NO. 6257) SHALL BE FILED ON OR BEFORE OCTOBER 31, 2014.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/27/2014. 10/27/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/27/2014) |
| 10/27/2014 | 6259 | MOTION for Leave to File *Reply Memorandum of Law* filed by BRAIN INJURY ASSOCIATION OF AMERICA.Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order, # 3 Certificate of Service)(WRIGHT, CHRISTOPHER) (Entered: 10/27/2014) |
| 10/27/2014 | 6260 | MOTION for Leave to File *Reply Memorandum of Law in Further Support of Motion to Strike the Late-Filed Objection of Curtis L. Anderson* filed by PLAINTIFF(S).Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 10/27/2014) |
| 10/27/2014 | 6261 | NOTICE by PLAINTIFF(S) *of intent to appear at fairness hearing* (PENTZ, JOHN) (Entered: 10/27/2014) |
| 10/27/2014 | 6262 | AMENDED DOCUMENT by PLAINTIFF(S). Amendment to 6248 Objections *Anderson signature page*. (COCHRAN, GEORGE) (Entered: 10/27/2014) |
| 10/28/2014 | 6263 | NOTICE by PLAINTIFF(S) *of Intention to Appear at Fairness Hearing and Joinder of Motion to Schedule Conference* (BOSTWICK, DWIGHT) (Entered: 10/28/2014) |
| 10/28/2014 | 6264 | NOTICE by PLAINTIFF(S) *Of Intent to Appear at Fairness Hearing* (COCHRAN, GEORGE) (Entered: 10/28/2014) |

**-386-**

| 10/29/2014 | 6265 | NOTICE by PLAINTIFF(S) *of Intent to Appear at Fairness Hearing* (Attachments: # 1 Certificate of Service)(GIBBS, WILLIAM) (Entered: 10/29/2014) |
| 10/29/2014 | 6266 | NOTICE by PLAINTIFF(S) *of Intent to Appear at Fairness Hearing* (Attachments: # 1 Certificate of Service)(GIBBS, WILLIAM) (Entered: 10/29/2014) |
| 10/29/2014 | 6267 | NOTICE by PLAINTIFF(S) *TREGG DUERSON of Intent to Appear at Fairness Hearing* (Attachments: # 1 Certificate of Service)(GIBBS, WILLIAM) (Entered: 10/29/2014) |
| 10/29/2014 | 6268 | NOTICE by PLAINTIFF(S) *of Intention to Speak at Fairness Hearing* (LUBEL, LANCE) (Entered: 10/29/2014) |
| 10/29/2014 | 6269 | NOTICE by PLAINTIFF(S) *Ben Utecht* (HILLSTROM, SCOTT) (Entered: 10/29/2014) |
| 10/29/2014 | 6270 | NOTICE by PLAINTIFF(S) *Ben Utecht* (HILLSTROM, SCOTT) (Entered: 10/29/2014) |
| 10/29/2014 | 6271 | MOTION for Hearing *Participation (Nov 19, 2014)* filed by PUBLIC CITIZEN, INC..Motion.(MORRISON, ALAN) Modified on 11/3/2014 (kk, ). (Entered: 10/29/2014) |
| 10/30/2014 | 6272 | NOTICE by PLAINTIFF(S) *of Intent to Appear at Fairness Hearing* (SHAH, PARAG) (Entered: 10/30/2014) |
| 10/30/2014 | 6273 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Anthony and Jamie Yary* (MITNICK, CRAIG) (Entered: 10/30/2014) |
| 10/30/2014 | 6274 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Billy Ray Barnes* (MITNICK, CRAIG) (Entered: 10/30/2014) |
| 10/30/2014 | 6275 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Curtis and Shannon Nelson* (MITNICK, CRAIG) (Entered: 10/30/2014) |
| 10/30/2014 | 6276 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Dan and Janet Larose* (MITNICK, CRAIG) (Entered: 10/30/2014) |
| 10/30/2014 | 6277 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Donald and Karen Jones* (MITNICK, CRAIG) (Entered: 10/30/2014) |
| 10/30/2014 | 6278 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Jon and Jane Arnett* (MITNICK, CRAIG) (Entered: 10/30/2014) |
| 10/30/2014 | 6279 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Marvin Cobb* (MITNICK, CRAIG) (Entered: 10/30/2014) |
| 10/30/2014 | 6280 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Paul Palmer* (MITNICK, CRAIG) (Entered: 10/30/2014) |
| 10/30/2014 | 6281 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Thomas L. Rentzel* (MITNICK, CRAIG) (Entered: 10/30/2014) |
| 10/30/2014 | 6282 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Walker Lee Ashley, Jr.* (MITNICK, CRAIG) (Entered: 10/30/2014) |
| 10/30/2014 | 6283 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Walter and Jacqueline Burkett* (MITNICK, CRAIG) (Entered: 10/30/2014) |
| 10/30/2014 | 6284 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Woodrow and Cheryl Campbell* (MITNICK, CRAIG) (Entered: 10/30/2014) |

| 10/30/2014 | 6285 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Anthony and Jamie Yary* (LANGFITT, DAVID) (Entered: 10/30/2014) |
| 10/30/2014 | 6286 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Billy Ray Barnes* (LANGFITT, DAVID) (Entered: 10/30/2014) |
| 10/30/2014 | 6287 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Curtis and Shannon Nelson* (LANGFITT, DAVID) (Entered: 10/30/2014) |
| 10/30/2014 | 6288 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Dan and Janet Larose* (LANGFITT, DAVID) (Entered: 10/30/2014) |
| 10/30/2014 | 6289 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Donald and Karen Jones* (LANGFITT, DAVID) (Entered: 10/30/2014) |
| 10/30/2014 | 6290 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Jay and Natalie Tant* (LANGFITT, DAVID) (Entered: 10/30/2014) |
| 10/30/2014 | 6291 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Jon and Jane Arnett* (LANGFITT, DAVID) (Entered: 10/30/2014) |
| 10/30/2014 | 6292 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Marvin Cobb* (LANGFITT, DAVID) (Entered: 10/30/2014) |
| 10/30/2014 | 6293 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Paul Palmer* (LANGFITT, DAVID) (Entered: 10/30/2014) |
| 10/30/2014 | 6294 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Thomas L. Rentzel* (LANGFITT, DAVID) (Entered: 10/30/2014) |
| 10/30/2014 | 6295 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Thomas and Jean Baugh* (LANGFITT, DAVID) (Entered: 10/30/2014) |
| 10/30/2014 | 6296 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Walker Lee Ashley, Jr.* (LANGFITT, DAVID) (Entered: 10/30/2014) |
| 10/30/2014 | 6297 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Walter and Jacqueline Burkett* (LANGFITT, DAVID) (Entered: 10/30/2014) |
| 10/30/2014 | 6298 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Woodrow and Cheryl Campbell* (LANGFITT, DAVID) (Entered: 10/30/2014) |
| 10/30/2014 | 6299 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Anthony and Jamie Yary* (LEH, MICHAEL) (Entered: 10/30/2014) |
| 10/30/2014 | 6300 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Billy Ray Barnes* (LEH, MICHAEL) (Entered: 10/30/2014) |
| 10/30/2014 | 6301 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Curtis and Shannon Nelson* (LEH, MICHAEL) (Entered: 10/30/2014) |
| 10/30/2014 | 6302 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Dan and Janet Larose* (LEH, MICHAEL) (Entered: 10/30/2014) |
| 10/30/2014 | 6303 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Donald and Karen Jones* (LEH, MICHAEL) (Entered: 10/30/2014) |
| 10/30/2014 | 6304 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Jay and Natalie Tant* (LEH, MICHAEL) (Entered: 10/30/2014) |

| 10/30/2014 | 6305 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Jon and Jane Arnett* (LEH, MICHAEL) (Entered: 10/30/2014) |
| 10/30/2014 | 6306 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Marvin Cobb* (LEH, MICHAEL) (Entered: 10/30/2014) |
| 10/30/2014 | 6307 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Paul Palmer* (LEH, MICHAEL) (Entered: 10/30/2014) |
| 10/30/2014 | 6308 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Thomas L. Rentzel* (LEH, MICHAEL) (Entered: 10/30/2014) |
| 10/30/2014 | 6309 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Thomas and Jean Baugh* (LEH, MICHAEL) (Entered: 10/30/2014) |
| 10/30/2014 | 6310 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Walker Lee Ashley, Jr.* (LEH, MICHAEL) (Entered: 10/30/2014) |
| 10/30/2014 | 6311 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Walter and Jacqueline Burkett* (LEH, MICHAEL) (Entered: 10/30/2014) |
| 10/30/2014 | 6312 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Woodrow and Cheryl Campbell* (LEH, MICHAEL) (Entered: 10/30/2014) |
| 10/30/2014 | 6313 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Anthony and Jamie Yary* (LOCKS, GENE) (Entered: 10/30/2014) |
| 10/30/2014 | 6314 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Billy Ray Barnes* (LOCKS, GENE) (Entered: 10/30/2014) |
| 10/30/2014 | 6315 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Curtis and Shannon Nelson* (LOCKS, GENE) (Entered: 10/30/2014) |
| 10/30/2014 | 6316 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Dan and Janet Larose* (LOCKS, GENE) (Entered: 10/30/2014) |
| 10/30/2014 | 6317 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Donald and Karen Jones* (LOCKS, GENE) (Entered: 10/30/2014) |
| 10/30/2014 | 6318 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Jay and Natalie Tant* (LOCKS, GENE) (Entered: 10/30/2014) |
| 10/30/2014 | 6319 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Jon and Jane Arnett* (LOCKS, GENE) (Entered: 10/30/2014) |
| 10/30/2014 | 6320 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Marvin Cobb* (LOCKS, GENE) (Entered: 10/30/2014) |
| 10/30/2014 | 6321 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Paul Palmer* (LOCKS, GENE) (Entered: 10/30/2014) |
| 10/30/2014 | 6322 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Thomas L. Rentzel* (LOCKS, GENE) (Entered: 10/30/2014) |
| 10/30/2014 | 6323 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Thomas and Jean Baugh* (LOCKS, GENE) (Entered: 10/30/2014) |
| 10/30/2014 | 6324 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Walker Lee Ashley, Jr.* (LOCKS, GENE) (Entered: 10/30/2014) |

| 10/30/2014 | 6325 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Walter and Jacqueline Burkett* (LOCKS, GENE) (Entered: 10/30/2014) |
| 10/30/2014 | 6326 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance on behalf of Woodrow and Cheryl Campbell* (LOCKS, GENE) (Entered: 10/30/2014) |
| 10/30/2014 | 6327 | MOTION to Withdraw as Attorney *for Plaintiff Ben Utecht* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Text of Proposed Order) (WEISS, SOL) (Entered: 10/30/2014) |
| 10/30/2014 | 6328 | RESPONSE in Opposition re 6257 MOTION for Order *Prohibiting Improper Communications with the Class by MoloLamken LLP* filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL. (Attachments: # 1 Text of Proposed Order)(MOLO, STEVEN) (Entered: 10/30/2014) |
| 10/30/2014 | 6329 | NOTICE by PLAINTIFF(S) re 6230 Objections, *Intention to Appear and Speak at Fairness Hearing* (MANOCHI, GLENN) (Entered: 10/30/2014) |
| 10/31/2014 | 6330 | RESPONSE to Motion re 6214 MOTION for Leave to File *Amicus Curiae Memoraundum*, 6271 MOTION for Hearing *Participation (Nov 19, 2014)* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 10/31/2014) |
| 10/31/2014 | 6331 | MOTION for Leave to File *a Reply in Further Support of Motion for an Order Prohibiting Improper Communications with the Class by MoloLamken LLP* filed by PLAINTIFF(S).Brief, Certificate of Service. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 10/31/2014) |
| 10/31/2014 | 6332 | RESPONSE in Opposition re 6252 MOTION Production of Evidence , 6249 MOTION To Set a Scheduling Conference Before the November 19, 2014 Fairness Hearing , 6244 MOTION To Set a Scheduling Conference Before the November 19, 2014 Fairness Hearing filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Text of Proposed Order)(KARP, BRAD) (Entered: 10/31/2014) |
| 10/31/2014 | 6333 | RESPONSE in Opposition re 6252 MOTION Production of Evidence , 6249 MOTION To Set a Scheduling Conference Before the November 19, 2014 Fairness Hearing , 6244 MOTION To Set a Scheduling Conference Before the November 19, 2014 Fairness Hearing filed by PLAINTIFF(S). (Attachments: # 1 Text of Proposed Order) (SEEGER, CHRISTOPHER) (Entered: 10/31/2014) |
| 10/31/2014 | 6334 | ORDER thtat CO-LEAD CLASS COUNSEL'S MOTION FOR AN ORDER PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS (ECF NO. 6257) IS DENIED AS MOOT.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/31/2014.10/31/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/31/2014) |
| 10/31/2014 | 6335 | NOTICE by PLAINTIFF(S) *John Kinard of Intent to Appear at Fairness Hearing* (ANDERSON, PAUL) (Entered: 10/31/2014) |
| 10/31/2014 | 6336 | NOTICE by PLAINTIFF(S) *John Kinard of Intent to Appear at Fairness Hearing* (MCCLAIN, KENNETH) (Entered: 10/31/2014) |
| 10/31/2014 | 6337 | NOTICE by PLAINTIFF(S) *John Kinard of Intent to Appear at Fairness Hearing* (SCHERMERHORN, ANDREW) (Entered: 10/31/2014) |
| 10/31/2014 | 6338 | MOTION for Hearing *Reply to Objection* filed by PUBLIC CITIZEN, INC..Reply. (MORRISON, ALAN) (Entered: 10/31/2014) |

| 11/03/2014 | 6339 | NOTICE by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL *that Steven F. Molo, Alan J. Faneca, Sean J. Morey, Dr. Robert A. Stern, Dr. Samuel E. Gandy, and Rebecca Carpenter intend to appear at the Fairness Hearing.* Certificate of Service. (MOLO, STEVEN) Modified on 11/4/2014 (ems). (Entered: 11/03/2014) |
|---|---|---|
| 11/03/2014 | 6340 | Report Of *Opt Outs Submitted* by CLAIMS ADMINISTRATOR. (Attachments: # 1 Exhibit 1 Timely Opt Out Requests, # 2 Exhibit 2 Untimely Opt Out Requests) Certificate of Service. (BROWN, ORRAN) Modified on 11/4/2014 (ems). (Entered: 11/03/2014) |
| 11/03/2014 | 6341 | NOTICE by PLAINTIFF(S) *of Intent to Appear by Alicia Duerson* (Attachments: # 1 Certificate of Service)(GIBBS, WILLIAM) (Entered: 11/03/2014) |
| 11/03/2014 | 6342 | NOTICE by PLAINTIFF(S) *Bridges, Buchanan, Ranel-El, & Wesley of Counsel's Intent to Appear and Be Heard.* Certificate of Service. (ABOOD, NORMAN) Modified on 11/4/2014 (ems). (Entered: 11/03/2014) |
| 11/03/2014 | 6343 | RESPONSE in Opposition re 6327 MOTION to Withdraw as Attorney *for Plaintiff Ben Utecht Opposition* filed by PLAINTIFF(S). Certificate of Service. (Attachments: # 1 Exhibit Utecht Retainer Agreement with Anapol Schwartz, # 2 Exhibit Utecht Objections to the Settlement Agreement Filed on 10-14-14, # 3 Declaration Declaration of Ben Utecht, # 4 Declaration Declaration of Scott Hillstrom, # 5 Text of Proposed Order Proposed Order)(HILLSTROM, SCOTT) Modified on 11/4/2014 (ems). (Entered: 11/03/2014) |
| 11/03/2014 | 6345 | Letter from Eric Williams to the Honorable Judge Anita Brody dated 7/3/2014 re: Certain Facts. (ems) (Entered: 11/04/2014) |
| 11/03/2014 | 6346 | Letter from Daniel J. Grimm to the Honorable Judge Anita Brody dated 8/3/2014 re: Opt Out. (ems) (Entered: 11/04/2014) |
| 11/03/2014 | 6347 | Letter from Judson Flint to the Honorable Judge Anita Brody dated 8/21/2014 re: Certain Facts. (ems) (Entered: 11/04/2014) |
| 11/03/2014 | 6348 | Letter from William Duff to the Honorable Judge Anita Brody dated 9/3/2014 re: Certain Facts. (ems) (Entered: 11/04/2014) |
| 11/03/2014 | 6353 | Letter from Mitchell A. Toups to the Honorable Judge Anita Brody dated 9/3/2014 re: Objection to 6/25/2014 Class Action Settlement by Ramon Armstrong, Nathaniel Newton, Jr., Larry Brown, Kenneth Davis, Michael McGruder, Clifton L. Odom and George Teague. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6354 | Letter from Michael L. Davis to the Honorable Judge Anita Brody dated 9/10/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6355 | Letter from Sally Miketa Stern to the Honorable Judge Anita Brody dated 9/21/2014 re: Certain Facts. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6356 | Letter from Mrs. Daniel Brabham to the Honorable Judge Anita Brody dated 9/25/2014 re: Certain Facts. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6357 | Letter from James Brian Duncan to the Honorable Judge Anita Brody dated 10/3/2014 re: Certain Facts. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6358 | Letter from John and Beth Sawyer to the Honorable Judge Anita Brody dated 10/3/2014 re: Certain Facts. (ems) (Entered: 11/05/2014) |

| 11/03/2014 | 6359 | Letter from Debra Pyka to the Honorable Judge Anita Brody dated 10/7/2014 re: Certain Facts. (ems) (Entered: 11/05/2014) |
|---|---|---|
| 11/03/2014 | 6360 | Letter from Ted Petersen to the Honorable Judge Anita Brody dated 10/6/2014 re: Certain Facts. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6361 | Letter from Jean Wilson (Gerald R.) to the Honorable Judge Anita Brody dated 10/7/2014 re: Certain Facts. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6362 | Letter from Louise A. O'Hanley to the Honorable Judge Anita Brody dated 10/7/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6363 | Letter from Claudie D. Minor, Jr. to the Honorable Judge Anita Brody dated 10/7/2014 re: Certain Facts. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6364 | Letters from Scott Gilchrist (Son of Carlton Chester Gilchrist) to the Honorable Judge Anita Brody dated 10/9/2014 and 10/14/2014 re: Certain Facts. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6365 | Letter from Harry Hamilton to the Honorable Judge Anita Brody dated 10/14/2014 re: Certain Facts. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6366 | Letter from Mary M. Dutton Hughes to the Honorable Judge Anita Brody dated 10/10/2014 re: Certain Facts. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6367 | Letter from Ruth N. Daniel (On Behalf of William P. Daniel) to the Honorable Judge Anita Brody dated 10/7/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6368 | Letter from John Lohmeyer to the Honorable Judge Anita Brody dated 10/10/2014 re: Opt Out. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6369 | Letter from Larry Edward Barnes to the Honorable Judge Anita Brody dated 10/11/2014 re: Certain Facts. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6371 | Letter from Eleanor Perfetto to the Honorable Judge Anita Brody dated 10/13/2014 re: Fairness Hearing. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6372 | Letter from Philip J. Villapiano to the Honorable Judge Anita Brody dated 10/13/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6373 | Letter from Dr. Mary E. Hawkins (Spouse of Mr. Ross C. Hawkins) to the Honorable Judge Anita Brody dated 10/14/2014 re: Certain Facts. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6374 | Letter from Cameron Worrell to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6375 | Letter from Steven R. Jordan to the Honorable Judge Anita Brody dated 10/13/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6376 | Letter from Evan J. Moore to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6377 | Letter from Justin Green to the Honorable Judge Anita Brody re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6378 | Letter from Jonathan McGraw to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6379 | Letter from Eric Barton, Coy Wire, Ben Lerer, and Scott Fujita to the Honorable Judge Anita Brody dated 10/13/2014 and 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |

| | | |
|---|---|---|
| 11/03/2014 | 6380 | Letter from John Bernard Erickson to the Honorable Judge Anita Brody dated 10/10/2014 re: Certain Facts. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6381 | Letter from Frederick David Quillan to the Honorable Judge Anita Brody dated 10/11/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6382 | Letter from Mindy W. Cleeland to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6383 | Letter from Leonard B. Davis to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6384 | Letter from Jeffrey Saturday to the Honorable Judge Anita Brody dated 10/13/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6385 | Letter from Stephen Trejo to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6386 | Letter from Lance Zeno to the Honorable Judge Anita Brody dated 10/10/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6387 | Letter from Troy Evans to the Honorable Judge Anita Brody dated 10/13/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6388 | Letter from James Mayberry to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6389 | Letter from Travis Minor to the Honorable Judge Anita Brody dated 10/12/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6390 | Letter from Karen LaPlatney (Daughter of Joseph P. O'Malley) to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6391 | Letter from Chad Levitt to the Honorable Judge Anita Brody dated 10/13/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6392 | Letter from Alexander Stewart to the Honorable Judge Anita Brody dated 10/3/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6393 | Letter from Chinedum K. Ndukwe to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6394 | Letter from Chris Hetherington to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6395 | Letter from Duane "Troy" Johnson filed by Richard S. Lewis and Stephanie M. Berger to the Honorable Judge Anita Brody dated 10/16/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6396 | Letter from Kirk C. Jones to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6397 | Letter from Willie T. Taylor to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6398 | Letter from David Thomas to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6399 | Letter from Eugene Moore to the Honorable Judge Anita Brody dated 10/13/2014 re: Objection. (ems) (Entered: 11/05/2014) |

**-393-**

| 11/03/2014 | 6400 | Letter from James D. McFarland to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
|---|---|---|
| 11/03/2014 | 6401 | Letter from Eric Steinbach to the Honorable Judge Anita Brody re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6402 | Letter from Brett Romberg to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6403 | Letter from Jay Taylor to the Honorable Judge Anita Brody dated 10/10/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6404 | Letter from DaShon Polk to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6405 | Letter from Carl F. Mauck to the Honorable Judge Anita Brody dated 10/15/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6406 | Letter from Ryan Neufeld to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6407 | Letter from Lanell T. Culver, Jr. to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6408 | Letter from Camerita Meinert (Behalf of Estate of Dale Meinert) to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6409 | Letter from Darren Russell Carrington to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6410 | Letter from Ikechuku Ndukwe to the Honorable Judge Anita Brody dated 10/14/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6411 | Letter from Jeff Charleston to the Honorable Judge Anita Brody dated 10/13/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/03/2014 | 6412 | Letter from Clyde L. Werner to the Honorable Judge Anita Brody dated 10/17/2014 re: Objection. (ems) (Entered: 11/05/2014) |
| 11/04/2014 | 6344 | NOTICE that IN LIGHT OF THE POTENTIAL FOR DUPLICATIVE ARGUMENT BY OBJECTORS, AND IN ORDER TO PROMOTE AN ORDERLY AND EFFICIENT CONSIDERATION OF THE ISSUE, I HAVE ASKED STEVEN MOLO OF MOLOLAMKEN, LLP AND WILLIAM HANGLEY OF HANGLEY, ARONCHICK, SEGAL, PUDLIN & SCHILLER TO COORDINATE THE ARGUMENTS OF THE OBJECTORS WHO WISH TO BE HEARD ON NOVEMBER 19, 2014 FAIRNESS HEARING. ANYONE, HOWEVER, WHO HAS GIVEN TIMELY NOTICE OF INTENT TO APPEAR AT THE FAIRNESS HEARING AND STILL WISHES TO SPEAK WILL HAVE THE OPPORTUNITY TO BE HEARD.11/4/2014 SIGNED BY HONORABLE ANITA B. BRODY ON 11/4/2014.11/4/2014 ENTERED AND COPIES SENT VIA ECF.(mo, ) (Entered: 11/04/2014) |
| 11/04/2014 | 6349 | NOTICE by PLAINTIFF(S) *Withdrawal of Appearance on behalf of Reginald Doster* (MATHENY, MATTHEW) (Entered: 11/04/2014) |
| 11/04/2014 | 6350 | NOTICE by PLAINTIFF(S) *Withdrawal of Appearance on behalf of Pettis Norman* (MATHENY, MATTHEW) (Entered: 11/04/2014) |
| 11/04/2014 | 6351 | NOTICE by PLAINTIFF(S) *Withdrawal of Appearance on behalf of Lucious Smith* (MATHENY, MATTHEW) (Entered: 11/04/2014) |

**-394-**

| 11/04/2014 | 6352 | NOTICE by PLAINTIFF(S) *Withdrawal of Appearance on behalf on Corey Bradford* (MATHENY, MATTHEW) (Entered: 11/04/2014) |
|---|---|---|
| 11/05/2014 | 6370 | NOTICE by PLAINTIFF(S) *Intent to Appear At Fairness Hearing* (DAVIES, MARC) (Entered: 11/05/2014) |
| 11/07/2014 | 6413 | MOTION to Strike 6370 Notice (Other) filed by PLAINTIFF(S).Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order) (SEEGER, CHRISTOPHER) (Entered: 11/07/2014) |
| 11/07/2014 | 6414 | Letter from Douglas Cosbie to the Honorable Judge Anita Brody dated 10/24/2014 re: Objection. (ems) (Entered: 11/07/2014) |
| 11/10/2014 | 6415 | ORDER that PUBLIC CITIZEN, INC.'S MOTION FOR LEAVE TO PARTICIPATE AS AMICUS CURIAE AT THE NOVEMBER 19, 2014 FAIRNESS HEARING IS (ECF NO. 6271) IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/10/2014. 11/10/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/10/2014) |
| 11/10/2014 | 6416 | ORDER that ALL RESPONSES TO CO-LEAD CLASS COUNSEL'S MOTION TO STRIKE THE BARBER OBJECTORS' LATE-FILED NOTICE OF INTENT TO APPEAR (ECF NO. 6413) SHALL BE FILED ON OR BEFORE NOVEMBER 12, 2014.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/10/2014. 11/10/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/10/2014) |
| 11/10/2014 | | Set/Reset Deadlines as to 6413 MOTION to Strike 6370 Notice (Other) . RESPONSES DUE BY 11/12/2014. (mo, ) (Entered: 11/10/2014) |
| 11/10/2014 | 6417 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S) (Attachments: # 1 Certificate of Service)(ROSEN, DAVID) (Entered: 11/10/2014) |
| 11/11/2014 | 6418 | NOTICE of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S) (LUCKASEVIC, JASON) (Entered: 11/11/2014) |
| 11/11/2014 | 6419 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S) (Attachments: # 1 Certificate of Service)(ROSEN, DAVID) (Entered: 11/11/2014) |
| 11/11/2014 | 6420 | Objections by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL *(Supplemental Objection)*. Certificate of Service. (MOLO, STEVEN) Modified on 11/12/2014 (ems). (Entered: 11/11/2014) |
| 11/12/2014 | 6421 | RESPONSE in Opposition re 6413 MOTION to Strike 6370 Notice (Other) filed by PLAINTIFF(S). (Attachments: # 1 Memorandum)(DAVIES, MARC) (Entered: 11/12/2014) |
| 11/12/2014 | 6422 | Memorandum of Law in Support of Final Approval of the Class Action Settlement Agreement and in Response to Objections by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Declaration of Douglas M. Burns, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Exhibit 27, # 29 Exhibit 28, # 30 Exhibit 29, # 31 Exhibit 30, # 32 Declaration of Dennis L. Curran, # 33 Declaration of T. David Gardi, # 34 Declaration of Scott Richard Millis, PhD, # 35 |

| | | |
|---|---|---|
| | | Declaration of Julie Ann Schneider, M.D., # 36 Declaration of Kristine Yaffe, M.D.) (KARP, BRAD) (Entered: 11/12/2014) |
| 11/12/2014 | 6423 | MOTION for Order *Final Order and Judgment* filed by PLAINTIFF(S).Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Compendium of Exhibits, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, # 15 Exhibit 13, # 16 Exhibit 14, # 17 Exhibit 15, # 18 Exhibit 16, # 19 Exhibit 17, # 20 Exhibit 18, # 21 Exhibit 19, # 22 Exhibit 20, # 23 Exhibit 21, # 24 Exhibit 22, # 25 Exhibit 23, # 26 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 11/12/2014) |
| 11/13/2014 | 6424 | Report Of *Second Opt Out Report Submitted* by CLAIMS ADMINISTRATOR. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(BROWN, ORRAN) (Entered: 11/13/2014) |
| 11/14/2014 | 6425 | Statement *Regarding Fairness Hearing* by SEAN MOREY. (MOLO, STEVEN) (Entered: 11/14/2014) |
| 11/17/2014 | 6426 | ORDER that. CO-LEAD CLASS COUNSEL'S MOTION TO STRIKE THE BARBER OBJECTORS' LATE-FILED NOTICE OF INTENT TO APPEAR (ECF NO. 6413) IS GRANTED..... CO-LEAD CLASSS COUNSEL'S MOTION TO STRIKE THE LATE-FILED OBJECTION OF CURTIS L. ANDERSON (ECF NO. 6253) IS GRANTED..... SIGNED BY HONORABLE ANITA B. BRODY ON 11/17/2014.11/17/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/17/2014) |
| 11/17/2014 | 6427 | MOTION to File Amicus Brief filed by PARENTS CONCUSSION COALITION.Motion, Memorandum, Proposed Order, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order, # 3 Certificate of Service)(KUBLANOVSKY, EUGENE) (Entered: 11/17/2014) |
| 11/17/2014 | 6428 | NOTICE of Hearing: THE FOLLOWING COUNSEL HAVE FILED TIMELY NOTICE AND WILL BE PERMITTED TO SPEAK AT THE NOVEMBER 19, FAIRNESS HEARING:... THE FOLLOWING RETIRED NFL PLAYERS, REPRESENTATIVE CLAIMANTS, AND DERIVATIVE CLAIMANTS HAVE FILED TIMELY NOTICE AND WILL BE PERMITTED TO SPEAK AT THE NOVEMBER 19 FAIRNESS HEARING:... MR. SEEGER AND MR. KARP WILL ALSO HAVE 45 MINUTES TO RESPOND TO THE POSITIONS OF THE OBJECTORS.SIGNED BY THE HONORABLE ANITA B. BRODY ON 11/17/201411/17/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/17/2014) |
| 11/17/2014 | 6429 | MOTION to Continue *and Objections to the November 19, 2014 Fairness Hearing* filed by PLAINTIFF(S).Certificate of Service.(LUBEL, LANCE) (Entered: 11/17/2014) |
| 11/17/2014 | 6430 | MOTION to Expedite *Hearing on Motion to Continue and Objections of the November 19, 2014 Fairness Hearing* filed by PLAINTIFF(S).Certificate of Service.(LUBEL, LANCE) (Entered: 11/17/2014) |
| 11/17/2014 | 6431 | Objections by PLAINTIFF(S) re 6223 Objections *Supplement by Reginald Slack and Matthew Rice to Proposed Class Settlement*. (SHAH, PARAG) (Entered: 11/17/2014) |
| 11/18/2014 | 6432 | RESPONSE in Opposition re 6427 MOTION to File Amicus Brief filed by PLAINTIFF(S). (Attachments: # 1 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 11/18/2014) |
| 11/18/2014 | 6433 | Objections by PLAINTIFF(S) re 6221 Objections *Supplement by Delano Williams to Proposed Class Settlement*. (Attachments: # 1 Exhibit Death Certificate, # 2 Exhibit |

| | | |
|---|---|---|
| | | Obituary, # 3 Exhibit Tallahassee Democrat, # 4 Exhibit Mayo Clinic, # 5 Exhibit American Academy of Neurology, # 6 Exhibit Journal of Epidemiology and Health) (SHAH, PARAG) (Entered: 11/18/2014) |
| 11/18/2014 | 6434 | Objections by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL re 6201 Objections,,, 6232 Objections, . (MOLO, STEVEN) (Entered: 11/18/2014) |
| 11/18/2014 | 6435 | Statement *Regarding the November 19, 2014 Fairness Hearing* by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL. (MOLO, STEVEN) (Entered: 11/18/2014) |
| 11/18/2014 | 6436 | NOTICE of Withdrawal of Appearance by STEPHEN FREDERICK ROSENTHAL on behalf of PLAINTIFF(S)(ROSENTHAL, STEPHEN) (Entered: 11/18/2014) |
| 11/18/2014 | 6437 | Objections by PLAINTIFF(S) re 6243 Objections, 6422 Memorandum,,,, *Ben Utecht*. (Attachments: # 1 Exhibit Email from Anapol Schwartz)(HILLSTROM, SCOTT) (Entered: 11/18/2014) |
| 11/18/2014 | 6438 | Report Of *Third Opt Out Report Submitted* by CLAIMS ADMINISTRATOR. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(BROWN, ORRAN) (Entered: 11/18/2014) |
| 11/19/2014 | 6439 | Objections by CLAIRE ASTLE, DAWN ASTLE *to class action settlement*. (JOHNSON, ZACHARY) (Entered: 11/19/2014) |
| 11/19/2014 | 6440 | 🔊 Audio File 11/19/2014 10:00AM, regarding FAIRNESS HEARING held on 11/19/2014, before HONORABLE ANITA B. BRODY (kf, ) (Entered: 11/19/2014) |
| 11/20/2014 | 6441 | NOTICE of Appearance by RICHARD L. COFFMAN on behalf of PLAINTIFF(S) with Certificate of Service(COFFMAN, RICHARD) (Entered: 11/20/2014) |
| 11/20/2014 | 6442 | NOTICE of Appearance by MITCHELL A. TOUPS on behalf of PLAINTIFF(S) with Certificate of Service(TOUPS, MITCHELL) (Entered: 11/20/2014) |
| 11/20/2014 | 6443 | ORDER THAT THE SIDE-BAR OF THE PROCCEDDINGS HELD ON 11/19/2014 AT THE TME INTERVAL 3:18:19 TO 3:20:59 IS PLACED UNDER SEAL. SIGNED BY HONORABLE ANITA B. BRODY ON 11/19/2014. 11/21/2014 ENTERED AND COPIES E-MAILED.(kk, ) (Entered: 11/21/2014) |
| 11/24/2014 | 6444 | ORDER that MY OCTOBER 9, 2014 ORDER REGARDING SUPPLEMENTAL BRIEFING (ECF NO. 6203) IS AMENDED AS FOLLOWS:. SETTLEMENT CLASS MEMBERS WHO HAVE FILED TIMELY AND VALID OBJECTIONS MAY SUBMIT SUPPLEMENTAL BRIEFING AT OR BEFORE 5:00 P.M., TUESDAY, DECEMBER 2, 2014.. CLASS COUNSEL AND COUNSEL FOR THE NFL PARTIES MAY FILE RESPOSNES THERETO AT OR BEFORE 5:00 P.M., FRIDAY, DECEMBER 12, 2014.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/24/2014. 11/24/2014 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/24/2014) |
| 11/24/2014 | 6445 | Short Form Complaint *of Donny Anderson* by PLAINTIFF(S). (MATHENY, MATTHEW) (Entered: 11/24/2014) |
| 11/24/2014 | 6446 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Telephone Conference held on 11/17/2014 Court Reporter: ESR. (kk, ) (Entered: 11/25/2014) |
| 11/24/2014 | 6447 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Telephone Conference held on 11/24/2014 Court Reporter: ESR. (kk, ) (Entered: |

| | | |
|---|---|---|
| | | 11/25/2014) |
| 11/26/2014 | 6448 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: FAIRNESS HEARING held on 11/19/2014. Court Reporter: ESR. (kk, ) (Entered: 11/26/2014) |
| 11/28/2014 | 6449 | TRANSCRIPT of held on 11/19/2014, before Judge ANITA B. BRODY. Court Reporter/Transcriber Y. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 12/19/2014. Redacted Transcript Deadline set for 12/29/2014. Release of Transcript Restriction set for 2/26/2015. (kk, ) (Entered: 11/28/2014) |
| 11/28/2014 | 6450 | Notice of Filing of Official Transcript with Certificate of Service re 6449 Transcript - PDF, 11/28/2014 Entered and Copies Emailed to Liaison Counsel. (kk, ) (Entered: 11/28/2014) |
| 12/01/2014 | 6451 | MOTION for Leave to File *Supplemental Memorandum* filed by PUBLIC CITIZEN, INC..Memorandum. (Attachments: # 1 Memorandum)(MORRISON, ALAN) (Entered: 12/01/2014) |
| 12/02/2014 | 6452 | NOTICE by PLAINTIFF(S) *of Supplemental Objections*. Certificate of Service. (PENTZ, JOHN) Modified on 12/3/2014 (ahf, ). (Entered: 12/02/2014) |
| 12/02/2014 | 6453 | RESPONSE to Motion re 6423 MOTION for Order *Final Order and Judgment Response of Sixteen Objectors to the Motions for Settlement Approval Filed by the NFL and Class Plaintiffs* filed by PLAINTIFF(S). Certificate of Service.(BOSTWICK, DWIGHT) Modified on 12/3/2014 (ahf, ). (Entered: 12/02/2014) |
| 12/02/2014 | 6454 | Final Supplement to Objections by PLAINTIFF(S) re 6243 Objections, 6437 Objections *Ben Utecht*. Certificate of Service. (Attachments: # 1 Exhibit 6-25-14 Email from Class Counsel)(HILLSTROM, SCOTT) Modified on 12/3/2014 (ahf, ). (Entered: 12/02/2014) |
| 12/02/2014 | 6455 | Post-Fairness Hearing Supplemental Briefing of Objectors re 6423 MOTION for Order *Final Order and Judgment* filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL. Certificate of Service.(Attachments: # 1 Declaration Stern supplemental declaration, # 2 Declaration Gandy supplemental declaration, # 3 Declaration Hof Declaration, # 4 Declaration Zhang Declaration, # 5 Declaration Shenton Declaration, # 6 Declaration Bernick Declaration, # 7 Declaration Weiner Declaration, # 8 Declaration Stone Declaration, # 9 Declaration Wisniewski Declaration, # 10 Declaration DeKosky Declaration, # 11 Declaration Gordon Declaration, # 12 Declaration Nitz supplemental declaration, # 13 Exhibit Exhibits 1-9, # 14 Exhibit Exhibits 10-18, # 15 Exhibit Exhibit 19-a, # 16 Exhibit Exhibit 19-b, # 17 Exhibit Exhibit 19-c, # 18 Exhibit Exhibit 19-d, # 19 Exhibit Exhibit 19-e, # 20 Exhibit Exhibit 19-f, # 21 Exhibit Exhibit 19-g, # 22 Exhibit Exhibit 19-h, # 23 Exhibit Exhibits 20-27)(MOLO, STEVEN) Modified on 12/3/2014 (ahf, ). (Entered: 12/02/2014) |
| 12/02/2014 | 6456 | Supplemental Brief in Support of Their Objections to Class Action Settlement by PLAINTIFF(S) *Estate of David Duerson, Estate of Forrest Blue, Thomas DeLeone, Gerald Sullivan, Barry Darrow, Ray Austin, Bruce Herron, John Cornell, Tori Noel and Mike Adamle*. Certificate of Service. (Attachments: # 1 Certificate of Service, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E)(GIBBS, WILLIAM) Modified on 12/3/2014 (ahf, ). (Entered: 12/02/2014) |

| 12/02/2014 | 6457 | NOTICE of Appearance by JASON A. ZWEIG on behalf of PLAINTIFF(S) with Certificate of Service(ZWEIG, JASON) (Entered: 12/02/2014) |
| 12/04/2014 | 6458 | NOTICE of Appearance with Certificate of Service by NORMAN ANTHONY ABOOD on behalf of PLAINTIFF(S) (ABOOD, NORMAN) Modified on 12/5/2014 (ahf, ). (Entered: 12/04/2014) |
| 12/04/2014 | 6459 | RESPONSE in Opposition re 6451 MOTION for Leave to File *Supplemental Memorandum* filed by PLAINTIFF(S). Certificate of Service. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(SEEGER, CHRISTOPHER) Modified on 12/5/2014 (ahf, ). (Entered: 12/04/2014) |
| 12/08/2014 | 6460 | EXHIBIT (DVD Re: Press Conference) to 6456 Plaintiffs' Supplemental Brief in Support of Their Objections to CLass Action Settlement filed by PLAINTIFF(S). (FILED IN HARD COPY). (APPLIES TO 14-cv-0029).(ahf) (Entered: 12/08/2014) |
| 12/09/2014 | 6461 | MOTION for Disclosure *of Documents Relevant to Fairness of Settlement* filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL.. Certificate of Service.(Attachments: # 1 Text of Proposed Order)(MOLO, STEVEN) Modified on 12/10/2014 (ahf, ). (Entered: 12/09/2014) |
| 12/09/2014 | 6462 | MOTION for Disclosure *of Financial Relationships with Experts* filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL.. Certificate of Service.(Attachments: # 1 Text of Proposed Order)(MOLO, STEVEN) Modified on 12/10/2014 (ahf, ). (Entered: 12/09/2014) |
| 12/11/2014 | 6463 | AMENDED TRANSCRIPT of Fairness Hearing held on 11/19/2014, before Judge Anita B. Brody. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 1/2/2015. Redacted Transcript Deadline set for 1/12/2015. Release of Transcript Restriction set for 3/11/2015. (ahf) (Entered: 12/12/2014) |
| 12/11/2014 | 6464 | Notice of Filing of Official Transcript with Certificate of Service re 6463 Transcript - PDF, 12/12/2014 Entered and Copies Emailed to Liaison Counsel. (ahf) (Entered: 12/12/2014) |
| 12/12/2014 | 6465 | Report Of *Fourth Opt Out Report Submitted* by CLAIMS ADMINISTRATOR. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(BROWN, ORRAN) (Entered: 12/12/2014) |
| 12/12/2014 | 6466 | Memorandum in Support re 6422 Memorandum,,,, *Reply Memorandum of Law in Further Support of Final Approval of the Class Action Settlement Agreement and in Response to Objections* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Declaration of Douglas M. Burns, # 2 Exhibit 1) (KARP, BRAD) (Entered: 12/12/2014) |
| 12/12/2014 | 6467 | REPLY to Response to Motion re 6423 MOTION for Order *Final Order and Judgment In Further Support of Motion for Final Approval and In Response To ECF Nos. 6452, 6453, 6454, 6455 and 6456* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 12/12/2014) |
| 12/19/2014 | 6468 | NOTICE by PLAINTIFF(S) re 6467 Reply to Response to Motion, 6423 MOTION for Order *Final Order and Judgment Notice of Supplemental Authority* Certificate of Service.(Attachments: # 1 Attachment)(SEEGER, CHRISTOPHER) Modified on 12/22/2014 (ahf, ). (Entered: 12/19/2014) |

**-399-**

| 12/22/2014 | 6469 | NOTICE by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL *of filing (Nov. 19, 2014 Fairness Hearing Demonstrative Slides)* (MOLO, STEVEN) (Entered: 12/22/2014) |
| --- | --- | --- |
| 12/23/2014 | 6470 | NOTICE by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL *of supplemental authority* (Attachments: # 1 Exhibit A)(MOLO, STEVEN) (Entered: 12/23/2014) |
| 12/24/2014 | 6471 | RESPONSE in Opposition re 6462 MOTION for Disclosure *of Financial Relationships with Experts* filed by PLAINTIFF(S). (Attachments: # 1 Text of Proposed Order) (SEEGER, CHRISTOPHER) (Entered: 12/24/2014) |
| 12/24/2014 | 6472 | RESPONSE in Opposition re 6462 MOTION for Disclosure *of Financial Relationships with Experts* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Text of Proposed Order)(KARP, BRAD) (Entered: 12/24/2014) |
| 12/24/2014 | 6473 | RESPONSE in Opposition re 6461 MOTION for Disclosure *of Documents Relevant to Fairness of Settlement* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Text of Proposed Order)(KARP, BRAD) (Entered: 12/24/2014) |
| 12/31/2014 | 6474 | NOTICE of Appearance by RICHARD L. COFFMAN on behalf of PLAINTIFF(S) with Certificate of Service(COFFMAN, RICHARD) (Entered: 12/31/2014) |
| 01/05/2015 | 6475 | NOTICE of Appearance by JASON C. WEBSTER on behalf of PLAINTIFF(S) with Certificate of Service(WEBSTER, JASON) (Entered: 01/05/2015) |
| 01/05/2015 | 6476 | NOTICE of Appearance by MITCHELL A. TOUPS on behalf of PLAINTIFF(S) with Certificate of Service(TOUPS, MITCHELL) (Entered: 01/05/2015) |
| 01/05/2015 | 6477 | NOTICE by PLAINTIFF(S) re 6470 Notice (Other) *Responding to Objectors' Notice of Supplemental Authority* (SEEGER, CHRISTOPHER) (Entered: 01/05/2015) |
| 01/20/2015 | 6478 | Amended Short Form Complaint by BRIAN HOLLOWAY. (Applies to C.A. 12-1024). (Entered: 01/21/2015) |
| 02/02/2015 | 6479 | ORDER... AND NOW THIS 2ND DAY OF FEBRUARY, 2015, IT IS ORDERED THAT CLASS COUNSEL AND THE NFL PARTIES FILE A JOINT SUBMISSION ON OR BEFORE FEBRUARY 13, 2015 THAT ADDRESSES THESE ISSUES, EITHER THROUGH AMENDMENTS TO THE CLASS ACTION SETTLEMENT, OR THROUGH EXPLANATIONS AS TO WHY THE PARTIES ARE UNWILLING TO AGREE TO AMENDMENTS THAT ADDRESS THESE ISSUES.. SIGNED BY HONORABLE ANITA B. BRODY ON 2/2/2015. 2/2/2015 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 02/02/2015) |
| 02/12/2015 | 6480 | NOTICE by PLAINTIFF(S) *Armstrong Objectors' Notice of Supplemental Authority in Support of their Amended Objection to the June 25, 2014 Class Action Settlement Agreement* . Certificate of Service. (Attachments: # 1 Exhibit Bank of America Opinion)(TOUPS, MITCHELL) Modified on 2/13/2015 (ahf, ). (Entered: 02/12/2015) |
| 02/13/2015 | 6481 | Response re 6479 Order, */ Class Counsel and the NFL Parties' Joint Submission in Response to the February 2, 2015 Order of the Court* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). Certificate of Service. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (KARP, BRAD) Modified on 2/17/2015 (ems). (Entered: 02/13/2015) |

| 02/17/2015 | 6482 | Report Of *Fifth Opt Out Report Submitted* by CLAIMS ADMINISTRATOR. Certificate of Service. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(BROWN, ORRAN) Modified on 2/18/2015 (ahf, ). (Entered: 02/17/2015) |
|---|---|---|
| 02/18/2015 | 6483 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 02/18/2015) |
| 02/27/2015 | 6484 | Memorandum in Response to Amendments re 6423 MOTION for Order *Final Order and Judgment* filed by PLAINTIFF(S). (PENTZ, JOHN) (Entered: 02/27/2015) |
| 03/02/2015 | 6485 | NOTICE by PLAINTIFF(S) re 6480 Notice (Other), *Responding to Objectors' Notice of Supplemental Authority* (SEEGER, CHRISTOPHER) (Entered: 03/02/2015) |
| 03/02/2015 | 6486 | NOTICE of Appearance by CHRISTOPHER B. INGLE on behalf of PLAINTIFF(S) (INGLE, CHRISTOPHER) (Entered: 03/02/2015) |
| 03/02/2015 | 6487 | NOTICE of Appearance by CHRISTOPHER B. INGLE on behalf of PLAINTIFF(S) with Certificate of Service(INGLE, CHRISTOPHER) (Entered: 03/02/2015) |
| 03/02/2015 | 6488 | NOTICE of Appearance by CHRISTOPHER B. INGLE on behalf of PLAINTIFF(S) with Certificate of Service(INGLE, CHRISTOPHER) (Entered: 03/02/2015) |
| 03/02/2015 | 6489 | NOTICE of Appearance by CHRISTOPHER B. INGLE on behalf of PLAINTIFF(S) with Certificate of Service(INGLE, CHRISTOPHER) (Entered: 03/02/2015) |
| 03/02/2015 | 6490 | NOTICE of Appearance by CHRISTOPHER B. INGLE on behalf of PLAINTIFF(S) with Certificate of Service(INGLE, CHRISTOPHER) (Entered: 03/02/2015) |
| 03/02/2015 | 6491 | NOTICE of Appearance by CHRISTOPHER B. INGLE on behalf of PLAINTIFF(S) with Certificate of Service(INGLE, CHRISTOPHER) (Entered: 03/02/2015) |
| 03/02/2015 | 6492 | NOTICE of Appearance by CHRISTOPHER B. INGLE on behalf of PLAINTIFF(S) with Certificate of Service(INGLE, CHRISTOPHER) (Entered: 03/02/2015) |
| 03/02/2015 | 6493 | NOTICE of Appearance by CHRISTOPHER B. INGLE on behalf of PLAINTIFF(S) with Certificate of Service(INGLE, CHRISTOPHER) (Entered: 03/02/2015) |
| 03/02/2015 | 6494 | NOTICE of Appearance by CHRISTOPHER B. INGLE on behalf of PLAINTIFF(S) with Certificate of Service(INGLE, CHRISTOPHER) (Entered: 03/02/2015) |
| 03/02/2015 | 6495 | NOTICE of Appearance by CHRISTOPHER B. INGLE on behalf of PLAINTIFF(S) with Certificate of Service(INGLE, CHRISTOPHER) (Entered: 03/02/2015) |
| 03/04/2015 | 6496 | STATUS REPORT *Sixth Opt Out Report Submitted* by CLAIMS ADMINISTRATOR. (Attachments: # 1 Exhibit 1, # 2 Exhibit)(BROWN, ORRAN) (Entered: 03/04/2015) |
| 03/12/2015 | 6497 | Proposed Findings of Fact and Conclusions of Law by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). Certificate of Service (KARP, BRAD) Modified on 3/13/2015 (ems). (Entered: 03/12/2015) |
| 03/20/2015 | 6498 | NOTICE of Appearance by THEODORE E. KARATINOS on behalf of PLAINTIFF(S) with Certificate of Service(KARATINOS, THEODORE) Modified on 3/23/2015 (ems). (Entered: 03/20/2015) |
| 03/31/2015 | 6499 | NOTICE of Appearance by KONSTANTINE KYROS on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. Certificate of Service. (KYROS, KONSTANTINE) Modified on 4/1/2015 (ems). (Entered: 03/31/2015) |
| 03/31/2015 | 6500 | NOTICE by PLAINTIFF(S) *of Letter Regarding Amendments to the Settlement Agreement*. Certificate of Service. (Attachments: # 1 Attachment)(SEEGER, |

| | | CHRISTOPHER) Modified on 4/1/2015 (ems). (Entered: 03/31/2015) |
|---|---|---|
| 04/07/2015 | 6501 | Statement *Regarding 28 U.S.C. § 1715* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. Certificate of Service. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(KARP, BRAD) Modified on 4/8/2015 (ems). (Entered: 04/07/2015) |
| 04/09/2015 | 6502 | Joint MOTION to Substitute Attorney filed by PLAINTIFF(S). Certificate of Service. (KARATINOS, THEODORE) Modified on 4/10/2015 (ems). (Entered: 04/09/2015) |
| 04/13/2015 | 6503 | Objections by PLAINTIFF(S) re 6233 Objections,,, 6479 Order, 6353 Letter, 6481 Response, 6087 Notice of Settlement *Armstrong Objectors' Supplemental Objection to the Amended Class Action Settlement*. Certificate of Service. (COFFMAN, RICHARD) Modified on 4/14/2015 (ems). (Entered: 04/13/2015) |
| 04/15/2015 | 6504 | NOTICE by PLAINTIFF(S) *of Withdrawal of Appearance of KRISTIE VISGER Only*. Certificate of Service. (LUCKASEVIC, JASON) Modified on 4/16/2015 (ems). (Entered: 04/15/2015) |
| 04/16/2015 | 6505 | NOTICE by PLAINTIFF(S) re 6503 Objections, 6230 Objections, *Joinder and Notice of Re-Urging Objection of Craig Heimburger and Dawn Heimburger*. Certificate of Service. (MANOCHI, GLENN) Modified on 4/17/2015 (ems). (Entered: 04/16/2015) |
| 04/17/2015 | 6506 | STATUS REPORT *Seventh Opt Out Report Submitted* by CLAIMS ADMINISTRATOR. Certificate of Service. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (BROWN, ORRAN) Modified on 4/20/2015 (ems). (Entered: 04/17/2015) |
| 04/21/2015 | 6507 | STATUS REPORT *Eighth Opt Out Report Submitted* by CLAIMS ADMINISTRATOR. Certificate of Service. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (BROWN, ORRAN) Modified on 4/22/2015 (ems). (Entered: 04/21/2015) |
| 04/21/2015 | 6508 | ORDER THAT MOTIONS (DOC. NOS. 6120, 6130, 6133, 6134, 6135, 6138, 6170, 6171, 6214, 6215, 6216, 6231, 6236, 6327, AND 6451) ARE GRANTED. MOTION (DOC. NO. 6180) IS GRANTED IN PART AND DENIED IN PART; ETC.. MOTIONS (DOC. NOS. 6151, 6163, 6164, 6192, 6211, 6244, 6249, 6260, 6331, AND 6338) ARE DENIED AS MOOT. MOTIONS (DOC. NOS. 6252, 6259, 6427, 6429, 6430, 6461, AND 6462) ARE DENIED. SIGNED BY HONORABLE ANITA B. BRODY ON 4/21/2015. 4/21/2015 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 04/21/2015) |
| 04/22/2015 | 6509 | MEMORANDUM AND/OR OPINION. SIGNED BY HONORABLE ANITA B. BRODY ON 4/22/2015. 4/22/2015 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 04/22/2015) |
| 04/22/2015 | 6510 | MEMORANDUM AND/OR OPINION ORDER THAT THE COURT HAS JURISDICTION OVER THE SUBJECT MATTER OF THIS ACTION. THE COURT CERTIFIES THE SETTLEMENT CLASS AND SUBCLASSES UNDER FEDERAL RULE OF CIVIL PROCEDURE 23. THE SETTLEMENT CLASS IS DEFINED AS OUTLINED HEREIN. SIGNED BY HONORABLE ANITA B. BRODY ON 4/22/2015. 4/22/2015 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 04/22/2015) |
| 04/22/2015 | 6511 | Request *for Status Conference Pursuant to FRCP 16 by SEAU FAMILY* by PLAINTIFF(S). Certificate of Service. (STRAUSS, STEVEN) Modified on 4/23/2015 (ems). (Entered: 04/22/2015) |

| 04/23/2015 | 6512 | NOTICE of Appearance by MITCHELL A. TOUPS on behalf of PLAINTIFF(S) with Certificate of Service(TOUPS, MITCHELL) Modified on 4/24/2015 (ems). (Entered: 04/23/2015) |
| 04/23/2015 | 6513 | NOTICE of Appearance by RICHARD L. COFFMAN on behalf of PLAINTIFF(S) with Certificate of Service(COFFMAN, RICHARD) Modified on 4/24/2015 (ems). (Entered: 04/23/2015) |
| 04/23/2015 | 6514 | NOTICE of Appearance by JASON C. WEBSTER on behalf of PLAINTIFF(S). Certificate of Service. (WEBSTER, JASON) Modified on 4/24/2015 (ems). (Entered: 04/23/2015) |
| 04/24/2015 | 6515 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Appearance of Michael B. Leh on behalf of Andrew Stewart and Sharon Stewart ONLY*. Certificate of Service. (LEH, MICHAEL) Modified on 4/27/2015 (ems). (Entered: 04/24/2015) |
| 04/24/2015 | 6516 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Appearance of David D. Langfitt on behalf of Andrew Stewart and Sharon Stewart ONLY*. Certificate of Service. (LANGFITT, DAVID) Modified on 4/27/2015 (ems). (Entered: 04/24/2015) |
| 04/24/2015 | 6517 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Appearance of Gene Locks on behalf of Andrew Stewart and Sharon Stewart ONLY*. Certificate of Service. (LOCKS, GENE) Modified on 4/27/2015 (ems). (Entered: 04/24/2015) |
| 04/24/2015 | 6518 | NOTICE by PLAINTIFF(S) *of Attorney's Lien regarding Cosey Coleman and Rernitval Coleman*. Certificate of Service. (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) Modified on 4/27/2015 (ems). (Entered: 04/24/2015) |
| 04/24/2015 | 6519 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S). Certificate of Service. (MCGLAMRY, MICHAEL) Modified on 4/27/2015 (ems, ). (Entered: 04/24/2015) |
| 04/24/2015 | 6520 | NOTICE by PLAINTIFF(S) *of Attorney's Lien regarding Kenneth Clarke*. Certificate of Service. (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) Modified on 4/27/2015 (ems). (Entered: 04/24/2015) |
| 04/24/2015 | 6521 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S). Certificate of Service. (MCGLAMRY, MICHAEL) Modified on 4/27/2015 (ems). (Entered: 04/24/2015) |
| 04/24/2015 | 6522 | NOTICE by PLAINTIFF(S) *of Attorney's Lien regarding Leeland McElroy*. Certificate of Service. (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) Modified on 4/27/2015 (ems). (Entered: 04/24/2015) |
| 04/24/2015 | 6523 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S). Certificate of Service. (MCGLAMRY, MICHAEL) Modified on 4/27/2015 (ems). (Entered: 04/24/2015) |
| 04/24/2015 | 6524 | NOTICE by PLAINTIFF(S) *of Attorney's Lien regarding Sean S. Love and Renee Love*. Certificate of Service. (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) Modified on 4/27/2015 (ems). (Entered: 04/24/2015) |
| 04/24/2015 | 6525 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S). Certificate of Service. (MCGLAMRY, MICHAEL) Modified on 4/27/2015 (ems). (Entered: 04/24/2015) |
| 04/27/2015 | 6526 | Joint MOTION for Suggestion of Remand or, in the Alternative, a Status Conference filed by PLAINTIFF(S).Certificate of Service.(SCHERMERHORN, ANDREW) |

**-403-**

| | | Modified on 4/28/2015 (ems). (Entered: 04/27/2015) |
|---|---|---|
| 04/27/2015 | 6527 | NOTICE of Appearance by Michael A. Warner on behalf of OBJECTOR WILLIAM B. DUFF. Certificate of Service. (WEBSTER, JASON) Modified on 4/28/2015 (ems). Modified on 5/14/2015 (tjd). (Entered: 04/27/2015) |
| 04/28/2015 | 6528 | NOTICE of Withdrawal of Appearance by GRAHAM B. LIPPSMITH on behalf of PLAINTIFF(S). Certificate of Service. (LIPPSMITH, GRAHAM) Modified on 4/29/2015 (ems). (Entered: 04/28/2015) |
| 04/28/2015 | 6529 | NOTICE of Appearance by GRAHAM B. LIPPSMITH on behalf of PLAINTIFF(S) with Certificate of Service(LIPPSMITH, GRAHAM) (Entered: 04/28/2015) |
| 04/28/2015 | 6530 | NOTICE of Appearance by CELENE SHI-LING CHAN on behalf of PLAINTIFF(S) with Certificate of Service(CHAN, CELENE) (Entered: 04/28/2015) |
| 04/30/2015 | 6531 | NOTICE of Appearance by THEODORE E. KARATINOS on behalf of PLAINTIFF(S). Certificate of Service. (KARATINOS, THEODORE) Modified on 5/1/2015 (ems). (Entered: 04/30/2015) |
| 05/04/2015 | 6532 | NOTICE of Appearance by GARY O. GALIHER on behalf of PLAINTIFF(S) and Withdrawal and Substitution of Counsel with Certificate of Service (Attachments: # 1 Certificate of Service)(GALIHER, GARY) Modified on 5/5/2015 (ems). (Entered: 05/04/2015) |
| 05/04/2015 | 6533 | STATUS REPORT *Posting of List of Opt Outs Pursuant to the Final Order and Judgment* by CLAIMS ADMINISTRATOR. Certificate of Service. (Attachments: # 1 Exhibit 1, # 2 Exhibit 1)(BROWN, ORRAN) Modified on 5/5/2015 (ems). (Entered: 05/04/2015) |
| 05/08/2015 | 6534 | AMENDED FINAL ORDER AND JUDGMENT IN ACCORDANCE WITH THE COURT'S MEMORANDUM (ECF. NO. 6509)IT IS ORDERED: THE COURT HAS JURISDICTION OVER THE SUBJECT MATTER OF THIS ACTION. THE COURT CERTIFIES THE SETTLEMENT CLASS AND SUBCLASSES UNDER FEDERAL RULE OF CIVIL PROCEDURE 23, ET AL.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/8/15. 5/8/15 ENTERED AND COPIES E-MAILED.(ldb, ) (Entered: 05/08/2015) |
| 05/11/2015 | 6535 | ORDER-1(footnote) that THE AMENDED FINAL ORDER AND JUDGMENT, DATED MAY 8, 2015, IS CLARIFIED AS FOLLOWS: PARAGRAPH 16 DISMISSES WITH PREJUDICE ALL RELATED LAWUITS PENDING IN THE COURT IN WHICH RELEASORS ARE THE ONLY NAMED PLAINTIFFS AND RELEASED PARTIES ARE THE ONLY NAMED DEFENDANTS. IN ALL OTHER RELATED LAWSUITS PENDING IN THE COURT, ALL RELEASED CLAIMS AGAINST THE RELEASED PARTIES ARE DISMISSED WITH PREJUDICE. ALL OTHER TERMS OF THE AMENDED FINAL ORDER AND JUDGMENT REMAIN UNCHANGED.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/11/2015. 5/11/2015 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/11/2015) |
| 05/11/2015 | 6536 | NOTICE by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC. re 6511 Praecipe/Request *Response to Request for Status Conference* (CEREGHINI, PAUL) (Entered: 05/11/2015) |
| 05/12/2015 | 6537 | NOTICE by PLAINTIFF(S) *Notice of Filing Affidavit* (KARATINOS, THEODORE) (Entered: 05/12/2015) |

**-404-**

| | | |
|---|---|---|
| 05/12/2015 | 6538 | Request *for Status Conference Pursuant to Federal Rule of Civil Prodcedure 16* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 05/12/2015) |
| 05/13/2015 | 6539 | NOTICE OF APPEAL as to 6535 Order,, 6510 Order (Memorandum and/or Opinion), 6509 Memorandum and/or Opinion, 6534 Order, by PLAINTIFF(S). Copies to Judge, Clerk USCA, Appeals Clerk. Certificate of Service. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(MANOCHI, GLENN) (Entered: 05/13/2015) |
| 05/13/2015 | 6540 | NOTICE of Withdrawal of Christopher A. Dias and Locks Law Firm and Substitution of Counsel by GARY O. GALIHER on behalf of PLAINTIFF(S) (Attachments: # 1 Certificate of Service)(GALIHER, GARY) (Entered: 05/13/2015) |
| 05/13/2015 | 6541 | Clerk's Notice to USCA re 6539 Notice of Appeal, : (ems) (Entered: 05/14/2015) |
| 05/14/2015 | 6542 | NOTICE of Withdrawal of Appearance by JONATHAN SHUB on behalf of All Plaintiffs (SHUB, JONATHAN) (Entered: 05/14/2015) |
| 05/14/2015 | 6543 | NOTICE OF APPEAL as to 6534 Order, by PLAINTIFF(S). Copies to Judge, Clerk USCA, Appeals Clerk. Certificate of Service. (PENTZ, JOHN) (Entered: 05/14/2015) |
| 05/14/2015 | 6544 | RESPONSE in Opposition re 6526 Joint MOTION for Suggestion of Remand or, in the Alternative, a Status Conference filed by KANSAS CITY CHIEFS FOOTBALL CLUB, INC.. (KARP, BRAD) (Entered: 05/14/2015) |
| 05/14/2015 | 6545 | Clerk's Notice to USCA re 6543 Notice of Appeal : (ems) (Entered: 05/15/2015) |
| 05/15/2015 | 6546 | NOTICE OF APPEAL as to 6510 Order (Memorandum and/or Opinion), 6509 Memorandum and/or Opinion, 6535 Order,, 6534 Order, 6426 Order on Motion to Strike,,, by PLAINTIFF(S). Filing fee $ 505. Copies to Judge, Clerk USCA, Appeals Clerk. Certificate of Service. (COCHRAN, GEORGE) (Entered: 05/15/2015) |
| 05/15/2015 | | NOTICE of Docketing Record on Appeal from USCA re 6543 Notice of Appeal filed by PLAINTIFF(S). USCA Case Number 15-2217 (ems) (Entered: 05/15/2015) |
| 05/15/2015 | 6547 | Clerk's Notice to USCA re 6546 Notice of Appeal, : (ems) (Entered: 05/18/2015) |
| 05/15/2015 | 6548 | NOTICE OF APPEAL as to 6510 Order (Memorandum and/or Opinion), 6509 Memorandum and/or Opinion by PLAINTIFF(S). Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (ems) (Entered: 05/18/2015) |
| 05/15/2015 | 6549 | Clerk's Notice to USCA re 6548 Notice of Appeal : (ems) (Entered: 05/18/2015) |
| 05/18/2015 | | USCA Appeal Fees received $ 505 receipt number PPE121234 re 6539 Notice of Appeal, filed by PLAINTIFF(S) (ems) (Entered: 05/18/2015) |
| 05/18/2015 | | USCA Appeal Fees received $ 505 receipt number PPE121240 re 6543 Notice of Appeal filed by PLAINTIFF(S) (ems) (Entered: 05/18/2015) |
| 05/19/2015 | | NOTICE of Docketing Record on Appeal from USCA re 6546 Notice of Appeal, filed by PLAINTIFF(S). USCA Case Number 15-2230 (ems) (Entered: 05/19/2015) |
| 05/19/2015 | | NOTICE of Docketing Record on Appeal from USCA re 6548 Notice of Appeal filed by PLAINTIFF(S). USCA Case Number 15-2234 (ems) (Entered: 05/19/2015) |
| 05/19/2015 | 6550 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Certificate of Service) (KARP, BRAD) (Entered: 05/19/2015) |
| 05/20/2015 | 6551 | NOTICE OF APPEAL as to 6510 Order (Memorandum and/or Opinion), 6509 Memorandum and/or Opinion, 6535 Order,, 6534 Order, by PLAINTIFF(S). Copies to |

| | | |
|---|---|---|
| | | Judge, Clerk USCA, Appeals Clerk. Certificate of Service. (COFFMAN, RICHARD) Modified on 5/21/2015 (ems). (Entered: 05/20/2015) |
| 05/20/2015 | | NOTICE of Docketing Record on Appeal from USCA re 6539 Notice of Appeal, filed by PLAINTIFF(S). USCA Case Number 15-2206 (ems) (Entered: 05/20/2015) |
| 05/20/2015 | 6552 | NOTICE OF APPEAL as to 6510 Order (Memorandum and/or Opinion), 6535 Order,, 6534 Order, by PLAINTIFF(S). Copies to Judge, Clerk USCA, Appeals Clerk. Certificate of Service. (LUBEL, LANCE) Modified on 5/21/2015 (ems). (Entered: 05/20/2015) |
| 05/20/2015 | 6553 | NOTICE of Appearance by ANTHONY MICHAEL CARR on behalf of PLAINTIFF(S) (Attachments: # 1 Certificate of Service)(CARR, ANTHONY) (Entered: 05/20/2015) |
| 05/20/2015 | 6554 | NOTICE of Appearance by CLARISSE MICHIKO KOBASHIGAWA on behalf of PLAINTIFF(S) (Attachments: # 1 Certificate of Service)(KOBASHIGAWA, CLARISSE) (Entered: 05/20/2015) |
| 05/20/2015 | 6555 | Clerk's Notice to USCA re 6551 Notice of Appeal, : (ems) (Entered: 05/21/2015) |
| 05/20/2015 | 6556 | Clerk's Notice to USCA re 6552 Notice of Appeal : (ems) (Entered: 05/21/2015) |
| 05/21/2015 | 6557 | NOTICE OF APPEAL as to 6535 Order,, 6510 Order (Memorandum and/or Opinion), 6509 Memorandum and/or Opinion, 6534 Order, by PLAINTIFF(S). Copies to Judge, Clerk USCA, Appeals Clerk. Certificate of Service. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(CIARLANTO, JEFFREY) Modified on 5/22/2015 (ems). (Entered: 05/21/2015) |
| 05/21/2015 | 6558 | NOTICE of Appearance by JEFFREY J. CIARLANTO on behalf of PLAINTIFF(S) with Certificate of Service(CIARLANTO, JEFFREY) (Entered: 05/21/2015) |
| 05/21/2015 | | USCA Appeal Fees received $ 505 receipt number PPE121439 re 6552 Notice of Appeal filed by PLAINTIFF(S) (ems) (Entered: 05/21/2015) |
| 05/21/2015 | 6559 | NOTICE OF APPEAL as to 6510 Order (Memorandum and/or Opinion), 6509 Memorandum and/or Opinion, 6535 Order,, 6534 Order, by PLAINTIFF(S). Copies to Judge, Clerk USCA, Appeals Clerk. Certificate of Service. (BOSTWICK, DWIGHT) Modified on 5/22/2015 (ems). (Entered: 05/21/2015) |
| 05/21/2015 | 6560 | NOTICE OF APPEAL as to 6510 Order (Memorandum and/or Opinion), 6509 Memorandum and/or Opinion, 6535 Order,, 6534 Order, by PLAINTIFF(S). Copies to Judge, Clerk USCA, Appeals Clerk. Certificate of Service. (ROSENTHAL, MICHAEL) Modified on 5/22/2015 (ems). (Entered: 05/21/2015) |
| 05/21/2015 | 6561 | NOTICE OF APPEAL as to 6510 Order (Memorandum and/or Opinion), 6509 Memorandum and/or Opinion, 6535 Order,, 6534 Order, by PLAINTIFF(S). Copies to Judge, Clerk USCA, Appeals Clerk. Certificate of Service. (COFFMAN, RICHARD) Modified on 5/22/2015 (ems). (Entered: 05/21/2015) |
| 05/21/2015 | 6563 | Clerk's Notice to USCA re 6557 Notice of Appeal, : (ems) (Entered: 05/22/2015) |
| 05/21/2015 | 6564 | Clerk's Notice to USCA re 6559 Notice of Appeal, : (ems) (Entered: 05/22/2015) |
| 05/21/2015 | 6565 | Clerk's Notice to USCA re 6560 Notice of Appeal, : (ems) (Entered: 05/22/2015) |
| 05/21/2015 | 6566 | Clerk's Notice to USCA re 6561 Notice of Appeal, : (ems) (Entered: 05/22/2015) |
| 05/22/2015 | 6562 | NOTICE OF WITHDRAWAL OF APPEARANCE by PLAINTIFF(S) *of Withdrawal of Appearance of Gene Locks and Andrew Palmer Bell on behalf of Scott Gilchrist for* |

**-406-**

| | | |
|---|---|---|
| | | *the Estate of Carlton Chester "Cookie" Gilchrist ONLY.* Certificate of Service. (LOCKS, GENE) Modified on 5/26/2015 (ems). (Entered: 05/22/2015) |
| 05/22/2015 | | NOTICE of Docketing Record on Appeal from USCA re 6552 Notice of Appeal filed by PLAINTIFF(S). USCA Case Number 15-2273 (ems) (Entered: 05/22/2015) |
| 05/22/2015 | 6567 | NOTICE OF APPEAL as to 6510 Order (Memorandum and/or Opinion), 6509 Memorandum and/or Opinion, 6535 Order,, 6534 Order, by PLAINTIFF(S). Copies to Judge, Clerk USCA, Appeals Clerk. Certificate of Service. (DENNIS, EDWARD) Modified on 5/26/2015 (ems). (Entered: 05/22/2015) |
| 05/22/2015 | 6568 | NOTICE OF APPEAL as to 6510 Order (Memorandum and/or Opinion), 6535 Order,, 6534 Order, by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, JEFF ROHRER. Copies to Judge, Clerk USCA, Appeals Clerk. Certificate of Service. (MOLO, STEVEN) Modified on 5/26/2015 (ems). (Entered: 05/22/2015) |
| 05/22/2015 | 6569 | Clerk's Notice to USCA re 6567 Notice of Appeal, : (ems) (Entered: 05/26/2015) |
| 05/22/2015 | 6570 | Clerk's Notice to USCA re 6568 Notice of Appeal, : (ems) (Entered: 05/26/2015) |
| 05/26/2015 | | NOTICE of Docketing Record on Appeal from USCA re 6551 Notice of Appeal, filed by PLAINTIFF(S). USCA Case Number 15-2272 (ems) (Entered: 05/26/2015) |
| 05/26/2015 | | USCA Appeal Fees received $ 505 receipt number PPE121562 re 6568 Notice of Appeal, filed by SEAN CONSIDINE, RODERICK CARTWRIGHT, JEFF ROHRER, ALAN FANECA (ems) (Entered: 05/26/2015) |
| 05/26/2015 | | NOTICE of Docketing Record on Appeal from USCA re 6561 Notice of Appeal, filed by PLAINTIFF(S). USCA Case Number 15-2294 (ems) (Entered: 05/26/2015) |
| 05/27/2015 | | USCA Appeal Fees received $ 505 receipt number PPE121682 re 6557 Notice of Appeal, filed by PLAINTIFF(S) (ems) (Entered: 05/27/2015) |
| 05/27/2015 | | USCA Appeal Fees received $ 505 receipt number PPE121664 re 6551 Notice of Appeal, filed by PLAINTIFF(S) (ems) (Entered: 05/27/2015) |
| 05/27/2015 | | USCA Appeal Fees received $ 505 receipt number PPE121664 re 6561 Notice of Appeal, filed by PLAINTIFF(S) (ems) (Entered: 05/27/2015) |
| 05/27/2015 | | NOTICE of Docketing Record on Appeal from USCA re 6560 Notice of Appeal, filed by PLAINTIFF(S). USCA Case Number 15-2292 (ems) (Entered: 05/27/2015) |
| 05/27/2015 | | NOTICE of Docketing Record on Appeal from USCA re 6567 Notice of Appeal, filed by PLAINTIFF(S). USCA Case Number 15-2305 (ems) (Entered: 05/27/2015) |
| 05/27/2015 | | NOTICE of Docketing Record on Appeal from USCA re 6559 Notice of Appeal, filed by PLAINTIFF(S). USCA Case Number 15-2291 (ems) (Entered: 05/27/2015) |
| 05/27/2015 | | NOTICE of Docketing Record on Appeal from USCA re 6557 Notice of Appeal, filed by PLAINTIFF(S). USCA Case Number 15-2290 (ems) (Entered: 05/27/2015) |
| 05/27/2015 | 6571 | AMENDED NOTICE OF APPEAL as to 6535 Order,, 6534 Order, by PLAINTIFF(S). Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (ems) (Entered: 05/27/2015) |
| 05/27/2015 | 6572 | Clerk's Notice to USCA re 6571 Notice of Appeal : (ems) (Entered: 05/27/2015) |
| 05/27/2015 | | NOTICE of Docketing Record on Appeal from USCA re 6568 Notice of Appeal, filed by SEAN CONSIDINE, RODERICK CARTWRIGHT, JEFF ROHRER, ALAN FANECA. USCA Case Number 15-2304 (ems) (Entered: 05/27/2015) |

**-407-**

| 05/28/2015 | 6573 | NOTICE of Appearance by WILLIAM CHRISTOPHER SWETT on behalf of PLAINTIFF(S) with Certificate of Service(SWETT, WILLIAM) (Entered: 05/28/2015) |
| 05/28/2015 | | USCA Appeal Fees received $ 505 receipt number PPE121717 re 6559 Notice of Appeal, filed by PLAINTIFF(S) (ems) (Entered: 05/28/2015) |
| 05/29/2015 | 6574 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/29/2015) |
| 05/29/2015 | | USCA Appeal Fees received $ 505 receipt number PPE121775 re 6560 Notice of Appeal, filed by PLAINTIFF(S) (aeg, ) (Entered: 05/29/2015) |
| 05/29/2015 | 6575 | Copy of TPO Form re 6546 Notice of Appeal, : (ems) (Entered: 06/01/2015) |
| 06/01/2015 | | USCA Appeal Fees received $ 505 receipt number PPE121864 re 6567 Notice of Appeal, filed by PLAINTIFF(S) (ems) (Entered: 06/01/2015) |
| 06/02/2015 | 6576 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 06/02/2015) |
| 06/02/2015 | 6577 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 06/02/2015) |
| 06/02/2015 | 6578 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 06/02/2015) |
| 06/02/2015 | 6579 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 06/02/2015) |
| 06/04/2015 | 6580 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Kent Hill(KENNEY, JEANNINE) (Entered: 06/04/2015) |
| 06/04/2015 | 6581 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Anthony "Tony" Cline, Jr. (KENNEY, JEANNINE) (Entered: 06/04/2015) |
| 06/04/2015 | 6582 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Edward Simonini(KENNEY, JEANNINE) (Entered: 06/04/2015) |
| 06/04/2015 | 6583 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Randy Ragon(KENNEY, JEANNINE) (Entered: 06/04/2015) |
| 06/04/2015 | 6584 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Mervin Krakau(KENNEY, JEANNINE) (Entered: 06/04/2015) |
| 06/04/2015 | 6585 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Arthur Still(KENNEY, JEANNINE) (Entered: 06/04/2015) |
| 06/04/2015 | 6586 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Appearance as to Paul Krause* (KENNEY, JEANNINE) (Entered: 06/04/2015) |
| 06/04/2015 | 6587 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Appearance as to William Truax* (KENNEY, JEANNINE) (Entered: 06/04/2015) |
| 06/05/2015 | 6588 | NOTICE by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, JEFF ROHRER re 6568 Notice of Appeal, *of filing of Transcript Purchase Order.* Certificate of Service. (MOLO, STEVEN) Modified on 6/8/2015 (ems). (Entered: 06/05/2015) |
| 06/05/2015 | | Copy of TPO Form re 6568 Notice of Appeal, : (FOR ORIGINAL FILING AND PDF SEE DOCUMENT # 6588 ) (ems) (Entered: 06/08/2015) |

**-408-**

| 06/09/2015 | 6589 | NOTICE by PLAINTIFF(S) *Transcript Purchase Order for Armstrong Objectors* (COFFMAN, RICHARD) (Entered: 06/09/2015) |
| 06/09/2015 | 6590 | NOTICE by PLAINTIFF(S) *Transcript Purchase Order for Willie T. Taylor* (COFFMAN, RICHARD) (Entered: 06/09/2015) |
| 06/09/2015 | | Copy of TPO Form re 6561 Notice of Appeal, : (FOR ORIGINAL FILING AND PDF SEE DOCUMENT # 6590 ) (ems) (Entered: 06/10/2015) |
| 06/09/2015 | | Copy of TPO Form re 6551 Notice of Appeal, : (FOR ORIGINAL FILING AND PDF SEE DOCUMENT # 6589 ) (ems) (Entered: 06/10/2015) |
| 06/11/2015 | 6591 | MOTION to Withdraw as Attorney *for Gary Lewis and Michelle Lewis* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6592 | MOTION to Withdraw as Attorney *for Byron Williams and Beverly Williams* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6593 | MOTION to Withdraw as Attorney *for James Rourke and Carol Rourke* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6594 | MOTION to Withdraw as Attorney *for Keith Washington and Bridget Washington* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6595 | MOTION to Withdraw as Attorney *for Myron Taliaferro and Kathleen Taliaferro* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6596 | MOTION to Withdraw as Attorney *for Larry Craig Morton* filed by PLAINTIFF(S).. (GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6597 | MOTION to Withdraw as Attorney *for Ernie Mills* filed by PLAINTIFF(S).. (GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6598 | MOTION to Withdraw as Attorney *for Bobby Bell* filed by PLAINTIFF(S).. (GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6599 | MOTION to Withdraw as Attorney *for Michael Clark* filed by PLAINTIFF(S).. (GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6600 | MOTION to Withdraw as Attorney *for Wayne Walker and Sylvia Walker* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6601 | MOTION to Withdraw as Attorney *for Stu Voigt and Linda Voigt* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6602 | MOTION to Withdraw as Attorney *for William Lueck and Mary Lueck* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6603 | MOTION to Withdraw as Attorney *for Anthony Liscio and Annette Liscio* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6604 | MOTION to Withdraw as Attorney *for Leander Jordan* filed by PLAINTIFF(S).. (GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6605 | MOTION to Withdraw as Attorney *for Curley Culp* filed by PLAINTIFF(S).. (GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6606 | MOTION to Withdraw as Attorney *for Steven Baumgartner and Mary Baumgartner* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |

| 06/11/2015 | 6607 | MOTION to Withdraw as Attorney *for Ronald Acks and Judith Acks* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| --- | --- | --- |
| 06/11/2015 | 6608 | MOTION to Withdraw as Attorney *for Michael Butler and Darlene Butler* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6609 | MOTION to Withdraw as Attorney *for Kenneth Greene and Tina Greene* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 06/11/2015) |
| 06/11/2015 | 6610 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Albert Ray Lewis(MCGLAMRY, MICHAEL) (Entered: 06/11/2015) |
| 06/12/2015 | 6611 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Todd McNair and Lynnette McNair(MARKS, STEVEN) (Entered: 06/12/2015) |
| 06/12/2015 | 6612 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Kevin Porter and Annjela Porter(MARKS, STEVEN) (Entered: 06/12/2015) |
| 06/17/2015 | 6613 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 06/17/2015) |
| 06/17/2015 | 6614 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 06/17/2015) |
| 06/17/2015 | 6615 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 06/17/2015) |
| 06/19/2015 | 6616 | NOTICE of Appearance by CAROLINE POWER on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC with Certificate of Service(POWER, CAROLINE) (Entered: 06/19/2015) |
| 06/22/2015 | | USCA Appeal Fees received $ 505 receipt number PPE123090 re 6546 Notice of Appeal, filed by PLAINTIFF(S) (ems) (Entered: 06/23/2015) |
| 06/25/2015 | 6617 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 06/25/2015) |
| 06/25/2015 | 6618 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Plaintiffs Timothy Barnett and Chelonda Barnett Only(LUCKASEVIC, JASON) (Entered: 06/25/2015) |
| 06/25/2015 | | USCA Appeal Fees received $ 505 receipt number PPE123251 re 6548 Notice of Appeal filed by PLAINTIFF(S) (ems) (Entered: 06/25/2015) |
| 06/30/2015 | 6619 | MOTION To be excused from Pretrial Scheduling Conference *on July 1, 2015 at 11:00 a.m.* filed by PLAINTIFF(S).Motion to be Excused from Pretrial Scheduling Conference.(ABOOD, NORMAN) (Entered: 06/30/2015) |
| 07/01/2015 | 6620 | STIPULATION re 6550 Stipulation *Amended and [Proposed] Order* by PLAINTIFFS' STEERING COMMITTEE. (Attachments: # 1 Certificate of Service)(GEORGE, SCOTT) Modified on 7/1/2015 (afm, ).(FILED IN ERROR, ATTORNEY REFILED CORRECT DOCUMENT AT 6621 ) (Entered: 07/01/2015) |
| 07/01/2015 | 6621 | STIPULATION *and [Proposed Order] RE: Revocation of Opt Outs* by PLAINTIFFS' STEERING COMMITTEE. (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) ** (COPY SENT TO CHAMBERS FOR APPROVAL)** (SEEGER, CHRISTOPHER) Modified on 7/2/2015 (ems). (Entered: 07/01/2015) |
| 07/01/2015 | 6622 | ORDER THAT PLAINTIFF'S MOTION, (DOC. NO. 6619), TO BE EXCUSED FROM THE 7/1/2015 PRETRIAL SCHEDULING CONFERENCE, IS GRANTED. |

**-410-**

| | | |
|---|---|---|
| | | SIGNED BY HONORABLE ANITA B. BRODY ON 7/1/2015. 7/2/2015 ENTERED AND COPIES E-MAILED. (APPLIES TO 13-CV-5439) (ems) (Entered: 07/02/2015) |
| 07/01/2015 | 6623 | ORDER THAT DEFENDANTS' MOTIONS (DOC. NO. 44 IN 12-CV-4632, DOC. NO. 46 IN 12-CV-2244, DOC. NO. 5 IN 13-CV-5309, AND DOC. NO. 28 IN 13-CV-5439) ARE GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 7/1/2015. 7/2/2015 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-CV-4632, 13-CV-2244, 13-CV-5309, 13-CV-5439) (ems) (Entered: 07/02/2015) |
| 07/02/2015 | 6624 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/02/2015) |
| 07/02/2015 | 6625 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/02/2015) |
| 07/02/2015 | 6626 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/02/2015) |
| 07/02/2015 | 6627 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/02/2015) |
| 07/02/2015 | 6628 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/02/2015) |
| 07/08/2015 | 6629 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Joe Horn(SEEGER, CHRISTOPHER) (Entered: 07/08/2015) |
| 07/08/2015 | 6630 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/08/2015) |
| 07/08/2015 | 6631 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/08/2015) |
| 07/08/2015 | 6632 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/08/2015) |
| 07/08/2015 | 6633 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/08/2015) |
| 07/09/2015 | 6634 | NOTICE of Withdrawal of Appearance by STEVEN CRAIG MARKS on behalf of PLAINTIFF(S)(MARKS, STEVEN) (Entered: 07/09/2015) |
| 07/09/2015 | 6635 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/09/2015) |
| 07/09/2015 | 6636 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/09/2015) |
| 07/09/2015 | 6637 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/09/2015) |
| 07/09/2015 | 6638 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/09/2015) |
| 07/09/2015 | 6639 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/09/2015) |
| 07/09/2015 | 6640 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/09/2015) |

| 07/09/2015 | 6641 | NOTICE by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/09/2015) |
|---|---|---|
| 07/15/2015 | 6642 | AMENDED STIPULATION AND ORDER - THIS STIPULATION AND AGREEMENT, DATED MAY 19, 2015, AS AMENDED AS OF THE 30TH DAY OF JUNE 2015, IS MADE AND ENTERED INTO BY AND AMONG THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC (THE "NFL PARTIES"), AND CLASS COUNSEL (COLLECTIVELY, THE "PARTIES"). WHEREAS, ON APRIL 22, 2015, THIS COURT ISSUED A MEMORANDUM (ECF NO. 6509) AND FINAL ORDER AND JUDGMENT (ECF NO. 6510), AND ON MAY 8, 2015,... IT IS ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN SR. that THE REVOCATION REQUESTS SUBMITTED BY... ALL ARE APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING CHIDI AHANOTU, TERRELL DAVIS, BRAD HOOVER, ERIC KELLY, TYSON WALTER AND MICHAEL WESTBROOK. APPROVED BY THE COURT:. SIGNED BY HONORABLE ANITA B. BRODY ON 7/1/2015. 7/15/2015 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/15/2015) |
| 07/17/2015 | 6643 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 07/17/2015) |
| 07/17/2015 | 6644 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/17/2015) |
| 07/17/2015 | 6645 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/17/2015) |
| 07/17/2015 | 6646 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/17/2015) |
| 07/17/2015 | 6647 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/17/2015) |
| 07/17/2015 | 6648 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/17/2015) |
| 07/20/2015 | 6649 | NOTICE of Appearance by JASON A. ZWEIG on behalf of PLAINTIFF(S) with Certificate of Service(ZWEIG, JASON) (Entered: 07/20/2015) |
| 07/23/2015 | 6650 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To the claims of Barry Dean Hacket and Cynthia Hacket's only without prejudice(TARRICONE, ANTHONY) (Entered: 07/23/2015) |
| 07/23/2015 | 6651 | NOTICE of Withdrawal of Appearance by ANTHONY TARRICONE on behalf of PLAINTIFF(S)(TARRICONE, ANTHONY) (Entered: 07/23/2015) |
| 07/23/2015 | 6652 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/23/2015) |
| 07/23/2015 | 6653 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/23/2015) |
| 07/23/2015 | 6654 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/23/2015) |
| 07/23/2015 | 6655 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/23/2015) |

| | | |
|---|---|---|
| 07/23/2015 | 6656 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/23/2015) |
| 07/23/2015 | 6657 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/23/2015) |
| 07/23/2015 | 6658 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/23/2015) |
| 07/23/2015 | 6659 | NOTICE of Appearance by JON T. KING on behalf of PLAINTIFF(S) with Certificate of Service(KING, JON) (Entered: 07/23/2015) |
| 07/30/2015 | 6660 | MOTION to Remand to State Court filed by PLAINTIFF(S).Memorandum. (Attachments: # 1 Memorandum In Support of Motion to Remand) (SCHERMERHORN, ANDREW) (Entered: 07/30/2015) |
| 08/11/2015 | 6661 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/11/2015) |
| 08/11/2015 | 6662 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/11/2015) |
| 08/11/2015 | 6663 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/11/2015) |
| 08/11/2015 | 6664 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/11/2015) |
| 08/11/2015 | 6665 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/11/2015) |
| 08/11/2015 | 6666 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/11/2015) |
| 08/11/2015 | 6667 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/11/2015) |
| 08/11/2015 | 6668 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/11/2015) |
| 08/11/2015 | 6669 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/11/2015) |
| 08/17/2015 | 6670 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/17/2015) |
| 08/17/2015 | 6671 | RESPONSE in Opposition re 6660 MOTION to Remand to State Court filed by KANSAS CITY CHIEFS FOOTBALL CLUB, INC.. (BIRENBOIM, BRUCE) (Entered: 08/17/2015) |
| 08/19/2015 | 6672 | REPLY to Response to Motion re 6660 MOTION to Remand to State Court filed by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 08/19/2015) |
| 09/09/2015 | 6673 | NOTICE of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S) (HONECKER, KATHRYN) (Entered: 09/09/2015) |
| 09/09/2015 | 6674 | NOTICE of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S) (HONECKER, KATHRYN) (Entered: 09/09/2015) |
| 09/09/2015 | 6675 | NOTICE of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S) (HONECKER, KATHRYN) (Entered: 09/09/2015) |

| | | |
|---|---|---|
| 09/09/2015 | 6676 | NOTICE of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S) (HONECKER, KATHRYN) (Entered: 09/09/2015) |
| 09/09/2015 | 6677 | NOTICE of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S) (HONECKER, KATHRYN) (Entered: 09/09/2015) |
| 09/09/2015 | 6678 | NOTICE of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S) (HONECKER, KATHRYN) (Entered: 09/09/2015) |
| 09/09/2015 | 6679 | NOTICE of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S) (HONECKER, KATHRYN) (Entered: 09/09/2015) |
| 09/09/2015 | 6680 | NOTICE of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S) (HONECKER, KATHRYN) (Entered: 09/09/2015) |
| 09/09/2015 | 6681 | NOTICE of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S) (HONECKER, KATHRYN) (Entered: 09/09/2015) |
| 09/09/2015 | 6682 | NOTICE of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S) (HONECKER, KATHRYN) (Entered: 09/09/2015) |
| 09/24/2015 | 6683 | NOTICE of Withdrawal of Appearance by FREDERICK SCHENK on behalf of PLAINTIFF(S) (Attachments: # 1 Certificate of Service)(SCHENK, FREDERICK) (Entered: 09/24/2015) |
| 09/24/2015 | 6684 | NOTICE by PLAINTIFF(S) *Notice of Disassociation* (HONECKER, KATHRYN) (Entered: 09/24/2015) |
| 09/24/2015 | 6685 | NOTICE by PLAINTIFF(S) *Notice of Disassociation* (HONECKER, KATHRYN) (Entered: 09/24/2015) |
| 09/24/2015 | 6686 | NOTICE by PLAINTIFF(S) *Notice of Disassociation* (HONECKER, KATHRYN) (Entered: 09/24/2015) |
| 09/24/2015 | 6687 | NOTICE by PLAINTIFF(S) *Notice of Disassociation* (HONECKER, KATHRYN) (Entered: 09/24/2015) |
| 09/24/2015 | 6688 | NOTICE by PLAINTIFF(S) *Notice of Disassociation* (HONECKER, KATHRYN) (Entered: 09/24/2015) |
| 09/24/2015 | 6689 | NOTICE by PLAINTIFF(S) *Notice of Disassociation* (HONECKER, KATHRYN) (Entered: 09/24/2015) |
| 09/24/2015 | 6690 | NOTICE by PLAINTIFF(S) *Notice of Disassociation* (HONECKER, KATHRYN) (Entered: 09/24/2015) |
| 09/24/2015 | 6691 | NOTICE by PLAINTIFF(S) *Notice of Disassociation* (HONECKER, KATHRYN) (Entered: 09/24/2015) |
| 09/24/2015 | 6692 | NOTICE by PLAINTIFF(S) *Notice of Disassociation* (HONECKER, KATHRYN) (Entered: 09/24/2015) |
| 09/24/2015 | 6693 | NOTICE by PLAINTIFF(S) *Notice of Disassociation* (HONECKER, KATHRYN) (Entered: 09/24/2015) |
| 10/09/2015 | 6694 | NOTICE of Withdrawal of Appearance by JEANNINE M. KENNEY on behalf of PLAINTIFF(S)(KENNEY, JEANNINE) (Entered: 10/09/2015) |
| 10/29/2015 | 6695 | (PRO SE) MOTION FOR TEMPORARY RESTRAINING ORDER filed by HARRY E. HAMILTON. Verification. (APPLIES TO 14-CV-6353) (ems) (Entered: 10/30/2015) |

**-414-**

| 11/13/2015 | 6696 | MOTION to Withdraw as Attorney *for Rickey Dixon and Lorraine Dixon* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 11/13/2015) |
| --- | --- | --- |
| 11/17/2015 | 6697 | ORDER that PLAINTIFF HARRY HAMILTON'S MOTION FOR TEMPORARY RESTRAINING ORDER IS DENIED.1(footnote). SIGNED BY HONORABLE ANITA B. BRODY ON 11/16/2015.11/17/2015 ENTERED AND COPIES VIA ECF. (mo, ) (Entered: 11/17/2015) |
| 11/25/2015 | 6698 | ORDER granting 6592 MOTION TO WITHDRAW AS ATTORNEY ATTORNEY BRIAN C. GUDMUNDSON and CHARLES S. ZIMMERMAN TERMINATED. SIGNED BY HONORABLE ANITA B. BRODY ON 11/25/2015.11/25/2015 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/25/2015) |
| 11/25/2015 | 6699 | ORDER granting 6593 MOTION TO WITHDRAW AS ATTORNEY ATTORNEY DANIEL E. GUSTAFSON and J. GORDON RUDD TERMINATED. SIGNED BY HONORABLE ANITA B. BRODY ON 11/25/2015.11/25/2015 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/25/2015) |
| 11/25/2015 | 6700 | ORDER granting 6591 MOTION TO WITHDRAW AS ATTORNEY ATTORNEY CHARLES S. ZIMMERMAN TERMINATED. SIGNED BY HONORABLE ANITA B. BRODY ON 11/25/2015.11/25/2015 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/25/2015) |
| 11/25/2015 | 6701 | ORDER THAT THE FOLLOWING MOTIONS TO WITHDRAW AS ATTORNEY FILED BY CHARLES S. ZIMMERMAN, J. GORDON RUDD, JR., AND BRIAN C. GUDMUNDSON OF ZIMMERMAN REED, P.L.L.P. (DOC. NOS. 6600, 6601, 6602, 6603, 6604, 6605, 6606, 6607, 6608, 6609) ARE GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 11/25/2015. 11/25/2015 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-CV-2219) (ems) (Entered: 11/25/2015) |
| 11/25/2015 | 6702 | ORDER THAT THE FOLLOWING MOTIONS TO WITHDRAW AS ATTORNEY FILED BY CHARLES S. ZIMMERMAN, J. GORDON RUDD, JR., AND BRIAN C. GUDMUNDSON OF ZIMMERMAN REED, P.L.L.P. (DOC. NOS. 6594, 6595, 6597, 6598, 6599) ARE GRANTED. IT IS FURTHER ORDERED THAT PLAINTIFF LARRY CRAIG MORTON IS DIRECTED TO SHOW CAUSE ON OR BEFORE 12/18/2015 WHY THE MOTION TO WITHDRAW AS ATTORNEY FOR LARRY CRAIG MORTON (DOC. NO. 6596) SHOULD NOT BE GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 11/25/2015. 11/25/2015 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-CV-4185) (ems) (Entered: 11/25/2015) |
| 11/25/2015 | 6703 | NOTICE by PLAINTIFF(S) *Notice of Appearance for Lien Claimant Kathryn Dean* (LALANNE, THOMAS) (Entered: 11/25/2015) |
| 11/25/2015 | 6704 | NOTICE by PLAINTIFF(S) *Notice of Lien by Kathryn Dean Against Interest of James Harris Jr.* (LALANNE, THOMAS) (Entered: 11/25/2015) |
| 12/01/2015 | 6705 | ORDER that. ON OR BEFORE DECEMBER 18, 2015, PLAINTIFFS IN THE ABOVE-CAPTIONED CASES MUST FILE AN AMENDED MOTION TO REMAND.... ON OR BEFORE JANUARY 20, 2016, DEFENDANT MAY FILE A RESPONSE TO PLAINTIFFS' AMENDED MOTION TO REMAND.. ON OR BEFORE FEBRUARY 1, 2016, PLAINTIFFS MAY FILE A REPLY BRIEF IN FURTHER SUPPORT OF THEIR AMENDED MOTION.. SIGNED BY HONORABLE ANITA B. BRODY ON 12/1/2015. 12/1/2015 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/01/2015) |
| 12/01/2015 | 6706 | ORDER THAT 3593 MOTION TO SEVER FILED BY DEFENDANTS RIDDELL, INC. ALL-AMERICAN SPORTS CORPORATION; RIDDELL SPORTS GROUP, |

INC.; EASTON-BELL SPORTS, INC.; EASTON-BELL SPORTS, LLC; EB SPORTS CORP.; AND RBG HOLDINGS CORP. (COLLECTIVELY, THE "RIDDELL DEFENDANTS") IS GRANTED WITHOUT PREJUDICE. IT IS FURTHER ORDERED THAT ANY CLAIMS AGAINST ANY RIDDELL DEFENDANTS ARE SEVERED FROM ANY CLAIMS AGAINST THE NFL OR NFL PROPERTIES, LLC (THE "NFL DEFENDANTS"). EACH MULTI-PLAINTIFF ACTION FILED AGAINST ANY RIDDELL DEFENDANTS THAT IS SEVERED BY PARAGRAPH 1 OF THIS ORDER IS FURTHER SEVERED INTO SEPERATE INDIVIDUAL ACTIONS AGAINST THOSE RIDDELL DEFENDANTS. ANY ACTION CURRENTLY PENDING AGAINST THE NFL DEFENDANTS IS UNAFFECTED BY THIS ORDER. ON OR BEFORE 1/29/2016, EACH PLAINTIFF WHO WISHES TO CONTINUE TO PURSUE HIS/HER ORIGINAL CLAIMS AGAINST ANY RIDDELL DEFENDANTS MUST FILE AN INDIVIDUAL SEVERED COMPLAINT. UNLESS OTHERWISE AUTHORIZED BY THE COURT, A PLAINTIFF'S SEVERED COMPLAINT MAY CONTAIN ONLY CLAIMS ASSERTED IN HIS/HER ORIGINAL ACTION AND MAY NAME ONLY THE RIDDELL DEFENDANT(S) SUED IN THAT ORIGINAL ACTION. EACH PLAINTIFF FILING A SEVERED COMPLAINT PURSUANT TO THIS ORDER MUST INDICATE THAT THE COMPLAINT IS RELATED TO CIVIL ACTION NO. 12-MD-2323. THE CAPTION IN EACH SEVERED COMPLAINT MUST CONFORM TO THE ATTACHED TEMPLATE. THE CLERK OF COURT IS DIRECTED TO ASSIGN A SEPERATE CIVIL ACTION NUMBER TO EACH SEVERED COMPLAINT. THE CLERK OF COURT IS DIRECTED TO FILE A COPY OF THIS ORDER IN ANY SEVERED CIVIL ACTION COMMENCED PURSUANT TO THIS ORDER. FOR EACH RIDDELL DEFENDANT NAMED IN A SEVERED COMPLAINT, COUNSEL WHO HAVE ENTERED AN APPEARANCE ON BEHALF OF THAT RIDDELL DEFENDANT IN CIVIL ACTION NO. 12-MD-2323 ARE DESIGNATED AS DEFENSE COUNSEL FOR THAT RIDDELL DEFENDANT. EACH PLAINTIFF WHO FILES A SEVERED COMPLAINT MUST REMIT A FILING FEE OF $400.00 TO THE CLERK OF COURT. FAILURE TO FILE A SEVERED COMPLAINT ON OR BEFORE 1/29/2016, WILL RESULT IN THE DISMISSAL WITH PREJUDICE OF ANY AND ALL CLAIMS ASSERTED BY THAT PLAINTIFF AGAINST ANY RIDDELL DEFENDANTS. SIGNED BY HONORABLE ANITA B. BRODY ON 12/1/2015. 12/1/2015 ENTERED AND COPIES MAILED AND E-MAILED. (APPLIES TO ACTIONS INVOLVING ANY RIDDELL DEFENDANT) (ems) (Entered: 12/01/2015)

| 12/04/2015 | 6707 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Status Conference held on 11/30/2015. Court Reporter: ESR. (aeg) (Entered: 12/04/2015) |
| 12/04/2015 | 6708 | SUGGESTION OF DEATH Upon the Record *of John Leonard Wilbur* by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(KOBASHIGAWA, CLARISSE) (Entered: 12/04/2015) |
| 12/04/2015 | 6709 | MOTION to Amend/Correct *Complaint* filed by PLAINTIFF(S).. (Attachments: # 1 Memorandum in Support of Motion, # 2 Declaration of Counsel, # 3 Exhibit 1 (Proposed Amended Complaint), # 4 Certificate of Service)(KOBASHIGAWA, CLARISSE) (Entered: 12/04/2015) |
| 12/07/2015 | 6710 | NOTICE: COUNSEL FOR THE DEFENDANTS CONTACTED CHAMBERS AND ASKED ABOUT THE SCOPE OF THE AMENDED MOTION TO REMAND, TO BE FILED BY THE PLAINTIFFS UNDER MY DECEMBER 1, 2015 ORDER (ECF NO. 28). I WOULD LIKE TO CLARIFY TE ORDER. THE PLAINTIFFS' AMENDED MOTION TO REMAND MUST ONLY ADDRESS THE QUESTION OF WHETHER THE PLAINTIFFS' CLAIMS SHOULD BE HEARD FIRST.SIGNED BY THE |

**-416-**

| | | HONORABLE ANITA B. BRODY, 12/7/2015.12/7/2015 ENTERED AND COPIES SENT VIA ECF.(mo, ) (Entered: 12/07/2015) |
|---|---|---|
| 12/11/2015 | 6711 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service)(KARP, BRAD) (Entered: 12/11/2015) |
| 12/17/2015 | 6712 | Amended MOTION to Remand filed by PLAINTIFF(S).Memorandum. (SCHERMERHORN, ANDREW) (Entered: 12/17/2015) |
| 12/22/2015 | 6713 | STIPULATION AND ORDER... IT IS ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUESTS SUBMITTED BY DIONE ELIZABETH SMITH ON BEHALF OF THE LATE JOHN WILBUR AND HERESELF ARE APPROVED AND THE CLAIMS ADMNIISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING JOHN WILBUR AND DIONE ELIZABETH SMITH.. SIGNED BY HONORABLE ANITA B. BRODY ON 12/21/2015. 12/22/2015 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/22/2015) |
| 12/23/2015 | 6714 | ORDER that PLAINTIFS' MOTION TO SUBSTITUTE AND FOR LEAVE TO FILE FIRST AMENDED COMPLAINT (MDL 12-2323, ECF NO. 6709 AND C.A. NO. 13-4457, ECF NO. 6) IS GRANTED. PLAINTIFFS SHALL FILE THEIR FIRST AMENDED COMPLAINT ON ECF IN BOTH CASES.. SIGNED BY HONORABLE ANITA B. BRODY ON 12/23/2015.12/23/2015 ENTERED AND COPIES VIA ECF. (mo, ) (Entered: 12/23/2015) |
| 01/04/2016 | 6715 | FIRST AMENDED COMPLAINT against NFL PROPERTIES, LLC, THE NATIONAL FOOTBALL LEAGUE, filed by DIONE ELIZABETH SMITH, NATHAN HALSEY WILBUR, LINDSEY K. WILBUR. (APPLIES TO 13-CV-4457) (ems) (Entered: 01/05/2016) |
| 01/14/2016 | 6716 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 1/15/2016 (ems). (Entered: 01/14/2016) |
| 01/18/2016 | 6717 | MOTION to Remand filed by PLAINTIFF(S).Brief, Certificate of Service. (Attachments: # 1 Exhibit A to Motion, # 2 Text of Proposed Order, # 3 Brief, # 4 Exhibit A part 1 to Brief in Support of Motion to Remand, # 5 Exhibit A part 2 to Brief in Support of Motion to Remand, # 6 Exhibit B to Brief in Support of Motion to Remand)(LUCKASEVIC, JASON) (Entered: 01/18/2016) |
| 01/18/2016 | 6718 | MOTION for Reconsideration re 6706 Order on Motion to Sever,,,,,,,,, filed by PLAINTIFF(S).Brief and Certificate of Service. (Attachments: # 1 Exhibit A to Motion for Reconsideration and Stay of December 1, 2015 Order, # 2 Text of Proposed Order, # 3 Brief in Support of Motion for Reconsideration and Stay of December 1, 2015 Order)(LUCKASEVIC, JASON) (Entered: 01/18/2016) |
| 01/20/2016 | 6719 | RESPONSE in Opposition re 6712 Amended MOTION to Remand filed by KANSAS CITY CHIEFS FOOTBALL CLUB, INC.. (KARP, BRAD) (Entered: 01/20/2016) |
| 01/22/2016 | 6720 | ORDER THAT THE MOTION TO WITHDRAW AS ATTORNEY FOR LARRY CRAIG MORTON (DOC. NO. 6596) IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 1/21/2016. 1/22/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-CV-4185) (ems) (Entered: 01/22/2016) |

| 01/25/2016 | 6721 | severed complaint against Riddell *lawrence barnes* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6722 | severed complaint against Riddell *Woodrow Bennett* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6723 | severed complaint against Riddell *Joseph Brown* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6724 | severed complaint against Riddell *Rudolph Bukich* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6725 | severed complaint against Riddell *Brian Holloway* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6726 | severed complaint against Riddell *Gregory Lens* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6727 | severed complaint against Riddell *Jesse Solomon* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6728 | severed complaint against Riddell *Ralph Wenzel/Eleanor Perfetto* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6729 | severed complaint against Riddell *James Wilder* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6730 | severed complaint against Riddell *Pettis and Ivette Norman* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6731 | severed complaint against Riddell *Charlie Phillips* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6732 | severed complaint against Riddell *Severn Reece* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6733 | severed complaint against Riddell *William Rademacher* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6734 | severed complaint against Riddell *Fred and Dina Brown* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6735 | REPLY to Response to Motion re 6712 Amended MOTION to Remand filed by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 01/25/2016) |
| 01/25/2016 | 6736 | severed complaint against Riddell *Nickolas and Trisha Bell* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6737 | severed complaint against Riddell *Nickolas and Trisha Bell* by PLAINTIFF(S). **(FILED IN ERROR)** (ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/25/2016 | 6738 | NOTICE OF JOINDER IN PLAINTIFFS' MOTION TO REMAND SEVERED RIDDELL ACTIONS FOR LACK OF SUBJECT MATTER JURISDICTION BY |

| | | |
|---|---|---|
| | | ROSE, KLEIN & MARIAS. (Attachments: # 1 Certificate of Service Certificate of service)(ROSEN, DAVID) Modified on 1/26/2016 (ems). (Entered: 01/25/2016) |
| 01/26/2016 | 6739 | STIPULATION AND ORDER... IT IS SO ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUEST SBMITTED BY ROY GREEN IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING ROY GREEN. APPROVED BY THE COURT:. SIGNED BY HONORABLE ANITA B. BRODY ON 1/26/2016. 1/26/2016 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/26/2016) |
| 01/27/2016 | 6740 | ORDER that THE COURT'S DECEMBER 1, 2015 ORDER (ECF NO. 6706) IS VACATED.2(footnote) THE DISPOSITION OF SEVERED COMPLAINTS ALREADY FILED PURSUANT TO THE COURT'S DECEMBER 1, 2015 ORDER WILL BE DETERMINED IN A FURTHER ORDER OF THE COURT.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/27/2016. 1/27/2016 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/27/2016) |
| 02/01/2016 | 6741 | NOTICE of Withdrawal of Appearance by KENNETH J. HOLLOWAY on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC(HOLLOWAY, KENNETH) (Entered: 02/01/2016) |
| 02/03/2016 | 6742 | ORDER that IN LIGHT OF THIS COURT'S ORDER OF JANUARY 27, 2016 (ECF NO. 6740), PLAINTIFFS' MOTION TO REMAND SEVERED RIDDELL ACTIONS FOR LACK OF SUBJECT MATTER JURISDICTION (ECF NO. 6717) AND MOTION FOR RECONSIDERATION AND STAY OF DECEMBER 1, 2015 ORDER (ECF NO. 6718), AS WELL AS ANY AND ALL JOINDERS IN THOSE MOTIONS, ARE HEREBY DENIED, WITHOUT PREJUDICE, AS MOOT.. SIGNED BY HONORABLE ANITA B. BRODY ON 2/3/2016.2/3/2016 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 02/03/2016) |
| 02/05/2016 | 6743 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Plaintiff Fred Banks* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 02/05/2016) |
| 02/05/2016 | 6744 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/05/2016) |
| 02/05/2016 | 6745 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Arthur Cox* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 02/05/2016) |
| 02/05/2016 | 6746 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/05/2016) |
| 02/05/2016 | 6747 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Aveion Cason* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 02/05/2016) |
| 02/05/2016 | 6748 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/05/2016) |
| 02/15/2016 | 6749 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Jamie R. Duncan* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 02/15/2016) |

**-419-**

| 02/15/2016 | 6750 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/15/2016) |
| 02/22/2016 | 6751 | NOTICE of Withdrawal of Appearance by BETH A. WILKINSON on behalf of BUCCANNEERS LIMITED PARTNERS, BUFFALO BILLS, INC., DETROIT LIONS, INC., ROGER S. GOODELL, NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PHILADELPHIA EAGLES, LLC, TENNESSEE TITANS ENTERTAINMENT, INC.(WILKINSON, BETH) (Entered: 02/22/2016) |
| 02/25/2016 | 6752 | ORDER that PLAINTIFFS' MOTION TO REMAND (ECF NO. 6660)-1(footnote) IS DENIED AS MOOT.-2(footnote).. SIGNED BY HONORABLE ANITA B. BRODY ON 2/25/2016.2/25/2016 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 02/25/2016) |
| 02/26/2016 | 6753 | MOTION to Schedule Rule 16 Pretrial Conference filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(LUCKASEVIC, JASON) (Entered: 02/26/2016) |
| 03/02/2016 | 6754 | MOTION to Schedule Rule 16 Pretrial Conference filed by PLAINTIFF(S).. (FLEISHMAN, WENDY) (Entered: 03/02/2016) |
| 03/04/2016 | 6755 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 03/04/2016) |
| 03/04/2016 | 6756 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 03/04/2016) |
| 03/04/2016 | 6757 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 03/04/2016) |
| 03/04/2016 | 6758 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 03/04/2016) |
| 03/04/2016 | 6759 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 03/04/2016) |
| 03/08/2016 | 6760 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Plaintiff Kenneth Neil Only(FRANCO, DAVID) (Entered: 03/08/2016) |
| 03/08/2016 | 6761 | NOTICE of Withdrawal of Appearance by DAVID BAYLIS FRANCO on behalf of PLAINTIFF(S)(FRANCO, DAVID) (Entered: 03/08/2016) |
| 03/08/2016 | 6762 | ORDER THAT THE MOTION TO WITHDRAW AS COUNSEL FOR PLAINTIFFS RICKY DIXON AND LORRAINE DIXON FILED BY CHARLES S. ZIMMERMAN, J. GORDON RUDD, JR., AND BRIAN C. GUDMUNDSON OF ZIMMERMAN REED, P.L.L.P. (DOC. NO. 6696) IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 3/7/2016. 3/8/2016 ENTERED AND COPIES MAILED AND E-MAILED. (APPLIES TO 12-CV-4185) (ems) (Entered: 03/08/2016) |
| 03/11/2016 | 6763 | MOTION to Withdraw as Attorney for Clifford Charlton filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 03/11/2016) |
| 03/11/2016 | 6764 | MOTION to Withdraw as Attorney for Barney Chavous and Odessa Chavous filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 03/11/2016) |

**-420-**

| 03/11/2016 | 6765 | MOTION to Withdraw as Attorney *for Chris Dieterich* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 03/11/2016) |
|---|---|---|
| 03/11/2016 | 6766 | MOTION to Withdraw as Attorney *for Mark Higgs* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 03/11/2016) |
| 03/14/2016 | 6767 | RESPONSE in Opposition re 6753 MOTION to Schedule Rule 16 Pretrial Conference , 6754 MOTION to Schedule Rule 16 Pretrial Conference filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (WISE, ROBERT) (Entered: 03/14/2016) |
| 03/16/2016 | 6768 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 03/16/2016) |
| 03/16/2016 | 6769 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 03/16/2016) |
| 03/16/2016 | 6770 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 03/16/2016) |
| 03/16/2016 | 6771 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 03/16/2016) |
| 03/16/2016 | 6772 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 03/16/2016) |
| 03/16/2016 | 6773 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 03/16/2016) |
| 03/16/2016 | 6774 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 03/16/2016) |
| 03/16/2016 | 6775 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 03/16/2016) |
| 03/21/2016 | 6776 | REPLY to Response to Motion re 6753 MOTION to Schedule Rule 16 Pretrial Conference filed by PLAINTIFF(S). (SHIPP, JASON) (Entered: 03/21/2016) |
| 03/30/2016 | 6777 | MOTION for Leave to File *Surreply to Plaintiffs' Reply in Support of Motion to Schedule Rule 16 Pretrial Conference (ECF No. 6776)* filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Certificate of Service. (Attachments: # 1 Exhibit 1 (Surreply), # 2 Text of Proposed Order)(CEREGHINI, PAUL) (Entered: 03/30/2016) |
| 04/01/2016 | 6778 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(VARGHESE, MANOJ) (Entered: 04/01/2016) |
| 04/01/2016 | 6779 | NOTICE of Withdrawal of Appearance by MANOJ SAM VARGHESE on behalf of PLAINTIFF(S)(VARGHESE, MANOJ) (Entered: 04/01/2016) |
| 04/01/2016 | 6780 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(VARGHESE, MANOJ) (Entered: 04/01/2016) |
| 04/01/2016 | 6781 | NOTICE of Withdrawal of Appearance by MANOJ SAM VARGHESE on behalf of PLAINTIFF(S)(VARGHESE, MANOJ) (Entered: 04/01/2016) |

**-421-**

| | | |
|---|---|---|
| 04/04/2016 | 6782 | NOTICE of Withdrawal of Appearance by ELIZABETH L. CASTAGNA on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. Certificate of Service. (ems) (Entered: 04/04/2016) |
| 04/05/2016 | 6783 | ORDER THAT THE RIDDELL DEFENDANTS' MOTION FOR LEAVE TO FILE A SURREPLY (DOC. NO. 6777) IS GRANTED AND THE SURREPLY SUBMITTED AS EXHIBIT 1 TO THE RIDDELL DEFENDANTS' MOTION, IS DEEMED FILED. SIGNED BY HONORABLE ANITA B. BRODY ON 4/4/2016. 4/5/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-1023, 12-1025, 12-3533, 12-3534, 12-3535, 12-4576, 12-5372, 12-7214, 13-4231, 14-2064) (ems) (Entered: 04/05/2016) |
| 04/07/2016 | 6784 | Copy of Transfer Order from the JPML that pursuant to 28 U.S.C. 1407 this action is transferred to the ED-PA and assigned to the Honorable Anita B. Brody for inclusion in the coordinated or consolidated pretrial proceedings: Smith, MO-E, 4:15-1903. (ems) (Entered: 04/07/2016) |
| 04/08/2016 | 6785 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Anthony Blaylock* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 04/08/2016) |
| 04/08/2016 | 6786 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 04/08/2016) |
| 04/08/2016 | 6787 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Alphonso Carreker and Kimberly B. Carreker* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 04/08/2016) |
| 04/08/2016 | 6788 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 04/08/2016) |
| 04/08/2016 | 6789 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Major D. Everett and Valarie Everett* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 04/08/2016) |
| 04/08/2016 | 6790 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 04/08/2016) |
| 04/08/2016 | 6791 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Christian Morton and Lakisha Morton* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) ** (FILED IN ERROR; ATTORNEY TO RE-FILE)**(MCGLAMRY, MICHAEL) Modified on 4/11/2016 (ems). (Entered: 04/08/2016) |
| 04/08/2016 | 6792 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S) **(FILED IN ERROR; ATTORNEY TO RE-FILE)**(MCGLAMRY, MICHAEL) Modified on 4/11/2016 (ems). (Entered: 04/08/2016) |
| 04/08/2016 | 6793 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Michael Nattiel* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 04/08/2016) |
| 04/08/2016 | 6794 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 04/08/2016) |
| 04/11/2016 | 6795 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Christian Morton and Lakisha Morton* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 04/11/2016) |
| 04/11/2016 | 6796 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 04/11/2016) |

| 04/18/2016 | 6797 | NOTICE of Appearance by MICHAEL JOSEPH EDELMAN on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC with Certificate of Service(EDELMAN, MICHAEL) (Entered: 04/18/2016) |
|---|---|---|
| 04/18/2016 | 6798 | NOTICE of Appearance by SEAN P. FAHEY on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC with Certificate of Service(FAHEY, SEAN) (Entered: 04/18/2016) |
| 04/19/2016 | 6799 | MOTION to Remand to State Court filed by PLAINTIFF(S).Memorandum. (SCHERMERHORN, ANDREW) (Entered: 04/19/2016) |
| 04/21/2016 | 6800 | NOTICE OF WITHDRAW filed by KANSAS CITY CHIEFS FOOTBALL CLUB, INC...(HANSON, KENDRA) (Entered: 04/21/2016) |
| 04/21/2016 | 6801 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Eric Hipple* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 04/21/2016) |
| 04/21/2016 | 6802 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 04/21/2016) |
| 04/22/2016 | 6803 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S) **(FILED IN ERROR; ATTORNEY TO RE-FILE)** (MCCORVEY, DERRIEL) Modified on 4/26/2016 (ems). (Entered: 04/22/2016) |
| 04/22/2016 | 6804 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Alexander Cooper* (Attachments: # 1 Petition to Establish Attorney's Lien) **(FILED IN ERROR; ATTORNEY TO RE-FILE)** (MCCORVEY, DERRIEL) Modified on 4/26/2016 (ems). (Entered: 04/22/2016) |
| 04/22/2016 | 6805 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S) **(FILED IN ERROR; ATTORNEY TO RE-FILE)** (MCCORVEY, DERRIEL) Modified on 4/26/2016 (ems). (Entered: 04/22/2016) |
| 04/22/2016 | 6806 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Chris Montane Smith and Billie Smith* (Attachments: # 1 Petition to Establish Attorney's Lien) **(FILED IN ERROR; ATTORNEY TO RE-FILE)** (MCCORVEY, DERRIEL) Modified on 4/26/2016 (ems). (Entered: 04/22/2016) |
| 04/22/2016 | 6807 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S) **(FILED IN ERROR; ATTORNEY TO RE-FILE)** (MCCORVEY, DERRIEL) Modified on 4/26/2016 (ems). (Entered: 04/22/2016) |
| 04/22/2016 | 6808 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Carl Simpson* (Attachments: # 1 Petition to Establish Attorney's Lien) **(FILED IN ERROR; ATTORNEY TO RE-FILE)** (MCCORVEY, DERRIEL) Modified on 4/26/2016 (ems). (Entered: 04/22/2016) |
| 04/22/2016 | 6809 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 04/22/2016) |
| 04/22/2016 | 6810 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to George Seals* (Attachments: # 1 Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 04/22/2016) |
| 04/29/2016 | 6811 | Copy of Conditional Transfer Order (CTO-97) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: FL-S 0:16-60644. (ems) (Entered: 04/29/2016) |

| 05/02/2016 | 6812 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/02/2016) |
| --- | --- | --- |
| 05/02/2016 | 6813 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/02/2016) |
| 05/02/2016 | 6814 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/02/2016) |
| 05/02/2016 | 6815 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/02/2016) |
| 05/02/2016 | 6816 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/02/2016) |
| 05/02/2016 | 6817 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/02/2016) |
| 05/02/2016 | 6818 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/02/2016) |
| 05/02/2016 | 6819 | NOTICE of Appearance by GREGORY S. GERSTNER on behalf of KANSAS CITY CHIEFS FOOTBALL CLUB, INC. (GERSTNER, GREGORY) (Entered: 05/02/2016) |
| 05/02/2016 | 6820 | NOTICE of Appearance by CHRISTOPHER M. MCHUGH on behalf of KANSAS CITY CHIEFS FOOTBALL CLUB, INC. (MCHUGH, CHRISTOPHER) (Entered: 05/02/2016) |
| 05/05/2016 | 6821 | ORDER that PLAINTIFFS RICKEY AND LORRAINE DIXON-1(footnote) ARE PERMITTED TO FILE DOCUMENTS ON THE ECF DOCKETS IN THE ABOVE-CAPTIONED CASES.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/5/2016. 5/5/2016 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/05/2016) |
| 05/06/2016 | 6822 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 05/06/2016) |
| 05/06/2016 | 6823 | NOTICE by PLAINTIFF(S) *Notice of Attorney's lien as to plaintiff Carl Simpson* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 05/06/2016) |
| 05/06/2016 | 6824 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 05/06/2016) |
| 05/06/2016 | 6825 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to plaintiff Alexander Cooper* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien as to plaintiff Alexander Cooper)(MCCORVEY, DERRIEL) (Entered: 05/06/2016) |
| 05/06/2016 | 6826 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 05/06/2016) |
| 05/06/2016 | 6827 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to plaintiffs Chris Montane Smith and Billie Smith* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien as to plaintiffs Chris Montane Smith and Billie Smith)(MCCORVEY, DERRIEL) (Entered: 05/06/2016) |
| 05/06/2016 | 6828 | RESPONSE in Opposition re 6799 MOTION to Remand to State Court filed by ARIZONA CARDINALS FOOTBALL CLUB LLC. (BIRENBOIM, BRUCE) (Entered: 05/06/2016) |

| 05/12/2016 | 6829 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/12/2016) |
| 05/12/2016 | 6830 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/12/2016) |
| 05/20/2016 | 6831 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 05/20/2016) |
| 05/20/2016 | 6832 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 05/20/2016) |
| 05/20/2016 | 6833 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 05/20/2016) |
| 05/20/2016 | 6834 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 05/20/2016) |
| 05/20/2016 | 6835 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 05/20/2016) |
| 05/20/2016 | 6836 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 05/20/2016) |
| 05/25/2016 | 6837 | ORDER THAT WENDY FLEISHMAN, ESQ. IS DESIGNATED OPT OUT COORDINATING COUNSEL IN ORDER TO PROMOTE THE EFFICIENT ADMINISTRATION OF PRETRIAL PROCEEDINGS. SIGNED BY HONORABLE ANITA B. BRODY ON 5/25/2016. 5/26/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL OPT OUT PLAINTIFFS LISTED ON ATTACHMENT A) (ems) (Entered: 05/26/2016) |
| 06/07/2016 | 6838 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Appearance of TYRONE MONTGOMERY AND ANTHONY MILLER* (MATHENY, MATTHEW) (Entered: 06/07/2016) |
| 06/07/2016 | 6839 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Appearance of Forrest Gregg* (MATHENY, MATTHEW) (Entered: 06/07/2016) |
| 06/09/2016 | 6840 | ORDER of USCA as to 6557 Notice of Appeal, filed by PLAINTIFF(S), 6543 Notice of Appeal filed by PLAINTIFF(S), 6559 Notice of Appeal, filed by PLAINTIFF(S), 6560 Notice of Appeal, filed by PLAINTIFF(S), 6567 Notice of Appeal, filed by PLAINTIFF(S), 6552 Notice of Appeal filed by PLAINTIFF(S), 6539 Notice of Appeal, filed by PLAINTIFF(S), 6561 Notice of Appeal, filed by PLAINTIFF(S), 6546 Notice of Appeal, filed by PLAINTIFF(S), 6551 Notice of Appeal filed by PLAINTIFF(S), 6548 Notice of Appeal filed by PLAINTIFF(S), 6571 Notice of Appeal filed by PLAINTIFF(S), 6568 Notice of Appeal, filed by SEAN CONSIDINE, RODERICK CARTWRIGHT, JEFF ROHRER, ALAN FANECA THAT THE JUDGMENT OF THE DISTRICT COURT DATED 5/11/2015 IS HEREBY AFFIRMED WITH EACH SIDE TO BEAR ITS OWN COSTS. ALL OF THE ABOVE IN ACCORDANCE WITH THE OPINION OF THIS COURT. (ems) (Entered: 06/09/2016) |
| 06/21/2016 | 6841 | ORDER THAT THE MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR PLAINTIFF MARK HIGGS (DOC. NO. 6766) IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 6/21/2016. 6/22/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO 13-CV-51) (ems) (Entered: 06/22/2016) |
| 06/21/2016 | 6842 | ORDER THAT THE MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR PLAINTIFF CHRIS DIETRICH (DOC. NO. 6765) IS GRANTED. SIGNED BY |

| | | HONORABLE ANITA B. BRODY ON 6/21/2016. 6/22/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-CV-2219) (ems) (Entered: 06/22/2016) |
|---|---|---|
| 06/21/2016 | 6843 | ORDER THAT THE MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR PLAINTIFF CLIFFORD CHARLTON (DOC. NO. 6763) AND THE MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR PLAINTIFFS BARNEY CHAVOUS AND ODESSA CHAVOUS (DOC. NO. 6764) IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 6/21/2016. 6/22/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-CV-4185) (ems) (Entered: 06/22/2016) |
| 06/22/2016 | 6844 | NOTICE of Appearance by NICOLE F. DEVANON on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION (DEVANON, NICOLE) (Entered: 06/22/2016) |
| 06/22/2016 | 6845 | ORDER THAT THE MOTION OF PLAINTIFFS TO REMAND TO THE PHILADELPHIA COURT OF COMMON PLEAS AND FOR DISCOVERY IN AID OF REMAND (12-CV-2464, DOC. NO. 3) IS DENIED AS MOOT BECAUSE PLAINTIFFS ARE SETTLEMENT CLASS MEMBERS. SIGNED BY HONORABLE ANITA B. BRODY ON 6/22/2016. 6/22/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-CV-2464) (ems) (Entered: 06/22/2016) |
| 06/22/2016 | 6846 | ORDER THAT PLAINTIFFS' MOTION TO REMAND AND MOTION FOR DISCOVERY IN AID OF REMAND (DOC. NO. 100 IN 12-MD-2323) IS DENIED AS MOOT BECAUSE PLAINTIFFS ARE SETTLEMENT CLASS MEMBERS. SIGNED BY HONORABLE ANITA B. BRODY ON 6/22/2016. 6/22/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-CV-3532) (ems) (Entered: 06/22/2016) |
| 06/22/2016 | 6847 | ORDER THAT PLAINTIFFS' MOTION TO REMAND, FOR DISCOVERY IN AID OR REMAND, AND FOR SANCTIONS, COSTS AND ATTORNEY'S FEES (DOC. NO. 3138 IN 12-MD-2323) (DOC. NO. 3 IN 12-CV-2728) IS DENIED AS MOOT BECAUSE PLAINTIFFS ARE SETTLEMENT CLASS MEMBERS. SIGNED BY HONORABLE ANITA B. BRODY ON 6/22/2016. 6/22/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-CV-2728) (ems) (Entered: 06/22/2016) |
| 06/22/2016 | 6848 | ORDER THAT SCOT BRANTLEY'S UNCONTESTED MOTION FOR SUBSTITUTION OF COUNSEL (DOC. NO. 6502 IN 12-MD-2323) IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 6/22/2016. 6/22/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-CV-1024) (ems) (Entered: 06/22/2016) |
| 06/22/2016 | 6849 | SUGGESTION OF DEATH Upon the Record as to Thomas DeLeone by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(GIBBS, WILLIAM) (Entered: 06/22/2016) |
| 06/23/2016 | 6850 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 06/23/2016) |
| 06/23/2016 | 6851 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 06/23/2016) |
| 06/24/2016 | 6852 | ORDER THAT PLAINTIFFS' MOTION FOR RELIEF FROM THE STAY AND INJUNCTION 6099 , PLAINTIFFS' MOTION FOR LEAVE TO FILE A REPLY 6111 AND DEFENDANT ARIZONA CARDINALS FOOTBALL CLUB, LLC'S MOTION TO INTERVENE 6118 ARE DENIED AS MOOT.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/23/16.6/24/16 ENTERED AND COPIES MAILED AND E-MAILED (ldb, ) Modified on 6/24/2016 (ldb, ). (Entered: 06/24/2016) |
| 06/28/2016 | 6853 | NOTICE of Withdrawal of Appearance by ANNE MCGINNESS KEARSE on behalf of PLAINTIFF(S)(KEARSE, ANNE) (Entered: 06/28/2016) |

**-426-**

| 06/30/2016 | 6854 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Damien Robinson* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 06/30/2016) |
|---|---|---|
| 06/30/2016 | 6855 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 06/30/2016) |
| 06/30/2016 | 6856 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Ed King and Angela Gwen King* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 06/30/2016) |
| 06/30/2016 | 6857 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 06/30/2016) |
| 06/30/2016 | 6858 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Adalius Donquail Thomas* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 06/30/2016) |
| 06/30/2016 | 6859 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 06/30/2016) |
| 07/01/2016 | 6860 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Telephone Conference held on 6/29/2016 Court Reporter: James F.G. Scheidt. (ems) (Entered: 07/01/2016) |
| 07/01/2016 | 6861 | NOTICE of Withdrawal of Appearance by S. REED MORGAN on behalf of PLAINTIFF(S)(MORGAN, S.) (Entered: 07/01/2016) |
| 07/01/2016 | 6862 | NOTICE of Withdrawal of Appearance by S. REED MORGAN on behalf of PLAINTIFF(S)(MORGAN, S.) (Entered: 07/01/2016) |
| 07/01/2016 | 6863 | NOTICE of Withdrawal of Appearance by S. REED MORGAN on behalf of PLAINTIFF(S)(MORGAN, S.) (Entered: 07/01/2016) |
| 07/01/2016 | 6864 | NOTICE of Withdrawal of Appearance by S. REED MORGAN on behalf of PLAINTIFF(S)(MORGAN, S.) (Entered: 07/01/2016) |
| 07/01/2016 | 6865 | NOTICE of Withdrawal of Appearance by S. REED MORGAN on behalf of PLAINTIFF(S)(MORGAN, S.) (Entered: 07/01/2016) |
| 07/01/2016 | 6866 | NOTICE of Withdrawal of Appearance by S. REED MORGAN on behalf of PLAINTIFF(S)(MORGAN, S.) (Entered: 07/01/2016) |
| 07/01/2016 | 6867 | NOTICE of Withdrawal of Appearance by S. REED MORGAN on behalf of PLAINTIFF(S)(MORGAN, S.) (Entered: 07/01/2016) |
| 07/01/2016 | 6868 | NOTICE of Withdrawal of Appearance by S. REED MORGAN on behalf of PLAINTIFF(S)(MORGAN, S.) (Entered: 07/01/2016) |
| 07/01/2016 | 6869 | NOTICE of Withdrawal of Appearance by S. REED MORGAN on behalf of PLAINTIFF(S)(MORGAN, S.) (Entered: 07/01/2016) |
| 07/11/2016 | 6870 | ORDER THAT THE PARTIES ARE ORDERED TO SHOW CAUSE ON OR BEFORE 7/27/2016 WHY THE COURT SHOULD NOT SUGGEST REMAND OF THE CLAIMS AGAINST THE RIDDELL DEFENDANTS TO THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION ("MDL PANEL") PURSUANT TO MDL PANEL RULE OF PROCEDURE 10.1(b)(i). IF ANY PARTY OPPOSES A SUGGESTION OF REMAND, IT MAY FILE A BRIEF OF NO MORE THAN TEN (10) PAGES ON OR BEFORE 7/27/2016. SIGNED BY HONORABLE ANITA B. BRODY ON 7/11/2016. 7/12/2016 ENTERED AND COPIES E-MAILED. (APPLIES |

| | | TO ACTIONS INVOLVING ANY RIDDELL DEFENDANT) (ems) (Entered: 07/12/2016) |
|---|---|---|
| 07/13/2016 | 6871 | ORDER THAT WENDELL PRITCHETT, PRESIDENTIAL PROFESSOR OF LAW AND EDUCATION AT THE UNIVERSITY OF PENNSYLVANIA LAW SCHOOL, AND JOANN VERRIER, VICE DEAN FOR ADMINISTRATIVE SERVICES AT THE UNIVERSITY OF PENNSYLVANIA LAW SCHOOL, ARE APPOINTED AS SPECIAL MASTERS IN IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION, CASE NO. 12-MD-2323, TO IMPLEMENT AND ADMINISTER THE CLASS ACTION SETTLEMENT AGREEMENT (THE "AGREEMENT") ENTERED INTO BETWEEN THE NFL AND NFL PROPERTIES LLC (THE "NFL PARTIES") AND THE CLASS REPRESENTATIVES AND SUBCLASS REPRESENTATIVES, INDIVIDUALLY AND ON BEHALF OF THE SETTLEMENT CLASS AND SUBCLASSES, BY AND THROUGH CLASS COUNSEL; ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 7/13/2016. 7/13/2016 ENTERED AND COPIES MAILED AND E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 07/13/2016) |
| 07/13/2016 | 6872 | ORDER THAT AN ORGANIZATIONAL MEETING OF ALL OPT OUT PLAINTIFFS WILL BE HELD ON 9/12/2016 AT 1:00 P.M. IN COURTROOM 7-B OF THE U.S. COURTHOUSE, 601 MARKET STREET, PHILADELPHIA, PENNSYLVANIA 19106. SIGNED BY HONORABLE ANITA B. BRODY ON 7/13/2016. 7/13/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL OPT OUT PLAINTIFFS; SEE ATTACHMENT A FOR A COMPLETE LIST OF ACTIONS INVOLVING OPT OUT PLAINTIFFS) (ems) (Entered: 07/13/2016) |
| 07/13/2016 | 6873 | ORDER THAT PLAINTIFFS' AMENDED MOTION TO REMAND (DOC. NO. 6712) IS DENIED WITHOUT PREJUDICE; ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 7/13/2016. 7/13/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-1995, 14-3382, 14-3383, 14-4779) (ems) (Entered: 07/13/2016) |
| 07/14/2016 | 6874 | SUGGESTION OF DEATH Upon the Record as to Julius Adams by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 07/14/2016) |
| 07/14/2016 | 6875 | SUGGESTION OF DEATH Upon the Record as to Reggie Rogers by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 07/14/2016) |
| 07/14/2016 | 6876 | SUGGESTION OF DEATH Upon the Record as to Sam Adams by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 07/14/2016) |
| 07/18/2016 | 6877 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 07/18/2016) |
| 07/20/2016 | 6878 | ORDER THAT PLAINTIFFS' MOTION TO REMAND (DOC. NO. 6799) IS DENIED WITHOUT PREJUDICE; ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 7/19/2016. 7/20/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO 16-CV-1704) (ems) (Entered: 07/20/2016) |
| 07/27/2016 | 6879 | RESPONSE TO ORDER TO SHOW CAUSE by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 07/27/2016) |
| 07/27/2016 | 6880 | RESPONSE TO ORDER TO SHOW CAUSE by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (CEREGHINI, PAUL) (Entered: 07/27/2016) |
| 08/03/2016 | 6881 | NOTICE by PLAINTIFF(S) re 6778 Notice (Other) *of Withdrawal and Release* (VARGHESE, MANOJ) (Entered: 08/03/2016) |

| 08/03/2016 | 6882 | NOTICE by PLAINTIFF(S) re 6778 Notice (Other) *of Withdrawal and Release of Notice of Attorney's Lien and Petition to Establish Attorney's Lien* (VARGHESE, MANOJ) (Entered: 08/03/2016) |
|---|---|---|
| 08/04/2016 | 6883 | MOTION Plaintiffs request this court to include their case in the List of Pending Actions in MDL 2323 Re Opt Out Plaintiffs filed by PLAINTIFF(S).Motion to Include Bush Plaintiffs in the List of Pending Actions in MDL 2323 re Opt Out Plaintiffs. (MARKOWITZ, NEAL) (Entered: 08/04/2016) |
| 08/05/2016 | 6884 | (PRO SE) AMENDED DECLATORY JUDGEMENT AND PRELIMINARY INJUNCTION WITH COMPLAINT by HARRY E. HAMILTON. Verification. (APPLIES TO 14-CV-6353) (ems) (Entered: 08/08/2016) |
| 08/08/2016 | 6885 | (PRO SE) MOTION FOR TEMPORARY RESTRAINING ORDER filed by HARRY E. HAMILTON. (APPLIES TO 14-CV-6353) (ems) (Entered: 08/08/2016) |
| 08/11/2016 | 6886 | ORDER THAT ALL SEVERED AND AMENDED COMPLAINTS FILED PURSUANT TO THE COURT'S 12/1/2015 ORDER (DOC. NO. 6706) ARE STRICKEN. THE CLERK OF COURT IS DIRECTED TO RETURN THE FILING FEES PAID BY EACH PLAINTIFF WHO FILED A SEVERED AND AMENDED COMPLAINT. SIGNED BY HONORABLE ANITA B. BRODY ON 8/11/2016. 8/11/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO ACTIONS INVOLVING ANY RIDDELL DEFENDANT) (ems) (Entered: 08/11/2016) |
| 08/12/2016 | 6887 | ORDER that PLAINTIFF HARRY HAMILTON'S MOTION FOR TEMPORARY RETRAINING ORDER (ECF NO. 6885, NO. 12-MD-2323; ECF NO. 5, NO. 14-6353) IS DENIED.1(footnote). SIGNED BY HONORABLE ANITA B. BRODY ON 8/11/2016.8/12/2016 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/12/2016) |
| 08/18/2016 | 6888 | NOTICE of Withdrawal of Appearance by WENDY R. FLEISHMAN on behalf of PLAINTIFF(S)(FLEISHMAN, WENDY) (Entered: 08/18/2016) |
| 08/22/2016 | 6889 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/22/2016) |
| 08/22/2016 | 6890 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/22/2016) |
| 08/22/2016 | 6891 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/22/2016) |
| 08/23/2016 | 6892 | NOTICE of Withdrawal of Appearance by WENDY R. FLEISHMAN on behalf of PLAINTIFF(S)(FLEISHMAN, WENDY) (Entered: 08/23/2016) |
| 08/29/2016 | 6893 | ORDER THAT ANY COUNSEL WHO WISHES TO SERVE AS LEAD COUNSEL OR AS A MEMBER OF THE STEERING COMMITTEE FOR THE OPT OUT PLAINTIFFS IN THIS LITIGATION MUST SUBMIT A RESUME TO THE COURT. INTERESTED COUNSEL SHOULD SUBMIT THEIR RESUME VIA EMAIL BY 9/6/2016, WITH THE SUBJECT LINE "APPLICATION FOR OPT OUT LEAD COUNSEL" OR "APPLICATION FOR OPT OUT STEERING COMMITTEE"; ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 8/29/2016. 8/29/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL OPT OUT PLAINTIFFS LISTED ON ATTACHMENT A) (ems) (Entered: 08/29/2016) |
| 08/30/2016 | 6894 | ORDER - UPON CONSIDERATION OF THE MOTION TO INCLUDE THE BUSH PLAINTIFFS IN THE "LIST OF PENDING ACTIONS IN MDL 2323 INVOLVING OPT OUT PLAINTIFFS" (ECF 6883), THE NFL DEFENDANTS ARE ORDERED TO SHOW CAUSE ON OR BEFORE TUESDAY, SEPTEMBER 6, 2016 WHY THE |

| | | |
|---|---|---|
| | | MOTION SHOULD NOT BE GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/30/2016. 8/30/2016 ENTERED AND COPIES VIA ECF.(mo, ) Modified on 8/30/2016 (mo, ). (Entered: 08/30/2016) |
| 08/31/2016 | 6895 | NOTICE by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC re 6872 Order, *Letter re: Adjournment of Organizational Meeting of All Opt Out Plaintiffs* (Attachments: # 1 Certificate of Service)(KARP, BRAD) (Entered: 08/31/2016) |
| 09/01/2016 | 6896 | ORDER THAT THE ORGANIZATIONAL MEETING OF ALL OPT OUT PLAINTIFFS SCHEDULED FOR SEPTEMBER 12, 2016 IS ADJOURNED UNTIL FURTHER NOTICE. SIGNED BY HONORABLE ANITA B. BRODY ON 9/1/2016; 9/1/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL OPT OUT PLAINTIFFS ON ATTACHED LIST).(tjd) (Entered: 09/01/2016) |
| 09/02/2016 | 6897 | NOTICE of Change of Address by STEVEN F. MOLO(MOLO, STEVEN) (Entered: 09/02/2016) |
| 09/02/2016 | 6898 | NOTICE of Appearance by STEVE W. BERMAN on behalf of PLAINTIFF(S) with Certificate of Service(BERMAN, STEVE) (Entered: 09/02/2016) |
| 09/02/2016 | 6899 | NOTICE of Appearance by DANIEL J. KUROWSKI on behalf of PLAINTIFF(S) with Certificate of Service(KUROWSKI, DANIEL) (Entered: 09/02/2016) |
| 09/02/2016 | 6900 | NOTICE of Appearance by ROBERT A. STEIN on behalf of PLAINTIFF(S) with Certificate of Service(STEIN, ROBERT) (Entered: 09/02/2016) |
| 09/06/2016 | 6901 | RESPONSE TO ORDER TO SHOW CAUSE by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 09/06/2016) |
| 09/08/2016 | 6902 | ORDER THAT THE UNOPPOSED MOTION TO INCLUDE THE BUSH PLAINTIFFS IN THE "LIST OF PENDING ACTIONS IN MDL 2323 INVOLVING OPT OUT PLAINTIFFS" (DOC. NO. 6883) IS GRANTED. THE CASE OF BUSH, ET AL v. NATIONAL FOOTBALL LEAGUE, ET AL., NO. 13-CV-4549, WILL BE INCLUDED IN THE "LIST OF PENDING ACTIONS IN MDL 2323 INVOLVING OPT OUT PLAINTIFFS" (ATTACHMENT A). SIGNED BY HONORABLE ANITA B. BRODY ON 9/8/2016. 9/8/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL OPT OUT PLAINTIFFS LISTED ON ATTACHMENT A) (ems) (Entered: 09/08/2016) |
| 09/13/2016 | 6903 | NOTICE of Appearance by THEODORE E. KARATINOS on behalf of PLAINTIFF(S) with Certificate of Service(KARATINOS, THEODORE) (Entered: 09/13/2016) |
| 09/13/2016 | 6904 | NOTICE by PLAINTIFF(S) *Notice of Change of Firm Affiliation for Attorney David Franco* (FRANCO, DAVID) (Entered: 09/13/2016) |
| 09/14/2016 | 6905 | STIPULATION and *[Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 9/14/2016 (ems). (Entered: 09/14/2016) |
| 09/16/2016 | 6906 | MOTION to Substitute Party filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Certificate of Service)(GIBBS, WILLIAM) (Entered: 09/16/2016) |
| 09/16/2016 | 6907 | STIPULATION AND ORDER THAT THE REVOCATION REQUESTS SUBMITTED BY WOODROW LOWE AND THOMAS L. RENTZEL ARE APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING WOODROW LOWE |

| | | |
|---|---|---|
| | | AND THOMAS L. RENTZEL. SIGNED BY HONORABLE ANITA B. BRODY ON 9/15/2016; 9/19/2016 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO 14-CV-29).(tjd) (Entered: 09/19/2016) |
| 09/19/2016 | 6908 | ORDER THAT THE MOTION FOR SUBSTITUTION OF PLAINTIFF ONLY IN ACTION 13-CV-4230 IS GRANTED. MALINDA K. DELEONE, PERSONAL REPRESENTATIVE OF THE ESTATE OF THOMAS D. DELEONE, DECEASED, IS HEREBY SUBSTITUTED AS PROPER PARTY PLAINTIFF AND LEAVE IS HEREBY GRANTED TO CHANGE THE CAPTION OF THE CASE ACCORDINGLY. SIGNED BY HONORABLE ANITA B. BRODY ON 9/19/2016. 9/20/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO 13-CV-4230) (ems) (Entered: 09/20/2016) |
| 09/20/2016 | 6909 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 09/20/2016) |
| 09/20/2016 | 6910 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 09/20/2016) |
| 09/21/2016 | 6911 | NOTICE of Change of Address by STEVEN CRAIG MARKS(MARKS, STEVEN) (Entered: 09/21/2016) |
| 09/21/2016 | 6912 | NOTICE of Change of Address by STEVEN CRAIG MARKS(MARKS, STEVEN) (Entered: 09/21/2016) |
| 09/21/2016 | 6913 | NOTICE of Change of Address by STEVEN CRAIG MARKS(MARKS, STEVEN) (Entered: 09/21/2016) |
| 09/21/2016 | 6914 | NOTICE of Change of Address by STEVEN CRAIG MARKS(MARKS, STEVEN) (Entered: 09/21/2016) |
| 09/21/2016 | 6915 | NOTICE of Change of Address by STEVEN CRAIG MARKS(MARKS, STEVEN) (Entered: 09/21/2016) |
| 09/21/2016 | 6916 | NOTICE of Change of Address by STEVEN CRAIG MARKS(MARKS, STEVEN) (Entered: 09/21/2016) |
| 09/21/2016 | 6917 | NOTICE of Change of Address by STEVEN CRAIG MARKS(MARKS, STEVEN) (Entered: 09/21/2016) |
| 09/21/2016 | 6918 | NOTICE of Change of Address by STEVEN CRAIG MARKS(MARKS, STEVEN) (Entered: 09/21/2016) |
| 10/07/2016 | 6919 | STATUS REPORT *ON PREPARATION TO IMPLEMENT THE SETTLEMENT PROGRAM AFTER THE EFFECTIVE DATE* by PLAINTIFFS' STEERING COMMITTEE. (Attachments: # 1 Exhibit A: Declaration of Orran L. Brown, Sr., # 2 Exhibit B: Declaration of Matthew Garretson, # 3 Certificate of Service)(SEEGER, CHRISTOPHER) (Entered: 10/07/2016) |
| 10/13/2016 | 6920 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 10/13/2016) |
| 10/13/2016 | 6921 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Ronney Daniels and Mecoya Daniels* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 10/13/2016) |
| 10/13/2016 | 6922 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 10/13/2016) |

| 10/14/2016 | 6923 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 10/17/2016 (ems). (Entered: 10/14/2016) |
|---|---|---|
| 10/25/2016 | 6924 | STIPULATION AND ORDER THAT THE REVOCATION REQUEST SUBMITTED BY DONALD RAY JONES IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING DONALD RAY JONES. SIGNED BY HONORABLE ANITA B. BRODY ON 10/24/2016. 10/25/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-29) (ems) (Entered: 10/25/2016) |
| 10/26/2016 | 6925 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Lenzie and Sherrie Jackson* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 10/26/2016) |
| 10/26/2016 | 6926 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 10/26/2016) |
| 10/26/2016 | 6927 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Honor Jackson, Jr.* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 10/26/2016) |
| 10/26/2016 | 6928 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 10/26/2016) |
| 10/26/2016 | 6929 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Dwight and Mia Johnson* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 10/26/2016) |
| 10/26/2016 | 6930 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 10/26/2016) |
| 10/31/2016 | 6931 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Garrison Hearst* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 10/31/2016) |
| 10/31/2016 | 6932 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 10/31/2016) |
| 10/31/2016 | 6933 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 10/31/2016) |
| 11/03/2016 | 6934 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 11/4/2016 (ems). (Entered: 11/03/2016) |
| 11/04/2016 | 6935 | (PRO SE) MOTION FOR TEMPORARY RESTRAINING ORDER filed by HARRY E. HAMILTON. (APPLIES TO 14-CV-6353) (ems) (Entered: 11/04/2016) |
| 11/07/2016 | 6936 | ORDER that PLAINTIFF HARRY HAMILTON'S MOTION FOR TEMPORARY RESTRAINING ORDER (ECF NO. 6935, NO. 12-MD-2323; ECF NO. 7, NO. 14-6353) IS DENIED.-1(footnote). SIGNED BY HONORABLE ANITA B. BRODY ON 11/7/2016.11/7/2016 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/07/2016) |
| 11/08/2016 | 6937 | STIPULATION AND ORDER THAT THE REVOCATION SUBMITTED BY ROBERT BRANNON IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH |

**-432-**

| | | |
|---|---|---|
| | | EXCLUDING ROBERT BRANNON. SIGNED BY HONORABLE ANITA B. BRODY ON 11/7/2016. 11/8/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-29) (ems) (Entered: 11/08/2016) |
| 11/10/2016 | 6938 | SUGGESTION OF DEATH Upon the Record as to EARLE FAISON by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (DEVANON, NICOLE) (Entered: 11/10/2016) |
| 11/16/2016 | 6939 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 11/16/2016) |
| 11/16/2016 | 6940 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 11/16/2016) |
| 11/17/2016 | 6941 | NOTICE by PLAINTIFF(S) *Ronald Acks and Judith Acks of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6942 | NOTICE by PLAINTIFF(S) *Steve Baumgartner and Mary Baumgartner of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6943 | NOTICE by PLAINTIFF(S) *Bobby Bell of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6944 | NOTICE by PLAINTIFF(S) *Michael Butler and Darlene Bulter of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6945 | MOTION to Withdraw as Attorney *for W. Pat Carter and Synorica Carter* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6946 | NOTICE by PLAINTIFF(S) *W. Pat Carter and Synorica Carter of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6947 | NOTICE by PLAINTIFF(S) *Clifford Charlton of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6948 | NOTICE by PLAINTIFF(S) *Michael Clark of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6949 | NOTICE by PLAINTIFF(S) *Curley Culp of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6950 | MOTION to Withdraw as Attorney *for George Cumby and Rose Cumby* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6951 | NOTICE by PLAINTIFF(S) *George Cumby and Rose Cumby of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6952 | MOTION to Withdraw as Attorney *for Derrick Deese* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |

| 11/17/2016 | 6953 | NOTICE by PLAINTIFF(S) *Derrick Deese of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6954 | NOTICE by PLAINTIFF(S) *Chris Dieterich of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6955 | MOTION to Withdraw as Attorney *for Titus Dixon and Melinda Clark* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6956 | NOTICE by PLAINTIFF(S) *Titus Dixon and Melinda Clark of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6957 | MOTION to Withdraw as Attorney *for Hart Lee Dykes* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6958 | NOTICE by PLAINTIFF(S) *Hart Lee Dykes of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6959 | MOTION to Withdraw as Attorney *for Ronald Egloff and Julee Egloff* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6960 | NOTICE by PLAINTIFF(S) *Ronald Egloff and Julee Egloff of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6961 | MOTION to Withdraw as Attorney *for Ricky Feacher* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6962 | NOTICE by PLAINTIFF(S) *Ricky Feacher of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6963 | NOTICE by PLAINTIFF(S) *Kenneth Greene and Tina Greene of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6964 | NOTICE by PLAINTIFF(S) *Mark Higgs of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6965 | NOTICE by PLAINTIFF(S) *Leander Jordan of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6966 | NOTICE by PLAINTIFF(S) *Gary Lewis and Michelle Lewis of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6967 | NOTICE by PLAINTIFF(S) *Anthony Liscio and Annette Liscio of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6968 | NOTICE by PLAINTIFF(S) *William Lueck and Mary Lueck of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |

| 11/17/2016 | 6969 | NOTICE by PLAINTIFF(S) *Ernie Mills of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| --- | --- | --- |
| 11/17/2016 | 6970 | MOTION to Withdraw as Attorney *for Billy Milner* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6971 | NOTICE by PLAINTIFF(S) *Billy Milner of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6972 | NOTICE by PLAINTIFF(S) *Larry Craig Morton and Kym Galloway of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6973 | MOTION to Withdraw as Attorney *for Elston Ridgle* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6974 | NOTICE by PLAINTIFF(S) *Elston Ridgle of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6975 | NOTICE by PLAINTIFF(S) *James Rourke and Carol Rourke of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6976 | MOTION to Withdraw as Attorney *for Reggie Swinton* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6977 | NOTICE by PLAINTIFF(S) *Reggie Swinton of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6978 | NOTICE by PLAINTIFF(S) *Myron Taliaferro and Kathleen Taliaferro of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6979 | MOTION to Withdraw as Attorney *for Anthony Thompson and Lori Thompson* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6980 | NOTICE by PLAINTIFF(S) *Anthony Thompson and Lori Thompson of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6981 | NOTICE by PLAINTIFF(S) *Stu Voigt and Linda Voigt of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6982 | NOTICE by PLAINTIFF(S) *Wayne Harrison Walker and Sylvia Elise Walker* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6983 | NOTICE by PLAINTIFF(S) *Keith Washington and Bridget Washington* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6984 | MOTION to Withdraw as Attorney *for Donald Wesbrook, Jr. and Alfreda Westbrook* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |

| | | |
|---|---|---|
| 11/17/2016 | 6985 | NOTICE by PLAINTIFF(S) *Donald Westbrook, Jr. and Alfreda Westbrook of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6986 | MOTION to Withdraw as Attorney *for Donnell Woolford* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/17/2016 | 6987 | NOTICE by PLAINTIFF(S) *Donnell Woolford of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 11/17/2016) |
| 11/18/2016 | 6988 | NOTICE of Appearance by DONNA H. CLANCY on behalf of PLAINTIFF(S) with Certificate of Service(CLANCY, DONNA) (Entered: 11/18/2016) |
| 11/21/2016 | 6989 | NOTICE by PLAINTIFF(S) *Glen and Charlotte Collins - Notice of Attorneys' Lien* (Attachments: # 1 Exhibit 1 - Petition to Establish Attorney Lien)(PECKHAM, CHARLES) (Entered: 11/21/2016) |
| 11/21/2016 | 6990 | NOTICE of Withdrawal of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S)(HONECKER, KATHRYN) (Entered: 11/21/2016) |
| 12/01/2016 | 6991 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 12/01/2016) |
| 12/01/2016 | 6992 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 12/01/2016) |
| 12/01/2016 | 6993 | MOTION to Substitute *of Plaintiff* filed by NATIONAL FOOTBALL LEAGUE, INC... (DEVANON, NICOLE) (Entered: 12/01/2016) |
| 12/01/2016 | 6994 | NOTICE of Withdrawal of Appearance by NICOLE F. DEVANON on behalf of NATIONAL FOOTBALL LEAGUE, INC.(DEVANON, NICOLE) (Entered: 12/01/2016) |
| 12/01/2016 | 7021 | (PRO SE) SECOND AMENDED DECLATORY JUDGMENT, PRELIMINARY INJUNCTION WITH COMPLAINT AND REQUEST FOR TEMPORARY RESTRAINING ORDER filed by HARRY E. HAMILTON. Verification, Certificate of Service. (APPLIES TO 14-CV-6353) (ems) (Entered: 12/05/2016) |
| 12/02/2016 | 6995 | NOTICE of Appearance by HEATHER N. BARNES on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 6996 | NOTICE of Appearance by HEATHER N. BARNES on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 6997 | NOTICE of Appearance by HEATHER N. BARNES on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 6998 | NOTICE of Appearance by HEATHER N. BARNES on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 6999 | NOTICE of Appearance by HEATHER N. BARNES on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION (BARNES, HEATHER) (Entered: 12/02/2016) |

| 12/02/2016 | 7000 | NOTICE of Appearance by HEATHER N. BARNES on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION (BARNES, HEATHER) (Entered: 12/02/2016) |
|---|---|---|
| 12/02/2016 | 7001 | NOTICE of Appearance by HEATHER N. BARNES on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7002 | NOTICE of Appearance by HEATHER N. BARNES on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7003 | NOTICE of Appearance by HEATHER N. BARNES on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7004 | NOTICE of Appearance by HEATHER N. BARNES on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7005 | NOTICE of Appearance by HEATHER N. BARNES on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7006 | NOTICE of Appearance by HEATHER N. BARNES on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7007 | NOTICE of Appearance by HEATHER N. BARNES on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7008 | NOTICE of Appearance by HEATHER N. BARNES on behalf of PLAINTIFF(S) (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7009 | NOTICE of Appearance by HEATHER N. BARNES on behalf of PLAINTIFF(S) (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7010 | NOTICE of Appearance by HEATHER N. BARNES on behalf of PLAINTIFF(S) (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7011 | NOTICE of Appearance by HEATHER N. BARNES on behalf of PLAINTIFF(S) (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7012 | NOTICE of Appearance by HEATHER N. BARNES on behalf of PLAINTIFF(S) (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7013 | NOTICE of Appearance by HEATHER N. BARNES on behalf of PLAINTIFF(S) (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7014 | NOTICE of Appearance by HEATHER N. BARNES on behalf of PLAINTIFF(S) (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7015 | NOTICE of Appearance by HEATHER N. BARNES on behalf of PLAINTIFF(S) (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7016 | NOTICE of Appearance by HEATHER N. BARNES on behalf of PLAINTIFF(S) (BARNES, HEATHER) (Entered: 12/02/2016) |

| | | |
|---|---|---|
| 12/02/2016 | 7017 | NOTICE of Appearance by HEATHER N. BARNES on behalf of PLAINTIFF(S) (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7018 | NOTICE of Appearance by HEATHER N. BARNES on behalf of PLAINTIFF(S) (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7019 | NOTICE of Appearance by HEATHER N. BARNES on behalf of PLAINTIFF(S) (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/02/2016 | 7020 | NOTICE of Appearance by HEATHER N. BARNES on behalf of PLAINTIFF(S) (BARNES, HEATHER) (Entered: 12/02/2016) |
| 12/07/2016 | 7022 | STIPULATION and [Proposed] Order by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 12/8/2016 (ems). (Entered: 12/07/2016) |
| 12/08/2016 | 7023 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 12/08/2016) |
| 12/08/2016 | 7024 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 12/08/2016) |
| 12/08/2016 | 7025 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 12/08/2016) |
| 12/09/2016 | 7026 | (PRO SE) SECOND AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER AND RECONSIDERATION IF NECESSARY filed by HARRY E. HAMILTON. Certificate of Service. (APPLIES TO 14-CV-6353) (ems) (Entered: 12/12/2016) |
| 12/12/2016 | 7027 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 12/12/2016) |
| 12/14/2016 | 7028 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 12/14/2016) |
| 12/14/2016 | 7029 | MOTION for Attorney Fees DISPUTE AND TO REQUEST SUBSTITUTION OF COUNSEL FOR PAUL RAYMOND TURNER filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J)(DONALDSON, RICHARD) (Entered: 12/14/2016) |
| 12/15/2016 | 7030 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 12/15/2016) |
| 12/20/2016 | 7031 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 12/20/2016) |
| 12/21/2016 | 7032 | Consent MOTION for Extension of Time to File Response/Reply as to 7029 MOTION for Attorney Fees DISPUTE AND TO REQUEST SUBSTITUTION OF COUNSEL FOR PAUL RAYMOND TURNER filed by PLAINTIFF(S).Certificate of Uncontested Status. (Attachments: # 1 Text of Proposed Order)(MARKS, STEVEN) (Entered: 12/21/2016) |

| 12/21/2016 | 7033 | STIPULATION AND ORDER THAT THE REVOCATION REQUEST SUBMITTED BY ROY LEE JEFFERSON, JR. IS ACCEPTED, SUBJECT TO COURT APPROVAL, BECAUSE HE SUBMITTED THE REQUEST BEFORE OPT OUT LITIGATION HAS COMMENCED IN THIS COURT. SIGNED BY HONORABLE ANITA B. BRODY ON 12/20/2016. 12/21/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-29) (ems) (Entered: 12/21/2016) |
|---|---|---|
| 12/21/2016 | 7034 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Robert and LaShawnza Chancey* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7035 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7036 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Hayward and Sonja Clay* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7037 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7038 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Zachary Piller* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7039 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7040 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Reginald Bernard Slack* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7041 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7042 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Charles and Mynique Smith* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7043 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7044 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Joseph Brian Johnston and Mes Johnston* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7045 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7046 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to David and Tiffany Rocker* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7047 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7048 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Johnny and Gia Rutledge* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |

| 12/21/2016 | 7049 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7050 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Reggie Brown and Kerrie Patterson-Brown* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7051 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7052 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Wendell H. Davis* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7053 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7054 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Vidal and Elizabeth Carlin* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7055 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7056 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Billy Thurman Jackson* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/21/2016 | 7057 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 12/21/2016) |
| 12/22/2016 | 7058 | NOTICE of Appearance by CHARLES H. PECKHAM on behalf of PLAINTIFF(S) (PECKHAM, CHARLES) (Entered: 12/22/2016) |
| 12/22/2016 | 7059 | ORDER THAT THE MOTION FOR EXTENSION OF TIME IS GRANTED. THE TIME TO RESPOND TO (DOC. NO. 7029) IS EXTENDED TO 1/11/2017. SIGNED BY HONORABLE ANITA B. BRODY ON 12/22/2016. 12/22/2016 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 12/22/2016) |
| 12/27/2016 | 7060 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 12/27/2016) |
| 12/27/2016 | 7061 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Plaintiff Reginald Freeman* (Attachments: # 1 Exhibit)(MCCORVEY, DERRIEL) (Entered: 12/27/2016) |
| 01/03/2017 | 7062 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 01/03/2017) |
| 01/03/2017 | 7063 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 01/03/2017) |
| 01/06/2017 | 7064 | NOTICE by PLAINTIFF(S) *OF ATTORNEY'S LIEN* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MARKS, STEVEN) (Entered: 01/06/2017) |
| 01/08/2017 | 7065 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Robert Williams and Linda Williams* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 01/08/2017) |
| 01/08/2017 | 7066 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 01/08/2017) |

| | | |
|---|---|---|
| 01/09/2017 | 7067 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 01/09/2017) |
| 01/09/2017 | 7068 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 01/09/2017) |
| 01/09/2017 | 7069 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 01/09/2017) |
| 01/11/2017 | 7070 | FANECA OBJECTORS' PETITION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, JEFF ROHRER. Memorandum, Declaration, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Declaration, # 3 Text of Proposed Order)(MOLO, STEVEN) Modified on 1/12/2017 (ems). (Entered: 01/11/2017) |
| 01/11/2017 | 7071 | RESPONSE in Opposition re 7029 MOTION for Attorney Fees *DISPUTE AND TO REQUEST SUBSTITUTION OF COUNSEL FOR PAUL RAYMOND TURNER* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Text of Proposed Order)(MARKS, STEVEN) (Entered: 01/11/2017) |
| 01/11/2017 | 7072 | Memorandum Joining Opposition re 7071 Response in Opposition to Motion, by PLAINTIFF(S). (LANGFITT, DAVID) Modified on 1/12/2017 (ems). (Entered: 01/11/2017) |
| 01/11/2017 | 7073 | NOTICE OF JOINDER IN PODHURST ORSECK, P.A.'S RESPONSE IN OPPOSITION TO ESTATE OF KEVIN TURNER'S MOTION TO RESOLVE ATTORNEY FEE DISPUTE filed by PLAINTIFF(S). Certificate of Service. (Attachments: # 1 Certificate of Service)(MCCORVEY, DERRIEL) Modified on 1/12/2017 (ems). (Entered: 01/11/2017) |
| 01/12/2017 | 7074 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **COPY SENT TO CHAMBERS FOR APPROVAL** (KARP, BRAD) Modified on 1/12/2017 (ems). (Entered: 01/12/2017) |
| 01/12/2017 | 7075 | NOTICE OF JOINDER IN PODHURST ORSECK, P.A.'S RESPONSE IN OPPOSITION TO ESTATE OF KEVIN TURNER'S MOTION TO RESOLVE ATTORNEY FEE DISPUTE filed by PLAINTIFF(S). Certificate of Service. (LUCKASEVIC, JASON) Modified on 1/12/2017 (ems). (Entered: 01/12/2017) |
| 01/13/2017 | 7076 | APPLICATION for Admission Pro Hac Vice of Robert A. Penza by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(DONALDSON, RICHARD) (Entered: 01/13/2017) |
| 01/13/2017 | 7077 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 01/13/2017) |
| 01/13/2017 | 7078 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 01/13/2017) |
| 01/13/2017 | 7079 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S). (GIDDENS, JOHN) (Entered: 01/13/2017) |
| 01/13/2017 | 7080 | NOTICE OF ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 1/17/2017 (ems). (Entered: 01/13/2017) |
| 01/13/2017 | 7081 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 1/17/2017 (ems). (Entered: 01/13/2017) |

| 01/13/2017 | 7082 | NOTICE OF ATTORNEY'S LIEN by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 1/17/2017 (ems). (Entered: 01/13/2017) |
|---|---|---|
| 01/18/2017 | 7083 | STIPULATION and [Proposed] Order by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 1/18/2017 (ems). (Entered: 01/18/2017) |
| 01/18/2017 | 7084 | STIPULATION AND ORDER THAT THE REVOCATION REQUEST SUBMITTED BY CHARLES MINCY IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING CHARLES MINCY. SIGNED BY HONORABLE ANITA B. BRODY ON 1/16/2017. 1/18/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-29) (ems) (Entered: 01/18/2017) |
| 01/19/2017 | 7085 | Memorandum (Corrected) Joining Opposition to Motion of Estate of Kevin Turner re 7029 MOTION for Attorney Fees *DISPUTE AND TO REQUEST SUBSTITUTION OF COUNSEL FOR PAUL RAYMOND TURNER* filed by PLAINTIFF(S). Certificate of Service. (LANGFITT, DAVID) Modified on 1/19/2017 (ems). (Entered: 01/19/2017) |
| 01/19/2017 | 7086 | STIPULATION and [Proposed] Order Approving Settlement Class Supplemental Notice by PLAINTIFFS' STEERING COMMITTEE. (Attachments: # 1 Exhibit A - Declaration of Shannon Wheatman, # 2 Exhibit B - Supplemental Notice, # 3 Certificate of Service)** (COPY SENT TO CHAMBERS FOR APPROVAL)** (SEEGER, CHRISTOPHER) Modified on 1/19/2017 (ems). (Entered: 01/19/2017) |
| 01/19/2017 | 7087 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S). (GIDDENS, JOHN) (Entered: 01/19/2017) |
| 01/19/2017 | 7088 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 1/19/2017 (ems). (Entered: 01/19/2017) |
| 01/19/2017 | 7089 | NOTICE OF ATTORNEY'S LIEN by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 1/19/2017 (ems). (Entered: 01/19/2017) |
| 01/19/2017 | 7090 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S). (GIDDENS, JOHN) (Entered: 01/19/2017) |
| 01/19/2017 | 7091 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 1/19/2017 (ems). (Entered: 01/19/2017) |
| 01/19/2017 | 7092 | NOTICE OF ATTORNEY'S LIEN by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 1/19/2017 (ems). (Entered: 01/19/2017) |
| 01/19/2017 | 7093 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S). (GIDDENS, JOHN) (Entered: 01/19/2017) |
| 01/19/2017 | 7094 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 1/19/2017 (ems). (Entered: 01/19/2017) |
| 01/19/2017 | 7095 | NOTICE OF ATTORNEY'S LIEN by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 1/19/2017 (ems). (Entered: 01/19/2017) |
| 01/20/2017 | 7096 | Consent MOTION for Extension of Time to File Response/Reply as to 7071 Response in Opposition to Motion, 7029 MOTION for Attorney Fees *DISPUTE AND TO REQUEST SUBSTITUTION OF COUNSEL FOR PAUL RAYMOND TURNER* filed by PLAINTIFF(S).Certificate of Counsel, Certificate of Service. (Attachments: # 1 Text of Proposed Order)(DONALDSON, RICHARD) (Entered: 01/20/2017) |

**-442-**

| 01/20/2017 | 7097 | STIPULATION AND ORDER THAT THE REVOCATION REQUESTS SUBMITTED BY RALPH WILLIAMS, LEX HILLIARD AND BRIAN SCHAEFERING ARE ACCEPTED, SUBJECT TO COURT APPROVAL, BECAUSE THEY SUBMITTED THE REQUESTS BEFORE OPT OUT LITIGATION HAS COMMENCED IN THIS COURT. SIGNED BY HONORABLE ANITA B. BRODY ON 1/19/2017. 1/20/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-29) (ems) (Entered: 01/20/2017) |
|---|---|---|
| 01/23/2017 | 7098 | Request for Status Conference by Seau Family *Pursuant to FRCP 16* by PLAINTIFF(S). (STRAUSS, STEVEN) (Entered: 01/23/2017) |
| 01/23/2017 | 7099 | ORDER granting 7096 MOTION FOR EXTENSION OF TIME TO FILE RESPONSE/REPLY RE 7096 Consent MOTION for Extension of Time to File Response/Reply as to 7071 Response in Opposition to Motion, 7029 MOTION for Attorney Fees *DISPUTE AND TO REQUEST SUBSTITUTION OF COUNSEL FOR PAUL RAYMOND TURNER* RESPONSES DUE BY 1/30/2017.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/23/2017.1/23/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/23/2017) |
| 01/23/2017 | 7100 | ORDER that THE STIPULATION AND PROPOSED ORDER APPROVING SETTLEMENT CLASS SUPPLEMENTAL NOTICE (ECF NO. 7086) IS DENIED. IT IS FURTHER ORDERED that CO-LEAD CLASS COUNSEL MUST SUBMIT A REVISED PROPOSED SETTLEMENT CLASS SUPPLEMENTAL NOTICE, FOCUSED ON CLASS MEMBER REGISTRATION ON OR BEFORE JANUARY 25, 2017.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/23/2017. 1/23/2017 ENTERED AND COPIES SENT VIA ECF.(mo, ) (Entered: 01/23/2017) |
| 01/24/2017 | 7101 | NOTICE of Hearing:A STATUS CONFERENCE REGARDING SETTLEMENT IMPLEMENTATION WILL BE HELD ON FEBRUARY 8, 2017 AT 10:30 A.M. IN COURTROOM 7B ON THE 7TH FLOOR OF THE U.S. COURTHOUSE, 601 MARKET ST., PHILADELPHIA, PA. BEFORE HONORABLE ANITA B. BRODY.1/24/2017 ENTERED AND COPIES SENT VIA ECF.(mo, ) (Entered: 01/24/2017) |
| 01/25/2017 | 7102 | APPLICATION/PETITION *BY CO-LEAD CLASS COUNSEL FOR APPROVAL OF PRE-REGISTRATION NOTICE AND [PROPOSED] ORDER* by PLAINTIFFS' STEERING COMMITTEE. (Attachments: # 1 Exhibit A - Pre-Registration Notice, # 2 Certificate of Service)(SEEGER, CHRISTOPHER) (Entered: 01/25/2017) |
| 01/25/2017 | 7103 | JOINT REQUEST FOR STATUS CONFERENCE PURSUANT TO FRCP 16 filed by PLAINTIFF(S).. Certificate of Service. (SCHERMERHORN, ANDREW) Modified on 1/25/2017 (ems). (Entered: 01/25/2017) |
| 01/25/2017 | 7104 | APPLICATION/PETITION *BY CO-LEAD CLASS COUNSEL FOR APPROVAL OF AMENDED PRE-REGISTRATION NOTICE AND [PROPOSED] ORDER* by PLAINTIFFS' STEERING COMMITTEE. (Attachments: # 1 Exhibit A - AMENDED PRE-REGISTRATION NOTICE, # 2 Certificate of Service)(SEEGER, CHRISTOPHER) (Entered: 01/25/2017) |
| 01/25/2017 | 7105 | STIPULATION *and [Proposed] Order Approving Settlement Class Supplemental Notice* by PLAINTIFFS' STEERING COMMITTEE. (Attachments: # 1 Exhibit A - Revised Proposed Settlement Class Supplemental Notice, # 2 Certificate of Service) ** (COPY SENT TO CHAMBERS FOR APPROVAL)** (SEEGER, CHRISTOPHER) Modified on 1/25/2017 (ems). (Entered: 01/25/2017) |
| 01/25/2017 | 7106 | RESPONSE to Motion re 7070 MOTION for Attorney Fees filed by PLAINTIFFS' STEERING COMMITTEE. (SEEGER, CHRISTOPHER) (Entered: 01/25/2017) |

| 01/25/2017 | 7107 | ORDER that THE AMENDED PRE-REGISTRATION NOTICE (ECF NO. 7104, EX. A) IS APPROVED AND MAY BE DISSEMINATED TO THE SETTLEMENT CLASS.SIGNED BY HONORABLE ANITA B. BRODY ON 1/25/2017. 1/25/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/25/2017) |
|---|---|---|
| 01/25/2017 | 7108 | APPLICATION for Admission Pro Hac Vice of P. John Brady, Esq. by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(DONALDSON, RICHARD) (Entered: 01/25/2017) |
| 01/26/2017 | 7109 | Statement *Regarding Fee Petition Opposition* by ALAN FANECA. (MOLO, STEVEN) (Entered: 01/26/2017) |
| 01/27/2017 | 7110 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 01/27/2017) |
| 01/27/2017 | 7111 | MOTION for Approval *of the Settlement Trust Agreement* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A, # 3 Certificate of Service)(KARP, BRAD) (Entered: 01/27/2017) |
| 01/30/2017 | 7112 | APPLICATION/PETITION *BY CO-LEAD CLASS COUNSEL FOR APPROVAL OF THE CONTENTS AND FOR THE DISSEMINATION OF SETTLEMENT CLASS SUPPLEMENTAL NOTICE PACKAGE AND [PROPOSED] ORDER* by PLAINTIFFS' STEERING COMMITTEE. (Attachments: # 1 Exhibit A - Supplemental Notice Insert Page, # 2 Exhibit B - Registration Page, # 3 Exhibit C - Revised Supplemental Notice, # 4 Certificate of Service)(SEEGER, CHRISTOPHER) (Entered: 01/30/2017) |
| 01/30/2017 | 7113 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 01/30/2017) |
| 01/30/2017 | 7114 | REPLY to Response to Motion re 7029 MOTION for Attorney Fees *DISPUTE AND TO REQUEST SUBSTITUTION OF COUNSEL FOR PAUL RAYMOND TURNER* filed by PLAINTIFF(S). (DONALDSON, RICHARD) (Entered: 01/30/2017) |
| 01/31/2017 | 7115 | APPLICATION... AND ORDER that THE CONTENTS OF THE SETTLEMENT CLASS SUPPLEMENTAL NOTICE PACKAGE ARE APPROVED AND that THE SETTLEMENT CLASS SUPPLEMENTAL NOTICE MAY BE DISSEMINATED TO THE SETTLEMENT CLASS. SIGNED BY HONORABLE ANITA B. BRODY ON 1/31/2017. 1/31/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/31/2017) |
| 01/31/2017 | 7116 | Statement *Regarding Fee Petitions* by PLAINTIFF(S). (CAPRETZ, JAMES) (Entered: 01/31/2017) |
| 02/01/2017 | 7117 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 2/1/2017 (ems). (Entered: 02/01/2017) |
| 02/01/2017 | 7118 | ORDER THAT THE MOTION TO APPROVE THE SETTLEMENT TRUST AGREEMENT IS GRANTED. IT IS FURTHER ORDERED THAT THE PROPOSED SETTLEMENT TRUST AGREEMENT COMPORTS WITH THE SETTLEMENT AGREEMENT AND IS APPROVED. CO-LEAD CLASS COUNSEL, THE NFL PARTIES, THE TRUSTEE, AND THE SPECIAL MASTERS SHALL PROMPTLY EXECUTE THE SETTLEMENT TRUST AGREEMENT APPROVED BY THE COURT, THEREBY CREATING THE SETTLEMENT TRUST. THE SETTLEMENT TRUST AND TRUSTEE WILL BE SUBJECT TO THE CONTINUING JURISDICTION AND SUPERVISION OF THIS COURT; ETC. SIGNED BY |

| | | |
|---|---|---|
| | | HONORABLE ANITA B. BRODY ON 2/1/2017. 2/1/2017 ENTERED AND COPIES E-MAILED. (ems) (Entered: 02/01/2017) |
| 02/06/2017 | 7119 | STIPULATION AND ORDER... IT IS ORDERED that BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUEST SUBMITTED BY MARK WASHINGTON IS APPROVED AND THE CLAIMS ADMINISTRTOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING MARK WASHINGTON..... SIGNED BY HONORABLE ANITA B. BRODY ON 2/2/2017. 2/6/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 02/06/2017) |
| 02/06/2017 | 7120 | AMENDED NOTICE:THE STATUS CONFERENCE REGARDING SETTLEMENT IMPLEMENTATION, SCHEDULED FOR FEBRUARY 8,2017 AT 10:30 A.M. (ECF NO. 7101), WILL BE HELD IN THE CEREMONIAL COURTROOM OF THE U.S. COURTHOUSE, 601 MARKET ST., PHILADELPHIA, PA.2/6/2017 ENTERED AND COPIES SENT VIA ECF.(mo, ) (Entered: 02/06/2017) |
| 02/08/2017 | 7121 | MOTION Motion to Grant Plaintiff's Request for Exclusion From Settlement Class (Plaintiff Shante Carver) filed by PLAINTIFF(S).. (Attachments: # 1 Proposed Order) (LUCKASEVIC, JASON) (Entered: 02/08/2017) |
| 02/08/2017 | 7122 | Minute Sheet for proceedings held before HONORABLE ANITA B. BRODY: Status Conference held on 2/8/2017. Counsel addressed the Court as to settlement implementation and the registering of class members so they can receive benefits from the settlement. Court Reporter: ESR. (tjd) (Entered: 02/08/2017) |
| 02/08/2017 | 7123 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to David Atkins* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(HONECKER, KATHRYN) (Entered: 02/08/2017) |
| 02/08/2017 | 7124 | NOTICE of Withdrawal of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S)(HONECKER, KATHRYN) (Entered: 02/08/2017) |
| 02/08/2017 | 7125 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Demetric Evans* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(HONECKER, KATHRYN) (Entered: 02/08/2017) |
| 02/08/2017 | 7126 | NOTICE of Withdrawal of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S)(HONECKER, KATHRYN) (Entered: 02/08/2017) |
| 02/08/2017 | 7127 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Andre Hastings* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(HONECKER, KATHRYN) (Entered: 02/08/2017) |
| 02/08/2017 | 7128 | NOTICE of Withdrawal of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S)(HONECKER, KATHRYN) (Entered: 02/08/2017) |
| 02/08/2017 | 7129 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to David Johnson* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(HONECKER, KATHRYN) (Entered: 02/08/2017) |
| 02/08/2017 | 7130 | NOTICE of Withdrawal of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S)(HONECKER, KATHRYN) (Entered: 02/08/2017) |
| 02/08/2017 | 7131 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Mark Walczak* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(HONECKER, KATHRYN) (Entered: 02/08/2017) |

| 02/09/2017 | 7132 | MOTION to Withdraw as Attorney *for Lawrence Sampleton, Jr. and Edythe Sampleton* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| --- | --- | --- |
| 02/09/2017 | 7133 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Lawrence Sampleton, Jr. and Edythe Sampleton* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| 02/09/2017 | 7134 | MOTION to Withdraw as Attorney *for Orson Mobley* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| 02/09/2017 | 7135 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Orson Mobley* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| 02/09/2017 | 7136 | MOTION to Withdraw as Attorney *for Kenyon Rasheed and Traci Wiedenfeld-Rasheed* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| 02/09/2017 | 7137 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Kenyon Rasheed and Traci Wiedenfeld-Rasheed* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| 02/09/2017 | 7138 | MOTION to Withdraw as Attorney *for Judson Flint and Dianne Flint* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| 02/09/2017 | 7139 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Judson Flint and Dianne Flint* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| 02/09/2017 | 7140 | MOTION to Withdraw as Attorney *for Timothy L. Smith* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| 02/09/2017 | 7141 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Timothy L. Smith* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| 02/09/2017 | 7142 | MOTION to Withdraw as Attorney *for Lance Brown and Jill Brown* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| 02/09/2017 | 7143 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Lance Brown and Jill Brown* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| 02/09/2017 | 7144 | MOTION to Withdraw as Attorney *for Conrad Goode* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| 02/09/2017 | 7145 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Conrad Goode* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| 02/09/2017 | 7146 | MOTION to Withdraw as Attorney *for Vashone Adams* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| 02/09/2017 | 7147 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Vashone Adams* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |
| 02/09/2017 | 7148 | MOTION to Withdraw as Attorney *for Toussaint Tyler* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) (Entered: 02/09/2017) |

| 02/10/2017 | 7149 | NOTICE of Withdrawal of Appearance by KRISTEN LIN BEIGHTOL on behalf of PLAINTIFF(S). (BEIGHTOL, KRISTEN) Modified on 2/17/2017 (ems). (Entered: 02/10/2017) |
|---|---|---|
| 02/13/2017 | 7150 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 02/13/2017) |
| 02/13/2017 | 7151 | APPLICATION/PETITION *CO-LEAD CLASS COUNSELS' PETITION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, ADOPTION OF A SET-ASIDE OF FIVE PERCENT OF EACH MONETARY AWARD AND DERIVATIVE CLAIMANT AWARD, AND CASE CONTRIBUTION AWARDS TO CLASS REPRESENTATIVES* by PLAINTIFF(S). (Attachments: # 1 Memorandum, # 2 Declaration of Christopher A. Seeger, # 3 Compendium of Exhibits, # 4 Exhibit A - Declaration of Orran S. Brown, Sr. on Class Communications, Registrations and Cost Projections, # 5 Exhibit B - Declaration of Matthew L. Garretson, # 6 Exhibit C - Declaration of Arnold Levin (Levin Sedran & Berman), # 7 Exhibit D - Declaration of Gene Locks (Locks Law Firm), # 8 Exhibit E - Declaration of Steven C. Marks (Podhurst Orseck, PA), # 9 Exhibit F - Declaration of Dianne M. Nast (NastLaw LLC), # 10 Exhibit G - Declaration of Sol H. Weiss (Anapol Weiss), # 11 Exhibit H - Declaration of Garrett D. Blanchfield Jr. (Reinhardt Wendorf & Blanchfield), # 12 Exhibit I - Declaration of William G. Caldes (Spector Roseman Kodroff & Willis, P.C.), # 13 Exhibit J - Declaration of Leonard A. Davis (Herman, Herman & Katz), # 14 Exhibit K - Declaration of James R. Dugan II (The Dugan Law Firm), # 15 Exhibit L - Declaration of Daniel C. Girard (Girard Gibbs LLP), # 16 Exhibit M - Declaration of Thomas V. Girardi (Girardi Keese), # 17 Exhibit N - Declaration of Bruce A. Hagen (Hagen, Rosskopf & Earle, LLC), # 18 Exhibit O - Declaration of Samuel Issacharoff, # 19 Exhibit P - Declaration of Richard Lewis (Hausfeld LLP), # 20 Exhibit Q - Declaration of Jason E. Luckasevic (Goldberg, Persky & White, P.C.), # 21 Exhibit R - Declaration of Derriel C. McCorvey (McCorvey Law, LLC), # 22 Exhibit S - Declaration of Mike McGlamry (Pope McGlamry), # 23 Exhibit T - Declaration of Craig R. Mitnick (Mitnick Law Office, LLC), # 24 Exhibit U - Declaration of David A. Rosen (Rose, Klein & Marias LLP), # 25 Exhibit V - Declaration of Frederick Schnek (Casey, Gerry, Schenk LLP), # 26 Exhibit W - Declaration of Anthony Tarricone (Kreindler & Kreindler LLP), # 27 Exhibit X - Declaration of Charles S. Zimmerman (Zimmerman Reed LLP), # 28 Exhibit Y - Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements, 7 Journal of Empirical Legal Studies, 811-46 (Dec.2010), # 29 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 02/13/2017) |
| 02/15/2017 | 7152 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Chris Dugan* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(HONECKER, KATHRYN) (Entered: 02/15/2017) |
| 02/15/2017 | 7153 | NOTICE of Withdrawal of Appearance by KATHRYN HONECKER on behalf of PLAINTIFF(S)(HONECKER, KATHRYN) (Entered: 02/15/2017) |
| 02/16/2017 | 7154 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 02/16/2017) |
| 02/16/2017 | 7155 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 02/16/2017) |
| 02/16/2017 | 7156 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 2/16/2017 (ems). (Entered: 02/16/2017) |
| 02/16/2017 | 7157 | NOTICE OF ATTORNEY'S LIEN by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 2/16/2017 (ems). (Entered: 02/16/2017) |

| 02/16/2017 | 7158 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 02/16/2017) |
|---|---|---|
| 02/16/2017 | 7159 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 2/16/2017 (ems). (Entered: 02/16/2017) |
| 02/16/2017 | 7160 | NOTICE OF ATTORNEY'S LIEN by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 2/16/2017 (ems). (Entered: 02/16/2017) |
| 02/17/2017 | 7161 | NOTICE by PLAINTIFF(S) re 7151 Application/Petition,,,,,,,,,,, 7109 Statement, 7106 Response to Motion (PENTZ, JOHN) (Entered: 02/17/2017) |
| 02/20/2017 | 7162 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 02/20/2017) |
| 02/21/2017 | 7163 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Tobiath/Lynn Myles)* (GIDDENS, JOHN) (Entered: 02/21/2017) |
| 02/21/2017 | 7164 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 2/21/2017 (ems). (Entered: 02/21/2017) |
| 02/21/2017 | 7165 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 02/21/2017) |
| 02/21/2017 | 7166 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Willie Harper)* (GIDDENS, JOHN) (Entered: 02/21/2017) |
| 02/21/2017 | 7167 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 2/21/2017 (ems). (Entered: 02/21/2017) |
| 02/21/2017 | 7168 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 02/21/2017) |
| 02/21/2017 | 7169 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Patrick Chukwurah)* (GIDDENS, JOHN) (Entered: 02/21/2017) |
| 02/21/2017 | 7170 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 2/21/2017 (ems). (Entered: 02/21/2017) |
| 02/21/2017 | 7171 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 02/21/2017) |
| 02/21/2017 | 7172 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Enoch DeMar)* (GIDDENS, JOHN) (Entered: 02/21/2017) |
| 02/21/2017 | 7173 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 2/21/2017 (ems, ). (Entered: 02/21/2017) |
| 02/21/2017 | 7174 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 02/21/2017) |
| 02/21/2017 | 7175 | MOTION for Permanent Injunction *By CO-LEAD CLASS COUNSEL PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS BY CLASS MEMBER, FRED WILLIS, THROUGH HIS ORGANIZATIONS, NFL PLAYERS BRAINS MATTER, HPN NEUROLOGIC, AND HPN CONCUSSION MANAGEMENT, OR OTHERWISE* filed by PLAINTIFF(S).Memorandum, Brief, Affidavit, Declaration, Certificate of Counsel or Certificate of Service. (Attachments: # 1 Memorandum of LAW IN SUPPORT OF MOTION FOR AN INJUNCTION PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS BY CLASS MEMBER, FRED WILLIS, THROUGH HIS ORGANIZATIONS, NFL PLAYERS BRAINS MATTER, HPN |

|  |  | NEUROLOGIC, AND HPN CONCUSSION MANAGEMENT, OR OTHERWISE, # 2 Declaration OF CHRISTOPHER A. SEEGER IN SUPPORT OF CO-LEAD CLASS COUNSELS MOTION FOR AN INJUNCTION PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS BY CLASS MEMBER, FRED WILLIS, THROUGH HIS ORGANIZATIONS, NFL PLAYERS BRAINS MATTER, HPN NEUROLOGIC, AND HPN CONCUSSION MANAGEMENT, OR OTHERWISE, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Text of Proposed Order) (SEEGER, CHRISTOPHER) (Entered: 02/21/2017) |
|---|---|---|
| 02/21/2017 | 7176 | MOTION for Attorney Fees *re: Alexander Objectors* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Exhibit A)(LUBEL, LANCE) (Entered: 02/21/2017) |
| 02/23/2017 | 7177 | ORDER THAT AN ORGANIZATIONAL MEETING OF ALL OPT OUT PLAINTIFFS WILL BE HELD ON 3/27/2017 AT 10:00 A.M. IN COURTROOM 7-B OF THE U.S. COURTHOUSE, 601 MARKET STREET, PHILADELPHIA, PA 19106. SIGNED BY HONORABLE ANITA B. BRODY ON 2/23/2017. 2/23/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL OPT OUT PLAINTIFFS LISTED ON ATTACHMENT A) (ems) (Entered: 02/23/2017) |
| 02/23/2017 | 7178 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 02/23/2017) |
| 02/23/2017 | 7179 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 02/23/2017) |
| 02/24/2017 | 7180 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Jeffrey Thomason)* (GIDDENS, JOHN) (Entered: 02/24/2017) |
| 02/24/2017 | 7181 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 2/24/2017 (ems). (Entered: 02/24/2017) |
| 02/24/2017 | 7182 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 02/24/2017) |
| 02/24/2017 | 7183 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Leon Seals)* (GIDDENS, JOHN) (Entered: 02/24/2017) |
| 02/24/2017 | 7184 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 2/24/2017 (ems). (Entered: 02/24/2017) |
| 02/24/2017 | 7185 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 02/24/2017) |
| 02/26/2017 | 7186 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Victor Green and Esther Green* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7187 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7188 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Keldrick Dunn* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7189 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7190 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Ken Woodard* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, |

**-449-**

| | | |
|---|---|---|
| | | MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7191 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7192 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Todd Weiner and Sunny Weiner* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7193 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7194 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Joe Walker* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7195 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7196 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Melvin Bratton and Eugenia Bratton* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7197 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7198 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Jacob Ford and Done' Ford* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7199 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7200 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to James Whitley* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7201 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7202 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Stephen Nathan Pierce and Jeanne Pierce* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/26/2017 | 7203 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/26/2017) |
| 02/27/2017 | 7204 | RESPONSE in Opposition re 7121 MOTION Motion to Grant Plaintiff's Request for Exclusion From Settlement Class (Plaintiff Shante Carver) filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Certificate of Service)(KARP, BRAD) (Entered: 02/27/2017) |
| 02/27/2017 | 7205 | NOTICE by PLAINTIFF(S) re 7151 Application/Petition,,,,,,,,,, (Attachments: # 1 Exhibit A)(DONALDSON, RICHARD) (Entered: 02/27/2017) |
| 02/27/2017 | 7206 | AMENDED DOCUMENT by PLAINTIFF(S). Amendment to 7175 MOTION for Permanent Injunction *By CO-LEAD CLASS COUNSEL PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS BY CLASS MEMBER, FRED WILLIS, THROUGH HIS ORGANIZATIONS, NFL PLAYERS BRAINS MATTER, HPN* |

| | | |
|---|---|---|
| | | *NEUROLOGIC, AND HPN CONCUSSION MANAGEMENT, OR OTHERW Amended Certificate of Service. (SEEGER, CHRISTOPHER) (Entered: 02/27/2017)* |
| 02/27/2017 | 7207 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Sylvester Stamps* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7208 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7209 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Willie Jackson* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7210 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7211 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Henry Dyer* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7212 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7213 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Dexter Carter* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7214 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7215 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Kendel Shello* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7216 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7217 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Reginald Nelson* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7218 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7219 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Gabe Northern* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7220 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7221 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to LeShon Johnson* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7222 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7223 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Herman Fontenot* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCCORVEY, |

| | | |
|---|---|---|
| | | DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7224 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7225 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Shawn King* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/27/2017 | 7226 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 02/27/2017) |
| 02/28/2017 | 7227 | MOTION for Leave to Appear Motion for Leave to Appear Telephonically *at the Organizational Meeting for All Opt Out Plaintiffs* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Text of Proposed Order)(MARKOWITZ, NEAL) (Entered: 02/28/2017) |
| 02/28/2017 | 7228 | MOTION for Extension of Time to File Response/Reply as to 7151 Application/Petition,,,,,,,,,, 7176 MOTION for Attorney Fees *re: Alexander Objectors*, 7106 Response to Motion, 7116 Statement, 7205 Notice (Other), 7161 Notice (Other) *CO-LEAD CLASS COUNSEL'S MOTION FOR EXTENSION OF TIME TO FILE REPLY MEMORANDUM IN SUPPORT OF THEIR FEE PETITION AND TO SET COORDINATED BRIEFING SCHEDULE* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 02/28/2017) |
| 03/01/2017 | 7229 | RESPONSE in Opposition re 7070 MOTION for Attorney Fees , 7228 MOTION for Extension of Time to File Response/Reply as to 7151 Application/Petition,,,,,,,,,, 7176 MOTION for Attorney Fees *re: Alexander Objectors*, 7106 Response to Motion, 7116 Statement, 7205 Notice (Other), 7161 Notice ( filed by PLAINTIFF(S). (PENTZ, JOHN) (Entered: 03/01/2017) |
| 03/01/2017 | 7230 | APPLICATION/PETITION *Armstrong Objectors' Petition for an Award of Attorneys' Fees* by PLAINTIFF(S). (COFFMAN, RICHARD) (Entered: 03/01/2017) |
| 03/01/2017 | 7231 | RESPONSE in Opposition re 7070 MOTION for Attorney Fees , 7228 MOTION for Extension of Time to File Response/Reply as to 7151 Application/Petition,,,,,,,,,, 7176 MOTION for Attorney Fees *re: Alexander Objectors*, 7106 Response to Motion, 7116 Statement, 7205 Notice (Other), 7161 Notice ( *CORRECTED* filed by PLAINTIFF(S). (PENTZ, JOHN) (Entered: 03/01/2017) |
| 03/01/2017 | 7232 | Memorandum of Law in Support of Their Petition for an Award of Attorneys' Fees by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (COFFMAN, RICHARD) (Entered: 03/01/2017) |
| 03/01/2017 | 7233 | RESPONSE to Motion re 7228 MOTION for Extension of Time to File Response/Reply as to 7151 Application/Petition,,,,,,,,,, 7176 MOTION for Attorney Fees *re: Alexander Objectors*, 7106 Response to Motion, 7116 Statement, 7205 Notice (Other), 7161 Notice ( filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, JEFF ROHRER. (MOLO, STEVEN) (Entered: 03/01/2017) |
| 03/01/2017 | 7234 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Erik Williams)* (GIDDENS, JOHN) (Entered: 03/01/2017) |
| 03/01/2017 | 7235 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 3/1/2017 (ems). (Entered: 03/01/2017) |
| 03/01/2017 | 7236 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 03/01/2017) |

| 03/01/2017 | 7237 | NOTICE by PLAINTIFF(S) re 7151 Application/Petition,,,,,,,,, *Anderson Supplemental Objection to Fee Petition* (COCHRAN, GEORGE) (Entered: 03/01/2017) |
| --- | --- | --- |
| 03/02/2017 | 7238 | ORDER that CO-LEAD CLASS COUNSEL'S MOTION FOR EXTENSION OF TIME (ECF NO. 7228) IS GRANTED, AS FOLLOWS:. ALL DEADLINES RELATED TO CO-LEAD CLASS COUNSEL'S PETITION FOR AN AWARD OF ATTORNEYS' FEES (ECF NO. 7151) ARE EXTENDED UNTIL FURTHER NOTICE;... SIGNED BY HONORABLE ANITA B. BRODY ON 3/1/2017.3/2/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/02/2017) |
| 03/02/2017 | 7239 | (PRO SE) FRED WILLIS' RESPONSE/OPPOSITION TO THE MOTION FOR INJUNCTIVE RELIEF by FRED WILLIS. Certificate of Service. (ems) (Entered: 03/02/2017) |
| 03/03/2017 | 7240 | REPLY to Response to Motion re 7121 MOTION Motion to Grant Plaintiff's Request for Exclusion From Settlement Class (Plaintiff Shante Carver) filed by PLAINTIFF(S). (Attachments: # 1 Exhibit Exhibit A)(LUCKASEVIC, JASON) (Entered: 03/03/2017) |
| 03/03/2017 | 7241 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Mark Smith)* (GIDDENS, JOHN) (Entered: 03/03/2017) |
| 03/03/2017 | 7242 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 3/3/2017 (ems). (Entered: 03/03/2017) |
| 03/03/2017 | 7243 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 03/03/2017) |
| 03/06/2017 | 7244 | ORDER - UPON CONSIDERATION OF PLAINTIFF' S MOTION TO GRANT REQUEST FROM EXCLUSION FROM SETTLEMENT CLASS, SAID MOTION IS GRANTED. PLAINTIFF SHANTE CARVER IS EXCLUDED FROM THE SETTLEMENT CLASS IN THIS MATTER.. SIGNED BY HONORABLE ANITA B. BRODY ON 3/6/2017.3/6/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/06/2017) |
| 03/06/2017 | 7245 | REPLY to Response to Motion re 7175 MOTION for Permanent Injunction *By CO-LEAD CLASS COUNSEL PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS BY CLASS MEMBER, FRED WILLIS, THROUGH HIS ORGANIZATIONS, NFL PLAYERS BRAINS MATTER, HPN NEUROLOGIC, AND HPN CONCUSSION MANAGEMENT, OR OTHERW filed by PLAINTIFF(S). (Attachments: # 1 Declaration of Jon Paschal)(SEEGER, CHRISTOPHER) (Entered: 03/06/2017)* |
| 03/07/2017 | 7246 | ORDER THAT THE GARRETSON RESOLUTION GROUP, INC. IS APPOINTED AS THE FUND ADMINISTRATOR OF THE ATTORNEYS' FEES QUALIFIED SETTLEMENT FUND UNDER THE SETTLEMENT AGREEMENT OUT OF WHICH ATTORNEYS' FEES WILL BE PAID PER ORDER OF THIS COURT AS SET FORTH IN ARTICLE XXI OF THE SETTLEMENT AGREEMENT. THE ADMINISTRATOR SHALL HAVE THE AUTHORITY TO CONDUCT ANY AND ALL ACTIVITIES NECESSARY TO ADMINISTER THIS FUND IN ACCORDANCE WITH THE RELEVANT TERMS, CONDITIONS AND RESTRICTIONS SET FORTH IN THE SETTLEMENT AGREEMENT AND ANY RELATED ORDERS OF THE COURT, WHICH THE ADMINISTRATOR IS RESPONSIBLE TO IMPLEMENT; ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 3/7/2017. 3/7/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-29) (ems) (Entered: 03/07/2017) |
| 03/07/2017 | 7247 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Jamie Nails* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: |

| | | 03/07/2017 |
|---|---|---|
| 03/07/2017 | 7248 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 03/07/2017) |
| 03/07/2017 | 7249 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Elliott Fortune* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 03/07/2017) |
| 03/07/2017 | 7250 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 03/07/2017) |
| 03/07/2017 | 7251 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Michael Bennett* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 03/07/2017) |
| 03/07/2017 | 7252 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 03/07/2017) |
| 03/07/2017 | 7253 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Dana and Karyn McLemore* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 03/07/2017) |
| 03/07/2017 | 7254 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 03/07/2017) |
| 03/08/2017 | 7255 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Andy and Jennifer Parker* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 03/08/2017) |
| 03/08/2017 | 7256 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 03/08/2017) |
| 03/08/2017 | 7257 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Verron and Sheena Haynes* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 03/08/2017) |
| 03/08/2017 | 7258 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 03/08/2017) |
| 03/08/2017 | 7259 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 3/8/2017 (ems). (Entered: 03/08/2017) |
| 03/08/2017 | 7260 | ORDER that CO-LEAD CLASS COUNSEL WILL DISTRIBUTE THE ATTACHED NOTICE TO ALL SETTLEMENT CLASS MEMBERS, ON OR BEFORE MARCH 13, 2017, PURSUANT TO FEDERAL RULE PROCEDURE 23(h).. SIGNED BY HONORABLE ANITA B. BRODY ON 3/8/2017. 3/8/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/08/2017) |
| 03/08/2017 | 7261 | ORDER - IN LIGHT OF THE FACT that CO-LEAD CLASS COUNSEL HAS FILED A PETITION FOR AN AWARD OF ATTORNEYS' FEES (MDL ECF NO. 7151) AND NOTICE WILL BE DISTRIBUTED TO THE CLASS, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(h), IT IS ORDERED that:.... SIGNED BY HONORABLE ANITA B. BRODY ON 3/8/2017. 3/8/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/08/2017) |
| 03/09/2017 | 7262 | NOTICE of Appearance by MICHAEL H. MOIRANO on behalf of JOHN LORENTZ with Certificate of Service(MOIRANO, MICHAEL) (Entered: 03/09/2017) |

| 03/09/2017 | 7263 | MOTION to Intervene filed by JOHN LORENTZ.. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order, # 3 Certificate of Service)(MOIRANO, MICHAEL) (Entered: 03/09/2017) |
|---|---|---|
| 03/09/2017 | 7264 | STIPULATION AND ORDER-1(footnote) THIS STIPULATION AND AGREEMENT... IT IS SO ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUESTS SUBMITTED BY CHARLES ALEXANDER, JR., GREGORY BELL, DARNELL BING, LOUIS CORDILEONE AND LABRANDON TOEFIELD ARE APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING CHARLES ALEXANDER, JR., GREGORY BELL, DARNELL BING, LOUIS CORDILEONE AND LABRANDON TOEFIELD..... SIGNED BY HONORABLE ANITA B. BRODY ON 3/9/2017. 3/9/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/09/2017) |
| 03/09/2017 | 7265 | (PRO SE) FRED WILLIS' FURTHER RESPONSE/OPPOSITION TO ATTORNEY SEAGER'S REPLY IN RESPONSE TO FRED WILLIS' OPPOSITION TO THE MOTION FOR INJUNCTIVE RELIEF by FRED WILLIS. Certificate of Service. (ems) (Entered: 03/09/2017) |
| 03/10/2017 | 7266 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Rickey Dixon and Lorraine Dixon* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 03/10/2017) |
| 03/10/2017 | 7267 | MOTION to Withdraw as Attorney *for Brandon Winey* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) (Entered: 03/10/2017) |
| 03/10/2017 | 7268 | MOTION to Withdraw as Attorney *for Floyd Turner, Jr. and Lorri Turner* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 03/10/2017) |
| 03/10/2017 | 7269 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Floyd Turner, Jr. and Lorri Turner* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 03/10/2017) |
| 03/10/2017 | 7270 | MOTION to Withdraw as Attorney *for Selwyn Jones and Raquel Jones* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 03/10/2017) |
| 03/10/2017 | 7271 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Selwyn Jones and Raquel Jones* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 03/10/2017) |
| 03/10/2017 | 7272 | MOTION to Withdraw as Attorney *for Robert Jackson, Jr.* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) (Entered: 03/10/2017) |
| 03/10/2017 | 7273 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Robert Jackson, Jr.* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 03/10/2017) |
| 03/10/2017 | 7274 | MOTION to Withdraw as Attorney *for Jeffery Jackson* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) (Entered: 03/10/2017) |
| 03/10/2017 | 7275 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Jeffery Jackson* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 03/10/2017) |
| 03/10/2017 | 7276 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate |

**-455-**

| | | |
|---|---|---|
| | | of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 3/10/2017 (ems). (Entered: 03/10/2017) |
| 03/10/2017 | 7277 | MOTION to Withdraw as Attorney *for David Casper and Susan Casper* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 03/10/2017) |
| 03/10/2017 | 7278 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for David Casper and Susan Casper* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 03/10/2017) |
| 03/10/2017 | 7279 | MOTION to Withdraw as Attorney *for Tony Casillas and Tamara Casillas* filed by PLAINTIFF(S)..(ZIMMERMAN, CHARLES) (Entered: 03/10/2017) |
| 03/10/2017 | 7280 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Tony Casillas and Tamara Casillas* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 03/10/2017) |
| 03/10/2017 | 7281 | MOTION for Order *REGARDING RETENTION, EXCHANGE, AND CONFIDENTIALITY OF CLAIMS INFORMATION IN NFL CONCUSSION SETTLEMENT PROGRAM* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 03/10/2017) |
| 03/10/2017 | 7282 | Memorandum in Opposition *To Motion For Set Aside* by PLAINTIFF(S). (PUJOL, EDUARDO) (Entered: 03/10/2017) |
| 03/13/2017 | 7283 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Clifton Crosby)* (GIDDENS, JOHN) (Entered: 03/13/2017) |
| 03/13/2017 | 7284 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. GIDDENS, JOHN) Modified on 3/13/2017 (ems). (Entered: 03/13/2017) |
| 03/13/2017 | 7285 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 03/13/2017) |
| 03/14/2017 | 7286 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 03/14/2017) |
| 03/14/2017 | 7287 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 03/14/2017) |
| 03/14/2017 | 7288 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 03/14/2017) |
| 03/14/2017 | 7289 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 03/14/2017) |
| 03/14/2017 | 7290 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Richard Bielski)* (GIDDENS, JOHN) (Entered: 03/14/2017) |
| 03/14/2017 | 7291 | MOTION for Attorney Fees *re: Richard Bielski* filed by PLAINTIFF(S).Certificate of Service.(GIDDENS, JOHN) (Entered: 03/14/2017) |
| 03/14/2017 | 7292 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 03/14/2017) |
| 03/16/2017 | 7293 | MOTION for Leave to Appear Telephonically *At the Organizational Meetings for All Opt Out Plaintiffs Scheduled for March 27, 2017* filed by PLAINTIFF(S).Certificate of Service.(STRAUSS, STEVEN) (Entered: 03/16/2017) |

**-456-**

| 03/16/2017 | 7294 | ORDER THAT THE MOTION FOR LEAVE TO APPEAR TELEPHONICALLY AT THE ORGANIZATIONAL MEETING FOR ALL OPT OUT PLAINTIFFS SCHEDULED FOR 3/27/2017 IS GRANTED. FOR GOOD CAUSE SHOWN, NEAL A. MARKOWITZ SHALL BE ALLOWED TO APPEAR BY TELEPHONE AT THE HEARING SCHEDULED FOR 3/27/2017 AT 10:00 A.M.. SIGNED BY HONORABLE ANITA B. BRODY ON 3/16/2017. 3/16/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 13-CV-4549) (ems) (Entered: 03/16/2017) |
|---|---|---|
| 03/16/2017 | 7295 | MOTION to Appear Telephonically for Organizational Meeting for Organizational Meeting for Opt Out Plaintiffs Scheduled for March 27, 2017 filed by PLAINTIFF(S).Motion. (Attachments: # 1 Text of Proposed Order)(WINTERS, JOHN) (Entered: 03/16/2017) |
| 03/17/2017 | 7296 | ORDER THAT A TELEPHONE CONFERENCE REGARDING CO-LEAD CLASS COUNSEL'S MOTION FOR AN INJUNCTION PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS BY CLASS MEMBER FRED WILLIS (DOC. NO. 7175) WILL BE HELD ON 3/29/2017 AT 2:00 P.M.; ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 3/16/2017. 3/17/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 03/17/2017) |
| 03/20/2017 | 7297 | STIPULATION AND ORDER THAT THE REVOCATION REQUESTS SUBMITTED BY JOSEPH HORN AND CHRISTOPHER MCALISTER ARE APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING JOSEPH HORN AND CHRISTOPHER MCALISTER. SIGNED BY HONORABLE ANITA B. BRODY ON 3/16/2017. 3/20/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-29) (ems) (Entered: 03/20/2017) |
| 03/20/2017 | 7298 | NOTICE by PLAINTIFF(S) re 7296 Order, *Notice of Compliance with Court Order* (Attachments: # 1 Letter and Order)(SEEGER, CHRISTOPHER) (Entered: 03/20/2017) |
| 03/20/2017 | 7299 | RESPONSE in Opposition re 6696 MOTION to Withdraw as Attorney *for Rickey Dixon and Lorraine Dixon Motion and Response to Zimmerman Reed Motion and Notice for Attorney;s Lien* filed by RICKEY DIXON. (Attachments: # 1 Certificate of Service certificate of service, # 2 Exhibit detail cost transaction file list)(DIXON, RICKEY) (Entered: 03/20/2017) |
| 03/21/2017 | 7300 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 03/21/2017) |
| 03/21/2017 | 7301 | NOTICE of Appearance by AHMED S. DIAB on behalf of PLAINTIFF(S) with Certificate of Service(DIAB, AHMED) (Entered: 03/21/2017) |
| 03/21/2017 | 7302 | MOTION for Leave to Appear Telephonically *at the Organizational Meetings for All Opt Out Plaintiffs Scheduled for March 27, 2017* filed by PLAINTIFF(S).Certificate of Service.(DIAB, AHMED) (Entered: 03/21/2017) |
| 03/21/2017 | 7303 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Ollie Smith)* (GIDDENS, JOHN) (Entered: 03/21/2017) |
| 03/21/2017 | 7304 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 3/21/2017 (ems). (Entered: 03/21/2017) |
| 03/21/2017 | 7305 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 03/21/2017) |

| 03/21/2017 | 7306 | Exhibit List *Response in Opposition of Motion and Notice of Attorney Lien by Zimmerman Reed* by RICKEY DIXON.. (Attachments: # 1 Exhibit Exhibit 2A - Plaintiff Support part 1 or 2, # 2 Exhibit Exhubit 2B Plaintiff Support Part 2 of 2, # 3 Exhibit Exhibit 3 - Attorney Expense Report)(DIXON, RICKEY) (Entered: 03/21/2017) |
|---|---|---|
| 03/21/2017 | 7307 | ORDER THAT THE PLAINTIFF'S MOTION FOR LEAVE TO APPEAR TELEPHONICALLY AT THE ORGANIZATIONAL MEETING FOR ALL OPT OUT PLAINTIFFS SCHEDULED FOR 3/27/2017 (DOC. NO. 7293) IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 3/20/2017. 3/21/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 13-CV-1531) (ems) (Entered: 03/21/2017) |
| 03/21/2017 | 7308 | ORDER THAT JOHN F. WINTERS, JR. SHALL BE ALLOWED TO APPEAR BY TELEPHONE AT THE HEARING SCHEDULED FOR 3/27/2017 AT 10:00 A.M.. SIGNED BY HONORABLE ANITA B. BRODY ON 3/20/2017. 3/21/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-CV-5212) (ems) (Entered: 03/21/2017) |
| 03/21/2017 | 7309 | MOTION for Leave to Appear Telephonically at Organizational Meeting for all Opt Out Plaintiffs Scheduled for March 27, 2017 filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(KENNEY, WILLIAM) (Entered: 03/21/2017) |
| 03/21/2017 | 7310 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Patrick Thomas)* (GIDDENS, JOHN) (Entered: 03/21/2017) |
| 03/21/2017 | 7311 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 3/21/2017 (ems). (Entered: 03/21/2017) |
| 03/21/2017 | 7312 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 03/21/2017) |
| 03/21/2017 | 7313 | Response in Opposition *to Notice and Motion for Attorney Fees filed by Zimmerman Reed* by LORRAINE DIXON. (Attachments: # 1 Certificate of Service certificate of service, # 2 Exhibit Contract, # 3 Exhibit Termination Letter and supporting documents, # 4 Exhibit Court's Order, # 5 Exhibit Short Form Complaint, # 6 Exhibit Questionnaire forms, # 7 Exhibit Unanswered e-mail regrding status of individual case, # 8 Exhibit note demonstrating that Plaintiff sent Petitioner medical records, # 9 Exhibit Detail Cost Transition File List) (DIXON, LORRAINE) (Entered: 03/21/2017) |
| 03/22/2017 | 7314 | NOTICE of Appearance by DOUGLAS E. ROBERTS on behalf of ANAPOLIS WEISS, P.C. with Certificate of Service. (ems) (Entered: 03/22/2017) |
| 03/22/2017 | 7315 | NOTICE of Appearance by GAETAN ALFANO on behalf of ANAPOLIS WEISS, P.C. with Certificate of Service. (ems) (Entered: 03/22/2017) |
| 03/22/2017 | 7316 | ORDER THAT PLAINTIFF'S MOTION (DOC. NO. 7302) FOR AHMED S. DIAB TO PARTICIPATE VIA TELEPHONE AT THE ORGANIZATIONAL MEETING FOR ALL OPT OUT PLAINTIFFS SCHEDULED FOR 3/27/2017 IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 3/22/2017. 3/22/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 13-CV-1532) (ems) (Entered: 03/22/2017) |
| 03/22/2017 | 7317 | ORDER THAT PLAINTIFF'S MOTION (DOC. NO. 7309) FOR BILL KENNEY TO PARTICIPATE VIA TELEPHONE AT THE ORGANIZATIONAL MEETING FOR ALL OPT OUT PLAINTIFFS SCHEDULED FOR 3/27/2017 IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 3/22/2017. 3/22/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-4779) (ems) (Entered: 03/22/2017) |
| 03/22/2017 | 7318 | Exhibit List *Response to Notice and Motion by Zimmerman Reed Lien for Attorney Fees completed exhibits* by LORRAINE DIXON.. certiicate of service (Attachments: # |

United States District Court Eastern District of Pennsylvania

| | | |
|---|---|---|
| | | [1](#) Certificate of Service certificate of service, # [2](#) Exhibit Exhibit 8 Title page, # [3](#) Exhibit Medical bill - offered to demonstrate report paid for with Plaintiffs funds, # [4](#) Exhibit Medical Bill - Offered to demonstrrate report paid for with Plaintiff's funds, # [5](#) Exhibit Medical bill - Offered to demonstrate reports paid for with Plaintiff's funds, # [6](#) Exhibit Medical bill - Offered to demonstrate reports paid for with plaintiff's funds, # [7](#) Exhibit Medical bill - offered to demonstrate reports paid for with plaintiff's funds, # [8](#) Exhibit Exhibit 9 title page, # [9](#) Exhibit proof that Plaintiff provided services and petitioner statement of reimbursement)(DIXON, LORRAINE) (Entered: 03/22/2017) |
| 03/23/2017 | [7319](#) | RESPONSE in Opposition re [7263](#) MOTION to Intervene filed by ANAPOLIS WEISS, P.C.. (Attachments: # [1](#) Exhibit)(ROBERTS, DOUGLAS) (Entered: 03/23/2017) |
| 03/23/2017 | [7320](#) | NOTICE of Appearance by HEATHER N. BARNES on behalf of PLAINTIFF(S) ** (FILED IN ERROR; ATTORNEY TO RE-FILE)** (BARNES, HEATHER) Modified on 3/23/2017 (ems). (Entered: 03/23/2017) |
| 03/23/2017 | [7321](#) | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Chad Fann)* (GIDDENS, JOHN) (Entered: 03/23/2017) |
| 03/23/2017 | [7322](#) | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 3/24/2017 (ems). (Entered: 03/23/2017) |
| 03/23/2017 | [7323](#) | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 03/23/2017) |
| 03/23/2017 | [7324](#) | ORDER - CONSIDERING THE UNCONTESTED MOTION OF CO-LEAD CLASS COUNSEL, CLASS COUNSEL AND SUBCLASS COUNSEL FOR ENTRY OF AN ORDER IN AID OF IMPLEMENTATION OF THENFL CONCUSSION SETTLEMENT PROGRAM (THE "PROGRAM"), PURSUANT TO THIS COURT'S CONTINUING AND EXCLUSIVE JURISDICTION UNDER... IT IS HEREBY ORDERED AS FOLLOWS:... 18. EFFECT ON OTHER LAW... (RE: ECF DOCUMENT NO. 7281). SIGNED BY HONORABLE ANITA B. BRODY ON 3/22/2017. 3/23/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/23/2017) |
| 03/23/2017 | [7325](#) | NOTICE of Appearance by THEODORE E. KARATINOS on behalf of PLAINTIFF(S) (KARATINOS, THEODORE) (Entered: 03/23/2017) |
| 03/23/2017 | [7326](#) | MOTION for Leave to Appear Telephonically for Organizational Meeting for All Opt Out Plaintiffs Scheduled for March 27, 2017 filed by PLAINTIFF(S).Certificate of Service. (Attachments: # [1](#) Text of Proposed Order)(FRANCO, DAVID) (Entered: 03/23/2017) |
| 03/23/2017 | [7327](#) | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Jevon Langford and Jayna Langford* (Attachments: # [1](#) Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 03/23/2017) |
| 03/23/2017 | [7328](#) | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 03/23/2017) |
| 03/23/2017 | [7329](#) | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Calvin Miller and Dee Miller* (Attachments: # [1](#) Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 03/23/2017) |
| 03/23/2017 | [7330](#) | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 03/23/2017) |

**-459-**

| 03/23/2017 | 7331 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Gerald Willhite* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 03/23/2017) |
|---|---|---|
| 03/23/2017 | 7332 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 03/23/2017) |
| 03/23/2017 | 7333 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to James Runnels, Jr.* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 03/23/2017) |
| 03/23/2017 | 7334 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 03/23/2017) |
| 03/23/2017 | 7335 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Karon Riley and Terri Riley* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 03/23/2017) |
| 03/23/2017 | 7336 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 03/23/2017) |
| 03/23/2017 | 7337 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Antonio Langham* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 03/23/2017) |
| 03/23/2017 | 7338 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 03/23/2017) |
| 03/24/2017 | 7339 | ORDER THAT THE MOTION OF PLAINTIFF THOMAS CLAPP, II, IS GRANTED. DAVID B. FRANCO, CO-COUNSEL FOR THE AFOREMENTIONED PLAINTIFF, SHALL BE ALLOWED TO APPEAR TELEPHONICALLY FOR THE ORGANIZATIONAL MEETING FOR ALL OPT OUT PLAINTIFFS SCHEDULED FOR 3/27/2017 AT 10:00 A.M.. SIGNED BY HONORABLE C. DARNELL JONES FOR THE HONORABLE ANITA B. BRODY ON 3/24/2017. 3/24/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 13-CV-6354) (ems) (Entered: 03/24/2017) |
| 03/24/2017 | 7340 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) ** (COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 3/24/2017 (ems). (Entered: 03/24/2017) |
| 03/24/2017 | 7341 | ORDER THAT THE MOTION OF PLAINTIFF ANITA MARTIN (DOC. NO. 2 IN 14-CV-3381) IS GRANTED. J. KENT EMISON, COUNSEL FOR THE AFOREMENTIONED PLAINTIFF, SHALL BE ALLOWED TO APPEAR TELEPHONICALLY AT THE 3/27/2017 MEETING. SIGNED BY HONORABLE MARK A. KEARNEY FOR THE HONORABLE ANITA B. BRODY ON 3/24/2017. 3/24/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-3381) (ems) (Entered: 03/24/2017) |
| 03/24/2017 | 7342 | (PRO SE) AFFIDAVIT IN RESPONSE/OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF by FRED WILLIS. Certificate of Service. (ems) (Entered: 03/24/2017) |
| 03/27/2017 | 7343 | NOTICE of Appearance by SANGA TURNBULL on behalf of PLAINTIFF(S) with Certificate of Service. (ems) (Entered: 03/27/2017) |
| 03/27/2017 | 7344 | MEMORANDUM IN OPPOSITION TO CO-LEAD CLASS COUNSEL'S PETITION FOR AN AWARD OF ATTORNEY'S FEES, REIMBURSEMENT OF COSTS AND EXPENSES, ADOPTION OF A SET-ASIDE OF EACH MONETARY AWARD AND |

| | | |
|---|---|---|
| | | OTHER RELIEF by PLAINTIFF(S). Certificate of Service. (ems) (Entered: 03/27/2017) |
| 03/27/2017 | 7345 | NOTICE of Appearance by ANOUSH HAKIMI on behalf of PLAINTIFF(S) with Certificate of Service(HAKIMI, ANOUSH) (Entered: 03/27/2017) |
| 03/27/2017 | 7346 | APPLICATION/PETITION *MEMORANDUM IN OPPOSITION TO CO-LEAD CLASS COUNSELS PETITION FOR AN AWARD OF ATTORNEYS FEES, REIMBURSEMENT OF COSTS AND EXPENSES, ADOPTION OF A SET-ASIDE OF FIVE PERCENT OF EACH MONETARY AWARD AND DERIVATIVE CLAIMANT AWARD, AND CASE CONTRIBUTION AWARDS TO CLASS REPRESENTATIVES* by PLAINTIFF(S). (HAKIMI, ANOUSH) (Entered: 03/27/2017) |
| 03/27/2017 | 7347 | MOTION for Permanent Injunction *By CO-LEAD CLASS COUNSEL PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS BY JIM MCCABE AND NFL CASE CONSULTING, LLC* filed by PLAINTIFF(S).Memorandum, Declaration, Certificate of Service. (Attachments: # 1 Memorandum OF LAW IN SUPPORT OF MOTION FOR AN INJUNCTION PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS BY JIM MCCABE AND NFL CASE CONSULTING, LLC, # 2 Declaration OF CHRISTOPHER A. SEEGER, # 3 Declaration OF CLAIMS ADMINISTRATOR, ORRAN L. BROWN, SR., # 4 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 03/27/2017) |
| 03/27/2017 | 7348 | 🔊 Audio File 3/27/2017 10:04 AM, regarding OPT-OUT ORGANIZATIONAL CONFERENCE held on 3/27/2017, before HONORABLE ANITA B. BRODY (pk, ) (Entered: 03/27/2017) |
| 03/27/2017 | 7349 | NOTICE of Appearance by RONALD DEAN GRESHAM on behalf of PLAINTIFF(S) with Certificate of Service (GRESHAM, RONALD) Modified on 3/27/2017 (ems). (Entered: 03/27/2017) |
| 03/27/2017 | 7350 | Response Objection and Memorandum in Opposition to Co-Lead Counsel's Petition for an Award of Attorneys; Fees, Reimbursement of Costs and Expenses, Adoption of Set Aside of Each Monetary Award and Other Relief (This Document Relates to Docket #7151) by PLAINTIFF(S). (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C) (BARNES, HEATHER) (Entered: 03/27/2017) |
| 03/27/2017 | 7351 | (PRO SE) OBJECTION OF RONALD SABAL TO PETITION FOR ATTORNEYS' FEES, COSTS AND HOLDBACK by RONALD SABAL. (ems) (Entered: 03/27/2017) |
| 03/27/2017 | 7352 | NOTICE of Appearance by LANCE H. LUBEL on behalf of PLAINTIFF(S) with Certificate of Service(LUBEL, LANCE) (Entered: 03/27/2017) |
| 03/27/2017 | 7353 | Objections by PLAINTIFF(S) - *CLASS MEMBERS WINFRED TUBBS AND GREG HILL TO DOCUMENT 7151.* (Attachments: # 1 Joinder of Settlement Class Member - Winfred Tubbs, # 2 Joinder of Settlement Class Member - Greg Hill, # 3 Declaration) (GRESHAM, RONALD) (Entered: 03/27/2017) |
| 03/27/2017 | 7354 | Objections by PLAINTIFF(S) *Co-Lead Class Counsel's Application for Attorneys Fees (Doc. 7151).* (Attachments: # 1 Exhibit A, # 2 Exhibit A-1)(LUBEL, LANCE) (Entered: 03/27/2017) |
| 03/27/2017 | 7355 | Objections by PLAINTIFF(S) re 7151 Application/Petition,,,,,,,,, 7354 Objections . (Attachments: # 1 Exhibit A, # 2 Exhibit B)(LUBEL, LANCE) (Entered: 03/27/2017) |
| 03/27/2017 | 7356 | APPLICATION/PETITION *PLAINTIFFS RESPONSE IN OPPOSITION TO PETITION FOR ADOPTION OF SET-ASIDE OF FIVE PERCENT OF EACH* |

**-461-**

| | | |
|---|---|---|
| | | *MONETARY AWARD AND DERIVATIVE CLAIMANT AWARD* by PLAINTIFF(S). (DEVANON, NICOLE) (Entered: 03/27/2017) |
| 03/27/2017 | 7357 | NOTICE of Appearance by JOE H. TUCKER, JR on behalf of PLAINTIFF(S) with Certificate of Service(TUCKER, JOE) (Entered: 03/27/2017) |
| 03/27/2017 | 7358 | NOTICE of Appearance by KEVIN L. GOLDEN on behalf of PLAINTIFF(S) with Certificate of Service(GOLDEN, KEVIN) (Entered: 03/27/2017) |
| 03/27/2017 | 7359 | Response in Opposition *To Motion For Set Aside* by PLAINTIFF(S). (PATEL, RICKY) (Entered: 03/27/2017) |
| 03/27/2017 | 7360 | Objections by PLAINTIFF(S) *to Request for Attorneys' Fees and Holdback*. (TUCKER, JOE) (Entered: 03/27/2017) |
| 03/27/2017 | 7361 | NOTICE of Appearance by JOE H. TUCKER, JR on behalf of PLAINTIFF(S) with Certificate of Service(TUCKER, JOE) (Entered: 03/27/2017) |
| 03/27/2017 | 7362 | NOTICE of Appearance by KEVIN L. GOLDEN on behalf of PLAINTIFF(S) with Certificate of Service(GOLDEN, KEVIN) (Entered: 03/27/2017) |
| 03/27/2017 | 7363 | NOTICE OF JOINDER IN ESTATE OF KEVIN TURNER'S RESPONSE AND LIMITED OPPOSITION TO CO-LEAD COUNSEL'S PETITION FOR AN AWARD OF ATTORNEYS' FEES AND ADOPTION OF A SET-ASIDE OF EACH MONETARY AWARD filed by PLAINTIFF(S). Declaration and Certificate of Service. (Attachments: # 1 Exhibit A (Part 1), # 2 Exhibit A (Part 2), # 3 Exhibit A (Part 3), # 4 Exhibit A (Part 4), # 5 Exhibit A (Part 5))(TUCKER, JOE) Modified on 3/28/2017 (ems). (Entered: 03/27/2017) |
| 03/27/2017 | 7364 | APPLICATION/PETITION *of Objectors Preston and Katherine Jones for Award of Attorneys' Fees for Successful Efforts to Improve the Settlement for NFL Europe League Players* by PLAINTIFF(S). (Attachments: # 1 Memorandum, # 2 Declaration of James T. Capretz, # 3 Exhibit A - Jones Objection, # 4 Exhibit B - Morey Objection, # 5 Exhibit C - Slack Objection, # 6 Exhibit D - Duff Objection, # 7 Exhibit E - Zeno Objection, # 8 Exhibit F - Alexander Objection, # 9 Exhibit G - Heimburger Objection, # 10 Text of Proposed Order)(CAPRETZ, JAMES) (Entered: 03/27/2017) |
| 03/27/2017 | 7365 | NOTICE OF JOINDER IN ESTATE OF KEVIN TURNER'S MOTION TO RESOLVE ATTORNEY FEE DISPUTE AND APPEARANCE AS COUNSEL FOR STEVEN ANTHONY SMITH filed by PLAINTIFF(S). Declaration and Certificate of Service. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D (Part 1), # 5 Exhibit D (Part 2), # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H) (TUCKER, JOE) Modified on 3/28/2017 (ems). (Entered: 03/27/2017) |
| 03/27/2017 | 7366 | RESPONSE in Support re 7070 MOTION for Attorney Fees *and in response to Dkts. 7151, 7161, 7230, and 7237* filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, JEFF ROHRER. (Attachments: # 1 Declaration of Joseph J. Floyd, # 2 Exhibit, # 3 Exhibit)(MOLO, STEVEN) (Entered: 03/27/2017) |
| 03/27/2017 | 7367 | Objections by PLAINTIFF(S) re 7151 Application/Petition,,,,,,,,, *Joinder to Objections*. (BUCKLEY, DAVID) (Entered: 03/27/2017) |
| 03/27/2017 | 7368 | NOTICE of Appearance by GEORGE WILLARD COCHRAN, JR on behalf of PLAINTIFF(S) (Attachments: # 1 Exhibit 1)(COCHRAN, GEORGE) (Entered: 03/27/2017) |
| 03/27/2017 | 7369 | NOTICE by PLAINTIFF(S) *Second Supplemental Notice of Objections to Fees by Curtis Anderson* **(FILED IN ERROR; ATTORNEY TO RE-FILE)** (COCHRAN, GEORGE) Modified on 3/28/2017 (ems). (Entered: 03/27/2017) |

| 03/27/2017 | 7370 | NOTICE by PLAINTIFF(S) *CORRECTED Second Supplemental Notice of Objections to Fees by Curtis Anderson* (COCHRAN, GEORGE) (Entered: 03/27/2017) |
|---|---|---|
| 03/27/2017 | 7371 | Objections by PLAINTIFF(S) *re: Application/Petition for Fees (Docket No. 7151).* (ROSENTHAL, MICHAEL) (Entered: 03/27/2017) |
| 03/27/2017 | 7372 | NOTICE of Appearance by ANTONIO M. LAWSON on behalf of PLAINTIFF(S) with Certificate of Service. (ems) (Entered: 03/28/2017) |
| 03/27/2017 | 7373 | OBJECTIONS TO CO-LEAD CLASS COUNSEL'S REQUEST FOR 5% SET ASIDE by PLAINTIFF(S). Certificate of Service. (ems) (Entered: 03/28/2017) |
| 03/28/2017 | 7374 | STIPULATION AND ORDER... IT IS SO ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUESTS SUBMITTED BY QUIN GRAY AND KENT HILL ARE APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING QUINN GRAY AND KENT HILL. APPROVED BY THE COURT:. SIGNED BY HONORABLE ANITA B. BRODY ON 3/27/2017. 3/28/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/28/2017) |
| 03/28/2017 | 7375 | NOTICE by PLAINTIFF(S) *JOINDER IN OBJECTIONS TO CO-LEAD CLASS COUNSEL'S PETITION FOR FEES, REIMBURSEMENTS, AND ADOPTION OF SET-ASIDE AWARD* (WEISBERG, LAWRENCE) (Entered: 03/28/2017) |
| 03/28/2017 | 7376 | RESPONSE in Support re 7175 MOTION for Permanent Injunction *By CO-LEAD CLASS COUNSEL PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS BY CLASS MEMBER, FRED WILLIS, THROUGH HIS ORGANIZATIONS, NFL PLAYERS BRAINS MATTER, HPN NEUROLOGIC, AND HPN CONCUSSION MANAGEMENT, OR OTHERW filed by PLAINTIFF(S). (Attachments: # 1 Declaration OF CHRISTOPHER A. SEEGER IN LIMITED RESPONSE TO FRED WILLIS UNAUTHORIZED ADDITIONAL FILINGS AND IN FURTHER SUPPORT OF MOTION FOR INJUNCTION PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS)(SEEGER, CHRISTOPHER) (Entered: 03/28/2017)* |
| 03/28/2017 | 7377 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 3/28/2017 (ems). (Entered: 03/28/2017) |
| 03/28/2017 | 7378 | NOTICE by PLAINTIFF(S) re 7377 MOTION for Attorney Fees *Lien* (BUCKLEY, DAVID) (Entered: 03/28/2017) |
| 03/28/2017 | 7379 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 3/28/2017 (ems). (Entered: 03/28/2017) |
| 03/28/2017 | 7380 | NOTICE by PLAINTIFF(S) re 7379 MOTION for Attorney Fees *re: Ladairis Jackson* (BUCKLEY, DAVID) (Entered: 03/28/2017) |
| 03/28/2017 | 7381 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 3/28/2017 (ems). (Entered: 03/28/2017) |
| 03/28/2017 | 7382 | APPLICATION for Admission Pro Hac Vice of Catherina Watters by PLAINTIFF(S). ( Filing fee $ 40 receipt number 0313-11962002.). (GOLDEN, KEVIN) (Entered: 03/28/2017) |
| 03/28/2017 | 7383 | NOTICE by PLAINTIFF(S) *Attorney Lien Keith Joseph* (BUCKLEY, DAVID) (Entered: 03/28/2017) |
| 03/28/2017 | 7384 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 3/28/2017 (ems). (Entered: 03/28/2017) |

| 03/28/2017 | 7385 | NOTICE by Attorney Fee Lien Kareem Kelly (BUCKLEY, DAVID) (Entered: 03/28/2017) |
|---|---|---|
| 03/28/2017 | 7386 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 3/28/2017 (ems). (Entered: 03/28/2017) |
| 03/28/2017 | 7387 | NOTICE by PLAINTIFF(S) re 7386 MOTION for Attorney Fees *Lien (Sultan McCullough)* (BUCKLEY, DAVID) (Entered: 03/28/2017) |
| 03/28/2017 | 7388 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 3/28/2017 (ems, ). (Entered: 03/28/2017) |
| 03/28/2017 | 7389 | NOTICE by PLAINTIFF(S) *Attorney Lien (David Mims)* (BUCKLEY, DAVID) (Entered: 03/28/2017) |
| 03/28/2017 | 7390 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 3/28/2017 (ems). (Entered: 03/28/2017) |
| 03/28/2017 | 7391 | NOTICE by PLAINTIFF(S) re 7390 MOTION for Attorney Fees *(Plaintiff Alvin Harper)* (BUCKLEY, DAVID) (Entered: 03/28/2017) |
| 03/28/2017 | 7392 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 3/28/2017 (ems). (Entered: 03/28/2017) |
| 03/28/2017 | 7393 | NOTICE by PLAINTIFF(S) re 7392 MOTION for Attorney Fees *(Plaintiff Jerry Moses)* (BUCKLEY, DAVID) (Entered: 03/28/2017) |
| 03/28/2017 | 7394 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 3/28/2017 (ems). (Entered: 03/28/2017) |
| 03/28/2017 | 7395 | NOTICE by PLAINTIFF(S) re 7394 MOTION for Attorney Fees *(Plaintiff Shawntae Spencer)* (BUCKLEY, DAVID) (Entered: 03/28/2017) |
| 03/28/2017 | 7396 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 3/28/2017 (ems). (Entered: 03/28/2017) |
| 03/28/2017 | 7397 | NOTICE by PLAINTIFF(S) *Attorney Lien (Plaintiff Christopher White)* (BUCKLEY, DAVID) (Entered: 03/28/2017) |
| 03/28/2017 | 7398 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 3/28/2017 (ems). (Entered: 03/28/2017) |
| 03/28/2017 | 7399 | NOTICE by PLAINTIFF(S) re 7398 MOTION for Attorney Fees *(Plaintiff Spergon Wynn)* (BUCKLEY, DAVID) (Entered: 03/28/2017) |
| 03/28/2017 | 7400 | NOTICE of Appearance by MICHAEL G. ST. JACQUES, II on behalf of PLAINTIFF(S) (ST. JACQUES, MICHAEL) (Entered: 03/28/2017) |
| 03/28/2017 | 7401 | MOTION for Extension of Time to File *Objection Timely Filed Under Wrong Case Number* filed by PLAINTIFF(S).Certificate Service. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(ST. JACQUES, MICHAEL) (Entered: 03/28/2017) |
| 03/29/2017 | 7402 | NOTICE by PLAINTIFF(S) re 7401 MOTION for Extension of Time to File *Objection Timely Filed Under Wrong Case Number Notice Filing* (Attachments: # 1 Exhibit Amended 7401-1)(ST. JACQUES, MICHAEL) (Entered: 03/29/2017) |
| 03/29/2017 | 7403 | ORDER - UPON CONSIDERATION OF DEANDRA' COBB'S ET AL MOTION TO ACCEPT OBJECTION TO FIVE PERCENT SET-ASIDE FILE ON MARCH 27, 2017 UNDER THE WRONG NUMBER [ECF NO. 7401], AND ANY RESPONSES THERETO, IT IS HEREBY ORDERED that THE MOTION IS GRANTED. 1. |

| | | |
|---|---|---|
| | | COUNSEL SHALL REFILE THE OBJECTION WHICH SHALL BE DEEMED FILED AS OF MARCH 27, 2017. SO ORDERED THIS 29TH DAY OF MARCH, 2017.. SIGNED BY HONORABLE ANITA B. BRODY ON 3/29/2017.329/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/29/2017) |
| 03/29/2017 | 7404 | Objections by PLAINTIFF(S) re 7151 Application/Petition,,,,,,,,, *Plaintiffs' Response Objection and Memorandum in Opposition to Co-Lead Counsel's Petition for Five Percent Set-Aside.* (Attachments: # 1 Appendix)(ST. JACQUES, MICHAEL) (Entered: 03/29/2017) |
| 03/29/2017 | 7405 | NOTICE by PLAINTIFF(S) re 7403 Order on Motion for Extension of Time to File, *of Compliance* (ST. JACQUES, MICHAEL) (Entered: 03/29/2017) |
| 03/29/2017 | 7406 | ORDER THAT THE APPLICATION OF ROBERT A. PENZA, ESQUIRE, TO PRACTICE IN THIS COURT PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 83.5.2(b) IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 3/13/2017. 3/29/2017 ENTERED AND COPIES E-MAILED. (ems) (Entered: 03/29/2017) |
| 03/29/2017 | 7407 | ORDER THAT THE APPLICATION OF P. JOHN BRADY, ESQUIRE, TO PRACTICE IN THIS COURT PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 83.5.2(b) IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 3/29/2017. 3/29/2017 ENTERED AND COPIES E-MAILED. (ems) (Entered: 03/29/2017) |
| 03/29/2017 | 7408 | ORDER THAT THE APPLICATION OF CATHERINA WATTERS, ESQUIRE, TO PRACTICE IN THIS COURT PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 83.5.2(b) IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 3/29/2017. 3/29/2017 ENTERED AND COPIES E-MAILED. (ems) (Entered: 03/29/2017) |
| 03/29/2017 | 7409 | MOTION for Extension of Time to File Answer filed by PLAINTIFF(S).MOTION TO ACCEPT JOINDER IN OBJECTIONS TO CO-LEAD CLASS COUNSELS PETITION FOR FEES FILED ON MARCH 28, 2017.(WEISBERG, LAWRENCE) (Entered: 03/29/2017) |
| 03/30/2017 | 7410 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for RC Owens* (Attachments: # 1 Petition to Establish Attorney's Lien)(LEWIS, RICHARD) (Entered: 03/30/2017) |
| 03/30/2017 | 7411 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Dennis Harrah* (Attachments: # 1 Petition to Establish Attorney's Lien)(LEWIS, RICHARD) (Entered: 03/30/2017) |
| 03/30/2017 | 7412 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Tyrone Young* (Attachments: # 1 Petition to Establish Attorney's Lien)(LEWIS, RICHARD) (Entered: 03/30/2017) |
| 03/30/2017 | 7413 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Darrell Irvin* (Attachments: # 1 Petition to Establish Attorney's Lien)(LEWIS, RICHARD) (Entered: 03/30/2017) |
| 03/30/2017 | 7414 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Allan Clark* (Attachments: # 1 Petition to Establish Attorney's Lien)(LEWIS, RICHARD) (Entered: 03/30/2017) |
| 03/30/2017 | 7415 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Sedrick Irvin* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 03/30/2017) |
| 03/30/2017 | 7416 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 03/30/2017) |

| 03/30/2017 | 7417 | 🔊 Audio File 03/29/2017 2:00 PM, regarding Phone Conference held on 03/29/2017, before HONORABLE ANITA B. BRODY (emo, ) (Entered: 03/30/2017) |
| 03/30/2017 | 7418 | NOTICE of Withdrawal of Appearance by DAVID A. ROSEN on behalf of PLAINTIFF(S)(ROSEN, DAVID) (Entered: 03/30/2017) |
| 03/31/2017 | 7419 | Response in Support *of Zimmerman Reed's Petition to Establish Attorney's Lien* by PLAINTIFF(S). (ZIMMERMAN, CHARLES) (Entered: 03/31/2017) |
| 03/31/2017 | 7420 | NOTICE of Appearance by RYAN GORDAN BLANCH on behalf of PLAINTIFF(S) (BLANCH, RYAN) (Entered: 03/31/2017) |
| 03/31/2017 | 7421 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Telephone Conference held on 3/29/2017 Court Reporter: ESR. (ems) (Entered: 03/31/2017) |
| 03/31/2017 | 7422 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (STALLWORTH, MARK) (Entered: 03/31/2017) |
| 03/31/2017 | 7423 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (STALLWORTH, MARK) (Entered: 03/31/2017) |
| 03/31/2017 | 7424 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (STALLWORTH, MARK) (Entered: 03/31/2017) |
| 03/31/2017 | 7425 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (STALLWORTH, MARK) (Entered: 03/31/2017) |
| 03/31/2017 | 7426 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (STALLWORTH, MARK) (Entered: 03/31/2017) |
| 03/31/2017 | 7427 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (STALLWORTH, MARK) (Entered: 03/31/2017) |
| 03/31/2017 | 7428 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (STALLWORTH, MARK) (Entered: 03/31/2017) |
| 04/03/2017 | 7429 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 4/3/2017 (ems). (Entered: 04/03/2017) |
| 04/03/2017 | 7430 | NOTICE by PLAINTIFF(S) re 7429 MOTION for Attorney Fees *re: Chris Kemoeatu* (BUCKLEY, DAVID) (Entered: 04/03/2017) |
| 04/03/2017 | 7431 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 4/3/2017 (ems). (Entered: 04/03/2017) |
| 04/03/2017 | 7432 | NOTICE by PLAINTIFF(S) re 7431 MOTION for Attorney Fees *re: Ma'ake Kemoeatu* (BUCKLEY, DAVID) (Entered: 04/03/2017) |
| 04/03/2017 | 7433 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 4/3/2017 (ems). (Entered: 04/03/2017) |
| 04/03/2017 | 7434 | NOTICE by PLAINTIFF(S) re 7433 MOTION for Attorney Fees *re: Drew Coleman* (BUCKLEY, DAVID) (Entered: 04/03/2017) |
| 04/03/2017 | 7435 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 4/3/2017 (ems). (Entered: 04/03/2017) |
| 04/03/2017 | 7436 | NOTICE by PLAINTIFF(S) re 7435 MOTION for Attorney Fees *re: Larry Brown* (BUCKLEY, DAVID) (Entered: 04/03/2017) |

**-466-**

| Date | No. | Description |
|---|---|---|
| 04/03/2017 | 7437 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 4/3/2017 (ems). (Entered: 04/03/2017) |
| 04/03/2017 | 7438 | NOTICE by PLAINTIFF(S) re 7437 MOTION for Attorney Fees *re: Vernest Alexander* (BUCKLEY, DAVID) (Entered: 04/03/2017) |
| 04/03/2017 | 7439 | NOTICE OF WITHDRAW AS TO 7436 Notice (Other) *and to Withdraw* 7435 *Petition to Establish Attorney Fees* filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 4/4/2017 (ems). (Entered: 04/03/2017) |
| 04/04/2017 | 7440 | ORDER that AS STATED ON THE RECORD DURING THE CONFERENCE HELD ON MARCH 29, 2017,... TELEPHONE CONFERENCE SET FOR 4/11/2017 AT 11:00 AM, CO-LEAD CLASS COUNSEL IS DIRECTED TO FIRST CONTACT MR. WILLIS AND THEN PLACE A SINGLE CALL TO JUDGE BRODY'S CHAMBERS AT... CO-LEAD CLASS COUNSEL IS ORDERED TP SERVE A COPY OF THIS ORDER.... SIGNED BY HONORABLE ANITA B. BRODY ON 4/3/2017. 4/2/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 04/04/2017) |
| 04/04/2017 | 7441 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (STALLWORTH, MARK) (Entered: 04/04/2017) |
| 04/04/2017 | 7442 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (STALLWORTH, MARK) (Entered: 04/04/2017) |
| 04/04/2017 | 7443 | ORDER THAT THE $40.00 FILING FEE FOR CATHERINA WATTERS PRO-HAC VICE MOTION, (DOC. NO. 7382), IN THE ABOVE ENTITLED CASE IS TO BE REFUNDED. SIGNED BY HONORABLE ANITA B. BRODY ON 4/3/2017. 4/3/2017 ENTERED AND COPIES E-MAILED. (ems) (Entered: 04/04/2017) |
| 04/04/2017 | 7444 | NOTICE by PLAINTIFF(S). (FERRARO, KELLY) Modified on 4/4/2017 (ems). (Entered: 04/04/2017) |
| 04/04/2017 | 7445 | NOTICE by PLAINTIFF(S). (FERRARO, KELLY) Modified on 4/4/2017 (ems). (Entered: 04/04/2017) |
| 04/04/2017 | 7446 | ORDER that PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 72(b), ALL PETITIONS FOR INDIVIDUAL ATTORNEYS' LIENS ARE REFERRED TO THE HONORABLE DAVID R. STRAWBRIDGE, UNITED STATES MAGISTRATE JUDGE FOR THE EASTERN DISTRICT OF PENNSYLVANIA FOR A REPORT AND RECOMMENDATION. I WILL DECIDE CO-LEAD CLASS COUNSEL'S PETITION FOR AWARD OF ATTORNEYS' FEES (ECF NO. 7151), ANY OBJECTIONS.... SIGNED BY HONORABLE ANITA B. BRODY ON 4/4/2017. 4/4/2017 ENTERED AND COPIES VIA ECF(mo, ) (Entered: 04/04/2017) |
| 04/04/2017 | 7447 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (STALLWORTH, MARK) (Entered: 04/04/2017) |
| 04/04/2017 | 7448 | NOTICE by PLAINTIFF(S) *NOTICE OF ATTORNEY'S LIENS* (STALLWORTH, MARK) (Entered: 04/04/2017) |
| 04/05/2017 | 7449 | NOTICE by PLAINTIFF(S)> (ACHO, JAMES) Modified on 4/6/2017 (ems). (Entered: 04/05/2017) |
| 04/05/2017 | 7450 | APPLICATION/PETITION *PETITION TO ESTABLISH ATTORNEY'S LIEN ON BEHALF OF LEVI JOHNSON* by PLAINTIFF(S). (ACHO, JAMES) Modified on 4/6/2017 (ems). (Entered: 04/05/2017) |
| 04/05/2017 | 7451 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate |

-467-
https://ecf.paed.uscourts.gov/cgi-bin/DktRpt.pl?192905117915423-L_1_0-1   438/799

| | | |
|---|---|---|
| | | of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 4/6/2017 (ems). (Entered: 04/05/2017) |
| 04/06/2017 | 7452 | ORDER that A TELEPHONE CONFERENCE REGARDING CO-LEAD CLASS COUNSEL'S MOTION FOR AN INJUNCTION PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS BY JIM MCCABE AND NFL CASE CONSULTING, LLC (ECF NO. 7347 WILL BE HELD ON APRIL 13, 2017 AT 11:30 A.M...... SIGNED BY HONORABLE ANITA B. BRODY ON 4/5/2017. 4/6/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 04/06/2017) |
| 04/06/2017 | 7453 | ORDER that THE MOTION TO ACCEPT JOINDER IN OBJECTIONS TO CO-LEAD CLASS COUNSEL'S PETITION FOR FEES (ECF NO. 7409) IS GRANTED. THE NOTICE OF JOINDER (ECF NO. 7375) IS ACCEPTED AS TIMELY FILED.. SIGNED BY HONORABLE ANITA B. BRODY ON 4/5/2017. 4/6/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 04/06/2017) |
| 04/06/2017 | 7454 | NOTICE by PLAINTIFF(S) re 7452 Order, *Notice of Compliance with Court Order* (Attachments: # 1 Letter and Order)(SEEGER, CHRISTOPHER) (Entered: 04/06/2017) |
| 04/06/2017 | 7455 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Jeffery Bryant* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 04/06/2017) |
| 04/06/2017 | 7456 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 04/06/2017) |
| 04/06/2017 | 7457 | MOTION for Order *TO AUTHORIZE DISCLOSURE OF SETTLEMENT CLASS MEMBERS PROTECTED HEALTH INFORMATION* filed by PLAINTIFF(S).Certificate of Service.Motions referred to DAVID R. STRAWBRIDGE. (Attachments: # 1 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 04/06/2017) |
| 04/06/2017 | 7458 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 04/06/2017) |
| 04/07/2017 | 7459 | MOTION For Leave to Supplement re 7263 MOTION to Intervene filed by JOHN LORENTZ.Certificate of Service.Motions referred to DAVID R. STRAWBRIDGE. (Attachments: # 1 Petition, # 2 Proposed Order, # 3 Certificate of Service)(MOIRANO, MICHAEL) (Entered: 04/07/2017) |
| 04/10/2017 | 7460 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 04/10/2017) |
| 04/10/2017 | 7461 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Lisa McHale, individually and as Personal Representative of the Estate of Thomas McHale* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 04/10/2017) |
| 04/10/2017 | 7462 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 04/10/2017) |
| 04/10/2017 | 7463 | RESPONSE in Opposition re 7363 MOTION for Joinder *to Response in Opposition to Co-Lead Counsel's Petition for Fees (No. 7205) and in Opposition to Cleo Miller's Opposition to Co-Lead Counsel's Petition for Fees* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit Exhibit A)(LANGFITT, DAVID) Modified on 4/11/2017 (ems). (Entered: 04/10/2017) |

**-468-**

| 04/10/2017 | 7464 | Memorandum in Support re 7151 Application/Petition,,,,,,,,, *Omnibus Reply Memorandum in Support of Co-Lead Class Counsel's Fee Petition [ECF No. 7151] and in Opposition to ECF Nos. 7070, 7232, 7364* by PLAINTIFF(S). (Attachments: # 1 Declaration (Supplemental) of Christopher A. Seeger, # 2 Exhibit Z, # 3 Exhibit AA, # 4 Exhibit BB, # 5 Exhibit CC, # 6 Exhibit DD, # 7 Exhibit EE, # 8 Exhibit FF, # 9 Exhibit GG, # 10 Exhibit HH, # 11 Exhibit II, # 12 Exhibit JJ, # 13 Exhibit KK) (SEEGER, CHRISTOPHER) (Entered: 04/10/2017) |
| --- | --- | --- |
| 04/10/2017 | 7465 | Response in Opposition *to Steven Smith's Notice of Joinder in Estate of Kevin Turner's Motion to Resolve Attorney Fee Dispute (ECF No. 7365)* by PLAINTIFF(S). (Attachments: # 1 Exhibit A) (MARKS, STEVEN) (Entered: 04/10/2017) |
| 04/11/2017 | 7466 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Scott Kellar* (Attachments: # 1 Exhibit)(MATHENY, MATTHEW) (Entered: 04/11/2017) |
| 04/11/2017 | 7467 | NOTICE by PLAINTIFF(S) *Notice of Attorneys Lien as to Leroy Irvin, Jr.* (Attachments: # 1 Exhibit)(MATHENY, MATTHEW) (Entered: 04/11/2017) |
| 04/11/2017 | 7468 | NOTICE by PLAINTIFF(S) *Notice of Attorneys' Lien as to Reginald Doss* (Attachments: # 1 Exhibit)(MATHENY, MATTHEW) (Entered: 04/11/2017) |
| 04/11/2017 | 7469 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 4/11/2017 (ems). (Entered: 04/11/2017) |
| 04/11/2017 | 7470 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Telephone Conference held on 4/11/2017 Court Reporter: ESR. (ems) (Entered: 04/11/2017) |
| 04/11/2017 | 7471 | STIPULATION AND ORDER THAT THE REVOCATION REQUEST SUBMITTED BY OTTIS ANDERSON IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING OTTIS ANDERSON. SIGNED BY HONORABLE ANITA B. BRODY ON 4/11/2017. 4/11/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-29) (ems) (Entered: 04/11/2017) |
| 04/11/2017 | 7472 | ORDER THAT THE UNCONTESTED MOTION OF CO-LEAD CLASS COUNSEL TO AUTHORIZE DISCLOSURE OF SETTLEMENT CLASS MEMBERS' PROTECTED HEALTH INFORMATION IS GRANTED. IT IS ORDERED THAT THE GARRETSON RESOLUTION GROUP, INC. ("GRG") IS SERVING AS THE LIEN RESOLUTION ADMINISTRATOR UNDER THE SETTLEMENT AGREEMENT; ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 4/11/2017. 4/11/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 04/11/2017) |
| 04/12/2017 | 7473 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 04/12/2017) |
| 04/12/2017 | 7474 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 04/12/2017) |
| 04/12/2017 | 7475 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 04/12/2017) |
| 04/12/2017 | 7476 | RESPONSE to Motion re 7459 MOTION For Leave to Supplement re 7263 MOTION to Intervene filed by ANAPOLIS WEISS, P.C.. (ROBERTS, DOUGLAS) (Entered: 04/12/2017) |

| 04/12/2017 | 7477 | ORDER THAT LEAD COUNSEL FOR OPT OUT PLAINTIFFS MAY FILE A MOTION FOR LEAVE TO FILE A SECOND AMENDED SHORT FORM COMPLAINT TEMPLATE (NOT TO EXCEED TWENTY-FIVE (25) PAGES, EXCLUSIVE OF THE SECOND AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT AND THE AMENDED SHORT FORM COMPLAINT TEMPLATE) ON OR BEFORE 4/26/2017. ANY SUCH MOTION SHALL BE ACCOMPANIED BY A SUPPORTING MEMORANDUM DESCRIBING HOW THE SECOND AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT AND THE AMENDED SHORT FORM COMPLAINT TEMPLATE COMPORT WITH RULE 15(a)(2). THE NFL PARTIES MAY FILE AN OPPOSITION TO SUCH MOTION FOR LEAVE (NOT TO EXCEED TWENTY-FIVE (25) PAGES) ON OR BEFORE 5/26/2017. LEAD COUNSEL FOR OPT OUT PLAINTIFFS MAY FILE A REPLY BRIEF IN SUPPORT OF ANY SUCH MOTION FOR LEAVE (NOT TO EXCEED TEN (10) PAGES) ON OR BEFORE 6/12/2017; ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 4/12/2017. 4/12/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL OPT OUT PLAINTIFFS LISTED ON ATTACHMENT A) (ems) (Entered: 04/12/2017) |
|---|---|---|
| 04/13/2017 | 7478 | STIPULATION AND ORDER... THIS STIPULATION AND AGREEMENT, DATED APRIL 11, 2017 IS MADE AND ENTERED INTO BY AND AMONG THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC (THE "NFL PARTIES") AND CLASS COUNSEL (COLLECTIVELY, THE "PARTIES")... IT IS SO ORDERED BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUEST SUBMITED BY BARRY DEAN HACKETT IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING BARRY DEAN HACKETT..... SIGNED BY HONORABLE ANITA B. BRODY ON 4/13/2017. 4/13/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 04/13/2017) |
| 04/14/2017 | 7479 | APPLICATION/PETITION *BY CO-LEAD CLASS COUNSEL AND COUNSEL FOR THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC FOR APPOINTMENT OF THE APPEALS ADVISORY PANEL AND APPEALS ADVISORY PANEL CONSULTANTS* by PLAINTIFF(S). (Attachments: # 1 Exhibit A - Curriculum Vitae for Candidates to the AAP, # 2 Exhibit B - Curriculum Vitae for Candidates to the AAPC)(SEEGER, CHRISTOPHER) (Entered: 04/14/2017) |
| 04/17/2017 | 7480 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Telephone Conference held on 4/13/2017 Court Reporter: ESR. (ems) (Entered: 04/17/2017) |
| 04/17/2017 | 7481 | ORDER - AS STATED ON THE RECORD DURING THE TELEPHONE CONFERENCE HELD ON APRIL 13, 2017, IT IS ORDERED that ON OR BEFORE APRIL 21, 2017, CO-LEAD CLASS COUNSEL, COUNSEL TO THE NFL, AND COUNSEL TO JIM MCCABE AND NFL CASE CONSULTING LLC MUST SUBMIT A WRITTEN STATUS REPORT TO THE COURT, REGARDING THEIR NEGOTIATIONS IN CONNECTION WITH CO-LEAD COUNSEL'S MOTION FOR AN INJUNCIOTN PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS (ECF NO. 7347).. SIGNED BY HONORABLE ANITA B. BRODY ON 4/17/2017. 4/17/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 04/17/2017) |
| 04/17/2017 | 7482 | STIPULATION re 7175 MOTION for Permanent Injunction *By CO-LEAD CLASS COUNSEL PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS BY CLASS MEMBER, FRED WILLIS, THROUGH HIS ORGANIZATIONS, NFL PLAYERS BRAINS MATTER, HPN NEUROLOGIC, AND HPN CONCUSSION MANAGEMENT,* |

| | | |
|---|---|---|
| | | *OR OTHERW Regarding Withdrawal of Motion and Proposed Order by PLAINTIFF(S). \*\*(COPY SENT TO CHAMBERS FOR APPROVAL)\*\* (SEEGER, CHRISTOPHER) Modified on 4/17/2017 (ems). (Entered: 04/17/2017)* |
| 04/18/2017 | 7483 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Kevin Devine* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/18/2017) |
| 04/18/2017 | 7484 | NOTICE by PLAINTIFF(S) *Notice of Attorneys' Lien as to Robert C. Butler* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/18/2017) |
| 04/18/2017 | 7485 | NOTICE by PLAINTIFF(S) *Notice of Atorneys' Lien as to Stacy Dillard* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/18/2017) |
| 04/18/2017 | 7486 | NOTICE by PLAINTIFF(S) *Notice of Attorneys' Lien as to Lloyd Harrison* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/18/2017) |
| 04/18/2017 | 7487 | NOTICE by PLAINTIFF(S) *Notice of Attorneys' Lien as to Delvic Philyaw* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/18/2017) |
| 04/18/2017 | 7488 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Opt-Out Organizational Conference held on 3/27/2017. Court Reporter: ESR. (ems) (Entered: 04/18/2017) |
| 04/18/2017 | 7489 | STIPULATION AND ORDER THAT CO-LEAD CLASS COUNSEL AND CLASS MEMBER FRED WILLIS, HEREBY AGREE THAT CO-LEAD CLASS COUNSEL'S MOTION FOR AN INJUNCTION PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS BY CLASS MEMBER FRED WILLIS, THROUGH HIS ORGANIZATIONS, OR OTHERWISE (DOC. NO. 7175) BE, AND HEREBY IS, WITHDRAWN WITHOUT PREJUDICE, SUBJECT TO THE FOLLOWING TERMS, UNDERSTANDINGS, AND CONDITIONS AS OUTLINED HEREIN. SIGNED BY HONORABLE ANITA B. BRODY ON 4/18/2017. 4/18/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 04/18/2017) |
| 04/19/2017 | 7490 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Gerald Perry, Sr.* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 04/19/2017) |
| 04/19/2017 | 7491 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 04/19/2017) |
| 04/20/2017 | 7492 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) \*\*(COPY SENT TO CHAMBERS FOR APPROVAL)\*\* (KARP, BRAD) Modified on 4/20/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7493 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 04/20/2017) |
| 04/20/2017 | 7494 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Petition to establish attorney's lien against Settlement Proceeds of Vernest Alexander. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7495 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against Settlement Proceeds of Abdul Karim al-Jabbar. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |

**-471-**

| 04/20/2017 | 7496 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition for attorney's lien against settlement proceeds of Aaron Bailey. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7497 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Mario Bailey. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7498 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of John Bellamy. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7499 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Andre Brown. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7500 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Hillary Butler. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7501 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Byron Chamberlain. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7502 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Jessie Chatman. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7503 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Shannon Clavelle. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7504 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Ronney Daniels. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7505 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Kirby Dar Dar. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7506 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Dale Dawkins. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7507 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against |

| | | |
|---|---|---|
| | | settlement proceeds of Tyrone Drakeford. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7508 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Joe Fishback. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7509 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Cory Fleming. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7510 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Dion Foxx. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7511 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Willie Gault. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7512 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Dwayne Goodrich. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7513 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Alvin Harper. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7514 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Corey Harris. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7515 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Travis Henry. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7516 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Clayton Holmes. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7517 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Darick Holmes. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7518 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of James Hundon. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |

**-473-**

| 04/20/2017 | 7519 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Lenzie Jackson. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
|---|---|---|
| 04/20/2017 | 7520 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Joseph Jefferson. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7521 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Eric Johnson. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7522 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Vernon Joines. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7523 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Brian Jones. (FARRISE, SIMONA) Modified on 4/21/2017 (ems). (Entered: 04/20/2017) |
| 04/20/2017 | 7524 | RESPONSE in Support re 7365 MOTION for Joinder *to Motion to Resolve Attorney Fee Dispute (No. 7029)* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit I, # 2 Exhibit I-a, # 3 Exhibit J, # 4 Exhibit K, # 5 Exhibit 1, # 6 Exhibit L)(GOLDEN, KEVIN) (Entered: 04/20/2017) |
| 04/21/2017 | 7525 | NOTICE by PLAINTIFF(S) re 7064 Notice (Other) *of Withdrawal of Petition to Establish Attorneys' Charging Lien* (ROSENTHAL, STEPHEN) (Entered: 04/21/2017) |
| 04/21/2017 | 7526 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Bobby E. Abrams, Jr.* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/21/2017) |
| 04/21/2017 | 7527 | NOTICE of Appearance by RICHARD L. SCHEFF on behalf of NFL CASE CONSULTING, LLC with Certificate of Service (Attachments: # 1 Certificate of Service)(SCHEFF, RICHARD) (Entered: 04/21/2017) |
| 04/21/2017 | 7528 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien of Miguel (Mike) Flores - Settlement Program # 10004914* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(PREUSS, THOMAS) Modified on 4/21/2017 (ems). (Entered: 04/21/2017) |
| 04/21/2017 | 7529 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien for Michael Green - Settlement Program #10005799* (Attachments: # 1 Exhibit Petiton to Establish Attorney's Lien) (PREUSS, THOMAS) Modified on 4/21/2017 (ems). (Entered: 04/21/2017) |
| 04/21/2017 | 7530 | NOTICE of Appearance by DAVID FOSTER HERMAN on behalf of JIM MCCABE, NFL CASE CONSULTING, LLC with Certificate of Service(HERMAN, DAVID) (Entered: 04/21/2017) |
| 04/21/2017 | 7531 | NOTICE of Appearance by PETER BRESLAUER on behalf of JIM MCCABE, NFL CASE CONSULTING, LLC with Certificate of Service(BRESLAUER, PETER) (Entered: 04/21/2017) |

| 04/21/2017 | 7532 | STATUS REPORT *to Judge Brody* by NFL CASE CONSULTING, LLC. (SCHEFF, RICHARD) (Entered: 04/21/2017) |
| 04/21/2017 | 7533 | Objections by PLAINTIFF(S) re 7151 Application/Petition,,,,,,,,,, *and Objections to Doc. 7464*. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(LUBEL, LANCE) (Entered: 04/21/2017) |
| 04/21/2017 | 7534 | MOTION for Discovery *Motion for Leave to Serve Fee-Petition Discovery* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Text of Proposed Order) (LUBEL, LANCE) (Entered: 04/21/2017) |
| 04/21/2017 | 7535 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Michael Jones. (FARRISE, SIMONA) Modified on 4/24/2017 (ems). (Entered: 04/21/2017) |
| 04/21/2017 | 7536 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Lamont Jordan. (FARRISE, SIMONA) Modified on 4/24/2017 (ems). (Entered: 04/21/2017) |
| 04/21/2017 | 7537 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Todd Kelly. (FARRISE, SIMONA) Modified on 4/24/2017 (ems). (Entered: 04/21/2017) |
| 04/21/2017 | 7538 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Joseph Kent. (FARRISE, SIMONA) Modified on 4/24/2017 (ems). (Entered: 04/21/2017) |
| 04/21/2017 | 7539 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Shawn King. (FARRISE, SIMONA) Modified on 4/24/2017 (ems). (Entered: 04/21/2017) |
| 04/21/2017 | 7540 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Clarence Love. (FARRISE, SIMONA) Modified on 4/24/2017 (ems). (Entered: 04/21/2017) |
| 04/21/2017 | 7541 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Derek Loville. (FARRISE, SIMONA) Modified on 4/24/2017 (ems). (Entered: 04/21/2017) |
| 04/21/2017 | 7542 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Anthony Marshall. (FARRISE, SIMONA) Modified on 4/24/2017 (ems). (Entered: 04/21/2017) |
| 04/21/2017 | 7543 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Terry Mickens. (FARRISE, SIMONA) Modified on 4/24/2017 (ems). (Entered: 04/21/2017) |
| 04/24/2017 | 7544 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Stacey Bailey* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/24/2017) |

| 04/24/2017 | 7545 | NOTICE by PLAINTIFF(S) *Notice of Attorney's LIen as to Rodney Bailey* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/24/2017) |
|---|---|---|
| 04/24/2017 | 7546 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Stefon Adams* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/24/2017) |
| 04/24/2017 | 7547 | STIPULATION AND ORDER THAT THE REVOCATION REQUEST SUBMITTED BY RICHARD BONNESS IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING RICHARD BONNESS. SIGNED BY HONORABLE ANITA B. BRODY ON 4/24/2017. 4/24/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-29) (ems) (Entered: 04/24/2017) |
| 04/24/2017 | 7548 | ORDER THAT PLAINTIFFS' MOTIONS TO WITHDRAW AS ATTORNEY (DOC. NOS. 6945, 6950, 6952, 6955, 6957, 6959, 6961, 6970, 6973, 6976, 6979, 6984, 6986, 7132, 7134, 7136, 7138, 7140, 7142, 7144, 7146, 7148, 7267, 7268, 7270, 7272, 7274, 7277, AND 7279) ARE GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 4/24/2017. 4/24/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-6069, 12-4185, 12-2219, 13-51) (ems) (Entered: 04/24/2017) |
| 04/25/2017 | 7549 | ORDER - IN LIGHT OF THE STATUS REPORT FILED ON APRIL 21, 2017 (ECF NO. 7532), IT IS ORDERED that ON OR BEFORE APRIL 28, 2017, CO-LEAD CLASS COUNSEL,COUNSEL TO THE NFL, AND COUNSEL TO JIM MCCABE AND NFL CASE CONSULTING, LLC MUST SUBMIT A SECOND WRITTEN STATUS REPORT TO THE COURT REGARDING THEIR NEGOTIATIONS TO RESOLVE CO-LEAD CLASS COUNSEL'S MOTION FOR AN INJUNCTION PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS (ECF NO. 7347). SIGNED BY HONORABLE ANITA B. BRODY ON 4/25/2017. 4/25/2017 ENTERED AND COPIES VIA ECF.(mo, ) Modified on 4/26/2017 (ems). (Entered: 04/25/2017) |
| 04/25/2017 | 7550 | REPLY to Response to Motion re 7070 MOTION for Attorney Fees *and Expenses* filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, JEFF ROHRER. (Attachments: # 1 Declaration Rebuttal Expert Declaration of Joseph J. Floyd)(MOLO, STEVEN) (Entered: 04/25/2017) |
| 04/26/2017 | 7551 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Carl Bland* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/26/2017) |
| 04/26/2017 | 7552 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Brian Blades* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/26/2017) |
| 04/26/2017 | 7553 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Keith Bostic* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/26/2017) |
| 04/26/2017 | 7554 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Horatio Blades* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/26/2017) |
| 04/26/2017 | 7555 | Response in Support re 7364 Application/Petition,, *of Jones Objectors for Award of Attorneys' Fees for Successful Efforts to Improve the Settlement for NFL Europe League Players* by PLAINTIFF(S). (CAPRETZ, JAMES) (Entered: 04/26/2017) |
| 04/26/2017 | 7556 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 4/26/2017 (ems). (Entered: 04/26/2017) |

| | | |
|---|---|---|
| 04/27/2017 | 7557 | MOTION for Leave to File *Second Amended Master Administrative Long-Form Complaint* filed by PLAINTIFF(S).Memorandum, Certificate of Service.Motions referred to DAVID R. STRAWBRIDGE. (Attachments: # 1 Memorandum in Support of Plaintiffs Motion For Leave to File Second Amended Master Administrative Long-Form Complaint, # 2 Exhibit A - Second Amended Master Long-Form Complaint Pursuant to Case Management Order, # 3 Exhibit B - Short Form Complaint, # 4 Text of Proposed Order, # 5 Certificate of Service)(FLEISHMAN, WENDY) (Entered: 04/27/2017) |
| 04/27/2017 | 7558 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Marty Carter* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/27/2017) |
| 04/27/2017 | 7559 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Reginald Brown* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/27/2017) |
| 04/27/2017 | 7560 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Raymond Clayborn* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/27/2017) |
| 04/27/2017 | 7561 | ORDER - AN ORGANIZATIONAL MEETING TO ADDRESS ALL CLAIMS AGAINST RIDDELL, INC.; ALL AMERICAN SPORTS CORP.; RIDDELL SPORTS GROUP INC.; EASTON-BELL SPORTS, INC.; EASTON-BELL SPORTS, LLC; EB SPORTS CORP.; AND RBG HOLDINGS CORP. WILL BE HELD ON TUESDAY, MAY 9, 2017 AT 10:30 A.M. IN COURTROOM 7-B OF THE U.S. COURTHOUSE, 601 MARKET STREET, PHILADELPHIA, PENSYLVANIA 19106.. SIGNED BY HONORABLE ANITA B. BRODY ON 4/27/2017. 4/27/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 04/27/2017) |
| 04/27/2017 | 7562 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Matthew Dorsett* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/27/2017) |
| 04/27/2017 | 7563 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Kenneth Davidson* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/27/2017) |
| 04/27/2017 | 7564 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Gary Dandridge* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/27/2017) |
| 04/27/2017 | 7565 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Harvey Clayton* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 04/27/2017) |
| 04/27/2017 | 7566 | APPLICATION/PETITION *For Attorney Fees (re: Chris Johnson)* by PLAINTIFF(S). (BUCKLEY, DAVID) (Entered: 04/27/2017) |
| 04/27/2017 | 7567 | NOTICE by PLAINTIFF(S) re 7566 Application/Petition *For Attorney Fees (re: Chris Johnson)* (BUCKLEY, DAVID) (Entered: 04/27/2017) |
| 04/27/2017 | 7568 | APPLICATION/PETITION *FIRST AMENDED for Attorney Fees (re Kenneth Davis)* by PLAINTIFF(S). (BUCKLEY, DAVID) (Entered: 04/27/2017) |
| 04/27/2017 | 7569 | APPLICATION/PETITION *FIRST AMENDED for Attorney Fees (re Alvin Harper)* by PLAINTIFF(S). (BUCKLEY, DAVID) (Entered: 04/27/2017) |
| 04/27/2017 | 7570 | APPLICATION/PETITION *FIRST AMENDED for Attorney Fees (re Ladairis Jackson)* by PLAINTIFF(S). (BUCKLEY, DAVID) (Entered: 04/27/2017) |
| 04/27/2017 | 7571 | NOTICE by PLAINTIFF(S) *(Amended) Attorney Fee Lien (re Ladairis Jackson)* (BUCKLEY, DAVID) (Entered: 04/27/2017) |
| 04/27/2017 | 7572 | APPLICATION/PETITION *FIRST AMENDED for Attorney Fees (re Keith Joseph)* by PLAINTIFF(S). (BUCKLEY, DAVID) (Entered: 04/27/2017) |

| 04/27/2017 | 7573 | NOTICE by PLAINTIFF(S) *(Amended) Attorney Fee Lien (re Keith Joseph)* (BUCKLEY, DAVID) (Entered: 04/27/2017) |
| 04/27/2017 | 7574 | APPLICATION/PETITION *FIRST AMENDED for Attorney Fees (re Chris Kemoeatu)* by PLAINTIFF(S). (BUCKLEY, DAVID) (Entered: 04/27/2017) |
| 04/27/2017 | 7575 | NOTICE by PLAINTIFF(S) *(Amended) Attorney Fee Lien (re Chris Kemoeatu)* (BUCKLEY, DAVID) (Entered: 04/27/2017) |
| 04/27/2017 | 7576 | APPLICATION/PETITION *FIRST AMENDED for Attorney Fees (re David Mims)* by PLAINTIFF(S). (BUCKLEY, DAVID) (Entered: 04/27/2017) |
| 04/27/2017 | 7577 | APPLICATION/PETITION *FIRST AMENDED for Attorney Fees (re Jerry Moses)* by PLAINTIFF(S). (BUCKLEY, DAVID) (Entered: 04/27/2017) |
| 04/27/2017 | 7578 | NOTICE by PLAINTIFF(S) *(Amended) Attorney Fee Lien (re Jerry Moses)* (BUCKLEY, DAVID) (Entered: 04/27/2017) |
| 04/27/2017 | 7579 | APPLICATION/PETITION *FIRST AMENDED for Attorney Fees (re Christopher White)* by PLAINTIFF(S). (BUCKLEY, DAVID) (Entered: 04/27/2017) |
| 04/27/2017 | 7580 | NOTICE by PLAINTIFF(S) *(Amended) Attorney Fee Lien (re Christopher White)* (BUCKLEY, DAVID) (Entered: 04/27/2017) |
| 04/28/2017 | 7581 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Stanley Pritchett. (FARRISE, SIMONA) Modified on 5/1/2017 (ems). (Entered: 04/28/2017) |
| 04/28/2017 | 7582 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of David Richie. (FARRISE, SIMONA) Modified on 5/1/2017 (ems). (Entered: 04/28/2017) |
| 04/28/2017 | 7583 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of John Rogers. (FARRISE, SIMONA) Modified on 5/1/2017 (ems). (Entered: 04/28/2017) |
| 04/28/2017 | 7584 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Sammie Rogers. (FARRISE, SIMONA) Modified on 5/1/2017 (ems). (Entered: 04/28/2017) |
| 04/28/2017 | 7585 | STATUS REPORT *to Judge Brody Containing Joint Status Report* by NFL CASE CONSULTING, LLC. (SCHEFF, RICHARD) (Entered: 04/28/2017) |
| 04/28/2017 | 7586 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Irving Spikes. (FARRISE, SIMONA) Modified on 5/1/2017 (ems). (Entered: 04/28/2017) |
| 04/28/2017 | 7587 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Travis Stephens. (FARRISE, SIMONA) Modified on 5/1/2017 (ems). (Entered: 04/28/2017) |
| 04/28/2017 | 7588 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against |

| | | |
|---|---|---|
| | | settlement proceeds of Lemuel Stinson. (FARRISE, SIMONA) Modified on 5/1/2017 (ems). (Entered: 04/28/2017) |
| 04/28/2017 | 7589 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Barron Tanner. (FARRISE, SIMONA) Modified on 5/1/2017 (ems). (Entered: 04/28/2017) |
| 04/28/2017 | 7590 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Gregory Townsend. (FARRISE, SIMONA) Modified on 5/1/2017 (ems). (Entered: 04/28/2017) |
| 04/28/2017 | 7591 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Lamont Warren. (FARRISE, SIMONA) Modified on 5/1/2017 (ems). (Entered: 04/28/2017) |
| 04/28/2017 | 7592 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Erik Williams. (FARRISE, SIMONA) Modified on 5/1/2017 (ems). (Entered: 04/28/2017) |
| 04/28/2017 | 7593 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Scott Tinsley. (FARRISE, SIMONA) Modified on 5/1/2017 (ems). (Entered: 04/28/2017) |
| 05/02/2017 | 7594 | STIPULATION AND ORDER that THIS STIPULATION AND AGREEMENT DATED APRIL 26, 2017 IS MADE AND ENTEREDINTO BY AND AMONG THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC (THE "NFL PARTIES"), AND CLASS COUNSEL (COLLECTIVELY,THE "PARTIES")....IT IS SO ORDERED, BASE ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR. that THE REVOCATION REQUEST SUBMITTED BY ALBERT R. DENNIS III IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING ALBERT R. DENNIS III..... SIGNED BY HONORABLE ANITA B. BRODY ON 5/1/2017. 5/2/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/02/2017) |
| 05/02/2017 | 7595 | ORDER - IN LIGHT OF THE STATUS REPORT FILED ON APRIL 28, 2017 (ECF NO. 7585), IT IS ORDERED that ON OR BEFORE MAY 12, 2017, CO-LEAD CLASS COUNSEL, COUNSEL TO THE NFL, AND COUNSEL TO JIM MCCABE AND NFL CASE CONSULTING, LLC MUST SUBMIT A WRITTEN STATUS REPORT TO THE COURT REGARDING THEIR NEGOTIATIONS TO RESOLVE CO-LEAD CLASS COUNSEL'S MOTION FOR AN INJUNCTION PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS (ECF NO. 7347). SIGNED BY HONORABLE ANITA B. BRODY ON 5/1/2017. 5/2/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/02/2017) |
| 05/03/2017 | 7596 | AMENDED STIPULATION AND ORDER... that THE PLAINTIFF HEREBY DISMISSES THE INSTANT CASE that IS DOCKETED AT 17-348 WITHOUT PREJUDICE AND WITHOUT COSTS TO ANY PARTY. THE UNDERSIGNED PARTIES EXPRESSLY AGREE that THIS STIPULATION OF DISMISSAL DOES NOT IN ANY WAY PREJUDICE PLAINTIFF'S RIGHTS AS A CLASS MEMBER, INCLUDING HER RIGHT TO SEEK COMPENSATION THROUGH THE CLASS SETTLEMENT PROCEDURES. APPROVED BY THE COURT:. SIGNED BY |

**-479-**

| | | |
|---|---|---|
| | | HONORABLE ANITA B. BRODY ON 5/2/2017. 5/3/2017 ENTERED AND COPIES VIA ECF.(mo) SIGNED BY HONORABLE ANITA B. BRODY ON 5/2/2017. 5/3/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/03/2017) |
| 05/04/2017 | 7597 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/04/2017) |
| 05/05/2017 | 7598 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Antonio Gibson* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 05/05/2017) |
| 05/05/2017 | 7599 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Percell Gaskins* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 05/05/2017) |
| 05/05/2017 | 7600 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Keith Ferguson* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 05/05/2017) |
| 05/05/2017 | 7601 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Gregory Evans* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 05/05/2017) |
| 05/05/2017 | 7602 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Talman Gardner* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 05/05/2017) |
| 05/05/2017 | 7603 | STIPULATION AND ORDER - CO-LEAD COUNSEL AND COUNSEL FOR THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC ("COUNSEL FOR THE NFL PARTIES") HEREBY RECOMMEND FOR APPOINTMENT BY THE COURT EH MEMBERS OF THE APPEALS ADVISORY PANEL (THE "AAP") AND THE APPEALS ADVISORY PANEL CONSULTANTS (THE"AAPC")…. BASED ON THE CONVERSATION OF THE PARTIES HAD WITH EACH OF THESE CANDIDATES AND CONSIDERATION OF THEIR QUALIFICATIONS, INCLUDING THEIR PROFESSIONAL AND ACADEMIC EDUCATION, TRAING AND EXPERIENCE,… IT IS SO ORDERED THIS 4TH DAY OF MAY, 2017 that THE RECOMMENDED CANDIDATES FOR THE AAP AND AAPC ARE APPROVED. SIGNED BY HONORABLE ANITA B. BRODY ON 5/4/2017. 5/5/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/05/2017) |
| 05/05/2017 | 7604 | ORDER that PLAINTIFF HARRY HAMILTON'S SECOND AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER AND RECONSIDERATION (ECF NO. 7026, NO. 12-MD-2323; ECF NO. 9, NO 14-6353) IS DENIED.-1(footnote). SIGNED BY HONORABLE ANITA B. BRODY ON 5/4/2017.5/5/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/05/2017) |
| 05/05/2017 | 7605 | MOTION to Strike 7533 Objections *As Unauthorized Sur-Reply* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Text of Proposed Order) (SEEGER, CHRISTOPHER) (Entered: 05/05/2017) |
| 05/05/2017 | 7606 | Memorandum of Law re 7534 MOTION for Discovery *Motion for Leave to Serve Fee-Petition Discovery*, 7605 MOTION to Strike 7533 Objections *As Unauthorized Sur-Reply - Co-Lead Class Counsel's Consolidated Memorandum is in Opposition to ECF No. 7534 and in Support of ECF No. 7605* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 05/05/2017) |
| 05/05/2017 | 7607 | NOTICE of Withdrawal of Appearance by ANTHONY MICHAEL CARR on behalf of PLAINTIFF(S) (Attachments: # 1 Certificate of Service)(CARR, ANTHONY) (Entered: 05/05/2017) |
| 05/05/2017 | 7608 | Response *ARMSTRONG OBJECTORS' REPLY IN RE: THIER ATTORNEYS' FEE PETITION* by PLAINTIFF(S). (COFFMAN, RICHARD) (Entered: 05/05/2017) |

| 05/05/2017 | 7609 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Derrick Rodgers. (FARRISE, SIMONA) Modified on 5/8/2017 (ems). (Entered: 05/05/2017) |
|---|---|---|
| 05/05/2017 | 7610 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of James Brown. (FARRISE, SIMONA) Modified on 5/8/2017 (ems). (Entered: 05/05/2017) |
| 05/05/2017 | 7611 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of James Pruitt. (FARRISE, SIMONA) Modified on 5/8/2017 (ems). (Entered: 05/05/2017) |
| 05/05/2017 | 7612 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Derrick Fenner. (FARRISE, SIMONA) Modified on 5/8/2017 (ems). (Entered: 05/05/2017) |
| 05/05/2017 | 7613 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Carl Pickens. (FARRISE, SIMONA) Modified on 5/8/2017 (ems). (Entered: 05/05/2017) |
| 05/05/2017 | 7614 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Mike Sherrard. (FARRISE, SIMONA) Modified on 5/8/2017 (ems). (Entered: 05/05/2017) |
| 05/08/2017 | 7615 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 5/8/2017 (ems). (Entered: 05/08/2017) |
| 05/08/2017 | 7616 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Karsten Bailey and Christie Bailey* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 05/08/2017) |
| 05/08/2017 | 7617 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/08/2017) |
| 05/08/2017 | 7618 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Joe Burns and Tiffany Burns* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 05/08/2017) |
| 05/08/2017 | 7619 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/08/2017) |
| 05/08/2017 | 7620 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against settlement proceeds of Dameane Douglas. (FARRISE, SIMONA) Modified on 5/8/2017 (ems). (Entered: 05/08/2017) |
| 05/09/2017 | 7621 | Plaintiff's Brief and Statement of Issues in Support of Request for Review *of Objectors Fee Petition* filed by PLAINTIFF(S).Memorandum of Law, Certificate of Service, Proposed Order. (Attachments: # 1 Certificate of Service, # 2 Text of Proposed Order) (MITNICK, CRAIG) (Entered: 05/09/2017) |

| 05/10/2017 | 7622 | ORDER that ON OR BEFORE MAY 12, 2017, CO-EAD COUNSEL FOR THE RIDDELL LITIGATION AND COUNSEL FOR THE RIDDELL DEFENDANTS MUST SUBMIT TO THE COURT A JOINT PROPOSED SCHEDULING ORDER FOR BRIEFING REGARDING THE PENDING CLAIMS AGAINST THE RIDDELL DEFENDANTS. IF THE PARTIES CANNOT AGREE ON A JOINT PROPOSED ORDER BY MAY 12, 2017,THEY MUST SUBMIT INDIVIDUAL PROPOSED ORDERS BY THAT DATE.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/9/2017. 5/10/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/10/2017) |
|---|---|---|
| 05/12/2017 | 7623 | 🔊 Audio File from 5/9/2017 at 10:34 AM, regarding MDL Hearing before the HONORABLE ANITA B. BRODY in courtroom 7-B. (ctk) (Entered: 05/12/2017) |
| 05/12/2017 | 7624 | STATUS REPORT *to Judge Anita Brody by Jim McCabe and* by NFL CASE CONSULTING, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(SCHEFF, RICHARD) (Entered: 05/12/2017) |
| 05/12/2017 | 7625 | STATUS REPORT *by Co-Lead Class Counsel Regarding ECF No. 7347* by PLAINTIFF(S). (Attachments: # 1 Exhibit A)(SEEGER, CHRISTOPHER) (Entered: 05/12/2017) |
| 05/12/2017 | 7626 | RESPONSE in Opposition re 7605 MOTION to Strike 7533 Objections *As Unauthorized Sur-Reply* filed by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 05/12/2017) |
| 05/12/2017 | 7627 | Memorandum of Law re 7605 MOTION to Strike 7533 Objections *As Unauthorized Sur-Reply* filed by PLAINTIFF(S). (Attachments: # 1 Text of Proposed Order) (LUBEL, LANCE) (Entered: 05/12/2017) |
| 05/16/2017 | 7628 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Organizational Meeting Hearing held on 5/9/2017. Court Reporter: ESR. (ems) (Entered: 05/16/2017) |
| 05/16/2017 | 7629 | NOTICE by PLAINTIFF(S) *Withdraw Attorney Lien for Attorney David Buckley, PLLC only as to Spergon Wynn, Kareem Kelly, Shawntae Spencer, and Sultan McCullough* (BUCKLEY, DAVID) (Entered: 05/16/2017) |
| 05/17/2017 | 7630 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/17/2017) |
| 05/17/2017 | 7631 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/17/2017) |
| 05/17/2017 | 7632 | NOTICE by PLAINTIFF(S) re 7631 MOTION for Attorney Fees *re: Clarence Love of Attorney's Lien* (GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7633 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7634 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/17/2017) |
| 05/17/2017 | 7635 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Duval Love)* (GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7636 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7637 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/17/2017) |

| 05/17/2017 | 7638 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/17/2017) |
| 05/17/2017 | 7639 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: David Boston)* (GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7640 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7641 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/17/2017) |
| 05/17/2017 | 7642 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Jocelyn Borgella)* (GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7643 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7644 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/17/2017) |
| 05/17/2017 | 7645 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Dermontti Dawson)* (GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7646 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7647 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/17/2017) |
| 05/17/2017 | 7648 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Ronald Dixon)* (GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7649 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7650 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/17/2017) |
| 05/17/2017 | 7651 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Marcus Dupree)* (GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7652 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7653 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/17/2017) |
| 05/17/2017 | 7654 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Tommie Funchess)* (GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7655 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7656 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/17/2017) |
| 05/17/2017 | 7657 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Winfield Garnett, III)* (GIDDENS, JOHN) (Entered: 05/17/2017) |

| 05/17/2017 | 7658 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/17/2017) |
|---|---|---|
| 05/17/2017 | 7659 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/17/2017) |
| 05/17/2017 | 7660 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: DeLawrence Grant)* (GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7661 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7662 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/17/2017) |
| 05/17/2017 | 7663 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Van Jakes)* (GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7664 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7665 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/17/2017) |
| 05/17/2017 | 7666 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Jimmie Kennedy)* (GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7667 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7668 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/17/2017) |
| 05/17/2017 | 7669 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Stacey Mack)* (GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7670 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7671 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/17/2017) |
| 05/17/2017 | 7672 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Dexter McCleon)* (GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/17/2017 | 7673 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/17/2017) |
| 05/18/2017 | 7674 | STIPULATION AND ORDER... that IT IS ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUEST SUBMITTED BY TRENT BRYANT IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING TRENT BRYANT. APPROVED BY THE COURT:. SIGNED BY HONORABLE ANITA B. BRODY ON 5/17/2017. 5/18/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/18/2017) |
| 05/18/2017 | 7675 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/18/2017) |

**-484-**

| 05/18/2017 | 7676 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Audray McMillian)* (GIDDENS, JOHN) (Entered: 05/18/2017) |
| --- | --- | --- |
| 05/18/2017 | 7677 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7678 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/18/2017) |
| 05/18/2017 | 7679 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Jeff Moore)* (GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7680 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7681 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/18/2017) |
| 05/18/2017 | 7682 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Lloyd Mumphord)* (GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7683 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7684 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7685 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/18/2017) |
| 05/18/2017 | 7686 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Elex Price, Sr.)* (GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7687 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7688 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/18/2017) |
| 05/18/2017 | 7689 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Archie Reese)* (GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7690 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/18/2017) |
| 05/18/2017 | 7691 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Dwayne Rudd)* (GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7692 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7693 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/18/2017) |
| 05/18/2017 | 7694 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: TJ Slaughter)* (GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7695 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/18/2017) |

**-485-**

| 05/18/2017 | 7696 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/18/2017) |
|---|---|---|
| 05/18/2017 | 7697 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Rayna Stewart)* (GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7698 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/18/2017) |
| 05/18/2017 | 7699 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Timothy Walton)* (GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7700 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7701 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/18/2017) |
| 05/18/2017 | 7702 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Sammy Williams)* (GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7703 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7704 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/18/2017 (ems). (Entered: 05/18/2017) |
| 05/18/2017 | 7705 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Maury Youmans)* (GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7706 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/18/2017) |
| 05/18/2017 | 7707 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 5/18/2017 (ems). (Entered: 05/18/2017) |
| 05/18/2017 | 7708 | REPLY to Response to Motion re 7070 MOTION for Attorney Fees , 7621 Plaintiff's Brief and Statement of Issues in Support of Request for Review *of Objectors Fee Petition* filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, JEFF ROHRER. (MOLO, STEVEN) (Entered: 05/18/2017) |
| 05/18/2017 | 7709 | ORDER THAT THE COURT HAS DETERMINED THAT FURTHER INITIAL MOTION PRACTICE IN MDL NO. 2323 SHOULD PROCEED IN ACCORDANCE WITH THE SCHEDULE AND TERMS SET FORTH. THE RIDDELL DEFENDANTS MAY FILE AN OPPOSITION TO ANY SUCH MOTION FOR LEAVE (NOT TO EXCEED TWENTY-FIVE (25) PAGES) ON OR BEFORE 6/26/2017. CO-LEAD COUNSEL FOR THE PLAINTIFFS IN THE RIDDELL CASES MAY FILE A REPLY BRIEF IN SUPPORT OF ANY SUCH MOTION FOR LEAVE (NOT TO EXCEED TEN (10) PAGES) ON OR BEFORE 7/12/2017; ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 5/18/2017. 5/18/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL RIDDELL CASES - SEE ATTACHED LIST) (ems) (Entered: 05/18/2017) |
| 05/19/2017 | 7710 | REPLY to Response to Motion re 7605 MOTION to Strike 7533 Objections *As Unauthorized Sur-Reply CO-LEAD CLASS COUNSEL'S REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO STRIKE OR DISREGARD THE* |

| | | |
|---|---|---|
| | | *ALEXANDER OBJECTORS UNAUTHORIZED SUR-REPLY* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 05/19/2017) |
| 05/19/2017 | 7711 | STATUS REPORT *to Judge Brody Containing Joint Status Report* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 05/19/2017) |
| 05/22/2017 | 7712 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 5/22/2017 (ems). (Entered: 05/22/2017) |
| 05/22/2017 | 7713 | MOTION for Order *for Extending Qualified Judicial Immunity to the Special Masters* filed by PLAINTIFF(S).Certificate of Service.Motions referred to DAVID R. STRAWBRIDGE. (Attachments: # 1 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 05/22/2017) |
| 05/22/2017 | 7714 | MOTION to Withdraw as Attorney *for Plaintiff John C. Mott - ONLY* filed by PLAINTIFF(S)..Motions referred to DAVID R. STRAWBRIDGE. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(KATZ, SETH) (Entered: 05/22/2017) |
| 05/22/2017 | 7715 | MOTION for Order *for Extending Qualified Judicial Immunity to the Settlement Entities* filed by PLAINTIFF(S).Certificate of Service.Motions referred to DAVID R. STRAWBRIDGE. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 05/22/2017) |
| 05/22/2017 | 7716 | NOTICE by PLAINTIFF(S) *of Attorney's Liens for John C. Mott* (KATZ, SETH) (Entered: 05/22/2017) |
| 05/24/2017 | 7717 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/25/2017 (ems). (Entered: 05/24/2017) |
| 05/24/2017 | 7718 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Lemar Parrish)* (GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7719 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7720 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/25/2017 (ems). (Entered: 05/24/2017) |
| 05/24/2017 | 7721 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: John Sanders)* (GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7722 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7723 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/25/2017 (ems). (Entered: 05/24/2017) |
| 05/24/2017 | 7724 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Jonathan "Jon" Staggers)* (GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7725 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7726 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/25/2017 (ems). (Entered: 05/24/2017) |
| 05/24/2017 | 7727 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: David Windham)* (GIDDENS, JOHN) (Entered: 05/24/2017) |

| 05/24/2017 | 7728 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/24/2017) |
|---|---|---|
| 05/24/2017 | 7729 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/25/2017 (ems). (Entered: 05/24/2017) |
| 05/24/2017 | 7730 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Michael Blazitz)* (GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7731 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7732 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/25/2017 (ems). (Entered: 05/24/2017) |
| 05/24/2017 | 7733 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Doug Chapman)* (GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7734 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7735 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Robert E. Johnson, Jr. and Gia Johnson* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 05/24/2017) |
| 05/24/2017 | 7736 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/24/2017) |
| 05/24/2017 | 7737 | NOTICE of Withdrawal of Appearance by MARK B STALLWORTH on behalf of PLAINTIFF(S)(STALLWORTH, MARK) (Entered: 05/24/2017) |
| 05/24/2017 | 7738 | NOTICE of Withdrawal of Appearance by MARK B STALLWORTH on behalf of PLAINTIFF(S)(STALLWORTH, MARK) (Entered: 05/24/2017) |
| 05/24/2017 | 7739 | NOTICE of Withdrawal of Appearance by MARK B STALLWORTH on behalf of PLAINTIFF(S)(STALLWORTH, MARK) (Entered: 05/24/2017) |
| 05/24/2017 | 7740 | ORDER - UPON CONSIDERATION OF THE MOTION BY SETH A. KATZ AND STEPHEN J. BURG OF BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C. AND JAMES R. DUGAN OF THE DUGAN LAW FIRM, APLC TO WITHDRAW AS COUNSEL IN RELATION TO THE CLAIMS OF JOHN C. MOTT IN THIS ACTION, AND FOR GOOD CAUSE SHOWN, SAID MOTION IS GRANTED. THE ABOVE LISTED COUNSEL ARE HEREBY GRANTED LEAVE TO WITHDRAW AS COUNSEL FOR JOHN C. MOTT.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/23/2017.5/24/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/24/2017) |
| 05/24/2017 | 7741 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/25/2017 (ems). (Entered: 05/24/2017) |
| 05/24/2017 | 7742 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Frank Middleton)* (GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7743 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/25/2017 (ems). (Entered: 05/24/2017) |
| 05/24/2017 | 7744 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Victor Hobson)* (GIDDENS, JOHN) (Entered: 05/24/2017) |

| 05/24/2017 | 7745 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/24/2017) |
|---|---|---|
| 05/24/2017 | 7746 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/25/2017 (ems). (Entered: 05/24/2017) |
| 05/24/2017 | 7747 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Brian Holloway)* (GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7748 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7749 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/25/2017 (ems). (Entered: 05/24/2017) |
| 05/24/2017 | 7750 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Gerald E. Jackson, Sr.)* (GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7751 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7752 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/25/2017 (ems). (Entered: 05/24/2017) |
| 05/24/2017 | 7753 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Joe Johnson)* (GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7754 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7755 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/25/2017 (ems). (Entered: 05/24/2017) |
| 05/24/2017 | 7756 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Tony Nathan)* (GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7757 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7758 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 5/25/2017 (ems). (Entered: 05/24/2017) |
| 05/24/2017 | 7759 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Tori Noel)* (GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7760 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 05/24/2017) |
| 05/24/2017 | 7761 | NOTICE of Withdrawal of Appearance by SETH A. KATZ on behalf of PLAINTIFF(S)(KATZ, SETH) (Entered: 05/24/2017) |
| 05/24/2017 | 7762 | MOTION for Leave to File *Second Amended Master Administrative Complaint Against the Riddell Defendants* filed by PLAINTIFF(S).Memorandum, Certificate of Service. (Attachments: # 1 Memorandum In Support of Plaintiffs' Motion for Leave to File Second Amended Master Administrative Long-Form Complaint, # 2 Exhibit A - Second Amended Master Administrative Long-Form Complaint Against Riddell Defendants, # 3 Exhibit B - Short Form Complaint, # 4 Text of Proposed Order, # 5 Certificate of Service)(FLEISHMAN, WENDY) (Entered: 05/24/2017) |
| 05/25/2017 | 7763 | STIPULATION AND ORDER THAT THE REVOCATION REQUEST SUBMITTED BY ANDRE REED IS APPROVED AND THE CLAIMS ADMINISTRATOR IS |

| | | DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING ANDRE REED. SIGNED BY HONORABLE ANITA B. BRODY ON 5/24/2017. 5/25/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-29) (ems) (Entered: 05/25/2017) |
|---|---|---|
| 05/25/2017 | 7764 | STIPULATION AND ORDER THAT THE REVOCATION REQUEST SUBMITTED BY CURTIS SHANE NELSON IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING CURTIS SHANE NELSON. SIGNED BY HONORABLE ANITA B. BRODY ON 5/24/2017. 5/25/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-29) (ems) (Entered: 05/25/2017) |
| 05/26/2017 | 7765 | NOTICE by PLAINTIFF(S) *of Attorneys' Lien* (BARNES, HEATHER) (Entered: 05/26/2017) |
| 05/26/2017 | 7766 | APPLICATION/PETITION *to Establish Attorney's Lien* by PLAINTIFF(S). (BARNES, HEATHER) (Entered: 05/26/2017) |
| 05/26/2017 | 7767 | RESPONSE in Opposition re 7557 MOTION for Leave to File *Second Amended Master Administrative Long-Form Complaint* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Declaration of Douglas M. Burns, # 2 Exhibit A, # 3 Exhibit B, # 4 Certificate of Service, # 5 Text of Proposed Order)(KARP, BRAD) (Entered: 05/26/2017) |
| 05/30/2017 | 7768 | STATUS REPORT *to Judge Brody Containing Joint Status Report* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 05/30/2017) |
| 05/30/2017 | 7769 | NOTICE of Withdrawal of Appearance by MICHAEL JOSEPH EDELMAN on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. Certificate of Service. (ems) (Entered: 05/30/2017) |
| 06/02/2017 | 7770 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Randall Godfrey* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 06/02/2017) |
| 06/02/2017 | 7771 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 06/02/2017) |
| 06/02/2017 | 7772 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 06/02/2017) |
| 06/06/2017 | 7773 | NOTICE by PLAINTIFF(S) *Notice of Attorneys Lien as to Reginald Gipson* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 06/06/2017) |
| 06/06/2017 | 7774 | NOTICE by PLAINTIFF(S) *Notice of Attorneys Lien as to Cornell Gowdy* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 06/06/2017) |
| 06/06/2017 | 7775 | NOTICE by PLAINTIFF(S) *Notice of Attorneys Lien as to Lorenzo Hampton* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 06/06/2017) |
| 06/06/2017 | 7776 | NOTICE of Withdrawal of Appearance by CHRISTOPHER J. WRIGHT on behalf of BRAIN INJURY ASSOCIATION OF AMERICA(WRIGHT, CHRISTOPHER) (Entered: 06/06/2017) |
| 06/06/2017 | 7777 | STATUS REPORT *to Judge Brody Regarding Case Strategies Group (f/k/a NFL Case Consulting, LLC)* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 06/06/2017) |
| 06/06/2017 | 7778 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE. Certificate of Service. Farrise Law Firm's petition to establish attorney's lien against |

**-490-**

| | | |
|---|---|---|
| | | settlement proceeds of Ulys Leroy Thompson. (FARRISE, SIMONA) Modified on 6/7/2017 (ems). (Entered: 06/06/2017) |
| 06/06/2017 | 7779 | NOTICE by PLAINTIFF(S) re 7347 MOTION for Permanent Injunction *By CO-LEAD CLASS COUNSEL PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS BY JIM MCCABE AND NFL CASE CONSULTING, LLC Co-Lead Class Counsel's Notice of Withdrawal of Motion for Injunction Without Prejudice* (SEEGER, CHRISTOPHER) (Entered: 06/06/2017) |
| 06/07/2017 | 7780 | NOTICE by PLAINTIFF(S) *NOTICE OF ATTORNEY'S LIENS* (STALLWORTH, MARK) (Entered: 06/07/2017) |
| 06/07/2017 | 7781 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (STALLWORTH, MARK) (Entered: 06/07/2017) |
| 06/07/2017 | 7782 | STATUS REPORT *NFL Case Consulting, LLC and Jim McCabe's Status Report in response to Co-Lead Class Counsel's Status Report, dated 6/6/2017* by NFL CASE CONSULTING, LLC. (SCHEFF, RICHARD) Modified on 6/7/2017 (ems). (Entered: 06/07/2017) |
| 06/07/2017 | 7783 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 6/7/2017 (ems). (Entered: 06/07/2017) |
| 06/07/2017 | 7784 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Glenn Derby)* (GIDDENS, JOHN) (Entered: 06/07/2017) |
| 06/07/2017 | 7785 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/07/2017) |
| 06/07/2017 | 7786 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 6/7/2017 (ems). (Entered: 06/07/2017) |
| 06/07/2017 | 7787 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Paul Ernster)* (GIDDENS, JOHN) (Entered: 06/07/2017) |
| 06/07/2017 | 7788 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/07/2017) |
| 06/07/2017 | 7789 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 6/7/2017 (ems). (Entered: 06/07/2017) |
| 06/07/2017 | 7790 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Todd McArthur)* (GIDDENS, JOHN) (Entered: 06/07/2017) |
| 06/07/2017 | 7791 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/07/2017) |
| 06/07/2017 | 7792 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 6/7/2017 (ems). (Entered: 06/07/2017) |
| 06/07/2017 | 7793 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: John Niland)* (GIDDENS, JOHN) (Entered: 06/07/2017) |
| 06/07/2017 | 7794 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 6/7/2017 (ems). (Entered: 06/07/2017) |
| 06/07/2017 | 7795 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Jethro Pugh, Jr.)* (GIDDENS, JOHN) (Entered: 06/07/2017) |
| 06/07/2017 | 7796 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/07/2017) |

| 06/07/2017 | 7797 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 6/7/2017 (ems). (Entered: 06/07/2017) |
| 06/07/2017 | 7798 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: David Recher)* (GIDDENS, JOHN) (Entered: 06/07/2017) |
| 06/07/2017 | 7799 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/07/2017) |
| 06/07/2017 | 7800 | NOTICE by PLAINTIFF(S) *lien for attorney fees (as to Dadrian Brown)* (BUCKLEY, DAVID) (Entered: 06/07/2017) |
| 06/07/2017 | 7801 | APPLICATION/PETITION *to establish lien for attorney fees (as to Dadrian Brown)* by PLAINTIFF(S). (BUCKLEY, DAVID) (Entered: 06/07/2017) |
| 06/07/2017 | 7802 | NOTICE by PLAINTIFF(S) *of lien for attorney fees (as to James Lee)* (BUCKLEY, DAVID) (Entered: 06/07/2017) |
| 06/07/2017 | 7803 | APPLICATION/PETITION *to establish lien for attorney fees (as to James Lee)* by PLAINTIFF(S). (BUCKLEY, DAVID) (Entered: 06/07/2017) |
| 06/07/2017 | 7804 | NOTICE by PLAINTIFF(S) *of lien for attorney fees (as to Orenthall O'Neal)* (BUCKLEY, DAVID) (Entered: 06/07/2017) |
| 06/07/2017 | 7805 | APPLICATION/PETITION *to establish lien for attorney fees (as to Orenthall O'Neal)* by PLAINTIFF(S). (BUCKLEY, DAVID) (Entered: 06/07/2017) |
| 06/08/2017 | 7806 | ORDER - UPON CONSIDERATION OF JOHN LORENTZ'S MOTION TO SUPPLEMENT THE MOTION TO INTERVENE, AND ANY RESPONSE THERETO, IT IS HEREBY ORDERED AND DECREED that THE MOTION TO SUPPLEMENT IS GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/8/2017.6/8/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 06/08/2017) |
| 06/09/2017 | 7807 | NOTICE of Appearance by JOEY M MCCALL on behalf of PLAINTIFF(S) (MCCALL, JOEY) (Entered: 06/09/2017) |
| 06/09/2017 | 7808 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/09/2017) |
| 06/09/2017 | 7809 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/09/2017) |
| 06/09/2017 | 7810 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/09/2017) |
| 06/09/2017 | 7811 | MOTION for Approval *of Notice to Class Members* filed by PLAINTIFF(S).Memorandum, Declaration.Motions referred to DAVID R. STRAWBRIDGE. (Attachments: # 1 Text of Proposed Order, # 2 Memorandum, # 3 Declaration)(SEEGER, CHRISTOPHER) Modified on 6/12/2017 (ems). (Entered: 06/09/2017) |
| 06/09/2017 | 7812 | Declaration re 7811 MOTION for Approval *of Notice to Class Members* by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P-1, # 17 Exhibit P-2, # 18 Exhibit P-3, # 19 Exhibit P-4, # 20 Exhibit P-5, # 21 Exhibit P-6, # 22 Exhibit Q, # 23 Exhibit R, # 24 Exhibit S)(SEEGER, CHRISTOPHER) (Entered: 06/09/2017) |

| 06/09/2017 | 7813 | Corrected Proposed Order For Motion ECF No. 7811 filed by PLAINTIFF(S).. (SEEGER, CHRISTOPHER) Modified on 6/12/2017 (ems). (Entered: 06/09/2017) |
| 06/12/2017 | 7814 | ORDER that CO-LEAD COUNSEL HAVING MOVED PURSUANT TO RULE 23(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND THIS COURT'S INHERENT AUTORITY TO SUPERVISE CLASS ACTION SETTLEMENTS, TO HAVE THE COURT AUTHORIZE THE ISSUANCE OF A PROPOSED NOTICE ("NOTICE") TO ALL MEMBERS OF THE SETTLEMENT CLASS ("CLASS"), IN ORDER TO ADDRESS CONFUSION AMONG CLASS MEMBERS that HAS ARISEN ON ACCOUNT OF SOLICITATIONS FROM THIRD-PARTY CLAIMS SERVICES COMPANIES AND OTHER SOURCES that... IT IS ORDERED that THE MOTION (ECF NO.7811) IS GRANTED AND A REVISED VERSION OF THE PROPOSED NOTICE, ATTACHED AS EXHIBIT A, IS APPROVED FOR DISTRIBUTION TO CLASS MEMBERS.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/12/2017.6/12/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 06/12/2017) |
| 06/12/2017 | 7815 | NOTICE of Appearance by DAVID BAYLIS FRANCO on behalf of PLAINTIFF(S) with Certificate of Service(FRANCO, DAVID) (Entered: 06/12/2017) |
| 06/12/2017 | 7816 | REPLY to Response to Motion re 7557 MOTION for Leave to File *Second Amended Master Administrative Long-Form Complaint* filed by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 06/12/2017) |
| 06/13/2017 | 7817 | Letter from JOE MOTT, PRO SE (mo, ) (Entered: 06/13/2017) |
| 06/13/2017 | 7818 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Plaintiff LaBrandon Toefield Only(FRANCO, DAVID) (Entered: 06/13/2017) |
| 06/13/2017 | 7819 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/13/2017) |
| 06/13/2017 | 7820 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/13/2017) |
| 06/13/2017 | 7821 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/13/2017) |
| 06/13/2017 | 7822 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/13/2017) |
| 06/13/2017 | 7823 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/13/2017) |
| 06/14/2017 | 7824 | ORDER - CONSIDERTING THE UNCONTESTED MOTION OF CO-LEAD CLASS COUNSEL FOR ENTRY OF AN ORDER IN AID OF IMPLEMENTATION OF THE NFL CONCUSSION SETTLEMENT PROGRAM (THE "PROGRAM"), PURSUANT TO THIS COURT'S CONTINUING AND EXCLUSIVE JURISDICTION... 1. DEFINED TERMS:... 4. EXCLUSIVE RETAINED JURISDICTION:.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/13/2017.6/14/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 06/14/2017) |
| 06/14/2017 | 7825 | ORDER - CONSIDERING THE UNCONTESTED MOTION OF CO-LEAD CLASS COUNSEL FOR ENTRY OF AN ORDERIN AID OF IMPLEMENTATION OF THE NFL CONCUSSION SETTLEMENT PROGRAM (THE "PROGRAM"), PURSUANT TO THIS COURT'S CONTINUING AND EXCLUSIVE JURISDICTION UNDER... IT IS HEREBY ORDERED AS FOLLOWS: 1. DEFEINED TERMS:... 4. EXCLUSIVE RETAINED JURISDICTION... SIGNED BY HONORABLE ANITA B. |

| | | BRODY ON 6/13/2017.6/14/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 06/14/2017) |
|---|---|---|
| 06/15/2017 | 7826 | NOTICE OF ATTORNEY'S LIEN filed by PLAINTIFF(S).. (Attachments: # 1 Petition) (DAVIES, MARC) Modified on 6/16/2017 (ems). (Entered: 06/15/2017) |
| 06/15/2017 | 7827 | STATUS REPORT *Joint Status Report on the Implementation of the Settlement Program* by PLAINTIFF(S). (Attachments: # 1 Exhibit A - Declaration of Orran L. Brown, Sr., # 2 Exhibit B - Declaration of Matthew L. Garretson)(SEEGER, CHRISTOPHER) (Entered: 06/15/2017) |
| 06/19/2017 | 7828 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Exhibit Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 06/19/2017) |
| 06/19/2017 | 7829 | NOTICE by PLAINTIFF(S) (Attachments: # 1 Exhibit Petition to Establish Atty Lien) (DUGAN, JAMES) (Entered: 06/19/2017) |
| 06/21/2017 | 7830 | NOTICE of Appearance by LOGAN ANDERSON on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC with Certificate of Service(ANDERSON, LOGAN) (Entered: 06/21/2017) |
| 06/21/2017 | 7831 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 6/21/2017 (ems). (Entered: 06/21/2017) |
| 06/21/2017 | 7832 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Destry Wright)* (GIDDENS, JOHN) (Entered: 06/21/2017) |
| 06/21/2017 | 7833 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/21/2017) |
| 06/21/2017 | 7834 | NOTICE of Appearance by CHARLES S. SIEGEL on behalf of LORRAINE DIXON, RICKEY DIXON with Certificate of Service(SIEGEL, CHARLES) (Entered: 06/21/2017) |
| 06/21/2017 | 7835 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 6/21/2017 (ems). (Entered: 06/21/2017) |
| 06/21/2017 | 7836 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Ricky Patton)* (GIDDENS, JOHN) (Entered: 06/21/2017) |
| 06/21/2017 | 7837 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/21/2017) |
| 06/21/2017 | 7838 | NOTICE by PLAINTIFF(S) *Attorneys' Lien as to Steve Warren* (Attachments: # 1 Exhibit)(MATHENY, MATTHEW) (Entered: 06/21/2017) |
| 06/21/2017 | 7839 | TRANSCRIPT of Telephone Conference held on 4/13/2017, before Judge ANITA B. BRODY. Court Reporter/Transcriber ESR / DOMAN TRANSCRIPTION SERVICE. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 7/12/2017. Redacted Transcript Deadline set for 7/24/2017. Release of Transcript Restriction set for 9/19/2017. (ems) (Entered: 06/21/2017) |
| 06/21/2017 | 7840 | Notice of Filing of Official Transcript with Certificate of Service re 7839 Transcript - PDF,, 6/21/2017 Entered and Copies Emailed. (ems) (Entered: 06/21/2017) |
| 06/21/2017 | 7841 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 6/21/2017 (ems). (Entered: 06/21/2017) |

| 06/21/2017 | 7842 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 06/21/2017) |
| --- | --- | --- |
| 06/21/2017 | 7843 | NOTICE by PLAINTIFF(S) of Attorney's Lien (re: Steve Gage) (GIDDENS, JOHN) (Entered: 06/21/2017) |
| 06/21/2017 | 7844 | NOTICE of Appearance by CHARLIE STERN on behalf of LORRAINE DIXON, RICKEY DIXON with Certificate of Service(STERN, CHARLIE) (Entered: 06/21/2017) |
| 06/21/2017 | 7845 | RESPONSE in Opposition re 7811 MOTION for Approval of Notice to Class Members filed by NFL CASE CONSULTING, LLC. (SCHEFF, RICHARD) (Entered: 06/21/2017) |
| 06/22/2017 | 7846 | STIPULATION and [Proposed] Order by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 6/22/2017 (ems). (Entered: 06/22/2017) |
| 06/22/2017 | 7847 | NOTICE of Appearance by BABTUNDE MOHAMMED CADMUS on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC with Certificate of Service(CADMUS, BABTUNDE) (Entered: 06/22/2017) |
| 06/26/2017 | 7848 | STIPULATION AND ORDER... IT IS SO ORDERED BASED ON THE ABOVE STIPULATION AND ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUESTS SUBMITTED BY MICHAEL BASS AND JEFFREY WRIGHT ARE APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING MICHAEL BASS AND JEFFREY WRIGHT. APPROVED BY THE COURT:. SIGNED BY HONORABLE ANITA B. BRODY ON 6/26/2017. 6/26/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 06/26/2017) |
| 06/26/2017 | 7849 | RESPONSE in Opposition re 7762 MOTION for Leave to File Second Amended Master Administrative Complaint Against the Riddell Defendants filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Appendix Attachment A) (CEREGHINI, PAUL) (Entered: 06/26/2017) |
| 06/27/2017 | 7850 | MOTION for Joinder in Estate of Kevin Turner's Motion to Resolve Attorney's Fee Dispute filed by LORRAINE DIXON, RICKEY DIXON.Certificate of Service. (SIEGEL, CHARLES) (Entered: 06/27/2017) |
| 06/28/2017 | 7851 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 06/28/2017) |
| 06/29/2017 | 7852 | ORDER THAT THE OPT-OUT PLAINTIFFS' 7557 MOTION FOR LEAVE TO FILE A SECOND AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT IS GRANTED; THE OPT-OUT PLAINTIFFS ARE GRANTED LEAVE TO FILE THEIR SECOND AMENDED MASTER ASDMINISTRATIVE LONG-FORM COMPLAINT ON OR BEFORE JULY 11, 2017. SIGNED BY HONORABLE ANITA B. BRODY ON 6/28/2017; 6/29/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL OPT-OUT PLAINTIFFS ON ATTACHED LIST).(tjd, ) (Entered: 06/29/2017) |
| 06/30/2017 | 7853 | MOTION for Order by Co-Lead Class Counsel for Approval of Centralized Process for Representative Claimants and Derivative Claimant Representatives filed by |

| | | PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Text of Proposed Order) (SEEGER, CHRISTOPHER) (Entered: 06/30/2017) |
|---|---|---|
| 07/05/2017 | 7854 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/05/2017) |
| 07/05/2017 | 7855 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/05/2017) |
| 07/05/2017 | 7856 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/05/2017) |
| 07/05/2017 | 7857 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/05/2017) |
| 07/05/2017 | 7858 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/05/2017) |
| 07/05/2017 | 7859 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/5/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7860 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/5/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7861 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/5/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7862 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/5/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7863 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/5/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7864 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/5/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7865 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/5/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7866 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/5/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7867 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/5/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7868 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/5/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7869 | NOTICE by PLAINTIFF(S) re 7859 MOTION for Attorney Fees *regarding Upton Williams by the Mokaram Firm Notice of Lien* (STERN, JEFFREY) (Entered: 07/05/2017) |
| 07/05/2017 | 7870 | NOTICE by PLAINTIFF(S) re 7860 MOTION for Attorney Fees *regarding Connell Spain by the Mokaram Firm Notice of Lien* (STERN, JEFFREY) (Entered: 07/05/2017) |
| 07/05/2017 | 7871 | NOTICE by PLAINTIFF(S) re 7861 MOTION for Attorney Fees *regarding Kevin Smith by the Mokaram Firm Notice of Lien* (STERN, JEFFREY) (Entered: 07/05/2017) |
| 07/05/2017 | 7872 | NOTICE by PLAINTIFF(S) re 7862 MOTION for Attorney Fees *regarding Kelvin Smith by the Mokaram Firm Notice of Lien* (STERN, JEFFREY) (Entered: 07/05/2017) |

**-496-**

| | | |
|---|---|---|
| 07/05/2017 | 7873 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/05/2017) |
| 07/05/2017 | 7874 | NOTICE by PLAINTIFF(S) re 7863 MOTION for Attorney Fees *regarding Michael Hicks by the Mokaram Firm Notice of Lien* (STERN, JEFFREY) (Entered: 07/05/2017) |
| 07/05/2017 | 7875 | NOTICE by PLAINTIFF(S) re 7864 MOTION for Attorney Fees *regarding Romby Bryant by the Mokaram Firm Notice of Lien* (STERN, JEFFREY) (Entered: 07/05/2017) |
| 07/05/2017 | 7876 | NOTICE by PLAINTIFF(S) re 7865 MOTION for Attorney Fees *regarding Spergon Wynn by the Mokaram Firm Notice of Lien* (STERN, JEFFREY) (Entered: 07/05/2017) |
| 07/05/2017 | 7877 | NOTICE by PLAINTIFF(S) re 7866 MOTION for Attorney Fees *regarding Shawntae Spencer by the Mokaram Firm Notice of Lien* (STERN, JEFFREY) (Entered: 07/05/2017) |
| 07/05/2017 | 7878 | NOTICE by PLAINTIFF(S) re 7867 MOTION for Attorney Fees *regarding Sultan McCullough by the Mokaram Firm Notice of Lien* (STERN, JEFFREY) (Entered: 07/05/2017) |
| 07/05/2017 | 7879 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/05/2017) |
| 07/05/2017 | 7880 | NOTICE by PLAINTIFF(S) re 7868 MOTION for Attorney Fees *regarding Kareem Kelly by the Mokaram Firm Notice of Lien* (STERN, JEFFREY) (Entered: 07/05/2017) |
| 07/05/2017 | 7881 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (WEISBERG, LAWRENCE) Modified on 7/6/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7882 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (WEISBERG, LAWRENCE) Modified on 7/6/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7883 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (WEISBERG, LAWRENCE) Modified on 7/6/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7884 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (WEISBERG, LAWRENCE) Modified on 7/6/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7885 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (WEISBERG, LAWRENCE) Modified on 7/6/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7886 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (WEISBERG, LAWRENCE) Modified on 7/6/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7887 | NOTICE by PLAINTIFF(S) *Attorney's Lien* (WEISBERG, LAWRENCE) (Entered: 07/05/2017) |
| 07/05/2017 | 7888 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/6/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7889 | NOTICE by PLAINTIFF(S) re 7888 MOTION for Attorney Fees *regarding Pierre Walters by the Mokaram Firm Notice of Lien* (STERN, JEFFREY) (Entered: 07/05/2017) |

**-497-**

| 07/05/2017 | 7890 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 7/6/2017 (ems). (Entered: 07/05/2017) |
| 07/05/2017 | 7891 | NOTICE by PLAINTIFF(S) re 7890 MOTION for Attorney Fees *regarding Correll Buckhalter (by David Buckley) Notice of Lien* (BUCKLEY, DAVID) (Entered: 07/05/2017) |
| 07/06/2017 | 7892 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 7/6/2017 (ems). (Entered: 07/06/2017) |
| 07/06/2017 | 7893 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Odie Harris)* (GIDDENS, JOHN) (Entered: 07/06/2017) |
| 07/06/2017 | 7894 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/06/2017) |
| 07/06/2017 | 7895 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/06/2017) |
| 07/06/2017 | 7896 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/06/2017) |
| 07/06/2017 | 7897 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/06/2017) |
| 07/06/2017 | 7898 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/06/2017) |
| 07/06/2017 | 7899 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/06/2017) |
| 07/06/2017 | 7900 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/06/2017) |
| 07/06/2017 | 7901 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/06/2017) |
| 07/06/2017 | 7902 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/06/2017) |
| 07/06/2017 | 7903 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/06/2017) |
| 07/06/2017 | 7904 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/06/2017) |
| 07/06/2017 | 7905 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/06/2017) |
| 07/06/2017 | 7906 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - Frank Staine-Pyne* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/06/2017) |
| 07/06/2017 | 7907 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - Joseph Williams* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/06/2017) |
| 07/06/2017 | 7908 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - Walter Young* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/06/2017) |
| 07/09/2017 | 7909 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/09/2017) |

| 07/09/2017 | 7910 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/09/2017) |
| 07/09/2017 | 7911 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/09/2017) |
| 07/09/2017 | 7912 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/09/2017) |
| 07/09/2017 | 7913 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/09/2017) |
| 07/09/2017 | 7914 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/09/2017) |
| 07/09/2017 | 7915 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/09/2017) |
| 07/09/2017 | 7916 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/09/2017) |
| 07/09/2017 | 7917 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/09/2017) |
| 07/09/2017 | 7918 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/09/2017) |
| 07/09/2017 | 7919 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/09/2017) |
| 07/09/2017 | 7920 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/09/2017) |
| 07/09/2017 | 7921 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/09/2017) |
| 07/09/2017 | 7922 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/09/2017) |
| 07/09/2017 | 7923 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/09/2017) |
| 07/10/2017 | 7924 | NOTICE by PLAINTIFF(S) *of lien for attorney fees (as to Narond Alexander)* (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7925 | APPLICATION/PETITION *to establish for attorney fees (as to Narond Alexander)* by PLAINTIFF(S). (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7926 | NOTICE by PLAINTIFF(S) *of lien for attorney fees (as to Cory Fleming)* (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7927 | APPLICATION/PETITION *to establish for attorney fees (as to Cory Fleming)* by PLAINTIFF(S). (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7928 | NOTICE by PLAINTIFF(S) *of lien for attorney fees (as to Issac Davis)* (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7929 | APPLICATION/PETITION *to establish for attorney fees (as to Issac Davis)* by PLAINTIFF(S). (CLOUD, IAN) (Entered: 07/10/2017) |

| 07/10/2017 | 7930 | NOTICE by PLAINTIFF(S) *of lien for attorney fees (as to Lamont Green)* (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7931 | APPLICATION/PETITION *to establish for attorney fees (as to Lamont Green)* by PLAINTIFF(S). (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7932 | NOTICE by PLAINTIFF(S) *of lien for attorney fees (as to Raymond Green)* (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7933 | APPLICATION/PETITION *to establish for attorney fees (as to Raymond Green)* by PLAINTIFF(S). (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7934 | NOTICE by PLAINTIFF(S) *of lien for attorney fees (as to Ken Hamlin)* (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7935 | APPLICATION/PETITION *to establish for attorney fees (as to Ken Hamlin)* by PLAINTIFF(S). (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7936 | NOTICE by PLAINTIFF(S) *of lien for attorney fees (as to Ronney Jenkins)* (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7937 | APPLICATION/PETITION *to establish for attorney fees (as to Ronney Jenkins)* by PLAINTIFF(S). (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7938 | NOTICE by PLAINTIFF(S) *of lien for attorney fees (as to Christopher Wells)* (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7939 | APPLICATION/PETITION *to establish for attorney fees ( as to Christopher Wells)* by PLAINTIFF(S). (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7940 | NOTICE by PLAINTIFF(S) *of lien for attorney fees (as to Julius Williams)* (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/10/2017 | 7941 | APPLICATION/PETITION *to establish for attorney fees (as to Julius Williams)* by PLAINTIFF(S). (CLOUD, IAN) (Entered: 07/10/2017) |
| 07/11/2017 | 7942 | RESPONSE in Opposition re 7850 MOTION for Joinder *in Estate of Kevin Turner's Motion to Resolve Attorney's Fee Dispute* filed by PLAINTIFF(S). (ZIMMERMAN, CHARLES) (Entered: 07/11/2017) |
| 07/11/2017 | 7943 | NOTICE by PLAINTIFF(S) -- *Letter to Hon. Brody re submission of Second Amended Master Long Form Complaint by Federal Express* (FLEISHMAN, WENDY) (Entered: 07/11/2017) |
| 07/11/2017 | 8026 | SECOND AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT AGAINST NFL DEFENDANTS filed by PLAINTIFF(S). Exhibit, Certificate of Service. (ems) (Entered: 07/18/2017) |
| 07/12/2017 | 7944 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - Clint Harris* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/12/2017) |
| 07/12/2017 | 7945 | First MOTION to Remand *or Alternative RE-Designate Unrelated* filed by PLAINTIFF(S).Motion to Remand and Incorporated Memorandum of Law. (SOHN, BRADFORD) Modified on 7/17/2017 (ems). (Entered: 07/12/2017) |
| 07/12/2017 | 7946 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 7/12/2017 (ems). (Entered: 07/12/2017) |

| 07/13/2017 | 7947 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Tony and Janet Dorsett) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2017) |
| 07/13/2017 | 7948 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Deems and Susan May) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2017) |
| 07/13/2017 | 7949 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Shante Carver) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 07/13/2017) |
| 07/13/2017 | 7950 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - Roy Foster* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/13/2017) |
| 07/13/2017 | 7951 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - William Hampton* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/13/2017) |
| 07/13/2017 | 7952 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - Dennis Johnson* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/13/2017) |
| 07/13/2017 | 7953 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - Richard Mauti* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/13/2017) |
| 07/13/2017 | 7954 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - Ronald McKinnon* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/13/2017) |
| 07/13/2017 | 7955 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - Tyrone Rush* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/13/2017) |
| 07/13/2017 | 7956 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - Sean Smith* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/13/2017) |
| 07/13/2017 | 7957 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - Christopher Thompson* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/13/2017) |
| 07/13/2017 | 7958 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - Louis Williams* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/13/2017) |
| 07/13/2017 | 7959 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Mijoshki Evans* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 07/13/2017) |
| 07/13/2017 | 7960 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/13/2017) |
| 07/13/2017 | 7961 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to D. Kris Haines and Mary Ann Haines* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 07/13/2017) |
| 07/13/2017 | 7962 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/13/2017) |
| 07/13/2017 | 7963 | MOTION to Remand to State Court filed by PLAINTIFF(S).Memorandum. (SCHERMERHORN, ANDREW) Modified on 7/17/2017 (ems). (Entered: 07/13/2017) |
| 07/13/2017 | 7964 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Kevin N. House, Sr.* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 07/13/2017) |

| 07/13/2017 | 7965 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/13/2017) |
| 07/13/2017 | 7966 | MOTION to Remand to State Court filed by PLAINTIFF(S).Memorandum. (SCHERMERHORN, ANDREW) Modified on 7/17/2017 (ems). (Entered: 07/13/2017) |
| 07/13/2017 | 7967 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Jeremiah Castille and Lori Jean Castille* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 07/13/2017) |
| 07/13/2017 | 7968 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/13/2017) |
| 07/13/2017 | 7969 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Solomon Miller* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 07/13/2017) |
| 07/13/2017 | 7970 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/13/2017) |
| 07/13/2017 | 7971 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Fernando Smith* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 07/13/2017) |
| 07/13/2017 | 7972 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/13/2017) |
| 07/14/2017 | 7973 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 7/14/2017 (ems). (Entered: 07/14/2017) |
| 07/14/2017 | 7974 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Paul Flatley) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7975 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Marvin Cobb) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7976 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Elvin Bethea) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7977 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Jon and Jane Arnett) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7978 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (William Truax) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7979 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Bernard and Ruthie Parrish) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7980 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Craig Morton and Kym Galloway) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7981 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Jesse Daley Smith and Melanie Smith) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7982 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Ronald and Judith Acks) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |

| 07/14/2017 | 7983 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Bobby Bell) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7984 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Tyrone and April Carter) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7985 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Michael Fanning) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7986 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Paul and Pamela Krause) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7987 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (J. Bruce and Cynthia Jarvis) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7988 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Brad Edelman) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7989 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Woodrow and Cheryl Campbell) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7990 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Steven and Mary Baumgartner) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7991 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Anthony Ronald and Jaime Suzanne Yary) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7992 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (George Seals) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7993 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Robert and Aloise Lurtsema) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7994 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Gregory and Josepine Larson) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7995 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Ron and Claudia Pritchard) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7996 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Edward and Joan White) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7997 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Billy Ray Barnes) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7998 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Lamont Brightful) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 7999 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Richard and Ellen Eber) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8000 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Bob and Katherine Grant) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8001 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Fred and Kaye Forsberg) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8002 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Charles Commiskey) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |

| 07/14/2017 | 8003 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Richard Bielski) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8004 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (William and Elizabeth Bain) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8005 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Stuart and Linda Voigt) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8006 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Dan Pastorini) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8007 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Dan and Janet LaRose) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8008 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Joseph Senser) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8009 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Jacob E. Scott III) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8010 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Johnny N. Robinson) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8011 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Robert John Riggins) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8012 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Steven Preece) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8013 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Willie Lanier) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8014 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Doug Kingsriter) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8015 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (William Healy Jr.) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8016 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Keith Fahnhorst) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8017 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Jerry Sherk) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8018 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Andy Dorris) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/14/2017) |
| 07/14/2017 | 8019 | MOTION to Exclude *Motion for Exclusion from Settlement Class by Gregory Bingham and Request for Leave to File Short Form Complaint*, MOTION for Leave to File filed by PLAINTIFF(S).. (Attachments: # 1 Exhibit Ex. A - [Proposed] Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Gregg Bingham))(KUROWSKI, DANIEL) Modified on 7/17/2017 (ems). (Entered: 07/14/2017) |
| 07/14/2017 | 8020 | Opt Out Plaintiff Short Form Complaint (Thomas and Heather Clapp) by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/14/2017) |
| 07/14/2017 | 8021 | Opt Out Plaintiff Short Form Complaint (Patrick and Helene Stant) by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/14/2017) |

| 07/14/2017 | 8022 | Opt-Out Plaintiff Short Form Complaint (Estate of George Walker & Margrid Walker) by PLAINTIFF(S). (KENNEY, JEANNINE) (Entered: 07/14/2017) |
| 07/17/2017 | 8023 | STIPULATION AND ORDER THAT THE REVOCATION REQUEST SUBMITTED BY JACOB SCOTT III IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING JACOB SCOTT III. SIGNED BY HONORABLE ANITA B. BRODY ON 7/17/2017. 7/17/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-29) (ems) (Entered: 07/17/2017) |
| 07/17/2017 | 8024 | STIPULATION and [Proposed] Order by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 7/17/2017 (ems). (Entered: 07/17/2017) |
| 07/17/2017 | 8025 | NOTICE by PLAINTIFF(S) re 8009 Praecipe/Request Notice of Withdrawal of Opt Out Plaintiff Jacob E. Scott III Short Form Complaint Against NFL Defendants (KUROWSKI, DANIEL) (Entered: 07/17/2017) |
| 07/18/2017 | 8027 | OPT-OUT PLAINTIFF SHORT-FORM COMPLAINT AGAINST NFL AND NFLP filed by PLAINTIFF(S). (SOHN, BRADFORD) Modified on 7/18/2017 (ems). (Entered: 07/18/2017) |
| 07/18/2017 | 8028 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 07/18/2017) |
| 07/18/2017 | 8029 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 07/18/2017) |
| 07/18/2017 | 8030 | ORDER THAT EACH OPT OUT PLAINTIFF SHALL FILE A SHORT FORM COMPLAINT ON BOTH THE 12-MD-2323 DOCKET AND THE APPLICABLE UNDERLYING DOCKET FOR THE GIVEN ACTION ON OR BEFORE 7/27/2017; ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 7/18/2017. 7/18/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL OPT OUT PLAINTIFFS ON ATTACHED LIST) (ems) (Entered: 07/18/2017) |
| 07/18/2017 | 8031 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 07/18/2017) |
| 07/18/2017 | 8032 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 07/18/2017) |
| 07/18/2017 | 8033 | STIPULATION AND ORDER THAT THE REVOCATION REQUEST SUBMITTED BY RONALD ACKS, KEITH FAHNHORST, STEVEN PREECE, GEORGE SEALS, AND STUART VOIGT IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING RONALD ACKS, KEITH FAHNHORST, STEVEN PREECE, GEORGE SEALS, AND STUART VOIGT. SIGNED BY HONORABLE ANITA B. BRODY ON 7/18/2017. 7/18/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-29) (ems) (Entered: 07/18/2017) |
| 07/18/2017 | 8034 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 7/18/2017 (ems). (Entered: 07/18/2017) |
| 07/18/2017 | 8035 | NOTICE by PLAINTIFF(S) of Attorney Lien re: Henry Rhodes (GIDDENS, JOHN) (Entered: 07/18/2017) |

| 07/18/2017 | 8036 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 07/18/2017) |
| 07/19/2017 | 8037 | NOTICE AND ORDER SETTING HEARING RE: DECEPTIVE PRACTICES TARGETING SETTLEMENT CLASS MEMBERS AS OUTLINED HEREIN. SIGNED BY HONORABLE ANITA B. BRODY ON 7/19/2017. 7/19/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 07/19/2017) |
| 07/19/2017 | 8038 | STIPULATION AND ORDER THAT THE REVOCATION REQUEST SUBMITTED BY BOBBY BELL IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING BOBBY BELL. SIGNED BY HONORABLE ANITA B. BRODY ON 7/19/2017. 7/19/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-29) (ems) (Entered: 07/19/2017) |
| 07/19/2017 | 8039 | APPLICATION/PETITION *PETITION TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (FARRISE, SIMONA) (Entered: 07/19/2017) |
| 07/19/2017 | 8040 | APPLICATION/PETITION *PETITION TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (FARRISE, SIMONA) (Entered: 07/19/2017) |
| 07/19/2017 | 8041 | NOTICE by PLAINTIFF(S) re 8016 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Keith Fahnhorst Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 07/19/2017) |
| 07/19/2017 | 8042 | NOTICE by PLAINTIFF(S) re 8012 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Steven Preece Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 07/19/2017) |
| 07/19/2017 | 8043 | NOTICE by PLAINTIFF(S) re 7982 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Ronald Acks Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 07/19/2017) |
| 07/19/2017 | 8044 | NOTICE by PLAINTIFF(S) re 8005 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Stuart Voigt Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 07/19/2017) |
| 07/19/2017 | 8045 | NOTICE by PLAINTIFF(S) re 7992 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff George Seals Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 07/19/2017) |
| 07/20/2017 | 8046 | NOTICE by PLAINTIFF(S) re 8045 Notice (Other) *Amended Notice of Withdrawal of Opt Out Plaintiff George Seales Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 07/20/2017) |
| 07/20/2017 | 8047 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 7/20/2017 (ems). (Entered: 07/20/2017) |
| 07/22/2017 | 8048 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Errict Rhett* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 07/22/2017) |
| 07/22/2017 | 8049 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 07/22/2017) |

| 07/23/2017 | 8050 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 7/24/2017 (ems). (Entered: 07/23/2017) |
| 07/23/2017 | 8051 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 7/24/2017 (ems). (Entered: 07/23/2017) |
| 07/23/2017 | 8052 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 7/24/2017 (ems). (Entered: 07/23/2017) |
| 07/23/2017 | 8053 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (BUCKLEY, DAVID) Modified on 7/24/2017 (ems). (Entered: 07/23/2017) |
| 07/23/2017 | 8054 | NOTICE by PLAINTIFF(S) re 8050 First MOTION for Attorney Fees *re Brodney Pool* (BUCKLEY, DAVID) (Entered: 07/23/2017) |
| 07/23/2017 | 8055 | NOTICE by PLAINTIFF(S) re 8051 First MOTION for Attorney Fees *re Ricky Price* (BUCKLEY, DAVID) (Entered: 07/23/2017) |
| 07/23/2017 | 8056 | NOTICE by PLAINTIFF(S) re 8052 MOTION for Attorney Fees *re Kevin Payne* (BUCKLEY, DAVID) (Entered: 07/23/2017) |
| 07/23/2017 | 8057 | NOTICE by PLAINTIFF(S) re 8053 First MOTION for Attorney Fees *re Brian Schaefering* (BUCKLEY, DAVID) (Entered: 07/23/2017) |
| 07/23/2017 | 8058 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/24/2017 (ems). (Entered: 07/23/2017) |
| 07/23/2017 | 8059 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/24/2017 (ems). (Entered: 07/23/2017) |
| 07/23/2017 | 8060 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/24/2017 (ems). (Entered: 07/23/2017) |
| 07/23/2017 | 8061 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/24/2017 (ems). (Entered: 07/23/2017) |
| 07/23/2017 | 8062 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/24/2017 (ems). (Entered: 07/23/2017) |
| 07/23/2017 | 8063 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/24/2017 (ems). (Entered: 07/23/2017) |
| 07/23/2017 | 8064 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (STERN, JEFFREY) Modified on 7/24/2017 (ems). (Entered: 07/23/2017) |
| 07/23/2017 | 8065 | NOTICE by PLAINTIFF(S) re 8058 MOTION for Attorney Fees *re Jake Ballard* (STERN, JEFFREY) (Entered: 07/23/2017) |
| 07/23/2017 | 8066 | NOTICE by PLAINTIFF(S) re 8059 MOTION for Attorney Fees *re Josh Booty* (STERN, JEFFREY) (Entered: 07/23/2017) |
| 07/23/2017 | 8067 | NOTICE by PLAINTIFF(S) re 8060 MOTION for Attorney Fees *re Plaxico Burress* (STERN, JEFFREY) (Entered: 07/23/2017) |
| 07/23/2017 | 8068 | NOTICE by PLAINTIFF(S) re 8061 MOTION for Attorney Fees *re Sergio Joachim* (STERN, JEFFREY) (Entered: 07/23/2017) |
| 07/23/2017 | 8069 | NOTICE by PLAINTIFF(S) re 8062 MOTION for Attorney Fees *re Ronald McClendon* (STERN, JEFFREY) (Entered: 07/23/2017) |

| 07/23/2017 | 8070 | NOTICE by PLAINTIFF(S) re 8063 MOTION for Attorney Fees *re Reggie McNeal* (STERN, JEFFREY) (Entered: 07/23/2017) |
| 07/23/2017 | 8071 | NOTICE by PLAINTIFF(S) re 8064 MOTION for Attorney Fees *re Edell Shepherd* (STERN, JEFFREY) (Entered: 07/23/2017) |
| 07/24/2017 | 8072 | Shaun Gayle Opt Out Plaintiff Short Form Complaint Against NFL Defendants by PLAINTIFF(S). (WINTERS, JOHN) (Entered: 07/24/2017) |
| 07/24/2017 | 8073 | NOTICE by PLAINTIFF(S) *Notice of Attorneys' Lien as to Keith Henderson* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 07/24/2017) |
| 07/24/2017 | 8074 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 7/24/2017 (ems). (Entered: 07/24/2017) |
| 07/24/2017 | 8075 | NOTICE of Withdrawal of Appearance by JOHN P. FISKE on behalf of All Plaintiffs (FISKE, JOHN) (Entered: 07/24/2017) |
| 07/25/2017 | 8076 | STIPULATION AND ORDER - THIS STIPULATION AND AGREEMENT... WHEREAS, ON APRIL 22, 2015, THIS COURT ISSUED A MEMORANDUM (ECF NO. 6509) AND FINAL ORDER AND JUDGMENT (ECF NO. 6510), AND ON MAY 8, 2015, AN AMENDED FINAL ORDER AND JUGEMENT (ECF NO. 6534), APPROVING THE SETTLEMENT AGREEMENT IN ITS ENTIRELY;... IT IS ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION... AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH.... SIGNED BY HONORABLE ANITA B. BRODY ON 7/24/2017. 7/25/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/25/2017) |
| 07/25/2017 | 8077 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Daniel Clark IV* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8078 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8079 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Ronald L. Singleton* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8080 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8081 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Patrick Hunter* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 07/25/2017) |
| 07/25/2017 | 8082 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Jerry L. Porter* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8083 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8084 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Ronney Jenkins* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 07/25/2017) |

| 07/25/2017 | 8085 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Derek Kennard* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 07/25/2017) |
| 07/25/2017 | 8086 | OPT-OUT PLAINTIFF SHORT-FORM COMPLAINT AGAINST NFL AND NFLP filed by PLAINTIFF(S). (APPLIES TO 12-CV-1034) (ems) (Entered: 07/25/2017) |
| 07/25/2017 | 8087 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). (WEISBERG, LAWRENCE) Modified on 7/25/2017 (ems). (Entered: 07/25/2017) |
| 07/25/2017 | 8088 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Michael Johnson and Erin Dixon Johnson* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8089 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8090 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Kiwaukee Thomas* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8091 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Keith Hamilton* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8092 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8093 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Eric and Dawn Wright* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8094 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Bruce and Terrez Taylor* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8095 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Andrew and Cynthia Jordan* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8096 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Glenn and Charlotte Collins* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8097 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Ricky and Tammy Nattiel* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8098 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Rod and Blossom Davis* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8099 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Ronnie Ghent* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8100 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Julius and Renee Williams* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8101 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8102 | NOTICE by PLAINTIFF(S) re 8007 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Dan LaRose Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 07/25/2017) |

| 07/25/2017 | 8103 | NOTICE by PLAINTIFF(S) re 7996 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Edward White Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8104 | NOTICE by PLAINTIFF(S) re 8006 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Dan Pastorini Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8105 | NOTICE by PLAINTIFF(S) re 8018 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Andy Dorris Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8106 | NOTICE by PLAINTIFF(S) re 7985 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Michael Fanning Short Form Complaint Against NFD Defendants* (KUROWSKI, DANIEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8107 | ORDER APPROVING CENTRALIZED PROCESS FOR REPRESENTATIVE CLAIMANTS AND DERIVATIVE CLAIMANT REPRESENTATIVES AS OUTLINED HEREIN. SIGNED BY HONORABLE ANITA B. BRODY ON 7/25/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 07/25/2017) |
| 07/25/2017 | 8108 | NOTICE by PLAINTIFF(S) re 8017 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Jerry Sherk Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 07/25/2017) |
| 07/25/2017 | 8109 | WITHDRAWAL AND SUBSTITUTION OF COUNSEL FOR PLAINTIFF HEATH SHERMAN filed by PLAINTIFF(S). (WEISBERG, LAWRENCE) Modified on 7/25/2017 (ems). (Entered: 07/25/2017) |
| 07/25/2017 | 8110 | NOTICE by PLAINTIFF(S) *OF ATTORNEY'S LIEN- ESTATE OF ERIC SCOGGINS* (WEISS, SOL) (Entered: 07/25/2017) |
| 07/25/2017 | 8111 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Reese and Mary McCall* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8112 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Lawrence and Lasandra Watkins* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8113 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Mark Lillibridge* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8114 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Felix Wright* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8115 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Glenn E Young* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8116 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Steven and Jennifer Deberg* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8117 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Charlie McShane* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8118 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Michael and Yolanda Haddix* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8119 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Todd Howard* (LOCKS, GENE) (Entered: 07/25/2017) |

| 07/25/2017 | 8120 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Roland and Donna Harper* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8121 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Stacey and Hortensia Simmons* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8122 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Jon and Lynne Reichenback* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8123 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Jackie Walker* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8124 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Frank and Maxine Hartley* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8125 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - David and Julie Greenwood* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8126 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Darrel and Dolores Jones* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8127 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Clifton and Judy Smith* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8128 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Michael C Williams* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/25/2017 | 8129 | Amended Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Thomas and Heather Clapp) by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/25/2017) |
| 07/25/2017 | 8130 | Amended Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Patrick and Helene Stant) by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 07/25/2017) |
| 07/25/2017 | 8131 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Jorge and Katherine Diaz* (LOCKS, GENE) (Entered: 07/25/2017) |
| 07/26/2017 | 8132 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 7/27/2017 (ems). (Entered: 07/26/2017) |
| 07/26/2017 | 8133 | NOTICE of Appearance by SAMUEL HENDERSON on behalf of PLAINTIFF(S) (HENDERSON, SAMUEL) (Entered: 07/26/2017) |
| 07/26/2017 | 8134 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit 1) (HENDERSON, SAMUEL) (Entered: 07/26/2017) |
| 07/26/2017 | 8135 | NOTICE of Appearance by JOHN J. DRISCOLL on behalf of PLAINTIFF(S) (DRISCOLL, JOHN) (Entered: 07/26/2017) |
| 07/26/2017 | 8136 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Estate of Wally Hilgenberg* (COBEN, LARRY) (Entered: 07/26/2017) |
| 07/27/2017 | 8137 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8138 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8139 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |

| 07/27/2017 | 8140 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8141 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8142 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8143 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8144 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8145 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8146 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8147 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8148 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8149 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8150 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8151 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8152 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8153 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8154 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Kansas City Chiefs Football Club, Inc.* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8155 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Arizona Cardinals Football Club, LLC* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8156 | NOTICE by PLAINTIFF(S) *Opt Out SFC Against Arizona Cardinals Football Club, LLC* (ANDERSON, PAUL) (Entered: 07/27/2017) |
| 07/27/2017 | 8157 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - Atlas Herrion* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/27/2017) |
| 07/27/2017 | 8158 | *Opt Out Plaintiff Short Form Complaint (Tiaina T. Seau and Luisa T. Seau)* by PLAINTIFF(S). (GOMEZ, JOHN) (Entered: 07/27/2017) |
| 07/27/2017 | 8159 | STIPULATION AND ORDER... WHEREAS, ON APRIL 22, 2015, THIS COURT ISSUED AMEMORANDUM (ECF NO. 6509) AND FINAL RODER AND JUDGMENT (ECF NO. 6510), AND ON MAY 8, 2015, AN AMENDED FINAL ORDER AND JUDGMENT (ECF NO. 6534), APPROVING THE SETTLEMENT |

| | | |
|---|---|---|
| | | AGREEMENT IN ITS ENTIRETY;... IT IS SO ORDERED, BASED ON THE ABOVE STIPULATION AND ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR.,... APPROVED BY THE COURT:. SIGNED BY HONORABLE ANITA B. BRODY ON 7/26/2017. 7/27/2017 ENTERED AND COPIES VIA ECF. (mo, ) (Entered: 07/27/2017) |
| 07/27/2017 | 8160 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Emanuel King* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 07/27/2017) |
| 07/27/2017 | 8161 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Henry Lawrence* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 07/27/2017) |
| 07/27/2017 | 8162 | MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR AMICUS filed by JUSTICE FOR JEFF.. (JOHNSON, ZACHARY) Modified on 7/28/2017 (ems). (Entered: 07/27/2017) |
| 07/27/2017 | 8163 | NOTICE by PLAINTIFF(S) *Opt Out Short Form Complaint Against NFL* (MARKOWITZ, NEAL) (Entered: 07/27/2017) |
| 07/27/2017 | 8164 | NOTICE by PLAINTIFF(S) re 8010 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Johnny N. Robinson Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 07/27/2017) |
| 07/27/2017 | 8165 | NOTICE by PLAINTIFF(S) re 7991 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Anthony Ronald Yary Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 07/27/2017) |
| 07/27/2017 | 8166 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants *(on behalf of Seau et al.)* by PLAINTIFF(S). (STRAUSS, STEVEN) (Entered: 07/27/2017) |
| 07/27/2017 | 8167 | Opt Out Plaintiff Short Form Complaint Against NFL Defendants (Robert A. Stein) by PLAINTIFF(S). (KUROWSKI, DANIEL) (Entered: 07/27/2017) |
| 07/27/2017 | 8168 | NOTICE by PLAINTIFF(S) *Opt Out Short Form Complaint* (FLEISHMAN, WENDY) (Entered: 07/27/2017) |
| 07/27/2017 | 8169 | NOTICE by PLAINTIFF(S) *Opt Out Short Form Complaint for Allen Patrick* (FLEISHMAN, WENDY) (Entered: 07/27/2017) |
| 07/27/2017 | 8170 | NOTICE by PLAINTIFF(S) *Opt Out Short Form Complaint for Derrick Steagall* (FLEISHMAN, WENDY) (Entered: 07/27/2017) |
| 07/27/2017 | 8171 | NOTICE by PLAINTIFF(S) *Opt Out Short Form Complaint Against Kansas City Chiefs Football Club, Inc.* (EMISON, J.) (Entered: 07/27/2017) |
| 07/27/2017 | 8172 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Santo and Damaris Stephens* (LOCKS, GENE) (Entered: 07/27/2017) |
| 07/27/2017 | 8173 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Demetric and Aungel Evans* (LOCKS, GENE) (Entered: 07/27/2017) |
| 07/27/2017 | 8174 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Billy Davis* (LOCKS, GENE) (Entered: 07/27/2017) |
| 07/27/2017 | 8175 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Gregory Lewis* (LOCKS, GENE) (Entered: 07/27/2017) |
| 07/27/2017 | 8176 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Joey and Kate Hollenbeck* (LOCKS, GENE) (Entered: 07/27/2017) |

| 07/27/2017 | 8177 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Sherman Cocroft* (LOCKS, GENE) (Entered: 07/27/2017) |
| 07/27/2017 | 8178 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Billy Joe and Danielle Hobert* (LOCKS, GENE) (Entered: 07/27/2017) |
| 07/27/2017 | 8179 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Mark A. McGrath* (LOCKS, GENE) (Entered: 07/27/2017) |
| 07/27/2017 | 8180 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Chad and Tiffany Fann* (LOCKS, GENE) (Entered: 07/27/2017) |
| 07/27/2017 | 8181 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - David and Audra Diaz-Infante* (LOCKS, GENE) (Entered: 07/27/2017) |
| 07/27/2017 | 8182 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Cornelius Anthony* (LOCKS, GENE) (Entered: 07/27/2017) |
| 07/27/2017 | 8183 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Gregory Bracelin* (LOCKS, GENE) (Entered: 07/27/2017) |
| 07/28/2017 | 8184 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Gregory Randall* (LOCKS, GENE) (Entered: 07/28/2017) |
| 07/28/2017 | 8185 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Jerald Moore* (LOCKS, GENE) (Entered: 07/28/2017) |
| 07/28/2017 | 8186 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Carl Miller* (LOCKS, GENE) (Entered: 07/28/2017) |
| 07/28/2017 | 8187 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Robert Hewko* (LOCKS, GENE) (Entered: 07/28/2017) |
| 07/28/2017 | 8188 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Sedrick Clark* (LOCKS, GENE) (Entered: 07/28/2017) |
| 07/28/2017 | 8189 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Roger Jackson* (LOCKS, GENE) (Entered: 07/28/2017) |
| 07/28/2017 | 8190 | ORDER - IN LIGHT OF THE FACT that PLAINTIFF SHAUN GAYLE TIMELY FILED HIS SHORT-FORM COMPLAINT ON OR BEFORE JULY 27, 2017, IT IS ORDERED THAT PLAINTIFF'S MOTION FOR AN ORDER NUNC PRO TUNC (12-5212 ECF NO. 26) IS DENIED AS MOOT.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/27/2017. 7/28/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/28/2017) |
| 07/28/2017 | 8191 | STIPULATION AND ORDER... WHEREAS, ON APRIL 22, 2015, THIS COURT ISSUED A MEMORANDUM (ECF NO. 6509) AND FINAL RODER AND JUDGMENT (ECF NO. 6510) AND ON MAY 8, 2015 AND AMENDED FINAL ORDER AND JUDGMENT (ECF NO. 6534), APPROVING THE SETTLEMENT AGREEMENT IN ITS ENTIRETY;... IT IS SO ORDERED BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUESTS SUBMITTED BY HOWARD BALLARD... ARE APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING HOWARD BALLARD, STEVE BAUMGARTNER, TYRONE CARTER, PAUL PALMER, J'VONNE PARKER AND GEORGE ROGERS.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/27/2017. 7/28/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/28/2017) |

| 07/28/2017 | 8192 | RESPONSE in Opposition re 8019 MOTION to Exclude *Motion for Exclusion from Settlement Class by Gregory Bingham and Request for Leave to File Short Form Complaint* MOTION for Leave to File filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Certificate of Service)(KARP, BRAD) (Entered: 07/28/2017) |
| 07/31/2017 | 8193 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - Maurice Hurst* (Attachments: # 1 Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 07/31/2017) |
| 07/31/2017 | 8194 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 07/31/2017) |
| 07/31/2017 | 8195 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 07/31/2017) |
| 07/31/2017 | 8196 | STIPULATION and *[Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **COPY SENT TO CHAMBERS FOR APPROVAL** (KARP, BRAD) Modified on 7/31/2017 (ems). (Entered: 07/31/2017) |
| 08/01/2017 | 8197 | NOTICE by PLAINTIFF(S) *re: Co-Lead Class Counsel's submission of proposed amicus curiae brief in CFPB and NY AG v. RD Legal Funding, No. 17-cv-00890(LAP) (S.D.N.Y.) re: interpretation of Settlement Agreement finally approved by this Court* (Attachments: # 1 Attachments)(SEEGER, CHRISTOPHER) (Entered: 08/01/2017) |
| 08/01/2017 | 8198 | NOTICE by PLAINTIFF(S) *Petition for Appointment of Representative Claimant (Kocourek)* (LUCKASEVIC, JASON) (Entered: 08/01/2017) |
| 08/01/2017 | 8199 | STIPULATION AND ORDER... WHEREAS, ON APRIL 22, 2015, THIS COURT ISSUED A MEMORANDUM (ECF NO. 6509) AND FINAL RODER AND JUDGMENT (ECF NO. 6510), AND ON MAY 8, 2015, AN AMENDED FINAL ORDER AND JUDGMENT (ECF NO. 6534), APPROVING THE SETTLEMENT AGREEMENT IN ITS ENTIRETY;...IT IS SO ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN SR. that THE REVOCATION REQUESTS SUBMITTED BY CODY DOUGLAS... IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FOR WITH EXCLUDING... APPROVED BY THE COURT: SIGNED BY HONORABLE PAUL S. DIAMOND, AS EMERGENCY JUDGE FOR THE HONORABLE ANITA B. BRODY ON 8/1/2017. 8/1/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/01/2017) |
| 08/01/2017 | 8200 | NOTICE by PLAINTIFF(S) re 7984 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Tyrone Carter Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 08/01/2017) |
| 08/01/2017 | 8201 | NOTICE by PLAINTIFF(S) re 7990 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Steven Baumgartner Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 08/01/2017) |
| 08/01/2017 | 8202 | NOTICE by PLAINTIFF(S) re 8008 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Joseph Senser Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 08/01/2017) |
| 08/01/2017 | 8203 | NOTICE by PLAINTIFF(S) re 7974 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Paul Flatley Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 08/01/2017) |

| | | |
|---|---|---|
| 08/02/2017 | 8204 | NOTICE of Appearance by JEFFREY M. OSTROW on behalf of PLAINTIFF(S) (OSTROW, JEFFREY) (Entered: 08/02/2017) |
| 08/02/2017 | 8205 | NOTICE by PLAINTIFF(S) re 7988 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Brad Edelman Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 08/02/2017) |
| 08/02/2017 | 8206 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 8/2/2017 (ems). (Entered: 08/02/2017) |
| 08/03/2017 | 8207 | NOTICE by PLAINTIFF(S) *Petition for Appointment of Representative Claimant (Tullos)* (Attachments: # 1 Proposed Order)(FRANCO, DAVID) (Entered: 08/03/2017) |
| 08/03/2017 | 8208 | STIPULATION AND ORDER... WHEREAS, ON APRIL 22, 2015, THIS COURT ISSUED A MEMORANDUM (ECF NO. 6509) AND FINAL ORDER AND JUDGMENT (ECF NO. 6510), AND ON MAY 8, 2015, AN AMENDED FINAL ORDER AND JUDGMENT (ECF NO. 6534), APPROVING THE SETTLEMENT AGREEMENT IN ITS ENTIRETY;... IT IS ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR.,... AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS.... SIGNED BY HONORABLE PAUL S. DIAMOND AS EMERGENCY JUDGE FOR THE HONORABLE ANITA B. BRODY ON 8/3/2017. 8/3/2017 ENTERED AND COPIES VIA ECF.(mo, ) Modified on 8/3/2017 (mo, ). (Entered: 08/03/2017) |
| 08/03/2017 | 8209 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 8/3/2017 (ems). (Entered: 08/03/2017) |
| 08/03/2017 | 8210 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 08/03/2017) |
| 08/03/2017 | 8211 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 08/03/2017) |
| 08/03/2017 | 8212 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 08/03/2017) |
| 08/03/2017 | 8213 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 08/03/2017) |
| 08/04/2017 | 8214 | NOTICE by PLAINTIFF(S) *of lien for attorney fees* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien (as to Wroten, Claude))(CLOUD, IAN) (Entered: 08/04/2017) |
| 08/04/2017 | 8215 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 8/4/2017 (ems). (Entered: 08/04/2017) |
| 08/04/2017 | 8216 | Objections by PLAINTIFF(S) . (KARATINOS, THEODORE) (Entered: 08/04/2017) |
| 08/04/2017 | 8217 | NOTICE by PLAINTIFF(S) re 8013 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Willie Lanier Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 08/04/2017) |

| | | |
|---|---|---|
| 08/04/2017 | 8218 | STIPULATION AND ORDER... WHEREAS ON APRIL 22, 2015, THIS COURT ISSUED A MEMORANDUM (ECF NO. 6509) AND FINAL ORDER AND JUDGEMENT (ECF NO. 6510), AND ON MAY 8,2015, AN AMENDED FINAL ORDER AND JUDGMENT (ECF NO. 6534) APPROVING THE SETTLEMENT IN ITS ENTIRETY;...IT IS SO ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR.,... AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING ELVIN ETHEA AND GREGORY LARSON.. SIGNED BY HONORABLE PAUL S. DIAMOND AS EMERGENCY JUDGE FOR THE HONORABLE ANITA B. BRODY ON 8/4/2017. 8/4/2017 ENTERED AND COPIES VIA ECF..(mo, ) (Entered: 08/04/2017) |
| 08/04/2017 | 8219 | NOTICE by PLAINTIFF(S) re 8014 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Doug Kingsriter Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 08/04/2017) |
| 08/04/2017 | 8220 | NOTICE by PLAINTIFF(S) re 8003 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Richard Bielski Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 08/04/2017) |
| 08/04/2017 | 8221 | NOTICE by PLAINTIFF(S) re 7976 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Elvin Bethea Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 08/04/2017) |
| 08/04/2017 | 8222 | NOTICE by PLAINTIFF(S) re 7994 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Gregory Larson Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 08/04/2017) |
| 08/07/2017 | 8223 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 8/8/2017 (ems). (Entered: 08/07/2017) |
| 08/07/2017 | 8224 | STIPULATION AND ORDER... WHEREAS, ON APRIL 22, 2015, THIS COURT ISSUED A MEMORANDUM (ECF NO. 6509) AND FINAL ORDER AND JUDGMENT (ECF NO. 6510) AND ON MAY 8, 2015, AND AMENDED FINAL ORDER AND JUDGMENT (ECF NO. 6534), APPROVING THE SETTLEMENT AGREEMENT IN ITS ENTIRETY... IT IS ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUESTS SUBMITTED BY BILLY RAY BARNES, ALGE CRUMPLER,... ARE APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH.... SIGNED BY HONORABLE ANITA B. BRODY ON 8/7/2017. 8/7/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/07/2017) |
| 08/07/2017 | 8225 | NOTICE by PLAINTIFF(S) *Cassandra Bailey of Petition for Appointment of Representative Claimant* (Attachments: # 1 Text of Proposed Order)(LUBEL, LANCE) (Entered: 08/07/2017) |
| 08/07/2017 | 8226 | NOTICE by PLAINTIFF(S) *Reatha J. Brown of Petition for Appointment of Representative Claimant* (Attachments: # 1 Text of Proposed Order)(LUBEL, LANCE) (Entered: 08/07/2017) |
| 08/07/2017 | 8227 | NOTICE by PLAINTIFF(S) *Andreia Crawford of Petition for Appointment of Representative Claimant* (Attachments: # 1 Text of Proposed Order)(LUBEL, LANCE) (Entered: 08/07/2017) |

| 08/07/2017 | 8228 | NOTICE by PLAINTIFF(S) *Patsy Lewis of Petition for Appointment of Representative Claimant* (Attachments: # 1 Text of Proposed Order)(LUBEL, LANCE) (Entered: 08/07/2017) |
| 08/07/2017 | 8229 | NOTICE by PLAINTIFF(S) re 7997 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Billy Ray Barnes Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 08/07/2017) |
| 08/07/2017 | 8230 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 8/8/2017 (ems). (Entered: 08/07/2017) |
| 08/08/2017 | 8231 | Objections by PLAINTIFF(S) . (KARATINOS, THEODORE) (Entered: 08/08/2017) |
| 08/08/2017 | 8232 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 8/8/2017 (ems). (Entered: 08/08/2017) |
| 08/08/2017 | 8233 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Tony Smith* (LOCKS, GENE) (Entered: 08/08/2017) |
| 08/08/2017 | 8234 | MOTION for Discovery *Motion to Conduct Limited Discovery* filed by PLAINTIFF(S). Memorandum. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(OSTROW, JEFFREY) Modified on 8/8/2017 (ems). (Entered: 08/08/2017) |
| 08/08/2017 | 8235 | STIPULATION AND ORDER... WHEREAS, ON APRIL 22, 2015, THIS COURT ISSUED A MEMORANDUM (ECF NO. 6509) AND FINAL ORDER AND JUDGMENT (ECF NO. 6510), AND ON MAY 8, 2015, AN AMENDED FINAL ORDER AND JUDGMENT (ECF NO. 6534), APPROVING THE SETTLEMENT AGREEMENT IN ITS ENTIRETY;... IT IS ORDERED,BASED ON THE ABOVE STIPULATION DECLARATION OF ORRAN L. BROWN, SR. that... AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING MOHAMED MASSAQUOI.. SIGNED BY HONORABLE NITZA I. QUINONES ALEJANDRO, AS EMERGENCY JUDGE FOR THE HONORABLE ANITA B. BRODY ON 8/8/2017. 8/8/2017 ENTERED AND COPIES VIA ECF.(mo, ) (mo, ). (Entered: 08/08/2017) |
| 08/08/2017 | 8236 | STIPULATION AND ORDER...WHEREAS, ON APRIL 22, 2015, THIS COURT ISSUED A MEMORANDUM (ECF NO. 6509) AND FINAL ORDER AND JUDGMENT (ECF NO. 6510), AND ON MAY 8, 2015, AN AMENDED FINAL ORDER AND JUDGMENT (ECF NO. 6534), APPROVING THE SETTLEMENT AGREEMENT IN ITS ENTIRETY;... IT IS ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR. that... AND THE CLAIMS ADMINISTRATOR IS DIRECGED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING ROBERT BROOKS, IV, CHARLES COMMISKEY, CALVIN HILL AND JEROME MCDOUGLE.. SIGNED BY HONORABLE NITZA I. QUINONES ALEJANDRO, AS EMERGENCY JUDGE FOR THE HONORABLE ANITA B. BRODY ON 8/8/2017. 8/8/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/08/2017) |
| 08/08/2017 | 8237 | STIPULATION AND ORDER... WHEREAS, ON APRIL 22, 2015, THIS COURT ISSUED A MEMORANDUM (ECF NO. 6509) AND FINAL ORDER AND JUDGMENT (ECF NO. 6510), AND ON MAY 8, 2015, AN AMENDED FINAL ORDER AND JUDGMENT (ECF NO. 6534), APPROVING THE SETTLEMENT |

| | | |
|---|---|---|
| | | AGREEMENT IN ITS ENTIRETY;... IT IS ORDERED, BASED ON THE ABOVE STIPULATION AND TEH ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUESTS SUBMITTED BY... AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING ROBERT ROYAL, JR. AND SEAN BERTON.. SIGNED BY HONORABLE NITZ I. QUINONES ALEJANDRO, AS EMERGENCY JUDGE FOR THE HONORABLE ANITA B. BRODY ON 8/8/17. 8/8/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/08/2017) |
| 08/09/2017 | 8238 | NOTICE of Appearance by NORMAN F. HODGINS, III on behalf of PLAINTIFF(S) with Certificate of Service(HODGINS, NORMAN) (Entered: 08/09/2017) |
| 08/09/2017 | 8239 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Eugene Sykes* (Attachments: # 1 Exhibit)(HODGINS, NORMAN) (Entered: 08/09/2017) |
| 08/09/2017 | 8240 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Alden and Linda Roche* (Attachments: # 1 Exhibit)(HODGINS, NORMAN) (Entered: 08/09/2017) |
| 08/09/2017 | 8241 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Robert Sanders* (Attachments: # 1 Exhibit)(HODGINS, NORMAN) (Entered: 08/09/2017) |
| 08/09/2017 | 8242 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Ronnie and LaToya Heard* (Attachments: # 1 Exhibit)(HODGINS, NORMAN) (Entered: 08/09/2017) |
| 08/09/2017 | 8243 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Christopher Thompson* (Attachments: # 1 Exhibit)(HODGINS, NORMAN) (Entered: 08/09/2017) |
| 08/09/2017 | 8244 | NOTICE by PLAINTIFF(S) re 8207 Notice (Other) *Notice of Withdrawal of Filing* (FRANCO, DAVID) (Entered: 08/09/2017) |
| 08/09/2017 | 8245 | RESPONSE in Opposition re 8234 MOTION for Discovery *Motion to Conduct Limited Discovery* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 08/09/2017) |
| 08/09/2017 | 8246 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Filing* (LUCKASEVIC, JASON) (Entered: 08/09/2017) |
| 08/09/2017 | 8247 | NOTICE by PLAINTIFF(S) *Willie Molden* (Attachments: # 1 Exhibit 1) (HENDERSON, SAMUEL) (Entered: 08/09/2017) |
| 08/10/2017 | 8248 | REPLY to Response to Motion re 8234 MOTION for Discovery *Motion to Conduct Limited Discovery* filed by PLAINTIFF(S). (OSTROW, JEFFREY) (Entered: 08/10/2017) |
| 08/11/2017 | 8249 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 8/11/2017 (ems). (Entered: 08/11/2017) |
| 08/11/2017 | 8250 | NOTICE by PLAINTIFF(S) re 8002 Praecipe/Request *Notice of Withdrawal of Opt Out Plaintiff Charles Commiskey Short Form Complaint Against NFL Defendants* (KUROWSKI, DANIEL) (Entered: 08/11/2017) |
| 08/11/2017 | 8251 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (TURNBULL, SANGA) (Entered: 08/11/2017) |
| 08/11/2017 | 8252 | NOTICE by PLAINTIFF(S) *NOTICE OF ATTORNEY'S LIENS* (TURNBULL, SANGA) (Entered: 08/11/2017) |

**-519-**

| 08/14/2017 | 8253 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 8/16/2017 (ems). (Entered: 08/14/2017) |
|---|---|---|
| 08/14/2017 | 8254 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Anthony Smith* (LOCKS, GENE) (Entered: 08/14/2017) |
| 08/14/2017 | 8255 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Ken and Chante Walter* (LOCKS, GENE) (Entered: 08/14/2017) |
| 08/14/2017 | 8256 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Jeffery and Leslie Fuller* (LOCKS, GENE) Modified on 8/1/2018 (tjd). Modified on 8/1/2018 (tjd). Modified on 8/1/2018 (tjd). (Entered: 08/14/2017) |
| 08/14/2017 | 8257 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Chad and Tina Eaton* (LOCKS, GENE) (Entered: 08/14/2017) |
| 08/14/2017 | 8258 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Derrick Burroughs* (LOCKS, GENE) (Entered: 08/14/2017) |
| 08/15/2017 | 8259 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Matthew Dorsett* (Attachments: # 1 Exhibit)(HODGINS, NORMAN) (Entered: 08/15/2017) |
| 08/15/2017 | 8260 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Corey Dowden* (Attachments: # 1 Exhibit)(HODGINS, NORMAN) (Entered: 08/15/2017) |
| 08/15/2017 | 8261 | NOTICE of Appearance by DAVID J. CAMPBELL on behalf of PLAINTIFF(S) with Certificate of Service(CAMPBELL, DAVID) (Entered: 08/15/2017) |
| 08/15/2017 | 8262 | NOTICE of Appearance by JUSTIN BROOKS DEMERATH on behalf of PLAINTIFF(S) with Certificate of Service(DEMERATH, JUSTIN) (Entered: 08/15/2017) |
| 08/15/2017 | 8263 | MOTION to Modify *the Amended Final Order and Judgment [ECF 6534]* filed by PLAINTIFF(S).Memorandum, Certificate of Service. (Attachments: # 1 Exhibit Proposed Order, # 2 Exhibit Memorandum of Law)(DEMERATH, JUSTIN) Modified on 8/16/2017 (ems). (Entered: 08/15/2017) |
| 08/15/2017 | 8264 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Kevin McLeod* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 08/15/2017) |
| 08/15/2017 | 8265 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Eric Martin* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 08/15/2017) |
| 08/15/2017 | 8266 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Corey Mayfield* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 08/15/2017) |
| 08/15/2017 | 8267 | MOTION for Relief *Motion to Determine Proper Administration of Claims under the Settlement Agreement and Incorporated Memorandum of Law* filed by PLAINTIFF(S). Memorandum. (Attachments: # 1 Exhibit Notice of Claim Package Deficiency)(ST. JACQUES, MICHAEL) Modified on 8/16/2017 (ems). (Entered: 08/15/2017) |
| 08/16/2017 | 8268 | STIPULATION AND ORDER that THIS STIPULATION AND AGREEMENT, DATED 8/11/2017, IS MADE AND ENTERED INTO BY AND AMONG THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC (THE "NFL PARTIES"), AND CLASS COUNSEL (COLLECTIVELY, THE "PARTIES")...IT IS SO ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUEST SUBMITTED BY THOMAS CLAPP, II IS APPROVED |

| | | AND TEH CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OTP OUTS FORTHWITH EXCLUDING THOMAS CLAPP, II. APPROVED BY THE COURT:. SIGNED BY HONORABLE JEFFREY L. SCHMEHL, AS EMERGENCY JUDGE FOR THE HONORABLE ANITA B. BRODY ON 8/16/2017. 8/16/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/16/2017) |
|---|---|---|
| 08/16/2017 | 8269 | STIPULATION AND ORDER that THIS STIPULATION AND AGREEMENT, DATED AUGUST 14, 2017, IS MADE AND ENTERED INTO BY AND AMONG THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC (THE "NFL PARTIES"), AND CLASS COUNSEL (COLLECTIVELY,THE "PARTIES")...IT IS ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUEST SUBMITTED BY DULYMUS MCALLISTER IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING DULYMUS MC ALLISTER.... SIGNED BY HONORABLE JFFFREY L. SCHMEHL, AS EMERGENCY JUDGE FOR THE HONORABLE ANITA B. BRODY ON 8/16/2017. 8/16/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/16/2017) |
| 08/16/2017 | 8270 | MOTION to Withdraw as Attorney *for Robert Massey* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 8/17/2017 (ems). (Entered: 08/16/2017) |
| 08/16/2017 | 8271 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien Regarding Robert Massey* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 08/16/2017) |
| 08/16/2017 | 8272 | MOTION to Withdraw as Attorney *for Calvin Sweeney and Zivia Sweeney* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 8/17/2017 (ems). (Entered: 08/16/2017) |
| 08/16/2017 | 8273 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien Regarding Calvin Sweeney and Zivia Sweeney* (Attachments: # 1 Petition to Establish Attorney's Lien) (ZIMMERMAN, CHARLES) (Entered: 08/16/2017) |
| 08/16/2017 | 8274 | MOTION to Withdraw as Attorney *for Levar Fisher and Jacinta Fisher* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 8/17/2017 (ems). (Entered: 08/16/2017) |
| 08/16/2017 | 8275 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien Regarding Levar Fisher and Jacinta Fisher* (Attachments: # 1 Petition to Establish Attorney's Lien) (ZIMMERMAN, CHARLES) (Entered: 08/16/2017) |
| 08/16/2017 | 8276 | MOTION to Withdraw as Attorney *for Marquette Smith and Sherri Smith* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 8/17/2017 (ems). (Entered: 08/16/2017) |
| 08/16/2017 | 8277 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien Regarding Marquette Smith and Sherri Smith* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 08/16/2017) |
| 08/16/2017 | 8278 | MOTION to Withdraw as Attorney *for Ralph Kurek and Connie Kurek* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 8/17/2017 (ems). (Entered: 08/16/2017) |
| 08/16/2017 | 8279 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien Regarding Ralph Kurek and Connie Kurek* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 08/16/2017) |

| 08/16/2017 | 8280 | MOTION to Withdraw as Attorney *for Richard Cunningham and Carole Cunningham* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 8/17/2017 (ems). (Entered: 08/16/2017) |
| --- | --- | --- |
| 08/16/2017 | 8281 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien Regarding Richard Cunningham and Carole Cunningham* (Attachments: # 1 Petition to Establish Attorney's Lien) (ZIMMERMAN, CHARLES) (Entered: 08/16/2017) |
| 08/17/2017 | 8282 | Response in Opposition *to Motion for Extension of Time to File A Claim For Benefits Under The Class Action Settlement Agreement As of June 25, 2014 [Filed in 14-cv-29]* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Certificate of Service) (KARP, BRAD) (Entered: 08/17/2017) |
| 08/17/2017 | 8283 | NOTICE by PLAINTIFF(S). *of PETITION FOR ATTORNEY'S FEE LIEN* (Attachments: # 1 Exhibit)(GRESHAM, RONALD) Modified on 8/17/2017 (ems). (Entered: 08/17/2017) |
| 08/17/2017 | 8284 | NOTICE by PLAINTIFF(S). *of PETITION FOR ATTORNEY'S FEE LIEN* (Attachments: # 1 Exhibit)(GRESHAM, RONALD) Modified on 8/17/2017 (ems). (Entered: 08/17/2017) |
| 08/17/2017 | 8285 | NOTICE of Appearance by LESLIE MACLEAN on behalf of LORRAINE DIXON, RICKEY DIXON with Certificate of Service(MACLEAN, LESLIE) (Entered: 08/17/2017) |
| 08/17/2017 | 8286 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 8/17/2017 (ems). (Entered: 08/17/2017) |
| 08/17/2017 | 8287 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Darrion Scott and DiMiya Scott* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 08/17/2017) |
| 08/17/2017 | 8288 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 08/17/2017) |
| 08/17/2017 | 8289 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to William Dozier III and Mindy Dozier* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 08/17/2017) |
| 08/17/2017 | 8290 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 08/17/2017) |
| 08/17/2017 | 8291 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Donald Lee Evans and Debra Evans* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 08/17/2017) |
| 08/17/2017 | 8292 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 08/17/2017) |
| 08/17/2017 | 8293 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Alpette Richardson* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 08/17/2017) |
| 08/17/2017 | 8294 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 08/17/2017) |

| 08/18/2017 | 8295 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Walt Harris* (LOCKS, GENE) (Entered: 08/18/2017) |
| 08/18/2017 | 8296 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Char-Ron and Latrell Dorsey* (LOCKS, GENE) (Entered: 08/18/2017) |
| 08/18/2017 | 8297 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Elgin Davis* (LOCKS, GENE) (Entered: 08/18/2017) |
| 08/18/2017 | 8298 | NOTICE by PLAINTIFF(S) *of Attorneys Lien - Renaldo and Latanya Wynn* (LOCKS, GENE) (Entered: 08/18/2017) |
| 08/21/2017 | 8299 | NOTICE by PLAINTIFF(S) *For Attorney's Lien* (Attachments: # 1 Exhibit 1) (HENDERSON, SAMUEL) (Entered: 08/21/2017) |
| 08/21/2017 | 8300 | NOTICE by PLAINTIFF(S) *For Attorney's Lien* (Attachments: # 1 Exhibit 1) (HENDERSON, SAMUEL) (Entered: 08/21/2017) |
| 08/21/2017 | 8301 | MOTION to Compel *RD Legal Funding, LLC, RD Legal Finance, LLC, RD Legal Funding Partners, LP, And Roni Dersovitz To Respond to the Discovery Requests Propounded in Accordance with the Court's Order of July 19, 2017* filed by PLAINTIFF(S).Memorandum, Declaration, Certificate of Service. (Attachments: # 1 Memorandum In Support of Motion to Compel, # 2 Declaration of Christopher A. Seeger, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G-1 Redacted, # 10 Exhibit G-2 Redacted, # 11 Text of Proposed Order Proposed Order)(SEEGER, CHRISTOPHER) Modified on 8/22/2017 (ems). (Entered: 08/21/2017) |
| 08/22/2017 | 8302 | Joint MOTION for Extension of Time to File Response/Reply as to 8267 MOTION for Relief *Motion to Determine Proper Administration of Claims under the Settlement Agreement and Incorporated Memorandum of Law* filed by PLAINTIFF(S). Certificate of Service. (Attachments: # 1 Text of Proposed Order Proposed Order)(SEEGER, CHRISTOPHER) Modified on 8/22/2017 (ems). (Entered: 08/22/2017) |
| 08/22/2017 | 8303 | STIPULATION *and [Proposed] Order extending deadline to respond to Motion to Modify Amended Final Order and Judgment (ECF No. 6263)* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 8/22/2017 (ems). (Entered: 08/22/2017) |
| 08/22/2017 | 8304 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 8/22/2017 (ems). (Entered: 08/22/2017) |
| 08/22/2017 | 8305 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (re: Edward Thomas)* (GIDDENS, JOHN) (Entered: 08/22/2017) |
| 08/22/2017 | 8306 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 08/22/2017) |
| 08/23/2017 | 8307 | MOTION for Order *Regarding Non-Medical Liens in the NFL Concussion Settlement Program* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Text of Proposed Order Proposed Order)(SEEGER, CHRISTOPHER) Modified on 8/23/2017 (ems). (Entered: 08/23/2017) |
| 08/23/2017 | 8308 | STIPULATION AND ORDER... WHEREAS, ON APRIL 22, 2015, THIS COURT ISSUED A MEMORANDUM (ECF NO. 6509) AND FINAL ORDER AND JUDGMENT (ECF NO. 6510), AND ON MAY 8, 2015, AN AMENDED FINAL ORDER AND JUDGMENT (ECF NO. 6534), APPROVING THE SETTLEMENT AGREEMENT IN ITS ENTIRETY;... IT IS SO ORDERED, BASED ON THE |

-523-

| | | |
|---|---|---|
| | | ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUEST SUBMITTED BY JAYICE PEARSON IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING JAYICE PEARSON.. SIGNED BY CHIEF JUDGE LAWRENCE F. STENGEL FOR THE HONORABLE ANITA B. BRODY ON 8/23/2017. 8/23/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/23/2017) |
| 08/23/2017 | 8309 | RESPONSE in Opposition re 8302 Joint MOTION for Extension of Time to File Response/Reply as to 8267 MOTION for Relief *Motion to Determine Proper Administration of Claims under the Settlement Agreement and Incorporated Memorandum of Law* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit Declarations) (ST. JACQUES, MICHAEL) (Entered: 08/23/2017) |
| 08/23/2017 | 8310 | ORDER - PURSUANT TO FEDERAL RULE OF EVIDENCE 706, IT IS ORDERED that:. ON OR BEFORE AUGUST 31, 2017, ANY INTERESTED PARTY MUST SHOW CAUSE WHY THE COURT SHOULD NOT APPOINT AN EXPERT WITNESS ON ATTORNEYS' FEES;. ON OR BEFORE AUGUST 31, 2017, ANY INTERESTED PARTY MUST SHOW CAUSE WHY, HAVING OBTAINED HIS CONSENT TO SERVE AS AN EXPERT WITNESS IN THIS MATTER, THE COURT SHOULD NOT APPOINT PROFESSOR WILLIAM B. RUBENSTEIN (CV ATTACHED) TO SERVE AS AN EXPERT WITNESS ON ATTORNEYS' FEES.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/23/2017. 8/23/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/23/2017) |
| 08/24/2017 | 8311 | PETITION TO WITHDRAW NOTICE OF ATTORNEY'S LIEN AND ACCOMPANYING PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 8/24/2017 (ems). (Entered: 08/24/2017) |
| 08/24/2017 | 8312 | PETITION TO WITHDRAW NOTICE OF ATTORNEY'S LIEN AND ACCOMPANYING PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 8/24/2017 (ems). (Entered: 08/24/2017) |
| 08/24/2017 | 8313 | PETITION TO WITHDRAW NOTICE OF ATTORNEY'S LIEN AND ACCOMPANYING PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 8/24/2017 (ems). (Entered: 08/24/2017) |
| 08/24/2017 | 8314 | PETITION TO WITHDRAW NOTICE OF ATTORNEY'S LIEN AND ACCOMPANYING PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 8/24/2017 (ems). (Entered: 08/24/2017) |
| 08/24/2017 | 8315 | PETITION TO WITHDRAW NOTICE OF ATTORNEY'S LIEN AND ACCOMPANYING PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 8/24/2017 (ems). (Entered: 08/24/2017) |
| 08/24/2017 | 8316 | PETITION TO WITHDRAW NOTICE OF ATTORNEY'S LIEN AND ACCOMPANYING PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 8/24/2017 (ems). (Entered: 08/24/2017) |
| 08/24/2017 | 8317 | PETITION TO WITHDRAW NOTICE OF ATTORNEY'S LIEN AND ACCOMPANYING PETITION TO ESTABLISH ATTORNEY'S LIEN filed by |

| | | PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 8/24/2017 (ems). (Entered: 08/24/2017) |
|---|---|---|
| 08/24/2017 | 8318 | PETITION TO WITHDRAW NOTICE OF ATTORNEY'S LIEN AND ACCOMPANYING PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 8/24/2017 (ems). (Entered: 08/24/2017) |
| 08/24/2017 | 8319 | MOTION to Compel *(1) CASE STRATEGIES GROUP (F/K/A NFL CASE CONSULTING, LLC), IT STRATEGIES GROUP, INC., CRAIG SIENEMA, AND JAMES MCCABE; AND (2) LIBERTY SETTLEMENT SOLUTIONS, LLC, LIBERTY CONTINGENT RECEIVABLES, LLC, LIBERTY SETTLEMENT FUNDING, JMMHCS HOLDINGS, LLC, MARC HERMES, CRAIG SIENEMA, AND JAMES MCCABE TO RESPOND TO THE DISCOVERY REQUESTS PROPOUNDED IN ACCORDANCE WITH THE COURT'S ORDER OF JULY 19, 2017* filed by PLAINTIFF(S).Memorandum, Declaration, Certificate of Service.Motions referred to DAVID R. STRAWBRIDGE. (Attachments: # 1 Memorandum In Support of Co-Lead Class Counsel's Motion to Compel, # 2 Declaration of Christopher A. Seeger, # 3 Text of Proposed Order Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 08/24/2017) |
| 08/24/2017 | 8320 | REPLY to Response to Motion re 8267 MOTION for Relief *Motion to Determine Proper Administration of Claims under the Settlement Agreement and Incorporated Memorandum of Law* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 08/24/2017) |
| 08/24/2017 | 8321 | APPLICATION/PETITION *FOR APPOINTMENT OF REPRESENTATIVE CLAIMANT* by PLAINTIFF(S). (Attachments: # 1 Exhibit "A", # 2 Text of Proposed Order)(DEVANON, NICOLE) (Entered: 08/24/2017) |
| 08/25/2017 | 8322 | ORDER that RD LEGAL FUNDING LLC, RD LEGAL FINANCE, LLC RD LEGAL FUNDING PARTNERS, LP AND RONI DERSOVITZ (COLLECTIVELY "RD LEGAL") MUST FILE ANY RESPONSE TO CO-LEAD CLASS COUNSEL'S MOTION TO COMPEL (ECF NO. 8301) ON OR BEFORE AUGUST 30, 2017. CO-LEAD CLASS COUNSEL IS ORDERED TO SERVE A COPY OF THIS ORDER ON RD LEGAL VIA EMAIL AND CERTIFIED MAIL OR DELIVERY.. SIGNED BY HONORABLE JOSEPH F. LEESON, JR, AS EMERGENCY JUDGE FOR THE HONORABLE ANITA B. BRODY ON 8/25/2017. 8/25/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/25/2017) |
| 08/25/2017 | 8323 | ORDER that CASE STRATEGIES GROUP... MUST FILE ANY RESPONSES TO CO-LEAD CLASS COUNSEL'S MOTION TO COMPEL (ECF NO.8319) ON OR BEFORE AUGUST 30, 2017. CO-LEAD CLASS COUNSEL IS ORDERED TO SERVE A COPY OF THIS ORDER ON THE CSG ENTITIES AND THE LIBERTY ENTITIES VIA EMAIL AND CERTIFIED MAIL OR DELIVERY.. SIGNED BY HONORABLE JOSEPH F. LEESON, JR, AS EMERGENCY JUDGE FOR THE HONORABLE ANITA B. BRODY ON 8/25/2017. 8/25/2017 ENTERED AND COPIES VIA ECF.(mo, ) Modified on 8/25/2017 (mo, ). (Entered: 08/25/2017) |
| 08/25/2017 | 8324 | ORDER that THE JOINT MOTION (ECF NO. 8302) OF THE NATIONAL FOOTBALL LEAGUE,... FOR AN EXTENSION OF TIME TO RESPOND IS GRANTED. THE NATIONAL FOOTBALL LEAGUE,... MAY RESPOND TO THE MOTION TO DETERMINE PROPER ADMINISTRATION OF CLAIMS UNDER THE SETTLEMENT AGREEMENT (ECF NO. 8267) ON OR BEFORE SEPTEMBER 28, 2017.. SIGNED BY HONORABLE JOSEPH F. LEESON, JR. AS EMERGENCY JUDGE FOR THE HONORABLE ANITA B. BRODY ON |

<div align="center">-525-</div>

|  |  | 8/25/2017.8/25/2017 ENTERED AND COPIES VIA ECF.(mo, ) Modified on 8/25/2017 (mo, ). (Entered: 08/25/2017) |
|---|---|---|
| 08/25/2017 | 8325 | STIPULATION AND ORDER... WHEREAS, THE PARTIES AGREED TO EXTEND THE DEADLINE FOR THE NFL PARTIES AND CO-LEAD CLASS COUNSEL TO RESPOND TO THE MOTION FROM AUGUST 29, 2017 TO SEPTEMBER 28, 2017 BECAUSE OF A SUBSTANTIAL NUMBER OF OTHER UPCOMING DEADLINES AND ACTIVITIES IN THESE MDL PROCEEDINGS; AND NOW THIS 22ND DAY OF AUGUST, 2017, IT IS HEREBY STIPULATED AND AGREED BY THE PARTIES that THE NFL PARTIES AND CO-LEAD CLASS COUNSEL MAY RESPOND TO THE MOTION ON OR BEFORE SEPTEMBER 25, 2017.. SIGNED BY HONORABLE JOSEPH F. LEESON, JR, AS EMERGENCY JUDGE FOR THE HONORABLE ANITA B. BRODY ON 8/25/2017. 8/25/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/25/2017) |
| 08/25/2017 |  | Set/Reset Deadlines as to 8263 MOTION to Modify *the Amended Final Order and Judgment [ECF 6534]*. RESPONSES DUE BY 9/28/2017. (mo, ) (Entered: 08/25/2017) |
| 08/28/2017 | 8326 | NOTICE by PLAINTIFF(S) *Notice of Atty Lien - Dennis Johnson* (Attachments: # 1 Exhibit Petition to Establish Atty Lien)(DUGAN, JAMES) (Entered: 08/28/2017) |
| 08/28/2017 | 8327 | Response to Order to Show Cause and Request for Clarification and Extension of Time *filed by Co-Class Counsel The Locks Law Firm* by PLAINTIFF(S). (LANGFITT, DAVID) (Entered: 08/28/2017) |
| 08/28/2017 | 8328 | ORDER that A TELEPHONE CONFERENCE WILL BE HELD ON WEDNESDAY, AUGUST 30, 2017 AT 10:00 A.M. REGARDING THE FOLLOWING MOTIONS:... CO-LEAD CLASS COUNSEL IS ORDERED TO SERVE A COPY OF THIS ORDER ON RD LEGAL, CSG ENTITIES, AND LIBERTY ENTITES VIA EMAIL AND CERTIFIED MAIL OR DELIVERY. CO-LEAD CLASS COUNSEL IS FURTHER ORDERED TO COORDINATE THE CONFERENCE AND PLACE A SINGLE CALL TO CHAMBERS.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/28/2017. 8/28/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/28/2017) |
| 08/29/2017 | 8329 | Response /Request by The Locks Law Firm for an Extension of Time to Respond to Motion for Proper Administration of Claims by PLAINTIFF(S). (LANGFITT, DAVID) (Entered: 08/29/2017) |
| 08/29/2017 | 8330 | NOTICE by PLAINTIFF(S) re 7151 Application/Petition,,,,,,,,, *RESPECTFUL REQUEST FOR THE COURT TO APPOINT THE MAGISTRATE JUDGE TO DETERMINE PROPER ALLOCATION OF COMMON BENEFIT FUND* (DEVANON, NICOLE) (Entered: 08/29/2017) |
| 08/29/2017 | 8331 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Bernard Eric Green* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 08/29/2017) |
| 08/29/2017 | 8332 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 08/29/2017) |
| 08/29/2017 | 8333 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by SIMONA FARRISE.. (FARRISE, SIMONA) Modified on 8/30/2017 (ems). (Entered: 08/29/2017) |
| 08/30/2017 | 8334 | NOTICE of Appearance by ELLEN C. BROTMAN on behalf of RONI DERSOVITZ with Certificate of Service(BROTMAN, ELLEN) (Entered: 08/30/2017) |

| 08/30/2017 | 8335 | RESPONSE in Opposition re 8301 MOTION to Compel *RD Legal Funding, LLC, RD Legal Finance, LLC, RD Legal Funding Partners, LP, And Roni Dersovitz To Respond to the Discovery Requests Propounded in Accordance with the Court's Order of July 19, 2017* filed by RONI DERSOVITZ. (Attachments: # 1 Declaration Declaration of Michael Roth, Esq., # 2 Exhibit Exhibit 1)(BROTMAN, ELLEN) (Entered: 08/30/2017) |
|---|---|---|
| 08/30/2017 | 8336 | NOTICE of Appearance by ELLEN C. BROTMAN on behalf of RD LEGAL FINANCE, LLC with Certificate of Service(BROTMAN, ELLEN) (Entered: 08/30/2017) |
| 08/30/2017 | 8337 | RESPONSE in Opposition re 8301 MOTION to Compel *RD Legal Funding, LLC, RD Legal Finance, LLC, RD Legal Funding Partners, LP, And Roni Dersovitz To Respond to the Discovery Requests Propounded in Accordance with the Court's Order of July 19, 2017* filed by RD LEGAL FINANCE, LLC. (Attachments: # 1 Declaration of Michael Roth, Esq., # 2 Exhibit 1)(BROTMAN, ELLEN) (Entered: 08/30/2017) |
| 08/30/2017 | 8338 | NOTICE of Appearance by ELLEN C. BROTMAN on behalf of RD LEGAL FUNDING PARTNERS, LP with Certificate of Service(BROTMAN, ELLEN) (Entered: 08/30/2017) |
| 08/30/2017 | 8339 | RESPONSE in Opposition re 8301 MOTION to Compel *RD Legal Funding, LLC, RD Legal Finance, LLC, RD Legal Funding Partners, LP, And Roni Dersovitz To Respond to the Discovery Requests Propounded in Accordance with the Court's Order of July 19, 2017* filed by RD LEGAL FUNDING PARTNERS, LP. (Attachments: # 1 Declaration of Michael Roth, Esq., # 2 Exhibit 1)(BROTMAN, ELLEN) (Entered: 08/30/2017) |
| 08/30/2017 | 8340 | NOTICE of Appearance by ELLEN C. BROTMAN on behalf of RD LEGAL FUNDING, LLC with Certificate of Service(BROTMAN, ELLEN) (Entered: 08/30/2017) |
| 08/30/2017 | 8341 | RESPONSE in Opposition re 8301 MOTION to Compel *RD Legal Funding, LLC, RD Legal Finance, LLC, RD Legal Funding Partners, LP, And Roni Dersovitz To Respond to the Discovery Requests Propounded in Accordance with the Court's Order of July 19, 2017* filed by RD LEGAL FUNDING, LLC. (Attachments: # 1 Declaration of Michael Roth, Esq., # 2 Exhibit 1)(BROTMAN, ELLEN) (Entered: 08/30/2017) |
| 08/30/2017 | 8342 | APPLICATION for Pro Hac Vice *Admission for Michael D. Roth Esquire* filed by RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, RD LEGAL FUNDING, LLC.Certificate of Service. (BROTMAN, ELLEN) Modified on 8/31/2017 (ems). (Entered: 08/30/2017) |
| 08/30/2017 | 8343 | APPLICATION for Pro Hac Vice *Admission of Jeffrey Hammer Esq.* filed by RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, RD LEGAL FUNDING, LLC.Certificate of Service.(BROTMAN, ELLEN) Modified on 8/31/2017 (ems). (Entered: 08/30/2017) |
| 08/30/2017 | 8344 | APPLICATION for Pro Hac Vice *Admission of David Willingham, Esq.* filed by RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, RD LEGAL FUNDING, LLC.Certificate of Service.(BROTMAN, ELLEN) Modified on 8/31/2017 (ems). (Entered: 08/30/2017) |
| 08/30/2017 | 8345 | APPLICATION for Pro Hac Vice *Admission of Michael Roth, Esq.* filed by RONI DERSOVITZ.Certificate of Service. (BROTMAN, ELLEN) Modified on 8/31/2017 (ems). (Entered: 08/30/2017) |

| 08/30/2017 | 8346 | APPLICATION for Pro Hac Vice *Admission of Jeffrey Hammer, Esq.* filed by RONI DERSOVITZ.Certificate of Service. (BROTMAN, ELLEN) Modified on 8/31/2017 (ems). (Entered: 08/30/2017) |
|---|---|---|
| 08/30/2017 | 8347 | APPLICATION for Pro Hac Vice *Admission of David K. Willingham, Esq.* filed by RONI DERSOVITZ.Certificate of Service. (BROTMAN, ELLEN) Modified on 8/31/2017 (ems). (Entered: 08/30/2017) |
| 08/30/2017 | 8348 | RESPONSE in Opposition re 8319 MOTION to Compel *(1) CASE STRATEGIES GROUP (F/K/A NFL CASE CONSULTING, LLC), IT STRATEGIES GROUP, INC., CRAIG SIENEMA, AND JAMES MCCABE; AND (2) LIBERTY SETTLEMENT SOLUTIONS, LLC, LIBERTY CONTINGENT RECEIVABLES, LLC, LIBERTY SETTLEMENT FUNDING, JMM filed by NFL CASE CONSULTING, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(SCHEFF, RICHARD) (Entered: 08/30/2017)* |
| 08/31/2017 | 8349 | NOTICE OF ATTORNEY'S LIEN by JAMES R. DUGAN, II on behalf of PLAINTIFF(S) with Certificate of Service (Attachments: # 1 Exhibit Petition to Establish Atty Lien)(DUGAN, JAMES) Modified on 9/1/2017 (ems). (Entered: 08/31/2017) |
| 08/31/2017 | 8350 | Objections by PLAINTIFF(S) re 8310 Order,, *The Alexander Objector's Response to the Court's Show Cause Order of August 23, 2017 Regarding Appointment of a Court Expert on Attorneys' Fees.* (LUBEL, LANCE) (Entered: 08/31/2017) |
| 09/05/2017 | 8351 | REPLY to Response to Motion re 8319 MOTION to Compel *(1) CASE STRATEGIES GROUP (F/K/A NFL CASE CONSULTING, LLC), IT STRATEGIES GROUP, INC., CRAIG SIENEMA, AND JAMES MCCABE; AND (2) LIBERTY SETTLEMENT SOLUTIONS, LLC, LIBERTY CONTINGENT RECEIVABLES, LLC, LIBERTY SETTLEMENT FUNDING, JMM Co-Lead Class Counsel's Reply Memorandum In Further Support of Motion to Compel filed by PLAINTIFF(S).* (Attachments: # 1 Declaration Supplemental Declaration of Christopher A. Seeger, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I)(SEEGER, CHRISTOPHER) (Entered: 09/05/2017) |
| 09/05/2017 | 8352 | NOTICE by PLAINTIFF(S) *of Withdrawal of Attorney's Lien and Petition to Establish Attorney's Lien and Notice of Appearance of Jeffery Jackson* (ZIMMERMAN, CHARLES) (Entered: 09/05/2017) |
| 09/05/2017 | 8353 | NOTICE by PLAINTIFF(S) *of Withdrawal of Attorney's Lien and Petition to Establish Attorney's Lien and Notice of Appearance of Jim and Carol Rourke* (ZIMMERMAN, CHARLES) (Entered: 09/05/2017) |
| 09/05/2017 | 8354 | Response in Opposition re 8330 Notice (Other) *Co-Lead Class Counsel's Response to "Respectful Request" to Appoint the Magistrate Judge to Determine Allocation of Common Benefit Fund* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 09/05/2017) |
| 09/05/2017 | 8355 | MOTION for Leave to File *Sur-reply in Opposition to Class Counsel's Motion to Compel* filed by NFL CASE CONSULTING, LLC.Certificate of Service. (Attachments: # 1 Exhibit A)(SCHEFF, RICHARD) Modified on 9/6/2017 (ems). (Entered: 09/05/2017) |
| 09/06/2017 | 8356 | ORDER that THE MOTION TO CONDUCT LIMITED DISCOVERY (ECF NO. 8234) FILED BY LEGACY PRO SPORTS, LLC IS DENIED, WITHOUT PREJUDICE.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/6/2017.9/6/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/06/2017) |

| | | |
|---|---|---|
| 09/07/2017 | 8357 | ORDER that PURSUANT TO THE COURT'S CONTINUING AND EXCLUSIVE JURISDICTION UNDER ARTICLE XXVII OF THE AMENDED CLASS ACTION SETTLEMENT AGREEMENT FILE ON FEBRUARY 13, 2015 (THE "SETTLEMENT AGREEMENT"), AND THE MAY 8, 2015 AMENDED FINAL APPROVAL ORDER AND JUDGMENT, IT IS HEREBY ORDERED AS FOLLOWS: 1. DEFINED TERMS.... 5. EXCLUSIVE RETAINED JURISDICTION. THIS COURT RETAIN CONTINUING AND EXCLUSIVE JURISDICTION OVER THE INTERPRETATION, IMPLEMENTATION, AND ENFORCEMENT OF THIS ORDER.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/7/2017. 9/7/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/07/2017) |
| 09/07/2017 | 8358 | ORDER - PURSUANT TO THE COURT'S CONTINUING AND EXCLUSIVE JURISDICTION UNDER ARTICLE XXVII OF THE AMENDED CLASS ACTION SETLEMENT AGREEMENT FILED ON FEBRUARY 13, 2015 (THE "SETTLEMENT AGREEMENT"), AND THE MAY 8, 2015 AMENDED FINAL APPROVAL ORDER AND JUDGMENT,IT IS HEREBY ORDERED AS FOLLOWS: 1. DEFINED TERMS.... 5. EXCLUSIVE RETAINED JURISDICTION. THIS COURT RETAINS CONTINUING AND EXCLUSIVE JURISDICTION OVER THE INTERPRETATION, IMPLEMENTATION, AND ENFORCEMENT OF THIS ORDER.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/7/2017. 9/7/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/07/2017) |
| 09/08/2017 | 8359 | ORDER that THE APPLICATION OF MICHAEL D. ROTH, ESQUIRE, TO PRACTICE IN THIS COURT PURSUANT TO LOCAL RULE OF CIVL PROCEDURE 83.5.2(b) IS GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/7/2017. 9/8/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/08/2017) |
| 09/08/2017 | 8360 | ORDER that THE APPLICATION OF DAVID K. WILLINGHAM, ESQUIRE, TO PRACTICE IN THIS COURT PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 83.5.2(b) IS GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/7/2017. 9/8/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/08/2017) |
| 09/08/2017 | 8361 | ORDER that THE APPLICATION OF JEFFREY HAMMER, ESQUIRE, TO PRACTICE IN THIS COURT PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 83.5.2(b) IS GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/7/2017. 9/8/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/08/2017) |
| 09/11/2017 | 8362 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Telephone Conference held on 8/30/2017. Court Reporter: ESR. (aeg) (Entered: 09/11/2017) |
| 09/11/2017 | 8363 | TRANSCRIPT of TELEPHONE CONFERENCE held on 8/30/2017 before HONORABLE ANITA B. BRODY. Court Reporter: ESR. Transcription Service: DOMAN TRANSCRIPTION SERVICE. (aeg) (pc). (Entered: 09/11/2017) |
| 09/11/2017 | 8364 | NOTICE by PLAINTIFF(S) re 8354 Response, *REPLY TO CO-LEAD CLASS COUNSELS RESPONSE TO RESPECTFUL REQUEST TO APPOINT THE MAGISTRATE JUDGE TO DETERMINE ALLOCATION OF COMMON BENEFIT FUND* (Attachments: # 1 Exhibit "1")(DEVANON, NICOLE) (Entered: 09/11/2017) |
| 09/11/2017 | 8368 | ORDER THAT PLAINTIFFS' MOTIONS TO WITHDRAW AS ATTORNEY (DOC. NOS. 8162, 8270, 8272, 8274, 8276, 8278, 8280) ARE GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 9/11/2017. 9/12/2017 ENTERED AND |

| | | |
|---|---|---|
| | | COPIES E-MAILED. (APPLIES TO C.A. NOS. 12-6069, 12-4185, 12-2219, 12-6069, 12-2219, 12-4185 IN 12-MD-2323).(ahf) (Entered: 09/12/2017) |
| 09/12/2017 | 8365 | ORDER - UPON CONSIDERATION OF CO-LEAD CLASS COUNSEL'S MOTION TO COMPEL RD LEGAL FUNDING, LLC, RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, AND RONI DERSOVITZ ("RD LEGAL") TO RESPOND TO THE DISCOVERY REQUESTS PROPOUNDED IN ACCORDANCE WITH THE COURT'S ORDER OF JULY 19, 2017 (ECF 8301), IT IS ORDERED that THE MOTION IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/11/2017.9/11/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/12/2017) |
| 09/12/2017 | 8366 | ORDER... that THE MOTION TO COMPEL (ECF 8319) IS GRANTED IN PART AND DENIED IN PART. ON OR BEFORE SEPTEMBER 15, 2017, CSG ENTITIES AND LIBERTY ENTITIES MUST PRODUCE A LIST OF ALL RETIRED NFL PLAYERS WITH WHOM THOSE ENTITIES COMMUNICATED. CSG ENTITIES AND LIBERTY ENTITIES MUST ALSO PRODUCE A LIST OF ALL RETIRED NFL PLAYERS WITH WHOM THOSE ENTITIES ENTERED INTO AGREEMENTS RELATED TO THE SETTLEMENT. LASTLY, CSG ENTITIES AND LIBERTY ENTITIES MUST PRODUCE A COPY OF ANY AGREEMENT RELATED TO THE SETTLEMENT AND ENTERED INTO WITH A RETIRED NFL PLAYER.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/11/2017.9/11/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/12/2017) |
| 09/12/2017 | 8367 | ORDER - TO ASSIST THIS COURT IN DETERMINING THE PROPER ALLOCATION AND DIVISION OF CLASS COUNSEL ATTORNEYS' FEES, IT IS ORDERED that CO-LEAD CLASS COUNSEL, CHRISTOPHER A. SEEGER, SUBMIT A DETAILED SUBMISSION AS A PROPOSAL FOR THE ALLOCATION OF LAWYERS' FEES AMONG CLASS COUNSEL INCLUDING THE PRECISE AMOUNTS TO BE AWARDED ALONG WITH A JUSTIFICATION OF THOSE AMOUNTS BASED ON AN ANAYLSIS OF THE WORK PERFORMED.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/11/2017. 9/12/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/12/2017) |
| 09/12/2017 | 8369 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 09/12/2017) |
| 09/12/2017 | 8370 | NOTICE of Hearing:THE COURT WILL HOLD THE HEARING ON ALLEGED DECEPTIVE PRACTICES (SEE ECF NO. 8307), AS SCHEDULED, ON SEPTEMBER 19, 2017 AT 10:00 A.M. IN COURTROOM 7B ON THE 7TH FLOOR OF THE U.S. COURTHOUSE, 601 MARKET ST., PHILADELPHIA, PA. THE HEARING WILL TAKE THE FORM OF A PRESENTATION BY CO-LEAD CLASS COUNSEL, WHO ALONE WILL PRESENT EVIDENCE ON ALLEGED DECEPTIVE PRACTICES THAT TARGET SETTLEMENT CLASS MEMBERS. THEREAFTER, THE COURT WILL DETERMINE WHETHER TO SCHEDULE A SUBSEQUENT HEARING. IF A SUBSEQUENT HEARING IS SCHEDULED, THE COURT WILL ENTERTAIN REQUESTS TO BE HEARD.ENTERED AND COPIES SENT VIA ECF.(mo, ) (Entered: 09/12/2017) |
| 09/12/2017 | 8371 | MOTION to Compel *CO-LEAD CLASS COUNSEL'S: (1) MOTION TO COMPEL CORRECTIVE DISCLOSURES BY PHILLIP TIMOTHY HOWARD, ESQUIRE (A/K/A DR. TIM HOWARD, J.D., PH.D.) AND HOWARD & ASSOCIATES, P.A.; (2) MOTION TO COMPEL MR. HOWARD, HOWARD & ASSOCIATES, P.A.; AND CAMBRIDGE CAPITAL GROUP, LLC, GAIL MILON, MR. HOWARD, AND JEFF KAHN TO RESPOND TO RESPECTIVE DISCOVERY REQUESTS PROPOUNDED UPON THEM; AND (3) NOTICE TO THE COURT OF CERTAIN CONDUCT BY MR. HOWARD AND HIS RELATED ENTITIES* filed by PLAINTIFF(S).Memorandum, |

**-530-**

| | | |
|---|---|---|
| | | Declaration, Certificate of Service. (Attachments: # 1 Memorandum In Support of Motion to Compel, # 2 Declaration of Christopher A. Seeger, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M, # 16 Exhibit N, # 17 Exhibit O, # 18 Exhibit P, # 19 Exhibit Q, # 20 Exhibit R, # 21 Exhibit S, # 22 Exhibit T, # 23 Exhibit U, # 24 Exhibit V, # 25 Exhibit W, # 26 Exhibit X, # 27 Exhibit Y, # 28 Exhibit Z, # 29 Text of Proposed Order Proposed Order) (SEEGER, CHRISTOPHER) Modified on 9/13/2017 (ems). (Entered: 09/12/2017) |
| 09/13/2017 | 8372 | CO-LEAD CLASS COUNSEL'S NOTICE TO THE COURT REGARDING RETAINING WILLIAM RUBENSTEIN AS ADVISOR TO PLAINTIFF'S STEERING COMMITTEE by ANAPOLIS WEISS, P.C.. (WEISS, SOL) Modified on 9/13/2017 (ems). (Entered: 09/13/2017) |
| 09/13/2017 | 8373 | RESPONSE to Motion re 8371 MOTION to Compel *CO-LEAD CLASS COUNSEL'S: (1) MOTION TO COMPEL CORRECTIVE DISCLOSURES BY PHILLIP TIMOTHY HOWARD, ESQUIRE (A/K/A DR. TIM HOWARD, J.D., PH.D.) AND HOWARD & ASSOCIATES, P.A.; (2) MOTION TO COMPEL MR. HOWARD, HOWARD & ASSOCIATES, P Response to Motion to Compel Directed to Class-Counsel* filed by PLAINTIFF(S). (HOWARD, PHILLIP) (Entered: 09/13/2017) |
| 09/14/2017 | 8374 | NOTICE by PLAINTIFF(S) *of Attorney's Lien Regarding James Boyd* (TARRICONE, ANTHONY) (Entered: 09/14/2017) |
| 09/14/2017 | 8375 | REQUEST AND MOTION for Extension of Time to File filed by PLAINTIFF(S).. (Attachments: # 1 Exhibit Exhibit A)(BARNES, HEATHER) Modified on 9/15/2017 (ems). (Entered: 09/14/2017) |
| 09/14/2017 | 8376 | ORDER THAT PROFESSOR WILLIAM B. RUBENSTEIN IS APPOINTED AS AN EXPERT WITNESS ON ATTORNEYS' FEES. PROFESSOR RUBENSTEIN IS ENTITLED TO REASONABLE COMPENSATION FOR HIS TIME, FOR THE TIME OF HIS RESEARCH ASSISTANTS, AND FOR HIS COSTS, WHICH, ACCORDING TO FRE 706(c), SHALL BE PAID BY THE PARTIES AS A COST IN AN AMOUNT TO BE DETERMINED BY THE COURT. SIGNED BY HONORABLE ANITA B. BRODY ON 9/14/2017. 9/15/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 09/15/2017) |
| 09/15/2017 | 8377 | NOTICE of Appearance by WAYNE E. FERRELL, JR on behalf of PLAINTIFF(S) (FERRELL, WAYNE) (Entered: 09/15/2017) |
| 09/15/2017 | 8378 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 09/15/2017) |
| 09/15/2017 | 8379 | NOTICE by PLAINTIFF(S) *Notice of Filing Verification on Non-Ownership* (HOWARD, PHILLIP) (Entered: 09/15/2017) |
| 09/15/2017 | 8380 | NOTICE by PLAINTIFF(S) *Joint Letter submission to Judge Brody and Judge Preska regarding the question referred to Judge Brody relating to CFPB, et al. v. RD Legal Funding, LLC, et al. (S.D.N.Y.)* (SEEGER, CHRISTOPHER) (Entered: 09/15/2017) |
| 09/15/2017 | 8381 | MOTION to Certify *Questions for Immediate Appeal and for Stay* filed by NFL CASE CONSULTING, LLC. Certificate of Service. (Attachments: # 1 Memorandum) (SCHEFF, RICHARD) Modified on 9/19/2017 (ems). (Entered: 09/15/2017) |
| 09/18/2017 | 8382 | STIPULATION and *[Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Certificate of Service) ** (COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 9/19/2017 (ems). (Entered: 09/18/2017) |

| 09/18/2017 | 8383 | NOTICE by PLAINTIFF(S) *Response to September 12, 2017 Letter From Catherina Watters, Esq.* (MARKS, STEVEN) (Entered: 09/18/2017) |
| 09/18/2017 | 8384 | NOTICE by PLAINTIFF(S) *of Attorneys' Lien as to Robert D. Bean* (Attachments: # 1 Exhibit Petition to Establish Attorneys' Lien as to Robert Bean)(MATHENY, MATTHEW) (Entered: 09/18/2017) |
| 09/18/2017 | 8385 | NOTICE by PLAINTIFF(S) *Notice of Joinder* (TURNBULL, SANGA) (Entered: 09/18/2017) |
| 09/18/2017 | 8386 | Memorandum re 8371 MOTION to Compel *CO-LEAD CLASS COUNSEL'S: (1) MOTION TO COMPEL CORRECTIVE DISCLOSURES BY PHILLIP TIMOTHY HOWARD, ESQUIRE (A/K/A DR. TIM HOWARD, J.D., PH.D.) AND HOWARD & ASSOCIATES, P.A.; (2) MOTION TO COMPEL MR. HOWARD, HOWARD & ASSOCIATES, P Memorandum In Opposition to Motion to Compel* filed by PLAINTIFF(S). (HOWARD, PHILLIP) (Entered: 09/18/2017) |
| 09/19/2017 | 8387 | NOTICE by SIMONA FARRISE re 8267 MOTION for Relief *Motion to Determine Proper Administration of Claims under the Settlement Agreement and Incorporated Memorandum of Law NOTICE OF JOINDER BY FARRISE CLIENTS* (FARRISE, SIMONA) (Entered: 09/19/2017) |
| 09/19/2017 | 8388 | NOTICE by PLAINTIFF(S) *for Attorney Fees regarding John Nix* (Attachments: # 1 Exhibit Petition to Establish Attorney's Fees Lien (as to John Nix))(CLOUD, IAN) (Entered: 09/19/2017) |
| 09/19/2017 | 8389 | Memorandum In Opposition re 8371 MOTION to Compel *CO-LEAD CLASS COUNSEL'S: (1) MOTION TO COMPEL CORRECTIVE DISCLOSURES BY PHILLIP TIMOTHY HOWARD, ESQUIRE (A/K/A DR. TIM HOWARD, J.D., PH.D.) AND HOWARD & ASSOCIATES, P.A.; (2) MOTION TO COMPEL MR. HOWARD, HOWARD & ASSOCIATES, P Response in Opposition by Cambridge Capital Group* filed by PLAINTIFF(S). (HOWARD, PHILLIP) (Entered: 09/19/2017) |
| 09/19/2017 | 8390 | NOTICE by PLAINTIFF(S) re 8388 Notice (Other) *for Attorney Fees regarding John Nix* (Attachments: # 1 Exhibit Petition to Establish Attorney's Fees Lien (as to John Nix))(CLOUD, IAN) (Entered: 09/19/2017) |
| 09/19/2017 | 8391 | NOTICE by PLAINTIFF(S) *NOTICE OF FILING* (HOWARD, PHILLIP) (Entered: 09/19/2017) |
| 09/19/2017 | 8392 | Audio File 9-19-2017 10:05 AM, regarding HEARING held on 9-19-2017, before HONORABLE ANITA B. BRODY (pk, ) (Entered: 09/19/2017) |
| 09/19/2017 | 8393 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Hearing held on 9/19/2017. Court Reporter: ESR. (ems) (Entered: 09/19/2017) |
| 09/20/2017 | 8394 | STIPULATION AND ORDER... WHEREAS, ON APRIL 12, 2017, THIS COURT ISSUED AN ORDER (ECF NO. 7477) (THE "APRIL SCHEDULING ORDER") SETTING FORTH THE SCHEDULE AND TERMS FOR INITIAL MOTION PRACTICE IN MDL NO. 2323;... AND NOW, THIS 18TH DAY OF SEPTEMBER 2017, IT IS HEREBY STIPULATED AND AGREED BY THE PARTIES that:... IT IS ORDERED, BASED ON THE ABOVE STIPULATION that: (I) EACH OF THE NFL PARTIES' BRIEFS IN SUPPORT OF (a) THEIR MOTION FOR DISMISSAL ON ANY OTHER 12(b) GROUNDS SHALL NOT EXCEED FIFTY (50) PAGES. (ii) EACH OF LEAD COUNSEL FOR OPT OUT PLAINTIFFS' OPPOSITION BRIEFS TO THE NFL PARTIES' MOTIONS TO DISMISS SHALL NOT EXCEED FIFTY (50) PAGES. (iii) COUNSEL FOR THE KANSAS CITY CHIEFS FOOTBALL CLUB... APPROVED BY THE COURT:. SIGNED BY HONORABLE ANITA B. |

| | | BRODY ON 9/19/2017. 9/20/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/20/2017) |
|---|---|---|
| 09/20/2017 | 8395 | Objections by PLAINTIFF(S) re 7151 Application/Petition,,,,,,,,,, 7355 Objections, 7354 Objections *First Supplement in Support of the Alexander Objector's Objections filed on March 27, 2017.* (LUBEL, LANCE) (Entered: 09/20/2017) |
| 09/20/2017 | 8396 | MOTION to Compel *Compliance with Case Management Order No. 5* filed by PLAINTIFF(S).Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order)(LUBEL, LANCE) Modified on 9/21/2017 (ems). (Entered: 09/20/2017) |
| 09/20/2017 | 8397 | NOTICE OF JOINDER AND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTIONS TO DETERMINE PROPER ADMINISTRATION OF CLAIMS UNDER THE SETTLEMENT AGREEMENT filed by PLAINTIFF(S).Memorandum, Declaration, Certificate of Service. (Attachments: # 1 Declaration Declaration of Anoush Hakimi and Exhibits)(HAKIMI, ANOUSH) Modified on 9/21/2017 (ems). (Entered: 09/20/2017) |
| 09/21/2017 | 8398 | NOTICE of Appearance by DIANA N. JACOBS on behalf of PLAINTIFF(S) (JACOBS, DIANA) (Entered: 09/21/2017) |
| 09/22/2017 | 8399 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Joe and Burtaniel Owens* (LOCKS, GENE) (Entered: 09/22/2017) |
| 09/22/2017 | 8400 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Dameane Douglas (Attachments: Exhibit A Petition to Establish Attorney's Lien)* (TARRICONE, ANTHONY) (Entered: 09/22/2017) |
| 09/22/2017 | 8401 | NOTICE by PLAINTIFF(S) *of Attorney's Lien as to John E. Harris (Attachments: Exhibit A Petition to Establish Attorney's Lien)* (TARRICONE, ANTHONY) (Entered: 09/22/2017) |
| 09/25/2017 | 8402 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 09/25/2017) |
| 09/25/2017 | 8403 | MOTION to Dismiss *the Second Amended Complaint on Preemption Grounds* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.Memorandum, Declaration and Certificate of Service. (Attachments: # 1 Memorandum, # 2 Declaration of Douglas M. Burns, # 3 Appendix A, # 4 Declaration Dennis L. Curran, # 5 Exhibit 1, # 6 Exhibit 2, # 7 Exhibit 3, # 8 Exhibit 4, # 9 Exhibit 5, # 10 Exhibit 6-A, # 11 Exhibit 6-B, # 12 Exhibit 6-C, # 13 Exhibit 6-D, # 14 Exhibit 7-A, # 15 Exhibit 7-B, # 16 Exhibit 8-A, # 17 Exhibit 8-B, # 18 Exhibit 8-C, # 19 Exhibit 9-A, # 20 Exhibit 9-B, # 21 Exhibit 10-A, # 22 Exhibit 10-B, # 23 Exhibit 10-C, # 24 Exhibit 11-A, # 25 Exhibit 11-B, # 26 Exhibit 11-C, # 27 Exhibit 12, # 28 Exhibit 13, # 29 Exhibit 14, # 30 Exhibit 15, # 31 Exhibit 16, # 32 Text of Proposed Order)(KARP, BRAD) Modified on 9/26/2017 (ems). (Entered: 09/25/2017) |
| 09/25/2017 | 8404 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM */ Motion to Dismiss the Second Amended Complaint* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.Memorandum, Declaration and Certificate of Service. (Attachments: # 1 Memorandum, # 2 Declaration of Douglas M. Burns, # 3 Appendix A, # 4 Text of Proposed Order)(KARP, BRAD) Modified on 9/26/2017 (ems). (Entered: 09/25/2017) |
| 09/25/2017 | 8405 | RESPONSE in Opposition re 7966 MOTION to Remand to State Court , 7963 MOTION to Remand to State Court filed by ARIZONA CARDINALS FOOTBALL CLUB LLC, KANSAS CITY CHIEFS FOOTBALL CLUB, INC.. (Attachments: # 1 |

-533-

| | | |
|---|---|---|
| | | Declaration of Dennis R. Curran, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5-A, # 7 Exhibit 5-B, # 8 Exhibit 6-A, # 9 Exhibit 6-B, # 10 Exhibit 6-C, # 11 Exhibit 7, # 12 Exhibit 8-A, # 13 Exhibit 8-B, # 14 Exhibit 9-A, # 15 Exhibit 9-B, # 16 Exhibit 10, # 17 Exhibit 11, # 18 Exhibit 12, # 19 Exhibit 13, # 20 Text of Proposed Order)(KARP, BRAD) (Entered: 09/25/2017) |
| 09/25/2017 | 8406 | RESPONSE in Opposition re 7945 First MOTION to Remand *or Alternative RE-Designate Unrelated* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Declaration of Dennis R. Curran, # 2 Exhibit 1-A, # 3 Exhibit 1-B, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Text of Proposed Order)(KARP, BRAD) (Entered: 09/25/2017) |
| 09/26/2017 | 8407 | NOTICE of Appearance by DIANA N. JACOBS on behalf of PLAINTIFF(S) (JACOBS, DIANA) (Entered: 09/26/2017) |
| 09/26/2017 | 8408 | NOTICE by PLAINTIFF(S) *of Letter from Christopher A. Seeger to Judge Brody re: Proposed Scheduling Order* (Attachments: # 1 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 09/26/2017) |
| 09/27/2017 | 8409 | ORDER - UPON CONSIDERATION OF THE PARTIES LETTER (ECF NO. 8380), IT IS ORDERED that:. THE RD LEGAL PARTIES, THE GOVERNMENT, AND CO-LEAD CASE SHALL FILE VIA ECF NO LATER THAN SEPTEMBER 29, 2017, SEPARATE OPENING BRIEFS NOT EXCEEDING 15 PAGES EACH.... NO PARTY SHALL BE PERMITTED TO FILE A SUR-REPLY.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/26/2017. 9/27/2017 ENTERED AND COPIES VIA ECF. (mo, ) (mo, ). (Entered: 09/27/2017) |
| 09/27/2017 | | Set/Reset Deadlines as to REPLY BRIEFS DUE BY 10/13/2017. (mo, ) (Entered: 09/27/2017) |
| 09/27/2017 | 8410 | TRANSCRIPT of Hearing held on 9/19/2017, before Judge ANITA B. BRODY. Court Reporter/Transcriber: ESR / WRITER'S CRAMP TRANSCRIPTION SERVICE. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 10/18/2017. Redacted Transcript Deadline set for 10/30/2017. Release of Transcript Restriction set for 12/26/2017. (ems) (Entered: 09/27/2017) |
| 09/27/2017 | 8411 | Notice of Filing of Official Transcript with Certificate of Service re 8410 Transcript - PDF,, 9/27/2017 Entered and Copies Emailed. (ems) (Entered: 09/27/2017) |
| 09/27/2017 | 8412 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Kory Blackwell and Sonya Blackwell* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8413 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Gregory Brown* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8414 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Christopher Coleman and Anna Coleman* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8415 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Kenard Lang and Meredith Lang* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8416 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Rod Manuel and Willecia Manual* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8417 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Rodrick Rutledge* (LOCKS, GENE) (Entered: 09/27/2017) |

| 09/27/2017 | 8418 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Hurley J. Tarver, Jr.* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8419 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Rodney Bellinger* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8420 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Reggie Berry* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8421 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - James Betterson* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8422 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Doug Donley and Dina Donley* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8423 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Steven Hamilton and Kathleen Hamilton* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8424 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Seth Joyner* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8425 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - George Wayne McCullough* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8426 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Frederick Nixon* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8427 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Mark Seay* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8428 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Reginald Sutton* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/27/2017 | 8429 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Zachary Valentine* (LOCKS, GENE) (Entered: 09/27/2017) |
| 09/28/2017 | 8430 | RESPONSE in Opposition re 8263 MOTION to Modify *the Amended Final Order and Judgment [ECF 6534]* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 09/28/2017) |
| 09/28/2017 | 8431 | Statement *Statement of Co-Lead Class Counsel in Support of the Opposition by the NFL Parties to Settlement Class Member Yvonne Sagapoluteles Motion to Modify the Amended Final Order and Judgment* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 09/28/2017) |
| 09/28/2017 | 8432 | RESPONSE in Opposition re 8267 MOTION for Relief *Motion to Determine Proper Administration of Claims under the Settlement Agreement and Incorporated Memorandum of Law -- Opposition of Co-Lead Class Counsel, the National Football League and NFL Properties LLC to the Motion of X1Law to Determine Proper Administration of Claims Under the Settlement Agreement* filed by PLAINTIFF(S). (Attachments: # 1 Declaration Declaration of Orran L. Brown, Sr., # 2 Declaration Declaration of David E. Smith)(SEEGER, CHRISTOPHER) (Entered: 09/28/2017) |
| 09/29/2017 | 8433 | RESPONSE in Opposition re 8381 MOTION to Certify *Questions for Immediate Appeal and for Stay* filed by PLAINTIFF(S). (Attachments: # 1 Declaration with Exhibits A and B)(SEEGER, CHRISTOPHER) (Entered: 09/29/2017) |
| 09/29/2017 | 8434 | Memorandum of Law *Response to Order entered Sept. 27, 2017 (ECF No. 8409)* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 09/29/2017) |

| 09/29/2017 | 8435 | Memorandum of Law *Response to Order entered September 27, 2017 (ECF No. 8409)* by RONI DERSOVITZ, RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, RD LEGAL FUNDING, LLC. (HAMMER, JEFFREY) (Entered: 09/29/2017) |
|---|---|---|
| 10/02/2017 | 8436 | NOTICE of Appearance by BENJAMIN ZACHARY KONOP on behalf of CONSUMER FINANCIAL PROTECTION BUREAU (KONOP, BENJAMIN) (Entered: 10/02/2017) |
| 10/02/2017 | 8437 | NOTICE of Appearance by HAI BINH THI NGUYEN on behalf of CONSUMER FINANCIAL PROTECTION BUREAU (NGUYEN, HAI BINH) (Entered: 10/02/2017) |
| 10/02/2017 | 8438 | Memorandum of Law *Response to Order entered September 27, 2017 (ECF No. 8409)* by CONSUMER FINANCIAL PROTECTION BUREAU, THE PEOPLE OF THE STATE OF NEW YORK. (KONOP, BENJAMIN) (Entered: 10/02/2017) |
| 10/04/2017 | 8439 | ORDER that THE MOTION FOR EXCLUSION FROM SETTLEMENT CLASS BY GREGORY BINGHAM AND REQUEST FOR LEAVE TO FILE A SHORT FORM COMPLAINT (ECF NO. 8019) IS DENIED.-1 (footnote) GREGORY BINGHAM REMAINS IN THE SETTLEMENT CLASS.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/03/2017.10/04/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/04/2017) |
| 10/04/2017 | 8440 | RESPONSE in Opposition re 8396 MOTION to Compel *Compliance with Case Management Order No. 5 and Response to* 8395 *Post-Briefing Supplementation of the Alexander Objectors' Objections to the Common Benefit Fee Petition* filed by PLAINTIFF(S). (Attachments: # 1 Declaration of Orran L. Brown, Sr.)(SEEGER, CHRISTOPHER) (Entered: 10/04/2017) |
| 10/05/2017 | 8441 | NOTICE by PLAINTIFF(S) *NOTICE OF ASSOCIATION OF RICHARD PLATEL* (DEVANON, NICOLE) Modified on 10/17/2017 (ems). (Entered: 10/05/2017) |
| 10/05/2017 | 8442 | REPLY to Response to Motion re 8263 MOTION to Modify *the Amended Final Order and Judgment [ECF 6534]* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit Exhibit 4, # 2 Exhibit Exhibit 5)(DEMERATH, JUSTIN) (Entered: 10/05/2017) |
| 10/05/2017 | 8443 | NOTICE by PLAINTIFF(S) *Joinder* (DEMERATH, JUSTIN) (Entered: 10/05/2017) |
| 10/05/2017 | 8444 | REPLY to Response to Motion re 8267 MOTION for Relief *Motion to Determine Proper Administration of Claims under the Settlement Agreement and Incorporated Memorandum of Law* filed by PLAINTIFF(S). (ST. JACQUES, MICHAEL) (Entered: 10/05/2017) |
| 10/06/2017 | 8445 | NOTICE of Withdrawal of Appearance by SANGA T. TURNBULL on behalf of PLAINTIFF(S)(TURNBULL, SANGA) (Entered: 10/06/2017) |
| 10/06/2017 | 8446 | REPLY to Response to Motion re 8381 MOTION to Certify *Questions for Immediate Appeal and for Stay* filed by NFL CASE CONSULTING, LLC. (SCHEFF, RICHARD) (Entered: 10/06/2017) |
| 10/10/2017 | 8447 | Declaration re 8367 Order,, *Regarding Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives* by PLAINTIFF(S). (Attachments: # 1 Exhibit to Declaration of Christopher A. Seeger, # 2 Declaration of Brian T. Fitzpatrick)(SEEGER, CHRISTOPHER) (Entered: 10/10/2017) |
| 10/12/2017 | 8448 | ORDER that ANY COUNTER-DECLARATION IN RESPONSE TO THE DECLARATION OF CHRISTOPHER A. SEEGER IN SUPPORT OF PROPOSED |

| | | |
|---|---|---|
| | | ALLOCATION OF COMMON BENEFIT ATTORNEYS' FEES, PAYMENT OF COMMON BENEFIT EXPENSES, AND PAYMENT OF CASE CONTRIBUTION AWARDS TO CLASS REPRESENTATIVES (ECF NO. 8447) MUST BE SUBMITTED ON OR BEFORE OCTOBER 27, 2017. SIGNED BY HONORABLE ANITA B. BRODY ON 10/11/2017. 10/12/2017 ENTERED AND COPIES VIA ECF. (mo, ) (Entered: 10/12/2017) |
| 10/12/2017 | 8449 | REPLY to Response to Motion re 8396 MOTION to Compel *Compliance with Case Management Order No. 5* filed by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 10/12/2017) |
| 10/12/2017 | 8450 | ORDER that PLAINTIFFS' MOTION TO REMAND OR IN THE ALTERNATIVE TO RE-DESIGNATE THE CASE "UNRELATED" (ECF NO. 7945):. REMAINS PENDING WITH REGARD TO THE MOTION TO REMAND AND. IS DENIED WITH REGARD TO THE MOTION TO RE-DESIGNATE THE CASE "UNRELATED." THIS CASE WILL REMAIN PART OF THE MDL. FURTHER PRETRIAL PROCEEDINGS WILL BE CONSOLIDATED ON THE SAME SCHEDULE AS PENDING REMAND MOTIONS IN THE CARDINALS/CHIEFS CASES. (SEE ECF NO. 8030). PLAINTIFFS MAY FILE A REPLY BRIEF IN FURTHER SUPPORT OF THE MOTION TO REMAND ON OR BEFORE NOVEMBER 24, 2017. THE BRIEF SHALL NOT EXCEED TWENTY-FIVE (25) PAGES..... SIGNED BY HONORABLE ANITA B. BRODY ON 10/12/2017. 10/12/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/12/2017) |
| 10/12/2017 | 8451 | ORDER - UPON CONSIDERATIN OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT AGAINST RIDDELL DEFENDANTS, AND OPPOSITION THERETO BY THE RIDDELL DEFENDANTS, AND OPPOSITION THERETO BY THE RIDDELL DEFENDANTS, IT IS HEREBY ORDERED that PLAINTIFFS' MOTION BE GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/12/2017.10/12/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/12/2017) |
| 10/12/2017 | 8452 | ORDER that, ON OR BEFORE OCTOBER 20, 2017, CO-LEAD COUNSEL FOR THE RIDDELL LITIGATION AND COUNSEL FOR THE RIDDELL DEFENDANTS MUST SUBMIT TO THE COURT A FOLLOW-UP SCHEDULING ORDER THAT INCLUDES DATES CERTAIN. (SEE ECF NO. 7709 PARAGRAPH 4).. SIGNED BY HONORABLE ANITA B. BRODY ON 10/12/2017. 10/12/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/12/2017) |
| 10/12/2017 | | Set/Reset Deadlines as to REPLY BRIEF DUE BY 11/24/2017. (mo, ) (Entered: 10/12/2017) |
| 10/12/2017 | 8453 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). Certificate of Service. (Attachments: # 1 Exhibit Contract)(GIDDENS, JOHN) Modified on 10/12/2017 (ems). (Entered: 10/12/2017) |
| 10/12/2017 | 8454 | NOTICE by PLAINTIFF(S) *of Attorney Lien for Nate Lewis* (GIDDENS, JOHN) (Entered: 10/12/2017) |
| 10/12/2017 | 8455 | NOTICE of Withdrawal of Appearance by JOHN D. GIDDENS on behalf of PLAINTIFF(S)(GIDDENS, JOHN) (Entered: 10/12/2017) |
| 10/12/2017 | 8456 | MOTION for Leave to File filed by PLAINTIFF(S).Corrected Reply. (Attachments: # 1 Exhibit Corrected Reply)(ST. JACQUES, MICHAEL) Modified on 10/12/2017 (ems). (Entered: 10/12/2017) |

| 10/13/2017 | 8457 | Memorandum of Law re 8435 Memorandum *Co-Lead Class Counsel's Reply Memorandum to RD Legal's Opening Brief re Question Set Forth in Order Entered on Sept. 27, 2017 (ECF No. 8409)* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 10/13/2017) |
|---|---|---|
| 10/13/2017 | 8458 | Memorandum of Law re 8435 Memorandum *CFPB and NYAG's Reply Memorandum to RD Legal's Opening Brief re Question Set Forth in Order Entered on Sept. 27, 2017 (ECF No. 8409)* by CONSUMER FINANCIAL PROTECTION BUREAU. (KONOP, BENJAMIN) (Entered: 10/13/2017) |
| 10/13/2017 | 8459 | Memorandum of Law re 8434 Memorandum, 8438 Memorandum *of Law of RD Legal Funding, LLC, RD Legal Finance, LLC, RD Legal Funding Partners, LP, and Roni Dersovitz Re: the Assignment of Settlement Proceeds* by RONI DERSOVITZ, RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, RD LEGAL FUNDING, LLC. (WILLINGHAM, DAVID) (Entered: 10/13/2017) |
| 10/16/2017 | 8460 | ORDER that THE MOTION FOR LEAVE TO FILE CORRECTED REPLY IN PLACE OF FILED ON OCTOBER 5, 2017 [ECF No. 8444] AND MOTION FOR ENLARGEMENT OF TIME (ECF NO. 8456) IS GRANTED. MOVANTS MUST FILE THE CORRECTED REPLY ON OR BEFORE OCTOBER 24, 2017.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/16/2017.10/16/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/16/2017) |
| 10/17/2017 | 8461 | ORDER - UPON CONSIDERATION OF MOTION OF NONPARTIES CASE STRATEGIES GROUP,... TO CERTIFY QUESTIONS FOR IMMEDIATE APPEAL AND FOR STAY (ECF NO. 8381), IT IS ORDERED that THE MOTION IS DENIED. SIGNED BY HONORABLE ANITA B. BRODY ON 10/16/2017.10/17/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/17/2017) |
| 10/17/2017 | 8462 | SUGGESTION OF DEATH Upon the Record as to Stephen Jackson by PLAINTIFFS' STEERING COMMITTEE. (DEVANON, NICOLE) (Entered: 10/17/2017) |
| 10/18/2017 | 8463 | NOTICE of Withdrawal of Appearance by SANGA T. TURNBULL on behalf of PLAINTIFF(S)(TURNBULL, SANGA) (Entered: 10/18/2017) |
| 10/18/2017 | 8464 | Declaration re 8263 MOTION to Modify the *Amended Final Order and Judgment [ECF 6534]* by PLAINTIFF(S). (Attachments: # 1 Declaration Declaration of Yvonne Sagapolutele)(DEMERATH, JUSTIN) (Entered: 10/18/2017) |
| 10/18/2017 | 8465 | MOTION for Leave to File Excess Pages filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(DONOHUE, MEGAN) Modified on 10/24/2017 (ems). (Entered: 10/18/2017) |
| 10/19/2017 | 8466 | ORDER - UPON CONSIDERATION OF CO-LEAD CLASS COUNSEL'S: (1) MOTION TO COMPEL CORRECTIVE DISCLOSURES BY PHILLIP TIMOTHY HOWARD, ESQUIRE... (ECF NO. 8371) IT IS HEREBY ORDERED that:. THE MOTION TO COMPEL CORRECTIVE DISCLOSURES BY PHILLIP TIMOTHY HOWARD, ESQUIRE (A/K/A DR. TIM HOWARD, J.D., Ph.D.) AND HOWARD & ASSOCIATES, P.A. IS DENIED WITHOUT PREJUDICE.-1(footnote). THE MOTION TO COMPEL MR. HOWARD, HOWARD & ASSOCIATES, P.A.; AND CAMBRIDGE CAPITAL GROUP, LLC, GAIL MILON, MR. HOWARD, AND JEFF KAHN TO RESPOND TO RESPECTIVE DISCOVERY REQUESTS PROPOUNDED UPON THEM IS GRANTED.-2(footnote). ON OR BEFORE NOVEMBER 3, 2017, MR. HOWARD, HOWARD & ASSOCIATES, P.A.; AND CAMBRIDGE CAPITAL GROUP, LLC, GAIL MILON, MR. HOWARD, AND JEFF KAHN MUST RESPOND TO THE PROPOUNDED DISCOVERY REQUESTS.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/19/2017. 10/19/2017 |

| | | ENTERED AND COPIES VIA ECF.(mo, ) Modified on 10/20/2017 (mo, ). (Entered: 10/19/2017) |
|---|---|---|
| 10/23/2017 | 8467 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). (FARRISE, SIMONA) Modified on 10/24/2017 (ems). (Entered: 10/23/2017) |
| 10/23/2017 | 8468 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). (FARRISE, SIMONA) Modified on 10/24/2017 (ems). (Entered: 10/23/2017) |
| 10/23/2017 | 8469 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). (FARRISE, SIMONA) Modified on 10/24/2017 (ems). (Entered: 10/23/2017) |
| 10/23/2017 | 8470 | MOTION for Order *Directing the Claims Administrator to Withhold Any Portions of Class Member Monetary Awards Purportedly Owed to Certain Third-Party Lenders and Claims Services Providers, and Direct Disclosure to the Claims Administrator of Existence of Class Member Agreements with All Third Parties* filed by PLAINTIFF(S).Memorandum, Declaration, Certificate of Service. (Attachments: # 1 Memorandum In Support of Motion, # 2 Declaration of Orran L. Brown, Sr., # 3 Text of Proposed Order Proposed Order)(SEEGER, CHRISTOPHER) Modified on 10/24/2017 (ems). (Entered: 10/23/2017) |
| 10/24/2017 | 8471 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S). (FARRISE, SIMONA) Modified on 10/24/2017 (ems). (Entered: 10/24/2017) |
| 10/24/2017 | 8472 | ORDER THAT THE PLAINTIFFS MUST FILE THE SAMAC-RIDDELL ON THE 2:12-MD-2323 DOCKET ON OR BEFORE 11/13/2017. THE INDIVIDUAL PLAINTIFFS WHO WISH TO PROCEED WITH THEIR CLAIMS AGAINST ANY OF THE RIDDELL DEFENDANTS MUST EACH FILE AN INDIVIDUAL SHORT FORM COMPLAINT ("SFC-RIDDELL") ON BOTH THE 2:12-MD-2323 DOCKET AND THE APPLICABLE UNDERLYING DOCKET FOR THE GIVEN ACTION ON OR BEFORE 12/4/2017. THE RIDDELL DEFENDANTS MAY MOVE AGAINST THE SAMAC-RIDDELL ON OR BEFORE 1/12/2018. THE RIDDELL DEFENDANTS MAY FILE REPLY BRIEFS IN FURTHER SUPPORT OF THEIR MOTIONS ON OR BEFORE 4/27/2018. EACH REPLY BRIEF SHALL NOT EXCEED THIRTY (30) PAGES. ANY PLAINTIFF, WHO WISHES TO FILE A SEPERATE MOTION TO REMAND THEIR ACTIONS TO THEIR RESPECTIVE TRANSFEROR COURTS, MUST FILE THEIR MOTIONS TO REMAND ON OR BEFORE 12/4/2017. THE SUPPORTING BRIEF SHALL NOT EXCEED THIRTY-FIVE (35) PAGES; ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 10/24/2017. 10/24/2017 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 10/24/2017) |
| 10/24/2017 | 8473 | REPLY to Response to Motion re 8267 MOTION for Relief *Motion to Determine Proper Administration of Claims under the Settlement Agreement and Incorporated Memorandum of Law* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit)(ST. JACQUES, MICHAEL) (Entered: 10/24/2017) |
| 10/25/2017 | 8474 | Short Form Complaint-William C. Bradley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8475 | Short Form Complaint-Jeffrey L. Burris by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8476 | Short Form Complaint-Christopher Calloway by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8477 | Short Form Complaint-Shante Carver by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |

| 10/25/2017 | 8478 | Short Form Complaint-Anthony Collins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8479 | Short Form Complaint-Tony Covington by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8480 | Short Form Complaint-Vernon W. Dean by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8481 | Short Form Complaint-Mark Duper *and Caroline E. Duper* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8482 | Short Form Complaint-Robert J. Fredrickson *and Barbara A. Fredrickson* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8483 | Short Form Complaint-Duane Galloway by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8484 | Short Form Complaint-George Goeddeke and Geneva Goeddeke by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8485 | Short Form Complaint-Kerry Goode and Tanja Goode by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8486 | Short Form Complaint-Rory A. Graves by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8487 | Short Form Complaint-Rodney Hampton and Andetria Hampton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8488 | Short Form Complaint-Anthony Hancock by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8489 | Short Form Complaint-Anthony Hargain by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8490 | Short Form Complaint-Joseph A. Harris and Lydia H. Harris by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8491 | Short Form Complaint-Wayne A. Hawkins and Sharon Hawkins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8492 | Short Form Complaint-Patrick D. Heenan by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8493 | Short Form Complaint-LonZell R. Hill and Lanita O. Hill by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8494 | Short Form Complaint-James A. Hood and Bonita Hood by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8495 | Short Form Complaint-Bryan Hooks by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8496 | Short Form Complaint-Brian Ingram by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8497 | Short Form Complaint-Harold L. Jackson and Carolyn Jackson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |

| 10/25/2017 | 8498 | Short Form Complaint-Roland James and Carmel James by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8499 | Short Form Complaint-George R. Jamison and Amelia L. Jamison by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8500 | Short Form Complaint-Melvin Jenkins and Javoni Jenkins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8501 | Short Form Complaint-Todd Johnson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8502 | Short Form Complaint-Anthony A. Jones by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8503 | Short Form Complaint-Broderick Jones by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8504 | Short Form Complaint-Kirk Cameron Jones by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8505 | Short Form Complaint-Kelly Kirchbaum and Wilheamena Kirchbaum by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8506 | Short Form Complaint-Larry M. Kaminski and Linda B. Kaminski by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8507 | Short Form Complaint-Steve Korte and Karelis Korte by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8508 | Short Form Complaint-Edward P. Lee and Susan Jackson Lee by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8509 | Short Form Complaint-David R. Lewis and Bonnie Ashberry-Lewis by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8510 | Short Form Complaint-Ronnie Lippett by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8511 | Short Form Complaint-William H. Mandley and Teresa S. Mandley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8512 | SHORT FORM COMPLAINT - VERNON MAXWELL by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8513 | SHORT FORM COMPLAINT - RICHARD MERCIER by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8514 | SHORT FORM COMPLAINT - ALVIN MOORE by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8515 | SHORT FORM COMPLAINT - STEVE NELSON by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8516 | SHORT FORM COMPLAINT - EDWARD PAYTON by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8517 | SHORT FORM COMPLAINT - THOMAS C. RANDOLPH by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |

| 10/25/2017 | 8518 | SHORT FORM COMPLAINT - STEPHEN REESE by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8519 | SHORT FORM COMPLAINT - MICHAEL C. RICHARDSON by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8520 | SHORT FORM COMPLAINT - JAMES E. ROBBINS by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8521 | SHORT FORM COMPLAINT - LEONARD RUSSELL by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8522 | SHORT FORM COMPLAINT - JAMES M. SCHNITKER by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8523 | SHORT FORM COMPLAINT - PHILIP K. SMITH by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8524 | SHORT FORM COMPLAINT - GEORGE VISGAR by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8525 | SHORT FORM COMPLAINT - ROBERT WEATHERS by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8526 | SHORT FORM COMPLAINT - NEWTON D. WILLIAMS by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8527 | SHORT FORM COMPLAINT - JAMES E. WILLIS by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8528 | SHORT FORM COMPLAINT - TERRY L. WRIGHT by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8529 | SHORT FORM COMPLAINT - TOBY L. WRIGHT by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8530 | SHORT FORM COMPLAINT - RENARD YOUNG by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8531 | SHORT FORM COMPLAINT - STEVEN ZABEL by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/25/2017) |
| 10/25/2017 | 8532 | Response *of Armstrong Objectors' to Class Counsel's Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives* by PLAINTIFF(S). (COFFMAN, RICHARD) Modified on 10/27/2017 (ems). (Entered: 10/25/2017) |
| 10/26/2017 | 8533 | Short Form Complaint-Fred L. Barnett by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8534 | Short Form Complaint-Marc Boutte by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8535 | Short Form Complaint-Horace Copeland by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8536 | Short Form Complaint-Harry M. Crump by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8537 | Short Form Complaint-Lorenzo Davis by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |

| 10/26/2017 | 8538 | Short Form Complaint-Anthony Dorsett by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8539 | Short Form Complaint-Santana Dotson by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8540 | Short Form Complaint-Bernard Ford by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8541 | Short Form Complaint-Michael Gann by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8542 | Short Form Complaint-Dwight Harrison by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8543 | Short Form Complaint-Wade Key by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8544 | Short Form Complaint-Michael Lush by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8545 | Short Form Complaint-Leonard Marhsall by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8546 | Short Form Complaint-Emanuel Martin by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8547 | Short Form Complaint-Deems May by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8548 | Short Form Complaint-Fred McCrary by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8549 | Short Form Complaint-Danny Miller by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8550 | Short Form Complaint-Reginald Moore by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8551 | Short Form Complaint-Zefross Moss by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8552 | Short Form Complaint-John L. Outlaw by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8553 | Short Form Complaint-Dave Pear by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8554 | Short Form Complaint-Johnny Rembert by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8555 | Short Form Complaint-Wendell A. Tyler by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/26/2017) |
| 10/26/2017 | 8556 | Declaration re 8447 Declaration, *Counter-Declaration of Jason E. Luckasevic in Response to the Declaration of Christopher A. Seeger in Support of Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives* by PLAINTIFF(S). (Attachments: # 1 Exhibit A-Omalu Declaration, # 2 Exhibit B-Girardi Affidavit, # 3 Exhibit C-Fitzsimmons Affidavit, # 4 Exhibit D-Stein Declaration, # 5 |

| | | Exhibit E-Russomanno Affidavit, # 6 Exhibit F-Cohen Affidavit, # 7 Exhibit G-Paladino Affidavit)(LUCKASEVIC, JASON) (Entered: 10/26/2017) |
|---|---|---|
| 10/26/2017 | 8557 | ORDER - AFTER CONSIDERING PLAINTIFF YVONNE SAGAPOLUTELE'S MOTION TO MODIFY THE AMENDED FINAL ORDER AND JUGMENT (ECF NO. 8263), IT IS ORDERED that PLAINTIFF'S MOTION IS DENIED WITHOUT PREJUDICE TO RAISE THE ISSUE AT A LATER TIME. BEFORE PLAINTIFF CAN ATTEMPT THE EXTRAORDINARY ACTION OF MODIFYING THE SETTLEMENT AGREEMENT,.... SIGNED BY HONORABLE ANITA B. BRODY ON 10/24/2017.10/26/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/26/2017) |
| 10/26/2017 | 8558 | SHORT FORM COMPLAINT - JOSEPH P. ASKA JR. by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8559 | SHORT FORM COMPLAINT - CHARLES R. ANTHONY by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8560 | SHORT FORM COMPLAINT - MICHAEL K. BANKSTON, SR. by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8561 | SHORT FORM COMPLAINT - AUBREY BEAVERS by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8562 | SHORT FORM COMPLAINT - ROGERS BECKETT by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8563 | SHORT FORM COMPLAINT - MITCHELL BENSON by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8564 | SHORT FORM COMPLAINT - CHARLES BOWSER by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8565 | SHORT FORM COMPLAINT - KEVIN BROOKS by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8566 | SHORT FORM COMPLAINT - TERRY L. BROWN by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8567 | SHORT FORM COMPLAINT - MAURICE BRYANT by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8568 | SHORT FORM COMPLAINT - COURTLAND BULLARD, JR. by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8569 | SHORT FORM COMPLAINT - JONATHAN T. CARTER by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8570 | SHORT FORM COMPLAINT - DARRYL CLACK by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8571 | SHORT FORM COMPLAINT - JAMAL CLARK by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8572 | SHORT FORM COMPLAINT - JONATHAN CLINKSCALE by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8573 | SHORT FORM COMPLAINT - LINCOLN C. COLEMAN JR. by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |

| 10/26/2017 | 8574 | SHORT FORM COMPLAINT - OBADIAH COOPER by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8575 | SHORT FORM COMPLAINT - FRANK E. CORNISH, III by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8576 | Declaration re 8447 Declaration, *in response to co lead counsel proposed allocation of common benefit funds* by PLAINTIFF(S). (ROSEN, DAVID) (Entered: 10/26/2017) |
| 10/26/2017 | 8577 | SHORT FORM COMPLAINT - ERIC CRABTREE by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8578 | SHORT FORM COMPLAINT - CLEVELAND CROSBY by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8579 | SHORT FORM COMPLAINT - ANTICO DALTON by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8580 | SHORT FORM COMPLAINT - MATT DARBY by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8581 | SHORT FORM COMPLAINT - OLIVER J. DAVIS by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8582 | SHORT FORM COMPLAINT - ADRIAN DINGLE by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8583 | SHORT FORM COMPLAINT - ROME DOUGLAS by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8584 | SHORT FORM COMPLAINT - LONDON S. DUNLAP by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8585 | SHORT FORM COMPLAINT - BILLY JOE DUPREE by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8586 | SHORT FORM COMPLAINT - TYRONE E. EDWARDS by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8587 | SHORT FORM COMPLAINT - DOMINIC FURIO by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8588 | SHORT FORM COMPLAINT - DARRELL GILL by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8589 | SHORT FORM COMPLAINT - WILLIAM R. GRAHAM by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8590 | SHORT FORM COMPLAINT - MARSHARNE GRAVES by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/26/2017 | 8591 | SHORT FORM COMPLAINT - TERRY GRAY by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/26/2017) |
| 10/27/2017 | 8592 | SHORT FORM COMPLAINT-Akbar Gbajabiamila by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8593 | SHORT FORM COMPLAINT-John Janata by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |

| 10/27/2017 | 8594 | SHORT FORM COMPLAINT-Damien Jeffries by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8595 | SHORT FORM COMPLAINT-George S. King by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8596 | SHORT FORM COMPLAINT-Paul J. Lane, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8597 | SHORT FORM COMPLAINT-Zechariah Lord, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8598 | SHORT FORM COMPLAINT-David E. Lucas, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8599 | SHORT FORM COMPLAINT-Alonzo Mayes by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8600 | SHORT FORM COMPLAINT-Ira R. Matthews by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8601 | SHORT FORM COMPLAINT-Kenneth McClendon by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8602 | SHORT FORM COMPLAINT-Derrell Mitchell by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8603 | SHORT FORM COMPLAINT-Signor Mobley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8604 | SHORT FORM COMPLAINT-Byron Morris by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8605 | SHORT FORM COMPLAINT-Leon Calvin Murray by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8606 | SHORT FORM COMPLAINT-McDonald Oden by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8607 | SHORT FORM COMPLAINT-Chris Oldham by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8608 | SHORT FORM COMPLAINT-Loren Owens by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8609 | SHORT FORM COMPLAINT-Morris Owens by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8610 | SHORT FORM COMPLAINT-Richard H. Palmer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8611 | SHORT FORM COMPLAINT-Christopher Penn by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8612 | SHORT FORM COMPLAINT-Antonio Perkins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8613 | SHORT FORM COMPLAINT-Myron Pottios by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |

| 10/27/2017 | 8614 | SHORT FORM COMPLAINT-Gregory D. Pruitt by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8615 | SHORT FORM COMPLAINT-Terry Ray by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8616 | SHORT FORM COMPLAINT-Melvin Renfro by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8617 | SHORT FORM COMPLAINT-Gloster Richardson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8618 | SHORT FORM COMPLAINT-Randy Robbins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8619 | SHORT FORM COMPLAINT-Bernard H. Robertson, III by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8620 | SHORT FORM COMPLAINT-Kendrick D. Rogers by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8621 | SHORT FORM COMPLAINT-Clarence Sanders by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8622 | SHORT FORM COMPLAINT-Richard Schafrath by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8623 | SHORT FORM COMPLAINT-Michael Schneck by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8624 | SHORT FORM COMPLAINT-Curtis Shearer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8625 | SHORT FORM COMPLAINT-Franky Smith by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8626 | SHORT FORM COMPLAINT-John H. Smith by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8627 | SHORT FORM COMPLAINT-James P. Stewart by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8628 | SHORT FORM COMPLAINT-Ralph W. Stockemer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8629 | SHORT FORM COMPLAINT-Tyronne Stowe by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8630 | SHORT FORM COMPLAINT-Michael Strachan by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8631 | SHORT FORM COMPLAINT-Eugene Taylor by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8632 | SHORT FORM COMPLAINT-Anthony Thomas by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8633 | SHORT FORM COMPLAINT-Stephen D. Towle by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |

| 10/27/2017 | 8634 | SHORT FORM COMPLAINT-Odessa Turner by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8635 | SHORT FORM COMPLAINT-William Ward Walsh by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8636 | SHORT FORM COMPLAINT-Russell White by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8637 | SHORT FORM COMPLAINT-Edmund Scott Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8638 | SHORT FORM COMPLAINT-Donald Wilson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8639 | SHORT FORM COMPLAINT-Quincy Wilson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8640 | SHORT FORM COMPLAINT-Darryl Wren by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8641 | SHORT FORM COMPLAINT-Torrey Wright by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8642 | SHORT FORM COMPLAINT-Emanuel Zanders by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8643 | Short Form Complaint-Michael R Baldassin and Mary Baldassin by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8644 | Short Form Complaint-Tony Bouie and Allison Bouie by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8645 | Short Form Complaint-Larry Edwards by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8646 | Short Form Complaint-Melvin Hoover by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8647 | Short Form Complaint-Marvin Mattox by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8648 | Short Form Complaint-Michael W. McKibben and Randi McKibben by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8649 | Short Form Complaint-Bruce McNorton by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8650 | Short Form Complaint-Joseph Sweet and M. Storme Sweet by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8651 | Short Form Complaint-Greg Turner by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8652 | SHORT FORM COMPLAINT-John Beasley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8653 | Declaration *of Craig R. Mitnick* by PLAINTIFF(S). (Attachments: # 1 Exhibit NFLAA BOD Declaration, # 2 Exhibit CRM Billing part 1, # 3 Exhibit CRM Billing Part 2, # 4 Exhibit CRM Billing Part 3, # 5 Exhibit Retired player quotes, # 6 Exhibit Final approval document, # 7 Exhibit photographs, # 8 Exhibit photographs, # 9 Exhibit |

**-548-**

| | | |
|---|---|---|
| | | Super Bowl, # <u>10</u> Exhibit Hall of Fame, # <u>11</u> Exhibit Photographs, # <u>12</u> Exhibit Photographs, # <u>13</u> Exhibit Photographs, # <u>14</u> Exhibit Declaration of Tina Williams, # <u>15</u> Exhibit NFLAA Conference calls, # <u>16</u> Exhibit NFLPA Statement, # <u>17</u> Exhibit Declaration Pisarcik, # <u>18</u> Exhibit Plasyer Injury)(MITNICK, CRAIG) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8654</u> | Short Form Complaint-Delvin Williams, Jr. by PLAINTIFF(S). (SHIPP, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8655</u> | SHORT FORM COMPLAINT-Jeffrey Blackshear by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8656</u> | SHORT FORM COMPLAINT-Carlton Brewster by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8657</u> | SHORT FORM COMPLAINT-Joseph Campbell by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8658</u> | SHORT FORM COMPLAINT-Fred Cook by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8659</u> | SHORT FORM COMPLAINT-Corey V. Croom by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8660</u> | SHORT FORM COMPLAINT-Patrick Cunningham by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8661</u> | SHORT FORM COMPLAINT-Timothy Daniel by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8662</u> | SHORT FORM COMPLAINT-Ennis R. Davis, II by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8663</u> | SHORT FORM COMPLAINT-Michael R. Davis by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8664</u> | SHORT FORM COMPLAINT-Arnold Fields by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8665</u> | SHORT FORM COMPLAINT-Darryl D. Ford by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8666</u> | SHORT FORM COMPLAINT-Larry Foster by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8667</u> | SHORT FORM COMPLAINT-Donald Frank by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8668</u> | SHORT FORM COMPLAINT-David Gibson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8669</u> | SHORT FORM COMPLAINT-Jessie Lee Hester by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8670</u> | SHORT FORM COMPLAINT-Othello Henderson III by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | <u>8671</u> | SHORT FORM COMPLAINT-Isaac Hagins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |

| 10/27/2017 | 8672 | SHORT FORM COMPLAINT-Dallas Hickman by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8673 | SHORT FORM COMPLAINT-Eddie Lee Ivery by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8674 | SHORT FORM COMPLAINT-William Jaco by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8675 | SHORT FORM COMPLAINT-Dirk Johnson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8676 | SHORT FORM COMPLAINT-John Kaiser by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8677 | SHORT FORM COMPLAINT-James L. Marshall by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8678 | SHORT FORM COMPLAINT-Erik Norgard by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8679 | SHORT FORM COMPLAINT-Marvin D. Owens by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8680 | SHORT FORM COMPLAINT-Ricky D. Parker by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8681 | SHORT FORM COMPLAINT-Marion Todd Peat by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8682 | SHORT FORM COMPLAINT-Charles Pharms III by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8683 | SHORT FORM COMPLAINT-Damon Pieri by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8684 | SHORT FORM COMPLAINT-Juan A. Roque by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8685 | SHORT FORM COMPLAINT-Willard Scissum by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8686 | SHORT FORM COMPLAINT-Jason Shelley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8687 | SHORT FORM COMPLAINT-Darrell Trent Smith by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8688 | SHORT FORM COMPLAINT-Omar D. Smith by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8689 | SHORT FORM COMPLAINT-Alponso Taylor by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8690 | SHORT FORM COMPLAINT-Derek G. Ware by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8691 | SHORT FORM COMPLAINT-Kenny Watson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |

| 10/27/2017 | 8692 | SHORT FORM COMPLAINT-Kenneth Wheaton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8693 | SHORT FORM COMPLAINT-David Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8694 | SHORT FORM COMPLAINT-Sirmawn Wilson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8695 | SHORT FORM COMPLAINT-Scott Zimmerman by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8696 | SHORT FORM COMPLAINT-Eric Zomalt by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8697 | Declaration *in Opposition to Proposed Allocation of Common Benefit Atty Fees* by PLAINTIFF(S). (HAGEN, BRUCE) (Entered: 10/27/2017) |
| 10/27/2017 | 8698 | Short Form Complaint-Jeffrey S. Baker and Patricia Baker by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8699 | Short Form Complaint-Sean Brewer and Jaimi Brewer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8700 | Short Form Complaint-Clifford Brown by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8701 | Declaration */Memorandum: Co-Lead Class Counsel Anapol Weiss's Proposed Alternative Methodology for the Allocation of Common Benefit Attorneys' Fees* by ANAPOL WEISS, P.C.. (ALFANO, GAETAN) (Entered: 10/27/2017) |
| 10/27/2017 | 8702 | Short Form Complaint-Jonathan Brown and Diniki Brown by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8703 | Short Form Complaint-Michael D. Carter and Sandra Carter by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8704 | Short Form Complaint-Raymond Chester by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8705 | Short Form Complaint-Darren Comeaux and Karen Comeaux by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8706 | Short Form Complaint-Aaron Cox by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8707 | Short Form Complaint-Claude Crabb and Carolyn Crabb by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8708 | Short Form Complaint-Aaron Emanuel by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8709 | Declaration *of Gene Locks, Class Counsel, in Response to Declaration of Christopher A. Seeger Regarding Proposed Allocation of Common Benefit Fees* by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (LANGFITT, DAVID) (Entered: 10/27/2017) |
| 10/27/2017 | 8710 | Short Form Complaint-Delton Hall by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |

**-551-**

| 10/27/2017 | 8711 | RESPONSE in Opposition re 8465 MOTION for Leave to File Excess Pages filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 10/27/2017) |
| --- | --- | --- |
| 10/27/2017 | 8712 | Short Form Complaint-Lynell Hamilton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8713 | Short Form Complaint-Gregory Hawthorne by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8714 | Short Form Complaint-Thomas Hayes, Jr. and Sallie Hayes by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8715 | Short Form Complaint-Richard Himes and Sylvia Himes by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8716 | Short Form Complaint-Leroy Jones and Sherry Jones by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8717 | Short Form Complaint-Kareem Kelly by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8718 | Short Form Complaint-Louis Lipps and Leah Lipps by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/27/2017) |
| 10/27/2017 | 8719 | Declaration *COUNTER- DECLARATION OF THOMAS V. GIRARDI IN RESPONSE TO THE DECLARATION OF CHRISTOPHER A. SEEGER IN SUPPORT OF PROPOSED ALLOCATION OF COMMON BENEFIT ATTORNEYS' FEES, PAYMENT OF COMMON BENEFIT EXPENSES, AND PAYMENT OF CASE CONTRIBUTION AWARDS TO CLASS REPRESENTATIVES* by PLAINTIFF(S). (Attachments: # 1 Exhibit "1")(DEVANON, NICOLE) (Entered: 10/27/2017) |
| 10/27/2017 | 8720 | Declaration *of Anthony Tarricone in Opposition to Co-Lead Counsel's Allocation of Common Benefit Attorneys' Fees and Reimbursement of Expenses* by PLAINTIFF(S). (Attachments: # 1 Exhibit Exhibit 1, # 2 Brief Brief in Opposition to Co-Lead Counsel's Allocation of Common Benefit Attorneys' Fees and Reimbursement of Expenses)(TARRICONE, ANTHONY) (Entered: 10/27/2017) |
| 10/27/2017 | 8721 | Declaration *of Michael L. McGlamry Responding in Opposition to Christopher A. Seeger's Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives* by PLAINTIFF(S). (MCGLAMRY, MICHAEL) (Entered: 10/27/2017) |
| 10/27/2017 | 8722 | Declaration *of Charles S. Zimmerman in Response to Proposed Allocation of Common Benefit Attorney's Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives* by PLAINTIFF(S). (ZIMMERMAN, CHARLES) (Entered: 10/27/2017) |
| 10/27/2017 | 8723 | RESPONSE TO DECLARATION OF CHRISTOPHER A. SEEGER IN SUPPORT OF PROPOSED ALLOCATION OF COMMON BENEFIT ATTORNEYS' FEES, PAYMENT OF COMMON BENEFIT EXPENSES, AND PAYMENT OF CASE CONTRIBUTION AWARDS TO CLASS REPRESENTATIVE AND MOTION TO PRIORITIZE AND SEPERATE VITALLY NEEDED PLAYER COMPENSATION PAYMENTS FROM ANY AND ALL ATTORNEYS' FEES AWARDS OR REQUESTS AND A REQUEST THAT THE COURT APPOINT A SPECIAL MASTER TO DEAL WITH AND DETERMINE THE VALIDITY AND APPROPRIATE AMOUNTS OF CLAIMS ATTORNEYS' FEES AS TO MORE FULLY ASSIST THE COURT'S GOAL OF MAKING PLAYER PAYMENTS A |

| | | |
|---|---|---|
| | | REALITY RATHER THAN UNFULFILLED PROMISES filed by PLAINTIFF(S). (BARNES, HEATHER) Modified on 10/30/2017 (ems). (Entered: 10/27/2017) |
| 10/27/2017 | 8724 | Declaration *of Derriel C. McCorvey in Support of McCorvey Law, LLC's Opposition to Christopher Seeger's Proposed Allocation of Common Benefit Attorneys' Fees* by PLAINTIFF(S). (MCCORVEY, DERRIEL) (Entered: 10/27/2017) |
| 10/27/2017 | 8725 | Declaration *of Lance H. Lubel in Opposition to Christopher Seeger's Proposed Allocation of Common Benefit Attorneys' Fees* by PLAINTIFF(S). (Attachments: # 1 Exhibit A)(LUBEL, LANCE) (Entered: 10/27/2017) |
| 10/27/2017 | 8726 | RESPONSE in Support re 7070 MOTION for Attorney Fees *and in Opposition to Declaration of Co-Lead Class Counsel in Support of Proposed Allocation of Common Benefit Attorneys' Fees* filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, JEFF ROHRER. (MOLO, STEVEN) (Entered: 10/27/2017) |
| 10/27/2017 | 8727 | Declaration *of James T. Capretz in Response to Proposed Allocation of Common Benefit Attorney's Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives* by PLAINTIFF(S). (CAPRETZ, JAMES) (Entered: 10/27/2017) |
| 10/27/2017 | 8728 | Declaration *of Steven C. Marks in Response to Co-Lead Counsel's Proposed Allocation of Common Benefit Attorneys' Fees and Expenses* by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 10/27/2017) |
| 10/28/2017 | 8729 | NOTICE by PLAINTIFF(S) re 8723 MOTION (ST. JACQUES, MICHAEL) (Entered: 10/28/2017) |
| 10/30/2017 | 8730 | SHORT FORM COMPLAINT-Steve Baack by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8731 | SHORT FORM COMPLAINT-Elmer F. Bailey by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8732 | SHORT FORM COMPLAINT-Phillip L. Bobo by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8733 | SHORT FORM COMPLAINT-Robert Lee Brown and Dawn M. Brown by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8734 | SHORT FORM COMPLAINT-Robrt P. Brunet and Lydia A. Brunet by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8735 | SHORT FORM COMPLAINT-Lindsey Chapman by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8736 | SHORT FORM COMPLAINT-Eric F. Curry and Wilatreal Curry by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8737 | SHORT FORM COMPLAINT-George J. Curry, Jr. and Dawn M. Curry by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8738 | SHORT FORM COMPLAINT-John Ebersole and Janice Ebersole by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8739 | SHORT FORM COMPLAINT-Bradford J. Ford and Dana Ford by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8740 | SHORT FORM COMPLAINT-Mark P. Garalczyk by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |

| 10/30/2017 | 8741 | SHORT FORM COMPLAINT-Hugh Green and Guy Green by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8742 | SHORT FORM COMPLAINT-Ascotti Fields by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8743 | SHORT FORM COMPLAINT-William Hardison and Arnell Hardison by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8744 | SHORT FORM COMPLAINT-Frederick R. Hayes by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8745 | SHORT FORM COMPLAINT-Floyd Hodge by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8746 | SHORT FORM COMPLAINT-Kenneth Jenkins and Amy Jenkins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8747 | SHORT FORM COMPLAINT-James C. Jensen by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8748 | SHORT FORM COMPLAINT-Akili Johnson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8749 | SHORT FORM COMPLAINT-Markeysia Jones and Sylvia R. Jones by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8750 | SHORT FORM COMPLAINT-Paul Laaveg and Nancy Laaveg by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8751 | SHORT FORM COMPLAINT-Keith Lee by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8752 | SHORT FORM COMPLAINT-Van Malone and Nedra Malone by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8753 | SHORT FORM COMPLAINT-Brent McClanahan and Diane M. McClanahan by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8754 | SHORT FORM COMPLAINT-Reginald McKenzie by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8755 | SHORT FORM COMPLAINT-Rodney McSwain by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8756 | SHORT FORM COMPLAINT-James A. Monk and Desiree B. Monk by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8757 | SHORT FORM COMPLAINT-Stanley D. Morgan and Rholedia Morgan by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8758 | SHORT FORM COMPLAINT-Jeffrey McIntyre by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8759 | SHORT FORM COMPLAINT-Roosevelt Potts by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8760 | SHORT FORM COMPLAINT-William Roberts by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |

| 10/30/2017 | 8761 | SHORT FORM COMPLAINT-Council Rudolph, Jr. and Anne Rudolph by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8762 | SHORT FORM COMPLAINT-Reynard Rutherford by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8763 | SHORT FORM COMPLAINT-Rick Sanford and Allison Sanford by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8764 | SHORT FORM COMPLAINT-Sanders Shiver and Penny Shiver by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8765 | SHORT FORM COMPLAINT-Maurice Spencer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8766 | SHORT FORM COMPLAINT-Tony Stargell by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8767 | SHORT FORM COMPLAINT-Rich Stephens by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8768 | SHORT FORM COMPLAINT-Dwight Stone and Jennifer Stone by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8769 | SHORT FORM COMPLAINT-Rodney Thomas and Jean Thomas by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8770 | SHORT FORM COMPLAINT-Alexander Woody Thompson and Stacey Thompson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8771 | SHORT FORM COMPLAINT-Maurice Tyler and Penelope Tyler by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8772 | SHORT FORM COMPLAINT-Jeffrey L. Walker by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8773 | Short Form Complaint-Darrol Ray and Diane Ray by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8774 | Short Form Complaint-Daniel L. Reece, Sr. and Kimberly Reece by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8775 | Short Form Complaint-Michael S. Solwold by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8776 | Short Form Complaint-Gregory Tolver, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8777 | Short Form Complaint-Marcus Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/30/2017 | 8778 | Short Form Complaint-Theodore Wheeler III and Sharon Wheeler by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/30/2017) |
| 10/31/2017 | 8779 | Short Form Complaint-Vince Albritton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8780 | Short Form Complaint-Fred Anderson and Darla Anderson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |

| 10/31/2017 | 8781 | Short Form Complaint-Keith Biggers and Natasha Biggers by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8782 | Short Form Complaint-Ahmad Carroll by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8783 | Short Form Complaint-Duane Clemons by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8784 | Short Form Complaint-Joe DeLamielleure by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8785 | Short Form Complaint-Bobby R. Duckworth by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8786 | Short Form Complaint-Alex Espinoza by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8787 | Short Form Complaint-Howard Fest and Mary B. Fest by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8788 | Short Form Complaint-Jon Giesler and Marybeth Giesler by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8789 | Short Form Complaint-Derrel Gofourth and Milissa Gofourth by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8790 | Short Form Complaint-Malcolm Hamilton by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8791 | Short Form Complaint-David H. Humm by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8792 | Short Form Complaint-Jabari Jackson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8793 | Short Form Complaint-Noel Jenke by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8794 | Short Form Complaint-Chad Lucas by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8795 | Short Form Complaint-Henry Dejhown Mandley by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8796 | Short Form Complaint-Marvin Marshall and LaScotia Marshall by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8797 | Short Form Complaint-Richard M. Palmer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8798 | Short Form Complaint-John M. Pitts and Joyce Pitts by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8799 | Short Form Complaint-Daniel P. Rains and Deborah Rains by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8800 | Short Form Complaint-Randy W. Rich and Cathy Rich by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |

| 10/31/2017 | 8801 | Short Form Complaint-Melvin Bo Robinson and Nelda Robinson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8802 | Short Form Complaint-Tyrone Rodgers by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8803 | Short Form Complaint-Charles Stackhouse, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8804 | Short Form Complaint-Arthur A. Strozier, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8805 | Short Form Complaint-Arthur W. Thoms, Jr. and Darlene Thoms by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8806 | Short Form Complaint-James H. Williams and Crystal Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8807 | Short Form Complaint-John A. Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8808 | Short Form Complaint-Edward Robert Zeman, Sr. and Cathy Zeman by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8809 | Short Form Complaint-Thomas Lance Rentzel by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8810 | Short Form Complaint-Oliver Williams, Jr. and Kimberly Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/31/2017) |
| 10/31/2017 | 8811 | SHORT FORM COMPLAINT - JEFF GRIFFIN by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8812 | SHORT FORM COMPLAINT - ERIC GULIFORD by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8813 | SHORT FORM COMPLAINT - JERMAINE HAMPTON by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8814 | SHORT FORM COMPLAINT - ELROY HARRIS, JR. by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8815 | SHORT FORM COMPLAINT - DARRELL F. HILL, II by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8816 | SHORT FORM COMPLAINT - J.D. HILL by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8817 | SHORT FORM COMPLAINT - KAHLIL S. HILL by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8818 | PETITION TO ESTABLISH ATTORNEY'S LIEN filed by PLAINTIFF(S).. (FARRISE, SIMONA) Modified on 11/1/2017 (ems). (Entered: 10/31/2017) |
| 10/31/2017 | 8819 | SHORT FORM COMPLAINT - MARCUS HILL by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8820 | SHORT FORM COMPLAINT - JOSEPH HOLMES by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |

| 10/31/2017 | 8821 | SHORT FORM COMPLAINT - TAMBURO HOPKINS by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8822 | SHORT FORM COMPLAINT - ARTIS HOUSTON by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8823 | SHORT FORM COMPLAINT - DAVID A. HUGHES, III by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8824 | SHORT FORM COMPLAINT - ROBERT KEUCHENBERG by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8825 | RESPONSE in Opposition re 8470 MOTION for Order *Directing the Claims Administrator to Withhold Any Portions of Class Member Monetary Awards Purportedly Owed to Certain Third-Party Lenders and Claims Services Providers, and Direct Disclosure to the Claims Administrator of Existen Legacy Pro Sports, LLC and Brandon Siler's Response in Opposition to Co-Lead Class Counsel's Requested Relief in its Motion Filed on October 23, 2017 filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A)(OSTROW, JEFFREY) (Entered: 10/31/2017)* |
| 10/31/2017 | 8826 | SHORT FORM COMPLAINT - TERNA NANDE by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8827 | SHORT FORM COMPLAINT - IFEANYI OHALETE by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8828 | SHORT FORM COMPLAINT - FRANKLIN OLIVER by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8829 | SHORT FORM COMPLAINT - TRENTON D. POLLARD by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8830 | SHORT FORM COMPLAINT - THEODORE P. POPSON by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8831 | SHORT FORM COMPLAINT - ROBERT REED by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8832 | SHORT FORM COMPLAINT - RUEBEN J. RILEY, JR. by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8833 | SHORT FORM COMPLAINT - OLIVER ROSS by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8834 | SHORT FORM COMPLAINT - RAYMOND ROWE by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8835 | SHORT FORM COMPLAINT - GEORGE SARTIN by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8836 | SHORT FORM COMPLAINT - ROBERT E. SCHOBEL by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8837 | SHORT FORM COMPLAINT - MARK A. THOMAS by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8838 | SHORT FORM COMPLAINT - KYLE J. WACHHOLTZ by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |

| 10/31/2017 | 8839 | SHORT FORM COMPLAINT - DAMEN K. WHEELER, SR. by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8840 | SHORT FORM COMPLAINT - PAUL A. WIGGINS. by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8841 | SHORT FORM COMPLAINT - SAMUEL CHARLES WILEY by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8842 | SHORT FORM COMPLAINT - MARK WILSON by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8843 | SHORT FORM COMPLAINT - GEORGE WRIGHSTER, III by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8844 | SHORT FORM COMPLAINT - DESTRY WRIGHT by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8845 | SHORT FORM COMPLAINT - MAXIMMILLIAN J. ZENDEJAS by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 10/31/2017 | 8846 | SHORT FORM COMPLAINT - EDWARD R. ZEMAN, JR., II by PLAINTIFF(S). (JACOBS, DIANA) (Entered: 10/31/2017) |
| 11/01/2017 | 8847 | Short Form Complaint - Rufus Alexander by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8848 | Short Form Complaint - Brian W. Alford by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8849 | Short Form Complaint - James D. Allen by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8850 | Short Form Complaint - Thomas Bailey and Jacqueline Bailey by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8851 | Short Form Complaint - Walter N. Bowyer, Jr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8852 | Short Form Complaint - Sean L. Boyd by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8853 | Short Form Complaint - John A. Burch, III by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8854 | Short Form Complaint - Jerametrius Butler, Sr. by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8855 | Short Form Complaint - Brian D. Cabral and Rebecca Cabral by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8856 | Short Form Complaint - Ron Collins by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8857 | Short Form Complaint - James Cribbs by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8858 | Short Form Complaint - Robert J. Cryder and Lisa Cryder by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |

| 11/01/2017 | 8859 | Short Form Complaint - Ronald L. Dickerson, Jr. and Kendreah Dickerson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
|---|---|---|
| 11/01/2017 | 8860 | Short Form Complaint - Troy Davis by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8861 | Short Form Complaint - Bobby Joe Edmonds by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8862 | Short Form Complaint - Kolas D. Elion and Shannon Elion by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8863 | Short Form Complaint - John Blake Galvin and Kerri Galvin by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8864 | Short Form Complaint - James Herndon and Cassie Herndon by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8865 | Short Form Complaint - Keenan Howry by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8866 | Short Form Complaint - Earnest Hunter and Kim Hunter by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8867 | Short Form Complaint - Lynn James by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8868 | Short Form Complaint - Alai Kalaniuvalu and Renee Kalaniuvalu by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8869 | Short Form Complaint - Mark McCants by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8870 | Short Form Complaint - Anthony L. McDowell by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8871 | Short Form Complaint - Earthland Moreland by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8872 | Short Form Complaint - Johnny Williams by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8873 | Short Form Complaint - Glenn Holt by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/01/2017) |
| 11/01/2017 | 8874 | Shaun Gayle's Short Form Complaint Against Riddell Defendants by PLAINTIFF(S). (WINTERS, JOHN) (Entered: 11/01/2017) |
| 11/01/2017 | 8875 | Raymond Anthony Brooks' Short Form Complaint Against Riddell Defendants by PLAINTIFF(S). (WINTERS, JOHN) (Entered: 11/01/2017) |
| 11/02/2017 | 8876 | Letter - IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION DATED OCTOBER 30, 2017, from COUNSEL, BRIAN A. BERKLEY... 11/2/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/02/2017) |
| 11/02/2017 | 8877 | ORDER - UPON CONSIDERATION OF REQUEST TO BE HEARD AT SEPTEMBER 19, 2017 HEARING AND MOTION FOR LEAVE OF COURT TO SUBMIT A SHORT STATEMENT OF INFORMATION AND EVIDENCE FOR THE HEARING DUE TO HURRICANE IRMA (ECF NO. 8375) IT IS ORDERED that THE REQUEST AND MOTION IS DENIED AS MOOT.. SIGNED BY |

**-560-**

| | | HONORABLE ANITA B. BRODY ON 11/2/2017.11/2/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/02/2017) |
|---|---|---|
| 11/02/2017 | 8878 | ORDER - UPON CONSIDERATION OF THE SEAU FAMILY'S MOTION FOR EXTENSION OF PAGE LIMITS (ECF NO. 8465), IT IS HEREBY ORDERED that THE PAGE LIMIT FOR THE SEAU FAMILY'S OPPOSITIONS TO THE NFL DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 8403 & 8404) IS EXTENDED TO TWENTY (20) PAGES EACH.SIGNED BY HONORABLE ANITA B. BRODY ON 11/2/2017.11/2/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/02/2017) |
| 11/02/2017 | 8879 | ORDER that THRIVEST SPECIALTY FUNDING, LLC IS DESIGNATED AS AN OBJECTOR WITH THE ABILITY TO RESPOND TO CO-LEAD CLASS COUNSEL'S MOTION TO (1) DIRECT CLAIMS ADMINISTRATOR TO WITHHOLD ANY PORTIONS OF CLASS MEMBER MONETARY AWARDS PURPORTEDLY OWED TO CERTAIN THIRD-PARTY LENERS AND CLAIMS SERVICES PROVIDERS, AND (2) DIRECT DISCLOSURE TO THE CLAIMS ADMINISTRATOR OF EXISTENCE OF CLASS MEMBER AGREEMENTS WITH ALL THIRD PARTIES (ECF NO. 8470). UPON CONSIDERATION OF THRIVEST'S REQUEST FOR AN EXTENSION OF TIME TO RESPOND (ECF NO. 8876), IT IS ORDERED THAT THE REQUEST IS GRANTED. ANY RESPONSE MUST BE FILED ON OR BEFORE NOVEMBER 16, 2017.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/2/2017. 11/2/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/02/2017) |
| 11/02/2017 | | Set/Reset Deadlines as to 8470 MOTION for Order *Directing the Claims Administrator to Withhold Any Portions of Class Member Monetary Awards Purportedly Owed to Certain Third-Party Lenders and Claims Services Providers, and Direct Disclosure to the Claims Administrator of Existen. RESPONSES DUE BY 11/16/2017. (mo, ) (Entered: 11/02/2017)* |
| 11/03/2017 | 8880 | NOTICE by PLAINTIFF(S) *Co-Lead Class Counsels Letter Request for Extension to File Omnibus Reply* (SEEGER, CHRISTOPHER) (Entered: 11/03/2017) |
| 11/03/2017 | 8881 | STATUS REPORT *Third Joint Status Report on the Implementation of the Settlement Program* by PLAINTIFF(S). (Attachments: # 1 Exhibit A - Declaration of Orran L. Brown, Sr., # 2 Exhibit B - Declaration of Matthew L. Garretson)(SEEGER, CHRISTOPHER) (Entered: 11/03/2017) |
| 11/03/2017 | 8882 | ORDER -UPON CONSIDERATION OF RETIRED NFL PLAYERS' MOTION TO DETERMINE PROPER ADMINISTRATION OF CLAIMS UNDER THE SETTLEMENT AGREEMENT (ECF NO. 8267), IT IS ORDERED that THE MOTION IS DENIED WITHOUT PREJUDICE TO RAISE THE ISSUE AT A LATER TIME. MOVANTS MUST PROCEED THROUGH THE CLAIMS ADMINISTRATION PROCESS,... MOVANTS' ATTEMPT TO CIRCUMVENT THOSE PROCESSES BY DIRECTLY PETITIONING THE COURT IS IMPROPER.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/2/2017.11/3/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/03/2017) |
| 11/06/2017 | 8883 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) **(COPY SENT TO CHAMBERS FOR APPROVAL)** (KARP, BRAD) Modified on 11/7/2017 (ems). (Entered: 11/06/2017) |
| 11/06/2017 | 8884 | ORDER - AFTER CONSIDERING NONPARTIES CASE STRATEGIES GROUP ("CSG"), IT STRATEGIES GROUP, LIBERTY SETTLEMENT SOLUTIONS, LLC, LIBERTY CONTINGENT RECEIVABLES, LLC, LIBERTY SETTLEMENT |

|  |  | FUNDING, JMMHCS HOLDINGS, LLC, CRAIG SIENEMA, JAMES MCCABE, AND MARC HERMES MOTION FOR LEAVE TO FILE SUR-REPLY (ECF NO. 8355), IT IS ORDERED that NONPARTIES' MOTION IS DENIED AS MOOT.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/6/2017.11/6/2017 ENTERED AND COPIES VIA ECF(mo, ) Modified on 11/6/2017 (mo, ). (mo, ). (Entered: 11/06/2017) |
|---|---|---|
| 11/06/2017 | 8885 | Short Form Complaint - Michael Webster (Deceased) (Sunny Jani, Adm.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/06/2017) |
| 11/06/2017 | 8886 | Short Form Complaint - Terry Long (Deceased) (Dennis F. Cline, Adm.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/06/2017) |
| 11/06/2017 | 8887 | Short Form Complaint - Andrew Hill (Deceased) (Debra Hines, Adm.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/06/2017) |
| 11/06/2017 | 8888 | Short Form Complaint - Justin C. Strzelczyk (Deceased) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/06/2017) |
| 11/06/2017 | 8889 | Short Form Complaint - Douglas M. Long (Deceased) (Kristie Long, Adm.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/06/2017) |
| 11/06/2017 | 8890 | Short Form Complaint - J. Douglas Cunningham (Allen Cunningham, Executrix) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/06/2017) |
| 11/06/2017 | 8891 | Short Form Complaint - Charles W. Lamson (Deceased) (Madeline Lamson, Personal Rep.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/06/2017) |
| 11/06/2017 | 8892 | Short Form Complaint - Rogers L. Finnie (Deceased) (Willie Jones, Personal Rep.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/06/2017) |
| 11/06/2017 | 8893 | Short Form Complaint - Andre M. Waters (Deceased) (Tina Ricks, Personal Rep.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/06/2017) |
| 11/06/2017 | 8894 | Short Form Complaint - James P. VanWagner (Deceased) (Kelley Van Wagner, Personal Rep.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/06/2017) |
| 11/06/2017 | 8895 | Short Form Complaint - Robert Suci (Deceased) (Jon B. Munger, Personal Rep.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/06/2017) |
| 11/06/2017 | 8896 | Short Form Complaint - David A. Kocourek (Deceased) (Mary Lee Kocourek, Personal Rep.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/06/2017) |
| 11/06/2017 | 8897 | Short Form Complaint - Frederick A. McNeill (Deceased) (Tia McNeill, Adm.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/06/2017) |
| 11/06/2017 | 8898 | Short Form Complaint - Bruce R. Walker, Sr. (Deceased) (Vanisha Walker, Adm.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/06/2017) |
| 11/06/2017 | 8899 | STIPULATION AND ORDER - THIS STIPULATION AND AGREEMENT, DATED NOVEMBER 6TH, 2017, IS MADE AND ENTERED INTO BY AND AMONG THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC (THE "NFL PARTIES"), AND CLASS COUNSEL (COLLECTIVELY, THE "PARTIES")... IT IS SO ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUEST SUBMITTED BY ROBERT LURTESEMA IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING ROBERT LURTSEMA. APPROVED BY THE COURT:. SIGNED BY HONORABLE ANITA |

| | | B. BRODY ON 11/6/2017. 11/6/2017 ENTERED AND COPIES VIA ECF.(mo, ) Modified on 11/7/2017 (mo, ). (Entered: 11/06/2017) |
|---|---|---|
| 11/07/2017 | 8900 | ORDER that ANY OMNIBUS REPLY BY CO-LEAD CLASS COUNSEL TO THE COUNTER-DECLARATIONS that WERE FILED IN RESPONSE TO CO-LEAD CLASS COUNSEL'S PROPOSED ALLOCATION OF COMMON BENEFIT ATTORNEYS' FEES MUST BE SUBMITTED ON OR BEFORE NOVEMBER 17, 2017.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/7/2017. 11/7/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/07/2017) |
| 11/08/2017 | 8901 | Short Form Complaint - James W. Elrod (Deceased) (Diana Marlene Elrod, Personal Rep.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/08/2017) |
| 11/08/2017 | 8902 | Short Form Complaint - Peter W. Perreault (Deceased) (Rachel Roth, Personal Rep. and Sandra Klemond) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/08/2017) |
| 11/08/2017 | 8903 | Short Form Complaint - Willie Richardson (Deceased) (Earline Richardson, Personal Rep.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/08/2017) |
| 11/08/2017 | 8904 | Short Form Complaint - John Henry Ward (Deceased) (Gayle Ward, Personal Rep.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/08/2017) |
| 11/08/2017 | 8905 | Short Form Complaint - David L. Grayson, Sr. (Deceased) (David L. Grayson, Jr. Personal Rep.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/08/2017) |
| 11/08/2017 | 8906 | Short Form Complaint - David McMillan, III (Deceased) (Sherry McMillan, Personal Rep.) by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/08/2017) |
| 11/08/2017 | 8907 | ORDER - UPON CONSIDERATION OF HOWARD & ASSOCIATES, P.A.'S ("HOWARD'S") EMERGENCY MOTION FOR AN EXTENSION OF TIME... IT IS ORDERED that THE MOTION IS DENIED WITHOUT PREJUDICE TO RAISE THE ISSUE AT A LATER TIME. THE MOTION PREMATURELY SEEKS INTERVENTION FROM THE COURT...... SIGNED BY HONORABLE ANITA B. BRODY ON 11/7/2017. 11/8/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/08/2017) |
| 11/08/2017 | 8908 | NOTICE of Hearing:ON NOVEMBER 13, 2017 AT 2:00 P.M., THE COURT WILL HOLD A CONFERENCE IN CHAMBERS WITH REPRESENTATIVES OF THE NFL, CLASS COUNSEL, AND THE SPECIAL MASTERS. AT THE CONFERENCE, THE COURT WILL ADDRESS ANY ISSUES REGARDING THE IMPLEMENTATION OF THE SETTLEMENT AGREEMENT.11/8/2017 ENTERED AND COPIES SENT VIA ECF.(mo, ) (Entered: 11/08/2017) |
| 11/08/2017 | 8909 | AMENDED NOTICE of Hearing:ON NOVEMBER 13, 2017 AT 2:00 P.M., THE COURT WILL HOLD A CONFERENCE IN CHAMBERS WITH REPRESENTATIVES OF THE NFL, CLASS COUNSEL,-1(footnote) AND THE SPECIAL MASTERS. AT THE CONFERENCE, THE COURT WILL ADDRESS ANY ISSUES REGARDING THE IMPLEMENTATION OF THE SETTLEMENT AGREEMENT.FOOTNOTE- 1-CLASS COUNSEL MUST BE REPRESENTED SOLEY BY CO-LEAD CLASS COUNSEL CHRIS SEEGER, ESQ.11/8/2017 ENTERED AND COPIES SENT VIA ECF.(mo, ) (Entered: 11/08/2017) |
| 11/08/2017 | 8910 | RESPONSE to Motion re 8470 MOTION for Order *Directing the Claims Administrator to Withhold Any Portions of Class Member Monetary Awards Purportedly Owed to Certain Third-Party Lenders and Claims Services Providers, and Direct Disclosure to the Claims Administrator of Existen* filed by RONI DERSOVITZ, |

| | | *RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, RD LEGAL FUNDING, LLC. (ROTH, MICHAEL) (Entered: 11/08/2017)* |
| --- | --- | --- |
| 11/08/2017 | 8911 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 11/08/2017) |
| 11/09/2017 | 8912 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Attorney's Lien and Petition to Establish Attorney's Lien and Notice of Appearance for Kenyon Rasheed and Traci Wiedenfeld-Rasheed* (ZIMMERMAN, CHARLES) (Entered: 11/09/2017) |
| 11/09/2017 | 8913 | NOTICE by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC / *Letter re Settlement Agreement* (BIRENBOIM, BRUCE) (Entered: 11/09/2017) |
| 11/09/2017 | 8914 | RESPONSE in Opposition re 8723 MOTION *Co-Lead Class Counsel's Memorandum in Opposition to Neurocognitive Football Lawyers, PLLC's and the Yerrid Law Firm's "Motion to Prioritize"* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 11/09/2017) |
| 11/10/2017 | 8915 | NOTICE by PLAINTIFF(S) *Letter from Gene Locks re Settlement Implementation* (LANGFITT, DAVID) Modified on 11/14/2017 (ems). (Entered: 11/10/2017) |
| 11/10/2017 | 8916 | NOTICE by PLAINTIFF(S) *Letter to the Honorable Anita B. Brody Re: November 13, 2017 Chambers Conference* (ZIMMERMAN, CHARLES) (Entered: 11/10/2017) |
| 11/10/2017 | 8917 | NOTICE by PLAINTIFF(S) (MITNICK, CRAIG) (Entered: 11/10/2017) |
| 11/10/2017 | 8918 | STIPULATION and *[PROPOSED] ORDER* by PLAINTIFF(S). **(COPY SENT TO CHAMBERS FOR APPROVAL)** (FLEISHMAN, WENDY) Modified on 11/14/2017 (ems). (Entered: 11/10/2017) |
| 11/10/2017 | 8919 | NOTICE by RONI DERSOVITZ, RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, RD LEGAL FUNDING, LLC re 8913 Notice (Other) *Letter to the Honorable Anita B. Brody in Response to NFL Parties' Letter re Settlement Agreement***(FILED IN ERROR, INCOMPLETE PDF, ATTY REFILED, SEE DOCUMENT 8920 FOR CORRECT FILING)** (ROTH, MICHAEL) Modified on 11/13/2017 (tjd). (Entered: 11/10/2017) |
| 11/10/2017 | 8920 | Letter to Judge Brody dated November 10, 2017 by RONI DERSOVITZ, RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, RD LEGAL FUNDING, LLC re 8913 Notice (Other) *Letter to the Honorable Anita B. Brody in Response to NFL Parties' Letter re Settlement Agreement*. (ROTH, MICHAEL) Modified on 11/13/2017 (tjd). (Entered: 11/10/2017) |
| 11/13/2017 | 8921 | NOTICE by PLAINTIFF(S) *for Attorney Fees regarding Henry Lusk* (Attachments: # 1 Exhibit Petition to Establish Attorney's Fees Lien (as to Henry Lusk))(CLOUD, IAN) (Entered: 11/13/2017) |
| 11/13/2017 | 8922 | NOTICE by PLAINTIFF(S) *for Attorney's Fees in regards to Antonio Pittman* (Attachments: # 1 Exhibit Petition to Establish Attorney's Fees Lien (as to Antonio Pittman))(CLOUD, IAN) (Entered: 11/13/2017) |
| 11/13/2017 | 8923 | MOTION for Reconsideration re 8882 Order on Motion for Relief,, filed by PLAINTIFF(S). Certificate of Service. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(ST. JACQUES, MICHAEL) Modified on 11/14/2017 (ems). (Entered: 11/13/2017) |
| 11/13/2017 | 8924 | NOTICE by PLAINTIFF(S) -- *Letter to Hon. Brody re submission of Second Amended Complaint by Federal Express* (FLEISHMAN, WENDY) (Entered: 11/13/2017) |

| 11/13/2017 | 8927 | SECOND AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT AGAINST RIDDELL DEFENDANTS filed by PLAINTIFF(S). Certificate of Service, Exhibit. (ems) (Entered: 11/14/2017) |
|---|---|---|
| 11/14/2017 | 8925 | APPLICATION/PETITION *FOR APPOINTMENT OF REPRESENTATIVE CLAIMANT* by PLAINTIFF(S). (Attachments: # 1 Text of Proposed Order) (FLEISHMAN, WENDY) (Entered: 11/14/2017) |
| 11/14/2017 | 8926 | ◀))) Audio File 11/13/2017 4:37, regarding CONFERENCE held on 11/13/2017, before HONORABLE ANITA B. BRODY (cjh, ) (Entered: 11/14/2017) |
| 11/14/2017 | 8938 | MOTION FOR PROTECTIVE ORDER REGARDING CO-LEAD CLASS COUNSEL'S REQUEST FOR THE PRODUCTION OF DOCUMENTS AND INTERROGATORIES filed by BRIAN GARELLI, PREFERRED CAPITAL FUNDING, INC., PREFERRED CAPITAL FUNDING-MISSOURI, LLC, PREFERRED CAPITAL FUNDING-NEVADA, LLC, PREFERRED CAPITAL FUNDING-OHIO, LLC.. Exhibits. (ems) (Entered: 11/22/2017) |
| 11/15/2017 | 8928 | ORDER - UPON CONSIDERATION OF NFL PARTIES' AND COUNSEL ON BEHALF OF OPT OUT PLAINTIFFS' STIPULATION AND AGREEMENT (ECF NO. 8918), IT IS ORDERED that THE REQUEST FOR TIME EXTENSIONS OF THE BRIEFING SCHEDULE IS DENIED.-1(footnote) THE COURT MAY CONSIDER FUTURE REQUESTS FOR EXTENSIONS OF TIME FOR GOOD CAUSE SHOWN.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/15/2017. 11/15/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/15/2017) |
| 11/15/2017 | 8929 | ORDER - UPON CONSIDERATION OF CO-LEAD CLASS COUNSEL'S LETTER REQUESTING AN EXTENSION TO FACILITATE THE FILING OF AN OMNIBUS REPLY... IT IS ORDERED that CO-LEAD CLASS COUNSEL'S OMNIBUS REPLY SHALL BE FILED ON OR BEFORE NOVEMBER 30, 2017.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/15/2017. 11/15/2017 ENTERED AND COPIES VIA ECF.(mo, ) Modified on 11/15/2017 (mo, ). (Entered: 11/15/2017) |
| 11/15/2017 | | Set/Reset Deadlines as to CO-LEAD CLASS COUNSEL'S OMNIBUS REPLY DUE BY 11/30/2017. (mo, ) (Entered: 11/15/2017) |
| 11/15/2017 | 8930 | NOTICE - ON NOVEMBER 13, 2017, THE COURT HELD A CONFERENCE WITH REPRESENTATIVES FROM THE NFL PARTIES, CO-LEAD CLASS COUNSEL, AND THE SPECIAL MASTERS ON ISSUES RELATED TO IMPLEMENTATION OF THE SETTLEMENT AGREEMENT (SEE ECF NOS. 8909 & 8926). DURING THAT CONFERENCE, A RENEWED COMMITMENT TO TRANSPARENCY REGARDING THE CLAIMS ADMINISTRATION PROCESS WAS ESTABLISHED.. ON OR BEFORE DECEMBER 1, 2017, THE CLAIMS ADMINISTRATOR, BROWNGREER, HAS AGREED TO SUBMIT.... FOLLOWING BROWNGREER'S SUBMISSION WILL BE A COMMENT EPRIOD. THIS PERIOD WILL BE TRUNCATED TO LIMIT DELAY OF CLAIMS PROCESSING. ON OR BEFORE DECEMBER 15, 2017, ANY CLASS MEMBER OR THEIR REPRESENTATIVES MAY COMMENT ON THE FAQS USING THE FOLLOWING MANDATORY PROCEDURES: THE COMMENTS MUST BE EMAILED TO CONCUSSION@PAED.USCOURTS.GOV.... COMMENTS WILL BE REVIEWED BY THE COURT, AND FINAL FAQS WILL BE ISSUED AS PROMPTLY AS POSSIBLE. AFTER THAT POINT, THE FINAL FAQS WILL SERVE AS THE RULES FOR PROCESSING CLAIMS.SIGNED BY HONORABLE ANITA B. BRODY ON 11/15/2017.11/15/2017 ENTERED AND COPIES VIA ECF. (mo, ) (Entered: 11/15/2017) |

| 11/15/2017 | 8931 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Conference held on 11/13/2017. Court Reporter: ESR. (ems) (Entered: 11/15/2017) |
|---|---|---|
| 11/16/2017 | 8932 | MOTION to Intervene filed by WALKER PRESTON CAPITAL HOLDINGS LLC.Memorandum, Declaration, Certificate of Service. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Memorandum, # 4 Text of Proposed Order, # 5 Certificate of Service) (EPSTEIN, LEE) Modified on 11/17/2017 (ems). (Entered: 11/16/2017) |
| 11/16/2017 | 8933 | RESPONSE in Opposition re 8470 MOTION for Order *Directing the Claims Administrator to Withhold Any Portions of Class Member Monetary Awards Purportedly Owed to Certain Third-Party Lenders and Claims Services Providers, and Direct Disclosure to the Claims Administrator of Existen* filed by NFL CASE CONSULTING, LLC. (SCHEFF, RICHARD) *(Entered: 11/16/2017)* |
| 11/16/2017 | 8939 | MEMORANDUM OF PEACHTREE FUNDING NORTHEAST, LLC AND RELATED ENTITIES IN RESPONSE TO CO-LEAD CLASS COUNSEL'S MOTION TO (1) DIRECT CLAIMS ADMINISTRATOR TO WITHHOLD ANY PORTIONS OF CLASS MEMBER MONETARY AWARDS PURPORTEDLY OWED TO CERTAIN THIRD-PARTY LENDERS AND CLAIMS SERVICES PROVIDERS, AND (2) DIRECT DISCLOSURES TO CLAIMS ADMINISTRATOR OF EXISTENCE OF CLASS MEMBER AGREEMENTS WITH ALL THIRD PARTIES by PEACHTREE FUNDING NORTHEAST, LLC. Certificate of Service. (ems) (Entered: 11/22/2017) |
| 11/16/2017 | 8940 | MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF OPPOSING ON JURISDICTIONAL GROUNDS CO-LEAD CLASS COUNSEL'S MOTION TO (1) DIRECT CLAIMS ADMINISTRATOR TO WITHHOLD ANY PORTIONS OF CLASS MEMBER MONETARY AWARDS PURPORTEDLY OWED TO CERTAIN THIRD-PARTY LENDERS AND CLAIMS SERVICES PROVIDERS AND (2) DIRECT DISCLOSURE TO THE CLAIMS ADMINISTRATOR OF EXISTENCE OF CLASS MEMBER AGREEMENTS WITH ALL THIRD PARTIES filed by ATLAS LEGAL FUNDING I, LP, ATLAS LEGAL FUNDING II, LP, ATLAS LEGAL FUNDING III, LP, ATLAS LEGAL FUNDING, LLC, CASH4CASES, INC.. Certificate of Service, Memorandum, Exhibits. (ems) (Entered: 11/22/2017) |
| 11/16/2017 | 8943 | MEMORANDUM OF LAW OF OBJECTOR THRIVEST SPECIALTY FUNDING, LLC IN OPPOSITION TO CLASS COUNSEL'S MOTION TO WITHHOLD PORTIONS OF CLASS MEMBERS' MONETARY AWARDS by THRIVEST SPECIALTY FUNDING, LLC. Certificate of Service. (ems) (Entered: 11/22/2017) |
| 11/16/2017 | 8944 | EXHIBIT A TO THE MEMORANDUM OF LAW OF OBJECTOR THRIVEST SPECIALTY FUNDING, LLC IN OPPOSITION TO CLASS COUNSEL'S MOTION TO WITHHOLD PORTIONS OF CLASS MEMBERS' MONETARY AWARDS by THRIVEST SPECIALTY FUNDING, LLC. (FILED UNDER SEAL) (ems) (ems). (Entered: 11/22/2017) |
| 11/17/2017 | 8934 | Declaration re 8447 Declaration, 8900 Order,, Set Motion and R&R Deadlines/Hearings, *Omnibus Reply Declaration of Christopher A. Seeger in Further Support of ECF No. 8447, Proposed Allocation, and in Accordance with the Court's Order, ECF No. 8900* by PLAINTIFF(S). (Attachments: # 1 Declaration Supplemental Declaration of Brian T. Fitzpatrick)(SEEGER, CHRISTOPHER) (Entered: 11/17/2017) |
| 11/17/2017 | 8941 | "NON-PARTY/OBJECTOR", CAMBRIDGE CAPITAL GROUP, LLC, RESPONSE AND OPPOSITION TO THE COURT'S JURISDICTION TO ENTERTAIN CO-LEAD CLASS COUNSEL'S MOTION TO (1) DIRECT CLAIMS ADMINISTRATOR TO WITHHOLD ANY PORTIONS OF CLASS MEMBER MONETARY AWARDS PURPORTEDLY OWED TO CERTAIN THIRD-PARTY LENDERS AND CLAIMS SERVICES PROVIDERS, AND (2) DIRECT DISCLOSURE TO CLAIMS |

-566-

| | | ADMINISTRATOR OF EXISTENCE OF CLASS MEMBER AGREEMENTS WITH ALL THIRD PARTIES by CAMBRIDGE CAPITAL GROUP, LLC. Certificate of Service. (ems) (Entered: 11/22/2017) |
|---|---|---|
| 11/20/2017 | 8935 | ORDER that THIS COURT ISSUED AN ORDER GRANTING AN EXTENSION UNTIL DECEMBER 8,2017 FOR THE FILING OF (I) LEAD COUNSEL FOR OPT-OUT PLAINTIFFS' BRIEFS IN OPPOSTION TO THE NFL PARTIES' MOTIONS TO DISMISS AND (ii) SUPPLEMENTAL BRIEFS BY INDIVIDUAL OPT-OUT PLAINTIFFS ADDRESSING CLAIMS UNIQUE TO THEIR SHORT FORM COMPLAINTS: IT IS ORDERED that: (I) THE NFL PARTIES MAY FILE REPLY BREIFS... ON OR BEFORE JANUARY 22, 2018. THE COURT WILL CONSIDER A FUTURE REQUEST FOR EXTENSION OF TIME BY THE NFL PARTIES... (ii) NOTHINGIN THIS ORDER SHALL AFFECT PREVIOUSLY ORDERED PAGE LIMITS.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/20/2017. 11/20/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/20/2017) |
| 11/20/2017 | 8936 | ORDER that (I) LEAD COUNSEL FOR OPT-OUT PLAINTIFFS MAY FILE OPPOSITION BRIEFS TO THE NFL PARTIES' MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT ON OR BEFORE DECEMBER 8, 2017. IN ADDITION, TO THE EXTEND that THE NFL PARTIES' MOTIONS ADDRESS ANY CLAIMS UNIQUE TO A GIVEN OPT-OUT PLAINTIFF'S SHORT FORM COMPLAINT, COUNSEL FOR SUCH OPT-OUT PLAINTIFF(S) MAY FILE A SUPPLEMENTAL BRIEF ON OR BEFORE DECEMBER 8, 2017.... (iii) NOTHING IN THIS ORDER SHALL AFFECT PREVIOUSLY-ORDERED PAGE LIMITS.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/20/2017. 11/20/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/20/2017) |
| 11/20/2017 | 8942 | RESPONSE OF NONPARTY JUSTICE FUNDS IN OPPOSITION TO CO-LEAD CLASS COUNSEL'S MOTION TO (1) DIRECT CLAIMS ADMINISTRATOR TO WITHHOLD ANY PORTIONS OF CLASS MEMBER MONETARY AWARDS PURPORTEDLY OWED TO CERTAIN THIRD-PARTY LENDING AND CLAIMS SERVICE PROVIDERS, AND (2) DIRECT DISCLOSURE TO CLAIMS ADMINISTRATOR OF THE EXISTENCE OF CLASS MEMBER AGREEMENTS WITH ALL THIRD PARTIES by JUSTICE FUNDS. Certificate of Service. (ems) (Entered: 11/22/2017) |
| 11/21/2017 | 8937 | MOTION for Leave to File *SUR-REPLY COUNTER-DECLARATION OF JASON E. LUCKASEVIC IN RESPONSE TO OMNIBUS DECLARATION OF CHRISTOPHER SEEGER IN SUPPORT OF PROPOSED ALLOCATION OF COMMON BENEFIT ATTORNEYS FEES, PAYMENT OF COMMON BENEFIT EXPENSES, AND PAYMENT OF CASE CONTRIBUTION AWARDS TO CLASS REPRESENTATIVES* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Exhibit A - July 19, 2011 Complaint, Maxwell v. NFL, et al, Case No. BC465842 (Cal. Super. Ct.), # 2 Exhibit B - Counter-Declaration and Exhibit thereto, # 3 Text of Proposed Order) (LUCKASEVIC, JASON) Modified on 11/21/2017 (ems). (Entered: 11/21/2017) |
| 11/22/2017 | 8945 | MOTION for Leave to File *a Surreply Declaration in Response to Omnibus Reply Declaration of Christopher A. Seeger as to Responses, Objections and Counter-Declarations to Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order) (ZIMMERMAN, CHARLES) Modified on 11/22/2017 (ems). (Entered: 11/22/2017) |
| 11/22/2017 | 8946 | MOTION for Pro Hac Vice ( Filing fee $ 40 receipt number 0313-12474981.) filed by ATLAS LEGAL FUNDING I, LP, ATLAS LEGAL FUNDING II, LP, ATLAS LEGAL FUNDING III, LP, ATLAS LEGAL FUNDING, LLC, CASH4CASES, INC..Motion |

| | | |
|---|---|---|
| | | for Admission Pro Hac Vice of Raul J. Sloezen with Certificate of Service.(GIROUD, BRIDGET) (Entered: 11/22/2017) |
| 11/24/2017 | 8947 | RESPONSE in Support re 7945 First MOTION to Remand *or Alternative RE-Designate Unrelated* filed by PLAINTIFF(S). (SOHN, BRADFORD) (Entered: 11/24/2017) |
| 11/27/2017 | 8948 | NOTICE of Change of Address by DAVID BAYLIS FRANCO(FRANCO, DAVID) (Entered: 11/27/2017) |
| 11/27/2017 | 8949 | RESPONSE in Opposition re 8923 MOTION for Reconsideration re 8882 Order on Motion for Relief,, *Opposition of Co-Lead Class Counsel to the Motion for Reconsideration by X1Law of Its' Motion to Determine Proper Administration of Claims Under the Settlement Agreement* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 11/27/2017) |
| 11/27/2017 | 8950 | MOTION for Joinder / *Notice of Joinder (Related Document No. 8949)* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.Certificate of Service. (Attachments: # 1 Certificate of Service)(KARP, BRAD) Modified on 11/28/2017 (ems). (Entered: 11/27/2017) |
| 11/28/2017 | 8951 | *Short Form Complaint for Adrian Awasom* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8952 | *Short Form Complaint for Sam Adams, Sr.* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8953 | *Short Form Complaint for Romeo Bandison* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8954 | *Short Form Complaint for Na'il Benjamin* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8955 | *Short Form Complaint for James Bethea* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8956 | *Short Form Complaint for Michael Bozeman* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8957 | *Short Form Complaint for Dante Brown* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8958 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 11/28/2017) |
| 11/28/2017 | 8959 | *Short Form Complaint for Richard Carey* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8960 | *Short Form Complaint for Angelo Craig* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8961 | *Short Form Complaint for Kwame Ellis* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8962 | *Short Form Complaint for James Hadnot* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8963 | MOTION for Leave to File *Surreply Declaration of Michael L. McGlamry in Response to Christopher A. Seeger's Omnibus Reply Declaration* filed by PLAINTIFF(S).Motion, Certificate of Service, Proposed Order, Declaration. (Attachments: # 1 Exhibit Exhibit A - Proposed Order, # 2 Exhibit Exhibit B - Surreply |

-568-

| | | Declaration of Michael L. McGlamry)(MCGLAMRY, MICHAEL) Modified on 11/29/2017 (ems). (Entered: 11/28/2017) |
|---|---|---|
| 11/28/2017 | 8964 | *Short Form Complaint for Larry Isaac* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8965 | *Short Form Complaint for Belton Johnson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8966 | *Short Form Complaint for Michael Landry* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8967 | *Short Form Complaint for Linden King* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8968 | *Short Form Complaint for Chris Lewis* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8969 | *Short Form Complaint for Marcus Lewis* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8970 | *Short Form Complaint for DeAngelo Lloyd* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8971 | *Short Form Complaint for Kelvin Moore* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8972 | *Short Form Complaint for Brian Nelson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8973 | Short Form Complaint Against Riddell Defendants - Clint 'Bo' Harris and Amy Harris by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8974 | Short Form Complaint Against Riddell Defendants - Dalton Simmons by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8975 | Short Form Complaint Against Riddell Defendants - David Gagnon and Judy Gagnon by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8976 | Short Form Complaint Against Riddell Defendants - Frank Staine-Pyne and Erin Staine-Pyne by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8977 | Short Form Complaint Against Riddell Defendants - Gregore Fassitt by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8978 | Short Form Complaint Against Riddell Defendants - James Gueno and Billie Gueno by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8979 | Short Form Complaint Against Riddell Defendants - James Spencer and Tanya Spencer by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8980 | Short Form Complaint Against Riddell Defendants - Jason Gesser and Kali Gesser by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8981 | Short Form Complaint Against Riddell Defendants - Jimmy Keyes and Billie Keyes by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8982 | *Short Form Complaint for Darryl Pearson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |

| 11/28/2017 | 8983 | Short Form Complaint Against Riddell Defendants - Jimmy Williams and Chandra Williams by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8984 | Short Form Complaint Against Riddell Defendants - Joe Barnes and Kathy Barnes by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8985 | Short Form Complaint Against Riddell Defendants - G. Karl Bernard and Cassie Bernard by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8986 | *Short Form Complaint for DeVonte Peterson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8987 | Short Form Complaint Against Riddell Defendants - Keaton Cromartie by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8988 | Short Form Complaint Against Riddell Defendants - Kerry Parker and Lisa Parker by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8989 | Short Form Complaint Against Riddell Defendants - Kurt Schulz and Susan Schulz by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8990 | Short Form Complaint Against Riddell Defendants - Louis Williams by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8991 | *Short Form Complaint for Solomon Page* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8992 | Short Form Complaint Against Riddell Defendants - Michael Bell by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8993 | Short Form Complaint Against Riddell Defendants - Norman Hodgins, Jr. and Caroline Hodgins by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8994 | Short Form Complaint Against Riddell Defendants - Patrick Stant and Helene Stant by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8995 | Short Form Complaint Against Riddell Defendants - Ronald Krajewski by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8996 | *Short Form Complaint for Joseph Profit* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 8997 | Short Form Complaint Against Riddell Defendants - Roy Curtis Baham and Leslie Ann Baham by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8998 | Short Form Complaint Against Riddell Defendants - Sean Smith by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 8999 | Short Form Complaint Against Riddell Defendants - Thomas Clapp, II and Heather Clapp by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 9000 | *Short Form Complaint for Marcus Reese* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9001 | Short Form Complaint Against Riddell Defendants - Todd Kinchen and Mary Kinchen by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 9002 | Short Form Complaint Against Riddell Defendants - Warren Capone and Rose Capone by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |

| 11/28/2017 | 9003 | *Short Form Complaint for Rex Richards* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
|---|---|---|
| 11/28/2017 | 9004 | *Short Form Complaint for Koren Robinson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9005 | *Short Form Complaint for Horace Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9006 | *Short Form Complaint for Jeffrey Ulbrich* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9007 | Memorandum in Opposition re 8938 MOTION for Protective Order *Co-Lead Class Counsel's Memorandum in Opposition to Motion for Protective Order of Preferred Capital Funding, Inc., and Related Entities; and Brian Garelli* filed by PLAINTIFF(S). (Attachments: # 1 Declaration of Sol Weiss in Opposition to Motion for Protective Order)(SEEGER, CHRISTOPHER) (Entered: 11/28/2017) |
| 11/28/2017 | 9008 | *Short Form Complaint for William Yanchar* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9009 | *Short Form Complaint for Ron Yary* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9010 | *Short Form Complaint for Lamar Rogers* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9011 | *Short Form Complaint for Shaine Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9012 | *Short Form Complaint for John Solomon* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9013 | *Short Form Complaint for Renauld Williams* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9014 | Short Form Complaint Against Riddell Defendants - Annette Lawson, individually and as Executrix of the Estate of Odell Lawson, Sr. by PLAINTIFF(S). (FRANCO, DAVID) (Entered: 11/28/2017) |
| 11/28/2017 | 9015 | *Short Form Complaint for Pat Williams* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9016 | *Short Form Complaint for Roderick Rutledge* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9017 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 11/28/2017) |
| 11/28/2017 | 9018 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 11/28/2017) |
| 11/28/2017 | 9019 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 11/28/2017) |
| 11/28/2017 | 9020 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 11/28/2017) |
| 11/28/2017 | 9021 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 11/28/2017) |

| 11/28/2017 | 9022 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 11/28/2017) |
|---|---|---|
| 11/28/2017 | 9023 | *Short Form Complaint for Ronald Johnson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9024 | *Short Form Complaint for Andre Reed* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9025 | *Short Form Complaint for Marcus Ray* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9026 | *Short Form Complaint for Bruce Pickens* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9027 | *Short Form Complaint for Gus Parham* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9028 | *Short Form Complaint for Greg Montgomery* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9029 | *Short Form Complaint for Joseph Montgomery* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9030 | *Short Form Complaint for Deshone Myles* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9031 | *Short Form Complaint for Reginald McElroy* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9032 | *Short Form Request for James McAlister* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9033 | *Short Form Complaint for Chris McAlister* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9034 | *Short Form Complaint for Jamar Martin* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9035 | *Short Form Complaint for David Macklin* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9036 | *Short Form Complaint for Lance Johnstone* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9037 | *Short Form Complaint for Burudi Johnson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9038 | *Short Form Complaint fror Chris Jackson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9039 | *Short Form Complaint for Quinn Gray* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9040 | *Short Form Complaint for Dwayne Goodrich* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9041 | *Short Form Complaint for Levar Fisher* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |

| 11/28/2017 | 9042 | *Short Form Complaint for Ronald Dixon* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9043 | *Short Form Complaint for Carey Davis* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9044 | *Short Form Complaint for O.J. Childress* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9045 | *Short Form Complaint for William Andrews* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9046 | *Short Form Complaint for Antwon Burton* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9047 | *Short Form Request for Ricky Bryant* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9048 | *Short Form Complaint for Aaron Beasley* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9049 | *Short Form Complaint for Tyrone Carter* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9050 | *Short Form Complaint for Christopher Roberson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/28/2017 | 9051 | *Short Form Complaint for Robert Brewster* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/28/2017) |
| 11/29/2017 | 9052 | Short Form Complaint - Lester J. Williams, Deceased by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/29/2017) |
| 11/29/2017 | 9053 | NOTICE of Appearance by MICHAEL J. ACOSTA on behalf of PLAINTIFF(S) with Certificate of Service (Attachments: # 1 Certificate of Service Certificate of Service) (ACOSTA, MICHAEL) (Entered: 11/29/2017) |
| 11/29/2017 | 9054 | *Short Form Complaint for Calvin Williams* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9055 | *Short Form Complaint for Marques Sullivan* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9056 | *Short Form Complaint for Anthony Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9057 | *Short Form Complaint for Matt Wilhelm* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9058 | *Short Form Complaint for Reginald Stephens* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9059 | *Short Form Complaint for Rian Wallace* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9060 | *Short Form Complaint for Jamain Stephens* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9061 | *Short Form Complaint for Samuel Sword* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |

| 11/29/2017 | 9062 | *Short Form Complaint for Keith Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9063 | *Short Form Complaint for Michael Blair* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9064 | *Short Form Complaint for Reggie Davis* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9065 | *Short Form Complaint for Travis Curtis* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9066 | *Short Form Complaint for Derrick Crawford* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9067 | *Short Form Complaint for Reginald Cooper* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9068 | *Short Form Complaint for Joshua Cooper* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9069 | *Short Form Complaint for Jeremy Clark* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9070 | *Short Form Complaint for Barney Bussey* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9071 | *Short Form Complaint for Michael Brown* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9072 | *Short Form Complaint for Corey Bridges* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9073 | *Short Form Complaint for Cedric Bonner* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9074 | *Short Form Complaint for Walter Bernard* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9075 | *Short Form Complaint for Corey Barlow* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9076 | *Short Form Complaint for Aaron Bailey* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/29/2017 | 9077 | *Short Form Complaint for Stevie Baggs* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/29/2017) |
| 11/30/2017 | 9078 | Short Form Complaint - Rashad Bauman by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/30/2017) |
| 11/30/2017 | 9079 | Short Form Complaint - Christopher J. Brewer by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/30/2017) |
| 11/30/2017 | 9080 | Short Form Complant - Marty Johnson by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 11/30/2017) |
| 11/30/2017 | 9081 | *Short Form Complaint for Terence Davis* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |

| 11/30/2017 | 9082 | *Short Form Complaint for Cody Douglas* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9083 | *Short Form Complaint for Antonio Edwards* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9084 | *Short Form Complaint for Amon Gordon* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9085 | *Short Form Complaint for Tyjuan Hagler* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9086 | *Short Form Complaint for Jermaine Haley* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9087 | *Short Form Complaint for Jason Hall* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9088 | *Short Form Complaint for Robert Hall* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9089 | *Short Form Complaint for Roger Harper* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9090 | *Short Form Complaint for Johnathan Holifield* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9091 | *Short Form Complaint for James Hundon* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9092 | *Short Form Complaint for Grady Jackson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9093 | *Short Form Complaint for Yul Jenkins* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9094 | *Short Form Complaint for Michael Jennings* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9095 | *Short Form Complaint for Tim Johnson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9096 | *Short Form Complaint for Teyo Johnson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9097 | *Short Form Complaint for Vaughan Johnson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9098 | *Short Form Complaint for Paul Jordan* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9099 | *Short Form Complaint for Melvin Lunsford* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9100 | *Short Form Complaint for Keyonta Marshall* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9101 | *Short Form Complaint for Derreck Robinson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |

| 11/30/2017 | 9102 | *Short Form Complaint for Jonas Seawright* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
|---|---|---|
| 11/30/2017 | 9103 | *Short Form Complaint for Chadwick Slaughter* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9104 | *Short Form Complaint for Ahmaad Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9105 | *Short Form Complaint for Lawrence Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9106 | *Short Form Complaint for Marcus Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9107 | *Short Form Complaint for Sammie Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9108 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 11/30/2017) |
| 11/30/2017 | 9109 | *Short Form Complaint for Derrick Steagall* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9110 | *Short Form Complaint for Theodore Washington* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9111 | *Short Form Complaint for Darius Williams* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9112 | *Short Form Complaint for Meltrix Williams* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 11/30/2017) |
| 11/30/2017 | 9113 | REPLY to Response to Motion re 8470 MOTION for Order *Directing the Claims Administrator to Withhold Any Portions of Class Member Monetary Awards Purportedly Owed to Certain Third-Party Lenders and Claims Services Providers, and Direct Disclosure to the Claims Administrator of Existen ce of Class Member Agreements With All Third Parties filed by PLAINTIFF(S). (Attachments: # 1 Declaration of Christopher A. Seeger, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Text of Proposed Order Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 11/30/2017)* |
| 12/01/2017 | 9114 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service. (COHEN, RON) Modified on 12/1/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9115 | *Short Form Complaint for Corey Allen* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9116 | *Short Form Complaint for Vincent Clark* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9117 | *Short Form Complaint for Larry Croom* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9118 | *Short Form Complaint for Robert Farmer* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9119 | *Short Form Complaint for John Fisher* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |

| 12/01/2017 | 9120 | *Short Form Complaint for Timothy Goodwell* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9121 | *Short Form Complaint for Troy Hambreck-Grant* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9122 | *Short Form Complaint for Nic Harris* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9123 | *Short Form Complaint for Terence Mathis* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9124 | *Short Form Complaint for Robert Morris* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9125 | *Short Form Complaint for J'Vonne Parker* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9126 | *Short Form Complaint for Pepe Pearson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9127 | *Short Form Complaint for David Richardson* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9128 | *Short Form Complaint for Luis Sharpe* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9129 | *Short Form Complaint for Dallis Smith* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9130 | Short Form Complaint *for Seau et al.* by PLAINTIFF(S). (STRAUSS, STEVEN) (Entered: 12/01/2017) |
| 12/01/2017 | 9131 | *Short Form Complaint for Antwain Spann* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9132 | *Short Form Complaint for Jerel Stokes* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9133 | *Short Form Complaint for Craig Taylor* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9134 | *Short Form Complaint for Corey Terry* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9135 | *Short Form Complaint for Craig Walendy* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9136 | *Short Form Complaint for Damon Washington* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/01/2017) |
| 12/01/2017 | 9137 | NOTICE ON OPPORTUNITY TO COMMENT ON FREQUENTLY ASKED QUESTIONS by JO-ANN M. VERRIER. (Attachments: # 1 Settlement Program Questions and Answers) (ems) (Entered: 12/01/2017) |
| 12/01/2017 | 9138 | Short Form Complaint (Riddell) *for Raymond Austin* by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 12/01/2017) |
| 12/01/2017 | 9139 | Short Form Complaint (Riddell) *for Bruce Herron* by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 12/01/2017) |

**-577-**

| 12/01/2017 | 9140 | Short Form Complaint (Riddell) *for Gerald Sullivan* by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 12/01/2017) |
| 12/01/2017 | 9141 | Short Form Complaint (Riddell) *for John Cornell* by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 12/01/2017) |
| 12/01/2017 | 9142 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9143 | Short Form Complaint (Riddell) *for Robert Douglass* by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 12/01/2017) |
| 12/01/2017 | 9144 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9145 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9146 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9147 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9148 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9149 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9150 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9151 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9152 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9153 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9154 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9155 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9156 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9157 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9158 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9159 | SHORT FORM COMPLAINT filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9160 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9161 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9162 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |

| 12/01/2017 | 9163 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9164 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9165 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9166 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9167 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9168 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9169 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9170 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9171 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9172 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9173 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9174 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9175 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9176 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9177 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9178 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9179 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9180 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9181 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9182 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9183 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9184 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9185 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |

| | | |
|---|---|---|
| 12/01/2017 | 9186 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9187 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9188 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9189 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9190 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9191 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9192 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9193 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9194 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9195 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9196 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9197 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9198 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9199 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9200 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9201 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9202 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9203 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9204 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9205 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9206 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9207 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9208 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |

| 12/01/2017 | 9209 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
|---|---|---|
| 12/01/2017 | 9210 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9211 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9212 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9213 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9214 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9215 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9216 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9217 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9218 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9219 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9220 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9221 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9222 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9223 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9224 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9225 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9226 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9227 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9228 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9229 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9230 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9231 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |

| 12/01/2017 | 9232 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9233 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9234 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9235 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9236 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9237 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9238 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9239 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9240 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9241 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9242 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9243 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9244 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9245 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9246 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9247 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9248 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9249 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9250 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9251 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9252 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9253 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9254 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |

| 12/01/2017 | 9255 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9256 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9257 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9258 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9259 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9260 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9261 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9262 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9263 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9264 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9265 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9266 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9267 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9268 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9269 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9270 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9271 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9272 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9273 | SHORT FORM COMPLAINT filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9274 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9275 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9276 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9277 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |

| 12/01/2017 | 9278 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9279 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/01/2017 | 9280 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9281 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/01/2017) |
| 12/01/2017 | 9282 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/01/2017) |
| 12/02/2017 | 9283 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9284 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9285 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9286 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9287 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9288 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9289 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9290 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9291 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9292 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9293 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9294 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9295 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9296 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9297 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/02/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9298 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9299 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9300 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |

| 12/02/2017 | 9301 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
|---|---|---|
| 12/02/2017 | 9302 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9303 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9304 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9305 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9306 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9307 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9308 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9309 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9310 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9311 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9312 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9313 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9314 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9315 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9316 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9317 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9318 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9319 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9320 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9321 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9322 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9323 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |

| 12/02/2017 | 9324 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9325 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9326 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9327 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9328 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9329 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9330 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9331 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9332 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9333 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9334 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9335 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9336 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9337 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9338 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9339 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9340 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9341 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9342 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9343 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9344 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9345 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9346 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |

**-586-**

| 12/02/2017 | 9347 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9348 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9349 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9350 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9351 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9352 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9353 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9354 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9355 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9356 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9357 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9358 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9359 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9360 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9361 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9362 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/02/2017) |
| 12/02/2017 | 9363 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/02/2017 | 9364 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/02/2017) |
| 12/04/2017 | 9365 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/04/2017) |
| 12/04/2017 | 9366 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/04/2017) |
| 12/04/2017 | 9367 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/04/2017) |
| 12/04/2017 | 9368 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/04/2017) |
| 12/04/2017 | 9369 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/04/2017) |

| 12/04/2017 | 9370 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/04/2017) |
| --- | --- | --- |
| 12/04/2017 | 9371 | *Short Form Complaint Against Riddell Defendants -- Terri Adams, as Personal Representative of the Estate of Julius Adams, Sr.* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/04/2017) |
| 12/04/2017 | 9372 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/04/2017) |
| 12/04/2017 | 9373 | *Short Form Complaint Against Riddell Defendants -- Clayton Skinner, as Personal Representative of the Estate of Larry Roberts, Sr.* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/04/2017) |
| 12/04/2017 | 9374 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/04/2017) |
| 12/04/2017 | 9375 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/04/2017) |
| 12/04/2017 | 9376 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/04/2017) |
| 12/04/2017 | 9377 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/04/2017) |
| 12/04/2017 | 9378 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/04/2017) |
| 12/04/2017 | 9379 | *Short Form Complaint Against Riddell Defendants -- Laura J. Rogers, as Administrator of the Estate of Reggie Rogers, Sr.* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/04/2017) |
| 12/04/2017 | 9380 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/04/2017) |
| 12/04/2017 | 9381 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/04/2017) |
| 12/04/2017 | 9382 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/04/2017) |
| 12/04/2017 | 9383 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/04/2017) |
| 12/04/2017 | 9384 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/04/2017) |
| 12/04/2017 | 9385 | MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/4/2017 (ems). (Entered: 12/04/2017) |
| 12/04/2017 | 9386 | Short Form Complaint Against Riddell Defendants (re Michael Bass & Rosita Bass) by PLAINTIFF(S). (STEIN, ROBERT) (Entered: 12/04/2017) |
| 12/04/2017 | 9387 | ORDER that THE APPLICATION OF RAUL J. SLOEZEN, ESQUIRE, TO PRACTICE IN THIS COURT PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 83.5.2(b) IS GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 12/4/2017.12/4/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/04/2017) |
| 12/04/2017 | 9388 | Short Form Complaint Against Riddell Defendants (Re Charles Beatty) by PLAINTIFF(S). (STEIN, ROBERT) (Entered: 12/04/2017) |
| 12/04/2017 | 9389 | MOTION to Remand to State Court filed by PLAINTIFF(S).Brief, Certificate of Service. (Attachments: # 1 Exhibit A to Motion to Remand, # 2 Text of Proposed |

<div align="center">-588-</div>

| | | Order, # 3 Exhibit A to Brief in Support of Motion to Remand, # 4 Exhibit B to Brief in Support of Motion to Remand)(LUCKASEVIC, JASON) Modified on 12/4/2017 (ems). (Entered: 12/04/2017) |
|---|---|---|
| 12/04/2017 | 9390 | Short Form Complaint Against Riddell Defendants (Re Elvin Bethea) by PLAINTIFF(S). (STEIN, ROBERT) (Entered: 12/04/2017) |
| 12/04/2017 | 9391 | Short Form Complaint Against Riddell Defendants (Re Ronnie Coleman) by PLAINTIFF(S). (STEIN, ROBERT) (Entered: 12/04/2017) |
| 12/04/2017 | 9392 | Short Form Complaint Against Riddell Defendants (Re Richard Eber) by PLAINTIFF(S). (STEIN, ROBERT) (Entered: 12/04/2017) |
| 12/04/2017 | 9393 | Short Form Complaint Against Riddell Defendants (Re Willie Ellison) by PLAINTIFF(S). (STEIN, ROBERT) (Entered: 12/04/2017) |
| 12/04/2017 | 9394 | Short Form Complaint Against Riddell Defendants (Re Michael Fanning) by PLAINTIFF(S). (STEIN, ROBERT) (Entered: 12/04/2017) |
| 12/04/2017 | 9395 | Short Form Complaint Against Riddell Defendants (Re Paul Flatley) by PLAINTIFF(S). (STEIN, ROBERT) (Entered: 12/04/2017) |
| 12/04/2017 | 9396 | Short Form Complaint Against Riddell Defendants (Re Joe Kapp) by PLAINTIFF(S). (STEIN, ROBERT) (Entered: 12/04/2017) |
| 12/04/2017 | 9397 | Short Form Complaint Against Riddell Defendants (Re Dan Pastorini) by PLAINTIFF(S). (STEIN, ROBERT) (Entered: 12/04/2017) |
| 12/04/2017 | 9398 | Short Form Complaint Against Riddell Defendants (Re Ron Pritchard and Spouse Claudia Pritchard) by PLAINTIFF(S). (STEIN, ROBERT) (Entered: 12/04/2017) |
| 12/04/2017 | 9399 | Short Form Complaint Against Riddell Defendants (Re Thomas Lance Rentzel) by PLAINTIFF(S). (STEIN, ROBERT) (Entered: 12/04/2017) |
| 12/04/2017 | 9400 | Short Form Complaint Against Riddell Defendants (Re John Rudnay and Spouse Linda Rudnay) by PLAINTIFF(S). (STEIN, ROBERT) (Entered: 12/04/2017) |
| 12/04/2017 | 9401 | Short Form Complaint Against Riddell Defendants (Re Ed White and Spouse Joan White) by PLAINTIFF(S). (STEIN, ROBERT) (Entered: 12/04/2017) |
| 12/04/2017 | 9402 | Short Form Complaint (Riddell) *Malinda K. DeLeone* by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 12/04/2017) |
| 12/04/2017 | 9403 | Short Form Complaint (Riddell) *for Tregg Duerson* by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 12/04/2017) |
| 12/04/2017 | 9404 | Short Form Complaint (Riddell) *for Brittney Blue* by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 12/04/2017) |
| 12/04/2017 | 9405 | Short Form Complaint Against Riddell Defendants filed by Byron Williams by PLAINTIFF(S). (HONECKER, KATHRYN) (Entered: 12/04/2017) |
| 12/04/2017 | 9406 | Short Form Complaint Against Riddell Defendants filed by George Edward Cumby by PLAINTIFF(S). (HONECKER, KATHRYN) (Entered: 12/04/2017) |
| 12/04/2017 | 9407 | Short Form Complaint Against Riddell Defendants filed by Carl Eller by PLAINTIFF(S). (HONECKER, KATHRYN) (Entered: 12/04/2017) |
| 12/04/2017 | 9408 | Short Form Complaint Against Riddell Defendants filed by Eddie Lee Jones by PLAINTIFF(S). (HONECKER, KATHRYN) (Entered: 12/04/2017) |

| 12/04/2017 | 9409 | Short Form Complaint Against Riddell Defendants filed by Hurles Scales by PLAINTIFF(S). (HONECKER, KATHRYN) (Entered: 12/04/2017) |
| 12/04/2017 | 9410 | RESPONSE in Support re 9389 MOTION to Remand to State Court *PLAINTIFFS BRIEF IN SUPPORT OF MOTION TO REMAND* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A part 1 to Brief in Support of Motion to Remand, # 2 Exhibit A part 2 to Brief in Support of Motion to Remand, # 3 Exhibit B Brief in Support of Motion to Remand)(LUCKASEVIC, JASON) (Entered: 12/04/2017) |
| 12/04/2017 | 9411 | CLAIM Short Form Complaint Against Riddell Defendants by PLAINTIFF(S). (HILLSTROM, SCOTT) (Entered: 12/04/2017) |
| 12/04/2017 | 9412 | Short Form Complaint (Riddell) *for Gary Jones* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9413 | Short Form Complaint (Riddell) *for Todd Scott* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9414 | Short Form Complaint (Riddell) *for Charlie Anderson* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9415 | Short Form Complaint (Riddell) *for Charles Arbuckle* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9416 | Short Form Complaint (Riddell) *for Rod Bernstein* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9417 | Short Form Complaint (Riddell) *for Curtis Ceaser, Jr.* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9418 | Short Form Complaint (Riddell) *for Harry Colon* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9419 | Short Form Complaint (Riddell) *for Clyde P. Glosson* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9420 | Short Form Complaint (Riddell) *for Nilo Silvan* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9421 | Short Form Complaint (Riddell) *for Frankie Smith* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9422 | Short Form Complaint (Riddell) *for Eric J. Swann* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9423 | Short Form Complaint (Riddell) *for Anthony Toney* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9424 | Short Form Complaint (Riddell) *for Melvin Aldridge* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9425 | Short Form Complaint (Riddell) *for Patrise Alexander* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9426 | Short Form Complaint (Riddell) *for Larry Centers* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9427 | MOTION to Remand to State Court filed by PLAINTIFF(S).Certificate of Service. (GIBBS, WILLIAM) Modified on 12/5/2017 (ems). (Entered: 12/04/2017) |

**-590-**

| 12/04/2017 | 9428 | Short Form Complaint Against Riddell Defendants by PLAINTIFF(S). (PLYMALE, DOUGLAS) (Entered: 12/04/2017) |
| --- | --- | --- |
| 12/04/2017 | 9429 | Short Form Complaint (Riddell) *for Christopher Crooms* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9430 | Short Form Complaint (Riddell) *for Tim Denton* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9431 | Short Form Complaint Against Riddell Defendants by PLAINTIFF(S). (PLYMALE, DOUGLAS) (Entered: 12/04/2017) |
| 12/04/2017 | 9432 | Short Form Complaint (Riddell) *for Leland Douglas* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9433 | Memorandum of Law in Support re 9427 MOTION to Remand to State Court filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A - Complaint at Law, # 2 Exhibit B - Oliver v. Riddell Remand Order)(GIBBS, WILLIAM) (Entered: 12/04/2017) |
| 12/04/2017 | 9434 | Short Form Complaint Against Riddell Defendants by PLAINTIFF(S). (PLYMALE, DOUGLAS) (Entered: 12/04/2017) |
| 12/04/2017 | 9435 | Short Form Complaint (Riddell) *for Baldwin Malcom Frank* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9436 | Short Form Complaint Against Riddell Defendants by PLAINTIFF(S). (PLYMALE, DOUGLAS) (Entered: 12/04/2017) |
| 12/04/2017 | 9437 | Short Form Complaint (Riddell) *for Patrick Jackson* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9438 | Short Form Complaint Against Riddell Defendants by PLAINTIFF(S). (PLYMALE, DOUGLAS) (Entered: 12/04/2017) |
| 12/04/2017 | 9439 | Short Form Complaint (Riddell) *for Richard Johnson* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9440 | Short Form Complaint (Riddell) *for Eric Kelly* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9441 | Short Form Complaint (Riddell) *for Emanuel McNeil* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9442 | Short Form Complaint (Riddell) *for Anthony Newsome* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9443 | Short Form Complaint (Riddell) *for Robert Pollard* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9444 | Short Form Complaint (Riddell) *for Allen Rice* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9445 | Short Form Complaint (Riddell) *for Darrell Colbert* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9446 | Short Form Complaint (Riddell) *for Michael Dumas* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9447 | MOTION to Remand to State Court *for Robert Douglass* filed by PLAINTIFF(S). Certificate of Service. (GIBBS, WILLIAM) Modified on 12/5/2017 (ems). (Entered: 12/04/2017) |

| 12/04/2017 | 9448 | Short Form Complaint (Riddell) *for Willie Ellison* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
|---|---|---|
| 12/04/2017 | 9449 | Short Form Complaint (Riddell) *for James Francis* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9450 | Short Form Complaint (Riddell) *for Anthony Guillory* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9451 | Short Form Complaint (Riddell) *for Fulton Johnson* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9452 | Memorandum re 9447 MOTION to Remand to State Court *for Robert Douglass* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A - Complaint at Law, # 2 Exhibit B - Oliver v. Riddell Remand Order)(GIBBS, WILLIAM) (Entered: 12/04/2017) |
| 12/04/2017 | 9453 | Short Form Complaint (Riddell) *for Ryan McCoy* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9454 | Short Form Complaint Against Riddell Defendants filed by Todd McMillon by PLAINTIFF(S). (HONECKER, KATHRYN) (Entered: 12/04/2017) |
| 12/04/2017 | 9455 | Short Form Complaint (Riddell) *for Gerald McNeil* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9456 | Short Form Complaint (Riddell) *for Rance Olison* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9457 | Short Form Complaint (Riddell) *for Jimmy Robinson* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9458 | Short Form Complaint (Riddell) *for Glenell Sanders* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9459 | Short Form Complaint (Riddell) *for Thomas Sanders* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9460 | Short Form Complaint (Riddell) *for Joesph Searles* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9461 | Short Form Complaint (Riddell) *for Matthew Sinclair* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9462 | Short Form Complaint (Riddell) *for Edwin Weatherspoon* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9463 | Short Form Complaint (Riddell) *for Keith Woodside* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9464 | Short Form Complaint (Riddell) *for Milton Wynn* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9465 | Short Form Complaint (Riddell) *for Trevor Cobb* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9466 | Short Form Complaint (Riddell) *for Jerry Davis* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9467 | Short Form Complaint (Riddell) *for Corris Ervin* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |

**-592-**

| 12/04/2017 | 9468 | Short Form Complaint (Riddell) *for Doak Field* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
|---|---|---|
| 12/04/2017 | 9469 | Short Form Complaint (Riddell) *for Derrick Frazier* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9470 | Short Form Complaint (Riddell) *for Roderick Harris* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9471 | Short Form Complaint (Riddell) *of Wilmer Hicks* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9472 | MOTION to Remand to State Court *for Malinda K. DeLeone* filed by PLAINTIFF(S). Certificate of Service. (GIBBS, WILLIAM) Modified on 12/5/2017 (ems). (Entered: 12/04/2017) |
| 12/04/2017 | 9473 | Short Form Complaint (Riddell) *for Jerry James Moses, Jr.* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9474 | Short Form Complaint (Riddell) *of John Owens* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9475 | Short Form Complaint (Riddell) *of Derrick Pope* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9476 | Memorandum re 9472 MOTION to Remand to State Court *for Malinda K. DeLeone* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A - Complaint at Law, # 2 Exhibit B - Oliver v. Riddell Remand Order)(GIBBS, WILLIAM) (Entered: 12/04/2017) |
| 12/04/2017 | 9477 | Short Form Complaint (Riddell) *for Richard Siler* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9478 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/04/2017) |
| 12/04/2017 | 9479 | Short Form Complaint (Riddell) *of Herbert Williams* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9480 | Short Form Complaint (Riddell) *for James Williams* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9481 | Short Form Complaint (Riddell) *for James Young, Jr.* by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 12/04/2017) |
| 12/04/2017 | 9482 | Short Form Complaint Against Riddell Defendants *for Luisa Seau and Tiaina Seau* by PLAINTIFF(S). (GOMEZ, JOHN) (Entered: 12/04/2017) |
| 12/04/2017 | 9483 | MOTION to Remand to State Court *for Bruce Herron* filed by PLAINTIFF(S). Certificate of Service. (GIBBS, WILLIAM) Modified on 12/5/2017 (ems). (Entered: 12/04/2017) |
| 12/04/2017 | 9484 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/04/2017) |
| 12/04/2017 | 9485 | *Short Form Complaint* by PLAINTIFF(S). (COHEN, RON) (Entered: 12/04/2017) |
| 12/04/2017 | 9486 | Memorandum re 9483 MOTION to Remand to State Court *for Bruce Herron* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A - Complaint at Law, # 2 Exhibit B - Oliver v. Riddell Remand Order)(GIBBS, WILLIAM) (Entered: 12/04/2017) |
| 12/04/2017 | 9487 | MOTION to Remand to State Court *for Gerald Sullivan* filed by PLAINTIFF(S). Certificate of Service. (GIBBS, WILLIAM) Modified on 12/5/2017 (ems). (Entered: |

| | | |
|---|---|---|
| 12/04/2017 | 9488 | Memorandum re 9487 MOTION to Remand to State Court *for Gerald Sullivan* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A - Complaint at Law, # 2 Exhibit B - Oliver v. Riddell Remand Order)(GIBBS, WILLIAM) (Entered: 12/04/2017) |
| 12/04/2017 | 9489 | MOTION to Remand to State Court *for Raymond Austin* filed by PLAINTIFF(S). Certificate of Service. (GIBBS, WILLIAM) Modified on 12/5/2017 (ems). (Entered: 12/04/2017) |
| 12/04/2017 | 9490 | Memorandum in support re 9489 MOTION to Remand to State Court *for Raymond Austin* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A - Complaint at Law, # 2 Exhibit B - Oliver v. Riddell Remand Order)(GIBBS, WILLIAM) (Entered: 12/04/2017) |
| 12/04/2017 | 9491 | Short Form Complaint Against Riddell Defendants by PLAINTIFF(S). (PLYMALE, DOUGLAS) (Entered: 12/04/2017) |
| 12/04/2017 | 9492 | MOTION to Remand to State Court *for John Cornell* filed by PLAINTIFF(S). Certificate of Service. (GIBBS, WILLIAM) Modified on 12/5/2017 (ems). (Entered: 12/04/2017) |
| 12/04/2017 | 9493 | Memorandum in Support re 9492 MOTION to Remand to State Court *for John Cornell* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A - Complaint at Law, # 2 Exhibit B - Oliver v. Riddell Remand Order)(GIBBS, WILLIAM) (Entered: 12/04/2017) |
| 12/04/2017 | 9494 | Short Form Complaint Against Riddell Defendants for Steven Bukich, Mark Bukich, Andre Bukich and Alisa Stauter by PLAINTIFF(S). (COLTON, ROLAND) (Entered: 12/04/2017) |
| 12/04/2017 | 9495 | MOTION to Remand to State Court *Brittney Blue* filed by PLAINTIFF(S). Certificate of Service. (GIBBS, WILLIAM) Modified on 12/5/2017 (ems). (Entered: 12/04/2017) |
| 12/04/2017 | 9496 | RESPONSE in Support re 9495 MOTION to Remand to State Court *Brittney Blue* , Memorandum in Support filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A - Complaint at Law, # 2 Exhibit B - Oliver v. Riddell Remand Order)(GIBBS, WILLIAM) (Entered: 12/04/2017) |
| 12/04/2017 | 9497 | NOTICE by PLAINTIFF(S) re 9389 MOTION to Remand to State Court *Addendum to Exhibit A* (GIRARDI, THOMAS) (Entered: 12/04/2017) |
| 12/04/2017 | 9498 | MOTION TO CORRECT FILINGS filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/5/2017 (ems). (Entered: 12/04/2017) |
| 12/04/2017 | 9499 | Short Form Complaint Against Riddell Defendants filed by David Boyd by PLAINTIFF(S). (HONECKER, KATHRYN) (Entered: 12/04/2017) |
| 12/04/2017 | 9500 | Short Form Complaint Against Riddell Defendants filed by Albert Dixon by PLAINTIFF(S). (HONECKER, KATHRYN) (Entered: 12/04/2017) |
| 12/04/2017 | 9501 | Short Form Complaint (Riddell) *for Garland and Wayne Radloff* by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 12/04/2017) |
| 12/04/2017 | 9502 | Short Form Complaint (Riddell) by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 12/04/2017) |
| 12/04/2017 | 9503 | REPLY to Response to Motion re 8923 MOTION for Reconsideration re 8882 Order on Motion for Relief,, filed by PLAINTIFF(S). (Attachments: # 1 Exhibit)(ST. JACQUES, MICHAEL) (Entered: 12/04/2017) |

| 12/04/2017 | 9504 | Short Form Complaint (Riddell) by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 12/04/2017) |
| 12/04/2017 | 9505 | Short Form Complaint (Riddell) *Derrek Kennard* by PLAINTIFF(S). (GIBBS, WILLIAM) Modified on 12/5/2017 (ems). (Entered: 12/04/2017) |
| 12/05/2017 | 9506 | Corrected Short Form Complaint (Riddell) *for Patrick Hunter* by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 12/05/2017) |
| 12/05/2017 | 9507 | FINDINGS AND REMEDIES OF THE SPECIAL MASTER PURSUANT TO SECTION 10.3(i) REGARDING 153 MONETARY AWARD CLAIMS by JO-ANN M. VERRIER. (APPLIES TO ALL ACTIONS) (ems) (Entered: 12/05/2017) |
| 12/05/2017 | 9508 | ORDER that THE FOLLOWING MOTIONS FOR LEAVE TO FILE A SURREPLY DECLARATION IN RESPONSE TO OMNIBUS REPLY DECLARATION OF CHRISTOPHER A. SEEGER ARE DENIED: MOTION FILED BY JASON O. LUCKASEVIC (ECF NO. 8937); MOTION FILED BY CHARLES S. ZIMMERMAN (ECF NO. 8945); MOTION FILED BY MICHAEL L. MCGLAMRY (ECF NO. 8963).. SIGNED BY HONORABLE ANITA B. BRODY ON 12/5/2017.12/5/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/05/2017) |
| 12/05/2017 | 9509 | ORDER that THE MOTION TO PRIORITIZE AND SEPARATE VITALLY NEEDED PLAYER COMPENSATION PAYMENTS FROM ANY AND ALL ATTORNEYS' FEES AWARDS OR REQUESTS AND A REQUEST THAT THE COURT APPOINT A SPECIAL MASTER TO DEAL WITH AND DETERMINE THE VALIDITY AND APPROPRIATE AMOUNTS OF CLAIMED ATTORNEYS' FEES AS TO MORE FULLY ASSIST THE COURT'S GOAL OF MAKING PLAYER PAYMENTS A REALITY RATHER THAN UNFULFILLED PROMISES (ECF NO. 8723) IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 12/5/2017.12/5/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/05/2017) |
| 12/05/2017 | 9510 | ORDER that THE ALEXANDER OBJECTOR'S MOTION TO COMPEL COMPLIANCE WITH CASE MANAGEMENT ORDER NO. 5 (ECF NO. 8396) IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 12/5/2017.12/5/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/05/2017) |
| 12/05/2017 | 9511 | ORDER that THE NFL PARTIES' MOTION FOR JOINDER CO-LEAD CLASS COUNSEL'S OPPOSITION (ECF NO. 8950) IS GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 12/5/2017.12/5/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/05/2017) |
| 12/05/2017 | 9512 | ORDER that THE RETIRED NFL PLAYERS' MOTION FOR RECONSIDERATION OF THEIR MOTION TO DETERMINE PROPER ADMINISTRATION OF CLAIMS UNDER THE SETTLEMENT AGREEMENT (ECF NO. 8923) IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 12/5/2017.12/5/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/05/2017) |
| 12/05/2017 | 9513 | SPECIAL MASTER RULING: APPLICATION OF THE DEFINITION OF ELIGIBLE SEASON TO GAME DAY ROSTER DESIGNATIONS by JO-ANN M. VERRIER. (APPLIES TO ALL ACTIONS) (ems) (Entered: 12/05/2017) |
| 12/07/2017 | 9514 | CORRECTED MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/8/2017 (ems). (Entered: 12/07/2017) |
| 12/07/2017 | 9515 | NOTICE of Appearance by RON A. COHEN on behalf of PLAINTIFF(S) with Certificate of Service(COHEN, RON) (Entered: 12/07/2017) |

| 12/07/2017 | 9516 | MOTION for Leave to File *Sur-Reply in Further Opposition* filed by ATLAS LEGAL FUNDING I, LP, ATLAS LEGAL FUNDING II, LP, ATLAS LEGAL FUNDING III, LP, ATLAS LEGAL FUNDING, LLC, CASH4CASES, INC.. Motion for Leave to File Sur-Reply with Certificate of Service and Declaration. (Attachments: # 1 Exhibit A - Sur-Reply, # 2 Declaration Raul J. Sloezen, # 3 Exhibit to Declaration)(GIROUD, BRIDGET) Modified on 12/8/2017 (ems). (Entered: 12/07/2017) |
|---|---|---|
| 12/08/2017 | 9517 | EXPLANATION AND ORDER - IT HAS COME TO THE COURT'S ATTENTION that MEMBERS OF THE CLASS OF THEIR REPRESENTATIVES HAVE ASSIGNED OR ATTEMPTED TO ASSIGN MONETARY CLAIMS TO THIRD PARTIES.... FURTHER INSTRUCTIONS TO THE CLAIMS ADMINISTRATOR WILL FOLLOW. SO ORDERED. SIGNED BY HONORABLE ANITA B. BRODY ON 12/8/2017. 12/8/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/08/2017) |
| 12/08/2017 | 9518 | RESPONSE in Opposition re 8404 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM */ Motion to Dismiss the Second Amended Complaint* filed by PLAINTIFF(S). (Attachments: # 1 Declaration of Fleishman, # 2 Exhibit 1 to Fleishman Declaration)(FLEISHMAN, WENDY) (Entered: 12/08/2017) |
| 12/08/2017 | 9519 | REPLY to Response to Motion re 7963 MOTION to Remand to State Court , 7966 MOTION to Remand to State Court filed by PLAINTIFF(S). (SCHERMERHORN, ANDREW) (Entered: 12/08/2017) |
| 12/08/2017 | 9520 | CORRECTED MOTION TO REMAND filed by PLAINTIFF(S). (COHEN, RON) Modified on 12/11/2017 (ems). (Entered: 12/08/2017) |
| 12/08/2017 | 9521 | RESPONSE in Opposition re 8404 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM */ Motion to Dismiss the Second Amended Complaint*, 8403 MOTION to Dismiss *the Second Amended Complaint on Preemption Grounds TED JOHNSON SUPPL.* filed by PLAINTIFF(S). (SOHN, BRADFORD) (Entered: 12/08/2017) |
| 12/08/2017 | 9522 | RESPONSE in Opposition re 8403 MOTION to Dismiss *the Second Amended Complaint on Preemption Grounds* filed by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/08/2017) |
| 12/08/2017 | 9523 | RESPONSE in Opposition re 8403 MOTION to Dismiss *the Second Amended Complaint on Preemption Grounds on behalf of Seau Family* filed by PLAINTIFF(S). (STRAUSS, STEVEN) (Entered: 12/08/2017) |
| 12/08/2017 | 9524 | RESPONSE in Opposition re 8404 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM */ Motion to Dismiss the Second Amended Complaint on behalf of Seau Family* filed by PLAINTIFF(S). (STRAUSS, STEVEN) (Entered: 12/08/2017) |
| 12/11/2017 | 9525 | NOTICE of Withdrawal of Appearance by CHARLES M. HART on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC(HART, CHARLES) (Entered: 12/11/2017) |
| 12/11/2017 | 9526 | EXPERT REPORT OF PROFESSOR WILLIAM B. RUBENSTEIN.12/11/2017 ENTERED AND COPIES VIA ECF. (mo, ) (Entered: 12/11/2017) |
| 12/11/2017 | 9527 | RECEIPT OF EXPERT'S REPORT AND NOTICE - BY ORDER DATED SEPTEMBER 14, 2017 (ECF NO. 8376), THE COURT APPOINTED PROFESSOR WILLIAM B. RUBENSTEIN AS AN EXPERT WITNESS ON THE ATTORNEYS' FEES AND ASKED PROFESSOR RUBENSTEIN TO SUBMIT A REPORT ON TWO SETS OF ISSUES. PROFESSOR RUBENSTEIN HAS SUBMITTED HIS EXPERT REPORT TO THE COURT AND THE COURT HAS POSTED IT ON |

**-596-**

| | | |
|---|---|---|
| | | ECF.... ACCORDINGLY, ALL INTERESTED PARTIES MAY FILE BRIEFS, LIMITED TO 10 PAGES IN LENGTH IN RESPONSE TO PROFESSOR RUBENSTEIN'S EXPERT REPORT AND THE OPINIONS OFFERED THEREIN ON OR BEFORE WEDNESDAY, JANUARY 3, 2018. PROFESSOR RUBENSTEIN SHALL BE ENTITLED TO FILE A REPLY TO THESE COMMENTS ON HIS REPORT ON OR BEFORE MONDAY, JANUARY 22, 2018.SIGNED BY HONORABLE ANITA B. BRODY ON 12/11/2017.12/11/2017 ENTERED AND COPIES VIA ECF. (mo, ) (Entered: 12/11/2017) |
| 12/11/2017 | 9528 | NOTICE: CORRECTED EMAIL FOR COMMENTS ON FREQUENTLY ASKED OPINIONS - ON DECEMBER 1, 2017, THE COURT ISSUED A NOTICE (SEE ECF NO. 9137) INVITING COMMENTS, VIA E-MAIL, ON WHETHER THE QUESTIONS AND ANSWERS IN A NEW SET OF FREQUENTLY ASKED QUESTIONS CLEARLY CONVEY HOW CLASS MEMBERS CAN COMPLETE ALL STEPS NECESSARY TO OBTAIN THE APPLICABLE BENEFITS OF THE SETTLEMENT AGREEMENT.... IN AN ABUNDANCE OF CAUTION, IT IS SUGGESTED that E-MAILS SENT BEFORE DECEMBER 8, 2017 SHOULD BE RESENT. COMMENTS MUST BE SUMITTED ON OR BEFORE DECEMBER 15, 2017.SIGNED BY HONORABLE ANITA B. BRODY 12/11/2017.12/11/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/11/2017) |
| 12/11/2017 | 9529 | RESPONSE in Support re 8932 MOTION to Intervene , 8470 MOTION for Order *Directing the Claims Administrator to Withhold Any Portions of Class Member Monetary Awards Purportedly Owed to Certain Third-Party Lenders and Claims Services Providers, and Direct Disclosure to the Claims Administrator of Existen filed by WALKER PRESTON CAPITAL HOLDINGS LLC. (EPSTEIN, LEE) (Entered: 12/11/2017)* |
| 12/13/2017 | 9530 | NOTICE by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC / *Letter requesting Extension of Deadlines and Page Limits* (Attachments: # 1 Text of Proposed Order)(BIRENBOIM, BRUCE) (Entered: 12/13/2017) |
| 12/13/2017 | 9531 | NOTICE AND ATTACHMENTS - ON DECEMBER 8, 2017, THE COURT ISSUED AN EXPLANATION AND ORDER (ECF NO. 9517), that STATED IT HAD "COME TO THE COURT'S ATTENTION THAT MEMBERS OF THE CLASS OR THEIR REPRESENTATIVES HAVE ASSIGNED OR ATTEMPTED TO ASSIGN MONETARY CLAIMS TO THIRD PARTIES." IN AN EFFORT TO HIGHLIGHT THE CONTENTS OF SOME OF THESE AGREEMENTS, THE COURT NOW ATTACHES THREE CONTRACTS THAT HAD PREVIOUSLY BEEN POSTED TO ECF BY THIRD-PARTY FUNDER.SIGNED BY HONORABLE ANITA B. BRODY.12/13/2017 ENTERED AND COPIES SENT VIA ECF. (Attachments: # 1 funding agreement 1, # 2 funding agreement 2, # 3 funding agreement 3)(mo, ) (Entered: 12/13/2017) |
| 12/14/2017 | 9532 | ORDER - WHEREAS, THIS COURT ISSUED ORDERS ON JULY 18, 2017 AND SEPTEMBER 20, 2017 SETTING FORTH THE PAGE LIMITS APPLICABLE TO THE NFL PARTIES' MOTION TO DISMISS THE SECOND AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT... IT IS ORDERED that THE PARTIES' REQUEST IS GRANTED IN PART AND DENIED IN PART: (I) THE NFL PARTIES REQUEST TO FILE REPLY BRIEFS IN FURTHER SUPPORT OF THEIR MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT ON OR BEFORE FEBRUARY 12, 2018 IS GRANTED AND (ii) THE NFL PARTIES ARE DENIED AN ADDITIONAL TWENTY (20) PAGES FOR EACH OF THEIR REPLY BRIEFS.. SIGNED BY HONORABLE ANITA B. BRODY ON 12/13/2017. 12/14/2017 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/14/2017) |

| 12/15/2017 | 9533 | *Opt-Out Short Form Complaint for Joel Steed* by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 12/15/2017) |
|---|---|---|
| 12/18/2017 | 9534 | NOTICE of Appearance by KEVIN E. RAPHAEL on behalf of ANAPOL WEISS, P.C. with Certificate of Service(RAPHAEL, KEVIN) (Entered: 12/18/2017) |
| 12/19/2017 | 9535 | MOTION for Reconsideration *filed by Class Counsel The Locks Law Firm Regarding the Court's December 11, 2017 Order*, with Memorandum In Support, Certificate of Service (Attachments: # 1 Text of Proposed Order)(LANGFITT, DAVID) Modified on 12/21/2017 (aeg) (Entered: 12/19/2017) |
| 12/19/2017 | 9536 | MOTION for Reconsideration re 9527 Notice (Other) filed by PLAINTIFF(S). Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order) (LUBEL, LANCE) Modified on 12/21/2017 (aeg) (Entered: 12/19/2017) |
| 12/20/2017 | 9537 | NOTICE by PLAINTIFF(S) re 7410 Notice (Other) - *Notice of Withdrawal of Attorney's Lien re RC Owens and Susan Owens* (LEWIS, RICHARD) (Entered: 12/20/2017) |
| 12/20/2017 | 9538 | NOTICE of Withdrawal of Appearance by RICHARD S. LEWIS on behalf of PLAINTIFF(S)(LEWIS, RICHARD) (Entered: 12/20/2017) |
| 12/20/2017 | 9539 | NOTICE *of Joinder* by PLAINTIFF(S) re 9535 MOTION for Reconsideration *filed by Class Counsel The Locks Law Firm Regarding the Court's December 11, 2017 Order*, 9536 MOTION for Reconsideration re 9527 Notice (Other), with Certificate of Service. (ST. JACQUES, MICHAEL) Modified on 12/21/2017 (aeg) (Entered: 12/20/2017) |
| 12/29/2017 | 9540 | NOTICE of Appearance by HOWARD I. LANGER on behalf of MOKARAM LAW FIRM, THE BUCKLEY LAW GROUP, THE STERN LAW GROUP with Certificate of Service(LANGER, HOWARD) (Entered: 12/29/2017) |
| 12/29/2017 | 9541 | NOTICE of Appearance by EDWARD A. DIVER on behalf of MOKARAM LAW FIRM, THE BUCKLEY LAW GROUP, THE STERN LAW GROUP with Certificate of Service(DIVER, EDWARD) (Entered: 12/29/2017) |
| 12/29/2017 | 9542 | NOTICE of Appearance by PETER E. LECKMAN on behalf of MOKARAM LAW FIRM, THE BUCKLEY LAW GROUP, THE STERN LAW GROUP with Certificate of Service(LECKMAN, PETER) (Entered: 12/29/2017) |
| 12/29/2017 | 9543 | NOTICE by MOKARAM LAW FIRM, THE BUCKLEY LAW GROUP, THE STERN LAW GROUP re 9535 MOTION for Reconsideration *filed by Class Counsel The Locks Law Firm Regarding the Court's December 11, 2017 Order*, 9536 MOTION for Reconsideration re 9527 Notice (Other),,, *of Joinder* (LANGER, HOWARD) (Entered: 12/29/2017) |
| 01/02/2018 | 9544 | NOTICE OF JOINDER filed by PLAINTIFF(S). (GOMEZ, JOHN) Modified on 1/3/2018 (ems). (Entered: 01/02/2018) |
| 01/03/2018 | 9545 | Response to Expert Report of William Rubenstein by PLAINTIFF(S). (LOCKS, GENE) (Entered: 01/03/2018) |
| 01/03/2018 | 9546 | NOTICE OF JOINDER filed by PLAINTIFF(S). (MITNICK, CRAIG) Modified on 1/3/2018 (ems). (Entered: 01/03/2018) |
| 01/03/2018 | 9547 | Response of Goldberg, Persky & White, P.C., Girardi Keese and Russomanno & Borrello to Expert Report of Professor William B. Rubenstein re 9526 Report Of *Professor William B. Rubenstein* by PLAINTIFF(S). (Attachments: # 1 Exhibit A- |

**-598-**

| | | Omalu Declaration, # 2 Exhibit B-Stein Declaration, # 3 Exhibit C-Paladino Affidavit, # 4 Exhibit D-Girardi Affidavit, # 5 Exhibit E-Fitzsimmons Affidavit, # 6 Exhibit F-Cohen Affidavit, # 7 Exhibit G-Russomanno Affidavit, # 8 Exhibit H-Luckasevic Counter-Declaration, # 9 Exhibit I-Article, # 10 Exhibit J-Monetary Award Claims Report) (LUCKASEVIC, JASON) (Entered: 01/03/2018) |
|---|---|---|
| 01/03/2018 | 9548 | Response to Expert Report of William B. Rubenstein by PLAINTIFF(S). (WEISS, SOL) (Entered: 01/03/2018) |
| 01/03/2018 | 9549 | Response to Expert Report of William B. Rubenstein by MOKARAM LAW FIRM, THE BUCKLEY LAW GROUP, THE STERN LAW GROUP. (LANGER, HOWARD) (Entered: 01/03/2018) |
| 01/03/2018 | 9550 | Response and Declaration of Robert A. Stein to Professor William B. Rubenstein's Expert Report re 9527 Notice (Other),,, 9526 Report Of *Professor William B. Rubenstein* by PLAINTIFF(S). (Attachments: # 1 Exhibit A) (STEIN, ROBERT) (Entered: 01/03/2018) |
| 01/03/2018 | 9551 | Response by The Yerrid Law Firm and Neurocognitive Football Lawyers to Professor Rubensteins Expert Report by PLAINTIFF(S). (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2) (BARNES, HEATHER) (Entered: 01/03/2018) |
| 01/03/2018 | 9552 | Response re 9527 Notice (Other),,, 9526 Report Of *Professor William B. Rubenstein* by PLAINTIFF(S). (Attachments: # 1 Declaration of Christopher A. Seeger) (SEEGER, CHRISTOPHER) (Entered: 01/03/2018) |
| 01/03/2018 | 9553 | Response - *Joinder to the Response of the Locks Law Firm to the Expert Report of Professsor William B. Rubenstein* by PLAINTIFF(S). (ZIMMERMAN, CHARLES) (Entered: 01/03/2018) |
| 01/03/2018 | 9554 | Response re 9526 Report Of *ExpertProfessor William B. Rubenstein* by PLAINTIFF(S). (Attachments: # 1 Text of Proposed Order) (LUBEL, LANCE) (Entered: 01/03/2018) |
| 01/03/2018 | 9555 | NOTICE OF JOINDER filed by PLAINTIFF(S). Certificate of Service. (CLOUD, IAN) Modified on 1/4/2018 (ems). (Entered: 01/03/2018) |
| 01/03/2018 | 9556 | Response by Class Counsel Podhurst Orseck, P.A. to the Expert Report of Professor William B. Rubenstein re 9526 Report Of by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 01/03/2018) |
| 01/03/2018 | 9557 | NOTICE by PLAINTIFF(S) *Filing Response* (ST. JACQUES, MICHAEL) (Entered: 01/03/2018) |
| 01/04/2018 | 9558 | NOTICE by RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, RD LEGAL FUNDING, LLC re 9517 Order, *Notice of Appeal with Certificate of Service* **(FILED IN ERROR; ATTORNEY TO RE-FILE)** (BROTMAN, ELLEN) Modified on 1/4/2018 (ems). (Entered: 01/04/2018) |
| 01/04/2018 | 9559 | NOTICE OF APPEAL as to 9517 Order, by RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, RD LEGAL FUNDING, LLC, RONI DERSOVITZ. Filing fee $ 505, receipt number 0313-12550054. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (BROTMAN, ELLEN) Modified on 1/4/2018 (ems). (Entered: 01/04/2018) |
| 01/08/2018 | 9560 | ORDER - UPON CONSIDERATION OF THE MOTION BY SETH A. KATZ AND STEPHEN J. BURG OF BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C. AND JAMES R.DUGAN OF THE DUGAN LAW FIRM, APLC TO WITHDRAW AS COUNSEL... SAID MOTION IS GRANTED. THE ABOVE LISTED COUNSEL |

| | | ARE HEREBY GRANTED LEAVE TO WITHDRAW AS COUNSEL FOR RALPH E. TAMM. THE CLAIMS ADMINISTRATOR SHALL REMOVE THE ABOVE-LISTED COUNSEL FROM THE NFL CLASS ACITON SETTLEMENT PORTAL. WITHDRAWING COUNSEL HAS NOT SOUGHT AN ATTORNEYS' LIEN AGAINST ANY FUTURE RECOVERY.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/8/2018. 1/8/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/08/2018) |
|---|---|---|
| 01/08/2018 | 9561 | ORDER THAT THE COURT FINDS IT IS NECESSARY TO APPOINT COUNSEL FOR PRO SE CLASS MEMBERS. THE COURT APPOINTS DENNIS R. SUPLEE, ESQUIRE, TO REPRESENT THESE PRO SE SETTLEMENT CLASS MEMBERS WHERE THERE HAS BEEN A DEMOSTRATED NEED FOR LEGAL COUNSEL; ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 1/8/2018. 1/8/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 01/08/2018) |
| 01/09/2018 | 9562 | STIPULATION TO EXTEND PAGE LIMITS AND DEADLINES by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC. **(COPY SENT TO CHAMBERS FOR APPROVAL)** (DARRELL, EDEN) Modified on 1/10/2018 (ems). (Entered: 01/09/2018) |
| 01/10/2018 | 9563 | STIPULATION AND ORDER... WHEREAS, ON OCTOBER 24, 2017 THIS COURT ISSUED AN ORDER (ECF NO. 8472)("OCTOBER ORDER") SETTING FORTH THE SCHEDULE AND TERMS FOR MOTION PRACTICE WITH RESPECT TO THE PLAINTIFFS' SECOND AMENDED MASTER ADMINISTRATIVE COMPLAINT AGAINST THE RIDDELL DEFENDANTS (SMAC-RIDDELL);... WHEREAS, THIS IS THE PARTIES' FIRST AGREEMENT AND REQUEST ON EXTENDING DEADLINES AND PAGE LIMITS FOR BRIEFS WITH RESPECT TO INITIAL MOTION PRACTICE ON THE SAMAC-RIDDELL, AND THE PARTIES AGREE THAT THE REQUESTED DEADLINE EXTENSION WILL NOT PREJUDICE EITHER PARTY; IT IS HEREBY STIPULATED AND AGREED BY THE PARTIES THAT:... APPROVED BY THE COURT:. SIGNED BY HONORABLE ANITA B. BRODY ON 1/10/2018. 1/10/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/10/2018) |
| 01/12/2018 | 9564 | NOTICE of Docketing Record on Appeal from USCA re 9559 Notice of Appeal (Credit Card Payment), filed by RD LEGAL FUNDING PARTNERS, LP, RONI DERSOVITZ, RD LEGAL FUNDING, LLC, RD LEGAL FINANCE, LLC. USCA Case Number 18-1040 (ems) (Entered: 01/12/2018) |
| 01/12/2018 | 9565 | NOTICE by PLAINTIFF(S) OF ATTORNEY'S LIEN (TURNBULL, SANGA) (Entered: 01/12/2018) |
| 01/12/2018 | 9566 | APPLICATION/PETITION TO ESTABLISH ATTORNEY'S LIEN by PLAINTIFF(S). (TURNBULL, SANGA) (Entered: 01/12/2018) |
| 01/12/2018 | 9567 | NOTICE by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC. re 9562 Notice (Other), 9563 Stipulation and Order,,, Proposed Order (DARRELL, EDEN) (Entered: 01/12/2018) |
| 01/16/2018 | 9568 | NOTICE OF ATTORNEY'S LIEN by PLAINTIFF(S). Certificate of Service. (ems) (Entered: 01/17/2018) |

**-600-**

| | | |
|---|---|---|
| 01/17/2018 | 9569 | ORDER that (I) THE RIDDELL DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE SAMAC-RIDDELL ON GROUNDS INCLUDING BUT NOT LIMITED TO RULES 8,9, AND 12 (REFERRED TO IN PARAGRAPH 3(ii) OF THE OCTOBER ORDER), SHALL NOT EXCEED FORTY-FIVE (45) PAGES;... (iii) THE PAGE-LIMIT EXTENSIONS ABOVE SHALL NOT APPLY TO.... SIGNED BY HONORABLE ANITA B. BRODY ON 1/16/2018. 1/17/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/17/2018) |
| 01/19/2018 | 9570 | MOTION for Relief Under 60B filed by PLAINTIFF(S). (Attachments: # 1 Text of Proposed Order, # 2 Brief, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(WEISS, SOL) Modified on 1/19/2018 (ems). (Entered: 01/19/2018) |
| 01/19/2018 | 9571 | REPLY OF PROFESSOR WILLIAM B. RUBENSTEIN TO RESPONSES TO EXPERT REPORT 1/19/2018 ENTERED AND COPIES SENT VIA ECF.(mo, ) (Entered: 01/19/2018) |
| 01/19/2018 | 9572 | RESPONSE in Opposition re 9389 MOTION to Remand to State Court *Consolidated Opposition to Motions to Remand (See Attachment A)* filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Attachment A, # 2 Text of Proposed Order)(CEREGHINI, PAUL) (Entered: 01/19/2018) |
| 01/19/2018 | 9573 | MOTION to Strike *SAMAC-SFCs and motions to remand of those asserting claims for the first time against Riddell defendants* filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Brief, Certificate of Service. (Attachments: # 1 Brief in Support of Motion to Strike, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Text of Proposed Order)(CEREGHINI, PAUL) Modified on 1/22/2018 (ems). (Entered: 01/19/2018) |
| 01/19/2018 | 9574 | MOTION to Dismiss *Based on Preemption* filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Brief, Certificate of Service. (Attachments: # 1 Brief in Support of Motion to Dismiss, # 2 Text of Proposed Order)(CEREGHINI, PAUL) Modified on 1/22/2018 (ems). (Entered: 01/19/2018) |
| 01/19/2018 | 9575 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..Brief, Certificate of Service. (Attachments: # 1 Brief in Support of Motion to Dismiss, # 2 Appendix 1, # 3 Appendix 2, # 4 Appendix 3, # 5 Appendix 4, # 6 Text of Proposed Order)(CEREGHINI, PAUL) Modified on 1/22/2018 (ems). (Entered: 01/19/2018) |
| 01/23/2018 | 9576 | ORDER - BY ORDER DATED SEPTEMBER 14, 2017 (ECF NO. 8376), THE COURT APPOINTED PROFESSOR WILLIAM B. RUBENSTEIN AN EXPERT ON ATTORNEYS' FEES AND ASKED PROFESSOR RUBENSTEIN TO SUBMIT A REPORT ON TWO SETS OF ISSUES.... ACCORDINGLY, INTERESED PARTIES MAY FILE A SURREPLY TO RESPOND TO ANY UPDATES CONTAINED IN PROFESSOR RUBENSTEIN'S REPLY LIMITED TO 5 PAGES IN LENGTH, ON OR BEFORE TUESDAY, JANUARY 30, 2018.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/23/2018. 1/23/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/23/2018) |

| 01/26/2018 | 9577 | First MOTION to Compel filed by PLAINTIFF(S).Motion requesting that the Court issue an order directing class counsel, sub class counsel and all additional law firms who have provided common benefit work to negotiate with one another in good faith in an attempt to reach a universal recommendation with regard to the allocation of common benefit fees. (Attachments: # 1 Text of Proposed Order)(MITNICK, CRAIG) Modified on 1/29/2018 (ems). (Entered: 01/26/2018) |
|---|---|---|
| 01/26/2018 | 9578 | MOTION for Order *to Prohibit Violation of Dec. 8, 2017 Order, for Corrective Disclosures, to Compel, and to Direct the Cambridge Entities* filed by PLAINTIFF(S).Memorandum, Declaration, Certificate of Service. (Attachments: # 1 Memorandum of Law in Support of Motion for Order, # 2 Declaration of Christopher A. Seeger, # 3 Text of Proposed Order Proposed Order)(SEEGER, CHRISTOPHER) Modified on 1/29/2018 (ems). (Entered: 01/26/2018) |
| 01/30/2018 | 9579 | NOTICE by PLAINTIFF(S) re 9571 Report Of *William Rubenstein (Surreply of the Locks Law Firm to Professor Rubenstein's Report)* (LOCKS, GENE) (Entered: 01/30/2018) |
| 01/30/2018 | 9580 | ORDER - AFTER CONSIDERING CAMBRIDGE ENTITIES' REQUEST (ATTACHED) TO RESPOND TO CO-LEAD COUNSEL'S MOTION (ECF 8578), IT IS ORDERED that CAMBRIDGE ENTITIES REQUEST IS DENIED AT THIS TIME. ATTORNEY FOR CAMBRIDGE ENTITIES, MARTIN L. BLACK, MUST FIRST GO THROUGHT THE PROPER PROCEDURE IN ORDER TO RESPOND ON ECF. SEE LOCAL R. OF CIV. PRO. 83.5.2. ASSUMING MARTIN L BLACK COMPLIES WITH THE REQUIREMENTS FOR FILING IN THIS COURT, ANY FUTURE RESPONSE that HE FILES ON BEHALF OF CAMBRIDGE ENTITIES WILL BE CONSIDERED BY THIS COURT ON THE STANDARD TIME FRAME FOR MOTION PRACTICE. SEE LOCAL R. OF CIVL PRO. 7.1.. SIGNED BY HONORABLE ANITA B. BRODY on 1/30/2018. 1/30/2018 ENTERED AND COPIES VIA ECF AND FAX.(mo, ) (mo, ). (Entered: 01/30/2018) |
| 01/30/2018 | 9581 | Memorandum of Law re 9571 Report Of, 9526 Report Of / *Surreply to the Reply of Professor William B. Rubenstein to Responses to Expert Report* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Certificate of Service) (KARP, BRAD) (Entered: 01/30/2018) |
| 01/30/2018 | 9582 | NOTICE by MOKARAM LAW FIRM, THE BUCKLEY LAW GROUP, THE STERN LAW GROUP *SURREPLY TO THE REPORT OF PROFESSOR WILLIAM B. RUBENSTEIN* (LANGER, HOWARD) (Entered: 01/30/2018) |
| 01/30/2018 | 9583 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Melvin Farr, Jr.* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 01/30/2018) |
| 01/30/2018 | 9584 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 01/30/2018) |
| 01/30/2018 | 9585 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Michael Farr and Cynthia Farr* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 01/30/2018) |
| 01/30/2018 | 9586 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 01/30/2018) |
| 01/30/2018 | 9587 | NOTICE by PLAINTIFF(S) re 9571 Report Of (Attachments: # 1 Exhibit)(ST. JACQUES, MICHAEL) (Entered: 01/30/2018) |

**-602-**

| 01/30/2018 | 9588 | NOTICE by PLAINTIFF(S) re 9571 Report Of *Professor William Rubenstein (Surreply to the Report of Professor of William Rubenstein)* (LUBEL, LANCE) (Entered: 01/30/2018) |
| 02/01/2018 | 9589 | NOTICE by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC / *Letter requesting extension of page limits.* (Attachments: # 1 Text of Proposed Order) (BIRENBOIM, BRUCE) (Entered: 02/01/2018) |
| 02/02/2018 | 9590 | Copy of a Transfer Order from the JPML that pursuant to 28 U.S.C. 1407 these actions are transferred to the ED-PA and assigned to the Honorable Anita B. Brody for inclusion in the coordinated or consolidated pretrial proceedings: MA 1:17-12244. (ems) (Entered: 02/02/2018) |
| 02/02/2018 | 9591 | ORDER - WHEREAS, THIS COURT ISSUED ORDERS ON JULY 18, 2017, SEPTEMBER 20, 2017 AND DECEMBER 14, 2017 SETTING FORTH THE PAGE LIMITS APPLICABLE TO THE NFL PARTIES' MOTION TO DISMISS THE SECOND AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT... IT IS ORDERED that: (I) THE NFL PARTIES ARE GRANTED AN ADDITIONAL FIFTEEN (15) PAGES TO BE ALLOCATED BETWEEN THEIR TWO REPLY BRIEFS (IN SUPPORT OF THEIR MOTION TO DISMISS ON PREEMPTION GROUNDS AND THEIR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM RESPECTIVELY), SO THAT THOSE TWO REPLY BRIEFS SHALL NOT EXCEED SEVENTY-FIVE (75) PAGES IN TOTAL.. SIGNED BY HONORABLE ANITA B. BRODY ON 2/1/2018. 2/2/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 02/02/2018) |
| 02/02/2018 | 9592 | RESPONSE in Opposition re 9570 MOTION for Relief Under 60B filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 02/02/2018) |
| 02/02/2018 | 9593 | RESPONSE to Motion re 9573 MOTION to Strike *SAMAC-SFCs and motions to remand of those asserting claims for the first time against Riddell defendants* filed by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 02/02/2018) |
| 02/02/2018 | 9594 | RESPONSE to Motion re 9573 MOTION to Strike *SAMAC-SFCs and motions to remand of those asserting claims for the first time against Riddell defendants* filed by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(COHEN, RON) (Entered: 02/02/2018) |
| 02/06/2018 | 9595 | RESPONSE to Motion re 9577 First MOTION to Compel *Co-Lead Class Counsel's Response to Motion of Craig R. Mitnick to Compel Negotiations Respecting Petition for Award of Common Benefit Fees* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 02/06/2018) |
| 02/07/2018 | 9596 | Copy of Conditional Transfer Order (CTO-102) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: FL-S 1:17-24727. (ems) (Entered: 02/07/2018) |
| 02/09/2018 | 9597 | REPLY to Response to Motion re 9570 MOTION for Relief Under 60B filed by PLAINTIFF(S). (Attachments: # 1 Exhibit)(WEISS, SOL) Modified on 2/12/2018 (ems). (Entered: 02/09/2018) |
| 02/09/2018 | 9598 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Reginald Austin and Cynthia Austin* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 02/09/2018) |

| 02/09/2018 | 9599 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/09/2018) |
| 02/09/2018 | 9600 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Anthony Dorsett, Jr.* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 02/09/2018) |
| 02/09/2018 | 9601 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/09/2018) |
| 02/09/2018 | 9602 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Stanley Pritchett, Jr.* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 02/09/2018) |
| 02/09/2018 | 9603 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/09/2018) |
| 02/09/2018 | 9604 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Joel Williams and Carolyn Williams* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 02/09/2018) |
| 02/09/2018 | 9605 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/09/2018) |
| 02/09/2018 | 9606 | NOTICE by PLAINTIFF(S) *Notice of Attorney Lien - Michael McDonald* (LOCKS, GENE) (Entered: 02/09/2018) |
| 02/09/2018 | 9607 | REPLY to Response to Motion re 9573 MOTION to Strike *SAMAC-SFCs and motions to remand of those asserting claims for the first time against Riddell defendants* filed by ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Exhibit A) (CEREGHINI, PAUL) (Entered: 02/09/2018) |
| 02/12/2018 | 9608 | SHORT FORM COMPLAINT AGAINST RIDDELL DEFENDANTS *LAWRENCE BARNES* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9609 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9610 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9611 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9612 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9613 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9614 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9615 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9616 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |

| 02/12/2018 | 9617 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9618 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9619 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9620 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9621 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9622 | SHORT FOR COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9623 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9624 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9625 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9626 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9627 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9628 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9629 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9630 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9631 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9632 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9633 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9634 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9635 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9636 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |

| 02/12/2018 | 9637 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9638 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9639 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9640 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9641 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9642 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9643 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9644 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9645 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9646 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9647 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9648 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9649 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9650 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9651 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9652 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9653 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9654 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9655 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9656 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |

| 02/12/2018 | 9657 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| --- | --- | --- |
| 02/12/2018 | 9658 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9659 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9660 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9661 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9662 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9663 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9664 | REPLY to Response to Motion re 8404 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Motion to Dismiss the Second Amended Complaint* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 02/12/2018) |
| 02/12/2018 | 9665 | REPLY to Response to Motion re 8403 MOTION to Dismiss *the Second Amended Complaint on Preemption Grounds* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 02/12/2018) |
| 02/12/2018 | 9666 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9667 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9668 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9669 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9670 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9671 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9672 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9673 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9674 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9675 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |

| 02/12/2018 | 9676 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9677 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9678 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9679 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9680 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9681 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9682 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9683 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9684 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9685 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9686 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9687 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9688 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9689 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9690 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9691 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9692 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9693 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9694 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9695 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |

| 02/12/2018 | 9696 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9697 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9698 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9699 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9700 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9701 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9702 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9703 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9704 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9705 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9706 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9707 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9708 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9709 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9710 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9711 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9712 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9713 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9714 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9715 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |

| 02/12/2018 | 9716 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| --- | --- | --- |
| 02/12/2018 | 9717 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9718 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9719 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9720 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9721 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/12/2018 | 9722 | SHORT FORM COMPLAINT *AGAINST RIDDELL DEFENDANTS* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/12/2018) |
| 02/13/2018 | 9723 | NOTICE of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S) (LUCKASEVIC, JASON) (Entered: 02/13/2018) |
| 02/13/2018 | 9724 | NOTICE of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S) (LUCKASEVIC, JASON) (Entered: 02/13/2018) |
| 02/13/2018 | 9725 | Declaration *of Thomas V. Girardi In Support of Plaintiffs' Short Form Complaints* by PLAINTIFF(S). (GIRARDI, THOMAS) (Entered: 02/13/2018) |
| 02/13/2018 | 9726 | REPLY to Response to Motion re 9389 MOTION to Remand to State Court filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (LUCKASEVIC, JASON) (Entered: 02/13/2018) |
| 02/13/2018 | 9727 | REPLY to Response to Motion re 9318 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9291 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9156 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9354 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9267 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9342 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9345 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9219 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9195 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9249 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9225 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9168 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9210 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9234 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9204 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9171 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9237 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9264 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9378 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To* |

**-610-**

*Remand Brief*, 9186 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9243 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9276 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9385 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9309 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9172 MOTION to Remand, 9370 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9270 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9367 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9300 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9279 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9177 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9363 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9147 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9330 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9285 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9312 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9288 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9189 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9240 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9174 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9351 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9255 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9315 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9297 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9153 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9150 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9382 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9216 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9306 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9348 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9282 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9258 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9252 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9198 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9360 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9375 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9357 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9192 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9321 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9327 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9303 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9183 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9333 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To

-611-

| | | |
|---|---|---|
| | | *Remand Brief*, 9246 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9165 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9222 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9339 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9261 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9336 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9364 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9213 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9180 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9201 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9207 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9162 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9228 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9294 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9324 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9231 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion To Remand Brief*, 9144 Plaintiff's Brief and Statement of Issues in Support of Request for Review *Motion to Remand* filed by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(COHEN, RON) (Entered: 02/13/2018) |
| 02/13/2018 | 9728 | REPLY to Response to Motion re 9427 MOTION to Remand to State Court , 9495 MOTION to Remand to State Court *Brittney Blue*, 9492 MOTION to Remand to State Court *for John Cornell*, 9483 MOTION to Remand to State Court *for Bruce Herron*, 9447 MOTION to Remand to State Court *for Robert Douglass*, 9489 MOTION to Remand to State Court *for Raymond Austin*, 9472 MOTION to Remand to State Court *for Malinda K. DeLeone*, 9487 MOTION to Remand to State Court *for Gerald Sullivan* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A - 2012 Duerson Motion to Remand N.D. IL)(GIBBS, WILLIAM) (Entered: 02/13/2018) |
| 02/16/2018 | 9729 | NOTICE by ALL AMERICAN SPORTS CORPORATION, BRG SPORTS HOLDING CORP., BRG SPORTS, INC., BRG SPORTS, LLC, EB SPORTS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC. re 9575 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Notice of Amended Appendix 4 in Support of Motion to Dismiss the Plaintiffs' Second Amended Master Administrative Complaint and Amended Short Form Complaints* (Attachments: # 1 Appendix 4 (amended)) (CEREGHINI, PAUL) (Entered: 02/16/2018) |
| 02/16/2018 | 9730 | NOTICE by ALL AMERICAN SPORTS CORPORATION, BRG SPORTS HOLDING CORP., BRG SPORTS, INC., BRG SPORTS, LLC, EB SPORTS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC. re 9572 Response in Opposition to Motion, *Notice of Correction to Consolidated Brief in Opposition to Various Movants' Motions to Remand* (CEREGHINI, PAUL) (Entered: 02/16/2018) |
| 02/19/2018 | 9731 | MOTION to Withdraw as Attorney *for Frank Middleton* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 3/19/2018 (ems). (Entered: 02/19/2018) |
| 02/19/2018 | 9732 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 02/19/2018) |
| 02/19/2018 | 9733 | MOTION to Withdraw as Attorney *for Quintas McDonald* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 3/19/2018 (ems). (Entered: 02/19/2018) |

| 02/19/2018 | 9734 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 02/19/2018) |
| --- | --- | --- |
| 02/19/2018 | 9735 | MOTION to Withdraw as Attorney *for Jeffery Jackson* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 3/19/2018 (ems). (Entered: 02/19/2018) |
| 02/19/2018 | 9736 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 02/19/2018) |
| 02/19/2018 | 9737 | MOTION to Withdraw as Attorney *for William Russell, III and Joanne Russell* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 3/19/2018 (ems). (Entered: 02/19/2018) |
| 02/19/2018 | 9738 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 02/19/2018) |
| 02/19/2018 | 9739 | MOTION to Withdraw as Attorney *for Richard Van Druten* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 3/19/2018 (ems). (Entered: 02/19/2018) |
| 02/19/2018 | 9740 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 02/19/2018) |
| 02/19/2018 | 9741 | MOTION to Withdraw as Attorney *for Keith Wortman and Kathleen Wortman* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 3/19/2018 (ems). (Entered: 02/19/2018) |
| 02/19/2018 | 9742 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 02/19/2018) |
| 02/19/2018 | 9743 | MOTION to Withdraw as Attorney *for Scott Hutchinson and Sharyn Hutchinson* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 3/19/2018 (ems). (Entered: 02/19/2018) |
| 02/19/2018 | 9744 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 02/19/2018) |
| 02/19/2018 | 9745 | MOTION to Withdraw as Attorney *for Erric Pegram and Michelle Pegram* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 3/19/2018 (ems). (Entered: 02/19/2018) |
| 02/19/2018 | 9746 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 02/19/2018) |
| 02/19/2018 | 9747 | MOTION to Withdraw as Attorney *for David Pivec and Sharon Pivec* filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 3/19/2018 (ems). (Entered: 02/19/2018) |
| 02/19/2018 | 9748 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 02/19/2018) |
| 02/20/2018 | 9749 | ORDER - PURSUANT TO THIS COURT'S CONTINUING AND EXCLUSIVE JURISDICTION UNDER ARTICLE XXVII OF THE NFL CONCUSSION SETTLEMENT AGREEMENT (THE "SETTLEMENT AGREEMENT"), IT IS ORDERED that THE CLAIMS ADMINISTRATOR PAY DIRECTLY TO THE SETTLEMENT CLASS MEMBER ANY AND ALL MONETARY AWARDS IN CASES WHERE THERE HAS BEEN FOUND AN IMPROPER ASSIGNMENT OF ANY RIGHT OR CLAIM PURSUANT TO SECTION 30.1 OF THE SETTLEMENT AGREEMENT.. SIGNED BY HONORABLE ANITA B. BRODY ON 2/20/2018. 2/20/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 02/20/2018) |

| 02/20/2018 | 9750 | ORDER - ON JANUARY 26, 2018, CO-LEAD COUNSEL FILED A MOTION (ECF NO. 9578) TO PREVENT THIRD-PARTY FUNDER CAMBRIDGE ENTITIES-1(footnote) FROM VIOLATING THE COURT'S DECEMBER 8, 2017 EXPLANATION AND ORDER (ECF NO. 9517).... 1. BEFORE MAKING A FINAL DETERMINATION ON CO-LEAD COUNSEL'S MOTION ON APRIL 2, 2018 AT 10:00 A.M. IN COURTROOM 7B ON THE 7TH FLOOR OF THE U.S. COURTHOUSE, 601 MARKET ST., PHILADELPHIA, PA. 2. TO ENSURE THAT CLASS MEMBERS' RIGHTS UNDER THE SETTLEMENT AGREEMENT - AND REINFORCED IN THE EXPLANATION AND ORDER - ARE NOT VIOLATED BEFORE A DECISION IS REACHED AT OR AFTER THE HEARING, IT IS ORDERED-3(footnote) that CAMBRIDGE ENTITIES MUST "STAND STILL" UNTIL RESOLUTION OF CO-LEAD COUNSEL'S MOTION, MEANING THAT:... 3. CO-LEAD COUNSEL'S REQUEST FOR PRODUCTION BY CAMBRIDGE ENTITIES OF ALL DOCUMENTS RELATING TO CLASS MEMBERS' RETIREMENT FUNDS BEING HELD BY THEM AND ACCOUNTINGS TO SUCH FUNDS IS GRANTED. ON OR BEFORE MARCH 2, 2018 CAMBRIDGE ENTITIES MUST PRODUCE:... CO-LEAD COUNSEL IS DIRECTED TO ENSURE THAT CAMBRIDGE ENTITIES IS SERVED WITH THIS ORDER-4(footnote). SIGNED BY HONORABLE ANITA B. BRODY ON 2/20/2018. 2/20/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 02/20/2018) |
| 02/26/2018 | 9751 | MOTION for Leave to File *Surreply to Plaintiffs' Replies (ECF Nos. 9726 & 9727) to Riddell's Consolidated Brief in Opposition to Various Movants' Motions to Remand* filed by ALL AMERICAN SPORTS CORPORATION, BRG SPORTS HOLDING CORP., BRG SPORTS, INC., BRG SPORTS, LLC, EB SPORTS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. Certificate of Service. (Attachments: # 1 Exhibit 1)(CEREGHINI, PAUL) Modified on 3/19/2018 (ems). (Entered: 02/26/2018) |
| 02/26/2018 | 9752 | ORDER that ORAL ARGUMENT REGARDING THE NFL PARTIES' MOTION TO DISMISS ON PREEMPTION GROUNDS (ECF NO. 8403);-1(footnote) SMITH PLAINTIFFS' MOTION TO REMAND (ECF NO. 7963) AND LEWIS, SMITH AND KENNEY PLAINTIFFS' MOTION TO REMAND (ECF NO. 7966) WILL COMMENCE ON MONDAY, APRIL 16, 2018 AT 11:00 A.M. IN COURTROOM 7-B, 7TH FLOOR, U.S. COURTHOUSE 601 MARKET STREET, PHILADELPHIA, PA. ARGUMENT ON THE NFL PARTIES' MOTION TO DISMISS WILL TAKE PLACE FIRST FOLLOWED BY ARGUMENT ON THE MOTIONS TO REMAND.. SIGNED BY HONORABLE ANITA B. BRODY ON 2/26/2018. 2/26/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 02/26/2018) |
| 02/26/2018 | | Set/Reset Deadlines as to 8403 MOTION to Dismiss *the Second Amended Complaint on Preemption Grounds*, 7966 MOTION to Remand to State Court , 7963 MOTION to Remand to State Court .ORAL ARGUMENT IS SET FOR 4/16/2018 11:00 AM IN COURTROOM 7B BEFORE HONORABLE ANITA B. BRODY. (mo, ) (Entered: 02/26/2018) |
| 02/27/2018 | 9753 | APPLICATION/PETITION *Joint Application by Co-Lead Class Counsel and Counsel for the National Football League and NFL Properties, LLC for Appointment of Two Appeals Advisory Panel Members and Removal of One Appeals Advisory Panel Member* by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Exhibit B)(SEEGER, CHRISTOPHER) (Entered: 02/27/2018) |
| 02/28/2018 | 9754 | SETTLEMENT IMPLEMENTATION DETERMINATION - THE SETTLEMENT AGREEMENT COMPENSATES CLASS MEMBERS FOR HEAD INJURIES SUFFERED WHILE PLAYING IN THE NATIONAL FOOTBALL LEAGUE.... BASED ON A REVIEW OF THE SPECIAL MASTER'S RULING, A REVIEW OF THE NFL PARTIES' OBJECTION, AND A REVIEW OF THE OPPOSITIONS TO |

**-614-**

| | | THE NFL PARTIES' OBJECTION, INLCUDING OPPOSITIONS FILED BY CO-LEAD CLASS COUNSEL AND TWO INDIVIDUAL CLASS MEMBERS,-2(footnote) I APPROVE AND ADOPT THE CONCLUSIONS IN SPECIAL MASTER PRITCHETT'S RULING. ACCORDINGLY, THE NFL PARTIES' OBJECTION IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 2/28/2018. (Attachments: # 1 Exhibit #1, # 2 Exhibit #2, # 3 Exhibit #3, # 4 Exhibit #4) 2/28/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 02/28/2018) |
|---|---|---|
| 03/05/2018 | 9755 | NOTICE OF APPEAL as to 9749 Order,, by RONI DERSOVITZ, RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, RD LEGAL FUNDING, LLC. Filing fee $ 505, receipt number 0313-12666225. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (Attachments: # 1 Certificate of Service)(ROTH, MICHAEL) Modified on 3/6/2018 (ems). (Entered: 03/05/2018) |
| 03/05/2018 | 9756 | Short Form Complaint - Kevin Bradley Burnett, II by PLAINTIFF(S). (SHER, BRANDON) (Entered: 03/05/2018) |
| 03/06/2018 | 9757 | ORDER that THE JOINT APPLICATION BY CO-LEAD CLASS COUNSEL AND COUNSEL FOR THE NATIONAL FOOTBALL LEAGUE ANDNFL PROPERTIES LLC FOR APPOINTMENT OF TWO APPEALS ADVISORY PANEL MEMBERS AND REMOVAL OF ONE APPEALS ADVISORY PANEL MEMBER... IT IS STIPULATED AND AGREED. IT IS SO ORDERED THIS 5TH DAY OF MARCH, 2018, that THE RECOMMENDED CANDIDATES FOR THE AAP ARE APPROVED AND R. STEPHAN MAYER IS REMOVED FROM THE AAP. SIGNED BY HONORABLE ANITA B. BRODY ON 3/5/2018. 3/6/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/06/2018) |
| 03/06/2018 | 9758 | NOTICE - IN THEIR REPLY BRIEFS IN THE OPT OUT LITIGATION,-1(footnote) THE NFL PARTIES RAISE ARGUMENTS SEEKING TO DISMISS CLAIMS MADE BY PLAINTIFFS IN ROBINSON V. NATIONAL FOOTBALL LEAGUE, NO. 17-2736 AND HERNANDEZ V. NATIONAL FOOTBALL LEAGUE, NO. 18-464. SEE, e.g., ECF NO. 9665 AT 32 N.19; ECF NO. 9664 AT 35-37. THE ARGUMENTS MADE BY THE NFL...SIGNED BY HONORABLE ANITA B. BRODY ON 3/6/2018.ENTERED AND COPIES VIA ECF.(mo, ) Modified on 3/6/2018 (mo, ). (Entered: 03/06/2018) |
| 03/06/2018 | 9759 | NOTICE - ON FEBRUARY 16, 2018, THE COURT RECEIVED A LETTER (ATTACHED) FROM COUNSEL FOR PLAINTIFFS IN THE ACTIONS ROBINSON V. NATIONAL FOOTBALL LEAGUE, NO. 17-2736 AND HERNANDEZ V. NATIONAL FOOTBALL LEAGUE, NO. 18-464. ON FEBRUARY 26, 2018, THE NFL PARTIES RESPONDED, ALSO VIA LETTER TO THE COURT (ATTACHED). BECAUSE THESE LETTERS WERE NOT FILED ON ECF, THE COURT WILL NOT CONSIDER THEIR CONTENTS.SIGNED BY HONORABLE ANITA B. BRODY ON 3/6/2018.ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/06/2018) |
| 03/06/2018 | 9760 | ORDER THAT THE ATTACHED RULES GOVERNING ATTORNEY'S LIENS ARE ADOPTED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/6/2018. 3/6/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 03/06/2018) |
| 03/07/2018 | 9761 | MOTION to Stay re 9559 Notice of Appeal (Credit Card Payment), 9755 Notice of Appeal (Credit Card Payment), filed by RONI DERSOVITZ, RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, RD LEGAL FUNDING, LLC. Memorandum, Certificate of Service. (Attachments: # 1 Memorandum of Law in |

| | | |
|---|---|---|
| | | Support of Motion for Stay)(ROTH, MICHAEL) Modified on 3/19/2018 (ems). (Entered: 03/07/2018) |
| 03/08/2018 | 9762 | NOTICE by THRIVEST SPECIALTY FUNDING, LLC re 8470 MOTION for Order *Directing the Claims Administrator to Withhold Any Portions of Class Member Monetary Awards Purportedly Owed to Certain Third-Party Lenders and Claims Services Providers, and Direct Disclosure to the Claims Administrator of Existen of Subsequent Authority Relating to Class Counsel's Motion to Withold, w/ Certificate of Service (Attachments: # 1 Exhibit A)*(BUCKLEY, PETER) (Entered: 03/08/2018) |
| 03/09/2018 | 9763 | NOTICE of Docketing Record on Appeal from USCA re 9755 Notice of Appeal (Credit Card Payment), filed by RD LEGAL FUNDING PARTNERS, LP, RONI DERSOVITZ, RD LEGAL FUNDING, LLC, RD LEGAL FINANCE, LLC. USCA Case Number 18-1482 (ems) (Entered: 03/09/2018) |
| 03/09/2018 | 9764 | Statement *Regarding Request for Conference Concerning Claims Administrator's Handling of Third Party Funders* by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 03/09/2018) |
| 03/12/2018 | 9765 | NOTICE of Change of Address by CHRISTOPHER A. SEEGER(SEEGER, CHRISTOPHER) (Entered: 03/12/2018) |
| 03/12/2018 | 9766 | NOTICE by RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, RD LEGAL FUNDING, LLC re 9764 Statement *Letter in Response to Thrivest's March 9, 2018 Statement Regarding Request for Conference (ECF No. 9764)* (ROTH, MICHAEL) (Entered: 03/12/2018) |
| 03/14/2018 | 9767 | ORDER - WHEREAS, ON OCTOBER 24, 2017 THIS COURT ISSUED AN ORDER (ECF NO. 8472) ("OCTOBER ORDER") SETTING FORTH THE SCHEDULE AND TERMS FOR MOTION PRACTICE WITH RESPECT TO THE PLAINTIFFS' SECOND AMENDED MASTER ADMINISTRATIVE COMPLAINT AGAINST THE RIDDELL DEFENDANTS (SAMAC-Riddell);... IT IS ORDERED that: (i) THE DEADLINE FOR THE PLAINTIFFS' OPPOSITION BRIEFS TO THE RIDDELL DEFENDANTS' MOTIONS TO DISMISS THE SAMAC-RIDDELL ON PREEMPTION GROUNDS AND ON GROUNDS INCLUDING BUT NOT LIMITED TO RULES 8, 9, AND 12)REFERRED TO IN PARAGRAPH 3(i) AND (ii) OF THE OCTOBER ORDER SHALL BE EXTENDED TO MARCH 28, 2018. (ii) THE DEADLINE FOR TEH RIDDELL DEFENDANTS REPLY BRIEFS IN SUPPORT OF THE RIDDELL DEFENDANTS' MOTIONS TO DISMISS... SHALL BE EXTENDED TO MAY 14, 2018.. SIGNED BY HONORABLE ANITA B. BRODY ON 3/14/2018. 3/14/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/14/2018) |
| 03/14/2018 | 9768 | Response of Co-Lead Class Counsel to Notice of Subsequent Authority by Thrivest Specialty Funding, LLC re 9762 Notice (Other), by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 03/14/2018) |
| 03/14/2018 | 9769 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(STERN, JEFFREY) (Entered: 03/14/2018) |
| 03/14/2018 | 9770 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(STERN, JEFFREY) (Entered: 03/14/2018) |
| 03/14/2018 | 9771 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(STERN, JEFFREY) (Entered: 03/14/2018) |
| 03/14/2018 | 9772 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(STERN, JEFFREY) (Entered: 03/14/2018) |

**-616-**

| 03/15/2018 | 9773 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/15/2018) |
| 03/15/2018 | 9774 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien) **(FILED IN ERROR PER ATTORNEY)** (BUCKLEY, DAVID) Modified on 3/16/2018 (ems). (Entered: 03/15/2018) |
| 03/15/2018 | 9775 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/15/2018) |
| 03/15/2018 | 9776 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/15/2018) |
| 03/15/2018 | 9777 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/15/2018) |
| 03/15/2018 | 9778 | STATUS REPORT *of Co-Lead Class Counsel re: Cambridge Entities' Production in Response to Court's February 20, 2018 Order [ECF No. 9750]* by PLAINTIFF(S). (Attachments: # 1 Exhibit A - Under Seal, # 2 Exhibit B - 2018-03-01 Letter from G. Milon, # 3 Exhibit C - Redacted 2018-03-07 Letter from C. Seeger, # 4 Exhibit D - 2018-03-13 Email from G. Milon, # 5 Exhibit E - 2018-03-05 Email from G. Milon, # 6 Exhibit F - 2018-02-21 Email from M. Black, # 7 Exhibit G - 2018-02-12 Email Chain between M. Black and C. Seeger re: Notice of Withdrawal)(SEEGER, CHRISTOPHER) (Entered: 03/15/2018) |
| 03/15/2018 | 9779 | EXHIBIT A Filed Under Seal Submitted Pursuant to the Order dated February 20, 2018 re: 9778 Status Report by PLAINTIFF(S). (Applies to All Actions). (FILED UNDER SEAL).(tjd) (tjd). Modified on 3/15/2018 (tjd). Modified on 3/15/2018 (tjd). (Entered: 03/15/2018) |
| 03/15/2018 | 9780 | Response of Co-Lead Class Counsel to Thrivest's [ECF No. 9764] and RD Legal's [ECF No. 9766] Request for Conference by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 03/15/2018) |
| 03/16/2018 | 9781 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/16/2018) |
| 03/16/2018 | 9782 | Notice of Attorney's Lien relating to Charlie Williams Only - Settlement Program ID 100016580 by PLAINTIFF(S). (SCHNIEDERS, CHRISTOPHER) Modified on 3/19/2018 (ems). (Entered: 03/16/2018) |
| 03/16/2018 | 9783 | Statement *C4C and Atlas Request to Join Thrivest's Request for a Conference* by CASH4CASES, INC.. (Attachments: # 1 Exhibit C4C Letter to Claims Admin 3.14.2018)(SLOEZEN, RAUL) (Entered: 03/16/2018) |
| 03/19/2018 | 9784 | First MOTION to Intervene filed by PLAINTIFF(S). Motion to Seek Court Intervention. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C)(COBEN, LARRY) Modified on 3/19/2018 (ems). (Entered: 03/19/2018) |
| 03/20/2018 | 9785 | MOTION for Joinder filed by PLAINTIFF(S). Motion to Join Co-Lead counsel's application for Court Intervention. (MITNICK, CRAIG) Modified on 3/20/2018 (ems). (Entered: 03/20/2018) |

| 03/20/2018 | 9786 | MOTION to Appoint Counsel *The Locks Law Firm as Administrative Class Counsel* filed by PLAINTIFF(S). Memorandum, Certificate of service. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Exhibits A through I)(LANGFITT, DAVID) Modified on 3/20/2018 (ems). (Attachment 2 replaced on 3/22/2018, as per Phone Call with Judge Brody) (va, ). (Entered: 03/20/2018) |
|---|---|---|
| 03/20/2018 | 9787 | Statement *to Join Request for a Conference* by WALKER PRESTON CAPITAL HOLDINGS LLC. (EPSTEIN, LEE) (Entered: 03/20/2018) |
| 03/20/2018 | 9788 | NOTICE OF WITHDRAWAL OF MOTION TO SEEK COURT INTERVENTION filed by PLAINTIFF(S). (COBEN, LARRY) Modified on 3/22/2018 (ems). (Entered: 03/20/2018) |
| 03/20/2018 | 9789 | Preacipe to Add Corrected Exhibits to Document No. 9786 and Remove the Incorrect Exhibits from the Docket (document no. 9786-2) by PLAINTIFF(S). (Attachments: # 1 Exhibit Corrected Exhibits)(LANGFITT, DAVID) Modified on 3/22/2018 (ems). (Entered: 03/20/2018) |
| 03/21/2018 | 9790 | RESPONSE in Opposition re 9761 MOTION to Stay re 9559 Notice of Appeal (Credit Card Payment), 9755 Notice of Appeal (Credit Card Payment), *Response of Class Member Andrew Stewart* filed by PLAINTIFF(S). (Attachments: # 1 Text of Proposed Order)(ROSENTHAL, MICHAEL) (Entered: 03/21/2018) |
| 03/21/2018 | 9791 | NOTICE of Appearance by VERNON E. INGE, JR on behalf of PLAINTIFF(S) (INGE, VERNON) (Entered: 03/21/2018) |
| 03/21/2018 | 9792 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(STERN, JEFFREY) (Entered: 03/21/2018) |
| 03/21/2018 | 9793 | RESPONSE in Opposition re 9761 MOTION to Stay re 9559 Notice of Appeal (Credit Card Payment), 9755 Notice of Appeal (Credit Card Payment), *filed by Co-Lead Class Counsel on behalf of Class Members opposing stay pending appeal the effectuation of this Court's Dec. 8, 2017 Explanation and Order [ECF No. 9517] and Feb. 20, 2018 Order [ECF No. 9749]* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 03/21/2018) |
| 03/22/2018 | 9794 | NOTICE OF APPEAL as to 9749 Order,, by ATLAS LEGAL FUNDING I, LP, ATLAS LEGAL FUNDING II, LP, ATLAS LEGAL FUNDING III, LP, ATLAS LEGAL FUNDING, LLC, CASH4CASES, INC.. Filing fee $ 505, receipt number 0313-12698754. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. (Attachments: # 1 Certificate of Service)(GIROUD, BRIDGET) Modified on 3/22/2018 (ems). (Entered: 03/22/2018) |
| 03/22/2018 | 9795 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/22/2018) |
| 03/22/2018 | 9796 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/22/2018) |
| 03/22/2018 | 9797 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/22/2018) |
| 03/22/2018 | 9798 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/22/2018) |
| 03/22/2018 | 9799 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/22/2018) |

| 03/22/2018 | 9800 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/22/2018) |
|---|---|---|
| 03/22/2018 | 9801 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/22/2018) |
| 03/22/2018 | 9802 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/22/2018) |
| 03/22/2018 | 9803 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/22/2018) |
| 03/22/2018 | 9804 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/22/2018) |
| 03/22/2018 | 9805 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/22/2018) |
| 03/22/2018 | 9806 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 03/22/2018) |
| 03/22/2018 | 9807 | MOTION for Costs *Reimbursement* filed by PLAINTIFF(S).. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order)(COBEN, LARRY) Modified on 3/23/2018 (ems). (Entered: 03/22/2018) |
| 03/22/2018 | 9808 | NOTICE of Withdrawal of Appearance by BRANDON R. SHER on behalf of PLAINTIFF(S)(SHER, BRANDON) (Entered: 03/22/2018) |
| 03/23/2018 | 9809 | NOTICE OF WITHDRAWAL OF LIEN by PLAINTIFF(S). Certificate of Service. (Attachments: # 1 Exhibit Ltr regarding lien)(GIDDENS, JOHN) Modified on 3/23/2018 (ems). (Entered: 03/23/2018) |
| 03/23/2018 | 9810 | NOTICE by PLAINTIFF(S) *Notice Correction of Certificate of Service* (BARNES, HEATHER) (Entered: 03/23/2018) |
| 03/23/2018 | 9811 | RESPONSE in Support re 9761 MOTION to Stay re 9559 Notice of Appeal (Credit Card Payment), 9755 Notice of Appeal (Credit Card Payment), filed by RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, RD LEGAL FUNDING, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(ROTH, MICHAEL) (Entered: 03/23/2018) |
| 03/26/2018 | 9812 | ORDER that RD LEGAL'S MOTION (1) TO STAY THE COURT'S ORDERS ADDRESSING THE ADMINISTRATION OF THE SETTLEMENT AGREEMENT REGARDING THIRD-PARTY FUNDERS PENDING ITS APPEAL OF THOSE ORDERS OR, ALTERNATIVELY, (2) TO STAY THE ORDERS PENDING RD LEGAL'S APPLICATION FOR A STAY TO THE THIRD CIRCUIT (ECF NO. 9761) IS DENIED.-1(footnote). SIGNED BY HONORABLE ANITA B. BRODY ON 3/26/2018.3/26/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/26/2018) |
| 03/26/2018 | 9813 | MOTION for Joinder *of Pope McGlamry in Motion by The Locks Law Firm for Appointmnet of Administrative Class Counsel and for a Hearing* filed by PLAINTIFF(S). Certificate of Service. (MCGLAMRY, MICHAEL) Modified on 3/27/2018 (ems). (Entered: 03/26/2018) |
| 03/26/2018 | 9814 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Lien as to Chris Sanders* (GIDDENS, JOHN) Modified on 3/27/2018 (ems). (Entered: 03/26/2018) |
| 03/26/2018 | 9815 | MOTION for Protective Order *Former NFL Player-Claimants' Motion to Prohibit Ex Parte Interviews With Their Treating Physicians* filed by PLAINTIFF(S).Former NFL Player-Claimants' Motion to Prohibit Ex-Parte Interviews With Their Treating |

| | | Physicians. (BARNES, HEATHER) Modified on 3/27/2018 (ems). (Entered: 03/26/2018) |
|---|---|---|
| 03/26/2018 | 9816 | MOTION for Joinder *for a Hearing to Correct Fundamental Implementation Failures in Claims Processing* filed by PLAINTIFF(S).. (LEWIS, RICHARD) Modified on 3/27/2018 (ems). (Entered: 03/26/2018) |
| 03/27/2018 | 9817 | ORDER that RIDDELL DEFENDANTS' MOTION FOR LEAVE TO FILE A SURREPLY (ECF NO. 9751) IS GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 3/26/2018.3/27/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/27/2018) |
| 03/27/2018 | 9818 | REPLY to Response to Motion re 9389 MOTION to Remand to State Court *Riddell Defendants' Surreply to Plaintiffs' Replies (ECF Nos. 9726 & 9727) to Riddell's Consolidated Brief in Opposition to Various Movants' Motions to Remand* filed by ALL AMERICAN SPORTS CORPORATION, BRG SPORTS HOLDING CORP., BRG SPORTS, INC., BRG SPORTS, LLC, EB SPORTS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Revised Attachment A) (CEREGHINI, PAUL) (Entered: 03/27/2018) |
| 03/27/2018 | 9819 | NOTICE by PLAINTIFF(S) re 9786 MOTION to Appoint Counsel *The Locks Law Firm as Administrative Class Counsel* (MATHENY, MATTHEW) (Entered: 03/27/2018) |
| 03/27/2018 | 9820 | NOTICE by PLAINTIFF(S) *Joinder in Request for Action to Correct Implementation Failures in the Claims and BAP Administration* (ZIMMERMAN, CHARLES) (Entered: 03/27/2018) |
| 03/27/2018 | 9821 | MOTION for Joinder *of MCCORVEY LAW, LLC in Motion by The Locks Law Firm for Appointment of Administrative Class Counsel and for a Hearing* filed by PLAINTIFF(S). Certificate of Service. (MCCORVEY, DERRIEL) Modified on 3/28/2018 (ems). (Entered: 03/27/2018) |
| 03/28/2018 | 9822 | ORDER that RON COHEN, COUNSEL FOR PLAINTIFFS WITH CLAIMS AGAINST RIDDELL DEFENDANTS, MUST SHOW CAUSE ON OR BEFORE APRIL 6, 2018 AS TO WHY THE COURT SHOULD NOT DIRECT THE CLERK'S OFFICE TO WITHDRAW ALL REMAND MOTIONS AND MOTIONS RELATING TO REMAND MOTIONS FILED BY MR. COHEN.... SIGNED BY HONORABLE ANITA B. BRODY ON 3/28/2018. 3/28/2018 ENTERED AND COPIES VIA ECF. (mo, ) (Entered: 03/28/2018) |
| 03/28/2018 | 9823 | RESPONSE in Opposition re 9575 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 03/28/2018) |
| 03/28/2018 | 9824 | NOTICE by PLAINTIFF(S) re 9786 MOTION to Appoint Counsel *The Locks Law Firm as Administrative Class Counsel* (FLEISHMAN, WENDY) (Entered: 03/28/2018) |
| 03/28/2018 | 9825 | Memorandum in Opposition re 9574 MOTION to Dismiss *Based on Preemption* , RESPONSE in Opposition filed by PLAINTIFF(S). (FLEISHMAN, WENDY) (Entered: 03/28/2018) |
| 03/28/2018 | 9826 | ORDER THAT THE MOTIONS TO WITHDRAW AS ATTORNEY (DOC. NOS. 9731, 9733, 9735, 9737, 9739, 9741, 9743, 9745, AND 9747) ARE GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 3/28/2018. 3/28/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-683, 13-51, 12-4185, 12-2219) (ems) (Entered: 03/28/2018) |

**-620-**

| 03/28/2018 | 9827 | NOTICE by PLAINTIFF(S) re 9786 MOTION to Appoint Counsel *The Locks Law Firm as Administrative Class Counsel* (LUCKASEVIC, JASON) (Entered: 03/28/2018) |
| --- | --- | --- |
| 03/28/2018 | 9828 | NOTICE by PLAINTIFF(S) re 9786 MOTION to Appoint Counsel *The Locks Law Firm as Administrative Class Counsel* (FRANCO, DAVID) (Entered: 03/28/2018) |
| 03/28/2018 | 9829 | NOTICE by PLAINTIFF(S) re 9786 MOTION to Appoint Counsel *The Locks Law Firm as Administrative Class Counsel OF JOINDER* (HAKIMI, ANOUSH) (Entered: 03/28/2018) |
| 03/28/2018 | 9830 | MOTION for Joinder *of Casey Gerry in Motion by the Locks Law Firm for Appointment of Administrative Class Counsel and for a Hearing* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Certificate of Service) (SCHENK, FREDERICK) Modified on 3/29/2018 (ems). (Entered: 03/28/2018) |
| 03/28/2018 | 9832 | ORDER THAT THE CLERK OF COURT SHALL ISSUE A NEW CASE NUMBER IN THIS MATTER: 18-MD-2323-AB, WHICH SHALL BE RESERVED EXCLUSIVELY FOR A SUBSET OF MATTERS IN THE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION LITIGATION RELATING TO ATTORNEY INVOLVEMENT WITH ASSIGNMENTS AND ATTEMPTED ASSIGNMENTS OF MONETARY AWARDS ARISING OUT OF THIS LITIGATION, AND OTHER ISSUES AS ARE SPECIFIED BY THE COURT. SIGNED BY HONORABLE ANITA B. BRODY ON 3/28/2018. 3/29/2018 ENTERED AND COPIES E-MAILED. (ems) (Entered: 03/29/2018) |
| 03/28/2018 | 9833 | ORDER THAT IN RELATION TO THE ALLOCATION OF CLASS BENEFIT FEES AMONG COUNSEL REPRESENTING THE CLASS, THE COURT WILL HOLD A HEARING ON 5/15/2018, AT 10:00 A.M. IN COURTROOM 7B ON THE 7TH FLOOR OF THE U.S. COURTHOUSE, 601 MARKET ST., PHILADELPHIA, PA.. ALL ATTORNEYS WHO WERE APPOINTED CO-LEAD CLASS COUNSEL, CLASS COUNSEL, OR SUBCLASS COUNSEL, AS SET FORTH IN DOC. NO. 6084, MUST APPEAR. ON OR BEFORE 5/1/2018, EACH LAW FIRM SEEKING PAYMENT FROM THE ATTORNEYS' FEES QUALIFIED SETTLEMENT FUND MUST SUBMIT A SWORN DECLARATION ANSWERING THE QUESTIONS AND ATTACHING THE DOCUMENTS AS SET FORTH BELOW; ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 3/28/2018. 3/29/2018 ENTERED AND COPIES E-MAILED. (ems) (Entered: 03/29/2018) |
| 03/29/2018 | 9831 | NOTICE by PLAINTIFF(S) re 9786 MOTION to Appoint Counsel *The Locks Law Firm as Administrative Class Counsel Notice of Joinder of Class Counsel Podhurst Orseck, P.A.* (MARKS, STEVEN) (Entered: 03/29/2018) |
| 03/29/2018 | 9834 | MOTION for Joinder *to the Locks Law Firm's request for the appointment of Administrative Counsel and Court intervention* filed by PLAINTIFF(S). Memorandum. (MITNICK, CRAIG) Modified on 3/29/2018 (ems). (Entered: 03/29/2018) |
| 03/29/2018 | 9835 | NOTICE by PLAINTIFF(S) re 9786 MOTION to Appoint Counsel *The Locks Law Firm as Administrative Class Counsel Request by Co-Lead Counsel for Deadline for Joinders and Date for Response to Motion* (SEEGER, CHRISTOPHER) (Entered: 03/29/2018) |
| 03/29/2018 | 9836 | MOTION for Joinder *Re 9786 Motion to Appoint Counsel The Locks Law Firm as Administrative Class Counsel* filed by PLAINTIFF(S). Certificate of Service. (WYATT, JUSTIN) Modified on 3/29/2018 (ems). (Entered: 03/29/2018) |

| 03/29/2018 | 9837 | NOTICE by PLAINTIFF(S) *re 9786 MOTION to Appoint Counsel the Locks Law Firm as Administrative Class Counsel* (CLOUD, IAN) (Entered: 03/29/2018) |
| 03/29/2018 | 9838 | NOTICE by PLAINTIFF(S) *In Response to Request for Deadline for Joinders and Date for Response to Motion* (LOCKS, GENE) (Entered: 03/29/2018) |
| 03/29/2018 | 9839 | MOTION for Joinder filed by PLAINTIFF(S). Joinder in the Request for a Hearing. (COBEN, LARRY) Modified on 3/30/2018 (ems). (Entered: 03/29/2018) |
| 03/30/2018 | 9840 | NOTICE by PLAINTIFF(S) *In Response to Request for Deadline for Joinders and Date for Response to Motion w/Certificate of Service* (LOCKS, GENE) (Entered: 03/30/2018) |
| 03/30/2018 | 9841 | NOTICE: ACCEPTANCE OF RESCISSION by JO-ANN M. VERRIER. (APPLIES TO ALL ACTIONS) (ems) (Entered: 03/30/2018) |
| 03/30/2018 | 9842 | MOTION for Joinder *in the Motion by the Locks Law Firm for Appointment of Admnistrative Class Counsel, and for a Hearing (Doc. No. 9786)* filed by PLAINTIFF(S). Certificate of Service. (TARRICONE, ANTHONY) Modified on 3/30/2018 (ems). (Entered: 03/30/2018) |
| 03/30/2018 | 9843 | MOTION for Joinder *(1) Partial Joinder of the Motion Brought By The Locks Law Firm For Appointment Of Administrative Counsel, (2) Motion To Review Deprivation Of Appeal Rights and (3) Requesting Oral Argument* filed by PLAINTIFF(S). (BARNES, HEATHER) Modified on 3/30/2018 (ems). (Entered: 03/30/2018) |
| 04/02/2018 | 9844 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Hearing held on 4/2/2018. Court Reporter: ESR. (ems) (Entered: 04/02/2018) |
| 04/02/2018 | 9845 | ORDER THAT ALL MOTIONS TO JOIN THE MOTION OF CLASS COUNSEL THE LOCKS LAW FIRM FOR APPOINTMENT OF ADMINISTRATIVE COUNSEL (DOC. NO. 9786) MUST BE FILED ON OR BEFORE 4/3/2018. CO-LEAD CLASS COUNSEL MAY SUBMIT A RESPONSE TO THE MOTION AND ALL RELATED PAPERS ON OR BEFORE 4/13/2018. THE COURT WILL NOT ACCEPT ANY REPLIES TO CO-LEAD CLASS COUNSEL'S RESPONSE. SIGNED BY HONORABLE ANITA B. BRODY ON 4/2/2018. 4/2/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 04/02/2018) |
| 04/02/2018 | 9846 | DECLARATION OF RON A. COHEN IN SUPPORT OF MOTION TO WITHDRAW ALL REMAND MOTIONS filed by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(COHEN, RON) Modified on 4/3/2018 (ems). (Entered: 04/02/2018) |
| 04/02/2018 | 9847 | NOTICE by PLAINTIFF(S) *of Withdrawal of Joinder* (CLOUD, IAN) (Entered: 04/02/2018) |
| 04/03/2018 | 9848 | NOTICE by PLAINTIFF(S) *of Joinder by Locks Law Firm to Motion of Anapol Weiss to Compel Reimbursement of Common Benefit Expenses and Establishment of Education Fund* (LOCKS, GENE) (Entered: 04/03/2018) |
| 04/03/2018 | 9849 | NOTICE of Docketing Record on Appeal from USCA re 9794 Notice of Appeal (Credit Card Payment), filed by ATLAS LEGAL FUNDING III, LP, CASH4CASES, INC., ATLAS LEGAL FUNDING, LLC, ATLAS LEGAL FUNDING I, LP, ATLAS LEGAL FUNDING II, LP. USCA Case Number 18-1639 (ems) (Entered: 04/03/2018) |
| 04/03/2018 | 9850 | Audio File: MDL Hearing held on April 2, 2018 at 10:10 AM before the HONORABLE ANITA B. BRODY in Courtroom 7B. (ctk) (Entered: 04/03/2018) |
| 04/03/2018 | 9851 | NOTICE by PLAINTIFF(S) *of Withdrawal of Joinder to Locks' Motion* (FLEISHMAN, WENDY) (Entered: 04/03/2018) |

| 04/03/2018 | 9852 | RESPONSE to Motion re 9785 MOTION for Joinder *Co-Lead Class Counsel's Response to Motion to Join Anapol Weiss' Request for a Hearing to Seek Court Intervention on the Processing of Certain Claims* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 04/03/2018) |
| 04/03/2018 | 9853 | MOTION for Joinder *to Motion of Class Counsel the Locks Law Firm for Appointment of Administrative Counsel* filed by PLAINTIFF(S). (HAGEN, BRUCE) Modified on 4/3/2018 (ems). (Entered: 04/03/2018) |
| 04/03/2018 | 9854 | MOTION for Joinder *IN MOTION BY THE LOCKS LAW FIRM FOR APPOINTMENT OF ADMINISTRATIVE CLASS COUNSEL* filed by PLAINTIFF(S). (TURNBULL, SANGA) Modified on 4/3/2018 (ems). (Entered: 04/03/2018) |
| 04/03/2018 | 9855 | MOTION for Joinder filed by PLAINTIFF(S). (FERRARO, KELLY) Modified on 4/4/2018 (ems). (Entered: 04/03/2018) |
| 04/03/2018 | 9856 | MOTION for Joinder *in the Motion of Class Counsel, the Locks Law Firm, for Appointment of Administrative Counsel (ECF 9786)* filed by PLAINTIFF(S). Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Text of Proposed Order)(LUBEL, LANCE) Modified on 4/4/2018 (ems). (Entered: 04/03/2018) |
| 04/04/2018 | 9857 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 04/04/2018) |
| 04/05/2018 | 9858 | NOTICE by PLAINTIFF(S) *of Attorney's Lien regarding Charles Lee* (Attachments: # 1 Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 04/05/2018) |
| 04/05/2018 | 9859 | NOTICE by PLAINTIFF(S) *of Attorney's Lien regarding Kenneth McEntyre* (Attachments: # 1 Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 04/05/2018) |
| 04/05/2018 | 9860 | MEMORANDUM AND/OR OPINION SIGNED BY HONORABLE ANITA B. BRODY ON 4/5/2018. 4/5/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 04/05/2018) |
| 04/05/2018 | 9861 | ORDER OF MEMORANDUM AND/OR OPINION (ECF NO. 9860) - IN ACCORDANCE WITH THE COMMON BENEFIT FUND MEMORANDUM ISSUED APRIL 5, 2018, IT IS ORDERED that CLASS COUNSEL IS AWARDED $106,817,220.62 IN ATTORNEYS' FEES AND $5,682,779.38 IN COSTS ($112.5 MILLION TOTAL). IT IS FURTHER ORDERED that SHAWN WOODEN, THE ESTATE OF COREY SWINSON, AND THE ESTATE OF KEVIN TURNER ARE EACH TO BE PAID $100,000 FROM THE COMMON BENEFIT FUND AS AN INCENTIVE AWARD FOR BEING CLASS REPRESENTATIVES.. SIGNED BY HONORABLE ANITA B. BRODY ON 4/5/2018. 4/5/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 04/05/2018) |
| 04/05/2018 | 9862 | MEMORANDUM AND/OR OPINION. SIGNED BY HONORABLE ANITA B. BRODY ON 4/5/2018. 4/5/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 04/05/2018) |
| 04/05/2018 | 9863 | ORDER OF MEMORANDUM AND/OR OPINION (ECF NO. 9862) - IN ACCORDANCE WITH THE FEE CAP MEMORANDUM ISSUED ON APRIL 5, 2018, IT IS ORDERED that FEES TO IRPAs ARE CAPPED AT 22% PLUS REASONABLE COSTS UNLESS THE TERMS OF A CONTINGENT FEE CONTRACT REFLECT A RATE LOWER THAN THE 22% FEE CAP, IN WHICH CASE THE LOWER FEE WILL APPLY. IN EXCEPTIONAL OR UNIQUE CIRCUMSTANCES, THE COURT WILL ENTERTAIN PETITIONS SEEKING AN |

| | | UPWARD OR DOWNWARD DEVIATION FROM PRESUMPTIVE FEE CAP. IT IS FURTHER ORDERED that, PURSUANT TO 28 U.S.C. SS 636, ALL PETITIONS SEEKING AN UPWARD OR DOWNWARD DEVIATION FROM THE PRESUMPTIVE FEE CAP ARE REFERRED TO THE HONORABLE DAVID R. STRAWBRIDGE, UNITED STATES MAGISTRATE JUDGE FOR THE EASTERN DISTRICT OF PENNSYLVANIA. JUDGE STRAWBRIDGE IS AUTHORIZED TO PROMULGATE THE RULES AND PROCEDURES GOVERNING IRPAs' CONTINGENT FEES.. SIGNED BY HONORABLE ANITA B. BRODY ON 4/5/2018. 4/5/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 04/05/2018) |
|---|---|---|
| 04/05/2018 | 9864 | ORDER THAT ALL MOTIONS TO REMAND AND RELATED MOTIONS FILED BY MR. COHEN ARE WITHDRAWN OR MOOT AS DESIGNATED IN THE ATTACHED LIST. SIGNED BY HONORABLE ANITA B. BRODY ON 4/5/2018. 4/5/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 04/05/2018) |
| 04/05/2018 | 9865 | RESPONSE to Motion re 9807 MOTION for Costs *Reimbursement ; Response of Co-Lead Class Counsel, Christopher A. Seeger, to Anapol Weiss' Motion to Compel the Claims Administrator to Reimburse All Class Counsel Out of the "Attorneys' Fees Qualified Settlement Fund" the Monies Each Class Attorney Contributed to the Common Benefit Expenses and for the Entry of an Order Establishing the "Education Fund" Per the Settlement Agreement* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 04/05/2018) |
| 04/06/2018 | 9866 | NOTICE by PLAINTIFF(S) *Petition for Attorney's Fee Lien for Ray Jacobs* (Attachments: # 1 Exhibit A- Executed Retainer Agreement, # 2 Exhibit B- Expenses) (GRESHAM, RONALD) Modified on 4/6/2018 (ems). (Entered: 04/06/2018) |
| 04/06/2018 | 9867 | NOTICE by PLAINTIFF(S) *Petition for Attorney's Fee Lien for Leeland McElroy* (Attachments: # 1 Exhibit A- Executed Retainer Agreement, # 2 Exhibit B- Expenses) (GRESHAM, RONALD) Modified on 4/6/2018 (ems). (Entered: 04/06/2018) |
| 04/06/2018 | 9868 | Declaration re 9862 Memorandum and/or Opinion *Frederick Schenk in response to the Courts Order dated 3/28/18 regarding the Attorneys Fees Qualified Settlement Fund* by PLAINTIFFS' STEERING COMMITTEE. (See Paper #11 in 18-md-2323). (Attachments: # 1 Certificate of Service)(SCHENK, FREDERICK) Modified on 5/1/2018 (tjd). (Entered: 04/06/2018) |
| 04/09/2018 | 9869 | RESPONSE to Motion re 9815 MOTION for Protective Order *Former NFL Player-Claimants' Motion to Prohibit Ex Parte Interviews With Their Treating Physicians of Co-Lead Class Counsel* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 04/09/2018) |
| 04/09/2018 | 9870 | RESPONSE to Motion re 9843 MOTION for Joinder *(1) Partial Joinder of the Motion Brought By The Locks Law Firm For Appointment Of Administrative Counsel, (2) Motion To Review Deprivation Of Appeal Rights and (3) Requesting Oral Argument*, 9815 MOTION for Protective Order *Former NFL Player-Claimants' Motion to Prohibit Ex Parte Interviews With Their Treating Physicians* filed by CLAIMS ADMINISTRATOR. (BROWN, ORRAN) (Entered: 04/09/2018) |
| 04/10/2018 | 9871 | ORDER of USCA as to 9559 Notice of Appeal (Credit Card Payment), filed by RD LEGAL FUNDING PARTNERS, LP, RONI DERSOVITZ, RD LEGAL FUNDING, LLC, RD LEGAL FINANCE, LLC, 9755 Notice of Appeal (Credit Card Payment), filed by RD LEGAL FUNDING PARTNERS, LP, RONI DERSOVITZ, RD LEGAL FUNDING, LLC, RD LEGAL FINANCE, LLC THAT THE FOREGOING MOTION BY CLASS MEMBER ANDREW STEWART TO INTERVENE TO OPPOSE EMERGENCY MOTION OF APPELLANTS TO STAY APPEAL IS GRANTED. |

| | | |
|---|---|---|
| | | THE EMERGENCY MOTION OF APPELLANTS FOR STAY PENDING APPEAL IS DENIED. (ems) (Entered: 04/10/2018) |
| 04/10/2018 | 9872 | NOTICE: ON MONDAY, APRIL 16, 2018 AT 11:00 A.M., THE COURT IS HOLDING ORAL ARGUMENT REGARDING THE NFL PARTIES' MOTION TO DISMISS BASED ON PREEMPTION AND THE MOTIONS TO REMAND IN THE CHIEFS/CARDINALS CASES, SEE ECF NO. 9752. THE COURT EXPECTS THE FOLLOWING APPROXIMATE TIMING FOR ARGUMENT:. NFL PARTIES' MOTION TO DISMISSON PREEMPTION.... MOTIONS TO REMAND...SIGNED BY HONORABLE ANITA B. BRODY ON 4/10/2018.4/10/2018 ENTERED AND COPIES SENT VIA ECF.(mo, ) (Entered: 04/10/2018) |
| 04/10/2018 | 9873 | Statement *Atlas Entities' Letter in Response to Statements made at the April 2, 2018 Hearing* by ATLAS LEGAL FUNDING I, LP, ATLAS LEGAL FUNDING II, LP, ATLAS LEGAL FUNDING III, LP, ATLAS LEGAL FUNDING, LLC. (SLOEZEN, RAUL) (Entered: 04/10/2018) |
| 04/11/2018 | 9874 | NOTICE by PLAINTIFF(S) re 9861 Order (Memorandum and/or Opinion),, 9860 Memorandum and/or Opinion *Letter from Co-Lead Class Counsel Submitting a Proposed Order Regarding Incentive Awards and Common Benefit Expenses in accordance with April 5, 2018 Memorandum Opinion and Order* (Attachments: # 1 Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 04/11/2018) |
| 04/11/2018 | 9875 | NOTICE by PLAINTIFF(S) *for Withdrawal of Lien* (GIDDENS, JOHN) Modified on 4/11/2018 (ems). (Entered: 04/11/2018) |
| 04/12/2018 | 9876 | ORDER - IN ACCORDANCE WITH THIS COURT'S MEMORANDUM OPINION AND ITS ORDER, BOTH DATED APRIL 5, 2018 [ECF NOS. 9860, 9861]; IT IS HEREBY ORDERED that THE FUND ADMINISTRATOR FOR THE ATTORNEYS' FEES QUALIFIED SETTLEMENT FUND ("AFQSF") SHALL PAY THE SUM OF ONE HUNDRED THOUSAND DOLLARS ($100,000) AS AN INCENTIVE AWARD TO EACH OF THE FOLLOWING FROM THE AFQSF: PLAINTIFFS AND CLASS REPRESENTATIVES SHAWN WOODEN; THE ESTATE OF COREY SWINSON; AND THE ESTATE OF KEVIN TURNER; AND, IT IS HEREBY FURTHER ORDERED that THE FUND ADMINISTRATOR SHALL PAY EACH OF THE FIRMS LISTED BELOW, WHICH SUBMITTED COMMON BENEFIT EXPENSES CONTAINED IN THE FEE PETITION,... IT IS ORDERED that EACH OF THE INCENTIVE AWARD RECIPIENTS AND THE LAW FIRMS LISTED ABOVE SHALL COOPERATE WITH THE FUND ADMINISTRATOR OF THE AFQSF TO EFFECTUATE THIS ORDER.. SIGNED BY HONORABLE ANITA B. BRODY ON 4/12/2018. 4/12/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 04/12/2018) |
| 04/12/2018 | 9877 | NOTICE by PLAINTIFF(S) *Notice of Attorneys' Fee Lien* (ST. JACQUES, MICHAEL) (Entered: 04/12/2018) |
| 04/12/2018 | 9878 | PETITION TO ESTABLISH ATTORNEYS' FEE LIEN filed by PLAINTIFF(S). (ST. JACQUES, MICHAEL) Modified on 4/13/2018 (ems). (Entered: 04/12/2018) |
| 04/13/2018 | 9879 | RESPONSE in Opposition re 9786 MOTION to Appoint Counsel *The Locks Law Firm as Administrative Class Counsel* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Certificate of Service)(KARP, BRAD) (Entered: 04/13/2018) |
| 04/13/2018 | 9880 | MOTION to Appoint Expert / *Motion for Appointment of Special Investigator* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. Memorandum, Certificate of Service. (Attachments: # 1 Memorandum of Law in Support of Motion, # |

| | | |
|---|---|---|
| | | 2 Certificate of Service)(KARP, BRAD) Modified on 4/13/2018 (ems). (Entered: 04/13/2018) |
| 04/13/2018 | 9881 | RESPONSE to Motion re 9843 MOTION for Joinder *(1) Partial Joinder of the Motion Brought By The Locks Law Firm For Appointment Of Administrative Counsel, (2) Motion To Review Deprivation Of Appeal Rights and (3) Requesting Oral Argument* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 04/13/2018) |
| 04/13/2018 | 9882 | STATUS REPORT *Status Report by the Claims Administrator* by CLAIMS ADMINISTRATOR. (Attachments: # 1 Declaration)(BROWN, ORRAN) (Entered: 04/13/2018) |
| 04/13/2018 | 9883 | DECLARATION OF MATTHEW L. GARRETSON. (APPLIES TO ALL ACTIONS) (ems) (Entered: 04/13/2018) |
| 04/13/2018 | 9884 | STATEMENT OF THE SPECIAL MASTERS by WENDELL E. PRITCHETT, JO-ANN M. VERRIER. (APPLIES TO ALL ACTIONS) (ems) (Entered: 04/13/2018) |
| 04/13/2018 | 9885 | RESPONSE in Opposition re 9786 MOTION to Appoint Counsel *The Locks Law Firm as Administrative Class Counsel* filed by PLAINTIFF(S). (Attachments: # 1 Declaration of Christopher A. Seeger, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F)(SEEGER, CHRISTOPHER) (Entered: 04/13/2018) |
| 04/16/2018 | 9886 | Copy of Conditional Transfer Order (CTO-103) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: LA-E 2:18-3303. (ems) (Entered: 04/16/2018) |
| 04/16/2018 | 9887 | 🔊 Audio File 4/16/2018 2:00 PM, regarding Hearing held on 4/16/2018, before HONORABLE ANITA B. BRODY (pk, ) (Entered: 04/16/2018) |
| 04/17/2018 | 9888 | Statement *Letter in response to co-lead counsel's Response to Locks Law Firm's Motion for Administrative Counsel* by PLAINTIFF(S). (MITNICK, CRAIG) (FILED UNDER SEAL) Modified on 4/17/2018 (ems). (Entered: 04/17/2018) |
| 04/17/2018 | 9889 | ORDER THAT DOC. NO. 9888 WILL BE PLACED UNDER SEAL BY THE CLERK'S OFFICE. SIGNED BY HONORABLE ANITA B. BRODY ON 4/17/2018. 4/17/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 04/17/2018) |
| 04/18/2018 | 9890 | ORDER THAT THE MOTION OF CLASS COUNSEL THE LOCKS FIRM FOR APPOINTMENT OF ADMINISTRATIVE CLASS COUNSEL (DOC. NO. 9786) IS DENIED. ALL MOTIONS FOR JOINDER IN THE LOCKS FIRM'S MOTION ARE DENIED AS MOOT; ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 4/18/2018. 4/18/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 04/18/2018) |
| 04/18/2018 | 9891 | ORDER finding as moot 3589 Motion to Dismiss for Failure to State a Claim. SIGNED BY HONORABLE ANITA B. BRODY ON 04/18/2018.(BRODY, ANITA) (Entered: 04/18/2018) |
| 04/18/2018 | 9892 | ORDER finding as moot 3590 Motion to Dismiss for Failure to State a Claim. SIGNED BY HONORABLE ANITA B. BRODY ON 4/18/2018.4/18/2018 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(BRODY, ANITA) (Entered: 04/18/2018) |
| 04/18/2018 | 9893 | ORDER finding as moot 6753 Motion. SIGNED BY HONORABLE ANITA B. BRODY ON 4/18/2018.4/18/2018 ENTERED AND COPIES MAILED, E-MAILED |

| | | |
|---|---|---|
| | | AND FAXED.(BRODY, ANITA) (Entered: 04/18/2018) |
| 04/18/2018 | 9894 | ORDER finding as moot 6754 Motion. SIGNED BY HONORABLE ANITA B. BRODY ON 4/18/2018.4/18/2018 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(BRODY, ANITA) (Entered: 04/18/2018) |
| 04/18/2018 | 9895 | ORDER granting 6993 MOTION TO SUBSTITUTE. SIGNED BY HONORABLE ANITA B. BRODY ON 4/18/2018.4/18/2018 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(BRODY, ANITA) (Entered: 04/18/2018) |
| 04/19/2018 | 9896 | ORDER finding as moot 3592 Motion to Dismiss for Failure to State a Claim. SIGNED BY HONORABLE ANITA B. BRODY ON 4/19/2018.4/19/2018 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(BRODY, ANITA) (Entered: 04/19/2018) |
| 04/19/2018 | 9897 | ORDER finding as moot 6526 Motion. SIGNED BY HONORABLE ANITA B. BRODY ON 4/19/2018.4/19/2018 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(BRODY, ANITA) (Entered: 04/19/2018) |
| 04/19/2018 | 9898 | ORDER finding as moot 7534 without prejudice to file when court considers co-lead counsel request for holdback. MOTION FOR DISCOVERY. SIGNED BY HONORABLE ANITA B. BRODY ON 4/19/2018.4/19/2018 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(BRODY, ANITA) (Entered: 04/19/2018) |
| 04/19/2018 | 9899 | ORDER finding as moot 9535 MOTION FOR RECONSIDERATION. SIGNED BY HONORABLE ANITA B. BRODY ON 4/19/2018.4/19/2018 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(BRODY, ANITA) (Entered: 04/19/2018) |
| 04/19/2018 | 9900 | ORDER finding as moot 9785 MOTION FOR JOINDER. SIGNED BY HONORABLE ANITA B. BRODY ON 4/19/2018.4/19/2018 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(BRODY, ANITA) (Entered: 04/19/2018) |
| 04/19/2018 | 9901 | NOTICE by PLAINTIFF(S) re 8240 Notice (Other) *of Withdrawal of Petition to Establish Attorney's Lien* (HODGINS, NORMAN) (Entered: 04/19/2018) |
| 04/19/2018 | 9902 | NOTICE by PLAINTIFF(S) re 8260 Notice (Other) *of Withdrawal of Petition to Establish Attorney's Lien* (HODGINS, NORMAN) (Entered: 04/19/2018) |
| 04/19/2018 | 9903 | NOTICE by PLAINTIFF(S) re 8241 Notice (Other) *of Withdrawal of Petition to Establish Attorney's Lien* (HODGINS, NORMAN) (Entered: 04/19/2018) |
| 04/19/2018 | 9904 | NOTICE by PLAINTIFF(S) re 8239 Notice (Other) *of Withdrawal of Petition to Establish Attorney's Lien* (HODGINS, NORMAN) (Entered: 04/19/2018) |
| 04/19/2018 | 9905 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Kerry Parker* (Attachments: # 1 Exhibit)(HODGINS, NORMAN) (Entered: 04/19/2018) |
| 04/19/2018 | 9906 | NOTICE by PLAINTIFF(S) re 8307 MOTION for Order *Regarding Non-Medical Liens in the NFL Concussion Settlement Program - Notice of Withdrawal* (SEEGER, CHRISTOPHER) (Entered: 04/19/2018) |
| 04/19/2018 | 9907 | NOTICE of Withdrawal of Appearance by RICHARD S. LEWIS on behalf of PLAINTIFF(S)(LEWIS, RICHARD) (Entered: 04/19/2018) |
| 04/19/2018 | 9908 | NOTICE by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC / *Letter Response to 4/17/18 Letter* (Attachments: # 1 Exhibit 1)(BIRENBOIM, BRUCE) (Entered: 04/19/2018) |

| 04/23/2018 | 9909 | TRANSCRIPT of Hearing held on 4/2/2018 before Judge ANITA B. BRODY. Court Reporter: ESR / DOMAN TRANSCRIPTION SERVICE. (ems) (pc). (Entered: 04/23/2018) |
|---|---|---|
| 04/23/2018 | 9910 | REPLY to Response to Motion re 9815 MOTION for Protective Order *Former NFL Player-Claimants' Motion to Prohibit Ex Parte Interviews With Their Treating Physicians* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (BARNES, HEATHER) (Entered: 04/23/2018) |
| 04/24/2018 | 9911 | Copy of TPO Form re 9559 Notice of Appeal (Credit Card Payment), : (ems) (Entered: 04/24/2018) |
| 04/24/2018 | 9912 | Copy of TPO Form re 9755 Notice of Appeal (Credit Card Payment), : (ems) (Entered: 04/24/2018) |
| 04/26/2018 | 9913 | ORDER - ON JULY 13, 2016, THE COURT APPOINTED WENDELL PRITCHELL AND JO-ANN VERRIER AS SPECIAL MASTERS. SEE ECF NO. 6871. UNDER THE SETTLEMENT AGREEMENT, THE SPECIAL MASTERS ARE AUTHORIZED TO "TAKE ALL STEPS NECESSARY TO FAITHFULLY OVERSEE THE IMPLEMENTATION AND ADMINISTRATION OF THE SETTLEMENT AGREEMENT."... THE COURT GAVE NOTICE TO THE PARTIES,AND THEY HAVE CONSENTED TO THE FOLLOWING ADDITIONAL DUTY-1(footnote):... AND NOW THIS 26TH DAY OF APRIL,2018, IT IS ORDERED that AN ADDITIONAL DUTY IS GIVEN TO THE SPECIAL MASTERS AS SPECIFIED ABOVE.. SIGNED BY HONORABLE ANITA B. BRODY ON 4/26/2018. 4/26/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 04/26/2018) |
| 04/26/2018 | 9914 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (TURNBULL, SANGA) (Entered: 04/26/2018) |
| 04/26/2018 | 9915 | NOTICE by PLAINTIFF(S) *OF ATTORNEY'S LIEN* (TURNBULL, SANGA) (Entered: 04/26/2018) |
| 04/27/2018 | 9916 | RESPONSE in Opposition re 9880 MOTION to Appoint Expert */ Motion for Appointment of Special Investigator* filed by PLAINTIFF(S). (LOCKS, GENE) (Entered: 04/27/2018) |
| 04/27/2018 | 9917 | RESPONSE to Motion re 9880 MOTION to Appoint Expert */ Motion for Appointment of Special Investigator* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 04/27/2018) |
| 04/27/2018 | 9918 | RESPONSE to Motion re 9880 MOTION to Appoint Expert */ Motion for Appointment of Special Investigator* filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, JEFF ROHRER, ROBERT ROYAL. (MOLO, STEVEN) (Entered: 04/27/2018) |
| 04/27/2018 | 9919 | RESPONSE in Opposition re 9880 MOTION to Appoint Expert */ Motion for Appointment of Special Investigator* filed by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 04/27/2018) |
| 05/01/2018 | 9920 | Declaration re 9833 Order,, *of Anthony Tarricone Pursuant to the Order dated March 28, 2018* by PLAINTIFF(S). (TARRICONE, ANTHONY) (Entered: 05/01/2018) |
| 05/01/2018 | 9921 | MOTION for Reconsideration *of the Denial of the Locks Law Firm's Motion for Appointment of Administrative Class Counsel* filed by PLAINTIFF(S). Declarations and Certificate of Service. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(LOCKS, GENE) Modified on 5/2/2018 (ems). (Entered: 05/01/2018) |

| 05/01/2018 | 9922 | Declaration *OF THOMAS V. GIRARDI IN RESPONSE TO COURT'S REQUEST FOR DOCUMENTATION RE THIRD PARTY ASSIGNMENTS* by PLAINTIFF(S). (Attachments: # 1 Exhibit "1")(GIRARDI, THOMAS) (Entered: 05/01/2018) |
| --- | --- | --- |
| 05/01/2018 | 9923 | Statement *to Claims Administrator and Special Masters, Re: Thrivest Specialty Funding, LLC Agreements* by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 05/01/2018) |
| 05/02/2018 | 9924 | Emergency MOTION for Temporary Restraining Order *and Order to Show Cause Why Court Should Not Enter Permanent Injunction* filed by PLAINTIFF(S). Memorandum, Declaration, Certificate of Service. (Attachments: # 1 Memorandum of Law in Support of Emergency Motion, # 2 Declaration of Christopher A. Seeger, # 3 Text of Proposed Order Proposed Order)(SEEGER, CHRISTOPHER) Modified on 5/3/2018 (ems). (Entered: 05/02/2018) |
| 05/02/2018 | 9925 | ORDER - AS STATED ON THE RECORD DURING THE MAY 2, 2018 TELECONFERENCE, IT IS ORDERED that CO-LEAD CLASS COUNSEL'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER (ECF NO. 9924) IS GRANTED. THE COURT ENJOINS THE ARBITRATION PROCEEDING SCHEDULED FOR FRIDAY, MAY 4, 2018 AT 1:00 P.M. INVOLVING THRIVEST SPECIALTY FUNDING, LCC. THE COURT WILL HOLD A HEARING ON WEDNESDAY, MAY 9, 2018 AT 11:00 A.M. TO DETERMINE WHETHER A PERMANENT INJUNCTION IS APPROPRIATE.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/2/2018.5/2/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/02/2018) |
| 05/02/2018 | 9926 | MOTION for New Trial filed by PLAINTIFF(S).Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order)(LUBEL, LANCE) (Entered: 05/02/2018) |
| 05/02/2018 | 9927 | NOTICE by PLAINTIFF(S) re 7854 Notice (Other) *of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9928 | NOTICE by PLAINTIFF(S) re 7897 Notice (Other) *of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9929 | NOTICE by PLAINTIFF(S) re 7895 Notice (Other) *of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9930 | NOTICE by PLAINTIFF(S) re 7896 Notice (Other) *of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9931 | NOTICE by PLAINTIFF(S) re 7944 Notice (Other) *of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9932 | NOTICE by PLAINTIFF(S) re 7900 Notice (Other) *of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9933 | NOTICE by PLAINTIFF(S) re 7956 Notice (Other) *of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9934 | NOTICE by PLAINTIFF(S) re 7958 Notice (Other) *of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9935 | NOTICE by PLAINTIFF(S) re 8349 *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9936 | NOTICE by PLAINTIFF(S) re 7828 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |

| 05/02/2018 | 9937 | NOTICE by PLAINTIFF(S) re 7855 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9938 | NOTICE by PLAINTIFF(S) re 7856 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9939 | NOTICE by PLAINTIFF(S) re 7857 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9940 | NOTICE by PLAINTIFF(S) re 7829 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9941 | NOTICE by PLAINTIFF(S) re 7858 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9942 | NOTICE by PLAINTIFF(S) re 7879 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9943 | NOTICE by PLAINTIFF(S) re 7901 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9944 | NOTICE by PLAINTIFF(S) re 7955 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9945 | NOTICE by PLAINTIFF(S) re 7905 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9946 | NOTICE by PLAINTIFF(S) re 7906 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9947 | NOTICE by PLAINTIFF(S) re 7907 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9948 | NOTICE by PLAINTIFF(S) re 7908 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9949 | NOTICE by PLAINTIFF(S) re 7898 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9950 | NOTICE by PLAINTIFF(S) re 7899 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9951 | NOTICE by PLAINTIFF(S) re 7904 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/02/2018 | 9952 | NOTICE by PLAINTIFF(S) re 7902 Notice (Other) *Notice of Withdrawal of Petition to Establish Attorney's Lien* (DUGAN, JAMES) (Entered: 05/02/2018) |
| 05/03/2018 | 9953 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/03/2018) |
| 05/03/2018 | 9954 | NOTICE by PLAINTIFF(S) *of Attorney's Lien as to Eric Crabtree* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 05/03/2018) |
| 05/03/2018 | 9955 | ORDER - ON MARCH 28, 2018, THIS COURT ISSUED AN ORDER INDICATING THAT ALL LAW FIRMS SEEKING PAYMENT FROM THE ATTORNEY'S FEES QUALIFIED SETTLEMENT FUND MUST SUBMIT A SWORN DECLARATION ANSWERING THE QUESTIONS AND ATTACHING THE DOCUMENTS SET FORTH IN THE ORDER.... THE FOLLOWING LAW FIRMS ARE SEEKING PAYMENT FROM THE ATTORNEY'S FEES QUALIFIED SETTLEMENT FUND, BUT THEY HAVE FAILED TO FILE THE MATERIAL ORDERED: DUGAN, LAW |

|            |      | FIRM; GIRARD GIBBS; HERMAN HERMAN & KATZ; ROSE, KLEIN & MARIAIS; SPECTOR ROSEMAN. THESE FIRMS HAVE UNTIL MONDAY MAY 7, 2018 TO FILE THE MATERIALS REQUIRED BY THE COURT IN ITS MARCH 28,2018 ORDER. CONSISTENT WITH THE MARCH 28TH ORDER, THESE FILINGS MUST BE SUBMITTED TO THE COURT ON THE DOCKET FOR CIVIL ACTION 18-2323. ANY FIRM that FAILS TO FILE BY MAY 7, 2018 WILL BE RECLUDED FROM THE RECEIPT OF ANY AWARD OF FEES FROM THE ATTORNEY'S FEES QUALIFIED SETTLEMENT FUND.SIGNED BY HONORABLE ANITA B. BRODY ON 5/3/2018. 5/3/2018 ENTERED AND COPIES VIA ECF.(mo, ) (mo, ) (Entered: 05/03/2018) |
|------------|------|------|
| 05/03/2018 | 9956 | ORDER THAT THE ATTACHED RULES GOVERNING PETITIONS FOR DEVIATION FROM THE FEE CAP ARE ADOPTED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/2/2018. 5/3/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 05/03/2018) |
| 05/03/2018 | 9957 | Emergency MOTION for Discovery *(Limited, Expedited) in Advance of Preliminary Injunction Hearing* filed by THRIVEST SPECIALTY FUNDING, LLC. Certificate of Service. (Attachments: # 1 Text of Proposed Order)(BUCKLEY, PETER) Modified on 5/3/2018 (ems). (Entered: 05/03/2018) |
| 05/03/2018 | 9958 | NOTICE of Hearing:A HEARING REGARDING ECF NO. 9880, THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC'S MOTION FOR THE APPOINTMENT OF A SPECIAL INVESTIGATOR WILL BE HELD ON MAY 30,2018 AT 11:00 A.M. IN COURTROOM 7-B ON THE 7TH FLOOR OF THE U.S. COURTHOUSE, 601 MARKET ST., PHILADELPHIA, PA.5/3/2018 ENTERED AND COPIES SENT VIA ECF.(mo, ) (Entered: 05/03/2018) |
| 05/03/2018 | 9959 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Telephone Conference held on 5/2/2018. Court Reporter: ESR. (ems) (Entered: 05/03/2018) |
| 05/03/2018 | 9960 | NOTICE OF APPEAL as to 9861 Order (Memorandum and/or Opinion),, 9863 Order (Memorandum and/or Opinion),,, by PLAINTIFF(S). Filing fee $ 505. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (LUBEL, LANCE) Modified on 5/4/2018 (ems). (Entered: 05/03/2018) |
| 05/04/2018 | 9961 | ORDER - AS STATED ON THE RECORD DURING THE MAY 4, 2018 TELECONFERENCE, IT IS ORDERED that THRIVEST'S EMERGENCY MOTION FOR DISCOVERY (ECF NO. 9957) IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/4/2018.5/4/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/04/2018) |
| 05/04/2018 | 9962 | NOTICE of Appearance by AMELIA A. STEELHEAD on behalf of PLAINTIFF(S) with Certificate of Service(STEELHEAD, AMELIA) (Entered: 05/04/2018) |
| 05/04/2018 | 9963 | NOTICE of Appearance by AMELIA A. STEELHEAD on behalf of PLAINTIFF(S) with Certificate of Service(STEELHEAD, AMELIA) (Entered: 05/04/2018) |
| 05/04/2018 | 9964 | NOTICE of Appearance by AMELIA A. STEELHEAD on behalf of PLAINTIFF(S) with Certificate of Service(STEELHEAD, AMELIA) (Entered: 05/04/2018) |
| 05/04/2018 | 9965 | NOTICE of Appearance by AMELIA A. STEELHEAD on behalf of PLAINTIFF(S) with Certificate of Service(STEELHEAD, AMELIA) (Entered: 05/04/2018) |
| 05/04/2018 | 9966 | NOTICE of Appearance by AMELIA A. STEELHEAD on behalf of PLAINTIFF(S) with Certificate of Service(STEELHEAD, AMELIA) (Entered: 05/04/2018) |

**-631-**

| 05/04/2018 | 9967 | NOTICE of Appearance by AMELIA A. STEELHEAD on behalf of PLAINTIFF(S) with Certificate of Service(STEELHEAD, AMELIA) (Entered: 05/04/2018) |
| 05/04/2018 | 9968 | Request *that the Court enter an order in Thrivest v. White, scheduling a hearing on Thrivests complaint to compel arbitration that will be combined with the May 9, 2018 hearing in the NFL Concussion Class Action* by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (BUCKLEY, PETER) (Entered: 05/04/2018) |
| 05/04/2018 |  | USCA Appeal Fees received $ 505 receipt number PPE177856 re 9960 Notice of Appeal, filed by PLAINTIFF(S) (ems) (Entered: 05/04/2018) |
| 05/04/2018 | 9969 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Telephone Conference held on 5/4/2018. Court Reporter: ESR. (ems) (Entered: 05/04/2018) |
| 05/07/2018 | 9970 | AMENDED ORDER FOR HEARING - AS WAS INDICATED IN MARCH 28, 2018 ORDER, THE COURT WILL HOLD A HEARING ON MAY 15, 2018 AT 10:00 A.M. IN COURTROOM 7B ON THE 7TH FLOOR OF THE U.S. COURTHOUSE, 601 MARKET ST., PHILADELPHIA, PA.... NO ATTORNEY IS REQUIRED TO APPEAR.-1(footnote) THE NOTICE MUST BE FILED ON CIVIL ACTION 18-2323 AND IS DUE ON OR BEFORE MAY 11, 2018.-2(footnote) CO-LEAD CLASS COUNSEL WIL BE ALLOTTED TIME TO RESPOND TO THESE ARGUMENTS. TO THE EXTENT THE ARGUMENTS ARE NOT COMPLETED ON MAY 15, 2018, THE PARTIES WILL BE REQUIRED TO APPEAR ON MAY 16, 2018, AT 10:00 A.M. IN COURTROOM 7B ON THE 7TH FLOOR OF THE U.S. COURTHOUSE, 601 MARKET ST., PHILADELPHIA, PA. SIGNED BY HONORABLE ANITA B. BRODY ON 5/7/2018. 5/7/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/07/2018) |
| 05/07/2018 | 9971 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Oral Arguments Hearing held on 4/16/2018. Court Reporter: ESR. (ems) (Entered: 05/07/2018) |
| 05/07/2018 | 9972 | REPLY to Response to Motion re 9880 MOTION to Appoint Expert */ Motion for Appointment of Special Investigator* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 05/07/2018) |
| 05/08/2018 | 9973 | RESPONSE in Opposition re 9924 Emergency MOTION for Temporary Restraining Order *and Order to Show Cause Why Court Should Not Enter Permanent Injunction* filed by THRIVEST SPECIALTY FUNDING, LLC. (Attachments: # 1 Declaration Joseph R. Genovesi, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D) (BUCKLEY, PETER) (Entered: 05/08/2018) |
| 05/08/2018 | 9974 | MOTION for Order *Co-Lead Class Counsel's Motion for an Order Sanctioning the Cambridge Entities for Failure to Comply with the Court's February 20, 2018 Order and for Other Relief* filed by PLAINTIFF(S). Memorandum, Declaration, Certificate of Service. (Attachments: # 1 Memorandum of Law in Support of Motion for an Order, # 2 Declaration of Christopher A. Seeger, # 3 Text of Proposed Order Proposed Order) (SEEGER, CHRISTOPHER) Modified on 5/8/2018 (ems). (Entered: 05/08/2018) |
| 05/09/2018 | 9975 | Declaration re 9973 Response in Opposition to Motion, *Declaration of Robert C. Wood in Response to the Declaration of Joseph R. Genovesi and in further support of Co-Lead Class Counsel's Motion [ECF No. 9924]* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 05/09/2018) |
| 05/09/2018 | 9976 | ORDER that THE TEMPORARY RESTRAINING ORDER ENJOINING THRIVEST SPECIAL FUNDING, LLC FROM FURTHER ARBITRATION PROCEEDINGS |

-632-

| | | |
|---|---|---|
| | | AGAINST SETTLEMENT CLASS MEMBER "MR. W." (ECF NO. 9925) IS EXTENDED UNTIL MAY 23, 2018. TODAY THE COURT HELD A HEARING INVOLVING THRIVEST AND CO-LEAD CLASS COUNSEL ON WHETHER A PERMANENT INJUNCTION UNDER ALL WRITS ACT SHOULD BE ISSUED BY THE COURT AGAINST THRIVEST.... SIGNED BY HONORABLE ANITA B. BRODY ON 5/9/2018. 5/9/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/09/2018) |
| 05/10/2018 | 9977 | NOTICE of Docketing Record on Appeal from USCA re 9960 Notice of Appeal, filed by PLAINTIFF(S). USCA Case Number 18-2012. (tjd) (Entered: 05/10/2018) |
| 05/10/2018 | 9978 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Hearing held on 5/9/2018. Court Reporter: ESR. (tjd) (Entered: 05/10/2018) |
| 05/10/2018 | 9979 | ORDER THAT THE TRANSCRIPT, AUDIO RECORDING AND MINUTE SHEET FOR THE CHAMBERS CONFERENCE HELD ON 4/16/2018 ARE PLACED UNDER SEAL; THE COUNSEL OF RECORD WHO ATTENDED THE PROCEEDING ARE PERMITTED TO GET A COPY OF THE TRANSCRIPT. SIGNED BY HONORABLE ANITA B. BRODY ON 5/9/2018; 5/10/2018 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(tjd) (Entered: 05/10/2018) |
| 05/10/2018 | 9980 | Minute Sheet Filed Under Seal for proceedings held before HONORABLE ANITA B. BRODY on 4/16/2018. Court Reporter: ESR. (FILED UNDER SEAL). (Applies to 13-cv-1531, 13-cv-1532). (tjd) (tjd, ). (Entered: 05/10/2018) |
| 05/11/2018 | 9981 | NOTICE by PLAINTIFF(S) re 9970 Order,,, *of Intent to Argue* (TARRICONE, ANTHONY) (Entered: 05/11/2018) |
| 05/11/2018 | 9982 | SEALED TRANSCRIPT of Proceedings held on 4/16/2018 before Judge ANITA B. BRODY. Court Reporter: ESR / DOMAN TRANSCRIPTION SERVICE. (FILED UNDER SEAL) (ems) (Entered: 05/11/2018) |
| 05/11/2018 | 9983 | MOTION for Leave to File *Class Counsel Podhurst Orseck, P.A.'s Motion for Leave to File Sur-Reply to NFL Parties' Motion Seeking Appointment of Special Investigator* filed by PLAINTIFF(S).. (Attachments: # 1 Proposed Sur-Reply)(MARKS, STEVEN) Modified on 5/14/2018 (ems). (Entered: 05/11/2018) |
| 05/14/2018 | 9984 | ORDER - THE MOTION TO RESOLVE ATTORNEY FEE DISPUTE FILED BY THE ESTATE OF KEVIN TURNER (ECF NO. 7029) AND MOTION FOR JOINDER (ECF NO. 7850) ARE DENIED WITHOUT PREJUDICE TO THE CLASS MEMBER'S RIGHT TO FILE A PETITION FOR DEVIATION FROM THE FEE CAP, CONSISTENT WITH THIS COURT'S ORDER FILED ON APRIL 5, 2018 (see ECF NO. 9863).. SIGNED BY HONORABLE ANITA B. BRODY ON 5/14/2018.5/14/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/14/2018) |
| 05/14/2018 | 9985 | ORDER that THE MOTION FOR ENTRY OF CASE MANAGEMENT ORDER GOVERNING APPLICATIONS FOR ATTORNEYS' FEES; COST REIMBURSEMENTS; AND FUTURE FEE SET-ASIDE (ECF NO. 7176) IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/14/2018.5/14/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/14/2018) |
| 05/14/2018 | 9986 | MOTION for Leave to File *Sur-Reply in response to Reply of NFL in Support of its Motion for a Special Investigator* filed by PLAINTIFF(S). Certificate of service. (Attachments: # 1 Text of Proposed Order)(LOCKS, GENE) Modified on 5/15/2018 (ems). (Entered: 05/14/2018) |
| 05/14/2018 | 9987 | MOTION for Leave to File *Sur-Reply in Response to Reply by the NFL In Support of Motion for a Special Investigator* filed by PLAINTIFF(S). Certificate of service. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Text of Proposed Order)(LOCKS, GENE) Modified on 5/15/2018 (ems). (Entered: 05/14/2018) |
| 05/14/2018 | 9988 | REPLY to Response to Motion re 9575 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by ALL AMERICAN SPORTS CORPORATION, BRG SPORTS HOLDING CORP., BRG SPORTS, INC., BRG SPORTS, LLC, EB SPORTS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (Attachments: # 1 Appendix)(CEREGHINI, PAUL) (Entered: 05/14/2018) |
| 05/14/2018 | 9989 | REPLY to Response to Motion re 9574 MOTION to Dismiss *Based on Preemption* filed by ALL AMERICAN SPORTS CORPORATION, BRG SPORTS HOLDING CORP., BRG SPORTS, INC., BRG SPORTS, LLC, EB SPORTS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (CEREGHINI, PAUL) (Entered: 05/14/2018) |
| 05/14/2018 | 9990 | Declaration *Independant Fee Petition Mitnick Law Office* by PLAINTIFF(S). (Attachments: # 1 Exhibit Declaration of Craig R. Mitnick, Esquire, # 2 Exhibit Exhibit Index, # 3 Exhibit Statement of NFLAA President and CEO, # 4 Exhibit Mitnick Law Office Press releases, # 5 Exhibit Declaration of NFL Alumni Association Board of Directors, # 6 Exhibit Hall of Fame Presentation Documentation, # 7 Exhibit Travel Presentation Documentation, # 8 Exhibit NFL Alumni Mass Con ference Call Documentation, # 9 Exhibit Statement of DFrost; NFL Players Association, # 10 Exhibit Playerinjury.com documentation, # 11 Exhibit Common Benefit Billing Statement;Mitnick Law Office, # 12 Exhibit Key Retired Player Quotes, # 13 Exhibit statement of Retired Player Bradley Quast, # 14 Exhibit Statement of Bart Oates; Chapter President and Board of Director NFL Alumni Association, # 15 Exhibit Statement of Val Butts)(MITNICK, CRAIG) (Entered: 05/14/2018) |
| 05/15/2018 | 9991 | TRANSCRIPT of Telephone Conference held on 5/2/2018, before Judge ANITA B. BRODY. Court Reporter/Transcriber: ESR / DOMAN TRANSCRIPTION SERVICE. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 6/5/2018. Redacted Transcript Deadline set for 6/15/2018. Release of Transcript Restriction set for 8/13/2018. (ems) (Entered: 05/15/2018) |
| 05/15/2018 | 9992 | Notice of Filing of Official Transcript with Certificate of Service re 9991 Transcript - PDF,, 5/15/2018 Entered and Copies Emailed. (ems) (Entered: 05/15/2018) |
| 05/15/2018 | 9993 | RESPONSE in Opposition re 9921 MOTION for Reconsideration *of the Denial of the Locks Law Firm's Motion for Appointment of Administrative Class Counsel* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 05/15/2018) |
| 05/16/2018 | 9994 | NOTICE of Appearance by JESSICA KATE SOUTHWICK on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC with Certificate of Service(SOUTHWICK, JESSICA) (Entered: 05/16/2018) |
| 05/16/2018 | 9995 | Statement by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, JEFF ROHRER, ROBERT ROYAL. (MOLO, STEVEN) (Entered: 05/16/2018) |
| 05/16/2018 | 9996 | RESPONSE in Opposition re 9926 MOTION for New Trial *Opposition of Co-Lead Class Counsel to Motion of the Alexander Objectors and Lubel Voyles, LLP for Reconsideration/New Trial* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 05/16/2018) |
| 05/16/2018 | 9997 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Hearing held on 5/15/2018. Court Reporter: ESR. (ems) (Entered: 05/16/2018) |

| 05/17/2018 | 9998 | Response *of Co-Lead Class Counsel to the Faneca Objectors' Letter (ECF No. 9995)* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 05/17/2018) |
| 05/17/2018 | 9999 | NOTICE by PLAINTIFF(S) *Request by Gene Locks to Appear and Argue at the May 30, 2018 Hearing* (LOCKS, GENE) (Entered: 05/17/2018) |
| 05/17/2018 | 10000 | ORDER THAT THE ATTACHED HARD COPY OF ATTORNEY CHRISTOPHER SEEGER'S POWER-POINT PRESENTATION FROM THE 5/15/2018 HEARING IS MADE A PART OF THE RECORD. SIGNED BY HONORABLE ANITA B. BRODY ON 5/16/2018. 5/17/2018 ENTERED AND COPIES E-MAILED. (ems) (Entered: 05/17/2018) |
| 05/17/2018 | 10001 | MOTION for Leave to File *Supplemental Memorandum Regarding the Allocation of Common Benefit Fees* filed by ANAPOL WEISS, P.C.. Certificate of Service. (ALFANO, GAETAN) Modified on 5/18/2018 (ems). (Entered: 05/17/2018) |
| 05/21/2018 | 10002 | MOTION for Pro Hac Vice *on behalf of Cambridge Capital Group Entities, Phillip T. Howard and Gail Milon* ( Filing fee $ 40 receipt number 0313-12819198.) filed by CAMBRIDGE CAPITAL GROUP, LLC.Certificate of Service.(LIPMAN, MATTHEW) (Entered: 05/21/2018) |
| 05/21/2018 | 10003 | MOTION for Extension of Time to File Answer re 9974 MOTION for Order *Co-Lead Class Counsel's Motion for an Order Sanctioning the Cambridge Entities for Failure to Comply with the Court's February 20, 2018 Order and for Other Relief* filed by CAMBRIDGE CAPITAL GROUP, LLC.. (Attachments: # 1 Text of Proposed Order) (LIPMAN, MATTHEW) Modified on 5/22/2018 (ems). (Entered: 05/21/2018) |
| 05/21/2018 | 10004 | ORDER - ON WEDNESDAY, MAY 30, 2018 AT 11:00 A.M. THE COURT IS HOLDING A HEARING REGARDING THE NFL PARTIES MOTION FOR THE APPOINTMENT OF SPECIAL INVESTIGATOR (ECF NO. 9880). THE PARTICIPANTS AND TIMING WILL BE AS FOLLOWS:. THE NTL PARTIES WILL HAVE 30 MINUTES TO... THE LOCKS FIRM AND PODHURST ORSECK BOTH FILED MOTIONS TO FILE SURREPLIES REGARDING THIS ISSUE (ECF NOS. 9983, 9986 & 9987). BECAUSE BOTH FIRMS WILL HAVE AN OPPORTUNITY TO BE HEARD AT THE HEARING, IT IS ORDERED that THOSE MOTIONS ARE DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/21/2018. 5/21/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/21/2018) |
| 05/21/2018 | 10005 | ORDER - AFTER CONSIDERATION OF JOHN LORENTZ'S MOTION TO INTERVENE TO RESOLVE FEE DISPUTES WITH ANAPOL WEISS (ECF NO. 7263) AND THE ACCOMPANYING SUPPLEMENT (ECF NO. 7459), IT IS ORDERED that THE MOTION TO INTERVENE IS GRANTED; HOWEVER:. THE REQUEST FOR A PORTION OF COMMON BENEFIT FEES IS DENIED, AND. ANY REMAINING REQUESTS REGARDING THE PORTION OF INDIVIDUAL ATTORNEY'S FEES PAYABLE TOMR. LORENTZ ARE DENIED WITHOUT PREJUDICE AND MUST BE RAISED AS ATTORNEY'S LIENS (SEE ECF NO. 9760).. SIGNED BY HONORABLE ANITA B. BRODY ON 5/21/2018.5/21/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/21/2018) |
| 05/21/2018 | 10006 | ORDER that JOHN D. GIDDENS' MOTION FOR ATTORNEY FEES (ECF NO. 7291) IS DENIED WITHOUT PREJUDICE AND MUST BE RAISED AS AN ATTORNEY'S LIEN. (see ECF NO. 9760).. SIGNED BY HONORABLE ANITA B. BRODY ON 5/21/2018.5/21/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/21/2018) |

| 05/21/2018 | 10007 | ORDER that CO-LEAD CLASS COUNSEL ANAPOL WEISS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM REGARDING THE ALLOCATION OF COMMON BENEFIT FEES (ECF NO. 10001) IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/21/2018.5/21/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/21/2018) |
|---|---|---|
| 05/21/2018 | 10008 | TRANSCRIPT of Telephone Conference held on 5/4/2018, before Judge ANITA B. BRODY. Court Reporter/Transcriber: ESR / DOMAN TRANSCRIPTION SERVICE. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 6/11/2018. Redacted Transcript Deadline set for 6/21/2018. Release of Transcript Restriction set for 8/20/2018. (ems) (Entered: 05/21/2018) |
| 05/21/2018 | 10009 | Notice of Filing of Official Transcript with Certificate of Service re 10008 Transcript - PDF,, 5/21/2018 Entered and Copies Emailed. (ems) (Entered: 05/21/2018) |
| 05/21/2018 | 10010 | RESPONSE in Opposition re 10003 MOTION for Extension of Time to File Answer re 9974 MOTION for Order *Co-Lead Class Counsel's Motion for an Order Sanctioning the Cambridge Entities for Failure to Comply with the Court's February 20, 2018 Order and for Other Relief< Co-Lead Class Counsel's Letter Response to Counsel for Phillip T. Howard and the Cambridge Entities' Letter Request for Extension of Time to File filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 05/21/2018)* |
| 05/22/2018 | 10011 | EXPLANATION AND ORDER - IN ORDER TO EFFECTUATE ITS PRIOR ORDERS REGARDING THENFL CONCUSSION CLASS ACTION SETTLEMENT AGREEMENT, THE COURT PERMANENTLY ENJOINS THRIVEST SPECIALTY FUNDING, LLC FROM SEEKING ARBITRATION REGARDING THE VALIDITY OF ITS FUNDING AGREEMENT WITH SETTLEMENT CLASS MEMBER WILLIAM WHITE.... IT IS ORDERED that THRIVEST IS PERMANETLY ENJOINED FROM SEEKING ARBITRATION AGAINST MR. WHITE REGARDING THE VALIDITY OF THE FUNDING AGREEMENT. SO ORDERED.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/22/2018. 5/22/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/22/2018) |
| 05/22/2018 | 10012 | ORDER THAT THE APPLICATION OF JOHN P. LEONARD, ESQUIRE, TO PRACTICE IN THIS COURT PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 83.5.2(b) IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 5/22/2018. 5/22/2018 ENTERED AND COPIES MAILED AND E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 05/22/2018) |
| 05/22/2018 | 10013 | ORDER THAT THE MOTION (DOC. NO. 10003) IS GRANTED. THE TIME WITHIN WHICH THE CAMBRIDGE ENTITIES MAY RESPOND TO CO-LEAD COUNSEL'S MOTION FOR AN ORDER SANCTIONING THE CAMBRIDGE ENTITIES (DOC. NO. 9974) IS EXTENDED THROUGH JUNE 4, 2018. SIGNED BY HONORABLE ANITA B. BRODY ON 5/22/2018. 5/22/2018 ENTERED AND COPIES E-MAILED. (ems) (Entered: 05/22/2018) |
| 05/22/2018 | 10014 | NOTICE of Appearance by TOBIAS BARRINGTON WOLFF on behalf of THE LOCKS LAW FIRM with Certificate of Service (ems) (Entered: 05/22/2018) |
| 05/22/2018 | 10015 | 🔊 Audio File 5/15/2018 10:11 a.m., regarding HEARING held on 5/15/2018, before HONORABLE ANITA B. BRODY (pk, ) (Entered: 05/22/2018) |
| 05/22/2018 | 10016 | LETTER BRIEF by THE LOCKS LAW FIRM. Certificate of Service. (ems) (Entered: 05/22/2018) |

**-636-**

| 05/23/2018 | 10017 | Response re 10016 Memorandum by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 05/23/2018) |
| 05/23/2018 | 10018 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(STERN, JEFFREY) (Entered: 05/23/2018) |
| 05/24/2018 | 10019 | EXPLANATION AND ORDER - ON APRIL 5, 2018, I ISSUED A MEMROANDUM OPINION AWARDING CLASS COUNSEL $106,817,220.62 IN ATTORNEYS' FEES. TODAY I ADDRESS THE ALLOCATION OF THOSE FUNDS AMONG CLASS COUNSEL FOR THEIR WORK IN SECURING THE SETTLEMENT AGREEMENT... IT IS FURTHER ORDERED that EACH OF THE LAW FIRMS LISTED ABOVE SHALL COOPPERATE WITH THE FUND ADMINISTRATOR OF THE AFQSF TO EFFECTUATE THIS ORDER.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/24/2018. 5/24/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/24/2018) |
| 05/24/2018 | 10020 | NOTICE of Appearance by RICHARD TARLOWE on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC with Certificate of Service(TARLOWE, RICHARD) (Entered: 05/24/2018) |
| 05/25/2018 | 10021 | NOTICE by ALL AMERICAN SPORTS CORPORATION, BRG SPORTS HOLDING CORP., BRG SPORTS, INC., BRG SPORTS, LLC, EB SPORTS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC. re 9573 MOTION to Strike *SAMAC-SFCs and motions to remand of those asserting claims for the first time against Riddell defendants re: Notice of Amended Exhibit 1* (Attachments: # 1 Exhibit (Amended Exhibit 1 to Motion to Strike))(CEREGHINI, PAUL) (Entered: 05/25/2018) |
| 05/25/2018 | 10022 | MOTION to Stay re 10019 Order,, *Enforcement of Attorneys Fee Allocation Order (ECF 10019) Pending Appeal And Request for Expedited Consideration* filed by PLAINTIFF(S). Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order)(LUBEL, LANCE) Modified on 5/29/2018 (ems). (Entered: 05/25/2018) |
| 05/29/2018 | 10023 | ORDER finding as moot 7605 MOTION TO STRIKE. SIGNED BY HONORABLE ANITA B. BRODY ON 05/29/2018.05/29/2018 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(BRODY, ANITA) (Entered: 05/29/2018) |
| 05/29/2018 | 10024 | ORDER finding as moot 7621 . SIGNED BY HONORABLE ANITA B. BRODY ON 05/29/2018.05/29/2018 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(BRODY, ANITA) (Entered: 05/29/2018) |
| 05/29/2018 | 10025 | APPLICATION/PETITION *THE ESTATE OF KEVIN TURNERS PETITION FOR DEVIATION FROM THE FEE CAP* by PLAINTIFF(S). (DONALDSON, RICHARD) (Entered: 05/29/2018) |
| 05/29/2018 | 10026 | Response re 9990 Declaration,,, *Response of Co-Lead Class Counsel to Petition of the Mitnick Law Office for an Independent Award of Attorneys' Fees* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 05/29/2018) |
| 05/29/2018 | 10027 | NOTICE OF APPEAL as to 10011 Order,, by THRIVEST SPECIALTY FUNDING, LLC. Filing fee $ 505, receipt number 0313-12833734. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (Attachments: # 1 Exhibit A)(FANELLI, MARK) Modified on 5/29/2018 (ems). (Entered: 05/29/2018) |
| 05/30/2018 | 10028 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/30/2018) |

| 05/30/2018 | 10029 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Hearing held on 5/30/2018. Court Reporter: ESR. (ems) (Entered: 05/30/2018) |
|---|---|---|
| 05/30/2018 | 10030 | ⏸ Audio File 05/30/2018 11am, regarding Hearing held on 05/30/2018, before HONORABLE ANITA B. BRODY (brjo, ) (Entered: 05/30/2018) |
| 05/31/2018 | 10031 | RESPONSE in Opposition re 10022 MOTION to Stay re 10019 Order,, *Enforcement of Attorneys Fee Allocation Order (ECF 10019) Pending Appeal And Request for Expedited Consideration Opposition of Co-Lead Class Counsel to Motion to Stay Enforcement of Attorneys' Fee Allocation Order Pending Appeal* filed by PLAINTIFF(S). (Attachments: # 1 Declaration of Christopher A. Seeger)(SEEGER, CHRISTOPHER) (Entered: 05/31/2018) |
| 05/31/2018 | 10032 | NOTICE of Docketing Record on Appeal from USCA re 10027 Notice of Appeal (Credit Card Payment), filed by THRIVEST SPECIALTY FUNDING, LLC. USCA Case Number 18-2184 (ems) (Entered: 05/31/2018) |
| 06/01/2018 | 10033 | NOTICE of Withdrawal of Appearance by JAMES R. DUGAN, II on behalf of All Plaintiffs (DUGAN, JAMES) (Entered: 06/01/2018) |
| 06/01/2018 | 10034 | NOTICE of Appearance by DAVID S. SCALIA on behalf of PLAINTIFF(S) (SCALIA, DAVID) (Entered: 06/01/2018) |
| 06/01/2018 | 10035 | NOTICE of Appearance by BONNIE ADELE KENDRICK on behalf of PLAINTIFF(S) (KENDRICK, BONNIE) (Entered: 06/01/2018) |
| 06/01/2018 | 10036 | NOTICE OF APPEAL as to 10019 Order,, by PLAINTIFF(S). Filing fee $ 505. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (LUBEL, LANCE) Modified on 6/1/2018 (ems). (Entered: 06/01/2018) |
| 06/01/2018 | | USCA Appeal Fees received $ 505 receipt number PPE179214 re 10036 Notice of Appeal filed by PLAINTIFF(S) (ems) (Entered: 06/01/2018) |
| 06/01/2018 | 10037 | APPLICATION/PETITION *Steven Anthony Smith Petition for Deviation from the Fee Cap* by PLAINTIFF(S). (TUCKER, JOE) (Entered: 06/01/2018) |
| 06/01/2018 | 10038 | APPLICATION/PETITION *the Estate of Wally Hilgenberg - Petition for Deviation from Fee Cap* by PLAINTIFF(S). (TUCKER, JOE) (Entered: 06/01/2018) |
| 06/01/2018 | 10039 | REPLY to Response to Motion re 10022 MOTION to Stay re 10019 Order,, *Enforcement of Attorneys Fee Allocation Order (ECF 10019) Pending Appeal And Request for Expedited Consideration* filed by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 06/01/2018) |
| 06/04/2018 | 10040 | SUGGESTION OF BANKRUPTCY by PLAINTIFF(S). Certificate of Service. (ems) (Entered: 06/04/2018) |
| 06/04/2018 | 10041 | RESPONSE in Opposition re 9974 MOTION for Order *Co-Lead Class Counsel's Motion for an Order Sanctioning the Cambridge Entities for Failure to Comply with the Court's February 20, 2018 Order and for Other Relief* filed by CAMBRIDGE CAPITAL GROUP, LLC. (Attachments: # 1 Declaration with exhibits, # 2 Text of Proposed Order, # 3 Certificate of Service)(LEONARD, JOHN) (Entered: 06/04/2018) |
| 06/05/2018 | 10042 | ORDER that. THE ALEXANDER OBJECTORS' MOTION FOR RECONSIDERATION/NEW TRIAL (ECF NO. 9926) IS DENIED.-1(footnote). THE ALEXANDER OBJECTORS' MOTION TO STAY ENFORCEMENT OF ATTORNEYS' FEE ALLOCATION ORDER (ECF NO. 10022) IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/4/2018.6/5/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 06/05/2018) |

| 06/05/2018 | 10043 | NOTICE OF APPEAL as to 9861 Order (Memorandum and/or Opinion),, 9860 Memorandum and/or Opinion, 10019 Order,, by PLAINTIFF(S). Filing fee $ 505. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (PENTZ, JOHN) Modified on 6/6/2018 (ems). (Entered: 06/05/2018) |
| 06/06/2018 | 10044 | NOTICE OF APPEAL as to 9861 Order (Memorandum and/or Opinion),, 9860 Memorandum and/or Opinion, 10019 Order,, by PLAINTIFF(S). Filing fee $ 505. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (COCHRAN, GEORGE) Modified on 6/7/2018 (ems). (Entered: 06/06/2018) |
| 06/06/2018 | 10045 | NOTICE by PLAINTIFF(S) *of Attorney's Lien regarding Todd Jones* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 06/06/2018) |
| 06/06/2018 | 10046 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Jamie Asher* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10047 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Reggie Barlow* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10048 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Tracy C Bates* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10049 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Bront Bird* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10050 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Casper Boso* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10051 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Deion Branch* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10052 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Sean Cattouse* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10053 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding David C. Cudzik* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10054 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Ken Dilger* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10055 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Joshua Gentry* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10056 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Chris Johnson* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10057 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Alvin Keith McCants* (CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10058 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding David W. McRoberts* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10059 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding James Morrissey* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10060 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Daniel Muir* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |

| 06/06/2018 | 10061 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Robert Murphy* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10062 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Steven C. Pelluer* (CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10063 | APPLICATION/PETITION *Attorney's Lien regarding Steven C. Pelluer* by PLAINTIFF(S). (CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10064 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Elizabeth K. Russo* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10065 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Arthur Schlichter* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10066 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Kywin Supernaw* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10067 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Scott Virkus* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/06/2018 | 10068 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Jed Weaver* (Attachments: # 1 Exhibit Petition with Exhibits)(CHAMBERLAIN, DANIEL) (Entered: 06/06/2018) |
| 06/07/2018 | 10069 | APPLICATION/PETITION *For Deviation* by PLAINTIFF(S). (TAFT, TONY) (Entered: 06/07/2018) |
| 06/07/2018 | 10070 | NOTICE of Docketing Record on Appeal from USCA re 10036 Notice of Appeal filed by PLAINTIFF(S). USCA Case Number 18-2225 (ems) (Entered: 06/07/2018) |
| 06/07/2018 | 10071 | NOTICE of Docketing Record on Appeal from USCA re 10043 Notice of Appeal, filed by PLAINTIFF(S). USCA Case Number 18-2249 (ems) (Entered: 06/07/2018) |
| 06/07/2018 | 10072 | MOTION for Reconsideration *of the Court's Explanation and Order (ECF 10019)* filed by THE LOCKS LAW FIRM. Memorandum and Certificate of service. (Attachments: # 1 Text of Proposed Order)(LOCKS, GENE) Modified on 6/8/2018 (ems). (Entered: 06/07/2018) |
| 06/07/2018 | 10073 | MOTION for Reconsideration *of the Court's Explanation and Order (ECF 10019)* filed by THE LOCKS LAW FIRM. Memorandum in support and certificate of service. (Attachments: # 1 Text of Proposed Order)(LOCKS, GENE) Modified on 6/8/2018 (ems). (Entered: 06/07/2018) |
| 06/07/2018 | 10074 | NOTICE of Docketing Record on Appeal from USCA re 10044 Notice of Appeal, filed by PLAINTIFF(S). USCA Case Number 18-2253 (dmc, ) (Entered: 06/08/2018) |
| 06/08/2018 | 10075 | NOTICE OF APPEAL as to 9861 Order (Memorandum and/or Opinion),, 9860 Memorandum and/or Opinion, 10019 Order,, by PLAINTIFF(S). Filing fee $ 505, receipt number 0313-12857445. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (MITNICK, CRAIG) Modified on 6/11/2018 (ems). (Entered: 06/08/2018) |
| 06/13/2018 | 10076 | ORDER TO SHOW CAUSE WHY THIS COURT SHOULD NOT RECOMMEND TO THE DISTRICT COURT THAT THE PETITION BE DISMISSED. TAFT SHALL SUBMIT THE RESPONSE TO THIS ORDER ON OR BEFORE 6/25/2018; ETC. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/13/2018. 6/13/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 10069) (ems) (Entered: 06/13/2018) |

| 06/13/2018 | 10077 | NOTICE by PLAINTIFF(S) *Withdrawal of Petition for Deviation* (TAFT, TONY) (Entered: 06/13/2018) |
|---|---|---|
| 06/14/2018 | 10078 | REPLY to Response to Motion re 9974 MOTION for Order *Co-Lead Class Counsel's Motion for an Order Sanctioning the Cambridge Entities for Failure to Comply with the Court's February 20, 2018 Order and for Other Relief* filed by PLAINTIFF(S). (Attachments: # 1 Declaration of Christopher A. Seeger)(SEEGER, CHRISTOPHER) (Entered: 06/14/2018) |
| 06/15/2018 | 10079 | NOTICE OF APPEAL as to 10019 Order,, by ANAPOL WEISS, P.C.. Filing fee $ 505, receipt number 0313-12869798. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (ALFANO, GAETAN) Modified on 6/15/2018 (ems). (Entered: 06/15/2018) |
| 06/15/2018 | 10080 | ORDER of USCA as to 10043 Notice of Appeal, filed by PLAINTIFF(S), 10044 Notice of Appeal, filed by PLAINTIFF(S), 10036 Notice of Appeal filed by PLAINTIFF(S), 9960 Notice of Appeal, filed by PLAINTIFF(S) THAT THE ABOVE-ENTITLED APPEAL(S) IS(ARE) STAYED PENDING DISPOSITITION OF THE MOTION. THE PARTIES ARE DIRECTED TO FILE WRITTEN REPORTS ADDRESSING THE STATUS OF THE PENDING MOTION ON 7/12/2018 AND EVERY THIRTY (30) DAYS THEREAFTER UNTIL THE LAST MOTION IS DECIDED. THE STAY WILL AUTOMATICALLY EXPIRE UPON ENTRY OF THE ORDER DISPOSING OF THE LAST POST-DECISION MOTION; ETC. (ems) (Entered: 06/15/2018) |
| 06/15/2018 | 10081 | ORDER THAT THE PETITION FOR DEVIATION ("PETITION") (DOC. NO. 10069) IS DENIED AS MOOT AND DISMISSED WITH PREJUDICE. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/15/2018. 6/15/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 10069) (ems) (Entered: 06/15/2018) |
| 06/15/2018 | | USCA Appeal Fees received $ 505 receipt number PPE180034 re 10044 Notice of Appeal, filed by PLAINTIFF(S) (ems) (Entered: 06/18/2018) |
| 06/18/2018 | 10082 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 06/18/2018) |
| 06/18/2018 | 10083 | NOTICE OF APPEAL as to 10005 Order on Motion to Intervene,, by JOHN LORENTZ. Filing fee $ 505, receipt number 0313-12874028. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (MOIRANO, MICHAEL) Modified on 6/19/2018 (ems). (Entered: 06/18/2018) |
| 06/19/2018 | 10084 | ORDER - UPON CONSIDERATION OF NON-PARTIES PREFERRED CAPITAL FUNDING, INC., PREFERRED CAPITAL FUNDING-NEVADA, LLC, PREFERRED CAPITAL FUNDING-MISSOURI, LLC, PREFERRED CPAITAL FUNDING-OHIO, LLC AND BRIAN GARELLI'S MOTION FOR PROTECTIVE ORDER (ECF NO. 8938), IT IS ORDRED that THE MOTION IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/18/2018.6/19/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 06/19/2018) |
| 06/19/2018 | 10085 | ORDER that THE ALEXANDER OBJECTORS MOTION TO RECONSIDER WITHDRAWING FED.R.EVID. 706 DEPOSITION AND FOR EXTENSION OF TIME TO RESPOND TO THE EXPERT REPORT OF PROFESSOR WILLIAM B. RUBENSTEIN (ECF NO. 9536) IS DENIED AS MOOT.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/18/2018.6/19/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 06/19/2018) |

| 06/19/2018 | 10086 | ORDER that THE MOTION REQUESTING THE COURT TO DIRECT THE RELEVANT PARTIES TO NEGOTIATE ON THE ALLOCATION OF THE COMMON BENEFIT FUND (ECF NO. 9577) IS DENIED AS MOOT.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/18/2018.6/19/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 06/19/2018) |
|---|---|---|
| 06/19/2018 | 10087 | NOTICE by PLAINTIFF(S) *of Attorneys' Lien for Clifford Brown* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 06/19/2018) |
| 06/19/2018 | | USCA Appeal Fees received $ 505 receipt number PPE180177 re 10043 Notice of Appeal, filed by PLAINTIFF(S) (ems) (Entered: 06/20/2018) |
| 06/20/2018 | 10088 | TRANSCRIPT of Hearing held on 5/9/2018, before Judge ANITA B. BRODY. Court Reporter/Transcriber: ESR / DOMAN TRANSCRIPTION SERVICE. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 7/11/2018. Redacted Transcript Deadline set for 7/23/2018. Release of Transcript Restriction set for 9/18/2018. (ems) (Entered: 06/20/2018) |
| 06/20/2018 | 10089 | Notice of Filing of Official Transcript with Certificate of Service re 10088 Transcript - PDF, 6/20/2018 Entered and Copies Emailed. (ems) (Entered: 06/20/2018) |
| 06/20/2018 | 10090 | NOTICE by PLAINTIFF(S) *of Attorneys' Lien for Gregory Pruitt* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 06/20/2018) |
| 06/20/2018 | 10091 | RESPONSE in Opposition re 10073 MOTION for Reconsideration *of the Court's Explanation and Order (ECF 10019)* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 06/20/2018) |
| 06/21/2018 | 10092 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Estate of Andre M. Waters* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(LUCKASEVIC, JASON) (Entered: 06/21/2018) |
| 06/21/2018 | 10093 | CERTIFIED COPY OF ORDER FROM THE USCA THAT THE ABOVE-ENTITLED APPEAL(S) IS(ARE) STAYED PENDING DISPOSITITION OF THE MOTION. THE PARTIES ARE DIRECTED TO FILE WRITTEN REPORTS ADDRESSING THE STATUS OF THE PENDING MOTION ON 7/23/2018 AND EVERY THIRTY (30) DAYS THEREAFTER UNTIL THE LAST MOTION IS DECIDED. THE STAY WILL AUTOMATICALLY EXPIRE UPON ENTRY OF THE ORDER DISPOSING OF THE LAST POST-DECISION MOTION; ETC. (ems) (Entered: 06/21/2018) |
| 06/21/2018 | 10094 | Objections by PLAINTIFF(S) *to the Special Master's May 31, 2018 Ruling*. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5) (FLEISHMAN, WENDY) (Entered: 06/21/2018) |
| 06/21/2018 | 10100 | NOTICE of Docketing Record on Appeal from USCA re 10079 Notice of Appeal (Credit Card Payment), filed by ANAPOL WEISS, P.C.. USCA Case Number 18-2332 (dmc, ) (Entered: 06/25/2018) |
| 06/22/2018 | 10095 | NOTICE OF APPEAL as to 10019 Order,, by PLAINTIFF(S). Filing fee $ 505, receipt number 0313-12884344. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (TARRICONE, ANTHONY) Modified on 6/25/2018 (ems). (Entered: 06/22/2018) |
| 06/22/2018 | 10096 | NOTICE by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, JEFF ROHRER *Filing of Hearing Slides* (Attachments: # 1 Certificate of Service COS)(MOLO, STEVEN) (Entered: 06/22/2018) |

| 06/22/2018 | 10097 | NOTICE OF APPEAL as to 9861 Order (Memorandum and/or Opinion),, 9876 Order,,, 9860 Memorandum and/or Opinion, 10019 Order,, 10042 Order on Motion for New Trial,, Order on Motion to Stay, by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, JEFF ROHRER. Filing fee $ 505. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (MOLO, STEVEN) Modified on 6/25/2018 (ems). (Entered: 06/22/2018) |
| --- | --- | --- |
| 06/22/2018 | 10098 | NOTICE by PLAINTIFF(S) *Notice of Appeal as to (9860) Memorandum, (9861) Order, (10019) Explanation and Order* **(FILED IN ERROR; ATTORNEY TO RE-FILE)** (COFFMAN, RICHARD) Modified on 6/25/2018 (ems). (Entered: 06/22/2018) |
| 06/22/2018 | 10099 | NOTICE OF APPEAL as to 10019 Order,, by PLAINTIFF(S). Filing fee $ 505, receipt number 0313-12885952. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (ZIMMERMAN, CHARLES) Modified on 6/25/2018 (ems). (Entered: 06/22/2018) |
| 06/22/2018 | | USCA Appeal Fees received $ 505 receipt number PPE180322 re 10097 Notice of Appeal, filed by SEAN CONSIDINE, RODERICK CARTWRIGHT, JEFF ROHRER, ALAN FANECA (ems) (Entered: 06/25/2018) |
| 06/25/2018 | 10101 | NOTICE OF APPEAL as to 9861 Order (Memorandum and/or Opinion),, 9860 Memorandum and/or Opinion, 10019 Order,, by PLAINTIFF(S). Filing fee $ 505. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (FEE PAID ON 6/25/2018; SEE PAPER # 68 IN 14-CV-29) (ems) (Entered: 06/25/2018) |
| 06/25/2018 | 10102 | NOTICE OF APPEAL as to 10019 Order,, by PLAINTIFF(S). Filing fee $ 505, receipt number 0313-12888936. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (MCGLAMRY, MICHAEL) Modified on 6/25/2018 (ems). (Entered: 06/25/2018) |
| 06/27/2018 | 10103 | ORDER REGARDING PAYMENT OF ATTORNEYS' FEES AND EXPENSES - PURSUANT TO THE COURT'S CONTINUING AND EXCLUSIVE JURISDICTION UNDER ARTICLE XXVII OF THE AMENDED CLASS ACTION SETTLEMENT AGREEMENT FILED ON FEBRUARY 13, 2015 (THE "SETTLEMENT AGREEMENT"), AND THE MAY 8, 2015 AMENDED FINAL APPROVAL ORDER AND JUDGMENT, IT IS HEREBY ORDERED AS FOLLOWS:... SO ORDERED THIS 27TH DAY OF JUNE 2018. SIGNED BY HONORABLE ANITA B. BRODY ON 6/27/2018. 6/27/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 06/27/2018) |
| 06/27/2018 | 10104 | ORDER REGARDING WITHHOLDINGS FOR COMMON BENEFIT FUND - PURSUANT TO THE COURT'S CONTINUING AND EXCLUSIVE JURISDICTION UNDER ARTICLE XXVII OF THE AMENDED CLASS ACTION SETTLEMENT AGREEMENT FILED ON FEBRUARY 13, 2015 (THE "SETTLEMENT AGREEMENT"), AND THE MAY 8, 2015 AMENDED FINAL APPROVAL ORDER AND JUDGMENT, IT IS HEREBY ORDERED AS FOLLOWS:... SO ORDERED THIS 27TH DAY OF JUNE, 2018.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/27/2018. 6/27/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 06/27/2018) |
| 06/28/2018 | 10105 | CERTIFIED COPY OF ORDER FROM THE USCA THAT THE ABOVE-ENTITLED APPEAL(S) IS(ARE) STAYED PENDING DISPOSITITION OF THE MOTION. THE PARTIES ARE DIRECTED TO FILE WRITTEN REPORTS ADDRESSING THE STATUS OF THE PENDING MOTION ON 7/30/2018 AND EVERY THIRTY (30) DAYS THEREAFTER UNTIL THE LAST MOTION IS DECIDED. THE STAY |

| | | |
|---|---|---|
| | | WILL AUTOMATICALLY EXPIRE UPON ENTRY OF THE ORDER DISPOSING OF THE LAST POST-DECISION MOTION; ETC. (ems) (Entered: 06/28/2018) |
| 06/28/2018 | 10106 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Eric Downing* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 06/28/2018) |
| 06/28/2018 | 10107 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Terrence Wheatley* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 06/28/2018) |
| 06/28/2018 | 10108 | EXPLANATION AND ORDER - RESPRESENTATIVE CLAIMANT JEFFREY HOLMES ("CLAIMANT"), THE SON OF RONALD HOLMES, FILED A MONTARY AWARD CLAIM IN THE SETTLEMENT PROGRAM BASEDON HIS FATHER'S "DEATH WITH CTE" DIAGNOSIS. HIS CLAIM FOR MONETARY AWARD WAS DENID BY THE CLAIMS ADMINISTRATOR BECAUSE THE UNDERLYING CTE DIAGNOSIS WAS UNTIMELY.... ORDER: IT IS ORDERED that JEFFREY HOLMES' MOTION FOR RELIEF FROM A JUDGMENT OR ORDER PURSUANT TO FED. R. CIV.P.60 (ECF NO. 9570) IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/28/2018.6/28/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 06/28/2018) |
| 06/28/2018 | 10109 | NOTICE of Docketing Record on Appeal from USCA re 10095 Notice of Appeal (Credit Card Payment), filed by PLAINTIFF(S). USCA Case Number 18-2416 (dmc, ) (Entered: 06/29/2018) |
| 06/28/2018 | 10110 | NOTICE of Docketing Record on Appeal from USCA re 10097 Notice of Appeal, filed by SEAN CONSIDINE, RODERICK CARTWRIGHT, JEFF ROHRER, ALAN FANECA. USCA Case Number 18-2417 (dmc, ) (Entered: 06/29/2018) |
| 06/28/2018 | 10111 | CERTIFIED COPY OF ORDER FROM THE USCA THAT THE ABOVE-ENTITLED APPEAL(S) IS(ARE) STAYED PENDING DISPOSITITION OF THE MOTION. THE PARTIES ARE DIRECTED TO FILE WRITTEN REPORTS ADDRESSING THE STATUS OF THE PENDING MOTION ON 7/30/2018 AND EVERY THIRTY (30) DAYS THEREAFTER UNTIL THE LAST MOTION IS DECIDED. THE STAY WILL AUTOMATICALLY EXPIRE UPON ENTRY OF THE ORDER DISPOSING OF THE LAST POST-DECISION MOTION; ETC. (ems) (Entered: 06/29/2018) |
| 06/28/2018 | 10112 | CERTIFIED COPY OF ORDER FROM THE USCA THAT THE ABOVE-ENTITLED APPEAL(S) IS(ARE) STAYED PENDING DISPOSITITION OF THE MOTION. THE PARTIES ARE DIRECTED TO FILE WRITTEN REPORTS ADDRESSING THE STATUS OF THE PENDING MOTION ON 7/30/2018 AND EVERY THIRTY (30) DAYS THEREAFTER UNTIL THE LAST MOTION IS DECIDED. THE STAY WILL AUTOMATICALLY EXPIRE UPON ENTRY OF THE ORDER DISPOSING OF THE LAST POST-DECISION MOTION; ETC. (ems) (Entered: 06/29/2018) |
| 06/28/2018 | 10113 | CERTIFIED COPY OF ORDER FROM THE USCA THAT THE ABOVE-ENTITLED APPEAL(S) IS(ARE) STAYED PENDING DISPOSITITION OF THE MOTION. THE PARTIES ARE DIRECTED TO FILE WRITTEN REPORTS ADDRESSING THE STATUS OF THE PENDING MOTION ON 7/30/2018 AND EVERY THIRTY (30) DAYS THEREAFTER UNTIL THE LAST MOTION IS DECIDED. THE STAY WILL AUTOMATICALLY EXPIRE UPON ENTRY OF THE ORDER DISPOSING OF THE LAST POST-DECISION MOTION; ETC. (ems) (Entered: 06/29/2018) |
| 06/28/2018 | 10116 | NOTICE of Docketing Record on Appeal from USCA re 10099 Notice of Appeal (Credit Card Payment), filed by PLAINTIFF(S). USCA Case Number 18-2418 (dmc, ) (Entered: 07/02/2018) |

| 06/28/2018 | 10117 | NOTICE of Docketing Record on Appeal from USCA re 10101 Notice of Appeal, filed by PLAINTIFF(S). USCA Case Number 18-2419 (dmc, ) (Entered: 07/02/2018) |
| --- | --- | --- |
| 06/28/2018 | 10118 | NOTICE of Docketing Record on Appeal from USCA re 10102 Notice of Appeal (Credit Card Payment), filed by PLAINTIFF(S). USCA Case Number 18-2422 (dmc, ) (Entered: 07/02/2018) |
| 06/29/2018 | 10114 | MOTION for Bond *Pending Appeal with Certificate of Service* filed by THRIVEST SPECIALTY FUNDING, LLC.. (Attachments: # 1 Text of Proposed Order, # 2 Memorandum, # 3 Exhibit A)(BUCKLEY, PETER) Modified on 7/2/2018 (ems). (Entered: 06/29/2018) |
| 06/29/2018 | 10115 | CERTIFICATE OF SERVICE by THRIVEST SPECIALTY FUNDING, LLC re 10114 MOTION for Bond *Pending Appeal with Certificate of Service on Robert C. Wood, Esquire via First-Class Mail and Electronic Mail* (BUCKLEY, PETER) (Entered: 06/29/2018) |
| 07/02/2018 | 10119 | ORDER that THE MOTION FOR RECONSIDERATION OF THE DENIAL OF THE LOCKS LAW FIRM'S MOTION FOR APPOINTMENT OF ADMINISTRATIVE CLASS COUNSEL (ECF NO. 9921) IS DENIED.-1(footnote). SIGNED BY HONORABLE ANITA B. BRODY ON 7/2/2018.7/2/2018 ENTERED AND COPIES VIA ECF(mo, ) (Entered: 07/02/2018) |
| 07/02/2018 | 10120 | WITHDRAWAL AND SUBSTITUTION OF COUNSEL FOR PLAINTIFF CRAIG MCEWEN by PLAINTIFF(S). Proof of Service. (ems) (Entered: 07/02/2018) |
| 07/02/2018 | 10121 | APPLICATION/PETITION *For Deviation* by MOKARAM LAW FIRM. (MOKARAM, ALI) (Entered: 07/02/2018) |
| 07/02/2018 | 10122 | APPLICATION/PETITION *For Deviation* by MOKARAM LAW FIRM. (MOKARAM, ALI) (Entered: 07/02/2018) |
| 07/02/2018 | 10123 | APPLICATION/PETITION *For Deviation* by MOKARAM LAW FIRM. (MOKARAM, ALI) (Entered: 07/02/2018) |
| 07/03/2018 | 10124 | ORDER THAT CO-LEAD COUNSEL'S MOTION FOR ORDER DIRECTING THE CLAIMS ADMINISTRATOR TO WITHHOLD ANY PORTIONS OF CLASS MEMBER MONETARY AWARDS PURPORTEDLY OWED TO CERTAIN THIRD-PARTY LENDERS AND CLAIMS SERVICES PROVIDERS, AND DIRECT DISCLOSURE TO THE CLAIMS ADMINISTRATOR OF EXISTENCE OF CLASS MEMBER AGREEMENTS WITH ALL THIRD PARTIES (DOC. NO. 8470) IS DENIED WITHOUT PREJUDICE AS MOOT. WALKER PRESTON CAPITAL HOLDINGS' MOTION TO INTERVENE (DOC. NO. 8932), ATLAS LEGAL FUNDING'S MOTION TO INTEVENE (DOC. NO. 8940), AND ATLAS LEGAL FUNDING'S MOTION FOR LEAVE TO FILE SUR-REPLY (DOC. NO. 9516) ARE DENIED. SIGNED BY HONORABLE ANITA B. BRODY ON 6/28/2018. 7/5/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 07/05/2018) |
| 07/06/2018 | 10125 | NOTICE by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, JEFF ROHRER re 10097 Notice of Appeal, *of filing of Transcript Purchase Order form.* Certificate of Service. (MOLO, STEVEN) Modified on 7/9/2018 (ems). (Entered: 07/06/2018) |
| 07/06/2018 | | Copy of TPO Form re 10097 Notice of Appeal, : (FOR ORIGINAL FILING AND PDF SEE DOCUMENT # 10125 ) (ems) (Entered: 07/09/2018) |

| 07/10/2018 | 10126 | SETTLEMENT IMPLEMENTATIONS DETERMINATION - BEFORE THE COURT IS AN OBJECTION FROM A FINDING BY THE SPECIAL MASTER THAT APPELLANT, AN EX-WIFE OF A RETIRED NFL PLAYER, IS NOT ENTITLE TO A DERIVATIVE CLAIMANT AWARD... BASED ON THE REVIEW OF THE SPECIAL MASTER'S FINDINGS AND REMEDIES (ATTACHED), I APPROVE AND ADOPT ITS CONCLUSIONS. ACCORDINGLY, THE APPELLANT'S OBJECTION IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/10/2018. 7/10/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/10/2018) |
| --- | --- | --- |
| 07/10/2018 | 10127 | ORDER that THE LOCKS FIRM'S MOTION FOR RECONSIDERATION OF THE COURT'S EXPLANATION AND ORDER (ECF NOS. 10072 & 10073) IS DENIED.-1(footnote). SIGNED BY HONORABLE ANITA B. BRODY ON 7/9/2018.7/10/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/10/2018) |
| 07/10/2018 | 10128 | APPLICATION/PETITION *First Verified Petition of Co-Lead Class Counsel Christopher A. Seeger For An Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs* by PLAINTIFF(S). (Attachments: # 1 Exhibit A)(SEEGER, CHRISTOPHER) (Entered: 07/10/2018) |
| 07/11/2018 | 10129 | NOTICE of Withdrawal of Appearance by BABTUNDE MOHAMMED CADMUS on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC(CADMUS, BABTUNDE) (Entered: 07/11/2018) |
| 07/12/2018 | 10130 | Copy of TPO Form re 10102 Notice of Appeal (Credit Card Payment), : (ems) (Entered: 07/12/2018) |
| 07/12/2018 | 10131 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Telephone Conference held on 7/11/2018. Court Reporter: ESR. (ems) (Entered: 07/12/2018) |
| 07/13/2018 | 10132 | RESPONSE in Opposition re 10114 MOTION for Bond *Pending Appeal with Certificate of Service* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(SEEGER, CHRISTOPHER) (Entered: 07/13/2018) |
| 07/13/2018 | 10133 | AMENDED NOTICE OF APPEAL as to 9861 Order (Memorandum and/or Opinion),, 9876 Order,,, 9860 Memorandum and/or Opinion, 10019 Order,, 10127 Order on Motion for Reconsideration, 10042 Order on Motion for New Trial,, Order on Motion to Stay, by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, JEFF ROHRER. Filing fee $ 505, receipt number 0313-12923093. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (MOLO, STEVEN) Modified on 7/16/2018 (ems). (Entered: 07/13/2018) |
| 07/13/2018 | 10134 | TRANSCRIPT of Hearing held on May 15, 2018 before The Honorable Anita B. Brody. Court Reporter/Transcriber Doman Transcription Service. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/3/2018. Redacted Transcript Deadline set for 8/13/2018. Release of Transcript Restriction set for 10/11/2018. (tjd) (Entered: 07/13/2018) |
| 07/13/2018 | 10135 | Notice of Filing of Official Transcript with Certificate of Service re 10134 Transcript - PDF, 7/13/2018 Entered and Copies Emailed to Liaison Counsel. (tjd) (Entered: 07/13/2018) |
| 07/13/2018 | 10136 | ORDER THAT THE SPECIAL MASTERS HEREBY DENY 9815 MOTION TO PROHIBIT EX PARTE INTERVIEWS WITH NFL PLAYER-CLAIMANTS' |

| | | TREATING PHYSICIANS; THE CLAIMS ADMINISTRATOR SHALL MAINTAIN AUDIT HOLDS ON ANY CLAIMS IN AUDIT IN WHICH A HEALTHCARE PROVIDER, LAWYER, RETIRED NFL FOOTBALL PLAYER, OR ANY OTHER PARTY REFUSES TO PROVIDE THE INFORMATION REQUESTED BY THE CLAIMS ADMINISTRATOR UNTIL THE REQUESTED INFORMATION HAS BEEN MADE AVAILABLE. SIGNED BY SPECIAL MASTERS WEDELL E. PRITCHETT AND JO-ANN M. VERRIER ON 7/12/2018; 7/13/2018 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(tjd) (Entered: 07/13/2018) |
|---|---|---|
| 07/13/2018 | 10137 | Statement *of the Claims Administrator in Response to the Motion by Class Member Andrew Stewart to Require Claims Administrator to Pay Remaining Amount of Monetary Award* by CLAIMS ADMINISTRATOR. (Attachments: # 1 Exhibit A - Rules Governing the Assignment of Claims)(BROWN, ORRAN) (Entered: 07/13/2018) |
| 07/16/2018 | 10138 | TRANSCRIPT of Hearing held on 4/16/2018, before Judge ANITA B. BRODY. Court Reporter/Transcriber: ESR / DOMAN TRANSCRIPTION SERVICE. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 8/6/2018. Redacted Transcript Deadline set for 8/16/2018. Release of Transcript Restriction set for 10/15/2018. (ems) (Entered: 07/16/2018) |
| 07/16/2018 | 10139 | Notice of Filing of Official Transcript with Certificate of Service re 10138 Transcript - PDF, 7/16/2018 Entered and Copies Emailed. (ems) (Entered: 07/16/2018) |
| 07/16/2018 | 10140 | ORDER that ON AUGUST 14, 2018 AT 10:30 a.m., THE COURT WILL HOLD AN IN-PERSON CONFERENCE TO ADDRESS SETTLEMENT IMPLEMENTATION ISSUES RELATED TO THIRD-PARTY FUNDERS IN CHAMBERS, CLASS COUNSEL GENE LOCKS OF THE LOCKS FIRM IS DIRECTED TO NOTIFY ALL THIRD-PARTY FUNDERS WITH ANY FUNDING AGREEMENT RELATED TO THE NFL CONCUSSION SETTLEMENT THAT EACH FUNDER, OR A REPRESENTATIV FOR EACH FUNDER, MUST ATTEND THE CONFERENCE. CLASS COUNSEL LOCKS MUST REPORT TO THE COURT ON OR BEFORE JULY 25, 2018 WITH A LIST OF ALL OF THE UNDERS FOR WHICH HE HAS RECEIVED A CONFIRMATION OF ATTENDANCE.... SIGNED BY HONORABLE ANITA B. BRODY ON 7/16/2018. 7/16/2018 ENTERED AND COPIES VIA ECF. (mo, ) (Entered: 07/16/2018) |
| 07/16/2018 | | Set/Reset Hearings:A CONFERENCE, IN-PERSON, TO ADDRESS SETTLEMENT IMPLEMENTATION ISSUES RELATED TO THIRD-PARTY FUNDERS WILL BE HELD ON 8/14/2018 AT 10:30 AM IN THE JUDGE'S CHAMBERS, ROOM 7613 ON THE 7TH FLOOR OF THE U.S. COURTHOUSE, 601 MARKET ST., PHILADELPHIA, PA, BEFORE HONORABLE ANITA B. BRODY. 7/16/2018 ENTERED AND COPIES SENT VIA ECF.(mo, ) (Entered: 07/16/2018) |
| 07/16/2018 | 10141 | NOTICE OF APPEAL as to 10124 Order on Motion for Order,,, Order on Motion to Intervene,,,,,, Order on Motion for Leave to File,, by THRIVEST SPECIALTY FUNDING, LLC. Filing fee $ 505, receipt number 0313-12927032. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (Attachments: # 1 Exhibit A)(FANELLI, MARK) Modified on 7/17/2018 (ems). (Entered: 07/16/2018) |

| 07/17/2018 | 10142 | NOTICE OF APPEAL as to 10104 Order, 10103 Order, by ANAPOL WEISS, P.C.. Filing fee $ 505, receipt number 0313-12928367. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (ALFANO, GAETAN) Modified on 7/17/2018 (ems). (Entered: 07/17/2018) |
|---|---|---|
| 07/17/2018 | 10143 | MOTION to Strike *Objection of the NFL to Post-Appeal Monetary Award Determination* filed by PLAINTIFF(S). Memorandum and Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Memorandum)(LOCKS, GENE) Modified on 7/17/2018 (ems). (Entered: 07/17/2018) |
| 07/18/2018 | 10144 | NOTICE - PENDING BEFORE THE COURT IS THE NFL PARTIES' MOTION FOR THE APPOINTMENT OF A SPECIAL INVESTIGATOR (ECF NO. 9880). THE NFL PARTIES HAVE PROVIDED SUFFICIENT EVIDENCE OF POSSIBLE FRAUD TO WARRANT SERIOUS CONCERN.... THEREFORE, THE COURT WILL NOT APPOINT A SPECIAL INVESTIGATOR AT THIS TIME. NEVERTHELESS, THE COURT WILL DEFER DECISION ON THE NFL PARTIES' MOTION. IF THE CLAIMS ADMINISTRATOR OR THE SPECIAL MASTERS ALERT THE COURT - EITHER FORMALLY OR INFORMALLY - THAT A SPECIAL INVESTIGATOR IS NEEDED TO FAITHFULLY IMPLEMENT THE SETTLEMENT AGREEMENT, THE COURT WILL RULE ON THE MOTION AT THAT TIME. MEANWHILE, THE COURT EXPECTS THE PARTIES, THE CLAIMS ADMINISTRATOR, AND THE SPECIAL MASTERS TO CONTINUE TO ENSURE THAT ALL CLAIMS ARE PAID PROMPTLY.7/18/2018 ENTERED AND COPIES SENT VIA ECF.(mo, ) (Entered: 07/18/2018) |
| 07/18/2018 | 10145 | STATUS REPORT *of Co-Lead Class Counsel with Updated Actuarial Analysis* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/18/2018) |
| 07/18/2018 | 10146 | TRANSCRIPT of Hearing held on 5/30/2018, before Judge ANITA B. BRODY. Court Reporter/Transcriber: ESR / DOMAN TRANSCRIPTION SERVICE. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 8/8/2018. Redacted Transcript Deadline set for 8/20/2018. Release of Transcript Restriction set for 10/16/2018. (ems) (Entered: 07/18/2018) |
| 07/18/2018 | 10147 | Notice of Filing of Official Transcript with Certificate of Service re 10146 Transcript - PDF, 7/18/2018 Entered and Copies Emailed. (ems) (Entered: 07/18/2018) |
| 07/18/2018 | 10148 | MOTION to Seal filed by NATIONAL FOOTBALL LEAGUE FOUNDATION, NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.Certificate of Service.Motions referred to DAVID R. STRAWBRIDGE. (Attachments: # 1 Exhibit, # 2 Certificate of Service, # 3 Text of Proposed Order)(KARP, BRAD) (Entered: 07/18/2018) |
| 07/18/2018 | 10149 | MOTION to Remand *and Incorporated Memorandum of Law* filed by PLAINTIFF(S)..Motions referred to DAVID R. STRAWBRIDGE.(SOHN, BRADFORD) (Entered: 07/18/2018) |
| 07/19/2018 | 10150 | ORDER - AFTER CONSIDERATION OF THE OBJECTION TO THE SPECIAL MASTER'S MAY 31, 2018 RULING (ECF NO. 10094), IT IS ORDERED that THE MATTER IS REMANDED TO THE SPECIAL MASTER FOR FURTHER EXPLANATION OF HIS DETERMINATION.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/19/2018. 7/19/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/19/2018) |

| 07/19/2018 | 10151 | ORDER TO SHOW CAUSE WHY THIS COURT SHOULD NOT DISALLOW ANY REQUEST FOR EXPENSES. LOCKS SHALL SUBMIT THE RESPONSE TO THIS ORDER ON OR BEFORE 8/2/2018. IF MR. FULLER WISHES TO SUBMIT A RESPONSE, IT SHALL BE FILED ON OR BEFORE THE SAME DATE. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/19/2018. 7/19/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 8256) (ems) (Entered: 07/19/2018) |
|---|---|---|
| 07/19/2018 | 10152 | RESPONSE in Support re 10114 MOTION for Bond *Pending Appeal with Certificate of Service* filed by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 07/19/2018) |
| 07/20/2018 | 10153 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Doug Dubose* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 07/20/2018) |
| 07/20/2018 | 10154 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/20/2018) |
| 07/23/2018 | 10155 | UNOPPOSED REQUEST FOR EXTENSION OF TIME IN WHICH TO FILE RESPONSE MEMORANDUM TO ZIMMERMAN REED'S STATEMENT OF DISPUTE filed by LORRAINE DIXON, RICKEY DIXON. Certificate of Service. (SIEGEL, CHARLES) Modified on 7/24/2018 (ems). (Entered: 07/23/2018) |
| 07/24/2018 | 10156 | ORDER TO SHOW CAUSE WHY THIS COURT SHOULD NOT DISALLOW ANY REQUEST FOR EXPENSES. LOCKS SHALL SUBMIT THE RESPONSE TO THIS ORDER ON OR BEFORE 8/6/2018. IF MR. SMITH WISHES TO SUBMIT A RESPONSE, IT SHALL BE FILED ON OR BEFORE THE SAME DATE. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/23/2018. 7/24/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 76) (ems) (Entered: 07/24/2018) |
| 07/24/2018 | 10157 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Thomas Burke* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 07/24/2018) |
| 07/24/2018 | 10158 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Jerron Wishom* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 07/24/2018) |
| 07/24/2018 | 10159 | Copy of TPO Form re 10102 Notice of Appeal (Credit Card Payment), : (ems) (Entered: 07/24/2018) |
| 07/24/2018 | 10160 | ORDER - THIS COURT REQUIRES THE SUBMISSION OF MEDICAL RECORDS THAT SUBSTANTIATE THE BASIS FOR EACH OPT-OUT PLAINTIFF'S- 1(footnote) ALLEGAITONS OF "NEURODEGENERATIVE DISEASES OR CONDITIONS, INCLUDING, BUT NOT LIMITED TO, DEMENTIA, ALS, CTE, ALZHEIMER'S DISEASE, AND PARKINSON'S DISEASE" ALLEGED TO STEM FROM "CONCUSSIVE OR SUBCONCUSSIVE IMPACTS."... 1. ON OR BEFORE AUGUST 31, 2018, ALL OPT-OUT PLAINTIFFS AND/OR THEIR COUNSEL, MUST PROVIDE OPT-OUT COORDINATING COUNSEL, WENDY FLEISHMAN AT LIEFF CABRASER HEIMANN & BERNSTEIN,LLP... WITH EITHER OF THE FOLLOWING:... 5. ANY OPT-OUT PLAINTIFF'S FAILURE TO COMPLY WITH THIS ORDER CAN RESULT IN THE DISMISSAL OF SUCH OPT-OUT PLAINTIFF'S CLAIMS AGAINST THE NFL DEFENDANTS..... SIGNED BY HONORABLE ANITA B. BRODY ON 7/24/2018. 7/24/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/24/2018) |

| 07/24/2018 | 10161 | ORDER THAT THE ISSUES IN THE PETITION WILL BE ADDRESSED AND RESOLVED IN THE ATTORNEY'S LIEN DISPUTE RESOLUTION PROCESS. FOR THE REASONS AND WITH THE CONSENT OF COUNSEL, THE PETITION IS DENIED AS MOOT. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/24/2018. 7/24/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 10025) (ems) (Entered: 07/24/2018) |
|---|---|---|
| 07/24/2018 | 10162 | ORDER THAT FOR THE REASONS AND WITH THE CONSENT OF COUNSEL, THE EXTENSION REQUEST IS GRANTED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/24/2018. 7/24/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 7266) (ems) (Entered: 07/24/2018) |
| 07/24/2018 | 10163 | STATUS REPORT *Claims Administrator Status Report No. 2* by CLAIMS ADMINISTRATOR. (Attachments: # 1 Exhibit 1)(BROWN, ORRAN) (Entered: 07/24/2018) |
| 07/24/2018 | 10164 | NOTICE OF APPEAL as to 10104 Order, by PLAINTIFF(S). Filing fee $ 505. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (LUBEL, LANCE) Modified on 7/25/2018 (ems). (Entered: 07/24/2018) |
| 07/24/2018 | 10165 | Objections by PLAINTIFF(S) re 10128 Application/Petition, *Alexander Objectors' Opposition to Co-Lead Class Counsel's First Verified Petition for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs.* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Text of Proposed Order)(LUBEL, LANCE) (Entered: 07/24/2018) |
| 07/25/2018 | 10166 | NOTICE OF APPEAL as to 10104 Order, 10103 Order, by PLAINTIFF(S). Filing fee $ 505, receipt number 0313-12946630. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (TARRICONE, ANTHONY) Modified on 7/26/2018 (ems). (Entered: 07/25/2018) |
| 07/25/2018 | | USCA Appeal Fees received $ 505 receipt number PPE182029 re 10164 Notice of Appeal filed by PLAINTIFF(S) (ems) (Entered: 07/25/2018) |
| 07/25/2018 | 10167 | NOTICE by NATIONAL FOOTBALL LEAGUE FOUNDATION, NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC */ Letter re Briefing Schedule* (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(BIRENBOIM, BRUCE) (Entered: 07/25/2018) |
| 07/26/2018 | 10168 | EXPLANATION AND ORDER - CLASS MEMBER ANDREW STEWART ENTERED INTO AN ASSIGNMENT AGREEMENT WITH THIRD-PARTY FUNDER RD LEGAL. AFTER STEWARD WAS APPROVED FOR A MONETARY AWARD, RD LEGAL SOUGHT RECISSION OF THE AGREEMENT AND RECEIPT OF THE MONEY IT ORIGINALLY PAID TO STEWART ABSENT ANY INTEREST.... IT IS ORDERED that STEWART'S MOTION TO REQUIRE CLAIMS ADMINISTRATOR TO PAY REMAINING AMOUNT OF MONETARY AWARD IS DENIED. IT IS FURTHER ORDERED that THE CLAIMS ADMINISTRATOR MUST PAY RD LEGAL $343,120.53.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/25/2018. 7/26/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/26/2018) |
| 07/26/2018 | 10169 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Gregory Monroe (Representative Claimant to Rodrick Monroe)* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 07/26/2018) |
| 07/26/2018 | 10170 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien and Expenses as to Douglas Donley* (FERRARO, KELLY) (Entered: 07/26/2018) |

| 07/26/2018 | 10171 | TRANSCRIPT of Telephone Conference held on 7/11/2018, before Judge ANITA B. BRODY. Court Reporter/Transcriber: ESR / DOMAN TRANSCRIPTION SERVICE. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 8/16/2018. Redacted Transcript Deadline set for 8/27/2018. Release of Transcript Restriction set for 10/24/2018. (ems) (Entered: 07/26/2018) |
|---|---|---|
| 07/26/2018 | 10172 | Notice of Filing of Official Transcript with Certificate of Service re 10171 Transcript - PDF,, 7/26/2018 Entered and Copies Emailed. (ems) (Entered: 07/26/2018) |
| 07/26/2018 | 10173 | NOTICE of Docketing Record on Appeal from USCA re 10141 Notice of Appeal (Credit Card Payment), filed by THRIVEST SPECIALTY FUNDING, LLC. USCA Case Number 18-2582 (dmc, ) (Entered: 07/26/2018) |
| 07/27/2018 | 10174 | NOTICE OF APPEAL by WALKER PRESTON CAPITAL HOLDINGS LLC. Filing fee $ 505, receipt number 0313-12952314. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (EPSTEIN, LEE) Modified on 7/27/2018 (ems). (Entered: 07/27/2018) |
| 07/27/2018 | 10175 | NOTICE of Docketing Record on Appeal from USCA re 10142 Notice of Appeal (Credit Card Payment), filed by ANAPOL WEISS, P.C.. USCA Case Number 18-2650 (ems) (Entered: 07/27/2018) |
| 07/27/2018 | 10176 | NOTICE of Docketing Record on Appeal from USCA re 10164 Notice of Appeal filed by PLAINTIFF(S). USCA Case Number 18-2651 (ems) (Entered: 07/27/2018) |
| 07/27/2018 | 10177 | NOTICE of Docketing Record on Appeal from USCA re 10166 Notice of Appeal (Credit Card Payment), filed by PLAINTIFF(S). USCA Case Number 18-2661 (ems) (Entered: 07/27/2018) |
| 07/30/2018 | 10178 | ORDER THAT THE CLERK OF COURT IS DIRECTED TO DOCKET THE ATTACHED LETTER FROM THE PARTIES DATED JULY 25, 2018 WHICH THE COURT DEEMS TO BE A JOINT RESPONSE TO THE SHOW CAUSE ORDER FILED ON JULY 19, 2018. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/30/2018; (Attachments: # 1 Letter) 7/30/2018 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO LOCKS LAW FIRM V. FULLER ATTORNEY'S LIEN DISPUTE).(tjd) (Entered: 07/30/2018) |
| 07/30/2018 | 10179 | Per the Order filed on 7/30/2018, Joint Response to the Show Cause Order filed on July 19, 2018. (tjd) (Entered: 07/30/2018) |
| 07/31/2018 | 10180 | RESPONSE in Opposition re 10143 MOTION to Strike *Objection of the NFL to Post-Appeal Monetary Award Determination* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Certificate of Service)(KARP, BRAD) (Entered: 07/31/2018) |
| 07/31/2018 | 10181 | NOTICE of Docketing Record on Appeal from USCA re 10174 Notice of Appeal (Credit Card Payment) filed by WALKER PRESTON CAPITAL HOLDINGS LLC. USCA Case Number 18-2684. (tjd) (Entered: 07/31/2018) |
| 07/31/2018 | 10182 | ORDER THAT ANY OPPOSITION TO THE NFL DEFENDANTS' MOTION TO DISMISS SHALL BE DUE SIXTY DAYS AFTER THE NFL DEFENDANTS' MOTION TO DISMISS IS FILED; ANY OPPOSITION TO A.H.'S MOTION TO REMAND SHALL BE DUE SIXTY DAYS AFTER THE NFL DEFENDANTS' MOTION TO DISMISS IS FILED; ANY REPLY BRIEFS IN SUPPORT OF THE NFL DEFENDANTS' MOTION TO DISMISS SHALL BE DUE THIRTY DAYS AFTER THE DEADLINE FOR FILING AN OPPOSITION TO THE MOTION TO |

**-651-**

| | | |
|---|---|---|
| | | DISMISS; ANY REPLY BRIEFS IN SUPPORT OF A.H.'S REMAND MOTION SHALL BE DUE THIRTY DAYS AFTER THE DEADLINE FOR FILING AN OPPOSITION TO THE REMAND MOTION. SIGNED BY HONORABLE GERALD J. PAPPERT FOR THE HONORABLE ANITA B. BRODY ON 7/31/2018; 7/31/2018 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO 14-CV-29, 16-CV-2058, 18-CV-464).(tjd) (Entered: 07/31/2018) |
| 07/31/2018 | 10183 | ORDER THAT ERIC HILGENBERG'S PETITION FOR DEVIATION 10038 IS DENIED AS MOOT. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/31/2018; 7/31/2018 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(tjd) (Entered: 07/31/2018) |
| 07/31/2018 | 10184 | ORDER THAT CHIE SMITH'S PETITION FOR DEVIATION 10037 IS DENIED AS MOOT. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/31/2018; 7/31/2018 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (tjd) (Entered: 07/31/2018) |
| 07/31/2018 | 10185 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE re 8256 LOCKS LAW FIRM V. FULLER BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE ATTORNEYS' FEES AND COSTS AS IS SET FORTH IN THE WITHDRAWAL SUBMITTED BY THE PARTIES. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/31/2018;; (Attachments: # 1 Text of Proposed Order, # 2 Notice) 8/1/2018 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(tjd) (Entered: 08/01/2018) |
| 08/01/2018 | 10186 | STATUS REPORT *Regarding Cambridge Entities' Production in Response to Order, dated February 20, 2018, and Telephonic Conference of July 11, 2018* by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(SEEGER, CHRISTOPHER) (Entered: 08/01/2018) |
| 08/02/2018 | 10187 | NOTICE OF ATTORNEY'S LIEN by PLAINTIFF(S). Certificate of Service. (GIDDENS, JOHN) Modified on 8/6/2018 (ems). (Entered: 08/02/2018) |
| 08/02/2018 | 10188 | NOTICE OF APPEAL as to 10019 Order by THE LOCKS LAW FIRM. Filing fee $505, receipt number 0313-12962254. Copies to Judge, Clerk USCA, and Appeals Clerk. Certificate of Service. (LOCKS, GENE) Modified on 8/3/2018 (tjd). (Entered: 08/02/2018) |
| 08/02/2018 | 10189 | EXHIBIT A Filed Under Seal to 10186 Status Report filed by PLAINTIFF(S). (FILED UNDER SEAL). (tjd) (tjd). (Entered: 08/02/2018) |
| 08/03/2018 | 10190 | RESPONSE TO ORDER TO SHOW CAUSE by THE LOCKS LAW FIRM. (LEH, MICHAEL) (Entered: 08/03/2018) |
| 08/03/2018 | 10191 | APPLICATION/PETITION *Response to Objection to Petition (ECF No. 10128)* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 08/03/2018) |
| 08/06/2018 | 10192 | NOTICE by PLAINTIFF(S) *of Release of Attorney's Lien in Re: Travis Minor* (WEISBERG, LAWRENCE) (Entered: 08/06/2018) |
| 08/06/2018 | 10193 | NOTICE by THE LOCKS LAW FIRM re 8254 Notice (Other) *of Attorney's Lien - Anthony Smith* (Attachments: # 1 Exhibit Retention Agreement)(LOCKS, GENE) (Entered: 08/06/2018) |
| 08/06/2018 | 10194 | NOTICE by THE LOCKS LAW FIRM re 8417 Notice (Other) *of Attorney's Lien - Rodrick Rutledge* (Attachments: # 1 Exhibit Retention Agreement)(LOCKS, GENE) (Entered: 08/06/2018) |

| 08/06/2018 | 10195 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Seth Joyner* (Attachments: # 1 Retention Agreement, # 2 Short Form Complaint)(LOCKS, GENE) (Entered: 08/06/2018) |
|---|---|---|
| 08/06/2018 | 10196 | NOTICE by THE LOCKS LAW FIRM re 8257 Notice (Other) *of Attorney's Lien - Chad Eaton* (Attachments: # 1 Retention Agreement, # 2 Short Form Complaint) (LOCKS, GENE) (Entered: 08/06/2018) |
| 08/06/2018 | 10197 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Jeffrey Fuller* (Attachments: # 1 Retention Agreement)(LOCKS, GENE) (Entered: 08/06/2018) |
| 08/06/2018 | 10198 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Ken Walter* (Attachments: # 1 Retention Agreement, # 2 Short Form Complaint)(LOCKS, GENE) (Entered: 08/06/2018) |
| 08/06/2018 | 10199 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Walt Harris* (Attachments: # 1 Retention Agreement)(LOCKS, GENE) (Entered: 08/06/2018) |
| 08/07/2018 | 10200 | NOTICE by PLAINTIFF(S) *of Attorney's Liens* (WEISBERG, LAWRENCE) (Entered: 08/07/2018) |
| 08/07/2018 | 10201 | NOTICE by PLAINTIFF(S) *of Petition to Establish Attorney's Lien - Keith Henderson* (WEISBERG, LAWRENCE) (Main Document 10201 replaced on 8/8/2018) (ems). (Main Document 10201 replaced on 8/10/2018) (ems). (Entered: 08/07/2018) |
| 08/07/2018 | 10202 | NOTICE by PLAINTIFF(S) *of Petition to Establish Attorney's Lien - William Bates* (WEISBERG, LAWRENCE) (Main Document 10202 replaced on 8/10/2018) (ems). (Entered: 08/07/2018) |
| 08/07/2018 | 10203 | NOTICE by PLAINTIFF(S) *of Petition to Establish Attorney's Lien - LeShon Johnson* (WEISBERG, LAWRENCE) (Main Document 10203 replaced on 8/8/2018) (ems). (Main Document 10203 replaced on 8/10/2018) (ems). (Entered: 08/07/2018) |
| 08/07/2018 | 10204 | NOTICE by PLAINTIFF(S) *of Petition to Establish Attorney's Lien - Peter Warrick* (WEISBERG, LAWRENCE) (Main Document 10204 replaced on 8/8/2018) (ems). (Main Document 10204 replaced on 8/10/2018) (ems). (Entered: 08/07/2018) |
| 08/07/2018 | 10205 | NOTICE by PLAINTIFF(S) *of Petition to Establish Attorney's Lien - William Offord* (WEISBERG, LAWRENCE) (Main Document 10205 replaced on 8/8/2018) (ems). (Main Document 10205 replaced on 8/10/2018) (ems). (Entered: 08/07/2018) |
| 08/07/2018 | 10206 | NOTICE by PLAINTIFF(S) *Amended Attorney's Lien* (WEISBERG, LAWRENCE) (Entered: 08/07/2018) |
| 08/07/2018 | 10207 | NOTICE of Docketing Record on Appeal from USCA re 10188 Notice of Appeal (Credit Card Payment) filed by THE LOCKS LAW FIRM. USCA Case Number 18-2724 (dmc, ) (Entered: 08/08/2018) |
| 08/10/2018 | 10208 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Gerald Sullivan* (GIBBS, WILLIAM) (Entered: 08/10/2018) |
| 08/10/2018 | 10209 | JOINT REQUEST FOR EXTENSION OF TIME TO FILE RESPONSE MEMORANDA filed by PLAINTIFF(S).. (ZIMMERMAN, CHARLES) Modified on 8/13/2018 (ems). (Entered: 08/10/2018) |
| 08/13/2018 | 10210 | STATUS REPORT *Regarding Cambridge Entities' Production in Response to Order, dated February 20, 2018, and Telephonic Conference of July 11, 2018* by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Exhibit B)(SEEGER, CHRISTOPHER) (Entered: 08/13/2018) |

| 08/13/2018 | 10211 | ORDER THAT THE JOINT REQUEST FOR EXTENSION OF TIME FILED ON 8/10/2018 (DOC. NO. 10209) IS GRANTED. THE PARTIES BOTH HAVE UNTIL 9/10/2018 TO FILE THEIR RESPONSE MEMORANDA WITH THE CLAIMS ADMINISTRATOR. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 8/13/2018. 8/13/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 7266) (ems) (Entered: 08/13/2018) |
| --- | --- | --- |
| 08/14/2018 | 10212 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY: Hearing held on 8/14/2018. Court Reporter: ESR. (ems) (Entered: 08/14/2018) |
| 08/15/2018 | 10213 | MOTION to Withdraw as Attorney *for Emerson F. Martin, Jr. and Keschia Martin* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(ZIMMERMAN, CHARLES) Modified on 8/15/2018 (ems). (Entered: 08/15/2018) |
| 08/15/2018 | 10214 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Emerson F. Martin, Jr. and Keschia Martin* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 08/15/2018) |
| 08/15/2018 | 10215 | MOTION to Withdraw as Attorney *for Carl Lee, III and Donna Marie Lee* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(ZIMMERMAN, CHARLES) Modified on 8/15/2018 (ems). (Entered: 08/15/2018) |
| 08/15/2018 | 10216 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Carl Lee, III and Donna Marie Lee* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 08/15/2018) |
| 08/15/2018 | 10217 | MOTION to Withdraw as Attorney *for Mickey Pruitt* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(ZIMMERMAN, CHARLES) Modified on 8/15/2018 (ems). (Entered: 08/15/2018) |
| 08/15/2018 | 10218 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Mickey Pruitt* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 08/15/2018) |
| 08/15/2018 | 10219 | MOTION to Withdraw as Attorney *for Douglas R. Dilts* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(ZIMMERMAN, CHARLES) Modified on 8/15/2018 (ems). (Entered: 08/15/2018) |
| 08/15/2018 | 10220 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Douglas R. Dilts* (Attachments: # 1 Petition to Establish Attorney's Lien)(ZIMMERMAN, CHARLES) (Entered: 08/15/2018) |
| 08/15/2018 | 10221 | CONSENT to Jurisdiction by US Magistrate Judge in MINOR v. WEISBERG (In re Doc. No. 7886 ) (ems) (Entered: 08/15/2018) |
| 08/16/2018 | 10222 | ORDER THAT THE NFL DEFENDANT'S MOTION TO FILE UNDER SEAL LIMITED PORTIONS OF THEIR MOTION TO DISMISS THE COMPLAINTS FILED BY SETTLEMENT CLASS MEMBERS TRACY SCROGGINS, ROSE STABLER, AND A.H. (THE "MOTION TO DISMISS") IS GRANTED AND IT IS FURTHER ORDERED THAT THE NFL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS IS HEREBY SEALED, AND AN UNREDACTED COPY OF THE MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS SHALL BE FILED WITH THE COURT IN HARD COPY WITHIN FIVE (5) DAYS OF THIS ORDER. IT IS FURTHER ORDERED THAT THE NFL DEFENDANTS SHALL ELECTRONICALLY FILE THEIR MOTION TO DISMISS AND A REDACTED COPY OF THE MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS ON THE PUBLIC DOCKET WITHIN FIVE (5) DAYS OF THIS ORDER AND IT IS FURTHER ORDERED |

-654-

| | | |
|---|---|---|
| | | THAT THE NFL DEFENDANTS SHALL SERVE COUNSEL FOR PLAINTIFF TRACY SCROGGINS WITH AN UNREDACTED COPY OF THE MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS WITHIN FIVE (5) DAYS OF THIS ORDER. SIGNED BY HONORABLE ANITA B. BRODY ON 8/15/2018. 8/16/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-29, 18-CV-464, 16-CV-2058) (ems) (Entered: 08/16/2018) |
| 08/16/2018 | 10223 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 8/16/2018. 8/17/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 7886) (ems) (Entered: 08/17/2018) |
| 08/16/2018 | 10224 | REPORT AND RECOMMENDATIONS THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE ATTORNEYS' FEES AND COSTS AS IS SET FORTH ABOVE. THE PARTIES MAY FILE OBJECTIONS TO THIS REPORT AND RECOMMENDATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 8/16/2018. (Attachments: # 1 Text of Proposed Order, # 2 Notice) 8/17/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 8233) (ems) (Entered: 08/17/2018) |
| 08/17/2018 | 10225 | NOTICE by THE LOCKS LAW FIRM re 10197 Notice (Other) *of Petition to Withdraw Amended Notice and Petition - Jeffery Fuller* (LOCKS, GENE) (Entered: 08/17/2018) |
| 08/17/2018 | 10226 | ***(Court Only) Civ624 Notice to the Court regarding Report and Recommendation. (ems) (Entered: 08/17/2018) |
| 08/17/2018 | 10227 | MOTION TO DISMISS THE COMPLAINTS FILED BY SETTLEMENT CLASS MEMBERS TRACY SCROGGINS, ROSE STABLER, AND A.H. filed by NATIONAL FOOTBALL LEAGUE FOUNDATION, NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. MEMORANDUM. (APPLIES TO 14-CV-29, 18-CV-464, 16-CV-2058) (FILED UNDER SEAL) (ems) (ems). (Entered: 08/17/2018) |
| 08/17/2018 | 10228 | MOTION to Dismiss *the Complaints Filed by Settlement Class Members Tracy Scroggins, Rose Stabler, and A.H.* filed by NATIONAL FOOTBALL LEAGUE FOUNDATION, NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. Memorandum, Certificate of Service. (Attachments: # 1 Redacted Memorandum, # 2 Text of Proposed Order)(KARP, BRAD) Modified on 8/20/2018 (ems). (Entered: 08/17/2018) |
| 08/20/2018 | 10229 | NOTICE by PLAINTIFF(S) *Scot Brantley's Notice of Stipulated Attorney's Lien* (KARATINOS, THEODORE) (Entered: 08/20/2018) |
| 08/21/2018 | 10230 | SETTLEMENT IMPLEMENTATIONS DETERMINATION - APPELLANT'S OBJECTION IS DENIED. SIGNED BY HONORABLE ANITA B. BRODY ON 8/20/2018. 8/21/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 08/21/2018) |
| 08/21/2018 | 10231 | CONSENT to Jurisdiction by US Magistrate Judge in MCHALE v. POPE MCGLAMRY PC (In re Doc. No. 7461 ) (ems) (Entered: 08/21/2018) |
| 08/21/2018 | 10232 | ORDER that THRIVEST'S MOTION FOR BOND PENDING APPEAL (ECF NO. 10114) IS DENIED.-1(footnote). SIGNED BY HONORABLE ANITA B. BRODY ON |

| | | |
|---|---|---|
| | | 8/21/2018.8/21/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/21/2018) |
| 08/21/2018 | 10233 | TRANSCRIPT of Funder's Conference held on 8/14/2018, before Judge ANITA B. BRODY. Court Reporter/Transcriber: ESR / DOMAN TRANSCRIPTION SERVICE. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 9/11/2018. Redacted Transcript Deadline set for 9/21/2018. Release of Transcript Restriction set for 11/19/2018. (ems) (Entered: 08/21/2018) |
| 08/21/2018 | 10234 | Notice of Filing of Official Transcript with Certificate of Service re 10233 Transcript - PDF,, 8/21/2018 Entered and Copies Emailed. (ems) (Entered: 08/21/2018) |
| 08/22/2018 | 10235 | ORDER THAT THE MOTIONS TO WITHDRAW AS ATTORNEY (DOC. NOS. 10213, 10215, 10217, AND 10219 IN 12-MD-2323) ARE GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 8/21/2018. 8/22/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO 12-CV-6069, 12-CV-4185, 12-CV-2219) (ems) (Entered: 08/22/2018) |
| 08/23/2018 | 10236 | AMENDED TRANSCRIPT of Hearing held on 5/9/2018, before Judge ANITA B. BRODY. Court Reporter/Transcriber: ESR / DOMAN TRANSCRIPTION SERVICE. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 9/13/2018. Redacted Transcript Deadline set for 9/24/2018. Release of Transcript Restriction set for 11/21/2018. (ems) (Entered: 08/24/2018) |
| 08/23/2018 | 10237 | Notice of Filing of Official Transcript with Certificate of Service re 10236 Transcript - PDF,, 8/24/2018 Entered and Copies Emailed. (ems) (Entered: 08/24/2018) |
| 08/27/2018 | 10238 | ORDER -UPON CAREFUL AND INDEPENDENT CONSIDERATION OF THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DAVID R. STRAWBRIDGE AND THE OBJECTIONS OF THE PARTIES, IT IS ORDERED that 1. THE REPORT AND RECOMMENDATION IS APPROVED AND ADOPTED; 2. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED; AND 3. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY HONORABLE ANITA B. BRODY ON 8/27/2018. 8/27/2018 ENTERED AND COPIES VIA ECF.(mo, ) Modified on 8/27/2018 (tjd). (Entered: 08/27/2018) |
| 08/27/2018 | 10239 | ORDER - THE LOCKS FIRM'S MOTION TO STRIKE OBJECTION OF THE NFL TO POST-APPEAL MONETARY AWARD DETERMINATION (ECF NO. 10143) IS DENIED. A MOTION TO STRIKE IS NOT THE APPROPRIATE METHOD TO ADDRESS THIS ISSUE. ANY ISSUES RAISED BY THE NFL'S OBJECTION WILL BE ADDRESSED THROUGH THE OBJECTION PROCESS AND BRIEFING SCHEDULE AS DETERMINED BY THE SPECIAL MASTERS AND CLAIMS ADMINISTRATOR.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/27/2018.8/27/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/27/2018) |
| 08/27/2018 | 10240 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - David and Carin Richie* (Attachments: # 1 Retainer Agreement, # 2 Short Form Complaint)(LOCKS, GENE) (Entered: 08/27/2018) |
| 08/27/2018 | 10241 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE DECISION, |

| | | THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 8/27/2018. 8/27/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 7461) (ems) (Entered: 08/27/2018) |
|---|---|---|
| 08/29/2018 | 10242 | ORDER that OPT-OUT PLAINTIFF SHAUN GAYLE HAS COMPLIED IN GOOD FAITH WITH THE COURT'S JULY 24, 2018 ORDER (ECF NO. 10160). GAYLE MUST SUBMIT ANY ADDITIONAL SUPPORTING MEDICAL RECORDS TO OPT-OUT COORDINATING COUNSEL ON OR BEFORE DECEMBER 31, 2018. IF GAYLE CANNOT COMPLY WITH THAT DEADLINE, HE MUST RECEIVE PERMISSION FROM THE COURT.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/28/2018. 08/29/2018 ENTERED AND COPIES VIA ECF.(mo, ) (mo, ). (Entered: 08/29/2018) |
| 08/29/2018 | 10243 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (TURNBULL, SANGA) (Entered: 08/29/2018) |
| 08/29/2018 | 10244 | NOTICE by PLAINTIFF(S) *OF ATTORNEY'S LIEN* (TURNBULL, SANGA) (Entered: 08/29/2018) |
| 08/30/2018 | 10245 | APPLICATION/PETITION *Joint Application by Co-Lead Class Counsel and Counsel for the National Football League and NFL Properties, LLC for Appointment of Two Additional Appeals Advisory Panel Members* by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Exhibit B)(SEEGER, CHRISTOPHER) (Entered: 08/30/2018) |
| 09/04/2018 | 10246 | ***(Court Only) Civ624 Notice to the Court regarding Report and Recommendation. (ems) (Entered: 09/04/2018) |
| 09/04/2018 | 10247 | STIPULATION of Dismissal *with Prejudice* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 09/04/2018) |
| 09/05/2018 | 10248 | ORDER that JOINT APPLICATION BY CO-LEAD CLASS COUNSEL AND COUNSEL FOR THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC FOR APPOINTMENT OF TWO ADDITIONAL APPEALS ADVISORY PANEL MEMBERS... IT IS SO STIPULATED AND AGREED. IT IS SO ORDERED THIS 4TH DAY OF SEPTEMBER, 2018, that THE RECOMMENDED CANDIDATES FOR THE AAP ARE APPROVED.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/4/2018. 9/5/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/05/2018) |
| 09/05/2018 | 10249 | ORDER - UPON CAREFUL AND INDEPENDENT CONSIDERATION OF THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE DAVID R. STRAWBRIDGE AND THE OBJECTIONS OF THE PARTIES, IT IS ORDERED that 1. THE REPORT AND RECOMMENDATION IS APPROVED AND ADOPTED., 2. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED; AND 3. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISPURSE THE WITHELD FUNDS IN ACCORDANCE WITH THE DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/4/2018. 9/5/2018 ENTERED AND COPIES VIA ECF(mo, ) (Entered: 09/05/2018) |
| 09/06/2018 | 10250 | NOTICE by PLAINTIFF(S) *of Supplemental Authority* (Attachments: # 1 Exhibit A Dent v NFL)(SOHN, BRADFORD) (Entered: 09/06/2018) |
| 09/07/2018 | 10251 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Irv Cross* (Attachments: # 1 Petition to Establish Attorney's Lien)(LUCKASEVIC, JASON) (Entered: 09/07/2018) |

| 09/10/2018 | 10252 | ORDER that THE KANSAS CITY CHIEFS FOOTBALL CLUB, INC.'S LETTER MOTION FOR AN EXTENSION OF TIME (ECF NO. 63) IS GRANTED. THE KANSAS CITY CHIEFS FOOTBALL CLUB, INC. MUST RESPOND TO PROPOSED PLAINTIFF-INTERVENOR CYNTHIA PHILLIPS' MOTION TO INTERVENE (ECF NO. 62) ON OR BEFORE SEPTEMBER 27, 2018.SIGNED BY HONORABLE ANITA B. BRODY ON 9/10/2018. 9/10/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/10/2018) |
|---|---|---|
| 09/11/2018 | 10253 | REQUEST TO THE COURT by WENDELL E. PRITCHETT, JO-ANN M. VERRIER. (APPLIES TO ALL ACTIONS) (ems) (Entered: 09/12/2018) |
| 09/12/2018 | 10254 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To the Claims of Tony Dorsett and Janet Dorsett Only(LUCKASEVIC, JASON) (Entered: 09/12/2018) |
| 09/12/2018 | 10255 | ORDER - IN CONSIDERATION OF THE SPECIAL MASTERS' REQUEST that THE COURT GRANT THE NFL PARTIES' MOTION FOR THE APPOINTMENT OF A SPECIAL INVESTIGATOR (ECF NO. 9880) SO THAT THE SPECIAL MASTERS CAN FAITHFULLY IMPLEMENT THE SETTLEMENT AGREEMENT, IT IS ORDERED that... IS GRANTED. THE SPECIAL INVESTIGATOR WILL BE APPOINTED BY THE COURT, AND WILL SERVE UNDER THE DIRECTION OF THE SPECIAL MASTER.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/12/2018.9/12/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/12/2018) |
| 09/13/2018 | 10256 | NOTICE by THE LOCKS LAW FIRM re 10240 Notice (Other) *of Petition to Withdraw Notice and Petition - David and Carin Richie* (LOCKS, GENE) (Entered: 09/13/2018) |
| 09/13/2018 | 10257 | NOTICE by NATIONAL FOOTBALL LEAGUE FOUNDATION, NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC re 10250 Notice (Other) / *Response to plaintiffs' September 6, 2018 Letter* (KARP, BRAD) (Entered: 09/13/2018) |
| 09/14/2018 | 10258 | Copy of Conditional Transfer Order (CTO-104) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: LA-E 2:18-8307. (ems) (Entered: 09/14/2018) |
| 09/17/2018 | 10259 | CONSENT to Jurisdiction by US Magistrate Judge in SCOGGINS v. ANAPOL WEISS (In re Doc. No. 8110 ) (ems) (Entered: 09/17/2018) |
| 09/17/2018 | 10260 | CONSENT to Jurisdiction by US Magistrate Judge in OWENS v. LOCKS LAW FIRM (In re Doc. No. 8399 ) (ems) (Entered: 09/17/2018) |
| 09/18/2018 | 10261 | Objections by PLAINTIFF(S) re 10128 Application/Petition, *of Co-Lead Counsel Christopher A. Seeger for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs*. (ZIMMERMAN, CHARLES) (Entered: 09/18/2018) |
| 09/18/2018 | 10262 | ORDER THAT THE TRANSCRIPT, AUDIO RECORDING AND MINUTE SHEET OF THE 9/12/2018 PROCEEDINGS IN THE ABOVE ENTITLED ARE PLACED UNDER SEAL. IT IS FURTHER ORDERED THAT COUNSEL OF RECORD WHO PARTICIPATED IN THE PROCEEDING ARE PERMITTED TO OBTAIN A COPY OF THE TRANSCRIPT. SIGNED BY HONORABLE ANITA B. BRODY ON 9/17/2018. 9/18/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO 14-CV-1995) (ems) (Entered: 09/18/2018) |
| 09/21/2018 | 10263 | STIPULATION of Dismissal *with Prejudice by Edward Scott and* by NATIONAL FOOTBALL LEAGUE, INC.. (BIRENBOIM, BRUCE) (Entered: 09/21/2018) |

| 09/21/2018 | 10264 | STIPULATION of Dismissal *with Prejudice by William Patrick Kenney, Sandra Louise Kenney, Thomas Baugh, Jean Baugh, and* by KANSAS CITY CHIEFS FOOTBALL CLUB, INC.. (BIRENBOIM, BRUCE) (Entered: 09/21/2018) |
| --- | --- | --- |
| 09/21/2018 | 10265 | STIPULATION of Dismissal *with Prejudice by Albert Lewis, Art Still, Lizabeth Still, Todd McNair, Lynette McNair, Frederick Jones, Tim Barnett, Chelonda Barnett, Walker Lee Ashley, Jr., Emile Harry, Lori Harry, Chris Smith, Billie Smith, Alexander Cooper, Leonard Griffin, Dawn Griffin, Christopher Martin, Yolanda Thompson-Martin, Joseph Phillips, Kevin Porter, and Annjela Hynes-Porter and* by KANSAS CITY CHIEFS FOOTBALL CLUB, INC.. (BIRENBOIM, BRUCE) (Entered: 09/21/2018) |
| 09/21/2018 | 10266 | STIPULATION of Dismissal *with Prejudice by John Smith and Monica Smith and* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (BIRENBOIM, BRUCE) (Entered: 09/21/2018) |
| 09/21/2018 | 10267 | STIPULATION of Dismissal *with Prejudice by John T. Smith, Monica Smith, Edward Scott, and Jade Scott and* by ARIZONA CARDINALS FOOTBALL CLUB LLC. (BIRENBOIM, BRUCE) (Entered: 09/21/2018) |
| 09/21/2018 | 10268 | STIPULATION of Dismissal *with Prejudice by Neil Smith, Douglas Terry, and* by KANSAS CITY CHIEFS FOOTBALL CLUB, INC.. (BIRENBOIM, BRUCE) (Entered: 09/21/2018) |
| 09/21/2018 | 10269 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY Court Reporter: KATHLEEN FELDMAN. (FILED UNDER SEAL)(kp, ) (ems). (Entered: 09/21/2018) |
| 09/24/2018 | 10270 | NOTICE by PLAINTIFF(S) *of Attorney's Lien as to Raymond Chris Perry* (ACHO, JAMES) (Entered: 09/24/2018) |
| 09/24/2018 | 10271 | APPLICATION/PETITION *to Establish Attorney's Lien as to Raymonf Chris Perry* by PLAINTIFF(S). (ACHO, JAMES) (Entered: 09/24/2018) |
| 09/26/2018 | 10272 | NOTICE by PLAINTIFF(S) *OF ATTORNEY'S LIEN* (TURNBULL, SANGA) (Entered: 09/26/2018) |
| 09/26/2018 | 10273 | APPLICATION/PETITION *To Establish Attorney's Lien* by PLAINTIFF(S). (TURNBULL, SANGA) (Entered: 09/26/2018) |
| 09/27/2018 | 10274 | NOTICE by PLAINTIFF(S) *Retired NFL Player, Fernando Smith* (DAVIS, CAROLINE) Modified on 9/27/2018 (ems). (Entered: 09/27/2018) |
| 09/27/2018 | 10275 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Arthur C. Moore* (Attachments: # 1 Exhibit Petition for Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 09/27/2018) |
| 09/27/2018 | 10276 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 09/27/2018) |
| 09/27/2018 | 10277 | NOTICE of Change of Address by RICHARD L. SCHEFF(SCHEFF, RICHARD) (Entered: 09/27/2018) |
| 09/27/2018 | 10278 | Declaration re 10261 Objections *Declaration of Christopher A. Seeger in Response to the Objection of Zimmerman Reed to First Verified Petition for Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 09/27/2018) |

| 09/27/2018 | 10279 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Raymond Smoot* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 09/27/2018) |
| 09/27/2018 | 10280 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 09/27/2018) |
| 09/27/2018 | 10281 | Response in Opposition *to Settlement Class Member Cynthia Phillips' Motion to Intervene* by KANSAS CITY CHIEFS FOOTBALL CLUB, INC.. (Attachments: # 1 Declaration of Caitlin E. Grusauskas, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Certificate of Service) (KARP, BRAD) (Entered: 09/27/2018) |
| 09/27/2018 | 10282 | MOTION to Dismiss filed by KANSAS CITY CHIEFS FOOTBALL CLUB, INC..Memorandum and Certificate of Service.Motions referred to DAVID R. STRAWBRIDGE. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order) (KARP, BRAD) (Entered: 09/27/2018) |
| 10/03/2018 | 10283 | ORDER - PURSUANT TO THE COURT'S CONTINUING JURISDICTION OVER THIS ACTION AS SET OUT IN THE COURT'S AMENDED FINAL RODER AND JUDGMENT (DOC. NO. 6534,PARAGRAPH 17), IT IS HEREBY ORDERED that THE ATTACHED AMENDED RULES GOVERNING ATTORNES' LIENS ARE ADOPTED.SIGNED BY HONORABLE DAVID R. STRAWBRIDGE, USMJ, APPROVED BY THE HONORABLE ANITA B. BRODY ON 10/3/2018. 10/3/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/03/2018) |
| 10/04/2018 | 10284 | TRANSCRIPT of Proceedings on 9/12/2018 before Judge Anita B. Brody. Court Reporter: KATHLEEN FELDMAN. (FILED UNDER SEAL)(kp, ) (Entered: 10/05/2018) |
| 10/05/2018 | 10285 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Tyler Seau; Sydney Seau; Hunter Seau; Jake Seau; and Bette Hoffman as trustee of the Tiaina B. Seau, Jr. 2002 Trust(STRAUSS, STEVEN) (Entered: 10/05/2018) |
| 10/05/2018 | 10286 | Minute Entry for proceedings held before MAGISTRATE JUDGE DAVID R. STRAWBRIDGE: Attorney Lien Hearing held on 10/3/2018. Court Reporter: ESR. (ems) (Entered: 10/09/2018) |
| 10/09/2018 | 10287 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 10/09/2018) |
| 10/09/2018 | 10288 | ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURTS ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/9/2018. 10/9/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 8136) (ems) (Entered: 10/09/2018) |
| 10/09/2018 | 10289 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 10/09/2018) |
| 10/10/2018 | 10290 | AMENDED TRANSCRIPT of Funder's Conference held on 8/14/2018, before Judge ANITA B. BRODY. Court Reporter/Transcriber: ESR / DOMAN TRANSCRIPTION SERVICE. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due |

| | | 10/31/2018. Redacted Transcript Deadline set for 11/13/2018. Release of Transcript Restriction set for 1/8/2019. (ems) (Entered: 10/10/2018) |
|---|---|---|
| 10/10/2018 | 10291 | Notice of Filing of Official Transcript with Certificate of Service re 10290 Transcript - PDF,, Entered and Copies Emailed. (ems) (Entered: 10/10/2018) |
| 10/10/2018 | 10292 | Minute Entry for proceedings held before MAGISTRATE JUDGE THOMAS J. RUETER: Settlement Conference regarding attorney lien dispute (Hilgenberg) held on 10/2/2018. (ems) (Entered: 10/10/2018) |
| 10/10/2018 | 10293 | NOTICE by JOHN LORENTZ of *Attorney's Lien* (MOIRANO, MICHAEL) (Entered: 10/10/2018) |
| 10/10/2018 | 10294 | ORDER - PURSUANT TO THE COURT'S CONTINUING JURISDICTION OVER THIS ACTION AS SET OUT IN THE COURT'S AMENDED FINAL ORDER AND JUDGMENT (DOC. NO. 6534, PARAGRAPH 17), IT IS HEREBY ORDERED that THE ATTACHED AMENDED RULES GOVERNING PETITIONS FOR DEVIATION FROM THE FEE CAP ARE ADOPTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/10/2018. 10/10/2018 ENTERED AND COPIES VIA ECF. (mo, ) (Entered: 10/10/2018) |
| 10/10/2018 | 10295 | NOTICE of Withdrawal of Appearance by JOHN P. FISKE on behalf of PLAINTIFF(S)(FISKE, JOHN) (Entered: 10/10/2018) |
| 10/10/2018 | 10296 | REPORT AND RECOMMENDATIONS THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE ATTORNEYS' FEES AND COSTS AS IS SET FORTH IN THE WITHDRAWAL SUBMITTED BY THE PARTIES. THE PARTIES MAY FILE OBJECTIONS TO THIS REPORT AND RECOMMENDATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/10/2018. (Attachments: # 1 Text of Proposed Order, # 2 Notice) 10/11/2018 ENTERED AND COPIES E-MAILED. (APPLES TO DOC. NO. 6967) (ems) (Entered: 10/11/2018) |
| 10/10/2018 | 10297 | REPORT AND RECOMMENDATIONS THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE ATTORNEYS' FEES AND COSTS AS IS SET FORTH IN THE WITHDRAWAL SUBMITTED BY THE PARTIES. THE PARTIES MAY FILE OBJECTIONS TO THIS REPORT AND RECOMMENDATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/10/2018. (Attachments: # 1 Text of Proposed Order, # 2 Notice) 10/11/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 6982) (ems) (Entered: 10/11/2018) |
| 10/10/2018 | 10298 | REPORT AND RECOMMENDATIONS THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE ATTORNEYS' FEES AND COSTS AS IS SET FORTH IN THE WITHDRAWAL SUBMITTED BY THE PARTIES. THE PARTIES MAY FILE OBJECTIONS TO THIS REPORT AND RECOMMENDATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/10/2018. (Attachments: # 1 Text of Proposed Order, # 2 Notice) 10/11/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 7266) (ems) (Entered: 10/11/2018) |
| 10/11/2018 | 10299 | Minute Entry for proceedings held before MAGISTRATE JUDGE DAVID R. STRAWBRIDGE: Initial Telephone Conference regarding Settlement held on 9/28/2018. (ems) (Entered: 10/11/2018) |
| 10/11/2018 | 10300 | Minute Entry for proceedings held before MAGISTRATE JUDGE DAVID R. STRAWBRIDGE: Initial Telephone Conference regarding Settlement held on 9/28/2018. (ems) (Entered: 10/11/2018) |

| 10/11/2018 | 10301 | Minute Entry for proceedings held before MAGISTRATE JUDGE DAVID R. STRAWBRIDGE: Initial Telephone Conference regarding Settlement held on 10/10/2018. (ems) (Entered: 10/11/2018) |
|---|---|---|
| 10/11/2018 | 10302 | Minute Entry for proceedings held before MAGISTRATE JUDGE DAVID R. STRAWBRIDGE: Initial Telephone Conference regarding Settlement held on 10/10/2018. (ems) (Entered: 10/11/2018) |
| 10/15/2018 | 10303 | ORDER that ON OR BEFORE OCTOBER 22, 2018, PLAINTIFF ANITA MARTIN MUST SHOW CAUSE WHY DEFENDANT'S MOTION TO DISMISS (ECF NO. 70) SHOULD NOT BE GRANTED AS UNOPPOSED. SIGNED BY HONORABLE ANITA B. BRODY ON 10/15/2018. 10/15/2018 ENTERED AND COPIES VIA ECF. (mo, ) (Entered: 10/15/2018) |
| 10/15/2018 | 10304 | ORDER THAT THE AMENDED RULES GOVERNING ATTORNEYS' LIENS ADOPTED ON 10/3/2018 ARE AMENDED IN PART. EXHIBIT C TO THE AMENDED RULES IS WITHDRAWN AND REPLACED WITH THE ATTACHED. THE ATTACHED IS THE REQUIRED WITHDRAWAL FORM FOR ALL MATTERS GOING FORWARD. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/15/2018. 10/15/2018 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS).(kp, ) (Entered: 10/15/2018) |
| 10/16/2018 | 10305 | EXPLANATION AND ORDER THAT ANAPOL SHALL CLARIFY ITS POSITION IN A WRITTEN COMMUNICATION TO THE COURT AND SCOGGINS BY 10/19/2018.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/16/2018. 10/16/2018 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY'S LIEN DISPUTE DOC NO. 8110)(kp, ) (Entered: 10/16/2018) |
| 10/16/2018 | 10306 | RESPONSE in Opposition re 10149 MOTION to Remand *and Incorporated Memorandum of Law* filed by NATIONAL FOOTBALL LEAGUE FOUNDATION, NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Declaration of Dennis L. Curran, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3)(KARP, BRAD) (Entered: 10/16/2018) |
| 10/16/2018 | 10307 | RESPONSE in Opposition re 10227 MOTION to Dismiss *on Class Membership Grounds* filed by PLAINTIFF(S). (SOHN, BRADFORD) (Entered: 10/16/2018) |
| 10/16/2018 | 10308 | RESPONSE in Opposition re 10228 MOTION to Dismiss *the Complaints Filed by Settlement Class Members Tracy Scroggins, Rose Stabler, and A.H. on Preemption and other Grounds* filed by PLAINTIFF(S). (SOHN, BRADFORD) (Entered: 10/16/2018) |
| 10/16/2018 | 10309 | RESPONSE TO COURT'S ORDER (DOC. NO. 10305 ) BY ANAPOL WEISS, P.C.. (COBEN, LARRY) Modified on 10/17/2018 (kp, ). (Entered: 10/16/2018) |
| 10/16/2018 | 10310 | RESPONSE in Opposition re 10149 MOTION to Remand *and Incorporated Memorandum of Law* filed by ALL AMERICAN SPORTS CORPORATION, BRG SPORTS HOLDING CORP., BRG SPORTS, INC., BRG SPORTS, LLC, EB SPORTS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC.. (CEREGHINI, PAUL) (Entered: 10/16/2018) |
| 10/18/2018 | 10311 | Transcript of Proceedings held on 10/3/2018, before Judge Strawbridge. Court Reporter/Transcriber ESR/DOMAN TRANSCRIPTION SERVICE.. (kp, ) (Entered: 10/18/2018) |
| 10/22/2018 | 10312 | NOTICE of Voluntary Dismissal with prejudice as to claims against defendants National Football League and NFL Properties LLC by DEEMS MAY, SUSAN |

| | | MAY(LUCKASEVIC, JASON) Modified on 10/23/2018 (kp, ). (Entered: 10/22/2018) |
|---|---|---|
| 10/22/2018 | 10313 | NOTICE of Voluntary Dismissal with prejudice as to claims against defendants National Football League and NFL Properties LLC by SHANTE CARVER (LUCKASEVIC, JASON) Modified on 10/23/2018 (kp, ). (Entered: 10/22/2018) |
| 10/22/2018 | 10314 | ORDER that ON OR BEFORE OCTOBER 29, 2018, PLAINTIFF ROSE STABLER MUST SHOW CAUSE WHY DEFENDANT'S MOTION TO DISMISS (ECF NO. 10227, ECF NO. 15) SHOULD NOT BE GRANTED AS UNOPPOSED. SIGNED BY HONORABLE ANITA B. BRODY ON 10/22/2018. 10/22/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/22/2018) |
| 10/26/2018 | 10315 | Objections by PLAINTIFF(S) - *Objection to Special Master's October 11, 2018 Ruling*. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(FLEISHMAN, WENDY) (Entered: 10/26/2018) |
| 10/29/2018 | 10316 | Minute Entry for proceedings held before MAGISTRATE JUDGE THOMAS J. RUETER Settlement Conference held on 10/12/2018.(kp, ) (Entered: 10/29/2018) |
| 10/29/2018 | 10317 | ORDER of USCA as to 10174 Notice of Appeal (Credit Card Payment) filed by WALKER PRESTON CAPITAL HOLDINGS LLC THAT THE MATTER IS DISMISSED PURSUANT TO FRAP 42(b) WITHOUT COST TO EITHER PARTY. A CERTIFIED COPY OF THIS ORDER IS ISSUED IN LIEU OF A FORMAL MANDATE. (kp, ) (Entered: 10/29/2018) |
| 11/01/2018 | 10318 | STATUS REPORT *No. 3* by CLAIMS ADMINISTRATOR. (BROWN, ORRAN) (Entered: 11/01/2018) |
| 11/01/2018 | 10319 | REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT KANSAS CITY CHIEFS FOOTBALL CLUB INC.S MOTION TO DISMISS THE COMPLAINT FILED BY SETTLEMENT CLASS MEMBER ANITA MARTIN (KARP, BRAD) CERTIFICATE OF SERVICE. Modified on 11/2/2018 (kp, ). (Entered: 11/01/2018) |
| 11/02/2018 | 10320 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Joseph Iorio(FLEISHMAN, WENDY) (Entered: 11/02/2018) |
| 11/05/2018 | 10321 | ORDER that UPON CAREFUL AND INDEPENDENT CONSIDERATION OF THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DAVID R. STRAWBRIDGE, IT IS ORDERED that: 1. THE REPORT AND RECOMMENDATION IS APPROVED AND ADOPTED;.... SIGNED BY HONORABLE ANITA B. BRODY ON 11/5/2018.11/5/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/05/2018) |
| 11/05/2018 | 10322 | ORDER that UPON CAREFUL AND INDEPENDENT CONSIDERATION OF THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DAVID R. STRAWBRIDGE IT IS ORDRED that: 1. THE REPORT AND RECOMMENDATION IS APPROVED AND ADOPTED.... SIGNED BY HONORABLE ANITA B. BRODY ON 11/5/2018.11/5/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/05/2018) |
| 11/05/2018 | 10323 | ORDER that UPON CAREFUL AND INDEPENDENT CONSIDERATION OF THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DAVID R. STRAWBRIDGE, IT IS ORDERED that: 1. THE REPORT AND RECOMMENDATION IS APPROVED AND ADOPTED;... SIGNED BY HONORABLE ANITA B. BRODY ON 11/5/2018.11/5/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/05/2018) |

| 11/05/2018 | 10324 | NOTICE by PLAINTIFF(S) *NOTICE OF WITHDRAWAL OF ASSOCIATION* (DEVANON, NICOLE) (Entered: 11/05/2018) |
|---|---|---|
| 11/07/2018 | 10325 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 11/07/2018) |
| 11/08/2018 | 10326 | Minute Entry for proceedings held before MAGISTRATE JUDGE DAVID R. STRAWBRIDGE Attorney Lien Hearing held on 10/24/2018. Court Reporter: ESR. (kp, ) (Entered: 11/09/2018) |
| 11/09/2018 | 10327 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MARKS, STEVEN) (Entered: 11/09/2018) |
| 11/09/2018 | 10328 | Minute Entry for proceedings held before MAGISTRATE JUDGE DAVID R. STRAWBRIDGE Attorney Lien hearing held on 11/9/2018. Court Reporter: ESR. (kp, ) (Entered: 11/13/2018) |
| 11/14/2018 | 10329 | ORDER that THE MATTER RAISED IN THE "OBJECTION TO SPECIAL MASTER'S OCTOBER 11,2018 RULING" (ECF NO. 10315) IS TO BE HANDLED PURSUANT TO THE RULES GOVERNING APPEALS OF CLAIMS DETERMINATIONS, WHICH REQUIRE ALL MATERIALS TO BE SUBMITTED TO THE CLAIMS ADMINISTRATOR RATHER THAN FILING IN THIS DOCKET. THE OBJECTION IS DENIED WITHOUT PREJUDICE.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/14/2018. 11/14/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/14/2018) |
| 11/14/2018 | 10330 | Minute Entry for proceedings held before MAGISTRATE JUDGE THOMAS J. RUETER: Settlement Conference regarding attorney lien dispute (Scoggins) held on 11/14/2018. (ems) (Entered: 11/14/2018) |
| 11/15/2018 | 10331 | REPLY to Response to Motion re 10228 MOTION to Dismiss *the Complaints Filed by Settlement Class Members Tracy Scroggins, Rose Stabler, and A.H.* filed by NATIONAL FOOTBALL LEAGUE FOUNDATION, NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Certificate of Service)(KARP, BRAD) (Entered: 11/15/2018) |
| 11/15/2018 | 10332 | RESPONSE in Support re 10149 MOTION to Remand *and Incorporated Memorandum of Law* filed by PLAINTIFF(S). (SOHN, BRADFORD) (Entered: 11/15/2018) |
| 11/16/2018 | 10333 | NOTICE by PLAINTIFF(S) *OF ATTORNEY'S LIEN* (TURNBULL, SANGA) (Entered: 11/16/2018) |
| 11/16/2018 | 10334 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (TURNBULL, SANGA) (Entered: 11/16/2018) |
| 11/16/2018 | 10335 | NOTICE by PLAINTIFF(S) *OF ATTORNEY'S LIEN* (TURNBULL, SANGA) (Entered: 11/16/2018) |
| 11/16/2018 | 10336 | APPLICATION/PETITION *TO ESTABLISH ATTORNEY'S LIEN* by PLAINTIFF(S). (TURNBULL, SANGA) (Entered: 11/16/2018) |
| 11/16/2018 | 10337 | ORDER that DEFENDANTS' REQUEST FOR STAY OF PAYMENT IS GRANTED. PAYMENT OF THE 17 CLAIM AWARDS WHICH ARE THE SUBJECT OF DEFENDANTS' TWO PENDING APPEALS SHALL BE STAYED UNTIL THE COURT RULES ON THESE APPEALS.-1(footnote). SIGNED BY HONORABLE ANITA B. BRODY ON 11/14/2018. 11/16/2018 ENTERED AND COPIES VIA ECF. (mo, ) (Entered: 11/16/2018) |

| 11/16/2018 | 10338 | CONSENT to Jurisdiction by US Magistrate Judge in SUTTON v. LOCKS LAW FIRM (ems) (Entered: 11/16/2018) |
| 11/16/2018 | 10339 | Minute Entry for proceedings held before MAGISTRATE JUDGE DAVID R. STRAWBRIDGE: Attorney Lien Hearing - Continued held on 11/16/2018. Court Reporter: ESR. (ems) (Entered: 11/16/2018) |
| 11/19/2018 | 10340 | Transcript of Hearing held on 10/24/2018, before Judge DAVID R. STRAWBRIDGE. Court Reporter/Transcriber: ESR / DOMAN TRANSCRIPTION SERVICE. (ems) (Entered: 11/19/2018) |
| 11/20/2018 | 10341 | ORDER that PLAINTIFF ANITA MARTIN'S MOTION FOR LEAVE TO FILE A SURREPLY IN SUPPORT OF HER OPPOSITION TO DEFENDANT KANSAS CITY CHIEFS' MOTION TO DISMISS (ECF NO. 11, 76) IS GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/19/2018. 11/20/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/20/2018) |
| 11/20/2018 | 10342 | CONSENT to Jurisdiction by US Magistrate Judge in BANKS v. POPE MCGLAMRY. (kp, ) (Entered: 11/20/2018) |
| 11/20/2018 | 10343 | CONSENT to Jurisdiction by US Magistrate Judge in EPHRAIM v. SMITH & STALLWORTH. (kp, ) (Entered: 11/20/2018) |
| 11/20/2018 | 10344 | CONSENT to Jurisdiction by US Magistrate Judge in IRVIN v. HAUSFELD LLP. (kp, ) (Entered: 11/20/2018) |
| 11/23/2018 | 10345 | Transcript of Hearing held on 11/9/2018, before Judge DAVID R. STRAWBRIDGE. Court Reporter/Transcriber: ESR / DOMAN TRANSCRIPTION SERVICE. (ems) (Entered: 11/26/2018) |
| 11/26/2018 | 10346 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/26/2018. 11/26/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 7413) (ems) (Entered: 11/26/2018) |
| 11/26/2018 | 10347 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/26/2018. 11/26/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 8428) (ems) (Entered: 11/26/2018) |
| 11/26/2018 | 10348 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/26/2018. 11/26/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 6743) (ems) (Entered: 11/26/2018) |
| 11/26/2018 | 10349 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT |

| | | ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/26/2018. 11/26/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 7427) (ems) (Entered: 11/26/2018) |
|---|---|---|
| 11/29/2018 | 10350 | Transcript of Hearing held on 11/16/2018, before Judge DAVID R. STRAWBRIDGE. Court Reporter/Transcriber: ESR / DOMAN TRANSCRIPTION SERVICE. (ems) (Entered: 11/29/2018) |
| 11/29/2018 | 10351 | CONSENT to Jurisdiction by US Magistrate Judge in SMITH v. MOKARAM LAW FIRM (ems) (Entered: 11/29/2018) |
| 11/29/2018 | 10352 | Memorandum in Opposition *Defendant Kansas City Chiefs Football Club Inc.'s Opposition to Settlement Class Member Anita Martin's Motion to Opt Out of Class Action Settlement Agreement* by KANSAS CITY CHIEFS FOOTBALL CLUB, INC.. (KARP, BRAD) (Entered: 11/29/2018) |
| 12/04/2018 | 10353 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Eddie Kennison, III* (Attachments: # 1 Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 12/04/2018) |
| 12/04/2018 | 10354 | NOTICE of Withdrawal of Appearance by DERRIEL C. MCCORVEY on behalf of PLAINTIFF(S)(MCCORVEY, DERRIEL) (Entered: 12/04/2018) |
| 12/10/2018 | 10355 | ORDER THAT THE HONORABLE LAWRENCE STENGEL (RET.), FORMER CHIEF JUDGE FOR THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, IS APPOINTED SPECIAL INVESTIGATOR, ACCORDING TO THE TERMS OUTLINED ABOVE. SIGNED BY HONORABLE ANITA B. BRODY ON 12/10/2018. 12/10/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO ALL ACTIONS) (ems) (Entered: 12/10/2018) |
| 12/10/2018 | 10356 | ORDER - ON NOVEMBER 16, 2018, THE COURT ENTERED AN ORDER (ECF NO. 10337) GRANTING THE NFL PARTIES' REQUEST FOR STAY OF PAYMENT OF 17 MONETARY AWARDS DURING THE PENDENCY OF TWO APPEALS BY THE NFL PARTIES FROM RULINGS BY THE SPECIAL MASTER.... IT IS ORDERED, THIS 10TH DAY OF DECEMBER, 2018, that SUCH REQUEST FOR STAY OF PAYMENT IS GRANTED. PAYMENT OF THE TWO AWARDS SHALL BE STAYED UNTIL THE COURT RULES ON THESE APPEALS. SIGNED BY HONORABLE ANITA B. BRODY ON 12/10/2018. 12/10/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/10/2018) |
| 12/14/2018 | 10357 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF ATTORNEY'S LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/14/2018. 12/14/2018 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ANAPOL WEISS V. SCOGGINS ATTORNEY'S LIEN DISPUTE DOC NO. 8110 (kp, ) (Entered: 12/14/2018) |

United States District Court Eastern District of Pennsylvania

| | | |
|---|---|---|
| 12/14/2018 | 10358 | REPORT AND RECOMMENDATIONS THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE ATTORNEYS' FEES AND COSTS AS IS SET FORTH IN THE WITHDRAWAL SUBMITTED BY THE PARTIES. THE PARTIES MAY FILE OBJECTIONS TO THIS REPORT AND RECOMMENDATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/14/2018. (Attachments: # 1 Text of Proposed Order, # 2 Notice) 12/17/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 8423) (ems) (Entered: 12/17/2018) |
| 12/14/2018 | 10359 | REPORT AND RECOMMENDATIONS THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE ATTORNEYS' FEES AND COSTS AS IS SET FORTH IN THE WITHDRAWAL SUBMITTED BY THE PARTIES. THE PARTIES MAY FILE OBJECTIONS TO THIS REPORT AND RECOMMENDATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/14/2018. (Attachments: # 1 Text of Proposed Order, # 2 Notice) 12/17/2018 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 8419) (ems) (Entered: 12/17/2018) |
| 12/19/2018 | 10360 | TRANSCRIPT of Hearing held on 11/14/2018 before Judge THOMAS J. RUETER. Court Reporter: ESR / DOMAN TRANSCRIPTION SERVICE. (ems) (jaa, ). (Entered: 12/19/2018) |
| 01/02/2019 | 10361 | NOTICE: ON THURSDAY, 1/10/2019 AT 10:15 A.M., THE COURT IS HOLDING ORAL ARGUMENT REGARDING THE NFL PARTIES' APPEAL OF THE SPECIAL MASTER'S RULING REGARDING THE INTERPRETATION OF THE "GENERALLY CONSISTENT" STANDARD BEFORE HONORABLE ANITA B. BRODY (SEE ATTACHED). THE COURT WILL HEAR ARGUMENT FROM COUNSEL FOR THE NFL PARTIES AND CO-LEAD COUNSEL CHRISTOPHER SEEGER. (ems) (Entered: 01/02/2019) |
| 01/03/2019 | 10362 | MEMORANDUM AND/OR OPINION. SIGNED BY HONORABLE ANITA B. BRODY ON 1/3/2019. 1/3/2019 ENTERED AND COPIES VIA ECF.(mo, ) Modified on 1/3/2019 (mo, ). (Entered: 01/03/2019) |
| 01/03/2019 | 10363 | ORDER OF MEMORANDUM AND/OR OPINION (ECF NO. 10362) that. DEFENDANT KANSAS CITY CHIEFS FOOTBALL CLUB, INC.'S MOTION TO DISMISS THE COMPLAINT FILED BY ANITA MARTIN (ECFNO. 7 IN 14-3381; ECFNO. 70 IN 14-1995; ECF NO. 10282 IN 12-2323) IS GRANTED.. PLAINTIFF ANITA MARTIN'S MOTION TO OPT OUT OF THE CLASS ACTION SETTLEMENT AGREEMENT (ECF NO. 12 IN 14-3381; ECF NO. 77 IN 14-1995) IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/3/2019. 1/3/2019 ENTERED AND COPIES VIA ECF.(mo, ) Modified on 1/3/2019 (mo, ). (Entered: 01/03/2019) |
| 01/04/2019 | 10364 | MOTION for Clarification and for Leave to Participate in the January 10, 2019 Hearing re 10361 Notice of Hearing, filed by PLAINTIFF(S)..Motions referred to DAVID R. STRAWBRIDGE.(MARKS, STEVEN) (Entered: 01/04/2019) |
| 01/07/2019 | 10365 | Joint MOTION for Clarification *and to be Heard* filed by PLAINTIFF(S)..Motions referred to DAVID R. STRAWBRIDGE.(ST. JACQUES, MICHAEL) (Entered: 01/07/2019) |
| 01/07/2019 | 10368 | REPORT AND RECOMMENDATION THAT AN ATTORNEY ASSERTING A LIEN SEEKING ATTORNEYS' FEES FROM A MONETARY AWARD MUST BE ABLE TO DEMONSTRATE NOT ONLY A VALID CFA BUT ALSO THAT THE FEES SOUGHT ARE REASONABLE AS OUTLINED HEREIN.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/7/2019. (Attachments: # 1 |

| | | Notice, # 2 Text of Proposed Order) 1/8/2019 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC NO 7071 , 7064 , AND 7449 )(kp, ) (Entered: 01/08/2019) |
|---|---|---|
| 01/08/2019 | 10366 | ORDER - UPON CONSIDERATION OF THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE DAVID R. STRAWBRIDGE (ECF NO. 10359), AND NO OBJECTION HAVING BEEN DOCKETED, IT IS ORDERED that: 1. THE REPORT AND RECOMMENDATION IS ADOPTED; 2. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED; AND 3. THE CLAIMES ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/7/2019.1/8/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/08/2019) |
| 01/08/2019 | 10367 | ORDER - UPON CONSIDERATION OF THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE DAVID R. STRAWBRIDGE (ECF NO. 10358), AND NO OBJECTION HAVING BEEN DOCKETED, IT IS ORDERED that: 1. THE REPORT AND RECOMMENDATION IS ADOPTED; 2. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED; AND 3. THE CLAIMES ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY HONORABLE ANITA B. BRODY ON 1/7/2019.1/8/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/08/2019) |
| 01/08/2019 | 10369 | MOTION for Reconsideration *for Supplemental Filing as Part of Claimant's Objection* filed by PLAINTIFF(S).**(FILED IN ERROR, INCORRECT PDF, ATTY TO REFILE)**.(FLEISHMAN, WENDY) Modified on 1/8/2019 (tjd). (Entered: 01/08/2019) |
| 01/09/2019 | 10370 | ORDER - THE NFL HAS WITHDRAWN ITS APPEAL RELATING TO SPIDS 100000070, 100004758, 100005741, 100007941, 100009422, 100013190 AND 950000215... ACCORDINGLY, THE HEARING SET FOR THURSDAY, JANUARY 10TH, AT 10:15 AM (ECF NO. 10361) IS CANCELLED, THE APPEAL IS WITHDRAWN, AND THOSE CASES ARE NOW FINAL. THE STAY OF PAYMENT OF THESE SEVEN CLAIM AWARDS (SEE ECF 10337) IS LIFTED..... SIGNED BY HONORABLE ANITA B. BRODY ON 1/9/2019. 1/9/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/09/2019) |
| 01/09/2019 | 10371 | ORDER that THE MOTIONS FOR CLARIFICATION AND LEAVE TO PARTICIPATE (ECF NOS. 10364, 10365) REGARDING THE ORAL ARGUMENT PREVIOUSLY SCHEDULED FOR JANUARY 10, 2019, ARE DENIED AS MOOT, BECAUSE THE NFL PARTIES HAVE WITHDRAWN THEIR APPEAL AND THE ORAL ARGUMENT HAS BEEN CANCELLED. SEE ECF NO. 10370.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/9/2019.1/9/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/09/2019) |
| 01/09/2019 | 10372 | MOTION for Reconsideration *for Supplemental Filing as Part of Claimant's Objection* filed by PLAINTIFF(S)..(FLEISHMAN, WENDY) (Entered: 01/09/2019) |
| 01/10/2019 | 10373 | ORDER that THE COURT'S ORDER ADOPTING THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DAVID R. STRAWBRIDGE (ECF NO. 10366) IS CORRECTED AS FOLLOWS:. THE CAPTION IS MODIFIED TO REFLECT THAT THIS DOCUMENT RELATES TO LOCKS LAW FIRM V. RODNEY BELLINGER, ATTORNEY'S LIEN DISPUTE (ECF NO. 8419). THIS DOCUMENT DOES NOT RELATE TO LOCKS LAW FIRM V. STEVEN HAMILTON, ATTORNEY'S LIEN DISPUTE (ECF NO. 8423). SIGNED |

**-668-**

| | | BY HONORABLE ANITA B. BRODY ON 1/10/2019. 1/10/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/10/2019) |
|---|---|---|
| 01/10/2019 | 10374 | SECOND VERIFIED PETITION OF CO-LEAD CLASS COUNSEL CHRISTOPHER A. SEEGER FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS FEES AND COSTS by PLAINTIFF(S). CERTIFICATE OF SERVICE (Attachments: # 1 Exhibit A)(SEEGER, CHRISTOPHER) Modified on 1/11/2019 (kp, ). (Entered: 01/10/2019) |
| 01/14/2019 | 10375 | MEMORANDUM AND/OR OPINION. SIGNED BY HONORABLE ANITA B. BRODY ON 1/14/2019. 1/14/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/14/2019) |
| 01/14/2019 | 10376 | ORDER of MEMORANDUM AND/OR OPINION (ECF NO. 10375) that CYNTHIA PHILLIPS'S MOTION TO INTERVENE (ECF NO. 62 IN 14-1995) IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/14/2019. 1/14/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/14/2019) |
| 01/14/2019 | 10377 | CONSENT to Jurisdiction by US Magistrate Judge in DEXTER CARTER v. McCORVEY LAW, LLC.. (kp, ) (Entered: 01/15/2019) |
| 01/16/2019 | 10378 | EXPLANATION AND ORDER - ON APRIL 5, 2018, I ISSUED A MEMORANDUM OPINION APPROVING A COMMON FUND TO BE USED TO PAY CLASS COUNSEL FOR SECURING AND IMPLEMENTING THE SETTLEMENT AGREEMENT. ECF NO.9860.-1(footnote)... AND NOW this 15th day of JANUARY, 2019,IT IS ORDERED that THE FUND ADMINISTRATOR FOR THE ATTORNEY'S FEES QUALIFIED SETTLEMENT FUND ("AFQSF") SHALL PAY EACH OF THE FIRMS LISTED BELOW THE AMOUNTS, AS SET FORTH BELOW, FROM THE AFQSF:... IT IS FURTHER ORDERED that EACH OF THE LAW FIRMS LISTED ABOVE SHALL COOPERATE WITH THE FUND ADMINISTRATOR OF THE AFQSF TO EFFECTUATE THE ORDER.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/15/2019. 1/16/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/16/2019) |
| 01/16/2019 | 10379 | CONSENT to Jurisdiction by US Magistrate Judge in COCHRAN v. ATTORNEY DAVID BUYCKLEY, PLLC.. (kp, ) (Entered: 01/16/2019) |
| 01/17/2019 | 10380 | CONSENT to Jurisdiction by US Magistrate Judge in VERRON HAYNES v POPE MCGLAMRY.. (kp, ) (Entered: 01/17/2019) |
| 01/17/2019 | 10381 | CONSENT to Jurisdiction by US Magistrate Judge IN LEELAND MCELROY v POPE MCGLAMRY.. (kp, ) (Entered: 01/17/2019) |
| 01/17/2019 | 10382 | CONSENT to Jurisdiction by US Magistrate Judge IN ZACHARY PILLER v POPE MCGLAMRY.. (kp, ) (Entered: 01/17/2019) |
| 01/18/2019 | 10383 | MEMORANDUM AND/OR OPINION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/18/2019. 1/18/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY'S LIEN DISPUTE DOC NO 8399)(kp, ) (Entered: 01/18/2019) |
| 01/18/2019 | 10384 | ORDER THAT THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/18/2019. 1/18/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY'S LIEN DISPUTE DOC NO 8399)(kp, ) (Entered: 01/18/2019) |

| 01/21/2019 | 10385 | NOTICE by PLAINTIFF(S) *Attorney's Lien* (KARATINOS, THEODORE) (Entered: 01/21/2019) |
| 01/22/2019 | 10386 | FILED IN ERROR, ATTORNEY TO REFILE (OBJECTION to 10368 Report and Recommendations */Objections by the Estate of Kevin Turner to The Report and Recommendation of Magistrate Strawbridge* by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Exhibit B) (DONALDSON, RICHARD) Modified on 1/22/2019 (kp, ). (Entered: 01/22/2019) |
| 01/22/2019 | 10387 | OBJECTION to 10368 Report and Recommendations */Objections by the Estate of Kevin Turner to The Report and Recommendation of Magistrate Strawbridge* by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 B) (DONALDSON, RICHARD) (Entered: 01/22/2019) |
| 01/22/2019 | 10388 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (G. Wunsch)* (KARATINOS, THEODORE) (Entered: 01/22/2019) |
| 01/22/2019 | 10389 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (F. Hartley)* (KARATINOS, THEODORE) (Entered: 01/22/2019) |
| 01/22/2019 | 10390 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (A. Pleasant)* (KARATINOS, THEODORE) (Entered: 01/22/2019) |
| 01/22/2019 | 10391 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (D. Buggs)* (KARATINOS, THEODORE) (Entered: 01/22/2019) |
| 01/22/2019 | 10392 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (D. Woolford)* (KARATINOS, THEODORE) (Entered: 01/22/2019) |
| 01/22/2019 | 10393 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (E. Hayes)* (KARATINOS, THEODORE) (Entered: 01/22/2019) |
| 01/22/2019 | 10394 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (F. Smith)* (KARATINOS, THEODORE) (Entered: 01/22/2019) |
| 01/22/2019 | 10395 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (J Bryant)* (KARATINOS, THEODORE) (Entered: 01/22/2019) |
| 01/22/2019 | 10396 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (L Washington)* (KARATINOS, THEODORE) (Entered: 01/22/2019) |
| 01/22/2019 | 10397 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (M Everett)* (KARATINOS, THEODORE) (Entered: 01/22/2019) |
| 01/22/2019 | 10398 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (T Smith)* (KARATINOS, THEODORE) (Entered: 01/22/2019) |
| 01/22/2019 | 10399 | Objections by PLAINTIFF(S) to *10368 Report and Recommendations/ by Steven A Smith and Chie T. Smith to the Report and recommendation of Magistrate Strawbridge.* (GOLDEN, KEVIN) (Entered: 01/22/2019) |
| 01/22/2019 | 10400 | MOTION to Vacate , MOTION for Reconsideration filed by PLAINTIFF(S)..(ST. JACQUES, MICHAEL) (Entered: 01/23/2019) |
| 01/23/2019 | 10401 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (T. Taylor)* (KARATINOS, THEODORE) (Entered: 01/23/2019) |
| 01/24/2019 | 10402 | ***(Court Only) Civ624 Notice to the Court regarding Report and Recommendation. (kp, ) (Entered: 01/24/2019) |

| 01/24/2019 | 10403 | Objections by PLAINTIFF(S) re 10374 Application/Petition, *ALEXANDER OBJECTORS OPPOSITION TO CO-LEAD CLASS COUNSELS SECOND VERIFIED PETITION FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS FEES AND COSTS.* (LUBEL, LANCE) (Entered: 01/24/2019) |
|---|---|---|
| 01/25/2019 | 10404 | ORDER that RETIRED NFL PLAYER A.G.'S MOTION TO FILE A SUPPLEMENTAL BRIEF IN SUPPORT OF HIS OBJECTION (ECF NO. 10372) IS GRANTED. THE COURT WILL CONSIDER THE SUPPLEMENTAL BRIEF FILED BY A.G. ON THE CLAIMS PORTAL.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/25/2019.1/25/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 01/25/2019) |
| 01/25/2019 | 10405 | CONSENT to Jurisdiction by US Magistrate Judge in SAMPLETON v ZIMMERMAN REED LLP. (kp, ) (Entered: 01/25/2019) |
| 01/28/2019 | 10406 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien and Petition for Attorney's Lien as to Herbert and Bessie Christopher* (Attachments: # 1 Exhibit Petition for Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 01/28/2019) |
| 01/28/2019 | 10407 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 01/28/2019) |
| 01/29/2019 | 10408 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (R. Bailey)* (KARATINOS, THEODORE) (Entered: 01/29/2019) |
| 01/29/2019 | 10409 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien and Petition for Attorney's Lien as to Brandon Lynch and Francesca Lynch* (Attachments: # 1 Exhibit Petition for Attorney's Lien as to Brandon Lynch and Francesca Lynch)(MCGLAMRY, MICHAEL) (Entered: 01/29/2019) |
| 01/29/2019 | 10410 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 01/29/2019) |
| 01/31/2019 | 10411 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien and Petition for Attorney's Lien as to Reynaldo Hill and Janina Hill* (Attachments: # 1 Exhibit Petition for Attorney's Lien as to Reynaldo and Janina Hill)(MCGLAMRY, MICHAEL) (Entered: 01/31/2019) |
| 01/31/2019 | 10412 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 01/31/2019) |
| 02/01/2019 | 10413 | Minute Entry for proceedings held before MAGISTRATE JUDGE TIMOTHY R. RICE Settlement Conference held on 1/31/2019.(kp, ) (Entered: 02/01/2019) |
| 02/01/2019 | 10414 | Minute Entry for proceedings held before MAGISTRATE JUDGE TIMOTHY R. RICE Settlement Conference held on 1/31/2019. (kp, ) (Entered: 02/01/2019) |
| 02/01/2019 | 10415 | Minute Entry for proceedings held before MAGISTRATE JUDGE TIMOTHY R. RICE Pretrial Conference held on 2/1/2019.(kp, ) (Entered: 02/01/2019) |
| 02/04/2019 | 10416 | CO-LEAD CLASS COUNSELS REPLY TO THE ALEXANDER OBJECTORS OPPOSITION TO THE SECOND VERIFIED PETITION FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS FEES AND COSTS by PLAINTIFF(S). CERTIFICATE OF SERVICE. (SEEGER, CHRISTOPHER) Modified on 2/5/2019 (kp, ). (Entered: 02/04/2019) |
| 02/05/2019 | 10417 | RESPONSE in Opposition re 10400 MOTION to Vacate MOTION for Reconsideration filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 02/05/2019) |

| | | |
|---|---|---|
| 02/05/2019 | 10418 | EXPLANATION AND ORDER THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/5/2019. 2/5/2019 ENTERED AND COPIES MAILED AND E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY LIEN DISPUTE DOC NO. 7133)(kp, ) (Entered: 02/05/2019) |
| 02/05/2019 | 10419 | RESPONSE in Opposition re 10400 MOTION to Vacate MOTION for Reconsideration filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 02/05/2019) |
| 02/05/2019 | 10420 | Memorandum in Opposition re 10387 Objection to Report and Recommendations by PLAINTIFF(S). (Attachments: # 1 Exhibit A) (MARKS, STEVEN) (Entered: 02/05/2019) |
| 02/05/2019 | 10421 | Memorandum in Opposition re 10399 Objections by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (MARKS, STEVEN) (Entered: 02/05/2019) |
| 02/06/2019 | 10422 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE ATTORNEYS' FEES AND COSTS AS IS SET FORTH IN THE WITHDRAWAL SUBMITTED BY THE PARTIES. THE PARTIES MAY FILE OBJECTIONS TO THIS REPORT AND RECOMMENDATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/4/2019. (Attachments: # 1 Notice) 2/6/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO POPE MCGLAMRY PC V. EDWARD KING ATTORNEY LIEN DISPUTE 6856 )(kp, ) (Entered: 02/06/2019) |
| 02/14/2019 | 10423 | MEMORANDUM AND/OR OPINION. SIGNED BY HONORABLE ANITA B. BRODY ON 2/14/2019. 2/14/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 02/14/2019) |
| 02/14/2019 | 10424 | ORDER of MEMORANDUM AND/OR OPINION (ECF NO. 10423) that THE NFL PARTIES' MOTION TO DISMISS (ECF NOS. 10227, 10228 IN 12-2323; ECF NOS. 10, 11 IN 18-464; ECF NOS. 15, 16 IN 16-2058) IS GRANTED IN PART AND DENIED IN PART AS FOLLOWS:.... SIGNED BY HONORABLE ANITA B. BRODY ON 2/14/2019. 2/14/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 02/14/2019) |
| 02/14/2019 | 10425 | FILED IN ERROR, ATTORNEY REFILED AT 10426 (MOTION to Strike 10420 Memorandum *Estate of Kevin Turner's Partial Motion to Strike Response of Podhurst Orseck, P.A.* filed by PLAINTIFF(S).Certificate of Service. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order)(DONALDSON, RICHARD). Modified on 2/15/2019 (kp, ). (Entered: 02/14/2019) |
| 02/14/2019 | 10426 | MOTION to Strike 10420 Memorandum *Estate of Kevin Turner's Partial Motion to Strike Response of Podhurst Orseck, P.A.* filed by PLAINTIFF(S).Brief, Certificate of Service. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order, # 5 Brief)(DONALDSON, RICHARD) (Entered: 02/14/2019) |
| 02/14/2019 | 10427 | RESPONSE TO OBJECTIONS TO X1LAW, P.A.S MOTION REQUESTING THAT THE COURT RECONSIDER ITS ORDER (ECF NO. 10370 ) filed by PLAINTIFF(S). (ST. JACQUES, MICHAEL) Modified on 2/19/2019 (kp, ). (Entered: 02/15/2019) |

| 02/15/2019 | 10428 | NOTICE OF APPEAL as to 10378 Order, by PLAINTIFF(S). Copies to Judge, Clerk USCA, Appeals Clerk. (LUBEL, LANCE) Modified on 2/19/2019 (kp, ). Modified on 2/28/2019 (kp, ). (Entered: 02/15/2019) |
|---|---|---|
| 02/15/2019 | 10429 | STATUS REPORT *Claims Administrator Status Report No. 4* by CLAIMS ADMINISTRATOR. (BROWN, ORRAN) (Entered: 02/15/2019) |
| 02/21/2019 | 10430 | *Notice of Attorney's Lien and Petition to Establish Attorney's Lien* by PLAINTIFF(S) (TURNBULL, SANGA) Modified on 2/21/2019 (kp, ). (Entered: 02/21/2019) |
| 02/21/2019 | 10431 | MOTION to Withdraw as Attorney *for John Williams and Barbara Butts Williams* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 02/21/2019) |
| 02/21/2019 | | USCA Appeal Fees received $ 505 receipt number 192774 re 10428 Notice of Appeal filed by PLAINTIFF(S) (kp, ) (Entered: 02/22/2019) |
| 02/22/2019 | 10432 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (Alstott)* (KARATINOS, THEODORE) (Entered: 02/22/2019) |
| 02/22/2019 | 10433 | Minute Entry for proceedings held before MAGISTRATE JUDGE DAVID R. STRAWBRIDGE Attorney Lien Hearing held on 2/21/2019. Court Reporter: ESR.(kp, ) (Entered: 02/22/2019) |
| 02/24/2019 | 10434 | MOTION for Court Intervention to Stop Multiple Audits filed by PLAINTIFF(S).Memorandum. (Attachments: # 1 Exhibit Chart, # 2 Exhibit Notice Deficiency, # 3 Exhibit Notice Preliminary Review, # 4 Exhibit Portal Page Printout, # 5 Exhibit Notice Audit, # 6 Exhibit Notice Concluded Audit, # 7 Exhibit 2d Notice Preliminary Review, # 8 Exhibit Notice Denial Monetary Award, # 9 Exhibit Claimant Appeal, # 10 Exhibit NFL Response to Appeal, # 11 Exhibit 2d Notice Audit, # 12 Exhibit Audit Rules Cited, # 13 Exhibit Claims Administrator Email)(ST. JACQUES, MICHAEL) (Attachment 6 replaced on 2/26/2019 per Chambers) (tjd, ). (Attachment 9 replaced on 2/26/2019 per Chambers) (tjd). Modified on 2/26/2019 (tjd). (Entered: 02/24/2019) |
| 02/25/2019 | 10435 | ***(Court Only) Civ624 Notice to the Court regarding Report and Recommendation. (kp, ) (Entered: 02/25/2019) |
| 02/25/2019 | 10436 | MOTION to Withdraw as Attorney *for James Arnold* filed by PLAINTIFF(S).. (GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10437 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10438 | MOTION to Withdraw as Attorney *for Leon Bright, Jr. and Tammy Bright* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10439 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10440 | MOTION to Withdraw as Attorney *for Albert Dixon and Charlene Frost-Dixon* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10441 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10442 | MOTION to Withdraw as Attorney *for Thomas Hendricks* filed by PLAINTIFF(S).. (GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10443 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |

| 02/25/2019 | 10444 | MOTION to Withdraw as Attorney *for Elbert "Ickey" Woods* filed by PLAINTIFF(S).. (GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10445 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10446 | MOTION to Withdraw as Attorney *for Robert Young and Latricia Nicole Evans-Young* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10447 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10448 | MOTION to Withdraw as Attorney *for Earl Edwards and Janice Edwards* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10449 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10450 | MOTION to Withdraw as Attorney *for Lemuel Stinson* filed by PLAINTIFF(S).. (GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10451 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10452 | MOTION to Withdraw as Attorney *for Ron Stone and Roxanne Stone* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/25/2019 | 10453 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 02/25/2019) |
| 02/26/2019 | 10454 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |
| 02/26/2019 | 10455 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |
| 02/26/2019 | 10456 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |
| 02/26/2019 | 10457 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |
| 02/26/2019 | 10458 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |
| 02/26/2019 | 10459 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |
| 02/26/2019 | 10460 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |
| 02/26/2019 | 10461 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |
| 02/26/2019 | 10462 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |
| 02/26/2019 | 10463 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |

| | | |
|---|---|---|
| 02/26/2019 | 10464 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |
| 02/26/2019 | 10465 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |
| 02/26/2019 | 10466 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |
| 02/26/2019 | 10467 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |
| 02/26/2019 | 10468 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |
| 02/26/2019 | 10469 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(FLEISHMAN, WENDY) (Entered: 02/26/2019) |
| 02/27/2019 | 10470 | BAP Status Report - 1st Quarter 2019 filed by BAP Administrator. (kp, ) (Entered: 02/28/2019) |
| 02/27/2019 | 10471 | NOTICE of Docketing Record on Appeal from USCA re 10428 Notice of Appeal filed by PLAINTIFF(S). USCA Case Number 19-1385. (kp, ) (Entered: 02/28/2019) |
| 02/28/2019 | 10472 | RESPONSE in Opposition re 10426 MOTION to Strike 10420 Memorandum *Estate of Kevin Turner's Partial Motion to Strike Response of Podhurst Orseck, P.A. Podhurst Orseck, P.A.'s Response in Opposition to the Estate of Kevin Turner's Partial Motion to Strike* filed by PLAINTIFF(S). (MARKS, STEVEN) (Entered: 02/28/2019) |
| 03/01/2019 | 10473 | Minute Entry for proceedings held before MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ATTORNEY LIEN HEARING held on 2/28/2019. Court Reporter: ESR. (kp, ) (Entered: 03/01/2019) |
| 03/04/2019 | 10474 | NOTICE of Attorney Lien as to *Thomas Wickert* by PLAINTIFF(S) (NOLEN, RUDY) Modified on 3/5/2019 (kp, ). (Entered: 03/04/2019) |
| 03/05/2019 | 10475 | NOTICE of Hearing: SETTLEMENT CONFERENCE SET FOR 4/15/2019 AT 9:30 A.M. IN JUDGE'S CHAMBERS (ROOM 3029) BEFORE MAGISTRATE JUDGE TIMOTHY R. RICE.(cms ) Modified on 3/5/2019 (lvj, ). (FILED IN ERROR BY CHAMBERS) (Entered: 03/05/2019) |
| 03/05/2019 | 10476 | NOTICE of Hearing relates to McGlamry v Haynes Doc. No. 7257: SETTLEMENT CONFERENCE SET FOR 4/15/2019 AT 9:30 A.M. IN JUDGE'S CHAMBERS (ROOM 3029) BEFORE MAGISTRATE JUDGE TIMOTHY R. RICE.(cms ) (Entered: 03/05/2019) |
| 03/05/2019 | 10477 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (C. Curry)* (KARATINOS, THEODORE) (Entered: 03/05/2019) |
| 03/06/2019 | 10478 | ORDER that THE ESTATE OF KEVIN TURNER'S PARTIAL MOTION TO STRIKE RESPONSE OF PODHURST ORSECK, P.A. (ECF NO. 10426) IS GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 3/6/2019.3/6/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/06/2019) |
| 03/06/2019 | 10479 | ORDER that AFTER CAREFUL AND INDEPENDENT CONSIDERATION OF THE RECORD, THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DAVID R. STRAWBRIDGE, THE OBJECTIONS BY THE ESTATE OF KEVIN TURNER, THE OBJECTIONS BY STEVEN A. SMITH AND CHIE T. SMITH, AND THE RESPONSES OF PODHURST ORSECK, P.A. TO THE OBJECTIONS, THE REPORT AND RECOMMENDATION IS APPROVED AND |

|  |  | ADOPTED. ACCORDINGLY... THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY HONORABLE ANITA B. BRODY ON 3/6/2019.3/6/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/06/2019) |
|---|---|---|
| 03/07/2019 | 10480 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Ray Bentley* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 03/07/2019) |
| 03/07/2019 | 10481 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Marcus Tubbs* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 03/07/2019) |
| 03/07/2019 | 10482 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Gerald Willhite* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 03/07/2019) |
| 03/07/2019 | 10483 | CONSENT to Jurisdiction by US Magistrate Judge in MARK SEAY v. LOCKS LAW FIRM. (kp, ) (Entered: 03/07/2019) |
| 03/07/2019 | 10484 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (G. Favors)* (KARATINOS, THEODORE) (Entered: 03/07/2019) |
| 03/07/2019 | 10485 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (M. Alstott)* (KARATINOS, THEODORE) (Entered: 03/07/2019) |
| 03/08/2019 | 10486 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (NUR-VACCARO, FIROUZEH) (Entered: 03/08/2019) |
| 03/08/2019 | 10487 | CONSENT to Jurisdiction by US Magistrate Judge in ERIC DOWNING v. Robins Cloud LLP.. (kp, ) (Entered: 03/11/2019) |
| 03/11/2019 | 10488 | RESPONSE to Motion re 10434 MOTION for Court Intervention to Stop Multiple Audits filed by CLAIMS ADMINISTRATOR. (BROWN, ORRAN) (Entered: 03/11/2019) |
| 03/11/2019 | 10489 | NOTICE by PLAINTIFF(S) *Attorney's Lien (Roscoe Parrish)* (SHENAQ, AMIR) (Entered: 03/11/2019) |
| 03/11/2019 | 10490 | NOTICE by PLAINTIFF(S) *Attorney's Lien (Jayice Pearson)* (SHENAQ, AMIR) (Entered: 03/11/2019) |
| 03/11/2019 | 10491 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/11/2019. 3/12/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY'S LIEN DISPUTE DOC NO. 7872)(kp, ) (Entered: 03/12/2019) |
| 03/12/2019 | 10492 | Minute Entry for proceedings held before MAGISTRATE JUDGE TIMOTHY R. RICE Settlement Conference held on 3/11/2019.(kp, ) (Entered: 03/12/2019) |
| 03/12/2019 | 10493 | Minute Entry for proceedings held before MAGISTRATE JUDGE TIMOTHY R. RICE Settlement Conference held on 3/11/2019.(kp, ) (Entered: 03/12/2019) |
| 03/12/2019 | 10494 | Minute Entry for proceedings held before MAGISTRATE JUDGE TIMOTHY R. RICE Settlement Conference held on 3/12/2019.(kp, ) (Entered: 03/12/2019) |

| 03/12/2019 | 10495 | Minute Entry for proceedings held before MAGISTRATE JUDGE TIMOTHY R. RICE Settlement Conference held on 3/12/2019.(kp, ) (Entered: 03/12/2019) |
| 03/13/2019 | 10496 | STIPULATION and [Proposed] Order by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S). (Attachments: # 1 Exhibit 1, # 2 Certificate of Service)(KARP, BRAD) (Entered: 03/13/2019) |
| 03/14/2019 | 10497 | ORDER - UPON CONSIDERATION OF THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE DAVID R. STRAWBRIDGE (ECF NO. 10422), AND NO OBJECTION HAVING BEEN DOCKETED, IT IS ORDERED that 1. THE REPORT AND RECOMMENDATION IS ADOPTED. 2. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED; and 3. THE CLAIMS ADMINISTRATOR IS ORDERED TO.... SIGNED BY HONORABLE ANITA B. BRODY ON 3/14/2019.3/14/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/14/2019) |
| 03/15/2019 | 10498 | NOTICE of Withdrawal of Appearance by TERRIANNE A. BENEDETTO on behalf of PLAINTIFF(S)(BENEDETTE, TERRIANNE) (Entered: 03/15/2019) |
| 03/15/2019 | 10499 | Minute Entry for proceedings held before MAGISTRATE JUDGE TIMOTHY R. RICE Pretrial Conference held on 3/14/2019.(kp, ) (Entered: 03/15/2019) |
| 03/15/2019 | 10500 | Minute Entry for proceedings held before MAGISTRATE JUDGE TIMOTHY R. RICE Pretrial Conference held on 3/14/2019. (kp, ) (Entered: 03/15/2019) |
| 03/18/2019 | 10501 | STIPULATION AND ORDER - IT IS STIPULATED AND AGREED BY PARTIES that THE REVOCATION REQUEST SUBMITTED BY WILLIAM SIMPSON IS ACCEPTED, SUBJECT TO COURT APPROVAL, BECAUSE HE SUBMITTED IT BEFORE THIS COURT RULED ON THRESHOLD MOTION PRACTICE IN THE OPT OUT LITIGATION. IT IS SO STIPULATED AND AGREED. IT IS SO ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR., that THE REVOCATION REQUEST SUBMITTED BY WILLIAM SIMPSON IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING WILLIAM SIMPSON. SIGNED BY HONORABLE ANITA B. BRODY ON 3/18/2019. 3/18/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/18/2019) |
| 03/18/2019 | 10502 | NOTICE:THE COURT WILL HOLD A CONFERENCE BETWEEN THE PARTY WHO FILED THE SECOND VERIFIED PETITION OF CO-LEAD CLASS COUNSEL FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEY'S FEES AND COSTS (ECF NO. 10374) AND THE OBJECTOR TO THE PETITION ON TUESDAY, APRIL 16, 2019 AT 10:30 A.AM. IN CHAMBERS.SIGNED BY HONORABLE ANITA B. BRODY ON 3/18/2019.3/18/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/18/2019) |
| 03/19/2019 | 10503 | MOTION for Leave to File Amended Response by the Claims Administrator to Motion by X1Law, PA, to Stop Audit Investigations of its Claims filed by CLAIMS ADMINISTRATOR.Certificate of Service. (Attachments: # 1 Exhibit 1, # 2 Text of Proposed Order 2)(BROWN, ORRAN) (Entered: 03/19/2019) |
| 03/20/2019 | 10504 | MOTION for Extension of Time to File Response/Reply as to 10488 Response to Motion filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(ST. JACQUES, MICHAEL) (Entered: 03/20/2019) |
| 03/21/2019 | 10505 | ORDER - UPON CONSIDERATION OF THE MOTION BY THE CLAIMS ADMINISTRATOR FOR LEAVE TO AMEND ITS RESPONSE BY THE CLAIMS ADMINISTRATOR TO MOTION BY X1LAW, PA, TO STOP AUDIT |

-677-

| | | INVESTIGATIONS OF ITS CLAIMS, IT IS HEREBY ORDERED that THE MOTION IS GRANTED.... SIGNED BY HONORABLE ANITA B. BRODY ON 3/21/2019.3/29/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/21/2019) |
|---|---|---|
| 03/21/2019 | 10506 | AMENDED RESPONSE to Motion re 10434 MOTION for Court Intervention to Stop Multiple Audits . (mo, ) (Entered: 03/21/2019) |
| 03/21/2019 | 10507 | Transcript of Proceedings held on 2/21/2019, before Judge Strawbridge. Court Reporter/Transcriber ESR/DOMAN TRANSCRIPTION SERVICE.. (kp, ) (Entered: 03/21/2019) |
| 03/21/2019 | 10508 | Transcript of Proceedings held on 2/28/2019, before Judge Strawbridge. Court Reporter/Transcriber ESR/DOMAN TRANSCRIPTION SERVICE.. (kp, ) (Entered: 03/21/2019) |
| 03/21/2019 | 10509 | REPLY to Response to Motion re 10434 MOTION for Court Intervention to Stop Multiple Audits filed by PLAINTIFF(S). (ST. JACQUES, MICHAEL) (Entered: 03/21/2019) |
| 03/22/2019 | 10510 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/22/2019. 3/22/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY'S LIEN DISPUTE DOC NO. 7038). (kp) (Entered: 03/22/2019) |
| 03/22/2019 | 10511 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/22/2019. 3/22/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY'S LIEN DISPUTE DOC NO. 10287). (kp, ) (Entered: 03/22/2019) |
| 03/25/2019 | 10512 | CONSENT to Jurisdiction by US Magistrate Judge in JEFF HERROD v. PODHURST ORSECK, P.A. (kp, ) (Entered: 03/25/2019) |
| 03/25/2019 | 10513 | ORDER that THE MOTION FOR EXTENSION OF TIME TO REPLY TO BROWNGREER'S REPSONSE (ECF NO. 10504) IS GRANTED. MOVANTS MAY AMEND THEIR REPLY (ECF NO. 10504) ON OR BEFORE APRIL 1, 2019.. SIGNED BY HONORABLE ANITA B. BRODY ON 3/25/2019.3/25/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 03/25/2019) |
| 03/28/2019 | 10514 | MEMORANDUM AND/OR OPINION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/28/2019. 3/28/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY LIEN DISPUTE DOC NO. 6522)(kp, ) (Entered: 03/28/2019) |
| 03/28/2019 | 10515 | ORDER THAT THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE MEMORANDUM OPINION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/28/2019. 3/28/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY LIEN DISPUTE DOC NO. 6522)(kp, ) (Entered: 03/28/2019) |

**-678-**

| 04/01/2019 | 10516 | AMENDED REPLY TO CLAIMS ADMINISTRATORS RESPONSE TO RETIRED NFL PLAYERS MOTION TO STOP MULTIPLE AUDITS OF SETTLEMENT CLASS MEMBERS THAT VIOLATE THE SETTLEMENT AGREEMENT filed by PLAINTIFF(S). (ST. JACQUES, MICHAEL) Modified on 4/3/2019 (kp, ). (Entered: 04/01/2019) |
|---|---|---|
| 04/02/2019 | 10517 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/2/2019. 4/2/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY LIEN DISPUTE DOC NO 7257)(kp, ) (Entered: 04/02/2019) |
| 04/02/2019 | 10518 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/2/2019. 4/2/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY LIEN DISPUTE DOC NO 8427)(kp, ) (Entered: 04/02/2019) |
| 04/03/2019 | 10519 | PLAINTIFFS' MOTION TO FILE UNDER SEAL PLAINTIFF'S MOTION FOR SETTLEMENT APPROVAL AND MEMORANDUM IN SUPPORT filed by PLAINTIFF(S).(kp, ) (FILED UNDER SEAL, PER CHAMBERS) Modified on 4/3/2019 (kp, ). (Entered: 04/03/2019) |
| 04/03/2019 | 10520 | ORDER THAT PLAINTIFF'S 10519 MOTION TO FILE UNDER SEAL THE MOTION FOR SETTLEMENT APPROVAL IS GRANTED. IT IS FURTHER ORDERED THE CLERK ACCEPT THE MOTION FOR SETTLEMENT APPROVAL AS FILED UNDER SEAL.. SIGNED BY HONORABLE ANITA B. BRODY ON 4/3/2019.4/3/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO CIVIL ACTION NO. 13-2325)(kp, ) (FILED UNDER SEAL, PER CHAMBERS) Modified on 4/3/2019 (kp, ). (Entered: 04/03/2019) |
| 04/03/2019 | 10521 | PLAINTIFF'S MOTION FOR SETTLEMENT APPROVAL AND MEMORANDUM IN SUPPORT filed by PLAINTIFF(S).(FILED UNDER SEAL)(kp, ) (kp, ). (Entered: 04/03/2019) |
| 04/04/2019 | 10522 | NOTICE OF APPEAL as to 10479 Order on Report and Recommendations,, by PAUL RAYMOND TURNER, PERSONAL REPRESENTATIVE OF THE ESTATE OF KEVIN TURNER. Filing fee $ 505, receipt number 0313-13457860. IFP Notice of Appeal to the USC of Appeals for the Third Circuit of ECF Doc. No. 10479 and ECF Doc. No. 10368 Copies to Judge, Clerk USCA, Appeals Clerk. (Attachments: # 1 Exhibit A, # 2 Errata B)(DONALDSON, RICHARD) Modified on 4/8/2019 (ems). Modified on 4/17/2019 (kp, ). (Entered: 04/04/2019) |
| 04/05/2019 | 10523 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE ATTORNEYS' FEES AND COSTS AS IS SET FORTH IN THE WITHDRAWAL SUBMITTED BY THE PARTIES. THE PARTIES MAY FILE OBJECTIONS TO THIS REPORT AND RECOMMENDATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/4/2019. (Attachments: # 1 |

| | | |
|---|---|---|
| | | Notice) 4/5/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY LIEN DISPUTE [7445](#) ) (kp, ) (Entered: 04/05/2019) |
| 04/05/2019 | [10524](#) | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/4/2019. 4/5/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY LIEN DISPUTE 7064)(kp, ) (Entered: 04/05/2019) |
| 04/05/2019 | [10525](#) | NOTICE OF CROSS APPEAL as to [10478](#) Order on Motion to Strike, [10479](#) Order on Report and Recommendations,, by PODHURST ORSECK, P.A.. Filing fee $ 505, receipt number 0313-13462555. CERTIFICATE OF SERVICE. (ROSENTHAL, STEPHEN) Modified on 4/8/2019 (ems). Modified on 4/8/2019 (ems). (Entered: 04/05/2019) |
| 04/10/2019 | [10526](#) | CONSENT to Jurisdiction by US Magistrate Judge in REGINALD BERRY v. LOCKS LAW FIRM (kp, ) (Entered: 04/10/2019) |
| 04/11/2019 | [10527](#) | ORDER - IN AID OF IMPLEMENTATION OF THE SETTLEMENT AGREEMENT: RULES GOVERNING QUALIFIED MAF PHYSICIANS:... TO IMPLEMENT THE COURT'S ORDER OFJANUARY 9,2019 (ECF NO. 10370) REGARDING THE DIAGNOSIS BY QUALIFIED MAF PHYSICIANS OF LEVEL 1.5 AND LEVEL 2 NEUROCOGNITIVE IMPAIRMENT AND TO FACILITATE THE EFFICENT AND SUCCESSFUL OPERAITON OF THE NETWORK OF QUALIFIED MAF PHYSICIANS THIS 11TH DAY OF APRIL 2019, IT IS ORDERED that THE ATTACHED RULE GOVERNING QUALIFIED MAF PHYSICIANS, DEVELOPED BY THE SPECIAL MASTERS AND THE CLAIMS ADMINISTRATOR, ARE ADOPTED. THESE RULES MAY BE AMENDED FROM TIME TO TIME, WITH THE APPROVAL OF THE SPECIAL MASTERS.. SIGNED BY HONORABLE ANITA B. BRODY ON 4/11/2019. 4/11/2019 ENTERED AND COPIES VIA ECF. (mo, ) (Entered: 04/11/2019) |
| 04/12/2019 | [10528](#) | ORDER PURSUANT TO SETTLEMENT IMPLEMENTATION DETERMINATION - BEFORE THIS COURT IS AN OBJECTION FROM A FINDING BY THE SPECIAL MASTER that THE SPECIAL MASTER IS NOT REQUIRED TO CONSULT WITH A MEMBER OF THE APPEALS ADVISORY PANEL (AAP) AND/OR AN APPEALS ADVISORY PANEL CONSULTANT (AAPC)-1(footnote) WHEN REVIEWING CLAIMS that "TURN ON TECHNICAL, MEDICAL GROUNDS."-2(footnote) THE NFL PARTIES HAVE OBJECTED TO THIS DECISION BY THE SPECIAL MASTER, AND ASK THIS COURT TO REVERSE THE SPECIAL MASTER'S DECISION ON 17 CLAIM APPEALS.-3(footnote)... AND NOW this 12th DAY OF APRIL, 2019, IT IS ORDERED that:. THE NFL PARTIES' OBJECTION IS DENIED. BASED ON A REVIEW OF THE SPECIAL MASTER'S RULING, A REVIEW OF THE OPPOSITIONS TO THE NFL PARTIES, OBJECTION, INCLUDING OPPOSITIONS FILED BY CO-LEAD CLASS COUNSEL AND BY INDIVIDUAL CLASS MEMBERS, I APPROVE AND ADOPT THE CONCLUSIONS IN SPECIAL MASTER PRICHETT'S RULING.. THE CLAIMS FOR THE FOLLOWING SETTLEMENT CLASS MEMBERS ARE REMANDED TO THE CLAIMS ADMINISTRATOR:... SIGNED BY HONORABLE ANITA B. BRODY ON 4/12/2019. 4/12/2019 ENTERED AND COPIES VIA ECF. (mo, ) (Entered: 04/12/2019) |

| 04/12/2019 | 10529 | Discovery Plan by ALL AMERICAN SPORTS CORPORATION, BRG SPORTS HOLDING CORP., BRG SPORTS, INC., BRG SPORTS, LLC, EB SPORTS CORP., NATIONAL FOOTBALL LEAGUE FOUNDATION, NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC, PLAINTIFF(S), RIDDELL SPORTS GROUP, INC., RIDDELL, INC..(KARP, BRAD) (Entered: 04/12/2019) |
|---|---|---|
| 04/15/2019 | 10530 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 04/15/2019) |
| 04/15/2019 | 10531 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiffs Charles Wesley Walls and Christy Walls, Only(FLEISHMAN, WENDY) (Entered: 04/15/2019) |
| 04/15/2019 | 10532 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiffs Patrick Stant and Helene Stant, Only(FLEISHMAN, WENDY) (Entered: 04/15/2019) |
| 04/15/2019 | 10533 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiffs Paul Krause and Pamela Krause, Only(FLEISHMAN, WENDY) (Entered: 04/15/2019) |
| 04/15/2019 | 10534 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiff Roland Allen Patrick, Only(FLEISHMAN, WENDY) (Entered: 04/15/2019) |
| 04/15/2019 | 10535 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiff Ronald Brown, Only(FLEISHMAN, WENDY) (Entered: 04/15/2019) |
| 04/15/2019 | 10536 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiff Joel Steed, Only(FLEISHMAN, WENDY) (Entered: 04/15/2019) |
| 04/15/2019 | 10537 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiff Neal Olkewicz, Only(FLEISHMAN, WENDY) (Entered: 04/15/2019) |
| 04/15/2019 | 10538 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiff Lamont Brightful, Only(FLEISHMAN, WENDY) (Entered: 04/15/2019) |
| 04/15/2019 | 10539 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiffs Jay Tant and Natalie Tant, Only(FLEISHMAN, WENDY) (Entered: 04/15/2019) |
| 04/15/2019 | 10540 | NOTICE of Withdrawal of Appearance by FIROUZEH NUR-VACCARO on behalf of PLAINTIFF(S)(NUR-VACCARO, FIROUZEH) (Entered: 04/15/2019) |
| 04/16/2019 | 10541 | Disclosure Statement Form pursuant to FRCP 7.1 including Riddell Sports Group, Inc., BRG Sports, Inc., BRG Sports Holdings Corp., EB Sports Corp., BRG Sports, LLC with Certificate of Service by ALL AMERICAN SPORTS CORPORATION, BRG SPORTS HOLDING CORP., BRG SPORTS, INC., BRG SPORTS, LLC, EB SPORTS CORP., RIDDELL SPORTS GROUP, INC., RIDDELL, INC..(CEREGHINI, PAUL) (Entered: 04/16/2019) |
| 04/16/2019 | 10542 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/16/2019. 4/16/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ROBINS CLOUD LLP v ERIC. DOWNING ATTORNEY LIEN DISPUTE 10106)(kp, ) (Entered: 04/16/2019) |

| 04/16/2019 | 10543 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/16/2019. 4/16/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO LOCKS LAW FIRM v. REGINALD BERRY ATTORNEY LIEN DISPUTE DOC NO. 8420)(kp, ) (Entered: 04/16/2019) |
| --- | --- | --- |
| 04/16/2019 | 10544 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE ATTORNEYS' FEES AND COSTS AS SET FORTH IN THE WITHDRAWAL SUBMITTED BY THE PARTIES.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/16/2019. (Attachments: # 1 Notice) 4/16/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY DAVID BUCKLEY PLLC v CHRISTOPHER JOHNSON ATTORNEY LIEN DISPUTE DOC NO. 7567)(kp, ) (Entered: 04/16/2019) |
| 04/16/2019 | 10545 | MEMORANDUM AND/OR OPINION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/16/2019. 4/16/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO MCCORVEY LAW LLC V. DEXTER CARTER ATTORNEY LIEN DISPUTE DOC NO. 7213)(kp, ) (Entered: 04/16/2019) |
| 04/16/2019 | 10546 | ORDER THAT THE CLAIMS ADMINISTRATOR SHALL DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE MEMORANDUM OPINION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/16/2019. 4/16/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO MCCORVEY LAW LLC V. DEXTER CARTER ATTORNEY LIEN DISPUTE DOC NO. 7213)(kp, ) (Entered: 04/16/2019) |
| 04/17/2019 | 10547 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiffs Woodrow Campbell and Cheryl Campbell, Only(FLEISHMAN, WENDY) (Entered: 04/17/2019) |
| 04/17/2019 | 10548 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiff Marvin Cobb, Only(FLEISHMAN, WENDY) (Entered: 04/17/2019) |
| 04/17/2019 | 10549 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiffs Richard Eber and Ellen Eber, Only(FLEISHMAN, WENDY) (Entered: 04/17/2019) |
| 04/17/2019 | 10550 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiffs Fred Forsberg and Kaye Forsberg, Only(FLEISHMAN, WENDY) (Entered: 04/17/2019) |
| 04/17/2019 | 10551 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiff William Healy, Jr., Only(FLEISHMAN, WENDY) (Entered: 04/17/2019) |
| 04/17/2019 | 10552 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiffs Jesse Smith and Melanie Smith, Only(FLEISHMAN, WENDY) (Entered: 04/17/2019) |

| 04/17/2019 | 10553 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiffs Jon Arnett and Jane Arnett, Only(FLEISHMAN, WENDY) (Entered: 04/17/2019) |
| 04/17/2019 | 10554 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiffs William Bain and Elizabeth Bain, Only(FLEISHMAN, WENDY) (Entered: 04/17/2019) |
| 04/17/2019 | 10555 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiffs John Jarvis and Cynthia Jarvis, Only(FLEISHMAN, WENDY) (Entered: 04/17/2019) |
| 04/17/2019 | 10556 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiffs Robert Grant and Katherine Grant, Only(FLEISHMAN, WENDY) (Entered: 04/17/2019) |
| 04/17/2019 | 10557 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiffs Larry Craig Morton and Kym Galloway, Only(FLEISHMAN, WENDY) (Entered: 04/17/2019) |
| 04/17/2019 | 10558 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiff Robert Riggins, Only(FLEISHMAN, WENDY) (Entered: 04/17/2019) |
| 04/17/2019 | 10559 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiff William Truax, III, Only(FLEISHMAN, WENDY) Modified on 4/18/2019 (kp, ). (Entered: 04/17/2019) |
| 04/17/2019 | 10560 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiffs Ronald Pritchard and Claudia Pritchard, Only(FLEISHMAN, WENDY) (Entered: 04/17/2019) |
| 04/17/2019 | 10561 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiff Bernard Parrish, Only(FLEISHMAN, WENDY) Modified on 4/18/2019 (kp, ). (Entered: 04/17/2019) |
| 04/18/2019 | 10562 | NOTICE of Voluntary Dismissal by All Plaintiffs As To Claims With Prejudice for Plaintiff Marvin Cobb, Only (Corrected Version)(FLEISHMAN, WENDY) (Entered: 04/18/2019) |
| 04/18/2019 | 10563 | NOTICE of Voluntary Dismissal by All Plaintiffs As To All Claims With Prejudice for Plaintiff Robert Stein, Only(FLEISHMAN, WENDY) (Entered: 04/18/2019) |
| 04/18/2019 | 10572 | NOTICE of Docketing Record on Appeal from USCA re 10522 Notice of Appeal (Credit Card Payment), filed by PLAINTIFF(S). USCA Case Number 19-1760 (kp, ) (Entered: 04/23/2019) |
| 04/18/2019 | 10573 | NOTICE of Docketing Record on Appeal from USCA re 10525 Notice of Cross Appeal (Credit Card Payment), filed by PLAINTIFF(S). USCA Case Number 19-1771 (kp, ) (Entered: 04/23/2019) |
| 04/19/2019 | 10564 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (GIBBS, WILLIAM) (Entered: 04/19/2019) |
| 04/20/2019 | 10565 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (Damon Washington)* (SHENAQ, AMIR) (Entered: 04/20/2019) |
| 04/20/2019 | 10566 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (Donald Brady)* (SHENAQ, AMIR) (Entered: 04/20/2019) |

| 04/20/2019 | 10567 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (Henri Crockett)* (SHENAQ, AMIR) (Entered: 04/20/2019) |
| 04/20/2019 | 10568 | NOTICE by PLAINTIFF(S) *Attorney's Lien (John Tye Hill)* (SHENAQ, AMIR) (Entered: 04/20/2019) |
| 04/20/2019 | 10569 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (Michael Gaines)* (SHENAQ, AMIR) (Entered: 04/20/2019) |
| 04/22/2019 | 10570 | AMENDED ORDER THAT PAGES 18 AND 19 OF THE COURT'S 4/13/2018 MEMORANDUM OPINION IN THE ABOVE-CAPTIONED ATTORNEY LIEN DISPUTE ARE AMENDED TO REFLECT THAT THE MCCORVEY LAW FIRM HAS WAIVED ITS RIGHT TO SEEK REIMBURSEMENT FROM SETTLEMENT CLASS MEMBER CARTER'S AWARD FOR THE $350 IN COSTS INCURRED IN ITS FILING OF THE 7/12/2012 COMPLAINT IN THE EASTERN DISTRICT OF LOUISIANA. THE CLAIMS ADMINISTRATOR IS DIRECTED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE PROVISIONS OF THE SETTLEMENT AGREEMENT AS OUTLINED HEREIN.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/22/2019. 4/23/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY LIEN DISPUTE DOC NO. 7213)(kp, ) (Entered: 04/23/2019) |
| 04/23/2019 | 10571 | MOTION for Reconsideration re 10570 Order,, filed by PLAINTIFF(S).. (MCCORVEY, DERRIEL) (Entered: 04/23/2019) |
| 04/23/2019 | 10574 | ***(Court Only) Civ624 Notice to the Court regarding Report and Recommendation. (kp, ) (Entered: 04/23/2019) |
| 04/24/2019 | 10575 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY Conference held on 4/16/2019.(kp, ) (Entered: 04/24/2019) |
| 04/24/2019 | 10576 | ORDER - PURSUANT TO SETTLEMENT IMPLEMENTATION DETERMINATION - ON APRIL 12, 2019, THIS COURT DENIED AN OBJECTION BY THE NFL PARTIES, AND FOUND that THE SPECIAL MASTER DID NOT ABUSE HIS DISCRETION WHEN HE DECIDED NOT TO CONSULT A MEMBER OF THE APPEALS ADVISORY PANEL (AAP) AND/OR AN APPEALS ADVISORY PANEL CONSULTANT (AAPC) WHEN REVIEWING 17 CLAIMS that... THEREFORE, THIS 24th DAY OF APRIL, 2019, THE CLAIM SUBMITTED BY SPID 100004715 IS REMANDED TO THE SPECIAL MASTERS.. SIGNED BY HONORABLE ANITA B. BRODY ON 4/24/2019. 4/24/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 04/24/2019) |
| 04/25/2019 | 10577 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Ramondo Stallings* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 04/25/2019) |
| 04/25/2019 | 10578 | ORDER THAT THE 10571 MOTION FOR RECONSIDERATION IS DENIED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/24/2019. 4/25/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY LIEN DISPUTE DOC. NO. 7213)(kp, ) (Entered: 04/25/2019) |
| 04/25/2019 | 10579 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE FUNDS WITHHELD FOR ATTORNEYS' FEES AS IS SET FORTH IN THE WITHDRAWAL SUBMITTED BY PARTIES.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/24/2019. (Attachments: # 1 Notice) 4/25/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. |

| | | |
|---|---|---|
| | | (APPLIES TO ATTORNEY LIEN DISPUTE DOC.NO. 7081)(kp, ) Modified on 6/7/2019 (kp, ). (Entered: 04/25/2019) |
| 04/25/2019 | 10580 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE FUNDS WITHHELD FOR ATTORNEYS' FEES AS IS SET FORTH IN THE WITHDRAWAL SUBMITTED BY PARTIES.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/24/2019. (Attachments: # 1 Notice) 4/25/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY LIEN DISPUTE DOC.NO. 10153)(kp, ) Modified on 6/7/2019 (kp, ). (Entered: 04/25/2019) |
| 04/25/2019 | 10581 | MOTION to Release the 5% Holdback and Request for Expedited Hearings filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GRESHAM, RONALD) (Entered: 04/25/2019) |
| 04/25/2019 | 10582 | MOTION for Reconsideration *of April 11 Order* filed by PLAINTIFF(S).Memorandum and Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Exhibits 1-2, # 3 Exhibit Exhibit 3, # 4 Exhibit)(LOCKS, GENE) (Entered: 04/25/2019) |
| 04/25/2019 | 10583 | Memorandum in Support re 10582 MOTION for Reconsideration *of April 11 Order* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 04/25/2019) |
| 04/26/2019 | 10584 | NOTICE of Hearing: ON TUESDAY, MAY 7, 2019 AT 10:30 A.M., THE COURT WILL HOLD A HEARING REGARDING THE OBJECTIONS (ECF NO. 10582, ECF NO. 10583) TO THE COURT'S APRIL 11, 2019 ADOPTION OF THE AMENDED RULES GOVERNING QUALIFIED MAF PHYSICIANS (ECF NO. 10527).SIGNED BY THE HONORABLE ANITA B. BRODY ON 4/26/2019.ENTERED AND COPIES VIA ECF 4/26/2019.(mo, ) (Entered: 04/26/2019) |
| 04/26/2019 | 10585 | NOTICE by PLAINTIFF(S) *David Boston (Notice of Attorneys Lien)* (ACOSTA, MICHAEL) (Entered: 04/26/2019) |
| 04/26/2019 | 10586 | NOTICE by PLAINTIFF(S) *Greg Bracelin (Notice of Attorneys Lien)* (ACOSTA, MICHAEL) (Entered: 04/26/2019) |
| 04/26/2019 | 10587 | NOTICE by PLAINTIFF(S) *Tully Banta Cain (Notice of Attorneys Lien)* (ACOSTA, MICHAEL) (Entered: 04/26/2019) |
| 04/26/2019 | 10588 | NOTICE by PLAINTIFF(S) *Na'il Diggs (Notice of Attorneys Lien)* (ACOSTA, MICHAEL) (Entered: 04/26/2019) |
| 04/26/2019 | 10589 | NOTICE by PLAINTIFF(S) *Willie Harper (Notice of Attorneys Lien)* (ACOSTA, MICHAEL) (Entered: 04/26/2019) |
| 04/26/2019 | 10590 | NOTICE by PLAINTIFF(S) *Ketih Kartz (Notice of Attorneys Lien)* (ACOSTA, MICHAEL) (Entered: 04/26/2019) |
| 04/26/2019 | 10591 | NOTICE by PLAINTIFF(S) *Quasim Mitchell (Notice of Attorneys Lien)* (ACOSTA, MICHAEL) (Entered: 04/26/2019) |
| 04/26/2019 | 10592 | NOTICE by PLAINTIFF(S) *Reggie Myles (Notice of Attorneys Lien)* (ACOSTA, MICHAEL) (Entered: 04/26/2019) |
| 04/26/2019 | 10593 | NOTICE by PLAINTIFF(S) *Karl Williams (Notice of Attorneys Lien)* (ACOSTA, MICHAEL) (Entered: 04/26/2019) |
| 04/30/2019 | 10594 | CONSENT to Jurisdiction by US Magistrate Judge in ALLAN CLARK v. HAUSFELD LLP.. (kp, ) (Entered: 04/30/2019) |

| 05/02/2019 | 10595 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (Lee Williams)* (SHENAQ, AMIR) (Entered: 05/02/2019) |
| 05/03/2019 | 10596 | Memorandum in Opposition re 10581 MOTION to Release the 5% Holdback and Request for Expedited Hearings filed by PLAINTIFF(S). (Attachments: # 1 Declaration of Christopher A. Seeger)(SEEGER, CHRISTOPHER) (Entered: 05/03/2019) |
| 05/03/2019 | 10597 | RESPONSE to Motion re 10582 MOTION for Reconsideration *of April 11 Order* filed by CLAIMS ADMINISTRATOR. (Attachments: # 1 Appendix)(BROWN, ORRAN) (Entered: 05/03/2019) |
| 05/06/2019 | 10598 | MOTION to Withdraw as Attorney *for Gary Burley and Barbara Knight* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 05/06/2019) |
| 05/06/2019 | 10599 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Gary Burley and Barbara Knight* (Attachments: # 1 Petition to Establish Attorney's Lien, # 2 Text of Proposed Order) (GUDMUNDSON, BRIAN) (Entered: 05/06/2019) |
| 05/06/2019 | 10600 | ORDER - UPON CONSIDERATION OF THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DAVID R. STRAWBRIDGE (ECF NO. 10544), AND NO OBJECITON HAVING BEEN DOCKETED, IT IS ORDERED that 1. THE REPORT AND RECOMMENDATION IS ADOPTED, 2. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED; AND 3. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHELD FUNDS IN ACCORDANCE WITH THE DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/6/2019.5/6/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/06/2019) |
| 05/06/2019 | 10601 | ORDER - UPON CONSIDERATION OF THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DAVID R. STRAWBRIDE (ECF NO. 10523), AND NO OBJECTION HAVING BEEN DOCKTED, IT ISORDERED that: 1. THE REPORT AND RECOMMENDATION IS ADOPTED; 2. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED; AND 3. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHELD FUNDS IN ACCORDANCE WITH THE DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/6/2019.5/6/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 05/06/2019) |
| 05/06/2019 | 10602 | ORDER THAT THE UNITED STATES MARSHAL SERVICE SHALL UTILIZE SECURITY MEASURES INCLUDING THE USE OF A MAGNETOMETER AT THE ENTRANCE OF COURTROOM 7-B TO MONITOR ACTIVITY IN AND AROUND COURTROOM 7-B FOR THE DURATION OF THE PROCEEDING. CELL PHONES ARE PROHIBITED IN COURTROOM 7-B, COUNSEL OF RECORD ARE EXEMPT, AS ARE COURT STAFF AND U.S. MARSHALS. SPECTATORS MAY NOT BRING ELECTRONIC DEVICES INTO THE COURTROOM. THESE MEASURES WILL NOT APPLY TO MEMBERS OF THE MEDIA, ALL COUNSEL OF RECORD, THEIR STAFF, COURT STAFF AND SECURITY PERSONNEL. THESE MEASURES SHALL BE IMPLEMENTED ON AN AS-NEEDED BASIS AS DETERMINED BY THE US MARSHAL SERVICE AND THE COURT.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/6/2019. 5/6/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS) (kp, ) (Entered: 05/06/2019) |

| 05/07/2019 | [10603](#) | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # [1](#) Exhibit Petition to Establish Attorney's Lien)(STERN, JEFFREY) (Entered: 05/07/2019) |
|---|---|---|
| 05/07/2019 | [10604](#) | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY Hearing held on 5/7/2019. Court Reporter: ESR.(kp, ) (Entered: 05/07/2019) |
| 05/09/2019 | [10605](#) | REPLY to Response to Motion re [10581](#) MOTION to Release the 5% Holdback and Request for Expedited Hearings filed by PLAINTIFF(S). (Attachments: # [1](#) Exhibit NFL Settlement Program Summary Report (as of 5/6/2019))(GRESHAM, RONALD) (Entered: 05/09/2019) |
| 05/10/2019 | [10606](#) | NOTICE OF APPEAL as to [10527](#) Order by PLAINTIFF(S). Fee not paid. Copies to Judge, Clerk USCA, Appeals Clerk. (LUBEL, LANCE) Modified on 5/13/2019 (kp, ). (Entered: 05/10/2019) |
| 05/10/2019 | [10607](#) | Memorandum (supplemental) to Motion for Reconsideration *with certificate of service* by PLAINTIFF(S). (Attachments: # [1](#) Exhibit, # [2](#) Exhibit) (LOCKS, GENE) (Entered: 05/10/2019) |
| 05/13/2019 | [10608](#) | REPORT AND RECOMMENDATION THAT THE COURT AUTHORIZE THE SETTLEMENT CLAIMS ADMINISTRATOR TO DISBURSE THE FUNDS WITHHELD FOR COUNSEL FEE TO GOLDBERG IN ACCORDANCE WITH THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION AS OUTLINED HEREIN.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/13/2019. (Attachments: # [1](#) Text of Proposed Order, # [2](#) Notice) 5/14/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO MOKARAM LAW FIRM V. KAREEM KELLY ATTORNEY LIEN DISPUTE, DOCS 7868, 7880)(kp, ) Modified on 6/7/2019 (kp, ). (Entered: 05/14/2019) |
| 05/13/2019 | [10609](#) | REPORT AND RECOMMENDATION THAT THE COURT ALLOCATE WHATEVER PORTION OF THE 5% HOLDBACK THAT IS LATER RELEASED FOR PAYMENT TO IRPA ATTORNEYS BY THE SAME RATIOS AS WE USED TO APPORTION TO THE CURRENTLY PAYABLE FEE. IT IS ALSO RECOMMENDED THAT THE COURT APPROVE PAYMENT TO GOLDBERG OF THE $5,878.67 IT INCURRED IN COSTS AND TO SMITH OF THE $1,650.46 IT INCURRED IN COSTS. THE BALANCE OF WITHHELD FUNDS WOULD BE PAYABLE TO HAMPTON. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/13/2019. (Attachments: # [1](#) Text of Proposed Order, # [2](#) Notice) 5/14/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO GOLDBERG PERSKY & WHITE PC V. LORENZO HAMPTON ATTORNEY LIEN DISPUTE DOC NO. 7775 and SMITH & STALLWORTH PA V. LORENZO HAMPTON ATTORNEY LIEN DISPUTE DOC NO. 7447)(kp, ) Modified on 6/7/2019 (kp, ). (Entered: 05/14/2019) |
| 05/14/2019 | [10610](#) | CONSENT to Jurisdiction by US Magistrate Judge in REGINALD NELSON v. MCCORVEY LAW LLC (Doc no. 7133). (kp, ) (Entered: 05/14/2019) |
| 05/15/2019 | [10611](#) | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien by Smith and Stallworth (Herman Hunter)* (Attachments: # [1](#) Petition to Establish Attorney's Lien by Smith and Stallworth (Herman Hunter))(TURNBULL, SANGA) (Entered: 05/15/2019) |
| 05/15/2019 | | USCA Appeal Fees received $ 505 receipt number 197389 re [10606](#) Notice of Appeal filed by PLAINTIFF(S). (kp, ) (Entered: 05/15/2019) |
| 05/16/2019 | [10612](#) | ORDER denying [10582](#) MOTION FOR RECONSIDERATION of Revised Rules governing MAF physicians. SIGNED BY HONORABLE ANITA B. BRODY ON |

| | | 05/16/2019.05/16/2019 ENTERED AND COPIES MAILED AND E-MAILED. (BRODY, ANITA) (Entered: 05/16/2019) |
|---|---|---|
| 05/16/2019 | 10613 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 05/16/2019) |
| 05/17/2019 | 10614 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE ATTORNEYS' FEES AND COSTS AS IS SET FORTH IN THE WITHDRAWAL SUBMITTED BY THE PARTIES. THE PARTIES MAY FILE OBJECTIONS TO THIS REPORT AND RECOMMENDATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/17/2019;. (Attachments: # 1 Text of Proposed Order, # 2 Notice) 5/17/2019 ENTERED AND COPIES E-MAILED. (APPLIES TO FERNANDO SMITH DOC. NO. 7971 AND 10460).(tjd) Modified on 6/7/2019 (kp, ). (Entered: 05/17/2019) |
| 05/17/2019 | 10615 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (M. Pruitt)* (KARATINOS, THEODORE) (Entered: 05/17/2019) |
| 05/17/2019 | 10616 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (C. Smith)* (KARATINOS, THEODORE) (Entered: 05/17/2019) |
| 05/20/2019 | 10617 | MANDATE of USCA as to 9559 Notice of Appeal (Credit Card Payment), filed by RD LEGAL FUNDING PARTNERS, LP, RONI DERSOVITZ, RD LEGAL FUNDING, LLC, RD LEGAL FINANCE, LLC, 9755 Notice of Appeal (Credit Card Payment), filed by RD LEGAL FUNDING PARTNERS, LP, RONI DERSOVITZ, RD LEGAL FUNDING, LLC, RD LEGAL FINANCE, LLC, 10027 Notice of Appeal (Credit Card Payment), filed by THRIVEST SPECIALTY FUNDING, LLC, 10141 Notice of Appeal (Credit Card Payment), filed by THRIVEST SPECIALTY FUNDING, LLC THE ORDER OF THE DISTRICT COURT ENTERED 12/8/2017, APPEALED IN CASE NUMBER 18-1040, BE AND THE SAME IS HEREBY AFFIRMED IN PART AND REVERSED IN PART. THE ORDER OF THE DISTRICT COURT ENTERED 5/22/2018, APPEALED IN CASE NUMBER 18-2184, BE AND THE SAME IS HEREBY VACATED AND THE CASE IS REMANDED. THE ORDER OF THE DISTRICT COURT ENTERED 8/29/2018, APPEALED IN CASE NUMBER 18-3005, BE AND THE SAME IS HEREBY VACATED AND THE CASE IS REMANDED. THE APPEALS AT 18-1639, 18-2582, AND 18-1482 ARE DISMISSED. ALL OF THE ABOVE IN ACCORDANCE WITH OPINION OF THIS COURT. (ems) (Entered: 05/20/2019) |
| 05/20/2019 | 10618 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 05/20/2019) |
| 05/21/2019 | 10619 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (P. Thomas)* (KARATINOS, THEODORE) (Entered: 05/21/2019) |
| 05/21/2019 | 10620 | CONSENT to Jurisdiction by US Magistrate Judge in QUINTUS MCDONALD v. ZIMMERMAN REED LLP (Attorney Lien dispute doc no. 9734). (kp, ) Modified on 5/23/2019 (kp, ). (Entered: 05/21/2019) |
| 05/22/2019 | 10621 | Minute Entry for proceedings held before MAGISTRATE JUDGE TIMOTHY R. RICE Settlement Conference held on 5/22/2019.(kp, ) (Entered: 05/23/2019) |
| 05/23/2019 | 10622 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE |

| | | |
|---|---|---|
| | | DAVID R. STRAWBRIDGE ON 5/23/2019. 5/23/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ZIMMERMAN REED LLP v QUINTUS MCDONALD ATTORNEY LIEN DISPUTE DOC NO. 9734)(kp, ) (Entered: 05/23/2019) |
| 05/23/2019 | 10623 | NOTICE of Docketing Record on Appeal from USCA re 10606 Notice of Appeal filed by PLAINTIFF(S). USCA Case Number 19-2085 (dmc, ) (Entered: 05/24/2019) |
| 05/23/2019 | 10631 | TRANSCRIPT of MOTIONS HEARING held on 5/7/2019, before Judge Brody. Court Reporter/Transcriber ESR/ DOMAN TRANSCRIPTION SERVICE. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 6/13/2019. Redacted Transcript Deadline set for 6/24/2019. Release of Transcript Restriction set for 8/21/2019. (kp, ) (Entered: 05/24/2019) |
| 05/24/2019 | 10624 | ORDER THAT THE APPOINTMENTS OF CLASS COUNSEL, CO-LEAD CLASS COUNSEL, AND SUBCLASS COUNSEL, MADE PURSUANT TO RULE 23(g) IN THE FINAL APPROVAL ORDER ARE TERMINATED. ALL COUNSEL APPOINTMENTS IN THE COURT'S CASE MANAGEMENT ORDERS ARE TERMINATED. CHRISTOPHER A. SEEGER IS REAPPOINTED AS CLASS COUNSEL. SIGNED BY HONORABLE ANITA B. BRODY ON 5/24/2019. 5/24/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS)(kp, ) (Entered: 05/24/2019) |
| 05/24/2019 | 10625 | NOTICE by PLAINTIFF(S) *Notice of Attorneys' Lien re Glen Collins* (Attachments: # 1 Exhibit A - Order)(FERRELL, WAYNE) (Entered: 05/24/2019) |
| 05/24/2019 | 10626 | NOTICE by PLAINTIFF(S) *Notice of Attorneys' Lien re Elex D. Price, Sr.* (FERRELL, WAYNE) (Entered: 05/24/2019) |
| 05/24/2019 | 10627 | NOTICE by PLAINTIFF(S) *Notice of Attorneys' Lien re Ollie Smith* (FERRELL, WAYNE) (Entered: 05/24/2019) |
| 05/24/2019 | 10628 | NOTICE by PLAINTIFF(S) *Notice of Attorneys' Lien re John Sanders* (FERRELL, WAYNE) (Entered: 05/24/2019) |
| 05/24/2019 | 10629 | NOTICE by PLAINTIFF(S) *Notice of Attorneys' Lien re Lawrence Pillers* (FERRELL, WAYNE) (Entered: 05/24/2019) |
| 05/24/2019 | 10630 | NOTICE by PLAINTIFF(S) *Notice of Attorneys' Lien re Tyrone Keys* (FERRELL, WAYNE) (Entered: 05/24/2019) |
| 05/24/2019 | 10632 | Notice of Filing of Official Transcript with Certificate of Service re 10631 Transcript - PDF, 5/24/2019 Entered and Copies Emailed. (kp, ) (Entered: 05/24/2019) |
| 05/30/2019 | 10633 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Kevin R. Williams* (GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/30/2019 | 10634 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Louis S. Clark* (GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/30/2019 | 10635 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for William Timothy Anderson* (GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/30/2019 | 10636 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Everson C. Walls* (GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/30/2019 | 10637 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Jerry M. Sherk* (GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |

| 05/30/2019 | 10638 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Shawn Moore* (GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
|---|---|---|
| 05/30/2019 | 10639 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Ralph Ken Johnson* (GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/30/2019 | 10640 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Larry S. Brinson* (GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/30/2019 | 10641 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Samuel D. Ball* (GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/30/2019 | 10642 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Abdul Hakim Ali* (GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/30/2019 | 10643 | MOTION to Withdraw as Attorney *for Ryan Hannam and April Hannam* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/30/2019 | 10644 | MOTION to Withdraw as Attorney *for Eric R. Bailey* filed by PLAINTIFF(S).. (GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/30/2019 | 10645 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Eric Bailey* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/30/2019 | 10646 | MOTION to Withdraw as Attorney *for Bruce Thornton and Janet Thornton* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/30/2019 | 10647 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Bruce Thornton and Janet Thornton* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/30/2019 | 10648 | MOTION to Withdraw as Attorney *for Lydell Mitchell and Jeanette Mitchell* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/30/2019 | 10649 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Lydell Mitchell and Jeanette Mitchell* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/30/2019 | 10650 | MOTION to Withdraw as Attorney *for Walt Sweeney and Nancy Sweeney* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 05/30/2019) |
| 05/31/2019 | 10651 | REPORT OF THE SPECIAL MASTERS by WENDELL E. PRITCHETT, JO-ANN M. VERRIER. (kp, ) (Entered: 06/03/2019) |
| 05/31/2019 | 10652 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 5 by CLAIMS ADMINISTRATOR. (kp, ) (Entered: 06/03/2019) |
| 05/31/2019 | 10653 | BAP ADMINISTRATOR STATUS REPORT- 2ND QUARTER 2019 by BAP ADMINISTRATOR. (kp, ) (Entered: 06/03/2019) |
| 06/04/2019 | 10654 | MOTION for Ruling on and Elimination of 5% Hold-Back on Monetary Awards filed by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION.Motion, Brief, Certificate of Service.(ACHO, JAMES) (Entered: 06/04/2019) |
| 06/04/2019 | 10655 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (L. Brinson)* (KARATINOS, THEODORE) (Entered: 06/04/2019) |

| 06/05/2019 | 10656 | NOTICE by PLAINTIFF(S) *of Attorneys' Lien for Alphonso Taylor* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 06/05/2019) |
|---|---|---|
| 06/06/2019 | 10657 | ORDER THAT THE REPORT AND RECOMMENDATION 10579 IS ADOPTED. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY HONORABLE ANITA B. BRODY ON 6/6/2019. 6/6/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO JOHN D. GIDDENS PA v LILA DUNN ATTORNEY LIEN DISPUTE DOC NO. 7081)(kp, ) (Entered: 06/06/2019) |
| 06/06/2019 | 10658 | ORDER THAT THE REPORT AND RECOMMENDATION 10580 IS ADOPTED. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY HONORABLE ANITA B. BRODY ON 6/6/2019. 6/6/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO POPE MCGLAMRY PC v DONALD DUBOSE ATTORNEY LIEN DISPUTE DOC NO. 10153)(kp, ) (Entered: 06/06/2019) |
| 06/06/2019 | 10659 | ORDER THAT THE REPORT AND RECOMMENDATION 10608 IS ADOPTED. THE FUNDS CURRENTLY WITHHELD FOR COUNSEL FEE, REPRESENTING 17% OF MR. KELLY'S MONETARY AWARD AND THE FUNDS WITHHELD FOR COSTS, ARE APPORTIONED AS OUTLINED HEREIN. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY HONORABLE ANITA B. BRODY ON 6/6/2019. 6/6/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO MOKARAM LAW FIRM v KAREEM KELLY ATTORNEY LIEN DISPUTE DOC NOS 7868, 7880)(kp, ) (Entered: 06/06/2019) |
| 06/06/2019 | 10660 | ORDER THAT THE REPORT AND RECOMMENDATION 10609 IS ADOPTED. THE FUNDS CURRENTLY WITHHELD FOR COUNSEL FEE, REPRESENTING 17% OF MR. HAMPTON'S MONETARY AWARD AND THE FUNDS WITHHELD FOR COSTS ARE APPORTIONED AS OUTLINED HEREIN. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY HONORABLE ANITA B. BRODY ON 6/6/2019. 6/6/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO GOLDBERG PERSKY & WHITE PC v LORENZO HAMPTON ATTORNEY LIEN DISPUTE DOC NO. 7775 AND SMITH & STALLWORTH PA v LORENZO HAMPTON ATTORNEY LIEN DISPUTE DOC NO. 7447)(kp, ) (Entered: 06/06/2019) |
| 06/06/2019 | 10661 | ORDER THAT THE REPORT AND RECOMMENDATION IS ADOPTED. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY HONORABLE ANITA B. BRODY ON 6/6/2019. 6/6/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES |

| | | |
|---|---|---|
| | | TO POPE MCGLAMRY PC v FERNANDO SMITH ATTORNEY LIEN DISPUTE DOC NO. 7971 AND LIEFF CABRASER HEIMANN & BERNSTEIN, LLP v FERNANDO SMITH ATTORNEY LIEN DISPUTE DOC NO. 10460)(kp, ) (Entered: 06/06/2019) |
| 06/06/2019 | 10662 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/6/2019. 6/6/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO HAUSFELD LLP v ALLAN CLARK ATTORNEY LIEN DISPUTE DOC NO. 7414)(kp, ) (Entered: 06/06/2019) |
| 06/06/2019 | 10663 | ORDER THAT THE 10598 MOTION TO WITHDRAW AS ATTORNEY OF GARY BURLEY AND BARBARA KNIGHT IS GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/6/2019.6/6/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO CIVIL ACTION 12-6069)(kp, ) (Entered: 06/06/2019) |
| 06/06/2019 | 10664 | ORDER THAT THE 10440 MOTION TO WITHDRAW AS ATTORNEY IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 6/6/2019. 6/7/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO CIVIL ACTION NO. 13-00051)(kp, ) (Entered: 06/07/2019) |
| 06/06/2019 | 10665 | ORDER THAT THE MOTIONS TO WITHDRAW AS ATTORNEY FOR JOHN WILLIAMS, BARBARA BUTTS-WILLIAMS, JAMES ARNOLD, AND THOMAS HENDRICKS ARE GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 6/6/2019. 6/7/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO CIVIL ACTION NO. 12-2219) (kp, ) (Entered: 06/07/2019) |
| 06/06/2019 | 10666 | ORDER THAT THE MOTIONS TO WITHDRAW AS ATTORNEY OUTLINED HEREIN ARE GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/6/2019.6/7/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO CIVIL ACTION NO. 12-4185)(kp, ) (Entered: 06/07/2019) |
| 06/13/2019 | 10667 | NOTICE OF APPEAL as to 10612 Order on Motion for Reconsideration by PLAINTIFF(S). Filing fee not paid. Copies to Judge, Clerk USCA, Appeals Clerk . (LUBEL, LANCE) Modified on 6/17/2019 (kp, ). (Entered: 06/13/2019) |
| 06/13/2019 | 10668 | ORDER. SIGNED BY HONORABLE ANITA B. BRODY ON 6/13/2019. 6/13/2019 ENTERED AND COPIES MAILED. (APPLIES TO CIVIL ACTION 13-2325) (FILED UNDER SEAL)(kp, ) (kp, ). (Entered: 06/13/2019) |
| 06/13/2019 | 10669 | ORDER REGARDING PETITION FOR MINOR'S COMPROMISE FILED UNDER SEAL. SIGNED BY HONORABLE ANITA B. BRODY ON 6/13/2019. 6/13/2019 ENTERED AND COPIES MAILED. (APPLIES TO CIVIL ACTION 13-4549) (FILED UNDER SEAL)(kp, ) (kp, ). (Entered: 06/13/2019) |
| 06/13/2019 | 10670 | SETTLEMENT IMPLEMENTATION DETERMINATION AND ORDER THAT THE CONCLUSIONS IN SPECIAL MASTER PRITCHETT'S RULING ARE APPROVED AND ADOPTED. THE APPELLANT'S OBJECTION IS DENIED. SIGNED BY HONORABLE ANITA B. BRODY ON 6/13/2019. 6/13/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO SPID NO. 950006982) (kp, ) (Entered: 06/13/2019) |
| 06/13/2019 | 10671 | SETTLEMENT IMPLEMENTATION DETERMINATION AND ORDER THAT THE CONCLUSIONS IN SPECIAL MASTER PRITCHETT'S RULING ARE APPROVED |

| | | AND ADOPTED. THE APPELLANT'S OBJECTION IS DENIED. SIGNED BY HONORABLE ANITA B. BRODY ON 6/13/2019. 6/13/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO SPID NO. 950010239) (kp, ) (Entered: 06/13/2019) |
|---|---|---|
| 06/13/2019 | 10672 | SETTLEMENT IMPLEMENTATION DETERMINATION AND ORDER THAT THE CONCLUSIONS IN SPECIAL MASTER PRITCHETT'S RULING ARE APPROVED AND ADOPTED. THE NFL PARTIES' OBJECTION IS DENIED. THE NFL PARTIES' REQUEST FOR STAY OF PAYMENT IS DENIED AS MOOT. THE CLAIMS ADMINISTRATOR IS DIRECTED TO PAY THE MONETARY AWARD SUBJECT TO THIS OBJECTION.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/13/2019. (Attachments: # 1 THE NFL PARTNER'S APPEAL, # 2 CO-LEAD CLASS COUNSEL'S RESPONSE, # 3 SETTLEMENT CLASS MEMBER) 6/13/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO SPID NO. 100002282)(kp, ) (Entered: 06/13/2019) |
| 06/14/2019 | 10673 | CONSENT to Jurisdiction by US Magistrate Judge in DOUGLAS DONLEY v. BERKOWITZ AND HANNA LLC.(Attorney Lien dispute 1310 and 886). (kp, ) (Entered: 06/14/2019) |
| 06/14/2019 | 10674 | NOTICE by PLAINTIFF(S) of Rashod Kent Attorney Lien (SHENAQ, AMIR) (Entered: 06/14/2019) |
| 06/14/2019 | 10675 | Memorandum in Response re 10654 MOTION for Ruling on and Elimination of 5% Hold-Back on Monetary Awards filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 06/14/2019) |
| 06/20/2019 | 10676 | NOTICE by PLAINTIFF(S) of Attorney's Lien (DOLAN, DANIEL) (Entered: 06/20/2019) |
| 06/20/2019 | 10677 | REPORT AND RECOMMENDATION AS OUTLINED HEREIN. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/20/2019. (Attachments: # 1 Text of Proposed Order, # 2 Notice) 6/21/2019 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 10327) (ems) (Entered: 06/21/2019) |
| 06/21/2019 | 10678 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To George Walker (Estate) (LEWIS, RICHARD) (Entered: 06/21/2019) |
| 06/21/2019 | 10679 | NOTICE by THE LOCKS LAW FIRM of Attorney's Lien - Charles (Charlie) Brown (Attachments: # 1 Retainer Agreement)(LOCKS, GENE) (Entered: 06/21/2019) |
| 06/21/2019 | 10680 | NOTICE by THE LOCKS LAW FIRM of Attorney's Lien - Edward West (Attachments: # 1 Retainer Agreement, # 2 Complaint)(LOCKS, GENE) (Entered: 06/21/2019) |
| 06/21/2019 | 10681 | NOTICE by THE LOCKS LAW FIRM of Attorney's Lien - KERMIT ALEXANDER AND TAMRA ALEXANDER (Attachments: # 1 Retainer Agreement, # 2 Complaint) (LOCKS, GENE) Modified on 6/25/2019 (kp, ). (Entered: 06/21/2019) |
| 06/21/2019 | 10682 | NOTICE by THE LOCKS LAW FIRM to Withdraw Notice of Attorney's Lien - Rick Razzano (LOCKS, GENE) (Entered: 06/21/2019) |
| 06/21/2019 | 10683 | NOTICE by THE LOCKS LAW FIRM of Amended Attorney's Lien - Rick Razzano (Attachments: # 1 Retainer Agreement, # 2 Complaint)(LOCKS, GENE) (Entered: 06/21/2019) |
| 06/21/2019 | 10684 | NOTICE by THE LOCKS LAW FIRM of Attorney's Lien - Kermit Alexander (Attachments: # 1 Retainer Agreement)(LOCKS, GENE) (Entered: 06/21/2019) |

| 06/24/2019 | 10685 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Mike Shumann* (LOCKS, GENE) (Entered: 06/24/2019) |
| 06/24/2019 | 10686 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Nesby Glasgow* (LOCKS, GENE) (Entered: 06/24/2019) |
| 06/24/2019 | 10687 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Kim Jones* (LOCKS, GENE) (Entered: 06/24/2019) |
| 06/24/2019 | 10688 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Jeremiah Trotter* (LOCKS, GENE) (Entered: 06/24/2019) |
| 06/25/2019 | 10689 | CONSENT to Jurisdiction by US Magistrate Judge in Daniel Boston v. John D. Giddens, P.A. (Attorney lien no. 619). (kp, ) (Entered: 06/26/2019) |
| 06/26/2019 | 10690 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Duane Thomas* (LOCKS, GENE) (Entered: 06/26/2019) |
| 06/26/2019 | 10691 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Calvin Williams* (LOCKS, GENE) (Entered: 06/26/2019) |
| 06/26/2019 | 10692 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Tupe Peko* (LOCKS, GENE) (Entered: 06/26/2019) |
| 06/26/2019 | 10693 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Curtis Hughes* (LOCKS, GENE) (Entered: 06/26/2019) |
| 06/26/2019 | 10694 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - A. Scott Galbraith* (LOCKS, GENE) (Entered: 06/26/2019) |
| 06/26/2019 | 10695 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Nathaniel Allen* (LOCKS, GENE) (Entered: 06/26/2019) |
| 06/26/2019 | 10696 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Ray Sydnor* (LOCKS, GENE) (Entered: 06/26/2019) |
| 06/27/2019 | 10697 | NOTICE of Appearance by MELANIE J. GARNER on behalf of PLAINTIFF(S) with Certificate of Service(GARNER, MELANIE) (Entered: 06/27/2019) |
| 06/27/2019 | 10698 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/27/2019. 6/27/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO BERKOWITZ AND HANNA LLC v DOUGLAS M. DONLEY ATTORNEY LIEN DISPUTE DOC NO. 10170)(kp, ) (Entered: 06/27/2019) |
| 06/27/2019 | 10699 | ORDER THAT THE ABOVE-REFERENCED ATTORNEY LIEN DISPUTE IN REFERRED TO HONORABLE TIMOTHY R. RICE FOR SETTLEMENT DISCUSSIONS.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/27/2019. 6/27/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO MCCORVEY LAW LLC v REGINALD NELSON ATTORNEY LIEN DISPUTE DOC NO. 7217)(kp, ) (Entered: 06/27/2019) |
| 06/28/2019 | 10700 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Carl Simpson* (LOCKS, GENE) (Entered: 06/28/2019) |

| 06/28/2019 | 10701 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Dennis Homan* (LOCKS, GENE) (Entered: 06/28/2019) |
|---|---|---|
| 06/28/2019 | 10702 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Bruce Hardy* (LOCKS, GENE) (Entered: 06/28/2019) |
| 06/28/2019 | 10703 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Lynn Boden* (LOCKS, GENE) (Entered: 06/28/2019) |
| 06/28/2019 | 10704 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Billy Ray Smith* (LOCKS, GENE) (Entered: 06/28/2019) |
| 06/28/2019 | 10705 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Cody Risien* (LOCKS, GENE) (Entered: 06/28/2019) |
| 07/01/2019 | 10706 | FILED IN ERROR, ATTORNEY TO REFILE ( MOTION to Withdraw as Attorney filed by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION..(DUGAN, JAMES) Modified on 7/2/2019 (kp, ). (Entered: 07/01/2019) |
| 07/01/2019 | 10707 | NOTICE by PLAINTIFF(S) *Notice of Change of Address* (LANGFITT, DAVID) (Entered: 07/01/2019) |
| 07/01/2019 | 10708 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Jeff Faulkner* (LOCKS, GENE) (Entered: 07/01/2019) |
| 07/01/2019 | 10709 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Kenny Shedd* (LOCKS, GENE) (Entered: 07/01/2019) |
| 07/02/2019 | 10710 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 07/02/2019) |
| 07/02/2019 | 10711 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 07/02/2019) |
| 07/02/2019 | 10712 | ORDER THAT THE CONCLUSIONS IN SPECIAL MASTER PRITCHETT'S RULING ARE APPROVED AND ADOPTED. ACCORDINGLY, CLAIMANT'S OBJECTION IS DENIED. SIGNED BY HONORABLE ANITA B. BRODY ON 7/2/2019. 7/2/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO SPID NO. 260006736)(kp, ) (Entered: 07/02/2019) |
| 07/02/2019 | 10713 | NOTICE of Withdrawal of Appearance by BONNIE ADELE KENDRICK on behalf of PLAINTIFF(S)(KENDRICK, BONNIE) (Entered: 07/02/2019) |
| 07/02/2019 | 10714 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Irving Fryar* (LOCKS, GENE) (Entered: 07/02/2019) |
| 07/02/2019 | 10715 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Eason Ramson* (LOCKS, GENE) (Entered: 07/02/2019) |
| 07/02/2019 | 10716 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Dexter Davis* (LOCKS, GENE) (Entered: 07/02/2019) |
| 07/03/2019 | 10717 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - James Cadile* (LOCKS, GENE) (Entered: 07/03/2019) |
| 07/03/2019 | 10718 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - TJ Slaughter* (LOCKS, GENE) (Entered: 07/03/2019) |

| 07/03/2019 | 10719 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Chad Bratzke* (LOCKS, GENE) (Entered: 07/03/2019) |
| 07/08/2019 | 10720 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Leroy Anthony Hill* (LOCKS, GENE) (Entered: 07/08/2019) |
| 07/08/2019 | 10721 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Victor Hobson* (LOCKS, GENE) (Entered: 07/08/2019) |
| 07/09/2019 | 10722 | Minute Entry for proceedings held before MAGISTRATE JUDGE TIMOTHY R. RICE Settlement Conference held on 7/9/2019.(APPLIES TO MCCORVEY LAW LLC v REGINALD NELSON ATTORNEY LIEN DISPUTE DOC. NO. 7217) (kp, ) (Entered: 07/10/2019) |
| 07/10/2019 | 10723 | STIPULATION *and [Proposed] Order* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Exhibit 1, # 2 Certificate of Service) (KARP, BRAD) (Entered: 07/10/2019) |
| 07/10/2019 | 10724 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Floyd Hodge* (Attachments: # 1 Exhibit)(LUCKASEVIC, JASON) (Entered: 07/10/2019) |
| 07/11/2019 | 10725 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/11/2019. 7/11/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO JOHN D. GIDDENS PA v DAVID BOSTON ATTORNEY LIEN DISPUTE DOC NO. 7639)(kp, ) (Entered: 07/11/2019) |
| 07/12/2019 | 10726 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Ronald Hester* (LOCKS, GENE) (Entered: 07/12/2019) |
| 07/12/2019 | 10727 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Barney Chavous* (LOCKS, GENE) (Entered: 07/12/2019) |
| 07/12/2019 | 10728 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Lee Williams* (LOCKS, GENE) (Entered: 07/12/2019) |
| 07/12/2019 | 10729 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Don Strock* (LOCKS, GENE) (Entered: 07/12/2019) |
| 07/12/2019 | 10730 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Daniel Stubbs* (LOCKS, GENE) (Entered: 07/12/2019) |
| 07/12/2019 | 10731 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Mervyn Fernandez* (LOCKS, GENE) (Entered: 07/12/2019) |
| 07/12/2019 | 10732 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Keith Millard* (LOCKS, GENE) (Entered: 07/12/2019) |
| 07/12/2019 | 10733 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Kerwin Ray Ellis* (LOCKS, GENE) (Entered: 07/12/2019) |
| 07/12/2019 | 10734 | Request for Conference *re Claims Administrator's Rules Governing Assignments* by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 07/12/2019) |
| 07/15/2019 | 10735 | EXPLANATION AND ORDER THAT THE CLAIMS ADMINISTRATOR IS TO SUSPEND ANY ACTION REGARDING DISBURSEMENT OF THE FUNDS |

| | | |
|---|---|---|
| | | WITHHELD FROM MR. BOSTON'S MONETARY AWARD FOR ATTORNEY'S FEES AND COSTS UNTIL FURTHER ORDER OF THE COURT. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/12/2019. 7/15/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO JOHN D. GIDDENS PA v DAVID BOSTON ATTORNEY LIEN DISPUTE DOC NO. 7639)(kp, ) (Entered: 07/15/2019) |
| 07/15/2019 | 10736 | MOTION Request for Conference filed by THRIVEST SPECIALTY FUNDING, LLC..(BUCKLEY, PETER) (Entered: 07/15/2019) |
| 07/15/2019 | 10737 | NOTICE of Withdrawal of Appearance by ERIN C. BURNS on behalf of PLAINTIFF(S)(BURNS, ERIN) (Entered: 07/15/2019) |
| 07/15/2019 | 10738 | ORDER granting 10643 MOTION TO WITHDRAW AS ATTORNEY ; granting 10644 MOTION TO WITHDRAW AS ATTORNEY ; granting 10650 MOTION TO WITHDRAW AS ATTORNEY. SIGNED BY HONORABLE ANITA B. BRODY ON 7/15/2019.7/15/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/15/2019) |
| 07/15/2019 | 10739 | ORDER THAT SUSAN M. LIN IS APPOINTED AS SPECIAL MASTER TO ADVISE IN THE COURT REGARDING PROTECTION OF PARTICIPANT'S RIGHTS IN THE INVESTIGATIVE PROCESS.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/15/2019. 7/15/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS)(kp, ) (Entered: 07/15/2019) |
| 07/16/2019 | 10740 | ORDER granting 10648 MOTION TO WITHDRAW AS ATTORNEY. SIGNED BY HONORABLE ANITA B. BRODY ON 7/15/2019.7/16/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/16/2019) |
| 07/16/2019 | 10741 | ORDER granting 10646 MOTION TO WITHDRAW AS ATTORNEY. SIGNED BY HONORABLE ANITA B. BRODY ON 7/15/2019.7/16/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/16/2019) |
| 07/16/2019 | 10742 | STIPULATION AND ORDER - THIS STIPULATION AND AGREEMENT DATED JULY 10, 2019, IS MADE AND ENTERED INTO BY AND AMONG THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC (THE "NFL PARTIES"), AND CLASS COUNSEL (COLLECTIVELY, THE PARTIES").... AND NOW, THIS 10H DAY OF JULY 2019, IT IS HEREBY STIPULATED AND AGREE BY THE PARTIES that THE REVOCATION REQUEST SUBMITTED BY DWIGHT HICKS IS ACCEPTED, SUBJECT TO COURT APPROVAL, BECAUSE HE SUBMITTED IT BEFORE THIS COURT RULED ON THRESHOLD MOTION PRACTICE IN THE OPT OUT LITIGATION. IT IS SO STIPULATED AND AGREED... IT IS SO ORDERED, BASED ON THE ABOVE STIPULATION AND THE ACCOMPANYING DECLARATION OF ORRAN L. BROWN, SR. that THE REVOCATION REQUEST SUBMITTED BY DWIGHT HICKS IS APPROVED AND THE CLAIMS ADMINISTRATOR IS DIRECTED TO POST A REVISED LIST OF OPT OUTS FORTHWITH EXCLUDING DWIGHT HICKS.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/15/2019. 7/16/2019 ENTERED AND COPIES VIA ECF(mo, ) (Entered: 07/16/2019) |
| 07/16/2019 | 10743 | ORDER - UPON CONSIDERATION OF THE ATTORNEY LIEN IDENTIFIED ABOVE AND THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DAVID R. STRAWBRIDGE (ECF NO. 10677), IT IS ORDERED that: 1. THE REPORT AND RECOMMENDATION IS ADOPTED.... THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY HONORABLE ANITA B. BRODY ON |

| | | |
|---|---|---|
| | | 7/15/2019.7/16/2019 ENTERED AND COPIES VIA ECF.(mo, ) Modified on 7/16/2019 (mo, ). (Entered: 07/16/2019) |
| 07/16/2019 | 10744 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Lionel Washington* (LOCKS, GENE) (Main Document 10744 replaced on 7/19/2019) (kp, ). (Entered: 07/16/2019) |
| 07/16/2019 | 10745 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Stacey Bailey and Kelli Bailey* (LOCKS, GENE) (Main Document 10745 replaced on 7/19/2019) (kp, ). (Entered: 07/16/2019) |
| 07/17/2019 | 10746 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Eric Curry* (Attachments: # 1 Exhibit Petition to Establish Lien)(LUCKASEVIC, JASON) (Entered: 07/17/2019) |
| 07/17/2019 | 10747 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 07/17/2019) |
| 07/17/2019 | 10748 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 07/17/2019) |
| 07/17/2019 | 10749 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 07/17/2019) |
| 07/18/2019 | 10750 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Samari Rolle and Danisha Rolle* (LOCKS, GENE) (Main Document 10750 replaced on 7/19/2019) (kp, ). (Entered: 07/18/2019) |
| 07/18/2019 | 10751 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Lawrence J. Taylor and Lynette Taylor* (LOCKS, GENE) (Main Document 10751 replaced on 7/19/2019) (kp, ). (Entered: 07/18/2019) |
| 07/18/2019 | 10752 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Tito Paul and Tamara Paul* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 07/18/2019) |
| 07/18/2019 | 10753 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/18/2019) |
| 07/18/2019 | 10754 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE ATTORNEYS' FEES AND COSTS AS IS SET FORTH IN THE WITHDRAWAL SUBMITTED BY THE PARTIES. THE REMAINDER OF THE CURRENTLY WITHHELD FUNDS SHOULD BE DISTRIBUTED TO MR. WICKERT. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/17/2019. (Attachments: # 1 Notice) 7/18/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO NOLEN LAW FIRM V. THOMAS WICKERT ATTORNEY LIEN DISPUTE DOC NO. 10474)(kp, ) (Entered: 07/18/2019) |
| 07/18/2019 | 10755 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/17/2019. 7/18/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO MCCORVEY LAW, LLC V. REGINALD NELSON ATTORNEY LIEN DISPUTE DOC NO. 7217)(kp, ) (Entered: 07/18/2019) |

**-698-**

| 07/18/2019 | 10756 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 07/18/2019) |
|---|---|---|
| 07/18/2019 | 10757 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 07/18/2019) |
| 07/18/2019 | 10758 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(STERN, JEFFREY) (Entered: 07/18/2019) |
| 07/23/2019 | 10759 | ORDER THAT THE CLERK OF COURT IS DIRECTED TO ISSUE A NEW CASE NUMBER IN THIS MATTER: 19-MD-2323. THIS DOCKET IS RESERVED EXCLUSIVELY FOR A SUBSET OF MATTERS IN THE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION RELATING TO ALL DEFENDANTS OTHER THAN THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES, LLC AND ANY OTHER ISSUES AS ARE SPECIFIED BY THIS COURT. SIGNED BY HONORABLE ANITA B. BRODY ON 7/23/2019. 7/23/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS)(kp, ) (Entered: 07/23/2019) |
| 07/23/2019 | 10760 | NOTICE THAT ON OR BEFORE 8/22/2019 ANY COUNSEL WHO WISHES TO SERVE AS LEAD COUNSEL OR AS A MEMBER OF THE STEERING COMMITTEE FOR THE CASES INVOLVING THE REMAINING DEFENDANTS MUST FILE AN APPLICATION WITH THE CLERK OF COURT ON THE DOCKET DESCRIBED BELOW. THE APPLICATION MUST INCLUDE A RESUME, A DESCRIPTION OF PRIOR EXPERIENCE IN COMPLEX LITIGATION AND JUDGES BEFORE WHOM COUNSEL HAS APPEARED. THE CLERK OF COURT WILL MAINTAIN A NEW MASTER DOCKET CASE FILED STYLED "IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION III" 2:19-MD-2323-AB. THE DOCKET WILL BE COORDINATED WITH THE DOCKETS RELATING TO FIRST PHASE OF THIS CASE. 7/23/2019 SIGNED BY HONORABLE ANITA B. BRODY. ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL 7/23/2019. (APPLIES TO ALL ACTIONS)(kp, ) (Entered: 07/23/2019) |
| 07/23/2019 | 10761 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Joe Johnson* (LOCKS, GENE) (Entered: 07/23/2019) |
| 07/23/2019 | 10762 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Samari Rolle* (LOCKS, GENE) (Entered: 07/23/2019) |
| 07/23/2019 | 10763 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Brett Miller* (LOCKS, GENE) (Entered: 07/23/2019) |
| 07/23/2019 | 10764 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Ronnie Lee* (LOCKS, GENE) (Entered: 07/23/2019) |
| 07/24/2019 | 10765 | NOTICE by THE LOCKS LAW FIRM *of Petition to Withdraw Notice of Attorney's Lien* (LOCKS, GENE) (Entered: 07/24/2019) |
| 07/24/2019 | 10766 | NOTICE by THE LOCKS LAW FIRM *of Petition to Withdraw Notice of Attorney's Lien - Keith Millard* (LOCKS, GENE) (Entered: 07/24/2019) |
| 07/25/2019 | 10767 | APPLICATION/PETITION *THIRD VERIFIED PETITION OF CLASS COUNSEL CHRISTOPHER A. SEEGER FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS' FEES AND COSTS* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/25/2019) |

| | | |
|---|---|---|
| 07/25/2019 | 10768 | CONSENT to Jurisdiction by US Magistrate Judge in CARL SIMPSON v MCCORVEY LAW, LLC and CARL SIMPSON v LOCKS LAW FIRM. (kp, ) (Entered: 07/25/2019) |
| 07/26/2019 | 10769 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Eric Rhett* (LOCKS, GENE) (Entered: 07/26/2019) |
| 07/26/2019 | 10770 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Priest Holmes* (LOCKS, GENE) (Entered: 07/26/2019) |
| 07/26/2019 | 10771 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Aundray Bruce* (LOCKS, GENE) (Entered: 07/26/2019) |
| 07/29/2019 | 10772 | NOTICE OF APPEAL as to 10712 Order, by PLAINTIFF(S). Filing fee $ 505. Copies to Judge, Clerk USCA, Appeals Clerk and (FLEISHMAN, WENDY) (Entered: 07/29/2019) |
| 07/30/2019 | 10773 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Sidney Thornton* (LOCKS, GENE) (Entered: 07/30/2019) |
| 07/30/2019 | 10774 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Gerard Garrison Hearst* (LOCKS, GENE) (Entered: 07/30/2019) |
| 07/30/2019 | 10775 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Alton Montgomery* (LOCKS, GENE) (Entered: 07/30/2019) |
| 07/30/2019 | 10776 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Mike Fuller* (LOCKS, GENE) (Entered: 07/30/2019) |
| 07/30/2019 | 10777 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (M. Jones)* (KARATINOS, THEODORE) (Entered: 07/30/2019) |
| 07/30/2019 | 10778 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Brent Fullwood* (LOCKS, GENE) (Entered: 07/30/2019) |
| 07/30/2019 | 10779 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Doug Donley* (LOCKS, GENE) (Entered: 07/30/2019) |
| 07/30/2019 | 10780 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Ryan Moats* (LOCKS, GENE) (Entered: 07/30/2019) |
| 07/30/2019 | 10781 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Tyrus McCloud* (LOCKS, GENE) (Entered: 07/30/2019) |
| 07/30/2019 | 10782 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Keith Millard* (LOCKS, GENE) (Entered: 07/30/2019) |
| 07/30/2019 | 10783 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Daniel Stubbs* (LOCKS, GENE) (Entered: 07/30/2019) |
| 08/02/2019 | 10784 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - David Cadigan* (LOCKS, GENE) (Entered: 08/02/2019) |
| 08/06/2019 | 10785 | NOTICE by PLAINTIFF(S) *of Attorney's Lien Against Rory Graves* (LUCKASEVIC, JASON) (Entered: 08/06/2019) |
| 08/06/2019 | 10786 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/06/2019) |
| 08/06/2019 | 10787 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Donald Testerman* (LOCKS, GENE) (Entered: 08/06/2019) |

| 08/06/2019 | 10788 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Dwayne Rudd* (LOCKS, GENE) (Entered: 08/06/2019) |
| 08/06/2019 | 10789 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Rafael Cooper* (LOCKS, GENE) (Entered: 08/06/2019) |
| 08/06/2019 | 10790 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Anthony Furjanic* (LOCKS, GENE) (Entered: 08/06/2019) |
| 08/07/2019 | 10791 | CONSENT to Jurisdiction by US Magistrate Judge RE:JAMES BROWN v. FARRISE LAW FIRM and JAMES BROWN v. WEISBERG & ASSOCIATES.. (kp, ) (Entered: 08/08/2019) |
| 08/08/2019 | 10792 | Objections by PLAINTIFF(S) re 10767 Application/Petition *CERTAIN CLASS MEMBERS OPPOSITION TO CLASS COUNSELS THIRD VERIFIED PETITION FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS FEES AND COSTS.* (LUBEL, LANCE) (Entered: 08/08/2019) |
| 08/09/2019 | 10793 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Mark Chmura* (LOCKS, GENE) (Entered: 08/09/2019) |
| 08/09/2019 | 10794 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Ray Donaldson* (LOCKS, GENE) (Entered: 08/09/2019) |
| 08/09/2019 | 10795 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Brad Badger* (LOCKS, GENE) (Entered: 08/09/2019) |
| 08/12/2019 | 10796 | ORDER - UPON CONSIDERATION OF THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DAVID R. STRAWBRIDGE (ECF NO. 10754), AND NO OBJECTION HAVING BEEN DOCKETED, IT IS ORDERED that: 1. THE REPORT AND RECOMMENDATION IS ADOPTED; 2. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED; AND 3. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/12/2019.8/12/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/12/2019) |
| 08/13/2019 | 10797 | ORDER that X1LAW, P.A.'S MOTION FOR RECONSIDERATION (ECF NO. 10400) IS DENIED AS MOOT.1(footnote). SIGNED BY HONORABLE ANITA B. BRODY ON 8/12/2019.8/13/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/13/2019) |
| 08/13/2019 | 10798 | ORDER that PLAINBTIFFS'-1(footnote) MOTION TO REMAND (ECF NO. 7963 IN 12-2323) IS DENIED AS MOOT, BECAUSE ALL PLAINTIFFS VOLUNTARILY DISMISSED THEIR CLAIMS.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/12/2019.8/13/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/13/2019) |
| 08/13/2019 | 10799 | ORDER that PLAINTIFFS'-1(footnote)MOTION TO REMAND (ECF NO. 7966 IN 12-2323; ECF NO. 45 IN 14-1995; ECF NO. 35 IN 14-3383) IS DENIED AS MOOT, BECAUSE ALL PLAINTIFFS EITHER VOLUNTARILY DISMISSED THEIR CLAIMS OR REVOKED THEIR OPT-OUT STATUS.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/12/2019.8/13/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/13/2019) |
| 08/13/2019 | 10800 | ORDER that THE CLERK OF COURT IS DIRECTED TO MARK 2:14-CV-01995-AB AND 2:14-CV-03383-AB AS CLOSED, BECAUSE ALL PLAINTIFFS EITHER VOLUNTARILY DISMISSED THEIR CLAIMS OR REVOKED THEIR OPT-OUT |

| | | |
|---|---|---|
| | | STATUS.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/12/2019. 8/13/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/13/2019) |
| 08/13/2019 | 10801 | Statement *of the Claims Administrator in Response to the Motion Request for Conference Filed by Thrivest Specialty Funding, LLC* by CLAIMS ADMINISTRATOR. (Attachments: # 1 Exhibit 1)(BROWN, ORRAN) (Entered: 08/13/2019) |
| 08/13/2019 | 10802 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Kamal Ali Salaam-El* (LOCKS, GENE) (Entered: 08/13/2019) |
| 08/13/2019 | 10803 | NOTICE of Docketing Record on Appeal from USCA re 10772 Notice of Appeal filed by PLAINTIFF(S). USCA Case Number 19-2753. (kp, ) (Entered: 08/14/2019) |
| 08/14/2019 | 10804 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Ruffin Hamilton* (LOCKS, GENE) (Entered: 08/14/2019) |
| 08/14/2019 | 10805 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Marla (Scott) Ross* (LOCKS, GENE) (Entered: 08/14/2019) |
| 08/15/2019 | 10806 | Request *for Conference (Response to Claims Administrator's Statement)* by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 08/15/2019) |
| 08/15/2019 | 10807 | ORDER that THRIVEST SPECIALTY FUNDING, LLC'S MOTION REQUESTING A CONFERENCE (ECF NO. 10736) IS DENIED. AFTER READING THE MOTION, THE CLAIMS ADMINISTRATOR'S STATEMENT IN RESPONSE, AND THRIVEST'S RESPONSE IN SUPPORT OF ITS MOTION, THE COURT CONCLUDES that A CONFERENCE IS UNNECESSARY.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/15/2019.8/15/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/15/2019) |
| 08/16/2019 | 10808 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS LESS THE AMOUNT AGREED UPON BY THE PARTIES AS DUE TO FARRISE, IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATIONS. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 8/15/2019. 8/16/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY LIEN DISPUTE FARRISE LAW FIRM PC v JAMES BROWN 7610 AND WEISBERG & ASSOCIATES V JAMES BROWN 7887 ) (kp, ) (Entered: 08/16/2019) |
| 08/19/2019 | 10809 | *REPLY TO OBJECTIONS TO THE THIRD VERIFIED PETITION OF CLASS COUNSEL CHRISTOPHER A. SEEGER FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS FEES AND COSTS* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) Modified on 8/22/2019 (kp, ). (Entered: 08/19/2019) |
| 08/20/2019 | 10810 | ORDER - SETTLEMENT IMPLEMENTATION DETERMINATION - BEFORE THIS COURT IS AN OBJECTION BY NFL PARTIES FROM A FINDING BY THE SPECIAL MASTER that A RETIRED NFL FOOTBALL PLAYER ("CLAIMANT") WAS ENTITLED TO A CLAIM AWARD FOR A QUALIFYING DIAGNOSIS OF ALZHEIMER'S DISEASE, WITH A "DATE OF QUALIFYING DIAGNOSIS" OF OCTOBER 24, 2012. BASED ON A REVIEW OF THE SPECIAL MASTER'S RULING, A REVIEW OF THE NFL PARTIES' OBJECTION AND A REVIEW OF NFL'S OPPOSITIONS TO THE OBJECTION FILED BY THE CLAIMANT'S ATTORNEY AND BY CLASS COUNSEL,-2(footnote) I APPROVE AND ADOPT THE CONCLUSIONS IN SPECIAL MASTER PRITCHETT'S RULING. |

**-702-**

| | | ACCORDINGLY, THE NFL PARTIES' OBJECTION IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/20/2019. (Attachments: # [1] Exhibit, # [2] Exhibit, # [3] Exhibit) 8/20/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/20/2019) |
|---|---|---|
| 08/20/2019 | [10811] | EXPLANATION AND ORDER - THIRTY-TWO SETTLEMENT CLASS MEMBERS (COLLECTIVELY, "THE MOVANTS") HAVE FILED A MOTION SEEKING THIS COURT'S INTERVENTION TO STOP MULTIPLE AUDITS OF CLAIMANTS THAT PRUPORTEDLY VIOLATE THE SETTLEMENT AGREEMENT. THE CLAIMS ADMINISTRATOR, BROWNGREER PLC, SUBMITTED A RESPONSE IN OPPOSITION. ORDER that THE MOTION FOR COURT INTERVENTION (ECF NO. 10434) IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/20/2019.8/20/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/20/2019) |
| 08/21/2019 | [10812] | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Jesse Taylor* (LOCKS, GENE) (Entered: 08/21/2019) |
| 08/21/2019 | [10813] | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Stephone Paige* (LOCKS, GENE) (Entered: 08/21/2019) |
| 08/21/2019 | [10814] | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Jeff Griffin* (LUCKASEVIC, JASON) (Entered: 08/21/2019) |
| 08/21/2019 | [10815] | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/21/2019) |
| 08/21/2019 | [10816] | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Edward Robinson* (LOCKS, GENE) (Entered: 08/21/2019) |
| 08/22/2019 | [10817] | MOTION to Amend/Correct [10712] Order, filed by PLAINTIFF(S).Motion, Memorandum in Support of Motion, Declaration, Certificates of Service. (Attachments: # [1] Memorandum, # [2] Declaration, # [3] Exhibit 1, # [4] Exhibit 2, # [5] Exhibit 3, # [6] Exhibit 4a, # [7] Exhibit 4b, # [8] Exhibit 5, # [9] Exhibit 6, # [10] Exhibit 7, # [11] Exhibit 8a, # [12] Exhibit 8b, # [13] Exhibit 8c, # [14] Exhibit 8d, # [15] Exhibit 9, # [16] Exhibit 10, # [17] Exhibit 11, # [18] Exhibit 12, # [19] Exhibit 13, # [20] Exhibit 14, # [21] Exhibit 15, # [22] Text of Proposed Order)(FLEISHMAN, WENDY) (Entered: 08/22/2019) |
| 08/22/2019 | [10818] | CONSENT to Jurisdiction by US Magistrate Judge IN SAMARI ROLLE v. LOCKS LAW FIRM. (kp, ) (Entered: 08/22/2019) |
| 08/23/2019 | | USCA Appeal Fees received $ 505 receipt number 202534 re [10772] Notice of Appeal filed by PLAINTIFF(S). (kp, ) (Entered: 08/26/2019) |
| 08/27/2019 | [10819] | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (S. Gash)* (KARATINOS, THEODORE) (Entered: 08/27/2019) |
| 08/28/2019 | [10820] | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Joseph Kowalewski* (LOCKS, GENE) (Entered: 08/28/2019) |
| 08/28/2019 | [10821] | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Alvin Andrews* (LOCKS, GENE) (Entered: 08/28/2019) |
| 08/28/2019 | [10822] | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - David Viaene* (LOCKS, GENE) (Entered: 08/28/2019) |
| 08/28/2019 | [10823] | CONSENT to Jurisdiction by US Magistrate Judge IN DAVID BOSTON v. JOHN D. GIDDENS, P.A. and DAVID BOSTON v. ACOSTA AND ASSOCIATES, LLC.. (kp, ) (Entered: 08/29/2019) |

| 08/30/2019 | 10824 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Ray Buchanan* (LOCKS, GENE) (Entered: 08/30/2019) |
|---|---|---|
| 08/30/2019 | 10825 | BAP ADMINISTRATOR STATUS REPORT 3rd QUARTER 2019 by BAP ADMINISTRATOR. (kp, ) (Entered: 09/03/2019) |
| 08/30/2019 | 10826 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 6 by CLAIMS ADMINISTRATOR. (kp, ) (Entered: 09/03/2019) |
| 08/30/2019 | 10827 | REPORT OF THE SPECIAL MASTERS by WENDELL E. PRITCHETT, JO-ANN M. VERRIER. (kp, ) (Entered: 09/03/2019) |
| 09/03/2019 | 10828 | Letter to Judge Brody from NATIONAL FOOTBALL LEAGUE FOUNDATION, NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC on 9/3/2019 re 10817 MOTION to Amend/Correct 10712 Order, (Attachments: # 1 Certificate of Service)(BIRENBOIM, BRUCE) Modified on 9/5/2019 (kp, ). (Entered: 09/03/2019) |
| 09/05/2019 | 10829 | EXPLANATION AND ORDER THAT THE EXPLANATION AND ORDER OF 7/11/2019 IS VACATED. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/5/2019. 9/6/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO JOHN D. GIDDENS PA v DAVID BOSTON ATTORNEY LIEN DISPUTE 7639 AND ACOSTA AND ASSOCIATES LLC v DAVID BOSTON ATTORNEY LIEN DISPUTE 10585 )(kp, ) (Entered: 09/06/2019) |
| 09/06/2019 | 10830 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Pete Campion* (LOCKS, GENE) (Entered: 09/06/2019) |
| 09/06/2019 | 10831 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Reggie Tongue* (LOCKS, GENE) (Entered: 09/06/2019) |
| 09/06/2019 | 10833 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE WITHHELD FUNDS FOR ATTORNEYS' FEES AND COSTS AS IS SET FORTH IN THE WITHDRAWAL SUBMITTED BY THE PARTIES AND IN ACCORDANCE WITH THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION AND RELATING TO LIENS OTHER THAN ATTORNEY LIENS. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/6/2019. (Attachments: # 1 Notice) 9/9/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ZIMMERMAN REED LLP v FLOYD TURNER, JR. ATTORNEY LIEN DISPUTE DOC NO. 7269)(kp, ) (Entered: 09/09/2019) |
| 09/06/2019 | 10834 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED EXCEPT AS MODIFIED BY THIS DECISION. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS AS OUTLINED HEREIN.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/6/2019. 9/9/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO LOCKS LAW FIRM v CARL SIMPSON ATTORNEY LIEN DISPUTE DOC NO. 10700)(kp, ) (Entered: 09/09/2019) |

| 09/09/2019 | 10832 | NOTICE by PLAINTIFF(S) *Attorney's lien regarding Aaron Moog* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 09/09/2019) |
| 09/09/2019 | 10835 | REPLY to Response to Motion re 10817 MOTION to Amend/Correct 10712 Order, filed by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(FLEISHMAN, WENDY) (Entered: 09/09/2019) |
| 09/10/2019 | 10836 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Amos Zereoue* (LOCKS, GENE) (Entered: 09/10/2019) |
| 09/10/2019 | 10837 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Dennis Winston* (LOCKS, GENE) (Entered: 09/10/2019) |
| 09/10/2019 | 10838 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - James Williams* (LOCKS, GENE) (Entered: 09/10/2019) |
| 09/10/2019 | 10839 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS AS OUTLINED HEREIN.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/10/2019. 9/10/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO LOCKS LAW FIRM v SAMARI ROLLE ATTORNEY LIEN DISPUTE DOC NO. 10750)(kp, ) (Entered: 09/10/2019) |
| 09/12/2019 | 10840 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Bryant Westbrook* (LOCKS, GENE) (Entered: 09/12/2019) |
| 09/17/2019 | 10841 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Clifford Charlton* (LOCKS, GENE) (Entered: 09/17/2019) |
| 09/17/2019 | 10842 | CONSENT to Jurisdiction by US Magistrate Judge IN FRANK HARTLEY v. LOCKS LAW FIRM ATTORNEY LIEN DISPUTE DOC NO. 889.. (kp, ) (Entered: 09/17/2019) |
| 09/18/2019 | 10843 | NOTICE by THRIVEST SPECIALTY FUNDING, LLC *of Filing of Petition for Writ of Mandamus* (Attachments: # 1 Exhibit A)(BUCKLEY, PETER) (Entered: 09/18/2019) |
| 09/20/2019 | 10844 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Ovie Mughelli* (LOCKS, GENE) (Entered: 09/20/2019) |
| 09/20/2019 | 10845 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Charles Bradley* (LOCKS, GENE) (Entered: 09/20/2019) |
| 09/20/2019 | 10846 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Greg Brezina* (LOCKS, GENE) (Entered: 09/20/2019) |
| 09/20/2019 | 10847 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Aveion Cason* (LOCKS, GENE) (Entered: 09/20/2019) |
| 09/20/2019 | 10848 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Willie Jackson* (LOCKS, GENE) (Entered: 09/20/2019) |
| 09/20/2019 | 10849 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Willie Clay* (LOCKS, GENE) (Entered: 09/20/2019) |
| 09/24/2019 | 10850 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Marvin White* (LOCKS, GENE) (Entered: 09/24/2019) |

| 09/25/2019 | 10851 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Chris Gedney* (LOCKS, GENE) (Entered: 09/25/2019) |
|---|---|---|
| 09/26/2019 | 10852 | REPORT AND RECOMMENDATIONS THAT THE WITHDRAWAL OF THE LIEN DISPUTE BE GRANTED AS OUTLINED HEREIN.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/26/2019. 9/26/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ZIMMERMAN REED LLP v WILLIE P. (BILLY) MILNER ATTORNEY LIEN DISPUTE 6971)(kp, ) (Additional attachment(s) added on 9/26/2019: # 1 NOTICE) (kp, ). **WITHDRAWN PER ORDER 10865 *** Modified on 10/2/2019 (kp, ). (Entered: 09/26/2019) |
| 09/26/2019 | 10854 | ORDER THAT THE ABOVE-REFERENCED ATTORNEY LIEN DISPUTE IS REFERRED TO HONORABLE TIMOTHY R. RICE FOR SETTLEMENT DISCUSSIONS. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/26/2019. 9/27/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO DUGAN LAW FIRM APLC v ROY FOSTER ATTORNEY LIEN DISPUTE DOC. NO. 7950)(kp, ) (Entered: 09/27/2019) |
| 09/26/2019 | 10855 | ORDER THAT THE COURT REVOKES ALL PRIOR APPOINTMENTS OF PLAINTIFFS' COUNSEL AS THEY RELATE TO CLAIMS AGAINST THE RIDDELL DEFENDANTS. THE COURT DESIGNATES THE FOLLOWING COUNSEL AS RIDDELL PLAINTIFFS' CO-LEAD COUNSEL: BRADFORD R. SOHN, ESQ. AND WENDY R. FLEISHMAN, ESQ. RIDDELL PLAINTIFFS' CO-LEAD COUNSEL WILL BE RESPONSIBLE FOR COORDINATING THE ACTIVITIES OF RIDDELL PLAINTIFFS DURING PRETRIAL PROCEEDINGS. FURTHER ORDERS REGARDING PROCEDURES FOR COUNSEL SEEKING REIMBURSEMENT FOR COMMON BENEFIT FEES AND COSTS WILL FOLLOW. SIGNED BY HONORABLE ANITA B. BRODY ON 9/26/2019. 9/27/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS AGAINST THE RIDDELL DEFENDANTS, RELATED TO 19-MD-2323) (kp, ) (Entered: 09/27/2019) |
| 09/26/2019 | 10856 | Minute Entry for proceedings held before MAGISTRATE JUDGE TIMOTHY R. RICE Settlement Conference with Byron Cuthbert, Esq. held on 9/26/2019.(RELATES TO THE DUGAN LAW FIRM, APLC v ROY FOSTER ATTORNEY LIEN DISPUTE DOC NO. 7950) (kp, ) (Entered: 09/27/2019) |
| 09/26/2019 | 10857 | Minute Entry for proceedings held before MAGISTRATE JUDGE TIMOTHY R. RICE Settlement Conference with David S. Scalia, Esq. held on 9/26/2019. (APPLIES TO DUGAN LAW FIRM, APLC v ROY FOSTER ATTORNEY LIEN DISPUTE DOC NO. 7950) (kp, ) (Entered: 09/27/2019) |
| 09/27/2019 | 10853 | CONSENT to Jurisdiction by US Magistrate Judge in WILLIE MILNER v. ZIMMERMAN REED (Attorney lien no. 383).. (kp, ) (Entered: 09/27/2019) |
| 09/27/2019 | 10858 | NOTICE - IN LIGHT OF THE CONCERN EXPRESSED IN A RECENT MANDAMUS PETITION FILED ON SEPTEMBER 19,2019,-1(footnote) THE COURT ISSUES THE FOLLOWING CLARIFICATION REGARDING THE LEGAL STATUS OF THIRD-PARTY FUNDER AGREEMENTS: 1. ON DECEMBER 8, 2017, THE COURT ISSUED AN EXPLANATION AND ORDER ("ASSIGNMENT ORDER") PROVIDING THAT UNDER SECTION 30.1 OF THE SETTLEMENT AGREEMENT, ANY AGREEMENT ENTERED INTO BY A CLASS MEMBER "THAT ASSIGNED OR ATTEMPTED TO ASSIGN ANY MONETARY CLAIMS IS VOID, INVALID AND OF NO FORCE AND EFFECT." ASSIGNMENT ORDER AT 5, ECF NO. 9517. 5. TO AVOID ANY POSSIBILITY FOR CONFUSION, THE COURT DIRECTS THE CLAIMS ADMINISTRATOR TO REVIEW ITS |

| | | |
|---|---|---|
| | | GUIDANCE AND RULES REGARDING THIRD-PARTY FUNDER AGREEMENTS AND PROPOSE A STREAMLINED AND CONCISE VERISON THAT IS MORE USER-FRIENDLY.SIGNED BY HONORABLE ANITA B. BRODY ON 9/27/2019.9/27/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/27/2019) |
| 09/27/2019 | 10861 | CONSENT to Jurisdiction by US Magistrate Judge in WILLIAM RUSSELL v ZIMMERMAN REED. ATTORNEY LIEN DISPUTE DOC NO. 9738. (kp, ) (Entered: 10/01/2019) |
| 09/30/2019 | 10859 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AS OUTLINED HEREIN.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/30/2019. 10/1/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO JOHN D GIDDENS PA v TOBIATH MYLES ATTORNEY LIEN DISPUTE DOC NO. 7163)(kp, ) (Entered: 10/01/2019) |
| 09/30/2019 | 10860 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AS OUTLINED HEREIN.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/30/2019. 10/1/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO THE DUGAN LAW FIRM APLC v ROY FOSTER ATTORNEY LIEN DISPUTE DOC NO. 7950)(kp, ) (Entered: 10/01/2019) |
| 09/30/2019 | 10862 | CONSENT to Jurisdiction by US Magistrate Judge IN NATHANIEL LEWIS v JOHN D. GIDDENS, P.A. ATTORNEY LIEN DISPUTE DOC NO. 8453. (kp, ) (Entered: 10/01/2019) |
| 10/01/2019 | 10863 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/1/2019. 10/2/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (RELATES TO LOCKS LAW FIRM v FRANK HARTLEY ATTORNEY LIEN DISPUTE DOC NO. 8124)(kp, ) (Entered: 10/02/2019) |
| 10/02/2019 | 10864 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/2/2019. 10/2/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ZIMMERMAN REED LLP v WILLIAM RUSSELL ATTORNEY LIEN DISPUTE DOC NO. 9738)(kp, ) (Entered: 10/02/2019) |
| 10/02/2019 | 10865 | ORDER THAT THE REPORT AND RECOMMENDATION FILED ON 9/26/2019 IS WITHDRAWN. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/2/2019. 10/2/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ZIMMERMAN REED LLP v WILLIE P. MILNER ATTORNEY LIEN DISPUTE DOC NO. 6971)(kp, ) (Entered: 10/02/2019) |
| 10/02/2019 | 10866 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/2/2019. 10/2/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ZIMMERMAN REED LLP v WILLIE P. MILNER ATTORNEY LIEN DISPUTE DOC NO. 6971)(kp, ) (Entered: 10/02/2019) |

| 10/15/2019 | 10867 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 10/15/2019) |
| 10/17/2019 | 10868 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Lemar Parrish* (LOCKS, GENE) (Entered: 10/17/2019) |
| 10/17/2019 | 10869 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Lorenzo Lynch* (LOCKS, GENE) (Entered: 10/17/2019) |
| 10/17/2019 | 10870 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Ron Solt* (LOCKS, GENE) (Entered: 10/17/2019) |
| 10/21/2019 | 10871 | MOTION to Withdraw as Attorney *for Keith Wagner* filed by PLAINTIFF(S).. (GUDMUNDSON, BRIAN) (Entered: 10/21/2019) |
| 10/21/2019 | 10872 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Keith Wagner* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 10/21/2019) |
| 10/21/2019 | 10877 | CONSENT to Jurisdiction by US Magistrate Judge in DENNIS HOMAN v. LOCKS LAW FIRM.. (kp, ) (Entered: 10/28/2019) |
| 10/22/2019 | 10873 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To National Football League and NFL Properties, LLC(WINTERS, JOHN) (Entered: 10/22/2019) |
| 10/22/2019 | 10878 | CONSENT to Jurisdiction by US Magistrate in Judge CORY FLEMING v. ROBINS CLOUD LLP; FARRISE LAW FIRM. (kp, ) (Entered: 10/28/2019) |
| 10/24/2019 | 10879 | CONSENT to Jurisdiction by US Magistrate Judge in ROBERT YOUNG v. ZIMMERMAN REED. (kp, ) (Entered: 10/28/2019) |
| 10/25/2019 | 10874 | ORDER - UPON CONSIDERATION OF THE RPEORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE DAVID R. STRAWBRIDGE (ECF NO. 10833), AND NO OBJECTION HAVING BEEN DOCKETED, IT IS ORDERED that: 1. THE REPORT AND RECOMMENDATION IS ADOPTED; 2. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED; AND 3. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS FOR ATTORNEYS' FEES AND COSTS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDER REGARDING IMPLEMENTATION. IT IS FURTHER ORDERED that THE CLAIMS ADMINISTRATOR IS TO RETAIN ANY REMAINING PORTION OF THESE WITHHELD FUNDS NOT DESIGNATED FOR ATTORNEYS' FEES OR COSTS PENDING RESOLUTION OF OTHER, NON-ATTORNEY LIENS AGAINST MR. TURNER'S RECOVERY.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/24/2019.10/25/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/25/2019) |
| 10/25/2019 | 10875 | ORDER - UPON CONSIDERATION OF THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DAVID R. STRAWBRIDGE (ECF NO. 10859), AND NO OBJECTION HAVING BEEN DOCKETED, IT IS ORDERED that: 1. THE REPORT AND RECOMMENDATION IS ADOPTED; 2. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED; AND 3. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS FOR ATTORNEYS' FEES AND COSTS IN ACCORANCE WITH THE DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMNTATION.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/24/2019.10/25/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/25/2019) |

| 10/25/2019 | 10876 | ORDER - UPON CONSIDERATION OF THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DAVID R. STRAWBRIDGE (ECF NO. 10860), AND NO OBJECTION HAVING BEEN DOCKETED, IT IS ORDERED that: 1. THE REPORT AND RECOMMENDATION IS ADOPTED; 2. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED; AND 3. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS FOR ATTORNEYS' FEES AND COSTS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/24/2019.10/25/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 10/25/2019) |
|---|---|---|
| 10/30/2019 | 10880 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 10/30/2019) |
| 10/30/2019 | 10881 | NOTICE by PLAINTIFF(S) *OF ATTORNEY'S LIEN AGAINST JOHNNY REMBERT* (LUCKASEVIC, JASON) (Entered: 10/30/2019) |
| 10/31/2019 | 10882 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 10/31/2019) |
| 10/31/2019 | 10883 | NOTICE by PLAINTIFF(S) *OF ATTORNEY'S LIEN AGAINST JAMES JENSEN* (LUCKASEVIC, JASON) (Entered: 10/31/2019) |
| 11/01/2019 | 10884 | EXPLANATION AND ORDER THAT WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS AS OUTLINED HEREIN.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/31/2019. 11/1/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO FARRISE LAW FIRM PC v CORY FLEMING ATTORNEY LIEN DISPUTE DOC NO. 8469 AND ROBINS CLOUD LLP v CORY FLEMING ATTORNEY LIEN DISPUTE DOC NO. 7927)(kp, ) (Entered: 11/01/2019) |
| 11/01/2019 | 10885 | **WITHDRAWN PER ORDER 10887 ** REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE ATTORNEYS' FEES AND COSTS AS OUTLINED HEREIN.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/31/2019. (Attachments: # 1 Notice) 11/1/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY DAVID BUCKLEY PLLC v BRODNEY POOL ATTORNEY LIEN DISPUTE DOC NOS 8050, 8054)(kp, ) Modified on 11/5/2019 (kp, ). (Entered: 11/01/2019) |
| 11/05/2019 | 10886 | CONSENT to Jurisdiction by US Magistrate Judge in Brodney Pool v. Attorney David Buckley, PLLC (kp, ) (Entered: 11/05/2019) |
| 11/05/2019 | 10887 | ORDER THAT THE REPORT AND RECOMMENDATION 10885 IS WITHDRAWN. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/5/2019. 11/5/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY DAVID BUCKLEY PLLC v BRODNEY POOL ATTORNEY LIEN DISPUTE DOC NOS. 8050, 8054)(kp, ) (Entered: 11/05/2019) |
| 11/05/2019 | 10888 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS |

| | | REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/5/2019. 11/5/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ATTORNEY DAVID BUCKLEY PLLC v BRODNEY POOL ATTORNEY LIEN DISPUTE DOC NOS 8050,8054)(kp, ) (Entered: 11/05/2019) |
|---|---|---|
| 11/07/2019 | 10889 | CONSENT to Jurisdiction by US Magistrate Judge in CARL LEE v. ZIMMERMAN REED.. (kp, ) (Entered: 11/07/2019) |
| 11/08/2019 | 10890 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Kevin Shaffer* (LOCKS, GENE) (Entered: 11/08/2019) |
| 11/08/2019 | 10891 | NOTICE by PLAINTIFF(S) (Attachments: # 1 Errata Pet to Establish Att Lien) (DUGAN, JAMES) (Entered: 11/08/2019) |
| 11/08/2019 | 10892 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/7/2019. 11/8/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ZIMMERMAN REED LLP v ROBERT YOUNG ATTORNEY LIEN DISPUTE DOC NO. 10447)(kp, ) (Entered: 11/08/2019) |
| 11/08/2019 | 10893 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/8/2019. 11/8/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ZIMMERMAN REED LLP v CARL LEE ATTORNEY LIEN DISPUTE DOC NO. 10216)(kp, ) (Entered: 11/08/2019) |
| 11/08/2019 | 10894 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/8/2019. 11/8/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO LOCKS LAW FIRM v DENNIS HOMAN ATTORNEY LIEN DISPUTE DOC NO.10701)(kp, ) (Entered: 11/08/2019) |
| 11/14/2019 | 10895 | ORDER that THE MOTION TO WITHDRAW AS COUNSEL FOR PLAINTIFF KEITH WAGNER (ECF NO. 10871 IN 12-2323; ECF NO. 58 IN 12-6069) IS GRANTED. ZIMMERMAN REED LLP MUST SEND A COPY OF THIS ORDER VIA ANY EMAIL ADDRESS THEY HAVE FOR MR. WAGNER AND MUST SEND A PHYSICAL COPY VIA U.S. MAIL TO MR. WAGNER'S LAST KNOWN ADDRESS.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/14/2019. 11/14/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 11/14/2019) |
| 11/14/2019 | 10896 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 11/14/2019) |
| 11/14/2019 | 10897 | NOTICE by PLAINTIFF(S) *OF ATTORNEY'S LIEN FOR JON GIESLER AND MARY BETH GIESLER* (LUCKASEVIC, JASON) (Entered: 11/14/2019) |
| 11/14/2019 | 10898 | CONSENT to Jurisdiction by US Magistrate Judge in ORSON MOBLEY v. ZIMMERMAN REED Attorneys Lien Dispute doc No. 7135.. (kp, ) (Entered: 11/18/2019) |

| 11/19/2019 | [10899](#) | CERTIFICATE of Counsel *Petition to Withdraw Lien (J. Bryant)* by THEODORE E. KARATINOS on behalf of PLAINTIFF(S)(KARATINOS, THEODORE) (Entered: 11/19/2019) |
|---|---|---|
| 11/19/2019 | [10900](#) | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 11/19/2019) |
| 11/20/2019 | [10901](#) | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/19/2019. 11/20/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ZIMMERMAN REED LLP v ORSON MOBLEY ATTORNEY LIEN DISPUTE DOC NO. 7135)(kp, ) (Entered: 11/20/2019) |
| 11/20/2019 | [10902](#) | NOTICE by THE LOCKS LAW FIRM re [10727](#) Notice (Other) *of Petition to Withdraw Notice of Attorney's Lien - Barney Chavous* (LOCKS, GENE) (Entered: 11/20/2019) |
| 11/22/2019 | [10903](#) | ORDER and JUDGMENT of USCA as to [10083](#) Notice of Appeal (Credit Card Payment), filed by JOHN LORENTZ THAT THE DISTRICT COURT'S 5/21/2018 ORDER IS AFFIRMED. COSTS TAXED AGAINST APPELLANT. (kp, ) (Entered: 11/27/2019) |
| 11/27/2019 | [10913](#) | CONSENT to Jurisdiction by US Magistrate Judge in DEXTER DAVIS VS. LOCKS LAW FIRM (ATTORNEY LIEN DISPUTE 10716).. (kp, ) (Entered: 12/06/2019) |
| 12/04/2019 | [10904](#) | ORDER THAT THE FOLLOWING MOTIONS TO REMAND ARE DENIED AS MOOT IN LIGHT OF THE WITHDRAWAL OF THOSE MOTIONS. SIGNED BY HONORABLE ANITA B. BRODY ON 12/4/2019.12/4/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO CASES OUTLINED HEREIN)(kp, ) (Entered: 12/04/2019) |
| 12/05/2019 | [10905](#) | PROTECTIVE ORDER - BY ORDER OF DECEMBER 10, 2018 (ECF NO. 10355), THE COURT APPOINTED THE HONORABLE LAWRENCE F. STENGEL (RET.) AS SPECIAL INVESTIGATOR IN THIS LITIGATION. AND NOW THIS 5TH DAY OF DECMEBER 2019, IT IS ORDERED that ANY LAW FIRM WISHING TO OBTAIN THE PROTECTIONS OF THIS PROTECTIVE ORDER SHALL: (1) PROVIDE THE CONFIDENTIAL INFORMATION TO THE SPECIAL INVESTIGATOR WITHIN TEN (10) BUSINESS DAYS OF THE DATE ON WHICH SUCH DOCUMENTS ARE REQUESTED BY THE SPECIAL INVESTIGATOR; AND, (2) CLEARLY DESIGNATE AS SUCH EACH DOCUMENT PRODUCED PURSUANT TO THIS PROTECTIVE ORDER.. SIGNED BY HONORABLE ANITA B. BRODY ON 12/5/2019. 12/5/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/05/2019) |
| 12/05/2019 | [10906](#) | MOTION to Withdraw as Attorney *for Donald Rolle* filed by PLAINTIFF(S).. (GUDMUNDSON, BRIAN) (Entered: 12/05/2019) |
| 12/05/2019 | [10907](#) | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Donald Rolle* (Attachments: # [1](#) Petition to Establish Attorney's Lien, # [2](#) Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 12/05/2019) |
| 12/06/2019 | [10908](#) | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 12/06/2019) |

| 12/06/2019 | 10909 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Stephen Towle and Janette Towle* (LUCKASEVIC, JASON) (Entered: 12/06/2019) |
|---|---|---|
| 12/06/2019 | 10910 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Sandra Battles-France (Frederick Douglas France, Jr.)* (LOCKS, GENE) (Entered: 12/06/2019) |
| 12/06/2019 | 10911 | ORDER THAT THE MINUTE SHEET, TRANSCRIPT, AND AUDIO RECORDING OF THE PROCEEDINGS HELD 11/7/2019 IN THE ABOVE ENTITLED CASE ARE PLACED UNDER SEAL. SIGNED BY HONORABLE ANITA B. BRODY ON 12/5/2019. 12/6/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (kp, ) (Entered: 12/06/2019) |
| 12/06/2019 | 10912 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY on 11/7/2019 (FILED UNDER SEAL)(kp, ) (kp, ). (Entered: 12/06/2019) |
| 12/10/2019 | 10922 | Copy of Conditional Transfer Order (CTO-105) from the Judicial Panel on Multi-district Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody. (kp, ) (Entered: 12/19/2019) |
| 12/11/2019 | 10914 | ORDER - 1. I APPOINT RETIRED UNITED STATES MAGISTRATE JUDGE DIANE M. WELSH AS MEDIATOR FOR ALL PENDING CASES IMPLICATING SECTION 6.2(b) OF THE SETTLEMENT AGREEMENT AND THE ELIGIBILITY FOR A MONETARY AWARD OF A REPRESENTATIVE CLAIMANT OF A DECEASED RETIRED NFL FOOTBALL PLAYER WHO DIED BEFORE JANUARY 1, 2006 ("STATUTES OF LIMITATIONS CASES"). 2. IT IS FURTHER ORDERED that JUDGE WELSH, IN HER ROLE AS MEDIATOR, WILL HAVE THE POWER TO ESTABLISH SCHEDULING DEADLINES AND PROCEDURES FOR STRUCTURING MEDIATION IN THE STATUTES OF LIMITATIONS CASES.. SIGNED BY HONORABLE ANITA B. BRODY ON 12/11/2019. 12/11/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 12/11/2019) |
| 12/11/2019 | 10915 | SPECIAL MASTER STATUS REPORT(kp, ) (Entered: 12/12/2019) |
| 12/11/2019 | 10916 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 7 by CLAIMS ADMINISTRATOR. (kp, ) (Entered: 12/12/2019) |
| 12/11/2019 | 10917 | BAP ADMINISTRATOR STATUS REPORT 4TH QUARTER 2019 by BAP ADMINISTRATOR. (kp, ) (Entered: 12/12/2019) |
| 12/12/2019 | 10918 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 12/12/2019) |
| 12/13/2019 | 10919 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/13/2019. 12/13/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO LOCKS LAW FIRM v DEXTER DAVIS ATTORNEY LIEN DISPUTE).(kp, ) (Entered: 12/13/2019) |
| 12/13/2019 | 10920 | NOTICE by PLAINTIFF(S) *Timothy Howard* (Attachments: # 1 Notice - Aaron Jones, # 2 Petition - Aaron Jones, # 3 Notice - Jessie Small, # 4 Petition - Jessie Small, # 5 Notice - John Washington, # 6 Petition - John Washington, # 7 Notice - Myron Guyton, # 8 Petition - Myron Guyton, # 9 Notice - Tracy Scroggins, # 10 Petition - Tracy Scroggins)(HOWARD, PHILLIP) (Entered: 12/13/2019) |

| 12/16/2019 | 10921 | CONSENT to Jurisdiction by US Magistrate Judge in GERALD SULLIVAN v. CORBY & DEMETRIO, PC Attorneys Lien Dispute. ( Doc No. 10208). (kp, ) (Entered: 12/19/2019) |
|---|---|---|
| 12/19/2019 | 10923 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Anthony Simmons* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 12/19/2019) |
| 12/19/2019 | 10924 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 12/19/2019) |
| 12/19/2019 | 10925 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Mack Moore and Susan Moore* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 12/19/2019) |
| 12/19/2019 | 10926 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 12/19/2019) |
| 12/19/2019 | 10927 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Ron Morris* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 12/19/2019) |
| 12/19/2019 | 10928 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 12/19/2019) |
| 12/20/2019 | 10929 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE ATTORNEYS' FEES AND COSTS AS SET FORTH IN THE WITHDRAWAL SUBMITTED BY THE PARTIES AND IN ACCORDANCE WITH THE PROVISIONS OF THE SETTLEMENT AGREEMENT.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/19/2019. 12/20/2019 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO JOHN D. GIDDENS PA v JOCELYN BORGELLA ATTORNEY LIEN DISPUTE (DOC NO. 7642)(kp, ) (Entered: 12/20/2019) |
| 12/20/2019 | 10930 | Minute Entry for proceedings held before MAGISTRATE JUDGE TIMOTHY R. RICE: Settlement Conference held on 12/20/2019. (APPLIES TO DOC. NO. 8453) (ems) (Entered: 12/23/2019) |
| 12/20/2019 | 10931 | ORDER THAT THE ABOVE-REFERENCED ATTORNEY LIEN DISPUTE IS REFERRED TO THE HONORABLE TIMOTHY R. RICE FOR SETTLEMENT DISCUSSIONS. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/20/2019. 12/23/2019 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 8453) (ems) (Entered: 12/23/2019) |
| 12/24/2019 | 10932 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (Najeh Davenport)* (WEISBERG, LAWRENCE) (Entered: 12/24/2019) |
| 12/30/2019 | 10933 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Steve Wright* (LOCKS, GENE) (Entered: 12/30/2019) |
| 01/03/2020 | 10934 | ORDER THAT ON OR BEFORE 1/22/2020, MOKARAM SHALL SHOW CAUSE WHY THE UNDERSIGNED SHOULD NOT RECOMMEND THAT PROVOST BE AWARDED THE AMOUNT SOUGHT IN ITS 11/14/2019 PROPOSAL.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/3/2020. 1/3/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO PROVOST UMPHREY LAW FIRM LLP v SCOTT KELLAR NOTICE OF ATTORNEY'S LIEN DOC NO. 7466)(kp, ) (Entered: 01/03/2020) |

| 01/03/2020 | 10935 | ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/3/2020. 1/3/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO JOHN D. GIDDENS PA v NATHANIEL LEWIS ATTORNEY LIEN DISPUTE DOC NO. 8453)(kp, ) (Entered: 01/03/2020) |
| 01/06/2020 | 10936 | NOTICE of Appearance by JONATHAN HENRY UDELL on behalf of PLAINTIFF(S) with Certificate of Service(UDELL, JONATHAN) (Entered: 01/06/2020) |
| 01/06/2020 | 10937 | ORDER THAT THE COURT'S DECEMBER 10, 2018 ORDER APPOINTING HONORABLE LAWRENCE F. STENGEL (RET.) AS SPECIAL INVESTIGATOR 10355 IS AMENDED AS FOLLOWS: SECTION VI...IS EXTENDED UNTIL MARCH 30, 2020. ALL OTHER ASPECTS OF THE DECEMBER 10, 2018 ORDER REMAIN UNCHANGED. SIGNED BY HONORABLE ANITA B. BRODY ON 1/6/20. 1/6/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 01/06/2020) |
| 01/06/2020 | 10938 | NOTICE of Appearance by JONATHAN HENRY UDELL on behalf of PLAINTIFF(S) with Certificate of Service(UDELL, JONATHAN) (Entered: 01/06/2020) |
| 01/06/2020 | 10939 | NOTICE of Appearance by JONATHAN HENRY UDELL on behalf of PLAINTIFF(S) with Certificate of Service(UDELL, JONATHAN) (Entered: 01/06/2020) |
| 01/06/2020 | 10940 | NOTICE of Appearance by JONATHAN HENRY UDELL on behalf of PLAINTIFF(S) with Certificate of Service(UDELL, JONATHAN) (Entered: 01/06/2020) |
| 01/06/2020 | 10941 | NOTICE of Appearance by JONATHAN HENRY UDELL on behalf of PLAINTIFF(S) with Certificate of Service(UDELL, JONATHAN) (Entered: 01/06/2020) |
| 01/06/2020 | 10942 | NOTICE of Appearance by JONATHAN HENRY UDELL on behalf of PLAINTIFF(S) with Certificate of Service(UDELL, JONATHAN) (Entered: 01/06/2020) |
| 01/06/2020 | 10943 | NOTICE of Appearance by JONATHAN HENRY UDELL on behalf of PLAINTIFF(S) with Certificate of Service(UDELL, JONATHAN) (Entered: 01/06/2020) |
| 01/06/2020 | 10944 | NOTICE of Appearance by JONATHAN HENRY UDELL on behalf of PLAINTIFF(S) with Certificate of Service(UDELL, JONATHAN) (Entered: 01/06/2020) |
| 01/07/2020 | 10945 | NOTICE by PLAINTIFF(S) *of Disassociation of Attorney Kathryn Honecker from Rose Law Group, pc* (UDELL, JONATHAN) (Entered: 01/07/2020) |
| 01/07/2020 | 10946 | NOTICE by PLAINTIFF(S) *of Disassociation of Attorney Kathryn Honecker from Rose Law Group, pc* (UDELL, JONATHAN) (Entered: 01/07/2020) |
| 01/07/2020 | 10947 | NOTICE by PLAINTIFF(S) *of Disassociation of Attorney Kathryn Honecker from Rose Law Group, pc* (UDELL, JONATHAN) (Entered: 01/07/2020) |
| 01/07/2020 | 10948 | NOTICE by PLAINTIFF(S) *of Disassociation of Attorney Kathryn Honecker from Rose Law Group, pc* (UDELL, JONATHAN) (Entered: 01/07/2020) |
| 01/07/2020 | 10949 | NOTICE by PLAINTIFF(S) *of Disassociation of Attorney Kathryn Honecker from Rose Law Group, pc* (UDELL, JONATHAN) (Entered: 01/07/2020) |
| 01/07/2020 | 10950 | NOTICE by PLAINTIFF(S) *of Disassociation of Attorney Kathryn Honecker from Rose Law Group, pc* (UDELL, JONATHAN) (Entered: 01/07/2020) |
| 01/07/2020 | 10951 | NOTICE by PLAINTIFF(S) *of Disassociation of Attorney Kathryn Honecker from Rose Law Group, pc* (UDELL, JONATHAN) (Entered: 01/07/2020) |

| 01/07/2020 | 10952 | NOTICE by PLAINTIFF(S) *of Disassociation of Attorney Kathryn Honecker from Rose Law Group, pc* (UDELL, JONATHAN) (Entered: 01/07/2020) |
| 01/08/2020 | 10953 | NOTICE by PLAINTIFF(S) *of Attorneys Lien regarding Daunte Culpepper* (Attachments: # 1 Petition to Establish Attorneys Lien)(DAVIES, MARC) (Entered: 01/08/2020) |
| 01/10/2020 | 10954 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Grady Jackson* (LOCKS, GENE) (Entered: 01/10/2020) |
| 01/10/2020 | 10955 | Short Form Complaints (Riddell) by PLAINTIFF(S). (GIBBS, WILLIAM) (Entered: 01/10/2020) |
| 01/15/2020 | 10956 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 01/15/2020) |
| 01/15/2020 | 10957 | NOTICE by PLAINTIFF(S) *OF ATTORNEY'S LIEN FOR JERMATRIUS BUTLER, SR. AND MARIA BUTLER* (LUCKASEVIC, JASON) (Entered: 01/15/2020) |
| 01/16/2020 | 10958 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 01/16/2020) |
| 01/16/2020 | 10959 | ***BLANK PDF, ATTORNEY REFILED 10960 *** (NOTICE by PLAINTIFF(S) *of Attorney's Lien for Rodney McSwain* (LUCKASEVIC, JASON) Modified on 1/22/2020 (kp, ). (Entered: 01/16/2020) |
| 01/16/2020 | 10960 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Rodney McSwain* (LUCKASEVIC, JASON) (Entered: 01/16/2020) |
| 01/21/2020 | 10961 | ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/21/2020. 1/21/2020 ENTERED AND COPIES E-MAILED. (APPLIES TO DOC. NO. 10208) (ems) (Entered: 01/21/2020) |
| 01/21/2020 | 10971 | CONSENT to Jurisdiction by US Magistrate Judge IN WILLIAM BATES v. WEISBERG & ASSOCIATES ATTORNEY LIEN ID 1312. (kp, ) (Entered: 01/23/2020) |
| 01/22/2020 | 10962 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (G. Feehery)* (KARATINOS, THEODORE) (Entered: 01/22/2020) |
| 01/22/2020 | 10963 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (A. Blaylock)* (KARATINOS, THEODORE) (Entered: 01/22/2020) |
| 01/22/2020 | 10964 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (B. Coates)* (KARATINOS, THEODORE) (Entered: 01/22/2020) |
| 01/22/2020 | 10965 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (N. Glasgow)* (KARATINOS, THEODORE) (Entered: 01/22/2020) |
| 01/22/2020 | 10966 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (M. Perry)* (KARATINOS, THEODORE) (Entered: 01/22/2020) |
| 01/22/2020 | 10967 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (R. Porter)* (KARATINOS, THEODORE) (Entered: 01/22/2020) |

| 01/22/2020 | 10968 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (W. Perry)* (KARATINOS, THEODORE) (Entered: 01/22/2020) |
| 01/22/2020 | 10969 | RESPONSE TO ORDER TO SHOW CAUSE by PLAINTIFF(S). (Attachments: # 1 Affidavit Answer Affidavit)(STERN, JEFFREY) (Entered: 01/22/2020) |
| 01/23/2020 | 10970 | MOTION for Approval - *CLASS COUNSEL'S MOTION FOR THE APPROVAL OF EDUCATION FUND PROGRAMS AND MEMORANDUM IN SUPPORT* filed by PLAINTIFF(S).Memorandum, Certificate of Service. (Attachments: # 1 Exhibit A - KSIs detailed description of the Project, # 2 Exhibit B - HIPAA-compliant authorization, # 3 Exhibit C - Proposal from the Data Management Unit, # 4 Certificate of Service)(SEEGER, CHRISTOPHER) (Entered: 01/23/2020) |
| 01/23/2020 | 10972 | CONSENT to Jurisdiction by US Magistrate Judge IN RUFFIN HAMILTON v. LOCKS LAW FIRM Attorneys Lien Dispute ECF No. 10804.. (kp, ) (Entered: 01/24/2020) |
| 01/27/2020 | 10973 | ORDER THAT ON OR BEFORE FEBRUARY 3, 2020, RETIRED NFL PLAYER A.G. MUST SHOW CAUSE WHY HIS 10817 MOTION TO AMEND/CORRECT SHOULD NOT BE DENIED FOR LACK OF JURISDICTION.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/27/20. 1/27/20 ENTERED AND COPIES MAILED AND E-MAILED.(jwl, ) (Entered: 01/27/2020) |
| 01/27/2020 | 10974 | ORDER THAT THE COURT WILL HOLD A HEARING ON THE 10970 CLASS COUNSEL'S MOTION FOR THE APPROVAL OF EDUCATION FUND PROGRAMS ON 2/12/2020 AT 10:00 AM BEFORE HONORABLE ANITA B. BRODY.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/27/2020. 1/27/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS)(kp, ) (Entered: 01/27/2020) |
| 01/27/2020 | 10975 | ORDER THAT THE REPORT AND RECOMMENDATION IS ADOPTED. THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION. SIGNED BY HONORABLE ANITA B. BRODY ON 1/27/2020. 1/28/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO CIVIL ACTION 12-1623, JOHN D. GIDDENS PA v JOCELYN BORGELLA ATTORNEY LIEN DISPUTE ECF NO. 7642(kp, ) (Entered: 01/28/2020) |
| 01/27/2020 | 10978 | CONSENT to Jurisdiction by US Magistrate Judge in ERRICT RHETT v. LOCKS LAW FIRM; McCORVEY LAW, LLC Attorneys Lien Dispute ECF Nos. 8048 and 10769 . (kp, ) (Entered: 01/28/2020) |
| 01/28/2020 | 10976 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 01/28/2020) |
| 01/28/2020 | 10977 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Joseph DeLamielleure and Gerri DeLamielleure* (LUCKASEVIC, JASON) (Entered: 01/28/2020) |
| 01/31/2020 | 10984 | NOTICE of Withdrawal of Appearance OF ATTORNEY THOMAS A. DEMETRIO FOR PLAINTIFF GERALD SULLIVAN ONLY. (APPLIES TO CIVIL ACTION 13-95) (kp, ) (Entered: 02/03/2020) |
| 02/01/2020 | 10979 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien* (SHENAQ, AMIR) (Entered: 02/01/2020) |
| 02/01/2020 | 10980 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien* (SHENAQ, AMIR) (Entered: 02/01/2020) |

| 02/01/2020 | 10981 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien* (SHENAQ, AMIR) (Entered: 02/01/2020) |
|---|---|---|
| 02/01/2020 | 10982 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (Zachary Crockett)* (SHENAQ, AMIR) (Entered: 02/01/2020) |
| 02/01/2020 | 10983 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (Robert Brooks)* (SHENAQ, AMIR) (Entered: 02/01/2020) |
| 02/03/2020 | 10985 | MOTION for Indicative Ruling Under Fed.R.Civ.P. 62.1 filed by PLAINTIFF(S).Memorandum, Declaration, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Declaration, # 3 Exhibit)(FLEISHMAN, WENDY) (Entered: 02/03/2020) |
| 02/05/2020 | 10986 | APPLICATION/PETITION *FOURTH VERIFIED PETITION OF CLASS COUNSEL CHRISTOPHER A. SEEGER FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS' FEES AND COSTS* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 02/05/2020) |
| 02/06/2020 | 10987 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien by Pope, McGlamry, Kilpatrick, Morrison & Norwood, P.C. as to Andra Davis* (MCGLAMRY, MICHAEL) (Entered: 02/06/2020) |
| 02/06/2020 | 10988 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien by Pope, McGlamry, Kilpatrick, Morrison & Norwood, P.C. as to Arthur Moore* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 02/06/2020) |
| 02/10/2020 | 10989 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISBURSE THE ATTORNEYS FEES AS IS SET FORTH IN THE WITHDRAWAL. IT IS FURTHER RECOMMENDED THAT THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE MOKARAM THE FULL REIMBURSEMENT AND THE REMAINDER OF THE CURRENTLY WITHHELD FUNDS BE DISTRIBUTED TO MR. LANGFORD.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/10/2020. (Attachments: # 1 Notice) 2/10/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO POPE MCGLAMRY PC V. JEVON LANGFORD ATTORNEY LIEN DISPUTE 7327 )(kp, ) (Entered: 02/11/2020) |
| 02/10/2020 | 10991 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE WITHHELD FUNDS IN ACCORDANCE WITH THE DECISION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/10/2020. 2/10/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL (APPLIES TO LOCKS LAW FIRM V. RUFFIN HAMILTON ATTORNEY LIEN DISPUTE DOC NO 10804 )(kp, ) (Entered: 02/11/2020) |
| 02/11/2020 | 10990 | STIPULATION by PLAINTIFF(S). (Attachments: # 1 Certificate of Service)(GIBBS, WILLIAM) (Entered: 02/11/2020) |
| 02/12/2020 | 10994 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY Hearing held on 2/12/2020. Court Reporter: ESR. (kp, ) (Entered: 02/13/2020) |
| 02/12/2020 | 10995 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/12/2020. 2/13/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO STECKLER GRESHAM COCHRAN PLLC |

| | | v. TIM MORABITO ATTORNEY LIEN DISPUTE (DOC NO. 8283 )(kp, ) (Entered: 02/13/2020) |
|---|---|---|
| 02/12/2020 | 10996 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/12/2020. 2/13/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO WEISBERG & ASSOCIATES V. WILLIAM BATES ATTORNEY LIEN DISPUTE DOC NOS 10200 10202 10206 )(kp, ) (Entered: 02/13/2020) |
| 02/13/2020 | 10992 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 02/13/2020) |
| 02/13/2020 | 10993 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Rodney Thomas and Jean Thomas* (LUCKASEVIC, JASON) (Entered: 02/13/2020) |
| 02/13/2020 | 10998 | ORDER WAIVING RIGHT TO APPEAL RE: ATTORNEY LIEN REGARDING GERALD SULLIVAN AS OUTLINED HEREIN. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/13/2020. 2/14/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (ems) (Entered: 02/14/2020) |
| 02/13/2020 | 11008 | CONSENT to Jurisdiction by US Magistrate Judge TRACY SCROGGINS v. HOWARD AND ASSOCIATES, P.A. Attorneys Lien Dispute ECF No. 10920-9. (kp, ) (Entered: 02/20/2020) |
| 02/14/2020 | 10997 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (M. Butler)* (KARATINOS, THEODORE) (Entered: 02/14/2020) |
| 02/14/2020 | 10999 | STIPULATION *Waiving Right to Appeal Attorney Lien: William Bates* by PLAINTIFF(S). (WEISBERG, LAWRENCE)*FORWARDED TO JUDGE FOR APPROVAL** Modified on 2/21/2020 (kp, ). (Entered: 02/14/2020) |
| 02/17/2020 | 11000 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (A. White)* (KARATINOS, THEODORE) (Entered: 02/17/2020) |
| 02/17/2020 | 11001 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (C. Ahanotu)* (KARATINOS, THEODORE) (Entered: 02/17/2020) |
| 02/18/2020 | 11002 | RESPONSE in Opposition re 10985 MOTION for Indicative Ruling Under Fed.R.Civ.P. 62.1 filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Certificate of Service)(KARP, BRAD) (Entered: 02/18/2020) |
| 02/18/2020 | 11003 | NOTICE of Appearance by BYRON CUTHBERT on behalf of PLAINTIFF(S) (CUTHBERT, BYRON) (Entered: 02/18/2020) |
| 02/19/2020 | 11004 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 02/19/2020) |
| 02/19/2020 | 11005 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Hugh Green and Guy Green* (LUCKASEVIC, JASON) (Entered: 02/19/2020) |
| 02/19/2020 | 11006 | Objections by PLAINTIFF(S) re 10986 Application/Petition *CERTAIN CLASS MEMBERS OPPOSITION TO CLASS COUNSELS FOURTH VERIFIED PETITION FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS FEES AND COSTS.* (LUBEL, LANCE) (Entered: 02/19/2020) |

| 02/20/2020 | 11007 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Herman Arvie* (SHENAQ, AMIR) (Entered: 02/20/2020) |
|---|---|---|
| 02/21/2020 | 11009 | ORDER THAT THE STIPULATION WAIVING RIGHT TO APPEAL ATTORNEY LIEN RE: WILLIAM BATES IS APPROVED.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/21/2020. 2/21/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO WEISBERG & ASSOCIATES v WILLIAM BATES ATTORNEY LIEN DISPUTE DOC NOS. 10200, 10202, 10206, 10996)(kp, ) (Entered: 02/21/2020) |
| 02/24/2020 | 11010 | MOTION to Withdraw as Attorney *for C.R. Roberts and Yvonne Roberts* filed by PLAINTIFF(S)..(GUDMUNDSON, BRIAN) (Entered: 02/24/2020) |
| 02/24/2020 | 11011 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for C.R. Roberts and Yvonne B. Roberts* (Attachments: # 1 Petition to Establish Attorney's Lien, # 2 Text of Proposed Order) (GUDMUNDSON, BRIAN) (Entered: 02/24/2020) |
| 02/24/2020 | 11015 | (PRO SE) DECLATORY JUDGEMENT OF REMOVAL TO THE EASTERN DISTRICT OF PENNSYLVANIA AND INJUNCTIVE RELIEFAND IMMEDIATE IN FORMA PAUPERIS by HARRY E. HAMILTON. CERTIFICATE OF SERVICE. (APPLIES TO 14-CV-6353) (kp, ) (Entered: 02/25/2020) |
| 02/25/2020 | 11012 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/25/2020. (Attachments: # 1 Notice) 2/25/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO PROVOST UMPHREY LAW FIRM LLP v STEVEN WARREN ATTORNEY LIEN DISPUTE DOC NO. 7838)(kp, ) (Entered: 02/25/2020) |
| 02/25/2020 | 11013 | REPORT AND RECOMMENDATIONS THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/25/2020. (Attachments: # 1 Notice) 2/25/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO JOHN D. GIDDENS PA v VAN JAKES ATTORNEY LIEN DISPUTE DOC NOS 7662, 7663) (kp, ) (Entered: 02/25/2020) |
| 02/25/2020 | 11014 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/25/2020. 2/25/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO HOWARD AND ASSOCIATES PA v. TRACY SCROGGINS ATTORNEY LIEN DISPUTE DOC NOS. 10920-9, 10920-10)(kp, ) (Entered: 02/25/2020) |
| 02/26/2020 | 11016 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 02/26/2020) |
| 02/26/2020 | 11017 | NOTICE by PLAINTIFF(S) *NOTICE OF ATTORNEY'S LIEN FOR JOSEPH A. HARRIS AND LYDIA H. HARRIS* (LUCKASEVIC, JASON) (Entered: 02/26/2020) |
| 02/26/2020 | 11018 | RESPONSE in Support re 10985 MOTION for Indicative Ruling Under Fed.R.Civ.P. 62.1 *(Plaintiff's Reply in Further Support of His Motion for an Indicative Ruling)* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(FLEISHMAN, WENDY) (Entered: 02/26/2020) |
| 02/26/2020 | 11019 | STIPULATION AND ORDER THAT ALL UNDERSIGNED PARTIES WAIVE THEIR RIGHTS TO APPEAL THE FINAL DECISION REGARDING NOTICE OF |

| | | |
|---|---|---|
| | | ATTORNEY'S LIEN FILED 12/13/2019.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/26/2020. 2/27/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO HOWARD AND ASSOCIATES PA v TRACY SCROGGINS ATTORNEY LIEN DISPUTE (DOC NOS. 10920-9, 10920-10)(kp, ) (Entered: 02/27/2020) |
| 02/28/2020 | 11020 | ORDER THAT PLAINTIFF HARRY HAMILTONS MOTION FOR REMOVAL, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF (ECF NO. 11015 IN 12-MD-2323; ECF NO. 12 IN 14-CV-6353) IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 02/28/20. 02/28/20 ENTERED AND COPIES E-MAILED. (jwl, ) (Entered: 02/28/2020) |
| 03/02/2020 | 11021 | APPLICATION/PETITION *CLASS COUNSEL'S REPLY TO CERTAIN CLASS MEMBERS' OPPOSITION TO FOURTH VERIFIED PETITION FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS' FEES AND COSTS* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 03/02/2020) |
| 03/05/2020 | 11022 | ORDER THAT PROFESSOR DAVID HOFFMAN IS APPOINTED AS AN ADDITIONAL SPECIAL MASTER IN *IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION*, CASE NO. 12-MD-2323, TO IMPLEMENT AND ADMINISTER THE CLASS ACTION SETTLEMENT AGREEMENT (THE "AGREEMENT") ENTERED INTO BETWEEN THE NFL AND THE NFL PROPERTIES LLC (THE "NFL PARTIES") AND THE CLASS REPRESENTATIVES AND SUBCLASS REPRESENTATIVES, INDIVIDUALLY AND ON BEHALF OF THE SETTLEMENT CLASS AND SUBCLASSES, BY AND THROUGH CLASS COUNSEL ("CLASS COUNSEL") (JOINTLY, "THE PARTIES").. SIGNED BY HONORABLE ANITA B. BRODY ON 3/5/20. 3/5/20 ENTERED AND COPIES MAILED AND E-MAILED. Affidavit.(jwl, ) Modified on 3/5/2020 (jwl, ). (Entered: 03/05/2020) |
| 03/10/2020 | 11023 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO DISTRIBUTE THE ATTORNEYS' FEES AND COSTS AS IS SET FORTH IN THE WITHDRAWAL AS OUTLINED HEREIN.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/10/2020. (Attachments: # 1 Notice) 3/10/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (RELATES TO POPE MCGLAMRY PC V. ROBERT J. WILLIAMS ATTORNEY LIEN DISPUTE DOC NO 7065 )(kp, ) (Entered: 03/10/2020) |
| 03/12/2020 | 11024 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (Kenneth Davidson)* (SHENAQ, AMIR) (Entered: 03/12/2020) |
| 03/16/2020 | 11025 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Art Shell* (LOCKS, GENE) (Entered: 03/16/2020) |
| 03/16/2020 | 11026 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (K. Hamilton)* (KARATINOS, THEODORE) (Entered: 03/16/2020) |
| 03/16/2020 | 11027 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (A. White)* (KARATINOS, THEODORE) (Entered: 03/16/2020) |
| 03/16/2020 | 11028 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (C. Ahanotu)* (KARATINOS, THEODORE) (Entered: 03/16/2020) |
| 03/17/2020 | 11029 | Copy of Conditional Transfer Order (CTO-106) from the Judicial Panel on Multidistrict Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody: IL-N 1:20-01581.(kp, ) (Entered: 03/18/2020) |

| 03/18/2020 | 11030 | TRANSCRIPT of PROCEEDING held on 2/12/2020, before Judge BRODY. Court Reporter/Transcriber DOMAN TRANSCRIPTION SERVICE/ESR. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 4/8/2020. Redacted Transcript Deadline set for 4/20/2020. Release of Transcript Restriction set for 6/16/2020. (kp, ) (Entered: 03/18/2020) |
| --- | --- | --- |
| 03/18/2020 | 11031 | Notice of Filing of Official Transcript with Certificate of Service re 11030 Transcript - PDF, 3/18/2020 Entered and Copies Emailed. (kp, ) (Entered: 03/18/2020) |
| 03/20/2020 | 11032 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Marion Fitzgerald* (LOCKS, GENE) (Entered: 03/20/2020) |
| 03/23/2020 | 11033 | EXPLANATION AND ORDER FOR APPROVAL OF EDUCATION FUND PROGRAMS granting 10970 MOTION FOR APPROVAL. SIGNED BY HONORABLE ANITA B. BRODY ON 3/23/20.3/23/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 03/23/2020) |
| 03/27/2020 | 11034 | BAP ADMINISTRATOR STATUS REPORT 1st QUARTER 2020 by BAP ADMINISTRATOR. (kp, ) (Entered: 03/27/2020) |
| 03/27/2020 | 11035 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 8 by CLAIMS ADMINISTRATOR. (kp, ) (Entered: 03/27/2020) |
| 03/27/2020 | 11036 | REPORT OF THE SPECIAL MASTERS by DAVID HOFFMAN, WENDELL E. PRITCHETT, JO-ANN M. VERRIER. (kp, ) (Entered: 03/27/2020) |
| 03/30/2020 | 11037 | ORDER THAT THE COURT'S DECEMBER 18, 2019 ORDER 10355 APPOINTING HONORABLE LAWRENCE F STENGEL (RET.) AS A SPECIAL INVESTIGATOR AND THE COURT'S JANUARY 6, 2020 ORDER 10937 EXTENDING THE SPECIAL INVESTIGATOR'S TERM IS AMENDED AS FOLLOWS: THE SPECIAL INVESTIGATORS TERM IS HEREBY FURTHER EXTENDED UNTIL MAY 30, 2020. . SIGNED BY HONORABLE ANITA B. BRODY ON 03/30/2020. 03/30/2020 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 03/30/2020) |
| 03/31/2020 | 11038 | MOTION to Enforce *Settlement* filed by PLAINTIFF(S).. (Attachments: # 1 Exhibit 1-2, # 2 Text of Proposed Order)(LUCKASEVIC, JASON) (Entered: 03/31/2020) |
| 03/31/2020 | 11039 | MOTION to Withdraw as Attorney *for Michael Ball, Jr.* filed by PLAINTIFF(S).. (GUDMUNDSON, BRIAN) (Entered: 03/31/2020) |
| 03/31/2020 | 11040 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Michael Ball, Jr.* (Attachments: # 1 Petition to Establish Attorney's Lien, # 2 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 03/31/2020) |
| 03/31/2020 | 11041 | MOTION FOR RECONSIDERATION OF DECLARATORY JUDGEMENT OF REMOVAL TO THE EASTERN DISTRICT OF PENNSYLVANIA AND INJUNCTIVE RELIEF AND IMMEDIATE IN FORMA PAUPERIS filed by HARRY E. HAMILTON(APPLIES TO CIVIL ACTION 14-6353)(kp, ) (Entered: 04/01/2020) |
| 04/02/2020 | 11042 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (Walter Briggs)* (SHENAQ, AMIR) (Entered: 04/02/2020) |
| 04/02/2020 | 11043 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (W. Pat Carter)* (KARATINOS, THEODORE) (Entered: 04/02/2020) |

| 04/03/2020 | 11044 | REPORT AND RECOMMENDATION THAT THE CLAIMS ADMINISTRATOR DISBURSE THE CURRENTLY WITHHELD FUNDS. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/3/2020. (Attachments: # 1 notice) 4/3/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUSNEL. (Provost Umphrey Law Firm, LLP v. Scott Kellar Attorney Lien Dispute(Doc. No. 7466))(kp, ) (Entered: 04/03/2020) |
| --- | --- | --- |
| 04/03/2020 | 11045 | CONSENT to Jurisdiction by US Magistrate Judge IN RE:KENNETH DAVIDSON v. GOLDBERG, PERSKY & WHITE, P.C.Attorneys Lien Dispute ECF No. 7563. (kp, ) (Entered: 04/03/2020) |
| 04/06/2020 | 11046 | ORDER THAT ANY APPEAL TO THIS COURT RELATED TO THIS CLAIM MUST BE FILED ON OR BEFORE APRIL 15, 2020.. SIGNED BY HONORABLE ANITA B. BRODY ON 4/6/20. 4/6/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 04/06/2020) |
| 04/07/2020 | 11047 | ORDER denying 11038 MOTION TO ENFORCE THE SETTLEMENT. IT IS FURTHER ORDERED THAT ANY APPEAL TO THIS COURT RELATED TO THIS CLAIM MUST BE FILED ON OR BEFORE APRIL 15, 2020.. SIGNED BY HONORABLE ANITA B. BRODY ON 4/7/20.4/7/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 04/07/2020) |
| 04/08/2020 | 11048 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien* (FERRARO, KELLY) (Entered: 04/08/2020) |
| 04/08/2020 | 11049 | CERTIFICATE of Counsel by PHILLIP TIMOTHY HOWARD on behalf of TIM HOWARD HOWARD AND ASSOCIATES ATTORNEYS AT LAW, P.A. (Attachments: # 1 Certificate of Service Notice of Lien - JAMAR ENZOR, # 2 Certificate of Service Notice of Lien - MARQUIS JOHNSON, # 3 Certificate of Service Notice of Lien - JAMIE NAILS, # 4 Certificate of Service Notice of Lien - KANAVIS MCGHEE, # 5 Certificate of Service Notice of Lien - DARYL GARDNER, # 6 Certificate of Service Notice of Lien - COREY FULLER, # 7 Certificate of Service Notice of Lien - VICTOR FLOYD, # 8 Certificate of Service Notice of Lien - VICTOR GREEN, # 9 Certificate of Service Notice of Lien - SCOTT CLOMAN, # 10 Certificate of Service Notice of Lien - WILLIAM FLOYD, # 11 Certificate of Service Notice of Lien - ROSHAD KENT, # 12 Certificate of Service Notice of Lien - GERALD PERRY, # 13 Certificate of Service Notice of Lien - TYRONE ROGERS, # 14 Certificate of Service Notice of Lien - MARVCUS PATTON)(HOWARD, PHILLIP) (Entered: 04/08/2020) |
| 04/09/2020 | 11050 | CONSENT to Jurisdiction by US Magistrate Judge RE: TROY TESTERMAN v. LOCKS LAW FIRM Attorneys Lien Dispute ECF No. 10787 . (kp, ) (Entered: 04/10/2020) |
| 04/13/2020 | 11051 | CONSENT to Jurisdiction by US Magistrate Judge IN RE: JON GIESLER v. GOLDBERG PERSKY & WHITE, P.CAttorneys Lien Dispute ( ECF No. 10897).. (kp, ) (Entered: 04/14/2020) |
| 04/15/2020 | 11052 | CONSENT to Jurisdiction by US Magistrate Judge IN RE: FLOYD HODGE v. GOLDBERG PERSKY & WHITE, P.C... Attorneys Lien Dispute ECF No. 10724(kp, ) (Entered: 04/15/2020) |
| 04/20/2020 | 11054 | CONSENT to Jurisdiction by US Magistrate Judge in re: JACOB FORD v. POPE MCGLAMRY PC (Attorneys Lien Dispute ECF No. 7198)..(kp, ) (Entered: 04/22/2020) |

| 04/21/2020 | 11053 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Bracy Walker* (LOCKS, GENE) (Entered: 04/21/2020) |
| 04/23/2020 | 11055 | CONSENT to Jurisdiction by US Magistrate Judge IN RE:TAMRA ALEXANDER v. GOLDBERG, PERSKY & WHITE, P.C. (ECF No. 10684.) (kp, ) (Entered: 04/24/2020) |
| 04/27/2020 | 11056 | CONSENT to Jurisdiction by US Magistrate Judge IN RE: ED WEST v. LOCKS LAW FIRM Attorneys Lien Dispute ECF No. 10680. (kp, ) (Entered: 04/28/2020) |
| 04/30/2020 | 11057 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS AS OUTLINED HEREIN.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/30/2020. 4/30/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Goldberg, Persky & White, P.C. v. Kenneth DavidsonAttorney Lien Dispute(Doc. No. 7563)(kp, ) (Entered: 04/30/2020) |
| 05/01/2020 | 11058 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/1/2020. 5/5/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO the Goldberg, Persky & White, P.C. v. Jon Giesler Attorney Lien Dispute (Doc. No. 10897)(kp, ) (Entered: 05/05/2020) |
| 05/01/2020 | 11059 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/1/2020. 5/5/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Goldberg, Persky & White, P.C. v. Floyd HodgeAttorney Lien Dispute(Doc. No. 10724)(kp, ) (Entered: 05/05/2020) |
| 05/06/2020 | 11060 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Russell Davis* (LOCKS, GENE) (Entered: 05/06/2020) |
| 05/06/2020 | 11061 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Harlan Huckleby* (LOCKS, GENE) (Entered: 05/06/2020) |
| 05/06/2020 | 11062 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Stan Edwards* (LOCKS, GENE) (Entered: 05/06/2020) |
| 05/06/2020 | 11063 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (C.Haggans)* (KARATINOS, THEODORE) (Entered: 05/06/2020) |
| 05/06/2020 | 11064 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (O. Hoyte)* (KARATINOS, THEODORE) (Entered: 05/06/2020) |
| 05/06/2020 | 11065 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AS OUTLINED HEREIN. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/6/2020. 5/6/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Pope McGlamry P.C. v. Jacob Ford Attorney Lien Dispute (Doc. No. 7198))(kp, ) (Entered: 05/06/2020) |

| 05/07/2020 | 11066 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (R. Harris)* (KARATINOS, THEODORE) (Entered: 05/07/2020) |
|---|---|---|
| 05/07/2020 | 11067 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (W. Montgomery)* (KARATINOS, THEODORE) (Entered: 05/07/2020) |
| 05/11/2020 | 11068 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Ebenezer Ekuban* (LOCKS, GENE) (Entered: 05/11/2020) |
| 05/12/2020 | 11069 | MOTION to Withdraw as Attorney *for Alfred Anderson and Kimberly Anderson* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 05/12/2020) |
| 05/12/2020 | 11070 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Alfred Anderson and Kimberly Anderson* (Attachments: # 1 Petition to Establish Attorneys Lien)(GUDMUNDSON, BRIAN) (Entered: 05/12/2020) |
| 05/12/2020 | 11071 | MOTION to Withdraw as Attorney *for Gerald Robinson and Melissa Robinson* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 05/12/2020) |
| 05/12/2020 | 11072 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Gerald Robinson and Melissa Robinson* (Attachments: # 1 Petition to Establish Attorneys Lien)(GUDMUNDSON, BRIAN) (Entered: 05/12/2020) |
| 05/12/2020 | 11080 | CONSENT to Jurisdiction by US Magistrate Judge DAVID CADIGAN v. LOCKS LAW FIRM Attorneys Lien Dispute ECF No. 10784.. (kp, ) (Entered: 05/13/2020) |
| 05/13/2020 | 11073 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Marques McFadden* (LOCKS, GENE) (Entered: 05/13/2020) |
| 05/13/2020 | 11074 | ORDER adopting Report and Recommendations as to 10989 ; The Withdrawal of the Lien Dispute is GRANTED; andThe Claims Administrator is ORDERED to disburse the withheld funds in accordance with this decision, the provisions of the Settlement Agreement, and all Court Orders regarding implementation.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/13/20.5/13/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 05/13/2020) |
| 05/13/2020 | 11075 | ORDER adopting Report and Recommendations as to 10995 ; The Withdrawal of the Lien Dispute is GRANTED; andThe Claims Administrator is ORDERED to disburse the withheld funds inaccordance with this decision, the provisions of the Settlement Agreement, and all Court Ordersregarding implementation. SIGNED BY HONORABLE ANITA B. BRODY ON 5/13/20.5/13/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 05/13/2020) |
| 05/13/2020 | 11076 | ORDER adopting Report and Recommendations as to 11012 ; The Withdrawal of the Lien Dispute is GRANTED; and The Claims Administrator is ORDERED to disburse the withheld funds inaccordance with this decision, the provisions of the Settlement Agreement, and all Court Ordersregarding implementation.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/13/20.5/13/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 05/13/2020) |
| 05/13/2020 | 11077 | ORDER adopting Report and Recommendations as to 11013 ; The Withdrawal of the Lien Dispute is GRANTED; andThe Claims Administrator is ORDERED to disburse the withheld funds in accordance with this decision, the provisions of the Settlement Agreement, and all Court Orders regarding implementation.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/13/20.5/13/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 05/13/2020) |

| 05/13/2020 | 11078 | ORDER adopting Report and Recommendations as to 11023 ; The Withdrawal of the Lien Dispute is GRANTED; and The Claims Administrator is ORDERED to disburse the withheld funds inaccordance with this decision, the provisions of the Settlement Agreement, and all Court Ordersregarding implementation.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/13/20.5/13/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 05/13/2020) |
|---|---|---|
| 05/13/2020 | 11079 | CONSENT to Jurisdiction by US Magistrate Judge IN RE: MICHAEL GAINES v. SHENAQ PC Attorneys Lien Dispute ECF No. 10569.. (kp, ) (Entered: 05/13/2020) |
| 05/13/2020 | 11081 | CONSENT to Jurisdiction by US Magistrate Judge IN RE: JEFF FAULKNER v. LOCKS LAW FIRM Attorneys Lien Dispute ECF No. 10708.(kp, ) (Entered: 05/13/2020) |
| 05/13/2020 | 11082 | CONSENT to Jurisdiction by US Magistrate Judge IN RE: JAMES CADILE v. LOCKS LAW FIRMAttorneys Lien Dispute ECF No. 10717.. (kp, ) (Entered: 05/13/2020) |
| 05/13/2020 | 11083 | CONSENT to Jurisdiction by US Magistrate Judge KAMAL SALLAM-EL v. LOCKS LAW FIRM Attorneys Lien Dispute ECF No. 10802.. (kp, ) (Entered: 05/13/2020) |
| 05/13/2020 | 11084 | CONSENT to Jurisdiction by US Magistrate Judge ALPHONSO TAYLOR v. GOLDBERG PERSKY & WHITE Attorneys Lien Dispute ECF No. 10656. (kp, ) (Entered: 05/13/2020) |
| 05/14/2020 | 11085 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Jason Hall* (LOCKS, GENE) (Entered: 05/14/2020) |
| 05/15/2020 | 11089 | CONSENT to Jurisdiction by US Magistrate Judge IN RE: GEORGE CUMBY v. ZIMMERMAN REEDAttorneys Lien Dispute ECF No. 6951) (kp, ) (Entered: 05/22/2020) |
| 05/19/2020 | 11086 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Donald Dufek* (LOCKS, GENE) (Entered: 05/19/2020) |
| 05/21/2020 | 11087 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Derrick Lassic* (LOCKS, GENE) (Entered: 05/21/2020) |
| 05/21/2020 | 11088 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Paul C. Seymour* (GUDMUNDSON, BRIAN) (Entered: 05/21/2020) |
| 05/21/2020 | 11090 | CONSENT to Jurisdiction by US Magistrate Judge IN RE: BRIAN BLADES v. GOLDBERG PERSKY & WHITE, P.C. Attorneys Lien Dispute ECF No. 7552.. (kp, ) (Entered: 05/22/2020) |
| 05/21/2020 | 11091 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/21/2020. 5/22/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Shenaq PC v. Michael Gaines Attorney Lien Dispute, Doc. No. 10569)(kp, ) (Entered: 05/22/2020) |
| 05/21/2020 | 11092 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL |

| | | COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/21/2020. 5/22/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Goldberg, Persky & White, P.C. v. Alphonso TaylorAttorney Lien Dispute, Doc. No. 10656)(kp, ) (Entered: 05/22/2020) |
|---|---|---|
| 05/21/2020 | 11093 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/21/2020. 5/22/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL (APPLIES TO Locks Law Firm v. Troy TestermanAttorney Lien Dispute, Doc. No. 10787) (Entered: 05/22/2020) |
| 05/29/2020 | 11094 | Copy of Conditional Transfer Order (CTO-107) from the Judicial Panel on Multi-district Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody. (kp, ) (Main Document 11094 replaced on 6/3/2020) (kp, ). (Entered: 06/03/2020) |
| 05/29/2020 | 11099 | MANDATE of USCA that it is ORDERED and ADJUDGED by this Court that the Orders of the District Court entered on April 5, 2018, April 12, 2018, June 5, 2018, June 27, 2018, July 10, 2018, and January 16, 2019 are hereby AFFIRMED. The Order of the District Court entered on May 24, 2018 is hereby REMANDED. All of the above in accordance with the Opinion of this Court. (kp, ) (Entered: 06/10/2020) |
| 06/04/2020 | 11095 | MEMORANDUM AND/OR OPINION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/4/2020. 6/4/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO McCorvey Law LLC v. Errict RhettAttorney Lien Dispute(Doc. No. 8048)ANDLocks Law Firm v. Errict RhettAttorney Lien Dispute(Doc. No. 10769)(kp, ) (Entered: 06/04/2020) |
| 06/04/2020 | 11096 | ORDER THAT THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE MEMORANDUM OPINION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDER REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/4/2020. 6/4/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO McCorvey Law LLC v. Errict RhettAttorney Lien Dispute(Doc. No. 8048)ANDLocks Law Firm v. Errict RhettAttorney Lien Dispute(Doc. No. 10769)(kp, ) (Entered: 06/04/2020) |
| 06/06/2020 | 11097 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Robert L. Lavette, Jr.* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 06/06/2020) |
| 06/06/2020 | 11098 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 06/06/2020) |
| 06/11/2020 | 11100 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (B. Blades)* (KARATINOS, THEODORE) (Entered: 06/11/2020) |
| 06/22/2020 | 11101 | NOTICE by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION *Notice of Attorney's Lien* (Attachments: # 1 Certificate of Service Certificate of Service)(LANGFITT, DAVID) (Entered: 06/22/2020) |
| 06/22/2020 | 11102 | NOTICE by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION *Notice of Attorney's Lien* (Attachments: # 1 Certificate of |

| | | |
|---|---|---|
| | | Service)(LANGFITT, DAVID) (Entered: 06/22/2020) |
| 06/24/2020 | 11103 | NOTICE by EDDIE ANDERSON (Attachments: # 1 Petition to Establish Atty Lien) (DUGAN, JAMES) (Entered: 06/24/2020) |
| 06/25/2020 | 11104 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/25/2020. 6/26/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Zimmerman Reed v. George CumbyAttorney Lien Dispute(Doc. No. 6951)(kp, )) (Entered: 06/26/2020) |
| 06/26/2020 | 11105 | NOTICE by PLAINTIFF(S) (SOHN, BRADFORD) (Entered: 06/26/2020) |
| 06/29/2020 | 11106 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 06/29/2020) |
| 06/29/2020 | 11107 | NOTICE by PLAINTIFF(S) *of Attorney's Lien-Brent McClanahan and Diane M. McClanahan* (LUCKASEVIC, JASON) (Entered: 06/29/2020) |
| 06/29/2020 | 11108 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Jeff Gossett* (LOCKS, GENE) (Entered: 06/29/2020) |
| 07/01/2020 | 11110 | Notice Regarding Special Investigations by DAVID HOFFMAN, WENDELL E. PRITCHETT, JO-ANN M. VERRIER (jwl, ) (Entered: 07/01/2020) |
| 07/01/2020 | 11111 | CONSENT to Jurisdiction by US Magistrate Judge IN RE: STACEY BAILEY v. LOCKS LAW FIRM & GOLDBERG PERSKY & WHITE, P.C.; Attorneys Lien Dispute ECF No. 1515 and 584. (ems) (Entered: 07/02/2020) |
| 07/01/2020 | 11112 | CONSENT to Jurisdiction by US Magistrate Judge IN RE: BILLY JACKSON v. POPE MCGLAMRY, P.C.; Attorneys Lien Dispute ECF No. 7056. (ems) (Entered: 07/02/2020) |
| 07/06/2020 | 11113 | MANDATE of USCA as to 10606 Notice of Appeal filed by PLAINTIFF(S) THAT THE DISTRICT COURT'S ORDERS ENTERED ON APRIL 11, 2019 AND MAY 16, 2019 ARE AFFIRMED. ALL OF THE ABOVE IN ACCORDANCE WITH THE OPINION OF THIS COURT. COSTS TAXED AGAINST APPELLANTS. (ems) (Entered: 07/06/2020) |
| 07/06/2020 | 11114 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Aubrey Matthews* (LOCKS, GENE) (Entered: 07/06/2020) |
| 07/06/2020 | 11115 | BAP ADMINISTRATOR STATUS REPORT - 2nd QUARTER 2020 by BAP ADMINISTRATOR. (ems) (Entered: 07/07/2020) |
| 07/06/2020 | 11116 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 9 by CLAIMS ADMINISTRATOR. (ems) (Entered: 07/07/2020) |
| 07/06/2020 | 11117 | REPORT OF THE SPECIAL MASTERS by DAVID HOFFMAN, WENDELL E. PRITCHETT, JO-ANN M. VERRIER. (ems) (Entered: 07/07/2020) |
| 07/07/2020 | 11118 | Minute Entry for proceedings held before MAGISTRATE JUDGE DAVID R. STRAWBRIDGE: Attorney Lien Hearing held on 7/7/2020. Court Reporter: ESR. (ems) (Entered: 07/07/2020) |
| 07/09/2020 | 11119 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 07/09/2020) |

| 07/09/2020 | 11120 | NOTICE by PLAINTIFF(S) *Notice of Attorneys' Lien as to Antowain Smith* (Attachments: # 1 Exhibit)(MATHENY, MATTHEW) (Entered: 07/09/2020) |
| 07/13/2020 | 11121 | Emergency MOTION Direct Payment of Loan Resolution Amount (Bobby J. Hamilton) filed by THRIVEST SPECIALTY FUNDING, LLC.Memorandum of Law and Certificate of Service. (Attachments: # 1 Exhibit 1)(BUCKLEY, PETER) (Entered: 07/13/2020) |
| 07/13/2020 | 11122 | Emergency MOTION for Direct Payment of Loan Resolution Amount (Frederick J. Beasley) filed by THRIVEST SPECIALTY FUNDING, LLC.Memorandum of Law and Certificate of Service. (Attachments: # 1 Exhibit 1)(BUCKLEY, PETER) (Entered: 07/13/2020) |
| 07/13/2020 | 11123 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/10/2020. 7/13/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Locks Law Firm v. James CadileAttorney Lien Dispute(Doc. No. 10717))(kp, ) (Entered: 07/13/2020) |
| 07/13/2020 | 11124 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/10/2020. 7/13/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Locks Law Firm v. Kamal Salaam-ElAttorney Lien Dispute (Doc. No. 10802))(kp, ) (Entered: 07/13/2020) |
| 07/13/2020 | 11125 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/10/2020. 7/13/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (Locks Law Firm v. Jeff FaulknerAttorney Lien Dispute (Doc. No. 10708)(kp, ) (Entered: 07/13/2020) |
| 07/14/2020 | 11126 | APPLICATION/PETITION *FIFTH VERIFIED PETITION OF CLASS COUNSEL CHRISTOPHER A. SEEGER FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS' FEES AND COSTS* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/14/2020) |
| 07/14/2020 | 11127 | MOTION re 7151 Application/Petition,,,,,,,,,, *TO SUPPLEMENT PETITION FOR ADOPTION OF A SET-ASIDE FROM EACH MONETARY AWARD AND DERIVATIVE CLAIMANT AWARD* filed by PLAINTIFF(S).Supplemental Declaration. (Attachments: # 1 Declaration)(SEEGER, CHRISTOPHER) (Entered: 07/14/2020) |
| 07/15/2020 | 11128 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Limas Sweed* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 07/15/2020) |
| 07/17/2020 | 11129 | APPLICATION/PETITION *of Stephen J. Nolan for Removal from Service List* by PLAINTIFF(S). (LEH, MICHAEL) (Entered: 07/17/2020) |

| 07/21/2020 | 11130 | Notice of Attorneys Lien of *Shannon Taylor* filed by Acosta and Associates LLC.Certificate of Service.(ACOSTA, MICHAEL) Modified on 7/21/2020 (kp, ). (Entered: 07/21/2020) |
|---|---|---|
| 07/27/2020 | 11131 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 07/27/2020) |
| 07/27/2020 | 11132 | NOTICE by PLAINTIFF(S) *of Attorney's Lien-William Roberts* (LUCKASEVIC, JASON) (Entered: 07/27/2020) |
| 07/28/2020 | 11133 | RESPONSE in Opposition re 11127 MOTION re 7151 Application/Petition,,,,,,,,, *TO SUPPLEMENT PETITION FOR ADOPTION OF A SET-ASIDE FROM EACH MONETARY AWARD AND DERIVATIVE CLAIMANT AWARD* filed by PLAINTIFF(S). (SHIPP, JASON) (Entered: 07/28/2020) |
| 07/28/2020 | 11134 | Objections by PLAINTIFF(S) re 11126 Application/Petition *Opposition of Certain Class Members to Class Counsels Fifth Verified Petition for an Award of Post-Effective Date Common Benefit Attorneys Fees and Costs*. (LUBEL, LANCE) (Entered: 07/28/2020) |
| 07/28/2020 | 11135 | RESPONSE in Opposition re 11127 MOTION re 7151 Application/Petition,,,,,,,,, *TO SUPPLEMENT PETITION FOR ADOPTION OF A SET-ASIDE FROM EACH MONETARY AWARD AND DERIVATIVE CLAIMANT AWARD Supplemental Opposition of Lubel Voyles LLP and Certain Class Members to Class Counsels Motion to Supplement Petition for Adoption of a Set-Aside* filed by PLAINTIFF(S). (LUBEL, LANCE) (Entered: 07/28/2020) |
| 07/28/2020 | 11136 | RESPONSE in Opposition re 11127 MOTION re 7151 Application/Petition,,,,,,,,, *TO SUPPLEMENT PETITION FOR ADOPTION OF A SET-ASIDE FROM EACH MONETARY AWARD AND DERIVATIVE CLAIMANT AWARD* filed by PLAINTIFF(S). (LOCKS, GENE) (Entered: 07/28/2020) |
| 07/28/2020 | 11137 | Objections by PLAINTIFF(S) *Girardi Keese's Joinder in all Objections to Class Counsel's Motion to Supplement Petition for Adoption of a Set Aside from Each Monetary Award and Deprivative Claimant Award*. (GIRARDI, THOMAS) (Entered: 07/28/2020) |
| 07/28/2020 | 11138 | RESPONSE in Opposition re 11127 MOTION re 7151 Application/Petition,,,,,,,,, *TO SUPPLEMENT PETITION FOR ADOPTION OF A SET-ASIDE FROM EACH MONETARY AWARD AND DERIVATIVE CLAIMANT AWARD Filed by Langfitt Garner PLLC on behalf of Plainrtiffs* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A-D, # 2 Text of Proposed Order)(LANGFITT, DAVID) (Entered: 07/28/2020) |
| 07/28/2020 | 11139 | OPPOSITION OF THE PRO SE CLAIMANTSTO THE PETITION OF SEEGER WEISS TO BE PAID A 5% SET-ASIDE by MARY ANDRIE-BROOKS.CERTIFICATE OF SERVICE. (APPLIES TO CIVIL ACTION NO. 14-29) (kp, ) (kp, ) (Entered: 07/29/2020) |
| 07/29/2020 | 11140 | NOTICE by PLAINTIFF(S) re 11138 Response in Opposition to Motion, *of GOLDBERG, PERSKY & WHITE, P.C.s JOINDER IN RESPONSE OF LANGFITT GARNER PLLC IN OPPOSITION TO CLASS COUNSELS FIFTH FEE PETITION AND DECLARATION SEEKING A PERMANENT 5% SET-ASIDE* (SHIPP, JASON) (Entered: 07/29/2020) |
| 07/30/2020 | 11141 | NOTICE by PLAINTIFF(S) re 11138 Response in Opposition to Motion, 11135 Response in Opposition to Motion, 11136 Response in Opposition to Motion, *Pope McGlamry's Notice of Joinder in the Responses of Opposition Filed By Langfitt Garner PLLC, The Locks Law Firm, and Lubel Voyles LLP to Class Counsel's Fifth Fee* |

| | | |
|---|---|---|
| | | *Petition and Declaration Seeking a Permanent 5% Set Aside* (MCGLAMRY, MICHAEL) (Entered: 07/30/2020) |
| 07/30/2020 | 11142 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien by Smith and Stallworth (Mark Higgs) Attachments: Petition to Establish Attorney's Lien by Smith and Stallworth (Mark Higgs)* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien by Mark Stallworth (Mark Higgs))(STALLWORTH, MARK) (Entered: 07/30/2020) |
| 07/30/2020 | 11143 | NOTICE by PLAINTIFF(S) re 11134 Objections *Proposed Order to Opposition of Certain Class Members to Class Counsels Fifth Verified Petition for an Award of Post-Effective Date Common Benefit Attorneys Fees and Costs* (LUBEL, LANCE) (Entered: 07/30/2020) |
| 07/30/2020 | 11144 | NOTICE by PLAINTIFF(S) re 11135 Response in Opposition to Motion, *Proposed Order to Supplemental Opposition of Lubel Voyles LLP and Certain Class Members to Class Counsels Motion to Supplement Petition for Adoption of a Set-Aside* (LUBEL, LANCE) (Entered: 07/30/2020) |
| 07/31/2020 | 11145 | MEMORANDUM AND/OR OPINION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/31/2020. 7/31/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Locks Law Firm v. Tamra Alexander Attorney Lien Dispute(Doc. No. 10684))(kp, ) (Entered: 07/31/2020) |
| 07/31/2020 | 11146 | ORDER THAT THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE MEMORANDUM OPINION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/31/2020. 7/31/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Locks Law Firm v. Tamra AlexanderAttorney Lien Dispute(Doc. No. 10684))(kp, ) (Entered: 07/31/2020) |
| 08/03/2020 | 11147 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/03/2020) |
| 08/03/2020 | 11148 | NOTICE by PLAINTIFF(S) *to file Petition to Establish Attorneys Lien--Gregory Tolver, Jr.* (LUCKASEVIC, JASON) (Entered: 08/03/2020) |
| 08/04/2020 | 11149 | NOTICE of Change of Address by LEE M. EPSTEIN(EPSTEIN, LEE) (Entered: 08/04/2020) |
| 08/05/2020 | 11150 | ORDER adopting Report and Recommendations as to 11044 REPORT AND RECOMMENDATIONS; THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS FOR ATTORNEYS FEES AND COSTS IN ACCORDANCE WITH THE PROVISIONS OF THE SETTLEMENT AGREEMENT.... SIGNED BY HONORABLE ANITA B. BRODY ON 8/5/20.8/5/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 08/05/2020) |
| 08/05/2020 | 11151 | ORDER denying 11041 MOTION FOR RECONSIDERATION. SIGNED BY HONORABLE ANITA B. BRODY ON 8/5/20.8/5/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 08/05/2020) |
| 08/05/2020 | 11152 | EXPLANATION AND ORDER denying 11121 Emergency Motions for Direct Payment ; denying 11122 Emergency Motions for Direct Payment. SIGNED BY HONORABLE ANITA B. BRODY ON 8/5/20.8/5/20 ENTERED AND COPIES E-MAILED.(jwl, ) Modified on 8/5/2020 (jwl, ). (Entered: 08/05/2020) |
| 08/05/2020 | 11153 | CONSENT to Jurisdiction by US Magistrate Judge IN RE: Donald Westbrook v. Zimmerman Reed LLP (Attorneys Lien Dispute ECF No. 6985).(kp, ) (Entered: |

| | | 08/06/2020 |
|---|---|---|
| 08/07/2020 | 11154 | RESPONSE in Support re 11127 MOTION re 7151 Application/Petition,,,,,,,,,, *TO SUPPLEMENT PETITION FOR ADOPTION OF A SET-ASIDE FROM EACH MONETARY AWARD AND DERIVATIVE CLAIMANT AWARD* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 08/07/2020) |
| 08/07/2020 | 11155 | Objections by PLAINTIFF(S) *CLASS COUNSELS REPLY TO OPPOSITIONS TO FIFTH VERIFIED PETITION FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS FEES AND COSTS.* (SEEGER, CHRISTOPHER) (Entered: 08/07/2020) |
| 08/07/2020 | 11156 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien by Smith and Stallworth (Rodrick Rutledge) Attachment: Petition to Establish Attorney's Lien by Smith and Stallworth (Rodrick Rutledge)* (Attachments: # 1 Petition to Establish Attorney's Lien by Mark Stallworth (Rodrick Rutledge))(STALLWORTH, MARK) (Entered: 08/07/2020) |
| 08/11/2020 | 11157 | RESPONSE in Opposition re 11127 MOTION re 7151 Application/Petition,,,,,,,,,, *TO SUPPLEMENT PETITION FOR ADOPTION OF A SET-ASIDE FROM EACH MONETARY AWARD AND DERIVATIVE CLAIMANT AWARD* filed by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(LOCKS, GENE) (Entered: 08/11/2020) |
| 08/11/2020 | 11158 | ORDER THAT THE FOLLOWING MOTIONS TO WITHDRAW AS COUNSEL BY ZIMMERMAN REED LLP ARE DENIED WITHOUT PREJUDICE.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/11/2020.8/12/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO CASES 12-cv-2219, 12-cv-4185, 13-cv-3891)(kp, ) (Entered: 08/12/2020) |
| 08/12/2020 | 11159 | ORDER THAT BASED ON A REVIEW OF THE SPECIAL MASTER'S RULING, A REVIEW OF THE APPELLANT'S OBJECTION, AND A REVIEW OF THE NFL'S OPPOSITION TO THE APPELLANT'S OBJECTION, THE SPECIAL MASTER'S RULING IS APPROVED AND ADOPTED. ACCORDINGLY, APPELLANT'S OBJECTION IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/11/2020. 8/12/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(RELATES TO:SPID 950004393)(kp, ) Modified on 8/12/2020 (jwl, ). DOCKETED IN ERROR. (Entered: 08/12/2020) |
| 08/12/2020 | 11160 | ORDER THAT BASED ON A REVIEW OF THE SPECIAL MASTER'S RULING, A REVIEW OF THE APPELLANT'S OBJECTION, AND A REVIEW OF THE NFL'S OPPOSITION TO THE APPELLANT'S OBJECTION, THE SPECIAL MASTER'S RULING IS APPROVED AND ADOPTED. ACCORDINGLY, APPELLANT'S OBJECTION IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/11/2020. 8/12/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(RELATES TO:SPID 950013777)(kp, ) Modified on 8/12/2020 (jwl, ). DOCKETED IN ERROR. (Entered: 08/12/2020) |
| 08/12/2020 | 11161 | REPLY to Response to Motion re 11127 MOTION re 7151 Application/Petition,,,,,,,,, *TO SUPPLEMENT PETITION FOR ADOPTION OF A SET-ASIDE FROM EACH MONETARY AWARD AND DERIVATIVE CLAIMANT AWARD* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 08/12/2020) |
| 08/14/2020 | 11162 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Barney Chavous* (LOCKS, GENE) (Entered: 08/14/2020) |
| 08/14/2020 | 11163 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Glen Steele* (LOCKS, GENE) (Entered: 08/14/2020) |

**-731-**

| 08/24/2020 | 11164 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Jermaine Phillips* (LOCKS, GENE) (Entered: 08/24/2020) |
| 08/24/2020 | 11165 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 8/24/2020. 8/24/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Pope McGlamry, P.C. v. Billy JacksonAttorney Lien Dispute(Doc. No. 7056)(kp, ) (Entered: 08/24/2020) |
| 08/25/2020 | 11166 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/25/2020) |
| 08/25/2020 | 11167 | NOTICE by PLAINTIFF(S) *to file Petition to Establish Attorneys Lien--Alonzo Mayes* (LUCKASEVIC, JASON) (Entered: 08/25/2020) |
| 08/25/2020 | 11168 | NOTICE of Appearance by STEVEN N. HERMAN on behalf of KEVIN HENRY, Najeh Davenport (HERMAN, STEVEN) (Entered: 08/25/2020) |
| 08/25/2020 | 11169 | MOTION for Relief filed by Najeh Davenport, KEVIN HENRY.Memorandum, Certificate of Service. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order) (HERMAN, STEVEN) (Entered: 08/25/2020) |
| 09/01/2020 | 11170 | Transcript of Proceedings held on 7/7/2020, before Judge Strawbridge. Court Reporter/Transcriber ESR. (kp, ) (Entered: 09/01/2020) |
| 09/01/2020 | 11171 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/1/2020. 9/1/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Goldberg, Persky & White, P.C. v. Stacey Bailey Attorney Lien Dispute (Doc. No. 7544) AND Locks Law Firm v. Stacey Bailey Attorney Lien Dispute (Doc. No. 10745))(kp, ) (Entered: 09/01/2020) |
| 09/02/2020 | 11172 | MOTION for Extension of Time to File Response/Reply as to 11169 MOTION for Relief filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(BIRENBOIM, BRUCE) (Entered: 09/02/2020) |
| 09/02/2020 | 11173 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 09/02/2020) |
| 09/02/2020 | 11174 | NOTICE by PLAINTIFF(S) *to file Petition to Establish Attorneys Lien--Juan Roque and Jennifer Roque* (LUCKASEVIC, JASON) (Entered: 09/02/2020) |
| 09/02/2020 | 11175 | CONSENT to Jurisdiction by US Magistrate Judge re: ALVIN ANDREWS v. LOCKS LAW FIRM Attorneys Lien Dispute ECF No. 10821.. (kp, ) (Entered: 09/03/2020) |
| 09/02/2020 | 11178 | ORDER THAT 11172 MOTION FOR EXTENSION OF TIME TO FILE RESPONSE/REPLY IS GRANTED. DEFENDANTS MUST FILE THEIR RESPONSE TO THE MOTION FOR RELIEF ON OR BEFORE 10/8/2020. SIGNED BY HONORABLE ANITA B. BRODY ON 9/2/2020.9/3/2020 ENTERED AND |

| | | COPIES E-MAILED TO LIAISON COUNSEL. (RELATES TO ALL ACTIONS)(kp, ) (Entered: 09/03/2020) |
|---|---|---|
| 09/03/2020 | 11176 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 09/03/2020) |
| 09/03/2020 | 11177 | NOTICE by PLAINTIFF(S) *to file Petition to Establish Attorneys Lien--Melvin Renfro and Elizabeth Renfro* (LUCKASEVIC, JASON) (Entered: 09/03/2020) |
| 09/04/2020 | 11179 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Gene R. Atkins, Sr.* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 09/04/2020) |
| 09/04/2020 | 11180 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 09/04/2020) |
| 09/04/2020 | 11181 | Consent MOTION for Attorney Fees filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, JEFF ROHRER.Certificate of Service.(MOLO, STEVEN) (Entered: 09/04/2020) |
| 09/13/2020 | 11182 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to David Frye* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 09/13/2020) |
| 09/13/2020 | 11183 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 09/13/2020) |
| 09/14/2020 | 11184 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Roderick Jones and Carla Jones* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 09/14/2020) |
| 09/14/2020 | 11185 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 09/14/2020) |
| 09/14/2020 | 11186 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Ellis Wyms* (MCGLAMRY, MICHAEL) (Entered: 09/14/2020) |
| 09/15/2020 | 11187 | APPLICATION/PETITION *CLASS COUNSELS SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF PENDING VERIFIED PETITIONS FOR AWARDS OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS FEES AND COSTS* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 09/15/2020) |
| 09/16/2020 | 11188 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Mijoshski Evans* (LOCKS, GENE) (Entered: 09/16/2020) |
| 09/16/2020 | 11189 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Michael Gruttadauria* (LOCKS, GENE) (Entered: 09/16/2020) |
| 09/18/2020 | 11190 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE GRANTED.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/18/2020. 9/18/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (Attachments # 1 NOTICE). (APPLIES TO: Shenaq PC v. Rashod KentAttorney Lien Dispute(Doc. No. 10674)ANDHoward and Associates, P.A. v. Roshad KentAttorney Lien Dispute(Doc. No. 11049-11)) (kp, ) (Entered: 09/18/2020) |
| 09/23/2020 | 11192 | CONSENT to Jurisdiction by US Magistrate Judge IN RE: BILLY SMITH v. LOCKS LAW FIRM Attorneys Lien Dispute ECF No. 10704.. (kp, ) (Entered: 09/29/2020) |

| 09/25/2020 | 11191 | NOTICE of Appearance by EZRA B. MARCUS on behalf of Najeh Davenport, KEVIN HENRY (MARCUS, EZRA) (Entered: 09/25/2020) |
| 09/28/2020 | 11193 | REPORT AND RECOMMENDATION THAT THE CLAIMS ADMINISTRATOR BE ORDERED TO DESIGNATE THE FUNDS WITHHELD FOR ATTORNEY'S FEE AND COSTS AS OUTLINED HEREIN. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/28/2020. (Attachments: # 1 Notice) 9/29/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Howard and Associates, P.A. v. Jessie SmallAttorney Lien Dispute(Doc. No. 10920) (kp, ) (Entered: 09/29/2020) |
| 09/29/2020 | 11194 | NOTICE of Appearance by CYRIL V. SMITH on behalf of Najeh Davenport, KEVIN HENRY (SMITH, CYRIL) (Entered: 09/29/2020) |
| 09/30/2020 | 11195 | Objections by PLAINTIFF(S) re 11187 Application/Petition *RESPONSE OF CERTAIN CLASS MEMBERS TO CLASS COUNSELS SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS FEES AND COSTS.* (LUBEL, LANCE) (Entered: 09/30/2020) |
| 10/01/2020 | 11196 | USCA FOR THE THIRD CIRCUIT JUDGMENT AND ORDER THAT THE DISTRICT COURT'S 3/6/2019 JUDGMENT IS HEREBY AFFIRMED. COSTS TO BE TAXED AGAINST APPELLANT IN 19-1760/CROSS-APPELLEE IN 19/1771. ALL OF THE ABOVE IN ACCORDANCE WITH THE OPINION OF THIS COURT. (kp, ) (Entered: 10/01/2020) |
| 10/01/2020 | 11197 | BAP ADMINISTRATOR STATUS REPORT 3rd QUARTER 2020 by BAP ADMINISTRATOR. (kp, ) (Entered: 10/02/2020) |
| 10/01/2020 | 11198 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 10 by CLAIMS ADMINISTRATOR. (kp, ) (Entered: 10/02/2020) |
| 10/01/2020 | 11199 | REPORT OF THE SPECIAL MASTERS by DAVID HOFFMAN, RON PRITCHARD, JO-ANN M. VERRIER. (kp, ) (Entered: 10/02/2020) |
| 10/05/2020 | 11200 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 10/05/2020) |
| 10/05/2020 | 11201 | NOTICE by PLAINTIFF(S) *to file Petition to Establish Attorneys Lien--Mark Gastineau and JoAnn Gastineau* (LUCKASEVIC, JASON) (Entered: 10/05/2020) |
| 10/06/2020 | 11202 | NOTICE of Withdrawal of Appearance by MATTHEW C. MATHENY on behalf of PLAINTIFF(S)(MATHENY, MATTHEW) (Entered: 10/06/2020) |
| 10/06/2020 | 11203 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Michael Pitts* (LOCKS, GENE) (Entered: 10/06/2020) |
| 10/08/2020 | 11204 | RESPONSE in Opposition re 11169 MOTION for Relief filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Declaration of Scott Richard Millis, PhD, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3-A, # 5 Exhibit 3-B, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, # 15 Exhibit 13, # 16 Exhibit 14, # 17 Exhibit 15, # 18 Exhibit 16, # 19 Exhibit 17, # 20 Exhibit 18, # 21 Exhibit 19, # 22 Exhibit 20, # 23 Exhibit 21, # 24 Text of Proposed Order)(KARP, BRAD) (Entered: 10/08/2020) |

| | | |
|---|---|---|
| 10/08/2020 | 11205 | RESPONSE to Motion re 11169 MOTION for Relief *Under Article XXVII of the Settlement Agreement Or From Relief From Judgment* filed by PLAINTIFF(S). (Attachments: # 1 Declaration of John Keilp)(SEEGER, CHRISTOPHER) (Entered: 10/08/2020) |
| 10/09/2020 | 11206 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 10/09/2020) |
| 10/09/2020 | 11207 | NOTICE by PLAINTIFF(S) *to file Petition to Establish Attorney--Roosevelt Potts and Tenisha Pottss Lien--* (LUCKASEVIC, JASON) (Entered: 10/09/2020) |
| 10/13/2020 | 11208 | Consent MOTION Leave to File Reply Brief filed by Najeh Davenport, KEVIN HENRY.. (Attachments: # 1 Text of Proposed Order)(SMITH, CYRIL) (Entered: 10/13/2020) |
| 10/13/2020 | 11209 | Objections by PLAINTIFF(S) *To Magistrate Judges Report And Recommendation Regarding Discharge Of Attorney Lien By Howard And Associates, P.A.*. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3)(SHENAQ, AMIR) (Entered: 10/13/2020) |
| 10/13/2020 | 11210 | ORDER THAT THE MOTION 11208 FOR LEAVE TO FILE A REPLY BRIEF IN SUPPORT IS GRANTED. MOVANTS MUST FILE THEIR REPLY BRIEF ON OR BEFORE 11/2/2020.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/13/2020.10/13/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUSNEL. (APPLIES TO ALL ACTIONS)(kp, ) (Entered: 10/13/2020) |
| 10/15/2020 | 11211 | NOTICE by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION re 7689 Notice (Other) *Notice of Withdrawal of Lien* (GIDDENS, JOHN) (Entered: 10/15/2020) |
| 10/19/2020 | 11212 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Jamal Lewis* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 10/19/2020) |
| 10/19/2020 | 11213 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 10/19/2020) |
| 10/20/2020 | 11214 | Memorandum in Support re 11193 REPORT AND RECOMMENDATIONS re 2 Certified Copy of Order, filed by TIM HOWARD HOWARD AND ASSOCIATES ATTORNEYS AT LAW, P.A.. (HOWARD, PHILLIP) (Entered: 10/20/2020) |
| 10/26/2020 | 11215 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Lorenzo Booker* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 10/26/2020) |
| 10/26/2020 | 11216 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Gerry Ellis* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 10/26/2020) |
| 10/26/2020 | 11217 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION,THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/26/2020. 10/26/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Locks Law Firm v. Alvin AndrewsAttorney Lien Dispute(Doc. No. 10821))(kp, ) (Entered: 10/26/2020) |
| 10/27/2020 | 11218 | Objections by ROELL PRESTON *to the Special Master's Ruling May 27, 2020*. (Attachments: # 1 Exhibit Cover Letter to Judge Brody, # 2 Exhibit MAF Physician Resume, # 3 Exhibit Player's Second Appeal, # 4 Exhibit Player's Third Appeal, # 5 |

| | | |
|---|---|---|
| | | Exhibit Claims Administrator's Memorandum, # 6 Exhibit Diagnostic Criteria Comparison Chart, # 7 Exhibit Objection to NFL Parties "new evidence" on Opposition Statement to Player's Appeal, # 8 Exhibit Special Master's Ruling on Appeal, # 9 Exhibit Neurological Examination (2010)(2011), # 10 Exhibit MAF Physician Letter Certification of Diagnosis (2018), # 11 Exhibit MAF Physician Diagnosing Certification Form)(MORALES, DERRICK) (Entered: 10/27/2020) |
| 10/30/2020 | 11219 | CONSENT to Jurisdiction by US Magistrate Judge re: ARCHIE REESE v. JOHN D. GIDDENS,P.A. (Attorneys Lien Dispute ECF No. 7689). (kp, ) (Entered: 10/30/2020) |
| 11/02/2020 | 11220 | NOTICE of Change of Address by MICHAEL D. HAUSFELD(HAUSFELD, MICHAEL) (Entered: 11/02/2020) |
| 11/02/2020 | 11221 | NOTICE of Change of Address by RICHARD S. LEWIS(LEWIS, RICHARD) (Entered: 11/02/2020) |
| 11/02/2020 | 11222 | REPLY to Response to Motion re 11169 MOTION for Relief filed by Najeh Davenport, KEVIN HENRY. (Attachments: # 1 Exhibit A -- Declaration of Jennifer J. Manly, Ph.D., # 2 Jennifer J. Manly CV, # 3 Exhibit B -- Declaration of Kirk R. Daffner, MD, # 4 Kirk R. Daffner CV, # 5 Exhibit C -- Declaration of Justin R. Wyatt, # 6 Exhibit)(MARCUS, EZRA) (Entered: 11/02/2020) |
| 11/02/2020 | 11223 | Consent MOTION to Seal Document filed by Najeh Davenport, KEVIN HENRY.Memorandum, Certificate of Service. (Attachments: # 1 Text of Proposed Order)(MARCUS, EZRA) (Entered: 11/02/2020) |
| 11/03/2020 | 11224 | ORDER THAT THE 11223 MOTION FOR LEAVE TO FILE UNDER SEAL IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 11/3/2020. 11/3/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS)(kp, ) (Entered: 11/03/2020) |
| 11/04/2020 | 11225 | EXHIBITS 1-10 to the 11222 Declaration of Justin R. Wyatt, Esq. (APPLIES TO ALL ACTIONS) (FILED UNDER SEAL)(kp, ) (Additional attachment(s) added on 11/5/2020: # 1 EX 2, # 2 EX 3, # 3 EX 4, # 4 EX 5, # 5 EX 6, # 6 EX 7, # 7 EX 8, # 8 EX 9, # 9 EX 10) (kp, ). (Entered: 11/05/2020) |
| 11/09/2020 | 11226 | MOTION for Leave to File *Memorandum of Interested Black Settlement Class Members in Support of the Davenport and Henry Motion* filed by PLAINTIFF(S).Memorandum Certificate of Service. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(LANGFITT, DAVID) (Entered: 11/09/2020) |
| 11/10/2020 | 11227 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/10/2020. 11/10/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO JOHN D. GIDDENS PA v ARCHIE REESE ATTORNEY LIEN DISPUTE DOC NO. 7689)(kp, ) (Entered: 11/10/2020) |
| 11/12/2020 | 11228 | ORDER THAT RETIRED PLAYER P.R. MUST REFILE HIS OBJECTION TO THE SPECIAL MASTERS MAY, 27, 2020 RULING 11218 ON THE NFL CONCUSSION SETTLEMENT PORTAL ON OR BEFORE NOVEMBER 19, 2020.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/12/20. 11/12/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 11/12/2020) |

| 11/13/2020 | 11229 | REPORT AND RECOMMENDATION THAT THE CLAIMS ADMINISTRATOR BE ORDERED TO DESIGNATE THE FUNDS WITHHELD FOR ATTORNEY'S FEES AND COSTS AS OUTLINED HEREIN.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/13/2020. (Attachments: # 1 NOTICE) 11/13/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Langfitt Garner PLLC v. Michael DownsAttorneys Lien Dispute(Doc. No. 11101)(kp, ) (Entered: 11/13/2020) |
|---|---|---|
| 11/13/2020 | 11230 | ORDER THAT THE 11181 MOTION FOR ATTORNEY FEES IS GRANTED AND THE FANECA OBJECTORS' COUNSEL ARE AWARDED ATTORNEYS' FEES IN THE AMOUNT OF $2,100,000.00.IT IS FURTHER ORDERED THE ADMINISTRATOR OF THE ATTORNEYS' FEES QUALIFIED SETTLEMENT FUND SHALL PAY COUNSEL FOR THE FANECA OBJECTORS THE AMOUNT OF $2,100,000.00 from the AFQSF. IT IS FURTHER ORDRERED THAT MOLOLAMKEN LLP AND HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER SHALL COOPERATE WITH THE ADMINISTRATOR OF THE AFQSF TO EFFECTUATE THIS ORDER. SIGNED BY HONORABLE ANITA B. BRODY ON 11/13/2020.11/13/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO CIVIL ACTION NO. 2:14-cv-00029)(kp, ) (Entered: 11/13/2020) |
| 11/13/2020 | 11231 | CONSENT to Jurisdiction by US Magistrate Judge IN RE: ALVIN HARPER v. ATTORNEY DAVID BUCKLEY, PLLC, and FARRISE LAW FIRM, PLLC Lien IDs: 85 and 450, ECF Nos. 7569 and 7513) (kp, ) (Entered: 11/13/2020) |
| 11/17/2020 | 11232 | Letter Request for Oral Argument on Mr. Henrys and Mr. Davenports Motion for Relief 11169 by Najeh Davenport, KEVIN HENRY(MARCUS, EZRA) Modified on 11/23/2020 (kp, ). (Entered: 11/17/2020) |
| 11/18/2020 | 11233 | NOTICE of Appearance by DERRICK C. MORALES on behalf of ROELL PRESTON with Certificate of Service(MORALES, DERRICK) (Entered: 11/18/2020) |
| 11/18/2020 | 11234 | NOTICE by ROELL PRESTON re 11228 Order, *Notice of Filing via NFL Concussion Portal* (MORALES, DERRICK) (Entered: 11/18/2020) |
| 11/20/2020 | 11235 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 11/20/2020) |
| 11/20/2020 | 11236 | NOTICE by PLAINTIFF(S) *to file Petition to Establish Attorneys Lien--Markeysia Jones and Sylvia Jones* (LUCKASEVIC, JASON) (Entered: 11/20/2020) |
| 11/20/2020 | 11237 | ORDER denying 11169 Motion for Relief Under Article XXVII of the Settlement Agreement or for Relief from Judgment. SIGNED BY HONORABLE ANITA B. BRODY ON 11/20/20.11/20/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 11/20/2020) |
| 11/23/2020 | 11238 | ORDER denying 11226 MOTION FOR LEAVE TO FILE A MEMORANDUM IN SUPPORT OF THE MOTION FOR RELIEF UNDER ARTICLE XXVII OF THE SETTLEMENT AGREEMENT. SIGNED BY HONORABLE ANITA B. BRODY ON 11/23/20.11/23/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 11/23/2020) |
| 11/24/2020 | 11239 | NOTICE OF APPEAL as to 11237 Order on Motion for Miscellaneous Relief by Najeh Davenport, KEVIN HENRY. Filing fee $ 505. Copies to Judge, Clerk USCA, Appeals Clerk and (MARCUS, EZRA) (Entered: 11/24/2020) |
| 11/30/2020 | 11240 | EXPLANATION AND ORDER THAT THE SECOND VERIFIED PETITION 10374 , THIRD VERIFIED PETITION 10767 , AND FOURTH VERIFIED PETITION 10986 ARE GRANTED IN PART.. SIGNED BY HONORABLE ANITA B. BRODY ON |

| | | |
|---|---|---|
| | | 11/30/20. 11/30/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Main Document 11240 replaced on 11/30/2020) (jwl, ). (Entered: 11/30/2020) |
| 12/03/2020 | 11241 | NOTICE of Docketing Record on Appeal from USCA re 11239 Notice of Appeal filed by Najeh Davenport, KEVIN HENRY. USCA Case Number 20-3401. (kp, ) (Entered: 12/03/2020) |
| 12/07/2020 | 11242 | ORDER THAT THE REPORT AND RECOMMENDATION (DOC. NO. 11229) IS ADOPTED. LANGFITT GARNER PLLC IS AUTHORIZED TO DISBURSE FROM ITS ESCROW ACCOUNT THE WITHHELD FUNDS FOR ATTORNEY'S FEES AND COSTS FROM MR. DOWNS'S AWARD, IN ACCORDANCE WITH THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION, AND THE 5% PORTION FROM MR. DOWNS'S AWARD THAT IS CURRENTLY IN THE 5% HOLDBACK FUND SHALL BE RELEASED IN ACCORDANCE WITH FUTURE ORDERS OF THE COURT. SIGNED BY HONORABLE ANITA B. BRODY ON 12/5/2020. 12/7/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO DOC. NO. 11101) (ems) (Entered: 12/07/2020) |
| 12/08/2020 | 11243 | NOTICE of Withdrawal of Appearance by DOUGLAS E. ROBERTS on behalf of ANAPOL WEISS, P.C. (Attachments: # 1 Certificate of Service Certificate of Service) (ROBERTS, DOUGLAS) (Entered: 12/08/2020) |
| 12/09/2020 | 11244 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Johnnie Mitchell* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 12/09/2020) |
| 12/10/2020 | 11245 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 12/10/2020) |
| 12/10/2020 | 11246 | NOTICE by PLAINTIFF(S) *to file Petition to Establish Attorneys Lien--Marion Peat and Jana C. Dolinsek-Peat* (LUCKASEVIC, JASON) (Entered: 12/10/2020) |
| 12/10/2020 | 11247 | NOTICE by PLAINTIFF(S) re 11244 Notice (Other) *Amended Attorney's Lien regarding Johnnie Mitchell* (Attachments: # 1 Exhibit Amended Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 12/10/2020) |
| 12/11/2020 | 11248 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS, LESS THE AMOUNT AGREED UPON BY THE PARTIES AS DUE TO FARRISE IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/11/2020. 12/11/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL (APPLIES TO David Buckley, PLLC v. Alvin HarperAttorney Lien Dispute(Doc. Nos. 7390 & 7569)ANDFarrise Law Firm v. Alvin HarperAttorney Lien Dispute(Doc. No. 7513).(kp, ) (Entered: 12/11/2020) |
| 12/15/2020 | 11249 | ORDER RE: WAIVER OF APPEAL RELATING TO ALVIN HARPER V. ATTORNEY DAVID BUCKLEY, PLLC, AND FARRISE LAW FIRM, PLLC ATTORNEY LIEN DISPUTE (LIEN ID: 85 AND 450). SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/14/2020. 12/15/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (kp, ) (Entered: 12/15/2020) |
| 12/16/2020 | | Filing Fee for NOTICE OF APPEAL 11239 by Najeh Davenport, KEVIN HENRY. (Filing Fee $505, receipt number 0313-14786430). (MARCUS, EZRA) Modified on 12/16/2020 (kp, ). (Entered: 12/16/2020) |

| 12/16/2020 | 11250 | CONSENT to Jurisdiction by US Magistrate Judge IN RE: KERWIN ELLIS v. LOCKS LAW FIRM LIEN ID 01513. (kp, ) (Entered: 12/16/2020) |
|---|---|---|
| 12/16/2020 | 11251 | ORDER THAT THE CLAIMS ADMINISTRATOR DISBURSE THE FUNDS SET ASIDE FOR FARRISE'S ATTORNEYS' FEES AND/OR COSTS ARISING FROM REPRESENTATION OF SETTLEMENT CLASS MEMBER CORY FLEMING IN ACCORDANCE WITH THE WRITTEN AGREEMENT OF THER PARTIES. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/16/2020. 12/16/2020 ENTERED AND COPIES E-MAILED. (APPLIES TO Farrise Law Firm, P.C. v. Cory FlemingAttorney Lien Dispute(Doc. No. 8469) ANDRobins Cloud, LLP v. Cory FlemingAttorney Lien Dispute(Doc. No. 7927)(kp, ) (Entered: 12/16/2020) |
| 12/16/2020 | 11252 | ORDER THAT THE CLAIMS ADMINISTRATOR DISBURSE THE FUNDS SET ASIDE FOR FARRISE'S ATTORNEYS' FEES AND/OR COSTS ARISING FROM REPRESENTATION OF SETTLEMENT CLASS MEMBER JAMES BROWN IN ACCORDANCE WITH THE WRITTEN AGREEMENT OF THER PARTIES. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/16/2020. 12/16/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Farrise Law Firm, P.C. v. James BrownAttorney Lien Dispute(Doc. No. 7610) ANDWeisberg & Associates v. James BrownAttorney Lien Dispute(Doc. No. 7887) (Entered: 12/16/2020) |
| 12/16/2020 | 11253 | ORDER THAT THE CLAIMS ADMINISTRATOR DISBURSE THE FUNDS SET ASIDE FOR FARRISE'S ATTORNEYS' FEES AND/OR COSTS ARISING FROM REPRESENTATION OF SETTLEMENT CLASS MEMBER ALVIN HARPER IN ACCORDANCE WITH THE WRITTEN AGREEMENT OF THER PARTIES. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/16/2020. 12/16/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO David Buckley, PLLC v. Alvin HarperAttorney Lien Dispute(Doc. Nos. 7390 & 7569)ANDFarrise Law Firm v. Alvin HarperAttorney Lien Dispute(Doc. No. 7513)) (Entered: 12/16/2020) |
| 12/18/2020 | 11254 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Byron Hunt* (LOCKS, GENE) (Entered: 12/18/2020) |
| 12/18/2020 | 11255 | ORDER THAT THE SETTLEMENT CLASS MEMBERS' REVISED OBJECTION TO SPECIAL MASTERS' 5/14/2020 POST-INVESTIGATION STATEMENT OF FINDING REGARDING CLAIMS RELYING ON TESTING BY THE NEUROPSYCHIATIC INSTITUTE (DOC NO. 227265) IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 12/17/2020. 12/18/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO SPID Nos. 900000088; 900001323; 100001247; :100001280; 100001857; 100002848; :100004343; 100004799; 100005171; :100006463; 100006888; 900010961; :100008941; 100009267; 950001121; :100009733; 100010024; 950001124; :100013165; 100013279; 100013618; :100014206; 100014352; 100014842; :100014957; 100015113; 100016009; :950000158; 100016602; 110034435; :100016770; 100017069)(kp, ) (Entered: 12/18/2020) |
| 12/18/2020 | 11256 | NOTICE by PLAINTIFF(S) *(Love) Notice of Attorney's Lien* (KARATINOS, THEODORE) (Entered: 12/18/2020) |
| 12/18/2020 | 11257 | NOTICE by ROELL PRESTON *Urgent Request for Clarification* (Attachments: # 1 Exhibit Order via ECF, # 2 Exhibit Order via Email)(MORALES, DERRICK) (Entered: 12/18/2020) |
| 12/21/2020 | 11258 | ORDER THAT 9807 ANAPOL WEISS'S MOTION TO COMPEL PAYMENT OF THE COMMON BENEFIT COSTS INCURRED BY CLASS COUNSEL AND THE |

| | | ESTABLISHMENT OF THE EDUCATIONAL FUND IS DENIED AS MOOT.. SIGNED BY HONORABLE ANITA B. BRODY ON 12/21/2020.12/21/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS)(kp, ) (Entered: 12/21/2020) |
|---|---|---|
| 12/28/2020 | 11259 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Dwayne Rudd* (LANGFITT, DAVID) (Entered: 12/28/2020) |
| 12/28/2020 | 11260 | NOTICE by Langfitt Garner PLLC *of Attorney's Lien Regarding Stacey Bailey* (LANGFITT, DAVID) (Entered: 12/28/2020) |
| 12/28/2020 | 11261 | ORDER THAT RETIRED PLAYER R.P.'S REQUEST FOR CLARIFICATION AND RELIEF (DOC. NO 11257) IS MARKED AS RESOLVED, ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 12/28/2020. 12/28/2020 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (ems) (Entered: 12/28/2020) |
| 01/04/2021 | 11262 | CONSENT to Jurisdiction by US Magistrate Judge IN RE: William Perry v. Neurocognitive Football Lawyers PLLC Attorneys Lien Dispute ECF No. 10968. (kp, ) (Entered: 01/05/2021) |
| 01/08/2021 | 11263 | NOTICE by ROELL PRESTON re 11261 Order *NFL Portal Website Shutdown* (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(MORALES, DERRICK) (Entered: 01/08/2021) |
| 01/11/2021 | 11264 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (Ezra Johnson)* (KARATINOS, THEODORE) (Entered: 01/11/2021) |
| 01/14/2021 | 11265 | MEMORANDUM AND/OR OPINION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/14/2021. 1/14/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Locks Law Firm v. Billy Ray Smith, Jr., Attorney Lien Dispute (Doc. No. 10704))(kp, ) (Main Document 11265 replaced on 1/21/2021) (kp, ). (Main Document 11265 replaced on 1/22/2021) (nd, ). (Entered: 01/14/2021) |
| 01/14/2021 | 11266 | ORDER THAT THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE MEMORANDUM OPINION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/14/2021. 1/14/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(APPLIES TO Locks Law Firm v. Billy Ray Smith, Jr.Attorney Lien Dispute(Doc. No. 10704)(kp, ) (Main Document 11266 replaced on 1/21/2021) (kp, ). (Main Document 11266 replaced on 1/22/2021) (nd, ). (Entered: 01/14/2021) |
| 01/14/2021 | 11267 | NOTICE of Withdrawal of Appearance by MEGAN S. MCKOY on behalf of Najeh Davenport, KEVIN HENRY(MCKOY, MEGAN) (Entered: 01/14/2021) |
| 01/15/2021 | 11268 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Wade Manning* (LOCKS, GENE) (Entered: 01/15/2021) |
| 01/15/2021 | 11269 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Wally Williams* (LOCKS, GENE) (Entered: 01/15/2021) |
| 01/18/2021 | 11270 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 01/18/2021) |
| 01/18/2021 | 11271 | NOTICE by PLAINTIFF(S) *to file Petition to Establish Attorneys Lien--Tony L. Stargell* (LUCKASEVIC, JASON) (Entered: 01/18/2021) |

| 01/19/2021 | 11272 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/15/2021. 1/19/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Neurocognitive Football Lawyers, PLLC v. William PerryAttorney Lien Dispute (Doc. No. 10968))(kp, ) (Entered: 01/19/2021) |
| 01/21/2021 | 11273 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (C. McClellion)* (KARATINOS, THEODORE) (Entered: 01/21/2021) |
| 01/26/2021 | 11274 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 11 by CLAIMS ADMINISTRATOR. (kp, ) (Entered: 01/26/2021) |
| 01/26/2021 | 11275 | REPORT OF THE SPECIAL MASTERS by DAVID HOFFMAN, WENDELL E. PRITCHETT, JO-ANN M. VERRIER. (kp, ) (Entered: 01/26/2021) |
| 01/26/2021 | 11276 | BAP ADMINISTRATOR STATUS REPORT 4th QUARTER 2020 by BAP ADMINISTRATOR. (kp, ) (Entered: 01/26/2021) |
| 01/28/2021 | 11277 | NOTICE of Appearance by STEVEN R. MAHER on behalf of PLAINTIFF(S) with Certificate of Service(MAHER, STEVEN) (Entered: 01/28/2021) |
| 01/29/2021 | 11278 | MEMORANDUM AND/OR OPINION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/29/2021. 1/29/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Locks Law Firm v. SPID 100002295 (D.C.)Attorney Lien Dispute Case No. 01541)(kp, ) (Entered: 01/29/2021) |
| 01/29/2021 | 11279 | ORDER THAT THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE MEMORANDUM OPINION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/29/2021. 1/29/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Locks Law Firm v. SPID 100002295 (D.C.)Attorney Lien Dispute Case No. 01541)(kp, ) (Entered: 01/29/2021) |
| 02/01/2021 | 11280 | NOTICE by THE LOCKS LAW FIRM *of Withdrawal of Appearance of Tobias Barrington Wolff on behalf of Class Counsel Locks Law Firm* (LEH, MICHAEL) (Entered: 02/01/2021) |
| 02/01/2021 | 11281 | MOTION for Pro Hac Vice *of Jeffrey M. Kuntz* ( Filing fee $ 40 receipt number 0313-14883144.) filed by PLAINTIFF(S).Application to Practice in this Court.(MAHER, STEVEN) (Entered: 02/01/2021) |
| 02/01/2021 | 11282 | ORDER THAT THE 11281 MOTION FOR PRO HAC VICE OF JEFFREY M. KUNTZ IS GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 2/1/2021.2/2/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS)(kp, ) (Entered: 02/02/2021) |
| 02/08/2021 | 11283 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien by Pope, McGlamry, Kilpatrick, Morrison & Norwood, P.C. as to Mark Bavaro* (MCGLAMRY, MICHAEL) (Entered: 02/08/2021) |
| 02/10/2021 | 11284 | CONSENT to Jurisdiction by US Magistrate Judge (RE:ERIC CURRY v. GOLDBERG PERSKY & WHITE Attorneys Lien Dispute ECF No. 10746) (kp, ) (Entered: |

| | | |
|---|---|---|
| | | 02/10/2021) |
| 02/11/2021 | 11285 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien by Smith and Stallworth (Jeff Cross) Attachment: Petition to Establish Attorney's Lien by Smith and Stallworth (Jeff Cross)* (Attachments: # 1 Petition to Establish Attorney's Lien by Mark Stallworth (Jeff Cross))(STALLWORTH, MARK) (Entered: 02/11/2021) |
| 02/12/2021 | 11286 | STATUS REPORT *Class Counsels' Status Report No. 1 Regarding the Education Fund Programs* by PLAINTIFF(S). (Attachments: # 1 Exhibit A, # 2 Exhibit B)(SEEGER, CHRISTOPHER) (Entered: 02/12/2021) |
| 02/12/2021 | 11287 | MOTION to Withdraw *and Terminate Appearance of Faneca Objectors and Their Counsel* filed by RODERICK CARTWRIGHT, SEAN CONSIDINE, ALAN FANECA, BEN HAMILTON, SEAN MOREY, JEFF ROHRER, ROBERT ROYAL.Certificate of Service. (Attachments: # 1 Text of Proposed Order)(MOLO, STEVEN) (Entered: 02/12/2021) |
| 02/19/2021 | 11288 | MEMORANDUM AND/OR OPINION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/19/2021. 2/19/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Locks Law Firm v. SPID 100016274 (E.W.)Attorney Lien Dispute(Lien Case No. 01596))(kp, ) (Entered: 02/19/2021) |
| 02/19/2021 | 11289 | ORDER THAT THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE MEMORANDUM OPINION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/19/2021. 2/19/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Locks Law Firm v. SPID 100016274 (E.W.)Attorney Lien Dispute(Lien Case No. 01596))(kp, ) (Entered: 02/19/2021) |
| 02/22/2021 | 11290 | ORDER THAT THE REPORT AND RECOMMENDATION REGARDING THE AB0VE-CAPTIONED ATTORNEY LIEN DISPUTE IS REMANDED TO JUDGE STRAWBRIDGE FOR RECONSIDERATION IN LIGHT OF THE CLAIMS ADMINISTRATOR'S FINDINGS. SIGNED BY HONORABLE ANITA B. BRODY ON 2/22/2021. 2/22/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO HOWARD & ASSOCIATES PA v JESSIE SMALL ATTORNEY LIEN DISPUTE DOC NO. 10920)(kp, ) (Entered: 02/22/2021) |
| 02/22/2021 | 11291 | ORDER THAT THE REPORT AND RECOMMENDATION REGARDING THE AB0VE-CAPTIONED ATTORNEY LIEN DISPUTE IS REMANDED TO JUDGE STRAWBRIDGE FOR RECONSIDERATION IN LIGHT OF THE CLAIMS ADMINISTRATOR'S FINDINGS. SIGNED BY HONORABLE ANITA B. BRODY ON 2/22/2021. 2/22/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Shenaq PC v. Rashod KentAttorney Lien Dispute(Doc. No. 10674)ANDHoward and Associates, P.A. v.Roshad KentAttorney Lien Dispute(Doc. No. 11049-11))(kp, ) (Entered: 02/22/2021) |
| 02/22/2021 | 11295 | CONSENT to Jurisdiction by US Magistrate Judge RE: ERRIC PEGRAM v. ZIMMERMAN REED Attorneys Lien Dispute ECF No. 9746. (kp, ) (Entered: 02/24/2021) |
| 02/22/2021 | 11296 | CONSENT to Jurisdiction by US Magistrate Judge RE:BARNEY CHAVOUS V. LOCKS LAW FIRM Attorneys Lien Dispute ECF No. 10727.. (kp, ) (Entered: 02/24/2021) |
| 02/24/2021 | 11292 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Dantrell Savage* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, |

| | | MICHAEL) (Entered: 02/24/2021) |
|---|---|---|
| 02/24/2021 | 11293 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/24/2021) |
| 02/24/2021 | 11294 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to John Henry Smith* (MCGLAMRY, MICHAEL) (Entered: 02/24/2021) |
| 03/01/2021 | 11297 | ORDER THAT THE 11287 MOTION TO WITHDRAW AND TERMINATE APPEARANCE OF FANECA OBJECTORS AND THEIR COUNSEL IS GRANTED. IT IS FURTHER ORDERED THAT THE CLERK OF COURT TERMINATE THE APPEARANCES OF THE PARTIES AND OF ALL COUNSEL WHO HAVE APPEARED ON THEIR BEHALF AS OUTLINED HEREIN. SIGNED BY HONORABLE ANITA B. BRODY ON 3/1/2021.3/1/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO 14-CV-29).(kp, ) (Entered: 03/01/2021) |
| 03/01/2021 | 11298 | CONSENT to Jurisdiction by US Magistrate Judge RE: ERIC HAYES v. NEUROCOGNITIVE FOOTBALL LAWYERS, PLLC Attorneys Liens Disputes ECF No. 10393. (kp, ) (Entered: 03/03/2021) |
| 03/05/2021 | 11299 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (GUDMUNDSON, BRIAN) (Entered: 03/05/2021) |
| 03/05/2021 | 11300 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (GUDMUNDSON, BRIAN) (Entered: 03/05/2021) |
| 03/07/2021 | 11301 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (Fabian Washington)* (SHENAQ, AMIR) (Entered: 03/07/2021) |
| 03/08/2021 | 11302 | ORDER THAT THE NFL AND CLASS COUNSEL SEEGER WEISS, THE ORIGINAL PARTIES THAT DRAFTED THE SETTLEMENT AGREEMENT, ARE REFERRED TO MAGISTRATE JUDGE DAVID STRAWBRIDGE TO SEEK TO ADDRESS THE CONCERNS RELATING TO THE RACE-NORMING ISSUE. SIGNED BY HONORABLE ANITA B. BRODY ON 3/8/21. 3/8/21 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 03/08/2021) |
| 03/11/2021 | 11303 | CONSENT to Jurisdiction by US Magistrate Judge re: STEPHEN TOWLE v. GOLDBERG PERSKY & WHITE, Attorneys Liens Disputes ECF No. 10909.. (kp, ) (Entered: 03/11/2021) |
| 03/12/2021 | 11304 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED, AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/12/2021. 3/12/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Goldberg Persky & White, P.C. v. SPID 100003482 (E.C.)Attorney Lien Dispute Case No. 01517)(kp, ) (Entered: 03/12/2021) |
| 03/12/2021 | 11305 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/12/2021. 3/12/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Goldberg Persky & |

**-743-**

| | | White, P.C.v.SPID 100015454 (S.T.)Attorney Lien DisputeCase No. 01593)(kp, ) (Entered: 03/12/2021) |
|---|---|---|
| 03/15/2021 | 11306 | MOTION to Intervene , MOTION to Stay *Mediation Pending Resolution of Intervention Motion* filed by Najeh Davenport, KEVIN HENRY.Brief, Certificate of Service. (Attachments: # 1 Exhibit A -- Email Exchange with Seeger Weiss (Oct. 20-23, 2020), # 2 Exhibit B -- Declaration of Jennifer J. Manly, PhD, # 3 Exhibit C -- Declaration of Kirk R. Daffner, MD, # 4 Text of Proposed Order)(MARCUS, EZRA) (Entered: 03/15/2021) |
| 03/16/2021 | 11307 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Richard Baldinger* (LOCKS, GENE) (Entered: 03/16/2021) |
| 03/16/2021 | 11308 | MEMORANDUM AND/OR OPINION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/16/2021. 3/17/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Goldberg Persky & White, P.C. v.SPID 100002255 (B.B.)Attorney Lien Dispute Case No. 00588)(kp, ) (Entered: 03/17/2021) |
| 03/16/2021 | 11309 | ORDER THAT THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITHT HE MEMORANDUM OPINION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/16/2021. 3/17/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO Goldberg Persky & White, P.C. v.SPID 100002255 (B.B.)Attorney Lien Dispute Case No. 00588)(kp, ) (Entered: 03/17/2021) |
| 03/19/2021 | 11310 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/16/2021. 3/16/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO GOLDBERG PERSKY & WHITE v. SPID 100015454 (S.T.) ATTORNEY LIEN DISPUTE LIEN ID : ECF 01593.)(kp, ) (Entered: 03/19/2021) |
| 03/19/2021 | 11311 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/12/2021. 3/19/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ERIC F. CURRY v. GOLDBERG PARSKY & WHITE ATTORNEY LIEN DISPUTE LIEN ID : ECF NO. 01517)(kp, ) (Entered: 03/19/2021) |
| 03/22/2021 | 11312 | RESPONSE in Opposition re 11306 MOTION to Intervene MOTION to Stay *Mediation Pending Resolution of Intervention Motion* filed by PLAINTIFF(S). (Attachments: # 1 Declaration of Christopher A. Seeger, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7)(SEEGER, CHRISTOPHER) (Entered: 03/22/2021) |
| 03/22/2021 | 11313 | ORDER RE-APPOINTING SPECIAL MASTER FOR LIMITED PURPOSES. SIGNED BY HONORABLE ANITA B. BRODY ON 3/22/21. 3/22/21 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 03/22/2021) |
| 03/22/2021 | 11314 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Edward Simmons* (LOCKS, GENE) (Entered: 03/22/2021) |
| 03/22/2021 | 11315 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(KUNTZ, JEFFREY) (Entered: 03/22/2021) |
| 03/23/2021 | 11316 | MOTION for Leave to File *Reply Brief* filed by Najeh Davenport, KEVIN HENRY.. (Attachments: # 1 Text of Proposed Order)(MARCUS, EZRA) (Entered: 03/23/2021) |

| | | |
|---|---|---|
| 03/24/2021 | 11317 | ORDER THAT THE 11316 MOTION FOR LEAVE TO FILE A REPLY BRIEF IS GRANTED. MOVANTS MUST FILE THEIR REPLY BRIEF ON OR BEFORE 3/26/2021.. SIGNED BY HONORABLE ANITA B. BRODY ON 3/24/2021.3/24/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS)(kp, ) (Entered: 03/24/2021) |
| 03/25/2021 | 11318 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Don Latimer* (LOCKS, GENE) (Entered: 03/25/2021) |
| 03/26/2021 | 11319 | NOTICE by PLAINTIFF(S) *of Attorney's Lien as to Herman Arvie* (FRANCO, DAVID) (Entered: 03/26/2021) |
| 03/26/2021 | 11320 | MOTION to Intervene filed by Patrick J Tighe.Motion To Intervene.(TIGHE, PATRICK) (Entered: 03/26/2021) |
| 03/26/2021 | 11321 | REPLY to Response to Motion re 11306 MOTION to Intervene MOTION to Stay *Mediation Pending Resolution of Intervention Motion* filed by Najeh Davenport, KEVIN HENRY. (Attachments: # 1 Declaration of Justin R. Wyatt, # 2 Exhibit 1 to Wyatt Declaration, # 3 Exhibit 2 to Wyatt Declaration, # 4 Declaration of Cyril V. Smith)(MARCUS, EZRA) (Entered: 03/26/2021) |
| 03/26/2021 | 11322 | Copy of Conditional Transfer Order (CTO-108) from the Judicial Panel on Multi-district Litigation that the action listed on the attached schedule is transferred to the ED-PA for coordinated or consolidated pretrial proceedings assigned to the Honorable Anita B. Brody. (kp, ) (Main Document 11322 replaced on 3/29/2021) (kp, ). (Entered: 03/29/2021) |
| 04/05/2021 | 11323 | RESPONSE in Opposition re 11320 MOTION to Intervene filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 04/05/2021) |
| 04/08/2021 | 11325 | EXPLANATION AND ORDER THAT THE COURT RESERVES DECISION ON HENRY AND DAVENPORTS MOTION TO INTERVENE AND TO STAY MEDIATION 11306 .. SIGNED BY HONORABLE ANITA B. BRODY ON 4/8/21. 4/8/21 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 04/08/2021) |
| 04/08/2021 | 11326 | ORDER THAT TIM HOWARDS MOTION TO DISCIPLINE OR DISMISS SPECIAL MASTERS AND AUDITORS 11324 IS SEALED. IT IS FURTHER ORDERED THAT TIM HOWARD MUST ELECTRONICALLY FILE A REDACTED COPY OF HIS MOTION ON THIS DOCKET ON OR BEFORE APRIL 16, 2021. SIGNED BY HONORABLE ANITA B. BRODY ON 4/8/21. 4/8/21 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 04/08/2021) |
| 04/09/2021 | 11328 | SEALED MOTION to Dismiss *Special Masters and Auditors*, MOTION to Disqualify *Special Masters and Auditors* filed by TIM HOWARD HOWARD AND ASSOCIATES ATTORNEYS AT LAW, P.A...(HOWARD, PHILLIP) Modified on 4/15/2021 (afm, ). (Entered: 04/09/2021) |
| 04/09/2021 | 11329 | Supplemental MOTION to Disqualify *Special Masters and Auditors*, Supplemental MOTION to Dismiss *Special Masters and Auditors* filed by TIM HOWARD HOWARD AND ASSOCIATES ATTORNEYS AT LAW, P.A... (Entered: 04/09/2021) |
| 04/09/2021 | 11330 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Cornell Brown* (LOCKS, GENE) (Entered: 04/09/2021) |
| 04/09/2021 | 11331 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Gennaro Di Napoli* (LOCKS, GENE) (Entered: 04/09/2021) |

| 04/09/2021 | 11332 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Joseph Jacoby* (LOCKS, GENE) (Entered: 04/09/2021) |
|---|---|---|
| 04/12/2021 | 11333 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 04/12/2021) |
| 04/12/2021 | 11334 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Joseph Holmes* (LUCKASEVIC, JASON) (Entered: 04/12/2021) |
| 04/14/2021 | 11335 | ORDER THAT TIM HOWARD'S MOTION TO DISCIPLINE OR DISMISS SPECIAL MASTERS AND AUDITORS IS SEALED. SIGNED BY HONORABLE ANITA B. BRODY ON 4/13/2021. 4/14/2021 ENTERED AND COPIESE-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS)(kp, ) (Entered: 04/14/2021) |
| 04/15/2021 | 11336 | REPLY to Response to Motion re 11320 MOTION to Intervene filed by Patrick J Tighe. (TIGHE, PATRICK) (Entered: 04/15/2021) |
| 04/15/2021 | 11337 | MOTION to Dismiss *Special Masters and Auditors*, MOTION to Disqualify *Special Masters and Auditors* filed by TIM HOWARD HOWARD AND ASSOCIATES ATTORNEYS AT LAW, P.A... (Attachments: # 1 Exhibit Exhibits A-G, # 2 Exhibit Exhibits H-KD, # 3 Exhibit Exhibits KE-KG)(HOWARD, PHILLIP) (Entered: 04/15/2021) |
| 04/21/2021 | 11338 | MOTION to Dismiss *the Complaint Filed by Settlement Class Member Connie Joann Baker* filed by NATIONAL FOOTBALL LEAGUE, INC..Memorandum. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order)(KARP, BRAD) (Entered: 04/21/2021) |
| 04/21/2021 | 11339 | RESPONSE in Opposition re 11337 MOTION to Dismiss *Special Masters and Auditors* MOTION to Disqualify *Special Masters and Auditors* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 04/21/2021) |
| 04/21/2021 | 11340 | RESPONSE to Motion re 11329 Supplemental MOTION to Disqualify *Special Masters and Auditors*Supplemental MOTION to Dismiss *Special Masters and Auditors*, 11328 MOTION to Dismiss *Special Masters and Auditors* MOTION to Disqualify *Special Masters and Auditors*, 11337 MOTION to Dismiss *Special Masters and Auditors* MOTION to Disqualify *Special Masters and Auditors* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 04/21/2021) |
| 04/21/2021 | 11341 | REPLY to Response to Motion re 11329 Supplemental MOTION to Disqualify *Special Masters and Auditors*Supplemental MOTION to Dismiss *Special Masters and Auditors*, 11337 MOTION to Dismiss *Special Masters and Auditors* MOTION to Disqualify *Special Masters and Auditors* filed by TIM HOWARD HOWARD AND ASSOCIATES ATTORNEYS AT LAW, P.A.. (HOWARD, PHILLIP) (Entered: 04/21/2021) |
| 04/26/2021 | 11342 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Derrick Roberson* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 04/26/2021) |
| 04/26/2021 | 11343 | NOTICE by Patrick J Tighe *of Attorney's Fee Lien* (Attachments: # 1 Petition)(TIGHE, PATRICK) (Entered: 04/26/2021) |
| 04/29/2021 | 11344 | RESPONSE to Motion re 11329 Supplemental MOTION to Disqualify *Special Masters and Auditors*Supplemental MOTION to Dismiss *Special Masters and Auditors*, 11328 MOTION to Dismiss *Special Masters and Auditors* MOTION to Disqualify *Special Masters and Auditors*, 11337 MOTION to Dismiss *Special Masters* |

| | | |
|---|---|---|
| | | *and Auditors* MOTION to Disqualify *Special Masters and Auditors* filed by PLAINTIFF(S). (Attachments: # <u>1</u> Exhibit 1 Report of Referee)(SEEGER, CHRISTOPHER) (Entered: 04/29/2021) |
| 04/29/2021 | <u>11345</u> | PROTECTIVE ORDER GOVERNING MEDIATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/29/2021; 4/29/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS, 14-CV-29).(tjd) (Entered: 04/29/2021) |
| 04/29/2021 | <u>11346</u> | REPLY to Response to Motion re <u>11329</u> Supplemental MOTION to Disqualify *Special Masters and Auditors*Supplemental MOTION to Dismiss *Special Masters and Auditors*, <u>11337</u> MOTION to Dismiss *Special Masters and Auditors* MOTION to Disqualify *Special Masters and Auditors* filed by TIM HOWARD HOWARD AND ASSOCIATES ATTORNEYS AT LAW, P.A.. (HOWARD, PHILLIP) (Entered: 04/29/2021) |
| 05/03/2021 | <u>11347</u> | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/03/2021) |
| 05/03/2021 | <u>11348</u> | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Kenneth Jenkins and Amy Jenkins* (LUCKASEVIC, JASON) (Entered: 05/03/2021) |
| 05/07/2021 | <u>11349</u> | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Lawrence Johnson* (LOCKS, GENE) (Entered: 05/07/2021) |
| 05/10/2021 | <u>11350</u> | ORDER THAT PLAINTIFF CONNIE JOANN BAKER MUST SHOW CAUSE ON OR BEFORE MAY 25, 2021 REGARDING WHY THE NFL'S MOTION TO DISMISS THE COMPLAINT FILED BY SETTLEMENT CLASS MEMBER CONNIE JOANN BAKER (CASE NO. 21-CV-1493, DOC. NO. 12) SHOULD NOT BE GRANTED AS UNOPPOSED. SIGNED BY HONORABLE ANITA B. BRODY ON 5/10/2021. 5/10/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO 21-CV-1493) (ems) (Entered: 05/10/2021) |
| 05/13/2021 | <u>11351</u> | REPORT OF THE SPECIAL MASTERS. (mbh, ) (Entered: 05/13/2021) |
| 05/13/2021 | <u>11352</u> | BAP ADMINISTRATOR STATUS REPORT 1st QUARTER 2021 (mbh, ) (Entered: 05/13/2021) |
| 05/13/2021 | <u>11353</u> | CLAIMS ADMINISTRATOR STATUS REPORT NO. 12. (mbh, ) (Entered: 05/13/2021) |
| 05/14/2021 | <u>11354</u> | NOTICE of Withdrawal of Appearance by LOGAN ANDERSON on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC(ANDERSON, LOGAN) (Entered: 05/14/2021) |
| 05/14/2021 | <u>11355</u> | NOTICE of Appearance by CHRISTOPHER MICHAEL BROLLEY on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC with Certificate of Service(BROLLEY, CHRISTOPHER) (Entered: 05/14/2021) |
| 05/18/2021 | <u>11356</u> | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/17/21. 5/18/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh, ) (Entered: 05/18/2021) |
| 05/18/2021 | <u>11358</u> | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision. (mbh, ) (Entered: 05/19/2021) |

| 05/19/2021 | 11357 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Christopher McAlister* (LOCKS, GENE) (Entered: 05/19/2021) |
|---|---|---|
| 05/19/2021 | 11359 | (CORRECTED) EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/17/21. 5/18/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh, ) (Entered: 05/19/2021) |
| 05/19/2021 | 11360 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/19/2021) |
| 05/19/2021 | 11361 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Ascotti Fields and Donna B. Fields* (LUCKASEVIC, JASON) (Entered: 05/19/2021) |
| 05/24/2021 | 11362 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judbe for a Final Decision. (Attachments: # 1 Form Notice)(mbh, ) (Entered: 05/24/2021) |
| 05/24/2021 | 11363 | ENTERED IN ERROR (mbh, ) Modified on 5/24/2021 (afm, ). (Main Document 11363 replaced on 5/24/2021) (afm, ). (Entered: 05/24/2021) |
| 05/24/2021 | 11364 | ENTERED IN ERROR (mbh, ) (Main Document 11364 replaced on 5/24/2021) (afm, ). Modified on 5/24/2021 (afm, ). (Entered: 05/24/2021) |
| 05/25/2021 | 11365 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/25/21. 5/26/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL(mbh, ) (Entered: 05/26/2021) |
| 05/27/2021 | 11366 | ORDERED THAT THE NFL PARTIES MOTION TO DISMISS THE COMPLAINT FILED BY SETTLEMENT CLASS MEMBER CONNIE JOANN BAKER (CASE NO. 21-CV-01493, ECF NO. 12; CASE NO. 12-MD-2323, ECF NO. 11338) IS GRANTED AS UNOPPOSED. SIGNED BY HONORABLE ANITA B. BRODY ON 5/26/21.5/27/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh, ). (Entered: 05/27/2021) |
| 05/27/2021 | 11367 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien by Smith and Stallworth (Chris Dugan)* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien by Mark Stallworth (Chris Dugan))(STALLWORTH, MARK) (Entered: 05/27/2021) |
| 06/03/2021 | 11368 | EXPLANATION AND ORDER granting 11306 MOTION TO INTERVENE; denying 11306 MOTION TO STAY. SIGNED BY HONORABLE ANITA B. BRODY ON 6/3/21.6/3/21 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 06/03/2021) |
| 06/04/2021 | 11369 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to LeCharls McDaniel and Sheryl McDaniel* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 06/04/2021) |
| 06/04/2021 | 11370 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 06/04/2021) |
| 06/04/2021 | 11371 | ORDER THAT JUDGE STRAWBRIDGE FILE AN INTERIM REPORT CONCERNING THE PROGRESS OF THE MEDIATION ON OR BEFORE JUNE |

| | | |
|---|---|---|
| | | 11, 2021. SIGNED BY HONORABLE ANITA B. BRODY ON 6/4/21. 6/4/21 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 06/04/2021) |
| 06/04/2021 | 11372 | MOTION for Release of 5% Holdback *Renewed Motion* filed by Steckler Wayne Cochran PLLC..(STECKLER, BRUCE) (Entered: 06/04/2021) |
| 06/07/2021 | 11373 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/4/21. 6/7/21 ENTERED AND COPIES E-MAILED.(mbh, ) (Entered: 06/07/2021) |
| 06/07/2021 | 11374 | Letter from KENNETH W. JENKINS dated 5/13/2021 (Attachments: # 1 Exhibit, # 2 Exhibit)(jwl, ) (Entered: 06/07/2021) |
| 06/09/2021 | 11375 | EXPLANATION AND ORDER (E.H.) THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/8/21. 6/9/21 ENTERED AND COPIES E-MAILED.(mbh, ) (Entered: 06/09/2021) |
| 06/09/2021 | 11376 | EXPLANATION AND ORDER (B.C.) THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/8/21. 6/9/21 ENTERED AND COPIES E-MAILED.(mbh, ) (Entered: 06/09/2021) |
| 06/09/2021 | 11377 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Clarence Vaughn* (LOCKS, GENE) (Entered: 06/09/2021) |
| 06/09/2021 | 11378 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Rodney Lewis* (LOCKS, GENE) (Entered: 06/09/2021) |
| 06/09/2021 | 11379 | MOTION to Withdraw as Attorney *for Robert Moore and Cassandra Moore* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 06/09/2021) |
| 06/09/2021 | 11380 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Robert Moore and Cassandra Moore* (Attachments: # 1 Petition to Establish Attorneys Lien)(GUDMUNDSON, BRIAN) (Entered: 06/09/2021) |
| 06/09/2021 | 11381 | MOTION to Withdraw as Attorney *for David Howard and Jacqueline Howard* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 06/09/2021) |
| 06/09/2021 | 11382 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for David Howard and Jacqueline Howard* (Attachments: # 1 Petition to Establish Attorneys Lien)(GUDMUNDSON, BRIAN) (Entered: 06/09/2021) |
| 06/09/2021 | 11383 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for Final Decision (Mike Fuller) (mbh, ) (Entered: 06/09/2021) |

| 06/09/2021 | 11384 | MOTION to Withdraw as Attorney *for George Adams and Michelle Adams* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 06/09/2021) |
| 06/09/2021 | 11385 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for Final Decision (Reggie Tongue)(mbh, ) (Entered: 06/09/2021) |
| 06/09/2021 | 11386 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for George Adams and Michelle Adams* (Attachments: # 1 Petition to Establish Attorneys Lien)(GUDMUNDSON, BRIAN) (Entered: 06/09/2021) |
| 06/09/2021 | 11387 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for Final Decision (Glen Steele) (mbh, ) (Entered: 06/09/2021) |
| 06/10/2021 | 11388 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/10/2021. 6/10/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (ems) (Entered: 06/10/2021) |
| 06/10/2021 | 11389 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/10/2021. 6/10/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (ems) (Entered: 06/10/2021) |
| 06/10/2021 | 11390 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/10/2021. 6/10/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (ems) (Entered: 06/10/2021) |
| 06/11/2021 | 11391 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Michael Haddix). (Attachments: # 1 Form Notice)(mbh, ) (Entered: 06/11/2021) |
| 06/11/2021 | 11392 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Brent A. McClanahan). (Attachments: # 1 Form Notice)(mbh, ) (Entered: 06/11/2021) |
| 06/11/2021 | 11393 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Sidney Thornton) (Attachments: # 1 Form Notice)(mbh, ) (Entered: 06/11/2021) |
| 06/11/2021 | 11394 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Peter Warrick). (Attachments: # 1 Form Notice)(mbh, ) (Entered: 06/11/2021) |
| 06/14/2021 | 11395 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Gabriel Northern* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 06/14/2021) |

| 06/14/2021 | 11396 | RESPONSE in Support re 11372 MOTION for Release of 5% Holdback *Renewed Motion in Support of Steckler Wayne Cochran PPLC Renewed Motion to Release the 5% Holdback and Request for Expedited Hearings* filed by PLAINTIFF(S). (Attachments: # 1 Affidavit Declaration Affidavit of Jason E. Luckasevic, # 2 Exhibit Emails)(LUCKASEVIC, JASON) (Entered: 06/14/2021) |
| 06/14/2021 | 11397 | APPLICATION/PETITION / *Joint Application by Class Counsel and Counsel for the National Football League and NFL Properties LLC for Appointment of an Additional Appeals Advisory Panel Consultant for Limited Purposes* by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Exhibit 1 - James A. Holdnack, Ph.D.)(KARP, BRAD) (Entered: 06/14/2021) |
| 06/15/2021 | 11398 | INTERIM REPORT RE: MEDIATION ON RACE-NORMING ISSUE(jwl, ) (Entered: 06/15/2021) |
| 06/15/2021 | 11399 | ORDER THAT MOTIONS TO WITHDRAW AS COUNSEL BY ZIMMERMAN REED LLP ARE DENIED WITHOUT PREJUDICE. SIGNED BY HONORABLE ANITA B. BRODY ON 6/15/21.6/15/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh, ) (Entered: 06/15/2021) |
| 06/16/2021 | 11400 | Notice, Consent and Reference of an Attorney's Lien Dispute to Magistrate Judge for a Final Decision (Michael Haddix) (mbh, ) (Entered: 06/17/2021) |
| 06/16/2021 | 11401 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Joel Williams) (mbh, ) (Entered: 06/17/2021) |
| 06/17/2021 | 11402 | Notice, Consent ande Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Lance Brown) (mbh, ) (Entered: 06/17/2021) |
| 06/17/2021 | 11404 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for Final Decision (Brent A. McClanahan) (mbh, ) (Entered: 06/21/2021) |
| 06/17/2021 | 11405 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Sidney Thornton) (mbh, ) (Entered: 06/21/2021) |
| 06/17/2021 | 11406 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Bruce Hardy) (mbh, ) (Entered: 06/21/2021) |
| 06/18/2021 | 11403 | RESPONSE in Opposition re 11372 MOTION for Release of 5% Holdback *Renewed Motion* filed by PLAINTIFF(S). (Attachments: # 1 Declaration of Christopher A. Seeger)(SEEGER, CHRISTOPHER) (Entered: 06/18/2021) |
| 06/22/2021 | 11407 | MOTION to Withdraw as Attorney *for Donald Rolle* filed by PLAINTIFF(S).. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order) (GUDMUNDSON, BRIAN) (Entered: 06/22/2021) |
| 06/22/2021 | 11408 | MOTION to Withdraw as Attorney *for George Adams and Michelle Adams* filed by PLAINTIFF(S).. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order) (GUDMUNDSON, BRIAN) (Entered: 06/22/2021) |
| 06/22/2021 | 11409 | MOTION to Withdraw as Attorney *for David Howard and Jacqueline Howard* filed by PLAINTIFF(S).. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order) (GUDMUNDSON, BRIAN) (Entered: 06/22/2021) |
| 06/22/2021 | 11410 | MOTION to Withdraw as Attorney *for Robert Moore and Cassandra Moore* filed by PLAINTIFF(S).. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order) (GUDMUNDSON, BRIAN) (Entered: 06/22/2021) |
| 06/22/2021 | 11411 | ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD |

| | | |
|---|---|---|
| | | FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/21/21. 6/22/21 ENTERED AND COPIES E-MAILED.(mbh, ) (Entered: 06/22/2021) |
| 06/22/2021 | 11412 | ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/21/21. 6/22/21 ENTERED AND COPIES E-MAILED. (mbh, ) (Entered: 06/22/2021) |
| 06/22/2021 | 11413 | ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/21/21. 6/22/21 ENTERED AND COPIES E-MAILED. (mbh, ) (Entered: 06/22/2021) |
| 06/22/2021 | 11414 | MOTION to Withdraw as Attorney filed by PLAINTIFF(S)..(LEONTIRE, GEORGE) (Entered: 06/22/2021) |
| 06/22/2021 | 11415 | ORDER THAT MOTIONS TO WITHDRAW AS COUNSEL (ECF NOS. 11407, 11408, 11409 AND 11410) ARE GRANTED. IT IS FURTHER ORDERED THAT THE DOCUMENTS OUTLINED IN THIS ORDER TO THE ABOVE MOTIONS ARE SEALED.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/22/21.6/22/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh, ) (Entered: 06/22/2021) |
| 06/24/2021 | 11416 | ORDER THAT GEORGE J. LEONTIRE'S MOTION TO WITHDRAW AS COUNSEL FOR PLAINTIFFS A.H. AND SHAYANNA JENKINS HERNANDEZ IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 6/24/21.6/24/21 ENTERED AND COPIES E-MAILED.(mbh, ) (Entered: 06/24/2021) |
| 06/24/2021 | 11417 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 06/24/2021) |
| 06/24/2021 | 11418 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Ahmad Carroll* (LUCKASEVIC, JASON) (Entered: 06/24/2021) |
| 06/24/2021 | 11419 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/24/21. 6/24/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh, ) (Entered: 06/24/2021) |
| 06/24/2021 | 11420 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Brent McClanahan). (mbh, ) (Entered: 06/24/2021) |
| 06/24/2021 | 11421 | REPLY to Response to Motion re 11372 MOTION for Release of 5% Holdback *Renewed Motion* filed by Steckler Wayne Cochran PLLC. (STECKLER, BRUCE) (Entered: 06/24/2021) |

| 06/28/2021 | 11422 | MOTION to Amend/Correct *Rules Governing Payment of Claims Involving Third-Party Funders* filed by THRIVEST SPECIALTY FUNDING, LLC.Memorandum Declaration and Certificate of Service. (Attachments: # 1 Exhibit 1, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E part one, # 7 Exhibit E part two, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I)(BUCKLEY, PETER) (Entered: 06/28/2021) |
|---|---|---|
| 06/30/2021 | 11423 | ORDER THAT JOINT APPLICATION BY CLASS COUNSEL AND COUNSEL FOR THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC FOR APPOINTMENT OF AN ADDITIONAL APPEALS ADVISORY PANEL CONSULTANT FOR LIMITED PURPOSES IS APPROVED. SIGNED BY HONORABLE ANITA B. BRODY ON 6/30/21. 7/1/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh, ) (Entered: 07/01/2021) |
| 06/30/2021 | 11424 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/30/21. 7/1/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh, ) (Entered: 07/01/2021) |
| 06/30/2021 | 11426 | ORDER THAT THE ORDER OF 7/13/16 (ECF NO. 6871) APPOINTING WENDELL PRITCHETT AND JO-ANN VERRIER AS SPECIAL MASTERS IN (12-MD-2323) IS EXTENDED FOR A SECOND FIVE-YEAR TERM. SIGNED BY HONORABLE ANITA B. BRODY ON 6/30/21. 7/1/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh, ) (Entered: 07/01/2021) |
| 07/01/2021 | 11425 | NOTICE by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION *of Attorney's Lien* (FERRARO, KELLY) (Entered: 07/01/2021) |
| 07/01/2021 | 11427 | WAIVER OF APPEAL, WITH COURT APROVAL. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/29/21. 7/1/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh, ) (Entered: 07/01/2021) |
| 07/05/2021 | 11428 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (Griffin)* (SHENAQ, AMIR) (Entered: 07/05/2021) |
| 07/06/2021 | 11429 | MOTION for Order to Show Cause filed by CLAIMS ADMINISTRATOR.Memorandum in Support of Motion for Show Cause, Attachment A: Declaration of Orran L. Brown, Sr., Proposed Order. (Attachments: # 1 Memorandum in Support of Motion for Order to Show Cause, # 2 Exhibit A: Declaration of Orran L. Brown, Sr., # 3 Text of Proposed Order)(BROWN, ORRAN) (Entered: 07/06/2021) |
| 07/06/2021 | 11430 | MOTION for Order to Show Cause *CORRECTED* filed by CLAIMS ADMINISTRATOR..(BROWN, ORRAN) (Entered: 07/06/2021) |
| 07/07/2021 | 11431 | Letter dated July 7, 2021 requesting additional time to respond to Thrivest's Motion by PLAINTIFF(S). (Attachments: # 1 Text of Proposed Order)(SEEGER, CHRISTOPHER) (Entered: 07/07/2021) |
| 07/08/2021 | 11432 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) (LUCKASEVIC, JASON) (Entered: 07/08/2021) |
| 07/08/2021 | 11433 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Jeffrey Walker* (LUCKASEVIC, JASON) (Entered: 07/08/2021) |

| 07/09/2021 | 11434 | ORDER THAT UPON CONSIDERATION OF CLASS COUNSELS JULY 7, 2021 LETTER 11431 REQUESTING AN EXTENSION OF TIME TO RESPOND TO THRIVESTSMOTION TO AMEND RULES GOVERNING PAYMENT OF CLAIMS INVOLVING THIRD-PARTY FUNDERS, IT ISORDERED THAT CLASS COUNSELS RESPONSE MUST BE FILED ON OR BEFORE JULY 19, 2021. SIGNED BY HONORABLE ANITA B. BRODY ON 7/9/21. 7/9/21 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 07/09/2021) |
|---|---|---|
| 07/09/2021 | | Set/Reset Deadlines as to 11422 MOTION to Amend/Correct *Rules Governing Payment of Claims Involving Third-Party Funders*. RESPONSES DUE BY 7/19/2021. (jwl, ) (Entered: 07/09/2021) |
| 07/13/2021 | 11435 | NOTICE by TIM HOWARD HOWARD AND ASSOCIATES ATTORNEYS AT LAW, P.A. *Notice of Assignment* (HOWARD, PHILLIP) (Entered: 07/13/2021) |
| 07/14/2021 | 11436 | MOTION For Injunction Under All Writs Act filed by DAVID HOFFMAN, WENDELL E. PRITCHETT, JO-ANN M. VERRIER.Brief, Certificate of Service. (Attachments: # 1 Brief, # 2 Text of Proposed Order, # 3 Exhibit)(SUPLEE, DENNIS) (Entered: 07/14/2021) |
| 07/14/2021 | 11437 | RESPONSE in Opposition re 11430 MOTION for Order to Show Cause *CORRECTED*, 11429 MOTION for Order to Show Cause filed by RICHARD COLLINS. (COLLINS, RICHARD) (Entered: 07/14/2021) |
| 07/15/2021 | 11438 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/15/2021. 7/15/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (ems) (Entered: 07/15/2021) |
| 07/16/2021 | 11439 | ORDER THAT THE PARTIES AND COUNSEL ARE NOT TO DISCUSS WITH PERSONS NOT AUTHORIZED TO PARTICIPATE IN THE MEDIATION EITHER PROPOSED SETTLEMENT TERMS OR THE STATUS OF NEGOTIATIONS WHILE THE MEDIATION DISCUSSIONS ARE ONGOING. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/16/2021. 7/16/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS) (ems) (Entered: 07/16/2021) |
| 07/19/2021 | 11440 | RESPONSE to Motion re 11422 MOTION to Amend/Correct *Rules Governing Payment of Claims Involving Third-Party Funders* filed by PLAINTIFF(S). (Attachments: # 1 Declaration of Christopher A. Seeger, # 2 Exhibit A, # 3 Exhibit B) (SEEGER, CHRISTOPHER) (Entered: 07/19/2021) |
| 07/19/2021 | 11441 | REPLY to Response to Motion re 11430 MOTION for Order to Show Cause *CORRECTED* filed by CLAIMS ADMINISTRATOR. (Attachments: # 1 Exhibit 1: Order Staying Proceedings, # 2 Exhibit 2: Case Closing Order Leon County, FL, # 3 Exhibit 3: Notice of Hearing Leon County, FL, # 4 Exhibit 4: Motion for Emergency Hearing Temporary Injunction, # 5 Exhibit 5: Declaration of Roma Petkauskas) (BROWN, ORRAN) (Entered: 07/19/2021) |
| 07/20/2021 | 11442 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Michael Hamlin* (LOCKS, GENE) (Entered: 07/20/2021) |
| 07/27/2021 | 11443 | ORDER of USCA as to 11239 Notice of Appeal filed by Najeh Davenport, Kevin Henry. Class members Najeh Davenport and Kevin Henry appealed the district court's 11/20/21 order denying their motion seeking relief from the class settlement agreement. |

| | | Because the order is not final or otherwise appealable, the appeal is hereby dismissed. (mbh, ) (Entered: 07/27/2021) |
|---|---|---|
| 07/27/2021 | [11444](#) | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Peter Warrick). (mbh, ) (Entered: 07/27/2021) |
| 07/28/2021 | [11445](#) | REPLY to Response to Motion re [11430](#) MOTION for Order to Show Cause *CORRECTED*, [11429](#) MOTION for Order to Show Cause *Sur-Reply* filed by RICHARD COLLINS. (COLLINS, RICHARD) (Entered: 07/28/2021) |
| 07/28/2021 | [11447](#) | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for Final Decision (Ron Solt)(mbh, ) (Entered: 07/29/2021) |
| 07/28/2021 | [11452](#) | Notice, Consent and Reference of an Attorneys' Lien Dispute to a Magistrate Judge for a Final Decision (Ron Solt v. Locks Law Firm)(mbh, ) (Entered: 07/30/2021) |
| 07/29/2021 | [11446](#) | REPORT AND RECOMMENDATION THAT THE CLAIMS ADMINISTRATOR BE ORDERED TO DESIGNATE AND RELEASE THE FUNDS WITHHELD FROM ATTORNEY'S FEES AND COSTS. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/28/21. 7/29/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS) (mbh, ) (Attachments: # [1](#) Proposed Order, # [2](#) Notice) (Entered: 07/29/2021) |
| 07/29/2021 | [11448](#) | RESPONSE in Support re [11422](#) MOTION to Amend/Correct *Rules Governing Payment of Claims Involving Third-Party Funders* filed by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 07/29/2021) |
| 07/29/2021 | [11449](#) | Report of the Special Masters. (mbh, ) (Entered: 07/29/2021) |
| 07/29/2021 | [11450](#) | BAP Administrator Status Report - 2nd Quarter 2021. (mbh, ) (Entered: 07/29/2021) |
| 07/29/2021 | [11451](#) | Claims Administrator Status Report No. 13. (mbh, ) (Entered: 07/29/2021) |
| 08/03/2021 | [11453](#) | Second MOTION for Release of Funds *(Ruling on and Eliminiation of Hold-Back Funds* filed by PLAINTIFF(S).Renewed Motion to Release-Ruling, Brief in Support and Certificate of Service.(ACHO, JAMES) (Entered: 08/03/2021) |
| 08/04/2021 | [11456](#) | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Sidney Thornton)(mbh, ) (Entered: 08/09/2021) |
| 08/06/2021 | [11454](#) | EXPLANATION AND ORDER (S.T.) THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATIONS. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 8/5/21. 8/6/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS).(mbh, ) (Entered: 08/06/2021) |
| 08/06/2021 | [11455](#) | EXPLANATION AND ORDER (P.W.) THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATIONS. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 8/5/21. 8/6/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS).(mbh, ) (Entered: 08/06/2021) |

| 08/11/2021 | 11457 | MOTION to Withdraw as Attorney *for Randall Morris* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 08/11/2021) |
| 08/11/2021 | 11458 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Randall Morris* (Attachments: # 1 Exhibit Petition to Establish Attorneys Lien)(GUDMUNDSON, BRIAN) (Entered: 08/11/2021) |
| 08/11/2021 | 11459 | MOTION to Withdraw as Attorney *for Claudie Minor, Jr.. and Vicki Ann Minor* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 08/11/2021) |
| 08/11/2021 | 11460 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Claudie Minor, Jr. and Vicki Ann Minor* (Attachments: # 1 Exhibit Petition to Establish Attorneys Lien) (GUDMUNDSON, BRIAN) (Entered: 08/11/2021) |
| 08/12/2021 | 11461 | NOTICE of Withdrawal of Appearance by AHMED S. DIAB on behalf of IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION(DIAB, AHMED) (Entered: 08/12/2021) |
| 08/17/2021 | 11462 | RESPONSE to Motion re 11453 Second MOTION for Release of Funds *(Ruling on and Eliminiation of Hold-Back Funds* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 08/17/2021) |
| 08/18/2021 | 11463 | NOTICE by RICHARD COLLINS *Notice of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(COLLINS, RICHARD) (Entered: 08/18/2021) |
| 08/19/2021 | 11464 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Stacey Bailey)(mbh, ) (mbh, ) (Entered: 08/20/2021) |
| 08/19/2021 | 11465 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (S. Bailey)(mbh, ) (mbh, ) (Entered: 08/20/2021) |
| 08/19/2021 | 11466 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (R. Lee)(mbh, ) (mbh, ) (Entered: 08/20/2021) |
| 08/19/2021 | 11467 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Ronnie Lee)(mbh, ) (mbh, ) (Entered: 08/20/2021) |
| 08/20/2021 | 11468 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Stacey Bailey) (mbh, ) (Entered: 08/20/2021) |
| 08/20/2021 | 11469 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Stacey Bailey - 2) (mbh) (Entered: 08/20/2021) |
| 08/23/2021 | 11470 | ORDER THAT MOTIONS FOR LEAVE TO WITHDRAW (ECF NOS. 11457 AND 11459) ARE GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 8/23/21.8/23/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh, ) (Entered: 08/23/2021) |
| 08/23/2021 | 11471 | ORDER THAT MOTIONS FOR LEAVE TO WITHDRAW (ECF NOS. 11457 AND 11459) ARE GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 8/23/21.8/23/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh, ) (Entered: 08/23/2021) |
| 08/23/2021 | 11472 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Stacey Bailey) (mbh, ) (Entered: 08/24/2021) |
| 08/23/2021 | 11473 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Ronnie Lee) (mbh, ) (mbh, ) (Entered: 08/24/2021) |

**-756-**

| 08/24/2021 | 11474 | ORDER THAT MOTION FOR ORDER TO SHOW CAUSE (ECF NO. 11429), MOTION FOR ORDER TO SHOW CAUSE (ECF NO. 11430) AND MOTION TO ENJOIN FLORIDA ACTION PURSUANT TO ALL WRITS ACT (ECF NO. 11436) ARE DENIED AS MOOT. SIGNED BY HONORABLE ANITA B. BRODY ON 8/24/21.8/24/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh, ). (Entered: 08/24/2021) |
| 08/24/2021 | 11475 | ORDER THAT THE REPORT AND RECOMMENDATION IS ADOPTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY HONORABLE ANITA B. BRODY ON 8/24/21. 8/24/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh, ) (mbh, ) (Entered: 08/24/2021) |
| 08/26/2021 | 11476 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/26/2021) |
| 08/26/2021 | 11477 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Frank Stams* (LUCKASEVIC, JASON) (Entered: 08/26/2021) |
| 08/30/2021 | 11478 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Marcus D. Gastineau) (mbh, ) (mbh, ) (Entered: 08/30/2021) |
| 09/01/2021 | 11479 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 09/01/2021) |
| 09/01/2021 | 11480 | NOTICE by Langfitt Garner PLLC *Attorney's Lien regarding Wilbert Montgomery* (LANGFITT, DAVID) (Entered: 09/01/2021) |
| 09/03/2021 | 11481 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision (Donald Westbrook v. Zimmerman Reed) (mbh, ) (Entered: 09/03/2021) |
| 09/22/2021 | 11482 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINITRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/22/21. 9/22/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh, ) (Entered: 09/22/2021) |
| 09/24/2021 | 11483 | MOTION to Withdraw as Attorney *for Solomon Brannan, Jr. and Delores Jean Brannan* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order) (GUDMUNDSON, BRIAN) (Entered: 09/24/2021) |
| 09/24/2021 | 11484 | NOTICE by PLAINTIFF(S) *of Attorney's Lien for Solomon Brannan, Jr. and Delores Brannan* (Attachments: # 1 Exhibit Petition to Establish Attorneys Lien) (GUDMUNDSON, BRIAN) (Entered: 09/24/2021) |
| 09/24/2021 | 11485 | STIPULATION AND ORDER WAIVING RIGHTS TO APPEAL FINAL DECISION OF THE HONORABLE DAVID R. STRAWBRIDGE, USMJ. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/24/21. 9/24/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh, ) (Entered: 09/24/2021) |
| 09/28/2021 | 11486 | Emergency MOTION Emergency Consent Motion for Direct Payment of Loan Resolution Amount (George W. McCullough, Jr.) filed by THRIVEST SPECIALTY |

| | | |
|---|---|---|
| | | FUNDING, LLC.Memorandum Brief and Certificate of Service.(BUCKLEY, PETER) (Entered: 09/28/2021) |
| 09/28/2021 | 11487 | Certified Copy of Conditional Transfer Order (CTO-110) Pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the action(s) on the attached schedule are transferred under 28 U.S.C. § 1407 to the Eastern District of Pennsylvania for the reasons stated in the order of January 31, 2012, and, with the consent of that court, assigned to the Honorable Anita B. Brody. (mbh, ) (Entered: 09/28/2021) |
| 09/30/2021 | 11488 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 09/30/2021) |
| 09/30/2021 | 11489 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Rodney Hampton and Andetria Hampton* (LUCKASEVIC, JASON) (Entered: 09/30/2021) |
| 09/30/2021 | 11490 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 09/30/2021) |
| 09/30/2021 | 11491 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Robert J. Cryder and Lisa Cryder* (LUCKASEVIC, JASON) (Entered: 09/30/2021) |
| 09/30/2021 | 11492 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/30/21. 10/1/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh, ) (Entered: 10/01/2021) |
| 09/30/2021 | 11493 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/30/21. 10/1/21 ENTERED AND COPIES E-MAILED TO LAIASON COUNSEL.(mbh, ) (Entered: 10/01/2021) |
| 10/01/2021 | 11494 | ORDER THAT NO LATER THAN 10/15/21 TE MEDIATING PARTIES MUST FILE A PROPOSED SETTLEMENT AGREEMENT RESOLVING THESE ISSUES. THEREAFTER THE COURT WILL ANNOUNCE A PROCEDURE FOR SOLICITING INPUT FROM CLASS MEMBERS. SIGNED BY HONORABLE ANITA B. BRODY ON 10/1/21. 10/1/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh, ) (Entered: 10/01/2021) |
| 10/08/2021 | 11495 | ORDER THAT THE CLAIMS ADMINISTRATOR DIRECT THE SETTEMENT TRUSTEE TO DEDUCT THE LOAN RESOLUTION AMOUNT SPECIFIED IN THE PAYOFF AGREEMENT BETWEEN MR. GEORGE W. MCULLOUGH, JR. AND BALANCED BRIDGE FUNDING LLC F/K/A THIVEST SPECIALTY FUNDING FROM MR. MCCULLOUGH'S FORTHCOMING MONETARY AWARD AND TO PAY SUCH AMOUNT DIRECTLY TO THRIVEST. SIGNED BY HONORABLE ANITA B. BRODY ON 10/8/21. 10/8/21 ENTERED AND COPIES E-MAILED TO LAIASON COUNSEL.(mbh, ) (Entered: 10/08/2021) |
| 10/14/2021 | 11496 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Irvin Eatman* (LOCKS, GENE) (Entered: 10/14/2021) |

| 10/14/2021 | 11497 | NOTICE by PLAINTIFF(S) *(Clarke) Notice of Attorney's Lien* (KARATINOS, THEODORE) (Entered: 10/14/2021) |
| 10/14/2021 | 11498 | NOTICE by PLAINTIFF(S) *(McCullough) Notice of Attorney's Lien* (KARATINOS, THEODORE) (Entered: 10/14/2021) |
| 10/14/2021 | 11499 | Letter dated October 14, 2021, Requesting for Extension to File a Proposed Settlement Agreement on Behalf of the Mediation Parties by NATIONAL FOOTBALL LEAGUE FOUNDATION, NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 10/14/2021) |
| 10/15/2021 | 11500 | ORDER THAT THE PARTIES MUST FILE THEIR PROPOSED SETTLEMENT AGREEMENT RESOLVING RACE-NORMING ISSUES ON OR BEFORE 10/20/21. THE PROPOSED AGREEMENT WILL BE FILED UNDER SEAL, PENDING COURT REVIEW. SIGNED BY HONORABLE ANITA B. BRODY ON 10/15/21. 10/15/21 ENTERED AND COPIES E-MAILED TO LAIASON COUNSEL.(mbh, ) (Entered: 10/15/2021) |
| 10/15/2021 | 11501 | ORDER THAT ZIMMERMAN REED LLP'S MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR PLAINTIFFS SOLOMON BRANNAN, JR. AND DELORES JEAN BRANNAN IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 10/15/21.10/15/21 ENTERED AND COPIES E-MAILED TO LAIASON COUNSEL.(mbh, ) (Entered: 10/15/2021) |
| 10/20/2021 | 11502 | SETTLEMENT AGREEMENT.(mbh, ). (UNSEALED PER ORDER #11507) (Entered: 10/20/2021) |
| 10/21/2021 | 11503 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 10/21/2021) |
| 10/21/2021 | 11504 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 10/21/2021) |
| 10/21/2021 | 11505 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 10/21/2021) |
| 10/21/2021 | 11506 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(BUCKLEY, DAVID) (Entered: 10/21/2021) |
| 10/21/2021 | 11507 | ORDER THAT THE CLERK'S OFFICE IS TO LIFT THE SEAL ON THE PARTIES' PROPOSED SETTLEMENT AGREEMENT (12-md-2323, ECF No. 11502). SIGNED BY HONORABLE ANITA B. BRODY ON 10/21/21. 10/21/21 ENTERED AND COPIES E-MAILED TO LAIASON COUNSEL.(mbh, ) (Entered: 10/21/2021) |
| 10/21/2021 | 11508 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Barry Krauss* (LOCKS, GENE) (Entered: 10/21/2021) |
| 10/26/2021 | 11509 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Kenneth Clarke. (mbh, ) (Entered: 10/26/2021) |
| 10/27/2021 | 11510 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Kenneth Davis. (mbh, ) (Entered: 10/27/2021) |
| 10/27/2021 | 11511 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Kenneth Clarke. (mbh, ) (Entered: 10/27/2021) |
| 10/27/2021 | 11512 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Joseph B. Johnston. (mbh, ) (Entered: 10/27/2021) |

| 10/28/2021 | 11513 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - George McCullough. (mbh, ) (Entered: 10/28/2021) |
| 10/28/2021 | 11514 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Chad F. Fann. (mbh, ) (Entered: 10/29/2021) |
| 10/28/2021 | 11515 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Patrick S. Thomas. (mbh, ) (Entered: 11/01/2021) |
| 10/28/2021 | 11518 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - George McCullough. (mbh, ) (Entered: 11/01/2021) |
| 11/01/2021 | 11516 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Marlon Jones* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 11/01/2021) |
| 11/01/2021 | 11517 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Joseph B. Johnson. (mbh, ) (Entered: 11/01/2021) |
| 11/02/2021 | 11519 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Gerald Dixon* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 11/02/2021) |
| 11/03/2021 | 11520 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Chad F. Fann. (mbh, ) (Entered: 11/03/2021) |
| 11/03/2021 | 11521 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Joseph B. Johnston. (mbh, ) (Entered: 11/03/2021) |
| 11/04/2021 | 11522 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Eric W. Martin.(mbh, ) (Entered: 11/04/2021) |
| 11/05/2021 | 11523 | Letter dated November 5, 2021 by NATIONAL FOOTBALL LEAGUE, INC.. (KARP, BRAD) (Entered: 11/05/2021) |
| 11/08/2021 | 11524 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Brian Kelly* (LOCKS, GENE) (Entered: 11/08/2021) |
| 11/08/2021 | 11525 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Fred Baxter* (LOCKS, GENE) (Entered: 11/08/2021) |
| 11/08/2021 | 11526 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Dale Hackbart* (LOCKS, GENE) (Entered: 11/08/2021) |
| 11/08/2021 | 11527 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Ronald Bolton* (LOCKS, GENE) (Entered: 11/08/2021) |
| 11/09/2021 | 11528 | Report of the Special Masters by DAVID HOFFMAN, WENDELL E. PRITCHETT and JO-ANN M. VERRIER. (mbh, ) (Entered: 11/09/2021) |
| 11/09/2021 | 11529 | Claims Administrator Status Report No. 14 (mbh, ) (Entered: 11/09/2021) |
| 11/09/2021 | 11530 | BAP Administrator Status Report - 3rd Quarter 2021. (mbh, ) (Entered: 11/09/2021) |
| 11/09/2021 | 11531 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Manny Hendrix* (LOCKS, GENE) (Entered: 11/09/2021) |
| 11/10/2021 | 11532 | NOTICE by DOUGLAS R. GROSSINGER *Attorney Lien Re: Reginald Hayward* (Attachments: # 1 Exhibit Attorney retainer, # 2 Exhibit E-Mail re: David Levine termination, # 3 Exhibit Grossinger representation & Levine Termination)(Grossinger, Douglas) (Entered: 11/10/2021) |

**-760-**

| 11/12/2021 | 11533 | MEMORANDUM AND/OR OPINION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/12/21. 11/15/21 ENTERED AND COPIES E-MAILED TO LAIASON COUNSEL.(mbh, ) (Entered: 11/15/2021) |
|---|---|---|
| 11/12/2021 | 11534 | ORDER THAT THE CLAIMS ADMINISTRATOR SHALL DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE MEMORANDUM OPINION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/12/21. 11/15/21 ENTERED AND COPIES E-MAILED TO LAIASON COUNSEL.(mbh, ) (Entered: 11/15/2021) |
| 11/12/2021 | 11535 | MEMORANDUM AND/OR OPINION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/12/21. 11/15/21 ENTERED AND COPIES E-MAILED TO LAIASON COUNSEL.(mbh, ) (Entered: 11/15/2021) |
| 11/12/2021 | 11536 | ORDER THAT THE CLAIMS ADMINISTRATOR IS ORDERED TO DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE MEMORANDUM OPINION, THE PROVISIONS OF THE SETTEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/12/21. 11/15/21 ENTERED AND COPIES E-MAILED TO LAIASON COUNSEL.(mbh, ) (Entered: 11/15/2021) |
| 11/16/2021 | 11537 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 11/16/2021) |
| 11/16/2021 | 11538 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Keno Hills* (LUCKASEVIC, JASON) (Entered: 11/16/2021) |
| 11/16/2021 | 11539 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (C. Darby)* (KARATINOS, THEODORE) (Entered: 11/16/2021) |
| 11/18/2021 | 11540 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Melvin Renfro. (mbh, ) (Entered: 11/18/2021) |
| 11/18/2021 | 11541 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Marion Todd Peat.(mbh, ) (Entered: 11/18/2021) |
| 11/18/2021 | 11542 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Marion Todd Peat.(mbh, ) (Entered: 11/18/2021) |
| 11/22/2021 | 11543 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Marion Todd Peat. (mbh, ) (Entered: 11/22/2021) |
| 11/23/2021 | 11544 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Joseph Delamielleure. (mbh, ) (Entered: 11/23/2021) |
| 11/23/2021 | 11545 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Bobby Abrams. (mbh, ) (mbh, ) (Entered: 11/23/2021) |
| 11/24/2021 | 11546 | NOTICE by PLAINTIFF(S) *Attorney's Lien regarding Arnold Campbell* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 11/24/2021) |
| 11/24/2021 | 11547 | ORDER of USCA. ORDERED and ADJUDGED by this Court that the order of the District Court entered on July 2, 2019 is AFFIRMED. Costs to be taxed against Appellant. All of the above in accordance with the Opinion of this Court. (mbh, ) (Entered: 11/24/2021) |
| 12/01/2021 | 11548 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Bobby Abrams. (mbh, ) (Entered: 12/01/2021) |

| 12/01/2021 | 11549 | Withdrawal of Attorney's Lien Dispute.(mbh, ) (Entered: 12/01/2021) |
|---|---|---|
| 12/02/2021 | 11550 | NOTICE by THRIVEST SPECIALTY FUNDING, LLC *Notice of Filing of Petition for Writ of Mandamus* (Attachments: # 1 Petition for Writ of Mandamus with exhibits) (BUCKLEY, PETER) (Entered: 12/02/2021) |
| 12/02/2021 | 11551 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Reginald J. Hayward, Jr. (mbh, ) (Entered: 12/02/2021) |
| 12/02/2021 | 11552 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Reginald J. Hayward, Jr. (mbh, ) (Entered: 12/03/2021) |
| 12/03/2021 | 11553 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Reginald J. Hayward, Jr.(mbh, ) (Entered: 12/03/2021) |
| 12/07/2021 | 11554 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Chartric Darby. (mbh, ) (Entered: 12/08/2021) |
| 12/08/2021 | 11555 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Ricky Feacher. (mbh, ) (Entered: 12/09/2021) |
| 12/08/2021 | 11556 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Alfred Anderson. (mbh, ) (Entered: 12/09/2021) |
| 12/14/2021 | 11557 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Melvin Rendfro. (mbh, ) (Entered: 12/14/2021) |
| 12/15/2021 | 11558 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien* (SHENAQ, AMIR) (Entered: 12/15/2021) |
| 12/16/2021 | 11559 | ORDER of USCA. ORDERED and ADJUDGED by this Court that the order of the District Court entered on July 2, 2019 is AFFIRMED. Costs to be taxed against Appellant. All of the above in accordance with the Opinion of this Court. (mbh, ) (Entered: 12/16/2021) |
| 12/16/2021 | 11560 | NOTICE by PLAINTIFF(S) *of Filing of Answer to Petition for Writ of Mandamus* (Attachments: # 1 Exhibit 1)(SEEGER, CHRISTOPHER) (Entered: 12/16/2021) |
| 12/20/2021 | 11561 | NOTICE of Appearance by Craig Kelley on behalf of PROASSURANCE CORPORATION (Kelley, Craig) (Entered: 12/20/2021) |
| 12/20/2021 | 11562 | NOTICE by PROASSURANCE CORPORATION (Attachments: # 1 Exhibit Assignment of Proceeds)(Kelley, Craig) (Entered: 12/20/2021) |
| 12/21/2021 | 11563 | SUPPLEMENTAL REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE DENIED AND THE CLAIMS ADMINISTRATOR BE ORDERED TO ISSUE A NEW SCHEDULE OF DOCUMENT SUBMISSIONS FOR BRIEFING AND RESOLUTION OF THESE LIEN DISPUTES. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/21/21. 12/22/21 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (Attachments: # 1 Notice)(mbh, ) (Entered: 12/22/2021) |
| 12/21/2021 | 11564 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Najeh Davenport. (mbh, ) (Entered: 12/23/2021) |
| 12/23/2021 | 11565 | SUPPLEMENTAL REPORT AND RECOMMENDATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/23/2021. (Attachments: # 1 Text of Proposed Order, # 2 Notice) 12/23/2021 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (ems) (Entered: 12/23/2021) |

| 12/30/2021 | 11566 | NOTICE by PLAINTIFF(S) *Thomas Tapeh of Attorney's Lien* (Attachments: # 1 Exhibit A - Petition to Establish Attorney's Lien)(KUNTZ, JEFFREY) (Entered: 12/30/2021) |
| 12/30/2021 | 11567 | MOTION for Approval *of Modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC.Certificate of Service. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(KARP, BRAD) (Entered: 12/30/2021) |
| 01/03/2022 | 11568 | NOTICE: NFL CONCUSSION SETTLEMENT - THE ELIMINATION OF RACE AS A CONSIDERATION IN THE ASSESSMENT OF NEUROPSYCHOLOGICAL TEST RESULTS. 1/3/22 SIGNED BY THE HONORABLE ANITA B. BRODY. (mbh, ) (Entered: 01/03/2022) |
| 01/03/2022 | 11569 | ORDER of USCA for the Third Circuit. In NFL Players Concussion Injury Litigation, 923 F.3d 96, 101 (3d Cir. 2019), we held that the District Court could not void litigation-funding agreements. Thus, players were not automatically entitled to settlement proceeds, and litigation funders could assert their rights outside that case in litigation or arbitration. Id. at 113. Because the high standard for mandamus is not currently met, we deny the petition without prejudice. We remain fully confident that the District Court will promptly and fairly administer the settlement to ensure that [g]oing forward, the litigation funding companies will be able to pursue, outside of the claims administration process, whatever rights they may continue to have to enforc[e] the funding agreements and lay claim to the disbursed settlement funds. Id.(mbh, ) (Entered: 01/03/2022) |
| 01/03/2022 | 11570 | RESPONSE in Support re 11422 MOTION to Amend/Correct *Rules Governing Payment of Claims Involving Third-Party Funders* filed by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 01/03/2022) |
| 01/04/2022 | 11571 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Corey Mayfield. (mbh, ) (Entered: 01/05/2022) |
| 01/04/2022 | 11572 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Aubrey Matthews. (mbh, ) (Main Document 11572 replaced on 1/10/2022) (mbh). (Entered: 01/05/2022) |
| 01/04/2022 | 11573 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Vallery Brown. (mbh, ) (Main Document 11573 replaced on 1/10/2022) (mbh). (Entered: 01/05/2022) |
| 01/05/2022 | 11574 | Memorandum re 11567 MOTION for Approval *of Modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6 Joinder in Support of Motion* filed by PLAINTIFF(S). (WYATT, JUSTIN) Modified on 1/7/2022 (mbh). (Entered: 01/05/2022) |
| 01/06/2022 | 11575 | MOTION for Joinder *to the Motion of the NFL Parties and Class Counsel to Approve Modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6* filed by PLAINTIFF(S)..(SHENAQ, AMIR) (Entered: 01/06/2022) |
| 01/07/2022 | 11576 | OBJECTION to 11565 Report and Recommendations *(Supplemental)* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/07/2022) |
| 01/07/2022 | 11577 | OBJECTION to 11563 Report and Recommendations *(Supplemental)* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 01/07/2022) |
| 01/07/2022 | 11578 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO |

| | | DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/7/22. 1/7/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL(mbh) (Entered: 01/07/2022) |
|---|---|---|
| 01/07/2022 | 11579 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/7/22. 1/7/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL(mbh) (Entered: 01/07/2022) |
| 01/07/2022 | 11580 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/7/22. 1/7/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL(mbh) (Entered: 01/07/2022) |
| 01/07/2022 | 11581 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Fallon J. Tucker. (mbh) (Entered: 01/10/2022) |
| 01/10/2022 | 11584 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/10/22. 1/11/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/11/2022) |
| 01/10/2022 | 11585 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/10/22. 1/11/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/11/2022) |
| 01/10/2022 | 11586 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/10/22. 1/11/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/11/2022) |
| 01/10/2022 | 11587 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/10/22. 1/11/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/11/2022) |

| 01/10/2022 | 11588 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/10/22. 1/11/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/11/2022) |
|---|---|---|
| 01/10/2022 | 11589 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/10/22. 1/11/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/11/2022) |
| 01/11/2022 | 11582 | Memorandum MOTION for Joinder to the Motion of the NFL Parties and Class Counsel to Approve Modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6 re 11567 MOTION for Approval *of Modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6* filed by PLAINTIFF(S). (CUTHBERT, BYRON) (Entered: 01/11/2022) |
| 01/11/2022 | 11583 | STIPULATION AND ORDER JR WYATT LAW PLLC, ATTORNEYS FOR CLASS MEMBER SPID #10003594 AND WEISBERG AND ASSOC AGREE TO WAIVE ANY RIGHT TO APPEAL THE 1/7/22, EXPLANATION AND ORDER ATTACHED HERETO TO EXHIBIT A, ETC. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/11/22. 1/11/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh ) (Entered: 01/11/2022) |
| 01/12/2022 | 11590 | ORDER THAT THE FOLLOWING MOTIONS ARE DENIED AS MOOT: PLAINTIFF'S MOTION TO CORRECT A MISTAKE IN APPLICATION OF THE SETTLEMENT AGREEMENT TO PLAINTIFF'S COMPLAINT (ECF NO. 10817) AND PLAINTIFF'S MOTION FOR AN INDICATIVE RULING (ECF NO. 10985). SIGNED BY HONORABLE ANITA B. BRODY ON 1/11/22.1/12/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/12/2022) |
| 01/12/2022 | 11591 | STIPULATION re 11584 Order, by DOUGLAS R. GROSSINGER. (Grossinger, Douglas) (Entered: 01/12/2022) |
| 01/12/2022 | 11592 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/12/22. 1/12/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/12/2022) |
| 01/12/2022 | 11593 | STIPULATION AND ORDER WAIVING THE RIGHT TO APPEAL FINAL DECISION OF THE HONORABLE DAVID R. STRAWBRIDGE. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/12/22. 1/12/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/12/2022) |
| 01/12/2022 | 11594 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELDF FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE |

-765-

| | | |
|---|---|---|
| | | JUDGE DAVID R. STRAWBRIDGE ON 1/12/22. 1/13/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 01/13/2022) |
| 01/12/2022 | 11595 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELDF FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/12/22. 1/13/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh ) (Entered: 01/13/2022) |
| 01/13/2022 | 11596 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Arthur Whittington* (LOCKS, GENE) (Entered: 01/13/2022) |
| 01/13/2022 | 11597 | STIPULATION AND ORDER THAT ALL UNDERSIGNED PARTIES WAIVE THEIR RIGHT TO APPEAL THE FINAL DECISION REGARDING THE NOTICE OF ATTORNEY'S LIEN SEEKING ATTORNEY'S FEES AND COSTS FROM ANY MONETARY AWARD TO BE PAID TO SETTLEMENT CLASS MEMBER P.T. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/13/22. 1/13/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/13/2022) |
| 01/18/2022 | 11598 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/18/22. 1/18/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ZIMMERMAN REED V. SPID 100004726 (R.F.) ATTORNEY DISPUTE (CASE NO. 00370) (mbh ) (Entered: 01/18/2022) |
| 01/18/2022 | 11599 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/18/22. 1/18/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ZIMMERMAN REED V. SPID 100000294 (A.A.) ATTORNEY DISPUTE (CASE NO. (1668) (mbh ) (Entered: 01/18/2022) |
| 01/18/2022 | 11600 | Objections by PLAINTIFF(S) *to Magistrate Judge's Report and Recommendation Regarding Discharge of Attorney Lien by Howard and Associates, P.A..* (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3, # 4 Exhibit Exhibit 4, # 5 Exhibit Exhibit 5, # 6 Exhibit Exhibit 6, # 7 Exhibit Exhibit 7)(SHENAQ, AMIR) (Entered: 01/18/2022) |
| 01/21/2022 | 11601 | First MOTION for Joinder *Goldberg, Persky & White in the Motion of the NFL Parties to Approve Modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6 With Some Concerns* filed by PLAINTIFF(S)..(LUCKASEVIC, JASON) (Entered: 01/21/2022) |
| 01/24/2022 | 11602 | Letter dated January 24, 2022 from Class Counsel by PLAINTIFF(S). (Attachments: # 1 Exhibit Letter from Dr. Amy Lewis)(SEEGER, CHRISTOPHER) (Entered: 01/24/2022) |
| 01/25/2022 | 11603 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Reuben Davis* (LOCKS, GENE) (Entered: 01/25/2022) |
| 01/25/2022 | 11604 | NOTICE by PLAINTIFF(S) *(Jim LeJay) of Notice of Attorney Lien* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(KUNTZ, JEFFREY) (Entered: 01/25/2022) |
| 01/25/2022 | 11605 | MOTION to Withdraw as Attorney filed by EDDIE ANDERSON, Acosta and Associates LLC, RICHARD COLLINS, Najeh Davenport, KEVIN HENRY, TIM |

| | | HOWARD HOWARD AND ASSOCIATES ATTORNEYS AT LAW, P.A., Langfitt Garner PLLC.Certificate of Service.(TOMLINSON, WADE) (Entered: 01/25/2022) |
|---|---|---|
| 01/25/2022 | 11606 | MOTION for Joinder *MEYERS and FLOWERS LLC* filed by PLAINTIFF(S).. (FLOWERS, PETER) (Entered: 01/25/2022) |
| 01/25/2022 | 11607 | MOTION for Joinder *of Langfitt PLLC to Approve Modifications* filed by Langfitt Garner PLLC.Joinder of Langfitt PLLC to Approve Modifications.(LANGFITT, DAVID) (Entered: 01/25/2022) |
| 01/25/2022 | 11608 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Daunte R. Culpepper. (mbh) (Entered: 01/26/2022) |
| 01/26/2022 | 11609 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Arnold Ale* (LOCKS, GENE) (Entered: 01/26/2022) |
| 01/27/2022 | 11610 | NOTICE by PLAINTIFF(S) *Attorney Lien- Duval Love* (CUTHBERT, BYRON) (Entered: 01/27/2022) |
| 01/27/2022 | 11611 | NOTICE by PLAINTIFF(S) *Attorney Lien - Aveion Cason* (CUTHBERT, BYRON) (Entered: 01/27/2022) |
| 01/27/2022 | 11612 | NOTICE by PLAINTIFF(S) *Attorney Lien - Houston George* (CUTHBERT, BYRON) (Entered: 01/27/2022) |
| 01/27/2022 | 11613 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Corey Mayfield. (mbh) (Entered: 01/27/2022) |
| 01/27/2022 | 11614 | Memorandum in Support re 11567 MOTION for Approval *of Modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6* filed by Najeh Davenport, KEVIN HENRY. (MARCUS, EZRA) (Entered: 01/27/2022) |
| 01/28/2022 | 11615 | REPORT OF THE SPECIAL MASTERS. (mbh) (Entered: 01/28/2022) |
| 01/28/2022 | 11616 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 15 (mbh) (Entered: 01/28/2022) |
| 01/28/2022 | 11617 | BAP ADMINISTRATOR STATUS REPORT 4th QUARTER 2021 (mbh) (Entered: 01/28/2022) |
| 01/31/2022 | 11618 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/31/22. 1/31/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO GOLDBERG PERSKY & WHITE v. SPID 100009759 (E.W.M.) ATTORNEY LIEN DISPUTE (CASE NO. (00819).(mbh) (Entered: 01/31/2022) |
| 02/01/2022 | 11619 | ORDER THAT ON OR BEFORE 2/4/22 BROWNGREER MUST FILE ON THIS DOCKET A MEMORANDUM INCLUDING - WHERE PRIVACY OF CLASS MEMBERS PERMIT - THE COMMENTS AND QUESTIONS RECEIVED, ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 2/1/22. 2/1/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (RELATES TO ALL ACTIONS) (mbh) (Entered: 02/01/2022) |
| 02/01/2022 | 11620 | ORDER THAT THE COMPLAINT FILED BY SETTLEMENT CLASS MEMBER CONNIE JOANN BAKER (CASE NO. 21-CV-4588 ECF NO. 1) IS DISMISSED WITH PREJUDICE. THE CLERK IS DIRECTED TO MARK CASE NO. 21-CV-4588 AS CLOSED. SIGNED BY HONORABLE ANITA B. BRODY ON 1/25/22. 2/2/22 ENTERED AND COPIES MAILED TO BAKER BY CHAMBERS AND E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 02/02/2022) |

| 02/02/2022 | 11621 | NOTICE of Appearance by Roma Petkauskas on behalf of CLAIMS ADMINISTRATOR (Petkauskas, Roma) (Entered: 02/02/2022) |
|---|---|---|
| 02/04/2022 | 11622 | Memorandum Regarding Submissions to the Inquiry Inbox re 11567 MOTION for Approval *of Modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6 Claims Administrator's Memorandum Regarding Submissions to the Inquiry Inbox* filed by CLAIMS ADMINISTRATOR. (Attachments: # 1 Exhibit Inquiries)(Petkauskas, Roma) (Entered: 02/04/2022) |
| 02/07/2022 | 11623 | EXPLANATION AND ORDER (F.J.T) THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/1/22. 2/7/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 02/07/2022) |
| 02/07/2022 | 11624 | EXPLANATION AND ORDER (D.C.) THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/1/22. 2/7/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 02/07/2022) |
| 02/07/2022 | 11625 | EXPLANATION AND ORDER (A.M.) THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/1/22. 2/7/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 02/07/2022) |
| 02/07/2022 | 11626 | STIPULATION AND ORDER WAIVING RIGHT TO APPEAL FINAL DECISION OF THE HONORABLE DAVID R. STRAWBRIDGE, UDMJ. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/7/22. 2/7/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 02/07/2022) |
| 02/07/2022 | 11627 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Wilbert N. Montgomery. (mbh) (Entered: 02/08/2022) |
| 02/09/2022 | 11628 | ORDER THAT WADE H. TOMLINSON'S MOTION TO WITHDRAW AS COUNSEL (ECF NO. 11605) IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 2/9/22.2/9/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 02/09/2022) |
| 02/09/2022 | 11629 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Garrison Hearst. (mbh)(mbh) (Entered: 02/09/2022) |
| 02/11/2022 | 11630 | RESPONSE in Support re 11567 MOTION for Approval *of Modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 02/11/2022) |
| 02/15/2022 | 11632 | ORDER RE: WAIVER OF APPEAL THAT ALL UNDERSIGNED PARTIES HEREBY WAIVE THEIR RIGHTS TO APPEAL THE FINAL DECISION REGARDING THE NOTICE OF ATTORNEY'S LIEN SEEKING ATTORNEY'S FEES AND COSTS FROM ANY MONETARY AWARD TO BE PAID TO SETTLEMENT CLASS MEMBER, A.M. AS A.M.'S COUNSEL SHENAQ PC |

-768-

| | | REPRESENTS THAT A.M. FULLY UNDERSTANDS THE TERMS AND THE IMPLICATIONS OF THE STIPULATION AND CONSENT TO THE WAIVER OF THE RIGHT TO APPEAL. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/15/22. 2/16/22 ENTERED AND COPIES EMAILED TO LIAISON COUNSEL.(mbh) (Entered: 02/16/2022) |
|---|---|---|
| 02/16/2022 | 11631 | RESPONSE in Support re 11601 First MOTION for Joinder *Goldberg, Persky & White in the Motion of the NFL Parties to Approve Modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6 With Some Concerns Request for Further Clarification Regarding the Motion to Approve Modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6 as Previously Filed by Goldberg, Persky & White, P.C.* filed by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 02/16/2022) |
| 02/17/2022 | 11633 | MOTION for Hearing filed by Patrick J Tighe.. (Attachments: # 1 Exhibit)(TIGHE, PATRICK) (Entered: 02/17/2022) |
| 02/18/2022 | 11635 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Damon Gibson. (mbh) (Entered: 02/23/2022) |
| 02/22/2022 | 11634 | EXPLANATION AND ORDER (V.B.) THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED.THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/22/22. 2/22/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 02/22/2022) |
| 02/23/2022 | 11636 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 02/23/2022) |
| 02/23/2022 | 11637 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-William and Susan Bradley* (LUCKASEVIC, JASON) (Entered: 02/23/2022) |
| 02/23/2022 | 11638 | RESPONSE in Support re 11567 MOTION for Approval *of Modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6 Mediating Parties Response to Request for Further Clarification Regarding Motion of the NFL Parties and Class Counsel To Approve Modifications to the NFL Concussion Settlement Agreement* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 02/23/2022) |
| 02/28/2022 | 11639 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Jessie Tuggle* (LOCKS, GENE) (Entered: 02/28/2022) |
| 02/28/2022 | 11640 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Gregory Lloyd* (LOCKS, GENE) (Entered: 02/28/2022) |
| 02/28/2022 | 11641 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Jack Squirek* (LOCKS, GENE) (Entered: 02/28/2022) |
| 02/28/2022 | 11642 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Tommie Funchess.(mbh) (Entered: 03/02/2022) |

| 03/03/2022 | 11643 | EXPLANATION AND ORDER (G.H) THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/3/22. 3/3/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 03/03/2022) |
|---|---|---|
| 03/03/2022 | 11644 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - William Bergey* (LOCKS, GENE) (Entered: 03/03/2022) |
| 03/03/2022 | 11645 | RESPONSE to Motion re 11633 MOTION for Hearing filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 03/03/2022) |
| 03/03/2022 | 11646 | RESPONSE to Motion re 11633 MOTION for Hearing filed by PLAINTIFF(S). (WYATT, JUSTIN) (Entered: 03/03/2022) |
| 03/03/2022 | 11647 | STIPULATION AND ORDER WAIVING RIGHTS TO APPEAL FINAL DECISION OF THE HONORABLE DAVID R. STRAWBRIDGE, USMJ. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/3/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 03/03/2022) |
| 03/04/2022 | 11648 | ORDER THAT THE MOTION OF THE NFL PARTIES AND CLASS COUNSEL IS GRANTED. PURSUANT TO SECTION 6.6 OF THE NFL CONCUSSION SETTLEMENT AGREEMENT (THE "CLASS ACTION SETTLEMENT AGREEMENT"), THE COURT APPROVES THE FOLLOWING MODIFICATIONS TO THE CLASS ACTION SETTLEMENT AGREEMENT AS FURTHER DESCRIBED IN THE MOTION, ETC. SIGNED BY HONORABLE ANITA B. BRODY ON 3/4/2022. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8) 3/4/2022 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS) (ems) (Entered: 03/04/2022) |
| 03/04/2022 | 11649 | MOTION for Leave to File filed by Patrick J Tighe.Motion for Leave. (Attachments: # 1 Exhibit)(TIGHE, PATRICK) (Entered: 03/04/2022) |
| 03/09/2022 | 11650 | MOTION to Withdraw as Attorney *for Reggie Rusk and Felecia Hanlon-Rusk* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 03/09/2022) |
| 03/09/2022 | 11651 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 03/09/2022) |
| 03/09/2022 | 11652 | MOTION to Withdraw as Attorney *for Daniel Johnson* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 03/09/2022) |
| 03/09/2022 | 11653 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 03/09/2022) |
| 03/09/2022 | 11654 | NOTICE of Withdrawal of Appearance by EZRA B. MARCUS on behalf of Najeh Davenport, KEVIN HENRY(MARCUS, EZRA) (Entered: 03/09/2022) |
| 03/09/2022 | 11655 | ORDER THAT THE FOLLOWING MOTIONS ARE DENIED AS MOOT: ECF NOS. 11320, 11574, 11575, 11601, 11606 AND 11607 AND ECF 86 ON 14-CV-29. SIGNED BY HONORABLE ANITA B. BRODY ON 3/9/22.3/9/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 03/09/2022) |

| 03/10/2022 | [11656](#) | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/10/22. 3/10/22 ENTERED AND COPIES EMAILED TO LIAISON COUNSEL.(mbh) (Entered: 03/10/2022) |
|---|---|---|
| 03/10/2022 | [11657](#) | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/10/22. 3/10/22 ENTERED AND COPIES EMAILED TO LIAISON COUNSEL.(mbh) (Entered: 03/10/2022) |
| 03/10/2022 | [11658](#) | MOTION for Order to Show Cause filed by PLAINTIFF(S).Unopposed Motion for Entry of Order to Show Cause. (Attachments: # [1](#) Exhibit 1)(SOHN, BRADFORD) (Entered: 03/10/2022) |
| 03/11/2022 | [11659](#) | ORDER THAT ON OR BEFORE 4/1/22 ANY PLAINTIFF NOT CURRENTLY LISTED ON THE ATTACHED EXHIBIT 1, BUT WHO BELIEVES THEY SHOULD BE LISTED, MUST FILE ON 19-MD-2323 A PETITION EXPLAINING WHY THEY SHOULD BE INCLUDED IN EXHIBIT 1. IT IS FURTHER ORDERED THAT ON OR BEFORE 4/15/22, LEAD COUNSEL FOR PLAINTIFFS AND/OR THE RIDDELL DEFENDANTS MAY FILE A RESPONSE TO ANY PETITION FILED PURSUANT TO THIS ORDER. SIGNED BY HONORABLE ANITA B. BRODY ON 3/11/22. 3/11/22 ENTERED AND COPIES EMAILED TO LIAISON COUNSEL. (Attachments: # [1](#) Exhibit) (mbh) (Entered: 03/11/2022) |
| 03/11/2022 | [11660](#) | ORDER THAT XILAW, PA'S MOTION FOR FAIRNESS HEARING IS DENIED. IT IS FURTHER ORDERED THAT XILAW, PA'S MOTION FOR LEAVE TO FILE IS DENIED AS MOOT. SIGNED BY HONORABLE ANITA B. BRODY ON 3/11/22. 3/14/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 03/14/2022) |
| 03/15/2022 | [11661](#) | Consent MOTION Establish Briefing Schedule for Intervenors' Counsel's Motion for Attorney's Fees and Expenses filed by Najeh Davenport, KEVIN HENRY.. (Attachments: # [1](#) Text of Proposed Order)(SMITH, CYRIL) (Entered: 03/15/2022) |
| 03/16/2022 | [11662](#) | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien by Smith and Stallworth (Atari Bigby)* (Attachments: # [1](#) Petition to Establish Attorney's Lien by Mark Stallworth, Esquire (Atari Bigby))(STALLWORTH, MARK) (Entered: 03/16/2022) |
| 03/16/2022 | [11663](#) | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien by Smith and Stallworth (James Wilder)* (Attachments: # [1](#) Petition to Establish Attorney's Lien by Mark Stallworth (James Wilder))(STALLWORTH, MARK) (Entered: 03/16/2022) |
| 03/16/2022 | [11664](#) | ORDER THAT INTERVENORS' KEVIN HENRY AND NAJEH DAVENPORT'S CONSENT MOTION FOR BRIEFING SCHEDULE IS GRANTED. INTERVENORS' COUNSEL MUST FILE ANY MOTION FOR ATTORNEY'S FEES AND EXPENSES ON OR BEFORE APRIL 1, 2022. ANY OPPOSITION MUST BE FILED ON OR BEFORE MAY 4, 2022, AND ANY REPLY BRIEF MUST BE FILED ON OR BEFORE MAY 25, 2022. SIGNED BY HONORABLE ANITA B. BRODY ON 3/16/2022. 3/16/2022 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS) (ems) Modified on 3/29/2022 (mbh). (STAYED PER ORDER #11675) (Entered: 03/16/2022) |

| 03/16/2022 | 11665 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien by Smith and Stallworth (Bobby Olive)* (Attachments: # 1 Petition to Establish Attorney's Lien by Mark Stallworth (Bobby Olive))(STALLWORTH, MARK) (Entered: 03/16/2022) |
|---|---|---|
| 03/17/2022 | 11666 | Pro Se Plaintiff Brandon Winey's Response to Show Cause Order Regarding Riddell Plaintiffs. (Attachments: # 1 Ex A, # 2 Ex B, # 3 Email) (mbh) (Entered: 03/17/2022) |
| 03/21/2022 | 11667 | Pro Se Plaintiff Nathaniel (Nate) Lewis's Response to Order Regarding Riddell Plaintiffs. (Attachments: # 1 Ex B, # 2 Ex C2, # 3 Ex D, # 4 Ex E3, # 5 Ex F, # 6 Ex G) (mbh) (Entered: 03/21/2022) |
| 03/22/2022 | 11668 | ORDER THAT IN LIGHT OF THE COURT'S ORDER OF 3/11/22, PLAINTIFFS' UNOPPOSED MOTION FOR ORDER FOR ORDER TO SHOW CAUSE (DOC. NO. 11658 ) IS DENIED AS MOOT. SIGNED BY HONORABLE ANITA B. BRODY ON 3/22/22.3/22/22 ENTERED AND COPIES EMAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS, 19-MD-2323)(amas) (Entered: 03/22/2022) |
| 03/23/2022 | 11669 | Exhibits to Pro Se Plaintiff Nathaniel (Nate) Lewis's Response to Order Regarding Riddell Plaintiffs (FILED UNDER SEAL)(mbh) (Additional attachment(s) added on 3/23/2022: # 1 Ex D, # 2 Ex E-3, # 3 Ex F) (mbh). (Entered: 03/23/2022) |
| 03/24/2022 | 11670 | NOTICE by KEVIN BRADLEY BURNETT, II *(Notice of Change of Law Firm Affiliation)* (INGE, VERNON) (Entered: 03/24/2022) |
| 03/24/2022 | 11671 | STIPULATION AND ORDER REGARDING WAIVER OF RIGHT TO APPEAL. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/24/22. 3/24/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(amas) (Entered: 03/24/2022) |
| 03/24/2022 | 11672 | STIPULATION AND ORDER REGARDING WAIVER OF RIGHT TO APPEAL. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/24/22. 3/24/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(amas) (Entered: 03/24/2022) |
| 03/25/2022 | 11673 | ORDER THAT ZIMMERMAN REED LLP'S MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR PLAINTIFF DANIEL JOHNSON IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 3/25/22. 3/25/22 ENTERED AND COPIES EMAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS). (mbh) (Entered: 03/25/2022) |
| 03/25/2022 | 11674 | ORDER THAT ZIMMERMAN REED LLP'S MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR PLAINTIFFS REGGIE RUSK AND FELICIA HANLON-RUSK IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 3/25/22.3/25/22 ENTERED AND COPIES E-MAILED TO LIAISON.(mbh) (Entered: 03/25/2022) |
| 03/29/2022 | 11675 | ORDER THAT THE BRIEFING SCHEDULE (ECF NO, 11664) FOR INTERVENORS' COUNSEL'S MOTION FOR ATTORNEY'S FEES AND EXPENSES IS STAYED. SIGNED BY HONORABLE ANITA B. BRODY ON 3/29/22. 3/29/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 03/29/2022) |
| 04/01/2022 | 11676 | RESPONSE TO ORDER TO SHOW CAUSE by Patrick J Tighe. (TIGHE, PATRICK) (Entered: 04/01/2022) |
| 04/07/2022 | 11677 | MOTION to Withdraw as Attorney *for Kenyon Rasheed and Traci Widenfeld-Rasheed* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order) (GUDMUNDSON, BRIAN) (Entered: 04/07/2022) |

| 04/07/2022 | 11678 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 04/07/2022) |
| 04/07/2022 | 11679 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Kevin Kay Jay Harris* (LOCKS, GENE) (Entered: 04/07/2022) |
| 04/14/2022 | 11680 | MOTION for Temporary Restraining Order *and Preliminary Injunction to Preserve Fee Distributions* filed by BALANCED BRIDGE FUNDING LLC.Brief, Certificate of Service. (Attachments: # 1 Brief, # 2 Exhibit A: Master Agreement, # 3 Exhibit B: Summary Judgment Opinion, # 4 Exhibit C: Interim Award, # 5 Exhibit D: Final Award, # 6 Exhibit E: Disqualification Opinion, # 7 Text of Proposed Order)(REED, ERIC) (Entered: 04/14/2022) |
| 04/18/2022 | 11681 | RESPONSE in Opposition re 11680 MOTION for Temporary Restraining Order *and Preliminary Injunction to Preserve Fee Distributions* filed by PLAINTIFF(S). (MITNICK, CRAIG) (Entered: 04/18/2022) |
| 04/20/2022 | 11683 | Ex Parte MOTION to Redact Personal Information re 11682 Notice (Other) filed by PROASSURANCE CORPORATION.Certificate of Service. (Attachments: # 1 Text of Proposed Order Order Granting Ex Parte Motion to Redact)(Kelley, Craig) (Entered: 04/20/2022) |
| 04/20/2022 | 11684 | Ex Parte MOTION to Redact Personal Information re 11682 Notice (Other) - *Amended* filed by PROASSURANCE CORPORATION.Certificate of Service. (Attachments: # 1 Text of Proposed Order Order Granting Ex Parte Motion to Redact)(Kelley, Craig) (Entered: 04/20/2022) |
| 04/20/2022 | 11685 | NOTICE of Withdrawal of re 11683 Ex Parte MOTION to Redact Personal Information re 11682 Notice (Other) *(re-filed)* (Kelley, Craig) (Entered: 04/20/2022) |
| 04/20/2022 | 11686 | ORDER THAT THE INTERESTED PARTY PROASSURANCE CORPORATION'S EX PARTE MOTION TO REDACT PERSONAL INFORMATION IS HEREBY GRANTED. THE CLERK IS HEREBY DIRECTED TO SEAL THE UNREDACTED DOCUMENT (DOC #11682). THE INTERESTED PARTY PROASSURANCE CORPORATION IS HEREBY DIRECTED TO REFILE THE DOCUMENT AS AMENDED AND REDACT SAME. SIGNED BY HONORABLE ANITA B. BRODY ON 4/20/22. 4/20/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL(mbh) (Entered: 04/20/2022) |
| 04/20/2022 | 11687 | NOTICE by PROASSURANCE CORPORATION re 11562 Notice (Other) (Attachments: # 1 Exhibit Limited Power of Attorney)(Kelley, Craig) (Entered: 04/20/2022) |
| 04/21/2022 | 11688 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 04/21/2022) |
| 04/21/2022 | 11689 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorney Fees--James Allen* (LUCKASEVIC, JASON) (Entered: 04/21/2022) |
| 04/26/2022 | 11690 | ORDER THAT BALANCED BRIDGE'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION IS DENIED. SIGNED BY HONORABLE ANITA B. BRODY ON 4/26/22.4/26/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 04/26/2022) |
| 04/26/2022 | 11691 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 04/26/2022) |

| 04/26/2022 | 11692 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Elroy Harris, Jr.* (LUCKASEVIC, JASON) (Entered: 04/26/2022) |
|---|---|---|
| 04/26/2022 | 11693 | ORDER THAT ZIMMERMAN REED LLP'S MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR PLAINTIFFS KENYON RASHEED AND TRACI WIEDENFELD-RASHEED IS GRANTED. SIGNED BY HONORABLE ANITA B. BRODY ON 4/26/22.4/26/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 04/26/2022) |
| 05/04/2022 | 11694 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Scott Conover* (LOCKS, GENE) (Entered: 05/04/2022) |
| 05/06/2022 | 11695 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/06/2022) |
| 05/06/2022 | 11696 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Torrey Wright* (LUCKASEVIC, JASON) (Entered: 05/06/2022) |
| 05/06/2022 | 11697 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 05/06/2022) |
| 05/06/2022 | 11698 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-George Jamison and Arnella L. Jamison* (LUCKASEVIC, JASON) (Entered: 05/06/2022) |
| 05/11/2022 | 11699 | NOTICE by Robins Cloud LLP *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 05/11/2022) |
| 05/12/2022 | 11700 | MOTION to Withdraw as Attorney *for Tony Galbreath* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 05/12/2022) |
| 05/12/2022 | 11701 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 05/12/2022) |
| 05/13/2022 | 11702 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to John W. Alexander, Jr.* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11703 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11704 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to William Banks* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11705 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11706 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Vaughn Booker* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11707 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11708 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Timothy W. Broady* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |

| 05/13/2022 | 11709 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11710 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Anthony Bryant* (Attachments: # 1 Exhibit Notice of Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11711 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11712 | NOTICE by Langfitt Garner PLLC *Attorney's Lien regarding Vashone Adams* (LANGFITT, DAVID) (Entered: 05/13/2022) |
| 05/13/2022 | 11713 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as Warren Bryant* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11714 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11715 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Daniel Buggs and Angela Buggs* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11716 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11717 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Lavonya Carter* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11718 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11719 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Calvin Collins and Felisha Collins* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11720 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11721 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Ernest Dixon and Pamela Dixon* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11722 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11723 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to James Geathers* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11724 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11725 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to George Greene and Bernadette Greene* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |

| 05/13/2022 | 11726 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11727 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Don Majkowski and Kelly Majkowski* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien) (MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/13/2022 | 11728 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/13/2022) |
| 05/17/2022 | 11729 | EXPLANATION AND ORDER THAT THE WITHRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/17/22. 5/17/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 05/17/2022) |
| 05/17/2022 | 11730 | Notice: Attorney Lien re: Frederick Beasley, Clinton Portis, David Herron, Irving Spikes, Dwayne Carswell, Derrick Roberson, Eddie Williams, Donald Brady, Albert Haynesworth III, Delmonico Montgomery, Antowain Smith, Antuan Edwards, Tommie Harris, Bernie Kosar, Terrelle Smith, Adalius Thomas, Phillippi Sparks, Ronney Jenkins and Henri Crockett, Certificate of Service. (mbh) (Entered: 05/17/2022) |
| 05/17/2022 | 11731 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Zachary Crockett. (mbh) (Entered: 05/20/2022) |
| 05/20/2022 | 11732 | EXPLANATION AND ORDER THAT THE FIFTH VERIFIED PETITION (DOC. NO. 11126 IS GRANTED IN PART. THE FUND ADMINISTRATOR FOR THE ATTORNEYS' FEES QUALIFIED SETTLEMENT FUND ("AFQSF") PAY SEEGER WEISS $1,112,761.05. SIGNED BY HONORABLE ANITA B. BRODY ON 5/20/22. 5/20/22 ENTERED AND COPIES E-MAILED TO LIASON COUNSEL. (APPLIES TO ALL ACTIONS)(amas) (Entered: 05/20/2022) |
| 05/23/2022 | 11733 | Notice: Attorney Lien, Certificate of Service.(mbh) (Entered: 05/23/2022) |
| 05/24/2022 | 11734 | EXPLANATION AND ORDER THAT THE ATTACHED EXHIBIT 1 SETS FORTH THE FINAL LIST OF PLAINTIFFS WITH VALID CLAIMS AGAINST THE RIDDELL DEFENDANTS. IT IS FURTHER ORDERED THAT ANY CLAIMS BY PLAINTIFFS NOT LISTED ON EXHIBIT 1 ARE PROCEDURALLY DEFICIENT AND/OR ABANDONED AND ARE THEREFORE DISMISSED WITH PREJUDICE. SIGNED BY HONORABLE ANITA B. BRODY ON 5/24/22. 5/24/22 ENTERED AND COPIES E-MAILED.(jwl) (jwl). (Entered: 05/24/2022) |
| 05/24/2022 | 11735 | ORDER RE: WAIVER OF APPEAL THAT ALL UNDERSIGNED PARTIES HEREBY WAIVE THEIR RIGHTS TO APPEAL THE FINAL DECISION REGARDING THE NOTICE OF ATTORNEY'S LIEN SEEKING ATTORNEY'S FEES AND COSTS FROM ANY MONETARY AWARD TO BE PAID TO SETTLEMENT CLASS MEMBER, D.G. WHO WAS ISSUED A NOTICE OF MONETARY AWARD CLAIM DETERMINATION ON 10/26/21. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/24/22. 5/24/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 05/24/2022) |
| 05/24/2022 | 11736 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Kenneth O. Burrough. (mbh) (Entered: 05/26/2022) |
| 05/26/2022 | 11737 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Terry Fair and Sherlone Fair* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, |

| | | |
|---|---|---|
| | | MICHAEL) (Entered: 05/26/2022) |
| 05/26/2022 | 11738 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 05/26/2022) |
| 05/27/2022 | 11739 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - James White* (LOCKS, GENE) (Entered: 05/27/2022) |
| 05/27/2022 | 11740 | NOTICE by Robins Cloud LLP *Amended Notice of Attorney's Lien* (Attachments: # 1 Exhibit Amended Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 05/27/2022) |
| 05/31/2022 | 11741 | Report of the Special Masters. (mbh) (Entered: 06/01/2022) |
| 05/31/2022 | 11742 | BAP Administrator Status Report No. 14. (mbh) (Entered: 06/01/2022) |
| 05/31/2022 | 11743 | Claims Administrator Status Report No. 16. (mbh) (Entered: 06/01/2022) |
| 06/01/2022 | 11744 | ORDER granting (11700) MOTION TO WITHDRAW AS ATTORNEY in case 2:12-md-02323-AB; granting (286) MOTION TO WITHDRAW AS ATTORNEY in case 2:12-cv-04185-AB. SIGNED BY HONORABLE ANITA B. BRODY ON 6/1/22.6/1/22 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 06/01/2022) |
| 06/03/2022 | 11745 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THE DECISIONS, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/3/22. 6/3/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 06/03/2022) |
| 06/03/2022 | 11746 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THE DECISIONS, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/3/22. 6/3/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 06/03/2022) |
| 06/06/2022 | 11747 | STIPULATION AND ORDER WAIVING RIGHTS TO APPEAL FINAL DECISION OF THE HONORABLE DAVID R. STRAWBRIDGE, USMJ. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/6/22. 6/7/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL (mbh) (Entered: 06/07/2022) |
| 06/07/2022 | 11748 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Todd Weiner. (mbh) (Entered: 06/08/2022) |
| 06/08/2022 | 11755 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Joseph DeLamielleure. (mbh) (Entered: 06/13/2022) |
| 06/08/2022 | 11756 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Bobby Abrams. (mbh) (Entered: 06/13/2022) |
| 06/10/2022 | 11749 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE |

| | | |
|---|---|---|
| | | JUDGE DAVID R. STRAWBRIDGE ON 6/10/22. 6/10/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 06/10/2022) |
| 06/10/2022 | [11750](#) | MOTION to Withdraw as Attorney *for Rodrigo Barnes* filed by PLAINTIFF(S).. (Attachments: # [1](#) Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 06/10/2022) |
| 06/10/2022 | [11751](#) | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # [1](#) Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 06/10/2022) |
| 06/10/2022 | [11752](#) | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THE DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/10/22. 6/10/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 06/10/2022) |
| 06/10/2022 | [11753](#) | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN IS DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/10/22. 6/10/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 06/10/2022) |
| 06/10/2022 | [11754](#) | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN IS DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/10/22. 6/10/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 06/10/2022) |
| 06/14/2022 | [11757](#) | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/18/22. 1/18/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO JOHN D. GIDDENS P.A. V. SPID 100005204 (T.F.) ATTORNEY DISPUTE (CASE NO. 00624). SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/13/22. 6/14/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 06/14/2022) |
| 06/14/2022 | [11758](#) | NOTICE by PLAINTIFF(S) *Waiver of Appeal (B.A.)* (LUCKASEVIC, JASON) (Entered: 06/14/2022) |
| 06/14/2022 | [11759](#) | NOTICE by PLAINTIFF(S) *Waiver of Appeal (J.D.)* (LUCKASEVIC, JASON) (Entered: 06/14/2022) |
| 06/15/2022 | [11760](#) | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/18/22. 1/18/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO SPID 100000021 (B.A.) v. GOLDBERG PERSKY & WHITE (mbh ) (Entered: 06/16/2022) |
| 06/15/2022 | [11761](#) | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/18/22. 1/18/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO SPID 100003809 (J.D.) Attorney Lien Dispute Case No. (01621) (mbh ) (Entered: 06/16/2022) |

| | | |
|---|---|---|
| 06/24/2022 | 11762 | MOTION to Release 5% Holdback and Request for Expedited Hearings filed by MARCUS BUCKLEY.. (Attachments: # 1 Text of Proposed Order)(STECKLER, BRUCE) (Entered: 06/24/2022) |
| 06/29/2022 | 11763 | NOTICE by THE LOCKS LAW FIRM *Petition to Withdraw Notice of Attorney's Lien* (LOCKS, GENE) (Entered: 06/29/2022) |
| 07/06/2022 | 11764 | Letter dated 7.6.2022 re: Motion Dkt.11422 by BALANCED BRIDGE FUNDING LLC, THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 07/06/2022) |
| 07/08/2022 | 11765 | RESPONSE to Motion re 11762 MOTION to Release 5% Holdback and Request for Expedited Hearings filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/08/2022) |
| 07/12/2022 | 11766 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 07/12/2022) |
| 07/12/2022 | 11767 | NOTICE by PLAINTIFF(S) *of Attorneys Fee Lien (Harold and Carolyn Jackson)* (LUCKASEVIC, JASON) (Entered: 07/12/2022) |
| 07/13/2022 | 11768 | ORDER denying 11324 MOTION TO DISMISS; denying 11324 MOTION TO DISQUALIFY; denying 11327 MOTION TO DISMISS; denying 11327 MOTION TO DISQUALIFY; denying 11328 MOTION TO DISMISS; denying 11328 MOTION TO DISQUALIFY; denying 11329 MOTION TO DISQUALIFY; denying 11329 MOTION TO DISMISS; denying 11337 MOTION TO DISMISS; denying 11337 MOTION TO DISQUALIFY. SIGNED BY HONORABLE ANITA B. BRODY ON 7/13/22.7/13/22 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 07/13/2022) |
| 07/15/2022 | 11769 | ORDER granting (11750) MOTION TO WITHDRAW AS ATTORNEY in case 2:12-md-02323-AB; granting (63) MOTION TO WITHDRAW AS ATTORNEY in case 2:12-cv-06069-AB. SIGNED BY HONORABLE ANITA B. BRODY ON 7/15/22.7/15/22 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 07/15/2022) |
| 07/18/2022 | 11770 | EXPLANATION AND ORDER THAT 11422 MOTION TO AMEND RULES GOVERNING PAYMENT OF CLAIMS INVOLVING THIRD-PARTY FUNDERS FILED BY THRIVEST SPECIALTY FUNDING, LLC IS DENIED. SIGNED BY HONORABLE ANITA B. BRODY ON 7/18/2022;7/18/2022 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS).(tjd) (Entered: 07/18/2022) |
| 07/19/2022 | 11773 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Myron Guyton. (mbh) (Entered: 07/25/2022) |
| 07/19/2022 | 11774 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Aaron Jones. (mbh) (Entered: 07/25/2022) |
| 07/19/2022 | 11775 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Corey Fuller. (mbh) (Entered: 07/25/2022) |
| 07/25/2022 | 11771 | MEMORANDUM AND/OR OPINION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/25/22. 7/25/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO SPID 100012706 (M.R.) Attorney Lien Dispute Case No. (01702) (mbh) (Entered: 07/25/2022) |
| 07/25/2022 | 11772 | ORDER THAT THE CLAIMS ADMINISTRATOR SHALL DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THE MEMORANDUM OPINION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE |

| | | |
|---|---|---|
| | | DAVID R. STRAWBRIDGE ON 7/25/22. 7/25/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO SPID 100012706 (M.R.) Attorney Lien Dispute Case No. (01702).(mbh) (Entered: 07/25/2022) |
| 07/27/2022 | 11776 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Derrick Gaffney* (LUCKASEVIC, JASON) (Entered: 07/27/2022) |
| 07/27/2022 | 11777 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Leonard Mitchell* (LUCKASEVIC, JASON) (Entered: 07/27/2022) |
| 07/27/2022 | 11778 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Tobiath Myles* (LUCKASEVIC, JASON) (Entered: 07/27/2022) |
| 07/27/2022 | 11779 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Kendrick Anthony Redman* (LUCKASEVIC, JASON) (Entered: 07/27/2022) |
| 07/27/2022 | 11780 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Christopher Shelling* (LUCKASEVIC, JASON) (Entered: 07/27/2022) |
| 07/27/2022 | 11781 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Ray Sydnor* (LUCKASEVIC, JASON) (Entered: 07/27/2022) |
| 07/27/2022 | 11782 | NOTICE OF APPEAL as to 11770 Order on Motion to Amend/Correct, by BALANCED BRIDGE FUNDING LLC, THRIVEST SPECIALTY FUNDING, LLC. Filing fee $ 505, receipt number APAEDC-16071333. Copies to Judge, Clerk USCA, Appeals Clerk and (BUCKLEY, PETER) (Entered: 07/27/2022) |
| 07/29/2022 | 11783 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Garrett Limbrick* (LUCKASEVIC, JASON) (Entered: 07/29/2022) |
| 07/29/2022 | 11784 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Billy Bell* (LUCKASEVIC, JASON) (Entered: 07/29/2022) |
| 07/29/2022 | 11785 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Robert Blackmon* (LUCKASEVIC, JASON) (Entered: 07/29/2022) |
| 07/29/2022 | 11786 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Darryl Ashmore* (LUCKASEVIC, JASON) (Entered: 07/29/2022) |
| 07/29/2022 | 11787 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Alfonso Marshall* (LUCKASEVIC, JASON) (Entered: 07/29/2022) |
| 07/29/2022 | 11788 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Paul Miranda* (LUCKASEVIC, JASON) (Entered: 07/29/2022) |
| 07/29/2022 | 11789 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-James Burgess* (LUCKASEVIC, JASON) (Entered: 07/29/2022) |
| 07/29/2022 | 11790 | MOTION to Withdraw as Attorney *for Rubin Carter and Karen Carter* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 07/29/2022) |
| 07/29/2022 | 11791 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 07/29/2022) |
| 08/01/2022 | 11792 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-William Russell* (LUCKASEVIC, JASON) (Entered: 08/01/2022) |
| 08/01/2022 | 11793 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Kim Phillips* (LUCKASEVIC, JASON) (Entered: 08/01/2022) |

**-780-**

| 08/01/2022 | 11794 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Ryan Boschetti* (LUCKASEVIC, JASON) (Entered: 08/01/2022) |
| 08/01/2022 | 11795 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Michael Hudson* (LUCKASEVIC, JASON) (Entered: 08/01/2022) |
| 08/01/2022 | 11796 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Robert Pennywellert* (LUCKASEVIC, JASON) (Entered: 08/01/2022) |
| 08/01/2022 | 11797 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Ben Cavil* (LUCKASEVIC, JASON) (Entered: 08/01/2022) |
| 08/02/2022 | 11798 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees--Samuel Harrell* (LUCKASEVIC, JASON) (Entered: 08/02/2022) |
| 08/02/2022 | 11799 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees--Joe King* (LUCKASEVIC, JASON) (Entered: 08/02/2022) |
| 08/03/2022 | 11800 | Notice of Docketing Record on Appeal from USCA re 11782 Notice of Appeal (Credit Card Payment), filed by THRIVEST SPECIALTY FUNDING, LLC, BALANCED BRIDGE FUNDING LLC. USCA Case Number 22-2381 (mbh) (Entered: 08/03/2022) |
| 08/03/2022 | 11801 | Notice of Appeal by Alain Kashama. Copies to Judge, Clerk USCA, Appeals Clerk. (Attachments: # 1 Letter)(mbh) (NO FEE PAID; NO IFP) (Entered: 08/04/2022) |
| 08/04/2022 | 11802 | REPORT AND RECOMMENDATION THAT THE CLAIMS ADMINISTATOR BE ORDERED TO DESIGNATE AND RELEASE FUNDS WITHHELD FOR ATTORNEY'S FEES AND COSTS. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 8/4/22. 8/5/22 ENTERED AND COPIES E-MAILED. (Attachments: # 1 Proposed Order, # 2 Notice)(mbh) (Entered: 08/05/2022) |
| 08/05/2022 | 11803 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees - Nathan Wonsley* (PECKHAM, CHARLES) (Entered: 08/05/2022) |
| 08/05/2022 | 11804 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees - Otis Wonsley* (PECKHAM, CHARLES) (Entered: 08/05/2022) |
| 08/05/2022 | 11805 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees - Ollie Smith* (PECKHAM, CHARLES) (Entered: 08/05/2022) |
| 08/05/2022 | 11806 | NOTICE by PLAINTIFF(S) re 11804 Notice (Other) *Notice and Petition for Attorneys Fees - Otis Wonsley - CORRECTED* (PECKHAM, CHARLES) (Entered: 08/05/2022) |
| 08/05/2022 | 11807 | Emergency MOTION */Thrivests Emergency Consent Motion for Direct Payment of Loan Resolution Amount (Jovan Haye)/* filed by THRIVEST SPECIALTY FUNDING, LLC.[Proposed] Order, Memorandum of Law, Certificate of Service.(BUCKLEY, PETER) (Entered: 08/05/2022) |
| 08/09/2022 | 11810 | REPORT OF THE SPECIAL MASTERS by DAVID HOFFMAN, WENDELL E. PRITCHETT, JO-ANN M. VERRIER.(mbh) (Entered: 08/11/2022) |
| 08/09/2022 | 11811 | Claims Administrator Status Report No. 17. (mbh) (Entered: 08/11/2022) |
| 08/09/2022 | 11812 | BAP Administrator Status Report No. 15 (mbh) (Entered: 08/11/2022) |
| 08/10/2022 | 11808 | Notice of Docketing Record on Appeal from USCA re 11801 Notice of Appeal. USCA Case Number 22-2441. (mbh) (Entered: 08/10/2022) |

| 08/11/2022 | 11809 | MOTION for Joinder *of Thrivest's Emergency Consent Motion for Direct Payment of Loan Resolution Amount (Jovan Haye)* filed by PLAINTIFF(S)..(SHENAQ, AMIR) (Entered: 08/11/2022) |
|---|---|---|
| 08/16/2022 | 11813 | First MOTION for Relief *Under Article XXVII of the Settlement Agreement* filed by PLAINTIFF(S).Brief. (Attachments: # 1 Brief, # 2 Text of Proposed Order) (LUCKASEVIC, JASON) (Entered: 08/16/2022) |
| 08/16/2022 | 11814 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Ralph E. Kurek. (mbh) (Entered: 08/17/2022) |
| 08/18/2022 | 11815 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees--John Brandes* (LUCKASEVIC, JASON) (Entered: 08/18/2022) |
| 08/18/2022 | 11816 | NOTICE OF MOTION OF NOTICE OF APPEAL, FILED BY GLENN MITCHELL. (amas) (Entered: 08/19/2022) |
| 08/22/2022 | 11817 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Andy Headen* (LOCKS, GENE) (Entered: 08/22/2022) |
| 08/23/2022 | 11818 | Letter dated August 23, 2022, requesting a 30-day extension for time to respond to the Motion for Relief Under Article XXVII of the Settlement Agreement (ECF No. 11813) by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Text of Proposed Order)(KARP, BRAD) (Entered: 08/23/2022) |
| 08/24/2022 | 11819 | ORDER THAT the National Football League and NFL Properties LLC have until September 29, 2022 to respond to Motion 11813 . SIGNED BY HONORABLE ANITA B. BRODY ON 8/24/22. 8/24/22 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 08/24/2022) |
| 08/24/2022 | | Set/Reset Deadlines as to 11813 First MOTION for Relief *Under Article XXVII of the Settlement Agreement*. RESPONSES DUE BY 9/29/2022. (jwl) (Entered: 08/24/2022) |
| 08/24/2022 | 11820 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien regarding Patrick Pass* (Attachments: # 1 Petition to Establish Attorney's Lien)(WEISS, SOL) (Entered: 08/24/2022) |
| 08/25/2022 | 11821 | Letter dated August 25, 2022 from Class Counsel requesting 30-day extension to respond to Motion [ECF 11813] by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 08/25/2022) |
| 08/29/2022 | 11822 | NOTICE by PLAINTIFF(S) *of Attorneys Fee Lien (Hart Lee Dykes)* (LUCKASEVIC, JASON) (Entered: 08/29/2022) |
| 08/30/2022 | 11823 | ORDER THAT CLASS COUNSEL HAS UNTIL SEPTEMBER 29, 2022 TO RESPOND TO THE MOTION ( ECF 11813 IN 12-MD-2323). SIGNED BY HONORABLE ANITA B. BRODY ON 8/30/22. 8/30/22 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 08/30/2022) |
| 08/30/2022 | | Set/Reset Deadlines as to 11813 First MOTION for Relief *Under Article XXVII of the Settlement Agreement*. RESPONSES DUE BY 9/29/2022. (jwl) (Entered: 08/30/2022) |
| 09/01/2022 | 11824 | ORDER adopting Report and Recommendations as to 11565 REPORT AND RECOMMENDATIONS. SIGNED BY HONORABLE ANITA B. BRODY ON 9/1/22.9/1/22 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 09/01/2022) |
| 09/01/2022 | 11825 | ORDER adopting Report and Recommendations as to 11563 REPORT AND RECOMMENDATIONS. SIGNED BY HONORABLE ANITA B. BRODY ON 9/1/22.9/1/22 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 09/01/2022) |

| 09/02/2022 | 11826 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien* (CUTHBERT, BYRON) (Entered: 09/02/2022) |
| 09/02/2022 | 11827 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Fees Lien* (CUTHBERT, BYRON) (Entered: 09/02/2022) |
| 09/02/2022 | 11828 | NOTICE by PLAINTIFF(S) *Notice of Attorney Fees Lien Herman Arvie* (CUTHBERT, BYRON) (Entered: 09/02/2022) |
| 09/02/2022 | 11829 | NOTICE by PLAINTIFF(S) *Notice of Attorney Fees Lien Isaac Bruce* (CUTHBERT, BYRON) (Entered: 09/02/2022) |
| 09/02/2022 | 11830 | NOTICE by PLAINTIFF(S) *Notice of Attorney Fee Lien Barry foster* (CUTHBERT, BYRON) (Entered: 09/02/2022) |
| 09/02/2022 | 11831 | NOTICE by PLAINTIFF(S) *Notice of Attorney Fee Lien Tony McCombs* (CUTHBERT, BYRON) (Entered: 09/02/2022) |
| 09/08/2022 | 11832 | ORDER granting (11790) MOTION TO WITHDRAW AS ATTORNEY in case 2:12-md-02323-AB; granting (227) MOTION TO WITHDRAW AS ATTORNEY in case 2:12-cv-02219-AB. SIGNED BY HONORABLE ANITA B. BRODY ON 9/8/22.9/8/22 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 09/08/2022) |
| 09/08/2022 | 11833 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 09/08/2022) |
| 09/08/2022 | 11834 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Bryon Bam Morris and Samar Morris* (LUCKASEVIC, JASON) (Entered: 09/08/2022) |
| 09/08/2022 | 11835 | AMENDED ORDER re: 11824 . SIGNED BY HONORABLE ANITA B. BRODY ON 9/8/22. 9/8/22 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 09/08/2022) |
| 09/13/2022 | 11836 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Herman Arvie* (LUCKASEVIC, JASON) (Entered: 09/13/2022) |
| 09/13/2022 | 11837 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Barry Foster* (LUCKASEVIC, JASON) (Entered: 09/13/2022) |
| 09/16/2022 | 11838 | ORDER THAT THE CLAIMS ADMINISTRATOR DIRECT THE SETTLEMENT TRUSTEE TO DEDUCT THE LOAN RESOLUTION AMOUNT SPECIFIED IN THE PAYOFF AGREEMENT BETWEEN MR. JOVAN HAYE AND BALANCED BRIDGE FUNDING LLC F/K/A THRIVEST SPECIALTY FUNDING (THRIVEST) ( 11807 EX. 1) FROM MR. HAYES FORTHCOMING MONETARY AWARD AND TO PAY SUCH AMOUNT DIRECTLY TO THRIVEST. SIGNED BY HONORABLE ANITA B. BRODY ON 9/16/22. 9/16/22 ENTERED AND COPIES E-MAILED.(jwl) (Additional attachment(s) added on 9/16/2022: # 1 Exhibit) (jwl). (Entered: 09/16/2022) |
| 09/20/2022 | 11839 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - James C. Wilder. (mbh) (Entered: 09/20/2022) |
| 09/20/2022 | 11840 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Glen Young. (mbh) (Entered: 09/20/2022) |
| 09/20/2022 | 11841 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - James Williams. (mbh) (Entered: 09/20/2022) |
| 09/20/2022 | 11842 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Jeff Moore. (mbh) (Entered: 09/21/2022) |

| 09/21/2022 | 11843 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 09/21/2022) |
|---|---|---|
| 09/21/2022 | 11844 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Myron Pottios and Doreen Pottios* (LUCKASEVIC, JASON) (Entered: 09/21/2022) |
| 09/26/2022 | 11845 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Jeffrey Walker. (mbh) (Entered: 09/27/2022) |
| 09/28/2022 | 11846 | NOTICE by JOHN LORENTZ (Lorentz, John) (Entered: 09/28/2022) |
| 09/29/2022 | 11847 | RESPONSE in Opposition re 11813 First MOTION for Relief *Under Article XXVII of the Settlement Agreement* filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 09/29/2022) |
| 09/29/2022 | 11848 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (Donald Patterson)* (TARRICONE, ANTHONY) (Entered: 09/29/2022) |
| 09/29/2022 | 11849 | RESPONSE in Opposition re 11813 First MOTION for Relief *Under Article XXVII of the Settlement Agreement* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 09/29/2022) |
| 09/30/2022 | 11850 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Monte Johnson* (LOCKS, GENE) (Entered: 09/30/2022) |
| 09/30/2022 | 11851 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/30/22. 10/3/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 10/03/2022) |
| 09/30/2022 | 11852 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/30/22. 10/3/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 10/03/2022) |
| 09/30/2022 | 11853 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/30/22. 10/3/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 10/03/2022) |
| 10/03/2022 | 11854 | RESPONSE in Support re 11813 First MOTION for Relief *Under Article XXVII of the Settlement Agreement (Reply Brief)* filed by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/03/2022) |
| 10/03/2022 | 11855 | ORDER that the Appeal from the Notice of Rejection of Claim filed by Gwain Durden 11816 is DENIED WITHOUT PREJUDICE. SIGNED BY HONORABLE ANITA B. BRODY ON 10/3/22. 10/3/22 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 10/03/2022) |

| 10/04/2022 | 11856 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Calvin Collins. (Attachments: # 1 Consent)(mbh) (Entered: 10/04/2022) |
| 10/05/2022 | 11857 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/5/22. 10/5/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO SPID 100008089 (A.J.) (Entered: 10/05/2022) |
| 10/05/2022 | 11858 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/5/22. 10/5/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO SPID 100005185 (C.F.) (Entered: 10/05/2022) |
| 10/05/2022 | 11859 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/5/22. 10/5/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO SPID 100006019 (M.J.) (Entered: 10/05/2022) |
| 10/06/2022 | 11860 | NOTICE by PLAINTIFF(S) *Lien for Attorney Fees Tony Galbreath* (CUTHBERT, BYRON) (Entered: 10/06/2022) |
| 10/11/2022 | 11861 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Sean Harris* (LOCKS, GENE) (Entered: 10/11/2022) |
| 10/11/2022 | 11862 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien regarding Demetrin Veal* (Attachments: # 1 Petition to Establish Attorney's Lien)(WEISS, SOL) (Entered: 10/11/2022) |
| 10/12/2022 | 11863 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Ricky Patton* (MCGLAMRY, MICHAEL) (Entered: 10/12/2022) |
| 10/13/2022 | 11864 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien Regarding Kenneth Clark* (Attachments: # 1 Petition to Establish Attorney's Lien)(WEISS, SOL) (Entered: 10/13/2022) |
| 10/13/2022 | 11865 | NOTICE by PLAINTIFF(S) *Withdrawal of Appearance--Delvin Williams ONLY* (LUCKASEVIC, JASON) (Entered: 10/13/2022) |
| 10/13/2022 | 11866 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Delvin Williams* (LUCKASEVIC, JASON) (Entered: 10/13/2022) |
| 10/17/2022 | 11867 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Dennis Winston. (mbh) (Entered: 10/18/2022) |
| 10/17/2022 | 11868 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Ray Buchanan. (mbh) (Entered: 10/18/2022) |
| 10/17/2022 | 11869 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Mervyn Fernandez. (mbh) (Entered: 10/18/2022) |
| 10/18/2022 | 11870 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - LeShon Johnson. (mbh) (Entered: 10/19/2022) |
| 10/18/2022 | 11871 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Raymond C. Perry. (mbh) (Entered: 10/19/2022) |
| 10/18/2022 | 11872 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Leonard Mitchell. (mbh) (Entered: 10/19/2022) |

| 10/19/2022 | 11873 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Troy Edwards. (mbh) (Entered: 10/19/2022) |
| 10/19/2022 | 11874 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Rashod Kent. (mbh) (Entered: 10/19/2022) |
| 10/20/2022 | 11875 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - John Washington. (mbh) (Entered: 10/20/2022) |
| 10/21/2022 | 11876 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Tony Walker* (LOCKS, GENE) (Entered: 10/21/2022) |
| 10/21/2022 | 11877 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - John Talley* (LOCKS, GENE) (Entered: 10/21/2022) |
| 10/25/2022 | 11878 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/25/22. 10/25/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 10/25/2022) |
| 10/27/2022 | 11879 | NOTICE by Langfitt Garner PLLC *Attorney's Lien - TJ Slaughter* (LANGFITT, DAVID) (Entered: 10/27/2022) |
| 10/27/2022 | 11880 | REPORT OF THE SPECIAL MASTERS BY WENDELL E. PRITCHETT, JO-ANN M. VERRIER AND DAVID A. HOFFMAN. (mbh) (Entered: 10/27/2022) |
| 10/27/2022 | 11881 | BAP ADMINISTRATOR STATUS REPORT NO. 16. (mbh) (Entered: 10/27/2022) |
| 10/27/2022 | 11882 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 18. (mbh) (Entered: 10/27/2022) |
| 11/01/2022 | 11883 | NOTICE by PLAINTIFF(S) *Notice of Withdrawal of Attorney's Lien* (MCGLAMRY, MICHAEL) (Entered: 11/01/2022) |
| 11/02/2022 | 11884 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees--Kanavis McGhee* (LUCKASEVIC, JASON) (Entered: 11/02/2022) |
| 11/02/2022 | 11885 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Michael Martin* (LOCKS, GENE) (Entered: 11/02/2022) |
| 11/02/2022 | 11886 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Johnnie Poe* (LOCKS, GENE) (Entered: 11/02/2022) |
| 11/02/2022 | 11887 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - William Hoggard* (LOCKS, GENE) (Entered: 11/02/2022) |
| 11/02/2022 | 11888 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien regarding John William Volek* (Attachments: # 1 Petition to Establish Attorney's Lien)(WEISS, SOL) (Entered: 11/02/2022) |
| 11/04/2022 | 11889 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 11/04/2022) |
| 11/04/2022 | 11890 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Fred Barnett and Lindsay Barnett* (LUCKASEVIC, JASON) (Entered: 11/04/2022) |
| 11/07/2022 | 11891 | APPLICATION/PETITION *Sixth Verified Petition of Class Counsel Christopher A. Seeger for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs* |

**-786-**

| | | by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 11/07/2022) |
|---|---|---|
| 11/09/2022 | 11892 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Rodney Holman and Sandra Holman* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien as to Rodney Holman)(MCGLAMRY, MICHAEL) (Entered: 11/09/2022) |
| 11/09/2022 | 11893 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 11/09/2022) |
| 11/14/2022 | 11894 | NOTICE by PLAINTIFF(S) *Joinder of Goldberg, Persky & White, P.C. in the Sixth Verified Petition of Class Counsel for An Award of Common Benefit Attorney's Fees and Costs* (LUCKASEVIC, JASON) (Entered: 11/14/2022) |
| 11/14/2022 | 11895 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorney Fees and Costs--Michael Willliams* (LUCKASEVIC, JASON) (Entered: 11/14/2022) |
| 11/14/2022 | 11900 | Notice, Consent and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Dona Glasgow. (mbh) (Entered: 11/17/2022) |
| 11/15/2022 | 11896 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Cartaya, Luis) (Entered: 11/15/2022) |
| 11/15/2022 | 11897 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 11/15/2022) |
| 11/15/2022 | 11898 | NOTICE by PLAINTIFF(S) *of Attorneys Fee Lien--David L. Grayson, Jr.* (LUCKASEVIC, JASON) (Entered: 11/15/2022) |
| 11/15/2022 | 11899 | NOTICE by PLAINTIFF(S) *of Attorneys Fee Lien (Bruce Pickens)* (CUTHBERT, BYRON) (Entered: 11/15/2022) |
| 11/16/2022 | 11901 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Henri Crockett. (mbh) (Entered: 11/17/2022) |
| 11/17/2022 | 11902 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - R. Razzano. (mbh) (Entered: 11/17/2022) |
| 11/21/2022 | 11903 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien regarding Matt Lawrence* (Attachments: # 1 Petition to Establish Attorney's Lien)(WEISS, SOL) (Entered: 11/21/2022) |
| 11/21/2022 | 11904 | Objections by MARCUS BUCKLEY re 11891 Application/Petition *Sixth Verified Petition of Class Counsel Christopher A. Seeger for an Award of Post-Effective Date Common Benefit Attorneys Fees and Costs.* (STECKLER, BRUCE) (Entered: 11/21/2022) |
| 11/22/2022 | 11905 | MOTION for Joinder *Response of Locks Law Firm in support of the Motion for Joinder of Goldberg Persky & White PC in the Sixth Verified Petition of Class Counsel for an Award of Common Benefit Attorney's Fees and Costs* filed by THE LOCKS LAW FIRM.Certificate of Service.(LEH, MICHAEL) (Entered: 11/22/2022) |
| 11/22/2022 | 11906 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Frederick Beasley. (mbh) (Entered: 11/23/2022) |
| 11/23/2022 | 11907 | EXPLANATION AND ORDER - THE WITHDRAWAL OF THE LIEN DISPUTE DATED OCT 17-19, 2022 IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRUBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 11/23/22. |

| | | |
|---|---|---|
| | | 11/23/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 11/23/2022) |
| 11/30/2022 | 11908 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Robert Harris. (Attachments: # 1 Consent, # 2 Consent)(mbh) (Entered: 12/01/2022) |
| 11/30/2022 | 11909 | Withdrawal of Attorney's Lien Dispute. (Attachments: # 1 Withdrawal of Lien, # 2 Statement, # 3 Rep Agreement, # 4 Cost Detail)(mbh) (Entered: 12/01/2022) |
| 12/01/2022 | 11910 | STIPULATION AND ORDER WAIVING RIGHTS TO APPEAL FINAL DECISION OF THE HONORABLE DAVID R. STRAWBRIDGE, USMJ. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/1/22. 12/1/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 12/01/2022) |
| 12/01/2022 | 11911 | APPLICATION/PETITION - *CLASS COUNSELS OMNIBUS REPLY TO RESPONSES TO SIXTH VERIFIED PETITION FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS FEES AND COSTS* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 12/01/2022) |
| 12/08/2022 | 11912 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 12/08/2022) |
| 12/08/2022 | 11913 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Daniel Reece and Kimberly Reece* (LUCKASEVIC, JASON) (Entered: 12/08/2022) |
| 12/09/2022 | 11914 | EXPLANATION AND ORDER - THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/9/22. 12/9/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 12/09/2022) |
| 12/09/2022 | 11915 | EXPLANATION AND ORDER - THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/9/22. 12/9/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 12/09/2022) |
| 12/09/2022 | 11916 | EXPLANATION AND ORDER - THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/9/22. 12/9/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 12/09/2022) |
| 12/09/2022 | 11917 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Reginald Brown. (mbh) (Entered: 12/09/2022) |
| 12/12/2022 | 11918 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 12/12/2022) |
| 12/12/2022 | 11919 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees--Joseph Aska and Tina M. Aska* (LUCKASEVIC, JASON) (Entered: 12/12/2022) |

-788-

| 12/12/2022 | 11920 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 12/12/2022) |
|---|---|---|
| 12/12/2022 | 11921 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-John Bunting* (LUCKASEVIC, JASON) (Entered: 12/12/2022) |
| 12/12/2022 | 11922 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/12/22. 12/13/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 12/13/2022) |
| 12/12/2022 | 11923 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/12/22. 12/13/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 12/13/2022) |
| 12/12/2022 | 11924 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/12/22. 12/13/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 12/13/2022) |
| 12/15/2022 | 11925 | MOTION to Withdraw as Attorney *for Ricky Hunley and Camille Moore-Hunley* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 12/15/2022) |
| 12/15/2022 | 11926 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 12/15/2022) |
| 12/15/2022 | 11927 | MOTION to Withdraw as Attorney *for Gerald Riggs and Sherry Blanton-Riggs* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 12/15/2022) |
| 12/15/2022 | 11928 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (Attachments: # 1 Petition to Establish Attorney's Lien)(GUDMUNDSON, BRIAN) (Entered: 12/15/2022) |
| 12/21/2022 | 11929 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRTOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/21/22. 12/22/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 12/22/2022) |
| 12/21/2022 | 11930 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRTOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 12/21/22. 12/22/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 12/22/2022) |
| 12/27/2022 | 11931 | EXPLANATION AND ORDER denying 11813 MOTION FOR RELIEF. SIGNED BY HONORABLE ANITA B. BRODY ON 12/27/22.12/27/22 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 12/27/2022) |
| 12/29/2022 | 11932 | NOTICE by PLAINTIFF(S) *Petition of Attorney Fees Lien Bobby Abrams* (CUTHBERT, BYRON) (Entered: 12/29/2022) |

| 01/03/2023 | 11933 | ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATIONS. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/3/23. 1/3/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/03/2023) |
|---|---|---|
| 01/03/2023 | 11935 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/3/23. 1/4/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/04/2023) |
| 01/04/2023 | 11934 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien regarding Mario Haggan* (Attachments: # 1 Petition to Establish Attorney's Lien)(STECKLER, BRUCE) (Entered: 01/04/2023) |
| 01/04/2023 | 11936 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 01/04/2023) |
| 01/04/2023 | 11937 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Marsharne Graves and Sophie Graves* (LUCKASEVIC, JASON) (Entered: 01/04/2023) |
| 01/04/2023 | 11938 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 01/04/2023) |
| 01/04/2023 | 11939 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Joseph Sweet and M. Storme Sweet* (LUCKASEVIC, JASON) (Entered: 01/04/2023) |
| 01/06/2023 | 11940 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - James Jeffcoat* (LOCKS, GENE) (Entered: 01/06/2023) |
| 01/06/2023 | 11941 | ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL THE COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/6/23. 1/9/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/09/2023) |
| 01/09/2023 | 11942 | STIPULATION AND ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/9/23. 1/9/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/09/2023) |
| 01/10/2023 | 11943 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees Jamain Stephens* (CUTHBERT, BYRON) (Entered: 01/10/2023) |
| 01/10/2023 | 11944 | STIPULATION AND ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/18/22. 1/18/22 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 01/11/2023) |
| 01/13/2023 | 11945 | Notice: Attorney Lien (Anthony Marshall), Certificate of Service. (mbh) (Entered: 01/17/2023) |
| 01/13/2023 | 11946 | Notice: Attorney Lien (Rodney Bailey), Certificate of Service. (mbh) (Entered: 01/17/2023) |

| 01/13/2023 | 11947 | Notice: Attorney Lien (Roscoe Parrish), Certificate of Service. (mbh) (Entered: 01/17/2023) |
|---|---|---|
| 01/13/2023 | 11948 | Notice: Attorney Lien (Gennaro DiNapoli), Certificate of Service. (mbh) (Entered: 01/17/2023) |
| 01/19/2023 | 11949 | NOTICE by PLAINTIFF(S) *of Attorney Lien (Douglas W. Plank)* (Attachments: # 1 Exhibit 1 - Petition to Establish Attorney Lien)(ACHO, JAMES) (Entered: 01/19/2023) |
| 01/23/2023 | 11950 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Ricky Patton. (mbh) (Main Document 11950 replaced on 1/23/2023) (mbh). (Entered: 01/23/2023) |
| 01/23/2023 | 11951 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Lorenzo Lynch. (mbh) (Entered: 01/23/2023) |
| 01/23/2023 | 11952 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Ezra Johnson. (mbh) (Main Document 11952 replaced on 1/24/2023) (mbh). (Entered: 01/23/2023) |
| 01/23/2023 | 11953 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Jeff Griffin. (mbh) (Main Document 11953 replaced on 1/24/2023) (mbh). (Entered: 01/23/2023) |
| 01/23/2023 | 11954 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Felix Wright. (mbh) (Main Document 11954 replaced on 1/24/2023) (mbh). (Entered: 01/23/2023) |
| 01/23/2023 | 11955 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Harlan Huckleby. (mbh) (Entered: 01/23/2023) |
| 01/23/2023 | 11956 | NOTICE by PLAINTIFF(S) *attorney fees lien Marlon Jones* (CUTHBERT, BYRON) (Entered: 01/23/2023) |
| 01/23/2023 | 11957 | NOTICE by PLAINTIFF(S) *attorney fees lien Gary Burley* (CUTHBERT, BYRON) (Entered: 01/23/2023) |
| 01/24/2023 | 11958 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 01/24/2023) |
| 01/24/2023 | 11959 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Michael Bates* (LUCKASEVIC, JASON) (Entered: 01/24/2023) |
| 01/24/2023 | 11960 | NOTICE by PLAINTIFF(S) *(Notice of Attorney's Lien and Petition for Wayne Haddix)* (KUNTZ, JEFFREY) (Entered: 01/24/2023) |
| 01/24/2023 | 11961 | NOTICE by PLAINTIFF(S) *(Notice of Attorney's Lien and Petition for Johnnie Cooks)* (KUNTZ, JEFFREY) (Entered: 01/24/2023) |
| 01/24/2023 | 11962 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Malcolm Perry* (LOCKS, GENE) (Entered: 01/24/2023) |
| 01/25/2023 | 11963 | NOTICE by PLAINTIFF(S) *Attorneys Fees Lien and Petition - Johnny Rembert* (CUTHBERT, BYRON) (Entered: 01/25/2023) |
| 01/25/2023 | 11964 | NOTICE by PLAINTIFF(S) *Attorneys Fees Petition and Lien Notice - Mark Higgs* (CUTHBERT, BYRON) (Entered: 01/25/2023) |
| 01/26/2023 | 11965 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 01/26/2023) |

| 01/26/2023 | 11966 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Brian Ingram* (LUCKASEVIC, JASON) (Entered: 01/26/2023) |
|---|---|---|
| 01/26/2023 | 11967 | ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/26/23. 1/26/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/26/2023) |
| 01/26/2023 | 11968 | ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/26/23. 1/26/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 01/26/2023) |
| 01/26/2023 | 11969 | ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/26/23. 1/26/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 01/26/2023) |
| 01/26/2023 | 11970 | ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/26/23. 1/26/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 01/26/2023) |
| 01/30/2023 | 11971 | EXPLANATION AND ORDER - THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURY ORDERS REGARDING IMPLEMENTATIION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/30/23. 1/30/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 01/30/2023) |
| 01/30/2023 | 11972 | STIPULATION AND ORDER THAT THE WAIVER OF APPEAL IS APPROVED.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/30/23. 1/30/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 01/30/2023) |
| 01/30/2023 | 11973 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/30/23. 1/30/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 01/30/2023) |
| 01/30/2023 | 11974 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/30/23. 1/30/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 01/30/2023) |

| 01/30/2023 | 11975 | REPORT AND RECOMMENDATIONS THAT THE COURT AUTHORIZE THE SETTLEMENT CLAIMS ADMINISTRATOR TO DISBURSE THE FUNDS WITHHELD FOR COUNSEL FEE TO LIEFF IN ACCORDANCE WITH THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION, INCLUDING THE COURT'S 6/27/18 ORDER REGARDING WITHHOLDINGS FOR COMMON BENEFIT FUND. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 1/30/23. 1/30/23 ENTERED AND COPIES E-MAILED TO LIASON COUNSEL. (Attachments: # 1 Proposed Order, # 2 Notice)(mbh) (Entered: 01/30/2023) |
|---|---|---|
| 01/31/2023 | 11976 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 01/31/2023) |
| 01/31/2023 | 11977 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Myron Jones* (LUCKASEVIC, JASON) (Entered: 01/31/2023) |
| 02/03/2023 | 11978 | STIPULATION AND ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/3/23. 2/3/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 02/03/2023) |
| 02/03/2023 | 11979 | REPORT OF THE SPECIAL MASTERS by WENDELL E. PRITCHETT, JO-ANN M. VERRIER (mbh) (Entered: 02/03/2023) |
| 02/03/2023 | 11980 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 19. (mbh) (Entered: 02/03/2023) |
| 02/03/2023 | 11981 | BAP ADMINISTRATOR STATUS REPORT NO. 17. (mbh) (Entered: 02/03/2023) |
| 02/03/2023 | 11986 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Michael Clark. (mbh) (Entered: 02/10/2023) |
| 02/03/2023 | 11987 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Harlan Huckleby. (mbh) (Entered: 02/10/2023) |
| 02/07/2023 | 11982 | NOTICE by PLAINTIFF(S) *of Attorney's Lien Regarding Michael McCoy* (Attachments: # 1 Petition to Establish Attorney's Lien)(WEISS, SOL) (Entered: 02/07/2023) |
| 02/07/2023 | 11983 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Richard Michael St. Clair* (LOCKS, GENE) (Entered: 02/07/2023) |
| 02/07/2023 | 11984 | NOTICE by PLAINTIFF(S) *of Attorneys' Lien* (Attachments: # 1 Petition to Establish Attorneys' Lien, # 2 Exhibit A)(FLEISHMAN, WENDY) (Entered: 02/07/2023) |
| 02/08/2023 | 11985 | NOTICE of Withdrawal of Appearance by WENDY R. FLEISHMAN on behalf of TYRONE CARTER, APRIL CARTER(FLEISHMAN, WENDY) (Entered: 02/08/2023) |
| 02/10/2023 | 11988 | MOTION to Withdraw as Attorney *for Michael Ball, Jr.* filed by PLAINTIFF(S).. (Attachments: # 1 Text of Proposed Order)(GUDMUNDSON, BRIAN) (Entered: 02/10/2023) |
| 02/13/2023 | 11989 | EXPLANATION AND ORDER - THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED AND THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURY ORDERS REGARDING IMPLEMENTATIION. SIGNED BY |

| | | |
|---|---|---|
| | | MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/13/23. 2/14/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 02/14/2023) |
| 02/14/2023 | 11990 | STIPULATION AND ORDER WAIVING RIGHTS TO APPEAL FINAL DECISION OF THE HONORABLE DAVID R. STRAWBRIDGE, USMJ. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/14/23. 2/14/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 02/14/2023) |
| 02/15/2023 | 11991 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Dwayne Carswell. (mbh) (Entered: 02/16/2023) |
| 02/16/2023 | 11992 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Ron Morris. (mbh) (Entered: 02/16/2023) |
| 02/16/2023 | 11993 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Antoine Cash. (mbh) (Entered: 02/16/2023) |
| 02/16/2023 | 11994 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Lavonya Carter. (mbh) (Entered: 02/16/2023) |
| 02/17/2023 | 11995 | NOTICE by JOHN LORENTZ (Lorentz, John) (Entered: 02/17/2023) |
| 02/20/2023 | 11996 | NOTICE by JOHN LORENTZ (Lorentz, John) (Entered: 02/20/2023) |
| 02/21/2023 | 11997 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Tony Martin* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien)(MCGLAMRY, MICHAEL) (Entered: 02/21/2023) |
| 02/21/2023 | 11998 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 02/21/2023) |
| 02/21/2023 | 11999 | ORDER of USCA as to 11801 Notice of Appeal. ORDERED and ADJUDGED by this Court that the judgment of the District Court entered July 21, 2022, be and the same hereby is affirmed. All of the above in accordance with the opinion of this Court. (Attachments: # 1 Opinion) (mbh) (Entered: 02/21/2023) |
| 02/21/2023 | 12000 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Elijah Williams. (mbh) (Entered: 02/23/2023) |
| 02/27/2023 | 12001 | ORDER THAT THE OBJECTIONS OF THE FOLLOWING CLASS MEMBERS ARE DENIED BECAUSE THE CLAIMS PACKAGES ARE INSUFFICIENT. SIGNED BY HONORABLE ANITA B. BRODY ON 2/24/23. 2/27/23 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 02/27/2023) |
| 02/28/2023 | 12002 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATIONS. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 2/28/23. 2/28/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 02/28/2023) |
| 03/02/2023 | 12003 | NOTICE by PLAINTIFF(S) *of Attorney's Lien Regarding Daniel and Jennifer Loper* (Attachments: # 1 Petition to Establish Attorney's Lien)(WEISS, SOL) (Entered: 03/02/2023) |
| 03/06/2023 | 12004 | MOTION Motion for Direct Payment of Payment Amount *(Ryamond Seals)* filed by BALANCED BRIDGE FUNDING LLC.Memorandum, Certificate of Service. (BUCKLEY, PETER) (Entered: 03/06/2023) |

| 03/09/2023 | 12005 | RESPONSE to Motion re 12004 MOTION Motion for Direct Payment of Payment Amount *(Ryamond Seals)* filed by Justin Wyatt. (WYATT, JUSTIN) (Entered: 03/09/2023) |
| 03/09/2023 | 12006 | NOTICE by PLAINTIFF(S) *Attorney Fees Lien Joseph Harris* (CUTHBERT, BYRON) (Entered: 03/09/2023) |
| 03/10/2023 | 12007 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 03/10/2023) |
| 03/10/2023 | 12008 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees--Stanley Morgan and Rholedia Morgan* (LUCKASEVIC, JASON) (Entered: 03/10/2023) |
| 03/16/2023 | 12009 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 03/16/2023) |
| 03/16/2023 | 12010 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-James H. Willilams and Crystal Williams* (LUCKASEVIC, JASON) (Entered: 03/16/2023) |
| 03/16/2023 | 12011 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Amos Zereoue. (mbh) (Entered: 03/16/2023) |
| 03/16/2023 | 12012 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Major Everett. (mbh) (Additional attachment(s) added on 3/17/2023: # 1 Consent) (mbh). (Entered: 03/16/2023) |
| 03/17/2023 | 12013 | NOTICE by JOHN LORENTZ (Lorentz, John) (Entered: 03/17/2023) |
| 03/17/2023 | 12014 | NOTICE by JOHN LORENTZ (Lorentz, John) (Entered: 03/17/2023) |
| 03/17/2023 | 12015 | NOTICE by JOHN LORENTZ (Lorentz, John) (Entered: 03/17/2023) |
| 03/17/2023 | 12016 | NOTICE by JOHN LORENTZ (Lorentz, John) (Entered: 03/17/2023) |
| 03/17/2023 | 12017 | NOTICE by JOHN LORENTZ (Lorentz, John) (Entered: 03/17/2023) |
| 03/17/2023 | 12018 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Robert Wilson. (mbh) (Entered: 03/17/2023) |
| 03/17/2023 | 12019 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Ron Morris. (mbh) (Entered: 03/17/2023) |
| 03/17/2023 | 12020 | NOTICE by PLAINTIFF(S) *of Attorney's Lien Regarding Steven Octavien* (Attachments: # 1 Petition to Establish Attorney's Lien for Steven Octavien)(WEISS, SOL) (Entered: 03/17/2023) |
| 03/17/2023 | 12021 | NOTICE by JOHN LORENTZ (Lorentz, John) (Entered: 03/17/2023) |
| 03/17/2023 | 12022 | NOTICE by JOHN LORENTZ (Lorentz, John) (Entered: 03/17/2023) |
| 03/17/2023 | 12023 | NOTICE by JOHN LORENTZ (Lorentz, John) (Entered: 03/17/2023) |
| 03/17/2023 | 12024 | NOTICE by JOHN LORENTZ (Lorentz, John) (Entered: 03/17/2023) |
| 03/17/2023 | 12025 | NOTICE by JOHN LORENTZ (Lorentz, John) (Entered: 03/17/2023) |
| 03/20/2023 | 12026 | NOTICE by JOHN LORENTZ *Notice of Attoney's Lien (Marty Carter)* (Lorentz, John) (Entered: 03/20/2023) |
| 03/20/2023 | 12027 | NOTICE by JOHN LORENTZ *Notice of Attorney's Lien (Marcus Bell)* (Lorentz, John) (Entered: 03/20/2023) |

| 03/20/2023 | 12028 | NOTICE by JOHN LORENTZ *Notice of Attorney's Lien (Eric Hicks)* (Lorentz, John) (Entered: 03/20/2023) |
| 03/20/2023 | 12029 | NOTICE by JOHN LORENTZ *Notice of Attorney's Lien (Ray Feinga)* (Lorentz, John) (Entered: 03/20/2023) |
| 03/20/2023 | 12030 | NOTICE by JOHN LORENTZ *Notice of Attorney's Lien (Chris Walsh)* (Lorentz, John) (Entered: 03/20/2023) |
| 03/21/2023 | 12031 | MOTION to Enjoin the Distribution of the 5% Holdback from the Attorneys' Fees Qualified Settlement Fund filed by MARCUS BUCKLEY.Certificate of Service. (STECKLER, BRUCE) (Entered: 03/21/2023) |
| 03/24/2023 | 12032 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/24/23. 3/24/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 03/24/2023) |
| 03/24/2023 | 12033 | MOTION for Reconsideration re 12001 Order filed by Margrit Dyko, Andre Howard, Donna Martin, Rhonda Duncan, Lenore Stehouwer, Mindy Stubbs, Ellen Morin, Rona Taylor, Lisa Chamberlin, Nina Hunter, YVONNE SAGAPOLUTELE, Wanda Cayolle-Payne, Gwendolyn Daniels, Sexton Holmes, Ella McGill, Holly Oliver, Gary Schuh, John H. Baker, III.Memorandum, Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Memorandum)(DEMERATH, JUSTIN) (Entered: 03/24/2023) |
| 03/28/2023 | 12034 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Selwyn Jones. (mbh) (Entered: 03/29/2023) |
| 03/29/2023 | 12035 | NOTICE OF APPEAL as to 12001 Order by John H. Baker, III. Filing fee $ 505, receipt number APAEDC-16594013. Copies to Judge, Clerk USCA, Appeals Clerk and (CAMPBELL, DAVID) Modified on 3/30/2023 (jwl). DOCKETED IN ERROR. See 12037 (Entered: 03/29/2023) |
| 03/29/2023 | 12036 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (NUR-VACCARO, FIROUZEH) (Entered: 03/29/2023) |
| 03/29/2023 | 12037 | NOTICE OF APPEAL as to 12001 Order by John H. Baker, III, Wanda Cayolle-Payne, Lisa Chamberlin, Gwendolyn Daniels, Rhonda Duncan, Margrit Dyko, Sexton Holmes, Andre Howard, Nina Hunter, Donna Martin, Ella McGill, Ellen Morin, Holly Oliver, YVONNE SAGAPOLUTELE, Gary Schuh, Lenore Stehouwer, Mindy Stubbs, Rona Taylor. Filing fee $ 505, receipt number APAEDC-16594013. Copies to Judge, Clerk USCA, Appeals Clerk and (CAMPBELL, DAVID) (Entered: 03/29/2023) |
| 03/30/2023 | 12038 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 3/30/23. 3/30/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 03/30/2023) |
| 03/30/2023 | 12039 | APPLICATION/PETITION *SEVENTH VERIFIED PETITION OF CLASS COUNSEL CHRISTOPHER A. SEEGER FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS FEES AND EXPENSES* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 03/30/2023) |

| 04/03/2023 | 12040 | NOTICE of Docketing Record on Appeal from USCA re 12037 Notice of Appeal, filed by Rhonda Duncan, John H. Baker, III, Nina Hunter, Mindy Stubbs, Donna Martin, Holly Oliver, Ellen Morin, Lenore Stehouwer, Gwendolyn Daniels, Ella McGill, YVONNE SAGAPOLUTELE, Wanda Cayolle-Payne, Lisa Chamberlin, Rona Taylor, Andre Howard, Sexton Holmes, Margrit Dyko, Gary Schuh. USCA Case Number 23-1585. (mbh) (Entered: 04/03/2023) |
| --- | --- | --- |
| 04/03/2023 | 12041 | STIPULATION AND ORDER WAIVING RIGHT TO APPEAL ATTORNEY LIEN RE: RAYMOND BUCHANAN. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/3/23. 4/3/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 04/03/2023) |
| 04/03/2023 | 12042 | Certified Copy of Order from USCA for the Third Circuit. ORDERED that the above-entitled appeal(s) is(are) stayed pending disposition of the motion. The parties are directed to file written reports addressing the status of the pending motion on 05/03/2023 and every thirty (30) days thereafter until the last motion is decided. The stay will automatically expire upon entry of the order disposing of the last post-decision motion. (mbh) (Entered: 04/03/2023) |
| 04/04/2023 | 12043 | RESPONSE in Opposition re 12031 MOTION to Enjoin the Distribution of the 5% Holdback from the Attorneys' Fees Qualified Settlement Fund filed by PLAINTIFF(S). (Attachments: # 1 Declaration of Christopher A. Seeger)(SEEGER, CHRISTOPHER) (Entered: 04/04/2023) |
| 04/04/2023 | 12044 | Letter dated April 4, 2023, Requesting an Extension of Time to Respond to the Class Members' Motion to Alter or Amend the Order that the Objections of the Class Members are Denied by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Conference and Certificate of Service)(KARP, BRAD) (Entered: 04/04/2023) |
| 04/04/2023 | 12045 | ORDER THAT THE NFL PARTIES MUST RESPOND TO THE MOTION ON OR BEFORE APRIL 26, 2023. SIGNED BY HONORABLE ANITA B. BRODY ON 4/4/23. 4/4/23 ENTERED AND COPIES E-MAILED.(jwl) (Main Document 12045 replaced on 4/4/2023) (jwl). (Entered: 04/04/2023) |
| 04/04/2023 | | Set/Reset Deadlines as to 12033 MOTION for Reconsideration re 12001 Order . RESPONSES DUE BY 4/26/2023. (jwl) (Entered: 04/04/2023) |
| 04/05/2023 | 12046 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Seth Joyner. (mbh) (Entered: 04/05/2023) |
| 04/05/2023 | 12047 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Fred Baxter. (mbh) (Entered: 04/05/2023) |
| 04/10/2023 | 12048 | NOTICE by Langfitt Garner PLLC *Attorney's Lien regarding Grady Jackson* (LANGFITT, DAVID) (Entered: 04/10/2023) |
| 04/10/2023 | 12049 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/10/23. 4/11/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 04/11/2023) |
| 04/10/2023 | 12050 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS |

| | | |
|---|---|---|
| | | DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/10/23. 4/11/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 04/11/2023) |
| 04/10/2023 | 12051 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/10/23. 4/11/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 04/11/2023) |
| 04/11/2023 | 12052 | NOTICE by John Giddens *Attorney's Lien Regarding Khalid Abdullah* (GIDDENS, JOHN) (Entered: 04/11/2023) |
| 04/11/2023 | 12053 | NOTICE by John Giddens *Attorney's Lien Regarding Marcus Aiken* (GIDDENS, JOHN) (Entered: 04/11/2023) |
| 04/11/2023 | 12054 | NOTICE by John Giddens *Attorney's Lien Regarding Marcus Anderson* (GIDDENS, JOHN) (Entered: 04/11/2023) |
| 04/11/2023 | 12055 | NOTICE by John Giddens *Attorney's Lien Regarding William Dominic Austin* (GIDDENS, JOHN) (Entered: 04/11/2023) |
| 04/11/2023 | 12056 | NOTICE by John Giddens *Attorney's Lien for Stephen J. Avery* (GIDDENS, JOHN) (Entered: 04/11/2023) |
| 04/11/2023 | 12057 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - John Michael Reichenbach. (mbh) (Entered: 04/11/2023) |
| 04/11/2023 | 12058 | NOTICE by John Giddens *Attorney's Lien for Estes Banks* (GIDDENS, JOHN) (Entered: 04/11/2023) |
| 04/11/2023 | 12059 | NOTICE by John Giddens *Attorney's Lien for Ephesians Bartley* (GIDDENS, JOHN) (Entered: 04/11/2023) |
| 04/11/2023 | 12060 | NOTICE by John Giddens *Attoeny's Lien for Tony Berti* (GIDDENS, JOHN) (Entered: 04/11/2023) |
| 04/11/2023 | 12061 | NOTICE by John Giddens *Attorney's Lien for Edmond Blevins* (GIDDENS, JOHN) (Entered: 04/11/2023) |
| 04/11/2023 | 12062 | NOTICE by John Giddens *Attorney's Lien for Eugene Bowen* (GIDDENS, JOHN) (Entered: 04/11/2023) |
| 04/11/2023 | 12063 | NOTICE by John Giddens *Attorney's Lien for Anthony Q Brown* (GIDDENS, JOHN) (Entered: 04/11/2023) |
| 04/11/2023 | 12064 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/11/23. 4/12/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 04/12/2023) |
| 04/12/2023 | 12065 | NOTICE by John Giddens *Attorney's Lien for Kenneth Bryant* (GIDDENS, JOHN) (Entered: 04/12/2023) |
| 04/12/2023 | 12066 | NOTICE by John Giddens *Attorney's Lien for Chris Burkett* (GIDDENS, JOHN) (Entered: 04/12/2023) |
| 04/12/2023 | 12067 | STIPULATION AND ORDER WAIVING RIGHT TO APPEAL ATTORNEY LIEN RE: MERVYN FERNANDEZ. SIGNED BY MAGISTRATE JUDGE DAVID R. |

| | | STRAWBRIDGE ON 4/12/23. 4/12/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 04/12/2023) |
|---|---|---|
| 04/12/2023 | 12068 | STIPULATION AND ORDER WAIVING RIGHT TO APPEAL ATTORNEY LIEN RE: DENNIS WINSTON. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/12/23. 4/12/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 04/12/2023) |
| 04/12/2023 | 12069 | NOTICE by John Giddens *Attorney's Liens for Joshua Burr, Kenneth Burrough, Sammie Burroughs, Jr., Richard Byrd, Vincent Carter, Eugene Clinton, Evan Cooper, Larry Cowan, Clifton Crosby, Preston Davis, Roosevelt Davis, James Demerritt, Michael Davis Denson, Kevin Dent, Dennis Devaughn, Bryan Dickerson, John DiGiorgio, Ray Donaldson, Jim Duffner, James Duggan, Ernest Dye, Tyler Everett, Jason Fisk, Scott Fitzkee, James Ford, Steve Gage, William Gaines, Frank Garcia, Richard Gardner, Jimmy Gary, Tim George, Richard Gardner, David Geralds, John Gilliam, Kevin Gogan, Cornell Gordon, Sr., Richard Graf, Jeff Graham, Jeff Grau, Melvin Gray, Leon Gray, Ahman Green, L.C. Greenwood, Earl "Jack" Gregory, James "Jim' Grier, Issac Griffin, Norman Hand, Jon Hand, Willie Harper, Perry Harrington, Odie Harris, Jeffrey Hartings, Harold Heath, Russell Todd Hilger, Demetrius Hill, Victor Hobson, Robert Hughes, Keith Jackson, Robert Jackson, Gerald Jackson, Sr., Cameron Jacobs, Van Jakes, Jeffrey James, John Jennings, Brian Johnson, Joe Johnson, Gregory Johnson, Michael Jones, Clarence Jones, Christopher Jones, Rickey Jones, James Juriga, Kenoy Kennedy, Roshad Kent, Chris Kern, Terry Killens, Jr., Tim Kohn, Gordon Laro, Thomas Leonard, Nate Lews, Adam Linger, Gerald Loper, Clarence Love, Joe Lowery, Curtice Macfarlane, Frank Marchlewski, Derrell Marshall, James Marshall, Wayne Martin, Tim Massaquoi, Reginald E. Mathis, Partick Mccoy, John Mcdougle, Ben Mcgee, Jr., Jeremy Mckinney, Kevin Mclain, Clifton Mcneil, Romaro Miller, Carl Mims, Marc Munford, Tobiath Miles, Joe Nastasi, James Nelson, Picasso Nelson, Tori Noel, Tommy Norman, David H. O'brien, Ervin Parker, Lemar Parrish, Ricky Patton, Leon Perry, Carl Powell, Henry Rhodes, Floyd Rice, Ernest Richardson, Troy Ridgley, Bobby Riley, Charles Romes, Donald Ryals, Michael Salmon, Jay Schroeder, Greg Scott, Peter Shorts, Kaseem Sinceno, Tony Smith, Bobby L. Smith, Sam Garnes, Fred Smoot, Shawn Springs, Kenneth Toler, Benjamin Chad Stanley, Earnest Young, Greg Stemrick, Rayna Stewart, Jerry Sturm, Frank Sutton, Malcolm Taylor, Edward Thomas, Damon Thomas, Jimmy Thomas, Jeffrey Thomason, Frank Thompson, Joe Walker, Marquis Walker, Tim Watson, Jim Weatherly, Terrence Wells, James West, Rhondy Weston, Reginald White, Raymond White, Robert "Ben" Williams, Andrew Williams, Roland Williams, Jay Williams, Erik Williams, Reginald Williams, Lee Williamson, Sean Woodson, Roscoe Word, Jr., Destry Wright, Rickey Young* (GIDDENS, JOHN) (Entered: 04/12/2023) |
| 04/17/2023 | 12070 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Jacob Green* (LOCKS, GENE) (Entered: 04/17/2023) |
| 04/17/2023 | 12071 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Louis Piccone* (LOCKS, GENE) (Entered: 04/17/2023) |
| 04/17/2023 | 12072 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Brian Iwuh* (LOCKS, GENE) (Entered: 04/17/2023) |
| 04/17/2023 | 12073 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - William Austin* (LOCKS, GENE) (Entered: 04/17/2023) |
| 04/17/2023 | 12074 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Steve Everitt* (LOCKS, GENE) (Entered: 04/17/2023) |

| 04/17/2023 | 12075 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Joe Cocozzo* (LOCKS, GENE) (Entered: 04/17/2023) |
| 04/17/2023 | 12076 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Emanuel King* (LOCKS, GENE) (Entered: 04/17/2023) |
| 04/17/2023 | 12077 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Benjamin Rudolph* (LOCKS, GENE) (Entered: 04/17/2023) |
| 04/17/2023 | 12078 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Randy Cuthbert* (LOCKS, GENE) (Entered: 04/17/2023) |
| 04/17/2023 | 12079 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - James Owens* (LOCKS, GENE) (Entered: 04/17/2023) |
| 04/17/2023 | 12080 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Ronald Kenny* (LOCKS, GENE) (Entered: 04/17/2023) |
| 04/17/2023 | 12081 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Leonard Harris* (LOCKS, GENE) (Entered: 04/17/2023) |
| 04/17/2023 | 12082 | TPO Form re 12037 Notice of Appeal, : (CAMPBELL, DAVID) (Entered: 04/17/2023) |
| 04/17/2023 | 12083 | REPLY to Response to Motion re 12031 MOTION to Enjoin the Distribution of the 5% Holdback from the Attorneys' Fees Qualified Settlement Fund filed by MARCUS BUCKLEY. (STECKLER, BRUCE) (Entered: 04/17/2023) |
| 04/17/2023 | 12084 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WIHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/17/23. 4/18/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 04/18/2023) |
| 04/18/2023 | 12085 | NOTICE of Withdrawal of Appearance by EDWARD A. DIVER on behalf of MOKARAM LAW FIRM, THE BUCKLEY LAW GROUP, THE STERN LAW GROUP(DIVER, EDWARD) (Entered: 04/18/2023) |
| 04/18/2023 | 12086 | NOTICE of Withdrawal of Appearance by HOWARD I. LANGER on behalf of MOKARAM LAW FIRM, THE BUCKLEY LAW GROUP, THE STERN LAW GROUP(LANGER, HOWARD) (Entered: 04/18/2023) |
| 04/18/2023 | 12087 | NOTICE of Withdrawal of Appearance by PETER E. LECKMAN on behalf of MOKARAM LAW FIRM, THE BUCKLEY LAW GROUP, THE STERN LAW GROUP(LECKMAN, PETER) (Entered: 04/18/2023) |
| 04/18/2023 | 12088 | STIIULATION AND ORDER WAIVING RIGHTS TO APPEAL FINAL DECISION OF THE HONORABLE DAVID R. STRAWBRIDGE, USMJ. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 4/18/23. 4/18/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 04/18/2023) |
| 04/20/2023 | 12089 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 04/20/2023) |
| 04/20/2023 | 12090 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Darryl Clack and Juanita Clack* (LUCKASEVIC, JASON) (Entered: 04/20/2023) |
| 04/20/2023 | 12091 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Willie Williams* (LOCKS, GENE) (Entered: 04/20/2023) |

| 04/20/2023 | 12092 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Todd Kalis* (LOCKS, GENE) (Entered: 04/20/2023) |
| 04/20/2023 | 12093 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Frank Middleton* (LOCKS, GENE) (Entered: 04/20/2023) |
| 04/20/2023 | 12094 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Frank Garcia* (LOCKS, GENE) (Entered: 04/20/2023) |
| 04/20/2023 | 12095 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Don Beebe* (LOCKS, GENE) (Entered: 04/20/2023) |
| 04/21/2023 | 12096 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (Ahanotu)* (SHENAQ, AMIR) (Entered: 04/21/2023) |
| 04/21/2023 | 12097 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (Hanford Dixon)* (SHENAQ, AMIR) (Entered: 04/21/2023) |
| 04/21/2023 | 12098 | NOTICE of Appearance by Larry E Jarrett on behalf of EUGENE LOCKHART, JR (Jarrett, Larry) (Entered: 04/21/2023) |
| 04/21/2023 | 12099 | NOTICE by EUGENE LOCKHART, JR *of Attorney Lien* (Jarrett, Larry) (Entered: 04/21/2023) |
| 04/25/2023 | 12100 | REPLY to Response to Motion re 11762 MOTION to Release 5% Holdback and Request for Expedited Hearings filed by PLAINTIFF(S). (ACHO, JAMES) (Entered: 04/25/2023) |
| 04/25/2023 | 12101 | NOTICE by PLAINTIFF(S) re 11762 MOTION to Release 5% Holdback and Request for Expedited Hearings *Notice of Joinder* (ACHO, JAMES) (Entered: 04/25/2023) |
| 04/26/2023 | 12102 | NOTICE by Langfitt Garner PLLC *Attorney's Lien Regarding Irving Fryar* (LANGFITT, DAVID) (Entered: 04/26/2023) |
| 04/26/2023 | 12103 | RESPONSE in Opposition re 12033 MOTION for Reconsideration re 12001 Order filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Text of Proposed Order)(KARP, BRAD) (Entered: 04/26/2023) |
| 05/01/2023 | 12104 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WIHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/1/23. 5/1/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 05/01/2023) |
| 05/02/2023 | 12105 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Bill Lewis* (LOCKS, GENE) (Entered: 05/02/2023) |
| 05/02/2023 | 12106 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/2/23. 5/2/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 05/02/2023) |
| 05/08/2023 | 12107 | REPLY to Response to Motion re 12033 MOTION for Reconsideration re 12001 Order filed by John H. Baker, III, Wanda Cayolle-Payne, Lisa Chamberlin, Gwendolyn Daniels, Rhonda Duncan, Margrit Dyko, Sexton Holmes, Andre Howard, Nina Hunter, Donna Martin, Ella McGill, Ellen Morin, Holly Oliver, YVONNE SAGAPOLUTELE, Gary Schuh, Lenore Stehouwer, Mindy Stubbs, Rona Taylor. (CAMPBELL, DAVID) (Entered: 05/08/2023) |

**-801-**

| 05/11/2023 | 12108 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Dale Hackbart. (mbh) (Entered: 05/12/2023) |
| 05/11/2023 | 12109 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Roosevelt Potts. (mbh) (Entered: 05/12/2023) |
| 05/11/2023 | 12110 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - James Geathers. (mbh) (Entered: 05/12/2023) |
| 05/16/2023 | 12111 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (C. Coleman)* (KARATINOS, THEODORE) (Entered: 05/16/2023) |
| 05/16/2023 | 12112 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Jarvis Redwine* (LOCKS, GENE) (Entered: 05/16/2023) |
| 05/16/2023 | 12113 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Antonio Langham* (LOCKS, GENE) (Entered: 05/16/2023) |
| 05/22/2023 | 12114 | NOTICE by PLAINTIFF(S) *of Attorney's Lien -Leon Searcy* (CUTHBERT, BYRON) (Entered: 05/22/2023) |
| 05/23/2023 | 12115 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Jason Phillips* (LOCKS, GENE) (Entered: 05/23/2023) |
| 05/23/2023 | 12116 | NOTICE by PLAINTIFF(S) *of Attorney's Lien - Darrel Jones* (CUTHBERT, BYRON) (Entered: 05/23/2023) |
| 05/24/2023 | 12117 | NOTICE by PLAINTIFF(S) *Notice of Lien--Daryl Terrell* (LUCKASEVIC, JASON) (Entered: 05/24/2023) |
| 05/24/2023 | 12119 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Elijah Williams. (mbh) (Entered: 05/30/2023) |
| 05/24/2023 | 12120 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Clifton Smith. (mbh) (Entered: 05/30/2023) |
| 05/30/2023 | 12118 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Gene Atkins. (mbh) (Entered: 05/30/2023) |
| 05/30/2023 | 12121 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/30/23. 5/30/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 05/30/2023) |
| 05/30/2023 | 12122 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/30/23. 5/30/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 05/30/2023) |
| 05/30/2023 | 12123 | STIPULATION AND ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/30/23. 5/31/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 05/31/2023) |

| 05/31/2023 | 12124 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 5/31/23. 5/31/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 05/31/2023) |
| --- | --- | --- |
| 05/31/2023 | 12125 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (M.Clark)* (KARATINOS, THEODORE) (Entered: 05/31/2023) |
| 06/01/2023 | 12128 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Cosey Coleman. (mbh) (Entered: 06/02/2023) |
| 06/02/2023 | 12126 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/2/23. 6/2/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 06/02/2023) |
| 06/02/2023 | 12127 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/2/23. 6/2/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 06/02/2023) |
| 06/02/2023 | 12129 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/2/23. 6/5/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 06/05/2023) |
| 06/02/2023 | 12130 | STIPULATION AND ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/2/23. 6/5/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 06/05/2023) |
| 06/02/2023 | 12131 | STIPULATION AND ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/2/23. 6/5/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 06/05/2023) |
| 06/05/2023 | 12132 | SUPPLEMENTAL REPORT AND RECOMMENDATION THAT THE CLAIMS ADMINISTATOR BE ORDERED TO DESIGNATE AND RELEASE FUNDS WITHHELD FOR ATTORNEY'S FEES AND COSTS. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/5/23. 6/5/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (Attachments: # 1 Proposed Order, # 2 Notice) (mbh) (Entered: 06/05/2023) |
| 06/06/2023 | 12133 | REPORT OF THE SPECIAL MASTERS BY WENDELL E. PRITCHETT, JO-ANN M. VERRIER AND DAVID A. HOFFMAN, (mbh) (Entered: 06/06/2023) |
| 06/06/2023 | 12134 | BAP ADMINISTRATOR STATUS REPORT NO. 18. (mbh) (Entered: 06/06/2023) |
| 06/06/2023 | 12135 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 20. (mbh) (Entered: 06/06/2023) |

| 06/06/2023 | 12137 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Grady Jackson. (mbh) (Entered: 06/12/2023) |
| 06/06/2023 | 12138 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Mark Bavaro. (mbh) (Entered: 06/12/2023) |
| 06/07/2023 | 12136 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/7/23. 6/7/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 06/07/2023) |
| 06/12/2023 | 12139 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/12/23. 6/12/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 06/12/2023) |
| 06/12/2023 | 12140 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/12/23. 6/12/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 06/12/2023) |
| 06/13/2023 | 12141 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/13/23. 6/13/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 06/13/2023) |
| 06/13/2023 | 12142 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/13/23. 6/13/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 06/13/2023) |
| 06/13/2023 | 12143 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/13/23. 6/14/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 06/14/2023) |
| 06/15/2023 | 12144 | APPLICATION/PETITION *to Establish Attorney Lien* by PLAINTIFF(S). (ACHO, JAMES) (Entered: 06/15/2023) |
| 06/15/2023 | 12145 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (ACHO, JAMES) (Entered: 06/15/2023) |
| 06/16/2023 | 12146 | STIPULATION AND ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/16/23. 6/16/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 06/16/2023) |
| 06/16/2023 | 12147 | MEMORANDUM AND/OR OPINION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/16/23. 6/16/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 06/16/2023) |

| 06/16/2023 | 12148 | ORDER THAT THE CLAIMS ADMINISTRATOR SHALL DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS ALLOCATION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 6/16/23. 6/16/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 06/16/2023) |
| --- | --- | --- |
| 06/23/2023 | 12149 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Marcus Dupree. (mbh) (Entered: 06/26/2023) |
| 06/26/2023 | 12150 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Wendell Carter. (mbh) (Entered: 06/26/2023) |
| 06/28/2023 | 12151 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Harold Bishop* (Attachments: # 1 Exhibit - Petition to Establish Attorney's Lien)(MCCORVEY, DERRIEL) (Entered: 06/28/2023) |
| 06/30/2023 | 12152 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Sylvester Stamps. (mbh) (Entered: 07/03/2023) |
| 06/30/2023 | 12153 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Ron Morris. (mbh) (Entered: 07/03/2023) |
| 06/30/2023 | 12154 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Ralph E. Hunter. (mbh) (Entered: 07/03/2023) |
| 07/06/2023 | 12155 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/6/23. 7/6/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 07/06/2023) |
| 07/06/2023 | 12156 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/6/23. 7/6/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 07/06/2023) |
| 07/07/2023 | 12157 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/7/23. 7/7/23 ENTERED AND COPIES E-MAILED TO LIAISON. (mbh) (Entered: 07/07/2023) |
| 07/07/2023 | 12158 | ORDER THAT COLLINS & TRUETT SHALL SHOW CAUSE IN WRITING TO BE FILED ON THE MDL DOCKET WITHIN 10 DAYS OF THE ENTRY OF THIS ORDER WHY THE COURT SHOULD NOT REDUCE OR REJECT ENTIRELY ITS ATTORNEY FEE IN THIS MATTER. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/7/23. 7/7/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 07/07/2023) |
| 07/07/2023 | 12159 | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/7/23. 7/7/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 07/07/2023) |

| 07/10/2023 | 12160 | REPORT AND RECOMMENDATION THAT THE WITHDRAWAL OF LIEN DISPUTE BE REJECTED AND THE MATTER BE REMANDED TO THE CLAIMS ADMINISTRATOR FOR FURTHER PROCEEDINGS CONSISTENT WITH THE RULES GOVERNING ATTORNEY LIEN DISPUTES. THE PARTIES MAY FILE OBJECTIONS TO THIS REPORT AND RECOMMENDATION. SEE RULE 25(D). DAY, JULY 24 AT 1:30 P.M. BEFORE THE UNDERSIGNED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/10/23. (Attachments: # 1 R&R NOTICE) 7/10/23 ENTERED AND COPIES E-MAILED TO LIASON COUNSEL.(amas) (Entered: 07/10/2023) |
|---|---|---|
| 07/11/2023 | 12161 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Tatum Bell* (Attachments: # 1 Exhibit Petition to Establish Attorney's Lien as to Tatum Bell)(MCGLAMRY, MICHAEL) (Entered: 07/11/2023) |
| 07/11/2023 | 12162 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/11/2023) |
| 07/12/2023 | 12163 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Lewis Scott* (Attachments: # 1 Petition to Establish Attorney's Lien as to Lewis Scott)(MCGLAMRY, MICHAEL) (Entered: 07/12/2023) |
| 07/12/2023 | 12164 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 07/12/2023) |
| 07/13/2023 | 12165 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/13/23. 7/13/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(amas) (Entered: 07/13/2023) |
| 07/13/2023 | 12166 | EXPLANATION ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/13/23. 7/13/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(amas) (Entered: 07/13/2023) |
| 07/13/2023 | 12168 | CONSENT TO JURISDICTION BY US MAGISTRATE JUDGE IN LAWRENCE WATKINS V. LOCKS LAW FIRM.(amas) (Entered: 07/14/2023) |
| 07/14/2023 | 12167 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/14/23. 7/14/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(amas) (Entered: 07/14/2023) |
| 07/14/2023 | 12169 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE |

| | | |
|---|---|---|
| | | JUDGE DAVID R. STRAWBRIDGE ON 7/14/23. 7/14/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(amas) (Entered: 07/14/2023) |
| 07/14/2023 | 12170 | STIPULATION AND ORDER WAIVING RIGHT TO APPEAL ATTORNEY LIEN RE: DALE HACKBART. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/14/23. 7/14/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(amas) (Entered: 07/14/2023) |
| 07/17/2023 | 12171 | STIPULATION AND ORDER WAIVING RIGHT TO APPEAL ATTORNEY LIEN RE: LAWRENCE WATKINS. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/17/2023. 7/17/2023 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (ems) (Entered: 07/17/2023) |
| 07/17/2023 | 12172 | CONSENT to Jurisdiction by US Magistrate Judge in JAMES PRUITT v. FARRISE LAW FIRM, PC; SMITH & STALLWORTH (ems) (Entered: 07/17/2023) |
| 07/17/2023 | 12173 | CONSENT to Jurisdiction by US Magistrate Judge in ROBERT WILSON v. FARRISE LAW FIRM, PC (ems) (Entered: 07/17/2023) |
| 07/18/2023 | 12174 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 07/18/2023) |
| 07/18/2023 | 12175 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Mike Gann and Karen Gann* (LUCKASEVIC, JASON) (Entered: 07/18/2023) |
| 07/19/2023 | 12176 | MOTION for Extension of Time to File Response/Reply as to 12158 Order, filed by RICHARD COLLINS..(COLLINS, RICHARD) (Entered: 07/19/2023) |
| 07/19/2023 | 12177 | ORDER THAT 12176 MOTION FOR EXTENSION OF TIME TO FILE RESPONSE/REPLY as to 12158 Order IS GRANTED; THE DEADLINE FOR COLLINS & TRUETT TO RESPOND TO THE ORDER OF THIS COURT DATED JULY 7, 2023 IS EXTENDED TO JULY 27, 2023. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 7/19/2023; 7/19/2023 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (tjd) (Entered: 07/19/2023) |
| 07/20/2023 | 12178 | MOTION for Approval filed by PLAINTIFF(S).Class Counsel's Motion or Approval to Continue Funding the Previously Approved Innovate Project Through the Education Fund and Memorandum in Support. (Attachments: # 1 Exhibit Exhibit A - Extension Proposal, # 2 Exhibit Exhibit B - Letters of Appreciation)(SEEGER, CHRISTOPHER) (Entered: 07/20/2023) |
| 07/20/2023 | 12179 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorney Fees--Quinn Gray* (LUCKASEVIC, JASON) (Entered: 07/20/2023) |
| 07/24/2023 | 12180 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorney Fees--Matt O'Dwyer* (LUCKASEVIC, JASON) (Entered: 07/24/2023) |
| 07/24/2023 | 12181 | Objections by RICHARD COLLINS *to Magistrate's Report & Recommendation, Doc. No. 12160*. (Attachments: # 1 Exhibit Official Statement, # 2 Exhibit Chronology - Accounting)(COLLINS, RICHARD) (Entered: 07/24/2023) |
| 07/27/2023 | 12182 | NOTICE by PLAINTIFF(S) *Notice and Petition for Expenses and Costs--John Keith* (LUCKASEVIC, JASON) (Entered: 07/27/2023) |
| 07/27/2023 | 12183 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Reggie Brown* (LUCKASEVIC, JASON) (Entered: 07/27/2023) |
| 07/27/2023 | 12184 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Benjamin Coleman* (LUCKASEVIC, JASON) (Entered: 07/27/2023) |

| 07/27/2023 | 12185 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--James Arnold* (LUCKASEVIC, JASON) (Entered: 07/27/2023) |
| 07/27/2023 | 12186 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorney Expenses and Costs--Donald Brady* (LUCKASEVIC, JASON) (Entered: 07/27/2023) |
| 07/27/2023 | 12187 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorney Fees and Expenses - Eric Dickerson* (CUTHBERT, BYRON) (Entered: 07/27/2023) |
| 07/27/2023 | 12188 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorney Costs and Expenses--Bobby Butler* (LUCKASEVIC, JASON) (Entered: 07/27/2023) |
| 07/27/2023 | 12189 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorney Fees and Expenses - Mark Clayton* (CUTHBERT, BYRON) (Entered: 07/27/2023) |
| 07/27/2023 | 12190 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Costs and Expenses--Fabien Bowens* (LUCKASEVIC, JASON) (Entered: 07/27/2023) |
| 07/27/2023 | 12191 | NOTICE by Henry McMillian *Notice of Attorney's Lien* (Attachments: # 1 Complaint Petition to Establish Attorney's Lien)(CLOUD, IAN) (Entered: 07/27/2023) |
| 07/27/2023 | 12192 | RESPONSE TO ORDER TO SHOW CAUSE by RICHARD COLLINS. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Declaration)(COLLINS, RICHARD) (Entered: 07/28/2023) |
| 07/28/2023 | 12193 | RESPONSE TO ORDER TO SHOW CAUSE by RICHARD COLLINS. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Declaration, # 4 Supplement)(COLLINS, RICHARD) (Entered: 07/28/2023) |
| 07/28/2023 | 12194 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Tony Bryant* (LUCKASEVIC, JASON) (Entered: 07/28/2023) |
| 07/28/2023 | 12195 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Donald Caldwell* (LUCKASEVIC, JASON) (Entered: 07/28/2023) |
| 07/28/2023 | 12196 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Christopher Cash* (LUCKASEVIC, JASON) (Entered: 07/28/2023) |
| 07/28/2023 | 12197 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Sedric Clark* (LUCKASEVIC, JASON) (Entered: 07/28/2023) |
| 07/28/2023 | 12198 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Jerod Cherry* (LUCKASEVIC, JASON) (Entered: 07/28/2023) |
| 07/28/2023 | 12199 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Scott Cloman* (LUCKASEVIC, JASON) (Entered: 07/28/2023) |
| 07/28/2023 | 12200 | ORDER ADOPTING REPORT AND RECOMMENDATIONS 11975 . SIGNED BY HONORABLE ANITA B. BRODY ON 7/28/23. 7/28/23 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 07/28/2023) |
| 07/31/2023 | 12201 | ORDER ADOPTING REPORT AND RECOMMENDATIONS 11802 . SIGNED BY HONORABLE ANITA B. BRODY ON 7/31/23. 7/31/23 ENTERED AND COPIES E-MAILED.(jwl) (Main Document 12201 replaced on 7/31/2023) (jwl). (Entered: 07/31/2023) |
| 07/31/2023 | 12202 | ORDER ADOPTING REPORT AND RECOMMENDATIONS 12132 . SIGNED BY HONORABLE ANITA B. BRODY ON 7/31/23. 7/31/23 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 07/31/2023) |

| 07/31/2023 | 12203 | ORDER granting 11988 MOTION TO WITHDRAW AS ATTORNEY. SIGNED BY HONORABLE ANITA B. BRODY ON 7/31/23.7/31/23 ENTERED AND COPIES E-MAILED.(jwl) (Main Document 12203 replaced on 7/31/2023) (jwl). (Entered: 07/31/2023) |
| 07/31/2023 | 12204 | ORDER granting 11927 MOTION TO WITHDRAW AS ATTORNEY. SIGNED BY HONORABLE ANITA B. BRODY ON 7/31/23.7/31/23 ENTERED AND COPIES E-MAILED.(jwl) (Main Document 12204 replaced on 7/31/2023) (jwl). (Entered: 07/31/2023) |
| 07/31/2023 | 12205 | ORDER granting 11925 MOTION TO WITHDRAW AS ATTORNEY. SIGNED BY HONORABLE ANITA B. BRODY ON 7/31/23.7/31/23 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 07/31/2023) |
| 07/31/2023 | 12212 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - K. Shello. (mbh) (Entered: 08/01/2023) |
| 07/31/2023 | 12213 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - L. Washington. (mbh) (Entered: 08/01/2023) |
| 08/01/2023 | 12206 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Henri Crockett* (LUCKASEVIC, JASON) (Entered: 08/01/2023) |
| 08/01/2023 | 12207 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Kenneth Davidson* (LUCKASEVIC, JASON) (Entered: 08/01/2023) |
| 08/01/2023 | 12208 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses-Earl Denny* (LUCKASEVIC, JASON) (Entered: 08/01/2023) |
| 08/01/2023 | 12209 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Arrion Dixon* (LUCKASEVIC, JASON) (Entered: 08/01/2023) |
| 08/01/2023 | 12210 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Mark Duchens* (LUCKASEVIC, JASON) (Entered: 08/01/2023) |
| 08/01/2023 | 12211 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--John Eskridge* (LUCKASEVIC, JASON) (Entered: 08/01/2023) |
| 08/01/2023 | 12214 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 8/1/23. 8/1/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 08/01/2023) |
| 08/01/2023 | 12215 | MOTION for Leave to File *Reply to Response to Order to Show Cause* filed by PLAINTIFF(S).Brief. (Attachments: # 1 Exhibit 12/5/2022 Email from R. Collins to M. McGlamry re R. Brown Lien)(MCGLAMRY, MICHAEL) (Entered: 08/01/2023) |
| 08/02/2023 | 12216 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--William Evers* (LUCKASEVIC, JASON) (Entered: 08/02/2023) |
| 08/02/2023 | 12217 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Ricky Feacher* (LUCKASEVIC, JASON) (Entered: 08/02/2023) |
| 08/02/2023 | 12218 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Victor Floyd* (LUCKASEVIC, JASON) (Entered: 08/02/2023) |

| 08/02/2023 | [12219](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--William Floyd* (LUCKASEVIC, JASON) (Entered: 08/02/2023) |
| 08/02/2023 | [12220](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Elliott Fortune* (LUCKASEVIC, JASON) (Entered: 08/02/2023) |
| 08/02/2023 | [12221](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Patrick Franklin* (LUCKASEVIC, JASON) (Entered: 08/02/2023) |
| 08/02/2023 | [12222](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Charlie Clemons* (LUCKASEVIC, JASON) (Entered: 08/02/2023) |
| 08/02/2023 | [12223](#) | ORDER THAT THE WAIVER OF APPEAL IS APPROVED. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 8/2/23. 8/2/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 08/02/2023) |
| 08/03/2023 | [12224](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Michael Gaines* (LUCKASEVIC, JASON) (Entered: 08/03/2023) |
| 08/03/2023 | [12225](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Tony Gaiter* (LUCKASEVIC, JASON) (Entered: 08/03/2023) |
| 08/03/2023 | [12226](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Damon Gibson* (LUCKASEVIC, JASON) (Entered: 08/03/2023) |
| 08/03/2023 | [12227](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Ernest Givens* (LUCKASEVIC, JASON) (Entered: 08/03/2023) |
| 08/03/2023 | [12228](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--August Otto* (LUCKASEVIC, JASON) (Entered: 08/03/2023) |
| 08/03/2023 | [12229](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--David Haines* (LUCKASEVIC, JASON) (Entered: 08/03/2023) |
| 08/04/2023 | [12230](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Jabar Gaffney* (LUCKASEVIC, JASON) (Entered: 08/04/2023) |
| 08/04/2023 | [12231](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Aaron Harper* (LUCKASEVIC, JASON) (Entered: 08/04/2023) |
| 08/04/2023 | [12232](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Anthony Harris* (LUCKASEVIC, JASON) (Entered: 08/04/2023) |
| 08/04/2023 | [12233](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Nicholas Harris* (LUCKASEVIC, JASON) (Entered: 08/04/2023) |
| 08/04/2023 | [12234](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Larry Hart* (LUCKASEVIC, JASON) (Entered: 08/04/2023) |
| 08/04/2023 | [12235](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Randy Hilliard* (LUCKASEVIC, JASON) (Entered: 08/04/2023) |
| 08/04/2023 | [12236](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Jeff Hunter* (LUCKASEVIC, JASON) (Entered: 08/04/2023) |
| 08/04/2023 | [12237](#) | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Sedrick Irvin* (LUCKASEVIC, JASON) (Entered: 08/04/2023) |
| 08/04/2023 | [12238](#) | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - Lawrence Taylor. (mbh) (Entered: 08/04/2023) |

| 08/05/2023 | 12239 | Emergency MOTION for Leave to File *Sur-Reply to Lienholder's Response* filed by RICHARD COLLINS..(COLLINS, RICHARD) (Entered: 08/05/2023) |
|---|---|---|
| 08/07/2023 | 12240 | NOTICE by Fred M. Feder (FEDER, FRED) (Entered: 08/07/2023) |
| 08/08/2023 | 12241 | NOTICE by PLAINTIFF(S) *of Attorney's Lien Regarding Quinton Ganther* (Attachments: # 1 Petition to Establish Attorney's Lien)(WEISS, SOL) (Entered: 08/08/2023) |
| 08/08/2023 | 12242 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Stephen Jackson* (LUCKASEVIC, JASON) (Entered: 08/08/2023) |
| 08/08/2023 | 12243 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Roger Jackson* (LUCKASEVIC, JASON) (Entered: 08/08/2023) |
| 08/08/2023 | 12244 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses---Tim Jacobs* (LUCKASEVIC, JASON) (Entered: 08/08/2023) |
| 08/08/2023 | 12245 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Marcus Jenkins* (LUCKASEVIC, JASON) (Entered: 08/08/2023) |
| 08/08/2023 | 12246 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--LaCurtis Jones* (LUCKASEVIC, JASON) (Entered: 08/08/2023) |
| 08/08/2023 | 12247 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Joseph Horn* (LUCKASEVIC, JASON) (Entered: 08/08/2023) |
| 08/08/2023 | 12248 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Kenyon Rambo* (LUCKASEVIC, JASON) (Entered: 08/08/2023) |
| 08/08/2023 | 12249 | ORDER THAT THE REQUESTED LEAVE IS DENIED. IT IS FURTHER ORDERED THAT THE "EMERGENCY MOTION FOR SEEKING LEAVE OF COURT TO FILE A SUR-REPLY" IS DENIED AS MOOT. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 8/8/23. 8/9/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 08/09/2023) |
| 08/09/2023 | 12250 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Kelvin Kight* (LUCKASEVIC, JASON) (Entered: 08/09/2023) |
| 08/09/2023 | 12251 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Anthony Ladd* (LUCKASEVIC, JASON) (Entered: 08/09/2023) |
| 08/09/2023 | 12252 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Max Lane* (LUCKASEVIC, JASON) (Entered: 08/09/2023) |
| 08/09/2023 | 12253 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses* (LUCKASEVIC, JASON) (Entered: 08/09/2023) |
| 08/09/2023 | 12254 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Kevin Lewis* (LUCKASEVIC, JASON) (Entered: 08/09/2023) |
| 08/09/2023 | 12255 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Ronald Lewis* (LUCKASEVIC, JASON) (Entered: 08/09/2023) |
| 08/09/2023 | 12256 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Robert Lyles* (LUCKASEVIC, JASON) (Entered: 08/09/2023) |
| 08/10/2023 | 12257 | MOTION Motion for Direct Payment of Loan Resolution filed by BALANCED BRIDGE FUNDING LLC.Memorandum of Law and Certificate of Service. (BUCKLEY, PETER) (Entered: 08/10/2023) |

| 08/10/2023 | 12258 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Lamar Lyons* (LUCKASEVIC, JASON) (Entered: 08/10/2023) |
| 08/10/2023 | 12259 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses (Marucus Patton)* (LUCKASEVIC, JASON) (Entered: 08/10/2023) |
| 08/10/2023 | 12260 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Adrian McBride* (LUCKASEVIC, JASON) (Entered: 08/10/2023) |
| 08/10/2023 | 12261 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Antoine McNutt* (LUCKASEVIC, JASON) (Entered: 08/10/2023) |
| 08/10/2023 | 12262 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Frank Middleton* (LUCKASEVIC, JASON) (Entered: 08/10/2023) |
| 08/10/2023 | 12263 | NOTICE by PLAINTIFF(S) re 12257 MOTION Motion for Direct Payment of Loan Resolution *of Settlement Class Member Marvin A. Washington's Joinder to Balanced Bridge's Motion for Direct Payment of Loan Resolution Amount* (Attachments: # 1 Certificate of Service)(FOSTER, ROBERT) (Entered: 08/10/2023) |
| 08/11/2023 | 12264 | EXPLANATION AND ORDER THAT THE WITHDRAWAL OF THE LIEN DISPUTE IS GRANTED. THE CLAIMS ADMINISTRATOR IS ORDERED TO DISTRIBUTE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS DECISION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDERS REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 8/11/23. 8/11/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 08/11/2023) |
| 08/14/2023 | 12265 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Carl Miller* (LUCKASEVIC, JASON) (Entered: 08/14/2023) |
| 08/14/2023 | 12266 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Sankar Montoute* (LUCKASEVIC, JASON) (Entered: 08/14/2023) |
| 08/14/2023 | 12267 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Clarence Moore* (LUCKASEVIC, JASON) (Entered: 08/14/2023) |
| 08/14/2023 | 12268 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Marques Murrell* (LUCKASEVIC, JASON) (Entered: 08/14/2023) |
| 08/14/2023 | 12269 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--James Nixon* (LUCKASEVIC, JASON) (Entered: 08/14/2023) |
| 08/14/2023 | 12270 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Gerald Perry* (LUCKASEVIC, JASON) (Entered: 08/14/2023) |
| 08/14/2023 | 12271 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Blaise Winter* (LOCKS, GENE) (Entered: 08/14/2023) |
| 08/14/2023 | 12272 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/14/2023) |
| 08/14/2023 | 12273 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Michael Lush* (LUCKASEVIC, JASON) (Entered: 08/14/2023) |
| 08/14/2023 | 12291 | Notice, Consents and Reference of an Attorney's Lien Dispute to a Magistrate Judge for a Final Decision - B. Miller. (mbh) (Entered: 08/17/2023) |
| 08/15/2023 | 12274 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - LaJourdain Birden* (LOCKS, GENE) (Entered: 08/15/2023) |

| 08/15/2023 | 12275 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--James Stewart* (LUCKASEVIC, JASON) (Entered: 08/15/2023) |
|---|---|---|
| 08/15/2023 | 12276 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Walter Stanley* (LUCKASEVIC, JASON) (Entered: 08/15/2023) |
| 08/15/2023 | 12277 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Nathan Simpson* (LUCKASEVIC, JASON) (Entered: 08/15/2023) |
| 08/15/2023 | 12278 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Keith Rucker* (LUCKASEVIC, JASON) (Entered: 08/15/2023) |
| 08/15/2023 | 12279 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Howard Richards* (LUCKASEVIC, JASON) (Entered: 08/15/2023) |
| 08/15/2023 | 12280 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Patrick Riley* (LUCKASEVIC, JASON) (Entered: 08/15/2023) |
| 08/15/2023 | 12281 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Tommy Polley* (LUCKASEVIC, JASON) (Entered: 08/15/2023) |
| 08/16/2023 | 12282 | NOTICE by PLAINTIFF(S) *of Attorney's Lien Regarding Earnest Byner* (CUTHBERT, BYRON) (Entered: 08/16/2023) |
| 08/16/2023 | 12283 | NOTICE by PLAINTIFF(S) *of Attorney's Lien Regarding Sam Gash* (CUTHBERT, BYRON) (Entered: 08/16/2023) |
| 08/16/2023 | 12284 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Gerald Willhite* (LUCKASEVIC, JASON) (Entered: 08/16/2023) |
| 08/16/2023 | 12285 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Larry Webster* (LUCKASEVIC, JASON) (Entered: 08/16/2023) |
| 08/16/2023 | 12286 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Tamarick Vanover* (LUCKASEVIC, JASON) (Entered: 08/16/2023) |
| 08/16/2023 | 12287 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Ernie Thompson* (LUCKASEVIC, JASON) (Entered: 08/16/2023) |
| 08/16/2023 | 12288 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--John Washington* (LUCKASEVIC, JASON) (Entered: 08/16/2023) |
| 08/16/2023 | 12289 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Charles Washington* (LUCKASEVIC, JASON) (Entered: 08/16/2023) |
| 08/16/2023 | 12290 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Anthony Thompson* (LUCKASEVIC, JASON) (Entered: 08/16/2023) |
| 08/21/2023 | 12292 | NOTICE by PLAINTIFF(S) *of Attorneys Costs and Expenses--Jeffrey Green* (LUCKASEVIC, JASON) (Entered: 08/21/2023) |
| 08/21/2023 | 12293 | NOTICE by PLAINTIFF(S) *of Attorneys Costs and Expenses--James Lynch* (LUCKASEVIC, JASON) (Entered: 08/21/2023) |
| 08/21/2023 | 12294 | NOTICE by PLAINTIFF(S) *of Attorneys Costs and Expenses--Zachary Crockett* (LUCKASEVIC, JASON) (Entered: 08/21/2023) |
| 08/21/2023 | 12295 | NOTICE by PLAINTIFF(S) *of Attorneys Costs and Expenses--David Wohlabau* (LUCKASEVIC, JASON) (Entered: 08/21/2023) |

| 08/21/2023 | 12296 | NOTICE by PLAINTIFF(S) *of Attorneys Costs and Expenses--Michael Young* (LUCKASEVIC, JASON) (Entered: 08/21/2023) |
| 08/21/2023 | 12297 | NOTICE by PLAINTIFF(S) *of Attorneys Costs and Expenses--Floyd Young* (LUCKASEVIC, JASON) (Entered: 08/21/2023) |
| 08/21/2023 | 12298 | NOTICE by PLAINTIFF(S) *of Attorneys Costs and Expenses--Warren Williams* (LUCKASEVIC, JASON) (Entered: 08/21/2023) |
| 08/21/2023 | 12299 | NOTICE by PLAINTIFF(S) *of Attorneys Costs and Expenses--Wally Williams* (LUCKASEVIC, JASON) (Entered: 08/21/2023) |
| 08/22/2023 | 12300 | NOTICE by JOHN LORENTZ *Notice and Petition for Attorneys Fees--Steve Octavien* (Lorentz, John) (Entered: 08/22/2023) |
| 08/22/2023 | 12301 | NOTICE by JOHN LORENTZ *Notice and Petition for Attorney Fees--Jarrod Bunch* (Lorentz, John) (Entered: 08/22/2023) |
| 08/22/2023 | 12302 | NOTICE by JOHN LORENTZ *Notice and Petition for Attorneys Fees--Albert Connell* (Lorentz, John) (Entered: 08/22/2023) |
| 08/22/2023 | 12303 | NOTICE by JOHN LORENTZ *Notice and Petition for Attorneys Lien--Henry Ford* (Lorentz, John) (Entered: 08/22/2023) |
| 08/22/2023 | 12304 | NOTICE by JOHN LORENTZ *Notice and Petition for Attorneys Lien-Phillip Dillard* (Lorentz, John) (Entered: 08/22/2023) |
| 08/22/2023 | 12305 | NOTICE by PLAINTIFF(S) *Attorney Fees & Costs Lien - Jamie Duncan* (CUTHBERT, BYRON) (Entered: 08/22/2023) |
| 08/23/2023 | 12306 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/23/2023) |
| 08/23/2023 | 12307 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Antonio Perkins and Monica Perkins* (LUCKASEVIC, JASON) (Entered: 08/23/2023) |
| 08/24/2023 | 12308 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Kenneth Gant* (LOCKS, GENE) (Entered: 08/24/2023) |
| 08/25/2023 | 12309 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Ralph Johnson* (LUCKASEVIC, JASON) (Entered: 08/25/2023) |
| 08/28/2023 | 12310 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/28/2023) |
| 08/28/2023 | 12311 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Melvin Hoover* (LUCKASEVIC, JASON) (Entered: 08/28/2023) |
| 08/28/2023 | 12312 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/28/2023) |
| 08/28/2023 | 12313 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-John Outlaw and Linda Outlaw* (LUCKASEVIC, JASON) (Entered: 08/28/2023) |
| 08/30/2023 | 12314 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Chad Lucas* (LUCKASEVIC, JASON) (Entered: 08/30/2023) |
| 08/30/2023 | 12315 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Craig Thompson* (LUCKASEVIC, JASON) (Entered: 08/30/2023) |

| 08/30/2023 | 12316 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Barry Wagner* (LUCKASEVIC, JASON) (Entered: 08/30/2023) |
| 08/30/2023 | 12317 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Marquis Johnson* (LUCKASEVIC, JASON) (Entered: 08/30/2023) |
| 08/30/2023 | 12318 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Brandon Lynch* (LUCKASEVIC, JASON) (Entered: 08/30/2023) |
| 08/30/2023 | 12319 | NOTICE by PLAINTIFF(S) *Notice and Petition for Costs and Expenses--Webbie Burnett* (LUCKASEVIC, JASON) (Entered: 08/30/2023) |
| 08/31/2023 | 12320 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 08/31/2023) |
| 08/31/2023 | 12321 | NOTICE by PLAINTIFF(S) *Notice and Petition for Attorneys Fees-Jessie Lee Hester adn Gerlienus Hester* (LUCKASEVIC, JASON) (Entered: 08/31/2023) |
| 08/31/2023 | 12322 | MOTION JOINT MOTION BY CLASS COUNSEL AND COUNSEL FOR THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC TO REPLACE THE BAP ADMINISTRATOR filed by PLAINTIFF(S)..(SEEGER, CHRISTOPHER) (Entered: 08/31/2023) |
| 08/31/2023 | 12323 | REPORT OF THE SPECIAL MASTERS by WENDELL E. PRITCHETT, JO-ANN M. VERRIER. (mbh) (Entered: 08/31/2023) |
| 08/31/2023 | 12324 | BAP ADMINISTRATOR STATUS REPORT NO. 19. (mbh) (Entered: 08/31/2023) |
| 08/31/2023 | 12325 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 21. (mbh) (Entered: 08/31/2023) |
| 08/31/2023 | 12326 | NOTICE by MARCUS BUCKLEY re 12031 MOTION to Enjoin the Distribution of the 5% Holdback from the Attorneys' Fees Qualified Settlement Fund *Request for Oral Hearing* (STECKLER, BRUCE) (Entered: 08/31/2023) |
| 09/01/2023 | 12327 | NOTICE OF ATTORNEY'S LEIN by Plaintiff's Counsel(va) (Entered: 09/01/2023) |
| 09/05/2023 | 12328 | MEMORANDUM AND/OR OPINION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/5/23. 9/5/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 09/05/2023) |
| 09/05/2023 | 12329 | ORDER THAT POPE MCGLAMRY PC IS AWARDED $564.27 FOR COSTS. IT IS FURTHER ORDERED THAT THE CLAIMS ADMINISTRATOR DISBURSE THE WITHHELD FUNDS IN ACCORDANCE WITH THIS ALLOCATION, THE PROVISIONS OF THE SETTLEMENT AGREEMENT, AND ALL COURT ORDER REGARDING IMPLEMENTATION. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 9/5/23. 9/5/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 09/05/2023) |
| 09/07/2023 | 12330 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Mitch Willis* (LOCKS, GENE) (Entered: 09/07/2023) |
| 09/11/2023 | 12331 | NOTICE by PLAINTIFF(S) re 12263 Notice (Other), *Affidavit* (Attachments: # 1 Certificate of Service)(FOSTER, ROBERT) (Entered: 09/11/2023) |
| 09/12/2023 | 12332 | ORDER THAT THE CLAIMS ADMINISTRATOR DIRECT THE SETTLEMENT TRUSTEE TO DEDUCT THE LOAN RESOLUTION AMOUNT SPECIFIED IN THE PAYOFF AGREEMENT BETWEEN MR. MARVIN A. WASHINGTON AND BALANCED BRIDGE FUNDING LLC F/K/A THRIVEST SPECIALTY FUNDING (THRIVEST) 12557 FROM MR. WASHINGTONS FORTHCOMING MONETARY |

| | | AWARD AND TO PAY SUCH AMOUNT DIRECTLY TO THRIVEST. SIGNED BY HONORABLE ANITA B. BRODY ON 9/11/23. 9/12/23 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 09/12/2023) |
|---|---|---|
| 09/14/2023 | 12333 | MOTION Motion to Release the 5% Hold-Back for NFL Players with Qualifying Diagnoses Prior to the Effective Date, and in the alternative, a Motion for an Audit Regarding the 5% Hold-Back filed by MARCUS BUCKLEY.Certificate of Service. (STECKLER, BRUCE) (Entered: 09/14/2023) |
| 09/14/2023 | 12334 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien as to Tyrell Peters* (Attachments: # 1 Petition to Establish Attorney's Lien as to Tyrell Peters)(MCGLAMRY, MICHAEL) (Entered: 09/14/2023) |
| 09/14/2023 | 12335 | NOTICE of Withdrawal of Appearance by MICHAEL LEE MCGLAMRY on behalf of PLAINTIFF(S)(MCGLAMRY, MICHAEL) (Entered: 09/14/2023) |
| 09/15/2023 | 12336 | NOTICE by PLAINTIFF(S) *of Attorney's Lien* (GUDMUNDSON, BRIAN) (Entered: 09/15/2023) |
| 09/20/2023 | 12337 | NOTICE by PLAINTIFF(S) *of Attorney's Fees Lien and Costs Tommy Barnhardt* (CUTHBERT, BYRON) (Entered: 09/20/2023) |
| 09/20/2023 | 12338 | NOTICE by PLAINTIFF(S) *of Attorney's Fees Lien and Costs Joseph Holmes* (CUTHBERT, BYRON) (Entered: 09/20/2023) |
| 09/20/2023 | 12339 | NOTICE by PLAINTIFF(S) *of Attorney's Fees Lien and Costs Richard Shelton* (CUTHBERT, BYRON) (Entered: 09/20/2023) |
| 09/20/2023 | 12340 | NOTICE by PLAINTIFF(S) *of Attorney's Fees Lien and Costs Clarence Jones* (CUTHBERT, BYRON) (Entered: 09/20/2023) |
| 09/20/2023 | 12341 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Mark Gunn* (LEH, MICHAEL) (Entered: 09/20/2023) |
| 09/21/2023 | 12342 | NOTICE by PLAINTIFF(S) *of Attorney's Lien (Harvey Williams)* (SHENAQ, AMIR) (Entered: 09/21/2023) |
| 09/21/2023 | 12343 | EXPLANATION AND ORDER THAT THE ORDER OF APRIL 4, 2017 7446 IS VACATED AND THAT ATTORNEY LIEN DISPUTES ARE REFERRED TO THE SPECIAL MASTERS FOR RESOLUTION ACCORDING TO RULES THAT WILL BE SET FORTH BY THE SPECIAL MASTERS AND APPROVED BY THE COURT. SIGNED BY HONORABLE ANITA B. BRODY ON 9/21/23. 9/21/23 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 09/21/2023) |
| 09/21/2023 | 12344 | ORDER THAT FINAL JUDGMENT IS ENTERED IN FAVOR OF THE RIDDELL DEFENDANTS AS TO THE NON-EXHIBIT 1 PLAINTIFFS. SIGNED BY HONORABLE ANITA B. BRODY ON 9/21/23. 9/21/23 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 09/21/2023) |
| 09/22/2023 | 12345 | ORDER granting 12322 Motion to designate a new BAP Administrator. SIGNED BY HONORABLE ANITA B. BRODY ON 9/22/23.9/22/23 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 09/22/2023) |
| 09/25/2023 | 12346 | ORDER granting 12178 MOTION FOR APPROVAL. SIGNED BY HONORABLE ANITA B. BRODY ON 9/22/23.9/25/23 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 09/25/2023) |
| 09/27/2023 | 12347 | NOTICE by THE LOCKS LAW FIRM *of Attorney's Lien - Jason Craft* (LOCKS, GENE) (Entered: 09/27/2023) |

**-816-**

| 09/27/2023 | 12348 | ORDER ADOPTING 12343 . SIGNED BY HONORABLE ANITA B. BRODY ON 9/27/23. (Attachments: # 1 Supplement) 9/27/23 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 09/27/2023) |
| --- | --- | --- |
| 09/28/2023 | 12349 | RESPONSE in Opposition re 12333 MOTION Motion to Release the 5% Hold-Back for NFL Players with Qualifying Diagnoses Prior to the Effective Date, and in the alternative, a Motion for an Audit Regarding the 5% Hold-Back filed by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 09/28/2023) |
| 09/28/2023 | 12350 | NOTICE OF MILLER REPORT (Attachments: # 1 Exhibit)(jwl) (Entered: 09/28/2023) |
| 10/04/2023 | 12351 | NOTICE by PLAINTIFF(S) *Attorney's Lien - Barron "Steve" Wallace* (CUTHBERT, BYRON) (Entered: 10/04/2023) |
| 10/06/2023 | 12352 | Response re 12350 Notice (Other) by Steckler Wayne & Love PLLC. (STECKLER, BRUCE) (Entered: 10/06/2023) |
| 10/10/2023 | 12353 | Response in Support *GPW's Petition inSupport of the Release of, at Minimum, 4% of the Common Benefit Holdback* by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 10/10/2023) |
| 10/11/2023 | 12354 | Response of Locks Law Firm in Support of Release of Ninety Percent (90%) of the Common Benefit Holdback by PLAINTIFF(S). (LOCKS, GENE) (Entered: 10/11/2023) |
| 10/12/2023 | 12355 | RESPONSE in Support re 12333 MOTION Motion to Release the 5% Hold-Back for NFL Players with Qualifying Diagnoses Prior to the Effective Date, and in the alternative, a Motion for an Audit Regarding the 5% Hold-Back *and Concurrence in Goldberg Percy & White Petition in Support* filed by PLAINTIFF(S). (ACHO, JAMES) (Entered: 10/12/2023) |
| 10/13/2023 | 12356 | Response re 12350 Notice (Other) *Class Counsel's Response to the Opinion of Professor Geoffrey Parsons Miller* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 10/13/2023) |
| 10/13/2023 | 12357 | NOTICE by PLAINTIFF(S) re 12350 Notice (Other) *Zimmerman Reed LLP's Response to Geoffrey Parsons Miller's Opinion Concerning Release of the 5% Holdback* (GUDMUNDSON, BRIAN) (Entered: 10/13/2023) |
| 10/24/2023 | 12358 | NOTICE of Withdrawal of Appearance by JASON E. LUCKASEVIC on behalf of PLAINTIFF(S)(LUCKASEVIC, JASON) (Entered: 10/24/2023) |
| 11/13/2023 | 12359 | ORDER ADOPTING REPORT AND RECOMMENDATIONS AS TO REPORT AND RECOMMENDATIONS re 12144 Application/Petition filed by PLAINTIFF(S) ; adopting Report and Recommendations as to 12160 REPORT AND RECOMMENDATIONS. SIGNED BY HONORABLE ANITA B. BRODY ON 11/13/23. 11/13/23 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 11/13/2023) |
| 11/16/2023 | 12360 | NOTICE of Withdrawal of Appearance by ERIC E. REED on behalf of THRIVEST SPECIALTY FUNDING, LLC(REED, ERIC) (Entered: 11/16/2023) |
| 11/20/2023 | 12361 | ORDER of USCA as to 12037 Notice of Appeal. ORDERED and ADJUDGED by thisCourt that this appeal is DISMISSED for lack of jurisdiction. Costs shall be taxed against Appellant. All of the above in accordance with the Opinion of this Court. (Attachments: # 1 Opinion) (mbh) (Entered: 11/20/2023) |
| 11/21/2023 | 12362 | NOTICE by PLAINTIFF(S) *of attorneys lien as to Carlence Mitchell* (Attachments: # 1 Exhibit Petition to establish attorneys lien)(RYALL, JACQUELINE) (Entered: |

| | | |
|---|---|---|
| | | 11/21/2023) |
| 11/27/2023 | 12363 | NOTICE by PLAINTIFF(S) *Notice of Attorney's Lien (Chukwurah)* (KARATINOS, THEODORE) (Entered: 11/27/2023) |
| 11/30/2023 | 12364 | BALANCED BRIDGES UNOPPOSED MOTION FOR LEAVE TO FILE UNDER SEAL, CERTIFICATE OF SERVICE (mbh). (FILED UNDER SEAL) (mbh). (Entered: 12/01/2023) |
| 11/30/2023 | 12365 | BALANCED BRIDGES MOTION FOR DIRECT PAYMENT OF PAYMENT AMOUNT OF A SETTLEMENT CLASS MEMBER, EXHIBIT, MEMORANDUM, CERTIFICATE OF SERVICE. (FILED UNDER SEAL)(mbh) (Additional attachment(s) added on 12/1/2023: # 1 Exhibit 1) (mbh). (Entered: 12/01/2023) |
| 12/01/2023 | 12366 | RESPONSE in Support re 12365 MOTION *SETTLEMENT CLASS MEMBERS JOINDER TO THRIVESTS MOTION FOR DIRECT PAYMENT OF PAYMENT AMOUNT OF A SETTLEMENT CLASS MEMBER* filed by PLAINTIFF(S). (SHENAQ, AMIR) (Entered: 12/01/2023) |
| 12/13/2023 | 12367 | ORDER granting 12364 MOTION TO SEAL; granting 12365 Motion Direct Payment. SIGNED BY HONORABLE ANITA B. BRODY ON 12/13/23.12/13/23 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 12/13/2023) |
| 12/21/2023 | 12368 | ORDER RE: HOLDBACK FUNDS. SIGNED BY HONORABLE ANITA B. BRODY ON 12/21/23. 12/21/23 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 12/21/2023) |
| 01/03/2024 | 12369 | ORDER resolving 10581 Motion ; resolving 10654 Motion ; resolving 11372 Motion ; resolving 11762 Motion ; resolving 11905 MOTION FOR JOINDER; resolving 12031 Motion ; resolving 12333 Motion. SIGNED BY HONORABLE ANITA B. BRODY ON 1/3/24.1/3/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 01/03/2024) |
| 01/03/2024 | 12370 | ORDER resolving 11127 Motion Supplement Petition for Adoption of a Set-Aside from Each Monetary Award and Derivative Claimant Award. SIGNED BY HONORABLE ANITA B. BRODY ON 1/3/24.1/3/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 01/03/2024) |
| 01/05/2024 | 12371 | First MOTION for Relief *TO ENFORCE SETTLEMENT AGREEMENT UNDER ARTICLE XXVII OF THE SETTLEMENT AGREEMENT* filed by PLAINTIFF(S).Motion and Brief in Support. (Attachments: # 1 Brief in Support of Motion)(CUTHBERT, BYRON) (Entered: 01/05/2024) |
| 01/12/2024 | 12372 | ORDER that briefing obligations of the Parties as to 12371 are SUSPENDED until further order of the Court. SIGNED BY HONORABLE ANITA B. BRODY ON 1/12/24. 1/12/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 01/12/2024) |
| 01/19/2024 | 12373 | CLARIFICATION ON 12371 MOTION FOR RELIEF. SIGNED BY HONORABLE ANITA B. BRODY ON 1/19/24. 1/19/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 01/19/2024) |
| 02/06/2024 | 12374 | NOTICE of Withdrawal of Appearance by BRENT W. LANDAU on behalf of PLAINTIFF(S)(LANDAU, BRENT) (Entered: 02/06/2024) |
| 02/12/2024 | 12375 | MOTION to Stay *Arbitration* filed by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION.. (Attachments: # 1 Exhibit A) (Berkowitz, Russell) (Entered: 02/12/2024) |
| 02/27/2024 | 12376 | MOTION to Stay re 12375 MOTION to Stay *Arbitration* filed by BALANCED BRIDGE FUNDING LLC.certificate of service.(BUCKLEY, PETER) (Entered: |

| | | 02/27/2024 |
|---|---|---|
| 02/29/2024 | 12377 | SETTLEMENT IMPLEMENTATION DETERMINATION. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 2/29/24. 2/29/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 02/29/2024) |
| 02/29/2024 | 12378 | REPLY to Response to Motion re 12376 MOTION to Stay re 12375 MOTION to Stay *Arbitration* filed by IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION. (Berkowitz, Russell) (Entered: 02/29/2024) |
| 03/04/2024 | 12379 | First MOTION for Reconsideration re 12377 Order *SETTLEMENT IMPLEMENTATION DETERMINATION* filed by PLAINTIFF(S).Motion For Reconsideration. (Attachments: # 1 Exhibit Page 5&6 of initial Briefing to Special Masters)(CUTHBERT, BYRON) (Entered: 03/04/2024) |
| 03/04/2024 | 12380 | NOTICE that the Court withdraws the appointment of Wendell E. Pritchett as Special Master in the case of MDL 2323 In Re: National Football League Players' Concussion Injury Litigation. (jwl) (Entered: 03/04/2024) |
| 03/11/2024 | 12381 | Letter dated March 11, 2024, for Extension of Time to Respond to the 12379 Motion for Reconsideration by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Conference and Certificate of Service)(KARP, BRAD) (Entered: 03/11/2024) |
| 03/11/2024 | 12382 | ORDER denying 12375 MOTION TO STAY; denying as moot 12376 MOTION TO STAY. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 3/11/24.3/11/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 03/11/2024) |
| 03/12/2024 | 12383 | ORDER that the request for an extension of time 12381 is GRANTED.. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 3/11/24. 3/12/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 03/12/2024) |
| 03/25/2024 | 12384 | REPORT OF THE SPECIAL MASTERS. (mbh) (Entered: 03/26/2024) |
| 03/25/2024 | 12385 | BAP ADMINISTRATOR STATUS REPORT NO. 20. (mbh) (Entered: 03/26/2024) |
| 03/25/2024 | 12386 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 22. (mbh) (Entered: 03/26/2024) |
| 03/28/2024 | 12387 | NOTICE OF BANKRUPTCY FILING. (mbh) (Entered: 03/28/2024) |
| 04/01/2024 | 12388 | NOTICE: THE PARTIES ARE NOTIFIED THAT UNLESS THE COURT IS INFORMED THAT THIS MATTER HAS BEEN RESOLVED, THE SCHEDULING ORDER WILL BE RELEASED ON 4/5/24. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 4/1/24. 4/1/24 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Additional attachment(s) added on 4/1/2024: # 2 Exhibit Under Seal) (mbh). (Entered: 04/01/2024) |
| 04/01/2024 | 12389 | RESPONSE in Opposition re 12379 First MOTION for Reconsideration re 12377 Order *SETTLEMENT IMPLEMENTATION DETERMINATION* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 04/01/2024) |
| 04/03/2024 | 12390 | Motion for Direct Payment of Loan Resolution Amount filed by BALANCED BRIDGE FUNDING LLC. Memorandum, Certificate of Service.(BUCKLEY, PETER) Modified on 4/3/2024 (tjd). (Entered: 04/03/2024) |
| 04/03/2024 | 12391 | ORDER THAT THE CLERK IS TO PLACE ECF 12390 UNDER SEAL. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 4/3/24. 4/3/24 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 04/03/2024) |

**-819-**

| 04/03/2024 | [12392](#) | ORDER (CLARIFICATION) THAT ACCORDINGLY, TO REFLECT THE DESIGNATIONS, THE CLERK OF COURT IS DIRECTED TO AMEND THE FACE PAGE OF THE DOCKET OF 19md2323. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 4/3/24. 4/3/24 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 04/03/2024) |
| 04/04/2024 | [12393](#) | MOTION for Joinder *TO BALANCED BRIDGES MOTION FOR DIRECT PAYMENT OF LOAN RESOLUTION AMOUNT* filed by PLAINTIFF(S)..(SHENAQ, AMIR) (Entered: 04/04/2024) |
| 04/09/2024 | [12394](#) | NOTICE OF BANKRUPTCY FILING. (mbh) (Entered: 04/09/2024) |
| 04/17/2024 | [12395](#) | ORDER denying [12033](#) MOTION FOR RECONSIDERATION RE [12033](#) MOTION for Reconsideration re [12001](#) Order filed by Rhonda Duncan, John H. Baker, III, Nina Hunter, Mindy Stubbs, Donna Martin, Holly Oliver, Ellen Morin, Lenore Stehouwer, Gwendolyn Daniels, Ella McGill, YVONNE SAGAPOLUTELE, Wanda Cayolle-Payne, Lisa Chamberlin, Rona Taylor, Andre Howard, Sexton Holmes, Margrit Dyko, Gary Schuh. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 4/17/24.4/17/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 04/17/2024) |
| 04/29/2024 | [12396](#) | REPORT AND RECOMMENDATION FROM THE SPECIAL MASTER REGARDINGGOLDBERG PERSKY & WHITES ASSERTED ATTORNEYS LIEN. (mbh) (Entered: 04/29/2024) |
| 04/30/2024 | [12397](#) | ORDER denying [12379](#) MOTION FOR RECONSIDERATION RE [12379](#) First MOTION for Reconsideration re [12377](#) Order *SETTLEMENT IMPLEMENTATION DETERMINATION* filed by PLAINTIFF(S). SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 4/30/24.4/30/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 04/30/2024) |
| 04/30/2024 | [12398](#) | ORDER THAT:<br>Class Counsel and the NFL Parties must file a response to theMotion for Relief to Enforce Settlement Agreement Under Article XXVII of the Settlement Agreement or for Relief from Judgment (ECF No. 12371) no later than May 22, 2024; and Movants must file any reply they wish to make by June 12, 2024.<br>SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 4/30/24. 4/30/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 04/30/2024) |
| 04/30/2024 | | Set/Reset Deadlines as to [12371](#) First MOTION for Relief *TO ENFORCE SETTLEMENT AGREEMENT UNDER ARTICLE XXVII OF THE SETTLEMENT AGREEMENT*. RESPONSES DUE BY 5/22/2024. REPLIES DUE BY 6/12/2024. (jwl) (Entered: 04/30/2024) |
| 05/02/2024 | [12399](#) | NOTICE of Voluntary Dismissal by Langfitt Garner PLLC As To Plaintiffs (Attachments: # [1](#) Exhibit Exhibit - List of Plaintiffs)(LANGFITT, DAVID) (Entered: 05/02/2024) |
| 05/02/2024 | [12400](#) | NOTICE of Change of Address by DAVID D. LANGFITT(LANGFITT, DAVID) (Entered: 05/02/2024) |
| 05/03/2024 | [12401](#) | Amended NOTICE OF APPEAL as to [12395](#) Order on Motion for Reconsideration,, by John H. Baker, III, Wanda Cayolle-Payne, Lisa Chamberlin, Gwendolyn Daniels, Rhonda Duncan, Margrit Dyko, Sexton Holmes, Andre Howard, Nina Hunter, Donna Martin, Ella McGill, Ellen Morin, Holly Oliver, YVONNE SAGAPOLUTELE, Gary Schuh, Lenore Stehouwer, Mindy Stubbs, Rona Taylor. Certificate of Service. (CAMPBELL, DAVID) Modified on 5/3/2024 (tjd). (Entered: 05/03/2024) |

| | | |
|---|---|---|
| 05/06/2024 | 12402 | NOTICE OF APPEAL as to 12377 Order and 12397 Order by PLAINTIFF(S). Filing fee $ 605, receipt number APAEDC-17445663. Certificate of Service. (CUTHBERT, BYRON) Modified on 5/6/2024 (tjd). (Entered: 05/06/2024) |
| 05/10/2024 | 12403 | ORDER THAT BRIEFING OBLIGATIONS OF THE PARTIES AS SET FORTH IN ECF NO. 12398 ARE SUSPENDED PENDING RESOLUTION OF THE APPEAL TAKEN AT ECF NO. 12402. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 5/10/24. 5/13/24 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 05/13/2024) |
| 05/13/2024 | 12404 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) (Attachments: # 1 Exhibit) (CUTHBERT, BYRON) (Entered: 05/13/2024) |
| 05/13/2024 | 12405 | ORDER THAT THE MOTION FOR DIRECT PAYMENT OF LOAN RESOLUTION AMOUNT (ECF NO. 12390) AND THE SETTLEMENT CLASS MEMBER'S JOINDER TO BALANCED BRIDGE'S MOTION FOR DIRECT PAYMENT OF LOAN RESOLUTION AMOUNT (ECF NO. 12393) IS DENIED. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 5/10/24. 5/13/24 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 05/13/2024) |
| 05/15/2024 | 12406 | Emergency MOTION for Reconsideration re 12405 Order on Motion for Miscellaneous Relief,, Order on Motion for Joinder, filed by BALANCED BRIDGE FUNDING LLC.Memorandum, Certificate of Service. (Attachments: # 1 Memorandum of Law with Certificate of Service, # 2 Text of Proposed Order) (BUCKLEY, PETER) (Entered: 05/15/2024) |
| 05/16/2024 | 12407 | NOTICE of Docketing Record on Appeal from USCA re 12402 Notice of Appeal (Credit Card Payment) filed by PLAINTIFF(S). USCA Case Number 24-1910 (ke) (Entered: 05/16/2024) |
| 05/24/2024 | 12408 | Response Response in opposition to Special Master Determination re 12396 Report Of by PLAINTIFF(S). (LUCKASEVIC, JASON) (Entered: 05/24/2024) |
| 05/28/2024 | 12409 | ORDER that:<br>1.The Sixth Verified Petition 11891 is GRANTED IN PART;<br>2.The Seventh Verified Petition 12039 is GRANTED;<br>3.The Fund Administrator for the Attorneys Fees Qualified Settlement Fund (AFQSF) must pay Seeger Weiss $1,888,070.69.<br>SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 5/28/24. 5/28/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 05/28/2024) |
| 06/10/2024 | 12410 | Memorandum 12396 *RESPONSE OF J.R. WYATT LAW TO CLAIMANTS OBJECTION TO THE REPORT AND RECOMMENDATION OF THE SPECIAL MASTER (DKT. # 12396) REGARDING GOLDBERG PERSKY & WHITES ASSERTED ATTORNEYS LIEN* filed by Justin Wyatt. (WYATT, JUSTIN) (Entered: 06/10/2024) |
| 06/24/2024 | 12411 | Lien Rules Implementation Opinion Regarding Asserted Attorney Costs dated 6/24/24 by David A. Hoffman, Special Master. (jwl) (Main Document 12411 replaced on 6/26/2024) (mbh). (Entered: 06/24/2024) |
| 06/25/2024 | 12412 | ORDER denying as moot 12406 MOTION FOR RECONSIDERATION RE 12406 Emergency MOTION for Reconsideration re 12405 Order on Motion for Miscellaneous Relief,, Order on Motion for Joinder, filed by BALANCED BRIDGE FUNDING LLC. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 6/24/24.6/25/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 06/25/2024) |
| 07/08/2024 | 12413 | ORDER THAT THE NFL PARTIES MUST SHOW CAUSE ON OR BEFORE JULY 19, 2024 WHY THE FOLLOWING MOTIONS SHOULD NOT BE RESOLVED AS |

| | | MOOT: THE NFL PARTIES MOTION TO DISMISS THE SECOND AMENDED MASTER LONG-FORM COMPLAINT AND APPLICABLE SHORT FORM COMPLAINTS ON PREEMPTION GROUNDS (ECF NO. 8403); AND THE NFL PARTIES MOTION TO DISMISS THE SECOND AMENDED MASTER LONG-FORM COMPLAINT AND APPLICABLE SHORT FORM COMPLAINTS FOR FAILURE TO STATE A CLAIM (ECF NO. 8404). SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 7/8/24. 7/8/24 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (APPLIES TO ALL ACTIONS)(amas) (Entered: 07/08/2024) |
|---|---|---|
| 07/08/2024 | 12414 | ORDER THAT THE REPORT AND RECOMMENDATION AT ECF NO. 11190 IS RESOLVED AS MOOT. SEE ECF NO. 11291 (REMANDING ECF NO. 11190 FOR RECONSIDERATION); ECF NO. 11907 (RESOLVING THE UNDERLYING ATTORNEY LIEN DISPUTE). THE REPORT AND RECOMMENDATION AT ECF NO. 11193 IS RESOLVED AS MOOT. SEE ECF NO. 11290 (REMANDING ECF NO. 11193 FOR RECONSIDERATION); ECF NOS. 11565 & 11824 (RESOLVING THE UNDERLYING ATTORNEY LIEN DISPUTE). THE EMERGENCY MOTION AT ECF NO. 11807 AND THE JOINDER MOTION AT ECF NO. 11809 ARE RESOLVED BY THE ORDER ENTERED AT ECF NO.11838. THE MOTION FOR DIRECT PAYMENT AT ECF NO. 12004 IS RESOLVED AS MOOT.SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 7/8/24.7/8/24 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(APPLIES TO ALL ACTIONS)(amas) (Entered: 07/08/2024) |
| 07/08/2024 | 12415 | ORDER THAT CLASS COUNSEL MUST SHOW CAUSE ON OR BEFORE JULY 19, 2024 WHY THE FOLLOWING MOTIONS SHOULD NOT BE RESOLVED AS MOOT: 1.CLASS COUNSELS MOTION FOR AN ORDER COMPELLING CAMBRIDGE CAPITAL AND RELATED ENTITIES TO TAKE CORRECTIVE MEASURES (ECF NO. 9578); AND 2. CLASS COUNSELS MOTION FOR SANCTIONS AGAINST THE CAMBRIDGE ENTITIES (ECF NO. 9974). SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 7/8/24. 7/8/24 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(APPLIES TO ALL ACTIONS)(amas) (Entered: 07/08/2024) |
| 07/17/2024 | 12416 | RESPONSE TO ORDER TO SHOW CAUSE by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 07/17/2024) |
| 07/17/2024 | 12418 | REPORT OF THE SPECIAL MASTERS (mbh) (Entered: 07/22/2024) |
| 07/17/2024 | 12419 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 23. (mbh) (Entered: 07/22/2024) |
| 07/17/2024 | 12420 | BAP ADMINISTRATOR STATUS REPORT NO. 21. (mbh) (Entered: 07/22/2024) |
| 07/19/2024 | 12417 | RESPONSE TO ORDER TO SHOW CAUSE by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 07/19/2024) |
| 07/23/2024 | 12421 | ORDER resolving as moot 9578 MOTION FOR ORDER; resolving as moot 9974 MOTION FOR ORDER. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 7/23/24.7/23/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 07/23/2024) |
| 08/20/2024 | 12422 | ORDER TO SHOW CAUSE re: Plaintiff Danny Gorrer<br>SHOW CAUSE RESPONSE DUE BY 9/20/2024.<br>SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 8/19/24. 8/20/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 08/20/2024) |
| 08/27/2024 | 12423 | MOTION for Release of Funds filed by PLAINTIFF(S).Motion for Approval of Release of Additional Education Funds Related to the Medical Information Research Database. (Attachments: # 1 Text of Proposed Order Order Approving Release of |

| | | Education Funds Related to the Medical Information Research Database)(SEEGER, CHRISTOPHER) (Entered: 08/27/2024) |
|---|---|---|
| 08/29/2024 | 12424 | NOTICE of Voluntary Dismissal by PLAINTIFF(S) As To Certain Plaintiffs ONLY With Prejudice (Attachments: # 1 Exhibit A)(FLEISHMAN, WENDY) (Entered: 08/29/2024) |
| 09/05/2024 | 12425 | ORDER THAT 12396 REPORT AND RECOMMENDATION IS ADOPTED.. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 9/5/24. 9/5/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 09/05/2024) |
| 09/09/2024 | 12426 | NOTICE OF APPEAL filed by VASHONE ADAMS, Certificate of Service. (Attachments: # 1 Cover Page)(mbh) (Entered: 09/09/2024) |
| 09/11/2024 | 12427 | MOTION REOPENING THE TIME TO FILE AN APPEAL, CERTIFICATE OF SERVICE. (Attachments: # 1 Cover Page) (mbh) (Entered: 09/12/2024) |
| 09/12/2024 | 12428 | NOTICE of Docketing Record on Appeal from USCA re 12426 Notice of Appeal. USCA Case Number 24-2684 (mbh) (Entered: 09/12/2024) |
| 09/16/2024 | 12429 | MOTION TO WITHDRAW NOTICE OF APPEAL, CERTIFICATE OF SERVICE. (Attachments: # 1 Cover Page) (mbh) (Entered: 09/17/2024) |
| 09/18/2024 | 12430 | ORDER granting 12423 MOTION FOR RELEASE OF FUNDS. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 9/18/24.9/18/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 09/18/2024) |
| 09/24/2024 | 12431 | NOTICE of Voluntary Dismissal by Jason E Luckasevic As To Riddell (Attachments: # 1 Exhibit A)(LUCKASEVIC, JASON) (Entered: 09/24/2024) |
| 09/24/2024 | 12432 | ORDER THAT THE APPLICATION OF LORI A. ZIRKLE, ESQUIRE TO PRACTICE IN THIS COURT PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 83.5.2(b) IS GRANTED. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 9/24/24. 9/24/24 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 09/25/2024) |
| 09/27/2024 | 12433 | AMENDED MOTION TO STAY NOTICE OF APPEAL, CERTIFICATE OF SERVICE. (Attachments: # 1 Cover Page) (mbh) (Entered: 09/27/2024) |
| 10/01/2024 | 12434 | NOTICE OF APPEAL as to 12425 Order by Jason E Luckasevic. Filing fee $ 605, receipt number APAEDC-17781777. (LUCKASEVIC, JASON) (Entered: 10/01/2024) |
| 10/07/2024 | 12435 | NOTICE of Docketing Record on Appeal from USCA re 12434 Notice of Appeal (Credit Card Payment) filed by Jason E Luckasevic. USCA Case Number 24-2839 (mbh) (Entered: 10/07/2024) |
| 10/16/2024 | 12436 | NOTICE of Voluntary Dismissal by Jason E Luckasevic (Attachments: # 1 Exhibit A) (LUCKASEVIC, JASON) (Entered: 10/16/2024) |
| 10/17/2024 | 12437 | EXPLANATION AND ORDER - PLAINTIFF DANNY GORRER'S CLASS ACTION COMPLAINT IS DISMISSED. THE NFL PARTIES' MOTIONS TO DISMISS ARE DEEMED RESOLVED. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 10/16/24. 10/17/24 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 10/17/2024) |
| 10/28/2024 | 12438 | Letter dated October 28, 2024 re NYRPC 1.12 by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 10/28/2024) |
| 11/07/2024 | 12439 | ORDER resolving as moot 12427 MOTION TO REINSTATE; resolving as moot 12429 MOTION TO WITHDRAW 12427 MOTION to Reinstate, 12429 MOTION to |

| | | |
|---|---|---|
| | | Withdraw, 12433 MOTION to Stay ; resolving as moot 12433 MOTION TO STAY. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 11/6/24. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)11/7/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 11/07/2024) |
| 11/07/2024 | 12440 | SETTLEMENT IMPLEMENTATION DETERMINATION (jwl) (Entered: 11/07/2024) |
| 11/07/2024 | | 12439 mailed to class member Vashone Adams (jwl) (Entered: 11/07/2024) |
| 11/13/2024 | 12441 | APPLICATION/PETITION *OF CLASS COUNSEL CHRISTOPHER A. SEEGER FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS FEES AND EXPENSES* by PLAINTIFF(S). (SEEGER, CHRISTOPHER) (Entered: 11/13/2024) |
| 11/20/2024 | 12442 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 24. (mbh) (Entered: 11/20/2024) |
| 11/20/2024 | 12443 | REPORT OF THE SPECIAL MASTERS. (mbh) (Main Document 12443 replaced on 11/20/2024) (mbh). (Entered: 11/20/2024) |
| 11/21/2024 | 12444 | USCA Appeal Fees received $ 605 receipt number 20025185 re 12426 Notice of Appeal (sg) (Entered: 11/21/2024) |
| 11/21/2024 | 12445 | BAP ADMINISTRATOR STATUS REPORT NO. 21. (mbh) (Entered: 11/21/2024) |
| 11/21/2024 | 12446 | MOTION FOR RECONSIDERATION, CERTIFICATE OF SERVICE. (Attachments: # 1 Cover Sheet)(mbh) (Entered: 11/22/2024) |
| 11/22/2024 | 12447 | BAP ADMINISTRATOR STATUS REPORT NO. 22. (mbh) (Entered: 11/22/2024) |
| 11/25/2024 | 12448 | Letter dated 11/25/2024, Requesting a 14-day Extension of Time to Respond to the Motion for Reconsideration by NFL PROPERTIES LLC, NATIONAL FOOTBALL LEAGUE, INC.. (KARP, BRAD) (Entered: 11/25/2024) |
| 12/02/2024 | 12449 | ORDER THAT THE REQUEST FOR AN EXTENSION OF TIME TO RESPOND TO MR. ADAMS' MOTION FOR RECONSIDERATION IS GRANTED. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 12/2/24. 12/2/24 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 12/02/2024) |
| 12/09/2024 | 12450 | NOTICE by PLAINTIFF(S) *of Attorney Lien - Jonathan Wells* (Attachments: # 1 Petition to Establish Attorneys Lien)(STONE, EDWARD) (Entered: 12/09/2024) |
| 12/19/2024 | 12451 | RESPONSE in Opposition re 12446 MOTION for Reconsideration filed by NFL PROPERTIES LLC, NATIONAL FOOTBALL LEAGUE, INC.. (KARP, BRAD) (Entered: 12/19/2024) |
| 12/25/2024 | 12452 | REPLY TO NFL'S RESPONSE TO MOTION FOR RECONSIDERAITON by VASHONE ADAMS. (ems) (Additional attachment(s) added on 12/26/2024: # 1 Cover Sheet) (ems). (Entered: 12/26/2024) |
| 01/09/2025 | 12453 | NOTICE by The Dugan Law Firm, APLC *Notice of Lien* (Attachments: # 1 Exhibit Petition for Lien)(DUGAN, JAMES) (Attachment 1 replaced PER CHAMBERS on 1/10/2025) (amas). Modified on 1/10/2025 (amas). (Entered: 01/09/2025) |
| 01/24/2025 | 12454 | NOTICE by PLAINTIFF(S) *Notice to Withdraw Attorney's Lien (McClellion)* (KARATINOS, THEODORE) (Entered: 01/24/2025) |
| 02/12/2025 | 12455 | EXPLANATION AND ORDER - A.H.'S CLAIM IS REMANDED TO THE SPECIAL MASTER FOR FURTHER EXPLANATION, ADDRESSING THE QUESTIONS IDENTIFIED ABOVE. ONCE THE SPECIAL MASTER PROVIDES FURTHER |

-824-

| | | EXPLANATION FOR THE DECISION, THE PARIES MAY APPEAL AGAIN TO THIS COURT IF THEY WISH TO DO SO. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 2/12/25. 2/12/25 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL.(mbh) (Entered: 02/12/2025) |
|---|---|---|
| 02/19/2025 | 12456 | ORDER denying 12446 MOTION FOR RECONSIDERATION. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 2/18/25.2/19/25 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 02/19/2025) |
| 02/21/2025 | 12457 | STIPULATION of Dismissal *Spouses of Dirk Johnson and John Jackson* by Jason E Luckasevic. (LUCKASEVIC, JASON) (Entered: 02/21/2025) |
| 02/21/2025 | 12458 | NOTICE by PLAINTIFF(S) *OF CLASS COUNSEL CHRISTOPHER A. SEEGER FOR SEEGER WEISS LLP'S NOTICE OF SCREENING PURSUANT TO PENNSYLVANIA RULE OF PROFESSIONAL CONDUCT 1.12(C)* (SEEGER, CHRISTOPHER) (Entered: 02/21/2025) |
| 02/26/2025 | 12459 | NOTICE OF APPEAL as to 12456 Order on Motion for Reconsideration, Certificate of Service. NO FEE PAID; NO IFP (Attachments: # 1 Cover Sheet) (mbh) (Entered: 02/27/2025) |
| 02/28/2025 | 12460 | LIEN RULES IMPLEMENTATION OPINION REGARDING GREENLINK SOLUTIONS,LLC by David A. Hoffman, Special Master(jwl) (Entered: 02/28/2025) |
| 03/14/2025 | 12461 | USCA MANDATE AS TO 12037 NOTICE OF APPEAL FILED BY FILED BY RHONDA DUNCAN, JOHN H. BAKER, III, NINA HUNTER, MINDY STUBBS, DONNA MARTIN, HOLLY OLIVER, ELLEN MORIN, LENORE STEHOUWER, GWENDOLYN DANIELS, ELLA MCGILL, YVONNE SAGAPOLUTELE, WANDA CAYOLLE-PAYNE, LISA CHAMBERLIN, RONA TAYLOR, ANDRE HOWARD, SEXTON HOLMES, MARGRIT DYKO, GARY SCHUH, THAT THE ORDER OF THE DISTRICT COURT ENTERED ON FEBRUARY 27, 2023, BE AND IS HEREBY AFFIRMED. COSTS SHALL BE TAXED AGAINST APPELLANTS. ALL OF THE ABOVE IN ACCORDANCE WITH THE OPINION OF THIS COURT. (Attachments: # 1 OPINION)(amas) (Entered: 03/17/2025) |
| 04/17/2025 | 12462 | NOTICE of Change of Address by MICHAEL D. HAUSFELD(HAUSFELD, MICHAEL) (Entered: 04/17/2025) |
| 04/17/2025 | 12463 | NOTICE of Change of Address by RICHARD S. LEWIS(LEWIS, RICHARD) (Entered: 04/17/2025) |
| 05/12/2025 | 12464 | STATUS REPORT OF THE SPECIAL MASTERS: TEN YEAR REPORT (mbh) (Entered: 05/13/2025) |
| 05/12/2025 | 12465 | CLAIMS ADMINISTRATOR STATUS REPORT NO. 25. (mbh) (Entered: 05/13/2025) |
| 05/12/2025 | 12466 | BAP ADMINISTRATOR STATUS REPORT NO. 23. (mbh) (Entered: 05/13/2025) |
| 06/05/2025 | 12467 | MOTION to Compel *BrownGreer to Comply with the Turnover Order* filed by BALANCED BRIDGE FUNDING LLC.Brief, Declaration, Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Declaration, # 3 Brief, # 4 Exhibit Exhibit A Master Agreement, # 5 Exhibit Exhibit B Sept. 1, 2021 Arbitration Award, # 6 Exhibit Exhibit C Petition to Confirm Arbitration Award, # 7 Exhibit Exhibit D Order and Judgment, # 8 Exhibit Exhibit E Praecipe for Writ of Execution, # 9 Exhibit Exhibit F United States Marshal Process Receipt and Return Form, # 10 Exhibit Exhibit G Memorandum of Opinion Denying Motion to Dissolve Writs of Execution, # 11 Exhibit Exhibit H Notice of Motion for Turnover, # 12 Exhibit Exhibit I Certificate of Service for Motion for Turnover, # 13 Exhibit Exhibit J Brief in Support of Motion |

| | | for Turnover, # 14 Exhibit Exhibit K Sept. 16 2024 Letter from Locks Law, # 15 Exhibit Exhibit L March 5 2025 Order, # 16 Exhibit M Mitnick Law March 11 2025 Response to Motion for Turnover, # 17 Exhibit Exhibit N Order Granting Motion for Turnover, # 18 Exhibit Exhibit O Emails Between BrownGreer and Fox Rothschild in April 2025, # 19 Exhibit Exhibit P May 16 2025 Email from BrownGreer to Fox Rothschild, # 20 Exhibit Exhibit Q Mitnick Law February 28 2024 Letter Regarding NFTL, # 21 Exhibit Exhibit R Mitnick Law May 22, 2024 Letter Regarding NFTL, # 22 Exhibit Exhibit S Balanced Bridge May 30, 2024 Letter to Court Regarding NFTL Priority, # 23 Certificate of Service)(PERSKIE, JACOB) (Entered: 06/05/2025) |
|---|---|---|
| 06/05/2025 | 12468 | RESPONSE in Support re 12467 MOTION to Compel *BrownGreer to Comply with the Turnover Order* filed by BALANCED BRIDGE FUNDING LLC. (Attachments: # 1 Brief In Support of Motion to Compel BrownGreer to Comply with Turnover Order, # 2 Certificate of Service)(PERSKIE, JACOB) (Entered: 06/05/2025) |
| 06/09/2025 | 12469 | ORDER that the Objections to the Special Masters Decision are OVERRULED and that the Special Masters consolidated decision dated October 7, 2023 upholding the determinations of the Claims Administrator is AFFIRMED. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 6/9/25. (Attachments: # 1 Special Master Decision (redacted) 6/9/25 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 06/09/2025) |
| 06/16/2025 | 12470 | ORDER THAT CLASS COUNSEL AND THE NFL PARTIES MUST FILE A RESPONSE TO THE MOTION FOR RELIEF TO ENFORCE SETTLEMENT AGREEMENT NO LATER THAN 7/14/25. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 6/16/25. 6/16/25 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 06/16/2025) |
| 06/30/2025 | 12471 | EXPLANATION AND ORDER granting 12467 12468 MOTION TO COMPEL. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 6/30/25.6/30/25 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 06/30/2025) |
| 07/02/2025 | 12472 | MANDATE of USCA. It is hereby ORDERED and ADJUDGED by this Court that the Order of the District Court entered April 30, 2024, is hereby AFFIRMED. Costs will be taxed against Appellants. (Attachments: # 1 Opinion) (mbh) (Entered: 07/02/2025) |
| 07/02/2025 | 12473 | SETTLEMENT IMPLEMENTATION DETERMINATION. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 7/2/25. (Attachments: # 1 Redacted Special Masters' Decision) 7/2/25 ENTERED AND COPIES E-MAILED.(jwl) (Main Document 12473 replaced on 7/2/2025) (mbh). (Entered: 07/02/2025) |
| 07/02/2025 | 12474 | NOTICE of Withdrawal of Appearance by BRUCE BIRENBOIM on behalf of NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC(BIRENBOIM, BRUCE) (Entered: 07/02/2025) |
| 07/03/2025 | 12475 | ORDR THAT CLASS COUNSEL AND NFL PARTIES MUST FILE A RESPONSE TO THE MOTION FOR RELIEF TO ENFORCE SETTLEMENT AGREEMENT BY 8/4/25. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 7/2/25. 7/3/25 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 07/03/2025) |
| 07/03/2025 | 12476 | MOTION to Substitute Party *JOINT MOTION BY CLASS COUNSEL AND COUNSEL FOR THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC TO REPLACE THE LIEN RESOLUTION ADMINISTRATOR* filed by CLASS COUNSEL.. (SEEGER, CHRISTOPHER) (Entered: 07/03/2025) |
| 07/03/2025 | 12477 | Joint MOTION to Appoint Expert *APPEALS ADVISORY PANEL MEMBERS AND APPEALS ADVISORY PANEL CONSULTANTS* filed by CLASS COUNSEL.. (Attachments: # 1 Exhibit 1- Dr. Finney CV, # 2 Exhibit 2- Dr. Shenker CV, # 3 Exhibit |

| | | |
|---|---|---|
| | | 3- Dr. Lisk CV, # 4 Exhibit 4- Dr. Tremont CV, # 5 Exhibit 5- Dr. Bender CV) (SEEGER, CHRISTOPHER) (Entered: 07/03/2025) |
| 07/03/2025 | 12478 | ORDER that<br>-The Order of July 13, 2016 6871 appointing Jo-Ann M. Verrier as Special Master under the terms of the Settlement Agreement is extended for a third five-year term The Order of March 15, 2020 11022 appointing David Hoffman as Special Master under the terms of the Settlement Agreement is extended for a second five-year term. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 7/3/25. 7/3/25 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 07/03/2025) |
| 07/07/2025 | 12479 | NOTICE OF APPEAL as to 12469 Order, by Robin Cornish, Carleen Hastings. Filing fee $ 605, receipt number APAEDC-18414303. (CAMPBELL, DAVID) (Entered: 07/07/2025) |
| 07/10/2025 | 12480 | NOTICE of Docketing Record on Appeal from USCA re 12479 Notice of Appeal (Credit Card Payment) filed by Carleen Hastings, Robin Cornish. USCA Case Number 25-2271 (amas) (Entered: 07/10/2025) |
| 07/15/2025 | 12481 | EXPLANATION AND ORDER. THE VERIFIED PETITION IS GRANTED AND THE FUND ADMNINISTRATOR FOR THE ATTORNEYS' FEE QUALIFIED SETTLEMENT FUND (AFQSF) MUST PAY SEEGER WEISS $1,385,859.97. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 7/15/25. 7/15/25 ENTERED AND COPIES E-MAILED TO LIAISON COUNSEL. (mbh) (Entered: 07/15/2025) |
| 07/18/2025 | 12482 | ORDER approving 12477 MOTION TO APPOINT EXPERT. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 7/17/25.7/18/25 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 07/18/2025) |
| 07/18/2025 | 12483 | ORDER granting 12476 MOTION TO SUBSTITUTE PARTY.. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 7/17/25.7/18/25 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 07/18/2025) |
| 08/04/2025 | 12484 | RESPONSE in Opposition re 12371 First MOTION for Relief *TO ENFORCE SETTLEMENT AGREEMENT UNDER ARTICLE XXVII OF THE SETTLEMENT AGREEMENT* filed by NATIONAL FOOTBALL LEAGUE, INC., NFL PROPERTIES LLC. (KARP, BRAD) (Entered: 08/04/2025) |
| 08/04/2025 | 12485 | RESPONSE in Opposition re 12371 First MOTION for Relief *TO ENFORCE SETTLEMENT AGREEMENT UNDER ARTICLE XXVII OF THE SETTLEMENT AGREEMENT* filed by CLASS COUNSEL. (SEEGER, CHRISTOPHER) (Entered: 08/04/2025) |
| 08/19/2025 | 12486 | MOTION FOR LEAVE TO FILE UNDER SEAL FILED BY PLAINTIFFS. EXHIBITS, CERTIFICATE OF SERVICE. **(FILED UNDER SEAL)**(tjd) (tjd). (Entered: 08/19/2025) |
| 08/19/2025 | 12487 | ORDER FILED UNDER SEAL. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 8/18/2025. 8/19/2025 ENTERED AND COPIES E-MAILED BY CHAMBERS. **(FILED UDNER SEAL)**(tjd) (tjd). (Main Document 12487 replaced on 8/19/2025) (tjd). (Entered: 08/19/2025) |
| 08/19/2025 | 12488 | MOTION FILED UNDER SEAL FILED BY PLAINTIFFS. EXHIBITS. **(FILED UNDER SEAL)**(tjd) (tjd). (Entered: 08/19/2025) |

| Transaction Receipt | | | |
|---|---|---|---|
| 08/19/2025 16:05:24 | | | |
| **PACER Login:** | campbell4179 | **Client Code:** | NFL |
| **Description:** | Docket Report | **Search Criteria:** | 2:12-md-02323-AB Start date: 1/31/2012 End date: 8/19/2025 |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

**-828-**

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,* Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MOTION OF PROPOSED CLASS COUNSEL FOR AN ORDER:
(1) GRANTING PRELIMINARY APPROVAL OF THE CLASS ACTION
SETTLEMENT AGREEMENT;
(2) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS AND SUBCLASSES;
(3) APPOINTING CO-LEAD CLASS COUNSEL, CLASS COUNSEL AND
SUBCLASS COUNSEL;
(4) APPROVING THE DISSEMINATION OF CLASS NOTICE;
(5) SCHEDULING A FAIRNESS HEARING; AND
(6) STAYING MATTERS AS TO THE RELEASED PARTIES AND
ENJOINING PROPOSED SETTLEMENT
<u>CLASS MEMBERS FROM PURSUING RELATED LAWSUITS</u>**

Plaintiffs' Proposed Class Counsel move, pursuant to Federal Rules of Civil Procedure

23(a), 23(b)(3), and 23(e), for the entry of the Proposed Preliminary Approval and Class

Certification Order, attached as Exhibit A. The proposed order seeks: (1) preliminary approval

1

of the Class Action Settlement Agreement;  (2) conditional certification of a Settlement Class and Subclasses; (3) appointment of Co-Lead Class Counsel, Class Counsel and Subclass Counsel; (4) approval of the dissemination of Class Notice; (5) scheduling of a Fairness Hearing; and (6) the stay of matters as to the Released Parties and enjoinment of proposed Settlement Class Members from pursuing Related Lawsuits.

1.      The terms of the Settlement are set forth in the Settlement Agreement, dated June 25, 2014, attached as Exhibit B.

2.      The relief sought in this Motion is supported by:

a.      Declaration of Katherine Kinsella, attached as Exhibit C (which includes as exhibits thereto, the proposed Long-Form Notice to Retired NFL Football Players and their Representative Claimants and Derivative Claimants, and the Summary Notice);

b.      Declaration of Mediator and Former United States District Court Judge Layn R. Phillips in Support of Preliminary Approval of Settlement, attached as Exhibit D.

c.      Memorandum of Law In Support of Motion of Proposed Class Counsel for an Order:  (1) Granting Preliminary Approval of the Class Action Settlement Agreement; (2) Conditionally Certifying a Settlement Class and Subclasses; (3) Appointing Co-Lead Class Counsel, Class Counsel, and Subclass Counsel; (4) Approving the Dissemination of Class Notice; (5) Scheduling a Fairness Hearing; and (6) Staying Matters as to the Released Parties and Enjoining Proposed Settlement Class Members from Pursuing Related Lawsuits, filed contemporaneously herewith.

WHEREFORE, Proposed Class Counsel request that the Court enter the proposed

Preliminary Approval and Class Certification Order.

Dated:  June 25, 2014                                    Respectfully Submitted:


   */s/ Christopher A. Seeger*
Christopher A. Seeger
**SEEGER WEISS LLP**
77 Water Street
New York, NY 10005
Phone:  (212) 584-0700
Fax:  (212) 584-0799
cseeger@seegerweiss.com

*Co-Lead Class Counsel*

Sol Weiss
**ANAPOL SCHWARTZ**
1710 Spruce Street
Philadelphia, PA 19103
Phone:  (215) 735-1130
Fax:  (215) 735-2024
sweiss@anapolschwartz.com

*Co-Lead Class Counsel*

*Class Counsel*

Steven C. Marks                                  Gene Locks
**PODHURST ORSECK P.A.**                         **LOCKS LAW FIRM**
City National Bank Building                      The Curtis Center
25 W. Flagler Street, Suite 800                  Suite 720 East
Miami, FL 33130-1780                             601 Walnut Street
Phone: (305) 358-2800                            Philadelphia, PA 19106
Fax: (305) 358-2382                              Phone: 866-562-5752
smarks@podhurst.com                              Fax: (215) 893-3444
                                                 glocks@lockslaw.com

3

### *Subclass Counsel*

Arnold Levin
**LEVIN FISHBEIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com

Dianne M. Nast
**NAST LAW LLC**
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107
Phone:  (215) 923-9300
Fax:  (215) 923-9302
DNast@nastlaw.com

*Counsel for Subclass 1*

*Counsel for Subclass 2*

### *Of Counsel*

Thomas V. Girardi
Graham B. LippSmith
**GIRARDI KEESE**
1126 Wilshire Blvd
Los Angeles, CA 90017
Phone: (213) 977-0211
Fax: (213) 481-1554
tgirardi@girardikeese.com
glippsmith@girardikeese.com

Michael D. Hausfeld
Richard S. Lewis
**HAUSFELD LLP**
1700 K Street, N.W., Suite 650
Washington, D.C. 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
mhausfeld@hausfeldllp.com
rlewis@hausfeldllp.com

James R. Dugan, II
**THE DUGAN LAW FIRM**
One Canal Place, Suite 1000
365 Canal Street
New Orleans, LA 70130
Phone: (504) 648-0180
Fax: (504) 648-0181
jdugan@dugan-lawfirm.com

Anthony Tarricone
**KREINDLER & KREINDLER LLP**
277 Dartmouth Street
Boston, MA 02116
Phone: (617) 424-9100
Fax: (617) 424-9120
atarricone@kreindler.com

Michael L. McGlamry
**POPE, MCGLAMRY, KILPATRICK
MORRISON & NORWOOD, P.C.**
3455 Peachtree Road, NE
The Pinnacle, Suite 925
P.O. Box 191625 (31119-1625)
Atlanta, GA 30326-3243
Phone: (404) 523-7706
Fax: (404) 524-1648
efile@pmkm.com

David A. Rosen
**ROSE, KLEIN & MARIAS LLP**
801 South Grand Avenue, 11th Floor
Los Angeles, CA 90017-4645
Phone: (213) 626-0571
Fax: (213) 623-7755
d.rosen@rkmlaw.net

4

Charles S. Zimmerman
**ZIMMERMAN REED PLLP**
1100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone: (612) 341-0400
Fax: (612) 341-0844
charles.zimmerman@zimmreed.com

David S. Casey, Jr.
Fred Schenk
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT & PENFIELD**
**LLP**
110 Laurel Street
San Diego, CA  92101-1486
Phone: (619) 238-1811
Fax: (619) 544-9232
dcasey@cglaw.com
fschenk@cglaw.com

Derriel McCorvey
**THE LAW FIRM OF DERRIEL C.**
**MCCORVEY**
115 W. Main Street, Suite 14
P.O. Box 2473
Lafayette, LA 70501
Phone: (337) 291-2431
derriel@mccorveylaw.com

Case 2:12-md-02323-AB   Document 6073-1   Filed 06/25/14   Page 1 of 35

# Exhibit A

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB |
|  | MDL No. 2323 |
|  | **Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,* Plaintiffs, | Civ. Action No. 14-00029-AB |
| v. |  |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., Defendants. |  |
| THIS DOCUMENT RELATES TO: ALL ACTIONS |  |

**[PROPOSED] ORDER
(1) GRANTING PRELIMINARY APPROVAL OF
THE PROPOSED CLASS ACTION SETTLEMENT AGREEMENT;
(2) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS AND
SUBCLASSES;
(3) APPOINTING CO-LEAD CLASS COUNSEL, CLASS COUNSEL AND
SUBCLASS COUNSEL;
(4) APPROVING THE DISSEMINATION OF CLASS NOTICE;
(5) SCHEDULING A FAIRNESS HEARING; AND
(6) STAYING MATTERS AS TO THE RELEASED PARTIES AND
ENJOINING PROPOSED SETTLEMENT CLASS MEMBERS
FROM PURSUING RELATED LAWSUITS**

**AND NOW**, this ___ day of _____, 2014, upon consideration of the Motion of Proposed Class Counsel for an Order: (1) Granting Preliminary Approval of the Proposed Class Action Settlement Agreement; (2) Conditionally Certifying a Settlement Class and Subclasses; (3) Appointing Co-Lead Class Counsel, Class Counsel and Subclass Counsel; (4) Approving the Dissemination of Class Notice; (5) Scheduling a Fairness Hearing; and (6) Staying Matters as to the Released Parties and Enjoining Proposed Settlement Class Members from Pursuing Related Lawsuits (the "Motion for Preliminary Approval and Conditional Class Certification"), pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e), it is hereby **ORDERED** that:

1.    Capitalized terms used in this Order (the "Preliminary Approval and Conditional Class Certification Order") have the same meaning as those defined in the Class Action Settlement Agreement, as of June 25, 2014 ("Settlement Agreement"), between the National Football League and NFL Properties LLC (collectively, the "NFL Parties") and Class and Subclass Representative Plaintiffs, attached as Exhibit B to the Motion for Preliminary Approval and Class Certification (the "Settlement").

2.    The Settlement Agreement, including all exhibits attached thereto, is preliminarily approved by the Court as being fair, reasonable and adequate.  The Court preliminarily finds that the Settlement Agreement was negotiated and entered into at arm's length, in good faith, free of collusion, and without detriment to the proposed Settlement Class and Subclasses.  The Settlement is also found to be within the range possible for judicial approval at a prospective Fairness Hearing.

3.    The Court finds that the requirements of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(3) have been satisfied for purposes of preliminary approval of the Settlement.

1

4.    The following nationwide Settlement Class is conditionally certified, for settlement purposes only, and shall consist of:

a.    All living NFL Football Players who, prior to the date of the Preliminary Approval and Class Certification Order, retired, formally or informally, from playing professional football with the NFL or any Member Club, including American Football League, World League of American Football, NFL Europe League and NFL Europa League players, or were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and who no longer are under contract to a Member Club and are not seeking active employment as players with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club ("Retired NFL Football Players");

b.    Authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased or legally incapacitated or incompetent Retired NFL Football Players ("Representative Claimants"); and

c.    Spouses, parents, children who are dependents, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player or deceased Retired NFL Football Player ("Derivative Claimants").

2

5.    The following Settlement Subclasses are conditionally certified for settlement purposes only:

  a. <u>Subclass 1</u>, which shall consist of: Retired NFL Football Players who were not diagnosed with a Qualifying Diagnosis[1] prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants; and,

  b. <u>Subclass 2</u>, which shall consist of: Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants, and the Representative Claimants of deceased Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to death or who died prior to the date of the Preliminary Approval and Class Certification Order and who received a post-mortem diagnosis of Chronic Traumatic Encephalopathy.

6.    The following Subclass representatives are preliminarily appointed for each of the Settlement Subclasses:

  a. Subclass 1: Shawn Wooden; and

  b. Subclass 2: Kevin Turner.

7.    Christopher A. Seeger, Sol Weiss, Arnold Levin, Dianne M. Nast, Steven C. Marks, and Gene Locks are appointed as Class Counsel.

---

[1] A "Qualifying Diagnosis" is defined in Settlement Agreement as Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, ALS and/or Death with CTE, as set forth in Exhibit 1 (Injury Definitions) to the Settlement Agreement.

8.      Christopher A. Seeger and Sol Weiss are appointed as Co-Lead Class Counsel.

9.      Arnold Levin is appointed as Subclass Counsel for Subclass 1 and Dianne M. Nast is appointed as Subclass Counsel for Subclass 2.

10.     Plaintiffs' Executive Committee and Plaintiffs' Steering Committee are appointed as Of Counsel.

11.     The Garretson Resolution Group, Inc. is preliminarily appointed to serve as the Baseline Assessment Program ("BAP") Administrator and Lien Resolution Administrator.

12.     BrownGreer PLC ("BrownGreer") is preliminarily appointed to serve as the Claims Administrator.

13.     Citibank, N.A. is preliminarily appointed as the Trustee.

14.     Kinsella Media, LLC is appointed to serve as the Settlement Class Notice Agent.

15.     The Long-Form Notice to Settlement Class Members and the Summary Notice, attached hereto as Exhibits 1 and 2, respectively, are approved and meet the requirements of Fed. R. Civ. P. 23(e) and Fed. R. Civ. P. 23(c)(2)(B) and of due process.

16.     The protocol for dissemination of notice to Settlement Class and Subclass Members, as set forth in the Settlement Class Notice Plan (attached to the Declaration of Katherine Kinsella), is approved.

17.     By _____, **2014**, Co-Lead Class Counsel shall cause the Long-Form Notice to be sent via first-class mail, postage prepaid to:  (i) all known Retired NFL Football Players, their Representative Claimants and Derivative Claimants and (ii) counsel for Retired NFL Football Players, their Representative Claimants and Derivative Claimants, if known. Where an attorney represents more than one Settlement Class Member, it shall be sufficient to provide that attorney with a single copy of the notice.  Notice to a Settlement Class Member's

4

counsel of record shall constitute notice to the Settlement Class Member, even if the Settlement Class Member does not receive independent notice.

18.    On or before _____, **2014**, Co-Lead Class Counsel shall cause Publication Notice to be initiated by consumer publications in various Media as follows:

       a.    Print Publications – Time, Ebony, People, and Sports Illustrated;

       b.    Broadcast Television – National Network and Cable Television (which may include ABC, CBS, CNN, Headline News and The Weather Channel) and the NFL Network;

       c.    Broadcast Radio (which may include American Urban Radio Networks);

       d.    Online Media – Internet Banner Ads (NFL.com, CNN.com, Facebook.com, Weather.com, Senior Living Executive, Microsoft Media Network, Specific Media and Yahoo!) and Keyword Search (Google, including Google, AOL, and Ask.com and Bing, including Bing/MSN and Yahoo!).

19.    The NFL Parties shall transfer the Class Notice Payment to Co-Lead Class Counsel, as set forth in Section 14.1(b) of the Settlement Agreement.

20.    The Settlement Class Notice shall be posted on the Court's website by _____, **2014**, so as to commence the notice period, as well as the Opt Out/Objection period.

21.    The Opt Out procedure set forth in Section 14.2 of the Settlement Agreement is approved. Any Settlement Class Member wishing to Opt Out of the Settlement Class must notify BrownGreer (as the preliminarily approved Claims Administrator), in writing, of his or her intention to Opt Out of the Settlement Class, postmarked no later than _____, **2014**, which is the last day of the Opt Out/Objection period. To be effective, the Opt Out notice

5

must set forth the Settlement Class Member's printed name, address, telephone number, and date of birth and enclose a copy of his or her driver's license or other government issued identification, along with a sentence stating: "I wish to exclude myself from the Settlement Class in *In re: National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323" (or substantially similar clear and unambiguous language). The Opt Out notice must contain the dated Personal Signature of the individual Settlement Class Member. Attorneys for Settlement Class Members may submit a written request to Opt Out on behalf of a Settlement Class Member, but such request must contain the Personal Signature of the Settlement Class Member.

22.    The procedure for objecting to the Settlement, as set forth in Section 14.3 of the Settlement Agreement, is approved. All objections shall be postmarked no later than **_____, 2014**, or they will be deemed waived. All objections must contain the Personal Signature of the individual Settlement Class Member.

23.    No later than fifteen (15) days prior to the Fairness Hearing, *i.e.*, by **_____, 2014**, BrownGreer (as the preliminarily appointed Claims Administrator) shall prepare and file with the Court, and serve on Counsel for the NFL Parties, and Class Counsel, a list of all persons who have timely Opted Out of the Settlement Class or objected to the Settlement.

24.    Class Counsel and Counsel for the NFL Parties shall file any response to the objections, or any papers in support of final approval of the Settlement, no less than five (5) days prior to the date set for the Fairness Hearing, *i.e.*, by **_____, 2014**.

25.    Any Settlement Class Member (or counsel individually representing him or her, if any) seeking to make an appearance at the Fairness Hearing must file with the Court no later

than **_____, 2014**, a written notice of his or her intention to appear at the Fairness Hearing.

26.    A formal Fairness Hearing shall take place on the **_____ day of _____, 2014 at _____ o'clock in the a.m./p.m**., in order to consider comments on and objections to the proposed Settlement and to consider whether: (a) to approve thereafter the Settlement as fair, reasonable and adequate, pursuant to Rule 23 of the Federal Rules of Civil Procedure, (b) to finally certify the Settlement Class and Subclasses, and (c) to enter the Final Order and Judgment, as provided in Article XX of the Settlement Agreement.  However, the Fairness Hearing shall be subject to adjournment by the Court without further notice, other than that which may be posted by the Court, on the Court's website.

27.    This matter and all Related Lawsuits are stayed as to the Released Parties.  There is no stay of any actions against Riddell.  All proposed Settlement Class Members, as of the commencement of the notice period and the Opt Out/Objection period as set forth in Paragraph 20, are enjoined from filing, commencing, prosecuting, intervening in, participating in, continuing to prosecute and/or maintaining, as plaintiffs, claimants, or class members, any other lawsuit, including, without limitation, a Related Lawsuit, or administrative, regulatory, arbitration, or other proceeding in any jurisdiction (whether state, federal or otherwise), against Released Parties based on, relating to, or arising out of the claims and causes of action, or the facts and circumstances at issue, in the Class Action Complaint, Related Lawsuits and/or the Released Claims, unless and until they have been excluded from the Settlement Class by action of the Court or until the Court denies approval of the Class Action Settlement, or until the Settlement Agreement is otherwise terminated, except that claims for workers' compensation and claims alleging entitlement to NFL CBA Medical and Disability Benefits will not be stayed or

enjoined. The stay of Related Lawsuits pursuant to this Order in courts other than this Court shall be effective as of the commencement of the notice period and the Opt Out/Objection period as set forth in Paragraph 20 and shall continue unless and until the proposed Settlement Class Member participating in any such Related Lawsuits has been excluded from the Settlement Class by action of the Court or until the Court denies approval of the Class Action Settlement, or until the Settlement Agreement is otherwise terminated.

28.    The NFL Parties have the right to communicate orally and in writing with, and to respond to inquiries from, Settlement Class Members on matters unrelated to the Class Action Settlement in connection with the NFL Parties' normal business.

29.    If the Settlement Agreement is terminated or is not consummated for any reason, the preliminary certification of the Settlement Class and Subclasses shall be void, and the Plaintiffs and NFL Parties shall be deemed to have reserved all of their rights to propose or oppose any and all class certification issues.

SO ORDERED this _____ day of _____, 2014.

_____
Anita B. Brody
United States District Court Judge

8

# Exhibit A-1

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

# NFL Concussion Settlement

### All Valid Claims of Retired NFL Football Players to be Paid in Full for 65 Years

### Monetary Awards, Baseline Medical Exams and Other Benefits Provided

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- The National Football League ("NFL") and NFL Properties LLC (collectively, "NFL Parties") have agreed to a Settlement of a class action lawsuit seeking medical monitoring and compensation for brain injuries allegedly caused by head impacts experienced in NFL football. The NFL Parties deny that they did anything wrong.

- The Settlement Class includes all retired players of the NFL, the American Football League ("AFL") that merged with the NFL, the World League of American Football, NFL Europe League, and NFL Europa League, as well as immediate family members of retired players and legal representatives of incapacitated, incompetent or deceased retired players.

- The Settlement will provide eligible retired players with:

  - Baseline neuropsychological and neurological exams to determine if retired players are: a) currently suffering from any neurocognitive impairment, including impairment serious enough for compensation, and b) eligible for additional testing and/or treatment ($75 million);

  - Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Parkinson's Disease, Alzheimer's Disease, early and moderate Dementia and certain cases of chronic traumatic encephalopathy (CTE) (a neuropathological finding) diagnosed after death. The maximum monetary awards range from $1.5 million to $5 million depending on the diagnosis. There is no cap on the amount of funds available to pay these Monetary Awards and all valid claims will be paid in full for 65 years; and

  - Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million).

- Individuals who represent incapacitated, incompetent or deceased retired players, or family members who meet certain criteria may also file claims for monetary awards (*see* Question 6).

- To get money, proof that injuries were caused by playing NFL football is not required.

- **Settlement Class Members will need to register to get benefits. Settlement Class Members may sign up at the website for additional information about the Settlement and updates on the registration process.**

- Your legal rights are affected even if you do nothing. Please read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| STAY IN THE SETTLEMENT CLASS | You do not need to do anything to be included in the Settlement Class. However, once the Court approves the Settlement, you will be bound by the terms and releases contained in the Settlement. There will be later notice to explain when and how to register for Settlement benefits (*see* Question 26). |
| ASK TO BE EXCLUDED | You will get no benefits. This is the only option that allows you to participate in any other lawsuit against the NFL Parties about the claims in this case (*see* Question 30). |

QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

Exhibit 5                                                                                          Page 1

| **OBJECT** | Write to the Court if you do not like the Settlement (*see* Question 35). |
| --- | --- |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.

- **This Notice is only a summary of the Settlement Agreement and your rights.  You are encouraged to carefully review the complete Settlement Agreement at www.NFLConcussionSettlement.com.**

| What This Notice Contains |
| --- |

## CHAPTER 1: INTRODUCTION

**BASIC INFORMATION**......................................................................................**Page 5**
1.   Why is this Notice being provided?
2.   What is the litigation about?
3.   What is a class action?
4.   Why is there a Settlement?
5.   What are the benefits of the Settlement?

**WHO IS PART OF THE SETTLEMENT?** ...................................................................**Page 7**
6.   Who is included in the Settlement Class?
7.   What players are not included in the Settlement Class?
8.   What if I am not sure whether I am included in the Settlement Class?
9.   What are the different levels of neurocognitive impairment?
10.  Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

## CHAPTER 2: SETTLEMENT BENEFITS

**THE BASELINE ASSESSMENT PROGRAM**..............................................................**Page 9**
11.  What is the Baseline Assessment Program ("BAP")?
12.  Why should a retired player get a BAP baseline examination?
13.  How does a retired player schedule a baseline assessment examination and where will it be done?

**MONETARY AWARDS**.....................................................................................**Page 10**
14.  What diagnoses qualify for monetary awards?
15.  Do I need to prove that playing professional football caused the retired player's Qualifying Diagnosis?
16.  How much money will I receive?
17.  How does the age of the retired player at the time of first diagnosis affect a monetary award?
18.  How does the number of seasons a retired player played affect a monetary award?
19.  How do prior strokes or brain injuries of a retired player affect a monetary award?
20.  How is a retired player's monetary award affected if he does not participate in the BAP program?
21.  Can I receive a monetary award even though the retired player is dead?
22.  Will this Settlement affect a retired player's participation in NFL or NFLPA related benefits programs?
23.  Will this Settlement prevent retired players from bringing workers' compensation claims?

**EDUCATION FUND**........................................................................................**Page 14**
24.  What types of education programs are supported by the Settlement?

## CHAPTER 3: YOUR RIGHTS

**REMAINING IN THE SETTLEMENT**.....................................................................**Page 15**
25.  What am I giving up to stay in the Settlement Class?

QUESTIONS?  CALL **1-800-000-0000** OR VISIT **WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                    Page 3

**HOW TO GET BENEFITS**………………………………………………………………...**Page 15**
26.    How do I get Settlement benefits?
27.    Is there a time limit for Retired NFL Football Players and Representative Claimants to file claims
       for monetary awards?
28.    Can I re-apply for compensation if my claim is denied?
29.    Can I appeal the determination of my monetary award claim?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**………………………………………**Page 16**
30.    How do I get out of the Settlement?
31.    If I do not exclude myself, can I sue the NFL Parties for the same thing later?
32.    If I exclude myself, can I still get benefits from this Settlement?

**THE LAWYERS REPRESENTING YOU**………………………………………………………**Page 17**
33.    Do I have a lawyer in the case?
34.    How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**………………………………………………………...**Page 18**
35.    How do I tell the Court if I do not like the Settlement?
36.    What is the difference between objecting to the Settlement and excluding myself?

**THE COURT'S FAIRNESS HEARING**………………………………………………………...**Page 19**
37.    When and where will the Court hold a Fairness Hearing concerning the Settlement?
38.    Do I have to attend the hearing?
39.    May I speak at the hearing?

**GETTING MORE INFORMATION**………………………………………………………………**Page 19**
40.    How do I get more information?

# CHAPTER 1:  INTRODUCTION

## BASIC INFORMATION

### 1.  Why is this Notice being provided?

The Court in charge of this case authorized this Notice because you have a right to know about the proposed Settlement of this lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement.  This Notice summarizes the Settlement and explains your legal rights and options.

Judge Anita B. Brody of the United States District Court for the Eastern District of Pennsylvania is overseeing this case.  The case is known as *In re: National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323.  The people who sued are called the "Plaintiffs."  The National Football League and NFL Properties LLC are called the "NFL Defendants."

The Settlement may affect your rights if you are:  (a) a retired player of the NFL, AFL, World League of American Football, NFL Europe League, or NFL Europa League, (b) an authorized representative of a deceased or legally incapacitated or incompetent retired player of those leagues, or (c) an individual with a close legal relationship with a retired player of those leagues, such as a spouse, parent or child.

### 2.  What is the litigation about?

The Plaintiffs claim that retired players experienced head trauma during their NFL football playing careers that resulted in brain injuries, which have caused or may cause them long-term neurological problems.  The Plaintiffs accuse the NFL Parties of being aware of the evidence and the risks associated with repetitive traumatic brain injuries but failing to warn and protect the players against the long-term risks, and ignoring and concealing this information from the players.  The NFL Parties deny the claims in the litigation.

### 3.  What is a class action?

In a class action, one or more people, the named plaintiffs (who are also called proposed "class representatives") sue on behalf of themselves and other people with similar claims.  All of these people together are the proposed "class" or "class members."  When a class action is settled, one court resolves the issues for all class members (in the settlement context, "settlement class members"), except for those who exclude themselves from the settlement.  In this case, the proposed class representatives are Kevin Turner and Shawn Wooden.  Excluding yourself means that you will not receive any benefits from the Settlement.  The process for excluding yourself is described in Question 30 of this Notice.

### 4.  Why is there a Settlement?

After extensive settlement negotiations mediated by retired United States District Court Judge Layn Phillips, and further settlement negotiations under the supervision of the Court-appointed Special Master, Perry Golkin, the Plaintiffs and the NFL Parties agreed to the Settlement.

QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

Exhibit 5                                                                                                    Page 5

A settlement is an agreement between a plaintiff and a defendant to resolve a lawsuit. Settlements conclude litigation without the court or a jury ruling in favor of the plaintiff or the defendant. A settlement allows the parties to avoid the cost and risk of a trial, as well as the delays of litigation.

If the Court approves this Settlement, the claims of all persons affected (*see* Question 6) and the litigation between these persons and the NFL Parties are over. The persons affected by the Settlement are eligible for the benefits summarized in this Notice and the NFL Parties will no longer be legally responsible to defend against the claims made in this litigation.

The Court has not and will not decide in favor of the retired players or the other persons affected by the Settlement or the NFL Parties, and by reviewing this Settlement the Court is not making and will not make any findings that any law was broken or that the NFL Parties did anything wrong.

The proposed Class Representatives and their lawyers ("Co-Lead Class Counsel," "Class Counsel," and "Subclass Counsel," *see* Question 33) believe that the proposed Settlement is best for everyone who is affected. The factors that Co-Lead Class Counsel, Class Counsel, and Subclass Counsel considered included the uncertainty and delay associated with continued litigation, a trial and appeals, and the uncertainty of particular legal issues that are yet to be determined by the Court. Co-Lead Class Counsel, Class Counsel and Subclass Counsel balanced these and other substantial risks in determining that the Settlement is fair, reasonable and adequate in light of all circumstances and in the best interests of the Settlement Class Members.

The Settlement Agreement is available at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling 1-800-000-0000.

| **5. What are the benefits of the Settlement?** |
| --- |

Under the Settlement, the NFL Parties will pay to fund:

- Baseline neuropsychological and neurological examinations for eligible retired players, and additional medical testing, counseling and/or treatment if they are diagnosed with moderate cognitive impairment during the baseline examinations (up to $75 million, "Baseline Assessment Program") (*see* Questions 11-13);

- Monetary awards for diagnoses of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) and Death with CTE prior to [Date of Preliminary Approval Order] (*see* Questions 14-21); **All valid claims under the Settlement, without limitation, will be paid in full throughout the 65-year life of the Settlement (the "Monetary Award Fund")**; and

- Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million) (*see* Question 24).

In addition, the NFL Parties will pay the cost of notifying the Settlement Class. Administrative costs and expenses will be paid out of the Monetary Award Fund. The Baseline Assessment Program costs and expenses will be paid out of the Baseline Assessment Program Fund.

The details of the Settlement benefits are in the Settlement Agreement, which is available at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling 1-800-000-0000.

**Note:** The Baseline Assessment Program and Monetary Award Fund are completely independent of the NFL Parties and any benefit programs that have been created between the NFL and the NFL Players Association. The NFL Parties are not involved in determining the validity of claims.

## WHO IS PART OF THE SETTLEMENT?

You need to decide whether you are included in the Settlement.

| **6. Who is included in the Settlement Class?** |
| --- |

This Settlement Class includes three types of people:

<u>Retired NFL Football Players:</u>  Prior to [Date of Preliminary Approval Order], all living NFL Football players who (1) have retired, formally or informally, from playing professional football with the NFL or any Member Club, including AFL, World League of American Football, NFL Europe League, and NFL Europa League players, or (2) were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and no longer are under contract to a Member Club and are not seeking active employment as a player with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club.

<u>Representative Claimants</u>:  An authorized representative, ordered by a court or other official of competent jurisdiction under applicable state law, of a deceased or legally incapacitated or incompetent Retired NFL Football Player.

<u>Derivative Claimants</u>:  A spouse, parent, dependent child, or any other person who properly under applicable state law asserts the right to sue independently or derivatively by reason of his or her relationship with a living or deceased Retired NFL Football Player.  (For example, a spouse asserting the right to sue due to the injury of a husband who is a Retired NFL Football Player.)

The Settlement recognizes two separate groups ("Subclasses") of Settlement Class Members based on the Retired NFL Football Player's injury status as of [Date of Preliminary Approval Order]:

- <u>Subclass 1</u> includes: Retired NFL Football Players who were <u>not</u> diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE prior to [Date of Preliminary Approval Order], and their Representative Claimants and Derivative Claimants.

- <u>Subclass 2</u> includes:

  - o Retired NFL Football Players who <u>were</u> diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to [Date of Preliminary Approval Order], and their Representative Claimants and Derivative Claimants; and

   o   Representative Claimants of deceased Retired NFL Football Players who were diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to death or who died prior to [Date of Preliminary Approval Order] and received a diagnosis of Death with CTE.

### 7.  What players are not included in the Settlement Class?

The Settlement Class does not include:  (a) current NFL players, and (b) people who tried out for NFL or AFL Member Clubs, or World League of American Football, NFL Europe League or NFL Europa League teams, but did not make it onto preseason, regular season or postseason rosters, or practice squads, developmental squads or taxi squads.

### 8.  What if I am not sure whether I am included in the Settlement Class?

If you are not sure whether you are included in the Settlement Class, you may call **1-800-000-0000** with questions or visit www.NFLConcussionSettlement.com.  You may also write with questions to NFL Concussion Settlement, P.O. Box 0000, City, ST 00000.  You may also consult with your own attorney.

### 9.  What are the different levels of neurocognitive impairment?

In addition to ALS, Parkinson's Disease, and Alzheimer's Disease, various levels of neurocognitive impairment are covered by this Settlement.  More details can be found in the Injury Definitions, which are available at www.NFLConcussionSettlement.com or by calling **1-800-000-0000**.

The level of Neurocognitive Impairment will be established in part with evidence of decline in performance in at least two areas subject to clinical evaluative testing (complex attention, executive function, learning and memory, language, or perceptual-spatial), provided one of the areas is executive function, learning and memory, or complex attention, and related functional impairment as follows:

| LEVEL OF NEUROCOGNITIVE IMPAIRMENT | TYPE OF IMPAIRMENT | DEGREE OF DECLINE |
|---|---|---|
| Level 1 | Moderate cognitive impairment | Moderate cognitive decline |
| Level 1.5 | Early Dementia | Moderate to severe cognitive decline |
| Level 2 | Moderate Dementia | Severe cognitive decline |

If neurocognitive impairment is temporary and only occurs with delirium, or as a result of substance abuse or medicinal side effects, it is not covered by the Settlement.

### 10.  Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

No.  A retired player can be a Settlement Class Member regardless of whether he is vested due to credited seasons or total and permanent disability under the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

# CHAPTER 2:  SETTLEMENT BENEFITS

## THE BASELINE ASSESSMENT PROGRAM

**11.  What is the Baseline Assessment Program ("BAP")?**

All living retired players who have earned at least one-half of an Eligible Season (*see* Question 18), who do not exclude themselves from the Settlement (*see* Question 30), and who timely register to participate in the Settlement (*see* Question 26) may participate in the Baseline Assessment Program ("BAP").

The BAP will provide baseline neuropsychological and neurological assessment examinations to determine whether retired players are currently suffering from cognitive impairment.  Retired players will have from two to ten years, depending on their age as of the date the Settlement is finally approved and any appeals are fully resolved ("Final Settlement Approval"), to have a baseline examination conducted through a nationwide network of qualified and independent medical providers.

- Retired players 43 or older as of the date the Settlement goes into effect will need to have a baseline examination within two years of the start of the BAP.

- Retired players under the age of 43 as of the date the Settlement goes into effect will need to have a baseline examination within 10 years of the start of the BAP, or before they turn 45, whichever comes sooner.

Retired players who are diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment) are eligible to receive further medical testing and/or treatment (including counseling and pharmaceuticals) for that condition during the ten-year term of the BAP or within five years from diagnosis, whichever is later.

Retired players who participate in the BAP will be encouraged to provide their confidential medical records for use in research into cognitive impairment and safety and injury prevention with respect to football players.

Although all retired players are encouraged to take advantage of the BAP and receive a baseline examination, they do not need to participate in the BAP to receive a monetary award, but any award to the retired player may be reduced by 10% if  the retired player does not participate in the BAP, as explained in more detail in Question 20.

**12.  Why should a retired player get a BAP baseline examination?**

Getting a BAP baseline examination will be beneficial.  It will determine whether the retired player has any cognitive impairment.  If he is diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment), he will be eligible to receive further medical testing and/or treatment for that condition.  In addition, regardless of any cognitive impairment today, the results of the BAP baseline examination can be used as a comparison to measure any subsequent deterioration of  cognitive condition over the course of his life.  Participants also will be examined by at least two experts during the BAP baseline examinations, a neuropsychologist and a neurologist, and the retired player and/or his family members will have the opportunity to ask questions relating to any cognitive impairment during those examinations.

**QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                    Page 9

Participation in the BAP does not prevent the retired player from filing a claim for a monetary award. For the next 65 years, retired players will be eligible for compensation paid from the Monetary Award Fund if the player develops a Qualifying Diagnosis (*see* Question 14). Participation in the BAP also will help ensure that, to the extent the retired player receives a Qualifying Diagnosis in the future, he will receive the maximum monetary award to which he is entitled (*see* Question 20).

| **13. How does a retired player schedule a baseline assessment examination and where will it be done?** |
| --- |

Retired players need to register for Settlement benefits before they can get a baseline assessment examination. Registration for benefits will not be available until after Final Settlement Approval. **However, a retired player may provide his name and contact information now at www.NFLConcussionSettlement.com or by calling 1-800-000-0000. This ensures that the retired player will receive additional notice about the registration process and deadlines when it becomes available.**

The BAP Administrator will send notice to those retired players determined during registration to be eligible for the BAP, explaining how to arrange for an initial baseline assessment examination. The BAP will use a nationwide network of qualified and independent medical providers who will provide both the initial baseline assessment as well as any further testing and/or treatment. The BAP Administrator, which will be appointed by the Court, will establish the network of medical providers.

## MONETARY AWARDS

| **14. What diagnoses qualify for monetary awards?** |
| --- |

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia), or Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund.

If a retired player receives a monetary award based on a Qualifying Diagnosis, and later is diagnosed with a different Qualifying Diagnosis that entitles him to a larger monetary award than his previous award, he will be eligible for an increase in compensation. This would also apply to Derivative Claimants.

Qualifying Diagnoses must be made by approved qualified specialists. If and when Final Settlement Approval is obtained, the Claims Administrator will create and maintain a list of specialists who may make an authorized Qualifying Diagnoses if no such diagnosis has already been made by a qualified specialist before the Settlement is effective.

| **15. Do I need to prove that playing professional football caused the retired player's Qualifying Diagnosis?** |
| --- |

No. You do not need to prove that a retired player's Qualifying Diagnosis was caused by playing professional football or that he experienced head injuries in the NFL, AFL, World League of American Football, NFL Europe League, or NFL Europa League in order to receive a monetary award. The fact that a retired player receives a Qualifying Diagnosis is sufficient to be eligible for a monetary award.

QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

Exhibit 5                                                                 Page 10

You also do not need to exclude the possibility that the Qualifying Diagnosis was caused or contributed to by amateur football or other professional football league injuries or by various risk factors linked to the Qualifying Diagnosis.

**16.  How much money will I receive?**

The amount of money you will receive depends on the retired player's:
- Specific Qualifying Diagnosis,
- Age at the time of diagnosis (*see* Question 17),
- Number of seasons played or practiced in the NFL or the AFL (*see* Question 18),
- Diagnosis of a prior stroke or traumatic brain injury (*see* Question 19), and
- Participation in a baseline assessment exam (*see* Question 20).

The amount of money you will receive also depends on whether:
- There are any legally enforceable liens on the award,
- Any retainer agreement with an attorney, and
- The Court makes any further assessments (*see* Question 34).

Certain costs and expenses related to resolving any liens for Settlement Class Members will be paid out of such Settlement Class Members' Monetary Awards or Derivative Claimant Awards.

The table below lists the maximum amount of money available for each Qualifying Diagnosis before any adjustments are made.

| QUALIFYING DIAGNOSIS | MAXIMUM AWARD AVAILABLE |
|---|---|
| Amyotrophic lateral sclerosis (ALS) | $5 million |
| Death with CTE (diagnosed after death) | $4 million |
| Parkinson's Disease | $3.5 million |
| Alzheimer's Disease | $3.5 million |
| Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) | $3 million |
| Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) | $1.5 million |

Monetary awards may be increased up to 2.5% per year during the 65-year Monetary Award Fund term for inflation.

To receive the maximum amount outlined in the table, a retired player must have played for at least five Eligible Seasons (*see* Question 18) and have been diagnosed when younger than 45 years old.

Derivative Claimants are eligible to be compensated from the monetary award of the retired player with whom they have a close relationship in an amount of 1% of that award.  If there are multiple Derivative Claimants for the same retired player, the 1% award will be divided among the Derivative Claimants according to the law where the retired player (or his Representative Claimant, if any) resides.

**17.  How does the age of the retired player at the time of first diagnosis affect a monetary award?**

Awards are reduced for retired players who were 45 or older when diagnosed.  The younger a retired player is at the time of diagnosis, the greater the award he will receive.  Setting aside the other downward adjustments to monetary awards, the table below provides:

- The average award for people diagnosed between the ages of 45-79; and
- The amount of the award for those under age 45 and over 79.

The actual amount will be determined based on each retired player's actual age at the time of diagnosis and on other potential adjustments.

| AGE AT DIAGNOSIS | ALS | DEATH w/CTE | PARKINSON'S | ALZHEIMER'S | LEVEL 2 | LEVEL 1.5 |
|---|---|---|---|---|---|---|
| Under 45 | $5,000,000 | $4,000,000 | $3,500,000 | $3,500,000 | $3,000,000 | $1,500,000 |
| 45 - 49 | $4,500,000 | $3,200,000 | $2,470,000 | $2,300,000 | $1,900,000 | $950,000 |
| 50 - 54 | $4,000,000 | $2,300,000 | $1,900,000 | $1,600,000 | $1,200,000 | $600,000 |
| 55 - 59 | $3,500,000 | $1,400,000 | $1,300,000 | $1,150,000 | $950,000 | $475,000 |
| 60 - 64 | $3,000,000 | $1,200,000 | $1,000,000 | $950,000 | $580,000 | $290,000 |
| 65 - 69 | $2,500,000 | $980,000 | $760,000 | $620,000 | $380,000 | $190,000 |
| 70 - 74 | $1,750,000 | $600,000 | $475,000 | $380,000 | $210,000 | $105,000 |
| 75 - 79 | $1,000,000 | $160,000 | $145,000 | $130,000 | $80,000 | $40,000 |
| 80+ | $300,000 | $50,000 | $50,000 | $50,000 | $50,000 | $25,000 |

**Note:** The age of the retired player at diagnosis (not the age when applying for a monetary award) is used to determine the monetary amount awarded.

**18.  How does the number of seasons a retired player played affect a monetary award?**

Awards are reduced for retired players who played less than five "Eligible Seasons."  The Settlement uses the term "Eligible Season" to count the seasons in which a retired player played or practiced in the NFL or AFL.  A retired player earns an Eligible Season for:

- Each season where he was on an NFL or AFL Member Club's "Active List" for either three or more regular season or postseason games, or

- Where he was on an Active List for one or more regular or postseason games and then spent two regular or postseason games on an injured reserve list or inactive list due to a concussion or head injury.

- A retired player also earns one-half of an Eligible Season for each season where he was on an NFL or AFL Member Club's practice, developmental, or taxi squad for at least eight games, but did not otherwise earn an Eligible Season.

QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

Exhibit 5                                                                 Page 12

The "Active List" means the list of all players physically present, eligible and under contract to play for an NFL or AFL Member Club on a particular game day within any applicable roster or squad limits in the applicable NFL or AFL Constitution and Bylaws.

Time spent playing or practicing in the World League of American Football, NFL Europe League, and NFL Europa League does <u>not</u> count towards an Eligible Season.

The table below lists the reductions to a retired player's (or his Representative Claimant's) monetary award if the retired player has less than five Eligible Seasons. To determine the total number of Eligible Seasons credited to a retired player, add together all of the earned Eligible Seasons and half Eligible Seasons. For example, if a retired player earned two Eligible Seasons and three half Eligible Seasons, he will be credited with 3.5 Eligible Seasons.

| NUMBER OF ELIGIBLE SEASONS | PERCENTAGE OF REDUCTION |
|---|---|
| 4.5 | 10% |
| 4 | 20% |
| 3.5 | 30% |
| 3 | 40% |
| 2.5 | 50% |
| 2 | 60% |
| 1.5 | 70% |
| 1 | 80% |
| .5 | 90% |
| 0 | 97.5% |

**19. How do prior strokes or traumatic brain injuries of a retired player affect a monetary award?**

It depends. A retired player's monetary award (or his Representative Claimant monetary award) will be reduced by 75% if he experienced: (1) a medically diagnosed stroke that occurred before or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis; or (2) a severe traumatic brain injury unrelated to NFL football that occurred during or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis.

The award will not be reduced if the retired player (or his Representative Claimant) can show by clear and convincing evidence that the stroke or traumatic brain injury is not related to the Qualifying Diagnosis.

**20. How is a retired player's monetary award affected if he does not participate in the BAP program?**

It depends on when the retired player receives his Qualifying Diagnosis and the nature of the diagnosis. There is a 10% reduction to the monetary award if the retired player does not participate in the BAP and:

- Did not receive a Qualifying Diagnosis prior to [Date of Preliminary Approval Order], and

- Receives a Qualifying Diagnosis (other than ALS) after his deadline to receive a BAP baseline assessment examination.

**21.  Can I receive a monetary award even though the retired player is dead?**

Yes.  Representative Claimants for deceased retired players with a Qualifying Diagnoses will be eligible to receive monetary awards.  If the deceased retired player died before January 1, 2006, however, the Representative Claimant will only receive a monetary award if the Court determines that a wrongful death or survival claim is allowed under applicable state law.

Derivative Claimants also will be eligible for a total award of 1% of the monetary award that the Representative Claimant for the deceased retired player receives (*see* Question 16).

Representative and Derivative Claimants will also need to register for Settlement benefits (*see* Question 26).

**22.  Will this Settlement affect a retired player's participation in NFL or NFLPA-related benefits programs?**

No.  The Settlement benefits are completely independent of any benefits programs that have been created by or between the NFL and the NFL Players Association.  This includes the 88 Plan (Article 58 of the 2011 Collective Bargaining Agreement) and the Neuro-Cognitive Disability Benefit (Article 65 of the 2011 Collective Bargaining Agreement).

**Note:**  The Settlement ensures that a retired player who has signed, or will sign, a release as part of his Neuro-Cognitive Disability Benefit application, will not be denied Settlement benefits.

**23.  Will this Settlement prevent retired players from bringing workers' compensation claims?**

No.  Claims for workers' compensation will not be released by this Settlement.

## EDUCATION FUND

**24.  What type of education programs are supported by the Settlement?**

The Settlement will provide $10 million in funding to support education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives.

Retired players will be able to actively participate in such initiatives if they desire.

# CHAPTER 3:  YOUR RIGHTS

## REMAINING IN THE SETTLEMENT

> **25.  What am I giving up to stay in the Settlement Class?**

Unless you exclude yourself from the Settlement, you cannot sue the NFL Parties, the Member Clubs, or related individuals and entities, or be part of any other lawsuit against the NFL Parties about the issues in this case.  This means you give up your right to continue to litigate any claims related to this Settlement, or file new claims, in any court or in any proceeding at any time.  **However, the Settlement does not release any claims for workers' compensation (*see* Question 23) or claims alleging entitlement to NFL medical and disability benefits available under the Collective Bargaining Agreement**.

Please note that certain Plaintiffs also sued the football helmet manufacturer Riddell and certain related entities (specifically, Riddell, Inc., Riddell Sports Group Inc., All American Sports Corporation, Easton-Bell Sports, Inc., EB Sports Corp., Easton-Bell Sports, LLC, and RBG Holdings Corp.). **They are not parties to this Settlement and claims against them are not released by this Settlement**.

Article XVIII of the Settlement Agreement contains the complete text and details of what Settlement Class Members give up unless they exclude themselves from the Settlement, so please read it carefully.  The Settlement Agreement is available at www.NFLConcussionSettlement.com.  The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania  (*see* Question 35 for the address).  You can also get this information by calling 1-800-000-0000.  If you have any questions you can talk to the law firms listed in Question 33 for free or you can talk to your own lawyer if you have questions about what this means.

## HOW TO GET BENEFITS

> **26.  How do I get Settlement benefits?**

To get benefits, you will need to register.  This is true for all Settlement Class Members, including Representative and Derivative Claimants.  Registration for benefits will not begin until after Final Settlement Approval (*see* Question 37).  If and when that occurs, further notice will be provided about the registration process and deadlines.  **However, you may provide your name and contact information now at www.NFLConcussionSettlement.com or by calling 1-800-000-0000.  This ensures that you will receive additional notice about the registration process and deadlines when that becomes available.**  To receive any Settlement benefits, you must register on or before 180 days from the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com.  Information about the registration deadline will also be available by calling **1-800-000-0000.**

> **27.  Is there a time limit for Retired NFL Football Players and Representative Claimants to file claims for monetary awards?**

Yes.  Retired NFL Football Players and Representative Claimants for retired players who are diagnosed by the date of Final Settlement Approval must submit claims for monetary awards within two years of the date that     further     notice     about     the     registration     process     and     deadlines     is     posted     on

**QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                                                Page 15

www.NFLConcussionSettlement.com. Retired NFL Football Players and Representative Claimants for retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of diagnosis to file claims. This deadline may be extended to within four years of the Qualifying Diagnosis or the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com, whichever is later, if the Retired NFL Football Player or Representative Claimant can show substantial hardship beyond the Qualifying Diagnosis. Derivative Claimants must submit claims no later than 30 days after the Retired NFL Football Player through whom the close relationship is the basis for the claim (or the Representative Claimant of that retired player) receives a notice that he is entitled to a monetary award. All claims must be submitted by the end of the 65-year term of the Monetary Award Fund.

| **28. Can I re-apply for compensation if my claim is denied?** |
| --- |

Yes. A Settlement Class Member who submits a claim for a monetary award that is denied can re-apply in the future should the Retired NFL Football Player's medical condition change.

| **29. Can I appeal the determination of my monetary award claim?** |
| --- |

Yes. The Settlement establishes a process for a Settlement Class Member to appeal the denial of a monetary award claim or the amount of the monetary award.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to receive benefits from this Settlement, and you want to retain the right to sue the NFL Parties about the legal issues in this case, then you must take steps to remove yourself from the Settlement. You may do this by asking to be excluded – sometimes referred to as "opting out" of – the Settlement Class.

| **30. How do I get out of the Settlement?** |
| --- |

To exclude yourself from the Settlement, you must mail a letter or other written document to the Claims Administrator. Your request must include:

- Your name, address, telephone number, and date of birth;

- A copy of your driver's license or other government issued identification;

- A statement that "I wish to exclude myself from the Settlement Class in *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323" (or substantially similar clear and unambiguous language); and

- Your signature by hand (not any form of electronic signature), and the date on which you signed it (even if represented by an attorney).

You must mail your exclusion request, postmarked no later than **Month 00, 0000** [Date ordered by the Court], to:

NFL Concussion Settlement
P.O. Box 0000,
City, ST 00000

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                    Page 16

-860-

**31.  If I do not exclude myself, can I sue the NFL Parties for the same thing later?**

No.  Unless you exclude yourself, you give up the right to sue the NFL Parties for all of the claims that this Settlement resolves.  If you want to maintain your own lawsuit relating to the claims released by the Settlement, then you must exclude yourself by **Month 00, 0000.**

**32.  If I exclude myself, can I still get benefits from this Settlement?**

No.  **If you exclude yourself from the settlement you will not get any Settlement benefits**.  You will not be eligible to receive a monetary award or participate in the Baseline Assessment Program.

## THE LAWYERS REPRESENTING YOU

**33.  Do I have a lawyer in the case?**

The Court has appointed a number of lawyers to represent all Settlement Class Members as "Co-Lead Class Counsel," "Class Counsel" and "Subclass Counsel" (*see* Question 6).  They are listed at the end of this Notice with their contact information.

You will not be charged for contacting these lawyers.  If you are represented by an attorney, you may contact your attorney to discuss the proposed Settlement.  You do not have to hire your own attorney.  However, if you want to be represented by your own lawyer, you may hire one at your own expense.

**34.  How will the lawyers be paid?**

At a later date to be determined by the Court, Co-Lead Class Counsel, Class Counsel and Subclass Counsel will ask the Court for an award of attorneys' fees and reasonable costs.  The NFL Parties have agreed not to oppose or object to the request for attorneys' fees and reasonable incurred costs if the request does not exceed $112.5 million.  These fees and incurred costs will be paid separately by the NFL Parties and not from the Baseline Assessment Program Fund, Education Fund, or Monetary Award Fund.  Settlement Class Members will have an opportunity to comment on and/or object to this request at an appropriate time.  Ultimately, the award of attorneys' fees and reasonable costs to be paid by the NFL Parties is subject to the approval of the Court.

After Final Settlement Approval, Co-Lead Class Counsel may ask the Court to set aside up to five percent of each Monetary Award and Derivative Claimant Award to facilitate the Settlement program and related efforts of Co-Lead Class Counsel, Class Counsel and Subclass Counsel.  If approved, this money would be held in a separate fund overseen by the Court.  Any future request for a set-aside will describe:  (1) the proposed amount; (2) how the money will be used; and (3) any other relevant information.  This "set-aside" would come out of the claimant's attorney's fee if represented by individual counsel or, if not represented, out of the Monetary Award or Derivative Claimant Award itself.  No money will be held back or set aside from any award without a Court order.  The set-aside is a matter between Class Counsel and individual counsel for Settlement Class Members.  The NFL Parties do not take a position on the proposal.

## OBJECTING TO THE SETTLEMENT

You may tell the Court that you do not agree with the Settlement or some part of it.

| **35.  How do I tell the Court if I do not like the Settlement?** |
| --- |

If you do not exclude yourself from the Settlement Class, you may object to the Settlement if you do not like some part of it.  The Court will consider your views.  To object to the Settlement, you or your attorney must submit your written objection to the Court.  The objection must include the following:

- The name of the case and multi-district litigation, *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323;

- Your name, address, telephone number, and date of birth;

- The name of the Retired NFL Football Player through which you are a Representative Claimant or Derivative Claimant (if you are not a retired player);

- Written evidence establishing that you are a Settlement Class Member;

- A detailed statement of your objections, and the specific reasons for each such objection, including any facts or law you wish to bring to the Court's attention;

- Any other supporting papers, materials or briefs that you want the Court to consider in support of your objection; and

- Your signature by hand (not any form of electronic signature), and the date on which you signed it (even if represented by an attorney).

The requirements to object to the Settlement are described in detail in the Settlement Agreement in section 14.3.

You must file your objection with the Court no later than **Month 00, 0000 [date ordered by the Court]**:

| **COURT** |
| --- |
| Clerk of the District Court/NFL Concussion Settlement
United States District Court for the Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse,
601 Market Street,
Philadelphia, PA 19106-1797 |

| **36.  What is the difference between objecting to the Settlement and excluding myself?** |
| --- |

Objecting is simply telling the Court that you do not like something about the Settlement or want it to say something different.  You can object only if you do not exclude yourself from the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and you do

not want to receive any Settlement benefits. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you do not have to. The Court will determine if you are allowed to speak if you request to do so (*see* Question 39).

| 37. When and where will the Court hold a Fairness Hearing concerning the Settlement? |
|---|

The Court will hold the Fairness Hearing at XX:00 x.m. on **Month 00, 0000**, at the United States District Court for the Eastern District of Pennsylvania, located at the James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106-1797. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.NFLConcussionSettlement.com or call **1-800-000-0000**. At this hearing, the Court will hear evidence about whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them and may elect to listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

The Court will consider the request for attorneys' fees and reasonable costs by Co-Lead Class Counsel, Class Counsel and Subclass Counsel (*see* Question 34) after the Fairness Hearing, which will be set at a later date by the Court.

| 38. Do I have to attend the hearing? |
|---|

No. Co-Lead Class Counsel, Class Counsel and Subclass Counsel will answer questions the Court may have. But you are welcome to attend at your own expense. If you timely file an objection, you do not have to come to Court to talk about it. As long as you filed your written objection on time, the Court will consider it. You may also have your own lawyer attend at your expense, but it is not necessary.

| 39. May I speak at the hearing? |
|---|

You may ask the Court for permission to speak at the Fairness Hearing. The Court will determine whether to grant you permission to speak. To make such a request, you must file a written notice stating that it is your wish to speak at the *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323 Fairness Hearing. Be sure to include your name, address, telephone number, and your signature. Your request to speak must be filed with the Court no later than **Month 00, 0000** at the address in Question 35.

## GETTING MORE INFORMATION

| 40. How do I get more information? |
|---|

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5 Page 19

35 for the address). You also may write with questions to NFL Concussion Settlement, P.O. Box 0000, City, ST 00000 or call **1-800-000-0000**.

**PLEASE DO NOT WRITE OR TELEPHONE THE COURT OR THE NFL PARTIES FOR INFORMATION ABOUT THE SETTLEMENT OR THIS LAWSUIT.**

| IMPORTANT DATES AND CONTACT INFORMATION | |
|---|---|
| **Exclusion "Opt Out" Deadline** | Month 00, 2014 |
| **Objection Deadline** | Month 00, 2014 |
| **Deadline to Request to Speak at the Fairness Hearing** | Month 00, 2014 |
| **Fairness Hearing** | Month 00, 2014 |
| **Start of Registration Period** | The start of the registration process and related deadlines will be announced on www.NFLConcussionSettlement.com following Final Settlement Approval |
| **Registration Deadline** | 180 days after registration begins |
| **Submit a Claim** | • Retired NFL Football Players and Representative Claimants for retired players who are diagnosed by the date of Final Settlement Approval must submit claims for monetary awards within two years of the announcement of the registration process.<br>• Retired NFL Football Players and Representative Claimants for retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of diagnosis to file claims. |
| **Settlement Administrator** | NFL Concussion Settlement<br>P.O. Box 0000<br>City, ST 00000<br>Tel: 1-800-000-0000 |
| **Court** | Clerk of the District Court/NFL Concussion Settlement<br>United States District Court for the Eastern District of Pennsylvania<br>James A. Byrne U.S. Courthouse,<br>601 Market Street,<br>Philadelphia, PA 19106-1797 |

| **Class Counsel** | Christopher A. Seeger<br>Co-Lead Class Counsel<br>SEEGER WEISS LLP<br>77 Water Street<br>New York, NY 10005 | Sol Weiss<br>Co-Lead Class Counsel<br>ANAPOL SCHWARTZ<br>1710 Spruce Street<br>Philadelphia, PA 19103 |
|---|---|---|
| | Steven C. Marks<br>Class Counsel<br>PODHURST ORSECK P.A.<br>City National Bank Building<br>25 W. Flagler Street, Suite 800<br>Miami, FL 33130-1780 | Gene Locks<br>Class Counsel<br>LOCKS LAW FIRM<br>The Curtis Center, Suite 720 East<br>601 Walnut Street<br>Philadelphia, PA 19106 |
| | Arnold Levin<br>Counsel - Subclass 1<br>LEVIN FISHBEIN SEDRAN &<br>BERMAN<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106 | Dianne M. Nast, Counsel –<br>Counsel - Subclass 2<br>NAST LAW LLC<br>1101 Market Street, Suite 2801<br>Philadelphia, Pennsylvania 19107 |

**QUESTIONS? CALL 1-800-000-0000 OR VISIT www.NFLConcussionSettlement.com**

Exhibit 5                                                                                                    Page 21

**Reminder:** Provide your name and contact information now at www.NFLConcussionSettlement.com or by calling 1-800-000-0000.   This ensures that you will receive additional notice about the registration process and deadlines when it becomes available.

# Exhibit A-2

# NFL Concussion Settlement

### All Valid Claims of Retired NFL Football Players to be Paid in Full for 65 Years
### Monetary Awards, Baseline Medical Exams and Other Benefits Provided



The NFL and NFL Properties have agreed to a class action Settlement with retired players who sued, accusing them of failing to warn of and hiding the dangers of brain injury associated with playing football. The Settlement does not establish any wrongdoing on the part of the NFL or NFL Properties.

**Who is included in the Settlement?**

The Settlement Class generally includes all retired players of the NFL, AFL, World League of American Football, NFL Europe League and NFL Europa League. The Settlement Class includes immediate family members of retired players and legal representatives of incapacitated, incompetent or deceased players.

**What does the Settlement provide?**

The Settlement provides money for three benefits:

- Baseline medical exams to determine if retired players suffer from neurocognitive impairment and are entitled to additional testing and/or treatment ($75 million),
- Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Alzheimer's Disease, Parkinson's Disease, Dementia and certain cases of chronic traumatic encephalopathy or CTE (a neuropathological finding) diagnosed after death. The maximum monetary awards range from $1.5 million to $5 million depending on the diagnosis. All valid claims will be paid in full for 65 years; and
- Education programs and initiatives related to football safety ($10 million).

## How can I get benefits?

You will need to register for benefits after the final approval of the Settlement. You may provide your contact information now at the website or phone number below to ensure that you receive additional notice about the registration process.

Retired players do <u>not</u> have to prove that their injuries were caused by playing NFL football to get money from the Settlement.

## What are my rights?

You do not need to do anything to be included in the Settlement Class. All Settlement Class members will be bound by the Settlement and give up the right to sue the NFL individually. If you want to keep your right to sue the NFL, you must exclude yourself from the Class by **Month 00, 2014**. If you exclude yourself, you will not receive any benefits under the Settlement. If you stay in the Class, you may object to the Settlement by **Month 00, 2014**.

The Court will hold a hearing on **Month 00, 2014** to consider whether to approve the Settlement. You do not have to attend. However, you and/or your own lawyer may attend and request to speak at the hearing at your own expense. At a later date, the attorneys will ask the Court for an award of attorneys' fees and reasonable costs. The NFL and NFL Properties have agreed not to oppose or object to the request if the request does not exceed $112.5 million. The money would be paid by the NFL and NFL Properties in addition to the payments described above.

### Please Share this Notice with Other Retired Players and Their Families
### For More Information on the Settlement and Registering for Benefits:
### 1-800-000-0000  or  www.NFLConcussionSettlement.com

# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE: | : | No. 2:12-md-02323-AB |
| PLAYERS' CONCUSSION | : | |
| INJURY LITIGATION | : | MDL No. 2323 |
| | : | |

|  |  |  |
|---|---|---|
| Kevin Turner and Shawn Wooden, | : | |
| *on behalf of themselves and* | : | |
| *others similarly situated,* | : | |
| Plaintiffs, | : | CIVIL ACTION NO: 14-cv-0029 |
| | : | |
| v. | : | |
| | : | |
| National Football League and | : | |
| NFL Properties, LLC, | : | |
| successor-in-interest to | : | |
| NFL Properties, Inc., | : | |
| Defendants. | : | |

|  |  |
|---|---|
| THIS DOCUMENT RELATES TO: | : |
| ALL ACTIONS | : |

**CLASS ACTION SETTLEMENT AGREEMENT AS OF JUNE 25, 2014**

## TABLE OF CONTENTS

**Page**

ARTICLE I          Definitions of Settlement Class and Subclasses ................................... 4

ARTICLE II         Definitions ......................................................................................... 4

ARTICLE III        Settlement Benefits for Class Members ............................................ 16

ARTICLE IV         Information and Registration Process................................................. 17

ARTICLE V          Baseline Assessment Program .......................................................... 20

ARTICLE VI         Monetary Awards for Qualifying Diagnoses....................................... 31

ARTICLE VII        Derivative Claimant Awards .............................................................. 38

ARTICLE VIII       Submission and Review of Claim Packages and Derivative
                   Claim Packages.................................................................................. 38

ARTICLE IX         Notice of Claim Determinations, Payments, and Appeals ................. 42

ARTICLE X          Class Action Settlement Administration ............................................ 49

ARTICLE XI         Identification and Satisfaction of Liens.............................................. 58

ARTICLE XII        Education Fund.................................................................................. 63

ARTICLE XIII       Preliminary Approval and Class Certification.................................... 63

ARTICLE XIV        Notice, Opt Out, and Objections........................................................ 65

ARTICLE XV         Communications to the Public............................................................ 68

ARTICLE XVI        Termination........................................................................................ 68

ARTICLE XVII       Treatment of Confidential Information ............................................... 70

ARTICLE XVIII      Releases and Covenant Not to Sue .................................................... 71

ARTICLE XIX        Bar Order .......................................................................................... 75

ARTICLE XX         Final Order and Judgment and Dismissal With Prejudice.................. 75

ARTICLE XXI        Attorneys' Fees................................................................................. 76

ARTICLE XXII       Enforceability of Settlement Agreement and Dismissal of
                   Claims ............................................................................................... 77

i

ARTICLE XXIII  NFL Payment Obligations ................................................................... 78

ARTICLE XXIV  Denial of Wrongdoing, No Admission of Liability ............................ 85

ARTICLE XXV   Representations and Warranties ......................................................... 86

ARTICLE XXVI  Cooperation .......................................................................................... 89

ARTICLE XXVII  Continuing Jurisdiction ...................................................................... 90

ARTICLE XXVIII Role of Co-Lead Class Counsel, Class Counsel and Subclass
                Counsel ................................................................................................ 90

ARTICLE XXIX  Bargained-For Benefits ...................................................................... 91

ARTICLE XXX   Miscellaneous Provisions ................................................................... 91

**IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS'**
**CONCUSSION INJURY LITIGATION, MDL 2323,**
<u>**CLASS ACTION SETTLEMENT AGREEMENT AS OF JUNE 25, 2014**</u>
**(subject to Court approval)**

<u>**PREAMBLE**</u>

This SETTLEMENT AGREEMENT, dated as of June 25, 2014 (the "Settlement Date"), is made and entered into by and among defendants the National Football League ("NFL") and NFL Properties LLC ("NFL Properties") (collectively, "NFL Parties"), by and through their attorneys, and the Class Representatives and Subclass Representatives, individually and on behalf of the Settlement Class and Subclasses, by and through Class Counsel. This Settlement Agreement is intended by the Parties fully, finally, and forever to resolve, discharge, and settle all Released Claims against the Released Parties, as set forth below, subject to review and approval by the Court.[1]

<u>**RECITALS**</u>

A.    On January 31, 2012, a federal multidistrict litigation was established in the United States District Court for the Eastern District of Pennsylvania, <u>In re: National Football League Players' Concussion Injury Litigation</u>, MDL No. 2323. Plaintiffs in MDL No. 2323 filed a Master Administrative Long-Form Complaint and a Master Administrative Class Action Complaint for Medical Monitoring on June 7, 2012. Plaintiffs filed an Amended Master Administrative Long-Form Complaint on July 17, 2012. Additional similar lawsuits are pending in various state and federal courts.

B.    The lawsuits arise from the alleged effects of mild traumatic brain injury allegedly caused by the concussive and sub-concussive impacts experienced by former NFL Football players. Plaintiffs seek to hold the NFL Parties responsible for their alleged injuries under various theories of liability, including that the NFL Parties allegedly breached a duty to NFL Football players to warn and protect them from the long-term health problems associated with concussions and that the NFL Parties allegedly concealed and misrepresented the connection between concussions and long-term chronic brain injury.

C.    On August 30, 2012, the NFL Parties filed motions to dismiss the Master Administrative Class Action Complaint for Medical Monitoring and the Amended Master Administrative Long-Form Complaint on preemption grounds. Plaintiffs filed their oppositions to the motions on October 31, 2012, the NFL Parties filed reply memoranda of law on December 17, 2012, and plaintiffs filed sur-reply memoranda of law on January 28, 2013. Oral argument on the NFL Parties' motions to dismiss on preemption grounds was held on April 9, 2013.

---

[1]    Capitalized terms have the meanings provided in ARTICLE II, unless a section or subsection of this Settlement Agreement provides otherwise.

D.    On July 8, 2013, prior to ruling on the motions to dismiss, the Court ordered the plaintiffs and NFL Parties to engage in mediation to determine if consensual resolution was possible and appointed retired United States District Court Judge Layn Phillips of Irell & Manella LLP as mediator.

E.    Over the course of the following two months, the Parties, by and through their respective counsel, engaged in settlement negotiations under the direction of Judge Phillips. On August 29, 2013, the Parties signed a settlement term sheet setting forth the material terms of a settlement agreement. On the same day, the Court issued an order deferring a ruling on the NFL Parties' motions to dismiss and ordering the Parties to submit, as soon as possible, the full documentation relating to the settlement, along with a motion seeking preliminary approval of the settlement and notice plan. On December 16, 2013, the Court appointed a special master, Perry Golkin ("Special Master Golkin"), to assist the Court in evaluating the financial aspects of the proposed settlement.

F.    On January 6, 2014, Class Counsel moved the Court for an order, among other things, granting preliminary approval of the proposed settlement and conditionally certifying a settlement class and subclasses. On January 14, 2014, the Court denied that motion without prejudice.

G.    In conjunction with the January 2014 filing of the proposed settlement agreement, and this Settlement Agreement, the Class and Subclass Representatives filed Plaintiffs' Class Action Complaint ("Class Action Complaint") on January 6, 2014. In the Class Action Complaint, the Class and Subclass Representatives allege claims for equitable, injunctive and declaratory relief pursuant to Federal Rules of Civil Procedure 23(a)(1-4) & (b)(2), or, alternatively, for compensatory damages pursuant to Federal Rule of Civil Procedure 23(b)(3), for negligence, negligent hiring, negligent retention, negligent misrepresentation, fraud, fraudulent concealment, medical monitoring, wrongful death and survival, and loss of consortium, all under state law.

H.    The NFL Parties deny the Class and Subclass Representatives' allegations, and the allegations in Related Lawsuits, and deny any liability to the Class and Subclass Representatives, the Settlement Class, or any Settlement Class Member for any claims, causes of action, costs, expenses, attorneys' fees, or damages of any kind, and would assert a number of substantial legal and factual defenses against plaintiffs' claims if they were litigated to conclusion.

I.    The Class and Subclass Representatives, through their counsel, have engaged in substantial fact gathering to evaluate the merits of their claims and the NFL Parties' defenses. In addition, the Class and Subclass Representatives have analyzed the legal issues raised by their claims and the NFL Parties' defenses, including, without limitation, the NFL Parties' motions to dismiss the Amended Master Administrative Long-Form Complaint and Master Administrative Class Action Complaint on preemption grounds.

2

J.     After careful consideration, the Class and Subclass Representatives, and their respective Counsel, have concluded that it is in the best interests of the Class and Subclass Representatives and the Settlement Class and Subclasses to compromise and settle all Released Claims against the Released Parties for consideration reflected in the terms and benefits of this Settlement Agreement.  After arm's length negotiations with Counsel for the NFL Parties, including through the efforts of the court-appointed mediator and Special Master Golkin, the Class and Subclass Representatives have considered, among other things:  (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the litigation and amount of fact gathering completed; (3) the potential for the NFL Parties to prevail on threshold issues and on the merits; and (4) the range of possible recovery, and have determined that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class and Subclass Representatives and the Settlement Class and Subclasses.

K.     The NFL Parties have concluded, in light of the costs, risks, and burden of litigation, that this Settlement Agreement in this complex putative class action litigation is appropriate.  The NFL Parties and Counsel for the NFL Parties agree with the Class and Subclass Representatives and their respective counsel that this Settlement Agreement is a fair, reasonable, and adequate resolution of the Released Claims.  The NFL Parties reached this conclusion after considering the factual and legal issues relating to the litigation, the substantial benefits of this Settlement Agreement, the expense that would be necessary to defend claims by Settlement Class Members through trial and any appeals that might be taken, the benefits of disposing of protracted and complex litigation, and the desire of the NFL Parties to conduct their business unhampered by the costs, distraction and risks of continued litigation over Released Claims.

L.     The Parties desire to settle, compromise, and resolve fully all Released Claims.

M.     The Parties desire and intend to seek Court review and approval of the Settlement Agreement, and, upon preliminary approval by the Court, the Parties intend to seek a Final Order and Judgment from the Court dismissing with prejudice the Class Action Complaint and ordering the dismissal with prejudice of Related Lawsuits.

N.     This Settlement Agreement will not be construed as evidence of, or as an admission by, the NFL Parties of any liability or wrongdoing whatsoever or as an admission by the Class or Subclass Representatives, or Settlement Class Members, of any lack of merit in their claims.

NOW, THEREFORE, it is agreed that the foregoing recitals are hereby expressly incorporated into this Settlement Agreement and made a part hereof and further, that in consideration of the agreements, promises, and covenants set forth in this Settlement Agreement, including the Releases and Covenant Not to Sue in ARTICLE XVIII, the entry by the Court of the Final Order and Judgment dismissing the Class Action Complaint with prejudice and approving the terms and conditions of the Settlement Agreement, and for other good and valuable consideration, the receipt and

3

sufficiency of which are hereby acknowledged, this action shall be settled and compromised under the following terms and conditions:

## ARTICLE I
### Definitions of Settlement Class and Subclasses

Section 1.1    Definition of Settlement Class

(a)    "Settlement Class" means all Retired NFL Football Players, Representative Claimants and Derivative Claimants.

(b)    Excluded from the Settlement Class are any Retired NFL Football Players, Representative Claimants or Derivative Claimants who timely and properly exercise the right to be excluded from the Settlement Class ("Opt Outs").

Section 1.2    Definition of Subclasses

(a)    "Subclass 1" means Retired NFL Football Players who were not diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants.

(b)    "Subclass 2" means Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants, and the Representative Claimants of deceased Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to death or who died prior to the date of the Preliminary Approval and Class Certification Order and who received a post-mortem diagnosis of CTE.

## ARTICLE II
### Definitions

Section 2.1    Definitions

For the purposes of this Settlement Agreement, the following terms (designated by initial capitalization throughout this Agreement) will have the meanings set forth in this Section.

Unless the context requires otherwise, (i) words expressed in the masculine will include the feminine and neuter gender and vice versa; (ii) the word "will" shall be construed to have the same meaning and effect as the word "shall"; (iii) the word "or" will not be exclusive; (iv) the word "extent" in the phrase "to the extent" will mean the degree to which a subject or other thing extends, and such phrase will not simply mean "if"; (v) references to "day" or "days" in the lower case are to calendar days, but if the last day is a Saturday, Sunday, or legal holiday (as defined in Fed. R. Civ. P. 6(a)(6)), the period will continue to run until the end of the next day that is not a Saturday, Sunday, or legal holiday; (vi) references to this Settlement Agreement will include all

4

exhibits, schedules, and annexes hereto; (vii) references to any law will include all rules and regulations promulgated thereunder; (viii) the terms "include," "includes," and "including" will be deemed to be followed by "without limitation," whether or not they are in fact followed by such words or words of similar import; and (ix) references to dollars or "$" are to United States dollars.

(a)    "Active List" means the list of all players physically present, eligible and under contract to play for a Member Club on a particular game day within any applicable roster or squad limits set forth in the applicable NFL or American Football League Constitution and Bylaws.

(b)    "Affiliate" means, with respect to any person or entity, any other person or entity that, directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such person or entity, where "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies, whether through the ownership of voting shares, by contract, or otherwise.

(c)    "ALS" means amyotrophic lateral sclerosis, also known as Lou Gehrig's Disease, as defined in Exhibit 1.

(d)    "Alzheimer's Disease" is defined in Exhibit 1.

(e)    "American Football League" means the former professional football league that merged with the NFL.

(f)    "Appeals Form" means that document that Settlement Class Members, the NFL Parties or Co-Lead Class Counsel, as the case may be, will submit when appealing Monetary Award or Derivative Claimant Award determinations by the Claims Administrator, as set forth in Section 9.7.

(g)    "Appeals Advisory Panel" means a panel of physicians, composed of, in any combination, five (5) board-certified neurologists, board-certified neurosurgeons, and/or other board-certified neuro-specialist physicians agreed to and jointly recommended by Co-Lead Class Counsel and Counsel for the NFL Parties, and appointed by the Court, any one of whom is eligible to advise the Court or the Special Master with respect to medical aspects of the Class Action Settlement and to perform the other duties of the Appeals Advisory Panel set forth in this Settlement Agreement.

(h)    "Appeals Advisory Panel Consultants" means three (3) neuropsychologists certified by the American Board of Professional Psychology (ABPP) or the American Board of Clinical Neuropsychology (ABCN), a member board of the American Board of Professional Psychology, in the specialty of Clinical Neuropsychology, agreed to and jointly recommended by Co-Lead Class Counsel and Counsel for the NFL Parties, and appointed by the Court, any one of whom is eligible to advise a member of the Appeals Advisory Panel, the Court, or the Special Master on the neuropsychological testing referenced in Exhibits 1 and 2 to the Settlement Agreement, as pertaining to the Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment and

5

Level 2 Neurocognitive Impairment, and Level 1 Neurocognitive Impairment if subject to review as set forth in Section 5.13. Appeals Advisory Panel Consultants do not meet the definition of Appeals Advisory Panel members and shall not serve as members of the Appeals Advisory Panel.

(i)      "Baseline Assessment Program" ("BAP") means the program described in ARTICLE V.

(j)      "Baseline Assessment Program Supplemental Benefits" or "BAP Supplemental Benefits" means medical treatment, including, as needed, counseling and pharmaceutical coverage, for Level 1 Neurocognitive Impairment (as set forth in Exhibit 1) within a network of Qualified BAP Providers and Qualified BAP Pharmacy Vendor(s), respectively, established by the BAP Administrator, as set forth in Section 5.11.

(k)      "Baseline Assessment Program Fund Administrator" or "BAP Administrator" means that person(s) or entity, agreed to and jointly recommended by Co-Lead Class Counsel and Counsel for the NFL Parties, and appointed by the Court, to perform the responsibilities assigned to the BAP Administrator under this Settlement Agreement, including, without limitation, as set forth in ARTICLE V.

(l)      "Baseline Assessment Program Fund" or "BAP Fund" means the fund to pay BAP costs and expenses, as set forth in ARTICLE V.

(m)      "Claim Form" means that document to be submitted to the Claims Administrator by a Settlement Class Member who is a Retired NFL Football Player or Representative Claimant claiming a Monetary Award, as set forth in ARTICLE VIII.

(n)      "Claim Package" means the Claim Form and other documentation, as set forth in Section 8.2(a).

(o)      "Claims Administrator" means that person(s) or entity, agreed to and jointly recommended by Co-Lead Class Counsel and Counsel for the NFL Parties, and appointed by the Court, to perform the responsibilities assigned to the Claims Administrator under this Settlement Agreement, including, without limitation, as set forth in Section 10.2.

(p)      "Class Action Complaint" means the complaint captioned Plaintiffs' Class Action Complaint filed on consent in the Court on January 6, 2014.

(q)      "Class Action Settlement" means that settlement set forth in this Settlement Agreement.

(r)      "Class Counsel" means, pending Court appointment, the counsel who are so designated and who are signatories to this Settlement Agreement, namely, Co-Lead Class Counsel, Christopher A. Seeger and Sol Weiss, Subclass Counsel, Arnold Levin and Dianne M. Nast, and Steven C. Marks of Podhurst Orseck,

6

P.A. and Gene Locks of Locks Law Firm, and, upon appointment, such other counsel as the Court may appoint to represent the Settlement Class.

(s)    "Class Representatives" means Shawn Wooden and Kevin Turner, or such other or different persons as may be appointed by the Court as the representatives of the Settlement Class.

(t)    "CMS" means the Centers for Medicare & Medicaid Services, the agency within the United States Department of Health and Human Services responsible for administration of the Medicare Program and the Medicaid Program.

(u)    "Co-Lead Class Counsel" means, pending Court appointment, the counsel who are so designated and who are signatories to this Settlement Agreement, namely, Christopher A. Seeger of Seeger Weiss LLP and Sol Weiss of Anapol Schwartz, and, upon appointment, such other counsel as the Court may appoint to represent the Settlement Class in a lead role.

(v)    "Collective Bargaining Agreement" means the August 4, 2011 Collective Bargaining Agreement between the NFL Management Council and the NFL Players Association, individually and together with all previous and future NFL Football collective bargaining agreements governing NFL Football players.

(w)    "Counsel for the NFL Parties" means Paul, Weiss, Rifkind, Wharton & Garrison LLP, or any law firm or attorney so designated in writing by the NFL Parties.

(x)    "Court" means the United States District Court for the Eastern District of Pennsylvania, Judge Anita Brody (or any successor judge designated by the United States District Court for the Eastern District of Pennsylvania, or a magistrate judge designated by Judge Brody or such designated successor judge, as set forth in and pursuant to Federal Rule of Civil Procedure 72), presiding in In re: National Football League Players' Concussion Injury Litigation, MDL No. 2323.  For the period of time from the Effective Date up to and including the fifth year of the Class Action Settlement, the Parties agree, in accordance with the provisions of 28 U.S.C. § 636(c), to waive their right to proceed before a judge of the United States District Court in connection with issues relating to the administration of this Settlement Agreement where the Court is required or requested to act, and consent to have a United States Magistrate Judge conduct such proceedings.

(y)    "Covenant Not to Sue" means the covenant not to sue set forth in Section 18.4.

(z)    "CTE" means Chronic Traumatic Encephalopathy.

(aa)    "Death with CTE" is defined in Exhibit 1.

7

(bb)    "Deficiency" means any failure of a Settlement Class Member to provide required information or documentation to the Claims Administrator, as set forth in Section 8.5.

(cc)    "Derivative Claim Form" means that document to be submitted to the Claims Administrator by a Settlement Class Member who is a Derivative Claimant claiming a Derivative Claimant Award, as set forth in ARTICLE VIII.

(dd)    "Derivative Claim Package" means the Derivative Claim Form and other documentation, as set forth in Section 8.2(b).

(ee)    "Derivative Claimants" means spouses, parents, children who are dependents, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player or deceased Retired NFL Football Player.

(ff)    "Derivative Claimant Award" means the payment of money from the Monetary Award of the subject Retired NFL Football Player to a Settlement Class Member who is a Derivative Claimant, as set forth in ARTICLE VII.

(gg)    "Diagnosing Physician Certification" means that document which a Settlement Class Member who is a Retired NFL Football Player or Representative Claimant must submit either as part of a Claim Package in order to receive a Monetary Award, as set forth in Section 8.2(a), or to receive BAP Supplemental Benefits, as set forth in Section 5.11, the contents of which shall be agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties and that shall include, without limitation: (i) a certification under penalty of perjury by the diagnosing physician that the information provided is true and correct, (ii) the Qualifying Diagnosis being made consistent with the criteria in Exhibit 1 (Injury Definitions) and the date of diagnosis, and (iii) the qualifications of the diagnosing physician, including, without limitation, whether the diagnosing physician is a Qualified MAF Physician.

(hh)    "Education Fund" means a fund to support education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of Retired NFL Football Players regarding the NFL CBA Medical and Disability Benefits programs, and other educational initiatives benefitting Retired NFL Football Players, as set forth in ARTICLE XII.

(ii)    "Education Fund Amount" means the amount of Ten Million United States dollars (U.S. $10,000,000), as set forth in Section 23.1(c).

(jj)    "Effective Date" means (i) the day following the expiration of the deadline for appealing the entry by the Court of the Final Order and Judgment approving the Settlement Agreement and certifying the Settlement Class (or for appealing any ruling on a timely motion for reconsideration of such Final Order, whichever is later), if no such appeal is filed; or (ii) if an appeal of the Final Order and Judgment is filed, the date upon which all appellate courts with jurisdiction (including the United States

8

Supreme Court by petition for certiorari) affirm such Final Order and Judgment, or deny any such appeal or petition for certiorari, such that no future appeal is possible.

(kk)     "Eligible Season" means a season in which a Retired NFL Football Player or deceased Retired NFL Football Player was:  (i) on a Member Club's Active List on the date of three (3) or more regular season or postseason games; or (ii) on a Member Club's Active List on the date of one (1) or more regular or postseason games, and then spent at least two (2) regular or postseason games on a Member Club's injured reserve list or inactive list due to a concussion or head injury.  A "half of an Eligible Season" means a season in which a Retired NFL Football Player or deceased Retired NFL Football Player was on a Member Club's practice, developmental, or taxi squad roster for at least eight (8) regular or postseason games.

(ll)     "Fairness Hearing" means the hearing scheduled by the Court to consider the fairness, reasonableness, and adequacy of this Settlement Agreement under Rule 23(e)(2) of the Federal Rules of Civil Procedure, and to determine whether a Final Order and Judgment should be entered.

(mm)     "Final Approval Date" means the date on which the Court enters the Final Order and Judgment.

(nn)     "Final Order and Judgment" means the final judgment and order entered by the Court, substantially in the form of Exhibit 4, and as set forth in ARTICLE XX.

(oo)     "Funds" means the Settlement Trust Account, the BAP Fund, the Monetary Award Fund, and the Education Fund.

(pp)     "Governmental Payor" means any federal, state, or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs, including, but not limited to, the Medicare Program, the Medicaid Program, Tricare, the Department of Veterans Affairs, and the Department of Indian Health Services.

(qq)     "HIPAA" means the administrative simplification provisions of the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified as amended in scattered sections of 42 U.S.C.) and the implementing regulations issued by the United States Department of Health and Human Services thereunder, and incorporates by reference the provisions of the Health Information Technology for Economic and Clinical Health Act (Title XIII of Division A and Title IV of Division B of the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5 (2009)) pertaining to Protected Health Information.

(rr)     "Level 1 Neurocognitive Impairment" is defined in Exhibit 1.

(ss)     "Level 1.5 Neurocognitive Impairment" is defined in Exhibit 1.

9

(tt)    "Level 2 Neurocognitive Impairment" is defined in Exhibit 1.

(uu)    "Lien" means any statutory lien of a Government Payor or Medicare Part C or Part D Program sponsor; or any mortgage, lien, pledge, charge, security interest, or legal encumbrance, of any nature whatsoever, held by any person or entity, where there is a legal obligation to withhold payment of a Monetary Award, Supplemental Monetary Award, Derivative Claimant Award, or some portion thereof, to a Settlement Class Member under applicable federal or state law.

(vv)    "Lien Resolution Administrator" means that person(s) or entity, agreed to and jointly recommended by Co-Lead Class Counsel and Counsel for the NFL Parties, and appointed by the Court, to perform the responsibilities assigned to the Lien Resolution Administrator under this Settlement Agreement, including, without limitation, as set forth in ARTICLE XI.

(ww)    "Medicaid Program" means the federal program administered by the states under which certain medical items, services, and/or prescription drugs are furnished to Medicaid beneficiaries under Title XIX of the Social Security Act, 42 U.S.C. § 1396–1, *et seq.*

(xx)    "Medicare Part C or Part D Program" means the program(s) under which Medicare Advantage, Medicare cost, and Medicare health care prepayment plan benefits and Medicare Part D prescription drug plan benefits are administered by private entities that contract with CMS.

(yy)    "Medicare Program" means the Medicare Parts A and B federal program administered by CMS under which certain medical items, services, and/or prescription drugs are furnished to Medicare beneficiaries under Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*

(zz)    "Member Club" means any past or present member club of the NFL or any past member club of the American Football League.

(aaa)    "Monetary Award" means the payment of money from the Monetary Award Fund to a Settlement Class Member, other than a Derivative Claimant, as set forth in ARTICLE VI.   The term "Monetary Award" shall also include "Supplemental Monetary Award" with respect to the claims process set forth in this Settlement Agreement, including, without limitation, relating to submission and approval of claims, calculation and distribution of awards, and appeals.

(bbb)    "Monetary Award Fund" or "MAF" means the sixty-five (65) year fund, as set forth in Section 6.10.

(ccc)    "Monetary Award Grid" means that document attached as Exhibit 3.

10

(ddd)  "MSP Laws" means the Medicare Secondary Payer Act set forth at 42 U.S.C. § 1395y(b), as amended from time to time, and implementing regulations, and other applicable written CMS guidance.

(eee)  "NFL CBA Medical and Disability Benefits" means any disability or medical benefits available under the Collective Bargaining Agreement, including the benefits available under the Bert Bell/Pete Rozelle NFL Player Retirement Plan; NFL Player Supplemental Disability Plan, including the Neuro-Cognitive Disability Benefit provided for under Article 65 of the Collective Bargaining Agreement; the 88 Plan; Gene Upshaw NFL Player Health Reimbursement Account Plan; Former Player Life Improvement Plan; NFL Player Insurance Plan; and/or the Long Term Care Insurance Plan.

(fff)  "NFL Football" means the sport of professional football as played in the NFL, the American Football League, the World League of American Football, the NFL Europe League, and the NFL Europa League.  NFL Football excludes football played by all other past, present or future professional football leagues, including, without limitation, the All-American Football Conference.

(ggg)  "NFL Medical Committees" means the various past and present medical committees, subcommittees and panels that operated or operate at the request and/or direction of the NFL, whether independent or not, including, without limitation, the Injury and Safety Panel, Mild Traumatic Brain Injury Committee, Head Neck and Spine Medical Committee, Foot and Ankle Subcommittee, Cardiovascular Health Subcommittee, and Medical Grants Subcommittee, and all persons, whether employees, agents or independent of the NFL, who at any time were members of or participated on each such panel, committee, or subcommittee.

(hhh)  "Notice of Challenge Determination" means the written notice set forth in Section 4.3(a)(ii)-(iv).

(iii)  "Notice of Deficiency" means that document that the Claims Administrator sends to any Settlement Class Member whose Claim Package or Derivative Claim Package contains a Deficiency, as set forth in Section 8.5.

(jjj)  "Notice of Derivative Claimant Award Determination" means the written notice set forth in Section 9.2(a)-(b).

(kkk)  "Notice of Monetary Award Claim Determination" means the written notice set forth in Section 9.1(b)-(c).

(lll)  "Notice of Registration Determination" means the written notice set forth in Section 4.3.

(mmm)"Offsets" means downward adjustments to Monetary Awards, as set forth in Section 6.7(b).

(nnn) "Opt Out," when used as a verb, means the process by which any Retired NFL Football Player, Representative Claimant or Derivative Claimant otherwise included in the Settlement Class exercises the right to exclude himself or herself from the Settlement Class in accordance with Fed. R. Civ. P. 23(c)(2).

(ooo) "Opt Outs," when used as a noun, means those Retired NFL Football Players, Representative Claimants and Derivative Claimants who would otherwise have been included in the Settlement Class and who have timely and properly exercised their rights to Opt Out and therefore, after the Final Approval Date, are not Settlement Class Members.

(ppp) "Other Party" means every person, entity, or party other than the Released Parties.

(qqq) "Parkinson's Disease" is defined in Exhibit 1.

(rrr) "Parties" means the Class Representatives and Subclass Representatives, individually and on behalf of the Settlement Class and Subclasses, and the NFL Parties.

(sss) "Personal Signature" means the actual signature by the person whose signature is required on the document. Unless otherwise specified in this Settlement Agreement, a document requiring a Personal Signature may be submitted by an actual original "wet ink" signature on hard copy, or a PDF or other electronic image of an actual signature, but cannot be submitted by an electronic signature within the meaning of the Electronic Records and Signatures in Commerce Act, 15 U.S.C. §§7001, *et seq.*, the Uniform Electronic Transactions Act, or their successor acts.

(ttt) "Preliminary Approval and Class Certification Order" means the order, upon entry by the Court, preliminarily approving the Class Action Settlement and conditionally certifying the Settlement Class and Subclasses.

(uuu) "Protected Health Information" means individually identifiable health information, as defined in 45 C.F.R. § 160.103.

(vvv) "Qualified BAP Providers" means neuropsychologists certified by the American Board of Professional Psychology (ABPP) or the American Board of Clinical Neuropsychology (ABCN), a member board of the American Board of Professional Psychology, in the specialty of Clinical Neuropsychology, and board-certified neurologists, eligible to conduct baseline assessments of Retired NFL Football Players under the BAP, as set forth in Section 5.7(a).

(www) "Qualified MAF Physician" means a board-certified neurologist, board-certified neurosurgeon, or other board-certified neuro-specialist physician, who is part of an approved list of physicians authorized to make Qualifying Diagnoses, as set forth in Section 6.5.

12

(xxx) "Qualified Pharmacy Vendor(s)" means one or more nationwide mail order pharmacies contracted to provide approved pharmaceutical prescriptions as part of the BAP Supplemental Benefits, as set forth in Section 5.7(b).

(yyy) "Qualifying Diagnosis" or "Qualifying Diagnoses" means Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, ALS, and/or Death with CTE, as set forth in Exhibit 1 (Injury Definitions).

(zzz) "Related Lawsuits" means all past, present and future actions brought by one or more Releasors against one or more Released Parties pending in the Court, other than the Class Action Complaint, or in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum that arise out of, are based upon or are related to the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, alleged, or referred to in the Class Action Complaint, except that Settlement Class Members' claims for workers' compensation and claims alleging entitlement to NFL CBA Medical and Disability Benefits are not Related Lawsuits.

(aaaa) "Released Claims" means those claims released as set forth in Section 18.1 and Section 18.2.

(bbbb) "Released Parties" for purposes of the Released Claims means (i) the NFL Parties (including all persons, entities, subsidiaries, divisions, and business units composed thereby), together with (ii) each of the Member Clubs, (iii) each of the NFL Parties' and Member Clubs' respective past, present, and future agents, directors, officers, employees, independent contractors, general or limited partners, members, joint venturers, shareholders, attorneys, trustees, insurers (solely in their capacities as liability insurers of those persons or entities referred to in subparagraphs (i) and (ii) above and/or arising out of their relationship as liability insurers to such persons or entities), predecessors, successors, indemnitees, and assigns, and their past, present, and future spouses, heirs, beneficiaries, estates, executors, administrators, and personal representatives, including, without limitation, all past and present physicians who have been employed or retained by any Member Club and members of all past and present NFL Medical Committees; and (iv) any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the NFL Parties or the Member Clubs, in their respective capacities as such; and, as to (i)-(ii) above, each of their respective Affiliates, including their Affiliates' officers, directors, shareholders, employees, and agents. For the avoidance of any doubt, Riddell is not a Released Party.

(cccc) "Releases" means the releases set forth in ARTICLE XVIII.

(dddd)        "Releasors" means the releasors set forth in Section 18.1.

13

(eeee)      "Representative Claimants" means authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased or legally incapacitated or incompetent Retired NFL Football Players.

(ffff)      "Retired NFL Football Players" means all living NFL Football players who, prior to the date of the Preliminary Approval and Class Certification Order, retired, formally or informally, from playing professional football with the NFL or any Member Club, including American Football League, World League of American Football, NFL Europe League and NFL Europa League players, or were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and who no longer are under contract to a Member Club and are not seeking active employment as players with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club.

(gggg)      "Riddell" means Riddell, Inc.; All American Sports Corporation; Riddell Sports Group, Inc.; Easton-Bell Sports, Inc.; Easton-Bell Sports, LLC; EB Sports Corp.; and RBG Holdings Corp., and each of their respective past, present, and future Affiliates, directors, officers, employees, general or limited partners, members, joint venturers, shareholders, agents, trustees, insurers (solely in their capacities as such), reinsurers (solely in their capacities as such), predecessors, successors, indemnitees, and assigns.

(hhhh)      "Settlement Agreement" means this Settlement Agreement and all accompanying exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

(iiii)      "Settlement Class and Subclasses" is defined in Section 1.1 and Section 1.2.

(jjjj)      "Settlement Class Member" means each Retired NFL Football Player, Representative Claimant and/or Derivative Claimant in the Settlement Class; provided, however, that the term Settlement Class Member as used herein with respect to any right or obligation after the Final Approval Date does not include any Opt Outs.

(kkkk)      "Settlement Class Notice" means that notice, in the form of Exhibit 5, and as set forth in Section 14.1, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and approved by the Court.

(llll)    "Settlement Class Notice Agent" means that person or entity who will implement the Settlement Class Notice Plan and who will be responsible for the publication and provision of the Settlement Class Notice and Settlement Class Supplemental Notice.

(mmmm)      "Settlement Class Notice Payment" means Four Million United States dollars (U.S. $4,000,000), as set forth in Sections 23.1(d) and

23.3(e), for the costs of Settlement Class Notice, any supplemental notice required, including, without limitation, the Settlement Class Supplemental Notice, and compensation of the Settlement Class Notice Agent and the Claims Administrator to the extent the Claims Administrator performs notice-related duties that have been agreed to by the NFL Parties.

(nnnn)      "Settlement Class Notice Plan" means that document which sets forth the methods, timetable, and responsibilities for providing Settlement Class Notice to Settlement Class Members, as set forth in Section 14.1.

(oooo)      "Settlement Class Supplemental Notice" means that notice, as set forth in Section 14.1(d), as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and approved by the Court.

(pppp)      "Settlement Date" means the date by which Class Counsel and Counsel for the NFL Parties have all signed this Settlement Agreement on behalf of the Class and Subclass Representatives, Settlement Class and Subclasses, and the NFL Parties, respectively.

(qqqq)      "Settlement Trust" means the trust enacted pursuant to the Settlement Trust Agreement, as set forth in Section 23.5.

(rrrr)      "Settlement Trust Account" means that account created under the Settlement Trust Agreement and held by the Trustee into which the NFL Parties will make payments pursuant to ARTICLE XXIII of this Settlement Agreement.

(ssss)      "Settlement Trust Agreement" means the agreement that will establish the Settlement Trust and will be entered into by Co-Lead Class Counsel, the NFL Parties, and the Trustee, as set forth in Section 23.5(c).

(tttt)      "Signature" means the actual signature by the person whose signature is required on the document, or on behalf of such person by a person authorized by a power of attorney or equivalent document to sign such documents on behalf of such person.  Unless otherwise specified in this Settlement Agreement, a document requiring a Signature may be submitted by: (i) an actual original "wet ink" signature on hard copy; (ii) a PDF or other electronic image of an actual signature; or (iii) an electronic signature within the meaning of the Electronic Records and Signatures in Commerce Act, 15 U.S.C. §§7001, *et seq.*, the Uniform Electronic Transactions Act, or their successor acts.

(uuuu)      "Special Master" means that person appointed by the Court pursuant to Federal Rule of Civil Procedure 53 to oversee the administration of the Settlement Agreement, as set forth in Section 10.1.

(vvvv)      "Stadium Program Bonds" means the NFL's G3 and G4 bonds.

15

(wwww)    "Stroke" means stroke, as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9) or the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), which occurs prior to or after the time the Retired NFL Football Player played NFL Football.  A medically diagnosed Stroke does not include a transient cerebral ischaemic attack and related syndromes, as defined by ICD-10.

(xxxx) "Subclass Counsel" means, pending Court appointment, the counsel who are so designated and who are signatories to this Settlement Agreement, namely Arnold Levin of Levin, Fishbein, Sedran & Berman for Subclass 1, and Dianne M. Nast of NastLaw LLC for Subclass 2, and, upon appointment, such other counsel as the Court may appoint to represent the Settlement Subclasses 1 and 2.

(yyyy)    "Subclass Representatives" means Shawn Wooden and Kevin Turner, or such other or different persons as may be designated by the Court as the representatives of the Settlement Subclasses 1 and 2.

(zzzz)    "Supplemental Monetary Award" means the supplemental payment of monies from the Monetary Award Fund to a Settlement Class Member, as set forth in Section 6.8.

(aaaaa)    "Traumatic Brain Injury" means severe traumatic brain injury unrelated to NFL Football play, that occurs during or after the time the Retired NFL Football Player played NFL Football, consistent with the definitions in the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), Codes 854.04, 854.05, 854.14 and 854.15, and the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), Codes S06.9x5 and S06.9x6.

(bbbbb)    "Tricare" means the federal program managed and administered by the United States Department of Defense through the Tricare Management Activity under which certain medical items, services, and/or prescription drugs are furnished to eligible members of the military services, military retirees, and military dependents under 10 U.S.C. § 1071, *et seq*.

(ccccc) "Trustee" means that person or entity approved by the Court as trustee of the Settlement Trust Account and as administrator of the qualified settlement fund for purposes of Treasury Regulation §1.468B-2(k)(3), as set forth in ARTICLE XXIII.

## ARTICLE III
### Settlement Benefits for Class Members

Section 3.1    The Class and Subclass Representatives, by and through Class Counsel and Subclass Counsel, and the NFL Parties, by and through Counsel for the NFL Parties, agree that, in consideration of the Releases and Covenant Not to Sue set forth in ARTICLE XVIII, and the dismissal with prejudice of the Class Action Complaint and the Related Lawsuits, and subject to the terms and conditions of this Settlement

16

Agreement, the NFL Parties will, in addition to other obligations set forth in this Settlement Agreement:

(a)     Pay all final Monetary Awards and Derivative Claimant Awards to those Settlement Class Members who qualify for such awards pursuant to the requirements and criteria set forth in this Settlement Agreement;

(b)     Provide qualified Settlement Class Members who are Retired NFL Football Players with the option to participate in the BAP and receive a BAP baseline assessment examination and BAP Supplemental Benefits, if eligible, pursuant to the requirements and criteria set forth in this Settlement Agreement; and

(c)     Establish the Education Fund to support education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of Retired NFL Football Players regarding the NFL CBA Medical and Disability Benefits programs, and other educational initiatives benefitting Retired NFL Football Players, as set forth in ARTICLE XII.

## ARTICLE IV
## Information and Registration Process

Section 4.1     <u>Information</u>

(a)     Within ten (10) days after the Preliminary Approval and Class Certification Order, Co-Lead Class Counsel will cause to be established and maintained a public website containing information about the Class Action Settlement (the "Settlement Website"), including the Settlement Class Notice and "Frequently Asked Questions."  Within ninety (90) days after the Effective Date, Co-Lead Class Counsel will cause the Settlement Website to be transitioned for claims administration purposes. The Settlement Website will be the launching site for secure web-based portals established and maintained by the Claims Administrator, BAP Administrator, and/or Lien Resolution Administrator for use by Settlement Class Members and their designated attorneys throughout the term of the Class Action Settlement.  The Claims Administrator will post all necessary information about the Class Action Settlement on the Settlement Website, including, as they become available, information about registration deadlines and methods to participate in the BAP, the Claim Package requirements and Monetary Awards, and the Derivative Claim Package requirements and Derivative Claimant Awards.  All content posted on the Settlement Website will be subject to advance approval by Co-Lead Class Counsel and Counsel for the NFL Parties.

(b)     Within ten (10) days after the Preliminary Approval and Class Certification Order, Co-Lead Class Counsel also will cause to be established and maintained an automated telephone system that uses a toll-free number or numbers to provide information about the Class Action Settlement.  Within ninety (90) days after the Effective Date, Co-Lead Class Counsel will cause the automated telephone system to be transitioned for claims administration purposes.  Through this system, Settlement Class

17

Members may request and obtain copies of the Settlement Class Notice, Settlement Agreement, Claim Form, Derivative Claim Form, and Appeals Form, and they may speak with operators for further information.

<div align="center">Section 4.2    <u>Registration Methods and Requirements</u></div>

(a)    The Claims Administrator will establish and administer both online and hard copy registration methods for participation in the Class Action Settlement.

(b)    The registration requirements will include information sufficient to determine if a registrant is a Settlement Class Member, including: (i) name; (ii) address; (iii) date of birth; (iv) Social Security Number (if any); (v) email address (if any), and whether email, the web-based portal on the Settlement Website, or U.S. mail is the preferred method of communication; (vi) identification as a Retired NFL Football Player, Representative Claimant or Derivative Claimant; (vii) dates and nature of NFL Football employment (*e.g.*, Active List, practice squad, developmental squad), and corresponding identification of the employer Member Club(s) or assigned team(s) (for Retired NFL Football Players, or, for the subject Retired NFL Football Player or deceased Retired NFL Football Player in the case of Representative Claimants and Derivative Claimants); and (viii) Signature of the registering purported Settlement Class Member.

(i)    In addition to the registration requirements in this Section 4.2(b), Representative Claimants also will identify the subject deceased or legally incapacitated or incompetent Retired NFL Football Player, including name, last known address, date of birth, and Social Security Number (if any), and will provide a copy of the court order, or other document issued by an official of competent jurisdiction, providing the authority to act on behalf of that deceased or legally incapacitated or incompetent Retired NFL Football Player.

(ii)    In addition to the registration requirements in this Section 4.2(b), Derivative Claimants also will identify the subject Retired NFL Football Player or deceased Retired NFL Football Player and the relationship by which they assert the right under applicable state law to sue independently or derivatively.

(c)    Unless good cause, as set forth in subsection (i), is shown, Settlement Class Members must register on or before 180 days from the date that the Settlement Class Supplemental Notice is posted on the Settlement Website. If a Settlement Class Member does not register by that deadline, that Settlement Class Member will be deemed ineligible for the BAP and BAP Supplemental Benefits, Monetary Awards and Derivative Claimant Awards.

(i)    Good cause will include, without limitation, (a) that a Settlement Class Member who is a Representative Claimant had not been ordered by a court or other official of competent jurisdiction to be the authorized representative of the subject deceased or legally incapacitated or incompetent Retired NFL Football Player

<div align="center">18</div>

prior to the registration deadline (and the Representative Claimant seeks to register within 180 days of authorization by the court or other official of competent jurisdiction), or (b) that the subject Retired NFL Football Player timely registered prior to his death or becoming legally incapacitated or incompetent and his Representative Claimant seeks to register for that Retired NFL Football Player; or (c) that the subject Retired NFL Football Player timely registered and the Derivative Claimant seeks to register within thirty (30) days of that Retired NFL Football Player's submission of a Claim Package.

Section 4.3    Registration Review

(a)    Upon receipt of a purported Settlement Class Member's registration, the Claims Administrator will review the information to determine whether the purported Settlement Class Member is a Settlement Class Member under the Settlement Agreement, and whether he or she has timely registered.  In order to determine qualification for the BAP, as set forth in Section 5.1, the Claims Administrator will also determine if a registering Retired NFL Football Player has identified his participation in NFL Football that earns him at least one half of an Eligible Season.  The Claims Administrator will then issue a favorable or adverse Notice of Registration Determination, within forty-five (45) days of receipt of the purported Settlement Class Member's registration, informing the purported Settlement Class Member whether he or she is a Settlement Class Member who has properly registered.  To the extent the volume of registrations warrants, this deadline may be extended by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties.

(i)    Favorable Notices of Registration Determination will include information regarding the sections of the Settlement Website and/or secure web-based portals that provide detailed information regarding the Claim Package and Monetary Awards, the Derivative Claim Package and Derivative Claimant Awards and, for Settlement Class Members who are Retired NFL Football Players, information regarding the BAP.  The Notice of Registration Determination will inform the Settlement Class Member of his or her unique identifying number for future use, including on a Claim Form or Derivative Claimant Form.

(ii)    Adverse Notices of Registration Determination will include information regarding how the purported Settlement Class Member can challenge the determination.  The purported Settlement Class Member may submit a written challenge to the Claims Administrator within sixty (60) days after the date of the Notice of Registration Determination.  The purported Settlement Class Member must present a sworn statement or other evidence in support of any written challenge.  The Claims Administrator will make a determination on the written challenge and issue a Notice of Challenge Determination to the purported Settlement Class Member and the NFL Parties informing them of the decision.

(iii)    The NFL Parties can challenge, for good cause, a favorable Notice of Registration Determination by submitting a written challenge to the Claims Administrator within sixty (60) days after the date of the Notice of Registration Determination.  The NFL Parties must present evidence in support of the written

19

**-891-**

challenge. The Claims Administrator will make a determination on the written challenge and issue a Notice of Challenge Determination to the purported Settlement Class Member and the NFL Parties informing them of the decision.

(iv)    Any Notice of Challenge Determination may be appealed by the purported Settlement Class Member or the NFL Parties, provided that the NFL Parties' appeal is limited to challenging the purported Retired NFL Football Player's or subject Retired NFL Football Player's status as a Retired NFL Football Player, in writing to the Court within sixty (60) days after the date of the Notice of Challenge Determination. The parties may present evidence in support of, or in opposition to, the appeal. The Court will be provided access to all documents and information available to the Claims Administrator to aid in determining the appeal. The Court may, in its discretion, refer the appeal to the Special Master. The decision of the Court or the Special Master shall be final and binding.

(v)    If either Co-Lead Class Counsel or Counsel for the NFL Parties believe that the Claims Administrator has issued a Notice of Registration Determination that reflects an improper interpretation of the Settlement Class definition set forth in Section 1.1, such counsel may petition the Court to resolve the issue. The Court may, in its discretion, refer the matter to the Special Master. If the Court or the Special Master determines that the Claims Administrator misinterpreted the Settlement Class definition, the  decision of the Court or the Special Master will supersede the prior determination by the Claims Administrator.

## ARTICLE V
## Baseline Assessment Program

Section 5.1    Qualification.    All Retired NFL Football Players with at least one half of an Eligible Season, as defined in Section 2.1(kk), who timely registered to participate in the Class Action Settlement, as set forth in ARTICLE IV, will qualify for the BAP and will be entitled to one (1) baseline assessment examination as provided in Section 5.2. For the avoidance of any doubt, an eligible Retired NFL Football Player who submits a claim for a Monetary Award, whether successful or not, may participate in the BAP, except a Retired NFL Football Player who submits a successful claim for a Monetary Award is not eligible to later receive BAP Supplemental Benefits.

Section 5.2    Scope of Program.    The BAP will provide the opportunity for each qualified Retired NFL Football Player, as set forth in Section 5.1, to receive a maximum of one (1) baseline assessment examination, which includes: (a) a standardized neuropsychological examination in accordance with the testing protocol set forth in Exhibit 2 performed by a neuropsychologist certified by the American Board of Professional Psychology (ABPP) or the American Board of Clinical Neuropsychology (ABCN), a member board of the American Board of Professional Psychology, in the specialty of Clinical Neuropsychology, who is a Qualified BAP Provider; and (b) a basic neurological examination performed by a board-certified neurologist who is a Qualified BAP Provider. The diagnosis of Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment and Level 2 Neurocognitive Impairment made pursuant to

20

the BAP must be agreed to by both the neuropsychologist and board-certified neurologist serving as Qualified BAP Providers.  BAP baseline assessment examinations are intended to establish a physician/patient relationship between the Retired NFL Football Player and his Qualified BAP Providers.  Retired NFL Football Players diagnosed during their BAP baseline assessment examinations by Qualified BAP Providers with Level 1 Neurocognitive Impairment will be eligible to receive BAP Supplemental Benefits, as set forth in Section 5.11.  For the avoidance of any doubt, a Qualifying Diagnosis of Alzheimer's Disease, Parkinson's Disease, ALS or Death with CTE shall not be made through the BAP baseline assessment examination.

Section 5.3     Deadline for BAP Baseline Assessment Examination.   A Retired NFL Football Player electing to receive a BAP baseline assessment examination must take it:  (i) within two (2) years of the commencement of the BAP if he is age 43 or older on the Effective Date; or (ii) if he is younger than age 43 on the Effective Date, before his 45th birthday or within ten (10) years of the commencement of the BAP, whichever occurs earlier.  For the avoidance of any doubt, there shall be no baseline assessment examinations after the tenth anniversary of the commencement of the BAP.

Section 5.4     Monetary Award Offset.  If a Retired NFL Football Player in Subclass 1 chooses not to participate in the BAP and receives a Qualifying Diagnosis on or after the Effective Date, that Retired NFL Football Player will be subject to a Monetary Award Offset (as set forth in Section 6.7(b)(iv)) based on his non-participation in the BAP unless the Qualifying Diagnosis is of ALS or if he receives any Qualifying Diagnosis other than ALS prior to his deadline to receive a BAP baseline assessment examination as set forth in Section 5.3.  This Offset does not apply to a Retired NFL Football Player who is in Subclass 2.

Section 5.5     BAP Term.  The BAP will commence one hundred and twenty (120) days after the Settlement Class Supplemental Notice is posted on the Settlement Website and will end ten (10) years after it commences, except that the provision of BAP Supplemental Benefits to Retired NFL Football Players diagnosed with Level 1 Neurocognitive Impairment, as set forth in Exhibit 1, may extend beyond the term of the BAP for up to five (5) years as set forth in Section 5.11.  Retired NFL Football Players who are qualified, as set forth in Section 5.1, will be entitled to one (1) baseline assessment examination within the applicable time limitations set forth in Section 5.3.

Section 5.6     BAP Administrator

(a)     Appointment and Oversight

(i)     The Motion for Preliminary Approval of the Class Action Settlement filed by Class Counsel   will request that the Court appoint The Garretson Resolution Group, Inc. ("Garretson Group") as BAP Administrator.  Within ten (10) days after the Effective Date, Co-Lead Class Counsel will retain the BAP Administrator appointed by the Court.

21

(ii)     Co-Lead Class Counsel's retention agreement with the BAP Administrator will provide that the BAP Administrator will perform its responsibilities and take all steps necessary to faithfully implement and administer the BAP-related provisions of the Settlement Agreement, and will require that the BAP Administrator maintain at all times appropriate and sufficient bonding insurance in connection with its performance of its responsibilities under the Settlement Agreement.

(iii)     The Court may, at its sole discretion, request reports or information from the BAP Administrator.  The BAP Administrator will be responsible for reporting and providing information to the Court at such frequency and in such a manner as the Court directs.

(iv)     The Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) will oversee the BAP Administrator, and may, at his or her sole discretion, request reports or information from the BAP Administrator.

(v)     Beyond the reporting requirements set forth in Section 5.6(a)(iii)-(iv), beginning one month after the Effective Date, the BAP Administrator will issue a regular monthly report to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel, and Counsel for the NFL Parties during the first three years of the BAP, and thereafter on a quarterly basis, or as reasonably agreed upon by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel and Counsel for the NFL Parties, regarding the status and progress of the BAP.  The monthly (or quarterly) report will include, without limitation, information regarding activity in the BAP, including:  (a) the number and identity of Retired NFL Football Players with pending BAP appointments, (b) the monthly and total number of Retired NFL Football Players who took part in the BAP, and the identity of each Settlement Class Member who took part in the preceding month; (c) the monthly and total monetary amounts paid to Qualified BAP Providers; (d) the monthly and total number of Retired NFL Football Players eligible for BAP Supplemental Benefits, as set forth in Section 5.11, and the identity of each such Retired NFL Football Player; (e) any Retired NFL Football Player complaints regarding specific Qualified BAP Providers; (f) expenses/administrative costs, including a summary accounting of the administrative expenses incurred by the BAP Administrator in the preceding month; and (g) any other information reasonably requested by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel, or Counsel for the NFL Parties.

(vi)     Beginning on the first January after the Effective Date, the BAP Administrator will provide annual financial reports to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel and Counsel for the NFL Parties, based on information from the preceding year, regarding:  (a) the number of Retired NFL Football Players who took part in the BAP; (b) the monetary amount paid to Qualified BAP Providers; (c) the number of Retired NFL Football Players eligible for BAP Supplemental Benefits; (d) the

22

expenses/administrative costs incurred by the BAP Administrator; (e) the projected expenses/administrative costs for the remainder of the BAP, including the five-year period for the provision of BAP Supplemental Benefits as set forth in Sections 5.5 and 5.11; (f) the monies remaining in the BAP Fund; and (g) any other information reasonably requested by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel, or Counsel for the NFL Parties.

(b)    <u>Compensation and Expenses</u>.  Reasonable compensation of the BAP Administrator, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and reasonable out-of-pocket costs and expenses directly incurred as a result of the BAP Administrator's responsibilities will be paid out of the BAP Fund.  The BAP Administrator shall submit an annual budget to the Court for review and approval.  Either Co-Lead Class Counsel or Counsel for the NFL Parties may challenge the reasonableness of the BAP Administrator's out-of-pocket costs and expenses, in which case the Court will determine (or may, in its discretion, refer the challenge to the Special Master to determine) the reasonableness of such costs and expenses.  If the Court or Special Master, as applicable, determines that any costs and expenses are unreasonable, the BAP Administrator will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the BAP Administrator will refund that amount to the BAP Fund.

(c)    <u>Liability</u>.  The Parties, Class Counsel, Counsel for the NFL Parties, and the Special Master, and their respective Affiliates, will not be liable for any act, or failure to act, of the BAP Administrator.

(d)    <u>Replacement</u>.  The BAP Administrator may be replaced by joint motion made by Co-Lead Class Counsel and Counsel for the NFL Parties, or for cause by motion of either Co-Lead Class Counsel or Counsel for the NFL Parties, upon order of the Court.  If the BAP Administrator resigns, dies, is replaced, or is otherwise unable to continue employment in this position, Co-Lead Class Counsel and Counsel for the NFL Parties will agree to and jointly recommend a new proposed BAP Administrator for appointment by the Court.

(e)    <u>Conflicts of Interest</u>.  Within ninety (90) days after the Effective Date, Co-Lead Class Counsel, Counsel for the NFL Parties, the Special Master and the BAP Administrator will establish and implement procedures to promptly detect and resolve possible conflicts of interest between the BAP Administrator, including, without limitation, its executive leadership team and all employees conducting BAP-related work, on the one hand, and Settlement Class Members (and counsel individually representing them, if any), the NFL Parties, Counsel for the NFL Parties, or the Special Master, on the other hand.  Co-Lead Class Counsel, Counsel for the NFL Parties, and the BAP Administrator, subject to approval of the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) may modify such procedures in the future, if appropriate.  Notwithstanding anything herein to the contrary, Co-Lead Class Counsel, Counsel for the NFL Parties, and the Special Master understand that the BAP Administrator regularly provides settlement administration, lien resolution, and other related services to settling parties and their attorneys, and Co-Lead

23

Class Counsel, Counsel for the NFL Parties, and the Special Master acknowledge and agree that it shall not be a conflict of interest for the BAP Administrator to provide such services to such individuals or to receive compensation for such work.

Section 5.7    Retention and Oversight of Qualified BAP Providers and Qualified BAP Pharmacy Vendor(s)

(a)    Qualified BAP Providers

(i)    Within ninety (90) days after the Effective Date, the BAP Administrator will establish and maintain a network of Qualified BAP Providers to provide baseline assessment examinations to Retired NFL Football Players, and to provide medical treatment to Retired NFL Football Players who receive BAP Supplemental Benefits, as set forth in Section 5.11. The BAP Administrator's selection of all Qualified BAP Providers will be subject to written approval of Co-Lead Class Counsel and Counsel for the NFL Parties, each of which will have the unconditional right to veto the selection of twenty (20) Qualified BAP Providers, in addition to the unconditional right to veto the selection of any Qualified BAP Provider who has served or is serving as a litigation expert consultant or expert witness for a party or his, her or its counsel in connection with litigation relating to the subject matter of the Class Action Complaint since July 1, 2011. Thereafter, the BAP Administrator may select additional Qualified BAP Providers during the term of the BAP to the extent necessary to effectuate network coverage, subject to written approval of Co-Lead Class Counsel and Counsel for the NFL Parties. Co-Lead Class Counsel and Counsel for the NFL Parties each shall accrue five (5) additional unconditional veto rights for every fifty (50) new Qualified BAP Providers selected and approved during the term of the BAP, and shall retain the unconditional right to veto the selection of any Qualified BAP Provider who has served or is serving as a litigation expert consultant or expert witness for a party or his, her or its counsel in connection with litigation relating to the subject matter of the Class Action Complaint since July 1, 2011.

(ii)    The BAP Administrator will select Qualified BAP Providers based on the following criteria:    (a) education, training, licensing, credentialing, board certification, and insurance coverage; (b) ability to provide the specified baseline assessment examinations under the BAP; (c) ability to provide medical services under the BAP Supplemental Benefits; (d) ability to provide all required examinations and services in a timely manner; (e) geographic proximity to Retired NFL Football Players; and (f) rate structure and payment terms. Under no circumstances will a Qualified BAP Provider be selected or approved who has been convicted of a crime of dishonesty, or who is serving on or after the Final Approval Date as a litigation expert consultant or expert witness for an Opt Out, or his, her or its counsel in connection with litigation relating to the subject matter of the Class Action Complaint. If selected and approved, under no circumstances shall a Qualified BAP Provider continue to serve in that role if convicted of a crime of dishonesty and/or thereafter retained as a litigation expert consultant or expert witness for an Opt Out, or his, her or its counsel in connection with litigation relating to the subject matter of the Class Action Complaint.

24

(iii)    In order to be eligible for selection, each Qualified BAP Provider must provide the following information to the BAP Administrator:  (a) state professional license number; (b) National Provider Identifier; (c) board-certification information, if any; (d) evidence of proper licensing and insurance coverage under applicable state laws; (e) experience, including number of years as a healthcare provider; (f) primary and additional service locations; (g) mailing and billing addresses; (h) tax identification information; (i) ability to provide the specified baseline assessment examinations; (j) capacity for new patients; (k) appointment accessibility; (l) languages spoken; (m) criminal record; (n) the percentage of his/her practice related to litigation expert/consulting engagements, including the relative percentage of such expert/consulting performed for plaintiffs, defendants and court/administrative bodies, and a general description of such engagements, since July 1, 2011; (o) list of all litigation-related engagements as a litigation expert consultant or expert witness arising out of, or relating to, head, brain and/or cognitive injury of athletes; (p) a general description of any past or present salaried, or other professional or consulting relationships with the NFL Parties or Member Clubs; and (q) such other information as the BAP Administrator may reasonably request.

(iv)    The BAP Administrator will enter into a written contract with each Qualified BAP Provider (the "Provider Contract") to provide the specified baseline assessment examinations under the BAP and authorized medical services under the BAP Supplemental Benefits.  The Provider Contract will include, among other things, a description of the baseline assessment examinations that will be provided under the BAP; rates, billing, and payment terms; terms relating to licensing, credentials, board certification, and other qualifications; the amount and type of insurance to be maintained by the Qualified BAP Provider; procedures for scheduling, rescheduling, and cancelling BAP appointments; document retention policies and procedures; and fraud policies.  The Provider Contract will further provide:  (a) that the Qualified BAP Provider will release and hold harmless the Parties, Class Counsel, Counsel for the NFL Parties, Special Master, BAP Administrator, and Claims Administrator from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, arising from or related to the services provided by that Qualified BAP Provider as part of the BAP; (b) that the Qualified BAP Provider will not seek payment from the Parties, Class Counsel, Counsel for the NFL Parties, Special Master, BAP Administrator, or Claims Administrator for any medical service(s), examination(s), and/or test(s) or any medical treatment or care that are not part of the specified baseline assessment examinations or authorized for payment under the terms of the BAP Supplemental Benefits, except that the Qualified BAP Provider may seek payment from a Retired NFL Football Player or, where applicable, his or her insurer for any medical service(s), examination(s), and/or test(s) or any medical treatment or care that are not part of the specified baseline assessment examinations or BAP Supplemental Benefits, where the Retired NFL Football Player, or, where applicable, his or her insurer, has agreed in writing to authorize and pay for such medical service(s), examination(s), and/or test(s) or any medical treatment or care; and (c) that the Qualified BAP Provider will retain medical records for Retired NFL Football Players in accordance with Section 5.10.

(1)    The Provider Contract will be drafted by the BAP Administrator, as overseen by the Special Master, and in consultation with and subject to the approval of, Co-Lead Class Counsel and Counsel for the NFL Parties.

(2)    The Provider Contract's fraud policies will contain the following warning against fraudulent conduct: "As a Qualified BAP Provider you have agreed to provide your services and make your diagnosis in good faith in accordance with best medical practices. Your diagnoses and billings will be audited on a periodic and random basis subject to the discretion of the BAP Administrator and Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof). Any finding of fraudulent diagnoses or billings by you will be subject to, without limitation, referral to appropriate regulatory and disciplinary boards and agencies and/or federal authorities, the immediate termination of this contract, and your disqualification from serving as a diagnosing physician in any aspect of the Class Action Settlement."

(v)    The BAP Administrator will audit the credentialing and performance of Qualified BAP Providers on an annual (or, as needed, more frequent) basis. The criteria and process for the audit will be overseen by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) and subject to the approval of Co-Lead Class Counsel and Counsel for the NFL Parties, except Co-Lead Class Counsel or Counsel for the NFL Parties shall maintain the right to order audits of specific Qualified BAP Providers under this subparagraph, on the basis of good cause, at any time during the BAP, including the five-year period for the provision of BAP Supplemental Benefits as set forth in Sections 5.5 and 5.11. The BAP Administrator may conduct onsite visits at the locations of Qualified BAP Providers on a random or adverse selection basis to confirm their compliance with the Provider Contract described in Section 5.7(a)(iv).

(vi)    All Qualified BAP Providers will bill the BAP Administrator directly for any services rendered pursuant to the terms and conditions of the BAP. The BAP Administrator will establish procedures to ensure that the BAP Fund is the primary payer for BAP baseline assessment examinations and treatments under the BAP Supplemental Benefits, subject to the coverage limits of the BAP Supplemental Benefits, consistent with the Provider Contract, which will be executed by the BAP Administrator and each participating Qualified BAP Provider. The BAP Administrator will establish and administer a system to audit Qualified BAP Providers' procedures for billing and providing BAP baseline assessment examinations and BAP Supplemental Benefits treatments. This audit system will be designed to detect billing errors that could result in overpayment or the payment of unauthorized medical services. The BAP Administrator will bring abusive and fraudulent Qualified BAP Provider billings to the attention of the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel and Counsel for the NFL Parties.

26

(vii)    The BAP Administrator may terminate the Provider Contract of any Qualified BAP Providers that are not in compliance with its terms, or for other cause.

(b)    Qualified Pharmacy Vendor(s)

(i)    Within ninety (90) days after the Effective Date, the BAP Administrator will contract with one or more Qualified BAP Pharmacy Vendor(s) to provide pharmaceuticals covered by the BAP Supplemental Benefits, as set forth in Section 5.11.  The BAP Administrator's selection of the Qualified BAP Pharmacy Vendor(s) will be subject to written approval of the Special Master, in consultation with Co-Lead Class Counsel and Counsel for the NFL Parties.

(ii)    The BAP Administrator will select Qualified BAP Pharmacy Vendor(s) based on the following criteria:  (a) proper licensing for operation as a mail order pharmacy in all U.S. states and territories; (b) nationwide coverage and ease of administration; and (c) rate structure and payment terms.

(iii)    In order to be eligible for selection, each Qualified BAP Pharmacy Vendor must provide the following information to the BAP Administrator:  (a) federal DEA and/or state license numbers, as applicable; (b) evidence of proper licensing under applicable state laws; (c) experience, including number of years as a mail order pharmacy; (d) information about processes required to submit and fulfill mail order prescriptions; (e) average processing and delivery time from submission of a valid prescription; (f) policies related to generic substitution of name-brand pharmaceutical products; (g) mailing and billing addresses; (h) tax identification information; (i) languages spoken; and (j) such other information as the BAP Administrator may reasonably request.

(iv)    The BAP Administrator will enter into a written contract with each Qualified BAP Pharmacy Vendor (the "Pharmacy Contract") to provide the pharmaceuticals covered under the BAP Supplemental Benefits.  The Pharmacy Contract will include, among other things, a description of the pharmaceutical therapies that will be covered under the BAP Supplemental Benefits; rates, billing, and payment terms; terms relating to qualifications; procedures for submitting, filling, and shipping prescriptions; document retention policies and procedures; and fraud policies.  The Pharmacy Contract will further provide:  (a) that the Qualified BAP Pharmacy Vendor will release and hold harmless the Parties, Class Counsel, Counsel for the NFL Parties, Special Master, BAP Administrator, and Claims Administrator from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, arising from or related to the services provided by that Qualified BAP Pharmacy Vendor as part of the BAP; and (b) that the Qualified BAP Pharmacy Vendor will not seek payment from the Parties, Class Counsel, Counsel for the NFL Parties, Special Master, BAP Administrator, or Claims Administrator for any prescriptions that are authorized for payment under the terms of the BAP Supplemental Benefits.

27

(v)    The BAP Administrator will audit the performance of Qualified BAP Pharmacy Vendor(s) on an annual (or, as needed, more frequent) basis. The criteria and process for the audit will be overseen by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) and subject to the approval of Co-Lead Class Counsel and Counsel for the NFL.

(vi)    All Qualified BAP Pharmacy Vendors will be reimbursed by the BAP Administrator directly for any services rendered pursuant to the terms and conditions of the BAP, subject to the coverage limits of the BAP Supplemental Benefits. The BAP Administrator will establish procedures to ensure that the BAP Fund is the primary payer for covered prescriptions consistent with the Pharmacy Contract, which will be executed by the BAP Administrator and each participating Qualified BAP Provider. The BAP Administrator will establish and administer a system to audit Qualified BAP Pharmacy Vendor(s)' procedures for billing and providing approved BAP Supplemental Benefits prescriptions. This audit system will be designed to detect billing errors that could result in overpayment or the payment of unauthorized prescriptions. The BAP Administrator will bring abusive and fraudulent Qualified BAP Pharmacy Vendor billings to the attention of the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel and Counsel for the NFL Parties.

(vii)    The BAP Administrator may terminate the Pharmacy Contract of any Qualified BAP Pharmacy Vendor that is not in compliance with its terms, or for other cause.

Section 5.8    Scheduling and Providing Baseline Assessment Examinations. The Parties will establish, subject to Court approval, processes and procedures governing the scheduling and provision of BAP examinations.

Section 5.9    Other Communications with Retired NFL Football Players

(a)    The BAP Administrator will send an Explanation of Benefits ("EOB") statement to each Retired NFL Football Player following a BAP appointment. The statement will describe the services and medical examinations that were performed during the appointment.

(b)    Beginning one (1) year after the Effective Date of the Settlement Agreement, the BAP Administrator will send Retired NFL Football Players who have not received baseline assessments and remain eligible to do so, an annual statement describing the BAP and requesting that they update any contact information that has changed in the preceding year.

(c)    If a Retired NFL Football Player is represented by counsel and has provided such notice to the BAP Administrator, the BAP Administrator will copy his counsel of record on any written communications with the Retired NFL Football Player.

28

Section 5.10    Use and Retention of Medical Records

(a)    All Retired NFL Football Players who participate in the BAP will be encouraged to provide their confidential medical records for use in medical research into cognitive impairment and safety and injury prevention with respect to football players.  The provision of such medical records shall be subject to the reasonable informed consent of the Retired NFL Football Players, and in compliance with applicable law, including a HIPAA-compliant authorization form.  Medical records and information used in medical research will be kept confidential.

(b)    The BAP Administrator will retain the medical records of Retired NFL Football Players and other program-defined forms that must be completed by the Qualified BAP Providers.

(c)    Qualified BAP Providers who provide BAP baseline assessment examinations will be required to retain all medical records from such visits in compliance with applicable state and federal laws; provided, however, that each Qualified BAP Provider will be required to retain all medical records in the format(s) prescribed by applicable state and federal laws and, notwithstanding any shorter time period permitted under applicable laws, will be required to retain such medical records for not less than ten (10) years after the conclusion of the BAP term.

(d)    All Retired NFL Football Player medical records will be treated as confidential, as set forth in Section 17.2.

Section 5.11    BAP Supplemental Benefits.  Each Retired NFL Football Player diagnosed by Qualified BAP Providers with a Level 1 Neurocognitive Impairment, as defined in Exhibit 1, shall be eligible for BAP Supplemental Benefits related to the Retired NFL Football Player's impairment in the form of medical treatment, counseling and/or examination by Qualified BAP Providers, including, if medically needed and prescribed by a Qualified BAP Provider, pharmaceuticals by Qualified BAP Pharmacy Vendor(s).  BAP Supplemental Benefits shall comprise medical treatments and/or examinations generally accepted by the medical community.  The BAP Supplemental Benefits must be used within the term of the BAP or within five (5) years of diagnosis of Level 1 Neurocognitive Impairment by Qualified BAP Providers, even if the five (5) year period extends beyond the term of the BAP, whichever is later.  The BAP Administrator, as overseen by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), and in consultation with, and subject to the approval of, Co-Lead Class Counsel and Counsel for the NFL Parties, will establish the procedures governing BAP Supplemental Benefits.

Section 5.12    Diagnosing Physician Certifications.    Qualified BAP Providers who diagnose a Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment, as set forth in Exhibit 1, must support that diagnosis with a Diagnosing Physician Certification and supporting medical records. The Qualified BAP Provider must provide the Diagnosing Physician Certification and

29

**-901-**

copies of the supporting medical records to the Retired NFL Football Player, his counsel (if any), and the BAP Administrator.

Section 5.13    Conflicting Opinions of Qualified BAP Providers.  If there is a lack of agreement, as required by Section 5.2 and Exhibit 1, between the two Qualified BAP Providers regarding whether a Retired NFL Football Player has Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, or none, the BAP Administrator may in its discretion:  (a) request that the Qualified BAP Providers confer with each other in an attempt to resolve the conflict; (b) request that a second BAP baseline assessment examination be conducted by different Qualified BAP Providers; or (c) refer the results of the BAP baseline assessment examination and all relevant medical records to a member of the Appeals Advisory Panel for review and decision.  The decision of the member of the Appeals Advisory Panel will determine whether the Retired NFL Football Player has Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, or none.  If the member of the Appeals Advisory Panel determines that additional review, analysis and/or testing needs to be conducted prior to a decision, such review, analysis and/or testing will be completed by Qualified BAP Providers as selected by the BAP Administrator.  The decision of the Appeals Advisory Panel member as to whether the Retired NFL Football Player has Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, or none, will be final and binding, except a claim for a Monetary Award or Derivative Claimant Award relying on such diagnosis may still be appealed, as set forth in Section 9.5.  The member of the Appeals Advisory Panel must support the decision with a Diagnosing Physician Certification.

Section 5.14    Funding.

(a)    All aspects of the BAP, including, without limitation, its costs and expenses, payment of Qualified BAP Providers, compensation of the BAP Administrator, and BAP Supplemental Benefits, will be paid from the BAP Fund.  Any funds remaining in the BAP Fund at the conclusion of the five-year period for the provision of BAP Supplemental Benefits, as set forth in Sections 5.5 and 5.11, shall be transferred to the Settlement Trust for transfer by the Trustee into the Monetary Award Fund.

(b)    In order to ensure sufficient funds to pay for a baseline assessment examination for each eligible Retired NFL Football Player, as set forth in Section 5.2 and subject to Sections 5.14(a), 23.1(b) and 23.3(d) of this Agreement, the maximum per player BAP Supplemental Benefit payable under this Section, taking into account such factors as the number of Retired NFL Football Players using the BAP and diagnosed with Level 1 Neurocognitive Impairment, shall be determined on the one-year anniversary of the commencement of the BAP by Co-Lead Class Counsel and Counsel for the NFL Parties, in consultation with the BAP Administrator, and with the approval of the Court. The maximum per player benefit will be set at a sufficient level to ensure that there will be sufficient funds, without exceeding the Seventy-Five Million United States Dollars (U.S. $75,000,000) cap on the BAP Fund, to pay for every eligible Retired NFL

Football Player to receive one baseline assessment examination. At the conclusion of the term of the BAP, and at such other times as the Court may direct or as may be requested by Co-Lead Class Counsel or Counsel for the NFL Parties, Co-Lead Class Counsel and Counsel for the NFL Parties will review and adjust, if necessary, this maximum benefit, in consultation with the BAP Administrator and with the approval of the Court, to ensure that there are sufficient funds to pay for all baseline assessment examinations without exceeding the Seventy-Five Million United States Dollar (U.S. $75,000,000) cap on the BAP Fund.

## ARTICLE VI
## Monetary Awards for Qualifying Diagnoses

Section 6.1    Eligible Retired NFL Football Players and Representative Claimants will be entitled to Monetary Awards as set forth in this Article.

Section 6.2    Eligibility

(a)    A Settlement Class Member who is a Retired NFL Football Player or Representative Claimant is eligible for a Monetary Award if, and only if:  (i) the Settlement Class Member timely registered to participate in the Class Action Settlement, as set forth in Section 4.2; (ii) the subject Retired NFL Football Player or deceased Retired NFL Football Player was diagnosed with a Qualifying Diagnosis; and (iii) the Settlement Class Member timely submits a Claim Package, subject to the terms and conditions set forth in ARTICLE VIII.

(b)    A Representative Claimant of a deceased Retired NFL Football Player will be eligible for a Monetary Award only if the deceased Retired NFL Football Player died on or after January 1, 2006, or if the Court determines that a wrongful death or survival claim filed by the Representative Claimant would not be barred by the statute of limitations under applicable state law as of:  (i) the date the Representative Claimant filed litigation against the NFL (and, where applicable, NFL Properties) relating to the subject matter of these lawsuits, if such wrongful death or survival claim was filed prior to the Settlement Date; or (ii) the Settlement Date, where no such suit has previously been filed.

Section 6.3    Qualifying Diagnoses

(a)    The following, as defined in Exhibit 1, are Qualifying Diagnoses eligible for a Monetary Award:  (a) Level 1.5 Neurocognitive Impairment; (b) Level 2 Neurocognitive Impairment; (c) Alzheimer's Disease; (d) Parkinson's Disease; (e) Death with CTE; and (f) ALS.  All Qualifying Diagnoses must be made by properly credentialed physicians as set forth below for the particular Qualifying Diagnosis, consistent with Exhibit 1 (Injury Definitions).

(b)    Following the Effective Date, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS shall be made only by Qualified MAF Physicians, except that a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment or Level 2

31

Neurocognitive Impairment may also be made by Qualified BAP Providers as set forth in Section 5.2 and consistent with the terms of Exhibit 1 (Injury Definitions).

(i)   Any licensed neuropsychologist who assists a Qualified MAF Physician in making a Qualifying Diagnosis must be certified by the American Board of Professional Psychology (ABPP) or the American Board of Clinical Neuropsychology (ABCN), a member board of the American Board of Professional Psychology, in the specialty of Clinical Neuropsychology.

(c)   From the date of the Preliminary Approval and Class Certification Order through the Effective Date, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS shall be made only by board-certified neurologists, board-certified neurosurgeons, or other board-certified neuro-specialist physicians, except as set forth in Section 6.3(e).

(d)   Prior to the date of the Preliminary Approval and Class Certification Order, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS shall be made only by board-certified neurologists, board-certified neurosurgeons, or other board-certified neuro-specialist physicians, or otherwise qualified neurologists, neurosurgeons, or other neuro-specialist physicians, except as set forth in Section 6.3(e).

(e)   For a Retired NFL Football Player deceased prior to the Effective Date, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS, which was rendered while the Retired NFL Football Player was living by a physician not otherwise identified in Sections 6.3 (b)-(d) but who has sufficient qualifications (i) in the field of neurology to make a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS, or (ii) in the field of neurocognitive disorders to make a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment, is permitted.

(f)   A Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order, through a post-mortem diagnosis by a board-certified neuropathologist of CTE.

Section 6.4   Qualifying Diagnosis Review by Appeals Advisory Panel.

(a)   A member of the Appeals Advisory Panel must review, as set forth in Section 6.4(b), Qualifying Diagnoses made prior to the Effective Date by:

(i)   A board-certified neurologist, board-certified neurosurgeon, or other board-certified neuro-specialist physician, who is not a Qualified MAF Physician, between July 1, 2011 and the Effective Date;

32

**-904-**

(ii)     A neurologist, neurosurgeon, or other neuro-specialist physician, who is not board-certified but is otherwise qualified; and

(iii)     A physician who is not a Qualified MAF Physician and who is not otherwise identified in Section 6.4(a)(i)-(ii) but who has sufficient qualifications (i) in the field of neurology to make a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS, or (ii) in the field of neurocognitive disorders to make a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment.

(b)     If a review of a Qualifying Diagnosis by a member of the Appeals Advisory Panel is required by Section 6.4(a), the contents of the Claim Package relevant to the Qualifying Diagnosis, including the Claim Form, the Diagnosing Physician Certification, medical records supporting and reflecting the Qualifying Diagnosis, and any other related materials concerning the Qualifying Diagnosis, shall be submitted to a member of the Appeals Advisory Panel for review.  The Appeals Advisory Panel member will determine whether the Retired NFL Football Player or deceased Retired NFL Football Player has the Qualifying Diagnosis reported in the Diagnosing Physician Certification, or, where there is no Diagnosing Physician Certification as set forth in Section 8.2(a)(i), reported in the Claim Package submitted by the Representative Claimant.  The Appeals Advisory Panel member shall review the Qualifying Diagnosis based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 (Injury Definitions), including consideration of, without limitation, the qualifications of the diagnosing physician, the supporting medical records and the year and state of medicine in which the Qualifying Diagnosis was made.  The Appeals Advisory Panel member also shall confirm that the Qualifying Diagnosis was made by an appropriate physician as set forth in Section 6.3.  For the avoidance of any doubt, the review of whether a Qualifying Diagnosis is based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 (Injury Definitions) does not require identical diagnostic criteria, including without limitation, the same testing protocols or documentation requirements.

(i)     The review by a member of the Appeals Advisory Panel under this subsection, absent extraordinary circumstances impacting the schedule of such member, shall be completed within forty-five (45) days of the date on which he or she receives a Settlement Class Member's file, except such time limit may be altered to the extent the volume of files warrants, either by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), or by application by Co-Lead Class Counsel or Counsel for the NFL Parties to the Court.  The Qualifying Diagnoses shall generally be reviewed in the order in which they are received.

Section 6.5    Qualified MAF Physicians

(a)    Within ninety (90) days after the Effective Date, the Claims Administrator will establish and maintain a list of Qualified MAF Physicians eligible to provide Qualifying Diagnoses.  Each Qualified MAF Physician shall be approved by Co-Lead Class Counsel and Counsel for the NFL Parties, which approval shall not be unreasonably withheld.  To the extent a Retired NFL Football Player is examined by a Qualified MAF Physician, such visit and examination shall be at the Retired NFL Football Player's own expense.

(b)    The Claims Administrator will select Qualified MAF Physicians based on the following criteria:  (a) education, training, licensing, credentialing, board certification, and insurance coverage; (b) ability to provide the specified examinations necessary to make Qualifying Diagnoses; (c) ability to provide all required examinations and services in a timely manner; (d) insurance accessibility; and (e) geographic proximity to Retired NFL Football Players.  Under no circumstances will a Qualified MAF Physician be selected or approved who has been convicted of a crime of dishonesty, or who is serving on or after the Final Approval Date as a litigation expert consultant or expert witness for an Opt Out, or his, her or its counsel in connection with litigation relating to the subject matter of the Class Action Complaint.  If selected and approved, under no circumstances shall a Qualified MAF Physician continue to serve in that role if convicted of a crime of dishonesty and/or thereafter retained as a litigation expert consultant or expert witness for an Opt Out, or his, her or its counsel in connection with litigation relating to the subject matter of the Class Action Complaint.

(c)    In order to be eligible for selection, each Qualified MAF Physician must provide the following information to the Claims Administrator: (a) state professional license number; (b) National Provider Identifier; (c) board-certification information; (d) evidence of proper licensing and insurance coverage under applicable state laws; (e) experience, including number of years as a healthcare provider; (f) primary and additional service locations; (g) mailing and billing addresses; (h) tax identification information; (i) ability to provide all required examinations and services in a timely manner; (j) capacity for new patients; (k) appointment accessibility; (l) languages spoken; (m) criminal record; (n) the percentage of his/her practice related to litigation expert/consulting engagements, including the relative percentage of such expert/consulting performed for plaintiffs, defendants, and court/administrative bodies, and a general description of such engagements, since July 1, 2011; (o) list of all litigation-related engagements as a litigation expert consultant or expert witness arising out of, or relating to, head, brain and/or cognitive injury of athletes; (p) a general description of any past or present salaried, or other professional or consulting relationships with the NFL Parties or Member Clubs; and (q) such other information as the Claims Administrator may reasonably request.

Section 6.6    Modification of Qualifying Diagnoses

(a)    Subject to the constraints of Section 6.6(b), following the Effective Date, on a periodic basis not to exceed once every ten (10) years, Co-Lead

34

**-906-**

Class Counsel and Counsel for the NFL Parties agree to discuss in good faith possible prospective modifications to the definitions of Qualifying Diagnoses and/or the protocols for making Qualifying Diagnoses, in light of generally accepted advances in medical science. No such modifications can be made absent written agreement between Co-Lead Class Counsel and Counsel for the NFL Parties and approval by the Court, and neither Co-Lead Class Counsel nor Counsel for the NFL Parties shall seek modification to the definitions of Qualifying Diagnoses and/or the protocols for making Qualifying Diagnoses other than with the written agreement of the other regarding such modifications.

(b)    Monetary Awards, consistent with the terms of this Settlement Agreement, shall compensate Settlement Class Members only in circumstances where a Retired NFL Football Player manifests actual cognitive impairment and/or actual neuromuscular impairment, or a deceased Retired NFL Football Player manifested actual cognitive impairment and/or actual neuromuscular impairment while living. For the avoidance of any doubt, the identification of a condition—for example, through a blood test, genetic test, imaging technique, or otherwise—that has not yet resulted in actual cognitive impairment and/or actual neuromuscular impairment experienced by the Retired NFL Football Player does not qualify as a Qualifying Diagnosis. As such, Co-Lead Class Counsel and Counsel for the NFL Parties have defined the Qualifying Diagnoses to require an actual manifestation of cognitive impairment and/or an actual manifestation of neuromuscular impairment. Consistent with Section 6.6(a), Co-Lead Class Counsel and Counsel for the NFL Parties will address possible advances in science to effectuate this mutual intent. For the avoidance of doubt, this subsection does not apply to the Qualifying Diagnosis of Death with CTE. This subsection also does not alter the Qualifying Diagnoses definitions, as set forth in Exhibit 1.

(c)    In no event will modifications be made to the Monetary Award levels in the Monetary Award Grid, except for inflation adjustment(s) as set forth in Section 6.9.

Section 6.7    Determination of Monetary Awards

(a)    Settlement Class Members who the Claims Administrator determines are entitled to Monetary Awards will be compensated in accordance with the terms of the Monetary Award Grid and all applicable Offsets, as set forth in Exhibit 3 and below, except such compensation will be reduced by one percent (1%) to the extent that any Derivative Claimants submit for, and are entitled to, a Derivative Claimant Award based upon their relationships with the Retired NFL Football Player, as set forth in ARTICLE VII.

(b)    Offsets. All Monetary Awards will be subject to downward adjustments, including based on a Settlement Class Member's age at the time of the Qualifying Diagnosis (as reflected in the Monetary Award Grid, as set forth in Exhibit 3), and as follows:

   (i)    <u>Number of Eligible Seasons</u>:

      (1)   4.5 Eligible Seasons:   - 10%

      (2)   4 Eligible Seasons:   - 20%

      (3)   3.5 Eligible Seasons:   - 30%

      (4)   3 Eligible Seasons:   - 40%

      (5)   2.5 Eligible Seasons:   - 50%

      (6)   2 Eligible Seasons:   - 60%

      (7)   1.5 Eligible Seasons:   - 70%

      (8)   1 Eligible Season:   - 80%

      (9)   0.5 Eligible Seasons:   - 90%

      (10)   0 Eligible Seasons:   - 97.5%

    (ii)    <u>Medically diagnosed Stroke occurring prior to a Qualifying Diagnosis</u>: - 75%

    (iii)    <u>Medically diagnosed Traumatic Brain Injury occurring prior to a Qualifying Diagnosis</u>: - 75%

    (iv)    <u>Non-participation in the BAP by a Retired NFL Football Player in Subclass 1, except where the Qualifying Diagnosis is of ALS or if he receives any Qualifying Diagnosis prior to his deadline to receive a BAP baseline assessment examination as set forth in Section 5.3</u>: - 10%

    (c)    For purposes of calculating the total number of Eligible Seasons earned by a Retired NFL Football Player or deceased Retired NFL Football Player under this Settlement Agreement, each Eligible Season and each half of an Eligible Season for which the subject Retired NFL Football Player did not otherwise earn an Eligible Season, will be summed together to reach a total number of Eligible Seasons (*e.g.*, 3.5 Eligible Seasons).

    (i)    For the avoidance of any doubt, seasons in the World League of American Football, the NFL Europe League, or the NFL Europa League are specifically excluded from the calculation of an Eligible Season.

    (d)    If the Retired NFL Football Player receives a Qualifying Diagnosis prior to a medically diagnosed Stroke or a medically diagnosed Traumatic Brain Injury, then the 75% Offset for medically diagnosed Stroke or medically diagnosed Traumatic Brain Injury will not apply. If the Retired NFL Football Player receives a Qualifying Diagnosis subsequent to a medically diagnosed Stroke or a medically

diagnosed Traumatic Brain Injury, and if the Settlement Class Member demonstrates, by clear and convincing evidence, that the Qualifying Diagnosis was not causally related to the Stroke or the Traumatic Brain Injury, then the 75% Offset will not apply.

(e)    Multiple Offsets will be applied individually and in a serial manner to any Monetary Award.  For example, if the Monetary Award before the application of Offsets is $1,000,000, and two 10% Offsets apply, there will be a 19% aggregate downward adjustment of the award (*i.e.*, application of the first Offset will reduce the award by 10%, or $100,000, to $900,000, and application of the second Offset will reduce the award by an additional 10%, or $90,000, to $810,000).

Section 6.8    Supplemental Monetary Awards.  If, during the term of the Monetary Award Fund, a Retired NFL Football Player who has received a Monetary Award based on a certain Qualifying Diagnosis subsequently is diagnosed with a different Qualifying Diagnosis, the Retired NFL Football Player (or his Representative Claimant, if applicable) may be entitled to a Supplemental Monetary Award.  If the Monetary Award level in the Monetary Award Grid ("Grid Level") for the subsequent Qualifying Diagnosis is greater than the Grid Level  for the earlier Qualifying Diagnosis, the Retired NFL Football Player (or his Representative Claimant, if applicable) will be entitled to a payment that is equal to the Grid Level for the subsequent Qualifying Diagnosis, after application of all applicable Offsets, minus the Grid Level for the earlier Qualifying Diagnosis, after application of all applicable Offsets, but prior to any deductions for the satisfaction of Liens.  In other words, any amounts deducted from the earlier Monetary Award to satisfy Liens will not be considered in the calculation of the Supplemental Monetary Award, which may also require an amount deducted to satisfy any subsequent Liens.  (By way of example only, a Retired NFL Football Player who receives a Monetary Award for Level 1.5 Neurocognitive Impairment that is $1,000,000 after application of all Offsets, which is then reduced by $20,000 to $980,000 to satisfy a Lien, and who later receives a Qualifying Diagnosis for Level 2 Neurocognitive Impairment that would pay $1,200,000 after application of all Offsets, where there are no additional Liens, shall be entitled to a Supplemental Monetary Award of $200,000.)

Section 6.9    Inflation Adjustment.  Monetary Award amounts set forth in Exhibit 3 will be subject to an annual inflation adjustment, beginning one year after the Effective Date, not to exceed two and a half percent (2.5%), the precise amount subject to the sound judgment of the Special Master (or the Court after expiration of the term of the Special Master) based on consideration of the Consumer Price Index for Urban Consumers (CPI-U).

Section 6.10    Monetary Award Fund Term.  The Monetary Award Fund will commence on the Effective Date and will end sixty-five (65) years after the Effective Date.

37

## ARTICLE VII
## Derivative Claimant Awards

Section 7.1    All Settlement Class Members who are Derivative Claimants seeking Derivative Claimant Awards must do so through the submission of Derivative Claim Packages containing all required proof, as set forth in Section 8.2(b).

Section 7.2    Eligibility.    A Settlement Class Member who is a Derivative Claimant is entitled to a Derivative Claimant Award if, and only if:  (a) the Derivative Claimant timely registered to participate in the Class Action Settlement, as set forth in Section 4.2; (b) the Retired NFL Football Player through whom the relationship is the basis of the claim (or the Representative Claimant of a deceased or legally incapacitated or incompetent Retired NFL Football Player through whom the relationship is the basis of the claim) has received a Monetary Award; (c) the Settlement Class Member timely submits a Derivative Claim Package, subject to the terms and conditions set forth in ARTICLE VIII; and (d) the Claims Administrator determines, based on a review of the records provided in the Derivative Claim Package and applicable state law, that the Derivative Claimant has a relationship with the subject Retired NFL Football Player that properly and legally provides the right under applicable state law to sue independently and derivatively.

Section 7.3    Determination of Derivative Claimant Awards.  Settlement Class Members who the Claims Administrator determines are entitled to Derivative Claimant Awards will be compensated from the Monetary Award of the Retired NFL Football Player through whom the relationship is the basis of the claim (or his Representative Claimant), and from any Supplemental Monetary Award, in the amount of one percent (1%) of that Monetary Award and any Supplemental Monetary Award.  If there are multiple Derivative Claimants asserting valid claims based on the same subject Retired NFL Football Player, the Claims Administrator will divide and distribute the Derivative Claimant Award among those Derivative Claimants pursuant to the laws of the domicile of the Retired NFL Football Player (or his Representative Claimant, if any).

## ARTICLE VIII
## Submission and Review of Claim Packages
## and Derivative Claim Packages

Section 8.1    All Settlement Class Members applying for Monetary Awards or Derivative Claimant Awards must submit Claim Packages or Derivative Claim Packages to the Claims Administrator.

Section 8.2    Content

(a)    The content of Claim Packages will be agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and will include, without limitation:  (i) a Claim Form with the Personal Signature of the Retired NFL Football Player (or Representative Claimant) either on the Claim Form or on an acknowledgement form verifying the contents of the Claim Form; (ii) a Diagnosing Physician Certification;

38

**-910-**

(iii) medical records reflecting the Qualifying Diagnosis; (iv) a HIPAA-compliant authorization form; and (v) records in the possession, custody or control of the Settlement Class Member demonstrating employment and participation in NFL Football.

(i)    Representative Claimants of Retired NFL Football Players who died prior to the Effective Date do not need to include a Diagnosing Physician Certification in the Claim Package if the physician who provided the Qualifying Diagnosis, as set forth in Exhibit 1, also died prior to the Effective Date or was deemed by a court of competent jurisdiction legally incapacitated or incompetent prior to the Effective Date. Instead, the Representative Claimant must provide evidence of that physician's death, incapacity or incompetence and of the qualifications of the diagnosing physician. For the avoidance of any doubt, all other content of Claim Packages must be submitted, including medical records reflecting the Qualifying Diagnosis.

(ii)    In cases where a Retired NFL Football Player has received a Qualifying Diagnosis and the diagnosing physician who provided the Qualifying Diagnosis, as set forth in Exhibit 1, has died or has been deemed by a court of competent jurisdiction legally incapacitated or incompetent prior to the Effective Date, or otherwise prior to completing a Diagnosing Physician Certification, the Retired NFL Football Player (or his Representative Claimant, if applicable) may obtain a Diagnosing Physician Certification from a separate qualified physician for the Qualifying Diagnosis as specified in Exhibit 1 based on an independent examination by the qualified physician and a review of the Retired NFL Football Player's medical records that formed the basis of the Qualifying Diagnosis by the deceased or legally incapacitated or incompetent physician. If the same Qualifying Diagnosis is found by both doctors, the date of Qualifying Diagnosis used to calculate Monetary Awards shall be the date of the earlier Qualifying Diagnosis.

(b)    The content of Derivative Claim Packages will be agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and will include, without limitation: (i) a Derivative Claim Form with the Personal Signature of the Derivative Claimant either on the Derivative Claim Form or on an acknowledgement form verifying the contents of the Derivative Claim Form; and (ii) records sufficient to verify the relationship with the subject Retired NFL Football Player or deceased Retired NFL Football Player that properly and legally provides the Derivative Claimant the right under applicable state law to sue independently and derivatively.

(c)    All statements made in Claim Forms, Derivative Claim Forms, any acknowledgement forms, and Diagnosing Physician Certifications will be sworn statements under penalty of perjury.

(d)    Each Settlement Class Member has the obligation to submit to the Claims Administrator all of the documents required in Section 8.2 to receive a Monetary Award or Derivative Claimant Award.

Section 8.3    <u>Submission</u>

(a)    Settlement Class Members must submit Claim Packages and Derivative Claim Packages to the Claims Administrator in accordance with Section 30.15.

(i)    Claim Packages must be submitted to the Claims Administrator no later than two (2) years after the date of the Qualifying Diagnosis or within two (2) years after the Settlement Class Supplemental Notice is posted on the Settlement Website, whichever is later.  Failure to comply with this two (2) year time limitation will preclude a Monetary Award for that Qualifying Diagnosis, unless the Settlement Class Member can show substantial hardship that extends beyond the Retired NFL Football Player's Qualifying Diagnosis and that precluded the Settlement Class Member from complying with the two (2) year deadline, and submits the Claim Package within four (4) years after the date of the Qualifying Diagnosis or after the Settlement Class Supplemental Notice is posted on the Settlement Website, whichever is later.

(ii)    Derivative Claim Packages must be submitted to the Claims Administrator no later than thirty (30) days after the Retired NFL Football Player through whom the relationship is the basis of the claim (or the Representative Claimant of a deceased or legally incapacitated or incompetent Retired NFL Football Player through whom the relationship is the basis of the claim) receives a Notice of Monetary Award Claim Determination that provides a determination that the Retired NFL Football Player (or his Representative Claimant) is entitled to a Monetary Award.  Failure to comply with this time limitation will preclude a Derivative Claimant Award based on that Monetary Award.

(b)    Each Settlement Class Member will promptly notify the Claims Administrator of any changes or updates to the information the Settlement Class Member has provided in the Claim Package or Derivative Claim Package, including any change in mailing address.

(c)    All information submitted by Settlement Class Members to the Claims Administrator will be recorded in a computerized database that will be maintained and secured in accordance with all applicable federal, state and local laws, regulations and guidelines, including, without limitation, HIPAA.  The Claims Administrator must ensure that information is recorded and used properly, that an orderly system of data management and maintenance is adopted, and that the information is retained under responsible custody.  The Claims Administrator will keep the database in a form that grants access for claims administration use, but otherwise restricts access rights, including to employees of the Claims Administrator who are not working on claims administration for the Class Action Settlement.

(i)    The Claims Administrator and Lien Resolution Administrator, and their respective agents, representatives, and professionals who are administering the Class Action Settlement, will have access to all information submitted by Settlement Class Members to the Claims Administrator and/or Lien Resolution

40

Administrator necessary to perform their responsibilities under the Settlement Agreement.

(ii) All information submitted by Settlement Class Members to the Claims Administrator will be treated as confidential, as set forth in Section 17.2.

Section 8.4    Preliminary Review

(a) Within forty-five (45) days of the date on which the Claims Administrator receives a Claim Package or Derivative Claim Package from a Settlement Class Member, the Claims Administrator will determine the sufficiency and completeness of the required contents, as set forth in Section 8.2. To the extent the volume of claims warrants, this deadline may be extended by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof).

(b) The Claims Administrator will reject a claim submitted by a Settlement Class Member, subject to the cure provisions of Section 8.5, if the Claims Administrator has not received all required content.

Section 8.5    Deficiencies and Cure. For rejected Claim Packages or Derivative Claim Packages, the Claims Administrator will send a Notice of Deficiency to the Settlement Class Member, which Notice will contain a brief explanation of the Deficiency(ies) giving rise to rejection of the Claim Package or Derivative Claim Package, and will, where necessary, request additional information and/or documentation. The Claims Administrator will make available to the Settlement Class Member through a secure online web interface any document(s) with a Deficiency needing correction or, upon request from the Settlement Class Member, will mail the Settlement Class Member a copy of such document(s). The Notice of Deficiency will be sent no later than forty-five (45) days from the date of receipt of the Claim Package or Derivative Claim Package by the Claims Administrator. To the extent the volume of claims warrants, this deadline may be extended by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof). The Notice of Deficiency will contain a recommendation for how, if possible, the Settlement Class Member can cure the Deficiency, and will provide a reasonable deadline not less than 120 days (from the date the Notice of Deficiency is sent to the Settlement Class Member) for the Settlement Class Member to submit Deficiency cure materials. Within that time period, the Settlement Class Member will have the opportunity to cure all Deficiencies and provide any requested additional information or documentation, except that the failure to submit timely a Claim Package or Derivative Claim Package in accordance with the terms of this Settlement Agreement cannot be cured other than upon a showing of substantial hardship as set forth in Section 8.3(a)(i). Any Claim Package or Derivative Claim Package that continues to suffer from a Deficiency identified on the

41

Notice of Deficiency following the submission of documentation intended to cure the Deficiency will be denied by the Claims Administrator.

Section 8.6    Verification and Investigation

(a)    Each Settlement Class Member claiming a Monetary Award or Derivative Claimant Award will authorize the Claims Administrator and/or Lien Resolution Administrator, as applicable, consistent with HIPAA and other applicable privacy laws, to verify facts and details of any aspect of the Claim Package or Derivative Claim Package and/or the existence and amounts, if any, of any Liens. The Claims Administrator or Lien Resolution Administrator, at its sole discretion, may request additional documentation, which each Settlement Class Member agrees to provide in order to claim a Monetary Award or Derivative Claimant Award.

(b)    The Claims Administrator will have the discretion to undertake or cause to be undertaken further verification and investigation, including into the nature and sufficiency of any Claim Package or Derivative Claim Package documentation, including, without limitation, as set forth in Section 10.3.

**ARTICLE IX**
**Notice of Claim Determinations, Payments, and Appeals**

Section 9.1    Monetary Award Determination.  Based upon its review of the Claim Package, and the results of any investigations of the Settlement Class Member's claim, the Claims Administrator will determine whether a Settlement Class Member qualifies for a Monetary Award and the amount of any such Award. In order to decide whether a Settlement Class Member is entitled to a Monetary Award, and at what level, the Claims Administrator will determine whether the Retired NFL Football Player or deceased Retired NFL Football Player has a Qualifying Diagnosis according to the Diagnosing Physician Certification, including consideration of, without limitation, the qualifications of the diagnosing physician, or in the case of a deceased Retired NFL Football Player diagnosed by a deceased physician, as set forth in Section 8.2(a)(i), according to the supporting medical records. If the Claims Administrator determines that there is a Qualifying Diagnosis, it will determine the level of Monetary Award based on the Monetary Award Grid (attached as Exhibit 3) and a review of the Diagnosing Physician Certification for the age at the time of the Qualifying Diagnosis, and will review the Claim Package, including the Claim Form and medical records reflecting the Qualifying Diagnosis, for information relating to all other Offsets, and must apply all applicable Offsets to the Monetary Award. For the avoidance of any doubt, the Claims Administrator has no discretion to make a Monetary Award determination other than as set forth above.

(a)    Evidence of NFL Employment and Participation.  To the extent that the Claims Administrator determines that the Settlement Class Member has provided in the Claim Package insufficient evidence of the Retired NFL Football Player's NFL employment and participation to substantiate the claimed Eligible Seasons, the Claims Administrator will request that the NFL Parties and Member Clubs provide any

42

employment or participation records of the Retired NFL Football Player in their reasonable possession, custody or control, which the NFL Parties and Member Clubs will provide in good faith. The Claims Administrator will consider all of the evidence provided to it by the Retired NFL Football Player and the NFL Parties and Member Clubs in determining the appropriate number of Eligible Seasons to apply to the Retired NFL Football Player's claim. The Claims Administrator shall credit only the Eligible Seasons substantiated by the overall evidence. To the extent there is no objective evidence regarding an Eligible Season claimed by the Retired NFL Football Player beyond his sworn statement, the Claims Administrator will take into account the reasons offered by the Retired NFL Football Player for the lack of such objective evidence in arriving at its final decision.

(i) The assertion of NFL employment and participation in more than one (1) Eligible Season, however, must be substantiated by the Retired NFL Football Player with objective evidence beyond his sworn statement, the sufficiency of which shall be in the Claims Administrator's discretion. In the event there is no objective evidence of NFL employment and participation in more than one (1) Eligible Season, the Claims Administrator may credit the Retired NFL Football Player with one (1) or fewer Eligible Seasons consistent with Section 9.1(a).

(b)     Timing of Monetary Award Determination. The Claims Administrator will make such determination and will send a corresponding Notice of Monetary Award Claim Determination to the Settlement Class Member and the NFL Parties no later than sixty (60) days from the later of: (i) the date when a completed Claim Package that is free from all Deficiencies is received by the Claims Administrator; (ii) the date, if any, when all Deficiencies with a Settlement Class Member's Claim Package have been deemed cured by the Claims Administrator; (iii) the date, if any, on which the additional information or documentation identified in the Notice of Deficiency, if applicable, has been timely provided to the Claims Administrator; (iv) the date of a decision by a member of the Appeals Advisory Panel under Section 8.6(b); or (v) the date on which the Settlement Class Member no longer has the right to cure such Deficiencies or provide additional information or documentation, in accordance with Section 8.5; provided, however, that to the extent the volume of claims warrants, these deadlines may be extended by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof).

(c)     Notice Content

(i) Notices of Monetary Award Claim Determination that provide an adverse determination will include a short statement regarding the reasons for the adverse determination and information regarding how the Settlement Class Member can appeal the determination, as set forth in Section 9.7. An adverse Notice of Monetary Award Claim Determination does not preclude a Settlement Class Member from submitting a Claim Package in the future for a Monetary Award should the Retired NFL Football Player's medical condition change. The Claims Administrator shall develop reasonable procedures and rules to ensure the right of Settlement Class Members

43

**-915-**

to submit a Claim Package for the same or different Qualifying Diagnoses in the future, while preventing unwarranted repetitive claims that do not disclose materially changed circumstances from prior claims made by the Settlement Class Member.

(ii)    Notices of Monetary Award Claim Determination that provide a determination that the Settlement Class Member is entitled to a Monetary Award will provide:  (a) the net amount of that Monetary Award after application of Offsets; (b) a listing of the Offsets applied to that Monetary Award; (c) the Lien Resolution Administrator's determination of any amount deducted from the Monetary Award to satisfy identified Liens, as set forth in ARTICLE XI; or the Lien Resolution Administrator's determination of the "holdback" amount to be deducted from the Monetary Award under which identified Liens shall be resolved, as set forth in ARTICLE XI; (d) information regarding how the Settlement Class Member can appeal the Monetary Award determination, as set forth in Section 9.7; and (e) information regarding the timing of payment, as set forth in Section 9.3.

(d)    NFL Parties' and Co-Lead Class Counsel's Review of Claim Packages.  If a Notice of Monetary Award Determination provides a determination that the Settlement Class Member is entitled to a Monetary Award, the Claims Administrator will make the Settlement Class Member's Claim Package and the review determinations available to the NFL Parties and Co-Lead Class Counsel.

Section 9.2    Derivative Claimant Award Determination.  Based upon its review of the Derivative Claim Package, and the results of any investigations of the Derivative Claimant's claim, the Claims Administrator will determine whether a Derivative Claimant qualifies for a Derivative Claimant Award, as set forth in Section 7.3.

(a)    Timing of Derivative Claimant Award Determination.  The Claims Administrator will make such determination and will send a corresponding Notice of Derivative Claimant Award Determination to the Settlement Class Member and the NFL Parties no later than thirty (30) days from the later of:  (i) the date when a completed Derivative Claim Package that is free from all Deficiencies is received by the Claims Administrator; (ii) the date when all Deficiencies with a Settlement Class Member's Derivative Claim Package have been determined by the Claims Administrator to be satisfactorily cured; (iii) the date, if any, on which the additional information or documentation identified in the Notice of Deficiency, if applicable, has been timely provided to the Claims Administrator; or (iv) the date on which the Settlement Class Member no longer has the right to cure such Deficiencies or provide additional information or documentation, in accordance with Section 8.5; provided, however, that to the extent the volume of claims warrants, these deadlines may be extended by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof).

(b)    Notice Content

(i)    Notices of Derivative Claimant Award Determination that provide an adverse determination will include a short statement regarding the reasons for the adverse determination and information regarding how the Settlement Class Member can appeal the determination, as set forth in Section 9.7. An adverse Notice of Derivative Claimant Award Determination does not preclude a Derivative Claimant from submitting a Derivative Claim Package in the future for a Derivative Claimant Award should the Retired NFL Football Player receive a Supplemental Monetary Award or succeed on an appeal of a previously denied claim for a Monetary Award.

(ii)    Notices of Derivative Claimant Award Determination that provide a determination that the Settlement Class Member is entitled to a Derivative Claimant Award will provide: (a) the amount of that Derivative Claimant Award; (b) the Lien Resolution Administrator's determination of any amount deducted from the Derivative Claimant Award to satisfy identified Liens, as set forth in ARTICLE XI; or the Lien Resolution Administrator's determination of the "holdback" amount to be deducted from the Derivative Claimant Award under which identified Liens will be resolved, as set forth in ARTICLE XI; (c) information regarding how the Derivative Claimant can appeal the Derivative Claimant Award determination, as set forth in Section 9.7; and (d) information regarding the timing of payment, as set forth in Section 9.4.

(c)    NFL Parties' and Co-Lead Class Counsel's Review of Derivative Claim Packages. If a Notice of Derivative Claimant Award Determination provides a determination that the Settlement Class Member is entitled to a Derivative Claimant Award, the Claims Administrator will make the Settlement Class Member's Claim Package and the review determinations available to the NFL Parties and Co-Lead Class Counsel.

Section 9.3    Remuneration and Payment of Monetary Awards.

(a)    The Claims Administrator will promptly pay any Monetary Awards to Settlement Class Members who qualify under the terms of the Monetary Award Grid and all applicable Offsets after the Claims Administrator sends a Notice of Monetary Award Claim Determination; provided, however, any such payment will not occur until after the completion of the processes for (i) appealing Monetary Award determinations, as set forth in Section 9.7; (ii) auditing claims and investigating claims for fraud, as set forth in Section 10.3; (iii) identifying and satisfying Liens, as set forth in ARTICLE XI; and (iv) determining if any Derivative Claimants have filed timely, and are entitled to, Derivative Claimant Awards based on their relationship with the subject Retired NFL Football Player. Such payment shall be made consistent with Section 23.3(b)(iv) of this Settlement Agreement.

(b)    In connection with a Monetary Award issued to a Representative Claimant, the Claims Administrator will abide by all substantive laws of the domicile of such Representative Claimant concerning distribution and will not issue

45

payment until the Claims Administrator has received from the Settlement Class Member proof of such court approvals or other documents necessary to authorize payment. Where short form procedures exist concerning such distribution that do not require domiciliary court approval or supervision, the Claims Administrator is authorized to adopt those procedures as part of the claims administration process applicable to such Representative Claimant. The Claims Administrator also is authorized to adopt procedures as are approved by the Court to aid or facilitate in the payment of claims to minor, incapacitated or incompetent Settlement Class Members or their guardians.

(c)    Upon the completion of the Monetary Award Fund term, as set forth in Section 6.10, the Court shall determine the proper disposition of any funds remaining in the Monetary Award Fund consistent with the purpose of this Settlement, including to promote safety and injury prevention with respect to football players and/or the treatment or prevention of traumatic brain injuries.

Section 9.4    Remuneration and Payment of Derivative Claimant Awards

(a)    The Claims Administrator will promptly pay any Derivative Claimant Awards to Settlement Class Members who qualify; provided, however, any such payment will not occur until after expiration or completion of: (i) the time period for Derivative Claimants to file Derivative Claim Packages, as set forth in Section 8.3(a)(ii), has expired; (ii) the process for appealing Derivative Claimant Awards, including appeals by any other Derivative Claimants asserting claims based on the same Retired NFL Football Player, as set forth in Section 9.7; (iii) the process for auditing claims and investigating claims for fraud, set forth in Section 10.3; and (iv) the process for identifying and satisfying Liens, as set forth in ARTICLE XI. Such payment shall be made consistent with Section 23.3(b)(iv) of this Settlement Agreement.

(b)    In paying a Derivative Claimant Award to a minor, the Claims Administrator will abide by all substantive laws of the domicile of such Settlement Class Member concerning distribution and will not issue payment until the Claims Administrator has received from the Settlement Class Member proof of such court approvals or other documents necessary to authorize payment. Where short form procedures exist concerning such distribution that do not require domiciliary court approval or supervision, the Claims Administrator is authorized to adopt those procedures as part of the claims administration process applicable to such Settlement Class Members. The Claims Administrator also is authorized to adopt procedures as are approved by the Court to aid or facilitate in the payment of claims to minor, incapacitated or incompetent Settlement Class Members or their guardians.

Section 9.5    Scope of Appeals.    The Claims Administrator's determination as to whether a Settlement Class Member is entitled to a Monetary Award or Derivative Claimant Award under this Settlement Agreement, and/or the calculation of the Monetary Award or Derivative Claimant Award, is appealable by the Settlement Class Member, Co-Lead Class Counsel, or the NFL Parties based on their respective good faith belief that the determination by the Claims Administrator was incorrect.

Section 9.6    Appellant Fees and Limitations

(a)    Any Settlement Class Member taking an appeal will be charged a fee of One Thousand United States dollars (U.S. $1,000) by the Claims Administrator that must be paid before the appeal may proceed, which fee will be refunded if the Settlement Class Member's appeal is successful.  If the appeal is unsuccessful, the fee will be paid to the Settlement Trust for transfer by the Trustee into the Monetary Award Fund.

(b)    The NFL Parties may appeal Monetary Award or Derivative Claimant Award determinations in good faith.  To the extent that Co-Lead Class Counsel believe that the NFL Parties are submitting vexatious, frivolous or bad faith appeals, Co-Lead Class Counsel may petition the Court for appropriate relief.

Section 9.7    Submissions on Appeals

(a)    The appellant must submit to the Court his or her notice of appeal, using an Appeals Form to be agreed upon by Co-Lead Class Counsel and the NFL Parties and provided by the Claims Administrator, with written copy to the appellee(s) Settlement Class Member or the NFL Parties (as applicable), Co-Lead Class Counsel, and to the Claims Administrator, no later than thirty (30) days after receipt of a Notice of Monetary Award Claim Determination or Notice of Derivative Claimant Award Determination.  Appellants must present evidence in support of their appeal, and any written statements may not exceed five (5) single-spaced pages in length.

(b)    The appellee(s) may submit a written opposition to the appeal no later than thirty (30) days after receipt of the Appeals Form.  This written opposition must not exceed five (5) single-spaced pages in length.  The Court will not deem the lack of an opposition to be an admission regarding the merits of the appeal.  The appellant may not submit a reply.

(c)    Co-Lead Class Counsel may submit a written statement in support of or opposition to the appeal no later than fifteen (15) days after receipt of the Appeals Form or an appellee's written opposition.  This written statement must not exceed five (5) single-spaced pages in length.  The Court will not deem the lack of a statement to be an admission regarding the merits of the appeal.  The appellant and appellee(s) may each submit a reply.

Section 9.8    Review and Decision.    The Court will make a determination based upon a showing by the appellant of clear and convincing evidence.  The Court may be assisted, in its discretion, by any member of the Appeals Advisory Panel and/or an Appeals Advisory Panel Consultant.  The decision of the Court will be final and binding.

(a)     Appeals Advisory Panel and Appeals Advisory Panel Consultants

(i)     Within ninety (90) days after the Effective Date, Co-Lead Class Counsel and Counsel for the NFL Parties will agree to, and jointly recommend to the Court for appointment, the members of the Appeals Advisory Panel and the Appeals Advisory Panel Consultants.  Under no circumstances may a member of the Appeals Advisory Panel or an Appeals Advisory Panel Consultant have been convicted of a crime of dishonesty, or serve, on or after the Final Approval Date, as a litigation expert consultant or expert witness in connection with litigation relating to the subject matter of the Class Action Complaint for a party, a Member Club, or an Opt Out, or his, her or its counsel.  If selected and approved, under no circumstances shall an Appeals Advisory Panel member or Appeals Advisory Panel Consultant continue to serve in that role if convicted of a crime of dishonesty and/or thereafter retained as an expert consultant or expert witness in connection with litigation relating to the subject matter of the Class Action Complaint by a party, a Member Club, or an Opt Out, or his, her or its counsel.

(ii)     Co-Lead Class Counsel and Counsel for the NFL Parties will jointly retain the members of the Appeals Advisory Panel and the Appeals Advisory Panel Consultants appointed by the Court.

(iii)     Upon request of the Court or the Special Master, the Appeals Advisory Panel will take all steps necessary to provide sound advice with respect to medical aspects of the Class Action Settlement.

(iv)     The Court will oversee the Appeals Advisory Panel and the Appeals Advisory Panel Consultants, and may, in its discretion, request reports or information from the Appeals Advisory Panel or the Appeals Advisory Panel Consultants.

(v)     Compensation of the Appeals Advisory Panel and Appeals Advisory Panel Consultants, at a reasonable rate for their time agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, will be paid out of the Monetary Award Fund, except that compensation of an Appeals Advisory Panel member or Appeals Advisory Panel Consultant will be paid out of the BAP fund for reviewing and advising the Court whether a Retired NFL Football player has Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, or none, in cases where there are conflicting diagnoses by Qualified BAP Providers.

(vi)     Members of the Appeals Advisory Panel or the Appeals Advisory Panel Consultants may be replaced by joint motion made by Co-Lead Class Counsel and Counsel for the NFL Parties, or for cause by motion of either Co-Lead Class Counsel or Counsel for the NFL Parties, upon order of the Court.  If any member of the Appeals Advisory Panel or an Appeals Advisory Panel Consultant resigns, dies, is replaced, or is otherwise unable to continue in his or her position, Co-Lead Class Counsel

48

**-920-**

and Counsel for the NFL Parties will agree to and jointly recommend a new proposed member for appointment by the Court.

(b)    Conflicts of Interest.    Within ninety (90) days after the Effective Date, Co-Lead Class Counsel, Counsel for the NFL Parties, and the Special Master will establish and implement procedures to promptly detect and resolve possible conflicts of interest between members of the Appeals Advisory Panel or Appeals Advisory Panel Consultants, on the one hand, and an appellant or appellee(s), on the other hand.  Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval of the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) may modify such procedures in the future, if appropriate.  For the avoidance of any doubt, employment of the Special Master by any Party as an expert in unrelated matters will not constitute a conflict of interest.

(c)    Liability.    The Parties, Class Counsel, Counsel for the NFL Parties, and the Special Master, and their respective Affiliates, will not be liable for any act, or failure to act, of a member of the Appeals Advisory Panel or an Appeals Advisory Panel Consultant.

**ARTICLE X**
**Class Action Settlement Administration**

Section 10.1    Special Master

(a)    Appointment and Oversight

(i)    The Motion for Preliminary Approval of the Class Action Settlement filed by Class Counsel   will request that the Court appoint, in consultation with Co-Lead Class Counsel and Counsel for the NFL Parties, a Special Master pursuant to Federal Rule of Civil Procedure 53.

(ii)    It is the intention of the Parties that the Special Master will perform his or her responsibilities and take all steps necessary to faithfully oversee the implementation and administration of the Settlement Agreement.  The Special Master shall be appointed for a term of five (5) years commencing on the Effective Date.  The term of the Special Master shall be extended, or a new Special Master shall be appointed, for additional five-year terms for the life of the Settlement Agreement, unless the Court determines, in consultation with Co-lead Class Counsel and Counsel for the NFL Parties, that the Special Master's role is no longer necessary.

(iii)    The Special Master will maintain at all times appropriate and sufficient bonding insurance in connection with his or her performance of responsibilities under the Settlement Agreement.  The cost for this insurance will be paid out of the Monetary Award Fund.

(iv)    The Court may, at its sole discretion, request reports or information from the Special Master.  The Special Master will be responsible for reporting and providing information to the Court at such frequency and in such a manner

49

as the Court directs. The Claims Administrator may assist with such reports if requested by the Special Master.

(v)    Following the five (5) year term of the Special Master, and any extension(s) thereof, oversight of the administration of the Class Action Settlement will revert to the Court.

(b)    <u>Roles and Responsibilities</u>

(i)    The Special Master will, among other responsibilities set forth in this Settlement Agreement:

(1)    Provide reports or information that the Court may, at its sole discretion, request from the Special Master, who will be responsible for reporting and providing information to the Court at such frequency and in such a manner as the Court directs;

(2)    Oversee complaints raised by Co-Lead Class Counsel, Counsel for the NFL Parties, the BAP Administrator, Claims Administrator and/or the Lien Resolution Administrator regarding aspects of the Class Action Settlement;

(3)    Hear appeals of registration determinations, if requested by the Court, as set forth in Section 4.3(a)(iv);

(4)    Oversee the BAP Administrator, Claims Administrator and Lien Resolution Administrator, as set forth in Section 5.6(a)(iv), Section 10.2(a)(iv), and Section 11.1(a)(iv), and receive monthly and annual reports from those Administrators; and

(5)    Oversee fraud detection and prevention procedures, and review and decide the appropriate disposition of potentially fraudulent claims as further specified in Section 10.3(i).

(c)    <u>Compensation and Expenses</u>. Annual compensation of the Special Master will not exceed Two Hundred Thousand United States dollars (U.S. $200,000). The annual compensation and reasonable out-of-pocket costs and expenses of the Special Master directly incurred as a result of the performance of his or her responsibilities will be paid out of the Monetary Award Fund. Either Co-Lead Class Counsel or Counsel for the NFL Parties may challenge the reasonableness of the Special Master's out-of-pocket costs and expenses, in which case the Court will determine the reasonableness of such costs and expenses. If the Court determines that any costs and expenses are unreasonable, the Special Master will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the Special Master will refund that amount to the Monetary Award Fund.

(d)    <u>Replacement</u>. The Court, in its discretion, can replace the Special Master for good cause. If the Special Master resigns, dies, or is otherwise unable

50

**-922-**

to continue employment in this position, Co-Lead Class Counsel and Counsel for the NFL Parties may file a motion for the appointment by the Court of a new Special Master.

(e)    Conflicts of Interest.    Within ninety (90) days after the Effective Date, Co-Lead Class Counsel, Counsel for the NFL Parties, and the Special Master will establish and implement procedures to promptly detect and resolve possible conflicts of interest between the Special Master, on the one hand, and Settlement Class Members (and counsel individually representing them, if any), Class Counsel, the NFL Parties, Counsel for the NFL Parties, the BAP Administrator, the Claims Administrator, or the Lien Resolution Administrator, on the other hand.    Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval of the Court, may modify such procedures in the future, if appropriate.    For the avoidance of any doubt, employment of the Special Master by any Party as an expert in unrelated matters will not constitute a conflict of interest.

Section 10.2    Claims Administrator

(a)    Appointment and Oversight

(i)    The Motion for Preliminary Approval of the Class Action Settlement filed by Class Counsel will request that the Court appoint BrownGreer PLC as Claims Administrator.    Within ten (10) days after the Effective Date, Co-Lead Class Counsel will retain the Claims Administrator appointed by the Court.

(ii)    Co-Lead Class Counsel's retention agreement with the Claims Administrator will provide that the Claims Administrator will perform its responsibilities and take all steps necessary to faithfully implement and administer the Settlement Agreement, and will require that the Claims Administrator maintain at all times appropriate and sufficient bonding insurance in connection with its performance of its responsibilities under the Settlement Agreement.

(iii)    The Court may, at its sole discretion, request reports or information from the Claims Administrator.    The Claims Administrator will be responsible for reporting and providing information to the Court at such frequency and in such a manner as the Court directs.

(iv)    The Special Master, for the duration of his or her term, will oversee the Claims Administrator, and may, at his or her sole discretion, request reports or information from the Claims Administrator.

(v)    Beyond the reporting requirements set forth in Section 10.2(a)(iii)-(iv), beginning one month after the Effective Date, the Claims Administrator will issue a regular monthly report to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel, and Counsel for the NFL Parties during the first three years of the Monetary Award Fund, and thereafter on a quarterly basis or as reasonably agreed upon by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel and the NFL Parties, regarding the status

51

and progress of claims administration. The monthly (or quarterly) report will include, without limitation: (a) the monthly and total number of Settlement Class Members who registered timely, and the biographical information for each Settlement Class Member who registered timely in the preceding month, as set forth in Section 4.2(c); (b) the identity of each Settlement Class Member who submitted a Claim Package or Derivative Claim Package in the preceding month, the review status of such package (*e.g*, under preliminary review, subject to a Notice of Deficiency, subject to verification and investigation, received a Notice of Claim Determination), and the monthly and total number of Settlement Class Member claims for Monetary Awards and Derivative Claimant Awards; (c) the monthly and total number of Monetary Awards and Derivative Claimant Awards paid; (d) the monthly and total number of each Qualifying Diagnosis for which a Monetary Award has been paid; (e) the monthly and total number of Settlement Class Members for whom appeals are pending regarding Monetary Awards and Derivative Claimant Awards; (f) the monthly identification/breakdown of physicians diagnosing Qualifying Diagnoses and/or law firms representing Settlement Class Members who submitted claims for Monetary Awards and Derivative Claimant Awards; (g) the monthly expenses/administrative costs, including a summary accounting of the administrative expenses incurred by the Claims Administrator; and (h) any other information requested by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel, or Counsel for the NFL Parties.

(vi)     Beginning on the first January after the Effective Date, the Claims Administrator will provide annual financial reports to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel and Counsel for the NFL Parties, based on information from the preceding year, regarding: (a) the number of Settlement Class Members, broken down by Qualifying Diagnosis, who received Monetary Awards, and the corresponding number of Settlement Class Members who sought but were found by the Claims Administrator or the Court not to qualify for Monetary Awards; (b) the number of Settlement Class Members who received Derivative Claimant Awards, and the corresponding number of Settlement Class Members who sought but were found by the Claims Administrator or the Court not to qualify for Derivative Claimant Awards; (c) the monetary amounts paid through Monetary Awards and Derivative Claimant Awards, including the monetary amounts over the term of the Class Action Settlement; (d) the number of Settlement Class Members for whom appeals are pending regarding Monetary Awards and Derivative Claimant Awards; (e) the identification/breakdown of physicians diagnosing Qualifying Diagnoses and/or law firms representing Settlement Class Members who submitted claims for Monetary Awards and Derivative Claimant Awards; (f) expenses/administrative costs, including a summary accounting of the administrative expenses incurred by the Claims Administrator; (g) the projected expenses/administrative costs for the remainder of the Monetary Award Fund term; (h) the monies remaining in the Monetary Award Fund; and (i) any other information requested by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel, or Counsel for the NFL Parties.

52

(vii)     The NFL Parties may elect, at their own expense, to cause an audit to be performed by a certified public accountant of the financial records of the Claims Administrator, and the Claims Administrator shall cooperate in good faith with the audit.  Audits may be conducted at any time during the term of the Monetary Award Fund.  Complete copies of the audit findings report will be provided to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel, and Counsel for the NFL Parties.

(b)     <u>Roles and Responsibilities</u>

(i)     The Claims Administrator will, among other responsibilities set forth in this Settlement Agreement:

(1)     Maintain the Settlement Website, as set forth in Section 4.1(a);

(2)     Maintain an automated telephone system to provide information about the Class Action Settlement, as set forth in Section 4.1(b);

(3)     Establish and administer both online and hard copy registration methods, as set forth in Section 4.2(a);

(4)     Review a purported Settlement Class Member's registration and determine its validity, as set forth in Section 4.3;

(5)     Process and review Claim Packages and Derivative Claim Packages, as set forth in ARTICLE VIII;

(6)     Determine whether Settlement Class Members who submit Claim Packages and Derivative Claim Packages are entitled to Monetary Awards or Derivative Claimant Awards, as set forth in ARTICLE VI and ARTICLE VII;

(7)     Audit Claim Packages and Derivative Claim Packages, and establish and implement procedures to detect and prevent fraudulent submissions to, and payments of fraudulent claims from, the Monetary Award Fund, as set forth in Section 10.3; and

(8)     Perform such other tasks reasonably necessary to accomplish the goals contemplated by this Settlement Agreement, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties.

(c)     <u>Compensation and Expenses</u>.  Reasonable compensation of the Claims Administrator, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and reasonable out-of-pocket costs and expenses directly incurred as a result of the Claims Administrator's responsibilities set forth in this Settlement Agreement will be paid out of the Monetary Award Fund.  The Claims Administrator shall submit an annual budget to the Court for review and approval.  Either Co-Lead Class Counsel or

53

Counsel for the NFL Parties may challenge the reasonableness of the Claims Administrator's out-of-pocket costs and expenses, in which case the Court will determine (or may, in its discretion, refer the challenge to the Special Master to determine) the reasonableness of such costs and expenses. If the Court or Special Master, as applicable, determines that any costs and expenses are unreasonable, the Claims Administrator will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the Claims Administrator will refund that amount to the Monetary Award Fund.

(d)    <u>Liability</u>. The Parties, Class Counsel, Counsel for the NFL Parties, and the Special Master, and their respective Affiliates, will not be liable for any act, or failure to act, of the Claims Administrator.

(e)    <u>Replacement</u>. The Claims Administrator may be replaced by joint motion made by Co-Lead Class Counsel and Counsel for the NFL Parties, or for cause by motion of either Co-Lead Class Counsel or Counsel for the NFL Parties, upon order of the Court. If the Claims Administrator resigns, dies, is replaced, or is otherwise unable to continue employment in this position, Co-Lead Class Counsel and Counsel for the NFL Parties will jointly recommend a new proposed Claims Administrator for appointment by the Court.

(f)    <u>Conflicts of Interest</u>. Within ninety (90) days after the Effective Date, Co-Lead Class Counsel, Counsel for the NFL Parties, the Special Master and the Claims Administrator will establish and implement procedures to promptly detect and resolve possible conflicts of interest between the Claims Administrator, including, without limitation, its executive leadership team and all employees working on the Class Action Settlement, on the one hand, and Settlement Class Members and their counsel (if any), the NFL Parties, Counsel for the NFL Parties, or the Special Master, on the other hand. Co-Lead Class Counsel, Counsel for the NFL Parties, and the Claims Administrator, subject to approval of the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), may modify such procedures in the future, if appropriate. Notwithstanding anything herein to the contrary, Co-Lead Class Counsel, Counsel for the NFL Parties, and the Special Master understand that the Claims Administrator regularly provides settlement claims administration and other related services to settling parties and their attorneys, and the Special Master, Co-Lead Class Counsel, and Counsel for the NFL Parties acknowledge and agree that it shall not be a conflict of interest for the Claims Administrator to provide such services to such individuals or to receive compensation for such work.

Section 10.3    <u>Audit Rights and Detection and Prevention of Fraud</u>

(a)    Co-Lead Class Counsel and the NFL Parties each will have the absolute right and discretion, at any time, but at their sole expense, in good faith to conduct, or have conducted by an independent auditor, audits to verify Monetary Award and Derivative Claimant Award claims submitted by Settlement Class Members.

(b)    In addition, Co-Lead Class Counsel, Counsel for the NFL Parties, and the Claims Administrator will establish and implement procedures to detect

54

**-926-**

and prevent fraudulent submissions to, and payments of fraudulent claims from, the Monetary Award Fund.  Among other fraud detection and prevention procedures, the Claims Administrator, with the approval of Co-Lead Class Counsel and Counsel for the NFL Parties, will institute the following procedures relating to claim audits:

> (i)     A Settlement Class Member whose claim has been selected for audit by the Claims Administrator, Co-Lead Class Counsel or Counsel for the NFL Parties may be required to submit additional records, including medical records, and information as requested by the auditing party; and

> (ii)     A Settlement Class Member who refuses to cooperate with an audit, including by unreasonably failing or refusing to provide the auditing party with all records and information sought within the time frame specified, will have the claim denied by the Claims Administrator, without right to an appeal.

> (c)     On a monthly basis, the Claims Administrator will audit ten percent (10%) of the total Claim Packages and Derivative Claim Packages that the Claims Administrator has found to qualify for Monetary Awards or Derivative Claimant Awards during the preceding month.  The Claims Administrator will select such Claim Packages and Derivative Claim Packages for auditing on a random basis or to address a specific concern raised by a Claim Package or Derivative Claim Package, but will audit at least one Claim Package, if any qualify, each month.

> (d)     In addition, the Claims Administrator will audit Claim Packages that:  (i) seek a Monetary Award for a given Qualifying Diagnosis when the Retired NFL Football Player took part in the BAP within the prior 365 days and was not diagnosed with that Qualifying Diagnosis during the BAP baseline assessment examination; (ii) seek a Monetary Award for a given Qualifying Diagnosis when the Retired NFL Football Player submitted a different Claim Package within the prior 365 days based upon a diagnosis of that same Qualifying Diagnosis by a different physician, and that Claim Package was found not to qualify for a Monetary Award; and (iii) reflect a Qualifying Diagnosis made through a medical examination conducted at a location other than a standard treatment or diagnosis setting (*e.g.*, hotel rooms).

> (e)     Upon selection of a Settlement Class Member's Claim Package for audit, the Claims Administrator will notify Co-Lead Class Counsel, the Settlement Class Member (and his/her individual counsel, if applicable), and Counsel for the NFL Parties of the selection and will require that, within ninety (90) days, or such other time as is necessary and reasonable under the circumstances, the audited Settlement Class Member submit to the Claims Administrator, to the extent not already provided, such information as may be necessary and appropriate to audit the Claim Package, which may include the following records and information:

> (i)     All of the Retired NFL Football Player's medical records in the Settlement Class Member's possession, custody, or control that relate to the underlying medical condition that is the basis for the Qualifying Diagnosis claimed by the Settlement Class Member;

<div align="center">55</div>

       (ii)     A list of all health care providers seen by the Retired NFL Football Player in the last five (5) years;

       (iii)     The Settlement Class Member's (or subject Retired NFL Football Player's) employment records from Member Clubs or other NFL Football employers, but only to the extent that the Settlement Class Member is authorized under applicable state law or Collective Bargaining Agreement to request and receive such records from the Member Club or other NFL Football employer;

       (iv)     Such other relevant documents or information within the Settlement Class Member's possession, custody, or control as may reasonably be requested by the Claims Administrator under the circumstances, including, if necessary, authorizations to obtain the medical records of the Settlement Class Member (or subject Retired NFL Football Player) created or obtained by any health care providers seen by the Settlement Class Member (or subject Retired NFL Football Player) in the last five (5) years; and

       (v)     Where the audit is conducted because of the circumstances set forth in Section 10.3(d), authorizations to obtain the medical records of the Settlement Class Member (or subject Retired NFL Football Player) held by the primary care physician of the Retired NFL Football Player and the medical records of all other physicians or neuropsychologists who have examined the Retired NFL Football Player relating to the Qualifying Diagnosis.

       (f)     Upon selection of a Settlement Class Member's Derivative Claim Package for audit, the Claims Administrator will notify Co-Lead Class Counsel, the Settlement Class Member (and his/her individual counsel, if applicable), and Counsel for the NFL Parties of the selection and will require that, within ninety (90) days, or such other time as is necessary and reasonable under the circumstances, the audited Settlement Class Member submit to the Claims Administrator, to the extent not already provided, such information as may be necessary and appropriate to audit the Claim Package, which may include relevant documents or information within the Settlement Class Member's possession, custody, or control as may reasonably be requested by the Claims Administrator under the circumstances.

       (g)     When auditing a Settlement Class Member's claim for a Monetary Award or Derivative Claimant Award, the Claims Administrator will review the records and information relating to that claim and determine whether the Claim Form or Derivative Claim Form misrepresents, omits, and/or conceals material facts that affect the claim.

       (h)     If, upon completion of an audit, the Claims Administrator determines that there has not been a misrepresentation, omission, or concealment of a material fact made in connection with the claim, the process of issuing a Monetary Award or Derivative Claimant Award, subject to appeal, will proceed.

(i)    If, upon completion of an audit, the Claims Administrator determines that there has been a misrepresentation, omission, or concealment of a material fact made in connection with the claim, the Claims Administrator will notify the Settlement Class Member and will refer the claim to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) for review and findings.  The Special Master's review and findings shall take into account whether the misrepresentation, omission or concealment was intentional, and may include the following relief, without limitation:  (a) denial of the claim in the event of fraud; (b) additional audits of claims from the same law firm or physician (if applicable), including those already paid; (c) referral of the attorney or physician (if applicable) to the appropriate disciplinary boards; (d) referral to federal authorities; (e) disqualification of the attorney, physician and/or Settlement Class Member from further participation in the Class Action Settlement; and/or (f) if a law firm is found by the Claims Administrator to have submitted more than one fraudulent submission on behalf of Settlement Class Members, claim submissions by that law firm will no longer be accepted, and attorneys' fees paid to the firm by the Settlement Class Member will be forfeited and paid to the Settlement Trust for transfer by the Trustee into the Monetary Award Fund.

(j)    In addition, if the Claims Administrator at any time makes a finding (based on its own detection processes or from information received from Co-Lead Class Counsel or Counsel for the NFL Parties) of fraud by a Settlement Class Member submitting a claim for a Monetary Award or Derivative Claimant Award, and/or by the physician providing the Qualifying Diagnosis, including, without limitation, misrepresentations, omissions, or concealment of material facts relating to the claim, the Claims Administrator will notify the Settlement Class Member and will make a recommendation to Co-Lead Class Counsel and Counsel for the NFL Parties to refer the claim to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) for review and findings that may include, without limitation, those set forth in Section 10.3(i).

(i)    If both Co-Lead Class Counsel and Counsel for the NFL Parties do not agree with the Claims Administrator's recommendation to refer a claim to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), they will notify the Claims Administrator, who will continue with the processing of the claim.

Section 10.4    The Claims Administrator, in consultation with Co-Lead Class Counsel and Counsel for the NFL Parties, will also establish system-wide processes to detect and prevent fraud, including, without limitation, claims processing quality training and review and data analytics to spot "red flags" of fraud, including, without limitation, alteration of documents, questionable signatures, duplicative documents submitted on claims, the number of claims from similar addresses or supported by the same physician or office of physicians, data metrics indicating patterns of fraudulent submissions, and such other attributes of claim submissions that create a reasonable suspicion of fraud.

57

**ARTICLE XI**
**Identification and Satisfaction of Liens**

Section 11.1    Lien Resolution Administrator

(a)    Appointment and Oversight

(i)    The Motion for Preliminary Approval of the Class Action Settlement filed by Class Counsel, will request that the Court appoint Garretson Group as Lien Resolution Administrator. Within ten (10) days after the Effective Date, Co-Lead Class Counsel will retain the Lien Resolution Administrator appointed by the Court.

(ii)    Co-Lead Class Counsel's retention agreement with the Lien Resolution Administrator will provide that the Lien Resolution Administrator will perform its responsibilities and take all steps necessary to faithfully implement and administer the Lien-related provisions of the Settlement Agreement, and will require that the Lien Resolution Administrator maintain at all times appropriate and sufficient bonding insurance in connection with its performance of its responsibilities under the Settlement Agreement.

(iii)    The Court may, at its sole discretion, request reports or information from the Lien Resolution Administrator. The Lien Resolution Administrator will be responsible for reporting and providing information to the Court at such frequency and in such a manner as the Court directs.

(iv)    The Special Master, for the duration of his or her term, will oversee the Lien Resolution Administrator, and may, at his or her sole discretion, request reports or information from the Lien Resolution Administrator.

(b)    Roles and Responsibilities.    The Lien Resolution Administrator will, among other responsibilities set forth in this Settlement Agreement, administer the process for the identification and satisfaction of all applicable Liens, as set forth in Section 11.3. Each Settlement Class Member (and his or her respective counsel, if applicable) claiming a Monetary Award or Derivative Claimant Award, however, will be solely responsible for the satisfaction and discharge of all Liens.

(c)    Compensation and Expenses. Reasonable compensation of the Lien Resolution Administrator, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and reasonable out-of-pocket costs and expenses directly incurred as a result of the Lien Resolution Administrator's responsibilities will be paid out of the Monetary Award Fund, unless otherwise specified herein. The Lien Resolution Administrator shall submit an annual budget to the Court for review and approval. Either Co-Lead Class Counsel or Counsel for the NFL Parties may challenge the reasonableness of the Lien Resolution Administrator's out-of-pocket costs and expenses, in which case the Court will determine (or may, in its discretion, refer the challenge to the Special Master to determine) the reasonableness of such costs and expenses. If the Court or Special Master, as applicable, determines that any costs and expenses are unreasonable,

58

the Lien Resolution Administrator will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the Lien Resolution Administrator will refund that amount to the Monetary Award Fund.

(d)     Liability.  The Parties, Class Counsel, Counsel for the NFL Parties, and the Special Master, and their respective Affiliates, will not be liable for any act, or failure to act, of the Lien Resolution Administrator.

(e)     Replacement.  The Lien Resolution Administrator may be replaced by joint motion made by Co-Lead Class Counsel and Counsel for the NFL Parties, or for cause by motion of either Co-Lead Class Counsel or Counsel for the NFL Parties, upon order of the Court.  If the Lien Resolution Administrator resigns, dies, is replaced, or is otherwise unable to continue employment in this position, Co-Lead Class Counsel and Counsel for the NFL Parties will agree to and jointly recommend a new proposed Lien Resolution Administrator for appointment by the Court.

Section 11.2   Conflicts of Interest.   Within ninety (90) days after the Effective Date, Co-Lead Class Counsel, Counsel for the NFL Parties, the Special Master and the Lien Resolution Administrator will establish and implement procedures to promptly detect and resolve possible conflicts of interest between the Lien Resolution Administrator, including, without limitation, its executive leadership team and all employees working on the Class Action Settlement, on the one hand, and Settlement Class Members (and counsel individually representing them, if any), the NFL Parties, Counsel for the NFL Parties, or the Special Master, on the other hand.  Co-Lead Class Counsel, Counsel for the NFL Parties, and the Lien Resolution Administrator, subject to approval of the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), may modify such procedures in the future, if appropriate.  Notwithstanding anything herein to the contrary, Co-Lead Class Counsel, Counsel for the NFL Parties, and the Special Master understand that the Lien Resolution Administrator regularly provides lien resolution and other related services to settling parties and their attorneys, and the Special Master, Co-Lead Class Counsel, and Counsel for the NFL Parties acknowledge and agree that it shall not be a conflict of interest for the Lien Resolution Administrator to provide such services to such individuals or to receive compensation for such work.

Section 11.3   Lien Identification, Satisfaction and Discharge

(a)     Each Settlement Class Member claiming a Monetary Award or Derivative Claimant Award will identify all Liens held or asserted by Governmental Payors or Medicare Part C or Part D Program sponsors with respect to any Monetary Award or Derivative Claimant Award in his or her Claim Form or Derivative Claim Form.

(b)     Each Settlement Class Member (and counsel individually representing him or her, if any) shall cooperate with the Lien Resolution Administrator to identify all Liens held or asserted by Governmental Payors or Medicare Part C or Part D Program sponsors with respect to any Monetary Award or Derivative Claimant Award as

59

a prerequisite to receiving payment of any Monetary Award or Derivative Claimant Award, including by providing the requested information and authorizations to the Lien Resolution Administrator and/or Claims Administrator in the timeframe specified for so doing.

       (c)    Among other things, each Settlement Class Member will authorize the Lien Resolution Administrator to:

       (i)    Establish procedures and protocols to identify and resolve Liens held or asserted by Governmental Payors or Medicare Part C or Part D Program sponsors with respect to any Monetary Award or Derivative Claimant Award;

       (ii)    Undertake to obtain an agreement in writing and other supporting documentation with CMS promptly following the Effective Date that:

       (1)    Establishes a global repayment amount per Qualifying Diagnosis and/or for all or certain Qualifying Diagnoses for Settlement Class Members who are or were beneficiaries of the Medicare Program, or, alternatively, otherwise sets forth a conditional payment resolution process. Such amounts will be based on the routine costs associated with the medically accepted standard of care for the treatment and management of each Qualifying Diagnosis, as well as actual utilization of treatment by Settlement Class Members related to each Qualifying Diagnosis. The agreement, in writing, and supporting documentation with CMS will demonstrate reasonable proof of satisfaction of Medicare's Part A and/or Part B fee-for-service recovery claim in connection with Settlement Class Member's (who are or were beneficiaries of the Medicare Program) receipt of any Monetary Award or Derivative Claimant Award and any benefits provided pursuant to this Settlement Agreement.

       (2)    Establishes reporting processes recognized by CMS as satisfying the reporting obligations, if any, under the mandatory Medicare reporting requirements of Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007, 110 Pub. L. No. 173, 121 Stat. 2492 ("MMSEA") in connection with this Settlement Agreement;

       (iii)    Fulfill all state and federal reporting obligations, including those to CMS that are agreed upon with CMS;

       (iv)    Satisfy Lien amounts owed to a Governmental Payor or, to the extent identified by the Class Member pursuant to Section 11.3(a), Medicare Part C or Part D Program sponsor for medical items, services, and/or prescription drugs paid on behalf of Settlement Class Members out of any Monetary Award or Derivative Claimant Award to the Settlement Class Member pursuant to this Settlement Agreement; and

       (v)    Transmit all information received from any Governmental Payor or Medicare Part C or Part D Program sponsor pursuant to such authorizations (i) to the NFL Parties, Claims Administrator, and/or Special Master solely for purposes of verifying compliance with the MSP Laws or other similar reporting

obligations and for verifying satisfaction and full discharge of all such Liens, or (ii) as otherwise directed by the Court.

(d)     If the Lien Resolution Administrator is able to negotiate a global repayment amount for some or all of the Qualifying Diagnoses for Settlement Class Members who are or were beneficiaries of the Medicare Program with CMS, as set forth in Section 11.3(c)(ii)(1), the Lien Resolution Administrator shall: (i) satisfy such global repayment amount out of any Monetary Award to such Settlement Class Member; and (ii) provide that reasonable compensation of the Lien Resolution Administrator for such efforts, will be paid out of any Monetary Award to such Settlement Class Member.

(e)     If the Lien Resolution Administrator is unable to negotiate a global repayment amount for some or all of the Qualifying Diagnoses for Settlement Class Members who are or were beneficiaries of the Medicare Program with CMS, as set forth in Section 11.3(c)(ii)(1), the Lien Resolution Administrator will put in place a mechanism for resolving these Liens on an individual basis, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties.  In addition, the Lien Resolution Administrator will put in place a mechanism for resolving Liens owed to other Governmental Payors or  Medicare Part C or Part D Program sponsors on an individual basis, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties.  These mechanisms for resolving such Liens on an individual basis will allow the Lien Resolution Administrator to:  (i) satisfy such Lien amounts owed for medical items, services, and/or prescription drugs paid on behalf of a Settlement Class Member out of any Monetary Award to the Settlement Class Member, subject to the Settlement Class Member's right to object to the fact and/or amount of such Lien amount; and (ii) provide that the Lien Resolution Administrator's reasonable costs and expenses incurred in resolving such Liens, including the reasonable compensation of the Lien Resolution Administrator for such efforts, will be paid out of any Monetary Award to the Settlement Class Member.

(f)     The Parties further understand and agree that the Lien Resolution Administrator's performance of functions described in this Article is not intended to modify the legal and financial rights and obligations of Settlement Class Members, including the duty to pay and/or arrange for reimbursement of each Settlement Class Member's past, current, or future bills or costs, if any, for medical items, services, and/and prescription drugs, and to satisfy and discharge any and all statutory recovery obligations for any Liens.

(g)     Notwithstanding any other provision of this Settlement Agreement relating to timely payment, the Claims Administrator will not pay any Monetary Award to a Settlement Class Member who is or was entitled to benefits under a Governmental Payor program or Medicare Part C or Part D Program prior to: (i) the Lien Resolution Administrator's determination of the final amount needed to satisfy the reimbursement obligation that any Governmental Payor or Medicare Part C or Part D Program sponsor states is due and owing (as reflected in a final demand letter or other formal written communication), and satisfaction and discharge of that reimbursement obligation as evidenced by the Lien Resolution Administrator's receipt of a written

61

satisfaction and discharge from the applicable Governmental Payor or Medicare Part C or Part D Program sponsor; or (ii) the Lien Resolution Administrator's determination of the "holdback" amount to be deducted from the Monetary Award or Derivative Claimant Award under which such reimbursement obligation will be resolved.

(h)    Notwithstanding any other provision of this Settlement Agreement relating to timely payment, if any person or entity claims any Liens, other than those set forth in Section 11.3(g), with respect to a Settlement Class Member's Monetary Award or Derivative Claimant Award, then the Claims Administrator will not pay any such Monetary Award or Derivative Claimant Award if the Claims Administrator or Lien Resolution Administrator has received notice of that Lien and there is a legal obligation to withhold payment to the Settlement Class Member under applicable federal or state law.  The Claims Administrator will hold such Monetary Award or Derivative Claimant Award in an escrow account until the Settlement Class Member (and counsel individually representing him or her, if any) presents documentary proof, such as a court order or release or notice of satisfaction by the party asserting the Lien, that such Lien has been satisfied and discharged; or until the Lien Resolution Administrator's determination of the "holdback" amount to be deducted from the Monetary Award, Supplemental Monetary Award or Derivative Claimant Award under which such reimbursement obligation will be resolved.

(i)    Settlement Class Members who are or were entitled to benefits under Medicare Part C or Part D Programs may be required by statute or otherwise, when making a claim for and/or receiving compensation pursuant to this Settlement Agreement, to notify the relevant Medicare Part C or Part D Program sponsor or others of the existence of, and that Settlement Class Member's participation in, this Class Action Settlement.  It is the sole responsibility of each Settlement Class Member to determine whether he or she has such a notice obligation, and to perform timely any such notice reporting.

Section 11.4    Indemnification.  Each Settlement Class Member, on his or her own behalf, and on behalf of his or her estate, predecessors, successors, assigns, representatives, heirs, beneficiaries, executors, and administrators, in return for the benefits and consideration provided in this Settlement Agreement, will indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities, including the costs of defense and attorneys' fees of, the Released Parties against any and all claims by Other Parties arising from, relating to, or resulting from (a) any undisclosed Lien relating to, or resulting from, compensation or benefits received by a Settlement Class Member pursuant to this Class Action Settlement and/or (b) the failure of a Settlement Class Member timely and accurately to report or provide information that is necessary for compliance with the MSP Laws, or for the Lien Resolution Administrator to identify and/or satisfy all Governmental Payors or Medicare Part C or Part D Program sponsors who may hold or assert a reimbursement right.  The amount of indemnification will not exceed the total Monetary Award or Derivative Claimant Award for that Settlement Class Member's claim.  **CLASS AND SUBCLASS REPRESENTATIVES AND SETTLEMENT CLASS MEMBERS ACKNOWLEDGE THAT THIS SECTION COMPLIES**

**WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS SECTION IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.**

Section 11.5   <u>No Admission</u>.   Any reporting performed by the Lien Resolution Administrator and/or Claims Administrator for the purpose of resolving Liens, if any, related to compensation provided to Settlement Class Members pursuant to this Settlement Agreement does not constitute an admission by any Settlement Class Member or any Released Party of any liability or evidence of liability in any manner.

Section 11.6   The foregoing provisions of this Article are solely for the several benefit of the NFL Parties, the Lien Resolution Administrator, the Special Master, and the Claims Administrator.  No Settlement Class Member (or counsel individually representing them, if any) will have any rights or defenses based upon or arising out of any act or omission of the NFL Parties or any Administrator with respect to this Article.

**ARTICLE XII**
**Education Fund**

Section 12.1   An Education Fund will be established to fund programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of Retired NFL Football Players regarding the NFL CBA Medical and Disability Benefits programs and other educational initiatives benefitting Retired NFL Football Players.   The Court shall approve these education programs, with input from Co-Lead Class Counsel, Counsel for the NFL Parties and medical experts, as further set forth below.  Co-Lead Class Counsel and Counsel for the NFL Parties will agree to a protocol through which Retired NFL Football Players will actively participate in such initiatives.

Section 12.2   Co-Lead Class Counsel, with input from Counsel for the NFL Parties, and with Court approval, will take all necessary steps to establish the Education Fund and establish procedures and controls to manage and account for the disbursement of funds to the education projects and all other costs associated with the Education Fund.  The costs and expenses to administer the Education Fund will be paid out of the Education Fund Amount.

**ARTICLE XIII**
**Preliminary Approval and Class Certification**

Section 13.1   Promptly after execution, Class Counsel will file the Motion for Preliminary Approval of the Class Action Settlement and the Settlement Agreement as an exhibit thereto.  Simultaneously, the Class and Subclass Representatives will file a Motion for Certification of Rule 23(b)(3) Class and Subclasses for Purposes of Settlement.

Section 13.2   The Parties agree to take all actions reasonably necessary to obtain the Preliminary Approval and Class Certification Order from the Court.

Section 13.3   The Parties agree to jointly request that the Court stay this action and all Related Lawsuits, and enjoin all Settlement Class Members, unless and until they have been excluded from the Settlement Class by action of the Court, or until the Court denies approval of the Class Action Settlement, or until the Settlement Agreement is otherwise terminated, from filing, commencing, prosecuting, intervening in, participating in and/or maintaining, as plaintiffs, claimants, or class members in, any other lawsuit, including, without limitation, a Related Lawsuit, or administrative, regulatory, arbitration, or other proceeding in any jurisdiction (whether state, federal or otherwise), against Released Parties based on, relating to, or arising out of the claims and causes of action, or the facts and circumstances at issue, in the Class Action Complaint, Related Lawsuits and/or the Released Claims, except that claims for workers' compensation and claims alleging entitlement to NFL CBA Medical and Disability Benefits will not be stayed or enjoined.   For the avoidance of any doubt, the Parties are not requesting that the Court stay any actions against Riddell.

(a)   The Parties recognize that there may be further pleadings, discovery responses, documents, testimony, or other matters or materials owed by the Parties to each other pursuant to existing pleading requirements, discovery requests, pretrial rules, procedures, orders, decisions, or otherwise.  As of the Settlement Date, each Party expressly waives any right to receive, inspect, or hear such pleadings, discovery, testimony, or other matters or materials during the pendency of the settlement proceedings contemplated by this Settlement Agreement and subject to further order of the Court.

Section 13.4   The Parties agree that any certification of the Settlement Class and Subclasses will be for settlement purposes only.  The Parties do not waive or concede any position or arguments they have for or against certification of any class for any other purpose in any action or proceeding.  Any class certification order entered in connection with this Settlement Agreement will not constitute an admission by the NFL Parties, or finding or evidence, that the Class and Subclass Representatives' claims, or the claims of any other Settlement Class Member, or the claims of the Settlement Class, are appropriate for class treatment if the claims were contested in this or any other federal, state, arbitral, or foreign forum.  If the Court enters the proposed form of Preliminary Approval and Class Certification Order, the Final Order and Judgment will provide for vacation of the Final Order and Judgment and the Preliminary Approval and Class Certification Order in the event that this Settlement Agreement does not become effective.

Section 13.5   Upon entry of the Preliminary Approval and Class Certification Order, the statutes of limitation applicable to any and all claims or causes of action that have been or could be asserted by or on behalf of any Settlement Class Members related to the subject matter of the Settlement Agreement will be tolled and stayed to the extent not already tolled by the initiation of an action in this litigation or a Related Lawsuit.  The limitations period will not begin to run again for any Settlement Class Member unless and until he or she is deemed to have Opted Out of the Settlement Class, this Settlement Agreement is terminated pursuant to ARTICLE XVI, or a Settlement Class Member's Release and Covenant Not to Sue has been rendered null and

64

void by the Court as set forth in Section 25.6(g). In the event the Settlement Agreement is terminated pursuant to ARTICLE XVI, to the extent not otherwise tolled, the limitations period for each Settlement Class Member as to whom the limitations period had not expired as of the date of the Preliminary Approval and Class Certification Order will extend for the longer of thirty (30) days from the last required issuance of notice of termination or the period otherwise remaining before expiration. Notwithstanding the tolling agreement herein, the Parties recognize that any time already elapsed for any Class or Subclass Representatives or Settlement Class Members on any applicable statutes of limitations will not be reset, and no expired claims will be revived, by virtue of this tolling agreement. Class and Subclass Representatives and Settlement Class Members do not admit, by entering into this Settlement Agreement, that they have waived any applicable tolling protections available as a matter of law or equity. Nothing in this Settlement Agreement will constitute an admission in any manner that the statute of limitations has been tolled for anyone outside the Settlement Class, nor does it constitute a waiver of legal positions regarding tolling.

## ARTICLE XIV
### Notice, Opt Out, and Objections

Section 14.1    Notice

(a)    As part of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Plaintiffs will submit to the Court a Settlement Class Notice Plan agreed upon by Class Counsel and Counsel for the NFL Parties.

(b)    The Settlement Class Notice Plan, to be implemented by the Settlement Class Notice Agent following the Court's entry of the Preliminary Approval and Class Certification Order, and approval of the Settlement Class Notice (in the form of Exhibit 5), paid for by the NFL Parties' transfer of Four Million United States dollars (U.S. $4,000,000) to Co-Lead Class Counsel, as set forth in Sections 23.1 and 23.3, will be designed to meet the requirements of Fed. R. Civ. P. 23 (c)(2)(B), and will include: (i) direct notice by first-class mail; (ii) broad notice through the use of paid media including national radio spots, national consumer magazines, television and internet advertising; and (iii) electronic notice through the Settlement Website created under Section 4.1(a) and an automated telephone system created under Section 4.1(b).

(c)    The Parties and the Claims Administrator will maintain a list of the names and addresses of each person to whom the Settlement Class Notice is transmitted in accordance with any order entered by the Court pursuant to ARTICLE XIII. These names and addresses will be kept strictly confidential and will be used only for purposes of administering this Class Action Settlement, except as otherwise ordered by the Court.

(d)    Within thirty (30) days of the Effective Date, upon Court approval, Co-Lead Class Counsel shall cause the Settlement Class Supplemental Notice to be disseminated to Settlement Class Members by first-class mail and by posting on the Settlement Website created under Section 4.1(a) and through an automated telephone

65

system created under Section 4.1(b), to advise Settlement Class Members of the previously disclosed deadlines:  (i) to register for participation in the Class Action Settlement, as set forth in Section 4.2; (ii) as to eligible Retired NFL Football Players, to participate in the BAP, as set forth in Section 5.3; and (iii) to submit Claim Packages or Derivative Claim Packages, as set forth in Section 8.3.  The Settlement Class Supplemental Notice shall include the above information, and any other information, as agreed upon by Co-Lead Class Counsel and Counsel for the NFL Parties, and approved by the Court.

Section 14.2    <u>Opt Outs</u>

(a)    The Settlement Class Notice will provide instructions regarding the procedures that must be followed to Opt Out of the Settlement Class pursuant to Fed. R. Civ. P. 23(c)(2)(B)(v).  The Parties agree that, to Opt Out validly from the Settlement Class, a Settlement Class Member must submit a written request to Opt Out stating "I wish to exclude myself from the Settlement Class in *In re: National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323" (or substantially similar clear and unambiguous language) to the Claims Administrator on or before such date as is ordered by the Court.  That written request also will contain the Settlement Class Member's printed name, address, telephone number, and date of birth and enclose a copy of his or her driver's license or other government issued identification.  A written request to Opt Out may not be signed using any form of electronic signature, but must contain the dated Personal Signature of the Retired NFL Football Player, Representative Claimant, or Derivative Claimant seeking to exclude himself or herself from the Settlement Class.  Attorneys for Settlement Class Members may submit a written request to Opt Out on behalf of a Settlement Class Member, but such request must contain the Personal Signature of the Settlement Class Member.  The Claims Administrator will provide copies of all requests to Opt Out to Class Counsel and Counsel for the NFL Parties within seven (7) days of receipt of each such request.  Valid requests to Opt Out from the Settlement Class will become effective on the Final Approval Date.

(b)    All Settlement Class Members who do not timely and properly Opt Out from the Settlement Class will in all respects be bound by all terms of this Settlement Agreement and the Final Order and Judgment upon the Effective Date, will be entitled to all procedural opportunities and protections described in this Settlement Agreement and provided by the Court, and to all compensation and benefits for which they qualify under its terms, and will be barred permanently and forever from commencing, filing, initiating, prosecuting, asserting, and/or maintaining any and all Released Claims against any Released Parties in any court of law or equity, arbitration tribunal, or administrative or other forum.

(c)    Prior to the Final Approval Date, any Retired NFL Football Player, Representative Claimant, or Derivative Claimant may seek to revoke his or her Opt Out from the Settlement Class and thereby receive the benefits of this Class Action Settlement by submitting a written request to Co-Lead Class Counsel and Counsel for the NFL Parties stating "I wish to revoke my request to be excluded from the Settlement

66

Class" (or substantially similar clear and unambiguous language), and also containing the Settlement Class Member's printed name, address, phone number, and date of birth. The written request to revoke an Opt Out must contain the Personal Signature of the Settlement Class Member seeking to revoke his or her Opt Out.

> Section 14.3    <u>Objections</u>

> > (a)    Provided a Settlement Class Member has not submitted a written request to Opt Out, as set forth in Section 14.2(a), the Settlement Class Member may present written objections, if any, explaining why he or she believes the Class Action Settlement should not be approved by the Court as fair, reasonable, and adequate. No later than such date as is ordered by the Court, a Settlement Class Member who wishes to object to any aspect of the Class Action Settlement must file with the Court , or as the Court otherwise may direct, a written statement of the objection(s). The written statement of objection(s) must include a detailed statement of the Settlement Class Member's objection(s), as well as the specific reasons, if any, for each such objection, including any evidence and legal authority the Settlement Class Member wishes to bring to the Court's attention. That written statement also will contain the Settlement Class Member's printed name, address, telephone number, and date of birth, written evidence establishing that the objector is a Settlement Class Member, and any other supporting papers, materials, or briefs the Settlement Class Member wishes the Court to consider when reviewing the objection. A written objection may not be signed using any form of electronic signature, but must contain the dated Personal Signature of the Retired NFL Football Player, Representative Claimant, or Derivative Claimant making the objection. The Court shall determine whether any Settlement Class Members who do not follow the procedures will have waived any objections they may have.

> > (b)    A Settlement Class Member may object on his or her own behalf or through an attorney hired at that Settlement Class Member's own expense, provided the Settlement Class Member has not submitted a written request to Opt Out, as set forth in Section 14.2(a). Attorneys asserting objections on behalf of Settlement Class Members must:  (i) file a notice of appearance with the Court by the date set forth in the Preliminary Approval and Class Certification Order, or as the Court otherwise may direct; (ii) file a sworn declaration attesting to his or her representation of each Settlement Class Member on whose behalf the objection is being filed or a copy of the contract (to be filed *in camera*) between that attorney and each such Settlement Class Member; and (iii) comply with the procedures described in this Section.

> > (c)    A Settlement Class Member (or counsel individually representing him or her, if any) seeking to make an appearance at the Fairness Hearing must file with the Court, by the date set forth in the Preliminary Approval and Class Certification Order, or as the Court otherwise may direct, a written notice of his or her intention to appear at the Fairness Hearing, in accordance with the requirements set forth in the Preliminary Approval and Class Certification Order.

<div align="center">67</div>

(d)     Any Settlement Class Member who fails to comply with the provisions of this Section 14.3 will waive and forfeit any and all rights he or she may have to object to the Class Action Settlement.

## ARTICLE XV
## Communications to the Public

Section 15.1   The form, content, and timing of any public statement announcing the filing of this Settlement Agreement will be subject to mutual agreement by Class Counsel and Counsel for the NFL Parties.  The Parties and their counsel agree not to make any public statements, including statements to the media, that are inconsistent with the Settlement Agreement.  Any communications to the public or the media made by or on behalf of the Parties and their respective counsel regarding the Class Action Settlement will be made in good faith and will be consistent with the Parties' agreement to take all actions reasonably necessary for preliminary and final approval of this Class Action Settlement.   Any information contained in such communications will be balanced, fair, accurate, and consistent with the content of the Settlement Class Notice.

(a)     Nothing herein is intended or will be interpreted to inhibit or interfere with the ability of Class Counsel or Counsel for the NFL Parties to communicate with the Court, their clients, or Settlement Class Members and/or their counsel.

(b)     Class Counsel acknowledge and agree, and the Preliminary Approval and Class Certification Order will provide, that the NFL Parties have the right to communicate orally and in writing with, and to respond to inquiries from, Settlement Class Members on matters unrelated to the Class Action Settlement in connection with the NFL Parties' normal business.

## ARTICLE XVI
## Termination

Section 16.1   Walk-Away Right of NFL Parties.  Without limiting any other rights under this Settlement Agreement, the NFL Parties will have the absolute and unconditional right, in their sole good faith discretion, to unilaterally terminate and render null and void this Class Action Settlement and Settlement Agreement for any reason whatsoever following notice of Opt Outs and prior to the Fairness Hearing.  The NFL Parties must provide written election to terminate this Settlement Agreement to Class Counsel and the Court prior to the Fairness Hearing.

Section 16.2   Party Termination Rights

(a)     Class Counsel and Counsel for the NFL Parties each have the absolute and unconditional right, in their sole discretion, which discretion will be exercised in good faith, to terminate and render null and void this Class Action Settlement and Settlement Agreement if (i) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Settlement Agreement that Class

68

Counsel or Counsel for the NFL Parties reasonably and in good faith determines is material, including, without limitation, the Releases or the definition of the Settlement Class, or (ii) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the proposed Preliminary Approval and Class Certification Order or the proposed Final Order and Judgment (Exhibit 4) that Class Counsel or Counsel for the NFL Parties reasonably and in good faith believes is material. Such written election to terminate this Settlement Agreement must be made to the Court within thirty (30) days of such Court order.

(b)    Class Counsel may not terminate and render null and void this Class Action Settlement and Settlement Agreement on the basis of the attorneys' fees award ordered, or modified, by the Court or any appellate court(s), as set forth in ARTICLE XXI.

Section 16.3    Post-Termination Actions

(a)    In the event this Settlement Agreement is terminated or becomes null and void, this Settlement Agreement will not be offered into evidence or used in this or in any other action in the Court, or in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum for any purpose, including, but not limited to, the existence, certification, or maintenance of any purported class. In addition, in such event, this Settlement Agreement and all negotiations, proceedings, documents prepared and statements made in connection with this Settlement Agreement will be without prejudice to all Parties and will not be admissible into evidence and will not be deemed or construed to be an admission or concession by any of the Parties of any fact, matter, or proposition of law and will not be used in any manner for any purpose, and all Parties will stand in the same position as if this Settlement Agreement had not been negotiated, made, or filed with the Court.

(b)    In the event this Settlement Agreement is terminated or becomes null and void, the Parties will jointly move the Court to vacate the Preliminary Approval and Certification Order and any other orders certifying a Settlement Class provided.

(c)    If this Settlement Agreement is terminated or becomes null and void after notice has been given, the Parties will provide Court-approved notice of termination to the Settlement Class. If a Party terminates the Settlement Agreement in accordance with Section 16.1 or Section 16.2, that Party will pay the cost of notice of termination.

(d)    In the event this Settlement Agreement is terminated or becomes null and void, any unspent and uncommitted monies in the Funds will revert to the NFL Parties within ten (10) days, and all data provided by the NFL Parties, Class Counsel and/or Settlement Class Members shall be returned or destroyed.

## ARTICLE XVII
### Treatment of Confidential Information

Section 17.1    Confidentiality of Information Relating to the Settlement Agreement.    The Parties will treat all confidential or proprietary information shared hereunder, or in connection herewith, either prior to, on or after the Settlement Date, and any and all prior or subsequent drafts, representations, negotiations, conversations, correspondence, understandings, analyses, proposals, term sheets, and letters, whether oral or written, of any kind or nature, with respect to the subject matter hereof ("Confidential Information") in conformity with strict confidence and will not disclose Confidential Information to any non-Party without the prior written consent of the Party that shared the Confidential Information, except:  (i) as required by applicable law, regulation, or by order or request of a court of competent jurisdiction, regulator, or self-regulatory organization (including subpoena or document request), provided that the Party that shared the Confidential Information is given prompt written notice thereof and, to the extent practicable, an opportunity to seek a protective order or other confidential treatment thereof, provided further that the Party subject to such requirement or request cooperates fully with the Party that shared the Confidential Information in connection therewith, and only such Confidential Information is disclosed as is legally required to be disclosed in the opinion of legal counsel for the disclosing Party; (ii) under legal (including contractual) or ethical obligations of confidentiality, on an as-needed and confidential basis to such Party's present and future accountants, counsel, insurers, or reinsurers; or (iii) with regard to any information that is already publicly known through no fault of such Party or its Affiliates.  This Settlement Agreement, all exhibits hereto, any other documents filed in connection with the Class Action Settlement, and any information disclosed through a public court proceeding shall not be deemed Confidential Information.

Section 17.2    Confidentiality of Retired NFL Football Player Information

(a)    All information relating to a Retired NFL Football Player that is disclosed to or obtained by the Special Master, BAP Administrator, Claims Administrator, Lien Resolution Administrator, designated Qualified BAP Providers, the NFL Parties, an Appeals Advisory Panel member, an Appeals Advisory Panel Consultant, or the Court, may be used only by the Special Master, BAP Administrator, Claims Administrator, Lien Resolution Administrator, designated Qualified BAP Providers, the NFL Parties, an Appeals Advisory Panel member, an Appeals Advisory Panel Consultant, or the Court for the administration of this Class Action Settlement according to the Settlement Agreement terms and conditions.  All such information relating to a Retired NFL Football Player will be treated as Confidential Information hereunder, will be subject to the terms of Section 17.1 hereof, and, where applicable, will be treated as Protected Health Information subject to HIPAA and other applicable privacy laws.

70

## ARTICLE XVIII
## Releases and Covenant Not to Sue

Section 18.1    Releases

(a)    In consideration of the benefits described and the agreement and covenants contained in this Settlement Agreement, and by operation of the Final Order and Judgment, the Settlement Class, the Class and Subclass Representatives, and each Settlement Class Member, on his or her own behalf and on behalf of his or her respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on behalf of any Settlement Class Member (the "Releasors"), hereby waive and release, forever discharge and hold harmless the Released Parties, and each of them, of and from any and all past, present and future claims, counterclaims, actions, rights or causes of action, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, in law or in equity, contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, in any forum that the Releasors, and each of them, had, has, or may have in the future arising out of, in any way relating to or in connection with the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, referred to or relating to the Class Action Complaint and/or Related Lawsuits ("Claims"), including, without limitation, Claims:

(i)    that were, are or could have been asserted in the Class Action Complaint or any other Related Lawsuit; and/or

(ii)    arising out of, or relating to, head, brain and/or cognitive injury, as well as any injuries arising out of, or relating to, concussions and/or subconcussive events (including, without limitation, prevention, diagnosis and treatment thereof) of whatever cause and its damages (whether short-term, long-term or death), whenever arising, including, without limitation, Claims for personal or bodily injury, including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life (and exacerbation and/or progression of personal or bodily injury), or wrongful death and/or survival actions as a result of such injury and/or exacerbation and/or progression thereof; and/or

(iii)    arising out of, or relating to, neurocognitive deficits or impairment, or cognitive disorders, of whatever kind or degree, including, without limitation, mild cognitive impairment, moderate cognitive impairment, dementia, Alzheimer's Disease, Parkinson's Disease, and ALS; and/or

(iv)    arising out of, or relating to, CTE; and/or

71

**-943-**

(v)    arising out of, or relating to, loss of support, services, consortium, companionship, society, or affection, or damage to familial relations (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life); and/or

(vi)    arising out of, or relating to, increased risk, possibility, or fear of suffering in the future from any head, brain and/or cognitive injury, as well as any injuries arising out of, or relating to, concussions and/or subconcussive events (including, without limitation, prevention, diagnosis and treatment thereof), and including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life); and/or

(vii)    arising out of, or relating to, medical screening and medical monitoring for undeveloped, unmanifested, and/or undiagnosed head, brain and/or cognitive injury, as well as any injuries arising out of, or relating to, concussions and/or subconcussive events (including, without limitation, prevention, diagnosis and treatment thereof); and/or

(viii)    premised on any purported or alleged breach of any Collective Bargaining Agreement related to the issues in the Class Action Complaint and/or Related Lawsuits, except claims for workers' compensation and claims alleging entitlement to NFL CBA Medical and Disability Benefits.

(b)    In consideration of the benefits described and the agreement and covenants contained in this Settlement Agreement, and by operation of the Final Order and Judgment, the Releasors do hereby release, forever discharge and hold harmless the Released Parties from any and all Claims, including unknown Claims, arising from, relating to, or resulting from the reporting, transmittal of information, or communications between or among the NFL Parties, Counsel for the NFL Parties, the Special Master, Claims Administrator, Lien Resolution Administrator, any Governmental Payor, and/or Medicare Part C or Part D Program sponsor regarding any claim for benefits under this Settlement Agreement, including any consequences in the event that this Settlement Agreement impacts, limits, or precludes any Settlement Class Member's right to benefits under Social Security or from any Governmental Payor or Medicare Part C or Part D Program sponsor.

(c)    In consideration of the benefits described and the agreement and covenants contained in this Settlement Agreement, and by operation of the Final Order and Judgment, the Releasors do hereby release, forever discharge and hold harmless the Released Parties from any and all Claims, including unknown Claims, pursuant to the MSP Laws, or other similar causes of action, arising from, relating to, or resulting from the failure or alleged failure of any of the Released Parties to provide for a primary payment or appropriate reimbursement to a Governmental Payor or Medicare Part C or Part D Program sponsor with a Lien in connection with claims for medical items, services, and/or prescription drugs provided in connection with compensation or benefits claimed or received by a Settlement Class Member pursuant to this Settlement Agreement.

(d)    In consideration of the benefits described and the agreement and covenants contained in this Settlement Agreement, and by operation of the Final Order and Judgment, the Releasors do hereby release, forever discharge and hold harmless the Released Parties, the Special Master, BAP Administrator, Claims Administrator, and their respective officers, directors, and employees from any and all Claims, including unknown Claims, arising from, relating to, or resulting from their participation, if any, in the BAP, including, but not limited to, Claims for negligence, medical malpractice, wrongful or delayed diagnosis, personal injury, bodily injury (including disease, trauma, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), or death arising from, relating to, or resulting from such participation.

Section 18.2    <u>Release of Unknown Claims</u>.    In connection with the releases in Section 18.1, the Class and Subclass Representatives, all Settlement Class Members, and the Settlement Class acknowledge that they are aware that they may hereafter discover Claims now unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, with respect to actions or matters released herein. Class and Subclass Representatives, all Settlement Class Members, and the Settlement Class explicitly took unknown or unsuspected claims into account in entering into the Settlement Agreement and it is the intention of the Parties fully, finally and forever to settle and release all Claims as provided in Section 18.1 with respect to all such matters.

Section 18.3    <u>Scope of Releases</u>

(a)    Each Party acknowledges that it has been informed of Section 1542 of the Civil Code of the State of California (and similar statutes) by its counsel and that it does hereby expressly waive and relinquish all rights and benefits, if any, which it, he or she has or may have under said section (and similar sections) which reads as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

(b)    The Parties acknowledge that the foregoing waiver of the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other state, territory, or other jurisdiction was separately bargained for and that the Parties would not have entered into this Settlement Agreement unless it included a broad release of unknown claims relating to the matters released herein.

(c)    The Releasors intend to be legally bound by the Releases.

73

**-945-**

(d)    The Releases are not intended to prevent the NFL Parties from exercising their rights of contribution, subrogation, or indemnity under any law.

(e)    Nothing in the Releases will preclude any action to enforce the terms of this Settlement Agreement in the Court.

(f)    The Parties represent and warrant that no promise or inducement has been offered or made for the Releases contained in this Article except as set forth in this Settlement Agreement and that the Releases are executed without reliance on any statements or any representations not contained in this Settlement Agreement.

Section 18.4    Covenant Not to Sue.  From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, the Class and Subclass Representatives, each Settlement Class Member, and the Settlement Class, on behalf of the Releasors, and each of them, covenant, promise, and agree that they will not, at any time, continue to prosecute, commence, file, initiate, institute, cause to be instituted, assist in instituting, or permit to be instituted on their, his, her, or its behalf, or on behalf of any other individual or entity, any proceeding:  (a) alleging or asserting any of his or her respective Released Claims against the Released Parties in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, including, without limitation, the Claims set forth in Section 18.1; or (b) challenging the validity of the Releases.  To the extent any such proceeding exists in any court, tribunal or other forum as of the Effective Date, the Releasors covenant, promise and agree to withdraw, and seek a dismissal with prejudice of, such proceeding forthwith.

Section 18.5    No Release for Insurance Coverage.

(a)    Notwithstanding anything herein to the contrary, this Settlement Agreement is not intended to and does not release any Governmental Payor or Medicare Part C or Part D Program sponsor from its or their obligation to provide any health insurance coverage, major medical insurance coverage, or disability insurance coverage to a Settlement Class Member, or from any claims, demands, rights, or causes of action of any kind that a Settlement Class Member has or hereafter may have with respect to such individuals or entities.

(b)    Notwithstanding anything herein to the contrary, this Settlement Agreement is not intended to and does not effect a release of any rights or obligations that any insurer has under or in relation to any contract or policy of insurance to any named insured, insured, additional insured, or other insured person or entity thereunder, including those persons or entities referred to in Section 2.1(bbbb)(i)-(ii).

Section 18.6    No Release for Claims for Workers' Compensation and NFL CBA Medical and Disability Benefits.  Nothing contained in this Settlement Agreement, including the Release and Covenant Not to Sue provisions in this ARTICLE XVIII, affects the rights of Settlement Class Members to pursue claims for workers' compensation and claims alleging entitlement to NFL CBA Medical and Disability Benefits.  For the avoidance of any doubt, this Settlement Agreement does not alter the

74

showing that Settlement Class Members must demonstrate to pursue successful claims for workers' compensation and/or successful claims alleging entitlement to NFL CBA Medical and Disability Benefits, nor does it alter the defenses to such claims available to Released Parties except as set forth in ARTICLE XXIX.

## ARTICLE XIX
## Bar Order

Section 19.1  <u>Bar Order</u>.  As a condition to the Settlement, the Parties agree to move the Court for a bar order, as part of the Final Order and Judgment (substantially in the form of Exhibit 4), as set forth in Section 20.1.

Section 19.2  <u>Judgment Reduction</u>.  With respect to any litigation by the Releasors against Riddell, the Releasors further agree that if a verdict in their favor results in a verdict or judgment for contribution or indemnity against the Released Parties, the Releasors will not enforce their right to collect this verdict or judgment to the extent that such enforcement creates liability against the Released Parties.  In such event, the Releasors agree that they will reduce their claim or agree to a judgment reduction or satisfy the verdict or judgment to the extent necessary to eliminate the claim of liability against the Released Parties or any Other Party claiming contribution or indemnity.

## ARTICLE XX
## Final Order and Judgment and Dismissal With Prejudice

Section 20.1   The Parties will jointly seek a Final Order and Judgment from the Court, substantially in the form of Exhibit 4, approval and entry of which shall be a condition of this Settlement Agreement, that:

(a)   Approves the Class Action Settlement in its entirety pursuant to Fed. R. Civ. P. 23(e) as fair, reasonable, and adequate;

(b)   Finds that this Settlement Agreement, with respect to each Subclass, is fair, reasonable, and adequate;

(c)   Confirms the certification of the Settlement Class for settlement purposes only;

(d)   Confirms the appointments of the Class and Subclass Representatives;

(e)   Confirms the appointments of Co-Lead Class Counsel, Class Counsel and Subclass Counsel;

(f)   Finds that the Settlement Class Notice satisfied the requirements set forth in Fed. R. Civ. P. 23(c)(2)(B);

75

**-947-**

(g)     Permanently bars, enjoins and restrains the Releasors (and each of them) from commencing, filing, initiating, prosecuting, asserting, and/or maintaining any and all Released Claims against any Released Party;

(h)     Dismisses with prejudice the Class Action Complaint, without further costs, including claims for interest, penalties, costs and attorneys' fees, except that the motion for an award of attorneys' fees and reasonable costs, as set forth in in Section 21.1, will be made at an appropriate time to be determined by the Court;

(i)     Orders the dismissal with prejudice, and without further costs, including claims for interest, penalties, costs, and attorneys' fees, of all Related Lawsuits pending in the Court as to the Released Parties, thereby effectuating in part the Releases;

(j)     Orders all Releasors with Related Lawsuits pending in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, other than the Court, promptly to dismiss with prejudice, and without further costs, including claims for interest, penalties, costs, and attorneys' fees, all such Related Lawsuits as to the Released Parties, thereby effectuating in part the Releases;

(k)     Permanently bars and enjoins the commencement, assertion, and/or prosecution of any claim for contribution and/or indemnity in the Court, in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum between the Released Parties and all alleged joint tortfeasors, other than Riddell, together with an appropriate judgment reduction provision;

(l)     Confirms the appointment of the Special Master, Garretson Group as the BAP Administrator, BrownGreer as the Claims Administrator, Garretson Group as the Liens Resolution Administrator, and Citibank, N.A. as the Trustee, and confirms that the Court retains continuing jurisdiction over those appointed;

(m)     Confirms that the Court retains continuing jurisdiction over the "qualified settlement funds," as defined under §1.468B-1 of the Treasury Regulations promulgated under Sections 461(h) and 468B of the Internal Revenue Code of 1986, as amended, created under the Settlement Agreement; and

(n)     Expressly incorporates the terms of this Settlement Agreement and provides that the Court retains continuing and exclusive jurisdiction over the Parties, the Settlement Class Members and this Settlement Agreement, to interpret, implement, administer and enforce the Settlement Agreement in accordance with its terms.

## ARTICLE XXI
## Attorneys' Fees

Section 21.1   <u>Award</u>.   Separately and in addition to the NFL Parties' payment of the monies set forth in ARTICLE XXIII and any consideration received by Settlement Class Members under this Settlement, the NFL Parties shall pay class

attorneys' fees and reasonable costs. Class Counsel shall be entitled, at an appropriate time to be determined by the Court, to petition the Court on behalf of all entitled attorneys for an award of class attorneys' fees and reasonable costs. Provided that said petition does not seek an award of class attorneys' fees and reasonable costs exceeding One Hundred and Twelve Million, Five Hundred Thousand United States dollars (U.S. $112,500,000), the NFL Parties agree not to oppose or object to the petition. Ultimately, the award of class attorneys' fees and reasonable costs to be paid by the NFL Parties is subject to the approval of the Court. For the avoidance of any doubt, the NFL Parties' obligation to pay class attorneys' fees and reasonable costs is limited to those attorneys' fees and reasonable costs ordered by the Court as a result of the initial petition by Class Counsel. The NFL Parties shall not be responsible for the payment of any further attorneys' fees and/or costs for the term of this Agreement. After the Effective Date, Co-Lead Class Counsel may petition the Court to set aside up to five percent (5%) of each Monetary Award and Derivative Claimant Award to facilitate the Settlement program and related efforts of Class Counsel. These set-aside monies shall be held in a separate fund overseen by the Court. Any future petition for a set-aside will describe:  (i) the proposed amount; (ii) how the money will be used; and (iii) any other relevant information (for example, the assurance that any "set-aside" from a Monetary Award or Derivative Claimant Award for a Settlement Class Member represented by his/her individual counsel will reduce the attorney's fee payable to that counsel by the amount of the "set-aside"). No money will be held back or set aside from any Monetary Award or Derivative Claimant Award without Court approval. The NFL Parties believe that any such proposed set aside application is a matter strictly between and among Settlement Class Members, Class Counsel, and individual counsel for Settlement Class Members. The NFL Parties therefore take no position on the proposed set aside and will take no position on the proposed set aside in the event such an application is made.

Section 21.2    Payment.  No later than sixty (60) days after the Effective Date, the NFL Parties will pay, or cause to be paid, a total of One Hundred and Twelve Million, Five Hundred Thousand United States dollars (U.S. $112,500,000) into the Attorneys' Fees Qualified Settlement Fund, as set forth in Section 23.7, to be held in escrow until such payment shall be made as directed by the Court.

### ARTICLE XXII
### Enforceability of Settlement Agreement and Dismissal of Claims

Section 22.1    It is a condition of this Settlement Agreement that the Court approve and enter the Preliminary Approval and Class Certification Order and Final Order and Judgment substantially in the form of Exhibit 4.

Section 22.2    The Parties agree that this Class Action Settlement is not final and enforceable until the Effective Date, except that upon entry of the Preliminary Approval and Class Certification Order, the NFL Parties will be obligated to make the Settlement Class Notice Payment as set forth in Sections 14.1, 23.1 and 23.3.

Section 22.3    From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, the Court will

77

dismiss with prejudice all Released Claims by any and all Releasors against any and all Released Parties pending in the Court, and any and all Releasors with Related Lawsuits pending in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, other than the Court, will dismiss with prejudice the Related Lawsuits as to the Released Parties, including any related appeals.

Section 22.4   From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, the Parties agree that each and every Releasor will be permanently barred and enjoined from commencing, filing, initiating, instituting, prosecuting, and/or maintaining any judicial, arbitral, or regulatory action against any Released Party with respect to any and all Released Claims.

Section 22.5   From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, this Settlement Agreement will be the exclusive remedy for any and all Released Claims by or on behalf of any and all Releasors against any and all Released Parties, and no Releasor will recover, directly or indirectly, any sums from any Released Parties for Released Claims other than those received for the Released Claims under the terms of this Settlement Agreement, if any.

Section 22.6   From and after the Effective Date, if any Releasor, in violation of Section 18.4, commences, files, initiates, or institutes any new action or other proceeding for any Released Claims against any Released Parties, or continues to prosecute any pending claims, or challenges the validity of the Releases, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, such action or other proceeding will be dismissed with prejudice and at such Releasor's cost; provided, however, before any costs may be assessed, counsel for such Releasor or, if not represented, such Releasor, will be given reasonable notice and an opportunity voluntarily to dismiss such new action or proceeding with prejudice.  Furthermore, if the NFL Parties or any other Released Party brings any legal action before the Court to enforce its rights under this Settlement Agreement against a Settlement Class Member and prevails in such action, that Released Party will be entitled to recover any and all related costs and expenses (including attorneys' fees) from any Releasor found to be in violation or breach of his or her obligations under this Article.

### ARTICLE XXIII
### NFL Payment Obligations

Section 23.1   <u>Funding Amount</u>.   In consideration of the Releases and Covenant Not to Sue set forth in ARTICLE XVIII, and the dismissal with prejudice of the Class Action Complaint and the Related Lawsuits, and subject to the terms and conditions of this Settlement Agreement, the NFL Parties will pay in accordance with the funding terms set forth herein:

(a)   <u>Monetary Award Fund Amount</u>.   The amount of money sufficient to make all payments set forth in Section 23.3(b) for sixty-five (65) years from the Effective Date.   For the avoidance of any doubt, the NFL Parties shall have no

payment obligations under this Settlement Agreement after the end of the Monetary Award Fund sixty-five (65) year term;

(b)    BAP Fund Amount.    The amount of money, up to a maximum of Seventy-Five Million United States dollars (U.S. $75,000,000), sufficient to make all payments set forth in Section 23.3(d), except that every qualified Retired NFL Football Player, as set forth in Section 5.1, is entitled to one baseline assessment examination;

(c)    Education Fund Amount.    Ten Million United States dollars (U.S. $10,000,000), which monies will be used exclusively to fund the Education Fund;

(d)    Settlement Class Notice Amount.    Four Million United States dollars (U.S. $4,000,000), to pay for Settlement Class Notice and related expenses; and

(e)    Annual Compensation of the Special Master.    The annual compensation of the Special Master appointed by the Court, whose total annual compensation shall not exceed Two Hundred Thousand United States dollars (U.S. $200,000).

(f)    Notwithstanding any provision of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119, amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029, or any subsequent legislation mandating or subsidizing health insurance coverage, the NFL Parties will pay, or cause to be paid, in full the amounts set forth above in Section 23.1(a)-(e), and will not bill any Governmental Payor or Medicare Part C or Part D Program for any such costs.

Section 23.2    Exclusive Payments.    For the avoidance of any doubt, other than as set forth in Section 21.2, the NFL Parties will have no additional payment obligations in connection with this Settlement Agreement.

Section 23.3    Funding Terms.    The NFL Parties' payment obligations will be funded as follows:

(a)    Education Fund.    No later than thirty (30) days after the Effective Date, the NFL Parties will pay, or cause to be paid, a total of Ten Million United States dollars (U.S. $10,000,000) into the Settlement Trust Account, as set forth in Section 23.5, for transfer by the Trustee into the Education Fund.

(b)    Monetary Award Fund.    The NFL Parties will pay, or cause to be paid six initial monthly installments of Twenty Million United States dollars (U.S. $20,000,000) each, into the Settlement Trust Account for transfer by the Trustee into the Monetary Award Fund, beginning no later than thirty (30) days after the Effective Date. If additional funds are necessary in any given month during this six month period, they shall be requested and paid in accordance with the procedures set forth in section

23.3(b)(i)-(iv).  The Claims Administrator shall provide in writing to the NFL Parties and Co-Lead Class Counsel a monthly report for this initial six month period that includes an accounting of the items set forth in Section 23.3(b)(i)(1)-(5).

(i)     Beginning no later than thirty (30) days after the Effective Date,  on or before the 10th day of each month, the Claims Administrator shall provide in writing to the NFL Parties and Co-Lead Class Counsel a monthly funding request identifying the monetary amount necessary to pay all final and accrued Monetary Awards, Derivative Claimant Awards and the costs and expenses paid out of the Monetary Award Fund, as set forth in Section 23.5(d)(ii), and any additional amount necessary to maintain the Monetary Award Fund targeted reserve, as set forth in Section 23.3(b)(v), after all final and accrued Monetary Awards, Derivative Claimant Awards and costs and expenses are paid.  This monthly funding request shall provide, in addition to the total monetary amount requested, an accounting of:

(1)     The name of each Settlement Class Member with a final and accrued Monetary Awards or Derivative Claimant Award since the last monthly funding request, identification of his/her counsel, identification of the Award as a Monetary Award or Derivative Claimant Award, the Award amount, and identification of any "holdback" amount deducted from the Award as set forth in Sections 9.1(c)(ii) and 9.2(b)(ii), 11.3(g) and 11.3(h);

(2)     The amount of costs and expenses related to the appeals process, as set forth in ARTICLE IX, since the last monthly funding request;

(3)     The amount of costs and expenses of claims administration, as set forth in ARTICLE X, since the last monthly funding request;

(4)     The amount of costs and expenses of the Lien identification and resolution process, as set forth in ARTICLE XI, since the last monthly funding request;

(5)     The amount necessary to maintain the Monetary Award Fund targeted reserve, as set forth in Section 23.3(b)(v), after all final and accrued Monetary Awards, Derivative Claimant Awards, and costs and expenses are paid.

(ii)     Subject to the objection process set forth in Section 23.3(b)(iii), the NFL Parties will pay, or cause to be paid, within thirty (30) days of receipt of the written monthly funding request, a payment of the total amount requested into the Settlement Trust Account for transfer by the Trustee into the Monetary Award Fund.

(iii)     Within ten (10) days after receipt of the written monthly funding request, the NFL Parties and Co-Lead Class Counsel shall each notify the Claims Administrator in writing of any objection to any aspect of the funding request. If an objection is timely made, the NFL Parties, will pay, or cause to be paid, within thirty (30) days of such written monthly funding request, a payment of the undisputed

portion of the total amount requested into the Settlement Trust Account for transfer by the Trustee into the Monetary Award Fund. The NFL Parties, Co-Lead Class Counsel and the Claims Administrator shall use their best efforts to resolve any objections within fifteen (15) days after receipt of the written monthly funding request. If the NFL Parties, Co-Lead Class Counsel and the Claims Administrator are unable to resolve the objection within twenty (20) days after receipt of the written monthly funding request, the objecting party shall present the matter in writing to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof).

(1)    After an agreement on the resolution of an objection, or a decision by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) resolving an objection by requiring the NFL Parties to pay, or cause to be paid, additional amounts beyond the undisputed portion of the monthly funding request, the NFL Parties will pay, or cause to be paid, the additional amounts beyond the undisputed portion of the monthly funding request within the longer of thirty (30) days of receiving the written monthly funding request or ten (10) days after resolution of the objection.

(iv)    Within ten (10) days after transfer of funds into the Monetary Award Fund pursuant to a monthly funding request or decision of the Special Master or Court, as set forth in Section 23.3(b)(iii)(1), the Claims Administrator shall cause payment to be issued on all applicable final and accrued Monetary Awards, Derivative Claimant Awards and costs and expenses paid out of the Monetary Award Fund, as set forth in Section 23.5(d)(ii).

(v)    The Monetary Award Fund shall maintain a targeted reserve, as set forth in Section 23.3(b)(v)(1), beyond the monetary amounts necessary to pay written monthly funding requests, which reserve may be used to pay any costs and expenses that must be satisfied pursuant to a contractual or other legal obligation before receipt of the monthly funding request amount and that are properly paid out of the Monetary Award Fund, as set forth in Section 23.5(d)(ii). The Claims Administrator shall report promptly any such payments from the Monetary Award Fund to the NFL Parties and Co-Lead Class Counsel. Either Co-Lead Class Counsel or Counsel for the NFL Parties may challenge the appropriateness of such payments, in which case the Court will determine (or may, in its discretion, refer the challenge to the Special Master to determine) the appropriateness of such payments. If the Court or Special Master, as applicable, determines that any such payment constituted willful misconduct, the Court or Special Master may, in its discretion, deduct that amount from the compensation of the Claims Administrator.

(1)    The Monetary Award Fund shall maintain a targeted reserve of: (i) Ten Million United States dollars (U.S. $10,000,000) during the first through tenth years of the Monetary Award Fund; (ii) Five Million United States dollars (U.S. $5,000,000) during the eleventh through fiftieth years of the Monetary Award Fund; (iii) One Million United States dollars ($1,000,000) during the fifty-first through sixtieth years of the Monetary Award Fund; and (iv) Two Hundred and Fifty

81

Thousand United States dollars (U.S. $250,000) during the sixty-first through sixty-fifth years of the Monetary Award Fund.

(c)     During the eleventh, fifty-first, and sixty-first years of the Monetary Award Fund, monthly funding requests shall first be satisfied by the money constituting the balance in the Monetary Award Fund until the revised targeted reserve, as set forth in Section 23.3(b)(v)(1), is achieved.  For example, in the eleventh year of the Monetary Award Fund, all monthly funding requests shall be paid from the Monetary Award Fund balance until the reserve is reduced to Five Million United States dollars ($5,000,000).  The process for the monthly funding request shall otherwise remain as set forth in Section 23.3(b).

(d)     <u>BAP Fund.</u>  No later than thirty (30) days after the Effective Date, the NFL Parties will pay, or cause to be paid, a total of Thirty-Five Million United States dollars (U.S. $35,000,000) into the Settlement Trust Account for transfer by the Trustee into the BAP Fund.  If at any point following the Effective Date until the expiration the five-year period for the provision of BAP Supplemental Benefits, as set forth in Sections 5.5 and 5.11, the balance of the BAP Fund falls below Ten Million United States dollars (U.S. $10,000,000), the NFL Parties, upon written notice from the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), who shall act upon application of the BAP Administrator, will pay, or cause to be paid, within thirty (30) days of such written notice, additional payments into the Settlement Trust Account for transfer by the Trustee into the BAP Fund in order to maintain a balance of no less than Ten Million United States dollars (U.S. $10,000,000), and no more than Eleven Million United States dollars (U.S. $11,000,000).  Under no circumstances will the aggregate transfers to the BAP Fund exceed Seventy-Five Million United States dollars (U.S. $75,000,000) in total.  Any funds remaining in the BAP Fund at the conclusion of the five-year period for the provision of BAP Supplemental Benefits, as set forth in Sections 5.5 and 5.11, shall be transferred to the Settlement Trust for transfer by the Trustee into the Monetary Award Fund.

(e)     <u>Class Notice Costs.</u>   No later than five (5) days after the date of the Preliminary Approval and Class Certification Order, the NFL Parties will pay, or cause to be paid, a total of Four Million United States dollars (U.S. $4,000,000) to Co-Lead Class Counsel for the Settlement Class Notice and related expenses, as set forth in Section 14.1.

(f)     <u>Prepayment Right.</u>  The NFL Parties will have the right (but not the obligation) to prepay, or cause to be prepaid, any of their payment obligations to the Funds under the Settlement Agreement.  In connection with any such prepayment, the NFL Parties will designate in writing the payment obligation that is being prepaid and how such prepayment should affect the NFL Parties' remaining payment obligations (*i.e.*, whether the amount prepaid should be credited against the next payment obligation or to one or more subsequent payment obligations or a combination thereof).

Section 23.4    <u>No Interest or Inflation Adjustment</u>.  For the avoidance of any doubt, the payments set forth in Section 23.1 will not be subject to any interest obligation or inflation adjustment.

Section 23.5    <u>Settlement Trust</u>

(a)    Promptly following the Effective Date, Co-Lead Class Counsel and Counsel for the NFL Parties will file a motion seeking the creation of a Settlement Trust under Delaware law and the appointment of the Trustee.  Co-Lead Class Counsel and Counsel for the NFL Parties will file a proposed Settlement Trust Agreement with the Court.

(b)    Co-Lead Class Counsel and Counsel for the NFL Parties will jointly recommend Citibank, N.A. as the Trustee, subject to the approval of the Court.  The Trustee may be replaced by joint motion made by Co-Lead Class Counsel and Counsel for the NFL Parties, and granted by the Court.  If the Trustee resigns, dies, is replaced, or is otherwise unable to continue employment in that position, Co-Lead Class Counsel and Counsel for the NFL Parties will agree to and jointly recommend a new proposed Trustee for appointment by the Court.

(c)    Upon Court approval of the proposed Settlement Trust Agreement, Co-Lead Class Counsel, the NFL Parties, the Trustee and the Special Master, will execute the Settlement Trust Agreement approved by the Court, thereby creating the Settlement Trust.  The Settlement Trust will be structured and operated in a manner so that it qualifies as a "qualified settlement fund" under §1.468B-1 of the Treasury Regulations promulgated under Sections 461(h) and 468B of the Internal Revenue Code of 1986, as amended.

(d)    The Settlement Trust will be composed of the Funds.  The Trustee will establish the Settlement Trust Account, into which the NFL Parties will make payments as required by this Settlement Agreement.  The Trustee will also establish three separate funds (the "Funds"), into which the Trustee will transfer funds at the direction of the Special Master (or the Claims Administrator after expiration of the term of the Special Master and extension(s) thereof) and pursuant to the terms of this Settlement Agreement and on which the Special Master (or the Claims Administrator after expiration of the term of the Special Master and any extension(s) thereof) will have signatory authority.  These Funds will constitute a single qualified settlement fund:

(i)    The BAP Fund, which will be used to make payments for the BAP, as set forth in ARTICLE V.

(ii)    The Monetary Award Fund, which will be used to make payments for:  (a) all Monetary Awards and Derivative Claimant Awards, as set forth in ARTICLE VI and ARTICLE VII; (b) certain costs and expenses of the appeals process, as set forth in ARTICLE IX; (c) costs and expenses of claims administration, as set forth in ARTICLE X; and (d) certain costs and expenses of the Lien identification and resolution process, as set forth in ARTICLE XI;

83

(iii)    The Education Fund, which will be used exclusively to make payments to support education programs and initiatives, as set forth in ARTICLE XII; and

(iv)    The Settlement Trust Account, which will be used solely to transfer funds into the Funds described above in Section 23.5(d)(i)-(iii).

(e)    The Settlement Trust will be managed by the Trustee as provided in the Settlement Trust Agreement, and both the Settlement Trust and Trustee will be subject to the continuing jurisdiction and supervision of the Court.  Each of the Funds will be maintained in separate bank accounts at one or more federally insured depository institutions approved by Co-Lead Class Counsel and Counsel for the NFL Parties.  The Trustee will have the authority to make payments from the Settlement Trust Account into the other Funds at the direction of the Special Master (or the Claims Administrator after expiration of the term of the Special Master and any extension(s) thereof) and to make disbursements from the Funds at the direction of the Special Master (or the Claims Administrator at the direction of Co-Lead Class Counsel and Counsel for the NFL Parties, after expiration of the term of the Special Master and any extension(s) thereof), and consistent with the terms of this Settlement Agreement and the Settlement Trust Agreement.

(f)    The Trustee will be responsible for making any necessary tax filings and payments of taxes, estimated taxes, and associated interest and penalties, if any, by the Settlement Trust and responding to any questions from, or audits regarding such taxes by, the Internal Revenue Service or any state or local tax authority. The Trustee also will be responsible for complying with all tax information reporting and withholding requirements with respect to payments made by the Settlement Trust, as well as paying any associated interest and penalties. Any such taxes, interest, and penalty payments will be paid by the Trustee from the Monetary Award Fund.

Section 23.6    <u>Funds Investment</u>

(a)    To the extent funds are available for investment, amounts deposited in each of the Funds will be invested conservatively in a manner designed to assure timely availability of funds, protection of principal and avoidance of concentration risk.

(b)    Any earnings attributable to the BAP Fund, the Monetary Award Fund, and/or the Education Fund will be retained in the respective Fund.

Section 23.7    <u>Attorneys' Fees Qualified Settlement Fund</u>.  Unless the Court directs otherwise, a separate fund (intended to qualify as a "qualified settlement fund" under §1.468B-1 of the Treasury Regulations promulgated under Sections 461(h) and 468B of the Internal Revenue Code of 1986, as amended) will be established out of which attorneys' fees will be paid pursuant to order of the Court, as set forth in ARTICLE XXI.  This separate qualified settlement fund will be established pursuant to order of the Court, and will operate under Court supervision and control.  This separate

84

qualified settlement fund will be separate from the qualified settlement fund described in Section 23.5(c) and any of the Funds described therein, and will not be administered by the Trustee. The Court will determine the form and manner of administering this fund, in which the NFL Parties will have no reversionary interest.

Section 23.8     Trustee Satisfaction of Monetary Obligations. Wherever in this Settlement Agreement the Special Master, BAP Administrator, Claims Administrator, or Lien Resolution Administrator is authorized or directed, as the context may reflect, to pay, disburse, reimburse, hold, waive, or satisfy any monetary obligation provided for or recognized under any of the terms of this Settlement Agreement, the Special Master, BAP Administrator, Claims Administrator, or Lien Resolution Administrator may comply with such authorization or direction by directing the Trustee to, as appropriate, pay, disburse, reimburse, hold, waive, or satisfy any such monetary obligation.

## ARTICLE XXIV
### Denial of Wrongdoing, No Admission of Liability

Section 24.1     This Settlement Agreement, whether or not the Class Action Settlement becomes effective, is for settlement purposes only and is to be construed solely as a reflection of the Parties' desire to facilitate a resolution of the Class Action Complaint and of the Released Claims and Related Lawsuits. The NFL Parties expressly deny that they, or the other Released Parties, have violated any duty to, breached any obligation to, committed any fraud on, or otherwise engaged in any wrongdoing with respect to, the Class and Subclass Representatives, the Settlement Class, any Settlement Class Member, or any Opt Out, and expressly deny the allegations asserted in the Class Action Complaint and Related Lawsuits, and deny any and all liability related thereto. Neither this Settlement Agreement nor any actions undertaken by the NFL Parties or the Released Parties in the negotiation, execution, or satisfaction of this Settlement Agreement will constitute, or be construed as, an admission of any liability or wrongdoing, or recognition of the validity of any claim made by the Class and Subclass Representatives, the Settlement Class, any Settlement Class Member, or any Opt Out, in this or any other action or proceeding.

Section 24.2     In no event will the Settlement Agreement, whether or not the Class Action Settlement becomes effective, or any of its provisions, or any negotiations, statements, or court proceedings relating to its provisions, or any actions undertaken in this Settlement Agreement, in any way be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, of any kind, or used in any other fashion, by the Class and Subclass Representatives, the Settlement Class, any Settlement Class Member, Class Counsel, or any of the Released Parties in any litigation, action, hearing, or any judicial, arbitral, administrative, regulatory or other proceeding for any purpose, except a proceeding to resolve a dispute arising under, or to enforce, the Settlement Agreement. Without limiting the foregoing, neither the Settlement Agreement nor any of its provisions, negotiations, statements, or court proceedings relating to its provisions, nor any actions undertaken in this Settlement Agreement, will be construed as, offered as, received as, used as, or deemed to be

85

evidence, admissible or otherwise, or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Released Parties, or as a waiver by the Released Parties of any applicable defense, or as a waiver by the Class and Subclass Representatives, the Settlement Class, any Settlement Class Member of any claims, causes of action, or remedies. This Section 24.2 shall not apply to disputes between the NFL Parties and their insurers, as to which the NFL Parties reserve all rights.

## ARTICLE XXV
### Representations and Warranties

Section 25.1    Authority.  Class Counsel represent and warrant as of the Settlement Date that they have authority to enter into this Settlement Agreement on behalf of the Class and Subclass Representatives.

Section 25.2    Class and Subclass Representatives.  Each of the Class and Subclass Representatives, through a duly authorized representative, represents and warrants that he:  (i) has agreed to serve as a representative of the Settlement Class proposed to be certified herein; (ii) is willing, able, and ready to perform all of the duties and obligations as a representative of the Settlement Class; (iii) is familiar with the pleadings in In re: National Football League Players' Concussion Injury Litigation, MDL 2323, or has had the contents of such pleadings described to him; (iv) is familiar with the terms of this Settlement Agreement, including the exhibits attached to this Settlement Agreement, or has received a description of the Settlement Agreement, including the exhibits attached to this Settlement Agreement, from Class Counsel, and has agreed to its terms; (v) has consulted with, and received legal advice from, Class Counsel about the litigation, this Settlement Agreement (including the advisability of entering into this Settlement Agreement and its Releases and the legal effects of this Settlement Agreements and its Releases), and the obligations of a representative of the Settlement Class; (vi) has authorized Class Counsel to execute this Settlement Agreement on his behalf; and (vii) will remain in and not request exclusion from the Settlement Class and will serve as a representative of the Settlement Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that such Class or Subclass Representative cannot represent the Settlement Class.

Section 25.3    NFL Parties.  The NFL Parties represent and warrant as of the Settlement Date that:  (i) they have all requisite corporate power and authority to execute, deliver, and perform this Settlement Agreement; (ii) the execution, delivery, and performance by the NFL Parties of this Settlement Agreement has been duly authorized by all necessary corporate action; (iii) this Settlement Agreement has been duly and validly executed and delivered by the NFL Parties; and (iv) this Settlement Agreement constitutes their legal, valid, and binding obligation.

Section 25.4    NFL Parties' Representation and Warranty Regarding Member Clubs.  The NFL Parties represent and warrant as of the Settlement Date that the

86

current Member Clubs have duly authorized the execution, delivery, and performance by the NFL Parties of this Settlement Agreement.

Section 25.5    <u>Investigation and Future Events</u>.  The Parties and their counsel represent and warrant that they have each performed an independent investigation of the allegations of fact and law made in connection with the Class Action Complaint in <u>In re: National Football League Players' Concussion Injury Litigation</u>, MDL No. 2323, and may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of this Settlement Agreement.  Nevertheless, the Parties intend to resolve their disputes pursuant to the terms of this Settlement Agreement and thus, in furtherance of their intentions, this Settlement Agreement will remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Settlement Agreement will not be subject to rescission or modification by reason of any change or difference in facts or law.

Section 25.6    <u>Security</u>

(a)    The NFL Parties represent and warrant that the NFL currently maintains, and will continue to maintain, an investment grade rating on its Stadium Program Bonds, as rated by Fitch Ratings.  This investment grade rating shall serve as security that the NFL Parties will meet their payment obligations as set forth in Section 23.3 for the first ten years of the Settlement following the Effective Date.

(b)    If the identity of the rating agency that rates the NFL's Stadium Program Bonds changes during the first ten years of the Settlement from the Effective Date, then an investment grade rating by the new rating agency on the NFL's Stadium Program Bonds will satisfy the NFL Parties' obligations under Section 25.6(a).

(c)    The applicable definition of "investment grade" will be as provided by the rating agency rating the  NFL's Stadium Program Bonds.

(d)    No later than the tenth anniversary of the Effective Date (the "Tenth Anniversary Date"), the NFL Parties shall establish, or cause to be established, a special-purpose Delaware statutory trust (the "Statutory Trust"), with an independent trustee, that will be funded and managed as follows:  the NFL Parties shall contribute cash to the Statutory Trust so that as of the Tenth Anniversary Date, it shall contain funds that, in the reasonable belief of the NFL Parties, and after taking into account reasonably expected investment returns over time, will be sufficient to satisfy the NFL Parties' remaining anticipated payment obligations, as set forth in Section 23.5(d)(ii), as they come due.  In the event that the remaining anticipated payment obligations on the Tenth Anniversary Date materially exceed the NFL Parties' reasonable expectations as of the Effective Date due to participation rates and/or the claims experience during the first ten years of the Settlement, the NFL Parties may apply to the Court to fund the Statutory Trust as follows: seventy percent of the required funds to be contributed by the NFL Parties to the Statutory Trust by the Tenth Anniversary Date and the remaining thirty percent of the required funds to be contributed on a three-year

87

schedule set by the Court so that all required funds are deposited in the Statutory Trust no later than the thirteenth anniversary of the Effective Date. The NFL Parties shall not have the right to pledge or assign the property of the Statutory Trust (including any investment returns earned thereon and remaining in the Statutory Trust, as provided herein) to any third-party, and, as contemplated by §3805(b) of Title 12 of the Delaware Code, no other creditor of any of the NFL Parties shall have any right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the Statutory Trust. The documents governing the Statutory Trust will provide that the NFL Parties may direct how the funds in the Statutory Trust are invested from time to time, but the Trustee will be instructed to permit withdrawals of funds from the Statutory Trust only for the limited purposes of: (i) satisfying the NFL Parties' payment obligations under this Settlement Agreement as set forth in Section 23.5(d)(ii); (ii) the NFL Parties' costs and expenses related to the Statutory Trust, including, without limitation, taxes, investment-related expenses and administrative costs; (iii) the return of excess monies in the Statutory Trust to the NFL Parties based on attaining investment returns exceeding the amount necessary to satisfy the NFL Parties' remaining anticipated payment obligations, but only upon Court approval; (iv) the return of excess monies in the Statutory Trust to the NFL Parties based on reductions to the NFL Parties' remaining anticipated payment obligations, but only upon Court approval; or (v) upon the completion of the NFL Parties' payment obligations, as set forth in this Settlement Agreement, but only upon Court approval. To the extent that Court approval is required for the withdrawal of funds from the Statutory Trust, such approval shall be granted unless there has been either a material default on the NFL Parties' payment obligations within the prior thirty (30) days, or upon a showing, by clear and convincing evidence, that the proposed withdrawal would materially impair the Settlement Agreement.

(e)    In the event of a material default by the NFL Parties in satisfying their payment obligations as set forth in this Settlement Agreement, and the NFL Parties' failure to cure any such material default within sixty (60) days of written notification of such default by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel shall have the right to petition the Court to make a finding that there has been a material, uncured default in satisfying the NFL Parties' payment obligations and to enter an order directing the NFL Parties to meet their payment obligations. Beginning on the Tenth Anniversary Date, any such petition by Co-Lead Class Counsel may request that the Court direct the NFL Parties to meet their payment obligations with the funds available in the Statutory Trust established by the NFL Parties pursuant to Section 25.6(d).

(f)    The NFL Parties historically have maintained liability insurance policies under which they are seeking coverage and are pursuing their rights to recover under said policies. It is understood that if the NFL Parties secure funding commitments from one or more insurers under their historical policies, or a court order obligating one or more such insurers to fund in whole or in part certain of the NFL Parties' obligations under this Settlement Agreement, after such insurance funding is deposited into the Statutory Trust, the NFL Parties may seek Court approval to reduce, dollar-for-dollar, the equivalent amount of such funding for anticipated remaining liabilities that otherwise would be required to be deposited in the Statutory Trust by the

NFL Parties pursuant to Section 25.6(d). In addition, if the NFL Parties obtain additional insurance policies from one or more third-party insurers with a rating of A or above, to insure in whole or in part certain of their obligations under the Settlement, the NFL Parties may seek Court approval to reduce, dollar-for-dollar, the equivalent amount of funding for anticipated remaining liabilities that otherwise would be required to be deposited in the Statutory Trust by the NFL Parties pursuant to Section 25.6(d). To do so, the NFL Parties must demonstrate to the Court that the Court or the Statutory Trust provided for in Section 25.6(d) will have sufficient control over such insurance policies and their proceeds to ensure that the proceeds are available to meet the NFL Parties' payment obligations, if necessary.

(g)    In the event the Court enters an order pursuant to Section 25.6(e) directing the NFL Parties to meet their payment obligations pursuant to Section 23.3 and the NFL Parties fail materially to comply with such Order, as set forth in Section 25.6(e), Co-Lead Class Counsel may request that the Court provide the NFL Parties sixty (60) days to show cause why the Court shall not render null and void the Releases and Covenants Not to Sue provided to Released Parties, as set forth in Section 18.1, by Settlement Class Members who: (i) have received a final, favorable Notice of Registration Determination, as set forth in Section 4.3, and have not received a final and accrued Monetary Award or final and accrued Derivative Claimant Award as of the date of such application; or (ii) who have only received a final and accrued Monetary Award for a Level 1.5 Neurocognitive Impairment or a final and accrued Derivative Claimant Award for a Level 1.5 Neurocognitive Impairment as of the date of such application. For the avoidance of any doubt, all other Releases and Covenants Not to Sue shall remain effective. In the event that a Settlement Class Member's Release and Covenant Not to Sue is rendered null and void, such Settlement Class Member shall not challenge, if applicable, any Released Party's right to offset any final judgment received by the Settlement Class Member as a result of Section 25.6(g)(ii) in the amount of the Monetary Award or Derivative Claimant Award received by the Settlement Class Member. For the avoidance of any doubt, nothing in this subsection 25.6, shall affect any rights or obligations of Settlement Class Members and Released Parties as otherwise provided in, or with respect to, this Settlement Agreement or any breach thereof.

## ARTICLE XXVI
## Cooperation

Section 26.1   The Parties will cooperate, assist, and undertake all reasonable actions to accomplish the steps contemplated by this Settlement Agreement and to implement the Class Action Settlement on the terms and conditions provided herein.

Section 26.2   The Parties agree to take all actions necessary to obtain final approval of the Class Action Settlement and entry of a Final Order and Judgment, including the terms and provisions described in this Settlement Agreement, and, upon final approval and entry of such order, an order dismissing the Class Action Complaint

and Related Lawsuits with prejudice as to the Class and Subclass Representatives, the Settlement Class, and each Settlement Class Member.

Section 26.3    The Parties and their counsel agree to support the final approval and implementation of this Settlement Agreement and defend it against objections, appeal, collateral attack or any efforts to hinder or delay its approval and implementation.    Neither the Parties nor their counsel, directly or indirectly, will encourage any person to object to the Class Action Settlement or assist them in doing so.

## ARTICLE XXVII
### Continuing Jurisdiction

Section 27.1    Pursuant to the Final Order and Judgment, the Court will retain continuing and exclusive jurisdiction over the Parties and their counsel, all Settlement Class Members, the Special Master, BAP Administrator, Claims Administrator, Liens Resolution Administrator, Appeals Advisory Panel, Appeals Advisory Panel Consultants, and Trustee with respect to the terms of the Settlement Agreement.    Any disputes or controversies arising out of, or related to, the interpretation, implementation, administration, and enforcement of this Settlement Agreement will be made by motion to the Court.    In addition, the Parties, including each Settlement Class Member, are hereby deemed to have submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of, or relating to, this Settlement Agreement.    The terms of the Settlement Agreement will be incorporated into the Final Order and Judgment of the Court, which will allow that Final Order and Judgment to serve as an enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to the Settlement Agreement.

(a)    Notwithstanding any contrary law applicable to the underlying claims, this Settlement Agreement and the Releases hereunder will be interpreted and enforced in accordance with the laws of the State of New York, without regard to conflict of law principles.

## ARTICLE XXVIII
### Role of Co-Lead Class Counsel, Class Counsel and Subclass Counsel

Section 28.1    Co-Lead Class Counsel and Class Counsel acknowledge that, under applicable law, their respective duty is to the entire Settlement Class, to act in the best interest of the Settlement Class as a whole, with respect to promoting, supporting, and effectuating, as fair, adequate, and reasonable, the approval, implementation, and administration of the settlement embodied in the Settlement Agreement, and that their professional responsibilities as attorneys are to be viewed in this light, under the ongoing supervision and jurisdiction of the Court that appoints them to represent the interests of the Settlement Class.

Section 28.2    Subclass Counsel acknowledge that, under applicable law, their respective duty is to their respective Subclasses, to act in the best interest of the respective Subclass as a whole, with respect to promoting, supporting, and effectuating,

as fair, adequate, and reasonable, the approval, implementation, and administration of the settlement embodied in the Settlement Agreement, and that their professional responsibilities as attorneys are to be viewed in this light, under the ongoing supervision and jurisdiction of the Court that appoints them to represent the interests of the respective Subclass.

## ARTICLE XXIX
## Bargained-For Benefits

Section 29.1    Nothing in the Collective Bargaining Agreement will preclude Settlement Class Members from receiving benefits under the Settlement Agreement.  In addition, the fact that a Settlement Class Member has signed, or will sign, a release and covenant not to sue pursuant to Article 65 of the 2011 Collective Bargaining Agreement will not preclude the Settlement Class Member from receiving benefits under the Settlement Agreement, and the NFL Parties agree not to assert any defense or objection to the Settlement Class Member's receipt of benefits under the Settlement Agreement on the ground that he executed a release and covenant not to sue pursuant to Article 65 of the 2011 Collective Bargaining Agreement.

Section 29.2    A Retired NFL Football Player's participation in the Settlement Agreement will not in any way affect his eligibility for bargained-for benefits under the Collective Bargaining Agreement or the terms or conditions under which those benefits are provided, except as set forth in Section 18.1.

## ARTICLE XXX
## Miscellaneous Provisions

Section 30.1    No Assignment of Claims.    Neither the Settlement Class nor any Class or Subclass Representative or Settlement Class Member has assigned, will assign, or will attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint.  Any such assignment, or attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint will be void, invalid, and of no force and effect and the Claims Administrator shall not recognize any such action.

Section 30.2    Individual Counsel

(a)    Counsel individually representing a Settlement Class Member shall provide notice of his or her representation to the Claims Administrator within thirty (30) days of the Effective Date or within thirty (30) days of the retention if Counsel is retained after the Effective Date.  Counsel acting on his or her client's behalf may submit all claim forms, proof, correspondence, or other documents to the Special Master, BAP Administrator, Claims Administrator or Lien Resolution Administrator on behalf of that Settlement Class Member; provided, however, that counsel individually representing a Settlement Class Member may not sign on behalf of that Settlement Class Member:  (i) an Opt Out request; (ii) a revocation of an Opt Out; (iii) an objection, as set

91

forth in Section 14.3; (iv) a Claim Form, (v) a Derivative Claim Form, or (vi) an Appeals Form.

(b)    Where a Settlement Class Member indicates in writing to the Special Master, BAP Administrator, Claims Administrator or Lien Resolution Administrator that he or she is individually represented by counsel, the Special Master, BAP Administrator, Claims Administrator or Lien Resolution Administrator will copy the counsel individually representing a Settlement Class Member on any written communications with the Settlement Class Member. Any communications, whether written or oral, by the Special Master, BAP Administrator, Claims Administrator or Lien Resolution Administrator with counsel individually representing a Settlement Class Member will be deemed to be a communication directly with such individually represented Settlement Class Member.

Section 30.3    <u>Integration</u>. This Settlement Agreement and its exhibits, attachments, and appendices will constitute the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, letters, conversations, agreements, term sheets, and understandings, whether written or oral, relating to the subject matter of this Settlement Agreement, including the Settlement Term Sheet dated August 29, 2013. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, agreement, arrangement, or understanding, whether written or oral, concerning any part or all of the subject matter of this Settlement Agreement has been made or relied on except as expressly set forth in this Settlement Agreement.

Section 30.4    <u>Headings</u>. The headings used in this Settlement Agreement are intended for the convenience of the reader only and will not affect the meaning or interpretation of this Settlement Agreement in any manner. Any inconsistency between the headings used in this Settlement Agreement and the text of the Articles and Sections of this Settlement Agreement will be resolved in favor of the text.

Section 30.5    <u>Incorporation of Exhibits</u>. All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. Notwithstanding the foregoing, any inconsistency between this Settlement Agreement and any attachments, exhibits, or appendices hereto will be resolved in favor of this Settlement Agreement.

Section 30.6    <u>Amendment</u>. This Settlement Agreement will not be subject to any change, modification, amendment, or addition without the express written consent of Class Counsel and Counsel for the NFL Parties, on behalf of all Parties to this Settlement Agreement, and upon Court approval.

Section 30.7    <u>Mutual Preparation</u>. The Parties have negotiated all of the terms and conditions of this Settlement Agreement at arm's length. Neither the Settlement Class Members nor the NFL Parties, nor any one of them, nor any of their counsel will be considered to be the sole drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or

construction that would or might cause any provision to be construed against the drafter of this Settlement Agreement. This Settlement Agreement will be deemed to have been mutually prepared by the Parties and will not be construed against any of them by reason of authorship.

Section 30.8    Beneficiaries.    This Settlement Agreement will be binding upon the Parties and will inure to the benefit of the Settlement Class Members and the Released Parties. All Released Parties who are not the NFL Parties are intended third-party beneficiaries who are entitled to enforce the terms of the Releases and Covenant Not to Sue set forth in ARTICLE XVIII. No provision in this Settlement Agreement is intended to create any third-party beneficiary to this Settlement Agreement other than the Released Parties. Nothing expressed or implied in this Settlement Agreement is intended to or will be construed to confer upon or give any person or entity other than Class and Subclass Representatives, the Settlement Class Members, Class Counsel, the NFL Parties, the Released Parties, and Counsel for the NFL Parties, any right or remedy under or by reason of this Settlement Agreement.

Section 30.9    Extensions of Time.    Co-Lead Class Counsel and Counsel for the NFL Parties may agree in writing, subject to approval of the Court where required, to reasonable extensions of time to implement the provisions of this Settlement Agreement.

Section 30.10    Execution in Counterparts.    This Settlement Agreement may be executed in counterparts, and a facsimile signature will be deemed an original signature for purposes of this Settlement Agreement.

Section 30.11    Good Faith Implementation.    Co-Lead Class Counsel and Counsel for the NFL Parties will undertake to implement the terms of this Settlement Agreement in good faith. Before filing any motion or petition in the Court raising a dispute arising out of or related to this Settlement Agreement, Co-Lead Class Counsel and Counsel for the NFL Parties will consult with each other in good faith and certify to the Court that they have conferred in good faith.

Section 30.12    Force Majeure.    The Parties will be excused from any failure to perform timely any obligation hereunder to the extent such failure is caused by war, acts of public enemies or terrorists, strikes or other labor disturbances, fires, floods, acts of God, or any causes of the like or different kind beyond the reasonable control of the Parties.

Section 30.13    Waiver.    The waiver by any Party of any breach of this Settlement Agreement by another Party will not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

Section 30.14    Tax Consequences.    No opinion regarding the tax consequences of this Settlement Agreement to any individual Settlement Class Member is being given or will be given by the NFL Parties, Counsel for the NFL Parties, Class

and Subclass Representatives, Class Counsel, nor is any representation or warranty in this regard made by virtue of this Settlement Agreement. Settlement Class Members must consult their own tax advisors regarding the tax consequences of the Settlement Agreement, including any payments provided hereunder and any tax reporting obligations they may have with respect thereto. Each Settlement Class Member's tax obligations, and the determination thereof, are his or her sole responsibility, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member. The NFL Parties, Counsel for the NFL Parties, Class Counsel will have no liability or responsibility whatsoever for any such tax consequences resulting from payments under this Settlement Agreement. To the extent required by law, the Claims Administrator will report payments made under the Settlement Agreement to the appropriate authorities.

Section 30.15 <u>Issuance of Notices and Submission of Materials</u>. In any instance in which this Settlement Agreement requires the issuance of any notice regarding registration, a claim or an award, unless specified otherwise in this Settlement Agreement, such notice must be issued by: (a) online submission through any secure web-based portal established by the Claims Administrator for this purpose to the Settlement Class Member or NFL Parties, which shall be accompanied by an email certifying receipt; or (b) U.S. mail (or its foreign equivalent). In any instance in which this Settlement Agreement requires submission of materials by or on behalf of a Settlement Class Member or the NFL Parties, unless specified otherwise in this Settlement Agreement, such submission must be made by: (a) online submission through any secure web-based portal established by the Claims Administrator for this purpose; or (b) U.S. mail (or its foreign equivalent); or (c) delivery. Written notice to the Class Representatives or Co-Lead Class Counsel must be given to: Christopher A. Seeger, Seeger Weiss LLP, 77 Water Street, New York, New York 10005; and Sol Weiss, Anapol Schwartz, 1710 Spruce Street, Philadelphia, PA 19103. Written notice to the NFL Parties or Counsel for the NFL Parties must be given to: Jeffrey Pash, Executive Vice President and General Counsel, National Football League, 345 Park Avenue, New York, New York 10154; Anastasia Danias, Senior Vice President and Chief Litigation Officer, National Football League, 345 Park Avenue, New York, New York 10154; and Brad S. Karp, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, or such other person or persons as shall be designated by the Parties.

<div align="center">94</div>

Section 30.16 <u>Party Burden</u>.    Unless explicitly provided otherwise, whenever a showing is required to be made in this Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

Agreed to as of this 25th day of June, 2014.

NATIONAL FOOTBALL LEAGUE, NFL PROPERTIES LLC

By: _____
    Jeffrey Pash
    NFL Executive Vice President


COUNSEL FOR THE NFL PARTIES

By: _____
    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
    Brad S. Karp
    Theodore V. Wells, Jr.
    Bruce Birenboim
    Beth A. Wilkinson
    Lynn B. Bayard


CO-LEAD CLASS COUNSEL

By: _____      By: _____
    SEEGER WEISS LLP                ANAPOL SCHWARTZ
    Christopher A. Seeger           Sol Weiss

CLASS COUNSEL

By: _____      By: _____
    PODHURST ORSECK, P.A.          LOCKS LAW FIRM
    Steven C. Marks                Gene Locks

SUBCLASS COUNSEL

By: _____      By: _____
    LEVIN, FISHBEIN, SEDRAN &      NASTLAW LLC
    BERMAN                         Dianne M. Nast
    Arnold Levin

Section 30.16 <u>Party Burden</u>.    Unless explicitly provided otherwise, whenever a showing is required to be made in this Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

Agreed to as of this 25th day of June, 2014.

NATIONAL FOOTBALL LEAGUE, NFL PROPERTIES LLC

By: _____
    Jeffrey Pash
    NFL Executive Vice President


COUNSEL FOR THE NFL PARTIES

By: _____
    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
    Brad S. Karp
    Theodore V. Wells, Jr.
    Bruce Birenboim
    Beth A. Wilkinson
    Lynn B. Bayard


CO-LEAD CLASS COUNSEL

By: _____        By: _____
    SEEGER WEISS LLP              ANAPOL SCHWARTZ
    Christopher A. Seeger          Sol Weiss

CLASS COUNSEL

By: _____        By: _____
    PODHURST ORSECK, P.A.       LOCKS LAW FIRM
    Steven C. Marks             Gene Locks

SUBCLASS COUNSEL

By: _____        By: _____
    LEVIN, FISHBEIN, SEDRAN &       NASTLAW LLC
    BERMAN                 Dianne M. Nast
    Arnold Levin

Date Filed: 10/08/2025          Page: 945          Document: 20-1          Case: 25-2271

Section 30.16 <u>Party Burden</u>.   Unless explicitly provided otherwise, whenever a showing is required to be made in this Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

Agreed to as of this 25th day of June, 2014.

NATIONAL FOOTBALL LEAGUE , NFL PROPERTIES LLC

By: _____
    Jeffrey Pash
    NFL Executive Vice President

COUNSEL FOR THE NFL PARTIES

By: _____
    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
    Brad S. Karp
    Theodore V. Wells, Jr.
    Bruce Birenboim
    Beth A. Wilkinson
    Lynn B. Bayard

CO-LEAD CLASS COUNSEL

By: _____
    SEEGER WEISS LLP
    Christopher A. Seeger

By: _____
    ANAPOL SCHWARTZ
    Sol Weiss

CLASS COUNSEL

By: _____
    PODHURST ORSECK, P.A.
    Steven C. Marks

By: _____
    LOCKS LAW FIRM
    Gene Locks

SUBCLASS COUNSEL

By: _____
    LEVIN, FISHBEIN, SEDRAN &
    BERMAN
    Arnold Levin

By: _____
    NASTLAW LLC
    Dianne M. Nast

95

Section 30.16 <u>Party Burden</u>.    Unless explicitly provided otherwise, whenever a showing is required to be made in this Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

Agreed to as of this 25th day of June, 2014.

NATIONAL FOOTBALL LEAGUE, NFL PROPERTIES LLC

By: _____
    Jeffrey Pash
    NFL Executive Vice President


COUNSEL FOR THE NFL PARTIES

By: _____
    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
    Brad S. Karp
    Theodore V. Wells, Jr.
    Bruce Birenboim
    Beth A. Wilkinson
    Lynn B. Bayard


CO-LEAD CLASS COUNSEL

| By: _____ | By: _____ |
|---|---|
| SEEGER WEISS LLP | ANAPOL SCHWARTZ |
| Christopher A. Seeger | Sol Weiss |

CLASS COUNSEL

| By: _____ | By: _____ |
|---|---|
| PODHURST ORSECK, P.A. | LOCKS LAW FIRM |
| Steven C. Marks | Gene Locks |

SUBCLASS COUNSEL

| By: _____ | By: _____ |
|---|---|
| LEVIN, FISHBEIN, SEDRAN & | NASTLAW LLC |
| BERMAN | Dianne M. Nast |
| Arnold Levin | |

95

Case: 25-2271     Document: 20-1     Page: 947     Date Filed: 10/08/2025

Section 30.16 <u>Party Burden</u>.   Unless explicitly provided otherwise, whenever a showing is required to be made in this Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

Agreed to as of this 25th day of June, 2014.

NATIONAL FOOTBALL LEAGUE, NFL PROPERTIES LLC

By: _____
    Jeffrey Pash
    NFL Executive Vice President


COUNSEL FOR THE NFL PARTIES

By: _____
    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
    Brad S. Karp
    Theodore V. Wells, Jr.
    Bruce Birenboim
    Beth A. Wilkinson
    Lynn B. Bayard


CO-LEAD CLASS COUNSEL

By: _____      By: _____
    SEEGER WEISS LLP                ANAPOL SCHWARTZ
    Christopher A. Seeger             Sol Weiss

CLASS COUNSEL

By: _____      By: _____
    PODHURST ORSECK, P.A.        LOCKS LAW FIRM
    Steven C. Marks                  Gene Locks

SUBCLASS COUNSEL

By: _____      By: _____
    LEVIN, FISHBEIN, SEDRAN &       NASTLAW LLC
    BERMAN                          Dianne M. Nast
    Arnold Levin

95

Section 30.16 <u>Party Burden</u>.    Unless explicitly provided otherwise, whenever a showing is required to be made in this Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

Agreed to as of this 25th day of June, 2014.

NATIONAL FOOTBALL LEAGUE, NFL PROPERTIES LLC

By: _____
    Jeffrey Pash
    NFL Executive Vice President


COUNSEL FOR THE NFL PARTIES

By: _____
    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
    Brad S. Karp
    Theodore V. Wells, Jr.
    Bruce Birenboim
    Beth A. Wilkinson
    Lynn B. Bayard


CO-LEAD CLASS COUNSEL

By: _____        By: _____
    SEEGER WEISS LLP            ANAPOL SCHWARTZ
    Christopher A. Seeger          Sol Weiss

CLASS COUNSEL

By: _____        By: _____
    PODHURST ORSECK, P.A.       LOCKS LAW FIRM
    Steven C. Marks            Gene Locks

SUBCLASS COUNSEL

By: _____        By: _____
    LEVIN, FISHBEIN, SEDRAN &     NASTLAW LLC
    BERMAN                  Dianne M. Nast
    Arnold Levin

95

Section 30.16 <u>Party Burden</u>.   Unless explicitly provided otherwise, whenever a showing is required to be made in this Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

Agreed to as of this 25th day of June, 2014.

NATIONAL FOOTBALL LEAGUE, NFL PROPERTIES LLC

By: _____
    Jeffrey Pash
    NFL Executive Vice President


COUNSEL FOR THE NFL PARTIES

By: _____
    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
    Brad S. Karp
    Theodore V. Wells, Jr.
    Bruce Birenboim
    Beth A. Wilkinson
    Lynn B. Bayard


CO-LEAD CLASS COUNSEL

By: _____       By: _____
    SEEGER WEISS LLP          ANAPOL SCHWARTZ
    Christopher A. Seeger        Sol Weiss

CLASS COUNSEL

By: _____       By: _____
    PODHURST ORSECK, P.A.      LOCKS LAW FIRM
    Steven C. Marks           Gene Locks

SUBCLASS COUNSEL

By: _____       By: _____
    LEVIN, FISHBEIN, SEDRAN &    NASTLAW LLC
    BERMAN               Dianne M. Nast
    Arnold Levin

Date Filed: 10/08/2025   Page: 949   Document: 20-1   Case: 25-2271

# Exhibit B-1

| **INJURY DEFINITIONS** |
|---|

## DIAGNOSIS FOR BAP SUPPLEMENTAL BENEFITS

### Level 1 Neurocognitive Impairment

(a)     For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 1 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

(i)     Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a decline in cognitive function.

(ii)     Evidence of moderate cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

(iii)     The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating scale Category 0.5 (Questionable) in the areas of Community Affairs, Home & Hobbies, and Personal Care.

(iv)     The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

(b)     Level 1 Neurocognitive Impairment, for the purposes of this Settlement Agreement, may only be diagnosed by Qualified BAP Providers during a BAP baseline assessment examination, with agreement on the diagnosis by the Qualified BAP Providers.

Exhibit 1                                                                                         Page 1

## QUALIFYING DIAGNOSES FOR MONETARY AWARDS

1. **Level 1.5 Neurocognitive Impairment**

    (a)    For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 1.5 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

    (i)    Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a severe decline in cognitive function.

    (ii)    Evidence of a moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

    (iii)    The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 1.0 (Mild) in the areas of Community Affairs, Home & Hobbies, and Personal Care. Such functional impairment shall be corroborated by documentary evidence (*e.g.*, medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis. In the event that no documentary evidence of functional impairment exists or is available, then (a) there must be evidence of moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and (b) the Retired NFL Football Player's functional impairment, as described above, must be corroborated by a third-party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.

    (iv)    The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

    (b)    For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 1.5 Neurocognitive Impairment, *i.e.*, early dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 1(a)(i)-(iv) above, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

    (c)    For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Level 1.5 Neurocognitive Impairment, *i.e.*, early dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 1(a)(i)-(iv)

above, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology or neurocognitive disorders, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

2.    **Level 2 Neurocognitive Impairment**

(a)    For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 2 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

(i)    Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a severe decline in cognitive function.

(ii)    Evidence of a severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

(iii)    The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 2.0 (Moderate) in the areas of Community Affairs, Home & Hobbies, and Personal Care.  Such functional impairment shall be corroborated by documentary evidence (*e.g.*, medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.  In the event that no documentary evidence of functional impairment exists or is available, then (a) there must be evidence of severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and (b) the Retired NFL Football Player's functional impairment, as described above, must be corroborated by a third-party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.

(iv)    The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

(b)    For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 2 Neurocognitive Impairment, *i.e.*, moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) above, unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) is medically unnecessary because the Retired NFL Football Player's dementia is so severe, made by a Qualified MAF Physician or a board-certified

Exhibit 1                                                                                           Page 3

or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(c)    For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Level 2 Neurocognitive Impairment, *i.e.*, moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) above, unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) was medically unnecessary because the Retired NFL Football Player's dementia was so severe, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology or neurocognitive disorders, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

3.    **Alzheimer's Disease**

(a)    For living Retired NFL Football Players, a diagnosis while living of the specific disease of Alzheimer's Disease as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), or a diagnosis of Major Neurocognitive Disorder due to probable Alzheimer's Disease as defined in the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b)    For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Major Neurocognitive Disorder due to probable Alzheimer's Disease consistent with the definition in *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5), or a diagnosis of Alzheimer's Disease, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

4.    **Parkinson's Disease**

(a)    For living Retired NFL Football Players, a diagnosis while living of the specific disease of Parkinson's Disease as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), or a diagnosis of Major Neurocognitive Disorder probably due to Parkinson's Disease as defined in the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b)    For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Parkinson's Disease, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist

Exhibit 1                                                                                    Page 4

physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

5. **Death with Chronic Traumatic Encephalopathy (CTE)**

For Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order, a post-mortem diagnosis of CTE made by a board-certified neuropathologist.

6. **Amyotrophic Lateral Sclerosis (ALS)**

(a)    For living Retired NFL Football Players, a diagnosis while living of the specific disease of Amyotrophic Lateral Sclerosis, also known as Lou Gehrig's Disease ("ALS"), as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9) or the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b)    For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of ALS, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified   neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

Exhibit 1                                                                                                     Page 5

-979-

# Exhibit B-2

**BASELINE NEUROPSYCHOLOGICAL TEST BATTERY AND SPECIFIC IMPAIRMENT CRITERIA FOR RETIRED NFL FOOTBALL PLAYERS**

**Section 1. Test Battery**

| Estimating Premorbid Intellectual Ability | Learning and Memory (6 scores) |
|---|---|
| ACS Test of Premorbid Functioning (TOPF) | WMS-IV Logical Memory I |
| **Complex Attention/Processing Speed (6 scores)** | WMS-IV Logical Memory II |
| WAIS-IV Digit Span | WMS-IV Verbal Paired Associates I |
| WAIS-IV Arithmetic | WMS-IV Verbal Paired Associates II |
| WAIS-IV Letter Number Sequencing | WMS-IV Visual Reproduction I |
| WAIS-IV Coding | WMS-IV Visual Reproduction II |
|  |  |
| WAIS-IV Symbol Search | **Language (3 scores)** |
| WAIS-IV Cancellation | Boston Naming Test |
| **Executive Functioning (4 scores)** | Category Fluency (Animal Naming) |
| Verbal Fluency (FAS) | BDAE Complex Ideational Material |
| Trails B | **Spatial-Perceptual (3 scores)** |
| Booklet Category Test | WAIS-IV Block Design |
| WAIS-IV Similarities | WAIS-IV Visual Puzzles |
| **Effort/Performance Validity (8 scores)** | WAIS-IV Matrix Reasoning |
| *ACS Effort Scores* | **Mental Health** |
| ACS-WAIS-IV Reliable Digit Span | MMPI-2RF |
| ACS-WMS-IV Logical Memory Recognition | Mini International Neuropsychiatric Interview |
| ACS-WMS-IV Verbal Paired Associates Recognition |  |
| ACS-WMS-IV Visual Reproduction Recognition |  |
| ACS-Word Choice |  |
| *Additional Effort Tests* |  |
| Test of Memory Malingering (TOMM) |  |
| Medical Symptom Validity Test (MSVT) |  |

Exhibit 2                                                                                           Page 1

**Section 2: Evaluate Performance Validity**

Freestanding, embedded and regression based performance validity metrics will be administered to each Retired NFL Football Player during baseline and, if relevant, subsequent neuropsychological examinations. There will be at least seven performance validity metrics utilized during each assessment. The specific performance validity metrics utilized will not be released to the public in order to maintain the highest standards of assessment validity.  The performance validity metrics employed will be rotated at intervals determined  by the Appeals Advisory Panel in consultation with Co-Lead Class Counsel and Counsel for the NFL Parties.

Each neuropsychological examiner must complete a checklist of validity criteria as set forth in *Slick et al.* 1999, and revised in 2013 (see below) for every Retired NFL Football Player examined in order to determine whether the Retired NFL Football Player's test data is a valid reflection of his optimal level of neurocognitive functioning.

1. Suboptimal scores on performance validity embedded indicators or tests. The cutoffs for each test should be established based on empirical findings.

2. A pattern of neuropsychological test performance that is markedly discrepant from currently accepted models of normal and abnormal central nervous system (CNS) function. The discrepancy must be consistent with an attempt to exaggerate or fabricate neuropsychological dysfunction (e.g., a patient performs in the severely impaired range on verbal attention measures but in the average range on memory testing; a patient misses items on recognition testing that were consistently provided on previous free recall trials, or misses many easy items when significantly harder items from the same test are passed).

3. Discrepancy between test data and observed behavior. Performance on two or more neuropsychological tests within a domain are discrepant with observed level of cognitive function in a way that suggests exaggeration or fabrication of dysfunction (e.g., a well-educated patient who presents with no significant visual-perceptual deficits or language disturbance in conversational speech performs in the severely impaired range on verbal fluency and confrontation naming tests).

4. Discrepancy between test data and reliable collateral reports. Performance on two or more neuropsychological tests within a domain are discrepant with day-to-day level of cognitive function described by at least one reliable collateral informant in a way that suggests exaggeration or fabrication of dysfunction (e.g., a patient handles all family finances but is unable to perform simple math problems in testing).

5. Discrepancy between test data and documented background history. Improbably poor performance on two or more standardized tests of cognitive function within a specific domain (e.g., memory) that is inconsistent with documented neurological or psychiatric history.

Exhibit 2                                                                                                    Page 2

6. Self-reported history is discrepant with documented history. Reported history is markedly discrepant with documented medical or psychosocial history and suggests attempts to exaggerate deficits.

7. Self-reported symptoms are discrepant with known patterns of brain functioning. Reported or endorsed symptoms are improbable in number, pattern, or severity; or markedly inconsistent with expectations for the type or severity of documented medical problems.

8. Self-reported symptoms are discrepant with behavioral observations. Reported symptoms are markedly inconsistent with observed behavior (e.g., a patient complains of severe episodic memory deficits yet has little difficulty remembering names, events, or appointments; a patient complains of severe cognitive deficits yet has little difficulty driving independently and arrives on time for an appointment in an unfamiliar area; a patient complains of severely slowed mentation and concentration problems yet easily follows complex conversation).

9. Self-reported symptoms are discrepant with information obtained from collateral informants. Reported symptoms, history, or observed behavior is inconsistent with information obtained from other informants judged to be adequately reliable. The discrepancy must be consistent with an attempt to exaggerate deficits (e.g., a patient reports severe memory impairment and/or behaves as if severely memory-impaired, but his spouse reports that the patient has minimal memory dysfunction at home).

Notwithstanding a practitioner's determination of sufficient effort in accordance with the foregoing factors, a Retired NFL Football Player's failure on two or more effort tests may result in the Retired NFL Football Player's test results being subjected to independent review, or result in a need for supplemental testing of the Retired NFL Football Player.

Note: Additional information relating to the evaluation of effort and performance validity will be provided in a clinician's interpretation guide.

Exhibit 2                                                                                                    Page 3

-983-

**Section 3. Estimate Premorbid Intellectual Ability**

| Test | Ability |
|------|---------|
| Test of Premorbid Functioning (TOPF) | Reading<br><br>Reading + Demographic Variables |

The Test of Premorbid Functioning (TOPF) provides three models for predicting premorbid functioning: (a) demographics only, (b) TOPF only, and (c) combined demographics and TOPF prediction equations. For each model using demographic data, a simple and complex prediction equation can be selected. In the simple model, only sex, race/ethnicity, and education, are used in predicting premorbid ability. In the complex model, developmental, personal, and more specific demographic data is incorporated into the equations. The clinician should select a model based on the patient's background and his or her current level of reading or language impairment.

Note: It is necessary to estimate premorbid intellectual functioning in order to use the criteria for impairment set out in this document. Estimated premorbid intellectual ability will be assessed and classified as:

➢ Below Average (estimated IQ below 90);

➢ Average (estimated IQ between 90 and 109);

➢ Above Average (estimated IQ above 110).

Exhibit 2                                                                                     Page 4

-984-

**Section 4. Neuropsychological Test Score Criteria by Domain of Cognitive Functioning**

There are 5 domains of cognitive functioning. In each domain, there are several tests that contribute 3, 4, or 6 demographically-adjusted test scores for consideration. Test selection in the domains was based on the availability of demographically-adjusted normative data for Caucasians and African Americans. These domains and scores are set out below.

The basic principle for defining impairment on testing is that there must be a pattern of performance that is approximately 1.5 standard deviations (for Level 1 Impairment), 1.7-1.8 standard deviations (for Level 1.5 Impairment) or 2 standard deviations (for Level 2 Impairment) below the person's expected level of premorbid functioning. Therefore, it is necessary to have more than one low test score in each domain.    A user manual will be provided to neuropsychologists setting out the cutoff scores, criteria for identifying impairment in each cognitive domain, and statistical and normative data to support the impairment criteria.

| Domain/Test | Ability |
|---|---|
| **Complex Attention/Speed of Processing (6 Scores)** | |
| Digit Span | Attention & Working Memory |
| Arithmetic | Mental Arithmetic |
| Letter Number Sequencing | Attention & Working Memory |
| Coding | Visual-Processing & Clerical Speed |
| Symbol Search | Visual-Scanning & Processing Speed |
| Cancellation | Visual-Scanning Speed |
| **Executive Functioning (4 scores)** | |
| Similarities | Verbal Reasoning |
| Verbal Fluency (FAS) | Phonemic Verbal Fluency |
| Trails B | Complex Sequencing |
| Booklet Category Test | Conceptual Reasoning |
| **Learning and Memory (6 scores)** | |
| Logical Memory I | Immediate Memory for Stories |
| Logical Memory II | Delayed Memory for Stories |
| Verbal Paired Associates I | Learning Word Pairs |
| Verbal Paired Associates II | Delayed Memory for Word Pairs |
| Visual Reproduction I | Immediate Memory for Designs |
| Visual Reproduction II | Delayed Memory for Designs |
| **Language** | |
| Boston Naming Test | Confrontation Naming |
| BDAE Complex Ideational Material | Language Comprehension |
| Category Fluency | Category (Semantic) Fluency |
| **Visual-Perceptual** | |
| Block Design | Spatial Skills & Problem Solving |
| Visual Puzzles | Visual Perceptual Reasoning |
| Matrix Reasoning | Visual Perceptual Reasoning |

Exhibit 2                                                                                    Page 5

**Impairment Criteria:** *Below Average* **Estimated Intellectual Functioning (A1 – E1)**

| | |
|---|---|
| **A1.  Complex Attention (6 test scores)** | |
| 1.  Level 1 Impairment: 3 or more scores below a T score of 35 | |
| 2.  Level 1.5 Impairment: 4 or more scores below a T score of 35; or meet for Level 1 and 2 scores below a T score of 30 | |
| 3.  Level 2 Impairment: 3 or more scores below a T score of 30 | |
| **B1.  Executive Function (4 test scores)** | |
| 1.  Level 1 Impairment: 2 or more scores below a T score of 35 | |
| 2.  Level 1.5 Impairment: 3 or more scores below a T score of 35; or meet for Level 1 and 1 score below a T score of 30 | |
| 3.  Level 2 Impairment: 2 or more scores below a T score of 30 | |
| **C1.  Learning and Memory (6 test scores)** | |
| 1.  Level 1 Impairment: 3 or more scores below a T score of 35 | |
| 2.  Level 1.5 Impairment: 4 or more scores below a T score of 35; or meet for Level 1 and 2 scores below a T score of 30 | |
| 3.  Level 2 Impairment: 3 or more scores below a T score of 30 | |
| **D1.  Language (3 test scores)** | |
| 1.  Level 1 Impairment: 3 or more scores below a T score of 37 | |
| 2.  Level 1.5 Impairment: meet for Level 1 and 2 scores below a T score of 35 | |
| 3.  Level 2 Impairment: 3 or more scores below a T score of 35 | |
| **E1.  Visual-Perceptual (3 test scores)** | |
| 1.  Level 1 Impairment: 3 or more scores below a T score of 37 | |
| 2.  Level 1.5 Impairment: meet for Level 1 and 2 scores below a T score of 35 | |
| 3.  Level 2 Impairment: 3 or more scores below a T score of 35 | |

Exhibit 2                                                                                              Page 6

-986-

**Impairment Criteria:** *Average* **Estimated Intellectual Functioning (A2 – E2)**

| **A2.  Complex Attention (6 test scores)** |
|---|
| 1.  Level 1 Impairment: 2 or more scores below a T score of 35 |
| 2.  Level 1.5 Impairment: 3 or more scores below a T score of 35; or meet for Level 1 and 1 score below a T score of 30 |
| 3.  Level 2 Impairment: 2 or more scores below a T score of 30 |
| **B2.  Executive Function (4 test scores)** |
| 1.  Level 1 Impairment: 2 or more scores below a T score of 35 |
| 2.  Level 1.5 Impairment: 3 or more scores below a T score of 35; or meet for Level 1 and 1 score below a T score of 30 |
| 3.  Level 2 Impairment: 2 or more scores below a T score of 30 |
| **C2.  Learning and Memory (6 test scores)** |
| 1.  Level 1 Impairment: 3 or more scores below a T score of 35 |
| 2.  Level 1.5 Impairment: 4 or more scores below a T score of 35; or meet for Level 1 and 1 score below a T score of 30 |
| 3.  Level 2 Impairment: 2 or more scores below a T score of 30 |
| **D2.  Language (3 test scores)** |
| 1.  Level 1 Impairment: 2 or more scores below a T score of 37 |
| 2.  Level 1.5 Impairment: 3 or more scores below a T score of 37; or meet for Level 1 and 1 score below a T score of 35 |
| 3.  Level 2 Impairment: 2 or more scores below a T score of 35 |
| **E2.  Visual-Perceptual (3 test scores)** |
| 1.  Level 1 Impairment: 2 or more scores below a T score of 37 |
| 2.  Level 1.5 Impairment: 3 or more scores below a T score of 37; or meet for Level 1 and 1 score below a T score of 35 |
| 3.  Level 2 Impairment: 2 or more scores below a T score of 35 |

Exhibit 2                                                                                               Page 7

-987-

**Impairment Criteria:** *Above Average* **Estimated Intellectual Functioning (A3 – E3)**

| |
|---|
| **A3.  Complex Attention (6 test scores)** |
| 1.  Level 1 Impairment: 2 or more scores below a T score of 35 |
| 2.  Level 1.5 Impairment: meet for Level 1 and 3 or more scores below a T score of 37 |
| 3.  Level 2 Impairment: 3 or more scores below a T score of 35 |
| **B3.  Executive Function (4 test scores)** |
| 1.  Level 1 Impairment: 2 or more scores below a T score of 37 |
| 2.  Level 1.5 Impairment: meet for Level 1 and 3 or more scores below a T score of 37; or meet for Level 1 and 1 score below a T score of 30 |
| 3.  Level 2 Impairment: 2 or more scores below a T score of 30 |
| **C3.  Learning and Memory (6 test scores)** |
| 1.  Level 1 Impairment: 2 or more scores below a T score of 35 |
| 2.  Level 1.5 Impairment: meet for Level 1 and 3 or more scores below a T score of 37 |
| 3.  Level 2 Impairment: 3 or more scores below a T score of 35 |
| **D3.  Language (3 test scores)** |
| 1.  Level 1 Impairment: 2 or more scores below a T score of 40 |
| 2.  Level 1.5 Impairment: 3 scores below at T score of 40; or meet for Level 1 and 1 score below a T score of 37 |
| 3.  Level 2 Impairment: 2 or more scores below a T score of 37 |
| **E3.  Visual-Perceptual (3 test scores)** |
| 1.  Level 1 Impairment: 2 or more scores below a T score of 40 |
| 2.  Level 1.5 Impairment: 3 scores below at T score of 40; or meet for Level 1 and 1 score below a T score of 37 |
| 3.  Level 2 Impairment: 2 or more scores below a T score of 37 |

Exhibit 2                                                                                     Page 8

**Section 5: Mental Health Assessment**

| Test | Symptoms/Functioning | Assessment |
|------|---------------------|------------|
| MMPI-2RF | Mental Health Assessment | Evaluation of Validity Scales and Configurations; T-Scores for Symptom Domains |
| Mini International Neuropsychiatric Interview (M.I.N.I. Version 5.0.0) | Semi-structured Psychiatric Interview | Scale Criteria for Various Psychiatric Diagnoses |

Exhibit 2                                                                 Page 9

-989-

# Exhibit B-3

| MONETARY AWARD GRID (BY AGE AT TIME OF QUALIFYING DIAGNOSIS) | | | | | | |
|---|---|---|---|---|---|---|

| Age Group | ALS | Death w/CTE | Parkinson's | Alzheimer's | Level 2 | Level 1.5 |
|---|---|---|---|---|---|---|
| Under 45 | $5,000,000 | $4,000,000 | $3,500,000 | $3,500,000 | $3,000,000 | $1,500,000 |
| 45-49 | $4,500,000 | $3,200,000 | $2,470,000 | $2,300,000 | $1,900,000 | $950,000 |
| 50-54 | $4,000,000 | $2,300,000 | $1,900,000 | $1,600,000 | $1,200,000 | $600,000 |
| 55-59 | $3,500,000 | $1,400,000 | $1,300,000 | $1,150,000 | $950,000 | $475,000 |
| 60-64 | $3,000,000 | $1,200,000 | $1,000,000 | $950,000 | $580,000 | $290,000 |
| 65-69 | $2,500,000 | $980,000 | $760,000 | $620,000 | $380,000 | $190,000 |
| 70-74 | $1,750,000 | $600,000 | $475,000 | $380,000 | $210,000 | $105,000 |
| 75-79 | $1,000,000 | $160,000 | $145,000 | $130,000 | $80,000 | $40,000 |
| 80+ | $300,000 | $50,000 | $50,000 | $50,000 | $50,000 | $25,000 |

The above Monetary Award levels are the <u>average base Monetary Awards</u> for each of the Qualifying Diagnoses for particular age groups, except for the "Under 45" and "80+" rows, which list the maximum and minimum base Monetary Awards, respectively, for those age groups. A Settlement Class Member's actual base Monetary Award for ages 45-79 may be higher or lower than the average base Monetary Award listed for the Retired NFL Football Player's age group, depending on the Retired NFL Football Player's actual age at the time of Qualifying Diagnosis.

Base Monetary Awards are subject to: (a) upward adjustment for inflation, as provided in Section 6.7 of the Settlement Agreement; and (b) downward adjustment based on Offsets (Number of Eligible Seasons, medically diagnosed Stroke occurring prior to a Qualifying Diagnosis, medically diagnosed Traumatic Brain Injury occurring prior to a Qualifying Diagnosis, and non-participation in the BAP by a Retired NFL Football Player in Subclass 1, under the circumstances described in detail in the Settlement Agreement), as provided in Section 6.5(b) of the Settlement Agreement.

Exhibit 3                                                                                      Page 1

-991-

# Exhibit B-4

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : : | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,*<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br>　　　　　　　　　　Defendants. | : : : : : : : : : : : : : : | Civ. Action No.: 14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : : : : | |

**[PROPOSED] FINAL ORDER AND JUDGMENT**

On January 6, 2014, Plaintiffs in the above-referenced action ("Action") filed a Class Action Complaint and on June 25, 2014 a Settlement Agreement was entered into by and among defendants the National Football League ("NFL") and NFL Properties LLC ("NFL Properties") (collectively, "NFL Parties"), by and through their attorneys, and the Class Representatives and Subclass Representatives, individually and on behalf of the Settlement Class and Subclasses, by and through Co-Lead Class Counsel, Class Counsel and Subclass Counsel.

On [DATE], the Court entered a Preliminary Approval and Conditional Class Certification Order ("Preliminary Order") that, among other things: (i) preliminarily approved

Exhibit 4                                                                                          Page 1

the Settlement Agreement; (ii) for purposes of the Settlement Agreement only, conditionally certified the Settlement Class and Subclasses; (iii) appointed Co-Lead Class Counsel, Class Counsel, and Subclass Counsel; (iv) approved the form and method of notice of the Settlement Agreement to the Settlement Class and Subclasses and directed that appropriate notice of the Settlement Agreement be disseminated; (v) scheduled a Fairness Hearing for final approval of the Settlement Agreement; and (vi) stayed this matter and all Related Lawsuits in this Court and enjoined proposed Settlement Class Members from pursuing Related Lawsuits.

In its Preliminary Order, pursuant to Fed. R. Civ. P. 23(b)(3), the Court defined and certified the Settlement Class as follows:

(i)      All living NFL Football Players who, prior to the date of the Preliminary Approval and Class Certification Order, retired, formally or informally, from playing professional football with the NFL or any Member Club, including American Football League, World League of American Football, NFL Europe League and NFL Europa League players, or were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and who no longer are under contract to a Member Club and are not seeking active employment as players with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club ("Retired NFL Football Players"); and

(ii)     Authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased or legally incapacitated or incompetent Retired NFL Football Players ("Representative Claimants"); and

(iii)    Spouses, parents, children who are dependents, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player or deceased Retired NFL Football Player ("Derivative Claimants").

In its Preliminary Order, pursuant to Fed. R. Civ. P. 23(b)(3), the Court defined and certified the Subclasses as follows:

(i)      "Subclass 1" means Retired NFL Football Players who were not diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants.

---

Exhibit 4                                                         Page 2

(ii)    "Subclass 2" means Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants, and the Representative Claimants of deceased Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to death or who died prior to the date of the Preliminary Approval and Class Certification Order and who received a post-mortem diagnosis of CTE.

Notice was provided to Settlement Class Members pursuant to the Settlement Class Notice Plan approved in the Preliminary Order. (*See* Settlement Class Notice Plan attached to the Declaration of Katherine Kinsella, Class Notice Agent.) Counsel for the NFL Parties and Class Counsel worked together with the Settlement Class Notice Agent to fashion a Settlement Class Notice Plan that was tailored to the specific claims and Settlement Class Members of this case. Settlement Class Notice was disseminated to all known Settlement Class Members by U.S. first-class mail by [INSERT DATE]. In addition, a Summary Notice was published in accordance with the Settlement Class Notice Plan and Co-Lead Class Counsel caused to be established an automated telephone system that uses a toll-free number to respond to questions from Settlement Class Members. Co-Lead Class Counsel also caused to be established and maintained a public website that provided information about the proposed Class Action Settlement, including the Settlement Agreement, frequently asked questions, the Preliminary Order, and relevant dates for objecting to the Class Action Settlement, opting out of the Settlement Class, and the date and place of the Fairness Hearing. The website allowed Settlement Class Members to identify themselves so that Settlement Class Notice could be mailed to them. Class Counsel have established that the Settlement Class Notice Plan was implemented.

Exhibit 4                                                                          Page 3

-995-

[    ] Settlement Class Members have chosen to be excluded from the Settlement Class by timely filing written requests for exclusion ("Opt Outs"). The Opt Outs are listed at the end of this Order in Exhibit [  ].

[    ] Settlement Class Members submitted objections to the Class Action Settlement under the process set by the Preliminary Order.

On [DATE], at [TIME], the Court held the Fairness Hearing to consider whether the Class Action Settlement was fair, reasonable, adequate, and in the best interests of the Settlement Class and Subclasses. At the Fairness Hearing, [NAMES] appeared on behalf of the Class Representatives, Subclass Representatives and Settlement Class Members, and [NAMES] appeared on behalf of the NFL Parties. Additionally, the following individuals also appeared at the Fairness Hearing having timely submitted a Notice of Intention to Appear. [INSERT LIST]

The Court, having heard arguments of counsel for the Parties and of the persons who appeared at the Fairness Hearing [REFERENCE OBJECTIONS, if any], having reviewed all materials submitted, having considered all of the files, records, and proceedings in this Action, and being otherwise fully advised,

**HEREBY ORDERS THAT:**

1.    <u>Jurisdiction.</u> This Court retains continuing and exclusive jurisdiction over the Action, Parties and their counsel, all Settlement Class Members, the Special Master, BAP Administrator, Claims Administrator, Lien Resolution Administrator, Appeals Advisory Panel, Appeals Advisory Panel Consultants, Trustee and Settlement Agreement, including its enforcement and interpretation, and all other matters relating to it. This Court also retains continuing jurisdiction over the "qualified settlement funds," as defined under § 1.468B-1 of the

Exhibit 4                                                                                                    Page 4

Treasury Regulations promulgated under Sections 461(h) and 468B of the Internal Revenue Code of 1986 as amended, created under the Settlement Agreement.

2. <u>Incorporation of Settlement Documents.</u> This Order and Judgment incorporates and makes a part hereof: (a) the Settlement Agreement and exhibits filed with the Court on June 25, 2014, including definitions of the terms used therein and (b) the Settlement Class Notice Plan and the Summary Notice, both of which were filed with the Court on June 25, 2014. Unless otherwise defined in this Final Order and Judgment, the capitalized terms herein shall have the same meaning as they have in the *In re: National Football League Players' Concussion Injury Litigation*, MDL 2323, Class Action Settlement Agreement dated June 25, 2014.

3. <u>Confirmation of Settlement Class.</u> The provisions of the Preliminary Order that conditionally certified the Settlement Class and Subclasses should be, and hereby are, confirmed in all respects as a final class certification order under Fed. R. Civ. P. 23 for the purposes of implementing the Settlement Agreement. As set forth in the Preliminary Order, the Court finds that, for purposes of effectuating the Settlement Agreement: (a) the Settlement Class Members are so numerous that their joinder is impracticable; (b) there are questions of law and fact common to the Class and Subclasses; (c) the claims of the Class Representatives and Subclass Representatives are typical of the Settlement Class Members and the respective Subclass Members; (d) the Class Representatives and Subclass Representatives and Co-Lead Class Counsel, Class Counsel and Subclass Counsel have fairly and adequately represented and protected the interests of all Settlement Class Members; and (e) the questions of law or fact common to the Class and Subclasses predominate over any questions affecting only individual

Exhibit 4     Page 5

-997-

Settlement Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

4.    <u>Settlement Notice.</u>    The Court finds that pursuant to Federal Rule of Civil Procedure 23(c)(2)(B) the dissemination of the Settlement Class Notice and the publication of the Summary Notice: (i) were implemented in accordance with the Preliminary Order; (ii) constituted the best notice practicable under the circumstances; (iii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members (a) of the effect of the Settlement Agreement (including the Releases provided for therein), (b) that the NFL Parties agreed not to object to a petition for class attorneys' fees and reasonable incurred costs up to $112.5 million, and that at a later date, to be determined by the Court, Class Counsel may petition the Court for an award of attorneys' fees and reasonable incurred costs, and Settlement Class Members may comment on or object to the petition, (c) of their right to opt out or object to any aspect of the Settlement Agreement, (d) of their right to revoke an Opt Out prior to the Final Approval Date, and (e) of their right to appear at the Fairness Hearing; (iv) constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice of the proposed Settlement Agreement; and (v) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause) and other applicable laws and rules.    The Notice given by the NFL Parties to state and federal officials pursuant to 28 U.S.C. § 1715 fully satisfied the requirements of that statute.

5.    <u>Confirmation of Appointment of Class and Subclass Representatives.</u>    As set forth in the Preliminary Order, the Court confirms the appointment of Shawn Wooden and Kevin Turner as Class Representatives and Shawn Wooden as Subclass 1 Representative and Kevin Turner as Subclass 2 Representative.

---

Exhibit 4                                                                                        Page 6

6.    <u>Confirmation of Appointments of Co-Lead Class Counsel, Class Counsel and Subclass Counsel.</u>  Pursuant to Fed. R. Civ. P. 23(g), the Court confirms the appointment of Christopher A. Seeger, Sol Weiss, Steven C. Marks, Gene Locks, Arnold Levin and Dianne M. Nast as Class Counsel.  In addition, the appointment of Christopher A. Seeger and Sol Weiss as Co-Lead Class Counsel is confirmed, and the appointments of Arnold Levin and Dianne M. Nast as Subclass Counsel for Subclasses 1 and 2, respectively, are confirmed.  Co-Lead Class Counsel, Class Counsel and Subclass Counsel are familiar with the claims in this case and have done work investigating the claims.  They have consulted with other counsel in the case and have experience in handling class actions and other complex litigation.  They have knowledge of the applicable laws and the resources to commit to the representation of Settlement Class Members and the Settlement Class and Subclasses.

7.    <u>Approval of Class Action Settlement.</u>  Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement Agreement in its entirety (including, without limitation, the NFL Parties' payment obligations, as set forth in Article XXIII of the Settlement Agreement, the Releases provided for therein, and the dismissal with prejudice of claims against the NFL Parties) and finds that the Settlement Agreement is fair, reasonable and adequate.  The Court also finds that the Settlement Agreement is fair, reasonable and adequate, and in the best interests of, the Class and Subclass Representatives and all Settlement Class Members, including, without limitation, the members of the Subclasses.

The Parties are ordered to implement, perform and consummate each of the obligations set forth in the Settlement Agreement in accordance with its terms and

Exhibit 4                                                                                                 Page 7

provisions.  All objections to the Settlement Agreement are found to be without merit and are overruled.

       8.    <u>Dismissal of Class Action Complaint.</u>  The Class Action Complaint is hereby dismissed with prejudice, without further costs, including claims for interest, penalties, costs and attorneys' fees, except that Class Counsel's motion for an award of class attorneys' fees and reasonable incurred costs, as contemplated by the Parties in Section 21.1 of the Settlement Agreement, will be made at an appropriate time to be determined by the Court.

       9.    <u>Dismissal of Released Claims.</u>  As set forth in Article XVIII of the Settlement Agreement, the Settlement Class, the Class and Subclass Representatives and each Settlement Class Member, on his or her own behalf and on behalf of his or her respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on behalf of any Settlement Class Member (the "Releasors"), have waived and released, forever discharged and held harmless the Released Parties, and each of them:

       a.    Of and from any and all past, present and future claims, counterclaims, actions, rights or causes of action, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, in law or in equity, contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, in any forum that the Releasors, and each of them, had, has, or may have in the future arising out of, in any way relating to or in connection with the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, referred to or relating to the Class Action Complaint and/or Related Lawsuits

("Claims"), including, without limitation, the Claims identified in Section 18.1(a)(i)-(viii) of the Settlement Agreement.

b.    Of and from any and all Claims, including unknown Claims, arising from, relating to, or resulting from the reporting, transmittal of information, or communications between or among the NFL Parties, Counsel for the NFL Parties, the Special Master, Claims Administrator, Lien Resolution Administrator, any Governmental Payor and/or Medicare Part C or Part D Program sponsor, regarding any claim for benefits under this Settlement Agreement, including any consequences in the event that this Settlement Agreement impacts, limits, or precludes any Settlement Class Member's right to benefits under Social Security or from any Governmental Payor or Medicare Part C or Part D Program sponsor.

c.    Of and from any and all Claims, including unknown Claims, pursuant to the MSP Laws, or other similar causes of action, arising from, relating to, or resulting from the failure or alleged failure of any of the Released Parties to provide for a primary payment or appropriate reimbursement to a Governmental Payor or Medicare Part C or Part D Program sponsor with a Lien in connection with claims for medical items, services, and/or prescription drugs provided in connection with compensation or benefits claimed or received by a Settlement Class Member pursuant to this Settlement Agreement.

d.    And the Special Master, BAP Administrator, Claims Administrator, and their respective officers, directors, and employees, of and from any and all Claims, including unknown Claims, arising from, relating to, or resulting from their participation, if any, in the BAP, including, but not limited to, Claims for negligence, medical malpractice, wrongful or delayed diagnosis, personal injury, bodily injury (including disease, trauma, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), or death arising from, relating to, or resulting from such participation.

Accordingly, the Court hereby orders the dismissal with prejudice of all Released Claims by the Releasors against the Released Parties pending in the Court and without further costs, including claims for interest, penalties, costs and attorneys' fees. All Releasors with Released Claims pending in any other federal court, state court, arbitration, regulatory agency, or

Exhibit 4                                                                 Page 9

other tribunal or forum, other than the Court, against the Released Parties are ordered to promptly dismiss with prejudice all such Released Claims, and without further costs, including claims for interest, penalties, costs, and attorneys' fees.  This Settlement Agreement will be the exclusive remedy for any and all Released Claims by or on behalf of any and all Releasors against any of the Released Parties, and no Releasor shall recover, directly or indirectly, any sums from any Released Parties for Released Claims other than those received for Released Claims under the terms of the Settlement Agreement, if any.  However, nothing contained in the Settlement Agreement, including the Release and Covenant Not to Sue provisions in Article XVIII, affects the rights of Settlement Class Members to pursue claims for workers' compensation and claims alleging entitlement to NFL CBA Medical and Disability Benefits.  Nor does the Settlement Agreement alter the showing that Settlement Class Members must demonstrate to pursue successful claims for workers' compensation and/or successful claims alleging entitlement to NFL CBA Medical and Disability Benefits, nor does it alter the defenses to such claims available to Released Parties except as set forth in ARTICLE XXIX.

      10.   <u>Dismissal of Related Lawsuits.</u>  All Related Lawsuits pending in the Court are hereby dismissed with prejudice, without further costs, including claims for interest, penalties, costs and attorneys' fees.  All Releasors with Related Lawsuits pending in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum, other than the Court, are ordered to promptly dismiss with prejudice such Related Lawsuits, and without further costs, including claims for interest, penalties, costs, and attorneys' fees.

      11.   <u>Covenant Not to Sue.</u>  Consistent with Section 18.4 of the Settlement Agreement, the Class and Subclass Representatives, each Settlement Class Member, and the Settlement Class, on behalf of the Releasors, and each of them, are hereby barred, enjoined and

Exhibit 4                                                                                    Page 10

restrained from, at any time, continuing to prosecute, commencing, filing, initiating, instituting, causing to be instituted, assisting in instituting, or permitting to be instituted on their, his, her, or its behalf, or on behalf of any other individual or entity, any proceeding: (i) alleging or asserting any of his or her respective Released Claims against the Released Parties in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, including, without limitation, the Claims set forth in Article XVIII of the Settlement Agreement; or (ii) challenging the validity of the Releases. To the extent any such proceeding exists in any court, tribunal or other forum as of the Effective Date, the Releasors are ordered to withdraw and seek dismissal with prejudice of such proceeding forthwith.

12. <u>Complete Bar Order and Judgment Reduction.</u> It is ordered that any person or entity, other than Riddell (as defined in the Settlement Agreement), that becomes liable to any Releasor, or to any other alleged tortfeasor, co-tortfeasor, co-conspirator or co-obligor, by reason of judgment or settlement, for any claims that are or could have been asserted in this Action or in any Related Lawsuit, or that arise out of or relate to any claims that are or could have been asserted in this Action or in any Related Lawsuit, or that arise out of or relate to any facts in connection with this Action or any Related Lawsuit (collectively, the "Barred Defendants"), are hereby permanently BARRED, ENJOINED and RESTRAINED from commencing, prosecuting, or asserting any claim for contribution or indemnity (whether styled as a claim for contribution, indemnity or otherwise) against the Released Parties that seeks to recover from the Released Parties any part of any judgment entered against the Barred Defendants and/or any settlement reached with any of the Barred Defendants, in connection with any claims that are or could have been asserted against the Barred Defendants in this Action or in any Related Lawsuit or that arise out of or relate to any claims that are or could have been

Exhibit 4                                                                                    Page 11

asserted in this Action or in any Related Lawsuit, or that arise out of or relate to any facts in connection with this Action or any Related Lawsuit, whether arising under state, federal, or foreign law as claims, cross-claims, counterclaims, or third-party claims, whether asserted in this Action, in any Related Lawsuit, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere.

It is further ordered that the Released Parties are hereby permanently BARRED, ENJOINED AND RESTRAINED from commencing, prosecuting, or asserting any claim for contribution or indemnity (whether styled as a claim for contribution, indemnity or otherwise) against any of the Barred Defendants that seeks to recover any part of the NFL Parties' payment obligations as set forth in Article XXIII of the Settlement Agreement, whether arising under state, federal, or foreign law as claims, cross-claims, counterclaims, or third-party claims, whether asserted in this Action, in any Related Lawsuit, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere.

It is further ordered that any judgment or award obtained by the Releasors against any such Barred Defendant shall be reduced by the amount or percentage, if any, necessary under applicable law to relieve the Released Parties of all liability to such Barred Defendants on claims barred pursuant to this Paragraph 12.  Such judgment reduction, partial or complete release, settlement credit, relief, or setoff, if any, shall be in an amount or percentage sufficient under applicable law to compensate such Barred Defendants for the loss of any such barred claims pursuant to this Paragraph 12 against the Released Parties.

13.    No Release for Insurance Coverage.  Notwithstanding anything to the contrary in this Final Order and Judgment, this Final Order and Judgment and the Settlement

Exhibit 4                                                                                                          Page 12

Agreement are not intended to and do not effect a release of any rights or obligations that any insurer has under or in relation to any contract or policy of insurance to any named insured, insured, additional insured, or other insured person or entity thereunder, including those persons or entities referred to in Section 2.1(bbbb)(i)-(ii) of the Settlement Agreement.

14. _Riddell._ As set forth in the Settlement Agreement, it is hereby ordered that, with respect to any litigation by the Releasors against Riddell, if a verdict in a Releasor's favor results in verdict or judgment for contribution or indemnity against any of the Released Parties, the Releasors shall not enforce their right to collect this verdict or judgment to the extent that such enforcement creates liability against such Released Parties. In such event, the Releasors shall reduce their claim or agree to a judgment reduction or satisfy the verdict or judgment to the extent necessary to eliminate the claim of liability against the Released Parties or any Other Party claiming contribution or indemnity.

15. _Confirmation of Administrative Appointments._ As set forth in the Preliminary Order, the Court confirms the appointment of The Garretson Resolution Group, Inc. as the BAP Administrator, BrownGreer PLC as the Claims Administrator, The Garretson Resolution Group, Inc. as the Liens Resolution Administrator and Citibank, N.A. as the Trustee, and confirms that the Court retains continuing jurisdiction over those appointed. Pursuant to Federal Rule of Civil Procedure 53 and the inherent authority of the Court, the Court appoints _____ as Special Master to perform the duties of the Special Master as set forth in the Settlement Agreement for a five-year term.

16. _No Admission._ This Final Order and Judgment, the Settlement Agreement, and the documents relating thereto, and any actions taken by the NFL Parties or the Released Parties in the negotiation, execution, or satisfaction of the Settlement Agreement: (a)

Exhibit 4                                                                 Page 13

do not and shall not, in any event, constitute, or be construed as, an admission of any liability or wrongdoing, or recognition of the validity of any claim made by the Class and Subclass Representatives, the Settlement Class, or any Settlement Class Member in this or any other action or proceeding; and (b) shall not, in any way, be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, of any kind, or used in any other fashion, by the Class and Subclass Representatives, the Settlement Class, any Settlement Class Member, Class Counsel, or any of the Released Parties in any litigation, action, hearing, or any judicial, arbitral, administrative, regulatory or other proceeding for any purpose, except a proceeding to resolve a dispute arising under, or to enforce, the Settlement Agreement.  Without limiting the foregoing, neither the Settlement Agreement nor any of its provisions, negotiations, statements, or court proceedings relating to its provisions, nor any actions undertaken in this Settlement Agreement, will be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, or admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Released Parties, or as a waiver by the Released Parties of any applicable defense, or as a waiver by the Class and Subclass Representatives, the Settlement Class, or any Settlement Class Member, of any claims, causes of action, or remedies.  This Paragraph shall not apply to disputes between the NFL Parties and their insurers, as to which the NFL Parties reserve all rights.

       17.   <u>Modification of the Settlement Agreement.</u>  Without further approval from the Court, and without the express written consent of Class Counsel and Counsel for the NFL Parties, on behalf of all Parties, the Settlement Agreement will not be subject to any change, modification, amendment, or addition.

Exhibit 4                                                                                                              Page 14

18.  <u>Binding Effect.</u>  The terms of the Settlement Agreement and of this Final Order and Judgment shall be forever binding on the Parties (regardless of whether or not any individual Settlement Class Member receives payment of a Monetary Award or Derivative Claimant Award or participates in a BAP baseline assessment examination), as well as their respective heirs, executors, administrators, predecessors, successors, affiliates and assigns.  The Opt Outs listed in Exhibit [    ] hereto are excluded from the Settlement Class pursuant to request and are not bound by the terms of the Settlement Agreement or this Final Order and Judgment.

19.  <u>Termination.</u>  If the Settlement Agreement is terminated as provided in Article XVI of the Settlement Agreement, then this Final Order and Judgment (and any orders of the Court relating to the Settlement Agreement) shall be null and void and be of no further force or effect, except as otherwise provided by the Settlement Agreement, and any unspent and uncommitted monies in the Funds will revert to, and shall be paid to, the NFL Parties within ten (10) days.

20.  <u>Entry of Final Judgment.</u>  There is no just reason to delay the entry of this Final Order and Judgment as a final judgment in this Action.  Accordingly, the Clerk of Court is hereby directed, in accordance with this Final Order and Judgment and pursuant to Fed. R. Civ. P. 54, to: (i) enter final judgment dismissing with prejudice this Action and any Related Lawsuits in this Court in which Released Parties (or any of them) are the only defendants, and (ii) enter final judgment dismissing with prejudice all Released Claims asserted against Released Parties

Exhibit 4                                                                                                    Page 15

(or any of them) in any other Related Lawsuits in this Court in which there are named defendants

other than Released Parties.

SO ORDERED this _____ day of _____, 2014.

_____
Anita B. Brody
United States District Court Judge

Exhibit 4                                                                                          Page 16

-1008-

# Exhibit B-5

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

# NFL Concussion Settlement

## All Valid Claims of Retired NFL Football Players to be Paid in Full for 65 Years

### Monetary Awards, Baseline Medical Exams and Other Benefits Provided

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- The National Football League ("NFL") and NFL Properties LLC (collectively, "NFL Parties") have agreed to a Settlement of a class action lawsuit seeking medical monitoring and compensation for brain injuries allegedly caused by head impacts experienced in NFL football. The NFL Parties deny that they did anything wrong.

- The Settlement Class includes all retired players of the NFL, the American Football League ("AFL") that merged with the NFL, the World League of American Football, NFL Europe League, and NFL Europa League, as well as immediate family members of retired players and legal representatives of incapacitated, incompetent or deceased retired players.

- The Settlement will provide eligible retired players with:

  - Baseline neuropsychological and neurological exams to determine if retired players are: a) currently suffering from any neurocognitive impairment, including impairment serious enough for compensation, and b) eligible for additional testing and/or treatment ($75 million);

  - Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Parkinson's Disease, Alzheimer's Disease, early and moderate Dementia and certain cases of chronic traumatic encephalopathy (CTE) (a neuropathological finding) diagnosed after death. The maximum monetary awards range from $1.5 million to $5 million depending on the diagnosis. There is no cap on the amount of funds available to pay these Monetary Awards and all valid claims will be paid in full for 65 years; and

  - Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million).

- Individuals who represent incapacitated, incompetent or deceased retired players, or family members who meet certain criteria may also file claims for monetary awards (*see* Question 6).

- To get money, proof that injuries were caused by playing NFL football is not required.

- **Settlement Class Members will need to register to get benefits. Settlement Class Members may sign up at the website for additional information about the Settlement and updates on the registration process.**

- Your legal rights are affected even if you do nothing. Please read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **STAY IN THE SETTLEMENT CLASS** | You do not need to do anything to be included in the Settlement Class. However, once the Court approves the Settlement, you will be bound by the terms and releases contained in the Settlement. There will be later notice to explain when and how to register for Settlement benefits (*see* Question 26). |
| **ASK TO BE EXCLUDED** | You will get no benefits. This is the only option that allows you to participate in any other lawsuit against the NFL Parties about the claims in this case (*see* Question 30). |

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                          Page 1

-1010-

| **OBJECT** | Write to the Court if you do not like the Settlement (*see* Question 35). |
|---|---|

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.

- **This Notice is only a summary of the Settlement Agreement and your rights. You are encouraged to carefully review the complete Settlement Agreement at www.NFLConcussionSettlement.com.**

| What This Notice Contains |
|---|

## CHAPTER 1: INTRODUCTION

**BASIC INFORMATION**..............................................................................**Page 5**
1.   Why is this Notice being provided?
2.   What is the litigation about?
3.   What is a class action?
4.   Why is there a Settlement?
5.   What are the benefits of the Settlement?

**WHO IS PART OF THE SETTLEMENT?** .........................................................**Page 7**
6.   Who is included in the Settlement Class?
7.   What players are not included in the Settlement Class?
8.   What if I am not sure whether I am included in the Settlement Class?
9.   What are the different levels of neurocognitive impairment?
10.  Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

## CHAPTER 2: SETTLEMENT BENEFITS

**THE BASELINE ASSESSMENT PROGRAM**...................................................**Page 9**
11.  What is the Baseline Assessment Program ("BAP")?
12.  Why should a retired player get a BAP baseline examination?
13.  How does a retired player schedule a baseline assessment examination and where will it be done?

**MONETARY AWARDS**...................................................................**Page 10**
14.  What diagnoses qualify for monetary awards?
15.  Do I need to prove that playing professional football caused the retired player's Qualifying Diagnosis?
16.  How much money will I receive?
17.  How does the age of the retired player at the time of first diagnosis affect a monetary award?
18.  How does the number of seasons a retired player played affect a monetary award?
19.  How do prior strokes or brain injuries of a retired player affect a monetary award?
20.  How is a retired player's monetary award affected if he does not participate in the BAP program?
21.  Can I receive a monetary award even though the retired player is dead?
22.  Will this Settlement affect a retired player's participation in NFL or NFLPA related benefits programs?
23.  Will this Settlement prevent retired players from bringing workers' compensation claims?

**EDUCATION FUND**.......................................................................**Page 14**
24.  What types of education programs are supported by the Settlement?

## CHAPTER 3: YOUR RIGHTS

**REMAINING IN THE SETTLEMENT**................................................................**Page 15**
25.  What am I giving up to stay in the Settlement Class?

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                    Page 3

-1012-

**HOW TO GET BENEFITS**……………………………………………………………...**Page 15**
26.    How do I get Settlement benefits?
27.    Is there a time limit for Retired NFL Football Players and Representative Claimants to file claims for monetary awards?
28.    Can I re-apply for compensation if my claim is denied?
29.    Can I appeal the determination of my monetary award claim?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**……………………………………**Page 16**
30.    How do I get out of the Settlement?
31.    If I do not exclude myself, can I sue the NFL Parties for the same thing later?
32.    If I exclude myself, can I still get benefits from this Settlement?

**THE LAWYERS REPRESENTING YOU**……………………………………………………**Page 17**
33.    Do I have a lawyer in the case?
34.    How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**………………………………………………………...**Page 18**
35.    How do I tell the Court if I do not like the Settlement?
36.    What is the difference between objecting to the Settlement and excluding myself?

**THE COURT'S FAIRNESS HEARING**……………………………………………………**Page 19**
37.    When and where will the Court hold a Fairness Hearing concerning the Settlement?
38.    Do I have to attend the hearing?
39.    May I speak at the hearing?

**GETTING MORE INFORMATION**………………………………………………………**Page 19**
40.    How do I get more information?

# CHAPTER 1:  INTRODUCTION

## BASIC INFORMATION

### 1.  Why is this Notice being provided?

The Court in charge of this case authorized this Notice because you have a right to know about the proposed Settlement of this lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement.  This Notice summarizes the Settlement and explains your legal rights and options.

Judge Anita B. Brody of the United States District Court for the Eastern District of Pennsylvania is overseeing this case.  The case is known as *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323.  The people who sued are called the "Plaintiffs."  The National Football League and NFL Properties LLC are called the "NFL Defendants."

The Settlement may affect your rights if you are:  (a) a retired player of the NFL, AFL, World League of American Football, NFL Europe League, or NFL Europa League, (b) an authorized representative of a deceased or legally incapacitated or incompetent retired player of those leagues, or (c) an individual with a close legal relationship with a retired player of those leagues, such as a spouse, parent or child.

### 2.  What is the litigation about?

The Plaintiffs claim that retired players experienced head trauma during their NFL football playing careers that resulted in brain injuries, which have caused or may cause them long-term neurological problems.  The Plaintiffs accuse the NFL Parties of being aware of the evidence and the risks associated with repetitive traumatic brain injuries but failing to warn and protect the players against the long-term risks, and ignoring and concealing this information from the players.  The NFL Parties deny the claims in the litigation.

### 3.  What is a class action?

In a class action, one or more people, the named plaintiffs (who are also called proposed "class representatives") sue on behalf of themselves and other people with similar claims.  All of these people together are the proposed "class" or "class members."  When a class action is settled, one court resolves the issues for all class members (in the settlement context, "settlement class members"), except for those who exclude themselves from the settlement.  In this case, the proposed class representatives are Kevin Turner and Shawn Wooden.  Excluding yourself means that you will not receive any benefits from the Settlement.  The process for excluding yourself is described in Question 30 of this Notice.

### 4.  Why is there a Settlement?

After extensive settlement negotiations mediated by retired United States District Court Judge Layn Phillips, and further settlement negotiations under the supervision of the Court-appointed Special Master, Perry Golkin, the Plaintiffs and the NFL Parties agreed to the Settlement.

A settlement is an agreement between a plaintiff and a defendant to resolve a lawsuit. Settlements conclude litigation without the court or a jury ruling in favor of the plaintiff or the defendant. A settlement allows the parties to avoid the cost and risk of a trial, as well as the delays of litigation.

If the Court approves this Settlement, the claims of all persons affected (*see* Question 6) and the litigation between these persons and the NFL Parties are over. The persons affected by the Settlement are eligible for the benefits summarized in this Notice and the NFL Parties will no longer be legally responsible to defend against the claims made in this litigation.

The Court has not and will not decide in favor of the retired players or the other persons affected by the Settlement or the NFL Parties, and by reviewing this Settlement the Court is not making and will not make any findings that any law was broken or that the NFL Parties did anything wrong.

The proposed Class Representatives and their lawyers ("Co-Lead Class Counsel," "Class Counsel," and "Subclass Counsel," *see* Question 33) believe that the proposed Settlement is best for everyone who is affected. The factors that Co-Lead Class Counsel, Class Counsel, and Subclass Counsel considered included the uncertainty and delay associated with continued litigation, a trial and appeals, and the uncertainty of particular legal issues that are yet to be determined by the Court. Co-Lead Class Counsel, Class Counsel and Subclass Counsel balanced these and other substantial risks in determining that the Settlement is fair, reasonable and adequate in light of all circumstances and in the best interests of the Settlement Class Members.

The Settlement Agreement is available at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling 1-800-000-0000.

| 5. What are the benefits of the Settlement? |
| --- |

Under the Settlement, the NFL Parties will pay to fund:

- Baseline neuropsychological and neurological examinations for eligible retired players, and additional medical testing, counseling and/or treatment if they are diagnosed with moderate cognitive impairment during the baseline examinations (up to $75 million, "Baseline Assessment Program") (*see* Questions 11-13);

- Monetary awards for diagnoses of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) and Death with CTE prior to [Date of Preliminary Approval Order] (*see* Questions 14-21); **All valid claims under the Settlement, without limitation, will be paid in full throughout the 65-year life of the Settlement (the "Monetary Award Fund")**; and

- Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million) (*see* Question 24).

In addition, the NFL Parties will pay the cost of notifying the Settlement Class. Administrative costs and expenses will be paid out of the Monetary Award Fund. The Baseline Assessment Program costs and expenses will be paid out of the Baseline Assessment Program Fund.

The details of the Settlement benefits are in the Settlement Agreement, which is available at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling 1-800-000-0000.

**Note:** The Baseline Assessment Program and Monetary Award Fund are completely independent of the NFL Parties and any benefit programs that have been created between the NFL and the NFL Players Association. The NFL Parties are not involved in determining the validity of claims.

## WHO IS PART OF THE SETTLEMENT?

You need to decide whether you are included in the Settlement.

| 6. Who is included in the Settlement Class? |
| --- |

This Settlement Class includes three types of people:

<u>Retired NFL Football Players:</u>  Prior to [Date of Preliminary Approval Order], all living NFL Football players who (1) have retired, formally or informally, from playing professional football with the NFL or any Member Club, including AFL, World League of American Football, NFL Europe League, and NFL Europa League players, or (2) were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and no longer are under contract to a Member Club and are not seeking active employment as a player with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club.

<u>Representative Claimants:</u>  An authorized representative, ordered by a court or other official of competent jurisdiction under applicable state law, of a deceased or legally incapacitated or incompetent Retired NFL Football Player.

<u>Derivative Claimants:</u>  A spouse, parent, dependent child, or any other person who properly under applicable state law asserts the right to sue independently or derivatively by reason of his or her relationship with a living or deceased Retired NFL Football Player.  (For example, a spouse asserting the right to sue due to the injury of a husband who is a Retired NFL Football Player.)

The Settlement recognizes two separate groups ("Subclasses") of Settlement Class Members based on the Retired NFL Football Player's injury status as of [Date of Preliminary Approval Order]:

- <u>Subclass 1</u> includes: Retired NFL Football Players who were <u>not</u> diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE prior to [Date of Preliminary Approval Order], and their Representative Claimants and Derivative Claimants.

- <u>Subclass 2</u> includes:

    o  Retired NFL Football Players who <u>were</u> diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to [Date of Preliminary Approval Order], and their Representative Claimants and Derivative Claimants; and

**QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                                      Page 7

    o  Representative Claimants of deceased Retired NFL Football Players who were diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to death or who died prior to [Date of Preliminary Approval Order] and received a diagnosis of Death with CTE.

### 7. What players are not included in the Settlement Class?

The Settlement Class does not include:  (a) current NFL players, and (b) people who tried out for NFL or AFL Member Clubs, or World League of American Football, NFL Europe League or NFL Europa League teams, but did not make it onto preseason, regular season or postseason rosters, or practice squads, developmental squads or taxi squads.

### 8. What if I am not sure whether I am included in the Settlement Class?

If you are not sure whether you are included in the Settlement Class, you may call **1-800-000-0000** with questions or visit www.NFLConcussionSettlement.com. You may also write with questions to NFL Concussion Settlement, P.O. Box 0000, City, ST 00000.  You may also consult with your own attorney.

### 9. What are the different levels of neurocognitive impairment?

In addition to ALS, Parkinson's Disease, and Alzheimer's Disease, various levels of neurocognitive impairment are covered by this Settlement.  More details can be found in the Injury Definitions, which are available at www.NFLConcussionSettlement.com or by calling **1-800-000-0000**.

The level of Neurocognitive Impairment will be established in part with evidence of decline in performance in at least two areas subject to clinical evaluative testing (complex attention, executive function, learning and memory, language, or perceptual-spatial), provided one of the areas is executive function, learning and memory, or complex attention, and related functional impairment as follows:

| LEVEL OF NEUROCOGNITIVE IMPAIRMENT | TYPE OF IMPAIRMENT | DEGREE OF DECLINE |
|---|---|---|
| Level 1 | Moderate cognitive impairment | Moderate cognitive decline |
| Level 1.5 | Early Dementia | Moderate to severe cognitive decline |
| Level 2 | Moderate Dementia | Severe cognitive decline |

If neurocognitive impairment is temporary and only occurs with delirium, or as a result of substance abuse or medicinal side effects, it is not covered by the Settlement.

### 10. Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

No.  A retired player can be a Settlement Class Member regardless of whether he is vested due to credited seasons or total and permanent disability under the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

# CHAPTER 2:  SETTLEMENT BENEFITS

## THE BASELINE ASSESSMENT PROGRAM

| 11.  What is the Baseline Assessment Program ("BAP")? |
| --- |

All living retired players who have earned at least one-half of an Eligible Season (*see* Question 18), who do not exclude themselves from the Settlement (*see* Question 30), and who timely register to participate in the Settlement (*see* Question 26) may participate in the Baseline Assessment Program ("BAP").

The BAP will provide baseline neuropsychological and neurological assessment examinations to determine whether retired players are currently suffering from cognitive impairment.  Retired players will have from two to ten years, depending on their age as of the date the Settlement is finally approved and any appeals are fully resolved ("Final Settlement Approval"), to have a baseline examination conducted through a nationwide network of qualified and independent medical providers.

- Retired players 43 or older as of the date the Settlement goes into effect will need to have a baseline examination within two years of the start of the BAP.

- Retired players under the age of 43 as of the date the Settlement goes into effect will need to have a baseline examination within 10 years of the start of the BAP, or before they turn 45, whichever comes sooner.

Retired players who are diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment) are eligible to receive further medical testing and/or treatment (including counseling and pharmaceuticals) for that condition during the ten-year term of the BAP or within five years from diagnosis, whichever is later.

Retired players who participate in the BAP will be encouraged to provide their confidential medical records for use in research into cognitive impairment and safety and injury prevention with respect to football players.

Although all retired players are encouraged to take advantage of the BAP and receive a baseline examination, they do not need to participate in the BAP to receive a monetary award, but any award to the retired player may be reduced by 10% if  the retired player does not participate in the BAP, as explained in more detail in Question 20.

| 12.  Why should a retired player get a BAP baseline examination? |
| --- |

Getting a BAP baseline examination will be beneficial.  It will determine whether the retired player has any cognitive impairment.  If he is diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment), he will be eligible to receive further medical testing and/or treatment for that condition.  In addition, regardless of any cognitive impairment today, the results of the BAP baseline examination can be used as a comparison to measure any subsequent deterioration of  cognitive condition over the course of his life.  Participants also will be examined by at least two experts during the BAP baseline examinations, a neuropsychologist and a neurologist, and the retired player and/or his family members will have the opportunity to ask questions relating to any cognitive impairment during those examinations.

Participation in the BAP does not prevent the retired player from filing a claim for a monetary award. For the next 65 years, retired players will be eligible for compensation paid from the Monetary Award Fund if the player develops a Qualifying Diagnosis (*see* Question 14). Participation in the BAP also will help ensure that, to the extent the retired player receives a Qualifying Diagnosis in the future, he will receive the maximum monetary award to which he is entitled (*see* Question 20).

| **13. How does a retired player schedule a baseline assessment examination and where will it be done?** |
|---|

Retired players need to register for Settlement benefits before they can get a baseline assessment examination. Registration for benefits will not be available until after Final Settlement Approval. **However, a retired player may provide his name and contact information now at www.NFLConcussionSettlement.com or by calling 1-800-000-0000. This ensures that the retired player will receive additional notice about the registration process and deadlines when it becomes available.**

The BAP Administrator will send notice to those retired players determined during registration to be eligible for the BAP, explaining how to arrange for an initial baseline assessment examination. The BAP will use a nationwide network of qualified and independent medical providers who will provide both the initial baseline assessment as well as any further testing and/or treatment. The BAP Administrator, which will be appointed by the Court, will establish the network of medical providers.

## MONETARY AWARDS

| **14. What diagnoses qualify for monetary awards?** |
|---|

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia), or Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund.

If a retired player receives a monetary award based on a Qualifying Diagnosis, and later is diagnosed with a different Qualifying Diagnosis that entitles him to a larger monetary award than his previous award, he will be eligible for an increase in compensation. This would also apply to Derivative Claimants.

Qualifying Diagnoses must be made by approved qualified specialists. If and when Final Settlement Approval is obtained, the Claims Administrator will create and maintain a list of specialists who may make an authorized Qualifying Diagnoses if no such diagnosis has already been made by a qualified specialist before the Settlement is effective.

| **15. Do I need to prove that playing professional football caused the retired player's Qualifying Diagnosis?** |
|---|

No. You do not need to prove that a retired player's Qualifying Diagnosis was caused by playing professional football or that he experienced head injuries in the NFL, AFL, World League of American Football, NFL Europe League, or NFL Europa League in order to receive a monetary award. The fact that a retired player receives a Qualifying Diagnosis is sufficient to be eligible for a monetary award.

QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

Exhibit 5                                                                                                    Page 10

-1019-

You also do not need to exclude the possibility that the Qualifying Diagnosis was caused or contributed to by amateur football or other professional football league injuries or by various risk factors linked to the Qualifying Diagnosis.

### 16. How much money will I receive?

The amount of money you will receive depends on the retired player's:
- Specific Qualifying Diagnosis,
- Age at the time of diagnosis (*see* Question 17),
- Number of seasons played or practiced in the NFL or the AFL (*see* Question 18),
- Diagnosis of a prior stroke or traumatic brain injury (*see* Question 19), and
- Participation in a baseline assessment exam (*see* Question 20).

The amount of money you will receive also depends on whether:
- There are any legally enforceable liens on the award,
- Any retainer agreement with an attorney, and
- The Court makes any further assessments (*see* Question 34).

Certain costs and expenses related to resolving any liens for Settlement Class Members will be paid out of such Settlement Class Members' Monetary Awards or Derivative Claimant Awards.

The table below lists the maximum amount of money available for each Qualifying Diagnosis before any adjustments are made.

| QUALIFYING DIAGNOSIS | MAXIMUM AWARD AVAILABLE |
|---|---|
| Amyotrophic lateral sclerosis (ALS) | $5 million |
| Death with CTE (diagnosed after death) | $4 million |
| Parkinson's Disease | $3.5 million |
| Alzheimer's Disease | $3.5 million |
| Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) | $3 million |
| Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) | $1.5 million |

Monetary awards may be increased up to 2.5% per year during the 65-year Monetary Award Fund term for inflation.

To receive the maximum amount outlined in the table, a retired player must have played for at least five Eligible Seasons (*see* Question 18) and have been diagnosed when younger than 45 years old.

Derivative Claimants are eligible to be compensated from the monetary award of the retired player with whom they have a close relationship in an amount of 1% of that award. If there are multiple Derivative Claimants for the same retired player, the 1% award will be divided among the Derivative Claimants according to the law where the retired player (or his Representative Claimant, if any) resides.

**17. How does the age of the retired player at the time of first diagnosis affect a monetary award?**

Awards are reduced for retired players who were 45 or older when diagnosed. The younger a retired player is at the time of diagnosis, the greater the award he will receive. Setting aside the other downward adjustments to monetary awards, the table below provides:

- The average award for people diagnosed between the ages of 45-79; and
- The amount of the award for those under age 45 and over 79.

The actual amount will be determined based on each retired player's actual age at the time of diagnosis and on other potential adjustments.

| AGE AT DIAGNOSIS | ALS | DEATH W/CTE | PARKINSON'S | ALZHEIMER'S | LEVEL 2 | LEVEL 1.5 |
|---|---|---|---|---|---|---|
| Under 45 | $5,000,000 | $4,000,000 | $3,500,000 | $3,500,000 | $3,000,000 | $1,500,000 |
| 45 - 49 | $4,500,000 | $3,200,000 | $2,470,000 | $2,300,000 | $1,900,000 | $950,000 |
| 50 - 54 | $4,000,000 | $2,300,000 | $1,900,000 | $1,600,000 | $1,200,000 | $600,000 |
| 55 - 59 | $3,500,000 | $1,400,000 | $1,300,000 | $1,150,000 | $950,000 | $475,000 |
| 60 - 64 | $3,000,000 | $1,200,000 | $1,000,000 | $950,000 | $580,000 | $290,000 |
| 65 - 69 | $2,500,000 | $980,000 | $760,000 | $620,000 | $380,000 | $190,000 |
| 70 - 74 | $1,750,000 | $600,000 | $475,000 | $380,000 | $210,000 | $105,000 |
| 75 - 79 | $1,000,000 | $160,000 | $145,000 | $130,000 | $80,000 | $40,000 |
| 80+ | $300,000 | $50,000 | $50,000 | $50,000 | $50,000 | $25,000 |

**Note:** The age of the retired player at diagnosis (not the age when applying for a monetary award) is used to determine the monetary amount awarded.

**18. How does the number of seasons a retired player played affect a monetary award?**

Awards are reduced for retired players who played less than five "Eligible Seasons." The Settlement uses the term "Eligible Season" to count the seasons in which a retired player played or practiced in the NFL or AFL. A retired player earns an Eligible Season for:

- Each season where he was on an NFL or AFL Member Club's "Active List" for either three or more regular season or postseason games, or

- Where he was on an Active List for one or more regular or postseason games and then spent two regular or postseason games on an injured reserve list or inactive list due to a concussion or head injury.

- A retired player also earns one-half of an Eligible Season for each season where he was on an NFL or AFL Member Club's practice, developmental, or taxi squad for at least eight games, but did not otherwise earn an Eligible Season.

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                     Page 12

-1021-

The "Active List" means the list of all players physically present, eligible and under contract to play for an NFL or AFL Member Club on a particular game day within any applicable roster or squad limits in the applicable NFL or AFL Constitution and Bylaws.

Time spent playing or practicing in the World League of American Football, NFL Europe League, and NFL Europa League does not count towards an Eligible Season.

The table below lists the reductions to a retired player's (or his Representative Claimant's) monetary award if the retired player has less than five Eligible Seasons. To determine the total number of Eligible Seasons credited to a retired player, add together all of the earned Eligible Seasons and half Eligible Seasons. For example, if a retired player earned two Eligible Seasons and three half Eligible Seasons, he will be credited with 3.5 Eligible Seasons.

| NUMBER OF ELIGIBLE SEASONS | PERCENTAGE OF REDUCTION |
|---|---|
| 4.5 | 10% |
| 4 | 20% |
| 3.5 | 30% |
| 3 | 40% |
| 2.5 | 50% |
| 2 | 60% |
| 1.5 | 70% |
| 1 | 80% |
| .5 | 90% |
| 0 | 97.5% |

**19. How do prior strokes or traumatic brain injuries of a retired player affect a monetary award?**

It depends. A retired player's monetary award (or his Representative Claimant monetary award) will be reduced by 75% if he experienced: (1) a medically diagnosed stroke that occurred before or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis; or (2) a severe traumatic brain injury unrelated to NFL football that occurred during or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis.

The award will not be reduced if the retired player (or his Representative Claimant) can show by clear and convincing evidence that the stroke or traumatic brain injury is not related to the Qualifying Diagnosis.

**20. How is a retired player's monetary award affected if he does not participate in the BAP program?**

It depends on when the retired player receives his Qualifying Diagnosis and the nature of the diagnosis. There is a 10% reduction to the monetary award if the retired player does not participate in the BAP and:

- Did not receive a Qualifying Diagnosis prior to [Date of Preliminary Approval Order], and

- Receives a Qualifying Diagnosis (other than ALS) after his deadline to receive a BAP baseline assessment examination.

**21.  Can I receive a monetary award even though the retired player is dead?**

Yes.  Representative Claimants for deceased retired players with a Qualifying Diagnoses will be eligible to receive monetary awards.  If the deceased retired player died before January 1, 2006, however, the Representative Claimant will only receive a monetary award if the Court determines that a wrongful death or survival claim is allowed under applicable state law.

Derivative Claimants also will be eligible for a total award of 1% of the monetary award that the Representative Claimant for the deceased retired player receives (*see* Question 16).

Representative and Derivative Claimants will also need to register for Settlement benefits (*see* Question 26).

**22.  Will this Settlement affect a retired player's participation in NFL or NFLPA-related benefits programs?**

No.  The Settlement benefits are completely independent of any benefits programs that have been created by or between the NFL and the NFL Players Association.  This includes the 88 Plan (Article 58 of the 2011 Collective Bargaining Agreement) and the Neuro-Cognitive Disability Benefit (Article 65 of the 2011 Collective Bargaining Agreement).

**Note:**  The Settlement ensures that a retired player who has signed, or will sign, a release as part of his Neuro-Cognitive Disability Benefit application, will not be denied Settlement benefits.

**23.  Will this Settlement prevent retired players from bringing workers' compensation claims?**

No.  Claims for workers' compensation will not be released by this Settlement.

## EDUCATION FUND

**24.  What type of education programs are supported by the Settlement?**

The Settlement will provide $10 million in funding to support education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives.

Retired players will be able to actively participate in such initiatives if they desire.

# CHAPTER 3:  YOUR RIGHTS

## REMAINING IN THE SETTLEMENT

| |
|---|
| **25.  What am I giving up to stay in the Settlement Class?** |

Unless you exclude yourself from the Settlement, you cannot sue the NFL Parties, the Member Clubs, or related individuals and entities, or be part of any other lawsuit against the NFL Parties about the issues in this case.  This means you give up your right to continue to litigate any claims related to this Settlement, or file new claims, in any court or in any proceeding at any time.  **However, the Settlement does not release any claims for workers' compensation (*see* Question 23) or claims alleging entitlement to NFL medical and disability benefits available under the Collective Bargaining Agreement**.

Please note that certain Plaintiffs also sued the football helmet manufacturer Riddell and certain related entities (specifically, Riddell, Inc., Riddell Sports Group Inc., All American Sports Corporation, Easton-Bell Sports, Inc., EB Sports Corp., Easton-Bell Sports, LLC, and RBG Holdings Corp.). **They are not parties to this Settlement and claims against them are not released by this Settlement**.

Article XVIII of the Settlement Agreement contains the complete text and details of what Settlement Class Members give up unless they exclude themselves from the Settlement, so please read it carefully.  The Settlement Agreement is available at www.NFLConcussionSettlement.com.  The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania  (*see* Question 35 for the address).  You can also get this information by calling 1-800-000-0000.  If you have any questions you can talk to the law firms listed in Question 33 for free or you can talk to your own lawyer if you have questions about what this means.

## HOW TO GET BENEFITS

| |
|---|
| **26.  How do I get Settlement benefits?** |

To get benefits, you will need to register.  This is true for all Settlement Class Members, including Representative and Derivative Claimants.  Registration for benefits will not begin until after Final Settlement Approval (*see* Question 37).  If and when that occurs, further notice will be provided about the registration process and deadlines.  **However, you may provide your name and contact information now at www.NFLConcussionSettlement.com or by calling 1-800-000-0000.  This ensures that you will receive additional notice about the registration process and deadlines when that becomes available.**  To receive any Settlement benefits, you must register on or before 180 days from the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com.  Information about the registration deadline will also be available by calling **1-800-000-0000.**

| |
|---|
| **27.  Is there a time limit for Retired NFL Football Players and Representative Claimants to file claims for monetary awards?** |

Yes.  Retired NFL Football Players and Representative Claimants for retired players who are diagnosed by the date of Final Settlement Approval must submit claims for monetary awards within two years of the date that further notice about the registration process and deadlines is posted on

www.NFLConcussionSettlement.com. Retired NFL Football Players and Representative Claimants for retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of diagnosis to file claims. This deadline may be extended to within four years of the Qualifying Diagnosis or the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com, whichever is later, if the Retired NFL Football Player or Representative Claimant can show substantial hardship beyond the Qualifying Diagnosis. Derivative Claimants must submit claims no later than 30 days after the Retired NFL Football Player through whom the close relationship is the basis for the claim (or the Representative Claimant of that retired player) receives a notice that he is entitled to a monetary award. All claims must be submitted by the end of the 65-year term of the Monetary Award Fund.

| **28.  Can I re-apply for compensation if my claim is denied?** |
|---|

Yes. A Settlement Class Member who submits a claim for a monetary award that is denied can re-apply in the future should the Retired NFL Football Player's medical condition change.

| **29.  Can I appeal the determination of my monetary award claim?** |
|---|

Yes. The Settlement establishes a process for a Settlement Class Member to appeal the denial of a monetary award claim or the amount of the monetary award.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to receive benefits from this Settlement, and you want to retain the right to sue the NFL Parties about the legal issues in this case, then you must take steps to remove yourself from the Settlement. You may do this by asking to be excluded – sometimes referred to as "opting out" of – the Settlement Class.

| **30.  How do I get out of the Settlement?** |
|---|

To exclude yourself from the Settlement, you must mail a letter or other written document to the Claims Administrator. Your request must include:

- Your name, address, telephone number, and date of birth;

- A copy of your driver's license or other government issued identification;

- A statement that "I wish to exclude myself from the Settlement Class in *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323" (or substantially similar clear and unambiguous language); and

- Your signature by hand (not any form of electronic signature), and the date on which you signed it (even if represented by an attorney).

You must mail your exclusion request, postmarked no later than **Month 00, 0000** [Date ordered by the Court], to:

NFL Concussion Settlement
P.O. Box 0000,
City, ST 00000

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                                    Page 16

-1025-

| **31. If I do not exclude myself, can I sue the NFL Parties for the same thing later?** |
|---|

No. Unless you exclude yourself, you give up the right to sue the NFL Parties for all of the claims that this Settlement resolves. If you want to maintain your own lawsuit relating to the claims released by the Settlement, then you must exclude yourself by **Month 00, 0000.**

| **32. If I exclude myself, can I still get benefits from this Settlement?** |
|---|

No. **If you exclude yourself from the settlement you will not get any Settlement benefits**. You will not be eligible to receive a monetary award or participate in the Baseline Assessment Program.

## THE LAWYERS REPRESENTING YOU

| **33. Do I have a lawyer in the case?** |
|---|

The Court has appointed a number of lawyers to represent all Settlement Class Members as "Co-Lead Class Counsel," "Class Counsel" and "Subclass Counsel" (*see* Question 6). They are listed at the end of this Notice with their contact information.

You will not be charged for contacting these lawyers. If you are represented by an attorney, you may contact your attorney to discuss the proposed Settlement. You do not have to hire your own attorney. However, if you want to be represented by your own lawyer, you may hire one at your own expense.

| **34. How will the lawyers be paid?** |
|---|

At a later date to be determined by the Court, Co-Lead Class Counsel, Class Counsel and Subclass Counsel will ask the Court for an award of attorneys' fees and reasonable costs. The NFL Parties have agreed not to oppose or object to the request for attorneys' fees and reasonable incurred costs if the request does not exceed $112.5 million. These fees and incurred costs will be paid separately by the NFL Parties and not from the Baseline Assessment Program Fund, Education Fund, or Monetary Award Fund. Settlement Class Members will have an opportunity to comment on and/or object to this request at an appropriate time. Ultimately, the award of attorneys' fees and reasonable costs to be paid by the NFL Parties is subject to the approval of the Court.

After Final Settlement Approval, Co-Lead Class Counsel may ask the Court to set aside up to five percent of each Monetary Award and Derivative Claimant Award to facilitate the Settlement program and related efforts of Co-Lead Class Counsel, Class Counsel and Subclass Counsel. If approved, this money would be held in a separate fund overseen by the Court. Any future request for a set-aside will describe: (1) the proposed amount; (2) how the money will be used; and (3) any other relevant information. This "set-aside" would come out of the claimant's attorney's fee if represented by individual counsel or, if not represented, out of the Monetary Award or Derivative Claimant Award itself. No money will be held back or set aside from any award without a Court order. The set-aside is a matter between Class Counsel and individual counsel for Settlement Class Members. The NFL Parties do not take a position on the proposal.

## OBJECTING TO THE SETTLEMENT

You may tell the Court that you do not agree with the Settlement or some part of it.

| **35.  How do I tell the Court if I do not like the Settlement?** |
|---|

If you do not exclude yourself from the Settlement Class, you may object to the Settlement if you do not like some part of it.  The Court will consider your views.  To object to the Settlement, you or your attorney must submit your written objection to the Court.  The objection must include the following:

- The name of the case and multi-district litigation, *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323;

- Your name, address, telephone number, and date of birth;

- The name of the Retired NFL Football Player through which you are a Representative Claimant or Derivative Claimant (if you are not a retired player);

- Written evidence establishing that you are a Settlement Class Member;

- A detailed statement of your objections, and the specific reasons for each such objection, including any facts or law you wish to bring to the Court's attention;

- Any other supporting papers, materials or briefs that you want the Court to consider in support of your objection; and

- Your signature by hand (not any form of electronic signature), and the date on which you signed it (even if represented by an attorney).

The requirements to object to the Settlement are described in detail in the Settlement Agreement in section 14.3.

You must file your objection with the Court no later than **Month 00, 0000 [date ordered by the Court]**:

| **COURT** |
|---|
| Clerk of the District Court/NFL Concussion Settlement |
| United States District Court for the Eastern District of Pennsylvania |
| James A. Byrne U.S. Courthouse, |
| 601 Market Street, |
| Philadelphia, PA 19106-1797 |

| **36.  What is the difference between objecting to the Settlement and excluding myself?** |
|---|

Objecting is simply telling the Court that you do not like something about the Settlement or want it to say something different.  You can object only if you do not exclude yourself from the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and you do

not want to receive any Settlement benefits.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement.  You may attend and you may ask to speak, but you do not have to.  The Court will determine if you are allowed to speak if you request to do so (*see* Question 39).

| **37.  When and where will the Court hold a Fairness Hearing concerning the Settlement?** |
|---|

The Court will hold the Fairness Hearing at XX:00 x.m. on **Month 00, 0000**, at the United States District Court for the Eastern District of Pennsylvania, located at the James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106-1797.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.NFLConcussionSettlement.com or call **1-800-000-0000**.  At this hearing, the Court will hear evidence about whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them and may elect to listen to people who have asked to speak at the hearing.  After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

The Court will consider the request for attorneys' fees and reasonable costs by Co-Lead Class Counsel, Class Counsel and Subclass Counsel (*see* Question 34) after the Fairness Hearing, which will be set at a later date by the Court.

| **38.  Do I have to attend the hearing?** |
|---|

No.  Co-Lead Class Counsel, Class Counsel and Subclass Counsel will answer questions the Court may have.  But you are welcome to attend at your own expense.  If you timely file an objection, you do not have to come to Court to talk about it.  As long as you filed your written objection on time, the Court will consider it.  You may also have your own lawyer attend at your expense, but it is not necessary.

| **39.  May I speak at the hearing?** |
|---|

You may ask the Court for permission to speak at the Fairness Hearing.  The Court will determine whether to grant you permission to speak.  To make such a request, you must file a written notice stating that it is your wish to speak at the *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323 Fairness Hearing.  Be sure to include your name, address, telephone number, and your signature. Your request to speak must be filed with the Court no later than **Month 00, 0000** at the address in Question 35.

## GETTING MORE INFORMATION

| **40.  How do I get more information?** |
|---|

This Notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement at www.NFLConcussionSettlement.com.  The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                                     Page 19

35 for the address).  You also may write with questions to NFL Concussion Settlement, P.O. Box 0000, City, ST 00000 or call **1-800-000-0000**.

**PLEASE DO NOT WRITE OR TELEPHONE THE COURT OR THE NFL PARTIES FOR INFORMATION ABOUT THE SETTLEMENT OR THIS LAWSUIT.**

| IMPORTANT DATES AND CONTACT INFORMATION | | |
|---|---|---|
| **Exclusion "Opt Out" Deadline** | Month 00, 2014 | |
| **Objection Deadline** | Month 00, 2014 | |
| **Deadline to Request to Speak at the Fairness Hearing** | Month 00, 2014 | |
| **Fairness Hearing** | Month 00, 2014 | |
| **Start of Registration Period** | The start of the registration process and related deadlines will be announced on www.NFLConcussionSettlement.com following Final Settlement Approval | |
| **Registration Deadline** | 180 days after registration begins | |
| **Submit a Claim** | • Retired NFL Football Players and Representative Claimants for retired players who are diagnosed by the date of Final Settlement Approval must submit claims for monetary awards within two years of the announcement of the registration process.<br>• Retired NFL Football Players and Representative Claimants for retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of diagnosis to file claims. | |
| **Settlement Administrator** | NFL Concussion Settlement<br>P.O. Box 0000<br>City, ST 00000<br>Tel: 1-800-000-0000 | |
| **Court** | Clerk of the District Court/NFL Concussion Settlement<br>United States District Court for the Eastern District of Pennsylvania<br>James A. Byrne U.S. Courthouse,<br>601 Market Street,<br>Philadelphia, PA 19106-1797 | |
| **Class Counsel** | Christopher A. Seeger<br>Co-Lead Class Counsel<br>SEEGER WEISS LLP<br>77 Water Street<br>New York, NY 10005 | Sol Weiss<br>Co-Lead Class Counsel<br>ANAPOL SCHWARTZ<br>1710 Spruce Street<br>Philadelphia, PA 19103 |
| | Steven C. Marks<br>Class Counsel<br>PODHURST ORSECK P.A.<br>City National Bank Building<br>25 W. Flagler Street, Suite 800<br>Miami, FL 33130-1780 | Gene Locks<br>Class Counsel<br>LOCKS LAW FIRM<br>The Curtis Center, Suite 720 East<br>601 Walnut Street<br>Philadelphia, PA 19106 |
| | Arnold Levin<br>Counsel - Subclass 1<br>LEVIN FISHBEIN SEDRAN & BERMAN<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106 | Dianne M. Nast, Counsel –<br>Counsel - Subclass 2<br>NAST LAW LLC<br>1101 Market Street, Suite 2801<br>Philadelphia, Pennsylvania 19107 |

**QUESTIONS? CALL 1-800-000-0000 OR VISIT www.NFLConcussionSettlement.com**

Exhibit 5                                                                              Page 21

**Reminder:** Provide your name and contact information now at www.NFLConcussionSettlement.com or by calling 1-800-000-0000.   This ensures that you will receive additional notice about the registration process and deadlines when it becomes available.

# Exhibit C

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323<br><br>**DECLARATION OF KATHERINE KINSELLA** |

I, Katherine Kinsella, being duly sworn, hereby declare as follows:

1.  I am President of Kinsella Media, LLC ("KM"), an advertising and legal notification firm in Washington, D.C. specializing in the design and implementation of notification programs to reach unidentified putative class members primarily in consumer and antitrust class actions and claimants in bankruptcy and mass tort litigation. My business address is 2120 L Street, NW, Suite 860, Washington, D.C. 20037.  My telephone number is (202) 686-4111.

2.  I submit this declaration at the request of the parties in connection with *In re: National Football League Players' Concussion Injury Litigation.*  A detailed Notice Plan is attached.

3.  This declaration is based upon my personal knowledge and upon information provided by the parties, my associates, and staff.  The information is of a type reasonably relied upon in the fields of advertising, media and communications.

4.  KM has developed and directed some of the largest and most complex national notification programs in the country.  The scope of the firm's work includes notification programs in antitrust, bankruptcy, consumer fraud, mass tort, and product liability litigation.  Specific cases have involved, among others, asbestos, breast implants, home siding and roofing products, infant formula, pharmaceuticals, polybutylene plumbing,

tobacco, and Holocaust claims.   The firm has developed or consulted on over 700

notification programs and has placed over $300 million in media notice.

5.  Courts have admitted expert testimony from KM on our firm's quantitative and

qualitative evaluations of notice programs.  Many Courts have commented favorably, on

the record, regarding the effectiveness of notice plans prepared by KM.

6.  I have testified as an expert at trial and in a deposition in *Engle v. R. J. Reynolds

Tobacco*, No. 94-08273 (Fla. Cir. Ct., Dade County).  I have been deposed as an expert in

*In re NASDAQ Market-Makers Antitrust Litigation*, M21-68 RWS), 94-CIV. 3994

(RWS), M.D.L. No. 123 (S.D.N.Y.), *In re Dow Corning*, No. 95-20512 (Bankr. E.D.

Mich.), *Georgine v. Amchem, Inc. et al.,* C.A. No. 93-CV-0215 (E.D. Pa.), *In re W. R.

Grace & Co.*, Chapter 11, No.01-01139 (JJF) (Bankr. D. Del.), *Gross v. Chrysler Corp.,*

No. 061170 (Md. Cir. Ct., Montgomery County), *In re Bluetooth Headset Products

Liability Litigation*, No. 2:07-ML-1822-DSF-E (C.D. Cal.), and *Donovan v. Philip

Morris USA, Inc.,* No. 06-CA-12234 (D. Mass.).  I have testified in court in *In re Swan

Transportation Company*, Chapter 11, Case No. 01-11690, *Cox v. Shell Oil Co.,* No.

18,844 (Tenn. Ch. Ct., Obion County), *Ahearn v. Fibreboard Corporation*, C.A. No.

6:93cv526 (E.D. Tex.) and *Continental Casualty Co. v. Rudd,* C.A. No. 6:94cv458 (E.D.

Tex.).

7.  I am the author of the following:

    a.  *Buyer Beware: Eight Pitfalls That Can Jeopardize Your Class Action Notice

       Program*, published in the July 12, 2013 issue of <u>Class Action Litigation Report</u>.

b. *The Plain Language Tool Kit for Class Action Notice*, published in 2010 in <u>A Practitioner's Guide to Class Actions</u>, as well as the October 25, 2002 issue of <u>Class Action Litigation Report</u>;

c. *Quantifying Notice Results in Class Actions – the Daubert/Kumho Mandate*, published in 2010 in <u>A Practitioner's Guide to Class Actions</u>, as well as the July 27, 2001 issue of <u>Class Action Litigation Report</u> and the August 7, 2001 issue of <u>The United States Law Week</u>; and

d. *The Ten Commandments of Class Action Notice*, published in the September 24, 1997 issue of the <u>Toxics Law Reporter</u>.

8. I am also co-author of the following:

a. *International Class Action Notice*, published in 2012 in <u>World Class Action:  A Guide to Group and Representative Actions Around the Globe</u>;

b. *Class Notice and Claims Administration*, published in 2010 in <u>Private Enforcement of Antitrust Law in the United States: A Handbook</u> and in 2012 in <u>The International Handbook on Private Enforcement of Competition Law</u>;

c. *REALITY CHECK: The State of New Media Options for Class Action Notice*, published in 2010 in <u>A Practitioner's Guide to Class Actions</u>, as well as the February 26, 2010 issue of <u>Class Action Litigation Report</u>; and

d. *How Viable Is the Internet for Class Action Notice*, published in the March 25, 2005 issue of <u>Class Action Litigation Report</u>.

9. KM was retained to design and implement the Notice Plan in this litigation.  I submit this declaration to describe the elements of the Notice Plan.

**Proposed Notice Plan**

10. A two-part notification plan was designed and includes:

   a.  Direct notice by first-class mail to all known Retired NFL Football Players and heirs of deceased retired players; and

   b.  Broad notice through the use of paid media including national consumer magazines, trade publications, television, radio, and Internet advertising.

11. Supplemental Notice will be prepared and implemented after the Settlement becomes effective to advise Settlement Class Members of registration and other deadlines, how to register for participation in the Settlement, how to participate in the BAP, and how to submit Claim Packages or Derivative Claim Packages.

**Direct Mail Notice**

12. The Settlement Class is made up of a number of discrete groups.  In addition to the Retired NFL Football Players, there are legal representatives and family members.  To determine the size and make-up of the Settlement Class, KM worked with proposed Claims Administrator, BrownGreer PLC ("BrownGreer"), to develop a comprehensive list of Settlement Class Members to whom direct notice can be mailed.

13. BrownGreer worked through a total of 33 datasets, which included some combination of living and deceased players' names, dates of birth, dates of death, team names, years played, and the names, addresses, dates of birth, and dates of death of players' beneficiaries.  In order to build the most comprehensive list, BrownGreer:

   a.  Compiled all 33 datasets into one;

   b.  Removed duplicate records; and

   c.  Separated records of deceased NFL Football Players; and

    d.  Deleted records that only had a name and no address information.

14. BrownGreer worked with LexisNexis in several steps to:

    a.  Find the best-known addresses for each individual;

    b.  Run through its death database to identify which individuals are deceased; and

    c.  Run the dataset of deceased individuals through their first-degree relative database to identify known relatives and their best-known addresses. First-degree relatives include children, spouses, parents, and siblings;

15. BrownGreer worked with LexisNexis in November and December 2013 to perform the above searches. In June 2014, BrownGreer worked with LexisNexis to perform the same searches to identify any names or addresses LexisNexis added to their databases, any individuals who died, or any first-degree relatives identified in the intervening months.

16. BrownGreer will combine the list of living players and beneficiaries with the list of deceased players' relatives to form the notice mailing list. More detailed information about all of BrownGreer's efforts is included in the Notice Plan.

17. Direct Mail Notice will consist of mailing a cover letter and the Long-form Notice ("Notice") (attached as Exhibit 3 to the Notice Plan) to potential Settlement Class Members to inform them of their rights and how they may participate in the Class Action Settlement. This Direct Mail Notice will be distributed via first-class mail to:

    a.  All readily identifiable Settlement Class Members, which includes Retired Football NFL Players and heirs of deceased retired players developed through the process previously outlined.

    b.  Anyone who calls the toll-free information line, or writes or emails the Claims Administrator to request the Long-form Notice.

18. The Notice will also be available on the Settlement Website as a PDF file.

**Paid Media Notice**

19. As detailed in the Notice Plan, KM undertook an analysis of the Settlement Class and determined there are ethnic, age, and gender differences among the Settlement Class Members. The Settlement Class is made up of a number of discrete groups, each of which consumes media based on their demographics. In addition to the Retired NFL Football Players, there are legal representatives and family members.

20. The Notice Plan is based on specifically reaching consumers who fit within these demographic groups of Settlement Class Members. Therefore, specific media was chosen to reach all of the demographic groups included in the Settlement Class. Further details about why each medium was chosen are available in the Notice Plan.

**Paid Media Placements**

21. The proposed media schedule includes advertising in national consumer magazines, trade publications, television, radio, and Internet advertising to reach the groups mentioned above.

22. The short-form notice ("Summary Notice") will appear in national consumer magazines as follows:

    a. A full-page, color ad (7" x 10") once in *Ebony* with an estimated circulation of 1,250,000.

    b. A full-page, color ad (7" x 10") twice in *People* with an estimated circulation of 3,475,000.

    c. A full-page, color ad (7" x 10") once in *Sports Illustrated* with an estimated circulation of 3,000,000.

d.  A full-page, color ad (7" x 10") once in *Time* with an estimated circulation of 3,250,000.

23. The Summary Notice will appear in trade publications as follows:

a.  A full-page, color ad (7" x 10") in *Long-Term Living* with an estimated circulation of 50,080.

b.  A full-page, color ad (7.25" x 10") in *McKnight's Long-Term Care News & Assisted Living* with an estimated circulation of 40,200.

c.  A full-page, color ad (7" x 10") in *Provider* with an estimated circulation of 50,200.

d.  A full-page, color ad (7" x 10") in *Senior Living Executive* with an estimated circulation of 21,808.

24. Thirty-second television commercials ("TV Spots"), which will prominently feature the toll-free number and the Settlement Website address, will appear for two to three weeks across a variety of national channels and programs.  The TV spots will be aired across channels and programs targeting Adults 50+ and will run throughout the day in different program environments in order to reach the highest number of viewers.  A combination of broadcast and cable networks will be chosen, including, but not limited to ABC, CBS, CNN, The Weather Channel, and Headline News.

25. Thirty-second radio commercials, which will prominently feature the toll-free number and the Settlement Website address, will run for two to three weeks on American Urban Radio Networks ("AURN").  AURN is the largest network reaching Urban America, and reaches an estimated 20 millions listeners each week.  These radio networks provide additional coverage in markets across the U.S. that have significant African American

populations.  For this Notice Plan, network radio is being used to primarily reach African American Settlement Class Members, as well as Retired NFL Football Players.  Radio usage is especially high among African Americans as compared to the general population.[1]

26. Internet advertising will include the following placements for a 30-day period:

   a.  Banner advertisements measuring 728x90, 300x250, and 160x600 pixels on a rotating basis, on the following targeted websites:

      i.  CNN.com

      ii.  Weather.com

      iii.  Facebook.com

   b.  A variety of advertisements on the following networks:

      i.  Microsoft Media Network

      ii.  Specific Media

      iii.  Yahoo!

**<u>Advertising on NFL Properties</u>**

27. The NFL has agreed to provide notice on the NFL Network.  The Notice Plan calls for 30-second TV Spots to be aired throughout the day in different program environments to reach the highest number of viewers over a period of two to three weeks.  It is expected that the TV Spots will appear across all programming on the NFL Network.

28. NFL Network viewers are primarily male, which may help reach Retired NFL Football Players and male heirs to whom direct mail notice is not possible.  It is likely that given the importance of having a retired NFL player as part of the family, relatives of these

---

[1] Target Market News, *Media Audit study shows African Americans more engaged with media*, at http://www.targetmarketnews.com/storyid07260702.htm (last visited Nov. 9, 2013).

individuals may be engaged in following NFL football and are potential viewers of the NFL programming.

29. The NFL has also agreed to provide notice on NFL.com.  Notice on NFL.com will allow Settlement Class Members to click on a banner ad on that website and be directed to the Settlement Website or provide the address to Settlement Class Members textually. Banner advertisements (728x90 pixels and 300x250 pixels) will appear on pages throughout the site.

30. It is expected that some percentage of Retired NFL Football Players who cannot be reached through direct mail notice, as well as family members, will visit the NFL.com website.

**Additional Outreach**

31. In order to reach those people who may know Retired NFL Football Players, and ask them to pass along information about the Settlement, KM will undertake additional outreach as part of the Notice Plan.  This will include:

    a.  A mailing to the directors of approximately 60,000 nursing homes, assisted living facilities, and rehab facilities.  The mailing will include a cover letter requesting their assistance in locating Retired NFL Football Players that are in their facilities, as well as a copy of the Summary Notice.

    b.  Reaching out to various NFL organizations to request they inform their members of the Settlement and assist in locating Retired NFL Football Players whose addresses are unknown.  This includes outreach to individual team organizations, alumni groups, and the NFL Player Care Foundation.

**Electronic Notice**

32. A Settlement Website will be established to enable potential Settlement Class Members to get information on the Settlement.

33. In order to help search engine users locate the Settlement Website – both those specifically looking for it and those looking for related topics – KM will purchase sponsored links that could appear when searchers enter certain terms on Google and Bing search engines.

**Content and Form of Notices**

34. Rule 23(c)(2) of the Federal Rules of Civil Procedure requires class action notices to be written in "plain, easily understood language."  KM applies the plain language requirement in drafting notices in federal and state class actions.  The firm maintains a strong commitment to adhering to the plain language requirement, while drawing on its experience and expertise to draft notices that effectively convey the necessary information to Settlement Class Members.

35. The Summary Notice, attached as Exhibit 5 to the Notice Plan, is designed to get the reader's attention.  The Summary Notice concisely and clearly states, in plain easily understandable language, all required information.  The Summary Notice refers readers to the availability of a Long-form Notice, which is available to those who call or visit the website.

36. The Notice will be available at the website or by calling the toll-free number.  The Notice provides substantial information, including specific instructions Settlement Class Members need to follow to properly exercise their rights, and background on the issues in the case.  It is designed to encourage readership and understanding, in a well-organized and reader-friendly format.

**Conclusion**

37. KM estimates that the Direct Mail Notice, in combination with the Paid Media Placements, will reach over 90% of Settlement Class Members. It is my opinion that the Notice Plan will provide the best notice practicable under the circumstances, and it is consistent with the standards employed by KM in notification plans designed to reach unidentified members of settlement groups or classes. The Notice Plan as designed is fully compliant with Rule 23 of the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct.

| | |
|---|---|
| *Katherine Kinsella* | June 25, 2014 |
| Katherine Kinsella | Date |



NOTICE PLAN

*In re: National Football League Players'
Concussion Injury Litigation*
No. 2:12-md-02323

United States District Court for the Eastern District of
Pennsylvania

© 2014 Kinsella Media, LLC

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| **FIRM OVERVIEW** | 1 |
| **CASE BACKGROUND** | |
| Class Definition | 3 |
| Situation Analysis | 4 |
| **NOTICE PLAN OVERVIEW** | |
| Plan Components | 8 |
| Direct Notice | 9 |
| Paid Media Program | 10 |
| Paid Media Placements Summary | 11 |
| **PAID MEDIA PLACEMENTS** | |
| Overview | 13 |
| Consumer Magazines | 14 |
| Trade Publications | 16 |
| Television | 18 |
| National Radio | 19 |
| Internet Advertising | 20 |
| **EFFECTIVENESS OF NOTICE PLAN** | 22 |
| **NOTICE DESIGN** | |
| Long-form Notice | 24 |
| Summary Notice | 25 |
| Radio and TV Spots | 26 |
| Website and Internet Ads | 27 |
| **TOLL-FREE TELEPHONE SUPPORT** | 28 |
| **ADDITIONAL OUTREACH OPPORTUNITIES** | 29 |
| **EXHIBITS** | |
| Exhibit 1 – Selected KM Cases | |
| Exhibit 2 – Judicial Comments | |
| Exhibit 3 – Long-form Notice | |
| Exhibit 4 – Envelope | |
| Exhibit 5 – Summary Notice | |

© 2014 Kinsella Media, LLC

*In re: National Football League Players' Concussion Injury Litigation*

# FIRM OVERVIEW

Kinsella Media, LLC ("KM") is a nationally recognized legal notification firm in Washington, D.C. specializing in the design and implementation of notification programs to reach unidentified putative class members primarily in consumer and antitrust class actions and claimants in bankruptcy and mass tort litigation.

KM has developed and directed some of the largest and most complex national notification programs, primarily in antitrust, bankruptcy, consumer fraud, mass tort, and product liability litigation. Specific cases have spanned a broad spectrum of issues, including asbestos, breast implants, home siding and roofing products, infant formula, pharmaceuticals, polybutylene plumbing, tobacco, and Holocaust claims. The firm has developed or consulted on over 700 notification programs and has placed over $300 million in paid media notice. A selection of KM's case experience and judicial comments about our notification programs are attached as Exhibits 1 and 2.

KM develops advertisements, press materials, websites, and other notice materials that bridge the gap between litigation complexities and the need for a clear and simple explanation of legal rights. The firm employs industry-recognized tools of media measurement to quantify the adequacy of the notice for the court, and ensures all notice materials are in "plain language" and are fully compliant with Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and comparable state guidelines.

*In re: National Football League Players' Concussion Injury Litigation*

# CASE BACKGROUND

© 2014 KINSELLA MEDIA, LLC

*In re: National Football League Players' Concussion Injury Litigation*

# CASE BACKGROUND:
## CLASS DEFINITION

The Settlement Class consists of:

➢ All living NFL Football players who, prior to the date of the Preliminary Approval and Class Certification Order, retired, formally or informally, from playing professional football with the NFL or any Member Club, including American Football League, World League of American Football, NFL Europe League and NFL Europa League players, or were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and who no longer are under contract to a Member Club and are not seeking active employment as players with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club ("Retired NFL Football Players");

➢ Authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased or legally incapacitated or incompetent Retired NFL Football Players ("Representative Claimants"); and

➢ Spouses, parents, children who are dependents, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player or deceased Retired NFL Football Player ("Derivative Claimants").

The Settlement Class includes the following Subclasses:

➢ Subclass 1, which shall consist of: "Retired NFL Football Players who were not diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants";[1] and,

➢ Subclass 2, which shall consist of: "Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants, and the Representative Claimants of deceased Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to death or who died prior to the date of the Preliminary Approval and Class Certification Order and who received a post-mortem diagnosis of CTE."

---

[1] "Qualifying Diagnosis" or "Qualifying Diagnoses" means Level 1.5 Neurocognitive Impairment (early Dementia), Level 2 Neurocognitive Impairment (moderate Dementia), Alzheimer's Disease, Parkinson's Disease, ALS, and/or Death with CTE, as defined in Exhibit 1 (Injury Definitions) of the Settlement Agreement.

© 2014 Kinsella Media, LLC

*In re: National Football League Players' Concussion Injury Litigation*

## CASE BACKGROUND:
## SITUATION ANALYSIS

The Settlement Class is made up of a number of discrete groups. In addition to the Retired NFL Football Players, there are legal representatives and family members.

To determine the size and make-up of the Settlement Class, KM worked with proposed Claims Administrator, BrownGreer PLC ("BrownGreer"), to develop a comprehensive list of Settlement Class Members to whom direct notice could be provided.

The following work has been completed or is in process to build a comprehensive mailing list:

- BrownGreer received 31 datasets and created two more, for a total of 33 datasets, which included some combination of living and deceased players' names; dates of birth; dates of death; team names; years played; and the names, addresses, dates of birth, and dates of death of players' beneficiaries. None of the datasets provided the same data points.

  o The National Football League ("NFL") provided seven sets of player data and one set of player and beneficiary data.

  o KM provided BrownGreer with three sets of player data, one set of beneficiary data, and three sets of combined player and beneficiary data, compiled for use in *Dryer v. NFL*, Case No. 09-cv-02182-PAM-AJB (D.Minn.)

  o Consulting firm ARPC provided BrownGreer with a dataset of deceased players.

  o Various NFL teams provided datasets for living and deceased players and coaches.

  o BrownGreer programmed a web crawler to pull publicly available data from NFL.com, the official website of the NFL. A web crawler is a program designed to systematically search public websites and record information made available by those sites. It maintains a database of statistics for current and historical players, and BrownGreer pulled player names, dates of birth, and/or places of birth. Using this tool, BrownGreer pulled the full names and dates of birth for 27,267 players that the NFL lists as current and past players. This website does not provide mailing addresses for any players.

  o BrownGreer also programmed a web crawler to pull publicly available data from databasesports.com. Databasesports.com maintains an online database of statistics and other information for popular sports, including football. BrownGreer pulled player names, positions, dates of birth, and places of birth from that website. After comparing this dataset to one KM provided, BrownGreer determined the sets were identical and excluded the databasesports.com set from the master dataset.

*In re: National Football League Players' Concussion Injury Litigation*

- o BrownGreer pulled a list purported to include all professional football players since 1920 from Pro-Football-Reference.com. This list included 23,204 names of players, their position(s) and years played, and a column indicating whether the played is deceased.

- BrownGreer compiled the datasets described in the preceding paragraphs into a master dataset that included approximately 230,105 names, many of which contained duplicative information.

- To identify and remove duplicate records from the dataset, BrownGreer designed 20 tests and database queries to run against the following fields: name, address, date of birth, and date of death.

  - o Before running the tests, BrownGreer removed spaces and special characters from names and addresses. BrownGreer also standardized the abbreviations of directions, street suffixes, and other common address terms in all addresses.

- The first test identified all records that included only a name with no address information, date of birth, or date of death. BrownGreer removed these records from the dataset because LexisNexis, to whom BrownGreer will send the completed dataset, is unable to locate an address or other identifying information based on a name alone. LexisNexis provides addresses, dates of death, and known relative information based on their extensive sources, including the Social Security Death Index, the National Change of Address Database, national credit agencies and other databases.

- The other 19 tests compared names, addresses, dates of birth, and dates of death to identify duplicate records, retained the most complete record from among the duplicates, and extracted information one record was missing from a less complete, but otherwise duplicative record.

- After running the 20 tests, BrownGreer removed approximately 153,600 records from the dataset.

- The final dataset included approximately 76,500 living and deceased players and beneficiaries.

- BrownGreer then separated out the known deceased individuals and sent the dataset of the remaining individuals to LexisNexis.

- LexisNexis ran the dataset through their address database and provided BrownGreer with a list of best-known addresses for each individual.

*In re: National Football League Players' Concussion Injury Litigation*

- BrownGreer scrubbed the dataset by identifying and removing any duplicate records from the results and returned the dataset to LexisNexis.

- LexisNexis ran the dataset through their death database and identified which individuals are deceased in addition to the previously identified individuals as deceased.

- BrownGreer combined the list of individuals LexisNexis identified as deceased to the list of known deceased individuals and returned this dataset to LexisNexis.

- LexisNexis will run the dataset of deceased individuals through their first-degree relative database to identify known relatives and their best-known addresses. First-degree relatives include children, spouses, parents, and siblings.

- BrownGreer will combine the list of living players and beneficiaries with the list of deceased players' relatives to form the notice mailing list.

Because direct notice in this case will not reach all potential Settlement Class Members, a paid media notice program targeted to unidentified Settlement Class Members and other third parties is necessary. The various groups we are trying to reach – unidentified Retired NFL Football Players, spouses, family members, legal representatives, heirs, and caregivers – have different ethnic, age, and gender differences. They, therefore, consume different media based on their demographics.  The Notice Plan that follows takes into consideration different media consumption habits as well as the need to reach out to third parties to assist with finding unidentified Retired NFL Football Players.

*In re: National Football League Players' Concussion Injury Litigation*

# NOTICE PLAN OVERVIEW

Notice Plan Overview:
# PLAN COMPONENTS

This Notice Plan outlines procedures to provide notice of the Settlement of *In re: National Football League Players' Concussion Injury Litigation* as a class action, consistent with the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.

Based on information provided by Co-Lead Class Counsel, and the results of research on the Settlement Class, KM recommends the following Notice Plan.

> ## DIRECT NOTICE:  The Long-form Notice (Exhibit 3) will be:
>> Sent via first-class mail to all individuals:
>>> Whose names and addresses are readily identifiable; and
>>> Who request a copy via the toll-free information line or Settlement Website detailed in the Publication Notice.
>> Available on the informational website as a PDF file.

> ## PAID MEDIA-BASED NOTICE:  After careful research of the demographics of Settlement Class Members, KM recommends broad paid media notice comprised of print, broadcast, and Internet vehicles that will reach those Settlement Class Members, including:
>> National consumer magazines and trade publications;
>> National television/radio spots;
>> NFL Network television;
>> NFL.com Internet advertising; and
>> Internet banner ads on additional networks and hundreds of targeted websites.

To complement the Notice Plan and to ensure Settlement Class Members' easy access to updated information, KM recommends a dedicated informational website and Internet search engine sponsorships through keyword/phrase searches to facilitate Settlement Class Members' access to the site.

## SUPPLEMENTAL NOTICE:  Supplemental Notice will be prepared and implemented after the Settlement becomes effective to advise Settlement Class Members of registration and other deadlines, how to register for participation in the Settlement, how to participate in the BAP, and how to submit Claim Packages or Derivative Claim Packages.

*In re: National Football League Players' Concussion Injury Litigation*

# NOTICE PLAN OVERVIEW:
## DIRECT NOTICE

Direct mail notice will consist of mailing the Long-form Notice in a large 9" x 12" envelope to identifiable Settlement Class Members, informing them of their legal rights and how they may participate in the Class Action Settlement.  Attached as Exhibit 4 is a depiction of the envelope in which the Long-form Notice will be mailed.

The Long-form Notice will be sent to:

➤ All readily identifiable Settlement Class Members, which includes Retired NFL Football Players and heirs of deceased retired players developed through the process previously outlined. It is anticipated that the final list will include over 30,000 recipients.

➤ Anyone who calls the toll-free information line, or writes or emails the Claims Administrator to request the Long-form Notice. The toll-free information line and informational website address will appear prominently in the Publication Notice.  Settlement Class Members may also download the Long-form Notice in PDF format from the informational website.

*In re: National Football League Players' Concussion Injury Litigation*

## NOTICE PLAN OVERVIEW:
## PAID MEDIA PROGRAM

Direct notice will be provided to all identifiable Settlement Class Members.  Paid media will be used to reach unidentifiable Settlement Class Members as it is guaranteed to appear and allows for control of the content, timing, and positioning of the message.  Newspapers, consumer magazines, television, radio, and the Internet, among other sources, offer paid media opportunities.

KM researched the most appropriate media vehicles that would meet the requirements of due process in reaching unidentifiable Settlement Class Members.  KM reviewed available consumer magazines, trade publications, and Internet advertising sites, and determined that the media discussed below will provide an efficient plan for reaching potential Settlement Class Members.

*In re: National Football League Players' Concussion Injury Litigation*

# NOTICE PLAN OVERVIEW:
## PAID MEDIA PLACEMENTS SUMMARY

The following list provides a brief summary of KM's recommended media placements in this case.

## PRINT PUBLICATIONS

### Consumer Magazines
- *Ebony*
- *People*
- *Sports Illustrated*
- *Time*

### Trade Publications
- *Long-Term Living*
- *McKnight's Long-Term Care News & Assisted Living*
- *Provider*
- *Senior Living Executive*

## BROADCAST

### Television
- Network Television and Cable
  - <u>May include:</u>
    - ABC
    - CBS
    - CNN
    - Headline News
    - The Weather Channel

- NFL Network

### Radio
- American Urban Radio Networks

## ONLINE MEDIA

### Internet Banner Ads
- NFL.com
- CNN.com
- Facebook.com
- Weather.com
- Microsoft Media Network
- Specific Media
- Yahoo!

### Keyword Search
- Google (includes Google, AOL, and Ask.com)
- Bing (Includes Bing/MSN and Yahoo!)

---

© 2014 KINSELLA MEDIA, LLC

*In re: National Football League Players' Concussion Injury Litigation*

# PAID MEDIA PLACEMENTS

© 2014 KINSELLA MEDIA, LLC

*In re: National Football League Players' Concussion Injury Litigation*

## PAID MEDIA PLACEMENTS:
## OVERVIEW

The paid media placements have been chosen to reach Retired NFL Football Players, spouses, family members, legal representatives, heirs, and caregivers.  As outlined below, some of the media will reach multiple groups providing greater opportunities for exposure to the message about the Settlement.



© 2014 KINSELLA MEDIA, LLC

*In re: National Football League Players' Concussion Injury Litigation*

## PAID MEDIA PLACEMENTS:
## CONSUMER MAGAZINES

Most adults read one or more magazines during an average month and nearly three out of five adults read or look at a magazine daily.  Heavy readers read 16 or more magazines per month.  Weekly magazines quickly accumulate readership and provide timely and efficient notice to readers.

KM recommends the following consumer magazine placements:

# TIME

➢ A full-page, color ad (7" x 10") in *Time* with an estimated circulation of 3,250,000.

➢ *Time* is a weekly news magazine covering national and international people, places, and events.

➢ Over 50% of *Time* readers are adults 50 years of age and older ("Adults 50+").

# EBONY

➢ A full-page, color ad in *Ebony* with an estimated circulation of 1,280,350.

➢ *Ebony* is a black-oriented, general, picture magazine dealing primarily with contemporary topics.  Features deal with education, history, politics, literature and arts, business, personalities, civil rights, sports entertainment, music, and social events.

➢ 29% of African-American adults 18 years of age and older ("African American Adults 18+") read an average issue of *Ebony*.

➢ An average issue of *Ebony* magazine has 7 readers per copy.



➢ A full-page, color ad (7" x 10") twice in *People* with an estimated circulation of 3,475,000.

➢ *People* is a weekly publication covering contemporary personalities in entertainment, politics, business, and other current events.

-1059-

*In re: National Football League Players' Concussion Injury Litigation*

➢ *People* is the highest-ranking weekly magazine in coverage of adults 18 years of age and older ("Adults 18+").

➢ An average issue of *People* has 11.87 readers per copy.



➢ A full-page, color ad (7" x 10") in *Sports Illustrated* with an estimated circulation of 3,000,000.

➢ *Sports Illustrated* is a weekly magazine covering sporting events and personalities through in-depth articles and stories.

➢ Over 35% of *Sports Illustrated*'s readers are Adults 50+.

➢ Men 50 years of age and older ("Men 50+") are 36% more likely than the average adult to read *Sports Illustrated*.

© 2014 Kinsella Media, LLC

*In re: National Football League Players' Concussion Injury Litigation*

<div align="center">

P A I D  M E D I A  P L A C E M E N T S :
### T R A D E  P U B L I C A T I O N S

</div>

An important component of the Notice Plan is advertising in trade publications that are read by individuals who run or work at facilities where Retired NFL Football Players may now live.

KM recommends the following trade publication placements:



➢ A full-page ad (7" x 10") in *Long-Term Living* with an estimated circulation of 50,080.

➢ *Long-Term Living* is published nine times per year and provides practical, in-depth, business-building, and patient/resident care information. Its readers are owners, administrators, and directors of nursing at skilled nursing care and assisted living facilities; continuing care retirement centers; post-acute care facilities; and independent living communities.



➢ A full-page ad (7.25" x 10") in *McKnight's Long-Term Care News & Assisted Living* with an estimated circulation of 40,200.

➢ *McKnight's Long-Term Care News & Assisted Living* is published monthly. Editorial content provides reports on the events that affect the way care is delivered across the entire long-term care spectrum, ranging from the lower acuity assisted living setting, to the high acuity skilled nursing setting.

# Provider

➢ A full-page ad (7" x 10") in *Provider* with an estimated circulation of 50,200.

➢ *Provider* is published monthly and is targeted to administrators, owners, multi-facility CEOs, medical directors, directors of nursing, certified nurse assistants, MD/DD staff and other key long-term staff specialists in facilities throughout the United States. *Provider's* editorial focuses on key areas of industry concern, including: legislative and regulatory policy initiatives, business development and management, facility administration, nursing, marketing and consumer relations, resident care, financing and reimbursement, legal issues, and products and services.

*In re: National Football League Players' Concussion Injury Litigation*

# SENIOR LIVING
# Executive
PUBLISHED BY ALFA TO ADVANCE EXCELLENCE IN SENIOR LIVING

➢ A full-page ad (7" x 10") in *Senior Living Executive* with an estimated circulation of 21,808.

➢ *Senior Living Executive* is published six times per year and is the official publication of the Assisted Living Federation of America.  The magazine reaches mid- to large-size owners and operators of professionally managed assisted living communities.  Written to top-level executives, the magazine offers solutions and strategies aimed at helping readers improve their companies' operational excellence including merger/acquisition pointers, performance management strategies, systems and infrastructure enhancements and services to residents.

-1062-

*In re: National Football League Players' Concussion Injury Litigation*

## PAID MEDIA PLACEMENTS:
## TELEVISION

Television has the ability to reach a wide number of target audience members with an immediate and accessible message.  The combination of audio and visual message delivery increases the message impact.  Viewers can quickly ascertain if the message is important and if so, decide to respond.

For this notice, there will be two television components:

➢ First, the NFL has agreed to make the NFL Network available for television advertisements.  Notice will be aired throughout the day in different program environments to reach the highest number of viewers over a period of three weeks.

➢ Second, television advertisements will be aired across channels and programs targeting Adults 50+.  The Notice Plan calls for notice to be aired throughout the day in different program environments to reach the highest number of viewers.  A combination of broadcast and cable networks will be chosen, including, but not limited to, ABC, CBS, CNN, Headline News, and The Weather Channel.

Delivery Estimates:

➢ KM is requesting that the NFL deliver an estimated 10 Gross Rating Points ("GRPs[2]") against Men 18 years of age and older ("Men 18+") by airing 30-second commercials across all programming/dayparts[3] on the NFL Network.

➢ An estimated 82 television and cable Gross Rating Points ("GRPs") over a total of two weeks generating 84,976,600 gross impressions [4] against Adults 50+.

The television schedule will be allocated as follows:



- ■ Network Daytime (9A-3P) — 30.7%
- ■ Network Evening News (5P-7P) — 34.9%
- ■ Network Prime (8P-11P) — 8.6%
- ■ Cable Daytime (9A-3P) — 4.5%
- ■ Cable Early Fringe (3P-5P) — 6.5%
- ■ Cable Prime (8P-11P) — 14.8%

---

[2] Gross Rating Points (GRPs) represent the sum of all ratings delivered by the media vehicles in a schedule.  A rating is the percentage of households or persons in the target audience who have been exposed to the media vehicles in the schedule.  One GRP equals 1% of a given target population.
[3] Dayparts are time segments into which the broadcast day is divided.  In television, the dayparts are usually daytime (morning and afternoon), early fringe, prime time and late fringe.  Other designations can be used such as early news or late news.
[4] Gross Impressions are the duplicated sum of audiences of all media vehicles containing the notice.

© 2014 KINSELLA MEDIA, LLC

*In re: National Football League Players' Concussion Injury Litigation*

## PAID MEDIA PLACEMENTS:
## NATIONAL RADIO

National radio is bought in the form of network programming.  This programming can be tailored for a specific age group of people based on the typical listeners to a network.  For this Notice Plan, network radio will be purchased primarily to reach African American Settlement Class Members, as well as Retired NFL Football Players.  Radio usage is especially high among African Americans as compared to the general population, as is television usage.[5]

The Radio Spot for this plan will be designed to appeal specifically to Settlement Class Members.  Each 30-second spot will heavily promote the Settlement Website address for Settlement Class Members to obtain more information and register for benefits after the Settlement becomes effective.  The Radio Spot will alert Settlement Class Members to the nature of the litigation.

KM recommends placing the Radio Spot on:

### AMERICAN URBAN RADIO NETWORKS

➢ American Urban Radio Networks ("AURN") is the largest network reaching urban America.  AURN reaches an estimated 20 million listeners each week. Networks include programming such as:  "Russ Par Weekend Show," "Bobby Jones Gospel Countdown," "The Bev Smith Show," and "Dr. Ian Smith," among others.  These radio networks provide additional coverage in markets across the U.S. that have significant African American populations.

---

[5] Target Market News, *Media Audit study shows African Americans more engaged with media,* available at http://www.targetmarketnews.com/storyid07260702.htm.

© 2014 KINSELLA MEDIA, LLC

## PAID MEDIA PLACEMENTS:
## INTERNET ADVERTISING

Like the television portion of the Notice Plan, there are two components to the Internet portion of the Notice Plan. First, the NFL has agreed to provide Internet advertising on NFL.com. Second, KM recommends Internet on additional networks and targeted sites to reach potential Settlement Class Members. Internet advertising will provide potential Settlement Class Members with additional national notice opportunities beyond the broad-reaching print, radio, and television program. Internet advertising delivers an immediate message and allows the viewer of an advertisement to instantly click through to a website for further information.

Delivery of Internet impressions to specific sites and categories within sites are subject to availability at the time KM purchases the media.

### WEBSITE ADVERTISING

KM recommends placing ads on the following targeted websites:

> ➢ CNN.com
> ➢ Weather.com
> ➢ Facebook.com
> ➢ NFL.com

KM recommends placing Internet advertising on the following networks for approximately 30 days:



> ➢ Microsoft Media Network is a premium ad network of top-ranked commercial sites.

**specificmedia**

> ➢ Specific Media is a leading portfolio of websites attracting large and engaged audiences on the web.

**YAHOO!**

> ➢ Yahoo! is a leading Internet brand and a global online network of integrated services providing users with entertainment and other quality content.

*In re: National Football League Players' Concussion Injury Litigation*

## KEYWORD SEARCH ADS

Search engines are among the Internet's most frequently used sites. In order to help search engine users locate the informational website about this case – both those specifically looking for it and those looking for related topics – KM will purchase sponsored links that may appear when searchers enter certain terms.

Keyword search ads will appear on Google (includes Google, AOL, and Ask.com) and Bing (includes Bing/MSN and Yahoo!) search engines. KM will contract with Google AdWords to place Google ads, and with Microsoft Ad Center to place Bing ads. Possible keyword/phrase searches could include:

- ➢ NFL Concussion Class Action
- ➢ NFL Concussion Settlement
- ➢ NFL Concussion Lawsuit
- ➢ NFL Brain Injury

After KM contracts with the search engines for sponsored links of the selected keywords/phrases, a user entering an applicable keyword/phrase may see an ad similar to the sample ad below either in the section above non-sponsored results or in the right-hand column under the Sponsored Sites/Results section:

> **NFL Concussion Settlement**
> Settlement of lawsuit
> benefits retired players & families
> http://www.NFLConcussionSettlement.com

© 2014 KINSELLA MEDIA, LLC

*In re: National Football League Players' Concussion Injury Litigation*

# EFFECTIVENESS OF NOTICE PLAN

The paid media program outlined in this Plan provides Settlement Class Members with multiple exposure opportunities to media vehicles carrying the Notice.

In addition to the paid media, Direct Notice to known Settlement Class Members will increase opportunities to reach the Settlement Class. Also, given the prominence of the NFL and the issues resolved by this Settlement, KM believes that extensive media coverage will result when the Settlement Agreement is filed and made public. This coverage is expected to further increase the reach of the Plan by making unknown Settlement Class Members aware of the Settlement, providing an option to contact the Claims Administrator for more information.

➢ KM estimates that the Direct Notice, in combination with the paid media placements, will reach over 90% of Settlement Class Members.

*In re: National Football League Players' Concussion Injury Litigation*

# NOTICE DESIGN

*In re: National Football League Players' Concussion Injury Litigation*

NOTICE DESIGN:
## LONG-FORM NOTICE

The Long-form Notice is compliant with Rule 23 and consistent with the Federal Judicial Center's "illustrative" class action notices. Specifically, the Long-form Notice clearly and concisely states in plain, easily understood language:

- ➢ The nature of the action;

- ➢ The definition of the settlement class to be finally certified;

- ➢ The class claims, issues, or defenses;

- ➢ That a settlement class member may enter an appearance through an attorney if the member so desires;

- ➢ That the Court will exclude from the settlement class any member who requests exclusion;

- ➢ The time and manner for requesting exclusion; and

- ➢ The binding effect of a class judgment on members under Rule 23 (c)(3).


The Long-form Notice has been designed to draw attention to all sections, and laid out so that complicated information can be more easily digested. The Long-form Notice will prominently feature a toll-free number and website address for Settlement Class Members to obtain more information and to register to receive benefits after the Settlement becomes effective.

*In re: National Football League Players' Concussion Injury Litigation*

NOTICE DESIGN:
## SUMMARY NOTICE

Rule 23(c)(2) of the Federal Rules of Civil Procedure requires notices in 23(b)(3) class actions to be written in "plain, easily understood language."  KM applies the plain language requirement in drafting all notices in federal and state class actions.  The firm maintains a strong commitment to adhering to the plain language requirement, while drawing on its experience and expertise to draft notices that effectively convey the necessary information to Settlement Class Members.

The plain language Summary Notice (Exhibit 5) is designed to alert Settlement Class Members to the litigation by using a bold headline.  This headline will enable Settlement Class Members to quickly determine if they are potentially affected by the litigation.  Plain language text provides important information regarding the subject of the litigation, the Settlement Class definition and the legal rights available to Settlement Class Members. The Summary Notice will include all the substantive information required by Rule 23.

Each advertisement will prominently feature a toll-free number and website for Settlement Class Members to obtain the Long-form Notice and other information.

*In re: National Football League Players' Concussion Injury Litigation*

NOTICE DESIGN:
## RADIO AND TV SPOTS

The Radio and Television Spots will be designed to appeal to Settlement Class Members and attract their attention.  The audio of the Radio Spot and the visuals of the TV Spot will quickly alert listeners and viewers to the subject matter of the Settlement and help them determine whether they may be potential Settlement Class Members.  Both Spots will prominently feature the address of the Settlement Website and toll-free telephone number where Settlement Class Members can obtain more information and register for benefits after the Settlement becomes effective.  Both the Radio Spot and the Television Spot will run for 30 seconds.

© 2014 KINSELLA MEDIA, LLC

*In re: National Football League Players' Concussion Injury Litigation*

NOTICE DESIGN:
# WEBSITE AND INTERNET ADS

An informational interactive website is a critical component of the Notice Plan. A website is a constant information source instantly accessible to millions. In this case, the Settlement Website will capitalize on the Internet's ability to distribute information and provide access to customer service. Internet banner ads and keyword search ads will help direct Settlement Class Members to the Settlement Website.

## WEBSITE DESIGN

Combining clean site design, consistent site navigation cues and search engine optimization, the Settlement Website will provide Settlement Class Members with easy access to the details of the litigation.

➢ **CLEAN DESIGN:** The site will be designed for ease of navigation and comprehension, with user-friendly words and icons. Clearly labeled content will include the Detailed Notice, court documents, and answers to frequently asked questions. A "Contact Us" page will provide a toll-free number for individuals seeking additional information and the address or email of Co-Lead Class Counsel, Class Counsel, and Subclass Counsel.

➢ **ONLINE REGISTRATION:** In an effort to make it even easier for Settlement Class Members to receive information and/or register for benefits after the Settlement becomes effective, the Settlement Website will allow users to request hard copies of materials, and/or register online.

## INTERNET BANNER AD DESIGN

KM will design Internet advertisements to alert Settlement Class Members to the litigation by using a bold headline. The headline will enable Settlement Class Members to determine quickly if they may be affected by the litigation. When users click on the banner advertisement, they will be connected to the informational website that contains complete information about their legal rights.

**-1072-**

*In re: National Football League Players' Concussion Injury Litigation*

## TOLL-FREE TELEPHONE SUPPORT

A toll-free phone information line will be established to service Settlement Class Members calling as a result of seeing the paid media notice or receiving a Long-form Notice in the mail. Live operators will staff the toll-free line call center during business hours. An interactive voice response ("IVR") system will be used to provide answers to frequently asked questions during the hours that the call center will not have live operators. Potential Settlement Class Members will also have the ability to leave their name and telephone number to receive a call back.

*In re: National Football League Players' Concussion Injury Litigation*

# ADDITIONAL OUTREACH OPPORTUNITIES

One important component of the Notice Plan is reaching people who may know Retired NFL Football Players, and asking them to pass along information about the Settlement to those retired players. This may include friends, family members, and potential caregivers of Retired NFL Football Players. KM recommends the following outreach:

➢ **DIRECT MAILING TO REST HOMES/NURSING FACILITIES:** KM will mail a notice to the directors of approximately 60,000 nursing homes, assisted living facilities, rehab facilities. The mailing will include a cover letter and summary notice requesting their assistance in locating Retired NFL Football Players that are in their facilities.

➢ **OUTREACH TO NFL ORGANIZATIONS:** KM will reach out to various NFL organizations to request that they inform their members of the Settlement and assist in locating Retired NFL Football Players whose addresses are unknown. This includes outreach to individual team organizations, alumni groups, and the NFL Player Care Foundation.

© 2014 KINSELLA MEDIA, LLC

Case 2:12-md-02323-AB Document 6073-3 Filed 06/25/14 Page 44 of 86

# Exhibit C-1



## Kinsella Media, LLC

### Relevant Case Experience

***Antitrust***

*Big Valley Milling, Inc. v. Archer Daniels Midland Co.,* No. 65-C2-96-000215 (Minn. Dist. Ct. Renville County) (lysine).

*Carlson v. Abbott Laboratories*, No. 94-CV-002608 (Wis. Cir. Ct. Milwaukee County) (infant formula).

*Comes v. Microsoft Corp.,* No. CL8231 (Iowa Dist. Ct. Polk County)

*Connecticut v. Mylan Laboratories, Inc.,* No. 99-276, MDL No. 1290 (D.D.C.)  (pharmaceutical).

*Conroy v. 3M Corp.*, No. C-00-2810 CW (N.D. Cal.) (invisible tape).

*Copper Antitrust Litigation,* MDL 1303 (W.D. Wis.) (physical copper).

*Cox v. Microsoft Corp.,* No. 105193/00 (N.Y. Sup. Ct. N.Y. County) (software).

*D.C. 37 Health  & Security Plan v. Medi-Span*, No. 07-cv-10988 (D.Mass.); *New England  Carpenters Health Benefits Fund v. First DataBank, Inc.,* No. 1:05-CV-11148 (D. Mass.) (pharmaceutical).

*Ferrell v. Wyeth-Ayerst Laboratories, Ltd.,* No. C-1-01-447 (S.D. Ohio)

*Giral v. Hoffman-LaRoche Ltd.*, C.A. No. 98 CA 7467 (W. Va. Cir. Ct., Kanawha County) (vitamins).

*In re Buspirone Antitrust Litigation*, MDL No. 1413 (S.D.N.Y.) (pharmaceutical).

*In re Cardizem Antitrust Litigation*, 200 F.R.D. 326 (E.D. Mich.) (pharmaceutical).

*In re Compact Disc Minimum Price Antitrust Litigation*, MDL No. 1361 (D. Me.) (compact discs).

*In re Insurance Brokerage Antitrust Litig.*, MDL No. 1663 Civil No. 04-5184 (FSH) (D.N.J.) (insurance).

*In re International Air Transportation Surcharge Antitrust Litigation*, No. M 06-1793, MDL No. 1793 (N.D. Cal.) (airline fuel surcharges).

*In re Monosodium Glutamate Antitrust Litig.,* D-0202-CV-0200306168, D-202-CV-200306168 (N.M. Dist. Ct., Bernalillo County) (MSG).

*In re Motorsports Merchandise Antitrust Litigation,* No. 1:97-CV-2314-TWT (N.D. Ga.) (merchandise).

*In re Nasdaq Market-Makers Antitrust Litigation*, MDL No. 1023 (S.D.N.Y.) (securities).

*In re Pharmaceutical Industry Average Wholesale Price Litigation*, No. CA:01-CV-12257, MDL No. 1456 (D. Mass.) (pharmaceutical).

*In re Toys "R" Us Antitrust Litigation*, No. CV-97-5750, MDL No. 1211, (E.D.N.Y.) (toys and other products).

*In re Western States Wholesale Natural Gas Antitrust Litigation*, No. CV-03-1431, MDL No. 1566, (D. Nev) (natural gas).

*Kelley Supply, Inc. v. Eastman Chemical Co.,* No. 99CV001528 (Wis. Cir. Ct., Dane County) (Sorbates).

*Ohio vs. Bristol-Myers Squibb, Co.,* No. 1:02-cv-01080 (D.D.C.) (pharmaceutical).

*Raz v. Archer Daniels Midland Co.,* Inc., No. 96-CV-009729 (Wis. Cir. Ct. Milwaukee County) (citric acid).

**Consumer and Product Liability**

*Azizian v. Federated Department Stores, Inc.,* No. 4:03 CV-03359 (N.D. Cal.) (cosmetics).

*Baird v. Thomson Consumer Elecs.,* No. 00-L-000761 (Ill. Cir. Ct., Madison County) (television).

*Bonilla v. Trebol Motors Corp.,* No. 92-1795 (D.P.R.) (automobiles).

*Burch v. American Home Products Corp.,* No. 97-C-204 (1-11) (W. Va. Cir. Ct., Brooke County) (Fen Phen).

*Cosby v. Masonite Corp., No.* CV-97-3408 (Ala. Cir. Ct. Mobile County) (siding product); *Quin v. Masonite Corp.,* No. CV-97-3313 (Ala. Cir. Ct. Mobile County) (roofing product).

*Cox v. Shell Oil Co.,* No. 18,844 (Tenn. Ch. Ct. Obion County) (polybutylene pipe).

 2120 L STREET NW, SUITE 860    WASHINGTON, DC 20037    T 202.686.4111    F 202.293.6961    KINSELLAMEDIA.COM

*Daniel v. AON Corp.,* No. 99 CH 11893 (Ill. Cir. Ct. Cook County) (insurance).

*Fettke v. McDonald's Corp.,* No. 044109 (Cal. Super Ct. Marin County) (trans fatty acids).

*Florida v. Nine West Group, Inc.,* No. 00 CIV 1707 (S.D.N.Y.) (shoes).

*Foothill/De Anza Community College Dist. v. Northwest Pipe Co.,* No. 00-20749-JF(N.D. Cal.) (fire sprinklers).

*Galanti v. The Goodyear Tire & Rubber Company,* No. 03-209 (D.N.J.) (radiant heating) (2002).

*Garza v. Sporting Goods Properties, Inc.,* No. SA 93-CA-1082 (W.D. Tex.) (gun ammunition).

*Government Employees Hospital Association v. Serono International,* No. 5-11935 (D. Mass.), and *Francis v. Serono Laboratories, Inc.,* No. 6-10613 (D. Mass.).

*Hoorman v. GlaxoSmithKline,* No. 04-L-715 (Ill. Cir. Ct., Madison Cty.) (Paxil pharmaceutical*).*

*In re Louisiana Pacific Corp. Inner Seal OSB Trade Practices Litigation,* MDL No. 1114 (N.D. Cal.) (oriented strand board).

*In re Tri-State Crematory Litig,* MDL 1467 (N.D. Ga.) (improper burial).

*Lebrilla v. Farmers Group Inc.,* No. 00-CC-07185 (Cal. Super. Ct., Orange County) (auto insurance).

*Lovelis v. Titflex,* No. 04-211 (Ak. Cir. Ct., Clark County) (gas transmission pipe).

*Naef v. Masonite Corp.,* No. CV-94-4033 (Ala. Cir. Ct. Mobile County) (hardboard siding product).

*Peterson v. BASF Corp.,* No. C2-97-295 (D. Minn.) (herbicide).

*Posey v. Dryvit Sys., Inc.* No. 17,715-IV (Tenn. Cir. Ct., Jefferson County) (EIFS stucco).

*Reiff v. Epson America, Inc. and Latham v. Epson Am., Inc.,* J.C.C.P. No. 4347 (Cal. Super. Ct., L.A. County) (ink jet printers).

*Richison v. Weyerhaeuser Company Limited,* No. 05532 (Cal. Super. Ct. San Joaquin County) (roofing product).

*Ruff v. Parex, Inc.,* No. 96-CvS 0059 (N.C. Super. Ct. Hanover County) (synthetic stucco product).



*Shah v. Re-Con Building Products, Inc.,* No. C99-02919 (Cal. Super. Ct. Contra Costa County) (roofing product).

*Shields vs. Bridgestone/Firestone, Inc., Bridgestone Corp.,* No. E-167.637 (D. Tex.) (tires).

*Smith v. Behr Process Corp.,* No. 98-2-00635 (Wash. Super. Ct., Gray Harbor County) (stain product).

*Weiner v. Cal-Shake, Inc., J.*C.C.P. No. 4208 (Cal. Super. Ct., Contra Costa County) (roofing product).

*Wholesale Elec. Antitrust Cases I & II,* J.C.C.P. Nos. 4204 & 4205 (Cal. Super. Ct., San Diego County) (energy).

*Woosley v. State of California,* No. CA 000499 (Cal. Super. Ct., Los Angeles County) (automobiles).

### Mass Tort

*Ahearn v. Fibreboard Corp.,* No. 6:93cv526 (E.D. Tex); *Continental Casualty Co. v. Rudd*, No. 6:94cv458 (E.D. Tex) (asbestos injury).

*Backstrom v. The Methodist Hospital,* No. H.-94-1877 (S.D. Tex.) (TMJ injury).

*Engle v. RJ Reynolds Tobacco Co.,* No. 94-08273 (Fla. Cir. Ct. Dade County) (tobacco injury).

*Georgine v. Amchem, Inc.,* No. 93-CV-0215 (E.D. Pa.) (asbestos injury).

### Bankruptcies

*In re Armstrong World Industries, Inc.,* No. 00-4471 (Bankr. D. Del.).

*In re Dow Corning,* No. 95-20512 (Bankr. E.D. Mich.) (breast implants).

*In re Johns-Manville Corp.,* 68 B.R. 618, 626 (Bankr. S.D.N.Y.) (asbestos).

*In re Kaiser Aluminum Corp.,* No. 02-10429 (JFK) (D. Del).

*In re Owens Corning,* No. 00-03837 (Bankr. D. Del.).

*In re Raytech Corp.,* No. 5-89-00293 (Bankr. D. Conn.) (asbestos).

*In re The Celotex Corp.,* Nos. 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.) (asbestos).



*In re U.S. Brass Corp.,* No.94-40823S (Bankr. E.D. Tex.) (polybutylene).

*In re USG Corp.,* Nos. 01-2094 - 01-2104 (Bankr. D. Del.).

*In re W.R. Grace & Co.,* No. 01-01139 (Bankr. D. Del.).

### Insurance

*McNeil v. American General Life and Accident Insurance Co.,* No. 8-99-1157 (M.D. Tenn.) (insurance).

*Nealy v. Woodmen of the World Life Insurance Co.,* No. 3:93 CV-536 (S.D. Miss.) (insurance).

### Holocaust Victims Reparations

*In re Holocaust Victim Assets Litigation,* Nos. CV 96-4849, CV-5161 and CV 97-461 (E.D.N.Y.) (Holocaust).

The International Commission on Holocaust Era Insurance Claims Outreach

### Pension Benefits

*Collins v. Pension Benefit Guarantee Corp.,* No. 88-3406 (D.D.C.); Page v. Pension Benefit Guarantee Corp., No. 89-2997 (D.D.C.).

*Forbush v. J. C. Penney Co., Inc.,* Nos. 3:90-2719 and 3:92-0109 (N.D. Tex.).

### International

*Ahearn v. Fiberboard Corporation,* No. 6:93cv526 (E.D. Tex) and *Continental Casualty Co. v. Rudd,* No. 6:94cv458 (E.D. Tex.) (asbestos injury) (1993).

*Galanti v. The Goodyear Tire & Rubber Company,* No. 03-209 (D.N.J.) (radiant heating) (2002).

*In re Holocaust Victims Assets Litigation,* No. CV 96-4849 (ERK) (MDG) (Consolidated with CV-5161 and CV 97461) (E.D.N.Y.) (2003).

*In re Owens Corning, Chapter 11,* No. 00-03837 (MFW) (Bankr. D. Del.) (2006).

*In re The Celotex Corporation, Chapter 11,* Nos. 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.) (1996).

 2120 L STREET NW, SUITE 860      WASHINGTON, DC 20037      T 202.686.4111      F 202.293.6961      KINSELLAMEDIA.COM

*In re USG Corporation, Chapter 11,* Nos. 01-2094 (RJN) through 01-2104(RJN) (Bankr. D. Del.) (2006).

*In re W.R. Grace & Co., Chapter 11,* No. 01-01139 (Bankr. D. Del.) (bankruptcy) (2001).

*In re Western Union Money Transfer Litigation,* No. 01 0335 (CPS) (VVP) (E.D.N.Y.) (wire transactions) (2004).

International Committee on Holocaust Era Insurance Claims (1999).


### Product Recall

Central Sprinkler Voluntary Omega Sprinkler Replacement Program

*Hart v. Central Sprinkler Corp.,* No. BC17627 (Cal. Super. Ct. Los Angeles County) & *County of Santa Clara v. Central Sprinkler Corp., No.* CV 17710119 (Cal. Super. Ct. Santa Clara County)


### Telecom

*Bidner, et al. v. LCI International Telecom Corp d/b/a Qwest Communications.*

*Community Health Association v. Lucent Technologies, Inc.,* No. 99-C-237, (W.Va. Cir. Ct., Kanawha County).

*Cundiff et al. v. Verizon California, Inc.,* No. 237806 (Cal. Super Ct., Los Angeles County).

*Kushner v. AT&T Corporation,* No. GIC 795315 (Cal. Super. Ct., San Diego County).

*Rish Enterprise v. Verizon New Jersey,* No. MID-L-8946-02 (N.J. Super. Ct.).

*Sonnier, et. al. v. Radiofone, Inc.,* No. 44-844, (L.A. Jud. Dist. Ct., Plaquemines Parish County).

*State of Louisiana v. Sprint Communications Company L.P.,* No. 26,334 (Jud. Dis. Ct., Parish of West Baton Rouge) and *State of Louisiana v. WilTel, Inc.,* No. 26,304 (Jud. Dis. Ct., Parish of West Baton Rouge).


### Other

*Cobell v. Salazar,* No. 96-01285 (D.D.C.) (Individual Indian Money accounts).

*Dryer v. National Football League,* No. 9-02182 (D. Minn.) (publicity rights).



*In re Black Farmers Discrimination Litigation*, No. 08-511 (D.D.C.) (African American farm loans).

*Keepseagle v. Vilsack*, No. 99-03119 (D.D.C.) (Native American farm loans).



# Exhibit C-2



## Kinsella Media, LLC

### Judicial Comments

*Ahearn v. Fibreboard Corp.*, No. 6:93 cv526 (E.D. Tex.); *Continental Casualty Co. v. Rudd, No.*
6:94cv458 (E.D. Tex.).
In approving the notice plan for implementation in the Ahearn and Rudd class actions in 1994, Judge
Parker stated, "I have reviewed the plan of dissemination, and I have compared them to my knowledge
at least of similar cases, the 0notices that Judge Weinstein has worked with [Agent Orange] and Judge
Pointer [Silicon Gel Breast Implants], and it appears to be clearly superior." - Chief Judge Robert M.
Parker (1994)

*Azizian v. Federated Department Stores, Inc.,* No. 3:03 CV-03359  (N.D. Cal.).
"The notice was reasonable and the best notice practicable under the circumstances; was due, adequate
and sufficient notice to all class members; and complied fully with the laws of the United States and of
the Federal Rules for Civil Procedure, due process and any other applicable rules of court." - Hon.
Sandra Brown Armstrong  (2004)

*Cobell v. Salazar,* No. 1:96CV01285 (D.D.C.)
"I have never seen, and I handled the largest price-fixing case in the history of the United States, the In
re: Vitamins case, notice to the extent sent out in this case, . . . .   I allowed them to provide notice in
every possible way, including personally going out and visiting all of the affected tribal areas.  It is just
not a letter from Washington. It is a tremendous effort that was undergone, both by the plaintiffs
principally and some by the government, to not only give notice but to explain what happened . . . .
There is just no question that this was covered in all of the local papers constantly. It was covered in all
of the local advertising outlets. It was hard to miss.  As a side note, I go to Montana two or three times a
year, and you could not miss...."

"I have already found that there is extensive and extraordinary notice here. We even had a notice expert
retained in how to do it properly." -  Hon. Thomas F. Hogan (June 2011)

"Notice met and in many cases exceeded the requirements of F.R.C.P. 23(c)(2) for classes certified
under  F.R.C.P.  23(b)(1),  (b)(2)  and  (b)(3).   The  best  notice  practicable  has  been  provided  class
members, including individual notice where members could be identified through reasonable effort.
The contents of that notice are stated in plain, easily understood language and satisfy all requirements
of F.R.C.P. 23(c)(2)(B)." - Hon. Thomas F. Hogan (July 2011)

*Collins v. Pension Benefit Guarantee Corp., No. 88-3406 (D.D.C.).*
*"The notice provided was the best notice practicable under the circumstances.  Indeed, the record shows that*
*the notice given was consistent with the highest standards of compliance with Rule 23(e)." (1996)*
*Cox v. Microsoft Corp., No. 105193/00 (N.Y. Sup. Ct. N.Y. County).*

2120 L STREET NW, SUITE 860          WASHINGTON, DC 20037          T 202.686.4111          F 202.293.6961          KINSELLAMEDIA.COM

"The court finds that the combination of individual mailing, e-mail, website and publication notice in this action is the most effective and best notice practicable under all the circumstances, constitutes due, adequate and reasonable notice to all Class members and otherwise satisfies the requirements of CPLR 904, 908 and other applicable rules. The Settlement meets the due process requirement for class actions by providing Class members an opportunity either to be heard and participate in the litigation or to remove themselves from the Class." - Hon. Karla Moskowitz  (2006)

*Cox v. Shell Oil Co., No. 95-CV-2 (Tenn. Ch. Ct. Obion County)*
In the order approving the settlement of the polybutylene pipe class action, Judge Maloan stated, "The Court finds the notice program is excellent. As specified in the findings below, the evidence supports the conclusion that the notice program is one of the most comprehensive class notice campaigns ever undertaken." (1995)

*Dick v. Sprint*, No. 12-cv-00443 (W.D. Ky.)
"In sum, the notice in the case at bar is adequate under Fed. R. Civ. P. 23 and the standards of due process. It was directed in reasonable manner to all prospective class members who would be bound by the Settlement Agreement. Moreover, it fairly apprised the prospective class members of the terms of the proposed Settlement Agreement and their options with respect to their decision whether to join the class." - Hon. Thomas B. Russell  (2014)

*Foothill/De Anza Community College District v. Northwest Pipe Co.,* No. CV-00-20749 (N.D. Cal.)
"The Court finds that the settling parties undertook a thorough and extensive notice campaign designed by Kinsella/Novak Communications, Ltd., a nationally-recognized expert in this specialized field. The Court finds and concludes that the Notice Program as designed and implemented provides the best practicable notice to the Class, and satisfied requirements of due process." –  Hon. Jeremy Fogel  (2004)

*Galanti v. The Goodyear Tire & Rubber Co.,* No. 03-209 (D.N.J.)
"The published notice, direct notice and Internet posting constituted the best practicable notice of the Fairness Hearing, the proposed Amended Agreement, Class Counsels' application for fees, expenses and costs, and other matters set forth in the Class Notice and the Summary Notice. The notice constituted valid, due and sufficient notice to all members of the Settlement Classes, and complied fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, the laws of New Jersey and any other applicable law."- Hon. Stanley R. Chesler  (2004)

*Georgine v. Amchem,* 158 F.R.D. 314, 326 (E.D. Pa.).
Judge Reed explained that the notice program developed by Kinsella "goes beyond that provided in [previous cases]" and "the efforts here are more than adequate to meet the requirements of Rule 23(c)(2)." (1993)

*Higgins v. Archer-Daniels Midland Co., Second Judicial District Court, County of Bernalillo* C-202-CV-200306168 (N.M. 2d Jud. Dist. Bernalillo County)
"The Court finds that the form and method of notice given to the Settlement Class, including both mailed notice to persons and firms for whom such notice was practical and extensive notice by



publication through multiple national and specialized publications, complied with the requirements of Rule 1-023 NMRA 2006, satisfied the requirements of due process, was the best notice practicable under the circumstances, and constituted due and sufficient notice of the Settlement Agreements and their Final Approval Hearing, and other matters referred to in the Notice.  The notice given to the Settlement Class was reasonably calculated under the circumstances to inform them of the pendency of the actions involved in this case, of all material elements of the proposed Settlements, and of their opportunity to exclude themselves from, object to, or comment on the Settlements and to appear at the Final Approval Hearing." - Hon. William F. Lang  (2006)

*In re Comcast Corp. Peer-to-Peer (P2P) Transmission Contract Litig.,* MDL 1992, No. 2:08-MD-1992 (E.D. Pa.)
"The notice program here was extensive and wide reaching."

"The Court finds that the form, substance, manner and timing of the notice to the Settlement Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement constituted the best notice practicable under the circumstances and satisfied the requirements of due process, Federal Rules of Civil Procedure, and any other applicable law or requirement." - Hon. Legrome D. Davis (2010)

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,* MDL No. 1361 (D. Me.).

In approving the notice plan for implementation in the Compact Disc Minimum Advertised Price Antitrust Litigation, Judge D. Brock Hornby stated, "(the plan) provided the best practicable notice under the circumstances and complied with the requirements of both 15 U.S.C. 15c(b) (1) . . . the notice distribution was excellently designed, reasonably calculated to reach potential class members, and ultimately highly successful in doing so." - Hon. D. Brock Hornby  (2002/2003)

*In re Flonase Antitrust Litig.,* No. 08-3301 (E.D. Pa.)
"The notice provided was the best notice practicable under the circumstances and included individual notice to those members of the Settlement Class whom the parties were able to identify through reasonable efforts. The Court finds that Notice was also given by publication in multiple publications as set forth in the Declarations of Daniel Coggeshall and Katherine Kinsella dated May 1, 2013. Such notice fully complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law."- Hon. Anita B. Brody (2013)

*In re International Air Transportation Surcharge Antitrust Litig.,* No. M 06-1793, MDL No. 1793 (N.D. Cal.).

In approving the notice plan in this litigation that involved a proposed settlement of more than $200 million for U.S. and U.K. class members, U.S. District Judge Charles Breyer repeatedly praised KNC: "I think the notice is remarkable in this case. . . . This is brilliant.  This is the best notice I've seen since I've been on the bench. . . . Turning back to the settlement, again I want to applaud the parties for the notice.  I mean it's amazing.  You know, it really is good.  And I don't know where this person practices, I don't even know that she's a lawyer.  But she really did a good job on this announcement, this notice.



So thank you very much. . . . And I once again want to express my sincere appreciation of the notice. I mean, I was just extraordinarily impressed. Extraordinarily impressed." - Hon. Charles Breyer (2008)

*In re Jamster Marketing Litig.*, MDL 1751, No. 05-cv-0819
"Based on the Motion for Final Approval, the Court finds that the distribution of the Notice and Claim Form were materially implemented to all Class Members in accordance with Federal Rule of Civil Procedure 23(c)(2)(B), with the terms of the Settlement Agreement and the Preliminary Approval Order." - Hon. Jeffrey T. Miller (2010)

*In re Lawn Mower Engine Horsepower Marketing and Sales Litig.*, No. 2:08-md-01999 (E.D. Wis.)
"The form, content and manner of notice disseminated to the Class was the best notice practicable under the circumstances, included individual notice to all members of the Class identified through reasonable effort, and constituted due and sufficient notice of the proposed settlement, Settlement Hearing, and related matters. The Notice Plan complied with the Order of Preliminary Approval, the requirements of Fed. R. Civ. P. 23(c) and (e), and applicable standards of due process. Appropriate proof of the mailing of the Postcard Notice and the publication of the Summary Notice has been filed with the Court." - Hon. Lynn Aderman (2010)

*In re M3Power Razor System Marketing & Sales*, No. 05-11177, MDL No. 1704 (D. Mass.)
"The form, content, and method of dissemination of the notice give to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Amended Settlement Agreement, and those proceedings to all Persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process." - Hon. Douglas Woodlock (2011)

*In re Municipal Derivatives Antitrust Litig.*, No. 08 Civ. 2516, MDL No. 1950 (S.D.N.Y.)
"This notice program fully complied with Fed. R. Civ. P. 23 and the requirements of due process. It provided due and adequate notice to the Class." - Hon. Victor Marrero (2011)

*In re Pre-filled Propane Tank Marketing and Sales Practices Litig.*, MDL No. 2086, No. 09-2086 (W.D. Mo.)
"Counsel verified that the mailing, publication, and affixed notices conformed to the preliminary approval Order. The Court finds that the notice program fully complied with Rule 23 of the Federal Rule of Civil Procedure and the requirements of due process, providing to the Class the best notice practicable under the circumstances." - Hon. Gary A. Fenner (2010)

*In re The Celotex Corp.*, Nos. 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.).
"...all counsel should be complimented on the fact that they have gone to every possible conceivable method of giving notice from putting it on TV and advertising it in papers..... the record should also reflect the Court's appreciation to Ms. Kinsella for all the work she's done, not only in pure noticing, but ensuring that what noticing we did was done correctly and professionally." - Hon. Thomas E. Baynes, Jr.



*In re Western States Wholesale Natural Gas Antitrust Litig.,* No. CV-03-1431, MDL No. 1566, (D. Nev) (natural gas).
"This notice program fully complied with Federal Rule of Civil Procedure 23 and the requirements of due process. It provided to the MDL Class the best notice practicable under the circumstances." - Hon. Philip M. Pro (2007*)*

*Johns-Manville Corp.,* 68 B.R. 618, 626 (Bankr. S.D.N.Y. 1986), aff'd, 78 B.R. 407 (S.D.N.Y. 1987), aff'd sub nom. *Kane v. Johns-Manville Corp.* 843 F.2d. 636 (2d Cir. 1988).
In approving the notification plan in the Johns-Manville Bankruptcy Reorganization, the court referred to it as "an extensive campaign designed to provide the maximum amount of publicity ... that was reasonable to expect of man and media." - Hon. Burton Lifland (1996/1998)

*Keepseagle v. Vilsack,* No. 99–3119 (D.D.C.)
"I'm not going to review in detail the exhaustive notice plan created and implemented by Plaintiffs' counsel at this time. For those interested, I invite you to examine the several motions on the docket relating to notice with affidavits from Kinsella Media, who class counsel have hired as Notice Administrators." - Hon. Emmet G. Sullivan (2011)

"In my view, the notice program was excellent and it persuades the Court that the parties worked extremely hard to notify the entire class about the settlement so that as many class members as possible can obtain monetary and other relief under the settlement." - Hon. Emmet G. Sullivan (2011)

*Lovelis v. Titeflex Corp.,* No. CIV-2004-211 (Ark. 9th Cir. Ct. Clark Co.)
"Accordingly, the Notice as disseminated is finally approved as fair, reasonable, and adequate notice under the circumstances. The Court finds and concludes that due and adequate notice of the pendency of this Action, the Stipulation, and the Final Settlement Hearing has been provided to members of the Settlement Class, and the Court further finds and concludes that the Notice campaign described in the Preliminary Approval Order and completed by the Parties complied fully with the requirements of Arkansas Rule of Civil Procedure 23 and the requirements of due process under the Arkansas and United States Constitutions. The Court further finds that the Notice campaign undertaken concisely and clearly states in plain, easily understood language:

    (a.)    the nature of the action;
    (b.)    the definition of the class certified;
    (c.)    the class claims, issues or defenses;
    (d.)    that a Class Member may enter an appearance and participate in person or through counsel if the member so desires;
    (e.)    that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and
    (f.)    the binding effect of the Final Order and Judgment on Class Members."
Hon. John A. Thomas (2007)

*Naef v. Masonite Corp.,* No. CV-94-4033 (Ala. Cir. Ct. Mobile County)
"In November, 1997, the Court approved a massive Notice Program to apprise class members of the class action Settlement, including the individually mailed, notices, publication notice and notification



by way of other avenues nationally and locally. This Notice Program was designed by recognized experts, approved by the mediator and the Court, and implemented diligently by the parties, at defendants' cost. It provided the best notice practicable to the Class, comports with due process, and was clearly adequate under Alabama Rule of Civil Procedure 23(e), the United States Constitution, and other applicable law." - Hon. Robert G. Kendall (1997)

*Yarrington v. Solvay Pharmaceuticals, Inc.,* No. 09-CV-2261 (D. Minn.)
"Kinsella Media, LLC designed a comprehensive program for providing notice to the Settlement Class, which was approved by the Court on September 18, 2009. It was fully implemented in accordance with the Court's Order." - Hon. Richard H. Kyle (2010)



# Exhibit C-3

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

# NFL Concussion Settlement

### All Valid Claims of Retired NFL Football Players to be Paid in Full for 65 Years

### Monetary Awards, Baseline Medical Exams and Other Benefits Provided

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- The National Football League ("NFL") and NFL Properties LLC (collectively, "NFL Parties") have agreed to a Settlement of a class action lawsuit seeking medical monitoring and compensation for brain injuries allegedly caused by head impacts experienced in NFL football. The NFL Parties deny that they did anything wrong.

- The Settlement Class includes all retired players of the NFL, the American Football League ("AFL") that merged with the NFL, the World League of American Football, NFL Europe League, and NFL Europa League, as well as immediate family members of retired players and legal representatives of incapacitated, incompetent or deceased retired players.

- The Settlement will provide eligible retired players with:

  - Baseline neuropsychological and neurological exams to determine if retired players are: a) currently suffering from any neurocognitive impairment, including impairment serious enough for compensation, and b) eligible for additional testing and/or treatment ($75 million);

  - Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Parkinson's Disease, Alzheimer's Disease, early and moderate Dementia and certain cases of chronic traumatic encephalopathy (CTE) (a neuropathological finding) diagnosed after death. The maximum monetary awards range from $1.5 million to $5 million depending on the diagnosis. There is no cap on the amount of funds available to pay these Monetary Awards and all valid claims will be paid in full for 65 years; and

  - Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million).

- Individuals who represent incapacitated, incompetent or deceased retired players, or family members who meet certain criteria may also file claims for monetary awards (*see* Question 6).

- To get money, proof that injuries were caused by playing NFL football is not required.

- **Settlement Class Members will need to register to get benefits. Settlement Class Members may sign up at the website for additional information about the Settlement and updates on the registration process.**

- Your legal rights are affected even if you do nothing. Please read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **STAY IN THE SETTLEMENT CLASS** | You do not need to do anything to be included in the Settlement Class. However, once the Court approves the Settlement, you will be bound by the terms and releases contained in the Settlement. There will be later notice to explain when and how to register for Settlement benefits (*see* Question 26). |
| **ASK TO BE EXCLUDED** | You will get no benefits. This is the only option that allows you to participate in any other lawsuit against the NFL Parties about the claims in this case (*see* Question 30). |

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                              Page 1

| **OBJECT** | Write to the Court if you do not like the Settlement (*see* Question 35). |
| --- | --- |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.

- **This Notice is only a summary of the Settlement Agreement and your rights.  You are encouraged to carefully review the complete Settlement Agreement at www.NFLConcussionSettlement.com.**

| **What This Notice Contains** |
| --- |

## CHAPTER 1: INTRODUCTION

**BASIC INFORMATION**………………………………………………………………….**Page 5**
1.   Why is this Notice being provided?
2.   What is the litigation about?
3.   What is a class action?
4.   Why is there a Settlement?
5.   What are the benefits of the Settlement?

**WHO IS PART OF THE SETTLEMENT?** ……………………………………………….**Page 7**
6.   Who is included in the Settlement Class?
7.   What players are not included in the Settlement Class?
8.   What if I am not sure whether I am included in the Settlement Class?
9.   What are the different levels of neurocognitive impairment?
10.  Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

## CHAPTER 2: SETTLEMENT BENEFITS

**THE BASELINE ASSESSMENT PROGRAM**………………………………………….....**Page 9**
11.  What is the Baseline Assessment Program ("BAP")?
12.  Why should a retired player get a BAP baseline examination?
13.  How does a retired player schedule a baseline assessment examination and where will it be done?

**MONETARY AWARDS**……………………………………………………….……... **Page 10**
14.  What diagnoses qualify for monetary awards?
15.  Do I need to prove that playing professional football caused the retired player's Qualifying Diagnosis?
16.  How much money will I receive?
17.  How does the age of the retired player at the time of first diagnosis affect a monetary award?
18.  How does the number of seasons a retired player played affect a monetary award?
19.  How do prior strokes or brain injuries of a retired player affect a monetary award?
20.  How is a retired player's monetary award affected if he does not participate in the BAP program?
21.  Can I receive a monetary award even though the retired player is dead?
22.  Will this Settlement affect a retired player's participation in NFL or NFLPA related benefits programs?
23.  Will this Settlement prevent retired players from bringing workers' compensation claims?

**EDUCATION FUND**………………………………………………………………**Page 14**
24.  What types of education programs are supported by the Settlement?

## CHAPTER 3: YOUR RIGHTS

**REMAINING IN THE SETTLEMENT**……………………………………………….**Page 15**
25.  What am I giving up to stay in the Settlement Class?

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                                          Page 3

**-1093-**

**HOW TO GET BENEFITS**……………………………………………………………………...**Page 15**
26.    How do I get Settlement benefits?
27.    Is there a time limit for Retired NFL Football Players and Representative Claimants to file claims for monetary awards?
28.    Can I re-apply for compensation if my claim is denied?
29.    Can I appeal the determination of my monetary award claim?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**……………………………………**Page 16**
30.    How do I get out of the Settlement?
31.    If I do not exclude myself, can I sue the NFL Parties for the same thing later?
32.    If I exclude myself, can I still get benefits from this Settlement?

**THE LAWYERS REPRESENTING YOU**……………………………………………………**Page 17**
33.    Do I have a lawyer in the case?
34.    How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**………………………………………………………...**Page 18**
35.    How do I tell the Court if I do not like the Settlement?
36.    What is the difference between objecting to the Settlement and excluding myself?

**THE COURT'S FAIRNESS HEARING**……………………………………………………**Page 19**
37.    When and where will the Court hold a Fairness Hearing concerning the Settlement?
38.    Do I have to attend the hearing?
39.    May I speak at the hearing?

**GETTING MORE INFORMATION**……………………………………………………………**Page 19**
40.    How do I get more information?

# CHAPTER 1:  INTRODUCTION

## BASIC INFORMATION

### 1.  Why is this Notice being provided?

The Court in charge of this case authorized this Notice because you have a right to know about the proposed Settlement of this lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement.  This Notice summarizes the Settlement and explains your legal rights and options.

Judge Anita B. Brody of the United States District Court for the Eastern District of Pennsylvania is overseeing this case.  The case is known as *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323.  The people who sued are called the "Plaintiffs."  The National Football League and NFL Properties LLC are called the "NFL Defendants."

The Settlement may affect your rights if you are:  (a) a retired player of the NFL, AFL, World League of American Football, NFL Europe League, or NFL Europa League, (b) an authorized representative of a deceased or legally incapacitated or incompetent retired player of those leagues, or (c) an individual with a close legal relationship with a retired player of those leagues, such as a spouse, parent or child.

### 2.  What is the litigation about?

The Plaintiffs claim that retired players experienced head trauma during their NFL football playing careers that resulted in brain injuries, which have caused or may cause them long-term neurological problems.  The Plaintiffs accuse the NFL Parties of being aware of the evidence and the risks associated with repetitive traumatic brain injuries but failing to warn and protect the players against the long-term risks, and ignoring and concealing this information from the players.  The NFL Parties deny the claims in the litigation.

### 3.  What is a class action?

In a class action, one or more people, the named plaintiffs (who are also called proposed "class representatives") sue on behalf of themselves and other people with similar claims.  All of these people together are the proposed "class" or "class members."  When a class action is settled, one court resolves the issues for all class members (in the settlement context, "settlement class members"), except for those who exclude themselves from the settlement.  In this case, the proposed class representatives are Kevin Turner and Shawn Wooden.  Excluding yourself means that you will not receive any benefits from the Settlement.  The process for excluding yourself is described in Question 30 of this Notice.

### 4.  Why is there a Settlement?

After extensive settlement negotiations mediated by retired United States District Court Judge Layn Phillips, and further settlement negotiations under the supervision of the Court-appointed Special Master, Perry Golkin, the Plaintiffs and the NFL Parties agreed to the Settlement.

A settlement is an agreement between a plaintiff and a defendant to resolve a lawsuit. Settlements conclude litigation without the court or a jury ruling in favor of the plaintiff or the defendant. A settlement allows the parties to avoid the cost and risk of a trial, as well as the delays of litigation.

If the Court approves this Settlement, the claims of all persons affected (*see* Question 6) and the litigation between these persons and the NFL Parties are over. The persons affected by the Settlement are eligible for the benefits summarized in this Notice and the NFL Parties will no longer be legally responsible to defend against the claims made in this litigation.

The Court has not and will not decide in favor of the retired players or the other persons affected by the Settlement or the NFL Parties, and by reviewing this Settlement the Court is not making and will not make any findings that any law was broken or that the NFL Parties did anything wrong.

The proposed Class Representatives and their lawyers ("Co-Lead Class Counsel," "Class Counsel," and "Subclass Counsel," *see* Question 33) believe that the proposed Settlement is best for everyone who is affected. The factors that Co-Lead Class Counsel, Class Counsel, and Subclass Counsel considered included the uncertainty and delay associated with continued litigation, a trial and appeals, and the uncertainty of particular legal issues that are yet to be determined by the Court. Co-Lead Class Counsel, Class Counsel and Subclass Counsel balanced these and other substantial risks in determining that the Settlement is fair, reasonable and adequate in light of all circumstances and in the best interests of the Settlement Class Members.

The Settlement Agreement is available at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling 1-800-000-0000.

| 5. What are the benefits of the Settlement? |
| --- |

Under the Settlement, the NFL Parties will pay to fund:

- Baseline neuropsychological and neurological examinations for eligible retired players, and additional medical testing, counseling and/or treatment if they are diagnosed with moderate cognitive impairment during the baseline examinations (up to $75 million, "Baseline Assessment Program") (*see* Questions 11-13);

- Monetary awards for diagnoses of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) and Death with CTE prior to [Date of Preliminary Approval Order] (*see* Questions 14-21); **All valid claims under the Settlement, without limitation, will be paid in full throughout the 65-year life of the Settlement (the "Monetary Award Fund")**; and

- Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million) (*see* Question 24).

In addition, the NFL Parties will pay the cost of notifying the Settlement Class. Administrative costs and expenses will be paid out of the Monetary Award Fund. The Baseline Assessment Program costs and expenses will be paid out of the Baseline Assessment Program Fund.

The details of the Settlement benefits are in the Settlement Agreement, which is available at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling 1-800-000-0000.

**Note:** The Baseline Assessment Program and Monetary Award Fund are completely independent of the NFL Parties and any benefit programs that have been created between the NFL and the NFL Players Association. The NFL Parties are not involved in determining the validity of claims.

## WHO IS PART OF THE SETTLEMENT?

You need to decide whether you are included in the Settlement.

| 6. Who is included in the Settlement Class? |
|---|

This Settlement Class includes three types of people:

Retired NFL Football Players:  Prior to [Date of Preliminary Approval Order], all living NFL Football players who (1) have retired, formally or informally, from playing professional football with the NFL or any Member Club, including AFL, World League of American Football, NFL Europe League, and NFL Europa League players, or (2) were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and no longer are under contract to a Member Club and are not seeking active employment as a player with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club.

Representative Claimants:  An authorized representative, ordered by a court or other official of competent jurisdiction under applicable state law, of a deceased or legally incapacitated or incompetent Retired NFL Football Player.

Derivative Claimants:  A spouse, parent, dependent child, or any other person who properly under applicable state law asserts the right to sue independently or derivatively by reason of his or her relationship with a living or deceased Retired NFL Football Player.  (For example, a spouse asserting the right to sue due to the injury of a husband who is a Retired NFL Football Player.)

The Settlement recognizes two separate groups ("Subclasses") of Settlement Class Members based on the Retired NFL Football Player's injury status as of [Date of Preliminary Approval Order]:

- Subclass 1 includes: Retired NFL Football Players who were not diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE prior to [Date of Preliminary Approval Order], and their Representative Claimants and Derivative Claimants.

- Subclass 2 includes:

  o Retired NFL Football Players who were diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to [Date of Preliminary Approval Order], and their Representative Claimants and Derivative Claimants; and

QUESTIONS?  CALL **1-800-000-0000** OR VISIT **WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                                                          Page 7

-1097-

    o   Representative Claimants of deceased Retired NFL Football Players who were diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to death or who died prior to [Date of Preliminary Approval Order] and received a diagnosis of Death with CTE.

### 7.  What players are not included in the Settlement Class?

The Settlement Class does not include:  (a) current NFL players, and (b) people who tried out for NFL or AFL Member Clubs, or World League of American Football, NFL Europe League or NFL Europa League teams, but did not make it onto preseason, regular season or postseason rosters, or practice squads, developmental squads or taxi squads.

### 8.  What if I am not sure whether I am included in the Settlement Class?

If you are not sure whether you are included in the Settlement Class, you may call **1-800-000-0000** with questions or visit www.NFLConcussionSettlement.com. You may also write with questions to NFL Concussion Settlement, P.O. Box 0000, City, ST 00000.  You may also consult with your own attorney.

### 9.  What are the different levels of neurocognitive impairment?

In addition to ALS, Parkinson's Disease, and Alzheimer's Disease, various levels of neurocognitive impairment are covered by this Settlement.  More details can be found in the Injury Definitions, which are available at www.NFLConcussionSettlement.com or by calling **1-800-000-0000**.

The level of Neurocognitive Impairment will be established in part with evidence of decline in performance in at least two areas subject to clinical evaluative testing (complex attention, executive function, learning and memory, language, or perceptual-spatial), provided one of the areas is executive function, learning and memory, or complex attention, and related functional impairment as follows:

| LEVEL OF NEUROCOGNITIVE IMPAIRMENT | TYPE OF IMPAIRMENT | DEGREE OF DECLINE |
|---|---|---|
| Level 1 | Moderate cognitive impairment | Moderate cognitive decline |
| Level 1.5 | Early Dementia | Moderate to severe cognitive decline |
| Level 2 | Moderate Dementia | Severe cognitive decline |

If neurocognitive impairment is temporary and only occurs with delirium, or as a result of substance abuse or medicinal side effects, it is not covered by the Settlement.

### 10.  Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

No.  A retired player can be a Settlement Class Member regardless of whether he is vested due to credited seasons or total and permanent disability under the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

QUESTIONS?  CALL **1-800-000-0000** OR VISIT **WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                                          Page 8

-1098-

# CHAPTER 2: SETTLEMENT BENEFITS

## THE BASELINE ASSESSMENT PROGRAM

### 11.  What is the Baseline Assessment Program ("BAP")?

All living retired players who have earned at least one-half of an Eligible Season (*see* Question 18), who do not exclude themselves from the Settlement (*see* Question 30), and who timely register to participate in the Settlement (*see* Question 26) may participate in the Baseline Assessment Program ("BAP").

The BAP will provide baseline neuropsychological and neurological assessment examinations to determine whether retired players are currently suffering from cognitive impairment.  Retired players will have from two to ten years, depending on their age as of the date the Settlement is finally approved and any appeals are fully resolved ("Final Settlement Approval"), to have a baseline examination conducted through a nationwide network of qualified and independent medical providers.

- Retired players 43 or older as of the date the Settlement goes into effect will need to have a baseline examination within two years of the start of the BAP.

- Retired players under the age of 43 as of the date the Settlement goes into effect will need to have a baseline examination within 10 years of the start of the BAP, or before they turn 45, whichever comes sooner.

Retired players who are diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment) are eligible to receive further medical testing and/or treatment (including counseling and pharmaceuticals) for that condition during the ten-year term of the BAP or within five years from diagnosis, whichever is later.

Retired players who participate in the BAP will be encouraged to provide their confidential medical records for use in research into cognitive impairment and safety and injury prevention with respect to football players.

Although all retired players are encouraged to take advantage of the BAP and receive a baseline examination, they do not need to participate in the BAP to receive a monetary award, but any award to the retired player may be reduced by 10% if  the retired player does not participate in the BAP, as explained in more detail in Question 20.

### 12.  Why should a retired player get a BAP baseline examination?

Getting a BAP baseline examination will be beneficial.  It will determine whether the retired player has any cognitive impairment.  If he is diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment), he will be eligible to receive further medical testing and/or treatment for that condition.  In addition, regardless of any cognitive impairment today, the results of the BAP baseline examination can be used as a comparison to measure any subsequent deterioration of  cognitive condition over the course of his life.  Participants also will be examined by at least two experts during the BAP baseline examinations, a neuropsychologist and a neurologist, and the retired player and/or his family members will have the opportunity to ask questions relating to any cognitive impairment during those examinations.

QUESTIONS?  CALL **1-800-000-0000** OR VISIT **WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                              Page 9

Participation in the BAP does not prevent the retired player from filing a claim for a monetary award. For the next 65 years, retired players will be eligible for compensation paid from the Monetary Award Fund if the player develops a Qualifying Diagnosis (*see* Question 14). Participation in the BAP also will help ensure that, to the extent the retired player receives a Qualifying Diagnosis in the future, he will receive the maximum monetary award to which he is entitled (*see* Question 20).

| **13. How does a retired player schedule a baseline assessment examination and where will it be done?** |
| --- |

Retired players need to register for Settlement benefits before they can get a baseline assessment examination. Registration for benefits will not be available until after Final Settlement Approval. **However, a retired player may provide his name and contact information now at www.NFLConcussionSettlement.com or by calling 1-800-000-0000. This ensures that the retired player will receive additional notice about the registration process and deadlines when it becomes available.**

The BAP Administrator will send notice to those retired players determined during registration to be eligible for the BAP, explaining how to arrange for an initial baseline assessment examination. The BAP will use a nationwide network of qualified and independent medical providers who will provide both the initial baseline assessment as well as any further testing and/or treatment. The BAP Administrator, which will be appointed by the Court, will establish the network of medical providers.

## MONETARY AWARDS

| **14. What diagnoses qualify for monetary awards?** |
| --- |

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia), or Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund.

If a retired player receives a monetary award based on a Qualifying Diagnosis, and later is diagnosed with a different Qualifying Diagnosis that entitles him to a larger monetary award than his previous award, he will be eligible for an increase in compensation. This would also apply to Derivative Claimants.

Qualifying Diagnoses must be made by approved qualified specialists. If and when Final Settlement Approval is obtained, the Claims Administrator will create and maintain a list of specialists who may make an authorized Qualifying Diagnoses if no such diagnosis has already been made by a qualified specialist before the Settlement is effective.

| **15. Do I need to prove that playing professional football caused the retired player's Qualifying Diagnosis?** |
| --- |

No. You do not need to prove that a retired player's Qualifying Diagnosis was caused by playing professional football or that he experienced head injuries in the NFL, AFL, World League of American Football, NFL Europe League, or NFL Europa League in order to receive a monetary award. The fact that a retired player receives a Qualifying Diagnosis is sufficient to be eligible for a monetary award.

You also do not need to exclude the possibility that the Qualifying Diagnosis was caused or contributed to by amateur football or other professional football league injuries or by various risk factors linked to the Qualifying Diagnosis.

### 16.  How much money will I receive?

The amount of money you will receive depends on the retired player's:
- Specific Qualifying Diagnosis,
- Age at the time of diagnosis (*see* Question 17),
- Number of seasons played or practiced in the NFL or the AFL (*see* Question 18),
- Diagnosis of a prior stroke or traumatic brain injury (*see* Question 19), and
- Participation in a baseline assessment exam (*see* Question 20).

The amount of money you will receive also depends on whether:
- There are any legally enforceable liens on the award,
- Any retainer agreement with an attorney, and
- The Court makes any further assessments (*see* Question 34).

Certain costs and expenses related to resolving any liens for Settlement Class Members will be paid out of such Settlement Class Members' Monetary Awards or Derivative Claimant Awards.

The table below lists the maximum amount of money available for each Qualifying Diagnosis before any adjustments are made.

| QUALIFYING DIAGNOSIS | MAXIMUM AWARD AVAILABLE |
|---|---|
| Amyotrophic lateral sclerosis (ALS) | $5 million |
| Death with CTE (diagnosed after death) | $4 million |
| Parkinson's Disease | $3.5 million |
| Alzheimer's Disease | $3.5 million |
| Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) | $3 million |
| Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) | $1.5 million |

Monetary awards may be increased up to 2.5% per year during the 65-year Monetary Award Fund term for inflation.

To receive the maximum amount outlined in the table, a retired player must have played for at least five Eligible Seasons (*see* Question 18) and have been diagnosed when younger than 45 years old.

Derivative Claimants are eligible to be compensated from the monetary award of the retired player with whom they have a close relationship in an amount of 1% of that award.  If there are multiple Derivative Claimants for the same retired player, the 1% award will be divided among the Derivative Claimants according to the law where the retired player (or his Representative Claimant, if any) resides.

| **17. How does the age of the retired player at the time of first diagnosis affect a monetary award?** |
|---|

Awards are reduced for retired players who were 45 or older when diagnosed. The younger a retired player is at the time of diagnosis, the greater the award he will receive. Setting aside the other downward adjustments to monetary awards, the table below provides:

- The average award for people diagnosed between the ages of 45-79; and
- The amount of the award for those under age 45 and over 79.

The actual amount will be determined based on each retired player's actual age at the time of diagnosis and on other potential adjustments.

| AGE AT DIAGNOSIS | ALS | DEATH W/CTE | PARKINSON'S | ALZHEIMER'S | LEVEL 2 | LEVEL 1.5 |
|---|---|---|---|---|---|---|
| Under 45 | $5,000,000 | $4,000,000 | $3,500,000 | $3,500,000 | $3,000,000 | $1,500,000 |
| 45 - 49 | $4,500,000 | $3,200,000 | $2,470,000 | $2,300,000 | $1,900,000 | $950,000 |
| 50 - 54 | $4,000,000 | $2,300,000 | $1,900,000 | $1,600,000 | $1,200,000 | $600,000 |
| 55 - 59 | $3,500,000 | $1,400,000 | $1,300,000 | $1,150,000 | $950,000 | $475,000 |
| 60 - 64 | $3,000,000 | $1,200,000 | $1,000,000 | $950,000 | $580,000 | $290,000 |
| 65 - 69 | $2,500,000 | $980,000 | $760,000 | $620,000 | $380,000 | $190,000 |
| 70 - 74 | $1,750,000 | $600,000 | $475,000 | $380,000 | $210,000 | $105,000 |
| 75 - 79 | $1,000,000 | $160,000 | $145,000 | $130,000 | $80,000 | $40,000 |
| 80+ | $300,000 | $50,000 | $50,000 | $50,000 | $50,000 | $25,000 |

**Note:** The age of the retired player at diagnosis (not the age when applying for a monetary award) is used to determine the monetary amount awarded.

| **18. How does the number of seasons a retired player played affect a monetary award?** |
|---|

Awards are reduced for retired players who played less than five "Eligible Seasons." The Settlement uses the term "Eligible Season" to count the seasons in which a retired player played or practiced in the NFL or AFL. A retired player earns an Eligible Season for:

- Each season where he was on an NFL or AFL Member Club's "Active List" for either three or more regular season or postseason games, or

- Where he was on an Active List for one or more regular or postseason games and then spent two regular or postseason games on an injured reserve list or inactive list due to a concussion or head injury.

- A retired player also earns one-half of an Eligible Season for each season where he was on an NFL or AFL Member Club's practice, developmental, or taxi squad for at least eight games, but did not otherwise earn an Eligible Season.

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                     Page 12

-1102-

The "Active List" means the list of all players physically present, eligible and under contract to play for an NFL or AFL Member Club on a particular game day within any applicable roster or squad limits in the applicable NFL or AFL Constitution and Bylaws.

Time spent playing or practicing in the World League of American Football, NFL Europe League, and NFL Europa League does not count towards an Eligible Season.

The table below lists the reductions to a retired player's (or his Representative Claimant's) monetary award if the retired player has less than five Eligible Seasons. To determine the total number of Eligible Seasons credited to a retired player, add together all of the earned Eligible Seasons and half Eligible Seasons. For example, if a retired player earned two Eligible Seasons and three half Eligible Seasons, he will be credited with 3.5 Eligible Seasons.

| NUMBER OF ELIGIBLE SEASONS | PERCENTAGE OF REDUCTION |
|---|---|
| 4.5 | 10% |
| 4 | 20% |
| 3.5 | 30% |
| 3 | 40% |
| 2.5 | 50% |
| 2 | 60% |
| 1.5 | 70% |
| 1 | 80% |
| .5 | 90% |
| 0 | 97.5% |

**19. How do prior strokes or traumatic brain injuries of a retired player affect a monetary award?**

It depends. A retired player's monetary award (or his Representative Claimant monetary award) will be reduced by 75% if he experienced: (1) a medically diagnosed stroke that occurred before or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis; or (2) a severe traumatic brain injury unrelated to NFL football that occurred during or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis.

The award will not be reduced if the retired player (or his Representative Claimant) can show by clear and convincing evidence that the stroke or traumatic brain injury is not related to the Qualifying Diagnosis.

**20. How is a retired player's monetary award affected if he does not participate in the BAP program?**

It depends on when the retired player receives his Qualifying Diagnosis and the nature of the diagnosis. There is a 10% reduction to the monetary award if the retired player does not participate in the BAP and:

- Did not receive a Qualifying Diagnosis prior to [Date of Preliminary Approval Order], and

QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

Exhibit 5                                                                                                    Page 13

-1103-

- Receives a Qualifying Diagnosis (other than ALS) after his deadline to receive a BAP baseline assessment examination.

### 21.  Can I receive a monetary award even though the retired player is dead?

Yes.  Representative Claimants for deceased retired players with a Qualifying Diagnoses will be eligible to receive monetary awards.  If the deceased retired player died before January 1, 2006, however, the Representative Claimant will only receive a monetary award if the Court determines that a wrongful death or survival claim is allowed under applicable state law.

Derivative Claimants also will be eligible for a total award of 1% of the monetary award that the Representative Claimant for the deceased retired player receives (*see* Question 16).

Representative and Derivative Claimants will also need to register for Settlement benefits (*see* Question 26).

### 22.  Will this Settlement affect a retired player's participation in NFL or NFLPA-related benefits programs?

No.  The Settlement benefits are completely independent of any benefits programs that have been created by or between the NFL and the NFL Players Association.  This includes the 88 Plan (Article 58 of the 2011 Collective Bargaining Agreement) and the Neuro-Cognitive Disability Benefit (Article 65 of the 2011 Collective Bargaining Agreement).

**Note:**  The Settlement ensures that a retired player who has signed, or will sign, a release as part of his Neuro-Cognitive Disability Benefit application, will not be denied Settlement benefits.

### 23.  Will this Settlement prevent retired players from bringing workers' compensation claims?

No.  Claims for workers' compensation will not be released by this Settlement.

## EDUCATION FUND

### 24.  What type of education programs are supported by the Settlement?

The Settlement will provide $10 million in funding to support education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives.

Retired players will be able to actively participate in such initiatives if they desire.

# CHAPTER 3:  YOUR RIGHTS

## REMAINING IN THE SETTLEMENT

| 25.  What am I giving up to stay in the Settlement Class? |
| --- |

Unless you exclude yourself from the Settlement, you cannot sue the NFL Parties, the Member Clubs, or related individuals and entities, or be part of any other lawsuit against the NFL Parties about the issues in this case.  This means you give up your right to continue to litigate any claims related to this Settlement, or file new claims, in any court or in any proceeding at any time.  **However, the Settlement does not release any claims for workers' compensation (***see*** Question 23) or claims alleging entitlement to NFL medical and disability benefits available under the Collective Bargaining Agreement**.

Please note that certain Plaintiffs also sued the football helmet manufacturer Riddell and certain related entities (specifically, Riddell, Inc., Riddell Sports Group Inc., All American Sports Corporation, Easton-Bell Sports, Inc., EB Sports Corp., Easton-Bell Sports, LLC, and RBG Holdings Corp.). **They are not parties to this Settlement and claims against them are not released by this Settlement**.

Article XVIII of the Settlement Agreement contains the complete text and details of what Settlement Class Members give up unless they exclude themselves from the Settlement, so please read it carefully.  The Settlement Agreement is available at www.NFLConcussionSettlement.com.  The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania  (*see* Question 35 for the address).  You can also get this information by calling 1-800-000-0000.  If you have any questions you can talk to the law firms listed in Question 33 for free or you can talk to your own lawyer if you have questions about what this means.

## HOW TO GET BENEFITS

| 26.  How do I get Settlement benefits? |
| --- |

To get benefits, you will need to register.  This is true for all Settlement Class Members, including Representative and Derivative Claimants.  Registration for benefits will not begin until after Final Settlement Approval (*see* Question 37).  If and when that occurs, further notice will be provided about the registration process and deadlines.  **However, you may provide your name and contact information now at www.NFLConcussionSettlement.com or by calling 1-800-000-0000.  This ensures that you will receive additional notice about the registration process and deadlines when that becomes available.**  To receive any Settlement benefits, you must register on or before 180 days from the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com.  Information about the registration deadline will also be available by calling **1-800-000-0000.**

| 27.  Is there a time limit for Retired NFL Football Players and Representative Claimants to file claims for monetary awards? |
| --- |

Yes.  Retired NFL Football Players and Representative Claimants for retired players who are diagnosed by the date of Final Settlement Approval must submit claims for monetary awards within two years of the date that further notice about the registration process and deadlines is posted on

www.NFLConcussionSettlement.com. Retired NFL Football Players and Representative Claimants for retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of diagnosis to file claims. This deadline may be extended to within four years of the Qualifying Diagnosis or the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com, whichever is later, if the Retired NFL Football Player or Representative Claimant can show substantial hardship beyond the Qualifying Diagnosis. Derivative Claimants must submit claims no later than 30 days after the Retired NFL Football Player through whom the close relationship is the basis for the claim (or the Representative Claimant of that retired player) receives a notice that he is entitled to a monetary award. All claims must be submitted by the end of the 65-year term of the Monetary Award Fund.

| **28. Can I re-apply for compensation if my claim is denied?** |
| --- |

Yes. A Settlement Class Member who submits a claim for a monetary award that is denied can re-apply in the future should the Retired NFL Football Player's medical condition change.

| **29. Can I appeal the determination of my monetary award claim?** |
| --- |

Yes. The Settlement establishes a process for a Settlement Class Member to appeal the denial of a monetary award claim or the amount of the monetary award.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to receive benefits from this Settlement, and you want to retain the right to sue the NFL Parties about the legal issues in this case, then you must take steps to remove yourself from the Settlement. You may do this by asking to be excluded – sometimes referred to as "opting out" of – the Settlement Class.

| **30. How do I get out of the Settlement?** |
| --- |

To exclude yourself from the Settlement, you must mail a letter or other written document to the Claims Administrator. Your request must include:

- Your name, address, telephone number, and date of birth;

- A copy of your driver's license or other government issued identification;

- A statement that "I wish to exclude myself from the Settlement Class in *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323" (or substantially similar clear and unambiguous language); and

- Your signature by hand (not any form of electronic signature), and the date on which you signed it (even if represented by an attorney).

You must mail your exclusion request, postmarked no later than **Month 00, 0000** [Date ordered by the Court], to:

NFL Concussion Settlement
P.O. Box 0000,
City, ST 00000

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                                          Page 16

-1106-

**31.  If I do not exclude myself, can I sue the NFL Parties for the same thing later?**

No.  Unless you exclude yourself, you give up the right to sue the NFL Parties for all of the claims that this Settlement resolves.  If you want to maintain your own lawsuit relating to the claims released by the Settlement, then you must exclude yourself by **Month 00, 0000.**

**32.  If I exclude myself, can I still get benefits from this Settlement?**

No.  **If you exclude yourself from the settlement you will not get any Settlement benefits**.  You will not be eligible to receive a monetary award or participate in the Baseline Assessment Program.

## THE LAWYERS REPRESENTING YOU

**33.  Do I have a lawyer in the case?**

The Court has appointed a number of lawyers to represent all Settlement Class Members as "Co-Lead Class Counsel," "Class Counsel" and "Subclass Counsel" (*see* Question 6).  They are listed at the end of this Notice with their contact information.

You will not be charged for contacting these lawyers.  If you are represented by an attorney, you may contact your attorney to discuss the proposed Settlement.  You do not have to hire your own attorney.  However, if you want to be represented by your own lawyer, you may hire one at your own expense.

**34.  How will the lawyers be paid?**

At a later date to be determined by the Court, Co-Lead Class Counsel, Class Counsel and Subclass Counsel will ask the Court for an award of attorneys' fees and reasonable costs.  The NFL Parties have agreed not to oppose or object to the request for attorneys' fees and reasonable incurred costs if the request does not exceed $112.5 million.  These fees and incurred costs will be paid separately by the NFL Parties and not from the Baseline Assessment Program Fund, Education Fund, or Monetary Award Fund.  Settlement Class Members will have an opportunity to comment on and/or object to this request at an appropriate time.  Ultimately, the award of attorneys' fees and reasonable costs to be paid by the NFL Parties is subject to the approval of the Court.

After Final Settlement Approval, Co-Lead Class Counsel may ask the Court to set aside up to five percent of each Monetary Award and Derivative Claimant Award to facilitate the Settlement program and related efforts of Co-Lead Class Counsel, Class Counsel and Subclass Counsel.  If approved, this money would be held in a separate fund overseen by the Court.  Any future request for a set-aside will describe:  (1) the proposed amount; (2) how the money will be used; and (3) any other relevant information.  This "set-aside" would come out of the claimant's attorney's fee if represented by individual counsel or, if not represented, out of the Monetary Award or Derivative Claimant Award itself.  No money will be held back or set aside from any award without a Court order.  The set-aside is a matter between Class Counsel and individual counsel for Settlement Class Members.  The NFL Parties do not take a position on the proposal.

## OBJECTING TO THE SETTLEMENT

You may tell the Court that you do not agree with the Settlement or some part of it.

| **35. How do I tell the Court if I do not like the Settlement?** |
| --- |

If you do not exclude yourself from the Settlement Class, you may object to the Settlement if you do not like some part of it. The Court will consider your views. To object to the Settlement, you or your attorney must submit your written objection to the Court. The objection must include the following:

- The name of the case and multi-district litigation, *In re: National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323;

- Your name, address, telephone number, and date of birth;

- The name of the Retired NFL Football Player through which you are a Representative Claimant or Derivative Claimant (if you are not a retired player);

- Written evidence establishing that you are a Settlement Class Member;

- A detailed statement of your objections, and the specific reasons for each such objection, including any facts or law you wish to bring to the Court's attention;

- Any other supporting papers, materials or briefs that you want the Court to consider in support of your objection; and

- Your signature by hand (not any form of electronic signature), and the date on which you signed it (even if represented by an attorney).

The requirements to object to the Settlement are described in detail in the Settlement Agreement in section 14.3.

You must file your objection with the Court no later than **Month 00, 0000 [date ordered by the Court]**:

| **COURT** |
| --- |
| Clerk of the District Court/NFL Concussion Settlement |
| United States District Court for the Eastern District of Pennsylvania |
| James A. Byrne U.S. Courthouse, |
| 601 Market Street, |
| Philadelphia, PA 19106-1797 |

| **36. What is the difference between objecting to the Settlement and excluding myself?** |
| --- |

Objecting is simply telling the Court that you do not like something about the Settlement or want it to say something different. You can object only if you do not exclude yourself from the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and you do

not want to receive any Settlement benefits.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement.  You may attend and you may ask to speak, but you do not have to.  The Court will determine if you are allowed to speak if you request to do so (*see* Question 39).

### 37.  When and where will the Court hold a Fairness Hearing concerning the Settlement?

The Court will hold the Fairness Hearing at XX:00 x.m. on **Month 00, 0000**, at the United States District Court for the Eastern District of Pennsylvania, located at the James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106-1797.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.NFLConcussionSettlement.com or call **1-800-000-0000**.  At this hearing, the Court will hear evidence about whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them and may elect to listen to people who have asked to speak at the hearing.  After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

The Court will consider the request for attorneys' fees and reasonable costs by Co-Lead Class Counsel, Class Counsel and Subclass Counsel (*see* Question 34) after the Fairness Hearing, which will be set at a later date by the Court.

### 38.  Do I have to attend the hearing?

No.  Co-Lead Class Counsel, Class Counsel and Subclass Counsel will answer questions the Court may have.  But you are welcome to attend at your own expense.  If you timely file an objection, you do not have to come to Court to talk about it.  As long as you filed your written objection on time, the Court will consider it.  You may also have your own lawyer attend at your expense, but it is not necessary.

### 39.  May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing.  The Court will determine whether to grant you permission to speak.  To make such a request, you must file a written notice stating that it is your wish to speak at the *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323 Fairness Hearing.  Be sure to include your name, address, telephone number, and your signature. Your request to speak must be filed with the Court no later than **Month 00, 0000** at the address in Question 35.

## GETTING MORE INFORMATION

### 40.  How do I get more information?

This Notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement at www.NFLConcussionSettlement.com.  The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question

35 for the address).  You also may write with questions to NFL Concussion Settlement, P.O. Box 0000, City, ST 00000 or call **1-800-000-0000**.

**PLEASE DO NOT WRITE OR TELEPHONE THE COURT OR THE NFL PARTIES FOR INFORMATION ABOUT THE SETTLEMENT OR THIS LAWSUIT.**

| IMPORTANT DATES AND CONTACT INFORMATION | | |
|---|---|---|
| **Exclusion "Opt Out" Deadline** | Month 00, 2014 | |
| **Objection Deadline** | Month 00, 2014 | |
| **Deadline to Request to Speak at the Fairness Hearing** | Month 00, 2014 | |
| **Fairness Hearing** | Month 00, 2014 | |
| **Start of Registration Period** | The start of the registration process and related deadlines will be announced on www.NFLConcussionSettlement.com following Final Settlement Approval | |
| **Registration Deadline** | 180 days after registration begins | |
| **Submit a Claim** | • Retired NFL Football Players and Representative Claimants for retired players who are diagnosed by the date of Final Settlement Approval must submit claims for monetary awards within two years of the announcement of the registration process. <br>• Retired NFL Football Players and Representative Claimants for retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of diagnosis to file claims. | |
| **Settlement Administrator** | NFL Concussion Settlement <br>P.O. Box 0000 <br>City, ST 00000 <br>Tel: 1-800-000-0000 | |
| **Court** | Clerk of the District Court/NFL Concussion Settlement <br>United States District Court for the Eastern District of Pennsylvania <br>James A. Byrne U.S. Courthouse, <br>601 Market Street, <br>Philadelphia, PA 19106-1797 | |
| **Class Counsel** | Christopher A. Seeger <br>Co-Lead Class Counsel <br>SEEGER WEISS LLP <br>77 Water Street <br>New York, NY 10005 | Sol Weiss <br>Co-Lead Class Counsel <br>ANAPOL SCHWARTZ <br>1710 Spruce Street <br>Philadelphia, PA 19103 |
| | Steven C. Marks <br>Class Counsel <br>PODHURST ORSECK P.A. <br>City National Bank Building <br>25 W. Flagler Street, Suite 800 <br>Miami, FL 33130-1780 | Gene Locks <br>Class Counsel <br>LOCKS LAW FIRM <br>The Curtis Center, Suite 720 East <br>601 Walnut Street <br>Philadelphia, PA 19106 |
| | Arnold Levin <br>Counsel - Subclass 1 <br>LEVIN FISHBEIN SEDRAN & BERMAN <br>510 Walnut Street, Suite 500 <br>Philadelphia, PA 19106 | Dianne M. Nast, Counsel – <br>Counsel - Subclass 2 <br>NAST LAW LLC <br>1101 Market Street, Suite 2801 <br>Philadelphia, Pennsylvania 19107 |

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                 Page 21

-1111-

**Reminder:** Provide your name and contact information now at www.NFLConcussionSettlement.com or by calling 1-800-000-0000.   This ensures that you will receive additional notice about the registration process and deadlines when it becomes available.

# Exhibit C-4

NFL Concussion Claims Administrator
2867 E. Allegheny Avenue
Philadelphia, PA 19134

RETURN SERVICE REQUESTED

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
SED

# NFL Concussion Settlement

## Important Information Inside

# NFL Concussion Settlement

## Retired NFL Players and Their Families Could Get Money and Benefits

# Exhibit C-5

# NFL Concussion Settlement

**All Valid Claims of Retired NFL Football Players to be Paid in Full for 65 Years**
Monetary Awards, Baseline Medical Exams and Other Benefits Provided



The NFL and NFL Properties have agreed to a class action Settlement with retired players who sued, accusing them of failing to warn of and hiding the dangers of brain injury associated with playing football. The Settlement does not establish any wrongdoing on the part of the NFL or NFL Properties.

### Who is included in the Settlement?

The Settlement Class generally includes all retired players of the NFL, AFL, World League of American Football, NFL Europe League and NFL Europa League. The Settlement Class includes immediate family members of retired players and legal representatives of incapacitated, incompetent or deceased players.

### What does the Settlement provide?

The Settlement provides money for three benefits:

- Baseline medical exams to determine if retired players suffer from neurocognitive impairment and are entitled to additional testing and/or treatment ($75 million),
- Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Alzheimer's Disease, Parkinson's Disease, Dementia and certain cases of chronic traumatic encephalopathy or CTE (a neuropathological finding) diagnosed after death. The maximum monetary awards range from $1.5 million to $5 million depending on the diagnosis. All valid claims will be paid in full for 65 years; and
- Education programs and initiatives related to football safety ($10 million).

## How can I get benefits?

You will need to register for benefits after the final approval of the Settlement. You may provide your contact information now at the website or phone number below to ensure that you receive additional notice about the registration process.

Retired players do <u>not</u> have to prove that their injuries were caused by playing NFL football to get money from the Settlement.

## What are my rights?

You do not need to do anything to be included in the Settlement Class. All Settlement Class members will be bound by the Settlement and give up the right to sue the NFL individually. If you want to keep your right to sue the NFL, you must exclude yourself from the Class by **Month 00, 2014**. If you exclude yourself, you will not receive any benefits under the Settlement. If you stay in the Class, you may object to the Settlement by **Month 00, 2014**.

The Court will hold a hearing on **Month 00, 2014** to consider whether to approve the Settlement. You do not have to attend. However, you and/or your own lawyer may attend and request to speak at the hearing at your own expense. At a later date, the attorneys will ask the Court for an award of attorneys' fees and reasonable costs. The NFL and NFL Properties have agreed not to oppose or object to the request if the request does not exceed $112.5 million. The money would be paid by the NFL and NFL Properties in addition to the payments described above.

**Please Share this Notice with Other Retired Players and Their Families**
For More Information on the Settlement and Registering for Benefits:
**1-800-000-0000  or  www.NFLConcussionSettlement.com**

# Exhibit D

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB |
| | MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated, | **Hon. Anita B. Brody** |
| Plaintiffs, | |
| v. | |
| National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., | CIVIL ACTION NO: _____ |
| Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**DECLARATION OF MEDIATOR AND FORMER**
**UNITED STATES DISTRICT COURT JUDGE LAYN R. PHILLIPS**
**IN SUPPORT OF PRELIMINARY APPROVAL OF SETTLEMENT**

Layn R. Phillips declares as follows:

1.      I am the Court-appointed mediator in this action and a former United States District Court Judge.  I submit this declaration in support of preliminary approval of the proposed class action settlement between the proposed Plaintiff Class and defendants NFL and NFL Properties LLC (collectively, the "NFL Parties").

2.      At the request of the Court, I conducted an extensive mediation over the course of the last five months that produced the proposed settlement now before the Court for preliminary approval.  The parties negotiated this settlement under my supervision.  The talks were vigorous,

at arm's length, and in good faith. Based on my extensive experience as a mediator and former judge, my frequent and detailed discussions with the parties, and the information made available to me during the mediation, I believe that the $760 million proposed settlement (plus attorneys' fees and reasonable costs) represents a fair and reasonable settlement given the substantial risks involved for both sides. Without waiver of the mediation privilege, I describe below the reasons for my view.

**Qualifications and Experience**

3.      I am a partner at Irell & Manella LLP. I am a member of the bars of Oklahoma, Texas, California and the District of Columbia, as well as the United States Courts of Appeals for the Ninth and Tenth Circuits. I am the former United States Attorney for the Northern District of Oklahoma and a former United States District Court Judge for the Western District of Oklahoma. I founded the Irell & Manella Alternative Dispute Resolution Center, where I have headed the firm's ADR practice since 1991.

4.      I have successfully mediated complex commercial cases, including hundreds of class actions, for over twenty years. Before that, as a federal judge, I presided over hundreds of settlement conferences in complex business disputes and class actions. I have been appointed Special Master by numerous federal courts in complex civil proceedings. It is not uncommon for me to settle billions of dollars of disputes on an annual basis. It is my understanding that I was nominated by the parties and appointed by the Court to mediate this important matter in part because of my extensive experience resolving complex, high-visibility disputes of this kind.

**The Mediation Process**

5.      Under my supervision, beginning immediately upon my appointment by the Court in July of this year, the parties engaged in arm's-length, hard-fought negotiations. As is my

practice, I conducted multiple face-to-face mediation sessions with both sides present, as well as many separate caucus sessions where I met only with one side or the other. All of these in-person mediation sessions were conducted in New York City. However, I also engaged in considerable telephonic follow-up work with all of the parties involved. In addition, counsel for the parties conducted extensive negotiations outside my presence pursuant to requests and directions that I gave to them. I dedicated more than twelve full days to mediate this matter in addition to the considerable hours I invested in discussions with the parties outside these formal sessions.

6.     At all times, the parties aggressively asserted their respective positions on a host of issues. On occasion, the negotiations were contentious (although both sides were always professional). Because of the schedule that the Court imposed and the number and complexity of issues to be resolved, members of my mediation team and I sometimes multi-tracked mediation efforts by separately addressing different sets of issues with various counsel and the parties' experts during in-person mediation sessions in New York City, as well as during the telephonic follow-up process. On almost every day between my appointment as mediator and the announcement of the settlement on August 29, the parties and I discussed issues relating to possible settlement.

7.     Plaintiffs and the NFL Parties each were represented by highly experienced, effective and aggressive counsel. I was satisfied throughout the negotiations that the parties' positions were thoroughly explored and advanced. Multiple law firms and individual counsel were involved on behalf of both sides. These counsel presented an impressive array of legal experience, talent, and expertise. Moreover, in order to ensure the adequate and unconflicted representation of all of the proposed class members, Plaintiffs agreed during the negotiations to

- 3 -

create two proposed separate subclasses, each represented by separate counsel. Generally speaking, one subclass is composed of retired NFL players who have diagnosed cognitive impairments; the other subclass is composed of retired players without a diagnosis of cognitive impairment. Plaintiffs believed—and I agreed—that having these two separate subclasses would ensure that any final resolution did not favor retired players who are currently suffering from compensable injuries from those who have not been diagnosed and who may not develop compensable injuries for years to come, if ever.

8.      In addition to highly experienced counsel, both Plaintiffs and the NFL Parties retained various medical and actuarial/economics experts to assist them in the settlement negotiations. The medical experts advised the parties on the multiplicity of medical definition issues and other medical aspects of the settlement. The parties' economists and actuaries assisted in modeling the likely disease incidence and adequacy of the funding provisions and benefit levels contained in the proposed settlement. I met personally with certain of the parties' experts during the mediation to satisfy myself that the parties were being expertly advised and were considering the relevant issues. The parties' experts also answered many of the questions I had about how the proposed settlement would operate, as well as any underlying considerations they had made and their analysis and conclusions. It was clear to me that both sides had experts that were extremely well-versed in the medical literature and issues relevant to arriving at a fair settlement that would function efficiently over the course of the settlement period.

9.      During the course of the mediation and at my request, the parties submitted various mediation materials to me and made multiple presentations regarding their positions on various factual and legal issues. I was assisted in my work and analysis by colleagues at my law firm, who independently reviewed the materials and the relevant law. During the mediation

- 4 -

sessions, there were extensive discussions of the strengths and weaknesses of the parties' various positions and of possible settlement structures.

10.    As would be expected, the proposed terms of the settlement changed substantially over the course of time.  On numerous occasions, although the parties shared a common goal, they proposed very different visions of how to achieve that goal.  I worked constructively with counsel to offer possible compromises and solutions.

11.    At all times, Plaintiffs' counsel zealously represented the proposed class and subclasses. They regularly and passionately expressed the need to protect the interests of the retirees and their families and fought hard for the greatest possible benefits in the context of a settlement that the NFL Parties could accept.  It was evident throughout the mediation process that Plaintiffs' counsel were prepared to litigate and try these cases, and face the risk of losing with no chance to recover for their labor or their expenses, if they were not able to achieve a fair and reasonable settlement result for the proposed class.

12.    At the same time, Plaintiffs' counsel recognized—correctly in my judgment—the significant legal and factual hurdles Plaintiffs faced if they proceeded with the litigation.  First and foremost, a litigation of this size and complexity can take many years to litigate.  By resolving the litigation at this time, Plaintiffs' counsel, in part, sought to compensate impaired retired NFL players who need money now in order to address their medical conditions.  They also ensured that compensation and medical testing will be available for retired NFL players who are not impaired at present, but may become so in the future.

13.    Second, Plaintiffs faced the serious risk that the Court would find that their claims were preempted, in whole or in part, by federal labor law and under the various Collective Bargaining Agreements.  I reviewed the parties' briefs on the NFL Parties' motions to dismiss

and the transcript of the oral argument before this Court.  Both sides made compelling arguments for their clients.  Plaintiffs' counsel recognized that the claims of many members of the class may have been dismissed outright if the NFL Parties prevailed on the motions to dismiss, thereby impairing the ability of many Plaintiffs to proceed in the litigation.  Plaintiffs' counsel provided a strong response to the NFL Parties' motion, relying heavily on *Kline v. Security Guards, Inc.*, 386 F.3d 246 (3d Cir. 2004), a Third Circuit case that was discussed extensively at the hearing before this Court.  Thus, the NFL Parties also faced risk that their motions would be denied, in whole or in part, and that the claims of many players would proceed through litigation.  Although the parties did not know (and still do not know) the outcome of the motions to dismiss, the significant risks for both sides squarely presented before the Court in the motion papers hastened the parties' settlement efforts.

14.     Third, Plaintiffs also faced significant hurdles in proving causation, *i.e.*, that the players suffered cognizable injuries *as a result of* concussions and sub-concussive hits they experienced while playing in the NFL.  There is little doubt that both general and case-specific causation would be hotly contested if these matters were litigated, and Plaintiffs faced a significant risk that they would not be able to prevail in the end.   In particular, Plaintiffs would likely be faced with having to prove that their alleged injuries were caused by their NFL careers rather than by some cause unrelated to football or by prior football experience in middle school, high school and college.  Many members of the proposed class had short NFL careers and played substantially more football before joining the NFL, which made this burden all the more challenging.  There are also many members of the proposed class who developed their symptoms later in life and may therefore have had difficulty proving that their alleged injuries are not a result of the normal aging process.  More broadly, the science regarding concussions and sub-

concussive hits and cognitive impairment is still evolving, which makes it more difficult to prove negligence or fraud the earlier a player played. The research is often contradictory, thereby creating additional hurdles for a successful prosecution of Plaintiffs' claims.

15.     Plaintiffs faced other legal hurdles as well, including, but not limited to, various statute of limitations arguments and the assertion of the "assumption of risk" defense based on the argument that the retired NFL players knew at the time they played that football could be a dangerous activity and that the players assumed that risk when they chose to play.

16.     Like Plaintiffs, the NFL Parties also faced great risks if they chose to litigate these cases. There was a significant risk that the Court would not accept, in whole or in part, the NFL Parties' preemption defense, which in turn would leave much of the case intact. The same was true of the NFL Parties' other legal defenses of statute of limitations and assumption of risk. If the NFL Parties did not succeed on dismissing all of these cases as a matter of law, they faced years of very expensive discovery and potentially hundreds of trials in state and federal courts around the country. Among Plaintiffs' many claims and allegations, the NFL Parties faced the risks of litigating issues relating to helmet safety standards and rules of football play. Each potential lawsuit carried with it the risk of a significant damage verdict and a negative precedent that could affect all cases that followed.

17.     In short, both sides faced substantial risks if they chose to litigate these matters and tremendous benefits if they could fairly resolve their differences.

**The Fairness and Adequacy of the Proposed Settlement**

18.     The negotiated settlement produced by the mediation process, as reflected in the parties' proposed settlement agreement, represents a thoughtful, deliberative, extraordinary and comprehensive settlement that will benefit thousands of NFL retirees and their families. If the

settlement is approved, NFL retirees immediately will be entitled to an innovative baseline testing program and, depending on their diagnosis, certain supplemental medical benefits. In addition, players that are diagnosed with serious forms of dementia, ALS, Alzheimer's Disease, Parkinson's Disease, and certain instances of CTE will be eligible to receive cash awards of up to $5 million, depending on the disease, the age of the player at diagnosis, the length of the player's career playing in the NFL and certain associated leagues and certain other relevant factors. The benefits will be made available promptly after the Effective Date of the settlement and will remain available for sixty-five years, ensuring that players who appear healthy today but develop these kinds of medical issues in the future will have the comfort of knowing that compensation is available through the settlement fund. The settlement also allocates substantial funding for education to advance the safety of the sport, including in youth football. At the same time, the settlement protects the rights of retired NFL players to continue to benefit from benefits that have been collectively bargained for between the NFL and the NFL Players Association, including pension benefits, and medical and disability benefits such as the 88 Plan and the Neuro-Cognitive Disability Benefit that was introduced in the 2011 Collective Bargaining Agreement. Plaintiffs' counsel fought hard to ensure that the retired NFL players could continue to apply for these extensive benefits, and the NFL Parties agreed that they would not enforce any release that had been signed by a class member in connection with applying for the Neuro-Cognitive Disability Benefit when he seeks to take part in the settlement benefits.

19. Based upon my extensive experience in this case and other complex actions, I believe that the settlement benefits provided to the class members as described above are fair and reasonable in light of the parties' claims and defenses, and the expense, uncertainty and time inherent in litigating the retired players' claims to judgment. In particular, it is my considered

- 8 -

judgment that Plaintiffs would be unlikely to have obtained more money and benefits without going through years of discovery and trial, where they would face substantial risks of loss due to their inability to prove negligence or fraud on the part of the NFL Parties or judgments below what they will receive in this proposed settlement.  In addition, even after judgment, the parties likely would have been engaged in years of appellate proceedings before any judgment would be finalized.

20.    Equally important, based on my review of the analyses conducted by the independent economists or actuaries retained by the parties, I believe that the $760 million paid by the NFL Parties for the settlement is fair and reasonable and will be sufficient to fund the benefits to which the parties have agreed.  It is my understanding that Plaintiffs plan on presenting a summary of their experts' work in this area at the final settlement hearing.

21.    Finally, I should note that the NFL Parties also have agreed not to object to an award of attorneys' fees and reasonable costs of up to $112.5 million *in addition to* the $760 million settlement.  This is another significant benefit that Plaintiffs' counsel obtained for the proposed class, as compared to the vast majority of other class settlements where the attorneys' fee and reasonable cost component is deducted from the common fund.  Ultimately, the total settlement, with attorneys' fees and reasonable costs, will approach $900 million.  This, in my judgment, is an outstanding result for the class members.

**Conclusion**

For all the reasons set forth above, the proposed settlement of these actions was the result of a fair, vigorous, and arm's-length mediated negotiation process.  The settlement itself is, in my judgment, fair and reasonable to the proposed class members, given the risks of these

litigations and the cost and complexity of trying them to judgment.  I therefore enthusiastically support Plaintiffs' motion for preliminary approval of the proposed settlement.

I declare that the foregoing is true and correct.

Executed this 3rd day of January 2014.

_____
LAYN R. PHILLIPS
Former United States District Court Judge

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>      Plaintiffs,<br><br>      v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>      Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION OF PROPOSED CLASS COUNSEL FOR AN ORDER:
### (1) GRANTING PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT AGREEMENT;
### (2) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS AND SUBCLASSES;
### (3) APPOINTING CO-LEAD CLASS COUNSEL, CLASS COUNSEL AND SUBCLASS COUNSEL;
### (4) APPROVING THE DISSEMINATION OF CLASS NOTICE;
### (5) SCHEDULING A FAIRNESS HEARING;  AND
### (6) STAYING MATTERS AS TO THE RELEASED PARTIES AND ENJOINING PROPOSED SETTLEMENT CLASS MEMBERS FROM PURSUING <u>RELATED LAWSUITS</u>

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ............................................................................................... 4

II.  FACTUAL BACKGROUND ............................................................................ 6

    A.  Plaintiffs' Claims ................................................................................. 6

    B.  Formation of the NFL Players' Concussion Injury Multidistrict Litigation ........... 7

    C.  Proceedings in this Court ...................................................................... 8

    D.  Mediation ............................................................................................. 9

    E.  Public Announcement of the Proposed Settlement ............................. 10

    F.  Court Appointment of a Special Master ............................................. 11

    G.  Court's Denial Without Prejudice of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, and Review of Supporting Documentation by the Special Master ............................................... 11

III.  MATERIAL TERMS OF THE SETTLEMENT ............................................ 13

    A.  Settlement Class and Subclasses ........................................................ 13

    B.  Settlement Benefits ............................................................................ 15

        1.  Baseline Assessment Program ................................................. 18

        2.  Monetary Awards and Derivative Claimant Awards ................ 21

            a)  Maximum Awards ......................................................... 21

            b)  Supplemental Awards .................................................... 23

            c)  Credited Eligible Seasons ............................................. 23

            d)  Offsets ........................................................................... 24

            e)  Lien Resolution .............................................................. 25

            f)  Derivative Claimant Awards .......................................... 25

            g)  Appeals .......................................................................... 26

i

|  |  | h) | Funding ................................................................. 26 |

|  | 3. | Education Fund ................................................................ 28 |

|  | 4. | Preservation of Collective Bargaining Benefits and Claims for Workers' Compensation ....................................... 28 |

|  | 5. | Waiver of Causation, Statutes of Limitations, and Other Defenses ........ 29 |

|  | 6. | Attorneys' Fees ................................................................. 30 |

| C. | Releases, Covenant Not To Sue And Bar Order .................................. 32 |

| D. | Class Notice .......................................................................... 32 |

IV.  ARGUMENT ............................................................................. 35

A.  Preliminary Approval of the Settlement Is Appropriate ....................................... 35

    1.  The Proposed Settlement Is the Product of Good Faith, Extensive Arm's Length Negotiations .................................. 41

    2.  The Investigation of Both Plaintiffs' Claims and the NFL Parties' Defenses Supports Preliminary Approval ................................. 43

    3.  There Is No Preferential Treatment of Certain Settlement Class Members and Class Representatives Support the Settlement .................. 44

    4.  There Are No Other "Obvious Deficiencies" To Cast Doubt on the Proposed Settlement's Fairness .............................. 45

B.  The Settlement Class and Subclasses Should Be Conditionally Certified for Settlement Purposes ......................................... 46

    1.  The Settlement Class and Subclasses Meet the Requirements Under Rule 23(a) .............................................. 47

        a)  Numerosity ......................................................... 47

        b)  Commonality ....................................................... 48

        c)  Typicality ........................................................... 50

        d)  Adequacy of Representation ...................................... 51

    2.  Common Questions of Law and Fact Predominate and the Superiority Requirement Is Met................................. 55

C.    Plaintiffs Faced Significant Challenges and Obstacles in the Litigation ............... 61

1.    Preemption ........................................................................................... 61

2.    Causation ............................................................................................... 64

3.    Statutes of Limitation .......................................................................... 65

4.    Assumption of Risk .............................................................................. 67

5.    Other Defenses ...................................................................................... 70

D.    The Proposed Form and Method of Class Notice Satisfy Due Process ................ 71

E.    The Court Should Stay This Action and Enjoin Related Lawsuits By Settlement Class Members ........................................................................................ 75

V.    CONCLUSION .......................................................................................................... 78

## TABLE OF AUTHORITIES

**Federal Cases**

*Al-Ameen v. Atlantic Roofing Corp.*, 151 F. Supp. 2d 604 (E.D. Pa. 2001) .................................. 70

*Alberton v. Commonwealth Land Title Ins. Co.*, No. 06-3755, 2008 WL 1849774

    (E.D. Pa. Apr. 25, 2008) ........................................................................................ 74

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985) .................................................... 62

*Amalgamated Workers Union of Virgin Islands v. Hess Oil Virgin Islands Corp.*,

    478 F.2d 540 (3d Cir. 1973)..................................................................................... 60

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) .................................................. *passim*

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 133 S.Ct. 1184 (2013) ................ 56

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) ............................................................ 50

*Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014)........................ 43

*Battle v. Liberty Nat'l Life Ins. Co.,* 877 F.2d 877 (11th Cir. 1989)............................................ 76

*BP Exploration & Production Inc. v. Lake Eugenie Land & Development, Inc.*,

    No. 13A1177, 2014 WL 2566067 (U.S. June 9, 2014) .......................................... 39

*Britenriker v. Mock*, No. 3:08 CV 1890, 2009 WL 2392917 (N.D. Ohio July 31, 2009) ........... 70

*Brown v. National Football League*, 219 F. Supp. 2d 372 (S.D.N.Y. 2002)........................ 68, 69

*Butler v. Sears, Roebuck and Co.*, 727 F.3d 796 (7th Cir. 2013) ................................................. 58

*Carlough v. Amchem Prods., Inc.,* 10 F.3d 189 (3d Cir. 1993) ................................................ 76

*Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013)................................................... 44

*Collins v. Cargill Meat Solutions, Corp.*, 274 F.R.D. 294 (E.D. Calif. 2011)............................ 46

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (U.S. 2013) ......................................... 56, 57, 58, 59

*Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp.2d 601 (W.D.N.Y. 2011) ................................ 46

*DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935

    (10th Cir. 2005)........................................................................................................ 72

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ....................................... 54

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) ....................... 53

*Dryer v. National Football League*, Civil No. 09-2182-PAM/AJB,

    2013 WL 5888231 (D. Minn. Nov. 1, 2013) .................................................... 33, 73

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ....................................... 35

iv

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974) ................................................ 72

*Evans v. Jeff D.*, 475 U.S. 717 (1986) ...................................................... 30, 38

*Fulgham v. Daniels J. Keating Co.*, 285 F. Supp. 2d 525 (D.N.J. 2003) ..................................... 70

*Gates v. Rohm & Haas Co.*, 248 F.R.D. 434 (E.D. Pa. 2008) ................................. 41, 43

*Grunewald v. Kasperbauer*, 235 F.R.D. 599 (E.D. Pa. 2006) ....................................... 74

*Hackbart v. Cincinnati Bengals, Inc.*, 601 F.2d 516 (10th Cir. 1979).......................................... 69

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1997) ..................................... 76

*In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426,

   2004 WL 1068807 (E.D. Pa. May 11, 2004) ..................................................... 39, 41

*In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985) ......................................... 77

*In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222 (E.D. Pa. 2012) ................................. 47, 50

*In re Certainteed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468

   (E.D. Pa. 2010)........................................................................ 73, 74

*In re Checking Account Overdraft Litig.*, 2011 WL 2258458 (S.D. Fla. 2011) .......................... 46

*In re Chinese-Manufactured Drywall Prod. Liability Litig.*, No. 10-361,

   2011 WL 2313866 (E.D. La. June 9, 2011)..................................................... 76

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047,

   2013 WL 499474 (E.D. La. Feb. 7, 2013) ..................................................... 36

*In re Chinese-Manufactured Prods. Liab. Litig.*, 2012 WL 92498 (E.D. La. Jan. 10, 2012)....... 46

*In re CIGNA Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) ........ 41

*In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332 (5th Cir. 1981) ............................... 76

*In re Countrywide Financial Corp. Customer Data Sec. Breach Litig.*,

   No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009)......................................... 55

*In re Deep Water Horizon*, 739 F.3d 790 (5th Cir. 2014) ............................................. 39

*In re Deep Water Horizon*, 744 F.3d 370 (2014).......................................................... 39

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*,

   2000 WL 1222042 (E.D. Pa. Aug. 28, 2000) ............................................... 37, 53, 54

*In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d 141 (3d Cir. 2005).............................................. 53

*In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220 (3d Cir. 2002)........................................... 76, 77

*In re Diet Drugs Prods. Liab. Litig.*, 275 F.3d 34 (3d Cir. 2001)................................................. 53

v

*In re Diet Drugs Prods. Liab. Litig.*, 582 F.3d 524 (3d Cir. 2009)................................................ 37

*In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768
    (3d Cir. 1995).................................................................................................................... 39, 40

*In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) .................................................................... 74

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ............................ 73

*In re Insurance Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009) ..................................... 52

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330 (N.D. Ohio 2001) ........................... 53

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)................................. 40, 65

*In re Lupron Marketing and Sales Practices Litig.*, 228 F.R.D. 75 (D. Mass. 2005).................. 75

*In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) ............................ 39

*In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671 (D. Kan. 2008).............. 46

*In re National Football League Players' Concussion Injury Litigation*, MDL 2323,
    842 F. Supp.2d 1378 (J.P.M.L. 2012).............................................................................. 8

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*,
    910 F.Supp.2d 891 (E.D. La. 2012).................................................................................. 38

*In re Processed Egg Prods. Antitrust Litig. ("Processed Egg")*, 284 F.R.D. 249
    (E.D. Pa. 2012)................................................................................... 38, 39, 43, 46

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998).............. 2, 39

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 261 F.3d 355 (3d Cir. 2001).................. 76

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99 (3d Cir. 2002)............. 77, 78

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450 (D.N.J. 1997) ............ 75

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995) ......................... 74

*In re School Asbestos Litig.*, 789 F.2d 996, 1009 (3d Cir.),
    *cert. denied*, 479 U.S. 852 (1986) ....................................................................... 49

*In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221 (S.D. W.Va.  2005)........................................ 52

*In re Smithkline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525 (E.D. Pa. 1990)........................... 46

*In re Uponor, Inc.*, No. 11-MD-2247, 2012 U.S. Dist. LEXIS 5339
    (D. Minn. Jan. 18, 2012).................................................................................. 76

*In re Vioxx Prods. Liab. Litig.*, 650 F.Supp.2d 549 (E.D. La. 2009)........................................... 36

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004).................................... *passim*

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838
    (6th Cir. 2013)................................................................................................................. 58

*In re Wireless Facilities, Inc. Secs. Litig. II*, 253 F.R.D. 607 (S.D. Ca. 2008) ........................... 46

*Jones v. Casey's General Stores, Inc.*, 266 F.R.D. 222 (S.D. Iowa 2009) .................................. 46

*Kaufman v. American Exp. Travel Related Services Co., Inc.*, 264 F.R.D. 438
    (N.D. Ill. 2009)................................................................................................................ 77

*Kline v. Security Guards, Inc.*, 386 F.3d 246 (3d Cir. 2004)........................................................ 63

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)................................................. 43

*Mack Trucks, Inc. v. Int'l Union, UAW*, No. 07-3737, 2011 WL 1833108
    (E.D. Pa. May 12, 2011) ................................................................................................ 40

*Marcus v. BMW of North America, LLC*, 687 F.3d 583 (3d Cir. 2012) ........................................ 44

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482
    (7th Cir. 2012).................................................................................................................. 59

*Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467 (E.D. Pa. 2007) ..................................... 39, 40

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ......................................... 72

*Ortiz v. Fibreboard Corp*, 52 U.S. 815 (1999) ................................................................. 35, 53, 54

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ......................................................... 52

*Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir. 1978).......................................................... 30

*Rodriguez v. National City Bank*, 726 F.3d 372 (3d Cir. 2013) ............................................ 37, 46

*Rolick v. Collins Pine Co.*, 925 F.2d 661 (3d Cir. 1991) ............................................................. 70

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001)..................................................................... 48

*Sullivan v. DB Investors, Inc.*, 667 F.3d 273 (3d Cir. 2010)................................................. *passim*

*Tenuto v. Transworld Sys.*, No. 99-4228, 2001 WL 1347235
    (E.D. Pa. Oct. 31, 2001).......................................................................................... 40, 46

*Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217 (3d Cir. 1995) ........................................... 63

*Trist v. First Federal Savings & Loan Assoc. of Chester*, 89 F.R.D. 1 (E.D. Pa. 1980) ............. 74

*Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597 (E.D. La. 2006) .............................................. 36

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (U.S. 2011) ................................................ *passim*

*Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1996) .......................................................... 76

vii

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86 (3d Cir. 1985) ............... 74

**State Cases**

*Allen v. Kamp's Beauty Salon, Inc.*, 177 So. 2d 678 (Fla. Dist. Ct. App. 1965) ........................ 69

*Alqurashi v. Party of Four, Inc.*, 89 A.D.3d 1047 (N.Y. App. Div. 2d Dept. 2011) ................... 68

*Anson v. Am. Motors Corp.*, 747 P.2d 581 (Ariz. Ct. App. 1987) ............................................... 65

*Benitez v. New York City Bd. of Educ.*, 73 N.Y.2d 650 (1989) .................................................. 68

*Bowen v. Eli Lilly & Co., Inc.*, 557 N.E.2d 739 (Mass. 1990) ..................................................... 66

*Carr v. Anding*, 793 S.W.2d 148 (Mo. Ct. App. 1990) ................................................................ 66

*Collins v. Nat'l R.R. Passenger Corp.*, 9 A.3d 56 (Md. 2010) ..................................................... 69

*Coomer v. Kansas City Royals Baseball Corp.*, Nos. WD 73984, WD 74040,

  2013 WL 150838 (Mo. Ct. App. Jan. 15, 2013) ....................................................................... 68

*Dreyer-Lefevre v. Morissette*, No. 56653, 2011 WL 2623955 (Nev. July 1, 2011) ................... 66

*Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433 (Tex. 2009) ........................................... 71

*Finlay v. Storage Tech. Corp.*, 764 P.2d 62 (Colo. 1988) ........................................................... 71

*Fortier v. Los Rios Cmty. Coll. Dist.*, 52 Cal. Rptr. 2d 812 (Cal. App. 4th 1996) ...................... 68

*Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914 (Cal. 2005) .................................................... 66

*Funston v. Sch. Town of Munster*, 849 N.E.2d 595 (Ind. 2006) .................................................. 69

*Garrett v. NationsBank, N.A. (S.)*, 491 S.E.2d 158 (Ga. App. 1997) .......................................... 69

*Glazier v. Keuka Coll.*, 275 A.D.2d 1039 (N.Y. App. Div. 2000) ................................................ 68

*Herrmann v. McMenomy v. Severson*, 590 N.W.2d 641 (Minn. 1999) ........................................ 66

*Hunt v. Skaneateles Cent. Sch. Dist.*, 227 A.D.2d 939 (N.Y. App. Div. 1996) ............................ 68

*Johnston v. Dow & Coulombe, Inc.*, 686 A.2d 1064 (Me. 1996) ................................................. 66

*Koenig v. Lambert*, 527 N.W.2d 903 (S.D. 1995) ....................................................................... 66

*Koenig v. Lambert*, 567 N.W.2d 220 (S.D. 1997) ....................................................................... 66

*Manor v. Nestle Food Co.*, 932 P.2d 628 (Wash. 1997) .............................................................. 71

*Manor v. Nestle Food Co.*, 945 P.2d 1119 (Wash. 1997) ............................................................ 71

*McDonald v. Levinson Steel Co.*, 302 Pa. 287 (1930) ................................................................. 70

*McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992) .................................................................... 69

*Pedersen v. Zielski*, 822 P.2d 903 (Alaska 1991) ........................................................................ 65

*Roberts v. City of Alexandria*, 246 Va. 17 (1993) ....................................................................... 71

viii

*Savino v. Robertson*, 652 N.E.2d 1240 (Ill. App. 1995) ................................................ 68

*Smith v. McGittigan*, 376 So. 2d 598 (La. Ct. App. 1979) .......................................... 69

*Stallings v. Food Lion, Inc.*, 539 S.E.2d 331 (N.C. App. 2000) .................................. 69

*Utilities Bd. of Opp v. Shuler Bros., Inc.*, No. 1111558, 2013 WL 3154011

    (Ala. June 21, 2013) .................................................................................................. 66

*Valley Elec., Inc. v. Doughty*, 528 P.2d 927 (Colo. Ct. App. 1974) ........................... 69

*Washington Indep. Tel. Ass'n v. Washington Utilities & Transp. Comm'n*,

    64 P.3d 606 (Wash. 2003) ........................................................................................ 71

*Young v. Envtl. Air Products, Inc.*, 665 P.2d 40 (Ariz. 1983) ..................................... 71

*Zamudio v. City &Cnty. of San Francisco*, 82 Cal. Rptr. 2d 664 (Cal. App. 1999) ..... 71

**Federal Statutes**

15 U.S.C. § 1691 .......................................................................................................... 37

28 U.S.C. § 1407 ..................................................................................................... 8, 60

28 U.S.C. § 1651(a) ...................................................................................................... 76

28 U.S.C. § 2283 .......................................................................................................... 76

29 U.S.C. § 185 .................................................................................................. 62, 63, 64

42 U.S.C. § 3605 .......................................................................................................... 37

**State Statutes**

42 PA. CONS. STAT. ANN. § 7102 .............................................................................. 69

77 PA. CONS. STAT. ANN. § 52 .................................................................................. 70

ARIZ. REV. STAT. ANN. § 12-2505 ............................................................................ 69

CONN. GEN. STAT. § 52-584 ...................................................................................... 66

IDAHO CODE ANN. § 5-219(4) ................................................................................... 66

MASS. GEN. LAWS ANN. ch. 231, § 85 ..................................................................... 69

MICH. COMP. LAWS ANN. § 600.2959 ...................................................................... 69

MINN. STAT. ANN. § 604.01 ....................................................................................... 69

N.Y.C.P.L.R. § 2-14 ................................................................................................... 66

OHIO REV. CODE § 2315.19(B)(4) ............................................................................. 69

TEX. CIV. PRAC. & REM. CODE ANN. § 33.001 ...................................................... 69

VA.. CODE ANN. § 8.01-230 ....................................................................................... 66

Wash. Rev. Code Ann. § 4.22.005 ............................................................... 69

**Rules**

Fed. R. Civ. P. 23 ......................................................................... *passim*

Fed. R. Civ. P. 53 ............................................................................. 11

**Other Authorities**

Manual for Complex Litigation (4th ed. 2004) ..................................................... *passim*

Newberg on Class Actions (4th ed. 2002) ........................................................ *passim*

x

## MEMORANDUM OF LAW

Having heard and appreciated the Court's concerns expressed in the Memorandum Opinion of January 14, 2014, D.E. # 5657, and the Order of the same date, D.E. # 5658, and after working extensively with the Court-appointed Special Master, Perry Golkin, Plaintiffs, Kevin Turner and Shawn Wooden ("Plaintiffs"), through their proposed Class Counsel,[1] and Defendants National Football League and NFL Properties LLC (collectively, "the NFL Parties" and, together with Plaintiffs, the "Settling Parties"), through their counsel, have negotiated and agreed to a new Class Action Settlement (or "Settlement")[2] that will resolve all claims against the NFL Parties and other Released Parties in the *In re: National Football League Players' Concussion Injury Litigation*, MDL 2323, and Related Lawsuits.[3]  Indeed, over the last six months, the Plaintiffs and the NFL Parties have benefited from the advice, wisdom and financial expertise of Special Master Golkin.  Through this process, the Settling Parties became so confident in the prior actuarial assumptions and projections that an agreement to uncap the amount of the Monetary Award Fund was reached in order to address the Court's concern that all eligible Class Members over the 65-year lifespan of the deal would be compensated at the significant award levels for which the deal provided.  Staying true to the initial deal, the Plaintiffs insisted upon maintaining the same significant award levels and maintaining the NFL

---

[1] The proposed Class Counsel are Christopher A. Seeger, Sol Weiss, Arnold Levin, Dianne M. Nast, Steven C. Marks, and Gene Locks.  Additionally, the proposed Co-Lead Class Counsel are Christopher A. Seeger and Sol Weiss.  Arnold Levin is proposed as Subclass Counsel for Subclass 1 and Dianne M. Nast is proposed as Subclass Counsel for Subclass 2.

[2] Riddell, Inc., Riddell Sports Group Inc., All American Sports Corporation, Easton-Bell Sports, Inc., EB Sports Corp., Easton-Bell Sports, LLC, and RBG Holdings Corp. are not parties to the proposed Settlement.

[3] Except where otherwise noted, the capitalized terms in this Memorandum of Law are taken from, and have the same meaning as those in, the Settlement Agreement, submitted herewith as Exhibit B to the Motion which this Memorandum of Law supports.

Parties' obligation to pay for the costs and expenses of claims administration.  For their part, the NFL Parties insisted upon including language in the new Settlement Agreement specifically describing anti-fraud measures to be included in the administration process.

The clear benefits of an uncapped class action settlement fund have been recognized by the United States Court of Appeals for the Third Circuit.  *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 328 (3d Cir. 1998).  The Honorable Anthony J. Scirica noted that the fact that "the potential class recovery is uncapped … weighs strongly in favor of the settlement."  *Id.*  Judge Scirica also recognized the value in the defendant agreeing to bear all administrative costs and counsel fees.  *Id.* at 329 ("By agreeing to cover these expenses, Prudential has ensured that the administrative and legal costs of the settlement will not diminish the class recovery.").  Similarly, here, the uncapped fund, in combination with the NFL Parties' agreement to pay for Class Notice, certain administrative costs and class attorneys' fees and reasonable costs, should quell any concerns the Court has about the fairness, reasonableness and adequacy of the proffered settlement.

This Memorandum of Law is submitted in support of the Motion of Proposed Class Counsel for an Order:  (1) granting Preliminary Approval of the Class Action Settlement Agreement;  (2) conditionally certifying a Settlement Class and Subclasses;  (3) appointing Co-Lead Class Counsel, Class Counsel, and Subclass Counsel; (4) approving dissemination of Class Notice;  (5) scheduling a Fairness Hearing; and (6) staying matters as to the Released Parties and enjoining proposed Settlement Class Members from pursuing Related Lawsuits ("Motion for Preliminary Approval and Class Certification" or "Motion"), brought pursuant to Federal Rules

of Civil Procedure 23(a), 23(b)(3) and 23(e).  This Motion is unopposed by the NFL Parties.[4]

For the reasons set forth below, Plaintiffs respectfully submit that this Class Action Settlement is

within the "range of possible approval" under FED. R. CIV. P. 23(e) and request that the Court

enter the proposed Preliminary Approval and Class Certification Order finding that:

preliminarily, the Settlement is fair, reasonable, and adequate;  the requirements for conditionally

certifying the Settlement Class and Subclasses, for settlement purposes only, under

Rules 23(a)(1)-(4) and 23(b)(3), have been met;  and Settlement Class Members should be

notified of the terms of the Settlement and of their rights in connection therewith.

Accordingly, Plaintiffs request that the Court: (1) approve the Long-Form Notice and

Summary Notice submitted herewith; (2) approve the Class Notice Plan; (3) establish dates for

the mailing and publication of Class Notice, the submission of opt out notices and objections to

the Settlement, and other relevant deadlines; and (4) schedule a Fairness Hearing to determine

whether the Settlement should be given final approval.  In addition, Plaintiffs request that the

instant litigation and all other Related Lawsuits against the Released Parties be stayed pending

final approval of the Settlement, and that all Settlement Class Members be enjoined from

continuing or commencing litigation against Released Parties, other than for claims for workers'

compensation and claims alleging entitlement to NFL CBA Medical and Disability Benefits, in

any other forum based on, relating to, or arising out of the claims and causes of action, or the

---

[4] The parties reserve all of their rights, including the right to propose or oppose class certification of a litigation class or class certification of a settlement class in the future, and the right to raise or to object to any argument presented here or not raised herein concerning any current or future litigated issue, should the Settlement Agreement be terminated or not consummated for any reason, or should any portion of the litigation proceed.  Section C of the Argument section of this Memorandum discusses some of the anticipated arguments of the respective parties absent a Settlement at this juncture.  The inclusion herein of such anticipated arguments is not, and shall not be deemed, an acquiescence, admission, or agreement by any party as to the viability or strength of the opposing party's argument, should the litigation continue.

facts and circumstances at issue, in the Class Action Complaint, Related Lawsuits and/or the Released Claims, unless and until the Settlement Class Member is excluded from the Settlement Class, the Court denies approval of the Class Action Settlement, or the Settlement Agreement is otherwise terminated.

## I.   <u>**INTRODUCTION**</u>

In July 2011, the first lawsuit was filed by Retired NFL Football Players against the NFL Parties related to the NFL Parties' alleged actions (and inactions) with regard to alleged concussion-related injuries. Since then, more than 5,000 former players have filed substantially similar lawsuits. This Class Action Settlement represents the proposed resolution of these and thousands of other Retired NFL Football Players' claims.

The Class Action Settlement now before the Court for preliminary approval provides that the NFL Parties will make all payments over a period of years to create a:

- Baseline Assessment Program ("BAP") Fund that will offer eligible Retired NFL Football Players one baseline neuropsychological and neurological examination to determine the existence and extent of any cognitive deficits, and in the event retired players are found to suffer from moderate cognitive impairment ("Level 1 Neurocognitive Impairment") (as defined in Exhibit 1 to the Settlement Agreement), certain supplemental benefits in the form of specified medical treatment and/or evaluation, including, as needed, counseling and pharmaceutical coverage (up to $75 million will be used to fund the BAP, inclusive of the costs to administer it);

- Monetary Award Fund that will provide cash for 65 years to Retired NFL Football Players, their representatives, and their families for Qualifying

Diagnoses (as defined in Exhibit 1 to the Settlement Agreement) of Level 1.5 Neurocognitive Impairment (early Dementia), Level 2 Neurocognitive Impairment (moderate Dementia), Amyotrophic Lateral Sclerosis ("ALS"), Alzheimer's Disease, Parkinson's Disease, and/or Death with chronic traumatic encephalopathy ("CTE"), without requiring any proof of causation (while uncapped now, the Settling Parties remain confident in the projected value of this Fund at $675 million); and

- Education Fund that will fund education programs promoting safety and injury prevention in football players, including youth football players, and the education of Retired NFL Football Players regarding the NFL's medical and disability benefits programs and initiatives ($10 million will be used exclusively to fund the Education Fund).

Additionally, the NFL Parties will pay the cost of Class Notice and the compensation for a Special Master to oversee aspects of the Settlement.

The Settlement is for the benefit of a proposed nationwide Settlement Class, consisting of three types of claimants, each of which is ascertainable based on objective criteria: (1) Retired NFL Football Players; (2) authorized representatives, ordered by a court or other official of competent jurisdiction, of deceased or legally incapacitated or incompetent Retired NFL Football Players ("Representative Claimants"); and (3) close family members of Retired NFL Football Players or any other persons who properly under applicable state law assert the right to sue by virtue of their relationship with the Retired NFL Football Player ("Derivative Claimants"). The Settlement Class is composed of two Subclasses: (1) Retired NFL Football Players who were *not* diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class

Certification Order (and their Representative Claimants and Derivative Claimants); and (2) Retired NFL Football Players who *were* diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order (and their Representative Claimants and Derivative Claimants) and the Representative Claimants of deceased Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to death or who died prior to the date of the Preliminary Approval and Class Certification Order and who received a post-mortem diagnosis of CTE.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs' Claims

Plaintiffs, Kevin Turner and Shawn Wooden, are Retired NFL Football Players who allegedly suffered concussive and sub-concussive head injuries while playing football in the NFL.  Mr. Turner played eight (8) seasons in the NFL for the New England Patriots and the Philadelphia Eagles.  Mr. Wooden played in the NFL for nine (9) seasons for the Miami Dolphins and the Chicago Bears. The Class Action Complaint (the "Complaint"), filed on January 6, 2014, alleges generally that the NFL Parties breached their duties to Plaintiffs by failing to take reasonable actions to protect players from the chronic risks created by concussive and sub-concussive head injuries and that the NFL Parties concealed those risks.  Plaintiffs contend that, for many decades, evidence has linked repetitive head injuries to long-term neurological problems in many sports, including football.  Plaintiffs further contend that the NFL Parties, as the organizers, marketers, and the face of the most popular sport in the United States, in which head injuries are a regular occurrence and in which players are at risk for head injuries, were aware of the evidence and the risks associated with repetitive traumatic brain injuries, but failed to take reasonable action to address the risks and deliberately ignored and actively

concealed the information from Plaintiffs.  The Complaint seeks injunctive relief, medical monitoring, and financial compensation for the long-term cognitive injuries, financial losses, expenses, and intangible losses suffered by the Plaintiffs and proposed Class, as a result of the NFL Parties' alleged tortious conduct, including negligence and misrepresentations.[5]

### B.    Formation of the NFL Players' Concussion Injury Multidistrict Litigation

On July 19, 2011, seventy-three (73) former NFL players and certain of their wives filed a complaint in the Superior Court of California against the NFL Parties and the Riddell Defendants alleging, among other things, that the NFL Parties breached a duty to protect the health and safety of its players by failing to warn and protect them against the long-term risks associated with football-related concussions.  *See* Complaint, *Maxwell v. National Football League*, BC465842 (Super. Ct. Cal. July 19, 2011).  Shortly thereafter, two more groups of former NFL players filed substantially similar complaints in California state court, and a fourth group of plaintiffs filed a substantially similar complaint in the Eastern District of Pennsylvania. *See* Complaint, *Pear v. National Football League*, LC094453 (Super. Ct. Cal. Aug. 3, 2011); Complaint, *Easterling v. National Football League*, 2:11-cv-05209 (E.D. Pa. Aug. 17, 2011); Complaint, *Barnes v. National Football League*, BC468483 (Super. Ct. Cal. Aug. 26, 2011). The NFL Parties removed the state cases to federal court on the basis of federal preemption under the Labor Management Relations Act ("LMRA").

This multi-district litigation was established on January 31, 2012 when the Judicial Panel on Multidistrict Litigation ("JPML") transferred these four actions to the Eastern District of

---

[5] The Class Action Complaint includes claims for medical monitoring, negligent misrepresentation, pre-1968 negligence, post-1968 negligence, negligence from 1987-1993, post-1994 negligence, negligent hiring, negligent retention, fraudulent concealment, fraud, wrongful death and survival actions, civil conspiracy based on fraudulent concealment, and loss of consortium.

7

Pennsylvania pursuant to 28 U.S.C. § 1407.  *See In re National Football League Players' Concussion Injury Litigation*, MDL 2323, 842 F. Supp.2d 1378 (J.P.M.L. 2012).  The JPML found that these cases "share factual issues arising from allegations against the NFL stemming from injuries sustained while playing professional football, including damages resulting from the permanent long-term effects of concussions while playing professional football in the NFL" and that "centralization under Section 1407 in the Eastern District of Pennsylvania will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."  *Id.* at 1379.  At the time of argument before the JPML in January 2012, there were sixteen potentially related actions pending against the NFL Parties.  *Id.*  at 1378.  Since that time, over 125 cases have been directly filed in the MDL or removed from Pennsylvania state court to the MDL, and additional cases have been transferred to the MDL by the JPML.  Currently, there are 325 cases consolidated in the MDL, consisting of both individual lawsuits and class actions. There are also several actions against Member Clubs that have been consolidated in this MDL and that will be resolved in connection with this proposed Settlement.  In addition, there are six cases that remain pending in various state courts or other federal courts against the NFL Parties or other Released Parties, including Member Clubs, that assert similar allegations to those asserted in the MDL proceedings.

> ### C.    Proceedings in this Court

The Court's Case Management Order 1 set a date of April 25, 2012 for the initial conference of this MDL.  At the April 25 status conference, the Court selected Christopher A. Seeger of Seeger Weiss LLP as Plaintiffs' Co-Lead Counsel for the MDL proceedings, and requested that another co-lead counsel from a Philadelphia-based firm also be selected.  Docket Entry ("D.E.") # 64.  Plaintiffs selected Sol Weiss of Anapol Schwartz as Co-Lead Counsel.

D.E. # 72. Plaintiffs also created a Plaintiffs' Executive Committee ("PEC") and Steering Committee composed of various of the counsel for plaintiffs in the cases pending before the Court, which the Court approved. *Id.* The PEC includes proposed Class Counsel, Gene Locks and Steven C. Marks, and the Steering Committee includes proposed Subclass Counsel, Arnold Levin and Dianne M. Nast.

The Court established a schedule for Plaintiffs to file Master Administrative Complaints and for the NFL Parties to brief the threshold legal issue of whether Plaintiffs' claims were preempted by federal labor law. D.E. # 64. Plaintiffs filed a Master Administrative Long-Form Complaint, D.E. # 83, and a Master Administrative Class Action Complaint for Medical Monitoring, D.E. # 84, on June 7, 2012. Plaintiffs then filed an Amended Master Administrative Long-Form Complaint, D.E. # 2642, on July 17, 2012. The NFL Parties filed motions to dismiss Plaintiffs' Master Administrative Complaints on preemption grounds on August 30, 2012, D.E. ## 3589, 3590, and Plaintiffs opposed, D.E. ## 4130-34. The NFL Parties filed replies, D.E. ## 4254-55, and Plaintiffs' sur-replies closed the briefing, D.E. ## 4589, 4591. The Court heard oral argument on the motions on April 9, 2013, and the Court's ruling remains pending.

### D. Mediation

On July 8, 2013, the Court ordered Plaintiffs and the NFL Parties to enter mediation. The Court appointed retired United States District Court Judge Layn R. Phillips as the mediator, and ordered that Judge Phillips report back to the Court on or before September 3, 2013, with the results of mediation. The Court held its ruling on the NFL Parties' motions to dismiss on preemption grounds in abeyance until the September 3, 2013 deadline, and instructed the Settling Parties and their counsel to refrain from publicly discussing the mediation process or disclosing any discussions they may have as part of that process, without further order of the Court. In

9

addition to proposed Co-Lead Class Counsel for Plaintiffs, Christopher A. Seeger and Sol Weiss, proposed Class Counsel, Steven C. Marks and Gene Locks, and proposed Subclass Counsel, Arnold Levin and Dianne M. Nast, were brought into the mediation on behalf of Plaintiffs.

Following his appointment by the Court, Judge Phillips actively supervised and participated in the mediation process, and he regularly kept the Court apprised of the status of the process. Judge Phillips presided over numerous negotiation/mediation sessions, including in-person and telephonic meetings with counsel, either jointly or in separate groups. The mediation process culminated in the execution of a Term Sheet on August 29, 2013. *See* Declaration of Mediator and Former United States District Court Judge Layn R. Phillips attached to the Motion for Preliminary Approval and Class Certification ("Phillips Declaration") as Exhibit D.

It is noteworthy that the Monetary Award Grid, *see* Exhibit 3 to the Settlement Agreement (Exhibit B-3 to the underlying Motion), under the current Settlement Agreement which provides for what the Court characterized as "significant award levels," remains unchanged from that which was originally negotiated by the Settling Parties with the assistance of Judge Phillips, who opined that the Settlement was fair and reasonable. *See* Exhibit D to the underlying Motion, at ¶¶ 18 and 19.

### E.    Public Announcement of the Proposed Settlement

On August 29, 2013, the Court announced that "in accordance with the reporting requirements in [its] order of July 8, 2013, the Honorable Layn Phillips, the court-appointed mediator, informed [the Court] that the plaintiffs and the NFL defendants had signed a Term Sheet incorporating the principal terms of a settlement." D.E. # 5235. In its Order, the Court reserved judgment on the fairness and adequacy of the Settlement pending the Settling Parties' presentation to the Court of the Settlement Agreement, along with motions for preliminary and

10

final approval.  *Id.*  Thereafter, the Settling Parties negotiated the Settlement Agreement that was submitted for Preliminary Approval in January 2014.

**F.    Court Appointment of a Special Master**

On December 16, 2013, pursuant to Fed. R. Civ. P. 53, the Court appointed Perry Golkin to serve as Special Master to assist the Court in evaluating the economic aspects of the proposed settlement in view of its financial complexities.  D.E. # 5607.  Mr. Golkin agreed to serve in this capacity without compensation.  All expenses reasonably necessary to fulfill his duties will be shared equally by the Plaintiffs and the NFL Parties prior to final approval, and the allocation may be adjusted at the time of final approval.

Upon final approval, the Court will appoint a Special Master for five-year terms with input from the Co-Lead Class Counsel and Counsel for the NFL Parties for so long as the Court believes such appointments are necessary.  The annual compensation of the Special Master (not to exceed $200,000) and his/her reasonable out-of-pocket costs and expenses shall be paid from the Monetary Award Fund (which, in turn, is funded by the NFL Parties).

**G.    Court's Denial Without Prejudice of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, and Review of Supporting Documentation by the Special Master**

Following months of further negotiations on numerous specifics details related to the agreement in principal reached in the Term Sheet, the Plaintiffs and the NFL Parties ultimately agreed upon a Class Action Settlement Agreement, and on January 6, 2014, Proposed Co-Lead Class Counsel, Class Counsel and Subclass Counsel moved for the entry of the Proposed Preliminary Approval and Class Certification Order.  D.E. # 5634.  The Class Action Complaint, *Turner, et al. v. National Football League, et al.*, C.A. No. 14-29, also was filed on January 6, 2014.

<div align="center">11</div>

On January 14, 2014, this Court denied the motion without prejudice. D.E. # 5657. The Court praised the "commendable effort" of the parties to reach the negotiated class action settlement, but expressed concern as to the adequacy of the proposed $675 million Monetary Award Fund, in light of the 65-year lifespan of the Monetary Award Fund, the Settlement Class size of more than 20,000 members and the potential magnitude of the awards. The Court acknowledged that Plaintiffs had represented that their economists had conducted analyses to ensure that there would be sufficient funding to provide benefits to all eligible Class Members, given the size of the Settlement Class and projected incidence rates of all Retired NFL Football Players who may receive Qualifying Diagnoses. The Court directed the parties to share the documentation described in their submissions with the Special Master. D.E. # 5658.

Guided by the Court's Memorandum Opinion and the Special Master, the parties worked from January to June to provide the Court with the assurance that "all Retired NFL Football Players who ultimately receive a Qualifying Diagnosis or their related claimants will be paid." *See* D.E. # 5657, at p. 10. These further analyses led to an uncapping of the deal and the new Settlement Agreement which is attached to the Motion which this Memorandum supports. Under the current Settlement Agreement the NFL Parties must pay all valid claims for the next 65 years, and the Monetary Award Fund is no longer fixed at $675 million. However, the significant award levels detailed in the Monetary Award Grid, attached as Exhibit B-3 to the Motion which this Memorandum supports, remain unchanged. While the Settling Parties remain undeterred in their belief that the $760 million deal originally struck would have been sufficient to compensate all Class Members with valid claims over the term of the Monetary Award Fund, the Settling Parties have now guaranteed payment of all valid claims without any concern that the Settling Parties' projections might have been inaccurate due to some unpredictable or

12

unforeseen events. In exchange for agreeing to uncap the deal, the NFL Parties required the inclusion in the new Settlement Agreement of additional measures designed to prevent fraudulent claims. Nevertheless, under the new deal, the NFL Parties remain responsible to provide all of the funding for the Monetary Award Fund, the BAP, and the Education Fund, as well as paying, either directly or through their funding of the Monetary Award Fund or the BAP, for the Class Notice costs, class attorneys' fees, and the fees and expenses of the Special Master, the Claims Administrator, and the BAP Administrator and certain fees of the Lien Resolution Administrator.

### III.    **MATERIAL TERMS OF THE SETTLEMENT**

####    A.    **Settlement Class and Subclasses**

The Settlement provides that the NFL Parties shall pay all Monetary Awards and Derivative Claimant Awards to Settlement Class Members who qualify for such awards, up to $75 million for the BAP, $10 million for the Education Fund, plus the cost for Class Notice, for the benefit of a nationwide Settlement Class consisting of three types of Claimants:

> (1) All living NFL Football Players who, prior to the date of the Preliminary Approval and Class Certification Order, retired, formally or informally, from playing professional football with the NFL or any Member Club, including American Football League, World League of American Football, NFL Europe League and NFL Europa League players, or were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and who no longer are under contract to a Member Club and are not seeking active employment as players with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club ("Retired NFL Football Players");

> (2) Authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased or legally incapacitated or incompetent Retired NFL Football Players ("Representative Claimants"); and

(3) Spouses, parents, children who are dependents, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player or deceased Retired NFL Football Player ("Derivative Claimants").

The Settlement Class consists of two Subclasses: Subclass 1 is defined as Retired NFL Football Players who were not diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order, and their Representative Claimants and Derivative Claimants; and Subclass 2 is defined as Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants, and the Representative Claimants of deceased Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to death or who died prior to the date of the Preliminary Approval and Class Certification Order and who received a post-mortem diagnosis of CTE. A Qualifying Diagnosis is defined as Level 1.5 Neurocognitive Impairment (early Dementia), Level 2 Neurocognitive Impairment (moderate Dementia), Alzheimer's Disease, Parkinson's Disease, ALS, and/or Death with CTE (post-mortem diagnosis prior to the date of the Preliminary Approval and Class Certification Order). *See* Exhibit 1 (Injury Definitions) to Settlement Agreement.

The proposed Settlement Class is clearly defined. Membership is ascertainable from the NFL Parties' records, the NFL's pension plans, and other objective criteria. Current NFL Football players are *not* included in the proposed Settlement Class. Additionally, persons who tried out for a Member Club or team of the American Football League, World League of American Football, NFL Europe League or NFL Europa League, but did not make a preseason,

14

regular season or postseason roster, practice squad, developmental squad, or taxi squad, are *not* included in the proposed Settlement Class.

### B.    Settlement Benefits

The proposed Settlement provides three potential sources of benefits for Settlement Class Members.  First, the BAP provides eligible Retired NFL Football Players the opportunity to obtain baseline neuropsychological and neurological examinations within a specified time period to determine whether they suffer from any cognitive impairment, and if so, to what degree.  For players diagnosed with Level 1 Neurocognitive Impairment,[6] BAP Supplemental Benefits will be provided based on need, and may include medical treatment and/or examination by Qualified BAP Providers, counseling and pharmaceuticals.  Second, Retired NFL Football Players diagnosed with Level 1.5 Neurocognitive Impairment (early Dementia),[7] Level 2 Neurocognitive

---

[6] Level 1 Neurocognitive Impairment is defined as follows:
(a) For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 1 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:
    (i)      Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a decline in cognitive function.
    (ii)     Evidence of moderate cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.
    (iii)    The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating scale Category 0.5 (Questionable) in the areas of Community Affairs, Home & Hobbies, and Personal Care.
    (iv)    The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.
(b)  Level 1 Neurocognitive Impairment, for the purposes of this Settlement Agreement, may only be diagnosed by Qualified BAP Providers during a BAP baseline assessment examination, with agreement on the diagnosis by the Qualified BAP Providers.

[7] Level 1.5 Neurocognitive Impairment is defined to be:
(a)  For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 1.5 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:
    (i)      Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a severe decline in cognitive function.
    (ii)     Evidence of a moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and

15

Impairment (moderate Dementia),[8] ALS, Alzheimer's Disease, or Parkinson's Disease, and

representatives of certain deceased Retired NFL Football Players diagnosed post-mortem with

---

memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

    (iii)       The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 1.0 (Mild) in the areas of Community Affairs, Home & Hobbies, and Personal Care. Such functional impairment shall be corroborated by documentary evidence (e.g., medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis. In the event that no documentary evidence of functional impairment exists or is available, then (a) there must be evidence of moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and (b) the Retired NFL Football Player's functional impairment, as described above, must be corroborated by a third-party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.

    (iv)       The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

(b)  For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis of Level 1.5 Neurocognitive Impairment, i.e., early dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 1(a)(i)-(iv) above, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(c)  For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Level 1.5 Neurocognitive Impairment, i.e., early dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 1(a)(i)-(iv) above, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology or neurocognitive disorders, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

[8] Level 2 Neurocognitive Impairment is defined to be:

(a)  For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 2 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

    (i)       Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a severe decline in cognitive function.

    (ii)       Evidence of a severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

    (iii)       The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 2.0 (Moderate) in the areas of Community Affairs, Home & Hobbies, and Personal Care. Such functional impairment shall be corroborated by documentary evidence (e.g., medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis. In the event that no documentary evidence of functional impairment exists or is available, then (a) there must be evidence of severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and (b) the Retired NFL Football Player's functional impairment, as described above, must be corroborated by a third-party

16

**-1155-**

CTE[9] will be eligible for a cash Monetary Award from the Monetary Award Fund, based on the retired player's age at the time of diagnosis, the number of NFL Football seasons played, and other applicable offsets agreed to by the Settling Parties. Representative and Derivative Claimants may apply for a Monetary Award as well. Third, the Settlement will establish an Education Fund to fund education programs promoting safety and injury prevention with regard to football players, including safety-related initiatives in youth football, and to educate Retired NFL Football Players regarding the NFL's medical and disability programs and other educational programs and initiatives.

Importantly, the Settlement does *not* require Settlement Class Members to prove that the Retired NFL Football Player's cognitive injuries were caused by NFL-related concussions or sub-concussive head injuries. Upon timely submission of a complete Claim Package, the Settlement Class Member will be eligible to receive benefits in accordance with the Settlement Agreement.

---

sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.

(iv)    The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

(b) For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis of Level 2 Neurocognitive Impairment, *i.e.*, moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) above, unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) is medically unnecessary because the Retired NFL Football Player's dementia is so severe, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(c) For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Level 2 Neurocognitive Impairment, *i.e.*, moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) above, unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) was medically unnecessary because the Retired NFL Football Player's dementia was so severe, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology or neurocognitive disorders, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

[9] ALS, Alzheimer's Disease, Parkinson's Disease and Death with Chronic Traumatic Encephalopathy are defined specifically in the Injury Definitions attached as Exhibit 1 to the Settlement Agreement.

17

Registration for Settlement benefits will be overseen by the Claims Administrator, who will establish and administer both online and hard copy registration methods. Unless good cause is shown, individuals must register within 180 days from the date that the Claims Administrator provides notice of registration methods and requirements. Purported Settlement Class Members and the NFL Parties, in certain circumstances, may challenge registration determinations to the Claims Administrator and may appeal that determination to the Court (which may, in its discretion, refer the matter to the Special Master), whose decision shall be final and binding.

Notably, Retired NFL Football Players are not precluded from participating in the Settlement as a result of having received benefits related to neurocognitive injuries pursuant to benefit programs provided under a Collective Bargaining Agreement ("CBA") with the NFL (*e.g.,* the 88 Plan) or because they signed releases and covenants not to sue the NFL pursuant to the Neuro-Cognitive Disability Benefit under Article 65 of the 2011 CBA. The NFL Parties have agreed not to assert any defense or objection to a Settlement Class Member's receipt of benefits under the Settlement Agreement on the ground that he executed the Article 65 release and covenant not to sue. As discussed below, apart from and in addition to Settlement benefits, Retired NFL Football Players are entitled to seek all applicable bargained-for benefits in the Collective Bargaining Agreements with the NFL.

### 1.  Baseline Assessment Program

The Settlement will create a BAP to evaluate retired players objectively for evidence of cognitive decline and provide medical treatment and further testing for any player found to be suffering from Level 1 Neurocognitive Impairment. In addition to detecting any cognitive impairment, the results of BAP examinations can be used as a comparison against any future tests to determine whether a Retired NFL Football Player's cognitive abilities have deteriorated.

18

The BAP examinations also serve to inform Retired NFL Football Players and their families of the player's current level of cognitive functioning.  The NFL Parties will make an initial deposit of $35 million to fund the BAP, and will pay an additional $40 million to continue funding the BAP, as necessary.

A BAP Administrator will be appointed to set up a network of qualified medical providers ("Qualified BAP Providers") to administer the baseline assessment examinations for Retired NFL Football Players.  A Special Master will be appointed for successive 5-year terms to oversee the BAP Administrator, among other responsibilities.[10]

All Retired NFL Football Players who are credited with at least one-half of an Eligible Season, as described below, and who timely register to participate in the Class Action Settlement, may participate in the BAP and receive a baseline assessment examination.  A baseline assessment examination includes a detailed, standardized neuropsychological examination performed by a neuropsychologist certified by the American Board of Professional Psychology (ABPP) or the American Board of Clinical Neuropsychology (ABCN), a member board of the American Board of Professional Psychology, in the specialty of Clinical Neuropsychology, and a basic neurological examination performed by a board-certified neurologist.  The deadline for receiving a baseline assessment examination depends on the age of the Retired NFL Football Player as of the Effective Date of the Settlement Agreement.  Retired

---

[10] In addition to overseeing the BAP Administrator, the Special Master will oversee the functions of the Claims Administrator, appointed to process claims for Monetary Awards and Derivative Claimant Awards, as described below.  If and when the Court determines, in consultation with Co-Lead Class Counsel and Counsel for the NFL Parties, that the successive 5-year terms for the Special Master should conclude, the Special Master's role and responsibilities will revert to the Court.  The NFL Parties have agreed that the annual compensation of the Special Master, which is capped at $200,000 per year, as well as his/her reasonable costs and expenses, will be paid by the Monetary Award Fund, which is funded by the NFL Parties.  The NFL Parties have agreed that the reasonable compensation, and reasonable out-of-pocket costs and expenses of the Claims Administrator also will be paid by the Monetary Award Fund, funded by the NFL Parties.  The BAP Fund (funded by the NFL Parties) will pay the reasonable compensation, and reasonable out-of-pocket costs and expenses of the BAP Administrator.

NFL Football Players 43 or older as of the Effective Date, and who elect to participate in the BAP, must receive the baseline assessment examination within two years of the Effective Date. Retired NFL Football Players under the age of 43 as of the Effective Date, and who elect to participate in the BAP, must receive the baseline assessment examination within 10 years after commencement of the BAP, or before they turn 45, whichever occurs first.  In the event a Retired NFL Football Player who is a member of Subclass 1 does not participate in the BAP, he remains eligible for a Monetary Award if he develops a Qualifying Diagnosis, except that any such Monetary Award will be reduced by ten percent (except for a diagnosis of ALS), unless the Retired NFL Football Player received his Qualifying Diagnosis prior to his deadline to receive a BAP baseline assessment examination.

Retired NFL Football Players who are diagnosed during a BAP baseline assessment examination with Level 1 Neurocognitive Impairment will receive BAP Supplemental Benefits that entitle them to medical testing and/or treatment, including, as needed, counseling and pharmaceutical coverage, within a network of Qualified BAP Providers and Qualified BAP Pharmacy Vendors.  If Retired NFL Football Players are diagnosed with Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment during a BAP baseline assessment examination, they may seek a cash Monetary Award from the Monetary Award Fund.

A web portal linked to the Settlement Website will be set up to assist Settlement Class Members with access to BAP services.  All eligible Retired NFL Football Players will be encouraged to take advantage of the BAP.  Further, subject to the reasonable informed consent of Retired NFL Football Players, in compliance with applicable privacy and health laws, and any other customary authorization, medical data generated through the Class Action Settlement will

be made available for use by those conducting medical research in cognitive impairment, safety and injury prevention.

### 2.    Monetary Awards and Derivative Claimant Awards

The largest component of the Settlement is the Monetary Award Fund, which funds provide for payment of cash Monetary Awards and Derivative Claimant Awards to Retired NFL Football Players diagnosed with Qualifying Diagnoses, as set forth in the Injury Definitions (attached as Exhibit 1 to the Settlement Agreement), and their Representative and Derivative Claimants.  A Qualifying Diagnosis is defined as Level 1.5 Neurocognitive Impairment (early Dementia), Level 2 Neurocognitive Impairment (moderate Dementia), Alzheimer's Disease, Parkinson's Disease, ALS and/or Death with CTE (post-mortem diagnosis prior to the date of the Preliminary Approval and Class Certification Order).  Qualifying Diagnoses shall be made by Qualified MAF Physicians, Qualified BAP Providers or otherwise appropriately credentialed medical professionals, as set forth in the Injury Definitions (*id*.) and Section 6.3 of the Settlement Agreement.  Details regarding the Retired NFL Football Player's Qualifying Diagnosis must be provided with the Settlement Class Member's Claim Package or Derivative Claim Package and will form the basis for the Claims Administrator's review and award determination.

### a)    Maximum Awards

The *maximum* Monetary Award for each Qualifying Diagnosis category is as follows:

| Qualifying Diagnosis | Maximum Award |
|---|---|
| ALS | $5 million |
| Death with CTE | $4 million |
| Alzheimer's Disease | $3.5 million |
| Parkinson's Disease | $3.5 million |
| Level 2 Neurocognitive Impairment | $3 million |
| Level 1.5 Neurocognitive Impairment | $1.5 million |

21

Monetary Awards will be processed by a Claims Administrator appointed by the Court. The costs of the Claims Administrator will be paid from the Monetary Award Fund, which is funded by the NFL Parties. Monetary Awards are based on the particular Qualifying Diagnosis that the retired player receives and will be downwardly adjusted based on the retired player's age at the time of that diagnosis and all other applicable Offsets. Generally, the younger a Retired NFL Football Player is when he receives a Qualifying Diagnosis, the greater the base compensation for the Monetary Award. *See* Monetary Award Grid, at Exhibit 3 to the Settlement Agreement. Conversely, the older a Retired NFL Football Player is when he receives a Qualifying Diagnosis, the lower the base compensation for the Monetary Award. At age 80 or older, the base Monetary Award for ALS becomes fixed at $300,000, before application of Offsets. *Id.* The base Monetary Awards for Retired NFL Football Players diagnosed at age 80 or older with Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or Death with CTE are fixed at $50,000, before application of Offsets, and for Level 1.5 Neurocognitive Impairment, the base award is fixed at $25,000, before application of Offsets. *Id.* The Award levels based on a Retired NFL Football Player's age at the time of the Qualifying Diagnosis and the percentage reduction of any applicable Offsets are laid out in the Settlement Agreement and Monetary Award Grid attached thereto.

All Monetary Awards will be adjusted upwards annually for inflation, beginning one year after the Effective Date, up to 2.5% per year, the precise amount subject to the sound judgment of the Special Master (or the Court if such time comes that the Co-Lead Class Counsel and Counsel for the NFL Parties agree that the Special Master's role is no longer necessary), based on consideration of the Consumer Price Index for Urban Consumers (CPI-U).

22

b)      **Supplemental Awards**

If, after receiving an initial Monetary Award, a Retired NFL Football Player becomes eligible for a larger Award (after Offsets) because of a different Qualifying Diagnosis, the retired player will be provided with a Supplemental Monetary Award to ensure that the retired player receives the maximum award to which he is entitled.

c)      **Credited Eligible Seasons**

Retired NFL Football Players who are credited with at least five Eligible Seasons will receive the maximum Monetary Award for their injury and their age, absent other applicable Offsets. For Retired NFL Football Players with fewer than five Eligible Seasons, the Monetary Award will be reduced anywhere between 10% (for players with 4.5 Eligible Seasons) and 97.5% (for players with 0 Eligible Seasons), as set forth in the following chart.

| Number of Credited Eligible Seasons | Percentage of Reduction in Monetary Award |
|---|---|
| 4.5 | 10% |
| 4.0 | 20% |
| 3.5 | 30% |
| 3.0 | 40% |
| 2.5 | 50% |
| 2.0 | 60% |
| 1.5 | 70% |
| 1.0 | 80% |
| 0.5 | 90% |
| 0 | 97.5% |

Pursuant to the Settlement Agreement, a Retired NFL Football Player earns one Eligible Season for each season in which the retired player was on an NFL or AFL Member Club's Active List on the date of three or more regular season or postseason games, or on the date of one or more regular or postseason games and then spent two regular or postseason games on a Member Club's injured reserve list or inactive list due to a concussion or head injury. A Retired

23

NFL Football Player earns one-half of an Eligible Season for each season in which the player was on an NFL or AFL Member Club's practice, developmental, or taxi squad for at least eight games, but for which he did not otherwise earn an Eligible Season.  Time spent playing for the World League of American Football, NFL Europe League, and NFL Europa League does not count towards, and is specifically excluded from, the calculation of an Eligible Season.  To determine the total number of Eligible Seasons credited to a player, all of the earned Eligible Seasons and half Eligible Seasons are summed together.  For example, if a retired player has earned two Eligible Seasons and three half Eligible Seasons, he will be credited with 3.5 Eligible Seasons, and his award will be reduced by 30%.

### d)    Offsets

In addition to Offsets for shorter football careers, Monetary Awards may be reduced significantly (by 75%) for Retired NFL Football Players who prior to receiving a Qualifying Diagnosis suffered a medically diagnosed stroke, which occurred prior to or after the time the Retired NFL Football Player played NFL Football, or a Traumatic Brain Injury unrelated to NFL Football play (such as in an automobile accident) that occurs during or after the time the Retired NFL Football Player played NFL Football, reflecting a presumptive attribution of the retired player's injury to non-NFL Football causes.  Retired NFL Football Players subject to these Offsets will have the opportunity to present clear and convincing evidence to the Claims Administrator that the stroke or brain injury is not related to the Qualifying Diagnosis in order to avoid the Offset.

In addition, as described above, a 10% reduction in Monetary Awards applies to those Qualifying Diagnoses obtained by Subclass 1 members outside the BAP (except for a diagnosis of ALS), unless the Retired NFL Football Player participates in the BAP or receives his

24

Qualifying Diagnosis prior to his deadline to receive a BAP baseline assessment examination. The purpose of this Offset is to encourage Retired NFL Football Players to make use of the BAP.

### e)    Lien Resolution

Once the Monetary Awards are calculated by the Claims Administrator, the Lien Resolution Administrator will administer the process for the identification and settlement of all applicable and legally enforceable liens, which may include, among others, those related to state or federal governmental payors, Medicare Parts A and B (as contemplated by the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)), Medicare Part C or Part D plans, Medicaid, and other state or federal governmental healthcare programs with statutory reimbursement or subrogation rights (such as TRICARE, the Department of Veterans Affairs, and Indian Health Services). The amount of any lien(s) shall be deducted from the Monetary Award or Derivative Claimant Award, along with the costs of the Lien Administrator, except for the Lien Administrator's costs related to lien verification, which costs shall be borne by the Monetary Award Fund (which is funded by the NFL Parties).

### f)    Derivative Claimant Awards

Derivative Claimants will be entitled to 1% of the Monetary Award received by the Retired NFL Football Players or Representative Claimants (for deceased, incompetent, or incapacitated retired players) through whom the relationship is the basis of the claim (such that the Retired NFL Football Player or Representative Claimant will receive 99% of the Award). If there are multiple Derivative Claimants, the 1% award will be divided among them based on the laws of the state where the Retired NFL Football Player to whom they are related is domiciled.

### g)    Appeals

Settlement Class Members and the NFL Parties have a right to appeal either a determination of whether a Settlement Class Member is entitled to a Monetary Award or Derivative Claimant Award, or the amount of the Award.  Co-Lead Class Counsel also have the right to submit papers in support of, or in opposition to, an appeal.  Appeals will be overseen by the Court, which may seek the advice of a panel of physicians appointed by the Court, as defined in Section 2.1(g) of the Settlement Agreement ("Appeals Advisory Panel") or the neuropsychologists selected to serve as consultants ("Appeals Advisory Panel Consultants"), as defined in Section 2.1(h).  The Court may, in its discretion, refer the appeal to the Special Master, who also may seek advice from the Appeals Advisory Panel or the Appeals Advisory Panel Consultants.  Appellants must present clear and convincing evidence in support of the appeal.  To discourage appeals that lack merit, Settlement Class Members will be charged a fee of $1,000 to appeal their claim determination; however, this sum will be refunded if the appeal is successful.  The NFL Parties may appeal Monetary Award or Derivative Claimant Award determinations in good faith.  If Co-Lead Class Counsel believe that the NFL Parties are submitting vexatious, frivolous or bad faith appeals, Co-Lead Class Counsel may petition the Court for the appropriate relief.

### h)    Funding

The Settling Parties consulted extensively with their own medical experts, actuaries, and economists, with the assistance of the court-appointed mediator.  *See* Phillips Declaration, at ¶ 8.  Plaintiffs' economists conducted thorough analyses regarding funding the Settlement to ensure that there would be enough money to provide benefits to all eligible Settlement Class Members, taking into account the size of the proposed Settlement Class and projecting the incidence rates

26

of each Qualifying Diagnosis over the term of the Settlement.  After hard-fought negotiations, the Settling Parties arrived at an aggregate sum that proposed Co-Lead Class Counsel, Class Counsel and Subclass Counsel believed was sufficient to compensate all Retired NFL Football Players who might be diagnosed with Qualifying Diagnoses and their Representative and Derivative Claimants.

However, in light of the Court's Memorandum Opinion of January 14, 2014 and Special Master Golkin's input, the parties opted to provide a guarantee that the Monetary Award Fund would be sufficient to provide compensation to all Retired NFL Football Players with Qualifying Diagnoses over the next 65 years.  Through further hard-fought negotiations, the parties reached agreement on a new deal, the current Settlement Agreement, which includes an uncapped Monetary Award Fund and an affirmative obligation on the part of the NFL Parties to pay all valid claims.

Within six months after the Effective Date of the current Settlement Agreement, $120 million earmarked for the Monetary Award Fund will be deposited into the Settlement Trust Account by the NFL Parties.  The NFL Parties shall make additional monthly deposits, as needed, based upon monthly reports from the Claims Administrator.   The Monetary Award Fund shall maintain a targeted reserve of $10 million through the tenth year of its existence;  a $5 million reserve for its eleventh through fiftieth years;  a $1 million reserve for its fifty-first through sixtieth years;  and a $250,000 reserve through its sixty-fifth year.  Proposed Co-Lead Class Counsel, Class Counsel and Subclass Counsel expect the 65-year term to be long enough to compensate the youngest Retired NFL Football Players in the event they develop Qualifying Diagnoses.

### 3.    Education Fund

The NFL Parties have agreed to contribute $10 million to establish an Education Fund for the benefit of the Settlement Class.  This fund will support education, as directed by the Court with input from Co-Lead Class Counsel, Counsel for the NFL Parties, and medical experts, into cognitive impairment, safety and injury prevention with regard to football players.  In addition, the Settling Parties have agreed that a portion of the Education Fund will be used to fund education programs benefiting Retired NFL Football Players and safety-related initiatives in youth football, among other programs, to be approved by the Court.  The fund also will have an education component that will inform Retired NFL Football Players and their families about the NFL's medical and disability benefits programs and other programs and initiatives that would inure to their benefit.

### 4.    Preservation of Collective Bargaining Benefits and Claims for Workers' Compensation

The Settlement preserves Retired NFL Football Players' rights to pursue any and all benefits under the current 2011 NFL Collective Bargaining Agreement, the 88 Plan, and any other current or future applicable collective bargaining agreement.  Participation in the Settlement will not affect a Retired NFL Football Player's ability to pursue any bargained-for benefits, including the NFL's Neuro-Cognitive Disability Benefit.

In addition, the Settlement will ensure that the provision included in Article 65 of the current CBA, Section 2—requiring that players execute a release of claims and covenant not to sue in order to be eligible for the NFL's Neuro-Cognitive Disability Benefit—will not be enforced or used against the Settlement Class Members in connection with this Settlement, except if they exclude themselves from the Settlement Class.  The NFL Parties have agreed not

to enforce that release with regard to Settlement benefits to the extent a Settlement Class Member previously signed it when submitting an application. Without the NFL's agreement on this point, certain Retired NFL Football Players would be barred from receiving any Settlement benefits and would be limited to benefits made available under the CBA only.

Moreover, as part of the release that Settlement Class Members will provide to the NFL Parties in exchange for the former's participation in the Settlement and right to Settlement benefits, Retired NFL Football Players will *not* be required to release or dismiss claims for workers' compensation or claims alleging entitlement to NFL CBA Medical and Disability Benefits.

### 5.    Waiver of Causation, Statutes of Limitations, and Other Defenses

The Settlement eliminates many serious obstacles that Retired NFL Football Players would have faced in the litigation, as summarized below in more detail. Moreover, even within the confines of the Settlement, Retired NFL Football Players (and their Representative Claimants) with a Qualifying Diagnosis do not have to prove or submit any evidence of causation in order to receive Monetary Awards. IN OTHER WORDS, THEY DO *NOT* NEED TO SHOW THAT THEIR QUALIFYING DIAGNOSES RESULTED FROM CONCUSSIONS RELATED TO NFL FOOTBALL. They only need to provide a qualified medical professional's diagnosis of a Qualifying Diagnosis and timely and completely submit the required paperwork and proof, as outlined in the Settlement Agreement.

In addition, currently undiagnosed Retired NFL Football Players can seek Monetary Awards if they later receive a Qualifying Diagnosis during the term of the Monetary Award Fund. Retired NFL Football Players who already received a Qualifying Diagnosis by the time of the issuance of the Preliminary Approval and Class Certification Order are entitled to Monetary

29

Awards regardless of when they played NFL Football or how long ago they may have sustained a concussion, except for Retired NFL Football Players who died prior to January 1, 2006.  No Monetary Awards will be made where the Retired NFL Football Player died prior to January 1, 2006, unless the Court determines that the claim of the pre-2006 decedent would not be barred by the applicable statute of limitations.  Absent the Settlement, these claimants would confront the same statute of limitations hurdle on wrongful death claims.

### 6.    Attorneys' Fees

The Settling Parties did not discuss the issue of attorneys' fees at any point during the mediation sessions (except to defer the issue), until *after* an agreement in principal was reached on all material Settlement terms providing benefits to the Settlement Class and Subclass Members and *after* the Term Sheet was inked, in an abundance of caution and consistent with *Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978).[11]  The NFL Parties have since agreed not to object to a petition for an award of class attorneys' fees and reasonable incurred costs by proposed Co-Lead Class Counsel, Class Counsel and Subclass Counsel, provided the amount requested does not exceed $112.5 million.  The $112.5 million to be paid by the NFL Parties is *in addition* to the amounts that the NFL Parties will pay to satisfy all Monetary Awards, up to $75 million that will fund the BAP Fund and $10 million that will fund the Education Fund, the costs for Class Notice and certain administrative costs (paid by the NFL Parties via the Monetary Award Fund or the BAP).  Unlike traditional common fund cases where attorneys' fees are obtained directly from the common fund, the Settlement Class is further benefitted by the separate payment of Class attorneys' fees by the NFL Parties.

---

[11] *Prandini* has since been overruled by *Evans v. Jeff D.*, 475 U.S. 717, 734-38 (1986) and the strict prohibition against negotiating fees together with the negotiation of the settlement no longer exists.  Nevertheless, that conservative convention was followed in the negotiation process in this case.

The Court will determine the amount of the Class attorneys' fee and cost award in accordance with applicable common benefit fee jurisprudence. Settlement Class Members will have an opportunity to comment on or object to these fees at an appropriate time. Having the NFL Parties pay Class attorneys' fees and reasonable incurred costs separate from the other amounts the NFL is paying under the Settlement is another very significant benefit to Settlement Class Members.

After the Effective Date, Co-Lead Class Counsel may petition the Court to set aside up to five percent (5%) of each Monetary Award and Derivative Claimant Award to facilitate the Settlement program and related efforts of Co-Lead Class Counsel, Class Counsel, and Subclass Counsel. These set-aside monies shall be held in a separate fund overseen by the Court. Any future petition for a set-aside will describe: (i) the proposed amount; (ii) how the money will be used; and (iii) any other relevant information (for example, the assurance that any "set-aside" from a Monetary Award or Derivative Claimant Award for a Settlement Class Member represented by his/her individual counsel will reduce the attorney's fee payable to that counsel by the amount of the "set-aside"). No money will be held back or set aside from any Monetary Award or Derivative Claimant Award without Court approval. The NFL Parties have represented that they believe that any such proposed set aside application is a matter strictly between and among Settlement Class Members, Class Counsel and the individual counsel for Settlement Class Members. The NFL Parties further represented that they will take no position on the proposed set aside and will take no position on the proposed set aside in the event such an application is made.

C.        **Releases, Covenant Not To Sue And Bar Order**

In exchange for the benefits provided under the Settlement Agreement, the Releasors will release all claims and dismiss with prejudice all actions and claims against, and covenant not to sue, the Released Parties in this litigation and all Related Lawsuits in this Court and other courts, in accordance with the terms of Article XVIII set forth in the Settlement Agreement.

In response to the Court's Memorandum Opinion at page 10, footnote 6, Section 18.5 of the prior Settlement Agreement has been removed.  Under the current Settlement Agreement Class Members that receive Monetary Awards will not be required to dismiss pending suits and/or forebear from bringing litigation relating to cognitive injuries against the National Collegiate Athletic Association and any other collegiate, amateur, or youth football organizations and entities.

As a condition to approval of the Settlement, the Settling Parties also intend to move the Court for a bar order and judgment reduction provision, as part of the Final Order and Judgment. *See* Exhibit 4 to the Settlement Agreement.  The bar order will bar other parties from seeking indemnification or contribution from the Released Parties for claims relating to this litigation.

Plaintiffs' claims against the Riddell Defendants will *not* be released or dismissed by the Settlement.

D.        **Class Notice**

The Settlement terms are complex, but must and will be explained in simple, clear notices to the Settlement Class.  To effectuate such notice, Co-Lead Class Counsel has worked with Katherine Kinsella, President of Kinsella Media, LLC, an advertising and legal notification firm specializing in the design and implementation of notification plans.  *See* Declaration of Katherine Kinsella ("Kinsella Declaration").  Indeed, members of Kinsella Media, LLC were involved with

32

creating the Federal Judicial Center's "'Illustrative' Forms of Class Action Notices," which appear on the Federal Judicial Center's website. The proposed Notices created for this case by Kinsella Media, LLC conform to those samples.

The Settling Parties estimate that the number of readily identifiable Settlement Class Members is over 20,000. In comparison, the settlement class in *Dryer v. NFL*,[12] which was finally approved on November 4, 2013, *Dryer v. National Football League*, Civil No. 09-2182-PAM/AJB, 2013 WL 5888231 (D. Minn. Nov. 1, 2013) and D.E. # 432, has a total of 27,347 retired players, with 21,289 living players and 6,058 deceased players. Co-Lead Class Counsel, Class Counsel and Subclass Counsel believe there are approximately an additional 2,000 AFL, World League of American Football, NFL Europa and NFL Europe players who are in the proposed Settlement Class, and who are not in the *Dryer* case, and several thousand other Settlement Class Members who were on preseason rosters only.

Many Retired NFL Football Players will be reachable through direct individual notice, due to the existence, through the NFL Parties and the NFL Players Association, of multiple lists identifying former NFL players. These sources include: the current Bert Bell/Pete Rozelle NFL Player Retirement Plan pension list; Retired NFL Football Player address data collected and used in the *Dryer* case; a list of NFL players active through 2010 compiled by STATS; a list of former NFL Europe, World League and NFL Europa players; and a list of former AFL players. Co-Lead Class Counsel will utilize: (1) the social security death index to determine additional deceased Retired NFL Football Players; (2) LexisNexis's relative search to find the nearest

---

[12] The *Dryer* case was finally approved in the federal district court of Minnesota. *Dryer* is a certified settlement class action, alleging that the NFL's use of former players' identities after the players' retirement violated their state law rights of publicity, the Lanham Act, and other state law provisions. The certified settlement class is "any Retired Player, and if a Retired Player is deceased, all of his respective heirs, executors, administrators, beneficiaries, successors, and assigns who own or control his Publicity Rights." D.E. # 262-1, at ¶¶ 1, 6.

relative or last person to live with the deceased Retired NFL Football Player; and (3) the national change of address database, as applicable, to get the most recent address for Settlement Class Members.

The proposed Notice Plan attached to the Kinsella Declaration (which is Exhibit C to the Motion) has multiple features to ensure compliance with Due Process. The Plan will include: (1) direct individual notice to identifiable Retired NFL Football Players and heirs of deceased Retired NFL Football Players; (2) paid publication notice in various media sources; and (3) notice to targeted third parties, such as nursing homes, designed to reach additional retirees who may be incapacitated or incompetent.

The Long-Form Notice included in the direct mailings will describe the Settlement in plain, easily understood language and advise Settlement Class Members of their rights regarding opting out of the Settlement and/or objecting thereto. The notice will explain to Settlement Class Members that it is necessary for them to register in order to be eligible for Settlement benefits. Notice will be sent to Settlement Class Members via first-class mail.

For paid media coverage, Co-Lead Class Counsel plan to use print, television, radio and Internet advertisements to reach Settlement Class Members, including Retired NFL Football Players, legal representatives, spouses, family members and heirs. Print advertisements will include full-page color ads in selected consumer magazines. Thirty-second television spots will appear on the NFL Network, as well as cable and broadcast outlets. Radio spots also will be used. Internet ads using non-static pre-roll, flash, and rich media are also planned. The Notice Plan will be implemented after Preliminary Approval of the Proposed Settlement, commencing with the posting of the notice on the Court's website. If and when Final Approval is granted, a Settlement Class Supplemental Notice will be used to advise Settlement Class Members of the

34

previously disclosed deadlines to register for participation in the Settlement, to participate in the BAP, and to submit Claim Packages or Derivative Claim Packages.

## IV.    ARGUMENT

### A.    Preliminary Approval of the Settlement Is Appropriate

There exists a strong judicial policy favoring pretrial settlement of complex class action lawsuits, where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.  *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010);  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation and it should therefore be encouraged."). Settlement is favored, in part, because of the complexity and size of class actions and the ability of a settlement to conserve judicial resources while providing meaningful relief.  *See Ehrheart*, 609 F.3d at 594-95 (the presumption in favor of settlement is "especially strong in class actions and other complex cases where substantial juridical resources can be conserved by avoiding formal litigation.") (citation and quotation marks omitted).

These principles were most recently reinforced forcefully by the Third Circuit in *Sullivan v. DB Investors, Inc.*, 667 F.3d 273, 311 (3d Cir. 2010) (*en banc*).  There, the Third Circuit sitting *en banc* recognized, especially in class actions, the "strong presumption in favor of voluntary settlement agreements."  *Id.*  Although *Sullivan* affirmed the class settlement of a lawsuit involving antitrust claims, in his concurring opinion, Judge Scirica commented upon personal injury class action settlements.  Judge Scirica noted that in the immediate aftermath of *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp*, 52 U.S. 815 (1999), personal injury class settlements were thought to be difficult to achieve.  *Id.* at 334. Recognizing this early reaction to *Amchem* to be erroneous, Judge Scirica observed anecdotally a

35

movement away from class settlements.  He noted that in the *Vioxx* litigation, before the Honorable Eldon E. Fallon, the parties settled personal injury claims in a fashion that was not subject to judicial scrutiny under Rule 23.  *See In re Vioxx Products Liability Litig.*, MDL No. 1657, Current Developments - November 9, 2007 (E.D. La.), available at http://vioxx.laed.uscourts.gov/; *In re Vioxx Products Liability Litig.*, 650 F.Supp.2d 549, 552-53 (E.D. La. 2009)(characterizing the settlement as a "voluntary opt-in agreement").  Despite the fact that the *Vioxx* litigation settled on a non-class basis and the problems presented by complex class actions post-*Amchem*, Judge Scirica recognized that public policy strongly supports the resolution of mass claims, such as those presented here, on a class basis that provides the structural, procedural and substantive guarantees of fairness.  Otherwise, parties seeking to settle mass harm claims would be forced to do so outside direct judicial supervision, contrary to the public interest.  *Id.* at 340.

Proof that litigants are not seeking to avoid scrutiny under Rule 23 in connection with personal injury claims exists within Judge Fallon's courtroom.  He recently has approved a flurry of class actions settling personal injury claims.  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2013 WL 499474, *10 (E.D. La. Feb. 7, 2013) ("After considering all available scientific evidence, the Court finds that the Global Settlement and other pending settlements provide for personal injuries in a manner that is fair, reasonable, and adequate.").  Before *Chinese-Manufactured Drywall*, Judge Fallon also had certified a similar property damage and personal injury class action.  *See Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597 (E.D. La. 2006).

Indeed, one of the largest (if not, the largest and most innovative) personal injury class actions in history occurred within the Third Circuit – *In re Diet Drugs (Phentermine,*

36

*Fenfluramine, Dexfenfluramine) Products Liability Litig.*, 2000 WL 1222042 (E.D. Pa. Aug. 28,

2000)(C.J. Bechtle & Bartle).  The Third Circuit has referred to this multi-state personal injury

settlement as "a landmark effort to reconcile the rights of millions of individual plaintiffs with

the efficiencies and fairness of a class-based settlement."  *In re Diet Drugs*, 582 F.3d 524, 544 n.

37 (3d Cir. 2009).  Not surprisingly, the Supreme Court in *Amchem* allowed for the possibility of

personal injury class actions in appropriate circumstances.  *See Amchem*, 521 U.S. at 625 ("the

text of the Rule does not categorically exclude mass tort cases from class certification.").[13]  The

structure of this multi-state personal injury class is remarkably similar to *the Diet Drug*

settlement, although it is by far smaller and less prolix.

---

[13] Since *Sullivan* was decided, Judge Jordan, the author of the dissent in *Sullivan*, along with Judges Scirica and
Fisher, recently reviewed the settlement of a racial discrimination class action under the Fair Housing Act, 42 U.S.C.
§ 3605, and the Equal Credit Opportunity Act, 15 U.S.C. §1691.  *See Rodriguez v. National City Bank*, 726 F.3d 372
(3d Cir. 2013).  The *Rodriguez* class plaintiffs had sought to prove disparate overall impact amongst class members
by using a preliminary statistical analyses employing regression analysis of bank loans.  Following a mediation, the
parties agreed to a class action settlement.  The district court (Judge Robreno) preliminarily approved the class and
notice issued.  Prior to final approval, however, the United States Supreme Court handed down its opinion in *Wal-
Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (U.S. 2011).  The cases bore many similarities in that the facts alleged in
*Rodriguez*, as in *Dukes*, turned on the subjective decision making by multiple individual actors, rather than a
uniform policy applied by the defendant to the class as a whole.  The district court, applying *Dukes*, found that the
allegations of the class complaint could not establish overall impact or any direct policy that applied to the class as a
whole.  Nor, given the nature of the proposed proof, could the class mechanism establish discrimination by
individual loan officers.  As such, the district court declined to approve the settlement or certify the class.  Although
National City Bank initially supported the settlement in the district court, on appeal it switched positions and
opposed the settlement.  In this unusual procedural posture, the Third Circuit considered whether the settlement was
fair, reasonable and adequate, and whether the requirements of FED. R. CIV. P. 23 had been met.  Under the
deferential standard of review given to a district court decision to certify or to not certify a class, the Court of
Appeals affirmed the district court's discretionary finding that there was insufficient evidence of commonality
presented by the class proponent's preliminary statistical analysis.  *Rodriguez*, 726 F.3d at 380-81.  The Third
Circuit found that plaintiffs "have not shown that [the bank's employment policy] affected all class members in all
regions and bank branches in a common way."  *Id.* at 385.  *Rodriguez* and *Dukes* address a situation far different
from the present case.  Here, unlike in *Dukes* or *Rodriguez*, the Complaint sets out claims and causes of all injuries
suffered by class members that are allegedly attributable directly to all the Defendants, with no intermediary actors
whose illegal behavior would be the ultimate source of liability.  *See infra* at Commonality Section, at Argument
Section IV.B.1(b).  The Complaint sets out the specific duties allegedly owed by the NFL, the alleged specific
breaches of those duties by the NFL, and the consequent harm suffered by the proposed Class.  Those are the
common issues that define the causes of action in the Class Action Complaint, and they form the basis for the
Settlement.

Federal Rule of Civil Procedure 23(e) requires court approval for any compromise of a class action. *See Amchem*, 521 U.S. at 617; *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986); *Sullivan*, 667 F.3d at 295; *In re Processed Egg Prods. Antitrust Litig. ("Processed Egg")*, 284 F.R.D. 249, 259 (E.D. Pa. 2012). Approval of a class action settlement involves a two-step process. First, counsel submits the proposed terms of settlement to the court for a preliminary fairness evaluation. *See* Manual for Complex Litigation, § 21.632 (4th ed. 2004) (hereinafter "MCL 4th"); *see also* 4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11:25, at 38-39 (4th ed. 2002) (hereinafter "NEWBERG ON CLASS ACTIONS") (endorsing two-step process). If a preliminary evaluation of fairness is made, the second step is to conduct a formal fairness and final approval hearing after notice has been disseminated to the settlement class members.[14] *Id.* At this time, Plaintiffs request only that this Court grant preliminary approval.

As a result of the Court's having denied without prejudice the motion for entry of the Proposed Preliminary Approval and Class Certification Order, and having directed the parties to work with the Special Master, the Monetary Award Fund has now been uncapped, thus adding a level of protection for the Settlement Class Members and a level of comfort for the Court, to insure that all those with Qualifying Diagnoses will be paid. Courts have recognized the value in an uncapped deal. *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 918 (E.D. La. 2012) (holding that "the claims frameworks offering

---

[14] The fairness, reasonableness, and adequacy of the settlement are assessed in the second step of the process at a final hearing after settlement class members have had an opportunity to opt out from or object to the settlement. The factors considered for final approval of a class settlement include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Sullivan*, 667 F.3d at 319-20 (citations omitted).

generally uncapped compensation ensure that a benefit paid to one member of the class will in no way reduce or interfere with a benefit obtained by another member. This Settlement is not a zero-sum game"). *See also In re Deep Water Horizon*, 739 F.3d 790, 796, 813 (5th Cir. 2014) (recognizing and agreeing with district court's assessment of the uncapped deal);[15] *In re Prudential Ins.*, 148 F.3d at 328.

A court's review of preliminary approval is less stringent than during final approval. *See Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007); MCL 4th § 21.63 (2004) ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval."). There need not be a "definitive proceeding on the fairness of the proposed settlement," and the court must make clear that "the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *Processed Egg*, No. 08-md-02002, (E.D. Pa. July 15, 2010) (Order Preliminarily Approving Settlement at 3 n.1) (D.E. #387) (quoting *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983)); *see also In re General Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (distinguishing between preliminary approval and final approval); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *1-2 (E.D. Pa. May 11, 2004) (same).

In determining whether preliminary approval is warranted, the sole issue before the Court is whether:

---

[15] On March 3, 2014, the Fifth Circuit concluded that the injunction preventing the payment of claims should be dissolved, but ordering that the injunction remains in place until the mandate of the court is issued. *In re Deep Water Horizon,* 744 F.3d 370 (2014). On June 9, 2014, the application to the Supreme Court to recall and stay the mandate was denied. *BP Exploration & Production Inc. v. Lake Eugenie Land & Development, Inc*., No. 13A1177, 2014 WL 2566067 (U.S. June 9, 2014).

the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval.

*Mehling*, 246 F.R.D. at 472 (citations omitted); *Mack Trucks, Inc. v. Int'l Union, UAW*, No. 07-3737, 2011 WL 1833108, at *2 (E.D. Pa. May 12, 2011) (stating same standard); *Tenuto v. Transworld Sys.,* No. 99-4228, 2001 WL 1347235, at *1 (E.D. Pa. Oct. 31, 2001) (same); *see also* MCL 4th § 21.633.   Under Rule 23, a settlement falls within the "range of possible approval," if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy and reasonableness—will be satisfied.  *See Mehling*, 246 F.R.D. at 472 (at preliminary approval stage, courts inquire as to whether "the settlement appears to fall within the range of possible approval" under Rule 23(e)).   In making this preliminary determination, some courts consider whether: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.[16]  *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003);  *see also General Motors Corp.*, 55 F.3d at 785.

Here, as explained below, there are no grounds to doubt the fairness of the proposed Settlement and Plaintiffs, without opposition from the NFL Parties, respectfully request that this Court preliminarily approve the proposed Settlement.

---

[16] Although some courts list the fourth factor as part of the preliminary evaluation analysis, it is more properly considered at the final fairness hearing, after notice to class members has been disseminated.  Nonetheless, while the total number of opt outs cannot be quantified at this time, the participation of Co-Lead Class Counsel, Class Counsel and Subclass Counsel throughout the negotiation process protects the interests of all members of the Settlement Class and supports the presumptive reasonableness and fairness of the Settlement and the settlement process.

1.    **The Proposed Settlement Is the Product of Good Faith, Extensive Arm's Length Negotiations**

Whether a settlement arises from arm's length negotiations is a key factor in deciding whether to grant preliminary approval. *See In re CIGNA Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898, at *2 (E.D. Pa. July 13, 2007) (noting that a presumption of fairness exists where parties negotiate at arm's length, assisted by a retired federal judge who was privately retained and served as a mediator); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arms-length negotiations and highlighting the fact that the negotiations included "two full days of mediation"); *In re Auto. Refinishing Paint Antitrust Litig*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (preliminarily approving class action settlement that "was reached after extensive arms-length negotiation between very experienced and competent counsel"); *see also* NEWBERG ON CLASS ACTIONS § 11:41 (noting that courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval"). Such is the case here.

The Settling Parties participated in settlement discussions under the auspices of retired United States District Court Judge Layn R. Phillips. *See generally* Phillips Declaration (Exhibit D to this Motion). From the beginning, the sessions involved Plaintiffs' Co-Lead Class Counsel, Christopher A. Seeger and Sol Weiss, and counsel for the NFL Parties. Additionally, proposed Class Counsel, Steven C. Marks and Gene Locks, and Subclass Counsel Arnold Levin and Dianne M. Nast, were brought into the process on behalf of Plaintiffs. Some members of the PEC participated as well. Toward the conclusion of the mediation process, several NFL franchise owners, representing the NFL team owners collectively, and the Commissioner of the

NFL, also were brought into the process. At all times, the negotiations were conducted at arm's length and sometimes the negotiations were quite contentious.

In addition to the Parties within the litigation, multiple consultants were brought in to flesh out the details of an agreement as part of the settlement process. The Settling Parties each retained multiple medical, actuarial, and economic experts to determine, develop and test an appropriate settlement framework to meet the needs of Retired NFL Football Players suffering from, or at risk for, the claimed injuries. The Settling Parties discussed settlement structures, baseline testing, and injury categories during the negotiations.

Judge Phillips guided the Settling Parties through a grueling mediation period of nearly two months, during which the Parties attended numerous mediation sessions, and aggressively asserted their respective positions. Although amicable, the discussions were at times contentious, and both sides often required Judge Phillips' input in order to resolve contested issues. *See* Phillips Declaration, at ¶¶ 5-6. In the end, the Settling Parties arrived at an agreement in principal during hard-fought, contentious and arm's length negotiations.

Further, the Court appointed Special Master Golkin in December of 2013 and, following the denial without prejudice of the prior motion for preliminary approval, tasked the Special Master with reviewing the analyses conducted by the actuarial consultants concerning the sufficiency of the then fixed amount of the Monetary Award Fund. Through this process, despite the Parties' confidence in the analyses by the actuarial consultants, in order to guarantee payment in the case of unpredictable events, the parties worked to reach the current Settlement Agreement with an uncapped Monetary Award Fund.

   2.    **The Investigation of Both Plaintiffs' Claims and the NFL Parties'
         Defenses Supports Preliminary Approval**

Although the Settling Parties have not reached the discovery stage of litigation,[17]

proposed Co-Lead Class Counsel, Class Counsel and Subclass Counsel possess adequate

information concerning the strengths and weaknesses of the litigation against the NFL Parties.

Proposed Co-Lead Class Counsel, Class Counsel and Subclass Counsel thoroughly investigated

the claims brought in the Class Action Complaint, researched and briefed opposition papers in

response to the NFL Parties' motions to dismiss on preemption grounds, and exchanged

information with the NFL Parties during negotiation and mediation sessions, including expert

calculations of damages and Settlement Class Members' injuries. As discussed more fully *infra*,

the significant legal challenges for each side, should the litigation continue, support preliminary

approval of the proposed Settlement. Proposed Co-Lead Class Counsel, Class Counsel and

Subclass Counsel are especially cognizant of the toll imposed upon the plaintiff client base by

continued prosecution of litigation towards an uncertain result, in contrast to the certitude

presented by the proposed Settlement. This factor is a significant incentive to resolve the

litigation.

In addition, the proponents of the Settlement are highly experienced in complex class

action litigation. The Class and Subclasses are represented by lawyers who have extensive

complex class action experience. Proposed Co-Lead Class Counsel, Christopher A. Seeger of

---

[17] Courts have preliminarily approved class action settlements where the litigation is in its early stages and minimal discovery has occurred. *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012) (preliminarily approving class action settlement when "no formal discovery was conducted in this case during the time of the . . . Settlement negotiations or agreement[.]"); *Gates* v. *Rohm & Haas Co.*, 248 F.R.D. 434, 444 (E.D. Pa. 2008) (preliminarily approving class settlement when parties had not yet conducted discovery on the merits). *See also Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *5 (S.D. Cal. Apr. 9, 2014)("In regards to class action settlements, 'formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.'") (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

Seeger Weiss LLP, and Sol Weiss of Anapol Schwartz, Class Counsel, Gene Locks of Locks Law Firm, and Steven C. Marks of Podhurst Orseck P.A., and Subclass Counsel, Arnold Levin of Levin Fishbein Sedran & Berman and Dianne M. Nast of Nast Law LLC, are all members of the court-appointed PEC and/or the Steering Committee. The Court is familiar with each counsel's experience after the vetting process of the appointment of counsel. They are highly competent counsel, each with decades of experience litigating complex class action and multidistrict cases.

### 3. There Is No Preferential Treatment of Certain Settlement Class Members and Class Representatives Support the Settlement

Although formal notice of the Settlement has not yet been disseminated, and, therefore, no formal objections have been made, the proposed Settlement treats all Settlement Class Members fairly and does not provide undue preferential treatment to any individual Settlement Class Member or Subclass Member. The Settlement Class Members—composed of: (1) all Retired NFL Football Players; (2) the legal representatives of deceased, incompetent or incapacitated Retired NFL Football Players; and (3) family members or others with a legal right to sue independently or derivatively based on their relationship to the Retired NFL Football Player—are readily ascertainable and identifiable using objective criteria.[18] All Settlement Class Members are invited to be part of the Settlement Class and no interests are excluded.

Moreover, the Settling Parties created two Subclasses, each with its own representation during the Settlement negotiations to ensure that all Settlement Class Members' interests were protected. Subclass 1 includes Retired NFL Football Players who were not diagnosed with a

---

[18]    This Class definition complies with the requirements of the Third Circuit's recent decision in *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013), and *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593 (3d Cir. 2012). This is *not* a case where "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials[.]'" *Marcus*, 687 F.3d at 593.

Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order, and their Representative and Derivative Claimants.  Subclass 2 includes Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to the Preliminary Approval and Class Certification Order and their Representative and Derivative Claimants, and the Representative Claimants of deceased Retired NFL Football Players who were diagnosed with a Qualifying Diagnoses prior to death or who died prior to the date of the Preliminary Approval and Class Certification Order and who received a post-mortem diagnosis of CTE.  Subclass Counsel for the separate subclasses ensure that their respective clients' interests were protected and that currently diagnosed players were not favored over retired players without a diagnosis who may not develop diagnosable injuries (if ever) until years in the future (or vice versa).

### 4.    There Are No Other "Obvious Deficiencies" To Cast Doubt on the Proposed Settlement's Fairness

As explained above, the complexity, expense, uncertainty, and likely duration of the litigation militate in favor of completing the settlement process.  The Settlement defines a clearly identifiable and ascertainable Settlement Class, contains the material economic terms of the agreement, the manner and form of notice to be given to the Settlement Class, the contingencies or conditions to the Settlement's final approval, and other relevant terms.  Moreover, the NFL Parties have agreed not to object to the mediator's proposal of a maximum class attorneys' fee and reasonably incurred costs award of $112.5 million *in addition to* the amounts that the NFL Parties will pay to fund the Monetary Award Fund (previously capped at $675 million), up to $75 million for the BAP Fund, $10 million for the Education Fund, and costs for Class Notice, including certain administrative costs funded via the Monetary Award Fund or the BAP.  *See* NEWBERG ON CLASS ACTIONS § 14:6 (indicating that attorneys' fees of between 22% and 33% is

normal for common fund cases); *Tenuto*, 2001 U.S. Dist. LEXIS 17694 at *4 (preliminarily

approving class action settlement where attorneys' fees were 30% of the fund); *In re Smithkline*

*Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990) (noting that the general range

of attorneys' fees in common fund cases is 19% to 45%). The payment by the NFL Parties of

attorneys' fees in addition to the Settlement Fund is a significant benefit to Settlement Class

Members. The Court retains the final authority to determine the ultimate attorneys' fee and cost

award.

### B. The Settlement Class and Subclasses Should Be Conditionally[19] Certified for Settlement Purposes

Class actions certified in conjunction with settlements are well recognized. *See*, *e.g.*,

*Sullivan*, 667 F.3d at 311; *Processed Egg*, 284 F.R.D. at 253-54. The Court must consider

whether the settlement class proposed is appropriate under FED. R. CIV. P. 23. *See Amchem*, 521

U.S. at 620; *Rodriguez v. City National Bank*, 726 F.3d 372, 380 (3d Cir. 2013); *In re Warfarin*

*Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004); *Sullivan*, 667 F.3d at 296; *Processed*

*Egg*, 284 F.R.D. at 253-54. The *Manual for Complex Litigation (Fourth)* advises that in cases

presented for both preliminary approval and class certification, the "judge should make a

---

[19] We recognize that the 2003 Amendment to Rule 23(c) deleted the provision that a class certification "may be conditional." Nevertheless, district courts have continued to entertain and grant conditional or provisional class certification in the settlement context on preliminary approval and appellate courts have affirmed same, as long as the requisite "rigorous analysis" was conducted. *See*, *e.g.*, *In re Chinese-Manufactured Prods. Liab. Litig.*, 2012 WL 92498 (E.D. La. Jan. 10, 2012) (conditionally certifying settlement class); *Collins v. Cargill Meat Solutions, Corp.*, 274 F.R.D. 294, 304 (E.D. Calif. 2011) ("Settlement Class is conditionally certified"); *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp.2d 601, 608 (W.D.N.Y. 2011) ("a district court may conditionally certify a class under Rule 23, provided that the requirements of Rule 23(a) and (b) are met."); *In re Checking Account Overdraft Litig.*, 2011 WL 2258458, *5 (S.D. Fla. 2011) ("At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the 'range of reasonableness'"); *Jones v. Casey's General Stores, Inc.*, 266 F.R.D. 222, 226-27 (S.D. Iowa 2009) (having found "that the class and collective 'meets the requirements for certification under Fed.R.Civ.P. 23 in the settlement context[,]' ... the Court conditionally approved the Settlement Class"); *In re Wireless Facilities, Inc. Secs. Litig. II*, 253 F.R.D. 607, 610 (S.D. Ca. 2008) ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes."); *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 683 (D. Kan. 2008).

preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."  MCL 4th, § 21.632.

Under Rule 23, Plaintiffs must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defense of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  The court is to apply a "rigorous analysis" to insure that each of the requirements of Rule 23 are met.  *See Sullivan*, 667 F.3d at 306.  However, when a court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620;  *see also Sullivan*, 667 F.3d at 322 n.56 (same).  Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  Under the rigorous analysis standard, the Settlement easily meets each of the requirements of Rule 23(a) and Rule 23(b)(3) for the proposed Settlement Class and Subclasses.

## 1. The Settlement Class and Subclasses Meet the Requirements Under Rule 23(a)

### a) Numerosity

Rule 23(a)(1) requires that a class be "so numerous that their joinder before the Court would be impracticable."  *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 232 (E.D. Pa. 2012).  In these MDL proceedings, thousands of Retired NFL Football Players have filed suit against the NFL Parties alleging entitlement to damages for injuries sustained as a result of

47

traumatic head impacts, including concussions, received during their NFL Football careers, and/or medical assessments to determine whether they have suffered any cognitive impairment. There are over 20,000 Settlement Class Members, including Retired NFL Football Players, Representative Claimants, and Derivative Claimants based upon the records of the NFL Parties. The numerosity requirement of Rule 23(a) is, therefore, easily met here. *See Stewart v. Abraham*, 275 F.3d 220, 227-28 (3d Cir. 2001) (noting that there is no minimum number to satisfy numerosity and observing that generally requirement is met if potential number of plaintiffs exceeds 40).

### b) Commonality

FED. R. CIV. P. 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." "A finding of commonality does not require that all class members share identical claims." *In re Warfarin*, 391 F.3d at 530 (citation and internal quotation marks omitted). Indeed, the commonality element requires only that plaintiffs "share at least one question of fact or law with the grievances of the prospective class." *Id.* at 527-28 (citations omitted). Following the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes,* it remains the case that "even a single common question will do." 131 S.Ct. 2541, 2556 (U.S. 2011) (internal quotation marks and alterations omitted).

As per *Dukes*, to satisfy Rule 23's commonality requirement, class claims "must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 131 S. Ct. at 2551. The Supreme Court explained that the key consideration in assessing commonality is not whether the class raises common claims,

but whether a class action can "generate common answers apt to drive the resolution of the litigation." *Id.*

Applying these principles, it is evident that the commonality requirement of Rule 23(a)(2) is easily met here. Questions and answers surrounding the dangers of playing NFL Football, the impairment of cognitive abilities caused by concussions, and the knowledge of the NFL Parties as to the health risks presented by football-related impacts to the head are common to Plaintiffs and the other members of the Settlement Class, thereby satisfying Rule 23(a)(2)'s commonality requirement. *See In re School Asbestos Litig.*, 789 F.2d 996, 1009 (3d Cir.), *cert. denied*, 479 U.S. 852 (1986) (affirming commonality based upon common factual issues such as "the health hazards of asbestos, the defendants' knowledge of those dangers, the failure to warn or test, and the defendants' concert of action or conspiracy in the formation of and adherence to industry practices. The court also believed that the proof of these matters would not vary widely from one class member to another.").

The Supreme Court in *Dukes* reversed certification of a class of female employees who asserted Wal-Mart engaged in a discriminatory pattern of conduct, reasoning that Wal–Mart's decision to give local supervisors discretion over employment matters "is just the opposite of a uniform employment practice that would provide the commonality needed for a class action." 131 S.Ct. at 2554. In contrast, in this case the NFL Parties voluntarily undertook to study head impacts in football, when they formed the Mild Traumatic Brain Injury Committee ("MTBI Committee"). Plaintiffs allege that the NFL Parties used the MTBI Committee to fraudulently conceal and to affirmatively misrepresent the long-term effects of these injuries. The answer to the question whether the NFL Parties engaged in such fraudulent concealment and/or affirmative misrepresentation is an answer which would drive the resolution of the litigation – it is central to

49

the validity of the claims.  *See id*. at 2551 (Plaintiffs' "claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").  Thus, commonality is satisfied.

### c) Typicality

FED. R. CIV. P. 23(a)(3) requires that the class representatives' claims be "typical of the claims . . . of the class."  As the Third Circuit explained:

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.

*Baby Neal v. Casey*, 43 F.3d 48, 57-58 (3d Cir. 1994); *see also In re Warfarin*, 391 F.3d at 532 (finding typicality prong met where "claims of representative plaintiffs arise from the same alleged wrongful conduct");  *In re Blood Reagents*, 283 F.R.D. at 233 ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class.") (citation and quotation marks omitted).  "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class."  NEWBERG ON CLASS ACTIONS § 3:13.

Plaintiff Class Representatives meet the typicality prong. Shawn Wooden is a Retired NFL Football Player who has not been diagnosed with a Qualifying Diagnosis and is a representative of Subclass 1.  He has sued the NFL Parties seeking medical monitoring in the form of baseline assessment screening to determine whether he has any neurocognitive

50

impairment owing to his years of playing NFL Football. If he is diagnosed with a Qualifying Diagnosis in the future, he will seek a Monetary Award.

Kevin Turner is a Retired NFL Football Player who has been diagnosed with ALS. He played eight seasons in the NFL. He is a representative of Subclass 2 and seeks compensation from the NFL Parties for his injuries.

Both of the Subclass Representatives seek to hold the NFL Parties liable for damages resulting from the NFL Parties' alleged failure to warn and concealment of the dangers of NFL Football. Their claims are typical of the other Settlement Class Members in their respective Subclasses.

### d)    Adequacy of Representation

FED. R. CIV. P. 23(a)(4) requires representative parties to "fairly and adequately protect the interests of the class." This requirement "seeks to uncover conflicts of interest between the named parties and the class they seek to represent." *In re Warfarin*, 391 F.3d at 532. This requirement is satisfied here, as the named Plaintiffs vigorously have pursued the claims of the Settlement Class and the Subclass they purport to represent, and there is no disabling intra-class conflict.

The named Plaintiffs' interests are aligned with those of the Settlement Class and their respective Subclasses. Plaintiffs have filed the Class Action Complaint to seek baseline assessment examinations and compensation for their neurocognitive injuries and damages. These claims are co-extensive with those of the absent Settlement Class Members. All Settlement Class Members, like Plaintiffs, share an interest in obtaining redress from the NFL Parties for their alleged negligence and fraud. And all Settlement Class Members who are Retired NFL Football Players, like Plaintiffs, have suffered repetitive blows to the head as NFL

51

Football players, and have alleged a heightened risk of developing severe neurocognitive impairments as a result of those repetitive blows.  Thus, the interests of all Settlement Class Members – including those with a present Qualifying Diagnosis and those at risk of developing significant neurocognitive impairment in the future – have been accounted for through the Settlement's BAP Fund and Monetary Award Fund.

Additionally, all eligible Settlement Class Members who timely and properly register under the Settlement Agreement may participate in the BAP and, if applicable, seek Monetary Awards or Derivative Claimant Awards.  The award amount paid to any one Settlement Class Member has no bearing on the amount payable to any other (except between Derivative Claimants if there are is more than one asserting a valid claim based on the same Retired NFL Football Player).  This is particularly true now that the MAF is uncapped – there is no danger of the fund being depleted before the youngest Class Members develop Qualifying Diagnoses.  That the Monetary Award Grid, at Exhibit 3 to the Settlement Agreement,  provides for different levels of compensation for different impairments "is simply a reflection of the extent of the injury that certain class members incurred and does not clearly suggest that class members ha[ve] antagonistic interests."  *In re Insurance Brokerage Antitrust Litig.*, 579 F.3d 241, 272 (3d Cir. 2009);  *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999) ("[A]lmost every settlement will involve different awards for various class members.");  *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 239 (S.D. W.Va.  2005) ("By nature of the settlement, the parties have negotiated values to assign to claims based on the severity of physical injury.  [The Court] do[es] not consider the assignment of a lower value to claims where injuries are less serious to be evidence of conflict.").

Moreover, unlike the failed settlements in *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), the proposed Settlement here provides "structural assurance of fair and adequate representation for the diverse groups and individuals affected." *Amchem*, 521 U.S. at 627.  By dividing the Settlement Class into two Subclasses and providing each Subclass with its own counsel, the Settlement has cured any antagonism that may exist between the interests of those Settlement Class Members who have already been diagnosed with a Qualifying Diagnosis (Subclass 2) and those who have not (Subclass 1).  *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330 (N.D. Ohio 2001) (holding that subclasses cured potential intra-class conflict); *cf. Dewey v. Volkswagen Aktiengsellschaft*, 681 F.3d 170, 189-90 (3d Cir. 2012) (holding that dividing class into subclasses on remand would satisfy adequacy requirement).

Also, the Settlement further protects the interests of those who may develop severe neurocognitive impairments in the future by: (i) creating a Monetary Award Fund that is not capped; (ii) indexing the Monetary Awards for inflation; and (iii) providing eligible Settlement Class Members with Supplemental Monetary Awards, if and when they are diagnosed with additional Qualifying Diagnoses.  *See In re Diet Drugs Prods. Liab. Litig.*, No. 1203, 99-20593, 2000 WL 1222042, *49 (E.D. Pa. Aug. 28, 2000) (holding that "step-up" provision and inflation indexing provided adequate structural protections), *aff'd without opinion*, 275 F.3d 34 (3d Cir. 2001);  *see also In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d 141, 147 (3d Cir. 2005) ("The District Court specifically found that this Settlement Agreement includes structural protections to protect class members with varying diagnoses, pointing to the ability of a particular class member to 'step up' to higher compensation levels as their disease progresses.").

In addition, since all Settlement Class Members who are Retired NFL Football Players, are aware, of course, that they suffered impacts to the head while playing NFL Football, and the identities of over 20,000 potential Settlement Class Members are already known, Class Members are readily ascertainable, can be notified effectively, and can make informed decisions about whether to opt out of the Settlement Class.  Consequently, they stand in sharp contrast to the conflicting, amorphous, and sprawling classes in *Amchem* and *Ortiz*, who numbered in the tens of millions, could not be identified in advance, and might well have been unaware that materials in their homes or workplaces contained the asbestos at issue in those actions.  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 269 (2d Cir. 2006) (distinguishing *Amchem* on the grounds that "all members of the [class at issue] have been identified, have been given notice of the settlement, and have had the opportunity to voice objections or to opt out entirely");  *Diet Drugs*, 2000 WL 1222042 at *46 (holding that there was no *Amchem* "futures" problem because "all class members are aware of their exposure to [the subject drugs]").

Indeed, unlike *Amchem*, where the settlement class included members who were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods, and who may not even have been aware they were exposed, and some who suffered no physical injury or had only asymptomatic pleural changes, and did not have lung cancer, asbestosis or mesothelioma, the proposed Settlement Class here has a great deal of cohesion as all Retired NFL Football Players and their families are aware they played NFL Football.  The Plaintiffs and Settlement Class Members all allege that their injuries arise from one cause (head impact while playing football), involving the NFL Parties and/or Member Clubs, over a defined period of time, and render them at increased risk of suffering only certain, particular types of injuries.  And, all Settlement Class Members raise the same claims within

54

their respective Subclasses. Thus, unlike in *Amchem*, the named Class Representatives' interests here are closely aligned with those of the Settlement Class, such that fair and adequate representation can be ensured and sufficient unity exists for settlement class certification purposes. *Compare Amchem*, 521 U.S. at 626.[20]

### 2. Common Questions of Law and Fact Predominate and the Superiority Requirement Is Met

In order to satisfy Rule 23(b)(3)'s requirement that common questions of law and fact predominate, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit." Newberg on Class Actions § 4:25;  *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.") (citing 7A Wright, Miller, & Kane 518-19);  *In re Warfarin*, 391 F.3d at 527-28;  *Sullivan*, 667 F.3d at 297.

Plaintiffs contend that the issues surrounding the NFL Parties' alleged liability for the injuries suffered by Settlement Class Members predominate over any individual issues involving

---

[20]   The facts underlying the proposed Settlement are analogous to those of other cases in which courts have held that settlements complied with the adequacy concerns of *Amchem*. For example, in *In re Countrywide Financial Corp. Customer Data Sec. Breach Litig*., No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009), mortgage customers brought a nationwide class action alleging consumer law violations based on Countrywide's failure to secure their personal financial information, which resulted in a theft of that information from a database by a Countrywide employee. In challenging the proposed settlement, some of the objectors argued that there was an inherent conflict of interest between presently injured plaintiffs (*i.e.*, plaintiffs who had been victims of identity theft) with uninjured plaintiffs or "future" plaintiffs, and that these future plaintiffs were not adequately represented in the settlement negotiations. *Id*. at *4. The objectors argued that, like in *Amchem*, the settlement would bind persons who may experience future identity theft, and that the interests of these future plaintiffs were, therefore, not adequately represented. *Id*. The court disagreed, noting that the "representative Class Members ... possess the same interests as all other members of the class. *All class members have been subjected to the same alleged conduct by Countrywide* whereby private information was compromised, and the impact of this conduct has already or possibly will produce a similar result for all members. The Court does not shy away from the fact that, at present, not all class members have suffered the same injury. But unlike an asbestos mass tort action *where unknown plaintiffs may develop symptoms decades later, this action involves an objectively identifiable class.* Class members who are fearful of the possibility of future identity theft will have been given notice of the settlement and have the opportunity to opt out." *Id*. at *5 (emphasis added).

55

the Plaintiffs. These predominating common questions of fact easily comport with *Dukes, supra*. In this case, the class action vehicle is best suited for the resolution of Plaintiffs' and the other Settlement Class Members' claims. Plaintiffs' claims for compensatory relief and medical monitoring are founded upon a common legal theory related to the singular body of facts concerning the NFL Parties' knowledge and alleged concealment of the dangers that concussions in football pose to NFL Football players. *See Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 133 S.Ct. 1184, 1191 (2013) ("Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class. Because materiality is judged according to an objective standard, the materiality of Amgen's alleged misrepresentations and omissions is a question common to all members of the class ...."). A class settlement will insure that a fully developed, well-designed claims process exists to compensate Plaintiffs and other Settlement Class Members for their damages.

The recent Supreme Court decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (U.S. 2013), wherein class certification was reversed based on a lack of predominance of common questions, does not bear on the determination of predominance in this case. In *Comcast*, the district court certified a liability and damages class under Rules 23(a) & (b)(3) comprised of more than two million current and former Comcast subscribers who sought damages for alleged violations of federal antitrust laws. *Id.* at 1429–31. Although the plaintiffs proposed four different theories of antitrust impact, the district court found that only one could be proved in a manner common to all class plaintiffs: the theory that "Comcast engaged in anticompetitive clustering conduct, the effect of which was to deter the entry of overbuilders in the Philadelphia" area. *Id*. at 1430–31 & n. 3. The plaintiffs' expert calculated damages for the entire class,

however, using a model that failed to isolate the damages resulting from the one theory of antitrust impact the district court had allowed to proceed. *Id*. The district court nonetheless certified the class, finding that the damages related to the allowed theory could be calculated on a classwide basis. *Id*. at 1431. The Third Circuit affirmed. *Id*. The Supreme Court reversed in a decision that it described as turning "on the straightforward application of class-certification principles." *Id*. at 1433. Because the plaintiffs would be entitled to damages resulting only from the allowed liability theory if they were to prevail on the merits, the Court instructed that the "model purporting to serve as evidence of damages ... must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id*. at 1433.

Neither the Third Circuit nor the district court in *Comcast* had required the plaintiffs to link each liability theory to a damages calculation because, those courts reasoned, doing so would necessitate inquiry into the merits, which had no place in the class certification decision. *Id*. The Supreme Court rejected that analysis as contradictory to *Dukes*, 131 S.Ct. at 2551–52 & n. 6, and as improperly permitting plaintiffs to offer any method of damages measurement, no matter how arbitrary, at the class-certification stage, thereby reducing the predominance requirement of Rule 23(b)(3) "to a nullity." *Comcast*, 133 S.Ct. at 1433. Due to the model's inability to distinguish damages attributable to the allowed theory of liability, the Supreme Court ruled that the predominance prerequisite of Rule 23(b)(3) did not warrant certification of a class. *Id*. at 1435. Accordingly, the Supreme Court reversed the certification order. *Id*.

A litigation class was being sought in *Comcast* and the district court had certified a class to determine both liability and damages. In contrast, a settlement class is being sought herein.

Further, one of the advantages of this proposed Settlement is that the Settlement Class Members will not have to prove causation, as they were required to do in *Comcast*. Further, the determination of damages in this case will be done through a separate process, with determinations as to the Qualifying Diagnoses by the BAP Providers and/or MAF Physicians, which along with the facts as to the Retired NFL Football Player's age and Eligible Seasons of play, will dictate where the Class Member falls within the Monetary Award Grid and determine, after any other Offsets, the amount of recoverable damages. Therefore, this case cannot be likened to *Comcast* wherein damages were being determined on a collective basis, as is typical in antitrust cases.

More recently, on remand from the Supreme Court directing that the decision in *Comcast*, *supra*, be addressed, the Honorable Richard Posner discussed the notion and significance of a separate determination of damages in *Butler v. Sears, Roebuck and Co*., 727 F.3d 796 (7th Cir. 2013):

> It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages. If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification. Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits.

*Id*. at 801 (determining, in consumer breach of warranty class action against manufacturer of washing machines, that common questions of law or fact predominated over questions affecting only individual class members and certifying mold defect class and sudden stoppage class). *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 722 F.3d 838 (6th Cir. 2013)

58

("Where determinations on liability and damages have been bifurcated … the decision in *Comcast*—to reject certification of a liability and damages class because plaintiffs failed to establish that damages could be measured on a classwide basis—has limited application.  To the extent that *Comcast ...* reaffirms the settled rule that liability issues relating to injury must be susceptible of proof on a classwide basis to meet the predominance standard, our opinion thoroughly demonstrates why that requirement is met in this case.");  *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 672 F.3d 482, 491-92 (7th Cir. 2012) (distinguishing *Dukes*, and determining that a class action limited to determining liability on a class-wide basis, with separate hearing to determine – if liability is established – the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the way to proceed).

In addition to the predominance requirement, Rule 23(b)(3) requires that the class action device be superior to other methods of adjudication.  Factors the court may consider include:

    (A)    the interest of members of the class in individually controlling the prosecution or defense of separate actions;

    (B)    the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

    (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    (D)    the difficulties likely to be encountered in the management of a class action.[21]

FED. R. CIV. P. 23(b)(3)(A)-(D).

---

[21] As stated earlier, any difficulties of management of this Settlement Class need not be considered when the Court is confronted with a request for settlement-only class certification because the proposal is that there be no trial.  *See Amchem*, 521 U.S. at 620;  *Sullivan*, 667 F.3d at 322 n.56.

59

Courts have recognized the benefits of "concentrating the litigation of claims in a single superior forum," rather than requiring "numerous individual suits brought by claimants." *Sullivan*, 667 F.3d at 311-12;  *see also Amalgamated Workers Union of Virgin Islands v. Hess Oil Virgin Islands Corp.*, 478 F.2d 540, 543 (3d Cir. 1973) ("The 'superiority requirement' was intended to refer to the preferability of adjudicating claims of multiple-parties in one judicial proceeding and in one forum, rather than forcing each plaintiff to proceed by separate suit, and possibly requiring a defendant to answer suits growing out of one incident in geographically separated courts.").

Moreover, in light of the JPML's Order transferring these cases and consolidating them before this Court pursuant to 28 U.S.C. § 1407, "[t]his factor should . . . be of little or no significance in resolving the superiority issue." NEWBERG ON CLASS ACTIONS, § 4:31.  The JPML previously considered, pursuant to 28 U.S.C. § 1407, the desirability of centralizing the various concussion injury suits against the NFL Parties in this particular forum.

In this case, Plaintiffs contend that it makes good sense to resolve promptly the claims against the Released Parties in this forum through the class action device.  Given the thousands of suits already commenced against the Released Parties in federal and state courts, approval of the Settlement and resolution of all concussion injury claims against the Released Parties in this forum benefits all Parties.  Further, a class action suit is superior to any other form of adjudication because it provides the best way of managing and resolving the claims at issue here. "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."  *In re Warfarin*, 391 F.3d at 533-34 (citation and quotation marks omitted).

60

Consideration of judicial economy and prompt resolution of claims underscore the superiority of the class action in this case. Should each of the cases filed by Plaintiffs against the NFL Parties be litigated individually, the Parties could face decades of litigation and significant expense in many different state and federal courts throughout the country, potentially resulting in conflicting rulings. In addition, compensation resulting from litigation is highly uncertain, especially given the preemption issue at stake in this case, and may not be received, in any event, before lengthy and costly trial and appellate proceedings are complete. Moreover, the Settlement removes the overwhelming and redundant costs of individual trials. *See Sullivan*, 667 F.3d at 310-12.

In sum, the requirements of Rule 23 are readily satisfied at this preliminary stage and certification of the Settlement Class and Subclasses is appropriate.

### C.    Plaintiffs Faced Significant Challenges and Obstacles in the Litigation

Plaintiffs faced stiff and complex challenges in the litigation. *See* Phillips Decl. at ¶12. Their claims could have been dismissed in their entirety or drastically reduced on the basis of the NFL Parties' threshold legal arguments and defenses. Whether Plaintiffs could have maintained their claims and met their burden of proof when faced with a number of the arguments summarized below was a significant consideration in agreeing to the proposed Settlement Agreement.

### 1.    Preemption

Plaintiffs' claims were at risk due to the NFL Parties' threshold legal argument that federal labor law precludes the litigation of Plaintiffs' claims in court. *See* Phillips Decl. at ¶13. In particular, in the Motions to Dismiss the Master Administrative Class Action Complaint and the Amended Master Administrative Long-Form Complaint on Preemption Grounds, the NFL

61

**-1200-**

Parties claimed that Section 301 of the Labor Management Relations Act ("LMRA") mandates the preemption of all state-law claims—whether based in negligence or fraud—whose resolution is substantially dependent upon or inextricably intertwined with the terms of a Collective Bargaining Agreement ("CBA"), or that arise under the CBA. *See* 29 U.S.C. §185(a) (codifying Section 301(a)); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). Citing decisions from courts around the country, the NFL Parties contended that resolution of Plaintiffs' claims would substantially depend upon interpretations of the terms of the CBAs and that Plaintiffs' claims arose under the CBA. *See, e.g., Duerson v. National Football League*, No. 12-C-2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012); *Maxwell v. National Football League*, Civ. No. 11-08394, Order (C.D. Cal. Dec. 8, 2011); *see also Stringer v. National Football League*, 474 F. Supp.2d 894 (S.D. Ohio 2007). Each of these decisions found that the NFL players' claims against the NFL or its Member Clubs relating to duties that are imposed by the CBAs were preempted because they required interpretation of CBA terms.

In support of this argument, the NFL Parties cited various CBA provisions relating to the Member Clubs' duties to provide medical care to NFL players during their playing careers. *See, e.g.,* Art. XLIV §1 (1993 CBA); Art. XLIV §1 (2006 CBA) (club physicians' duty to warn players about injuries "aggravated by continued performance"). The NFL Parties further highlighted other CBA provisions addressing rule-making, player safety rule provisions, grievance procedures, player benefits, as well as provisions of the NFL Constitution. The volume of CBA provisions and favorable court decisions on the preemption issue support the NFL Parties' argument that the degree of care owed to retired NFL Football players must be considered in light of the pre-existing contractual duties imposed by the CBAs. The same arguments apply to Plaintiffs' claims of fraudulent concealment and negligent misrepresentation.

The Plaintiffs offered well-reasoned arguments to oppose the NFL Parties' preemption defense.  In particular, Plaintiffs asserted that controlling authority in the Third Circuit, *Kline v. Security Guards, Inc.*, 386 F.3d 246 (3d Cir. 2004), requires the presence of a concrete interpretive dispute over a specific CBA provision.  Without an actual interpretive dispute of a specific term, there is no § 301 preemption, even if a CBA provision may be tangentially relevant as a factual matter.  Despite the NFL Parties' reference to myriad CBA provisions, the Plaintiffs contended that none of the provisions gave rise to an *actual* dispute over the *interpretation* of any provision, and that the NFL Parties' arguments were theoretical at best.

Plaintiffs asserted factual arguments to distinguish their claims as well.  For example, certain of the Retired NFL Football Players played their entire NFL careers during periods of time when no CBA was in effect (meaning there could be no preemption defense against these players).  As to those Retired NFL Football Players for which a CBA was in effect during their NFL careers, the question of whether their claims turn on the interpretation of a CBA provision was disputed by Plaintiffs.  For example, the NFL was not a signatory to a vast majority of the CBAs supposedly at issue.

As to Plaintiffs' fraudulent concealment and negligent misrepresentation claims, Plaintiffs powerfully asserted that the Third Circuit squarely held that where a plaintiff alleges fraud stemming from statements issued outside of the CBA bargaining process, the "elements of state law fraud" do "not depend on the [CBA]."  *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 232 (3d Cir. 1995).  Plaintiffs thus argued that their fraud claims turned on whether the NFL Parties had spoken about concussions truthfully, and on how those statements affected the decisions of the players.  Since neither question demanded an investigation into the terms of the CBAs, Plaintiffs argued that the preemption defense could be defeated.

Thus, the legal issue of Section 301 LMRA preemption presented a significant challenge for both sides.  The NFL Parties had strong arguments, legal authority, and facts.  Plaintiffs, in turn, presented a forceful response.  After extensive briefing on the matter, the Court heard oral argument on April 9, 2013, taking the matter under advisement.  Had the Court accepted the NFL Parties' arguments, the Plaintiffs' claims could have been dismissed outright, rendered impracticable, or severely jeopardized or impaired.

### 2.    Causation

Here, the Retired NFL Football Players brought suit for injuries allegedly resulting from head trauma they suffered during their NFL careers.  Plaintiffs allege that had the NFL Parties properly treated these head traumas and, had they provided Plaintiffs with information they possessed concerning the risk of concussion, these players would not have suffered such debilitating injuries or the injuries could have been minimized.  In deciding whether to resolve the Plaintiffs' claims outside of litigation, Co-Lead Class Counsel, Class Counsel and Subclass Counsel took into consideration the significant legal impediments surrounding the Plaintiffs' ability to prove causation and obtain verdicts in the absence of a settlement.  Specifically, but for the proposed Settlement, Plaintiffs would have had to demonstrate that the actions of the NFL Parties, in allegedly concealing risks of concussion and exposing them to head traumas on numerous occasions, was the legal cause of their injuries.  Plaintiffs anticipate that the NFL Parties would have argued that Plaintiffs could not meet their burden because it was also possible that the injuries resulted from some other cause unrelated to football, or from head impacts suffered playing football in middle school, high school and/or college.

3.        **Statutes of Limitation**

In the NFL Parties' motions to dismiss on preemption grounds, discussed above, the NFL Parties reserved the right to assert statute of limitations defenses in future motions to dismiss. "'Challenges based on the statute of limitations . . . have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability.'" *In re Linerboard Antitrust Litig.,* 305 F.3d 145, 163 (3d Cir. 2002) (quoting NEWBERG ON CLASS ACTIONS  § 4.26 (3d ed.)). Nevertheless, a significant potential risk for Plaintiffs and Settlement Class Members moving forward with this litigation is that the NFL Parties could invoke a statute of limitations defense. *See* Phillips Decl. at ¶15.  Many of the Retired NFL Football Players have not played for years, or even decades.  Certain Settlement Class Members' brain injuries and symptoms have been present for several years or even decades.  This scenario presents a serious challenge as the NFL Parties could argue that as a result of the timing of certain Plaintiffs' injuries, their claims are outside the applicable statute of limitations.

In cases where the causal connection between a plaintiff's injury and another's conduct is not apparent, many states have adopted a "discovery rule" that delays the accrual of a plaintiff's claim until the plaintiff discovers or reasonably should have discovered that they suffered an injury and that the injury was caused by the defendant.  *See, e.g., Pedersen v. Zielski*, 822 P.2d 903, 906 (Alaska 1991) (stating that statute does not begin to run under discovery rule until claimant discovers, or reasonably should have discovered, existence of elements essential to his cause of action);  *Anson v. Am. Motors Corp.*, 747 P.2d 581, 584 (Ariz. Ct. App. 1987)

(recognizing that cause of action does not accrue until plaintiff discovers or should have discovered that he had been injured by defendant's conduct).[22]

However, several states have declined to adopt a "discovery rule," holding that a plaintiff's claim accrues upon the date of the injury. *See, e.g., Utilities Bd. of Opp v. Shuler Bros., Inc.*, No. 1111558, 2013 WL 3154011, at *4 (Ala. June 21, 2013) (stating that there is no discovery rule for negligence claims); *Chalmers v. Toyota Motor* Sales, 935 S.W.2d 258, 261 (Ark. 1996) (stating that there is no discovery rule for personal injury cases); *Johnston v. Dow & Coulombe, Inc.*, 686 A.2d 1064, 1066 (Me. 1996) (discovery rule is limited to claims for legal malpractice, medical malpractice, and asbestosis).[23]

As noted above, many of the players have been retired from NFL Football for many years or even decades. Therefore, the repetitive, traumatic sub-concussive and/or concussive head impacts which occurred while participating in games and practice happened a long time ago. Thus, in states that have not adopted a discovery rule, the NFL Parties could argue that each player's cause of action accrued at the time of the initial impact that caused the players to suffer

---

[22]  *See, e.g., Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920 (Cal. 2005) (stating that discovery rule postpones accrual of cause of action until plaintiff discovers, or has reason to discover, cause of action); CONN. GEN. STAT. § 52-584 (statute of limitations begins to run from date when injury is first sustained or discovered or in exercise of reasonable care should have been discovered); IDAHO CODE ANN. § 5-219(4) (when fact of damage has been fraudulently and knowingly concealed, a cause of action accrues when injured party knows or in exercise of reasonable care should have been put on inquiry of condition); *Bowen v. Eli Lilly & Co., Inc.*, 557 N.E.2d 739, 741 (Mass. 1990) (stating that under discovery rule, cause of action accrues when event or events have occurred that were reasonably likely to put plaintiff on notice that someone may have caused his injury).

[23]  *See also Herrmann v. McMenomy v. Severson*, 590 N.W.2d 641, 643 (Minn. 1999) (statute of limitations is not tolled by ignorance of cause of action); *Carr v. Anding*, 793 S.W.2d 148, 150 (Mo. Ct. App. 1990) (recognizing that Missouri has rejected discovery rule and statute of limitations runs when fact of damage is capable of ascertainment, although not actually discovered); *Dreyer-Lefevre v. Morissette,* No. 56653, 2011 WL 2623955, at *2 (Nev. July 1, 2011) (discovery rule does not apply to cause of action for injuries to person caused by wrongful act or neglect of another); N.Y.C.P.L.R. § 2-14 (discovery rule is limited to toxic tort and foreign object causes of action); *Koenig v. Lambert*, 527 N.W.2d 903, 905 (S.D. 1995) (recognizing that legislature has acknowledged and rejected discovery rule), *overruled on other grounds*, 567 N.W.2d 220 (S.D. 1997); VA.. CODE ANN. § 8.01-230 ("the right of action shall be deemed to accrue and the prescribed limitation period shall begin from the date the injury is sustained in the case of injury to the person").

a traumatic brain injury.  Accordingly, Plaintiffs' claims would likely be subject to the defense that each player who suffered his initial head impact outside the applicable statute of limitations does not have timely claims and should be dismissed.

Further, in each of the states that has adopted a discovery rule, the NFL Parties could argue that Plaintiffs' causes of action are untimely when applying the applicable discovery rule. The NFL Parties could assert that certain Plaintiffs have been aware of their injuries for years and believed that NFL Football caused their injuries.  Moreover, the NFL Parties may argue that the public records put Plaintiffs on notice of their potential claims years ago, such that certain Plaintiffs failed to file their claims in a timely manner.

Based on the foregoing, the statute of limitations defenses available to the NFL Parties pose a significant risk to the claims of many of the Plaintiffs and Settlement Class Members. This proposed Settlement appropriately factors in, and avoids, the significant risks presented by the NFL Parties' statute of limitation defenses.

### 4.  Assumption of Risk

As the NFL has done in other litigation, the NFL Parties are expected to raise the defense that Plaintiffs had assumed the risks of the cognitive injuries they developed.  *See* Phillips Decl. at ¶15.  It is well known that football poses serious injury risks as countless individuals (at all levels of the sport) incur personal injuries every year while playing the sport.  It is also well known that countless individuals suffer serious head trauma, including concussions, while playing football.  Therefore, it would not be unexpected that the NFL Parties would present a strong assumption of risk argument in opposing the Plaintiffs' claims.

Under the doctrine of assumption of risk, one who voluntarily participates in an activity, such as tackle football, consents to those commonly appreciated risks that are inherent in and

arise out of the nature of the activity generally and flow from such participation. *See Alqurashi v. Party of Four, Inc.*, 89 A.D.3d 1047, 1047 (N.Y. App. Div. 2d Dept. 2011) ("The doctrine of primary assumption of risk provides that a voluntary participant in a sporting or recreational activity consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation") (citations and internal quotations omitted).[24]

Therefore, in light of the great risk of physical injury that is inherent in football, the doctrine of assumption of risk poses a significant challenge to Plaintiffs' claims going forward. Indeed, the doctrine has been recognized or applied in numerous cases involving football players who were injured while playing the sport. *See, e.g., Brown v. National Football League*, 219 F. Supp. 2d 372, 389 (S.D.N.Y. 2002) (noting that state law claims by NFL player for injuries incurred while playing professional football" will "implicate . . . ordinary concepts of negligence and assumption of risk"); *Glazier v. Keuka Coll.*, 275 A.D.2d 1039 (N.Y. App. Div. 2000) (plaintiffs assumed risk of injuries, as matter of law, by engaging in tackle football game between two residence halls); *Hunt v. Skaneateles Cent. Sch. Dist.*, 227 A.D.2d 939 (N.Y. App. Div. 1996) (high school student assumed risk of football related injury); *Benitez v. New York City Bd. of Educ.*, 73 N.Y.2d 650 (1989) (same); *Fortier v. Los Rios Cmty. Coll. Dist.*, 52 Cal. Rptr. 2d 812 (Cal. App. 4th 1996) (doctrine of assumption of risk precluded collegiate football

---

[24]   *See also Savino v. Robertson*, 652 N.E.2d 1240, 1244 (Ill. App. 1995) (enactment of Illinois' modified comparative fault statute has no effect on express assumption of risk, where plaintiff expressly assumes dangers and risks created by activity or defendant's negligence, or on primary implied assumption of risk, where plaintiff knowingly and voluntarily assumes risks inherent in particular situation or defendant's negligence); *Coomer v. Kansas City Royals Baseball Corp.*, Nos. WD 73984, WD 74040, 2013 WL 150838, at *3 (Mo. Ct. App. Jan. 15, 2013) ("Primary implied assumption of risk operates to negate the negligence element of duty . . . [t]he plaintiff's voluntary participation in the activity serves as consent to the known, inherent, risks of the activity and relieves the defendant of the duty to protect the plaintiff from those harms.") (internal citations omitted); *Fortier v. Los Rios Cmty. Coll. Dist.*, 52 Cal. Rptr. 2d 812 (Cal. App. 4th 1996) (applying doctrine of assumption of risk to preclude football player's claims for personal injuries).

player from recovering from community college for personal injuries sustained during football practice); *cf. Hackbart v. Cincinnati Bengals, Inc.*, 601 F.2d 516, 520 (10th Cir. 1979) (noting that theory of negligence would not support holding NFL team liable, "since subjecting another to unreasonable risk of harm, the essence of negligence, is inherent in the game of football, for admittedly it is violent," and drawing distinction that where football player is subject to intentional conduct that results in infliction of injuries in reckless disregard of his rights, only then may NFL team be liable for such intentional conduct, since it is "highly questionable whether a professional football player consents or submits to injuries caused by conduct not within the rules").

Even in those states that do not recognize assumption of risk as a defense, such states will nevertheless consider concepts such as contributory negligence or comparative fault to limit any recovery by a plaintiff, where that plaintiff is deemed to have engaged in a dangerous activity that contributed to his or her injuries.[25] *See generally Brown*, 219 F. Supp. 2d at 384 n.5 (noting that "implied assumption of risk is no longer a complete defense, but is subsumed under

---

[25]   *See, e.g.,* ARIZ. REV. STAT. ANN. § 12-2505 (contributory negligence is defense in Arizona); *Valley Elec., Inc. v. Doughty*, 528 P.2d 927, 928 (Colo. Ct. App. 1974) (contributory negligence is defense where plaintiff engaged in dangerous activity); *Allen v. Kamp's Beauty Salon, Inc.*, 177 So. 2d 678, 679 (Fla. Dist. Ct. App. 1965) (contributory negligence is defense in Florida); *Garrett v. NationsBank, N.A. (S.)*, 491 S.E.2d 158 (Ga. App. 1997) (contributory negligence is defense in Georgia); *Funston v. Sch. Town of Munster*, 849 N.E.2d 595 (Ind. 2006) (contributory negligence is defense in Indiana); *Smith v. McGittigan*, 376 So. 2d 598 (La. Ct. App. 1979) (contributory negligence is defense in Louisiana); *Collins v. Nat'l R.R. Passenger Corp.*, 9 A.3d 56 (Md. 2010) (contributory negligence is defense in Maryland); MASS. GEN. LAWS ANN. ch. 231, § 85 (contributory negligence is defense in Massachusetts); MICH. COMP. LAWS ANN. § 600.2959 (comparative fault is defense in Michigan); MINN. STAT. ANN. § 604.01 (comparative fault is defense in Minnesota); *Stallings v. Food Lion, Inc.*, 539 S.E.2d 331 (N.C. App. 2000) (contributory negligence is defense under North Carolina law); OHIO REV. CODE § 2315.19(B)(4) (comparative fault is defense under Ohio law); 42 PA. CONS. STAT. ANN. § 7102 (comparative negligence is defense in Pennsylvania); *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992) (comparative fault is defense in Tennessee); TEX. CIV. PRAC. & REM. CODE ANN. § 33.001 (comparative fault is defense in Texas); WASH. REV. CODE ANN. § 4.22.005 (West) (contributory fault is defense in Washington).

New York's comparative fault statute"); *see also Britenriker v. Mock*, No. 3:08 CV 1890, 2009

WL 2392917, at *5 (N.D. Ohio July 31, 2009) (same; applying Ohio law).

Therefore, based on the well-known risks of injury associated with football, to proceed

with this litigation would expose Plaintiffs to significant risks and challenges based on the

defenses of assumption of risk, contributory negligence, and comparative fault.

### 5.    Other Defenses

The NFL Parties also may assert a statutory employer defense in this litigation.  Pursuant

to this defense, a general contractor (or other similarly situated employer) can be held immune

from suit, with the applicable Workers' Compensation Act providing the exclusive remedy to an

injured employee of a subcontractor.  *See Fulgham v. Daniels J. Keating Co.*, 285 F. Supp. 2d

525, 537 (D.N.J. 2003) (once employer qualifies as statutory employer under Pennsylvania

Workers' Compensation Act, it is immune from suit even if injured worker's immediate

employer provides benefits;  statutory employer retains its common law immunity in exchange

for its secondary liability under Workers' Compensation Act).

In Pennsylvania, to create the relation of statutory employer under section 203 of the act

(77 PA. CONS. STAT. ANN. § 52), all of the following elements essential to a statutory employer's

liability must be present:  (1) an employer who is under contract with an owner or one in the

position of an owner;  (2) premises occupied by or under the control of such employer;  (3) a

subcontract made by such employer;  (4) part of the employer's regular business is entrusted to

such subcontractor; and (5) an employee of such subcontractor.  *Rolick v. Collins Pine Co.*, 925

F.2d 661, 663 (3d Cir. 1991) (citing *McDonald v. Levinson Steel Co*., 302 Pa. 287 (1930)); *see

also Al-Ameen v. Atlantic Roofing Corp*., 151 F. Supp. 2d 604, 606 (E.D. Pa. 2001) (citing

*McDonald* test).

70

The statutory employer defense is widely recognized as precluding injured employees of subcontractors from recovering damages from general contractors.[26]  In such cases, courts recognize that the injured employee's claims are in the nature of Workers' Compensation claims, and that both the subcontractor and general contractor should be immunized from common law liability.

Thus, one may expect the NFL Parties to pursue the statutory employer defense in this case.  The NFL Parties may argue they are similarly situated to a general contractor with respect to the injured players, and the injured players are akin to the employees of subcontractors.  Therefore, if this litigation goes forward in the absence of a settlement agreement, the NFL Parties may argue that they are immune from suit as the statutory employers of the injured Retired NFL Football Players.

### D.    The Proposed Form and Method of Class Notice Satisfy Due Process

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  FED. R. CIV. P. 23(e)(1).  In addition, for classes certified under Rule 23(b)(3), courts must ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members

---

[26]    *See, e.g., Young v. Envtl. Air Products, Inc.*, 665 P.2d 40, 45-46 (Ariz. 1983) (Arizona recognizes the statutory employer defense);  *Zamudio v. City & Cnty. of San Francisco*, 82 Cal. Rptr. 2d 664 (Cal. App. 1999) (California recognizes statutory employer defense);  *Finlay v. Storage Tech. Corp.*, 764 P.2d 62 (Colo. 1988) (Colorado recognizes statutory employer defense);  *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433 (Tex. 2009) (Texas recognizes statutory employer defense);  *Roberts v. City of Alexandria*, 246 Va. 17, 19 (1993) (Virginia recognizes statutory employer defense);  *Manor v. Nestle Food Co.*, 932 P.2d 628, 632 (Wash. 1997) *amended*, 945 P.2d 1119 (Wash. 1997) and *disapproved of on other grounds* by *Washington Indep. Tel. Ass'n v. Washington Utilities & Transp. Comm'n*, 64 P.3d 606 (Wash. 2003) (Washington recognizes statutory employer defense).

who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B); *see Amchem*, 521

U.S. at 617; *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974).

Due process requires that notice be "reasonably calculated, under all the circumstances,

to apprise interested parties of the pendency of the action and afford them an opportunity to

present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314

(1950); *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th

Cir. 2005). Rule 23(c)(2)(B) provides that the "notice must clearly and concisely state in plain,

easily understood language: (i) the nature of the action; (ii) the definition of the class certified;

(iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance

through an attorney if the member so desires; (v) that the court will exclude from the class any

member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the

binding effect of a class judgment on members under Rule 23(c)(3)." FED. R. CIV. P.

23(c)(2)(B).

The form and content of the proposed Long-form notice  (the "Notice") and the short-

form notice ("Summary Notice") satisfy all these legal parameters. *See* Exhibits 3 and 5 at

Notice Plan, appended to the Kinsella Declaration (Exhibit C to this Motion). Each form of

notice is written in plain and straightforward language consistent with Rules 23(c)(2)(B) and

23(e)(1). The Notice objectively and neutrally apprises all Settlement Class Members of the

nature of the action;  the definition of the Settlement Class sought to be certified for purposes of

the Settlement;  the Settlement Class claims and issues;  that Settlement Class Members may

enter an appearance through an attorney before the Court at the Fairness Hearing (in accordance

with the procedures set forth in the Notice);  that the Court will exclude from the Settlement

Class anyone who elects to opt out of the Settlement (and sets forth the procedures and deadlines

for doing so);  and the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3)(B).  The Notice additionally discloses the date, time, and location of the Fairness Hearing, and the procedures and deadlines for the submission of objections to any aspect of the Settlement.  These disclosures are complete and should be approved by the Court.  *See In re Certainteed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 482-83 (E.D. Pa. 2010); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000).

To deliver the best notice practicable to Settlement Class Members, Co-Lead Class Counsel, together with their notice agent, Katherine Kinsella, President of Kinsella Media LLC, have developed a comprehensive and innovative Notice Plan that far exceeds the requirements of Rule 23 and due process.  As described earlier, the notice plan supplements traditional methods of direct and publication notice with an ambitious outreach strategy designed to find missing Settlement Class Members who are Retired NFL Football Players.  *See* Kinsella Declaration, ¶30.  The direct notice will be accomplished by mailing the Long-form notice to each known Settlement Class Member.  The Settlement Class Members' addresses will be extracted from the following data sets: current Bert Bell/Pete Rozelle NFL Player Retirement Plan pension list; Retired NFL Football Player address data collected and used in the *Dryer* case; a list of NFL players active through 2010 compiled by STATS; a list of former World League of American Football, NFL Europe, and NFL Europa players; and a list of former AFL players.  Unlike many class actions, this direct mailed notice will provide for actual individual notice to a great many Settlement Class Members.

Further, the Social Security Death Index will be used to identify additional deceased Retired NFL Football Players, the LexisNexis Relative Search will be used to find a nearest relative or last person to live with the deceased player, and the National Change of Address

Database will be used to get the most recent addresses.  In addition, publication notice will be accomplished through full-page color advertisements in consumer magazines, thirty-second radio and television advertisements, and internet advertisements.  *See* Kinsella Declaration, ¶¶19-23. These direct notice and publication notice strategies, alone, satisfy the requirements of Rule 23 and due process.  *See Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both FED. R. CIV. P. 23 and the due process clause."); *In re Certainteed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. at 482-83 (finding that direct mailing and advertisements on television and internet satisfied requirements of Rule 23 and due process); *Grunewald v. Kasperbauer*, 235 F.R.D. 599, 609 (E.D. Pa. 2006) (same for direct mailing and advertisements in three newspapers and internet); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210-11 (S.D.N.Y. 1995) (finding that notice by first class mail is the best notice practicable, and publication in a major newspaper "will have the broadest reach to inform those members of the Class who, for some reason, may not receive the mailed Notice"); *Trist v. First Federal Savings & Loan Assoc. of Chester*, 89 F.R.D. 1, 2 (E.D. Pa. 1980) (notice that failed to reach one-eighth of class was sufficient).  Similar levels of penetration have been deemed adequate under Rule 23 and the Due Process clause.  *See In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1061 (S.D. Tex. 2012) (notice plan that expert estimated would reach 81.4% of class was sufficient); *Alberton v. Commonwealth Land Title Ins. Co.*, No. 06-3755, 2008 WL 1849774, at *3 (E.D. Pa. Apr. 25, 2008) (direct notice projected to reach 70% of class plus publication in newspapers and internet was sufficient);  *Grunewald*, 235 F.R.D. at 609 (direct mail to 55% of class and publication in three newspapers and internet was sufficient); *In re Lupron Marketing and Sales*

*Practices Litig.*, 228 F.R.D. 75, 96 (D. Mass. 2005) (notice plan that experts predicted would expose 80% of class to notice was sufficient). Plaintiffs' Notice experts estimate that the Notice Plan, as a whole, will reach approximately 90% of the Settlement Class Members. *See* Kinsella Declaration, ¶36.

In addition, the proposed Notice Plan provides that the Class Members will have more than 90 days from the commencement of the Class Notice period until the deadline for opting out. It is well-settled that 30 to 60 days notice is sufficient to allow class members to make their decisions to accept the settlement, object or exclude themselves. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig*., 962 F. Supp. 450, 562 (D.N.J. 1997) (citing cases). Thus, the amount of time allotted in this case is clearly sufficient. Because the proposed notice plan easily fulfills the requirements of Rule 23 and the due process, it should be approved by the Court.

### E.    The Court Should Stay This Action and Enjoin Related Lawsuits By Settlement Class Members

Along with staying the instant litigation and all other Related Lawsuits against the NFL Parties (and other Released Parties), the Court should enjoin all Settlement Class Members, unless and until they have been excluded from the Settlement Class by action of the Court, or until the Court denies approval of the Class Action Settlement, or until the Settlement Agreement is otherwise terminated, from filing, commencing, prosecuting, continuing to prosecute, supporting, intervening in, or participating as plaintiffs, claimants, or class members in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on, relating to, or arising out of the claims and causes of action, or the facts and circumstances at issue, in the Class Action Complaint, Related Lawsuits and/or the Released Claims. No such injunction would apply to the Riddell Defendants. Such "injunctive relief is commonly granted

in preliminary approvals of class-action settlements pursuant to the All Writs Act and the Anti-Injunction Act." *In re Uponor, Inc.*, No. 11-MD-2247, 2012 U.S. Dist. LEXIS 5339, 23-34 (D. Minn. Jan. 18, 2012); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 261 F.3d 355, 360-61 (3d Cir. 2001) (upholding order enjoining all class members from "filing, commencing, prosecuting, continuing, litigating, intervening in or participating as class members in, any lawsuit in any jurisdiction based on or related to the facts and circumstances underlying the claims and causes of action in this lawsuit, unless and until such [class member] has timely excluded herself or himself from the Class."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018, 1025 (9th Cir. 1997) (upholding preliminary class settlement approval order enjoining duplicative state actions).

The All Writs Act authorizes courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). While the Anti-Injunction Act limits a federal court's powers under the All Writs Act, it expressly authorizes a federal court to enjoin parallel state court proceedings—including indirectly, by enjoining the parties to state court proceedings—"where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283; *see also In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 233 (3d Cir. 2002) ("An order directed at the parties and their representatives, but not at the court itself, does not remove it from the scope of the Anti-Injunction Act."). *See Winkler v. Eli Lilly & Co.,* 101 F.3d 1196, 1202 (7th Cir. 1996); *Carlough v. Amchem Prods., Inc.,* 10 F.3d 189, 202–04 (3d Cir. 1993); *Battle v. Liberty Nat'l Life Ins. Co.,* 877 F.2d 877, 882 (11th Cir. 1989); *In re Corrugated Container Antitrust Litig.,* 659 F.2d 1332, 1334–35 (5th Cir. 1981). *See also In re Chinese-Manufactured Drywall Prod. Liability Litig.,* No. 10-361, 2011 WL 2313866, at *6-7 (E.D. La. June 9, 2011) (staying actions

76

pending in Louisiana state court pursuant to authority under the All Writs Act and the Anti–

Injunction Act's necessary in aid of jurisdiction exception); *Kaufman v. American Exp. Travel*

*Related Services Co., Inc*., 264 F.R.D. 438 (N.D. Ill. 2009) (enjoining proceedings in several

related litigations, including one in California state court); *see also In re Diet Drugs*, 282 F.3d at

228, 242 (affirming district court order nullifying state court order).

     Here, issuance of this injunction is necessary and appropriate in aid of the Court's

jurisdiction because, as recognized by the Third Circuit, "[t]he threat to the federal court's

jurisdiction posed by parallel state actions is particularly significant where there are conditional

class certifications and impending settlements in federal action." *Diet Drugs*, 282 F.3d at 236

(citations omitted)("In complex cases where certification or settlement has received conditional

approval … the challenges facing the overseeing court are such that it is likely that almost any

parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court.");

*In re Prudential Ins. Co. of Am. Sales Practices Litig*., 314 F.3d 99, 104 (3d Cir. 2002)

("[D]istrict courts overseeing complex federal litigation are especially susceptible to disruption

by related actions in state fora").  Indeed, the "success of any federal settlement [is] dependent

on the parties' ability to agree to the release of any and all related civil claims[.]" *In re Baldwin-*

*United Corp*., 770 F.2d 328, 337 (2d Cir. 1985).  Parallel state actions threaten this interest by

undermining "the finality of any federal settlement." *Id*.

     That is precisely the case here.  This is a complex, multi-district litigation involving over

300 consolidated actions and over 5,000 plaintiffs (and with the proposed class, involves

thousands more), multiple rounds of motion practice, and oral argument.  The Settling Parties

have engaged in hard-fought, difficult negotiations and reached a comprehensive, global

settlement.  Yet the NFL Parties and other Released Parties could remain exposed to "countless

<center>77</center>

suits in state court despite settlement of the federal claims" that might "seriously undermine the possibility for settling any large, multi-district class action" and throw into doubt the finality of the releases the NFL Parties bargained for, and the validity of the entire agreement. *See Prudential Ins.*, 314 F.3d at 104-105 (citations omitted). In addition, an injunction will permit Settlement Class Members to review the notice materials discussing the terms of the proposed nationwide settlement and to assess their rights and options without the distraction and confusion that would be occasioned by competing actions.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant Plaintiffs' motion.

Dated:      June 25, 2014                              Respectfully submitted,


                                                       /s/ Christopher A. Seeger
                                                       Christopher A. Seeger
                                                       SEEGER WEISS LLP
                                                       77 Water Street
                                                       New York, NY 10005
                                                       Phone: (212) 584-0700
                                                       Fax: (212) 584-0799
                                                       cseeger@seegerweiss.com

                                                       *Co-Lead Class Counsel*

                                                       Sol Weiss
                                                       **ANAPOL SCHWARTZ**
                                                       1710 Spruce Street
                                                       Philadelphia, PA 19103
                                                       Phone: (215) 735-1130
                                                       Fax: (215) 735-2024
                                                       sweiss@anapolschwartz.com

                                                       *Co-Lead Class Counsel*

*Class Counsel*

Steven C. Marks
**PODHURST ORSECK P.A.**
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Phone: (305) 358-2800
Fax: (305) 358-2382
smarks@podhurst.com

Gene Locks
**LOCKS LAW FIRM**
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Phone: 866-562-5752
Fax: (215) 893-3444
glocks@lockslaw.com


*Subclass Counsel*

Arnold Levin
**LEVIN FISHBEIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com

Dianne M. Nast
**NAST LAW LLC**
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107
Phone: (215) 923-9300
Fax: (215) 923-9302
DNast@nastlaw.com

*Counsel for Subclass 1*

*Counsel for Subclass 2*


*Of Counsel*

Thomas V. Girardi
Graham B. LippSmith
**GIRARDI KEESE**
1126 Wilshire Blvd
Los Angeles, CA 90017
Phone: (213) 977-0211
Fax: (213) 481-1554
tgirardi@girardikeese.com
glippsmith@girardikeese.com

Michael D. Hausfeld
Richard S. Lewis
**HAUSFELD LLP**
1700 K Street, N.W., Suite 650
Washington, D.C. 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
mhausfeld@hausfeldllp.com
rlewis@hausfeldllp.com

James R. Dugan, II
**THE DUGAN LAW FIRM**
One Canal Place, Suite 1000
365 Canal Street
New Orleans, LA 70130
Phone: (504) 648-0180
Fax: (504) 648-0181
jdugan@dugan-lawfirm.com

Michael L. McGlamry
**POPE, MCGLAMRY, KILPATRICK
MORRISON & NORWOOD, P.C.**
3455 Peachtree Road, NE
The Pinnacle, Suite 925
P.O. Box 191625 (31119-1625)
Atlanta, GA 30326-3243
Phone: (404) 523-7706
Fax: (404) 524-1648
efile@pmkm.com

Charles S. Zimmerman
**ZIMMERMAN REED PLLP**
1100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone: (612) 341-0400
Fax: (612) 341-0844
charles.zimmerman@zimmreed.com

David S. Casey, Jr.
Fred Schenk
**CASEY GERRY SCHENK
FRANCAVILLA BLATT & PENFIELD
LLP**
110 Laurel Street
San Diego, CA  92101-1486
Phone: (619) 238-1811
Fax: (619) 544-9232
dcasey@cglaw.com
fschenk@cglaw.com

Anthony Tarricone
**KREINDLER & KREINDLER LLP**
277 Dartmouth Street
Boston, MA 02116
Phone: (617) 424-9100
Fax: (617) 424-9120
atarricone@kreindler.com

David A. Rosen
**ROSE, KLEIN & MARIAS LLP**
801 South Grand Avenue, 11th Floor
Los Angeles, CA 90017-4645
Phone: (213) 626-0571
Fax: (213) 623-7755
d.rosen@rkmlaw.net

Derriel McCorvey
**THE LAW FIRM OF DERRIEL C.
MCCORVEY**
115 W. Main Street, Suite 14
P.O. Box 2473
Lafayette, LA 70501
Phone: (337) 291-2431
derriel@mccorveylaw.com

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |

Kevin Turner and Shawn Wooden,
*on behalf of themselves and
others similarly situated*,

      Plaintiffs,

      v.

National Football League and
NFL Properties, LLC,
successor-in-interest to
NFL Properties, Inc.,

      Defendants.

Civil Action No. 2:14-cv-00029-AB

THIS DOCUMENT RELATES TO:
ALL ACTIONS

**OBJECTION TO JUNE 25, 2014 CLASS ACTION SETTLEMENT AND
OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF
SEAN MOREY, ALAN FANECA, BEN HAMILTON, ROBERT ROYAL, RODERICK
CARTWRIGHT, JEFF ROHRER, AND SEAN CONSIDINE**

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................... 1

BACKGROUND .............................................................................................. 2

I.      Background of Objectors .................................................................... 2

II.     The Class Action Complaint ............................................................... 5

III.    The Initial Settlement ........................................................................ 11

IV.     The Revised Settlement .................................................................... 15

ARGUMENT ................................................................................................. 18

I.      The Proposed Class Contains Internal Conflicts Rendering It Uncertifiable .................. 19

        A.      The Revised Settlement Leaves Many Injured Class Members
                Uncompensated ................................................................... 20

        B.      The 75% Offsets Also Create a Conflict Within the Class ................... 26

        C.      Class Members Who Played in NFL Europe Are Not Given Credit for
                the Seasons They Played There .............................................. 28

II.     Other Factors Call Into Question Whether the Settlement Can Be Approved as Fair,
        Adequate, and Reasonable .............................................................. 29

        A.      The Proposed Notice Is False and Misleading ............................... 29

        B.      The Settlement Establishes Unduly Burdensome Procedural Requirements
                That Will Effectively Deny Class Members Recovery ....................... 32

        C.      The Proposed Settlement Is Not the Product of Arm's Length Negotiation ...... 35

                1.      Intra-Class Conflict Suggests the Absence of an Arm's Length
                        Negotiation ............................................................. 36

                2.      The Attorneys' Fee Provision Raises Concerns That Class Counsel
                        Bargained Away Class Members' Interests ........................... 37

                3.      The Role of Sub-Class Counsel and Representative Plaintiffs Is
                        Unknown ................................................................ 38

i

4.      The Settlement Negotiation Process Has Lacked Transparency ..............39

D.    The Lack of Discovery Precludes Preliminary Approval of the Proposed
      Settlement ........................................................................................................40

      1.      Class Counsel Could Not Possibly Have Fulfilled Their Duties to the
              Class Without Taking Any Discovery ......................................................40

      2.      Without Discovery, Neither the Court Nor the Class Members Can
              Assess the Settlement..............................................................................42

      3.      Discovery Would Have Allowed Class Counsel To Overcome – or at
              Least Understand – What They Claim Are "Significant Challenges and
              Obstacles in the Litigation" ....................................................................42

CONCLUSION....................................................................................................... 47

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Air Lines Stewards & Stewardesses Ass'n, Local 550 v. Am. Airlines, Inc.*,
455 F.2d 101 (7th Cir. 1972) ................................................................31

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985) ................................................43

*Amchem v. Windsor Prods. Inc.*, 521 U.S. 591 (1997) ..................................19, 23, 29

*Barani v. Wells Fargo Bank, N.A*, 2014 WL 1389329
(S.D. Cal. Apr. 9, 2014) ................................................................42

*Barnes v. Am. Tobacco Co.*, 984 F. Supp. 842 (E.D. Pa. 1997) ......................................46

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)..................................37

*Boggess v. Hogan*, 410 F. Supp. 433 (N.D. Ill. 1975) ................................................31

*Bohus v. Beloff*, 950 F.2d 919 (3d Cir. 1991) ................................................45

*Buckley v. Valeo*, 424 U.S. 1 (1976) ................................................39

*In re Cal. Micro Devices Sec. Litig.*, 168 F.R.D. 257 (N.D. Cal. 1996)..................................38

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987)................................................43

*Childers v. Power Line Equip. Rentals, Inc.*,
452 Pa. Super. 94 (1996)................................................46

*Ciccarelli v. Carey Can. Mines, Ltd.*, 757 F.2d 548 (3d Cir. 1985) ..................................45

*In re Cmty. Bank of N. Va.*, 418 F.3d 277 (3d Cir. 2005)..................................39, 40

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) ............................... *passim*

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013)..................................35

*Eubank v. Pella Corp.*, __ F.3d __, 2014 WL 2444388
(7th Cir. June 2, 2014) ................................................32, 33, 35, 39

*Gates v. Rohm & Haas Co.*, 248 F.R.D. 434 (E.D. Pa. 2008) ..................................42

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)................................................ *passim*

*Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996) .....................................23

*Green v. Ariz. Cardinals Football Club, LLC*, No. 14-CV-461,
2014 WL 1920468 (E.D. Mo. May 14, 2014) .....................................43, 44

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir.).....................................31

*Hemi Group, LLC v. City of New York,* 130 S.Ct. 983 (2010) .....................................44

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009).....................................25

*Jamison v. Westinghouse Elec. Corp.*, 375 F.2d 465 (3d Cir. 1967).....................................45

*Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467 (E.D. Pa. 2007).....................................19

*Mest v. Cabot Corp.*, 449 F.3d 502 (3d Cir. 2006) .....................................45

*Murphy v. Steeplechase Amusement Co.*, 250 N.Y. 479 (1929).....................................46

*In re Nat'l Football League Players' Concussion Injury Litig.*,
961 F. Supp. 2d 708 (E.D. Pa. 2014) ..................................... *passim*

*Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2005 WL 950616
(E.D. Pa. Apr. 22, 2005) .....................................29, 31

*Olden v. Gardner*, 294 F. App'x 210 (6th Cir. 2008).......................................... *passim*

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) .....................................29

*In re Pet Food Prods.*, 629 F.3d 333 (3d Cir. 2010).....................................28

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) .....................................25

*Pozza v. United States*, 324 F. Supp. 2d 709 (W.D. Pa. 2004) .....................................47

*In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249
(E.D. Pa. 2012).....................................42

*In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221 (S.D. W. Va. 2005).....................................25

*Staub v. Proctor Hosp.*, 131 S.Ct. 1186 (2011) .....................................44

*Stipanovich v. Westinghouse Elec. Corp.*, 210 Pa. Super. 98 (1967) ..........................................46

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013).....................................28

*Walter v. Hughes Commc'ns, Inc.*, No. 09-2136, 2011 WL 2650711
(N.D. Cal. July 6, 2011).....................................35

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)...........................................29

*Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991) ......................................37

*Williams v. Nat'l Football League*, 582 F.3d 863 (8th Cir. 2009)..............................................44

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)..................................................................40

## STATUTES AND RULES

Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*............................................................43

Fed. R. Civ. P. 23(a)(4)....................................................................................................................19

Fed. R. Civ. P. 23(c)(2)(B) ..............................................................................................................29

Fed. R. Civ. P. 23(d) ........................................................................................................................32

Fed. R. Civ. P. 23(e) ........................................................................................................................18

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. V..................................................................................................................29, 32

## OTHER AUTHORITIES

A.C. McKee *et al.*, *The Spectrum of Disease in Chronic Traumatic Encephalopathy*, 136 Brain: A Journal of Neurology 43 (2012)......................9, 10, 11, 21, 22

Ann C. McKee *et al.*, *Chronic Traumatic Encephalopathy in Athletes: Progressive Tauopathy After Repetitive Head Injury*, 68 J. Neuropathology & Experimental Neurology 709 (2009) ..........................................................................10

Associated Press, *NFL, Ex-Players Agree to $765M Settlement in Concussions Suit*, NFL.com (Aug. 29, 2013 12:42 PM), http://www.nfl.com/news/story/0ap1000000235494/ article/nfl-explayers-agree-to-765m-settlement-in-concussions-suit ..............................................................12, 31

Barry D. Jordan, *The Clinical Spectrum of Sport-Related Traumatic Brain Injury*, 9 Nature Reviews Neurology 222 (2013) ..........................................................................9, 21

Brent Schrotenboer, *NFL Takes Aim at $25 Billion, but at What Price?*, USA Today (Feb. 5, 2014 1:42 PM EST), http://www.usatoday.com/story/sports/nfl/super/2014/01/30/super-bowl-nfl-revenue-denver-broncos-seattle-seahawks/5061197/ .............................................................35

Christine M. Baugh *et al.*, *Chronic Traumatic Encephalopathy: Neurodegeneration Following Repetitive Concussive and Subconcussive Brain Trauma*, Brain Imaging and Behavior 3 (May 3, 2012) ................................................10

Dan McGrath, *Illinois Eye Institute Project Aims to Identify CTE in the Living*, Chicago Sun-Times (June 14, 2014 4:35 PM), http://www.suntimes.com/sports/28048920-419/illinois-eye-institute-project-aims-to-identify-cte-in-the-living.html#.U7QLlvldVIQ ........................................................... 10

Daniel Kaplan, *Goodell Sets Revenue Goal of $25 Billion by 2027 for NFL*, Sports Business Journal (Apr. 5, 2010), http://www.sportsbusinessdaily.com/Journal/Issues/2010/04/20100405/This-Weeks-News/Goodell-Sets-Revenue-Goal-Of-$25B-By-2027-For-NFL.aspx ..................... 35

Des Toups, *How Many Times Will You Crash Your Car?*, Forbes (July 27, 2011 6:50 PM), http://www.forbes.com/sites/moneybuilder/2011/07/27/how-many-times-will-you-crash-your-car/ ................................................................................ 26

Don Banks, *Former Players: Devil Is in the Details with NFL Concussion Settlement*, Sports Illustrated (Aug. 23, 2013), http://www.si.com /nfl/2013/08/29/nfl-concussion-lawsuit-settlement-player-reaction-kevin-mawae ....................................................................................................................... 15

Eddie Matz, *Stick Route*, ESPN The Magazine (Nov. 28, 2011), http://espn.go.com/nfl/story/_/id/7243606/nfl-players-tony-romo-ronde-barber-rely-new-painkiller-toradol ........................................................................ 27

Erin D. Bigler, *Neuropsychology and Clinical Neuroscience of Persistent Post-Concussive Syndrome*, 14 J. Int'l Neuropsychological Soc'y 1 (2008) ......................... 7, 9, 27

Frontline, Transcript of *League of Denial: The NFL's Concussion Crisis*, http://www.pbs.org/wgbh/pages/frontline/sports/league-of-denial/transcript-50/. ............................................................................................................................ 22

James F. Burke *et al.*, *Traumatic Brain Injury May Be an Independent Risk Factor for Stroke*, 81 Neurology 1 (2013) ............................................................... 27

Jason M. Breslow, *Judge Rejects $765 Million NFL Concussion Settlement*, Frontline (Jan. 14, 2014 3:59 PM), http://www.pbs.org/wgbh/pages/frontline/sports/league-of-denial/judge-rejects-765-million-nfl-concussion-settlement/ ................................................... 31

Kyle Wagner, *Can Science See Inside an NFL Player's Skull Before It's Too Late?*, Deadspin (June 21, 2012 9:00 AM), http://regressing.deadspin.com/5920006/can-science-see-inside-an-nfl-players-skull-before-its-too-late ............................................................................ 10

L. Brandeis, *Other People's Money* (Nat'l Home Library Found. Ed. 1933) ............... 39

L. Elaine Halchin, *Former NFL Players: Disabilities, Benefits, and Related Issues*, Congressional Research Service (Apr. 8, 2008) ............................................ 34

vi

M. Maruyama *et al.*, *Imaging of Tau Pathology in a Tauopathy Mouse Model and in Alzheimer Patients Compared to Normal Controls*, 79 Neuron 1094 (2013) ....................10

Manual for Complex Litigation § 21.61 (4th ed. 2004)................................................................18

Mark Hollmer, *Alzheimer's Diagnosis May Gain from PET Imaging of Tau Proteins*, FierceDiagnostics (Sept. 20, 2013), http://www.fiercediagnostics.com/story/alzheimers-diagnosis-may-gain-pet-imaging-tau-proteins/2013-09-20................................................................10

Michael Leahy, *The Pain Game*, Washington Post Magazine (Feb. 3, 2008)..............................34

Michael O'Keefe, *Still Plenty of Skeptics After NFL Reaches New Deal with Players to Settle Concussion-Related Lawsuit*, New York Daily News (June 28, 2014 11:40 AM), http://www.nydailynews.com/sports/football/score-nfl-deny-issues-article-1.1847588 ....................34

Michael Rosenberg, *"Permanently Disabled," Harrison Fighting for Benefits NFL Took Away*, Sports Illustrated (Jan. 29, 2014), http://www.si.com/nfl/2014/01/29/dwight-harrison-nfl-pension.............................................34

Nathaniel Penn, *The Violent Life and Sudden Death of Junior Seau*, GQ Magazine (Sept. 2003), http://www.gq.com/entertainment/sports/201309/junior-seau-nfl-death-concussions-brain-injury..............................................................11

National Institute for Occupational Safety and Health, *Brain and Nervous System Disorders Among NFL Players* (Jan. 2013), http://www.cdc.gov/niosh/pgms/worknotify/pdfs/NFL_Notification_02.pdf........................22

Neal Emery, *How to Diagnose a Battered Brain Before It's Too Late*, The Atlantic (May 8, 2012), http://www.theatlantic.com/health/archive/2012/05/how-to-diagnose-a-battered-brain-before-its-too-late/256877/. .................9

NFL Concussion Class Settlement (May 1, 2014), https://www.youtube.com/watch?v=9EWNBNgMoEk.............................................................31

Pablo S. Torre, *How (and Why) Athletes Go Broke*, Sports Illustrated (Mar. 23, 2009), http://sportsillustrated.cnn.com/vault/2009/03/23/105789480/how-and-why-athletes-go-broke.............................................................33

Patrick Hruby, *Show Us Some Math*, Sportsonearth.com (Jan. 20, 2014), http://www.sportsonearth.com/article/66858180/the-nfls-concussion-deal-may-not-cover-all-former-players-with-cte#!7gQFt...........................................39

Patrick Hruby, *Raw Deal*, Sportsonearth.com (Jan. 10, 2014), http://www.sportsonearth.com/article/66471614/nfl-concussion-settlement-inadequate#!7gQc9 ..............................................................31

vii

Paul Solotaroff, *Dave Duerson: The Ferocious Life and Tragic Death of a Super Bowl Star*, Men's Journal (May 2011), http://www.mensjournal.com/magazine/dave-duerson-the-ferocious-life-and-tragic-death-of-a-super-bowl-star-20121002 ..........................................................................11

Press Release, *NFL, Retired Players Resolve Concussion Litigation*, Irell & Manella LLP, http://static.nfl.com/static/content/public/photo/2013/08/29/ 0ap2000000235504.pdf ..........................................................................12

Restatement (Second) of Torts (1965) ..........................................................................45

Robert A. Stern *et al.*, *Clinical Presentation of Chronic Traumatic Encephalopathy*, 81 Neurology 1122 (2013) ..........................................................................11

Roche, *FDA-Mandated Warning Label for Toradol*, http://www.accessdata.fda.gov/drugsatfda_docs/label/2013/019645s019lbl.pdf ...............8, 27

Ryan Wilson, *NFL Paid Roger Goodell $35.1 Million Last Year*, CBSSports.com (Feb. 14, 2014 3:25 PM), http://www.cbssports.com/nfl/eye-on-football /24443392/report-nfl-paid-roger-goodell-351-million-last-year ..........................................................................35

Sally Jenkins & Rick Maese, *Pain and Pain Management in NFL Spawn a Culture of Prescription Drug Use and Abuse*, The Washington Post (Apr. 13, 2013), http://www.washingtonpost.com/sports/redskins/pain-and-pain-management-in-nfl-spawn-a-culture-of-prescription-drug-use-and-abuse/2013/04/13/3b36f4de-a1e9-11e2-bd52-614156372695_story.html ..........................................................................8

Scott Fujita, *Mixed Feelings Over N.F.L. Concussion Settlement*, N.Y. Times (Sept. 2, 2013), http://www.nytimes.com/2013/09/03/sports/football/mixed-feelings-over-nfl-concussions-settlement.html?pagewanted=all&_r=0; ..........................................................................15

Sophia Pearson & Jeff Feeley, *NFL's $914 Million Concussion Deal Submitted to Federal Court*, The Morning Journal (Jan. 18, 2014 9:23 AM), http://www.morningjournal.com/sports/ 20140108/nfls-914-million-concussion-deal-submitted-to-federal-court ..........................................................................31

Steve Almond, *The NFL Gets Off Easy in Concussion Settlement*, The Boston Globe (June 27, 2014), http://www.bostonglobe.com/opinion /2014/06/26/the-nfl-gets-off-easy-concussion-settlement/PUFYxln6dFqlOdbe6wnhzJ/story.html ..........................................................................14

Steve Fainaru & Mark Fainaru-Wada, *Lawyers Fight Over Settlement Details*, ESPN.com (Jan. 24, 2014, 8:18 PM), http://espn.go.com/espn/otl/story/_/id/10346091/lead-negotiator-facing-strong-opposition-concussion-settlement ..........................................................................39

viii

Steve Fainaru & Mark Fainaru-Wada, *Some Players May Be Out of NFL Deal*,
    ESPN.com (Sept. 20, 2013 1:04 PM),
    http://espn.go.com/chicago/story/_/id/9690036/older-players-cut-nfl-
    settlement-concerns-growing-whether-enough-money-exists ........................................... 11, 15

Steven T. DeKosky *et al.*, *Traumatic Brain Injury – Football, Warfare, and Long-
    Term Effects*, The New England Journal of Medicine 1293 (2010) ........................................ 23

United Nations Department of Economic and Social Affairs, *Consolidated List of
    Products Whose Consumption and/or Sale Have Been Banned, Withdrawn,
    Severely Restricted or Not Approved by Governments* (2005) ................................................. 8

William Jagust, *Time for Tau*, 137 Brain: A Journal of Neurology 1570 (2014) ......................... 10

Written Testimony of Dr. Robert Stern before the Senate Special Committee
    on Aging (June 25, 2014), http://www.aging.senate.gov/imo/media/
    doc/Stern_6_25_14.pdf. .............................................................................................. 10, 21, 23

## INTRODUCTION

The Revised Settlement is a great deal – for the NFL and Class Counsel.  It is a lousy deal for the retired players, whose rights have been bargained away without adequate or independent representation.

Class Counsel bear the burden of demonstrating that their Revised Settlement presents a certifiable class and appears to fall within the range of possible approval.  Demonstrating the latter means the proposed settlement must not disclose grounds to doubt its fairness.  The Revised Settlement proposes a class with significant conflicts that render it uncertifiable and it suffers other defects that render it anything but fair.

Its fatal defects include:

- The rights of at least three groups of class members – those suffering from, or displaying symptoms consistent with, CTE who do not die before preliminary approval; those who have suffered or are at risk of suffering a stroke or non-football traumatic brain injury; and those who played in NFL Europe – were bargained away without adequate representation;

- The proposed notice is false and misleading;

- The claims process is so onerous and confusing that it raises due process as well as fairness concerns;

- It was not the product of arm's length negotiation – as evidenced by the intra-class conflicts, the lack of transparency, and the $112.5 million fee award to Class Counsel; and

- Class Counsel conducted no discovery – thus there is no factual record on which to evaluate the strength of the claims and defenses.

With much fanfare, Class Counsel proclaim they "have lifted the cap" and thereby addressed any concern about the settlement fund's adequacy.  Thus, they contend, this Court should grant preliminary approval.  But cap or no cap, the Revised Settlement comes nowhere near being fair, adequate, and reasonable.

Every former player surrenders his right to sue the NFL for cognitive injuries – including CTE, which science shows a significant number may have. In exchange, those former players – often operating with cognitive challenges – get the right to navigate a procedural labyrinth designed to limit the number and the amount of settlement payouts.

Significantly, Class Counsel have boasted that in lifting the cap, they have not really increased the financial exposure to the NFL.[1] It is clear now why. Given the limitations on who qualifies for compensation and the complex, one-sided process for determining that, it is likely the settlement will cost the NFL less than $765 million.

Preliminary approval should be denied.

## BACKGROUND

### I. Background of Objectors

Objectors are seven former players who each had a significant career in the NFL, having played, on average, nine seasons. They include linemen, as well as so-called "skill position" and special teams players. The most senior began his NFL career in 1982 and the most junior retired in 2012. Three of them played on Super Bowl championship teams.[2]

***Sean Morey*** played nine seasons with the New England Patriots, Philadelphia Eagles, Pittsburgh Steelers, Arizona Cardinals, and Barcelona Dragons, an NFL Europe team. An Ivy League stand-out at Brown University, Mr. Morey set multiple collegiate records and graduated with academic honors. In 1999, the New England Patriots selected him as a seventh round draft pick. In 2003, Mr. Morey won the Special Teams MVP award while playing with the

---

[1] *See* Mem. 1 ("[T]he Settling Parties became so confident in the prior actuarial assumptions and projections that an agreement to uncap the amount of the Monetary Award Fund was reached.").

[2] As described in greater detail *infra* at page 14, Objectors are the same group of players who moved to intervene on May 5, 2014.

2

Philadelphia Eagles. In 2004, Mr. Morey moved to the Pittsburgh Steelers, where he was captain of the special teams and earned a Super Bowl ring. He eventually moved to the Arizona Cardinals and was named to the 2008 Pro Bowl. Mr. Morey retired just before the 2010 season. While an active player, Mr. Morey co-chaired the NFLPA Mackey White Traumatic Brain Injury Committee and served as a representative in collective bargaining negotiations with the NFL. He is currently head coach of the sprint football team at Princeton University.

*Alan Faneca* played 13 seasons in the NFL as an offensive lineman. A star at Louisiana State University, Mr. Faneca received consensus All-American honors as a junior and was named a finalist for the prestigious Outland Trophy, which recognizes the best interior lineman in college football. Selected by the Pittsburgh Steelers in the first round of the 1998 NFL draft, Mr. Faneca was named the team's rookie of the year. A fixture on the Steelers' offensive line for ten seasons, Mr. Faneca earned a Super Bowl ring in 2006. In 2007, Steeler fans elected him to the Steelers' 75th Anniversary All Time Team. Mr. Faneca left the Steelers in 2008 for two seasons with the New York Jets and joined the Arizona Cardinals for his final season in 2010. He was named to the Pro Bowl every year from 2001 through 2009. Since retiring from professional football, Mr. Faneca has been a tireless advocate for epilepsy research.

*Ben Hamilton* played ten seasons in the NFL as an offensive lineman for the Denver Broncos from 2001 until 2009, and for the Seattle Seahawks in 2010. He was a fourth-round draft pick out of the University of Minnesota. He is currently a high school math teacher at a private Christian high school in Colorado.

*Robert Royal* played nine seasons in the NFL from 2002 until 2010 with the Washington Redskins, Buffalo Bills, and Cleveland Browns. An All-SEC tight end at Louisiana State University, Mr. Royal averaged nearly ten yards per reception over the course of his NFL career.

Mr. Royal now serves as CEO of the Robert Royal Foundation, an organization he founded to promote childhood health, fitness, and education and to combat youth violence. Mr. Royal is also involved in several private equity ventures.

*Roderick "Rock" Cartwright* played ten seasons in the NFL after a stellar collegiate career at Kansas State University. A fullback and kick return specialist, Mr. Cartwright played with the Washington Redskins from 2002 until 2009 and the Oakland Raiders from 2010 until 2011. In 2006, Mr. Cartwright amassed 1,541 kick-off return yards, setting a Redskins record. Since retiring from the NFL, Mr. Cartwright has actively involved himself in charity work, volunteering at a summer sports camp hosted by the Robert Royal Foundation, among others. Mr. Cartwright is also a manager with Cartwright Energy Partners LLC, an oil production development firm.

*Jeff Rohrer*, a second-round draft pick out of Yale University, played seven seasons in the NFL with the Dallas Cowboys from 1982 until 1989. An outside linebacker, Mr. Rohrer received All-Ivy League honors and was the Cowboys' second- and third-leading tackler in 1986 and 1987, respectively. Since retiring from the NFL, Mr. Rohrer has worked in the film industry. He is currently a partner and executive producer at Recommended, a Los Angeles-based production company.

*Sean Considine* played eight seasons in the NFL as a strong safety and on special teams from 2005 until 2012. After attending the University of Iowa, Mr. Considine was drafted by the Philadelphia Eagles and played four seasons with them and then two seasons with the Jacksonville Jaguars. In 2011, he signed with the Carolina Panthers, finishing that season with the Arizona Cardinals. Mr. Considine joined the Baltimore Ravens in 2012, earning a Super

4

Bowl ring.  Since retiring from professional football, Mr. Considine has been active with numerous charities in his hometown and recently became a small business owner.

Since leaving the NFL, Objectors each have experienced one or more of a wide range of symptoms linked to repetitive mild traumatic brain injury ("MTBI"), including a sensitivity to noise, visuospatial issues, visual impairment, chronic pain, executive function deficit, episodic depression, mood and personality changes, chronic headaches, dysnomia, a decreased ability to multi-task, peripheral nerve dysfunction (numbness, burning, and/or tingling), cervical spinal disorders, sleep dysfunction, attention and concentration deficits, short- and long-term memory deficits, and somatic disorders.  Additionally, under certain circumstances some of the Objectors also have experienced a decreased ability to interpret, regulate, express, or control complex emotions.  These precise conditions have been associated with CTE and may broaden or intensify.

Although the Objectors' claims for their injuries would be released by the Revised Settlement, none would qualify for any relief under the settlement beyond participation in the Baseline Assessment Program ("BAP").  And the BAP – which measures cognitive deficits such as memory impairment and loss of attention – does not even screen for many of the Objectors' neurobehavioral conditions or neuropsychiatric presentations.

## II.     The Class Action Complaint

The Class Action Complaint defines a class consisting of all living, retired NFL Football Players who have retired from the NFL before preliminary approval of the proposed settlement agreement as well as representatives of retired NFL players who have died or become legally incapacitated.  *Turner v. Nat'l Football League*, Civ. A. No. 2:14-cv-29-AB, Dkt. No. 1 ¶¶ 1, 16 (E.D. Pa. Jan. 6, 2014) ("Complaint").  It further defines NFL Football Players to include not just players in the NFL and its member clubs but also players in the American Football League,

5

which merged with the NFL, and the NFL Europa League. *Id.* ¶ 1.[3]   The class also includes spouses, parents, dependent children, and any other person who under state law may sue the NFL by virtue of his or her relationship with the retired player. *Id.*

The Complaint divides the class into two sub-classes.  Subclass 1 consists of all retired players (and their representative and derivative claimants) who "were not diagnosed with dementia, Alzheimer's Disease, Parkinson's Disease, ALS and/or Death with CTE prior to the date of the Preliminary Approval and Class Certification Order." *Id.* ¶ 17(a).  Subclass 2 consists of all retired players (and their representative and derivative claimants) who "were diagnosed with dementia, Alzheimer's Disease, Parkinson's Disease, ALS and/or Death with CTE prior to the date of the Preliminary Approval and Class Certification Order." *Id.* ¶ 17(b). Subclass 2 also includes the representative and derivative claimants of retired players "who died before Preliminary Approval" of the settlement and who "received a post-mortem diagnosis" of Death with CTE. *Id.*

The Complaint names Shawn Wooden and Kevin Turner as the Representative Plaintiffs for the class.  Mr. Wooden represents Subclass 1.  Compl. ¶ 17(a).  A safety, Mr. Wooden played in the NFL from 1996 until 2004 with the Miami Dolphins and the Chicago Bears. *Id.* ¶ 4.  He is alleged to have "experienced" unspecified "neurological symptoms" but "has not been diagnosed with any neurocognitive impairment." *Id.*  The Complaint states that Mr. Wooden has an "increased risk of developing dementia, Alzheimer's, Parkinson's, or ALS." *Id.* ***Mr. Wooden does not plead an increased risk of developing CTE***. *Id.*  Mr. Turner represents Subclass 2. *Id.* ¶ 17(b).  A running back, Mr. Turner played in the NFL from 1992 until 1999

---

[3] The settlement class also includes players in the World League of American Football and the NFL Europe League, both predecessors to NFL Europa.  Compl. ¶ 1.

with the New England Patriots and the Philadelphia Eagles. *Id.* ¶ 7. He was diagnosed with ALS in 2010. *Id.*

The Complaint alleges that the NFL voluntarily undertook a duty to inform its players of the risks resulting from repeated concussive and sub-concussive head impacts and to provide its players with advice concerning the treatment and prevention of head injuries. Compl. ¶¶ 128-199. It alleges that the NFL not only performed this task negligently, but also purposefully spread misinformation to conceal from its players the risks of repetitive head trauma. *Id.* Not only did the NFL's concealment delay players from seeking and receiving adequate medical treatment for the injuries they sustained while playing, *id.* ¶ 285, the NFL's behavior caused players to incur an increased, additional incremental risk of permanent brain damage with every mismanaged concussion, *id.* ¶ 384.

The Complaint also pleads a causal connection between football and neurodegenerative disease. Compl. ¶¶ 54-88. It identifies several studies demonstrating that the repeated head injuries or concussions sustained during an NFL player's career cause severe neurological problems such as depression, dementia, and other neurodegenerative diseases. *Id.*[4] It alleges the NFL's knowledge of these studies and the link between MTBI and neurodegenerative disease, describing the NFL's efforts to intentionally conceal and cover up these dangers. *Id.* ¶¶ 89-199. Specifically, the Complaint alleges that in 1994 the NFL established a committee of experts to study brain injury in football (the MTBI Committee), which published reports and reached

---

[4] Indeed, at least one study has "confirm[ed] the presence of acute pathological changes in the brain that can occur from . . . blows to the head that are below the threshold for producing what behaviorally would be classified as a concussion." Erin D. Bigler, *Neuropsychology and Clinical Neuroscience of Persistent Post-Concussive Syndrome*, 14 J. Int'l Neuropsychological Soc'y 1, 7 (2008).

conclusions inconsistent with the weight of scientific evidence and which concealed from players the true risks of continued head trauma. *Id.* ¶¶ 128-199.

Complaints filed against the NFL in other courts have also alleged that the NFL's actions exacerbated the injuries that players sustained while playing football. For example, the complaint in *Finn v. National Football League* describes the routine pre-game mass administration of Toradol, a blood-thinning pain-killer, to players without their informed consent regarding the health risks of the drug. Complaint, *Finn v. Nat'l Football League*, No. 2:11-cv-07067-JLL-MAH, ¶¶ 135-143 (D.N.J. Dec. 8, 2011) (Dkt. 4) ("Finn Compl."). Toradol's use typically is limited to the surgical setting, and several European countries have banned it. Sally Jenkins & Rick Maese, *Pain and Pain Management in NFL Spawn a Culture of Prescription Drug Use and Abuse*, The Washington Post (Apr. 13, 2013);[5] *see also* United Nations Department of Economic and Social Affairs, *Consolidated List of Products Whose Consumption and/or Sale Have Been Banned, Withdrawn, Severely Restricted or Not Approved by Governments* 156-57 (2005) (entry for ketorolac).[6]

Because Toradol has blood-thinning properties, it is ***contraindicated*** for "patients . . . at high risk of bleeding" and presents an increased risk of stroke. *Finn* Compl. ¶ 137; *see also* Roche, FDA-Mandated Warning Label for Toradol, at 1-2.[7] On top of those risks, Toradol "mask[s] pain" and "prevent[s] the feeling of injury," *Finn* Compl. ¶¶ 135, 140, which makes it more likely that a player will report that he feels no or little pain from a precise trauma and then

---

[5]  *Available at* http://www.washingtonpost.com/sports/redskins/pain-and-pain-management-in-nfl-spawn-a-culture-of-prescription-drug-use-and-abuse/2013/04/13/3b36f4de-a1e9-11e2-bd52-614156372695_story.html.

[6] *Available at* http://www.un.org/esa/coordination/CL12.pdf.

[7] *Available at* http://www.accessdata.fda.gov/drugsatfda_docs/label/2013/019645s019lbl.pdf.

return to play.  Because "a prior concussion increases the likelihood of a second concussion," Bigler, *supra*, at 8, the routine administration of Toradol compounded the risk that players would suffer multiple instances of head trauma in a single game or practice.[8]  The Objectors include players who have received those Toradol injections.

The Complaint specifically identifies several long-term injuries arising from MTBI, "including, **but not limited to** memory loss, dementia, Alzheimer's Disease, Parkinson's Disease, ALS, depression, and CTE and its related symptoms."  Compl. ¶ 127 (emphasis added).  "CTE is the long-term neurological consequence of repetitive mild TBI."  Barry D. Jordan, *The Clinical Spectrum of Sport-Related Traumatic Brain Injury*, 9 Nature Reviews Neurology 222, 225 (2013).  The condition results from the build-up in the brain of mis-folded tau protein.  Neal Emery, *How to Diagnose a Battered Brain Before It's Too Late*, The Atlantic (May 8, 2012);[9] A.C. McKee *et al.*, *The Spectrum of Disease in Chronic Traumatic Encephalopathy*, 136 Brain: A Journal of Neurology 43, 45 (2012) ("McKee 2012").  More extensive tau build-up indicates a more advanced stage of CTE.  Jordan, *supra*, at 227 (Box 5).

While a devastating medical condition, CTE is not readily diagnosed absent a post-mortem brain autopsy.  Jordan, *supra*, at 226.  Scientific advances, however, are making it possible to detect CTE earlier.[10]  Researchers in Chicago, for example, are developing a CTE screening test that relies on irregularities in vision, eye movements, and retinal/optic nerve

---

[8] A prior concussion also results in a "greater morbidity of the second concussion."  Bigler, *supra*, at 8.

[9] *Available at* http://www.theatlantic.com/health/archive/2012/05/how-to-diagnose-a-battered-brain-before-its-too-late/256877/.

[10] *See* Emery, *supra* (noting "pilot studies show promise for [using] diagnostic MRI and MRS scans [to diagnose CTE] as brain imaging technology improves").

structure as indicators of CTE.[11]  And a number of different research teams are developing bio-markers that highlight the tau protein tangles responsible for CTE using conventional diagnostic imaging technology.[12]  Thus, long before the Revised Settlement concludes its 65-year term, it is likely that a large number of class members will have received a diagnosis of CTE before they die.  That diagnosis will not entitle them to any compensation under the Revised Settlement.

Even with current technology, doctors can identify likely cases of CTE based on other neurocognitive symptoms that display during an individual's lifetime and that correlate with a post-mortem diagnosis of CTE.  Among others, these presentations include: aggression, agitation, impulsivity, depression, suicidality, impaired attention or concentration, memory problems, executive dysfunction, dementia, and language impairment.  Written Testimony of Dr. Robert Stern before the Senate Special Committee on Aging, at 4-5 (June 25, 2014) ("Stern Testimony");[13] Jordan, *supra*, at 226; McKee 2012, *supra*, at 52, 55-56, 58-59; Ann C. McKee *et al.*, *Chronic Traumatic Encephalopathy in Athletes: Progressive Tauopathy After Repetitive Head Injury*, 68 J. Neuropathology & Experimental Neurology 709, 710 (2009) ("McKee 2009); Christine M. Baugh *et al.*, *Chronic Traumatic Encephalopathy: Neurodegeneration Following Repetitive Concussive and Subconcussive Brain Trauma*, Brain Imaging and Behavior, 3 (May 3,

---

[11] Dan McGrath, *Illinois Eye Institute Project Aims to Identify CTE in the Living*, Chicago Sun-Times (June 14, 2014 4:35 PM), http://www.suntimes.com/sports/28048920-419/illinois-eye-institute-project-aims-to-identify-cte-in-the-living.html#.U6CR0fldV8E.

[12] *E.g.*, Kyle Wagner, *Can Science See Inside an NFL Player's Skull Before It's Too Late?*, Deadspin (June 21, 2012 9:00 AM), http://regressing.deadspin.com/5920006/can-science-see-inside-an-nfl-players-skull-before-its-too-late; M. Maruyama *et al.*, *Imaging of Tau Pathology in a Tauopathy Mouse Model and in Alzheimer Patients Compared to Normal Controls*, 79 Neuron 1094 (2013); Mark Hollmer, *Alzheimer's Diagnosis May Gain from PET Imaging of Tau Proteins*, FierceDiagnostics (Sept. 20, 2013), http://www.fiercediagnostics.com/story/alzheimers-diagnosis-may-gain-pet-imaging-tau-proteins/2013-09-20; William Jagust, *Time for Tau*, 137 Brain: A Journal of Neurology 1570 (2014).

[13] *Available at* http://www.aging.senate.gov/imo/media/doc/Stern_6_25_14.pdf.

2012); Robert A. Stern *et al.*, *Clinical Presentation of Chronic Traumatic Encephalopathy*, 81 Neurology 1122, 1126 (2013). While some of those conditions appear more pronounced in advanced Stage III and Stage IV CTE, suicidality presents at all stages. McKee 2012, *supra*, at 49-51 (Table 2), 55-56, 58-59.[14]

Studies to date have suggested an alarming number of NFL players will be afflicted with CTE. Of the 34 deceased NFL retirees whose brains have been tested for CTE, 33 had the disease. McKee 2012, *supra*, at 59.[15] Of those 33, nearly half showed signs of Stage III or Stage IV CTE – CTE's two most severe stages. *Id.* And almost all of these players – 94% – were symptomatic during their lifetimes. *Id.* The most common symptoms were short-term memory loss, executive dysfunction, and attention and concentration problems. *Id.*

## III. The Initial Settlement

In August 2013, the court-appointed mediator informed the Court that Class Counsel and NFL Defendants would globally settle all claims arising from the NFL's fraudulent and misleading conduct relating to the effects of MTBI. *See* Dkt. No. 5235. In a press release announcing the settlement, the mediator explained that the settlement called for a $675 million

---

[14] Junior Seau and Dave Duerson – two prominent former NFL players – committed suicide by shooting themselves in the heart to preserve their brains for study. *See* Nathaniel Penn, *The Violent Life and Sudden Death of Junior Seau*, GQ Magazine (Sept. 2003), http://www.gq.com/entertainment/sports/201309/junior-seau-nfl-death-concussions-brain-injury; Paul Solotaroff, *Dave Duerson: The Ferocious Life and Tragic Death of a Super Bowl Star*, Men's Journal (May 2011), *available at* http://www.mensjournal.com/magazine/dave-duerson-the-ferocious-life-and-tragic-death-of-a-super-bowl-star-20121002. Before committing suicide, Seau battled insomnia, headaches, dizziness, and other conditions linked to CTE. Penn, *supra*. Like Seau, Duerson also showed signs of CTE before his suicide, which manifested as "starburst headaches," blurred vision, and short-term memory deficits. Solotaroff, *supra*.

[15] Media reports suggest that 54 brains of retired NFL players have been examined for CTE. Of those, 52 showed signs of the disease. Steve Fainaru & Mark Fainaru-Wada, *Some Players May Be Out of NFL Deal*, ESPN.com (Sept. 20, 2013 1:04 PM), http://espn.go.com/chicago/story/_/id/9690036/older-players-cut-nfl-settlement-concerns-growing-whether-enough-money-exists

fund to "compensate former players who have suffered cognitive injury or their families," among other terms.[16] The fund was to compensate "severe cognitive impairment, dementia, Alzheimer's, [and] ALS."[17] "The precise amount of compensation," the mediator stated, "will be based upon the specific diagnosis, as well as other factors including age, number of seasons played in the NFL, and other relevant medical conditions."[18] Neither Class Counsel nor the mediator ever suggested that the settlement would compensate only those few cases of CTE detected before preliminary approval of the settlement, to the exclusion of all future cases.[19]

Five months later, on January 6, 2014, Class Counsel for the first time publicly revealed the specific terms of the settlement when they filed their first motion for preliminary approval. *See* Dkt. No. 5634. Notwithstanding the breadth of afflictions linked to MTBI, that settlement compensated only a limited number of diseases and limited total class-wide compensation for those injuries to $675 million.[20] *See* Dkt. No. 5634-2 §§ 23.1-23.5. ALS claimants were to receive a maximum award of $5 million. *See id.* at Ex. 3. Retired players diagnosed with Parkinson's Disease or Alzheimer's Disease were to receive a maximum $3.5 million award. *Id.* And class members exhibiting Level 2 or Level 1.5 dementia were to receive at most $3 million or $1.5 million, respectively. *Id.* The full written initial settlement also revealed that – contrary to previous public statements from Class Counsel – it would compensate cases of CTE with a

---

[16] Press Release, *NFL, Retired Players Resolve Concussion Litigation*, Irell & Manella LLP, http://static.nfl.com/static/content/public/photo/2013/08/29/0ap2000000235504.pdf.

[17] *Id.*

[18] *Id.*

[19] *Id.*; Associated Press, *NFL, Ex-Players Agree to $765M Settlement in Concussions Suit*, NFL.com (Aug. 29, 2013 12:42 PM), http://www.nfl.com/news/story/0ap1000000235494/article/nfl-explayers-agree-to-765m-settlement-in-concussions-suit

[20] Calling it a $675 million fund was not, in fact, accurate. It was a $300 million fund paid over two years, with another $375 million paid over 17 years. *See* Dkt. No. 5634-2 §§ 23.1-23.5.

maximum $4 million award *only if the retired player died before preliminary approval* of the settlement. *See* Dkt. No. 5634-2 §§ 2.1(xxx), 6.3 & Ex. 1 ¶ 5.[21] Players suffering from CTE who would be diagnosed or who died after that date were to receive nothing. Moreover, players suffering from the clinical presentations of CTE were to receive no compensation under the settlement unless they independently qualified for compensation through one of the other specified diseases. *Id.* § 6.3.

The initial settlement also created a Baseline Assessment Program ("BAP") that would have provided class members the opportunity to undergo a baseline assessment examination, which would establish the class member's baseline neurocognitive functioning and screen for dementia and neurocognitive impairment. Dkt. 5634-2 § 5.2. Class members who were diagnosed with Level 1 dementia in the baseline assessment examination would be entitled to supplemental benefits that would cover the costs of medical treatments related to the dementia. *Id.* §§ 5.2, 5.11. The term of the BAP was to last ten years, but class members receiving supplemental benefits would continue to do so for up to five years beyond that ten-year term. *Id.* §§ 5.5, 5.11. The initial settlement capped the BAP Fund at $75 million. *Id.* § 23.3(g).

On January 14, 2014, this Court, *sua sponte*, denied Class Counsel's motion for preliminary approval of the settlement, declining to find that the settlement "has no obvious deficiencies, grants no preferential treatment to segments of the class, and falls within the range of possible approval." *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 715 (E.D. Pa. 2014) ("NFL Concussion") (quotation marks omitted). Instead, the Court recognized that the "Monetary Award Fund may lack the necessary funds to pay Monetary

---

[21] Compensation for CTE is further limited by the Revised Settlement's exclusion of compensation for most class members who died before 2006. Revised Settlement § 6.2(b).

Awards for Qualifying Diagnoses" and "[*a*]*s a first step* toward preliminary approval" "order[ed] the parties to share the [actuarial and economic] documentation" relied upon during settlement "with the Court through the Special Master." *Id.* at 715-16 (emphasis added).[22]

Following the Court's denial of preliminary approval, Objectors moved to intervene. *See* Dkt. No. 6019. They explained that their interests were not adequately represented during the negotiation of the initial settlement, in part, because that settlement arbitrarily denied compensation to individuals whose CTE went undetected until after preliminary approval. Because each Objector exhibits MTBI-related conditions that are also symptoms of CTE, each is at risk of developing CTE but – even though the settlement awarded $4 million to the families of players who died with CTE before final approval of the settlement – they and their families would receive nothing. *Id.* at 13-18. In opposing the motion to intervene, Class Counsel ignored this fact entirely, offering no explanation for the disparate treatment of CTE claimants. *See* Dkt. No. 6046. Objectors also criticized the 75% offset imposed on any player who suffers a *single* stroke or a *single* instance of non-football related traumatic brain injury ("TBI"). Dkt. 5634-2 § 6.5(b)(ii)-(iii). Such a player would recover only 25% of what he is otherwise entitled to receive under the settlement. Again, Class Counsel's opposition was devoid of any explanation for this offset. *See* Dkt. No. 6046. Objectors noted other defects in the initial settlement and other class members voiced criticism as well.[23]

---

[22] Class Counsel never fully informed the class about whether they complied. The most assurance they have given to this effect is that they have "made concerted efforts to evaluate this Court's directives and address them in a fruitful and productive manner." Dkt. 6046 at 10.

[23] *See, e.g.*, Dkt. Nos. 5686, 5771; Steve Almond, *The NFL Gets Off Easy in Concussion Settlement*, The Boston Globe (June 27, 2014), *available at* http://www.bostonglobe.com/opinion /2014/06/26/the-nfl-gets-off-easy-concussion-settlement/PUFYxln6dFqlOdbe6wnhzJ/story.html; Steve Fainaru & Mark Fainaru-Wada, *Some Players May Be Out of NFL Deal*, ESPN Outside the Lines (Sept. 20, 2013 1:04 pm), *available at* http://espn.go.com/espn/otl/story/_/id/9690036

14

## IV.    The Revised Settlement

Notwithstanding those criticisms of the initial settlement, Class Counsel on June 25, 2014 submitted a revised settlement agreement that retained the same structure, and almost all of the key provisions of the initial settlement. *See* Dkt. No. 6073-2 ("Revised Settlement"). Class Counsel moved for preliminary class certification and for preliminary approval of the Revised Settlement. *See* Dkt. No. 6073.

Like the initial settlement, the Revised Settlement compensates only the same limited subset of diseases that have been linked to MTBI: ALS, Parkinson's, Alzheimer's, Level 2 dementia, and Level 1.5 dementia. Revised Settlement Ex. B-3. It also retains the maximum compensation awards provided for each of these diseases in the initial settlement. *Id.* And like the initial settlement, the Revised Settlement compensates cases of CTE with $4 million, but ***only if the claimant dies before preliminary approval of the settlement agreement.*** Revised Settlement §§ 2.1(yyy), 6.2(a) (providing compensation for a "Qualifying Diagnosis"); *id.* Ex. B-1 at 5.[24] Unlike its predecessor, the Revised Settlement does not cap total compensation for ALS, Parkinson's, Alzheimer's, and Levels 1.5 and 2 dementia, but it retains the $75 million cap on the BAP Fund. *See* Dkt. 6073-5 at 4 ("Mem.").

---

/older-players-cut-nfl-settlement-concerns-growing-whether-enough-money-exists; Scott Fujita, *Mixed Feelings Over N.F.L. Concussion Settlement*, N.Y. Times (Sept. 2, 2013), *available at* http://www.nytimes.com/2013/09/03/sports/football/mixed-feelings-over-nfl-concussions-settlement.html?pagewanted=all&_r=0; Don Banks, *Former Players: Devil Is in the Details with NFL Concussion Settlement*, SI.com (Aug. 23, 2013), *available at* http://www.si.com /nfl/2013/08/29/nfl-concussion-lawsuit-settlement-player-reaction-kevin-mawae.

[24] Section 6.2(a) of the Revised Settlement provides compensation for any "Qualifying Diagnosis." Section 2.1(yyy) defines "Qualifying Diagnosis" to include "Death with CTE." Exhibit B-1 defines "Death with CTE" as follows: "For Retired NFL Football Players ***who died prior to the date of the Preliminary Approval and Class Certification Order***, a post-mortem diagnosis of CTE made by a board-certified neuropathologist." Revised Settlement Ex. B-1 at 5 (emphasis added).

The Revised Settlement still has a series of offsets that reduce a claimant's compensation. Most notably, without explanation, the Revised Settlement retains the 75% offset for a single stroke or a single TBI. *Id.* § 6.7(b)(ii)-(iii). Additionally, class members who played fewer "Eligible Seasons" in the NFL receive only a percentage of the maximum award for their condition. *See* Revised Settlement § 6.7(b)(i). Although class members receive "Eligible Season" credit for service on "practice, developmental, or taxi squad[s]," time spent playing for NFL Europe or NFL Europa (collectively, "NFL Europe") does not apply to the "Eligible Season" determination. *Id.* §§ 2.1(kk), 6.7(c)(1). Similarly, class members who are older at the time of the Qualifying Diagnosis receive only a percentage of the maximum award for their condition. *See* Revised Settlement § 6.7(b) & Ex. B-3.

A complex series of administrative procedures governs the distribution of benefits. Class members must register with the Claims Administrator within 180 days of Settlement Class Supplemental Notice. Revised Settlement § 4.2(c). Failure to do so renders the player ***completely ineligible*** for any benefits, yet the release would be binding. *Id.* Additionally, the undiagnosed players in Subclass 1 must undergo the baseline assessment examination to receive the full award; failure to undergo the examination results in a 10% reduction in benefit. *Id.* §§ 5.4, 6.7(b)(iv). The Baseline Assessment Program itself imposes a series of deadlines. Players aged 43 and older must obtain the BAP examination within two years after the BAP commences; younger players must do so by the earlier of their 45th birthday or the BAP's tenth year. *Id.* § 5.3. Both the NFL and claimants may appeal adverse claim determinations. *Id.* §§ 9.5-9.7. The initial settlement limited the NFL to ten appeals per year, but the Revised Settlement allows unlimited appeals by the NFL. *Compare* Dkt. No. 5634-2 § 9.6(b) *with*

16

Revised Settlement § 9.6(b). Claimants – but not the NFL – must pay a $1,000 fee to docket an appeal. Revised Settlement § 9.6(a). The fee is refunded if the appeal is successful. *Id.*

The Revised Settlement broadly releases all MTBI-related claims of every class member who does not opt out, including claims of class members who played in NFL Europe and its predecessors. Class members:

> waive and release . . . any and all past, present and future claims, counterclaims, actions, rights or causes of action . . . in law or in equity . . . known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated [that any settling plaintiff] had, has, or may have in the future arising out of, in any way relating to or in connection with the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, referred to or relating to the Class Action Complaint and/or Related Lawsuits . . . .

Revised Settlement § 18.1(a). The Revised Settlement states that the claims it releases include, among others, claims "arising out of, or relating to . . . head, brain and/or cognitive injury, as well as any injuries arising out of, or relating to, concussions and/or subconcussive events . . . of whatever cause" and claims "arising out of, or relating to, CTE." *Id.* § 18.1(a)(i), (iv), (vi). The settlement's release also requires class members to acknowledge that they "explicitly took unknown or unsuspected claims into account in entering into the Settlement Agreement and it is the intention of the Parties fully, finally and forever to settle and release all Claims" falling within the scope of the allegations in the Complaint and related lawsuits. *Id.* § 18.2.

The Revised Settlement calls for a $112.5 million attorneys' fee, which the NFL Defendants have agreed not to oppose. Revised Settlement § 21.1. It also authorizes Co-Lead Class Counsel to "petition the Court to set aside up to five percent (5%) of each Monetary Award . . . to facilitate the Settlement program and related efforts of Class Counsel." *Id.* The initial

17

settlement did not contain this set-aside provision.  *Compare id. with* Dkt. No. 5634-2 § 21.1.[25]
The Revised Settlement places no limits on how Co-Lead Class Counsel may use the set aside.

## ARGUMENT

To receive preliminary approval of a proposed class settlement, Class Counsel must first demonstrate the existence of a certifiable class.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 794 (3d Cir. 1995), *cert. denied* 516 U.S. 824 (1995) (denying approval of settlement where class not certifiable).  Second, Class Counsel must proffer a settlement that "discloses [no] grounds to doubt its fairness . . . and appears to fall within the range of possible approval."  *In re Nat'l Football League Players Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (quotation marks omitted) ("NFL Concussion"); *see also* Fed. R. Civ. P. 23(e) (class settlement may be approved only if "it is fair, reasonable, and adequate").  In assessing whether a settlement "discloses grounds to doubt its fairness," the Court must consider whether: (1) the negotiations occurred at arm's length, (2) there was sufficient discovery, (3) the proponents of the settlement are experienced in similar litigation, and (4) the class substantially favors the settlement.  *NFL Concussion*, 961 F. Supp. 2d at 714.

If the proposed settlement appears to be the product of informed negotiations, contains no obvious deficiencies, does not improperly give preferential treatment to certain class members, and falls within the range of possible approval, preliminary approval will be granted.  *See* Manual for Complex Litigation § 21.61 (4th ed. 2004).  Conversely, if "the proposed settlement discloses grounds to doubt its fairness . . . such as unduly preferential treatment of class

---

[25] The NFL Defendants have taken no position on the propriety of the set aside, noting that "any such proposed set aside application is a matter strictly between and among Settlement Class Members, Class Counsel, and individual counsel for Settlement Class Members."  Revised Settlement § 21.1.

representatives or segments of the class, or excessive compensation of attorneys," and does not "appear[] to fall within the range of possible approval," preliminary approval will be denied. *NFL Concussion*, 961 F. Supp. 2d at 714 (quotation marks omitted); *see, e.g., Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007).

## I. The Proposed Class Contains Internal Conflicts Rendering It Uncertifiable

Class Counsel have not put forth a certifiable class. Rule 23 plainly states, "one or members of a class may sue or be sued as representative parties on behalf of all members only if: . . . (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The proposed class fails this requirement.

The "linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183, 187-88 (3d Cir. 2012) (emphasis added) (denying preliminary class certification where interests of representative plaintiffs and absent class members diverged). Thus, "adversity among subgroups" – an intra-class conflict – requires that the class not be certified. *Amchem v. Windsor Prods. Inc.*, 521 U.S. 591, 627 (1997) (quotation marks omitted) (denying class certification where conflict existed between present and future claimants).

When assessing the adequacy of representation, "a judge must focus on the settlement's distribution terms (or those sought) to detect situations where some class members' interests diverge from those of others in the class." *GM Trucks*, 55 F.3d at 797 (finding representation inadequate where settlement terms preferred some class members over others). Thus, "a settlement that offers considerably more value to one class of plaintiffs than to another may be trading the claims of the latter group away in order to enrich the former group." *Id.* "Offer[ing]

considerably more value to one class of plaintiffs" is precisely what the Revised Settlement does here.

The Revised Settlement suffers from at least three intra-class conflicts that preclude preliminary certification. *First*, the Revised Settlement arbitrarily limits compensation for CTE – a disease that neither Representative Plaintiff claims to be at increased risk of developing – to individuals who died before preliminary approval of the settlement. Class members whose CTE is discovered in the future receive nothing. The settlement also does not compensate Objectors' MTBI-related afflictions, many of which are potential indicators of CTE, and none of which the Representative Plaintiffs claim to suffer. *Second*, the Revised Settlement reduces a claimant's award by 75% if (i) the claimant has suffered a stroke, even though the NFL Defendants' own conduct in administering Toradol increased some Objectors' risk of stroke, or (ii) the claimant has suffered a *single* TBI, even though one TBI is dwarfed by the dozens of diagnosed and undiagnosed TBIs that the retired NFL player received while playing in the NFL. *Third*, the settlement class includes veterans of NFL Europe, but the Revised Settlement does not credit seasons played in that league as "eligible seasons."

### A. The Revised Settlement Leaves Many Injured Class Members Uncompensated

The Revised Settlement compensates only a small subset of MTBI-related injuries to the exclusion of all others, creating conflict between the interests of those who suffer from compensated injuries and those whose injuries go without relief. *See Dewey*, 681 F.3d at 183, 187-88 (denying class certification where settlement terms preferred some class members over others). As a result of their NFL careers, Objectors suffer from a range of significant medical conditions: visuospatial difficulties, executive function deficit, chronic headaches, dysnomia, decreased emotional stability, increased impulsivity, and attention and concentration deficits.

20

None of these conditions receives compensation or medical treatment under the settlement.  The failure to compensate or treat these afflictions is made more notable by Co-Lead Class Counsels' own recognition of the links between MTBI and these uncompensated conditions.  *See, e.g.*, Compl. ¶ 127 (noting "MTBI can and does lead to long-term brain injury, **including, but not limited to, memory loss**, dementia, Alzheimer's Disease, Parkinson's Disease, ALS, **depression**, and **CTE** and **its related symptoms**." (emphasis added)); *Finn* Compl. ¶¶ 36, 100-145.[26]

The disparate – and arbitrary – treatment of class members suffering from these uncompensated afflictions is particularly stark in light of the Revised Settlement's framework for compensating CTE.  The uncompensated conditions afflicting Objectors are among the well-documented symptoms of CTE.  McKee 2012, *supra*, at 60; Jordan, *supra*, at 226-27.[27]  And while CTE found in a retired player who died on the eve of preliminary approval calls for a $4 million payment under the Revised Settlement, that same condition goes uncompensated if the player dies one day later, after preliminary approval.  That is because the settlement defines "qualifying diagnosis" to include "a post-mortem diagnosis of CTE" *only* "[f]or Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order."  Revised Settlement Ex. B-1 ¶ 5; *see also* Revised Settlement ¶¶ 2.1(yyy), 6.3(a).[28]  Thus, former players like Objectors who currently are managing the cumulative effects of MTBI – many of which are consistent with the presentation of CTE – would have received no compensation and would continue bearing their medical costs even if their condition progressed to full-blown CTE.

---

[26] Co-Lead Class Counsel is one of the attorneys representing the plaintiffs in *Finn*.

[27] *See Stern Testimony*, *supra*.

[28] These terms remain unchanged from the initial settlement notwithstanding Objectors' Motion to Intervene, which shouted this deficiency to Class Counsel.

21

That limitation on CTE compensation is remarkable:  Given that 33 of the 34 deceased NFL players whose brains have been examined for CTE have been diagnosed with the condition, one of the lead CTE researchers has wondered whether "every single football player doesn't have" CTE.[29]  By contrast, one study examining NFL retirees who played at least five seasons between 1959 and 1988 recorded seven cases of ALS, seven cases of Alzheimer's, and three cases of Parkinson's in *3,439* retired players.  National Institute for Occupational Safety and Health, *Brain and Nervous System Disorders Among NFL Players* (Jan. 2013).[30]  Yet notwithstanding the widespread prevalence of CTE among NFL retirees, the settlement provides *no compensation* to players with CTE who die after preliminary approval of the settlement – likely a large percentage of the 20,000-member putative class.[31]  Co-Lead Class Counsel have never explained or justified the basis for such a stark difference in treatment among players suffering from the exact same MTBI-related condition, even after Objectors identified this deficiency in their Motion to Intervene.[32]

---

[29]  Frontline, transcript of *League of Denial: The NFL's Concussion Crisis*, http://www.pbs.org/wgbh/pages/frontline/sports/league-of-denial/transcript-50/.

[30]  *Available at* http://www.cdc.gov/niosh/pgms/worknotify/pdfs/NFL_Notification_02.pdf.

[31]  In theory, a retired player suffering from CTE could receive compensation through an independent qualifying diagnosis of, for example, Level 1.5 dementia.  But dementia does not always accompany the injuries that Objectors have suffered and not all cases of CTE exhibit dementia.  In one study, for example, no individual presenting with Stage I or II CTE showed signs of dementia despite showing symptoms similar to those that Objectors are experiencing.  McKee 2012, *supra*, at 52, 55.  Even several players with advanced stages of CTE were not considered cognitively impaired.  *Id.* at 56 (noting 25% of the individuals diagnosed with stage III CTE were not considered cognitively impaired).  Indeed, it seems apparent from what is known about the behavior and symptoms of some deceased football players found to have CTE, such as Junior Seau and Dave Duerson, that at least some (and perhaps many) of those deceased players would not have qualified for compensation at all had they not died before preliminary approval of the settlement.

[32]  The decision to compensate all ALS, Alzheimer's, and Parkinson's claims but not all CTE claims certainly cannot be justified with reference to the relative severity of the diseases.  As Dr.

The consequences of denying compensation to class members like the Objectors will multiply over time. Many diseases linked to MTBI exhibit variable latency periods, meaning that the symptoms of MTBI-related afflictions will present earlier in retirement for some former NFL players than for others. Steven T. DeKosky *et al.*, *Traumatic Brain Injury – Football, Warfare, and Long-Term Effects*, The New England Journal of Medicine 1293, 1293-94 (2010). As science advances, moreover, it is likely that MTBI will be shown to correlate with additional diseases, and that CTE will be easily detectable before death. Yet the settlement provides no flexibility for adding to the list of qualifying diseases, compensating new conditions, or compensating pre-death diagnoses of CTE. *See* Revised Settlement §6.6(c) ("In no event will modifications be made to the Monetary Award levels in the Monetary Award Grid, except for inflation adjustment(s).").

Indeed, the Revised Settlement anticipates relevant advances in science and medicine that will allow more precise diagnosis of the effects of MTBIs – *but only to disallow them*.[33] Class members had a strong need for representatives who would have pressed for settlement "provisions that can keep pace with changing science and medicine, rather than freezing in place the science" known at the time of settlement. *Amchem*, 521 U.S. at 610-11 (holding class representation inadequate where settlement did not account for the interests of class members who may develop disease in the future); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630-31

---

Robert Stern explained to the Senate Committee on Aging, CTE causes one's "life [to be] destroyed by the progressive destruction of the brain." *Stern Testimony*, *supra*, at 4.

[33] The Revised Settlement does not compensate a disease detected "through a blood test, genetic test, imaging technique, or otherwise" that "has not yet resulted in actual cognitive impairment and/or actual neuromuscular impairment." Revised Settlement § 6.6(b). Thus, class members cannot avail themselves of technological advances allowing for earlier detection of qualifying diseases by using compensation under the settlement to fund preventive treatment that might forestall the onset of "actual cognitive impairment."

(3d Cir. 1996) (finding class representation inadequate where conflict between currently injured plaintiffs' interest in maximizing current payouts and future plaintiffs' interest in delaying opt-out due to "changing science and medicine" and "difficulty in forecasting what their futures hold"). That the Representative Plaintiffs did not do.

In fact, the Representative Plaintiffs could not fulfill that role. Neither Representative Plaintiff shares Objectors' interest in securing compensation for *all cases* of CTE and other MTBI-related conditions. Mr. Turner, who suffers from ALS, has a diagnosed medical condition that specifically receives compensation under the Revised Settlement (and rightly so). Compl. ¶ 7. But he was not poised to represent the interests of those who have suffered different injuries and receive nothing under the settlement. Neither is Mr. Wooden. Objectors presently exhibit MTBI-related injuries that are clinical indications of CTE. Mr. Wooden, by contrast, has not alleged that he suffers from any MTBI-related affliction. Nor has he alleged that he is at "[an] increased risk of developing" CTE, even though he does assert such a risk for dementia, Alzheimer's Disease, Parkinson's Disease, and ALS. Compl. ¶ 4. Mr. Wooden's interests therefore lie in securing future compensation for those four afflictions, not in securing payment for the Objectors' conditions and for future cases of CTE.[34]

Class Counsel's discussion of the proposed subclasses thus misses the mark. *See* Mem. 52-53. Even if Mr. Wooden adequately represents the interests of Retired Players at risk of developing ALS, Alzheimer's, Parkinson's, or dementia in the future, he cannot represent the interests of Retired Players at risk of developing CTE in the future. Class Counsel has no

---

[34] Even if Mr. Wooden were to now report that he, too, suffers from the conditions affecting Objectors or that he fears the onset of CTE, he cannot reliably represent those interests going forward: He has abdicated any responsibility to those interests by advocating a proposed settlement that ignores those injuries.

response for that criticism. Mem. 52-53. For that reason, the subclasses do not ensure adequate representation. They do not "align[] [the] interests and incentives [of] the representative plaintiffs and the rest of the class." *Dewey*, 681 F.3d at 183 (denying class certification where interests of representative plaintiffs and absent class members diverged).

Nor do Class Counsel offer any justification for the arbitrary treatment of CTE claimants under the Revised Settlement. Instead, Class Counsel assert that the adequacy of representation requirement is met because the Representative Plaintiffs' "claims are co-extensive with those of the absent Settlement Class Members" and because "[a]ll Settlement Class Members, like Plaintiffs, share an interest in obtaining redress from the NFL Parties for their alleged negligence and fraud." Mem. 51. But "[t]o state that class members were united in the interest of maximizing over-all recovery begs the question." *GM Trucks*, 55 F.3d at 797.

When assessing the adequacy of representation, "a judge must focus on the settlement's distribution terms (or those sought) to detect situations where some class members' interests diverge from those of others in the class." *GM Trucks*, 55 F.3d at 797. Class Counsel do not address ***any*** of the Revised Settlement's distribution terms, except to state that "provid[ing] for different levels of compensation for different impairments 'is simply a reflection of the extent of the injury that certain class members incurred and does not clearly suggest that class members ha[ve] antagonistic interests.'" Mem. 52 (quoting *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272 (3d Cir. 2009)). But whether a Retired Player with CTE dies before preliminary approval or after, "the extent of [his] injury" is the same.[35] Indeed, Class Counsel have never attempted to identify a rationale for the disparate treatment that similarly situated CTE claimants

---

[35] That same rationale distinguishes *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999), and *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 239 (S.D. W. Va. 2005).

receive under the Revised Settlement. Mem. 51-55; Dkt. No. 6046. On this point, the heavily touted uncapped compensation fund is irrelevant – an uncapped fund means little to a claimant whose injuries are not among those eligible for medical care, treatment, or fair compensation.

### B. The 75% Offsets Also Create a Conflict Within the Class

The Revised Settlement also imposes offsets that create an additional class conflict. *See Dewey*, 681 F.3d at 183. The proposed settlement **reduces a claimant's award by 75%** for a **single instance** of non-football-related traumatic brain injury ("TBI") or stroke. Revised Settlement § 6.5(b)(ii)-(iii). That 75% offset applies regardless of the severity of traumatic brain injury that the player sustained while playing football. And it presumes that a single non-football-related instance of TBI accounts for 75% of a player's MTBI-related injuries, even though that player may have sustained numerous diagnosed and undiagnosed head traumas throughout his NFL career.[36] That is both devoid of scientific justification and grossly unfair.

Instances of stroke, moreover, should be compensated injuries, not offsets that reduce recovery, **because the NFL itself has increased the risk of stroke for Objectors and other class members**. *See Finn* Compl. ¶¶ 135-143. NFL-administered Toradol injections increased that risk in two ways. First, as a pain-killer, Toradol masks injuries that players may have suffered, encouraging their continued participation in the game and increasing the risk that a player would suffer multiple instances of MTBI in one game. Second, MTBI suffered after a Toradol injection occurs at a time when the cerebrovascular architecture of the brain is particularly weak. *See*

---

[36] The possibility that a class member will sustain an instance of non-football related TBI is not remote. For example, the car insurance industry estimates that the average driver will be involved in a car collision – which could qualify as a TBI that triggers the offset – once every 18 years. Des Toups, *How Many Times Will You Crash Your Car?*, Forbes (July 27, 2011 6:50 PM), http://www.forbes.com/sites/moneybuilder/2011/07/27/how-many-times-will-you-crash-your-car/.

Bigler, *supra*, at 8 (noting that "in TBI the same mechanisms that stretch the neuron can stretch the blood vessel [which] may impair the neurogenic response of the blood vessel").  Toradol is a powerful blood-thinner that increases the risk of stroke and micro-hemorrhaging in players under Toradol's effect.  *Finn* Compl. ¶¶ 135-143; *see also* FDA-Mandated Warning Label, *supra*, at 1.

Large groups of players who weekly received pre-game Toradol injections thus suffered repetitive MTBI at a time when their brains were most susceptible to permanent damage and injury.  That damage itself enhances a retired player's risk of experiencing a stroke later in life. *See* James F. Burke *et al.*, *Traumatic Brain Injury May Be an Independent Risk Factor for Stroke*, 81 Neurology 1 (2013).  On top of these effects, the effects of sustained, long-term Toradol use are completely unknown.  *See* Eddie Matz, *Stick Route*, ESPN The Magazine (Nov. 28, 2011).[37]  Thus, the NFL's own negligent and fraudulent actions have contributed to the prevalence of stroke among retired players.  Co-Lead Class Counsel knew of these allegations – indeed, he represents the *Finn* plaintiffs – yet the settlement makes no mention of these injuries except to release any claims for them and to inexplicably select them as bases for reducing the retired player's compensation.

Representative Plaintiffs did not adequately represent Objectors' interests in eliminating or reducing the offset related to stroke and post-NFL TBI.  Neither Mr. Turner nor Mr. Wooden claims an increased risk of stroke through NFL-administered Toradol use.  As a result, neither can adequately represent those class members who some day may suffer such a stroke – and the resulting drop in compensation under the proposed settlement – as a result of the NFL's own conduct.

---

[37]  *Available at* http://espn.go.com/nfl/story/_/id/7243606/nfl-players-tony-romo-ronde-barber-rely-new-painkiller-toradol.

### C. Class Members Who Played in NFL Europe Are Not Given Credit for the Seasons They Played There

Inexplicably, the Revised Settlement, while releasing all claims of NFL Europe players, does not award class members "Eligible Season" credit for time spent playing in NFL Europe or its predecessors. Revised Settlement § 6.7(c)(i). Thus, a class member who played five years in the NFL will receive a larger settlement award than a class member who played two years of his career in NFL Europe and three years in the NFL. That is true even though players in NFL Europe undoubtedly sustain repeated concussive and subconcussive impacts, just like players in the NFL. Again, Class Counsel offer no justification for this arbitrary distinction. And because neither Mr. Turner nor Mr. Wooden alleges that he played in NFL Europe, neither adequately represents the interests of players who did play there – thus, explaining why NFL Europe players are treated disparately. *See GM Trucks*, 55 F.3d at 800 (finding class representation inadequate where "settlement appears to create antagonism within the class").

\* \* \* \* \*

Simply put, there are distinct groups within the proposed class whose rights have been bargained away without representation. These intra-class conflicts preclude preliminary certification of the settlement class.[38] "The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class. Where "the interests of the representative plaintiffs and the interests of [absentee class members] align[] in opposing

---

[38] Courts also recognize intra-class conflicts as an indication that a settlement is not reasonable at the final approval stage. *See In re GM*, 55 F.3d at 808. A "disparity in the relief afforded under the settlement to the named plaintiffs, on the one hand, and the unnamed class members, on the other hand, [makes] the settlement unfair." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) (reversing district court's approval of a settlement). A court should reject a settlement where such an intra-class conflict is present on the grounds that it does not represent the "best possible recovery" for all putative class members. *In re Pet Food Prods.*, 629 F.3d 333, 355 (3d Cir. 2010).

directions," class representation is inadequate. *Dewey*, 681 F.3d at 188; *see also Amchem*, 521 U.S. at 627 (denying class certification where settlement not agreed to by representatives of all sub-classes); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (holding that intra-class conflict "require[d] division into homogenous subclasses . . . with separate representation to eliminate conflicting interests").[39]

## II. Other Factors Call Into Question Whether the Settlement Can Be Approved as Fair, Adequate, and Reasonable

### A. The Proposed Notice Is False and Misleading

"The due process requirements of the Fifth Amendment and the Federal Rules of Civil Procedure require adequate notice to class members of a proposed settlement." *Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2005 WL 950616, at *9 (E.D. Pa. Apr. 22, 2005). Notice must be "the best notice practicable under the circumstances," "concisely and clearly stat[ing] in plain, easily understood language," *inter alia*, "the nature of the action[,] the definition of the class certified[, and] the class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(2)(B).

For this Court to properly evaluate the reaction of the class at the final approval stage, the notice must clearly describe the settlement's benefits and limitations – including that class members will receive ***no recovery for CTE***, even if it is discovered upon autopsy. The proposed notices do not do so. *See* Mem. Exs. C-3, C-5. To the contrary, the long-form and short-form notice aim to ***sell*** the settlement to players, not to explain the actual implications of its terms.

---

[39] Should the Court agree that intra-class conflicts prevent preliminary certification, the Court should "simply divide the groups into subclasses," *Dewey*, 681 F.3d at 189, so that "separate counsel [can] provide[] adequate structural protections to assure that differently situated plaintiffs negotiate for their own unique interests," *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 (3d Cir. 2004) (quotation marks omitted).

29

Both highlight the availability of monetary awards for players diagnosed with CTE. But neither explains – or so much as indicates – that while *past* diagnosed cases of CTE are covered if a class member dies before preliminary approval, *no future cases of CTE post-preliminary approval are covered*. A mere superficial examination of the notices' language shows this muddying of actual benefits:

**Short Form Notice:**



**What does the Settlement provide?**

The Settlement provides money for three benefits:

- Baseline medical exams to determine if retired players suffer from neurocognitive impairment and are entitled to additional testing and/or treatment ($75 million),
- Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Alzheimer's Disease, Parkinson's Disease, Dementia and certain cases of chronic traumatic encephalopathy or CTE (a neuropathological finding) diagnosed after death. The maximum monetary awards range from $1.5 million to $5 million depending on the diagnosis. All valid claims will be paid in full for 65 years; and
- Education programs and initiatives related to football safety ($10 million).

Mem. Ex. C-5.

**Long Form Notice:**

## MONETARY AWARDS

### 14. What diagnoses qualify for monetary awards?

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia), or Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund.

Mem. Ex. C-3, at 10. Moreover, the long form notice provides a clearly false and deceptive statement regarding what constitutes a "qualifying diagnosis." Although the notice states that "[a] Qualifying Diagnosis may occur *at any time* until the end of the 65-year term of the Monetary Award Fund," such plainly is not the reality. *Id.* If a player is diagnosed with CTE

30

after the preliminary approval stage, he is entitled to ***nothing forever*** – regardless of the Monetary Award Fund's duration.

This obfuscation of the actual terms of the settlement is even more egregious because retired players received the ***contrary assurance*** through a widespread media campaign in the last four months of 2013 – they were expressly informed the settlement would provide $4 million if they die with CTE.[40] Indeed, class counsel have been touting the settlement on YouTube even before filing the Revised Settlement with the Court.[41] Any notice sent at this point would require a custom-designed media campaign explaining the truth of the settlement's restrictions on payments for CTE only for deceased players, and nothing for living players who have or are later found to have CTE.

"It is a generally accepted principle that due process requires that the notice of a settlement proposal must reasonably apprise members of the class of the terms of the settlement and of the options open to those who would dissent." *Boggess v. Hogan*, 410 F. Supp. 433, 442 (N.D. Ill. 1975) (citing *Air Lines Stewards & Stewardesses Ass'n, Local 550 v. Am. Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir.)), *cert denied*, 423 U.S. 864 (1975)); *Nichols*, 2005 WL 950616, at *9. The notice here fails to adequately inform class members of the terms of the settlement because of the power of

---

[40] Associated Press, *supra*; *see also* Sophia Pearson & Jeff Feeley, *NFL's $914 Million Concussion Deal Submitted to Federal Court*, The Morning Journal (Jan. 18, 2014 9:23 AM), http://www.morningjournal.com/sports/20140108/nfls-914-million-concussion-deal-submitted-to-federal-court; Jason M. Breslow, *Judge Rejects $765 Million NFL Concussion Settlement*, Frontline (Jan. 14, 2014 3:59 PM), http://www.pbs.org/wgbh/pages/frontline/sports/league-of-denial/judge-rejects-765-million-nfl-concussion-settlement/; Patrick Hruby, *Raw Deal*, SportsonEarth.com (Jan. 10, 2014), http://www.sportsonearth.com/article/66471614/#!6oxsi.

[41] The NFL Concussion Class Settlement (May 1, 2014), https://www.youtube.com/watch?v=9EWNBNgMoEk (last visited May 27, 2014).

the misinformation that came before it, and because it continues that deception, by failing to state that ***players suffering from CTE and their families will receive nothing***.[42]

Such procedurally and substantively deficient notice fails the requirements of Rule 23 and amounts to a denial of due process.

### B. The Settlement Establishes Unduly Burdensome Procedural Requirements That Will Effectively Deny Class Members Recovery

To receive ***any*** recovery, class members must navigate a complex and burdensome administrative process that appears designed to decrease the cost to the NFL. Like the class settlement recently rejected in *Eubank v. Pella Corp.*, __ F.3d __, 2014 WL 2444388, at *7 (7th Cir. June 2, 2014), the Revised Settlement "strews obstacles in the path of any" class member seeking recovery by imposing requirements and deadlines that, if unsatisfied, reduce or completely bar recovery. This unwieldy and onerous claims process does not fundamentally protect class members' rights, does not satisfy Rule 23(d)'s requirements, and raises clear due process concerns. *See* U.S. Const. amend. V; Fed. R. Civ. P. 23(d).

For example:

- class members have 180 days to register with the Claims Administrator; but those who do not are ***ineligible for any benefits***, even though their claims are released, Revised Settlement § 4.2(c);

- certain class members must undergo baseline assessment examinations by arbitrary deadlines or suffer a 10% offset, *id.* §§ 5.4, 6.7(b)(iv);

---

[42] By the time the players actually would receive the proposed notices, their ability to recover for CTE will have been completely foreclosed, because the notices would be sent or published only after preliminary approval — which is the cut-off date for "Death with CTE" awards.

- class members who comply with these preliminary requirements must file an
  extensive "Claim Package" within two years of receiving a qualifying diagnosis,
  *id.* §§ 8.2(a), 8.3(a)(i); and

- Class Counsel has not provided the Court with the proposed claim form and
  instructions that class members – many of whom are suffering serious cognitive
  impairment – are to use to navigate this procedural labyrinth.

That alone justifies rejecting the settlement. *See Eubank*, 2014 WL 2444388, at *8 (rejecting
class settlement and criticizing complexity of claim forms). But it gets worse. Once a claim is
submitted, the Claims Administrator can investigate and "request additional documentation,"
which the class member must supply "in order to claim a Monetary Award . . . ." Revised
Settlement § 8.6(a).

Class members whose claims are denied may appeal, but only after paying a $1,000 fee
(which is refundable if the appeal is successful). Revised Settlement § 9.6(a).[43] But, the NFL
may appeal an unlimited number of claim determinations without payment of any fee. *Id.*
§ 9.6(b). Appellants must "present evidence in support of their appeal." *Id.* § 9.7(a). Appeals
are decided by the Court, who may consult with an Appeals Advisory Panel consisting of
members jointly recommended by Co-Lead Class Counsel and the NFL Parties. *Id.* § 9.8. By
affording the NFL unlimited appeals without disincentive to do so and by requiring appellants to

---

[43] That appeal fee will discourage many retired players from challenging adverse claim
determinations. Within two years of retirement, 78% of former NFL players are under financial
stress. Pablo S. Torre, *How (and Why) Athletes Go Broke*, Sports Illustrated (Mar. 23, 2009),
http://sportsillustrated.cnn.com/vault/2009/03/23/105789480/how-and-why-athletes-go-broke.

33

present evidence on appeal, the Revised Settlement essentially requires that class members submit to a multi-tiered, mini-arbitration to receive their benefit awards.[44]

Finally, the Revised Settlement imposes a series of "anti-fraud" provisions that appear designed to decrease the number of, and the amount of awards and save the NFL money. The Claims Administrator must audit 10% of all applicants each month. Revised Settlement § 10.3(c). Auditors may demand additional information and documents from the class member.[45] Even partial non-compliance with the demand requires denial of the claim "without right to an appeal." *Id.* § 10.3(b)(ii).

This complex procedural framework is a transparent attempt to minimize the cost of the settlement to the NFL – a consideration of tremendous importance now that the so-called "cap has been lifted."[46] Class Counsel certainly could have negotiated a simpler payment process.

[44] The claims administration process may ultimately operate in a manner similar to current disability programs jointly administered by the NFL and the NFLPA. Just 34% of the applications submitted for temporary and permanent disability are approved in the initial stage. L. Elaine Halchin, *Former NFL Players: Disabilities, Benefits, and Related Issues*, Congressional Research Service, at 82 (Apr. 8, 2008). Those disability programs, moreover, have been heavily criticized for improperly denying meritorious claims. *See id.* at 76-77 (quoting Michael Leahy, *The Pain Game*, Washington Post Magazine, at 10, 23 (Feb. 3, 2008)); *see also* Michael Rosenberg, *"Permanently Disabled," Harrison Fighting for Benefits NFL Took Away*, Sports Illustrated (Jan. 29, 2014), http://www.si.com/nfl/2014/01/29/dwight -harrison-nfl-pension; Michael O'Keefe, *Still Plenty of Skeptics After NFL Reaches New Deal with Players to Settle Concussion-Related Lawsuit*, New York Daily News (June 28, 2014 11:40 AM), http://www.nydailynews.com/sports/football/score-nfl-deny-issues-article-1.1847588.

[45] The scope of the information demand is extensive, including such items as all medical records in the class member's control relating to the qualifying diagnosis and a "list of all health care providers seen by the Retired NFL Football Player in the last five (5) years." Revised Settlement § 10.3(e)(i)-(ii); *see also id.* § 10.3(e).

[46] The cap's lifting is a ceremonial gesture: the NFL Parties repeatedly emphasize that they "remain undeterred in their belief that the $760 million deal originally struck would have been sufficient to compensate all Class Members with valid claims over the term of the Monetary Award Fund." Mem. 12; *see also id.* at 1, 42. But their uncapped-with-strings-attached settlement is even more troubling when the NFL Parties' ability to withstand a settlement even greater than the $765 million figure they deem sufficient is considered. The NFL projects that its

34

They did so for themselves – they will receive their $112.5 million payment within 60 days after the Revised Settlement takes effect. Revised Settlement § 21.2. Yet, their abandoned clients – many suffering serious cognitive impairment – will be left to figure it out on their own, wandering through an administrative maze that allows the NFL to say "gotcha" at every turn.

Courts have refused to approve settlements with benefits that are illusory in light of the procedural difficulty to realize them. *See Eubank*, 2014 WL 2444388, at *7-10 (rejecting settlement that "strews obstacles in the path of any" class member); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718-19, 721 (6th Cir. 2013) (rejecting class settlement, in part, due to an onerous claims process); *Walter v. Hughes Commc'ns, Inc.*, No. 09-2136, 2011 WL 2650711, at *14 (N.D. Cal. July 6, 2011) (rejecting class settlement where "[m]any hurdles stand between a class member and the receipt of . . . payment" and claim form was "unnecessarily complex," "confusingly arranged," and "invites user error"). The deficient claims process here requires denial of preliminary approval.

### C. The Proposed Settlement Is Not the Product of Arm's Length Negotiation

Because class counsel and defendants have strong incentives to collude in crafting a class settlement, *see, e.g.*, *GM Trucks*, 55 F.3d at 787-89, a proposed settlement must arise from arm's length negotiations to receive preliminary approval. First, the settlement is riddled with intra-

---

revenues will be upwards of $25 billion by 2027. *See* Daniel Kaplan, *Goodell Sets Revenue Goal of $25 Billion by 2027 for NFL*, Sports Business Journal (Apr. 5, 2010), http://www.sportsbusinessdaily.com/Journal/Issues/2010/04/20100405/This-Weeks-News/ Goodell-Sets-Revenue-Goal-Of-$25B-By-2027-For-NFL.aspx; Brent Schrotenboer, *NFL Takes Aim at $25 Billion, But At What Price?*, USA Today (Feb. 5, 2014), http://www. usatoday.com/story/sports/nfl/super/2014/01/30/super-bowl-nfl-revenue-denver-broncos-seattle-seahawks/5061197/. And last year alone the NFL had an annual revenue of more than $10 billion, Schrotenboer, *supra*, earned a reported $1 billion from licensing alone, and paid its commissioner more than $35 million, Ryan Wilson, *NFL Paid Roger Goodell $35.1 Million Last Year*, CBSSports.com (Feb. 14, 2014 3:25 PM), http://www.cbssports.com/nfl/eye-on-football /24443392/report-nfl-paid-roger-goodell-351-million-last-year.

class conflict. Second, the generous attorneys' fee provision raises red flags that Class Counsel may have bargained away the interests of some segments of the class. Third, the Revised Settlement gives no indication that Sub-Class Counsel and Representative Plaintiffs meaningfully participated in the negotiation process and exercised effective control and supervision over Class Counsel. Fourth, the entire negotiation process has been burdened with a lack of transparency calling into question any alleged fairness of the proposed settlement.[47]

### 1. Intra-Class Conflict Suggests the Absence of an Arm's Length Negotiation

The intra-class conflicts in the Revised Settlement smack of a lack of arm's length negotiations. "[T]he mere fact that negotiations transpired does not tend to prove that the class's interests were pursued," *GM Trucks*, 55 F.3d at 814, particularly "where the potential for intra-class conflict . . . [i]mperils the class's representation," *id.* at 797. Courts cannot preliminarily approve settlements that contain "obvious deficiencies such as ***unduly preferential treatment of class representatives or segments of the class*** . . . ." *NFL Concussion*, 961 F. Supp. 2d at 714 (emphasis added). That is precisely the case here. The settlement short-changes class members at future risk of developing CTE by limiting recovery to those who die before preliminary approval. It short-changes class members who experienced a stroke or non-football related TBI by reducing awards by 75%. And it short-changes veterans of NFL Europe by denying them credit for the seasons they played in that league. Even "vigorous, arm's length negotiations" are meaningless unless "the lawyers actually negotiating really were doing so on behalf of the ***entire*** class." *GM Trucks*, 55 F.3d at 797. Class Counsel certainly did not do so here.

---

[47] When the Court previously suggested that "[t]here is nothing to indicate that the Settlement is not the result of good faith, arm's-length negotiations between adversaries," *NFL Concussion*, 961 F. Supp. 2d at 715, it did not have before it many of the concerns that Objectors raise.

36

### 2. The Attorneys' Fee Provision Raises Concerns That Class Counsel Bargained Away Class Members' Interests

"Collusion" between class counsel and defendants "may not always be evident on the face of a settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Accordingly, courts have a duty to scrutinize settlements for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect negotiations." *Id.*; *see also NFL Concussion*, 961 F. Supp. 2d at 714 (noting "excessive compensation of attorneys" can preclude preliminary approval). The attorneys' fee provision here is far from a "subtle" sign. If anything, it is flashing neon.

First, the NFL Defendants – in what is known as a "clear sailing agreement" – have consented not to object to Class Counsel's fee petition. Revised Settlement § 21.1. The "'very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value'" – like compensation for all cases of CTE – "'to the class.'" *Bluetooth Headset*, 654 F.3d at 948 (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)). Thus, clear sailing agreements are "disfavored." *Id.* at 949.

Second, "fee negotiations [should] be postponed until the settlement [is] ***judicially approved***, not merely until the date the parties allege to have reached an agreement." *GM Trucks*, 55 F.3d at 804 (emphasis added). The circumstances suggest Class Counsel "pursued a deal with the defendants separate from . . . the deal negotiated on behalf of the class." *GM Trucks*, 55 F.3d at 803-04. In any event, this Court need not "'place . . . dispositive weight on the parties' self-serving remarks,'" *Bluetooth Headset*, 654 F.3d at 948 (quoting *GM Trucks*, 55 F.3d at 804), that the "Settling Parties did not discuss the issue of attorneys' fees at any point during the mediation sessions," Mem. 30. The timing of the Settling Parties' fee negotiations,

which occurred even before public release of the initial settlement agreement, suggests the absence of arm's-length negotiations.

Finally, the attorneys' fee provision authorizes Class Counsel to petition the Court for a 5% set aside – *drawn from each claimant's settlement award* – to "facilitate the Settlement program and related efforts of Class Counsel." Revised Settlement § 21.1. That provision places no limits on how Class Counsel may use the set aside (although it does require that any petition describe "how the money will be used"). *Id.* More importantly, the provision gives no mechanism for noticing class members of Class Counsel's petition for the set aside nor does it authorize any procedures by which class members can oppose that petition. In short, the set aside allows Class Counsel the opportunity to augment their $112.5 million attorney fee at the expense of the class.

### 3. The Role of Sub-Class Counsel and Representative Plaintiffs Is Unknown

The role of Representative Plaintiffs and Sub-Class Counsel in negotiating the settlement and overseeing Class Counsel has been entirely hidden, further suggesting that the negotiations did not occur at arm's length. "The protection of the absentee[ ] [class members'] rights depends in part on the extent the named plaintiffs are adequately interested to monitor the attorneys . . . ." *GM Trucks*, 55 F.3d at 784. Thus, the "specter of collusion" is present when "'class counsel [are] allowed to prosecute an action and negotiate settlement terms without meaningful oversight by the class representative.'" *Olden v. Gardner*, 294 F. App'x 210, 219 (6th Cir. 2008) (quoting *In re Cal. Micro Devices Sec. Litig.*, 168 F.R.D. 257, 262 (N.D. Cal. 1996)). Class Counsel have not shown such meaningful oversight here. Although the Revised Settlement states that Representative Plaintiffs were shown the agreement and were familiar with the agreement, it says nothing about Representative Plaintiffs' participation in the negotiations. Revised

38

Settlement § 25.2.  Nor did the mediator describe Representative Plaintiffs' role.  Dkt. No. 6073-4.  Indeed, media reports indicate that Co-Lead Class Counsel has "clashed with his own clients."[48]  When "class representatives provide[ ] no meaningful oversight of the class counsel during the settlement negotiations," the "risk of collusion weighs against the settlement."  *Olden*, 294 F. App'x at 219.

Similarly, Class Counsel offer no description of the role that Sub-Class Counsel played in the negotiation.  In fact, Class Counsel did not recruit Sub-Class Counsel until negotiations were ***already underway*** before the mediator.  *See* Dkt. No. 6073-4 ¶ 7.

### 4.  The Settlement Negotiation Process Has Lacked Transparency

The class members – many of whom have their own counsel – have been left in the dark throughout the process.  *See* Patrick Hruby, *Show Us Some Math*, Sportsonearth.com (Jan. 20, 2014) (describing the settlement process as "cloak[ed] [in] secrecy").[49]  There has been no indication of the bid and ask throughout the negotiations.  And despite the Court's order that economic and actuarial information should be shared with the Special Master, it is not clear that it was; and it certainly was not provided, even in summary form, to the class.  " 'Sunlight is said to be the best of disinfectants; electric light the most efficient policeman.' "  *Buckley v. Valeo*, 424 U.S. 1, 67 (1976) (per curiam) (quoting L. Brandeis, *Other People's Money* 62 (Nat'l Home Library Found. ed. 1933)).  That is particularly so in the class settlement context, where the court lacks the "clash of adversaries" that ordinarily "generate[s] the information that the judge needs to decide the case."  *Eubank*, 2014 WL 2444388, at *2 (rejecting class settlement); *see also In re*

---

[48] Steve Fainaru & Mark Fainaru-Wada, *Lawyers Fight Over Settlement Details*, ESPN.com (Jan. 24, 2014, 8:18 PM), http://espn.go.com/espn/otl/story/_/id/10346091/lead-negotiator-facing-strong-opposition-concussion-settlement.

[49] *Available at* http://www.patrickhruby.net/2014/01/show-us-some-math.html.

*Cmty. Bank of N. Va.*, 418 F.3d 277, 319 (3d Cir. 2005) (rejecting approval of settlement where district court "entrusted class counsel to prepare . . . findings [of fact] in an *ex parte* closed door session" without participation of other class members). In the absence of transparency regarding the settlement negotiations, neither the Court nor the class members can be assured that Class Counsel zealously negotiated on behalf of absent class members.

### D. The Lack of Discovery Precludes Preliminary Approval of the Proposed Settlement

Class Counsel appear to have conducted ***no discovery*** – none.[50] The absence of even a basic factual record precludes any reasonably valid assessment of the value of the class's claims. Class Counsel cannot possibly have fulfilled their duty to do so and accordingly they have provided neither the class nor the Court with any basis for determining that the compromise reached is fair, adequate, and reasonable. "[A]chiev[ing] the settlement after little or no discovery . . . raise[s] a red flag." *GM Trucks*, 55 F.3d at 806.

### 1. Class Counsel Could Not Possibly Have Fulfilled Their Duties to the Class Without Taking Any Discovery

Discovery allows counsel to develop "an adequate appreciation of the merits of the case before negotiating." *GM Trucks*, 55 F.3d at 813. " 'The deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered.' " *Olden*, 294 F. App'x at 219 (quoting *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)). Thus, when no discovery is taken, courts "question[ ] whether class counsel could have negotiated in [the] best interests" of absent class members. *Cmty. Bank*, 418 F.3d at 307 (rejecting class settlement).

---

[50] In describing their investigation of the facts, Class Counsel describe only an informal exchange of information and point to no formal discovery. There is no indication that any was taken. *See* Mem. 43.

Merits discovery is particularly important in a case alleging claims like fraud and negligent concealment, where the best evidence is likely in the NFL Defendants' hands. The Complaint lists dozens of media reports and facts demonstrating the NFL's cover-up of information and willful dissemination of misinformation regarding the risks of head trauma from football. *E.g.*, Compl. ¶¶ 128-199. Investigation of these facts through discovery of the NFL's internal files could yield powerful and compelling evidence of the NFL's culpability – strengthening Class Counsel's hand at the negotiating table. Yet Class Counsel settled this case without taking a single deposition and without the NFL producing a single document related to the merits of the underlying claims. Instead, Class Counsel purport to have "exchanged information" with the NFL during the negotiation, including "expert calculations of damages." Mem. 43. But references to unspecified "information" and damages calculations say nothing about the NFL's ***liability*** and the strength of Plaintiffs' case.

That limited exchange of "information" cannot support preliminary approval of a class settlement, as *Olden v. Gardner* makes clear. In that case, class members brought suit against a corporation alleging property damage and personal injuries arising from pollution emissions from the defendant's cement plant. *Olden*, 294 F. App'x at 211. Following class certification, the class counsel entered into settlement negotiations with the defendant corporation, without obtaining any expert opinions on the alleged claims or defenses, engaging in discovery, or notifying any of the class representatives that such negotiations were taking place. *Id.* at 213-14. These factors strongly weighed against approval of the settlement on appeal because "[o]btaining expert opinions and engaging in formal discovery are usually essential to establishing a level

41

playing field in the settlement arena [as] it enables the class counsel to develop the merits of their case." *Id.* at 218.[51]

Negotiating blindly, Class Counsel "could not have entered into the settlement negotiations with much more than an uneducated guess as to the merits of the case and the propriety and fair value of a settlement." *Olden*, 294 F. App'x at 218. They could not "fairly, safely, and appropriately decide to settle the action." *GM Trucks*, 55 F.3d at 814.

### 2. Without Discovery, Neither the Court Nor the Class Members Can Assess the Settlement

This Court made clear that Class Counsel must "provide the court with the information needed to evaluate the fairness or adequacy of a proposed settlement." *NFL Concussion*, 961 F. Supp. 2d at 715-16 (citing cases). Without discovery on the merits, "courts have no other basis on which to conclude that counsel adequately developed the claims before deciding to settle." *GM Trucks*, 55 F.3d at 814. Neither do class members. They cannot make an informed decision about whether to go along with the settlement, object, or opt out.

### 3. Discovery Would Have Allowed Class Counsel To Overcome – or at Least Understand – What They Claim Are "Significant Challenges and Obstacles in the Litigation"

Class Counsel devote ten pages of their Memorandum in Support to discussing preemption, causation, statute of limitations, assumption of the risk, and "other defenses." Mem.

---

[51] Class Counsel's reliance on *In re Processed Egg Products Antitrust Litigation*, 284 F.R.D. 249, 267 (E.D. Pa. 2012), and *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 444 (E.D. Pa. 2008), is misplaced. *See* Mem. 43 n.17. Both cases involved extensive productions of information on the merits of the case. *Gates*, 248 F.R.D. at 444 (noting "dozens of depositions," "hundreds of pages of expert reports," and "hundreds of thousands of pages of documents" produced); *Processed Egg*, 284 F.R.D. at 271 (describing informal discovery of over 3,200 documents that described defendant's "participation in the conspiracy"). *Barani v. Wells Fargo Bank, N.A.*, on which Class Counsel also rely, similarly involved "substantial discovery." 2014 WL 1389329, at *5 (S.D. Cal. Apr. 9, 2014). The parties in *Barani* engaged in both formal and informal discovery, conducting precisely the "thorough[ ] investigat[ion]" absent here. *Id.* at *6.

61-71. They claim that this is a tough case and that they face "stiff and complex challenges." *Id.* at 61. Then, they meekly offer that whether they could have "met their burden of proof" was a "significant consideration" in settling at this time. *Id.* However, it is hard to understand how they can say this, given that whether a burden of proof is met is a question of fact, and they developed no facts through discovery. Had they done so, they may not have considered those "obstacles" so "significant."

**Preemption**: Class Counsel contend that preemption under § 301 of the Labor Management Relations Act (LMRA) presents a "significant" legal challenge for Plaintiffs in light of the NFL Parties' referenced collective-bargaining agreements (CBAs). Mem. 61-64. However, § 301 only preempts "claims founded ***directly*** on rights created by collective-bargaining agreements," or claims "***substantially dependent*** on analysis of a collective-bargaining agreement." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (emphasis added) (former employees' claims against former employer were not preempted because claims arose out of individual employment contracts and did not touch on CBA provisions).

Class Counsel ignore the importance of this point, and do not even acknowledge the recent decision *Green v. Arizona Cardinals Football Club*, where the district court, relying on *Caterpillar*, held that the claims of retired NFL players against the Arizona Cardinals for brain injuries resulting from TBI ***were not precluded by the CBA***. *Green v. Ariz. Cardinals Football Club, LLC*, No. 14-CV-461, 2014 WL 1920468, at *3 (E.D. Mo. May 14, 2014). The court's reasoning holds true here: Preemption is not triggered where a dispute only "tangentially involve[s] a provision of a [CBA]." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). Stated differently, "section 301 does not preempt state law claims merely because the parties involved are subject to a CBA and the events underlying the claim occurred on the job."

43

*Williams v. Nat'l Football League*, 582 F.3d 863, 874 (8th Cir. 2009). What matters is whether the plaintiffs' claims turn on rights that are actually set forth in a CBA provision or that "require interpretation or construction of the CBA" itself. *Green*, 2014 WL 1920468, at *3 (quoting *Williams*, 582 F.3d at 876) (rejecting preemption argument on ground that alleged NFL CBAs were not the source of players' claims of negligence, misrepresentation, and fraudulent concealment).

Plaintiffs' claims here turn on factual questions about the NFL's conduct – what actions or representations it did or did not perform and when and why it decided to perform them. For example, when did the NFL first learn of the connection between MTBI and neurodegenerative disease? What data did the NFL collect? How and why did it craft its public statements on concussions? Why were some of these statements directed to high school and college players, and even to parents deciding whether to allow their children to play football? Discovery is needed before any realistic assessment as to the "challenges or obstacles" Plaintiffs might face regarding preemption.

**Causation**: Class Counsel claim they face "significant legal impediments surrounding [their] ability to prove causation and obtain verdicts in the absence of a settlement." Mem. 64. But "[p]roximate cause requires only 'some direct relation between the injury asserted and the injurious conduct alleged,' and excludes only those 'link[s] that are too remote, purely contingent, or indirect.'" *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1192 (2011) (citing *Hemi Group, LLC v. City of New York,* 130 S. Ct. 983, 989 (2010)). So long as the NFL Parties' conduct constituted "a substantial factor in bringing about harm to" putative class members, that is enough to impose liability – even if Defendants "neither foresaw nor should have foreseen the

44

extent of the harm or the manner in which it occurred" to Plaintiffs. Restatement (Second) of Torts § 435(1) (1965).

Class Counsel are wrong to cede any ground to this defense without obtaining discovery into the Defendants' conduct. When the NFL first learned of the connection between head trauma and neurodegenerative disease, what studies it undertook concerning this information, and how and why it crafted its public statements concerning concussions, are questions that should be pursued through discovery to address the purported causation "impediment."

**Statute of Limitations**: Class Counsel contend their claims faced "a significant potential risk" of dismissal in light of the "serious challenge" presented by a statute of limitations. Mem. 65. This professed concern ignores the doctrine of fraudulent concealment, which "tolls the statute of limitations where 'through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry.'" *Mest v. Cabot Corp.*, 449 F.3d 502, 516 (3d Cir. 2006) (quoting *Ciccarelli v. Carey Can. Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985)) (whether defendants made misrepresentations to plaintiffs and the nature of any misrepresentations is relevant to determining if fraudulent concealment tolled limitations period).

Significantly, Class Counsel ***urged*** that a statute of limitations defense should fail on this very ground in other litigation. *See Finn* Compl. ¶¶ 144-148 (the "applicable statute of limitations is tolled because Defendant's fraudulent concealment of the dangers and adverse effects of head injuries made it impossible for Plaintiffs to learn of the hazards to their health"). The question is whether a defendant undertook some "affirmative and independent act of concealment that would prevent the plaintiff from discovering the injury[,] despite the exercise of reasonable diligence." *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991). But rather than answer that factual question through evidence developed in discovery to negotiate a settlement

that compensates all injured class members, Class Counsel punted. The proposed settlement thus excludes all class members who died before January 1, 2006, unless the claimant can demonstrate that the statute of limitations would not apply. Revised Settlement § 6.2(b)

**Assumption of the Risk**: Class Counsel argue that an "assumption-of-risk" defense also potentially blocks Plaintiffs' claims. Mem. 67-70. But the assumption of the risk "doctrine is very narrow," limited only to circumstances where it is clear that "the 'nature and extent' of the risk were 'fully appreciated' and that the plaintiff voluntarily proceeded to face that risk." *Barnes v. Am. Tobacco Co.*, 984 F. Supp. 842, 869 (E.D. Pa. 1997) (quoting *Childers v. Power Line Equip. Rentals, Inc.*, 452 Pa. Super. 94 (1996)). The retired players unquestionably assumed certain bodily risks, but they did not consent to face the types of harm alleged here – harm concealed from them by Defendants. *See Murphy v. Steeplechase Amusement Co.*, 250 N.Y. 479, 482-83 (1929) ("One who takes part in [ ] a sport accepts the dangers that inhere in it so far as they are obvious and necessary, . . . [but a] different case would be here if the dangers inherent in the sport were obscure or unobserved, or so serious as to justify the belief that precautions of some kind must have been taken to avert them.").

Class Counsel pled facts – for which they presumably had a good-faith basis – that would easily defeat an assumption of the risk defense. The evidence supporting those allegations has not been developed through discovery.

**Statutory Employer**: Class Counsel also state that the NFL Defendants "***may*** argue they are similarly situated to a general contractor with respect to the injured players, and the injured players are akin to the employees of subcontractors." Mem. 71 (emphasis added). However, "very great care . . . must be exercised before allowing an employer to avoid his liability at common law by asserting that he is a statutory employer." *Stipanovich v. Westinghouse Elec.*

46

*Corp.*, 210 Pa. Super. 98, 106 (1967).  In the Third Circuit, Defendants must identify "an owner, a principal contractor[,] and a subcontractor" for the defense to apply; a party "***cannot be both the owner (or in the position of owner) and statutory employer at the same time***."  *Pozza v. United States*, 324 F. Supp. 2d 709, 712 (W.D. Pa. 2004) (citing *Jamison v. Westinghouse Elec. Corp.*, 375 F.2d 465, 469 (3d Cir. 1967) (emphasis added)).  If the defense were to be asserted, discovery would be needed into the NFL, the individual teams, and the teams' owners to examine their corporate structure and contractual relationships.

### CONCLUSION

For these reasons, the Court should deny Class Counsel's motion for conditional certification of the proposed class and subclasses and for preliminary approval of the Revised Settlement.

Dated: July 2, 2014

Respectfully submitted,

*/s/ Steven F. Molo*

William T. Hangley
Michele D. Hangley
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square
18th & Cherry Streets
27th Floor
Philadelphia, PA 19103
(215) 496-7001 (telephone)
(215) 568-0300 (facsimile)
whangley@hangley.com
mdh@hangley.com

Linda S. Mullenix
2305 Barton Creek Blvd.
Unit 2
Austin, TX 78735
(512) 263-9330 (telephone)
lmullenix@hotmail.com

Steven F. Molo
Thomas J. Wiegand
Kaitlin R. O'Donnell
MOLOLAMKEN LLP
540 Madison Ave.
New York, NY 10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)
smolo@mololamken.com
twiegand@mololamken.com
kodonnell@mololamken.com

Eric R. Nitz
MOLOLAMKEN LLP
600 New Hampshire Ave., N.W.
Washington, DC 20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
enitz@mololamken.com

*Attorneys for Objectors*

47

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2014, I caused the foregoing Objection to June 25, 2014 Class Action Settlement and Opposition to Motion for Preliminary Approval of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

*Steven F. Molo*

Steven F. Molo

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,*<br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br>Defendants. | **Hon. Anita B. Brody**<br><br><br>Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**ORDER**[1]

On June 25, 2014, Plaintiffs Kevin Turner and Shawn Wooden, through their proposed

Co-Lead Class Counsel, Class Counsel, and Subclass Counsel, filed a motion for an order: (1)

granting preliminary approval of the proposed Class Action Settlement Agreement; (2)

conditionally certifying a Settlement Class and Subclasses; (3) appointing Co-Lead Class

Counsel, Class Counsel, and Subclass Counsel; (4) approving the dissemination of class notice;

---

[1] Capitalized terms used in this Order have the same meaning as those defined in the June 25, 2014 Class Action Settlement Agreement. *See* Pl.'s Mot. Ex. B, June 25, 2014, ECF No. 6037.

1

(5) scheduling a Fairness Hearing; and (6) staying matters as to the Released Parties and

enjoining proposed Settlement Class Members from pursuing Related Lawsuits [ECF No. 6073].

     **AND NOW**, this 7th day of July, 2014, it is **ORDERED** as follows:

1.    The proposed Class Action Settlement Agreement is preliminarily approved.

2.    The Settlement Class and Subclasses are conditionally certified for settlement

    purposes only.

    a.    The Settlement Class consists of:

        i.    All living NFL Football Players who, prior to the date of

        the Preliminary Approval and Class Certification Order,[2]

        retired, formally or informally, from playing professional

        football with the NFL or any Member Club, including

        American Football League, World League of American

        Football, NFL Europe League and NFL Europa League

        players, or were formerly on any roster, including

        preseason, regular season, or postseason, of any such

        Member Club or league and who no longer are under

        contract to a Member Club and are not seeking active

        employment as players with any Member Club, whether

        signed to a roster or signed to any practice squad,

        developmental squad, or taxi squad of a Member Club

        ("Retired NFL Football Players");

---

[2] "Preliminary Approval and Class Certification Order" is defined in the June 25, 2014 Class Action Settlement Agreement as the Court's order preliminarily approving the Class Action Settlement and conditionally certifying the Settlement Class and Subclasses. *See* Pl.'s Mot. Ex. B, June 25, 2014, ECF No. 6037. For the avoidance of any ambiguity, this Order is the "Preliminary Approval and Class Certification Order."

     ii.     Authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased or legally incapacitated or incompetent Retired NFL Football Players ("Representative Claimants"); and

     iii.     Spouses, parents, children who are dependents, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player or deceased Retired NFL Football Player ("Derivative Claimants").

  b.     The Settlement Subclasses consist of:

     i.     Subclass 1: Retired NFL Football Players who were not diagnosed with a Qualifying Diagnosis[3] prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants; and

     ii.     Subclass 2: Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants,

---

[3] "Qualifying Diagnosis" is defined in Exhibit 1 of the June 25, 2014 Class Action Settlement Agreement as Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, ALS, and/or Death with CTE. *See* Pl.'s Mot. Ex. B, June 25, 2014, ECF No. 6037.

and the Representative Claimants of deceased Retired NFL

Football Players who were diagnosed with a Qualifying

Diagnosis prior to death or who died prior to the date of the

Preliminary Approval and Class Certification Order and

who received a post-mortem diagnosis of CTE.

    c.    The Subclass Representatives for each of the Settlement Subclasses are

preliminarily appointed as follows:

        i.    Shawn Wooden is appointed as Subclass Representative for

Subclass 1.

        ii.    Kevin Turner is appointed as Subclass Representative for Subclass

2.

3.    Co-Lead Class Counsel, Class Counsel, Subclass Counsel, and the following

administrators are appointed as follows:

    a.    Christopher A. Seeger, Sol Weiss, Arnold Levin, Dianne M. Nast, Steven

C. Marks, and Gene Locks are appointed as Class Counsel.

    b.    Christopher A. Seeger and Sol Weiss are appointed as Co-Lead Class

Counsel.

    c.    Arnold Levin is appointed as Subclass Counsel for Subclass 1, and Dianne

M. Nast is appointed as Subclass Counsel for Subclass 2.

    d.    Plaintiffs' Executive Committee and Plaintiffs' Steering Committee are

appointed as Of Counsel.

4

e.  The Garretson Resolution Group, Inc. is preliminarily appointed to serve as the Baseline Assessment Program ("BAP") Administrator and Lien Resolution Administrator.

f.  BrownGreer PLC is preliminarily appointed to serve as the Claims Administrator.

g.  Citibank, N.A. is preliminarily appointed as the Trustee.

h.  Kinsella Media, LLC is appointed to serve as the Settlement Class Notice Agent.

4.  The dissemination of class notice is approved as follows:

a.  The protocol for dissemination of notice to Settlement Class and Subclass Members, as set forth in the Settlement Class Notice Plan, is approved.

b.  The templates[4] of the Long-Form Notice and the Summary Notice, attached to this Order as Exhibits 1 and 2, respectively, are approved. The parties must submit to the Court completed versions of the Long-Form Notice and the Summary Notice before they are posted on the Settlement Website.

c.  On or before **July 11, 2014**, the NFL Parties must transfer the Class Notice Payment to Co-Lead Class Counsel.

d.  On or before **July 14, 2014**, the Long-Form Notice must be posted on the Settlement Website.

e.  On or before **July 24, 2014**, Co-Lead Class Counsel must cause the Long-Form Notice to be sent via first-class mail, postage prepaid to: (i) all

---

[4] The Long-Form Notice and the Summary Notice are only templates because additional details must be inserted before dissemination.

known Retired NFL Football Players, their Representative Claimants and Derivative Claimants and (ii) counsel for Retired NFL Football Players, their Representative Claimants and Derivative Claimants, if known. Where an attorney represents more than one Settlement Class Member, it is sufficient to provide that attorney with a single copy of the notice. Notice to a Settlement Class Member's counsel of record constitutes notice to the Settlement Class Member, even if the Settlement Class Member does not receive independent notice.

f.     On or before **September 15, 2014**, Co-Lead Class Counsel must cause publication notice to be initiated in various media as follows:

  i.     Full-page ads featuring the Summary Notice in *Time*, *Ebony*, *People*, *Sports Illustrated*, and senior living trade publications;

  ii.    Thirty-second television commercials on a combination of broadcast and cable networks, including the NFL Network;

  iii.   Thirty-second radio commercials on American Urban Radio Networks;

  iv.    Internet banner ads on targeted websites (NFL.com, CNN.com, Facebook.com, and Weather.com) and Internet advertising networks; and

  v.     Keyword search ads on the Google and Bing search engines.

g.     The Opt Out procedure set forth in Section 14.2 of the Settlement Agreement is approved.  Written requests to Opt Out must be postmarked

on or before **October 14, 2014**.  The attached Long-Form Notice explains the Opt Out procedure.

h.      The objection procedure set forth in Section 14.3 of the Settlement Agreement is approved.  Written objections must be postmarked on or before **October 14, 2014**.  The attached Long-Form Notice explains the objection procedure.

i.      On or before **November 3, 2014**, any Settlement Class Member (or any attorney representing a Settlement Class Member) seeking to speak at the Fairness Hearing must send to the Court written notice of his or her intention to speak at the Fairness Hearing.

j.      On or before **November 3, 2014**, BrownGreer PLC must prepare and file with the Court, and serve on Class Counsel and Counsel for the NFL Parties, a list of all persons who have timely Opted Out of the Settlement Class.

k.      On or before **November 12, 2014**, Class Counsel and Counsel for the NFL Parties must file any response to the objections or any papers in support of final approval of the Settlement.

5.    The request to schedule a Fairness Hearing is granted.  A Fairness Hearing will take place on **Wednesday, November 19, 2014 at 10:00 a.m.**, at the United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania 19106 in Courtroom 7B in order to consider comments on and objections to the proposed Settlement Agreement and to consider whether: (a) to approve the Settlement Agreement as fair, reasonable and adequate, pursuant to Rule 23 of the Federal

Rules of Civil Procedure, (b) to certify the Settlement Class and Subclasses, and

(c) to enter the Final Order and Judgment, as provided in Article XX of the

Settlement Agreement.  The Fairness Hearing is subject to postponement or

adjournment by the Court without further notice.

6.      This action and all actions consolidated before the Court in this Multidistrict

Litigation are stayed.  All proposed Settlement Class Members are enjoined from

filing, commencing, prosecuting, intervening in, participating in, continuing to

prosecute and/or maintaining, as plaintiffs, claimants, or class members, any other

lawsuit, including, without limitation, a Related Lawsuit, or administrative,

regulatory, arbitration, or other proceeding in any jurisdiction (whether state,

federal or otherwise), against Released Parties based on, relating to, or arising out

of the claims and causes of action, or the facts and circumstances at issue, in the

Class Action Complaint, Related Lawsuits and/or the Released Claims.  However,

claims for workers' compensation and claims alleging entitlement to NFL CBA

Medical and Disability Benefits are not stayed or enjoined.  The stay and

injunction will remain in effect unless and until a proposed Settlement Class

Member's Opt Out becomes effective on the date this Court grants Final

Approval, approval of the Settlement Agreement is denied, or the Settlement

Agreement is otherwise terminated.  No such stay or injunction applies to the

Riddell Defendants.

7.      If the Settlement Agreement is terminated or is not consummated for any reason,

the preliminary certification of the Settlement Class and Subclasses is void, and

Plaintiffs and NFL Parties are deemed to have reserved all of their rights to propose or oppose any and all class certification issues.[5]

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:          Copies **MAILED** on _____ to:

---

[5] It is further **ORDERED** that the NFL Parties have the right to communicate orally and in writing with, and to respond to inquiries from, Settlement Class Members on matters unrelated to the Class Action Settlement in connection with the NFL Parties' normal business.

9

# NFL Concussion Settlement

## All Valid Claims of Retired NFL Football Players to be Paid in Full for 65 Years

## Monetary Awards, Baseline Medical Exams and Other Benefits Provided

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- The National Football League ("NFL") and NFL Properties, LLC (collectively, "NFL Parties") have agreed to a Settlement of a class action lawsuit seeking medical monitoring and compensation for brain injuries allegedly caused by head impacts experienced in NFL football. The NFL Parties deny that they did anything wrong.

- The Settlement Class includes all retired players of the NFL, American Football League ("AFL"), World League of American Football, NFL Europe League and NFL Europa League, as well as authorized representatives of deceased, legally incapacitated or incompetent retired players and family members of retired players who meet certain criteria.

- The Settlement will provide eligible retired players with:

  - Baseline neuropsychological and neurological exams to determine if retired players are: a) currently suffering from any neurocognitive impairment, including impairment serious enough for compensation, and b) eligible for additional testing and/or treatment ($75 million);

  - Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Parkinson's Disease, Alzheimer's Disease, early and moderate Dementia and certain cases of chronic traumatic encephalopathy (CTE) (a neuropathological finding) diagnosed after death. The maximum monetary awards range from $1.5 million to $5 million depending on the diagnosis. There is no cap on the amount of funds available to pay these Monetary Awards and all valid claims will be paid in full for 65 years; and

  - Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million).

- Authorized representatives of deceased, legally incapacitated or incompetent retired players and family members of retired players who meet certain criteria may also file claims for monetary awards (*see* Question 6).

- To get money, proof that injuries were caused by playing NFL football is not required.

- **Settlement Class Members <u>will need</u> to register to get benefits. Settlement Class Members may sign up at the website or call 1-800-000-000 for additional information about the Settlement and updates on the registration process.**

(Continued on next page)

QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

Exhibit 5      Page 1

TEMPLATE

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
| --- | --- |
| **STAY IN THE SETTLEMENT CLASS** | To be included in the Settlement Class, no action is needed. Once the Court approves the Settlement, you will be bound by the terms and releases contained in the Settlement. To receive benefits, however, you will need to register at a later date (*see* Question 26). |
| **EXCLUDE YOURSELF (OPT OUT)** | If you exclude yourself (opt out), you will get no benefits from the Settlement. This is the only option that allows you to participate in any other lawsuit against the NFL Parties about the claims in this case (*see* Question 30). |
| **OBJECT** | Write to the Court if you do not like the Settlement (*see* Question 35). |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to grant final approval of the Settlement.

**This Notice is only a summary of the Settlement Agreement and your rights. You are encouraged to carefully review the complete Settlement Agreement at www.NFLConcussionSettlement.com.** The Settlement Agreement is also on file with the Clerk of the Court for the U.S. District Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling **1-800-000-0000**.

TEMPLATE

| **What This Notice Contains** |
| --- |

# CHAPTER 1: INTRODUCTION

**BASIC INFORMATION**………………………………………………………………………………..**Page 5**
1. Why is this Notice being provided?
2. What is the litigation about?
3. What is a class action?
4. Why is there a Settlement?
5. What are the benefits of the Settlement?

**THE SETTLEMENT**………………………………………………………………………………..**Page 7**
6. Who is included in the Settlement Class?
7. What players are not included in the Settlement Class?
8. What if I am not sure whether I am included in the Settlement Class?
9. What are the different levels of neurocognitive impairment?
10. Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

# CHAPTER 2: SETTLEMENT BENEFITS

**THE BASELINE ASSESSMENT PROGRAM**……………………………………………………...**Page 9**
11. What is the Baseline Assessment Program ("BAP")?
12. Why should a retired player get a BAP baseline examination?
13. How does a retired player schedule a baseline assessment examination and where will it be done?

**MONETARY AWARDS**………………………………………………………………….…….. **Page 10**
14. What diagnoses qualify for monetary awards?
15. Do I need to prove that playing football caused the Qualifying Diagnosis?
16. How much money will I receive?
17. How does the age of the retired player at the time of first diagnosis affect a monetary award?
18. How does the number of seasons a retired player played affect a monetary award?
19. How do prior strokes or brain injuries of a retired player affect a monetary award?
20. How is a retired player's monetary award affected if he does not participate in the BAP program?
21. Can I receive a monetary award even though the retired player is dead?
22. Will this Settlement affect a retired player's participation in NFL or NFLPA related benefits programs?
23. Will this Settlement prevent retired players from bringing workers' compensation claims?

**EDUCATION FUND**………………………………………………………………………………**Page 14**
24. What types of education programs are supported by the Settlement?

# CHAPTER 3: YOUR RIGHTS

**REMAINING IN THE SETTLEMENT**…………………………………………………………….**Page 15**
25. What am I giving up to stay in the Settlement Class?

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 3

**-1289-**

<u>TEMPLATE</u>

**HOW TO GET BENEFITS**.................................................................................**Page 15**
26.     How do I get Settlement benefits?
27.     Is there a time limit to file claims for monetary awards?
28.     Can I re-apply for compensation if my claim is denied?
29.     Can I appeal the determination of my monetary award claim?

**EXCLUDING YOURSELF (OPTING OUT) FROM THE SETTLEMENT**........................**Page 16**
30.     How do I get out of the Settlement?
31.     If I do not exclude myself (opt out), can I sue the NFL Parties for the same thing later?
32.     If I exclude myself (opt out), can I still get benefits from this Settlement?

**THE LAWYERS REPRESENTING YOU**...............................................................**Page 17**
33.     Do I have a lawyer in the case?
34.     How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**..................................................................**Page 18**
35.     How do I tell the Court if I do not like the Settlement?
36.     What is the difference between objecting to the Settlement and excluding myself (opting out)?

**THE COURT'S FAIRNESS HEARING**.................................................................**Page 19**
37.     When and where will the Court hold a Fairness Hearing concerning the Settlement?
38.     Do I have to attend the hearing?
39.     May I speak at the hearing?

**GETTING MORE INFORMATION**.......................................................................**Page 19**
40.     How do I get more information?

# CHAPTER 1:  INTRODUCTION

## BASIC INFORMATION

| **1.  Why is this Notice being provided?** |
| --- |

The Court in charge of this case authorized this Notice because you have a right to know about the proposed Settlement of this lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement.  This Notice summarizes the Settlement and explains your legal rights and options.

This case is being heard in the U.S. District Court for the Eastern District of Pennsylvania.  The case is known as *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323.  The people who sued are called the "Plaintiffs."  The National Football League and NFL Properties, LLC are called the "NFL Defendants."

The Settlement may affect your rights if you are:  (a) a retired player of the NFL, AFL, World League of American Football, NFL Europe League or NFL Europa League, (b) an authorized representative of a deceased, legally incapacitated or incompetent retired player of those leagues, or (c) an individual with a close legal relationship with a retired player of those leagues, such as a spouse, parent or child.

| **2.  What is the litigation about?** |
| --- |

The Plaintiffs claim that retired players experienced head trauma during their NFL football playing careers that resulted in brain injuries, which have caused or may cause them long-term neurological problems.  The Plaintiffs accuse the NFL Parties of being aware of the evidence and the risks associated with repetitive traumatic brain injuries but failing to warn and protect the players against the long-term risks, and ignoring and concealing this information from the players.  The NFL Parties deny the claims in the litigation.

| **3.  What is a class action?** |
| --- |

In a class action, one or more people, the named plaintiffs (who are also called proposed "class representatives") sue on behalf of themselves and other people with similar claims.  All of these people together are the proposed "class" or "class members."  When a class action is settled, one court resolves the issues for all class members (in the settlement context, "settlement class members"), except for those who exclude themselves (opt out) from the settlement.  In this case, the proposed class representatives are Kevin Turner and Shawn Wooden.  Excluding yourself (opting out) means that you will not receive any benefits from the Settlement.  The process for excluding yourself (opting out) is described in Question 30.

| **4.  Why is there a Settlement?** |
| --- |

After extensive settlement negotiations mediated by retired United States District Court Judge Layn Phillips, and further settlement negotiations under the supervision of the Court-appointed Special Master, Perry Golkin, the Plaintiffs and the NFL Parties agreed to the Settlement.

Exhibit 5                                                                                                              Page 5

Case: 25-2271 Document: 20 Page: 1268 Date Filed: 10/08/2025

TEMPLATE

A settlement is an agreement between a plaintiff and a defendant to resolve a lawsuit. Settlements conclude litigation without the court or a jury ruling in favor of the plaintiff or the defendant. A settlement allows the parties to avoid the cost and risk of a trial, as well as the delays of litigation.

If the Court approves this Settlement, the litigation between the Settlement Class Members and the NFL Parties is over. Only Settlement Class Members are eligible for the benefits summarized in this Notice. The NFL Parties will no longer be legally responsible to defend against the claims by Settlement Class Members made in this litigation.

The Court has not and will not decide in favor of the retired players or the NFL Parties. By reviewing this Settlement, the Court is not making and will not make any findings that any law was broken or that the NFL Parties did anything wrong.

The proposed Class Representatives and their lawyers ("Co-Lead Class Counsel," "Class Counsel," and "Subclass Counsel," *see* Question 33) believe that the proposed Settlement is best for everyone who is affected. The factors that Co-Lead Class Counsel, Class Counsel and Subclass Counsel considered included the uncertainty and delay associated with continued litigation, a trial and appeals and the uncertainty of particular legal issues that are yet to be determined by the Court. Co-Lead Class Counsel, Class Counsel and Subclass Counsel balanced these and other substantial risks in determining that the Settlement is fair, reasonable and adequate in light of all circumstances and in the best interests of the Settlement Class Members.

The Settlement Agreement is available at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the U.S. District Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling **1-800-000-0000**.

| **5. What are the benefits of the Settlement?** |
|---|

Under the Settlement, the NFL Parties will pay to fund:

- Baseline neuropsychological and neurological examinations for eligible retired players, and additional medical testing, counseling and/or treatment if they are diagnosed with moderate cognitive impairment during the baseline examinations (up to $75 million, "Baseline Assessment Program") (*see* Questions 11-13);

- Monetary awards for diagnoses of Death with CTE prior to **July 7, 2014**, ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) and Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) (*see* Questions 14-21); **All valid claims under the Settlement, without limitation, will be paid in full throughout the 65-year life of the Settlement (the "Monetary Award Fund")**; and

- Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million) (*see* Question 24).

In addition, the NFL Parties will pay the cost of notifying the Settlement Class. Administrative costs and expenses will be paid out of the Monetary Award Fund. The Baseline Assessment Program costs and expenses will be paid out of the Baseline Assessment Program Fund.

QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

Exhibit 5     Page 6

-1292-

TEMPLATE

The details of the Settlement benefits are in the Settlement Agreement, which is available at www.NFLConcussionSettlement.com.  The Settlement Agreement is also on file with the Clerk of the Court for the U.S. District Court for the Eastern District of Pennsylvania (*see* Question 35 for the address).  You can also get this information by calling **1-800-000-0000**.

**Note:**  The Baseline Assessment Program and Monetary Award Fund will be administered independently of the NFL Parties and any benefit programs that have been created between the NFL and the NFL Players Association.  The NFL Parties are not involved in determining the validity of claims under the Settlement.

# THE SETTLEMENT

| 6.  Who is included in the Settlement Class? |
| --- |

This Settlement Class includes three types of people:

Retired NFL Football Players:  All living NFL Football players who, prior to **July 7, 2014**, (1) have retired, formally or informally, from playing professional football with the NFL or any Member Club, including AFL, World League of American Football, NFL Europe League and NFL Europa League players, or (2) were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and no longer are under contract to a Member Club and are not seeking active employment as a player with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club.

Representative Claimants:  Authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased, legally incapacitated or incompetent Retired NFL Football Players.

Derivative Claimants:  Spouses, parents, dependent children, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a living or deceased Retired NFL Football Player.  (For example, a spouse asserting the right to sue due to the injury of a husband who is a Retired NFL Football Player.)

The Settlement recognizes two separate groups ("Subclasses") of Settlement Class Members based on the Retired NFL Football Player's injury status prior to **July 7, 2014**:

- Subclass 1 includes: Retired NFL Football Players who were <u>not</u> diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE prior to **July 7, 2014**, and their Representative Claimants and Derivative Claimants.

- Subclass 2 includes:

  o Retired NFL Football Players who <u>were</u> diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to **July 7, 2014**, and their Representative Claimants and Derivative Claimants; and

TEMPLATE

- o  Representative Claimants of deceased Retired NFL Football Players who were diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to death or who died prior to **July 7, 2014** and received a diagnosis of Death with CTE.

### 7.  What players are not included in the Settlement Class?

The Settlement Class does not include current NFL players.  The Settlement Class also does not include people who tried out for but did not make it onto preseason, regular season or postseason rosters or practice, developmental or taxi squads of the NFL or any Member Clubs.

### 8.  What if I am not sure whether I am included in the Settlement Class?

If you are not sure whether you are included in the Settlement Class, you may call **1-800-000-0000** with questions or visit www.NFLConcussionSettlement.com.  You may also write with questions to NFL Concussion Settlement, **P.O. Box 0000, City, ST 00000**.  You may also consult with your own attorney.

### 9.  What are the different levels of neurocognitive impairment?

In addition to ALS, Parkinson's Disease and Alzheimer's Disease, various levels of neurocognitive impairment are covered by this Settlement.  More details can be found in the Injury Definitions, which are available at www.NFLConcussionSettlement.com or by calling **1-800-000-0000**.

The level of Neurocognitive Impairment will be established in part with evidence of decline in performance in at least two areas subject to clinical evaluative testing, provided one of the areas is executive function, learning and memory, or complex attention, and related functional impairment as follows:

| LEVEL OF NEUROCOGNITIVE IMPAIRMENT | TYPE OF IMPAIRMENT | DEGREE OF DECLINE |
|---|---|---|
| Level 1 | Moderate cognitive impairment | Moderate cognitive decline |
| Level 1.5 | Early Dementia | Moderate to severe cognitive decline |
| Level 2 | Moderate Dementia | Severe cognitive decline |

If neurocognitive impairment is temporary and only occurs with delirium, or as a result of substance abuse or medicinal side effects, it is not covered by the Settlement.

### 10.  Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

No.  A retired player can be a Settlement Class Member regardless of whether he is vested due to credited seasons or total and permanent disability under the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

# CHAPTER 2:  SETTLEMENT BENEFITS

**QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                          Page 8

-1294-

TEMPLATE

# THE BASELINE ASSESSMENT PROGRAM

| **11.  What is the Baseline Assessment Program ("BAP")?** |
|---|

All living retired players who have earned at least one-half of an Eligible Season (*see* Question 18), who do not exclude themselves (opt out) from the Settlement (*see* Question 30), and who timely register to participate in the Settlement (*see* Question 26) may participate in the Baseline Assessment Program ("BAP").

The BAP will provide baseline neuropsychological and neurological assessment examinations to determine whether retired players are currently suffering from cognitive impairment.  Retired players will have from two to ten years, depending on their age as of the date the Settlement is finally approved and any appeals are fully resolved ("Final Settlement Approval"), to have a baseline examination conducted through a nationwide network of qualified and independent medical providers.

- Retired players 43 or older as of the date of Final Settlement Approval will need to have a baseline examination within two years of the start of the BAP.

- Retired players under the age of 43 as of the date the date of Final Settlement Approval will need to have a baseline examination within 10 years of the start of the BAP, or before they turn 45, whichever comes sooner.

Retired players who are diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment) are eligible to receive further medical testing and/or treatment (including counseling and pharmaceuticals) for that condition during the ten-year term of the BAP or within five years from diagnosis, whichever is later.

Retired players who participate in the BAP will be encouraged to provide their confidential medical records for use in research into cognitive impairment and safety and injury prevention with respect to football players.

Although all retired players are encouraged to take advantage of the BAP and receive a baseline examination, they do not need to participate in the BAP to receive a monetary award.  Any award to a retired player may be reduced by 10% if the retired player does not participate in the BAP, as explained in more detail in Question 20.

| **12.  Why should a retired player get a BAP baseline examination?** |
|---|

Getting a BAP baseline examination will be beneficial.  It will determine whether the retired player has any cognitive impairment.  If he is diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment), he will be eligible to receive further medical testing and/or treatment for that condition.  In addition, regardless of any cognitive impairment today, the results of the BAP baseline examination can be used as a comparison to measure any subsequent deterioration of  cognitive condition over the course of his life.  Participants also will be examined by at least two experts during the BAP baseline examinations, a neuropsychologist and a neurologist, and the retired player and/or his family members will have the opportunity to ask questions relating to any cognitive impairment during those examinations.

QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

Exhibit 5                                                                                                          Page 9

-1295-

TEMPLATE

Participation in the BAP does not prevent the retired player from filing a claim for a monetary award. For the next 65 years, retired players will be eligible for compensation paid from the Monetary Award Fund if the player develops a Qualifying Diagnosis (*see* Question 14). Participation in the BAP also will help ensure that, to the extent the retired player receives a Qualifying Diagnosis in the future, he will receive the maximum monetary award to which he is entitled (*see* Question 20).

| **13. How does a retired player schedule a baseline assessment examination and where will it be done?** |
| --- |

Retired players need to register for Settlement benefits before they can get a baseline assessment examination. Registration for benefits will not be available until after Final Settlement Approval. **A retired player may provide his name and contact information now at www.NFLConcussionSettlement.com or by calling 1-800-000-0000. This ensures that the retired player will receive additional notice about the registration process and deadlines when it becomes available.**

The BAP Administrator will send notice to those retired players determined during registration to be eligible for the BAP, explaining how to arrange for an initial baseline assessment examination. The BAP will use a nationwide network of qualified and independent medical providers who will provide both the initial baseline assessment as well as any further testing and/or treatment. The BAP Administrator, which will be appointed by the Court, will establish the network of medical providers.

## MONETARY AWARDS

| **14. What diagnoses qualify for monetary awards?** |
| --- |

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund.

If a retired player receives a monetary award based on a Qualifying Diagnosis, and later is diagnosed with a different Qualifying Diagnosis that entitles him to a larger monetary award than his previous award, he will be eligible for an increase in compensation. This would also apply to Derivative Claimants.

Qualifying Diagnoses must be made by approved qualified specialists. Any time prior to Final Settlement Approval, only board-certified neurologists, board-certified neurosurgeons or board-certified neuro-specialist physicians or similarly qualified specialists can make Qualifying Diagnoses. Following Final Settlement Approval, only qualified specialists approved by the Claims Administrator will be able to make Qualifying Diagnoses with the exception of Qualifying Diagnoses made through the BAP.

| **15. Do I need to prove that playing football caused the Qualifying Diagnosis?** |
| --- |

No. No proof is necessary that a retired player's Qualifying Diagnosis was caused by playing football or that he experienced head injuries in the NFL, AFL, World League of American Football, NFL Europe League or NFL Europa League in order to receive a monetary award. The fact that a retired player receives a Qualifying Diagnosis is sufficient to be eligible for a monetary award.

TEMPLATE

You also do not need to exclude the possibility that the Qualifying Diagnosis was caused or contributed to by amateur football or other professional football league injuries or by various risk factors linked to the Qualifying Diagnosis.

| **16.  How much money will I receive?** |
| --- |

The amount of money you will receive depends on the retired player's:
- Specific Qualifying Diagnosis,
- Age at the time of diagnosis (*see* Question 17),
- Number of seasons played or practiced in the NFL or the AFL (*see* Question 18),
- Diagnosis of a prior stroke or traumatic brain injury (*see* Question 19), and
- Participation in a baseline assessment exam (*see* Question 20).

The amount of money you will receive also depends on:
- Any legally enforceable liens on the award,
- Any retainer agreement with an attorney, and
- Any further assessments ordered by the Court (*see* Question 34).

Certain costs and expenses related to resolving any liens for Settlement Class Members will be paid out of such Settlement Class Members' monetary awards or derivative claimant awards.

The table below lists the maximum amount of money available for each Qualifying Diagnosis before any adjustments are made.

| QUALIFYING DIAGNOSIS | MAXIMUM AWARD AVAILABLE |
| --- | --- |
| Amyotrophic lateral sclerosis (ALS) | $5 million |
| Death with CTE (diagnosed after death) | $4 million |
| Parkinson's Disease | $3.5 million |
| Alzheimer's Disease | $3.5 million |
| Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) | $3 million |
| Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) | $1.5 million |

Monetary awards may be increased up to 2.5% per year during the 65-year Monetary Award Fund term for inflation.

To receive the maximum amount outlined in the table, a retired player must have played for at least five Eligible Seasons (*see* Question 18) and have been diagnosed when younger than 45 years old.

Derivative Claimants are eligible to be compensated from the monetary award of the retired player with whom they have a close relationship in an amount of 1% of that award.  If there are multiple Derivative Claimants for the same retired player, the 1% award will be divided among the Derivative Claimants according to the law where the retired player (or his Representative Claimant, if any) resides.

TEMPLATE

### 17. How does the age of the retired player at the time of first diagnosis affect a monetary award?

Awards are reduced for retired players who were 45 or older when diagnosed. The younger a retired player is at the time of diagnosis, the greater the award he will receive. Setting aside the other downward adjustments to monetary awards, the table below provides:

- The average award within each age range for people diagnosed between the ages of 45-79; and
- The amount of the award for those under age 45 and over 79.

The actual amount will be determined based on each retired player's actual age at the time of diagnosis and on other potential adjustments.

| AGE AT DIAGNOSIS | ALS | DEATH W/CTE | PARKINSON'S | ALZHEIMER'S | LEVEL 2 | LEVEL 1.5 |
|---|---|---|---|---|---|---|
| Under 45 | $5,000,000 | $4,000,000 | $3,500,000 | $3,500,000 | $3,000,000 | $1,500,000 |
| 45 - 49 | $4,500,000 | $3,200,000 | $2,470,000 | $2,300,000 | $1,900,000 | $950,000 |
| 50 - 54 | $4,000,000 | $2,300,000 | $1,900,000 | $1,600,000 | $1,200,000 | $600,000 |
| 55 - 59 | $3,500,000 | $1,400,000 | $1,300,000 | $1,150,000 | $950,000 | $475,000 |
| 60 - 64 | $3,000,000 | $1,200,000 | $1,000,000 | $950,000 | $580,000 | $290,000 |
| 65 - 69 | $2,500,000 | $980,000 | $760,000 | $620,000 | $380,000 | $190,000 |
| 70 - 74 | $1,750,000 | $600,000 | $475,000 | $380,000 | $210,000 | $105,000 |
| 75 - 79 | $1,000,000 | $160,000 | $145,000 | $130,000 | $80,000 | $40,000 |
| 80+ | $300,000 | $50,000 | $50,000 | $50,000 | $50,000 | $25,000 |

**Note:** The age of the retired player at diagnosis (not the age when applying for a monetary award) is used to determine the monetary amount awarded.

### 18. How does the number of seasons a retired player played affect a monetary award?

Awards are reduced for retired players who played less than five "Eligible Seasons." The Settlement uses the term "Eligible Season" to count the seasons in which a retired player played or practiced in the NFL or AFL. A retired player earns an Eligible Season for:

- Each season where he was on an NFL or AFL Member Club's "Active List" for either three or more regular season or postseason games, or

- Where he was on an Active List for one or more regular or postseason games and then spent two regular or postseason games on an injured reserve list or inactive list due to a concussion or head injury.

TEMPLATE

- A retired player also earns one-half of an Eligible Season for each season where he was on an NFL or AFL Member Club's practice, developmental or taxi squad for at least eight games, but did not otherwise earn an Eligible Season.

The "Active List" means the list of all players physically present, eligible and under contract to play for an NFL or AFL Member Club on a particular game day within any applicable roster or squad limits in the applicable NFL or AFL Constitution and Bylaws.

Time spent playing or practicing in the World League of American Football, NFL Europe League and NFL Europa League does not count towards an Eligible Season.

The table below lists the reductions to a retired player's (or his Representative Claimant's) monetary award if the retired player has less than five Eligible Seasons. To determine the total number of Eligible Seasons credited to a retired player, add together all of the earned Eligible Seasons and half Eligible Seasons. For example, if a retired player earned two Eligible Seasons and three half Eligible Seasons, he will be credited with 3.5 Eligible Seasons.

| NUMBER OF ELIGIBLE SEASONS | PERCENTAGE OF REDUCTION |
|---|---|
| 4.5 | 10% |
| 4 | 20% |
| 3.5 | 30% |
| 3 | 40% |
| 2.5 | 50% |
| 2 | 60% |
| 1.5 | 70% |
| 1 | 80% |
| .5 | 90% |
| 0 | 97.5% |

**19. How do prior strokes or traumatic brain injuries of a retired player affect a monetary award?**

It depends. A retired player's monetary award (or his Representative Claimant monetary award) will be reduced by 75% if he experienced: (1) a medically diagnosed stroke that occurred before or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis; or (2) a severe traumatic brain injury unrelated to NFL football that occurred during or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis.

The award will not be reduced if the retired player (or his Representative Claimant) can show by clear and convincing evidence that the stroke or traumatic brain injury is not related to the Qualifying Diagnosis.

**20. How is a retired player's monetary award affected if he does not participate in the BAP program?**

It depends on when the retired player receives his Qualifying Diagnosis and the nature of the diagnosis. There is a 10% reduction to the monetary award only if the retired player:

- Did not receive a Qualifying Diagnosis prior to **July 7, 2014**, and

QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

Exhibit 5                                                                                          Page 13

-1299-

TEMPLATE

- Does not participate in the BAP, and

- Receives a Qualifying Diagnosis (other than ALS) after his deadline to receive a BAP baseline assessment examination.

### 21. Can I receive a monetary award even though the retired player is dead?

Yes. Representative Claimants for deceased retired players with a Qualifying Diagnoses will be eligible to receive monetary awards. If the deceased retired player died before January 1, 2006, however, the Representative Claimant will only receive a monetary award if the Court determines that a wrongful death or survival claim is allowed under applicable state law.

Derivative Claimants also will be eligible for a total award of 1% of the monetary award that the Representative Claimant for the deceased retired player receives (*see* Question 16).

Representative and Derivative Claimants will also need to register for Settlement benefits (*see* Question 26).

### 22. Will this Settlement affect a retired player's participation in NFL or NFLPA-related benefits programs?

No. The Settlement benefits are completely independent of any benefits programs that have been created by or between the NFL and the NFL Players Association. This includes the 88 Plan (Article 58 of the 2011 Collective Bargaining Agreement) and the Neuro-Cognitive Disability Benefit (Article 65 of the 2011 Collective Bargaining Agreement).

**Note:** The Settlement ensures that a retired player who has signed, or will sign, a release as part of his Neuro-Cognitive Disability Benefit application, will not be denied Settlement benefits.

### 23. Will this Settlement prevent retired players from bringing workers' compensation claims?

No. Claims for workers' compensation will not be released by this Settlement.

## EDUCATION FUND

### 24. What type of education programs are supported by the Settlement?

The Settlement will provide $10 million in funding to support education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives.

Retired players will be able to actively participate in such initiatives if they desire.

# CHAPTER 3:  YOUR RIGHTS

## REMAINING IN THE SETTLEMENT

| 25.  What am I giving up to stay in the Settlement Class? |
| --- |

Unless you exclude yourself (opt out) from the Settlement (*see* Question 30), you cannot sue the NFL Parties, the Member Clubs, or related individuals and entities, or be part of any other lawsuit against the NFL Parties about the issues in this case.  This means you give up your right to continue to litigate any claims related to this Settlement, or file new claims, in any court or in any proceeding at any time.  **However, the Settlement does not release any claims for workers' compensation (*see* Question 23) or claims alleging entitlement to NFL medical and disability benefits available under the Collective Bargaining Agreement**.

Please note that certain Plaintiffs also sued the football helmet manufacturer Riddell and certain related entities (specifically, Riddell, Inc., Riddell Sports Group Inc., All American Sports Corporation, Easton-Bell Sports, Inc., EB Sports Corp., Easton-Bell Sports, LLC and RBG Holdings Corp.).  **They are not parties to this Settlement and claims against them are not released by this Settlement**.

Article XVIII of the Settlement Agreement contains the complete text and details of what Settlement Class Members give up unless they exclude themselves (opt out) from the Settlement, so please read it carefully.  The Settlement Agreement is available at www.NFLConcussionSettlement.com.  The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania  (*see* Question 35 for the address).  You can also get this information by calling **1-800-000-0000**.  If you have any questions you can talk to the law firms listed in Question 33 for free or you can talk to your own lawyer if you have questions about what this means.

## HOW TO GET BENEFITS

| 26.  How do I get Settlement benefits? |
| --- |

To get benefits, you will need to register.  This is true for all Settlement Class Members, including Representative and Derivative Claimants.  Registration for benefits will not begin until after Final Settlement Approval (*see* Question 37).  If and when that occurs, further notice will be provided about the registration process and deadlines.  **However, you may provide your name and contact information now at www.NFLConcussionSettlement.com or by calling 1-800-000-0000.  This ensures that you will receive additional notice about the registration process and deadlines when that becomes available.**  To receive any Settlement benefits, you must register on or before 180 days from the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com.  Information about the registration deadline will also be available by calling **1-800-000-0000.**

| 27.  Is there a time limit to file claims for monetary awards? |
| --- |

Yes.  Retired NFL Football Players and Representative Claimants for retired players who are diagnosed by the date of Final Settlement Approval must submit claims for monetary awards within two years of the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com.  Retired NFL Football Players and Representative Claimants for

TEMPLATE

retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of diagnosis to file claims. This deadline may be extended up to an additional two years upon a showing of substantial hardship.

Derivative Claimants must submit claims no later than 30 days after a Retired NFL Football Player or a Representative Claimant receives notice of an entitlement to a monetary award. All claims must be submitted by the end of the 65-year term of the Monetary Award Fund.

**28. Can I re-apply for compensation if my claim is denied?**

Yes. A Settlement Class Member who submits a claim for a monetary award that is denied can re-apply in the future should the Retired NFL Football Player's medical condition change.

**29. Can I appeal the determination of my monetary award claim?**

Yes. The Settlement establishes an independent process for a Settlement Class Member to appeal the denial of a monetary award claim or the amount of the monetary award.

## EXCLUDING YOURSELF (OPTING OUT) FROM THE SETTLEMENT

If you want to retain the right to sue the NFL Parties about the legal issues in this case, then you must take steps to remove yourself from the Settlement. You may do this by asking to be excluded from—opting out of—the Settlement Class. If you exclude yourself (opt out), you cannot receive benefits from this Settlement.

**30. How do I get out of the Settlement?**

On or before **October 14, 2014,** you must mail a letter or other written document to the Claims Administrator requesting exclusion from the Settlement Class. Your request must include:

- Your name, address, telephone number, and date of birth;

- A copy of your driver's license or other government issued identification;

- A statement that "I wish to exclude myself from the Settlement Class in *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323" (or substantially similar clear and unambiguous language); and

- Your signature by hand, and the date on which you signed it (even if represented by an attorney).

You must mail your exclusion (opt out) request, postmarked on or before **October 14, 2014**, to:

NFL Concussion Settlement
P.O. Box 0000
City, ST 00000

Your request to exclude yourself (opt out) is not effective unless and until the District Court grants Final Approval.

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5     Page 16

-1302-

TEMPLATE

**31. If I do not exclude myself (opt out), can I sue the NFL Parties for the same thing later?**

No. Unless you exclude yourself (opt out), you give up the right to sue the NFL Parties for all of the claims that this Settlement resolves. If you want to maintain your own lawsuit relating to the claims released by the Settlement, then you must exclude yourself (opt out) on or before **October 14, 2014.**

**32. If I exclude myself (opt out), can I still get benefits from this Settlement?**

No. **If you exclude yourself (opt out) from the Settlement you will not get any Settlement benefits**. You will not be eligible to receive a monetary award or participate in the Baseline Assessment Program.

# THE LAWYERS REPRESENTING YOU

**33. Do I have a lawyer in the case?**

The Court has appointed a number of lawyers to represent all Settlement Class Members as "Co-Lead Class Counsel," "Class Counsel" and "Subclass Counsel" (*see* Question 6). They are listed at the end of this Notice with their contact information.

You will not be charged for contacting these lawyers. If you are represented by an attorney, you may contact your attorney to discuss the proposed Settlement. You do not have to hire your own attorney. However, if you want to be represented by your own lawyer, you may hire one at your own expense.

**34. How will the lawyers be paid?**

At a later date to be determined by the Court, Co-Lead Class Counsel, Class Counsel and Subclass Counsel will ask the Court for an award of attorneys' fees and reasonable costs. The NFL Parties have agreed not to oppose or object to the request for attorneys' fees and reasonable incurred costs if the request does not exceed $112.5 million. These fees and incurred costs will be paid separately by the NFL Parties and not from the Baseline Assessment Program Fund, Education Fund or Monetary Award Fund. Settlement Class Members will have an opportunity to comment on and/or object to this request at an appropriate time. Ultimately, the award of attorneys' fees and reasonable costs to be paid by the NFL Parties is subject to the approval of the Court.

After Final Settlement Approval, Co-Lead Class Counsel may ask the Court to set aside up to five percent of each monetary award and derivative claimant award to facilitate the Settlement program and related efforts of Co-Lead Class Counsel, Class Counsel and Subclass Counsel. If approved, this money would be held in a separate fund overseen by the Court. Any future request for a set-aside will describe: (1) the proposed amount; (2) how the money will be used; and (3) any other relevant information. This "set-aside" would come out of the claimant's attorney's fee if represented by individual counsel or, if not represented, out of the monetary award and derivative claimant award itself. No money will be held back or set aside from any award without a Court order. The set-aside is a matter between Class Counsel and individual counsel for Settlement Class Members. The NFL Parties do not take a position on the proposal.

TEMPLATE

# OBJECTING TO THE SETTLEMENT

| 35. How do I tell the Court if I do not like the Settlement? |
| --- |

If you have not excluded yourself (opted out), you may object to the Settlement or any part of it. The Court will consider your views. To object to the Settlement, you or your attorney must submit your written objection to the Court. The objection must include the following:

- The name of the case and multidistrict litigation, *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323;

- Your name, address, telephone number, and date of birth;

- If you are a Representative Claimant or Derivative Claimant, the name of the Retired NFL Football Player to whom you are related;

- Written statement or evidence establishing how you are a Settlement Class Member;

- A detailed statement of your objections, and the specific reasons for each such objection, including any facts or law you wish to bring to the Court's attention;

- Any other supporting papers, materials or briefs that you want the Court to consider in support of your objection; and

- Your signature by hand, and the date on which you signed it (even if represented by an attorney).

Attorneys filing objections on behalf of Settlement Class Members must follow the requirements in Section 14.3(b) of the Settlement Agreement.

You must mail your objection, postmarked on or before **October 14, 2014**, to:

| COURT |
| --- |
| Clerk of the District Court/NFL Concussion Settlement<br>U.S. District Court for the Eastern District of Pennsylvania<br>United States Courthouse<br>601 Market Street<br>Philadelphia, PA 19106-1797 |

| 36. What is the difference between objecting to the Settlement and excluding myself (opting out)? |
| --- |

Objecting is simply telling the Court that you do not like something about the Settlement or want it to say something different. You can object only if you do not exclude yourself (opt out) from the Settlement Class. Excluding yourself (opting out) is telling the Court that you do not want to be part of the Settlement Class and you do not want to receive any Settlement benefits. If you exclude yourself (opt out), you have no basis to object because the case no longer affects you.

QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

Exhibit 5                                                                                           Page 18

TEMPLATE

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you do not have to. The Court will determine if you are allowed to speak if you request to do so (*see* Question 39).

| 37. When and where will the Court hold a Fairness Hearing concerning the Settlement? |
| --- |

The Court will hold the Fairness Hearing on **Wednesday, November 19, 2014 at 10:00 a.m.** at the United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania 19106 in Courtroom 7B. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.NFLConcussionSettlement.com or call **1-800-000-0000**. At this hearing, the Court will hear evidence about whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them and may elect to listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long the decision will take.

After the Fairness Hearing, the Court will consider the request for attorneys' fees and reasonable costs by Co-Lead Class Counsel, Class Counsel and Subclass Counsel (*see* Question 34).

| 38. Do I have to attend the hearing? |
| --- |

No. Co-Lead Class Counsel, Class Counsel and Subclass Counsel will answer questions the Court may have. But you are welcome to attend at your own expense. If you timely file an objection, you do not have to come to Court to talk about it. As long as you filed your written objection on time, the Court will consider it. You may also have your own lawyer attend at your expense, but it is not necessary.

| 39. May I speak at the hearing? |
| --- |

On or before **November 3, 2014**, you may ask the Court for permission to speak at the Fairness Hearing. The Court will determine whether to grant you permission to speak. To make such a request, you must send written notice to the Court stating your intention to speak at the *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323 Fairness Hearing. Be sure to include your name, address, telephone number, and your signature. Your request to speak must be sent to the Court at the address in Question 35.

# GETTING MORE INFORMATION

| 40. How do I get more information? |
| --- |

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You also may write with questions to NFL Concussion Settlement, **P.O. Box 0000, City, ST 00000** or call **1-800-000-0000**. **PLEASE DO NOT WRITE OR TELEPHONE THE COURT OR THE NFL PARTIES FOR INFORMATION ABOUT THE SETTLEMENT OR THIS LITIGATION.**

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                    Page 19

-1305-

TEMPLATE

| IMPORTANT DATES & CONTACT INFORMATION | |
|---|---|
| **Exclusion (Opt Out) Deadline** | October 14, 2014 |
| **Objection Deadline** | October 14, 2014 |
| **Deadline to Request to Speak at the Fairness Hearing** | November 3, 2014 |
| **Fairness Hearing** | November 19, 2014 |
| **Start of Registration Period** | The date the announcement of the registration process is posted on the Settlement Website. (This will occur following Final Settlement Approval after all appeals.) |
| **Registration Deadline** | 180 days after the start of the registration period |
| **Deadline to Receive a BAP** | • For retired players age 43 or older: Within two years of Final Settlement Approval<br>• For retired players under age 43: Within ten years of Final Approval or before age 45, whichever comes sooner |
| **Deadline to Submit a Claim** | • For retired players (and their Representative Claimants) diagnosed by the date of Final Settlement Approval: Within two years from the start of the Registration Period<br>• For retired players (and their Representative Claimants) diagnosed after the date of Final Settlement Approval: Within two years from the date of diagnosis |
| **Settlement Administrator** | **NFL Concussion Settlement**<br>**P.O. Box 0000**<br>**City, ST 00000**<br>**Tel: 1-800-000-0000** |
| **Court** | Clerk of the District Court/NFL Concussion Settlement<br>U.S. District Court for the Eastern District of Pennsylvania<br>United States Courthouse<br>601 Market Street<br>Philadelphia, PA 19106-1797 |
| **Class Counsel** | Christopher A. Seeger<br>Co-Lead Class Counsel<br>SEEGER WEISS LLP<br>77 Water Street<br>New York, NY 10005 | Sol Weiss<br>Co-Lead Class Counsel<br>ANAPOL SCHWARTZ<br>1710 Spruce Street<br>Philadelphia, PA 19103 |
| | Steven C. Marks<br>Class Counsel<br>PODHURST ORSECK P.A.<br>City National Bank Building<br>25 W. Flagler Street, Suite 800<br>Miami, FL 33130-1780 | Gene Locks<br>Class Counsel<br>LOCKS LAW FIRM<br>The Curtis Center, Suite 720 East<br>601 Walnut Street<br>Philadelphia, PA 19106 |
| | Arnold Levin<br>Counsel - Subclass 1<br>LEVIN FISHBEIN SEDRAN & BERMAN<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106 | Dianne M. Nast, Counsel – Counsel - Subclass 2<br>NAST LAW LLC<br>1101 Market Street, Suite 2801<br>Philadelphia, Pennsylvania 19107 |

QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

Exhibit 5     Page 20

**-1306-**

**[TEMPLATE]**

# NFL Concussion Settlement

## All Valid Claims of Retired NFL Football Players to be Paid in Full for 65 Years
### Monetary Awards, Baseline Medical Exams and Other Benefits Provided



The NFL and NFL Properties have agreed to a class action Settlement with retired players who sued, accusing them of failing to warn of and hiding the dangers of brain injury associated with playing football. The Settlement does not establish any wrongdoing on the part of the NFL or NFL Properties.

### Who is included in the Settlement?

The Settlement Class generally includes all retired players of the NFL, AFL, World League of American Football, NFL Europe League and NFL Europa League. The Settlement Class includes immediate family members of retired players and legal representatives of incapacitated, incompetent or deceased players.

### What does the Settlement provide?

The Settlement provides money for three benefits:

- Baseline medical exams to determine if retired players suffer from neurocognitive impairment and are entitled to additional testing and/or treatment ($75 million),
- Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Alzheimer's Disease, Parkinson's Disease, Dementia and certain cases of chronic traumatic encephalopathy or CTE (a neuropathological finding) diagnosed after death. The maximum monetary awards range from $1.5 million to $5 million depending on the diagnosis. All valid claims will be paid in full for 65 years; and
- Education programs and initiatives related to football safety ($10 million).

### How can I get benefits?

You will need to register for benefits after the final approval of the Settlement. You may provide your contact information now at the website or phone number below to ensure that you receive additional notice about the registration process.

Retired players do <u>not</u> have to prove that their injuries were caused by playing NFL football to get money from the Settlement.

### What are my rights?

You do not need to do anything to be included in the Settlement Class. All Settlement Class members will be bound by the Settlement and give up the right to sue the NFL individually. If you want to keep your right to sue the NFL, you must exclude yourself from the Class by **Month 00, 2014**. If you exclude yourself, you will not receive any benefits under the Settlement. If you stay in the Class, you may object to the Settlement by **Month 00, 2014**.

The Court will hold a hearing on **Month 00, 2014** to consider whether to approve the Settlement. You do not have to attend. However, you and/or your own lawyer may attend and request to speak at the hearing at your own expense. At a later date, the attorneys will ask the Court for an award of attorneys' fees and reasonable costs. The NFL and NFL Properties have agreed not to oppose or object to the request if the request does not exceed $112.5 million. The money would be paid by the NFL and NFL Properties in addition to the payments described above.

## Please Share this Notice with Other Retired Players and Their Families
### For More Information on the Settlement and Registering for Benefits:
## 1-800-000-0000  or  www.NFLConcussionSettlement.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE: PLAYERS' CONCUSSION INJURY LITIGATION | : : : : | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,*<br>Plaintiffs, | : : : : : : | CIVIL ACTION NO: 14-cv-0029 |
| v. | : : | |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br>Defendants. | : : : : : : | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : : : : : | |

**CLASS ACTION SETTLEMENT AGREEMENT AS OF JUNE 25, 2014**

**TABLE OF CONTENTS**

**Page**

ARTICLE I          Definitions of Settlement Class and Subclasses .................................. 4

ARTICLE II         Definitions ........................................................................... 4

ARTICLE III        Settlement Benefits for Class Members ............................................ 16

ARTICLE IV         Information and Registration Process................................................ 17

ARTICLE V          Baseline Assessment Program ....................................................... 20

ARTICLE VI         Monetary Awards for Qualifying Diagnoses...................................... 31

ARTICLE VII        Derivative Claimant Awards ........................................................ 38

ARTICLE VIII       Submission and Review of Claim Packages and Derivative
                   Claim Packages....................................................................... 38

ARTICLE IX         Notice of Claim Determinations, Payments, and Appeals ................. 42

ARTICLE X          Class Action Settlement Administration ........................................... 49

ARTICLE XI         Identification and Satisfaction of Liens............................................ 58

ARTICLE XII        Education Fund ....................................................................... 63

ARTICLE XIII       Preliminary Approval and Class Certification................................... 63

ARTICLE XIV        Notice, Opt Out, and Objections.................................................... 65

ARTICLE XV         Communications to the Public....................................................... 68

ARTICLE XVI        Termination........................................................................... 68

ARTICLE XVII       Treatment of Confidential Information ............................................ 70

ARTICLE XVIII      Releases and Covenant Not to Sue .................................................. 71

ARTICLE XIX        Bar Order .............................................................................. 75

ARTICLE XX         Final Order and Judgment and Dismissal With Prejudice.................. 75

ARTICLE XXI        Attorneys' Fees....................................................................... 76

ARTICLE XXII       Enforceability of Settlement Agreement and Dismissal of
                   Claims ................................................................................. 77

i

ARTICLE XXIII   NFL Payment Obligations ................................................................ 78

ARTICLE XXIV   Denial of Wrongdoing, No Admission of Liability ............................ 85

ARTICLE XXV   Representations and Warranties ........................................................ 86

ARTICLE XXVI   Cooperation......................................................................................... 89

ARTICLE XXVII  Continuing Jurisdiction...................................................................... 90

ARTICLE XXVIII Role of Co-Lead Class Counsel, Class Counsel and Subclass
                Counsel................................................................................................ 90

ARTICLE XXIX   Bargained-For Benefits...................................................................... 91

ARTICLE XXX   Miscellaneous Provisions .................................................................. 91

## IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS'
## CONCUSSION INJURY LITIGATION, MDL 2323,
## CLASS ACTION SETTLEMENT AGREEMENT AS OF JUNE 25, 2014
### (subject to Court approval)

### PREAMBLE

This SETTLEMENT AGREEMENT, dated as of June 25, 2014 (the "Settlement Date"), is made and entered into by and among defendants the National Football League ("NFL") and NFL Properties LLC ("NFL Properties") (collectively, "NFL Parties"), by and through their attorneys, and the Class Representatives and Subclass Representatives, individually and on behalf of the Settlement Class and Subclasses, by and through Class Counsel. This Settlement Agreement is intended by the Parties fully, finally, and forever to resolve, discharge, and settle all Released Claims against the Released Parties, as set forth below, subject to review and approval by the Court.[1]

### RECITALS

A.     On January 31, 2012, a federal multidistrict litigation was established in the United States District Court for the Eastern District of Pennsylvania, In re: National Football League Players' Concussion Injury Litigation, MDL No. 2323. Plaintiffs in MDL No. 2323 filed a Master Administrative Long-Form Complaint and a Master Administrative Class Action Complaint for Medical Monitoring on June 7, 2012. Plaintiffs filed an Amended Master Administrative Long-Form Complaint on July 17, 2012. Additional similar lawsuits are pending in various state and federal courts.

B.     The lawsuits arise from the alleged effects of mild traumatic brain injury allegedly caused by the concussive and sub-concussive impacts experienced by former NFL Football players. Plaintiffs seek to hold the NFL Parties responsible for their alleged injuries under various theories of liability, including that the NFL Parties allegedly breached a duty to NFL Football players to warn and protect them from the long-term health problems associated with concussions and that the NFL Parties allegedly concealed and misrepresented the connection between concussions and long-term chronic brain injury.

C.     On August 30, 2012, the NFL Parties filed motions to dismiss the Master Administrative Class Action Complaint for Medical Monitoring and the Amended Master Administrative Long-Form Complaint on preemption grounds. Plaintiffs filed their oppositions to the motions on October 31, 2012, the NFL Parties filed reply memoranda of law on December 17, 2012, and plaintiffs filed sur-reply memoranda of law on January 28, 2013. Oral argument on the NFL Parties' motions to dismiss on preemption grounds was held on April 9, 2013.

---

[1]     Capitalized terms have the meanings provided in ARTICLE II, unless a section or subsection of this Settlement Agreement provides otherwise.

D.    On July 8, 2013, prior to ruling on the motions to dismiss, the Court ordered the plaintiffs and NFL Parties to engage in mediation to determine if consensual resolution was possible and appointed retired United States District Court Judge Layn Phillips of Irell & Manella LLP as mediator.

E.    Over the course of the following two months, the Parties, by and through their respective counsel, engaged in settlement negotiations under the direction of Judge Phillips.  On August 29, 2013, the Parties signed a settlement term sheet setting forth the material terms of a settlement agreement.  On the same day, the Court issued an order deferring a ruling on the NFL Parties' motions to dismiss and ordering the Parties to submit, as soon as possible, the full documentation relating to the settlement, along with a motion seeking preliminary approval of the settlement and notice plan.  On December 16, 2013, the Court appointed a special master, Perry Golkin ("Special Master Golkin"), to assist the Court in evaluating the financial aspects of the proposed settlement.

F.    On January 6, 2014, Class Counsel moved the Court for an order, among other things, granting preliminary approval of the proposed settlement and conditionally certifying a settlement class and subclasses.  On January 14, 2014, the Court denied that motion without prejudice.

G.    In conjunction with the January 2014 filing of the proposed settlement agreement, and this Settlement Agreement, the Class and Subclass Representatives filed Plaintiffs' Class Action Complaint ("Class Action Complaint") on January 6, 2014.  In the Class Action Complaint, the Class and Subclass Representatives allege claims for equitable, injunctive and declaratory relief pursuant to Federal Rules of Civil Procedure 23(a)(1-4) & (b)(2), or, alternatively, for compensatory damages pursuant to Federal Rule of Civil Procedure 23(b)(3), for negligence, negligent hiring, negligent retention, negligent misrepresentation, fraud, fraudulent concealment, medical monitoring, wrongful death and survival, and loss of consortium, all under state law.

H.    The NFL Parties deny the Class and Subclass Representatives' allegations, and the allegations in Related Lawsuits, and deny any liability to the Class and Subclass Representatives, the Settlement Class, or any Settlement Class Member for any claims, causes of action, costs, expenses, attorneys' fees, or damages of any kind, and would assert a number of substantial legal and factual defenses against plaintiffs' claims if they were litigated to conclusion.

I.    The Class and Subclass Representatives, through their counsel, have engaged in substantial fact gathering to evaluate the merits of their claims and the NFL Parties' defenses.  In addition, the Class and Subclass Representatives have analyzed the legal issues raised by their claims and the NFL Parties' defenses, including, without limitation, the NFL Parties' motions to dismiss the Amended Master Administrative Long-Form Complaint and Master Administrative Class Action Complaint on preemption grounds.

2

J.      After careful consideration, the Class and Subclass Representatives, and their respective Counsel, have concluded that it is in the best interests of the Class and Subclass Representatives and the Settlement Class and Subclasses to compromise and settle all Released Claims against the Released Parties for consideration reflected in the terms and benefits of this Settlement Agreement. After arm's length negotiations with Counsel for the NFL Parties, including through the efforts of the court-appointed mediator and Special Master Golkin, the Class and Subclass Representatives have considered, among other things: (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the litigation and amount of fact gathering completed; (3) the potential for the NFL Parties to prevail on threshold issues and on the merits; and (4) the range of possible recovery, and have determined that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class and Subclass Representatives and the Settlement Class and Subclasses.

K.      The NFL Parties have concluded, in light of the costs, risks, and burden of litigation, that this Settlement Agreement in this complex putative class action litigation is appropriate. The NFL Parties and Counsel for the NFL Parties agree with the Class and Subclass Representatives and their respective counsel that this Settlement Agreement is a fair, reasonable, and adequate resolution of the Released Claims. The NFL Parties reached this conclusion after considering the factual and legal issues relating to the litigation, the substantial benefits of this Settlement Agreement, the expense that would be necessary to defend claims by Settlement Class Members through trial and any appeals that might be taken, the benefits of disposing of protracted and complex litigation, and the desire of the NFL Parties to conduct their business unhampered by the costs, distraction and risks of continued litigation over Released Claims.

L.      The Parties desire to settle, compromise, and resolve fully all Released Claims.

M.      The Parties desire and intend to seek Court review and approval of the Settlement Agreement, and, upon preliminary approval by the Court, the Parties intend to seek a Final Order and Judgment from the Court dismissing with prejudice the Class Action Complaint and ordering the dismissal with prejudice of Related Lawsuits.

N.      This Settlement Agreement will not be construed as evidence of, or as an admission by, the NFL Parties of any liability or wrongdoing whatsoever or as an admission by the Class or Subclass Representatives, or Settlement Class Members, of any lack of merit in their claims.

NOW, THEREFORE, it is agreed that the foregoing recitals are hereby expressly incorporated into this Settlement Agreement and made a part hereof and further, that in consideration of the agreements, promises, and covenants set forth in this Settlement Agreement, including the Releases and Covenant Not to Sue in ARTICLE XVIII, the entry by the Court of the Final Order and Judgment dismissing the Class Action Complaint with prejudice and approving the terms and conditions of the Settlement Agreement, and for other good and valuable consideration, the receipt and

3

sufficiency of which are hereby acknowledged, this action shall be settled and compromised under the following terms and conditions:

## ARTICLE I
### Definitions of Settlement Class and Subclasses

Section 1.1    Definition of Settlement Class

(a)    "Settlement Class" means all Retired NFL Football Players, Representative Claimants and Derivative Claimants.

(b)    Excluded from the Settlement Class are any Retired NFL Football Players, Representative Claimants or Derivative Claimants who timely and properly exercise the right to be excluded from the Settlement Class ("Opt Outs").

Section 1.2    Definition of Subclasses

(a)    "Subclass 1" means Retired NFL Football Players who were not diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants.

(b)    "Subclass 2" means Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants, and the Representative Claimants of deceased Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to death or who died prior to the date of the Preliminary Approval and Class Certification Order and who received a post-mortem diagnosis of CTE.

## ARTICLE II
### Definitions

Section 2.1    Definitions

For the purposes of this Settlement Agreement, the following terms (designated by initial capitalization throughout this Agreement) will have the meanings set forth in this Section.

Unless the context requires otherwise, (i) words expressed in the masculine will include the feminine and neuter gender and vice versa; (ii) the word "will" shall be construed to have the same meaning and effect as the word "shall"; (iii) the word "or" will not be exclusive; (iv) the word "extent" in the phrase "to the extent" will mean the degree to which a subject or other thing extends, and such phrase will not simply mean "if"; (v) references to "day" or "days" in the lower case are to calendar days, but if the last day is a Saturday, Sunday, or legal holiday (as defined in Fed. R. Civ. P. 6(a)(6)), the period will continue to run until the end of the next day that is not a Saturday, Sunday, or legal holiday; (vi) references to this Settlement Agreement will include all

4

exhibits, schedules, and annexes hereto; (vii) references to any law will include all rules and regulations promulgated thereunder; (viii) the terms "include," "includes," and "including" will be deemed to be followed by "without limitation," whether or not they are in fact followed by such words or words of similar import; and (ix) references to dollars or "$" are to United States dollars.

(a) "Active List" means the list of all players physically present, eligible and under contract to play for a Member Club on a particular game day within any applicable roster or squad limits set forth in the applicable NFL or American Football League Constitution and Bylaws.

(b) "Affiliate" means, with respect to any person or entity, any other person or entity that, directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such person or entity, where "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies, whether through the ownership of voting shares, by contract, or otherwise.

(c) "ALS" means amyotrophic lateral sclerosis, also known as Lou Gehrig's Disease, as defined in Exhibit 1.

(d) "Alzheimer's Disease" is defined in Exhibit 1.

(e) "American Football League" means the former professional football league that merged with the NFL.

(f) "Appeals Form" means that document that Settlement Class Members, the NFL Parties or Co-Lead Class Counsel, as the case may be, will submit when appealing Monetary Award or Derivative Claimant Award determinations by the Claims Administrator, as set forth in Section 9.7.

(g) "Appeals Advisory Panel" means a panel of physicians, composed of, in any combination, five (5) board-certified neurologists, board-certified neurosurgeons, and/or other board-certified neuro-specialist physicians agreed to and jointly recommended by Co-Lead Class Counsel and Counsel for the NFL Parties, and appointed by the Court, any one of whom is eligible to advise the Court or the Special Master with respect to medical aspects of the Class Action Settlement and to perform the other duties of the Appeals Advisory Panel set forth in this Settlement Agreement.

(h) "Appeals Advisory Panel Consultants" means three (3) neuropsychologists certified by the American Board of Professional Psychology (ABPP) or the American Board of Clinical Neuropsychology (ABCN), a member board of the American Board of Professional Psychology, in the specialty of Clinical Neuropsychology, agreed to and jointly recommended by Co-Lead Class Counsel and Counsel for the NFL Parties, and appointed by the Court, any one of whom is eligible to advise a member of the Appeals Advisory Panel, the Court, or the Special Master on the neuropsychological testing referenced in Exhibits 1 and 2 to the Settlement Agreement, as pertaining to the Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment and

5

Level 2 Neurocognitive Impairment, and Level 1 Neurocognitive Impairment if subject to review as set forth in Section 5.13.  Appeals Advisory Panel Consultants do not meet the definition of Appeals Advisory Panel members and shall not serve as members of the Appeals Advisory Panel.

(i)    "Baseline Assessment Program" ("BAP") means the program described in ARTICLE V.

(j)    "Baseline Assessment Program Supplemental Benefits" or "BAP Supplemental Benefits" means medical treatment, including, as needed, counseling and pharmaceutical coverage, for Level 1 Neurocognitive Impairment (as set forth in Exhibit 1) within a network of Qualified BAP Providers and Qualified BAP Pharmacy Vendor(s), respectively, established by the BAP Administrator, as set forth in Section 5.11.

(k)    "Baseline Assessment Program Fund Administrator" or "BAP Administrator" means that person(s) or entity, agreed to and jointly recommended by Co-Lead Class Counsel and Counsel for the NFL Parties, and appointed by the Court, to perform the responsibilities assigned to the BAP Administrator under this Settlement Agreement, including, without limitation, as set forth in ARTICLE V.

(l)    "Baseline Assessment Program Fund" or "BAP Fund" means the fund to pay BAP costs and expenses, as set forth in ARTICLE V.

(m)    "Claim Form" means that document to be submitted to the Claims Administrator by a Settlement Class Member who is a Retired NFL Football Player or Representative Claimant claiming a Monetary Award, as set forth in ARTICLE VIII.

(n)    "Claim Package" means the Claim Form and other documentation, as set forth in Section 8.2(a).

(o)    "Claims Administrator" means that person(s) or entity, agreed to and jointly recommended by Co-Lead Class Counsel and Counsel for the NFL Parties, and appointed by the Court, to perform the responsibilities assigned to the Claims Administrator under this Settlement Agreement, including, without limitation, as set forth in Section 10.2.

(p)    "Class Action Complaint" means the complaint captioned Plaintiffs' Class Action Complaint filed on consent in the Court on January 6, 2014.

(q)    "Class Action Settlement" means that settlement set forth in this Settlement Agreement.

(r)    "Class Counsel" means, pending Court appointment, the counsel who are so designated and who are signatories to this Settlement Agreement, namely, Co-Lead Class Counsel, Christopher A. Seeger and Sol Weiss, Subclass Counsel, Arnold Levin and Dianne M. Nast, and Steven C. Marks of Podhurst Orseck,

6

P.A. and Gene Locks of Locks Law Firm, and, upon appointment, such other counsel as the Court may appoint to represent the Settlement Class.

(s)    "Class Representatives" means Shawn Wooden and Kevin Turner, or such other or different persons as may be appointed by the Court as the representatives of the Settlement Class.

(t)    "CMS" means the Centers for Medicare & Medicaid Services, the agency within the United States Department of Health and Human Services responsible for administration of the Medicare Program and the Medicaid Program.

(u)    "Co-Lead Class Counsel" means, pending Court appointment, the counsel who are so designated and who are signatories to this Settlement Agreement, namely, Christopher A. Seeger of Seeger Weiss LLP and Sol Weiss of Anapol Schwartz and, upon appointment, such other counsel as the Court may appoint to represent the Settlement Class in a lead role.

(v)    "Collective Bargaining Agreement" means the August 4, 2011 Collective Bargaining Agreement between the NFL Management Council and the NFL Players Association, individually and together with all previous and future NFL Football collective bargaining agreements governing NFL Football players.

(w)    "Counsel for the NFL Parties" means Paul, Weiss, Rifkind, Wharton & Garrison LLP, or any law firm or attorney so designated in writing by the NFL Parties.

(x)    "Court" means the United States District Court for the Eastern District of Pennsylvania, Judge Anita Brody (or any successor judge designated by the United States District Court for the Eastern District of Pennsylvania, or a magistrate judge designated by Judge Brody or such designated successor judge, as set forth in and pursuant to Federal Rule of Civil Procedure 72), presiding in In re: National Football League Players' Concussion Injury Litigation, MDL No. 2323. For the period of time from the Effective Date up to and including the fifth year of the Class Action Settlement, the Parties agree, in accordance with the provisions of 28 U.S.C. § 636(c), to waive their right to proceed before a judge of the United States District Court in connection with issues relating to the administration of this Settlement Agreement where the Court is required or requested to act, and consent to have a United States Magistrate Judge conduct such proceedings.

(y)    "Covenant Not to Sue" means the covenant not to sue set forth in Section 18.4.

(z)    "CTE" means Chronic Traumatic Encephalopathy.

(aa)    "Death with CTE" is defined in Exhibit 1.

7

**-1317-**

(bb)    "Deficiency" means any failure of a Settlement Class Member to provide required information or documentation to the Claims Administrator, as set forth in Section 8.5.

(cc)    "Derivative Claim Form" means that document to be submitted to the Claims Administrator by a Settlement Class Member who is a Derivative Claimant claiming a Derivative Claimant Award, as set forth in ARTICLE VIII.

(dd)    "Derivative Claim Package" means the Derivative Claim Form and other documentation, as set forth in Section 8.2(b).

(ee)    "Derivative Claimants" means spouses, parents, children who are dependents, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player or deceased Retired NFL Football Player.

(ff)    "Derivative Claimant Award" means the payment of money from the Monetary Award of the subject Retired NFL Football Player to a Settlement Class Member who is a Derivative Claimant, as set forth in ARTICLE VII.

(gg)    "Diagnosing Physician Certification" means that document which a Settlement Class Member who is a Retired NFL Football Player or Representative Claimant must submit either as part of a Claim Package in order to receive a Monetary Award, as set forth in Section 8.2(a), or to receive BAP Supplemental Benefits, as set forth in Section 5.11, the contents of which shall be agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties and that shall include, without limitation: (i) a certification under penalty of perjury by the diagnosing physician that the information provided is true and correct, (ii) the Qualifying Diagnosis being made consistent with the criteria in Exhibit 1 (Injury Definitions) and the date of diagnosis, and (iii) the qualifications of the diagnosing physician, including, without limitation, whether the diagnosing physician is a Qualified MAF Physician.

(hh)    "Education Fund" means a fund to support education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of Retired NFL Football Players regarding the NFL CBA Medical and Disability Benefits programs, and other educational initiatives benefitting Retired NFL Football Players, as set forth in ARTICLE XII.

(ii)    "Education Fund Amount" means the amount of Ten Million United States dollars (U.S. $10,000,000), as set forth in Section 23.1(c).

(jj)    "Effective Date" means (i) the day following the expiration of the deadline for appealing the entry by the Court of the Final Order and Judgment approving the Settlement Agreement and certifying the Settlement Class (or for appealing any ruling on a timely motion for reconsideration of such Final Order, whichever is later), if no such appeal is filed; or (ii) if an appeal of the Final Order and Judgment is filed, the date upon which all appellate courts with jurisdiction (including the United States

8

Supreme Court by petition for certiorari) affirm such Final Order and Judgment, or deny any such appeal or petition for certiorari, such that no future appeal is possible.

(kk)    "Eligible Season" means a season in which a Retired NFL Football Player or deceased Retired NFL Football Player was: (i) on a Member Club's Active List on the date of three (3) or more regular season or postseason games; or (ii) on a Member Club's Active List on the date of one (1) or more regular or postseason games, and then spent at least two (2) regular or postseason games on a Member Club's injured reserve list or inactive list due to a concussion or head injury. A "half of an Eligible Season" means a season in which a Retired NFL Football Player or deceased Retired NFL Football Player was on a Member Club's practice, developmental, or taxi squad roster for at least eight (8) regular or postseason games.

(ll)    "Fairness Hearing" means the hearing scheduled by the Court to consider the fairness, reasonableness, and adequacy of this Settlement Agreement under Rule 23(e)(2) of the Federal Rules of Civil Procedure, and to determine whether a Final Order and Judgment should be entered.

(mm)    "Final Approval Date" means the date on which the Court enters the Final Order and Judgment.

(nn)    "Final Order and Judgment" means the final judgment and order entered by the Court, substantially in the form of Exhibit 4, and as set forth in ARTICLE XX.

(oo)    "Funds" means the Settlement Trust Account, the BAP Fund, the Monetary Award Fund, and the Education Fund.

(pp)    "Governmental Payor" means any federal, state, or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs, including, but not limited to, the Medicare Program, the Medicaid Program, Tricare, the Department of Veterans Affairs, and the Department of Indian Health Services.

(qq)    "HIPAA" means the administrative simplification provisions of the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified as amended in scattered sections of 42 U.S.C.) and the implementing regulations issued by the United States Department of Health and Human Services thereunder, and incorporates by reference the provisions of the Health Information Technology for Economic and Clinical Health Act (Title XIII of Division A and Title IV of Division B of the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5 (2009)) pertaining to Protected Health Information.

(rr)    "Level 1 Neurocognitive Impairment" is defined in Exhibit 1.

(ss)    "Level 1.5 Neurocognitive Impairment" is defined in Exhibit 1.

(tt)    "Level 2 Neurocognitive Impairment" is defined in Exhibit 1.

(uu)    "Lien" means any statutory lien of a Government Payor or Medicare Part C or Part D Program sponsor; or any mortgage, lien, pledge, charge, security interest, or legal encumbrance, of any nature whatsoever, held by any person or entity, where there is a legal obligation to withhold payment of a Monetary Award, Supplemental Monetary Award, Derivative Claimant Award, or some portion thereof, to a Settlement Class Member under applicable federal or state law.

(vv)    "Lien Resolution Administrator" means that person(s) or entity, agreed to and jointly recommended by Co-Lead Class Counsel and Counsel for the NFL Parties, and appointed by the Court, to perform the responsibilities assigned to the Lien Resolution Administrator under this Settlement Agreement, including, without limitation, as set forth in ARTICLE XI.

(ww)    "Medicaid Program" means the federal program administered by the states under which certain medical items, services, and/or prescription drugs are furnished to Medicaid beneficiaries under Title XIX of the Social Security Act, 42 U.S.C. § 1396–1, *et seq.*

(xx)    "Medicare Part C or Part D Program" means the program(s) under which Medicare Advantage, Medicare cost, and Medicare health care prepayment plan benefits and Medicare Part D prescription drug plan benefits are administered by private entities that contract with CMS.

(yy)    "Medicare Program" means the Medicare Parts A and B federal program administered by CMS under which certain medical items, services, and/or prescription drugs are furnished to Medicare beneficiaries under Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*

(zz)    "Member Club" means any past or present member club of the NFL or any past member club of the American Football League.

(aaa)    "Monetary Award" means the payment of money from the Monetary Award Fund to a Settlement Class Member, other than a Derivative Claimant, as set forth in ARTICLE VI.  The term "Monetary Award" shall also include "Supplemental Monetary Award" with respect to the claims process set forth in this Settlement Agreement, including, without limitation, relating to submission and approval of claims, calculation and distribution of awards, and appeals.

(bbb)    "Monetary Award Fund" or "MAF" means the sixty-five (65) year fund, as set forth in Section 6.10.

(ccc)    "Monetary Award Grid" means that document attached as Exhibit 3.

10

(ddd)    "MSP Laws" means the Medicare Secondary Payer Act set forth at 42 U.S.C. § 1395y(b), as amended from time to time, and implementing regulations, and other applicable written CMS guidance.

(eee)    "NFL CBA Medical and Disability Benefits" means any disability or medical benefits available under the Collective Bargaining Agreement, including the benefits available under the Bert Bell/Pete Rozelle NFL Player Retirement Plan; NFL Player Supplemental Disability Plan, including the Neuro-Cognitive Disability Benefit provided for under Article 65 of the Collective Bargaining Agreement; the 88 Plan; Gene Upshaw NFL Player Health Reimbursement Account Plan; Former Player Life Improvement Plan; NFL Player Insurance Plan; and/or the Long Term Care Insurance Plan.

(fff)    "NFL Football" means the sport of professional football as played in the NFL, the American Football League, the World League of American Football, the NFL Europe League, and the NFL Europa League.  NFL Football excludes football played by all other past, present or future professional football leagues, including, without limitation, the All-American Football Conference.

(ggg)    "NFL Medical Committees" means the various past and present medical committees, subcommittees and panels that operated or operate at the request and/or direction of the NFL, whether independent or not, including, without limitation, the Injury and Safety Panel, Mild Traumatic Brain Injury Committee, Head Neck and Spine Medical Committee, Foot and Ankle Subcommittee, Cardiovascular Health Subcommittee, and Medical Grants Subcommittee, and all persons, whether employees, agents or independent of the NFL, who at any time were members of or participated on each such panel, committee, or subcommittee.

(hhh)    "Notice of Challenge Determination" means the written notice set forth in Section 4.3(a)(ii)-(iv).

(iii)    "Notice of Deficiency" means that document that the Claims Administrator sends to any Settlement Class Member whose Claim Package or Derivative Claim Package contains a Deficiency, as set forth in Section 8.5.

(jjj)    "Notice of Derivative Claimant Award Determination" means the written notice set forth in Section 9.2(a)-(b).

(kkk)    "Notice of Monetary Award Claim Determination" means the written notice set forth in Section 9.1(b)-(c).

(lll)    "Notice of Registration Determination" means the written notice set forth in Section 4.3.

(mmm)"Offsets" means downward adjustments to Monetary Awards, as set forth in Section 6.7(b).

11

**-1321-**

(nnn)   "Opt Out," when used as a verb, means the process by which any Retired NFL Football Player, Representative Claimant or Derivative Claimant otherwise included in the Settlement Class exercises the right to exclude himself or herself from the Settlement Class in accordance with Fed. R. Civ. P. 23(c)(2).

(ooo)   "Opt Outs," when used as a noun, means those Retired NFL Football Players, Representative Claimants and Derivative Claimants who would otherwise have been included in the Settlement Class and who have timely and properly exercised their rights to Opt Out and therefore, after the Final Approval Date, are not Settlement Class Members.

(ppp)   "Other Party" means every person, entity, or party other than the Released Parties.

(qqq)   "Parkinson's Disease" is defined in Exhibit 1.

(rrr)   "Parties" means the Class Representatives and Subclass Representatives, individually and on behalf of the Settlement Class and Subclasses, and the NFL Parties.

(sss)   "Personal Signature" means the actual signature by the person whose signature is required on the document.  Unless otherwise specified in this Settlement Agreement, a document requiring a Personal Signature may be submitted by an actual original "wet ink" signature on hard copy, or a PDF or other electronic image of an actual signature, but cannot be submitted by an electronic signature within the meaning of the Electronic Records and Signatures in Commerce Act, 15 U.S.C. §§7001, *et seq.*, the Uniform Electronic Transactions Act, or their successor acts.

(ttt)   "Preliminary Approval and Class Certification Order" means the order, upon entry by the Court, preliminarily approving the Class Action Settlement and conditionally certifying the Settlement Class and Subclasses.

(uuu)   "Protected Health Information" means individually identifiable health information, as defined in 45 C.F.R. § 160.103.

(vvv)   "Qualified BAP Providers" means neuropsychologists certified by the American Board of Professional Psychology (ABPP) or the American Board of Clinical Neuropsychology (ABCN), a member board of the American Board of Professional Psychology, in the specialty of Clinical Neuropsychology, and board-certified neurologists, eligible to conduct baseline assessments of Retired NFL Football Players under the BAP, as set forth in Section 5.7(a).

(www)  "Qualified MAF Physician" means a board-certified neurologist, board-certified neurosurgeon, or other board-certified neuro-specialist physician, who is part of an approved list of physicians authorized to make Qualifying Diagnoses, as set forth in Section 6.5.

(xxx)  "Qualified Pharmacy Vendor(s)" means one or more nationwide mail order pharmacies contracted to provide approved pharmaceutical prescriptions as part of the BAP Supplemental Benefits, as set forth in Section 5.7(b).

(yyy)  "Qualifying Diagnosis" or "Qualifying Diagnoses" means Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, ALS, and/or Death with CTE, as set forth in Exhibit 1 (Injury Definitions).

(zzz)  "Related Lawsuits" means all past, present and future actions brought by one or more Releasors against one or more Released Parties pending in the Court, other than the Class Action Complaint, or in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum that arise out of, are based upon or are related to the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, alleged, or referred to in the Class Action Complaint, except that Settlement Class Members' claims for workers' compensation and claims alleging entitlement to NFL CBA Medical and Disability Benefits are not Related Lawsuits.

(aaaa)  "Released Claims" means those claims released as set forth in Section 18.1 and Section 18.2.

(bbbb)  "Released Parties" for purposes of the Released Claims means (i) the NFL Parties (including all persons, entities, subsidiaries, divisions, and business units composed thereby), together with (ii) each of the Member Clubs, (iii) each of the NFL Parties' and Member Clubs' respective past, present, and future agents, directors, officers, employees, independent contractors, general or limited partners, members, joint venturers, shareholders, attorneys, trustees, insurers (solely in their capacities as liability insurers of those persons or entities referred to in subparagraphs (i) and (ii) above and/or arising out of their relationship as liability insurers to such persons or entities), predecessors, successors, indemnitees, and assigns, and their past, present, and future spouses, heirs, beneficiaries, estates, executors, administrators, and personal representatives, including, without limitation, all past and present physicians who have been employed or retained by any Member Club and members of all past and present NFL Medical Committees; and (iv) any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the NFL Parties or the Member Clubs, in their respective capacities as such; and, as to (i)-(ii) above, each of their respective Affiliates, including their Affiliates' officers, directors, shareholders, employees, and agents.  For the avoidance of any doubt, Riddell is not a Released Party.

(cccc)  "Releases" means the releases set forth in ARTICLE XVIII.

(dddd)  "Releasors" means the releasors set forth in Section 18.1.

13

(eeee)        "Representative Claimants" means authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased or legally incapacitated or incompetent Retired NFL Football Players.

(ffff)        "Retired NFL Football Players" means all living NFL Football players who, prior to the date of the Preliminary Approval and Class Certification Order, retired, formally or informally, from playing professional football with the NFL or any Member Club, including American Football League, World League of American Football, NFL Europe League and NFL Europa League players, or were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and who no longer are under contract to a Member Club and are not seeking active employment as players with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club.

(gggg)        "Riddell" means Riddell, Inc.; All American Sports Corporation; Riddell Sports Group, Inc.; Easton-Bell Sports, Inc.; Easton-Bell Sports, LLC; EB Sports Corp.; and RBG Holdings Corp., and each of their respective past, present, and future Affiliates, directors, officers, employees, general or limited partners, members, joint venturers, shareholders, agents, trustees, insurers (solely in their capacities as such), reinsurers (solely in their capacities as such), predecessors, successors, indemnitees, and assigns.

(hhhh)        "Settlement Agreement" means this Settlement Agreement and all accompanying exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

(iiii)        "Settlement Class and Subclasses" is defined in Section 1.1 and Section 1.2.

(jjjj)        "Settlement Class Member" means each Retired NFL Football Player, Representative Claimant and/or Derivative Claimant in the Settlement Class; provided, however, that the term Settlement Class Member as used herein with respect to any right or obligation after the Final Approval Date does not include any Opt Outs.

(kkkk)        "Settlement Class Notice" means that notice, in the form of Exhibit 5, and as set forth in Section 14.1, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and approved by the Court.

(llll)   "Settlement Class Notice Agent" means that person or entity who will implement the Settlement Class Notice Plan and who will be responsible for the publication and provision of the Settlement Class Notice and Settlement Class Supplemental Notice.

(mmmm)        "Settlement Class Notice Payment" means Four Million United States dollars (U.S. $4,000,000), as set forth in Sections 23.1(d) and

14

23.3(e), for the costs of Settlement Class Notice, any supplemental notice required, including, without limitation, the Settlement Class Supplemental Notice, and compensation of the Settlement Class Notice Agent and the Claims Administrator to the extent the Claims Administrator performs notice-related duties that have been agreed to by the NFL Parties.

(nnnn)     "Settlement Class Notice Plan" means that document which sets forth the methods, timetable, and responsibilities for providing Settlement Class Notice to Settlement Class Members, as set forth in Section 14.1.

(oooo)     "Settlement Class Supplemental Notice" means that notice, as set forth in Section 14.1(d), as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and approved by the Court.

(pppp)     "Settlement Date" means the date by which Class Counsel and Counsel for the NFL Parties have all signed this Settlement Agreement on behalf of the Class and Subclass Representatives, Settlement Class and Subclasses, and the NFL Parties, respectively.

(qqqq)     "Settlement Trust" means the trust enacted pursuant to the Settlement Trust Agreement, as set forth in Section 23.5.

(rrrr)     "Settlement Trust Account" means that account created under the Settlement Trust Agreement and held by the Trustee into which the NFL Parties will make payments pursuant to ARTICLE XXIII of this Settlement Agreement.

(ssss)     "Settlement Trust Agreement" means the agreement that will establish the Settlement Trust and will be entered into by Co-Lead Class Counsel, the NFL Parties, and the Trustee, as set forth in Section 23.5(c).

(tttt)     "Signature" means the actual signature by the person whose signature is required on the document, or on behalf of such person by a person authorized by a power of attorney or equivalent document to sign such documents on behalf of such person.  Unless otherwise specified in this Settlement Agreement, a document requiring a Signature may be submitted by: (i) an actual original "wet ink" signature on hard copy; (ii) a PDF or other electronic image of an actual signature; or (iii) an electronic signature within the meaning of the Electronic Records and Signatures in Commerce Act, 15 U.S.C. §§7001, *et seq.*, the Uniform Electronic Transactions Act, or their successor acts.

(uuuu)     "Special Master" means that person appointed by the Court pursuant to Federal Rule of Civil Procedure 53 to oversee the administration of the Settlement Agreement, as set forth in Section 10.1.

(vvvv)     "Stadium Program Bonds" means the NFL's G3 and G4 bonds.

15

(wwww)     "Stroke" means stroke, as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9) or the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), which occurs prior to or after the time the Retired NFL Football Player played NFL Football.  A medically diagnosed Stroke does not include a transient cerebral ischaemic attack and related syndromes, as defined by ICD-10.

(xxxx) "Subclass Counsel" means, pending Court appointment, the counsel who are so designated and who are signatories to this Settlement Agreement, namely Arnold Levin of Levin, Fishbein, Sedran & Berman for Subclass 1, and Dianne M. Nast of NastLaw LLC for Subclass 2, and, upon appointment, such other counsel as the Court may appoint to represent the Settlement Subclasses 1 and 2.

(yyyy)     "Subclass Representatives" means Shawn Wooden and Kevin Turner, or such other or different persons as may be designated by the Court as the representatives of the Settlement Subclasses 1 and 2.

(zzzz)     "Supplemental Monetary Award" means the supplemental payment of monies from the Monetary Award Fund to a Settlement Class Member, as set forth in Section 6.8.

(aaaaa)     "Traumatic Brain Injury" means severe traumatic brain injury unrelated to NFL Football play, that occurs during or after the time the Retired NFL Football Player played NFL Football, consistent with the definitions in the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), Codes 854.04, 854.05, 854.14 and 854.15, and the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), Codes S06.9x5 and S06.9x6.

(bbbbb)     "Tricare" means the federal program managed and administered by the United States Department of Defense through the Tricare Management Activity under which certain medical items, services, and/or prescription drugs are furnished to eligible members of the military services, military retirees, and military dependents under 10 U.S.C. § 1071, *et seq.*

(ccccc) "Trustee" means that person or entity approved by the Court as trustee of the Settlement Trust Account and as administrator of the qualified settlement fund for purposes of Treasury Regulation §1.468B-2(k)(3), as set forth in ARTICLE XXIII.

### ARTICLE III
### Settlement Benefits for Class Members

Section 3.1     The Class and Subclass Representatives, by and through Class Counsel and Subclass Counsel, and the NFL Parties, by and through Counsel for the NFL Parties, agree that, in consideration of the Releases and Covenant Not to Sue set forth in ARTICLE XVIII, and the dismissal with prejudice of the Class Action Complaint and the Related Lawsuits, and subject to the terms and conditions of this Settlement

16

Agreement, the NFL Parties will, in addition to other obligations set forth in this Settlement Agreement:

(a)       Pay all final Monetary Awards and Derivative Claimant Awards to those Settlement Class Members who qualify for such awards pursuant to the requirements and criteria set forth in this Settlement Agreement;

(b)       Provide qualified Settlement Class Members who are Retired NFL Football Players with the option to participate in the BAP and receive a BAP baseline assessment examination and BAP Supplemental Benefits, if eligible, pursuant to the requirements and criteria set forth in this Settlement Agreement; and

(c)       Establish the Education Fund to support education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of Retired NFL Football Players regarding the NFL CBA Medical and Disability Benefits programs, and other educational initiatives benefitting Retired NFL Football Players, as set forth in ARTICLE XII.

## ARTICLE IV
## Information and Registration Process

Section 4.1    <u>Information</u>

(a)       Within ten (10) days after the Preliminary Approval and Class Certification Order, Co-Lead Class Counsel will cause to be established and maintained a public website containing information about the Class Action Settlement (the "Settlement Website"), including the Settlement Class Notice and "Frequently Asked Questions."  Within ninety (90) days after the Effective Date, Co-Lead Class Counsel will cause the Settlement Website to be transitioned for claims administration purposes. The Settlement Website will be the launching site for secure web-based portals established and maintained by the Claims Administrator, BAP Administrator, and/or Lien Resolution Administrator for use by Settlement Class Members and their designated attorneys throughout the term of the Class Action Settlement.  The Claims Administrator will post all necessary information about the Class Action Settlement on the Settlement Website, including, as they become available, information about registration deadlines and methods to participate in the BAP, the Claim Package requirements and Monetary Awards, and the Derivative Claim Package requirements and Derivative Claimant Awards.  All content posted on the Settlement Website will be subject to advance approval by Co-Lead Class Counsel and Counsel for the NFL Parties.

(b)       Within ten (10) days after the Preliminary Approval and Class Certification Order, Co-Lead Class Counsel also will cause to be established and maintained an automated telephone system that uses a toll-free number or numbers to provide information about the Class Action Settlement.  Within ninety (90) days after the Effective Date, Co-Lead Class Counsel will cause the automated telephone system to be transitioned for claims administration purposes.  Through this system, Settlement Class

17

Members may request and obtain copies of the Settlement Class Notice, Settlement Agreement, Claim Form, Derivative Claim Form, and Appeals Form, and they may speak with operators for further information.

Section 4.2    Registration Methods and Requirements

(a)    The Claims Administrator will establish and administer both online and hard copy registration methods for participation in the Class Action Settlement.

(b)    The registration requirements will include information sufficient to determine if a registrant is a Settlement Class Member, including: (i) name; (ii) address; (iii) date of birth; (iv) Social Security Number (if any); (v) email address (if any), and whether email, the web-based portal on the Settlement Website, or U.S. mail is the preferred method of communication; (vi) identification as a Retired NFL Football Player, Representative Claimant or Derivative Claimant; (vii) dates and nature of NFL Football employment (*e.g.*, Active List, practice squad, developmental squad), and corresponding identification of the employer Member Club(s) or assigned team(s) (for Retired NFL Football Players, or, for the subject Retired NFL Football Player or deceased Retired NFL Football Player in the case of Representative Claimants and Derivative Claimants); and (viii) Signature of the registering purported Settlement Class Member.

(i)    In addition to the registration requirements in this Section 4.2(b), Representative Claimants also will identify the subject deceased or legally incapacitated or incompetent Retired NFL Football Player, including name, last known address, date of birth, and Social Security Number (if any), and will provide a copy of the court order, or other document issued by an official of competent jurisdiction, providing the authority to act on behalf of that deceased or legally incapacitated or incompetent Retired NFL Football Player.

(ii)    In addition to the registration requirements in this Section 4.2(b), Derivative Claimants also will identify the subject Retired NFL Football Player or deceased Retired NFL Football Player and the relationship by which they assert the right under applicable state law to sue independently or derivatively.

(c)    Unless good cause, as set forth in subsection (i), is shown, Settlement Class Members must register on or before 180 days from the date that the Settlement Class Supplemental Notice is posted on the Settlement Website.  If a Settlement Class Member does not register by that deadline, that Settlement Class Member will be deemed ineligible for the BAP and BAP Supplemental Benefits, Monetary Awards and Derivative Claimant Awards.

(i)    Good cause will include, without limitation, (a) that a Settlement Class Member who is a Representative Claimant had not been ordered by a court or other official of competent jurisdiction to be the authorized representative of the subject deceased or legally incapacitated or incompetent Retired NFL Football Player

18

prior to the registration deadline (and the Representative Claimant seeks to register within 180 days of authorization by the court or other official of competent jurisdiction), or (b) that the subject Retired NFL Football Player timely registered prior to his death or becoming legally incapacitated or incompetent and his Representative Claimant seeks to register for that Retired NFL Football Player; or (c) that the subject Retired NFL Football Player timely registered and the Derivative Claimant seeks to register within thirty (30) days of that Retired NFL Football Player's submission of a Claim Package.

Section 4.3    Registration Review

(a)    Upon receipt of a purported Settlement Class Member's registration, the Claims Administrator will review the information to determine whether the purported Settlement Class Member is a Settlement Class Member under the Settlement Agreement, and whether he or she has timely registered.  In order to determine qualification for the BAP, as set forth in Section 5.1, the Claims Administrator will also determine if a registering Retired NFL Football Player has identified his participation in NFL Football that earns him at least one half of an Eligible Season.  The Claims Administrator will then issue a favorable or adverse Notice of Registration Determination, within forty-five (45) days of receipt of the purported Settlement Class Member's registration, informing the purported Settlement Class Member whether he or she is a Settlement Class Member who has properly registered.  To the extent the volume of registrations warrants, this deadline may be extended by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties.

(i)    Favorable Notices of Registration Determination will include information regarding the sections of the Settlement Website and/or secure web-based portals that provide detailed information regarding the Claim Package and Monetary Awards, the Derivative Claim Package and Derivative Claimant Awards and, for Settlement Class Members who are Retired NFL Football Players, information regarding the BAP.  The Notice of Registration Determination will inform the Settlement Class Member of his or her unique identifying number for future use, including on a Claim Form or Derivative Claimant Form.

(ii)    Adverse Notices of Registration Determination will include information regarding how the purported Settlement Class Member can challenge the determination.  The purported Settlement Class Member may submit a written challenge to the Claims Administrator within sixty (60) days after the date of the Notice of Registration Determination.  The purported Settlement Class Member must present a sworn statement or other evidence in support of any written challenge.  The Claims Administrator will make a determination on the written challenge and issue a Notice of Challenge Determination to the purported Settlement Class Member and the NFL Parties informing them of the decision.

(iii)    The NFL Parties can challenge, for good cause, a favorable Notice of Registration Determination by submitting a written challenge to the Claims Administrator within sixty (60) days after the date of the Notice of Registration Determination.  The NFL Parties must present evidence in support of the written

19

challenge.  The Claims Administrator will make a determination on the written challenge and issue a Notice of Challenge Determination to the purported Settlement Class Member and the NFL Parties informing them of the decision.

(iv)    Any Notice of Challenge Determination may be appealed by the purported Settlement Class Member or the NFL Parties, provided that the NFL Parties' appeal is limited to challenging the purported Retired NFL Football Player's or subject Retired NFL Football Player's status as a Retired NFL Football Player, in writing to the Court within sixty (60) days after the date of the Notice of Challenge Determination.  The parties may present evidence in support of, or in opposition to, the appeal.  The Court will be provided access to all documents and information available to the Claims Administrator to aid in determining the appeal.  The Court may, in its discretion, refer the appeal to the Special Master.  The decision of the Court or the Special Master shall be final and binding.

(v)    If either Co-Lead Class Counsel or Counsel for the NFL Parties believe that the Claims Administrator has issued a Notice of Registration Determination that reflects an improper interpretation of the Settlement Class definition set forth in Section 1.1, such counsel may petition the Court to resolve the issue.  The Court may, in its discretion, refer the matter to the Special Master.  If the Court or the Special Master determines that the Claims Administrator misinterpreted the Settlement Class definition, the  decision of the Court or the Special Master will supersede the prior determination by the Claims Administrator.

## ARTICLE V
## Baseline Assessment Program

Section 5.1    Qualification.  All Retired NFL Football Players with at least one half of an Eligible Season, as defined in Section 2.1(kk), who timely registered to participate in the Class Action Settlement, as set forth in ARTICLE IV, will qualify for the BAP and will be entitled to one (1) baseline assessment examination as provided in Section 5.2.  For the avoidance of any doubt, an eligible Retired NFL Football Player who submits a claim for a Monetary Award, whether successful or not, may participate in the BAP, except a Retired NFL Football Player who submits a successful claim for a Monetary Award is not eligible to later receive BAP Supplemental Benefits.

Section 5.2    Scope of Program.  The BAP will provide the opportunity for each qualified Retired NFL Football Player, as set forth in Section 5.1, to receive a maximum of one (1) baseline assessment examination, which includes: (a) a standardized neuropsychological examination in accordance with the testing protocol set forth in Exhibit 2 performed by a neuropsychologist certified by the American Board of Professional Psychology (ABPP) or the American Board of Clinical Neuropsychology (ABCN), a member of the American Board of Professional Psychology, in the specialty of Clinical Neuropsychology, who is a Qualified BAP Provider; and (b) a basic neurological examination performed by a board-certified neurologist who is a Qualified BAP Provider.  The diagnosis of Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment and Level 2 Neurocognitive Impairment made pursuant to

20

the BAP must be agreed to by both the neuropsychologist and board-certified neurologist serving as Qualified BAP Providers. BAP baseline assessment examinations are intended to establish a physician/patient relationship between the Retired NFL Football Player and his Qualified BAP Providers. Retired NFL Football Players diagnosed during their BAP baseline assessment examinations by Qualified BAP Providers with Level 1 Neurocognitive Impairment will be eligible to receive BAP Supplemental Benefits, as set forth in Section 5.11. For the avoidance of any doubt, a Qualifying Diagnosis of Alzheimer's Disease, Parkinson's Disease, ALS or Death with CTE shall not be made through the BAP baseline assessment examination.

Section 5.3    Deadline for BAP Baseline Assessment Examination. A Retired NFL Football Player electing to receive a BAP baseline assessment examination must take it: (i) within two (2) years of the commencement of the BAP if he is age 43 or older on the Effective Date; or (ii) if he is younger than age 43 on the Effective Date, before his 45th birthday or within ten (10) years of the commencement of the BAP, whichever occurs earlier. For the avoidance of any doubt, there shall be no baseline assessment examinations after the tenth anniversary of the commencement of the BAP.

Section 5.4    Monetary Award Offset. If a Retired NFL Football Player in Subclass 1 chooses not to participate in the BAP and receives a Qualifying Diagnosis on or after the Effective Date, that Retired NFL Football Player will be subject to a Monetary Award Offset (as set forth in Section 6.7(b)(iv)) based on his non-participation in the BAP unless the Qualifying Diagnosis is of ALS or if he receives any Qualifying Diagnosis other than ALS prior to his deadline to receive a BAP baseline assessment examination as set forth in Section 5.3. This Offset does not apply to a Retired NFL Football Player who is in Subclass 2.

Section 5.5    BAP Term. The BAP will commence one hundred and twenty (120) days after the Settlement Class Supplemental Notice is posted on the Settlement Website and will end ten (10) years after it commences, except that the provision of BAP Supplemental Benefits to Retired NFL Football Players diagnosed with Level 1 Neurocognitive Impairment, as set forth in Exhibit 1, may extend beyond the term of the BAP for up to five (5) years as set forth in Section 5.11. Retired NFL Football Players who are qualified, as set forth in Section 5.1, will be entitled to one (1) baseline assessment examination within the applicable time limitations set forth in Section 5.3.

Section 5.6    BAP Administrator

(a)    Appointment and Oversight

(i)    The Motion for Preliminary Approval of the Class Action Settlement filed by Class Counsel  will request that the Court appoint The Garretson Resolution Group, Inc. ("Garretson Group") as BAP Administrator. Within ten (10) days after the Effective Date, Co-Lead Class Counsel will retain the BAP Administrator appointed by the Court.

21

(ii)    Co-Lead Class Counsel's retention agreement with the BAP Administrator will provide that the BAP Administrator will perform its responsibilities and take all steps necessary to faithfully implement and administer the BAP-related provisions of the Settlement Agreement, and will require that the BAP Administrator maintain at all times appropriate and sufficient bonding insurance in connection with its performance of its responsibilities under the Settlement Agreement.

(iii)    The Court may, at its sole discretion, request reports or information from the BAP Administrator.  The BAP Administrator will be responsible for reporting and providing information to the Court at such frequency and in such a manner as the Court directs.

(iv)    The Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) will oversee the BAP Administrator, and may, at his or her sole discretion, request reports or information from the BAP Administrator.

(v)    Beyond the reporting requirements set forth in Section 5.6(a)(iii)-(iv), beginning one month after the Effective Date, the BAP Administrator will issue a regular monthly report to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel, and Counsel for the NFL Parties during the first three years of the BAP, and thereafter on a quarterly basis, or as reasonably agreed upon by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel and Counsel for the NFL Parties, regarding the status and progress of the BAP.  The monthly (or quarterly) report will include, without limitation, information regarding activity in the BAP, including:  (a) the number and identity of Retired NFL Football Players with pending BAP appointments, (b) the monthly and total number of Retired NFL Football Players who took part in the BAP, and the identity of each Settlement Class Member who took part in the preceding month; (c) the monthly and total monetary amounts paid to Qualified BAP Providers; (d) the monthly and total number of Retired NFL Football Players eligible for BAP Supplemental Benefits, as set forth in Section 5.11, and the identity of each such Retired NFL Football Player; (e) any Retired NFL Football Player complaints regarding specific Qualified BAP Providers; (f) expenses/administrative costs, including a summary accounting of the administrative expenses incurred by the BAP Administrator in the preceding month; and (g) any other information reasonably requested by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel, or Counsel for the NFL Parties.

(vi)    Beginning on the first January after the Effective Date, the BAP Administrator will provide annual financial reports to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel and Counsel for the NFL Parties, based on information from the preceding year, regarding:  (a) the number of Retired NFL Football Players who took part in the BAP; (b) the monetary amount paid to Qualified BAP Providers; (c) the number of Retired NFL Football Players eligible for BAP Supplemental Benefits; (d) the

22

expenses/administrative costs incurred by the BAP Administrator; (e) the projected expenses/administrative costs for the remainder of the BAP, including the five-year period for the provision of BAP Supplemental Benefits as set forth in Sections 5.5 and 5.11; (f) the monies remaining in the BAP Fund; and (g) any other information reasonably requested by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel, or Counsel for the NFL Parties.

(b)    <u>Compensation and Expenses</u>.  Reasonable compensation of the BAP Administrator, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and reasonable out-of-pocket costs and expenses directly incurred as a result of the BAP Administrator's responsibilities will be paid out of the BAP Fund.  The BAP Administrator shall submit an annual budget to the Court for review and approval.  Either Co-Lead Class Counsel or Counsel for the NFL Parties may challenge the reasonableness of the BAP Administrator's out-of-pocket costs and expenses, in which case the Court will determine (or may, in its discretion, refer the challenge to the Special Master to determine) the reasonableness of such costs and expenses.  If the Court or Special Master, as applicable, determines that any costs and expenses are unreasonable, the BAP Administrator will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the BAP Administrator will refund that amount to the BAP Fund.

(c)    <u>Liability</u>.  The Parties, Class Counsel, Counsel for the NFL Parties, and the Special Master, and their respective Affiliates, will not be liable for any act, or failure to act, of the BAP Administrator.

(d)    <u>Replacement</u>.  The BAP Administrator may be replaced by joint motion made by Co-Lead Class Counsel and Counsel for the NFL Parties, or for cause by motion of either Co-Lead Class Counsel or Counsel for the NFL Parties, upon order of the Court.  If the BAP Administrator resigns, dies, is replaced, or is otherwise unable to continue employment in this position, Co-Lead Class Counsel and Counsel for the NFL Parties will agree to and jointly recommend a new proposed BAP Administrator for appointment by the Court.

(e)    <u>Conflicts of Interest</u>.  Within ninety (90) days after the Effective Date, Co-Lead Class Counsel, Counsel for the NFL Parties, the Special Master and the BAP Administrator will establish and implement procedures to promptly detect and resolve possible conflicts of interest between the BAP Administrator, including, without limitation, its executive leadership team and all employees conducting BAP-related work, on the one hand, and Settlement Class Members (and counsel individually representing them, if any), the NFL Parties, Counsel for the NFL Parties, or the Special Master, on the other hand.  Co-Lead Class Counsel, Counsel for the NFL Parties, and the BAP Administrator, subject to approval of the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) may modify such procedures in the future, if appropriate.  Notwithstanding anything herein to the contrary, Co-Lead Class Counsel, Counsel for the NFL Parties, and the Special Master understand that the BAP Administrator regularly provides settlement administration, lien resolution, and other related services to settling parties and their attorneys, and Co-Lead

23

Class Counsel, Counsel for the NFL Parties, and the Special Master acknowledge and agree that it shall not be a conflict of interest for the BAP Administrator to provide such services to such individuals or to receive compensation for such work.

        Section 5.7    <u>Retention and Oversight of Qualified BAP Providers and Qualified BAP Pharmacy Vendor(s)</u>

        (a)    <u>Qualified BAP Providers</u>

        (i)    Within ninety (90) days after the Effective Date, the BAP Administrator will establish and maintain a network of Qualified BAP Providers to provide baseline assessment examinations to Retired NFL Football Players, and to provide medical treatment to Retired NFL Football Players who receive BAP Supplemental Benefits, as set forth in Section 5.11. The BAP Administrator's selection of all Qualified BAP Providers will be subject to written approval of Co-Lead Class Counsel and Counsel for the NFL Parties, each of which will have the unconditional right to veto the selection of twenty (20) Qualified BAP Providers, in addition to the unconditional right to veto the selection of any Qualified BAP Provider who has served or is serving as a litigation expert consultant or expert witness for a party or his, her or its counsel in connection with litigation relating to the subject matter of the Class Action Complaint since July 1, 2011. Thereafter, the BAP Administrator may select additional Qualified BAP Providers during the term of the BAP to the extent necessary to effectuate network coverage, subject to written approval of Co-Lead Class Counsel and Counsel for the NFL Parties. Co-Lead Class Counsel and Counsel for the NFL Parties each shall accrue five (5) additional unconditional veto rights for every fifty (50) new Qualified BAP Providers selected and approved during the term of the BAP, and shall retain the unconditional right to veto the selection of any Qualified BAP Provider who has served or is serving as a litigation expert consultant or expert witness for a party or his, her or its counsel in connection with litigation relating to the subject matter of the Class Action Complaint since July 1, 2011.

        (ii)    The BAP Administrator will select Qualified BAP Providers based on the following criteria: (a) education, training, licensing, credentialing, board certification, and insurance coverage; (b) ability to provide the specified baseline assessment examinations under the BAP; (c) ability to provide medical services under the BAP Supplemental Benefits; (d) ability to provide all required examinations and services in a timely manner; (e) geographic proximity to Retired NFL Football Players; and (f) rate structure and payment terms. Under no circumstances will a Qualified BAP Provider be selected or approved who has been convicted of a crime of dishonesty, or who is serving on or after the Final Approval Date as a litigation expert consultant or expert witness for an Opt Out, or his, her or its counsel in connection with litigation relating to the subject matter of the Class Action Complaint. If selected and approved, under no circumstances shall a Qualified BAP Provider continue to serve in that role if convicted of a crime of dishonesty and/or thereafter retained as a litigation expert consultant or expert witness for an Opt Out, or his, her or its counsel in connection with litigation relating to the subject matter of the Class Action Complaint.

<center>24</center>

(iii)    In order to be eligible for selection, each Qualified BAP Provider must provide the following information to the BAP Administrator: (a) state professional license number; (b) National Provider Identifier; (c) board-certification information, if any; (d) evidence of proper licensing and insurance coverage under applicable state laws; (e) experience, including number of years as a healthcare provider; (f) primary and additional service locations; (g) mailing and billing addresses; (h) tax identification information; (i) ability to provide the specified baseline assessment examinations; (j) capacity for new patients; (k) appointment accessibility; (l) languages spoken; (m) criminal record; (n) the percentage of his/her practice related to litigation expert/consulting engagements, including the relative percentage of such expert/consulting performed for plaintiffs, defendants and court/administrative bodies, and a general description of such engagements, since July 1, 2011; (o) list of all litigation-related engagements as a litigation expert consultant or expert witness arising out of, or relating to, head, brain and/or cognitive injury of athletes; (p) a general description of any past or present salaried, or other professional or consulting relationships with the NFL Parties or Member Clubs; and (q) such other information as the BAP Administrator may reasonably request.

(iv)    The BAP Administrator will enter into a written contract with each Qualified BAP Provider (the "Provider Contract") to provide the specified baseline assessment examinations under the BAP and authorized medical services under the BAP Supplemental Benefits.  The Provider Contract will include, among other things, a description of the baseline assessment examinations that will be provided under the BAP; rates, billing, and payment terms; terms relating to licensing, credentials, board certification, and other qualifications; the amount and type of insurance to be maintained by the Qualified BAP Provider; procedures for scheduling, rescheduling, and cancelling BAP appointments; document retention policies and procedures; and fraud policies.  The Provider Contract will further provide: (a) that the Qualified BAP Provider will release and hold harmless the Parties, Class Counsel, Counsel for the NFL Parties, Special Master, BAP Administrator, and Claims Administrator from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, arising from or related to the services provided by that Qualified BAP Provider as part of the BAP; (b) that the Qualified BAP Provider will not seek payment from the Parties, Class Counsel, Counsel for the NFL Parties, Special Master, BAP Administrator, or Claims Administrator for any medical service(s), examination(s), and/or test(s) or any medical treatment or care that are not part of the specified baseline assessment examinations or authorized for payment under the terms of the BAP Supplemental Benefits, except that the Qualified BAP Provider may seek payment from a Retired NFL Football Player or, where applicable, his or her insurer for any medical service(s), examination(s), and/or test(s) or any medical treatment or care that are not part of the specified baseline assessment examinations or BAP Supplemental Benefits, where the Retired NFL Football Player, or, where applicable, his or her insurer, has agreed in writing to authorize and pay for such medical service(s), examination(s), and/or test(s) or any medical treatment or care; and (c) that the Qualified BAP Provider will retain medical records for Retired NFL Football Players in accordance with Section 5.10.

25

(1)    The Provider Contract will be drafted by the BAP Administrator, as overseen by the Special Master, and in consultation with and subject to the approval of, Co-Lead Class Counsel and Counsel for the NFL Parties.

(2)    The Provider Contract's fraud policies will contain the following warning against fraudulent conduct:  "As a Qualified BAP Provider you have agreed to provide your services and make your diagnosis in good faith in accordance with best medical practices.  Your diagnoses and billings will be audited on a periodic and random basis subject to the discretion of the BAP Administrator and Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof).  Any finding of fraudulent diagnoses or billings by you will be subject to, without limitation, referral to appropriate regulatory and disciplinary boards and agencies and/or federal authorities, the immediate termination of this contract, and your disqualification from serving as a diagnosing physician in any aspect of the Class Action Settlement."

(v)    The BAP Administrator will audit the credentialing and performance of Qualified BAP Providers on an annual (or, as needed, more frequent) basis.  The criteria and process for the audit will be overseen by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) and subject to the approval of Co-Lead Class Counsel and Counsel for the NFL Parties, except Co-Lead Class Counsel or Counsel for the NFL Parties shall maintain the right to order audits of specific Qualified BAP Providers under this subparagraph, on the basis of good cause, at any time during the BAP, including the five-year period for the provision of BAP Supplemental Benefits as set forth in Sections 5.5 and 5.11.  The BAP Administrator may conduct onsite visits at the locations of Qualified BAP Providers on a random or adverse selection basis to confirm their compliance with the Provider Contract described in Section 5.7(a)(iv).

(vi)    All Qualified BAP Providers will bill the BAP Administrator directly for any services rendered pursuant to the terms and conditions of the BAP.  The BAP Administrator will establish procedures to ensure that the BAP Fund is the primary payer for BAP baseline assessment examinations and treatments under the BAP Supplemental Benefits, subject to the coverage limits of the BAP Supplemental Benefits, consistent with the Provider Contract, which will be executed by the BAP Administrator and each participating Qualified BAP Provider.  The BAP Administrator will establish and administer a system to audit Qualified BAP Providers' procedures for billing and providing BAP baseline assessment examinations and BAP Supplemental Benefits treatments.  This audit system will be designed to detect billing errors that could result in overpayment or the payment of unauthorized medical services.  The BAP Administrator will bring abusive and fraudulent Qualified BAP Provider billings to the attention of the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel and Counsel for the NFL Parties.

26

(vii)    The BAP Administrator may terminate the Provider Contract of any Qualified BAP Providers that are not in compliance with its terms, or for other cause.

(b)    Qualified Pharmacy Vendor(s)

(i)    Within ninety (90) days after the Effective Date, the BAP Administrator will contract with one or more Qualified BAP Pharmacy Vendor(s) to provide pharmaceuticals covered by the BAP Supplemental Benefits, as set forth in Section 5.11.  The BAP Administrator's selection of the Qualified BAP Pharmacy Vendor(s) will be subject to written approval of the Special Master, in consultation with Co-Lead Class Counsel and Counsel for the NFL Parties.

(ii)    The BAP Administrator will select Qualified BAP Pharmacy Vendor(s) based on the following criteria:  (a) proper licensing for operation as a mail order pharmacy in all U.S. states and territories; (b) nationwide coverage and ease of administration; and (c) rate structure and payment terms.

(iii)    In order to be eligible for selection, each Qualified BAP Pharmacy Vendor must provide the following information to the BAP Administrator:  (a) federal DEA and/or state license numbers, as applicable; (b) evidence of proper licensing under applicable state laws; (c) experience, including number of years as a mail order pharmacy; (d) information about processes required to submit and fulfill mail order prescriptions; (e) average processing and delivery time from submission of a valid prescription; (f) policies related to generic substitution of name-brand pharmaceutical products; (g) mailing and billing addresses; (h) tax identification information; (i) languages spoken; and (j) such other information as the BAP Administrator may reasonably request.

(iv)    The BAP Administrator will enter into a written contract with each Qualified BAP Pharmacy Vendor (the "Pharmacy Contract") to provide the pharmaceuticals covered under the BAP Supplemental Benefits.  The Pharmacy Contract will include, among other things, a description of the pharmaceutical therapies that will be covered under the BAP Supplemental Benefits; rates, billing, and payment terms; terms relating to qualifications; procedures for submitting, filling, and shipping prescriptions; document retention policies and procedures; and fraud policies.  The Pharmacy Contract will further provide:  (a) that the Qualified BAP Pharmacy Vendor will release and hold harmless the Parties, Class Counsel, Counsel for the NFL Parties, Special Master, BAP Administrator, and Claims Administrator from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, arising from or related to the services provided by that Qualified BAP Pharmacy Vendor as part of the BAP; and (b) that the Qualified BAP Pharmacy Vendor will not seek payment from the Parties, Class Counsel, Counsel for the NFL Parties, Special Master, BAP Administrator, or Claims Administrator for any prescriptions that are authorized for payment under the terms of the BAP Supplemental Benefits.

(v)     The BAP Administrator will audit the performance of Qualified BAP Pharmacy Vendor(s) on an annual (or, as needed, more frequent) basis. The criteria and process for the audit will be overseen by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) and subject to the approval of Co-Lead Class Counsel and Counsel for the NFL.

(vi)     All Qualified BAP Pharmacy Vendors will be reimbursed by the BAP Administrator directly for any services rendered pursuant to the terms and conditions of the BAP, subject to the coverage limits of the BAP Supplemental Benefits. The BAP Administrator will establish procedures to ensure that the BAP Fund is the primary payer for covered prescriptions consistent with the Pharmacy Contract, which will be executed by the BAP Administrator and each participating Qualified BAP Provider. The BAP Administrator will establish and administer a system to audit Qualified BAP Pharmacy Vendor(s)' procedures for billing and providing approved BAP Supplemental Benefits prescriptions. This audit system will be designed to detect billing errors that could result in overpayment or the payment of unauthorized prescriptions. The BAP Administrator will bring abusive and fraudulent Qualified BAP Pharmacy Vendor billings to the attention of the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel and Counsel for the NFL Parties.

(vii)   The BAP Administrator may terminate the Pharmacy Contract of any Qualified BAP Pharmacy Vendor that is not in compliance with its terms, or for other cause.

Section 5.8     Scheduling and Providing Baseline Assessment Examinations.   The Parties will establish, subject to Court approval, processes and procedures governing the scheduling and provision of BAP examinations.

Section 5.9     Other Communications with Retired NFL Football Players

(a)     The BAP Administrator will send an Explanation of Benefits ("EOB") statement to each Retired NFL Football Player following a BAP appointment. The statement will describe the services and medical examinations that were performed during the appointment.

(b)     Beginning one (1) year after the Effective Date of the Settlement Agreement, the BAP Administrator will send Retired NFL Football Players who have not received baseline assessments and remain eligible to do so, an annual statement describing the BAP and requesting that they update any contact information that has changed in the preceding year.

(c)     If a Retired NFL Football Player is represented by counsel and has provided such notice to the BAP Administrator, the BAP Administrator will copy his counsel of record on any written communications with the Retired NFL Football Player.

28

Section 5.10    Use and Retention of Medical Records

(a)    All Retired NFL Football Players who participate in the BAP will be encouraged to provide their confidential medical records for use in medical research into cognitive impairment and safety and injury prevention with respect to football players.  The provision of such medical records shall be subject to the reasonable informed consent of the Retired NFL Football Players, and in compliance with applicable law, including a HIPAA-compliant authorization form.  Medical records and information used in medical research will be kept confidential.

(b)    The BAP Administrator will retain the medical records of Retired NFL Football Players and other program-defined forms that must be completed by the Qualified BAP Providers.

(c)    Qualified BAP Providers who provide BAP baseline assessment examinations will be required to retain all medical records from such visits in compliance with applicable state and federal laws; provided, however, that each Qualified BAP Provider will be required to retain all medical records in the format(s) prescribed by applicable state and federal laws and, notwithstanding any shorter time period permitted under applicable laws, will be required to retain such medical records for not less than ten (10) years after the conclusion of the BAP term.

(d)    All Retired NFL Football Player medical records will be treated as confidential, as set forth in Section 17.2.

Section 5.11    BAP Supplemental Benefits.  Each Retired NFL Football Player diagnosed by Qualified BAP Providers with a Level 1 Neurocognitive Impairment, as defined in Exhibit 1, shall be eligible for BAP Supplemental Benefits related to the Retired NFL Football Player's impairment in the form of medical treatment, counseling and/or examination by Qualified BAP Providers, including, if medically needed and prescribed by a Qualified BAP Provider, pharmaceuticals by Qualified BAP Pharmacy Vendor(s).  BAP Supplemental Benefits shall comprise medical treatments and/or examinations generally accepted by the medical community.  The BAP Supplemental Benefits must be used within the term of the BAP or within five (5) years of diagnosis of Level 1 Neurocognitive Impairment by Qualified BAP Providers, even if the five (5) year period extends beyond the term of the BAP, whichever is later.  The BAP Administrator, as overseen by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), and in consultation with, and subject to the approval of, Co-Lead Class Counsel and Counsel for the NFL Parties, will establish the procedures governing BAP Supplemental Benefits.

Section 5.12    Diagnosing Physician Certifications.  Qualified BAP Providers who diagnose a Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment, as set forth in Exhibit 1, must support that diagnosis with a Diagnosing Physician Certification and supporting medical records. The Qualified BAP Provider must provide the Diagnosing Physician Certification and

29

copies of the supporting medical records to the Retired NFL Football Player, his counsel (if any), and the BAP Administrator.

Section 5.13 <u>Conflicting Opinions of Qualified BAP Providers</u>. If there is a lack of agreement, as required by Section 5.2 and Exhibit 1, between the two Qualified BAP Providers regarding whether a Retired NFL Football Player has Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, or none, the BAP Administrator may in its discretion: (a) request that the Qualified BAP Providers confer with each other in an attempt to resolve the conflict; (b) request that a second BAP baseline assessment examination be conducted by different Qualified BAP Providers; or (c) refer the results of the BAP baseline assessment examination and all relevant medical records to a member of the Appeals Advisory Panel for review and decision. The decision of the member of the Appeals Advisory Panel will determine whether the Retired NFL Football Player has Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, or none. If the member of the Appeals Advisory Panel determines that additional review, analysis and/or testing needs to be conducted prior to a decision, such review, analysis and/or testing will be completed by Qualified BAP Providers as selected by the BAP Administrator. The decision of the Appeals Advisory Panel member as to whether the Retired NFL Football Player has Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, or none, will be final and binding, except a claim for a Monetary Award or Derivative Claimant Award relying on such diagnosis may still be appealed, as set forth in Section 9.5. The member of the Appeals Advisory Panel must support the decision with a Diagnosing Physician Certification.

Section 5.14 <u>Funding</u>.

(a) All aspects of the BAP, including, without limitation, its costs and expenses, payment of Qualified BAP Providers, compensation of the BAP Administrator, and BAP Supplemental Benefits, will be paid from the BAP Fund. Any funds remaining in the BAP Fund at the conclusion of the five-year period for the provision of BAP Supplemental Benefits, as set forth in Sections 5.5 and 5.11, shall be transferred to the Settlement Trust for transfer by the Trustee into the Monetary Award Fund.

(b) In order to ensure sufficient funds to pay for a baseline assessment examination for each eligible Retired NFL Football Player, as set forth in Section 5.2 and subject to Sections 5.14(a), 23.1(b) and 23.3(d) of this Agreement, the maximum per player BAP Supplemental Benefit payable under this Section, taking into account such factors as the number of Retired NFL Football Players using the BAP and diagnosed with Level 1 Neurocognitive Impairment, shall be determined on the one-year anniversary of the commencement of the BAP by Co-Lead Class Counsel and Counsel for the NFL Parties, in consultation with the BAP Administrator, and with the approval of the Court. The maximum per player benefit will be set at a sufficient level to ensure that there will be sufficient funds, without exceeding the Seventy-Five Million United States Dollars (U.S. $75,000,000) cap on the BAP Fund, to pay for every eligible Retired NFL

Football Player to receive one baseline assessment examination. At the conclusion of the term of the BAP, and at such other times as the Court may direct or as may be requested by Co-Lead Class Counsel or Counsel for the NFL Parties, Co-Lead Class Counsel and Counsel for the NFL Parties will review and adjust, if necessary, this maximum benefit, in consultation with the BAP Administrator and with the approval of the Court, to ensure that there are sufficient funds to pay for all baseline assessment examinations without exceeding the Seventy-Five Million United States Dollar (U.S. $75,000,000) cap on the BAP Fund.

### ARTICLE VI
### Monetary Awards for Qualifying Diagnoses

Section 6.1    Eligible Retired NFL Football Players and Representative Claimants will be entitled to Monetary Awards as set forth in this Article.

Section 6.2    <u>Eligibility</u>

(a)    A Settlement Class Member who is a Retired NFL Football Player or Representative Claimant is eligible for a Monetary Award if, and only if:  (i) the Settlement Class Member timely registered to participate in the Class Action Settlement, as set forth in Section 4.2; (ii) the subject Retired NFL Football Player or deceased Retired NFL Football Player was diagnosed with a Qualifying Diagnosis; and (iii) the Settlement Class Member timely submits a Claim Package, subject to the terms and conditions set forth in ARTICLE VIII.

(b)    A Representative Claimant of a deceased Retired NFL Football Player will be eligible for a Monetary Award only if the deceased Retired NFL Football Player died on or after January 1, 2006, or if the Court determines that a wrongful death or survival claim filed by the Representative Claimant would not be barred by the statute of limitations under applicable state law as of:  (i) the date the Representative Claimant filed litigation against the NFL (and, where applicable, NFL Properties) relating to the subject matter of these lawsuits, if such a wrongful death or survival claim was filed prior to the Settlement Date; or (ii) the Settlement Date, where no such suit has previously been filed.

Section 6.3    <u>Qualifying Diagnoses</u>

(a)    The following, as defined in Exhibit 1, are Qualifying Diagnoses eligible for a Monetary Award:  (a) Level 1.5 Neurocognitive Impairment; (b) Level 2 Neurocognitive Impairment; (c) Alzheimer's Disease; (d) Parkinson's Disease; (e) Death with CTE; and (f) ALS.  All Qualifying Diagnoses must be made by properly credentialed physicians as set forth below for the particular Qualifying Diagnosis, consistent with Exhibit 1 (Injury Definitions).

(b)    Following the Effective Date, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS shall be made only by Qualified MAF Physicians, except that a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment or Level 2

Neurocognitive Impairment may also be made by Qualified BAP Providers as set forth in Section 5.2 and consistent with the terms of Exhibit 1 (Injury Definitions).

(i)     Any licensed neuropsychologist who assists a Qualified MAF Physician in making a Qualifying Diagnosis must be certified by the American Board of Professional Psychology (ABPP) or the American Board of Clinical Neuropsychology (ABCN), a member board of the American Board of Professional Psychology, in the specialty of Clinical Neuropsychology.

(c)     From the date of the Preliminary Approval and Class Certification Order through the Effective Date, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS  shall be made only by board-certified neurologists, board-certified neurosurgeons, or other board-certified neuro-specialist physicians, except as set forth in Section 6.3(e).

(d)     Prior to the date of the Preliminary Approval and Class Certification Order, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS shall be made only by board-certified neurologists, board-certified neurosurgeons, or other board-certified neuro-specialist physicians, or otherwise qualified neurologists, neurosurgeons, or other neuro-specialist physicians, except as set forth in Section 6.3(e).

(e)     For a Retired NFL Football Player deceased prior to the Effective Date, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS, which was rendered while the Retired NFL Football Player was living by a physician not otherwise identified in Sections 6.3 (b)-(d) but who has sufficient qualifications (i) in the field of neurology to make a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS, or (ii) in the field of neurocognitive disorders to make a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment, is permitted.

(f)     A Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order, through a post-mortem diagnosis by a board-certified neuropathologist of CTE.

Section 6.4     Qualifying Diagnosis Review by Appeals Advisory Panel.

(a)     A member of the Appeals Advisory Panel must review, as set forth in Section 6.4(b), Qualifying Diagnoses made prior to the Effective Date by:

(i)     A board-certified neurologist, board-certified neurosurgeon, or other board-certified neuro-specialist physician, who is not a Qualified MAF Physician, between July 1, 2011 and the Effective Date;

32

(ii)    A neurologist, neurosurgeon, or other neuro-specialist physician, who is not board-certified but is otherwise qualified; and

(iii)    A physician who is not a Qualified MAF Physician and who is not otherwise identified in Section 6.4(a)(i)-(ii) but who has sufficient qualifications (i) in the field of neurology to make a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS, or (ii) in the field of neurocognitive disorders to make a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment.

(b)    If a review of a Qualifying Diagnosis by a member of the Appeals Advisory Panel is required by Section 6.4(a), the contents of the Claim Package relevant to the Qualifying Diagnosis, including the Claim Form, the Diagnosing Physician Certification, medical records supporting and reflecting the Qualifying Diagnosis, and any other related materials concerning the Qualifying Diagnosis, shall be submitted to a member of the Appeals Advisory Panel for review. The Appeals Advisory Panel member will determine whether the Retired NFL Football Player or deceased Retired NFL Football Player has the Qualifying Diagnosis reported in the Diagnosing Physician Certification, or, where there is no Diagnosing Physician Certification as set forth in Section 8.2(a)(i), reported in the Claim Package submitted by the Representative Claimant. The Appeals Advisory Panel member shall review the Qualifying Diagnosis based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 (Injury Definitions), including consideration of, without limitation, the qualifications of the diagnosing physician, the supporting medical records and the year and state of medicine in which the Qualifying Diagnosis was made. The Appeals Advisory Panel member also shall confirm that the Qualifying Diagnosis was made by an appropriate physician as set forth in Section 6.3. For the avoidance of any doubt, the review of whether a Qualifying Diagnosis is based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 (Injury Definitions) does not require identical diagnostic criteria, including without limitation, the same testing protocols or documentation requirements.

(i)    The review by a member of the Appeals Advisory Panel under this subsection, absent extraordinary circumstances impacting the schedule of such member, shall be completed within forty-five (45) days of the date on which he or she receives a Settlement Class Member's file, except such time limit may be altered to the extent the volume of files warrants, either by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), or by application by Co-Lead Class Counsel or Counsel for the NFL Parties to the Court. The Qualifying Diagnoses shall generally be reviewed in the order in which they are received.

33

Section 6.5    Qualified MAF Physicians

(a)    Within ninety (90) days after the Effective Date, the Claims Administrator will establish and maintain a list of Qualified MAF Physicians eligible to provide Qualifying Diagnoses.  Each Qualified MAF Physician shall be approved by Co-Lead Class Counsel and Counsel for the NFL Parties, which approval shall not be unreasonably withheld.  To the extent a Retired NFL Football Player is examined by a Qualified MAF Physician, such visit and examination shall be at the Retired NFL Football Player's own expense.

(b)    The Claims Administrator will select Qualified MAF Physicians based on the following criteria:  (a) education, training, licensing, credentialing, board certification, and insurance coverage; (b) ability to provide the specified examinations necessary to make Qualifying Diagnoses; (c) ability to provide all required examinations and services in a timely manner; (d) insurance accessibility; and (e) geographic proximity to Retired NFL Football Players.  Under no circumstances will a Qualified MAF Physician be selected or approved who has been convicted of a crime of dishonesty, or who is serving on or after the Final Approval Date as a litigation expert consultant or expert witness for an Opt Out, or his, her or its counsel in connection with litigation relating to the subject matter of the Class Action Complaint.  If selected and approved, under no circumstances shall a Qualified MAF Physician continue to serve in that role if convicted of a crime of dishonesty and/or thereafter retained as a litigation expert consultant or expert witness for an Opt Out, or his, her or its counsel in connection with litigation relating to the subject matter of the Class Action Complaint.

(c)    In order to be eligible for selection, each Qualified MAF Physician must provide the following information to the Claims Administrator:  (a) state professional license number; (b) National Provider Identifier; (c) board-certification information; (d) evidence of proper licensing and insurance coverage under applicable state laws; (e) experience, including number of years as a healthcare provider; (f) primary and additional service locations; (g) mailing and billing addresses; (h) tax identification information; (i) ability to provide all required examinations and services in a timely manner; (j) capacity for new patients; (k) appointment accessibility; (l) languages spoken; (m) criminal record; (n) the percentage of his/her practice related to litigation expert/consulting engagements, including the relative percentage of such expert/consulting performed for plaintiffs, defendants, and court/administrative bodies, and a general description of such engagements, since July 1, 2011; (o) list of all litigation-related engagements as a litigation expert consultant or expert witness arising out of, or relating to, head, brain and/or cognitive injury of athletes; (p) a general description of any past or present salaried, or other professional or consulting relationships with the NFL Parties or Member Clubs; and (q) such other information as the Claims Administrator may reasonably request.

Section 6.6    Modification of Qualifying Diagnoses

(a)    Subject to the constraints of Section 6.6(b), following the Effective Date, on a periodic basis not to exceed once every ten (10) years, Co-Lead

34

-1344-

Class Counsel and Counsel for the NFL Parties agree to discuss in good faith possible prospective modifications to the definitions of Qualifying Diagnoses and/or the protocols for making Qualifying Diagnoses, in light of generally accepted advances in medical science.  No such modifications can be made absent written agreement between Co-Lead Class Counsel and Counsel for the NFL Parties and approval by the Court, and neither Co-Lead Class Counsel nor Counsel for the NFL Parties shall seek modification to the definitions of Qualifying Diagnoses and/or the protocols for making Qualifying Diagnoses other than with the written agreement of the other regarding such modifications.

(b)    Monetary Awards, consistent with the terms of this Settlement Agreement, shall compensate Settlement Class Members only in circumstances where a Retired NFL Football Player manifests actual cognitive impairment and/or actual neuromuscular impairment, or a deceased Retired NFL Football Player manifested actual cognitive impairment and/or actual neuromuscular impairment while living.  For the avoidance of any doubt, the identification of a condition—for example, through a blood test, genetic test, imaging technique, or otherwise—that has not yet resulted in actual cognitive impairment and/or actual neuromuscular impairment experienced by the Retired NFL Football Player does not qualify as a Qualifying Diagnosis.  As such, Co-Lead Class Counsel and Counsel for the NFL Parties have defined the Qualifying Diagnoses to require an actual manifestation of cognitive impairment and/or an actual manifestation of neuromuscular impairment.  Consistent with Section 6.6(a), Co-Lead Class Counsel and Counsel for the NFL Parties will address possible advances in science to effectuate this mutual intent.  For the avoidance of doubt, this subsection does not apply to the Qualifying Diagnosis of Death with CTE.  This subsection also does not alter the Qualifying Diagnoses definitions, as set forth in Exhibit 1.

(c)    In no event will modifications be made to the Monetary Award levels in the Monetary Award Grid, except for inflation adjustment(s) as set forth in Section 6.9.

Section 6.7    Determination of Monetary Awards

(a)    Settlement Class Members who the Claims Administrator determines are entitled to Monetary Awards will be compensated in accordance with the terms of the Monetary Award Grid and all applicable Offsets, as set forth in Exhibit 3 and below, except such compensation will be reduced by one percent (1%) to the extent that any Derivative Claimants submit for, and are entitled to, a Derivative Claimant Award based upon their relationships with the Retired NFL Football Player, as set forth in ARTICLE VII.

(b)    Offsets.  All Monetary Awards will be subject to downward adjustments, including based on a Settlement Class Member's age at the time of the Qualifying Diagnosis (as reflected in the Monetary Award Grid, as set forth in Exhibit 3), and as follows:

35

(i)     <u>Number of Eligible Seasons</u>:

    (1)    4.5 Eligible Seasons:    - 10%

    (2)    4 Eligible Seasons:    - 20%

    (3)    3.5 Eligible Seasons:    - 30%

    (4)    3 Eligible Seasons:    - 40%

    (5)    2.5 Eligible Seasons:    - 50%

    (6)    2 Eligible Seasons:    - 60%

    (7)    1.5 Eligible Seasons:    - 70%

    (8)    1 Eligible Season:    - 80%

    (9)    0.5 Eligible Seasons:    - 90%

    (10)    0 Eligible Seasons:    - 97.5%

(ii)     <u>Medically diagnosed Stroke occurring prior to a Qualifying Diagnosis</u>:  - 75%

(iii)     <u>Medically diagnosed Traumatic Brain Injury occurring prior to a Qualifying Diagnosis</u>:  - 75%

(iv)     <u>Non-participation in the BAP by a Retired NFL Football Player in Subclass 1, except where the Qualifying Diagnosis is of ALS or if he receives any Qualifying Diagnosis prior to his deadline to receive a BAP baseline assessment examination as set forth in Section 5.3</u>:  - 10%

(c)     For purposes of calculating the total number of Eligible Seasons earned by a Retired NFL Football Player or deceased Retired NFL Football Player under this Settlement Agreement, each Eligible Season and each half of an Eligible Season for which the subject Retired NFL Football Player did not otherwise earn an Eligible Season, will be summed together to reach a total number of Eligible Seasons (*e.g.*, 3.5 Eligible Seasons).

(i)     For the avoidance of any doubt, seasons in the World League of American Football, the NFL Europe League, or the NFL Europa League are specifically excluded from the calculation of an Eligible Season.

(d)     If the Retired NFL Football Player receives a Qualifying Diagnosis prior to a medically diagnosed Stroke or a medically diagnosed Traumatic Brain Injury, then the 75% Offset for medically diagnosed Stroke or medically diagnosed Traumatic Brain Injury will not apply.  If the Retired NFL Football Player receives a Qualifying Diagnosis subsequent to a medically diagnosed Stroke or a medically

36

diagnosed Traumatic Brain Injury, and if the Settlement Class Member demonstrates, by clear and convincing evidence, that the Qualifying Diagnosis was not causally related to the Stroke or the Traumatic Brain Injury, then the 75% Offset will not apply.

(e)    Multiple Offsets will be applied individually and in a serial manner to any Monetary Award.  For example, if the Monetary Award before the application of Offsets is $1,000,000, and two 10% Offsets apply, there will be a 19% aggregate downward adjustment of the award (*i.e.*, application of the first Offset will reduce the award by 10%, or $100,000, to $900,000, and application of the second Offset will reduce the award by an additional 10%, or $90,000, to $810,000).

Section 6.8    <u>Supplemental Monetary Awards</u>.  If, during the term of the Monetary Award Fund, a Retired NFL Football Player who has received a Monetary Award based on a certain Qualifying Diagnosis subsequently is diagnosed with a different Qualifying Diagnosis, the Retired NFL Football Player (or his Representative Claimant, if applicable) may be entitled to a Supplemental Monetary Award.  If the Monetary Award level in the Monetary Award Grid ("Grid Level") for the subsequent Qualifying Diagnosis is greater than the Grid Level  for the earlier Qualifying Diagnosis, the Retired NFL Football Player (or his Representative Claimant, if applicable) will be entitled to a payment that is equal to the Grid Level for the subsequent Qualifying Diagnosis, after application of all applicable Offsets, minus the Grid Level for the earlier Qualifying Diagnosis, after application of all applicable Offsets, but prior to any deductions for the satisfaction of Liens.  In other words, any amounts deducted from the earlier Monetary Award to satisfy Liens will not be considered in the calculation of the Supplemental Monetary Award, which may also require an amount deducted to satisfy any subsequent Liens.  (By way of example only, a Retired NFL Football Player who receives a Monetary Award for Level 1.5 Neurocognitive Impairment that is $1,000,000 after application of all Offsets, which is then reduced by $20,000 to $980,000 to satisfy a Lien, and who later receives a Qualifying Diagnosis for Level 2 Neurocognitive Impairment that would pay $1,200,000 after application of all Offsets, where there are no additional Liens, shall be entitled to a Supplemental Monetary Award of $200,000.)

Section 6.9    <u>Inflation Adjustment</u>.  Monetary Award amounts set forth in Exhibit 3 will be subject to an annual inflation adjustment, beginning one year after the Effective Date, not to exceed two and a half percent (2.5%), the precise amount subject to the sound judgment of the Special Master (or the Court after expiration of the term of the Special Master) based on consideration of the Consumer Price Index for Urban Consumers (CPI-U).

Section 6.10    <u>Monetary Award Fund Term</u>.  The Monetary Award Fund will commence on the Effective Date and will end sixty-five (65) years after the Effective Date.

**ARTICLE VII**
**Derivative Claimant Awards**

Section 7.1    All Settlement Class Members who are Derivative Claimants seeking Derivative Claimant Awards must do so through the submission of Derivative Claim Packages containing all required proof, as set forth in Section 8.2(b).

Section 7.2    Eligibility.    A Settlement Class Member who is a Derivative Claimant is entitled to a Derivative Claimant Award if, and only if:  (a) the Derivative Claimant timely registered to participate in the Class Action Settlement, as set forth in Section 4.2; (b) the Retired NFL Football Player through whom the relationship is the basis of the claim (or the Representative Claimant of a deceased or legally incapacitated or incompetent Retired NFL Football Player through whom the relationship is the basis of the claim) has received a Monetary Award; (c) the Settlement Class Member timely submits a Derivative Claim Package, subject to the terms and conditions set forth in ARTICLE VIII; and (d) the Claims Administrator determines, based on a review of the records provided in the Derivative Claim Package and applicable state law, that the Derivative Claimant has a relationship with the subject Retired NFL Football Player that properly and legally provides the right under applicable state law to sue independently and derivatively.

Section 7.3    Determination of Derivative Claimant Awards.  Settlement Class Members who the Claims Administrator determines are entitled to Derivative Claimant Awards will be compensated from the Monetary Award of the Retired NFL Football Player through whom the relationship is the basis of the claim (or his Representative Claimant), and from any Supplemental Monetary Award, in the amount of one percent (1%) of that Monetary Award and any Supplemental Monetary Award.  If there are multiple Derivative Claimants asserting valid claims based on the same subject Retired NFL Football Player, the Claims Administrator will divide and distribute the Derivative Claimant Award among those Derivative Claimants pursuant to the laws of the domicile of the Retired NFL Football Player (or his Representative Claimant, if any).

**ARTICLE VIII**
**Submission and Review of Claim Packages**
**and Derivative Claim Packages**

Section 8.1    All Settlement Class Members applying for Monetary Awards or Derivative Claimant Awards must submit Claim Packages or Derivative Claim Packages to the Claims Administrator.

Section 8.2    Content

(a)    The content of Claim Packages will be agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and will include, without limitation:  (i) a Claim Form with the Personal Signature of the Retired NFL Football Player (or Representative Claimant) either on the Claim Form or on an acknowledgement form verifying the contents of the Claim Form; (ii) a Diagnosing Physician Certification;

38

**-1348-**

(iii) medical records reflecting the Qualifying Diagnosis; (iv) a HIPAA-compliant authorization form; and (v) records in the possession, custody or control of the Settlement Class Member demonstrating employment and participation in NFL Football.

   (i) Representative Claimants of Retired NFL Football Players who died prior to the Effective Date do not need to include a Diagnosing Physician Certification in the Claim Package if the physician who provided the Qualifying Diagnosis, as set forth in Exhibit 1, also died prior to the Effective Date or was deemed by a court of competent jurisdiction legally incapacitated or incompetent prior to the Effective Date.  Instead, the Representative Claimant must provide evidence of that physician's death, incapacity or incompetence and of the qualifications of the diagnosing physician.  For the avoidance of any doubt, all other content of Claim Packages must be submitted, including medical records reflecting the Qualifying Diagnosis.

   (ii) In cases where a Retired NFL Football Player has received a Qualifying Diagnosis and the diagnosing physician who provided the Qualifying Diagnosis, as set forth in Exhibit 1, has died or has been deemed by a court of competent jurisdiction legally incapacitated or incompetent prior to the Effective Date, or otherwise prior to completing a Diagnosing Physician Certification, the Retired NFL Football Player (or his Representative Claimant, if applicable) may obtain a Diagnosing Physician Certification from a separate qualified physician for the Qualifying Diagnosis as specified in Exhibit 1 based on an independent examination by the qualified physician and a review of the Retired NFL Football Player's  medical records that formed the basis of the Qualifying Diagnosis by the deceased or legally incapacitated or incompetent physician.  If the same Qualifying Diagnosis is found by both doctors, the date of Qualifying Diagnosis used to calculate Monetary Awards shall be the date of the earlier Qualifying Diagnosis.

   (b) The content of Derivative Claim Packages will be agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and will include, without limitation:  (i) a Derivative Claim Form with the Personal Signature of the Derivative Claimant either on the Derivative Claim Form or on an acknowledgement form verifying the contents of the Derivative Claim Form; and (ii) records sufficient to verify the relationship with the subject Retired NFL Football Player or deceased Retired NFL Football Player that properly and legally provides the Derivative Claimant the right under applicable state law to sue independently and derivatively.

   (c) All statements made in Claim Forms, Derivative Claim Forms, any acknowledgement forms, and Diagnosing Physician Certifications will be sworn statements under penalty of perjury.

   (d) Each Settlement Class Member has the obligation to submit to the Claims Administrator all of the documents required in Section 8.2 to receive a Monetary Award or Derivative Claimant Award.

<div align="center">39</div>

Section 8.3     Submission

(a)     Settlement Class Members must submit Claim Packages and Derivative Claim Packages to the Claims Administrator in accordance with Section 30.15.

(i)     Claim Packages must be submitted to the Claims Administrator no later than two (2) years after the date of the Qualifying Diagnosis or within two (2) years after the Settlement Class Supplemental Notice is posted on the Settlement Website, whichever is later.  Failure to comply with this two (2) year time limitation will preclude a Monetary Award for that Qualifying Diagnosis, unless the Settlement Class Member can show substantial hardship that extends beyond the Retired NFL Football Player's Qualifying Diagnosis and that precluded the Settlement Class Member from complying with the two (2) year deadline, and submits the Claim Package within four (4) years after the date of the Qualifying Diagnosis or after the Settlement Class Supplemental Notice is posted on the Settlement Website, whichever is later.

(ii)     Derivative Claim Packages must be submitted to the Claims Administrator no later than thirty (30) days after the Retired NFL Football Player through whom the relationship is the basis of the claim (or the Representative Claimant of a deceased or legally incapacitated or incompetent Retired NFL Football Player through whom the relationship is the basis of the claim) receives a Notice of Monetary Award Claim Determination that provides a determination that the Retired NFL Football Player (or his Representative Claimant) is entitled to a Monetary Award.  Failure to comply with this time limitation will preclude a Derivative Claimant Award based on that Monetary Award.

(b)     Each Settlement Class Member will promptly notify the Claims Administrator of any changes or updates to the information the Settlement Class Member has provided in the Claim Package or Derivative Claim Package, including any change in mailing address.

(c)     All information submitted by Settlement Class Members to the Claims Administrator will be recorded in a computerized database that will be maintained and secured in accordance with all applicable federal, state and local laws, regulations and guidelines, including, without limitation, HIPAA.  The Claims Administrator must ensure that information is recorded and used properly, that an orderly system of data management and maintenance is adopted, and that the information is retained under responsible custody.  The Claims Administrator will keep the database in a form that grants access for claims administration use, but otherwise restricts access rights, including to employees of the Claims Administrator who are not working on claims administration for the Class Action Settlement.

(i)     The Claims Administrator and Lien Resolution Administrator, and their respective agents, representatives, and professionals who are administering the Class Action Settlement, will have access to all information submitted by Settlement Class Members to the Claims Administrator and/or Lien Resolution

40

Administrator necessary to perform their responsibilities under the Settlement Agreement.

(ii)    All information submitted by Settlement Class Members to the Claims Administrator will be treated as confidential, as set forth in Section 17.2.

Section 8.4    <u>Preliminary Review</u>

(a)    Within forty-five (45) days of the date on which the Claims Administrator receives a Claim Package or Derivative Claim Package from a Settlement Class Member, the Claims Administrator will determine the sufficiency and completeness of the required contents, as set forth in Section 8.2. To the extent the volume of claims warrants, this deadline may be extended by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof).

(b)    The Claims Administrator will reject a claim submitted by a Settlement Class Member, subject to the cure provisions of Section 8.5, if the Claims Administrator has not received all required content.

Section 8.5    <u>Deficiencies and Cure</u>.  For rejected Claim Packages or Derivative Claim Packages, the Claims Administrator will send a Notice of Deficiency to the Settlement Class Member, which Notice will contain a brief explanation of the Deficiency(ies) giving rise to rejection of the Claim Package or Derivative Claim Package, and will, where necessary, request additional information and/or documentation. The Claims Administrator will make available to the Settlement Class Member through a secure online web interface any document(s) with a Deficiency needing correction or, upon request from the Settlement Class Member, will mail the Settlement Class Member a copy of such document(s). The Notice of Deficiency will be sent no later than forty-five (45) days from the date of receipt of the Claim Package or Derivative Claim Package by the Claims Administrator. To the extent the volume of claims warrants, this deadline may be extended by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof). The Notice of Deficiency will contain a recommendation for how, if possible, the Settlement Class Member can cure the Deficiency, and will provide a reasonable deadline not less than 120 days (from the date the Notice of Deficiency is sent to the Settlement Class Member) for the Settlement Class Member to submit Deficiency cure materials. Within that time period, the Settlement Class Member will have the opportunity to cure all Deficiencies and provide any requested additional information or documentation, except that the failure to submit timely a Claim Package or Derivative Claim Package in accordance with the terms of this Settlement Agreement cannot be cured other than upon a showing of substantial hardship as set forth in Section 8.3(a)(i). Any Claim Package or Derivative Claim Package that continues to suffer from a Deficiency identified on the

41

Notice of Deficiency following the submission of documentation intended to cure the Deficiency will be denied by the Claims Administrator.

Section 8.6    Verification and Investigation

(a)    Each Settlement Class Member claiming a Monetary Award or Derivative Claimant Award will authorize the Claims Administrator and/or Lien Resolution Administrator, as applicable, consistent with HIPAA and other applicable privacy laws, to verify facts and details of any aspect of the Claim Package or Derivative Claim Package and/or the existence and amounts, if any, of any Liens. The Claims Administrator or Lien Resolution Administrator, at its sole discretion, may request additional documentation, which each Settlement Class Member agrees to provide in order to claim a Monetary Award or Derivative Claimant Award.

(b)    The Claims Administrator will have the discretion to undertake or cause to be undertaken further verification and investigation, including into the nature and sufficiency of any Claim Package or Derivative Claim Package documentation, including, without limitation, as set forth in Section 10.3.

**ARTICLE IX**
**Notice of Claim Determinations, Payments, and Appeals**

Section 9.1    Monetary Award Determination. Based upon its review of the Claim Package, and the results of any investigations of the Settlement Class Member's claim, the Claims Administrator will determine whether a Settlement Class Member qualifies for a Monetary Award and the amount of any such Award. In order to decide whether a Settlement Class Member is entitled to a Monetary Award, and at what level, the Claims Administrator will determine whether the Retired NFL Football Player or deceased Retired NFL Football Player has a Qualifying Diagnosis according to the Diagnosing Physician Certification, including consideration of, without limitation, the qualifications of the diagnosing physician, or in the case of a deceased Retired NFL Football Player diagnosed by a deceased physician, as set forth in Section 8.2(a)(i), according to the supporting medical records. If the Claims Administrator determines that there is a Qualifying Diagnosis, it will determine the level of Monetary Award based on the Monetary Award Grid (attached as Exhibit 3) and a review of the Diagnosing Physician Certification for the age at the time of the Qualifying Diagnosis, and will review the Claim Package, including the Claim Form and medical records reflecting the Qualifying Diagnosis, for information relating to all other Offsets, and must apply all applicable Offsets to the Monetary Award. For the avoidance of any doubt, the Claims Administrator has no discretion to make a Monetary Award determination other than as set forth above.

(a)    Evidence of NFL Employment and Participation. To the extent that the Claims Administrator determines that the Settlement Class Member has provided in the Claim Package insufficient evidence of the Retired NFL Football Player's NFL employment and participation to substantiate the claimed Eligible Seasons, the Claims Administrator will request that the NFL Parties and Member Clubs provide any

42

employment or participation records of the Retired NFL Football Player in their reasonable possession, custody or control, which the NFL Parties and Member Clubs will provide in good faith.  The Claims Administrator will consider all of the evidence provided to it by the Retired NFL Football Player and the NFL Parties and Member Clubs in determining the appropriate number of Eligible Seasons to apply to the Retired NFL Football Player's claim.  The Claims Administrator shall credit only the Eligible Seasons substantiated by the overall evidence.  To the extent there is no objective evidence regarding an Eligible Season claimed by the Retired NFL Football Player beyond his sworn statement, the Claims Administrator will take into account the reasons offered by the Retired NFL Football Player for the lack of such objective evidence in arriving at its final decision.

(i)       The assertion of NFL employment and participation in more than one (1) Eligible Season, however, must be substantiated by the Retired NFL Football Player with objective evidence beyond his sworn statement, the sufficiency of which shall be in the Claims Administrator's discretion.  In the event there is no objective evidence of NFL employment and participation in more than one (1) Eligible Season, the Claims Administrator may credit the Retired NFL Football Player with one (1) or fewer Eligible Seasons consistent with Section 9.1(a).

(b)       Timing of Monetary Award Determination.  The Claims Administrator will make such determination and will send a corresponding Notice of Monetary Award Claim Determination to the Settlement Class Member and the NFL Parties no later than sixty (60) days from the later of:  (i) the date when a completed Claim Package that is free from all Deficiencies is received by the Claims Administrator; (ii) the date, if any, when all Deficiencies with a Settlement Class Member's Claim Package have been deemed cured by the Claims Administrator; (iii) the date, if any, on which the additional information or documentation identified in the Notice of Deficiency, if applicable, has been timely provided to the Claims Administrator; (iv) the date of a decision by a member of the Appeals Advisory Panel under Section 8.6(b); or (v) the date on which the Settlement Class Member no longer has the right to cure such Deficiencies or provide additional information or documentation, in accordance with Section 8.5; provided, however, that to the extent the volume of claims warrants, these deadlines may be extended by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof).

(c)       Notice Content

(i)       Notices of Monetary Award Claim Determination that provide an adverse determination will include a short statement regarding the reasons for the adverse determination and information regarding how the Settlement Class Member can appeal the determination, as set forth in Section 9.7.  An adverse Notice of Monetary Award Claim Determination does not preclude a Settlement Class Member from submitting a Claim Package in the future for a Monetary Award should the Retired NFL Football Player's medical condition change.  The Claims Administrator shall develop reasonable procedures and rules to ensure the right of Settlement Class Members

43

to submit a Claim Package for the same or different Qualifying Diagnoses in the future, while preventing unwarranted repetitive claims that do not disclose materially changed circumstances from prior claims made by the Settlement Class Member.

(ii)    Notices of Monetary Award Claim Determination that provide a determination that the Settlement Class Member is entitled to a Monetary Award will provide:  (a) the net amount of that Monetary Award after application of Offsets; (b) a listing of the Offsets applied to that Monetary Award; (c) the Lien Resolution Administrator's determination of any amount deducted from the Monetary Award to satisfy identified Liens, as set forth in ARTICLE XI; or the Lien Resolution Administrator's determination of the "holdback" amount to be deducted from the Monetary Award under which identified Liens shall be resolved, as set forth in ARTICLE XI; (d) information regarding how the Settlement Class Member can appeal the Monetary Award determination, as set forth in Section 9.7; and (e) information regarding the timing of payment, as set forth in Section 9.3.

(d)    NFL Parties' and Co-Lead Class Counsel's Review of Claim Packages.  If a Notice of Monetary Award Determination provides a determination that the Settlement Class Member is entitled to a Monetary Award, the Claims Administrator will make the Settlement Class Member's Claim Package and the review determinations available to the NFL Parties and Co-Lead Class Counsel.

Section 9.2    Derivative Claimant Award Determination.  Based upon its review of the Derivative Claim Package, and the results of any investigations of the Derivative Claimant's claim, the Claims Administrator will determine whether a Derivative Claimant qualifies for a Derivative Claimant Award, as set forth in Section 7.3.

(a)    Timing of Derivative Claimant Award Determination.  The Claims Administrator will make such determination and will send a corresponding Notice of Derivative Claimant Award Determination to the Settlement Class Member and the NFL Parties no later than thirty (30) days from the later of:  (i) the date when a completed Derivative Claim Package that is free from all Deficiencies is received by the Claims Administrator; (ii) the date when all Deficiencies with a Settlement Class Member's Derivative Claim Package have been determined by the Claims Administrator to be satisfactorily cured; (iii) the date, if any, on which the additional information or documentation identified in the Notice of Deficiency, if applicable, has been timely provided to the Claims Administrator; or (iv) the date on which the Settlement Class Member no longer has the right to cure such Deficiencies or provide additional information or documentation, in accordance with Section 8.5; provided, however, that to the extent the volume of claims warrants, these deadlines may be extended by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof).

44

(b)      Notice Content

(i)      Notices of Derivative Claimant Award Determination that provide an adverse determination will include a short statement regarding the reasons for the adverse determination and information regarding how the Settlement Class Member can appeal the determination, as set forth in Section 9.7.  An adverse Notice of Derivative Claimant Award Determination does not preclude a Derivative Claimant from submitting a Derivative Claim Package in the future for a Derivative Claimant Award should the Retired NFL Football Player receive a Supplemental Monetary Award or succeed on an appeal of a previously denied claim for a Monetary Award.

(ii)      Notices of Derivative Claimant Award Determination that provide a determination that the Settlement Class Member is entitled to a Derivative Claimant Award will provide:  (a) the amount of that Derivative Claimant Award; (b) the Lien Resolution Administrator's determination of any amount deducted from the Derivative Claimant Award to satisfy identified Liens, as set forth in ARTICLE XI; or the Lien Resolution Administrator's determination of the "holdback" amount to be deducted from the Derivative Claimant Award under which identified Liens will be resolved, as set forth in ARTICLE XI; (c) information regarding how the Derivative Claimant can appeal the Derivative Claimant Award determination, as set forth in Section 9.7; and (d) information regarding the timing of payment, as set forth in Section 9.4.

(c)      NFL Parties' and Co-Lead Class Counsel's Review of Derivative Claim Packages.  If a Notice of Derivative Claimant Award Determination provides a determination that the Settlement Class Member is entitled to a Derivative Claimant Award, the Claims Administrator will make the Settlement Class Member's Claim Package and the review determinations available to the NFL Parties and Co-Lead Class Counsel.

Section 9.3      Remuneration and Payment of Monetary Awards.

(a)      The Claims Administrator will promptly pay any Monetary Awards to Settlement Class Members who qualify under the terms of the Monetary Award Grid and all applicable Offsets after the Claims Administrator sends a Notice of Monetary Award Claim Determination; provided, however, any such payment will not occur until after the completion of the processes for (i) appealing Monetary Award determinations, as set forth in Section 9.7; (ii) auditing claims and investigating claims for fraud, as set forth in Section 10.3; (iii) identifying and satisfying Liens, as set forth in ARTICLE XI; and (iv) determining if any Derivative Claimants have filed timely, and are entitled to, Derivative Claimant Awards based on their relationship with the subject Retired NFL Football Player.  Such payment shall be made consistent with Section 23.3(b)(iv) of this Settlement Agreement.

(b)      In connection with a Monetary Award issued to a Representative Claimant, the Claims Administrator will abide by all substantive laws of the domicile of such Representative Claimant concerning distribution and will not issue

45

payment until the Claims Administrator has received from the Settlement Class Member proof of such court approvals or other documents necessary to authorize payment. Where short form procedures exist concerning such distribution that do not require domiciliary court approval or supervision, the Claims Administrator is authorized to adopt those procedures as part of the claims administration process applicable to such Representative Claimant. The Claims Administrator also is authorized to adopt procedures as are approved by the Court to aid or facilitate in the payment of claims to minor, incapacitated or incompetent Settlement Class Members or their guardians.

(c)    Upon the completion of the Monetary Award Fund term, as set forth in Section 6.10, the Court shall determine the proper disposition of any funds remaining in the Monetary Award Fund consistent with the purpose of this Settlement, including to promote safety and injury prevention with respect to football players and/or the treatment or prevention of traumatic brain injuries.

Section 9.4    Remuneration and Payment of Derivative Claimant Awards

(a)    The Claims Administrator will promptly pay any Derivative Claimant Awards to Settlement Class Members who qualify; provided, however, any such payment will not occur until after expiration or completion of: (i) the time period for Derivative Claimants to file Derivative Claim Packages, as set forth in Section 8.3(a)(ii), has expired; (ii) the process for appealing Derivative Claimant Awards, including appeals by any other Derivative Claimants asserting claims based on the same Retired NFL Football Player, as set forth in Section 9.7; (iii) the process for auditing claims and investigating claims for fraud, set forth in Section 10.3; and (iv) the process for identifying and satisfying Liens, as set forth in ARTICLE XI. Such payment shall be made consistent with Section 23.3(b)(iv) of this Settlement Agreement.

(b)    In paying a Derivative Claimant Award to a minor, the Claims Administrator will abide by all substantive laws of the domicile of such Settlement Class Member concerning distribution and will not issue payment until the Claims Administrator has received from the Settlement Class Member proof of such court approvals or other documents necessary to authorize payment. Where short form procedures exist concerning such distribution that do not require domiciliary court approval or supervision, the Claims Administrator is authorized to adopt those procedures as part of the claims administration process applicable to such Settlement Class Members. The Claims Administrator also is authorized to adopt procedures as are approved by the Court to aid or facilitate in the payment of claims to minor, incapacitated or incompetent Settlement Class Members or their guardians.

Section 9.5    Scope of Appeals. The Claims Administrator's determination as to whether a Settlement Class Member is entitled to a Monetary Award or Derivative Claimant Award under this Settlement Agreement, and/or the calculation of the Monetary Award or Derivative Claimant Award, is appealable by the Settlement Class Member, Co-Lead Class Counsel, or the NFL Parties based on their respective good faith belief that the determination by the Claims Administrator was incorrect.

Section 9.6     <u>Appellant Fees and Limitations</u>

(a)     Any Settlement Class Member taking an appeal will be charged a fee of One Thousand United States dollars (U.S. $1,000) by the Claims Administrator that must be paid before the appeal may proceed, which fee will be refunded if the Settlement Class Member's appeal is successful.   If the appeal is unsuccessful, the fee will be paid to the Settlement Trust for transfer by the Trustee into the Monetary Award Fund.

(b)     The NFL Parties may appeal Monetary Award or Derivative Claimant Award determinations in good faith.   To the extent that Co-Lead Class Counsel believe that the NFL Parties are submitting vexatious, frivolous or bad faith appeals, Co-Lead Class Counsel may petition the Court for appropriate relief.

Section 9.7     <u>Submissions on Appeals</u>

(a)     The appellant must submit to the Court his or her notice of appeal, using an Appeals Form to be agreed upon by Co-Lead Class Counsel and the NFL Parties and provided by the Claims Administrator, with written copy to the appellee(s) Settlement Class Member or the NFL Parties (as applicable), Co-Lead Class Counsel, and to the Claims Administrator, no later than thirty (30) days after receipt of a Notice of Monetary Award Claim Determination or Notice of Derivative Claimant Award Determination.   Appellants must present evidence in support of their appeal, and any written statements may not exceed five (5) single-spaced pages in length.

(b)     The appellee(s) may submit a written opposition to the appeal no later than thirty (30) days after receipt of the Appeals Form.   This written opposition must not exceed five (5) single-spaced pages in length.   The Court will not deem the lack of an opposition to be an admission regarding the merits of the appeal. The appellant may not submit a reply.

(c)     Co-Lead Class Counsel may submit a written statement in support of or opposition to the appeal no later than fifteen (15) days after receipt of the Appeals Form or an appellee's written opposition.   This written statement must not exceed five (5) single-spaced pages in length.   The Court will not deem the lack of a statement to be an admission regarding the merits of the appeal.   The appellant and appellee(s) may each submit a reply.

Section 9.8     <u>Review and Decision</u>.   The Court will make a determination based upon a showing by the appellant of clear and convincing evidence. The Court may be assisted, in its discretion, by any member of the Appeals Advisory Panel and/or an Appeals Advisory Panel Consultant.   The decision of the Court will be final and binding.

(a)    Appeals Advisory Panel and Appeals Advisory Panel Consultants

(i)    Within ninety (90) days after the Effective Date, Co-Lead Class Counsel and Counsel for the NFL Parties will agree to, and jointly recommend to the Court for appointment, the members of the Appeals Advisory Panel and the Appeals Advisory Panel Consultants.  Under no circumstances may a member of the Appeals Advisory Panel or an Appeals Advisory Panel Consultant have been convicted of a crime of dishonesty, or serve, on or after the Final Approval Date, as a litigation expert consultant or expert witness in connection with litigation relating to the subject matter of the Class Action Complaint for a party, a Member Club, or an Opt Out, or his, her or its counsel.  If selected and approved, under no circumstances shall an Appeals Advisory Panel member or Appeals Advisory Panel Consultant continue to serve in that role if convicted of a crime of dishonesty and/or thereafter retained as an expert consultant or expert witness in connection with litigation relating to the subject matter of the Class Action Complaint by a party, a Member Club, or an Opt Out, or his, her or its counsel.

(ii)    Co-Lead Class Counsel and Counsel for the NFL Parties will jointly retain the members of the Appeals Advisory Panel and the Appeals Advisory Panel Consultants appointed by the Court.

(iii)    Upon request of the Court or the Special Master, the Appeals Advisory Panel will take all steps necessary to provide sound advice with respect to medical aspects of the Class Action Settlement.

(iv)    The Court will oversee the Appeals Advisory Panel and the Appeals Advisory Panel Consultants, and may, in its discretion, request reports or information from the Appeals Advisory Panel or the Appeals Advisory Panel Consultants.

(v)    Compensation of the Appeals Advisory Panel and Appeals Advisory Panel Consultants, at a reasonable rate for their time agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, will be paid out of the Monetary Award Fund, except that compensation of an Appeals Advisory Panel member or Appeals Advisory Panel Consultant will be paid out of the BAP fund for reviewing and advising the Court whether a Retired NFL Football player has Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, or none, in cases where there are conflicting diagnoses by Qualified BAP Providers.

(vi)    Members of the Appeals Advisory Panel or the Appeals Advisory Panel Consultants may be replaced by joint motion made by Co-Lead Class Counsel and Counsel for the NFL Parties, or for cause by motion of either Co-Lead Class Counsel or Counsel for the NFL Parties, upon order of the Court.  If any member of the Appeals Advisory Panel or an Appeals Advisory Panel Consultant resigns, dies, is replaced, or is otherwise unable to continue in his or her position, Co-Lead Class Counsel

48

and Counsel for the NFL Parties will agree to and jointly recommend a new proposed member for appointment by the Court.

(b)    <u>Conflicts of Interest</u>.    Within ninety (90) days after the Effective Date, Co-Lead Class Counsel, Counsel for the NFL Parties, and the Special Master will establish and implement procedures to promptly detect and resolve possible conflicts of interest between members of the Appeals Advisory Panel or Appeals Advisory Panel Consultants, on the one hand, and an appellant or appellee(s), on the other hand.  Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval of the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) may modify such procedures in the future, if appropriate.  For the avoidance of any doubt, employment of the Special Master by any Party as an expert in unrelated matters will not constitute a conflict of interest.

(c)    <u>Liability</u>.  The Parties, Class Counsel, Counsel for the NFL Parties, and the Special Master, and their respective Affiliates, will not be liable for any act, or failure to act, of a member of the Appeals Advisory Panel or an Appeals Advisory Panel Consultant.

**ARTICLE X**
**Class Action Settlement Administration**

Section 10.1    <u>Special Master</u>

(a)    <u>Appointment and Oversight</u>

(i)    The Motion for Preliminary Approval of the Class Action Settlement filed by Class Counsel   will request that the Court appoint, in consultation with Co-Lead Class Counsel and Counsel for the NFL Parties, a Special Master pursuant to Federal Rule of Civil Procedure 53.

(ii)    It is the intention of the Parties that the Special Master will perform his or her responsibilities and take all steps necessary to faithfully oversee the implementation and administration of the Settlement Agreement.  The Special Master shall be appointed for a term of five (5) years commencing on the Effective Date.  The term of the Special Master shall be extended, or a new Special Master shall be appointed, for additional five-year terms for the life of the Settlement Agreement, unless the Court determines, in consultation with Co-lead Class Counsel and Counsel for the NFL Parties, that the Special Master's role is no longer necessary.

(iii)    The Special Master will maintain at all times appropriate and sufficient bonding insurance in connection with his or her performance of responsibilities under the Settlement Agreement.  The cost for this insurance will be paid out of the Monetary Award Fund.

(iv)    The Court may, at its sole discretion, request reports or information from the Special Master.  The Special Master will be responsible for reporting and providing information to the Court at such frequency and in such a manner

49

as the Court directs.  The Claims Administrator may assist with such reports if requested by the Special Master.

(v)     Following the five (5) year term of the Special Master, and any extension(s) thereof, oversight of the administration of the Class Action Settlement will revert to the Court.

(b)     Roles and Responsibilities

(i)     The Special Master will, among other responsibilities set forth in this Settlement Agreement:

(1)     Provide reports or information that the Court may, at its sole discretion, request from the Special Master, who will be responsible for reporting and providing information to the Court at such frequency and in such a manner as the Court directs;

(2)     Oversee complaints raised by Co-Lead Class Counsel, Counsel for the NFL Parties, the BAP Administrator, Claims Administrator and/or the Lien Resolution Administrator regarding aspects of the Class Action Settlement;

(3)     Hear appeals of registration determinations, if requested by the Court, as set forth in Section 4.3(a)(iv);

(4)     Oversee the BAP Administrator, Claims Administrator and Lien Resolution Administrator, as set forth in Section 5.6(a)(iv), Section 10.2(a)(iv), and Section 11.1(a)(iv), and receive monthly and annual reports from those Administrators; and

(5)     Oversee fraud detection and prevention procedures, and review and decide the appropriate disposition of potentially fraudulent claims as further specified in Section 10.3(i).

(c)     Compensation and Expenses.  Annual compensation of the Special Master will not exceed Two Hundred Thousand United States dollars (U.S. $200,000).  The annual compensation and reasonable out-of-pocket costs and expenses of the Special Master directly incurred as a result of the performance of his or her responsibilities will be paid out of the Monetary Award Fund.  Either Co-Lead Class Counsel or Counsel for the NFL Parties may challenge the reasonableness of the Special Master's out-of-pocket costs and expenses, in which case the Court will determine the reasonableness of such costs and expenses.  If the Court determines that any costs and expenses are unreasonable, the Special Master will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the Special Master will refund that amount to the Monetary Award Fund.

(d)     Replacement.  The Court, in its discretion, can replace the Special Master for good cause.  If the Special Master resigns, dies, or is otherwise unable

50

to continue employment in this position, Co-Lead Class Counsel and Counsel for the NFL Parties may file a motion for the appointment by the Court of a new Special Master.

(e)    Conflicts of Interest.  Within ninety (90) days after the Effective Date, Co-Lead Class Counsel, Counsel for the NFL Parties, and the Special Master will establish and implement procedures to promptly detect and resolve possible conflicts of interest between the Special Master, on the one hand, and Settlement Class Members (and counsel individually representing them, if any), Class Counsel, the NFL Parties, Counsel for the NFL Parties, the BAP Administrator, the Claims Administrator, or the Lien Resolution Administrator, on the other hand.  Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval of the Court, may modify such procedures in the future, if appropriate.  For the avoidance of any doubt, employment of the Special Master by any Party as an expert in unrelated matters will not constitute a conflict of interest.

Section 10.2    Claims Administrator

(a)    Appointment and Oversight

(i)    The Motion for Preliminary Approval of the Class Action Settlement filed by Class Counsel will request that the Court appoint BrownGreer PLC as Claims Administrator.  Within ten (10) days after the Effective Date, Co-Lead Class Counsel will retain the Claims Administrator appointed by the Court.

(ii)    Co-Lead Class Counsel's retention agreement with the Claims Administrator will provide that the Claims Administrator will perform its responsibilities and take all steps necessary to faithfully implement and administer the Settlement Agreement, and will require that the Claims Administrator maintain at all times appropriate and sufficient bonding insurance in connection with its performance of its responsibilities under the Settlement Agreement.

(iii)    The Court may, at its sole discretion, request reports or information from the Claims Administrator.  The Claims Administrator will be responsible for reporting and providing information to the Court at such frequency and in such a manner as the Court directs.

(iv)    The Special Master, for the duration of his or her term, will oversee the Claims Administrator, and may, at his or her sole discretion, request reports or information from the Claims Administrator.

(v)    Beyond the reporting requirements set forth in Section 10.2(a)(iii)-(iv), beginning one month after the Effective Date, the Claims Administrator will issue a regular monthly report to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel, and Counsel for the NFL Parties during the first three years of the Monetary Award Fund, and thereafter on a quarterly basis or as reasonably agreed upon by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel and the NFL Parties, regarding the status

51

and progress of claims administration.  The monthly (or quarterly) report will include, without limitation:  (a) the monthly and total number of Settlement Class Members who registered timely, and the biographical information for each Settlement Class Member who registered timely in the preceding month, as set forth in Section 4.2(c); (b) the identity of each Settlement Class Member who submitted a Claim Package or Derivative Claim Package in the preceding month, the review status of such package (*e.g*, under preliminary review, subject to a Notice of Deficiency, subject to verification and investigation, received a Notice of Claim Determination), and the monthly and total number of Settlement Class Member claims for Monetary Awards and Derivative Claimant Awards; (c) the monthly and total number of Monetary Awards and Derivative Claimant Awards paid; (d) the monthly and total number of each Qualifying Diagnosis for which a Monetary Award has been paid; (e) the monthly and total number of Settlement Class Members for whom appeals are pending regarding Monetary Awards and Derivative Claimant Awards; (f) the monthly identification/breakdown of physicians diagnosing Qualifying Diagnoses and/or law firms representing Settlement Class Members who submitted claims for Monetary Awards and Derivative Claimant Awards; (g) the monthly expenses/administrative costs, including a summary accounting of the administrative expenses incurred by the Claims Administrator; and (h) any other information requested by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel, or Counsel for the NFL Parties.

(vi)    Beginning on the first January after the Effective Date, the Claims Administrator will provide annual financial reports to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel and Counsel for the NFL Parties, based on information from the preceding year, regarding:  (a) the number of Settlement Class Members, broken down by Qualifying Diagnosis, who received Monetary Awards, and the corresponding number of Settlement Class Members who sought but were found by the Claims Administrator or the Court not to qualify for Monetary Awards; (b) the number of Settlement Class Members who received Derivative Claimant Awards, and the corresponding number of Settlement Class Members who sought but were found by the Claims Administrator or the Court not to qualify for Derivative Claimant Awards;  (c) the monetary amounts paid through Monetary Awards and Derivative Claimant Awards, including the monetary amounts over the term of the Class Action Settlement; (d) the number of Settlement Class Members for whom appeals are pending regarding Monetary Awards and Derivative Claimant Awards; (e) the identification/breakdown of physicians diagnosing Qualifying Diagnoses and/or law firms representing Settlement Class Members who submitted claims for Monetary Awards and Derivative Claimant Awards; (f) expenses/administrative costs, including a summary accounting of the administrative expenses incurred by the Claims Administrator; (g) the projected expenses/administrative costs for the remainder of the Monetary Award Fund term; (h) the monies remaining in the Monetary Award Fund; and (i) any other information requested by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel, or Counsel for the NFL Parties.

(vii)    The NFL Parties may elect, at their own expense, to cause an audit to be performed by a certified public accountant of the financial records of the Claims Administrator, and the Claims Administrator shall cooperate in good faith with the audit.  Audits may be conducted at any time during the term of the Monetary Award Fund.  Complete copies of the audit findings report will be provided to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel, and Counsel for the NFL Parties.

(b)    <u>Roles and Responsibilities</u>

(i)    The Claims Administrator will, among other responsibilities set forth in this Settlement Agreement:

(1)    Maintain the Settlement Website, as set forth in Section 4.1(a);

(2)    Maintain an automated telephone system to provide information about the Class Action Settlement, as set forth in Section 4.1(b);

(3)    Establish and administer both online and hard copy registration methods, as set forth in Section 4.2(a);

(4)    Review a purported Settlement Class Member's registration and determine its validity, as set forth in Section 4.3;

(5)    Process and review Claim Packages and Derivative Claim Packages, as set forth in ARTICLE VIII;

(6)    Determine whether Settlement Class Members who submit Claim Packages and Derivative Claim Packages are entitled to Monetary Awards or Derivative Claimant Awards, as set forth in ARTICLE VI and ARTICLE VII;

(7)    Audit Claim Packages and Derivative Claim Packages, and establish and implement procedures to detect and prevent fraudulent submissions to, and payments of fraudulent claims from, the Monetary Award Fund, as set forth in Section 10.3; and

(8)    Perform such other tasks reasonably necessary to accomplish the goals contemplated by this Settlement Agreement, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties.

(c)    <u>Compensation and Expenses</u>.  Reasonable compensation of the Claims Administrator, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and reasonable out-of-pocket costs and expenses directly incurred as a result of the Claims Administrator's responsibilities set forth in this Settlement Agreement will be paid out of the Monetary Award Fund.  The Claims Administrator shall submit an annual budget to the Court for review and approval.  Either Co-Lead Class Counsel or

53

Counsel for the NFL Parties may challenge the reasonableness of the Claims Administrator's out-of-pocket costs and expenses, in which case the Court will determine (or may, in its discretion, refer the challenge to the Special Master to determine) the reasonableness of such costs and expenses. If the Court or Special Master, as applicable, determines that any costs and expenses are unreasonable, the Claims Administrator will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the Claims Administrator will refund that amount to the Monetary Award Fund.

(d)      Liability.  The Parties, Class Counsel, Counsel for the NFL Parties, and the Special Master, and their respective Affiliates, will not be liable for any act, or failure to act, of the Claims Administrator.

(e)      Replacement.  The Claims Administrator may be replaced by joint motion made by Co-Lead Class Counsel and Counsel for the NFL Parties, or for cause by motion of either Co-Lead Class Counsel or Counsel for the NFL Parties, upon order of the Court. If the Claims Administrator resigns, dies, is replaced, or is otherwise unable to continue employment in this position, Co-Lead Class Counsel and Counsel for the NFL Parties will jointly recommend a new proposed Claims Administrator for appointment by the Court.

(f)      Conflicts of Interest.  Within ninety (90) days after the Effective Date, Co-Lead Class Counsel, Counsel for the NFL Parties, the Special Master and the Claims Administrator will establish and implement procedures to promptly detect and resolve possible conflicts of interest between the Claims Administrator, including, without limitation, its executive leadership team and all employees working on the Class Action Settlement, on the one hand, and Settlement Class Members and their counsel (if any), the NFL Parties, Counsel for the NFL Parties, or the Special Master, on the other hand.    Co-Lead Class Counsel, Counsel for the NFL Parties, and the Claims Administrator, subject to approval of the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), may modify such procedures in the future, if appropriate. Notwithstanding anything herein to the contrary, Co-Lead Class Counsel, Counsel for the NFL Parties, and the Special Master understand that the Claims Administrator regularly provides settlement claims administration and other related services to settling parties and their attorneys, and the Special Master, Co-Lead Class Counsel, and Counsel for the NFL Parties acknowledge and agree that it shall not be a conflict of interest for the Claims Administrator to provide such services to such individuals or to receive compensation for such work.

Section 10.3   Audit Rights and Detection and Prevention of Fraud

(a)      Co-Lead Class Counsel and the NFL Parties each will have the absolute right and discretion, at any time, but at their sole expense, in good faith to conduct, or have conducted by an independent auditor, audits to verify Monetary Award and Derivative Claimant Award claims submitted by Settlement Class Members.

(b)      In addition, Co-Lead Class Counsel, Counsel for the NFL Parties, and the Claims Administrator will establish and implement procedures to detect

54

and prevent fraudulent submissions to, and payments of fraudulent claims from, the Monetary Award Fund. Among other fraud detection and prevention procedures, the Claims Administrator, with the approval of Co-Lead Class Counsel and Counsel for the NFL Parties, will institute the following procedures relating to claim audits:

(i)     A Settlement Class Member whose claim has been selected for audit by the Claims Administrator, Co-Lead Class Counsel or Counsel for the NFL Parties may be required to submit additional records, including medical records, and information as requested by the auditing party; and

(ii)    A Settlement Class Member who refuses to cooperate with an audit, including by unreasonably failing or refusing to provide the auditing party with all records and information sought within the time frame specified, will have the claim denied by the Claims Administrator, without right to an appeal.

(c)     On a monthly basis, the Claims Administrator will audit ten percent (10%) of the total Claim Packages and Derivative Claim Packages that the Claims Administrator has found to qualify for Monetary Awards or Derivative Claimant Awards during the preceding month. The Claims Administrator will select such Claim Packages and Derivative Claim Packages for auditing on a random basis or to address a specific concern raised by a Claim Package or Derivative Claim Package, but will audit at least one Claim Package, if any qualify, each month.

(d)     In addition, the Claims Administrator will audit Claim Packages that: (i) seek a Monetary Award for a given Qualifying Diagnosis when the Retired NFL Football Player took part in the BAP within the prior 365 days and was not diagnosed with that Qualifying Diagnosis during the BAP baseline assessment examination; (ii) seek a Monetary Award for a given Qualifying Diagnosis when the Retired NFL Football Player submitted a different Claim Package within the prior 365 days based upon a diagnosis of that same Qualifying Diagnosis by a different physician, and that Claim Package was found not to qualify for a Monetary Award; and (iii) reflect a Qualifying Diagnosis made through a medical examination conducted at a location other than a standard treatment or diagnosis setting (*e.g.*, hotel rooms).

(e)     Upon selection of a Settlement Class Member's Claim Package for audit, the Claims Administrator will notify Co-Lead Class Counsel, the Settlement Class Member (and his/her individual counsel, if applicable), and Counsel for the NFL Parties of the selection and will require that, within ninety (90) days, or such other time as is necessary and reasonable under the circumstances, the audited Settlement Class Member submit to the Claims Administrator, to the extent not already provided, such information as may be necessary and appropriate to audit the Claim Package, which may include the following records and information:

(i)     All of the Retired NFL Football Player's medical records in the Settlement Class Member's possession, custody, or control that relate to the underlying medical condition that is the basis for the Qualifying Diagnosis claimed by the Settlement Class Member;

(ii)    A list of all health care providers seen by the Retired NFL Football Player in the last five (5) years;

(iii)    The Settlement Class Member's (or subject Retired NFL Football Player's) employment records from Member Clubs or other NFL Football employers, but only to the extent that the Settlement Class Member is authorized under applicable state law or Collective Bargaining Agreement to request and receive such records from the Member Club or other NFL Football employer;

(iv)    Such other relevant documents or information within the Settlement Class Member's possession, custody, or control as may reasonably be requested by the Claims Administrator under the circumstances, including, if necessary, authorizations to obtain the medical records of the Settlement Class Member (or subject Retired NFL Football Player) created or obtained by any health care providers seen by the Settlement Class Member (or subject Retired NFL Football Player) in the last five (5) years; and

(v)    Where the audit is conducted because of the circumstances set forth in Section 10.3(d), authorizations to obtain the medical records of the Settlement Class Member (or subject Retired NFL Football Player) held by the primary care physician of the Retired NFL Football Player and the medical records of all other physicians or neuropsychologists who have examined the Retired NFL Football Player relating to the Qualifying Diagnosis.

(f)    Upon selection of a Settlement Class Member's Derivative Claim Package for audit, the Claims Administrator will notify Co-Lead Class Counsel, the Settlement Class Member (and his/her individual counsel, if applicable), and Counsel for the NFL Parties of the selection and will require that, within ninety (90) days, or such other time as is necessary and reasonable under the circumstances, the audited Settlement Class Member submit to the Claims Administrator, to the extent not already provided, such information as may be necessary and appropriate to audit the Claim Package, which may include relevant documents or information within the Settlement Class Member's possession, custody, or control as may reasonably be requested by the Claims Administrator under the circumstances.

(g)    When auditing a Settlement Class Member's claim for a Monetary Award or Derivative Claimant Award, the Claims Administrator will review the records and information relating to that claim and determine whether the Claim Form or Derivative Claim Form misrepresents, omits, and/or conceals material facts that affect the claim.

(h)    If, upon completion of an audit, the Claims Administrator determines that there has not been a misrepresentation, omission, or concealment of a material fact made in connection with the claim, the process of issuing a Monetary Award or Derivative Claimant Award, subject to appeal, will proceed.

56

-1366-

(i)     If, upon completion of an audit, the Claims Administrator determines that there has been a misrepresentation, omission, or concealment of a material fact made in connection with the claim, the Claims Administrator will notify the Settlement Class Member and will refer the claim to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) for review and findings.  The Special Master's review and findings shall take into account whether the misrepresentation, omission or concealment was intentional, and may include the following relief, without limitation:  (a) denial of the claim in the event of fraud; (b) additional audits of claims from the same law firm or physician (if applicable), including those already paid; (c) referral of the attorney or physician (if applicable) to the appropriate disciplinary boards; (d) referral to federal authorities; (e) disqualification of the attorney, physician and/or Settlement Class Member from further participation in the Class Action Settlement; and/or (f) if a law firm is found by the Claims Administrator to have submitted more than one fraudulent submission on behalf of Settlement Class Members, claim submissions by that law firm will no longer be accepted, and attorneys' fees paid to the firm by the Settlement Class Member will be forfeited and paid to the Settlement Trust for transfer by the Trustee into the Monetary Award Fund.

(j)     In addition, if the Claims Administrator at any time makes a finding (based on its own detection processes or from information received from Co-Lead Class Counsel or Counsel for the NFL Parties) of fraud by a Settlement Class Member submitting a claim for a Monetary Award or Derivative Claimant Award, and/or by the physician providing the Qualifying Diagnosis, including, without limitation, misrepresentations, omissions, or concealment of material facts relating to the claim, the Claims Administrator will notify the Settlement Class Member and will make a recommendation to Co-Lead Class Counsel and Counsel for the NFL Parties to refer the claim to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) for review and findings that may include, without limitation, those set forth in Section 10.3(i).

(i)     If both Co-Lead Class Counsel and Counsel for the NFL Parties do not agree with the Claims Administrator's recommendation to refer a claim to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), they will notify the Claims Administrator, who will continue with the processing of the claim.

Section 10.4   The Claims Administrator, in consultation with Co-Lead Class Counsel and Counsel for the NFL Parties, will also establish system-wide processes to detect and prevent fraud, including, without limitation, claims processing quality training and review and data analytics to spot "red flags" of fraud, including, without limitation, alteration of documents, questionable signatures, duplicative documents submitted on claims, the number of claims from similar addresses or supported by the same physician or office of physicians, data metrics indicating patterns of fraudulent submissions, and such other attributes of claim submissions that create a reasonable suspicion of fraud.

# ARTICLE XI
## Identification and Satisfaction of Liens

Section 11.1    Lien Resolution Administrator

(a)    Appointment and Oversight

(i)    The Motion for Preliminary Approval of the Class Action Settlement filed by Class Counsel,  will request that the Court appoint Garretson Group as Lien Resolution Administrator.  Within ten (10) days after the Effective Date, Co-Lead Class Counsel will retain the Lien Resolution Administrator appointed by the Court.

(ii)    Co-Lead Class Counsel's retention agreement with the Lien Resolution Administrator will provide that the Lien Resolution Administrator will perform its responsibilities and take all steps necessary to faithfully implement and administer the Lien-related provisions of the Settlement Agreement, and will require that the Lien Resolution Administrator maintain at all times appropriate and sufficient bonding insurance in connection with its performance of its responsibilities under the Settlement Agreement.

(iii)    The Court may, at its sole discretion, request reports or information from the Lien Resolution Administrator.   The Lien Resolution Administrator will be responsible for reporting and providing information to the Court at such frequency and in such a manner as the Court directs.

(iv)    The Special Master, for the duration of his or her term, will oversee the Lien Resolution Administrator, and may, at his or her sole discretion, request reports or information from the Lien Resolution Administrator.

(b)    Roles and Responsibilities.    The Lien Resolution Administrator will, among other responsibilities set forth in this Settlement Agreement, administer the process for the identification and satisfaction of all applicable Liens, as set forth in Section 11.3.  Each Settlement Class Member (and his or her respective counsel, if applicable) claiming a Monetary Award or Derivative Claimant Award, however, will be solely responsible for the satisfaction and discharge of all Liens.

(c)    Compensation and Expenses.  Reasonable compensation of the Lien Resolution Administrator, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and reasonable out-of-pocket costs and expenses directly incurred as a result of the Lien Resolution Administrator's responsibilities will be paid out of the Monetary Award Fund, unless otherwise specified herein.   The Lien Resolution Administrator shall submit an annual budget to the Court for review and approval.  Either Co-Lead Class Counsel or Counsel for the NFL Parties may challenge the reasonableness of the Lien Resolution Administrator's out-of-pocket costs and expenses, in which case the Court will determine (or may, in its discretion, refer the challenge to the Special Master to determine) the reasonableness of such costs and expenses.  If the Court or Special Master, as applicable, determines that any costs and expenses are unreasonable,

58

the Lien Resolution Administrator will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the Lien Resolution Administrator will refund that amount to the Monetary Award Fund.

(d) _Liability_. The Parties, Class Counsel, Counsel for the NFL Parties, and the Special Master, and their respective Affiliates, will not be liable for any act, or failure to act, of the Lien Resolution Administrator.

(e) _Replacement_. The Lien Resolution Administrator may be replaced by joint motion made by Co-Lead Class Counsel and Counsel for the NFL Parties, or for cause by motion of either Co-Lead Class Counsel or Counsel for the NFL Parties, upon order of the Court. If the Lien Resolution Administrator resigns, dies, is replaced, or is otherwise unable to continue employment in this position, Co-Lead Class Counsel and Counsel for the NFL Parties will agree to and jointly recommend a new proposed Lien Resolution Administrator for appointment by the Court.

Section 11.2 _Conflicts of Interest_. Within ninety (90) days after the Effective Date, Co-Lead Class Counsel, Counsel for the NFL Parties, the Special Master and the Lien Resolution Administrator will establish and implement procedures to promptly detect and resolve possible conflicts of interest between the Lien Resolution Administrator, including, without limitation, its executive leadership team and all employees working on the Class Action Settlement, on the one hand, and Settlement Class Members (and counsel individually representing them, if any), the NFL Parties, Counsel for the NFL Parties, or the Special Master, on the other hand. Co-Lead Class Counsel, Counsel for the NFL Parties, and the Lien Resolution Administrator, subject to approval of the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), may modify such procedures in the future, if appropriate. Notwithstanding anything herein to the contrary, Co-Lead Class Counsel, Counsel for the NFL Parties, and the Special Master understand that the Lien Resolution Administrator regularly provides lien resolution and other related services to settling parties and their attorneys, and the Special Master, Co-Lead Class Counsel, and Counsel for the NFL Parties acknowledge and agree that it shall not be a conflict of interest for the Lien Resolution Administrator to provide such services to such individuals or to receive compensation for such work.

Section 11.3 _Lien Identification, Satisfaction and Discharge_

(a) Each Settlement Class Member claiming a Monetary Award or Derivative Claimant Award will identify all Liens held or asserted by Governmental Payors or Medicare Part C or Part D Program sponsors with respect to any Monetary Award or Derivative Claimant Award in his or her Claim Form or Derivative Claim Form.

(b) Each Settlement Class Member (and counsel individually representing him or her, if any) shall cooperate with the Lien Resolution Administrator to identify all Liens held or asserted by Governmental Payors or Medicare Part C or Part D Program sponsors with respect to any Monetary Award or Derivative Claimant Award as

59

a prerequisite to receiving payment of any Monetary Award or Derivative Claimant Award, including by providing the requested information and authorizations to the Lien Resolution Administrator and/or Claims Administrator in the timeframe specified for so doing.

(c)     Among other things, each Settlement Class Member will authorize the Lien Resolution Administrator to:

(i)     Establish procedures and protocols to identify and resolve Liens held or asserted by Governmental Payors or Medicare Part C or Part D Program sponsors with respect to any Monetary Award or Derivative Claimant Award;

(ii)     Undertake to obtain an agreement in writing and other supporting documentation with CMS promptly following the Effective Date that:

(1)     Establishes a global repayment amount per Qualifying Diagnosis and/or for all or certain Qualifying Diagnoses for Settlement Class Members who are or were beneficiaries of the Medicare Program, or, alternatively, otherwise sets forth a conditional payment resolution process. Such amounts will be based on the routine costs associated with the medically accepted standard of care for the treatment and management of each Qualifying Diagnosis, as well as actual utilization of treatment by Settlement Class Members related to each Qualifying Diagnosis. The agreement, in writing, and supporting documentation with CMS will demonstrate reasonable proof of satisfaction of Medicare's Part A and/or Part B fee-for-service recovery claim in connection with Settlement Class Member's (who are or were beneficiaries of the Medicare Program) receipt of any Monetary Award or Derivative Claimant Award and any benefits provided pursuant to this Settlement Agreement.

(2)     Establishes reporting processes recognized by CMS as satisfying the reporting obligations, if any, under the mandatory Medicare reporting requirements of Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007, 110 Pub. L. No. 173, 121 Stat. 2492 ("MMSEA") in connection with this Settlement Agreement;

(iii)     Fulfill all state and federal reporting obligations, including those to CMS that are agreed upon with CMS;

(iv)     Satisfy Lien amounts owed to a Governmental Payor or, to the extent identified by the Class Member pursuant to Section 11.3(a), Medicare Part C or Part D Program sponsor for medical items, services, and/or prescription drugs paid on behalf of Settlement Class Members out of any Monetary Award or Derivative Claimant Award to the Settlement Class Member pursuant to this Settlement Agreement; and

(v)     Transmit all information received from any Governmental Payor or Medicare Part C or Part D Program sponsor pursuant to such authorizations (i) to the NFL Parties, Claims Administrator, and/or Special Master solely for purposes of verifying compliance with the MSP Laws or other similar reporting

60

obligations and for verifying satisfaction and full discharge of all such Liens, or (ii) as otherwise directed by the Court.

(d)     If the Lien Resolution Administrator is able to negotiate a global repayment amount for some or all of the Qualifying Diagnoses for Settlement Class Members who are or were beneficiaries of the Medicare Program with CMS, as set forth in Section 11.3(c)(ii)(1), the Lien Resolution Administrator shall: (i) satisfy such global repayment amount out of any Monetary Award to such Settlement Class Member; and (ii) provide that reasonable compensation of the Lien Resolution Administrator for such efforts, will be paid out of any Monetary Award to such Settlement Class Member.

(e)     If the Lien Resolution Administrator is unable to negotiate a global repayment amount for some or all of the Qualifying Diagnoses for Settlement Class Members who are or were beneficiaries of the Medicare Program with CMS, as set forth in Section 11.3(c)(ii)(1), the Lien Resolution Administrator will put in place a mechanism for resolving these Liens on an individual basis, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties.  In addition, the Lien Resolution Administrator will put in place a mechanism for resolving Liens owed to other Governmental Payors or  Medicare Part C or Part D Program sponsors on an individual basis, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties.  These mechanisms for resolving such Liens on an individual basis will allow the Lien Resolution Administrator to:  (i) satisfy such Lien amounts owed for medical items, services, and/or prescription drugs paid on behalf of a Settlement Class Member out of any Monetary Award to the Settlement Class Member, subject to the Settlement Class Member's right to object to the fact and/or amount of such Lien amount; and (ii) provide that the Lien Resolution Administrator's reasonable costs and expenses incurred in resolving such Liens, including the reasonable compensation of the Lien Resolution Administrator for such efforts, will be paid out of any Monetary Award to the Settlement Class Member.

(f)     The Parties further understand and agree that the Lien Resolution Administrator's performance of functions described in this Article is not intended to modify the legal and financial rights and obligations of Settlement Class Members, including the duty to pay and/or arrange for reimbursement of each Settlement Class Member's past, current, or future bills or costs, if any, for medical items, services, and/and prescription drugs, and to satisfy and discharge any and all statutory recovery obligations for any Liens.

(g)     Notwithstanding any other provision of this Settlement Agreement relating to timely payment, the Claims Administrator will not pay any Monetary Award to a Settlement Class Member who is or was entitled to benefits under a Governmental Payor program or Medicare Part C or Part D Program prior to: (i) the Lien Resolution Administrator's determination of the final amount needed to satisfy the reimbursement obligation that any Governmental Payor or Medicare Part C or Part D Program sponsor states is due and owing (as reflected in a final demand letter or other formal written communication), and satisfaction and discharge of that reimbursement obligation as evidenced by the Lien Resolution Administrator's receipt of a written

61

satisfaction and discharge from the applicable Governmental Payor or Medicare Part C or Part D Program sponsor; or (ii) the Lien Resolution Administrator's determination of the "holdback" amount to be deducted from the Monetary Award or Derivative Claimant Award under which such reimbursement obligation will be resolved.

(h)    Notwithstanding any other provision of this Settlement Agreement relating to timely payment, if any person or entity claims any Liens, other than those set forth in Section 11.3(g), with respect to a Settlement Class Member's Monetary Award or Derivative Claimant Award, then the Claims Administrator will not pay any such Monetary Award or Derivative Claimant Award if the Claims Administrator or Lien Resolution Administrator has received notice of that Lien and there is a legal obligation to withhold payment to the Settlement Class Member under applicable federal or state law.   The Claims Administrator will hold such Monetary Award or Derivative Claimant Award in an escrow account until the Settlement Class Member (and counsel individually representing him or her, if any) presents documentary proof, such as a court order or release or notice of satisfaction by the party asserting the Lien, that such Lien has been satisfied and discharged; or until the Lien Resolution Administrator's determination of the "holdback" amount to be deducted from the Monetary Award, Supplemental Monetary Award or Derivative Claimant Award under which such reimbursement obligation will be resolved.

(i)    Settlement Class Members who are or were entitled to benefits under Medicare Part C or Part D Programs may be required by statute or otherwise, when making a claim for and/or receiving compensation pursuant to this Settlement Agreement, to notify the relevant Medicare Part C or Part D Program sponsor or others of the existence of, and that Settlement Class Member's participation in, this Class Action Settlement.  It is the sole responsibility of each Settlement Class Member to determine whether he or she has such a notice obligation, and to perform timely any such notice reporting.

Section 11.4    Indemnification.  Each Settlement Class Member, on his or her own behalf, and on behalf of his or her estate, predecessors, successors, assigns, representatives, heirs, beneficiaries, executors, and administrators, in return for the benefits and consideration provided in this Settlement Agreement, will indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities, including the costs of defense and attorneys' fees of, the Released Parties against any and all claims by Other Parties arising from, relating to, or resulting from (a) any undisclosed Lien relating to, or resulting from, compensation or benefits received by a Settlement Class Member pursuant to this Class Action Settlement and/or (b) the failure of a Settlement Class Member timely and accurately to report or provide information that is necessary for compliance with the MSP Laws, or for the Lien Resolution Administrator to identify and/or satisfy all Governmental Payors or Medicare Part C or Part D Program sponsors who may hold or assert a reimbursement right.  The amount of indemnification will not exceed the total Monetary Award or Derivative Claimant Award for that Settlement Class Member's claim.  **CLASS AND SUBCLASS REPRESENTATIVES AND SETTLEMENT CLASS MEMBERS ACKNOWLEDGE THAT THIS SECTION COMPLIES**

**WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS SECTION IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.**

Section 11.5   <u>No Admission</u>.   Any reporting performed by the Lien Resolution Administrator and/or Claims Administrator for the purpose of resolving Liens, if any, related to compensation provided to Settlement Class Members pursuant to this Settlement Agreement does not constitute an admission by any Settlement Class Member or any Released Party of any liability or evidence of liability in any manner.

Section 11.6   The foregoing provisions of this Article are solely for the several benefit of the NFL Parties, the Lien Resolution Administrator, the Special Master, and the Claims Administrator.   No Settlement Class Member (or counsel individually representing them, if any) will have any rights or defenses based upon or arising out of any act or omission of the NFL Parties or any Administrator with respect to this Article.

**ARTICLE XII**
**Education Fund**

Section 12.1   An Education Fund will be established to fund programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of Retired NFL Football Players regarding the NFL CBA Medical and Disability Benefits programs and other educational initiatives benefitting Retired NFL Football Players.   The Court shall approve these education programs, with input from Co-Lead Class Counsel, Counsel for the NFL Parties and medical experts, as further set forth below.   Co-Lead Class Counsel and Counsel for the NFL Parties will agree to a protocol through which Retired NFL Football Players will actively participate in such initiatives.

Section 12.2   Co-Lead Class Counsel, with input from Counsel for the NFL Parties, and with Court approval, will take all necessary steps to establish the Education Fund and establish procedures and controls to manage and account for the disbursement of funds to the education projects and all other costs associated with the Education Fund.   The costs and expenses to administer the Education Fund will be paid out of the Education Fund Amount.

**ARTICLE XIII**
**Preliminary Approval and Class Certification**

Section 13.1   Promptly after execution, Class Counsel will file the Motion for Preliminary Approval of the Class Action Settlement and the Settlement Agreement as an exhibit thereto.   Simultaneously, the Class and Subclass Representatives will file a Motion for Certification of Rule 23(b)(3) Class and Subclasses for Purposes of Settlement.

Section 13.2   The Parties agree to take all actions reasonably necessary to obtain the Preliminary Approval and Class Certification Order from the Court.

Section 13.3    The Parties agree to jointly request that the Court stay this action and all Related Lawsuits, and enjoin all Settlement Class Members, unless and until they have been excluded from the Settlement Class by action of the Court, or until the Court denies approval of the Class Action Settlement, or until the Settlement Agreement is otherwise terminated, from filing, commencing, prosecuting, intervening in, participating in and/or maintaining, as plaintiffs, claimants, or class members in, any other lawsuit, including, without limitation, a Related Lawsuit, or administrative, regulatory, arbitration, or other proceeding in any jurisdiction (whether state, federal or otherwise), against Released Parties based on, relating to, or arising out of the claims and causes of action, or the facts and circumstances at issue, in the Class Action Complaint, Related Lawsuits and/or the Released Claims, except that claims for workers' compensation and claims alleging entitlement to NFL CBA Medical and Disability Benefits will not be stayed or enjoined.    For the avoidance of any doubt, the Parties are not requesting that the Court stay any actions against Riddell.

(a)    The Parties recognize that there may be further pleadings, discovery responses, documents, testimony, or other matters or materials owed by the Parties to each other pursuant to existing pleading requirements, discovery requests, pretrial rules, procedures, orders, decisions, or otherwise.  As of the Settlement Date, each Party expressly waives any right to receive, inspect, or hear such pleadings, discovery, testimony, or other matters or materials during the pendency of the settlement proceedings contemplated by this Settlement Agreement and subject to further order of the Court.

Section 13.4    The Parties agree that any certification of the Settlement Class and Subclasses will be for settlement purposes only.  The Parties do not waive or concede any position or arguments they have for or against certification of any class for any other purpose in any action or proceeding.  Any class certification order entered in connection with this Settlement Agreement will not constitute an admission by the NFL Parties, or finding or evidence, that the Class and Subclass Representatives' claims, or the claims of any other Settlement Class Member, or the claims of the Settlement Class, are appropriate for class treatment if the claims were contested in this or any other federal, state, arbitral, or foreign forum.  If the Court enters the proposed form of Preliminary Approval and Class Certification Order, the Final Order and Judgment will provide for vacation of the Final Order and Judgment and the Preliminary Approval and Class Certification Order in the event that this Settlement Agreement does not become effective.

Section 13.5    Upon entry of the Preliminary Approval and Class Certification Order, the statutes of limitation applicable to any and all claims or causes of action that have been or could be asserted by or on behalf of any Settlement Class Members related to the subject matter of the Settlement Agreement will be tolled and stayed to the extent not already tolled by the initiation of an action in this litigation or a Related Lawsuit.  The limitations period will not begin to run again for any Settlement Class Member unless and until he or she is deemed to have Opted Out of the Settlement Class, this Settlement Agreement is terminated pursuant to ARTICLE XVI, or a Settlement Class Member's Release and Covenant Not to Sue has been rendered null and

64

void by the Court as set forth in Section 25.6(g). In the event the Settlement Agreement is terminated pursuant to ARTICLE XVI, to the extent not otherwise tolled, the limitations period for each Settlement Class Member as to whom the limitations period had not expired as of the date of the Preliminary Approval and Class Certification Order will extend for the longer of thirty (30) days from the last required issuance of notice of termination or the period otherwise remaining before expiration. Notwithstanding the tolling agreement herein, the Parties recognize that any time already elapsed for any Class or Subclass Representatives or Settlement Class Members on any applicable statutes of limitations will not be reset, and no expired claims will be revived, by virtue of this tolling agreement. Class and Subclass Representatives and Settlement Class Members do not admit, by entering into this Settlement Agreement, that they have waived any applicable tolling protections available as a matter of law or equity. Nothing in this Settlement Agreement will constitute an admission in any manner that the statute of limitations has been tolled for anyone outside the Settlement Class, nor does it constitute a waiver of legal positions regarding tolling.

## ARTICLE XIV
## Notice, Opt Out, and Objections

Section 14.1    Notice

(a)    As part of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Plaintiffs will submit to the Court a Settlement Class Notice Plan agreed upon by Class Counsel and Counsel for the NFL Parties.

(b)    The Settlement Class Notice Plan, to be implemented by the Settlement Class Notice Agent following the Court's entry of the Preliminary Approval and Class Certification Order, and approval of the Settlement Class Notice (in the form of Exhibit 5), paid for by the NFL Parties' transfer of Four Million United States dollars (U.S. $4,000,000) to Co-Lead Class Counsel, as set forth in Sections 23.1 and 23.3, will be designed to meet the requirements of Fed. R. Civ. P. 23 (c)(2)(B), and will include: (i) direct notice by first-class mail; (ii) broad notice through the use of paid media including national radio spots, national consumer magazines, television and internet advertising; and (iii) electronic notice through the Settlement Website created under Section 4.1(a) and an automated telephone system created under Section 4.1(b).

(c)    The Parties and the Claims Administrator will maintain a list of the names and addresses of each person to whom the Settlement Class Notice is transmitted in accordance with any order entered by the Court pursuant to ARTICLE XIII. These names and addresses will be kept strictly confidential and will be used only for purposes of administering this Class Action Settlement, except as otherwise ordered by the Court.

(d)    Within thirty (30) days of the Effective Date, upon Court approval, Co-Lead Class Counsel shall cause the Settlement Class Supplemental Notice to be disseminated to Settlement Class Members by first-class mail and by posting on the Settlement Website created under Section 4.1(a) and through an automated telephone

65

system created under Section 4.1(b), to advise Settlement Class Members of the previously disclosed deadlines:  (i) to register for participation in the Class Action Settlement, as set forth in Section 4.2; (ii) as to eligible Retired NFL Football Players, to participate in the BAP, as set forth in Section 5.3; and (iii) to submit Claim Packages or Derivative Claim Packages, as set forth in Section 8.3.   The Settlement Class Supplemental Notice shall include the above information, and any other information, as agreed upon by Co-Lead Class Counsel and Counsel for the NFL Parties, and approved by the Court.

Section 14.2   <u>Opt Outs</u>

(a)   The Settlement Class Notice will provide instructions regarding the procedures that must be followed to Opt Out of the Settlement Class pursuant to Fed. R. Civ. P. 23(c)(2)(B)(v).  The Parties agree that, to Opt Out validly from the Settlement Class, a Settlement Class Member must submit a written request to Opt Out stating "I wish to exclude myself from the Settlement Class in *In re: National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323" (or substantially similar clear and unambiguous language) to the Claims Administrator on or before such date as is ordered by the Court.  That written request also will contain the Settlement Class Member's printed name, address, telephone number, and date of birth and enclose a copy of his or her driver's license or other government issued identification.  A written request to Opt Out may not be signed using any form of electronic signature, but must contain the dated Personal Signature of the Retired NFL Football Player, Representative Claimant, or Derivative Claimant seeking to exclude himself or herself from the Settlement Class.  Attorneys for Settlement Class Members may submit a written request to Opt Out on behalf of a Settlement Class Member, but such request must contain the Personal Signature of the Settlement Class Member.  The Claims Administrator will provide copies of all requests to Opt Out to Class Counsel and Counsel for the NFL Parties within seven (7) days of receipt of each such request.  Valid requests to Opt Out from the Settlement Class will become effective on the Final Approval Date.

(b)   All Settlement Class Members who do not timely and properly Opt Out from the Settlement Class will in all respects be bound by all terms of this Settlement Agreement and the Final Order and Judgment upon the Effective Date, will be entitled to all procedural opportunities and protections described in this Settlement Agreement and provided by the Court, and to all compensation and benefits for which they qualify under its terms, and will be barred permanently and forever from commencing, filing, initiating, prosecuting, asserting, and/or maintaining any and all Released Claims against any Released Parties in any court of law or equity, arbitration tribunal, or administrative or other forum.

(c)   Prior to the Final Approval Date, any Retired NFL Football Player, Representative Claimant, or Derivative Claimant may seek to revoke his or her Opt Out from the Settlement Class and thereby receive the benefits of this Class Action Settlement by submitting a written request to Co-Lead Class Counsel and Counsel for the NFL Parties stating "I wish to revoke my request to be excluded from the Settlement

Class" (or substantially similar clear and unambiguous language), and also containing the Settlement Class Member's printed name, address, phone number, and date of birth. The written request to revoke an Opt Out must contain the Personal Signature of the Settlement Class Member seeking to revoke his or her Opt Out.

Section 14.3    <u>Objections</u>

(a)    Provided a Settlement Class Member has not submitted a written request to Opt Out, as set forth in Section 14.2(a), the Settlement Class Member may present written objections, if any, explaining why he or she believes the Class Action Settlement should not be approved by the Court as fair, reasonable, and adequate. No later than such date as is ordered by the Court, a Settlement Class Member who wishes to object to any aspect of the Class Action Settlement must file with the Court , or as the Court otherwise may direct, a written statement of the objection(s). The written statement of objection(s) must include a detailed statement of the Settlement Class Member's objection(s), as well as the specific reasons, if any, for each such objection, including any evidence and legal authority the Settlement Class Member wishes to bring to the Court's attention. That written statement also will contain the Settlement Class Member's printed name, address, telephone number, and date of birth, written evidence establishing that the objector is a Settlement Class Member, and any other supporting papers, materials, or briefs the Settlement Class Member wishes the Court to consider when reviewing the objection. A written objection may not be signed using any form of electronic signature, but must contain the dated Personal Signature of the Retired NFL Football Player, Representative Claimant, or Derivative Claimant making the objection. The Court shall determine whether any Settlement Class Members who do not follow the procedures will have waived any objections they may have.

(b)    A Settlement Class Member may object on his or her own behalf or through an attorney hired at that Settlement Class Member's own expense, provided the Settlement Class Member has not submitted a written request to Opt Out, as set forth in Section 14.2(a). Attorneys asserting objections on behalf of Settlement Class Members must:  (i) file a notice of appearance with the Court by the date set forth in the Preliminary Approval and Class Certification Order, or as the Court otherwise may direct; (ii) file a sworn declaration attesting to his or her representation of each Settlement Class Member on whose behalf the objection is being filed or a copy of the contract (to be filed *in camera*) between that attorney and each such Settlement Class Member; and (iii) comply with the procedures described in this Section.

(c)    A Settlement Class Member (or counsel individually representing him or her, if any) seeking to make an appearance at the Fairness Hearing must file with the Court, by the date set forth in the Preliminary Approval and Class Certification Order, or as the Court otherwise may direct, a written notice of his or her intention to appear at the Fairness Hearing, in accordance with the requirements set forth in the Preliminary Approval and Class Certification Order.

(d)    Any Settlement Class Member who fails to comply with the provisions of this Section 14.3 will waive and forfeit any and all rights he or she may have to object to the Class Action Settlement.

## ARTICLE XV
## Communications to the Public

Section 15.1    The form, content, and timing of any public statement announcing the filing of this Settlement Agreement will be subject to mutual agreement by Class Counsel and Counsel for the NFL Parties.  The Parties and their counsel agree not to make any public statements, including statements to the media, that are inconsistent with the Settlement Agreement.  Any communications to the public or the media made by or on behalf of the Parties and their respective counsel regarding the Class Action Settlement will be made in good faith and will be consistent with the Parties' agreement to take all actions reasonably necessary for preliminary and final approval of this Class Action Settlement.   Any information contained in such communications will be balanced, fair, accurate, and consistent with the content of the Settlement Class Notice.

(a)    Nothing herein is intended or will be interpreted to inhibit or interfere with the ability of Class Counsel or Counsel for the NFL Parties to communicate with the Court, their clients, or Settlement Class Members and/or their counsel.

(b)    Class Counsel acknowledge and agree, and the Preliminary Approval and Class Certification Order will provide, that the NFL Parties have the right to communicate orally and in writing with, and to respond to inquiries from, Settlement Class Members on matters unrelated to the Class Action Settlement in connection with the NFL Parties' normal business.

## ARTICLE XVI
## Termination

Section 16.1    <u>Walk-Away Right of NFL Parties</u>.  Without limiting any other rights under this Settlement Agreement, the NFL Parties will have the absolute and unconditional right, in their sole good faith discretion, to unilaterally terminate and render null and void this Class Action Settlement and Settlement Agreement for any reason whatsoever following notice of Opt Outs and prior to the Fairness Hearing.  The NFL Parties must provide written election to terminate this Settlement Agreement to Class Counsel and the Court prior to the Fairness Hearing.

Section 16.2    <u>Party Termination Rights</u>

(a)    Class Counsel and Counsel for the NFL Parties each have the absolute and unconditional right, in their sole discretion, which discretion will be exercised in good faith, to terminate and render null and void this Class Action Settlement and Settlement Agreement if (i) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Settlement Agreement that Class

68

Counsel or Counsel for the NFL Parties reasonably and in good faith determines is material, including, without limitation, the Releases or the definition of the Settlement Class, or (ii) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the proposed Preliminary Approval and Class Certification Order or the proposed Final Order and Judgment (Exhibit 4) that Class Counsel or Counsel for the NFL Parties reasonably and in good faith believes is material. Such written election to terminate this Settlement Agreement must be made to the Court within thirty (30) days of such Court order.

(b)     Class Counsel may not terminate and render null and void this Class Action Settlement and Settlement Agreement on the basis of the attorneys' fees award ordered, or modified, by the Court or any appellate court(s), as set forth in ARTICLE XXI.

Section 16.3    <u>Post-Termination Actions</u>

(a)     In the event this Settlement Agreement is terminated or becomes null and void, this Settlement Agreement will not be offered into evidence or used in this or in any other action in the Court, or in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum for any purpose, including, but not limited to, the existence, certification, or maintenance of any purported class. In addition, in such event, this Settlement Agreement and all negotiations, proceedings, documents prepared and statements made in connection with this Settlement Agreement will be without prejudice to all Parties and will not be admissible into evidence and will not be deemed or construed to be an admission or concession by any of the Parties of any fact, matter, or proposition of law and will not be used in any manner for any purpose, and all Parties will stand in the same position as if this Settlement Agreement had not been negotiated, made, or filed with the Court.

(b)     In the event this Settlement Agreement is terminated or becomes null and void, the Parties will jointly move the Court to vacate the Preliminary Approval and Certification Order and any other orders certifying a Settlement Class provided.

(c)     If this Settlement Agreement is terminated or becomes null and void after notice has been given, the Parties will provide Court-approved notice of termination to the Settlement Class. If a Party terminates the Settlement Agreement in accordance with Section 16.1 or Section 16.2, that Party will pay the cost of notice of termination.

(d)     In the event this Settlement Agreement is terminated or becomes null and void, any unspent and uncommitted monies in the Funds will revert to the NFL Parties within ten (10) days, and all data provided by the NFL Parties, Class Counsel and/or Settlement Class Members shall be returned or destroyed.

## ARTICLE XVII
### Treatment of Confidential Information

Section 17.1    Confidentiality of Information Relating to the Settlement Agreement.  The Parties will treat all confidential or proprietary information shared hereunder, or in connection herewith, either prior to, on or after the Settlement Date, and any and all prior or subsequent drafts, representations, negotiations, conversations, correspondence, understandings, analyses, proposals, term sheets, and letters, whether oral or written, of any kind or nature, with respect to the subject matter hereof ("Confidential Information") in conformity with strict confidence and will not disclose Confidential Information to any non-Party without the prior written consent of the Party that shared the Confidential Information, except:  (i) as required by applicable law, regulation, or by order or request of a court of competent jurisdiction, regulator, or self-regulatory organization (including subpoena or document request), provided that the Party that shared the Confidential Information is given prompt written notice thereof and, to the extent practicable, an opportunity to seek a protective order or other confidential treatment thereof, provided further that the Party subject to such requirement or request cooperates fully with the Party that shared the Confidential Information in connection therewith, and only such Confidential Information is disclosed as is legally required to be disclosed in the opinion of legal counsel for the disclosing Party; (ii) under legal (including contractual) or ethical obligations of confidentiality, on an as-needed and confidential basis to such Party's present and future accountants, counsel, insurers, or reinsurers; or (iii) with regard to any information that is already publicly known through no fault of such Party or its Affiliates.  This Settlement Agreement, all exhibits hereto, any other documents filed in connection with the Class Action Settlement, and any information disclosed through a public court proceeding shall not be deemed Confidential Information.

Section 17.2    Confidentiality of Retired NFL Football Player Information

(a)    All information relating to a Retired NFL Football Player that is disclosed to or obtained by the Special Master, BAP Administrator, Claims Administrator, Lien Resolution Administrator, designated Qualified BAP Providers, the NFL Parties, an Appeals Advisory Panel member, an Appeals Advisory Panel Consultant, or the Court, may be used only by the Special Master, BAP Administrator, Claims Administrator, Lien Resolution Administrator, designated Qualified BAP Providers, the NFL Parties, an Appeals Advisory Panel member, an Appeals Advisory Panel Consultant, or the Court for the administration of this Class Action Settlement according to the Settlement Agreement terms and conditions.  All such information relating to a Retired NFL Football Player will be treated as Confidential Information hereunder, will be subject to the terms of Section 17.1 hereof, and, where applicable, will be treated as Protected Health Information subject to HIPAA and other applicable privacy laws.

70

-1380-

## ARTICLE XVIII
### Releases and Covenant Not to Sue

Section 18.1    <u>Releases</u>

(a)    In consideration of the benefits described and the agreement and covenants contained in this Settlement Agreement, and by operation of the Final Order and Judgment, the Settlement Class, the Class and Subclass Representatives, and each Settlement Class Member, on his or her own behalf and on behalf of his or her respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on behalf of any Settlement Class Member (the "Releasors"), hereby waive and release, forever discharge and hold harmless the Released Parties, and each of them, of and from any and all past, present and future claims, counterclaims, actions, rights or causes of action, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, in law or in equity, contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, in any forum that the Releasors, and each of them, had, has, or may have in the future arising out of, in any way relating to or in connection with the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, referred to or relating to the Class Action Complaint and/or Related Lawsuits ("Claims"), including, without limitation, Claims:

(i)    that were, are or could have been asserted in the Class Action Complaint or any other Related Lawsuit; and/or

(ii)    arising out of, or relating to, head, brain and/or cognitive injury, as well as any injuries arising out of, or relating to, concussions and/or subconcussive events (including, without limitation, prevention, diagnosis and treatment thereof) of whatever cause and its damages (whether short-term, long-term or death), whenever arising, including, without limitation, Claims for personal or bodily injury, including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life (and exacerbation and/or progression of personal or bodily injury), or wrongful death and/or survival actions as a result of such injury and/or exacerbation and/or progression thereof; and/or

(iii)    arising out of, or relating to, neurocognitive deficits or impairment, or cognitive disorders, of whatever kind or degree, including, without limitation, mild cognitive impairment, moderate cognitive impairment, dementia, Alzheimer's Disease, Parkinson's Disease, and ALS; and/or

(iv)    arising out of, or relating to, CTE; and/or

71

(v)     arising out of, or relating to, loss of support, services, consortium, companionship, society, or affection, or damage to familial relations (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life); and/or

(vi)     arising out of, or relating to, increased risk, possibility, or fear of suffering in the future from any head, brain and/or cognitive injury, as well as any injuries arising out of, or relating to, concussions and/or subconcussive events (including, without limitation, prevention, diagnosis and treatment thereof), and including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life); and/or

(vii)    arising out of, or relating to, medical screening and medical monitoring for undeveloped, unmanifested, and/or undiagnosed head, brain and/or cognitive injury, as well as any injuries arising out of, or relating to, concussions and/or subconcussive events (including, without limitation, prevention, diagnosis and treatment thereof); and/or

(viii)   premised on any purported or alleged breach of any Collective Bargaining Agreement related to the issues in the Class Action Complaint and/or Related Lawsuits, except claims for workers' compensation and claims alleging entitlement to NFL CBA Medical and Disability Benefits.

(b)     In consideration of the benefits described and the agreement and covenants contained in this Settlement Agreement, and by operation of the Final Order and Judgment, the Releasors do hereby release, forever discharge and hold harmless the Released Parties from any and all Claims, including unknown Claims, arising from, relating to, or resulting from the reporting, transmittal of information, or communications between or among the NFL Parties, Counsel for the NFL Parties, the Special Master, Claims Administrator, Lien Resolution Administrator, any Governmental Payor, and/or Medicare Part C or Part D Program sponsor regarding any claim for benefits under this Settlement Agreement, including any consequences in the event that this Settlement Agreement impacts, limits, or precludes any Settlement Class Member's right to benefits under Social Security or from any Governmental Payor or Medicare Part C or Part D Program sponsor.

(c)     In consideration of the benefits described and the agreement and covenants contained in this Settlement Agreement, and by operation of the Final Order and Judgment, the Releasors do hereby release, forever discharge and hold harmless the Released Parties from any and all Claims, including unknown Claims, pursuant to the MSP Laws, or other similar causes of action, arising from, relating to, or resulting from the failure or alleged failure of any of the Released Parties to provide for a primary payment or appropriate reimbursement to a Governmental Payor or Medicare Part C or Part D Program sponsor with a Lien in connection with claims for medical items, services, and/or prescription drugs provided in connection with compensation or benefits claimed or received by a Settlement Class Member pursuant to this Settlement Agreement.

(d)    In consideration of the benefits described and the agreement and covenants contained in this Settlement Agreement, and by operation of the Final Order and Judgment, the Releasors do hereby release, forever discharge and hold harmless the Released Parties, the Special Master, BAP Administrator, Claims Administrator, and their respective officers, directors, and employees from any and all Claims, including unknown Claims, arising from, relating to, or resulting from their participation, if any, in the BAP, including, but not limited to, Claims for negligence, medical malpractice, wrongful or delayed diagnosis, personal injury, bodily injury (including disease, trauma, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), or death arising from, relating to, or resulting from such participation.

Section 18.2   <u>Release of Unknown Claims</u>.   In connection with the releases in Section 18.1, the Class and Subclass Representatives, all Settlement Class Members, and the Settlement Class acknowledge that they are aware that they may hereafter discover Claims now unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, with respect to actions or matters released herein. Class and Subclass Representatives, all Settlement Class Members, and the Settlement Class explicitly took unknown or unsuspected claims into account in entering into the Settlement Agreement and it is the intention of the Parties fully, finally and forever to settle and release all Claims as provided in Section 18.1 with respect to all such matters.

Section 18.3   <u>Scope of Releases</u>

(a)    Each Party acknowledges that it has been informed of Section 1542 of the Civil Code of the State of California (and similar statutes) by its counsel and that it does hereby expressly waive and relinquish all rights and benefits, if any, which it, he or she has or may have under said section (and similar sections) which reads as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

(b)    The Parties acknowledge that the foregoing waiver of the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other state, territory, or other jurisdiction was separately bargained for and that the Parties would not have entered into this Settlement Agreement unless it included a broad release of unknown claims relating to the matters released herein.

(c)    The Releasors intend to be legally bound by the Releases.

73

(d)    The Releases are not intended to prevent the NFL Parties from exercising their rights of contribution, subrogation, or indemnity under any law.

(e)    Nothing in the Releases will preclude any action to enforce the terms of this Settlement Agreement in the Court.

(f)    The Parties represent and warrant that no promise or inducement has been offered or made for the Releases contained in this Article except as set forth in this Settlement Agreement and that the Releases are executed without reliance on any statements or any representations not contained in this Settlement Agreement.

Section 18.4    Covenant Not to Sue.  From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, the Class and Subclass Representatives, each Settlement Class Member, and the Settlement Class, on behalf of the Releasors, and each of them, covenant, promise, and agree that they will not, at any time, continue to prosecute, commence, file, initiate, institute, cause to be instituted, assist in instituting, or permit to be instituted on their, his, her, or its behalf, or on behalf of any other individual or entity, any proceeding:  (a) alleging or asserting any of his or her respective Released Claims against the Released Parties in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, including, without limitation, the Claims set forth in Section 18.1; or (b) challenging the validity of the Releases.  To the extent any such proceeding exists in any court, tribunal or other forum as of the Effective Date, the Releasors covenant, promise and agree to withdraw, and seek a dismissal with prejudice of, such proceeding forthwith.

Section 18.5    No Release for Insurance Coverage.

(a)    Notwithstanding anything herein to the contrary, this Settlement Agreement is not intended to and does not release any Governmental Payor or Medicare Part C or Part D Program sponsor from its or their obligation to provide any health insurance coverage, major medical insurance coverage, or disability insurance coverage to a Settlement Class Member, or from any claims, demands, rights, or causes of action of any kind that a Settlement Class Member has or hereafter may have with respect to such individuals or entities.

(b)    Notwithstanding anything herein to the contrary, this Settlement Agreement is not intended to and does not effect a release of any rights or obligations that any insurer has under or in relation to any contract or policy of insurance to any named insured, insured, additional insured, or other insured person or entity thereunder, including those persons or entities referred to in Section 2.1(bbbb)(i)-(ii).

Section 18.6    No Release for Claims for Workers' Compensation and NFL CBA Medical and Disability Benefits.  Nothing contained in this Settlement Agreement, including the Release and Covenant Not to Sue provisions in this ARTICLE XVIII, affects the rights of Settlement Class Members to pursue claims for workers' compensation and claims alleging entitlement to NFL CBA Medical and Disability Benefits.  For the avoidance of any doubt, this Settlement Agreement does not alter the

showing that Settlement Class Members must demonstrate to pursue successful claims for workers' compensation and/or successful claims alleging entitlement to NFL CBA Medical and Disability Benefits, nor does it alter the defenses to such claims available to Released Parties except as set forth in ARTICLE XXIX.

## ARTICLE XIX
## Bar Order

Section 19.1   <u>Bar Order</u>.  As a condition to the Settlement, the Parties agree to move the Court for a bar order, as part of the Final Order and Judgment (substantially in the form of Exhibit 4), as set forth in Section 20.1.

Section 19.2   <u>Judgment Reduction</u>.  With respect to any litigation by the Releasors against Riddell, the Releasors further agree that if a verdict in their favor results in a verdict or judgment for contribution or indemnity against the Released Parties, the Releasors will not enforce their right to collect this verdict or judgment to the extent that such enforcement creates liability against the Released Parties.  In such event, the Releasors agree that they will reduce their claim or agree to a judgment reduction or satisfy the verdict or judgment to the extent necessary to eliminate the claim of liability against the Released Parties or any Other Party claiming contribution or indemnity.

## ARTICLE XX
## Final Order and Judgment and Dismissal With Prejudice

Section 20.1   The Parties will jointly seek a Final Order and Judgment from the Court, substantially in the form of Exhibit 4, approval and entry of which shall be a condition of this Settlement Agreement, that:

(a)    Approves the Class Action Settlement in its entirety pursuant to Fed. R. Civ. P. 23(e) as fair, reasonable, and adequate;

(b)    Finds that this Settlement Agreement, with respect to each Subclass, is fair, reasonable, and adequate;

(c)    Confirms the certification of the Settlement Class for settlement purposes only;

(d)    Confirms the appointments of the Class and Subclass Representatives;

(e)    Confirms the appointments of Co-Lead Class Counsel, Class Counsel and Subclass Counsel;

(f)    Finds that the Settlement Class Notice satisfied the requirements set forth in Fed. R. Civ. P. 23(c)(2)(B);

(g)     Permanently bars, enjoins and restrains the Releasors (and each of them) from commencing, filing, initiating, prosecuting, asserting, and/or maintaining any and all Released Claims against any Released Party;

(h)     Dismisses with prejudice the Class Action Complaint, without further costs, including claims for interest, penalties, costs and attorneys' fees, except that the motion for an award of attorneys' fees and reasonable costs, as set forth in in Section 21.1, will be made at an appropriate time to be determined by the Court;

(i)     Orders the dismissal with prejudice, and without further costs, including claims for interest, penalties, costs, and attorneys' fees, of all Related Lawsuits pending in the Court as to the Released Parties, thereby effectuating in part the Releases;

(j)     Orders all Releasors with Related Lawsuits pending in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, other than the Court, promptly to dismiss with prejudice, and without further costs, including claims for interest, penalties, costs, and attorneys' fees, all such Related Lawsuits as to the Released Parties, thereby effectuating in part the Releases;

(k)     Permanently bars and enjoins the commencement, assertion, and/or prosecution of any claim for contribution and/or indemnity in the Court, in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum between the Released Parties and all alleged joint tortfeasors, other than Riddell, together with an appropriate judgment reduction provision;

(l)     Confirms the appointment of the Special Master, Garretson Group as the BAP Administrator, BrownGreer as the Claims Administrator, Garretson Group as the Liens Resolution Administrator, and Citibank, N.A. as the Trustee, and confirms that the Court retains continuing jurisdiction over those appointed;

(m)     Confirms that the Court retains continuing jurisdiction over the "qualified settlement funds," as defined under §1.468B-1 of the Treasury Regulations promulgated under Sections 461(h) and 468B of the Internal Revenue Code of 1986, as amended, created under the Settlement Agreement; and

(n)     Expressly incorporates the terms of this Settlement Agreement and provides that the Court retains continuing and exclusive jurisdiction over the Parties, the Settlement Class Members and this Settlement Agreement, to interpret, implement, administer and enforce the Settlement Agreement in accordance with its terms.

## ARTICLE XXI
### Attorneys' Fees

Section 21.1     Award.     Separately and in addition to the NFL Parties' payment of the monies set forth in ARTICLE XXIII and any consideration received by Settlement Class Members under this Settlement, the NFL Parties shall pay class

attorneys' fees and reasonable costs. Class Counsel shall be entitled, at an appropriate time to be determined by the Court, to petition the Court on behalf of all entitled attorneys for an award of class attorneys' fees and reasonable costs. Provided that said petition does not seek an award of class attorneys' fees and reasonable costs exceeding One Hundred and Twelve Million, Five Hundred Thousand United States dollars (U.S. $112,500,000), the NFL Parties agree not to oppose or object to the petition. Ultimately, the award of class attorneys' fees and reasonable costs to be paid by the NFL Parties is subject to the approval of the Court. For the avoidance of any doubt, the NFL Parties' obligation to pay class attorneys' fees and reasonable costs is limited to those attorneys' fees and reasonable costs ordered by the Court as a result of the initial petition by Class Counsel. The NFL Parties shall not be responsible for the payment of any further attorneys' fees and/or costs for the term of this Agreement. After the Effective Date, Co-Lead Class Counsel may petition the Court to set aside up to five percent (5%) of each Monetary Award and Derivative Claimant Award to facilitate the Settlement program and related efforts of Class Counsel. These set-aside monies shall be held in a separate fund overseen by the Court. Any future petition for a set-aside will describe: (i) the proposed amount; (ii) how the money will be used; and (iii) any other relevant information (for example, the assurance that any "set-aside" from a Monetary Award or Derivative Claimant Award for a Settlement Class Member represented by his/her individual counsel will reduce the attorney's fee payable to that counsel by the amount of the "set-aside"). No money will be held back or set aside from any Monetary Award or Derivative Claimant Award without Court approval. The NFL Parties believe that any such proposed set aside application is a matter strictly between and among Settlement Class Members, Class Counsel, and individual counsel for Settlement Class Members. The NFL Parties therefore take no position on the proposed set aside and will take no position on the proposed set aside in the event such an application is made.

Section 21.2 <u>Payment</u>. No later than sixty (60) days after the Effective Date, the NFL Parties will pay, or cause to be paid, a total of One Hundred and Twelve Million, Five Hundred Thousand United States dollars (U.S. $112,500,000) into the Attorneys' Fees Qualified Settlement Fund, as set forth in Section 23.7, to be held in escrow until such payment shall be made as directed by the Court.

## ARTICLE XXII
### Enforceability of Settlement Agreement and Dismissal of Claims

Section 22.1    It is a condition of this Settlement Agreement that the Court approve and enter the Preliminary Approval and Class Certification Order and Final Order and Judgment substantially in the form of Exhibit 4.

Section 22.2    The Parties agree that this Class Action Settlement is not final and enforceable until the Effective Date, except that upon entry of the Preliminary Approval and Class Certification Order, the NFL Parties will be obligated to make the Settlement Class Notice Payment as set forth in Sections 14.1, 23.1 and 23.3.

Section 22.3    From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, the Court will

77

dismiss with prejudice all Released Claims by any and all Releasors against any and all Released Parties pending in the Court, and any and all Releasors with Related Lawsuits pending in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, other than the Court, will dismiss with prejudice the Related Lawsuits as to the Released Parties, including any related appeals.

Section 22.4   From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, the Parties agree that each and every Releasor will be permanently barred and enjoined from commencing, filing, initiating, instituting, prosecuting, and/or maintaining any judicial, arbitral, or regulatory action against any Released Party with respect to any and all Released Claims.

Section 22.5   From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, this Settlement Agreement will be the exclusive remedy for any and all Released Claims by or on behalf of any and all Releasors against any and all Released Parties, and no Releasor will recover, directly or indirectly, any sums from any Released Parties for Released Claims other than those received for the Released Claims under the terms of this Settlement Agreement, if any.

Section 22.6   From and after the Effective Date, if any Releasor, in violation of Section 18.4, commences, files, initiates, or institutes any new action or other proceeding for any Released Claims against any Released Parties, or continues to prosecute any pending claims, or challenges the validity of the Releases, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, such action or other proceeding will be dismissed with prejudice and at such Releasor's cost; provided, however, before any costs may be assessed, counsel for such Releasor or, if not represented, such Releasor, will be given reasonable notice and an opportunity voluntarily to dismiss such new action or proceeding with prejudice.  Furthermore, if the NFL Parties or any other Released Party brings any legal action before the Court to enforce its rights under this Settlement Agreement against a Settlement Class Member and prevails in such action, that Released Party will be entitled to recover any and all related costs and expenses (including attorneys' fees) from any Releasor found to be in violation or breach of his or her obligations under this Article.

## ARTICLE XXIII
## NFL Payment Obligations

Section 23.1   <u>Funding Amount</u>.   In consideration of the Releases and Covenant Not to Sue set forth in ARTICLE XVIII, and the dismissal with prejudice of the Class Action Complaint and the Related Lawsuits, and subject to the terms and conditions of this Settlement Agreement, the NFL Parties will pay in accordance with the funding terms set forth herein:

(a)   <u>Monetary Award Fund Amount</u>.   The amount of money sufficient to make all payments set forth in Section 23.3(b) for sixty-five (65) years from the Effective Date.   For the avoidance of any doubt, the NFL Parties shall have no

payment obligations under this Settlement Agreement after the end of the Monetary Award Fund sixty-five (65) year term;

(b)    BAP Fund Amount.    The amount of money, up to a maximum of Seventy-Five Million United States dollars (U.S. $75,000,000), sufficient to make all payments set forth in Section 23.3(d), except that every qualified Retired NFL Football Player, as set forth in Section 5.1, is entitled to one baseline assessment examination;

(c)    Education Fund Amount.    Ten Million United States dollars (U.S. $10,000,000), which monies will be used exclusively to fund the Education Fund;

(d)    Settlement Class Notice Amount.    Four Million United States dollars (U.S. $4,000,000), to pay for Settlement Class Notice and related expenses; and

(e)    Annual Compensation of the Special Master.    The annual compensation of the Special Master appointed by the Court, whose total annual compensation shall not exceed Two Hundred Thousand United States dollars (U.S. $200,000).

(f)    Notwithstanding any provision of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119, amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029, or any subsequent legislation mandating or subsidizing health insurance coverage, the NFL Parties will pay, or cause to be paid, in full the amounts set forth above in Section 23.1(a)-(e), and will not bill any Governmental Payor or Medicare Part C or Part D Program for any such costs.

Section 23.2    Exclusive Payments.    For the avoidance of any doubt, other than as set forth in Section 21.2, the NFL Parties will have no additional payment obligations in connection with this Settlement Agreement.

Section 23.3    Funding Terms.    The NFL Parties' payment obligations will be funded as follows:

(a)    Education Fund.    No later than thirty (30) days after the Effective Date, the NFL Parties will pay, or cause to be paid, a total of Ten Million United States dollars (U.S. $10,000,000) into the Settlement Trust Account, as set forth in Section 23.5, for transfer by the Trustee into the Education Fund.

(b)    Monetary Award Fund.    The NFL Parties will pay, or cause to be paid six initial monthly installments of Twenty Million United States dollars (U.S. $20,000,000) each, into the Settlement Trust Account for transfer by the Trustee into the Monetary Award Fund, beginning no later than thirty (30) days after the Effective Date. If additional funds are necessary in any given month during this six month period, they shall be requested and paid in accordance with the procedures set forth in section

79

23.3(b)(i)-(iv).  The Claims Administrator shall provide in writing to the NFL Parties and Co-Lead Class Counsel a monthly report for this initial six month period that includes an accounting of the items set forth in Section 23.3(b)(i)(1)-(5).

(i)    Beginning no later than thirty (30) days after the Effective Date,  on or before the 10th day of each month, the Claims Administrator shall provide in writing to the NFL Parties and Co-Lead Class Counsel a monthly funding request identifying the monetary amount necessary to pay all final and accrued Monetary Awards, Derivative Claimant Awards and the costs and expenses paid out of the Monetary Award Fund, as set forth in Section 23.5(d)(ii), and any additional amount necessary to maintain the Monetary Award Fund targeted reserve, as set forth in Section 23.3(b)(v), after all final and accrued Monetary Awards, Derivative Claimant Awards and costs and expenses are paid.  This monthly funding request shall provide, in addition to the total monetary amount requested, an accounting of:

(1)    The name of each Settlement Class Member with a final and accrued Monetary Awards or Derivative Claimant Award since the last monthly funding request, identification of his/her counsel, identification of the Award as a Monetary Award or Derivative Claimant Award, the Award amount, and identification of any "holdback" amount deducted from the Award as set forth in Sections 9.1(c)(ii) and 9.2(b)(ii), 11.3(g) and 11.3(h);

(2)    The amount of costs and expenses related to the appeals process, as set forth in ARTICLE IX, since the last monthly funding request;

(3)    The amount of costs and expenses of claims administration, as set forth in ARTICLE X, since the last monthly funding request;

(4)    The amount of costs and expenses of the Lien identification and resolution process, as set forth in ARTICLE XI, since the last monthly funding request;

(5)    The amount necessary to maintain the Monetary Award Fund targeted reserve, as set forth in Section 23.3(b)(v), after all final and accrued Monetary Awards, Derivative Claimant Awards, and costs and expenses are paid.

(ii)    Subject to the objection process set forth in Section 23.3(b)(iii), the NFL Parties will pay, or cause to be paid, within thirty (30) days of receipt of the written monthly funding request, a payment of the total amount requested into the Settlement Trust Account for transfer by the Trustee into the Monetary Award Fund.

(iii)    Within ten (10) days after receipt of the written monthly funding request, the NFL Parties and Co-Lead Class Counsel shall each notify the Claims Administrator in writing of any objection to any aspect of the funding request. If an objection is timely made, the NFL Parties, will pay, or cause to be paid, within thirty (30) days of such written monthly funding request, a payment of the undisputed

80

portion of the total amount requested into the Settlement Trust Account for transfer by the Trustee into the Monetary Award Fund.  The NFL Parties, Co-Lead Class Counsel and the Claims Administrator shall use their best efforts to resolve any objections within fifteen (15) days after receipt of the written monthly funding request.  If the NFL Parties, Co-Lead Class Counsel and the Claims Administrator are unable to resolve the objection within twenty (20) days after receipt of the written monthly funding request, the objecting party shall present the matter in writing to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof).

      (1)    After an agreement on the resolution of an objection, or a decision by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) resolving an objection by requiring the NFL Parties to pay, or cause to be paid, additional amounts beyond the undisputed portion of the monthly funding request, the NFL Parties will pay, or cause to be paid, the additional amounts beyond the undisputed portion of the monthly funding request within the longer of thirty (30) days of receiving the written monthly funding request or ten (10) days after resolution of the objection.

      (iv)    Within ten (10) days after transfer of funds into the Monetary Award Fund pursuant to a monthly funding request or decision of the Special Master or Court, as set forth in Section 23.3(b)(iii)(1), the Claims Administrator shall cause payment to be issued on all applicable final and accrued Monetary Awards, Derivative Claimant Awards and costs and expenses paid out of the Monetary Award Fund, as set forth in Section 23.5(d)(ii).

      (v)    The Monetary Award Fund shall maintain a targeted reserve, as set forth in Section 23.3(b)(v)(1), beyond the monetary amounts necessary to pay written monthly funding requests, which reserve may be used to pay any costs and expenses that must be satisfied pursuant to a contractual or other legal obligation before receipt of the monthly funding request amount and that are properly paid out of the Monetary Award Fund, as set forth in Section 23.5(d)(ii).  The Claims Administrator shall report promptly any such payments from the Monetary Award Fund to the NFL Parties and Co-Lead Class Counsel.  Either Co-Lead Class Counsel or Counsel for the NFL Parties may challenge the appropriateness of such payments, in which case the Court will determine (or may, in its discretion, refer the challenge to the Special Master to determine) the appropriateness of such payments.  If the Court or Special Master, as applicable, determines that any such payment constituted willful misconduct, the Court or Special Master may, in its discretion, deduct that amount from the compensation of the Claims Administrator.

      (1)    The Monetary Award Fund shall maintain a targeted reserve of:  (i) Ten Million United States dollars (U.S. $10,000,000) during the first through tenth years of the Monetary Award Fund; (ii) Five Million United States dollars (U.S. $5,000,000) during the eleventh through fiftieth years of the Monetary Award Fund; (iii) One Million United States dollars ($1,000,000) during the fifty-first through sixtieth years of the Monetary Award Fund; and (iv) Two Hundred and Fifty

Thousand United States dollars (U.S. $250,000) during the sixty-first through sixty-fifth years of the Monetary Award Fund.

(c)    During the eleventh, fifty-first, and sixty-first years of the Monetary Award Fund, monthly funding requests shall first be satisfied by the money constituting the balance in the Monetary Award Fund until the revised targeted reserve, as set forth in Section 23.3(b)(v)(1), is achieved. For example, in the eleventh year of the Monetary Award Fund, all monthly funding requests shall be paid from the Monetary Award Fund balance until the reserve is reduced to Five Million United States dollars ($5,000,000). The process for the monthly funding request shall otherwise remain as set forth in Section 23.3(b).

(d)    BAP Fund.    No later than thirty (30) days after the Effective Date, the NFL Parties will pay, or cause to be paid, a total of Thirty-Five Million United States dollars (U.S. $35,000,000) into the Settlement Trust Account for transfer by the Trustee into the BAP Fund. If at any point following the Effective Date until the expiration the five-year period for the provision of BAP Supplemental Benefits, as set forth in Sections 5.5 and 5.11, the balance of the BAP Fund falls below Ten Million United States dollars (U.S. $10,000,000), the NFL Parties, upon written notice from the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), who shall act upon application of the BAP Administrator, will pay, or cause to be paid, within thirty (30) days of such written notice, additional payments into the Settlement Trust Account for transfer by the Trustee into the BAP Fund in order to maintain a balance of no less than Ten Million United States dollars (U.S. $10,000,000), and no more than Eleven Million United States dollars (U.S. $11,000,000). Under no circumstances will the aggregate transfers to the BAP Fund exceed Seventy-Five Million United States dollars (U.S. $75,000,000) in total. Any funds remaining in the BAP Fund at the conclusion of the five-year period for the provision of BAP Supplemental Benefits, as set forth in Sections 5.5 and 5.11, shall be transferred to the Settlement Trust for transfer by the Trustee into the Monetary Award Fund.

(e)    Class Notice Costs.    No later than five (5) days after the date of the Preliminary Approval and Class Certification Order, the NFL Parties will pay, or cause to be paid, a total of Four Million United States dollars (U.S. $4,000,000) to Co-Lead Class Counsel for the Settlement Class Notice and related expenses, as set forth in Section 14.1.

(f)    Prepayment Right.    The NFL Parties will have the right (but not the obligation) to prepay, or cause to be prepaid, any of their payment obligations to the Funds under the Settlement Agreement. In connection with any such prepayment, the NFL Parties will designate in writing the payment obligation that is being prepaid and how such prepayment should affect the NFL Parties' remaining payment obligations (i.e., whether the amount prepaid should be credited against the next payment obligation or to one or more subsequent payment obligations or a combination thereof).

82

Section 23.4   No Interest or Inflation Adjustment.  For the avoidance of any doubt, the payments set forth in Section 23.1 will not be subject to any interest obligation or inflation adjustment.

Section 23.5   Settlement Trust

(a)     Promptly following the Effective Date, Co-Lead Class Counsel and Counsel for the NFL Parties will file a motion seeking the creation of a Settlement Trust under Delaware law and the appointment of the Trustee.  Co-Lead Class Counsel and Counsel for the NFL Parties will file a proposed Settlement Trust Agreement with the Court.

(b)     Co-Lead Class Counsel and Counsel for the NFL Parties will jointly recommend Citibank, N.A. as the Trustee, subject to the approval of the Court.  The Trustee may be replaced by joint motion made by Co-Lead Class Counsel and Counsel for the NFL Parties, and granted by the Court.  If the Trustee resigns, dies, is replaced, or is otherwise unable to continue employment in that position, Co-Lead Class Counsel and Counsel for the NFL Parties will agree to and jointly recommend a new proposed Trustee for appointment by the Court.

(c)     Upon Court approval of the proposed Settlement Trust Agreement, Co-Lead Class Counsel, the NFL Parties, the Trustee and the Special Master, will execute the Settlement Trust Agreement approved by the Court, thereby creating the Settlement Trust.  The Settlement Trust will be structured and operated in a manner so that it qualifies as a "qualified settlement fund" under §1.468B-1 of the Treasury Regulations promulgated under Sections 461(h) and 468B of the Internal Revenue Code of 1986, as amended.

(d)     The Settlement Trust will be composed of the Funds.  The Trustee will establish the Settlement Trust Account, into which the NFL Parties will make payments as required by this Settlement Agreement.  The Trustee will also establish three separate funds (the "Funds"), into which the Trustee will transfer funds at the direction of the Special Master (or the Claims Administrator after expiration of the term of the Special Master and extension(s) thereof) and pursuant to the terms of this Settlement Agreement and on which the Special Master (or the Claims Administrator after expiration of the term of the Special Master and any extension(s) thereof) will have signatory authority.  These Funds will constitute a single qualified settlement fund:

(i)     The BAP Fund, which will be used to make payments for the BAP, as set forth in ARTICLE V.

(ii)     The Monetary Award Fund, which will be used to make payments for:  (a) all Monetary Awards and Derivative Claimant Awards, as set forth in ARTICLE VI and ARTICLE VII; (b) certain costs and expenses of the appeals process, as set forth in ARTICLE IX; (c) costs and expenses of claims administration, as set forth in ARTICLE X; and (d) certain costs and expenses of the Lien identification and resolution process, as set forth in ARTICLE XI;

83

(iii)    The Education Fund, which will be used exclusively to make payments to support education programs and initiatives, as set forth in ARTICLE XII; and

(iv)    The Settlement Trust Account, which will be used solely to transfer funds into the Funds described above in Section 23.5(d)(i)-(iii).

(e)    The Settlement Trust will be managed by the Trustee as provided in the Settlement Trust Agreement, and both the Settlement Trust and Trustee will be subject to the continuing jurisdiction and supervision of the Court.  Each of the Funds will be maintained in separate bank accounts at one or more federally insured depository institutions approved by Co-Lead Class Counsel and Counsel for the NFL Parties.  The Trustee will have the authority to make payments from the Settlement Trust Account into the other Funds at the direction of the Special Master (or the Claims Administrator after expiration of the term of the Special Master and any extension(s) thereof) and to make disbursements from the Funds at the direction of the Special Master (or the Claims Administrator at the direction of Co-Lead Class Counsel and Counsel for the NFL Parties, after expiration of the term of the Special Master and any extension(s) thereof), and consistent with the terms of this Settlement Agreement and the Settlement Trust Agreement.

(f)    The Trustee will be responsible for making any necessary tax filings and payments of taxes, estimated taxes, and associated interest and penalties, if any, by the Settlement Trust and responding to any questions from, or audits regarding such taxes by, the Internal Revenue Service or any state or local tax authority. The Trustee also will be responsible for complying with all tax information reporting and withholding requirements with respect to payments made by the Settlement Trust, as well as paying any associated interest and penalties. Any such taxes, interest, and penalty payments will be paid by the Trustee from the Monetary Award Fund.

Section 23.6    Funds Investment

(a)    To the extent funds are available for investment, amounts deposited in each of the Funds will be invested conservatively in a manner designed to assure timely availability of funds, protection of principal and avoidance of concentration risk.

(b)    Any earnings attributable to the BAP Fund, the Monetary Award Fund, and/or the Education Fund will be retained in the respective Fund.

Section 23.7    Attorneys' Fees Qualified Settlement Fund.  Unless the Court directs otherwise, a separate fund (intended to qualify as a "qualified settlement fund" under §1.468B-1 of the Treasury Regulations promulgated under Sections 461(h) and 468B of the Internal Revenue Code of 1986, as amended) will be established out of which attorneys' fees will be paid pursuant to order of the Court, as set forth in ARTICLE XXI.  This separate qualified settlement fund will be established pursuant to order of the Court, and will operate under Court supervision and control.  This separate

84

qualified settlement fund will be separate from the qualified settlement fund described in Section 23.5(c) and any of the Funds described therein, and will not be administered by the Trustee. The Court will determine the form and manner of administering this fund, in which the NFL Parties will have no reversionary interest.

Section 23.8   Trustee Satisfaction of Monetary Obligations.   Wherever in this Settlement Agreement the Special Master, BAP Administrator, Claims Administrator, or Lien Resolution Administrator is authorized or directed, as the context may reflect, to pay, disburse, reimburse, hold, waive, or satisfy any monetary obligation provided for or recognized under any of the terms of this Settlement Agreement, the Special Master, BAP Administrator, Claims Administrator, or Lien Resolution Administrator may comply with such authorization or direction by directing the Trustee to, as appropriate, pay, disburse, reimburse, hold, waive, or satisfy any such monetary obligation.

## ARTICLE XXIV
### Denial of Wrongdoing, No Admission of Liability

Section 24.1   This Settlement Agreement, whether or not the Class Action Settlement becomes effective, is for settlement purposes only and is to be construed solely as a reflection of the Parties' desire to facilitate a resolution of the Class Action Complaint and of the Released Claims and Related Lawsuits. The NFL Parties expressly deny that they, or the other Released Parties, have violated any duty to, breached any obligation to, committed any fraud on, or otherwise engaged in any wrongdoing with respect to, the Class and Subclass Representatives, the Settlement Class, any Settlement Class Member, or any Opt Out, and expressly deny the allegations asserted in the Class Action Complaint and Related Lawsuits, and deny any and all liability related thereto. Neither this Settlement Agreement nor any actions undertaken by the NFL Parties or the Released Parties in the negotiation, execution, or satisfaction of this Settlement Agreement will constitute, or be construed as, an admission of any liability or wrongdoing, or recognition of the validity of any claim made by the Class and Subclass Representatives, the Settlement Class, any Settlement Class Member, or any Opt Out, in this or any other action or proceeding.

Section 24.2   In no event will the Settlement Agreement, whether or not the Class Action Settlement becomes effective, or any of its provisions, or any negotiations, statements, or court proceedings relating to its provisions, or any actions undertaken in this Settlement Agreement, in any way be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, of any kind, or used in any other fashion, by the Class and Subclass Representatives, the Settlement Class, any Settlement Class Member, Class Counsel, or any of the Released Parties in any litigation, action, hearing, or any judicial, arbitral, administrative, regulatory or other proceeding for any purpose, except a proceeding to resolve a dispute arising under, or to enforce, the Settlement Agreement.   Without limiting the foregoing, neither the Settlement Agreement nor any of its provisions, negotiations, statements, or court proceedings relating to its provisions, nor any actions undertaken in this Settlement Agreement, will be construed as, offered as, received as, used as, or deemed to be

evidence, admissible or otherwise, or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Released Parties, or as a waiver by the Released Parties of any applicable defense, or as a waiver by the Class and Subclass Representatives, the Settlement Class, any Settlement Class Member of any claims, causes of action, or remedies.  This Section 24.2 shall not apply to disputes between the NFL Parties and their insurers, as to which the NFL Parties reserve all rights.

## ARTICLE XXV
## Representations and Warranties

Section 25.1    Authority.  Class Counsel represent and warrant as of the Settlement Date that they have authority to enter into this Settlement Agreement on behalf of the Class and Subclass Representatives.

Section 25.2    Class and Subclass Representatives.  Each of the Class and Subclass Representatives, through a duly authorized representative, represents and warrants that he:  (i) has agreed to serve as a representative of the Settlement Class proposed to be certified herein; (ii) is willing, able, and ready to perform all of the duties and obligations as a representative of the Settlement Class; (iii) is familiar with the pleadings in In re: National Football League Players' Concussion Injury Litigation, MDL 2323, or has had the contents of such pleadings described to him; (iv) is familiar with the terms of this Settlement Agreement, including the exhibits attached to this Settlement Agreement, or has received a description of the Settlement Agreement, including the exhibits attached to this Settlement Agreement, from Class Counsel, and has agreed to its terms; (v) has consulted with, and received legal advice from, Class Counsel about the litigation, this Settlement Agreement (including the advisability of entering into this Settlement Agreement and its Releases and the legal effects of this Settlement Agreements and its Releases), and the obligations of a representative of the Settlement Class; (vi) has authorized Class Counsel to execute this Settlement Agreement on his behalf; and (vii) will remain in and not request exclusion from the Settlement Class and will serve as a representative of the Settlement Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that such Class or Subclass Representative cannot represent the Settlement Class.

Section 25.3    NFL Parties.  The NFL Parties represent and warrant as of the Settlement Date that:  (i) they have all requisite corporate power and authority to execute, deliver, and perform this Settlement Agreement; (ii) the execution, delivery, and performance by the NFL Parties of this Settlement Agreement has been duly authorized by all necessary corporate action; (iii) this Settlement Agreement has been duly and validly executed and delivered by the NFL Parties; and (iv) this Settlement Agreement constitutes their legal, valid, and binding obligation.

Section 25.4    NFL Parties' Representation and Warranty Regarding Member Clubs.  The NFL Parties represent and warrant as of the Settlement Date that the

86

current Member Clubs have duly authorized the execution, delivery, and performance by the NFL Parties of this Settlement Agreement.

Section 25.5    <u>Investigation and Future Events</u>.    The Parties and their counsel represent and warrant that they have each performed an independent investigation of the allegations of fact and law made in connection with the Class Action Complaint in <u>In re: National Football League Players' Concussion Injury Litigation</u>, MDL No. 2323, and may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of this Settlement Agreement.  Nevertheless, the Parties intend to resolve their disputes pursuant to the terms of this Settlement Agreement and thus, in furtherance of their intentions, this Settlement Agreement will remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Settlement Agreement will not be subject to rescission or modification by reason of any change or difference in facts or law.

Section 25.6    <u>Security</u>

(a)    The NFL Parties represent and warrant that the NFL currently maintains, and will continue to maintain, an investment grade rating on its Stadium Program Bonds, as rated by Fitch Ratings.  This investment grade rating shall serve as security that the NFL Parties will meet their payment obligations as set forth in Section 23.3 for the first ten years of the Settlement following the Effective Date.

(b)    If the identity of the rating agency that rates the NFL's Stadium Program Bonds changes during the first ten years of the Settlement from the Effective Date, then an investment grade rating by the new rating agency on the NFL's Stadium Program Bonds will satisfy the NFL Parties' obligations under Section 25.6(a).

(c)    The applicable definition of "investment grade" will be as provided by the rating agency rating the  NFL's Stadium Program Bonds.

(d)    No later than the tenth anniversary of the Effective Date (the "Tenth Anniversary Date"), the NFL Parties shall establish, or cause to be established, a special-purpose Delaware statutory trust (the "Statutory Trust"), with an independent trustee, that will be funded and managed as follows:  the NFL Parties shall contribute cash to the Statutory Trust so that as of the Tenth Anniversary Date, it shall contain funds that, in the reasonable belief of the NFL Parties, and after taking into account reasonably expected investment returns over time, will be sufficient to satisfy the NFL Parties' remaining anticipated payment obligations, as set forth in Section 23.5(d)(ii), as they come due.  In the event that the remaining anticipated payment obligations on the Tenth Anniversary Date materially exceed the NFL Parties' reasonable expectations as of the Effective Date due to participation rates and/or the claims experience during the first ten years of the Settlement, the NFL Parties may apply to the Court to fund the Statutory Trust as follows: seventy percent of the required funds to be contributed by the NFL Parties to the Statutory Trust by the Tenth Anniversary Date and the remaining thirty percent of the required funds to be contributed on a three-year

87

schedule set by the Court so that all required funds are deposited in the Statutory Trust no later than the thirteenth anniversary of the Effective Date. The NFL Parties shall not have the right to pledge or assign the property of the Statutory Trust (including any investment returns earned thereon and remaining in the Statutory Trust, as provided herein) to any third-party, and, as contemplated by §3805(b) of Title 12 of the Delaware Code, no other creditor of any of the NFL Parties shall have any right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the Statutory Trust. The documents governing the Statutory Trust will provide that the NFL Parties may direct how the funds in the Statutory Trust are invested from time to time, but the Trustee will be instructed to permit withdrawals of funds from the Statutory Trust only for the limited purposes of: (i) satisfying the NFL Parties' payment obligations under this Settlement Agreement as set forth in Section 23.5(d)(ii); (ii) the NFL Parties' costs and expenses related to the Statutory Trust, including, without limitation, taxes, investment-related expenses and administrative costs; (iii) the return of excess monies in the Statutory Trust to the NFL Parties based on attaining investment returns exceeding the amount necessary to satisfy the NFL Parties' remaining anticipated payment obligations, but only upon Court approval; (iv) the return of excess monies in the Statutory Trust to the NFL Parties based on reductions to the NFL Parties' remaining anticipated payment obligations, but only upon Court approval; or (v) upon the completion of the NFL Parties' payment obligations, as set forth in this Settlement Agreement, but only upon Court approval. To the extent that Court approval is required for the withdrawal of funds from the Statutory Trust, such approval shall be granted unless there has been either a material default on the NFL Parties' payment obligations within the prior thirty (30) days, or upon a showing, by clear and convincing evidence, that the proposed withdrawal would materially impair the Settlement Agreement.

(e)     In the event of a material default by the NFL Parties in satisfying their payment obligations as set forth in this Settlement Agreement, and the NFL Parties' failure to cure any such material default within sixty (60) days of written notification of such default by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel shall have the right to petition the Court to make a finding that there has been a material, uncured default in satisfying the NFL Parties' payment obligations and to enter an order directing the NFL Parties to meet their payment obligations. Beginning on the Tenth Anniversary Date, any such petition by Co-Lead Class Counsel may request that the Court direct the NFL Parties to meet their payment obligations with the funds available in the Statutory Trust established by the NFL Parties pursuant to Section 25.6(d).

(f)     The NFL Parties historically have maintained liability insurance policies under which they are seeking coverage and are pursuing their rights to recover under said policies. It is understood that if the NFL Parties secure funding commitments from one or more insurers under their historical policies, or a court order obligating one or more such insurers to fund in whole or in part certain of the NFL Parties' obligations under this Settlement Agreement, after such insurance funding is deposited into the Statutory Trust, the NFL Parties may seek Court approval to reduce, dollar-for-dollar, the equivalent amount of such funding for anticipated remaining liabilities that otherwise would be required to be deposited in the Statutory Trust by the

NFL Parties pursuant to Section 25.6(d). In addition, if the NFL Parties obtain additional insurance policies from one or more third-party insurers with a rating of A or above, to insure in whole or in part certain of their obligations under the Settlement, the NFL Parties may seek Court approval to reduce, dollar-for-dollar, the equivalent amount of funding for anticipated remaining liabilities that otherwise would be required to be deposited in the Statutory Trust by the NFL Parties pursuant to Section 25.6(d). To do so, the NFL Parties must demonstrate to the Court that the Court or the Statutory Trust provided for in Section 25.6(d) will have sufficient control over such insurance policies and their proceeds to ensure that the proceeds are available to meet the NFL Parties' payment obligations, if necessary.

(g) In the event the Court enters an order pursuant to Section 25.6(e) directing the NFL Parties to meet their payment obligations pursuant to Section 23.3 and the NFL Parties fail materially to comply with such Order, as set forth in Section 25.6(e), Co-Lead Class Counsel may request that the Court provide the NFL Parties sixty (60) days to show cause why the Court shall not render null and void the Releases and Covenants Not to Sue provided to Released Parties, as set forth in Section 18.1, by Settlement Class Members who: (i) have received a final, favorable Notice of Registration Determination, as set forth in Section 4.3, and have not received a final and accrued Monetary Award or final and accrued Derivative Claimant Award as of the date of such application; or (ii) who have only received a final and accrued Monetary Award for a Level 1.5 Neurocognitive Impairment or a final and accrued Derivative Claimant Award for a Level 1.5 Neurocognitive Impairment as of the date of such application. For the avoidance of any doubt, all other Releases and Covenants Not to Sue shall remain effective. In the event that a Settlement Class Member's Release and Covenant Not to Sue is rendered null and void, such Settlement Class Member shall not challenge, if applicable, any Released Party's right to offset any final judgment received by the Settlement Class Member as a result of Section 25.6(g)(ii) in the amount of the Monetary Award or Derivative Claimant Award received by the Settlement Class Member. For the avoidance of any doubt, nothing in this subsection 25.6, shall affect any rights or obligations of Settlement Class Members and Released Parties as otherwise provided in, or with respect to, this Settlement Agreement or any breach thereof.

### ARTICLE XXVI
### Cooperation

Section 26.1  The Parties will cooperate, assist, and undertake all reasonable actions to accomplish the steps contemplated by this Settlement Agreement and to implement the Class Action Settlement on the terms and conditions provided herein.

Section 26.2  The Parties agree to take all actions necessary to obtain final approval of the Class Action Settlement and entry of a Final Order and Judgment, including the terms and provisions described in this Settlement Agreement, and, upon final approval and entry of such order, an order dismissing the Class Action Complaint

and Related Lawsuits with prejudice as to the Class and Subclass Representatives, the Settlement Class, and each Settlement Class Member.

Section 26.3   The Parties and their counsel agree to support the final approval and implementation of this Settlement Agreement and defend it against objections, appeal, collateral attack or any efforts to hinder or delay its approval and implementation.   Neither the Parties nor their counsel, directly or indirectly, will encourage any person to object to the Class Action Settlement or assist them in doing so.

## ARTICLE XXVII
### Continuing Jurisdiction

Section 27.1   Pursuant to the Final Order and Judgment, the Court will retain continuing and exclusive jurisdiction over the Parties and their counsel, all Settlement Class Members, the Special Master, BAP Administrator, Claims Administrator, Liens Resolution Administrator, Appeals Advisory Panel, Appeals Advisory Panel Consultants, and Trustee with respect to the terms of the Settlement Agreement.  Any disputes or controversies arising out of, or related to, the interpretation, implementation, administration, and enforcement of this Settlement Agreement will be made by motion to the Court.  In addition, the Parties, including each Settlement Class Member, are hereby deemed to have submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of, or relating to, this Settlement Agreement.  The terms of the Settlement Agreement will be incorporated into the Final Order and Judgment of the Court, which will allow that Final Order and Judgment to serve as an enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to the Settlement Agreement.

(a)   Notwithstanding any contrary law applicable to the underlying claims, this Settlement Agreement and the Releases hereunder will be interpreted and enforced in accordance with the laws of the State of New York, without regard to conflict of law principles.

## ARTICLE XXVIII
### Role of Co-Lead Class Counsel, Class Counsel and Subclass Counsel

Section 28.1   Co-Lead Class Counsel and Class Counsel acknowledge that, under applicable law, their respective duty is to the entire Settlement Class, to act in the best interest of the Settlement Class as a whole, with respect to promoting, supporting, and effectuating, as fair, adequate, and reasonable, the approval, implementation, and administration of the settlement embodied in the Settlement Agreement, and that their professional responsibilities as attorneys are to be viewed in this light, under the ongoing supervision and jurisdiction of the Court that appoints them to represent the interests of the Settlement Class.

Section 28.2   Subclass Counsel acknowledge that, under applicable law, their respective duty is to their respective Subclasses, to act in the best interest of the respective Subclass as a whole, with respect to promoting, supporting, and effectuating,

90

as fair, adequate, and reasonable, the approval, implementation, and administration of the settlement embodied in the Settlement Agreement, and that their professional responsibilities as attorneys are to be viewed in this light, under the ongoing supervision and jurisdiction of the Court that appoints them to represent the interests of the respective Subclass.

## ARTICLE XXIX
## Bargained-For Benefits

Section 29.1   Nothing in the Collective Bargaining Agreement will preclude Settlement Class Members from receiving benefits under the Settlement Agreement.  In addition, the fact that a Settlement Class Member has signed, or will sign, a release and covenant not to sue pursuant to Article 65 of the 2011 Collective Bargaining Agreement will not preclude the Settlement Class Member from receiving benefits under the Settlement Agreement, and the NFL Parties agree not to assert any defense or objection to the Settlement Class Member's receipt of benefits under the Settlement Agreement on the ground that he executed a release and covenant not to sue pursuant to Article 65 of the 2011 Collective Bargaining Agreement.

Section 29.2   A Retired NFL Football Player's participation in the Settlement Agreement will not in any way affect his eligibility for bargained-for benefits under the Collective Bargaining Agreement or the terms or conditions under which those benefits are provided, except as set forth in Section 18.1.

## ARTICLE XXX
## Miscellaneous Provisions

Section 30.1   No Assignment of Claims.  Neither the Settlement Class nor any Class or Subclass Representative or Settlement Class Member has assigned, will assign, or will attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint.  Any such assignment, or attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint will be void, invalid, and of no force and effect and the Claims Administrator shall not recognize any such action.

Section 30.2   Individual Counsel

(a)   Counsel individually representing a Settlement Class Member shall provide notice of his or her representation to the Claims Administrator within thirty (30) days of the Effective Date or within thirty (30) days of the retention if Counsel is retained after the Effective Date.  Counsel acting on his or her client's behalf may submit all claim forms, proof, correspondence, or other documents to the Special Master, BAP Administrator, Claims Administrator or Lien Resolution Administrator on behalf of that Settlement Class Member; provided, however, that counsel individually representing a Settlement Class Member may not sign on behalf of that Settlement Class Member:  (i) an Opt Out request; (ii) a revocation of an Opt Out; (iii) an objection, as set

91

forth in Section 14.3; (iv) a Claim Form, (v) a Derivative Claim Form, or (vi) an Appeals Form.

(b)     Where a Settlement Class Member indicates in writing to the Special Master, BAP Administrator, Claims Administrator or Lien Resolution Administrator that he or she is individually represented by counsel, the Special Master, BAP Administrator, Claims Administrator or Lien Resolution Administrator will copy the counsel individually representing a Settlement Class Member on any written communications with the Settlement Class Member.  Any communications, whether written or oral, by the Special Master, BAP Administrator, Claims Administrator or Lien Resolution Administrator with counsel individually representing a Settlement Class Member will be deemed to be a communication directly with such individually represented Settlement Class Member.

Section 30.3    Integration.  This Settlement Agreement and its exhibits, attachments, and appendices will constitute the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, letters, conversations, agreements, term sheets, and understandings, whether written or oral, relating to the subject matter of this Settlement Agreement, including the Settlement Term Sheet dated August 29, 2013.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, agreement, arrangement, or understanding, whether written or oral, concerning any part or all of the subject matter of this Settlement Agreement has been made or relied on except as expressly set forth in this Settlement Agreement.

Section 30.4    Headings.  The headings used in this Settlement Agreement are intended for the convenience of the reader only and will not affect the meaning or interpretation of this Settlement Agreement in any manner.  Any inconsistency between the headings used in this Settlement Agreement and the text of the Articles and Sections of this Settlement Agreement will be resolved in favor of the text.

Section 30.5    Incorporation of Exhibits.  All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, any inconsistency between this Settlement Agreement and any attachments, exhibits, or appendices hereto will be resolved in favor of this Settlement Agreement.

Section 30.6    Amendment.  This Settlement Agreement will not be subject to any change, modification, amendment, or addition without the express written consent of Class Counsel and Counsel for the NFL Parties, on behalf of all Parties to this Settlement Agreement, and upon Court approval.

Section 30.7    Mutual Preparation.  The Parties have negotiated all of the terms and conditions of this Settlement Agreement at arm's length.  Neither the Settlement Class Members nor the NFL Parties, nor any one of them, nor any of their counsel will be considered to be the sole drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or

92

construction that would or might cause any provision to be construed against the drafter of this Settlement Agreement. This Settlement Agreement will be deemed to have been mutually prepared by the Parties and will not be construed against any of them by reason of authorship.

Section 30.8  Beneficiaries. This Settlement Agreement will be binding upon the Parties and will inure to the benefit of the Settlement Class Members and the Released Parties. All Released Parties who are not the NFL Parties are intended third-party beneficiaries who are entitled to enforce the terms of the Releases and Covenant Not to Sue set forth in ARTICLE XVIII. No provision in this Settlement Agreement is intended to create any third-party beneficiary to this Settlement Agreement other than the Released Parties. Nothing expressed or implied in this Settlement Agreement is intended to or will be construed to confer upon or give any person or entity other than Class and Subclass Representatives, the Settlement Class Members, Class Counsel, the NFL Parties, the Released Parties, and Counsel for the NFL Parties, any right or remedy under or by reason of this Settlement Agreement.

Section 30.9  Extensions of Time. Co-Lead Class Counsel and Counsel for the NFL Parties may agree in writing, subject to approval of the Court where required, to reasonable extensions of time to implement the provisions of this Settlement Agreement.

Section 30.10  Execution in Counterparts. This Settlement Agreement may be executed in counterparts, and a facsimile signature will be deemed an original signature for purposes of this Settlement Agreement.

Section 30.11  Good Faith Implementation. Co-Lead Class Counsel and Counsel for the NFL Parties will undertake to implement the terms of this Settlement Agreement in good faith. Before filing any motion or petition in the Court raising a dispute arising out of or related to this Settlement Agreement, Co-Lead Class Counsel and Counsel for the NFL Parties will consult with each other in good faith and certify to the Court that they have conferred in good faith.

Section 30.12  Force Majeure. The Parties will be excused from any failure to perform timely any obligation hereunder to the extent such failure is caused by war, acts of public enemies or terrorists, strikes or other labor disturbances, fires, floods, acts of God, or any causes of the like or different kind beyond the reasonable control of the Parties.

Section 30.13  Waiver. The waiver by any Party of any breach of this Settlement Agreement by another Party will not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

Section 30.14  Tax Consequences. No opinion regarding the tax consequences of this Settlement Agreement to any individual Settlement Class Member is being given or will be given by the NFL Parties, Counsel for the NFL Parties, Class

and Subclass Representatives, Class Counsel, nor is any representation or warranty in this regard made by virtue of this Settlement Agreement. Settlement Class Members must consult their own tax advisors regarding the tax consequences of the Settlement Agreement, including any payments provided hereunder and any tax reporting obligations they may have with respect thereto. Each Settlement Class Member's tax obligations, and the determination thereof, are his or her sole responsibility, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member. The NFL Parties, Counsel for the NFL Parties, Class Counsel will have no liability or responsibility whatsoever for any such tax consequences resulting from payments under this Settlement Agreement. To the extent required by law, the Claims Administrator will report payments made under the Settlement Agreement to the appropriate authorities.

Section 30.15 <u>Issuance of Notices and Submission of Materials</u>. In any instance in which this Settlement Agreement requires the issuance of any notice regarding registration, a claim or an award, unless specified otherwise in this Settlement Agreement, such notice must be issued by: (a) online submission through any secure web-based portal established by the Claims Administrator for this purpose to the Settlement Class Member or NFL Parties, which shall be accompanied by an email certifying receipt; or (b) U.S. mail (or its foreign equivalent). In any instance in which this Settlement Agreement requires submission of materials by or on behalf of a Settlement Class Member or the NFL Parties, unless specified otherwise in this Settlement Agreement, such submission must be made by: (a) online submission through any secure web-based portal established by the Claims Administrator for this purpose; or (b) U.S. mail (or its foreign equivalent); or (c) delivery. Written notice to the Class Representatives or Co-Lead Class Counsel must be given to: Christopher A. Seeger, Seeger Weiss LLP, 77 Water Street, New York, New York 10005; and Sol Weiss, Anapol Schwartz, 1710 Spruce Street, Philadelphia, PA 19103. Written notice to the NFL Parties or Counsel for the NFL Parties must be given to: Jeffrey Pash, Executive Vice President and General Counsel, National Football League, 345 Park Avenue, New York, New York 10154; Anastasia Danias, Senior Vice President and Chief Litigation Officer, National Football League, 345 Park Avenue, New York, New York 10154; and Brad S. Karp, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, or such other person or persons as shall be designated by the Parties.

Section 30.16 <u>Party Burden</u>.    Unless explicitly provided otherwise, whenever a showing is required to be made in this Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

Agreed to as of this 25th day of June, 2014.

NATIONAL FOOTBALL LEAGUE, NFL PROPERTIES LLC

By: _____
Jeffrey Pash
NFL Executive Vice President


COUNSEL FOR THE NFL PARTIES

By: _____
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Brad S. Karp
Theodore V. Wells, Jr.
Bruce Birenboim
Beth A. Wilkinson
Lynn B. Bayard


CO-LEAD CLASS COUNSEL

By: _____         By: _____
SEEGER WEISS LLP                            ANAPOL SCHWARTZ
Christopher A. Seeger                         Sol Weiss

CLASS COUNSEL

By: _____         By: _____
PODHURST ORSECK, P.A.                 LOCKS LAW FIRM
Steven C. Marks                                  Gene Locks

SUBCLASS COUNSEL

By: _____         By: _____
LEVIN, FISHBEIN, SEDRAN &            NASTLAW LLC
BERMAN                                            Dianne M. Nast
Arnold Levin


95

Section 30.16 <u>Party Burden</u>.    Unless explicitly provided otherwise, whenever a showing is required to be made in this Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

Agreed to as of this 25th day of June, 2014.

NATIONAL FOOTBALL LEAGUE, NFL PROPERTIES LLC

By: _____
    Jeffrey Pash
    NFL Executive Vice President


COUNSEL FOR THE NFL PARTIES

By: _____
    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
    Brad S. Karp
    Theodore V. Wells, Jr.
    Bruce Birenboim
    Beth A. Wilkinson
    Lynn B. Bayard


CO-LEAD CLASS COUNSEL

By: _____      By: _____
    SEEGER WEISS LLP          ANAPOL SCHWARTZ
    Christopher A. Seeger        Sol Weiss

CLASS COUNSEL

By: _____      By: _____
    PODHURST ORSECK, P.A.      LOCKS LAW FIRM
    Steven C. Marks          Gene Locks

SUBCLASS COUNSEL

By: _____      By: _____
    LEVIN, FISHBEIN, SEDRAN &    NASTLAW LLC
    BERMAN              Dianne M. Nast
    Arnold Levin

95

Section 30.16 <u>Party Burden</u>.   Unless explicitly provided otherwise, whenever a showing is required to be made in this Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

Agreed to as of this 25th day of June, 2014.

NATIONAL FOOTBALL LEAGUE, NFL PROPERTIES LLC

By: _____
    Jeffrey Pash
    NFL Executive Vice President


COUNSEL FOR THE NFL PARTIES

By: _____
    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
    Brad S. Karp
    Theodore V. Wells, Jr.
    Bruce Birenboim
    Beth A. Wilkinson
    Lynn B. Bayard


CO-LEAD CLASS COUNSEL

By: _____      By: _____
    SEEGER WEISS LLP          ANAPOL SCHWARTZ
    Christopher A. Seeger        Sol Weiss

CLASS COUNSEL

By: _____      By: _____
    PODHURST ORSECK, P.A.       LOCKS LAW FIRM
    Steven C. Marks           Gene Locks

SUBCLASS COUNSEL

By: _____      By: _____
    LEVIN, FISHBEIN, SEDRAN &     NASTLAW LLC
    BERMAN               Dianne M. Nast
    Arnold Levin

95

Date Filed: 10/08/2025    Page: 1383    Document: 20-1    Case: 25-2271

Section 30.16 <u>Party Burden</u>.    Unless explicitly provided otherwise, whenever a showing is required to be made in this Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

Agreed to as of this 25th day of June, 2014.

NATIONAL FOOTBALL LEAGUE, NFL PROPERTIES LLC

By: _____
    Jeffrey Pash
    NFL Executive Vice President


COUNSEL FOR THE NFL PARTIES

By: _____
    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
    Brad S. Karp
    Theodore V. Wells, Jr.
    Bruce Birenboim
    Beth A. Wilkinson
    Lynn B. Bayard


CO-LEAD CLASS COUNSEL

By: _____    By: _____
    SEEGER WEISS LLP            ANAPOL SCHWARTZ
    Christopher A. Seeger         Sol Weiss

CLASS COUNSEL

By: _____    By: _____
    PODHURST ORSECK, P.A.        LOCKS LAW FIRM
    Steven C. Marks            Gene Locks

SUBCLASS COUNSEL

By: _____    By: _____
    LEVIN, FISHBEIN, SEDRAN &     NASTLAW LLC
    BERMAN                 Dianne M. Nast
    Arnold Levin

Case: 25-2271      Document: 20-1      Page: 1385      Date Filed: 10/08/2025

Section 30.16 <u>Party Burden</u>.   Unless explicitly provided otherwise, whenever a showing is required to be made in this Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

Agreed to as of this 25th day of June, 2014.

NATIONAL FOOTBALL LEAGUE , NFL PROPERTIES LLC

By: _____
    Jeffrey Pash
    NFL Executive Vice President


COUNSEL FOR THE NFL PARTIES

By: _____
    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
    Brad S. Karp
    Theodore V. Wells, Jr.
    Bruce Birenboim
    Beth A. Wilkinson
    Lynn B. Bayard


CO-LEAD CLASS COUNSEL

By: _____
    SEEGER WEISS LLP
    Christopher A. Seeger

CLASS COUNSEL

By: _____
    PODHURST ORSECK, P.A.
    Steven C. Marks

SUBCLASS COUNSEL

By: _____
    LEVIN, FISHBEIN, SEDRAN &
    BERMAN
    Arnold Levin

By: _____
    ANAPOL SCHWARTZ
    Sol Weiss

By: _____
    LOCKS LAW FIRM
    Gene Locks

By: _____
    NASTLAW LLC
    Dianne M. Nast

95

Section 30.16 <u>Party Burden</u>.    Unless explicitly provided otherwise, whenever a showing is required to be made in this Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

Agreed to as of this 25th day of June, 2014.

NATIONAL FOOTBALL LEAGUE, NFL PROPERTIES LLC

By: _____
     Jeffrey Pash
     NFL Executive Vice President


COUNSEL FOR THE NFL PARTIES

By: _____
     PAUL, WEISS, RIFKIND, WHARTON &
     GARRISON LLP
     Brad S. Karp
     Theodore V. Wells, Jr.
     Bruce Birenboim
     Beth A. Wilkinson
     Lynn B. Bayard


CO-LEAD CLASS COUNSEL

By: _____          By: _____
     SEEGER WEISS LLP                      ANAPOL SCHWARTZ
     Christopher A. Seeger                 Sol Weiss

CLASS COUNSEL

By: _____          By: _____
     PODHURST ORSECK, P.A.                LOCKS LAW FIRM
     Steven C. Marks                      Gene Locks

SUBCLASS COUNSEL

By: _____          By: _____
     LEVIN, FISHBEIN, SEDRAN &            NASTLAW LLC
     BERMAN                               Dianne M. Nast
     Arnold Levin


95

**-1410-**

Section 30.16 Party Burden.   Unless explicitly provided otherwise, whenever a showing is required to be made in this Settlement Agreement, the party seeking the relief shall bear the burden of substantiation.

Agreed to as of this 25th day of June, 2014.

NATIONAL FOOTBALL LEAGUE, NFL PROPERTIES LLC

By: _____
     Jeffrey Pash
     NFL Executive Vice President


COUNSEL FOR THE NFL PARTIES

By: _____
     PAUL, WEISS, RIFKIND, WHARTON &
     GARRISON LLP
     Brad S. Karp
     Theodore V. Wells, Jr.
     Bruce Birenboim
     Beth A. Wilkinson
     Lynn B. Bayard


CO-LEAD CLASS COUNSEL

By: _____          By: _____
     SEEGER WEISS LLP                      ANAPOL SCHWARTZ
     Christopher A. Seeger                 Sol Weiss

CLASS COUNSEL

By: _____          By: _____
     PODHURST ORSECK, P.A.                 LOCKS LAW FIRM
     Steven C. Marks                       Gene Locks

SUBCLASS COUNSEL

By: _____          By: _____
     LEVIN, FISHBEIN, SEDRAN &             NASTLAW LLC
     BERMAN                                Dianne M. Nast
     Arnold Levin

95

**-1411-**

# Exhibit B-1

| INJURY DEFINITIONS |
|---|

### DIAGNOSIS FOR BAP SUPPLEMENTAL BENEFITS

### Level 1 Neurocognitive Impairment

(a)    For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 1 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

(i)    Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a decline in cognitive function.

(ii)    Evidence of moderate cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

(iii)    The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating scale Category 0.5 (Questionable) in the areas of Community Affairs, Home & Hobbies, and Personal Care.

(iv)    The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

(b)    Level 1 Neurocognitive Impairment, for the purposes of this Settlement Agreement, may only be diagnosed by Qualified BAP Providers during a BAP baseline assessment examination, with agreement on the diagnosis by the Qualified BAP Providers.

Exhibit 1                                                                                     Page 1

## QUALIFYING DIAGNOSES FOR MONETARY AWARDS

1. **Level 1.5 Neurocognitive Impairment**

    (a)    For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 1.5 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

    (i)    Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a severe decline in cognitive function.

    (ii)    Evidence of a moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

    (iii)    The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 1.0 (Mild) in the areas of Community Affairs, Home & Hobbies, and Personal Care.  Such functional impairment shall be corroborated by documentary evidence (*e.g.*, medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.  In the event that no documentary evidence of functional impairment exists or is available, then (a) there must be evidence of moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and (b) the Retired NFL Football Player's functional impairment, as described above, must be corroborated by a third-party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.

    (iv)    The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

    (b)    For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 1.5 Neurocognitive Impairment, *i.e.*, early dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 1(a)(i)-(iv) above, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

    (c)    For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Level 1.5 Neurocognitive Impairment, *i.e.*, early dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 1(a)(i)-(iv)

above, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology or neurocognitive disorders, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

2.   **Level 2 Neurocognitive Impairment**

(a)   For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 2 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

(i)   Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a severe decline in cognitive function.

(ii)   Evidence of a severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

(iii)   The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 2.0 (Moderate) in the areas of Community Affairs, Home & Hobbies, and Personal Care.  Such functional impairment shall be corroborated by documentary evidence (*e.g.*, medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.  In the event that no documentary evidence of functional impairment exists or is available, then (a) there must be evidence of severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and (b) the Retired NFL Football Player's functional impairment, as described above, must be corroborated by a third-party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.

(iv)   The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

(b)   For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 2 Neurocognitive Impairment, *i.e.*, moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) above, unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) is medically unnecessary because the Retired NFL Football Player's dementia is so severe, made by a Qualified MAF Physician or a board-certified

Exhibit 1                                                                                                              Page 3

or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(c)    For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Level 2 Neurocognitive Impairment, *i.e.*, moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) above, unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) was medically unnecessary because the Retired NFL Football Player's dementia was so severe, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology or neurocognitive disorders, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

3.    **Alzheimer's Disease**

(a)    For living Retired NFL Football Players, a diagnosis while living of the specific disease of Alzheimer's Disease as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), or a diagnosis of Major Neurocognitive Disorder due to probable Alzheimer's Disease as defined in the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b)    For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Major Neurocognitive Disorder due to probable Alzheimer's Disease consistent with the definition in *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5), or a diagnosis of Alzheimer's Disease, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified  neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

4.    **Parkinson's Disease**

(a)    For living Retired NFL Football Players, a diagnosis while living of the specific disease of Parkinson's Disease as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), or a diagnosis of Major Neurocognitive Disorder probably due to Parkinson's Disease as defined in the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b)    For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Parkinson's Disease, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified  neurologist, neurosurgeon, or other neuro-specialist

Exhibit 1                                                                                                        Page 4

physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

5.    **Death with Chronic Traumatic Encephalopathy (CTE)**

For Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order, a post-mortem diagnosis of CTE made by a board-certified neuropathologist.

6.    **Amyotrophic Lateral Sclerosis (ALS)**

(a)    For living Retired NFL Football Players, a diagnosis while living of the specific disease of Amyotrophic Lateral Sclerosis, also known as Lou Gehrig's Disease ("ALS"), as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9) or the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b)    For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of ALS, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified  neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

Exhibit 1                                                                                      Page 5

-1417-

# Exhibit B-2

**BASELINE NEUROPSYCHOLOGICAL TEST BATTERY AND SPECIFIC IMPAIRMENT CRITERIA FOR RETIRED NFL FOOTBALL PLAYERS**

**Section 1. Test Battery**

| **Estimating Premorbid Intellectual Ability** | **Learning and Memory (6 scores)** |
|---|---|
| ACS Test of Premorbid Functioning (TOPF) | WMS-IV Logical Memory I |
| **Complex Attention/Processing Speed (6 scores)** | WMS-IV Logical Memory II |
| WAIS-IV Digit Span | WMS-IV Verbal Paired Associates I |
| WAIS-IV Arithmetic | WMS-IV Verbal Paired Associates II |
| WAIS-IV Letter Number Sequencing | WMS-IV Visual Reproduction I |
| WAIS-IV Coding | WMS-IV Visual Reproduction II |
|  |  |
| WAIS-IV Symbol Search | **Language (3 scores)** |
| WAIS-IV Cancellation | Boston Naming Test |
| **Executive Functioning (4 scores)** | Category Fluency (Animal Naming) |
| Verbal Fluency (FAS) | BDAE Complex Ideational Material |
| Trails B | **Spatial-Perceptual (3 scores)** |
| Booklet Category Test | WAIS-IV Block Design |
| WAIS-IV Similarities | WAIS-IV Visual Puzzles |
| **Effort/Performance Validity (8 scores)** | WAIS-IV Matrix Reasoning |
| *ACS Effort Scores* | **Mental Health** |
| ACS-WAIS-IV Reliable Digit Span | MMPI-2RF |
| ACS-WMS-IV Logical Memory Recognition | Mini International Neuropsychiatric Interview |
| ACS-WMS-IV Verbal Paired Associates Recognition |  |
| ACS-WMS-IV Visual Reproduction Recognition |  |
| ACS-Word Choice |  |
| *Additional Effort Tests* |  |
| Test of Memory Malingering (TOMM) |  |
| Medical Symptom Validity Test (MSVT) |  |

Exhibit 2                                                                                          Page 1

-1419-

**Section 2: Evaluate Performance Validity**

Freestanding, embedded and regression based performance validity metrics will be administered to each Retired NFL Football Player during baseline and, if relevant, subsequent neuropsychological examinations. There will be at least seven performance validity metrics utilized during each assessment. The specific performance validity metrics utilized will not be released to the public in order to maintain the highest standards of assessment validity. The performance validity metrics employed will be rotated at intervals determined by the Appeals Advisory Panel in consultation with Co-Lead Class Counsel and Counsel for the NFL Parties.

Each neuropsychological examiner must complete a checklist of validity criteria as set forth in *Slick et al.* 1999, and revised in 2013 (see below) for every Retired NFL Football Player examined in order to determine whether the Retired NFL Football Player's test data is a valid reflection of his optimal level of neurocognitive functioning.

1. Suboptimal scores on performance validity embedded indicators or tests. The cutoffs for each test should be established based on empirical findings.

2. A pattern of neuropsychological test performance that is markedly discrepant from currently accepted models of normal and abnormal central nervous system (CNS) function. The discrepancy must be consistent with an attempt to exaggerate or fabricate neuropsychological dysfunction (e.g., a patient performs in the severely impaired range on verbal attention measures but in the average range on memory testing; a patient misses items on recognition testing that were consistently provided on previous free recall trials, or misses many easy items when significantly harder items from the same test are passed).

3. Discrepancy between test data and observed behavior. Performance on two or more neuropsychological tests within a domain are discrepant with observed level of cognitive function in a way that suggests exaggeration or fabrication of dysfunction (e.g., a well-educated patient who presents with no significant visual-perceptual deficits or language disturbance in conversational speech performs in the severely impaired range on verbal fluency and confrontation naming tests).

4. Discrepancy between test data and reliable collateral reports. Performance on two or more neuropsychological tests within a domain are discrepant with day-to-day level of cognitive function described by at least one reliable collateral informant in a way that suggests exaggeration or fabrication of dysfunction (e.g., a patient handles all family finances but is unable to perform simple math problems in testing).

5. Discrepancy between test data and documented background history. Improbably poor performance on two or more standardized tests of cognitive function within a specific domain (e.g., memory) that is inconsistent with documented neurological or psychiatric history.

---

Exhibit 2                                                                                          Page 2

6. Self-reported history is discrepant with documented history. Reported history is markedly discrepant with documented medical or psychosocial history and suggests attempts to exaggerate deficits.

7. Self-reported symptoms are discrepant with known patterns of brain functioning. Reported or endorsed symptoms are improbable in number, pattern, or severity; or markedly inconsistent with expectations for the type or severity of documented medical problems.

8. Self-reported symptoms are discrepant with behavioral observations. Reported symptoms are markedly inconsistent with observed behavior (e.g., a patient complains of severe episodic memory deficits yet has little difficulty remembering names, events, or appointments; a patient complains of severe cognitive deficits yet has little difficulty driving independently and arrives on time for an appointment in an unfamiliar area; a patient complains of severely slowed mentation and concentration problems yet easily follows complex conversation).

9. Self-reported symptoms are discrepant with information obtained from collateral informants. Reported symptoms, history, or observed behavior is inconsistent with information obtained from other informants judged to be adequately reliable. The discrepancy must be consistent with an attempt to exaggerate deficits (e.g., a patient reports severe memory impairment and/or behaves as if severely memory-impaired, but his spouse reports that the patient has minimal memory dysfunction at home).

Notwithstanding a practitioner's determination of sufficient effort in accordance with the foregoing factors, a Retired NFL Football Player's failure on two or more effort tests may result in the Retired NFL Football Player's test results being subjected to independent review, or result in a need for supplemental testing of the Retired NFL Football Player.

Note: Additional information relating to the evaluation of effort and performance validity will be provided in a clinician's interpretation guide.

Exhibit 2                                                                                                    Page 3

-1421-

**Section 3. Estimate Premorbid Intellectual Ability**

| Test | Ability |
|------|---------|
| Test of Premorbid Functioning (TOPF) | Reading<br><br>Reading + Demographic Variables |

The Test of Premorbid Functioning (TOPF) provides three models for predicting premorbid functioning: (a) demographics only, (b) TOPF only, and (c) combined demographics and TOPF prediction equations. For each model using demographic data, a simple and complex prediction equation can be selected. In the simple model, only sex, race/ethnicity, and education, are used in predicting premorbid ability. In the complex model, developmental, personal, and more specific demographic data is incorporated into the equations. The clinician should select a model based on the patient's background and his or her current level of reading or language impairment.

Note: It is necessary to estimate premorbid intellectual functioning in order to use the criteria for impairment set out in this document. Estimated premorbid intellectual ability will be assessed and classified as:

➢ Below Average (estimated IQ below 90);

➢ Average (estimated IQ between 90 and 109);

➢ Above Average (estimated IQ above 110).

Exhibit 2                                                                                    Page 4

-1422-

**Section 4. Neuropsychological Test Score Criteria by Domain of Cognitive Functioning**

There are 5 domains of cognitive functioning. In each domain, there are several tests that contribute 3, 4, or 6 demographically-adjusted test scores for consideration. Test selection in the domains was based on the availability of demographically-adjusted normative data for Caucasians and African Americans. These domains and scores are set out below.

The basic principle for defining impairment on testing is that there must be a pattern of performance that is approximately 1.5 standard deviations (for Level 1 Impairment), 1.7-1.8 standard deviations (for Level 1.5 Impairment) or 2 standard deviations (for Level 2 Impairment) below the person's expected level of premorbid functioning. Therefore, it is necessary to have more than one low test score in each domain. A user manual will be provided to neuropsychologists setting out the cutoff scores, criteria for identifying impairment in each cognitive domain, and statistical and normative data to support the impairment criteria.

| Domain/Test | Ability |
|---|---|
| **Complex Attention/Speed of Processing (6 Scores)** | |
| Digit Span | Attention & Working Memory |
| Arithmetic | Mental Arithmetic |
| Letter Number Sequencing | Attention & Working Memory |
| Coding | Visual-Processing & Clerical Speed |
| Symbol Search | Visual-Scanning & Processing Speed |
| Cancellation | Visual-Scanning Speed |
| **Executive Functioning (4 scores)** | |
| Similarities | Verbal Reasoning |
| Verbal Fluency (FAS) | Phonemic Verbal Fluency |
| Trails B | Complex Sequencing |
| Booklet Category Test | Conceptual Reasoning |
| **Learning and Memory (6 scores)** | |
| Logical Memory I | Immediate Memory for Stories |
| Logical Memory II | Delayed Memory for Stories |
| Verbal Paired Associates I | Learning Word Pairs |
| Verbal Paired Associates II | Delayed Memory for Word Pairs |
| Visual Reproduction I | Immediate Memory for Designs |
| Visual Reproduction II | Delayed Memory for Designs |
| **Language** | |
| Boston Naming Test | Confrontation Naming |
| BDAE Complex Ideational Material | Language Comprehension |
| Category Fluency | Category (Semantic) Fluency |
| **Visual-Perceptual** | |
| Block Design | Spatial Skills & Problem Solving |
| Visual Puzzles | Visual Perceptual Reasoning |
| Matrix Reasoning | Visual Perceptual Reasoning |

Exhibit 2                                                                                   Page 5

-1423-

**Impairment Criteria:** *Below Average* **Estimated Intellectual Functioning (A1 – E1)**

| |
|---|
| **A1. Complex Attention (6 test scores)** |
| 1.  Level 1 Impairment: 3 or more scores below a T score of 35 |
| 2.  Level 1.5 Impairment: 4 or more scores below a T score of 35; or meet for Level 1 and 2 scores below a T score of 30 |
| 3.  Level 2 Impairment: 3 or more scores below a T score of 30 |
| **B1. Executive Function (4 test scores)** |
| 1.  Level 1 Impairment: 2 or more scores below a T score of 35 |
| 2.  Level 1.5 Impairment: 3 or more scores below a T score of 35; or meet for Level 1 and 1 score below a T score of 30 |
| 3.  Level 2 Impairment: 2 or more scores below a T score of 30 |
| **C1. Learning and Memory (6 test scores)** |
| 1.  Level 1 Impairment: 3 or more scores below a T score of 35 |
| 2.  Level 1.5 Impairment: 4 or more scores below a T score of 35; or meet for Level 1 and 2 scores below a T score of 30 |
| 3.  Level 2 Impairment: 3 or more scores below a T score of 30 |
| **D1. Language (3 test scores)** |
| 1.  Level 1 Impairment: 3 or more scores below a T score of 37 |
| 2.  Level 1.5 Impairment: meet for Level 1 and 2 scores below a T score of 35 |
| 3.  Level 2 Impairment: 3 or more scores below a T score of 35 |
| **E1. Visual-Perceptual (3 test scores)** |
| 1.  Level 1 Impairment: 3 or more scores below a T score of 37 |
| 2.  Level 1.5 Impairment: meet for Level 1 and 2 scores below a T score of 35 |
| 3.  Level 2 Impairment: 3 or more scores below a T score of 35 |

Exhibit 2                                                                                          Page 6

-1424-

**Impairment Criteria: *Average* Estimated Intellectual Functioning (A2 – E2)**

| **A2.  Complex Attention (6 test scores)** |
| --- |
| 1.   Level 1 Impairment: 2 or more scores below a T score of 35 |
| 2.   Level 1.5 Impairment: 3 or more scores below a T score of 35; or meet for Level 1 and 1 score below a T score of 30 |
| 3.   Level 2 Impairment: 2 or more scores below a T score of 30 |
| **B2.  Executive Function (4 test scores)** |
| 1.   Level 1 Impairment: 2 or more scores below a T score of 35 |
| 2.   Level 1.5 Impairment: 3 or more scores below a T score of 35; or meet for Level 1 and 1 score below a T score of 30 |
| 3.   Level 2 Impairment: 2 or more scores below a T score of 30 |
| **C2.  Learning and Memory (6 test scores)** |
| 1.   Level 1 Impairment: 3 or more scores below a T score of 35 |
| 2.   Level 1.5 Impairment: 4 or more scores below a T score of 35; or meet for Level 1 and 1 score below a T score of 30 |
| 3.   Level 2 Impairment: 2 or more scores below a T score of 30 |
| **D2.  Language (3 test scores)** |
| 1.   Level 1 Impairment: 2 or more scores below a T score of 37 |
| 2.   Level 1.5 Impairment: 3 or more scores below a T score of 37; or meet for Level 1 and 1 score below a T score of 35 |
| 3.   Level 2 Impairment: 2 or more scores below a T score of 35 |
| **E2.  Visual-Perceptual (3 test scores)** |
| 1.   Level 1 Impairment: 2 or more scores below a T score of 37 |
| 2.   Level 1.5 Impairment: 3 or more scores below a T score of 37; or meet for Level 1 and 1 score below a T score of 35 |
| 3.   Level 2 Impairment: 2 or more scores below a T score of 35 |

Exhibit 2                                                                                          Page 7

**Impairment Criteria: *Above Average* Estimated Intellectual Functioning (A3 – E3)**

| A3.  Complex Attention (6 test scores) |
| --- |
| 1.   Level 1 Impairment: 2 or more scores below a T score of 35 |
| 2.   Level 1.5 Impairment: meet for Level 1 and 3 or more scores below a T score of 37 |
| 3.   Level 2 Impairment: 3 or more scores below a T score of 35 |
| **B3.  Executive Function (4 test scores)** |
| 1.   Level 1 Impairment: 2 or more scores below a T score of 37 |
| 2.   Level 1.5 Impairment: meet for Level 1 and 3 or more scores below a T score of 37; or meet for Level 1 and 1 score below a T score of 30 |
| 3.   Level 2 Impairment: 2 or more scores below a T score of 30 |
| **C3.  Learning and Memory (6 test scores)** |
| 1.   Level 1 Impairment: 2 or more scores below a T score of 35 |
| 2.   Level 1.5 Impairment: meet for Level 1 and 3 or more scores below a T score of 37 |
| 3.   Level 2 Impairment: 3 or more scores below a T score of 35 |
| **D3.  Language (3 test scores)** |
| 1.   Level 1 Impairment: 2 or more scores below a T score of 40 |
| 2.   Level 1.5 Impairment: 3 scores below at T score of 40; or meet for Level 1 and 1 score below a T score of 37 |
| 3.   Level 2 Impairment: 2 or more scores below a T score of 37 |
| **E3.  Visual-Perceptual (3 test scores)** |
| 1.   Level 1 Impairment: 2 or more scores below a T score of 40 |
| 2.   Level 1.5 Impairment: 3 scores below at T score of 40; or meet for Level 1 and 1 score below a T score of 37 |
| 3.   Level 2 Impairment: 2 or more scores below a T score of 37 |

Exhibit 2                                                                                                    Page 8

-1426-

**Section 5: Mental Health Assessment**

| Test | Symptoms/Functioning | Assessment |
|------|----------------------|------------|
| MMPI-2RF | Mental Health Assessment | Evaluation of Validity Scales and Configurations; T-Scores for Symptom Domains |
| Mini International Neuropsychiatric Interview (M.I.N.I. Version 5.0.0) | Semi-structured Psychiatric Interview | Scale Criteria for Various Psychiatric Diagnoses |

Exhibit 2                                                                                    Page 9

# Exhibit B-3

| MONETARY AWARD GRID |
| :---: |
| (BY AGE AT TIME OF QUALIFYING DIAGNOSIS) |

| Age Group | ALS | Death w/CTE | Parkinson's | Alzheimer's | Level 2 | Level 1.5 |
| --- | --- | --- | --- | --- | --- | --- |
| Under 45 | $5,000,000 | $4,000,000 | $3,500,000 | $3,500,000 | $3,000,000 | $1,500,000 |
| 45-49 | $4,500,000 | $3,200,000 | $2,470,000 | $2,300,000 | $1,900,000 | $950,000 |
| 50-54 | $4,000,000 | $2,300,000 | $1,900,000 | $1,600,000 | $1,200,000 | $600,000 |
| 55-59 | $3,500,000 | $1,400,000 | $1,300,000 | $1,150,000 | $950,000 | $475,000 |
| 60-64 | $3,000,000 | $1,200,000 | $1,000,000 | $950,000 | $580,000 | $290,000 |
| 65-69 | $2,500,000 | $980,000 | $760,000 | $620,000 | $380,000 | $190,000 |
| 70-74 | $1,750,000 | $600,000 | $475,000 | $380,000 | $210,000 | $105,000 |
| 75-79 | $1,000,000 | $160,000 | $145,000 | $130,000 | $80,000 | $40,000 |
| 80+ | $300,000 | $50,000 | $50,000 | $50,000 | $50,000 | $25,000 |

The above Monetary Award levels are the average base Monetary Awards for each of the Qualifying Diagnoses for particular age groups, except for the "Under 45" and "80+" rows, which list the maximum and minimum base Monetary Awards, respectively, for those age groups. A Settlement Class Member's actual base Monetary Award for ages 45-79 may be higher or lower than the average base Monetary Award listed for the Retired NFL Football Player's age group, depending on the Retired NFL Football Player's actual age at the time of Qualifying Diagnosis.

Base Monetary Awards are subject to: (a) upward adjustment for inflation, as provided in Section 6.7 of the Settlement Agreement; and (b) downward adjustment based on Offsets (Number of Eligible Seasons, medically diagnosed Stroke occurring prior to a Qualifying Diagnosis, medically diagnosed Traumatic Brain Injury occurring prior to a Qualifying Diagnosis, and non-participation in the BAP by a Retired NFL Football Player in Subclass 1, under the circumstances described in detail in the Settlement Agreement), as provided in Section 6.5(b) of the Settlement Agreement.

Exhibit 3                                                                                                    Page 1

-1429-

# Exhibit B-4

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ⸻⸻⸻ : | No. 2:12-md-02323-AB |
| IN RE: NATIONAL FOOTBALL : | |
| LEAGUE PLAYERS' CONCUSSION : | MDL No. 2323 |
| INJURY LITIGATION : | |
| : | |
| ⸻⸻⸻ : | |
| : | |
| Kevin Turner and Shawn Wooden, : | |
| *on behalf of themselves and* : | |
| *others similarly situated,* : | |
| Plaintiffs, : | Civ. Action No.: 14-cv-00029-AB |
| : | |
| v. : | |
| : | |
| National Football League and : | |
| NFL Properties, LLC, : | |
| successor-in-interest to : | |
| NFL Properties, Inc., : | |
| Defendants. : | |
| ⸻⸻⸻ : | |
| : | |
| THIS DOCUMENT RELATES TO: : | |
| ALL ACTIONS : | |
| ⸻⸻⸻ : | |

## [PROPOSED] FINAL ORDER AND JUDGMENT

On January 6, 2014, Plaintiffs in the above-referenced action ("Action") filed a

Class Action Complaint and on June 25, 2014 a Settlement Agreement was entered into by and

among defendants the National Football League ("NFL") and NFL Properties LLC ("NFL

Properties") (collectively, "NFL Parties"), by and through their attorneys, and the Class

Representatives and Subclass Representatives, individually and on behalf of the Settlement Class

and Subclasses, by and through Co-Lead Class Counsel, Class Counsel and Subclass Counsel.

On [DATE], the Court entered a Preliminary Approval and Conditional Class

Certification Order ("Preliminary Order") that, among other things: (i) preliminarily approved

Exhibit 4                                                                    Page 1

the Settlement Agreement; (ii) for purposes of the Settlement Agreement only, conditionally certified the Settlement Class and Subclasses; (iii) appointed Co-Lead Class Counsel, Class Counsel, and Subclass Counsel; (iv) approved the form and method of notice of the Settlement Agreement to the Settlement Class and Subclasses and directed that appropriate notice of the Settlement Agreement be disseminated; (v) scheduled a Fairness Hearing for final approval of the Settlement Agreement; and (vi) stayed this matter and all Related Lawsuits in this Court and enjoined proposed Settlement Class Members from pursuing Related Lawsuits.

In its Preliminary Order, pursuant to Fed. R. Civ. P. 23(b)(3), the Court defined and certified the Settlement Class as follows:

(i) All living NFL Football Players who, prior to the date of the Preliminary Approval and Class Certification Order, retired, formally or informally, from playing professional football with the NFL or any Member Club, including American Football League, World League of American Football, NFL Europe League and NFL Europa League players, or were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and who no longer are under contract to a Member Club and are not seeking active employment as players with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club ("Retired NFL Football Players"); and

(ii) Authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased or legally incapacitated or incompetent Retired NFL Football Players ("Representative Claimants"); and

(iii) Spouses, parents, children who are dependents, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player or deceased Retired NFL Football Player ("Derivative Claimants").

In its Preliminary Order, pursuant to Fed. R. Civ. P. 23(b)(3), the Court defined and certified the Subclasses as follows:

(i) "Subclass 1" means Retired NFL Football Players who were not diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants.

Exhibit 4                                                                                                                Page 2

-1432-

      (ii)    "Subclass 2" means Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants, and the Representative Claimants of deceased Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to death or who died prior to the date of the Preliminary Approval and Class Certification Order and who received a post-mortem diagnosis of CTE.

Notice was provided to Settlement Class Members pursuant to the Settlement Class Notice Plan approved in the Preliminary Order.  (*See* Settlement Class Notice Plan attached to the Declaration of Katherine Kinsella, Class Notice Agent.)  Counsel for the NFL Parties and Class Counsel worked together with the Settlement Class Notice Agent to fashion a Settlement Class Notice Plan that was tailored to the specific claims and Settlement Class Members of this case.  Settlement Class Notice was disseminated to all known Settlement Class Members by U.S. first-class mail by [INSERT DATE].  In addition, a Summary Notice was published in accordance with the Settlement Class Notice Plan and Co-Lead Class Counsel caused to be established an automated telephone system that uses a toll-free number to respond to questions from Settlement Class Members.  Co-Lead Class Counsel also caused to be established and maintained a public website that provided information about the proposed Class Action Settlement, including the Settlement Agreement, frequently asked questions, the Preliminary Order, and relevant dates for objecting to the Class Action Settlement, opting out of the Settlement Class, and the date and place of the Fairness Hearing.  The website allowed Settlement Class Members to identify themselves so that Settlement Class Notice could be mailed to them.  Class Counsel have established that the Settlement Class Notice Plan was implemented.

Exhibit 4                                                                                                                          Page 3

-1433-

[    ] Settlement Class Members have chosen to be excluded from the Settlement Class by timely filing written requests for exclusion ("Opt Outs").  The Opt Outs are listed at the end of this Order in Exhibit [  ].

[    ] Settlement Class Members submitted objections to the Class Action Settlement under the process set by the Preliminary Order.

On [DATE], at [TIME], the Court held the Fairness Hearing to consider whether the Class Action Settlement was fair, reasonable, adequate, and in the best interests of the Settlement Class and Subclasses.  At the Fairness Hearing, [NAMES] appeared on behalf of the Class Representatives, Subclass Representatives and Settlement Class Members, and [NAMES] appeared on behalf of the NFL Parties.  Additionally, the following individuals also appeared at the Fairness Hearing having timely submitted a Notice of Intention to Appear.  [INSERT LIST]

The Court, having heard arguments of counsel for the Parties and of the persons who appeared at the Fairness Hearing [REFERENCE OBJECTIONS, if any], having reviewed all materials submitted, having considered all of the files, records, and proceedings in this Action, and being otherwise fully advised,

**HEREBY ORDERS THAT:**

1.    <u>Jurisdiction.</u>  This Court retains continuing and exclusive jurisdiction over the Action, Parties and their counsel, all Settlement Class Members, the Special Master, BAP Administrator, Claims Administrator, Lien Resolution Administrator,  Appeals Advisory Panel, Appeals Advisory Panel Consultants, Trustee and Settlement Agreement, including its enforcement and interpretation, and all other matters relating to it.  This Court also retains continuing jurisdiction over the "qualified settlement funds," as defined under § 1.468B-1 of the

Exhibit 4                                                                                          Page 4

Treasury Regulations promulgated under Sections 461(h) and 468B of the Internal Revenue Code of 1986 as amended, created under the Settlement Agreement.

2.    <u>Incorporation of Settlement Documents.</u>    This Order and Judgment incorporates and makes a part hereof: (a) the Settlement Agreement and exhibits filed with the Court on June 25, 2014, including definitions of the terms used therein and (b) the Settlement Class Notice Plan and the Summary Notice, both of which were filed with the Court on June 25, 2014.  Unless otherwise defined in this Final Order and Judgment, the capitalized terms herein shall have the same meaning as they have in the *In re: National Football League Players' Concussion Injury Litigation*, MDL 2323, Class Action Settlement Agreement dated June 25, 2014.

3.    <u>Confirmation of Settlement Class.</u>    The provisions of the Preliminary Order that conditionally certified the Settlement Class and Subclasses should be, and hereby are, confirmed in all respects as a final class certification order under Fed. R. Civ. P. 23 for the purposes of implementing the Settlement Agreement.  As set forth in the Preliminary Order, the Court finds that, for purposes of effectuating the Settlement Agreement: (a) the Settlement Class Members are so numerous that their joinder is impracticable; (b) there are questions of law and fact common to the Class and Subclasses; (c) the claims of the Class Representatives and Subclass Representatives are typical of the Settlement Class Members and the respective Subclass Members; (d) the Class Representatives and Subclass Representatives and Co-Lead Class Counsel, Class Counsel and Subclass Counsel have fairly and adequately represented and protected the interests of all Settlement Class Members; and (e) the questions of law or fact common to the Class and Subclasses predominate over any questions affecting only individual

Exhibit 4                                                                                                      Page 5

Settlement Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

        4.    <u>Settlement Notice.</u>  The Court finds that pursuant to Federal Rule of Civil Procedure 23(c)(2)(B) the dissemination of the Settlement Class Notice and the publication of the Summary Notice: (i) were implemented in accordance with the Preliminary Order; (ii) constituted the best notice practicable under the circumstances; (iii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members (a) of the effect of the Settlement Agreement (including the Releases provided for therein), (b) that the NFL Parties agreed not to object to a petition for class attorneys' fees and reasonable incurred costs up to $112.5 million, and that at a later date, to be determined by the Court, Class Counsel may petition the Court for an award of attorneys' fees and reasonable incurred costs, and Settlement Class Members may comment on or object to the petition, (c) of their right to opt out or object to any aspect of the Settlement Agreement, (d) of their right to revoke an Opt Out prior to the Final Approval Date, and (e) of their right to appear at the Fairness Hearing; (iv) constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice of the proposed Settlement Agreement; and (v) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause) and other applicable laws and rules.  The Notice given by the NFL Parties to state and federal officials pursuant to 28 U.S.C. § 1715 fully satisfied the requirements of that statute.

        5.    <u>Confirmation of Appointment of Class and Subclass Representatives.</u>  As set forth in the Preliminary Order, the Court confirms the appointment of Shawn Wooden and Kevin Turner as Class Representatives and Shawn Wooden as Subclass 1 Representative and Kevin Turner as Subclass 2 Representative.

---

Exhibit 4                                                       Page 6

6.    <u>Confirmation of Appointments of Co-Lead Class Counsel, Class Counsel and Subclass Counsel.</u>  Pursuant to Fed. R. Civ. P. 23(g), the Court confirms the appointment of Christopher A. Seeger, Sol Weiss, Steven C. Marks, Gene Locks, Arnold Levin and Dianne M. Nast as Class Counsel.  In addition, the appointment of Christopher A. Seeger and Sol Weiss as Co-Lead Class Counsel is confirmed, and the appointments of Arnold Levin and Dianne M. Nast as Subclass Counsel for Subclasses 1 and 2, respectively, are confirmed.  Co-Lead Class Counsel, Class Counsel and Subclass Counsel are familiar with the claims in this case and have done work investigating the claims.  They have consulted with other counsel in the case and have experience in handling class actions and other complex litigation.  They have knowledge of the applicable laws and the resources to commit to the representation of Settlement Class Members and the Settlement Class and Subclasses.

7.    <u>Approval of Class Action Settlement.</u>  Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement Agreement in its entirety (including, without limitation, the NFL Parties' payment obligations, as set forth in Article XXIII of the Settlement Agreement, the Releases provided for therein, and the dismissal with prejudice of claims against the NFL Parties) and finds that the Settlement Agreement is fair, reasonable and adequate.  The Court also finds that the Settlement Agreement is fair, reasonable and adequate, and in the best interests of, the Class and Subclass Representatives and all Settlement Class Members, including, without limitation, the members of the Subclasses.

The Parties are ordered to implement, perform and consummate each of the obligations set forth in the Settlement Agreement in accordance with its terms and

Exhibit 4                                                                                                    Page 7

provisions.  All objections to the Settlement Agreement are found to be without merit and are overruled.

        8.    <u>Dismissal of Class Action Complaint.</u>  The Class Action Complaint is hereby dismissed with prejudice, without further costs, including claims for interest, penalties, costs and attorneys' fees, except that Class Counsel's motion for an award of class attorneys' fees and reasonable incurred costs, as contemplated by the Parties in Section 21.1 of the Settlement Agreement, will be made at an appropriate time to be determined by the Court.

        9.    <u>Dismissal of Released Claims.</u>  As set forth in Article XVIII of the Settlement Agreement, the Settlement Class, the Class and Subclass Representatives and each Settlement Class Member, on his or her own behalf and on behalf of his or her respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on behalf of any Settlement Class Member (the "Releasors"), have waived and released, forever discharged and held harmless the Released Parties, and each of them:

        a.    Of and from any and all past, present and future claims, counterclaims, actions, rights or causes of action, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, in law or in equity, contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, in any forum that the Releasors, and each of them, had, has, or may have in the future arising out of, in any way relating to or in connection with the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, referred to or relating to the Class Action Complaint and/or Related Lawsuits

("Claims"), including, without limitation, the Claims identified in Section 18.1(a)(i)-(viii) of the Settlement Agreement.

b.  Of and from any and all Claims, including unknown Claims, arising from, relating to, or resulting from the reporting, transmittal of information, or communications between or among the NFL Parties, Counsel for the NFL Parties, the Special Master, Claims Administrator, Lien Resolution Administrator, any Governmental Payor and/or Medicare Part C or Part D Program sponsor, regarding any claim for benefits under this Settlement Agreement, including any consequences in the event that this Settlement Agreement impacts, limits, or precludes any Settlement Class Member's right to benefits under Social Security or from any Governmental Payor or Medicare Part C or Part D Program sponsor.

c.  Of and from any and all Claims, including unknown Claims, pursuant to the MSP Laws, or other similar causes of action, arising from, relating to, or resulting from the failure or alleged failure of any of the Released Parties to provide for a primary payment or appropriate reimbursement to a Governmental Payor or Medicare Part C or Part D Program sponsor with a Lien in connection with claims for medical items, services, and/or prescription drugs provided in connection with compensation or benefits claimed or received by a Settlement Class Member pursuant to this Settlement Agreement.

d.  And the Special Master, BAP Administrator, Claims Administrator, and their respective officers, directors, and employees, of and from any and all Claims, including unknown Claims, arising from, relating to, or resulting from their participation, if any, in the BAP, including, but not limited to, Claims for negligence, medical malpractice, wrongful or delayed diagnosis, personal injury, bodily injury (including disease, trauma, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), or death arising from, relating to, or resulting from such participation.

Accordingly, the Court hereby orders the dismissal with prejudice of all Released Claims by the Releasors against the Released Parties pending in the Court and without further costs, including claims for interest, penalties, costs and attorneys' fees. All Releasors with Released Claims pending in any other federal court, state court, arbitration, regulatory agency, or

Exhibit 4                                                                          Page 9

-1439-

other tribunal or forum, other than the Court, against the Released Parties are ordered to promptly dismiss with prejudice all such Released Claims, and without further costs, including claims for interest, penalties, costs, and attorneys' fees.  This Settlement Agreement will be the exclusive remedy for any and all Released Claims by or on behalf of any and all Releasors against any of the Released Parties, and no Releasor shall recover, directly or indirectly, any sums from any Released Parties for Released Claims other than those received for Released Claims under the terms of the Settlement Agreement, if any.  However, nothing contained in the Settlement Agreement, including the Release and Covenant Not to Sue provisions in Article XVIII, affects the rights of Settlement Class Members to pursue claims for workers' compensation and claims alleging entitlement to NFL CBA Medical and Disability Benefits.  Nor does the Settlement Agreement alter the showing that Settlement Class Members must demonstrate to pursue successful claims for workers' compensation and/or successful claims alleging entitlement to NFL CBA Medical and Disability Benefits, nor does it alter the defenses to such claims available to Released Parties except as set forth in ARTICLE XXIX.

      10.    <u>Dismissal of Related Lawsuits.</u>  All Related Lawsuits pending in the Court are hereby dismissed with prejudice, without further costs, including claims for interest, penalties, costs and attorneys' fees.  All Releasors with Related Lawsuits pending in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum, other than the Court, are ordered to promptly dismiss with prejudice such Related Lawsuits, and without further costs, including claims for interest, penalties, costs, and attorneys' fees.

      11.    <u>Covenant Not to Sue.</u>  Consistent with Section 18.4 of the Settlement Agreement, the Class and Subclass Representatives, each Settlement Class Member, and the Settlement Class, on behalf of the Releasors, and each of them, are hereby barred, enjoined and

Exhibit 4                                                                                                                    Page 10

-1440-

restrained from, at any time, continuing to prosecute, commencing, filing, initiating, instituting, causing to be instituted, assisting in instituting, or permitting to be instituted on their, his, her, or its behalf, or on behalf of any other individual or entity, any proceeding:  (i) alleging or asserting any of his or her respective Released Claims against the Released Parties in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, including, without limitation, the Claims set forth in Article XVIII of the Settlement Agreement; or (ii) challenging the validity of the Releases.  To the extent any such proceeding exists in any court, tribunal or other forum as of the Effective Date, the Releasors are ordered to withdraw and seek dismissal with prejudice of such proceeding forthwith.

          12.   <u>Complete Bar Order and Judgment Reduction.</u>  It is ordered that any person or entity, other than Riddell (as defined in the Settlement Agreement), that becomes liable to any Releasor, or to any other alleged tortfeasor, co-tortfeasor, co-conspirator or co-obligor, by reason of judgment or settlement, for any claims that are or could have been asserted in this Action or in any Related Lawsuit, or that arise out of or relate to any claims that are or could have been asserted in this Action or in any Related Lawsuit, or that arise out of or relate to any facts in connection with this Action or any Related Lawsuit (collectively, the "Barred Defendants"), are hereby permanently BARRED, ENJOINED and RESTRAINED from commencing, prosecuting, or asserting any claim for contribution or indemnity (whether styled as a claim for contribution, indemnity or otherwise) against the Released Parties that seeks to recover from the Released Parties any part of any judgment entered against the Barred Defendants and/or any settlement reached with any of the Barred Defendants, in connection with any claims that are or could have been asserted against the Barred Defendants in this Action or in any Related Lawsuit or that arise out of or relate to any claims that are or could have been

Exhibit 4                                                                                                Page 11

asserted in this Action or in any Related Lawsuit, or that arise out of or relate to any facts in connection with this Action or any Related Lawsuit, whether arising under state, federal, or foreign law as claims, cross-claims, counterclaims, or third-party claims, whether asserted in this Action, in any Related Lawsuit, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere.

It is further ordered that the Released Parties are hereby permanently BARRED, ENJOINED AND RESTRAINED from commencing, prosecuting, or asserting any claim for contribution or indemnity (whether styled as a claim for contribution, indemnity or otherwise) against any of the Barred Defendants that seeks to recover any part of the NFL Parties' payment obligations as set forth in Article XXIII of the Settlement Agreement, whether arising under state, federal, or foreign law as claims, cross-claims, counterclaims, or third-party claims, whether asserted in this Action, in any Related Lawsuit, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere.

It is further ordered that any judgment or award obtained by the Releasors against any such Barred Defendant shall be reduced by the amount or percentage, if any, necessary under applicable law to relieve the Released Parties of all liability to such Barred Defendants on claims barred pursuant to this Paragraph 12. Such judgment reduction, partial or complete release, settlement credit, relief, or setoff, if any, shall be in an amount or percentage sufficient under applicable law to compensate such Barred Defendants for the loss of any such barred claims pursuant to this Paragraph 12 against the Released Parties.

13.    No Release for Insurance Coverage.  Notwithstanding anything to the contrary in this Final Order and Judgment, this Final Order and Judgment and the Settlement

Exhibit 4                                                                                              Page 12

Agreement are not intended to and do not effect a release of any rights or obligations that any insurer has under or in relation to any contract or policy of insurance to any named insured, insured, additional insured, or other insured person or entity thereunder, including those persons or entities referred to in Section 2.1(bbbb)(i)-(ii) of the Settlement Agreement.

14.    Riddell.    As set forth in the Settlement Agreement, it is hereby ordered that, with respect to any litigation by the Releasors against Riddell, if a verdict in a Releasor's favor results in verdict or judgment for contribution or indemnity against any of the Released Parties, the Releasors shall not enforce their right to collect this verdict or judgment to the extent that such enforcement creates liability against such Released Parties.   In such event, the Releasors shall reduce their claim or agree to a judgment reduction or satisfy the verdict or judgment to the extent necessary to eliminate the claim of liability against the Released Parties or any Other Party claiming contribution or indemnity.

15.    Confirmation of Administrative Appointments.    As set forth in the Preliminary Order, the Court confirms the appointment of The Garretson Resolution Group, Inc. as the BAP Administrator, BrownGreer PLC as the Claims Administrator, The Garretson Resolution Group, Inc. as the Liens Resolution Administrator and Citibank, N.A. as the Trustee, and confirms that the Court retains continuing jurisdiction over those appointed.   Pursuant to Federal Rule of Civil Procedure 53 and the inherent authority of the Court, the Court appoints _____ as Special Master to perform the duties of the Special Master as set forth in the Settlement Agreement for a five-year term.

16.    No Admission.    This Final Order and Judgment, the Settlement Agreement, and the documents relating thereto, and any actions taken by the NFL Parties or the Released Parties in the negotiation, execution, or satisfaction of the Settlement Agreement: (a)

Exhibit 4                                                                                    Page 13

do not and shall not, in any event, constitute, or be construed as, an admission of any liability or wrongdoing, or recognition of the validity of any claim made by the Class and Subclass Representatives, the Settlement Class, or any Settlement Class Member in this or any other action or proceeding; and (b) shall not, in any way, be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, of any kind, or used in any other fashion, by the Class and Subclass Representatives, the Settlement Class, any Settlement Class Member, Class Counsel, or any of the Released Parties in any litigation, action, hearing, or any judicial, arbitral, administrative, regulatory or other proceeding for any purpose, except a proceeding to resolve a dispute arising under, or to enforce, the Settlement Agreement.  Without limiting the foregoing, neither the Settlement Agreement nor any of its provisions, negotiations, statements, or court proceedings relating to its provisions, nor any actions undertaken in this Settlement Agreement, will be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, or admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Released Parties, or as a waiver by the Released Parties of any applicable defense, or as a waiver by the Class and Subclass Representatives, the Settlement Class, or any Settlement Class Member, of any claims, causes of action, or remedies.  This Paragraph shall not apply to disputes between the NFL Parties and their insurers, as to which the NFL Parties reserve all rights.

       17.   <u>Modification of the Settlement Agreement.</u>  Without further approval from the Court, and without the express written consent of Class Counsel and Counsel for the NFL Parties, on behalf of all Parties, the Settlement Agreement will not be subject to any change, modification, amendment, or addition.

---

Exhibit 4                                                                                      Page 14

18.    <u>Binding Effect.</u>  The terms of the Settlement Agreement and of this Final Order and Judgment shall be forever binding on the Parties (regardless of whether or not any individual Settlement Class Member receives payment of a Monetary Award or Derivative Claimant Award or participates in a BAP baseline assessment examination), as well as their respective heirs, executors, administrators, predecessors, successors, affiliates and assigns.  The Opt Outs listed in Exhibit [    ] hereto are excluded from the Settlement Class pursuant to request and are not bound by the terms of the Settlement Agreement or this Final Order and Judgment.

19.    <u>Termination.</u>  If the Settlement Agreement is terminated as provided in Article XVI of the Settlement Agreement, then this Final Order and Judgment (and any orders of the Court relating to the Settlement Agreement) shall be null and void and be of no further force or effect, except as otherwise provided by the Settlement Agreement, and any unspent and uncommitted monies in the Funds will revert to, and shall be paid to, the NFL Parties within ten (10) days.

20.    <u>Entry of Final Judgment.</u>  There is no just reason to delay the entry of this Final Order and Judgment as a final judgment in this Action.  Accordingly, the Clerk of Court is hereby directed, in accordance with this Final Order and Judgment and pursuant to Fed. R. Civ. P. 54, to: (i) enter final judgment dismissing with prejudice this Action and any Related Lawsuits in this Court in which Released Parties (or any of them) are the only defendants, and (ii) enter final judgment dismissing with prejudice all Released Claims asserted against Released Parties

Exhibit 4                                                                                     Page 15

(or any of them) in any other Related Lawsuits in this Court in which there are named defendants other than Released Parties.

SO ORDERED this _____ day of _____, 2014.


_____
Anita B. Brody
United States District Court Judge

Exhibit 4                                                                                      Page 16

-1446-

# Exhibit B-5

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

# NFL Concussion Settlement

### All Valid Claims of Retired NFL Football Players to be Paid in Full for 65 Years

### Monetary Awards, Baseline Medical Exams and Other Benefits Provided

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- The National Football League ("NFL") and NFL Properties LLC (collectively, "NFL Parties") have agreed to a Settlement of a class action lawsuit seeking medical monitoring and compensation for brain injuries allegedly caused by head impacts experienced in NFL football. The NFL Parties deny that they did anything wrong.

- The Settlement Class includes all retired players of the NFL, the American Football League ("AFL") that merged with the NFL, the World League of American Football, NFL Europe League, and NFL Europa League, as well as immediate family members of retired players and legal representatives of incapacitated, incompetent or deceased retired players.

- The Settlement will provide eligible retired players with:

  - Baseline neuropsychological and neurological exams to determine if retired players are: a) currently suffering from any neurocognitive impairment, including impairment serious enough for compensation, and b) eligible for additional testing and/or treatment ($75 million);

  - Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Parkinson's Disease, Alzheimer's Disease, early and moderate Dementia and certain cases of chronic traumatic encephalopathy (CTE) (a neuropathological finding) diagnosed after death. The maximum monetary awards range from $1.5 million to $5 million depending on the diagnosis. There is no cap on the amount of funds available to pay these Monetary Awards and all valid claims will be paid in full for 65 years; and

  - Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million).

- Individuals who represent incapacitated, incompetent or deceased retired players, or family members who meet certain criteria may also file claims for monetary awards (*see* Question 6).

- To get money, proof that injuries were caused by playing NFL football is not required.

- **Settlement Class Members will need to register to get benefits. Settlement Class Members may sign up at the website for additional information about the Settlement and updates on the registration process.**

- Your legal rights are affected even if you do nothing. Please read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **STAY IN THE SETTLEMENT CLASS** | You do not need to do anything to be included in the Settlement Class. However, once the Court approves the Settlement, you will be bound by the terms and releases contained in the Settlement. There will be later notice to explain when and how to register for Settlement benefits (*see* Question 26). |
| **ASK TO BE EXCLUDED** | You will get no benefits. This is the only option that allows you to participate in any other lawsuit against the NFL Parties about the claims in this case (*see* Question 30). |

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                          Page 1

-1448-

| **OBJECT** | Write to the Court if you do not like the Settlement (*see* Question 35). |
|---|---|

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.

- **This Notice is only a summary of the Settlement Agreement and your rights.  You are encouraged to carefully review the complete Settlement Agreement at www.NFLConcussionSettlement.com.**

| **What This Notice Contains** |
| --- |

## CHAPTER 1: INTRODUCTION

**BASIC INFORMATION**………………………………………………………………………….**Page 5**
1.    Why is this Notice being provided?
2.    What is the litigation about?
3.    What is a class action?
4.    Why is there a Settlement?
5.    What are the benefits of the Settlement?

**WHO IS PART OF THE SETTLEMENT?** ………………………………………………..**Page 7**
6.    Who is included in the Settlement Class?
7.    What players are not included in the Settlement Class?
8.    What if I am not sure whether I am included in the Settlement Class?
9.    What are the different levels of neurocognitive impairment?
10.   Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

## CHAPTER 2: SETTLEMENT BENEFITS

**THE BASELINE ASSESSMENT PROGRAM**…………………………………………….....**Page 9**
11.   What is the Baseline Assessment Program ("BAP")?
12.   Why should a retired player get a BAP baseline examination?
13.   How does a retired player schedule a baseline assessment examination and where will it be done?

**MONETARY AWARDS**……………………………………………………….……... **Page 10**
14.   What diagnoses qualify for monetary awards?
15.   Do I need to prove that playing professional football caused the retired player's Qualifying Diagnosis?
16.   How much money will I receive?
17.   How does the age of the retired player at the time of first diagnosis affect a monetary award?
18.   How does the number of seasons a retired player played affect a monetary award?
19.   How do prior strokes or brain injuries of a retired player affect a monetary award?
20.   How is a retired player's monetary award affected if he does not participate in the BAP program?
21.   Can I receive a monetary award even though the retired player is dead?
22.   Will this Settlement affect a retired player's participation in NFL or NFLPA related benefits programs?
23.   Will this Settlement prevent retired players from bringing workers' compensation claims?

**EDUCATION FUND**……………………………………………………………………………**Page 14**
24.   What types of education programs are supported by the Settlement?

## CHAPTER 3: YOUR RIGHTS

**REMAINING IN THE SETTLEMENT**……………………………………………………..**Page 15**
25.   What am I giving up to stay in the Settlement Class?

**QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                                Page 3

**HOW TO GET BENEFITS**………………………………………………………………...**Page 15**
26.    How do I get Settlement benefits?
27.    Is there a time limit for Retired NFL Football Players and Representative Claimants to file claims for monetary awards?
28.    Can I re-apply for compensation if my claim is denied?
29.    Can I appeal the determination of my monetary award claim?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**……………………………………**Page 16**
30.    How do I get out of the Settlement?
31.    If I do not exclude myself, can I sue the NFL Parties for the same thing later?
32.    If I exclude myself, can I still get benefits from this Settlement?

**THE LAWYERS REPRESENTING YOU**…………………………………………………**Page 17**
33.    Do I have a lawyer in the case?
34.    How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**……………………………………………………**Page 18**
35.    How do I tell the Court if I do not like the Settlement?
36.    What is the difference between objecting to the Settlement and excluding myself?

**THE COURT'S FAIRNESS HEARING**…………………………………………………**Page 19**
37.    When and where will the Court hold a Fairness Hearing concerning the Settlement?
38.    Do I have to attend the hearing?
39.    May I speak at the hearing?

**GETTING MORE INFORMATION**………………………………………………………**Page 19**
40.    How do I get more information?

# CHAPTER 1:  INTRODUCTION

## BASIC INFORMATION

| **1.  Why is this Notice being provided?** |
|---|

The Court in charge of this case authorized this Notice because you have a right to know about the proposed Settlement of this lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement.  This Notice summarizes the Settlement and explains your legal rights and options.

Judge Anita B. Brody of the United States District Court for the Eastern District of Pennsylvania is overseeing this case.  The case is known as *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323.  The people who sued are called the "Plaintiffs."  The National Football League and NFL Properties LLC are called the "NFL Defendants."

The Settlement may affect your rights if you are:  (a) a retired player of the NFL, AFL, World League of American Football, NFL Europe League, or NFL Europa League, (b) an authorized representative of a deceased or legally incapacitated or incompetent retired player of those leagues, or (c) an individual with a close legal relationship with a retired player of those leagues, such as a spouse, parent or child.

| **2.  What is the litigation about?** |
|---|

The Plaintiffs claim that retired players experienced head trauma during their NFL football playing careers that resulted in brain injuries, which have caused or may cause them long-term neurological problems.  The Plaintiffs accuse the NFL Parties of being aware of the evidence and the risks associated with repetitive traumatic brain injuries but failing to warn and protect the players against the long-term risks, and ignoring and concealing this information from the players.  The NFL Parties deny the claims in the litigation.

| **3.  What is a class action?** |
|---|

In a class action, one or more people, the named plaintiffs (who are also called proposed "class representatives") sue on behalf of themselves and other people with similar claims.  All of these people together are the proposed "class" or "class members."  When a class action is settled, one court resolves the issues for all class members (in the settlement context, "settlement class members"), except for those who exclude themselves from the settlement.  In this case, the proposed class representatives are Kevin Turner and Shawn Wooden.  Excluding yourself means that you will not receive any benefits from the Settlement.  The process for excluding yourself is described in Question 30 of this Notice.

| **4.  Why is there a Settlement?** |
|---|

After extensive settlement negotiations mediated by retired United States District Court Judge Layn Phillips, and further settlement negotiations under the supervision of the Court-appointed Special Master, Perry Golkin, the Plaintiffs and the NFL Parties agreed to the Settlement.

A settlement is an agreement between a plaintiff and a defendant to resolve a lawsuit. Settlements conclude litigation without the court or a jury ruling in favor of the plaintiff or the defendant. A settlement allows the parties to avoid the cost and risk of a trial, as well as the delays of litigation.

If the Court approves this Settlement, the claims of all persons affected (*see* Question 6) and the litigation between these persons and the NFL Parties are over. The persons affected by the Settlement are eligible for the benefits summarized in this Notice and the NFL Parties will no longer be legally responsible to defend against the claims made in this litigation.

The Court has not and will not decide in favor of the retired players or the other persons affected by the Settlement or the NFL Parties, and by reviewing this Settlement the Court is not making and will not make any findings that any law was broken or that the NFL Parties did anything wrong.

The proposed Class Representatives and their lawyers ("Co-Lead Class Counsel," "Class Counsel," and "Subclass Counsel," *see* Question 33) believe that the proposed Settlement is best for everyone who is affected. The factors that Co-Lead Class Counsel, Class Counsel, and Subclass Counsel considered included the uncertainty and delay associated with continued litigation, a trial and appeals, and the uncertainty of particular legal issues that are yet to be determined by the Court. Co-Lead Class Counsel, Class Counsel and Subclass Counsel balanced these and other substantial risks in determining that the Settlement is fair, reasonable and adequate in light of all circumstances and in the best interests of the Settlement Class Members.

The Settlement Agreement is available at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling 1-800-000-0000.

| **5. What are the benefits of the Settlement?** |
|---|

Under the Settlement, the NFL Parties will pay to fund:

- Baseline neuropsychological and neurological examinations for eligible retired players, and additional medical testing, counseling and/or treatment if they are diagnosed with moderate cognitive impairment during the baseline examinations (up to $75 million, "Baseline Assessment Program") (*see* Questions 11-13);

- Monetary awards for diagnoses of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) and Death with CTE prior to [Date of Preliminary Approval Order] (*see* Questions 14-21); **All valid claims under the Settlement, without limitation, will be paid in full throughout the 65-year life of the Settlement (the "Monetary Award Fund")**; and

- Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million) (*see* Question 24).

In addition, the NFL Parties will pay the cost of notifying the Settlement Class. Administrative costs and expenses will be paid out of the Monetary Award Fund. The Baseline Assessment Program costs and expenses will be paid out of the Baseline Assessment Program Fund.

The details of the Settlement benefits are in the Settlement Agreement, which is available at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling 1-800-000-0000.

**Note:** The Baseline Assessment Program and Monetary Award Fund are completely independent of the NFL Parties and any benefit programs that have been created between the NFL and the NFL Players Association. The NFL Parties are not involved in determining the validity of claims.

## WHO IS PART OF THE SETTLEMENT?

You need to decide whether you are included in the Settlement.

| 6.  Who is included in the Settlement Class? |
| --- |

This Settlement Class includes three types of people:

Retired NFL Football Players:  Prior to [Date of Preliminary Approval Order], all living NFL Football players who (1) have retired, formally or informally, from playing professional football with the NFL or any Member Club, including AFL, World League of American Football, NFL Europe League, and NFL Europa League players, or (2) were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and no longer are under contract to a Member Club and are not seeking active employment as a player with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club.

Representative Claimants:  An authorized representative, ordered by a court or other official of competent jurisdiction under applicable state law, of a deceased or legally incapacitated or incompetent Retired NFL Football Player.

Derivative Claimants:  A spouse, parent, dependent child, or any other person who properly under applicable state law asserts the right to sue independently or derivatively by reason of his or her relationship with a living or deceased Retired NFL Football Player.  (For example, a spouse asserting the right to sue due to the injury of a husband who is a Retired NFL Football Player.)

The Settlement recognizes two separate groups ("Subclasses") of Settlement Class Members based on the Retired NFL Football Player's injury status as of [Date of Preliminary Approval Order]:

- Subclass 1 includes: Retired NFL Football Players who were <u>not</u> diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE prior to [Date of Preliminary Approval Order], and their Representative Claimants and Derivative Claimants.

- Subclass 2 includes:

  o Retired NFL Football Players who <u>were</u> diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to [Date of Preliminary Approval Order], and their Representative Claimants and Derivative Claimants; and

    ○  Representative Claimants of deceased Retired NFL Football Players who were diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to death or who died prior to [Date of Preliminary Approval Order] and received a diagnosis of Death with CTE.

### 7.  What players are not included in the Settlement Class?

The Settlement Class does not include:  (a) current NFL players, and (b) people who tried out for NFL or AFL Member Clubs, or World League of American Football, NFL Europe League or NFL Europa League teams, but did not make it onto preseason, regular season or postseason rosters, or practice squads, developmental squads or taxi squads.

### 8.  What if I am not sure whether I am included in the Settlement Class?

If you are not sure whether you are included in the Settlement Class, you may call **1-800-000-0000** with questions or visit www.NFLConcussionSettlement.com.  You may also write with questions to NFL Concussion Settlement, P.O. Box 0000, City, ST 00000.  You may also consult with your own attorney.

### 9.  What are the different levels of neurocognitive impairment?

In addition to ALS, Parkinson's Disease, and Alzheimer's Disease, various levels of neurocognitive impairment are covered by this Settlement.  More details can be found in the Injury Definitions, which are available at www.NFLConcussionSettlement.com or by calling **1-800-000-0000**.

The level of Neurocognitive Impairment will be established in part with evidence of decline in performance in at least two areas subject to clinical evaluative testing (complex attention, executive function, learning and memory, language, or perceptual-spatial), provided one of the areas is executive function, learning and memory, or complex attention, and related functional impairment as follows:

| LEVEL OF NEUROCOGNITIVE IMPAIRMENT | TYPE OF IMPAIRMENT | DEGREE OF DECLINE |
| --- | --- | --- |
| Level 1 | Moderate cognitive impairment | Moderate cognitive decline |
| Level 1.5 | Early Dementia | Moderate to severe cognitive decline |
| Level 2 | Moderate Dementia | Severe cognitive decline |

If neurocognitive impairment is temporary and only occurs with delirium, or as a result of substance abuse or medicinal side effects, it is not covered by the Settlement.

### 10.  Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

No.  A retired player can be a Settlement Class Member regardless of whether he is vested due to credited seasons or total and permanent disability under the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

QUESTIONS?  CALL **1-800-000-0000** OR VISIT **www.NFLConcussionSettlement.com**

Exhibit 5                                                                                          Page 8

# CHAPTER 2:  SETTLEMENT BENEFITS

## THE BASELINE ASSESSMENT PROGRAM

### 11.  What is the Baseline Assessment Program ("BAP")?

All living retired players who have earned at least one-half of an Eligible Season (*see* Question 18), who do not exclude themselves from the Settlement (*see* Question 30), and who timely register to participate in the Settlement (*see* Question 26) may participate in the Baseline Assessment Program ("BAP").

The BAP will provide baseline neuropsychological and neurological assessment examinations to determine whether retired players are currently suffering from cognitive impairment.  Retired players will have from two to ten years, depending on their age as of the date the Settlement is finally approved and any appeals are fully resolved ("Final Settlement Approval"), to have a baseline examination conducted through a nationwide network of qualified and independent medical providers.

- Retired players 43 or older as of the date the Settlement goes into effect will need to have a baseline examination within two years of the start of the BAP.

- Retired players under the age of 43 as of the date the Settlement goes into effect will need to have a baseline examination within 10 years of the start of the BAP, or before they turn 45, whichever comes sooner.

Retired players who are diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment) are eligible to receive further medical testing and/or treatment (including counseling and pharmaceuticals) for that condition during the ten-year term of the BAP or within five years from diagnosis, whichever is later.

Retired players who participate in the BAP will be encouraged to provide their confidential medical records for use in research into cognitive impairment and safety and injury prevention with respect to football players.

Although all retired players are encouraged to take advantage of the BAP and receive a baseline examination, they do not need to participate in the BAP to receive a monetary award, but any award to the retired player may be reduced by 10% if  the retired player does not participate in the BAP, as explained in more detail in Question 20.

### 12.  Why should a retired player get a BAP baseline examination?

Getting a BAP baseline examination will be beneficial.  It will determine whether the retired player has any cognitive impairment.  If he is diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment), he will be eligible to receive further medical testing and/or treatment for that condition.  In addition, regardless of any cognitive impairment today, the results of the BAP baseline examination can be used as a comparison to measure any subsequent deterioration of  cognitive condition over the course of his life.  Participants also will be examined by at least two experts during the BAP baseline examinations, a neuropsychologist and a neurologist, and the retired player and/or his family members will have the opportunity to ask questions relating to any cognitive impairment during those examinations.

QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

Exhibit 5                                                                                                    Page 9

Participation in the BAP does not prevent the retired player from filing a claim for a monetary award.  For the next 65 years, retired players will be eligible for compensation paid from the Monetary Award Fund if the player develops a Qualifying Diagnosis (*see* Question 14).  Participation in the BAP also will help ensure that, to the extent the retired player receives a Qualifying Diagnosis in the future, he will receive the maximum monetary award to which he is entitled (*see* Question 20).

| | |
|---|---|
| **13.** | **How does a retired player schedule a baseline assessment examination and where will it be done?** |

Retired players need to register for Settlement benefits before they can get a baseline assessment examination.  Registration for benefits will not be available until after Final Settlement Approval.  **However, a retired player may provide his name and contact information now at www.NFLConcussionSettlement.com or by calling 1-800-000-0000.  This ensures that the retired player will receive additional notice about the registration process and deadlines when it becomes available.**

The BAP Administrator will send notice to those retired players determined during registration to be eligible for the BAP, explaining how to arrange for an initial baseline assessment examination.  The BAP will use a nationwide network of qualified and independent medical providers who will provide both the initial baseline assessment as well as any further testing and/or treatment.  The BAP Administrator, which will be appointed by the Court, will establish the network of medical providers.

## MONETARY AWARDS

| | |
|---|---|
| **14.** | **What diagnoses qualify for monetary awards?** |

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia), or Death with CTE (the "Qualifying Diagnoses").  A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund.

If a retired player receives a monetary award based on a Qualifying Diagnosis, and later is diagnosed with a different Qualifying Diagnosis that entitles him to a larger monetary award than his previous award, he will be eligible for an increase in compensation.  This would also apply to Derivative Claimants.

Qualifying Diagnoses must be made by approved qualified specialists.  If and when Final Settlement Approval is obtained, the Claims Administrator will create and maintain a list of specialists who may make an authorized Qualifying Diagnosis if no such diagnosis has already been made by a qualified specialist before the Settlement is effective.

| | |
|---|---|
| **15.** | **Do I need to prove that playing professional football caused the retired player's Qualifying Diagnosis?** |

No.  You do not need to prove that a retired player's Qualifying Diagnosis was caused by playing professional football or that he experienced head injuries in the NFL, AFL, World League of American Football, NFL Europe League, or NFL Europa League in order to receive a monetary award.  The fact that a retired player receives a Qualifying Diagnosis is sufficient to be eligible for a monetary award.

**QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                                                    Page 10

-1457-

You also do not need to exclude the possibility that the Qualifying Diagnosis was caused or contributed to by amateur football or other professional football league injuries or by various risk factors linked to the Qualifying Diagnosis.

## 16.  How much money will I receive?

The amount of money you will receive depends on the retired player's:

- Specific Qualifying Diagnosis,
- Age at the time of diagnosis (*see* Question 17),
- Number of seasons played or practiced in the NFL or the AFL (*see* Question 18),
- Diagnosis of a prior stroke or traumatic brain injury (*see* Question 19), and
- Participation in a baseline assessment exam (*see* Question 20).

The amount of money you will receive also depends on whether:

- There are any legally enforceable liens on the award,
- Any retainer agreement with an attorney, and
- The Court makes any further assessments (*see* Question 34).

Certain costs and expenses related to resolving any liens for Settlement Class Members will be paid out of such Settlement Class Members' Monetary Awards or Derivative Claimant Awards.

The table below lists the maximum amount of money available for each Qualifying Diagnosis before any adjustments are made.

| QUALIFYING DIAGNOSIS | MAXIMUM AWARD AVAILABLE |
|---|---|
| Amyotrophic lateral sclerosis (ALS) | $5 million |
| Death with CTE (diagnosed after death) | $4 million |
| Parkinson's Disease | $3.5 million |
| Alzheimer's Disease | $3.5 million |
| Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) | $3 million |
| Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) | $1.5 million |

Monetary awards may be increased up to 2.5% per year during the 65-year Monetary Award Fund term for inflation.

To receive the maximum amount outlined in the table, a retired player must have played for at least five Eligible Seasons (*see* Question 18) and have been diagnosed when younger than 45 years old.

Derivative Claimants are eligible to be compensated from the monetary award of the retired player with whom they have a close relationship in an amount of 1% of that award.  If there are multiple Derivative Claimants for the same retired player, the 1% award will be divided among the Derivative Claimants according to the law where the retired player (or his Representative Claimant, if any) resides.

QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.NFLConcussionSettlement.com

Exhibit 5                                                                                              Page 11

-1458-

**17. How does the age of the retired player at the time of first diagnosis affect a monetary award?**

Awards are reduced for retired players who were 45 or older when diagnosed. The younger a retired player is at the time of diagnosis, the greater the award he will receive. Setting aside the other downward adjustments to monetary awards, the table below provides:

- The average award for people diagnosed between the ages of 45-79; and
- The amount of the award for those under age 45 and over 79.

The actual amount will be determined based on each retired player's actual age at the time of diagnosis and on other potential adjustments.

| AGE AT DIAGNOSIS | ALS | DEATH W/CTE | PARKINSON'S | ALZHEIMER'S | LEVEL 2 | LEVEL 1.5 |
|---|---|---|---|---|---|---|
| Under 45 | $5,000,000 | $4,000,000 | $3,500,000 | $3,500,000 | $3,000,000 | $1,500,000 |
| 45 - 49 | $4,500,000 | $3,200,000 | $2,470,000 | $2,300,000 | $1,900,000 | $950,000 |
| 50 - 54 | $4,000,000 | $2,300,000 | $1,900,000 | $1,600,000 | $1,200,000 | $600,000 |
| 55 - 59 | $3,500,000 | $1,400,000 | $1,300,000 | $1,150,000 | $950,000 | $475,000 |
| 60 - 64 | $3,000,000 | $1,200,000 | $1,000,000 | $950,000 | $580,000 | $290,000 |
| 65 - 69 | $2,500,000 | $980,000 | $760,000 | $620,000 | $380,000 | $190,000 |
| 70 - 74 | $1,750,000 | $600,000 | $475,000 | $380,000 | $210,000 | $105,000 |
| 75 - 79 | $1,000,000 | $160,000 | $145,000 | $130,000 | $80,000 | $40,000 |
| 80+ | $300,000 | $50,000 | $50,000 | $50,000 | $50,000 | $25,000 |

**Note:** The age of the retired player at diagnosis (not the age when applying for a monetary award) is used to determine the monetary amount awarded.

**18. How does the number of seasons a retired player played affect a monetary award?**

Awards are reduced for retired players who played less than five "Eligible Seasons." The Settlement uses the term "Eligible Season" to count the seasons in which a retired player played or practiced in the NFL or AFL. A retired player earns an Eligible Season for:

- Each season where he was on an NFL or AFL Member Club's "Active List" for either three or more regular season or postseason games, or

- Where he was on an Active List for one or more regular or postseason games and then spent two regular or postseason games on an injured reserve list or inactive list due to a concussion or head injury.

- A retired player also earns one-half of an Eligible Season for each season where he was on an NFL or AFL Member Club's practice, developmental, or taxi squad for at least eight games, but did not otherwise earn an Eligible Season.

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                          Page 12

-1459-

The "Active List" means the list of all players physically present, eligible and under contract to play for an NFL or AFL Member Club on a particular game day within any applicable roster or squad limits in the applicable NFL or AFL Constitution and Bylaws.

Time spent playing or practicing in the World League of American Football, NFL Europe League, and NFL Europa League does not count towards an Eligible Season.

The table below lists the reductions to a retired player's (or his Representative Claimant's) monetary award if the retired player has less than five Eligible Seasons. To determine the total number of Eligible Seasons credited to a retired player, add together all of the earned Eligible Seasons and half Eligible Seasons. For example, if a retired player earned two Eligible Seasons and three half Eligible Seasons, he will be credited with 3.5 Eligible Seasons.

| NUMBER OF ELIGIBLE SEASONS | PERCENTAGE OF REDUCTION |
|---|---|
| 4.5 | 10% |
| 4 | 20% |
| 3.5 | 30% |
| 3 | 40% |
| 2.5 | 50% |
| 2 | 60% |
| 1.5 | 70% |
| 1 | 80% |
| .5 | 90% |
| 0 | 97.5% |

**19. How do prior strokes or traumatic brain injuries of a retired player affect a monetary award?**

It depends. A retired player's monetary award (or his Representative Claimant monetary award) will be reduced by 75% if he experienced: (1) a medically diagnosed stroke that occurred before or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis; or (2) a severe traumatic brain injury unrelated to NFL football that occurred during or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis.

The award will not be reduced if the retired player (or his Representative Claimant) can show by clear and convincing evidence that the stroke or traumatic brain injury is not related to the Qualifying Diagnosis.

**20. How is a retired player's monetary award affected if he does not participate in the BAP program?**

It depends on when the retired player receives his Qualifying Diagnosis and the nature of the diagnosis. There is a 10% reduction to the monetary award if the retired player does not participate in the BAP and:

- Did not receive a Qualifying Diagnosis prior to [Date of Preliminary Approval Order], and

- Receives a Qualifying Diagnosis (other than ALS) after his deadline to receive a BAP baseline assessment examination.

**21. Can I receive a monetary award even though the retired player is dead?**

Yes. Representative Claimants for deceased retired players with a Qualifying Diagnoses will be eligible to receive monetary awards. If the deceased retired player died before January 1, 2006, however, the Representative Claimant will only receive a monetary award if the Court determines that a wrongful death or survival claim is allowed under applicable state law.

Derivative Claimants also will be eligible for a total award of 1% of the monetary award that the Representative Claimant for the deceased retired player receives (*see* Question 16).

Representative and Derivative Claimants will also need to register for Settlement benefits (*see* Question 26).

**22. Will this Settlement affect a retired player's participation in NFL or NFLPA-related benefits programs?**

No. The Settlement benefits are completely independent of any benefits programs that have been created by or between the NFL and the NFL Players Association. This includes the 88 Plan (Article 58 of the 2011 Collective Bargaining Agreement) and the Neuro-Cognitive Disability Benefit (Article 65 of the 2011 Collective Bargaining Agreement).

**Note:** The Settlement ensures that a retired player who has signed, or will sign, a release as part of his Neuro-Cognitive Disability Benefit application, will not be denied Settlement benefits.

**23. Will this Settlement prevent retired players from bringing workers' compensation claims?**

No. Claims for workers' compensation will not be released by this Settlement.

## EDUCATION FUND

**24. What type of education programs are supported by the Settlement?**

The Settlement will provide $10 million in funding to support education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives.

Retired players will be able to actively participate in such initiatives if they desire.

# CHAPTER 3:  YOUR RIGHTS

## REMAINING IN THE SETTLEMENT

| **25.  What am I giving up to stay in the Settlement Class?** |
| --- |

Unless you exclude yourself from the Settlement, you cannot sue the NFL Parties, the Member Clubs, or related individuals and entities, or be part of any other lawsuit against the NFL Parties about the issues in this case.  This means you give up your right to continue to litigate any claims related to this Settlement, or file new claims, in any court or in any proceeding at any time.  **However, the Settlement does not release any claims for workers' compensation (*see* Question 23) or claims alleging entitlement to NFL medical and disability benefits available under the Collective Bargaining Agreement**.

Please note that certain Plaintiffs also sued the football helmet manufacturer Riddell and certain related entities (specifically, Riddell, Inc., Riddell Sports Group Inc., All American Sports Corporation, Easton-Bell Sports, Inc., EB Sports Corp., Easton-Bell Sports, LLC, and RBG Holdings Corp.).  **They are not parties to this Settlement and claims against them are not released by this Settlement**.

Article XVIII of the Settlement Agreement contains the complete text and details of what Settlement Class Members give up unless they exclude themselves from the Settlement, so please read it carefully.  The Settlement Agreement is available at www.NFLConcussionSettlement.com.  The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania  (*see* Question 35 for the address).  You can also get this information by calling 1-800-000-0000.  If you have any questions you can talk to the law firms listed in Question 33 for free or you can talk to your own lawyer if you have questions about what this means.

## HOW TO GET BENEFITS

| **26.  How do I get Settlement benefits?** |
| --- |

To get benefits, you will need to register.  This is true for all Settlement Class Members, including Representative and Derivative Claimants.  Registration for benefits will not begin until after Final Settlement Approval (*see* Question 37).  If and when that occurs, further notice will be provided about the registration process and deadlines.  **However, you may provide your name and contact information now at www.NFLConcussionSettlement.com or by calling 1-800-000-0000.  This ensures that you will receive additional notice about the registration process and deadlines when that becomes available.**  To receive any Settlement benefits, you must register on or before 180 days from the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com.  Information about the registration deadline will also be available by calling **1-800-000-0000.**

| **27.  Is there a time limit for Retired NFL Football Players and Representative Claimants to file claims for monetary awards?** |
| --- |

Yes.  Retired NFL Football Players and Representative Claimants for retired players who are diagnosed by the date of Final Settlement Approval must submit claims for monetary awards within two years of the date that    further    notice    about    the    registration    process    and    deadlines    is    posted    on

**QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

Exhibit 5                                                                                                        Page 15

www.NFLConcussionSettlement.com.  Retired NFL Football Players and Representative Claimants for retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of diagnosis to file claims.  This deadline may be extended to within four years of the Qualifying Diagnosis or the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com, whichever is later, if the Retired NFL Football Player or Representative Claimant can show substantial hardship beyond the Qualifying Diagnosis.  Derivative Claimants must submit claims no later than 30 days after the Retired NFL Football Player through whom the close relationship is the basis for the claim (or the Representative Claimant of that retired player) receives a notice that he is entitled to a monetary award.  All claims must be submitted by the end of the 65-year term of the Monetary Award Fund.

| **28.  Can I re-apply for compensation if my claim is denied?** |
|---|

Yes.  A Settlement Class Member who submits a claim for a monetary award that is denied can re-apply in the future should the Retired NFL Football Player's medical condition change.

| **29.  Can I appeal the determination of my monetary award claim?** |
|---|

Yes.  The Settlement establishes a process for a Settlement Class Member to appeal the denial of a monetary award claim or the amount of the monetary award.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to receive benefits from this Settlement, and you want to retain the right to sue the NFL Parties about the legal issues in this case, then you must take steps to remove yourself from the Settlement.  You may do this by asking to be excluded – sometimes referred to as "opting out" of – the Settlement Class.

| **30.  How do I get out of the Settlement?** |
|---|

To exclude yourself from the Settlement, you must mail a letter or other written document to the Claims Administrator.  Your request must include:

- Your name, address, telephone number, and date of birth;

- A copy of your driver's license or other government issued identification;

- A statement that "I wish to exclude myself from the Settlement Class in *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323" (or substantially similar clear and unambiguous language); and

- Your signature by hand (not any form of electronic signature), and the date on which you signed it (even if represented by an attorney).

You must mail your exclusion request, postmarked no later than **Month 00, 0000** [Date ordered by the Court], to:

<div align="center">

NFL Concussion Settlement
P.O. Box 0000,
City, ST 00000

**QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

</div>

Exhibit 5                                                                                            Page 16

-1463-

**31.  If I do not exclude myself, can I sue the NFL Parties for the same thing later?**

No.  Unless you exclude yourself, you give up the right to sue the NFL Parties for all of the claims that this Settlement resolves.  If you want to maintain your own lawsuit relating to the claims released by the Settlement, then you must exclude yourself by **Month 00, 0000.**

**32.  If I exclude myself, can I still get benefits from this Settlement?**

No.  **If you exclude yourself from the settlement you will not get any Settlement benefits**.  You will not be eligible to receive a monetary award or participate in the Baseline Assessment Program.

## THE LAWYERS REPRESENTING YOU

**33.  Do I have a lawyer in the case?**

The Court has appointed a number of lawyers to represent all Settlement Class Members as "Co-Lead Class Counsel," "Class Counsel" and "Subclass Counsel" (*see* Question 6).  They are listed at the end of this Notice with their contact information.

You will not be charged for contacting these lawyers.  If you are represented by an attorney, you may contact your attorney to discuss the proposed Settlement.  You do not have to hire your own attorney.  However, if you want to be represented by your own lawyer, you may hire one at your own expense.

**34.  How will the lawyers be paid?**

At a later date to be determined by the Court, Co-Lead Class Counsel, Class Counsel and Subclass Counsel will ask the Court for an award of attorneys' fees and reasonable costs.  The NFL Parties have agreed not to oppose or object to the request for attorneys' fees and reasonable incurred costs if the request does not exceed $112.5 million.  These fees and incurred costs will be paid separately by the NFL Parties and not from the Baseline Assessment Program Fund, Education Fund, or Monetary Award Fund.  Settlement Class Members will have an opportunity to comment on and/or object to this request at an appropriate time.  Ultimately, the award of attorneys' fees and reasonable costs to be paid by the NFL Parties is subject to the approval of the Court.

After Final Settlement Approval, Co-Lead Class Counsel may ask the Court to set aside up to five percent of each Monetary Award and Derivative Claimant Award to facilitate the Settlement program and related efforts of Co-Lead Class Counsel, Class Counsel and Subclass Counsel.  If approved, this money would be held in a separate fund overseen by the Court.  Any future request for a set-aside will describe:  (1) the proposed amount; (2) how the money will be used; and (3) any other relevant information.  This "set-aside" would come out of the claimant's attorney's fee if represented by individual counsel or, if not represented, out of the Monetary Award or Derivative Claimant Award itself.  No money will be held back or set aside from any award without a Court order.  The set-aside is a matter between Class Counsel and individual counsel for Settlement Class Members.  The NFL Parties do not take a position on the proposal.

## OBJECTING TO THE SETTLEMENT

You may tell the Court that you do not agree with the Settlement or some part of it.

| 35.  How do I tell the Court if I do not like the Settlement? |
|---|

If you do not exclude yourself from the Settlement Class, you may object to the Settlement if you do not like some part of it.  The Court will consider your views.  To object to the Settlement, you or your attorney must submit your written objection to the Court.  The objection must include the following:

- The name of the case and multi-district litigation, *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323;

- Your name, address, telephone number, and date of birth;

- The name of the Retired NFL Football Player through which you are a Representative Claimant or Derivative Claimant (if you are not a retired player);

- Written evidence establishing that you are a Settlement Class Member;

- A detailed statement of your objections, and the specific reasons for each such objection, including any facts or law you wish to bring to the Court's attention;

- Any other supporting papers, materials or briefs that you want the Court to consider in support of your objection; and

- Your signature by hand (not any form of electronic signature), and the date on which you signed it (even if represented by an attorney).

The requirements to object to the Settlement are described in detail in the Settlement Agreement in section 14.3.

You must file your objection with the Court no later than **Month 00, 0000 [date ordered by the Court]**:

| COURT |
|---|
| Clerk of the District Court/NFL Concussion Settlement |
| United States District Court for the Eastern District of Pennsylvania |
| James A. Byrne U.S. Courthouse, |
| 601 Market Street, |
| Philadelphia, PA 19106-1797 |

| 36.  What is the difference between objecting to the Settlement and excluding myself? |
|---|

Objecting is simply telling the Court that you do not like something about the Settlement or want it to say something different.  You can object only if you do not exclude yourself from the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and you do

not want to receive any Settlement benefits.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement.  You may attend and you may ask to speak, but you do not have to.  The Court will determine if you are allowed to speak if you request to do so (*see* Question 39).

| **37.  When and where will the Court hold a Fairness Hearing concerning the Settlement?** |
| --- |

The Court will hold the Fairness Hearing at XX:00 x.m. on **Month 00, 0000**, at the United States District Court for the Eastern District of Pennsylvania, located at the James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106-1797.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.NFLConcussionSettlement.com or call **1-800-000-0000**.  At this hearing, the Court will hear evidence about whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them and may elect to listen to people who have asked to speak at the hearing.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.

The Court will consider the request for attorneys' fees and reasonable costs by Co-Lead Class Counsel, Class Counsel and Subclass Counsel (*see* Question 34) after the Fairness Hearing, which will be set at a later date by the Court.

| **38.  Do I have to attend the hearing?** |
| --- |

No.  Co-Lead Class Counsel, Class Counsel and Subclass Counsel will answer questions the Court may have.  But you are welcome to attend at your own expense.  If you timely file an objection, you do not have to come to Court to talk about it.  As long as you filed your written objection on time, the Court will consider it.  You may also have your own lawyer attend at your expense, but it is not necessary.

| **39.  May I speak at the hearing?** |
| --- |

You may ask the Court for permission to speak at the Fairness Hearing.  The Court will determine whether to grant you permission to speak.  To make such a request, you must file a written notice stating that it is your wish to speak at the *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323 Fairness Hearing.  Be sure to include your name, address, telephone number, and your signature.  Your request to speak must be filed with the Court no later than **Month 00, 0000** at the address in Question 35.

## GETTING MORE INFORMATION

| **40.  How do I get more information?** |
| --- |

This Notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement at www.NFLConcussionSettlement.com.  The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question

35 for the address).  You also may write with questions to NFL Concussion Settlement, P.O. Box 0000, City, ST 00000 or call **1-800-000-0000**.

**PLEASE DO NOT WRITE OR TELEPHONE THE COURT OR THE NFL PARTIES FOR INFORMATION ABOUT THE SETTLEMENT OR THIS LAWSUIT.**

| IMPORTANT DATES AND CONTACT INFORMATION | |
|---|---|
| **Exclusion "Opt Out" Deadline** | Month 00, 2014 |
| **Objection Deadline** | Month 00, 2014 |
| **Deadline to Request to Speak at the Fairness Hearing** | Month 00, 2014 |
| **Fairness Hearing** | Month 00, 2014 |
| **Start of Registration Period** | The start of the registration process and related deadlines will be announced on www.NFLConcussionSettlement.com following Final Settlement Approval |
| **Registration Deadline** | 180 days after registration begins |
| **Submit a Claim** | • Retired NFL Football Players and Representative Claimants for retired players who are diagnosed by the date of Final Settlement Approval must submit claims for monetary awards within two years of the announcement of the registration process.<br>• Retired NFL Football Players and Representative Claimants for retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of diagnosis to file claims. |
| **Settlement Administrator** | NFL Concussion Settlement<br>P.O. Box 0000<br>City, ST 00000<br>Tel: 1-800-000-0000 |
| **Court** | Clerk of the District Court/NFL Concussion Settlement<br>United States District Court for the Eastern District of Pennsylvania<br>James A. Byrne U.S. Courthouse,<br>601 Market Street,<br>Philadelphia, PA 19106-1797 |

| **Class Counsel** | Christopher A. Seeger<br>Co-Lead Class Counsel<br>SEEGER WEISS LLP<br>77 Water Street<br>New York, NY 10005 | Sol Weiss<br>Co-Lead Class Counsel<br>ANAPOL SCHWARTZ<br>1710 Spruce Street<br>Philadelphia, PA 19103 |
|---|---|---|
| | Steven C. Marks<br>Class Counsel<br>PODHURST ORSECK P.A.<br>City National Bank Building<br>25 W. Flagler Street, Suite 800<br>Miami, FL 33130-1780 | Gene Locks<br>Class Counsel<br>LOCKS LAW FIRM<br>The Curtis Center, Suite 720 East<br>601 Walnut Street<br>Philadelphia, PA 19106 |
| | Arnold Levin<br>Counsel - Subclass 1<br>LEVIN FISHBEIN SEDRAN & BERMAN<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106 | Dianne M. Nast, Counsel –<br>Counsel - Subclass 2<br>NAST LAW LLC<br>1101 Market Street, Suite 2801<br>Philadelphia, Pennsylvania 19107 |

QUESTIONS?  CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

Exhibit 5                                                                                    Page 21

**Reminder:** Provide your name and contact information now at www.NFLConcussionSettlement.com or by calling 1-800-000-0000.  This ensures that you will receive additional notice about the registration process and deadlines when it becomes available.

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : : | No. 2:12-md-02323-AB MDL No. 2323 **Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,* Plaintiffs, v. National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., Defendants. | : : : : : : : : : : : : | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : : : | |

**MOTION FOR APPROVAL OF
COMPLETED VERSIONS OF
LONG-FORM NOTICE AND SUMMARY NOTICE**

Pursuant to the Court's Order of July 7, 2014, Co-Lead Class Counsel hereby move for an Order approving the completed versions of the Long-Form Notice and the Summary Notice, which are attached as Exhibits 1 and 2 hereto.

WHEREFORE, Co-Lead Class Counsel request that the Court approve the attached completed versions of the Long-Form Notice and Summary Notice for posting upon the

Settlement Website, and for publication and mailing, in accordance with the Court's July 7, 2014

Order.

Dated:  July 8, 2014                                          Respectfully Submitted:

                                                               */s/ Christopher A. Seeger*
                                                               Christopher A. Seeger
                                                               **SEEGER WEISS LLP**
                                                               77 Water Street
                                                               New York, NY 10005
                                                               Phone:  (212) 584-0700
                                                               Fax:  (212) 584-0799
                                                               cseeger@seegerweiss.com

                                                               ***Co-Lead Class Counsel***

                                                               Sol Weiss
                                                               **ANAPOL SCHWARTZ**
                                                               1710 Spruce Street
                                                               Philadelphia, PA 19103
                                                               Phone:  (215) 735-1130
                                                               Fax:  (215) 735-2024
                                                               sweiss@anapolschwartz.com

                                                               ***Co-Lead Class Counsel***

# Exhibit 1

# NFL Concussion Settlement

## All Valid Claims of Retired NFL Football Players to be Paid in Full for 65 Years

### Monetary Awards, Baseline Medical Exams and Other Benefits Provided

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- The National Football League ("NFL") and NFL Properties, LLC (collectively, "NFL Parties") have agreed to a Settlement of a class action lawsuit seeking medical monitoring and compensation for brain injuries allegedly caused by head impacts experienced in NFL football. The NFL Parties deny that they did anything wrong.

- The Settlement Class includes all retired players of the NFL, American Football League ("AFL"), World League of American Football, NFL Europe League and NFL Europa League, as well as authorized representatives of deceased, legally incapacitated or incompetent retired players and family members of retired players who meet certain criteria.

- The Settlement will provide eligible retired players with:

  - Baseline neuropsychological and neurological exams to determine if retired players are: a) currently suffering from any neurocognitive impairment, including impairment serious enough for compensation, and b) eligible for additional testing and/or treatment ($75 million);

  - Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Parkinson's Disease, Alzheimer's Disease, early and moderate Dementia and certain cases of chronic traumatic encephalopathy (CTE) (a neuropathological finding) diagnosed after death. The maximum monetary awards range from $1.5 million to $5 million depending on the diagnosis. There is no cap on the amount of funds available to pay these Monetary Awards and all valid claims will be paid in full for 65 years; and

  - Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million).

- Authorized representatives of deceased, legally incapacitated or incompetent retired players and family members of retired players who meet certain criteria may also file claims for monetary awards (*see* Question 6).

- To get money, proof that injuries were caused by playing NFL football is not required.

- **Settlement Class Members <u>will need</u> to register to get benefits. Settlement Class Members may sign up at the website or call 1-855-887-3485 for additional information about the Settlement and updates on the registration process.**

(Continued on next page)

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **STAY IN THE SETTLEMENT CLASS** | To be included in the Settlement Class, no action is needed. Once the Court approves the Settlement, you will be bound by the terms and releases contained in the Settlement. To receive benefits, however, you will need to register at a later date (*see* Question 26). |
| **EXCLUDE YOURSELF (OPT OUT)** | If you exclude yourself (opt out), you will get no benefits from the Settlement. This is the only option that allows you to participate in any other lawsuit against the NFL Parties about the claims in this case (*see* Question 30). |
| **OBJECT** | Write to the Court if you do not like the Settlement (*see* Question 35). |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to grant final approval of the Settlement.

**This Notice is only a summary of the Settlement Agreement and your rights. You are encouraged to carefully review the complete Settlement Agreement at www.NFLConcussionSettlement.com.** The Settlement Agreement is also on file with the Clerk of the Court for the U.S. District Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling **1-855-887-3485**.

| What This Notice Contains |
|---|

## CHAPTER 1: INTRODUCTION

**BASIC INFORMATION**………………………………………………………………...Page 5
1. Why is this Notice being provided?
2. What is the litigation about?
3. What is a class action?
4. Why is there a Settlement?
5. What are the benefits of the Settlement?

**THE SETTLEMENT**……………………………………………………………………..Page 7
6. Who is included in the Settlement Class?
7. What players are not included in the Settlement Class?
8. What if I am not sure whether I am included in the Settlement Class?
9. What are the different levels of neurocognitive impairment?
10. Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

## CHAPTER 2: SETTLEMENT BENEFITS

**THE BASELINE ASSESSMENT PROGRAM**……………………………………….....Page 9
11. What is the Baseline Assessment Program ("BAP")?
12. Why should a retired player get a BAP baseline examination?
13. How does a retired player schedule a baseline assessment examination and where will it be done?

**MONETARY AWARDS**……………………………………………………………….. Page 10
14. What diagnoses qualify for monetary awards?
15. Do I need to prove that playing football caused the Qualifying Diagnosis?
16. How much money will I receive?
17. How does the age of the retired player at the time of first diagnosis affect a monetary award?
18. How does the number of seasons a retired player played affect a monetary award?
19. How do prior strokes or brain injuries of a retired player affect a monetary award?
20. How is a retired player's monetary award affected if he does not participate in the BAP program?
21. Can I receive a monetary award even though the retired player is dead?
22. Will this Settlement affect a retired player's participation in NFL or NFLPA related benefits programs?
23. Will this Settlement prevent retired players from bringing workers' compensation claims?

**EDUCATION FUND**………………………………………………………………………Page 14
24. What types of education programs are supported by the Settlement?

## CHAPTER 3: YOUR RIGHTS

**REMAINING IN THE SETTLEMENT**……………………………………………….Page 15
25. What am I giving up to stay in the Settlement Class?

**HOW TO GET BENEFITS**………………………………………………………....**Page 15**
26.    How do I get Settlement benefits?
27.    Is there a time limit to file claims for monetary awards?
28.    Can I re-apply for compensation if my claim is denied?
29.    Can I appeal the determination of my monetary award claim?

**EXCLUDING YOURSELF (OPTING OUT) FROM THE SETTLEMENT**……………….……**Page 16**
30.    How do I get out of the Settlement?
31.    If I do not exclude myself (opt out), can I sue the NFL Parties for the same thing later?
32.    If I exclude myself (opt out), can I still get benefits from this Settlement?

**THE LAWYERS REPRESENTING YOU**….……………………………….………….……..**Page 17**
33.    Do I have a lawyer in the case?
34.    How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**……….…….………………………………….……...**Page 18**
35.    How do I tell the Court if I do not like the Settlement?
36.    What is the difference between objecting to the Settlement and excluding myself (opting out)?

**THE COURT'S FAIRNESS HEARING**……………….………………….……….……..……..**Page 19**
37.    When and where will the Court hold a Fairness Hearing concerning the Settlement?
38.    Do I have to attend the hearing?
39.    May I speak at the hearing?

**GETTING MORE INFORMATION**….……………………………………….……….……..**Page 19**
40.    How do I get more information?

# CHAPTER 1: INTRODUCTION

## BASIC INFORMATION

### 1. Why is this Notice being provided?

The Court in charge of this case authorized this Notice because you have a right to know about the proposed Settlement of this lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement.  This Notice summarizes the Settlement and explains your legal rights and options.

This case is being heard in the U.S. District Court for the Eastern District of Pennsylvania.  The case is known as *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323.  The people who sued are called the "Plaintiffs."  The National Football League and NFL Properties, LLC are called the "NFL Defendants."

The Settlement may affect your rights if you are:  (a) a retired player of the NFL, AFL, World League of American Football, NFL Europe League or NFL Europa League, (b) an authorized representative of a deceased, legally incapacitated or incompetent retired player of those leagues, or (c) an individual with a close legal relationship with a retired player of those leagues, such as a spouse, parent or child.

### 2. What is the litigation about?

The Plaintiffs claim that retired players experienced head trauma during their NFL football playing careers that resulted in brain injuries, which have caused or may cause them long-term neurological problems.  The Plaintiffs accuse the NFL Parties of being aware of the evidence and the risks associated with repetitive traumatic brain injuries but failing to warn and protect the players against the long-term risks, and ignoring and concealing this information from the players.  The NFL Parties deny the claims in the litigation.

### 3. What is a class action?

In a class action, one or more people, the named plaintiffs (who are also called proposed "class representatives") sue on behalf of themselves and other people with similar claims.  All of these people together are the proposed "class" or "class members."  When a class action is settled, one court resolves the issues for all class members (in the settlement context, "settlement class members"), except for those who exclude themselves (opt out) from the settlement.  In this case, the proposed class representatives are Kevin Turner and Shawn Wooden.  Excluding yourself (opting out) means that you will not receive any benefits from the Settlement.  The process for excluding yourself (opting out) is described in Question 30.

### 4. Why is there a Settlement?

After extensive settlement negotiations mediated by retired United States District Court Judge Layn Phillips, and further settlement negotiations under the supervision of the Court-appointed Special Master, Perry Golkin, the Plaintiffs and the NFL Parties agreed to the Settlement.

A settlement is an agreement between a plaintiff and a defendant to resolve a lawsuit. Settlements conclude litigation without the court or a jury ruling in favor of the plaintiff or the defendant. A settlement allows the parties to avoid the cost and risk of a trial, as well as the delays of litigation.

If the Court approves this Settlement, the litigation between the Settlement Class Members and the NFL Parties is over. Only Settlement Class Members are eligible for the benefits summarized in this Notice. The NFL Parties will no longer be legally responsible to defend against the claims by Settlement Class Members made in this litigation.

The Court has not and will not decide in favor of the retired players or the NFL Parties. By reviewing this Settlement, the Court is not making and will not make any findings that any law was broken or that the NFL Parties did anything wrong.

The proposed Class Representatives and their lawyers ("Co-Lead Class Counsel," "Class Counsel," and "Subclass Counsel," *see* Question 33) believe that the proposed Settlement is best for everyone who is affected. The factors that Co-Lead Class Counsel, Class Counsel and Subclass Counsel considered included the uncertainty and delay associated with continued litigation, a trial and appeals and the uncertainty of particular legal issues that are yet to be determined by the Court. Co-Lead Class Counsel, Class Counsel and Subclass Counsel balanced these and other substantial risks in determining that the Settlement is fair, reasonable and adequate in light of all circumstances and in the best interests of the Settlement Class Members.

The Settlement Agreement is available at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the U.S. District Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling **1-855-887-3485**.

| **5.  What are the benefits of the Settlement?** |
|---|

Under the Settlement, the NFL Parties will pay to fund:

- Baseline neuropsychological and neurological examinations for eligible retired players, and additional medical testing, counseling and/or treatment if they are diagnosed with moderate cognitive impairment during the baseline examinations (up to $75 million, "Baseline Assessment Program") (*see* Questions 11-13);

- Monetary awards for diagnoses of Death with CTE prior to **July 7, 2014**, ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) and Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) (*see* Questions 14-21); **All valid claims under the Settlement, without limitation, will be paid in full throughout the 65-year life of the Settlement (the "Monetary Award Fund")**; and

- Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million) (*see* Question 24).

In addition, the NFL Parties will pay the cost of notifying the Settlement Class. Administrative costs and expenses will be paid out of the Monetary Award Fund. The Baseline Assessment Program costs and expenses will be paid out of the Baseline Assessment Program Fund.

The details of the Settlement benefits are in the Settlement Agreement, which is available at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the U.S. District Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling **1-855-887-3485**.

**Note:** The Baseline Assessment Program and Monetary Award Fund will be administered independently of the NFL Parties and any benefit programs that have been created between the NFL and the NFL Players Association. The NFL Parties are not involved in determining the validity of claims under the Settlement.

## THE SETTLEMENT

| 6.  Who is included in the Settlement Class? |
| --- |

This Settlement Class includes three types of people:

Retired NFL Football Players:  All living NFL Football players who, prior to **July 7, 2014**, (1) have retired, formally or informally, from playing professional football with the NFL or any Member Club, including AFL, World League of American Football, NFL Europe League and NFL Europa League players, or (2) were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and no longer are under contract to a Member Club and are not seeking active employment as a player with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club.

Representative Claimants:  Authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased, legally incapacitated or incompetent Retired NFL Football Players.

Derivative Claimants:  Spouses, parents, dependent children, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a living or deceased Retired NFL Football Player.  (For example, a spouse asserting the right to sue due to the injury of a husband who is a Retired NFL Football Player.)

The Settlement recognizes two separate groups ("Subclasses") of Settlement Class Members based on the Retired NFL Football Player's injury status prior to **July 7, 2014**:

- Subclass 1 includes: Retired NFL Football Players who were <u>not</u> diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE prior to **July 7, 2014**, and their Representative Claimants and Derivative Claimants.

- Subclass 2 includes:

  - Retired NFL Football Players who <u>were</u> diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to **July 7, 2014**, and their Representative Claimants and Derivative Claimants; and

o   Representative Claimants of deceased Retired NFL Football Players who were diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to death or who died prior to **July 7, 2014** and received a diagnosis of Death with CTE.

## 7.  What players are not included in the Settlement Class?

The Settlement Class does not include current NFL players.  The Settlement Class also does not include people who tried out for but did not make it onto preseason, regular season or postseason rosters or practice, developmental or taxi squads of the NFL or any Member Clubs.

## 8.  What if I am not sure whether I am included in the Settlement Class?

If you are not sure whether you are included in the Settlement Class, you may call **1-855-887-3485** with questions or visit www.NFLConcussionSettlement.com.  You may also write with questions to NFL Concussion Settlement, **P.O. Box 25369, Richmond, VA 23260**.  You may also consult with your own attorney.

## 9.  What are the different levels of neurocognitive impairment?

In addition to ALS, Parkinson's Disease and Alzheimer's Disease, various levels of neurocognitive impairment are covered by this Settlement.  More details can be found in the Injury Definitions, which are available at www.NFLConcussionSettlement.com or by calling **1-855-887-3485**.

The level of Neurocognitive Impairment will be established in part with evidence of decline in performance in at least two areas subject to clinical evaluative testing, provided one of the areas is executive function, learning and memory, or complex attention, and related functional impairment as follows:

| LEVEL OF NEUROCOGNITIVE IMPAIRMENT | TYPE OF IMPAIRMENT | DEGREE OF DECLINE |
|---|---|---|
| Level 1 | Moderate cognitive impairment | Moderate cognitive decline |
| Level 1.5 | Early Dementia | Moderate to severe cognitive decline |
| Level 2 | Moderate Dementia | Severe cognitive decline |

If neurocognitive impairment is temporary and only occurs with delirium, or as a result of substance abuse or medicinal side effects, it is not covered by the Settlement.

## 10.  Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

No.  A retired player can be a Settlement Class Member regardless of whether he is vested due to credited seasons or total and permanent disability under the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

# CHAPTER 2:  SETTLEMENT BENEFITS

## THE BASELINE ASSESSMENT PROGRAM

| **11.  What is the Baseline Assessment Program ("BAP")?** |
|---|

All living retired players who have earned at least one-half of an Eligible Season (*see* Question 18), who do not exclude themselves (opt out) from the Settlement (*see* Question 30), and who timely register to participate in the Settlement (*see* Question 26) may participate in the Baseline Assessment Program ("BAP").

The BAP will provide baseline neuropsychological and neurological assessment examinations to determine whether retired players are currently suffering from cognitive impairment.  Retired players will have from two to ten years, depending on their age as of the date the Settlement is finally approved and any appeals are fully resolved ("Final Settlement Approval"), to have a baseline examination conducted through a nationwide network of qualified and independent medical providers.

- Retired players 43 or older as of the date of Final Settlement Approval will need to have a baseline examination within two years of the start of the BAP.

- Retired players under the age of 43 as of the date the date of Final Settlement Approval will need to have a baseline examination within 10 years of the start of the BAP, or before they turn 45, whichever comes sooner.

Retired players who are diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment) are eligible to receive further medical testing and/or treatment (including counseling and pharmaceuticals) for that condition during the ten-year term of the BAP or within five years from diagnosis, whichever is later.

Retired players who participate in the BAP will be encouraged to provide their confidential medical records for use in research into cognitive impairment and safety and injury prevention with respect to football players.

Although all retired players are encouraged to take advantage of the BAP and receive a baseline examination, they do not need to participate in the BAP to receive a monetary award.  Any award to a retired player may be reduced by 10% if the retired player does not participate in the BAP, as explained in more detail in Question 20.

| **12.  Why should a retired player get a BAP baseline examination?** |
|---|

Getting a BAP baseline examination will be beneficial.  It will determine whether the retired player has any cognitive impairment.  If he is diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment), he will be eligible to receive further medical testing and/or treatment for that condition.  In addition, regardless of any cognitive impairment today, the results of the BAP baseline examination can be used as a comparison to measure any subsequent deterioration of cognitive condition over the course of his life.  Participants also will be examined by at least two experts during the BAP baseline examinations, a

neuropsychologist and a neurologist, and the retired player and/or his family members will have the opportunity to ask questions relating to any cognitive impairment during those examinations.

Participation in the BAP does not prevent the retired player from filing a claim for a monetary award. For the next 65 years, retired players will be eligible for compensation paid from the Monetary Award Fund if the player develops a Qualifying Diagnosis (*see* Question 14). Participation in the BAP also will help ensure that, to the extent the retired player receives a Qualifying Diagnosis in the future, he will receive the maximum monetary award to which he is entitled (*see* Question 20).

| **13.  How does a retired player schedule a baseline assessment examination and where will it be done?** |
|---|

Retired players need to register for Settlement benefits before they can get a baseline assessment examination. Registration for benefits will not be available until after Final Settlement Approval. **A retired player may provide his name and contact information now at www.NFLConcussionSettlement.com or by calling 1-855-887-3485. This ensures that the retired player will receive additional notice about the registration process and deadlines when it becomes available.**

The BAP Administrator will send notice to those retired players determined during registration to be eligible for the BAP, explaining how to arrange for an initial baseline assessment examination. The BAP will use a nationwide network of qualified and independent medical providers who will provide both the initial baseline assessment as well as any further testing and/or treatment. The BAP Administrator, which will be appointed by the Court, will establish the network of medical providers.

# MONETARY AWARDS

| **14.  What diagnoses qualify for monetary awards?** |
|---|

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund.

If a retired player receives a monetary award based on a Qualifying Diagnosis, and later is diagnosed with a different Qualifying Diagnosis that entitles him to a larger monetary award than his previous award, he will be eligible for an increase in compensation. This would also apply to Derivative Claimants.

Qualifying Diagnoses must be made by approved qualified specialists. Any time prior to Final Settlement Approval, only board-certified neurologists, board-certified neurosurgeons or board-certified neuro-specialist physicians or similarly qualified specialists can make Qualifying Diagnoses. Following Final Settlement Approval, only qualified specialists approved by the Claims Administrator will be able to make Qualifying Diagnoses with the exception of Qualifying Diagnoses made through the BAP.

| **15.  Do I need to prove that playing football caused the Qualifying Diagnosis?** |
|---|

No. No proof is necessary that a retired player's Qualifying Diagnosis was caused by playing football or that he experienced head injuries in the NFL, AFL, World League of American Football, NFL Europe

League or NFL Europa League in order to receive a monetary award. The fact that a retired player receives a Qualifying Diagnosis is sufficient to be eligible for a monetary award.

You also do not need to exclude the possibility that the Qualifying Diagnosis was caused or contributed to by amateur football or other professional football league injuries or by various risk factors linked to the Qualifying Diagnosis.

### 16. How much money will I receive?

The amount of money you will receive depends on the retired player's:
- Specific Qualifying Diagnosis,
- Age at the time of diagnosis (*see* Question 17),
- Number of seasons played or practiced in the NFL or the AFL (*see* Question 18),
- Diagnosis of a prior stroke or traumatic brain injury (*see* Question 19), and
- Participation in a baseline assessment exam (*see* Question 20).

The amount of money you will receive also depends on:
- Any legally enforceable liens on the award,
- Any retainer agreement with an attorney, and
- Any further assessments ordered by the Court (*see* Question 34).

Certain costs and expenses related to resolving any liens for Settlement Class Members will be paid out of such Settlement Class Members' monetary awards or derivative claimant awards.

The table below lists the maximum amount of money available for each Qualifying Diagnosis before any adjustments are made.

| QUALIFYING DIAGNOSIS | MAXIMUM AWARD AVAILABLE |
|---|---|
| Amyotrophic lateral sclerosis (ALS) | $5 million |
| Death with CTE (diagnosed after death) | $4 million |
| Parkinson's Disease | $3.5 million |
| Alzheimer's Disease | $3.5 million |
| Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) | $3 million |
| Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) | $1.5 million |

Monetary awards may be increased up to 2.5% per year during the 65-year Monetary Award Fund term for inflation.

To receive the maximum amount outlined in the table, a retired player must have played for at least five Eligible Seasons (*see* Question 18) and have been diagnosed when younger than 45 years old.

Derivative Claimants are eligible to be compensated from the monetary award of the retired player with whom they have a close relationship in an amount of 1% of that award. If there are multiple Derivative Claimants for the same retired player, the 1% award will be divided among the Derivative Claimants according to the law where the retired player (or his Representative Claimant, if any) resides.

**17.  How does the age of the retired player at the time of first diagnosis affect a monetary award?**

Awards are reduced for retired players who were 45 or older when diagnosed.  The younger a retired player is at the time of diagnosis, the greater the award he will receive.  Setting aside the other downward adjustments to monetary awards, the table below provides:

- The average award within each age range for people diagnosed between the ages of 45-79; and
- The amount of the award for those under age 45 and over 79.

The actual amount will be determined based on each retired player's actual age at the time of diagnosis and on other potential adjustments.

| AGE AT DIAGNOSIS | ALS | DEATH w/CTE | PARKINSON'S | ALZHEIMER'S | LEVEL 2 | LEVEL 1.5 |
|---|---|---|---|---|---|---|
| Under 45 | $5,000,000 | $4,000,000 | $3,500,000 | $3,500,000 | $3,000,000 | $1,500,000 |
| 45 - 49 | $4,500,000 | $3,200,000 | $2,470,000 | $2,300,000 | $1,900,000 | $950,000 |
| 50 - 54 | $4,000,000 | $2,300,000 | $1,900,000 | $1,600,000 | $1,200,000 | $600,000 |
| 55 - 59 | $3,500,000 | $1,400,000 | $1,300,000 | $1,150,000 | $950,000 | $475,000 |
| 60 - 64 | $3,000,000 | $1,200,000 | $1,000,000 | $950,000 | $580,000 | $290,000 |
| 65 - 69 | $2,500,000 | $980,000 | $760,000 | $620,000 | $380,000 | $190,000 |
| 70 - 74 | $1,750,000 | $600,000 | $475,000 | $380,000 | $210,000 | $105,000 |
| 75 - 79 | $1,000,000 | $160,000 | $145,000 | $130,000 | $80,000 | $40,000 |
| 80+ | $300,000 | $50,000 | $50,000 | $50,000 | $50,000 | $25,000 |

**Note:** The age of the retired player at diagnosis (not the age when applying for a monetary award) is used to determine the monetary amount awarded.

**18.  How does the number of seasons a retired player played affect a monetary award?**

Awards are reduced for retired players who played less than five "Eligible Seasons."  The Settlement uses the term "Eligible Season" to count the seasons in which a retired player played or practiced in the NFL or AFL.  A retired player earns an Eligible Season for:

- Each season where he was on an NFL or AFL Member Club's "Active List" for either three or more regular season or postseason games, or

- Where he was on an Active List for one or more regular or postseason games and then spent two regular or postseason games on an injured reserve list or inactive list due to a concussion or head injury.

- A retired player also earns one-half of an Eligible Season for each season where he was on an NFL or AFL Member Club's practice, developmental or taxi squad for at least eight games, but did not otherwise earn an Eligible Season.

The "Active List" means the list of all players physically present, eligible and under contract to play for an NFL or AFL Member Club on a particular game day within any applicable roster or squad limits in the applicable NFL or AFL Constitution and Bylaws.

Time spent playing or practicing in the World League of American Football, NFL Europe League and NFL Europa League does not count towards an Eligible Season.

The table below lists the reductions to a retired player's (or his Representative Claimant's) monetary award if the retired player has less than five Eligible Seasons. To determine the total number of Eligible Seasons credited to a retired player, add together all of the earned Eligible Seasons and half Eligible Seasons. For example, if a retired player earned two Eligible Seasons and three half Eligible Seasons, he will be credited with 3.5 Eligible Seasons.

| NUMBER OF ELIGIBLE SEASONS | PERCENTAGE OF REDUCTION |
|---|---|
| 4.5 | 10% |
| 4 | 20% |
| 3.5 | 30% |
| 3 | 40% |
| 2.5 | 50% |
| 2 | 60% |
| 1.5 | 70% |
| 1 | 80% |
| .5 | 90% |
| 0 | 97.5% |

**19. How do prior strokes or traumatic brain injuries of a retired player affect a monetary award?**

It depends. A retired player's monetary award (or his Representative Claimant monetary award) will be reduced by 75% if he experienced: (1) a medically diagnosed stroke that occurred before or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis; or (2) a severe traumatic brain injury unrelated to NFL football that occurred during or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis.

The award will not be reduced if the retired player (or his Representative Claimant) can show by clear and convincing evidence that the stroke or traumatic brain injury is not related to the Qualifying Diagnosis.

**20. How is a retired player's monetary award affected if he does not participate in the BAP program?**

It depends on when the retired player receives his Qualifying Diagnosis and the nature of the diagnosis. There is a 10% reduction to the monetary award only if the retired player:

- Did not receive a Qualifying Diagnosis prior to **July 7, 2014**, and

- Does not participate in the BAP, and

- Receives a Qualifying Diagnosis (other than ALS) after his deadline to receive a BAP baseline assessment examination.

**21.  Can I receive a monetary award even though the retired player is dead?**

Yes.  Representative Claimants for deceased retired players with a Qualifying Diagnoses will be eligible to receive monetary awards.  If the deceased retired player died before January 1, 2006, however, the Representative Claimant will only receive a monetary award if the Court determines that a wrongful death or survival claim is allowed under applicable state law.

Derivative Claimants also will be eligible for a total award of 1% of the monetary award that the Representative Claimant for the deceased retired player receives (*see* Question 16).

Representative and Derivative Claimants will also need to register for Settlement benefits (*see* Question 26).

**22.  Will this Settlement affect a retired player's participation in NFL or NFLPA-related benefits programs?**

No.  The Settlement benefits are completely independent of any benefits programs that have been created by or between the NFL and the NFL Players Association.  This includes the 88 Plan (Article 58 of the 2011 Collective Bargaining Agreement) and the Neuro-Cognitive Disability Benefit (Article 65 of the 2011 Collective Bargaining Agreement).

**Note:**  The Settlement ensures that a retired player who has signed, or will sign, a release as part of his Neuro-Cognitive Disability Benefit application, will not be denied Settlement benefits.

**23.  Will this Settlement prevent retired players from bringing workers' compensation claims?**

No.  Claims for workers' compensation will not be released by this Settlement.

## EDUCATION FUND

**24.  What type of education programs are supported by the Settlement?**

The Settlement will provide $10 million in funding to support education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives.

Retired players will be able to actively participate in such initiatives if they desire.

# CHAPTER 3:  YOUR RIGHTS

## REMAINING IN THE SETTLEMENT

### 25.  What am I giving up to stay in the Settlement Class?

Unless you exclude yourself (opt out) from the Settlement (*see* Question 30), you cannot sue the NFL Parties, the Member Clubs, or related individuals and entities, or be part of any other lawsuit against the NFL Parties about the issues in this case.  This means you give up your right to continue to litigate any claims related to this Settlement, or file new claims, in any court or in any proceeding at any time.  **However, the Settlement does not release any claims for workers' compensation (*see* Question 23) or claims alleging entitlement to NFL medical and disability benefits available under the Collective Bargaining Agreement**.

Please note that certain Plaintiffs also sued the football helmet manufacturer Riddell and certain related entities (specifically, Riddell, Inc., Riddell Sports Group Inc., All American Sports Corporation, Easton-Bell Sports, Inc., EB Sports Corp., Easton-Bell Sports, LLC and RBG Holdings Corp.).  **They are not parties to this Settlement and claims against them are not released by this Settlement**.

Article XVIII of the Settlement Agreement contains the complete text and details of what Settlement Class Members give up unless they exclude themselves (opt out) from the Settlement, so please read it carefully.  The Settlement Agreement is available at www.NFLConcussionSettlement.com.  The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question 35 for the address).  You can also get this information by calling **1-855-887-3485**.  If you have any questions you can talk to the law firms listed in the chart at the end of this Notice for free or you can talk to your own lawyer if you have questions about what this means.

## HOW TO GET BENEFITS

### 26.  How do I get Settlement benefits?

To get benefits, you will need to register.  This is true for all Settlement Class Members, including Representative and Derivative Claimants.  Registration for benefits will not begin until after Final Settlement Approval (*see* Question 37).  If and when that occurs, further notice will be provided about the registration process and deadlines.  **However, you may provide your name and contact information now at www.NFLConcussionSettlement.com or by calling 1-855-887-3485.  This ensures that you will receive additional notice about the registration process and deadlines when that becomes available.**  To receive any Settlement benefits, you must register on or before 180 days from the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com.  Information about the registration deadline will also be available by calling **1-855-887-3485.**

### 27.  Is there a time limit to file claims for monetary awards?

Yes.  Retired NFL Football Players and Representative Claimants for retired players who are diagnosed by the date of Final Settlement Approval must submit claims for monetary awards within two years of the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com.  Retired NFL Football Players and Representative Claimants for

retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of diagnosis to file claims. This deadline may be extended up to an additional two years upon a showing of substantial hardship.

Derivative Claimants must submit claims no later than 30 days after a Retired NFL Football Player or a Representative Claimant receives notice of an entitlement to a monetary award. All claims must be submitted by the end of the 65-year term of the Monetary Award Fund.

### 28. Can I re-apply for compensation if my claim is denied?

Yes. A Settlement Class Member who submits a claim for a monetary award that is denied can re-apply in the future should the Retired NFL Football Player's medical condition change.

### 29. Can I appeal the determination of my monetary award claim?

Yes. The Settlement establishes an independent process for a Settlement Class Member to appeal the denial of a monetary award claim or the amount of the monetary award.

## EXCLUDING YOURSELF (OPTING OUT) FROM THE SETTLEMENT

If you want to retain the right to sue the NFL Parties about the legal issues in this case, then you must take steps to remove yourself from the Settlement. You may do this by asking to be excluded from—opting out of—the Settlement Class. If you exclude yourself (opt out), you cannot receive benefits from this Settlement.

### 30. How do I get out of the Settlement?

On or before **October 14, 2014**, you must mail a letter or other written document to the Claims Administrator requesting exclusion from the Settlement Class. Your request must include:

- Your name, address, telephone number, and date of birth;

- A copy of your driver's license or other government issued identification;

- A statement that "I wish to exclude myself from the Settlement Class in *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323" (or substantially similar clear and unambiguous language); and

- Your signature by hand, and the date on which you signed it (even if represented by an attorney).

You must mail your exclusion (opt out) request, postmarked on or before **October 14, 2014**, to:
NFL Concussion Settlement
P.O. Box 25369
Richmond, VA 23260

Your request to exclude yourself (opt out) is not effective unless and until the District Court grants Final Approval.

**31.  If I do not exclude myself (opt out), can I sue the NFL Parties for the same thing later?**

No.  Unless you exclude yourself (opt out), you give up the right to sue the NFL Parties for all of the claims that this Settlement resolves.  If you want to maintain your own lawsuit relating to the claims released by the Settlement, then you must exclude yourself (opt out) on or before **October 14, 2014.**

**32.  If I exclude myself (opt out), can I still get benefits from this Settlement?**

No.  **If you exclude yourself (opt out) from the Settlement you will not get any Settlement benefits**.  You will not be eligible  to receive a monetary award or participate in the Baseline Assessment Program.

## THE LAWYERS REPRESENTING YOU

**33.  Do I have a lawyer in the case?**

The Court has appointed a number of lawyers to represent all Settlement Class Members as "Co-Lead Class Counsel," "Class Counsel" and "Subclass Counsel" (*see* Question 6).  They are listed at the end of this Notice with their contact information.

You will not be charged for contacting these lawyers.  If you are represented by an attorney, you may contact your attorney to discuss the proposed Settlement.  You do not have to hire your own attorney.  However, if you want to be represented by your own lawyer, you may hire one at your own expense.

**34.  How will the lawyers be paid?**

At a later date to be determined by the Court, Co-Lead Class Counsel, Class Counsel and Subclass Counsel will ask the Court for an award of attorneys' fees and reasonable costs.  The NFL Parties have agreed not to oppose or object to the request for attorneys' fees and reasonable incurred costs if the request does not exceed $112.5 million.  These fees and incurred costs will be paid separately by the NFL Parties and not from the Baseline Assessment Program Fund, Education Fund or Monetary Award Fund.  Settlement Class Members will have an opportunity to comment on and/or object to this request at an appropriate time.  Ultimately, the award of attorneys' fees and reasonable costs to be paid by the NFL Parties is subject to the approval of the Court.

After Final Settlement Approval, Co-Lead Class Counsel may ask the Court to set aside up to five percent of each monetary award and derivative claimant award to facilitate the Settlement program and related efforts of Co-Lead Class Counsel, Class Counsel and Subclass Counsel.  If approved, this money would be held in a separate fund overseen by the Court.  Any future request for a set-aside will describe:  (1) the proposed amount; (2) how the money will be used; and (3) any other relevant information.  This "set-aside" would come out of the claimant's attorney's fee if represented by individual counsel or, if not represented, out of the monetary award and derivative claimant award itself.  No money will be held back or set aside from any award without a Court order.  The set-aside is a matter between Class Counsel and individual counsel for Settlement Class Members.  The NFL Parties do not take a position on the proposal.

## OBJECTING TO THE SETTLEMENT

| **35. How do I tell the Court if I do not like the Settlement?** |
| --- |

If you have not excluded yourself (opted out), you may object to the Settlement or any part of it. The Court will consider your views. To object to the Settlement, you or your attorney must submit your written objection to the Court. The objection must include the following:

- The name of the case and multidistrict litigation, *In re: National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323;

- Your name, address, telephone number, and date of birth;

- If you are a Representative Claimant or Derivative Claimant, the name of the Retired NFL Football Player to whom you are related;

- Written statement or evidence establishing how you are a Settlement Class Member;

- A detailed statement of your objections, and the specific reasons for each such objection, including any facts or law you wish to bring to the Court's attention;

- Any other supporting papers, materials or briefs that you want the Court to consider in support of your objection; and

- Your signature by hand, and the date on which you signed it (even if represented by an attorney).

Attorneys filing objections on behalf of Settlement Class Members must follow the requirements in Section 14.3(b) of the Settlement Agreement.

You must mail your objection, postmarked on or before **October 14, 2014**, to:

| **COURT** |
| --- |
| Clerk of the District Court/NFL Concussion Settlement |
| U.S. District Court for the Eastern District of Pennsylvania |
| United States Courthouse |
| 601 Market Street |
| Philadelphia, PA 19106-1797 |

| **36. What is the difference between objecting to the Settlement and excluding myself (opting out)?** |
| --- |

Objecting is simply telling the Court that you do not like something about the Settlement or want it to say something different. You can object only if you do not exclude yourself (opt out) from the Settlement Class. Excluding yourself (opting out) is telling the Court that you do not want to be part of the Settlement Class and you do not want to receive any Settlement benefits. If you exclude yourself (opt out), you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you do not have to. The Court will determine if you are allowed to speak if you request to do so (*see* Question 39).

| **37.  When and where will the Court hold a Fairness Hearing concerning the Settlement?** |
|---|

The Court will hold the Fairness Hearing on **Wednesday, November 19, 2014 at 10:00 a.m.** at the United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania 19106 in Courtroom 7B. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.NFLConcussionSettlement.com or call **1-855-887-3485**. At this hearing, the Court will hear evidence about whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them and may elect to listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long the decision will take.

After the Fairness Hearing, the Court will consider the request for attorneys' fees and reasonable costs by Co-Lead Class Counsel, Class Counsel and Subclass Counsel (*see* Question 34).

| **38.  Do I have to attend the hearing?** |
|---|

No. Co-Lead Class Counsel, Class Counsel and Subclass Counsel will answer questions the Court may have. But you are welcome to attend at your own expense. If you timely file an objection, you do not have to come to Court to talk about it. As long as you filed your written objection on time, the Court will consider it. You may also have your own lawyer attend at your expense, but it is not necessary.

| **39.  May I speak at the hearing?** |
|---|

On or before **November 3, 2014**, you may ask the Court for permission to speak at the Fairness Hearing. The Court will determine whether to grant you permission to speak. To make such a request, you must send written notice to the Court stating your intention to speak at the *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323 Fairness Hearing. Be sure to include your name, address, telephone number, and your signature. Your request to speak must be sent to the Court at the address in Question 35.

## GETTING MORE INFORMATION

| **40.  How do I get more information?** |
|---|

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You also may write with questions to NFL Concussion Settlement, **P.O. Box 25369, Richmond, VA 23260** or call **1-855-887-3485**. **PLEASE DO NOT WRITE OR TELEPHONE THE COURT OR THE NFL PARTIES FOR INFORMATION ABOUT THE SETTLEMENT OR THIS LITIGATION.**

| IMPORTANT DATES & CONTACT INFORMATION | |
|---|---|
| **Exclusion (Opt Out) Deadline** | October 14, 2014 |
| **Objection Deadline** | October 14, 2014 |
| **Deadline to Request to Speak at the Fairness Hearing** | November 3, 2014 |
| **Fairness Hearing** | November 19, 2014 |
| **Start of Registration Period** | The date the announcement of the registration process is posted on the Settlement Website. (This will occur following Final Settlement Approval after all appeals.) |
| **Registration Deadline** | 180 days after the start of the registration period |
| **Deadline to Receive a BAP** | • For retired players age 43 or older: Within two years of Final Settlement Approval<br>• For retired players under age 43: Within ten years of Final Approval or before age 45, whichever comes sooner |
| **Deadline to Submit a Claim** | • For retired players (and their Representative Claimants) diagnosed by the date of Final Settlement Approval: Within two years from the start of the Registration Period<br>• For retired players (and their Representative Claimants) diagnosed after the date of Final Settlement Approval: Within two years from the date of diagnosis |
| **Settlement Administrator** | **NFL Concussion Settlement**<br>**P.O. Box 25369**<br>**Richmond, VA 23260**<br>**Tel: 1-855-887-3485** |
| **Court** | Clerk of the District Court/NFL Concussion Settlement<br>U.S. District Court for the Eastern District of Pennsylvania<br>United States Courthouse<br>601 Market Street<br>Philadelphia, PA 19106-1797 |
| **Class Counsel** | Christopher A. Seeger<br>Co-Lead Class Counsel<br>SEEGER WEISS LLP<br>77 Water Street<br>New York, NY 10005 |

| | Christopher A. Seeger<br>Co-Lead Class Counsel<br>SEEGER WEISS LLP<br>77 Water Street<br>New York, NY 10005 | Sol Weiss<br>Co-Lead Class Counsel<br>ANAPOL SCHWARTZ<br>1710 Spruce Street<br>Philadelphia, PA 19103 |
|---|---|---|
| | Steven C. Marks<br>Class Counsel<br>PODHURST ORSECK P.A.<br>City National Bank Building<br>25 W. Flagler Street, Suite 800<br>Miami, FL 33130-1780 | Gene Locks<br>Class Counsel<br>LOCKS LAW FIRM<br>The Curtis Center, Suite 720 East<br>601 Walnut Street<br>Philadelphia, PA 19106 |
| | Arnold Levin<br>Counsel - Subclass 1<br>LEVIN FISHBEIN SEDRAN & BERMAN<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106 | Dianne M. Nast, Counsel – Counsel - Subclass 2<br>NAST LAW LLC<br>1101 Market Street, Suite 2801<br>Philadelphia, Pennsylvania 19107 |

# Exhibit 2

# NFL Concussion Settlement

**All Valid Claims of Retired NFL Football Players to be Paid in Full for 65 Years**

**Monetary Awards, Baseline Medical Exams and Other Benefits Provided**

The NFL and NFL Properties have agreed to a class action Settlement with retired players who sued, accusing them of failing to warn of and hiding the dangers of brain injury associated with playing football. The Settlement does not establish any wrongdoing on the part of the NFL or NFL Properties.

### Who is included in the Settlement?
The Settlement Class generally includes all retired players of the NFL, AFL, World League of American Football, NFL Europe League and NFL Europa League. The Settlement Class includes immediate family members of retired players and legal representatives of incapacitated, incompetent or deceased players.

### What does the Settlement provide?
The Settlement provides money for three benefits:

- Baseline medical exams to determine if retired players suffer from neurocognitive impairment and are entitled to additional testing and/or treatment ($75 million),
- Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Alzheimer's Disease, Parkinson's Disease, Dementia and certain cases of chronic traumatic encephalopathy or CTE (a neuropathological finding) diagnosed after death. The maximum monetary awards range from $1.5 million to $5 million depending on the diagnosis. All valid claims will be paid in full for 65 years; and
- Education programs and initiatives related to football safety ($10 million).

### How can I get benefits?
You will need to register for benefits after the final approval of the Settlement. You may provide your contact information now at the website or phone number below to ensure that you receive additional notice about the registration process.

Retired players do <u>not</u> have to prove that their injuries were caused by playing NFL football to get money from the Settlement.

### What are my rights?
You do not need to do anything to be included in the Settlement Class. All Settlement Class members will be bound by the Settlement and give up the right to sue the NFL individually. If you want to keep your right to sue the NFL, you must exclude yourself from the Class by **October 14, 2014**. If you exclude yourself, you will not receive any

benefits under the Settlement.  If you stay in the Class, you may object to the Settlement by **October 14, 2014**.

The Court will hold a hearing on **November 19, 2014** to consider whether to approve the Settlement.  You do not have to attend.  However, you and/or your own lawyer may attend and request to speak at the hearing at your own expense.  At a later date, the attorneys will ask the Court for an award of attorneys' fees and reasonable costs.  The NFL and NFL Properties have agreed not to oppose or object to the request if the request does not exceed $112.5 million.  The money would be paid by the NFL and NFL Properties in addition to the payments described above.

**Please Share this Notice with Other Retired Players and Their Families**

For More Information on the Settlement and Registering for Benefits: 1-855-887-3485 or **www.NFLConcussionSettlement.com**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB |
| | MDL No. 2323 |
| | **Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,* Plaintiffs, | |
| | Civ. Action No. 14-00029-AB |
| v. | |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

### [PROPOSED] ORDER

**AND NOW**, this ___ day of _____, 2014, upon consideration of the Motion of Co-Lead Class Counsel for an Order approving the completed versions of the Long-Form Notice and the Summary Notice, which are attached as Exhibits 1 and 2 hereto, said Motion is granted. The attached Long-Form Notice and Summary Notice shall be posted upon the

Settlement Website, and shall be published and mailed, in accordance with the Court's July 7,

2014 Order.


SO ORDERED this _____ day of _____, 2014.



_____
Anita B. Brody
United States District Court Judge

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,*<br>        Plaintiffs,<br><br>          v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br>        Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS |  |

## ORDER

**AND NOW,** this __9th___ day of July, 2014, it is **ORDERED**, upon consideration of the motion of Co-Lead Class Counsel for an Order approving the completed versions of the Long-Form Notice and the Summary Notice [ECF No. 6086], that the motion is **GRANTED**. The attached Long-Form Summary Notice and Summary Notice must be posted on the Settlement Website and disseminated in accordance with the Order of July 7, 2014 [ECF No. 6084].

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:          Copies **MAILED** on _____ to:

# Exhibit 1

# NFL Concussion Settlement

### All Valid Claims of Retired NFL Football Players to be Paid in Full for 65 Years

#### Monetary Awards, Baseline Medical Exams and Other Benefits Provided

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- The National Football League ("NFL") and NFL Properties, LLC (collectively, "NFL Parties") have agreed to a Settlement of a class action lawsuit seeking medical monitoring and compensation for brain injuries allegedly caused by head impacts experienced in NFL football. The NFL Parties deny that they did anything wrong.

- The Settlement Class includes all retired players of the NFL, American Football League ("AFL"), World League of American Football, NFL Europe League and NFL Europa League, as well as authorized representatives of deceased, legally incapacitated or incompetent retired players and family members of retired players who meet certain criteria.

- The Settlement will provide eligible retired players with:

  - Baseline neuropsychological and neurological exams to determine if retired players are: a) currently suffering from any neurocognitive impairment, including impairment serious enough for compensation, and b) eligible for additional testing and/or treatment ($75 million);

  - Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Parkinson's Disease, Alzheimer's Disease, early and moderate Dementia and certain cases of chronic traumatic encephalopathy (CTE) (a neuropathological finding) diagnosed after death. The maximum monetary awards range from $1.5 million to $5 million depending on the diagnosis. There is no cap on the amount of funds available to pay these Monetary Awards and all valid claims will be paid in full for 65 years; and

  - Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million).

- Authorized representatives of deceased, legally incapacitated or incompetent retired players and family members of retired players who meet certain criteria may also file claims for monetary awards (*see* Question 6).

- To get money, proof that injuries were caused by playing NFL football is not required.

- **Settlement Class Members <u>will need</u> to register to get benefits. Settlement Class Members may sign up at the website or call 1-855-887-3485 for additional information about the Settlement and updates on the registration process.**

(Continued on next page)

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **STAY IN THE SETTLEMENT CLASS** | To be included in the Settlement Class, no action is needed. Once the Court approves the Settlement, you will be bound by the terms and releases contained in the Settlement. To receive benefits, however, you will need to register at a later date (*see* Question 26). |
| **EXCLUDE YOURSELF (OPT OUT)** | If you exclude yourself (opt out), you will get no benefits from the Settlement. This is the only option that allows you to participate in any other lawsuit against the NFL Parties about the claims in this case (*see* Question 30). |
| **OBJECT** | Write to the Court if you do not like the Settlement (*see* Question 35). |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to grant final approval of the Settlement.

**This Notice is only a summary of the Settlement Agreement and your rights. You are encouraged to carefully review the complete Settlement Agreement at www.NFLConcussionSettlement.com.** The Settlement Agreement is also on file with the Clerk of the Court for the U.S. District Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling **1-855-887-3485.**

| What This Notice Contains |
| --- |

## CHAPTER 1: INTRODUCTION

**BASIC INFORMATION**……………………………………………………………………..**Page 5**
1. Why is this Notice being provided?
2. What is the litigation about?
3. What is a class action?
4. Why is there a Settlement?
5. What are the benefits of the Settlement?

**THE SETTLEMENT**………………………………………………………………………..**Page 7**
6. Who is included in the Settlement Class?
7. What players are not included in the Settlement Class?
8. What if I am not sure whether I am included in the Settlement Class?
9. What are the different levels of neurocognitive impairment?
10. Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

## CHAPTER 2: SETTLEMENT BENEFITS

**THE BASELINE ASSESSMENT PROGRAM**………………………………………….....**Page 9**
11. What is the Baseline Assessment Program ("BAP")?
12. Why should a retired player get a BAP baseline examination?
13. How does a retired player schedule a baseline assessment examination and where will it be done?

**MONETARY AWARDS**…………………………………………………………………….. **Page 10**
14. What diagnoses qualify for monetary awards?
15. Do I need to prove that playing football caused the Qualifying Diagnosis?
16. How much money will I receive?
17. How does the age of the retired player at the time of first diagnosis affect a monetary award?
18. How does the number of seasons a retired player played affect a monetary award?
19. How do prior strokes or brain injuries of a retired player affect a monetary award?
20. How is a retired player's monetary award affected if he does not participate in the BAP program?
21. Can I receive a monetary award even though the retired player is dead?
22. Will this Settlement affect a retired player's participation in NFL or NFLPA related benefits programs?
23. Will this Settlement prevent retired players from bringing workers' compensation claims?

**EDUCATION FUND**………………………………………………………………………**Page 14**
24. What types of education programs are supported by the Settlement?

## CHAPTER 3: YOUR RIGHTS

**REMAINING IN THE SETTLEMENT**……………………………………………………..**Page 15**
25. What am I giving up to stay in the Settlement Class?

**HOW TO GET BENEFITS**………………………………………………………………....**Page 15**
  26.     How do I get Settlement benefits?
  27.     Is there a time limit to file claims for monetary awards?
  28.     Can I re-apply for compensation if my claim is denied?
  29.     Can I appeal the determination of my monetary award claim?

**EXCLUDING YOURSELF (OPTING OUT) FROM THE SETTLEMENT**……………………**Page 16**
  30.     How do I get out of the Settlement?
  31.     If I do not exclude myself (opt out), can I sue the NFL Parties for the same thing later?
  32.     If I exclude myself (opt out), can I still get benefits from this Settlement?

**THE LAWYERS REPRESENTING YOU**……………………………………………………**Page 17**
  33.     Do I have a lawyer in the case?
  34.     How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**……………………………………………………....**Page 18**
  35.     How do I tell the Court if I do not like the Settlement?
  36.     What is the difference between objecting to the Settlement and excluding myself (opting out)?

**THE COURT'S FAIRNESS HEARING**……………………………………………………...**Page 19**
  37.     When and where will the Court hold a Fairness Hearing concerning the Settlement?
  38.     Do I have to attend the hearing?
  39.     May I speak at the hearing?

**GETTING MORE INFORMATION**……………………………………………………….**Page 19**
  40.     How do I get more information?

# CHAPTER 1:  INTRODUCTION

## BASIC INFORMATION

### 1.  Why is this Notice being provided?

The Court in charge of this case authorized this Notice because you have a right to know about the proposed Settlement of this lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement.  This Notice summarizes the Settlement and explains your legal rights and options.

This case is being heard in the U.S. District Court for the Eastern District of Pennsylvania.  The case is known as *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323.  The people who sued are called the "Plaintiffs."  The National Football League and NFL Properties, LLC are called the "NFL Defendants."

The Settlement may affect your rights if you are:  (a) a retired player of the NFL, AFL, World League of American Football, NFL Europe League or NFL Europa League, (b) an authorized representative of a deceased, legally incapacitated or incompetent retired player of those leagues, or (c) an individual with a close legal relationship with a retired player of those leagues, such as a spouse, parent or child.

### 2.  What is the litigation about?

The Plaintiffs claim that retired players experienced head trauma during their NFL football playing careers that resulted in brain injuries, which have caused or may cause them long-term neurological problems.  The Plaintiffs accuse the NFL Parties of being aware of the evidence and the risks associated with repetitive traumatic brain injuries but failing to warn and protect the players against the long-term risks, and ignoring and concealing this information from the players.  The NFL Parties deny the claims in the litigation.

### 3.  What is a class action?

In a class action, one or more people, the named plaintiffs (who are also called proposed "class representatives") sue on behalf of themselves and other people with similar claims.  All of these people together are the proposed "class" or "class members."  When a class action is settled, one court resolves the issues for all class members (in the settlement context, "settlement class members"), except for those who exclude themselves (opt out) from the settlement.  In this case, the proposed class representatives are Kevin Turner and Shawn Wooden.  Excluding yourself (opting out) means that you will not receive any benefits from the Settlement.  The process for excluding yourself (opting out) is described in Question 30.

### 4.  Why is there a Settlement?

After extensive settlement negotiations mediated by retired United States District Court Judge Layn Phillips, and further settlement negotiations under the supervision of the Court-appointed Special Master, Perry Golkin, the Plaintiffs and the NFL Parties agreed to the Settlement.

A settlement is an agreement between a plaintiff and a defendant to resolve a lawsuit. Settlements conclude litigation without the court or a jury ruling in favor of the plaintiff or the defendant. A settlement allows the parties to avoid the cost and risk of a trial, as well as the delays of litigation.

If the Court approves this Settlement, the litigation between the Settlement Class Members and the NFL Parties is over. Only Settlement Class Members are eligible for the benefits summarized in this Notice. The NFL Parties will no longer be legally responsible to defend against the claims by Settlement Class Members made in this litigation.

The Court has not and will not decide in favor of the retired players or the NFL Parties. By reviewing this Settlement, the Court is not making and will not make any findings that any law was broken or that the NFL Parties did anything wrong.

The proposed Class Representatives and their lawyers ("Co-Lead Class Counsel," "Class Counsel," and "Subclass Counsel," *see* Question 33) believe that the proposed Settlement is best for everyone who is affected. The factors that Co-Lead Class Counsel, Class Counsel and Subclass Counsel considered included the uncertainty and delay associated with continued litigation, a trial and appeals and the uncertainty of particular legal issues that are yet to be determined by the Court. Co-Lead Class Counsel, Class Counsel and Subclass Counsel balanced these and other substantial risks in determining that the Settlement is fair, reasonable and adequate in light of all circumstances and in the best interests of the Settlement Class Members.

The Settlement Agreement is available at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the U.S. District Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling **1-855-887-3485**.

| **5.  What are the benefits of the Settlement?** |
| --- |

Under the Settlement, the NFL Parties will pay to fund:

- Baseline neuropsychological and neurological examinations for eligible retired players, and additional medical testing, counseling and/or treatment if they are diagnosed with moderate cognitive impairment during the baseline examinations (up to $75 million, "Baseline Assessment Program") (*see* Questions 11-13);

- Monetary awards for diagnoses of Death with CTE prior to **July 7, 2014**, ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) and Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) (*see* Questions 14-21); **All valid claims under the Settlement, without limitation, will be paid in full throughout the 65-year life of the Settlement (the "Monetary Award Fund")**; and

- Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million) (*see* Question 24).

In addition, the NFL Parties will pay the cost of notifying the Settlement Class. Administrative costs and expenses will be paid out of the Monetary Award Fund. The Baseline Assessment Program costs and expenses will be paid out of the Baseline Assessment Program Fund.

The details of the Settlement benefits are in the Settlement Agreement, which is available at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the U.S. District Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling **1-855-887-3485**.

**Note:** The Baseline Assessment Program and Monetary Award Fund will be administered independently of the NFL Parties and any benefit programs that have been created between the NFL and the NFL Players Association. The NFL Parties are not involved in determining the validity of claims under the Settlement.

# THE SETTLEMENT

| 6.  Who is included in the Settlement Class? |
| --- |

This Settlement Class includes three types of people:

Retired NFL Football Players:  All living NFL Football players who, prior to **July 7, 2014,** (1) have retired, formally or informally, from playing professional football with the NFL or any Member Club, including AFL, World League of American Football, NFL Europe League and NFL Europa League players, or (2) were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and no longer are under contract to a Member Club and are not seeking active employment as a player with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club.

Representative Claimants:  Authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased, legally incapacitated or incompetent Retired NFL Football Players.

Derivative Claimants:  Spouses, parents, dependent children, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a living or deceased Retired NFL Football Player.  (For example, a spouse asserting the right to sue due to the injury of a husband who is a Retired NFL Football Player.)

The Settlement recognizes two separate groups ("Subclasses") of Settlement Class Members based on the Retired NFL Football Player's injury status prior to **July 7, 2014**:

- Subclass 1 includes: Retired NFL Football Players who were <u>not</u> diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE prior to **July 7, 2014**, and their Representative Claimants and Derivative Claimants.

- Subclass 2 includes:

     o Retired NFL Football Players who <u>were</u> diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to **July 7, 2014**, and their Representative Claimants and Derivative Claimants; and

○   Representative Claimants of deceased Retired NFL Football Players who were diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to death or who died prior to **July 7, 2014** and received a diagnosis of Death with CTE.

### 7.  What players are not included in the Settlement Class?

The Settlement Class does not include current NFL players.  The Settlement Class also does not include people who tried out for but did not make it onto preseason, regular season or postseason rosters or practice, developmental or taxi squads of the NFL or any Member Clubs.

### 8.  What if I am not sure whether I am included in the Settlement Class?

If you are not sure whether you are included in the Settlement Class, you may call **1-855-887-3485** with questions or visit www.NFLConcussionSettlement.com.  You may also write with questions to NFL Concussion Settlement, **P.O. Box 25369, Richmond, VA 23260**.  You may also consult with your own attorney.

### 9.  What are the different levels of neurocognitive impairment?

In addition to ALS, Parkinson's Disease and Alzheimer's Disease, various levels of neurocognitive impairment are covered by this Settlement.  More details can be found in the Injury Definitions, which are available at www.NFLConcussionSettlement.com or by calling **1-855-887-3485**.

The level of Neurocognitive Impairment will be established in part with evidence of decline in performance in at least two areas subject to clinical evaluative testing, provided one of the areas is executive function, learning and memory, or complex attention, and related functional impairment as follows:

| LEVEL OF NEUROCOGNITIVE IMPAIRMENT | TYPE OF IMPAIRMENT | DEGREE OF DECLINE |
|---|---|---|
| Level 1 | Moderate cognitive impairment | Moderate cognitive decline |
| Level 1.5 | Early Dementia | Moderate to severe cognitive decline |
| Level 2 | Moderate Dementia | Severe cognitive decline |

If neurocognitive impairment is temporary and only occurs with delirium, or as a result of substance abuse or medicinal side effects, it is not covered by the Settlement.

### 10.  Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

No.  A retired player can be a Settlement Class Member regardless of whether he is vested due to credited seasons or total and permanent disability under the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

# CHAPTER 2:  SETTLEMENT BENEFITS

## THE BASELINE ASSESSMENT PROGRAM

### 11.  What is the Baseline Assessment Program ("BAP")?

All living retired players who have earned at least one-half of an Eligible Season (*see* Question 18), who do not exclude themselves (opt out) from the Settlement (*see* Question 30), and who timely register to participate in the Settlement (*see* Question 26) may participate in the Baseline Assessment Program ("BAP").

The BAP will provide baseline neuropsychological and neurological assessment examinations to determine whether retired players are currently suffering from cognitive impairment.  Retired players will have from two to ten years, depending on their age as of the date the Settlement is finally approved and any appeals are fully resolved ("Final Settlement Approval"), to have a baseline examination conducted through a nationwide network of qualified and independent medical providers.

- Retired players 43 or older as of the date of Final Settlement Approval will need to have a baseline examination within two years of the start of the BAP.

- Retired players under the age of 43 as of the date the date of Final Settlement Approval will need to have a baseline examination within 10 years of the start of the BAP, or before they turn 45, whichever comes sooner.

Retired players who are diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment) are eligible to receive further medical testing and/or treatment (including counseling and pharmaceuticals) for that condition during the ten-year term of the BAP or within five years from diagnosis, whichever is later.

Retired players who participate in the BAP will be encouraged to provide their confidential medical records for use in research into cognitive impairment and safety and injury prevention with respect to football players.

Although all retired players are encouraged to take advantage of the BAP and receive a baseline examination, they do not need to participate in the BAP to receive a monetary award.  Any award to a retired player may be reduced by 10% if the retired player does not participate in the BAP, as explained in more detail in Question 20.

### 12.  Why should a retired player get a BAP baseline examination?

Getting a BAP baseline examination will be beneficial.  It will determine whether the retired player has any cognitive impairment.  If he is diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment), he will be eligible to receive further medical testing and/or treatment for that condition.  In addition, regardless of any cognitive impairment today, the results of the BAP baseline examination can be used as a comparison to measure any subsequent deterioration of cognitive condition over the course of his life.  Participants also will be examined by at least two experts during the BAP baseline examinations, a

neuropsychologist and a neurologist, and the retired player and/or his family members will have the opportunity to ask questions relating to any cognitive impairment during those examinations.

Participation in the BAP does not prevent the retired player from filing a claim for a monetary award. For the next 65 years, retired players will be eligible for compensation paid from the Monetary Award Fund if the player develops a Qualifying Diagnosis (*see* Question 14). Participation in the BAP also will help ensure that, to the extent the retired player receives a Qualifying Diagnosis in the future, he will receive the maximum monetary award to which he is entitled (*see* Question 20).

| **13. How does a retired player schedule a baseline assessment examination and where will it be done?** |
| --- |

Retired players need to register for Settlement benefits before they can get a baseline assessment examination. Registration for benefits will not be available until after Final Settlement Approval. **A retired player may provide his name and contact information now at www.NFLConcussionSettlement.com or by calling 1-855-887-3485. This ensures that the retired player will receive additional notice about the registration process and deadlines when it becomes available.**

The BAP Administrator will send notice to those retired players determined during registration to be eligible for the BAP, explaining how to arrange for an initial baseline assessment examination. The BAP will use a nationwide network of qualified and independent medical providers who will provide both the initial baseline assessment as well as any further testing and/or treatment. The BAP Administrator, which will be appointed by the Court, will establish the network of medical providers.

## MONETARY AWARDS

| **14. What diagnoses qualify for monetary awards?** |
| --- |

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund.

If a retired player receives a monetary award based on a Qualifying Diagnosis, and later is diagnosed with a different Qualifying Diagnosis that entitles him to a larger monetary award than his previous award, he will be eligible for an increase in compensation. This would also apply to Derivative Claimants.

Qualifying Diagnoses must be made by approved qualified specialists. Any time prior to Final Settlement Approval, only board-certified neurologists, board-certified neurosurgeons or board-certified neuro-specialist physicians or similarly qualified specialists can make Qualifying Diagnoses. Following Final Settlement Approval, only qualified specialists approved by the Claims Administrator will be able to make Qualifying Diagnoses with the exception of Qualifying Diagnoses made through the BAP.

| **15. Do I need to prove that playing football caused the Qualifying Diagnosis?** |
| --- |

No. No proof is necessary that a retired player's Qualifying Diagnosis was caused by playing football or that he experienced head injuries in the NFL, AFL, World League of American Football, NFL Europe

League or NFL Europa League in order to receive a monetary award. The fact that a retired player receives a Qualifying Diagnosis is sufficient to be eligible for a monetary award.

You also do not need to exclude the possibility that the Qualifying Diagnosis was caused or contributed to by amateur football or other professional football league injuries or by various risk factors linked to the Qualifying Diagnosis.

### 16. How much money will I receive?

The amount of money you will receive depends on the retired player's:
- Specific Qualifying Diagnosis,
- Age at the time of diagnosis (*see* Question 17),
- Number of seasons played or practiced in the NFL or the AFL (*see* Question 18),
- Diagnosis of a prior stroke or traumatic brain injury (*see* Question 19), and
- Participation in a baseline assessment exam (*see* Question 20).

The amount of money you will receive also depends on:
- Any legally enforceable liens on the award,
- Any retainer agreement with an attorney, and
- Any further assessments ordered by the Court (*see* Question 34).

Certain costs and expenses related to resolving any liens for Settlement Class Members will be paid out of such Settlement Class Members' monetary awards or derivative claimant awards.

The table below lists the maximum amount of money available for each Qualifying Diagnosis before any adjustments are made.

| QUALIFYING DIAGNOSIS | MAXIMUM AWARD AVAILABLE |
|---|---|
| Amyotrophic lateral sclerosis (ALS) | $5 million |
| Death with CTE (diagnosed after death) | $4 million |
| Parkinson's Disease | $3.5 million |
| Alzheimer's Disease | $3.5 million |
| Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) | $3 million |
| Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) | $1.5 million |

Monetary awards may be increased up to 2.5% per year during the 65-year Monetary Award Fund term for inflation.

To receive the maximum amount outlined in the table, a retired player must have played for at least five Eligible Seasons (*see* Question 18) and have been diagnosed when younger than 45 years old.

Derivative Claimants are eligible to be compensated from the monetary award of the retired player with whom they have a close relationship in an amount of 1% of that award. If there are multiple Derivative Claimants for the same retired player, the 1% award will be divided among the Derivative Claimants according to the law where the retired player (or his Representative Claimant, if any) resides.

## 17. How does the age of the retired player at the time of first diagnosis affect a monetary award?

Awards are reduced for retired players who were 45 or older when diagnosed. The younger a retired player is at the time of diagnosis, the greater the award he will receive. Setting aside the other downward adjustments to monetary awards, the table below provides:

- The average award within each age range for people diagnosed between the ages of 45-79; and
- The amount of the award for those under age 45 and over 79.

The actual amount will be determined based on each retired player's actual age at the time of diagnosis and on other potential adjustments.

| AGE AT DIAGNOSIS | ALS | DEATH W/CTE | PARKINSON'S | ALZHEIMER'S | LEVEL 2 | LEVEL 1.5 |
|---|---|---|---|---|---|---|
| Under 45 | $5,000,000 | $4,000,000 | $3,500,000 | $3,500,000 | $3,000,000 | $1,500,000 |
| 45 - 49 | $4,500,000 | $3,200,000 | $2,470,000 | $2,300,000 | $1,900,000 | $950,000 |
| 50 - 54 | $4,000,000 | $2,300,000 | $1,900,000 | $1,600,000 | $1,200,000 | $600,000 |
| 55 - 59 | $3,500,000 | $1,400,000 | $1,300,000 | $1,150,000 | $950,000 | $475,000 |
| 60 - 64 | $3,000,000 | $1,200,000 | $1,000,000 | $950,000 | $580,000 | $290,000 |
| 65 - 69 | $2,500,000 | $980,000 | $760,000 | $620,000 | $380,000 | $190,000 |
| 70 - 74 | $1,750,000 | $600,000 | $475,000 | $380,000 | $210,000 | $105,000 |
| 75 - 79 | $1,000,000 | $160,000 | $145,000 | $130,000 | $80,000 | $40,000 |
| 80+ | $300,000 | $50,000 | $50,000 | $50,000 | $50,000 | $25,000 |

**Note:** The age of the retired player at diagnosis (not the age when applying for a monetary award) is used to determine the monetary amount awarded.

## 18. How does the number of seasons a retired player played affect a monetary award?

Awards are reduced for retired players who played less than five "Eligible Seasons." The Settlement uses the term "Eligible Season" to count the seasons in which a retired player played or practiced in the NFL or AFL. A retired player earns an Eligible Season for:

- Each season where he was on an NFL or AFL Member Club's "Active List" for either three or more regular season or postseason games, or

- Where he was on an Active List for one or more regular or postseason games and then spent two regular or postseason games on an injured reserve list or inactive list due to a concussion or head injury.

- A retired player also earns one-half of an Eligible Season for each season where he was on an NFL or AFL Member Club's practice, developmental or taxi squad for at least eight games, but did not otherwise earn an Eligible Season.

The "Active List" means the list of all players physically present, eligible and under contract to play for an NFL or AFL Member Club on a particular game day within any applicable roster or squad limits in the applicable NFL or AFL Constitution and Bylaws.

Time spent playing or practicing in the World League of American Football, NFL Europe League and NFL Europa League does not count towards an Eligible Season.

The table below lists the reductions to a retired player's (or his Representative Claimant's) monetary award if the retired player has less than five Eligible Seasons. To determine the total number of Eligible Seasons credited to a retired player, add together all of the earned Eligible Seasons and half Eligible Seasons. For example, if a retired player earned two Eligible Seasons and three half Eligible Seasons, he will be credited with 3.5 Eligible Seasons.

| NUMBER OF ELIGIBLE SEASONS | PERCENTAGE OF REDUCTION |
|---|---|
| 4.5 | 10% |
| 4 | 20% |
| 3.5 | 30% |
| 3 | 40% |
| 2.5 | 50% |
| 2 | 60% |
| 1.5 | 70% |
| 1 | 80% |
| .5 | 90% |
| 0 | 97.5% |

**19. How do prior strokes or traumatic brain injuries of a retired player affect a monetary award?**

It depends. A retired player's monetary award (or his Representative Claimant monetary award) will be reduced by 75% if he experienced: (1) a medically diagnosed stroke that occurred before or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis; or (2) a severe traumatic brain injury unrelated to NFL football that occurred during or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis.

The award will not be reduced if the retired player (or his Representative Claimant) can show by clear and convincing evidence that the stroke or traumatic brain injury is not related to the Qualifying Diagnosis.

**20. How is a retired player's monetary award affected if he does not participate in the BAP program?**

It depends on when the retired player receives his Qualifying Diagnosis and the nature of the diagnosis. There is a 10% reduction to the monetary award only if the retired player:

- Did not receive a Qualifying Diagnosis prior to **July 7, 2014**, and

- Does not participate in the BAP, and

- Receives a Qualifying Diagnosis (other than ALS) after his deadline to receive a BAP baseline assessment examination.

---

**21.  Can I receive a monetary award even though the retired player is dead?**

Yes.  Representative Claimants for deceased retired players with a Qualifying Diagnoses will be eligible to receive monetary awards.  If the deceased retired player died before January 1, 2006, however, the Representative Claimant will only receive a monetary award if the Court determines that a wrongful death or survival claim is allowed under applicable state law.

Derivative Claimants also will be eligible for a total award of 1% of the monetary award that the Representative Claimant for the deceased retired player receives (*see* Question 16).

Representative and Derivative Claimants will also need to register for Settlement benefits (*see* Question 26).

---

**22.  Will this Settlement affect a retired player's participation in NFL or NFLPA-related benefits programs?**

No.  The Settlement benefits are completely independent of any benefits programs that have been created by or between the NFL and the NFL Players Association.  This includes the 88 Plan (Article 58 of the 2011 Collective Bargaining Agreement) and the Neuro-Cognitive Disability Benefit (Article 65 of the 2011 Collective Bargaining Agreement).

**Note:**  The Settlement ensures that a retired player who has signed, or will sign, a release as part of his Neuro-Cognitive Disability Benefit application, will not be denied Settlement benefits.

---

**23.  Will this Settlement prevent retired players from bringing workers' compensation claims?**

No.  Claims for workers' compensation will not be released by this Settlement.

## EDUCATION FUND

---

**24.  What type of education programs are supported by the Settlement?**

The Settlement will provide $10 million in funding to support education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives.

Retired players will be able to actively participate in such initiatives if they desire.

# CHAPTER 3:  YOUR RIGHTS

## REMAINING IN THE SETTLEMENT

| 25.  What am I giving up to stay in the Settlement Class? |
|---|

Unless you exclude yourself (opt out) from the Settlement (*see* Question 30), you cannot sue the NFL Parties, the Member Clubs, or related individuals and entities, or be part of any other lawsuit against the NFL Parties about the issues in this case.  This means you give up your right to continue to litigate any claims related to this Settlement, or file new claims, in any court or in any proceeding at any time. **However, the Settlement does not release any claims for workers' compensation** (*see* **Question 23) or claims alleging entitlement to NFL medical and disability benefits available under the Collective Bargaining Agreement**.

Please note that certain Plaintiffs also sued the football helmet manufacturer Riddell and certain related entities (specifically, Riddell, Inc., Riddell Sports Group Inc., All American Sports Corporation, Easton-Bell Sports, Inc., EB Sports Corp., Easton-Bell Sports, LLC and RBG Holdings Corp.). **They are not parties to this Settlement and claims against them are not released by this Settlement**.

Article XVIII of the Settlement Agreement contains the complete text and details of what Settlement Class Members give up unless they exclude themselves (opt out) from the Settlement, so please read it carefully. The Settlement Agreement is available at www.NFLConcussionSettlement.com.  The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question 35 for the address).  You can also get this information by calling **1-855-887-3485**.  If you have any questions you can talk to the law firms listed in the chart at the end of this Notice for free or you can talk to your own lawyer if you have questions about what this means.

## HOW TO GET BENEFITS

| 26.  How do I get Settlement benefits? |
|---|

To get benefits, you will need to register.  This is true for all Settlement Class Members, including Representative and Derivative Claimants.  Registration for benefits will not begin until after Final Settlement Approval (*see* Question 37).  If and when that occurs, further notice will be provided about the registration process and deadlines.  **However, you may provide your name and contact information now at www.NFLConcussionSettlement.com or by calling 1-855-887-3485.  This ensures that you will receive additional notice about the registration process and deadlines when that becomes available.** To receive any Settlement benefits, you must register on or before 180 days from the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com. Information about the registration deadline will also be available by calling **1-855-887-3485.**

| 27.  Is there a time limit to file claims for monetary awards? |
|---|

Yes.  Retired NFL Football Players and Representative Claimants for retired players who are diagnosed by the date of Final Settlement Approval must submit claims for monetary awards within two years of the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com.  Retired NFL Football Players and Representative Claimants for

retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of diagnosis to file claims. This deadline may be extended up to an additional two years upon a showing of substantial hardship.

Derivative Claimants must submit claims no later than 30 days after a Retired NFL Football Player or a Representative Claimant receives notice of an entitlement to a monetary award. All claims must be submitted by the end of the 65-year term of the Monetary Award Fund.

### 28. Can I re-apply for compensation if my claim is denied?

Yes. A Settlement Class Member who submits a claim for a monetary award that is denied can re-apply in the future should the Retired NFL Football Player's medical condition change.

### 29. Can I appeal the determination of my monetary award claim?

Yes. The Settlement establishes an independent process for a Settlement Class Member to appeal the denial of a monetary award claim or the amount of the monetary award.

## EXCLUDING YOURSELF (OPTING OUT) FROM THE SETTLEMENT

If you want to retain the right to sue the NFL Parties about the legal issues in this case, then you must take steps to remove yourself from the Settlement. You may do this by asking to be excluded from—opting out of—the Settlement Class. If you exclude yourself (opt out), you cannot receive benefits from this Settlement.

### 30. How do I get out of the Settlement?

On or before **October 14, 2014**, you must mail a letter or other written document to the Claims Administrator requesting exclusion from the Settlement Class. Your request must include:

- Your name, address, telephone number, and date of birth;

- A copy of your driver's license or other government issued identification;

- A statement that "I wish to exclude myself from the Settlement Class in *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323" (or substantially similar clear and unambiguous language); and

- Your signature by hand, and the date on which you signed it (even if represented by an attorney).

You must mail your exclusion (opt out) request, postmarked on or before **October 14, 2014**, to:
NFL Concussion Settlement
P.O. Box 25369
Richmond, VA 23260

Your request to exclude yourself (opt out) is not effective unless and until the District Court grants Final Approval.

**31.  If I do not exclude myself (opt out), can I sue the NFL Parties for the same thing later?**

No.  Unless you exclude yourself (opt out), you give up the right to sue the NFL Parties for all of the claims that this Settlement resolves.  If you want to maintain your own lawsuit relating to the claims released by the Settlement, then you must exclude yourself (opt out) on or before **October 14, 2014.**

**32.  If I exclude myself (opt out), can I still get benefits from this Settlement?**

No.  **If you exclude yourself (opt out) from the Settlement you will not get any Settlement benefits**.  You will not be eligible  to receive a monetary award or participate in the Baseline Assessment Program.

## THE LAWYERS REPRESENTING YOU

**33.  Do I have a lawyer in the case?**

The Court has appointed a number of lawyers to represent all Settlement Class Members as "Co-Lead Class Counsel," "Class Counsel" and "Subclass Counsel" (*see* Question 6).  They are listed at the end of this Notice with their contact information.

You will not be charged for contacting these lawyers.  If you are represented by an attorney, you may contact your attorney to discuss the proposed Settlement.  You do not have to hire your own attorney.  However, if you want to be represented by your own lawyer, you may hire one at your own expense.

**34.  How will the lawyers be paid?**

At a later date to be determined by the Court, Co-Lead Class Counsel, Class Counsel and Subclass Counsel will ask the Court for an award of attorneys' fees and reasonable costs.  The NFL Parties have agreed not to oppose or object to the request for attorneys' fees and reasonable incurred costs if the request does not exceed $112.5 million.  These fees and incurred costs will be paid separately by the NFL Parties and not from the Baseline Assessment Program Fund, Education Fund or Monetary Award Fund.  Settlement Class Members will have an opportunity to comment on and/or object to this request at an appropriate time.  Ultimately, the award of attorneys' fees and reasonable costs to be paid by the NFL Parties is subject to the approval of the Court.

After Final Settlement Approval, Co-Lead Class Counsel may ask the Court to set aside up to five percent of each monetary award and derivative claimant award to facilitate the Settlement program and related efforts of Co-Lead Class Counsel, Class Counsel and Subclass Counsel.  If approved, this money would be held in a separate fund overseen by the Court.  Any future request for a set-aside will describe: (1) the proposed amount; (2) how the money will be used; and (3) any other relevant information.  This "set-aside" would come out of the claimant's attorney's fee if represented by individual counsel or, if not represented, out of the monetary award and derivative claimant award itself.  No money will be held back or set aside from any award without a Court order.  The set-aside is a matter between Class Counsel and individual counsel for Settlement Class Members.  The NFL Parties do not take a position on the proposal.

## OBJECTING TO THE SETTLEMENT

| 35.  How do I tell the Court if I do not like the Settlement? |
|---|

If you have not excluded yourself (opted out), you may object to the Settlement or any part of it. The Court will consider your views. To object to the Settlement, you or your attorney must submit your written objection to the Court. The objection must include the following:

- The name of the case and multidistrict litigation, *In re: National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323;

- Your name, address, telephone number, and date of birth;

- If you are a Representative Claimant or Derivative Claimant, the name of the Retired NFL Football Player to whom you are related;

- Written statement or evidence establishing how you are a Settlement Class Member;

- A detailed statement of your objections, and the specific reasons for each such objection, including any facts or law you wish to bring to the Court's attention;

- Any other supporting papers, materials or briefs that you want the Court to consider in support of your objection; and

- Your signature by hand, and the date on which you signed it (even if represented by an attorney).

Attorneys filing objections on behalf of Settlement Class Members must follow the requirements in Section 14.3(b) of the Settlement Agreement.

You must mail your objection, postmarked on or before **October 14, 2014**, to:

| COURT |
|---|
| Clerk of the District Court/NFL Concussion Settlement |
| U.S. District Court for the Eastern District of Pennsylvania |
| United States Courthouse |
| 601 Market Street |
| Philadelphia, PA 19106-1797 |

| 36.  What is the difference between objecting to the Settlement and excluding myself (opting out)? |
|---|

Objecting is simply telling the Court that you do not like something about the Settlement or want it to say something different. You can object only if you do not exclude yourself (opt out) from the Settlement Class. Excluding yourself (opting out) is telling the Court that you do not want to be part of the Settlement Class and you do not want to receive any Settlement benefits. If you exclude yourself (opt out), you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you do not have to. The Court will determine if you are allowed to speak if you request to do so (*see* Question 39).

| **37. When and where will the Court hold a Fairness Hearing concerning the Settlement?** |
| --- |

The Court will hold the Fairness Hearing on **Wednesday, November 19, 2014 at 10:00 a.m.** at the United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania 19106 in Courtroom 7B. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.NFLConcussionSettlement.com or call **1-855-887-3485**. At this hearing, the Court will hear evidence about whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them and may elect to listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long the decision will take.

After the Fairness Hearing, the Court will consider the request for attorneys' fees and reasonable costs by Co-Lead Class Counsel, Class Counsel and Subclass Counsel (*see* Question 34).

| **38. Do I have to attend the hearing?** |
| --- |

No. Co-Lead Class Counsel, Class Counsel and Subclass Counsel will answer questions the Court may have. But you are welcome to attend at your own expense. If you timely file an objection, you do not have to come to Court to talk about it. As long as you filed your written objection on time, the Court will consider it. You may also have your own lawyer attend at your expense, but it is not necessary.

| **39. May I speak at the hearing?** |
| --- |

On or before **November 3, 2014**, you may ask the Court for permission to speak at the Fairness Hearing. The Court will determine whether to grant you permission to speak. To make such a request, you must send written notice to the Court stating your intention to speak at the *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323 Fairness Hearing. Be sure to include your name, address, telephone number, and your signature. Your request to speak must be sent to the Court at the address in Question 35.

## GETTING MORE INFORMATION

| **40. How do I get more information?** |
| --- |

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You also may write with questions to NFL Concussion Settlement, **P.O. Box 25369, Richmond, VA 23260** or call **1-855-887-3485. PLEASE DO NOT WRITE OR TELEPHONE THE COURT OR THE NFL PARTIES FOR INFORMATION ABOUT THE SETTLEMENT OR THIS LITIGATION.**

| IMPORTANT DATES & CONTACT INFORMATION | |
|---|---|
| **Exclusion (Opt Out) Deadline** | October 14, 2014 |
| **Objection Deadline** | October 14, 2014 |
| **Deadline to Request to Speak at the Fairness Hearing** | November 3, 2014 |
| **Fairness Hearing** | November 19, 2014 |
| **Start of Registration Period** | The date the announcement of the registration process is posted on the Settlement Website. (This will occur following Final Settlement Approval after all appeals.) |
| **Registration Deadline** | 180 days after the start of the registration period |
| **Deadline to Receive a BAP** | • For retired players age 43 or older: Within two years of Final Settlement Approval <br> • For retired players under age 43: Within ten years of Final Approval or before age 45, whichever comes sooner |
| **Deadline to Submit a Claim** | • For retired players (and their Representative Claimants) diagnosed by the date of Final Settlement Approval: Within two years from the start of the Registration Period <br> • For retired players (and their Representative Claimants) diagnosed after the date of Final Settlement Approval: Within two years from the date of diagnosis |
| **Settlement Administrator** | **NFL Concussion Settlement** <br> **P.O. Box 25369** <br> **Richmond, VA 23260** <br> **Tel: 1-855-887-3485** |
| **Court** | Clerk of the District Court/NFL Concussion Settlement <br> U.S. District Court for the Eastern District of Pennsylvania <br> United States Courthouse <br> 601 Market Street <br> Philadelphia, PA 19106-1797 |
| **Class Counsel** | Christopher A. Seeger <br> Co-Lead Class Counsel <br> SEEGER WEISS LLP <br> 77 Water Street <br> New York, NY 10005 | Sol Weiss <br> Co-Lead Class Counsel <br> ANAPOL SCHWARTZ <br> 1710 Spruce Street <br> Philadelphia, PA 19103 |
| | Steven C. Marks <br> Class Counsel <br> PODHURST ORSECK P.A. <br> City National Bank Building <br> 25 W. Flagler Street, Suite 800 <br> Miami, FL 33130-1780 | Gene Locks <br> Class Counsel <br> LOCKS LAW FIRM <br> The Curtis Center, Suite 720 East <br> 601 Walnut Street <br> Philadelphia, PA 19106 |
| | Arnold Levin <br> Counsel - Subclass 1 <br> LEVIN FISHBEIN SEDRAN & BERMAN <br> 510 Walnut Street, Suite 500 <br> Philadelphia, PA 19106 | Dianne M. Nast, Counsel – Counsel - Subclass 2 <br> NAST LAW LLC <br> 1101 Market Street, Suite 2801 <br> Philadelphia, Pennsylvania 19107 |

Case 2:12-md-02323-AB   Document 6093-2   Filed 07/09/14   Page 1 of 1

# NFL Concussion Settlement

### All Valid Claims of Retired NFL Football Players to be Paid in Full for 65 Years
### Monetary Awards, Baseline Medical Exams and Other Benefits Provided



The NFL and NFL Properties have agreed to a class action Settlement with retired players who sued, accusing them of failing to warn of and hiding the dangers of brain injury associated with playing football. The Settlement does not establish any wrongdoing on the part of the NFL or NFL Properties.

**Who is included in the Settlement?**

The Settlement Class generally includes all retired players of the NFL, AFL, World League of American Football, NFL Europe League and NFL Europa League. The Settlement Class includes immediate family members of retired players and legal representatives of incapacitated, incompetent or deceased players.

**What does the Settlement provide?**

The Settlement provides money for three benefits:

- Baseline medical exams to determine if retired players suffer from neurocognitive impairment and are entitled to additional testing and/or treatment ($75 million),

- Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Alzheimer's Disease, Parkinson's Disease, Dementia and certain cases of chronic traumatic encephalopathy or CTE (a neuropathological finding) diagnosed after death. The maximum monetary awards range from $1.5 million to $5 million depending on the diagnosis. All valid claims will be paid in full for 65 years; and

- Education programs and initiatives related to football safety ($10 million).

## How can I get benefits?

You will need to register for benefits after the final approval of the Settlement. You may provide your contact information now at the website or phone number below to ensure that you receive additional notice about the registration process.

Retired players do <u>not</u> have to prove that their injuries were caused by playing NFL football to get money from the Settlement.

## What are my rights?

You do not need to do anything to be included in the Settlement Class. All Settlement Class members will be bound by the Settlement and give up the right to sue the NFL individually. If you want to keep your right to sue the NFL, you must exclude yourself from the Class by **October 14, 2014**. If you exclude yourself, you will not receive any benefits under the Settlement. If you stay in the Class, you may object to the Settlement by **October 14, 2014**.

The Court will hold a hearing on **November 19, 2014** to consider whether to approve the Settlement. You do not have to attend. However, you and/or your own lawyer may attend and request to speak at the hearing at your own expense. At a later date, the attorneys will ask the Court for an award of attorneys' fees and reasonable costs. The NFL and NFL Properties have agreed not to oppose or object to the request if the request does not exceed $112.5 million. The money would be paid by the NFL and NFL Properties in addition to the payments described above.

### Please Share this Notice with Other Players and Their Families
### For More Information and to Register for Benefits:
### 1-855-887-3485 or www.NFLConcussionSettlement.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**OBJECTION OF SEAN MOREY, ALAN FANECA, BEN HAMILTON,**
**ROBERT ROYAL, RODERICK "ROCK" CARTWRIGHT,**
**JEFF ROHRER, AND SEAN CONSIDINE**
**TO CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

<div align="right"><u>Page</u></div>

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 4

I.     Procedural History ..................................................................................... 4

        A.     Initial Litigation .............................................................................4

        B.     The January 6, 2014 Class Action Complaint and Initial Settlement .....................4

               1.     The Class Action Complaint ................................................5

                    a.     The NFL's Duty of Care and the MTBI Committee.....................6

                    b.     Criticism of the MTBI Committee ....................................7

                      c.     The NFL's Representations About Head Injuries ..................9

                2.     The Initial Settlement ........................................................11

        C.     Objectors' Motion To Intervene .................................................12

        D.     The Revised Settlement ...............................................................13

                1.     Compensation ....................................................................13

                2.     Eligibility .........................................................................14

                3.     The Release .......................................................................16

                4.     Attorneys' Fees .................................................................16

        E.     Opposition to Preliminary Approval ..........................................17

        F.     Preliminary Approval ..................................................................17

II.     Background of Objectors ........................................................................ 18

ARGUMENT ...................................................................................................... 19

I.     The Lack of Adequate Representation Precludes Certification ........................................ 20

<div align="center">i</div>

A.       The Failure-To-Compensate-CTE Conflict Demonstrates Lack of Adequate Representation ....................................................................... 22

        1.     Chronic Traumatic Encephalopathy (CTE) ................................. 22

        2.     CTE in the NFL ........................................................................... 24

        3.     The Settlement Compensates Only a Few Prior Cases of CTE to the Exclusion of Current and Future Cases of CTE ........................ 25

            a.     Arbitrary Limitation of CTE Awards ............................ 25

            b.     The Representative Plaintiffs Did Not Protect the Interests of Class Members Who Suffer from or Who Are at Risk of Suffering from CTE ........................................................ 27

            c.     There Is No Justification for the Settlement's Failure To Compensate Current and Future Cases of CTE ................ 29

B.       The 75% Offsets Demonstrate Lack of Adequate Representation ..................... 33

C.       The Failure To Credit Seasons Played in NFL Europe Demonstrates Lack of Adequate Representation ........................................................... 35

II.    The Notice Is False, Misleading, and Inconsistent with Rule 23 and Due Process ........ 38

A.       The Notice Contains Overtly False and Misleading Statements .......................... 39

        1.     The Short Form Notice ............................................................... 39

        2.     The Long Form Notice ............................................................... 41

B.       The Notice Is Similar to Communications Courts Have Found Misleading in Other Contexts ........................................................................... 46

C.       Class Counsel's Propaganda Campaign Has Compounded the False and Misleading Nature of the Notice .................................................... 49

D.       False and Misleading Notice Has, in Fact, Misinformed Players and Falsely Assured Them That the Settlement Provides Benefits It Lacks ...................... 53

III.   The Settlement Is Unfair, Unreasonable, and Inadequate ................................. 54

A.       The Complete Absence of Discovery Weighs Against Approval of the Settlement ........................................................................... 56

ii

B.     The NFL's Ability To Withstand a Far Greater Judgment Than That Provided by the Settlement Weighs Against Approval of the Settlement ............58

C.     The Negative Reaction of the Class Weighs Against Approval of the Settlement ...................................................60

D.     The Risks of Establishing Liability and Damages Weigh Against Approval of the Settlement ...................................................62

        1.     Even Without Discovery, Publicly Available Information Shows the Strength of Plaintiffs' Claims ...................................62

                a.     The NFL Assumed a Duty of Care To Guard Player Health and Safety........................................................62

                b.     Medical Studies Show That the NFL Knew or Should Have Known of the Link Between MTBI and Brain Damage, Particularly the Onset of CTE........................................63

                c.     The NFL Actively Worked To Conceal the Correlation Between MTBI and Brain Damage................................64

        2.     Discovery Would Have Allowed Class Counsel To Overcome – or at Least Understand – the Supposed "Stiff and Complex Challenges" to a Successful Suit ...................................65

E.     The Best Possible Recovery and the Risks of Litigation Weigh Against Approval of the Settlement ...................................................70

        1.     The Proffered Value of the Settlement Is Illusory Because the Settlement Leaves Many Class Members Without Compensation for Their MTBI-Related Diseases ...................................70

        2.     The Proffered Value of the Settlement Is Illusory Because It Sets an Unreasonably High Bar To Qualify for Dementia ...................72

        3.     The Proffered Value of the Settlement Is Illusory Because the Baseline Assessment Program Is Underinclusive ...................73

        4.     The Proffered Value of the Settlement Is Illusory Because the Settlement Requires Class Members To Navigate a Complex Procedural Maze To Secure Recovery ...................................74

                a.     Class Members Are Required To "Opt In" and Meet Arbitrary Examination Deadlines ...................................75

b.    Class Members Are Required To Prepare and File an Unreasonably Complex and Ambiguous "Claim Package" ..........76

c.    Class Members Are Subject to Additional Arbitrary Procedures That Will Limit Compensation ...............................778

5.    Other Factors Demonstrate That the Value of the Settlement Is Unreasonable in Light of the Best Possible Recovery ............................79

a.    The Attorneys' Fee Provision ........................................... 80

b.    The Role of the Representative Plaintiffs .................................. 81

c.    The Settlement Negotiation Process ............................... 82

F.    The Likelihood of Maintaining Class Status Weighs Against Approval of the Settlement.........................................................................82

G.    The Potential Complexity, Expense, and Likely Duration of the Litigation Weigh Against Approval of the Settlement .........................84

IV.   Objectors Should Be Permitted To Object and Appear at the Fairness Hearing Even if They Later Opt Out ........................................ 85

CONCLUSION .......................................................................... 88

APPENDIX A: BACKGROUND OF OBJECTORS....................................A1

APPENDIX B: CTE AND ITS SYMPTOMS...........................................A4

<u>**TABLE OF AUTHORITIES**</u>

<div align="right"><u>Page(s)</u></div>

*Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30 (3d Cir. 1971)......................................55

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985)....................................................................66

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)........................................................ *passim*

*Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476 (Mass. 2004)......................................................48

*Barani v. Wells Fargo Bank, N.A.*, No. 12-2999, 2014 WL 1389329
    (S.D. Cal. Apr. 9, 2014).............................................................................................................58

*Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998).............................................................68

*Barnes v. Am. Tobacco Co.*, 984 F. Supp. 842 (E.D. Pa. 1997)....................................................68

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)..................................80

*Bohus v. Beloff*, 950 F.2d 919 (3d Cir. 1991).................................................................................68

*In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763
    (7th Cir. 2003)..........................................................................................................................85

*Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam) ........................................................................82

*In re Cal. Micro Devices Sec. Litig.*, 168 F.R.D. 257 (N.D. Cal. 1996).......................................81

*Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993)...........................................................47

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987)......................................................................66

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)...............................................55, 58, 85

*In re Cmty. Bank of N. Va.*, 418 F.3d 277 (3d Cir. 2005).......................................................56, 82

*County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295
    (2d Cir. 1990)...........................................................................................................................55

*Devlin v. Scardelletti*, 536 U.S. 1 (2002)......................................................................................87

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) .........................21, 28, 37

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013).......................................................79

*Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995) ..............................................................86, 87

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014)........................................................ *passim*

<div align="center">v</div>

*Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107 (3d Cir. 1992) ....................................86

*Fogarazzo v. Lehman Bros., Inc.*, 341 F. Supp. 2d 274 (S.D.N.Y. 2004) ...................46

*Gates v. Rohm & Haas Co.*, 248 F.R.D. 434 (E.D. Pa. 2008) .....................................58

*In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106
    (7th Cir. 1979)......................................................................................................55

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768
    (3d Cir. 1995).................................................................................................. *passim*

*Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996) ...................................28

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)........................................3, 19, 55, 57, 82

*Green v. Ariz. Cardinals Football Club, LLC*, No. 14-CV-461,
    2014 WL 1920468 (E.D. Mo. May 14, 2014) ....................................................66

*Jamison v. Westinghouse Elec. Corp.*, 375 F.2d 465 (3d Cir. 1967)...........................69

*Johnson & Johnson-Merck Consumer Pharm. Co. v. Procter & Gamble Co.*,
    285 F. Supp. 2d 389 (S.D.N.Y. 2003)................................................................47

*Johnson v. NYFIX, Inc.*, 399 F. Supp. 2d 105 (D. Conn. 2005)..................................47

*In re Katrina Canal Breaches Litig.*, 628 F.3d 185 (5th Cir. 2010) ......................39, 45

*Lachance v. Harrington*, 965 F. Supp. 630 (E.D. Pa. 1997).......................................84

*Larson v. AT&T Mobility LLC*, 687 F.3d 109 (3d Cir. 2012).....................................38

*In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258
    (S.D.N.Y. 2011) ..................................................................................................47

*Manual for Complex Litigation* (4th) § 21.311-.312 ...................................................37

*Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297
    (C.D. Cal. 1996)..................................................................................................46

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677
    (7th Cir. 1987).........................................................................................19, 55

*McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006)......................48

*McNeil-PPC, Inc. v. Pfizer, Inc.*, 351 F. Supp. 2d 226 (S.D.N.Y. 2005) ....................48

*Mest v. Cabot Corp.*, 449 F.3d 502 (3d Cir. 2006)......................................................68

*Mills v. Foremost Ins. Co.*, 511 F.3d 1300 (11th Cir. 2008) ........................................57

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ...............................................39, 45

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773
    (3d Cir. 2001) ...........................................................................................85

*Murphy v. Steeplechase Amusement Co.*, 250 N.Y. 479 (1929) ..............................68

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    961 F. Supp. 2d 708 (E.D. Pa. 2014) ...........................................................12

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154
    (3d Cir. 2001) ...........................................................................................83

*Olden v. Gardner*, 294 F. App'x 210 (6th Cir. 2008) ......................................81

*Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir. 2004) ....................................84

*In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158
    (E.D. Pa. 1997) .........................................................................................83

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................37, 59

*Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) ..................................84

*In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010)........................19

*Phila. Housing Auth. v. Am. Radiator & Standard Sanitary Corp.*,
    323 F. Supp. 364 (E.D. Pa. 1970) ................................................................53

*Pozza v. United States*, 324 F. Supp. 2d 709 (W.D. Pa. 2004) ..........................69

*In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249 (E.D. Pa. 2012) ............58

*In re Prudential Ins.*, 148 F.3d 283 (3d Cir. 1998) ....................................58, 83

*Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827 (3d Cir. 1995)................87

*In re Sch. Asbestos Litig.*, 789 F.2d 996 (3d Cir. 1986)..................................83

*SEC v. Rana Research, Inc.*, 8 F.3d 1358 (Fed. Cir. 1993) ...........................46, 49

*Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981) ...............................................55

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997)................47

*Staub v. Proctor Hosp.*, 131 S. Ct. 1186 (2011) ...........................................67

*Sterling Drug, Inc. v. FTC*, 741 F.2d 1146 (9th Cir. 1984) ...................................48

*Stipanovich v. Westinghouse Elec. Corp.*, 210 Pa. Super. 98 (1967) ...........................69

*Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) ...............................46, 49

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013) ..............................70

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ........................57

*Walter v. Hughes Commc'ns, Inc.*, No. 09-2136, 2011 WL 2650711
   (N.D. Cal. July 6, 2011) ...................................................................79

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)....................37, 58

*Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991) .........................80

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ..........................................55

*Williams v. Nat'l Football League*, 582 F.3d 863 (8th Cir. 2009)..............................66

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983).........................................56

## STATUTES & RULES

15 U.S.C. § 45 ...............................................................................48

15 U.S.C. § 52 ...............................................................................48

28 U.S.C. § 185 ..............................................................................66

Fed. R. Civ. P. 23 ...........................................................................20

Fed. R. Civ. P. 23(a) ....................................................................82, 83

Fed. R. Civ. P. 23(a)(1) ....................................................................83

Fed. R. Civ. P. 23(a)(2) ....................................................................83

Fed. R. Civ. P. 23(a)(3) ....................................................................83

Fed. R. Civ. P. 23(a)(4) ................................................................ *passim*

Fed. R. Civ. P. 23(b)(3) ................................................................ *passim*

Fed. R. Civ. P. 23(c)(2) ....................................................................38

Fed. R. Civ. P. 23(c)(2)(B) .........................................................2, 20, 38

Fed. R. Civ. P. 23(e) ..........................................................19, 20, 38, 55

viii

Fed. R. Civ. P. 23(e)(1) .......................................................................38

Fed. R. Civ. P. 23(f) ...............................................................17, 29, 30, 85

Cal. Bus. & Prof. Code §§17200 *et seq.* ...............................................48

## OTHER AUTHORITIES

7AA *Federal Practice & Procedure* § 1785.3 (3d ed. 2014) ......................56

Ayala *et al.*, *Racial/Ethnic Disparities in Mortality by Stroke Subtype in the United States, 1995-1998*, 154 Am. J. of Epidemiology 1057 (2001) ................71

Banks, *Former Players: Devil Is in the Details with NFL Concussion Settlement*, SI.com (Aug. 29, 2013), http://www.si.com/nfl/2013/08/29/nfl-concussion-lawsuit-settle ment-player-reaction-kevin-mawae ......................................................61

Battista, *A Player's Concussion, a Family's Ordeal*, N.Y. Times (Sept. 15, 2012), http://www.nytimes.com/2012/09/16/sports/football/former-nfl-player-mitch-white-learns-to-adjust-to-postconcussion-life.html?pagewanted=all ................36

Baugh *et al.*, *Chronic Traumatic Encephalopathy: Neurodegeneration Following Repetitive Concussive and Subconcussive Brain Trauma*, 6 Brain Imaging & Behavior 244 (2012) .........................................................................31

Baugh *et al.*, *Current Understanding of Chronic Traumatic Encephalopathy*, 16 Current Treatment Options in Neurology 306 (2014) .......................23

Belson, *For Retirees, Decision on Concussion Settlement Will Not Be a Simple One*, N.Y. Times (July 22, 2014), http://www.nytimes.com/2014/07/23/sports/football/nfl-concussion-settlement-divides-former-players.html?_r=0 .......................50

Bigler, *Neuropsychology and Clinical Neuroscience of Persistent Post-Concussive Syndrome*, 14 J. Int'l Neuropsychological Soc'y 1 (2008).......................34

Borden, *Brain Trauma Extends Reach into Soccer*, N.Y. Times (Sept. 23, 2014), http://www.nytimes.com/2014/09/24/sports/soccer/soccer-star-bellini-is-found-to-have-had-brain-trauma.html?_r=1 ....................................................32

Brandeis, *Other People's Money* (Nat'l Home Library Found. ed. 1933) ................82

Breslow, *76 of 79 Deceased NFL Players Found to Have Brain Disease*, PBS Frontline (Sept. 30, 2013), http://www.pbs.org/wgbh/pages/frontline/sports/concussion-watch/76-of-79-deceased-nfl-players-found-to-have-brain-disease/ ....................24

Burke *et al.*, *Traumatic Brain Injury May Be an Independent Risk Factor for Stroke*, 81 Neurology 1 (2013)..................................................................34

Busse & Silverman, *Electroencephalographic Changes in Professional Boxers*,
149 J.A.M.A. 1522 (1952) ...........................................................................................63

Cantu, *Chronic Traumatic Encephalopathy in the National Football League Player*,
61 Neurosurgery 223 (2007) .......................................................................................63

Casson *et al.*, *Is There Chronic Brain Damage in Retired NFL Players? Neuroradiology,
Neuropsychology, and Neurology Examinations of 45 Retired Players*, 6 Sports
Health 384 (2014) ........................................................................................................34

Dale, *NFL: Nearly Three in 10 Ex-Players Will Develop Debilitating Conditions*,
Associated Press (Sept. 12, 2014), http://online.wsj.com/articles/nfl-nearly-three-in-
10-ex-players-will-develop-debilitating-brain-conditions-1410571935................................54

DeGory, *New Concussion Settlement a Win-Win*, SI.com (June 26, 2014),
http://mmqb.si.com/2014/06/26/new-concussion-settlement-kevin-turner ...........................51

ESPN.com, *Reaction to the Concussion Deal* (Aug. 30, 2013),
espn.go.com/nfl/story/_/id/9612672/reaction-nfl-concussion-settlement................................60

Fainaru & Fainaru-Wada, *Brain Impairment Begins Younger*, ESPN.com
(Sept. 13, 2014), http://espn.go.com/nfl/story/_/id/11513442/data-estimates-3-10-nfl-
retirees-face-cognitive-woes ...........................................................................................53

Fainaru & Fainaru-Wada, *Lawyers Fight Over Settlement Details*, ESPN.com
(Jan. 24, 2014, 8:18 PM), http://espn.go.com/espn/otl/story/_/id/10346091/lead-
negotiator-facing-strong-opposition-concussion-settlement.....................................................81

Fainaru-Wada & Fainaru, *League of Denial* (2013).......................................................25, 26, 63

Fainaru-Wada & Fainaru, *Seaus to Opt Out of Concussion Deal* (Sept. 3, 2014),
http://abcnews.go.com/Sports/seaus-opt-concussion-deal/story?id=25230257 .....................51

Fenno, *Hall of Famer Joe DeLamielleure Will Object to NFL Concussion Deal*, The L.A.
Times (Sept. 4, 2014), http://www.latimes.com/sports/sportsnow/la-sp-sn-nfl-
concussion-deal-joe-delamielleure-20140904-story.html ........................................................61

Futterman & Clark, *Deal in Concussion Suit Gives NFL a Big Victory*,
Wall St. J. (Aug. 29, 2013), online.wsj.com/article/SB1000142412
78873244636045790429800915590474.html ............................................................60

Futterman *et al.*, *NFL: The League that Runs TV*, Wall St. J.
(Dec. 15, 2011), http://online.wsj.com/article/SB10001424052970
2040268045770987740370757832.html ....................................................................59

Gavett *et al.*, *Chronic Traumatic Encephalopathy: A Potential Late Effect of Sport-
Related Concussive and Subconcussive Head Trauma*, 30 Clinical Sports Medicine
179 (2011)...................................................................................................................23

x

Guskiewicz *et al.*, *Association Between Recurrent Concussion and Late-Life Cognitive Impairment in Retired Professional Football Players*, 57 Neurosurgery 719 (2005) ............63

Halchin, *Former NFL Players: Disabilities, Benefits, and Related Issues*, Congressional Research Service (2008) ...............................................................................78

Hruby, *Cutting them Short*, Sportsonearth.com (July 18, 2014), http://www. sportsonearth.com/article/85045740/nfl-concussion-settlement-cuts-cte-coverage-short-patrick-hruby ..................................................................................................................53

Hruby, *Show Us Some Math*, Sportsonearth.com (Jan. 20, 2014), http://www.patrickhruby.net/2014/01/show-us-some-math.html ............................................82

Hruby, *The Case Against the NFL*, The Post Game (Feb. 29, 2012), www.thepostgame.com/blog/hruby-tuesday/201202/case-against-nfl .................................64

Jordan, *The Clinical Spectrum of Sport-Related Traumatic Brain Injury*, 9 Nature Reviews Neurology 222 (2013) ...........................................................................22

Kain, *It's Just a Concussion: The National Football League's Denial of a Causal Link Between Multiple Concussions and Later-Life Cognitive Decline*, 40 Rutgers L.J. 697 (2009) .................................................................................................63

Kakar *et al.*, *Cerebral Microbleeds: A New Dilemma in Stroke Medicine*, 1 J. Royal Soc'y of Med. Cardiovascular Disease 1 (2012) ...............................................34

Kaplan, *Goodell Sets Revenue Goal of $25B by 2027 for NFL*, Sports Business Journal (Apr. 5, 2010), http://www.sportsbusinessdaily.com/Journal/Issues/2010/04/20100405/This-Weeks-News/Goodell-Sets-Revenue-Goal-Of-$25B-By-2027-For-NFL.aspx ...................................59

Leahy, *The Pain Game*, Washington Post Magazine (Feb. 3, 2008) ...........................................78

*Legal Issues Relating to Football Head Injuries (Part I & II): Hearings Before the H. Comm. on the Judiciary*, 111th Congress (2010), http://www.gpo.gov/fdsys/pkg/CHRG-111hhrg53092/pdf/CHRG-111hhrg53092.pdf ..........65

Lehman *et al.*, *Neurodegenerative Causes of Death Among Retired National Football League Players*, 79 Neurology 1970 (2012) .............................................................................32

Martland, *Punch Drunk*, 91 J.A.M.A. 1103 (1928) ...............................................................................63

McKee *et al.*, *Chronic Traumatic Encephalopathy in Athletes: Progressive Tauopathy After Repetitive Head Injury*, 68 J. Neuropathology & Experimental Neurology 709 (2009) ...............................................................................................................................63

McKee *et al.*, *The Spectrum of Disease in Chronic Traumatic Encephalopathy*, 136 Brain 43 (2013) .......................................................................................... *passim*

xi

Mihoces, *NFL Reaches Concussion Settlement*, USA Today (Aug. 29, 2013), http://
www.usatoday.com/story/sports/nfl/2013/08/29/nfl-concussion-settlement-judge-
anita-brody-tony-dorsett-jim-mcmahon-junior-seau/2727483 ................................52

Mitsis *et al.*, *Tauopathy PET and Amyloid PET in the Diagnosis of Chronic Traumatic
Encephalopathies*, 4 Translational Psychiatry 1, (2014) ....................................22, 32

Montenigro *et al.*, *Clinical Subtypes of Chronic Traumatic Encephalopathy*,
6 Alzheimer's Research & Therapy 68 (2014) ......................................................23

Moran, *Seau Family Says "No" to NFL Settlement*, U-T San Diego
(Sept. 3, 2014), http://www.utsandiego.com/news/2014/sep/03/seau-family-says-no-
to-nfl-settlement/..................................................................................................61

National Football League, *NFL Outlines for Players Steps Taken to Address Concussions*
(Aug. 14, 2007), http://www.nfl.com/news/story/09000d5d8017
cc67/article/nfl-outlines-for-players-steps-taken-to-address-concussions............65

National Institute for Occupational Safety and Health, *Brain and Nervous System
Disorders Among NFL Players* (Jan. 2013),
http://www.cdc.gov/niosh/pgms/worknotify/pdfs/NFL_
Notification_02.pdf...........................................................................................26

*Newberg on Class Actions* § 9:43 (5th ed.)........................................................85

*Newberg on Class Actions* § 13:23 (5th ed.).....................................................86

NFL.com, *Players* (entry for "George Halas"),
http://www.nfl.com/player/georgehalas/2515602/profile......................................76

*NFL Concussions Fast Facts*, CNN U.S. (July 21, 2014),
http://www.cnn.com/2013/08/30/us/nfl-concussions-fast-facts/ ............................64

*NFL Concussion Settlement, REAL Information You Need to Know*, Real Football Wives
(and Lives) (Sept. 2, 2014), http://www.blogtalkradio.com/realfootballwives/
2014/09/02/nfl-concussion-settlement-real-information-you-need-to-know .........52

*The NFL CTE Question*, The Pro Football Concussion Report (July 22, 2014),
http://profootballconcussions.com/the-nfl-cte-question .......................................51

NFL Europe/WLAF Player Register, *The Football Database*, http://www.foot
balldb.com/nfl-europe/nfleplayers.html..............................................................72

Nicholson, *NFL Europe's Injured Flown to Birmingham*,
Birmingham Business Journal (July 1, 2001),
http://www.bizjournals.com/birmingham/stories/2001/07/02/story2.html?page=all ..............36

O'Keefe, *Still Plenty of Skeptics After NFL Reaches New Deal with Players to Settle Concussion-Related Lawsuit*, N.Y. Daily News (June 28, 2014), http://www.nydailynews.com/sports/football/score-nfl-deny-issues-article-1.1847588 .........78

Omalu *et al.*, *Chronic Traumatic Encephalopahty in a National Football League*, 57 Neurosurgery 128 (2005)...........................................................................................63

Omalu *et al.*, *Chronic Traumatic Encehpalopathy in a National Football League Player: Part II*, 59 Neurosurgery 1086 (2006) ..................................................................63

Pellman *et al.*, *Concussion in Professional Football: Summary of the Research Conducted by the National Football League's Committee on Mild Traumatic Brain Injury*, 21 Neurosurgery Focus 1 (2006)...........................................................64

*Restatement (Third) of Torts: Phys. & Emot. Harm § 36 (2010)* ...................................67

Roberts, *Brain Damage in Boxers: A Study of the Prevalence of Traumatic Encephalopathy Among Ex-Professional Boxers* 61 (1969)..........................................63

Rosenberg, *"Permanently Disabled," Harrison Fighting for Benefits NFL Took Away*, Sports Illustrated (Jan. 29, 2014), http://www.si.com/nfl/2014/01/29/dwight-harrison-nfl-pension ........................................................................................................78

Saulle & Greenwald, *Chronic Traumatic Encephalopathy: A Review*, Rehabilitation Research & Practice (2012) ..........................................................................................22

Schrotenboer, *NFL Takes Aim at $25 Billion, But At What Price?*, USA Today (Feb. 5, 2014), http://www.usatoday.com/story/sports/nfl/super/2014/01/30/super-bowl-nfl-revenue-denver-broncos-seattle-seahawks/5061197/ ...........................................59

Schwarz, *Concussion Committee Breaks with Predecessor*, N.Y. Times (June 1, 2010), http://www.nytimes.com/2010/06/02/sports/football/02concussion.html ..........................................................................................................10

Schwarz, *Expert Ties Ex-Player's Suicide to Brain Damage*, http://www.nytimes.com/2007/01/18/sports/football/18waters.html?pagewanted=all N.Y. Times (Jan. 18, 2007)..........................................................................25, 63

Schwarz, *N.F.L. Acknowledges Long-Term Concussion Effects*, N.Y. Times (Dec. 20, 2009), http://www.nytimes.com/2009/12/21/sports/football/21concussions.html?_r=0 ..........................................................................10

Smith, *In Depth with Graham Bensinger* (Sept. 18, 2014), http://sports.yahoo.com/video/emmitt-smith-20k-concussion-settlement-110000539.html ..........................................................................................................61

*State of Play: Brain Injuries and Diseases of Aging: Hearing Before the S. Special
Comm. on Aging*, 113th Cong. 3 (2014),
http://www.aging.senate.gov/imo/media/doc/Stern_6_25_14.pdf .................................23, 31

Steele, *Players Wrong on Key Factor in NFL Concussion Settlement*,
Sporting News (July 14, 2014), http://www.sportingnews.com/nfl/story/2014-07-
14/nfl-concussions-lawsuit-cte-symp
toms-eligible-settlement-tony-dorsett-wycheck-seeger ...........................................................50

Stern *et al.*, *Clinical Presentation of Chronic Traumatic Encephalopathy*,
81 Neurology 1123 (2013)................................................................................................23, 30

Torre, *How (and Why) Athletes Go Broke*, Sports Illustrated (Mar. 23, 2009), www.
si.com/vault/2009/03/23/105789480/how-and-why-athletes-go-broke...................................77

Toups, *How Many Times Will You Crash Your Car?*, Forbes (July 27, 2011),
http://www.forbes.com/sites/moneybuilder/
2011/07/27/how-many-times-will-you-crash-your-car/ .........................................................33

Wilson, *NFL Paid Roger Goodell $35.1 Million Last Year*, CBSSports.com
(Feb. 14, 2014), http://www.cbssports.com/nfl/eye-on-football/24443392/report-nfl-
paid-roger-goodell-351-million-last-year ..............................................................................59

Wolfley, *Dorsey Levens Rips Settlement of Concussion Lawsuit Against NFL*, Milwaukee
Journal Sentinel (Sept. 18, 2013), http://www.jsonline.com/sports/dorsey-levens-rips-
settlement-of-concussion-lawsuit-against-nfl-b99101255z1-224335851.html .....................60

Zorumski & Rubin, *The Financial Cost of Dementia*, Psychology Today
(Oct. 10, 2013); http://www.psychologytoday.com/blog/demystifying-
psychiatry/201310/the-financial-cost-dementia...................................................................73

**INTRODUCTION**

Objectors agree that "the interests of all parties would be best served by a negotiated resolution of this case." Dkt. No. 5235. Many class members suffer from seriously debilitating injuries in need of immediate medical intervention. Sadly, those injuries affect not only those former players but also their wives, girlfriends, and others around them. Moreover, Defendants' significant misconduct – as alleged in the Class Complaint and trumpeted by Co-Lead Class Counsel early in the case – should not go unaddressed. Yet a settlement that forever adjudicates the rights of thousands of absent class members must be both substantively and procedurally fair, adequate, and reasonable. This Settlement is not, and it should be rejected.

A fair settlement is a compromise with each side giving and getting. But here, the real benefits run to the NFL, which gets a near-absolute release without providing adequate and reasonable compensation in return, and to Class Counsel, who get an extraordinary fee as part of the process. A settlement under these terms is no compromise. It is capitulation.

The Settlement's defects can be fairly summarized as follows:

*A lack of adequate representation.* The rights of a significant percentage of class members were bargained away without representation by a representative class member or counsel, and the Settlement fails to provide structural assurance of due process protections to all class members. The Settlement includes three conflicts of interest that clearly violate Federal Rule of Civil Procedure 23(a)(4) and the Supreme Court's holding in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997): (1) the failure to compensate chronic traumatic encephalopathy (CTE) in those who suffer or die after July 7, 2014; (2) the 75% offsets for non-NFL experienced traumatic brain injuries and strokes; and (3) the failure to credit time played in NFL Europe.

*A failure to compensate core class injuries.* Co-Lead Class Counsel have rightly proclaimed that "CTE is believed to be the most serious and harmful disease that results from

1

NFL and concussions."[1]  "Thousands of football players, many of whom are thought to have suffered more than one hundred mild traumatic brain injuries, are dealing with horrible and debilitating symptoms."[2]  There is little co-morbidity among CTE and the other diseases compensated in the Settlement.  In other words, players can have CTE without having the other diseases.  Yet the Settlement provides a $4 million payment for death with CTE before July 7, 2014, but nothing for players suffering from – or even dying from – CTE after that date.  Nor does the Settlement compensate other maladies – including unprovoked seizures and depression – caused by head injuries class members suffered while playing in the NFL.

    *A lack of proper notice.*  The slickly packaged notice fails to fairly inform class members of their rights in "plain, easily understood language."  Fed. R. Civ. P. 23(c)(2)(B).  The notice is misleading at its best, and outright false at its worst.  And Class Counsel and their colleagues

---

[1] Co-Lead Class Counsel Seeger Weiss used to have on its website a tutorial relating to MTBI and football:

> Frequent brain trauma or multiple football concussions . . . has shown to cause serious mental health problems.  ***Thousands of football players, many of whom are thought to have suffered more than one hundred mild traumatic brain injuries, are dealing with horrible and debilitating symptoms***.

> Multiple medical studies have found direct correlation between football concussions and suffering from symptoms of chronic traumatic encephalopathy, also known as CTE.  ***CTE is believed to be the most serious and harmful disease that results from NFL and concussions.***  CTE is a progressive degenerative disease that causes damage to the brain tissue and the accumulation of Tau Proteins.

*Up-To-Date Information on NFL Concussions*, Seeger Weiss LLP, (Sept. 9, 2014), http://www.seegerweiss.com/football-concussions/#ixzz3CByVHxui (emphasis added) (attached as Exhibit 1) (all exhibit references refer to exhibits attached to the Declaration of Eric R. Nitz).  Seeger Weiss quickly removed that language after oral argument in the Third Circuit on September 10, 2014, at which the inadequate representation and failure to compensate CTE, as well as this language on their website, was raised.

[2] *Id.*

have compounded the problem with an aggressive propaganda campaign – laced with misinformation – urging players to accept the settlement.

**An unnecessarily complex and confusing claims process.**  The claims administration process establishes what is essentially an opt-in class, with players required to register within 180 days or forfeit any benefits.  Once registered, class members – many of whom are neurocognitively and economically challenged – face a complex and ill-defined process that includes undergoing unreasonable and burdensome testing as well as unlimited appeals at no cost to the NFL but a $1,000 fee for appeals by class members.  The inevitable effect and undeniable intent is to limit claims paid.

**A failure to use appropriate testing to determine qualifications for compensation.**  The Settlement's evaluative testing is not appropriate for determining whether retired professional football players have brain damage, neurodegenerative diseases, or neurocognitive diseases.  Rather, it is appropriate only in evaluating younger individuals.  Further, the Settlement requires an unrealistically high level of cognitive impairment that would leave many class members with documented cognitive deficits without compensation.

**A failure to demonstrate the other indicia required for a fair, adequate, and reasonable settlement.**  The Third Circuit has articulated a series of factors to be considered in determining whether a class settlement should be approved.  *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  The Settlement falls flat when those factors are considered.  For example: there was no formal discovery; the NFL can withstand a far greater judgment than what will be paid; the reaction of the class has been understandably negative; and the risks of establishing liability and attendant damages are not high.

In sum, the Settlement is legally defective and plainly unfair.  Approval should be denied.

# BACKGROUND

## I. Procedural History

### A. Initial Litigation

In 2011, retired NFL players and their families began suing the NFL, alleging that the NFL breached its duty to protect the health and safety of players and actively misled them about the risks of repeated mild traumatic brain injuries (MTBI). Dkt. No. 6073-5. In 2012, the Judicial Panel on Multidistrict Litigation consolidated these cases in the Eastern District of Pennsylvania. Dkt. No. 1. The NFL Defendants moved to dismiss the complaints on file on preemption grounds, and the Court heard argument on those motions on April 9, 2013. Dkt. Nos. 3590, 4737, 4738. On July 8, 2013, the Court ordered the parties to mediation, which occurred that month. Dkt. No. 5128.

### B. The January 6, 2014 Class Action Complaint and Initial Settlement

In August 2013, the court-appointed mediator informed the Court that Class Counsel and NFL Defendants would globally settle all claims arising from the NFL's fraudulent and misleading conduct relating to the effects of MTBI. *See* Dkt. No. 5235. In an August 2013 press release announcing the broad terms of the settlement – issued five months before the Complaint was filed – the mediator stated that the settlement called for a $675 million fund to "compensate former players who have suffered cognitive injury or their families," among other terms. Press Release, *NFL, Retired Players Resolve Concussion Litigation*, Irell & Manella LLP, http://static.nfl.com/static/content/public/photo/2013/08/29/0ap2000000235504.pdf (attached as Exhibit 2). The fund was to compensate "severe cognitive impairment, dementia, Alzheimer's, [and] ALS." *Id.* "The precise amount of compensation," the mediator stated, "will be based upon the specific diagnosis, as well as other factors including age, number of seasons played in the NFL, and other relevant medical conditions." *Id.* On January 6, 2014, Class Counsel for the

4

first time publicly revealed the specific terms of the settlement when they filed their Class Action Complaint, settlement agreement, and first motion for preliminary approval. *See* Dkt. No. 5634.

## 1. The Class Action Complaint

The Class Action Complaint defines a class consisting of all living, retired NFL Football Players who have retired from the NFL before preliminary approval of the proposed settlement agreement as well as representatives of retired NFL players who have died or become legally incapacitated. *See Turner v. Nat'l Football League*, Civ. A. No. 2:14-cv-29-AB, Dkt. No. 1 ¶¶ 1, 16 (E.D. Pa. Jan. 6, 2014) ("Complaint," or "Compl."). It further defines NFL Football Players to include not just players in the NFL and its member clubs but also players in the American Football League, which merged with the NFL, the NFL Europe League, and the World League of American Football. *Id.* ¶ 1. The class also includes spouses, parents, dependent children, and any other person who under state law may sue the NFL by virtue of his or her relationship with the retired player. *Id.*

The Complaint divides the class into two sub-classes. Subclass 1 consists of all retired players (and their representative and derivative claimants) who "were not diagnosed with dementia, Alzheimer's Disease, Parkinson's Disease, ALS and/or Death with CTE prior to the date of the Preliminary Approval and Class Certification Order." Compl. ¶ 17(a). Subclass 2 consists of all retired players (and their representative and derivative claimants) who "were diagnosed with dementia, Alzheimer's Disease, Parkinson's Disease, ALS and/or Death with CTE prior to the date of the Preliminary Approval and Class Certification Order." *Id.* ¶ 17(b). Subclass 2 also includes the representative and derivative claimants of retired players "who died before Preliminary Approval" of the settlement and who "received a post-mortem diagnosis" of Death with CTE. *Id.*

Shawn Wooden and Kevin Turner are the Representative Plaintiffs for the class. Mr. Wooden represents Subclass 1. Compl. ¶ 17(a). A safety, Mr. Wooden played in the NFL from 1996 until 2004 with the Miami Dolphins and the Chicago Bears. *Id.* ¶ 4. He is alleged to have "experienced" unspecified "neurological symptoms" but "has not been diagnosed with any neurocognitive impairment." *Id.* The Complaint states that Mr. Wooden has an "increased risk of developing dementia, Alzheimer's, Parkinson's, or ALS." *Id.* Mr. Turner represents Subclass 2. *Id.* ¶ 17(b). A running back, Mr. Turner played in the NFL from 1992 until 1999 with the New England Patriots and the Philadelphia Eagles. *Id.* ¶ 7. He was diagnosed with ALS in 2010. *Id.* **Neither Mr. Wooden nor Mr. Turner alleges that he suffers from CTE or faces an increased risk of suffering from CTE**.

Although neither Mr. Wooden nor Mr. Turner alleges that he suffers from CTE or faces an increased risk of suffering from CTE, the Complaint identifies several long-term injuries arising from MTBI, "including, but not limited to . . . **CTE and its related symptoms**." Compl. ¶ 127 (emphasis added).

### a. The NFL's Duty of Care and the MTBI Committee

The Complaint alleges that the NFL assumed a duty of care to protect its players from the adverse consequences of the repeated head injury they sustained while playing football. Throughout its existence, the NFL received medical advice about the health risks of repeated MTBI, placing it in a superior position of knowledge over the players. Compl. ¶ 70.

The Complaint explains that, by the mid-1990s, the link between repetitive mild head trauma and neurodegenerative disease had been well-established. As early as 1952, the *New England Journal of Medicine* had recommended a three-strike rule for concussions in football, recommending that a player retire after having received his third concussion. Compl. ¶ 95. In

the 1980s, published studies had identified long-term brain damage and unexpected cognitive impairment in patients who had experienced MTBI. *Id.* ¶ 105.

As the Complaint explains, by the mid-1990s, the NFL had begun sponsoring its own medical research into the effect of concussions and repeated head injury on NFL football players. Compl. ¶ 84. It founded the Mild Traumatic Brain Injury Committee (MTBI Committee), which was publicized as independent from the NFL and tasked with studying the effects of brain injury in football players. *Id.* ¶¶ 134-136. Despite promises of independence, the League appointed as chairman Dr. Elliott Pellman, a team doctor and rheumatologist with no clinical or research experience in neurology. *Id.* ¶ 138. The other four members also were affiliated with the NFL. *Id.* ¶ 137. The MTBI Committee was aware of the long line of medical research tying repeated head injury to neurodegenerative disease. Dr. Pellman's eventual successor as chairman, Dr. Ira Casson, stated in written testimony before Congress in January 2010 that he had "been concerned about the possibility of long term effects on the brain related to football for close to thirty years." *Id.* ¶ 209.

### b. Criticism of the MTBI Committee

The Complaint alleges that the MTBI Committee's "research" stood in stark contrast to studies previously published. Despite years of contrary research by leading authorities, the ***NFL's MTBI Committee*** – in its first published paper in 2003 – ***concluded that concussions presented no long-term health risk***. Compl. ¶ 147. Between 2003 and 2009, the MTBI Committee published ***fifteen more papers***, all of which supported the NFL's position that ***concussions presented no long-term adverse risks***. *Id.* ¶ 148. The Complaint cites a 2004 article, for example, that found no risk of repeated concussions in players who had suffered a previous concussion and denied the existence of a "7-to-10 day window of increased susceptibility to sustaining another concussion." *Id.* ¶ 151. In the commentary on that

7

publication, another physician wrote that the "article sends a message that it is acceptable to return players while still symptomatic, which contradicts literature published over the past twenty years suggesting that athletes be returned to play only after they are asymptomatic, and in some cases for seven days." *Id.* ¶ 152. Nevertheless, the Committee repeated the conclusion a year later: "Return to play does not involve a significant risk of a second injury either in the same game or during the season." *Id.* ¶ 153.

As criticism of the MTBI Committee's research grew, the Committee went on the offensive. Researchers who published conclusions contrary to the MTBI Committee's position were attacked. For example, after Dr. William Barr presented NCAA study findings that contradicted NFL practices, Dr. Pellman fired Dr. Barr from his position as a neuropsychologist for the New York Jets. Compl. ¶ 168. And after Dr. Bennet Omalu began identifying cases of CTE in retired football players, the MTBI Committee pressured the journal that published Dr. Omalu's studies to retract them. *Id.* ¶ 173. When one neurosurgeon presented to the MTBI Committee studies linking NFL head injuries with cognitive decline, "[t]he Committee got mad." *Id.* ¶ 193.[3] By 2008, Dr. Ann McKee of Boston University had built on Dr. Omalu's work and identified CTE in two more retired football players. *Id.* ¶ 196. The MTBI Committee characterized her work as an "isolated incident" and dismissed it: "[T]here is not enough valid, reliable or objective scientific evidence at present," Dr. Casson argued, "to determine whether . . . repeat head impacts in professional football result in long term brain injury." *Id.* ¶ 197.

Even after Dr. Casson and Dr. David Viano replaced Dr. Pellman as chair of the MTBI Committee (Pellman is now the NFL Medical Director), the Committee continued denying the

---

[3] The neurosurgeon further stated that "we got into it. And I'm thinking, 'This is a . . . disease in America's most popular sport and how are its leaders responding? Alienate the scientist who found it? Refuse to accept the science coming from him?'" Compl. ¶ 193.

8

link between MTBI and brain disease.  Compl. ¶¶ 188, 191.  For example, in 2007 Dr. Casson unequivocally denied any link between concussions and depression, dementia, Alzheimer's, or "anything like [that] whatsoever."  *Id.* ¶ 191.

### c. The NFL's Representations About Head Injuries

The NFL relied on the MTBI Committee's heavily criticized research in communicating with its players.  For example, as the Complaint alleges, in 2007 the NFL provided each player with a concussion pamphlet stating that "[c]urrent research with professional athletes has not shown that having more than one or two concussions leads to permanent problems if each injury is managed properly.  It is important to understand that there is no magic number for how many concussions is too many."  Compl. ¶ 180.  When the pamphlet was released, Commissioner Roger Goodell issued a statement explaining that he wanted to ensure players "are fully informed and take advantage of the most up to date information and resources as we continue to study the long-term impact on concussions."  *Id.* ¶ 181.  Nonetheless, the pamphlet did not refer to or cite the numerous studies demonstrating a link between repeated concussions and neurodegenerative brain diseases, such as CTE.  *Id.*

The Complaint also describes how, by 2010, the NFL had renamed the MTBI Committee the "Head, Neck, and Spine Medical Committee."  Compl. ¶ 213.  Dr. Pellman was removed from the Committee and Dr. H. Hunt Batjer and Dr. Richard Ellenbogen were named co-chairs.  *Id.*  The Head, Neck, and Spine Medical Committee admitted that the MTBI Committee's data was "infected" and should be collected anew.  *Id.* ¶ 214.  Dr. Batjer even admitted that the MTBI Committee's research was methodologically flawed and was "not acceptable by any modern standards."  *Id.* ¶ 216.  And when a promotional brochure for a league-sponsored symposium described the concussion crisis as "hype around assertions of long-term harm to players from

9

head injuries," Dr. Batjer disagreed. "They aren't assertions or hype," he said referring to the scientific evidence of the link between MTBI and long-term brain damage.[4] "They are facts."[5]

In 2011, another member of the Head, Neck, and Spine Medical Committee admitted that the MTBI Committee's previous long-range study had "no science" in it and that the data from that study would not be used in a new study that was underway. Compl. ¶ 222. In recognizing the validity of science suggesting a link between long-term brain damage and concussions, the Head, Neck, and Spine Medical Committee was late to the game, even by NFL standards. Two years earlier, NFL spokesman Greg Aiello had admitted: "It's quite obvious from the medical research that's been done that concussions can lead to long-term problems."[6]

The Complaint notes that, throughout this time period, the NFL fostered a culture where head trauma, "dings," and "getting your bell rung" were considered badges of honor. For example, the NFL glorified – and profited handsomely from – players' most violent hits. It created a series of videos through NFL Films that featured in slow motion the League's most aggressive and violent plays. Compl. ¶¶ 41-42, 47. Among the names of these films: *Big Blocks and King Size Hits*, *The Best of Thunder and Destruction – NFL's Hardest Hits*, *Crunch Course*, *Crunch Course II*, *The NFL's Greatest Hits*, and *Moment of Impact*. *Id.* ¶ 43.

### 2. The Initial Settlement

Notwithstanding the breadth of afflictions linked to MTBI, the initial settlement compensated only a limited number of diseases and limited total class-wide compensation for

---

[4] Schwarz, *Concussion Committee Breaks with Predecessor*, N.Y. Times (June 1, 2010), http://www.nytimes.com/2010/06/02/sports/football/02concussion.html (attached as Exhibit 3).

[5] *Id.*

[6] Schwarz, *N.F.L. Acknowledges Long-Term Concussion Effects*, N.Y. Times (Dec. 20, 2009), http://www.nytimes.com/2009/12/21/sports/football/21concussions.html?_r=0 (attached as Exhibit 4).

10

those injuries to $675 million.[7]  *See* Dkt. No. 5634-2 §§ 23.1-23.5.  ALS claimants were to receive a maximum award of $5 million.  *See id.* at Ex. 3.  Retired players diagnosed with Parkinson's Disease or Alzheimer's Disease were to receive a maximum $3.5 million award.  *Id.*  And class members exhibiting Level 2 or Level 1.5 dementia were to receive at most $3 million or $1.5 million, respectively.  *Id.*  The full written initial settlement also revealed that – contrary to previous public statements from Co-Lead Class Counsel – it would compensate cases of CTE with a maximum $4 million award ***only if the retired player died before preliminary approval*** of the settlement.  *See* Dkt. No. 5634-2 §§ 2.1(xxx), 6.3 & Ex. 1 ¶ 5.  Players suffering from CTE who would be diagnosed or died after that date were to receive nothing.  Moreover, players suffering from the mood and behavioral symptoms of CTE were to receive no compensation under the settlement unless they independently qualified for compensation through one of the other qualifying diagnoses.  *Id.* § 6.3.

The initial settlement also created a Baseline Assessment Program ("BAP") that would have provided class members the opportunity to undergo a baseline assessment examination, which would establish the class member's baseline neurocognitive functioning and screen for dementia and neurocognitive impairment.  Dkt. 5634-2 § 5.2.  Class members who were diagnosed with Level 1 dementia in the baseline assessment examination would be entitled to supplemental benefits that would cover the costs of medical treatments related to the dementia.  *Id.* §§ 5.2, 5.11.  The term of the BAP was to be ten years, but class members receiving supplemental benefits would continue to do so for up to five years beyond that ten-year term.  *Id.* §§ 5.5, 5.11.  The initial settlement capped the BAP Fund at $75 million.  *Id.* § 23.3(g).

---

[7] Calling it a $675 million fund was not accurate.  It was a $300 million fund paid over two years, with another $375 million paid over 17 years.  *See* Dkt. No. 5634-2 §§ 23.1-23.5.

On January 14, 2014, this Court, *sua sponte*, denied Class Counsel's motion for preliminary approval of the settlement. *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708 (E.D. Pa. 2014). The Court recognized that the "Monetary Award Fund may lack the necessary funds to pay Monetary Awards for Qualifying Diagnoses" and "[a]s a first step toward preliminary approval" "order[ed] the parties to share the [actuarial and economic] documentation" relied upon during settlement "with the Court through the Special Master." *Id.* at 715-16.

### C. Objectors' Motion To Intervene

Objectors moved to intervene. *See* Dkt. No. 6019. They explained that their interests were not adequately represented during the negotiation of the initial settlement, in part because that settlement arbitrarily denied compensation to individuals whose CTE went undetected until after preliminary approval. Because each Objector exhibits MTBI-related conditions that are also symptoms of CTE, each is at risk of developing CTE. Even though the settlement would have awarded $4 million to the families of players who died with CTE before final approval of the settlement, Objectors and their families would receive nothing if later diagnosed with CTE. *Id.* at 13-18. In opposing the motion to intervene, Class Counsel ignored this fact entirely, offering no explanation for the disparate treatment of CTE claimants. *See* Dkt. No. 6046. Objectors also criticized the 75% offset imposed on any player who suffers a *single* stroke or a *single* instance of non-football related traumatic brain injury ("TBI"). Dkt. 5634-2 § 6.5(b)(ii)-(iii). Such a player would recover only 25% of what he is otherwise entitled to receive under the settlement. Again, Class Counsel's opposition was devoid of any explanation for this offset. *See* Dkt. No. 6046. Objectors noted other defects in the initial settlement and other class members voiced criticism as well. *See, e.g.*, Dkt. Nos. 5686, 5771.

### D.     The Revised Settlement

Notwithstanding those criticisms of the initial settlement, Class Counsel on June 25, 2014 submitted a revised settlement agreement that retained the same structure and almost all of the key provisions of the initial settlement.  *See* Dkt. No. 6073-2 ("Settlement").  Class Counsel moved for "conditional" class certification and preliminary approval of the Revised Settlement. *See* Dkt. No. 6073.

### 1.     Compensation

Like the initial settlement, the Settlement compensates only the same limited subset of the diseases that have been linked to MTBI: ALS, Parkinson's, Alzheimer's, Level 2 dementia, and Level 1.5 dementia.  Settlement Ex. B-3.  It also retains the maximum compensation awards provided for each of these diseases in the initial settlement.  *Id.*  Similar to the initial settlement, the Settlement compensates cases of CTE with $4 million, but ***only if the claimant dies before preliminary approval of the settlement agreement.***  Settlement §§ 2.1(yyy), 6.2(a) (providing compensation for a "Qualifying Diagnosis"); *id.* Ex. B-1 at 5.[8]  Unlike its predecessor, the Settlement does not cap total compensation for ALS, Parkinson's, Alzheimer's, and Levels 1.5 and 2 dementia, but it retains the $75 million cap on the BAP Fund.  *See* Dkt. 6073-5 at 4.

The Settlement still has a series of offsets that reduce a claimant's compensation.  Most notably, the Settlement retains the 75% offset for a single stroke or a single non-football related TBI – and an offset that is compounded if a class member suffers both.  Settlement §§ 6.7(b)(ii)-(iii), (e).  Additionally, class members who played fewer "Eligible Seasons" in the NFL receive

---

[8]  Section 6.2(a) of the Settlement provides compensation for any "Qualifying Diagnosis." Section 2.1(yyy) defines "Qualifying Diagnosis" to include "Death with CTE." Exhibit B-1 defines "Death with CTE" as follows: "For Retired NFL Football Players ***who died prior to the date of the Preliminary Approval and Class Certification Order***, a post-mortem diagnosis of CTE made by a board-certified neuropathologist."  Settlement Ex. B-1 at 5 (emphasis added).

only a percentage of the maximum award for their condition. *See* Settlement § 6.7(b)(i). Although class members receive "Eligible Season" credit for service on "practice, developmental, or taxi squad[s]," time spent playing for NFL Europe or its related leagues does not apply to the "Eligible Season" determination. *Id.* §§ 2.1(kk), 6.7(c)(1). Similarly, class members who are older at the time of the Qualifying Diagnosis receive only a percentage of the maximum award for their condition. *See id.* § 6.7(b) & Ex. B-3.

### 2. Eligibility

A complex series of administrative procedures governs the distribution of benefits. Class members must register with the Claims Administrator within 180 days of Settlement Class Supplemental Notice. Settlement § 4.2(c). Failure to do so renders the player **completely ineligible** for any benefits, yet the release would be binding. *Id.* Additionally, the undiagnosed players in Subclass 1 must undergo the baseline assessment examination to receive the full award; failure to undergo the examination results in a 10% reduction in benefit. *Id.* §§ 5.4, 6.7(b)(iv). The Baseline Assessment Program itself imposes a series of deadlines. Players aged 43 and older must obtain the BAP examination within two years after the BAP commences; younger players must do so by the earlier of their 45th birthday or the BAP's tenth year. *Id.* § 5.3.

The BAP requires players to participate in neuropsychological tests that do not evaluate the relevant neurodegenerative diseases for purposes of determining relief. For example, instead of targeting the neurodegenerative diseases of CTE or Alzheimer's, the tests are designed for younger traumatic brain injury patients. *See* Decl. of Robert A. Stern ("Stern Decl.") ¶ 43. Moreover, the tests are not consistent with the neuropsychological tests typically employed by doctors to evaluate patients for mild cognitive impairment or Alzheimer's disease dementia. *Id.* ¶¶ 43-46.

14

The tests also do not determine whether a former player suffers from the specific types of behavioral and mood disorders affiliated with a history of head trauma, including aggression, impulsivity, or dementia. Stern Decl. ¶¶ 31, 45. Not only are these tests entirely inappropriate for purposes of identifying the compensable neurodegenerative diseases under the Settlement, but the manner and timing in which they are administrated will produce inaccurate results. *Id.* ¶¶ 44-46. If a patient has a disease at the level of severity required for compensation, the length and complexity of testing to which he must submit himself is far too long; indeed, the extra tests only increase the likelihood that a patient will not be able to complete the exam. *Id.* ¶ 44. In short, the Settlement requires players to submit to the wrong medical tests with unfairly high evaluation bars that by no means ensure proper or accurate medical evaluations.

Both the NFL and claimants may appeal adverse claim determinations. Settlement §§ 9.5-9.7. The initial settlement limited the NFL to ten appeals per year, but the Settlement allows unlimited appeals by the NFL. *Compare* Dkt. No. 5634-2 § 9.6(b) *with* Settlement § 9.6(b). Claimants – but not the NFL – must pay a $1,000 fee to docket an appeal. Settlement § 9.6(a). The fee is refunded if the appeal is successful. *Id.*

### 3. The Release

The Settlement broadly releases all MTBI-related claims of every class member who does not opt out, including claims of class members who played in NFL Europe and its predecessors. Class members:

> waive and release . . . any and all past, present and future claims, counterclaims, actions, rights or causes of action . . . in law or in equity . . . known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated [that any settling plaintiff] had, has, or may have in the future arising out of, in any way relating to or in connection with the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, referred to or relating to the Class Action Complaint and/or Related Lawsuits . . . .

15

Settlement § 18.1(a). The Settlement states that the claims it releases include, among others, claims "arising out of, or relating to . . . head, brain and/or cognitive injury, as well as any injuries arising out of, or relating to, concussions and/or subconcussive events . . . of whatever cause" and claims "arising out of, or relating to, CTE." *Id.* § 18.1(a)(ii), (iv). The Settlement's release also requires class members to acknowledge that they "explicitly took unknown or unsuspected claims into account in entering into the Settlement Agreement and it is the intention of the Parties fully, finally and forever to settle and release all Claims" falling within the scope of the allegations in the Complaint and related lawsuits. *Id.* § 18.2.

### 4. Attorneys' Fees

The Settlement calls for a $112.5 million attorneys' fee to be paid within 60 days after the Settlement is final, which the NFL Defendants have agreed not to oppose. Settlement §§ 21.1-.2.[9] It also authorizes Co-Lead Class Counsel to "petition the Court to set aside up to five percent (5%) of each Monetary Award . . . to facilitate the Settlement program and related efforts of Class Counsel." *Id.* The initial settlement did not contain this set-aside provision. *Compare id. with* Dkt. No. 5634-2 § 21.1. The Settlement places no limits on how Co-Lead Class Counsel may use the set aside.

### E. Opposition to Preliminary Approval

One week after Class Counsel moved for preliminary approval, Objectors filed an objection to the settlement and opposed the motion for preliminary approval. They argued, among other things, that intra-class conflicts precluded certification under Rule 23(a)(4). Dkt.

---

[9] The NFL Defendants have taken no position on the propriety of the fee award, noting that "any such proposed set aside application is a matter strictly between and among Settlement Class Members, Class Counsel, and individual counsel for Settlement Class Members." Settlement § 21.1.

16

No. 6082 at 19-29. Most notably, class members suffering from CTE would receive no compensation after preliminary approval but those who died before approval would receive up to $4 million. *Id.* at 20-26. Objectors also challenged the proposed notice because it falsely indicated that the settlement compensated future cases of CTE. *Id.* at 29-32. And Objectors objected to the labyrinth of procedural requirements for obtaining relief, which would likely prevent many class members from recovering. *Id.* at 32-35.

### F.    Preliminary Approval

On July 7, 2014, this Court certified the class for settlement only, preliminarily approved the Settlement, established an opt-out/objection procedure, and scheduled a fairness hearing. Dkt. Nos. 6083, 6084. Objectors petitioned to appeal the class certification decision under Rule 23(f), and the Third Circuit denied that petition on September 11, 2014. Dkt. No. 6166.

## II.    Background of Objectors

Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine are all class members and NFL veterans; one also played in NFL Europe. They played, on average, eight years in the league, and most received NFL-administered injections of Toradol, a pain-killer. They are collegiate All-Americans, team captains, Pro-Bowlers, and Super Bowl Champions. *See* Dkt. No. 6082 at 2-5. A more extensive statement of the Objectors' background is included as Appendix A to this Objection.

Since leaving the NFL, Objectors have experienced one or more of a wide range of symptoms linked to repetitive mild traumatic brain injury (MTBI), including a sensitivity to noise, visuospatial issues, visual impairment, chronic pain, executive function deficit, episodic depression, mood and personality changes, chronic headaches, dysnomia, a decreased ability to multi-task, peripheral nerve dysfunction (numbness, burning, and/or tingling), cervical spinal disorders, sleep dysfunction, attention and concentration deficits, short- and long-term memory

17

deficits, and somatic disorders. Additionally, some of the Objectors also have experienced a decreased ability to interpret, regulate, express, or control complex emotions. These conditions have been associated with CTE and may broaden or intensify as time passes.

Although the Objectors' claims for their injuries would be released by the Settlement, it appears that none would qualify for any relief under the settlement beyond participation in the Baseline Assessment Program ("BAP"). And the BAP – which measures cognitive deficits such as memory impairment and loss of attention – does not even screen for many of the Objectors' common neurobehavioral conditions or neuropsychiatric presentations.

## ARGUMENT

This Court has a "fiduciary responsibility as the guardian of the rights of the absentee class members." *Girsh v. Jepson*, 521 F.3d 153, 157 (3d Cir. 1975); *see also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 351 (3d Cir. 2010) ("Rule 23(e) places a duty on district courts to safeguard the interests of class members"). That responsibility arises because class actions present the unique circumstance where class counsel have "the incentive . . . , in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers." *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014).

Courts must "be even more scrupulous than usual in approving settlements where no class has yet been formally certified." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995) ("*GM Trucks*"). Such caution is necessary because "the 'danger of a premature, even a collusive, settlement [is] increased when . . . the status of the action as a class action is not determined until a settlement has been negotiated, with all the momentum that a settlement agreement generates.'" *Id.* at 788 (quoting *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 680 (7th Cir. 1987)).

18

"Pre-certification negotiations also hamper a court's ability to review the true value of the settlement or the legal services after the fact," and "deny[] other plaintiffs' counsel information that is necessary for them to make an effective evaluation of the fairness of any settlement that results." *GM Trucks*, 55 F.3d at 788. And "where notice of the class action is . . . sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a fait accompli." *Mars Steel*, 834 F.2d at 680-81. As a result, "even if [class members] have enough information to conclude the settlement is insufficient and unsatisfactory, the mere presentation of the settlement notice with the class notice may pressure even skeptical class members to accept the settlement out of the belief that . . . they really have no choice." *GM Trucks*, 55 F.3d at 789.

In short, the need for the Court's guardianship of absentee class members is particularly acute where, as here, a class settlement is negotiated before certification. The Court's exercise of that guardianship includes an assessment of the adequacy of class representation under Federal Rule of Civil Procedure 23(a)(4). *See Amchem*, 521 U.S. at 621; *GM Trucks*, 55 F.3d at 794 (denying approval of settlement where class not certifiable for lack of adequate representation). If the settlement terms create "'adversity among subgroups[,] . . . the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups.'" *Amchem*, 521 U.S. at 627. In the presence of such intra-class conflicts, the settlement requires the "structural assurance of fair and adequate representation." *Id.* The Court must also consider whether the settlement provides "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). A false or misleading notice does not "clearly and concisely state in plain, easily understood language . . . the nature of the action[,] the definition of the class certified[, and] the class claims,

issues, or defenses." *Id.* Finally, the Court must determine that the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). The settling parties must carry the burden of proving that these requirements are met. *See GM Trucks*, 55 F.3d at 785.

## I. The Lack of Adequate Representation Precludes Certification

A fair settlement requires a certifiable class with the interests of all class members adequately represented. *GM Trucks*, 55 F.3d at 784. Rule 23 demands that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The proposed class fails this requirement. The "linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183, 187-88 (3d Cir. 2012) (denying preliminary class certification where interests of representative plaintiffs and absent class members diverged). When assessing the adequacy of representation, "a judge must focus on the settlement's distribution terms (or those sought) to detect situations where some class members' interests diverge from those of others in the class." *GM Trucks*, 55 F.3d at 797 (representation inadequate where settlement terms preferred some class members over others). Thus, "a settlement that offers considerably more value to one class of plaintiffs than to another may be trading the claims of the latter group away in order to enrich the former group." *Id.* Offering considerably more value to one class of plaintiffs is precisely what the Settlement does here.

The lack of adequate representation here has manifested itself primarily through three intra-class conflicts. ***First***, the Settlement arbitrarily limits compensation for CTE to individuals who died before preliminary approval of the Settlement. Class members whose CTE is discovered in the future receive nothing. ***Second***, the Settlement reduces a claimant's award by 75% if (i) the claimant has suffered a stroke, even though the NFL Defendants' own conduct in

20

administering Toradol increased some Objectors' risk of stroke, or (ii) the claimant has suffered a ***single*** non-football related TBI, even though one TBI is dwarfed by the dozens of diagnosed and undiagnosed TBIs that the retired NFL player received while playing in the NFL.  ***Third***, the settlement class includes veterans of NFL Europe, but the Settlement does not credit seasons played in that league as "eligible seasons."

### A.  The Failure-To-Compensate-CTE Conflict Demonstrates Lack of Adequate Representation

The greatest of the Settlement's many flaws is its failure to compensate players who are living with CTE or who die with it after July 7, 2014 – notwithstanding that the family of a player who died with CTE before July 7, 2014 receives $4 million.  Medical evidence demonstrates that CTE is likely to be far and away the most common neurocognitive disease suffered by the class.  ***Neither class representative alleges that he has CTE or is at increased risk of developing CTE.***  Yet all class members release their claims related to CTE.  They receive nothing but the right to participate in the BAP – with its ill-defined benefits and $75 million total cap.

Class Counsel bargained away the rights of more than 20,000 former NFL players – many of whom are suffering the serious effects of CTE, fairly called "football's industrial disease."  This alone is reason to reject the settlement.

### 1.  Chronic Traumatic Encephalopathy (CTE)

"CTE is a unique neurodegenerative condition that is associated with repetitive mild traumatic brain injury."[10]  CTE has been found in football players, boxers, hockey players,

---

[10] McKee *et al.*, *The Spectrum of Disease in Chronic Traumatic Encephalopathy*, 136 Brain 43, 62 (2013) ("McKee *et al.* 2013") (attached as Exhibit 5); *see also, e.g.*, Jordan, *The Clinical Spectrum of Sport-Related Traumatic Brain Injury*, 9 Nature Reviews Neurology 222, 225 (2013) ("CTE is the long-term neurological consequence of repetitive mild TBI.") (attached as

military veterans exposed to explosions, and domestic violence victims.[11]  It is "a distinct neurodegeneration" disease different from, for example, Alzheimer's, Parkinson's, or ALS.[12]  It "is the only known neurodegenerative dementia" caused specifically by repetitive head trauma.[13]  Thus, of the diseases addressed in the Settlement, it is the only one that occurs **only** by being hit in the head.

CTE's neuropsychological and neuropsychiatric effects typically fall into one of three categories: mood/behavioral, motor, and cognitive.[14]  Researchers have identified four stages of CTE.[15]  Stage I symptoms include headache, loss of attention and concentration, short-term memory difficulties, aggression, depression, executive dysfunction, and explosivity.[16]  Stage II

---

Exhibit 6); Saulle & Greenwald, *Chronic Traumatic Encephalopathy: A Review*, Rehabilitation Research & Practice 2 (2012) ("It has been well established that repetitive concussive or subconcussive blows to the head place individuals at risk for CTE."), http://www.hindawi.com/journals/rerp/2012/816069/ (attached as Exhibit 7).

[11] Mitsis *et al.*, *Tauopathy PET and Amyloid PET in the Diagnosis of Chronic Traumatic Encephalopathies*, 4 Translational Psychiatry 1, 1 (2014) (attached as Exhibit 8).

[12] Baugh *et al.*, *Current Understanding of Chronic Traumatic Encephalopathy*, 16 Current Treatment Options in Neurology 306, at 1/13 (2014) ("Baugh *et al.* 2014") (attached as Exhibit 9); *see also* Montenigro *et al.*, *Clinical Subtypes of Chronic Traumatic Encephalopathy*, 6 Alzheimer's Research & Therapy 68, at 1/17 (2014) (noting that CTE "is a neurodegenerative disease" that is "unique" from other diseases, including Alzheimer's) (attached as Exhibit 10); McKee *et al.* 2013, *supra*, at 44 (noting that CTE can be "clinically mistaken for Alzheimer's disease or frontotemporal dementia").

[13] Gavett *et al.*, *Chronic Traumatic Encephalopathy: A Potential Late Effect of Sport-Related Concussive and Subconcussive Head Trauma*, 30 Clinical Sports Medicine 179, 184 (2011) (attached as Exhibit 11).

[14] *Id.*; *see also* Stern *et al.*, *Clinical Presentation of Chronic Traumatic Encephalopathy*, 81 Neurology 1122, 1124-25 (2013) ("Stern *et al.* 2013") (attached as Exhibit 12); *State of Play: Brain Injuries and Diseases of Aging: Hearing Before the S. Special Comm. on Aging*, 113th Cong. 3 (2014), at 5 (written statement of Dr. Robert Stern) ("Stern Testimony"), http://www.aging.senate.gov/imo/media/doc/Stern_6_25_14.pdf; Jordan, *supra*, at 226 box 3 (attached as Exhibit 13).

[15] McKee *et al.* 2013, *supra*, at 51-59.

[16] *Id.* at 52.

22

symptoms are similar, but also may include suicidality and language difficulties.[17]  Stage III involves further cognitive impairment.[18]  Stage IV – where "[m]ean brain weight [i]s significantly smaller than lower stage CTE" – involves symptoms including severe memory loss with dementia, profound loss of attention and concentration, language difficulties, aggression, paranoia, and gait difficulties.[19]  A more fulsome discussion of CTE is included as Appendix B to this Objection.

### 2.    CTE in the NFL

As Co-Lead Class Counsel explained on its website, "***CTE is believed to be the most serious and harmful disease that results from NFL and concussions.***"  Ex. 1 (Seeger Weiss website as of Sept. 3, 2014) (emphasis added).[20]  Studies to date have confirmed that an alarming number of NFL players will be afflicted with CTE.  The nation's largest brain bank focused on traumatic brain injury recently announced that it had found evidence of CTE in ***76 of 79*** brains of former NFL players it examined.[21]  An earlier study by that same research group reported that of 34 deceased NFL retirees whose brains it had tested for CTE, ***all but one*** had the disease.[22]  Of those 33, nearly half showed signs of Stage III or Stage IV CTE – CTE's two most severe

---

[17] *Id.* at 55.

[18] *Id.* at 56.

[19] *Id.* at 57, 59.

[20] Seeger Weiss quickly removed that language after oral argument in the Third Circuit on September 10, 2014, where the inadequate representation and failure to compensate CTE, as well as this language on their website, was raised.

[21] Breslow, *76 of 79 Deceased NFL Players Found to Have Brain Disease*, PBS Frontline (Sept. 30, 2014), http://www.pbs.org/wgbh/pages/frontline/sports/concussion-watch/76-of-79-deceased-nfl-players-found-to-have-brain-disease/ (attached as Exhibit 14).

[22] McKee *et al.* 2013, *supra*, at 59.

stages.[23]   And almost all of these players – 94% – were symptomatic during their lifetimes.[24]
The most common symptoms were "short-term memory loss, executive dysfunction and
attention and concentration problems."[25]

In fact, the NFL's own doctors have recognized the link between neurocognitive
impairment and MTBI.  When in 1999 Mike Webster, Hall of Fame center for the Pittsburgh
Steelers, was examined by a neurologist hand-picked by the NFL as part of his disability
application, that neurologist told the disability board: "With the history of multiple head injuries
that all football players have and the history that the patient has predominately problems with
what appears to be frontal lobe function, I think we can be pretty comfortable that this is related
to injury."[26]  The Retirement Board later agreed that Webster's medical reports "indicate that his
disability is the result of head injuries suffered as a football player with the Pittsburgh Steelers
and Kansas City Chiefs."[27]  Webster later became the first NFL retiree to be diagnosed with CTE
when in 2002, Dr. Bennet Omalu, a forensic pathologist, examined Webster's brain and observed
CTE's characteristic tau build-up.[28]  Dr. Omalu found CTE again in 2005 and 2006 in former
players Terry Long and Andre Waters, who both committed suicide.[29]

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] Fainaru-Wada & Fainaru, *League of Denial* 99 (2013).

[27] *Id.*

[28] *Id.* at 158, 163.

[29] Schwarz, *Expert Ties Ex-Player's Suicide to Brain Damage*, N.Y. Times (Jan. 18, 2007),
http://www.nytimes.com/2007/01/18/sports/football/18waters.html?pagewanted=all ("Schwarz
2007") (attached as Exhibit 15).

### 3. The Settlement Compensates Only a Few Prior Cases of CTE to the Exclusion of Current and Future Cases of CTE

#### a. Arbitrary Limitation of CTE Awards

Notwithstanding the fact that CTE is "the most serious and most harmful disease that results from NFL and concussions," Ex. 1 (Seeger Weiss website), the Settlement leaves all class members with current and future cases of CTE without compensation. That is because the Settlement defines "qualifying diagnosis" to include "a post-mortem diagnosis of CTE ***only*** "[f]or Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order." Settlement Ex. B-1 ¶ 5; *see also* Settlement ¶¶ 2.1(yyy), 6.3(a). Thus, while CTE found in a retired player who died on the eve of preliminary approval allows a $4 million payment, that same condition goes uncompensated if the player dies one day later, after preliminary approval. The conditions afflicting Objectors are among the well-documented symptoms of CTE. *See* Appendix B. Former players like Objectors who currently are managing the cumulative effects of MTBI – many of which are consistent with the presentation of CTE – would receive no compensation and would continue bearing their medical costs even if their condition progresses to full-blown CTE.

That arbitrary limitation on CTE compensation is remarkable: All but three of the 79 deceased NFL players whose brains have been examined for CTE have been diagnosed with the condition. *See* p. 24, *supra*. The ubiquity of CTE in retired NFL players dwarfs the prevalence of the other conditions that receive compensation. For example, one study examining NFL retirees who played at least five seasons between 1959 and 1988 recorded seven cases of ALS, seven cases of Alzheimer's, and three cases of Parkinson's in ***3,439*** retired players. National Institute for Occupational Safety and Health, *Brain and Nervous System Disorders Among NFL Players* (Jan. 2013), http://www.cdc.gov/niosh/pgms/worknotify/pdfs/NFL_Notification_02.pdf

(attached as Exhibit 16). And Class Counsel's own actuary estimates 31 cases of ALS and 24 cases of Parkinson's disease in the 21,000-member class. Dkt. No. 6167 at 20. Notwithstanding the widespread prevalence of CTE among NFL retirees, the Settlement provides **no compensation** to players with CTE who die after preliminary approval of the Settlement – likely a large percentage of the 21,000-member putative class.

The negative effects of denying compensation to class members like the Objectors who are at an increased risk of CTE will multiply over time. As science advances, it is likely that CTE will be reliably detectable before death; within five to ten years, CTE will likely be diagnosed in the living. Stern Decl. ¶ 38. Yet the Settlement provides no flexibility for modifying the list of qualifying diseases to compensate a pre-death diagnosis of CTE. *See* Settlement § 6.6(c) ("In no event will modifications be made to the Monetary Award levels in the Monetary Award Grid, except for inflation adjustment(s).").

Indeed, the Settlement anticipates relevant advances in science and medicine that will allow a more precise diagnosis of diseases related to MTBI – **but only to disallow recovery**. For example, the Settlement precludes compensation of diseases detected "through a blood test, genetic test, imaging technique, or otherwise" that "has not yet resulted in actual cognitive impairment and/or actual neuromuscular impairment." Settlement § 6.6(b). For individuals with a disease like CTE, which frequently presents first with behavioral and mood symptoms – symptoms that can be as debilitating as CTE's neurocognitive symptoms – the Settlement's rejection of diagnostic testing as a basis for compensation can have a profoundly negative effect: It will prevent individuals with a known degenerative brain disease from using settlement money to access medical care or treatment that might forestall or prevent the onset of neurocognitive impairment.

### b. The Representative Plaintiffs Did Not Protect the Interests of Class Members Who Suffer from or Who Are at Risk of Suffering from CTE

Class members had a strong need for representatives who would have pressed for settlement "provisions that can keep pace with changing science and medicine, rather than freezing in place the science" known at the time of settlement. *Amchem*, 521 U.S. at 610-11 (class representation inadequate where settlement did not account for the interests of class members who may develop disease in the future); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630-31 (3d Cir. 1996) (class representation inadequate because of conflict between currently injured plaintiffs' interest in maximizing current payouts and future plaintiffs' interest in delaying opt-out due to "changing science and medicine" and "difficulty in forecasting what their futures hold"), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). The Representative Plaintiffs did not fulfill this crucial role.

The Representative Plaintiffs *could not* fulfill that role. Neither Representative Plaintiff shares Objectors' interest in securing compensation for *all cases* of CTE. Mr. Turner, who suffers from ALS, has a diagnosed medical condition that receives compensation under the Settlement (and rightly so). Compl. ¶ 7. But he was not poised to represent the interests of those who have suffered different injuries and receive nothing under the Settlement. Mr. Wooden likewise could not represent the interests of the entire class. Objectors currently exhibit MTBI-related injuries that are clinical indications of CTE. Mr. Wooden, by contrast, has not alleged that he suffers from CTE. Nor has he alleged that he is at "[an] increased risk of developing" CTE, even though he does assert such a risk for dementia, Alzheimer's Disease, Parkinson's Disease, and ALS. Compl. ¶ 4. Mr. Wooden's interests therefore lie in securing future compensation for those four afflictions, not in securing payment for the Objectors' conditions and for future cases of CTE. As a result, the proposed subclasses do not "align[] [the]

27

interests and incentives [of] the representative plaintiffs and the rest of the class." *Dewey*, 681 F.3d at 183 (denying class certification where interests of representative plaintiffs and absent class members diverged).

### c. There Is No Justification for the Settlement's Failure To Compensate Current and Future Cases of CTE

Class Counsel and the NFL have offered no justification for the Settlement's failure to compensate current and future cases of CTE – while at the same time requiring a release of all CTE claims. Class Counsel have stated that, "[f]or those retired players who have already died, and who did not carry a diagnosis of a compensable disease or condition while living, a post-mortem autopsy diagnosis of CTE serves as sufficient evidence of harm for purposes of establishing compensation." Plaintiffs-Respondents' Answer to Rule 23(f) Petition, *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 14-8103, at 14 (3d Cir. July 29, 2014) ("Class Counsel 23(f) Opp."). But there is no reason why a CTE diagnosis ***before*** preliminary approval should be sufficient to demonstrate entitlement to a multi-million dollar award while a ***future*** diagnosis entitles a class member to nothing.

Class Counsel and the NFL have also contended that the Settlement need not compensate CTE specifically because it otherwise compensates "actual" or "demonstrated" neurocognitive or neuromuscular "impairment" or "deficits" through the monetary awards for dementia, ALS, Parkinson's, and Alzheimer's. Class Counsel 23(f) Opp. at 14 & 15 n.6; NFL Answer in Opposition to Rule 23(f) Petition, *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 14-8103, at 18 (3d Cir. July 31, 2014) ("NFL 23(f) Opp."). That justification, too, falls short.

CTE's symptoms extend far beyond cognitive impairment – they include "behavioral and mood disorders" that are "just as important, just as serious, and just as amenable to detection and

28

diagnosis, as cognitive disorders." Stern Decl. ¶ 32; *see* Appendix B. These behavioral and mood symptoms, moreover, do not always present alongside CTE's cognitive symptoms. In one study, "22 of 33 deceased former athletes with neuropathologically confirmed CTE (and no other abnormal brain findings) were reported to have behavior or mood problems as their initial difficulties, prior to any cognitive impairment," and "[o]nly 10 of 33 were ever diagnosed with dementia at any time prior to death." Stern Decl. ¶ 32; *see also* Stern *et al.* 2013, *supra*, at 1123. In another study of 51 confirmed cases of CTE, only 22 cases progressed to dementia before death. McKee *et al.* 2013, *supra*, at 56 tbl. 4. But the Settlement offers nothing for behavioral and mood disorders.

Additionally, dementia typically does not present unless the individual progresses to Stage III or Stage IV CTE. McKee *et al.* 2013, *supra*, at 56 tbl. 4; Stern *et al.* 2013, *supra*, at 1123. Thus, while behavioral and mood symptoms typically present early in CTE's course, *see* Appendix B, the cognitive symptoms that receive compensation under the Settlement do not appear until the disease has progressed to its later stages, depriving class members of the ability to use compensation under the Settlement to seek intervention and medical treatment in the earlier stages of CTE.

Class Counsel's reliance on the Settlement's compensation for dementia to justify the exclusion of CTE is misplaced for yet another reason – it is inconsistent with the Settlement's treatment of Alzheimer's. Like CTE, Alzheimer's is a "neurodegenerative disease[] that can lead to dementia." Stern Decl. ¶ 40. Thus, if monetary awards for dementia suffice to adequately compensate CTE, they should also suffice to compensate Alzheimer's. But CTE and

Alzheimer's are treated differently. Future cases of Alzheimer's are compensated, future cases of CTE are not.[30]

Nor can Class Counsel and the NFL justify the exclusion of CTE by urging that CTE sufferers might also be afflicted with (and compensated for) ALS, Parkinson's or Alzheimer's. CTE "is a unique disease, easily distinguished from [Alzheimer's Disease] and other diseases." Stern Testimony, *supra*, at 2; *see also* Baugh *et al.*, *Chronic Traumatic Encephalopathy: Neurodegeneration Following Repetitive Concussive and Subconcussive Brain Trauma*, 6 Brain Imaging & Behavior 244, 246 (2012) ("Baugh *et al.* 2012") (attached as Exhibit 17) (noting "the early presentation and course of CTE can distinguish it from most other causes of dementia"). Thus, it is "pathologically distinct from other neurodegenerative diseases, including Alzheimer's disease and Frontotemporal Lobar Degeneration." Baugh *et al.* 2012, *supra*, at 245. And it is "the **only** known neurodegenerative dementia with a specific identifiable cause; in this case, **head trauma**." Gavett, *supra*, at 184 (emphasis added).

The Complaint itself places CTE front-and-center, pleading it as an independent, MTBI-related disease. It alleges that "the NFL has known for decades that MTBI can and does lead to long-term brain injury, including, but not limited to memory loss, dementia, Alzheimer's Disease, Parkinson's Disease, ALS, depression, **and CTE and its related symptoms**." Compl. ¶ 127 (emphasis added). In pleading the NFL's knowledge of the dangers and risks associated with repetitive MTBI, no fewer than **nine paragraphs** specifically reference CTE, encephalopathy, dementia pugilistica, or punch drunk syndrome. *See* Compl. ¶¶ 89, 92, 94, 96,

---

[30] The Settlement's treatment of Alzheimer's also disposes of Class Counsel's argument that future cases of CTE are uncompensated because CTE cannot be diagnosed while living. Class Counsel 23(f) Opp. at 14. Alzheimer's can currently be diagnosed definitively only through a pathological post-mortem examination of brain tissue. Stern Decl. ¶ 37. Besides, the technology to reliably diagnose CTE (and Alzheimer's) before death is years – not decades – away. *Id.* ¶ 38.

97, 100, 104, 113, 116. By contrast, one paragraph mentions Alzheimer's, *id.* ¶ 118, and one paragraph mentions ALS and Parkinson's, *id.* ¶ 127, when addressing the NFL's knowledge of the dangers. CTE is also central to the Complaint's fraudulent concealment allegations, which plead that the NFL's MTBI Committee publicly attacked researchers who suggested a link between the NFL and CTE. *See, e.g., id.* ¶¶ 170-174, 193-194, 196-197.

The correlation between CTE and the other qualifying diagnoses, moreover, is weak. In one study of 68 individuals with CTE, eight presented with motor neuron disease (such as ALS), seven presented with Alzheimer's Diseases, and six presented with Parkinson's Disease. McKee *et al.* 2013, *supra*, at 44, 50-51, 61. Over **two-thirds**, however, presented **only** with CTE. *Id.* And to the extent that ALS (or another motor neuron disorder), Parkinson's, or Alzheimer's presents alongside CTE, **CTE itself** could have caused the ALS-like, Parkinson's-like, or Alzheimer's-like symptoms; in those situations, the patient is actually suffering from CTE, not ALS, Parkinson's, or Alzheimer's. As one group of scientists wrote, "it is now known that neurologic conditions previously attributed to [Alzheimer's Disease, Parkinson's Disease], and ALS may actually have been related to CTE."[31] Other research also indicates that individuals previously thought to have Alzheimer's disease in reality suffer from CTE.[32]

As CTE becomes more readily detectable before death, the NFL will be able to use this research to further limit payouts to the class. With the ability to diagnose CTE in the living,

---

[31] Lehman *et al.*, *Neurodegenerative Causes of Death Among Retired National Football League Players*, 79 Neurology 1970, 1971 (2012) (attached as Exhibit 18).

[32] *See* Mitsis, *supra*, at 7 (reporting on test results of former NFL player who "had many features of [Alzheimer's]" and concluding the player suffered from CTE instead); Borden, *Brain Trauma Extends Reach into Soccer*, N.Y. Times (Sept. 23, 2014) (noting soccer star Bellini, previously thought to have had Alzheimer's, actually suffered from CTE), http://www.nytimes.com/2014/09/24/sports/soccer/soccer-star-bellini-is-found-to-have-had-brain-trauma.html?_r=1 (attached as Exhibit 19).

31

cases previously diagnosed as ALS, Parkinson's, and Alzheimer's – and compensated as such under the Settlement – could instead be diagnosed as CTE. Class members in that situation will get nothing.

Thus, the Settlement fails to compensate class members suffering what is likely the most common injury attributable to Defendants' conduct.

### B.     The 75% Offsets Demonstrate Lack of Adequate Representation

The Settlement also imposes offsets that create an additional class conflict. The Settlement **reduces a claimant's award by 75%** for a **single instance** of non-football-related traumatic brain injury ("TBI") or stroke. Settlement § 6.7(b)(ii)-(iii). That 75% offset applies regardless of the severity of traumatic brain injury that the player sustained while playing football. And it presumes that a single non-football-related instance of TBI accounts for 75% of a player's MTBI-related injuries, even though that player may have sustained numerous diagnosed and undiagnosed head traumas throughout his NFL career.[33] As Class Counsel have conceded, "[t]housands of football players, many of whom are thought to have suffered more than one hundred mild traumatic brain injuries, are dealing with horrible and debilitating symptoms."[34] The 75% offset is both devoid of scientific justification and grossly unfair.

Instances of stroke, moreover, should be compensated injuries, not offsets that reduce recovery, **because the NFL itself has increased the risk of stroke for Objectors and other class members**. *See* Amended Complaint, *Finn v. Nat'l Football League*, No. 2:11-cv-07067-JLL-

---

[33] The possibility that a class member will sustain a non-football related TBI is not remote. For example, the car insurance industry estimates that the average driver will be involved in a car collision once every 18 years. Des Toups, *How Many Times Will You Crash Your Car?*, Forbes (July 27, 2011 6:50 PM), http://www.forbes.com/sites/moneybuilder/2011/07/27/how-many-times-will-you-crash-your-car/ (attached as Exhibit 20).

[34] *See* Ex. 1.

MAH, Dkt. No. 4 ¶¶ 135-143 (D.N.J. Dec. 8, 2011) (*Finn* Compl.). Traumatic brain injury can increase the risk of stroke and cause damage to the blood vasculature in the brain.[35] Dr. Ira Casson, a former chairman of the NFL's MTBI Committee, has found brain microbleeds that "are likely related to head trauma occurring in football at some level."[36] "Statistical analysis determined an association between total number of dings reported at all levels of football and the presence of microbleeds," which added "further support to the suggestion that head trauma is related to" microbleeding.[37] Such cerebral microbleeds, moreover, increase the risk of intracerebral hemorrhage and ischemic stroke.[38]

NFL-administered Toradol injections have magnified this problem. Toradol, a blood-thinning pain-killer, was routinely given to NFL players without their informed consent regarding the health risks of the drug. As a blood-thinning pain-killer, Toradol masks injuries that players may have suffered, encouraging their continued participation in the game and increasing the risk that a player would suffer multiple instances of MTBI in one game. Such repeated exposure to MTBI increased a player's risk of stroke beyond that which would result if the player had not taken Toradol (because more MTBI increases microbleeding, which in turn increases the likelihood of stroke). Thus, the NFL's own negligent and fraudulent actions have

---

[35] *See* Burke *et al.*, *Traumatic Brain Injury May Be an Independent Risk Factor for Stroke*, 81 Neurology 1 (2013) (attached as Exhibit 21); Bigler, *Neuropsychology and Clinical Neuroscience of Persistent Post-Concussive Syndrome*, 14 J. Int'l Neuropsychological Soc'y 1, 8 (2008) ("Thus, in TBI the same mechanisms that stretch the neuron can stretch the blood vessel and this may impair the neurogenic response of the blood vessel.") (attached as Exhibit 22).

[36] Casson *et al.*, *Is There Chronic Brain Damage in Retired NFL Players? Neuroradiology, Neuropsychology, and Neurology Examinations of 45 Retired Players*, 6 Sports Health 384, 391 (2014) (attached as Exhibit 23).

[37] *Id.*

[38] *See* Kakar *et al.*, *Cerebral Microbleeds: A New Dilemma in Stroke Medicine*, 1 J. Royal Soc'y of Med. Cardiovascular Disease 1, 5-7 (2012) (attached as Exhibit 24).

33

contributed to the prevalence of stroke among retired players. Co-Lead Class Counsel knew of these allegations – indeed, he represents a group of plaintiffs who sued the NFL based in part on its administration of Toradol. *See Finn* Compl. ¶¶ 135-143. But the Settlement makes no mention of these injuries except to release any claims for them and to inexplicably select them as bases for reducing the retired player's compensation.

Representative Plaintiffs did not adequately represent Objectors' interests in eliminating or reducing the offset related to stroke and post-NFL TBI. ***Neither Mr. Turner nor Mr. Wooden claims an increased risk of stroke or non-football-related TBI.*** As a result, neither can adequately represent those class members who someday may suffer such a stroke or non-football related instance of TBI – and the resulting drop in compensation under the Settlement – due to the NFL's own conduct.

### C. The Failure To Credit Seasons Played in NFL Europe Demonstrates Lack of Adequate Representation

The Settlement, while releasing all claims of NFL Europe players, does not award class members "Eligible Season" credit for time spent playing in NFL Europe or its predecessors. Settlement § 6.7(c)(i). Thus, a class member who played five years in the NFL will receive a larger settlement award than a class member who played two years of his career in NFL Europe and three years in the NFL. In effect, veterans of NFL Europe receive no compensation for the time they spent playing there. That is true even though players in NFL Europe undoubtedly sustained repeated concussive and subconcussive impacts, just like players in the NFL. *See* Morey Decl. ¶¶ 4, 6.

Players in NFL Europe experienced repeated MTBI, just like their counterparts in the United States. NFL Europe played on the same size field, for the same length of time, and adopted rules that were rooted in the NFL Rulebook. Morey Decl. ¶ 6. The NFL Europe season,

moreover, lasted ten games, *id.* ¶ 5, which exceeds the "three or more" NFL games required to accrue an eligible season, Settlement § 2.1(kk). And because the NFL Europe season did not overlap with the NFL season, at least some players would play **full seasons** in **both leagues.** Mr. Morey, for example, played 33 games in the 2003 season – ten in NFL Europe and 23 (including pre- and post-season) in the NFL. Morey Decl. ¶ 7.

Nor were the injuries that players sustained in NFL Europe insignificant. Severely injured players were sometimes flown to Birmingham, Alabama for treatment.[39] In one season, as many as 70 players in the six-team league were transported back to the United States.[40]

Class Counsel and the NFL offer no justification for the arbitrary discrimination against class members who played in NFL Europe. Indeed, Co-Lead Class Counsel has admitted that the claims of NFL Europe players were bargained away:

> This was a complicated transaction. **The case was specifically brought to provide help to players in the NFL.** NFL Europe, um, is part of the deal, but, you know, nobody, I think, is going to argue that they're playing at the level that the NFL in the United States is playing at or that they're getting hit like they are there. So I'm not saying they should be squeezed out. I'm not poo-pooing that play over there. **But I'm simply saying that in the context of a compromise where there's give and take, you know, we had to focus on what our primary objective was, and that was getting help to players playing in the NFL who need it right now.**

Audio file: Interview of Chris Seeger, CBS Sports Radio, The Mojo Show, at 9:09-9:45 (aired July 10, 2014) (emphasis added). To sum up Mr. Seeger's comments: The claims of players in

---

[39] Nicholson, *NFL Europe's Injured Flown to Birmingham*, Birmingham Business Journal (July 1, 2001), http://www.bizjournals.com/birmingham/stories/2001/07/02/story2.html?page=all (attached as Exhibit 25); *see also* Battista, *A Player's Concussion, a Family's Ordeal*, The N.Y. Times (Sept. 15, 2012) (describing the career-ending hit one NFL Europe player suffered during training camp), http://www.nytimes.com/2012/09/16/sports/football/former-nfl-player-mitch-white-learns-to-adjust-to-postconcussion-life.html?pagewanted=all (attached as Exhibit 26).

[40] Nicholson, *supra*.

NFL Europe were bargained away to serve the "primary objective" of "getting help to players playing in the NFL."

**Neither Mr. Turner nor Mr. Wooden alleges that he played in NFL Europe.** Thus, neither adequately represents the interests of players who did, explaining why NFL Europe players are treated disparately. *See GM Trucks*, 55 F.3d at 800 (finding class representation inadequate where "settlement appears to create antagonism within the class").[41]

* * * * *

Simply put, distinct groups within the class had their rights bargained away without adequate representation. These intra-class conflicts preclude certification of the settlement class. "The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class." *Amchem*, 521 U.S. at 627. However, where "the interests of the representative plaintiffs and the interests of [absentee class members] align[] in opposing directions," class representation is inadequate. *Dewey*, 681 F.3d at 188; *see also Amchem*, 521 U.S. at 627 (denying class certification where settlement not agreed to by representatives of all sub-classes); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (holding that intra-class conflict "require[d] division into homogenous subclasses . . . with separate representation to eliminate conflicting interests").[42]

---

[41] Players in NFL Europe are not the only NFL veterans who go without full credit for the time they spent in the league. Class members who spent time on "practice, developmental, or taxi squad roster[s] for at least eight (8) regular or postseason games" receive only "half of an Eligible Season." Settlement ¶ 2.1(kk).

[42] If the Court agrees that intra-class conflicts prevent certification, it may "simply divide the groups into subclasses," *Dewey*, 681 F.3d at 189, so that "separate counsel [can] provide[] adequate structural protections to assure that differently situated plaintiffs negotiate for their own unique interests," *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 (3d Cir. 2004) (quotation marks omitted).

36

## II.     The Notice Is False, Misleading, and Inconsistent with Rule 23 and Due Process

Through misleading language, confusing juxtaposition, and outright false statements, the notice obscures the fact that the Settlement bargains away the rights of a large portion of the class in a way that will provide those class members with no compensation.  Courts in class actions and other areas of law have construed such defects to be legally inadequate.  Class Counsel have compounded the problem of inadequate notice by engaging in a propaganda campaign advocating the Settlement.

Approval of a class settlement under Rule 23(b)(3) requires that class counsel furnish notice in compliance with Rules 23(c)(2) and (e).  *See Manual for Complex Litigation* (4th) § 21.311-.312.  Rule 23(c)(2) requires "the court [to] direct to class members the best notice that is practicable under the circumstances" that "clearly and concisely state[s] in plain, easily understood language" the nature of the action, the claims and defenses asserted, and the right of class members to request exclusion.  Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(e) requires the court to approve any settlement, and to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).

Notice protects class members' due process rights.  *See, e.g.*, *Larson v. AT&T Mobility LLC*, 687 F.3d 109, 126 (3d Cir. 2012) (notice scheme deficient when it did not require defendant to search billing records to identify affected class members, and vacating approval of settlement).  In *Larson*, for example, the Third Circuit explained that it is "stringent in enforcing the individual notice requirement" because "a procedure such as the class action, which has a formidable if not irretrievable, effect on substantive rights, can comport with constitutional standards of due process only if there is a maximum opportunity for notice to the absentee class member."  *Id*. at 126 (quotation marks omitted).

Notice is insufficient when it is false or misleads class members about the terms of the settlement. *See Eubank v. Pella Corp.*, 753 F.3d 718, 728 (7th Cir. 2014) (vacating approval of settlement, in part because notice was "incomplete and misleading" and did not "provide a truthful basis for deciding whether to opt out."); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197-98 (5th Cir. 2010) (vacating approval of settlement where notice "did not inform class members of the possibility that they would not receive any direct benefit from the settlement" and "did not provide interested parties with knowledge critical to an informed decision as to whether to object to class certification and settlement."); *Molski v. Gleich*, 318 F.3d 937, 951 (9th Cir. 2003) (vacating approval of settlement, in part because "notice misled the putative class members" about which kinds of claims would be released).

## A. The Notice Contains Overtly False and Misleading Statements

The notice misleads class members about the basic compromise of the settlement because it fails to alert class members to the fact that they will not be compensated for current or future CTE, while significantly limiting the NFL Defendants' liability.

### 1. The Short Form Notice

The short form notice, which was extensively publicized, is patently false. Dkt. No. 6093-2 ("Short Form Notice"). It was required to appear as a full-page, color advertisement in *Ebony*, *People*, *Sports Illustrated*, and *Time* magazines, and was downloadable on the settlement website, at www.nflconcussionsettlement.com ("Settlement Website"). Dkt. No. 6073-3 (Kinsella Decl.) at 6-7. According to the notice plan, the Short Form Notice "is designed to get the reader's attention" and "concisely and clearly states, in plain easily understandable language, all required information." *Id*. at 10.

The first sentence of the Short Form Notice assures players that their "valid claims" will be "paid in full" for 65 years:

## NFL Concussion Settlement

**All Valid Claims of Retired NFL Football Players to be Paid in Full for 65 Years Monetary Awards, Baseline Medical Exams and Other Benefits Provided**

The Short Form Notice continues, with more detail about the benefits of the Settlement:

> The Settlement provides money for three benefits:
>
> - Baseline medical exams to determine if retired players suffer from neurocognitive impairment and are entitled to additional testing and/ or treatment ($75 million),
>
> - Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Alzheimer's Disease, Parkinson's Disease, Dementia and certain cases of chronic traumatic encephalopathy or CTE (a neuropathological finding) diagnosed after death. The maximum monetary awards range from $1.5 million to $5 million depending on the diagnosis. All valid claims will be paid in full for 65 years; and
>
> - Education programs and initiatives related to football safety ($10 million).

This language plainly states that "[t]he Settlement will provide . . . [m]onetary awards for . . . certain cases of chronic traumatic encephalopathy (CTE) (a neuropathological finding) diagnosed after death," and proclaims that "all valid claims will be paid in full for 65 years." Dkt. No. 6093-2. A player reading this language – who might be concerned about CTE – would reasonably, but incorrectly, conclude that even though he might not get compensated for developing CTE during his lifetime, at least after his death his family will be compensated.

Nearly identical language appears on the front page of the Settlement Website:

39



Retired players, legal representatives of incapacitated or deceased players, and families of deceased players may be eligible to receive benefits from this Settlement.

The proposed settlement provides for three benefits:

1. Baseline medical exams for retired NFL players;
2. Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Alzheimer's Disease, Parkinson's Disease, Dementia and certain cases of chronic traumatic encephalopathy or CTE (a neuropathological finding) diagnosed after death; and
3. Education programs and initiatives related to football safety.

All valid claims for injury will be paid in full for 65 years.

NFL Concussion Settlement, http://www.nflconcussionsettlement.com (last visited Oct. 3, 2014). The website was advertised using paid links on popular search engines like Google. Kinsella Decl. at 10. Thus, any player curious about the Settlement who types the phrase "NFL concussion" into Google is greeted with a paid link to the Settlement Website as the first result:

Once he has clicked, the Settlement Website provides the misleading language, described above, about benefits for players who die with a diagnosis of CTE.

## 2.    The Long Form Notice

The long form notice was direct-mailed to readily identifiable retired players, and was available for download on the Settlement Website. Dkt. No. 6093-1 ("Long Form Notice"), *available at* https://www.nflconcussionsettlement.com/Documents/Long-form_Notice.pdf; Kin-

sella Decl. at 9. A full-color, glossy booklet invoking football imagery, the Long Form Notice does more to mislead than to educate class members.

While the Long Form notice does reveal the cut-off for CTE claims, it does so obliquely. It states:

**5. WHAT ARE THE BENEFITS OF THE SETTLEMENT?**

Under the Settlement, the NFL Parties will pay to fund:

- Baseline neuropsychological and neurological examinations for eligible retired players, and additional medical testing, counseling and/or treatment if they are diagnosed with moderate cognitive impairment during the baseline examinations (up to $75 million, "Baseline Assessment Program") (*see* Questions 11-13);

- Monetary awards for diagnoses of Death with CTE prior to **July 7, 2014**, ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) and Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) (*see* Questions 14-21). **All valid claims under the Settlement, without limitation, will be paid in full throughout the 65-year life of the Settlement (the "Monetary Award Fund"); and**

Long Form Notice at 7. This language does not outright disclose that players who die with a diagnosis of CTE after July 7, 2014, will not be compensated. Instead, it states that "the NFL Parties will pay to fund . . . [m]onetary awards for diagnoses of Death with CTE prior to July 7, 2014" and leaves it to the reader to conclude that every other class member with CTE will not be compensated for that disease.

In any event, this flash of "candor" is overwhelmed by repeated false and misleading statements about CTE. In the "Monetary Awards" section, on which players might reasonably focus, the Long Form Notice states:

**14. WHAT DIAGNOSES QUALIFY FOR MONETARY AWARDS?**

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund.

Long Form Notice at 12. The notice states that "Death with CTE" is a "Qualifying Diagnosis." The term "Qualifying Diagnosis" is likewise defined in the notice to include "Death with CTE."

41

But many statements in the notice are false when applied to "Death with CTE." For example, the notice states that "[a] Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund," which is false as applied to *every* future diagnosis of "Death with CTE." Similarly, in the same section on monetary benefits:

**21. CAN I RECEIVE A MONETARY AWARD EVEN THOUGH THE RETIRED PLAYER IS DEAD?**

Yes. Representative Claimants for deceased retired players with a Qualifying Diagnoses will be eligible to receive monetary awards. If the deceased retired player died before January 1, 2006, however, the Representative Claimant will only receive a monetary award if the Court determines that a wrongful death or survival claim is allowed under applicable state law.

Derivative Claimants also will be eligible for a total award of 1% of the monetary award that the Representative Claimant for the deceased retired player receives (*see* Question 16).

Representative and Derivative Claimants will also need to register for Settlement benefits (*see* Question 26).

Long Form Notice at 16. Contrary to this assertion in the notice, Representative Claimants for deceased retired players who die with a diagnosis of CTE are, as a category, *not* eligible to receive monetary awards. A player with CTE is eligible only if he died by July 7, 2014. The notice compounds the deception by stating that "[i]f the deceased retired player died before January 1, 2006, however, the Representative Claimant will only receive a monetary award if the Court determines that a wrongful death or survival claim is allowed under applicable state law." *Id.* This language creates the misimpression that while there may be limits on compensation for those who die before January 1, 2006, those who die after will be compensated. That is not true.

The "Monetary Awards" section also includes a table showing award amounts:

| QUALIFYING DIAGNOSIS | MAXIMUM AWARD AVAILABLE |
|---|---|
| Amyotrophic lateral sclerosis (ALS) | $5 million |
| Death with CTE (diagnosed after death) | $4 million |
| Parkinson's Disease | $3.5 million |
| Alzheimer's Disease | $3.5 million |
| Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) | $3 million |
| Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) | $1.5 million |

Long Form Notice at 13. The table lists "Death with CTE" as a "Qualifying Diagnosis" in a column along with ALS, Parkinson's, Alzheimer's, Level 2 Neurocognitive Impairment, and Level 1.5 Neurocognitive Impairment. The maximum award for "Death with CTE" is listed as $4 million. Nowhere in this section does it state that players will be compensated for "Death with CTE" only if they die before July 7, 2014. Instead, the notice suggests to readers that "Death with CTE" will be treated similarly to the other diseases, which have no cut-off date. The next table is equally misleading:

| AGE AT DIAGNOSIS | ALS | DEATH w/CTE | PARKINSON'S | ALZHEIMER'S | LEVEL 2 | LEVEL 1.5 |
|---|---|---|---|---|---|---|
| Under 45 | $5,000,000 | $4,000,000 | $3,500,000 | $3,500,000 | $3,000,000 | $1,500,000 |
| 45 - 49 | $4,500,000 | $3,200,000 | $2,470,000 | $2,300,000 | $1,900,000 | $950,000 |
| 50 - 54 | $4,000,000 | $2,300,000 | $1,900,000 | $1,600,000 | $1,200,000 | $600,000 |
| 55 - 59 | $3,500,000 | $1,400,000 | $1,300,000 | $1,150,000 | $950,000 | $475,000 |
| 60 - 64 | $3,000,000 | $1,200,000 | $1,000,000 | $950,000 | $580,000 | $290,000 |
| 65 - 69 | $2,500,000 | $980,000 | $760,000 | $620,000 | $380,000 | $190,000 |
| 70 - 74 | $1,750,000 | $600,000 | $475,000 | $380,000 | $210,000 | $105,000 |
| 75 - 79 | $1,000,000 | $160,000 | $145,000 | $130,000 | $80,000 | $40,000 |
| 80+ | $300,000 | $50,000 | $50,000 | $50,000 | $50,000 | $25,000 |

43

*Id.* at 14. The table shows how awards decrease with age at diagnosis. It creates the misleading impression that, as with the other listed diseases, claims for "Death w/CTE" will be paid out to players who are diagnosed potentially many years in the future when they are older. Any player reading this section on monetary compensation would be left with the clear, but false, understanding that he will be compensated if he dies with CTE, just as he would if he developed ALS or one of the other diseases listed as a "Qualifying Diagnosis." But any player who lives to read the notice will not be eligible for compensation for CTE under the Settlement.

These tables are misleading in other ways. Notwithstanding the presence of multi-million dollar payments, the notice does not disclose that Class Counsel's own actuary predicts that many class members will never realize these maximum awards. For example, Class Counsel's actuary estimates the average claimant will be 77 years old at the time of diagnosis, Dkt. No. 6167 at 7, which will reduce the ALS award by 80% and reduce the awards for CTE, Parkinson's, Alzheimer's, and Level 2 dementia by 96% to 97%, Settlement Ex. 3. Nor does the notice disclose that Class Counsel's actuary predicts only 3,600 class members – out of 21,000 – are estimated to receive any monetary compensation at all. Dkt. No. 6167 at 3-4.

The notice has the same shortcomings as notices courts have found inadequate in other settlement cases. Like the notice in *Eubank*, 753 F.3d at 728, which the court found deficient because it implied that class members would receive cash even though some would only be entitled to coupons, the notice implies that those who die with a diagnosis of CTE will be compensated up to $4 million – even though only those who die by July 7, 2014 will be compensated. *See also Katrina Canal Breaches Litig.*, 628 F.3d at 197-98 (settlement vacated when notice failed to inform class members that they might not receive any direct benefit from the settlement). Like the notice in *Molski*, 318 F.3d at 951, which the court found misleading

44

because it implied that the settlement would preserve certain claims, the NFL players' notice misleadingly implies that CTE claims will be compensable over the life of the Settlement. In fact, they will not.

## B. The Notice Is Similar to Communications Courts Have Found Misleading in Other Contexts

The NFL Defendants and Class Counsel cling to the few statements of truthful information about the CTE benefit in the notice, and argue that this somehow offsets deception elsewhere. However, the law generally recognizes that the limited disclosure of truthful information amidst a sea of false and inaccurate information cannot salvage a communication from being misleading.

When a communication contains misleading statements, the fact that it may contain some truth will not save it if it still misleads taken as a whole. The Supreme Court has noted that "not every mixture with the true will neutralize the deceptive." *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097 (1991) (finding that true statements embedded among misleading ones in a proxy statement were insufficient to render the proxy as a whole not misleading); *SEC v. Rana Research, Inc.,* 8 F.3d 1358, 1363 (9th Cir. 1993) (denying defendants' motion for summary judgment in securities fraud action because "grain of truth embedded" in subsequent press release did not neutralize misleading statements in earlier press release); *Marksman Partners, L.P. v. Chantal Pharm. Corp.,* 927 F. Supp. 1297, 1307-08 (C.D. Cal. 1996) (disclosure of truthful information in the appendix of a Form 10-K submission did not as a matter of law dispel the effect of misleading accounting statements).

In analyzing proxy statements and offering materials or prospectuses for securities, courts have determined that a statement "can also be misleading, though not technically false, if it amounts to a half-truth by omitting some material fact." *Fogarazzo v. Lehman Bros., Inc.*, 341

F. Supp. 2d 274, 294 (S.D.N.Y. 2004) (plaintiff sufficiently alleged a misrepresentation in a securities fraud action concerning misleading research reports).  Thus, courts have recognized that what matters "is not whether the particular statements, taken separately, were literally true, but whether . . . [the] representations, taken together and in context, would have misled."  *In re Lehman Bros. Sec. & ERISA Litig.,* 799 F. Supp. 2d 258, 314 (S.D.N.Y. 2011) (denying motion to dismiss because the court could not conclude as a matter of law that "inconspicuous and scattered warnings" neutralized "repeated and emphasized [misleading] statements" in the offering materials for a security).  In determining whether communications are misleading, taken as a whole, courts have looked to "the prominence of disclosures or warnings as a factor."  *Johnson v. NYFIX, Inc.*, 399 F. Supp. 2d 105, 121 (D. Conn. 2005) (finding that plaintiff adequately alleged that financial statements were misleading in a securities fraud action).

Courts have analyzed misleading communications in the context of false advertising claims similarly.  In an advertisement, "statement[s], although literally true, can for all practical purposes, convey a false message."  *Johnson & Johnson-Merck Consumer Pharm. Co. v. Procter & Gamble Co.*, 285 F. Supp. 2d 389, 392-93 (S.D.N.Y. 2003) (advertisement created a misleading impression despite being literally true, and a disclaimer was "insufficient to dispel the false message"); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993) (noting that "a court must analyze the message conveyed [in an advertisement] in full context" and upholding trial court finding that advertisement claims were literally false by necessary implication).  Courts also recognize that evidence of actual confusion among people who are the target of a communication is relevant, and that "[e]ven if an advertisement is not literally false, relief is available . . . if it can be shown that the advertisement has misled, confused, or deceived the consuming public."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th Cir.

46

1997) (reversing district court's grant of summary judgment in favor of defendant in a false advertising action because triable issues of fact existed as to whether consumers were actually deceived by literally true statements).

Consumer protection laws apply the same analysis. Under Massachusetts consumer protection law, for example, "advertising need not be totally false in order to be deemed deceptive." *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 487 (Mass. 2004) (granting class certification in an action involving advertisements in which cigarette manufacturers implied "light" cigarettes contained less nicotine and tar). "The criticized advertising may consist of a half truth, or even may be true as a literal matter, but still create an over-all misleading impression through failure to disclose material information." *Id.* Under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, fraudulent business practices include those "based on representations to the public which are untrue, and also those which may be accurate on some level but will nonetheless tend to mislead or deceive." *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 239 (Cal. Ct. App. 2006). Under the Federal Trade Commission Act, 15 U.S.C. §§ 45 and 52, "[t]he failure to disclose material information may [also] cause an advertisement to be deceptive, even if it does not state false facts." *Sterling Drug, Inc. v. FTC*, 741 F.2d 1146, 1154 (9th Cir. 1984) (finding advertisement was misleading as to whether it contained aspirin as a pain-killer). Moreover, courts recognize that "[a] few words of disclaimer [can be] lost when [a communication is] considered as a whole." *McNeil-PPC, Inc. v. Pfizer, Inc.*, 351 F. Supp. 2d 226, 254 (S.D.N.Y. 2005) (granting a preliminary injunction in a case where an advertisement misleadingly suggested that mouthwash was a replacement for flossing, even though the ads contained a disclaimer telling consumers "[t]here's no replacement for flossing.").

47

These principles apply with no less force when considering whether the notice here, taken as a whole, is misleading to players and their families. As is the case with proxy statements, where people are asked to vote as to their rights on the basis of complex documents, a "grain of truth embedded" in the Long Form Notice, *Rana Research*, 8 F.3d at 1363, should not save an otherwise misleading notice. That is particularly true when the "disclosure" is not featured prominently in the highly publicized and distributed Short Form Notice, nor in the Long Form Notice's section describing "Monetary Benefits," the section players are most likely to read. Were the situation not so serious, it would be ironic that individuals entitled to compensation due to cognitive injures are being asked to navigate this complex maze to simply learn their rights. "The point of a [notice], after all, should be to inform, not to challenge the [players'] critical wits." *Va. Bankshares*, 501 U.S. at 1097.

### C. Class Counsel's Propaganda Campaign Has Compounded the False and Misleading Nature of the Notice

To make matters worse, Class Counsel – who stand to receive a huge payday upon approval – have falsely described the Settlement to the media. The propaganda campaign started shortly after the preliminary approval of the Settlement. An article in the *New York Times* quoted Co-Lead Class Counsel's representations about the CTE benefit:

> [O]ne of the lead lawyers for the plaintiffs in the class action, said the objectors had misread the settlement. The families of dead players who were found to have C.T.E. might receive awards because the players could no longer receive a diagnosis. C.T.E. was not included for living players because the settlement would cover those symptoms if they were to develop.
>
> 'Going forward, any retired player who is sick with a qualifying condition will get compensated, as C.T.E. cannot be currently diagnosed in living people,' he said. 'Whether you have C.T.E. or not, or whether or not you can prove you have

C.T.E., if you have symptoms of a qualifying condition, you will be compensated.'[43]

A recent article in Sporting News further stated: "[t]he attorneys representing the players in the NFL concussion lawsuit are now at work getting the word out to all the retired players affected by the revised settlement."[44]  Co-Lead Class Counsel states in the article that "CTE is not a relevant marker for anything in this settlement.  It's the symptoms − if you have all the symptoms that are related to CTE, or the diseases that are related, like dementia and Alzheimer's and ALS, then that determines it.  If a player thinks he has any symptoms of it, that's the very reason to stay in the deal."  *Id*.  But Co-Lead Class Counsel's hypothetical player, someone who "thinks he has any symptoms of [CTE]" and "stay[s] in the deal" will only get compensated if he is diagnosed with one of the other qualified diseases.  That hypothetical player may well get no compensation at all in return for "stay[ing] in the deal" and bargaining away his right to sue the NFL Defendants for his injuries.[45]  But that hypothetical player, reading the notice in light of Co-Lead Class Counsel's public comments, is likely to be misled into thinking otherwise.

An article that appeared on *profootballconcussions.com*, which bills itself as "A Fan's Look at Head Injuries and the Concussion Crisis," repeated Co-Lead Class Counsel's misleading

---

[43] Belson, *For Retirees, Decision on Concussion Settlement Will Not Be a Simple One*, N.Y. Times (July 22, 2014), http://www.nytimes.com/2014/07/23/sports/football/nfl-concussion-settlement-divides-former-players.html?_r=0 (attached as Exhibit 27).

[44] Steele, *Players Wrong on Key Factor in NFL Concussion Settlement*, Sporting News (July 14, 2014), http://www.sportingnews.com/nfl/story/2014-07-14/nfl-concussions-lawsuit-cte-symptoms-eligible-settlement-tony-dorsett-wycheck-seeger (attached as Exhibit 28).

[45] *See* Stern Decl. ¶ 41 ("The only symptoms related to CTE that are compensable (other than those that overlap with Alzheimer's disease, ALS or Parkinson's) are cognitive difficulties, and only cognitive difficulties that are severe enough that the Class Member would have significant impairments in critical aspects of daily living and independence.  Several key symptoms of CTE that are identified in the scientific and medical literature and in my clinical and research experience are not compensable.").

49

assertions: "If you get sick, period, you still get paid. We're telling everybody to go get tested. You'll be in the system. You're protected (by the settlement)."[46]

In an article in ABC News, which discusses former player Junior Seau, who committed suicide in 2012 and was diagnosed after his death with CTE, Co-Lead Class Counsel is quoted as saying:

> If Mr. Strauss [the lawyer for Seau's family] believes the $4 million his client is eligible for under the settlement is insufficient, he can choose to permanently forfeit these benefits and face all the significant risks associated with continued litigation . . . . We would advise any class member against opting out of this agreement, considering the tremendous guaranteed benefits it provides.[47]

Co-Lead Class Counsel fails to mention that had Mr. Seau died today, his family would be entitled to nothing.

In an article on *SportsIllustrated.com*,[48] Co-Lead Class Counsel again hyped the Settlement: "There is no scenario where a player won't get paid . . . [t]he biggest news of this is that in 15 or 25 years, you are still guaranteed to be compensated." Like Co-Lead Class Counsel's other public statements, this one is calculated to mislead players into believing that they are signing onto a comprehensive settlement, when in fact the Settlement fails to cover a significant class of claims.

An article in USA Today, which quoted Co-Lead Class Counsel extensively, states:

---

[46] *The NFL CTE Question*, The Pro Football Concussion Report (July 22, 2014), http://profootballconcussions.com/the-nfl-cte-question (attached as Exhibit 29).

[47] Fainaru-Wada & Fainaru, *Seaus to Opt Out of Concussion Deal*, ABC News (Sept. 3, 2014), http://abcnews.go.com/Sports/seaus-opt-concussion-deal/story?id=25230257 (attached as Exhibit 30).

[48] DeGory, *New Concussion Settlement a Win-Win*, SportsIllustrated.com (June 26, 2014), http://mmqb.si.com/2014/06/26/new-concussion-settlement-kevin-turner (attached as Exhibit 31).

"This is the only program where everybody gets justice. . . . Everybody wins," [Co-Lead Class Counsel] said.

He said all retired players, not just those who sued, will be eligible for a brain assessment program, and those found to have a certain level of impairment will receive a medical benefit card that be used for further testing and treatment. . . .

[Co-Lead Class Counsel] said former players will not have to prove their brain conditions are linked to NFL concussions.

"You don't have to prove that your neurological problem is related to a concussion. You don't have to prove in the settlement that you sustained a concussion in the NFL," [Co-Lead Class Counsel] said. "You just need to be a former retired player and you're in the program."[49]

"You just need to be a former retired player and you're in the program." This language is superbly calculated to reassure players of something that is just not true – that the Settlement is comprehensive and will take care of them no matter what happens. Co-Lead Class Counsel makes no mention of the limitation on CTE compensation. Further, in saying "you don't have to prove in the settlement that you sustained a concussion in the NFL," he fails to mention that you do if you wish to avoid the 75% offset for non-NFL TBI. In cheerleading the Settlement, he has been deceiving players about what the Settlement covers.

As the deadline for opting out draws near, the propaganda has intensified. Co-Lead Class Counsel recently gave an interview on *Real Football Lives and Wives*, an online radio program aimed at the families of current and retired NFL players.[50] Over the course of 45 minutes, Co-Lead Class Counsel extensively discussed the Settlement and exhorted class members to not opt out. However, at no time during the entire interview did Co-Lead Class Counsel ever mention

---

[49] Mihoces, *NFL Reaches Concussion Settlement*, USA Today (Aug. 29, 2013), http://www.usatoday.com/story/sports/nfl/2013/08/29/nfl-concussion-settlement-judge-anita-brody-tony-dorsett-jim-mcmahon-junior-seau/2727483 (attached as Exhibit 32).

[50] *NFL Concussion Settlement, REAL Information You Need to Know*, Real Football Wives (and Lives) (Sept. 2, 2014), http://www.blogtalkradio.com/realfootballwives/2014/09/02/nfl-concussion-settlement-real-information-you-need-to-know.

that the families of players who die with a diagnosis of CTE after July 7, 2014, will receive no compensation. Nor did he mention that Class Counsel's own actuary estimates that only 3,600 out of 21,000 class members will receive any monetary compensation at all. Dkt. No. 6167 at 3-4.

"Whether a claimant would want to accept or reject the proposed settlement is a decision to be made by him independently and without influence or pressure from those competing parties who either favor or oppose the settlement." *Phila. Housing Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 378 (E.D. Pa. 1970). By combining the misleading notice with a misleading propaganda campaign, Class Counsel have fundamentally undermined the ability of class members to make this decision "without influence or pressure."

### D.    False and Misleading Notice Has, in Fact, Misinformed Players and Falsely Assured Them That the Settlement Provides Benefits It Lacks

The confusion caused by the notice is not theoretical, it is real. In an article on *Sports On Earth*, columnist Patrick Hruby describes his conversation with former player Dave Pear:

> "Is it a good deal?" Pear said. "It only covers certain people at certain times. Based on what I've read, you won't get compensation for CTE [chronic traumatic encephalopathy] until after you're dead."

> Not exactly, I told him. To receive cash awards for CTE, a neurodegenerative disease that currently only can be diagnosed posthumously, former players must have died by a specific cutoff date.[51]

The media is confused too: In a recent article,[52] ESPN characterized the settlement:

---

[51] Hruby, *Cutting them Short*, Sportsonearth.com (July 18, 2014), http://www.sportsonearth.com/article/85045740/nfl-concussion-settlement-cuts-cte-coverage-short-patrick-hruby (attached as Exhibit 33).

[52] Fainaru & Fainaru-Wada, *Brain Impairment Begins Younger*, ESPN.com (Sept. 13, 2014), http://espn.go.com/nfl/story/_/id/11513442/data-estimates-3-10-nfl-retirees-face-cognitive-woes (attached as Exhibit 34).

> The plan would pay up to $5 million for players with amyotrophic lateral sclerosis, also known as Lou Gehrig's disease; $4 million for deaths involving CTE; $3.5 million for Alzheimer's disease; and $3 million for moderate dementia and other neurocognitive problems.
>
> However, only men younger than 45 who spent at least five years in the league would get those maximum payouts. The awards are reduced, on a sliding scale, if they played fewer years or were diagnosed at a more advanced age.

This description of the settlement seems to be taken straight from the false and misleading notice. Even though it takes care to note other limitations of the Settlement, such as the sliding scale of awards for players over 45, it fails to mention that CTE claims will only be compensated if the player dies by July 7, 2014, and misleadingly implies that all "deaths involving CTE" are eligible for up to $4 million. Showing the reach of Class Counsel's propaganda campaign, these two paragraphs appeared in nearly identical form in write-ups published in September 2014 on the websites of the *Wall Street Journal*,[53] the *Philly.com Blog*,[54] *Huffington Post*,[55] *FoxSports.com*,[56] the *Dallas Morning News*,[57] and the *Minneapolis Star Tribune*.[58] None of these sources noted the July 7, 2014 cut-off date for CTE claims.

---

[53] Dale, *NFL: Nearly Three in 10 Ex-Players Will Develop Debilitating Conditions*, Associated Press (Sept. 12, 2014), *republished at* http://online.wsj.com/articles/nfl-nearly-three-in-10-ex-players-will-develop-debilitating-brain-conditions-1410571935 (attached as Exhibit 35).

[54] *Available at* http://www.philly.com/philly/blogs/sports/eagles/20140912_ap_0487fc0938bf47d9836b379dee6f9aca.html (attached as Exhibit 36).

[55] *Available at* http://www.huffingtonpost.com/2014/09/12/nfl-players-alzheimers-dementia_n_5812504.html (attached as Exhibit 37).

[56] *Available at* http://www.foxsports.com/nfl/story/nfl-players-lawyers-detail-lasting-effects-of-concussions-091214 (attached as Exhibit 38).

[57] *Available at* http://www.dallasnews.com/sports/dallas-cowboys/headlines/20140912-players-lawyers-data-estimates-3-in-10-nfl-retirees-face-cognitive-woes.ece (attached as Exhibit 39).

[58] *Available at* http://www.startribune.com/lifestyle/health/274914621.html (attached as Exhibit 40).

## III.    The Settlement Is Unfair, Unreasonable, and Inadequate

A class settlement cannot be approved unless it "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e).  Where, as here, a class settlement is negotiated ***before*** certification, the Court must "be even more scrupulous than usual in approving" the settlement because "the 'danger of a premature, even a collusive, settlement [is] increased.'"  *GM Trucks*, 55 F.3d at 788, 805.  Consequently, for pre-certification settlements, the settling parties must "make a higher showing of fairness to sustain the[ ] settlement[ ]."  *Id.* at 805.[59]

In assessing whether a settlement is fair, reasonable, and adequate, the Court must consider: (1) the stage of the proceedings and the amount of discovery; (2) the ability of the NFL to withstand a greater judgment; (3) the reaction of the class; (4) the risks of establishing liability and damages; (5) the reasonableness of the settlement in light of the best possible recovery and the attendant risks of litigation; (6) the likelihood of maintaining class status throughout the litigation; and (7) the complexity, expense, and likely duration of the litigation.  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 (3d Cir. 2001) (applying the *Girsh* factors).  Each of these factors demonstrates why the Settlement should not be approved.

---

[59] *See also Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 33 (3d Cir. 1971) ("[W]hen the settlement is not negotiated by a court designated class representative the court must be doubly careful in evaluating the fairness of the settlement to the plaintiff's class."); *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1125 (7th Cir. 1979) (attributing a need for heightened scrutiny of the settlement to the potential for collusive settlement); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (higher showing of fairness required in pre-certification settlements, and special focus on assuring adequate representation and the absence of collusion); *Mars Steel*, 834 F.2d at 681 (noting "a more careful scrutiny of the fairness of the settlement is required"); *Simer v. Rios*, 661 F.2d 655, 664-66 (7th Cir. 1981) (requiring a higher showing of fairness where settlement negotiated before certification); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir. 1990) ("A proffered settlement that is in large part negotiated prior to certification of the class – as occurred herein – is subject to a higher degree of scrutiny than is usual in assessing a settlement's fairness.").

## A. The Complete Absence of Discovery Weighs Against Approval of the Settlement

"[A] decision to settle that occurs at too incipient a stage of the proceedings . . . weighs *against* settlement approval." *GM Trucks*, 55 F.3d at 810 (emphasis added). The presumption against approval is particularly strong where the parties engaged in no formal discovery. "[C]ourts frequently have ruled that discovery relating to the issue whether a class action is appropriate *needs to be undertaken* before deciding whether to allow the action to proceed on a class basis." Wright *et al.*, 7AA *Federal Practice & Procedure* § 1785.3 (3d ed. 2014) (emphasis added). Discovery allows counsel to develop "an adequate appreciation of the merits of the case before negotiating." *GM Trucks*, 55 F.3d at 813. "The deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered." *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983). Thus, when no discovery is taken, a court must "question[ ] whether class counsel could have negotiated in [the] best interests" of absent class members. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 307 (3d Cir. 2005) (rejecting class settlement). In other words, *"achiev[ing] the settlement after little or no discovery . . . raise[s] a red flag."* *GM Trucks*, 55 F.3d at 806 (emphasis added).

Here, Class Counsel appear to have conducted *no discovery* – none. The absence of even a basic factual record precludes any reasonably valid assessment of the value of the class's claims. Put differently, there is no basis to determine whether the Settlement is fair, adequate, and reasonable. The absence of discovery is particularly glaring because the Complaint alleges fraud and negligent concealment, where the best evidence is likely in the Defendants' hands. The Complaint lists dozens of media reports and facts demonstrating the NFL's cover-up of information and willful dissemination of misinformation regarding the risks of head trauma from football. *E.g.*, Compl. ¶¶ 128-199. Investigation of these facts through discovery of the NFL's

internal files could yield powerful and compelling evidence of the NFL's culpability – strengthening Class Counsel's hand at the negotiating table. Yet Class Counsel settled this case without taking a single deposition and without the NFL producing a single document related to the merits of the underlying claims.

Instead, Class Counsel purport to have "exchanged information" with the NFL during the negotiation, including "expert calculations of damages." Dkt. No. 6073-5 at 43. That is insufficient. Nothing in the record demonstrates that Class Counsel "conducted significant independent discovery or investigations *to develop the merits of their case (as opposed to supporting the value of the settlement)*." *GM Trucks*, 55 F.3d at 814 (emphasis added).[60] In the absence of such discovery, this Court must lack "confidence that the proceedings had advanced to the point that counsel could fairly, safely, and appropriately decide to settle the action." *Id.*

Courts routinely refuse to approve class settlements in the absence of adequate discovery. In *GM Trucks*, for example, the Third Circuit found that the "district court clearly erred in finding that this [*Girsh*] factor weighed in favor of settlement" where the district court failed to "assur[e] that adequate discovery had been taken." 55 F.3d at 814. And in *Mills v. Foremost Insurance Co.*, 511 F.3d 1300 (11th Cir. 2008), the Eleventh Circuit concluded that "the district court's class certification ruling was premature" because of the absence of discovery. *Id.* at 1309; *see also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("propriety of a class action cannot be determined in some cases without discovery").

By contrast, when courts have found this *Girsh* factor to weigh in favor of settlement, the settling parties have engaged in far more extensive investigation and discovery than what has

---

[60] The actuarial reports have no impact on this *Girsh* factor because that information bears only on "the value of the settlement," not "the merits of [plaintiffs'] case." *GM Trucks*, 55 F.3d at 814.

occurred here. *See, e.g.*, *Cendant Corp.*, 264 F.3d at 235-36 ( "extensive discovery," review of produced documents and witness interviews, and retention of a damages expert); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) ( "hundreds of thousands of documents . . . , numerous depositions, and consultations with experts"); *In re Prudential Ins.*, 148 F.3d 283, 319 (3d Cir. 1998) (review of a "multitude of documents," interviews with hundreds of potential witnesses, and 20 depositions). And cases where courts granted final approval in the absence of formal discovery have similarly involved far more extensive informal investigations than Class Counsel performed in this case.[61] Class Counsel's discovery efforts to date fall well short of the benchmark established by these cases.

Negotiating blindly, Class Counsel entered into the settlement negotiations with nothing more than an uneducated guess as to the merits of the case. They could not "fairly, safely, and appropriately decide to settle the action." *GM Trucks*, 55 F.3d at 814.

**B. The NFL's Ability To Withstand a Far Greater Judgment Than That Provided by the Settlement Weighs Against Approval of the Settlement**

A defendant's ability to "withstand a judgment for an amount significantly greater" than the proposed settlement weighs against approval. *Cendant Corp.*, 264 F.3d at 240-41 (finding that this factor weighed against settlement when the defendant could "pay significantly more than [the] $2.85 billion" settlement). Undoubtedly, the NFL can.

---

[61] *See Barani v. Wells Fargo Bank, N.A.*, No. 12-2999, 2014 WL 1389329, at *5-6 (S.D. Cal. Apr. 9, 2014) (noting "substantial discovery" and "thorough[ ] investigat[ion]"); *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 271 (E.D. Pa. 2012) (describing informal discovery of over 3,200 documents that described defendant's "participation in the conspiracy"); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 444 (E.D. Pa. 2008) (noting "dozens of depositions," "hundreds of pages of expert reports," and "hundreds of thousands of pages of documents" produced even though "the parties have not yet officially conducted discovery on the merits").

57

Although the Monetary Award Fund is no longer capped, lifting the cap is a cosmetic gesture. The settling parties have emphasized repeatedly that they "remain undeterred in their belief that the $760 million deal originally struck would have been sufficient to compensate all Class Members with valid claims over the term of the Monetary Award Fund." Dkt. No. 6073-5 at 12; *see also* Dkt. Nos. 6167, 6168. And the hurdles imposed on those seeking to file a claim will reduce the value of the Settlement further still. *See* pp. 71-80, *infra*.

The NFL can withstand a judgment many times the amount of the settling parties' own valuation of the Settlement. Last year alone the NFL had annual revenue of more than $10 billion,[62] earned a reported $1 billion from licensing, and paid its commissioner more than $35 million.[63] The NFL's $950 million TV contract for **one season** of Sunday Night Football would itself cover the cost of the current Settlement.[64] And the NFL projects revenues of $25 billion by 2027.[65] Moreover, the NFL has not disclosed how much it, rather than its insurers, would have to pay to settle these claims. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 863-64 (1999) (vacating settlement, in part because the district court failed to evaluate the fairness of the settlement in light of the available assets of both the defendant and its insurers).

---

[62] Schrotenboer, *NFL Takes Aim at $25 Billion, But At What Price?*, USA Today (Feb. 5, 2014), http://www.usatoday.com/story/sports/nfl/super/2014/01/30/super-bowl-nfl-revenue-denver-broncos-seattle-seahawks/5061197/ (attached as Exhibit 41).

[63] Wilson, *NFL Paid Roger Goodell $35.1 Million Last Year*, CBSSports.com (Feb. 14, 2014), http://www.cbssports.com/nfl/eye-on-football/24443392/report-nfl-paid-roger-goodell-351-million-last-year (attached as Exhibit 42).

[64] Futterman *et al.*, *NFL: The League that Runs TV*, Wall St. J. (Dec. 15, 2011), http://online.wsj.com/article/SB10001424052970204026804577098774037075832.html (attached as Exhibit 43).

[65] *See* Kaplan, *Goodell Sets Revenue Goal of $25B by 2027 for NFL*, Sports Business Journal (Apr. 5, 2010), http://www.sportsbusinessdaily.com/Journal/Issues/2010/04/20100405/This-Weeks-News/Goodell-Sets-Revenue-Goal-Of-$25B-By-2027-For-NFL.aspx (attached as Exhibit 44).

58

## C. The Negative Reaction of the Class Weighs Against Approval of the Settlement

Inquiry into the reaction of the class generally looks at "the number and vociferousness of the objectors" and opt-outs. *GM Trucks*, 55 F.3d at 812. From the outset, the reaction of the class has been negative:

- Chidi Ahanotu: "The key part of this will be the people who determine who qualifies and who's eligible. . . . If it's like the NFL's disability benefit program, ***this isn't a win for the players***. That panel denies most requests."[66]

- Kevin Mawae: "Basically, for the cost of their least valuable team, the NFL was able to remove a huge monkey off their back. . . . At the end of the day, it's a very small price to pay considering the negative outcome that could have happened to the NFL if the players had taken this to court."[67]

- Leroy Hoard: "They (the NFL) put a big settlement number out there, but guess what? They say you have to qualify, how easy will they make that?"[68]

- Wade Smith: "At the surface it looks like a good deal. But in the long run I don't think it is. That's usually how it works when it comes to players and ownership."[69]

- Dorsey Levens: "This is a great victory for them [the NFL]. I didn't understand how they got off so lightly."[70]

After this Court *sua sponte* rejected the initial settlement, criticism of the settlement agreement continued. Within two weeks of this Court's Order, for example, the Seau family

---

[66] Banks, *Former Players: Devil Is in the Details with NFL Concussion Settlement*, SI.com (Aug. 29, 2013) (emphasis added), http://www.si.com/nfl/2013/08/29/nfl-concussion-lawsuit-settlement-player-reaction-kevin-mawae (attached as Exhibit 45).

[67] Futterman & Clark, *Deal in Concussion Suit Gives NFL a Big Victory*, Wall St. J. (Aug. 29, 2013), online.wsj.com/article/SB10001424127887324463604579042980915590474.html (attached as Exhibit 46).

[68] ESPN.com, *Reaction to the Concussion Deal* (Aug. 30, 2013) ("ESPN Reactions"), espn.go.com/nfl/story/_/id/9612672/reaction-nfl-concussion-settlement (attached as Exhibit 47).

[69] *Id.*

[70] Wolfley, *Dorsey Levens Rips Settlement of Concussion Lawsuit Against NFL*, Milwaukee Journal Sentinel (Sept. 18, 2013), http://www.jsonline.com/sports/dorsey-levens-rips-settlement-of-concussion-lawsuit-against-nfl-b99101255z1-224335851.html (attached as Exhibit 48).

59

filed a statement noting their objections to the settlement. *See* Dkt. No. 5695. Another 214 plaintiffs filed shortly thereafter, seeking "thorough analysis of the proposed settlement." Dkt. No. 5778 at 1-2.

After preliminary approval, class members have maintained their opposition. The Seau family has continued its criticism.[71] Joe DeLamielleure is "going to tell everyone I know to object."[72] NFL legend and Hall of Famer Emmitt Smith called the settlement "nothing."[73] Class members are already filing objections. *See* Dkt. No. 6175. Indeed, the settling parties' actuaries estimate that as much as ***40% of the class will not participate in the Settlement*** for one reason or another. Dkt. No. 6167 at 38; Dkt. No. 6168 at 33.

All this criticism indicates that the number of opt-outs and objectors will be high. But even if the number of opt-outs and objectors comprises only a small percentage of the class, that would not support approval because the class notice "was not neutral and it did not provide a truthful basis for deciding whether to opt out." *Eubank*, 753 F.3d at 728 (holding small number of objectors did not weigh in favor of settlement); *accord GM Trucks*, 55 F.3d at 813 (lack of objectors did not weigh in favor of approval because the "notice largely defeats the potential for objection since" it was incomplete); *see also* pp. 38-55, *supra*.

---

[71] Moran, *Seau Family Says "No" to NFL Settlement*, U-T San Diego (Sept. 3, 2014), http://www.utsandiego.com/news/2014/sep/03/seau-family-says-no-to-nfl-settlement/ (attached as Exhibit 49).

[72] Fenno, *Hall of Famer Joe DeLamielleure Will Object to NFL Concussion Deal*, The L.A. Times (Sept. 4, 2014), http://www.latimes.com/sports/sportsnow/la-sp-sn-nfl-concussion-deal-joe-delamielleure-20140904-story.html (attached as Exhibit 50).

[73] Interview with Emmitt Smith, *In Depth with Graham Bensinger*, at 3:03 (Sept. 18, 2014), http://sports.yahoo.com/video/emmitt-smith-20k-concussion-settlement-110000539.html.

### D. The Risks of Establishing Liability and Damages Weigh Against Approval of the Settlement

The absence of even a basic factual record – because no discovery has occurred – precludes a complete assessment of the risks of establishing liability and damages. However, the public information that *is* available demonstrates that the class's claims are strong and the NFL's defenses are weak.

#### 1. Even Without Discovery, Publicly Available Information Shows the Strength of Plaintiffs' Claims

The publicly available facts show that the NFL was aware of its responsibility to protect its players, knew or should have known that its policies and conduct were leading to widespread exposure to neurodegenerative diseases, and that – far from helping protect its players from brain trauma – the NFL sought to quash any research drawing a connection between the two. *See* pp. 5-10, *supra*.

##### a. The NFL Assumed a Duty of Care To Guard Player Health and Safety

The NFL has publicly represented that "[s]ince its earliest days, the league has continuously taken steps to ensure that the game is played as fairly as possible without unnecessary risk to its participants, including making changes and enhancements to game safety rules." Compl. ¶ 69; *see also id.* ¶¶ 73-81. It formed an MTBI Committee whose ostensible purpose was to study links between head injuries and neurodegenerative diseases. But the Committee's supposed research – which was disseminated widely – repeatedly found no links between the two and stood in stark contrast to research by the scientific community.

61

b.   **Medical Studies Show That the NFL Knew or Should Have Known of the Link Between MTBI and Brain Damage, Particularly the Onset of CTE**

Countless studies, dating back to the 1920s, show that both concussive and sub-concussive head trauma leads to, among other things, cognitive impairment, memory loss, and depression.[74]   In recent years, these studies have focused on the presence of CTE in athletes, particularly those who had sustained repeated head trauma.   In 2002, Dr. Bennet Omalu, a forensic pathologist, identified CTE in the brain of former Pittsburgh Steelers' center Mike Webster.[75]   Dr. Omalu identified CTE again in 2005 and 2006 in the brains of former players Terry Long and Andre Waters – both of whom committed suicide.[76]   And numerous medical studies – issued at approximately the same time as the NFL's misinformation campaign – have addressed the issue of CTE and/or cognitive impairment arising from concussions sustained during football.[77]

---

[74] *See, e.g.*, Kain, *It's Just a Concussion: The National Football League's Denial of a Causal Link Between Multiple Concussions and Later-Life Cognitive Decline*, 40 Rutgers L.J. 697, 701-02 & n.26 (2009); Roberts, *Brain Damage in Boxers: A Study of the Prevalence of Traumatic Encephalopathy Among Ex-Professional Boxers* 61 (1969); Busse & Silverman, *Electroencephalographic Changes in Professional Boxers*, 149 J.A.M.A. 1522 (1952) (attached as Exhibit 51); Martland, *Punch Drunk*, 91 J.A.M.A. 1103 (1928) (attached as Exhibit 52).

[75] Fainaru-Wada & Fainaru, *League of Denial*, *supra*, at 158, 163.

[76] Schwarz 2007, *supra*.

[77] *See, e.g.*, McKee *et al.* 2013, *supra*, at 59; McKee *et al.*, *Chronic Traumatic Encephalopathy in Athletes: Progressive Tauopathy After Repetitive Head Injury*, 68 J. Neuropathology & Experimental Neurology 709, 710 (2009) (attached as Exhibit 53); Cantu, *Chronic Traumatic Encephalopathy in the National Football League Player*, 61 Neurosurgery 223 (2007) (attached as Exhibit 54); Guskiewicz *et al.*, *Association Between Recurrent Concussion and Late-Life Cognitive Impairment in Retired Professional Football Players*, 57 Neurosurgery 719 (2005) (attached as Exhibit 55); Omalu *et al.*, *Chronic Traumatic Encephalopahty in a National Football League*, 57 Neurosurgery 128 (2005) (attached as Exhibit 56); Omalu *et al.*, *Chronic Traumatic Encephalopathy in a National Football League Player: Part II*, 59 Neurosurgery 1086 (2006) (attached as Exhibit 57).

c.    **The NFL Actively Worked To Conceal the Correlation Between MTBI and Brain Damage**

The NFL's MTBI Committee devoted its resources to artificially creating "scientific" papers of its own that directly contradicted decades of research on brain trauma. For example, in 2005, the MTBI Committee concluded that returning to play after sustaining a concussion "does not involve significant risk of a second injury either in the same game or during the season."[78]  In another paper, the MTBI Committee represented: "mild TBIs in professional football *are not serious injuries*"; "[i]n players with four or more concussions there was a greater chance of personality change, and fatigue, but the number *did not reach statistical significance*"; "this 6-year study indicates that *no NFL player experienced second-impact syndrome, chronic cumulative injury, or chronic traumatic encephalopathy from repeated injuries*;" "players who become asymptomatic and have normal results on examinations performed at any time after injury, while the game is still in progress, have been and *can continue to be safely returned to play on that day*."[79]  In a 2007 interview on HBO's *Real Sports*, moreover, then-NFL MTBI Committee co-chair Ira Casson insisted there was no link between multiple head injuries in professional football players and such conditions as depression, dementia, and early-onset Alzheimer's.[80]

These representations were not outliers.  In its 2007 concussion guidelines, the NFL represented: "Current research with professional athletes has shown that you *should not be at*

---

[78]  CNN Library, *NFL Concussions Fast Facts*, CNN U.S. (July 21, 2014), http://www.cnn.com/2013/08/30/us/nfl-concussions-fast-facts/ (attached as Exhibit 58).

[79]  Pellman *et al.*, *Concussion in Professional Football: Summary of the Research Conducted by the National Football League's Committee on Mild Traumatic Brain Injury*, 21 Neurosurgery Focus 1, 9-10 (2006) (emphasis added) (attached as Exhibit 59).

[80]  Hruby, *The Case Against the NFL*, The Post Game (Feb. 29, 2012), www.thepostgame.com/blog/hruby-tuesday/201202/case-against-nfl (attached as Exhibit 60).

63

*greater risk of further injury* once you receive proper medical care for a concussion and are free of symptoms," that "[c]urrent research with professional athletes has **not shown that having more than one or two concussions leads to permanent problems** if each injury is managed properly," and that "there is **no magic number** for how many concussions is **too many**."[81]  In January 2010, during a House Judiciary Committee hearing, Dr. Casson further denied a link between repeat head impacts and long-term brain damage.[82]

At the very least, publicly available information establishes that, despite the absence of discovery, Plaintiffs' claims are viable.

### 2. Discovery Would Have Allowed Class Counsel To Overcome – or at Least Understand – the Supposed "Stiff and Complex Challenges" to a Successful Suit

The absence of discovery also hampers class members' abilities to evaluate the strength of the NFL's defenses.  *See* pp. 56-59, *supra*.  In moving for preliminary approval of the settlement, Class Counsel focused on the "stiff and complex challenges" they purportedly faced in surmounting Defendants' defenses: preemption, causation, statute of limitations, assumption of the risk, and "other defenses."  Dkt. 6073-5 at 61-71.  Although Class Counsel claim that whether they could satisfy their burden of proof was a "significant consideration" in settling, *id.*, that is a red herring.  Whether a burden of proof is met is a question of fact, and Plaintiffs developed no facts through discovery.  Had they done so, they may not have considered the

---

[81] National Football League, *NFL Outlines for Players Steps Taken to Address Concussions*, NFL.com (Aug. 14, 2007) (emphasis added), http://www.nfl.com/news/story/09000d5d8017 cc67/article/nfl-outlines-for-players-steps-taken-to-address-concussions (attached as Exhibit 61).

[82] *Legal Issues Relating to Football Head Injuries (Part I & II): Hearings Before the H. Comm. on the Judiciary*, 111th Congress 334-35 (2010) (statement of Ira R. Casson, M.D.), http://www.gpo.gov/fdsys/pkg/CHRG-111hhrg53092/pdf/CHRG-111hhrg53092.pdf.

challenges so "stiff and complex." But even based on the information currently available, the NFL's claimed defenses are weak.

**Preemption.** Class Counsel contend that preemption under § 301 of the Labor Management Relations Act (LMRA), 28 U.S.C. § 185, presents a "significant" legal challenge for Plaintiffs in light of the NFL Defendants' referenced collective-bargaining agreements (CBAs). Dkt. No. 6073-5 at 61-64. But § 301 only preempts "claims founded **directly** on rights created by collective-bargaining agreements," or claims "**substantially dependent** on analysis of a collective-bargaining agreement." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (emphasis added) (quotation marks omitted) (former employees' claims against former employer were not preempted because claims arose out of individual employment contracts and did not touch on CBA provisions).

In fact, in *Green v. Arizona Cardinals Football Club*, the district court, relying on *Caterpillar*, recently held that the claims of retired NFL players against the Arizona Cardinals for brain injuries resulting from TBI **were not precluded by the CBA**. *Green v. Ariz. Cardinals Football Club, LLC*, No. 14-CV-461, 2014 WL 1920468, at *3 (E.D. Mo. May 14, 2014). The court's reasoning holds true here: Preemption is not triggered where a dispute only "tangentially involv[es] a provision of a [CBA]." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). Stated differently, "section 301 does not preempt state law claims merely because the parties involved are subject to a CBA and the events underlying the claim occurred on the job." *Williams v. Nat'l Football League*, 582 F.3d 863, 874 (8th Cir. 2009). What matters is whether the plaintiffs' claims turn on rights that are actually set forth in a CBA provision or that "'require interpretation or construction of the CBA'" itself. *Green*, 2014 WL 1920468, at *3 (quoting *Williams*, 582 F.3d at 876) (rejecting preemption argument on ground that alleged NFL CBAs

65

were not the source of players' claims of negligence, misrepresentation, and fraudulent concealment).

Plaintiffs' claims here turn on factual questions about the NFL's conduct – what actions or representations it did or did not perform and when and why it decided to perform them. For example: When did the NFL first learn of the connection between MTBI and neurodegenerative disease? What data did the NFL collect? How and why did it craft its public statements on concussions? Discovery is needed before making any realistic assessment as to the "challenges or obstacles" Plaintiffs might face regarding preemption.

**Causation.** Class Counsel claim they face "significant legal impediments surrounding [their] ability to prove causation and obtain verdicts in the absence of a settlement." Dkt. No. 6073-5 at 64. But "[p]roximate cause requires only 'some direct relation between the injury asserted and the injurious conduct alleged,' and excludes only those 'link[s] that are too remote, purely contingent, or indirect.'" *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1192 (2011). Unless the NFL Defendants' conduct was a "trivial contribution" to the putative class members' "cause of harm," the NFL Defendants' conduct is a proximate cause of the class members' injuries. *Restatement (Third) of Torts: Phys. & Emot. Harm* § 36 (2010).

Class Counsel are wrong to cede any ground to this defense without obtaining discovery into the Defendants' conduct. When the NFL first learned of the connection between head trauma and neurodegenerative disease, what studies it undertook concerning this information, and how and why it crafted its public statements concerning concussions, are questions that should be pursued through discovery to address the purported causation "impediment."

**Statute of Limitations.** Class Counsel contend their claims faced "a significant potential risk" of dismissal in light of the "serious challenge" presented by a statute of limitations. Dkt.

6073- at 65.  This professed concern ignores the doctrine of fraudulent concealment, which "tolls the statute of limitations where 'through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry.'" *Mest v. Cabot Corp.*, 449 F.3d 502, 516 (3d Cir. 2006) (whether defendants made misrepresentations and the nature of any misrepresentations is relevant to determining if fraudulent concealment tolled limitations period).

Significantly, Class Counsel urged that a statute of limitations defense should fail on this very ground in other litigation.  *See Finn* Compl. ¶¶ 144-148 (the "applicable statute of limitations is tolled because Defendant's fraudulent concealment of the dangers and adverse effects of head injuries made it impossible for Plaintiffs to learn of the hazards to their health").  The question is whether a defendant undertook some "affirmative and independent act of concealment that would prevent the plaintiff from discovering the injury[,] despite the exercise of reasonable diligence." *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991).  Rather than answer that factual question through evidence developed in discovery to negotiate a settlement that compensates all injured class members, Class Counsel punted by excluding all class members who died before January 1, 2006, unless the claimant can demonstrate that the statute of limitations would not apply.  Settlement § 6.2(b)

*Assumption of the Risk.*  Class Counsel argue that an "assumption-of-risk" defense also potentially blocks Plaintiffs' claims.  Dkt. No. 6073-5 at 67-70.  But the assumption of risk "doctrine is very narrow," limited only to circumstances where it is clear that "the 'nature and extent' of the risk were 'fully appreciated' and that the plaintiff voluntarily proceeded to face that risk." *Barnes v. Am. Tobacco Co.*, 984 F. Supp. 842, 869 (E.D. Pa. 1997).  The retired players unquestionably assumed certain bodily risks, but they did not consent to face the types of harm alleged here – harm concealed from them by Defendants.  *See, e.g., Murphy v.*

67

*Steeplechase Amusement Co.*, 250 N.Y. 479, 482-83 (1929) ("One who takes part in [ ] a sport accepts the dangers that inhere in it so far as they are obvious and necessary, . . . [but a] different case would be here if the dangers inherent in the sport were obscure or unobserved, or so serious as to justify the belief that precautions of some kind must have been taken to avert them.").

Class Counsel pled facts – for which they presumably had a good-faith basis – that would easily defeat an assumption of the risk defense. The evidence supporting those allegations has not been developed through discovery.

***Statutory Employer.*** Class Counsel also state that the NFL Defendants "may argue they are similarly situated to a general contractor with respect to the injured players, and the injured players are akin to the employees of subcontractors." Dkt. No. 6073-5 at 71. However, "very great care . . . must be exercised before allowing an employer to avoid his liability at common law by asserting that he is a statutory employer." *Stipanovich v. Westinghouse Elec. Corp.*, 210 Pa. Super. 98, 106 (1967). In the Third Circuit, defendants must identify "an owner, a principal contractor[,] and a subcontractor" for the defense to apply; a party "***cannot be both the owner (or in the position of owner) and statutory employer at the same time***." *Pozza v. United States*, 324 F. Supp. 2d 709, 712 (W.D. Pa. 2004) (citing *Jamison v. Westinghouse Elec. Corp.*, 375 F.2d 465, 469 (3d Cir. 1967) (emphasis added)). If the defense were to be asserted, discovery would be needed into the NFL, the individual teams, and the teams' owners to examine their corporate structure and contractual relationships.

\* \* \* \* \*

In sum, the absence of discovery makes it impossible for class members to accurately assess the risks of establishing liability and damages. But even on the information that is

available, class members have strong arguments that the NFL is liable and that damages can be proven.

### E. The Best Possible Recovery and the Risks of Litigation Weigh Against Approval of the Settlement

A court must examine "the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *GM Trucks*, 55 F.3d at 806. This Settlement is a sell-out. The Settlement terms do include multi-million dollar maximum awards and an uncapped monetary award fund. But that generosity is illusory. From the MTBI-related injuries that go completely uncompensated to the offsets that reduce individual awards and the procedural maze that claimants must navigate to receive payment, the Settlement is designed to dramatically reduce the number of claims on which the NFL must actually pay. Where, as here, the "real value" of a settlement to the class falls well short of its ostensible face value, the settlement is not reasonable in light of the "best possible recovery" and the attendant risks of litigation. *See GM Trucks*, 55 F.3d at 807-10.

### 1. The Proffered Value of the Settlement Is Illusory Because the Settlement Leaves Many Class Members Without Compensation for Their MTBI-Related Diseases

A settlement is not the "best possible recovery" where "some segments of the class are treated differently from others." *GM Trucks*, 55 F.3d at 808; *see Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) ("disparity in the relief afforded under the settlement to the named plaintiffs, on the one hand, and the unnamed class members, on the other, [makes] the settlement unfair"). "In the class action context, 'the relief sought in the complaint' serves as a useful benchmark in deciding the reasonableness of a settlement." *GM Trucks*, 55 F.3d at 810. CTE is at the heart of the Class Action Complaint and was a driving force of this lawsuit. *See* pp. 31-32, *supra*. The total failure to compensate current and future cases of CTE shows that the

69

Settlement is not reasonable in light of the best possible recovery.  *See GM Trucks*, 55 F.3d at 810 (settlement not reasonable where "coupons offered by [defendant] simply do not address the safety defect that formed the central basis of the amended complaint filed barely four months before the settlement").[83]

The 75% offset for stroke and TBI further reduces the actual value of the settlement relative to the best possible recovery.  Both Class Counsel and the NFL accounted for the 75% offset in their actuarial estimates evaluating the settlement.  *See* Dkt. No. 6167 at 18-19; Dkt. No. 6168 at 37-38.  Both relied on the incidence of stroke in the general population.  Class Counsel assumed that 9.1% of Alzheimer's patients and 8.4% of dementia patients would suffer a stroke before the onset of disease.  Dkt. No. 6167 at 18-19.  The NFL assumed a rate of stroke at 4.5%.  Dkt. No. 6168 at 37.  But any reliance on figures for the general population is seriously flawed.  Former NFL players likely face a ***higher risk*** of stroke precisely because of the head injuries they suffered in the NFL.  *See* pp. 33-34, *supra*.

The stroke offset also disproportionately burdens some class members more than others.  African-Americans are 1.3 times more likely to have a stroke than others.[84]  Yet the Settlement

---

[83] The Settlement is not reasonable even according to Class Counsel's own flawed figures.  Although CTE is likely to be the most common neurocognitive disease suffered by the class, Class Counsel identified only 46 cases of CTE from among 1,700 class members who have died.  *See* Dkt. No. 6167 at 3, 5.  Applying that absurdly low 2.7% rate of CTE across the 19,400 class members living today, *id.* at 3, would indicate that there will be 525 more cases of CTE in the future.  Accepting the settling parties' own valuation of CTE as a $1.44 million injury (after discounting for age at time of diagnosis and years played, Dkt. 6167 at 8 tbl. 2-4), the total value of future CTE claims would still be ***$756 million***.  But the Settlement reduces that figure to ***zero***.  On that basis alone, the Settlement is unreasonable.  *See Eubank*, 753 F.3d at 726 ("A class recovery of little more than $1 million is a long way from the $90 million that the district judge thought the class members likely to receive were the suit to be litigated.").

[84] *See* Ayala *et al.*, *Racial/Ethnic Disparities in Mortality by Stroke Subtype in the United States, 1995-1998*, 154 Am. J. of Epidemiology 1057 (2001) (attached as Exhibit 62).

severely reduces recovery for an event that disproportionately affects a significant percentage of the settlement class.

The Settlement also provides no credit for seasons played in NFL Europe, notwithstanding that the risk of injury in NFL Europe did not differ from the risk in the NFL in any meaningful way.  *See* pp. 35-37, *supra*; Morey Decl. ¶ 6.  Neither the NFL nor Class Counsel estimate the number of class members whose service in NFL Europe rather than the NFL reduced their overall recovery.  But one collection of football statistics identifies ***over 3,600 players*** who spent time in the league.[85]  Thus, the failure to credit seasons played in NFL Europe could affect a large number of class members.

In short, the "fact that the . . . settlement benefits certain groups of the class more than others" weighs against final approval, and demonstrates that the settlement was "a sell-out of an otherwise strong case."  *GM Trucks*, 55 F.3d at 806, 808.

### 2. The Proffered Value of the Settlement Is Illusory Because It Sets an Unreasonably High Bar To Qualify for Dementia

The Settlement sets an unreasonably high bar to qualify even for Level 1.5 dementia.  To do so, a class member must be unable to function independently at a job, shopping, volunteer or social activities; must be unable to complete difficult chores or complicated hobbies; ***and*** must require prompting to engage in personal care such as dressing, bathing, and using the bathroom.  Stern Decl. ¶ 47.  Junior Seau and Dave Duerson – two NFL greats who killed themselves and were found to have CTE – reportedly experienced "years of significant changes in mood and behavior, including depression, hopelessness, aggression, and poor impulse control."  *Id.* ¶ 35.  "Based on public reports of their functioning by their family members and friends," however, "it

---

[85] *See* NFL Europe/WLAF Player Register, *The Football Database*, http://www.footballdb.com/ nfl-europe/nfleplayers.html (accessed Sept. 24, 2014).

is unlikely that their cognitive skills were impaired to the degree of meeting the criteria for Level 1.5 or Level 2 Neurocognitive Impairment." *Id.*

> **3.    The Proffered Value of the Settlement Is Illusory Because the Baseline Assessment Program Is Underinclusive**

The Baseline Assessment Program (BAP) offers far less value than the Settlement proclaims.  Class Counsel agreed to a ***$75 million cap*** on the baseline assessment fund without any evidence that the capped amount was adequate.  Indeed, Class Counsel's actuaries made no projections about the estimated draw on the BAP, *see* Dkt. No. 6167, although the NFL's actuary did, *see* Dkt. No. 6168 at 42-44.  Class Counsel thus either agreed to a cap without any assessment of whether the fund was adequate or agreed to a cap on the basis of representations made by their adversary across the negotiating table.  Either way, Class Counsel did not fulfill their fiduciary obligation to the class.

The NFL's analysis of the adequacy of the BAP fund, moreover, is seriously flawed.  The actuaries were "***instructed to assume*** that, for players diagnosed with a Level 1 diagnosis" of dementia, "the cost of further testing, treatment, and related drug therapy would not exceed $35,000 per player."  Dkt. No. 6168 at 43 (emphasis added).  But the actual cost of treating dementia can reach $56,000 ***a year***.[86]  A BAP fund that ignores actual data and includes a cap based on an obviously flawed assumption is grossly inadequate and will run out long before the end of a Settlement that is supposed to last for 65 years.

The BAP, moreover, is flawed as a matter of design and will deprive deserving class members of compensation for their MTBI-related injuries.  ***The BAP does not even test at all for***

---

[86] Zorumski & Rubin, *The Financial Cost of Dementia*, Psychology Today (Oct. 10, 2013), http://www.psychologytoday.com/blog/demystifying-psychiatry/201310/the-financial-cost-dementia (attached as Exhibit 63).

*the mood and behavioral disorders* that plague many individuals with CTE. Stern Decl. ¶¶ 31, 45. And many class members entitled to compensation under the Settlement will not receive a diagnosis of dementia under the BAP. Administering the complete battery of tests "would take approximately five hours without any break." Stern Decl. ¶ 44. There is no justification for a five-hour test. The testing protocols prescribed by the Settlement are generally considered inappropriate for the evaluation of individuals with neurodegenerative diseases. *Id.* ¶ 43. As Dr. Stern explains, a five-hour test without any break would "result in refusals to complete the evaluation" by many individuals suffering from dementia who would otherwise be compensated under the Settlement. *Id.* ¶ 44.

The testing battery also incorporates several effort and performance metrics that are inappropriate for use on individuals suffering from the levels of cognitive impairment compensated under the Settlement. Stern Decl. ¶¶ 45-46. Effort metrics are typically included in a neuropsychological test battery to screen for individuals whose low scores result from a lack of effort rather than diminished cognitive ability. "[B]ecause patients with dementia are so impaired cognitively," however, "they may perform poorly on the effort test due to their actual cognitive impairment rather than poor effort." *Id.* ¶ 48.

In short, because the testing battery prevents deserving class members with valid claims from obtaining the awards to which they are entitled under the Settlement, the Settlement is unreasonable in light of the best possible recovery.

### 4. The Proffered Value of the Settlement Is Illusory Because the Settlement Requires Class Members To Navigate a Complex Procedural Maze To Secure Recovery

To receive *any* recovery, class members must navigate a complex and burdensome administrative process that appears designed to decrease the cost of the Settlement to the NFL. Because many cognitively impaired class members may find themselves unable to steer through

73

this procedural thicket, their valid claims will be denied or reduced, limiting the NFL's total payout under the Settlement and diminishing the value of the Settlement relative to the best possible recovery. *See GM Trucks*, 55 F.3d at 808 (holding concerns about "real value" of settlement weighed against final approval); *see also Eubank*, 753 F.3d at 726 (reversing approval of settlement where "restrictions that [defendant] was allowed to place on the settlement would, if upheld, enormously reduce the class members' recovery"). Like the class settlement recently rejected in *Eubank*, 753 F.3d at 724, the Settlement "strews obstacles in the path of any" class member seeking recovery by imposing requirements and deadlines that, if unsatisfied, reduce or completely bar recovery.

### a. Class Members Are Required To "Opt In" and Meet Arbitrary Examination Deadlines

Class members have 180 days to register with the Claims Administrator, essentially requiring class members to opt in even though they never opted out of the class in the first place. Any class member who fails to do so is ***ineligible for any benefits***, even though their claims are released. Settlement § 4.2(c). And even those class members who do register in a timely fashion may find themselves battling the NFL from the outset – the NFL can "challenge" a Notice of Registration Determination in favor of a class member. *Id.* § 4.3(a)(iii).

Some class members, moreover, must undergo baseline assessment examinations by arbitrary deadlines. For example, any class member who has not received a qualifying diagnosis by the Settlement's effective date must undergo the baseline assessment (1) within two years after the BAP begins if the class member is 43 or older on the effective date; or (2) by the earlier of his 45th birthday or within 10 years after the BAP begins, if the class member is younger than 43 on the effective date. Settlement § 5.3. Class members who forgo the baseline assessment suffer a 10% offset if they later develop a qualifying diagnosis. *Id.* §§ 5.4, 6.7(b)(iv).

74

**b.** **Class Members Are Required To Prepare and File an Unreasonably Complex and Ambiguous "Claim Package"**

The claims process erects other barriers to recovery. Class members must file an extensive "Claim Package" within two years of receiving a qualifying diagnosis. Settlement §§ 8.2(a), 8.3(a)(i). But Class Counsel have not even disclosed the proposed claim form and instructions for submitting the claims packet. Class members are left to trust Class Counsel that the claim form they negotiate will help, rather than hinder, class members' ability to file valid claims. If the rest of the claims process is any indication, class members should be skeptical.

It gets worse. Class members are required to provide "objective evidence beyond [a] sworn statement" of NFL employment and participation in more than one eligible season. Settlement § 9.1(a)(i). Class members who cannot produce such evidence are limited to compensation for one eligible season (which results in an **80%** offset, *id.* § 6.7(b)(i)(8)). *Id.* There is no possible justification for this procedural hurdle because **the NFL itself has this data**. The NFL tracks player statistics as far back as 1920, including number of seasons played.[87] As this requirement demonstrates, the claims process is meant to thwart rather than facilitate payments under this purportedly uncapped Settlement.

Once a claim is submitted, moreover, the Claims Administrator can investigate and "request additional documentation." Settlement § 8.6(a). A class member must supply that documentation "in order to claim a Monetary Award." *Id.* Otherwise, his claim will be rejected.

The process of obtaining a qualifying diagnosis is also burdensome. After the effective date of the Settlement, a qualifying diagnosis can be made only by "Qualified MAF Physicians."

---

[87] *See, e.g.*, NFL.com, *Players*, http://www.nfl.com/player/georgehalas/2515602/profile (entry for "George Halas" showing "10 seasons" of "experience" from 1920 to 1929) (attached as Exhibit 64).

75

Settlement § 6.3(b). To receive that designation, physicians must "be approved by Co-Lead Class Counsel and Counsel for the NFL Parties." *Id.* § 6.5(a).[88] The Settlement, moreover, contains no hardship provisions for individuals who may live far away from any Qualified MAF Physician or who may, because of their medical condition, be unable to travel long (or even short) distances to a Qualified MAF Physician. To the contrary, the Settlement provides that "[t]o the extent a Retired NFL Football Player is examined by a Qualified MAF Physician, such visit and examination shall be at the Retired NFL Football Player's own expense." *Id.* § 6.5(a).[89]

Class members whose claims are denied may appeal, but only after paying a $1,000 fee (which is refundable if the appeal is successful). Settlement § 9.6(a). But the NFL may appeal an unlimited number of claim determinations without paying any fee. *Id.* § 9.6(b).[90] Class members who appeal must "present evidence in support of their appeal" and satisfy a "clear and convincing evidence" standard to prevail. *Id.* §§ 9.7(a), 9.8. Briefing, however, is limited to five pages. *Id.* § 9.7(a). By affording the NFL unlimited appeals and by requiring class members to pay to appeal while operating under unreasonable procedural requirements, the Settlement

---

[88] The Settlement also hampers the ability of opt-outs to prosecute their claims against the NFL even if the Settlement is approved. Qualified MAF Physicians, Qualified BAP Providers, and members of the Appeals Advisory Panel and Appeals Advisory Panel Consultants are all prohibited from serving as a consultant or expert witness against the NFL in a concussion-related case; medical professionals who are serving in such a capacity, moreover, are ineligible for appointment to any of those positions. Settlement §§ 5.7(a)(ii), 6.5(b).

[89] That requirement may discourage many players from even seeking out the qualifying diagnosis. Within two years of retirement, 78% of former NFL players are under financial stress. Torre, *How (and Why) Athletes Go Broke*, Sports Illustrated (Mar. 23, 2009). www.si.com/vault/2009/03/23/105789480/how-and-why-athletes-go-broke (attached as Exhibit 65).

[90] The initial settlement, by contrast, limits the NFL to ten appeals per year. *See* Dkt. No. 5634-2 § 9.6(b). It also required the NFL to pay up to $2,000 in attorneys' fees and costs if it lost the appeal. *Id.* These provisions were eliminated from the current Settlement.

establishes an asymmetric appellate system tilted decidedly in favor of the NFL and against the class.[91]

### c. Class Members Are Subject to Additional Arbitrary Procedures That Will Limit Compensation

The Settlement imposes a series of so-called "anti-fraud" provisions that will, in practice, operate as "anti-payment" provisions. The Claims Administrator must audit 10% of all applicants each month. Settlement § 10.3(c). The NFL, moreover, can "at any time" request an audit to verify claims submitted by class members. *Id.* § 10.3(a). Auditors may demand additional information and documents from the class member including all medical records and a list of all health care providers seen in the past five years, among others. *Id.* § 10.3(e). Even partial non-compliance with an auditor's demand requires denial of the claim "without right to an appeal." *Id.* § 10.3(b)(ii).

\* \* \* \* \*

This complex procedural framework is a transparent attempt to minimize the cost of the settlement to the NFL – a consideration of tremendous importance now that the Settlement is purportedly uncapped. The lowest tiers of compensation from the Monetary Award Fund require a class member "to be so severely impaired in several areas of cognitive functioning that they

---

[91] The claims administration process is at risk of operating in a manner similar to current, flawed disability programs jointly administered by the NFL and the NFLPA. Just 34% of the applications submitted for temporary and permanent disability are approved in the initial stage. Halchin, *Former NFL Players: Disabilities, Benefits, and Related Issues*, Congressional Research Service 82 (2008) (attached as Exhibit 66). Those disability programs, moreover, have been heavily criticized for improperly denying meritorious claims. *See id.* at 76-77 (quoting Leahy, *The Pain Game*, Washington Post Magazine, at 10, 23 (Feb. 3, 2008)); *see also* Rosenberg, *"Permanently Disabled," Harrison Fighting for Benefits NFL Took Away*, Sports Illustrated (Jan. 29, 2014), http://www.si.com/nfl/2014/01/29/dwight-harrison-nfl-pension (attached as Exhibit 67); O'Keefe, *Still Plenty of Skeptics After NFL Reaches New Deal with Players to Settle Concussion-Related Lawsuit*, N.Y. Daily News (June 28, 2014), http://www.nydaily news.com/sports/football/score-nfl-deny-issues-article-1.1847588 (attached as Exhibit 68).

77

would require assistance in many activities of daily living (in Level 1.5) or be almost fully dependent on another person for most activities of daily living, such as bathing and toileting (for Level 2.0)." Stern Decl. ¶ 47. Someone laboring under such impairment has little hope of navigating the procedural morass required to claim payment under the Settlement.

Class Counsel certainly could have negotiated a simpler payment process. They did so for themselves – they will receive their $112.5 million payment within 60 days after the Settlement takes effect. Settlement § 21.2. Yet their clients – many suffering serious cognitive impairment – will be left wandering through an administrative maze that allows the NFL to say "gotcha" at every turn.

Courts have refused to approve settlements with benefits that are illusory in light of the procedural difficulty to realize them. *See Eubank*, 753 F.3d at 724-25 (rejecting settlement that "strew[ed] obstacles in the path of any" class member); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718-19, 721 (6th Cir. 2013) (rejecting class settlement, in part, due to an onerous claims process); *Walter v. Hughes Commc'ns, Inc.*, No. 09-2136, 2011 WL 2650711, at *14 (N.D. Cal. July 6, 2011) (rejecting class settlement where "[m]any hurdles stand between a class member and the receipt of . . . payment" and claim form was "unnecessarily complex," "confusingly arranged," and "invites user error"). The Court should do so here.

### 5. Other Factors Demonstrate That the Value of the Settlement Is Unreasonable in Light of the Best Possible Recovery

Several other factors demonstrate the unreasonableness and inadequacy of the Settlement. The attorneys' fee provision, the unknown role of the Representative Plaintiffs, and the lack of transparency throughout the settlement process all show that the settlement is a "sell-out of an otherwise strong case." *GM Trucks*, 55 F.3d at 806.

### a.      *The Attorneys' Fee Provision*

The NFL Defendants – in what is known as a "clear sailing agreement" – have agreed not to object to Class Counsel's $112.5 million attorneys' fee award.  Settlement § 21.1.  The "'very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value'" – like compensation for all cases of CTE – "'to the class.'"  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)).  As a result, clear sailing agreements are "disfavored." *Id.* at 949.

It appears that Class Counsel "pursued a deal with the defendants separate from . . . the deal negotiated on behalf of the class." *GM Trucks*, 55 F.3d at 803.  Although Class Counsel have stated that the "Settling Parties did not discuss the issue of attorneys' fees at any point during the mediation sessions," Dkt. No. 6073-5 at 30, those remarks are "self-serving" and may be ignored, *Bluetooth Headset*, 654 F.3d at 948 (quoting *GM Trucks*, 55 F.3d at 804).  Instead, the timing of the Settling Parties' fee negotiations, which occurred even before public release of the initial settlement agreement, as well as the extraordinary sum to be paid, demonstrates the absence of arm's-length negotiations.

As if a nine-figure attorneys' fee award for conducting no discovery whatsoever were not enough, the Settlement authorizes Class Counsel to petition the Court for a 5% set aside – ***drawn from each claimant's settlement award*** – to "facilitate the Settlement program and related efforts of Class Counsel."  Settlement § 21.1.  That provision – which was not even in the initial, rejected settlement – places no limits on how Class Counsel may use the set aside (although it does require that any petition describe "how the money will be used").  *Id.*  The provision gives no mechanism for providing notice to class members of Class Counsel's petition for the set aside.  It also does not authorize any procedures by which class members can oppose that

79

petition. The set aside thus allows Class Counsel the opportunity to augment their $112.5 million attorneys' fee at the expense of the class.

### b.     *The Role of the Representative Plaintiffs*

The role of the Representative Plaintiffs has not been disclosed. The protection of absentee class members' rights "depends in part on the extent the named plaintiffs are adequately interested to monitor the attorneys." *GM Trucks*, 55 F.3d at 784. The "specter of collusion" is present when class counsel " 'prosecute an action and negotiate settlement terms without meaningful oversight by the class representative.' " *Olden v. Gardner*, 294 F. App'x 210, 219 (6th Cir. 2008) (quoting *In re Cal. Micro Devices Sec. Litig.*, 168 F.R.D. 257, 262 (N.D. Cal. 1996)). The Representative Plaintiffs have not shown such meaningful oversight here. Although the Settlement states that Representative Plaintiffs were shown and were familiar with the agreement, it says nothing about their participation in the negotiations. Settlement § 25.2. Nor did the mediator describe their role. Dkt. No. 6073-4. And media reports indicate that Co-Lead Class Counsel has "clashed with his own clients."[92] When "class representatives provide[] no meaningful oversight of the class counsel during the settlement negotiations," the "risk of collusion weighs against the settlement." *Olden*, 294 F. App'x at 219.[93]

### c.     *The Settlement Negotiation Process*

The class members have been left in the dark throughout the settlement process. *See* Hruby, *Show Us Some Math*, Sportsonearth.com (Jan. 20, 2014) (attached as Exhibit 70)

---

[92] Fainaru & Fainaru-Wada, *Lawyers Fight Over Settlement Details*, ESPN.com (Jan. 24, 2014, 8:18 PM), http://espn.go.com/espn/otl/story/_/id/10346091/lead-negotiator-facing-strong-opposi-tion-concussion-settlement (attached as Exhibit 69).

[93] Similarly, Class Counsel offer no description of the role that Sub-Class Counsel played in the negotiation. In fact, Class Counsel did not recruit Sub-Class Counsel until negotiations were ***already underway*** before the mediator. *See* Dkt. No. 6073-4 ¶ 7.

(describing the settlement process as "cloak[ed] [in] secrecy").[94]  Absent class members have

not, for example, had access to all negotiation documents and studies exchanged among the

settling parties, Mediator, and Special Master.  " 'Sunlight is said to be the best of disinfectants;

electric light the most efficient policeman.' "  *Buckley v. Valeo*, 424 U.S. 1, 67 (1976) (per

curiam) (quoting Brandeis, *Other People's Money* 62 (Nat'l Home Library Found. ed. 1933)).

That is particularly so in the class settlement context, where the court lacks the "clash of the

adversaries" that ordinarily "generate[s] the information that the judge needs to decide the case."

*Eubank*, 753 F.3d at 720 (rejecting class settlement); *see also Cmty. Bank*, 418 F.3d at 319

(rejecting class settlement where district court "entrusted class counsel to prepare . . . findings [of

fact] in an *ex parte* closed door session" without participation of other class members).  In the

absence of transparency regarding the settlement negotiations, neither the Court nor the class

members can be assured that Class Counsel zealously negotiated on behalf of absent class

members.

### F.     The Likelihood of Maintaining Class Status Weighs Against Approval of the Settlement

A court must also consider "the risks of maintaining the class action through trial."

*Girsh*, 521 F.2d at 157; *see also* Fed. R. Civ. P. 23(a).  When the class is likely to maintain class

status throughout trial, this factor weighs in favor of settlement.  *GM Trucks*, 55 F.3d at 817-

18.[95]  Here, apart from deficiencies in the adequacy of representation, the remaining class

---

[94] *Available at* http://www.patrickhruby.net/2014/01/show-us-some-math.html.

[95] Courts recognize this factor to be "more 'toothless' after" *Amchem*.  *In re Prudential Ins.*, 148 F.3d at 321.  *Amchem* held that when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems" because "the proposal" at that point in time "is that there be no trial." *Id.* (citing *Amchem Prods.*, 521 U.S. at 620).  Post-*Amchem* case law thus recognizes that "the manageability inquiry in settlement-only class actions may not be significant."  *Id.* at 321.

certification requirements of Rule 23(a) – numerosity, commonality, and typicality – are all satisfied. Fed. R. Civ. P. 23(a). So too is the predominance requirement. Fed. R. Civ. P. 23(b)(3). In other words, although this factor weighs in favor of *a* settlement, it weighs against ***this Settlement*** because of the deficiencies in the adequacy of representation.

***Numerosity.*** Rule 23(a)(1) permits class action treatment if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The NFL Defendants themselves have conceded that this requirement is "easily met here." Dkt. No. 6073-5 at 48.

***Commonality.*** Commonality – a threshold that "is not high," *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986) – exists if "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2). Numerous issues here "arise[] from a 'common nucleus of operative facts,'" *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 174 (E.D. Pa. 1997), including: the NFL Defendants' knowledge and concealment of the health risks posed by football-related concussions, and the NFL Defendants' representations concerning those known health risks, among others.

***Typicality.*** Typicality, also a "low threshold," *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001), requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Here, for example, all class members share the same claims and suffered the same harm: neurodegenerative diseases resulting from the NFL Defendants' knowledge, concealment, and failure to warn of the severe health risks associated with repetitive blows producing sub-concussive and concussive results.

***Predominance.*** Rule 23(b)(3) class certification also requires that "the questions of law or fact common to class members predominate over any" individual questions, and that a class

action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are satisfied because the crux of class members' claims concerns "the general increased risk of the class suffering medical problems," whether now or "in the future," because of Defendants' intentional or negligent misrepresentations and cover up. *Olden v. LaFarge Corp.*, 383 F.3d 495, 508-09 (6th Cir. 2004) (Rule 23(b)(3)'s predominance requirement satisfied in class action against defendant manufacturing plant where defendant's negligent conduct was the cause of class members' personal injuries and property damages, even where individual damage determinations might vary across members).[96]

### G. The Potential Complexity, Expense, and Likely Duration of the Litigation Weigh Against Approval of the Settlement

The complexity and likely duration of this litigation do not favor settlement. Although "[t]his factor is intended to capture 'the probable costs, in both time and money, of continued litigation,'" *GM Trucks*, 55 F.3d at 811, "all class action law suits involve complex issues, which are costly to resolve and often result in protracted proceedings," *Lachance v. Harrington*, 965 F. Supp. 630, 645 (E.D. Pa. 1997). Thus, courts focus on whether the case "involves unique issues of law or unusual fact patterns unique" to that particular species of litigation. *Id.* at 645-46. The claims presented by the retired players are hornbook tort law, presenting questions of whether the NFL assumed a duty of care, whether the NFL breached that duty, and whether that breach caused injury.

---

[96] Even if individual questions as to damages exist, moreover, this should not affect the predominance inquiry because "[a] district court has the discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010).

To be sure, settlement would forestall the expenses of discovery, trial preparation, and other litigation expenses. *See Cendant Corp. Litig.*, 264 F.3d at 233. But *every* settlement does that. And when a class action ends in an unfair and inadequate settlement, the litigation costs are not "saved." Rather, they are transferred to those class members whose valid claims go uncompensated because their interests were not adequately represented during the negotiation.

## IV. Objectors Should Be Permitted To Object and Appear at the Fairness Hearing Even if They Later Opt Out

The "threshold requirement for exercising the opt-out right is a court's certification of a class" under Rule 23(b)(3). *Newberg on Class Actions* § 9:43 (5th ed.). "[N]o statute or rule requires notice, and an opportunity to opt out, before the certification decision is made; it is a post-certification step." *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 769 (7th Cir. 2003). This Court "conditionally certif[ied] the class for purposes of providing notice, leaving the final certification decision for the subsequent fairness hearing." Dkt. No. 6083 at 12.[97] Thus, until this Court issues a final order certifying a class action under Rule 23(b)(3), Objectors cannot be required to opt out.

Even if the Court's July 7 Order qualifies as a class certification decision that triggers the opt-out period, Objectors nevertheless have standing to object to the Settlement notwithstanding any opt-out request they may later execute. As an initial matter, someone who opts out of the

---

[97] Objectors previously took the position that this Court's July 7 Order was an order granting or denying class certification under Rule 23(f). But the Third Circuit disagreed. Dkt. No. 6166. Because the Third Circuit "never accepted or adopted" that position, Objectors are not bound by that position in later litigation. *See Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 781-82 (3d Cir. 2001). By contrast, the settling parties, having defeated Objectors' petition in the Third Circuit, cannot now urge that this Court's July 7 Order did certify a class. "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.'" *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 121 (3d Cir. 1992).

Settlement may, without any need for court approval, revoke their prior opt out request before the Court enters an order of final approval.  Settlement § 14.2(c).  Thus, until the opt-out request becomes final upon entry of a final approval order, even those who execute an opt-out request retain an interest in the terms of the Settlement agreement because they can, at their own choosing, avail themselves of the benefits of the Settlement – and might well do so if it is improved.

Additionally, a non-settling party, like a party who opts out of a class action, may still object to a class settlement agreement that causes the party legal prejudice.  *See Eichenholtz v. Brennan*, 52 F.3d 478, 482-83 (3d Cir. 1995); *Newberg on Class Actions* § 13:23 (5th ed.) ("While the black letter rule is that opt-outs have no standing to object because they are not impacted, if the settlement does, for some reason, impact the rights of opt-outs, that effect could provide standing to file an objection.").  This settlement would impair Objectors' legal rights in two ways, should they decide to exercise their right to opt out: It impairs their ability to fully litigate their own claims against the NFL, and it potentially deprives them of the ability to challenge a flawed class certification decision.

Further, Objectors' participation in the fairness hearing is their only opportunity to challenge a flawed class certification decision.  As Objectors have noted, adequate representation was lacking here:  The proposed class contains serious, fundamental intra-class conflicts that render class representation inadequate under Rule 23(a)(4).  *See* pp. 20-37, *supra*.  Class members' right "to opt out does not relieve the court of its duty to safeguard the interests of the class and to withhold approval from any settlement that creates conflicts among the class," *GM Trucks*, 55 F.3d at 809.  In *Amchem*, for example, the Supreme Court ruled that the settlement at issue there was defective for lack of adequate representation – even though class members had the right to

opt out. 521 U.S. at 625-27. Objectors are entitled to challenge a decision certifying a conflicted class regardless of whether they opt out. But if an opt-out request prevents Objectors from objecting and participating in the fairness hearing, they face the threat of being unable to challenge that certification decision on appeal. *Cf. Devlin v. Scardelletti*, 536 U.S. 1, 6-7, 14 (2002) (holding objectors have standing and are considered a "party" for purposes of appeal).

The Settlement also hinders Objectors' ability to prosecute their own claims against the NFL because it impairs opt-out class members' ability to retain and hire experts and litigation consultants. The Settlement precludes medical professionals from serving as an expert witness or a consultant for any opt out if the professional holds a position as a BAP Provider, MAF Physician, or serves on the Appeals Advisory Panel or as an Appeals Advisory Panel Consultant. *See* p. 78 n.88, *supra*. The need for such expert testimony in a case such as this is not merely a strategic advantage or a luxury – it is a firm requirement. When "the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson . . . the law requires that expert medical testimony be employed." *Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827, 852 (3d Cir. 1995) (quotation marks omitted). Thus, the Settlement's effect on opt-out class members' ability to retain and hire medical experts has the effect of "strip[ping] [the opt-outs] of a legal claim or cause of action." *Eichenholtz*, 52 F.3d at 482.

## CONCLUSION

The Court should deny final approval of the Settlement. The Court should also permit objectors to appear and be heard at the fairness hearing even if they opt out of the class before final approval.

Date Filed: 10/08/2025

Page: 1598

Document: 20-1

Case: 25-2271

Dated: October ___, 2014

Respectfully submitted,

William T. Hangley
Michele D. Hangley
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square
18th & Cherry Streets
27th Floor
Philadelphia, PA 19103
(215) 496-7001 (telephone)
(215) 568-0300 (facsimile)
whangley@hangley.com
mdh@hangley.com

Linda S. Mullenix
2305 Barton Creek Blvd.
Unit 2
Austin, TX 78735
(512) 263-9330 (telephone)
lmullenix@hotmail.com

Steven F. Molo
Thomas J. Wiegand
Kaitlin R. O'Donnell
MOLOLAMKEN LLP
540 Madison Ave.
New York, NY 10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)
smolo@mololamken.com
twiegand@mololamken.com
kodonnell@mololamken.com

Martin V. Totaro
Eric R. Nitz
MOLOLAMKEN LLP
600 New Hampshire Ave., N.W.
Washington, DC 20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
mtotaro@mololamken.com
enitz@mololamken.com

*Attorneys for Objectors Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal,*
*Roderick "Rock" Cartwright, Jeff Rohrer, and Sean Considine*

Date: _October 6TH_ , 2014

Sean J. Morey
14 Riverside Drive
Princeton, New Jersey 08540

Telephone: (781) 718-3058

Redacted L.R. 5.1.3

Date of Birth: _76_

Date: _October 4_, 2014

_____

Alan Faneca
8112 Spring Hill Farm Drive
McLean, VA 22102

Telephone: _504-234-5967_

Redacted L.R. 5.1.3

Date of Birth: _____

Case: 25-2271     Document: 20-1     Page: 1600     Date Filed: 10/08/2025

Date Filed: 10/08/2025

Page: 1601

Document: 20-1

Case: 25-2271

Date: _____ September 26 2014

Ben Hamilton
5240 Golden Ridge Court
Parker, CO  80134

Telephone: (720) 318-7778

Redacted L.R. 5.1.3

Date of Birth: _____ ____

Date: _September 30_ , 2014

Roderick "Rock" Cartwright
11765 King Rd.
Roswell, GA  30075

Telephone: (202) 714-1921

Date of Birth: Redacted L.R. 5.1.3

Date Filed: 10/08/2025     Page: 1602     Document: 20-1     Case: 25-2271

Date Filed: 10/08/2025

Page: 1603

Document: 20-1

Case: 25-2271

Date: _____9/26/_____, 2014

Robert Royal
43268 Hill Head Place
Leesburg, VA  20176

Telephone: (202) 320-2265

Redacted L.R. 5.1.3

Date of Birth: _

Date: _10/1/14_____, 2014

_____
Jeffrey C. Rohrer
837 Venice Boulevard
Venice Beach, CA  90291

Telephone: (310) 991-2350

<span style="color:red">Redacted L.R. 5.1.3</span>

Date of Birth: _____

Date Filed: 10/08/2025     Page: 1604     Document: 20-1     Case: 25-2271

Date: 10-6-14
2014

_A - WL_

Sean Considine
3064 Water Road
Byron, IL 61010

Telephone: (815) 222-0652

Date of Birth:

Redacted L.R. 5.1.3

# Appendices

## **TABLE OF CONTENTS**

Page

APPENDIX A: BACKGROUND OF OBJECTORS ................................................................ A1

APPENDIX B: CTE AND ITS SYMPTOMS .................................................................. A4

I.     CTE's Symptoms ................................................................................ A5

       A.     Mood and Behavioral Symptoms ................................................ A5

       B.     Cognitive and Motor Symptoms ................................................ A9

II.    Diagnosing CTE ............................................................................ A10

# TABLE OF AUTHORITIES

Page(s)

Baugh *et al.*, *Chronic Traumatic Encephalopathy: Neurodegeneration Following Repetitive Concussive and Subconcussive Brain Trauma*, 6 Brain Imaging & Behavior 244 (2012) ................................................................................................ *passim*

Breslow, *76 of 79 Deceased NFL Players Found to Have Brain Disease*, PBS Frontline (Sept. 30, 2014 2:57 PM ET), http://www.pbs.org/wgbh/pages/frontline/sports/concussion-watch/76-of-79-deceased-nfl-players-found-to-have-brain-disease/ ..............................................................A5

Daneshvar *et al.*, *Long-Term Consequences: Effects on Normal Development Profile After Concussion*, 22 Physical Medicine and Rehabilitation Clinics of North America 683 (2011) ........................................................................A4, A10

Emison, *Will NFL & NFLPA Admit Concussion Link to Domestic Violence?*, The Legal Examiner (Sept. 16, 2014), http://kansascity.legalexaminer.com/?p=3871&preview=true ................................A9

Emery, *How to Diagnose a Battered Brain Before It's Too Late*, The Atlantic (May 8, 2012), http://www.theatlantic.com/health/archive/2012/05/how-to-diagnose-a-battered-brain-before-its-too-late/256877/ ..................................................A4, A10

Frankel, *Real Sports with Bryant Gumbel* (Sept. 23, 2014), http://deadline.com/2014/09/real-sports-with-bryant-gumbel-nfl-domestic-violence-head-injuries-839904/ ........................................................................................A9

Gavett *et al.*, *Chronic Traumatic Encephalopathy: A Potential Late Effect of Sport-Related Concussive and Subconcussive Head Trauma*, 30 Clinical Sports Medicine 179 (2011) ................................................................................................................A5

Hollmer, *Alzheimer's Diagnosis May Gain from PET Imaging of Tau Proteins*, FierceDiagnostics (Sept. 20, 2013), http://www.fiercediagnostics.com/story/alzheimers-diagnosis-may-gain-pet-imaging-tau-proteins/2013-09-20 ........................................................................................A11

Jagust, *Time for Tau*, 137 Brain 1570 (2014) ........................................................................A11

Jordan, *The Clinical Spectrum of Sport-Related Traumatic Brain Injury*, 9 Nature Reviews Neurology 222 (2013) ............................................................A4, A5, A10

Maruyama *et al.*, *Imaging of Tau Pathology in a Tauopathy Mouse Model and in Alzheimer Patients Compared to Normal Controls*, 79 Neuron 1094 (2013) .....................A11

McGrath, *Illinois Eye Institute Project Aims to Identify CTE in the Living*, Chicago Sun-Times (June 14, 2014), http://www.suntimes.com/sports/28048920-419/illinois-eye-institute-project-aims-to-identify-cte-in-the-living.html#.U6CR0fldV8E ..........................A11

McKee *et al.*, *The Spectrum of Disease in Chronic Traumatic Encephalopathy*, 136 Brain 43 (2013) ............................................................................ *passim*

Mitsis *et al.*, *Tauopathy PET and Amyloid PET in the Diagnosis of Chronic Traumatic Encephalopathies*, 4 Translational Psychiatry 1(2014) ..........................................A4, A7, A11

Omalu *et al.*, *Chronic Traumatic Enchepalopathy in a National Football League Player: Part II*, 59 Neurosurgery 1086 (2006) ...........................................................................A7, A8

Penn, *The Violent Life and Sudden Death of Junior Seau*, GQ Magazine (Sept. 2003), http://www.gq.com/entertainment/sports/201309/junior-seau-nfl-death-concussions-brain-injury ........................................................................................................................A7

Saulle & Greenwald, *Chronic Traumatic Encephalopathy: A Review*, Rehabilitation Research & Practice 4 (2012) ....................................................................................A7

Solotaroff, *Dave Duerson: The Ferocious Life and Tragic Death of a Super Bowl Star*, Men's Journal (May 2011), http://www.mensjournal.com/magazine/dave-duerson-the-ferocious-life-and-tragic-death-of-a-super-bowl-star-20121002......................................A8

Seichepine *et al.*, *Profile of Self-Reported Problems with Executive Functioning in College and Professional Football Players*, 30 J. Neurotrauma 1299 (2013)......................A9

*State of Play: Brain Injuries and Diseases of Aging: Hearing Before the S. Special Comm. on Aging*, 113th Cong. 3 (2014), *available at* http://www.aging.senate.gov/imo/media/doc/Stern_6_25_14.pdf ..............................A8, A10

Stern *et al.*, *Clinical Presentation of Chronic Traumatic Encephalopathy*, 81 Neurology 1122 (2013).......................................................................................................................A5

Wagner, *Can Science See Inside an NFL Player's Skull Before It's Too Late?*, Deadspin (June 21, 2012), http://regressing.deadspin.com/5920006/can-science-see-inside-an-nfl-players-skull-before-its-too-late......................................................................A11

Zirin, *Are Head Injuries the Bridge Between the NFL Playing Field and Domestic Violence*, The Nation (Sept. 21, 2014), http://www.thenation.com/blog/181695/are-head-injuries-bridge-between-nfl-playing-field-and-domestic-violence#..............................A9

iii

### Appendix A: Background of Objectors

Objectors are seven former players who each had a significant career in the NFL. They include linemen, as well as so-called "skill position" and special teams players. The most senior began his NFL career in 1982 and the most junior retired in 2012. Three of them played on Super Bowl championship teams.

***Sean Morey*** played for a decade with the New England Patriots, Philadelphia Eagles, Pittsburgh Steelers, Arizona Cardinals, and Barcelona Dragons, an NFL Europe team. An Ivy League stand-out at Brown University, Mr. Morey set multiple collegiate records and graduated with academic honors. In 1999, the New England Patriots selected him as a seventh round draft pick. In 2003, Mr. Morey won the Special Teams MVP award while playing with the Philadelphia Eagles. In 2004, Mr. Morey moved to the Pittsburgh Steelers, where he was captain of the special teams and earned a Super Bowl ring. He eventually moved to the Arizona Cardinals and was named to the 2008 Pro Bowl. Mr. Morey retired just before the 2010 season. While an active player, Mr. Morey co-chaired the NFLPA Mackey White Traumatic Brain Injury Committee and served as a representative in collective bargaining negotiations with the NFL. He is currently head coach of the sprint football team at Princeton University.

***Alan Faneca*** played 13 seasons in the NFL as an offensive lineman. A star at Louisiana State University, Mr. Faneca received consensus All-American honors as a junior and was named a finalist for the prestigious Outland Trophy, which recognizes the best interior lineman in college football. Selected by the Pittsburgh Steelers in the first round of the 1998 NFL draft, Mr. Faneca was named the team's rookie of the year. A fixture on the Steelers' offensive line for ten seasons, Mr. Faneca earned a Super Bowl ring in 2006. In 2007, Steeler fans elected him to the Steelers' 75th Anniversary All Time Team. Mr. Faneca left the Steelers in 2008 for two

A1

seasons with the New York Jets and joined the Arizona Cardinals for his final season in 2010. He was named to the Pro Bowl every year from 2001 through 2009. Since retiring from professional football, Mr. Faneca has been a tireless advocate for epilepsy research.

**Ben Hamilton** played ten seasons in the NFL as an offensive lineman for the Denver Broncos from 2001 until 2009, and for the Seattle Seahawks in 2010. He was a fourth-round draft pick out of the University of Minnesota. He is currently a high school math teacher at a private Christian high school in Colorado.

**Robert Royal** played nine seasons in the NFL from 2002 until 2010 with the Washington Redskins, Buffalo Bills, and Cleveland Browns. An All-SEC tight end at Louisiana State University, Mr. Royal averaged nearly ten yards per reception over the course of his NFL career. Mr. Royal now serves as CEO of the Robert Royal Foundation, an organization he founded to promote childhood health, fitness, and education and to combat youth violence. Mr. Royal is also involved in several private equity ventures.

**Roderick "Rock" Cartwright** played ten seasons in the NFL after a stellar collegiate career at Kansas State University. A fullback and kick return specialist, Mr. Cartwright played with the Washington Redskins from 2002 until 2009 and the Oakland Raiders from 2010 until 2011. In 2006, Mr. Cartwright amassed 1,541 kick-off return yards, setting a Redskins record. Since retiring from the NFL, Mr. Cartwright has actively involved himself in charity work, volunteering at a summer sports camp hosted by the Robert Royal Foundation, among others. Mr. Cartwright is also a manager with Cartwright Energy Partners LLC, an oil production development firm.

**Jeff Rohrer**, a second-round draft pick out of Yale University, played seven seasons in the NFL with the Dallas Cowboys from 1982 until 1989. An outside linebacker, Mr. Rohrer

received All-Ivy League honors and was the Cowboys' second- and third-leading tackler in 1986 and 1987, respectively. Since retiring from the NFL, Mr. Rohrer has worked in the film industry. He is currently a partner and executive producer at Recommended, a Los Angeles-based production company.

*Sean Considine* played eight seasons in the NFL as a strong safety and on special teams from 2005 until 2012. After attending the University of Iowa, Mr. Considine was drafted by the Philadelphia Eagles and played four seasons with them and then two seasons with the Jacksonville Jaguars. In 2011, he signed with the Carolina Panthers, finishing that season with the Arizona Cardinals. Mr. Considine joined the Baltimore Ravens in 2012, earning a Super Bowl ring. Since retiring from professional football, Mr. Considine has been active with numerous charities in his hometown and recently became a small business owner.

### Appendix B: CTE and Its Symptoms

CTE is a distinct neurodegenerative condition caused by repetitive mild traumatic brain injury. The condition results from the build-up in the brain of mis-folded tau protein.[1] More extensive tau build-up indicates a more advanced stage of CTE.[2] CTE typically takes years to manifest itself. Symptoms "usually begin 8-10 years after experiencing repetitive mild traumatic brain injury."[3] And it "spreads slowly over decades."[4] Scientists have repeatedly documented CTE's latency period in individuals who have been exposed to repeated head trauma.[5] CTE's symptoms include significant mood and behavioral changes as well as cognitive and motor deterioration. The symptoms worsen as the disease progresses. At present time, CTE is not readily diagnosed absent a post-mortem brain autopsy. But advances in science are making it

---

[1] Emery, *How to Diagnose a Battered Brain Before It's Too Late*, The Atlantic (May 8, 2012), http://www.theatlantic.com/health/archive/2012/05/how-to-diagnose-a-battered-brain-before-its-too-late/256877/ (attached as Exhibit 71); McKee *et al.*, *The Spectrum of Disease in Chronic Traumatic Encephalopathy*, 136 Brain 43, 45 (2013) ("McKee *et al.* 2013") (attached as Exhibit 5)

[2] Jordan, *The Clinical Spectrum of Sport-Related Traumatic Brain Injury*, 9 Nature Reviews Neurology 222, 225, 227 box 5 (2013) ("CTE is the long-term neurological consequence of repetitive mild TBI.") (attached as Exhibit 6)

[3] McKee *et al.* 2013, *supra*, at 44.

[4] *Id.* at 60.

[5] *See, e.g.*, Mitsis *et al.*, *Tauopathy PET and Amyloid PET in the Diagnosis of Chronic Traumatic Encephalopathies*, 4 Translational Psychiatry 1, 2 (2014) (attached as Exhibit 8) ("CTE begin[s] insidiously" and "typically presents in midlife after a latency period, usually years or decades after exposure to the repetitive trauma."); Baugh *et al.*, *Chronic Traumatic Encephalopathy: Neurodegeneration Following Repetitive Concussive and Subconcussive Brain Trauma*, 6 Brain Imaging & Behavior 244, 245, 246 (2012) ("Baugh *et al.* 2012") ("the symptoms of CTE typically do not present until years after the trauma-producing activity," and CTE has "a slow prolonged course of progression") (attached as Exhibit 17); Daneshvar *et al.*, *Long-Term Consequences: Effects on Normal Development Profile After Concussion*, 22 Physical Medicine and Rehabilitation Clinics of North America 683, 691 (2011) ("Although the disease process likely starts at the time of injury, the initial signs of CTE do not typically manifest until decades later.") (attached as Exhibit 72).

possible to detect CTE earlier. The prevalence of CTE in class members cannot be overstated. The nation's largest brain bank focused on traumatic brain injury has found evidence of CTE in *76 of the 79* former players it examined.[6]

## I. CTE's Symptoms

### A. Mood and Behavioral Symptoms

"Mood and behavior changes are hallmark features of CTE."[7] Mood symptoms "typically include depression, apathy, and irritability, as well as suicidality."[8] Manic behavior, anxiety, and feelings of hopelessness have also been found in players with CTE.[9] Behavioral symptoms are numerous. They "primarily include poor impulse control, with individuals described as having a 'short fuse' or being 'out of control.'"[10] Behavioral changes also result in "[a]ggression and increased violence," as well as "[d]isinhibition."[11]

Behavioral and mood symptoms "are often the earliest findings in CTE."[12] So too are severe headaches.[13] Aggressive tendencies, depression, and explosivity have also been

---

[6] Breslow, *76 of 79 Deceased NFL Players Found to Have Brain Disease*, PBS Frontline (Sept. 30, 2014 2:57 PM ET), http://www.pbs.org/wgbh/pages/frontline/sports/concussion-watch/76-of-79-deceased-nfl-players-found-to-have-brain-disease/ (attached as Exhibit 14).

[7] Baugh *et al.* 2012, *supra*, at 247.

[8] *Id.* at 246; *see also* McKee *et al.* 2013, *supra*, at 44, 52, 55-56, 58-59; Jordan, *supra*, at 226 & Box 3.

[9] Stern *et al.*, *Clinical Presentation of Chronic Traumatic Encephalopathy*, 81 Neurology 1122, 1126 tbl. 3 (2013) ("Stern *et al.* 2013") (attached as Exhibit 12).

[10] Baugh *et al.*, *supra*, at 246.

[11] *Id.*

[12] Jordan, *supra*, at 226; Gavett *et al.*, *Chronic Traumatic Encephalopathy: A Potential Late Effect of Sport-Related Concussive and Subconcussive Head Trauma*, 30 Clinical Sports Medicine 179, 180 (2011) (attached as Exhibit 11) (noting "[i]n some individuals, the early manifestations of CTE affect behavior").

[13] McKee *et al.* 2013, *supra*, at 52, 55; *see also* Baugh *et al.* 2012, *supra*, at 246 ("Early cognitive symptoms primarily include learning and memory impairment as well as executive

A5

documented in cases of Stage I, and suicide was the cause of death in at least one documented case of Stage I CTE in a former NFL player.[14]  Those symptoms have also been reported in Stage II, in addition to mood instability, impulsivity, and suicidality, which was the cause of death in at least one documented case of Stage II.[15]  By the time CTE progresses to Stage III, depression, mood swings, and aggression are "frequently found"; other Stage III symptoms include impulsivity, and apathy.[16]  Suicidality is also present.[17]  For individuals whose CTE has progressed to Stage IV, one study found that nearly one-third experienced suicidal thoughts at some point.[18]

These behavioral and mood symptoms can have a profound and pernicious impact on a person's life – as well as the lives of those around them.  As one study noted, CTE can lead to "worsening of cognitive and social functioning" and can "lead[ ] to poor money management, bankruptcy, social phobias, paranoid ideation, insomnia, poor relationships, divorce, emotional/physical abuse, and substance abuse."[19]  For example, one individual reported to have CTE – a 59-year-old physician who had suffered a traumatic brain injury while skiing – "would

---

dysfunction.  Mood changes typically include depression, apathy, and irritability, as well as suicidality.  The behavioral changes primarily include poor impulse control, with individuals described as having a 'short fuse' or being 'out of control.'  Aggression and increased violence are often experienced.  Disinhibition and problems with substance and other forms of abuse also occur.").

[14] McKee *et al.* 2013, *supra*, at 49 tbl. 2, 52.

[15] *Id.* at 50 tbl. 2, 55.

[16] *Id.* at 56.

[17] *Id.* at 50 tbl. 2.

[18] *Id.* at 59.

[19] Saulle & Greenwald, *Chronic Traumatic Encephalopathy: A Review*, Rehabilitation Research & Practice 4 (2012) (attached as Exhibit 7).

become angry and agitated, and would 'act out' in the presence of his family."[20] "His mood could change rapidly, and he would become withdrawn or belligerent. When in a depressed state he expressed suicidal ideation. According to the family, the patient was less emotionally available for things that had been important to him (for example, family relationships)."[21]

Another reported case of CTE involved a retired NFL football player who "became extremely reclusive and distanced himself from all personal interactions with family and friends."[22] CTE's influence on his behavior and mood pervaded his post-NFL career:

> His business activities and decisions were regarded as extraordinarily risky, ambitious, and rather irrational. In business dealings, he also exhibited sudden and unexpected fluctuations in mood and personality. At some times, he appeared hard working, ambitious, and highly driven, but at others, he exhibited sudden bouts of agitation and irritability with no clear instigator.
>
> . . .
>
> He became progressively incapable of mentally handling very complex rational thoughts in matters of daily living and business. He became increasingly impulsive and paranoid. His erratic behavior continued to worsen; he exhibited disinhibition, began having financial problems, and could not sustain his businesses.[23]

---

[20] Mitsis, *supra*, at 3.

[21] *Id.*

[22] Omalu *et al.*, *Chronic Traumatic Encehpalopathy in a National Football League Player: Part II*, 59 Neurosurgery 1086, 1087 (2006) ("Omalu *et al.* 2006") (attached as Exhibit 57).

[23] *Id.* Such behavior is consistent with that of Dave Duerson and Junior Seau, two other prominent NFL greats diagnosed with CTE, who exhibited similarly reckless behavior and who both ultimately committed suicide in such a way as to preserve their brains for further study. *See* Stern Decl. ¶ 35; Penn, *The Violent Life and Sudden Death of Junior Seau*, GQ Magazine (Sept. 2003), http://www.gq.com/entertainment/sports/201309/junior-seau-nfl-death-concussions-brain-injury (attached as Exhibit 73); Solotaroff, *Dave Duerson: The Ferocious Life and Tragic Death of a Super Bowl Star*, Men's Journal (May 2011), http://www.mensjournal.com/magazine/dave-duerson-the-ferocious-life-and-tragic-death-of-a-super-bowl-star-20121002 (attached as Exhibit 74).

A7

In 2005, he was indicted on charges of arson and wrongful business transactions; he had tried to burn down a factory he owned.[24]

Individuals suffering from CTE are not the only ones negatively affected by these changes in behavior and mood. The "mood and behavioral changes associated with CTE are often the most concerning to family members and caregivers."[25] As Dr. Robert Stern – one of the world's leading experts on CTE who has interviewed the family members of approximately 100 individuals who suffered from CTE – has explained, "the significant changes in mood and behavior relatively early in life . . . can lead to significant distress for the individual with CTE as well as their family, friends, and other loved ones."[26] As Dr. Stern told Congress, "I have learned about the tremendous pain and suffering the family members experienced while their loved one's life was destroyed by the progressive destruction of the brain," by speaking with adult children of CTE victims "whose fathers had dramatic changes in personality, the development of aggressive and out-of-control behavior, and suicidal thoughts."[27]

Indeed, the aggressive and violent behavior that often results from CTE may contribute to – though certainly does not in any way excuse – the high rates of domestic violence among current and former NFL players.[28] As one study found, NFL players are 55.4% more likely to be

---

[24] Omalu *et al.* 2006, *supra*, at 27.

[25] Baugh *et al.* 2012, *supra*, at 247.

[26] *State of Play: Brain Injuries and Diseases of Aging: Hearing Before the S. Special Comm. on Aging*, 113th Cong. 3 (2014), at 3 (written statement of Dr. Robert Stern ("Stern Testimony") (attached as Exhibit 13), http://www.aging.senate.gov/imo/media/doc/Stern_6_25_14.pdf.

[27] *Id.* at 4-5.

[28] *See* Zirin, *Are Head Injuries the Bridge Between the NFL Playing Field and Domestic Violence*, The Nation (Sept. 21, 2014), http://www.thenation.com/blog/181695/are-head-injuries-bridge-between-nfl-playing-field-and-domestic-violence# (attached as Exhibit 75); Emison, *Will NFL & NFLPA Admit Concussion Link to Domestic Violence?*, The Legal Examiner (Sept. 16, 2014), http://kansascity.legalexaminer.com/?p=3871&preview=true (attached as Exhibit 76);

arrested for domestic violence relative to the national average for men ages 25 to 29.[29]  In three

cases of domestic violence committed by an NFL player, the:

> similarities were stunning.  In all three cases, the violence was precipitated either
> by migraine headaches or self-medicating – drugs or alcohol – to manage
> migraines.  In all three cases, the survivors spoke about their NFL husbands
> becoming disoriented or light-sensitive, easily frustrated and quick to anger in
> ways that did not exist earlier in the relationship.[30]

All are symptoms and clinical presentations of CTE.  And "football players may be aware of any

effects they may have on others, but are unable to change their behavior because of weaknesses

in thinking flexibly and inhibition."[31]  That, in turn, might "contribute to depression observed in

former athletes with CTE" because they know what they are doing is harmful but have decreased

ability to control their impulses.[32]

## B.     Cognitive and Motor Symptoms

The symptoms of CTE extend far beyond mood and behavioral disorders.  CTE also

affects cognitive and motor abilities.  CTE's cognitive symptoms typically present as memory

impairment, executive dysfunction (such as problems with planning, organization, multi-tasking,

and judgment), language impairment, visuospatial difficulties, and impaired concentration and

---

Frankel, *Real Sports with Bryant Gumbel* (Sept. 23, 2014), http://deadline.com/2014/09/real-sports-with-bryant-gumbel-nfl-domestic-violence-head-injuries-839904/ (describing domestic violence committed by former NFL player who was ultimately diagnosed with CTE).

[29] Emison, *supra*.

[30] Zirin, *supra*.

[31] Seichepine *et al.*, *Profile of Self-Reported Problems with Executive Functioning in College and Professional Football Players*, 30 J. Neurotrauma 1299, 1302 (2013) (attached as Exhibit 77).

[32] *Id.*

attention.[33]  Although some cognitive symptoms present during the earlier stages of the disease, dementia typically does not occur until the CTE reaches Stage III and Stage IV.[34]

CTE also results in a panoply of movement disorders and motor presentations.  These symptoms include gait disturbance, tremors, muscle weakness, and spasticity.[35] They also include slowed, slurred, and dysarthic speech.[36]  "The severity of the clinical manifestation progresses through the course of the disease as the neurodegeneration increases."[37]  These extreme symptoms are consistent with the "generalized atrophy of the brain with reduced brain weight" that occurs in advanced stages of CTE.[38]

## II.  Diagnosing CTE

While a devastating, degenerative, and distinct medical condition, CTE is not readily diagnosed absent a post-mortem brain autopsy.[39]  Scientific advances, however, are making it possible to detect CTE earlier.[40]  Just a few months ago, researchers at Mt. Sinai in New York City reported a combination of tracers that bind to various brain proteins to diagnose CTE in living patients – one of whom was a former NFL player.[41]  And researchers in Chicago are

---

[33] Jordan, *supra*, at 226 box 3; Baugh *et al.* 2012, *supra*, at 246; Stern Testimony, *supra*, at 5.

[34] McKee *et al.* 2013, *supra*, at 56 tbl. 4, 60.

[35] Jordan, *supra*, at 226, box 3; Stern Testimony, *supra*, at 5; McKee *et al.* 2013, *supra*, at 59; Baugh *et al.* 2012, *supra*, at 247; Daneshvar *et al.*, *supra*, at 691.

[36] Jordan, *supra*, at 226 box 3; Stern Testimony, *supra*, at 5.

[37] Baugh *et al.* 2012, *supra*, at 246.

[38] *Id.* at 247.

[39] Jordan, *supra*, at 226.

[40] *See* Emery, *supra* (noting "pilot studies show promise for [using] diagnostic MRI and MRS scans [to diagnose CTE] as brain imaging technology improves").

[41] Mitsis, *supra*, at 1-2, 7-8.  Other research teams are also working to develop tracers for the tau protein that is indicative of CTE.  *E.g.*, Wagner, *Can Science See Inside an NFL Player's Skull Before It's Too Late?*, Deadspin (June 21, 2012), http://regressing.deadspin.com/5920006/can-

developing a CTE screening test that relies on irregularities in vision, eye movements, and retinal/optic nerve structure as indicators of CTE.[42] Thus, long before the Settlement concludes its 65-year term, it is likely that a large number of living class members will have received a diagnosis of CTE before they die. Even with current technology, doctors can identify likely cases of CTE based on an individual's exposure to repeated concussive and sub-concussive head impacts and symptoms – behavioral/mood, cognitive, and motor – that display during an individual's lifetime and that correlate with a post-mortem diagnosis of CTE.

---

science-see-inside-an-nfl-players-skull-before-its-too-late (attached as Exhibit 78); Maruyama *et al.*, *Imaging of Tau Pathology in a Tauopathy Mouse Model and in Alzheimer Patients Compared to Normal Controls*, 79 Neuron 1094 (2013) (attached as Exhibit 79); Hollmer, *Alzheimer's Diagnosis May Gain from PET Imaging of Tau Proteins*, FierceDiagnostics (Sept. 20, 2013), http://www.fiercediagnostics.com/story/alzheimers-diagnosis-may-gain-pet-imaging-tau-proteins/2013-09-20 (attached as Exhibit 80); Jagust, *Time for Tau*, 137 Brain 1570 (2014) (attached as Exhibit 81).

[42] McGrath, *Illinois Eye Institute Project Aims to Identify CTE in the Living*, Chicago Sun-Times (June 14, 2014 4:35 PM), http://www.suntimes.com/sports/28048920-419/illinois-eye-institute-project-aims-to-identify-cte-in-the-living.html#.U6CR0fldV8E (attached as Exhibit 82).

A11

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2014, I caused the foregoing Objection to the June 25, 2014 Class Action Settlement and supporting documents to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

<div align="center">

/s/ Steven F. Molo
Steven F. Molo

</div>

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>    Plaintiffs,<br><br>      v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>    Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

### DECLARATION OF ERIC R. NITZ

Eric R. Nitz declares, pursuant to 28 U.S.C. § 1746:

1.     I am an associate at MoloLamken LLP.

2.     Sean Morey has retained MoloLamken LLP in connection with the above-captioned matter, and I represent Mr. Morey in this matter.

3.     Alan Faneca has retained MoloLamken LLP in connection with the above-captioned matter, and I represent Mr. Faneca in this matter.

4.     Ben Hamilton has retained MoloLamken LLP in connection with the above-captioned matter, and I represent Mr. Hamilton in this matter.

5.      Sean Considine has retained MoloLamken LLP in connection with the above-captioned matter, and I represent Mr. Considine in this matter.

6.      Robert Royal has retained MoloLamken LLP in connection with the above-captioned matter, and I represent Mr. Royal in this matter.

7.      Roderick "Rock" Cartwright has retained MoloLamken LLP in connection with the above-captioned matter, and I represent Mr. Cartwright in this matter.

8.      Jeff Rohrer has retained MoloLamken LLP in connection with the above-captioned matter, and I represent Mr. Rohrer in this matter.

9.      Attached as Exhibit 1 is a true and correct copy of *NFL Lawsuits for Football Concussions*, Seeger Weiss LLP, http://www.seegerweiss.com/football-concussions/ #ixzz3CByVHxui, accessed on September 9, 2014.

10.     Attached as Exhibit 2 is a true and correct copy of the Irell & Manella LLP press release, *NFL, Retired Players Resolve Concussion Litigation*, http://static.nfl.com/static/content/ public/photo/2013/08/29/0ap2000000235504.pdf, accessed on October 1, 2014.

11.     Attached as Exhibit 3 is a true and correct copy of Schwarz, *Concussion Committee Breaks with Predecessor*, N.Y. Times (June 1, 2010), http://www.nytimes.com/2010/ 06/02/sports/football/02concussion.html, accessed on October 1, 2014.

12.     Attached as Exhibit 4 is a true and correct copy of Schwarz, *N.F.L. Acknowledges Long-Term Concussion Effects,* N.Y. Times (Dec. 20, 2009), http://www.nytimes.com/2009/ 12/21/sports/football/21concussions.html?_r=0, accessed on October 1, 2014.

13.     Attached as Exhibit 5 is a true and correct copy of McKee *et al.*, *The Spectrum of Disease in Chronic Traumatic Encephalopathy*, 136 Brain 43 (2013).

14.     Attached as Exhibit 6 is a true and correct copy of Jordan, *The Clinical Spectrum of Sport-Related Traumatic Brain Injury*, 9 Nature Reviews Neurology 222 (2013).

15.     Attached as Exhibit 7 is a true and correct copy of Saulle & Greenwald, *Chronic Traumatic Encephalopathy: A Review*, Rehabilitation Research & Practice (2012), http://www.hindawi.com/journals/rerp/2012/816069/.

16.     Attached as Exhibit 8 is a true and correct copy of Mitsis *et al.*, *Tauopathy PET and Amyloid PET in the Diagnosis of Chronic Traumatic Encephalopathies*, 4 Translational Psychiatry 1 (2014).

17.     Attached as Exhibit 9 is a true and correct copy of Baugh *et al.*, *Current Understanding of Chronic Traumatic Encephalopathy*, 16 Current Treatment Options in Neurology 306 (2014).

18.     Attached as Exhibit 10 is a true and correct copy of Montenigro *et al.*, *Clinical Subtypes of Chronic Traumatic Encephalopathy*, 6 Alzheimer's Research & Therapy 68 (2014).

19.     Attached as Exhibit 11 is a true and correct copy of Gavett *et al.*, *Chronic Traumatic Encephalopathy: A Potential Late Effect of Sport-Related Concussive and Subconcussive Head Trauma*, 30 Clinical Sports Medicine 179 (2011).

20.     Attached as Exhibit 12 is a true and correct copy of Stern *et al.*, *Clinical Presentation of Chronic Traumatic Encephalopathy*, 81 Neurology 1122 (2013).

21.     Attached as Exhibit 13 is a true and correct copy of *State of Play: Brain Injuries and Diseases of Aging: Hearing Before the S. Special Comm. on Aging*, 113th Cong. (2014).

22.     Attached as Exhibit 14 is a true and correct copy of Breslow, *76 of 79 Deceased NFL Players Found to Have Brain Disease*, PBS Frontline (Sept. 30, 2014), http://www.pbs.org/

wgbh/pages/frontline/sports/concussion-watch/76-of-79-deceased-nfl-players-found-to-have-brain-disease/, accessed on October 3, 2014.

23.     Attached as Exhibit 15 is a true and correct copy of Schwarz, *Expert Ties Ex-Player's Suicide to Brain Damage*, N.Y. Times (Jan. 18, 2007), http://www.nytimes.com/2007/01/18/sports/football/18waters.html?pagewanted=all&_r=0, accessed on October 6, 2014.

24.     Attached as Exhibit 16 is a true and correct copy of National Institute for Occupational Safety and Health, *Brain and Nervous System Disorders Among NFL Players* (Jan. 2013), http://www.cdc.gov/niosh/pgms/worknotify/pdfs/NFL_Notification_02.pdf, accessed on October 1, 2014.

25.     Attached as Exhibit 17 is a true and correct copy of Baugh *et al.*, *Chronic Traumatic Encephalopathy: Neurodegeneration Following Repetitive Concussive and Subconcussive Brain Trauma*, 6 Brain Imaging & Behavior 244 (2012).

26.     Attached as Exhibit 18 is a true and correct copy of Lehman *et al.*, *Neurodegenerative Causes of Death Among Retired National Football League Players*, 79 Neurology 1970 (2012).

27.     Attached as Exhibit 19 is a true and correct copy of Borden, *Brain Trauma Extends Reach into Soccer*, N.Y. Times (Sept. 23, 2014), http://www.nytimes.com/2014/09/24/sports/soccer/soccer-star-bellini-is-found-to-have-had-brain-trauma.html?_r=1, accessed on October 1, 2014.

28.     Attached as Exhibit 20 is a true and correct copy of Toups, *How Many Times Will You Crash Your Car?*, Forbes (July 27, 2011 6:50 PM), http://www.forbes.com/sites/moneybuilder/2011/07/27/how-many-times-will-you-crash-your-car/, accessed on October 1, 2014.

29.     Attached as Exhibit 21 is a true and correct copy of Burke *et al.*, *Traumatic Brain Injury May Be an Independent Risk Factor for Stroke*, 81 Neurology 1 (2013).

30.     Attached as Exhibit 22 is a true and correct copy of Bigler, *Neuropsychology and Clinical Neuroscience of Persistent Post-Concussive Syndrome*, 14 J. Int'l Neurpsychological Soc'y 1 (2008).

31.     Attached as Exhibit 23 is a true and correct copy of Casson *et al.*, *Is There Chronic Brain Damage in Retired NFL Players? Neuroradiology, Neuropsychology, and Neurology Examinations of 45 Retired Players*, 6 Sports Health 384 (2014).

32.     Attached as Exhibit 24 is a true and correct copy of Kakar *et al.*, *Cerebral Microbleeds: A New Dilemma in Stroke Medicine*, 1 J. Royal Soc'y of Med. Cardiovascular Disease 1, (2012).

33.     Attached as Exhibit 25 is a true and correct copy of Nicholson, *NFL Europe's Injured Flown to Birmingham*, Birmingham Business Journal (July 1, 2001 11:00 PM CDT), http://www.bizjournals.com/birmingham/stories/2001/07/02/story2.html?page=all, accessed on October 1, 2014.

34.     Attached as Exhibit 26 is a true and correct copy of Battista, *A Player's Concussion, a Family's Ordeal*, N.Y. Times (Sept. 15, 2012), http://www.nytimes.com/2012/09/16/sports/football/former-nfl-player-mitch-white-learns-to-adjust-to-postconcussion-life.html?pagewanted=all, accessed on October 1, 2014.

35.     Attached as Exhibit 27 is a true and correct copy of Belson, *For Retirees, Decision on Concussion Settlement Will Not Be a Simple One*, N.Y. Times (July 22, 2014), http://www.nytimes.com/2014/07/23/sports/football/nfl-concussion-settlement-divides-former-players.html?_r=0, accessed on October 3, 2014.

5

36.    Attached as Exhibit 28 is a true and correct copy of Steele, *Players Wrong on Key Factor in NFL Concussion Settlement*, Sporting News (July 14, 2014), http://www.sporting news.com/nfl/story/2014-07-14/nfl-concussions-lawsuit-cte-symptoms-eligible-settlement-tony-dorsett-wycheck-seeger, accessed on October 1, 2014.

37.    Attached as Exhibit 29 is a true and correct copy of *The NFL CTE Question*, The Pro Football Concussion Report (July 22, 2014), http://profootballconcussions.com/the-nfl-cte-question, accessed on October 1, 2014.

38.    Attached as Exhibit 30 is a true and correct copy of Fainaru-Wada & Fainaru, *Seaus to Opt Out of Concussion Deal* (Sept. 3, 2014), http://abcnews.go.com/Sports/seaus-opt-concussion-deal/story?id=25230257, accessed on October 1, 2014.

39.    Attached as Exhibit 31 is a true and correct copy of DeGory, *New Concussion Settlement a Win-Win*, SportsIllustrated.com (June 26, 2014), http://mmqb.si.com/2014/06/26/new-concussion-settlement-kevin-turner, accessed on October 1, 2014.

40.    Attached as Exhibit 32 is a true and correct copy of Mihoces, *NFL Reaches Concussion Settlement* (Aug. 29, 2013), http://www.usatoday.com/story/sports/nfl/2013/08/29/nfl-concussion-settlement-judge-anita-brody-tony-dorsett-jim-mcmahon-junior-seau/2727483, accessed on October 1, 2014.

41.    Attached as Exhibit 33 is a true and correct copy of Hruby, *Cutting them Short* (July 18, 2014), http://www.sportsonearth.com/article/85045740/nfl-concussion-settlement-cuts-cte-coverage-short-patrick-hruby, accessed on October 1, 2014.

42.    Attached as Exhibit 34 is a true and correct copy of Fainaru & Fainaru-Wada, *Brain Impairment Begins Younger* (Sept. 13, 2014), http://espn.go.com/nfl/story/_/id/11513442/data-estimates-3-10-nfl-retirees-face-cognitive-woes, accessed on October 1, 2014.

43.     Attached as Exhibit 35 is a true and correct copy of Dale, *NFL: Nearly Three in 10 Ex-Players Will Develop Conditions*, Associated Press (Sept. 12, 2014), *republished at* http://online.wsj.com/articles/nfl-nearly-three-in-10-ex-players-will-develop-debilitating-brain-conditions-1410571935, accessed on October 1, 2014.

44.     Attached as Exhibit 36 is a true and correct copy of Dale, *NFL: Nearly Three in 10 Ex-Players Will Develop Conditions*, Associated Press (Sept. 12, 2014), *republished at* http://www.philly.com/philly/blogs/sports/eagles/20140912_ap_0487fc0938bf47d9836b379dee6f9aca.html, accessed on October 1, 2014.

45.     Attached as Exhibit 37 is a true and correct copy of Dale, *NFL: Nearly Three in 10 Ex-Players Will Develop Conditions*, Associated Press (Sept. 12, 2014), *republished at* http://www.huffingtonpost.com/2014/09/12/nfl-players-alzheimers-dementia_n_5812504.html, accessed on October 3, 2014.

46.     Attached as Exhibit 38 is a true and correct copy of Dale, *NFL: Nearly Three in 10 Ex-Players Will Develop Conditions*, Associated Press (Sept. 12, 2014), *republished at* http://www.foxsports.com/nfl/story/nfl-players-lawyers-detail-lasting-effects-of-concussions-091214, accessed on October 1, 2014.

47.     Attached as Exhibit 39 is a true and correct copy of Dale, *NFL: Nearly Three in 10 Ex-Players Will Develop Conditions*, Associated Press (Sept. 12, 2014), *republished at* http://www.dallasnews.com/sports/dallas-cowboys/headlines/20140912-players-lawyers-data-estimates-3-in-10-nfl-retirees-face-cognitive-woes.ece, accessed on October 1, 2014.

48.     Attached as Exhibit 40 is a true and correct copy of Dale, *NFL: Nearly Three in 10 Ex-Players Will Develop Conditions*, Associated Press (Sept. 12, 2014), *republished at* http://www.startribune.com/lifestyle/health/274914621.html, accessed on October 1, 2014.

49.    Attached as Exhibit 41 is a true and correct copy of Schrotenboer, *NFL Takes Aim at $25 Billion, But At What Price?*, USA Today (Feb. 5, 2014), http://www.usatoday.com/story/sports/nfl/super/2014/01/30/super-bowl-nfl-revenue-denver-broncos-seattle-seahawks/5061197/, accessed on October 1, 2014.

50.    Attached as Exhibit 42 is a true and correct copy of Wilson, *NFL Paid Roger Goodell $35.1 Million Last Year*, CBSSports.com (Feb. 14, 2014 3:25 PM), http://www.cbssports.com/nfl/eye-on-football/24443392/report-nfl-paid-roger-goodell-351-million-last-year, accessed on October 1, 2014.

51.    Attached as Exhibit 43 is a true and correct copy of Futterman *et al.*, *NFL: The League that Runs TV*, The Wall Street Journal (Dec. 15, 2011), http://online.wsj.com/article/SB10001424052970204026804577098774037075832.html, accessed on October 1, 2014.

52.    Attached as Exhibit 44 is a true and correct copy of Kaplan, *Goodell Sets Revenue Goal of $25 Billion by 2027 for NFL*, Sports Business Journal (Apr. 5, 2010), http://www.sportsbusinessdaily.com/Journal/Issues/2010/04/20100405/This-WeeksNews/Goodell-Sets-Revenue-Goal-Of-$25B-By-2027-For-NFL.aspx, accessed on October 1, 2014.

53.    Attached as Exhibit 45 is a true and correct copy of Banks, *Former Players: Devil Is in the Details with NFL Concussion Settlement*, SI.com (Aug. 29, 2013 5:57 PM), http://www.si.com/nfl/2013/08/29/nfl-concussion-lawsuit-settlement-player-reaction-kevin-mawae, accessed on October 1, 2014.

54.    Attached as Exhibit 46 is a true and correct copy of Futterman & Clark, *Deal in Concussion Suit Gives NFL a Big Victory*, The Wall Street Journal (Aug. 29, 2013), online.wsj.com/article/SB10001424127887324463604579042980915590474.html, accessed on October 1, 2014.

8

55.     Attached as Exhibit 47 is a true and correct copy of ESPN.com, *Reaction to the Concussion Deal* (Aug. 30, 2013), espn.go.com/nfl/story/_/id/9612672/reaction-nfl-concussion-settlement, accessed on October 1, 2014.

56.     Attached as Exhibit 48 is a true and correct copy of Wolfley, *Dorsey Levens Rips Settlement of Concussion Lawsuit Against NFL*, Milwaukee Journal Sentinel (Sept. 18, 2013), http://www.jsonline.com/sports/dorsey-levens-rips-settlement-of-concussion-lawsuit-against-nfl-b99101255z1-224335851.html, accessed on October 1, 2014.

57.     Attached as Exhibit 49 is a true and correct copy of Moran, *Seau Family Says "No" to NFL Settlement*, U-T San Diego (Sept. 3, 2014 6:19 PM), http://www.utsandiego.com/news/2014/sep/03/seau-family-says-no-to-nfl-settlement/, accessed on October 1, 2014.

58.     Attached as Exhibit 50 is a true and correct copy of Fenno, *Hall of Famer Joe DeLamielleure Will Object to NFL Concussion Deal*, L.A. Times (Sept. 4, 2014  3:50 PM), http://www.latimes.com/sports/sportsnow/la-sp-sn-nfl-concussion-deal-joe-delamielleure-20140904-story.html, accessed on October 1, 2014.

59.     Attached as Exhibit 51 is a true and correct copy of Busse & Silverman, *Electroencephalographic Changes in Professional Boxers*, 149 J.A.M.A. 1522 (1952).

60.     Attached as Exhibit 52 is a true and correct copy of Martland, *Punch Drunk*, 91 J.A.M.A. 1103 (1928).

61.     Attached as Exhibit 53 is a true and correct copy of McKee *et al.*, *Chronic Traumatic Encephalopathy in Athletes: Progressive Tauopathy After Repetitive Head Injury*, 68 J. Neuropathology & Experimental Neurology 709 (2009).

62.     Attached as Exhibit 54 is a true and correct copy of Cantu, *Chronic Traumatic Encephalopathy in the National Football League Player*, 61 Neurosurgery 223 (2007).

9

63.     Attached as Exhibit 55 is a true and correct copy of Guskiewicz *et al.*, *Association Between Recurrent Concussion and Late-Life Cognitive Impairment in Retired Professional Football Players*, 57 Neurosurgery 719 (2005).

64.     Attached as Exhibit 56 is a true and correct copy of Omalu *et al.*, *Chronic Traumatic Encephalopahty in a National Football League Player*, 57 Neurosurgery 128 (2005).

65.     Attached as Exhibit 57 is a true and correct copy of Omalu *et al.*, *Chronic Traumatic Encephalopathy in a National Football League Player: Part II*, 59 Neurosurgery 1086 (2006).

66.     Attached as Exhibit 58 is a true and correct copy of CNN Library, *NFL Concussions Fast Facts*, CNN U.S. (July 21, 2014), http://www.cnn.com/2013/08/30/us/nfl-concussions-fast-facts/, accessed on October 2, 2014.

67.     Attached as Exhibit 59 is a true and correct copy of Pellman *et al.*, *Concussion in Professional Football: Summary of the Research Conducted by the National Football League's Committee on Mild Traumatic Brain Injury*, 21 Neurosurgery Focus 1 (2006).

68.     Attached as Exhibit 60 is a true and correct copy of Hruby, *The Case Against the NFL*, The Post Game (Feb. 29, 2012), www.thepostgame.com/blog/hruby-tuesday/201202/case-against-nfl, accessed on October 2, 2014.

69.     Attached as Exhibit 61 is a true and correct copy of National Football League, *NFL Outlines for Players Steps Taken to Address Concussions*, NFL.com (Aug. 14, 2007), http://www.nfl.com/news/story/09000d5d8017cc67/article/nfl-outlines-for-players-steps-taken-to-address-concussions, accessed on October 2, 2014.

70.     Attached as Exhibit 62 is a true and correct copy of Ayala *et al.*, *Racial/Ethnic Disparities in Mortality by Stroke Subtype in the United States, 1995-1996*, 154 Am. J. of Epidemiology 1057 (2001).

71.     Attached as Exhibit 63 is a true and correct copy of Zorumski & Rubin, *The Financial Cost of Dementia*, Psychology Today (Oct. 10, 2013), http://www.psychologytoday. com/blog/demystifying-psychiatry/201310/the-financia-cost-dementia, accessed on October 2, 2014.

72.     Attached as Exhibit 64 is a true and correct copy of NFL.com, *Players*, http://www.nfl.com/player/georgehalas/2515602/profile (entry for "George Halas"), accessed October 5, 2014.

73.     Attached as Exhibit 65 is a true and correct copy of Torre, *How (and Why) Athletes Go Broke*, Sports Illustrated (Mar. 23, 2009), http://sportsillustrated.cnn.com/vault/ 2009/03/23/105789480/how-and-why-athletes-go-broke, accessed on October 2, 2014.

74.     Attached as Exhibit 66 is a true and correct copy of Halchin, *Former NFL Players: Disabilities, Benefits, and Related Issues*, Congressional Research Service 82 (2008).

75.     Attached as Exhibit 67 is a true and correct copy of Rosenberg, *"Permanently Disabled," Harrison Fighting for Benefits NFL Took Away*, Sports Illustrated (Jan. 29, 2014), http://www.si.com/nfl/2014/01/29/dwight-harrison-nfl-pension, accessed on October 2, 2014.

76.     Attached as Exhibit 68 is a true and correct copy of O'Keefe, *Still Plenty of Skeptics After NFL Reaches New Deal with Players to Settle Concussion-Related Lawsuit*, New York Daily News (June 28, 2014 11:40 AM), http://www.nydailynews.com/sports/football/ score-nfl-deny-issues-article-1.1847588, accessed on October 2, 2014.

11

77.     Attached as Exhibit 69 is a true and correct copy of Fainaru & Fainaru-Wada, *Lawyers Fight Over Settlement Details*, ESPN.com (Jan. 24, 2014, 8:18 PM), http://espn.go.com/espn/otl/story/_/id/10346091/lead-negotiator-facing-strong-opposition-concussion-settlement, accessed on October 2, 2014.

78.     Attached as Exhibit 70 is a true and correct copy of Hruby, *Show Us Some Math*, Sportsonearth.com (Jan. 20, 2014), http://www.patrickhruby.net/2014/01/show-us-some-math.html, accessed on October 1, 2014.

79.     Attached as Exhibit 71 is a true and correct copy of Emery, *How to Diagnose a Battered Brain Before It's Too Late*, The Atlantic (May 8, 2012), http://www.theatlantic.com/health/archive/2012/05/how-to-diagnose-a-battered-brain-before-its-too-late/256877/, accessed on October 1, 2014.

80.     Attached as Exhibit 72 is a true and correct copy of Daneshvar *et al.*, *Long-Term Consequences: Effects on Normal Development Profile After Concussion*, 22 Physical Medicine & Rehabilitation Clinics of N. Am. 683 (2011).

81.     Attached as Exhibit 73 is a true and correct copy of Penn, *The Violent Life and Sudden Death of Junior Seau*, GQ Magazine (Sept. 2003), http://www.gq.com/entertainment/sports/201309/junior-seau-nfl-death-concussions-brain-injury, accessed on October 1, 2014.

82.     Attached as Exhibit 74 is a true and correct copy of Solotaroff, *Dave Duerson: The Ferocious Life and Tragic Death of a Super Bowl Star*, Men's Journal (May 2011), http://www.mensjournal.com/magazine/dave-duerson-the-ferocious-life-and-tragic-death-of-a-super-bowl-star-20121002, accessed on October 1, 2014.

83.     Attached as Exhibit 75 is a true and correct copy of Zirin, *Are Head Injuries the Bridge Between the NFL Playing Field and Domestic Violence*, The Nation (Sept. 21, 2014 7:13 PM ET), http://www.thenation.com/blog/181695/are-head-injuries-bridge-between-nfl-playing-field-and-domestic-violence#, accessed on October 1, 2014.

84.     Attached as Exhibit 76 is a true and correct copy of Emison, *Will NFL & NFLPA Admit Concussion Link to Domestic Violence?*, The Legal Examiner (Sept. 16, 2014 8:32 AM), http://kansascity.legalexaminer.com/?p=3871&preview=true, accessed on October 1, 2014.

85.     Attached as Exhibit 77 is a true and correct copy of Seichepine *et al.*, *Profile of Self-Reported Problems with Executive Functioning in College and Professional Football Players*, 30 J. Neurotrauma 1299 (2013).

86.     Attached as Exhibit 78 is a true and correct copy of Wagner, *Can Science See Inside an NFL Player's Skull Before It's Too Late?*, Deadspin (June 21, 2012 9:00 AM), http://regressing.deadspin.com/5920006/can-science-see-inside-an-nfl-players-skull-before-its-too-late, accessed on October 1, 2014.

87.     Attached as Exhibit 79 is a true and correct copy of Maruyama *et al.*, *Imaging of Tau Pathology in a Tauopathy Mouse Model and in Alzheimer Patients Compared to Normal Controls*, 79 Neuron 1094 (2013).

88.     Attached as Exhibit 80 is a true and correct copy of Hollmer, *Alzheimer's Diagnosis May Gain from PET Imaging of Tau Proteins*, FierceDiagnostics (Sept. 20, 2013), http://www.fiercediagnostics.com/story/alzheimers-diagnosis-may-gain-pet-imaging-tau-proteins/2013-09-20, accessed on October 1, 2014.

89.     Attached as Exhibit 81 is a true and correct copy of Jagust, *Time for Tau*, 137 Brain 1570 (2014).

90.     Attached as Exhibit 82 is a true and correct copy of McGrath, *Illinois Eye Institute Project Aims to Identify CTE in the Living*, Chicago Sun-Times (June 14, 2014 4:35 PM),     http://www.suntimes.com/sports/28048920-419/illinois-eye-institute-project-aims-to-identify-cte-in-the-living.html#.U6CR0fldV8E, accessed on October 1, 2014.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 6, 2014

Eric R. Nitz

# EXHIBIT 1



## SEEGERWEISS LLP

Call Us Toll Free:
## 888-584-0411

HOME      OUR FIRM      ATTORNEYS      PRACTICES      NEWS      BLOG      OUR OFFICES      CONTACT US

--- | - | - | Google + | -

## Up-to-Date Information on NFL Football Concussions

After years of denying the scientific evidence that links repeated football concussions with long-term brain damage, the NFL is currently in the hot seat. A flood of multi-district NFL lawsuits are finally making this powerful organization take notice.

As Plaintiffs' Co-Lead Counsel, we deeply care about this topic—and about keeping the public up-to-date on the latest findings and pursuit of justice. We encourage those of you who would like to simply stay abreast of this volatile topic or those who want helpful information for a possible lawsuit, to bookmark this page.

### What's Currently Happening?

- Thousands of players who have suffered football concussions are filing NFL lawsuits.

- Christopher A. Seeger has been appointed as Co-Lead of the multi-district litigation (MDL) effort. More

### In the News

- Recent news has been flooded with terrible stories of former football players who have suffered tragic ends.

- In 1994, The National Football League created the Mild Traumatic Brain Injury Committee to investigate the effects of concussions in football.

- On December 6, 2011, Seeger Weiss reports representing 11 former NFL players suffering from football concussion-related health issues. New release

- On December 21, 2011, the NFL reported that an independent trainer would be at each NFL game to watch for potential football concussions. Read more

### An Act of Negligence

While knowing the real truth behind concussions in football, the NFL concealed the truth to profit at the expense of the players' health. The damage caused by this fraud and negligence has caused painful and irreversible damage to many players and their families.

The NFL, which formed its own institute to study the effects of football concussions, is believed to have misled players about the harms of football concussions for their own financial gain. A culture was created where players were encouraged by coaches and franchises to play hurt and to contribute at any possible cost. Repeated football concussions have serious long-term consequences and have negatively affected the quality of life of many former players.

### Link to CTE and Alzheimer's

Frequent brain trauma or multiple football concussions, at the rate of former professional football players who are filing NFL lawsuits, has shown to cause serious mental health problems. Thousands of football players, many of whom are thought to have suffered more than one hundred mild traumatic brain injuries, are dealing with horrible

Don't Suffer Alone

Are you a professional football player who has suffered from a concussion-related disease?

## Free Case Evaluation

Recipient of The National Law Journal's Plaintiffs Hot List

Full Name

Email | Phone

Have you experienced health problems due to a NFL concussion?
○ Yes  ○ No

Please provide any other information you would like us to know in the box below

Align the slider to the arrow





Send








and debilitating symptoms.

Multiple medical studies have found direct correlation between football concussions and suffering from symptoms of chronic traumatic encephalopathy, also known as CTE. CTE is believed to be the most serious and harmful disease that results from NFL and concussions. CTE is a progressive degenerative disease that causes damage to the brain tissue and the accumulation of Tau Proteins. Tau proteins aid in the onset of dementia and have been linked to the development of Alzheimer's disease. Symptoms of CTE include:

- Dementia
- Memory loss
- Depression
- Aggression
- And difficulty controlling impulses

## Some Players Experienced More Than 100 Mild Brain Injuries

Football concussions interfere with normal brain function and cause a variety of physical, cognitive, and emotional symptoms. The most common and immediate symptoms of a concussion are a headache, dizziness, vomiting, and temporary breakdown in motor coordination.

Confusion, disorientation, and difficulty focusing can also be NFL and concussion related side-effects as well.

When a concussion in football occurs, the force is strong enough that the cerebrospinal fluid (which protects each of our brains) cannot protect the brain from absorbing the force. A football concussion doesn't necessarily occur from direct trauma to the head, but can also result from an impulsive force like whiplash. Diagnosis of a football concussion is based on a combination of physical and neurological examinations.

Seeger Weiss LLP

Seeger Weiss – 77 Water Street, 26th Floor New York, NY 10004 888-584-0411 | Contact Us | Site Map | Privacy Policy

  

EXHIBIT 2



**ALTERNATIVE
DISPUTE
RESOLUTION
CENTER**

Irell & Manella LLP
840 Newport Center Drive
Suite 450
Newport Beach, CA 92660-6324

Telephone: (949) 760-5288
Fax: (949) 760-5289

## NFL, RETIRED PLAYERS RESOLVE CONCUSSION
## LITIGATION; COURT-APPOINTED MEDIATOR
## HAILS "HISTORIC" AGREEMENT

### Thousands of Retirees and Families to Benefit

### Medical Testing; Research; Compensation and
### Promotion of Safety All Part of Agreement

Former United States District Judge Layn Phillips, the court-appointed mediator in the consolidated concussion-related lawsuits brought by more than 4,500 retired football players against the National Football League and others, announced today that the parties had reached an agreement that would end the litigation against the NFL and NFL Properties and provide medical and other benefits, as well as compensation, to qualifying injured players or their families.

The agreement came after nearly two months of intensive negotiations under the supervision of Judge Phillips.  It will be submitted for approval to United States District Judge Anita B. Brody, who is presiding over these cases in federal court in Philadelphia.  Under the agreement, the NFL and NFL Properties will contribute $765 million to provide medical benefits and injury compensation for retired NFL football players, fund medical and safety research, and cover litigation expenses.  Attorneys' fees, to be approved by the district court, will be paid in addition to the settlement amount.

"This is a historic agreement, one that will make sure that former NFL players who need and deserve compensation will receive it, and that will promote safety for players at all levels of football," said Judge Phillips.  "Rather than litigate literally thousands of complex individual claims over many years, the parties have reached an agreement that, if approved, will provide relief and support where it is needed at a time when it is most needed.  I am deeply grateful to Judge Brody for appointing me as mediator and offering me the opportunity to work on such an important and interesting matter."

"This agreement lets us help those who need it most and continue our work to make the game safer for current and future players.  Commissioner Goodell and every owner gave the legal team the same direction:  do the right thing for the game and for the men who played it," said NFL Executive Vice President Jeffrey Pash.  "We thought it was critical to

2848041

**Alternative Dispute Resolution Center**
Irell & Manella LLP

get more help to players and families who deserve it rather than spend many years and millions of dollars on litigation. This is an important step that builds on the significant changes we've made in recent years to make the game safer, and we will continue our work to better the long-term health and well-being of NFL players."

"This is an extraordinary agreement that will provide immediate care and support to retired players and their families," said lead plaintiffs' attorney Christopher Seeger of Seeger Weiss LLP. "This agreement will get help quickly to the men who suffered neurological injuries. It will do so faster and at far less cost, both financially and emotionally, than could have ever been accomplished by continuing to litigate."

"The benefits in this agreement will make a difference not only for me and my family, but also for thousands of my football brothers who either need help today or may need help someday in the future," said Kevin Turner, a former running back for the Philadelphia Eagles and New England Patriots. Turner, who has been diagnosed with ALS, will serve as the lead plaintiff for one group of retired players. "I am grateful that the NFL is making a commitment to the men who made the game what it is today."

Once final documentation is completed, the settlement will be filed with Judge Brody, who will then schedule a hearing to consider whether to grant preliminary approval to the agreement. If the settlement receives preliminary approval, Judge Brody will direct the parties to distribute notice to the retired players. After giving retired players an opportunity to file objections to the settlement, Judge Brody will hold a hearing to consider whether to grant final approval. Judge Brody is expected to issue the precise schedule within a few weeks.

"Approval of the settlement will require Judge Brody to determine that it is fair, reasonable, and adequate in light of the claims and defenses, and the expense, uncertainty and time inherent in litigating the claims, particularly given the benefits provided by the agreement," said Judge Phillips. "There is no question that this settlement will provide benefits much sooner, and at much less cost, for many more retirees, than would have been achieved through extended litigation. For these and other reasons, I will strongly endorse this settlement in my report to Judge Brody."

A summary of the key terms of the agreement is attached.

**ALTERNATIVE
DISPUTE
RESOLUTION
CENTER**

Irell & Manella LLP
840 Newport Center Drive
Suite 450
Newport Beach, CA 92660-6324

Telephone: (949) 760-5288
Fax: (949) 760-5289



## <u>Principal Terms of NFL Litigation Settlement</u>

**<u>Class Settlement</u>** – The settlement will include all players who have retired as of the date on which the Court grants preliminary approval to the settlement agreement, their authorized representatives, or family members (in the case of a former player who is deceased).

**<u>No Admissions of Liability or Weakness of Claims</u>** – The settlement does not represent, and cannot be considered, an admission by the NFL of liability, or an admission that plaintiffs' injuries were caused by football. Nor is it an acknowledgement by the plaintiffs of any deficiency in their case. Instead, it represents a decision by both sides to compromise their claims and defenses, and to devote their resources to benefit retired players and their families, rather than litigate these cases.

**<u>Payments</u>** – The NFL and NFL Properties will make payments in connection with the settlement as follows:

(A) Baseline medical exams, the cost of which will be capped at $75 million;

(B) A separate fund of $675 million to compensate former players who have suffered cognitive injury or their families;

(C) A separate research and education fund of $10 million;

(D) The costs of notice to the members of the class, which will not exceed $4 million;

(E) $2 million, representing one-half of the compensation of the Settlement Administrator for a period of 20 years; and

(F) Legal fees and litigation expenses to the plaintiffs' counsel, which amounts will be set by the District Court.

2848041

**Timing of Payments** – If the agreement receives preliminary approval from the District Court, the NFL will pay the costs of preparing and distributing notice to the class members (up to $4 million).  If the settlement receives final approval, and any appeals have been concluded, the NFL will pay approximately 50 percent of the settlement amount over three years, and the balance over the next 17 years.

**Baseline Medical Examinations** – Eligible retired players may receive a Baseline Medical Assessment, the results of which will be used to establish a qualifying diagnosis, either now or at a point in the future.  The baseline examination program will operate for a period of 10 years.  After 10 years, any funds allocated for this program that have not been spent will be added to the fund for payment of monetary awards.

**Injury Compensation Fund** – The fund of at least $675 million will be available to pay monetary awards to retired players who present medical evidence of severe cognitive impairment, dementia, Alzheimer's, ALS, or to their families.  The precise amount of compensation will be based upon the specific diagnosis, as well as other factors including age, number of seasons played in the NFL, and other relevant medical conditions.  These determinations will be made by independent doctors working with settlement administrators appointed by the District Court.

If a retired player's condition worsens over time, he may apply for a supplemental payment.

In the event the Injury Compensation Fund ultimately is deemed insufficient to pay all approved claims, the Settlement Administrator will make a recommendation to the Court that the NFL make an additional, one-time contribution to the Injury Compensation Fund up to a maximum amount of $37.5 million.

**Research and Education Fund** – The NFL will allocate $10 million toward medical, safety, and injury-prevention research, and toward educating retired players on NFL benefits programs.  A portion of this fund will be used to support joint efforts by the NFL and retired NFL players to promote education and safety initiatives in youth football.

**Other Benefits** – No retired player will forfeit or become ineligible for any other benefits provided by the current Collective Bargaining Agreement between the NFL and the NFL Players Association.

**Schedule for Further Activity** – The parties will prepare and file complete agreements with Judge Brody in Philadelphia, who will then schedule a hearing to consider whether to grant preliminary approval to the settlement.  Assuming preliminary approval is granted, the Judge will direct that notice be given to the retired players and will schedule a hearing to consider whether to grant final approval to the settlement.



**A**LTERNATIVE
**D**ISPUTE
**R**ESOLUTION
  CENTER

Irell & Manella LLP
840 Newport Center Drive
Suite 450
Newport Beach, CA 92660-6324

Telephone: (949) 760-5288
Fax: (949) 760-5289

## Q & A with Judge Layn Phillips on NFL Litigation Settlement

### Who will receive the money and how?

Retired players will have the opportunity to participate in baseline medical exams. Players
with demonstrated cognitive injury, now or in the future, will be able to obtain a monetary
award. The decisions regarding who qualifies and the amount of the award will be made by
independent doctors and fund administrators agreed upon by the parties, and the federal
court in Philadelphia will retain ultimate oversight.

### How will the medical monitoring work?

A nationwide network of health care providers will be available to give the baseline exams
to retired players. The goal will be to make the exam sites convenient so that as many
retirees as possible can take advantage of the potential medical benefits.

### Is this an acknowledgement by the NFL that it hid information on long-term effects?

No. An agreement doesn't imply anything about either side's position. It doesn't mean that
the NFL hid information or did what the plaintiffs claimed in their complaint. It does not
mean that the plaintiffs' injuries were caused by football or that the plaintiffs would have
been able to prove that their injuries were caused by football. On the other hand, it doesn't
mean that the plaintiffs wouldn't have been able to prove their case. The settlement means
that the parties reached an agreement to put litigation behind them, get help to retired
players who need it, and work proactively to support research and make the game
safer. These are goals everyone can share.

### What would be the process without a settlement?

Absent a certified litigation class or some creative form of consolidation, every case would
have to be addressed individually. Doing so would be complicated, time consuming,
expensive, and the outcome for both sides would be highly uncertain.

2848041

**Alternative Dispute Resolution Center**
Irell & Manella LLP

**How were you able to get the parties to settle something that seemed so contentious?**

To their credit, both sides recognized that it would be far more productive to get out of court and do something good for retired players with medical needs and focus on the future of the game and making it safer. I would characterize it as a 'win-win.' The alternative was for the two sides to spend the next 10 years and millions of dollars on litigation, which would have been great for lawyers, expert witnesses, trial consultants and others. But it would not do much for retired players and their families who are in need. This resolution allows the sides to join together, do something constructive, and build a better game for the future. Both sides faced major risks and uncertainties that made a class settlement far and away the best path for resolving these issues.

**Will this prevent other lawsuits of this nature from being filed?**

For a variety of reasons, the underlying theory of this lawsuit about what took place in the past would be difficult to replicate in the future. Everyone now has a much deeper and more substantial understanding about concussions, and how to prevent and manage them, than they did 20 or even 10 years ago, and the information conveyed to players reflects that greater understanding. In addition, the labor law defenses asserted by the NFL would represent a very substantial barrier to asserting these kinds of claims going forward. The combination of advances in medical research, improved equipment, rules changes, greater understanding of concussion management, and enhanced benefits should, and hopefully will, prevent similar lawsuits in the future.

**What should parents of kids who play football take from this settlement?**

Parents should know that the NFL and the plaintiffs are committed to doing what's right for the game and making it safer at all levels. The proposed settlement includes funds for medical research and education to support those goals.

# EXHIBIT 3

**The New York Times**  Reprints

This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.

June 1, 2010

# Concussion Committee Breaks With Predecessor

By ALAN SCHWARZ

WASHINGTON — They accused a fellow doctor of minimizing solid evidence of the dangers of football concussions. They concurred that data collected by the N.F.L.'s former brain-injury leadership was "infected," said that their committee should be assembled anew, and formally requested that the group's former chairman, Dr. Elliot Pellman, not speak at a conference Wednesday.

For the first time these remarks came not from outside critics of N.F.L. research but from those now in charge of it — Dr. H. Hunt Batjer and Dr. Richard G. Ellenbogen, prominent neurosurgeons who became co-chairmen of a new league committee in March. One week after two members of Congress accused the doctors of sounding too much like their predecessors, and on the eve of a league-sponsored symposium in Washington held by Johns Hopkins Medicine, Batjer and Ellenbogen made clear they planned to chart a new course.

The two doctors criticized Johns Hopkins's promotional brochure for Wednesday's conference — which was open only to N.F.L. medical personnel, other doctors and members of the United States Department of Defense — for playing down existing evidence of brain damage in retired football players.

The opening paragraph described the disease chronic traumatic encephalopathy as "now being reported in football players, although with unknown frequency." It added that these and related matters had been reported by the news media "with considerable hype around assertions of long-term harm to players from head injuries."

Batjer and Ellenbogen said that the frequency of reports of C.T.E. in players is not unknown — a Boston University research group has diagnosed it in all 12 former college and N.F.L. players of various ages it had tested for the condition.

"They aren't assertions or hype — they are facts," said Ellenbogen, the chief of neurological surgery at Harborview Medical Center in Seattle, who has been instrumental in drafting legislation to protect young athletes from head injuries.

–1672–

He added: "Doctors were relatively ineffectual for 25 years on this issue. Then it's on the front page and everything focuses like a laser beam and things begin to change from baby steps to giant steps forward protecting kids. From a doctor-patient perspective, it's been the single best thing that has happened to this subject."

Dr. Constantine G. Lyketsos, a professor of psychiatry and behavioral sciences at Johns Hopkins who is directing Wednesday's conference, said in a telephone interview that he wrote the brochure and that the N.F.L. had no role with the event, other than providing financing. He defended his choice of words.

"We know of 12 cases" of C.T.E., Lyketsos said. "We don't know how many don't have it."

Regarding news media coverage of the harm caused by repeated concussions in football players, Lyketsos said: "There is a concern that I have that the possibility of serious long-term consequences are being overemphasized without clear evidence. It could turn out correct. It could turn out incorrect. We don't know."

He added: "I worry that it might be a disservice. That's a possibility."

The league spokesman Greg Aiello declined to comment on Lyketsos's statements, other than saying that the league has given $1 million to the Boston University group to support its research.

The former leaders of the N.F.L. concussion committee generally agreed with Lyketsos, an attitude that ultimately came to the attention of Congress and led to several hearings on the subject of sports concussions in athletes of all ages. Batjer and Ellenbogen had a shaky debut before some frustrated members of the House Judiciary Committee during a forum in New York on May 24, but in the following days they made sure they would no longer resemble their predecessors.

The doctors said the old committee's ongoing studies on helmets and retired players' cognitive decline — whose structure and data were strongly criticized by outside experts — would not be used in any way moving forward. They said they were influenced by a comment made to them last Monday by Representative Anthony D. Weiner, Democrat of New York: "You have years of an infected system here that your job is to some degree to mop up."

"The word 'infected' hit me right between the eyes," said Ellenbogen. He and Batjer became co-chairmen of the N.F.L. committee in March.

Batjer added: "We all had issues with some of the methodologies described, the inherent conflict of interest that was there in many areas, that was not acceptable by any modern

**-1673-**

standards or not acceptable to us. I wouldn't put up with that, our universities wouldn't put up with that, and we don't want our professional reputations damaged by conflicts that were put upon us."

Batjer said that he and Ellenbogen had begun reconstituting their committee from scratch. He said that six members had been selected so far, none of them holdovers from the prior regime.

The doctors so wanted to distance themselves from the past that on Monday they requested that Pellman, who was scheduled to deliver some opening remarks at the Johns Hopkins symposium, be removed from the program. Pellman was the chairman of the N.F.L. concussion committee from 1994 to 2007 and stayed on it until he resigned in March. He remains the league's medical director and helped with the conference's logistics.

On Tuesday, an e-mail message was distributed to conference organizers saying that Pellman would not attend the conference for family-related reasons.

"Neither Rich nor I thought he should appear to represent the N.F.L. in what would look like a leadership role," Batjer said. "It's not about Elliot. It's about a complete severance from all prior relationships from that committee."

Aiello, the league spokesman, indicated that the N.F.L. would not scrutinize or attempt to influence the committee's leadership.

"Drs. Ellenbogen and Batjer have full authority to make decisions regarding the work of the Head, Neck and Spine Committee, including organization, membership, status of current and new research, and the like," Aiello said. "We fully support them and will continue to do so."

EXHIBIT 4



### The New York Times

This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.

December 21, 2009

# N.F.L. Acknowledges Long-Term Concussion Effects

By **ALAN SCHWARZ**

After weeks of transforming its approach to concussions and its research into their long-term effects among players, the N.F.L. not only announced Sunday that it would support research by its most vocal critics but also conceded publicly for the first time that concussions can have lasting consequences.

"It's quite obvious from the medical research that's been done that concussions can lead to long-term problems," the league spokesman Greg Aiello said in a telephone interview. He was discussing how the league could donate $1 million or more to the Center for the Study of Traumatic Encephalopathy at Boston University, whose discoveries of brain damage commonly associated with boxers in the brains of deceased football players were regularly discredited by the N.F.L.

Told that his statement was the first time any league official had publicly acknowledged any long-term effects of concussions, and that it contradicted past statements made by the league, its doctors and literature currently given to players, Aiello said: "We all share the same interest. That's as much as I'm going to say."

Since an Oct. 28 hearing before the House Judiciary Committee, when the league's approach to science was compared to that of the tobacco industry, the N.F.L. has accepted the resignations of the co-chairmen of its concussion committee and overhauled its policies toward concussion management. Players now must be cleared by brain-injury experts unaffiliated with the team, and cannot return to a game or practice in which they have shown any significant sign of concussion.

The second rule has since been recommended by an N.C.A.A. committee as standard policy for athletes in all sports, and will be considered by several state legislatures that have bills governing high school athletics before them.

The recent changes by the N.F.L. had amounted to tacit acknowledgments that it was no longer able to defend a position that conflicted with nearly all scientific understanding of head trauma.

Until recently, the league and its committee on concussions had consistently minimized evidence testifying to the risks of repeated brain trauma in N.F.L. players — from researchers like those at Boston University, to phone surveys the league itself commissioned, to demographic analysis of players known to have early-onset dementia. While discrediting such evidence, a pamphlet on concussions currently given to players states, "Research is currently underway to determine if there are any long-term effects of concussion in N.F.L. athletes."

That research study, conducted by the N.F.L.'s committee on concussions, was recently suspended amid

Case 2:12-cv-01025-DB Document 29 Filed 11/06/12 Page 2 of 13 PageID 21

strong criticism of its design and execution by outside experts, players and members of Congress.

"Mr. Aiello's statement is long overdue — it's a clear sign of how the culture of football has changed in recent months," Dr. Robert Stern, a co-director of the Boston University center and its Alzheimer's Disease Clinical and Research Program, said in a telephone interview.

"There is no doubt that repetitive blows to the head result in long-term problems in the brain, including progressive dementia. With the N.F.L. taking these recent actions, we are finally at a point to move forward in our research and ultimately solve this important problem — for professional athletes and collegiate and youth players."

Aiello said that the amount of the league's donation to the center had yet to be determined with Boston University officials. Dr. Robert Cantu, a co-director of the center with Stern, met with N.F.L. Commissioner Roger Goodell and the league lawyer Jeff Pash in October to discuss nonfinancial support for the center.

"No money was ever requested when I met with them, and I went into considerable detail on why we couldn't accept any money without consideration of conflicts of interest," said Cantu, the director of the Neurological Sports Injury Center at Brigham and Women's Hospital in Boston. "We can't receive any money until you know what the strings are and the strings aren't. I'm not saying it couldn't happen, but it has not been broached."

The Boston University group's work centers on receiving commitments from current and former athletes in various sports to donate their brains for examination after their deaths. (The disease primarily found in retired football players' brain tissue, chronic traumatic encephalopathy, can be diagnosed only through special staining techniques.) More than 110 athletes have registered to donate in little over a year — about 50 of them current and ex-N.F.L. players.

Discussing his participation in the program last year, Ted Johnson, a former New England Patriots linebacker who sustained multiple concussions that have caused significant memory and emotional problems through his 30s, indicated his frustration at the league's stance on the matter.

"I shouldn't have to prove to anybody that there's something wrong with me," he said. "I'm not being vindictive. I'm not trying to reach up from the grave and get the N.F.L. But any doctor who doesn't connect concussions with long-term effects should be ashamed of themselves."

Aiello said that regardless of any financial support, the league would encourage current and former players to donate their brains to the Boston University research. He added that the roughly 85 retired players and families receiving aid from the 88 Plan — a fund jointly administered by the league and the union to help pay the costs of retirees with dementia — would be singled out to participate. The players union has said it supports the program as well.

The work of the Boston University group has already provided some of the most compelling evidence of football's long-term effects on the brain. All 11 retired players examined for chronic traumatic encephalopathy — an exceedingly rare disorder caused by concussive and subconcussive blows to the head — have been found to have the disease, which is associated with early-onset dementia, emotional

disturbances and drug abuse.

Studies at the University of North Carolina and the University of Michigan have found heightened rates of dementia and other cognitive decline, results corroborated by a New York Times demographic analysis of members of the league's 88 Plan.

After every finding, the league and its committee doctors have faulted the methods of the studies, and suggested that other causes were responsible and that the question remained open. When the league-sponsored Michigan study reported this September that retirees were reporting rates of Alzheimer's and other memory-related diseases at five times or more the national rate, Aiello said, "There are thousands of retired players who do not have memory problems," and, "Memory disorders affect many people who never played football or other sports."

Asked about those remarks Sunday, Aiello said: "We didn't say it doesn't deserve further study and attention, which is what we're trying to do. The only statement we're making is that we're doing this."

Stern said that the Boston University group had raised $450,000 in grant support, and that he was preparing a proposal to the National Institutes of Health.

"This type of research is extremely expensive," Stern said. "And time is very much of the essence."

Copyright 2009 The New York Times Company

Privacy Policy | Terms of Service | Search | Corrections | RSS | First Look | Help | Contact Us | Work for Us | Site Map

-1678-

http://www.nytimes.com/2009/12/21/sports/football/21concussions.html?_r=0&pagewanted=print    3/3

# EXHIBIT 5

doi:10.1093/brain/aws307

Brain 2013: 136; 43–64 | 43



# BRAIN
A JOURNAL OF NEUROLOGY

# The spectrum of disease in chronic traumatic encephalopathy

Ann C. McKee,[1,2,3,4,5] Thor D. Stein,[1,5] Christopher J. Nowinski,[2,4,6] Robert A. Stern,[2,3,4,7]
Daniel H. Daneshvar,[2,4] Victor E. Alvarez,[2,4] Hyo-Soon Lee,[3,4] Garth Hall,[8]
Sydney M. Wojtowicz,[1,2] Christine M. Baugh,[2,4] David O. Riley,[2,4] Caroline A. Kubilus,[3,4]
Kerry A. Cormier,[1] Matthew A. Jacobs,[2,4] Brett R. Martin,[9] Carmela R. Abraham,[3,10]
Tsuneya Ikezu,[3,4,11] Robert Ross Reichard,[12] Benjamin L. Wolozin,[3,4,11] Andrew E. Budson,[1,3,4]
Lee E. Goldstein,[3,4,12,13,14,15] Neil W. Kowall[1,3,4,5,*] and Robert C. Cantu[2,6,7,16,*]

1  United States Department of Veterans Affairs, VA Boston Healthcare System, Boston, MA 02130, USA
2  Center for the Study of Traumatic Encephalopathy, Boston University School of Medicine, Boston, MA 02118, USA
3  Alzheimer's Disease Center, Boston University School of Medicine, Boston, MA 02118, USA
4  Department of Neurology, Boston University School of Medicine, Boston, MA 02118, USA
5  Department of Pathology, Boston University School of Medicine, Boston, MA 02118, USA
6  Sports Legacy Institute, Waltham, MA 02451, USA
7  Department of Neurosurgery, Boston University School of Medicine, Boston, MA 02118, USA
8  Department of Biological Sciences, University of Massachusetts, Lowell, MA 01854, USA
9  Data Coordinating Center, Boston University School of Public Health, Boston, MA 02118, USA
10  Department of Biochemistry, Boston University School of Medicine, Boston, MA 02118, USA
11  Department of Pharmacology, Boston University School of Medicine, Boston, MA 02118, USA
12  Department of Pathology, Mayo Clinic, Rochester, MN 55905, USA
13  Department of Psychiatry, Boston University School of Medicine, Boston, MA 02118, USA
14  Department of Opthamology, Boston University School of Medicine, Boston, MA 02118, USA
15  Department of Biomedical Engineering, Boston University School of Medicine, Boston, MA 02118, USA
16  Department of Neurosurgery, Emerson Hospital, Concord, MA 01742, USA

*These authors contributed equally to this work.

Correspondence to: Ann C. McKee, MD,
VA Boston HealthCare System,
150 South Huntington Avenue, 151-C
Boston,
MA 02130,
USA
E-mail: ann.mckee@va.gov; amckee@bu.edu

Chronic traumatic encephalopathy is a progressive tauopathy that occurs as a consequence of repetitive mild traumatic brain injury. We analysed post-mortem brains obtained from a cohort of 85 subjects with histories of repetitive mild traumatic brain injury and found evidence of chronic traumatic encephalopathy in 68 subjects: all males, ranging in age from 17 to 98 years (mean 59.5 years), including 64 athletes, 21 military veterans (86% of whom were also athletes) and one individual who engaged in self-injurious head banging behaviour. Eighteen age- and gender-matched individuals without a history of repetitive mild traumatic brain injury served as control subjects. In chronic traumatic encephalopathy, the spectrum of hyperphosphorylated tau pathology ranged in severity from focal perivascular epicentres of neurofibrillary tangles in the frontal neocortex to severe tauopathy affecting widespread brain regions, including the medial temporal lobe, thereby allowing a progressive staging of pathology from stages I–IV. Multifocal axonal varicosities and axonal loss were found in deep cortex and subcortical white

Received July 2, 2012. Revised September 1, 2012. Accepted October 1, 2012. Advance Access publication December 2, 2012
© The Author (2012). Published by Oxford University Press on behalf of the Guarantors of Brain. All rights reserved.
For Permissions, please email: journals.permissions@oup.com

Downloaded from http://brain.oxfordjournals.org/ at Columbia University Libraries on October 14, 2013

matter at all stages of chronic traumatic encephalopathy. TAR DNA-binding protein 43 immunoreactive inclusions and neurites were also found in 85% of cases, ranging from focal pathology in stages I–III to widespread inclusions and neurites in stage IV. Symptoms in stage I chronic traumatic encephalopathy included headache and loss of attention and concentration. Additional symptoms in stage II included depression, explosivity and short-term memory loss. In stage III, executive dysfunction and cognitive impairment were found, and in stage IV, dementia, word-finding difficulty and aggression were characteristic. Data on athletic exposure were available for 34 American football players; the stage of chronic traumatic encephalopathy correlated with increased duration of football play, survival after football and age at death. Chronic traumatic encephalopathy was the sole diagnosis in 43 cases (63%); eight were also diagnosed with motor neuron disease (12%), seven with Alzheimer's disease (11%), 11 with Lewy body disease (16%) and four with frontotemporal lobar degeneration (6%). There is an ordered and predictable progression of hyperphosphorylated tau abnormalities through the nervous system in chronic traumatic encephalopathy that occurs in conjunction with widespread axonal disruption and loss. The frequent association of chronic traumatic encephalopathy with other neurodegenerative disorders suggests that repetitive brain trauma and hyperphosphorylated tau protein deposition promote the accumulation of other abnormally aggregated proteins including TAR DNA-binding protein 43, amyloid beta protein and alpha-synuclein.

**Keywords:** axonal injury; brain trauma; frontotemporal lobar degeneration; neurodegenerative disorders; traumatic brain injury

**Abbreviations:** CTE = chronic traumatic encephalopathy; FTLD = frontotemporal lobar degeneration; MND = motor neuron disease

# Introduction

Repetitive mild traumatic brain injury can trigger the development of chronic traumatic encephalopathy (CTE), a progressive neurodegeneration characterized by the widespread deposition of hyperphosphorylated tau (p-tau) as neurofibrillary tangles (Corsellis and Brierley, 1959; Corsellis *et al.*, 1973, Hof *et al.*, 1991; Geddes *et al.*, 1999; Omalu *et al.*, 2005, 2006, 2010; McKee *et al.*, 2009, 2010; Gavett *et al.*, 2010, 2011; Daneshvar *et al.*, 2011a, b; Costanza *et al.*, 2011; Stern *et al.*, 2011; Goldstein *et al.*, 2012; Saing *et al.*, 2012). CTE was originally reported in 1928 by Harrison Martland, a New Jersey pathologist, who described the clinical aspects of a progressive neurological deterioration ('punch drunk') that occurred after repetitive brain trauma in boxers (Martland, 1928). Although originally termed 'dementia pugilistica' (Millspaugh, 1937), the recognition that activities other than boxing were associated with its development lead to the preferred use of terms such as progressive traumatic encephalopathy and later, CTE (Critchley, 1949; 1957).

CTE is clinically associated with symptoms of irritability, impulsivity, aggression, depression, short-term memory loss and heightened suicidality that usually begin 8–10 years after experiencing repetitive mild traumatic brain injury (McKee *et al.*, 2009). With advancing disease, more severe neurological changes develop that include dementia, gait and speech abnormalities and parkinsonism. In late stages, CTE may be clinically mistaken for Alzheimer's disease or frontotemporal dementia (Gavett *et al.*, 2010, 2011). A subset of cases with CTE is associated with motor neuron disease (MND) (McKee *et al.*, 2010).

The neuropathological changes of CTE are distinctive and easily distinguished from other tauopathies, including Alzheimer's disease. The neuropathological features of CTE include generalized atrophy of the cerebral cortex, medial temporal lobe, diencephalon and mammillary bodies with enlarged ventricles; cavum septum pellucidum, often with fenestrations; extensive

p-tau-immunoreactive neurofibrillary tangles and astrocytic tangles in the frontal and temporal cortices, particularly around small cerebral vessels and at the depths of cerebral sulci; extensive p-tau-immunoreactive neurofibrillary tangles in limbic regions, diencephalon and brainstem nuclei; extensive degeneration of axons and white matter fibre bundles; TAR DNA-binding protein 43 (TDP-43) immunoreactive intraneuronal and intraglial inclusions and neurites in most cases and a relative absence of amyloid-β peptide deposits (Corsellis and Brierley, 1959; Corsellis *et al.*, 1973; Hof *et al.*, 1991; Geddes *et al.*, 1999; Omalu *et al.*, 2005, 2006, 2010; McKee *et al.*, 2009, 2010; Gavett *et al.*, 2010, 2011; Daneshvar *et al.*, 2011a, b; Costanza *et al.*, 2011; Stern *et al.*, 2011; Goldstein *et al.*, 2012; Saing *et al.*, 2012).

In 2008, the Center for the Study of Traumatic Encephalopathy (CSTE) at Boston University School of Medicine established the CSTE brain bank at the Bedford VA Hospital to analyse the brain and spinal cords after death of athletes, military veterans and civilians who experienced repetitive mild traumatic brain injury. Through this effort, we comprehensively analysed the brain and spinal cord of 85 donors for evidence of CTE, as well as for all other neurodegenerative diseases, including Alzheimer's disease, frontotemporal lobar degeneration (FTLD), Parkinson's disease, Lewy body disease and multiple system atrophy. We report the spectrum of CTE and neurodegenerative pathology found in the brain and spinal cord of these donors, compare the pathological findings with 18 cognitively normal age- and gender-matched control subjects without known history of mild traumatic brain injury, and correlate the clinical findings to the neuroanatomical regions of p-tau pathology. Although a brain donation study and autopsy directed case series will never establish the incidence or prevalence of a disorder such as CTE owing to ascertainment biases, systematic clinicopathological analysis allows insight into the spectrum of clinical and neuropathological alterations associated with the disorder and lays the foundation for future prospective longitudinal studies.

# Materials and methods

## Subjects

A total of 85 brains from former athletes, military veterans or civilians with a history of repetitive mild traumatic brain injury were comprehensively evaluated. Eighteen additional brains from cognitively intact individuals without history of mild traumatic brain injury were obtained from the Boston University Alzheimer's Disease Center Brain Bank that included some subjects from the Framingham Heart Study. Next of kin provided written consent for participation and brain donation. Institutional review board approval for brain donation was obtained through the Boston University Alzheimer's Disease Center, CSTE and the Bedford VA Hospital. Institutional review board approval for post-mortem clinical record review, interviews with family members and neuropathological evaluation was obtained through Boston University School of Medicine.

## Clinical assessment

Concussion and mild traumatic brain injury history, history of cognitive and behavioural changes and clinical status leading up to death were determined through post-mortem interviews with next of kin performed by a neuropsychologist (R.A.S.) who was blind to the results of the neuropathological examination at the time of interview. Informants were interviewed before receiving the results of the neuropathological examination. The interview was semi-structured and conducted by telephone. Areas queried included demographics, athletic history, military service, concussion and brain trauma history, medical history (including neurological, psychiatric and substance use), family history, social/occupational history, and reported/observed changes in mood, behaviour, motor functions, cognition and activities of daily living. To semi-quantify cognitive, mood and functional changes, modifications of standard measures/interviews were administered to the informant to assess their perception of the subject in the months or years before death (Pfeffer et al., 1982; McNair et al., 1984; Brown and Schinka, 2005; Galvin et al., 2005). Medical record review was also performed (R.A.S. and A.C.M.).

In analysis of the clinical symptoms associated with CTE, case selection was restricted to those cases with post-mortem semi-structured family interviews and pathological diagnosis of CTE or CTE plus MND (CTE-MND), without other co-morbidities.

## Duration of exposure to American football and position played

To examine the relationship between exposure and stage of CTE, analyses were performed on the subset of athletes who played American football. Only football played at the high school level or higher was considered for these analyses. Of the 85 brain donors, 58 played American football as their primary sport. Of those, 16 subjects were excluded owing to comorbid disease (Alzheimer's disease, Parkinson's disease, Lewy body disease, FTLD and multiple system atrophy), and seven were excluded owing to incomplete athletic information. Football players were also grouped by primary position played: offensive and defensive linemen, quarterbacks, wide receivers, all other offensive backs, defensive linebackers and defensive backs.

## Neuropathological examination

The neuropathological processing followed the procedures previously established for the Boston University Alzheimer's Disease Center Brain Bank (Vonsattel et al., 1995). Paraffin-embedded sections were stained with Luxol fast blue, haematoxylin and eosin, Bielschowsky's silver, AT8, alpha-synuclein, amyloid-ß, TDP-43, phosphorylated TDP-43 (pTDP-43), SMI-31 and SMI-34 using methods described previously (McKee et al., 2009). In addition, multiple large coronal slabs of the cerebral hemispheres were cut at 50 µm on a sledge microtome and stained as free-floating sections using AT8, amyloid-ß, TDP-43, pTDP-43, CP13 and PHF-1 (McKee et al., 2009, 2010) (Supplementary Table 1). Neuropathological diagnoses were made without any knowledge of the subjects' clinical histories (A.C.M.) and confirmed by two other neuropathologists (T.D.S. and V.E.A.).

## Neuropathological diagnoses

### Definition of chronic traumatic encephalopathy

Based on our previous studies and review of the literature on CTE (Corsellis et al., 1973; Hof et al., 1991; Geddes et al., 1999; Omalu et al., 2005, 2006, 2010; McKee et al., 2009, 2010; Goldstein et al., 2012; Saing et al., 2012), the diagnosis of CTE was defined by the presence of the following criteria (Table 1 and Figs. 1 and 2): (i) perivascular foci of p-tau immunoreactive astrocytic tangles and neurofibrillary tangles; (ii) irregular cortical distribution of p-tau immunoreactive neurofibrillary tangles and astrocytic tangles with a predilection for the depth of cerebral sulci; (iii) clusters of subpial and periventricular astrocytic tangles in the cerebral cortex, diencephalon, basal ganglia and brainstem; and (iv) neurofibrillary tangles in the cerebral cortex located preferentially in the superficial layers.

### Definition of chronic traumatic encephalopathy–motor neuron disease

The diagnosis of CTE-MND required a clinical diagnosis of definite amyotrophic lateral sclerosis using the revised El Escorial criteria for the diagnosis of amyotrophic lateral sclerosis (Brook et al., 1994, 2000), and the pathological diagnosis of CTE, as defined above, in addition to the following criteria (McKee et al., 2010): (i) degeneration of lateral and ventral corticospinal tracts of the spinal cord; (ii) marked loss of anterior horn cells from cervical, thoracic and lumbar spinal cord with gliosis; and (iii) TDP-43 or pTDP-43 positive neuronal, glial, neuritic or intranuclear inclusions in anterior horn cells and white matter tracts of the spinal cord.

### Criteria for Alzheimer's disease

The criteria for Alzheimer's disease were based on the presence of amyloid-ß neuritic plaques and p-tau neurofibrillary tangles according to the NIA–Reagan criteria for intermediate and high likelihood Alzheimer's disease and the recent NIA Alzheimer Association's guidelines (Newell et al., 1999; Montine et al., 2012). The NIA–Reagan criteria take into account both the Braak and Braak staging of neurofibrillary tangles (Braak and Braak, 1991, 1993, 1994) and the overall density of neuritic plaques based on CERAD criteria (Mirra et al., 1991). The nature, pattern and distribution of p-tau neurofibrillary degeneration in CTE are distinctive from Alzheimer's disease (Table 1 and Fig. 1; McKee et al., 2011).

### Criteria for Parkinson's disease and Lewy body disease

The diagnosis of Parkinson's disease or Lewy body disease was based on the presence and distribution of alpha-synuclein-positive Lewy

**Table 1** Distinctions in hyperphosphorylated tau pathology between Alzheimer's disease and CTE

| Pathological features | Alzheimer's disease | CTE |
|---|---|---|
| Tau protein | | |
|   Six isoforms | All six isoforms present | All six isoforms present[a] |
|   3 or 4 repeat tau | 3 repeat and 4 repeat tau present | 3 repeat and 4 repeat tau present |
| Cell origin | | |
|   Neuronal | NFTs and pre-tangles | NFTs and pre-tangles |
|   Astrocytic | Not present[b] | Prominent astrocytic tangles |
| Neuronal domain | | |
|   Cell body | Prominent | Prominent |
|   Dendrite | Prominent | Prominent |
|   Axon | Sparse | Prominent |
| Cell Pattern | | |
|   Perivascular | Not present | Prominent NFTs and astrocytic tangles |
|   Foci at depths of cerebral sulci | Not present | Prominent NFTs and astrocytic tangles |
|   Irregular, patchy cortical distribution | Not present | Prominent |
|   Cortical laminae | NFTs predominantly in laminae III and V | NFTs predominantly in laminae II–III |
|   Subpial astrocytic tangles | Not present | Prominent |
|   Periventricular astrocytic tangles | Not present | Present |
| Distribution | | |
|   Mild pathology | Braak stages I–III:<br>  NFTs in entorhinal cortex, amygdala and hippocampa | CTE stages I–II:<br>  NFTs in focal epicentres in cerebral cortex, usually frontal lobe |
|   Advanced pathology | Braak stages IV–VI:<br>  High density of NFTs in widespread cortical areas and medial temporal lobe, uniform distribution<br>  Low densities of NFTs in basal ganglia and brainstem; none in mammillary bodies. White matter tracts relatively uninvolved. | CTE stages III–IV:<br>  High density of NFTs in widespread cortical areas and medial temporal lobe, patchy irregular distribution<br>  High densities of NFTs in thalamus, hypothalamus, mammillary bodies, brainstem. Moderate densities of NFTs in basal ganglia, especially nucleus accumbens. Prominent p-tau pathology in white matter tracts. |

a Schmidt et al., 2001.
b Low densities of 4R immunoreactive 'thorn-shaped astrocytes' are found in the temporal lobe of some older subjects and older subjects with Alzheimer's disease (Lace et al., 2012; López-González et al., 2012).
NFT = neurofibrillary tangles.

bodies and was considered brainstem-predominant (Parkinson's disease), limbic or transitional Lewy body disease, and neocortical or diffuse Lewy body disease as defined by McKeith criteria (McKeith et al., 1996) and Braak staging (Del Tredici et al., 2002; Braak and Del Tredici, 2008).

### Criteria for frontotemporal lobar degeneration

Neuropathological diagnosis of FTLD was based on predominant involvement of the frontal and temporal lobes and characteristic immunohistochemistry for p-tau, TDP-43 and p-TDP-43 using established criteria for FTLD (Cairns et al., 2007; Bigio, 2008; Mackenzie et al., 2010). The most common FTLD, FTLD with TDP-43-positive inclusions, FTLD-TDP, was defined by TDP-43-positive neuronal cytoplasmic and intranuclear inclusions, dystrophic neurites and glial cytoplasmic inclusions in the superficial layers of cerebral cortex and dentate gyrus. The diagnosis of FTLD-tau, which includes progressive supranuclear palsy, corticobasal degeneration and Pick's disease, was defined by the specific patterns of p-tau glial and neuronal pathology and neuroanatomical areas of involvement according to consensus criteria (Litvan et al., 1996; Cairns et al., 2007; Dickson, 2009).

If criteria for more than one neurodegenerative disease were present, the case was considered to be mixed disease. Diagnosis of

multiple system atrophy was based on published criteria (Dickson et al., 2009).

### Semi-quantitative assessment of neuropathological features

The density of neurofibrillary tangles, astrocytic tangles, diffuse and neuritic amyloid–β plaques and vascular amyloid was rated semi-quantitatively using AT8 or amyloid-ß immunostained paraffin-embedded 10 μm sections according to methods previously reported (McKee et al., 2006).

### Apolipoprotein E genotyping

Apolipoprotein E (ApoE) genotyping was conducted using restriction isotyping for determining ApoE isoforms based on brain tissue samples.

### Statistical analysis

Stage of CTE was treated as an inexact ordinal variable; Spearman's rank order correlation was used to determine the statistical dependence between CTE stage and all linear variables of interest (e.g. age, years of education, total number of reported concussions, total number of years of American football played and number of years between retirement and death). For non-linear independent variables, the Wilcoxon–Mann–Whitney two-sample rank-sum test was used for

Case 25-2271-023 Document 20-1 Page 1660 Date Filed 10/08/2025



**Figure 1** Distinctive p-tau pathology of CTE compared with Alzheimer's disease. (**A–O**) Alzheimer's disease. (**A–C**) Double immunostained sections for amyloid-ß (red) and PHF-1 (brown) show diffuse cortical distribution of neurofibrillary tangles preferentially involving laminae III and V and without accentuation at depths of sulci. (**D and E**) Small blood vessels at sulcal depths show no clustering of neurofibrillary pathology perivascularly. (**F and G**) Sections immunostained for AT8 demonstrate diffuse cortical distribution of p-tau pathology without accumulations at sulcal depths. (**H**) Neurofibrillary tangles are preferentially distributed in laminae III and V. (**I and J**) Small blood vessels at bottom of cortical sulcus show no clustering of neurofibrillary pathology around vasculature (AT8 immunostain). (**K**) Subpial region at depth of sulcus shows no p-tau positive astrocytic tangles (AT8 immunostain). (**L**) Periventricular region of third ventricle shows no ependymal immunostaining for p-tau and low densities of p-tau neurites (AT8 immunostain). (**M**) Double immunostained section showing abundant amyloid-ß plaques (red) and interspersed PHF-1 neurofibrillary tangles (brown). (**N**) Moderate neurofibrillary change in substantia nigra pars compacta typical of severe Alzheimer's disease (AT8 immunostain). (**O**) Absence of astrocytic tangles or neurofibrillary tangles in mammillary body in Alzheimer's disease (AT8 immunostain). (**P–FF**) CTE. (**P–R and U–W**) Sections immunostained for AT8 showing irregular cortical distribution of p-tau pathology with prominent subpial clusters of p-tau astrocytic tangles, focal accentuation at depths of sulci and distribution of neurofibrillary tangles in superficial cortical laminae II–III. (**S, T, X and Y**) Small blood vessels at bottom of cortical sulcus prominent perivascular distribution of astrocytic tangles and neurofibrillary tangles (AT8). (**Z**) Subpial region at depth of sulcus shows prominent cluster of AT8 positive astrocytic tangles. (**AA**) Periventricular region of third ventricle shows

(continued)

independent variables with only two groups (e.g. lifetime history of steroid use, presence of at least one ApoE e4 allele), whereas the Kruskall–Wallis test was used for variables with more than two groupings (e.g. position played).

Additionally, to determine whether the proportion of individuals with at least one ApoE e4 allele was higher in individuals diagnosed with CTE, a Chi-square goodness of fit test was performed comparing all CTE cases (*n* = 65) with the expected proportion in the US population (Corder *et al.*, 1993).

# Results

The 85 brain donors with a history of mild traumatic brain injury included 80 athletes (22 of whom were also military veterans), three military veterans with no history of contact sports, one civilian who had experienced multiple falls and one individual who engaged in self-injurious repetitive head-banging behaviour (84 males, one female, age range 14–98 years, mean 54.1 ± 23.3 years) (Table 2). We also analysed the brains of 18 cognitively



**Figure 2** Patterns of 3R and 4R Tau in CTE. (**A**, **D** and **G**) 3R immunostaining shows scattered RD3 immunoreactive neurons in middle frontal cortex and CA1 hippocampus. (**B** and **E**) 4R immunostaining shows many ET3 immunoreactive neurons and astrocytic tangles in the subpial region of the middle frontal cortex and at the depth of the sulcus. (**H**) 4R immunostaining shows many ET3 immunoreactive neurons in CA1 hippocampus. (**C**, **F** and **I**) AT8 immunostaining shows 3R and 4R immuno-positive neurons and astrocytic tangles in middle frontal cortex and CA1 hippocampus. All are 10-µm paraffin-embedded sections, scale bars = 50 µm.

intact subjects without known history of repetitive mild traumatic brain injury (17 males: one female, age range 18–88 years, mean 62.0 ± 17.4 years), seven of whom were military veterans and three of whom were athletes (skiing, sailing, golf and trap shooting) with no known history of mild traumatic brain injury.

# Pathological findings

Seven of the 18 control brains were completely negative for p-tau neurofibrillary tangles (mean age 48.1 ± 19.8 years), 11 control brains showed Alzheimer's-type neurofibrillary pathology limited to the hippocampus and entorhinal cortex consistent with Braak neurofibrillary stages I and II (mean age 70.8 ± 7.8 years). Three control subjects showed small amounts of amyloid-ß deposition as diffuse, neuritic plaques or vascular amyloid (mean 69.7 ± 8.1 years). No control case showed evidence of perivascular clusters of neurofibrillary tangles or astrocytic tangles, neurofibrillary tangles localized to the depths of the cerebral sulci or neurofibrillary tangles primarily localized to the superficial cortical laminae (Table 2, Cases 1–18).

Brains from 17 of the 85 individuals with a history of repetitive mild traumatic brain injury (16 males: one female; mean age 32.6 ± 22.4 years, 20% of the mild traumatic brain injury sample) did not show any changes of CTE (Table 2, Cases 19–35). One individual who played high school football (Case 32) was diagnosed with multiple system atrophy. The brains of 68 of the 85 subjects showed p-tau immunoreactive neurofibrillary tangles and astrocytic tangles in a pattern and neuroanatomical distribution diagnostic of CTE (68 males, 0 females; mean age 59.5 ± 20.4 years, 80% of the mild traumatic brain injury sample). The 68 included 50 football players [34 of whom played professionally including 33 National Football League players (two athletes also played in the Canadian Football League and one also played in the United Football League) and one Canadian Football League player], one semi-professional football player, nine college football players, six high school football players, five hockey players (four National Hockey League players and one amateur hockey player), seven professional boxers, one amateur boxer and one professional wrestler. Four individuals without a history of contact sports also developed CTE including three veterans and one individual who displayed self-injurious head banging behaviour. CTE or CTE-MND was diagnosed in 51 cases (51 males, 0 females, mean age 55.3 ± 21.8 years; 60% of the mild traumatic brain injury sample, 75% of all CTE cases). CTE-MND was diagnosed in eight cases (including three cases previously reported, McKee *et al.*, 2010; 9.4% of mild traumatic

**Figure 1** Continued
intense ependymal immunostaining for AT8 and abundant pericapillary neurites. (**BB**) Double immunostained section for amyloid-ß (red) and PHF-1 (brown) shows dense neurofibrillary tangles without amyloid-ß deposition. (**CC**) Dense AT8 immunostained astrocytic tangles and neurofibrillary tangles in substantia nigra pars compacta of severe CTE (AT8). (**DD**) Dense AT8 immunostained astrocytic tangles and neurofibrillary tangles in mammillary body typical of CTE. (**EE**) Dense CP-13 immunostained axonal varicosities and neuropil threads in the anterior commissure in CTE. (**FF**) AT8 immunostained axonal varicosities and neuropil threads in the external capsule in CTE. (**GG**) Alzheimer's disease: low densities of AT8 immunostained neuropil threads in subcortical white matter. (**HH** and **II**) CTE: AT8 immunostained astrocytic tangles (open arrowheads), neurofibrillary tangles (arrowheads) and pre-tangles (asterisk) characteristic of CTE. Some sections counter-stained with cresyl violet; all scale bars = 100 µm.

(continued)

**Table 2 Demographics, pathological diagnoses and immunoreactivity of the controls and mild traumatic brain injury cohort**

| Case | MTBI exposure (sport /military) | Race | Age (decade) | Sex | ApoE | Cause of death | CTE | Amyloid-β | | | αSYN | TDP-43 | Other diagnoses |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | DP | NP | CAA | | | |
| 1 | No athletics | H | 10–19 | M | n/a | Cerebral aneurysm | 0 | | | | | | |
| 2 | No athletics | C | 20–29 | M | 34 | Suicide | 0 | | | | | | |
| 3 | No athletics, Vet | C | 50–59 | M | n/a | Kidney failure | 0 | | | | | | |
| 4 | No athletics, Vet | C | 60–69 | M | 33 | Malignancy | 0 | | | | | | |
| 5 | No athletics | C | 50–59 | M | 23 | Malignancy | 0 | | | | | | |
| 6 | No athletics | C | 60–69 | F | n/a | Malignancy | 0 | | | | | | |
| 7 | No athletics | C | 60–69 | M | 33 | Malignancy | 0 | | | | | | |
| 8 | Sailing, skiing | C | 60–69 | M | 23 | Malignancy | 0 | | | | | | |
| 9 | Trapshooting, Vet | C | 60–69 | M | 33 | MVA | 0 | | | | | | |
| 10 | Skiing, hiking, golfing, Vet | C | 60–69 | M | 33 | Malignancy | 0 | | | | | | |
| 11 | No athletics | C | 60–69 | M | 24 | ICH | 0 | +++ | | + | | | |
| 12 | No athletics, Vet | C | 60–69 | M | 34 | Cardiac | 0 | ++ | + | + | | | |
| 13 | No athletics, Vet | C | 70–79 | M | 23 | Malignancy | 0 | | | | | | |
| 14 | No athletics | C | 70–79 | M | 23 | Malignancy | 0 | | | | | | |
| 15 | No athletics, Vet | C | 70–79 | M | 33 | ICH | 0 | ++ | ++ | + | | | |
| 16 | No athletics, Vet | C | 70–79 | M | 33 | Cardiac | 0 | + | | | | | |
| 17 | No athletics | C | 70–79 | M | 23 | Respiratory failure | 0 | | | | | | |
| 18 | No athletics | C | 80–89 | M | 33 | Cardiac | 0 | | | | | | |
| 19 | No athletics | C | 20–29 | M | 33 | Cerebral oedema | 0 | | | | | | |
| 20 | MS soccer | C | 10–19 | M | 33 | Suicide | 0 | | | | | | |
| 21 | HS AFB | C | 10–19 | M | 33 | Overdose | 0 | | | | | | |
| 22 | HS AFB | C | 10–19 | F | 34 | Overdose | 0 | | | | | | |
| 23 | HS AFB | C | 10–19 | M | 33 | Suicide | 0 | | | | | | |
| 24 | College hockey | C | 10–19 | M | 33 | Overdose | 0 | | | | | | |
| 25 | HS AFB | C | 10–19 | M | 33 | Cardiac | 0 | | | | | | |
| 26 | Pro ice hockey | C | 20–29 | M | n/a | Metabolic encephalopathy | 0 | | | | | | |
| 27 | HS AFB | C | 20–29 | M | n/a | GSW | 0 | | | | | | |
| 28 | Pro AFB | C | 20–29 | M | 33 | GSW | 0 | | | | | | |
| 29 | HS AFB | C | 20–29 | M | 33 | Suicide | 0 | | | | | | |
| 30 | MMA | C | 20–29 | M | 33 | Suicide | 0 | | | | | | |
| 31 | Pro wrestling | C | 30–39 | M | 33 | Suicide | 0 | | | | | | |
| 32 | Comp skiing | C | 30–39 | F | 34 | Suicide | 0 | | | | | | |
| 33 | HS AFB | C | 40–49 | M | n/a | Suicide | 0 | | | | | | MSA |
| 34 | HS baseball, hockey, Vet | C | 60–69 | M | n/a | Malignancy | 0 | | | | | | |
| 35 | Youth box | C | 70–79 | M | 23 | Cardiac | 0 | | | | | | |
| 36 | Firefighter | C | 80–89 | M | 34 | Respiratory failure | 0 | | | | | | |
| 37 | HS AFB, HS basketball | C | 10–19 | M | | SIS | I | | | | | + | |
| 38 | HS AFB, rugby | C | 10–19 | M | 33 | Cerebral oedema | I | | | | | + | |
| 39 | IED/explosives, HS AFB, Vet | H | 20–29 | M | 33 | ICH | I | | | | | | |
| 40 | Pro AFB | AA | 20–29 | M | 33 | Suicide | I | | | | | + | |
| 41 | HS AFB, Vet | C | 20–29 | M | 34 | Suicide | I | | | | | | |
| 42 | Pro AFB | C | 30–39 | M | 33 | Cardiac | I | | | | | + | |
| 43 | College AFB | C | 50–59 | M | 34 | Malignancy | II | | | | | | |
| 44 | Pro wrestling | C | 20–29 | M | 34 | Suicide | II | | | | | + | |
| 45 | Pro ice hockey | C | 20–29 | M | 33 | Overdose | II | | | | | | |
| 46 | College AFB, HS wrestling | C | 30–39 | M | 33 | Respiratory failure | II | | | | | ++++ | CTE-MND |

50 | Brain 2013: 136; 43–64     A. C. McKee *et al.*

**Table 2 Continued**

(continued)

| Case | MTBI exposure (sport / military) | Age (decade) | Race | Sex | ApoE | Cause of death | CTE | Amyloid-β DP | NP | CAA | αSYN | TDP-43 | Other diagnoses |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 47 | IED, HS AFB, Prison guard, Vet | 30–39 | C | M | 33 | Overdose | II | | | | | + | |
| 48 | College AFB | 40–49 | AA | M | 33 | Respiratory failure | II | | | | | +++ | CTE-MND |
| 49 | IED, MVA, Vet | 40–49 | C | M | 33 | Cerebral aneurysm | II | | | | | 0 | |
| 50 | Pro ice hockey | 40–49 | C | M | 33 | Cardiac | II | | | | | 0 | |
| 51 | Pro AFB | 40–49 | C | M | 33 | Cardiac | II | | | | | 0 | |
| 52 | HS AFB | 40–49 | C | M | 33 | Suicide | II | | | | | | |
| 53 | Pro AFB | 40–49 | AA | M | 34 | Suicide | II | | | | | ++++ | CTE-MND |
| 54 | College AFB | 50–59 | C | M | 33 | Respiratory failure | II | | | | | ++++ | |
| 55 | Pro ice hockey | 50–59 | C | M | 34 | Malignancy | II | | | ++ | | + | |
| 56 | Pro AFB, Vet | 80–89 | C | M | 33 | Cardiac | II | ++++ | | | | + | |
| 57 | Pro AFB, Vet | 40–49 | C | M | 33 | Suicide | II | | | | | 0 | |
| 58 | Pro box | 30–39 | C | M | 33 | Suicide | III | | + | | | + | |
| 59 | HS basketball, college AFB, amateur box, Vet | 40–49 | C | M | 33 | Respiratory failure | III | | | | | +++ | CTE-MND |
| 60 | College AFB | 40–49 | C | M | 33 | Overdose | III | | | | | + | |
| 61 | Pro AFB | 40–49 | C | M | 44 | GSW | III | | | | | 0 | |
| 62 | Pro AFB | 40–49 | C | M | 44 | Overdose | III | + | | | | 0 | |
| 63 | Pro AFB | 50–59 | AA | M | 34 | Suicide | III | | | | | + | |
| 64 | Pro AFB | 50–59 | C | M | 34 | Cardiac | III | | | | | + | |
| 65 | Self-injury | 50–59 | C | M | n/a | Respiratory failure | III | | | | | 0 | |
| 66 | Pro AFB | 60–69 | C | M | 23 | Respiratory failure | III | | | | | ++++ | CTE-MND |
| 67 | Pro AFB | 60–69 | AA | M | 33 | Overdose | III | | | | | + | |
| 68 | Pro AFB | 60–69 | C | M | 33 | Cardiac | III | | | | | + | |
| 69 | Pro AFB | 60–69 | C | M | 33 | Respiratory failure | III | | | | | +++ | CTE-MND |
| 70 | TBI, PT epilepsy, Vet | 70–79 | C | M | 33 | Pneumonia | III | ++ | ++ | +++ | | + | |
| 71 | MVA, altercation, Vet | 80–89 | C | M | 33 | Pneumonia | III | + | | | | + | |
| 72 | Pro box | 50–59 | AA | M | 33 | Respiratory failure | IV | + | + | | | +++ | |
| 73 | Pro box | 60–69 | C | M | 34 | Respiratory failure | IV | ++ | + | | | +++ | CTE-MND |
| 74 | Pro box | 60–69 | C | M | 33 | Cardiac | IV | | | | | +++ | CTE-MND |
| 75 | Pro box, Vet | 70–79 | C | M | 33 | FTT | IV | | | | | +++ | |
| 76 | Pro AFB | 70–79 | AA | M | 34 | Malignancy | IV | | | | | +++ | |
| 77 | Pro AFB | 70–79 | C | M | 23 | Cardiac | IV | | | | | ++ | |
| 78 | Pro AFB, Vet | 80–89 | AA | M | 44 | Respiratory failure | IV | + | | ++++ | | +++ | |
| 79 | Pro box, Vet | 70–79 | AA | M | 33 | FTT | IV | ++ | | | + | +++ | |
| 80 | Pro AFB, Vet | 70–79 | C | M | 33 | Respiratory failure | IV | ++ | | + | | +++ | |
| 81 | Pro box | 80–89 | AA | M | 34 | Sepsis | IV | + | ++ | + | | +++ | |
| 82 | Pro AFB | 80–89 | C | M | 33 | FTT | IV | | | | | ++++ | |
| 83 | Pro AFB, Vet | 80–89 | AA | M | 33 | FTT | IV | ++++ | + | | | ++++ | |
| 84 | Semi Pro AFB, Vet | 80–89 | C | M | 33 | FTT | IV | ++++ | | + | | ++++ | |
| 85 | Amateur box, Vet | 90–99 | C | M | n/a | FTT | IV | ++ | ++ | ++ | | ++++ | |
| 86 | Pro AFB, Vet | 90–99 | C | M | 33 | FTT | IV | ++++ | ++++ | | + | ++++ | |
| 87 | College AFB | 60–69 | C | M | 44 | FTT | IV | ++++ | ++++ | ++ | + | + | Alzheimer's disease |
| 88 | Pro AFB, Vet | 60–69 | AA | M | 23 | FTT | IV | ++++ | ++++ | ++ | | +++ | Alzheimer's disease |
| 89 | College AFB | 60–69 | C | M | 33 | FTT | IV | +++ | ++++ | + | + | + | Alzheimer's disease |
| 90 | Pro AFB, Vet | 70–79 | C | M | 34 | FTT | IV | +++ | ++ | ++ | +++ | +++ | Alzheimer's disease |
| 91 | Pro AFB | 60–69 | C | M | 33 | FTT | IV | +++ | ++ | ++ | | + | Alzheimer's disease, Parkinson's disease |

## Table 2 Continued

| Case | MTBI exposure (sport / military) | Race | Age (decade) | Sex | ApoE | Cause of death | CTE | Amyloid-β DP | NP | CAA | αSYN | TDP-43 | Other diagnoses |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 92 | Pro AFB | C | 70–79 | M | 34 | FTT | IV | +++ | ++ | | ++++ | ++ | Alzheimer's disease, Lewy Body disease |
| 93 | Amateur ice hockey, Vet | C | 80–89 | M | 33 | FTT | IV | +++ | +++ | ++ | +++ | + | Alzheimer's disease, Parkinson's disease |
| 94 | College AFB, college rugby, Vet | C | 60–69 | M | 33 | FTT | IV | + | +++ | | +++ | ++++ | Parkinson's disease |
| 95 | Pro AFB | C | 60–69 | M | 24 | Respiratory failure | II | + | | | ++++ | | Lewy Body disease |
| 96 | Pro AFB | C | 70–79 | M | 33 | Cardiac | III | ++++ | + | | ++++ | + | Lewy Body disease |
| 97 | Pro ice hockey | C | 70–79 | M | 34 | FTT | III | ++ | ++ | | +++++ | | Lewy Body disease |
| 98 | Pro AFB, Vet | C | 70–79 | M | 44 | Cardiac | IV | + | | | +++++ | | Parkinson's disease |
| 99 | Pro AFB, Vet | C | 80–89 | M | 33 | Malignancy | III | +++ | | + | +++++ | | Lewy Body disease |
| 100 | Pro AFB, Vet | C | 70–79 | M | 33 | Cardiac | III | + | | | +++ | +++++ | Parkinson's disease, FTLD-TDP |
| 101 | Canadian AFB | C | 70–79 | M | 23 | Respiratory failure | II | | | | + | + | Parkinson's disease, PSP |
| 102 | Pro AFB | AA | 60–69 | M | 33 | FTT | I | | | | | ++ | Pick's |
| 103 | Pro AFB | AA | 80–89 | M | 34 | FTT | IV | ++++ | | ++ | | ++++ | FTLD-TDP |

AFB = American football; αSYN = alpha-synuclein; AA = African American; Box = Boxing; C = Caucasian; CAA = cerebral amyloid angiopathy; Comp = competitive; DP = diffuse amyloid β plaques; F = female; FB = football; FTT = failure to thrive associated with dementia; GSW = gunshot wound; H = Hispanic; HS = high school; ICH = intracerebral haemorrhage; IED = improvised explosive device blast exposure; LBD = Lewy body disease; M = male; MS = middle school; MTBI = mild traumatic brain injury; MVA = motor vehicle accident; MSA = multiple system atrophy; n/a = not available; NP = neuritic amyloid β plaques; Pick's = Pick's disease; PT = post-traumatic; PSP = progressive supranuclear palsy; Pro = professional; SIS = second impact syndrome; TBI = traumatic brain injury; TDP43 = TAR DNA-binding protein; Vet = military veteran. Scoring scale: + = mild, + + = moderate, + + + = severe, + + + + = very severe.

brain injury sample, 11.8% of CTE cases) (Table 2). The brains of seven subjects fulfilled criteria for CTE plus Alzheimer's disease (mean age 69.9 ± 6.5 years, 8.2% of mild traumatic brain injury sample, 10.3% CTE cases); 11 were diagnosed with CTE plus Lewy body disease (mean age 73.4 ± 6.2 years; 12.9% of the mild traumatic brain injury sample, 16.2% of CTE cases), either as Parkinson's disease, transitional or diffuse Lewy body disease; and four (mean age 75.5 ± 5.0 years; 4.7% of the mild traumatic brain injury sample, 5.9% of CTE cases) were diagnosed with CTE plus FTLD [FTLD-TDP in two, FTLD-tau in two (progressive supra-nuclear palsy and Pick's disease in one each)] (Table 2).

## Amyloid-β and Lewy bodies

Amyloid-ß deposition, either as diffuse plaques, neuritic plaques or vascular amyloid, was found in 30 brains (35.3% of the mild traumatic brain injury sample, 44.1% of CTE cases) and 14 (27.4%) pure CTE cases. Subjects with CTE and pure CTE whose brains showed amyloid-ß deposits were significantly older than those without amyloid-ß ($P < 0.0001$; $P < 0.0001$). Alpha-synuclein-positive Lewy bodies were found in 15 of the CTE cases (22.0%). In two cases with CTE, Lewy bodies were restricted to the olfactory bulb and medulla, and in two cases with CTE plus Alzheimer's disease, Lewy bodies were restricted to the amygdala. Subjects with Lewy bodies were significantly older than those without ($P = 0.03$).

## Neuropathology of chronic traumatic encephalopathy

In individuals with CTE or CTE-MND, 13 had diffuse plaques (25.5%), 10 had modest numbers of neuritic plaques (19.6%) and seven had small amounts of vascular amyloid (13.7%). These 51 brains showed a predictable range of unique p-tau pathology that could be divided into four distinct stages of disease (Figs 1–3). CTE disease severity ranged from very mild (stage I/IV, $n = 7$, age range 17–56 years, mean 28.3 years ± 13.5), mild (stage II/IV, $n = 14$, age range 21–87 years, mean 44.3 years ± 16.7), moderate (stage III/IV, $n = 15$, age range 38–82 years, mean 56.0 years ± 14.2) to severe (stage IV/IV, $n = 15$, age range 51–98 years, mean 77.4 years ± 11.7) (Table 2 and Supplementary Tables 3 and 4). The p-tau neurofibrillary tangles at all stages were immunoreactive for both 3 R and 4 R tau, and astrocytic tangles were predominantly immunoreactive for 4 R tau (Fig. 2).

## Stage I chronic traumatic encephalopathy

Seven brains showed stage I CTE (Table 2, Cases 36–42, Figs 3 and 4, Supplementary Tables 2 and 3). Mild lateral ventricular enlargement was found in three of the five intact brain specimens. The gross neuropathological features and brain weights were otherwise unremarkable (mean brain weight 1463.3 ± 179.0 g). Microscopically, stage I was characterized by focal epicentres of perivascular p-tau neurofibrillary and astrocytic tangles, most prominent in the sulcal depths and typically affecting superior and dorsolateral frontal cortices (Figs 1–3). The cortex surrounding

Case 2:15-cr-00237-DCN Document 201 Page 1665 Date Filed 10/08/2025



**Figure 3** The four stages of CTE. In stage I CTE, p-tau pathology is restricted to discrete foci in the cerebral cortex, most commonly in the superior, dorsolateral or lateral frontal cortices, and typically around small vessels at the depths of sulci (black circles). In stage II CTE, there are multiple epicentres at the depths of the cerebral sulci and localized spread of neurofibrillary pathology from these epicentres to the superficial layers of adjacent cortex. The medial temporal lobe is

the epicentres was unremarkable except for rare isolated neurofibrillary tangles in superficial laminae. Low densities of neurofibrillary tangles were found in the locus coeruleus in two cases. One case showed sparse neurofibrillary tangles in the hippocampus, entorhinal cortex and substantia nigra; another case displayed p-tau neurofibrillary tangles and distorted axonal profiles in the medulla (Case 37). Phosphorylated neurofilament immunohistochemistry showed scattered distorted axonal varicosities in frontal cortex, subcortical white matter and deep white matter tracts of the diencephalon, which were also occasionally immunoreactive for p-tau (Fig. 4). TDP-43 immunopositive neurites were found in four of the seven cases (57%) in the frontal subcortical white matter and fornix.

### Clinical symptoms

Family interview and medical record review were available in six of the seven subjects with stage I CTE. One subject was asymptomatic. Four of the six reported headache and loss of attention and concentration, three reported short-term memory difficulties, aggressive tendencies and depression and two reported executive dysfunction and explosivity. Two subjects were diagnosed with post-traumatic stress disorder (Tables 3 and 4).

## Stage II chronic traumatic encephalopathy

Fourteen brains showed stage II pathology (Table 2, Cases 43–56). Grossly, there was no evidence of cerebral atrophy with a mean brain weight of 1463.3 ± 100.1 g. There was mild enlargement of the frontal horn of the lateral ventricles or third ventricle in 6 of the 11 intact specimens, and a small cavum septum (0.2–0.7 cm) was found in four; the third ventricle was enlarged and sharply concave in three. Three cases showed pallor of the locus coeruleus and substantia nigra. There was severe gliosis and atrophy of one mammillary body in one case (Case 45). P-tau pathology was found in multiple discrete foci of the cortex, most commonly superior, dorsolateral, lateral, inferior and subcallosal frontal, anterior, inferior and lateral temporal, inferior parietal, insular and septal cortices. Neurofibrillary tangles were also found in the superficial layers of cortex (Figs. 1 and 3). Moderate densities of neurofibrillary tangles were also found in the locus coeruleus, nucleus basalis of Meynert and amygdala even in the younger individuals (Fig. 4 and Supplementary Table 3). Low densities of p-tau neurofibrillary tangles and

**Figure 3** Continued

spared neurofibrillary p-tau pathology in stage II CTE. In stage III, p-tau pathology is widespread; the frontal, insular, temporal and parietal cortices show neurofibrillary degeneration with greatest severity in the frontal and temporal lobe, concentrated at the depths of the sulci. Also in stage III CTE, the amygdala, hippocampus and entorhinal cortex show neurofibrillary pathology. In stage IV CTE, there is severe p-tau pathology affecting most regions of the cerebral cortex and the medial temporal lobe, sparing calcarine cortex in all but the most severe cases. All images, CP-13 immunostained 50-μm tissue sections.



**Figure 4** Hyperphosphorylated tau pathology in the four stages of CTE. In stage I CTE (first column), p-tau pathology is found in limited discrete perivascular foci (**A**), typically at the depths of sulci or around small vessels. There is mild p-tau pathology in cerebral cortices neighbouring the epicentres (**E**). There is no or minimal p-tau pathology in the amygdala (**I**) or CA1 of hippocampus (**M**). Occasional p-tau neurites are found in the nucleus basalis of Meynert (**Q**) and substantia nigra (**U**); isolated neurofibrillary tangles are present in the locus coeruleus (**Y**) in stage I. In stage II CTE (second column), there is spread of pathology from focal epicentres (**B**) to the superficial layers of adjacent cortex (**F**). The medial temporal lobe shows only mild neurofibrillary pathology, including amygdala (**J**) and CA1 hippocampus (**N**). Nucleus basalis of Meynert (**R**) and locus coeruleus (**Z**) demonstrate moderate p-tau pathology as neurofibrillary tangles and neurites; the substantia nigra (**V**) shows only modest pathology. In stage III, p-tau pathology is severe and widespread throughout the frontal, insular, temporal and parietal cortices. The cortical epicentres and depths of the sulci often consist of confluent masses of neurofibrillary tangles and astrocytic tangles (**C**). The intervening cortices show advanced neurofibrillary degeneration (**G**). The amygdala (**K**), hippocampus (**O**) and entorhinal cortex demonstrate marked neurofibrillary pathology. The nucleus basalis of Meynert shows dense neurofibrillary tangles (**S**); the locus coeruleus (**AA**) shows advanced neurofibrillary pathology, and the substantia nigra is moderately affected (**W**) in stage III CTE. In stage IV CTE, there is widespread p-tau pathology affecting most regions of the cerebral cortex and medial temporal lobe with relative sparing of the calcarine cortex. Astrocytic tangles are prominent, and there is marked neuronal loss in the cortex, amygdala and hippocampus. Phosphorylated-tau neurofibrillary tangles are reduced in size and density. The cortical epicentres show severe neuronal loss and prominent astrocytic tangles (**D**); similar changes are found throughout the frontal, temporal and parietal cortices (**H**). The amygdala demonstrates intense gliosis and p-tau neuronal and glial degeneration (**L**). The hippocampus is sclerotic with marked neuronal loss, gliosis, ghost neurofibrillary tangles and astrocytic tangles (**P**). The nucleus basalis of Meynert shows marked neurofibrillary pathology and gliosis (**T**); the substantia nigra (**X**) and locus coeruleus (**BB**) show advanced neurofibrillary pathology. All images: CP-13 immunostained 50-μm tissue sections, some counterstained with cresyl violet, all scale bars = 100 μm.

Case 2:12-md-02323-AB   Document 6201-6   Filed 10/08/2015   Page 1 of 16

**Table 3** Clinical symptoms associated with stages of CTE

| Case | Years of education | Family history of neurological disease | Age of symptom onset | Presenting symptoms | Headache | Depression | Impulsivity | Explosivity | Aggression |
|---|---|---|---|---|---|---|---|---|---|
| **Stage I CTE** | | | | | | | | | |
| 36 | 11 | None | 17 | HA | ++ | | | | |
| 37 | 12 | None | 18 | HA | ++ | | | | |
| 38 | 12 | None | 20 | HA | ++ | ++ | | | ++ |
| 39 | 14 | None | 26 | ATT, STM, LANG | | ++ | | ++ | + |
| 41 | 16 | None | 30 | HA, STM | ++ | ++ | + | ++ | + |
| 42 | 16 | Mother: Alzheimer's disease | n/a | None | | | | | |
| **Stage II CTE** | | | | | | | | | |
| 43 | 15 | None | n/a | None | | | + | | |
| 44 | 11 | None | 26 | HA, STM | ++ | ++ | ++ | ++ | ++ |
| 45 | 11 | None | 26 | HA, STM, MS | ++ | ++ | ++ | ++ | ++ |
| 46 | 16 | None | 30 | MND | | ++ | + | + | ++ |
| 47 | 13 | None | 31 | STM, DEP, PTSD | + | ++ | ++ | ++ | |
| 48 | 17 | None | 40 | MND | + | ++ | ++ | ++ | |
| 49 | 16 | None | 42 | HA, DEP, ATT | | ++ | + | | |
| 50 | 11 | None | 41 | STM, ATT, EXP, EXEC | + | + | | ++ | ++ |
| 51 | 20 | None | 46 | HA | ++ | + | | | |
| 52 | 16 | Father: possible Alzheimer's disease, bipolar disease | 47 | STM, ATT, EXEC, DEP | | ++ | | + | + |
| 53 | 12 | Father: possible undiagnosed dementia | 48 | MND | | ++ | | + | + |
| 54 | 14 | None | 52 | HA, STM | ++ | ++ | ++ | ++ | ++ |
| 55 | 13 | None | n/a | None | | | | + | + |
| 56 | 18 | None | n/a | None | | | | | |
| **Stage III CTE** | | | | | | | | | |
| 57 | 14.5 | None | 34 | HA, MS, PAR | ++ | + | ++ | ++ | ++ |
| 58 | 15 | None | 37 | HA, psychosis, STM | ++ | ++ | ++ | ++ | ++ |
| 59 | 16 | None | 27 | MND | | + | | | |
| 60 | 16 | None | 38 | STM, DEP, EXP | | ++ | ++ | ++ | ++ |
| 61 | 14 | None | 40 | STM, ATT, EXEC, EXP | | ++ | | ++ | |
| 62 | 16 | Father: bipolar disease | 42 | ATT, EXEC | | + | | | |
| 63 | 18 | Father: Alzheimer's disease | 45 | HA, EXP | ++ | + | + | ++ | ++ |
| 64 | 16 | None | 53 | STM, ATT, EXEC | + | | | ++ | |
| 66 | 16 | None | 56 | STM, apathy | | + | | ++ | ++ |
| 67 | 16 | Brother: mental illness | 63 | STM, EXEC, ATT | | + | | + | + |
| 68 | 15 | None | n/a | None | | + | | | |
| 69 | 18 | Father: depression | 52 | HA, STM, DEP, IMP | ++ | ++ | ++ | | |
| **Stage IV CTE** | | | | | | | | | |
| 72 | 12 | None | 42 | AGG, DEP, PAR | | ++ | | + | ++ |
| 73 | 15 | None | 46 | EXEC, IMP, PAR, AGG | | ++ | ++ | ++ | ++ |
| 74 | 12 | Sibling: ALS | 64 | STM, EXEC, PAR | | | ++ | ++ | ++ |

(continued)

**Table 3 Continued**

| Case | Years of education | Family history of neurological disease | Age of symptom onset | Presenting symptoms | Headache | Depression | Impulsivity | Explosivity | Aggression |
|---|---|---|---|---|---|---|---|---|---|
| 75 | 12 | None | 56 | STM, DEP, AGG, EXP | | ++ | | ++ | ++ |
| 76 | 12 | None | 35 | PAR, IMP, BIZ | | ++ | + | ++ | ++ |
| 77 | 16 | Mother: bipolar disease | 58 | DEP, AGG | | ++ | ++ | ++ | ++ |
| 78 | 18 | None | 60 | STM, EXEC, BIZ | | | | | |
| 80 | 16 | None | 76 | STM, EXEC, LANG | | ++ | | | + |
| 81 | 12 | Brother: Alzheimer's disease | 35 | STM, ATT, Falls | | | | | ++ |
| 82 | 18 | None | 49 | ATT, AGG, EXP | ++ | ++ | ++ | ++ | ++ |
| 83 | 10 | None | 65 | AP, EXEC, EXP | | | | ++ | ++ |
| 84 | 16 | None | 74 | PAR | ++ | | | + | + |
| 86 | 16 | None | 83 | STM, EXEC | | | | | |

AGG = aggression; ALS = amyotrophic lateral sclerosis; ATT = attention loss; BIZ = bizarre behaviours; DEP = Depression; EXEC = executive dysfunction; EXP = explosivity; HA = headaches; IMP = impulsivity; LANG = language disturbance; MS = mood swings; n/a = not applicable; PAR = paranoia; PTSD = post-traumatic stress disorder; STM = short-term memory loss.

pretangles were present in the hypothalamus, CA1 of hippocampus, entorhinal cortex, thalamus, substantia nigra and dorsal and median raphe nuclei of the midbrain. Distorted axonal varicosities, some p-tau immunoreactive, were found in frontal and temporal cortices as well as white matter tracts (Figs. 1 and 5). Eleven of the 14 subjects with stage II CTE also showed TDP-43 immunopositivity (79%). TDP-43 immunopositivity consisted of rare neurites or inclusions in the cerebral subcortical white matter, brainstem or medial temporal lobe in eight cases, often in a subpial, periventricular or perivascular distribution (Fig. 6). Three subjects showed severe TDP-43 abnormalities as neuronal and glial inclusions and neurites in widespread regions of the CNS, including the cerebral hemispheres, basal ganglia, diencephalon, brainstem, anterior horn cells and white matter tracts of the spinal cord (Fig. 6). These cases also demonstrated degeneration of lateral and ventral corticospinal tracts of the spinal cord and marked loss of anterior horn cells from the spinal cord; features that support the diagnosis of CTE-MND.

### Clinical symptoms

Eleven of the 14 individuals with stage II CTE were symptomatic; common presenting symptoms were depression or mood swings, headaches and short-term memory loss. Three subjects presented with symptoms of MND. Symptoms in stage II subjects included depression or mood lability, explosivity, loss of attention and concentration, short-term memory loss and headache. Less common symptoms included executive dysfunction, impulsivity, suicidality and language difficulties (Tables 3 and 4).

## Stage III chronic traumatic encephalopathy

Fifteen brains showed stage III pathology (Table 2, Cases 57–71). Grossly, most brains showed mild cerebral atrophy with dilation of the lateral and third ventricles; mean brain weight was 1394 ± 106.7 g. Septal abnormalities were found in 5 of the 12 intact brain specimens (42%) ranging from cavum septum, septal perforations or complete absence of the septum. Seven brains showed moderate depigmentation of the locus coeruleus (58%); six showed mild depigmentation of the substantia nigra (42%). Other common gross pathological features were atrophy of the mammillary bodies and thalamus, sharply convex contour of the medial thalamus, thinning of the hypothalamic floor and thinning of the corpus callosum. Microscopically, neurofibrillary tangles were widespread throughout superior frontal, dorsolateral frontal, inferior orbital, septal, insular, temporal pole, superior middle and inferior temporal and inferior parietal cortices. There were also extensive neurofibrillary tangles in the hippocampus, entorhinal cortex, amygdala, nucleus basalis of Meynert and locus coeruleus (Supplementary Table 3). Neurofibrillary tangles were frequent in olfactory bulbs, hypothalamus, mammillary bodies, substantia nigra and dorsal and median raphe nuclei. Sparse neurofibrillary tangles were found in Rolandic, cingulate cortices, thalamus, nucleus accumbens, dorsal motor nucleus of the vagus, dentate nucleus of the cerebellum and spinal cord. Severe axonal loss and distorted axonal profiles were found in the subcortical white matter, particularly involving the frontal and temporal cortices (Fig. 5). TDP-43 immunoreactive neurites were evident in the

### Table 4 Clinical symptoms associated with stages of CTE

| Case | Attention | Paranoia | Executive function | Suicidal | Memory | Language | Visuospatial | Apathy | Dementia | Gait | Dysarthria | Parkinsonian | PTSD |
|------|-----------|----------|--------------------|----------|--------|----------|--------------|--------|----------|------|------------|--------------|------|
| **Stage I CTE** | | | | | | | | | | | | | |
| 36 | + | | | | | | | | | | | | |
| 37 | | | | | | | | | | | | | |
| 38 | + + | | | | + | | | + | | | | | PTSD |
| 39 | + + | | + | + + | + + | + | | | | | | | PTSD |
| 41 | + | | + | | + | | | | | | | | |
| 42 | | | | | | | | | | | | | |
| **Stage II CTE** | | | | | | | | | | | | | |
| 43 | | | | + + | | | | | | | | | |
| 44 | + + | | | | + | | | | | | | | |
| 45 | + + | | + + | | + + | + + | + + | + | | | | | |
| 46 | + | | + | + | + | | | + | | a | a | | |
| 47 | + + | | + | + + | + + | + | | + | | | | | PTSD |
| 48 | + | | | | + | | | | | a | a | | |
| 49 | + + | | | | | | | | | | | | |
| 50 | + + | + + | + + | | + + | | + + | | | | | | |
| 51 | | | | | | | | | | | | | |
| 52 | + + | | + + | + + | + + | + | | | | | | | |
| 53 | | | | | | | | | | a | a | | |
| 54 | + | | + + | | + | + | + | + | | | | | |
| 55 | | | | | | | | | | | | | |
| 56 | | | | | | | | | | | | | |
| **Stage III CTE** | | | | | | | | | | | | | |
| 57 | + | + + | + + | + + | + | + | | + | | | | | |
| 58 | + + | + + | + + | + + | + + | + + | + + | | + | + | + | | |
| 59 | + + | | | | | | | | | a | a | | |
| 60 | + | | + | | + | | | | + | | | | |
| 61 | + + | | + + | | + + | + | | + | + | | | | |
| 62 | + + | | + + | | + | | | + | + | | | | |
| 63 | + + | | + + | + + | + + | + | | + | + | | | | |
| 64 | + | | + | | + | + | | + | | | | | |
| 66 | + + | | + + | | + | | | + + | + | a | a | | |
| 67 | + + | | + + | | + + | | + + | | + | | | | |
| 68 | | | | | | | | | + | | | | |
| 69 | + | | + | | + + | + | + | | + | a | a | | |
| **Stage IV CTE** | | | | | | | | | | | | | |
| 72 | + + | + + | + + | | + + | + | + + | + | + + | + | + | | |
| 73 | + + | + + | + + | + + | + + | + + | | | + + | a | a | | |
| 74 | + + | + + | + + | | + + | | + + | | + + | a | a | + | |
| 75 | + + | + + | + + | | + + | + + | | + + | + + | + + | + + | + | |
| 76 | + | + + | + + | | + + | | | | + + | | | | |
| 77 | + + | | + + | + | + + | | | + + + | + + | + | | | |
| 78 | + + | | + + | | + + | | + + | + + + | + + | + + | + + | + | |
| 80 | | | + + | | + + | + + | | | + + | | | | |
| 81 | + + | + + | | + + | + + | + + | + | | + + | + | + | + | |
| 82 | + + | | + + | | + + | + + | | | + + | + | + + | + | |
| 83 | + + | | + + | | + + | + + | + + | + + | + + | | | | |
| 84 | | + + | + + | | + + | + + | + + | + | + + | + | | | |
| 86 | + + | | + + | | + + | + + | + + | | + + | | | | |

a Gait and speech difficulties associated with MND.
PTSD = post-traumatic stress disorder.

cerebral cortex, medial temporal lobe or brainstem of most cases. Widespread, more severe TDP-43 neuronal and glial inclusions and neurites were found in three cases with stage III CTE diagnosed with CTE-MND.

### Clinical symptoms

Family interview and medical record review were available for 12 subjects with stage III CTE; one individual was asymptomatic (Case 68). The most common presenting symptoms were memory loss, executive dysfunction, explosivity and difficulty with attention and concentration. Other symptoms frequently found in stage III subjects were depression or mood swings, visuospatial difficulties and aggression. Less common symptoms included impulsivity, apathy, headaches and suicidality. Seventy-five per cent of subjects were considered cognitively impaired. Two subjects developed symptoms of MND after the onset of cognitive or behavioural abnormalities; another developed cognitive changes after the onset of MND (Tables 3 and 4).



**Figure 5** The axonal pathology of CTE. (**A** and **B**) Phosphorylated neurofilament immunostaining for SMI-34 (red) in control subcortical white matter shows regular alignment and linear morphology of most axonal profiles. (**C** and **D**) Axons in control cerebral cortex stained with Bielschowsky's silver method show a fine linear pattern and regularity. (**E**) Phosphorylated neurofilament immunostaining (SMI-34) in control cerebral cortex also shows regular alignment and linear morphology of axons even around small vessels. (**F** and **G**) Phosphorylated neurofilament immunostaining in cerebral cortex of stage II CTE demonstrates alterations in alignment and numerous rounded axonal varicosities around small vessels (asterisks). (**H** and **I**) Bielschowsky silver method in stage I CTE shows neurofibrillary tangles (arrows) and silver positive axonal varicosities (asterisks) around small arteriole. (**J**) SMI-34 immunostaining of same cortical focus as in H and I also shows axonal varicosities (asterisks) around cortical arteriole. (**K** and **L**) SMI-34 immunostaining in cerebral cortex of stage III CTE shows marked reduction in axonal staining and numerous large, irregular axonal varicosities. A small arteriole shows marked infiltration with haemosiderin-laden macrophages (arrow). (**M**) Axonal varicosities and irregularities are also found in stage I CTE. (**N**) CTE stage II double immunostained for phosphorylated tau (PHF-1, brown) and phosphorylated neurofilament (SMI-34, red) shows axonal swellings in continuity with phosphorylated tau neuritic abnormalities. (**O**) Double immunofluorescence staining for phosphorylated neurofilament, SMI-34 (red) and PHF-1 (green) in the subcortical white matter of CTE stage III demonstrates contiguous axonal varicosities (red) as well as p-tau (green) (arrowheads) in the axon. (**P** and **Q**) SMI-34 immunostaining in subcortical white matter of stage IV CTE shows severe axonal loss and multiple large, irregular axonal varicosities. (**R** and **S**) Phosphorylated tau (AT8, brown) immunoreactive irregular axonal profiles found in deep white matter tracts CTE stage I. (**T**) Dense axonal varicosities, distorted axonal profiles and neurofibrillary tangles (arrows) characterize the cerebral cortex of CTE stage IV immunostained with phosphorylated neurofilament (SMI-34). Images from 10 μm tissue sections, scale bars = 100 μm, except **O** = 10 μm.

## Stage IV chronic traumatic encephalopathy

Fifteen individuals were considered to have stage IV CTE (Table 2, Cases 72–86). Macroscopic brain changes included atrophy of the cerebral cortex and white matter and marked atrophy of the medial temporal lobe, thalamus, hypothalamus and mammillary body. Mean brain weight was significantly smaller than lower stage CTE (1208 ± 168.1 g; P < 0.001). Most brains showed ventricular enlargement, a sharply concave contour of the third ventricle, cavum septum pellucidum ranging in size from 0.5 to

1.0 cm, and septal perforations or septal absence. Pallor of the locus coeruleus and substantia nigra were found in all instances where it could be assessed. Microscopically, there was striking neuronal loss in the cortex, hippocampal sclerosis affecting CA1 and subiculum and astrocytic p-tau pathology. Severe p-tau abnormalities were found widely distributed throughout the cerebrum, diencephalon, basal ganglia, brainstem and spinal cord (Figs 1–4). Primary visual cortex was relatively spared. Subcortical white matter tracts showed marked axonal loss and distorted axonal profiles (Fig. 5). TDP-43 immunoreactivity was severe in most cases consisting of dense TDP-43 positive rounded and threadlike

Case 2:15-cv-02711-DMG-AGR Document 20-1 Filed 10/06/2051 Page 1671 of Case 2:15-cv-02711-DMG-AGR Document 20-1 Filed 10/06/2025 Page 217 of 675



**Figure 6** The phosphorylated TDP43 pathology of CTE and CTE-MND. (**A**) pTDP-43 immunostained neurites found in periventricular region of the third ventricle in CTE II. (**B**) CTE stage II demonstrating pTDP-43 immunostained neurites in a perivascular distribution. (**C**) pTDP-43 immunoreactive inclusion in locus coeruleus in CTE stage II. (**D**) Clusters of pTDP-43 immunoreactive neurites in the subpial region of the brainstem in stage III CTE. (**E**) Perivascular pTDP-43 neurites in stage III CTE. (**F**) Subpial pTDP-43 neurites in the corpus callosum of stage IV CTE. (**G**) Dense pTDP-43 abnormalities in the temporal cortex of stage IV CTE-MND. (**H**) Dense pTDP-43 pathology of CA1 hippocampus in stage IV CTE. (**I–O**) (**I**) perivascular focus at sulcal depth pTDP-43 abnormalities are widespread throughout the CNS in CTE associated with MND (CTE-MND) (**J**, corpus callosum; **K**, cerebral peduncle; **L**, fornix; **M**, subpial region of frontal cortex; **N**, perivascular region frontal cortex; **O**, Rolandic cortex). All images: 50-µm tissue sections, all scale bars = 100 µm.

neurites, intraglial and intraneuronal inclusions in cerebral cortex, medial temporal lobe, diencephalon, basal ganglia, brainstem and, less frequently, spinal cord. Subpial, periventricular and perivascular TDP-43 immunoreactive neurites were also present (Fig. 6). In the most severely affected cases, there were dense cortical TDP-43 inclusions and neurites in all neocortical layers,

particularly layer II, as well as occasional TDP-43-positive inclusions in the dentate fascia of the hippocampus.

## Clinical symptoms

Family interview and medical record review were available on 13 subjects with stage IV CTE; all were symptomatic. Executive

dysfunction and memory loss were the most common symptoms at onset, and all developed severe memory loss with dementia during their course. Most subjects also showed profound loss of attention and concentration, executive dysfunction, language difficulties, explosivity, aggressive tendencies, paranoia, depression, gait and visuospatial difficulties. Less common symptoms were impulsivity, dysarthria and parkinsonism; 31% were suicidal at some point in their course. Two of the 13 subjects developed symptoms of MND years after developing cognitive and behavioural abnormalities.

## Professional American football players

Of the 35 former professional American football players (34 National Football League and one Canadian Football League), one showed no disease (Case 27, age 26 years), three had stage I/IV disease, three had stage II/IV disease, nine had stage III/IV disease, seven had stage IV/IV disease, two had CTE plus Alzheimer's disease, four had CTE plus Lewy body disease, two had CTE plus Alzheimer's disease and Lewy body disease, four had CTE plus FTLD and three had CTE-MND. One National Football League player had a primary diagnosis of Pick's disease with only modest evidence of CTE (Case 102), one had a primary diagnosis of Lewy body disease with stage II CTE (Case 95) and another had a primary diagnosis of progressive supranuclear palsy with stage II CTE (Case 101). Thirty-one of the 34 former professional American football players had stage III–IV CTE or CTE plus co-morbid disease (89%). Sixteen former National Football League players had pure CTE stage III–IV (47%), 94% were symptomatic; the most common presenting symptoms were short-term memory loss, executive dysfunction and attention and concentration loss. Mean age at symptom onset was $54.1 \pm 14.1$ years (range 34–83 years). Positions played by National Football League players positive for CTE included offensive linemen (26%), running backs (20%), defensive linemen (14%), linebackers (14%), quarterbacks (6%), defensive backs (6%), tight ends (6%) and wide receivers (6%). Mean age at death for former National Football League players diagnosed with CTE was $67.1 \pm 16.6$ years (range 38–98 years).

## Professional hockey players

Of the five former professional hockey players, the brain of one young player showed no signs of CTE (age 20 years). Three of the four former National Hockey League players had stage II CTE (75%), one had stage III CTE + Lewy body disease (25%) (mean age 51.3 years, range 28–73 years); only three of the four were symptomatic at the time of death.

## Exposure to football, steroid use, position played and ApoE genotype

Of the 103 subjects, 58 played football as their primary sport. Of those, 42 subjects were diagnosed with CTE or CTE-MND; the families of 35 were available for structured interview regarding athletic exposure. These 35 brain donors (mean age $50.3 \pm 23.3$ years, range 17–98 years) played football for a mean of $11.9 \pm 6.5$ years (range 2–24 years). The number of years

played (Spearman's test, $\rho = 0.805$, $P < 0.0001$), years since retirement (Spearman's test, $\rho = 0.753$, $P < 0.0001$) and age at death (Spearman's test, $\rho = 0.806$, $P < 0.0001$) were significantly correlated with pathological stage of CTE. Family reported number of concussions (Spearman's test, $\rho = 0.259$, $P = 0.184$); years of education (Spearman's test, $\rho = 0.258$, $P = 0.134$); lifetime steroid use (Wilcoxon–Mann–Whitney test, $P = 0.731$) and position played (Kruskal–Wallis test, $P = 0.407$) were not significantly related to CTE stage. Furthermore, of the 68 individuals diagnosed with CTE, the proportion of the sample carrying at least one ApoE e4 allele was not significantly different than that observed in the general population (Chi-square goodness of fit, $P = 0.334$).

## Military veterans

Sixteen of the 21 military veterans with CTE were also athletes, including eight National Football League players. Nine veterans saw combat: four in the Iraq and Afghanistan conflicts, one in the Gulf War, two in Vietnam and two in World War II. Three veterans with CTE experienced a moderate-to-severe traumatic brain injury while in service (one contusion, one intraparenchymal traumatic brain injury with persistent, poorly controlled post-traumatic epilepsy, one spinal cord injury). Three were exposed to blast from improvized explosive devices and explosive munitions; one athlete was also exposed to explosive munitions in Vietnam. Three veterans of the conflicts in Iraq and Afghanistan were diagnosed with post-traumatic stress disorder, two of whom were exposed to blast from improvized explosive devices and one who experienced repetitive concussive injuries during combat and in civilian life [four veterans of the Iraq and Afghanistan conflicts were also reported in Goldstein et al. (2012)].

## Cause of death and suicide

Among the 51 subjects with CTE and CTE-MND, there were seven deaths from suicide; six others clearly expressed suicidal ideations at some point during their life (26% suicidal tendencies or completed suicide, 14% completed suicide). There were six deaths from drug or alcohol overdose (12%). The most common causes of death were respiratory failure (60% associated with CTE-MND), cardiac disease, suicide, overdose, failure to thrive associated with end-stage dementia and malignancy.

# Discussion

CTE is a progressive tauopathy with distinctive clinical and pathological features that occurs after repetitive mild traumatic brain injury. Although historically, CTE has been primarily associated with boxing, CTE may also occur as a consequence of American football, hockey, wrestling, rugby and exposure to blast or concussive injury associated with military service (Corsellis and Brierley, 1959; Corsellis et al., 1973; Hof et al., 1991; McKenzie et al., 1996; Geddes et al., 1999; Omalu et al., 2005, 2006, 2010; McKee et al., 2009, 2010; Gavett et al., 2010, 2011; Costanza et al., 2011; Daneshvar et al., 2011a, b; Stern et al., 2011; Baugh et al., 2012; Goldstein et al., 2012; Saing et al., 2012). We

analysed the brains of 85 individuals with a history of repetitive mild traumatic brain injury and found evidence of CTE in 80%; all males, ranging in age from 17 to 98 years (mean = 59.5 years), including 64 athletes, 21 military veterans (most of whom were also athletes) and one individual who engaged in self-injurious head-banging behaviour. The development of CTE in one individual in this series and two others in the literature in whom self-injurious head banging was the sole environmental exposure suggests that repetitive mild traumatic brain injury alone is sufficient to trigger CTE in some people (Hof *et al.*, 1991; Geddes *et al.*, 1999). Athletes with CTE included 50 football players (33 National Football League, one Canadian Football League, one semi-professional, nine college, six high school), four National Hockey League players, one amateur hockey player, seven professional boxers, one amateur boxer and one professional wrestler. Veterans with CTE included marines, soldiers and sailors from World War II, Vietnam, Gulf War, Iraq and Afghanistan.

## Neuropathological staging of chronic traumatic encephalopathy

The evidence suggests that CTE begins focally, usually perivascularly, at the depths of the sulci in the cerebral cortex and spreads slowly over decades to involve widespread regions of neocortex, medial temporal lobe, diencephalon, basal ganglia, brainstem and spinal cord. The early, focal changes of CTE demonstrated here and by others (Hof *et al* 1991; Geddes *et al.*, 1999) are distinctive from p-tau pathology of the Alzheimer type reported in some cognitively normal young adults (Braak and Del Tredici, 2011) and in association with other environmental exposures (Anthony *et al.*, 2010). The tau isoform profile and phosphorylation state in CTE is similar to Alzheimer's disease (Schmidt *et al.*, 2001), and the neuronal tau pathology shows immunoreactivity to both 3R and 4R tau. The astrocytic p-tau pathology in CTE is predominantly 4R tau immunopositive; however, it is topographically distinct from the 4R tau immunoreactive thorn-shaped astrocytes that have been reported in the medial temporal lobe in ageing and Alzheimer's disease (Lace *et al.* 2012; López-González *et al.*, 2012).

We divided the topographically predictable pattern of p-tau pathology of CTE into four stages. Stage I was characterized by perivascular p-tau neurofibrillary tangles in focal epicentres at the depths of the sulci in the superior, superior lateral or inferior frontal cortex and was clinically associated with headache and loss of attention and concentration. In stage II CTE, neurofibrillary tangles were found in superficial cortical layers adjacent to the focal epicentres and in the nucleus basalis of Meynert and locus coeruleus. Individuals with stage II CTE experienced depression and mood swings, explosivity, loss of attention and concentration, headache and short-term memory loss. Stage III CTE showed macroscopic evidence of mild cerebral atrophy, septal abnormalities, ventricular dilation, a sharply concave contour of the third ventricle and depigmentation of the locus coeruleus and substantia nigra. There was dense p-tau pathology in medial temporal lobe structures (hippocampus, entorhinal cortex and amygdala) and widespread regions of the frontal, septal, temporal, parietal and insular

cortices, diencephalon, brainstem and spinal cord. Most individuals with stage III CTE demonstrated cognitive impairment with memory loss, executive dysfunction, loss of attention and concentration, depression, explosivity and visuospatial abnormalities. Stage IV CTE was associated with further cerebral, medial temporal lobe, hypothalamic, thalamic and mammillary body atrophy, septal abnormalities, ventricular dilation and pallor of the substantia nigra and locus coeruleus. Microscopically, p-tau pathology involved widespread regions of the neuraxis including white matter, with prominent neuronal loss and gliosis of the cerebral cortex and hippocampal sclerosis. Subjects with stage IV CTE were uniformly demented with profound short-term memory loss, executive dysfunction, attention and concentration loss, explosivity and aggression. Most also showed paranoia, depression, impulsivity and visuospatial abnormalities. Advancing pathological stage was associated with a significant decrease in brain weight and increased severity of cognitive abnormalities supporting the validity of the pathological staging scheme. In addition, pathological stage correlated with duration of exposure to American football, survival after football and age at death in those who played football.

## Spread of tau pathology

Under normal conditions in the mature human CNS, tau is primarily associated with microtubules in axons, where it is neither toxic nor associated with neurofibrillary pathology. Brain trauma causes some tau to become dissociated from microtubules in axons via mechanisms that most likely include intracellular calcium influx, glutamate receptor-mediated excitotoxicity and kinase activation mediating hyperphosphorylation of intracellular tau (Genis *et al.*, 2000; Liang *et al.*, 2009; Chen *et al.*, 2010; Tran *et al.*, 2011*a, b*; Schoch *et al.*, 2012). Tau dissociated from microtubules may become abnormally phosphorylated, misfolded, aggregated and proteolytically cleaved by calpains and caspases, all of which are associated with neurotoxicity (Amadoro *et al.*, 2006; Khlistunova *et al.*, 2006; Zilka *et al.*, 2006). Direct and indirect evidence for interneuronal tau transfer in animal models has recently suggested that interneuronal spreading of tau pathology may be due to transfer of toxic tau species between neurons (Clavaguera *et al.*, 2009; Kim *et al.*, 2010; DeCalignon *et al.*, 2012; Liu *et al.*, 2012). This might be mediated by either a prion-like templated misfolding of tau (Guo *et al.*, 2011; DeCalignon *et al.*, 2012; Liu *et al.*, 2012; reviewed by Hall and Patuto, 2012) or by calcium dysregulatory effects of oligomeric or toxic N-terminal tau in the receiving neuron (Park and Ferreira, 2005; Frost *et al.*, 2009). Although spreading of tau pathology is generally thought to occur in association with neuronal synapses, glial to glial spread, periventricular and diffuse extracellular tau migration patterns. CSF fluid enters the brain parenchyma along the Virchow–Robin spaces surrounding penetrating arteries, and brain interstitial fluid is cleared along paravenous drainage pathways suggesting a possible spread of tau pathology through this route, similar to the clearance of amyloid-ß peptide. Recent studies have demonstrated that amyloid-ß peptide (Iliff *et al.*, 2012). Clearance through paravenous flow and the CSF might also regulate extracellular levels of p-tau and TDP-43

and explain the frequent perivascular, subpial and periventricular localization of these proteins.

## Axonal injury and TDP-43

In addition to p-tau pathology, axonal injury was apparent in all stages of CTE, ranging from multifocal, often perivascular, axonal varicosities in the cortex and subcortical white matter in stages I–II to severe, diffuse axonal loss in the cortex and white matter in CTE stages III–IV. TDP-43 abnormalities were also found in the majority of CTE cases. In CTE stages I–III, sparse TDP-43 neurites were found in various regions of the cortex, medial temporal lobe and brainstem. In stage IV CTE, TDP-43 immunoreactivity was severe, with intraneuronal and intraglial inclusions, rounded and threadlike neurites in the cortex, white matter, diencephalon, basal ganglia and brainstem. Although it is well-established that p-tau pathology correlates with the severity of cognitive impairment in other tauopathies, such as Alzheimer's disease (Wilcock and Esiri, 1982; McKee *et al.*, 1991; Arriagada *et al.*, 1992), the contribution of TDP-43 proteinopathy to symptoms of CTE cannot be overlooked, especially in late stage disease. As with frontotemporal dementia, CTE usually begins with behaviour and personality changes at mid-life (mean age of onset 44.3 years, range 17–83 ± 12.1 years). But, unlike Alzheimer's disease or frontotemporal dementia, the clinical course of CTE is slow, progressing at a rate of 11–14 years between pathological stages. In addition, it is likely that axonal dysfunction and loss contribute to the production of clinical symptoms, especially in the early stages of CTE when tau pathology is focal and unlikely to account for the headache, attention and concentration loss, and memory difficulties experienced by subjects with stage I or II disease. Although the data suggest that CTE pathology is progressive, it remains to be determined whether some individuals are relatively resilient with static or even reversible pathology. Eleven per cent of individuals with CTE were asymptomatic, with a mean age at death of 59 years (range 26–87 years) and most with stage II disease, suggesting that CTE may not progress or may not progress at the same rate in all patients.

### Chronic traumatic encephalopathy plus comorbid neurodegenerative disease

Of the 68 cases with CTE, 37% had co-morbid neurodegenerative disease, including MND, Parkinson's disease or Lewy body disease, Alzheimer's disease and FTLD. Repetitive traumatic brain injury and axonal injury might trigger molecular pathways that result in the overproduction and aggregation of other proteins prone to pathological accumulation in neurodegenerative disease including TDP-43, α-synuclein and amyloid-ß, thereby increasing the likelihood of MND, FTLD Lewy body disease or Alzheimer's disease. Multiple epidemiological studies have shown that trauma is a risk factor for dementia, especially Alzheimer's disease, as well as for amyotrophic lateral sclerosis and Parkinson's disease (Plassman *et al.*, 2000; Goldman *et al.*, 2006; Schmidt *et al.*, 2010; Pupillo *et al.*, 2012). In addition, CTE and the accumulation of misfolded tau aggregates may promote the aggregation of pathological proteins through cross-seeding (Johan *et al.*, 1998; Morales *et al.*, 2009). Cross-seeding might explain the accumulation of TDP-43

in the large majority of CTE cases, its partial immunohistochemical co-location with tau and the particularly severe deposition of TDP-43 found in advanced CTE.

### Chronic traumatic encephalopathy with motor neuron disease

Most subjects with CTE-MND (63%) presented with symptoms of MND, developing cognitive and behavioural symptoms several years after the onset of motor weakness, atrophy and fasciculations. The minority presented with apathy, depression, memory loss, cognitive decline, paranoia, impulsivity or executive dysfunction 1–8 years before the development of motor neuron symptoms. There was a tendency for subjects with CTE-MND to die from respiratory insufficiency at an earlier age (53.0 ± 14.3 years) than those without MND (55.8 ± 23.0 years), although the difference was not significant. Individuals with MND and CTE, independent of the stage of p-tau pathology, demonstrated severe TDP-43 pathology as neuronal, glial and neuritic inclusions involving widespread regions of the CNS including motor cortex and spinal cord.

## Clinicopathological correlation

Neuroanatomical areas that are preferentially affected in CTE include superior, dorsolateral and lateral frontal cortices. Pathology in these regions may underlie the clinical features of disinhibition, lack of insight and poor executive function found in subjects even at early stages of CTE. Pathological involvement of the inferior temporal lobe and amygdala might contribute to the frontal symptoms and to the irritability, impulsivity, explosivity and outbursts of aggression so commonly experienced as early manifestations of CTE. Pathology of the nucleus basalis of Meynert and septal nuclei might contribute to the cognitive symptoms. Moreover, pathology in the subcallosal and inferior orbital frontal cortex and brainstem, especially the locus coeruleus and median raphe, might be related to the common symptoms of depression and mood lability. Mammillary body, anterior thalamic and hippocampal pathology most likely play a major role in producing memory loss, cognitive impairment and eventual dementia.

Even though the brain donors were not screened for cognitive impairments, an autopsy-based case series is limited by significant ascertainment bias, as families of individuals showing behavioural or cognitive symptoms are much more likely to initiate and participate in a brain donation programme than families of normally functioning individuals. Consequently, no generalizations regarding the incidence and prevalence of CTE in living athletes and veterans can be made. Furthermore, in several of the cases, the clinical symptoms were confounded by drug and alcohol abuse; therefore, the degree to which the extensive p-tau, TDP-43 and axonal pathology and neurodegeneration is responsible for the subject's clinical presentation is unclear.

Inclusion of more rigorous control subjects, such as individuals who experienced repetitive mild traumatic brain injury and did not develop behavioural or cognitive abnormalities, will be extremely useful in future studies designed to delineate critical aspects of the traumatic exposure and susceptibility to trauma-induced neurodegeneration.

Future prospective longitudinal studies are planned to address these limitations. For instance, by studying a large number of retired National Football League athletes prospectively and conducting neuropathological analyses at death, a control group matched on age, education, athletic history, medical comorbidities and cause of death can be used to examine differences between individuals with and without clinical and neuropathological evidence of Similarly, current studies focused on a large cohort of Iraq and Afghanistan veterans with histories of blast and concussive traumatic brain injuries and post-traumatic stress disorder will shed light on the overlap between traumatic brain injury, CTE and post-traumatic stress disorder, as well as the role of combat-associated injury in producing CTE (Goldstein *et al*, 2012). Clinical criteria for the diagnosis of CTE need to be established and tested. Although ApoE does not appear to be a risk factor for the development of CTE or the severity of CTE pathology in this autopsy series, large prospective population-based studies need to be implemented to address this definitively (Gandy and DeKosky, 2012). The current results establish that a distinctive pattern of neuropathological changes, previously reported primarily in boxers, can also be found in other athletes and military veterans and provide a clear impetus for future studies.

CTE is a unique neurodegenerative condition that is associated with repetitive mild traumatic brain injury. Although there are many issues that require more thorough investigation, such as how much head trauma is causative, what type, and how frequent, the age when players are most susceptible and whether some individuals are genetically more prone than others, this study clearly shows that for some athletes and war fighters, there may be severe and devastating long-term consequences of repetitive brain trauma that has traditionally been considered only mild.

# Acknowledgements

The authors gratefully acknowledge the use of resources and facilities at the Edith Nourse Rogers Memorial Veterans Hospital (Bedford, MA), Lisa McHale and Dr. David Hemmy for their expert logistical assistance, Dr. Peter Davies (Albert Einstein College of Medicine) and Dr. Rohan de Silva (Queens Square, London) for antibodies. They also gratefully acknowledge the individuals and families whose participation and contributions made this work possible.

# Funding

The Department of Veterans Affairs; Veterans Affairs Biorepository (CSP 501); Translational Research Center for Traumatic Brain Injury and Stress Disorders (TRACTS) Veterans Affairs Rehabilitation Research and Development Traumatic Brain Injury Center of Excellence (B6796-C to A.M.); National Institute of Aging Boston University Alzheimer's Disease Center [P30 AG13846 to N.W.K.; supplement 0572063345-5 to A.C.M., R.A.S.]; National Institute of Aging Boston University Framingham Heart Study R01 [AG1649]; National Institute of Neurological Disorders and Stroke, National Institute of Aging, National Institute of Child Health and Human Development R01 [NS078337 to R.A.S.]; Sports Legacy Institute; National Operating Committee on Standards for Athletic Equipment, and the resources and use of facilities at the Edith Nourse Rogers Memorial Veterans Hospital in Bedford, MA. This work was also supported by an unrestricted gift from the National Football League. The funding sources were not involved in the preparation, review or approval of this manuscript.

# Supplementary material

Supplementary material is available at *Brain* online.

# References

Amadoro G, Ciotti MT, Costanzi M, Cestari V, Calissano P, Canu N. NMDA receptor mediates tau-induced neurotoxicity by calpain and ERK/MAPK activation. Proc Natl Acad Sci USA 2006; 103: 2892–7.

Anthony IC, Norrby KE, Dingwall T, Carnie FW, Millar T, Arango JC, et al. Predisposition to accelerated Alzheimer-related changes in the brains of human immunodeficiency virus negative opiate abusers. Brain 2010; 133: 3685–98.

Arriagada PV, Growdon JH, Hedley-Whyte ET, Hyman BT. Neurofibrillary tangles but not senile plaques parallel duration and severity of Alzheimer's disease. Neurology 1992; 42: 631–9.

Baugh CM, Stamm JM, Riley DO, Gavett BE, Shenton ME, Lin A, et al. Chronic traumatic encephalopathy: neurodegeneration following repetitive concussive and subconcussive brain trauma. Brain Imaging Behav 2012; 2: 244–54.

Bigio EH. Update on recent molecular and genetic advances in FTLD. J Neuropathol Exp Neurol 2008; 67: 635–48.

Braak H, Braak E. Neuropathological staging of Alzheimer-related changes. Acta Neuropathol 1991; 82: 239–59.

Braak H, Braak E, Bohl J. Staging of Alzheimer-related cortical destruction. Eur Neurol 1993; 33: 403–8.

Braak H, Braak E. Morphological criteria for the recognition of Alzheimer's disease and the distribution pattern of cortical changes related to this disorder. Neurobiol Aging 1994; 15: 355–6.

Braak H, Del Tredici K. Nervous system pathology in sporadic Parkinson disease. Neurology 2008; 70: 1916–25.

Braak H, Del Tredici K. The pathological process underlying Alzheimer's disease in individuals under thirty. Acta Neuropathol 2011; 121: 171–81.

Brooks BR. El Escorial World Federation of Neurology criteria for the diagnosis of amyotrophic lateral sclerosis. Subcommittee on Motor Neuron Diseases/Amyotrophic Lateral Sclerosis of the World Federation of Neurology Research Group on Neuromuscular Diseases and the El Escorial 'Clinical limits of amyotrophic lateral sclerosis' workshop contributors. J Neurol Sci 1994; 124: 96–107.

Brooks BR, Miller RG, Swash M, Munsat TL. El Escorial revisited: revised criteria for the diagnosis of amyotrophic lateral sclerosis. Amyotroph Lateral Scler Other Motor Neuron Disord 2000; 1: 293–9.

Brown LM, Schinka JA. Development and initial validation of a 15-item informant version of the Geriatric Depression Scale. Int J Geriatr Psychiatry 2005; 20: 911–8.

Cairns NJ, Bigio EH, Mackenzie IR, Neumann M, Lee VM, Hatanpaa KJ, et al. Neuropathologic diagnostic and nosologic criteria for FTLD: consensus of the Consortium for Frontotemporal Lobar Degeneration. Acta Neuropathol 2007; 114: 5–22.

Chen LJ, Wang YJ, Tseng GF. Compression alters kinase and phosphatase activity and tau and MAP2 phosphorylation transiently while

inducing the fast adaptive dendritic remodeling of underlying cortical neurons. J Neurotrauma 2010; 27: 1657–69.

Clavaguera F, Bolmont T, Crowther RA, Abramowski D, Frank S, Probst A, et al. Transmission and spreading of tauopathy in transgenic mouse brain. Nat Cell Biol 2009; 11: 909–13.

Corder EH, Saunders AM, Strittmatter WJ, Schmechel DE, Gaskell PC, Small GW, et al. Gene dose of apolipoprotein E type 4 allele and the risk of Alzheimer's disease in late onset families. Science 1993; 261: 921–3.

Costanza A, Weber K, Gandy S, Bouras C, Hof PR, Giannakopoulos G, et al. Review: Contact sport-related chronic traumatic encephalopathy in the elderly: clinical expression and structural substrates. Neuropathol Appli Neurobiol 2011; 37: 570–84.

Corsellis JA, Brierley JB. Observations on the pathology of insidious dementia following head injury. J Ment Sci 1959; 105: 714–20.

Corsellis JA, Bruton CJ, Freeman-Browne D. The aftermath of boxing. Psychol Med 1973; 3: 270–303.

Critchley M. Punch-drunk syndromes: the chronic traumatic encephalopathy of boxers. In: Hommage à Clovis Vincent. Paris: Maloine, 1949.

Critchley M. Medical Aspects of Boxing, Particularly from a Neurological Standpoint. Br Med J 1957; 1: 357–62.

Daneshvar DH, Baugh CM, Nowinski CJ, McKee AC, Stern RA, Cantu RC. Helmets and mouth guards: the role of personal equipment in preventing sport-related concussions. Clin Sports Med 2011; 30: 145–63.

Daneshvar DH, Nowinski CJ, McKee AC, Cantu RC. The epidemiology of sport-related concussion. Clin Sports Med 2011; 30: 1–17.

De Calignon A, Polydoro M, Suárez-Calvet M, William C, Adamowicz DH, Kopeikina KJ, et al. Propagation of tau pathology in a model of early Alzheimer's disease. Neuron 2012; 73: 685–97.

Del Tredici K, Rub U, De Vos RA, Bohl JR, Braak H. Where does parkinson disease pathology begin in the brain? J Neuropathol Exp Neurol 2002; 61: 413–26.

Dickson DW. Neuropathology of non-Alzheimer degenerative disorders. Int J Clin Exp Pathol 2009; 1: 1–23.

Frost B, Jacks RL, Diamond MI. Propagation of tau misfolding from the outside to the inside of a cell. J Biol Chem 2009; 284: 12845–52.

Galvin JE, Roe CM, Powlishta KK, Coats MA, Muich SJ, Grant E, et al. The AD8: a brief informant interview to detect dementia. Neurology 2005; 65: 559–64.

Gandy S, Dekosky ST. APOE ε4 status and traumatic brain injury on the gridiron or the battlefield. Sci Transl Med 2012; 4: 134ed4.

Gavett BE, Stern RA, Cantu RC, Nowinski CJ, McKee AC. Mild traumatic brain injury: a risk factor for neurodegeneration. Alzheimers Res Ther 2010; 2: 18.

Gavett BE, Stern RA, McKee AC. Chronic traumatic encephalopathy: a potential late effect of sport-related concussive and subconcussive head trauma. Clin Sports Med 2011; 30: 179–88.

Geddes JF, Vowles GH, Nicoll JA, Revesz T. Neuronal cytoskeletal changes are an early consequence of repetitive head injury. Acta Neuropathol 1999; 98: 171–8.

Genis L, Chen Y, Shohami E, Michaelson DM. Tau hyperphosphorylation in apolipoprotein E-deficient and control mice after closed head injury. J Neurosci Res 2000; 60: 559–64.

Goldman SM, Tanner CM, Oakes D, Bhudhikanok GS, Gupta A, Langston JW. Head injury and Parkinson's disease risk in twins. Ann Neurol 2006; 60: 65–72.

Goldstein LE, Fisher AM, Tagge CA, Zhang XL, Velisek L, Sullivan JA, et al. Chronic traumatic encephalopathy in blast-exposed military veterans and a blast neurotrauma mouse model. Sci Transl Med 2012; 4: 134ra60.

Guo JL, Lee VM. Seeding of normal Tau by pathological Tau conformers drives pathogenesis of Alzheimer-like tangles. J Biol Chem 2011; 286: 15317–31.

Hall GF, Patuto BA. Is tau now ready for admission to the Prion club? Prion 2012; 6: 223–233.

Hof PR, Knabe R, Bovier P, Bouras C. Neuropathological observations in a case of autism presenting with self-injury behaviour. Acta Neuropathol 1991; 82: 321–6.

Iliff JJ, Wang M, Liao Y, Plogg BA, Peng W, Gundersen GA, et al. A paravascular pathway facilitates csf flow through the brain parenchyma and the clearance of interstitial solutes, including amyloid β. Sci Transl Med 2012; 4: 147 ra111.

Johan K, Westermark G, Engström U, Gustavsson A, Hultman P, Westermark P. Acceleration of amyloid protein A amyloidosis by amyloid-like synthetic fibrils. Proc Natl Acad Sci USA 1998; 95: 2558–63.

Kim WH, Lee S, Jung C, Ahmed A, Lee G, Hall GF. Interneuronal Transfer of Human Tau Between Lamprey Central Neurons in situ. J Alzheimer's Dis 2010; 19: 647–64.

Khlistunova I, Biernat J, Wang Y, Pickhardt M, von Bergen M, Gazova Z, et al. Inducible expression of Tau repeat domain in cell models of tauopathy: aggregation is toxic to cells but can be reversed by inhibitor drugs. J BiolChem 2006; 281: 1205–1214.

Lace G, Ince PG, Brayne C, Savva GM, Matthews FE, de Silva R, et al. Mesial temporal astrocyte tau pathology in the MRC-CFAS ageing brain cohort. Dement Geriatr Cogn Disord 2012; 3 (34): 15–24.

Liang Z, Liu F, Iqbal K, Grundke-Iqbal I, Gong C-X. Dysregulation of tau phosphorylation in mouse brain during excitotoxic damage. J Alzheimers Dis 2009; 17: 531–9.

Litvan I, Hauw JJ, Bartko JJ, Lantos P, Daniel SE, Horoupian DS, et al. Validity and reliability of the preliminary NINDS neuropathologic criteria for progressive supranuclear palsy and related disorders. J Neuropathol Exp Neurol 1996; 55: 97–105.

Liu L, Drouet V, Wu JW, Witter MP, Small SA, Clelland C, et al. Trans-synaptic spread of tau pathology in vivo. PLoS One 2012; 7: e31302.

López-González I, Carmona M, Blanco R, Luna-Muñoz J, Martínez-Mandonado A, Mena R, et al. Characterization of thorn-shaped astrocytes in white matter of temporal lobe in Alzheimer disease brains. Brain Pathol 2012, doi: 10.1111/j.1750-3639.2012.00627.x.

Mackenzie IR, Neumann M, Bigio EH, Cairns NJ, Alafuzoff I, Kril J, et al. Nomenclature and nosology for neuropathologic subtypes of FTLD: an update. Acta Neuropathol 2010; 119: 1–4.

Martland HS. Punch Drunk. JAMA 1928; 91: 1103–7.

McKee AC, Au R, Cabral HJ, Kowall NW, Seshadri S, Kubilus C, et al. Visual association pathology in preclinical Alzheimer's disease. J Neuropath Exp Neurol 2006; 65: 621–30.

McKee AC, Cantu RC, Nowinski CJ, Hedley-Whyte ET, Gavett BE, Budson AE, et al. Chronic traumatic encephalopathy in athletes: progressive tauopathy after repetitive head injury. J Neuropathol Exp Neurol 2009; 68: 709–35.

McKee AC, Gavett BE, Stern RA, Nowinski CJ, Cantu RC, Kowall NW, et al. TDP-43 proteinopathy and motor neuron disease in chronic traumatic encephalopathy. J Neuropathol Exp Neurol 2010; 69: 918–29.

McKee AC, Kosik KS, Kowall NW. Neuritic pathology and dementia in Alzheimer's disease. Ann Neurol 1991; 30: 156–65.

McKee A, Montine T, Alvarez V, Schantz A, Steinbart E, Bird T. Distinctive patterns of tau and tdp-43 in a former professional football player and marine as compared to 3 siblings. J Neuropathol Exp Neurol 2011; 70 (6): 517.

McKeith IG, Galasko D, Kosaka K, Perry EK, Dickson DW, Hansen LA, et al. Consensus guidelines for the clinical and pathologic diagnosis of dementia with Lewy bodies (DLB): Report of the consortium on DLB international workshop. Neurology 1996; 47: 1113–24.

McKenzie JE, Roberts GW, Royston MC. Comparative investigation of neurofibrillary damage in the temporal lobe in Alzheimer's disease, Down's SYNDROME and dementia pugilistica. Neurodegeneration 1996; 5: 259–64.

McNair DM, Kahn RJ, Frankenthaler LM, Faldetta LL. Amoxapine and amitriptyline. II. Specificity of cognitive effects during brief treatment of depression. Psychopharmacology (Berl) 1984; 83: 134–9.

Millspaugh JA. Dementia pugilistica. US Naval Med Bulletin 1937; 35: 297–61.

Mirra SS, Heyman A, McKeel D, Sumi SM, Crain BJ, Brownlee LM, et al. The consortium to establish a registry for Alzheimer's disease (CERAD): Part II standardization of the neuropathologic assessment of Alzheimer's disease. Neurology 1991; 41: 479–86.

Montine TJ, Phelps CH, Beach TG, Bigio EH, Cairns NJ, Dickson DW, et al. National Institute on Aging-Alzheimer's Association guidelines for the neuropathologic assessment of Alzheimer's disease: a practical approach. Acta Neuropathol 2012; 123: 1–11.

Morales R, Estrada LD, Diaz-Espinoza R, Morales-Scheihing D, Jara MC, Castilla J, et al. Molecular cross talk between misfolded proteins in animal models of Alzheimer's and prion diseases. J Neurosci 2010; 30: 4528–35.

Morales R, Green KM, Soto C. Cross currents in protein misfolding disorders: interactions and therapy. CNS Neurol. Disord. Drug Targets 2009; 8: 363–71.

Newell KL, Hyman BT, Growdon JH, Hedley-Whyte ET. Application of the National Institute on Aging (NIA)-Reagan Institute criteria for the neuropathological diagnosis of Alzheimer disease. J Neuropathol Exp Neurol 1999; 58: 1147–55.

Omalu BI, DeKosky ST, Hamilton RL, Minster RL, Kamboh MI, Shakir AM, et al. Chronic traumatic encephalopathy in a national football league player: part II. Neurosurgery 2006; 59: 1086–92; discussion 92–3.

Omalu BI, DeKosky ST, Minster RL, Kamboh MI, Hamilton RL, Wecht CH. Chronic traumatic encephalopathy in a national football league player. Neurosurgery 2005; 57: 128–34.

Omalu BI, Bailes J, Hammers JL, Fitzsimmons RP. Chronic traumatic encephalopathy, suicides and parasuicides in professional American athletes: the role of the forensic pathologist. Am J Forensic Med Pathol 2010; 31: 130–2.

Park S-Y, Ferreira A. The Generation of a 17 kDa Neurotoxic Fragment: An Alternative Mechanism by which Tau Mediates ß-Amyloid-Induced Neurodegeneration. J Neurosci 2005; 25: 5365–75.

Pfeffer RI, Kurosaki TT, Harrah CH, Chance JM, Filos S. Measurement of functional activities in older adults in the community. J Gerontol 1982; 37: 323–9.

Plassman BL, Havlik RJ, Steffens DC, Helms MJ, Newman TN, Drosdick D, et al. Documented head injury in early adulthood and risk of Alzheimer's disease and other dementias. Neurology 2000; 55: 1158–66.

Pupillo E, Messina P, Logroscino G, Zoccolella S, Chiò A, Calvo A, et al. EURamyotrophic lateral sclerosis Consortium. Trauma and amyotrophic lateral sclerosis: a case-control study from a population-based registry. Eur J Neurol 2012. doi: 10.1111/j.1468-1331.2012.03723.x.

Saing T, Dick M, Nelson PT, Kim RC, Cribbs DH, Head E. Frontal cortex neuropathology in dementia pugilistica. J Neurotrauma 2012; 29: 1054–70.

Schmidt ML, Zhukareva V, Newell KL, et al. Tau isoform profile and phosphorylation state in dementia pugilistica recapitulate Alzheimer's disease. Acta Neuropathol 2001; 101: 518–24.

Schmidt S, Kwee LC, Allen KD, Oddone EZ. Association of amyotrophic lateral sclerosis with head injury, cigarette smoking and APOE genotypes. J Neurol Sci 2010; 291: 22–9.

Schoch KM, Evans HN, Brelsfoard JM, Madathil SK, Takano J, Saido TC, et al. Calpastatin overexpression limits calpain-mediated proteolysis and behavioural deficits following traumatic brain injury. Exp Neurol 2012; 236: 371–82.

Stern RA, Riley DO, Daneshvar DH, Nowinski CJ, Cantu RC, McKee AC. Long-term consequences of repetitive brain trauma: chronic traumatic encephalopathy. PM R 2011; 3: S460–7.

Tran HT, Sanchez L, Esparza TJ, Brody DL. Distinct temporal and anatomical distributions of amyloid-β and tau abnormalities following controlled cortical impact in transgenic mice. PLoS One 2011a; 6: e25475.

Tran HT, LaFerla FM, Holtzman DM, Brody DL. Controlled cortical impact traumatic brain injury in 3xTg-Alzheimer's disease mice causes acute intra-axonal amyloid-β accumulation and independently accelerates the development of tau abnormalities. J Neurosci 2011b; 31: 9513–25.

Vonsattel JPG, Aizawa H, Ge P, DiFiglia M, McKee AC, MacDonald M, et al. An improved approach to prepare human brains for research. J Neuropathol Exp Neurol 1995; 54: 42–56.

Wilcock GK, Esiri MM. Plaques, tangles and dementia: a quantitative study. J Neurol Sci 1982; 56: 343–56.

Zilka N, Filipcik P, Koson P, Fialova L, Skrabana R, Zilkova M, et al. Truncated tau from sporadic Alzheimer's disease suffices to drive neurofibrillary degeneration in vivo. FEBS Lett 2006; 580: 3582–8.

# EXHIBIT 6

# The clinical spectrum of sport-related traumatic brain injury

Barry D. Jordan

**Abstract** | Acute and chronic sports-related traumatic brain injuries (TBIs) are a substantial public health concern. Various types of acute TBI can occur in sport, but detection and management of cerebral concussion is of greatest importance as mismanagement of this syndrome can lead to persistent or chronic postconcussion syndrome (CPCS) or diffuse cerebral swelling. Chronic TBI encompasses a spectrum of disorders that are associated with long-term consequences of brain injury, including chronic traumatic encephalopathy (CTE), dementia pugilistica, post-traumatic parkinsonism, post-traumatic dementia and CPCS. CTE is the prototype of chronic TBI, but can only be definitively diagnosed at autopsy as no reliable biomarkers of this disorder are available. Whether CTE shares neuropathological features with CPCS is unknown. Evidence suggests that participation in contact–collision sports may increase the risk of neurodegenerative disorders such as Alzheimer disease, but the data are conflicting. In this Review, the spectrum of acute and chronic sport-related TBI is discussed, highlighting how examination of athletes involved in high-impact sports has advanced our understanding of pathology of brain injury and enabled improvements in detection and diagnosis of sport-related TBI.

Jordan, B. D. *Nat. Rev. Neurol.* **9,** 222–230 (2013); published online 12 March 2013; doi:10.1038/nrneurol.2013.33

## Introduction

Sport-related traumatic brain injury (TBI) is an important public health concern and is often labelled as a 'silent epidemic'. Estimates suggest that 1.6–3.8 million sport-related TBIs occur annually in the USA alone, and this number includes injuries for which no medical care is sought.[1] This estimate is likely to be conservative, however, given that many sport-related TBIs are unrecognized and unreported. Sports that are associated with an increased risk of TBI include those involving contact and/or collisions, such as boxing, American football, ice hockey, soccer, rugby and the martial arts, as well as high-velocity sports such as cycling, motor racing, equestrian sports, rodeo, skiing and roller skating. Although most sport-related TBIs occur during participation in contact–collision sports and high-velocity sports, participation in any sport carries a risk of experiencing a brain injury.

TBI can generally be classified as acute or chronic. Acute TBI is used to describe injuries that occur immediately at the time of impact, with subsequent signs and symptoms of TBI, whereas chronic TBI refers to the long-term consequences of single or multiple brain traumas. In this Review, the spectrum of acute and chronic sport-related TBI is highlighted, with particular focus on cerebral concussion, diffuse cerebral swelling (DCS, also known as second-impact syndrome), chronic traumatic encephalopathy (CTE) and chronic postconcussion syndrome (CPCS). Improved recognition of concussion through education and proper medical surveillance is of paramount importance for prevention of long-term neurodegenerative disorders in athletes who experience TBI.

## Acute traumatic brain injury

For athletes involved in high-risk sports, there exists a spectrum of acute TBI pathologies that can occur (Box 1). Moderate and severe injuries such as focal brain injuries, diffuse axonal injury, skull fractures and penetrating brain injury are extremely rare in sports, but can, nonetheless, be encountered. A detailed discussion of these severe TBIs is beyond the scope of this Review, but such injuries must always be considered when managing an athlete with acute brain trauma. The most common and challenging acute brain injuries in athletes—namely, cerebral concussion and DCS—are described below.

## Concussion

Concussion is defined as a complex pathophysiological process that affects the brain and is induced by traumatic biomechanical forces.[2–4] A concussion typically occurs following transmission of direct or indirect impulsive forces to the head, which results in rapid onset of short-lived neurological impairments,[2–4] and presents clinically with cognitive, physical and behavioural signs and symptoms (Box 2). The most frequent clinical symptoms include headache, dizziness and memory impairment. Notably, loss of consciousness is not a requirement for diagnosis of concussion. In adults, most concussions

Burke Rehabilitation Hospital, 785 Mamaroneck Avenue, White Plains, New York, 10605 NY, USA.
bjordan@burke.org

**Competing interests**
The author declares no competing interests.

© 2013 Macmillan Publishers Limited. All rights reserved

tend to resolve spontaneously within 7–10 days;[5–9] in children and young adolescents, however, the recovery period can be longer.[3] Rather than presenting with structural injury that can be detected using conventional structural neuroimaging, the clinical symptomatology of concussion largely reflects a functional disturbance.[2–4]

*Mechanisms of injury*

Rapid acceleration and deceleration of the brain, including rotational (angular) acceleration, linear (translational) acceleration and impact deceleration, are the primary mechanism by which concussion occurs (Figure 1). Rotational acceleration occurs when biomechanical forces cause the head to rotate, potentially causing axons to stretch and tear, inducing concussion and traumatic axonal injury. Linear acceleration results from biomechanical forces that cause the head to move in the anterior–posterior direction, and is capable of producing gliding contusions in the parasagittal regions of the cerebral cortex and axonal injury in the brainstem.[10] Impact deceleration occurs when the head rapidly decelerates, typically when the head strikes a playing mat or field, or an arena floor (Figure 1c). The impact can lead to coup injury (an injury on the side of the head where the impact was made) and contrecoup injury of the cerebral cortex.[10] Theoretically, impact deceleration can also occur when an athlete's head rapidly decelerates when striking the body of an opposing player (Figure 1d) or fixed structures such as a goalpost, railing, tree or hockey board.

Head impact telemetry (HIT) systems, which are used to measure biomechanical forces transmitted to the brain,[11] have failed to identify an 'impact threshold' for induction of concussion. Video analysis of concussions sustained by professional National Football League players indicates that the majority of blows occur to the side of the helmet and/or facemask.[12] In nonprofessional football players, however, HIT technology reveals that most concussions result from blows to the top of the helmet.[11] Biomechanical forces that are capable of causing brain injury are probably a combination of rotational, linear and/or impact decelerations.

From the point at which biomechanical forces are transmitted to the brain, multiple neuropathophysiological cascades are triggered. The initial neurometabolic cascade involves neuronal depolarization, release of excitatory neurotransmitters, ionic shifts, changes in glucose metabolism and cerebral blood flow, and impaired axonal function.[13] Additional cascades or processes may then initiate or result, including apoptosis, calpain–caspase activation, mitochondrial dysfunction, free radical formation, neuroinflammation, growth factor alterations, and inflammatory processes.[14] Furthermore, an amyloid cascade, either with or without proper clearance of amyloid components, may be initiated.[15]

*Detection and diagnosis*

No devices that enable clinical diagnosis of concussion currently exist. Several neurodiagnostic investigations

## Key points

- In high-impact sports, cerebral concussion is the most common form of acute traumatic brain injury (TBI), but other moderate and severe TBIs can occur
- Cerebral concussion is a clinical diagnosis that can present with cognitive, physical and/or behavioural signs and symptoms, and does not require loss of consciousness
- Second-impact syndrome is a rare and controversial syndrome that must be considered in the management of a young athlete with concussion
- Increased exposure to sport and advancing age are putative risk factors for the development of chronic traumatic encephalopathy (CTE)
- Antemortem diagnosis of CTE is difficult, and further research is needed to establish effective biomarkers that reflect disease activity
- Chronic postconcussion syndrome is a form of chronic TBI that is clinically distinct from CTE; neuropathological overlap between these two conditions is unknown

## Box 1 | Classification of acute TBI

Diffuse brain injury
- Cerebral concussion
- Diffuse axonal injury
- Diffuse cerebral swelling

Focal brain injury
- Epidural haematoma
- Subdural haematoma
- Cerebral contusion
- Intracerebral haemorrhage
- Subarachnoid haemorrhage
- Intraventricular haemorrhage
- Subdural hygroma

Skull fracture

Penetrating brain injury

Abbreviation: TBI, traumatic brain injury.

that may assist in the physician in these cases are, however, available. Neuropsychological testing can aid in determination of the occurrence and resolution of cognitive impairment, but results of these tests should not be used as the sole basis for the decision to allow an athlete to return to play.[3] Standard structural neuroimaging outcomes are typically normal in patients who are evaluated for a sport-related concussion,[2–4] but new structural, functional and/or metabolic imaging technologies may be useful for detection of subtle structural or functional brain injury. For example, gradient-echo MRI sequences in one athlete with a head injury revealed evidence of microhaemorrhages—a finding that is consistent with a shear injury.[16]

Whether diffusion tensor imaging (DTI) is beneficial in evaluation of acute concussion remains to be determined, as studies using this methodology report variable outcomes and findings. In one study published in 2012,[17] researchers observed decreased fractional anisotropy—which is suggestive of decreased fibre-tract integrity—in one of 11 tracts in professional American football players with concussion, but found no abnormalities on susceptibility-weighted imaging (SWI),which would be indicative of prior microhaemorrhages. A 2011 study[18] found increased mean diffusivity (suggestive of axonal injury) in several white matter tracts in the left hemisphere of concussed athletes, but no differences in fractional anisotropy between concussed athletes

−1704−

© 2013 Macmillan Publishers Limited. All rights reserved

Case: 25-2271-023 Document: 20-1 Page: 1681 Date Filed: 10/08/2025

**Box 2 | Symptoms of acute concussion**

**Cognitive features**
- Decreased speed of information processing
- Disorientation
- Lack of awareness
- Confusion
- Amnesia or other memory impairments
- Impaired concentration
- Loss of consciousness
- Feeling in a 'fog'

**Behavioural features**
- Sleep disturbance
- Irritability
- Emotional lability
- Nervousness and/or anxiety
- Psychomotor retardation
- Apathy
- Fatigue
- Easily distracted

**Physical features**
- Headache
- Dizziness and/or vertigo
- Nausea
- Vacant stare
- Impaired playing ability
- Gait unsteadiness and/or loss of balance
- Impaired coordination
- Diplopia and/or blurred vision
- Photophobia
- Hyperacusis
- Concussive convulsion and/or impact seizure

and controls. Similarly, no differences were observed in fractional anisotropy in children with concussion compared with controls.[19] By contrast, a case study of a concussed athlete[20] reported significant and colocalized changes in fractional anisotropy and mean diffusivity voxels in the right corona radiata and right inferior longitudinal fasciculus.

Functional MRI (fMRI) has revealed altered activation patterns in athletes with concussion compared with controls. During a finger-sequencing task, concussed players exhibited marked within-subject increases in the amplitude and extent of blood oxygen level-dependent activity (indicative of high levels of brain activity) that localized primarily to the parietal, lateral frontal and cerebellar regions.[21] Concussed athletes also showed altered activation patterns on fMRI compared with controls, even when the athletes performed as well as the controls on the given task.[22] Furthermore, athletes who exhibited hyperactivation on fMRI demonstrated a prolonged clinical recovery.[23]

Magnetic resonance spectroscopy is a noninvasive technique that can be used to identify neurometabolic changes in the acute postconcussion phase.[24–27] Concussed athletes had decreased levels of glutamate (a principle excitatory neurotransmitter) in the primary motor cortex (M1) and decreased levels of N-acetylaspartate (NAA)—a marker of neuronal integrity—in the prefrontal and M1 cortices.[24] Such metabolic changes in M1 correlated directly with severity of self-reported symptoms.

In a follow-up study, the investigators confirmed their previous findings and also noted that glutamate levels recovered in the chronic postconcussion phase.[25] Other researchers also observed a decrease in NAA levels relative to creatine levels in concussed athletes, but noted that the deficit completely recovered by day 30 postinjury.[26,27] Of interest, athletes who experienced a second concussion during the recovery period were found to exhibit a further decrease in the NAA:creatine ratio and, therefore, the existence of a temporal window of metabolic brain vulnerability to further injury was postulated.[26]

*Management*
Appropriate management of concussion requires the immediate removal of a player from competition and their evaluation by a health-care professional.[2–4] A subsequent period of cognitive and physical rest, until the athlete becomes asymptomatic, is recommended. Once an athlete is asymptomatic and no longer receiving medications to treat or modify the symptoms of concussion, a gradual stepwise return to competition should be implemented.[3] Medications used in the treatment of concussive symptoms include: analgesics, nonsteriodal anti-inflammatories, antidepressants, anticonvulsants, beta-blockers and triptans for headache; vestibular suppressants and benzodiazepines for dizziness; neurostimulants for fatigue; antiemetics for nausea; and/or medications for depression and anxiety.[28] Neurostimulants, selective serotonin reuptake inhibitors, and anticholinesterase inhibitors have also been used in an attempt to improve neurocognitive performance following TBI.[28–30]

When the athlete is asymptomatic at rest and on exertion, he or she can return to full activity.[2–4] For athletes who do not show improvement after cognitive and physical rest for a period of time (for example, 1 month), a low-level, subsymptom threshold rehabilitation and/or exercise programme may be of benefit in improving postconcussion syndrome (PCS).[31,32] The mismanagement of a concussion can potentially result in a persistent PCS and/or second-impact syndrome.[33]

**Diffuse cerebral swelling**
DCS is the pathological substrate of second-impact syndrome, and represents a rare but potentially fatal injury that can occur in athletes who sustain a second brain trauma while still symptomatic from a previous concussion. This second-hit trauma leads to a catastrophic neurophysiological response of diffuse brain swelling, cerebral oedema and brain herniation.[34] Second-impact syndrome is thought to arise following loss of autoregulation of cerebral blood flow, which results in vascular engorgement and subsequent increased intracranial pressure and eventual herniation.[34]

Although considered to be a rare phenomenon, the exact frequency of second-impact syndrome is unknown. One study in the USA, however, reported 17 cases among young adults aged 21 years or younger over a 30-year period.[35] Second-impact syndrome has been reported

© 2013 Macmillan Publishers Limited. All rights reserved

in the context of American football, boxing and ice hockey,[34,36] but its existence has been questioned. One hypothesis is that second-impact syndrome is primary DCS in response to trauma without a pre-existing injury.[36,37] Although rare, DCS remains a major concern in the management of acute concussion in young athletes, owing to the high mortality rate associated with this syndrome.

According to McCrory and Berkovic,[38] the following clinical criteria must be fulfilled for a definitive diagnosis of second-impact syndrome: medical review after a witnessed first impact; documentation of ongoing symptoms following the first impact up to the time of second impact; witnessed second head impact with subsequent rapid cerebral deterioration; and neuropathological or neuroimaging evidence of cerebral swelling without marked intracranial haematoma or other cause of oedema.

## Chronic traumatic brain injury

Chronic TBI encompasses a spectrum of disorders that are associated with long-term consequences of brain injury. The prototype of chronic TBI is CTE—a syndrome that results from long-term neurological damage following repetitive mild TBIs. Dementia pugilistica is the boxing manifestation of CTE, but this diagnosis is typically reserved for cases in which severe dementia develops following a long boxing career. Post-traumatic parkinsonism describes a parkinson syndrome that occurs secondary to TBI. This form of chronic TBI includes puglistic parkinsonism—a subtype of dementia pugulistica in which rigidity and tremor predominate, and which can be identified pathologically by the abundance of neurofibrillary tangles in the absence of Lewy bodies.[39] Whereas CPCS is the diagnosis given to athletes in whom postconcussive symptoms do not seem to resolve, a diagnosis of post-traumatic dementia is applied to cases that meet the clinical criteria for dementia after a single moderate or severe TBI. Post-traumatic dementia differs from CTE in that the brain injury is not repetitive but results from a single trauma that is more severe than a concussion.

Evidence suggests that participation in contact sports can increase an individual's risk of neurodegenerative disorders such as mild cognitive impairment, Alzheimer disease (AD), motor neuron disease (MND) or Parkinson disease. This association represents an additional public health concern to the issue of sport-related CTE. A survey of retired professional American football players showed an association between recurrent concussion, clinically diagnosed mild cognitive impairment and self-reported memory problems.[40] Another survey in a similar population of retired athletes revealed a significant, direct association between rate of self-reported concussion and complaints of memory changes, confusion, speech difficulties, problems remembering short lists, and difficulty recalling recent events.[41] In addition, those with a history of self-reported concussion exhibited a high frequency of headache, paraesthesias and vestibular problems that were reminiscent of a CPCS.



**Figure 1** | Mechanisms of brain acceleration–deceleration secondary to biomechanical forces transmitted to the brain. **a** | Linear (translational) acceleration. **b** | Rotational (angular) acceleration. **c** | Impact deceleration. **d** | Impact deceleration secondary to the head striking an opposing player's body. Permission obtained from Innovative CEUs, LLC ©.

Higher AD-associated and MND-associated mortality rates were reported in retired professional American football players than in the general US population.

In contrast to the above results, however, two studies failed to identify an increased risk of neurodegeneration among participants of contact–collision sports. Comparison of a cohort of low-exposure (that is, high-school level) American football players to nonplaying individuals found no difference in the risk of dementia, Parkinson disease or MND.[42] In a case–control study of individuals with AD, no association was found between risk of disease and participation in contact sports,[43] although this study was limited by a small sample size. Further investigation is warranted to understand the pathophysiology of chronic TBI and risk of neurodegeneration secondary to repetitive brain trauma.

## Chronic traumatic encephalopathy

CTE is the long-term neurological consequence of repetitive mild TBI. The exact frequency of CTE in modern day sports is unknown but, in 1969, a landmark study of retired boxers from the UK reported a CTE prevalence of 17%.[44] In boxing, longer duration of exposure to sport (measured as the number of bouts), older age at retirement from boxing, and longer length of boxing career, are important variables that can increase an individual's risk of developing CTE.[44]

In a subset of American football players with autopsy-confirmed CTE, a positive correlation was noted between the severity of CTE, exposure to sport, years since retirement, and age at death.[45] Family-reported number of concussions, years of education, lifetime steroid use

© 2013 Macmillan Publishers Limited. All rights reserved

Box 3 | Clinical presentations of CTE

**Behavioural and psychiatric features**
- Aggression and/or agitation
- Apathy
- Impulsivity
- Depression
- Delusions (such as paranoia)
- Suicidality

**Cognitive features**
- Impaired attention and concentration
- Memory problems
- Executive dysfunction
- Dementia
- Visuospatial difficulties
- Language impairment

**Motor features**
- Dysarthria, including scanning speech
- Spasticity
- Ataxia, including incoordination
- Parkinsonism, including tremors
- Gait disturbance
- Motor neuron disease (possibly)

Abbreviation: CTE, chronic traumatic encephalopathy.

Box 4 | Omalu neuropathological classification of CTE[51]

**Phenotype I**
Sparse to frequent NFTs and neuritic threads in the cerebral cortex and brainstem but without involvement of the subcortical nuclei (basal ganglia) and cerebellum. No diffuse amyloid plaques in the cerebral cortex.

**Phenotype II**
Sparse to frequent NFTs and neuritic threads in the cerebral cortex and brainstem with or without such pathology in the subcortical nuclei (basal ganglia) and cerebellum. Diffuse amyloid plaques in the cerebral cortex.

**Phenotype III**
Brainstem predominant: moderate to frequent NFTs and neuritic threads in the brainstem nuclei, absent or sparse NFTs and neuritic threads in the cerebral cortex, subcortical nuclei (basal ganglia) and cerebellum. No diffuse amyloid plaques in the cerebral cortex.

**Phenotype IV**
Incipient: absent or sparse NFTs and neuritic threads in the cerebral cortex, brainstem and subcortical nuclei (basal ganglia). No cerebellar involvement. No diffuse amyloid plaques in the cerebral cortex.

Abbreviations: CTE, chronic traumatic encephalopathy; NFT, neurofibrillary tangle.

and position played, however, were not significantly correlated with the stage of CTE. Repetitive concussion and subconcussion has been linked to the development of CTE,[46] but a threshold of injury (that is, the number of injuries required to cause CTE) has not been established. Interestingly, the proportion of football players with CTE who were carriers of at least one apolipoprotein E (*APOE*) ε4 allele—an allele associated with increased risk of AD—was not significantly different from the proportion of *APOE* ε4 carriers in the general population. Other studies, however, suggest an association between the *APOE* ε4 allele and chronic TBI.[47,48]

### Clinical presentation

Clinically, CTE can present with behavioural, cognitive and/or motor-related symptoms (Box 3).[44,45,49–54] Behavioural disturbances are often the earliest findings in CTE and can include depression, mood swings, apathy, impulsivity, aggression and suicidality. With regard to cognitive impairments, athletes can exhibit impaired attention and/or concentration, memory problems, executive dysfunction and, as the disease progresses, the individual may develop dementia. The motor manifestations of CTE—such as spasticity, tremor (parkinsonian type), ataxia, dysarthria and problems with coordination—reflect injury to the pyramidal tracts, the extrapyramidal system and the cerebellum.

MND has been noted in a subset of athletes with CTE,[45,50] but whether this phenotype represents a unique subtype of CTE or an overlap of two distinct disease processes, which may or may not be associated with repetitive brain injury and/or a common genetic predisposition, remains unclear. In a subset of CTE cases, headache also seems to be a prominent feature.[45] Again, whether these cases represent comorbid CPCS (discussed below) or a distinct clinical phenotype of CTE has yet to be determined.

### Pathological classification

The pathological features of CTE have been well-described and include diffuse brain atrophy, ventricular dilatation, cavum septum pellucidum with or without fenestrations, cerebellar scarring, and depigmentation and degeneration of the substantia nigra.[45,49–51,54,55] As the disease progresses, marked atrophy of the medial temporal lobe, thalamus, hypothalamus and mammillary bodies becomes evident.

Currently, two histopathological classifications of CTE exist.[45,51] Omalu and colleagues have identified four phenotypes of CTE (Box 4),[51] whereas McKee and colleagues have classified CTE into four stages (Box 5).[45] According to the classification scheme of McKee *et al.*, CTE begins focally, usually perivascularly at the depth of the sulci in the frontal cerebral cortex, and involves the superficial layers of the cerebral cortex. The pathology spreads slowly (over decades) to involve widespread regions of the medial cortex, medial temporal lobe, diencephalon, basal ganglia, brainstem and spinal cord. Stages I and II are considered to be mild pathologies and are characterized by neurofibrillary tangles in focal epicenters of the frontal cortices. Stages III and IV represent severe forms of CTE, with more-widespread tau involvement. Notably, all seven cases of AD-associated CTE that were indentified in this study were stage IV, and no pure cases of AD existed in the cohort.[45]

### Diagnosis

A diagnosis of CTE can be definitively ascertained only at autopsy. Clinical diagnosis of CTE can be problematic as the development of chronic neurological sequelae is not temporally related to a single concussive event and the symptoms typically manifest in later life after a period of latency.[56] Four categories of clinical criteria for CTE have been defined (Table 1).

© 2013 Macmillan Publishers Limited. All rights reserved

To be classified as 'definite CTE' a case must present with neurological signs that are consistent with CTE and have pathological confirmation of tau deposition with or without deposition of amyloid or TAR DNA-binding protein 43 (TDP-43). Given the lack of established consensus criteria for the neuropathological classification of CTE, the two classification schemes described above[45,51] can aid in diagnosis of definite CTE.

'Probable CTE' is defined as any neurological process involving two or more of the following clinical conditions: cognitive and/or behavioural impairment, cerebellar dysfunction, pyramidal tract disease and extrapyramidal disease. This syndrome has to be clinically distinguishable from other neurological disorders and must be consistent with the clinical description of CTE. Neuroimaging studies can provide evidence in support of probable CTE. Using [18]F-FDDNP PET—a neuroimaging tool to measure tau and amyloid deposition in the brain—increased subcortical and cortical signals were detected in five retired National Football League players who exhibited cognitive and behavioural symptoms.[57] However, as [18]F-FDDNP binds both fibrillary tau and amyloid, increased [18]F-FDDNP signal cannot be solely attributed to tau, and additional histopathological confirmation is, therefore, needed. A negative amyloid PET scan could be useful in ruling out preclinical, prodromal or overt AD.[58] Evidence of glucose hypometabolism on PET, or hypoperfusion on single-photon emission CT (SPECT), can also support a diagnosis of probable CTE (discussed below). Other neuroimaging findings that are supportive of probable CTE include nonspecific evidence of CNS trauma on structural imaging and/or DTI. In one case of a 50-year-old boxer with dementia and probable CTE, CSP presented as thinning and marked loss of fibre-tract integrity in the corpus collosum (Figure 2; B. D. Jordan, unpublished work).

The category of possible CTE involves brain pathology that cannot be reliably distinguished from other primary neurodegenerative disorders such as AD, frontotemporal dementia, vascular dementia, normal pressure hydrocephalus, multiple system atrophy, and Parkinson disease-related dementia. Cases of CTE and AD co-occurrence are well-documented[45] and, therefore, despite ancillary findings such as a positive amyloid PET scan, biparietal and/or temporal hypometabolism on glucose PET, elevated tau and/or decreased amyloid in the cerebrospinal fluid, co-existent CTE cannot be ruled out.

Any neurological process that is inconsistent with the clinical description of CTE and exhibits a pathophysiology unrelated to TBI would be classified as improbable CTE. Examples include brain tumours, stroke and inherited neurological disorders.

As biomarkers that reflect the natural history of CTE are currently nonexistent, characterization of preclinical and prodromal CTE (which are similar to the preclinical phases that have been documented in AD)[58] is premature. However, neuroimaging biomarker abnormalities, which are indicative of axonal and myelin injury, have been observed in athletes who have been exposed to

---

**Box 5 | McKee neuropathological classification of CTE[45]**

**Stage I**
Normal brain weight. Focal epicenters of perivascular p-tau, and neurofibrillary and astrocytic tangles involving the sulcal depths and typically affecting the superior and dorsolateral frontal cortices.

**Stage II**
Normal brain weight. Multiple epicenters at the depths of the sulci with localized spread from epicenters to the superficial layers of adjacent cortex. No neurofibrillary p-tau involvement in the medial temporal lobe.

**Stage III**
Mild reduction in brain weight. Mild cerebral atrophy with dilatation of the lateral and third ventricles. Septal abnormalities. Moderate depigmentation of the locus coeruleus and mild depigmentation of the substantia nigra. Atrophy of the mammillary bodies and thalamus. Widespread p-tau pathology in the frontal, insular, temporal and parietal cortices. Neurofibrillary pathology in the amygdala, hippocampus and entorhinal cortex.

**Stage IV**
Marked reduction in brain weight with atrophy of the cerebral cortex. Marked atrophy of the medial temporal lobe, thalamus, hypothalamus and mammillary bodies. Severe p-tau pathology affecting most regions of the cerebral cortex and the medial temporal lobe, sparing the calcarine cortex. Severe p-tau pathology in the diencephalon, basal ganglia, brainstem and spinal cord. Marked axonal loss of subcortical white matter tracts.

Abbreviations: CTE, chronic traumatic encephalopathy; p-tau, phosphorylated tau.

---

**Table 1 | Clinical criteria for chronic traumatic encephalopathy**

| Classification | Definition | Clinical examples |
|---|---|---|
| Definite | Any neurological process consistent with the clinical presentation of CTE along with pathological confirmation (tauopathy ± diffuse amyloid deposition ± TDP-43 deposition) | Cognitive, behavioural, and/or motor dysfunction |
| Probable | Any neurological process characterized by two or more of the following conditions: cognitive and/or behavioural impairment; cerebellar dysfunction; pyramidal tract disease or extrapyramidal disease; clinically distinguishable from any known disease process and consistent with the clinical description of CTE | Cognitive impairment and extrapyramidal dysfunction suggestive of parkinsonism Associated cerebellar dysfunction that is inconsistent with parkinsonism |
| Possible | Any neurological process that is consistent with the clinical description of CTE but can be potentially explained by other known neurological disorders | Alzheimer disease or other primary dementia Parkinson disease Primary cerebellar degeneration Wernicke–Korsakoff syndrome Amyotrophic lateral sclerosis |
| Improbable | Any neurological process that is inconsistent with the clinical description of CTE and can be explained by a pathophysiological process unrelated to brain trauma | Cerebrovascular disease Multiple sclerosis Brain neoplasm Other inherited neurological disorders |

Abbreviations: CTE, chronic traumatic encephalopathy; TDP-43, TAR DNA-binding protein 43.

---

repetitive brain injury. For example, in studies of professional boxers, fractional anisotropy in the corpus collosum and internal capsule was lower compared with controls,[59] and the apparent diffusion coefficient (ADC) was elevated in the cortical gray matter, and fractional anisotropy in deep white matter was decreased

© 2013 Macmillan Publishers Limited. All rights reserved

**Figure 2** | Brain imaging in a retired professional boxer with probable chronic traumatic encephalopathy. **a** | Axial T2-weighted brain MRI shows mild, diffuse volume loss, cavum septum pellucidum and cavum vergae. **b** | Saggital brain MRI demonstrates focal thinning and volume loss of the corpus collosum. **c** | Diffusion tensor imaging tractography reveals a focal defect and loss of white matter integrity in the corpus collosum.

compared with controls.[60] Similarly, trace radial diffusivity and axial diffusivity (purported measures of myelin and axonal pathology) increased among ice-hockey players over a season, with the damage involving regions of the corticospinal tract, the corpus callosum and the superior longitudinal fasiculus; however, no changes in fractional anisotropy were observed in this study.[61] Differences in white matter integrity have also been observed in athletes involved in soccer (a potentially high-impact sport) compared with those involved in swimming (a low-impact sport).[62]

Abnormalities on PET and SPECT have also been reported in athletes with repetitive brain injuries. A unique pattern of glucose hypometabolism was detected in the posterior cingulate cortex, parieto-occipital lobes, frontal lobes and cerebellum of boxers.[63] With the use of SPECT imaging, investigators have also observed brain hypoperfusion in the prefrontal and temporal poles, occipital lobes, anterior cingulate gyrus and cerebellum among active and retired professional American football players.[64]

### Pathophysiology
The pathophysiology of CTE is unknown, but is presumed to be a progressive tauopathy.[45,49] The mechanisms of phosophorylation, cell-to-cell propagation, and/or oligomerization and misfolding of tau that result in the clinical phenotype of CTE remain to be elucidated. McKee and colleagues have postulated that repetitive brain trauma and deposition of hyperphosphorylated tau protein promote accumulation of other abnormally aggregated proteins including TDP-43, amyloid-β and α-synuclein.[45] The frequency of progression from brain injury to clinical manifestation is, however, unknown, and factors that are reliably associated with progression have yet to be identified.

### Chronic postconcussion syndrome
The term CPCS is used to describe an uncommon clinical phenomenon in which the athlete experiences post-concussive symptoms that do not seem to resolve, and often results in the athlete retiring from sport. In their 2011 study, King and Kirkwilliam use the term 'permanent PCS' to characterize a condition observed in

individuals from a nonathlete population who exhibited symptoms approximately 6.9 years after a concussion.[65] A substantial proportion of individuals with permanent PCS (40–59%) experienced premorbid or postmorbid conditions such as depression, anxiety, post-traumatic stress, and/or pain, which were not directly attributable to the manifestations of concussion but could exacerbate the postconcussion symptoms. In this Review, CPCS is the preferred term as the clinical labelling of symptoms as 'permanent'—which suggests that they may never resolve—could be problematic. Although no unifying definition exists with regard to the duration of symptoms that is necessary to qualify an athlete as experiencing CPCS, for the following discussion CPCS is defined as postconcussive symptoms lasting longer than 1 year.

### Epidemiology and symptoms
The exact frequency of CPCS among elite and nonelite athletes is unknown. In the general, nonsporting population, 10–15% of individuals are reported to remain symptomatic 1 year after concussion.[66] Common symptoms of CPCS include headache, dizziness, impaired attention, poor memory, executive dysfunction, irritability and depression. Factors associated with CPCS include older age, premorbid and postmorbid anxiety and depression, and the severity of initial postconcussive symptoms.[65]

Investigations detailing the long-term consequences of a single sport-related concussion are scarce, which may be attributable to poor detection of such injuries owing to the transient nature and rapid recovery of post-concussive symptoms.[67] The majority of CPCS cases have been reported in the lay press[68] and, as such, lack scientific scrutiny.

In 1996, Kelly and Rosenberg described a classic case of CPCS in a retired professional football player who sustained multiple concussions over a long career and exhibited persistent symptoms that were consistent with a postconcussion syndrome.[68] Persistent visuo-spatial attention deficits have also been reported in players of the high-impact sport Australian Rules football at least 1 year after sustaining a concussion.[69] One study reported neurocognitive and neurophysiological changes in athletes who had sustained concussions more than 30 years earlier:[67] individuals who sustained a sports concussion performed particularly poorly on tests of episodic memory and response inhibition compared with athletes who had never experienced a concussion. Evidence of motor system dysfunction among the concussed athletes included delayed and attenuated evoked potentials on an auditory oddball paradigm, a prolonged cortical silence period (an assessment of motor cortex excitability that is measured using transcranial magnetic stimulation), and bradykinesia.

### CPCS versus CTE
CPCS is a type of chronic TBI that is clinically distinct from CTE. Unlike CTE, CPCS has an acute onset that is temporally related to a single concussive event, and it does not present insidiously following a latent period—a defining characteristic of CTE.[45] Headache

© 2013 Macmillan Publishers Limited. All rights reserved

is a prominent feature of CPCS but is not frequently encountered in CTE, with the exception of McKee's stages I–II.[45] The pathological substrate of CPCS is unknown, and whether it involves the tau pathology that is classically recognized in CTE remains to be established. In addition, whether CPCS overlaps with CTE and/or represents McKee's neuropathological stages I and II[45] or Omalu's phenotype IV (incipient phenotype)[51] has yet to be explored.

## Conclusions

Acute and chronic TBI in sport represents an important public health concern in modern day society. Although brain injuries are not the most common type of sport-related injury, they can be associated with substantial morbidity and, potentially, mortality. Concussions are often unrecognized and are, therefore, underreported. Accordingly, recognition of concussion through education and proper medical surveillance is of paramount importance. Failure to adequately manage concussion could result in persistent or chronic PCS or DCS. New neuroimaging techniques may be useful in assessment of both acute and chronic brain injury. DTI, it seems, might be of greater value for evaluation of chronic ultrastructural changes following repetitive brain injury than for assessment of acute concussion or the sequelae of a single mild concussion.

CPCS is a relatively uncommon condition among athletes that needs to be further elucidated to determine whether it is causally linked to CTE or represents a distinct comorbid condition. The neuropathological substrate of CPCS in athletes is unknown and warrants further investigation.

The fact that antemortem diagnosis of CTE is difficult and that this syndrome can mimic other neurodegenerative disorders and has an insidious onset (typically manifesting only after an athlete has retired from sport) is of major concern. The exact frequency of CTE in athletes is unknown and, to date, the strongest putative risk factors for CTE are increased exposure to injury and older age. No reliable biomarkers currently exist to effectively diagnose CTE and monitor disease progression. At present, a definitive diagnosis of CTE can only be ascertained at autopsy, and the clinical diagnosis of CTE can only be 'probable' or 'possible'. Future advances in neuroimaging will hopefully assist in the diagnosis of this complex disorder, and *in vivo* documentation of tau deposition in the brain could potentially be used to identify athletes with a progressive tauopathy as a result of repetitive sports-related TBI.

### Review criteria

Articles were obtained through reference-list searches, cited reference searches, and regular review of sports medicine, brain injury, rehabilitation, neurotrauma, neurological and neurosurgery journals. A PubMed biomedical literature search using the key words "sports concussion", "sports-related traumatic brain injury", "chronic traumatic encephalopathy", "chronic traumatic brain injury", "second-impact syndrome", "malignant cerebral oedema", "diffuse cerebral swelling", "postconcussion syndrome", "dementia pugilistica", and "punch-drunk syndrome" was also performed. Articles included full-text papers and abstracts written in English as well as book chapters and texts. There were no restrictions on the dates of the publications.

1. Langlois, J. A., Rutland-Brown, W. & Wald, M. M. The epidemiology and impact of traumatic brain injury: a brief overview. *J. Head Trauma Rehabil.* **21**, 375–378 (2006).
2. Aubry, M. *et al.* Summary and agreement statement of the 1st International Symposium on Concussion in Sport, Vienna 2001. *Clin. J. Sport Med.* **12**, 6–11 (2002).
3. McCrory, P. *et al.* Summary and agreement statement of the 2nd International Conference on Concussion in Sport, Prague 2004. *Clin. J. Sport Med.* **15**, 48–55 (2005).
4. McCrory, P. *et al.* Consensus statement on concussion in sport: the 3rd International Conference on Concussion in Sport held in Zurich, November 2008. *Br. J. Sports Med.* **43** (Suppl. 1), i76–i90 (2009).
5. McCrea, M. *et al.* Acute effects and recovery time following concussion in collegiate football players: the NCAA Concussion Study. *JAMA* **290**, 2556–2563 (2003).
6. Echemendia, R. J., Putukian, M., Mackin, R. S., Julian, L. & Shoss, N. Neuropsychological test performance prior to and following sports-related mild traumatic brain injury. *Clin. J. Sport Med.* **11**, 23–31 (2001).
7. Bleiberg, J. *et al.* Duration of cognitive impairment after sports concussion. *Neurosurgery* **54**, 1073–1080 (2004).
8. McCrea, M., Kelly, J. P., Randolph, C., Cisler, R. & Berger, L. Immediate neurocognitive effects of concussion. *Neurosurgery* **50**, 1032–1042 (2002).
9. Makdissi, M. *et al.* Natural history of concussion in sport: markers of severity and implications for management. *Am. J. Sports Med.* **38**, 464–471 (2010).
10. Jordan, B. D. Neurologic aspects of boxing. *Arch. Neurol.* **44**, 453–459 (1987).
11. Guskiewicz, K. M. *et al.* Measurement of head impacts in collegiate football players: relationship between head impact biomechanics and acute clinical outcome after concussion. *Neurosurgery* **61**, 1244–1253 (2007).
12. Pellman, E. J., Viano, D. C., Tucker, A. M., Casson, I. R. & Waeckerle, J. F. Concussion in professional football: reconstruction of game impacts and injuries. *Neurosurgery* **53**, 799–814 (2003).
13. Giza, C. & Hovda, D. A. The neurometabolic cascade of concussion. *J. Athl. Train.* **36**, 228–235 (2001).
14. Miller, L. P. & Hayes, R. L. (Eds) *Head Trauma: Basic, Preclinical, and Clinical Directions* (John Wiley & Sons, New York, 2001).
15. Chen, X. H., Johnson, V. E., Uryu, K., Trojanowski, J. Q. & Smith, D. H. A lack of amyloid β plaques despite persistent accumulation of amyloid β in axons of long-term survivors of traumatic brain injury. *Brain Pathol.* **19**, 214–223 (2009).
16. Asif, I. M., Harmon, K. G., Drezner, J. A. & O'Kane, J. W. Cerebral microhemorrhages in a collegiate football player: clinical implications in the management of sports concussion. *Sports Health* **2**, 391–394 (2010).
17. Luther, N. *et al.* Diffusion tensor and susceptibility-weighted imaging in concussion assessment of National Football League players. *Neurosurgery* **71**, E558 (2012).
18. Cubon, V. A., Putukian, M., Boyer, C. & Dettwiler, A. A diffusion tensor imaging study on the white matter skeleton in individuals with sports-related concussion. *J. Neurotrauma* **28**, 189–201 (2011).
19. Maugans, T. A., Farley, C. Altaye, M, Leach, J. & Cecil, K. M. Pediatric sports-related concussion produces cerebral blood flow alterations. *Pediatrics* **129**, 28–37 (2012).
20. Bazarian, J. J., Zhu, T., Blyth, B., Borrinio, A. & Zhong, J. Subject-specific changes in brain white matter on diffusion tensor imaging after sports-related concussion. *Magn. Reson. Imaging* **30**, 171–180 (2012).
21. Jantzen, K. J., Anderson, B., Steinberg, F. L. & Kelso, J. A. A prospective functional MR imaging study of mild traumatic brain injury in college football players. *AJNR Am. J. Neuroradiol.* **25**, 738–745 (2004).
22. Chen, J. K. *et al.* Functional abnormalities in symptomatic concussed athletes: an fMRI study. *Neuroimage* **22**, 68–82 (2004).
23. Lovell, M. R. *et al.* Functional brain abnormalities are related to clinical recovery and time to return to play in athletes. *Neurosurgery* **61**, 352–359 (2007).
24. Henry, L. C., Tremblay, S., Boulanger, Y., Ellemberg, D. & Lassonde, M. Neurometabolic changes in acute phase after sports

© 2013 Macmillan Publishers Limited. All rights reserved

Case 2:25-cv-01023-DJC Document 20-1 Filed 10/08/25 Page 1687 of 1878

concussions correlate with symptom severity. *J. Neurotrauma* **27**, 65–76 (2010).

25. Henry, L. C. *et al.* Metabolic changes in concussed American football players during the acute and chronic post-injury phases. *BMC Neurol.* **11**, 105 (2011).

26. Vagnozzi, R. *et al.* Temporal window of metabolic brain vulnerability to concussion: a pilot $^1$H-magnetic resonance spectroscopic study in concussed athletes—part III. *Neurosurgery* **62**, 1286–1296 (2008).

27. Vagnozzi, R. *et al.* Assessment of metabolic brain damage and recovery following mild traumatic brain injury: a multicentre, proton magnetic resonance spectroscopic study in concussed patients. *Brain* **133**, 3232–3242 (2010).

28. Petraglia, A. L., Maroon, J. C. & Bailes, J. E. From the field of play to the field of combat: a review of the pharmacological management of concussion. *Neurosurgery* **70**, 1520–1533 (2012).

29. Meehan, W. P. 3rd. Medical therapies for concussion. *Clin. Sports Med.* **30**, 115–124 (2011).

30. Reddy, C. C., Collins, M., Lovell, M. & Kontos, P. Efficacy of amantadine treatment on symptoms and neurocognitive performance among adolescents following sports-related concussion. *J. Head Trauma Rehabil.* http://dx.doi.org/10.1097/HTR.0b013e318257fbc6.

31. Gagnon, I., Galli, C., Freidman, D., Grilli, L. & Iverson, G. L. Active rehabilitation for children who are slow to recover following sport-related concussion. *Brain Inj.* **23**, 956–964 (2009).

32. Leddy, J. J. *et al.* A preliminary study of subsymptom threshold exercise training for refractory post-concussion syndrome. *Clin. J. Sport Med.* **20**, 21–27 (2010).

33. Harmon, K. G. *et al.* American medical society for sports medicine position statement: concussion in sport. *Clin. J. Sport Med.* **23**, 1–18 (2013).

34. Cantu, R. C. & Voy, R. Second impact syndrome: a risk in any contact sport. *Phys. Sports Med.* **23**, 27–31 (1995).

35. Thomas, M. *et al.* Epidemiology of sudden death in young competitive athletes due to blunt trauma. *Pediatrics* **128**, e1–e8 (2011).

36. McCrory, P. Does second impact syndrome exist? *Clin. J. Sport Med.* **11**, 144–149 (2001).

37. McCrory, P., Davis, G. & Makdissi, M. Second impact syndrome or cerebral swelling after sporting head injury. *Curr. Sports Med. Rep.* **11**, 21–23 (2012).

38. McCrory, P. R. & Berkovic, S. F. Second impact syndrome. *Neurology* **50**, 677–683 (1998).

39. Dekosky, S. T., Blennow, K., Ikonomovic, M. D. & Gandy, S. Acute and chronic traumatic encephalopathies: pathogenesis and biomarkers. *Nat. Rev. Neurol.* (in press).

40. Guskiewicz, K. M. *et al.* Association between recurrent concussion and late-life cognitive impairment in retired professional football players. *Neurosurgery* **57**, 719–726 (2005).

41. Jordan, B. D. & Bailes, J. E. Concussion history and current symptoms among retired professional football players. *Neurology* **54**, A410–A411 (2000).

42. Savica, R., Parsi, J. E., Wold, L. E., Josephs, K. A. & Ahlskog, J. E. High school football and risk of neurodegeneration: a community-based study. *Mayo Clin. Proc.* **87**, 335–340 (2012).

43. Jordan, B. D. *et al.* Head trauma and participation in contact sports as risk factors for Alzheimer's disease. *Neurology* **40**, 347 (1990).

44. Roberts, A. H. *Brain Damage in Boxers: A Study of the Prevalence of Traumatic Encephalopathy Among Ex-professional Boxers* (Pitman Medical & Scientific Publishing Co., London, 1969).

45. McKee, A. C. *et al.* The spectrum of disease in chronic traumatic encephalopathy. *Brain* **136**, 43–64 (2013).

46. Dashnaw, M. L., Petraglia, A. L. & Bailes, J. E. An overview of the basic science of concussion and subconcussion: where we are and where we are going. *Neurosurg. Focus* **33**, 1–9 (2012).

47. Jordan, B. D. *et al.* Apolipoprotein E ε4 associated with chronic traumatic brain injury in boxing. *JAMA* **278**, 136–140 (1997).

48. Kutner, K. C. *et al.* Lower cognitive performance of older football players possessing apolipoprotein E ε4. *Neurosurgery* **47**, 651–657 (2000).

49. McKee, A. C. *et al.* Chronic traumatic encephalopathy in athletes: progressive tauopathy after repetitive head injury. *J. Neuropathol. Exp. Neurol.* **68**, 709–735 (2009).

50. McKee, A. C. *et al.* TDP-43 proteinopathy and motor neuron disease in chronic traumatic encephalopathy. *J. Neuropathol. Exp. Neurol.* **69**, 918–929 (2010).

51. Omalu, B. *et al.* Emerging histomorphologic phenotypes of chronic traumatic encephalopathy in American athletes. *Neurosurgery* **69**, 173–183 (2011).

52. Critchley, M. Medical aspects of boxing, particularly from a neurological standpoint. *Br. Med. J.* **1**, 357–362 (1957).

53. Mendez, M. F. The neuropsychiatric aspects of boxing. *Int. J. Psychiatry Med.* **25**, 249–262 (1995).

54. Corsellis, J. A., Bruton, C. J. & Freeman-Browne, C. The aftermath of boxing. *Psychol. Med.* **3**, 270–303 (1973).

55. Smith, D. H., Johnson, V. E. & Stewart, W. Chronic neuropathologies of single and repetitive TBI: substrates of dementia? *Nat. Rev. Neurol.* (in press).

56. Jordan, B. D. in *Sports Neurology*, 2nd edn (eds Jordan, B. D. *et al.*) 351–366 (Lippincott-Raven, Philadelphia, 1998).

57. Small, G. W. *et al.* PET scanning of brain tau in retired National Football League players: preliminary findings. *Am. J. Geriatr. Psychiatry* **21**, 138–144 (2013).

58. Sperling, R. A. *et al.* Toward defining the preclinical states of Alzheimer's disease: recommendations from the National Institute on Aging-Alzheimer's Association workgroups on diagnostic guidelines for Alzheimer's disease. *Alzheimers Dement.* **7**, 280–292 (2011).

59. Zhang, L., Heier, L. A., Zimmerman, R. D., Jordan, B. & Ulug, A. M. Diffusion anisotropy changes in the brains of professional boxers. *AJNR Am. J. Neuroradiol.* **27**, 2000–2004 (2006).

60. Chappell, M. H. *et al.* Distribution of microstructural damage in the brains of professional boxers: a diffusion MRI study. *J. Magn. Reson. Imaging* **24**, 537–542 (2006).

61. Koerte, I. K. *et al.* A prospective study of physician-observed concussion during varsity university hockey season: white matter integrity in ice hockey players. Part 3 of 4. *Neurosurg. Focus* **33**, 1–7 (2012).

62. Koerte, I. K., Ertl-Wagner, B., Reiser, M., Zafonte, R. & Shenton, M. E. White matter integrity in the brains of professional soccer players without a symptomatic concussion. *JAMA* **308**, 1859–1861 (2012).

63. Provenzano, F. A. *et al.* F-18 FDG PET imaging of chronic traumatic brain injury in boxers: a statistical parametric analysis. *Nucl. Med. Comm.* **31**, 952–957 (2010).

64. Amen, D. G. *et al.* Impact of playing American football on long-term brain function. *J. Neuropsychiatry Clin. Neurosci.* **23**, 98–106 (2011).

65. King, N. S. & Kirwilliam, S. Permanent post-concussion symptoms after mild head injury. *Brain Inj.* **25**, 462–470 (2011).

66. Alexander, M. P. Mild traumatic brain injury: pathophysiology, natural history, and clinical management. *Neurology* **45**, 1253–1260 (1995).

67. DeBeaumont, L. *et al.* Brain function decline in healthy retired athletes who sustained their last sports concussion in early adulthood. *Brain* **132**, 695–708 (2009).

68. Kelly, J. P & Rosenberg, J. H. The development of guidelines for the management of concussion in sports. *J. Head Trauma Rehabil.* **13**, 53–65 (1998).

69. Cremona-Meteyard, S. L. & Griffen, G. M. Persistent visuospatial attention deficits following mild head injury in Australian Rules football players. *Neuropsychologia* **32**, 649–662 (1994).

-1711-

© 2013 Macmillan Publishers Limited. All rights reserved

# EXHIBIT 7

Hindawi Publishing Corporation
Rehabilitation Research and Practice
Volume 2012, Article ID 816069, 9 pages
doi:10.1155/2012/816069

*Review Article*

# Chronic Traumatic Encephalopathy: A Review

## Michael Saulle[1] and Brian D. Greenwald[2]

[1] *Touro College of Osteopathic Medicine, 230 West 125th Street, New York, NY 10027, USA*
[2] *Brain Injury Rehabilitation, Mount Sinai Hospital, 5 East 98th Street, Box 1240B, New York, NY 10029, USA*

Correspondence should be addressed to Michael Saulle, mike.saulle@gmail.com

Received 3 November 2011; Revised 24 January 2012; Accepted 6 February 2012

Academic Editor: Anne Felicia Ambrose

Copyright © 2012 M. Saulle and B. D. Greenwald. This is an open access article distributed under the Creative Commons Attribution License, which permits unrestricted use, distribution, and reproduction in any medium, provided the original work is properly cited.

Chronic traumatic encephalopathy (CTE) is a progressive neurodegenerative disease that is a long-term consequence of single or repetitive closed head injuries for which there is no treatment and no definitive pre-mortem diagnosis. It has been closely tied to athletes who participate in contact sports like boxing, American football, soccer, professional wrestling and hockey. Risk factors include head trauma, presence of ApoE3 or ApoE4 allele, military service, and old age. It is histologically identified by the presence of tau-immunoreactive NFTs and NTs with some cases having a TDP-43 proteinopathy or beta-amyloid plaques. It has an insidious clinical presentation that begins with cognitive and emotional disturbances and can progress to Parkinsonian symptoms. The exact mechanism for CTE has not been precisely defined however, research suggest it is due to an ongoing metabolic and immunologic cascade called immunoexcitiotoxicity. Prevention and education are currently the most compelling way to combat CTE and will be an emphasis of both physicians and athletes. Further research is needed to aid in pre-mortem diagnosis, therapies, and support for individuals and their families living with CTE.

## 1. Introduction

Chronic traumatic encephalopathy (CTE) has been defined as a progressive neurodegenerative disease caused by repetitive head trauma [1]. CTE was first described in 1928 when Dr. Harrison Martland, a New Jersey medical examiner, began to note a constellation of symptoms in boxers. In an article he published in the Journal of the American Medical Association entitled Punch Drunk, he describes the boxers, "cuckoo," "goofy," "cutting paper dolls," or "slug nutty" [2]. Punch drunk was later termed dementia pugilistica, literally meaning dementia of a fighter. However, with the evolution of sports like American football, these symptoms were also being reported in athletes other than boxers and was renamed chronic traumatic encephalopathy in the 1960s.

CTE has become a popular topic due to its close association with American football, hockey, soccer, boxing, and professional wrestling. Many of these affected athletes, mostly retired, have struggled in their later years with depression, substance abuse, anger, memory/motor disturbances, and suicide [3]. Autopsy results from these athletes have suggested a link between these emotional, cognitive, and physical manifestations and CTE [3–5]. In addition to athletes, military soldiers have become another group of interest as many are returning from the battlefield with brain injuries from blast trauma causing closed head injury. In this paper we present a summary of the epidemiology, risk factors, clinical presentation, pathophysiology, neuropathological findings, treatment/prevention, and future research pertaining to CTE.

## 2. Epidemiology

Concussion or mild traumatic brain injury (mTBI) is one of the most common neurologic disorders accounting for approximately 90% of all brain injuries sustained [4]. Such injuries are a common occurrence in athletes with an estimated 1.6–3.8 million sport-related concussion annually in the USA [5]. This can be seen as a gross underrepresentation of the true number as many athletes do not seek medical attention or vocalize their symptoms. This may be due to head trauma being regarded as benign, or in some the injury

is not recognized at all. These behaviors are driven by the athletes' desire to return to play and the pressure to perform [6]. DeKosky et al. reported that each year more than 1.5 million Americans have mTBI with no loss of consciousness and no need for hospitalization as well as an equal number with conscious impairing trauma but insufficiently severe to require long-term hospitalization [7].

In a 2009 review of CTE, McKee et al. found that of 51 neuropathologically diagnosed cases of CTE 46 (90%) occurred in athletes. Specifically, athletes participating in American football, boxing, soccer, and hockey comprise the majority of cases. Many of these athletes began their respective sports at a young age between 11 and 19 years [5]. While it is not clear at what age CTE can begin, McKee has neuropathologically diagnosed CTE changes in asymptomatic 18-year-old high school football player with a history of concussion. While the exact incidence of CTE is unknown, it is thought to vary widely based on sport, position, length of career, number of head injuries, age of first head injury, and genetics [8].

## 3. Risk Factors

It has been well established that repetitive concussive or subconcussive blows to the head place individuals at risk for CTE [5, 6, 8]. CTE has been associated with athletes who participate in contact sports like American football, boxing, hockey, soccer, and professional wrestling. Other sports that are not directly associated with CTE, but have well-documented cases of concussion, include mixed martial arts, rugby, and horseback riding. Other groups at risk for repetitive head trauma and CTE are military veterans, epileptics, and victims of domestic abuse [5]. It has been reported that approximately 17% of professional retired boxers will exhibit CTE [3]. Although each group listed has a unifying factor of head trauma, they differ in particular aspects that may influence the severity or chronicity of their injury (see Table 1 for a summary of risk factors).

A recent study by Crisco et al. examined head impact exposure in collegiate football players and found that the average number of impacts received by an individual player during a single season was 420 with a maximum of 2,492 [9]. These impacts vary in severity based on their position. Offensive linemen, defensive linemen, and linebackers had the most frequent impacts while quarterbacks and running backs received the greatest magnitude of head impacts [9]. In the literature McKee and colleagues reported that in five football players with diagnosed CTE all played similar positions: 3 were offensive linemen, 1 defensive linemen, and one linebacker [5]. However, according to Boston University's Center for the Study of Chronic Traumatic Encephalopathy, CTE has also been found in other position players like safety and wide receiver dismissing the idea that only certain positions are at risk for developing CTE.

While it is clear that anyone who suffers repeated head trauma, regardless of the mechanism, may carry the risk of developing CTE, there is no clear consensus on how much or how little trauma is needed to cause CTE. While most feel

TABLE 1: Risk factors associated with chronic traumatic encephalopathy.

| |
| --- |
| (i) Head trauma: single or repetitive |
| (ii) History of head concussion |
| (iii) Participation in the following |
|     Boxing |
|     American football: offensive/defensive linemen/linebackers/running backs |
|     Soccer |
|     Professional wrestling |
|     Hockey |
|     Military service: blast injuries |
| (iv) Length of sport participation |
| (v) Epileptics |
| (vi) Victims of domestic abuse |
| (vii) Age of injuries: younger ages and older ages |
| (viii) Genetic variation: ApoE3 or ApoE4 |

CTE is a manifestation of repetitive trauma, the question still stands if it can be caused by a single TBI [10]. In a study by Johnson et al., widespread tau and beta-amyloid deposition was found in the brains of individuals who suffered a single traumatic brain injury. The study included the examination of postmortem brains from long-term survivors (1–47 years) of a single TBI ($N = 39$) versus uninjured age-matched controls ($N = 47$). Results showed NFTs to be exceptionally rare in young uninjured controls, yet were abundant and diffuse in one-third of TBI cases. This was also true of beta-amyloid deposition, which was found in greater density following TBI than controls [11]. While these brains showed classic changes associated with CTE, they did not have the symptomatic profile to accompany their neuropathologic findings [11]. If these subjects went on to have repeated brain injury, it would be reasonable to expect more extensive damage with more pronounced clinical symptoms.

In a study of repeated head trauma in mice, Kane et al. created an animal model where mice did not suffer severe TBI but rather mTBI to look for CTE-like changes. They reported that exposure to head trauma for 5 consecutive days showed increased expression of glial fibrillary acidic protein and phospho-tau 30 days (~160% increase) after the last injury when compared to controls. They also reported that with their mTBI model they did not find edema, cortical contusions, obvious loss of neuronal matter beneath the skull, disruption of the blood brain barrier, or microglial activation. However, they compared this to mice that were subject to a single traumatic injury and found substantial microglial activation in the hippocampus and overlying cortex 30 days after the initial impact [12].

Another high-risk group that has recently been studied are individuals in the military [12]. Operations in Iraq and Afghanistan are reporting that TBI accounts for roughly 28% of all combat casualties and approximately 88% of these are closed-head injuries [12]. While these numbers are significant, the US Defense and Veterans Brain Injury

Center has estimated that approximately 180,000 soldiers have been diagnosed with mTBI between 2001 and 2010 while others estimate the number to be more than 300,000. Additionally, soldiers may also be exposed to toxins like organophosphates, chemical nerve agents, and heavy metals like uranium increasing their risk for brain injury [13].

Age is another possible risk factor for the development of CTE. At younger ages, while the brain is developing traumatic injury may begin the cascade of destructive events and compounded through the years of continued play. Conversely, at younger ages the brain has more plasticity allowing greater ability to manage injury than that in the mature brain [8, 10]. Length of play is another risk factor where longer careers with prolonged exposures to injury may cause more severe CTE. Of the 51 cases reviewed by Dr. McKee, 39 boxers had an average career of 14.4 years (range 4–25) while the 5 football players averaged careers of 18.4 years (range 14–23 years). These athletes began their respective sports between 11 and 19 years of age [5].

Genetic factors have also been thought to play a role in the development of CTE specifically the apolipoprotein E gene (ApoE). The ApoE4 allele has been well described in its association with Alzheimer's disease (AD) where individuals with homozygous ApoE4/E4 genotype have a 19-fold increased risk of developing AD [14]. This same gene is now thought to possibly have a role in the development of CTE [5]. Studies have shown that ApoE4-positive individuals had poorer outcomes with head trauma. Teasdale et al. reported that that patients with ApoE4 allele are more than twice as likely than those without ApoE4 to have unfavorable outcomes 6 months after head injury [15]. Kutner et al. examined 53 professional American football players to see if their cognitive functioning differed based on age and ApoE4 genotype. They reported that older age and presence of ApoE4 scored lower on cognitive tests than did those without the allele or with less playing experience [16]. Jordan et al. looked at ApoE4 genotype in boxers in relation to chronic TBI. They found that all boxers with severe impairment, based on the chronic brain injury scale, had at least 1 ApoE4 allele. Therefore, they reported that ApoE4 may be associated with increased severity of chronic neurologic deficits in high-exposure boxers [17].

In McKee and colleagues' review of the 51 CTE cases, ApoE genotyping was reported in 10 cases where 50% carried at least one ApoE4 allele and one was homozygous for E4. While they did not report what the other 4 genotypes were, it raised their suspicions to believe that ApoE4 was the gene of interest. In animal studies ApoE4 transgenic mice had greater mortality from TBI than those with ApoE3 allele. Another study showed that transgenic mice that overexpress ApoE4 allele showed increased deposition of beta-amyloid after experimental TBI [5].

However, a study by Omalu et al. reported that 70% of their CTE cohort had the ApoE3 genotype. Of the 17 athletes they used in their study they were able to determine the ApoE genotype in 10 of 14 professional athletes and in 2 of 3 high school athletes. Of the 10 professional athletes 90% had at least one ApoE3 allele, and 7 of the 10 with confirmed ApoE genotype also had CTE. Of these 7 athletes with CTE 100%

had at least one ApoE3 allele (5 E3/E3, 2 E3/E4). It should also be noted that the only professional athlete in their study that did not have the E3 allele (E2/E4) was negative for CTE. Additionally, the two other professional athletes that had the ApoE allele but did not have CTE were E2/E3 (24 years old) and E3/E3. The authors note that the one case of E3/E3 that did not have tauopathy was assessed from only select sections of the brain as they did not have access to the full brain. Of the two high school athletes both were E3/E3 genotypes and did not show any histological signs of CTE [18].

## 4. Clinical Presentation

It is important to define the timeline of CTE symptom development to distinguish it from concussive or postconcussive syndrome (PCS). The symptoms associated with acute concussion are headache, blurred vision, amnesia, tinnitus, fatigue, and slurred speech with resolution within days to weeks if managed properly. Although there is no strict timeline to the acute injury phase, it has typically been reported as three months, but 80–90% of patients show full recovery within the first 10 days [19]. When symptoms extend beyond three months, the individual is said to have PCS. These individuals will have additional symptoms of physical, emotional, cognitive, and behavioral problems [6]. PCS also has a variable timeline where symptoms typically improve within one year but may in some cases require several years for resolution. For those with persisting or permanent PCS symptoms, they would logically be considered to have CTE.

However, the typical clinical course of an individual who develops CTE is not as linear as direct progression from concussion to PCS to CTE. The onset of CTE symptoms typically starts later in the lives of certain athletes after the individual has removed themselves from competition. As reported by McKee, the first symptoms of CTE were noted at ages ranging from 25 to 76 years. McKee also reported that at the time of retirement one-third of these athletes were symptomatic with another half becoming symptomatic within 4 years of leaving sports [5]. In 14 cases (30%), mood disturbances were reported while movement abnormalities like Parkinsonism, ataxia, antalgic gait, and dysarthric speech were reported in 41% of subjects [5]. The course of symptom progression seems to follow a somewhat continuous path beginning with cognitive and emotional decline leading to eventual motor deterioration [5].

Initially, patients begin to have poor concentration, attention, and memory along with disorientation, dizziness, and headaches. They typically progress to experience irritability, outbursts of violent or aggressive behavior, confusion, and speech abnormalities. During this stage of the disease, there is a high frequency of suicide, drug overdose, and mood disorders, mainly major depressive disorder [5]. A study by Omalu and colleagues describes a similar clinical profile with a latent asymptomatic period between play and symptom onset. He reports worsening of cognitive and social functioning leading to poor money management, bankruptcy, social phobias, paranoid ideation,

insomnia, poor relationships, divorce, emotional/physical abuse, and substance abuse [18]. Family and friends of the affected individuals reported many of these symptoms to researchers through standard forensic interviews [18].

As the disease progresses in severity, there is a greater loss of motor functioning. Some patients may develop Parkinsonian symptoms of tremors, masked facieses, wide propulsive gait, poor speech, ocular abnormalities, vertigo, bradykinesia, deafness, and a small group developing dementia. Currently, the number of cases with confirmed dementia remains small. As more postmortem exams are done in the at risk group, it is expected more cases will be diagnosed. Some individuals with CTE have committed suicide, overdosed on drugs, or died from accidents preventing progression of the disease [5, 20].

## 5. Pathophysiology

The development of CTE is due to repetitive traumatic brain injury from the acceleration/deceleration forces of closed head impacts [5]. Damage to the brain generally occurs when the brain collides against the skull causing damage to the same side as the collision, coup, or to the opposite side of the impact, countercoup [6]. High-speed decelerations may also cause mechanical and chemical injury to the long axons resulting in traumatic/diffuse axonal injury. Crisco et al. report that impacts to the top of the head had the lowest rotational force but highest linear force leading more to cervical spine injuries. However, lateral blows cause rotational forces, which are the typical cause of mild traumatic brain injury [6]. While there is a firm understanding of head trauma being the general cause of the brain damage in CTE, researchers have not agreed upon a unifying mechanism of injury. Originally the associated axonal damage was thought to be due to shearing or mechanical forces at the time of injury. However, it is now reported that axonal shearing or tearing is a secondary event to brain inflammation and neurodegeneration of axons [5]. In the acute setting there is rapid axonal swelling, perisomatic axotomy, and Wallerian degeneration [5].

Gavett et al. offered a general description of how the damage may occur through the repeated traumatic injury of axons. Damage to axons would cause changes in membrane permeability and ionic shifts causing a large influx of calcium. Subsequent release of caspases and calpains would trigger tau phosphorylation, misfolding, shortening, and aggregation as well as cytoskeleton failure with dissolution of neurofilaments and microtubules [8].

This idea was elaborated on in a recent paper by Blaylock and Maroon who describes the concept of immunoexcitotoxicity as a possible central mechanism for CTE. He describes a cascade of events that begin with an initial head trauma, which "primes" the microglia for subsequent injuries. When the homeostasis of the brain is disturbed, some of the microglia undergo changes to set them in a partially activated state. When these microglia become fully activated by continued head trauma, they release toxic

levels of cytokines, chemokines, immune mediators, and excitotoxins like glutamate, aspartate, and quinolinic acid. These excitotoxins inhibit phosphatases, which results in hyperphosphorylated tau and eventually neurotubule dysfunction and neurofibrillary tangle deposition in particular areas of the brain [10]. There is also an apparent synergy between the proinflammatory cytokines and glutamate receptors that worsen neurodegeneration in injured brain tissue. This combination also increases the reactive oxygen and nitrogen intermediates that interfere with glutamate clearance keeping the injury response high. Priming can also occur from insults to the brain like systemic infections, environmental toxins, and latent viral infections in the brain (cytomegalovirus and herpes simplex virus) [10].

The microglia, however, have a dual function allowing them to switch between being neurodestructive and neuroreparative. During acute injury the microglia are responsible for containing the damage with inflammation, cleaning up debris, and repairing the surrounding damaged tissue [10]. However, if the individual experiences a second brain trauma or multiple continuous traumas, the microglia may never have the chance to switch from proinflammatory to reparative mode [10]. Such repetitive trauma may place the brain in a state of continuous hyperreactivity leading to progressive and prolonged neuronal injury. This would support the evidence that repeated mTBI results in a higher incidence of prolonged neurological damage than single-event injury [10].

The eventual neurodegeneration is also dependent on other factors like the age of the brain at the time of injury. Several studies have shown that older individuals have poorer outcomes when compared to younger subjects experiencing TBI. Streit et al. showed that as the microglia age, they become more dysfunctional, which may impair their ability to terminate immune activation. Therefore, as the brain grows older, it has more activation of microglia with weaker mitochondrial functioning, neuronal and glial dystrophy, higher levels of inflammation, and lifetime exposures to environmental toxins [10].

## 6. Gross Pathology Findings

As described by Corsellis et al., the most common gross pathological findings in CTE included reduced brain weight, enlargement of the lateral and third ventricles, thinning of the corpus callosum, cavum septum peallucidum with fenestrations, scarring, and neuronal loss of the cerebellar tonsils. Brain atrophy was most severe in the frontal lobes (36%), temporal lobes (31%), and parietal lobes (22%) with the occipital lobe rarely being affected [5]. McKee and colleagues reported that with increasing severity of disease marked atrophy is noted in the hippocampus, entorhinal cortex, and the amygdala [5]. Blaylock and Maroon reported that these areas showed the most severe atrophy and were noted to have the highest concentration of glutamate receptors and cytokine receptors [10].

## 7. Microscopic Pathology

According to Dr. Bennet Omalu, a forensic neuropathologist, the basic feature of CTE is the presence of sparse, moderate, or frequent band-shaped, flame-shaped small globose and large globose neurofibrillary tangles (NFTs) in the brain accompanied by sparse, moderate, or frequent neuropil threads (NTs) [18]. Similarly, McKee and colleagues described the core pathology of CTE to include tau-reactive NFTs, astrocytic tangles, and dot-like spindle-shaped NTs [10]. These changes are commonly noted in the dorsolateral frontal, subcallosal, insular, temporal, dorsolateral parietal, and inferior occipital cortices. Additionally, Dr. McKee also reported occasional tau immunoreactive neuritis and NFTs in the posterior, lateral, and/or anterior horns of the spinal cord (see Table 2) [10].

Beta-amyloid (Aβ) deposition is an inconsistent finding in CTE as Dr. McKee noted that of the 51 cases of confirmed CTE she reviewed that only 3 (6%) had amyloid angiopathy [5]. Animal studies by Iwata et al. used swine TBI models to show minimal Aβ accumulation in axons acutely after injury but saw greater accumulation one month following injury [20]. Similarly Chen et al., also using a swine TBI model, found evidence of axonal pathology 6 months following rotational brain injuries [21].

Although CTE and Alzheimer's disease (AD) both have NFTs and possibly beta-amyloid plaques, there are several unique features that distinguish the two [8]. First, beta-amyloid deposits are only found in 40% to 45% of patients with CTE while they are present in nearly all cases of AD. Secondly, the tau distribution in CTE is located more in the superficial cortical laminae whereas in AD they are found in large projection neurons in deeper layers. It is also important to note is the distribution of the NFTs in CTE that extremely irregular with uneven foci in the frontal temporal and insular cortices, while AD has a more uniform cortical NFT distribution. DeKosky et al. noted that the hippocampus is frequently spared by tauopathy in CTE, whereas it is the first location affected by tauopathy in AD [7]. Lastly, NFTs in CTE are most concentrated at the depths of the cortical sulci and are typically perivascular, which might indicate that there are disruptions of cerebral microvasculature and the blood-brain barrier at the time of injury leading to NFT formation [8].

A recent study by Omalu et al. described four histomorphological phenotypes of CTE in American athletes (see Table 3). They examined specimens from 17 deceased athletes, 10 of which had histopathologically confirmed CTE. All were male, age range of 17–52, (8 were American football players, 4 professional wrestlers, 1 mixed martial arts fighter, 1 professional boxer, and 3 high school American football players). Omalu and colleagues created these histologic phenotypes based on the presences or absence of NFTs, NTs, and diffuse amyloid plaques as well as their quantitative distribution in the cerebral cortex, subcortical nuclei/basal ganglia, hippocampus, and cerebellum. These results are summarized in Tables 1 and 2. Phenotype one shows sparse to frequent NFT and NTs in the cerebral cortex and brainstem without involvement of the subcortical nuclei, basal ganglia, or cerebellum without any beta-amyloid.

Table 2: Areas of damage in the brain.

| |
| --- |
| *Gross areas of damage* |
| (i) Reduced brain weight with atrophy of |
|     Frontal lobe |
|     Temporal lobe |
|     Parietal lobe |
|     Occipital lobe |
| (ii) Enlargement of lateral and third ventricles |
| (iii) Thinning of the corpus callosum |
| (iv) Cavum septum pellucidum with fenestrations |
| (v) Scarring and neuronal loss of cerebellar tonsils |
| (vi) Pallor of substantia nigra |
| *Areas of tau NFTs and NT* |
| (i) Superficial cortical layers |
| (ii) Dorsolateral frontal |
| (iii) Subcallosal |
| (iv) Insular |
| (v) Temporal |
| (vi) Dorsolateral parietal |
| (vii) Inferior occipital cortices |
| (viii) Thalamus |
| (ix) Hypothalamus |
| (x) Substantia nigra |
| (xi) Olfactory bulbs |
| (xii) Hippocampus |
| (xiii) Entorhinal cortex |
| (xiv) Amygdala |
| (xv) Brainstem |

Phenotype two is the same as the first except they show diffuse beta-amyloid plaques. The third group had higher concentrations of NFTs and NTs only in the brainstem without involvement elsewhere with no beta-amyloid. The fourth group had sparse NFTs and NTs in the cerebral cortex, brainstem, subcortical nuclei, and basal ganglia with an unaffected cerebellum and no beta-amyloid [18].

Trans-activator regulatory DNA-binding protein 43 or TDP-43 has been a recent addition to the growing neuropathologic findings associated with CTE. TDP-43 is a highly conserved protein that is found in many tissues including the CNS [22]. It plays a significant role in mediating the response of the neuronal cytoskeleton to axonal injury [8]. In a study by McKee et al., they reported widespread TDP-43 proteinopathy in 80% of their CTE cases. Until this study, TDP-43 was thought to be a unique finding in amyotrophic lateral sclerosis (ALS) and frontotemporal lobar degeneration (FTLD-TDP) but has now been found in other neurodegenerative diseases as a secondary pathology [22].

TABLE 3: Emerging histomorphologic phenotypes in American athletes.

| Phenotype | Histological findings |
| --- | --- |
| 1 | Sparse to frequent NFT and NTs in the cerebral cortex and brainstem without involvement of the subcortical nuclei, basal ganglia, or cerebellum without any beta-amyloid |
| 2 | Sparse to frequent NFT and NTs in the cerebral cortex and brainstem with diffuse beta-amyloid deposition. No involvement of the subcortical nuclei, basal ganglia, or cerebellum |
| 3 | Higher concentrations of NFTs and NTs only in the brainstem. No involvement elsewhere or any beta-amyloid |
| 4 | Sparse NFTs and NTs in the cerebral cortex, brainstem, subcortical nuclei, and basal ganglia with an unaffected cerebellum and no beta-amyloid [18] |

## 8. Clinicopathologic Correlations

The typical symptoms of CTE can be directly connected to the specific areas of the brain that are injured during the progression of disease. Based on these symptoms it is clear that there is damage to the hippocampal-septo-hypothalamic-mesencephalic circuitry (Papez circuit) also known as the emotional or visceral brain [5]. Damage to these areas correlate to the behavioral symptoms of emotional liability, aggression, and violence. Damage to the hippocampus, enteorhinal cortex, and medial thalamus conceivably causes the commonly reported complaint of memory disturbance. Destruction to the frontal cortex and white matter may result in the dysexecutive symptoms found throughout the many cases of CTE. Motor abnormalities may be due to degeneration of the substantia nigra and pars compacta along with symptoms of dysarthria, dysphagia, and ocular malfunction due to brainstem nuclei injury like the hypoglossal and oculomotor nuclei (see Table 4) [5].

## 9. Neurological Sequelae

Historically amyotrophic lateral sclerosis (ALS) has been thought to be a sporadic disease with no single causative factor. Literature has reported risk factors to include trauma to the brain or spinal cord, strenuous physical activity, exposure to heavy metals, cigarette smoking, radiation, electrical shocks, and pesticides [22]. Given these risk factors, the literature strongly correlates a history of head trauma with increased incidence of ALS. In a case control study, Chen et al. reported that having repeated head trauma within the 10 years prior to diagnosis had a 3-fold higher risk of ALS [23]. The same group also did a meta-analysis of 8 ALS studies and estimated a pooled odds ratio of 1.7 (95% CI: 1.3, 2.2) for at least one previous head injury. Another study reported increased ALS incidence and mortality in professional Italian soccer players when compared to the general population [24]. Additionally, an incidence study of 7,325 Italian professional soccer players showed an ALS incidence 6.5 times higher than expected [25]. ALS has also been seen in higher numbers among American and Canadian football players when compared to the general population [22]. The risk of ALS has also been reportedly high in war veterans. A study of Gulf War veterans reported that the risk of ALS was increased 2-fold during the 10 years following service [26]. A study by Schmidt et al. reported that veterans who received head trauma during war had an adjusted odds

ratio for the development of ALS of 2.33 (95% CI: 1.18–4.61) [27].

A recent study by McKee and colleagues examined and compared the brains and spinal cords of 12 athletes with confirmed CTE to 12 cases of sporadic ALS to 12-age matched controls. Of the 12 CTE cases, 3 also had a diagnosed motor neuron disease (MND) resembling ALS. The study found that those with CTE and the motor neuron disease not only had the typical neuropathologic presentation of CTE with tau-NFT, NT, and TDP-43 throughout the brain and brain stem, but they also had these changes in the anterior horns of the spinal cord in high concentrations. Of the 9 CTE patients that did not have the MND, they had similar CTE neuropathology, but it did not affect the spinal cord as significantly. When compared to the samples of sporadic ALS, they found TDP-43 immunoreactivity in all 12 cases with no tau immunoreactive NFTs. The age-matched controls showed no TDP-43 or tau reactivity. These results indicate that the widespread tauopathy and TDP-43 proteinopathy of CTE can in some cases extend beyond the brain and the brain stem to severely affect the spinal cord. The authors have labeled these cases as having chronic traumatic encephalomyelopathy (CTEM). While this has only been identified in three cases, it opens the floor to further discussion and research to see if CTEM is in fact a unique disease or just the coincidental occurrence of ALS and CTE. McKee has stated that the tau pathology in the three cases of CTEM is not only distinct from that of sporadic ALS, but the nature and distribution of the TDP-43 proteinopathy are also unique [22].

## 10. Diagnosis

Currently the only way to definitively diagnose CTE is through postmortem neuropathological autopsy [8]. Clinical diagnosis is difficult due to a lack of consensus on diagnostic criteria or large-scale longitudinal clinicopathologic correlation studies [8]. The differential diagnosis for CTE usually includes diseases like AD and frontotemporal dementia (FTD), which all share similar clinical symptoms, and all may have a history of head trauma making a clinical diagnosis difficult. Although age can help in distinguishing between AD and CTE, it does not help when deciding between FTD and CTE.

It is the hope of many that the advances in neuroimaging will aid in detecting chronic and acute changes associated with CTE. Diffusion tensor imaging (DTI) has been reported

TABLE 4: Clinicopathological correlations [5].

| Damage area | Clinical presentation |
| --- | --- |
| Hippocampus<br>Entorhinal cortex<br>Medial thalamus | Early deficits in memory |
| Frontal cortex and underlying white matter | Dysexecutive symptoms |
| Dorsolateral parietal<br>Posterior temporal<br>Occipital cortices | Visuospatial difficulties |
| Substantia nigra<br>Pars compacta | Parkinsonian motor features |
| Cortical and subcortical frontal damage<br>Cerebellar tract injury in brainstem | Gait disorder: staggered, slowed, ataxic |
| Brainstem nuclei (hypoglossal/oculomotor) | Dysarthria, dysphagia, ocular abnormalities |
| Amygdala | Aggression and violent outbursts |

to be sensitive enough to assess axonal integrity in the setting of mild, moderate, and severe TBI. DTI studies have shown their ability to show occult white matter damage after mTBI that was not visible on typical MRI scans. A study by Kumar et al. tracked serial changes in white matter using DTI techniques in mTBI and found that fractional anisotropy (FA) and mean diffusivity (MD) in the genu of the corpus callosum appear early and persisted at 6 months as a secondary injury to microgliosis [28]. Another study by Inglese et al. showed the abilities of DTI as they reported significant abnormalities in various regions of the brain after mTBI when compared to controls [29]. A third study by Henry and colleagues used DTI to detect changes in white matter by comparing a group of 10 nonconcussed athletes to 18 concussed athletes. They reported that at 1–6 days and at 6 months following concussion there was FA in dorsal regions of both cortical spinal tracts and the corpus callosum [30].

Although researchers are trying to identify biomarkers to aid in diagnosis, there currently are no makers identified in the literature that can be used to diagnosis CTE. However, there are several that are believed to help in identifying CTE like the use of magnetic resonance spectroscopy that can detect changes in glutamate/glutamine, N-acetyl aspartate, and mylo-inositol which have been shown to be abnormal in brain injury [8]. There has also been discussion of attempting to measure tau and phospho-tau in the cerebrospinal fluid of those suspected of having CTE [8].

## 11. Treatments/Prevention

Currently, the treatment methodologies for CTE are purely preventive. However, in sports like American football, prevention of head trauma is a seemingly difficult goal to attain. Hard hits and head collisions are more than simple aspects of the game; they are part of the sports identity. Therefore, prevention would require a multifaceted approach involving administrators, coaches, players, referees, team physicians, and even the fans who watch the games. The administrators create the policies that penalize athletes for reckless or dangerous hits as well as setting equipment standards for the various leagues. It is the role of the coaches to teach their players correct and safe technique for tackling, hitting, and personal protection while creating a team culture that encourages hard but controlled play. Coaches also need to be aware of the cumulative effect of repetitive mTBI and limit the amount of full contact during practice and drills. It is the role of the players to understand the potential dangers and consequences of head trauma beyond their playing years so they can protect themselves and limit the number of injuries during their career. It is also incumbent on the athlete to not downplay their injuries and to seek help or advice if they are suffering from signs or symptoms of head trauma. As for the referees, it is their role to create a safe playing environment and uphold the rules set forth to protect the players whether on the field, in the ring, or on the ice. As for the team physician, it is their task to remove players from play and appropriately manage their mTBI until they meet the return-to-play criteria. The decision to clear a player is challenging for the physician who has no baseline information of the player's cognitive function prior to the injury. Therefore, it has been suggested that players undergo neuropsychological testing prior to participation in sports as a tool to properly assess the athlete's cognitive deficits both acutely and chronically.

Another aspect of prevention is improving the protective equipment worn by the athletes. It has been shown that helmets and mouth guards function very well in protecting the player from severe head injury if the helmet fits correctly, is strapped in place, and lined with the appropriate padding [6]. A study by Viano and Halstead compared American football helmets from 1970 to 2010 and reported that the newer helmets are heavier, primarily from more padding, longer, higher, and wider then their 1970s counterparts. These larger helmets were better at absorbing forces and impacts associated with concussions in American football [31]. While helmets are important, they may also give some players a false sense of protection leading to a more reckless and violent style of play. Neck strength is another factor that can be important in minimizing head injury especially in younger populations of athletes and should be emphasized by trainers and strength coaches [6]. Some groups are looking for medical therapies to limit the damage after a head injury. Particularly, the use of beta-amyloid-lowering medications have been shown to improve the outcomes following TBI in rodent models [7].

## 12. Future Considerations for Research

Although there has been an exponential growth in research and interest in CTE over the last five years, the full understanding of it still remains in its infancy. Affected athletes have been the greatest supporters as Boston University's Center for the Study of CTE has more than 260 former athletes in their brain and spinal cord donation registry.

These donations will supply researchers with a wealth of information that will improve animal models, better define the mechanism of injury, as well as advance diagnosis and treatment. As the foundation of knowledge grows, we can better identify genetic variants that put individuals at risk for CTE. The CTE community will also benefit from ongoing concussion research as groups look for acute biomarkers to be used as a diagnostic test for brain injury. There is also a need for further research regarding the role of advanced neuroimaging like DTI and its ability to possibly detect early signs of acute injury. Additionally, more work must be done to quantify the magnitude and frequency of head impact that is needed to cause the neurodegeneration associated with CTE.

## 13. Conclusions

Chronic traumatic encephalopathy is a neurodegenerative disease that is a long-term consequence of single or repetitive closed head injuries for which there is no treatment and no definitive premortem diagnosis. It has been closely tied to athletes who participate in contact sports like boxing, American football, soccer, professional wrestling, and hockey. Aside from repeated head trauma, risk factors include presence of ApoE3 or ApoE4 allele, military service, and old age. It is histologically identified by the presence of tau-immunoreactive NFTs with NTs with some cases having a TDP-43 proteinopathy or beta-amyloid plaques. It has an insidious clinical presentation that begins with cognitive and emotional disturbances and can progress to Parkinsonian symptoms. The exact mechanism for CTE has not been precisely defined; however, research suggests it is due to an ongoing metabolic and immunologic cascade called immunoexcitotoxicity. Current research is attempting to identify specific biomarkers along with more sophisticated imaging techniques for the diagnosis of CTE. Future research should also be centered around how to manage CTE as suicide is a common fate for those battling the disease. Further efforts need to be made to educate players, coaches, and administrators of all levels of athletics to make them aware of the determents of mTBI and how to best protect themselves. There must also be further investigations into the possible link between CTE and motor neuron disease. Establishing such a causal link may open new doors in ALS research and hopefully lead to better treatments. Through the continued efforts of athletes, scientists, and physicians, our knowledge of CTE will advance and allow for the evolution of better diagnosis, treatment, and prevention.

## References

[1] D. J. Thurman, C. M. Branche, and J. E. Sniezek, "The epidemiology of sports-related traumatic brain injuries in the United States: recent developments," *Journal of Head Trauma Rehabilitation*, vol. 13, no. 2, pp. 1–8, 1998.

[2] H. S. Martland, "Punch drunk," *Journal of the American Medical Association*, vol. 91, pp. 1103–1107, 1928.

[3] B. I. Omalu, J. Bailes, J. L. Hammers, and R. P. Fitzsimmons, "Chronic traumatic encephalopathy, suicides and parasuicides in professional American athletes: the role of the forensic pathologist," *American Journal of Forensic Medicine and Pathology*, vol. 31, no. 2, pp. 130–132, 2010.

[4] M. Fourtassi, A. Hajjioui, A. E. Ouahabi, H. Benmassaoud, N. Hajjaj-Hassouni, and A. E. Khamlichi, "Long term outcome following mild traumatic brain injury in Moroccan patients," *Clinical Neurology and Neurosurgery*, vol. 113, no. 9, pp. 716–720, 2011.

[5] A. C. McKee, R. C. Cantu, C. J. Nowinski et al., "Chronic traumatic encephalopathy in athletes: progressive tauopathy after repetitive head injury," *Journal of Neuropathology and Experimental Neurology*, vol. 68, no. 7, pp. 709–735, 2009.

[6] D. H. Daneshvar, C. M. Baugh, C. J. Nowinski, A. C. McKee, R. A. Stern, and R. C. Cantu, "Helmets and mouth guards: the role of personal equipment in preventing sport-related concussions," *Clinics in Sports Medicine*, vol. 30, no. 1, pp. 145–163, 2011.

[7] S. T. DeKosky, M. D. Ikonomovic, and S. Gandy, "Traumatic brain injury—football, warfare, and long-term effects," *New England Journal of Medicine*, vol. 363, no. 14, pp. 1293–1296, 2010.

[8] B. E. Gavett, R. A. Stern, and A. C. McKee, "Chronic traumatic encephalopathy: a potential late effect of sport-related concussive and subconcussive head trauma," *Clinics in Sports Medicine*, vol. 30, no. 1, pp. 179–188, 2011.

[9] J. J. Crisco, B. J. Wilcox, J. G. Beckwith et al., "Head impact exposure in collegiate football players," *Journal of Biomechanics*, vol. 44, no. 15, pp. 2673–2678, 2011.

[10] R. L. Blaylock and J. Maroon, "Immunoexcitotoxicity as a central mechanism in chronic traumatic encephalopathy-a unifying hypothesis," *Surgical Neurology International*, vol. 2, article 107, 2011.

[11] V. E. Johnson, W. Stewart, and D. H. Smith, "Widespread tau and amyloid-beta pathology many years after a single traumatic brain injury in humans," *Brain Pathology*, vol. 22, no. 2, pp. 142–149, 2012.

[12] M. J. Kane, M. Angoa-Pérez, D. I. Briggs, D. C. Viano, C. W. Kreipke, and D. M. Kuhn, "A mouse model of human repetitive mild traumatic brain injury," *Journal of Neuroscience Methods*, vol. 203, no. 1, pp. 41–49, 2012.

[13] R. W. Haley, "Excess incidence of ALS in young Gulf War veterans," *Neurology*, vol. 61, no. 6, pp. 750–756, 2003.

[14] D. Ellison, S. Love, L. Chimelli, B. Harding, and H. V. Vinters, *Neuropathology: A Reference Text of CNS Pathology*, Mosby, London, UK, 2nd edition, 2004.

[15] G. M. Teasdale, J. A. R. Nicoll, G. Murray, and M. Fiddes, "Association of apolipoprotein E polymorphism with outcome after head injury," *The Lancet*, vol. 350, no. 9084, pp. 1069–1071, 1997.

[16] K. C. Kutner, D. M. Erlanger, J. Tsai, B. Jordan, and N. R. Relkin, "Lower cognitive performance of older football players possessing apolipoprotein E e epsilon 4," *Neurosurgery*, vol. 47, no. 3, pp. 651–658, 2000.

[17] B. D. Jordan, N. R. Relkin, L. D. Ravdin, A. R. Jacobs, A. Bennett, and S. Gandy, "Apolipoprotein E epsilon 4 associated with chronic traumatic brain injury in boxing," *Journal of the American Medical Association*, vol. 278, no. 2, pp. 136–140, 1997.

[18] B. Omalu, J. Bailes, R. L. Hamilton et al., "Emerging histomorphologic phenotypes of chronic traumatic encephalopathy in american athletes," *Neurosurgery*, vol. 69, no. 1, pp. 173–183, 2011.

[19] L. C. Henry, S. Tremblay, S. Leclerc et al., "Metabolic changes in concussed American football players during the acute and

chronic post-injury phases," *BMC Neurology*, vol. 11, article 105, 2011.

[20] A. Iwata, X. H. Chen, T. K. McIntosh, K. D. Browne, and D. H. Smith, "Long-term accumulation of amyloid-β in axons following brain trauma without persistent upregulation of amyloid precursor protein genes," *Journal of Neuropathology and Experimental Neurology*, vol. 61, no. 12, pp. 1056–1068, 2002.

[21] X. H. Chen, R. Siman, A. Iwata, D. F. Meaney, J. Q. Trojanowski, and D. H. Smith, "Long-term accumulation of amyloid-β, β-secretase, presenilin-1, and caspase-3 in damaged axons following brain trauma," *American Journal of Pathology*, vol. 165, no. 2, pp. 357–371, 2004.

[22] A. C. McKee, B. E. Gavett, R. A. Stern et al., "TDP-43 proteinopathy and motor neuron disease in chronic traumatic encephalopathy," *Journal of Neuropathology and Experimental Neurology*, vol. 69, no. 9, pp. 918–929, 2010.

[23] H. Chen, M. Richard, D. P. Sandler, D. M. Umbach, and F. Kamel, "Head injury and amyotrophic lateral sclerosis," *American Journal of Epidemiology*, vol. 166, no. 7, pp. 810–816, 2007.

[24] S. Belli and N. Vanacore, "Proportionate mortality of Italian soccer players: is amyotrophic lateral sclerosis an occupational disease?" *European Journal of Epidemiology*, vol. 20, no. 3, pp. 237–242, 2005.

[25] A. Chiò, G. Benzi, M. Dossena, R. Mutani, and G. Mora, "Severely increased risk of amyotrophic lateral sclerosis among Italian professional football players," *Brain*, vol. 128, no. 3, pp. 472–476, 2005.

[26] R. D. Horner, K. G. Kamins, J. R. Feussner et al., "Occurrence of amyotrophic lateral sclerosis among Gulf War veterans," *Neurology*, vol. 61, no. 6, pp. 742–749, 2003.

[27] S. Schmidt, L. C. Kwee, K. D. Allen, and E. Z. Oddone, "Association of ALS with head injury, cigarette smoking and APOE genotypes," *Journal of the Neurological Sciences*, vol. 291, no. 1-2, pp. 22–29, 2010.

[28] R. Kumar, M. Husain, R. K. Gupta et al., "Serial changes in the white matter diffusion tensor imaging metrics in moderate traumatic brain injury and correlation with neuro-cognitive function," *Journal of Neurotrauma*, vol. 26, no. 4, pp. 481–495, 2009.

[29] M. Inglese, S. Makani, G. Johnson et al., "Diffuse axonal injury in mild traumatic brain injury: a diffusion tensor imaging study," *Journal of Neurosurgery*, vol. 103, no. 2, pp. 298–303, 2005.

[30] L. C. Henry, J. Tremblay, S. Tremblay et al., "Acute and chronic changes in diffusivity measures after sports concussion," *Journal of Neurotrauma*, vol. 28, no. 10, pp. 2049–2059, 2011.

[31] D. C. Viano and D. Halstead, "Change in size and impact performance of football helmets from the 1970s to 2010," *Annals of Biomedical Engineering*, vol. 40, no. 1, pp. 175–184, 2012.






















Submit your manuscripts at
http://www.hindawi.com

# EXHIBIT 8

OPEN

Citation: Transl Psychiatry (2014) 4, e441; doi:10.1038/tp.2014.91
© 2014 Macmillan Publishers Limited   All rights reserved 2158-3188/14
www.nature.com/tp



## CASE REPORT

# Tauopathy PET and amyloid PET in the diagnosis of chronic traumatic encephalopathies: studies of a retired NFL player and of a man with FTD and a severe head injury

EM Mitsis[1,2,3,†], S Riggio[1,3,4,5], L Kostakoglu[6], DL Dickstein[2,7], J Machac[6], B Delman[8], M Goldstein[4], D Jennings[9], E D'Antonio[10], J Martin[1], TP Naidich[8], A Aloysi[1], C Fernandez[1,2,3], J Seibyl[9], ST DeKosky[11], GA Elder[1,3,4], K Marek[9], W Gordon[5,10], PR Hof[2,7], M Sano[1,2,3] and S Gandy[1,2,3,4,5]

Single, severe traumatic brain injury (TBI) which elevates CNS amyloid, increases the risk of Alzheimer's disease (AD); while repetitive concussive and subconcussive events as observed in athletes and military personnel, may increase the risk of chronic traumatic encephalopathy (CTE). We describe two clinical cases, one with a history of multiple concussions during a career in the National Football League (NFL) and the second with frontotemporal dementia and a single, severe TBI. Both patients presented with cognitive decline and underwent [18F]-Florbetapir positron emission tomography (PET) imaging for amyloid plaques; the retired NFL player also underwent [18F]-T807 PET imaging, a new ligand binding to tau, the main constituent of neurofibrillary tangles (NFT). Case 1, the former NFL player, was 71 years old when he presented with memory impairment and a clinical profile highly similar to AD. [18F]-Florbetapir PET imaging was negative, essentially excluding AD as a diagnosis. CTE was suspected clinically, and [18F]-T807 PET imaging revealed striatal and nigral [18F]-T807 retention consistent with the presence of tauopathy. Case 2 was a 56-year-old man with personality changes and cognitive decline who had sustained a fall complicated by a subdural hematoma. At 1 year post injury, [18F]-Florbetapir PET imaging was negative for an AD pattern of amyloid accumulation in this subject. Focal [18F]-Florbetapir retention was noted at the site of impact. In case 1, amyloid imaging provided improved diagnostic accuracy where standard clinical and laboratory criteria were inadequate. In that same case, tau imaging with [18F]-T807 revealed a subcortical tauopathy that we interpret as a novel form of CTE with a distribution of tauopathy that mimics, to some extent, that of progressive supranuclear palsy (PSP), despite a clinical presentation of amnesia without any movement disorder complaints or signs. A key distinguishing feature is that our patient presented with hippocampal involvement, which is more frequently seen in CTE than in PSP. In case 2, focal [18F]-Florbetapir retention at the site of injury in an otherwise negative scan suggests focal amyloid aggregation. In each of these complex cases, a combination of [18F]-fluorodeoxyglucose, [18F]-Florbetapir and/or [18F]-T807 PET molecular imaging improved the accuracy of diagnosis and prevented inappropriate interventions.

*Translational Psychiatry* (2014) **4**, e441; doi:10.1038/tp.2014.91; published online 16 September 2014

## INTRODUCTION

Recent attention has been focused on the cognitive risks involved in contact sports. These concerns have been associated historically with chronic and repetitive concussions in boxers, but recently professional football players,[1,2] hockey players[3] and wrestlers[4] have become the focus of expanded attention. In addition, the sometimes-fatal consequence of a single, significant traumatic brain injury (TBI) has been highlighted recently by the media due to high profile cases (for example, http://abcnews.go.com/Enter tainment/Movies/story?id = 7119825 and http://www.express. co.uk/comment/columnists/richard-and-judy/451938/F1-racing-dri ver-Michael-Schumacher-ski-crash-highlights-sport-secret-on-head-injuries). On the basis of clinical and postmortem studies, the conventional wisdom has been that a single severe TBI increases risk for Alzheimer's disease (AD),[5,6] whereas the consequences of chronic repetitive TBI, first identified in boxers, increases the risk for a tangle-predominant disease, or tauopathy, known as dementia pugilistica.[7] More recently, the term 'chronic traumatic encephalopathy' (CTE) has been applied when dementia pugilistica-like neuropathology was observed in retired National Football League (NFL) players, as well as in entertainment wrestlers, victims of domestic violence and in military veterans exposed to blast and concussive injuries from improvised explosive devices.[1,2,4,8–10] Neuropathologically, CTE is characterized by prominent tauopathy, variable degrees of diffuse amyloid deposition, and degeneration of the neocortex, hippocampus,

[1]Department of Psychiatry, Icahn School of Medicine at Mount Sinai, New York, NY, USA; [2]Mount Sinai's Alzheimer's Disease Research Center, Icahn School of Medicine at Mount Sinai, New York, NY, USA; [3]James J. Peters VA Medical Center, Bronx, NY, USA; [4]Department of Neurology, Icahn School of Medicine at Mount Sinai, New York, NY, USA; [5]The NFL Neurological Program, Icahn School of Medicine at Mount Sinai, New York, NY, USA; [6]Department of Nuclear Medicine, Icahn School of Medicine at Mount Sinai, New York, NY, USA; [7]Fishberg Department of Neuroscience, Icahn School of Medicine at Mount Sinai, New York, NY, USA; [8]Department of Radiology, Icahn School of Medicine at Mount Sinai, New York, NY, USA; [9]Institute for Neurodegenerative Disorders, Yale University, New Haven, CT, USA; [10]Department of Rehabilitation Medicine, Icahn School of Medicine at Mount Sinai, New York, NY, USA and [11]Department of Neurology, University of Virginia, Charlottesville, VA, USA. Correspondence: Dr S Gandy, Mount Sinai's Alzheimer's Disease Research Center, James J. Peters VA Medical Center and Icahn School of Medicine at Mount Sinai, One Gustave L. Levy Place, Box 1187, New York, NY 10029, USA.
E-mail: samuel.gandy@mssm.edu
†Deceased.
Received 9 March 2014; revised 12 August 2014; accepted 13 August 2014

Case 2-15-22710-CAB Document 20-1 Filed 01/06/16 Page 3178 of 10 Filed 04/08/2025
Role of tauopathy in the diagnosis of CTE
EM Mitsis et al

2

amygdala, basal forebrain and mammillary bodies. The nature, distribution and patterns of neurofibrillary degeneration in CTE are distinctive from AD,[11,12] and neuropsychological, mood and neurobehavioral dysfunction in CTE typically presents in midlife after a latency period, usually years or decades after exposure to the repetitive trauma.[13] The cognitive and behavioral symptoms of CTE begin insidiously, followed by progressive deterioration. Mood symptoms typically include depression, apathy, irritability and suicidality. Behavioral symptoms include poor impulse control, disinhibition and aggression, as well as frequent comorbid substance abuse. Nevertheless, CTE remains a controversial diagnosis, as it is a pathological diagnosis, and no consensus on the clinical diagnosis has yet been developed.[14,15] Therefore, diagnosis may be difficult to determine on the basis of a standard clinical and laboratory evaluation criteria.

The challenge faced by many clinicians in such cases is making an accurate diagnosis from among the various dementias that share cognitive, mood and behavioral symptoms, particularly when considering the differential diagnosis of AD or frontotemporal dementia (FTD) and CTE. To order the appropriate tests and implement the most effective treatment available, clinicians must determine the underlying neuropathology on the basis of clinical evaluation and history, and will ultimately diagnose an individual with a neurodegenerative disease to be proven at the post-mortem examination. Three new positron emission tomography (PET) tracers have been approved recently by the US Food and Drug Administration as clinical tools to estimate brain amyloid burden in patients being evaluated for cognitive impairment (CI) or dementia. Imaging with these tracers, if positive, means AD plaques are present; if the scan is negative, cerebral amyloidosis is absent, and a negative scan, such as the one in this case using [18F]-Florbetapir, provides in vivo confirmation that the dementia is not AD, if negative. Such scans increase the accuracy of diagnosis. Amyloid imaging may improve etiological likelihood in situations where the differential diagnosis cannot be resolved on the basis of standard clinical and laboratory criteria.[16] In the absence of brain amyloid it is unlikely that the cause of an individual's cognitive decline is due to AD.[17]

Early studies suggested that TBI increased the risk for AD at an earlier age of onset; however, these findings were not based entirely on neuropathological evidence and some were methodologically flawed (for review, see ref. 18). The diagnosis of AD requires the presence of amyloid β neuritic plaques and neurofibrillary tangles in brain.[19] The clinical distinction of AD from other causes of posttraumatic CI can be challenging, but accurate diagnosis is required to avoid misdiagnosis, incorrect prognosis, incorrect family history, and potentially, initiation of inappropriate treatment.

Several new PET imaging neurotracers have been developed that detect pathological tau in vivo. One such ligand, [18F]-T807, is one of a novel class of 5H-pyrido[4,3-b]indole labeled with [18F] that has a high affinity and selectivity for tau over amyloid β (> 25 fold).[20] Preliminary imaging studies in AD transgenic mice and patients found that this ligand has favorable imaging kinetics, high target cortical to cerebellum uptake ratios, and an accumulation pattern that followed the characteristic tau deposition pattern seen in AD.[19] Here we present two clinical cases in which the in vivo findings utilizing these new PET tracers for amyloid plaques and neurofibrillary tangles clarified the diagnoses.

## CASE REPORT

### Case 1

A 71-year-old retired professional football player who had sustained multiple concussions during a decade-long NFL career ending approximately 40 years ago presented with a history of progressive CI. During his professional career, he reported experiencing multiple concussions but was unable to estimate their number. He did not recall any episodes of loss of consciousness, but did remember being dazed and confused for up to a full day following some of these injuries; having difficulty finding his way home after a game or, upon awakening on the day after some games, being unable to recall the identity of the team against whom he had played the previous day. After retiring from the sport, he had a successful business career (outside of sports) for approximately 20 years. After retiring from business, he coached high school football. Over the past several years, however, he and his wife noticed impaired memory and thinking, notably short-term memory, and more so in the past year. Agitation emerged after his memory decline, and increased in the year before evaluation. There were no other reported behavioral disturbances; mood was normal. He was evaluated for progressive neurodegeneration by the NFL Neurological Care Program team at Mount Sinai Hospital, a multidisciplinary team consisting of a neurologist, a dual-board-certified neurologist-psychiatrist, a neuropsychologist and two neuroradiologists. All evaluators were TBI and AD experts. At the time of the evaluation, the patient was taking both donepezil and memantine, neither of which had any benefit that was obvious to the patient's wife.

The evaluation included comprehensive neurologic and neuropsychological assessment and, given the potential differential diagnosis, a clinical [18F]-Florbetapir PET scan to determine the presence or absence of amyloid. A research [18F]-T807 PET scan was performed to determine the possible presence of tauopathy. Magnetic resonance imaging (MRI) of the brain was conducted 3 months before PET imaging. The MRI revealed global volume loss, especially in the hippocampus. Arachnoid cysts were present in the middle fossa bilaterally. The mammillary bodies were poorly visualized and therefore suspected to be atrophic. The hypothalamic/infundibular/pituitary system appeared preserved structurally. Neurologic exam was grossly normal. Eye movements were normal in all directions. Muscle tone and strength were intact, reflexes were brisk and symmetrical, and no movement disorder was detected upon initial exam. Retrospectively, mild hypomimia was noted.

### Case 2

Case 2 was a 59-year-old male physician who had spent nearly 30 years as a member of a group medical practice. He had suffered a head injury while skiing (wearing a helmet) approximately 10 months before the evaluation. Specifically, he fell off a ski lift with head impact on concrete. He later had a fall on the slopes. He denied loss of consciousness (his family noted transient loss of awareness), but reported persistent headache for a few weeks following the head injury. He then began to experience intermittent numbness of his right ear and numbness and weakness in his right hand, for which he sought neurological evaluation approximately 3 months post injury near his residence in another part of the country. MRI revealed recent and chronic bleeding over the left hemispheric convexity, and he underwent a craniotomy to evacuate a left frontal subdural hematoma. The site of the injury was right occipital, thus the subdural hematoma appeared to be a result of a contrecoup injury. Following craniotomy, his headaches persisted as did the intermittent numbness and weakness in his right hand, for which he was begun on levetiracetam.

Detailed history revealed that for many months before the accident his family had noted a change in his personality, episodic increased agitation and altered cognition (word retrieval, short-term memory). They reported that the patient had difficulty recalling recent events but that recall of childhood information remained generally intact. He forgot recent conversations and began having difficulty recognizing the faces of acquaintances,

© 2014 Macmillan Publishers Limited

patients and old friends, as well as pictures of famous people. He struggled with abstract reasoning (for example, how people and things related to one another) and had trouble following directions. He would ask the same questions repeatedly and told the same stories multiple times without recalling he had done so. He was unable to maintain attention and concentration when a story became increasingly complicated, and would become agitated and irritable as a result of not being able to follow the story line. When confronted about his cognitive difficulties he would become angry and agitated, and would 'act out' in the presence of his family. According to the family, the patient would experience 'manic highs and depressed lows'. When in a good mood, he enjoyed being with others and was largely socially appropriate. His mood could change rapidly, and he would become withdrawn or belligerent. When in a depressed state he expressed suicidal ideation. According to the family, the patient was less emotionally available for things that had been important to him (for example, family relationships). For months before his fall, he had become apathetic and lost interest in hobbies that he previously enjoyed. Approximately 4 years ago (3 years before the fall), the patient had experienced a depressive episode. He had attributed his depression to work-related stress and was treated with sertraline. He had no history of psychiatric hospitalization or psychotherapy. At the time of his evaluation at Mount Sinai Medical Center he was not taking antidepressants.

The patient was referred for a comprehensive neuropsychological assessment (JM) and neurological evaluation (SG, AA) at the Mount Sinai Alzheimer's Disease Research Center, as well as appropriate laboratory studies. CT and MRI revealed atrophy of the anterior poles of both temporal and frontal lobes (Figure 1). Molecular imaging included both [18F]-fluorodeoxyglucose (FDG) PET and [18F]-Florbetapir scans. At the time of the evaluation, his medications were atorvastatin 20 mg daily and acetaminophen PRN. He had had a previous neuropsychological evaluation at another facility, 3 months before our assessment. The findings on the prior examination were consistent with the current evaluation.

## RESULTS

### Case 1

*Neuropsychological function.* The patient had 16 years of education and premorbid intellectual function was estimated to be in the average range. Neuropsychological tests revealed impaired information processing speed, fine motor function, verbal comprehension and fluency, confrontational naming, and

immediate and delayed verbal recall. Intellectual function was preserved. On self-report, he acknowledged minimal depression and mild anxiety (Table 1). Norms were corrected for age and years of education.

Following this comprehensive evaluation, the experts disagreed as to whether AD was present, in addition to likely posttraumatic encephalopathy. Two independent neuropsychologists from the Mount Sinai Alzheimer's Disease Research Center (ADRC) reviewed the neuropsychological test results and supported the inclusion of possible AD on the basis of the neuropsychological phenotype, although the primary examining team (with the exception of one of the neurologists) opposed the inclusion of possible AD as a diagnosis. Thus the patient was referred for [18F]-Florbetapir PET imaging for diagnostic clarification.

*Molecular imaging.* [18F]-Florbetapir imaging was conducted with a GE Discovery STE 16-slice PET/CT camera. The patient was injected with 370 MBq (10 mCi) of [18F]-Florbetapir. Image acquisition began approximately 60 min post injection, for 10 min. Images were acquired in three dimensions, using a one-frame and one-bed position. Reconstruction was performed with a 120 × 120 matrix utilizing iterative reconstruction, with 35 subsets and two iterations. The z axis filter was standard, and a 2.57-mm full width/half maximum filter was used. The field of view was 30 cm in diameter, with 47 total slices.

The clinical [18F]-Florbetapir scan results were rated by nuclear medicine physicians (JM or LK) trained to interpret [18F]-Florbetapir scan results using a binary (positive or negative) visual approach.[20] Transaxial, coronal and sagittal images were examined. The scan results were considered positive if uptake in the cerebral gray matter equaled or exceeded the uptake in the white matter in at least two major areas of the brain. A positive [18F]-Florbetapir scan indicates moderate-to-frequent fibrillar amyloid plaques; a negative [18F]-Florbetapir scan indicates sparse-to-no fibrillar amyloid plaques, which is inconsistent with a diagnosis of AD. A negative scan thus implied that the cognitive decline was not due to AD. In the retired NFL player under consideration here [18F]-Florbetapir PET scanning was negative for cerebral amyloidosis (Figure 2), thereby excluding AD. This case illustrates the potential for brain amyloid imaging to clarify diagnosis and to prevent inappropriate treatment. Ironically, this patient had sought out this evaluation to assess his eligibility for a clinical trial for AD. The [18F]-Florbetapir results ruled out his inclusion in trials of Aβ-reducing agents.



**Figure 1.** Imaging from a 59-year-old, physician with a sports-related injury (case 2). Magnetic resonance imaging showing atrophy of the frontal poles of the frontal and temporal lobes bilaterally. (**a**) and (**b**) Arrows indicate a subdural hematoma (SDH).

© 2014 Macmillan Publishers Limited

Role of tauopathy in the diagnosis of CTE
EM Mitsis et al

4

| Table 1. Neuropsychological scores and percentiles for case 1 (multiple concussions) | | |
|---|---|---|
| *Case 1—age 71 years* | | |
| | Score | Percentile |
| **WAIS-IV indices** | | |
| Full scale | 103 | 58 |
| Verbal comprehension | 83 | 13 |
| Perceptual reasoning | 105 | 63 |
| Working memory | 128 | 97 |
| Processing speed | 102 | 55 |
| General ability | 94 | 34 |
| **WMIS-IV indices** | | |
| Auditory memory | 69 | 2 |
| Visual memory | 58 | < 1 |
| Visual working memory | 85 | 16 |
| Immediate memory | 69 | 2 |
| Delayed memory | 58 | < 1 |
| **Other neuropsychological tests[a]** | | |
| Memory | | |
| CVLT-LDFR | 0 | < 1 |
| Rey-O delay | | < 1 |
| Language | | |
| FAS | | 19 |
| Animals | | 6 |
| BNT | | < 1 |
| Motor function | | |
| Perdue dom/non-dom | | 3rd/8th |
| General dom/non-dom | | 21st/2nd |
| Visual perception | | |
| REY-O copy | | WNL |
| Attention | | |
| CPT | | WNL |
| Executive function | | |
| SCT | | 96 |
| DK-FST | | 91 |
| Tower task | | 63 |
| Trails B | | 70 |

Abbreviations: BNT, Boston Naming Test; CPT, Connors' Continuous Performance Test II; CVLT-LDFR, California Verbal Learning Test long delay free recall; DK-FST, Delis Kaplan Fort Sort Test (norms corrected for age and years of education); FAS, Controlled Oral Word Association Test; GPB, grooved pegboard; SCT, Short Category Test; WAIS-IV, Wechsler Adult Intelligence Scale, 4th edn; WNL, within normal limits. [a]Scores under other neuropsychological tests reported only as percentiles. Raw scores were not available.



**Figure 2.** Imaging from a 71-year-old retired NFL player (case 1). Left panel is CT image and right panel is [18F]-Florbetapir PET imaging, which was negative for amyloid accumulation. CT, computed tomography; NFL, National Football League; PET, positron emission tomography.

[18F]-T807 imaging was acquired with a Siemens ECAT EXACT HR+ PET Camera. The patient was injected with 370 MBq (10 mCi) of [18F]-T807. Image acquisition began ~110 min post injection, for 20 min. Images were acquired in three dimensions, using one-frame and one-bed position. Reconstruction was performed with a 128 × 128 matrix utilizing iterative reconstruction, with 16 subsets and 4 iterations. A three-dimensional *post hoc* Gaussian filter (5 mm) was applied to the image volume. A total of 63 axial slices of 2.42 mm thickness were displayed for visual interrogation by a nuclear medicine physician expert in brain imaging (JS). In addition, quantification of the scan was performed by spatially normalizing the PET image to a T807 template image and applying a modified Hammers volume of interest template[21] for extraction on regional standard uptake values (SUV). Brain SUV were divided by the cerebellar cortex SUV to calculate SUV ratios in multiple cortical and subcortical regions.

Visually, the [18F]-T807 PET scan revealed [18F] signal in some temporal areas. However, the preponderance of the signal arose bilaterally from the regions of the globus pallidus and the

substantia nigra (Figure 3). Consistent with this visual assessment, the region with highest SUV ratios were globus pallidus (1.85), putamen (1.57) and hippocampus (1.45), while the substantia nigra SUV ratio was 1.40.

## Case 2

*Neuropsychological function.* His premorbid intellectual function was estimated to be in the high average range. He manifested significant deficits in memory, language (verbal fluency and confrontation naming), and executive functioning; performance on most cognitive measures was far below levels expected for his age, education and estimated premorbid abilities; they ranged from significantly impaired to high average (Table 2). Results were consistent with previous testing, which was suggestive of FTD. On self-report, he endorsed minimal depression that fell within the

© 2014 Macmillan Publishers Limited



**Figure 3.** Imaging from a 71-year-old retired NFL player (case 1). [$^{18}$F]-T807 signals (arrows) originate from the globus pallidus (GP), substantia nigra (SN) and hippocampus. Images depict axial (**a**) sagittal (**b**) and coronal (**c** and **d**) orientation of the brain. A, anterior; H, head; L, left; NFL, National Football League; P, posterior; R, right.

normal range (Table 2). Norms were corrected for age and years of education.

*Molecular imaging*
[$^{18}$F]-FDG PET imaging:  [$^{18}$F]-FDG PET and [$^{18}$F]-Florbetapir PET imaging were performed on consecutive days. All imaging procedure details were identical to those described for case 1. The patient was injected with 440.3 MBq (11.9 mCi) of [$^{18}$F]-FDG. Forty minutes later, PET images of the brain were obtained.

FDG PET showed decreased uptake in the medial portions of both frontal lobes, mildly on the right, moderately on the left (left > right), decreased uptake in the posterior portion of the left temporal lobe and mildly decreased activity in the right anterior temporal lobe. Otherwise, the distribution of radiotracer was normal in cortical and subcortical structures (Figure 4). The impression was of abnormal FDG PET scan that demonstrated decreased metabolism in the medial portions of the frontal lobes, more pronounced in the left side than the right, and the posterior portion of the left temporal lobe. The patchy nature of hypometabolic regions raised the possibility of a vascular etiology.

| Table 2. Neuropsychological scores and percentiles for case 2 (single TBI) | | |
|---|---|---|
| **Case 2—age 59 years** | | |
| | *Score* | *Percentile* |
| *WAIS-IV indices* | | |
| Full scale | NC | NC |
| Verbal comprehension | 63 | 1 |
| Perceptual reasoning | 105 | 63 |
| Processing speed | 92 | 30 |
| *Estimated premorbid IQ and orientation* | | |
| AMNART estimated premorbid IQ | 107 | 68 |
| MMSE | 23/30 | 0/3 recall |
| *WMIS-IV subsets* | *Scaled score* | |
| Logical memory I | 6 | 9 |
| Logical memory II | 6 | 9 |
| Recognition | | 51–75 |
| *Other neuropsychological tests*[a] | *Z-score/T-score* | |
| Memory | | |
| CVLT-II trial 1–5 | T = 34 | 5 |
| CVLT short delay free recall | − 2 | 2 |
| CVLT long delay free recall | − 1.5 | 6 |
| Language | *Raw score* | |
| FAS | 31 | 11 |
| Animals | 10 | < 2 |
| BNT | 3 out of 60 | < 1 |
| Rey-O delay | 9 | 3 |
| Visual perception | | |
| REY-O copy | 34 | WNL |
| WAIS-IV block design | 33 | 37 |
| Attention | | |
| WAIS-IV digit span | 28 | 63 |
| WAIS-IV arithmetic | 9 | 9 |
| CVLT-proactive interference | − 25 | 50 |
| CVLT-retroactive interference | −71.4 | 30 |
| Executive function | | |
| WCST | | |
| Trails B | 74′ | 56 |
| Mood | | |
| BDI-II | 3 | WNL |

Abbreviations: AMNART, American National Adult Reading Test; BDI-II, Beck Depression Inventory (norms corrected for age and years of education); BNT, Boston Naming Test; CVLT, California Verbal Learning Test; FAS, Controlled Oral Word Association Test (letters FAS); MMSE, Mini Mental Status Examination; TBI, traumatic brain injury; WAIS-IV, Wechsler Adult Intelligence Scale, 4th edn; WCST, Wisconsin Sorting Test; WMS-IV, Wechsler Memory Scale, 4th edn; WNL, within normal limits. [a]Full scale IQ NC is not calculated due to a 42-point discrepancy between verbal and nonverbal abilities; nonverbal abilities stronger.

[$^{18}$F]-Florbetapir PET imaging:  The patient received 403.3 MBq (10.9 mCi) of [$^{18}$F]-Florbetapir through intravenous injection. Sixty minutes later, PET images of the brain were obtained. The [$^{18}$F]-Florbetapir PET images showed normal distribution of radiotracer uptake throughout the cortical and subcortical structures, except for a small area of increased cortical uptake in the right occipital region. The scan was read as negative for significant amyloid

© 2014 Macmillan Publishers Limited

Role of tauopathy in the diagnosis of CTE
EM Mitsis et al

6

**Figure 4.** Imaging from a 59-year-old, physician with a sports-related injury (case 2). [18F]-Florbetapir PET imaging findings were negative for amyloid accumulation except for focal [18F]-Florbetapir retention at the site of impact in the occipital region (arrows). (**a**) CT (left panel) [18F]-Florbetapir PET (middle panel) and FDG PET (right panel) at various depths of the brain. (**b**) [18F]-Florbetapir PET indicating amyloid accumulation. CT, computed tomography; FDG, [18F]-fluorodeoxyglucose; PET, positron emission tomography.

© 2014 Macmillan Publishers Limited


deposition, thus the diagnosis of AD was not supported. However, there was amyloid accumulation focally and specifically in the region of the patient's TBI (right occipital) but also on the left side as well (Figure 4). The final diagnosis was frontotemporal lobar degeneration. What appeared to be a rapidly progressive dementing process looking like AD after a head injury (before [18F]-Florbetapir PET imaging) was ultimately diagnosed as frontotemporal lobar degeneration, albeit with focal posttraumatic amyloidosis. Although focal amyloidosis is the most parsimonious interpretation, we cannot exclude the possibility that the [18F]-Florbetapir is binding instead to chronic astrocytosis or hemosiderin in the resolving contusion in that region.

## DISCUSSION

We present two cases in which amyloid imaging clarified uncertain diagnoses. Case 1 may be the first assessment demonstrating, during life, lack of AD pathology in an NFL player with a remote history of multiple concussions and current cognitive decline that had many of the features of AD. A panel of expert clinicians were unable to reach unanimity on the inclusion of possible AD as a diagnosis. The patient's clinical presentation with memory loss was suggestive of AD. The absence of amyloid as revealed by [18F]-Florbetapir PET imaging excluded AD pathology and thereby prevented his inappropriate inclusion in an amyloid-lowering medication clinical trial.

Omalu et al.[1] revived the term CTE (originated by Critchley in 1949, in a book chapter entitled, 'Punch-drunk syndrome: The chronic traumatic encephalopathy of boxers') in their report of the case of a retired NFL player with progressive neurological dysfunction. Thereafter, evidence of CTE in American football players became increasingly evident.[1,2,4,22,23] Currently, the challenge is no longer the acceptance of CTE as a diagnostic entity associated with repetitive head trauma, but rather a much needed accounting of the actual numbers of affected persons as well as the numbers of those who remain unaffected despite exposure to identical repetitive head traumas.[24]

With regard to the short-term memory problems in case 1, Guskiewicz et al.[25] reported a strong relationship between TBI history and memory complaints in former NFL players. In that study, individuals with a history of at least three concussions were three times more likely to report significant memory problems and five times more likely than those with no history of concussions to have been diagnosed with mild CI.[25] In their review of 48 cases of neuropathologically confirmed CTE, McKee et al.[9] found that memory loss was reported in over half of the individuals. As in AD, loss of insight often precluded patients from recognizing their deficits; this valuable information was derived from friends or family, and the patients frequently demonstrated anosognosia during the course of the evaluation.

Impairment in executive function was common in cases of neuropathologically confirmed CTE.[8] Executive functions are a collective set of higher-order abilities (judgment, self-inhibitory behaviors, decision-making, planning and organization) considered to be dependent primarily upon adequate functioning of frontal lobe networks. Damage to various regions of the frontal cortex can disrupt these higher-order abilities, leading to poor impulse control, and socially inappropriate, avolitional and/or apathetic behaviors. For example, damage to the orbitofrontal regions can result in significant changes in personality. Thus, changes in personality, apathy, impulsivity, aggression and 'short fuse' behaviors typical of CTE[14] are consistent with the atrophy, structural damage and other neuropathological changes of the frontal lobes that have been described in nearly all reported cases of CTE.[8,9,14] Given these findings, the overlap in neurocognitive and behavioral symptoms may make the distinction among AD, CTE and FTD difficult, in the absence of molecular evidence of disease-specific proteins. In the cases reported here Florbetapir

imaging served as an in vivo method of discrimination that resulted in diagnostic clarification that would ultimately guide treatment planning and intervention.

The [18F]-T807 imaging in case 1 yielded somewhat unexpected results. The preponderance of the ligand retention was subcortical and localized to the basal ganglia and substantia nigra. This distribution is not typical for CTE and is more similar to that of progressive supranuclear palsy, although our case did not manifest the typical clinical symptoms of progressive supranuclear palsy. Ling et al.[26] recently reported a patient with concurrent CTE and progressive supranuclear palsy, in whom they proposed that this atypical phenotype arose because of the superimposition of the brain trauma and CTE on a genetic background already predisposed toward progressive supranuclear palsy. The prominent amnesia, the absence of a movement disorder and the involvement of the hippocampi in the [18F]-T807 retention all support the formulation of the diagnosis of CTE. Such a coincidence has also been proposed for the handful of concurrent cases of CTE and amyotrophic lateral sclerosis.[11] This result emphasizes the need for novel ligands such as [18F]-T807 and for heightened suspicion for atypical phenotypes in the clinical setting of TBI. Other ligands that recognize microglia or TDP43 (ref. 11) might also be useful in providing a fuller appreciation of the spectrum of CTE. Indeed, the neuroimaging of CTE may lead to expansion and/or revision of the definition and staging[10] of CTE beyond the current pathology-based system.

In case 2, the patient had a history of personality change and a fall from a ski lift with head impact on concrete and some alteration in level of consciousness. When referred, the tentative diagnosis was AD. This initial formulation was ultimately rejected once it was clarified that the personality change preceded the TBI and the patient was given a diagnosis of FTD. The Florbetapir scan revealed only a small focal occipital retention of ligand at the site of impact. There was no amyloidosis elsewhere in the brain, and the MRI and FDG PET showed atrophy and hypometabolism in the frontal and temporal poles, consistent with a frontotemporal lobar degeneration etiology for his clinical FTD syndrome. The best explanation was that this patient had FTD due to frontotemporal lobar degeneration compounded by the diffuse and focal injuries induced and perhaps accelerated by the TBI; the focal occipital cortical amyloidosis itself had an uncertain contribution to his clinical symptoms.

Our findings in case 2 are somewhat consistent with those of Hong et al.[27] who performed PET imaging in patients who had sustained moderate-to-severe TBI within 1 year of injury; they utilized [11C] Pittsburgh compound B (abbreviated PiB; the [18F] version of this amyloid labeling ligand is known as Flutemetamol or Vizamyl) PET imaging, the first amyloid labeling ligand to be developed. They found increased distribution of [11C]-PiB following TBI, the specificity of which was validated by neocortical binding of tritium-labeled PiB in regions of amyloid deposition in the postmortem tissue of another cohort of patients who had sustained a TBI and died at intervals of 3 h to 56 days after injury.[28] Our patient had sustained TBI within 1 year of our evaluation and [18F]-Florbetapir PET imaging.

Our CTE/molecular imaging experience has included [18F]-Florbetapir PET imaging of young, active boxers post knockout (n = 3, ages 35, 36 and 42 years), but these studies have been unrevealing (Jordan and Gandy, unpublished observations). A number of uncontrolled variables, including levels of amyloid upregulation insufficient to aggregate into diffuse plaque, rapid clearance of any aggregated amyloid post TBI, or insufficient sensitivity of florbetapir to detect low levels of diffuse amyloid could explain this.

In conclusion, amyloid imaging offers in vivo affirmative confirmation of the presence or absence of amyloid deposition and may increase the accuracy of the likely cause of CI or dementia in patients with a history of TBI. Future evaluation in

© 2014 Macmillan Publishers Limited

repetitive head trauma where CTE is suspected may be best served by tau imaging because beta-amyloid is usually relatively sparse or absent in CTE brains.[9] Therefore, selective tau binding ligands may be more useful for diagnosis or ruling out CTE. We are now testing this hypothesis in a new cohort of patients and research subjects.

## CONFLICT OF INTEREST

The authors declare no conflict of interest.

## ACKNOWLEDGMENTS

We gratefully acknowledge Ash Rafique for technical support. EMM received grants from the Veterans Affairs Administration and the Icahn School of Medicine Clinical Research Center. SG thanks the Cure Alzheimer's Fund, the Department of Veteran Affairs, the Gideon and Sarah Gartner Foundation and the Louis B. Mayer Foundation. SG has received grants from NIA, NINDS, Baxter Pharmaceuticals, Polyphenolics and Amicus Pharmaceuticals. He has served as a member of the Data and Safety Monitoring Board for the Pfizer-Janssen Alzheimer's Immunotherapy Alliance, as a member of the Scientific Advisory Board of DiaGenic and as a consultant to Amicus Pharmaceuticals and to Cerora. This research was supported in part by the Icahn School of Medicine Alzheimer's Disease Research Center grant P50 AG005138.

## REFERENCES

1 Omalu BI, DeKosky ST, Minster RL, Kamboh MI, Hamilton RL, Wecht CH et al. Chronic traumatic encephalopathy in a National Football League player. Neurosurgery 2005; 57: 128–134, discussion 134.

2 Omalu BI, DeKosky ST, Hamilton RL, Minster RL, Kamboh MI, Shakir AM et al. Chronic traumatic encephalopathy in a National Football League player: part II. Neurosurgery 2006; 59: 1086–1092, discussion 1092–1083.

3 Shahim P, Tegner Y, Wilson DH, Randall J, Skillback T, Pazooki D et al. Blood biomarkers for brain injury in concussed professional ice hockey players. JAMA Neurol 2014; 71: 684–692.

4 Omalu BI, Fitzsimmons RP, Hammers J, Bailes J. Chronic traumatic encephalopathy in a professional American wrestler. J Forensic Nurs 2010; 6: 130–136.

5 Sivanandam TM, Thakur MK. Traumatic brain injury: a risk factor for Alzheimer's disease. Neurosci Biobehav Rev 2012; 36: 1376–1381.

6 Smith DH, Johnson VE, Stewart W. Chronic neuropathologies of single and repetitive TBI: substrates of dementia? Nat Rev Neurol 2013; 9: 211–221.

7 Goodwin L. Dementia pugilistica. J Insur Med 2006; 38: 300–302.

8 Omalu B, Bailes J, Hamilton RL, Kamboh MI, Hammers J, Case M et al. Emerging histomorphologic phenotypes of chronic traumatic encephalopathy in American athletes. Neurosurgery 2011; 69: 173–183.

9 McKee AC, Cantu RC, Nowinski CJ, Hedley-Whyte ET, Gavett BE, Budson AE et al. Chronic traumatic encephalopathy in athletes: progressive tauopathy after repetitive head injury. J Neuropathol Exp Neurol 2009; 68: 709–735.

10 McKee AC, Stern RA, Nowinski CJ, Stein TD, Alvarez VE, Daneshvar DH et al. The spectrum of disease in chronic traumatic encephalopathy. Brain 2013; 136: 43–64.

11 Costanza A, Weber K, Gandy S, Bouras C, Hof PR, Giannakopoulos P et al. Contact sport-related chronic traumatic encephalopathy in the elderly: clinical expression and structural substrates. Neuropathol Appl Neurobiol 2011; 37: 570–584.

12 Hof PR, Bouras C, Buée L, Delacourte A, Perl DP, Morrison JH et al. Differential distribution of neurofibrillary tangles in the cerebral cortex of dementia pugilistica and Alzheimer's disease cases. Acta Neuropathol 1992; 85: 23–30.

13 DeKosky ST, Blennow K, Ikonomovic MD, Gandy S. Acute and chronic traumatic encephalopathies: pathogenesis and biomarkers. Nat Rev Neurol 2013; 9: 192–200.

14 Stern RA, Riley DO, Daneshvar DH, Nowinski CJ, Cantu RC, McKee AC et al. Long-term consequences of repetitive brain trauma: chronic traumatic encephalopathy. PM R 2011; 3: S460–S467.

15 Stern RA, Daneshvar DH, Baugh CM, Seichepine DR, Montenigro PH, Riley DO et al. Clinical presentation of chronic traumatic encephalopathy. Neurology 2013; 81: 1122–1129.

16 Mitsis EM, Bender HA, Kostakoglu L, Machac J, Martin J, Woehr JL et al. A consecutive case series experience with [18 F] florbetapir PET imaging in an urban dementia center: impact on quality of life, decision making, and disposition. Mol Neurodegen 2014; 9: 10.

17 Landau SM, Mintun MA, Joshi AD, Koeppe RA, Petersen RC, Aisen PS et al. Amyloid deposition, hypometabolism, and longitudinal cognitive decline. Ann Neurol 2012; 72: 578–586.

18 Lye TC, Shores EA. Traumatic brain injury as a risk factor for Alzheimer's disease: a review. Neuropsychol Rev 2000; 10: 115–129.

19 Xia CF, Arteaga J, Chen G, Gangadharmath U, Gomez LF, Kasi D et al. [18F]T807, a novel tau positron emission tomography imaging agent for Alzheimer's disease. Alzheimers Dement 2013; 9: 666–676.

20 Nordberg A, Carter SF, Rinne J, Drzezga A, Brooks DJ, Vandenberghe R et al. A European multicentre PET study of fibrillar amyloid in Alzheimer's disease. Eur J Nucl Med Mol Imaging 2013; 40: 104–114.

21 Hammers A, Allom R, Koepp MJ, Free SL, Myers R, Lemieux L et al. Three-dimensional maximum probability atlas of the human brain, with particular reference to the temporal lobe. Hum Brain Mapp 2003; 19: 224–247.

22 Omalu BI, Hamilton RL, Kamboh MI, DeKosky ST, Bailes J. Chronic traumatic encephalopathy (CTE) in a National Football League Player: case report and emerging medicolegal practice questions. J Forensic Nurs 2010; 6: 40–46.

23 Omalu BI, Bailes J, Hammers JL, Fitzsimmons RP. Chronic traumatic encephalopathy, suicides and parasuicides in professional American athletes: the role of the forensic pathologist. Am J Forensic Med Pathol 2010; 31: 130–132.

24 Gandy S. Chronic traumatic encephalopathy: clinical-biomarker correlations and current concepts in pathogenesis. Mol Neurodegen (Under Revision) 2014.

25 Guskiewicz KM, Marshall SW, Bailes J, McCrea M, Cantu RC, Randolph C et al. Association between recurrent concussion and late-life cognitive impairment in retired professional football players. Neurosurgery 2005; 57: 719–726.

26 Ling H, Kara E, Revesz T, Lees AJ, Plant GT, Martino D et al. Concomitant progressive supranuclear palsy and chronic traumatic encephalopathy in a boxer. Acta Neuropathol Commun 2014; 2: 24.

27 Hong YT, Veenith T, Dewar D, Outtrim JG, Mani V, Williams C et al. Amyloid imaging with carbon 11-labeled Pittsburgh compound B for traumatic brain injury. JAMA Neurol 2014; 71: 23–31.

28 DeKosky ST, Abrahamson EE, Ciallella JR, Paljug WR, Wisniewski SR, Clark RS et al. Association of increased cortical soluble abeta42 levels with diffuse plaques after severe brain injury in humans. Arch Neurol 2007; 64: 541–544.

 This work is licensed under a Creative Commons Attribution-NonCommercial-ShareAlike 3.0 Unported License. The images or other third party material in this article are included in the article's Creative Commons license, unless indicated otherwise in the credit line; if the material is not included under the Creative Commons license, users will need to obtain permission from the license holder to reproduce the material. To view a copy of this license, visit http://creativecommons.org/licenses/by-nc-sa/3.0/

# EXHIBIT 9

Curr Treat Options Neurol (2014) 16:306
DOI 10.1007/s11940-014-0306-5

Traumatic Brain Injury (JR Couch, Section Editor)

# Current Understanding of Chronic Traumatic Encephalopathy

*Christine M. Baugh, MPH[1,2]*
*Clifford A. Robbins, BA[1]*
*Robert A. Stern, PhD[1,2,3,4,]\**
*Ann C. McKee, MD[1,2,4,5,6]*

**Address**
*,1Boston University School of Medicine, CTE Center, Boston University School of Medicine, 72 E. Concord Street, Suite B7800, Boston, MA 02118, USA
Email: bobstern@bu.edu
[2]Department of Neurology, Boston University School of Medicine, Boston, MA, USA
[3]Department of Neurosurgery, Boston University School of Medicine, Boston, MA, USA
[4]Boston University Alzheimer's Disease Center, Boston, MA, USA
[5]Department of Pathology, Boston University School of Medicine, Boston, MA, USA
[6]VA Boston Healthcare System, Boston, MA, USA

© Springer Science+Business Media New York 2014

Robert A. Stern and Ann C. McKee contributed equally to the manuscript.
This article is part of the Topical Collection on *Traumatic Brain Injury*

**Keywords** Chronic traumatic encephalopathy (CTE) · Concussion · Brain trauma · Traumatic brain injury (TBI) · APOE · Biomarker · Tau · Football

## Opinion statement

Chronic traumatic encephalopathy (CTE) is a unique neurodegenerative disease found in individuals with a history of repetitive head impacts. The neuropathology of CTE is increasingly well defined. Prospective, longitudinal studies with post-mortem neuro-pathologic validation as well as in vivo diagnostic techniques are needed in order to advance the understanding of CTE clinically. Given the large number of individuals who incur concussions and other forms of brain trauma, this is an important area for scientific and public health inquiry.

## Introduction

Chronic traumatic encephalopathy (CTE) is a neuro-degenerative disease thought to be associated with a history of repetitive head impacts [1–8, 9••, 10, 11, 12•], such as those sustained through contact sports or military combat. CTE, a distinct neurodegeneration, was first introduced in the literature as "punch drunk" or dementia pugilistica in the early 1900s because of its association with boxing [13]. In fact, much of the

early literature about the disease focused on the boxing population [1, 13, 14]. However, the disease is found in a more diverse group of individuals with a history of repetitive head impacts including a variety of contact sport athletes, military veterans, domestic abuse victims, and individuals with self-inflicted head banging behavior [7]. Although significant media attention has been brought to this disease, there is relatively little known regarding the pathobiological mechanisms underlying CTE, and a large number of questions remain. The preponderance of the literature has consisted of postmortem neuropathologic assessments with retrospective clinical interviews. As such, the neuropathology of CTE is currently better understood than the clinical presentation or course, and there is a need for prospective longitudinal clinical studies with in vivo diagnostic techniques or neuropathologic validation. This article reviews the current state of our knowledge concerning CTE, including neuropathologic characteristics, clinical features, proposed clinical and pathologic diagnostic criteria, possible risk factors, and future research needs.

## Neuropathologic characteristics

Much of the scientific literature on CTE, to-date, is derived from clincopathologic case series of the disease [1–4, 6–8, 9••, 15]. The neuropathology of CTE is increasingly well defined. In 2013, McKee and colleagues published the largest case report to date of individuals with neuropathologically confirmed CTE, presenting proposed criteria for four stages of CTE pathology based on the severity of the findings [9••]. Formal validation of the reliability of these criteria and the staging system are currently being performed by a team of nine neuropathologists, funded by a National Institutes of Health (NIH) U01 grant (1U01NS086659-01, National Institute of Neurological Disorders and Stroke (NINDS), National Institute of Biomedical Imaging and Bioengineering (NIBIB); PI, Ann McKee). Detailed criteria of McKee et al.'s pathologic staging criteria can be found in Table 1.

CTE is characterized by the deposition of hyperphosphorylated tau (p-tau) protein as neurofibrillary tangles (NFT) beginning perivascularly and at the depths of the cortical sulci. Later stage p-tau pathology becomes more widespread, particularly dense in the medial temporal lobes, also present in the white matter, and leads to prominent neuronal loss and gliosis. The irregular and perivascular nature of the p-tau neurofibrillary tangles, the proclivity for the sulcal depths, and the marked subpial and periventricular involvement are unique features of the disease that distinguish it from other tauopathies. TAR DNA-binding protein 43 (TDP-43) is present in about 80 % of cases. Early stages show sparse TDP-43 positive neurites in cortex, medial temporal lobe, and brainstem. Late-stage pathology presents with TDP-43 intraneuronal and intraglial inclusions in the frontal subcortical white matter and fornix, brainstem, and medial temporal lobe. In most cases of CTE, there are no beta amyloid 1–42 ($A\beta_{1-42}$) positive neuritic plaques. Evidence of axonal injury is common and ranges from multifocal axonal varicosities in earlier stage pathology to severe axonal loss in later stage pathology. Stage I and II CTE can present macroscopically with mild enlargement of the lateral ventricles or third ventricle and/or mild septal abnormalities. Grossly, advanced CTE is characterized by enlargement of the lateral and third ventricles, cavum septum pellucidum, septal perforations, and pallor of the substantia nigra and locus coeruleus. In addition, severe

Case: 25-2271 Document: 20 Page: 471 Date Filed: 10/08/2025

**Table 1. Description of McKee et al.'s (2013) proposed neuropathologic staging of CTE**

| | Stage I | Stage II | Stage III | Stage IV |
|---|---|---|---|---|
| P-Tau | Focal perivascular NFTs at depths of cortical sulci | NFTs adjacent to focal epicenters and in nucleus basalis of Meynert and locus coeruleus | Dense in medial temporal lobes and widespread in cortex, diencephalon, brainstem, and spinal cord | P-Tau pathology widespread including in white matter; prominent neuronal loss and gliosis of cortex; hippocampal sclerosis |
| Macroscopic | Mild lateral ventricle enlargement in some cases | Mild enlargement of the frontal horn of the lateral ventricles or third ventricle in a majority of cases; small cavum septum pellucidum in some cases | Mild cerebral atrophy; enlarged ventricles; depigmentation of locus coeruleus and substantia nigra; septal abnormalities in some cases | Increased cerebral, medial temporal lobe, hypothalamus, thalamus, and mammillary body atrophy; septal abnormalities; enlarged ventricles; pallor of locus coeruleus and substantia nigra |
| TDP-43 | Sparse TDP-43 neurites in cortex, medial temporal lobe, brainstem | Sparse TDP-43 neurites in cortex, medial temporal lobe, brainstem | Sparse TDP-43 neurites in cortex, medial temporal lobe, brainstem | Severe intraneuronal and intraglial inclusions in cortex, white matter, diencephalon, basal ganglia, brainstem |
| Axonal Injury | Multifocal axonal varicosities in cortex and subcortical white matter | Multifocal axonal varicosities in cortex and subcortical white matter | Severe axonal loss in cortex and white matter | Severe axonal loss in cortex and white matter |
| $A\beta_{1-42}$ | Present in less than half of subjects with CTE and less than one-third of pure CTE cases. Those with $A\beta_{1-42}$ deposits were significantly older than those without. | | | |

cases may also show profound atrophy of the medial temporal lobes or profound global atrophy. In reports examining former football players [9••] and former boxers [1], the severity of pathology appears to correlate with duration of athletic career. McKee et al. also found an association between severity of pathology to years since retirement from athletics and age at death [9••].

## Clinical presentation

Clinical symptoms of CTE generally present years or decades after exposure to trauma [1, 9••, 16••]. Although there are some symptom overlaps between the acute concussive injury and the later-life neurodegenerative process of CTE (eg, attention and concentration loss, headache), it is thought that CTE is distinct from the acute concussion or postconcussion sequelae [17]. That is,

although a history of repetitive brain trauma is thought to be necessary to cause CTE (ie, all neuropathologically confirmed cases of CTE to date have had a history of repetitive brain trauma), CTE symptoms are not just the cumulative effects of this process. Furthermore, there is no clear relationship between prolonged acute concussion symptoms (eg, postconcussion syndrome) and the pathology of CTE.

Evidence to-date suggests that CTE presents clinically with symptoms in one or more of four possible domains: mood, behavior, cognition, and motor [9••, 16••]. Commonly noted mood features include depression, irritability, and hopelessness. Behavioral features may include impulsivity, explosivity, and aggression. Cognitive features can include memory impairment, executive dysfunction, and in severe cases dementia. Motor features, including parkinsonism, ataxia, and dysarthria, appear in a subset of cases, predominantly boxers. In addition, chronic headache is also experienced in some cases [7, 9••, 15, 18, 16••, 19, 20•, 21•]. Two distinct clinical presentations of CTE have been described in a recent study by Stern et al., substantiating evidence from earlier literature regarding this possibility [1, 16••, 22–24] According to Stern and colleagues, the first type of clinical presentation initially presents with mood and behavioral symptoms earlier in life (mean age approximately 35) and progresses to include cognitive symptoms later in the disease course. The second clinical presentation begins with cognitive impairment later in life (mean age approximately 60), which may progress to include mood and behavioral symptoms [16••].

Earlier cases of CTE tended to report a higher prevalence of motor features than more recent reports. Differences in symptom profile have led some researchers to differentiate "classic" and "modern" CTE clinically [25•]. It is worth noting that "classic" cases were predominantly boxers, whereas more recent descriptions have been dominated by football players. Differences in the nature of exposure could account for differences in presentation— biomechanical comparisons of head impact dynamics in boxing and football have shown that boxers experience proportionally more rotational acceleration than in football [26, 27]. Further, computational modeling of boxing impacts suggests that stress in boxing impacts is greatest on midbrain structures, and midbrain damage may account for the parkinsonian features found in CTE [27, 28]. Supporting this theory, in the case series of neuropathologically confirmed CTE by McKee and colleagues [9••], professional boxers and professional football players with neuropathologically confirmed CTE, professional boxers exhibited significantly more motor symptoms (eg, ataxia dysarthria) relative to football players. This clinical difference between boxers and football players was mirrored in the pathology: boxers displayed more cerebellar scarring than football players. Thus, although there is a notable difference in the presence of motor symptoms between the earlier and more recent CTE literature, this may be attributable, at least in part, to the variance in head impact exposure types experienced by boxers and football players.

The question of suicide in CTE remains contentious [29•]. Several CTE case series have included victims of suicide.[6, 7, 9••, 16••] However, our lack of understanding of the population incidence of CTE limits our ability to attribute a complex and multifactorial behavior such as suicide to underlying CTE proteinopathy. The issue is further complicated considering that well

Curr Treat Options Neurol (2014) 16:306

established risk factors for suicide and suicidal ideation such as substance use and depression [30, 31] are often comorbid in cases of CTE [9••, 16••]. The current literature does not provide means to separate the contribution (or lack thereof) of these different potential factors to the act of completing suicide. Further, premature association between repetitive brain trauma and suicidality could result in a 'self-fulfilling prophecy' prompting wider suicides in exposed individuals irrespective of contribution (or noncontribution) from CTE symptoms. Available scientific evidence cannot wholly support the notion that CTE *causes* suicidal thoughts or behaviors, and such assumptions or assertions should be avoided without further evidence.

All efforts to define the clinical presentation of CTE are also limited due to the lack of in vivo diagnosis and use of retrospective reviews of case reports[15, 20•, 21•] or family interviews [9••, 16••]. This information is valuable to determine initial correlations between presence of neuropathology and clinical manifestation; however, because of their retrospective third-party nature, there are significant limitations to these data. Although some of the earlier literature includes clinical evaluations [13, 32], the findings and their generalizability is limited by the technology of the era [25•]. Increased prospective and longitudinal clinical research in this area is critically needed.

# Clinical diagnosis and in vivo biomarkers

Several important studies are underway to develop reliable biomarkers for CTE during life, although like most neurodegenerative diseases, the definitive diagnosis of CTE is based on neuropathologic examination. To date, three groups of authors have proposed preliminary clinical and/or research diagnostic criteria [20•, 21•, 33•]. The three independently proposed criteria are largely comparable and follow a structure similar to the National Institutes on Aging—Alzheimer's Association clinical diagnostic criteria [34] by differentiating between probable and possible cases based on endorsement of various signs and symptoms. All criteria require a patient to have a history of brain trauma, and to exhibit symptoms consistent with the clinical presentation of CTE described in the literature that could not likely be explained by another condition. All three criteria identified behavioral and cognitive disturbances as important for a diagnosis of CTE. Research groups differ concerning the importance of motor features; Jordan has suggested that motor features resulting from injury to the pyramidal tracts, extrapyramidal system, and cerebellum are necessary for CTE, whereas both Montenigro et al. and Victoroff have suggested a less central role of motor features in diagnosing clinical CTE [20•, 21•, 33•]. Montinegro et al. suggested codifying the clinical syndrome associated with repetitive brain trauma as Traumatic Encephalopathy Syndrome (TES), and reserving CTE for postmortem neuropathologic diagnoses [33•]. In order to confirm the utility of these criteria in either research or clinical settings, future studies will need to demonstrate an ability to reliably differentiate between cases and noncases with a high degree of specificity. A comparison of these proposed criteria can be found in Table 2.

Curr Treat Options Neurol (2014) 16:306

## Table 2. Description of existing proposed research or clinical diagnostic criteria for CTE

| | Jordan (2013) | Montenigro et al. (2014) | Victoroff (2013) |
|---|---|---|---|
| Disease/disorder | CTE | Traumatic encephalopathy syndrome (TES), a clinical syndrome associated with history of repetitive brain trauma | CTE |
| Subclassifications | Definite, Probable, Possible, Improbable | behavioral/mood variant (BMv), cognitive variant (COGv), mixed variant (MIXv), dementia (D); differentiated depending on the presence of motor features or clinical course, or probable, possible, or unlikely CTE based on biomarkers. | Clinically probable, Clinically possible; acute onset, delayed onset; apparently persistent, apparently progressive, apparently improving. |
| History of brain trauma | No specific guidance as to the specific type or amount of brain trauma required. | History of multiple head impacts (mTBI, TBI, or subconcussive trauma) from high exposure contact sports, other significant exposure to repetitive hits, or any activity resulting in TBI. | Probable or definite exposure to one or more of the following: TBI, concussion, subconcussion. |
| Duration of symptoms | No guidance provided. | Symptoms must be present for a minimum of 12 months. | Symptoms must last for at least two years after impact. |
| onset of symptoms | Typically manifest later in life after a period of latency. | Symptom onset must be delayed by at least 2 years from exposure to brain trauma. | Acute onset cases have no period of recovery in the 6–12 months following concussion. Delayed onset cases have evidence of decline following apparent recovery post-impact. |
| Differential diagnosis | Definite (neuropathologically confirmed) and Probable cases of CTE involve ruling out of other possible neurological causes. Possible CTE can potentially be explained by other known neurological causes. Improbable CTE can be explained by a pathophysiological process unrelated to brain trauma. | Must rule out other neurological disorders, including residual symptoms from acute TBI or postconcussion syndrome that could account for symptoms. Comorbidities such as substance use, other neurodegenerative diseases can be present. | Must rule out other medical or psychiatric diagnosis that could explain symptoms. |
| Clinical features | Behavioral and psychiatric features: aggression or agitation, apathy, impulsivity, depression, delusions, suicidality. | Core clinical features: Difficulties in cognition substantiated with scores of ≥1.5 SD below norms on standardized mental status | Symptoms: headache, speech changes, tremor, deterioration in stance or gait, falls, cognitive decline, mood changes, anxiety |

Curr Treat Options Neurol (2014) 16:306

## Table 2. (Continued)

| | Jordan (2013) | Montenigro et al. (2014) | Victoroff (2013) |
|---|---|---|---|
| | *Cognitive features:* impaired attention and concentration, memory problems, executive dysfunction, dementia, visuospatial difficulties, language impairment. *Motor features:* dysarthria, spasticity, ataxia, parkinsonism, gait disturbance, motor neuron disease (possibly). | or neuropsychological tests; behavior issues (eg, short fuse, violence); mood disturbance (eg, depression). *Supportive features:* impulsivity, anxiety, apathy, paranoia, suicidality, chronic headache, motor signs (eg, parkonsinism), documented functional decline, delayed onset. Potential Biomarkers for Diagnosis of Probable CTE: cavum septum pellucidum, normal beta amyloid CSF levels, elevated CSF p-tau/tau ratio, negative amyloid imaging, positive tau imaging, cortical atrophy based on neuroimaging, cortical thinning based on neuroimaging. | paranoia, personality change (eg, irritability, apathy), alcohol abuse dependence or sensitivity, anger or aggression. *Neurological signs:* nystagmus, dysarthria, reduced facial expression, hypertonia or rigidity, hyperreflexia, hemiparesis, tremor, limb ataxia, disorders of gait or stance. *Neurobehavioral signs:* memory loss, other cognitive impairment (eg, disorientation, confusion), mood disturbance (eg, depression), thought disorder, pathological personality traits (eg, irritability, apathy), anger or aggression. |
| Symptom requirements for diagnosis | *Definite:* neurological process consistent with clinical presentation of CTE along with pathological confirmation. *Probable:* two or more of the following conditions: cognitive and/or behavioral impairment, cerebellar dysfunction, pyramidal tract disease or extrapyramidal disease; distinguishable from other disease processes and consistent with the clinical presentation of CTE. *Possible:* neurological process consistent with clinical presentation of CTE but potentially explained by other neurological disorders. *Improbable:* inconsistent with clinical description of CTE and be explained by a process unrelated to brain trauma. | At least one core clinical feature must be present and considered a change from baseline functioning, at least two supportive features must be present. *TES-BMv:* behavioral and/or mood core features without cognitive core features. *TES-COGv:* cognitive core features without behavioral and/or mood core features. *TES-MIXv:* both cognitive core features and behavioral and/or mood core features. *TES-D:* progressive course of cognitive core features, evidence of functional impairment. *Probable CTE:* meets TES criteria, progressive, >1 positive CTE biomarker. *Possible CTE:* meets TES criteria, either has not undergone biomarker testing or has had a negative biomarker (other than tau imaging) or has another disorder that may account for presentation. Unlikely CTE: does not meet TES criteria and/or has had negative tau imaging. | *Clinically* probable diagnosis requires at least two symptoms and three signs. Clinically possible diagnosis requires at least one symptom and two signs. Cases should be identified as acute onset or delayed onset. (See onset of symptoms above.) Cases should be identified as either apparently persistent (clinical features last more than two years), apparently progressive (clinical features last for more than two years and are unequivocally progressing), or apparently improving. |

*CTE* chronic traumatic encephalopathy.

Curr Treat Options Neurol (2014) 16:306

To date, there are no objective, validated in vivo biomarkers of CTE. However, important work in the area of CTE biomarkers is currently underway. Several research groups[18, 21•, 35•, 36] have suggested that negative amyloid PET imaging in the presence of positive tau PET imaging could provide a reliable way to differentiate between cases of CTE and Alzheimer's disease (AD). Small and colleagues published preliminary findings in a study of five former professional football players using the PET ligand [18]F-FDDNP, which binds to both tau and amyloid [35•, 37]. Although they suggested that positive findings (higher signals) using this technology could be indicative of underlying CTE pathology, the nonspecific binding of [18]F-FDDNP means that the signal cannot be solely attributed to the presence of tau. Thus, neuropathologic confirmation is needed to determine the underlying pathology. Alternatively, a tau-specific PET ligand, such as those in preliminary studies by Chien et al. [38••], may be used to measure tau in vivo as a potential biomarker for CTE. Preliminary work using diffusion tensor imaging has shown evidence of persistent changes in white matter integrity after periods of head impact exposure [39•, 40•], which may prove useful in distinguishing CTE. Magnetic resonance spectroscopy (MRS), a method of measuring brain metabolites, has shown promise in preliminary studies by Lin and colleagues [41•]. Cerebrospinal fluid (CSF) markers have been useful in the AD diagnostic process [34] and CSF p-tau levels have been shown to correlate with levels of p-tau NFT deposition in the brain [42]. Thus, CSF protein measures may useful biomarkers for CTE, and in the differentiation of CTE from other neurodegenerative diseases.

# Risk factors

As stated above, to-date, all individuals with neuropathologically confirmed CTE have a history of repetitive head impacts. Although this type of exposure seems to be *necessary* for the occurrence of CTE, it does not appear to be *sufficient*. That is, not all individuals with a history of repetitive head impact exposure get CTE. As previously noted, detailed relation between head impact exposure (eg, frequency, magnitude, age of first exposure) and later-life neurologic outcomes is not well understood. To date, other risk factors for CTE, beyond head impact exposure, are unknown.

## Genetics

Genetic risk factors may play a role in development of CTE. The apolipoprotein (ApoE) ε4 allele is the most powerful predictor of sporadic AD [43]. There have been several reports linking the ApoE ε4 allele and head injury with a variety of negative outcomes, including prolonged recovery and poor cognitive performance [44–47]; however, these studies lacked neuropathologic disease confirmation of disease. Findings in neuropathologically confirmed studies are mixed. In the series studied by Stern et al. [16••] and McKee et al. [7], there was an overrepresentation of ε4 carriers in a cohort of neuropathologically confirmed CTE relative to population norms. However, in a study with a larger sample size (N=103), the effect failed to reach significance [9••]. While early clinical findings established a link between clinical outcomes and APOE ε4

expression, the literature has not definitively established a link between APOE genotype and CTE pathology. Future research should examine the association between APOE genotype and CTE, as well as other possible genetic risk factors for CTE such as the MAPT gene or the TARDBP gene.

## Lifestyle

One important challenge to accurately describing the clinical presentation and course of CTE are the lifestyle comorbidities associated with contact sport athletes and military veterans, in whom the disease has been most studied. Comorbidities such as alcohol abuse or dependence, recreational drug use, and performance enhancing drug use can all lead to personality changes and neuropsychiatric difficulties [48–51]. A non-negligible portion of individuals with neuropathologically confirmed CTE have had reported substance abuse [16••]. However, there are neuropathologically confirmed cases of CTE without a history of any of these afflictions, indicating that they are not causative factors. Therefore, understanding whether and to what extent lifestyle issues, such as those noted, influence the clinical manifestations of CTE is necessary.

## Conclusions

Both in CTE and other neurodegenerative diseases, neuropathologic abnormalities are not always directly correlated with specific clinical signs and symptoms. There are likely other factors that influence disease occurrence, progression, and clinical presentation. To date, our understanding of the clinical presentation of CTE is heavily reliant on retrospective interviews with family members of individuals with neuropathologically confirmed CTE. Currently, our neuropathologic understanding of CTE is based on a biased sample of individuals who are who are predominantly among those most exposed to repetitive head impacts (eg, professional football players, professional boxers). What we understand less well is how repetitive head impacts from other less severe and less predictable exposures, such as the occasional concussion or fall, may or may not relate to the development of CTE. However, despite these limitations, there is sufficient scientific evidence to reasonably conclude that CTE is a distinct pathology that is caused, at least in part, by repetitive head impacts.

Our understanding of CTE has progressed considerably in the last several years. However, important gaps still exist in our understanding such as the incidence and prevalence of CTE, nonhead trauma risk factors for the disease, and in vivo diagnostic techniques. There are a variety of factors beyond a history of repetitive head impacts (eg, personality, lifestyle) that differentiate collegiate or professional contact sport athletes from the general public. Understanding to what extent these other factors influence clinical signs and symptoms is critical. Furthermore, there are other non-CTE results of repetitive head impacts. For example, in a 2012 study by Lehman et al. retired NFL athletes were found to have a neurodegenerative mortality rate three-times that of the U.S. population generally, and when AD and amyotrophic lateral sclerosis were examined specifically NFL mortality rates were four times that of the general population [52••]. Differentiating the clinical manifestations of CTE and non-CTE results of head impacts is needed. In order to facilitate clinical understanding of CTE, the most

pressing issue we are faced with is developing an in vivo diagnostic tool. With an in vivo diagnosis, we could begin to directly assess clinical symptomatology and progression, research incidence and prevalence in a living population, and begin therapeutic studies. Without an in vivo diagnosis, the questions we can accurately address are limited by the methodologies we are able to employ.

As CTE research has a particular ability to be misunderstood by the lay public and sensationalized in the media, caution needs to be exercised when discussing results of scientific studies and generalizing the results to the population as a whole. Many individuals have some history of head impacts incurred through sports participation or other activities [53]. However, the pathophysiological mechanism linking this initial trauma, whether concussive or subconcussive, to later-life CTE pathology has yet to be elucidated. Furthermore, without a more complete understanding of the incidence, prevalence, and possible risk factors that lead to the development of CTE, it is impossible for the general population to accurately assess their risk of CTE. Unfortunately the popular media, which has reported on CTE because of its association with professional athletics, often does not present findings with the same accuracy, caution, or contextualization as the original peer-reviewed scientific publications. In order to avoid causing undue panic in individuals who have a history of concussions or other traumatic brain injuries, the scientific community and the media need to clearly address the considerable gaps that exist in our understanding of CTE [54].

## Compliance with Ethics Guidelines

### Conflict of Interest

Christine M. Baugh and Clifford A. Robbins declare that their institution has received R01 grant support from the NIH. Robert A. Stern declares that his institution has received R01 grant support from the NIH. Dr. Stern also declares the receipt of consulting fees from Athena Diagnostics, as well as gifts to his institution from the National Football League, the Andlinger Foundation, and the NFL Players Association. Dr. Stern also receives royalties from Psychological Assessment Resources, Inc., for psychological tests developed, and he has received consulting fees from law firms in cases involving sports-related brain trauma. Ann C. McKee declares that she has no conflict of interest.

### Human and Animal Rights and Informed Consent

This article does not contain any studies with human or animal subjects performed by any of the authors.

## References and Recommended Reading

Papers of particular interest, published recently, have been highlighted as:
•    Of importance
••   Of major importance

1.    Corsellis J, Bruton C, Freeman-Browne D. The aftermath of boxing. Psychol Med. 1973;3(03):270–303.

2.    Omalu BI, DeKosky ST, Minster RL, Kamboh MI, Hamilton RL, Wecht CH. Chronic traumatic en-

    cephalopathy in a National Football League player. Neurosurgery. 2005;57(1):128–34. discussion –34.

3.   Omalu BI, DeKosky ST, Hamilton RL, Minster RL, Kamboh MI, Shakir AM, et al. Chronic traumatic encephalopathy in a national football league player: part II. Neurosurgery. 2006;59(5):1086–92. doi:10.1227/01.NEU.0000245601.69451.27. discussion 92–3.

4.   Omalu BI, Fitzsimmons RP, Hammers J, Bailes J. Chronic traumatic encephalopathy in a professional American wrestler. J Forensic Nurs. 2010;6(3):130–6. doi:10.1111/j.1939-3938.2010.01078.x.

5.   Omalu BI, Hamilton RL, Kamboh MI, DeKosky ST, Bailes J. Chronic traumatic encephalopathy (CTE) in a National Football League Player: case report and emerging medicolegal practice questions. J Forensic Nurs. 2010;6(1):40–6. doi:10.1111/j.1939-3938.2009.01064.x.

6.   Omalu BI, Bailes J, Hammers JL, Fitzsimmons RP. Chronic traumatic encephalopathy, suicides and parasuicides in professional American athletes: the role of the forensic pathologist. Am J Forensic Med Pathol. 2010;31(2):130–2. doi:10.1097/PAF.0b013e3181ca7f35.

7.   McKee AC, Cantu RC, Nowinski CJ, Hedley-Whyte ET, Gavett BE, Budson AE, et al. Chronic traumatic encephalopathy in athletes: progressive tauopathy after repetitive head injury. J Neuropathol Exp Neurol. 2009;68(7):709–35. doi:10.1097/NEN.0b013e3181a9d503.

8.   McKee AC, Gavett BE, Stern RA, Nowinski CJ, Cantu RC, Kowall NW, et al. TDP-43 proteinopathy and motor neuron disease in chronic traumatic encephalopathy. J Neuropathol Exp Neurol. 2010;69(9):918–29. doi:10.1097/NEN.0b013e3181eed785.

9.••  McKee AC, Stern RA, Nowinski CJ, Stein TD, Alvarez VE, Daneshvar DH, et al. The spectrum of disease in chronic traumatic encephalopathy. Brain. 2013;136(Pt 1):43–64. doi:10.1093/brain/aws307.
The largest case series of neuropathologically confirmed cases of CTE; proposes neuropathological staging criteria.

10.   Hof PR, Knabe R, Bovier P, Bouras C. Neuropathological observations in a case of autism presenting with self-injury behavior. Acta Neuropathologica. 1991;82(4):321–6.

11.   Geddes JF, Vowles GH, Nicoll JA, Revesz T. Neuronal cytoskeletal changes are an early consequence of repetitive head injury. Acta Neuropathologica. 1999;98(2):171–8.

12.•  Goldstein LE, Fisher AM, Tagge CA, Zhang XL, Velisek L, Sullivan JA, et al. Chronic traumatic encephalopathy in blast-exposed military veterans and a blast neurotrauma mouse model. Sci Transl Med.

    2012;4(134):134–60. doi:10.1126/scitranslmed.3003716.
Novel blast neurotrauma model in mice, led to CTE-type pathology.

13.   Martland HS. Punch drunk. JAMA. 1928;91(15):1103–7.

14.   Millspaugh JA. Dementia Pugilistica. US Naval Med Bull. 1937;35:297–303.

15.   Omalu B, Bailes J, Hamilton RL, Kamboh MI, Hammers J, Case M, et al. Emerging histomorphologic phenotypes of chronic traumatic encephalopathy in American athletes. Neurosurgery. 2011;69(1):173–83. doi:10.1227/NEU.0b013e318212bc7b. discussion 83.

16.••  Stern RA, Daneshvar DH, Baugh CM, Seichepine DR, Montenigro PH, Riley DO, et al. Clinical presentation of chronic traumatic encephalopathy. Neurology. 2013;81(13):1122–9. doi:10.1212/WNL.0b013e3182a55f7f.
Case series of neuropathologically-confirmed CTE cases, clinical presentation discussed in detail, two distinct clinical presentations proposed.

17.   Gavett BE, Stern RA, McKee AC. Chronic traumatic encephalopathy: a potential late effect of sport-related concussive and subconcussive head trauma. Clin Sports Med. 2011;30(1):179–88. doi:10.1016/j.csm.2010.09.007. xi.

18.   Baugh CM, Stamm JM, Riley DO, Gavett BE, Shenton ME, Lin A, et al. Chronic traumatic encephalopathy: neurodegeneration following repetitive concussive and subconcussive brain trauma. Brain Imaging Behav. 2012;6(2):244–54. doi:10.1007/s11682-012-9164-5.

19.   Stern RA, Riley DO, Daneshvar DH, Nowinski CJ, Cantu RC, McKee AC. Long-term consequences of repetitive brain trauma: chronic traumatic encephalopathy. PM & R. 2011;3(10 Suppl 2):S460–7. doi:10.1016/j.pmrj.2011.08.008.

20.•  Victoroff J. Traumatic encephalopathy: review and provisional research diagnostic criteria. NeuroRehabilitation. 2013;32(2):211–24. doi:10.3233/nre-130839.
Proposed clinical research diagnostic criteria for CTE.

21.•  Jordan BD. The clinical spectrum of sport-related traumatic brain injury. Nature reviews Neurology. 2013;9(4):222–30. doi:10.1038/nrneurol.2013.33.
Review paper, proposes clinical research diagnostic criteria for CTE.

22.   Mawdsley C, Ferguson F. Neurological disease in boxers. Lancet. 1963;282(7312):795–801.

23.   Soeder M, Arndt T. Affective disorders and changes in the electroencephalogram of boxers. Deutsche medizinische Wochenschrift (1946). 1954;79(48):1792–5.

24.   Grahmann H, Ule G. Diagnosis of chronic cerebral symptoms in boxers (dementia pugilistica & trau-

matic encephalopathy of boxers. Psychiatria et Neurologia. 1957;134(3–4):261–83.

25.• Gardner A, Iverson GL, McCrory P. Chronic traumatic encephalopathy in sport: a systematic review. Br J Sports Med. 2014;48(2):84–90. doi:10.1136/bjsports-2013-092646.
Systematic review of CTE, differentiates between classic and modern CTE.

26. Walilko TJ, Viano DC, Bir CA. Biomechanics of the head for Olympic boxer punches to the face. Br J Sports Med. 2005;39(10):710–9. doi:10.1136/bjsm.2004.014126.

27. Viano DC, Casson IR, Pellman EJ, Bir CA, Zhang L, Sherman DC, et al. Concussion in professional football: comparison with boxing head impacts–part 10. Neurosurgery. 2005;57(6):1154–72. discussion –72.

28. Beitz JM. Parkinson's disease: a review. Frontiers Biosci (Scholar Ed). 2014;6:65–74.

29.• Iverson GL. Chronic traumatic encephalopathy and risk of suicide in former athletes. Br J Sports Med. 2014;48(2):162–5. doi:10.1136/bjsports-2013-092935.
Discusses relationship between CTE and suicidality.

30. Nock MK, Borges G, Bromet EJ, Alonso J, Angermeyer M, Beautrais A, et al. Cross-national prevalence and risk factors for suicidal ideation, plans and attempts. Br J Psychiatry. 2008;192(2):98–105. doi:10.1192/bjp.bp.107.040113.

31. Nock MK, Hwang I, Sampson N, Kessler RC, Angermeyer M, Beautrais A, et al. Cross-national analysis of the associations among mental disorders and suicidal behavior: findings from the WHO World Mental Health Surveys. PLoS Med. 2009;6(8):e1000123. doi:10.1371/journal.pmed.1000123.

32. Roberts GW, Allsop D, Bruton C. The occult aftermath of boxing. J Neurol Neurosurg Psychiatry. 1990;53(5):373–8.

33.• Montenigro PH, Baugh CM, Daneshvar DH, Mez J, Budson AE, Au R, et al. Clinical subtypes of chronic traumatic encephalopathy: literature review and proposed research diagnostic criteria for traumatic encephalopathy syndrome. Alzheimer's Res Ther. (In press).
Review: discusses historical examples of CTE, proposes research diagnostic criteria for CTE.

34. McKhann GM, Knopman DS, Chertkow H, Hyman BT, Jack Jr CR, Kawas CH, et al. The diagnosis of dementia due to Alzheimer's disease: recommendations from the National Institute on Aging-Alzheimer's Association workgroups on diagnostic guidelines for Alzheimer's disease. Alzheimer's Dementia. 2011;7(3):263–9. doi:10.1016/j.jalz.2011.03.005.

35.• Small GW, Kepe V, Siddarth P, Ercoli LM, Merrill DA, Donoghue N, et al. PET scanning of brain tau in retired national football league players: preliminary

findings. Am J Geriatr Psychiatry. 2013;21(2):138–44. doi:10.1016/j.jagp.2012.11.019.
Pilot study utilizing 18F-FDDNP PET radioligand in 5 former NFL athletes as a possible marker of CTE.

36. Riley DO, Robbins CA, Cantu RC, Stern RA. Chronic traumatic encephalopathy: contributions from the Boston University Center for the Study of Traumatic Encephalopathy. Brain Inj. (In press).

37. Harada R, Okamura N, Furumoto S, Tago T, Maruyama M, Higuchi M, et al. Comparison of the binding characteristics of [18F]THK-523 and other amyloid imaging tracers to Alzheimer's disease pathology. Eur J Nucl Med Mol Imaging. 2013;40(1):125–32. doi:10.1007/s00259-012-2261-2.

38.•• Chien DT, Bahri S, Szardenings AK, Walsh JC, Mu F, Su MY, et al. Early clinical PET imaging results with the novel PHF-tau radioligand [F-18]-T807. J Alzheimer's Dis. 2013;34(2):457–68. doi:10.3233/jad-122059.
Early study of novel PHF-tau specific PET radioligand.

39.• Koerte IK, Ertl-Wagner B, Reiser M, Zafonte R, Shenton ME. White matter integrity in the brains of professional soccer players without a symptomatic concussion. JAMA. 2012;308(18):1859–61. doi:10.1001/jama.2012.13735.
Study utilizing diffusion tensor imaging to examine professional soccer players, finds white matter disintegrity despite no symptomatic concussion.

40.• Bazarian JJ, Zhu T, Zhong J, Janigro D, Rozen E, Roberts A, et al. Persistent, long-term cerebral white matter changes after sports-related repetitive head impacts. PLoS One. 2014;9(4):e94734. doi:10.1371/journal.pone.0094734.
Study utilizing diffusion tensor imaging to examine 10 college football players finds persistent white matter disintegrity, despite no clinically evident concussion.

41.• Lin AP, Liao HJ, Merugumala SK, Prabhu SP, Meehan III WP, Ross BD. Metabolic imaging of mild traumatic brain injury. Brain imaging and behavior. 2012;6(2):208–23. doi:10.1007/s11682-012-9181-4.
Review of the potential use of magnetic resonance spectroscopy in examining mTBI in acute and chronic stages.

42. Buerger K, Ewers M, Pirttila T, Zinkowski R, Alafuzoff I, Teipel SJ, et al. CSF phosphorylated tau protein correlates with neocortical neurofibrillary pathology in Alzheimer's disease. Brain. 2006;129(Pt 11):3035–41. doi:10.1093/brain/awl269.

43. Ward A, Crean S, Mercaldi CJ, Collins JM, Boyd D, Cook MN, et al. Prevalence of apolipoprotein E4 genotype and homozygotes (APOE e4/4) among patients diagnosed with Alzheimer's disease: a systematic review and meta-analysis. Neuroepidemiology. 2012;38(1):1–17. doi:10.1159/000334607.

44. Jordan BD, Relkin NR, Ravdin LD, Jacobs AR, Bennett A, Gandy S. Apolipoprotein E epsilon4 associated with chronic traumatic brain injury in boxing. JAMA. 1997;278(2):136–40.

Curr Treat Options Neurol (2014) 16:306
Page 13 of 13, 306

45. Teasdale GM, Nicoll JA, Murray G, Fiddes M. Association of apolipoprotein E polymorphism with outcome after head injury. Lancet. 1997;350(9084):1069–71. doi:10.1016/s0140-6736(97)04318-3.

46. Kutner KC, Erlanger DM, Tsai J, Jordan B, Relkin NR. Lower cognitive performance of older football players possessing apolipoprotein E epsilon4. Neurosurgery. 2000;47(3):651–7. discussion 7–8.

47. Mayeux R, Ottman R, Maestre G, Ngai C, Tang MX, Ginsberg H, et al. Synergistic effects of traumatic head injury and apolipoprotein-epsilon 4 in patients with Alzheimer's disease. Neurology. 1995;45(3 Pt 1):555–7.

48. Almeida OP, Hankey GJ, Yeap BB, Golledge J, Flicker L. Alcohol consumption and cognitive impairment in older men: a mendelian randomization study. Neurology. 2014;82(12):1038–44. doi:10.1212/wnl.0000000000000255.

49. Zahr NM, Kaufman KL, Harper CG. Clinical and pathological features of alcohol-related brain damage. Nature reviews Neurology. 2011;7(5):284–94. doi:10.1038/nrneurol.2011.42.

50. Hartgens F, Kuipers H. Effects of androgenic-anabolic steroids in athletes. Sports Med (Auckland, NZ). 2004;34(8):513–54.

51. Sheidow AJ, McCart M, Zajac K, Davis M. Prevalence and impact of substance use among emerging adults with serious mental health conditions. Psychiatr Rehabil J. 2012;35(3):235–43. doi:10.2975/35.3.2012.235.243.

52.•• Lehman EJ, Hein MJ, Baron SL, Gersic CM. Neurodegenerative causes of death among retired National Football League players. Neurology. 2012;79:1970–4. doi:10.1212/WNL.0b013e31826daf50.
Study examining mortality associated with neurodegenerative diseases in NFL athletes, finds neurodegenerative mortality to be 3–4 times higher in NFL than general population.

53. Langlois JA, Rutland-Brown W, Wald MM. The epidemiology and impact of traumatic brain injury: a brief overview. J Head Trauma Rehabil. 2006;21(5):375–8.

54. Concannon LG, Kaufman MS, Herring SA. Counseling athletes on the risk of chronic traumatic encephalopathy. Sports Health. 2014. doi:10.1177/1941738114530958.

# EXHIBIT 10

Montenigro et al. Alzheimer's Research & Therapy 2014, **6**:68
http://alzres.com/content/6/8/68



alzheimer's
research&therapy

**REVIEW**

# Clinical subtypes of chronic traumatic encephalopathy: literature review and proposed research diagnostic criteria for traumatic encephalopathy syndrome

Philip H Montenigro[1], Christine M Baugh[2], Daniel H Daneshvar[3], Jesse Mez[4], Andrew E Budson[4,5], Rhoda Au[2,6], Douglas I Katz[2,7], Robert C Cantu[8,9] and Robert A Stern[1,4,2,8*]

## Abstract

The long-term consequences of repetitive head impacts have been described since the early 20th century. Terms such as punch drunk and dementia pugilistica were first used to describe the clinical syndromes experienced by boxers. A more generic designation, chronic traumatic encephalopathy (CTE), has been employed since the mid-1900s and has been used in recent years to describe a neurodegenerative disease found not just in boxers but in American football players, other contact sport athletes, military veterans, and others with histories of repetitive brain trauma, including concussions and subconcussive trauma. This article reviews the literature of the clinical manifestations of CTE from 202 published cases. The clinical features include impairments in mood (for example, depression and hopelessness), behavior (for example, explosivity and violence), cognition (for example, impaired memory, executive functioning, attention, and dementia), and, less commonly, motor functioning (for example, parkinsonism, ataxia, and dysarthria). We present proposed research criteria for traumatic encephalopathy syndrome (TES) which consist of four variants or subtypes (TES behavioral/mood variant, TES cognitive variant, TES mixed variant, and TES dementia) as well as classifications of 'probable CTE' and 'possible CTE'. These proposed criteria are expected to be modified and updated as new research findings become available. They are not meant to be used for a clinical diagnosis. Rather, they should be viewed as research criteria that can be employed in studies of the underlying causes, risk factors, differential diagnosis, prevention, and treatment of CTE and related disorders.

## Introduction

Chronic traumatic encephalopathy (CTE) is a neurodegenerative disease characterized by the accumulation of hyperphosphorylated tau protein (p-tau) in neurons and astrocytes in a pattern that is unique from that of other tauopathies, including Alzheimer's disease (AD) and frontotemporal lobar degeneration. The p-tau deposition initially occurs focally, as perivascular neurofibrillary tangles and neurites at the depths of the cerebral sulci. It spreads to involve superficial layers of adjacent cortex, eventually resulting in widespread degeneration of the medial temporal lobes, frontal lobes, diencephalon, and brainstem [1,2]. Unlike AD, there is a paucity of beta amyloid neuritic plaques. CTE has been found most often in professional athletes involved in contact sports (for example, boxing and American football) who have been subjected to repetitive head blows resulting in concussive and subconcussive trauma [3,4]. Neuropathologically confirmed CTE has been reported in individuals as young as 17 and in athletes who played sports only through high school or college. It also has been found in non-athletes who have experienced repetitive head impacts, including epileptics, developmentally disabled individuals who head-bang, and victims of physical abuse [2]. Moreover, CTE has been neuropathologically diagnosed in military service members previously deployed in Iraq and Afghanistan with histories of repetitive brain trauma [2,5]. At this time,

* Correspondence: bobstern@bu.edu
[1]Department of Anatomy and Neurobiology, Boston University School of Medicine, 72 East Concord Street, Boston, MA 02118, USA
[4]BU Alzheimer's Disease Center, Boston University School of Medicine, 72 East Concord Street, Boston, MA 02118, USA
Full list of author information is available at the end of the article



© 2014 Montenigro et al.; licensee BioMed Central Ltd. The licensee has exclusive rights to distribute this article, in any medium, for 12 months following its publication. After this time, the article is available under the terms of the Creative Commons Attribution License (http://creativecommons.org/licenses/by/4.0), which permits unrestricted use, distribution, and reproduction in any medium, provided the original work is properly credited. The Creative Commons Public Domain Dedication waiver (http://creativecommons.org/publicdomain/zero/1.0/) applies to the data made available in this article, unless otherwise stated.

Montenigro et al. Alzheimer's Research & Therapy 2014, **6**:68
http://alzres.com/content/6/8/68

it is not completely clear whether all cases of neuropathologically confirmed CTE would demonstrate a progressive course if they lived long enough.

All cases of neuropathologically confirmed CTE reported to date have had a history of repetitive head impacts, although there has been some suggestion that a single traumatic brain injury (TBI) may also lead to the neuropathological changes of CTE [6]. Although head impacts appear to be necessary for the initiation of the pathogenetic cascade that eventually leads to neurodegeneration, the history of head impacts is not sufficient and additional risk factors (including genetic susceptibility markers) remain unknown. The incidence and prevalence of CTE are also unknown, although the number potentially affected could be quite large. Every year, between 1.6 and 3.8 million individuals in the US experience a sports-related concussion [7], and the number of youth sports-related concussions has grown in recent years [8]. The incidence of repetitive subconcussive blows (that is, hits to the head that produce enough force to hamper neuronal integrity but that do not result in clinical concussion symptoms) is much greater [9]. For example, a study by Broglio and colleagues [10] found that, per season, high school football players receive an average of 652 head blows that exceed 15 g of force. With over 1 million high school students playing American football each year and with the size and speed of football players increasing [11], the public health impact of CTE may be quite significant in future years.

*In vivo* diagnosis of CTE is needed to conduct research on risk factors and epidemiology and to perform clinical trials for prevention and treatment. Sensitive and specific biomarkers for CTE are being developed and include structural and neurochemical imaging techniques and positron emission tomography (PET) with new ligands that selectively bind to p-tau [4,12,13]. These approaches hold promise to detect underlying neuropathological changes of CTE. However, the clinical features directly associated with these changes have only recently been described and have been based on retrospective reports of family members of deceased individuals who received a neuropathological diagnosis of CTE [2,14].

In a recent article from our group [14], we examined the clinical presentation of 36 adult males selected from all cases of neuropathologically confirmed CTE at the Boston University Center for the Study of Traumatic Encephalopathy Brain Bank. The cases were all athletes, had no comorbid neurodegenerative or motor neuron disease, and had family member informants who provided retrospective reports of history and clinical features. The semi-structured 'psychological autopsies' were conducted blind to the subjects' neuropathological findings. Three of the 36 subjects were asymptomatic. In the remaining 33 symptomatic subjects, a triad of cognitive, behavioral, and mood impairments was found, and cognitive changes were

reported for almost all subjects at some time in the course of disease. However, two clinically distinct clinical presentations emerged: one group had initial features involving behavior (that is, explosivity, physical and verbal violence, being 'out of control', and impulsivity) or mood (that is, depression and hopelessness) or both (n = 22), and another group had initial features involving cognition (that is, episodic memory impairment, executive dysfunction, poor attention, and concentration) (n = 11). Symptom onset for the 'behavior/mood group' occurred at a significantly younger age than for the 'cognition group'. Most subjects in the behavior/mood group eventually developed cognitive difficulties, although significantly fewer subjects in the cognition group eventually demonstrated behavioral and mood changes. Significantly more subjects in the cognition group developed dementia than those in the behavior/mood group. Less than one third of the sample had reported motor features, including parkinsonism.

Although the study by Stern and colleagues [14] involved the largest case series to date of neuropathologically confirmed cases of CTE without comorbid conditions and with clinical histories, the sample size was small and the generalizability of the findings was hampered by the potential bias of a sample composed of former athletes whose family members agreed to their brain donation. This limitation notwithstanding, the finding of two possible clinical subtypes of CTE was consistent with previous literature. In the present article, we provide a review of the world's literature on the clinical features exhibited by athletes with histories of repetitive head impacts. After the literature review, we provide proposed research diagnostic criteria for 'traumatic encephalopathy syndrome' (TES), derived from this literature review and from our own research into the clinical presentation of CTE [1,2,14]. As described below, these criteria are meant to initially characterize what is known to date and provide a foundation for developing more precise clinical criteria informed by ongoing and future research and clinical review.

## Historical terms for chronic traumatic encephalopathy

In his seminal 1928 article in the *Journal of the American Medical Association*, Martland [15] used the term 'punch drunk' to describe boxers suffering from symptoms he believed to be related to the repetitive blows they received in the ring. Since that time, various terms have been used to describe the clinical syndrome associated with repetitive head impacts, predominantly in studies of boxers. In 1934, Parker [16] published an article in which he referred to the 'traumatic encephalopathy of pugilists'. In 1937, Millspaugh [17] first used the term 'dementia pugilistica', which is still used by clinicians and researchers. Other

terms coined through the decades include 'traumatic encephalitis' [18], 'cumulative encephalopathy of the boxer' [19], 'psychopathic deterioration of pugilists' [20], 'chronic boxer's encephalopathy' [21], and 'traumatic boxer's encephalopathy' [22]. In 1949, Critchley first used the designation 'chronic traumatic encephalopathy' [23], or CTE, but later modified it to 'chronic progressive traumatic encephalopathy' [24] because several cases apparently progressed from an early mild state to severe dementia [23-25]. Johnson [26] suggested that the latter term erroneously implies that progression is inevitable. In his case series, little to no deterioration is reported in half of the cases followed for 5 years. In recent reviews of the literature, Victoroff (alone [27] and with Baron [28]) suggested using the more general and inclusive term 'traumatic encephalopathy'.

In 2005, Omalu and colleagues [29] described the first case of neuropathologically confirmed CTE in an American football player. Since that time, there has been increasing public attention to this disease, and reports of CTE in deceased football players, including several well-known athletes, have prompted a tremendous focus on what is commonly referred to as football's 'concussion crisis'. The scientific community also has become dramatically more aware of CTE since it was discovered in American football players. For example, a PubMed search using the terms 'chronic traumatic encephalopathy', 'traumatic encephalopathy', 'dementia pugilistica', or 'punch drunk' resulted in 14 publications in the 5-year period ending in December 2001 compared with 116 publications in the 5-year period ending in December 2013.

## Early concepts regarding subtypes

In a 1950 editorial in the *British Medical Journal*, Jokl [30] stressed that CTE was not a single syndrome but rather two kinds of chronic impairment, with either predominant 'behavioral-psychopathic or neurological-psychiatric' features. He described the behavioral-psychopathic subtype as involving 'viciousness', 'murder committed from jealousy', and delinquency. In contrast, he described the neurological-psychiatric subtype as involving cognitive deficits, dementia, and motor impairment [30-32]. Grahmann and Ule [33] (1957) described three general subtypes: (1) a progressive dementia that typically involved cognitive impairment and developed following a latency from the time of boxing retirement, (2) a stable neurological presentation temporally and etiologically related to the head impacts and not representative of a progressive disease, and (3) a paranoid and psychotic subtype absent of cognitive changes. Critchley [23] maintained that there were three commonly recurring presentations of CTE that resembled, but could be distinguished from, (1) neurosyphilis (for example, psychopathy, altered personality, and later dementia), (2) multiple sclerosis

(for example, scanning speech, tremor, and progressive cognitive decline), and (3) frontal lobe tumor (for example, executive impairments, headache, and eye ache). He later added a fourth presentation: striatal parkinsonian (for example, masked facial features and tremor) [24]. In a study of 17 retired boxers, Johnson [26] described four different 'organic psychosyndromes': cognitive problems with progressive dementia, behavioral issues related to 'morbid jealousy', behavioral issues related to rage and personality disorders, and mood and behavioral disturbance related to persistent psychosis.

## Literature search methods

To examine previous literature describing the clinical presentation of CTE associated with exposure to head impacts through sports participation, we conducted a literature search using PubMed, PubMed Central, and Medline databases. Search terms included 'chronic traumatic encephalopathy', 'punch drunk', 'traumatic encephalopathy', 'dementia pugilistica', 'chronic boxer's encephalopathy', 'chronic progressive traumatic encephalopathy', 'psychopathic deterioration of pugilists', and 'repetitive brain injury'. In addition, bibliographies of recent literature reviews were cross-referenced [1,27,34-39]. It should be noted that most online databases are limited to articles published since the 1950s. Because essential work in this field began in 1928, archival research was carried out by hand, and international works were obtained with assistance from the Boston University Medical Library Interlibrary Loan Department. Materials retained included articles, reviews, dissertations, society transactions, association reports, and book chapters. To be reasonably confident about the diagnoses used, several criteria were used to determine inclusion in this review: (1) only case series, and not individual case reports, were included; (2) adequate information must be provided in the report to allow classification of cases as confirmed CTE, probable CTE, or possible CTE by using Jordan's criteria [35,40,41]; and (3) only cases involving athletes were included.

## Results of literature review

Following the exclusion of articles and cases that did not meet the above criteria, the literature review resulted in 202 cases from 20 published case series, four books, and one medical dissertation. The cases are summarized in Table 1 [2,16,22-26,29,31-33,42-54]. Nineteen cases were published before 1950, 29 cases were published in the 1950s, 49 were published in the 1960s, 13 were published in the 1970s, four were published in the 1980s, 19 were published in the 1990s, and 69 were published since 2000. Using Jordan's criteria [35], we approximated that 29 would have possible CTE, 90 would have probable CTE, and 83 would have definite CTE. Of the entire sample, 141 were boxers, 54 were American football players, five

Montenigro et al. Alzheimer's Research & Therapy 2014, 6:68
http://alzres.com/content/6/8/68

**Table 1 Summary of published cases describing the clinical features of chronic traumatic encephalopathy**

| Study | Sample (total n = 202) | Clinical features | | | |
|---|---|---|---|---|---|
| | | Behavioral | Mood | Cognition | Motor |
| Parker [16] (1934) | Boxers (n = 3) | Social inappropriateness | Anxiety | Reduced intelligence | Ataxia |
| | | Childish behavior | Labile emotions | Memory impairment | Clonus |
| | | | Fatigue | Impaired attention | Dragging gait |
| | | | | Visuospatial difficulties | Dysarthria |
| | | | | | Muscle weakness |
| | | | | | Spasticity |
| | | | | | Tremor |
| Herzog [42] (1938) | Boxers (n = 7) | Boastfulness | Apathy | General cognitive impairment | Dysarthria |
| | | Personality changes | Flat affect | Memory difficulties | Masked facies |
| | | Impulsiveness | | Perseveration | Shuffling gait |
| | | Loss of control | | Language difficulties | Truncal ataxia |
| | | | | Alogia | |
| | | | | Dementia | |
| Knoll et al. [43] (1938) | Boxers (n = 3) | Personality changes | Apathy | General cognitive impairment | Ataxia |
| | | | Flat affect | Memory impairment | Dysarthria |
| | | | Loss of interest | Visuospatial difficulties | Masked facies |
| | | | Prolix | Alogia | |
| | | | | Dementia | |
| Jokl [31] (1941) and Jokl and Guttmann [32] (1933) | Boxers (n = 3) | Boastfulness | Apathy | Reduced intelligence | Ataxia |
| | | Childish behavior | Depression | Executive dysfunction | Dysarthria |
| | | Paranoid delusions | Euphoria | Memory impairment | Masked facies |
| | | Personality changes | Fatigue | Impaired attention | Muscle weakness |
| | | Physical violence | Flat affect | Altered concentration | Shuffling gait |
| | | Psychosis | Insomnia | Language difficulties | Tremor |
| | | Short fuse | Irritability | Dysgraphia | Unsteady gait |
| | | Explosivity | Labile emotions | Visuospatial difficulties | |
| | | Social inappropriateness | Loss of interest | | |
| | | Verbal violence | Mania | | |
| | | | Mood swings | | |
| Schwarz [44] (1953) | Boxers (n = 3) | Personality changes | Fearfulness | Memory impairment | Ataxia |
| | | Short fuse | Irritability | Altered concentration | Dysarthria |
| | | Explosivity | Labile emotions | Language difficulties | Masked facies |
| | | | | | Muscle weakness |
| | | | | | Stamping gait |
| | | | | | Tremor |
| | | | | | Unsteady Gait |
| Soeder and Arndt [45] (1954) | Boxers (n = 5) | Boastfulness | Apathy | General cognitive impairment | Clonus |
| | | Disinhibited behavior | Depressed mood | Executive dysfunction | Dysarthria |
| | | Inappropriate speech | Euphoria | Memory impairment | Masked facies |
| | | Paranoia | Fatigue | Impaired attention | Rolling gait |
| | | Personality changes | Flat affect | Altered concentration | Tremor |
| | | Physical violence | Insomnia | Language difficulties | Truncal ataxia |

Case 2:15-cv-02737-DOC-JEM Document 620-1 Filed 10/08/2025 Page 1727 of 1878

Montenigro et al. Alzheimer's Research & Therapy 2014, 6:68
http://alzres.com/content/6/8/68

**Table 1 Summary of published cases describing the clinical features of chronic traumatic encephalopathy** (Continued)

| | | | | | |
|---|---|---|---|---|---|
| | | Psychosis | Mania | Alogia | Unsteady gait |
| | | Short fuse | Mood swings | | |
| | | Explosivity | Prolix | | |
| | | Social inappropriateness | | | |
| Grahmann and Ule [33] (1957) | Boxers (n = 4) Confirmed CTE (1) | Childish behavior | Apathy | General cognitive impairment | Dysarthria |
| | | Disinhibited behavior | Depressed | Executive dysfunction | Swaying gait |
| | | Disinhibited speech | Euphoria | Memory impairment | Masked facies |
| | | Impulsivity | Labile emotions | Impaired attention | |
| | | Loss of control | Fatigue | Altered concentration | |
| | | Physical violence | Flat affect | Dementia | |
| | | Personality changes | Irritable | | |
| | | Short fuse | Mood swings | | |
| | | Explosivity | Prolix | | |
| | | Social inappropriateness | | | |
| Muller [46] (1958) | Boxers (n = 3) | Social isolation | Fatigue | General cognitive impairment | Dysarthria |
| | | Personality changes | Irritability | Executive dysfunction | Unsteady gait |
| | | Lack of insight | | Impaired attention | Spastic gait |
| | | | | Memory impairment | |
| | | | | Altered concentration | |
| | | | | Dementia | |
| Spillane [47] (1962) | Boxers (n = 5) | Childish behavior | Anxiety | General cognitive impairment | Ataxia |
| | | Disinhibited behavior | Depressed mood | Reduced intelligence | Dysarthria |
| | | Impulsivity | Euphoria | Memory impairment | Dragging gait |
| | | | Mania | Visuospatial difficulties | Muscle weakness |
| | | | Payne mood swings | Dysgraphia | Tremor |
| | | | | Lack of insight | Unsteady gait |
| | | | | Dementia | |
| Mawdsley and Ferguson [22] (1963) | Boxers (n = 10) | Impulsivity | Apathy | General cognitive impairment | Ataxia |
| | | Loss of control | Depression | Reduced intelligence | Dysarthria |
| | | Physical violence | Insomnia | Memory impairment | Dragging gait |
| | | Psychosis | Irritability | Language difficulties | Masked facies |
| | | Paranoid delusions | | Dysgraphia | Muscle weakness |
| | | Personality changes | | Dementia | Tremor |
| | | Short fuse | | | Unsteady gait |
| | | Explosivity | | | |
| | | Social inappropriateness | | | |
| | | Verbal violence | | | |
| Critchley [23-25] (1949, 1957, 1964) | Boxers (n = 17) | Disinhibited speech | Depressed | General cognitive impairment | Ataxia |
| | | Disinhibited behavior | Labile emotions | Reduced intelligence | Clumsy |
| | | Impulsivity | Euphoria | Memory impairment | Dysarthria |
| | | Lack of insight | Insomnia | Impaired attention | Masked facies |
| | | Physical violence | Irritable | Altered concentration | Muscle weakness |
| | | Personality changes | Loss of interest | Visuospatial difficulties | Tremor |
| | | Social inappropriateness | Fatigue | Dementia | Unsteady gait |
| | | Short fuse | | | |

Case 2:25-cv-02027-DDC-ADM Document 6-20 Filed 10/08/25 Page 1728 of 1878

Montenigro et al. Alzheimer's Research & Therapy 2014, 6:68
http://alzres.com/content/6/8/68

**Table 1 Summary of published cases describing the clinical features of chronic traumatic encephalopathy** *(Continued)*

| | | | | | |
|---|---|---|---|---|---|
| Payne [48] (1968) | Boxers (n = 6) | Disinhibited behavior<br>Impulsivity<br>Paranoid delusions<br>Physical violence<br>Psychotic<br>Verbal violence | Depressed mood<br>Labile emotions<br>Insomnia<br>Mania<br>Mood swings<br>Suicidal ideation | General cognitive impairment<br>Reduced intelligence<br>Altered concentration<br>Visuospatial difficulties<br>Memory impairment | Ataxia<br>Dysarthria<br>Unsteady gait |
| Johnson [26] (1969) | Boxers (n = 17) | Loss of control<br>Paranoid delusions<br>Personality changes<br>Psychotic<br>Short fuse<br>Explosivity<br>Verbal violence | Anxiety<br>Labile emotions<br>Irritability | General cognitive impairment<br>Reduced intelligence<br>Memory impairment<br>Dementia | Ataxia<br>Dysarthria<br>Tremor<br>Dragging gait<br>Masked facies<br>Muscle weakness |
| Roberts [49] (1969) | Boxers (n = 11) | Lack of insight<br>Paranoid delusions<br>Psychosis<br>Short fuse<br>Explosivity | Apathy<br>Depression<br>Euphoria<br>Flat affect<br>Labile emotions | Reduced intelligence<br>Executive dysfunction<br>Memory impairment<br>Perseveration<br>Impaired attention<br>Altered concentration<br>Language difficulties<br>Dysgraphia<br>Visuospatial difficulties<br>Dementia | Ataxia<br>Dysarthria<br>Dragging gait<br>Masked facies<br>Muscle weakness<br>Shuffling gait<br>Spasticity<br>Tremor<br>Unsteady gait |
| Corsellis et al. [50] (1973) | Boxers (n = 13)<br>Confirmed CTE (13) | Childish behavior<br>Paranoid delusions<br>Personality changes<br>Short fuse<br>Explosivity<br>Social inappropriateness<br>Social isolation<br>Verbal violence | Anxiety<br>Labile emotions<br>Irritability | General cognitive impairment<br>Reduced intelligence<br>Memory impairment<br>Dementia | Ataxia<br>Dysarthria<br>Masked facies<br>Muscle weakness<br>Tremor<br>Staggering gait<br>Shuffling gait<br>Unsteady gait |
| Sabharwal et al. [51] (1987) | Boxers (n = 4) | Inappropriate speech | Depression<br>Irritability<br>Labile emotions<br>Mood swings | Reduced intelligence<br>Memory impairment | Ataxia<br>Spasticity<br>Dysarthria |
| Jordan et al. [52] (1997) | Boxers (n = 19) | Disinhibited speech<br>Disinhibited behavior | Depression<br>Irritability<br>Flat affect<br>Mania | Impaired attention<br>Altered concentration<br>Memory impairment | Ataxia<br>Clonus<br>Dysarthria<br>Spasticity<br>Tremor<br>Unsteady gait |
| Omalu et al. [29,53,54] (2005, 2006, 2010) | Football and wrestling (n = 5)<br><br>Confirmed CTE (5) | Paranoid delusions<br>Social isolation<br>Physical violence | Suicidality<br>Anxiety<br>Labile emotions<br>Irritability | General cognitive impairment<br>Memory impairment<br>Language difficulties<br>Executive dysfunction | - |

Case 2:15-cv-02207-DDC-ADM Document 62-1 Filed 10/08/20 Page 1729 Date Filed 10/08/2025

Montenigro et al. Alzheimer's Research & Therapy 2014, 6:68
http://alzres.com/content/6/8/68

**Table 1 Summary of published cases describing the clinical features of chronic traumatic encephalopathy** *(Continued)*

| | | | Insomnia | Impaired attention | |
|---|---|---|---|---|---|
| | | | Depression | | |
| Mckee et al. [2] (2013) | Boxing, American football, ice hockey, wrestling (n = 64) | Explosivity | Depression | Memory impairment | Dysarthria |
| | | Aggression | Hopelessness | Executive dysfunction | Gait disturbance |
| | | Impulsivity | Suicidality | Impaired attention | Parkinsonism |
| | | Paranoia | Mood swings | Language difficulties | |
| | | | | Visuospatial difficulties | |
| | Confirmed CTE (64) | | | Dementia | |

CTE, chronic traumatic encephalopathy.

were ice hockey players, and two were professional wrestlers. The clinical features described in all of the cases were classified into one of four categories: behavioral, mood, cognitive, and motor. Table 2 summarizes the clinical features most commonly described across all cases. In 68% of cases, the course of the clinical syndrome was described as progressive. In cases in which a distinction in clinical syndrome was made, the behavioral and mood features were reported to be more stable, whereas the cognitive features were described as progressive, often resulting in dementia. Compared with cases described as progressive, cases described as stable were substantially younger. A large number of cases had a period of latency of several years between the end of exposure to head impacts and the presentation of clinical signs and symptoms. In neuropathologically confirmed cases, authors described the initial clinical presentation as involving mood or behavioral

disturbance (or both) without cognitive impairment in 28%, as having cognitive impairment without concurrent mood or behavioral difficulties in 32%, and as having initial mixed cognitive and mood/behavioral disturbance in 40%.

In recent years, some authors have made the distinction between 'classic CTE' and 'modern CTE' [34,36]. For example, McCrory and colleagues [36] define the classic CTE syndrome based on the clinical descriptions from Roberts [49] and the neuropathological reports from Corsellis and colleagues [50]. Based on these earlier cases of boxers, classic CTE is described as having prominent motor features, including gait disturbance, dysarthria, and pyramidal problems, but without progressive cognitive, behavioral, or mood changes [36]. However, it is important to note that, in his monograph, Roberts [49] clarifies that he is intentionally focusing on the description and quantification of motor signs related to

**Table 2 Summary of clinical features of chronic traumatic encephalopathy found in the literature**

| Behavioral features | Mood features | Cognitive features | Motor features |
|---|---|---|---|
| Explosivity | Depression | Dementia | Ataxia |
| Loss of control | Hopelessness | Memory impairment | Dysarthria |
| Short fuse | Suicidality | Executive dysfunction | Parkinsonism |
| Impulsivity | Anxiety | Lack of insight | Gait Disturbance |
| Aggression | Fearfulness | Perseveration | Tremor |
| Rage | Irritability | Impaired attention and | Masked facies |
| Physical violence | Labile emotions | concentration | Rigidity |
| Verbal violence | Apathy | Language difficulties | Muscle weakness |
| Inappropriate speech | Loss of interest | Dysgraphia | Spasticity |
| Boastfulness | Fatigue | Alogia | Clonus |
| Childish behavior | Flat affect | Visuospatial | |
| Social inappropriateness | Insomnia | difficulties | |
| Disinhibited speech | Mania | General cognitive impairment | |
| Disinhibited behavior | Euphoria | Reduced intelligence | |
| Paranoid delusions | Mood swings | | |
| Personality changes | Prolix | | |
| Psychosis | | | |
| Social isolation | | | |

Case 2:15-cv-01023-DGC Document 62-1 Filed 10/08/2024

neurological lesions, reducing his focus on 'the evidence of dementia or personality change' which he viewed as occurring in a subset of cases [49]. In contrast, 'modern CTE' [34,36], defined as any case report published in 2005 or later, is characterized by predominant mood and behavioral symptoms as well as later progressive cognitive deficits and dementia but with less prevalent motor features. We view this distinction between the earlier and more recent descriptions of the clinical presentation of CTE as largely an artifact of different sources of trauma exposure (that is, predominantly boxers in the 'classic' cases and predominantly football players in the 'modern' cases).

To explore this issue, we examined further the cases of neuropathologically confirmed pure CTE described in the series of McKee and colleagues [2] and compared the presence of motor features reported for the deceased professional boxers with those reported for the professional football players. The percentage of professional boxers with motor features (71%) far exceeded that of professional football players (13%). Additionally, it was found that in cases with the most advanced stage of CTE neuropathology, there was a striking difference in the presence of cerebellar pathology in professional boxers (83%) and professional football players (57%). The likely cause of this may be related to the differences in the biomechanics of the head trauma that is experienced through the practice of these two different sports [14].

## Previously published diagnostic criteria

To date, there have been two published sets of diagnostic criteria for the clinical diagnosis of CTE. The first diagnostic criteria, proposed by Jordan [35,40,41], were developed specifically to represent the likelihood of underlying CTE neuropathology. As such, the following four diagnostic classifications are used: (1) definite CTE ('any neurological process consistent with the clinical presentation of CTE along with pathological confirmation'), (2) probable CTE ('any neurological process characterized by two or more of the following conditions: cognitive and/or behavioral impairment; cerebellar dysfunction; pyramidal tract disease or extrapyramidal disease; clinically distinguishable from any known disease process and consistent with the clinical description of CTE'), (3) possible CTE ('any neurological process that is consistent with the clinical description of CTE but can be potentially explained by other known neurological disorders'), and (4) improbable CTE ('any neurological process that is inconsistent with the clinical description of CTE and can be explained by a pathophysiological process unrelated to brain trauma') [35].

In contrast to Jordan's diagnostic criteria, which are focused on the prediction of underlying CTE neuropathology, the diagnostic criteria of Victoroff [27] are focused on

a broad set of clinical signs and symptoms representing a diverse set of possible etiologies and are not meant to predict underlying CTE neuropathology. These provisional research diagnostic criteria for clinically probable traumatic encephalopathy (TE) and clinically possible TE were based on the frequency of clinical symptoms and signs reported in TE case reports published between 1928 and 2010. The Victoroff criteria represent an important addition to the literature but have several limitations. For example, for a diagnosis of clinically probable TE, there is a requirement for two symptoms and three signs. However, there is tremendous overlap and redundancy between the symptoms and the 'neurobehavioral signs', including the use of the following terms included as both symptoms and signs: memory loss, irritability, apathy, impulsivity, depression, lability, euphoria, paranoia, and others. Another required criterion for clinically probable TE is the 'persistence of both symptoms and signs for at least two years after the traumatic exposure' [27]. This is not consistent with numerous cases of neuropathologically confirmed CTE for which a delayed onset of the clinical presentation is often observed, representing the neurodegenerative nature of the disease [2,14]. An additional limitation to the Victoroff criteria is the lack of any subtyping of the clinical presentation. That is, the same diagnosis of clinically probable TE could be given to an 80-year-old with memory loss, mental slowing, headache, and nystagmus and to a 22-year-old with depression, anxiety, irritability, and anger. This lack of diagnostic subtyping for a condition with such clinically diverse signs and symptoms would reduce the utility of the criteria for research aimed at elucidating specific clinico-pathological relationships or clinical trials requiring greater specificity of diagnosis to ensure meaningful target outcomes. The criteria are presented in a single table without accompanying descriptive prose, making implementation of the criteria potentially subject to individual interpretation. Finally, the Victoroff criteria do not include or recommend the future use of objective diagnostic tests, such as neuroimaging or other potential biomarkers, to improve upon the diagnostic accuracy, specificity, or ability to detect CTE during life.

## Proposed research diagnostic criteria for traumatic encephalopathy syndrome

We propose research diagnostic criteria that address many of the limitations of the previously published criteria by Jordan [35,40,41] and Victoroff [27]. These new criteria are derived from the previous literature on CTE reviewed above as well as the specific findings from the studies by Stern and colleagues [14] and McKee and colleagues [2] on the clinical presentation of neuropathologically confirmed cases of CTE. The term 'traumatic encephalopathy syndrome' (TES) was selected instead of 'chronic traumatic encephalopathy' (CTE) for the following reasons:

Case 2:15-cv-02724-DOA Document 7209-1 73ile 1D/16/File Pag0/08/20/254

(1) we view the designation 'CTE' as a neuropathologically defined disease (which is defined by the characteristic deposition of p-tau pathology) rather than a clinical syndrome; (2) TES is meant to describe the clinical presentation of CTE as well as other possible long-term consequences of repetitive head impacts (for example, chronic or progressive axonopathy without tauopathy) but is not meant to include the acute or post-acute manifestations of a single concussion, post-concussion syndrome, or moderate to severe TBI; (3) the use of the word 'chronic' in CTE inaccurately connotes a stable condition rather than a progressive disorder [27]; and (4) the inclusion of the term 'syndrome' appropriately describes the cluster of clinical features that make up this condition. The proposed research diagnostic criteria for TES include five general criteria, three core clinical features, and nine supportive features that are used to define subtypes of TES: a behavioral/mood variant, a cognitive variant, a mixed variant, and TES dementia. The modifiers 'progressive course', 'stable course', and 'unknown/inconsistent course' are used to describe the clinical course, and if specific motor signs are evident, the modifier 'with motor features' is added.

The selection of the five general criteria was based on the literature reviewed above and was designed to favor sensitivity over specificity. This decision is consistent with the previously published diagnostic criteria [27,35] and is appropriate at this early stage of clinical research into this area. To be included as a core clinical feature, the sign or symptom must have been reported in a minimum of 70% of the cases in the study by Stern and colleagues [14] of neuropathologically confirmed cases of pure CTE. This is in contrast to the algorithm employed in the Victoroff [27] diagnostic criteria for which a sign or symptom was included if it was present in at least 7% of the case reports he reviewed from the literature. The nine supportive features were selected to increase specificity once the general criteria are met and are based on features reported in the previous literature.

The clinical diagnosis of TES is not meant to imply a certainty of underlying CTE neuropathological changes (for example, p-tau accumulation). Rather, TES is meant to be a diagnosis of a clinical syndrome associated with a history of repetitive brain trauma. It is expected that some individuals with TES do indeed have CTE neuropathological changes. However, it is also possible that some individuals with TES have other underlying causes of their clinical presentation, including, but not limited to, progressive white matter degeneration [55] or AD. For this reason, a separate diagnostic classification for 'possible CTE', 'probable CTE', and 'unlikely CTE' is included, based on the presence of additional supportive features, such as biomarkers, which indicate the degree to which the underlying etiology of the clinical presentation of TES is likely due to the CTE pathophysiological process. Finally, we offer six cases (see boxes) as exemplars of the implementation of the TES criteria; each case is a composite of several patients and is created specifically for this purpose.

At this time, risk factors for CTE (above and beyond brain trauma) remain unknown. Among possible variables under investigation by our group and other laboratories are the quantity or severity (or both) of the brain trauma, the initial age and overall duration of head impact exposure, lifestyle factors, and genetic susceptibility. Based on current research findings, it is expected that TES is the clinical manifestation of underlying damage or dysfunction of cortical or subcortical brain structures (or both) and is associated with a history of repetitive brain trauma, including both symptomatic concussions and subconcussive trauma. Although some investigators have suggested that a single moderate to severe TBI may lead to CTE [37] or AD [56] or both, the use of the clinical diagnosis of TES at this time is meant to be used for individuals with repetitive impacts to the head, as defined below. We have included a requirement for a specific minimal amount of exposure to head impacts. This is based on previous findings of post-mortem confirmed CTE cases [1,2,5,50] and will be subject to revisions as additional research is conducted on exposure variables.

## General criteria for traumatic encephalopathy syndrome

All five criteria must be met for a diagnosis of TES:

1. History of multiple impacts to the head (or to the body resulting in impulsive force transmitted to the head). Multiple impacts are defined based upon (a) the types of injuries and (b) the source of exposure.
   a. Types of injuries:
      i) Mild TBI or concussion, defined according to the Zurich 2012 Consensus Statement on Concussion in Sport [57] as a 'complex pathophysiological process affecting the brain, induced by biomechanical forces...caused either by a direct blow to the head, face, neck or elsewhere on the body with an "impulsive" force transmitted to the head...the acute clinical symptoms largely reflect a functional disturbance rather than a structural injury and, as such, no abnormality is seen on standard structural neuroimaging studies. Concussion results in a graded set of clinical symptoms that may or may not involve loss of consciousness'. History of this form of trauma can be based on documented records from health-care providers or on self- or informant-reports, after being given an appropriate definition of 'concussion' [58]. If there is no reported exposure to other

Montenigro et al. Alzheimer's Research & Therapy 2014, 6:68
http://alzres.com/content/6/8/68

repetitive hits to the head, there should be a minimum of four documented mild TBIs or concussions.

   ii) Moderate/severe TBI, defined as having loss of consciousness of at least 30 minutes, alteration of consciousness/mental state of more than 24 hours, post-traumatic amnesia of more than 24 hours, and Glasgow Coma Scale score of less than 13 [59]. If there is no reported exposure to other repetitive hits to the head, there should be a minimum of two moderate/severe TBIs.

   iii) 'Subconcussive' trauma, defined as biomechanical force to the head or body similar to, or less than, that required for symptomatic concussion but without symptoms and clinical presentation consistent with concussion [3,4].

  b) Source of exposures:

   i. Involvement in 'high exposure' contact sports (including, but not limited to, boxing, American football, ice hockey, lacrosse, rugby, wrestling, and soccer) for a minimum of 6 years, including at least 2 years at the college level (or equivalent) or higher.

   ii. Military service (including, but not limited to, combat exposure to blast and other explosions as well as non-combat exposure to explosives or to combatant or breach training).

   iii. History of any other significant exposure to repetitive hits to the head (including, but not limited to, domestic abuse, head banging, and vocational activities such as door breaching by police).

   iv. For moderate/severe TBI, any activity resulting in the injury (for example, motor vehicle accident).

2) No other neurological disorder (including chronic residual symptoms from a single TBI or persistent post-concussion syndrome) that likely accounts for all clinical features, although concomitant diagnoses of substance abuse, post-traumatic stress disorder (PTSD), mood/anxiety disorders, or other neurodegenerative diseases (for example, AD and frontotemporal dementia) or a combination of these can be present.

3) Clinical features must be present for a minimum of 12 months. However, if treatment (for example, 'antidepressant' medication) results in an improvement in select symptoms, the clinician should use her or his best judgment to decide whether the symptoms would have persisted or progressed if treatment had not been initiated.

4) At least one of the core clinical features must be present and should be considered a change from baseline functioning.

5) At least two supportive features must be present.

## Core clinical features of traumatic encephalopathy syndrome

At least one of the core clinical features must be present:

1) *Cognitive.* Difficulties in cognition:
   a) as reported by self or informant, by history of treatment, or by clinician's report of decline; and
   b) substantiated by impairment on standardized mental status or neuropsychological tests of episodic memory, executive function, and/or attention, as defined by scores at a level of at least 1.5 standard deviations below appropriate norms.

2) *Behavioral.* Being described as emotionally explosive (for example, having a 'short fuse' or being 'out of control'), physically violent, and/or verbally violent, as reported by self or informant, by history of treatment, or by clinician's report. A formal diagnosis of intermittent explosive disorder would meet this criterion but is not necessary.

3) *Mood.* Feeling overly sad, depressed, and/or hopeless, as reported by self or informant, by history of treatment, or by clinician's report. A formal diagnosis of major depressive disorder or persistent depressive disorder would meet this criterion but is not necessary.

## Supportive features of traumatic encephalopathy syndrome

A minimum of two of the following features must be present for a diagnosis of TES:

1) *Impulsivity.* Impaired impulse control, as demonstrated by new behaviors, such as excessive gambling, increased or unusual sexual activity, substance abuse, excessive shopping or unusual purchases, or similar activities.

2) *Anxiety.* History of anxious mood, agitation, excessive fears, or obsessive or compulsive behavior (or both), as reported by self or informant, history of treatment, or clinician's report. A formal diagnosis of anxiety disorder would meet this criterion but is not necessary.

3) *Apathy.* Loss of interest in usual activities, loss of motivation and emotions, and/or reduction of voluntary, goal-directed behaviors, as reported by self or informant, history of treatment, or clinician's report.

4) *Paranoia.* Delusional beliefs of suspicion, persecution, and/or unwarranted jealousy.

5) *Suicidality.* History of suicidal thoughts or attempts, as reported by self or informant, history of treatment, or clinician's report.

6) *Headache.* Significant and chronic headache with at least one episode per month for a minimum of 6 months.

7) *Motor signs.* Dysarthria, dysgraphia, bradykinesia, tremor, rigidity, gait disturbance, falls, and/or other

Case 2:15-cv-01023-DGC Document 62-1 Filed 10/08/20 Page 11 of 17

Montenigro et al. Alzheimer's Research & Therapy 2014, 6:68
http://alzres.com/content/6/8/68

features of parkinsonism. If present, the modifier 'with motor features' should be used (see below).

8) *Documented decline.* Progressive decline in function and/or a progression in symptoms and/or signs, based upon repeated formal testing, clinician examination, or other formal measurement (for example, informant questionnaire) for a minimum of 1 year.

9) *Delayed onset.* Delayed onset of clinical features after significant head impact exposure, usually at least 2 years and in many cases several years after the period of maximal exposure. It should be noted, however, that individual cases may begin to develop the clinical features of TES during their period of head impact exposure (for example, while still actively involved in a collision sport), especially older individuals or those who have been engaged in the high-exposure activity for many years. It may also be difficult to differentiate the clinical presentation of prolonged or persistent post-concussion syndrome (pPCS) from that of TES. Therefore, there could be cases for whom there is overlap of resolving pPCS and the initial features of TES, thus masking any delayed onset of TES.

## Traumatic encephalopathy syndrome diagnostic subtypes}

1) TES behavioral/mood variant (TES-BMv)
   a) Behavioral or mood core features (or both) without cognitive core features.
2) TES cognitive variant (TES-COGv)
   a) Cognitive core features without behavioral or mood core features (or both).
3) TES mixed variant (TES-MIXv)
   a) Both cognitive core features and behavioral or mood core features (or both).
4) TES dementia (TES-D)
   a) Progressive course of cognitive core features with or without behavioral or mood core features (or both).
   b) Evidence of 'functional impairment', defined as cognitive impairment (or cognitive impairment exacerbated by behavioral or mood impairment or both) that is severe enough to interfere with the ability to function independently at work or in usual activities, including hobbies, and instrumental activities of daily living. The determination of functional impairment is based on clinician's judgment, taking into account informant reports as well as consideration of individual differences with regard to level of expected responsibility and daily challenges.
   c) If the clinical presentation is not distinguishable from that of dementia due to AD or another neurodegenerative disease (for example,

frontotemporal dementia), both diagnoses may be given, either with one being 'primary' and the other being 'secondary' or with the term 'mixed' used if neither is presumed primary.

## 'With motor features' modifier

For each TES subtype, the modifier 'with motor features' should be added if the individual demonstrates dysarthria, dysgraphia, bradykinesia, tremor, rigidity, gait disturbance, falls, and/or other features of parkinsonism.

## Clinical course

For each TES subtype, one of the following additional modifiers should be selected: 'stable course', to be used when the history or objective testing (or both) indicates that there has been little if any change in symptoms, signs, or other measures; 'progressive course', to be used when there is a clear indication of progressive worsening of clinical features for at least a 2-year period; and 'unknown/inconsistent course', to be used when either there is too little information available about the clinical course or the course has been inconsistent, with periods of stability, worsening, and/or improvement. By definition, TES dementia has a progressive course and does not require this modifier.

## 'Possible CTE' and 'probable CTE'

As stated above, CTE is a neuropathological diagnosis, whereas TES is a clinical diagnosis. As with other neurodegenerative diseases, such as AD, it is not possible at this time to diagnose the underlying disease with certainty during life. However, again as with other neurodegenerative diseases and in keeping with the diagnostic criteria for CTE proposed by Jordan [35,40,41], we propose provisional diagnostic classifications of 'probable CTE', 'possible CTE', and 'unlikely CTE'. Because the scientific study of the clinical presentation of CTE is only in its infancy, it is not yet possible to create meaningful diagnostic criteria for 'probable CTE' based solely on clinical features and course, such as those employed for the National Institute on Aging-Alzheimer's Association (NIA-AA) AD diagnostic criteria for probable AD dementia [60], a condition that has been carefully studied for many decades. Rather, we propose, as a starting point, several potential *in vivo* biomarkers for CTE that can be used to support a provisional diagnosis of 'probable CTE'. This diagnosis would be analogous to the NIA-AA diagnosis of probable AD dementia with evidence of the AD pathophysiological process [60]. However, because of the early stage of research into potential CTE biomarkers, we refrain from using this type of nomenclature. The following list of potential biomarkers for underlying CTE is meant only as a guideline at this early point in CTE diagnostic research. Many of these biomarkers are the focus of current research but have not yet been

Case 2:15-cv-02470-DGC Document 62-1 Filed 10/08/20 Page 1734 of 1878

formally validated. Future biomarker validation studies will likely add to or delete (or both) items on this list. Moreover, we do not in any way recommend that the specific tests used for these potential biomarkers be conducted for clinical purposes at this time.

## Potential biomarkers for the diagnosis of probable chronic traumatic encephalopathy

1) *Cavum septum pellucidum.* Report of cavum septum pellucidum, cavum vergae, or fenestrations based on neuroimaging study.
2) *Normal beta amyloid cerebrospinal fluid (CSF) levels.* CSF beta amyloid levels in the normal range for age and not diminished as would be suggestive of AD.
3) *Elevated CSF p-tau/tau ratio.* CSF p-tau/total tau ratio above the normal range for age.
4) *Negative amyloid imaging.* PET amyloid imaging (for example, florbetapir and flutemetamol) in the normal range, not suggestive of AD.
5) *Positive tau imaging.* PET paired helical filament tau imaging suggestive of abnormal tau deposition. It should be noted that this remains an experimental procedure and requires additional validation prior to its use as a research tool for diagnostic purposes.
6) *Cortical thinning.* Based on magnetic resonance imaging (MRI) measurement, evidence of abnormal cortical thinning indicative of neurodegeneration.
7) *Cortical atrophy.* Based on MRI or computed tomography, generalized cortical atrophy beyond what is expected for age, and, in particular, frontal, thalamic, hippocampal, and/or amygdalar atrophy.

## Chronic traumatic encephalopathy classification

1) Probable CTE. Meets classification for any TES subtype, progressive course; does not meet diagnostic criteria for another disorder more consistently than TES; and has a minimum of one positive potential biomarker for CTE.
2) Possible CTE. Meets classification for any TES subtype, progressive course, and (1) has not undergone any potential biomarker testing, (2) has had negative results on one or more biomarkers with the exception of PET tau imaging (that is, if a negative PET tau imaging finding, the current classification would be 'unlikely CTE'), or (3) meets the diagnostic criteria for another disorder that, on its own, could account for the clinical presentation.
3) Unlikely CTE. Does not meet TES diagnostic criteria or has had a negative PET tau imaging scan or both.

Case A   A 45-year-old married man with a history of playing multiple contact sports, including soccer (ages 5 to 13), hockey (ages 7 to 12), and football (ages 9 to 22) presented to his primary care physician. He played college football at a Division 1 university and was an offensive lineman. He had no reported or formally diagnosed concussions, although when provided with a definition of concussion, he stated that he likely had 20 to 30 throughout high school and college. Since graduating from college, he has worked as an auditor for state government. His work performance evaluations had been routinely positive, although in the past two years they have been marred by reports of 'careless errors', reduced productivity, and one episode of yelling at his immediate supervisor. His wife of 16 years reports that he has had a 5- to 7-year history of worsening behavior, with frequent episodes of having a 'short fuse' and losing his temper with their two young children. Though always a social drinker, he has had frequent episodes of binge drinking over the past 2 to 3 years. She states that his personality has changed from a kind, even-keeled, loving man to an argumentative, explosive, and moody individual. Both he and his wife state that he was high-functioning, without any cognitive, mood, and behavioral problems during the time period between college and about age 35. He recently underwent formal neuropsychological evaluation that demonstrated moderately impaired sustained attention, mildly impaired delayed recall on a word list, and moderately impaired executive functioning as measured by a card-sorting test. All other areas of functioning were within the normal range. A self-report measure of syndromal depression indicated mild to moderate severity. Other than the recent work-performance evaluations, there were no other reports of significant functional decline. The result of a recent brain MRI was unremarkable other than some mild, scattered white matter abnormalities. Other medical history, laboratory findings, and neurological examination were unremarkable. Diagnosis: TES-MIXv, progressive course; possible CTE.

Case B   A 31-year-old single female Army veteran was referred to the VA Medical Center Behavioral Health Clinic for a 14-month history of suicidal thoughts, agitation, and aggressive behavior. She had reached the rank of staff sergeant and was a logistics specialist. She was honorably discharged 1 year ago, began working in her family's grocery store, but had to stop

Montenegro et al. Alzheimer's Research & Therapy 2014, **6**:68
http://alzres.com/content/6/8/68

working 6 months ago because of her neuropsychiatric symptoms. She had two deployments to Afghanistan and denied being directly involved in combat. However, she reported that 20 months prior to her discharge, she was thrown off a truck when it struck an improvised explosive device. She was told she landed on her head and lost consciousness for 2 to 3 minutes. Upon regaining consciousness, she reported 'seeing stars' and had a headache that lasted 3 to 4 days. She denied these symptoms to the medic when questioned and remained on active duty. About 3 months later, a heavy box fell on her head, throwing her to the floor. She denied loss of consciousness but was nauseated and had balance difficulties for several hours. She complained of being in a fog and irritable for 2 days following the accident. Her tour of duty ended 2 weeks later and she returned home. Other than those two injuries, she denied any TBIs or concussions. These symptoms completely cleared, and she described her functioning, including her mood, as 'completely fine' between that time and about 14 months ago. Prior to enlisting, she was an avid ice hockey player, having played since the age of 5, and was the captain of her high school team. Her medical and psychiatric histories were unremarkable, and laboratory results of tests ordered by her primary care physician were normal. At the current evaluation, a mental status examination was conducted and the results were generally within normal limits. She denied having any cognitive complaints. A psychiatric interview revealed significant overall distress, with suicidal ideation without any active plan. Her primary complaints included poor sleep, sadness, anxiety, agitation, and being overly aroused by loud noises. She denied having any flashbacks or night terrors. A sibling was interviewed and corroborated the description and history but added that for the past year she had been verbally aggressive and explosive, frequently yelling at family members for no apparent reason, and that these episodes seemed to turn off and on without any warning. The sibling stated that these abnormal behaviors have been somewhat consistent over the past year. A PTSD specialist examined the patient, reported that she would not meet criteria for PTSD, and questioned whether the symptoms were residual from her TBIs in Afghanistan.

The result of a brain MRI was unremarkable. Diagnosis: TES-BMv, stable course; possible CTE.

Case C   A 59-year-old man presented to his primary care physician with complaints of progressive memory and concentration problems. Prior to going to college, the patient entered the Army, where he boxed competitively for 4 years. He did not experience any combat. He was an avid rugby player in college and continued playing in formal competitive clubs until the age of 54, when he stopped because of a cervical disk injury. He received an MBA and had been a successful business consultant. He was divorced at the age of 45 and lived alone. He reported one concussion at the age of 30, when he briefly lost consciousness during a rugby game, although he stated he got his 'bell rung' countless times in boxing and rugby. He reported to his primary care physician that he had been having difficulty remembering details of conversations and meetings at work and that this was beginning to interfere with his productivity. His medical history was significant for the cervical disk injury and for migraine headaches for many years. He was referred to a local academic medical center memory clinic, where a formal neuropsychological evaluation demonstrated moderately impaired performance on a word list recall task, compared with age and education norms, as well as severely impaired fine motor dexterity. All other areas were intact, although his performance on a measure of psychomotor speed and response set maintenance was slightly below expected levels given his history. A neurological examination revealed mild bilateral resting tremor and mild upper extremity rigidity. An MRI scan was read as normal, and all laboratory findings were within normal limits. As part of a clinical research study, he was given two PETs: one with a new tau radiotracer and another with an amyloid tracer. Results indicated no meaningful amyloid uptake, although his tau scan was abnormal with scattered increased tracer uptake in the dorsolateral frontal cortex and the medial temporal lobes. Diagnosis: TES-COGv, with motor features, progressive course; probable CTE.

Case D   A 69-year-old former National Football League (NFL) football player was seen in consultation following a 10-year progressive decline. He had seen several physicians and

Montenigro et al. Alzheimer's Research & Therapy 2014, 6:68
http://alzres.com/content/6/8/68

had been given multiple diagnoses, including frontotemporal dementia and dementia due to AD. He had played professional football for 9 years as a linebacker. He began playing football in high school and played for a Division 1 college for 4 years, playing both as a linebacker and as an offensive lineman. Following retirement from the NFL, he had a successful career in commercial real estate until he was forced to retire at the age of 62 because of 'poor decision-making and judgment'. His wife of 25 years stated that, in retrospect, he was demonstrating poor memory and judgment for about 3 years prior to his retirement and that these problems had progressively worsened through the years. She stated that he also began having significant difficulties with multi-tasking and 'numbers' at age 61 and was having difficulty with household finances and hobbies. After retirement, he became increasingly withdrawn and refused to socialize. In contrast to his previous jovial and easy-going manner, he became verbally aggressive toward his wife and children, 'blowing up over small things'. On two occasions, he became physically aggressive toward his wife, requiring her to call the police. He never demonstrated any disinhibited or socially inappropriate behavior, nor was there any report of hallucinations or movement disturbance. In the past 2 years, his functioning has worsened; he now has no 'short-term memory', watches television all day long, and has an erratic sleep cycle. He is functionally impaired in all instrumental activities of daily living as well as in some basic activities of daily living. His medical history is significant for a myocardial infarction at age 54, hypertension, severe arthritis, and multiple lumbar disk surgeries. There is no family history of dementia. Upon examination, he was disoriented to time and place, was perseverative, and could not recall recent current events. He exhibited some frontal release signs, although the result of his motor examination was otherwise normal. His Mini-Mental Status Exam score was 9, and his Clinical Dementia Rating was 2.0. A neuropsychological evaluation was conducted and demonstrated severe episodic memory impairment as well as profoundly impaired performance on most tests of executive functioning. In contrast, attentional capacity was within normal limits and language was relatively intact. A brain MRI revealed significant global

atrophy with marked hippocampal atrophy as well as a cavum septum pellucidum. An amyloid PET scan demonstrated only minimal uptake, not commensurate with the degree of dementia. Diagnosis: TES-D; probable CTE.

Case E    A 31-year-old male stockbroker saw his primary care physician because of an 18-month history of recurrent headaches, irritability, agitation, and a worsening 'short fuse'. He had been taking oxycodone (left over from previous oral surgery) for his headache pain. He was referred to a neurologist, who specialized in headache and who diagnosed him with tension headache. However, when asked if he had ever had headaches previously, the patient reported that he frequently had them as a teenager after his varsity high school football games and when he played rugby for 2 years in college. Because of this history of prior exposure to repetitive head impacts and possible symptomatic concussions, the neurologist referred him to a psychiatrist colleague to evaluate him for possible depression and suicidality, based on the neurologist's belief that the patient might have CTE; he had recently attended a talk on sports injuries. The consulting psychiatrist interviewed the patient, who acknowledged that he had frequent suicidal ideation following the breakup of his marriage about 1 year earlier but that these thoughts had now diminished. Although the patient formally met criteria for TES-BMv, the psychiatrist felt that the headache symptoms, suicidality, short fuse, and irritability were likely associated with the divorce. The patient was prescribed citalopram as well as regular therapeutic massage for his tension headache and was seen in 3 months, at which time he reported substantial improvement of his mood and behavioral symptoms and a complete resolution of his headaches. Diagnosis: adjustment disorder, persistent with mixed anxiety and depressed mood; unlikely CTE.

Case F    An 81-year-old widowed man enrolled in a research study examining the long-term consequences of TBI. He reported having sustained a moderate TBI in a motor vehicle accident at the age of 46 with loss of consciousness for approximately 1 hour. He was hospitalized for 3 days because of confusion and memory difficulties that mostly resolved prior to discharge. He was unable to return to work as a high school physical education teacher and coach for several weeks because of continued cognitive difficulties, headache, and

Case 2:25-cv-01023-DCA Document 6 Page 41737 Filed 10/08/2024 Page 15 of 17

Montenigro et al. Alzheimer's Research & Therapy 2014, 6:68
http://alzres.com/content/6/8/68

balance problems. He reported that, once he returned to work, he 'didn't feel normal' for several months. He continued working until retirement at age 60. He played high school and college football and reported having had his 'bell rung' 'all the time'. According to his adult son (with whom he lived), he was 72 when he began having memory problems that gradually progressed over the course of 5 to 6 years. In the past few years, the memory problems worsened significantly, such that he could not recall events that occurred more than an hour earlier. In addition, he had worsening problems with judgment, decision-making, multi-tasking, and word-finding. He no longer drove and was dependent in most areas of instrumental activities of daily living. He lacked interest in all activities and appears 'depressed' according to his son. His medical history was significant for prostate cancer, controlled hypertension, arthritis, and glaucoma. Two brothers died in their 80s with 'dementia'. Neuropsychological testing revealed significant impairments in episodic memory, confrontation naming, psychomotor speed, and many aspects of executive functioning. Research-based MRI revealed frontal and temporal atrophy and a pronounced cavum septum pellucidum; diffusion tensor imaging and tractography demonstrated significant reductions in corpus callosum fiber bundles. PET amyloid imaging showed elevated uptake consistent with AD. Diagnosis: dementia due to AD pathophysiological process and TES-D, mixed; possible CTE.

The current proposed research diagnostic criteria for TES are meant to be a starting point that should be modified and updated as new research findings in the field become available and as future research using these criteria are published. These proposed criteria are not meant to be used for a clinical diagnosis or as evidence of an underlying disease. Rather, they should be viewed as research criteria that could be employed in studies of the underlying causes, risk factors, differential diagnosis, prevention, and treatment of TES. Future studies comparing these proposed diagnostic categories with post-mortem neuropathological diagnoses, as well as with appropriate *in vivo* biomarkers for CTE and other conditions, will help lead to the transition from 'research' criteria to 'clinical' criteria. It also would be critical for these proposed criteria to undergo a formal expert consensus approval process, such as that used for the NIA-AA Diagnostic Guidelines for Alzheimer's Disease [60].

One important factor that must be addressed in future iterations of these criteria is that of base rates. That is, the population prevalence of most of the core clinical features and many of the supplemental features of TES presented below is relatively high. Therefore, it is possible to meet criteria for TES and yet have an idiopathic disorder or a situationally based condition that is unrelated to the earlier history of head impact exposure. The inclusion of supportive features is meant to reduce this lack of specificity to a degree, but, at this time, we acknowledge that these criteria will likely result in very high sensitivity at the expense of specificity. With the utilization of future research findings and subsequent criteria revisions, it is likely that the specificity will increase. An important additional issue regarding the use of these criteria involves the impact of litigation or disability determination (or both) on the validity of symptom reporting and neuropsychological test performance. It is therefore recommended that this issue be taken into account when interpreting the individual's self-reported functioning and test performance and that formal symptom validity checking be conducted as part of any formal evaluation. Until future research yields accurate biomarkers and allows clarification and modification of the proposed criteria, the decision as to whether an individual meets the TES diagnostic criteria and associated 'probable CTE' diagnostic criteria should be left up to the individual researcher, clinician, or, preferably, a multidisciplinary diagnostic adjudication process.

## Conclusions

The long-term consequences of repetitive head impacts have been known since the beginning of the 20th century. Although the clinical presentation of CTE is varied and non-specific, there are adequate reports to date to suggest that there may be two clinical subtypes: one subtype involving primarily behavioral or mood features (including explosivity or violence) or both, and the other involving cognitive deficits (including impairments in episodic memory, executive functioning, and attention). Many individuals progress to dementia, with impaired functional independence, and some individuals develop motor impairments (including parkinsonism, ataxia, and dysarthria). We propose research diagnostic criteria for TES that we hope will facilitate research into this area. There are expected limitations to the development of diagnostic criteria based primarily on a relatively small number of case reports. The goal of proposing these criteria at this time is to facilitate research in this nascent area of study. It is expected that these criteria will undergo modification and revision as new research findings become available, additional biomarkers are validated, and future research using these criteria are published.

Montenigro et al. Alzheimer's Research & Therapy 2014, 6:68
http://alzres.com/content/6/8/68

Page 16 of 17

Note: This article is part of a series on *Traumatic brain injury*, edited by Robert Stern. Other articles in this series can be found at http://alzres.com/series/traumaticbraininjury

## Abbreviations

AD: Alzheimer's disease; CSF: Cerebrospinal fluid; CTE: Chronic traumatic encephalopathy; MRI: Magnetic resonance imaging; NFL: National Football League; NIA-AA: National Institute on Aging-Alzheimer's Association; PET: Positron emission tomography; pPCS: Persistent post-concussion syndrome; p-tau: Phosphorylated tau; PTSD: Post-traumatic stress disorder; TBI: Traumatic brain injury; TE: Traumatic encephalopathy; TES: Traumatic encephalopathy syndrome; TES-BMv: Traumatic encephalopathy syndrome behavioral/mood variant; TES-COGv: Traumatic encephalopathy syndrome cognitive variant; TES-D: traumatic encephalopathy syndrome dementia; TES-MIXv: Traumatic encephalopathy syndrome mixed variant.

## Competing interests

AEB receives royalties for published books from Elsevier (Amsterdam, The Netherlands) and Wiley-Blackwell (Hoboken, NJ, USA). RCC receives compensation from the NFL as senior advisor to the Head Neck and Spine Committee, from the National Operating Committee on Safety of Athletic Equipment as chairman of the Scientific Advisory Committee, and from Sports Legacy Institute as co-founder and medical director for some talks given. He receives royalties from Houghton Mifflin Harcourt (Boston, MA, USA) and compensation from expert legal opinion. RAS has received research funding from the NFL and the NFL Players Association. He is a member of the Mackey-White Traumatic Brain Injury Committee of the NFL Players Association. He is a paid consultant to Athena Diagnostics (Marlborough, MA, USA) and has been a consultant to Janssen Alzheimer Immunotherapy (South San Francisco, CA, USA) and Eli Lilly and Company (Indianapolis, IN, USA). He receives royalties for published neuropsychological tests from Psychological Assessment Resources, Inc (Lutz, FL, USA) as well as compensation from expert legal opinion. The other authors declare that they have no competing interests.

## Acknowledgments

The authors wish to thank the following individuals for their contributions to this article: Nathan Fritts, Michael McClean, David Riley, Clifford Robbins, Daniel Seichepine, Julie Stamm, Yorghos Tripodis, and Florina Tynyanova. The preparation and writing of this article were supported, in part, through the following: National Institutes of Health (NIH) grants R01 NS078337 and P30 AG13846 and US Department of Defense grant W81XWH-13-2-0064. These funding agencies played no role in the writing of the manuscript or the decision to submit it. DHD and JM receive funding through NIH grant U01NS086659. AEB receives funding through NIH grant P30 AG13846 and the US Department of Veterans Affairs. RA receives funding through NIH grants AG016495-11, NS17950, AG08122, AG029451, AG033040, AG033193, HL096917, and DARPA-BAA-11-65. RAS receives funding through NIH grants R01 NS078337, R01 MH080295, R01 CA129769, U01 NS086659, and P30 AG13846 and US Department of Defense grant W81XWH-13-2-0064. PHM, CMB, DIK, and RCC receive no external funding.

## Author details

¹Department of Anatomy and Neurobiology, Boston University School of Medicine, 72 East Concord Street, Boston, MA 02118, USA. ²Department of Neurology, Boston University School of Medicine, 72 East Concord Street, Boston, MA 02118, USA. ³Behavioral Neurosciences Program, Boston University School of Medicine, 72 East Concord Street, Boston, MA 02118, USA. ⁴BU Alzheimer's Disease Center, Boston University School of Medicine, 72 East Concord Street, Boston, MA 02118, USA. ⁵VA Boston Healthcare System, 150 S Huntington Avenue, Boston, MA 02130, USA. ⁶Framingham Heart Study, National Heart, Lung and Blood Institute, 72 East Concord Street, Boston, MA 02118, USA. ⁷Braintree Rehabilitation Hospital, 250 Pond Street, Braintree, MA 02184, USA. ⁸Department of Neurosurgery, Boston University School of Medicine, 73 East Concord Street, Boston, MA 02118, USA. ⁹Department of Neurosurgery, Emerson Hospital, 131 Old Road, Suite 820, Concord, MA 01742, USA.

Published online: 24 September 2014

## References

1. McKee AC, Cantu RC, Nowinski CJ, Hedley-Whyte ET, Gavett BE, Budson AE, Santini VE, Lee HS, Kubilus CA, Stern RA: Chronic traumatic encephalopathy in athletes: progressive tauopathy after repetitive head injury. *J Neuropathol Exp Neurol* 2009, 68:709–735.
2. McKee AC, Stern RA, Nowinski CJ, Stein TD, Alvarez VE, Daneshvar DH, Lee HS, Hall G, Wojtowicz SM, Baugh CM, Riley DO, Kubilus CA, Cormier KA, Jacobs MA, Martin BR, Abraham CR, Ikezu T, Reichard RR, Wolozin BL, Budson AE, Goldstein LE, Kowall NW, Cantu RC: The spectrum of disease in chronic traumatic encephalopathy. *Brain* 2013, 136:43–64.
3. Bailes JE, Petraglia AL, Omalu BI, Nauman E, Talavage T: Role of subconcussion in repetitive mild traumatic brain injury: a review. *J Neurosurg* 2013, 119:1235–1245.
4. Baugh CM, Stamm JM, Riley DO, Gavett BE, Shenton ME, Lin A, Nowinski CJ, Cantu RC, McKee AC, Stern RA: Chronic traumatic encephalopathy: neurodegeneration following repetitive concussive and subconcussive brain trauma. *Brain Imaging Behav* 2012, 6:244–254.
5. Goldstein LE, Fisher AM, Tagge CA, Zhang X-L, Velisek L, Sullivan JA, Upreti C, Kracht JM, Ericsson M, Wojnarowicz MW, Goletiani CJ, Maglakelidze GM, Casey N, Moncaster JA, Minaeva O, Moir RD, Nowinski CJ, Stern RA, Cantu RC, Geiling J, Blusztajn JK, Wolozin BL, Ikezu T, Stein TD, Budson AE, Kowall NW, Chargin D, Sharon A, Saman S, Hall GF, *et al*: Chronic traumatic encephalopathy in blast-exposed military veterans and a blast neurotrauma mouse model. *Sci Transl Med* 2012, 4:134.
6. Johnson VE, Stewart W, Smith DH: Widespread τ and amyloid-β pathology many years after a single traumatic brain injury in humans. *Brain Pathol* 2012, 22:142–149.
7. Langlois JA, Rutland-Brown W, Wald MM: The epidemiology and impact of traumatic brain injury: a brief overview. *J Head Trauma Rehabil* 2006, 21:375–378.
8. Gilchrist J, Thomas KE, Xu LK, McGuire LC, Coronado V: Nonfatal traumatic brain injuries related to sports and recreation activities among persons aged ≤ 19 years - United States, 2001-2009. *Morb Mortal Wkly Rep* 2011, 60:1337–1342.
9. Martini D, Eckner J, Kutcher J, Broglio SP: Subconcussive head impact biomechanics: comparing differing offensive schemes. *Med Sci Sports Exerc* 2013, 45:755–761.
10. Broglio SP, Eckner JT, Martini D, Sosnoff JJ, Kutcher JS, Randolph C: Cumulative head impact burden in high school football. *J Neurotrauma* 2011, 28:2069–2078.
11. Anzell AR, Potteiger JA, Kraemer WJ, Otieno S: Changes in height, body weight, and body composition in American football players from 1942 to 2011. *J Strength Cond Res* 2013, 27:277–284.
12. Lin AP, Ramadan S, Stern RA, Box HC, Nowinski CJ, Ross BD, Mountford CE: Changes in the neurochemistry of athletes with repetitive brain trauma: preliminary results using 2D correlated spectroscopy. *Alzheimer Res Ther*. in press.
13. Ng TSC, Lin AP, Koerte IK, Pasternak O, Liao H, Merugumala S, Bouix S, Shenton ME: Neuroimaging in repetitive brain trauma. *Alzheimer Res Ther* 2014, 6:10.
14. Stern RA, Daneshvar DH, Baugh CM, Seichepine DR, Montenigro PH, Riley DO, Fritts NG, Stamm JM, Robbins CA, McHale L, Simkin I, Stein TD, Alvarez VE, Goldstein LE, Budson AE, Kowall NW, Nowinski CJ, Cantu RC, McKee AC: Clinical presentation of chronic traumatic encephalopathy. *Neurology* 2013, 81:1122–1129.
15. Martland H: Punch drunk. *JAMA* 1928, 91:1103–1107.
16. Parker HL: Traumatic encephalopathy ('punch drunk') of professional pugilists. *J Neurol Psychopathol* 1934, 15:20.
17. Millspaugh JA: Dementia pugilistica. *US Naval Med Bulletin* 1937, 35:297–361.
18. Ravina A: Traumatic encephalitis or punch drunk. *Presse Med* 1937, 45:1362–1364.
19. La Cava G: The injuries of boxing. *Deutscher Sportärzte Kongress* 1952, 79:817.
20. Courville CB: Punch drunk, its pathogenesis and pathology on the basis of a verified case. *Bull Los Angel Neuro Soc* 1962, 27:160–168.
21. Serel M, Jaros O: The mechanisms of cerebral concussion in boxing and their consequences. *World Neur* 1962, 3:351–358.
22. Mawdsley C, Ferguson FR: Neurological disease in boxers. *Lancet* 1963, 2:799–801.
23. Critchley M: *Punch-Drunk Syndromes: The Chronic Traumatic Encephalopathy of Boxers. Hommage a Clovis Vincent.* Paris: Maloine; 1949.
24. Critchley M: Medical aspects of boxing, particularly from a neurological standpoint. *Br Med J* 1957, 1:357–362.

25. Critchley M: Medical aspects of boxing. In *The Black Hole and Other Essays*. Edited by Critchley M. London: Pitman; 1964.
26. Johnson J: Organic psychosyndromes due to boxing. *Br J Psychiatry* 1969, 115:45–53.
27. Victoroff J: Traumatic encephalopathy: review and provisional research diagnostic criteria. *Neuro Rehabilitation* 2013, 32:211–224.
28. Victoroff J, Baron D: Diagnosis and treatment of sports-related traumatic brain injury. *Psychiatric Annals* 2012, 42:365–370.
29. Omalu BI, DeKosky ST, Minster RL, Ilyas Kamboh M, Hamilton RL, Wecht CH: Chronic traumatic encephalopathy in a National Football League player. *Neurosurg* 2005, 57:128–134.
30. Jokl E: (Punch-drunkenness) any questions? Notes and comments editorials. *Br Med J* 1950, 2:1291.
31. Jokl E: *The Medical Aspect of Boxing*. Pretoria: Van Schaik; 1941.
32. Jokl E, Guttmann E: Neurological and psychiatric examinations of boxers. *Münch med Wschr* 1933, 80:560–562.
33. Grahmann H, Ule G: Diagnosis of chronic cerebral symptoms in boxers (dementia pugilistica and traumatic encephalopathy of boxers). *Psychiatr Neurol* 1957, 134:261–283.
34. Gardner A, Iverson GL, McCrory P: Chronic traumatic encephalopathy in sport: a systematic review. *Br J Sports Med* 2013, 48:84–90.
35. Jordan BD: The clinical spectrum of sport-related traumatic brain injury. *Nat Rev Neurol* 2013, 9:222–230.
36. McCrory P, Meeuwisse WH, Kutcher JS, Jordan BD, Gardner A: What is the evidence for chronic concussion-related changes in retired athletes: behavioral, pathological and clinical outcomes? *Br J Sports Med* 2013, 47:327–330.
37. Smith DH, Johnson VE, Stewart W: Chronic neuropathologies of single and repetitive TBI: substrates of dementia. *Nat Rev Neurol* 2013, 9:211–221.
38. Stern RA, Riley DO, Daneshvar DH, Nowinski CJ, Cantu RC, McKee AC: Long-term consequences of repetitive brain trauma: chronic traumatic encephalopathy. *Phys Med Rehabil Clin N Am* 2011, 3:460–467.
39. Stern RA, Gavett BE, Baugh C, Nowinski CJ, Cantu RC, McKee AC: Recurrent sports-related traumatic brain injury and tauopathy. In *Nutrition and Traumatic Brain Injury: Improving Acute and Subacute Health Outcomes in Military Personnel*. 1st edition. Edited by Oria EJ. Washington, DC: The National Academies Press; 2011:305–310.
40. Jordan BD: Chronic neurologic injuries in boxing. In *Medical Aspects of Boxing*. 1st edition. Edited by Jordan BD. Boca Raton: CRC Press Inc; 1993:177–185.
41. Jordan BD: Dementia pugilistica. In *Neurobiology of Primary Dementia*. Edited by Folstein MF. Washington, DC: American Psychiatric Press; 1998:191.
42. Herzog K: Neurologic-psychiatric examinations of boxers. In *MD Thesis*. Hamburg University: Medicine Department; 1938.
43. Knoll W, Stille G, Herzog K: Injuries and their prevention. *Arch Klin Chir* 1938, 191:36–42.
44. Schwarz B: Chronic injuries of the central nervous system in boxing. *Dtsch Gesundheitswesen* 1953, 8:845–847.
45. Soeder M, Arndt T: Affective disorders and changes in the electroencephalogram in boxers. *Dtsch Med Wochenschr* 1954, 79:1792–1795.
46. Muller E: Diagnosis and assessment of encephalopathy in boxers. *Monatsschr Unfallheilk* 1958, 61:117–123.
47. Spillane JD: Five boxers. *Br Med J* 1962, 2:1205–1210.
48. Payne EE: Brains of boxers. *Neurochirurgia* 1968, 11:173–188.
49. Roberts AH: *Brain Damage in Boxers: A Study of the Prevalence of Traumatic Encephalopathy among Ex-Professional Boxers*. London: Pitman Medical and Scientific Publishing Co.; 1969.
50. Corsellis JA, Bruton CJ, Freeman-Browne D: The aftermath of boxing. *Psychol Med* 1973, 3:270–303.
51. Sabharwal RK, Sanchetee PC, Sethi PK, Dhamija RM: Chronic traumatic encephalopathy in boxers. *J Assoc Physicians Ind* 1987, 35:571.
52. Jordan B, Relkin N, Ravdin L, Jacobs A, Bennett A, Gandy S: Apolipoprotein E4 associated with chronic traumatic brain injury in boxing. *JAMA* 1997, 278:136–140.
53. Omalu BI, DeKosky ST, Hamilton RL, Minster RL, Kamboh MI, Shakir AM, Wecht CH: Chronic traumatic encephalopathy in a national football league player: part II. *Neurosurg* 2006, 59:1086–1093.
54. Omalu BI, Fitzsimmons RP, Hammers J, Bailes J: Chronic traumatic encephalopathy in a professional American wrestler. *J Forensic Nurs* 2010, 6:130–136.
55. Bigler ED: Traumatic brain injury, neuroimaging, and neurodegeneration. *Front Hum Neurosci* 2013, 7:395.
56. Plassman BL, Havlik RJ, Steffens DC, Helms MJ, Newman TN, Drosdick D, Phillips C, Gau BA, Welsh-Bohmer KA, Burke JR, Guralnik JM, Breitner JC: Documented head injury in early adulthood and risk of Alzheimer's disease and other dementias. *Neurology* 2000, 55:1158–1166.
57. McCrory P, Meeuwisse WH, Aubry M, Cantu R, Dvořák J, Echemendia R, Engebretsen I, Johnston K, Kutcher J, Raftery M, Sills A, Benson B, Davis G, Ellenbogen R, Guskiewicz K, Herring S, Iverson G, Jordan B, Kissick J, McCrea M, McIntosh A, Maddocks D, Makdissi M, Purcel L, Putukian M, Schneider K, Tator C, Turner M: Consensus statement on concussion in sport: the 4th International Conference on Concussion in Sport held in Zurich. *Br J Sports Med* 2013, 47:250–258.
58. Robbins C, Daneshvar D, Picano J, Gavett B, Baugh C, Riley D, Nowinski C, McKee A, Cantu R, Stern E: Self-reported concussion history: impact of providing a definition of concussion. *Open Access J Sports Med* 2014, 5:99–103.
59. Management of Concussion/mTBI Working Group: *VA/DoD Clinical Practice Guideline for Management of Concussion/Mild Traumatic Brain Injury*. Washington, DC: Department of Veterans Affairs/Department of Defense; 2009.
60. Jack CR Jr, Albert MS, Knopman DS, McKhann GM, Sperling RA, Carrillo MC, Thies B, Phelps CH: Introduction to the recommendations from the National Institute on Aging-Alzheimer's Association workgroups on diagnostic guidelines for Alzheimer's disease. *Alzheimers Dement* 2011, 7:257–262.

doi:10.1186/s13195-014-0068-z
**Cite this article as:** Montenigro *et al.*: Clinical subtypes of chronic traumatic encephalopathy: literature review and proposed research diagnostic criteria for traumatic encephalopathy syndrome. *Alzheimer's Research & Therapy* 2014 **6**:68.

# EXHIBIT 11

# Chronic Traumatic Encephalopathy: A Potential Late Effect of Sport-Related Concussive and Subconcussive Head Trauma

Brandon E. Gavett, PhD[a,b], Robert A. Stern, PhD[a,b],
Ann C. McKee, MD[a,b,c,d],*

**KEYWORDS**

- Encephalopathy, Post-traumatic
- Neurodegenerative disorders • Concussion • Athletic injuries
- Dementia • Motor neuron disease

It has been understood for decades that certain sporting activities may increase an athlete's risk of developing a neurodegenerative disease later in life. Not surprisingly, this association was originally noted in boxers, athletes who receive numerous blows to the head during training and competition. In 1928, Harrison Martland, a New Jersey pathologist and medical examiner, first described the clinical spectrum of abnormalities found in "nearly one half of the fighters who have stayed in the game long enough."[1]

This work was supported by NIA P30AG13846, Supplement 0572063345-5, National Operating Committee on Standards for Athletic Equipment, and by the Department of Veterans Affairs. This work was also supported by an unrestricted gift from the National Football League. The funding sources were not involved in the preparation, review, or approval of this article.

[a] Center for the Study of Traumatic Encephalopathy and Alzheimer's Disease Center, Boston University School of Medicine, 72 East Concord Street, B-7800, Boston, MA 02118, USA
[b] Department of Neurology, Boston University School of Medicine, 72 East Concord Street, B-7800, Boston, MA 02118, USA
[c] Department of Pathology, Boston University School of Medicine, 72 East Concord Street, B-7800, Boston, MA 02118, USA
[d] Bedford Veterans Affairs Medical Center, 200 Springs Road, Building 18, Room 118, Bedford, MA 01730, USA
* Corresponding author. Bedford Veterans Affairs Medical Center, 200 Springs Road, Building 18, Room 118, Bedford, MA 01730.
E-mail address: amckee@bu.edu

Clin Sports Med 30 (2011) 179–188
doi:10.1016/j.csm.2010.09.007
0278-5919/11/$ – see front matter. Published by Elsevier Inc.

sportsmed.theclinics.com

Boxers exhibiting cognitive, behavioral, or motor abnormalities were well known to lay persons, sportswriters, and others within the boxing community and were referred to by various terms, such as "punch drunk," "goofy," and "slug-nutty"[2,3]; later, the more formal term *dementia pugilistica* was introduced to lend medical validity to the condition.[4] By the 1970s, a sufficient number of boxers with dementia pugilistica had been studied pathologically to support the conclusion that this form of neurodegeneration was similar to, but distinguishable from, other causes of neurodegenerative disease.[5] As evidence of the clinical and neuropathologic consequences of repeated mild head trauma grew, it became clear that this pattern of neurodegeneration was not restricted to boxers, and the term chronic traumatic encephalopathy (CTE), originally coined by Miller[6] became most widely used.

Over the last several decades, clinical and neuropathologic evidence of CTE has emerged in association with various sports, including American football, professional wrestling, professional hockey, and soccer, as well as other activities associated with repetitive mild head trauma, such as physical abuse, epileptic seizures, and head banging.[7–13] Although the incidence and prevalence of CTE is currently unclear, it probably varies by sport, position, duration of exposure, and age at the time of initial or subsequent head trauma, and with additional variables, such as genetic predisposition. To date, there have been no randomized neuropathologic studies of CTE in deceased athletes, and as such, there is a selection bias in the cases that have come to autopsy. If one considers the prevalence in deceased professional American football players who died between February 2008 and June 2010, there were 321 known player deaths[14] and the brains of 12 of the 321 underwent postmortem neuropathologic examination at Boston University Center for the Study of Traumatic Encephalopathy (BU CSTE). All 12 examined neuropathologically showed evidence of CTE, suggesting an estimated lifetime prevalence of at least 3.7%. If one assumes that all deceased players who did not come to autopsy did not have CTE and that the amount of head trauma in professional football has remained fairly constant over the past 5 decades, a prevalence of 3.7% would result. Although this represents a conservative estimate, it suggests a significant public-health risk for persons who suffer repetitive mild traumatic brain injury (TBI).

## CLINICAL SIGNS AND SYMPTOMS OF CTE

Whereas concussion and postconcussion syndrome represent temporary states of neuronal and axonal derangement, CTE is a neurodegenerative disease that occurs years or decades after recovery from the acute or postacute effects of head trauma. The exact relationship between concussion and CTE is not entirely clear, although repetitive axonal perturbation may initiate a series of metabolic, ionic, membrane, and cytoskeletal disturbances, which trigger the pathologic cascade that leads to CTE in susceptible individuals.[15,16] The onset of CTE is often in midlife, usually after athletes have retired from their sport. In some individuals, the early manifestations of CTE affect behavior; in particular, individuals with neuropathologically documented CTE have been described by family and friends as being more irritable, angry, or apathetic or as having a shorter fuse. Increased suicidality seems to be a particularly salient symptom of CTE.[17] In other cases, cognitive difficulties may be the first signs to emerge, with poor episodic memory and executive functioning being two of the most common cognitive dysfunctions reported. Later in the disease, movement (eg, parkinsonism), speech, and ocular abnormalities may emerge in the context of declining cognition and worsening comportment. A minority of cases with neuropathologically documented CTE developed dementia before death; the relative infrequency of

dementia in individuals with CTE may be due in part to many individuals with CTE having committed suicide or died from accidents or drug overdose at an early age.[11,17]

## NEUROPATHOLOGY OF CTE
### Gross Pathology

Neuropathologic studies of athletes with a history of repeated mild head injuries have produced several consistent findings that, together, make CTE a distinctive disorder. On gross examination, there is often anterior cavum septi pellucidi and, usually, posterior fenestrations. These changes may be caused by the force of the head impact being transmitted through the ventricular system, thereby affecting the integrity of the intervening tissue. Enlargement of the lateral and third ventricles is also commonly seen in CTE; the third ventricle may be disproportionately widened. Additional gross features include atrophy of the frontal and temporal cortices and of the medial temporal lobe, thinning of the hypothalamic floor, shrinkage of the mammillary bodies, pallor of the substantia nigra, and hippocampal sclerosis. Atrophy of the cerebrum, diencephalon, basal ganglia, brainstem, and cerebellum may result in an overall reduction in brain mass.[11]

### Microscopic Neuropathology

#### Tau

Microscopically, CTE is characterized by an abundance of neurofibrillary inclusions in the form of neurofibrillary tangles (NFTs), neuropil threads (NTs), and glial tangles (GTs). The main protein composing NFTs is the microtubule-associated protein tau, and NFTs are aggregates of filamentous tau polymers. Although CTE shares many microscopic similarities with Alzheimer disease (AD) and other tauopathies, it has several distinguishing features. First, the distribution of tau pathology is unique; it is most commonly found in the more superficial cortical laminae (II and III), whereas tau NFTs in AD are preferentially distributed in large projection neurons in layers III and V. Further, the regional tau pathology is extremely irregular, largely confined to uneven foci in the frontal, temporal, and insular cortices, unlike the more uniform cortical NFT distribution seen in AD. Tau NFTs, NTs, and GTs are found throughout the medial temporal lobe, often in densities greater than those found in severe AD, and are also prominent in the diencephalon, basal ganglia, and brainstem. NTs and GTs are also found in the subcortical white matter. Finally, NFTs in CTE are most dense at the depths of cortical sulci, and are typically perivascular, which might indicate that disruptions of the cerebral microvasculature and the blood brain barrier that occur at the time of the traumatic injury play a critical role in the formation of NFTs.[11]

Although the precise pathologic mechanisms that tie repeated mild head injuries to NFT formation are not known, they may involve a series of diffuse axonal injuries (DAI) set in motion by the initial trauma and aggravated by subsequent mild traumatic injuries. During a TBI, the brain and spinal cord undergo shear deformation producing a transient elongation or stretch of axons. Traumatic axonal injury results in alterations in axonal membrane permeability, ionic shifts including massive influx of calcium, and release of caspases and calpains that might trigger tau phosphorylation, misfolding, truncation, and aggregation, as well as breakdown of the cytoskeleton with dissolution of microtubules and neurofilaments.[15,18,19]

Increasing evidence indicates that tau phosphorylation, truncation, aggregation, and polymerization into filaments represents a toxic gain of function, and continued accumulation of tau leads to neurodegeneration. This is supported by tau's involvement in some genetic forms of frontotemporal degeneration[20] and by work that shows

Case 2:15-cv-02711-D Document 6201-41744 1 Date Filed 10/08/2024 Page 10/08/2024

that plasmids containing human tau complementary DNA constructs microinjected into lamprey neurons in situ produce tau filaments that accumulate and lead to neuronal degeneration.[21,22] However, it is also possible that the intracellular NFTs, by themselves, are the byproducts rather than the cause of cellular injury and that NFT formation indicates neurons that survived the initial injury and sequestered the abnormally phosphorylated, truncated, and folded tau.[23] A possible tau toxic factor or transcellular propagation by the misfolded tau protein may explain how a neurodegeneration that starts multifocally around small blood vessels or in the depths of cortical sulci ultimately spreads to involve large regions of brain as a systemic degeneration, such as CTE.[24]

### Beta-amyloid

Beta-amyloid (Aβ) deposits are found in 40% to 45% of individuals with CTE, in contrast to the extensive Aβ deposits that characterize nearly all cases of AD. Although neuritic plaques are typically abundant in AD and are essential to the diagnosis, Aβ plaques in CTE, when they occur, are less dense and predominantly diffuse.[11] Despite the fairly minor role Aβ plaques seem to play in the neuropathologic manifestation of CTE, the role of Aβ in the pathogenesis of CTE has yet to be elucidated. It is known that acute head injuries cause an upregulation of amyloid precursor protein (APP) production and that Aβ plaques may be found in up to 30% of patients who die within hours of TBI.[25–27] DAI, often a consequence of mild TBI, is thought to influence changes in Aβ after head injury. Interruption of axonal transport causes an accumulation of multiple proteins in the axon, including APP, in varicosities along the length of the axon or at disconnected axon terminals, termed axonal bulbs.[28] Although the axonal pathology in TBI is diffuse in that it affects widespread regions of the brain, typically, the axonal swellings are found in multifocal regions of the subcortical and deep white matter, including the brainstem. Because of the rapid and abundant accumulation of APP in damaged axons after TBI, APP immunostaining is used for the pathologic assessment of DAI in humans. Accordingly, this large reservoir of APP in injured axons might be aberrantly cleaved to rapidly form Aβ after TBI.[25,29,30] However, it remains unclear whether the large quantities of APP and Aβ found in damaged axons after TBI play any mechanistic role in neurodegeneration or neuroprotection.[28,31,32] Moreover, it is unknown how long the increased APP and Aβ lasts or what mechanisms may result in variable clearance.

### TDP-43

Recently, in addition to severe tau neurofibrillary pathology, the authors found a widespread TDP-43 proteinopathy in more than 80% of their cases of CTE.[13] Moreover, in 3 athletes with CTE who developed a progressive motor neuron disease several years before death, there were extensive TDP-43 immunoreactive inclusions in the anterior horns of the spinal cord, along with tau-immunoreactive GTs, neurites, and, occasionally, extensive NFTs. These findings suggest that a distinctive, widespread TDP-43 proteinopathy is also associated with CTE and that, in some individuals, the TDP-43 proteinopathy extends to involve the spinal cord and is clinically manifest as motor neuron disease with a presentation that may appear similar to amyotrophic lateral sclerosis (ALS).[13] The shared presence of 2 aggregated phosphorylated proteins associated with neurodegeneration in the great majority of cases of CTE suggests that a common stimulus, such as repetitive axonal injury, provokes the pathologic accumulation of both proteins.[33] Recent studies in vitro and in vivo suggest that over-expression of wild-type human TDP-43 and its dislocation from the neuronal nucleus to the cytoplasm are associated with neurodegeneration and cell death.[34–36] By virtue

of its capacity to bind to neurofilament messenger RNA (mRNA) and stabilize the mRNA transcript, TDP-43 plays a critical role in mediating the response of the neuronal cytoskeleton to axonal injury. TDP-43 is intrinsically prone to aggregation, and its expression is upregulated after experimental axotomy in spinal motor neurons of the mouse.[37] Traumatic axonal injury may also accelerate TDP-43 accumulation, aggregation, and dislocation to the cytoplasm, thereby enhancing its neurotoxicity.

## CLINICAL IMPLICATIONS
### CTE is a Potential Late Effect of Repeated Head Injuries

CTE is not thought to be a long-term sequela after a specific head trauma. Rather, its clinical symptoms emerge later in life, usually after athletes retire from their sport. Like most other neurodegenerative diseases that cause dementia, CTE has an insidious onset and gradual course. Based on a recent review of neuropathologically confirmed CTE in athletes[11], the mean age at onset is 42.8 years (SD = 12.7; range = 25–76 years). On average, onset occurs approximately 8 years after retirement (SD = 10.7), although approximately one-third of athletes were reportedly symptomatic at the time of retirement. In athletes, the course seems to be considerably protracted (mean duration = 17.5 years, SD = 12.1), especially in boxers. The average duration of the disease in boxers is 20 years (SD = 11.7) and 6 years in American football players (SD = 2.9).[11] If the affected individual does not die of other causes, full-blown clinical dementia may occur late in the course of the disease.

### Diagnosis of CTE

Currently, the clinical diagnosis of CTE is difficult because there are no consensus diagnostic criteria or large-scale longitudinal clinicopathologic correlation studies. The differential diagnosis of CTE often includes AD[38] and frontotemporal dementia (FTD)[39], depending on the age at onset and the presenting problem. Older individuals with memory difficulties may seem to have AD, and, in fact, may have evidence of AD and CTE neuropathologically.[11] When the age at onset is earlier (eg, 40s or 50s) and the patient presents with behavioral dysregulation or apathy, it may be difficult to rule out FTD. Although a history of remote head trauma may be suggestive of CTE, head trauma has been implicated as a risk factor of AD, Parkinson disease, ALS, and other neurodegenerative diseases.[40–42] Therefore, without neuropathologic confirmation, currently, a clinical diagnosis of CTE cannot be made with a high degree of confidence. Furthermore, the clinical phenotype of CTE may be confounded by alcohol or other drug abuse. Several individuals with neuropathologically confirmed CTE are thought to have developed problems with drug abuse as a consequence of the loss of inhibitory control caused by the neurodegenerative disease. From a clinical perspective, however, it can be difficult to determine whether the drug abuse problems are a cause of symptoms or simply one of many ways in which CTE is manifested.

Although the neuropathologic features of CTE seem to be distinct from other neurodegenerative diseases, no currently agreed neuropathologic criteria exist for the diagnosis of CTE. Once established, these criteria can be applied at autopsy in large-scale, prospective longitudinal studies of athletes with a history of repetitive head injuries. Establishing neuropathologic diagnostic criteria would allow for the identification of clinical criteria and biomarkers to improve the accuracy of CTE diagnosis in the living.

Several biomarkers are believed to have the potential to contribute to identifying CTE in vivo. For instance, the changes to white-matter integrity caused by repeated head trauma may be amenable to detection using diffusion tensor magnetic resonance imaging.[43] Magnetic resonance spectroscopy may be capable of detecting changes

Case 2:25-cv-03123-DOC-ADS Document 6 Page 41-746 1 Date Filed Page 04/08/2025

in glutamate/glutamine, N-acetyl aspartate, and myo-inositol, molecular abnormalities that may serve as markers of brain damage caused by head injuries.[44] Further, measuring tau and phospho-tau in cerebrospinal fluid may yield diagnostically useful markers of CTE.[45]

### Risk and Protective Factors

CTE research is in its infancy, and decades of research are probably necessary to achieve CTE diagnosis early in its course using a combination of clinical tools and biomarkers. However, the research already conducted has profound implications for current practice by medical professionals, athletic trainers, and related specialists, as well as policy makers in government and athletic organizations. CTE is the only known neurodegenerative dementia with a specific identifiable cause; in this case, head trauma. It is unknown whether a single blow to the head is sufficient to initiate the metabolic cascade that precedes the clinical and neuropathologic changes characteristic of CTE, because all confirmed cases of CTE to date have had a history of multiple head injuries. Therefore, the most obvious way to prevent CTE is, in theory, to prevent repetitive head injuries from occurring. In some sports, such as boxing and American football, it may be impossible to prevent repetitive head injuries, especially the repeated subconcussive blows that are characteristic of the impacts felt by offensive and defensive linemen in football on nearly every play. For sports in which repeated blows to the head are unavoidable, proper concussion assessment and management may be paramount for preventing long-term consequences. Currently, it is unknown whether returning to play while symptomatic from a previous concussion or sustaining a second concussion while symptomatic is a risk factor of developing CTE. However, other strategies to reduce the number and severity of head traumas are possible, such as limiting full-contact practices, implementing rules of play that diminish the likelihood of repeated head trauma (eg, removing the 3-point stance in football), or increasing the use of newer protective headgear aimed at absorbing force, thus diminishing the impact to the brain.

Along these lines, many potential variables surrounding head trauma in athletes may be important for preventing CTE later in life. The sport played and the position played within each sport may be relevant; for instance, boxers receive a greater proportion of rotational forces to the head, whereas American football players receive a greater proportion of linear forces to the head.[46] Even within the same sport, athlete exposure to head injuries can differ considerably. In American football, some positions, such as wide receiver, may receive occasional severe blows with the potential to cause unconsciousness, whereas other players, such as linemen, may take hundreds of small impacts per season, most of which are not, by themselves, forceful enough to cause symptoms.[47] It is unknown whether CTE is more likely to occur after a small number of severe head injuries, a large number of subconcussive injuries, or other forms of head trauma. Currently, investigations are ongoing that attempt to quantify the force of head impacts across different sports and positions.[48] These findings will play an important role in understanding the specific head injury variables that influence CTE risk.

The age at which athletes suffer their head injuries may also influence CTE risk. At younger ages, the brain may be more vulnerable to injury.[49] Conversely, the increased plasticity of the young brain may be better able to compensate for specific difficulties, such as behavioral dysfunction.[50] It is also not clear whether particular lifestyle factors may be protective against CTE in the context of repetitive head injuries. In other neurodegenerative diseases such as AD, the neuropathology is thought to precede the clinical symptoms, possibly by several decades.[51] The same may be true of CTE, as

evidenced by the presence of CTE neuropathology in asymptomatic individuals studied at autopsy. Conceivably, health and medical factors that are absent or present during this preclinical stage may influence the extent of neurodegeneration or the brain's ability to compensate for any neurodegeneration. For instance, the presence of chronic inflammation, as in that which accompanies medical conditions such as obesity, hypertension, diabetes mellitus, atherosclerosis, and heart disease, may facilitate neurodegeneration and NFT formation.[52–55] Also, as with other neurodegenerative diseases like AD, some individuals may have greater *cognitive reserve*, thus increasing the threshold for the clinical manifestation of the underlying neuropathologic condition.

Genetic variations may also play an important role in moderating the relationships between head trauma, neuropathologic changes, and disordered cognition and behavior. One of the genes thought to influence CTE risk is the apolipoprotein E (APOE) gene. The APOE ε4 allele, important in the genetics of AD, may also increase the risk of CTE. Based on genetic testing conducted in conjunction with neuropathologic examinations of individuals with a history of repeated head injuries, approximately 57% of individuals with neuropathologically confirmed CTE possessed at least one APOE ε4 allele. When contrasted with the estimated 28% of the population possessing at least one APOE ε4 allele,[56] the frequency of this allele in those with CTE seems higher than expected. This genetic link is currently speculative, because formal epidemiologic studies have yet to be conducted. However, individuals carrying the APOE ε4 allele may be more likely to have a poor outcome after TBI, especially in individuals younger than 15 years.[57–59] Epidemiologic data have also implicated the APOE ε4 genotype as a risk factor for the development of AD after TBI,[60,61] and carriers of the APOE ε4 allele were found to be at increased risk of Aβ deposition after TBI.[62]

## SUMMARY

CTE is a neurodegenerative disease that occurs later in the lives of some individuals with a history of repeated head trauma. The exact relationship between repetitive mild TBI, with or without symptomatic concussion, and CTE is not entirely clear, although it is possible that repetitive axonal injury sets up a series of metabolic, ionic, and cytoskeletal disturbances that trigger a pathologic cascade, leading to CTE in susceptible individuals. CTE has been reported in association with American football, professional wrestling, soccer, and hockey, as well as in association with physical abuse, epilepsy, and head banging behaviors, suggesting that mild TBI of diverse origin is capable of instigating CTE. CTE often manifests in midlife and produces clinical symptoms of disordered cognition, memory loss and executive dysfunction, depression, apathy, disinhibition, and irritability, as well as parkinsonian signs. The characteristic neuropathologic features of CTE include extensive tau-immunoreactive inclusions scattered throughout the cerebral cortex in a patchy, superficial distribution, with focal epicenters at the depths of sulci and around the cerebral vasculature and widespread TDP-43-immunoreactive inclusions that may occasionally be associated with symptoms of motor neuron disease. Currently, neuropathologic examination of brain tissue is the only way to diagnose CTE, although intense research efforts are underway to identify biomarkers to detect the disease and monitor its progression and to develop therapies to slow or reverse its course. Longitudinal research efforts are underway to shed additional light on the specific variables related to head trauma, neuropathology, and clinical presentation of CTE that remain in question.

Case 2:15-cv-02741-JS-AME Document 6201-1 Filed 10/08/2024 Page 1748 of 1854

## REFERENCES

1. Martland HS. Punch drunk. JAMA 1928;91:1103–7.
2. Critchley M. Medical aspects of boxing, particularly from a neurological standpoint. Br Med J 1957;1:357–62.
3. Parker H. Traumatic encephalopathy ('punch drunk') of professional pugilists. J Neurol Psychopathol 1934;15:20–8.
4. Millspaugh JA. Dementia pugilistica. U S Nav Med Bull 1937;35:297–303.
5. Corsellis JA, Bruton CJ, Freeman-Browne D. The aftermath of boxing. Psychol Med 1973;3:270–303.
6. Miller H. Mental after-effects of head injury. Proc R Soc Med 1966;59:257–61.
7. Geddes JF, Vowles GH, Nicoll JA, et al. Neuronal cytoskeletal changes are an early consequence of repetitive head injury. Acta Neuropathol 1999;98:171–8.
8. Omalu BI, DeKosky ST, Hamilton RL, et al. Chronic traumatic encephalopathy in a national football league player: part II. Neurosurgery 2006;59:1086–92.
9. Omalu BI, DeKosky ST, Minster RL, et al. Chronic traumatic encephalopathy in a national football league player. Neurosurgery 2005;57:128–34.
10. Cajigal S. Brain damage may have contributed to former wrestler's violent demise. Neurology Today 2007;7:1–16.
11. McKee A, Cantu R, Nowinski C, et al. Chronic traumatic encephalopathy in athletes: progressive tauopathy after repetitive head injury. J Neuropathol Exp Neurol 2009;68:709–35.
12. Omalu BI, Bailes J, Hammers JL, et al. Chronic traumatic encephalopathy, suicides and parasuicides in professional American athletes: the role of the forensic pathologist. Am J Forensic Med Pathol 2010;31:130–2.
13. McKee AC, Gavett BE, Stern RA, et al. TDP-43 proteinopathy and motor neuron disease in chronic traumatic encephalopathy. J Neurol Exp Neuropathol 2010;69:918–29.
14. Oldest living pro football players. 2009–2000 Necrology. Available at: http://www.freewebs.com/oldestlivingnfl/20092000necrology.htm. Accessed May 15, 2010.
15. Giza C, Hovda D. The neurometabolic cascade of concussion. J Athl Train 2001;36:228–35.
16. Yuen TJ, Browne KD, Iwata A, et al. Sodium channelopathy induced by mild axonal trauma worsens outcome after a repeat injury. J Neurosci Res 2009;87:3620–5.
17. Omalu BI, Hamilton RL, Kamboh MI, et al. Chronic traumatic encephalopathy (CTE) in a national football league player: case report and emerging medicolegal practice questions. J Forensic Nurs 2010;6:40–6.
18. Binder LI, Guillozet-Bongaarts AL, Garcia-Sierra F, et al. Tau, tangles, and Alzheimer's disease. Biochim Biophys Acta 2005;1739:216–23.
19. Serbest G, Burkhardt MF, Siman R, et al. Temporal profiles of cytoskeletal protein loss following traumatic axonal injury in mice. Neurochem Res 2007;32:2006–14.
20. Spillantini MG, Bird TD, Ghetti B. Frontotemporal dementia and Parkinsonism linked to chromosome 17: a new group of tauopathies. Brain Pathol 1998;8:387–402.
21. Hall GF, Chu B, Lee G, et al. Human tau filaments induce microtubule and synapse loss in an in vivo model of neurofibrillary degenerative disease. J Cell Sci 2000;113:1373–87.
22. Hall GF, Yao J, Lee G. Human tau becomes phosphorylated and forms filamentous deposits when overexpressed in lamprey central neurons in situ. Proc Natl Acad Sci U S A 1997;94:4733–8.
23. de Calignon A, Fox LM, Pitstick R, et al. Caspase activation precedes and leads to tangles. Nature 2010;464:1201–4.

24. Frost B, Jacks RL, Diamond MI. Propagation of tau misfolding from the outside to the inside of a cell. J Biol Chem 2009;284:12845–52.

25. Gentleman SM, Nash MJ, Sweeting CJ, et al. Beta-amyloid precursor protein (beta APP) as a marker for axonal injury after head injury. Neurosci Lett 1993;160:139–44.

26. Roberts GW, Gentleman SM, Lynch A, et al. Beta amyloid protein deposition in the brain after severe head injury: implications for the pathogenesis of Alzheimer's disease. J Neurol Neurosurg Psychiatry 1994;57:419–25.

27. Roberts GW, Gentleman SM, Lynch A, et al. beta A4 amyloid protein deposition in brain after head trauma. Lancet 1991;338:1422–3.

28. Johnson VE, Stewart W, Smith DH. Traumatic brain injury and amyloid-beta pathology: a link to Alzheimer's disease? Nat Rev Neurosci 2010;11:361–70.

29. Gorrie C, Oakes S, Duflou J, et al. Axonal injury in children after motor vehicle crashes: extent, distribution, and size of axonal swellings using beta-APP immunohistochemistry. J Neurotrauma 2002;19:1171–82.

30. Sherriff FE, Bridges LR, Sivaloganathan S. Early detection of axonal injury after human head trauma using immunocytochemistry for beta-amyloid precursor protein. Acta Neuropathol 1994;87:55–62.

31. Smith DH, Chen XH, Iwata A, et al. Amyloid beta accumulation in axons after traumatic brain injury in humans. J Neurosurg 2003;98:1072–7.

32. Chen XH, Johnson VE, Uryu K, et al. A lack of amyloid beta plaques despite persistent accumulation of amyloid beta in axons of long-term survivors of traumatic brain injury. Brain Pathol 2009;19:214–23.

33. Uryu K, Chen XH, Martinez D, et al. Multiple proteins implicated in neurodegenerative diseases accumulate in axons after brain trauma in humans. Exp Neurol 2007;208:185–92.

34. Barmada SJ, Skibinski G, Korb E, et al. Cytoplasmic mislocalization of TDP-43 is toxic to neurons and enhanced by a mutation associated with familial amyotrophic lateral sclerosis. J Neurosci 2010;30:639–49.

35. Tatom JB, Wang DB, Dayton RD, et al. Mimicking aspects of frontotemporal lobar degeneration and Lou Gehrig's disease in rats via TDP-43 overexpression. Mol Ther 2009;17:607–13.

36. Wils H, Kleinberger G, Janssens J, et al. TDP-43 transgenic mice develop spastic paralysis and neuronal inclusions characteristic of ALS and frontotemporal lobar degeneration. Proc Natl Acad Sci U S A 2010;107:3858–63.

37. Moisse K, Mepham J, Volkening K, et al. Cytosolic TDP-43 expression following axotomy is associated with caspase 3 activation in NFL-/- mice: support for a role for TDP-43 in the physiological response to neuronal injury. Brain Res 2009;1296:176–86.

38. McKhann G, Drachman D, Folstein M, et al. Clinical diagnosis of Alzheimer's disease: report of the NINCDS-ADRDA work group under the auspices of department of health and human services task force on Alzheimer's disease. Neurology 1984;34:939–44.

39. Neary D, Snowden JS, Gustafson L, et al. Frontotemporal lobar degeneration: a consensus on clinical diagnostic criteria. Neurology 1998;51:1546–54.

40. Mortimer JA, van Duijn CM, Chandra V, et al. Head trauma as a risk factor for Alzheimer's disease: a collaborative re-analysis of case-control studies. EURODEM risk factors research group. Int J Epidemiol 1991;20:S28–35.

41. Goldman SM, Tanner CM, Oakes D, et al. Head injury and Parkinson's disease risk in twins. Ann Neurol 2006;60:65–72.

42. Chen H, Richard M, Sandler DP, et al. Head injury and amyotrophic lateral sclerosis. Am J Epidemiol 2007;166:810–6.

188
Gavett et al
Case 2:15-cv-01023-DB Document 62-10 Filed 10/08/2025 Page 41 of 116

43. Jones DK, Dardis R, Ervine M, et al. Cluster analysis of diffusion tensor magnetic resonance images in human head injury. Neurosurgery 2000;47:306–13.

44. Ross BD, Ernst T, Kreis R, et al. 1H MRS in acute traumatic brain injury. J Magn Reson Imaging 1998;8:829–40.

45. Shaw LM, Vanderstichele H, Knapik-Czajka M, et al. Cerebrospinal fluid biomarker signature in Alzheimer's disease neuroimaging initiative subjects. Ann Neurol 2009;65:403–13.

46. Viano DC, Casson IR, Pellman EJ, et al. Concussion in professional football: comparison with boxing head impacts–part 10. Neurosurgery 2005;57:1154–72.

47. Rowson S, Brolinson G, Goforth M, et al. Linear and angular head acceleration measurements in collegiate football. J Biomech Eng 2009;131:061016.

48. Brolinson PG, Manoogian S, McNeely D, et al. Analysis of linear head accelerations from collegiate football impacts. Curr Sports Med Rep 2006;5:23–8.

49. Field M, Collins MW, Lovell MR, et al. Does age play a role in recovery from sports-related concussion? A comparison of high school and collegiate athletes. J Pediatr 2003;142:546–53.

50. Anderson V, Spencer-Smith M, Leventer R, et al. Childhood brain insult: can age at insult help us predict outcome? Brain 2009;132:45–56.

51. Näslund J, Haroutunian V, Mohs R, et al. Correlation between elevated levels of amyloid beta-peptide in the brain and cognitive decline. JAMA 2000;283:1571–7.

52. Arnaud LT, Myeku N, Figueiredo-Pereira ME. Proteasome-caspase-cathepsin sequence leading to tau pathology induced by prostaglandin J2 in neuronal cells. J Neurochem 2009;110:328–42.

53. Ke YD, Delerue F, Gladbach A, et al. Experimental diabetes mellitus exacerbates tau pathology in a transgenic mouse model of alzheimer's disease. PLoS One 2009;4:e7917.

54. Duong T, Nikolaeva M, Acton PJ. C-reactive protein-like immunoreactivity in the neurofibrillary tangles of alzheimer's disease. Brain Res 1997;749:152–6.

55. Arnaud L, Robakis NK, Figueiredo-Pereira ME. It may take inflammation, phosphorylation and ubiquitination to 'tangle' in alzheimer's disease. Neurodegener Dis 2006;3:313–9.

56. Hill JM, Bhattacharjee PS, Neumann DM. Apolipoprotein E alleles can contribute to the pathogenesis of numerous clinical conditions including HSV-1 corneal disease. Exp Eye Res 2007;84:801–11.

57. Teasdale GM, Murray GD, Nicoll JAR. The association between APOE epsilon4, age and outcome after head injury: a prospective cohort study. Brain 2005;128: 2556–61.

58. Friedman G, Froom P, Sazbon L, et al. Apolipoprotein E-epsilon4 genotype predicts a poor outcome in survivors of traumatic brain injury. Neurology 1999; 52:244–8.

59. Sundström A, Marklund P, Nilsson LG, et al. APOE influences on neuropsychological function after mild head injury: within-person comparisons. Neurology 2004; 62:1963–6.

60. Mayeux R, Ottman R, Maestre G, et al. Synergistic effects of traumatic head injury and apolipoprotein-epsilon 4 in patients with alzheimer's disease. Neurology 1995;45:555–7.

61. Mayeux R, Ottman R, Tang MX, et al. Genetic susceptibility and head injury as risk factors for Alzheimer's disease among community-dwelling elderly persons and their first-degree relatives. Ann Neurol 1993;33:494–501.

62. Nicoll JA, Roberts GW, Graham DI. Apolipoprotein E epsilon 4 allele is associated with deposition of amyloid beta-protein following head injury. Nat Med 1995;1:135–7.

# EXHIBIT 12

# Neurology®

## Clinical presentation of chronic traumatic encephalopathy

Robert A. Stern, Daniel H. Daneshvar, Christine M. Baugh, et al.

*Neurology* 2013;81;1122-1129 Published Online before print August 21, 2013
DOI 10.1212/WNL.0b013e3182a55f7f

**This information is current as of August 21, 2013**

The online version of this article, along with updated information and services, is
located on the World Wide Web at:
http://www.neurology.org/content/81/13/1122.full.html

*Neurology* ® is the official journal of the American Academy of Neurology. Published continuously
since 1951, it is now a weekly with 48 issues per year. Copyright © 2013 American Academy of
Neurology. All rights reserved. Print ISSN: 0028-3878. Online ISSN: 1526-632X.



AMERICAN ACADEMY OF
NEUROLOGY®

## Clinical presentation of chronic traumatic encephalopathy

Robert A. Stern, Daniel H. Daneshvar, Christine M. Baugh, et al.

*Neurology* 2013;81;1122-1129 Published Online before print August 21, 2013
DOI 10.1212/WNL.0b013e3182a55f7f

### This information is current as of August 21, 2013

| | |
|---|---|
| **Updated Information & Services** | including high resolution figures, can be found at: http://www.neurology.org/content/81/13/1122.full.html |
| **References** | This article cites 40 articles, 9 of which you can access for free at: http://www.neurology.org/content/81/13/1122.full.html##ref-list-1 |
| **Subspecialty Collections** | This article, along with others on similar topics, appears in the following collection(s): **All Cognitive Disorders/Dementia** http://www.neurology.org//cgi/collection/all_cognitive_disorders_dementia **All Genetics** http://www.neurology.org//cgi/collection/all_genetics **Brain trauma** http://www.neurology.org//cgi/collection/brain_trauma |
| **Permissions & Licensing** | Information about reproducing this article in parts (figures,tables) or in its entirety can be found online at: http://www.neurology.org/misc/about.xhtml#permissions |
| **Reprints** | Information about ordering reprints can be found online: http://www.neurology.org/misc/addir.xhtml#reprintsus |



# Clinical presentation of chronic traumatic encephalopathy



Robert A. Stern, PhD
Daniel H. Daneshvar, MA
Christine M. Baugh, MPH
Daniel R. Seichepine, PhD
Philip H. Montenigro, BS
David O. Riley, BS
Nathan G. Fritts, BA
Julie M. Stamm, BS
Clifford A. Robbins, BA
Lisa McHale, EdS
Irene Simkin, MS
Thor D. Stein, MD
Victor E. Alvarez, MD
Lee E. Goldstein, MD, PhD
Andrew E. Budson, MD
Neil W. Kowall, MD
Christopher J. Nowinski, AB
Robert C. Cantu, MD*
Ann C. McKee, MD*

Correspondence to
Dr. Stern:
bobstern@bu.edu

## ABSTRACT

**Objective:** The goal of this study was to examine the clinical presentation of chronic traumatic encephalopathy (CTE) in neuropathologically confirmed cases.

**Methods:** Thirty-six adult male subjects were selected from all cases of neuropathologically confirmed CTE at the Boston University Center for the Study of Traumatic Encephalopathy brain bank. Subjects were all athletes, had no comorbid neurodegenerative or motor neuron disease, and had next-of-kin informants to provide retrospective reports of the subjects' histories and clinical presentations. These interviews were conducted blind to the subjects' neuropathologic findings.

**Results:** A triad of cognitive, behavioral, and mood impairments was common overall, with cognitive deficits reported for almost all subjects. Three subjects were asymptomatic at the time of death. Consistent with earlier case reports of boxers, 2 relatively distinct clinical presentations emerged, with one group whose initial features developed at a younger age and involved behavioral and/or mood disturbance (n = 22), and another group whose initial presentation developed at an older age and involved cognitive impairment (n = 11).

**Conclusions:** This suggests there are 2 major clinical presentations of CTE, one a behavior/mood variant and the other a cognitive variant. *Neurology* 2013;81:1122–1129

## GLOSSARY

**AD** = Alzheimer disease; **CSTE** = Center for the Study of Traumatic Encephalopathy; **CTE** = chronic traumatic encephalopathy; **p-tau** = hyperphosphorylated tau; **RBT** = repetitive brain trauma; **TBI** = traumatic brain injury.

Chronic traumatic encephalopathy (CTE) is a neurodegenerative disease marked by widespread accumulation of hyperphosphorylated tau (p-tau).[1,2] To date, CTE has been documented in amateur and professional athletes involved in contact sports, military personnel exposed to explosive blast, and others subjected to repetitive brain trauma (RBT), including concussive and subconcussive injuries.[1–5] All reported neuropathologically confirmed cases of CTE have had exposure to RBT. However, not all individuals with histories of RBT develop CTE, indicating that additional risk factors, including genetics, likely have a role in the neuropathogenesis of this disease. For example, it has been suggested that the *APOE* ε4 allele may increase susceptibility for CTE.[6]

Previously published descriptions of the clinical presentation of CTE vary. Case reports of presumptive CTE (formerly termed dementia pugilistica or "punch-drunk" when thought limited to boxers[4]) indicated a constellation of clinical features, including impairments in cognition, behavior, and mood, and in some cases, chronic headache and motor and cerebellar dysfunction. Several case reports of boxers suggested 2 forms of presentation: 1) younger onset, with initial behavioral and mood disturbance, but with minimal cognitive and motor features; and 2) older onset, with greater cognitive impairment and, often, motor disturbance.[4,7–10] In advanced cases,

*These authors contributed equally to this work.

From the Center for the Study of Traumatic Encephalopathy (R.A.S., D.H.D., C.M.B., D.R.S., P.H.M., D.O.R., N.G.F., J.M.S., C.A.R., T.D.S., V.E.A., C.J.N., R.C.C., A.C.M.), BU Alzheimer's Disease Center (R.A.S., T.D.S., L.E.G., A.E.B., N.W.K., A.C.M.), Departments of Neurology (R.A.S., C.M.B., D.R.S., V.E.A., A.E.B., N.W.K., A.C.M.), Neurosurgery (R.A.S., R.C.C.), and Pathology (T.D.S., N.W.K., A.C.M.), Molecular Genetics Core Facility (I.S.), Boston University School of Medicine; Sports Legacy Institute (L.M., C.J.N., R.C.C.), Waltham; VA Boston Healthcare System (T.D.S., V.E.A., A.E.B., N.W.K., A.C.M.); Departments of Psychiatry, Neurology, Pathology & Laboratory Medicine, Ophthalmology, Biomedical Engineering, and Electrical & Computer Engineering (L.E.G.), Boston University School of Medicine and College of Engineering; and Department of Neurosurgery (R.C.C.), Emerson Hospital, Concord, MA.

Go to Neurology.org for full disclosures. Funding information and disclosures deemed relevant by the authors, if any, are provided at the end of the article.

© 2013 American Academy of Neurology

CTE is associated with dementia, although it is unclear whether the clinical presentation of CTE dementia is different from that associated with Alzheimer disease (AD) or other age-related neurodegenerative disorders.[11-13] Herein, we describe the clinical presentation, course, and *APOE* genotype of a sample of 36 athletes with neuropathologically confirmed CTE.

**METHODS Subjects.** The brains of 81 subjects in the Boston University Center for the Study of Traumatic Encephalopathy (CSTE) brain bank met recently published criteria for the neuropathologic diagnosis of CTE.[1] For the current study, 45 cases were excluded because of 1) primary exposure to RBT from nonathletic activities; 2) inability to contact next-of-kin or interview; and 3) presence of comorbid motor neuron disease,[14] neurodegenerative disease, or other significant neuropathology. Seven were military veterans with unknown or no athletic history, 10 had no next-of-kin contact, and 28 had comorbid neuropathologic disease. Of the 36 remaining subjects, 28 were included in a previous report[1] and 8 were new cases.

**CTE neuropathologic staging.** The cases were categorized into the 4-stage rating scale of CTE (I = least severe, IV = most severe) based on the severity of p-tau pathology, as previously reported.[1] Diagnosis and staging were conducted blind to medical history, *APOE* genotype, and informant interview.

**Interview and medical record review.** History and clinical presentation were obtained through postmortem telephone interviews with next-of-kin by a neuropsychologist (R.A.S.) blinded to neuropathologic findings and *APOE* genotype status. Medical records were available and reviewed for 23 cases. The semistructured interview was based on previous studies of postmortem dementia diagnosis made by interviews with family members.[15,16] Information queried during the interview included the following: demographics; cause of death; and athletic, military, medical, neuropsychiatric, and social/occupational histories. The interview included specific questions regarding dementia, depression, changes in cognition, behavior, mood, and motor functioning, as well as instrumental activities of daily living. Responses were qualitatively summarized into an overall assessment of the subject's presentation and course of symptoms and functioning. The number of informants interviewed per case ranged from 1 to 7 (median = 2), with each interview lasting approximately 60 minutes. Interviews were conducted at a median time of 4 months after time of death.

**APOE genotyping.** DNA was extracted from brain tissue samples using a Qiagen QIAamp DNA extraction kit (Qiagen, Valencia, CA). Two single nucleotide polymorphisms (National Center for Biotechnology Information SNPs rs429358 and rs7412) were examined using TaqMan assays (Applied Biosystems, Foster City, CA). Allelic discrimination was automated using the manufacturer's software. Positive controls, consisting of DNA of each of the 6 possible *APOE* genotypes (ε2/ε2, ε2/ε3, ε2/ε4, ε3/ε3, ε3/ε4, ε4/ε4), were included on each plate and genotyped with restriction isotyping.

**Statistical analyses.** Between-group differences were examined by independent sample *t* tests. Chi-square analyses were used for between group comparisons for categorical data. *APOE* genotype analyses comparing CTE cases with population norms[17] were conducted with the $\chi^2$ goodness-of-fit test. A probability level of $p = 0.05$ was used throughout. All statistical analyses were conducted with IBM SPSS Statistics, version 19.0 (IBM Corp., Armonk, NY).

**Standard protocol approvals, registrations, and patient consents.** Approvals for brain donation, postmortem clinical record review, interviews with family members, and neuropathologic evaluation were provided by the Institutional Review Boards of Boston University Medical Center and the Bedford VA Hospital.

**RESULTS** Table 1 summarizes the demographics, cause of death, athletic history, neuropathologic stage, and *APOE* genotypes of the sample. All subjects were male athletes, with 6 (17%) African American and 1 (3%) of Hispanic origin. There were 29 football players (22 who played professionally, 4 who only played through college, and 3 who only played through high school), 3 professional hockey players, 1 professional wrestler, and 3 boxers (1 professional, 2 amateur). Of the football players, the most common position played was lineman (48%), followed by running back (21%), linebacker (10%), and smaller numbers of other positions. There were no quarterbacks or kickers. Of the 36 subjects, 3 (8%) were asymptomatic. Tables 2 and 3 describe the clinical features and course of the remaining 33 subjects.

Eleven of the symptomatic cases were reported to have initial changes in cognitive functioning (e.g., episodic memory impairment, executive dysfunction) before behavioral or mood disturbance. Initial changes in behavior (e.g., explosivity, impulsivity, violence) before mood or cognitive disturbance were reported in 13 subjects. Mood changes (e.g., depression, hopelessness) were reported as the initial feature in 9 subjects. None of the subjects had motor disturbance as their initial feature. The subgroups with initial behavioral symptoms and mood changes were similar in age of initial presentation, age of death, and neuropathologic stage, and were combined into a behavior/mood group (n = 22). Subjects whose initial difficulties involved cognitive functioning comprised a cognition group (n = 11). Tables 1–3 describe demographics and clinical features for the behavior/mood and cognition subgroups.

Ten subjects were diagnosed with dementia; 4 were clinically diagnosed with AD, 4 with "dementia pugilistica" or "football-related" dementia, and 2 with unspecified dementia. All had stage IV CTE. Of the 10, 7 exhibited cognitive symptoms initially, 2 exhibited mood symptoms initially, and 1 initially presented with behavior changes. The mean age of symptom onset for the dementia group was 57.7 years (SD = 18.3; range 25–82) and the mean age of dementia diagnosis was 72.6 years (SD = 8.5, range 56–83). The mean length of time between dementia diagnosis and death was 8.0 years (SD = 5.5, range <1–15). Four subjects with dementia had gait difficulties, 3 had

| Table 1 | Description of sample by initial clinical presentation | | |
|---|---|---|---|
| Variable | All subjects (n = 36) | Behavior/mood group (n = 22)[a] | Cognition group (n = 11)[a] |
| Age at death, y, mean ± SD (range) | 56.8 ± 21.9 (17–98) | 51.4 ± 18.5 (21–84)[b] | 69.2 ± 21.8 (34–98)[b] |
| Cause of death, % | | | |
| Systemic illness | 41.8 | 49.8 | 27.3 |
| Accidental overdose | 13.9 | 18.2 | 9.1 |
| Dementia-related | 13.9 | 9.1 | 27.3 |
| Suicide | 16.7 | 18.2 | 18.2 |
| Injury | 8.4 | 4.5 | 18.2 |
| Years of education, mean ± SD (range) | 15.0 ± 2.4 (10–20) | 14.5 ± 2.4 (10–18) | 15.7 ± 1.4 (13–18) |
| Football as primary sport, % | 80.6 | 72.7 | 90.9 |
| Total years of football played, mean ± SD (range) | 15.3 ± 6.4 (3–25) | 14.4 ± 6.5 (3–25) | 18.2 ± 5.9 (5–24) |
| Neuropathologic severity stage, % | | | |
| Stage I | 8 | 9.1 | 0 |
| Stage II | 28 | 31.8 | 9.1 |
| Stage III | 31 | 31.8 | 36.4 |
| Stage IV | 33 | 27.3 | 54.5 |
| APOE genotype,[c] % | | | |
| ε2/ε2 | 0 | 0 | 0 |
| ε2/ε3 | 3 | 4.5 | 0 |
| ε2/ε4 | 0 | 0 | 0 |
| ε3/ε3 | 63 | 63.6 | 54.5 |
| ε3/ε4 | 26 | 27.3 | 27.3 |
| ε4/ε4 | 9 | 4.5 | 18.2 |

[a] Three subjects were asymptomatic; percentages within initial feature group are based on the percent of symptomatic subjects.
[b] Statistically significant between-group difference, $p < 0.05$.
[c] One subject did not have APOE genotyping.

a history of falls, and 1 had a history of tremor. Two subjects (20%) with dementia had a history of headaches, compared with 11 subjects (44%) without dementia. All 10 subjects had both memory and executive impairment, 7 had language deficits, and 2 had visuospatial difficulties. Six of the 10 were characterized by behavioral impairment, predominantly described as having a "short fuse" or being "out of control." Four of the 10 were physically violent and 2 were verbally violent. Although one subject demonstrated disinhibited behavior, none of the subjects had disinhibited speech or socially inappropriate behaviors. Of the 7 who were reported to have mood disturbance, 2 had predominantly sadness/depressive symptoms and 2 had anxiety symptoms. The only 2 subjects in the entire sample reported to have had apathy were in the dementia group.

The proportions of APOE genotypes (i.e., ε4 homozygotes, combined ε4 homozygotes and heterozygotes, and ε4 noncarriers) in our CTE sample were significantly different from those found in an age-matched normative sample[17] ($\chi^2$ [2] = 6.63, $p < 0.05$). A

binomial test revealed that the primary difference between our CTE sample and population norms was a greater proportion of ε4 homozygotes in our sample ($p < 0.05$). When examining the 2 initial presentation groups, there were no differences between the behavior/mood group and the age-matched normative sample ($\chi^2$ [2] = 0.46, $p > 0.05$). However, there were proportionally more ε4 homozygotes in the cognition group than expected ($\chi^2$ [2] = 13.3, $p < 0.05$). The relative proportions of APOE genotypes in our 10 subjects with dementia were not significantly different from those seen in AD[18] ($\chi^2$ [2] = 1.52, $p > 0.05$).

**DISCUSSION** Consistent with earlier reports of boxers,[4,7–10] our findings suggest that there may be 2 different clinical presentations of CTE, with one initially exhibiting behavioral or mood changes, and the other initially exhibiting cognitive impairment. The behavior/mood group demonstrated symptoms at a significantly younger age than the cognition group. Although almost all subjects in the behavior/

**-1780-**

**Table 2** Clinical features and course by initial clinical presentation

| Variable | All symptomatic subjects (n = 33)[a] | Behavior/mood group (n = 22)[a] | Cognition group (n = 11)[a] |
|---|---|---|---|
| Percent with progressive course | 90.9 | 86.4 | 100 |
| Percent with dementia diagnosis at death | 30.3 | 18.2[b] | 54.5[b] |
| Age first clinical feature observed, y, mean ± SD (range) | 42.5 ± 17.8 (19–82) | 34.5 ± 11.6 (19–59)[b] | 58.5 ± 17.7 (31–82)[b] |
| Duration of clinical features, y, mean ± SD (range) | 14.9 ± 12.9 (0–51) | 17.0 ± 14.3 (0–51) | 10.7 ± 8.5 (1–30) |
| **Initial clinical domain, %** | | | |
| Cognition | 33.3 | — | 100 |
| Behavior | 39.4 | 59.1 | — |
| Mood | 27.3 | 40.9 | — |
| **Clinical domain(s) ever observed during life, %** | | | |
| Cognition | 93.9 | 90.9 | 100 |
| Behavior | 75.8 | 86.4[b] | 54.5[b] |
| Mood | 84.8 | 95.4[b] | 63.6[b] |
| Motor | 30.3 | 27.3 | 36.4 |
| Cognition and behavior | 75.8 | 86.4 | 54.5 |
| Cognition and mood | 81.8 | 90.9 | 63.6 |
| Cognition and motor | 30.3 | 27.3 | 36.4 |
| Behavior and mood | 72.7 | 86.4 | 45.5 |
| Behavior and motor | 27.3 | 27.3 | 27.3 |
| Mood and motor | 30.3 | 27.3 | 36.4 |
| Cognition, behavior, and mood | 72.7 | 86.4 | 45.5 |
| Cognition, behavior, and motor | 27.3 | 27.3 | 27.3 |
| Cognition, mood, and motor | 30.3 | 27.3 | 36.4 |
| Behavior, mood, and motor | 27.3 | 27.3 | 27.3 |
| All 4 domains | 27.3 | 27.3 | 27.3 |
| History of significant headaches, % | 34.4 | 38.1 | 27.3 |
| Death by suicide, % | 18.2 | 18.2 | 18.2 |
| History of substance abuse, % | 39.4 | 36.4 | 45.5 |

[a] Three subjects were asymptomatic; percentages are based on the percent of symptomatic subjects.
[b] Statistically significant, p < 0.05.

mood group demonstrated cognitive impairments at some point, significantly fewer subjects in the cognition group demonstrated behavioral and mood changes during the course of their illness. There were distinctions between the 2 groups regarding specific features present in each domain. The behavior/mood group was significantly more explosive, out of control, physically and verbally violent, and depressed than the cognition group. Whereas all subjects in the cognition group were reported to have impaired episodic memory, approximately one-quarter of the behavior/mood group did not have memory difficulties. Subjects in the cognition group were significantly more likely to progress to dementia than those in the behavior/mood group but were also significantly older at the time of death. Given the small sample size in

this study, however, it is unclear whether these 2 apparently distinct clinical subtypes are representative of all individuals with CTE. In addition, the subsample of cases with dementia is also small, thus limiting the generalization of the presentation of CTE dementia. Further research is needed to clarify and validate these findings.

We examined the potential role of the *APOE* ε4 allele as a susceptibility factor for CTE. Our findings indicate that there were significantly more ε4 homozygotes in the sample than expected in a normal, age-matched population. Furthermore, this effect was largely driven by the cognition group: 2 of 11 subjects in the cognition group and 1 of 22 subjects in the behavior/mood group were homozygous for the ε4 allele. In addition, 1 of the 10 CTE subjects diagnosed

**-1781-**

| Variable | All symptomatic subjects, % (n = 33) | Behavior/mood group, % (n = 22)[a] | Cognition group, % (n = 11)[a] |
|---|---|---|---|
| **Cognitive features** | | | |
| Memory impairment | 84.8 | 77.3 | 100 |
| Executive dysfunction | 78.8 | 72.7 | 90.9 |
| Attention and concentration difficulties | 72.7 | 63.6 | 90.9 |
| Language impairment | 57.6 | 54.5 | 63.6 |
| Visuospatial difficulties | 54.5 | 54.5 | 54.5 |
| **Behavioral features** | | | |
| Explosivity | 57.6 | 72.7[b] | 27.3[b] |
| Impulse control problems | 45.5 | 54.5 | 27.3 |
| "Out of control" | 51.5 | 63.6[b] | 27.3[b] |
| Physically violent | 51.5 | 68.2[b] | 18.2[b] |
| Verbally violent | 48.5 | 73.6[b] | 18.2[b] |
| Disinhibited speech | 0 | 0 | 0 |
| Disinhibited behavior | 3.0 | 0 | 9.1 |
| Socially inappropriate | 3.0 | 0 | 9.1 |
| Paranoia | 18.2 | 22.7 | 9.1 |
| **Mood features** | | | |
| Sadness/depression | 63.6 | 86.4[b] | 18.2[b] |
| Anxiety/agitation | 15.2 | 13.6 | 18.2 |
| Manic behavior/mania | 3.0 | 4.5 | 0 |
| Suicidal ideation/attempts | 30.3 | 31.8 | 27.3 |
| Hopelessness | 63.6 | 72.7 | 45.5 |
| Apathy | 6.1 | 9.1 | 0 |

Table 3    Specific clinical features by initial clinical presentation

[a] Three subjects were asymptomatic; percentages are based on the percent of symptomatic subjects.
[b] Statistically significant between-group difference, p < 0.05.

with dementia during life was ε4 homozygous. Although interpretation and generalization of these results is difficult because of the small sample, the proportion of ε4 homozygosity is in contrast to population norms in which ε4 homozygosity only occurs in 1% to 3% of the general population,[17] and more consistent with the 10% of patients with AD who are ε4 homozygous.[18] The *APOE* ε4 variant is the largest known genetic risk factor for sporadic AD.[18] It has been associated with β-amyloid, but not tau, deposition in cognitively normal aging.[19] *APOE* ε4 has also been associated with greater severity of cognitive deficits and longer recovery time after traumatic brain injury (TBI) and RBT in a variety of populations, including boxers and professional football players,[20–24] and may increase the risk of clinical dementia after TBI.[25] It has been hypothesized that the *APOE* ε4 isoform may have direct neurotoxic effects leading to mitochondrial dysfunction and cytoskeletal changes, resulting in increased risk of neurodegeneration.[26] Despite

the small sample size and other limitations in the current study, future research on the role of *APOE* in CTE risk appears warranted. However, other potential susceptibility genes also merit consideration, including mutations to the microtubule-associated protein tau (*MAPT*) gene, the progranulin (*GRN*) gene, and the chromosome 9 open reading frame 72 (*C9ORF72*) gene. Moreover, additional nongenetic risk factors for CTE should be examined in future research, including studies to determine what specific aspects of RBT exposure (e.g., types, severity, frequency, initial age, and duration of trauma) are associated with CTE, as well as what potential lifestyle variables (e.g., diet, exercise, obesity, steroid use) are associated with the disease initiation and variability in presentation.

It is noteworthy that motor features, including parkinsonism, were not common in our sample. This is in contrast to some earlier descriptions of CTE in boxers, in which these motor features were quite prominent.[4] However, our findings are consistent with other case reports of predominantly younger onset boxers, in which motor disturbance was not common.[4,7–10] It is not clear why some individuals with CTE develop motor features and others do not. One possibility may be the differences in the biomechanics of injury. For example, in boxing, angular acceleration and torsional injury involving the brainstem and cerebellum is thought to be a pathogenic mechanism of TBI after a hook or jab to the jaw, whereas transverse and linear acceleration and deceleration injury are more characteristic of football dynamics.[27,28] As a result, degeneration of brainstem structures that produce parkinsonism, such as the substantia nigra, might occur earlier in the course of disease in boxers. In contrast, football players might develop substantia nigra degeneration later in the course of their disease, at a time when widespread cortical and basal ganglionic degeneration mask the development of motor disturbance. Related mechanisms of injury leading to CTE have been suggested by recent experimental studies of blast neurotrauma.[5]

Although many of the symptoms of CTE are similar to AD and other causes of dementia,[11,29] there are factors that appear to clinically differentiate CTE from other age-related neurodegenerative diseases. For example, behavioral changes observed early in the course of CTE could be confused with the behavioral variant of frontotemporal dementia, especially in a patient in his or her 50s without any significant memory impairment. However, common changes in the behavioral variant of frontotemporal dementia typically include disinhibited and inappropriate behavior and speech, as well as apathy[30]; these symptoms were not frequent in our case series. In addition, the progressive memory impairment observed in more than 80% of our CTE cases, and in all 10 of

the subjects with dementia, could lead to an inaccurate diagnosis of AD when the underlying disease is CTE.[12]

It is not clear what neuropathologic changes may lead to the 2 possible clinical presentations observed in this study. It is unlikely that the small, focal cortical p-tau lesions found in stage I and II CTE produce clinically meaningful behavioral and mood symptoms. However, these features may be associated with the neurofibrillary tangles in the locus coeruleus and amygdala found in younger subjects in a previous report.[1] The memory and executive dysfunction in the older cognition group may be due to the more extensive degenerative changes in the hippocampus and frontal cortices seen in CTE stages III and IV.[1] It is possible, however, that some of the features evident in the younger behavior/mood group were due to persistent postconcussion syndrome,[31] with unresolved or even progressive[32] axonal damage resulting from the initial traumas. Axonal injury has been shown in all neuropathologic stages of CTE, ranging from multifocal, perivascular axonal varicosities in the cortex and white matter in stages I and II, to more extensive, diffuse axonal loss in the cortex and white matter in stages III and IV.[1] Recent reports have demonstrated that repetitive subconcussive trauma is associated with white matter abnormalities on diffusion tensor imaging[33,34] and abnormal functional MRI tests.[35] Additional findings indicate that there may be persistent and progressive inflammation and white matter degeneration after even a single TBI.[36] Further research is required to delineate these clinicopathologic relationships.

Three subjects in our case series were asymptomatic. One of these cases was only 17 years old and had stage I neuropathology. Both of the other 2 cases were much older football players (one in 40s, one in 80s), had stage II neuropathology, and were homozygous for APOE ε3. Both also had advanced graduate degrees, were very successful in their professional careers, and were described as extremely intelligent. Although speculative, these findings raise the possibility that cognitive reserve[37] may have a role in protecting against the clinical manifestations of CTE. A recent report suggests that cognitive reserve may mitigate cognitive decline in older individuals with earlier life TBI.[38] Future research examining the roles of cognitive reserve, genetics, and environmental factors in determining resilience to clinical manifestations and the progression of p-tau pathology will help elucidate the pathobiology of CTE.

Although these findings are based on the largest cohort of subjects with neuropathologically confirmed CTE without comorbidities studied to date, interpretation and generalizability of these results are limited by several factors. First, the overall sample size is small, and caution should be taken when generalizing these results to the larger population of athletes or to the overall clinical presentation of CTE. In addition, there are inherent selection biases imposed in a postmortem brain donation study. For example, families choosing to donate may be more likely to have witnessed symptoms during life. This could lead to reports of more severe symptoms than a typical CTE population, and could account for only having 3 asymptomatic cases. From the broader CTE cohort in the CSTE brain bank, we selected a smaller sample by eliminating individuals with comorbid pathology and only including athletes; this restriction may further limit the generalizability of our findings. Results from this study should not be interpreted in terms of population prevalence or generalized to living athletes with CTE. In addition, there is the potential for reduced reliability and validity of retrospective reports from family members after the death of a loved one. However, several studies have demonstrated adequate reliability and validity of these verbal autopsies in a variety of patient populations, including those with dementia[15,16] and psychiatric disorders.[39] There also may be differences in the accuracy of informant reports when comparing younger and older subjects. That is, informants of older subjects were asked to recall early- or midlife events possibly resulting in reduced accuracy compared with the informants of younger subjects. Finally, there was no comparison group of former athletes without CTE. This may limit the ability to draw conclusions that the clinical presentation described is specifically due to the effects of CTE. In our available dataset of subjects whose tissue had been examined at the BU CSTE brain bank, there was not an adequate number of subjects without CTE to make such a comparison. For example, 34 of 35 former professional football players had neuropathologically confirmed CTE.[1] Future research is needed to clarify the clinical presentation of CTE. The development of biomarkers (e.g., blood, CSF, neuroimaging, and tau-specific radiotracers) will result in the ability to detect and diagnose CTE during life and subsequent studies of risk factors, epidemiology, and treatment.[40]

## AUTHOR CONTRIBUTIONS

Dr. Stern was responsible for drafting the manuscript, study concept and design, and analysis and interpretation of data. He also conducted some of the statistical analyses and had a role in obtaining funding. Mr. Daneshvar participated in drafting the manuscript, as well as acquisition of data, statistical analysis, and interpretation of data. Ms. Baugh participated in drafting the manuscript, as well as study design and acquisition of data. Dr. Seichepine participated in drafting the manuscript, as well as analysis and interpretation of data. Mr. Montenigro participated in drafting the manuscript and in study design. Mr. Riley participated in revising the manuscript, study design, and acquisition of data. Mr. Fritts, Ms. Stamm, Mr. Robbins, and Ms. McHale participated in revising the manuscript and acquisition of data. Ms. Simkin participated in revising the manuscript as well as conducting the APOE genotyping. Dr. Stein and Dr. Alvarez participated in revising the

manuscript, as well as acquisition and analysis of neuropathologic data. Dr. Goldstein and Dr. Budson participated in revising the manuscript and interpreting the data. Dr. Kowall participated in revising the manuscript, interpreting the data, and obtaining funding. Mr. Nowinski participated in revising the manuscript, study concept, acquisition of data, and obtaining funding. Dr. Cantu participated in drafting the manuscript, study design and concept, interpreting data, and obtaining funding. Dr. McKee participated in drafting the manuscript, study design and concept, acquiring, analyzing, and interpreting clinical data, acquiring, analyzing, and interpreting the neuropathologic data, and obtaining funding.

## STUDY FUNDING

Supported by NIH (R01 NS078337, P30 AG13846), Department of Veterans Affairs (CSP 501, B6796-C), Sports Legacy Institute, National Operating Committee on Standards for Athletic Equipment, and unrestricted gifts from the National Football League and the Andlinger Foundation.

## DISCLOSURE

R. Stern is funded by NIH grants R01 NS078337, R01 MH080295, R01 CA129769, P30 AG13846, U01 AG10483, and U01 AG015477; and has received research support from the Alzheimer's Association, the Andlinger Foundation, the National Operating Committee on Standards for Athletic Equipment, Jansen Alzheimer's Immunotherapy, Pfizer, and Medivation. He has been a paid consultant to Jansen Alzheimer's Immunotherapy, Outcome Science, and Elan Pharmaceuticals, and he has been a paid Expert Advisor to Eli Lilly. He receives royalties from Psychological Assessment Resources for the publication of neuropsychological tests. D. Daneshvar and C. Baugh report no disclosures. D. Seichepine receives funding from the Center for Integration of Medicine and Innovative Technology, as well as from NIH training grant T32 AG036697. P. Montenigro report research support from Boston University School of Medicine for a summer research internship. D. Riley and N. Fritts report no disclosures. J. Stamm is supported by NIH grant F31NS081957. C. Robbins reports no disclosures. L. McHale is paid by Sports Legacy Institute for her work as Director of Family Relations. I. Simkin reports no disclosures. T. Stein is supported by NIH P30 AG13846 pilot grant. V. Alvarez is supported by the Department of Veterans Affairs. L. Goldstein is funded through grants from the NIH P30 AG13846, NASA SK-11-107, DOE DE-PS02-08ER08, and Cure Alzheimer's Fund. A. Budson is funded through the Department of Veterans Affairs. He receives royalties from Elsevier and Wiley-Blackwell for the publication of books. N. Kowall is funded by NIH grant P30 AG13846 and the Department of Veterans Affairs. C. Nowinski is supported by the Center for Integration of Medicine and Innovative Technology and the Andlinger Foundation. He receives consulting fees from MC10, and he receives royalties from the publication of his book, *Head Games*, and the documentary, "Head Games." R. Cantu is Vice President of the National Operating Committee on Standards for Athletic Equipment, Cofounder and Medical Director of Sports Legacy Institute, and Senior Advisor to the NFL's Head, Neck and Spine Committee. He has received support from the Andlinger Foundation. He gave expert testimony in the trials of Carey vs Northwestern Memorial Hospital, Arbec vs Dr. Hardin and St. Joseph's, and Grane vs Methodist Medical Center of Illinois. He receives royalties from the publication of the books, *Catastrophic Football Injuries*, *Diabetes and Exercise*, *Neurologic Head and Spine Injuries*, and *Concussions and Our Kids*. A. McKee is funded through NIH grants P30 AG13846, R01 AG1649, and the Department of Veterans Affairs, and received research support for this work from the Department of Veterans Affairs; Veterans Affairs Biorepository (CSP 501); NIA supplement 0572063345-5, National Operating Committee on Standards for Athletic Equipment, the National Football League (unrestricted gift), and the Andlinger Foundation. Go to Neurology.org for full disclosures.

*Received March 16, 2013. Accepted in final form June 18, 2013.*

## REFERENCES

1. McKee AC, Stern RA, Nowinski CJ, et al. The spectrum of disease in chronic traumatic encephalopathy. Brain 2013;136:43–64.
2. McKee AC, Cantu RC, Nowinski CJ, et al. Chronic traumatic encephalopathy in athletes: progressive tauopathy following repetitive head injury. J Neuropathol Exp Neurol 2009;68:709–735.
3. Goldstein LE, Fisher AM, Tagge CA, et al. Chronic traumatic encephalopathy in blast-exposed military veterans and a blast neurotrauma mouse model. Sci Transl Med 2012;4:134ra60.
4. Corsellis JA, Bruton CJ, Freeman-Browne D. The aftermath of boxing. Psychol Med 1973;3:270–303.
5. Omalu BI, DeKosky ST, Minster RL, Kamboh MI, Hamilton RL, Wecht CH. Chronic traumatic encephalopathy in a National Football League player. Neurosurgery 2005;57:128–134.
6. Gandy S, Dekosky ST. ApoE ε4 status and traumatic brain injury on the gridiron or the battlefield. Sci Transl Med 2012;4:134ed4.
7. Mawdsley C, Ferguson FR. Neurological disease in boxers. Lancet 1963;2:799–801.
8. Soeder M, arndt T. Affektive storungen und veränderungen des hirnstrombildes bei boxern. Dtsch Med Wochenschr 1954;79:1792–1795.
9. Grahmann H, Ule G. Beitrag zur kenntis der chronischen cerebralen krankheitsbieder bei boxen. Psychiatr Neurol 1957;134:261–283.
10. Jokl E, Guttman E. Neurologisch-psychiatrische Untersuchung an boxern. Münch Med Woch 1931;1:560.
11. Shively S, Scher AI, Perl DP, Diaz-Arrastia R. Dementia resulting from traumatic brain injury: what is the pathology? Arch Neurol 2012;69:1245–1251.
12. Areza-Fegyveres R, Rosemberg S, Castro RM, et al. Dementia pugilistica with clinical features of Alzheimer's disease. Arq Neuropsiquiatr 2007;65:830–833.
13. Sayed N, Culver C, Dams-O'Connor K, Hammond F, Diaz-Arrastia R. Clinical phenotype of dementia after traumatic brain injury. J Neurotrauma 2013;30:1117–1122.
14. McKee AC, Gavett BE, Stern RA, et al. TDP-43 proteinopathy and motor neuron disease in chronic traumatic encephalopathy. J Neuropathol Exp Neurol 2010;69:918–929.
15. Barber R, Snowden JS, Craufurd D. Frontotemporal dementia and Alzheimer's disease: retrospective differentiation using information from informants. J Neurol Neurosurg Psychiatry 1995;59:61–70.
16. Davis PB, White H, Price JL, McKeel D, Robins LN. Retrospective postmortem dementia assessment: validation of a new clinical interview to assist neuropathologic study. Arch Neurol 1991;48:613–617.
17. McKay GJ, Silvestri G, Chakravarthy U, et al. Variations in apolipoprotein E frequency with age in a pooled analysis of a large group of older people. Am J Epidemiol 2011;173:1357–1364.
18. Ward A, Crean S, Mercaldi CJ, et al. Prevalence of apolipoprotein E4 genotype and homozygotes (APOE e4/4) among patients diagnosed with Alzheimer's disease: a systematic review and meta-analysis. Neuroepidemiology 2012;38:1–17.
19. Morris JC, Roe CM, Xiong C, et al. APOE predicts Aβ but not tau Alzheimer's pathology in cognitively normal aging. Ann Neurol 2010;67:122–131.
20. Friedman G, Froom P, Sazbon L, et al. Apolipoprotein E-epsilon4 genotype predicts a poor outcome in survivors of traumatic brain injury. Neurology 1999;52:244–248.
21. Teasdale GM, Nicoll JA, Murray G, Fiddes M. Association of apolipoprotein E polymorphism with outcome after head injury. Lancet 1997;350:1069–1071.

**-1784-**

22. Jordan BD, Relkin NR, Ravdin LD, Jacobs AR, Bennett A, Gandy S. Apolipoprotein E epsilon4 associated with chronic traumatic brain injury in boxing. JAMA 1997;278:136–140.

23. Katzman R, Galasko DR, Saitoh T, et al. Apolipoprotein-epsilon4 and head trauma: synergistic or additive risks? Neurology 1996;46:889–891.

24. Kutner KC, Erlanger DM, Tsai J, Jordan B, Relkin NR. Lower cognitive performance of older football players possessing apolipoprotein E epsilon4. Neurosurgery 2000;47: 651–657.

25. Mayeux R, Ottman R, Maestre G, et al. Synergistic effects of traumatic head injury and apolipoprotein-epsilon 4 in patients with Alzheimer's disease. Neurology 1995;45: 555–557.

26. Mahley RW, Huang Y. Apolipoprotein E sets the stage: response to injury triggers neuropathology. Neuron 2012; 76:871–885.

27. Blennow K, Hardy J, Zetterberg H. The neuropathology and neurobiology of traumatic brain injury. Neuron 2012; 76:886–899.

28. Viano DC, Casson IR, Pellman EJ, et al. Concussion in professional football: comparison with boxing head impacts—part 10. Neurosurgery 2005;57:1154–1172.

29. McKhann GM, Knopman DS, Chertkow H, et al. The diagnosis of dementia due to Alzheimer's disease: recommendations from the National Institute on Aging-Alzheimer's Association workgroups on diagnostic guidelines for Alzheimer's disease. Alzheimers Dement 2011;7:263–269.

30. Rascovsky K, Hodges JR, Knopman D, et al. Sensitivity of revised diagnostic criteria for the behavioural variant of frontotemporal dementia. Brain 2011;134:2456–2477.

31. Bigler ED. Neuropsychology and clinical neuroscience of persistent post-concussive syndrome. J Int Neuropsychol Soc 2008;14:1–22.

32. Johnson VE, Stewart W, Smith DH. Axonal pathology in traumatic brain injury. Exp Neurol 2013;246:35–43.

33. Koerte IK, Kaufmann D, Hartl E, et al. A prospective study of physician-observed concussion during a varsity university hockey season: white matter integrity in ice hockey players. Part 3 of 4. Neurosurg Focus 2012;33:E3.

34. Koerte IK, Ertl-Wagner B, Reiser M, Zafonte R, Shenton ME. White matter integrity in the brains of professional soccer players without a symptomatic concussion. JAMA 2012;308:1859–1861.

35. Breedlove EL, Robinson M, Talavage TM, et al. Biomechanical correlates of symptomatic and asymptomatic neurophysiological impairment in high school football. J Biomech 2012;45:1265–1272.

36. Johnson VE, Stewart JE, Begbie FD, Trojanowski JQ, Smith DH, Stewart W. Inflammation and white matter degeneration persist for years after a single traumatic brain injury. Brain 2013;136:28–42.

37. Stern Y. Cognitive reserve in ageing and Alzheimer's disease. Lancet Neurol 2012;11:1006–1012.

38. Moretti L, Cristofori I, Weaver SM, Chau A, Portelli JN, Grafman J. Cognitive decline in older adults with a history of traumatic brain injury. Lancet Neurol 2012;11:1103–1112.

39. Deep-Soboslay A, Akil M, Martin CE, et al. Reliability of psychiatric diagnosis in postmortem research. Biol Psychiatry 2005;57:96–101.

40. Baugh CM, Stamm JM, Riley DO, et al. Chronic traumatic encephalopathy: neurodegeneration following repetitive concussive and subconcussive brain trauma. Brain Imaging Behav 2012;6:244–254.

# This Week's *Neurology*® Podcast



### The complexities of acute stroke decision-making (See p. 1130)

This podcast opens and closes with Dr. Robert Gross, Editor-in-Chief, briefly discussing highlighted articles from the September 24, 2013, issue of *Neurology*. In the second segment, Dr. Brett Kissela talks with Dr. Michel Shamy about his paper on the complexities of acute stroke decision-making. Next, Dr. Roy Strowd reads our e-Pearl of the week about Adie's tonic pupil. Then, Dr. Brett Kissela focuses his interview with Dr. Lou Caplan on his medical education and contributions to the field of neurology, interactions with C. Miller Fisher, and advice to our younger listeners beginning their careers. Disclosures can be found at www.neurology.org.

At www.neurology.org, click on "RSS" in the Neurology Podcast box to listen to the most recent podcast and subscribe to the RSS feed.

**CME Opportunity:** Listen to this week's *Neurology* podcast and earn 0.5 AMA PRA Category 1 CME Credits™ by answering the multiple-choice questions in the online podcast quiz.

# EXHIBIT 13



**Written Testimony of Robert A. Stern, Ph.D.**

Professor of Neurology, Neurosurgery, and Anatomy & Neurobiology

Director, Clinical Core, BU Alzheimer's Disease Center

Co-Founder, Center for the Study of Traumatic Encephalopathy

Boston University School of Medicine

Before the Special Committee on Aging

United States Senate

Hearing on "State of Play: Brain Injuries and Diseases of Aging"

Wednesday, June 25, 2014

Good afternoon, Mr. Chairman, Ranking Member Collins, and distinguished Members of the Committee. It is a great honor to appear before you today for this hearing on "Brain Injuries and Diseases of Aging." My name is Dr. Robert Stern. I am a Professor of Neurology, Neurosurgery, and Anatomy & Neurobiology at Boston University School of Medicine. I am also the Director of the Clinical Core of the Boston University (BU) Alzheimer's Disease Center, one of 29 Alzheimer's research centers funded by the National Institute on Aging. In 2008, I co-founded the BU Center for the Study of Traumatic Encephalopathy (now referred to as the BU CTE Center) with Dr. Ann McKee, Dr. Robert Cantu, and Mr. Christopher Nowinski who is also testifying before you today.

For the past 25 years I have been conducting clinical neuroscience research, primarily focused on the cognitive, mood, and behavioral changes of aging, in general, and in neurodegenerative diseases, in particular. I have been on the faculties of the University of North Carolina School of Medicine, Brown Medical School, and, for the past 10 years, Boston University School of Medicine. In my role in the BU Alzheimer's Disease Center, I oversee all clinical research pertaining to Alzheimer's disease (AD), including studies aimed at the diagnosis, genetics, prevention, and treatment of this devastating disease.

**Chronic Traumatic Encephalopathy (CTE)**

Since 2008, my research has focused on the long-term consequences of repetitive brain trauma in athletes. In particular, I have been studying the neurodegenerative disease, chronic traumatic encephalopathy or CTE. CTE is a progressive neurodegenerative disease that can lead to dramatic changes in mood, behavior, and cognition, eventually leading to dementia. It is similar to AD but is a unique disease, easily distinguished from AD and other diseases through post-mortem neuropathological examination. CTE has been found in individuals from ages 16-98, including youth, college, and professional contact sport athletes (including football, hockey, soccer, and rugby players), military service members exposed to blast trauma and other brain injuries, and others with a history of repetitive brain trauma, such as physically abused women, developmentally disabled head bangers, and seizure disorder patients. (See **Table 1.**)

Although CTE has been known to affect boxers since the 1920s (previously referred to as "punch drunk" or dementia pugilistica), it is only recently—since CTE was diagnosed in several deceased former professional NFL players—that this disease has received greater medical and media attention. However, the scientific knowledge of CTE is in its infancy. The little that is known is based primarily on post-mortem examinations of brain tissue and interviews from the family members of the deceased athletes. What these studies have shown

Written Testimony of Dr. Robert Stern      Special Committee on Aging
Boston University      United States Senate
Page 3      June 25, 2014

is that, in some individuals, early repetitive brain trauma triggers a cascade of events in the brain leading to progressive destruction of the brain tissue. The hallmark feature of CTE is the build-up of an abnormal protein called tau (See **Figure**; based on the work of Dr. McKee), one of the abnormal proteins also seen in AD (McKee et al., 2013). These changes in the brain can begin years, or even decades, after the last brain trauma or end of athletic involvement, and can lead to memory loss, poor judgment, impulse control problems, aggression, depression, suicidality, movement problems, and, eventually, progressive dementia (See **Table 2**).



**Figure of CTE Neuropathology.** <u>Left Top</u>: Section of brain of 65 year old healthy man demonstrating no evidence of abnormal tau depositions. <u>Left Bottom</u>: Microscopic enhancement of same brain sample demonstrating no evidence of tau neurofibrillary tangles that would have shown up as brown from immunostain. <u>Middle Top</u>: Section of brain from 45 year old John Grimsley, a former NFL football player who had a five year decline in functioning (e.g., poor memory, short fuse) prior to his death from an accidental gunshot wound; brown areas are abnormal tau deposits. <u>Middle Bottom</u>: Microscopic enhancement of Grimsley's brain demonstrating neurofibrillary tangles. <u>Right Top</u>: Section of brain of 73 year old former professional boxer who died in a nursing home with clinical diagnosis of dementia pugilistica after several year decline in functioning; brown areas demonstrate widespread tau deposition. <u>Right Bottom</u>: microscopic enhancement of boxer's brain demonstrating widespread tau deposits

**The Symptoms of CTE**

Although the cognitive changes in CTE are very similar to those in AD, many individuals with CTE develop the significant changes in mood and behavior relatively early in life (Stern, et al., 2013) that can lead to significant distress for the individual with CTE as well as their family, friends, and other loved ones. These mood and behavioral impairments caused by CTE are typically misdiagnosed and attributed to routine psychiatric disorders, stress, substance abuse, or pre-existing personality traits. However, it is completely expected that the areas of the brain

damaged in CTE would lead to these problems, including depression, impulsivity, emotional lability, irritability, and behavioral dyscontrol. It is noteworthy that the much heralded "NFL Settlement" (currently in limbo while the judge examines several issues) began as a class action to address the issue of CTE in former NFL players and to provide the players and their families with appropriate compensation for the losses and distress experienced due to CTE. However, the "settlement," as it is currently written, does not provide any compensation for individuals with the mood and/or behavioral impairments so common in CTE. For example, the families of well-known former players who died of suicide and were found to have CTE post-mortem, such as Junior Seau and Dave Duerson, would not receive any benefits under the currently written settlement if they died after the acceptance of the settlement. Rather, only individuals with the memory, cognitive, and functional independence difficulties associated with Alzheimer's disease dementia would meet criteria for compensation.

| Table 1. All cases of neuropathologically confirmed cases of CTE have had a history of repetitive brain trauma. CTE has been diagnosed in the following individuals: |
|---|
| Professional football players |
| College football players |
| High school football and other contact sport athletes |
| Professional soccer players |
| Semiprofessional soccer player |
| Professional rugby players |
| Boxers |
| Mixed martial art athlete |
| Combat military service members |
| Others, including a domestically abused woman, seizure disorder patients, developmentally disabled headbanger |

Like other neurodegenerative diseases, CTE can only be diagnosed through post-mortem neuropathological examination of brain tissue. Dr. Ann McKee from our BU center has examined the brains of more athletes and others with repetitive brain trauma than any other neuropathologist. As part of the investigation of these post-mortem cases, I have had the great privilege and honor to interview the family members of approximately 100 deceased former athletes who were diagnosed with CTE after death by Dr. McKee and her team. From these interviews I have begun to learn about the clinical course and presentation of this disease. But, more importantly, I have learned about the tremendous pain and suffering the family members experienced while their loved one's life was destroyed by the progressive destruction of the brain. I have spoken with spouses of former professional football players who slowly lost their ability learn new information, communicate with others, dress, feed, and toilet themselves. I have interviewed

the adult children of former professional and college football and rugby players whose fathers had dramatic changes in personality, the development of aggressive and out-of-control behavior, and suicidal thoughts. And, I have spoken with the parents of young athletes in their 20's or 30's who impulsively took their own lives.

| Table 2. Clinical Features of Chronic Traumatic Encephalopathy | | | |
|---|---|---|---|
| **Behavioral Features** | **Mood Features** | **Cognitive Features** | **Motor Features** |
| Explosivity | Depression | Memory impairment | Ataxia |
| Loss of control | Hopelessness | Executive dysfunction | Dysarthria |
| Short fuse | Suicidality | Lack of insight | Parkinsonism |
| Aggression and rage | Anxiety | Perseveration | Gait Disturbance |
| Impulsivity | Irritability | Impaired attention | Tremor |
| Physical/verbal | Labile emotions | and concentration | Masked facies |
| violence | Apathy | Language difficulties | Rigidity |
| Paranoid delusions | Loss of interest | Dementia | Muscle weakness |

**Diagnosing CTE During Life**

I also have been privileged to meet over 70 former NFL players who have come to Boston to participate in my NIH-funded research study entitled, *Diagnosing and Evaluating Traumatic Encephalopathy with Clinical Tests*, or DETECT. I hear their histories, I speak with their family members, and I listen to their fears that they have CTE or that their fellow former football players have or will get CTE. They have all witnessed firsthand the tragic downward spiral of CTE that sadly seems to have become an expected consequence of playing the game they loved. The goal of the DETECT study (which was the first grant ever funded by NIH to study CTE) is to develop objective biological tests, or biomarkers, in order to detect and diagnose CTE during life. The study involves the examination of a total of 100 former professional football players (selected based on positions played and existing clinical symptoms) and 50 same-age non-contact sport elite athletes. All research participants undergo extensive brain scans, lumbar punctures (to measure proteins in cerebrospinal fluid), electrophysiological studies, blood tests (e.g., for genetic studies and novel potential biomarkers), and in-depth neurological, neuropsychological, and psychiatric evaluations. In addition, I have recently received Department of Defense funding (with my colleague, Dr. Martha Shenton of the Brigham and Women's Hospital) and a separate grant from Avid Radiopharmaceuticals (part of Ely Lily) to examine an exciting new Positron Emission Tomography (PET) ligand (developed and owned by Avid) that is specifically designed to attach to the abnormal forms of tau protein found in CTE. Preliminary results of the DETECT study are very promising. However, it is just the first step. Future research is needed, including

Case: 25-2227 Document: 20 Page: 5763 Date Filed: 10/08/2025

longitudinal designs with much larger samples and the inclusion of newer techniques and technologies, as well as post-mortem validation of the findings during life.

To me, the <u>ability to diagnose CTE during life is the next critical step</u> in the study of CTE. It will lead to the ability to answer important questions about this disease, such as: How common is CTE? What are the risk factors for CTE? Can it be prevented? How can we treat it? In other words, at this point, we actually know very little about this disease (See **Table 3**).  One thing we do know about CTE is that every case of post-mortem diagnosed CTE has had one thing in common: a history of repetitive brain trauma.  This means that the repetitive brain trauma is a <u>necessary</u> factor in developing this disease.  However, it is not a <u>sufficient</u> factor. That is, not everyone who hits their head repeatedly will develop this progressive brain disease. There are additional, as yet unknown, variables that lead to CTE, such as genetic susceptibility or specific aspects of the exposure to the brain trauma.  Some have argued that brain trauma cannot possibly <u>cause</u> CTE, using the argument that there are many older former football players and other athletes with dramatic brain trauma history who are completely healthy.  This irrational argument is analogous to those made years ago that cigarette smoking does not cause lung cancer because there are many people who smoked for decades who never develop lung cancer.  An important next step in CTE research is to examine the specific additional risk factors, including genetics and exposure variables.

**Subconcussive Trauma**

It is important to note that CTE is not a disease restricted to former *professional* athletes. It has been found in individuals who only played their sport up through the *college* level and even just through *high school*.  It has been found in warfighters who were exposed to blast trauma and other injuries.  Another important issue to note is that post-mortem confirmed CTE has been found in individuals who have had <u>no</u> history of known or reported symptomatic concussions, but, nonetheless, were exposed to a tremendous amount of repetitive hits to the head that did not result in the symptoms of concussion.  These "subconcussive" blows are quite common.  It is estimated that the typical lineman in football experiences between 1000-1500 hits per season (i.e., at every snap of the ball at every play of every game and every practice), each at 20-30*g*. These hits are not just experienced by professional players.  For example, a study by Broglio and colleagues (2011) found that high school football players received, on average, 652 hits to the head in excess of 15*g* of force in a single season. One player received 2,235 hits! To put this in perspective, a car going 35 mph into a brick wall experiences approximately 20*g* of force.  There is now growing research evidence that even after one season, repetitive

Written Testimony of Dr. Robert Stern
Boston University
Page 7

Special Committee on Aging
United States Senate
June 25, 2014

subconcussive trauma can lead to cognitive, physiological, and structural changes to the brain. And, it appears that this exposure to repetitive subconcussive blows is associated with the development of CTE. This, perhaps, is one of the most frightening aspects of CTE. Over the past few years, there has been a tremendous increase in public awareness of *concussions* and the need to prevent and manage them. The "concussion crisis" in sports is a hot topic in the media, on playing fields, and in doctor's offices. However, when it comes to the long-term consequences of sports-related brain trauma, <u>concussions are likely the tip of the iceberg</u>. That is, subconcussive trauma appears to be as important or more important in the development of CTE.

| Table 3. CTE Research is in its Infancy: What are the Important Questions to Address? |
|---|
| How common is CTE? |
| Is it a critical public health issue? |
| Above and beyond having a history of repetitive brain trauma, what are the risk factors for CTE? |
| Do genetics play a role in determining who gets CTE? |
| What types of brain trauma exposure increase risk? |
| Is there a certain age in childhood or adolescence when the brain is more vulnerable to brain trauma, increasing CTE risk? |
| How can we diagnose CTE during life? |
| Are there specific biomarkers that can accurately detect the abnormal tau deposition in the brain during life? |
| Can we distinguish between Alzheimer's disease and CTE by clinical examination? |
| How can we treat the symptoms of CTE effectively? |
| Can we modify the disease course if we intervene early? |
| Can CTE be prevented? |
| What is the biological mechanism for the development of CTE? |
| How does the abnormal tau move from one part of the brain to another? |

**Increased Funding for CTE Research**

In order to tackle the complex issue of CTE, we must expand upon current approaches to conducting research in neurodegenerative disease. We must break down the traditional silos of individual research labs, research institutions, and disciplines, and begin to conduct multidisciplinary, collaborative research across research centers, bringing together the very best scientists, novel methodologies, and state-of-the-art technology. Most importantly, we must not forget that our research must focus on reducing individual human suffering and improving public health. Alas, this requires tremendous financial support. And, as you all know, current NIH funding is tragically low. The budget cuts to NIH in recent years have resulted in a tragic slowdown in the momentum of scientific discovery, and have led many scientists -- both young

Written Testimony of Dr. Robert Stern
Boston University
Page 8

Special Committee on Aging
United States Senate
June 25, 2014

investigators and older senior researchers – to leave their careers in the biomedical sciences. A recent survey by the *Chronicles of Higher Education* (Baskin & Vossen, 2014) of 11,000 senior researchers found that almost half of the respondents already abandoned an area of scientific investigation they considered key to their lab's mission. And more than three-quarters had reduced or eliminated their recruitment of graduate students and post-doctoral fellows because of reduced funding.

I want to express my deepest gratitude toward this Committee and its members for leading the recent effort to increase NIH funding of Alzheimer's disease research. However, **we must have additional funding to support research focusing on CTE and the long-term consequences of repetitive brain trauma in athletes, military service members, and other members of society**. In addition to direct federal funding, this effort will require public-private collaborative funding, such as that which supported the revolutionary Alzheimer's Disease Neuroimaging Initiative or ADNI. What might come as a surprise is that in 2012, the National Football League (NFL) donated $30 million to the Foundation for NIH to support peer-reviewed research studies on injuries affecting athletes, with brain trauma being the primary area of focus. However, that is just the beginning. We need much, much more.

<u>In summary</u>, many of our most cherished games in our country, such as football, hockey, and soccer, often involve repetitive blows to the head, potentially leading to a progressive brain disease with later life behavior, mood, and cognitive changes, as well as the development of dementia. We must learn as much as possible, as quickly as possible, in order to determine who may be at increased risk for CTE and other long-term consequences of the repetitive head impacts experienced by athletes at all ages, and to develop methods of preventing and treating the symptoms of CTE. I want to close by thanking the Committee for your interest in addressing this important issue and for your commitment toward improving the health and well-being of older Americans.

**References Cited**

Baskin, P. & Vossen, P. (2014). Strapped scientists abandon research and students. *The Chronicle of Higher Education* February 24, 2014.

Broglio SP, Eckner JT, Martini D, et al. (2011). Cumulative head impact burden in high school football. *Journal of Neurotrauma. 28*, 2069-2078

McKee, A., Stern, R., Nowinski, C., et al. (2013). The spectrum of disease in chronic traumatic encephalopathy. *Brain. 136*, 43-64.

Stern, R.A., Daneshvar, D.H., Baugh, C.M., et al. (2013). Clinical presentation of Chronic Traumatic Encephalopathy. *Neurology, 81*, 1122-1129.

# EXHIBIT 14

**WETA**     PBS.org

WATCH | SCHEDULE | CONNECT | TOPICS | ABOUT | SHOP | TEACHER CENTER



FRONTLINE › Sports › Concussion Watch ›

# 76 of 79 Deceased NFL Players Found to Have Brain Disease

September 30, 2014, 2:57 pm ET by Jason M. Breslow    Follow @jbrezlow | 888 followers



✉ E-MAIL THIS    Tweet 3,717    Recommend 9.5k   8+1 116    61

As the NFL nears an end to its long-running legal battle over concussions, new data from the nation's largest brain bank focused on traumatic brain injury has found evidence of a degenerative brain disease in 76 of the 79 former players it's examined.

The findings represent a more than twofold increase in the number of cases of chronic traumatic encephalopathy, or CTE, that have been reported by the Department of Veterans Affairs' brain repository in Bedford, Mass.

*League of Denial,* FRONTLINE's investigation into the NFL's concussion crisis airs tonight on many PBS stations. (Check local listings.)

Researchers there have now examined the brain tissue of 128 football players who, before their deaths, played the game professionally, semi-professionally, in college or in high school. Of that sample, 101 players, or just under 80 percent, tested positive for CTE.

To be sure, players represented in the data represent a skewed population. CTE can only be definitively identified posthumously, and many of the players who have donated their brains for research suspected that they may have had the disease while still alive. For example, former Chicago Bears star Dave Duerson committed suicide in 2011 by shooting himself in the chest, reportedly to preserve his brain for examination.

Nonetheless, Dr. Ann McKee, the director of the brain bank, believes the findings suggest a clear link between football and traumatic brain injury.

"Obviously this high percentage of living individuals is not suffering from CTE," said

McKee, a neuropathologist who directs the brain bank as part of a collaboration between the VA and Boston University's CTE Center. But "playing football, and the higher the level you play football and the longer you play football, the higher your risk."

An NFL spokesman did not respond to several requests for comment.

CTE occurs when repetitive head trauma begins to produce abnormal proteins in the brain known as "tau." The tau proteins work to essentially form tangles around the brain's blood vessels, interrupting normal functioning and eventually killing nerve cells themselves. Patients with less advanced forms of the disease can suffer from mood disorders, such as depression and bouts of rage, while those with more severe cases can experience confusion, memory loss and advanced dementia.

Among the NFL legends found to have had CTE are Duerson, Hall of Fame Pittsburgh Steelers center Mike Webster and former San Diego Chargers legend Junior Seau. On Monday, ESPN's *Outside the Lines* reported that a New York neuropathologist had discovered signs of CTE in the brain of Jovan Belcher. In 2012, the former Kansas City Chiefs linebacker shot and killed his girlfriend before driving to a Chiefs practice facility, where he committed suicide in front of team officials.

The new data from the VA/BU repository — once the "preferred" brain bank of the NFL — comes as thousands of NFL retirees and their beneficiaries approach an Oct. 14 deadline to decide whether to opt out of a proposed settlement in the class-action concussion case brought against the league by more than 4,500 former players.

The research helps address what had been a key sticking point in negotiations — the issue of prevalence. Players in the lawsuit have accused the league of concealing a link between football and brain disease. While the settlement includes no admission of wrongdoing, actuarial data filed in federal court this month showed the NFL expects nearly a third of all retired players to develop a long-term cognitive problem, such as Alzheimer's disease or dementia, as a result of football.

Under the proposed settlement, the survivors of players found to have died with CTE can qualify for a payment as high as $4 million. But some, including the family of Junior Seau, have announced plans to opt out of the settlement. Like Duerson, Seau committed suicide in 2012 by shooting himself in the chest with a .357 Magnum revolver. His family has filed a wrongful death suit against the league, arguing in part that the deal does not include adequate compensation for the descendants of former players. An attorney for the family told ESPN this month that the family was not suing "for his pain and suffering. They're suing for their own."

Others have challenged the settlement's award structure for CTE specifically, claiming it only allows for such payments if a player was diagnosed with the disease before the day that the agreement won preliminary approval in July. This detail, they say, would shut out any player who may be diagnosed in the future.

Brad Karp, an outside counsel for the league, told FRONTLINE in an e-mail that "criticism of the settlement on this ground reflects a profound misunderstanding" of the proposed agreement. "The settlement provides very substantial monetary compensation for players who suffer from the significant neurocognitive symptoms alleged to be associated with CTE and who demonstrate, through diagnostic testing, that they have moderate or severe dementia."

It remains unclear just how many players will decide to either opt out of the settlement, or choose to file a formal objection. A key test will come in November when the judge in the case holds a Fairness Hearing to consider any such challenges. Final approval would not come until sometime soon thereafter.

(AP Photo)

✉ E-MAIL       Tweet  3,717       Recommend  9.5k       +1  116       61

# EXHIBIT 15

Case 2:15-27-1023　Document 20-1　Page 51-775-1　Date Filed 10/08/2025

**The New York Times**



This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.

January 18, 2007

# Expert Ties Ex-Player's Suicide to Brain Damage

By **ALAN SCHWARZ**

Since the former National Football League player Andre Waters killed himself in November, an explanation for his suicide has remained a mystery. But after examining remains of Mr. Waters's brain, a neuropathologist in Pittsburgh is claiming that Mr. Waters had sustained brain damage from playing football and he says that led to his depression and ultimate death.

The neuropathologist, Dr. Bennet Omalu of the University of Pittsburgh, a leading expert in forensic pathology, determined that Mr. Waters's brain tissue had degenerated into that of an 85-year-old man with similar characteristics as those of early-stage Alzheimer's victims. Dr. Omalu said he believed that the damage was either caused or drastically expedited by successive concussions Mr. Waters, 44, had sustained playing football.

In a telephone interview, Dr. Omalu said that brain trauma "is the significant contributory factor" to Mr. Waters's brain damage, "no matter how you look at it, distort it, bend it. It's the significant forensic factor given the global scenario."

He added that although he planned further investigation, the depression that family members recalled Mr. Waters exhibiting in his final years was almost certainly exacerbated, if not caused, by the state of his brain — and that if he had lived, within 10 or 15 years "Andre Waters would have been fully incapacitated."

Dr. Omalu's claims of Mr. Waters's brain deterioration — which have not been corroborated or reviewed — add to the mounting scientific debate over whether victims of multiple concussions, and specifically longtime N.F.L. players who may or may not know their full history of brain trauma, are at heightened risk of depression, dementia and suicide as early as midlife.

The N.F.L. declined to comment on Mr. Waters's case specifically. A member of the league's mild traumatic brain injury committee, Dr. Andrew Tucker, said that the N.F.L. was beginning a study of retired players later this year to examine the more general issue of football concussions and subsequent depression.

"The picture is not really complete until we have the opportunity to look at the same group of people over time," said Dr. Tucker, also team physician of the Baltimore Ravens.

The Waters discovery began solely on the hunch of Chris Nowinski, a former Harvard football player and professional wrestler whose repeated concussions ended his career, left him with severe migraines and depression, and compelled him to expose the effects of contact-sport brain trauma. After hearing of the suicide, Mr. Nowinski phoned Mr. Waters's sister Sandra Pinkney with a ghoulish request: to borrow the remains of her brother's brain.

The condition that Mr. Nowinski suspected might be found in Mr. Waters's brain cannot be revealed by a scan of a living person; brain tissue must be examined under a microscope. "You don't usually get brains to examine of 44-year-old ex-football players who likely had depression and who have committed suicide," Mr. Nowinski said. "It's extremely rare."

As Ms. Pinkney listened to Mr. Nowinski explain his rationale, she realized that the request was less creepy than credible. Her family wondered why Mr. Waters, a hard-hitting N.F.L. safety from 1984 to 1995 known as a generally gregarious and giving man, spiraled down to the point of killing himself.

Ms. Pinkney signed the release forms in mid-December, allowing Mr. Nowinski to have four pieces of Mr. Waters's brain shipped overnight in formaldehyde from the Hillsborough County, Fla., medical examiner's office to Dr. Omalu in Pittsburgh for examination.

He chose Dr. Omalu both for his expertise in the field of neuropathology and for his rare experience in the football industry. Because he was coincidentally situated in Pittsburgh, he had examined the brains of two former Pittsburgh Steelers players who were discovered to have had postconcussive brain dysfunction: Mike Webster, who became homeless and cognitively impaired before dying of heart failure in 2002; and Terry Long, who committed suicide in 2005.

Mr. Nowinski, a former World Wrestling Entertainment star working in Boston as a pharmaceutical consultant, and the Waters family have spent the last six weeks becoming unlikely friends and allies. Each wants to sound an alarm to athletes and their families that repeated concussions can, some 20 years after the fact, have devastating consequences if left unrecognized and untreated — a stance already taken in some scientific journals.

"The young kids need to understand; the parents need to be taught," said Kwana Pittman, 31, Mr. Waters's niece and an administrator at the water company near her home in Pahokee, Fla. "I just want there to be more teaching and for them to take the proper steps as far as treating them.

"Don't send them back out on these fields. They boost it up in their heads that, you know, 'You tough, you tough.'"

Mr. Nowinski was one of those tough kids. As an all-Ivy League defensive tackle at Harvard in the late 1990s, he sustained two concussions, though like many athletes he did not report them to his coaches because he neither understood their severity nor wanted to appear weak. As a professional wrestler he sustained four more, forcing him to retire in 2004. After he developed severe migraines and depression, he wanted to learn more about concussions and their effects.

That research resulted in a book published last year, "Head Games: Football's Concussion Crisis," in which he detailed both public misunderstanding of concussions as well as what he called "the N.F.L.'s tobacco-industry-like refusal to acknowledge the depths of the problem."

Football's machismo has long euphemized concussions as bell-ringers or dings, but what also alarmed Mr. Nowinski, 28, was that studies conducted by the N.F.L. on the effects of concussions in players "went against just about every study on sports concussions published in the last 20 years."

Studies of more than 2,500 former N.F.L. players by the Center for the Study of Retired Athletes, based at the University of North Carolina, found that cognitive impairment, Alzheimer's-like symptoms and depression rose proportionately with the number of concussions they had sustained. That information, combined with the revelations that Mr. Webster and Mr. Long suffered from mental impairment before their deaths, compelled Mr. Nowinski to promote awareness of brain trauma's latent effects.

Then, while at work on Nov. 20, he read on Sports Illustrated's Web site, si.com, that Mr. Waters had shot himself in the head in his home in Tampa, Fla., early that morning. He read appraisals that Mr. Waters, who retired in 1995 and had spent many years as an assistant coach at several small colleges — including Fort Valley (Ga.) State last fall — had been an outwardly happy person despite his disappointment at not landing a coaching job in the N.F.L.

Remembering Mr. Waters's reputation as one of football's hardest-hitting defensive players while with the Philadelphia Eagles, and knowing what he did about the psychological effects of concussions, Mr. Nowinski searched the Internet for any such history Mr. Waters might have had.

It was striking, Mr. Nowinski said. Asked in 1994 by The Philadelphia Inquirer to count his career concussions, Mr. Waters replied, "I think I lost count at 15." He later added: "I just wouldn't say anything. I'd sniff some smelling salts, then go back in there."

Mr. Nowinski also found a note in the Inquirer in 1991 about how Mr. Waters had been hospitalized after sustaining a concussion in a game against Tampa Bay and experiencing a seizure-like episode on the team plane that was later diagnosed as body cramps; Mr. Waters played the next week.

Because of Dr. Omalu's experience on the Webster and Long cases, Mr. Nowinski wanted him to examine the remaining pieces of Mr. Waters's brain — each about the size of a small plum — for signs of chronic traumatic encephalopathy, the tangled threads of abnormal proteins that have been found to cause cognitive and intellectual dysfunction, including major depression. Mr. Nowinski tracked down the local medical examiner responsible for Mr. Waters's body, Dr. Leszek Chrostowski, who via e-mail initially doubted that concussions and suicide could be related.

Mr. Nowinski forwarded the Center for the Study of Retired Athletes' studies and other materials, and after several weeks of back-and-forth was told that the few remains of Mr. Waters's brain — which because Waters had committed suicide had been preserved for procedural forensic purposes before the burial — would be released only with his family's permission.

Mr. Nowinski said his call to Mr. Waters's mother, Willie Ola Perry, was "the most difficult cold-call I've ever been a part of."

When Mr. Waters's sister Tracy Lane returned Mr. Nowinski's message, he told her, "I think there's an outside chance that there might be more to the story."

"I explained who I was, what I've been doing, and told her about Terry Long — and said there's a long shot that this is a similar case," Mr. Nowinski said.

Ms. Lane and another sister, Sandra Pinkney, researched Mr. Nowinski's background, his expertise and

experience with concussions, and decided to trust his desire to help other players.

"I said, 'You know what, the only reason I'm doing this is because you were a victim,' " said Ms. Pittman, Mr. Waters's niece. "I feel like when people have been through things that similar or same as another person, they can relate and their heart is in it more. Because they can feel what this other person is going through."

Three weeks later, on Jan. 4, Dr. Omalu's tests revealed that Mr. Waters's brain resembled that of an octogenarian Alzheimer's patient. Nowinski said he felt a dual rush — of sadness and success.

"Certainly a very large part of me was saddened," he said. "I can only imagine with that much physical damage in your brain, what that must have felt like for him." Then again, Mr. Nowinski does have an inkling.

"I have maybe a small window of understanding that other people don't, just because I have certain bad days that when I know my brain doesn't work as well as it does on other days — and I can tell," he said. "But I know and I understand, and that helps me deal with it because I know it'll probably be fine tomorrow. I don't know what I would do if I didn't know."

When informed of the Waters findings, Dr. Julian Bailes, medical director for the Center for the Study of Retired Athletes and the chairman of the department of neurosurgery at West Virginia University, said, "Unfortunately, I'm not shocked."

In a survey of more than 2,500 former players, the Center for the Study of Retired Athletes found that those who had sustained three or more concussions were three times more likely to experience "significant memory problems" and five times more likely to develop earlier onset of Alzheimer's disease. A new study, to be published later this year, finds a similar relationship between sustaining three or more concussions and clinical depression.

Dr. Bailes and other experts have claimed the N.F.L. has minimized the risks of brain trauma at all levels of football by allowing players who sustain a concussion in games — like Jets wide receiver Laveranues Coles last month — to return to play the same day if they appear to have recovered. The N.F.L.'s mild traumatic brain injury committee has published several papers in the journal Neurosurgery defending that practice and unveiling its research that players from 1996 through 2001 who sustained three or more concussions "did not demonstrate evidence of neurocognitive decline."

A primary criticism of these papers has been that the N.F.L. studied only active players, not retirees who had reached middle age. Dr. Mark Lovell, another member of the league's committee, responded that a study using long-term testing and monitoring of the same players from relative youth to adulthood was necessary to properly assess the issue.

"We want to apply scientific rigor to this issue to make sure that we're really getting at the underlying cause of what's happening," Dr. Lovell said. "You cannot tell that from a survey."

Dr. Kevin Guskiewicz is the director of the Center for the Study of Retired Athletes and a member of U.N.C.'s department of exercise and sport science. He defended his organization's research: "I think that

**-1802-**

some of the folks within the N.F.L. have chosen to ignore some of these earlier findings, and I question how many more, be it a large study like ours, or single-case studies like Terry Long, Mike Webster, whomever it may be, it will take for them to wake up."

The N.F.L. players' association, which helps finance the Center for the Study of Retired Athletes, did not return a phone call seeking comment on the Waters findings. But Merril Hoge, a former Pittsburgh Steelers running back and current ESPN analyst whose career was ended by severe concussions, said that all players — from retirees to active players to those in youth leagues — need better education about the risks of brain trauma.

"We understand, as players, the ramifications and dangers of paralysis for one reason — we see a person in a wheelchair and can identify with that visually," said Mr. Hoge, 41, who played on the Steelers with Mr. Webster and Mr. Long. "When somebody has had brain trauma to a level that they do not function normally, we don't see that. We don't witness a person walking around lost or drooling or confused, because they can't be out in society."

Clearly, not all players with long concussion histories have met gruesome ends — the star quarterbacks Steve Young and Troy Aikman, for example, were forced to retire early after successive brain trauma and have not publicly acknowledged any problems. But the experiences of Mr. Hoge, Al Toon (the former Jets receiver who considered suicide after repeated concussions) and the unnamed retired players interviewed by the Center for the Study of Retired Athletes suggest that others have not sidestepped a collision with football's less glorified legacy.

"We always had the question of why — why did my uncle do this?" said Ms. Pittman, Mr. Waters's niece. "Chris told me to trust him with all these tests on the brain, that we could find out more and help other people. And he kept his word."

Copyright 2009 The New York Times Company

EXHIBIT 16

# Brain and nervous system disorders among

# NFL Players

This summary reports findings from a study of brain and nervous system disorders among National Football League (NFL) players. Specifically, we looked at Alzheimer's disease, Amyotrophic Lateral Sclerosis (ALS), and Parkinson's disease. These disorders affect nerve function, resulting in loss of movement or memory.

The information in this summary is related to your health. You are being sent this because you played for the NFL for at least five seasons during 1959 to 1988.

## Study background:

Over 15 years ago, we did a study that found "nervous system" deaths were increased among NFL players. Since then other studies have noted similar concerns.

More recently, studies have identified a condition called chronic traumatic encephalopathy (CTE). CTE has symptoms similar to Alzheimer's, ALS, and Parkinson's. It occurs in people who've had multiple concussions.

Concerns for CTE and other diseases that damage nerve cells are increasing among football players. Because of this, we looked more closely at these kinds of disorders to see if they were higher among NFL players.

## The disorders we looked at included:

- Alzheimer's, which is the most common type of dementia. Over time, it can cause memory loss and impacts thinking and talking.

- Parkinson's, which affects movement. It can cause shaking, stiffness, or slow movement of muscles. This can affect facial expressions, talking, walking, and hand movement.

- ALS, also known as Lou Gehrig's disease, which causes weakening of the muscles needed to move, speak, eat, and breathe.



National Institute for
Occupational Safety and Health

**January 2013**

## Who was in the study:

We included all who played at least five seasons for the NFL during 1959 to1988. These 3,439 men were identified using the NFL pension fund. To do this study, we used information from the pension fund database, commercial publications, and death certificates. No surveys or blood samples were taken.

As of 2007, 90% of the 3,439 men in our study were alive; most are now 55 or older. In a study we finished earlier this year, we found the NFL players in our study are living longer than other men in the U.S., on average.

## In this study, we found:

- In general, brain and nervous system disorders were more than 3 times higher among players; 17 players died with Alzheimer's, ALS, or Parkinson's compared to 5 men in the U.S. (see graph).

- More speed position players died from these disorders compared to the non-speed position players.

  Speed positions included:
  - quarterback
  - running back
  - halfback
  - fullback
  - wide receiver
  - tight end
  - defensive back
  - safety
  - linebacker

  Non-speed positions included:
  - defensive linemen
  - offensive linemen

  Punters/kickers were not included in this analysis.

Looking at the specific brain and nervous system disorders, we found:

- ALS was 4 times higher among players; 7 players died with ALS compared to fewer than 2 men in the U.S.

- Alzheimer's was 4 times higher among players; 7 players died with Alzheimer's compared to fewer than 2 men in the U.S.

- Parkinson's was not increased among players compared to men in the U.S.

| Disease | NFL Players | Similar group of men from the US population | Risk? | What does this mean? |
|---------|-------------|---------------------------------------------|-------|----------------------|
| ALS | 7 out of 3,439 players | less than 2 out of 3,439 people | Risk of dying with ALS was 4 times higher among players | Players are more at risk of ALS |
| Alzheimer's Disease | 7 out of 3,439 players | less than 2 out of 3,439 people | Risk of dying with Alzheimer's was 4 times higher among players | Players are more at risk of Alzheimer's |
| Parkinson's Disease | 3 out of 3,439 players | less than 2 out of 3,439 people | The risk of Parkinson's was about the same as other U.S. men | The risk of Parkinson's is similar to that of other men |
| Total | 17 out of 3,439 players | 5 out of 3,439 people | Risk of dying with a brain or nervous system disorder was more than 3 times higher among players | In general, players are more at risk of disorders that result in loss of movement or memory |

Graph: The NFL players in our study may more likely have a disorder that causes loss of memory or movement compared to other men in the U.S.

## What this means:

We did this study because:

1) A study we did years ago showed nervous system diseases may be higher among NFL players.

2) Other studies indicated concern for disorders that result in loss of movement or memory among football players.

We found these kinds of disorders were higher among those in our study. This does not mean that you will get one of these disorders; rather, it suggests that as a former football player, you may have a higher risk compared to someone from the general population. Some studies have found these disorders occur more often among individuals who have had multiple concussions though we were not able to assess this.

## What you should do:

We sent you this information because we want you to share it with your doctor.

We recommend you send your doctor a copy of this fact sheet to keep in your file or bring a copy to your next appointment. By letting your doctor know we found some health concerns, your doctor can better monitor you for any early signs, recommend tests, and explore treatment options as soon as possible.

The NFL has several neurological health-related programs that may benefit players:

- The NFL Neurological Care Program helps players coordinate testing and treatment for neurological-related illnesses. Evaluation and treatment costs are paid for by you or your insurance provider, however if you are eligible and cannot afford evaluation or treatment, you may apply to the NFL Player Care Foundation for a grant to help with costs. Though there are many places you can go for neurological care, there are only six medical centers nationwide that participate in this program. Players interested in the program should contact:

  1. Dr. Sam Gandy/Dr. Silvana Riggio (212) 774-1722, Mt. Sinai Medical Center, New York

  2. Chris Thrasher (404) 756-8800, Morehouse School of Medicine, Atlanta

  3. Dr. David Brody (314) 362-1381, Washington University School of Medicine/Barnes-Jewish Hospital, St. Louis

  4. Dr. Mitchel Berger (415) 353-3933, University of California, San Francisco School of Medicine, San Francisco

  5. Jesse Fischer (310) 794-7688, University of California, Los Angeles

  6. Dr. Gregory Stewart, (504) 864-2104, Tulane University, New Orleans

  To learn more about the program and how to participate, visit: www.nflplayercare.com/PlayerCarePlanNeurologicalCare.aspx

- The NFL 88 Plan is a benefit for players suffering from dementia, ALS or Parkinson's disease. The 88 Plan reimburses or pays claims directly to qualified, former players. To learn more about the NFL 88 plan, visit: www.nflplayercare.com/88PlanOverview.aspx

- The Neurocognitive Disability Benefit is new and will soon be available to former players who are eligible and have a permanent neuro-cognitive impairment. The NFL plans to send information on the Neuro-cognitive Disability Benefit to former players.

## Learn More:

Alzheimer's Association: www.alz.org/
he Alzheimer's Association website provides information about the differences between normal symptoms of aging compared to progressive memory loss.

ALS Association: www.alsa.org/about-als/
The ALS Association website offers information about symptoms, treatment options, and support groups. Generally, ALS affects about 5 out of every 100,000 people worldwide.

National Parkinson's Foundation (NPF): www.parkinson.org/
The NPF website offers information on symptoms, other illnesses that can mimic Parkinson's, treatment, and how to live well with Parkinson's.





# EXHIBIT 17

Case: 25-2274 Document: 20 Page: 1786 Date Filed: 10/08/2025

Brain Imaging and Behavior
DOI 10.1007/s11682-012-9164-5

mTBI SPECIAL ISSUE

# Chronic traumatic encephalopathy: neurodegeneration following repetitive concussive and subconcussive brain trauma

**Christine M. Baugh · Julie M. Stamm · David O. Riley ·
Brandon E. Gavett · Martha E. Shenton ·
Alexander Lin · Christopher J. Nowinski ·
Robert C. Cantu · Ann C. McKee · Robert A. Stern**

© Springer Science+Business Media, LLC 2012

**Abstract** Chronic Traumatic Encephalopathy (CTE) is a neurodegenerative disease thought to be caused, at least in part, by repetitive brain trauma, including concussive and subconcussive injuries. It is thought to result in executive dysfunction, memory impairment, depression and suicidality, apathy, poor impulse control, and eventually dementia. Beyond repetitive brain trauma, the risk factors for CTE remain unknown. CTE is neuropathologically characterized by aggregation and accumulation of hyperphosphorylated tau and TDP-43. Recent postmortem findings indicate that CTE may affect a broader population than was initially conceptualized, particularly contact sport athletes and those with a history of military combat. Given the large population that could potentially be affected, CTE may represent an important issue in public health. Although there has been greater public awareness brought to the condition in recent years, there are still many research questions that remain. Thus far, CTE can only be diagnosed post-mortem. Current research efforts are focused on the creation of clinical diagnostic criteria, finding objective biomarkers for CTE, and understanding the additional risk factors and underlying mechanism that causes the disease. This review examines

C. M. Baugh · J. M. Stamm · D. O. Riley · C. J. Nowinski ·
R. C. Cantu · A. C. McKee · R. A. Stern (✉)
Center for the Study of Traumatic Encephalopathy,
Boston University School of Medicine,
72 East Concord Street, Suite B-7380,
Boston, MA 02118, USA
e-mail: bobstern@bu.edu

B. E. Gavett
Department of Psychology,
University of Colorado at Colorado Springs,
Colorado Springs, CO, USA

M. E. Shenton
Psychiatry Neuroimaging Laboratory, Department of Psychiatry,
Brigham and Women's Hospital, Harvard Medical School,
Boston, MA, USA

A. Lin
Center for Clinical Spectroscopy, Brigham and Women's Hospital,
Harvard Medical School,
Boston, MA, USA

C. J. Nowinski · R. C. Cantu
Sports Legacy Institute,
Waltham, MA, USA

R. C. Cantu · R. A. Stern
Department of Neurosurgery,
Boston University School of Medicine,
Boston, MA, USA

R. C. Cantu
Neurosurgery Service, the Department of Surgery,
and Sports Medicine, Emerson Hospital,
Concord, MA, USA

A. C. McKee · R. A. Stern
Department of Neurology, Boston University School of Medicine,
Boston, MA, USA

A. C. McKee
Department of Pathology,
Boston University School of Medicine,
Boston, MA, USA

A. C. McKee · R. A. Stern
Alzheimer's Disease Center,
Boston University School of Medicine,
Boston, MA, USA

Published online: 03 May 2012

🖄 Springer

research to date and suggests future directions worthy of exploration.

**Keywords** Chronic traumatic encephalopathy · Traumatic brain injury · Dementia · Concussion · Tauopathy · Dementia pugilistica

**Abbreviations**

| | |
|---|---|
| Aβ | Beta amyloid |
| AD | Alzheimer's disease |
| ALS | Amyotrophic lateral sclerosis |
| APOE | Apolipoprotein E |
| APP | Amyloid precursor protein |
| BOLD | Blood oxygen level dependent |
| Cho | Choline |
| CSF | Cerebrospinal fluid |
| CTE | Chronic traumatic encephalopathy |
| CTEM | Chronic traumatic enceohalomyelopathy |
| DTI | Diffusion tensor imaging |
| ERP | Event-related potential |
| fMRI | Functional magnetic resonance imaging |
| FDDNP | 2-(1-{6-[(2-[F-18]fluoroethyl)(methyl)amino]-2-naphthyl}ethylidene)malononitrile |
| FTD | Frontotemporal dementia |
| GT | Glial tangle |
| GRN | Granulin |
| MAPT | Microtubule-associated protein tau |
| MRI | Magnetic resonance imaging |
| MRS | Magnetic Resonance Spectroscopy |
| NAA | N-acetyl asparate |
| NFT | Neurofibrilary tangle |
| NT | Neurophil thread |
| PCS | Post-concussion syndrome |
| PET | Positron emission tomography |
| SPECT | Single photon emission computed tomography |
| SWI | Susceptibility weighted imaging |
| TDP-43 | TAR DNA-binding protein 43 |
| TBI | Traumatic brain injury |

**Introduction**

Chronic Traumatic Encephalopathy (CTE) is a neurodegenerative disease thought to be caused, at least in part, by repetitive brain trauma that can occur during contact sports and military participation (McKee et al. 2009). This trauma can include mild traumatic brain injury (mTBI), or concussions, as well as subconcussive injuries, that is, mild brain trauma that does not result in the readily observable signs and symptoms of a concussion (Gavett et al. 2011a; McKee et al. 2009; Spiotta et al. 2011; Stern et al. 2011a). CTE is distinct from the acute sequelae of concussion or traumatic brain injury (TBI), and is not merely prolonged post-concussive syndrome (PCS) (Gavett et al. 2011b). While post-concussive syndrome symptoms endure following an acute concussion without complete relief of symptoms of the initial injury, the symptoms of CTE typically do not present until years after the trauma-producing activity, and the symptoms of initial injury, if any, have ended. CTE is pathologically distinct from other neurodegenerative diseases, including Alzheimer's disease and Frontotemporal Lobar Degeneration (Corsellis et al. 1973; McKee et al. 2009).

For almost a century, it has been known that repeated blows to the head are associated with cognitive and behavioral impairments later in life. One of the first publications on the topic was a 1928 paper by Martland who called the condition he observed in boxers, "punch drunk." Martland hypothesized that the symptoms he observed resulted from the repeated blows to the head that these fighters took during their careers (1928). In 1937, Millspaugh outlined the disease marked by motor deficits and cognitive dysfunction under the name "dementia pugilistica," as he too observed the disorder primarily in boxers. Corsellis and colleagues presented a 15 case series in 1973 that neuropathologically distinguished dementia pugilistica from other neurodegenerative disorders.

Although the term Chronic Traumatic Encephalopathy (CTE) was first used in the literature in the 1960's, the disease's ability to affect a broader population beyond boxers was not fully recognized until more recently (McKee et al. 2009; Omalu et al. 2005; Omalu et al. 2006). Since that time, CTE has been found in others with a history of repetitive concussions from sports (e.g., American football players, professional wrestlers, professional hockey players) and from other activities (e.g., a victim of physical abuse, an epileptic, a self-injurer, a circus clown who was repeatedly shot out of a cannon) (Gavett et al. 2011b; Geddes et al. 1999; Hof et al. 1991; McKee et al. 2009; Omalu et al. 2005; Omalu et al. 2006; Omalu et al. 2010; Roberts et al. 1990; Stern et al. 2011a). Also, in recent years, our group at the Boston University Center for the Study of Traumatic Encephalopathy (CSTE) has found neuropathologically confirmed CTE in football players with no history of diagnosed or reported concussions (but who played positions, such as lineman, with the greatest exposure to repetitive hits to the head [Greenwald et al. 2008]), suggesting that repetitive *subconcussive* trauma, not just symptomatic concussions, may also lead to the development of this neurodegenerative disease (Gavett et al. 2011a; McKee et al. 2009). This paper will review research on CTE to date including its risk factors, clinical presentation, and neuropathology. In addition it will explore future directions for CTE research with a specific focus on methods that may be useful for in vivo diagnosis, including neuroimaging techniques.

## Clinical presentation and course

To date, more than 70 retrospective clinical examinations have been conducted by the CSTE with the family members of deceased athletes and military personnel whose brains have been donated for study. The information obtained from the semistructured interview is combined with a review of patient medical records and analyzed by the neuropsychologist [RAS] to gain an understanding of the clinical presentation and progression of the deceased brain donors whose ages range from teens to 80s. During this process the neuropsychologist remains blind to the neuropathological diagnosis, helping to eliminate potential bias; similarly, the neuropathologist [ACM] remains blind to the clinical history and medical records until the neuropathological examination and diagnosis is complete. From these interviews we have been able to gain a greater understanding of the clinical presentation and course of CTE. Although a clinical "picture" of CTE has been created using these retrospective measures, there are currently no consensus-based or prospective neuropathologically validated clinical diagnostic criteria.

### Neuropsychological and neuropsychiatric changes

The cognitive and behavioral symptoms associated with CTE are reflective of the regions that have been pathologically determined to be most affected by CTE. As will be explained in further detail in the neuropathology section of this paper, the regions of the brain most severely damaged by CTE include the cerebral cortex and the medial structures of the limbic system (amygdala, mammillary bodies, hippocampus, etc.) (Gavett et al. 2011a; Stern et al. 2011a). The severity of the clinical manifestation progresses through the course of the disease as the neurodegeneration increases (Stern et al. 2011a).

The neuropsychological and neuropsychiatric changes associated with CTE can be classified into the categories of *cognition, mood, and behavior* (Table 1). CTE presents with changes in each branch of this symptom triad and the severity of the symptoms appears to progress with the course of the disease. These symptoms generally begin years or decades after repeated brain trauma, when the neurodegeneration is severe enough to manifest clinical symptoms (Stern et al. 2011a). The earliest neuropathological stages of CTE may present without clinical symptoms (Stern et al. 2011a). Early cognitive symptoms primarily include learning and memory impairment as well as executive dysfunction. Mood changes typically include depression, apathy, and irritability, as well as suicidality. The behavioral changes primarily include poor impulse control, with individuals described as having a "short fuse" or being "out of control." Aggression and increased violence are

**Table 1** Early symptoms of chronic traumatic encephalopathy

| Domain | Symptoms |
|---|---|
| Cognitive | Memory Impairment |
| | Executive Dysfunction (e.g., problems with planning, organization, multi-tasking, judgment) |
| Mood | Depression |
| | Apathy |
| | Irritability |
| | Suicidality |
| Behavior | Impulse Control Problems (e.g., "short fuse," "out of control") |
| | Disinhibition |
| | Substance Abuse and Other Addictions |
| | Aggression and Increased Violence |

often experienced. Disinhibition and problems with substance and other forms of abuse also occur. Later in the disease course, these cognitive, mood, and behavioral impairments worsen, with dementia evident in all older cases (i.e., 65 years or greater) with advanced stage CTE.

As with most neurodegenerative causes of dementia, the later in the course a patient with CTE is seen, the more difficult it is to differentiate the specific underlying disease based on clinical presentation. That is, once an adequate amount of neural tissue is destroyed, differential diagnosis of most cases of moderate-severe dementia is difficult just based on current presentation. However, the early presentation and course of CTE can distinguish it from most other causes of dementia. The closest symptom profile to CTE is that caused by FTLD, behavioral variant. The symptoms of FTLD typically begin between the ages of 45–65, there is a somewhat rapid symptom progression, and there is a positive family history in approximately 40 % of cases. In contrast, the early symptoms of CTE (Table 1) typically present between the ages of 30 and 50, there is a slow, prolonged course of progression, and there does not appear to be a familial risk. Although not a completely definitive method of distinguishing between CTE and FTLD behavioral variant, all cases of CTE will have had a history of exposure to repetitive brain trauma, whereas FTLD will not typically have such a history.

It is important to note that although CTE is thought to result from repeated mTBI, it is separate from the acute PCS, and it is not the accumulation of immediate symptoms from multiple concussive or subconcussive events. PCS is not thought to directly cause CTE pathology. Given the noticeable overlap in symptomology between PCS and CTE and the fact that, in some cases, there may be overlap in the onset and expression of the two disorders, differentiating between the two can sometimes be difficult (Stern et al. 2011a).

### Clinicopathological associations

In a review of the world's published case studies of neuropathologically confirmed CTE (the vast majority being boxers), McKee et al. noted that 63 % (32 of 51) had memory loss (2009). Like AD, those with CTE appear to have anterograde amnesia, or difficulty remembering newly learned information (Sperling et al. 2010). This is consistent with the deterioration of the hippocampus and other medial temporal structures seen in cases of CTE. Further, individuals with CTE commonly have executive dysfunction (Omalu et al. 2011). Executive functions refer to a group of cognitive abilities responsible for goal-directed behaviors (Stern et al. 2011b); individuals with CTE often have impaired judgment, poor insight, and disinhibition (Gavett et al. 2011a). This symptomology seems to reflect the neuropathologic changes and atrophy of the frontal lobes described by McKee et al. in almost all CTE cases (2009).

Mood and behavior changes are hallmark features of CTE (McKee et al. 2009; Omalu et al. 2011). As with changes from other neurodegenerative diseases, the mood and behavioral changes associated with CTE are often the most concerning to family members and caregivers (Stern et al. 2011b). These clinical manifestations are consistent with the neuropathologic changes in the medial temporal lobe (especially the amygdala) and orbitofrontal regions. The combination of altered emotional responses (including rage) from amygdala involvement and disinhibition and reduced impulse control from frontal involvement appears to lead to many of the more significant clinical manifestations of the disease, including suicidality (Gavett et al. 2011b).

### Neurological and motor changes

CTE often results in neurologic dysfunction, especially alterations in movement and motor coordination. These signs include difficulty with balance and gait (parkinsonism) and speech changes (including slowed, slurred, and dysarthric speech) (McKee et al. 2009). In a smaller portion of cases, there appears to be abnormalities in gaze (McKee et al. 2009). A small subset of individuals with CTE have a variant referred to as chronic traumatic encephalomyelopathy (CTEM) that also affects the spinal cord and is associated with motor neuron disease, clinically mimicking Amyotrophic Lateral Sclerosis (ALS), or Lou Gehrig's disease (McKee et al. 2010). These individuals have a different and more severe neurologic profile including clinical evidence of motor neuron disease as marked by progressive muscle weakness and atrophy, fasciculations, balance and gait problems, dysphagia, and hyperactive deep tendon reflexes (McKee et al. 2010).

### Neuropathological characteristics

Neuropathological findings of CTE were first described by Corsellis et al. (1973). McKee and colleagues at the CSTE reviewed the world's literature of neuropathologically confirmed CTE and found 49 cases at the time (2009). These 49 cases, along with three new cases from the CSTE were described in 2009 by McKee et al. Since that time, the VA CSTE Brain Bank has grown from the original three to over 100 brains with over 60 cases of neuropathologically diagnosed CTE thus far (i.e., not all of the remaining 40 brains have had completed examinations to date), making it, by far, the largest CTE tissue repository in the world. The gross and microscopic neuropathology of CTE described below is based on the combination of the previous literature review and the findings from the VA CSTE Brain Bank.

### Gross pathological characteristics

Advanced stages of CTE are accompanied by generalized atrophy of the brain with reduced brain weight, as well as atrophy of the frontal and temporal cortices and medial temporal lobe (McKee et al. 2009). There is often pronounced atrophy of the thalamus, hypothalamus, and mammillary bodies. Thinning of the corpus callosum and generalized atrophy of the cerebral subcortical white matter is common. Pallor of the substantia nigra and locus coeruleus is also a typical feature of advanced CTE. Dilation of the lateral and third ventricles, anterior cavum septum pellucidum, and posterior septal fenestrations are frequent findings (McKee et al. 2009).

A cavum septum pellucidum occurs when the leaflets of the septum pellucidum are separated and the space is filled with cerebrospinal fluid (Tubbs et al. 2011). Repetitive concussive and subconcussive brain trauma likely produces a fluid wave within the ventricles that damages the septum pellucidum (Gavett et al. 2011a; McKee et al. 2009). Cavum septum pellucidum was found in 12 of 13 boxers studied by Corsellis et al. (1973).

### Microscopic neuropathological characteristics

Microscopically, CTE is characterized by accumulation of phosphorylated tau protein as neurofibrillary tangles (NFTs), neurites, and glial tangles (GTs) throughout the frontal, insular, and temporal cortices; diencephalon; brainstem; cerebellar dentate nucleus and spinal cord. Figure 1 demonstrates phosphorylated tau deposition in CTE brains as compared to normal control. Accumulations of TAR DNA-Binding Protein 43 (TDP-43) as neuronal and glial inclusions, neurites and intranuclear inclusions are also found in CTE and are usually most prominent in cases with severe tau pathology. Prominent neuronal loss is seen in the



**Fig. 1** Neuropathological analysis section. Coronal sections of a brain immunostained for hyperphosphorylated tau protein and counterstained with cresyl violet. The normal brain on the left shows no deposits of hyperphosphorylated tau protein. The brain on the right with CTE shows irregular tau deposits (*dark brown* discoloration) in the cerebral cortex. There are also dense tau NFTs in the amygdala (*asterisk*), entorhinal cortex and medial temporal lobe

hippocampus, entorhinal cortex, and amygdala as well as less severe degrees of neuronal loss in the subcallosal and insular cortex, olfactory bulbs, mammillary bodies, locus coeruleus, substantia nigra, medial thalamus and cerebral cortex (McKee et al. 2009).

The tau-immunoreactive neurofibrillary pathology is characteristically irregular and affects primarily the superficial cortical layers with focal epicenters at the depths of the sulci and surrounding small blood vessels. Tau-immunoreactive NFTs may be particularly dense in the hippocampus, amygdala, entorhinal cortex and olfactory bulbs in advanced stages of the disease (Gavett et al. 2011a; McKee et al. 2009).

Although the specific tau isoforms found in CTE are indistinguishable from AD (Schmidt et al. 2001), the irregular nature of tau deposition and the perivascular clustering of tau-immunoreactive abnormalities at the depth of the sulci are unique to CTE and distinguish it from other tauopathies, including AD (McKee et al. 2009). In addition, the density of the NFTs and GTs is often far greater in CTE than in other tauopathies (Gavett et al. 2011a).

TDP-43 immunoreactivity is most commonly seen in the frontal and medial temporal cortices, brainstem, diencephalon, insula, subcortical white matter, substantia nigra pars compacta, amygdala, hippocampus, caudate, putamen, thalamus, and hypothalamus (McKee et al. 2010; Stern et al. 2011a). TDP-43 immunoreactive inclusions have been found throughout the anterior horn of the spinal cord and motor cortex in a subset of individuals with CTEM (McKee et al. 2010; Stern et al. 2011a).

Aβ deposition is an inconsistent finding in CTE. While neuritic Aβ plaques are an essential feature of AD, Aβ is found in only 40–45 % of CTE cases (McKee et al. 2009). When Aβ is present in CTE, it generally consists of

primarily diffuse plaques with relatively few neuritic plaques (McKee et al. 2009). The presence of tau proteinopathy has been shown to enhance Aβ neurotoxicity (Mann et al. 1990; Roberson et al. 2007).

## Brain trauma and other risk factors

To date, all pathologically diagnosed cases of CTE have come from individuals with a history of repetitive brain trauma (McKee et al. 2009). As such, it seems that repetitive trauma is *necessary* for incurring CTE; however, there are numerous individuals with a history of repeated brain trauma who do not have CTE upon neuropathological examination. Therefore, concussions and other brain trauma alone are not *sufficient* to cause the disease. Importantly, it is also possible that this repetitive trauma does not necessarily have to be at the concussive (mTBI) or more structural (e.g., TBI) level (Gavett et al. 2011b; McKee et al. 2009; Stern et al. 2011a). Subconcussive brain injury (Spiotta et al. 2011), or a blow to the head with adequate *g* force to produce a non-structural brain injury (though with neuronal changes of concussion) that does not result in apparent clinical symptoms, may be a sufficient trauma load to initiate the neurodegenerative cascade (Gavett et al. 2011b; McKee et al. 2009; Stern et al. 2011a). Given that repetitive brain trauma is necessary, but not sufficient, it is evident that other risk factors may be involved in initiating or mediating CTE.

Although all individuals with neuropathologically confirmed CTE have had repetitive brain trauma, the nature of this trauma is a crucial factor that requires further scientific investigation. The age at which the brain starts being exposed to trauma may be a critical factor in determining whether or not an individual develops CTE. It is possible that assaulting a young brain, which is still developing and more vulnerable to injury, may have more catastrophic consequences later in life (Schneider 1979). This theory has yet to be validated, but it has been shown that concussions and brain injuries in youth result in more severe and longer lasting cognitive deficits (Field et al. 2003; Pullela et al. 2006). Additionally, it is not understood whether or not the severity and frequency of the brain trauma influence the development of CTE. Within a given sport, position could play a significant role. A recent study utilizing accelerometers placed inside the helmets of college football players found that there were significant differences in the exposure to brain trauma based on position (Crisco et al. 2010). Further, a study by Talavage and colleagues examined a cohort of high school football players and showed measurable neurocognitive and neurophysiologic

⚙ Springer

deficits after hits to the head that did not cause any reported symptoms of concussion (2010). Importantly, individuals who received subconcussive blows were unlikely to undergo clinical assessment and thus continued playing in the game, exposing their brains to further injury (Talavage et al. 2010).

Some individuals may have a genetic predisposition to developing CTE. Initial studies indicate that the apolipoprotein E (APOE) gene's ε4 allele may be a useful area of investigation. APOE is the strongest susceptibility gene for Alzheimer's disease (AD). APOE ε4 has also been associated with longer recovery time and more severe cognitive deficits following single TBI in boxers and professional football players (Jordan et al. 1997; Kutner et al. 2000; Teasdale et al. 1997). APOE ε4 carriers have also been shown to have worse outcomes both in the short-term and in the long-term following head injury (Friedman et al. 1999; Jordan et al. 1997; Katzman et al. 1996; Teasdale et al. 1997). In contrast to its role in AD, it is thought that APOE ε4 may decrease the capacity to repair damage following brain injury (Crawford et al. 2009). Further, older retired football players who were ε4 carriers were shown to have lower cognitive performance (Kutner et al. 2000). Additionally, in a sample of 12 neuropathologically confirmed cases of CTE, 5 (42 %) cases were ε4 carriers with 2 (17 %) of those cases being ε4 homozygous (McKee et al. 2010). This is in contrast to population prevalence studies of the APOE ε4 allele that have shown that at least one ε4 allele is carried by 27–29 % of the population and that ε4 homozygosity only occurs in 1–2 % of the population (Hill et al. 2007). Much more research is required to substantiate the possible link between APOE ε4 and CTE.

There are numerous other risk factors that require further investigation. While it has been shown that females are diagnosed with more concussions and tend to have prolonged recoveries, it is unknown whether this is due to differential symptom reporting between males and females, possibly weaker neck and upper body strength in women, the potential role in sex hormones in concussion, or other variables. It is also unknown whether females have a different CTE-risk profile than their male counterparts (Covassin and Elbin 2011; Dick 2009). To date, the large majority of brains studied with CTE have been male due to the bias of brain donations to date being made by families of deceased football and other collision sport athletes. Furthermore, an individual's "cognitive reserve" or "brain reserve" may affect the timing of the clinical manifestation of CTE. More specifically, given approximately the same level of neurodegeneration, an individual with a greater cognitive or brain reserve may be less likely to display clinical signs and symptoms of CTE than an individual with a lesser reserve (Schneider 1979). This finding has been shown in several studies of AD and other neurodegenerative diseases (Stern 2007).

## Possible diagnostic tools and biomarkers

As with other neurodegenerative diseases, such as AD, FTLD, and Lewy-Body Disease, CTE can only be diagnosed neuropathologically. However, in recent years progress has been made in improving in vivo diagnostic accuracy, especially for AD, through an integration of clinical diagnostic features (e.g., neurological and neuropsychological evaluations, history, course) with more objective biomarkers of disease (Dubois et al. 2007; De Meyer et al. 2010). These biomarker methods include: measurement of proteins through CSF and blood (including beta amyloid and tau), as well as through PET neuroimaging techniques with ligands for beta amyloid; structural neuroimaging (e.g., measurement of hippocampal volume); biochemical neuroimaging (e.g., magnetic resonance spectroscopy; MRS); and genetic susceptibility markers (e.g., APOE genotyping). These approaches have now led to significant changes to research diagnostic criteria for AD, incorporating both clinical and biomarker criteria (Jack et al. 2011; McKhann et al. 2011). A major goal of this new diagnostic approach is to be able to detect disease prior to dementia and even prior to symptom onset in order to intervene more successfully with disease modifying agents when they become available (Sperling et al. 2011).

Similar approaches to accurate in vivo diagnosis of CTE seem quite plausible, utilizing the knowledge already gained in AD biomarker research. In addition to CSF and blood measurements of proteins and genotyping of potential susceptibility genes, there appears to be a large array of neuroimaging techniques that would be appropriate for CTE diagnostic purposes. Of course, as with AD clinical diagnostic criteria, these techniques—if found to be sensitive and specific to CTE—would be part of a multifactorial diagnostic approach, including clinical evaluations and history, as well as CSF and blood measures of proteins. The potential neuroimaging approaches are explored below.

### Structural and volumetric magnetic resonance imaging

Gross neuropathological changes attributed to CTE indicate that Magnetic Resonance Imaging (MRI) may be a useful diagnostic technique. Volumetric MRI can detect whole brain atrophy as well as atrophy of specific areas of interest (e.g., amygdala) present in CTE, as well as cavum septum pellucidum with or without fenestrations (McKee et al. 2009). The ability of volumetric MRI to grossly detect CTE-related atrophy was demonstrated in an initial pilot study examining 5 former professional contact sport athletes with CTE-like symptoms (Gavett et al. 2011b).



## Susceptibility weighted imaging

A proposed mechanism of CTE pathogenesis begins with a disruption in the blood brain barrier and changes in the cerebral vasculature (Gavett et al. 2011b; McKee et al. 2009). This, along with the hallmark findings of perivascular tau deposition in CTE, indicates that Susceptibility Weighted Imaging (SWI) (a method of detecting microhemorrhages) could be useful for differential diagnosis of CTE. SWI has been found to detect microhemorrhages resulting from neurotrauma (Ashwal et al. 2006). SWI's current predictive validity has been limited in adults, but there has been some success in utilizing SWI to determine long-term outcome following TBI in children (Chastain et al. 2009; Colbert et al. 2010). More research is required to determine SWI's clinical utility for understanding the long-term effects of repeated brain trauma, including CTE, in adults (Gavett et al. 2011b).

## Diffusion tensor imaging

Diffusion Tensor Imaging (DTI) is sensitive to diffuse axonal injury (see Shenton et al. for a review of structural neuroimaging findings, including DTI, in mTBI in this issue). This is thought to be one of the causal mechanisms involved in CTE, but is also known to be an injury indicative of acute and chronic TBI (Liu et al. 1999; Prabhu 2011). DTI has been used in both animals and humans to examine the effects of brain trauma (Immonen et al. 2009; Lipton et al. 2009). However, knowledge of DTI's usefulness in CTE research is limited. In experimental models in rats, DTI has been shown to be predictive of long-term outcomes following TBI (Immonen et al. 2009). DTI has supported the link between executive dysfunction and axonal injuries in humans (Lipton et al. 2009). Further, in our pilot study of 5 former professional athletes, there was an association between overall exposure to repetitive brain trauma and degradation of callosal white matter nerve fiber bundles (Shenton et al. unpublished; Fig. 2). Figure 2 demonstrates the callosal nerve fiber degradation in the contact sport athlete brain as compared to normal control brain.

## Functional magnetic resonance imaging

Functional Magnetic Resonance Imaging (fMRI) has been useful in understanding brain-behavior relationships in numerous neurologic diseases (Seeley et al. 2009). Additionally, blood oxygen level dependent (BOLD) fMRI has been able to differentiate between various types of neurodegeneration including AD, FTD, and dementia with Lewy bodies (Galvin et al. 2011; Zhou et al. 2010). Recent studies of high school football players have utilized fMRI and found significant changes (from pre-season to post-season) in fMRI



**Fig. 2** Diffusion tensor imaging section. Diffusion tensor images captured on a 3 T magnet analyzed with streamline tractography using Slicer 3. Control brain on the left and the brain of a former professional boxer in his 40's on the right. The top two images are sagittal views with the callosal fiber tracts delineated; it is notable that the boxer's fiber tracts are markedly shorter than the control. The bottom two images are a coronal view of the same two individuals and it can be seen that the athlete's corpus callosum (*red* structure in the middle of the brain) is noticeably thinner than the control

results in those athletes with repetitive subconcussive hits (as determined by helmet accelerometer data) (Talavage et al. 2010). Given its current uses, it is possible that fMRI will be helpful in determining brain-behavior associations in CTE as well as differentiating CTE from other neurodegenerative disorders (Gavett et al. 2011b).

## Magnetic resonance spectroscopy

Magnetic Resonance Spectroscopy (MRS) utilizes the same clinical MR scanners utilized for MRI to non-invasively measure in vivo brain biochemical metabolites (see Lin et al. for a review of MRS in TBI in this issue). MRS studies have found significant chemical changes in the brains of individuals with various levels of brain trauma; however, most of these studies have been conducted in the acute, rather than the long-term, time frame (Ashwal et al. 2000; Brooks et al. 2001; Cimatti 2006; Henry et al. 2010; Holshouser et al. 2005; Ross et al. 1998; Shutter et al. 2004; Vagnozzi et al. 2008).

However, there has been one pilot study examining the utility of MRS for determining the long-term effects of repetitive brain trauma and possible CTE. In this small-scale study, Lin and colleagues found significant increases in Cho and Glx in former athletes with a history of repetitive brain trauma as compared to age-matched controls (Lin et al. 2010).

⚠ Springer

## Positron emission tomography

Current Positron Emission Tomography (PET) ligands are useful for AD. However these ligands selectively bind to beta-amyloid (e.g., Pittsburgh Compound B or PiB, florbetapir) or bind to both beta-amyloid and tau (2-(1-{6-[(2-[F-18]fluoroethyl)(methyl)amino]-2-naphthyl}ethylidene) malononitrile; FDDNP). However, CTE is primarily a tauopathy with only infrequent beta-amyloid. In cases when it is present, the beta amyloid is aggregated into more diffuse plaques rather than neuritic plaques (McKee et al. 2009). Therefore, tau-selective ligands are likely to play a critical role in in vivo biomarker detection of CTE. Unfortunately, these ligands are not yet available for human imaging.

## Single photon emission computed tomography

Single Photon Emission Computed Tomography (SPECT) scans measure regional cerebral blood flow. As such, SPECT is often a sensitive tool for detecting regional abnormalities in brain function. However, the specificity of SPECT is poor (e.g., Masterman et al. 1997). In a recent study comparing a group of retired NFL players and a control group, Amen reported significant differences on SPECT (2011). However, there were many methodological problems with the study, making it difficult to appropriately interpret their results.

## Discussion

Although public awareness and media attention surrounding the long-term effects of repetitive concussions and other brain trauma have increased in recent years, scientific knowledge regarding CTE has progressed more slowly, i.e., at a typical speed of scientific discovery. Research related to CTE has been limited thus far, and there are still many questions about this disorder. In fact, some aspects of CTE remain controversial, including the relationship between CTE and other neurodegenerative diseases, such as AD and FTD. Recent research suggests that this disease, previously only known to affect boxers, may be problematic for a much broader population, including other athletes and military personnel. As such, there is an even greater need to understand the mechanism behind this disease (e.g., Blaylock and Maroon 2011), its incidence and prevalence, and how to diagnose, treat, and prevent the disease during life. Knowledge of risk factors could allow for interventions that would help prevent the disease in the future. For example, if an age threshold is found (e.g., individuals who do not experience any brain trauma exposure before a certain age, X, do not go on to develop CTE), then appropriate

recommendations and policy changes could follow, (e.g., limiting or restricting activities with brain trauma exposure in children under the age of X). In addition, it is critical to improve understanding of the severity and number of hits necessary to initiate the neurodegenerative cascade leading to CTE. It may be the case that fewer, more severe TBIs result in a different outcome than more frequent, but less severe concussions or subconcussive blows. The different types of forces incurred by the brain during various activities could prove important; however, further research is necessary.

CTE research should utilize the advances made in research of other neurodegenerative diseases such as AD in order to progress most rapidly. For example, Similarities between CTE and other neurodegenerative diseases provide insight into other genes that may be involved in CTE and are therefore worth investigating. Based on studies of other neurodegenerative diseases, additional genetic factors worthy of consideration may be the TARDBP gene involved with TDP-43 protein production in frontotemporal lobar degeneration (FTLD) and amyotrophic lateral sclerosis (ALS), the GRN gene involved with the production of granulin and associated with FTLD, and the MAPT gene associated with tau protein and FTLD, as well as other genes associated with causes of dementia and/or motor neuron disease.

Examining the applicability of the neuroimaging modalities outlined in this paper as well as clinical measures, basic translational research, animal modeling, and epidemiologic studies will all help advance knowledge of CTE. Increased scientific knowledge about CTE will assist policy makers (e.g., league officials, legislators, military leadership) in creating appropriate guidelines for prevention and treatment of brain trauma whether in the sports arena or on the military battlefield.

## Ongoing and future research

Research related to CTE is in its infancy. Although the neuropathology of CTE has been elucidated in recent years, important areas of research remain, including investigations of CTE's epidemiology, specific risk factors (in addition to repetitive brain trauma exposure), underlying disease mechanism, and the ability to diagnose CTE during life. The development of biomarkers for the purpose of early detection, differential diagnosis, treatment, and prevention has been an important goal of research in other neurodegenerative diseases, such as AD, FTLD, lewy body dementia, and others, and it is also the goal of future CTE research at the BU CSTE (Stern et al. 2011a). With funding from the National Institute of Neurological Disorders and Stroke, the National Institute on Aging, and the National institute of Child Health and Human Development, our group is in



the early stages of research investigating potential biomarkers for CTE. This research will includes a number of the diagnostic tools described above, including volumetric MRI, DTI, SWI, MRS, CSF protein determination, and genetic testing, as well as neuropsychological, psychiatric, and neurological examinations. The goal of this research is to create valid diagnostic criteria though the combination of clinical symptoms, history, and objective biomarkers. This research could lead to the ability to diagnose CTE in the early stages of the disease, possibly before the symptoms of the disease present themselves. Neuroimaging strategies could lead to non-invasive methods of diagnosing CTE in the living. Additionally, genetic testing may indicate specific predisposing factors, such as APOE ε4, that could assist in identifying at-risk individuals. In theory, the earlier we are able to diagnose CTE, the better effect interventions may have on the symptoms and disease progression.

## Conclusion

CTE is a progressive neurodegenerative disease linked to repetitive brain trauma from contact sports and other activities. The disease is distinct from post-concussive syndrome or the additive symptomatic effect of multiple concussions. Rather, symptoms begin years or decades after brain trauma exposure and include a triad of cognitive, mood, and behavioral impairments. Neuropathologically distinct from other neurodegenerative diseases, CTE is characterized by hyperphosphorylated tau and TDP-43 deposition. As with other neurodegenerative diseases, such as AD, CTE can only be diagnosed postmortem at this time. However, unlike AD, CTE research is in its infancy, and there are neither published and validated clinical diagnostic criteria nor biomarkers for the disease. As such, there are many unanswered questions about the development of CTE. Although it is believed that repetitive brain trauma is associated with the neuropathogenesis of the disease (Stern et al. 2011a), whether CTE can occur following a single traumatic brain injury in at-risk individuals is not yet known. The type, number, and severity of concussive and/or subconcussive hits necessary to trigger the neurodegenerative cascade leading to CTE has yet to be determined (Gavett et al. 2010). Moreover, other factors, including duration of exposure to head trauma, age at first exposure, gender, age, race, and genetic predisposition, may play a role in the development of CTE, although further research is needed in these areas (Gavett et al. 2010; McKee et al. 2009; Stern et al. 2011a). Given its potential to impact a broad population of those who have experienced repetitive brain trauma, CTE is an important public health issue. A critical first step is the ability to diagnose CTE during life. Several neuroimaging techniques have the potential to serve as biomarkers for the disease.

**Summary**

Chronic Traumatic Encephalopathy (CTE) is a neurodegenerative disease thought to be caused, in part, by repetitive concussive and subconcussive brain injury, such as those received in contact sports and military participation.

Although repetitive brain trauma seems necessary for the development of CTE, this alone is not sufficient to cause the disease. Additional risk factors such as longer duration of exposure to head trauma, age at first exposure, and genetic predisposition, may also play a role in the development of CTE, although more research is needed in these areas.

The neuropsychological and neuropsychiatric symptoms associated with CTE fall into three categories: cognition, mood, and behavior. These symptoms, including memory impairment, executive dysfunction, depression, apathy, irritability, suicidality, lack of impulse control, aggression, and disinhibition, tend to worsen with advanced stages of the disease. Later stages of disease are associated with dementia.

Gross neuropathological features of CTE include: atrophy of the frontal and medial temporal lobes, hippocampus, entorhinal cortex, mammillary bodies, and amygdala; dilation of the lateral and third ventricles; anterior cavum septum pellucidum; posterior septal fenestrations, thinning of the corpus callosum and hippocampal floor, and pallor of the substantia nigra. Microscopically the disease is characterized by widespread neuronal loss and gliosis and extensive tau and TDP-43 proteinopathy with a relative absence of beta amyloid deposits.

At this time CTE can only be diagnosed postmortem, as there are no validated clinical diagnostic criteria or biomarkers for the disease. A goal of future research is to establish biomarkers using various neuroimaging tools, such as structural and volumetric MRI, susceptibility weighted imaging, diffusion tensor imaging, magnetic resonance spectroscopy, and positron emission tomography, that can detect the disease in the early stages, possibly prior to symptom onset. This may allow for successful intervention with disease modifying agents once available.

 Springer

**Acknowledgments** This work was supported by grants from the National Institutes of Health (P30 AG13846; R01 NS078337), as well as a grant from the National Operating Committee on Standards for Athletic Equipment, and an unrestricted gift from the National Football League.

**Conflict of interest** No authors on this paper have conflicts of interest to disclose.

## References

Amen, D. G., Newberg, A., Thatcher, R., Jin, Y., Wu, J., Keator, D., et al. (2011). Impact of playing American professional football on long-term brain function. *Journal of Neuropsychiatry and Clinical Neuroscience, 23*(1), 98–106.

Ashwal, S., Holshouser, B. A., Shu, S. K., Simmons, P. L., Perkin, R. M., Tomasi, L. G., et al. (2000). Predictive value of proton magnetic resonance spectroscopy in pediatric closed head injury. *Pediatric Neurology, 23*(2), 114–125.

Ashwal, S., Babikian, T., Gardner-Nichols, J., Freier, M., Tong, K. A., & Holshouser, B. A. (2006). Susceptibility-weighted imaging and proton magnetic resonance spectroscopy in assessment of outcome after pediatric traumatic brain injury. *Archives of Physical Medicine and Rehabilitation, 87*(12, Supplement), 50–58.

Blaylock, R. L., & Maroon, J. (2011). Immunoexcitotoxicity as a central mechanism in chronic traumatic encephalopathy-A unifying hypothesis. *Surgical Neurology International, 2*, 107.

Brooks, W. M., Friedman, S. D., & Gasparovic, C. (2001). Magnetic resonance spectroscopy in traumatic brain injury. *Journal of Head Trauma Rehabilitation, 16*(2), 149–164.

Chastain, C. A., Oyoyo, U. E., Zipperman, M., Joo, E., Ashwal, S., Shutter, L. A., et al. (2009). Predicting outcomes of traumatic brain injury by imaging modality and injury distribution. *Journal of Neurotrauma, 26*(8), 1183–1196.

Cimatti, M. (2006). Assessment of metabolic cerebral damage using proton magnetic resonance spectroscopy in mild traumatic brain injury. *Journal of Neurosurgical Sciences, 50*(4), 83–88.

Colbert, C. A., Holshouser, B. A., Aaen, G. S., Sheridan, C., Oyoyo, U., Kido, D., et al. (2010). Value of cerebral microhemorrhages detected with susceptibility-weighted MR Imaging for prediction of long-term outcome in children with nonaccidental trauma. *Radiology, 256*(3), 898–905.

Corsellis, J. A., Bruton, C. J., & Freeman-Browne, D. (1973). The aftermath of boxing. *Psychological Medicine, 3*(3), 270–303.

Covassin, T., & Elbin, R. J. (2011). The female athlete: the role of gender in the assessment and management of sport-related concussion. *Clinics in Sports Medicine, 30*, 125–131, x.

Crawford, F., Wood, M., Ferguson, S., Mathura, V., Gupta, P., Humphrey, J., et al. (2009). Apolipoprotein E-genotype dependent hippocampal and cortical responses to traumatic brain injury. *Neuroscience, 159*(4), 1349–1362.

Crisco, J. J., Fiore, R., Beckwith, J. G., Chu, J. J., Bronlinson, P. G., Duma, S., et al. (2010). Frequency and location of head impact exposures in individual collegiate football players. *Journal of Athletic Training, 45*, 549–559.

De Meyer, G., Shapiro, F., Vanderstichele, H., et al. (2010). Diagnosis-independent Alzheimer disease biomarker signature in cognitively normal elderly people. *Archives of Neurology, 67*(8), 949–956.

Dick, R. W. (2009). Is there a gender difference in concussion incidence and outcomes? *British Journal of Sports Medicine, 43* (Suppl 1), i46–i50.

Dubois, B., Feldman, H. H., Jacova, C., Cummings, J. L., Dekosky, S. T., Barberger-Gateau, P., et al. (2007). Research criteria for the diagnosis of Alzheimer's disease: revising the NINCDS-ADRDA criteria. *Lancet Neurology, 6*(8), 734–746.

Field, M., Collins, M. W., Lovell, M. R., & Maroon, J. (2003). Does age play a role in recovery from sports related concussion? A comparison of high school and collegiate athletes. *Journal of Pediatrics, 142*, 546–553.

Friedman, G., Froom, P., Sazbon, L., Grinblatt, I., Shochina, M., Tsenter, J., et al. (1999). Apolipoprotein E-epsilon4 genotype predicts a poor outcome in survivors of traumatic brain injury. *Neurology, 52*(2), 244–248.

Galvin, J. E., Price, J. L., Yan, Z., Morris, J. C., & Sheline, Y. I. (2011). Resting bold fMRI differentiates dementia with Lewy bodies vs Alzheimer disease. *Neurology, 76*(21), 1797–1803.

Gavett, B. E., Stern, R. A., Cantu, R. C., Nowinski, C. J., & McKee, A. C. (2010). Mild traumatic brain injury: a risk factor for neuro-degeneration. *Alzheimer's Research and Therapy, 2*, 18.

Gavett, B. E., Stern, R. A., & McKee, A. C. (2011a). Chronic traumatic encephalopathy: a potential late effect of sport-related concussive and subconcussive head trauma. *Clinic in Sports Medicine, 30*(1), 179–188.

Gavett, B. E., Cantu, R. C., Shenton, M., Lin, A. P., Nowinski, C. J., McKee, A. C., Stern, R. A. (2011b). Clinical appraisal of chronic traumatic encephalopathy: current perspectives and future directions. *Current Opinion in Neurology, 24*(6), 525–531.

Geddes, J. F., Vowles, G. H., Nicoll, J. A., & Revesz, T. (1999). Neuronal cytoskeletal changes are an early consequence of repetitive head injury. *Acta Neuropathologica, 98*, 171–178.

Greenwald, R. M., Gwin, J. T., Chu, J. J., & Crisco, J. J. (2008). Head impact severity measures for evaluating mild traumatic brain injury risk exposure. *Neurosurgery, 62*, 789–798. discussion, 798.

Henry, L. C., Tremblay, S., & Boulanger, Y. (2010). Neurometabolic changes in the acute phase following sports concussions correlate with symptom severity. *Journal of Neurotrauma, 27*(1), 65–76.

Hill, J. M., Bhattacharjee, P., & Neumann, D. M. (2007). Apolipoprotein E alleles can contribute to the pathogenesis of numerous clinical conditions including HSV-1 corneal disease. *Experimental Eye Research, 84*(5), 801–811.

Hof, P. R., Knabe, R., Bovier, P., & Bouras, C. (1991). Neuropathological observations in a case of autism presenting with self-injury behavior. *Acta Neuropathologica, 82*, 321–326.

Holshouser, B. A., Tong, K. A., Ashwal, S., & Proton, M. R. (2005). Spectroscopic imaging depicts diffuse axonal injury in children with traumatic brain injury. *AJNR American Journal of Neuroradiology, 26*(5), 1276–1285.

Immonen, R. J., Kharatishvili, I., Gröhn, H., Pitkänen, A., & Gröhn, O. H. (2009). Quantitative MRI predicts long-term structural and functional outcome after experimental traumatic brain injury. *Neuroimage, 45*(1), 1–9.

Jack, C. R., Jr., Albert, M. S., Knopman, D. S., McKhann, G. M., Sperling, R. A., Carrillo, M. C., et al. (2011). Introduction to the recommendations from the National Institute on Aging-Alzheimer's Association workgroups on diagnostic guidelines for Alzheimer's disease. *Alzheimer's and Dementia, 7*(3), 257–262.

Jordan, B. D., Relkin, N. R., Ravdin, L. D., Jacobs, A. R., Bennett, A., & Gandy, S. (1997). Apolipoprotein E epsilon4 associated with chronic traumatic brain injury in boxing. *JAMA, 278*, 136–140.

Katzman, R., Galasko, D. R., Saitoh, T., Chen, X., Pay, M. M., Booth, A., et al. (1996). Apolipoprotein-epsilon4 and head trauma: synergistic or additive risks? *Neurology, 46*(3), 889–891.

Kutner, K. C., Erlanger, D. M., Tsai, J., Jordan, B., & Relkin, N. R. (2000). Lower cognitive performance of older football players possessing apolipoprotein E epsilon4. *Neurosurgery, 47*, 651–657. discussion 657–658.

Lin, A., Ramadan, S., Box, H., et al. (2010). *Neurochemical changes in athletes with chronic traumatic encephalopathy*. Chicago: Radiological Society of North America.

Lipton, M. L., Gulko, E., Zimmerman, M. E., Friedman, B. W., Kim, W., Kim, M., Gellella, et al. (2009). Diffusion-tensor imaging implicates prefrontal axonal injury in executive function impairment following very mild traumatic brain injury. *Radiology, 252*(3), 816–824.

Liu, A. Y., Maldjian, J. A., Bagley, L. J., Sinson, G. P., & Grossman, R. I. (1999). Traumatic brain injury: diffusion-weighted MR imaging findings. *American Journal of Neuroradiology, 20*, 1636–1641.

Mann, D. M., Brown, A. M., Prinja, D., Jones, D., & Davies, C. A. (1990). A morphological analysis of senile plaques in the brains of non-demented persons of different ages using sliver, immunocytochemical and lectin histochemical staining methods. *Neuropathology and Applied Neurobiology, 16*, 17–25.

Martland, H. S. (1928). Punch drunk. *JAMA, 91*, 1103–1107.

Masterman, D. L., Mendez, M. F., Fairbanks, L. A., & Cummings, J. L. (1997). Sensitivity, specificity, and positive predictive value of technetium 99-HMPAO SPECT in discriminating Alzheimer's disease from other dementias. *Journal of Geriatric Psychiatry and Neurology, 10*(1), 15–21.

McKee, A. C., Cantu, R. C., Nowinski, C. J., Hedley-Whyte, E. T., Gavett, B. E., Budson, A. E., et al. (2009). Chronic traumatic encephalopathy in athletes: progressive tauopathy after repetitive head injury. *Journal of Neuropathology and Experimental Neurology, 68*(7), 709–735.

McKee, A. C., Gavett, B. E., Stern, R. A., Nowinski, C. J., Cantu, R. C., Kowall, N. W., et al. (2010). TDP-43 proteinopathy and motor neuron disease in chronic traumatic encephalopathy. *Journal of Neuropathology and Experimental Neurology, 69*, 918–929.

McKhann, G. M., Knopman, D. S., Chertkow, H., Hyman, B. T., Jack, C. R., Jr., Kawas, C. H., et al. (2011). The diagnosis of dementia due to Alzheimer's disease: recommendations from the National Institute on Aging-Alzheimer's Association workgroups on diagnostic guidelines for Alzheimer's disease. *Alzheimer's and Dementia, 7*(3), 263–269.

Millspaugh, J. A. (1937). Dementia pugilistica. *US Naval Medical Bulletin, 35*, 297–303.

Omalu, B. I., DeKosky, S. T., Minster, R. L., Kamboh, M. I., Hamilton, R. L., & Wecht, C. H. (2005). Chronic traumatic encephalopathy in a National Football League player. *Neurosurgery, 57*, 128–134. discussion, 128–134.

Omalu, B. I., DeKosky, S. T., Hamilton, R. L., Minster, R. L., Kamboh, M. I., Shakir, A. M., et al. (2006). Chronic traumatic encephalopathy in a national football league player: part II. *Neurosurgery, 59*, 1086–1092. discussion, 1092–1093.

Omalu, B. I., Fitzsimmons, R. P., Hammers, J., & Bailes, J. (2010). Chronic traumatic encephalopathy in a professional American wrestler. *Journal of Forensic Nursing, 6*, 130–136.

Omalu, B., Bailes, J., Hamilton, R. L., Kamboh, M. I., Hammers, J., Case, M., et al. (2011). Emerging histomorphologic phenotypes of chronic traumatic encephalopathy [CTE] in American athletes. *Neurosurgery, 69*(1), 173–183. discussion 183.

Prabhu, S. P. (2011). The role of neuroimaging in sport-related concussion. *Clinics in Sports Medicine, 1*, 103–114.

Pullela, R., Raber, J., Pfankuch, T., Ferriero, D. M., Claus, C. P., Koh, S. E., et al. (2006). Traumatic injury to the immature brain results in progressive neuronal loss, hyperactivity and delayed cognitive impairments. *Developmental Neuroscience, 28*, 396–409.

Roberson, E. D., Scearce-Levie, K., Palop, J. J., Yan, F., Cheng, I. H., Wu, T., et al. (2007). Reducing endogenous tau ameliorates amyloid beta induced deficits in an Alzheimer's disease mouse model. *Science, 316*, 750–754.

Roberts, G. W., Whitwell, H. L., Acland, P. R., & Bruton, C. J. (1990). Dementia in a punch-drunk wife. *Lancet, 335*, 918–919.

Ross, B. D., Ernst, T., Kreis, R., Haseler, L. J., Bayer, S., Danielsen, E., et al. (1998). 1 H MRS in acute traumatic brain injury. *Journal Magnetic Resonance Imaging, 8*(4), 829–840.

Schmidt, M. L., Zhukareva, V., Newell, K. L., Lee, V. M.-Y., & Trojanowski, J. Q. (2001). Tau isoform profile and phosphorylation state in dementia pugilistica recapitulate Alzheimer's disease. *Acta Neuropathologica, 101*, 518–524.

Schneider, G. E. (1979). Is it really better to have your brain lesion early? A revision of the "Kennard principle". *Neuropsychologia, 17*, 557–583.

Seeley, W. W., Crawford, R. K., Zhou, J., Miller, B. L., & Greicius, M. D. (2009). Neurodegenerative diseases target large-scale human brain networks. *Neuron, 62*(1), 42–52.

Shutter, L., Tong, K. A., & Holshouser, B. A. (2004). Proton MRS in acute traumatic brain injury: role for glutamate/glutamine and choline for outcome prediction. *Journal of Neurotrauma, 21*(12), 1693–1705.

Sperling, R. A., Dickerson, B. C., Pihlajamaki, M., Vannini, P., LaViolette, P. S., Vitolo, O. V., et al. (2010). Functional alterations in memory networks in early Alzheimer's disease. *Neuromolecular Medicine, 12*(1), 27–43.

Sperling, R. A., Aisen, P. S., Beckett, L. A., Bennett, D. A., Craft, S., Fagan, A. M., et al. (2011). Toward defining the preclinical stages of Alzheimer's disease: recommendations from the National Institute on Aging-Alzheimer's Association workgroups on diagnostic guidelines for Alzheimer's disease. *Alzheimer's and Dementia, 7*(3), 280–292.

Spiotta, A. M., Shin, J. H., Bartsch, A. J., & Benzel, E. C. (2011). Subconcussive impact in sports: a new era of awareness. *World Neurosurgery, 75*(2), 175–178.

Stern, Y. (2007). *Cognitive reserve: Theory and applications*. Philadelphia: Taylor & Francis.

Stern, R. A., Riley, D. O., Daneshvar, D. H., Nowinski, C. J., Cantu, R. C., McKee, A. C. (2011a). Long-term consequences of repetitive brain trauma: chronic traumatic encephalopathy. *PM&R, 10* Suppl 2, S460–467.

Stern, R. A., Anderson, S., & Gavett, B. (2011b). Executive functioning. In A. E. Budson & N. W. Kowell (Eds.), *The handbook of Alzheimer's disease and other dementias* (pp. 369–415). New York: Wiley-Blackwell.

Talavage, T. M., Nauman, E. A., Breedlove, E. L., Yoruk, U., Dye, A. E., Morigaki, K., Feuer, H., Leverenz, L. J. (2010). Functionally-detected cognitive impairment in high school football players without clinically-diagnosed concussion. *Journal of Neurotrauma,* [Epub ahead of print.].

Teasdale, G. M., Nicoll, J. A., Murray, G., & Fiddes, M. (1997). Association of Apolipoprotein E polymorphism with outcome after head injury. *Lancet, 350*, 1069–1071.

Tubbs, R. S., Krishnamurthy, S., Verma, K., Shoja, M. M., Loukas, M., Mortazavi, M. M., et al. (2011). Cavum velum, interpositum, cavum septum pellucidum, and cavum vergae: a review. *Childs Nervous System, 27*, 1927–1930.

Vagnozzi, R., Signoretti, S., & Tavazzi, B. (2008). Temporal window of metabolic brain vulnerability to concussion: a pilot 1H-magnetic resonance spectroscopic study in concussed athletes-part III. *Neurosurgery, 62*(6), 1286–1296.

Zhou, J., Greicius, M. D., Gennatas, E. D., Growdon, M. E., Jang, E., Jang, J. Y., Rabinovici, G. D., et al. (2010). Divergent network connectivity changes in behavioural variant frontotemporal dementia and Alzheimer's disease. *Brain, 133*(5), 1352–1367.

Springer

# EXHIBIT 18



# Neurology®

## Neurodegenerative causes of death among retired National Football League players

Everett J. Lehman, Misty J. Hein, Sherry L. Baron, et al.
*Neurology* 2012;79;1970; Published online before print September 5, 2012;
DOI 10.1212/WNL.0b013e31826daf50

**This information is current as of November 11, 2012**

The online version of this article, along with updated information and services, is
located on the World Wide Web at:
http://www.neurology.org/content/79/19/1970.full.html

*Neurology* ® is the official journal of the American Academy of Neurology. Published continuously
since 1951, it is now a weekly with 48 issues per year. Copyright © 2012 by AAN Enterprises, Inc. All
rights reserved. Print ISSN: 0028-3878. Online ISSN: 1526-632X.

# Neurodegenerative causes of death among retired National Football League players

Everett J. Lehman, MS
Misty J. Hein, PhD
Sherry L. Baron, MD
Christine M. Gersic

Correspondence & reprint requests to Mr. Lehman: elehman@cdc.gov

## ABSTRACT

**Objective:** To analyze neurodegenerative causes of death, specifically Alzheimer disease (AD), Parkinson disease, and amyotrophic lateral sclerosis (ALS), among a cohort of professional football players.

**Methods:** This was a cohort mortality study of 3,439 National Football League players with at least 5 pension-credited playing seasons from 1959 to 1988. Vital status was ascertained through 2007. For analysis purposes, players were placed into 2 strata based on characteristics of position played: nonspeed players (linemen) and speed players (all other positions except punter/kicker). External comparisons with the US population used standardized mortality ratios (SMRs); internal comparisons between speed and nonspeed player positions used standardized rate ratios (SRRs).

**Results:** Overall player mortality compared with that of the US population was reduced (SMR 0.53, 95% confidence interval [CI] 0.48−0.59). Neurodegenerative mortality was increased using both underlying cause of death rate files (SMR 2.83, 95% CI 1.36−5.21) and multiple cause of death (MCOD) rate files (SMR 3.26, 95% CI 1.90−5.22). Of the neurodegenerative causes, results were elevated (using MCOD rates) for both ALS (SMR 4.31, 95% CI 1.73−8.87) and AD (SMR 3.86, 95% CI 1.55−7.95). In internal analysis (using MCOD rates), higher neurodegenerative mortality was observed among players in speed positions compared with players in nonspeed positions (SRR 3.29, 95% CI 0.92−11.7).

**Conclusions:** The neurodegenerative mortality of this cohort is 3 times higher than that of the general US population; that for 2 of the major neurodegenerative subcategories, AD and ALS, is 4 times higher. These results are consistent with recent studies that suggest an increased risk of neurodegenerative disease among football players. ***Neurology*** ® 2012;79:1970-1974

---

## GLOSSARY

**AD** = Alzheimer disease; **ALS** = amyotrophic lateral sclerosis; **CI** = confidence interval; **CTE** = chronic traumatic encephalopathy; **ICD** = International Classification of Diseases; **MCOD** = multiple cause of death; **NDI** = National Death Index; **NFL** = National Football League; **NIOSH** = National Institute for Occupational Safety and Health; **PD** = Parkinson disease; **SMR** = standardized mortality ratio; **SSR** = standardized rate ratio.

---

In 1994, the National Institute for Occupational Safety and Health (NIOSH) conducted a mortality study of National Football League (NFL) players.[1] One notable result was an increase in "nervous system" deaths due to 4 cases of amyotrophic lateral sclerosis (ALS). Little additional study on neurologic disorders in football players was conducted until several prominent NFL players retired from the game with lingering and unresolved neurologic sequelae from recurrent mild traumatic brain injuries (concussions).[2] Since then multiple studies have raised concerns about the longer-term health effects of recurrent concussions.[3,4] Research based on autopsy data has identified chronic traumatic encephalopathy (CTE) as a pathologically distinct neurodegenerative condition affecting a wide range of individuals, including football players, who have experienced multiple concussions.[5–7] CTE results from the progressive decline in neuron functioning occurring years or

From the Centers for Disease Control and Prevention, The National Institute for Occupational Safety and Health, Division of Surveillance, Hazard Evaluations and Field Studies, Cincinnati, OH.

*Study funding:* Supported by the Intramural Research Program of the National Institute for Occupational Safety and Health. The findings and conclusions in this report are those of the authors and do not necessarily represent the views of the National Institute for Occupational Safety and Health. The sponsor reviewed and approved final submission but did not have a role in design and conduct of the study, in the collection, analysis, and interpretation of the data, or in the preparation of the manuscript.

Go to Neurology.org for full disclosures. Disclosures deemed relevant by the authors, if any, are provided at the end of this article.

Podcast



CME

© 2012 American Academy of Neurology
© 2012 American Academy of Neurology. Unauthorized reproduction of this article is prohibited.

1823–

decades after exposure to repetitive concussive injuries and presents clinically as progressive neurologic dysfunction affecting mental status, balance, and movement.[8]

The purpose of this article is to report the results of an analysis of NFL player mortality from neurodegenerative disorders including Alzheimer disease (AD), Parkinson disease (PD), and ALS. It is not possible to directly examine mortality from CTE because the pathologic refinement of the CTE diagnosis has only occurred within the last few years, and CTE is not listed as a cause of death in any revision of the International Classification of Diseases (ICD). As an alternative, because it is now known that neurologic conditions previously attributed to AD, PD, and ALS may actually have been related to CTE,[4,9] an analysis that combined all neurodegenerative causes of death was conducted; this analysis included deaths that may be related to CTE even if not reported as such on death certificates.

**METHODS** Full details of the cohort have been described previously.[1,10] In brief, the cohort includes 3,439 NFL players identified by a pension fund database of vested players with at least 5 credited playing seasons between 1959 and 1988. Vital status was ascertained from pension fund records, the Social Security Administration, and the Internal Revenue Service. Players were matched to the National Death Index (NDI) beginning in 1979 (when the NDI began) with follow-up through 2007. The NDI provided underlying and contributing causes of death, coded to the ICD revision in effect at the time of death. Death certificates were obtained from state vital statistics offices and were coded by a certified nosologist when death information was not provided by the NDI.

Mortality was analyzed using the NIOSH life table analysis system (LTAS.NET).[11] Analyses used US male mortality rates (1960−2007) for 119 cause of death categories.[12] Mortality for 3 neurodegenerative causes of death was evaluated using updated custom rate files.[13] Standardized mortality ratios (SMRs) and 95% confidence intervals (CIs) were adjusted for race, age (in 5-year categories), and calendar year (in 5-year categories). Because AD and PD are more likely to be listed as a contributing cause than as the underlying cause, additional analyses used multiple cause of death (MCOD) rate files to examine all causes listed on the death certificates. Good candidates for MCOD analyses are diseases of long duration, not necessarily fatal, that are serious enough to be noted on the death certificate.[14]

Recent studies suggested that football players who play certain positions are at higher risk of concussion because of the high acceleration, rotational acceleration, and multiple impacts they experience during games.[15,16] Data collected using exposure assessment methods including video analysis, simulation and reconstruction techniques, and helmet-mounted accelerometers suggest that although linemen experience the highest number of head impacts, other positions experience higher acceleration impacts that result in concussions.[16–18] To examine possible neuro-

logic mortality differences from the high acceleration head impacts, we stratified the players into 2 categories based on position played[10] (identified using annual data compiled in commercial publications): speed (quarterback, running back, halfback, fullback, wide receiver, tight end, defensive back, safety, and linebacker) and nonspeed (all defensive and offensive linemen); punters and kickers were excluded from the stratified analysis. LTAS.NET was used to compute directly standardized rate ratios (SRRs) and 95% CIs for the neurodegenerative causes using the nonspeed players as an internal referent; 95% CIs that excluded unity were considered to be statistically significant.

**Standard protocol approvals, registrations, and patient consents.** The protocol for this study was approved by the NIOSH Institutional Review Board and has been assigned approval number HSRB 06-DSHEFS-04XP.

**RESULTS** Approximately 39% of the cohort is African American, and 62% played speed positions (table 1). African American players comprise almost half (48%) of the speed stratum but only 28% of the nonspeed stratum. There were minimal differences between the strata for all other cohort characteristics. The cohort is relatively young (median age of 57 at date last observed), and only 10% are deceased.

Compared with that of US men, the overall mortality in the cohort was significantly reduced (table 2); however, mortality was significantly elevated for all neurodegenerative causes combined and for the subclassifications of AD (when all causes on death certificates were considered) and ALS. Mortality from PD was elevated but did not reach statistical significance. Overall, results based on all contributing causes were similar to results based on underlying causes with the exception of AD, which was more likely to be listed as a contributing cause rather than the underlying cause on death certificates. Neurodegenerative mortality stratified by speed position considered all death certificate causes (table 3). Compared with those for US men, SMRs for the speed positions were significantly elevated for all neurodegenerative causes combined, AD, and ALS, but not for PD. Neurodegenerative mortality was not elevated for the nonspeed positions. Compared with the nonspeed positions, mortality was nonsignificantly elevated for the speed positions for all neurodegenerative causes combined, AD, and ALS, but not for PD. These results were highly imprecise because of the small numbers.

**DISCUSSION** Although the overall mortality of this cohort is significantly lower than expected (SMR 0.53), the neurodegenerative mortality is 3 times higher than that of the general US population; that for 2 of the major neurodegenerative subcategories, AD and ALS, is 4 times higher. These results are consistent with recent studies that suggest an in-

© 2012 American Academy of Neurology. Unauthorized reproduction of this article is prohibited.

**Table 1** Characteristics of the National Football League Players Cohort, overall and by position category (1960−2007)[a]

| Characteristic | Overall (n = 3,439) | Speed (n = 2,145) | Nonspeed (n = 1,166) |
|---|---|---|---|
| **Race, n (%)** | | | |
| White | 2,070 (60)[b] | 1,111 (52) | 835 (72) |
| African American | 1,355 (39) | 1,029 (48) | 323 (28) |
| Other | 14 (<1) | 5 (<1) | 8 (1) |
| **Vital status as of December 31, 2007, n (%)** | | | |
| Alive | 3,105 (90) | 1,972 (92) | 1,014 (87) |
| Dead | 334 (10) | 173 (8) | 152 (13) |
| **First credited season** | | | |
| Median (range) | 1973 (1950-1984) | 1974 (1950-1984) | 1972 (1950-1984) |
| <1980, n (%) | 2,685 (78) | 1,654 (77) | 930 (80) |
| ≥1980, n (%) | 754 (22) | 491 (23) | 236 (20) |
| **No. credited seasons (as of 1988/1989 season), median (range)[c]** | 8 (5−25) | 7 (5−21) | 8 (5−20) |
| **Age at death, y, median (range)** | 54 (27−81) | 54 (27−80) | 53 (29−81) |
| **Age at date last observed, alive** | | | |
| Median (range) | 57 (45−88) | 56 (45−82) | 57 (45−83) |
| <50 y, n (%) | 633 (20) | 409 (21) | 203 (20) |
| 50−54 y, n (%) | 738 (24) | 502 (25) | 208 (21) |
| 55−59 y, n (%) | 565 (18) | 338 (17) | 206 (20) |
| 60−69 y, n (%) | 890 (29) | 552 (28) | 300 (30) |
| ≥70 y, n (%) | 279 (9) | 171 (9) | 97 (10) |

[a] Player position was collapsed into 2 strata for analysis purposes: speed positions (fullback, halfback, defensive back, quarterback, wide receiver, running back, linebacker, and tight end) and nonspeed positions (defensive end/lineman/tackle, guard, nose guard, tackle, center, and offensive end/guard/lineman/tackle). Punters and kickers are included in the overall results only.
[b] Percentages may not sum to 100% due to rounding.
[c] Number of credited seasons does not necessarily equal the number of seasons played.

creased risk of neurodegenerative disease among football players.

It is not possible to determine from our study what has caused this increased risk. Research suggests that football players who have experienced one or more concussive blows to the head are at increased risk of neurologic disorders. In retired professional players, one study observed a 5-fold prevalence of mild cognitive disorders and a 3-fold prevalence of significant memory problems for players who experienced 3 or more concussions compared with players with fewer than 3 concussions.[3] Excess neurologic mortality and morbidity has also been reported in players of other sports for which head impacts and concussion are common: soccer, boxing, horse racing, and hockey.[19]

Studies that examined the incidence of concussion in football players found that players in speed positions experienced concussions more commonly than players in nonspeed positions. Speed players are those who are able to build up considerable momentum before the point of being tackled or tackling another player.[15,17,20] Offensive and defensive linemen (nonspeed players)

usually engage other players soon after the football is snapped, thus mitigating the potential to build up momentum before a tackle or a block.[15,16]

Although our study used causes of death from AD, PD, and ALS as reported on death certificates, recent research now suggests that CTE may have been the true primary or secondary factor in some of these deaths. Whereas CTE is a clinically distinct neurologic diagnosis, CTE symptoms are often similar to those found in patients with AD, PD, and ALS.[6,21] In addition, CTE is not listed as a distinct cause of death recognized in current or previous ICD revisions, precluding the calculation of CTE-specific results. To account for possible misclassification, we reported combined results for all neurodegenerative causes.

Our study had several limitations. Our analysis is based on a few neurodegenerative deaths; therefore, the confidence intervals surrounding our SMR and SRR values are relatively broad. The few deaths also limited our ability to stratify players into more than 2 broad position categories; therefore, we were not able to identify potentially important differences in neu-

© 2012 American Academy of Neurology. Unauthorized reproduction of this article is prohibited.

### Table 2    Overall mortality, selected causes, National Football League Players Cohort (1960−2007)

| Cause of death | Underlying[a] | | Contributing[b] | |
|---|---|---|---|---|
| | No. | SMR (95% CI) | No. | SMR (95% CI) |
| All deaths | 334 | 0.53 (0.48-0.59) | 782 | 0.54 (0.51-0.58) |
| All cancers | 85 | 0.58 (0.46-0.72) | 122 | 0.63 (0.53-0.76) |
| All cardiovascular diseases | 126 | 0.68 (0.56-0.81) | 340 | 0.71 (0.64-0.79) |
| All neurodegenerative causes | 10 | 2.83 (1.36-5.21) | 17 | 3.26 (1.90-5.22) |
| Dementia/Alzheimer disease[c] | 2 | 1.80 (0.22-6.50) | 7 | 3.86 (1.55-7.95) |
| Amyotrophic lateral sclerosis[d] | 6 | 4.04 (1.48-8.79) | 7 | 4.31 (1.73-8.87) |
| Parkinson disease[e] | 2 | 2.14 (0.26-7.75) | 3 | 1.69 (0.35-4.94) |
| All injuries | 41 | 0.63 (0.45-0.86) | 57 | 0.69 (0.52-0.89) |
| Violence | 13 | 0.27 (0.14-0.46) | 13 | 0.26 (0.14-0.45) |
| All other causes | 59 | 0.34 (0.26-0.43) | 233 | 0.37 (0.33-0.42) |

Abbreviations: CI = confidence interval; ICD = International Classification of Diseases; SMR = standardized mortality ratio (US referent rates).

[a] Underlying indicates the number of deaths for which the cause was selected as the underlying cause of death on the death certificate.

[b] Contributing indicates the number of times the cause appeared on the death certificate (i.e., underlying and contributing).

[c] ICD-7 codes 304−305, ICD-8 codes 290.0−290.1, ICD-9 codes 290.0−290.3 and 331.0, and ICD-10 code G30; includes senile and presenile dementia but excludes cerebrovascular dementia because it is probably due to underlying cerebral vascular disease.

[d] ICD-7 code 356.1, ICD-8 code 348.0, ICD-9 code 335.2, and ICD-10 code G12.2.

[e] ICD-7 code 350, ICD-8 code 342, ICD-9 code 332, and ICD-10 codes G20−G21.

rodegenerative mortality risk across the various positions included within the speed position group.

Because our cohort was limited to longer-term professional players, our findings may not be applicable to other professional or nonprofessional football players. However, recent autopsy studies have reported pathologic findings of CTE in college-age and professional football players with relatively short playing careers.[22] We did not have data on player injuries or concussions. If chronic mild to moderate concussion is an actual risk factor for neurodegenerative mortality, the magnitude of the risk may depend on the intensity and frequency of brain injuries incurred over a number of years. A few studies have attempted to measure these injuries for a limited number of players over a limited period of time but such measurements have proven to be difficult and underreporting is a problem.[23,24] Finally, we did not have information on environmental, genetic, or other risk factors for neurologic disorders.

Although the results of our study do not establish a cause-effect relationship between football-related concussion and death from neurodegenerative disorders, they do provide additional support for the find-

### Table 3    Mortality for neurodegenerative causes of death (considering all causes of death reported on the death certificate) stratified by position category, National Football League Players Cohort (1960−2007)

| Cause of death | Nonspeed[a] | | Speed | | Speed vs nonspeed: SRR (95% CI) |
|---|---|---|---|---|---|
| | No.[b] | SMR (95% CI) | No. | SMR (95% CI) | |
| All neurodegenerative causes | 3 | 1.58 (0.33-4.61) | 14 | 4.74 (2.59-7.95) | 3.29 (0.92-11.7) |
| Dementia/Alzheimer disease[c] | 1 | 1.51 (0.04-8.41) | 6 | 6.02 (2.21-13.1) | 5.96 (0.72-49.6) |
| Amyotrophic lateral sclerosis | 1 | 1.71 (0.04-9.50) | 6 | 4.24 (2.29-13.6) | 3.88 (0.47-32.2) |
| Parkinson disease | 1 | 1.53 (0.04-8.53) | 2 | 2.01 (0.24-7.25) | 1.19 (0.11-13.2) |

Abbreviations: CI = confidence interval; SMR = standardized mortality ratio (US multiple cause of death referent rates); SRR = directly standardized rate ratio (internal analysis).

[a] Punters and kickers were excluded, and remaining player positions were collapsed into 2 strata for analysis purposes: speed positions (fullback, halfback, defensive back, quarterback, wide receiver, running back, linebacker, and tight end) and nonspeed positions (defensive and offensive linemen).

[b] Number indicates the number of times the cause appeared on the death certificate (i.e., underlying and contributing causes).

[c] Includes senile and presenile dementia but excludes cerebrovascular dementia.

© 2012 American Academy of Neurology. Unauthorized reproduction of this article is prohibited.

ing that professional football players are at an increased risk of death from neurodegenerative causes. Additional studies to quantify the cumulative effects of brain injuries, in particular the relative effects of concussive-level injuries, will be of particular importance in understanding the underlying disease mechanisms.

## AUTHOR CONTRIBUTIONS

Study concept and design: E.J. Lehman, M.J. Hein. Acquisition of data: S.L. Baron, C.M. Gersic. Study coordination: C.M. Gersic. Analysis and interpretation of data: E.J. Lehman, M.J. Hein, S.L. Baron. Drafting/ revising manuscript: E.J. Lehman, M.J. Hein, S.L. Baron, C.M. Gersic. Critical revision of the manuscript for important intellectual content: E.J. Lehman, M.J. Hein, S.L. Baron. Statistical analysis: E.J. Lehman, M.J. Hein. Obtain funding: E.J. Lehman. Administrative, technical, or material support: E.J. Lehman, C.M. Gersic. Study supervision: E.J. Lehman, S.L. Baron.

## ACKNOWLEDGMENT

The authors thank Pi-hsueh Chen, MS (NIOSH), for programming support and Charles Mueller, MS (NIOSH), for previous statistical analysis for the study cohort. No additional compensation was provided beyond usual salary for their contributions. We also thank Kyle Steenland, PhD (Emory University), Richard G. Ellenbogen, MD (University of Washington), and Steven P. Broglio, PhD (University of Michigan) for their reviews and comments on the draft manuscript. They were not compensated for these activities.

## DISCLOSURE

The authors report no disclosures relevant to the manuscript. **Go to Neurology.org for full disclosures.**

*Received April 24, 2012. Accepted in final form July 9, 2012.*

## REFERENCES

1. Centers for Disease Control and Prevention, National Institute for Occupational Safety and Health (NIOSH). National Football League players mortality study. Cincinnati, OH: NIOSH; 1994. Health Hazard Evaluation 88-085.
2. Pellman EJ. Background on the National Football League's research on concussion in professional football. Neurosurgery 2003;53:797–798.
3. Guskiewicz KM, Marshall SW, Bailes J, et al. Association between recurrent concussion and late-life cognitive impairment in retired professional football players. Neurosurgery 2005;57:719–724; discussion 725–726.
4. Gavett BE, Stern RA, Cantu RC, Nowinski CJ, McKee AC. Mild traumatic brain injury: a risk factor for neurodegeneration. Alzheimers Res Ther 2010;2:18.
5. Pupillo E, Messina P, Logroscino G, et al. Trauma and amyotrophic lateral sclerosis: a case-control study from a population-based registry. Eur J Neurol Epub 2012 Apr 27.
6. McKee AC, Cantu RC, Nowinski CJ, et al. Chronic traumatic encephalopathy in athletes: progressive tauopathy after repetitive head injury. J Neuropathol Exp Neurol 2009; 68:709–735.
7. Omalu BI, Hamilton RL, Kamboh MI, DeKosky ST, Bailes J. Chronic traumatic encephalopathy (CTE) in a National Football League player: case report and emerging medicolegal practice questions. J Forensic Nurs 2010;6: 40–46.
8. Gavett BE, Cantu RC, Shenton M, et al. Clinical appraisal of chronic traumatic encephalopathy: current perspectives and future directions. Curr Opin Neurol 2011;24:525–531.
9. Stern RA, Riley DO, Daneshvar DH, et al. Long-term consequences of repetitive brain trauma: chronic traumatic encephalopathy. Phys Med Rehab 2011;3:S460–S467.
10. Baron SL, Hein MJ, Lehman E, Gersic CM. Body mass index, playing position, race and the cardiovascular mortality of retired professional football players. Am J Cardiol 2012;109:889–896.
11. Schubauer-Berigan MK, Hein MJ, Raudabaugh WM, et al. Update of the NIOSH Life Table Analysis System: a person-years analysis program for the Windows computing environment. Am J Ind Med 2011;54:915–924.
12. Robinson CF, Schnorr TM, Cassinelli RT, et al. Tenth revision U.S. mortality rates for use with the NIOSH Life Table Analysis System. J Occup Environ Med 2006;48: 662–667.
13. Steenland K, Hein MJ, Cassinelli RT, et al. Polychlorinated biphenyls and neurodegenerative disease mortality in an occupational cohort. Epidemiology 2006;17:8–13.
14. Steenland K, Nowlin S, Ryan B, Adams S. Use of multiple-cause mortality data in epidemiologic analyses: US rate and proportion files developed by the National Institute for Occupational Safety and Health and the National Cancer Institute. Am J Epidemiol 1992;136:855–862.
15. Pellman EJ, Powell JW, Viano DC, et al. Concussion in professional football: epidemiological features of game injuries and review of the literature: part 3. Neurosurgery 2004;54:81–94; discussion 94–96.
16. Broglio SP, Surma T, Ashton-Miller JA. High school and collegiate football athlete concussions: a biomechanical review. Ann Biomed Eng 2012;40:37–46.
17. Broglio SP, Sosnoff JJ, Shin S, He X, Alcaraz C, Zimmerman J. Head impacts during high school football: a biomechanical assessment. J Athl Train 2009;44:342–349.
18. Funk JR, Rowson S, Daniel RW, Duma SM. Validation of concussion risk curves for collegiate football players derived from HITS data. Ann Biomed Eng 2012;40:79–89.
19. Gavett BE, Stern RA, McKee AC. Chronic traumatic encephalopathy: a potential late effect of sport-related concussive and subconcussive head trauma. Clin Sports Med 2011;30:179–188.
20. Gessel LM, Fields SK, Collins CL, Dick RW, Comstock RD. Concussions among United States high school and collegiate athletes. J Athl Train 2007;42:495–503.
21. McKee AC, Gavett BE, Stern RA, et al. TDP-43 proteinopathy and motor neuron disease in chronic traumatic encephalopathy. J Neuropathol Exp Neurol 2010;69: 918–929.
22. Omalu B, Bailes J, Hamilton RL, et al. Emerging histomorphologic phenotypes of chronic traumatic encephalopathy in American athletes. Neurosurgery 2011;69: 173–183, discussion 183.
23. Guskiewicz KM, Weaver NL, Padua DA, Garrett WE. Epidemiology of concussion in collegiate and high school football players. Am J Sports Med 2000;28:643–650.
24. McCrea M, Hammeke T, Olsen G, Leo P, Guskiewicz K. Unreported concussion in high school football players: implications for prevention. Clin J Sport Med 2004;14:13–17.

**-1827-**

© 2012 American Academy of Neurology. Unauthorized reproduction of this article is prohibited.

# Neurodegenerative causes of death among retired National Football League players

Everett J. Lehman, Misty J. Hein, Sherry L. Baron, et al.

*Neurology* 2012;79;1970; Published online before print September 5, 2012;
DOI 10.1212/WNL.0b013e31826daf50

## This information is current as of November 11, 2012

| | |
|---|---|
| **Updated Information & Services** | including high resolution figures, can be found at:<br>http://www.neurology.org/content/79/19/1970.full.html |
| **Supplementary Material** | Supplementary material can be found at:<br>http://www.neurology.org/content/suppl/2012/11/01/WNL.0b013e31826daf50.DC1.html |
| **References** | This article cites 22 articles, 2 of which can be accessed free at:<br>http://www.neurology.org/content/79/19/1970.full.html#ref-list-1 |
| **Subspecialty Collections** | This article, along with others on similar topics, appears in the following collection(s):<br>**Alzheimer's disease**<br>http://www.neurology.org/cgi/collection/alzheimers_disease<br>**Amyotrophic lateral sclerosis**<br>http://www.neurology.org/cgi/collection/amyotrophic_lateral_sclerosis_<br>**Brain trauma**<br>http://www.neurology.org/cgi/collection/brain_trauma<br>**Cohort studies**<br>http://www.neurology.org/cgi/collection/cohort_studies<br>**Parkinson's disease/Parkinsonism**<br>http://www.neurology.org/cgi/collection/parkinsons_disease_parkinsonism |
| **Permissions & Licensing** | Information about reproducing this article in parts (figures, tables) or in its entirety can be found online at:<br>http://www.neurology.org/misc/about.xhtml#permissions |
| **Reprints** | Information about ordering reprints can be found online:<br>http://www.neurology.org/misc/addir.xhtml#reprintsus |



AMERICAN ACADEMY OF
NEUROLOGY®

# EXHIBIT 19


WATCH TRAILER

**The New York Times**

**SOCCER** | NYT NOW

# Brain Trauma Extends Reach Into Soccer

Researchers Find Bellini, Star for Brazil, Had Brain Disease C.T.E.

By SAM BORDEN    SEPT. 23, 2014

Bellini, a Brazilian soccer star who led the team that won the 1958 World Cup and was honored with a statue outside the Estádio do Maracanã in Rio de Janeiro, had a degenerative brain disease linked to dozens of boxers and American football players when he died in March at age 83.

At the time, his death was attributed to complications related to Alzheimer's disease. But researchers now say he had an advanced case of chronic traumatic encephalopathy, or C.T.E., which is caused by repeated blows to the head and has symptoms similar to those of Alzheimer's.

C.T.E. can be diagnosed only posthumously, and few brains of former soccer players have been examined. Bellini is the second known case, according to Dr. Ann McKee, a neuropathologist at Boston University and the Veterans Affairs Medical Center in Bedford, Mass., who assisted in examining Bellini's brain. McKee was also involved this year when researchers found C.T.E. in the brain of a 29-year-old man from New Mexico who had played soccer semiprofessionally.

McKee said in an interview that she was aware of a third former soccer player who had C.T.E. but that she was not yet authorized to publicly identify the person.

As C.T.E. began to gain widespread attention about six years ago, it was often thought of as an American problem. Many of the early cases of the disease, for which there is no known cure, were connected to boxers and

American football players.

But more recently, evidence has mounted to indicate that those at risk for developing C.T.E. include soccer players. McKee said that although it was too early to say whether heading of balls was a cause of C.T.E. in soccer, it was becoming apparent that players were at risk of long-term brain trauma.

"I think there's been a perception that the nonhelmeted sports are somehow less likely or less prone to these kinds of diseases," she said. "There was also a time when people said C.T.E. was only an American problem. I think we are learning that, in both cases, those things aren't true, and this is a problem that is going to be seen around the world."

Dr. Lea T. Grinberg, a neuropathologist specializing in brain aging who has been affiliated with the University of São Paulo and is an assistant professor at the University of California, San Francisco, led the study of Bellini's brain and presented her analysis recently at the International Congress of Neuropathology in Brazil.

In her remarks, Grinberg raised concerns about risks in soccer, including those that come with heading the ball.

"The Brazilian almost learns to walk and play football at the same time, so you need to learn more about it," Grinberg said, according to a report in the newspaper O Globo. "Do we need to concern ourselves with weekend recreational players? And do children, who have a more fragile neck, have more risk? We do not have those answers yet."

McKee noted that while outward symptoms of C.T.E. are similar to those of Alzheimer's, the initial diagnosis of Alzheimer's in Bellini was incorrect; a brain exam showed no evidence of Alzheimer's. Rather, Bellini had what McKee described as Grade 4 C.T.E., the most severe level of injury.

In Bellini's case, there were multiple symptoms. A halfback who was Brazil's captain when it won its first World Cup in 1958, Bellini first began to struggle with memory loss nearly 20 years ago, his wife, Giselda, told O Globo, recalling an instance when he failed to bring home items from a shopping list. The problems worsened, she said, in 2006.

Once, she told the paper, Bellini hired a taxi and asked the driver to take him to the home base of a São Paulo soccer team he had played for decades earlier, because he believed he needed to go to training.

McKee said she had been told that Bellini was not known to have sustained any nonsoccer head injuries in his life.

A version of this article appears in print on September 24, 2014, on page B11 of the New York edition with the headline: Brain Trauma Extends Reach Into Soccer.

---

© 2014 The New York Times Company

# EXHIBIT 20

# Forbes

http://onforb.es/MXgimS



**MoneyBuilder**

*We help you make sense of your finances.*

Opinions expressed by Forbes Contributors are their own.

---

PERSONAL FINANCE    7/27/2011 @ 6:50PM | 21,021 views

# How Many Times Will You Crash Your Car?

 **Des Toups** , Contributor

Comment Now

*This post provided by* <u>CarInsurance.com</u>

If you haven't been in a car accident, consider yourself lucky. Or overdue.

By <u>car insurance</u> industry estimates, you will file a claim for a collision about once every 17.9 years. That's if you're an average driver, which, whether you're willing to admit it or not, you likely are.



Forbes Images

*Click for full photo gallery: 10 Used Cars to Avoid*

So if you got your license at age 16, the odds are quite good that you'll experience some kind of crash by the time you're 34, at the latest. Over the course of a typical long, driving lifetime, you should have a total of three to four accidents.

Chances are these crashes won't be deadly. There are about 10 million accidents of all kinds each year, from parking lot scrapes to multi-car pileups, according to the National Safety Council; in 2009, just three of every 1,000 of those accidents involved fatalities.

But these crashes most likely will be costly. More than 2 million people are injured in crashes every year. In 2010, the average claim for injuries to cover both the insured driver and others involved in the crash had risen to $23,450, thanks in large part to soaring medical costs, according to the Insurance Research Council, a nonprofit research group. (See "<u>The safest ways to get 40 mpg</u>.")

## Accidents on the installment plan

Which brings us to why this little-known number is so critical. (We got the accident-every-18-years statistic from the Property Casualty Insurers Association of America, a trade association that analyzes insurance data.)

Insurance companies may sell protection — and one night of TV advertisements suggests that they do a pretty good job on this front — but they're in the game to make a profit. And they don't make a profit by paying for your accidents. They do so by getting *you* to pay for your accidents — in advance.

"You're paying a smaller portion over a longer period of time," explains Dee Dee Mays, an actuary with Perr&Knight, an insurance consultancy. "It's kind of a way to spread your risk."

How to price your insurance rates low enough to lure you from a competitor, but high enough to make a profit on your future accidents, involves elaborate risk assessments that constitute the secret sauce of the insurance business.

Computer data can now create thousands of driver-profile combinations. But all can be boiled down to the need to determine two things:

- How many accidents will occur? Or, put another way, how likely is each driver in each car to have an accident? And,
- How much will each accident cost?

## You're already a statistic

How often you're considered due for that next accident depends a little, too, on your insurer. A company that insures large numbers of young drivers — who are far more likely to have accidents — will likely budget for a shorter gap between crashes. State Farm, the country's largest auto insurance company, has customers with slightly lower-than-average accident rates.

"If we just take collisions, the average State Farm policy holder has a collision claim once every 19 years," says State Farm spokesman Dick Luedke.

But odds are made to be beaten, right?

Many factors are beyond a driver's immediate control. Clearly you can't alter road conditions or medical costs, at least by the time your insurance bill is due. That, in the insurance game, makes you a firm stat: a driver paying for the accident he's expected to have every 17.9 years.

But there are some ways you can move the needle, ways that will both change your lifetime-accident rate and lower your insurance premium.

Assuming that, at least today, you can't change your age, your driving history, or what kind of car you drive, here are some behaviors you can incorporate to lower your accident risk and, in the end, your insurance rates.

**Don't drive impaired.** No single factor is more likely to cause an accident than a driver impaired by alcohol or other drugs. One-third of fatal accidents in this country are attributed to drunken drivers alone.

**Don't drive during the vampire hour.** The deadliest three-hour periods on American roadways are between midnight and 3 a.m. on Saturdays and Sundays, according to the National Highway Traffic Safety Administration (NHTSA). Of those fatal crashes, 66% involve alcohol-impaired driving.

**Keep your eyes on the road.** NHTSA data show that 995 of the 30,797 fatal crashes in 2009 involved drivers using cell phones. Nearly, 5,500 traffic deaths involved a driver distracted by something inside the car, including technology, according to the U.S. Department of Transportation

**Don't speed.** Nearly one-third of all fatal accidents are attributed to speeding or driving too fast for conditions. Speeding is the single greatest contributor to accidents other than impaired driving. Insurance companies love such proven risk factors when assessing rates. Anyone who's seen their premiums skyrocket after getting a ticket knows this well.

**Avoid congestion.** Less than a quarter of both injury crashes and non-injury crashes in 2009 occurred on roadways with a posted speed limit of 55 mph or higher. Fewer intersections apparently make for fewer crashes. Be careful, though: When accidents do occur on these highways, they are more likely to be deadly, accounting for nearly half of all traffic fatalities.

This article is available online at: http://onforb.es/MXgimS

2014 Forbes.com LLC™   All Rights Reserved

# EXHIBIT 21



# Neurology®

## Traumatic brain injury may be an independent risk factor for stroke

James F. Burke, Jessica L. Stulc, Lesli E. Skolarus, et al.

*Neurology* published online June 26, 2013
DOI 10.1212/WNL.0b013e318297eecf

**This information is current as of June 26, 2013**

The online version of this article, along with updated information and services, is
located on the World Wide Web at:

http://www.neurology.org/content/early/2013/06/26/WNL.0b013e318297eecf.full.html

*Neurology* ® is the official journal of the American Academy of Neurology. Published continuously
since 1951, it is now a weekly with 48 issues per year. Copyright © 2013 American Academy of
Neurology. All rights reserved. Print ISSN: 0028-3878. Online ISSN: 1526-632X.



Published Ahead of Print on June 26, 2019 as 10.1212/WNL.0b013e318297eecf

# Traumatic brain injury may be an independent risk factor for stroke

James F. Burke, MD, MS

Jessica L. Stulc, MD, MPH

Lesli E. Skolarus, MD, MS

Erika D. Sears, MD, MS

Darin B. Zahuranec, MD, MS

Lewis B. Morgenstern, MD

Correspondence to
Dr. Burke:
jamesbur@umich.edu

## ABSTRACT

**Objective:** To explore whether traumatic brain injury (TBI) may be a risk factor for subsequent ischemic stroke.

**Methods:** Patients with any emergency department visit or hospitalization for TBI (exposed group) or non-TBI trauma (control) based on statewide emergency department and inpatient databases in California from 2005 to 2009 were included in a retrospective cohort. TBI was defined using the Centers for Disease Control definition. Our primary outcome was subsequent hospitalization for acute ischemic stroke. The association between TBI and stroke was estimated using Cox proportional hazards modeling adjusting for demographics, vascular risk factors, comorbidities, trauma severity, and trauma mechanism.

**Results:** The cohort included a total of 1,173,353 trauma subjects, 436,630 (37%) with TBI. The patients with TBI were slightly younger than the controls (mean age 49.2 vs 50.3 years), less likely to be female (46.8% vs 49.3%), and had a higher mean injury severity score (4.6 vs 4.1). Subsequent stroke was identified in 1.1% of the TBI group and 0.9% of the control group over a median follow-up period of 28 months (interquartile range 14–44). After adjustment, TBI was independently associated with subsequent ischemic stroke (hazard ratio 1.31, 95% confidence interval 1.25–1.36).

**Conclusions:** In this large cohort, TBI is associated with ischemic stroke, independent of other major predictors. *Neurology*® 2013;81:1–7

### GLOSSARY

**CI** = confidence interval; **ED** = emergency department; **HCUP** = Healthcare Cost and Utilization Project; **HR** = hazard ratio; **ICD-9-CM** = *International Classification of Diseases*, ninth revision, Clinical Modification; **OR** = odds ratio; **SEDD** = State Emergency Department Databases; **SID** = State Inpatient Databases; **TBI** = traumatic brain injury.

Ischemic stroke and traumatic brain injury (TBI) are common,[1,2] costly,[3,4] and leading causes of severe disability in adults.[1,5] In particular, both stroke and TBI are responsible for substantial disability in working-age adults—approximately 20% of strokes[6] and more than 40% of TBI[7] occur in adults younger than 65 years.

In the recent past, no specific stroke mechanism was identified for many strokes in the young.[8] Although the proportion of unexplained stroke may be decreasing based on more recent data,[9] a large proportion of stroke risk is unexplained by the frequently used stroke prediction models.[10] Identifying novel risk factors has the potential to improve stroke prevention and outcomes. TBI is a potential unrecognized stroke risk factor as trauma to the head and neck may increase stroke risk through vascular dissection,[11] microvascular injury, or abnormal coagulation.[12]

A recent observational study in Taiwan based on administrative data[13] suggested an association between TBI and all stroke types. However, the association was strongest for known components of TBI (subarachnoid and intracerebral hemorrhage), and a large proportion of stroke risk occurred in the first month. Therefore, it is possible that some events classified as incident stroke were merely sequelae of the TBI and that the magnitude of the observed association may have been overstated.

From the Department of Veterans Affairs (J.F.B.), VA Center for Clinical Management and Research, Ann Arbor VA Healthcare System; Department of Neurology (J.L.S.), Stroke Program (J.F.B., L.E.S., D.B.Z., L.B.M.), and Section of Plastic Surgery, Department of Surgery (E.D.S.), University of Michigan; and Department of Epidemiology (L.B.M.), University of Michigan School of Public Health, Ann Arbor, MI.

Go to Neurology.org for full disclosures. Funding information and disclosures deemed relevant by the authors, if any, are provided at the end of the article.

© 2013 American Academy of Neurology

1

© 2013 American Academy of Neurology. Unauthorized reproduction of this article is prohibited.

In the current study, we explored whether the findings in the Taiwanese study extend to a representative region in the United States while limiting to cases of ischemic stroke and accounting for additional confounders. In secondary analyses, we explored whether the TBI-stroke relationship differed by severity of trauma, subtype of TBI, and when excluding early recurrent stroke.

**METHODS** This retrospective cohort study was based on emergency department (ED) visits and inpatient discharges for the state of California from 2005 to 2009 from the State Inpatient Databases (SID),[14] State Emergency Department Databases (SEDD),[15] Healthcare Cost and Utilization Project (HCUP), and Agency for Healthcare Research and Quality. SID and SEDD capture all inpatient discharges and all ED visits that do not result in admission, respectively, within a given year. California was selected for this analysis because of its large population and because it allows for linkage of SEDD and SID records over multiple years using HCUP revisit files.[16] We compared TBI patients with non-TBI trauma patients (controls) while accounting for a variety of other variables that may confound the association between TBI and ischemic stroke.

**Standard protocol approvals, registrations, and patient consents.** The study protocol, which does not rely on human subjects, was deemed not regulated by the University of Michigan Institutional Review Board because it relied on private coded information that cannot be linked to specific individuals by the investigators.

**Patient selection.** Adults 18 years or older were entered into our cohort if they survived their patient admission (SID) or an ED visit (SEDD) for TBI or trauma at any time from 2005 to 2009. TBI was defined using the Centers for Disease Control and prevention criteria: *ICD-9-CM* 800.0–801.9, 803.0–804.9, 850.0–854.1, or 959.01 in any discharge diagnosis field.[17,18] Our TBI definition was designed to maximize differentiation of TBI and non-TBI trauma. Trauma is inherently a multisystem process, so limiting our diagnosis to only a subset of TBI claims (e.g., principal diagnoses only) would risk misclassifying patients with new TBI as non-TBI trauma. The non-TBI trauma group was composed of patients who had a fracture, excluding fractures of the head and neck: *ICD-9-CM* 807.0–807.9, 812–819.9, 822–822.9, or 823–827.9 in any position on the discharge record. If a patient had both TBI and non-TBI trauma codes or separate visits with both TBI and non-TBI trauma, they were classified as TBI. Individuals with a visit (ED or inpatient) with stroke (*ICD-9-CM* 433.x1, 434.x1, 436)[19] before TBI or trauma were excluded from the cohort. Similarly, if a patient had multiple TBI or non-TBI trauma visits, they were entered into the cohort with their first visit. In addition, given the known role of arterial dissection as a mediator of ischemic stroke risk in trauma patients, we excluded all carotid (*ICD-9-CM* 433.21) or vertebral (433.24) dissection at the index visit (n = 66).

**Outcome.** Our primary outcome was any hospitalization with a discharge diagnosis of ischemic stroke: *ICD-9-CM* 433.x1, 434.x1, and 436 from 2005 to 2009.[19] This combination of diagnosis codes has been previously validated relative to medical record review and found to have a positive predictive value of 90% and sensitivity of 86%.[20] ED visits that did not result in admission for ischemic stroke were not included in the primary outcome because of concerns about the accuracy of coding.

**Covariates.** Our primary analysis adjusted for known and possible stroke predictors including demographics, vascular risk factors, comorbidities, trauma severity, and trauma mechanism. Age was divided into quartiles because of the known nonlinear relationship between age and stroke.[1] Vascular risk factors were defined using the HCUP single-level clinical classification system.[21] Comorbidities were defined based on diagnosis codes listed on the discharge record using the modified Charlson definition, and all Charlson comorbidities were included in our model.[22] Trauma severity was estimated with the Abbreviated Injury Scale (ICD/AIS)[23] using the software package ICDMAP-90[24]—a validated algorithm for assigning trauma severity using *ICD-9* codes.[25] Mechanism of trauma was accounted for by including major external cause of injury group codes (E codes), which describe the intent, mechanism, and circumstances of injuries independently of the anatomical location of an injury.[26,27]

**Primary analysis.** Demographics and baseline characteristics of the TBI and the non-TBI groups were summarized using descriptive statistics. Subsequent stroke was compared by TBI status with Kaplan-Meier estimates and the log-rank test. We were unable to determine whether a patient died outside the context of a hospitalization and thus cases were not censored at death. Cumulative hazard of stroke was estimated at different time intervals using the Nelson-Aalen method and the differences in cumulative hazard were calculated. Confidence intervals (CIs) of the differences were estimated using bootstrapping.

Our primary adjusted analysis relied on Cox proportional hazards modeling.[28] We examined the association of TBI and stroke after adjusting for demographics, payer, vascular risk factors (hypertension, hyperlipidemia, diabetes, atrial fibrillation), all Charlson comorbidities, trauma severity, whether a patient had multiple visits for trauma/TBI, and trauma mechanism, while accounting for clustering at the hospital level. To explore how covariate groups (demographics, comorbidities, vascular risk factors, trauma severity, trauma mechanism) affected the TBI–ischemic stroke association, we also developed models in which covariate groups were added serially. Given the increased incidence of epilepsy in patients with TBI[29] and the potential for misdiagnosing seizure as stroke,[30] we included a covariate that represented whether a patient had any ED visit or admission for epilepsy (*ICD-9-CM* 345.x) or convulsions (780.3x).[31] The proportional hazards assumption central to Cox modeling was tested by visually inspecting plots of the cumulative hazards function and plots of Schoenfeld residuals and no violations of the proportional hazards assumption were found.[32]

**Secondary analyses.** We performed a series of post hoc secondary analyses to assess the robustness of the association between TBI and ischemic stroke that either added covariates to our primary analysis or stratified our primary analysis on covariates of interest. First, to determine whether there was a relationship between specific TBI types and ischemic stroke, we analyzed the risk of ischemic stroke for TBI subtypes identifiable by *ICD-9-CM* codes: skull fracture (800–801.9, 803–804.9), concussion (850–850.9), cerebral laceration/intracranial hemorrhage (851–853.9), other intracranial injury (854–854.9), and unspecified TBI (959.01).[33] Second, to assess whether the TBI–ischemic stroke association may differ depending on overall trauma severity, we repeated our primary analysis stratified over injury severity tertiles. In addition, to assess for possible missed early stroke diagnosis (i.e., stroke present at initial trauma/TBI presentation and not diagnosed at that time), we repeated our primary analysis excluding all ischemic stroke hospitalizations that occurred within 7, 30, or 60 days of trauma. Next, to characterize the relative temporal association between TBI and stroke, we repeated our

© 2013 American Academy of Neurology. Unauthorized reproduction of this article is prohibited.

| Table 1 | Baseline patient characteristics | |
|---|---|---|
| | No TBI (n = 736,723) | TBI (n = 436,630) |
| **Demographics** | | |
| Age, y, mean (SD) | 50.3 (20.1) | 49.2 (22.4) |
| Female, n (%) | 363,210 (49.3) | 204,298 (46.8) |
| **Race/ethnicity, n (%)** | | |
| White | 426,587 (57.9) | 251,095 (57.5) |
| African American | 43,418 (5.9) | 31,003 (7.1) |
| Hispanic | 136,908 (18.6) | 80,753 (18.5) |
| Asian | 24,879 (3.4) | 22,111 (5.1) |
| Other | 104,931 (14.3) | 51,668 (11.8) |
| **Insurance, n (%)** | | |
| Medicare | 190,409 (25.9) | 120,571 (27.6) |
| Medicaid | 72,680 (9.9) | 43,502 (10.0) |
| Private | 287,086 (39.0) | 150,909 (34.6) |
| Self-pay | 107,268 (14.6) | 73,755 (16.9) |
| Other/missing | 79,280 (10.8) | 47,893 (11.0) |
| **Vascular risk factors, n (%)** | | |
| Hypertension | 125,752 (17.1) | 75,438 (17.3) |
| Hyperlipidemia | 41,206 (5.6) | 20,873 (4.8) |
| Diabetes | 59,141 (8.0) | 31,897 (7.3) |
| Coronary artery disease | 24,930 (3.4) | 16,573 (3.8) |
| Peripheral vascular disease | 6,151 (0.8) | 3,045 (0.7) |
| Atrial fibrillation | 14,702 (2.0) | 12,359 (2.8) |
| **Comorbidities,[a] n (%)** | | |
| Congestive heart failure | 15,505 (2.1) | 9,133 (2.1) |
| Dementia | 5,061 (0.7) | 5,504 (1.3) |
| Chronic obstructive pulmonary disease | 34,775 (4.7) | 17,129 (3.9) |
| Rheumatologic disease | 4,915 (0.7) | 2,092 (0.5) |
| Peptic ulcer disease | 1,473 (0.2) | 724 (0.2) |
| Mild liver disease | 5,618 (0.8) | 3,760 (0.9) |
| Renal disease | 13,538 (1.8) | 7,386 (1.7) |
| Cancer | 5,064 (0.7) | 3,385 (0.8) |
| Severe liver disease | 849 (0.1) | 627 (0.1) |
| Metastases | 1,617 (0.2) | 1,154 (0.3) |
| HIV/AIDS | 490 (0.1) | 330 (0.1) |
| Epilepsy[b] | 7,997 (1.1) | 14,798 (3.4) |
| History of multiple trauma/TBI[c] | 103,090 (14.0) | 69,863 (16.0) |
| **Admission characteristics** | | |
| Admitted, n (%) | 167,406 (22.7) | 80,264 (18.4) |
| Injury severity,[d] mean (SD) | 4.1 (3.6) | 4.6 (10.1) |

Abbreviation: TBI = traumatic brain injury.
[a] Defined using the modified Charlson definitions.
[b] Defined as *ICD-9-CM* 345.x or 780.3x.
[c] Defined as positive if a patient had multiple prior admissions or emergency department visits for trauma during the cohort.
[d] Assessed using the Abbreviated Injury Scale (ICD/AIS).

primary analysis by including only strokes that occurred in the first year after the index event and then again by excluding all strokes that occurred within the first year. We also explored the role of age on the TBI-stroke association by stratifying our analysis at age 50 years. In addition, to assess for alcohol and drug abuse/dependency as possible mediators of the relationship between TBI and ischemic stroke, we repeated our primary analysis adjusting for any alcohol/drug abuse diagnoses (*ICD-9-CM* 291–292.9, 303–304.9). Finally, to assess for the role of other potential stroke risk factors (e.g., vasculitis) and risk factors that are suboptimally measured (e.g., smoking[34]), we repeated our primary analysis and estimated the stroke-TBI association after adjusting for the following: hypercoagulable disorders, prior venous thromboembolism, obesity, vasculitis, arrhythmias other than atrial fibrillation, valvular disease, patent foramen ovale, and smoking.

**RESULTS** The study cohort included 1,173,353 total trauma subjects, 436,630 (37%) with TBI. The median duration of follow-up was 28 months (interquartile range 14–44), with a total of 11,229 (1%) ischemic strokes identified during this timeframe—1.1% in the TBI group and 0.9% in the non-TBI trauma group. The patients with TBI were slightly younger than controls (mean age 49.2 vs 50.3 years), less likely to be female (46.8% vs 49.3%), and had a higher mean injury severity score (4.6 vs 4.1). Further details of the study population are summarized in table 1.

**Association between TBI and ischemic stroke hospitalization.** Kaplan-Meier survival curves for survival free from ischemic stroke after TBI and non-TBI trauma are illustrated in the figure. The TBI group was more likely to be hospitalized for ischemic stroke than the non-TBI trauma group (log-rank test, $p < 0.01$). The difference between the unadjusted Nelson-Aaler cumulative hazard function in the TBI group compared with the non-TBI trauma group was 0.07% (0.06%–0.09%) at 90 days and 0.21% (0.18%–0.24%) at 2 years.

After adjustment for all covariates (table 2), TBI was associated with ischemic stroke hospitalization (hazard ratio [HR] = 1.31, 95% CI 1.25–1.36). This association only changed slightly when covariate groups were serially added: demographics only (HR = 1.34, 95% CI 1.28–1.39), addition of vascular risk factors (HR = 1.30, 95% CI 1.25–1.35), addition of comorbidities (HR 1.30, 95% CI 1.25–1.35), and addition of injury severity and trauma mechanism (HR = 1.31, 95% CI 1.25–1.36).

**Secondary analyses.** The association between TBI and ischemic stroke hospitalization was robust in that similar associations were observed under a variety of different modeling assumptions (table 3). All TBI subtypes had a similar magnitude of association with ischemic stroke, and when stroke hospitalization within 7, 30, 60, or 365 days of trauma was excluded from the outcome measure, the ischemic stroke–TBI association only modestly decreased (table 3). The

© 2013 American Academy of Neurology. Unauthorized reproduction of this article is prohibited.



© 2013 American Academy of Neurology. Unauthorized reproduction of this article is prohibited.



**Figure** Kaplan-Meier curves demonstrating the proportion of the cohort with stroke-free survival in traumatic brain injury (TBI) and non-TBI trauma patients

Note that these curves are presented to demonstrate the likely minimum difference in stroke risk between TBI and non-TBI trauma patients. The absolute risk estimates from this curve may be inaccurate because of lack of death censoring (see Discussion section). Log-rank test: $p < 0.00001$.

age-stratified analysis was a secondary analysis in which the stroke-TBI association was most substantially altered, with a greater association observed in the population younger than 50 years (odds ratio

**Table 2** Cox model output

| | Hazard ratio (95% CI)[a] | p Value |
|---|---|---|
| **Age, y, reference 18–32** | | |
| 33–48 | 5.32 (4.26–6.64) | <0.01 |
| 49–66 | 16.3 (13.1–20.3) | <0.01 |
| 67+ | 37.3 (29.7–46.9) | <0.01 |
| Female | 0.98 (0.94–1.03) | 0.48 |
| **Race/ethnicity, reference white** | | |
| African American | 1.69 (1.56–1.83) | <0.01 |
| Hispanic | 1.08 (1.01–1.15) | 0.03 |
| Asian | 0.88 (0.80–0.97) | 0.01 |
| Other | 0.97 (0.90–1.04) | 0.36 |
| **Vascular risk factors/comorbidities** | | |
| Hypertension | 1.34 (1.28–1.40) | <0.01 |
| Hyperlipidemia | 0.91 (0.86–0.97) | <0.01 |
| Diabetes | 1.33 (1.26–1.40) | <0.01 |
| Coronary artery disease | 1.11 (1.04–1.23) | <0.01 |
| Peripheral vascular disease | 1.11 (1.00–1.23) | 0.05 |
| Atrial fibrillation | 1.76 (1.65–1.88) | <0.01 |
| Epilepsy | 1.47 (1.34–1.61) | <0.01 |
| Injury severity | 1.00 (1.00–1.01) | 0.60 |
| TBI | 1.31 (1.25–1.36) | <0.01 |

Abbreviations: CI = confidence interval; TBI = traumatic brain injury.

[a] Hazard ratio for major risk factors and TBI after also adjusting for payer, all Charlson comorbidities, injury mechanism (E codes), whether the patient had multiple events, and whether the patient was admitted.

[OR] 1.56, 95% CI 1.32–1.85) vs the population 50 years and older (OR 1.22, 95% CI 1.16–1.28).

**DISCUSSION** We found a robust association between TBI visits and subsequent hospitalization for ischemic stroke in California from 2005 to 2009, even after adjusting for a number of potential confounding variables. The magnitude of this association was substantial (HR 1.31) and was similar to the association between the leading stroke risk factor, hypertension (HR 1.34), and ischemic stroke. Given the higher prevalence of TBI in this trauma population, TBI was responsible for more ischemic stroke than hypertension. The TBI–ischemic stroke association persisted in secondary analyses after accounting for a variety of variables and assumptions that may alter the stroke-TBI relationship. Despite the robust association of TBI and ischemic stroke, the absolute ischemic stroke risk difference between TBI and non-TBI trauma patients in this low-risk cohort is small. Nonetheless, if further research definitively established TBI as a novel stroke risk factor, this would stimulate research to understand stroke pathophysiology after TBI and inform stroke prevention efforts in this young population with few vascular risk factors.

We found a similar association between ischemic stroke and TBI as in the prior Taiwanese study.[13] In our study, the association persisted after selecting non-TBI trauma controls that are likely more similar to the TBI population than the age- and sex-matched controls in the Taiwanese study. We also found that the ischemic stroke–TBI association was similarly unaffected by accounting for potential confounders such as trauma severity and trauma mechanism. Interestingly, we found that the difference in ischemic stroke risk between the TBI and non-TBI trauma groups was not just attributable to a high early risk in patients with TBI. The risk of stroke after TBI persisted even when excluding cases of stroke within 60 days of trauma. This finding differs somewhat from the prior Taiwanese study that found a large early recurrence rate and a more modest effect over 30 days. We also found that the TBI-stroke association was of considerably greater magnitude in the population younger than 50 years (OR 1.56) vs those 50 years and older (OR 1.22), suggesting that TBI may be uniquely important in younger patients.

If the association between TBI and ischemic stroke is causal, a number of potential pathways may explain this relationship. For example, TBI causes alterations in the coagulation cascade, which in turn may increase stroke risk.[12] However, given that these alterations last briefly, they likely explain at most a portion of the association found in this study. TBI is also known to cause vascular dissection—a well-described ischemic stroke mechanism.[35,36] Our analysis excluded dissection-mediated

© 2013 American Academy of Neurology. Unauthorized reproduction of this article is prohibited.

| Table 3 | Secondary analyses[a] |
|---|---|
| | Hazard ratio (95% CI) for stroke after TBI |
| Baseline model | 1.31 (1.25–1.36) |
| Baseline model limited to outcome of principal diagnosis of stroke | 1.29 (1.23–1.35) |
| Excluding epilepsy rather than adjusting for epilepsy | 1.31 (1.25–1.36) |
| Excluding all head/neck arterial injuries | 1.29 (1.23–1.36) |
| Including alcohol and drug-related dependency | 1.30 (1.25–1.36) |
| Including atypical stroke risk factors | 1.29 (1.23–1.35) |
| Excluding stroke within 7 d | 1.27 (1.22–1.33) |
| Excluding stroke within 30 d | 1.25 (1.20–1.31) |
| Excluding stroke within 60 d | 1.25 (1.20–1.31) |
| Excluding stroke within 1 y | 1.24 (1.17–1.31) |
| Excluding stroke after 1 y | 1.38 (1.31–1.46) |
| Stratified by trauma severity | |
| Tertile 1 (lowest severity) | 1.10 (1.01–1.20) |
| Tertile 2 | 1.29 (1.16–1.43) |
| Tertile 3 (highest severity) | 1.25 (1.16–1.35) |
| Stratified by age | |
| <50 y | 1.56 (1.32–1.85) |
| ≥50 y | 1.22 (1.16–1.28) |
| Using TBI subtypes | |
| Skull fracture | 1.21 (1.05–1.41) |
| Concussion | 1.27 (1.17–1.37) |
| Intracranial bleeding | 1.21 (1.12–1.31) |
| Other intracranial injury | 1.38 (1.07–1.76) |
| Unspecified | 1.33 (1.27–1.40) |

Abbreviations: CI = confidence interval; TBI = traumatic brain injury.
[a] The top portion of the table shows the magnitude of the TBI–ischemic stroke association in our baseline model and in 5 additional models that accounted for possible confounders between the TBI-stroke association (misdiagnosis of epilepsy, alcohol/drug dependency, missed stroke diagnosis at the time of initial presentation, and atypical or poorly measured stroke risk factors [hypercoagulability, obesity, prior venous thromboembolism, vasculitis, any arrhythmia, endocarditis, any valvular abnormality, patent foramen ovale, and smoking]). The middle portion of the table shows the TBI-ischemic stroke association in analyses stratified by trauma severity. The bottom portion of the table demonstrates the association between TBI subtypes and ischemic stroke.

This study has a number of important limitations. First, inaccuracy in administrative diagnosis coding may affect both stroke and TBI diagnoses. For example, sequelae of TBI could lead to a misdiagnosis of ischemic stroke based on neuroimaging studies. If this was the case, we would have expected a stronger association between TBI and ischemic stroke in any position on the record compared with the association between TBI and ischemic stroke as the principal diagnosis because principal position diagnoses generally have a higher specificity.[39] However, we found a similar association between TBI and stroke regardless of the stroke's position on the claim, thus suggesting that the results are not attributable to diagnostic inaccuracy. Similarly, it is possible that patients presenting with focal neurologic symptoms after a seizure related to their TBI are misdiagnosed with stroke.[30] However, our primary analysis adjusted for patients with any epilepsy diagnosis and in secondary analyses we excluded these patients, but the TBI–ischemic stroke association was not substantially affected. Similar potential limitations exist for claims-based diagnosis of mild TBI, which is relatively specific but insensitive.[33] As a consequence, some of the patients in our non-TBI trauma control group likely had TBI. To the extent that this was the case, we would have expected the relationship between TBI and ischemic stroke to be biased toward the null. Similarly, because the control group may also be susceptible to an increased stroke risk relative to the general population (e.g., mediated through lack of mobility), it is possible that the reported association between TBI and stroke represents an underestimate. In addition, our estimates of the risk of ischemic stroke in both the TBI cases and controls are underestimates because we were unable to capture out-of-state stroke hospitalizations or to account for competing mortality. We do not expect, however, that either of these limitations would explain our primary findings. First, we were able to account for risk of mortality after trauma using the injury severity score. Second, TBI patients in general would be expected to have a higher mortality than non-TBI trauma patients[40]; therefore, failing to account for competing mortality would likely lead to underestimation of the true TBI–ischemic stroke association. As with all observational studies, unmeasured confounders (e.g., differences in baseline medications) may lead to biased estimates. Finally, this dataset enables only limited inferences about the possible mechanistic links between TBI and trauma given that many of clinical details (e.g., ischemic stroke subtype, localization, severity) are not measured.

TBI is associated with ischemic stroke, and further work is needed to assess whether it may be a novel stroke risk factor. Prospective cohort and/or population-based, cross-sectional studies are needed to confirm the association, explore potential mechanisms for the association

stroke; however, given the small number of dissections identified by claims, it is likely that some dissections were undetected. Dissection is unlikely, however, to explain the entire association given the relatively low long-term risk of ischemic stroke after dissection,[37] the high short-term recanalization rates after dissection,[38] and the fact that the risk difference between TBI and non-TBI trauma patients appears to continue to increase even years after the initial injury. Although other novel pathophysiologic pathways may have a role, it is also possible that patients with TBI may accrue conventional vascular risk factors at a faster rate than patients with non-TBI trauma because of a more sedentary lifestyle after TBI.

**–1843–**

© 2013 American Academy of Neurology. Unauthorized reproduction of this article is prohibited.

between TBI and ischemic stroke, and carefully characterize the clinical features of both TBI and subsequent stroke, including both TBI and stroke mechanism, size, and location.

## AUTHOR CONTRIBUTIONS

Dr. Burke drafted the initial manuscript, participated in development of study design, performed the primary data analysis, and acquired the data. Dr. Stulc and Dr. Skolarus revised the manuscript for content, participated in development of the study design, and participated in data interpretation. Dr. Sears revised the manuscript for content, participated in development of the study design, and participated in data analysis. Dr. Zahuranec revised the manuscript for content, participated in development of the study design, and participated in data interpretation. Dr. Morgenstern revised the manuscript for content, initially developed the study concept, participated in formulation of the study design, and participated in data interpretation.

## STUDY FUNDING

No targeted funding reported.

## DISCLOSURE

J. Burke is supported by a VA Advanced Fellowship. J. Stulc reports no disclosures relevant to the manuscript. L. Skolarus is supported by NIH K23NS073685 from the National Institute of Neurological Diseases and Stroke. E. Sears reports no disclosures relevant to the manuscript. D. Zahuranec is supported by grant K23AG038731 from the National Institute on Aging. L. Morgenstern receives NIH funding (significant) from grants R01NS38916, R01NS062675, U01NS056975, U01NS062835, R18HS017690, R01NS073595, and R01HL098065. He receives significant research support from St. Jude Medical. Go to Neurology.org for full disclosures.

*Received October 26, 2012. Accepted in final form March 11, 2013.*

## REFERENCES

1. Roger VL, Go AS, Lloyd-Jones DM, et al. Heart disease and stroke statistics—2012 update: a report from the American Heart Association. Circulation 2012;125:e2–e220.
2. Bruns J, Hauser W. The epidemiology of traumatic brain injury: a review. Epilepsia 2003;44:2–10.
3. Brown DL, Boden-Albala B, Langa KM, et al. Projected costs of ischemic stroke in the United States. Neurology 2006;67:1390–1395.
4. Finkelstein EA, Corso PS, MIller TR. Incidence and Economic Burden of Injuries in the United States. Oxford, UK: Oxford University Press; 2006.
5. Thurman DJ, Alverson C, Dunn KA, Guerrero J, Sniezek JE. Traumatic brain injury in the United States: a public health perspective. J Head Trauma Rehabil 1999; 14:602–615.
6. Glozier N, Hackett ML, Parag V, Anderson CS; Auckland Regional Community Stroke (ARCOS) Study Group. The influence of psychiatric morbidity on return to paid work after stroke in younger adults: the Auckland Regional Community Stroke (ARCOS) Study, 2002 to 2003. Stroke 2008;39:1526–1532.
7. Faul M, Xu L, Wald MM, Coronado VG. Traumatic Brain Injury in the United States: Emergency Department Visits, Hospitalizations, and Deaths 2002–2006. Atlanta: Centers for Disease Control and Prevention, National Center for Injury Prevention and Control; 2010.
8. Williams LS, Garg BP, Cohen M, Fleck JD, Biller J. Subtypes of ischemic stroke in children and young adults. Neurology 1997;49:1541–1545.
9. Ji R, Schwamm LH, Pervez MA, Singhal AB. Ischemic stroke and transient ischemic attack in young adults: risk factors, diagnostic yield, neuroimaging, and thrombolysis—ischemic stroke/TIA in young adults. JAMA Neurol 2013;70:51–57.
10. D'Agostino RB, Wolf PA, Belanger AJ, Kannel WB. Stroke risk profile: adjustment for antihypertensive medication. The Framingham Study. Stroke 1994;25:40–43.
11. Fullerton HJ, Johnston SC, Smith WS. Arterial dissection and stroke in children. Neurology 2001;57:1155–1160.
12. Lu D, Mahmood A, Goussev A, et al. Atorvastatin reduction of intravascular thrombosis, increase in cerebral microvascular patency and integrity, and enhancement of spatial learning in rats subjected to traumatic brain injury. J Neurosurg 2004;101:813–821.
13. Chen YH, Kang JH, Lin HC. Patients with traumatic brain injury: population-based study suggests increased risk of stroke. Stroke 2011;42:2733–2739.
14. Agency for Healthcare Research and Quality (AHRQ), Healthcare Cost and Utilization Project. Overview of the state inpatient databases [online]. Available at: http://www.hcup-us.ahrq.gov/sidoverview.jsp. Accessed June 12, 2012.
15. Agency for Healthcare Research and Quality (AHRQ), Healthcare Cost and Utilization Project. Overview of the state emergency department databases [online]. Available at: http://www.hcup-us.ahrq.gov/seddoverview.jsp. Accessed June 12, 2012.
16. Healthcare Cost and Utilization Project. Supplemental variables for revisit analyses [online]. Available at: http://www.hcup-us.ahrq.gov/toolssoftware/revisit/revisit.jsp. Accessed June 12, 2012.
17. Thurman DJ, Sniezek JE, Johnson D, Greenspan A. Guidelines for Surveillance of Central Nervous System Injury. Atlanta: U.S. Department of Health and Human Services, Public Health Service, Center for Disease Control and Prevention; 1995.
18. National Center for Injury Prevention. Report to Congress. Mild Traumatic Brain Injury in the United States: Steps to Prevent a Serious Public Health Problem. Atlanta: Centers for Disease Control and Prevention; 2003.
19. Goldstein LB. Accuracy of ICD-9-CM coding for the identification of patients with acute ischemic stroke: effect of modifier codes. Stroke 1998;29:1602–1604.
20. Tirschwell DL, Longstreth WT. Validating administrative data in stroke research. Stroke 2002;33:2465–2470.
21. Agency for Healthcare Research and Quality (AHRQ). HCUP clinical classification software (CCS) for ICD-9-CM [online]. Available at: http://www.hcup-us.ahrq.gov/toolssoftware/ccs/ccs.jsp. Accessed June 12, 2012.
22. Quan H, Sundararajan V, Halfon P, et al. Coding algorithms for defining comorbidities in ICD-9-CM and ICD-10 administrative data. Med Care 2005;43:1130–1139.
23. Association for the Advancement of Automotive Medicine. The Abbreviated Injury Scale [online]. Available at: http://www.aaam1.org/ais/index.php. Accessed June 5, 2012.
24. The Johns Hopkins University, Tri-Analytics. ICD-MAP-90 software.
25. Haas B, Xiong W, Brennan-Barnes M, Gomez D, Nathens AB. Overcoming barriers to population-based injury research: development and validation of an ICD10-to-AIS algorithm. Can J Surg 2012;55:21.
26. McLoughlin E, Annest JL, Fingerhut LA, Berenholz A. Recommended framework for presenting injury mortality data. MMWR Morb Mortal Wkly Rep 1997;46: 1–30.

-1844-

© 2013 American Academy of Neurology. Unauthorized reproduction of this article is prohibited.

27. LeMier M, Cummings P, West TA. Accuracy of external cause of injury codes reported in Washington State hospital discharge records. Inj Prev 2001;7:334–338.

28. Cox D. Partial likelihood. Biometrika 1975;62:269–276.

29. Annegers JF, Coan SP. The risks of epilepsy after traumatic brain injury. Seizure 2000;9:453–457.

30. Hand P, Kwan J, Lindley R, Dennis M. Distinguishing between stroke and mimic at the bedside the brain attack study. Stroke 2006;37:769–775.

31. Jetté N, Reid AY, Quan H, Hill MD, Wiebe S. How accurate is ICD coding for epilepsy? Epilepsia 2010;51: 62–69.

32. Hess KR. Graphical methods for assessing violations of the proportional hazards assumption in Cox regression. Stat Med 1995;14:1707–1723.

33. Bazarian JJ, Veazie P, Mookerjee S, Lerner EB. Accuracy of mild traumatic brain injury case ascertainment using ICD-9 codes. Acad Emerg Med 2006;13:31–38.

34. Kokotailo RA, Hill MD. Coding of stroke and stroke risk factors using international classification of diseases, revisions 9 and 10. Stroke 2005;36:1776–1781.

35. Fisher CM, Ojemann RG, Roberson GH. Spontaneous dissection of cervico-cerebral arteries. Can J Neurol Sci 1978;5:9–19.

36. Caplan LR, Zarins CK, Hemmati M. Spontaneous dissection of the extracranial vertebral arteries. Stroke 1985;16:1030–1038.

37. Touzé E, Gauvrit JY, Moulin T, et al. Risk of stroke and recurrent dissection after a cervical artery dissection: a multicenter study. Neurology 2003;61:1347–1351.

38. Baracchini C, Tonello S, Meneghetti G, Ballotta E. Neurosonographic monitoring of 105 spontaneous cervical artery dissections: a prospective study. Neurology 2010; 75:1864–1870.

39. Rector TS, Wickstrom SL, Shah M, et al. Specificity and sensitivity of claims-based algorithms for identifying members of Medicare+Choice health plans that have chronic medical conditions. Health Serv Res 2004;39(6 pt 1):1839–1857.

40. Cameron CM, Purdie DM, Kliewer EV, McClure RJ. Long-term mortality following trauma: 10 year follow-up in a population-based sample of injured adults. J Trauma 2005;59: 639–646.

---

## *Neurology*® Launches Subspecialty Alerts by E-mail!

Customize your online journal experience by signing up for e-mail alerts related to your subspecialty or area of interest. Access this free service by visiting http://www.neurology.org/site/subscriptions/etoc.xhtml or click on the "E-mail Alerts" link on the home page. An extensive list of subspecialties, methods, and study design choices will be available for you to choose from—allowing you priority alerts to cutting-edge research in your field!

---

## Spring AAN Webinars: Help for Your Practice, CME for Your Career

The American Academy of Neurology offers cost-effective Practice Management Webinars that can be attended live or through convenient recordings posted online five days after the event. AAN members can save 25% on all regular webinars! Plus, physicians can earn 1.5 valuable CME credits for each webinar, and administrators receive a certificate of completion. Mark your calendar for upcoming programs and register today for these and other 2013 webinars at *www.aan.com/view/pmw13*:

| | |
|---|---|
| Online Now | **Correct Coding for Chemodenervation** |
| Online Now | **Working with NPs and PAs to Maximize Office Productivity** |
| Online Now | **Remaining Relevant in the Changing Health Care Payment and Care Delivery Systems** |
| Online Now | **Coding Accurately for Epilepsy** |
| Online Now | **E/M: Minimize Mistakes, Maximize Reimbursement** |

© 2013 American Academy of Neurology. Unauthorized reproduction of this article is prohibited.

**Traumatic brain injury may be an independent risk factor for stroke**

James F. Burke, Jessica L. Stulc, Lesli E. Skolarus, et al.

*Neurology* published online June 26, 2013

DOI 10.1212/WNL.0b013e318297eecf

## This information is current as of June 26, 2013

| | |
|---|---|
| **Updated Information & Services** | including high resolution figures, can be found at: http://www.neurology.org/content/early/2013/06/26/WNL.0b013e318297eecf.full.html |
| **Subspecialty Collections** | This article, along with others on similar topics, appears in the following collection(s): **All Cerebrovascular disease/Stroke** http://www.neurology.org//cgi/collection/all_cerebrovascular_disease_stroke **All Health Services Research** http://www.neurology.org//cgi/collection/all_health_services_research **Brain trauma** http://www.neurology.org//cgi/collection/brain_trauma |
| **Permissions & Licensing** | Information about reproducing this article in parts (figures,tables) or in its entirety can be found online at: http://www.neurology.org/misc/about.xhtml#permissions |
| **Reprints** | Information about ordering reprints can be found online: http://www.neurology.org/misc/addir.xhtml#reprintsus |



AMERICAN ACADEMY OF
NEUROLOGY®

# EXHIBIT 22

*Journal of the International Neuropsychological Society* (2008), **14**, 1–22.
Copyright © 2008 INS. Published by Cambridge University Press. Printed in the USA.
DOI: 10.1017/S135561770808017X

# CRITICAL REVIEW

# Neuropsychology and clinical neuroscience of persistent post-concussive syndrome

ERIN D. BIGLER

Departments of Psychology and Neuroscience, Brigham Young University, Provo, Utah and Department of Psychiatry and the Utah Brain Institute, University of Utah, Salt Lake City, Utah

(Received March 6, 2007; Final Revision August 16, 2007; Accepted August 16, 2007)

**Abstract**

On the mild end of the acquired brain injury spectrum, the terms concussion and mild traumatic brain injury (mTBI) have been used interchangeably, where persistent post-concussive syndrome (PPCS) has been a label given when symptoms persist for more than three months post-concussion. Whereas a brief history of concussion research is overviewed, the focus of this review is on the current status of PPCS as a clinical entity from the perspective of recent advances in the biomechanical modeling of concussion in human and animal studies, particularly directed at a better understanding of the neuropathology associated with concussion. These studies implicate common regions of injury, including the upper brainstem, base of the frontal lobe, hypothalamic-pituitary axis, medial temporal lobe, fornix, and corpus callosum. Limitations of current neuropsychological techniques for the clinical assessment of memory and executive function are explored and recommendations for improved research designs offered, that may enhance the study of long-term neuropsychological sequelae of concussion. (*JINS*, 2008, *14*, 1–22.)

**Keywords:** Concussion, Mild TBI, Biomechanics, Neuroimaging, Neuropathology, Neuropsychology

## INTRODUCTION: BRIEF HISTORY OF CONCUSSION

That concussion occurs and is commonplace is not in dispute. The United States Government's Center for Disease Control (CDC) estimates that there are more than one million concussions that occur annually in the United States, using their definitional statement of concussion being a condition "of temporarily altered mental status as a result of head trauma (www.cdc.gov, see Rutland-Brown et al., 2006)."

What is controversial is whether one fully recovers without symptoms from having sustained a concussion. Given the commonness of concussions along with the adaptive nature of brain function combined with neural plasticity (Duffau, 2006; Giza & Prins, 2006; Moucha & Kilgard, 2006; Priestley, 2007), it might be assumed that any transient impairment as a result of concussion would not result

in any neurological sequelae. Indeed, historically the original Latin term "commotio cerebri" was used to describe *concussion*, thought to occur because of "traceless disturbances" that produced momentary functional impairment without any damage to brain tissue (see reviews by McCrory & Berkovic, 2001; Vos et al., 2002) . Hence, for decades, one of the venerable definitions in standard neurology textbooks, exemplified by the following quote from Grinker's Neurology was as follows: "the usual patient loses consciousness briefly, soon recovers and thereafter is without symptoms" (Vick, 1976; p. 651). In that concussion was thought to be mostly benign, the non-biological and psychodynamic theories that dominated the beginnings of clinical psychology and psychiatry minimized the effects head injury could have on behavior. This is captured by the 1947 quote by Page (1947) in an abnormal psychology textbook that "Head injuries and gunshot wounds involving damage to the brain occasionally produce mental disturbances, but such injuries are not an important cause of mental disease (p. 330)". Persistent maladaptive symptoms in this time frame were believed to be more an expression of a "neurosis" than anything possibly "organic." So,

Correspondence and reprint request to: Erin D. Bigler, Ph.D., Departments of Psychology and Neuroscience, 1190D SWKT, Brigham Young University, Provo, Utah 84602. E-mail: erin_bigler@byu.edu

**-1848-**

"persistent" problems following concussion were interpreted within a psychogenic framework. In fact, one of the most cited publications in the clinical literature on concussion is that of Miller (1961) whose series of articles centered on the theme of concussion being nothing more than "Accident Neurosis", which others have labeled as "Compensation Neurosis" (Levy, 1992) because of the prevalence of lawsuits involving mild head injury (Hall & Chapman, 2005; Mooney et al., 2005). No doubt "psychological" factors play an important role in the residuals from concussion (Meares et al., 2006; Whittaker et al., 2007; Wood, 2007), but they and other "functional" factors are also the source of intense debate and controversy over the existence of post-concussive symptomatology (Cantu, 2007; Evans, 1994; King, 2003). These controversies will be discussed in greater detail later in this review.

Part of this controversy has to do with nomenclature and definition. Years ago, Vick (1976) also stated that terms like concussion are ". . . of little value" because of "such wide and indefinite connotations" (p. 650). Much has been written about the definition of concussion (Blostein & Jones, 2003; Boake et al., 2005; Ruff & Jurica, 1999), including the definitional statements by major organizations and consensus panels as presented in Table 1, wherein the terms concussion and mild traumatic brain injury (mTBI) are used interchangeably. For this review, in referring to studies, if the authors used the term concussion then that term will be used in referring to the study and likewise, if the term mTBI is used by the authors, that term will be used; otherwise, mTBI and concussion will be used interchangeably in the current review. However, this review focuses on the persistence of symptoms following concussion or what has been referred to as post-concussive syndrome (PCS), but this term then brings up additional controversies. In the majority of those concussed, symptoms abate within minutes to hours to days post-injury. Thus, some refer to PCS if the symptoms persist for more than a few days and in particular, if the symptoms persist for more than a week (Anderson et al., 2006; Sheedy et al., 2006). If the symptoms last more than 3 months then the term persistent post-concussive syndrome or PPCS has been used (Begaz et al., 2006; Chamelian et al., 2004; Iverson, 2006; Rees, 2003; Satz et al., 1999; Stalnacke et al., 2005; Willer & Leddy, 2006). Whereas there is a relationship between severity of concussion and who develops PPCS (Hessen et al., 2006), concussion severity by itself is a poor predictor of who develops PPCS (Guskiewicz et al., 2004).

DSM-IV lists PCS as a disorder under its "research" classification and some have referred to it as a syndrome (King, 2003; Rees, 2003; Ryan & Warden, 2003) and there are differences in symptom criteria between DSM-IV and the International Classification of Disorders (ICD-10) that further cloud this taxonomy issue (Kashluba et al., 2006; McCauley et al., 2005). Whether PCS is a disorder or syndrome is another ongoing debate (Hall & Chapman, 2005; Smith, 2006). Neither DSM-IV or ICD use the PPCS label. Nosological issues are not the focus of this review and there are several excellent recent reviews on this topic ((Hall & Chapman, 2005; Silver et al., 2005; Smith, 2006; Zasler et al., 2007). Thus, for the current review PPCS is operationally defined as symptoms that persist beyond three months following a concussion (having met at least one of the definitions as listed in Table 1), implicating chronic sequelae.

As demonstrated by Table 1, there are many definitional statements about what constitutes a concussion or mTBI. Neuropsychological research on this topic would be aided to have a universally accepted definition as the standard (see Tagliaferri et al., 2006). Nonetheless, all definitions in Table 1 have general agreement that "mTBI is defined as the consequence of blunt (non-penetrating) impact with sudden acceleration, deceleration or rotation of the head with a Glasgow Coma Score (GCS) of 13–15 . . . (Vos et al., 2002, p. 207)." Thus, concussion occurs because of impact physical forces affecting the brain and if, physical forces are insufficient to injure the brain, no injury has occurred.

Regardless of the etiology, recovery from concussion is typically rapid and ostensibly complete in most individuals. Clearly, the best-controlled studies examining outcome following concussion, demonstrate good to complete recovery in the majority of individuals (Iverson et al., 2007). Additionally, at least with sports concussion, major consensus statements of the past five years have resulted in statements like "concussion typically results from the rapid onset of short lived impairment of neurological function that resolves spontaneously" and that "concussion may result in neuropathological changes but the clinical symptoms largely reflect a functional disturbance rather than structural injury" as reviewed by (Cantu, 2007, p. 963). So this review focuses on the *minority* of subjects who sustain a concussion, who remain symptomatic after three months. Large-scale studies demonstrate approximately 70% of all head injury cases seen in the emergency room (ER) are in the mTBI category (Udekwu et al., 2004). However, as pointed out by the CDC and other studies (Delaney et al., 2005), a substantial number of concussions is never evaluated in the ER, making it difficult to obtain precise numbers as to the true annual incidence rate. Bazarian et al. (2005) estimate that the annual mTBI incidence rate is 503.1/100,000, of which PPCS rates have been conservatively estimated at 10% (Ruff et al., 1996; Wood, 2004). Thus, despite the overall good to complete recovery rates from concussion, this remains a major public health concern (Langlois et al., 2005) and the field of neuropsychology should better understand the disorder (Kelly, 1999; Langlois et al., 2005).

From a neuropsychological standpoint, symptoms of impaired attention, memory, and executive function along with changes in emotional regulation dominate the clinical picture of PPCS (Lundin et al., 2006). An objective of this review is to understand these features in terms of a common pathological basis. To accomplish this, how evolutionary factors may have shaped recovery from concussion, followed by an up-to-date review of important new studies on the biomechanics of concussion and a thorough discussion

**Table 1.** The Multiple Definitions and Grading Systems of Concussion

Concussion Grading Systems

| Grade | Cantu | Colorado | Roberts | American Academy of Neurology |
|---|---|---|---|---|
| 0 | | | "Bell ringer"; no LOC; no PTA | |
| 1 | No LOC; PTA <30 min | No LOC; confusion without amnesia | No LOC; PTA <30 min | No LOC; transient confusion; concussion symptoms or mental status abnormality resolve in <15 min |
| 2 | LOC <5 min; PTA >30 min and <24h | No LOC; confusion with amnesia | LOC <5 min; PTA >30 min and <24h | No LOC; transient confusion; concussion symptoms or mental status abnormality last >15 min |
| 3 | LOC >5 min or PTA >24h | LOC | LOC >5 min or PTA >24h | Any LOC, either brief or prolonged |

LOC = loss of consciousness; PTA = post-traumatic amnesia (from Leclerc et al., 2001)

**2nd International Conference on Concussion in Sport, Prague 2004**

"Sports concussion is defined as a complex pathophysiological process affecting the brain, induced by traumatic biomechanical forces. Several common features that incorporate clinical, pathological, and biomechanical injury constructs that may be used in defining the nature of a concussive head injury include the following:

(1) "Concussion may be caused by a direct blow to the head, face, neck or elsewhere on the body with an 'impulsive' force transmitted to the head. (2) Concussion typically results in the rapid onset of short lived impairment of neurological function that resolves spontaneously. (3) Concussion may result in neuropathological changes, but the acute clinical symptoms largely reflect a functional disturbance rather than structural injury.(4) Concussion results in a grade set of clinical syndromes that may or may not involve loss of consciousness. Resolution of the clinical and cognitive symptoms typically follows a sequential course. (5) Concussion is typically associated with grossly normal structural neuroimaging studies. Two Classifications of Concussion: (1) *Simple Concussion*—In simple concussion, an athlete suffers an injury that progressively resolves without complication over 7–10 days." (2) "*Complex Concussion*—Complex concussion encompasses cases where athletes suffer persistent symptoms (including persistent symptom recurrence with exertion), specific sequelae (such as concussive convulsions), prolonged loss of consciousness (more than one minute), or prolonged cognitive impairment after the injury" (p. 196–197) (McCrory et al., 2005).

**European Federation of Neurological Societies—2002 Task Force**

"mTBI is defined as the consequence of blunt (non-penetrating) impact with sudden acceleration, deceleration or rotation of the head with a GCS scores of 13–15 on admission to hospital (p. 209).

| Mild | Category | GCS | Clinical Description | *Risk Factors |
|---|---|---|---|---|
| | 0 | 15 | No LOC, no PTA, = head injury, no TBI. No risk factors* | Unclear or ambiguous accident history, continued post-traumatic amnesia, retrograde amnesia longer |
| | 1 | 15 | LOC < 30 min, PTA < 1 hr No risk factors* | than 30 min, skull fracture, severe headache, vomiting, |
| | 2 | 15 | GCS = 15 + Risk factors present* | focal neurological deficit, seizure, age < 2 years, |
| | 3 | 13–14 | LOC < 30 min, PTA < 1 hr. With or without risk factors present* (Vos et al., 2002) | age > 60, coagulation disorders, high energy accident, intoxication with alcohol/drugs |

**American Congress of Rehab Medicine Definition**

A patient with mild traumatic brain injury is a person who has had a traumatically induced physiological disruption of brain function as manifested by at least one of the following:

(1) Any period of loss of consciousness;
(2) Any loss of memory for events immediately before or after the accident;
(3) Any alteration in mental state at the time of the accident (e.g. feeling dazed, disoriented or confused)
(4) Focal neurological deficit(s), that may or may not be transient but where the severity of the injury does not exceed the following:
 (A) loss of consciousness of approximately 30 minutes or less;
 (B) after 30 minutes, an initial Glasgow Coma Scale (GCS) of 13–15; and
 (C) post-traumatic amnesia (PTA) not greater than 24 hours. (American Congress of Rehabilitation Medicine Head Injury Interdisciplinary Special Interest Group, 1993)

**The WHO Collaborating Centre Task Force on Mild Traumatic Brain Injury (mTBI)**

"mTBI is an acute brain injury resulting from mechanical energy to the head from external physical forces. Operational criteria for clinical identification include: (i) 1 or more of the following: confusion or disorientation, loss of consciousness for 30 minutes or less, post-traumatic amnesia for less than 24 hours, and/or other transient neurological abnormalities such as focal signs, seizure, intracranial lesion not requiring surgery; (ii) Glasgow Coma Scale score of 13–15 after 30 minutes post-injury or later upon presentation for healthcare, These manifestations of mTBI must not be due to drugs, alcohol, medications, caused by other injuries or treatment for other injuries (e.g. systemic injuries, facial injuries or intubation), caused by other problems (e.g., psychological trauma, language barrier or coexisting medical conditions) or caused by penetrating craniocerebral injury, p. 115). (Carroll et al., 2004a)

*E.D. Bigler*

of what is now currently known about the neuropathological and pathophysiological basis of concussion will be offered. The last part of the review will focus on more traditional neuropsychological concepts as they relate to concussion and conclude with suggestions on improved research tactics on this topic. There may be nothing more controversial in contemporary clinical neuropsychology, than the issues to be discussed in this review. At the outset, these controversies are acknowledged and the approach of this review is to first overview the contemporary neuroscience of concussion and deal with the most controversial issues at the end of the review.

## EVOLUTIONARY ASPECTS OF INJURY

Undoubtedly concussions have been part of mammalian life since the beginning. The universality of concussions is that the stunned, motorically wobbly appearance commonly observed in an athlete, particularly a boxer who has been concussed, is replicated with animal models (Shaw, 2002). Survivability across mammalian species following concussion is testament to the fact that most concussions are but transient disruptions in normal brain function allowing the animal (including humans) to recover quickly and fully return to pre-injury abilities and activities. Because of the commonness of concussions, it is likely that genes that promoted certain brain morphologies and/or positive recovery characteristics have been passed down. However, concussions prior to the modern era would have occurred *only* from falls, falling or thrown objects, fisticuffs, combat, and the like. All of these remain major sources of concussions but with the modern era, concussions also occur from high-speed impacts that simply were never the source of injury in earlier times. So, whatever evolutionary advantages occurred they did so prior to the modern era. Likewise, genes selective for their ability to promote survivability of a brain injury were most likely *only* associated with simple concussion and not more severe brain injury, because prior to modern medical treatment the majority of moderate-to-severe injuries would not have been survivable or lead to disability that could not be sustained.

From a structural standpoint, the position of the irregular skull base to the dural surface of the frontal and temporal lobes, housed with in the anterior and middle cranial fossa provides a means for holding the brain in position, in response to movement and/or mild trauma to the head (Bigler, 2007). Likewise, the position of the ventricles dissipates some of the strain effects with movement, including that of concussion (Ivarsson et al., 2002). Both of these have significant evolutionary advantage. It is also very likely that a selective bias occurred that favored rapid brain reparative mechanisms once a concussion occurred (Diaz-Arrastia & Baxter, 2006). In fact the most common of injuries for a particular organ system are the very ones most likely shaped by evolution (Martin & Leibovich, 2005). So key to recovery from concussion is a fast acting reparative system and this would emphasize a transient cellular response that immediately re-establishes neural homeostasis. In addition to reparative metabolic and cellular responses, redundancy and back-up neural circuitry activated once a primary system were injured would be critical to recovery (Bach-y-Rita, 2004; Desmurget et al., 2007; Duff, 2001; Guigon et al., 2007; Kercel et al., 2005). These redundant systems can either share in or take over function for injured neurons and networks. A neural systems reserve capacity probably directly relates to how rapid recovery from brain injury occurs, including concussion (Berker, 1996; Stern, 2007) and the role of genes in this recovery process is being examined (Alexander et al., 2007; McAllister et al., 2006)

One final evolutionary speculation will be made and that is based on the appearance and "design" of the fornix (see Fig. 1), the major white matter output from the hippocampus. At least half of the fornix is suspended beneath the corpus callosum and loosely connected with the septum pellucidum as it dives toward its connection with the mammillary body and septum (Andersen et al., 2006). One look at this delicate anatomical structure and it is obvious that it was not selected for its ability to withstand brain trauma. Evolutionarily, in lower mammals the fornix is clearly imbedded in brain parenchyma, but moving up the evolutionary tree with the expansion of the cerebral hemispheres, and the ventricular system, the fornix becomes more progressively suspended (see Crosby & Schnitzlein, 1982). The importance of the hippocampus and fornix in understanding mTBI is a major part of this review.

## Physics of TBI

Given that concussions are so commonplace it *must* be easy to at least transiently impair the brain through mechanical deformation and there *must* be common neurological structures affected [see Figs. 1 and 2; (Ropper & Gorson, 2007)]. In a most innovative experiment by Bayly et al. (2005) human volunteers were studied using MRI to determine momentary brain parenchymal deformation when the head falls just 2 cm. MRIs of the brain were obtained before and immediately after the drop, comparing the degree of brain deformation or warping by measuring changes in fixed points between the two scans. These movements were far below the threshold for concussion and the authors liken this to the type of head (and brain) acceleration when jumping vertically a few inches and landing flat-footed. The authors estimated that it was 10% to 15% of the acceleration of "heading" a soccer ball. However, even with this mild impact the brain deforms. Bayley et al.'s conclusions were as follow: "When the skull decelerates, the brains center of mass continues to move, but the motion of the base of the brain appears constrained near the sellar and supra-sellar space. Tethering loads may be borne by the vascular; neural; and dural elements, which bind the brain to the base of the skull. Such anatomic structures might include the distal internal carotid arteries, the optic nerves, the olfactory tracts, the oculomotor nerves, and the pituitary stalk. All these structures pass through fixed bony or dural rings, which



**Fig. 1.** The top row presents mid-sagittal T1 MRIs comparing the fornix and corpus callosum from a control (C) to that observed in mTBI (A) and severe TBI (B). The control figure is labeled where the following structures are identified: (1) fornix, (2) mammillary body (3) pituitary, where it is situated in the sella turcica, (4) hypophysis of pituitary stalk, and (5) region of the basal forebrain. The light yellow depicts the region of the tegmentum of the midbrain (shown in coronal view in F), whereas the darker yellow represents the tectal region of the midbrain. The coloration of the midbrain is also done to highlight the relative smallness of the midbrain compared to the size of the cerebrum, and how the cerebrum 'rests' atop the midbrain. As shown in (A) from the patient with mTBI, the length of the cerebrum (long arrow) is approximately 10 times the length of the midbrain (short arrow). (D) depicts an axial gradient recall echo (GRE) depicting multiple deposits (black dots) of hemosiderin in the frontal region, implicating shear injury, note how they are mostly located at the gray-white matter junction. This patient had sustained an mTBI in a MVA. Note that there is thinning of the corpus callosum and a shear lesion in the isthmus region. (E) is a T2 mid-sagittal MRI depicting extensive hemosiderin deposition along the body of the corpus callosum (arrows) and also note the generalized atrophy of all structures in the severe TBI case compared to the mTBI and control.

restrict their movement. These features attach to or penetrate the more mobile brain parenchyma. As a result, the brain begins to rotate about this region, while material anterior is compressed and material posterior is stretched by initial effects. As the brain rotates backward and upward relative to the skull, the superior-frontal surface of the brain appears to compress against the top of the cranial vault. Normal forces, tangential forces, and possibly tension in the bridging veins on the superior surface of the brain eventually arrest the rotation of the brain in front of the superior contact region is compressed and pushed forward. Behind the superior points of contact, the brain is elongated as the brains inertia pulls it backward and clockwise. Finally, behind the basal tethering region, material in the brainstem experiences shortening and shear as the posterior and inferior parts of the brain continue rotating downward and forward (p. 852)." Bayly et al. (2006) have also performed this type of modeling on the rat pup brain with similar findings of significant transient mechanical deformation of the brain.

Viano et al. (2005b) used a different approach by simulating movement within the cranium by a "finite element analysis using a detailed anatomic model of the brain and head accelerations from laboratory reconstructions of game impacts (p. 891)" based on National Football League (NFL)

players who experienced on the field concussions that were videotaped. The exceptional innovativeness of this study was the ability to model the brain, including white and gray matter, the ventricular system, meninges, and in particular the falx cerebri and tentorium cerebelli along with the skull (most of these anatomical regions are shown in Figs. 1 and 2). In a number of those concussed, the initial strain occurred in the temporal lobe adjacent to the impact and then migrated though the temporal lobe to other brain regions. This is depicted in Figure 3. In *all* subjects concussed the largest strains that occurred in the migration of the brain deformation occurred in the fornix, midbrain and corpus callosum. Dizziness correlated with early strain in the orbital-frontal cortex and temporal lobe.

The Viano et al. (2005b) modeling study found, in general, excursions of the concussed brain to be between 3–6 mm at 24–26 ms post-impact. Of particular importance to neuropsychology is that this modeling shows 4–5 mm displacements of the hippocampus, caudate, amygdala, anterior commissure, and midbrain (again refer to Fig. 2). In addition to these brain regions showing significant displacement, they also related to various cognitive and physical symptoms from concussion in this group of NFL players. Also, increased strain at the level of the hypothalamus was associated with at least transient cranial nerve symptoms.



**Fig. 2.** All views are post-mortem, adapted from Mai et al. (2004) (and used with permission from Elsevier). A, B, and C represent axial views where the highlighted area represents some of the common regions where the greatest strain effects were demonstrated in the Bayly et al. (2005) and Viano et al. (2005b) studies. (A) 1—hippocampus, 2-subiculum, 3-cerebral peduncle, 4-III ventricle, 5—hypothalamus, 6—anterior cerebral artery, (B) 7—amygdala, 8—hippocampus, 9—basilar artery, 10—temporal horn of the lateral ventricle, 11—internal carotid arteries, (C) 12—free-edge of the tentorium, 13—entorhinal cortex, 14—basilar artery, P = pituitary in the position of the sella turcica. D and E are sagittal views: 15—cerebral peduncle, 16—amygdala, 17 temporal pole and F is a coronal view: 18—hippocampus, 19—fornix, 20—corpus callosum, (21) cerebral peduncle, and 22—entorhinal cortex adjacent to the free-edge of the tentorium. Note the closeness of all of these regions and any movement, lifting or twisting of the brain at its base would simultaneously affect all of these structures.

The models described earlier occur in well-controlled experimental conditions. Obviously, high speed impact head injuries are not a controlled experiment and likely involve more significant pressure and shear-strain forces than what are seen in sports concussion (Bradshaw et al., 2001; Zhang et al., 2006a). Regardless of these factors, the same brain regions as described earlier and as shown in Figures 1 and 2 are likely involved in all concussions, just a matter of degree. Similarly, much of the cognitive and neurobehavioral symptoms of concussion can be explained by the involvement of the brain regions highlighted in Figures 1 and 2. In these Figures, note the proximity of the medial temporal lobe to the midbrain, the fact that the free-edge of the tentorium makes contact with the medial temporal lobe and midbrain as well as the nearness of the basal forebrain to these regions along with the hypothalamus, hypophysis and pituitary stalk, and the arterial vasculature. So, within a few centimeters are critical brain structures that, if affected, could represent the structural basis to many symptoms associated with concussion.

**Pathophysiology of Concussion**

Iverson (2005) and Hovda (2004) provide an excellent and detailed reviews of the pathophysiology of concussion, which

need not be re-elaborated here. Whereas initiated by immediate biomechanical forces, as describe above, much of the pathology of acute concussion is believed to be transient biochemical induced neurotransmitter disruptions initiated within 25–50 msec of impact. Tensil forces also disrupt the cytoskeletal status of the axon and its ability to function, including disrupted axonal permeability and transport (Povlishock & Katz, 2005). Disrupted cytoskeletal architecture, renders cells less functional and may have widespread effects on the injured brain (Hall et al., 2005), albeit transient in concussion.

Since the Iverson (2005) and Hovda (2004) publications there are several important studies that add to our understanding of the potential microscopic pathology that can occur from concussion. Zetterberg et al. (2006) examined cerebrospinal fluid (CSF) taken by from lumbar puncture in 14 amateur boxers 7 to 10 days and 3 months after a bout compared to matched controls without any contact. They used several markers of neuronal and astroglial injury that can be readily detected in the CSF, finding significant indicators of neuronal injury byproducts in CSF that were positively related to the actual number of hits during a bout, most apparent in the initial samples taken after the amateur boxing contest. None of the boxers received a knock-out punch and likely did not meet any of the behavioral criteria



| Rotation | 0 | 11⁰ | 24⁰ |
| Displacement | 0 | 42 mm | 115 mm |
| Time | 0 | 15 ms | 25 ms |

**Fig. 3.** From Viano et al. (2005b) published with permission from Lippincott Williams & Wilkins. The model on the left represents a coronal (top) and axial (bottom) view of the tagged brain model with the ventricle in pink and the skull encasing in yellow. The left hand column represents the baseline, where no movement occurred; notice the midline is vertical in the coronal view and straight in the axial plane. Time in msec is shown on the x-axis. By 25 msec the model indicates that this player's brain had a maximal shift, where it is evident that there is particular distortion in the medial temporal and hypothalamic region. This was from a player concussed on a kick return who had brief LOC, and PCS symptoms of headache, fatigue, dizziness, and photophobia and sleep disorder as physical symptoms. Note that the modeling of this subjects brain would involve all of the structures identified in Figure 1, and indeed, the high strain findings modeled in this subject supported such a locus of injury (see Appendix 1B of the Viano et al., 2005b paper that detail individual characteristics of the subjects).

for concussion. This study confirms the presence of acute pathological changes in the brain that can occur from boxing, in blows to the head that are below the threshold for producing what behaviorally would be classified as a concussion in these conditioned athletes.

Using a different approach, Zhang et al. (2006b) examined conventional MRI along with diffusion tensor imaging (DTI) in a group of professional boxers. While the majority had normal clinical imaging, 7 of the 42 examined had abnormal white matter findings, which should not be evident in an otherwise young, healthy subjects (Hopkins et al., 2006). More importantly, even those without clinical abnormalities as a group exhibited DTI differences from their matched controls, suggesting subtle white matter abnormalities, particularly at the level of the corpus callosum. Recall that Viano et al. (2005b) showed that the corpus callosum was one of the brain regions receiving the biggest strain effect in concussion. Similarly, Chappell et al. (2006) using DTI methods demonstrated similar white matter pathology in a group of 81 professional boxers. These studies focused on professional boxers without known neurological impairment, otherwise they would not be boxing, and show that

sensitive MRI methods do detect with a higher frequency abnormalities of white matter. Along these lines Cohen et al. (2007) have shown MR spectroscopic and subtle brain volume loss in mild TBI. Such imaging findings demonstrate that pathological changes in brain parenchyma can be detected in mild TBI using contemporary neuroimaging methods.

Bigler (2004) demonstrated hemosiderin and residual inflammatory reaction in the post-mortem brain of an individual with PPCS, where the autopsy was performed seven months post-injury. Similar findings were observed in a post-mortem of a professional football player who had developed cognitive decline later in life (Omalu et al., 2005). Combining the imaging and neuronal injury biomarker studies discussed earlier, with the Bigler (2004) and Omalu et al. (2005) post-mortem studies provide indisputable evidence that structural pathology can be present in mTBI. Additionally, these type of hemorrhagic lesions can be observed with specialized high-field MRI studies (see Ashwal et al., 2006; Scheid et al., 2006) as shown in Figure 4. As such, some aspects of the so-called "traceless injury" of concussion are being revealed with newer techniques.

Case 2:15-cv-02741-DDC-ADM   Document 620-1   Filed 10/03/25   Page 1 of 2
Case 2:15-cv-02741-DDC-ADM   Document 620-1   Filed 10/03/25   Page 61 of 259

8                                                                                    E.D. Bigler



**Fig. 4.** This 12 year-old male had sustained a concussion in a skate-boarding accident. Eyewitness accounts estimate LOC to be approximately 7 minutes, but in the ER the patient was alert and not amnesic. However, because of the positive LOC a CT scan was performed (A), followed by the more routine GRE sequence (B) which revealed only a hint of hemosiderin deposition, however, the susceptibility-weighted sequence (C) clearly demonstrated multiple foci of hemosiderin deposition (see arrows). (Reproduced by permission from Jill Hunter, M.D., Texas Children's Hospital, Houston, Texas.)

What is the significance of these pathological residua in those concussed, even when ostensibly reparative and restorative mechanisms return function to apparent baseline? Are there still potential sequelae that can be elicited and are these expressed overtime? Do these lesions relate to neuropsychological function? What Gronwall and Wrightson (1975) demonstrated years ago suggested that concussion may not be as benign as Miller (1961) had implied, but may be very dependent on the cognitive demands placed on a patient. Routine cognitive tasks may be unaffected, whereas more complex functions affected. This has been revisited more recently by Chen et al. (2003) using functional brain imaging in a small group of subjects ($N = 5$) who had sustained concussion, only two of whom had brief LOC (less than 2 minutes). In this study, the concussed patients, none of whom were in litigation, all had neurobehavioral symptoms of PPCS, but their resting PET metabolism did not differ from controls. However, when given a spatial working memory task to perform, differences in regional cerebral blood flow were detected in prefrontal cortex in PPCS subjects. In other words, unless a significant cognitive demand was placed on the subject that required more than typical cognitive effort, no differences could be determined. Similarly, Bernstein (2002) demonstrated that by increasing the complexity of a dual task involving auditory and visual discrimination and measuring evoked responses that those with a history of concussion but ostensibly no residual complaints could be differentiated from controls (Dockree et al., 2006a).

Moreover, confirmation of the likely residual pathology from concussion is clearly demonstrated in the second-injury circumstance, where a prior concussion increases the likelihood of a second concussion and greater morbidity of the second concussion in both human and animal studies (Huh et al., 2007; Longhi et al., 2005; Manville et al., 2007; Moser et al., 2005; Omalu et al., 2005; Pellman et al., 2004;

Wall et al., 2006). The most straight forward explanation of the pathology of the second injury concussion is that the first concussion is simply not benign, but that the brain adapts quickly to the injury in most cases. It should be noted that there is some controversy over the second injury hypothesis (Iverson et al., 2006b; Schnadower et al., 2007) and much more animal and human research is needed to fully understand this phenomena (Laurer et al., 2001). From a clinical management standpoint, repeated concussions are the basis for recommendations to retire from sports (Cantu, 2003) and reported to be related to the presence of neuropsychiatric symptoms in professional North American Football players (Guskiewicz et al., 2007).

While petechial hemorrhage associated with concussion has been well documented neuropathologically for decades (Ashwal et al., 2006), the shearing phenomena may only be part of the pathological story of vascular injury in concussion. A most intriguing animal study by Ueda et al. (2006), inducing what would be at least a moderate brain injury, has shown that the perivascular nerve network is injured in TBI as well. It is often overlooked that there is a neural regulation of blood vessels and blood vessels can contract and expand under neurogenic control. In fact, it is the dispersion of blood in response to autoregulation and localized activation that is at the basis of functional neuroimaging. If a blood vessel has a subtle abnormality in its ability to regulate regional flow, this may contribute to the neuropsychological sequelae expressed in a concussed individual. This remains to be investigated and represents speculation at this time. Thus, in TBI the same mechanisms that stretch the neuron can stretch the blood vessel and this may impair the neurogenic response of the blood vessel. Thus, the functional neuroimaging findings in concussion may not just be a consequence of brain parenchymal injury, but vascular and blood-brain barrier disruptions (Korn et al., 2005).

Along these same lines, is how the peri-vascular spaces that house cerebral vasculature are affected by injury, because much of the surrounding tissue is white matter. Numerous studies have shown the vulnerability of white matter damage in TBI (de la Plata et al., 2007; Inglese et al., 2005a; MacKenzie et al., 2002) have all shown that in mTBI increased frequency of dilated perivascular spaces, changes in white matter volumetry and chemical composition occur and relate to persistence of symptoms. Significant inflammatory reactions and hemosiderin deposits occur in the perivascular space in response to injury and their presence is considered a marker of white matter injury (Beschorner et al., 2002; Konsman et al., 2007). What is potentially so important about these observations is that inflammatory reactions that may originally injure white matter parenchyma, at least experimentally, have been shown to disrupt dopaminergic function (Roy et al., 2007), which heuristically, could be the basis for some of the neuropsychiatric symptoms associated with damage to white matter.

Another neuropathological complexity that is only beginning to be understood is the individual differences and heterogeneity of injury to individual cells (Buki & Povlishock, 2006; Reeves et al., 2005; Singleton & Povlishock, 2004). This too may be under genetic control where individual differences to injury susceptibility relates to outcome. It just may be that certain neurons are more susceptible to injury and certain injury forces or dynamics than others (Park et al., 2006).

There are other biomarkers of injury that have also been examined in human mTBI. For example, Stalnacke et al. (2005), using a blood biomarker of brain injury, serum concentrations of S-100B and neuron-specific enolase, found that S-100B levels during the acute phase of mTBI related to long-terms sequelae. S-100B findings have not been universal in mTBI (see also Bazarian et al., 2006a; Bazarian et al., 2006b; De Kruijk et al., 2002; Savola & Hillbom, 2003) and these observations are but some of the first. The level of initial CSF tau, a microtubular binding protein, believed to be a marker of axonal injury, correlates with outcome in severe TBI (Ost et al., 2006), but it has not been systematically studied in mTBI.

## Functional Neuroanatomy of Concussion and PPCS

In concussion, regardless of the definitional criteria used as outlined in Table 1 and the variability in clinical presentation, it is clear that 4 features dominate concussive symptoms—(1) brief alteration in consciousness or neurological function with at least acute changes in mentation and speed of processing; (2) physical symptoms of headache, dizziness and/or vertigo along with increased fatigability; (3) impairments in short-term memory, attention and concentration (particularly for multi-tasking); and (4) increased likelihood for changes in mood and emotional function. Where and how can these symptoms be integrated in understanding the functional neuroanatomy of concussion? The assumption is that there must be a common origin to these symptoms.

Figure 1 is a sagittal MRI view of the brain. The average adult brain weighs somewhere between 1150 and 1450 grams (2.5–3 pounds), with most of that weight located in the cerebrum, above the cerebellum in the figure. The anterior aspect of midbrain region of the upper brainstem is comprised of the cerebral peduncles which house all of the major ascending and descending white matter pathways connecting the cerebrum with the periphery of the body and the connections between the cerebrum and the cerebellum. In an earlier review, these anatomic regions, pathway and structures have been outlined in detail (Bigler, 2007). As can be clearly visualized in the Figure 1, the midbrain at the level of the cerebral peduncle is small, opposed to frontal-occipital linear dimension, and in the vertical position the tegmental aspect of the upper midbrain "rests" on or is adjacent to the dorsum sellae and the anterior clinoid, partially shown in Figures 1 and 2. Just in front of the tegmentum is the hypophyseal fossa that house the infundibulum (or pituitary stalk), the neural connection between the ventral hypothalamus and the pituitary, situated in the sella turcica. Immediately lateral to the cerebral peduncle is the carotid groove of the sphenoid bone wherein the internal carotid artery ascends into the brain to form the anterior and medial cerebral arteries. Next, moving laterally just past the carotid groove is the inner edge of the greater wing of the sphenoid and the beginning medial surface of the temporal lobe (see Fig. 2). The entrance of internal carotid into the cranium through the carotid canal occurs just adjacent to the midbrain. What is particularly interesting about this region of the brain is that the tentorium cerebelli extends from a covering of the cerebellum to attach at the junction of the clinoid and lesser wing of the sphenoid. As the tentorium projects to its clinoid-lesser wing of the sphenoid connection, the lateral surface of the upper brainstem touches the "free edge" of the tentorium cerebelli, and just on the other side of the tentorium at this level is the medial surface of the temporal lobe, where the peririhinal and entorhinal surfaces also touch the "free edge" of the tentorium (Bigler, 2007; Van Hoesen et al., 1999). What is also of particular interest with regards to consciousness is that arterial branches of the posterior circulation of the brain actually cross the free edge of the tentorium and these arterial branches supply blood to the brainstem (Blinkov et al., 1992).

Biomechanics of concussion inform us that concussions are more likely to occur if there is some rotational force present (Fijalkowski et al., 2006; Viano et al., 2005a; Vorst et al., 2007). Returning to this midbrain region of the brain, if there is any stretching and/or rotational force at this level, note what occurs: the upper brainstem stretches across the clinoid and lesser wing of the sphenoid, with its lateral margins potentially striking the free-edge of the tentorium, the pituitary stalk stretches disrupting hypothalamic-pituitary connections, the internal carotid stretches against the carotid canal and posterior circulation to the brainstem is also dis-

rupted, the medial temporal lobe strikes the lateral surface of the free-edge of the tentorium as well as the medial wall of the sphenoid. Just in from this medial surface of the temporal lobe are the amygdala and hippocampus, with the hippocampus giving rise to the fornix that not only connects with the anterior thalamus *via* the mammillary body but also to the septum and pituitary (McDonald et al., 2006). Just anterior to the hypophysis-hypothalamic region is the basal forebrain; just posterior are the mammillary bodies. So at one level, if there is slight mechanical deformation either in terms of compression or uplift and particularly if rotation occurs, there are putative functional neuroanatomical connections disrupted for consciousness (upper brainstem, reticular activating system), memory (mechanical compression of perirhinal and entorhinal cortices disrupting input to the hippocampus or hippocampal output *via* the fornix and its connection with the anterior thalamus and cingulate), emotional regulation (medial temporal lobe and basal forebrain), post-traumatic migraine (stretching the internal carotid and its vasculature that forms the circle of Willis as well as stretching/irritation of the dura and other vessels) and fatigue as well as hormonal changes secondary to hypothalamic-pituitary disruption.

Indisputably, clearly demonstrated immediately after concussion (Barrow et al., 2006a; Barrow et al., 2006b), even in those who go on to fully recover, is slow speed of processing (Crawford et al., 2007; De Monte et al., 2005). Speed of processing is dependent on the integrity of white matter pathways maintaining their optimal inter-connectiveness. Returning to the biomechanical deformation effects reviewed above, long-coursing axons are going to be more vulnerable, particularly interhemispheric connections, especially the corpus callosum and anterior commissure (Cecil et al., 1998; Holshouser et al., 2006; Inglese et al., 2005b; Mathias et al., 2004; Wilde et al., 2006a; Wilde et al., 2006c). Thus, neuropsychological tasks that require interhemispheric integration and/or multiple intracortical connections often show differences in the form of slowed responding, even in those with mTBI (Mathias et al., 2004)

So, the hypothesis put forth in this section is that the biomechanics of brain injury simultaneously disrupt neurological function in the upper brainstem, pituitary-hypothalamic axis, medial temporal lobe, and basal forebrain concomitant with irritative injury to the vasculature and meninges, which gives rise to the symptoms observed in the post-concussive state and the neuropsychological sequela associated with such an injury. How rapidly these neural, dural, and vascular areas return to homeostasis or recovery from some adaptive mechanism or do not recover, provides the biological basis for the symptoms expressed.

## Animal Models of Concussion

The advantage of animal models is the controlled environment where the reproducibility of an adverse effect can be tested, in this case a concussive brain injury. There have been numerous animal models of brain injury over the years

(Leker et al., 2002), but most focused on what would be moderate-to-severe brain injury with focal cortical impact, producing not only focal brain injury but diffuse injury readily demonstrated by histological analysis. It has been challenging to develop an animal model of concussion that mimics human concussion, because of a host of differences associated with brain morphology, skull-brain interface, and species differences (Leker et al., 2002).

Nonetheless, several excellent animal models of concussive injury have recently been established (Gurkoff et al., 2006; Henninger et al., 2005; Milman et al., 2005; Tang et al., 1997; Tashlykov et al., 2007; Ucar et al., 2006; Yoshiyama et al., 2005; Zohar et al., 2003, 2006). For example, Henninger et al. (2005) modifying methods of Tang et al. (1997) have used a weight drop device to the exposed skull that replicates human concussion. As stated by these researchers, "immediately after impact, *all* TBI animals lost their muscle tone and righting reflex response (p. 450)" but it shortly returned. This is analogous to what is observed acutely in sports concussion (McCrory & Berkovic, 2000). After reflex recovery the concussed rats behaved "normally" in comparison to sham controls. In this study, memory was assessed using the Morris Water Maze (MWM), where the concussed animals also showed no differences from controls in ability to swim and other species typical behaviors. Thus, in terms of ordinary rat behavior, function returned without discernable abnormality following concussion. However, given time to heal from the minor surgery to expose the skull, the concussed animals exhibited memory deficits on the MWM when assessed nine days post-injury. This study also included high-field MRI which was negative. However, histology demonstrated several pathological changes including a reduction in the number of cortical neurons as well as in the hippocampus. A limitation of this study is that it only examined memory nine days post-injury but Milman et al. (2005) and Zohar et al. (2003, 2006) using somewhat similar methods, but in mice, have demonstrated these type of persistent cognitive differences in concussed animals for longer periods of time post-injury. Gurkoff et al. (2006) have demonstrated this in rats with a fluid percussion injury model and Tashlykov et al. (2007) have shown apoptotic changes in cerebral cortex and hippocampus using this weight drop technique as well.

So animal models of concussion do support the notion that persistent cognitive deficits can occur, although not all studies have found lasting effects (Gaetz, 2004; Leker et al., 2002). The difference between those studies that find persisting symptoms and those that do not is probably the severity of the concussion. For example, in the Tashlykov et al. (2007) study pellets of incremental weight from five to 30 g were dropped on the head of mice under light ether anesthesia. Of particular interest in this study is that *none* of the weight amounts produced any discernable change in the species typical behavior of the mice once recovered from the ether anesthesia, yet related to the weight amount of the pellet pathological changes were proportional to the impact. The 5 g weight drop was insufficient to produce any detect-

able pathological changes. A minimum of 10 g was necessary for showing pathological neuronal changes, but 15 g was necessary to initiate apoptotic changes. Thus, the threshold to produce injury varies depending on what pathological changes are under investigation and whether a certain injury threshold has been reached.

## IS BRAIN INJURY ON A CONTINUUM: CONCUSSION → SEVERE TBI?

In examining the post-mortem brain of several human subjects who had sustained a "mild concussion," but died for reasons other than the head injury, Blumbergs et al. (1994) demonstrated presence of axonal injury, particularly in the fornix. Blumbergs et al. (1995) in a follow-up study demonstrated that the microscopic pathology was on a continuum from mild (GCS of 13–15) to severe (GCS of 3–8), again demonstrating the susceptibility of the fornix. As shown by Viano et al. (2005b), the fornix is distinctly vulnerable to the stress/strain effects of concussion and is a common area of damage in moderate-to-severe TBI, as visualized using MRI (Gale et al., 1995; Tate & Bigler, 2000; Tomaiuolo et al., 2004), where the degree of atrophy is related to severity of injury (Bigler et al., 2006; Tate & Bigler, 2000; Tomaiuolo et al., 2004; Wilde et al., 2006b). Because the fornix is a white matter structure containing projecting axons from the hippocampus, disruption in fornix integrity likely relates to the concussive effects of disrupted short-term memory, at least transiently.

At the histopathological level, severity can be graded by the degree of cell loss, cytoskeletal changes, presence of inflammatory cellular reaction, biochemical markers of cell damage or death, etc. and all seem to relate to severity on some continuum (Anderson et al., 2003; Vorst et al., 2007). Taken together, in well controlled animal models there is a continuum associated with severity of impact injury supporting the contention that injury is on a continuum (Gurkoff et al., 2006; Igarashi et al., 2007; Kharatishvili et al., 2006; Maegele et al., 2005; Ucar et al., 2006). Understanding this continuum means that at the mildest level of brain perturbation there may, in fact, be no lasting effect. However, once a threshold is reached, lasting sequelae begin to occur (Zhu et al., 2006).

Human neuroimaging studies also support the concept of continuum of injury. For example, a linear relationship with cerebral atrophy relates to injury severity measures such as GCS, PTA, and duration of LOC (Bigler et al., 2006; Wilde et al., 2006b). Likewise, complicated mTBI is more likely to have positive neuroimaging findings (Levine et al., 2006; McAllister et al., 2001; Vorst et al., 2007) and significant residuals (Kennedy et al., 2006). If boxing is considered a model for detecting "pre-clinical" or asymptomatic brain injury, recent diffusion tensor imaging studies have demonstrated abnormalities in boxers (Chappell et al., 2006; Zhang et al., 2006b). Thus, animal and human studies support the contention of injury on a continuum, implicating that understanding the variables that relate to severity of injury are

likely very important in understanding neuropsychological sequelae (see Wilde et al., in press; Lewine et al., 2007).

## VULNERABILITY OF THE MEDIAL TEMPORAL LOBE AND IN PARTICULAR, THE HIPPOCAMPUS

Elsewhere, I have reviewed research demonstrating that the brain-skull interface in the anterior and middle cranial fossa is a major factor for the vulnerability of these regions in TBI (Bigler, 2007). Potentially the most critical structure injured for neuropsychological sequelae in TBI is the hippocampus and its afferent and efferent connections (Wilde et al., 2007). The Viano et al. (2005b) study demonstrated that the typical deformation of the hippocampus to be 4–6 mm in concussion associated with professional football. Numerous human and animal studies have demonstrated the vulnerability of the hippocampus (and fornix) to injury in TBI (Bigler et al., 2006; Geddes et al., 2003; Royo et al., 2006; Tashlykov et al., 2007; Tasker et al., 2005; Wilde et al., 2006b) and functional neuroimaging studies using SPECT also demonstrate medial temporal lobe hypoperfusion in mTBI (Gowda et al., 2006). Thus, given the location of the hippocampus in the medial temporal lobe and its connection and location to the fornix, these brain regions are key to understanding PPCS neuropsychology, and should be the focus of intense neuropsychological investigation.

## LIMITATIONS OF NEUROPSYCHOLOGICAL RESEARCH TO ADVANCE THE FIELD

### The Litigation Conundrum: Forensic Implications for Clinical Neuropsychology

From the anatomical and pathophysiological discussions earlier, it is plainly evident that the brain is at least momentarily and transiently injured in concussion but for the majority of those injured persistent sequelae do not occur. Because animal models have demonstrated that lasting negative effects can occur with concussion (see Tashlykov et al., 2007), it is reasonable to assume that PPCS will exist in some individuals. It is in these individuals that neuropsychological research needs to direct its best and most unbiased research efforts. Unfortunately, as pointed out by the World Health Organization's task force on mTBI, poor research designs and the cross-sectional nature of many of the studies on this topic, restrict generalizations of the findings (Carroll et al., 2004a; Carroll et al., 2004b). What can be done to correct short-comings of research in this area?

More than 40 years after Miller (1961) wrote about concussion and "compensation neurosis". Kertesz and Gold (2003), reviewing outcome from concussion make the following statement: "the involvement of insurance claims, litigation, and the expense of rehabilitation makes this area very contentious (p. 629)." Belanger et al. (2005) per-

formed a meta-analysis of 39 studies involving 1463 cases of mTBI assessing clinical neuropsychological test findings. Their findings were similar to what has also been described by Binder et al. (1997), Frencham et al. (2005), and Schretlen & Shapiro (2003), implicating short-term, but not necessarily long-term neuropsychological effects, except for those cases who were in litigation, where either "stable or worsening of cognitive functioning over time (p. 215) was observed." Mooney et al. (2005), in a university based rehabilitation service, examined those with "disappointing recoveries" and observed that "in cases of poor recovery after mTBI where compensation or litigation may be a factor, most of the variance in recovery seems to be explained by depression, pain, and symptom invalidity (p. 975) ." With regards to symptom invalidity, Loring et al. (2007) reported 20% of subjects including those with history of head injury who were evaluated in a University-based clinical assessment laboratory but who were also in litigation did not pass symptom validity testing (SVT). Plainly, presence of litigation is a major confound in research in mTBI and its presence in research studies has likely obscured the true effects of concussion, including PPCS. Also, whenever analyzing group data, if all subjects with concussion are examined at a particular time period, the effects on individual subjects who may be symptomatic get washed out by the total group effects (Iverson et al., 2006a; Kent, 2007; McHugh et al., 2006; Sterr et al., 2006). This is a very important point, because few studies compare symptomatic *versus* non-symptomatic subjects who have been concussed and those who do, find those who are symptomatic to have greater neuropsychological impairment (Collie et al., 2006; Iverson et al., 2004; Sterr et al., 2006).

The fact that the litigation process is adversarial and that neuropsychological testimony occurs on both sides of the legal argument, raises the specter of potential bias in what has been written about PPCS depending on the type of forensic work an author may participate in. If one is exclusively retained in legal settings for one side or the other in a legal matter, that could have a bearing on what is studied and reported (Racette et al., 2006). The legal side that retains a clinician or researcher may influence directly or indirectly what is published by that individual (Bigler, 2006). For example, it would be difficult for the individual in private practice whose sole income is derived from their forensic work and consistently retained by the defense to publish on the subtle sequelae of PPCS, including its lasting and enduring adverse effects. Oppositely, but just as likely, the clinician who is exclusively retained by the plaintiff's side is unlikely to publish on the "myth" of PPCS.

Neuropsychological research from countries that do not have the kind of litigation and medical care system that the United States has may provide important information about PPCS, if the proper large scale studies are done. There are cultural differences in the expression of whiplash associated disorders (WAD) (Obelieniene et al., 1999), and the same may be expected in PPCS. Incomplete effort is another major factor contaminating any study looking at long-term

neuropsychological sequelae of concussion (Ross et al., 2006a; Ross et al., 2006b), which represents a topic of its own for review (Iverson & Binder, 2000).

## Ecological Validity of the Clinical Neuropsychological Approach

Ecological validity of neuropsychological assessment remains an ever present concern (Chaytor et al., 2006; Moritz et al., 2004; Odhuba et al., 2005; Wood & Liossi, 2006). As an example, the antemortem clinical neuropsychological testing in the concussed patient previously described who met PPCS criteria and who at autopsy had verified pathology of brain injury, was all normal yet this individual had "real-world" difficulty running his business, problems not evident before his injury (Bigler, 2004). Standardized paper-and-pencil tests typically conducted in the sterile laboratory may simply not tap the cognitive symptom being experienced by the individual with PPCS. This very point has been made by Collie et al. (2006) in determining which kinds of measurements are most sensitive in detecting problems in those who remain symptomatic after concussion. Obviously, cognitive skills, in particular working memory and executive function, can place much higher demands on neural integrity in the real world than what can be assessed by any current clinical neuropsychological technique in the laboratory.

Assessment in sports concussion has recognized the need to move beyond traditional neuropsychological assessment with the development of more tailored assessment tools in the athlete with concussion (Broglio et al., 2007; Parker et al., 2007). Such assessments are also taking advantage of computerized and virtual assessment techniques as well as the ability to automate the assessment (Cernich et al., 2007; Iverson et al., 2005; Schatz & Putz, 2006; Slobounov et al., 2006). Likewise, various cognitive neuroscience measures either by themselves or combined with functional neuroimaging methods hold great promise for more accurate assessment of the effects of TBI on behavior and cognition (Bergemalm & Lyxell, 2005; Casson et al., 2006; Chan, 2001; Chen et al., 2007; Cicerone et al., 2006; Dockree et al., 2006b; Jantzen et al., 2004; Mendez et al., 2005; O'Keeffe et al., 2007a; O'Keeffe et al., 2007b; Scheibel et al., 2007; Suh et al., 2006). These types of studies applied to PPCS will likely advance the field rather than another round of testing with traditional "clinical" neuropsychological measures (Heitger et al., 2004, 2005, 2006).

## Confounding Factors That Must be Considered in the Design of PPCS Studies and the Accurate Determination of Neuropsychological Sequelae

The fact that the eight symptoms of PCS [i.e., (1) becoming fatigued easily, (2) disordered sleep, (3) headache, (4) vertigo or dizziness, (5) irritability, (6) anxiety, depression or

affective lability, (7) changes in personality, and (8) apathy or lack of spontaneity] as outlined by DSM-IV (pp. 704–705) *all* overlap such that *all* coexist with a myriad of other medical and psychiatric diagnoses, underscores how complicated the design of the ideal study has to be to truly assess PPCS. For example, Iverson (2006) points out the commonness of misdiagnosing PPCS when the symptoms are really driven by depression and have depression be misattributed to concussion (Chamelian & Feinstein, 2006; Meares et al., in press). In fact every PPCS symptom can occur independent of a head injury (Iverson et al., 2007). Also, a threshold issue exists where symptoms have to rise beyond a baseline before PPCS can be diagnosed (Chan, 2005). Post-traumatic pain correlates with presence of PPCS (Sheedy et al., 2006); and pain has its own set of correlates, by itself, potentially affecting cognitive performance and emotional status (Alfano, 2006; Karp et al., 2006). None of this even addresses the complexity of WAD, as already mentioned, and WAD pain-related problems (Holm et al., 2006; Johansson, 2006; Zumsteg et al., 2006), nor post-traumatic headaches (Lew et al., 2006; Weiss et al., 1991) which are commonplace in concussion, especially those caused by MVAs.

Not only is the brain concussed, but also other organs such as the eye, inner ear, and soft internal organs (Frater & Haindl, 2003; Keane & Baloh, 1992; Nolle et al., 2004); and injury to these organs can be a source of symptoms. With regards to organs of the head, vertigo, dizziness, tinnitus, and ocular disturbance are commonplace; and they relate to cognitive sequela associated with mTBI (Suh et al., 2006). Presence of any of these symptoms may confound the neuropsychological presentation and sequela of the mTBI patient but are rarely controlled. What is particularly important about pain, regardless of its source, is that pain changes the functioning of the brain, demonstrated by both structural as well as functional imaging (Schweinhardt et al., 2006). Also, the nature and extent of early medication treatment in those who sustain mTBI, may also relate to who develops PPCS (Meares et al., 2006).

Fatigue is a common and persistent problem in PCSS (Stulemeijer et al., 2006; Ziino & Ponsford, 2006), and it too has its own set of neurochemical, neuroimaging, and neuropsychological differences (de Lange et al., 2004; Kozora et al., 2006). The same can be said about the co-occurrence of PTSD in those involved in accidental injury or assault as the source of their concussion (Bryant, 2001; Creamer et al., 2005; McCauley et al., 2001) and the role of stress hormones in the behavioral response to injury (Sojka et al., 2006). PTSD alone has its own unique effect on neuropsychological performance (Vasterling & Bremner, 2006; Vasterling et al., 2006; Veltmeyer et al., 2005). Even for those who do not develop PTSD, being in an accident (Mayou & Bryant, 2002) or an assault (Johansen et al., 2006) or just sustaining a brain injury (Prigatano et al., 2005) is stress producing.

Mooney and colleagues have documented that many with persistent symptoms following concussion meet criteria for conversion disorder (CD (Mooney & Speed, 2001). However, the neurobiology of CD, including neuroticism, is starting to emerge and it may not be as "functional" as believed (Allet & Allet, 2006; Atmaca et al., 2006; Ghaffar et al., 2006; Schonfeldt-Lecuona et al., 2006; Stonnington et al., 2006; Ward et al., 2003; Wright et al., 2006). Theories and functional neuroimaging studies of CD imply the involvement of limbic regions, inferior frontal and medial temporal lobe structures, the very regions most likely injured in TBI. Is there an increased prevalence of conversion disorder in individuals concussed because these areas are injured? Neuropsychology should be exploring the potential neurobiology of this observation, not merely writing this off as a mere functional manifestation of concussion (Ashman et al., 2006). Recently, Wood (2005) has put forth a diathesis-stress model as a beginning attempt to describe these relationships.

It has long been known that pre-morbid factors predispose those with history of neuropsychiatric disorder to be more likely to experience PPCS once concussed (Karzmark et al., 1995; Ponsford, 2005). As such, any study that examines PPCS that does not take into consideration pre-morbid factors likely overlooks important and relevant information that may contribute to the disorder.

It is interesting that only recently has research begun to examine the role of pituitary injury in TBI to functional outcome, even in concussion (Acerini et al., 2006; Kelestimur, 2005; Kelly et al., 2006; Tanriverdi et al., 2007). As shown by the Bayly et al. (2005) and Viano et al. (2005b) studies, the hypothalamic-pituitary axis is particularly vulnerable to physical strain in concussion. Pituitary dysfunction can be associated with many of the same symptoms as seen by PPCS (Casanueva et al., 2006; Powner et al., 2006), yet this has not been systematically investigated in PPCS. This is particularly important because of some pituitary associated physical and neuropsychiatric symptoms are treatable.

Similarly, the basal forebrain resides just anterior to the hypothalamus housing important nuclei and pathways for cholinergic innervation of the brain. The basal forebrain is another region that sustains significant strain effects in biomechanical modeling of concussion and in moderate or greater injury, is consistently damaged (Bigler, 2005; Conner et al., 2005). However, this region has never been systematically examined in PPCS.

The elegant reconstruction of concussion by Viano et al. (2005b) clearly demonstrates that each concussion places unique stress and strain on the brain. Just as clear from this research is that no two concussions are identical in terms of how the brain is impacted. So if one does not take into consideration the impact and physical dynamics of the injury and subject characteristics (including genetics), neuropsychological sequelae could vary widely with regards to the brain regions most likely injured even though all subjects had sustained a "concussion". Unfortunately, for most research on PPCS such information has never been obtained and this has never been systematically investigated other

than in sports concussion. For example, concussion in MVA victims may be different depending on whether it was a front, side or rear impact, whether the car spun, rolled or flipped, etc., the type of car driven, and how and what seat belts were worn, etc. (Elliott et al., 2006). To date this heterogeneity in injury dynamics has simply been overlooked and all such subjects are merely lumped into a single category yet these injury dynamics may make a significant difference in how and where the brain is injured, differences that may be critical in the expression of PPCS.

The prospective design used by the McCrea et al. (2003) study is the proper prototype and standard that should be sought in studying PPCS in non-sports related concussion. To date this has not been done and therefore there are no large-scale, long-term prospective studies of non-sports related concussion that have been conducted. However, the study by Jackson et al. (2007) is a first attempt to accomplish such, where they examined their university-based Trauma I center registry for a single year and identified 97 adult trauma patient survivors from their ICU who had negative CT scan for intracranial hemorrhage, ostensibly eliminating those with obvious severe head injury. Within 12 to 24 months post-discharge, they were able to follow-up with a comprehensive neuropsychological battery of tests on 58 of these subjects and presence of concussion was associated with poorer neuropsychological outcome.

## CONCLUSION

From a neuropathological standpoint, this review demonstrates that concussion can lead to structural damage. From the biomechanics of concussion, the vulnerability of the upper brainstem, hypothalamic-pituitary axis, medial temporal lobe and basal forebrain and long-coursing white matter fibers, particularly involving the corpus callosum and fornix are the brain regions most likely to give rise to post-concussive symptoms.

Confusion in the literature on this topic comes from differences in terminology and definitional standards as well as poor research designs where small sample sizes, samples of convenience, selected clinical sub-samples and research that may have an agenda behind it has created serious interpretive problems with regards to the neuropsychology of concussion and its sequelae. Prospective studies of concussion where large trauma centers assess, follow and tract patients with concussion and follow such a cohort prospectively using uniform and more ecologically valid cognitive assessment protocols simply have not been done. In such a group it would be reasonable that additional data could be obtained that would provide more information about the biomechanics of injury and a host of other medical and demographic factors, including attempts to est establish pre-injury level of function. In one of the largest reviews of mTBI, the WHO task force that reviewed mTBI literature up to 2004 concluded that mTBI research is "of varying quality and causal inferences are often mistakenly drawn from cross-sectional studies (p. 84," (Carroll et al., 2004a),

see also (Ragnarsson, 2006) The only correction for this gaffe in the neuropsychology of concussion, and potential long-term sequelae of PPCS, will be large, unbiased prospective studies that address the issues raised in this review. The importance of understanding this more accurately and completely is the fact that concussion is reportedly the most common of all neurological injuries and this is also true of the Iraq and Afghanistan war (Das & Moorthi, 2005; Okie, 2005; Warden, 2006; Warden & French, 2005), where unofficial estimates place the numbers in the tens of thousands (Bob Woodruff Reports. February 27, 2007: www.abc-.com), potentially as high as, "1 out of every 10 returning service men and women" [p. 16, American Academy of Neurology News, 20(6), 2007]. Neuropsychology needs to better understand PPCS and this review offers a number of very testable hypotheses for future research.

## ACKNOWLEDGMENTS

The information in this manuscript and the manuscript itself is new and original and has never been published whether electronically or in print. The author also acknowledges the support in part by the National Institutes of Health federal grant 1 R01 HD048946-01A2 and the Ira Fulton Foundation. The technical assistance of Tracy Abildskov and Craig Vickers and the editorial assistance of Jo Ann Petrie are also gratefully acknowledged.

## REFERENCES

Acerini, C.L., Tasker, R.C., Bellone, S., Bona, G., Thompson, C.J., & Savage, M.O. (2006). Hypopituitarism in childhood and adolescence following traumatic brain injury: The case for prospective endocrine investigation. *European Journal of Endocrinology*, *155*, 663–669.

Alexander, S., Kerr, M.E., Kim, Y., Kamboh, M.I., Beers, S.R., & Conley, Y.P. (2007). Apolipoprotein E4 allele presence and functional outcome after severe traumatic brain injury. *Journal of Neurotrauma*, *24*, 790–797.

Alfano, D.P. (2006). Emotional and pain-related factors in neuropsychological assessment following mild traumatic brain injury. *Brain and Cognition*, *60*, 194–196.

Allet, J.L. & Allet, R.E. (2006). Somatoform disorders in neurological practice. *Current Opinions in Psychiatry*, *19*, 413–420.

American Congress of Rehabilitation Medicine Head Injury Interdisciplinary Special Interest Group. (1993). Definition of mild traumatic brain injury. *Journal of Head Trauma Rehabilitation*, *8*, 86–87.

Andersen, P., Morris, R., Amaral, D., Bliss, T., & O'Keefe, J. (2006). *The hippocampus book*. New York: Oxford University Press.

Anderson, R.W., Brown, C.J., Blumbergs, P.C., McLean, A.J., & Jones, N.R. (2003). Impact mechanics and axonal injury in a sheep model. *Journal of Neurotrauma*, *20*, 961–974.

Anderson, T., Heitger, M., & Macleod, A.D. (2006). Concussion and mild head injury. *Practical Neurology*, *6*, 342–357.

Ashman, T.A., Gordon, W.A., Cantor, J.B., & Hibbard, M.R. (2006). Neurobehavioral consequences of traumatic brain injury. *Mt Sinai Journal of Medicine*, *73*, 999–1005.

Ashwal, S., Babikian, T., Gardner-Nichols, J., Freier, M.C., Tong, K.A., & Holshouser, B.A. (2006). Susceptibility-weighted imag-

Case 2:25-cv-01023-DJC-AC    Document 6-1   Filed 07/09/25    Page 11 of 12
Case 2:25-cv-01023-DJC-AC    Document 6-18-3    Filed 04/09/25    Page 1 of 12

*Persistent post-concussive syndrome*                                    15

ing and proton magnetic resonance spectroscopy in assessment of outcome after pediatric traumatic brain injury. *Archives of Physical Medicine and Rehabilitation*, 87, 50–58.

Atmaca, M., Aydin, A., Tezcan, E., Poyraz, A.K., & Kara, B. (2006). Volumetric investigation of brain regions in patients with conversion disorder. *Progress in Neuropsychopharmacolgical Biology and Psychiatry*, 30, 708–713.

Bach-y-Rita, P. (2004). Is it possible to restore function with two percent surviving neural tissue? *Journal of Integrated Neuroscience*, 3, 3–6.

Barrow, I.M., Collins, J.N., & Britt, L.D. (2006a). The influence of an auditory distraction on rapid naming after a mild traumatic brain injury: A longitudinal study. *Journal of Trauma*, 61, 1142–1149.

Barrow, I.M., Hough, M., Rastatter, M.P., Walker, M., Holbert, D., & Rotondo, M.F. (2006b). The effects of mild traumatic brain injury on confrontation naming in adults. *Brain Injury*, 20, 845–855.

Bayly, P.V., Cohen, T.S., Leister, E.P., Ajo, D., Leuthardt, E.C., & Genin, G.M. (2005). Deformation of the human brain induced by mild acceleration. *Journal of Neurotrauma*, 22, 845–856.

Bayly, P.V., Dikranian, K.T., Black, E.E., Young, C., Qin, Y.Q., Labruyere, J., & Olney, J.W. (2006). Spatiotemporal evolution of apoptotic neurodegeneration following traumatic injury to the developing rat brain. *Brain Research*, 1107, 70–81.

Bazarian, J.J., Beck, C., Blyth, B., von Ahsen, N., & Hasselblatt, M. (2006a). Impact of creatine kinase correction on the predictive value of S-100B after mild traumatic brain injury. *Restoration of Neurology and Neuroscience*, 24, 163–172.

Bazarian, J.J., McClung, J., Shah, M.N., Cheng, Y.T., Flesher, W., & Kraus, J. (2005). Mild traumatic brain injury in the United States, 1998–2000. *Brain Injury*, 19, 85–91.

Bazarian, J.J., Zemlan, F.P., Mookerjee, S., & Stigbrand, T. (2006b). Serum S-100B and cleaved-tau are poor predictors of long-term outcome after mild traumatic brain injury. *Brain Injury*, 20, 759–765.

Begaz, T., Kyriacou, D.N., Segal, J., & Bazarian, J.J. (2006). Serum biochemical markers for post-concussion syndrome in patients with mild traumatic brain injury. *Journal of Neurotrauma*, 23, 1201–1210.

Belanger, H.G., Curtiss, G., Demery, J.A., Lebowitz, B.K., & Vanderploeg, R.D. (2005). Factors moderating neuropsychological outcomes following mild traumatic brain injury: A meta-analysis. *Journal of the International Neuropsychological Society*, 11, 215–227.

Bergemalm, P.O. & Lyxell, B. (2005). Appearances are deceptive? Long-term cognitive and central auditory sequelae from closed head injury. *International Journal of Audiology*, 44, 39–49.

Berker, E. (1996). Diagnosis, physiology, pathology and rehabilitation of traumatic brain injuries. *International Journal of Neuroscience*, 85, 195–220.

Bernstein, D.M. (2002). Information processing difficulty long after self-reported concussion. *Journal of the International Neuropsychological Society*, 8, 673–682.

Beschorner, R., Nguyen, T.D., Gozalan, F., Pedal, I., Mattern, R., Schluesener, H.J., Meyermann, R., & Schwab, J.M. (2002). CD14 expression in activated parenchymal microglia/macrophages and infiltrating monocytes following human traumatic brain injury. *Acta Neuropathologica (Berlin)*, 103, 541–549.

Bigler, E.D. (2004). Neuropsychological results and neuropathological findings at autopsy in a case of mild traumatic brain injury. *Journal of the International Neuropsychological Society*, 10, 794–806.

Bigler, E.D. (2005). *Structural Imaging*. Washington, D.C.: American Psychiatric Publishing, Inc.

Bigler, E.D. (2006). Can author bias be determined in forensic neuropsychology research published in Archives of Clinical Neuropsychology? *Archives in Clincal Neuropsychology*, 21, 503–508.

Bigler, E.D. (2007). Anterior and middle cranial fossa in traumatic brain injury: Relevant neuroanatomy and neuropathology in the study of neuropsychological outcome. *Neuropsychology*, 21, 515–531.

Bigler, E.D., Ryser, D.K., Gandhi, P., Kimball, J., & Wilde, E.A. (2006). Day-of-injury computerized tomography, rehabilitation status, and development of cerebral atrophy in persons with traumatic brain injury. *American Journal of Physical Medicine and Rehabilitation*, 85, 793–806.

Binder, L.M., Rohling, M.L., & Larrabee, J. (1997). A review of mild head trauma. Part I: Meta-analytic review of neuropsychological studies. *Journal of Clinical Experiments in Neuropsychology*, 19, 421–431.

Blinkov, S.M., Gabibov, G.A., & Tanyashin, S.V. (1992). Variations in location of the arteries coursing between the brain stem and the free edge of the tentorium. *Journal of Neurosurgery*, 76, 973–978.

Blostein, P. & Jones, S.J. (2003). Identification and evaluation of patients with mild traumatic brain injury: Results of a national survey of level I trauma centers. *Journal of Trauma*, 55, 450–453.

Blumbergs, P.C., Scott, G., Manavis, J., Wainwright, H., Simpson, D.A., & McLean, A.J. (1994). Staining of amyloid precursor protein to study axonal damage in mild head injury. *Lancet*, 344, 1055–1056.

Blumbergs, P.C., Scott, G., Manavis, J., Wainwright, H., Simpson, D.A., & McLean, A.J. (1995). Topography of axonal injury as defined by amyloid precursor protein and the sector scoring method in mild and severe closed head injury. *Journal of Neurotrauma*, 12, 565–572.

Boake, C., McCauley, S.R., Levin, H.S., Pedroza, C., Contant, C.F., Song, J.X., Brown, S.A., Goodman, H., Brundage, S.I., & Diaz-Marchan, P.J. (2005). Diagnostic criteria for postconcussional syndrome after mild to moderate traumatic brain injury. *Journal of Neuropsychiatry and Clinical Neuroscience*, 17, 350–356.

Bradshaw, D.R., Ivarsson, J., Morfey, C.L., & Viano, D.C. (2001). Simulation of acute subdural hematoma and diffuse axonal injury in coronal head impact. *Journal of Biomechanics*, 34, 85–94.

Broglio, S.P., Macciocchi, S.N., & Ferrara, M.S. (2007). Sensitivity of the concussion assessment battery. *Neurosurgery*, 60, 1050–1057; discussion 1057–1058.

Bryant, R.A. (2001). Posttraumatic stress disorder and mild brain injury: Controversies, causes and consequences. *Journal of Clinical and Experimental Neuropsychology*, 23, 718–728.

Buki, A. & Povlishock, J.T. (2006). All roads lead to disconnection?—Traumatic axonal injury revisited. *Acta Neurochir (Wien)*, 148, 181–193; discussion 193–184.

Cantu, R.C. (2003). Recurrent athletic head injury: Risks and when to retire. *Clinical Sports Medicine*, 22, 593–603.

Cantu, R.C. (2007). Athletic concussion: Current understanding as of 2007. *Neurosurgery*, 60, 963–964.

Carroll, L.J., Cassidy, J.D., Holm, L., Kraus, J., & Coronado, V.G. (2004a). Methodological issues and research recommendations for mild traumatic brain injury: The WHO Collaborating

Case 2:15-cv-01723-DGC Document 20-1 Filed 12/06/15 Page 16 of 39
Case 2:15-cv-01723-DGC Document 61-8 Filed 10/06/25 Page 16 of 39

16                                                                                              E.D. Bigler

Centre Task Force on Mild Traumatic Brain Injury. *Journal of Rehabilitation Medicine*, *43* (Suppl.), 113–125.

Carroll, L.J., Cassidy, J.D., Peloso, P.M., Borg, J., von Holst, H., Holm, L., Paniak, C., & Pepin, M. (2004b). Prognosis for mild traumatic brain injury: Results of the WHO Collaborating Centre Task Force on Mild Traumatic Brain Injury. *Journal of Rehabilitation Medicine*, *43* (Suppl.), 84–105.

Casanueva, F.F., Ghigo, E., Polak, M., & Savage, M.O. (2006). The importance of investigation of pituitary function in children and adolescents following traumatic brain injury. *Journal of Endocrinological Investigation*, *29*, 764–766.

Casson, I.R., Pellman, E.J., & Viano, D.C. (2006). Chronic traumatic encephalopathy in a National Football League player. *Neurosurgery*, *59*, E1152.

Cecil, K.M., Hills, E.C., Sandel, M.E., Smith, D.H., McIntosh, T.K., Mannon, L.J., Sinson, G.P., Bagley, L.J., Grossman, R.I., & Lenkinski, R.E. (1998). Proton magnetic resonance spectroscopy for detection of axonal injury in the splenium of the corpus callosum of brain-injured patients. *Journal of Neurosurgery*, *88*, 795–801.

Cernich, A., Reeves, D., Sun, W., & Bleiberg, J. (2007). Automated Neuropsychological Assessment Metrics sports medicine battery. *Archives of Clinical Neuropsychology*, *22* (Suppl. 1), S101–114.

Chamelian, L. & Feinstein, A. (2006). The effect of major depression on subjective and objective cognitive deficits in mild to moderate traumatic brain injury. *Journal of Neuropsychiatry and Clinical Neuroscience*, *18*, 33–38.

Chamelian, L., Reis, M., & Feinstein, A. (2004). Six-month recovery from mild to moderate Traumatic Brain Injury: The role of APOE-epsilon4 allele. *Brain*, *127*, 2621–2628.

Chan, R.C. (2001). Attentional deficits in patients with post-concussion symptoms: A componential perspective. *Brain Injury*, *15*, 71–94.

Chan, R.C. (2005). How severe should symptoms be before someone is said to be suffering from post-concussion syndrome? An exploratory study with self-reported checklist using Rasch analysis. *Brain Injury*, *19*, 1117–1124.

Chappell, M.H., Ulug, A.M., Zhang, L., Heitger, M.H., Jordan, B.D., Zimmerman, R.D., & Watts, R. (2006). Distribution of microstructural damage in the brains of professional boxers: A diffusion MRI study. *Journal of Magnetic Resonance Imaging*, *24*, 537–542.

Chaytor, N., Schmitter-Edgecombe, M., & Burr, R. (2006). Improving the ecological validity of executive functioning assessment. *Archives of Clinical Neuropsychology*, *21*, 217–227.

Chen, J.K., Johnston, K.M., Collie, A., McCrory, P., & Ptito, A. (2007). A validation of the post concussion symptom scale in the assessment of complex concussion using cognitive testing and functional MRI. *Journal of Neurology Neurosurgery and Psychiatry*, *78*, 1231–1238.

Chen, S.H., Kareken, D.A., Fastenau, P.S., Trexler, L.E., & Hutchins, G.D. (2003). A study of persistent post-concussion symptoms in mild head trauma using positron emission tomography. *Journal of Neurology Neurosurgery and Psychiatry*, *74*, 326–332.

Cicerone, K., Levin, H., Malec, J., Stuss, D., & Whyte, J. (2006). Cognitive rehabilitation interventions for executive function: Moving from bench to bedside in patients with traumatic brain injury. *Journal of Cognitive and Neuroscience*, *18*, 1212–1222.

Cohen, B.A., Inglese, M., Rusinek, H., Babb, J.S., Grossman, R.I.,

& Gonen, O. (2007). Proton MR spectroscopy and MRI-volumetry in mild traumatic brain injury. *AJNR American Journal of Neuroradiology*, *28*, 907–913.

Collie, A., Makdissi, M., Maruff, P., Bennell, K., & McCrory, P. (2006). Cognition in the days following concussion: Comparison of symptomatic versus asymptomatic athletes. *J Neurology Neurosurgery and Psychiatry*, *77*, 241–245.

Conner, J.M., Chiba, A.A., & Tuszynski, M.H. (2005). The basal forebrain cholinergic system is essential for cortical plasticity and functional recovery following brain injury. *Neuron*, *46*, 173–179.

Crawford, M.A., Knight, R.G., & Alsop, B.L. (2007). Speed of word retrieval in postconcussion syndrome. *Journal of the International Neuropsychological Society*, *13*, 178–182.

Creamer, M., O'Donnell, M.L., & Pattison, P. (2005). Amnesia, traumatic brain injury, and posttraumatic stress disorder: a methodological inquiry. *Behavior Research and Therapy*, *43*, 1383–1389.

Crosby, E.C. & Schnitzlein, H.N. (1982). *Comparative correlative neuroanatomy of the vertebrate telencephalon*. New York: Macmillan Publishing Co.

Das, R.R. & Moorthi, R.N. (2005). Traumatic brain injury in the war zone. *N Engl J Med*, *353*, 633–634.

De Kruijk, J.R., Leffers, P., Menheere, P.P., Meerhoff, S., Rutten, J., & Twijnstra, A. (2002). Prediction of post-traumatic complaints after mild traumatic brain injury: Early symptoms and biochemical markers. *Journal of Neurology Neurosurgery and Psychiatry*, *73*, 727–732.

Delaney, J.S., Abuzeyad, F., Correa, J.A., & Foxford, R. (2005). Recognition and characteristics of concussions in the emergency department population. *Journal of Emergency Medicine*, *29*, 189–197.

de Lange, F.P., Kalkman, J.S., Bleijenberg, G., Hagoort, P., van der Werf, S.P., van der Meer, J.W., & Toni, I. (2004). Neural correlates of the chronic fatigue syndrome—an fMRI study. *Brain*, *127*(Pt 9), 1948–1957.

de la Plata, C.M., Ardelean, A., Koovakkattu, D., Srinivasan, P., Miller, A., Phuong, V., Harper, C., Moore, C., Whittemore, A., Madden, C., Diaz-Arrastia, R., & Devous, M., Sr. (2007). Magnetic resonance imaging of diffuse axonal injury: Quantitative assessment of white matter lesion volume. *Journal of Neurotrauma*, *24*, 591–598.

De Monte, V.E., Geffen, G.M., May, C.R., McFarland, K., Heath, P., & Neralic, M. (2005). The acute effects of mild traumatic brain injury on finger tapping with and without word repetition. *Journal of Clinical Experiments in Neuropsychology*, *27*, 224–239.

Desmurget, M., Bonnetblanc, F., & Duffau, H. (2007). Contrasting acute and slow-growing lesions: A new door to brain plasticity. *Brain*, *130*, 898–914.

Diaz-Arrastia, R. & Baxter, V.K. (2006). Genetic factors in outcome after traumatic brain injury: What the human genome project can teach us about brain trauma. *Journal of Head Trauma Rehabilitation*, *21*, 361–374.

Dockree, P.M., Bellgrove, M.A., O'Keeffe, F.M., Moloney, P., Aimola, L., Carton, S., & Robertson, I.H. (2006a). Sustained attention in traumatic brain injury (TBI) and healthy controls: Enhanced sensitivity with dual-task load. *Experimental Brain Research*, *168*, 218–229.

Dockree, P.M., O'Keeffe, F.M., Moloney, P., Bishara, A.J., Carton, S., Jacoby, L.L., & Robertson, I.H. (2006b). Capture by misleading information and its false acceptance in patients with traumatic brain injury. *Brain*, *129*, 128–140.

Duff, D. (2001). Review article: Altered states of consciousness, theories of recovery, and assessment following a severe traumatic brain injury. *Axone*, *23*, 18–23.

Duffau, H. (2006). Brain plasticity: From pathophysiological mechanisms to therapeutic applications. *Journal of Clinical Neuroscience*, *13*, 885–897.

Elliott, M.R., Arbogast, K.A., & Durbin, D.R. (2006). A latent class analysis of injury patterns among rear-seated, seat-belted children. *Journal of Trauma*, *61*, 1244–1248.

Evans, R.W. (1994). The postconcussion syndrome: 130 years of controversy. *Seminars in Neurology*, *14*, 32–39.

Fijalkowski, R.J., Ellingson, B.M., Stemper, B.D., Yoganandan, N., Gennarelli, T.A., & Pintar, F.A. (2006). Interface parameters of impact-induced mild traumatic brain injury. *Biomedical Sciences Instrumentation*, *42*, 108–113.

Frater, C.J. & Haindl, W. (2003). Blunt trauma soft-tissue uptake on skeletal scintigraphy. *Clinical Nuclear Medicine*, *28*, 699–700.

Frencham, K.A., Fox, A.M., & Maybery, M.T. (2005). Neuropsychological studies of mild traumatic brain injury: A meta-analytic review of research since 1995. *Journal of Clinical and Experimental Neuropsychology*, *27*, 334–351.

Gaetz, M. (2004). The neurophysiology of brain injury. *Clinical Neurophysiology*, *115*, 4–18.

Gale, S.D., Johnson, S.C., Bigler, E.D., & Blatter, D.D. (1995). Nonspecific white matter degeneration following traumatic brain injury. *Journal of the International Neuropsychological Society*, *1*, 17–28.

Geddes, D.M., LaPlaca, M.C., & Cargill, R.S., 2nd. (2003). Susceptibility of hippocampal neurons to mechanically induced injury. *Experimental Neurology*, *184*, 420–427.

Ghaffar, O., Staines, W.R., & Feinstein, A. (2006). Unexplained neurologic symptoms: An fMRI study of sensory conversion disorder. *Neurology*, *67*, 2036–2038.

Giza, C.C. & Prins, M.L. (2006). Is being plastic fantastic? Mechanisms of altered plasticity after developmental traumatic brain injury. *Developmental Neuroscience*, *28*, 364–379.

Gowda, N.K., Agrawal, D., Bal, C., Chandrashekar, N., Tripati, M., Bandopadhyaya, G.P., Malhotra, A., & Mahapatra, A.K. (2006). Technetium Tc-99m ethyl cysteinate dimer brain single-photon emission CT in mild traumatic brain injury: A prospective study. *AJNR American Journal of Neuroradiology*, *27*, 447–451.

Gronwall, D. & Wrightson, P. (1975). Cumulative effect of concussion. *Lancet*, *2*, 995–997.

Guigon, E., Baraduc, P., & Desmurget, M. (2007). Computational motor control: Redundancy and invariance. *Journal of Neurophysiology*, *97*, 331–347.

Gurkoff, G.G., Giza, C.C., & Hovda, D.A. (2006). Lateral fluid percussion injury in the developing rat causes an acute, mild behavioral dysfunction in the absence of significant cell death. *Brain Resonance*, *1077*, 24–36.

Guskiewicz, K.M., Bruce, S.L., Cantu, R.C., Ferrara, M.S., Kelly, J.P., McCrea, M., Putukian, M., & Valovich McLeod, T.C. (2004). National Athletic Trainers" Association Position Statement: Management of Sport-Related Concussion. *Journal of Athletic Training*, *39*, 280–297.

Guskiewicz, K.M., Marshall, S.W., Bailes, J., McCrea, M., Harding, H.P., Jr., Matthews, A., Mihalik, J.R., & Cantu, R.C. (2007). Recurrent Concussion and Risk of Depression in Retired Professional Football Players. *Medical Science and Sports Exercise*, *39*, 903–909.

Hall, E.D., Sullivan, P.G., Gibson, T.R., Pavel, K.M., Thompson, B.M., & Scheff, S.W. (2005). Spatial and temporal characteristics of neurodegeneration after controlled cortical impact in mice: More than a focal brain injury. *Journal of Neurotrauma*, *22*, 252–265.

Hall, R.C. & Chapman, M.J. (2005). Definition, diagnosis, and forensic implications of postconcussional syndrome. *Psychosomatics*, *46*, 195–202.

Heitger, M.H., Anderson, T.J., Jones, R.D., Dalrymple-Alford, J.C., Frampton, C.M., & Ardagh, M.W. (2004). Eye movement and visuomotor arm movement deficits following mild closed head injury. *Brain*, *127*, 575–590.

Heitger, M.H., Jones, R.D., Dalrymple-Alford, J.C., Frampton, C.M., Ardagh, M.W., & Anderson, T.J. (2006). Motor deficits and recovery during the first year following mild closed head injury. *Brain Injury*, *20*, 807–824.

Heitger, M.H., Macaskill, M.R., Jones, R.D., & Anderson, T.J. (2005). The impact of mild closed head injury on involuntary saccadic adaptation: Evidence for the preservation of implicit motor learning. *Brain Injury*, *19*, 109–117.

Henninger, N., Dutzmann, S., Sicard, K.M., Kollmar, R., Bardutzky, J., & Schwab, S. (2005). Impaired spatial learning in a novel rat model of mild cerebral concussion injury. *Experimental Neurology*, *195*, 447–457.

Hessen, E., Nestvold, K., & Sundet, K. (2006). Neuropsychological function in a group of patients 25 years after sustaining minor head injuries as children and adolescents. *Scandinavian Journal of Psychology*, *47*, 245–251.

Holm, L.W., Carroll, L.J., Cassidy, J.D., Skillgate, E., & Ahlbom, A. (2006). Widespread pain following whiplash-associated disorders: Incidence, course, and risk factors. *Journal of Rheumatology*, *34*, 193–200.

Holshouser, B.A., Tong, K.A., Ashwal, S., Oyoyo, U., Ghamsary, M., Saunders, D., & Shutter, L. (2006). Prospective longitudinal proton magnetic resonance spectroscopic imaging in adult traumatic brain injury. *Journal of Magnetic Resonance Imaging*, *24*, 33–40.

Hopkins, R.O., Beck, C.J., Burnett, D.L., Weaver, L.K., Victoroff, J., & Bigler, E.D. (2006). Prevalence of white matter hyperintensities in a young healthy population. *Journal of Neuroimaging*, *16*, 243–251.

Hovda, D.A. (2004). Pathophysiology of TBI. In M. Lovell, R.J. Echemendia, J.T. Barth & M.W. Collins (Eds.), *Traumatic brain injury in sports: An international and neuropsychological perspective*. Lisse, The Netherlands: Swets & Zeitlinger Publishers.

Huh, J.W., Widing, A.G., & Raghupathi, R. (2007). Basic science; repetitive mild non-contusive brain trauma in immature rats exacerbates traumatic axonal injury and axonal calpain activation: A preliminary report. *Journal of Neurotrauma*, *24*, 15–27.

Igarashi, T., Potts, M.B., & Noble-Haeusslein, L.J. (2007). Injury severity determines Purkinje cell loss and microglial activation in the cerebellum after cortical contusion injury. *Expimental Neurology*, *203*, 258–268.

Inglese, M., Bomsztyk, E., Gonen, O., Mannon, L.J., Grossman, R.I., & Rusinek, H. (2005a). Dilated perivascular spaces: hallmarks of mild traumatic brain injury. *AJNR American Journal of Neuroradiology*, *26*, 719–724.

Inglese, M., Makani, S., Johnson, G., Cohen, B.A., Silver, J.A., Gonen, O., & Grossman, R.I. (2005b). Diffuse axonal injury in mild traumatic brain injury: A diffusion tensor imaging study. *Journal of Neurosurgery*, *103*, 298–303.

Ivarsson, J., Viano, D.C., & Lovsund, P. (2002). Influence of the lateral ventricles and irregular skull base on brain kinematics due to sagittal plane head rotation. *Journal of Biomechanical Engineering*, *124*, 422–431.

Iverson, G.I., Zasler, N.D., & Lange, R.T. (Ed.). (2007). *Postconcussion disorder*. New York: Demos.

Iverson, G.L. (2005). Outcome from mild traumatic brain injury. *Current Opinions in Psychiatry*, *18*, 301–317.

Iverson, G.L. (2006). Misdiagnosis of the persistent postconcussion syndrome in patients with depression. *Archives in Clinical Neuropsychology*, *21*, 303–310.

Iverson, G.L. & Binder, L.M. (2000). Detecting exaggeration and malingering in neuropsychological assessment. *Journal of Head Trauma Rehabilitation*, *15*, 829–858.

Iverson, G.L., Brooks, B.L., Collins, M.W., & Lovell, M.R. (2006a). Tracking neuropsychological recovery following concussion in sport. *Brain Injury*, *20*, 245–252.

Iverson, G.L., Brooks, B.L., Lovell, M.R., & Collins, M.W. (2006b). No cumulative effects for one or two previous concussions. *British Journal of Sports Medicine*, *40*, 72–75.

Iverson, G.L., Gaetz, M., Lovell, M.R., & Collins, M.W. (2004). Relation between subjective fogginess and neuropsychological testing following concussion. *Journal of the International Neuropsychological Society*, *10*, 904–906.

Iverson, G.L., Lovell, M.R., & Collins, M.W. (2005). Validity of ImPACT for measuring processing speed following sports-related concussion. *Journal of Clinical and Experimental Neuropsychology*, *27*, 683–689.

Jackson, J.C., Obremskey, W., Bauer, R., Greevy, R., Cotton, B.A., Anderson, V., Song, Y., & Ely, E.W. (2007). Long-term cognitive, emotional, and functional outcomes in trauma intensive care unit survivors without intracranial hemorrhage. *Journal of Trauma*, *62*, 80–88.

Jantzen, K.J., Anderson, B., Steinberg, F.L., & Kelso, J.A. (2004). A prospective functional MR imaging study of mild traumatic brain injury in college football players. *AJNR American Journal of Neuroradiology*, *25*, 738–745.

Johansen, V.A., Wahl, A.K., Eilertsen, D.E., Hanestad, B.R., & Weisaeth, L. (2006). Acute psychological reactions in assault victims of non-domestic violence: Peritraumatic dissociation, post-traumatic stress disorder, anxiety and depression. *Nordic Journal of Psychiatry*, *60*, 452–462.

Johansson, B.H. (2006). Whiplash injuries can be visible by functional magnetic resonance imaging. *Pain Research & Management*, *11*, 197–199.

Karp, J.F., Reynolds, C.F., 3rd, Butters, M.A., Dew, M.A., Mazumdar, S., Begley, A.E., Lenze, E., & Weiner, D.K. (2006). The relationship between pain and mental flexibility in older adult pain clinic patients. *Pain Medicine*, *7*, 444–452.

Karzmark, P., Hall, K., & Englander, J. (1995). Late-onset postconcussion symptoms after mild brain injury: The role of premorbid, injury-related, environmental, and personality factors. *Brain Injury*, *9*, 21–26.

Kashluba, S., Casey, J.E., & Paniak, C. (2006). Evaluating the utility of ICD-10 diagnostic criteria for postconcussion syndrome following mild traumatic brain injury. *Journal of the International Neuropsychological Society*, *12*, 111–118.

Keane, J.R. & Baloh, R.W. (1992). Posttraumatic cranial neuropathies. *Neurology Clinics*, *10*, 849–867.

Kelestimur, F. (2005). Chronic trauma in sports as a cause of hypopituitarism. *Pituitary*, *8*, 259–262.

Kelly, D.F., McArthur, D.L., Levin, H., Swimmer, S., Dusick, J.R.,

Cohan, P., Wang, C., & Swerdloff, R. (2006). Neurobehavioral and quality of life changes associated with growth hormone insufficiency after complicated mild, moderate, or severe traumatic brain injury. *Journal of Neurotrauma*, *23*, 928–942.

Kelly, J.P. (1999). Traumatic brain injury and concussion in sports. *Journal of the American Medical Association*, *282*, 989–991.

Kennedy, R.E., Livingston, L., Marwitz, J.H., Gueck, S., Kreutzer, J.S., & Sander, A.M. (2006). Complicated mild traumatic brain injury on the inpatient rehabilitation unit: A multicenter analysis. *Journal of Head Trauma Rehabilitation*, *21*, 260–271.

Kent, D.H.R. (2007). When averages hide individual differences in clinical trials. *American Scientist*, *95*, 60–68.

Kercel, S.W., Reber, A.S., & Manges, W.W. (2005). Some radical implications of Bach-y-Rita's discoveries. *Journal of Integrated Neurosciences*, *4*, 551–565.

Kertesz, A.G. & Gold, B.T. (2003). *Recovery of cognition* (4th ed.). New York: Oxford University Press.

Kharatishvili, I., Nissinen, J.P., McIntosh, T.K., & Pitkanen, A. (2006). A model of posttraumatic epilepsy induced by lateral fluid-percussion brain injury in rats. *Neuroscience*, *140*, 685–697.

King, N.S. (2003). Post-concussion syndrome: Clarity amid the controversy? *British Journal of Psychiatry*, *183*, 276–278.

Konsman, J.P., Drukarch, B., & Van Dam, A.M. (2007). (Peri)vascular production and action of pro-inflammatory cytokines in brain pathology. *Clinical Science (London)*, *112*, 1–25.

Korn, A., Golan, H., Melamed, I., Pascual-Marqui, R., & Friedman, A. (2005). Focal cortical dysfunction and blood-brain barrier disruption in patients with Postconcussion syndrome. *Journal of Clinical Neurophysiology*, *22*, 1–9.

Kozora, E., Ellison, M.C., & West, S. (2006). Depression, fatigue, and pain in systemic lupus erythematosus (SLE): Relationship to the American College of Rheumatology SLE neuropsychological battery. *Arthritis and Rheumatism*, *55*, 628–635.

Langlois, J.A., Marr, A., Mitchko, J., & Johnson, R.L. (2005). Tracking the silent epidemic and educating the public: CDC's traumatic brain injury-associated activities under the TBI Act of 1996 and the Children's Health Act of 2000. *Journal of Head Trauma Rehabilitation*, *20*, 196–204.

Laurer, H.L., Bareyre, F.M., Lee, V.M., Trojanowski, J.Q., Longhi, L., Hoover, R., Saatman, K.E., Raghupathi, R., Hoshino, S., Grady, M.S., & McIntosh, T.K. (2001). Mild head injury increasing the brain's vulnerability to a second concussive impact. *Journal of Neurosurgery*, *95*, 859–870.

Leclerc, S., Lassonde, M., Delaney, J.S., Lacroix, V.J., & Johnston, K.M. (2001). Recommendations for grading of concussion in athletes. *Sports Medicine*, *31*, 629–636.

Leker, R.R., Shohami, E., & Constantini, S. (2002). Experimental models of head trauma. *Acta Neurochirurgica Supplement*, *83*, 49–54.

Levine, B., Fujiwara, E., O'Connor, C., Richard, N., Kovacevic, N., Mandic, M., Restagno, A., Easdon, C., Robertson, I.H., Graham, S.J., Cheung, G., Gao, F., Schwartz, M.L., & Black, S.E. (2006). In vivo characterization of traumatic brain injury neuropathology with structural and functional neuroimaging. *Journal of Neurotrauma*, *23*, 1396–1411.

Levy, A. (1992). Compensation neurosis rides again. *Brain Injury*, *6*, 401–410.

Lew, H.L., Lin, P.H., Fuh, J.L., Wang, S.J., Clark, D.J., & Walker, W.C. (2006). Characteristics and treatment of headache after traumatic brain injury: A focused review. *American Journal of Physical and Medical Rehabilitation*, *85*, 619–627.

Lewine, J.D., Davis, J.T., Bigler, E.D., Thoma, R., Hill, D., Funke, M., Sloan, J.H., Hall, S., & Orrison, W.W. (2007). Objective documentation of traumatic brain injury subsequent to mild head trauma: Multimodal brain imagng with MEG, SPECT, and MRI. *Journal of Head Trama Rehabilitation*, *22*, 141–155.

Longhi, L., Saatman, K.E., Fujimoto, S., Raghupathi, R., Meaney, D.F., Davis, J., McMillan, B.S.A., Conte, V., Laurer, H.L., Stein, S., Stocchetti, N., & McIntosh, T.K. (2005). Temporal window of vulnerability to repetitive experimental concussive brain injury. *Neurosurgery*, *56*, 364–374; discussion 364–374.

Loring, D.W., Larrabee, G.J., Lee, G.P., & Meador, K.J. (2007). [image omitted] Victoria Symptom Validity Test Performance in a heterogenous clinical sample. *Clinical Neuropsychology*, *21*, 522–531.

Lundin, A., de Boussard, C., Edman, G., & Borg, J. (2006). Symptoms and disability until 3 months after mild TBI. *Brain Injury*, *20*, 799–806.

MacKenzie, J.D., Siddiqi, F., Babb, J.S., Bagley, L.J., Mannon, L.J., Sinson, G.P., & Grossman, R.I. (2002). Brain atrophy in mild or moderate traumatic brain injury: A longitudinal quantitative analysis. *AJNR American Journal of Neuroradiology*, *23*, 1509–1515.

Maegele, M., Riess, P., Sauerland, S., Bouillon, B., Hess, S., McIntosh, T.K., Mautes, A., Brockmann, M., Koebke, J., Knifka, J., & Neugebauer, E.A. (2005). Characterization of a new rat model of experimental combined neurotrauma. *Shock*, *23*, 476–481.

Mai, J.K., Assheuer, J., & Paxinos, G. (2004). *Atlas of the Human Brain*. Amsterdam: Elsevier.

Manville, J., Laurer, H.L., Steudel, W.I., & Mautes, A.E. (2007). Changes in cortical and subcortical energy metabolism after repetitive and single controlled cortical impact injury in the mouse. *Journal of Molecular Neuroscience*, *31*, 95–100.

Martin, P. & Leibovich, S.J. (2005). Inflammatory cells during wound repair: The good, the bad and the ugly. *Trends Cell Biology*, *15*, 599–607.

Mathias, J.L., Bigler, E.D., Jones, N.R., Bowden, S.C., Barrett-Woodbridge, M., Brown, G.C., & Taylor, D.J. (2004). Neuropsychological and information processing performance and its relationship to white matter changes following moderate and severe traumatic brain injury: A preliminary study. *Applied Neuropsychology*, *11*, 134–152.

Mayou, R. & Bryant, B. (2002). Outcome 3 years after a road traffic accident. *Psychology Medicine*, *32*, 671–675.

McAllister, T.W., Flashman, L.A., McDonald, B.C., & Saykin, A.J. (2006). Mechanisms of working memory dysfunction after mild and moderate TBI: Evidence from functional MRI and neurogenetics. *Journal of Neurotrauma*, *23*, 1450–1467.

McAllister, T.W., Sparling, M.B., Flashman, L.A., & Saykin, A.J. (2001). Neuroimaging findings in mild traumatic brain injury. *Journal of Clinical and Experimental Neuropsychology*, *23*, 775–791.

McCauley, S.R., Boake, C., Levin, H.S., Contant, C.F., & Song, J.X. (2001). Postconcussional disorder following mild to moderate traumatic brain injury: Anxiety, depression, and social support as risk factors and comorbidies. *Journal of Clinical and Experimental Neuropsychology*, *23*, 792–808.

McCauley, S.R., Boake, C., Pedroza, C., Brown, S.A., Levin, H.S., Goodman, H.S., & Merritt, S.G. (2005). Postconcussional disorder: Are the DSM-IV criteria an improvement over the ICD-10? *Journal of Nervous and Mental Disorders*, *193*, 540–550.

McCrea, M., Guskiewicz, K.M., Marshall, S.W., Barr, W., Randolph, C., Cantu, R.C., Onate, J.A., Yang, J., & Kelly, J.P. (2003). Acute effects and recovery time following concussion in collegiate football players: The NCAA Concussion Study. *Journal of the American Medical Association*, *290*, 2556–2563.

McCrory, P., Johnston, K., Meeuwisse, W., Aubry, M., Cantu, R., Dvorak, J., Graf-Baumann, T., Kelly, J., Lovell, M., & Schamasch, P. (2005). Summary and agreement statement of the 2nd International Conference on Concussion in Sport, Prague 2004. *British Journal of Sports Medicine*, *39*, 196–204.

McCrory, P.R. & Berkovic, S.F. (2000). Video analysis of acute motor and convulsive manifestations in sport-related concussion. *Neurology*, *54*, 1488–1491.

McCrory, P.R. & Berkovic, S.F. (2001). Concussion: The history of clinical and pathophysiological concepts and misconceptions. *Neurology*, *57*, 2283–2289.

McDonald, T.J., Li, C., Vincent, S.E., & Nijland, M.J. (2006). Fetal fornix transection and gestation length in sheep. *Experimental Neurology*, *200*, 532–537.

McHugh, T., Laforce, R., Jr., Gallagher, P., Quinn, S., Diggle, P., & Buchanan, L. (2006). Natural history of the long-term cognitive, affective, and physical sequelae of mild traumatic brain injury. *Brain Cognition*, *60*, 209–211.

Meares, S., Shores, E.A., Batchelor, J., Baguley, I.J., Chapman, J., Gurka, J., & Marosszeky, J.E. (2006). The relationship of psychological and cognitive factors and opioids in the development of the postconcussion syndrome in general trauma patients with mild traumatic brain injury. *Journal of the International and Neuropsychological Society*, *12*, 792–801.

Meares, S., Shores, E.A., Taylor, A.J., Batchelor, J., Bryant, R.A., Baguley, I.J., Chapman, J., Gurka, J., Dawson, K., Capon, L., & Marrosszkey, J.E. (in press). Mild traumatic brain injury does not predict acute postconcussion syndrome. *Journal of Neurology, Neurosurgery & Psychiatry*.

Mendez, C.V., Hurley, R.A., Lassonde, M., Zhang, L., & Taber, K.H. (2005). Mild traumatic brain injury: Neuroimaging of sports-related concussion. *Journal of Neuropsychiatry and Clinical Neuroscience*, *17*, 297–303.

Miller, H. (1961). Accident neurosis. *British Medical Journal*, *1*, 919–925.

Milman, A., Rosenberg, A., Weizman, R., & Pick, C.G. (2005). Mild traumatic brain injury induces persistent cognitive deficits and behavioral disturbances in mice. *Journal of Neurotrauma*, *22*, 1003–1010.

Mooney, G. & Speed, J. (2001). The association between mild traumatic brain injury and psychiatric conditions. *Brain Injury*, *15*, 865–877.

Mooney, G., Speed, J., & Sheppard, S. (2005). Factors related to recovery after mild traumatic brain injury. *Brain Injury*, *19*, 975–987.

Moritz, S., Ferahli, S., & Naber, D. (2004). Memory and attention performance in psychiatric patients: Lack of correspondence between clinician-rated and patient-rated functioning with neuropsychological test results. *Journal of the International of the Neuropsychological Society*, *10*, 623–633.

Moser, R.S., Schatz, P., & Jordan, B.D. (2005). Prolonged effects of concussion in high school athletes. *Neurosurgery*, *57*, 300–306; discussion 300–306.

Moucha, R. & Kilgard, M.P. (2006). Cortical plasticity and rehabilitation. *Prog Brain Res*, *157*, 111–122.

Nolle, C., Todt, I., Seidl, R.O., & Ernst, A. (2004). Pathophysiological changes of the central auditory pathway after blunt trauma of the head. *Journal of Neurotrauma*, *21*, 251–258.

Obelieniene, D., Schrader, H., Bovim, G., Miseviciene, I., & Sand, T. (1999). Pain after whiplash: A prospective controlled inception cohort study. *Journal of Neurology Neurosurgery and Psychiatry*, 66, 279–283.

Odhuba, R.A., van den Broek, M.D., & Johns, L.C. (2005). Ecological validity of measures of executive functioning. *British Journal of Clinical Psychology*, 44, 269–278.

O'Keeffe, F., Dockree, P., Moloney, P., Carton, S., & Robertson, I.H. (2007a). Awareness of deficits in traumatic brain injury: A multidimensional approach to assessing metacognitive knowledge and online-awareness. *Journal of the International Neuropsychological Society*, 13, 38–49.

O'Keeffe, F.M., Dockree, P.M., Moloney, P., Carton, S., & Robertson, I.H. (2007b). Characterising error-awareness of attentional lapses and inhibitory control failures in patients with traumatic brain injury. *Experimental Brain Research*, 180, 59–67.

Okie, S. (2005). Traumatic brain injury in the war zone. *New England Journal of Medicine*, 352, 2043–2047.

Omalu, B.I., DeKosky, S.T., Minster, R.L., Kamboh, M.I., Hamilton, R.L., & Wecht, C.H. (2005). Chronic traumatic encephalopathy in a National Football League player. *Neurosurgery*, 57, 128–134; discussion 128–134.

Ost, M., Nylen, K., Csajbok, L., Ohrfelt, A.O., Tullberg, M., Wikkelso, C., Nellgard, P., Rosengren, L., Blennow, K., & Nellgard, B. (2006). Initial CSF total tau correlates with 1-year outcome in patients with traumatic brain injury. *Neurology*, 67, 1600–1604.

Page, J.D. (1947). *Abnormal Psychology: A clinical approach to psychological deviants*. New York: McGraw-Hill Book Company.

Park, E., McKnight, S., Ai, J., & Baker, A.J. (2006). Purkinje cell vulnerability to mild and severe forebrain head trauma. *Journal of Neuropathology and Expimental Neurology*, 65, 226–234.

Parker, T.M., Osternig, L.R., van Donkelaar, P., & Chou, L.S. (2007). Recovery of cognitive and dynamic motor function following concussion. *British Journal of Sports Medicine*, 41, 868–873.

Pellman, E.J., Viano, D.C., Casson, I.R., Tucker, A.M., Waeckerle, J.F., Powell, J.W., & Feuer, H. (2004). Concussion in professional football: repeat injuries—part 4. *Neurosurgery*, 55, 860–873; discussion 873–866.

Ponsford, J. (2005). Rehabilitation interventions after mild head injury. *Current Opinions in Neurology*, 18, 692–697.

Povlishock, J.T. & Katz, D.I. (2005). Update of neuropathology and neurological recovery after traumatic brain injury. *Journal of Head Trauma Rehabilitation*, 20, 76–94.

Powner, D.J., Boccalandro, C., Alp, M.S., & Vollmer, D.G. (2006). Endocrine failure after traumatic brain injury in adults. *Neurocritical Care*, 5, 61–70.

Priestley, J.V. (2007). Promoting anatomical plasticity and recovery of function after traumatic injury to the central or peripheral nervous system. *Brain*, 130, 895–897.

Prigatano, G.P., Borgaro, S., Baker, J., & Wethe, J. (2005). Awareness and distress after traumatic brain injury: A relative's perspective. *Journal of Head Trauma and Rehabilitation*, 20, 359–367.

Racette, B.A., Bradley, A., Wrisberg, C.A., & Perlmutter, J.S. (2006). The impact of litigation on neurologic research. *Neurology*, 67, 2124–2128.

Ragnarsson, K.T. (2006). Traumatic brain injury research since the 1998 NIH Consensus Conference: Accomplishments and unmet goals. *Journal of Head Trauma Rehabilitation*, 21, 379–387.

Rees, P.M. (2003). Contemporary issues in mild traumatic brain injury. *Archives of Physical Medicine and Rehabilitation*, 84, 1885–1894.

Reeves, T.M., Phillips, L.L., & Povlishock, J.T. (2005). Myelinated and unmyelinated axons of the corpus callosum differ in vulnerability and functional recovery following traumatic brain injury. *Experimental Neurology*, 196, 126–137.

Ropper, A.H. & Gorson, K.C. (2007). Clinical practice. Concussion. *New England Journal of Medicine*, 356, 166–172.

Ross, S.R., Putnam, S.H., & Adams, K.M. (2006a). Psychological disturbance, incomplete effort, and compensation-seeking status as predictors of neuropsychological test performance in head injury. *Journal of Clinical Experimental Neuropsychology*, 28, 111–125.

Ross, S.R., Putnam, S.H., Millis, S.R., Adams, K.M., & Krukowski, R.A. (2006b). Detecting insufficient effort using the Seashore Rhythm and Speech-Sounds Perception Tests in head injury. *Clinical Neuropsychology*, 20, 798–815.

Roy, K., Murtie, J.C., El-Khodor, B.F., Edgar, N., Sardi, S.P., Hooks, B.M., Benoit-Marand, M., Chen, C., Moore, H., O'Donnell, P., Brunner, D., & Corfas, G. (2007). Loss of erbB signaling in oligodendrocytes alters myelin and dopaminergic function, a potential mechanism for neuropsychiatric disorders. *Proceedings of the National Academy of Science USA*, 104, 8131–8136.

Royo, N.C., Conte, V., Saatman, K.E., Shimizu, S., Belfield, C.M., Soltesz, K.M., Davis, J.E., Fujimoto, S.T., & McIntosh, T.K. (2006). Hippocampal vulnerability following traumatic brain injury: A potential role for neurotrophin-4/5 in pyramidal cell neuroprotection. *European Journal of Neuroscience*, 23, 1089–1102.

Ruff, R.M., Camenzuli, L., & Mueller, J. (1996). Miserable minority: Emotional risk factors that influence the outcome of a mild traumatic brain injury. *Brain Injury*, 10, 551–565.

Ruff, R.M. & Jurica, P. (1999). In search of a unified definition for mild traumatic brain injury. *Brain Injury*, 13, 943–952.

Rutland-Brown, W., Langlois, J.A., Thomas, K.E., & Xi, Y.L. (2006). Incidence of traumatic brain injury in the United States, 2003. *Journal of Head Trauma Rehabilitation*, 21, 544–548.

Ryan, L.M. & Warden, D.L. (2003). Post concussion syndrome. *International Reviews in Psychiatry*, 15, 310–316.

Satz, P.S., Alfano, M.S., Light, R.F., Morgenstern, H.F., Zaucha, K.F., Asarnow, R.F., & Newton, S. (1999). Persistent Post-Concussive Syndrome: A proposed methodology and literature review to determine the effects, if any, of mild head and other bodily injury. *J Clinical and Experimental Neuropsychology*, 21, 620–628.

Savola, O. & Hillbom, M. (2003). Early predictors of post-concussion symptoms in patients with mild head injury. *European Journal of Neurology*, 10, 175–181.

Schatz, P. & Putz, B.O. (2006). Cross-validation of measures used for computer-based assessment of concussion. *Applied Neuropsychology*, 13, 151–159.

Scheibel, R.S., Newsome, M.R., Steinberg, J.L., Pearson, D.A., Rauch, R.A., Mao, H., Troyanskaya, M., Sharma, R.G., & Levin, H.S. (2007). Altered brain activation during cognitive control in patients with moderate to severe traumatic brain injury. *Neurorehabilitation and Neural Repair*, 21, 36–45.

Scheid, R., Walther, K., Guthke, T., Preul, C., & von Cramon, D.Y. (2006). Cognitive sequelae of diffuse axonal injury. *Archives in Neurology*, 63, 418–424.

Schnadower, D., Vazquez, H., Lee, J, Dayan, P., & Roskind, C.G. (2007). Controversies in the evaluation and management of

minor blunt head trauma in children. *Current Opinions in Pediatrics*, 19, 258–264.

Schonfeldt-Lecuona, C., Connemann, B.J., Viviani, R., Spitzer, M., & Herwig, U. (2006). Transcranial magnetic stimulation in motor conversion disorder: A short case series. *Journal of Clinical Neurophysiology*, 23, 472–475.

Schretlen, D.J. & Shapiro, A.M. (2003). A quantitative review of the effects of traumatic brain injury on cognitive functioning. *International Reviews in Psychiatry*, 15, 341–349.

Schweinhardt, P., Lee, M., & Tracey, I. (2006). Imaging pain in patients: Is it meaningful? *Current Opinions in Neurology*, 19, 392–400.

Shaw, N.A. (2002). The neurophysiology of concussion. *Programs in Neurobiology*, 67, 281–344.

Sheedy, J., Geffen, G., Donnelly, J., & Faux, S. (2006). Emergency department assessment of mild traumatic brain injury and prediction of post-concussion symptoms at one month post injury. *J Clinical and Experimental Neuropsychology*, 28, 755–772.

Silver, J.M., Mc Allister, T.W., & Yudofsky, S.C. (2005). *Textbook of Traumatic Brain Injury*. Washington, DC: American Psychiatric Publishing, Inc.

Singleton, R.H. & Povlishock, J.T. (2004). Identification and characterization of heterogeneous neuronal injury and death in regions of diffuse brain injury: Evidence for multiple independent injury phenotypes. *Journal of Neuroscience*, 24, 3543–3553.

Slobounov, S., Slobounov, E., & Newell, K. (2006). Application of virtual reality graphics in assessment of concussion. *Cyberpsychology & Behavior*, 9, 188–191.

Smith, D.H. (2006). Postconcussional symptoms not a syndrome. *Psychosomatics*, 47, 271–272; author reply 272.

Sojka, P., Stalnacke, B.M., Bjornstig, U., & Karlsson, K. (2006). One-year follow-up of patients with mild traumatic brain injury: Occurrence of post-traumatic stress-related symptoms at follow-up and serum levels of cortisol, S-100B and neuron-specific enolase in acute phase. *Brain Injury*, 20, 613–620.

Stalnacke, B.M., Bjornstig, U., Karlsson, K., & Sojka, P. (2005). One-year follow-up of mild traumatic brain injury: Postconcussion symptoms, disabilities and life satisfaction in relation to serum levels of S-100B and neurone-specific enolase in acute phase. *Journal of Rehabilitation Medicine*, 37, 300–305.

Stern, Y. (2007). *Cognitive Reserve: Theory and applications*. N.Y.: Taylor & Francis.

Sterr, A., Herron, K., Hayward, C., & Montaldi, D. (2006). Are mild head injuries as mild as we think? Neurobehavioral concomitants of chronic post-concussion syndrome. *BMC Neurology*, 6, 7.

Stonnington, C.M., Barry, J.J., & Fisher, R.S. (2006). Conversion disorder. *American Journal of Psychiatry*, 163, 1510–1517.

Stulemeijer, M., van der Werf, S., Bleijenberg, G., Biert, J., Brauer, J., & Pieter, E.V. (2006). Recovery from mild traumatic brain injury: A focus on fatigue. *J Neurology*, 253, 1041–1047.

Suh, M., Basu, S., Kolster, R., Sarkar, R., McCandliss, B., & Ghajar, J. (2006). Increased oculomotor deficits during target blanking as an indicator of mild traumatic brain injury. *Neuroscience Letters*, 410, 203–207.

Tagliaferri, F., Compagnone, C., Korsic, M., Servadei, F., & Kraus, J. (2006). A systematic review of brain injury epidemiology in Europe. *Acta Neurochirurgica (Wien)*, 148, 255–268; discussion 268.

Tang, Y.P., Noda, Y., Hasegawa, T., & Nabeshima, T. (1997). A concussive-like brain injury model in mice (I): Impairment in learning and memory. *Journal of Neurotrauma*, 14, 851–862.

Tanriverdi, F., Unluhizarci, K., Coksevim, B., Selcuklu, A., Casanueva, F.F., & Kelestimur, F. (2007). Kickboxing sport as a new cause of traumatic brain injury-mediated hypopituitarism. *Clinical Endocrinology (Oxford)*, 66, 360–366.

Tashlykov, V., Katz, Y., Gazit, V., Zohar, O., Schreiber, S., & Pick, C.G. (2007). Apoptotic changes in the cortex and hippocampus following minimal brain trauma in mice. *Brain Resonance*, 1130, 197–205.

Tasker, R.C., Salmond, C.H., Westland, A.G., Pena, A., Gillard, J.H., Sahakian, B.J., & Pickard, J.D. (2005). Head circumference and brain and hippocampal volume after severe traumatic brain injury in childhood. *Pediatric Research*, 58, 302–308.

Tate, D.F. & Bigler, E.D. (2000). Fornix and hippocampal atrophy in traumatic brain injury. *Learning and Memory*, 7, 442–446.

Tomaiuolo, F., Carlesimo, G.A., Di Paola, M., Petrides, M., Fera, F., Bonanni, R., Formisano, R., Pasqualetti, P., & Caltagirone, C. (2004). Gross morphology and morphometric sequelae in the hippocampus, fornix, and corpus callosum of patients with severe non-missile traumatic brain injury without macroscopically detectable lesions: A T1 weighted MRI study. *Journal of Neurology Neurosurgery and Psychiatry*, 75, 1314–1322.

Ucar, T., Tanriover, G., Gurer, I., Onal, M.Z., & Kazan, S. (2006). Modified experimental mild traumatic brain injury model. *Journal of Trauma*, 60, 558–565.

Udekwu, P., Kromhout-Schiro, S., Vaslef, S., Baker, C., & Oller, D. (2004). Glasgow Coma Scale score, mortality, and functional outcome in head-injured patients. *Journal of Trauma*, 56, 1084–1089.

Ueda, Y., Walker, S.A., & Povlishock, J.T. (2006). Perivascular nerve damage in the cerebral circulation following traumatic brain injury. *Acta Neuropathologica (Berlin)*, 112, 85–94.

Van Hoesen, G.W., Augustinack, J.C., & Redman, S.J. (1999). Ventromedial temporal lobe pathology in dementia, brain trauma, and schizophrenia. *Annals of the New York Academy of Science*, 877, 575–594.

Vasterling, J.J. & Bremner, J.D. (2006). The impact of the 1991 Gulf War on the mind and brain: findings from neuropsychological and neuroimaging research. *Philosophical Transactions of the Royal Society of Lond B Biological Science*, 361, 593–604.

Vasterling, J.J., Proctor, S.P., Amoroso, P., Kane, R., Heeren, T., & White, R.F. (2006). Neuropsychological outcomes of army personnel following deployment to the Iraq war. *Jama*, 296, 519–529.

Veltmeyer, M.D., Clark, C.R., McFarlane, A.C., Felmingham, K.L., Bryant, R.A., & Gordon, E. (2005). Integrative assessment of brain and cognitive function in post-traumatic stress disorder. *Journal of Integrated Neuroscience*, 4, 145–159.

Viano, D.C., Casson, I.R., Pellman, E.J., Bir, C.A., Zhang, L., Sherman, D.C., & Boitano, M.A. (2005a). Concussion in professional football: Comparison with boxing head impacts—part 10. *Neurosurgery*, 57, 1154–1172; discussion 1154–1172.

Viano, D.C., Casson, I.R., Pellman, E.J., Zhang, L., King, A.I., & Yang, K.H. (2005b). Concussion in professional football: Brain responses by finite element analysis: Part 9. *Neurosurgery*, 57, 891–916; discussion 891–916.

Vick, N.A. (1976). *Grinker's Neurology*. Springfield, IL: Charles C. Thomas.

Vorst, M.V., Ono, K., Chan, P., & Stuhmiller, J. (2007). Correlates to traumatic brain injury in nonhuman primates. *Journal of Trauma*, 62, 199–206.

Case 2:15-cv-01723-DGC Document 62-1 Filed 10/06/2015 Page 1845 of 1878

Vos, P.E., Battistin, L., Birbamer, G., Gerstenbrand, F., Potapov, A., Prevec, T., Stepan Ch., A., Traubner, P., Twijnstra, A., Vecsei, L., & von Wild, K. (2002). EFNS guideline on mild traumatic brain injury: Report of an EFNS task force. *European Journal of Neurology*, 9, 207–219.

Wall, S.E., Williams, W.H., Cartwright-Hatton, S., Kelly, T.P., Murray, J., Murray, M., Owen, A., & Turner, M. (2006). Neuropsychological dysfunction following repeat concussions in jockeys. *Journal of Neurology Neurosurgery and Psychiatry*, 77, 518–520.

Ward, N.S., Oakley, D.A., Frackowiak, R.S., & Halligan, P.W. (2003). Differential brain activations during intentionally simulated and subjectively experienced paralysis. *Cognitive Neuropsychiatry*, 8, 295–312.

Warden, D. (2006). Military TBI during the Iraq and Afghanistan wars. *Journal of Head Trauma and Rehabilitation*, 21, 398–402.

Warden, D.L. & French, L. (2005). Traumatic brain injury in the war zone. *New England Journal of Medicine*, 353, 633–634.

Weiss, H.D., Stern, B.J., & Goldberg, J. (1991). Post-traumatic migraine: Chronic migraine precipitated by minor head or neck trauma. *Headache*, 31, 451–456.

Whittaker, R., Kemp, S., & House, A. (2007). Illness perceptions and outcome in mild head injury: A longitudinal study. *Journal of Neurology Neurosurgery and Psychiatry*, 78, 644–646.

Wilde, E.A., Bigler, E.D., Haider, J.M., Chu, Z., Levin, H.S., Li, X., & Hunter, J.V. (2006a). Vulnerability of the anterior commissure in moderate to severe pediatric traumatic brain injury. *Journal of Child Neurology*, 21, 769–776.

Wilde, E.A., Bigler, E.D., Hunter, J.V., Fearing, M.A., Scheibel, R.S., Newsome, M.R., Johnson, J.L., Bachevalier, J., Li, X. & Levin, H. (2007). Hippocampus, amygdala, and basal ganglia morphometrics in children after moderate-to-severe traumatic brain injury. *Developmental Medicine & Child Neurology*, 49, 294–299.

Wilde, E.A., Bigler, E.D., Pedroza, C., & Ryser, D.K. (2006b). Post-traumatic amnesia predicts long-term cerebral atrophy in traumatic brain injury. *Brain Injury*, 20, 695–699.

Wilde, E.A., Chu, Z., Bigler, E.D., Hunter, J.V., Fearing, M.A., Hanten, G., Newsome, M.R., Scheibel, R.S., Li, X., & Levin, H.S. (2006c). Diffusion tensor imaging in the corpus callosum in children after moderate to severe traumatic brain injury. *Journal of Neurotrauma*, 23(10), 1412–1426.

Wilde, E.A., McCauley, S.R., Hunter, J.V., Bigler, E.D., Chu, Z., Wang, J., Hanten, G.R., Toyanskaya, M., Yallampalli, R., Li, X., Chia, J. & Levin, H.S. (in press). Diffusion tensor imaging of acute mild traumatic brain injury. *Neurology*.

Willer, B. & Leddy, J.J. (2006). Management of concussion and post-concussion syndrome. *Current Treatment Options in Neurology*, 8, 415–426.

Wood, P.B. (2005). Neuroimaging in functional somatic syndromes. *International Reviews in Neurobiology*, 67, 119–163.

Wood, R.L. (2004). Understanding the "miserable minority": A diasthesis-stress paradigm for post-concussional syndrome. *Brain Injury*, 18, 1135–1153.

Wood, R.L. (2007). Post concussional syndrome: All in the minds eye! *Journal of Neurology Neurosurgery and Psychiatry*, 78, 552.

Wood, R.L. & Liossi, C. (2006). The ecological validity of executive tests in a severely brain injured sample. *Archives in Clinical Neuropsychology*, 21, 429–437.

Wright, C.I., Williams, D., Feczko, E., Barrett, L.F., Dickerson, B.C., Schwartz, C.E., & Wedig, M.M. (2006). Neuroanatomical correlates of extraversion and neuroticism. *Cerebral Cortex*, 16, 1809–1819.

Yoshiyama, Y., Uryu, K., Higuchi, M., Longhi, L., Hoover, R., Fujimoto, S., McIntosh, T., Lee, V.M., & Trojanowski, J.Q. (2005). Enhanced neurofibrillary tangle formation, cerebral atrophy, and cognitive deficits induced by repetitive mild brain injury in a transgenic tauopathy mouse model. *Journal of Neurotrauma*, 22, 1134–1141.

Zasler, N.D., Katz, D.I., & Zafonte, R.D. (2007). *Brain Injury Medicine*. New York: Demos Medical Publishing.

Zetterberg, H., Hietala, M.A., Jonsson, M., Andreasen, N., Styrud, E., Karlsson, I., Edman, A., Popa, C., Rasulzada, A., Wahlund, L.O., Mehta, P.D., Rosengren, L., Blennow, K., & Wallin, A. (2006). Neurochemical aftermath of amateur boxing. *Archives in Neurology*, 63, 1277–1280.

Zhang, J., Yoganandan, N., Pintar, F.A., & Gennarelli, T.A. (2006a). Role of translational and rotational accelerations on brain strain in lateral head impact. *Biomedical Sciences Instrumentation*, 42, 501–506.

Zhang, L., Heier, L.A., Zimmerman, R.D., Jordan, B., & Ulug, A.M. (2006b). Diffusion anisotropy changes in the brains of professional boxers. *AJNR American Journal of Neuroradiology*, 27, 2000–2004.

Zhu, Q., Prange, M., & Margulies, S. (2006). Predicting unconsciousness from a pediatric brain injury threshold. *Developmental Neuroscience*, 28, 388–395.

Ziino, C. & Ponsford, J. (2006). Selective attention deficits and subjective fatigue following traumatic brain injury. *Neuropsychology*, 20, 383–390.

Zohar, O., Getslev, V., Miller, A.L., Schreiber, S., & Pick, C.G. (2006). Morphine protects for head trauma induced cognitive deficits in mice. *Neuroscience Letters*, 394, 239–242.

Zohar, O., Schreiber, S., Getslev, V., Schwartz, J.P., Mullins, P.G., & Pick, C.G. (2003). Closed-head minimal traumatic brain injury produces long-term cognitive deficits in mice. *Neuroscience*, 118, 949–955.

Zumsteg, D., Wennberg, R., Gutling, E., & Hess, K. (2006). Whiplash and concussion: similar acute changes in middle-latency SEPs. *Canadian Journal of Neurological Science*, 33, 379–386.

# EXHIBIT 23

Case 2:25-cv-02171-DOC-E Document 62-6 Filed 10/08/25 Page 1 of 6 Page ID #:1847

## [ Primary Care ]



# Is There Chronic Brain Damage in Retired NFL Players? Neuroradiology, Neuropsychology, and Neurology Examinations of 45 Retired Players

Ira R. Casson, MD,[†‡] David C. Viano, Dr Med, PhD,[*§||] E. Mark Haacke, PhD,[¶] Zhifeng Kou, PhD,[¶] and Danielle G. LeStrange, RN, MSN, ACNS-BC[#]

**Background:** Neuropathology and surveys of retired National Football League (NFL) players suggest that chronic brain damage is a frequent result of a career in football. There is limited information on the neurological statuses of living retired players. This study aimed to fill the gap in knowledge by conducting in-depth neurological examinations of 30- to 60-year-old retired NFL players.

**Hypothesis:** In-depth neurological examinations of 30- to 60-year-old retired players are unlikely to detect objective clinical abnormalities in the majority of subjects.

**Study Design:** A day-long medical examination was conducted on 45 retired NFL players, including state-of-the-art magnetic resonance imaging (MRI; susceptibility weighted imaging [SWI], diffusion tensor imaging [DTI]), comprehensive neuropsychological and neurological examinations, interviews, blood tests, and APOE (apolipoprotein E) genotyping.

**Level of Evidence:** Level 3.

**Methods:** Participants' histories focused on neurological and depression symptoms, exposure to football, and other factors that could affect brain function. The neurological examination included Mini-Mental State Examination (MMSE) evaluation of cognitive function and a comprehensive search for signs of dysarthria, pyramidal system dysfunction, extrapyramidal system dysfunction, and cerebellar dysfunction. The Beck Depression Inventory (BDI) and Patient Health Questionnaire (PHQ) measured depression. Neuropsychological tests included pen-and-paper and ImPACT evaluation of cognitive function. Anatomical examination SWI and DTI MRI searched for brain injuries. The results were statistically analyzed for associations with markers of exposure to football and related factors, such as body mass index (BMI), ethanol use, and APOE4 status.

**Results:** The retired players' ages averaged 45.6 ± 8.9 years (range, 30-60 years), and they had 6.8 ± 3.2 years (maximum, 14 years) of NFL play. They reported 6.9 ± 6.2 concussions (maximum, 25) in the NFL. The majority of retired players had normal clinical mental status and central nervous system (CNS) neurological examinations. Four players (9%) had microbleeds in brain parenchyma identified in SWI, and 3 (7%) had a large cavum septum pellucidum with brain atrophy. The number of concussions/dings was associated with abnormal results in SWI and DTI. Neuropsychological testing revealed isolated impairments in 11 players (24%), but none had dementia. Nine players (20%) endorsed symptoms of moderate or severe depression on the BDI and/or met criteria for depression on PHQ; however, none had dementia, dysarthria, parkinsonism, or cerebellar dysfunction. The number of football-related concussions was associated with isolated abnormalities on the clinical neurological examination, suggesting CNS dysfunction. The APOE4 allele was present in 38% of the players, a larger number than would be expected in the general male population (23%-26%).

From [†]Department of Neurology, Long Island Jewish Medical Center, New Hyde Park, New York, [‡]Department of Neurology, Hofstra North Shore–LIJ School of Medicine, Hempstead, New York, [§]ProBiomechanics LLC, Bloomfield Hills, Michigan, [||]Department of Biomedical Engineering, Bioengineering Center, Wayne State University, Detroit, Michigan, [¶]Departments of Radiology and Biomedical Engineering, Wayne State University School of Medicine, Detroit, Michigan, and [#]Emergency Nursing and Clinical Outreach, Lawrence Hospital Center, Bronxville, New York
*Address correspondence to David C. Viano, Dr Med, PhD, ProBiomechanics LLC, 265 Warrington Road, Bloomfield Hills, MI 48304-2952 (e-mail: dviano@comcast.net).
The authors reported no potential conflicts of interest in the development and publication of this manuscript.
DOI: 10.1177/1941738114540270
© 2014 The Author(s)

Downloaded from sph.sagepub.com by guest on August 18, 2014

**1871**

**Conclusion:** MRI lesions and neuropsychological impairments were found in some players; however, the majority of retired NFL players had no clinical signs of chronic brain damage.

**Clinical Relevance:** These results need to be reconciled with the prevailing view that a career in football frequently results in chronic brain damage.

**Keywords:** concussion; brain injury; neuroradiology; neuropsychology; clinical neurology; chronic traumatic encephalopathy (CTE)

Recent articles have reported an abnormal neuropathology in the brains of deceased football players.[4,22,23,49-51,60,61,72,75] Two surveys of retired National Football League (NFL) players have suggested that depression and cognitive problems occur at increased frequency.[25,26] However, there has only been 1 report of neurological, neuropsychological, and neuroradiological examinations of living, retired NFL players.[31]

This stands in contrast to the CTE of boxers. Numerous scientific articles have documented the clinical neurological findings, neuropsychological test results, and neuroradiological findings that characterize CTE in living boxers.[11,15,35,45,56,62,70,71] A well-defined neuropathologic pattern of findings for boxers has been reported with correlation to the clinical picture.[14]

The purpose of this study was to fill in this gap in our knowledge by performing clinical neurological, neuropsychological, and neuroradiological examinations on a group of living, retired NFL players. It complements other work.[10,12,13,68,69,80] As originally envisioned, the purpose of the study was to determine whether there was clinical evidence of chronic brain damage related to a career in the NFL. As a result of nonscientific factors, recruitment of study subjects stopped part way through the study, and the authors are reporting on a convenience sample of the 45 retired NFL players who were thoroughly examined.

## MATERIALS AND METHODS

The methodology for this clinical research was modeled after a similar study of 18 retired and active boxers.[11] The boxers underwent neurological examination, electroencephalography (EEG), brain computed tomography scans, and neuropsychological testing. Most of the boxers (16/18) had definite signs of brain damage, and all had abnormal results on at least 1 neuropsychological test. The conclusion was that brain damage is a frequent result of a career in professional boxing.

With the assistance of the NFL Players Association, recruitment letters were mailed to more than 5000 retired NFL players whose contact information was on file at the union. The letter explained the purpose and nature of this study. Recipients who were interested in participating in the study or who had questions about the study were asked to call the study coordinator at a confidential, dedicated telephone number. Recipients were also informed that they might be called on the telephone by the study coordinator to ask for their participation. The study coordinator randomly selected names from the list and called them on the telephone to invite their participation. As the study progressed, some of the subjects who went through the study evaluation spontaneously contacted former teammates and other retired NFL or college friends of theirs and suggested that they might also wish to participate. Some of those who were contacted in that manner called the study coordinator and expressed interest in participating. They were accepted into the study if they met the inclusion criteria (see Appendix, Supplement S1; available at http://sph.sagepub.com/content/suppl).

For this study, a more comprehensive magnetic resonance imaging (MRI) evaluation of the brain was used based on state-of-the-art methods under development at Wayne State University.[27-30,37-41,53,73,74,77] Emphasis was also placed on using modern neuropsychological tests, clinical examination, and obtaining a detailed neurological and concussion history. The research methods were subjected to institutional review board review and approval at Wayne State University, including informed consent, methodologies, confidentiality, and statistical analysis. Details regarding the recruitment process and exclusion criteria are available in Supplement S1 (see Appendix).

Each subject underwent all study-related testing during 1 day at the medical center. Written informed consent was obtained from each subject by the study coordinator on the day of testing before any evaluations were performed.

Each subject underwent a comprehensive clinical neurological examination performed by the same experienced neurologist. Details of the neurological examination and history-taking procedures can be found in Supplement S2 (see Appendix, available at http://sph.sagepub.com/content/suppl).

Each subject had blood drawn that was sent to an accredited commercial laboratory for the following tests: complete blood count (CBC), routine chemistries, liver function, thyroid-stimulating hormone (TSH), B12, and folate and Lyme antibodies. A portion of each subject's serum sample was frozen and sent to Duke University Medical Center in North Carolina for APOE (apolipoprotein E) genotyping.

A registered nurse (RN) administered the Patient Health Questionnaire (PHQ) and the Coding Race/Ethnicity in the Columbia University ADRC questionnaire to each subject. The RN also supervised administration of the computerized ImPACT test to each subject.

A board-certified neuropsychologist (PhD) or senior-level neuropsychology PhD candidate (in 42 cases, the neuropsychologist was not affiliated with the NFL or any of its teams; in 3 cases, the neuropsychologist was a team neuropsychologist for an NFL team) administered a battery of

Downloaded from sph.sagepub.com at request on August 18, 2014

pen-and-paper neuropsychological tests to each subject. This test battery was put together by a committee of 5 National Academy of Neuropsychology members, 3 of whom were not affiliated with the NFL or its teams. Details regarding the written neuropsychological test administration can be found in Supplement S3 (see Appendix, available at http://sph.sagepub.com/content/suppl).

Each subject was assigned an integer score for each aspect of the testing results. Details of the scoring system can be found in Supplement S4 and Table S1 (see Appendix, available at http://sph.sagepub.com/content/suppl).

### Neuroradiology Imaging Protocol

The MRI protocol consisted of baseline T1, T2, T2* gradient echo, and fluid attenuated inversion recovery (FLAIR) sequences, as well as susceptibility weighted imaging (SWI) and diffusion tensor imaging (DTI) sequences. The imaging parameters are given in Table S2 (see Appendix, available at http://sph.sagepub.com/content/suppl). The total data acquisition time lasted approximately 1 to 1.5 hours. The SWI sequence consists of a strongly susceptibility weighted, low bandwidth (80 Hz/pixel) 3D FLASH sequence (TR [repetition time]/TE [echo time] = 50 ms/40 ms, FA = 15°) with first-order flow compensated in all 3 orthogonal directions.[78] The SWI sequence included the majority of the cerebral hemispheres and the posterior fossa, with an acquisition time of approximately 7 minutes and 42 seconds. DTI data were collected with 6 gradient directions uniformly spaced on the surface of a $b = 1000$ s/mm$^2$ sphere (TR/TE = 6500 ms/100 ms, voxel size = $2 \times 2 \times 3$ mm$^3$, EPI factor = 96, time duration = 7 minutes and 43 seconds).

#### Postprocessing

Susceptibility weighted imaging data were reviewed by a neuroradiologist and MR scientist, both with more than 30 years' experience, and suspicious hemorrhagic lesions were confirmed by both. The total number and volume of hemorrhagic lesions detected by SWI were analyzed and quantified with our in-house developed software package (Signal Processing for NMR [SPIN]; MRI Institute for Biomedical Research).

#### DTI Data Processing

A global white matter (WM) fractional anisotropy (FA) mean analysis was performed by using an approach described in previous work[6] that has been shown to be sensitive to mild traumatic brain injury (TBI). In this approach, each subject's FA map was first spatially normalized to an FA template (mean, 50 normal controls) and then segmented using SPM8 to give gray matter (GM), WM, and cerebrospinal fluid (CSF) masks. A WM-only FA image was then generated to give a global WM FA.

All MRI interpretations were performed by board-certified neuroradiologists. Each subject was then given an integer score for anatomical MRI results and DWI results. The scoring for SWI was as follows: 0 = no microbleeds, 1 = 1 or more microbleeds. Anatomical MRI scoring was as follows: 1 = completely normal;

2 = pituitary microadenoma and/or empty sella; 3 = small cavum septum pellucidum (no cavum vergae, no enlarged ventricles); 4 = large cavum septum pellucidum plus cavum vergae plus enlarged ventricles; 5 = unidentified bright objects (UBOs), cerebral white matter, 3 or fewer; 6 = cortical scar, cerebral; 7 = pituitary macroadenoma; 8 = old small intraparenchymal hemorrhage. Subjects can be assigned more than 1 integer score for anatomical MRI.

### Statistics

Descriptive statistics were used to characterize the information and to study correlations and associations among the results. The various demographic and personal history data were correlated to the medical findings using stepwise logistic regression using cumulative, general, or binary logit or linear regression.

## RESULTS

The biometric and clinical data on the sample of 45 retired NFL players is given in Tables S3 and S4 (see Appendix, available at http://sph.sagepub.com/content/suppl). The mean age of the retired players was $45.6 \pm 8.9$ years (range, 30-60 years). The mean number of years in the NFL and NFL training camps was $6.8 \pm 3.2$ years (range, up to 14 years). The players had $4.2 \pm 0.4$ years (range, 3.0-5.0 years) of college football, $3.5 \pm 0.9$ years (range, up to 5 years) of high school, and $2.5 \pm 2.3$ years (range, up to 9 years) of pre–high school football experience. Their mean height was $75.0 \pm 1.8$ inches (range, 71-79 inches), and their mean weight was $255 \pm 46$ lb (range, 178-365 lb). The mean body mass index (BMI) was $31.4 \pm 4.8$ kg/m$^2$ (range, 22.6-42.1 kg/m$^2$).

The players in the sample reported having $6.9 \pm 6.2$ concussions (range, up to 25) in the NFL. Thirty-four subjects (75.6%) reported that they had sustained 3 or more concussions during their NFL careers. Overall, they reported experiencing $9.0 \pm 6.9$ concussions (range, up to 25) in all football play. The primary football positions played in the NFL were: 14 linebackers, 9 offensive linemen, 8 defensive linemen, 8 defensive backs, 2 wide receivers, 2 running backs, 1 tight end, and 1 who played both offensive and defensive line. There were no NFL quarterbacks in the sample. Almost all subjects had played on special teams at some point during their NFL careers.

### Symptoms

All subjects were asked 9 specific questions relating to cognition and memory. Twenty-three subjects endorsed between 0 and 2 of these symptoms, 11 endorsed between 3 and 5 of these symptoms, and 11 endorsed between 6 and 9 of these symptoms. Every subject was asked 9 specific questions relating to anxiety and/or depression. Nineteen subjects reported 0 or 1 of these symptoms, 14 reported 2 or 3 of these symptoms, and 12 reported 4 to 8 of these symptoms.

### Family History

Ten subjects had a family history of Alzheimer disease, dementia, or "senility." Eight subjects had a family history of

Downloaded from sph.sagepub.com by guest on August 18, 2014

depression, anxiety, and/or suicidality. Nine subjects had a family history of stroke. Four subjects had a family history of other neurological diseases.

## Clinical Neurological Examination

The clinical neurological examination results have been broken down into 3 categories in Table S5 (see Appendix, available at http://sph.sagepub.com/content/suppl): mental status, examination of CNS functions excluding mental status, and examination of peripheral nervous system functions.

## Bedside Mental Status

Thirty-eight subjects were normal, 3 subjects could only name 10 or fewer "B" words in 1 minute, 3 subjects could only name 3 or fewer US presidents in reverse order, 1 subject was unable to give the correct meaning of a well-known proverb, and 1 subject had bilateral palmomental reflexes. The range of Mini-Mental State Examination (MMSE) scores was between 25 and 30. For more details, see Supplement S5 (see Appendix, available at http://sph.sagepub.com/content/suppl).

## Central Nervous System Examination

Thirty-four subjects were normal, 3 subjects had Babinski signs (2 bilateral and 1 unilateral), 2 subjects had abnormal smell sensation, 2 subjects had mild tremors (sustention and/or intention, not resting), 1 subject had minimal horizontal nystagmus on lateral gaze, 1 subject had diminished pin sensation unilaterally on the chin, and 4 subjects had abnormal dynamic visual acuity testing. None of the subjects had any parkinsonian signs.

## Peripheral Nervous System Examination

Twenty-seven subjects were normal, and 18 subjects were abnormal. Seven subjects had signs of lumbar radiculopathy, 4 subjects had signs of cervical radiculopathy, 7 subjects had signs of carpal tunnel syndrome, 6 subjects had signs of ulnar nerve dysfunction, and 3 subjects had signs of diabetic polyneuropathy. Some subjects had more than 1 peripheral nervous system (PNS) abnormality.

## APOE Genotyping

Seventeen subjects (37.8%) had at least one allele 4. Two of these had 2 copies of allele 4, while 2 were paired with an allele 2 and 13 were paired with an allele 3. Four subjects had 1 copy of allele 2. Two of these were paired with an allele 4, and the other 2 were paired with an allele 3. Twenty-four subjects had 2 copies of allele 3. Three subjects with at least 1 copy of allele 4 had a family history of Alzheimer disease or dementia. Seven of 28 subjects not carrying an allele 4 had a family history of Alzheimer disease, dementia, or senility. One of the allele 4 carriers had a family history of depression, anxiety, or suicidality, compared with 7 of 28 not carrying that allele who had such a family history. Five of the allele 4 carriers were offensive linemen, 5 were linebackers, 4 were defensive backs, 2 were wide receivers, and 1 was a running back. None were defensive linemen.

## Depression Testing

On the Beck Depression Inventory (BDI), 30 subjects scored between 0 and 13 (not depressed), 9 subjects scored between 14 and 19 (mildly depressed), 3 subjects scored between 20 and 28 (moderately depressed), and 3 subjects scored 29 or higher (markedly depressed). Nine subjects fulfilled the criteria for either major depression or other depression on the PHQ. Eight of these 9 subjects also scored 14 or higher on the BDI.

## Laboratory Results

There were no major abnormalities. For details, see Supplement S6 (see Appendix, available at http://sph.sagepub.com/content/suppl).

## Anatomical MRI

Two cases were found with abnormally enlarged ventricles and thin corpus callosum, which suggests brain atrophy. The brain images can be found in Supplement Figures S1 and S2 (see Appendix, available at http://sph.sagepub.com/content/suppl), which show that both cases had significant atrophy of the brain.

Thirty-four subjects had a cavum septum pellucidum (CSP) on their MRIs. Three of these were large and associated with a cavum vergae, and 31 were small. There were no other anatomical MRI findings that occurred with any significant frequency. There were 3 subjects with large CSPs: One (patient 5) played 4 years in the NFL, 4 years in college, 4 years in high school, and 6 years of pre–high school football. He reported 4 total concussions (2 in the NFL) and 10 dings (all in the NFL, see supplement S2 for definition of "ding"; Appendix). The second player (patient 10) played 13 years in the NFL, 4 years in college, 4 years in high school, and 4 years in pre–high school. He reported 25 concussions (all in the NFL) and 30 total dings (25 in the NFL). The third player (patient 36) played 1 year in the NFL (went to 2 NFL training camps, thus would have been considered a "control" subject under the original study criteria), 5 years in college, 2 years in high school, and 1 year before high school. He reported 5 concussions (0 in the NFL) and 6 dings (0 in the NFL).

One subject had a pituitary macroadenoma. Two subjects had developmental venous abnormalities. There were no extra-axial collections and minimal unidentified bright objects.

## Neuroradiology/SWI

Susceptibility weighted imaging detected 4 cases with microbleeds and 1 case (patient 30) with abnormal vascular malformation (possible telangiectasia). Table 1 shows the SWI lesion number and total volume (mm$^3$) for the 4 cases in the study.

One subject was 57 years old (patient 10), played 13 years in the NFL, had more than 20 NFL concussions, normal CNS examination, MMSE score of 27, BDI 4, carried the APOE4 allele (E3/E4), and has a history of high cholesterol. Figure 1 shows the microbleed. The second subject was 30 years old (patient 16), played 5 years in the NFL, had 5 NFL concussions, had a

Downloaded from sph.sagepub.com by guest on August 18, 2014

**Table 1. Detailed data on 4 players**

| | Case ID | | | |
|---|---|---|---|---|
| | **10** | **16** | **22** | **31** |
| Age, y | 57 | 30 | 32 | 52 |
| Years of NFL Play | 13 | 5 | 8 | 2 |
| No. of Concussions | 20+ | 5 | 8 | 0 |
| Bleed Location | CR | FP GM | CR | BS |
| Volume, mm$^3$ | 21 | 434 | 62 | 57 |
| T1 | Enlarged ventricles | − | − | − |
| CSP/CV | +/+ | +/− | +/− | +/− |
| MMSE | 27 | 28 | 26 | 29 |
| BDI | 4 | 3 | 17 | 8 |
| APOE4 Allele | + | + | − | − |
| Prehistory | None | Severe TBI* | None | None |
| Cardiovascular Record | High cholesterol | Hypertension | None | Hypertension |

APOE, apolipoprotein E; BDI, Beck Depression Inventory; BS, brain stem; CR, corona radiata; CSP/CV, cavum septi pellucidi/cavum vargae; CVI, cavum veli interpositi; FP GM, left frontal gray matter; MMSE, Mini-Mental State Examination; TBI, traumatic brain injury. All central nervous system examinations were normal.
*Left parietal skull surgery with thick dura under it.



Figure 1. Microbleed in a 57-year-old player (patient 10). Both SWI magnitude and phase images detect an isolated microbleed at the subcortical gray matter/white matter (GM/WM) junction, while conventional FLAIR and T2-weighted images at the same level fail to visualize the microbleed. Red arrows point to a hemorrhagic lesion, which is not shown on the T2 and FLAIR images. FLAIR, fluid attenuated inversion recovery; SWI, susceptibility weighted imaging.

normal CNS examination, normal MMSE and BDI, had the APOE4 allele (E3/E4), had a serious head injury with possible skull fracture when he was 9 years old, and has a history of hypertension. Figure S3 in the supplemental information shows the microbleed (see Appendix, available at http://sph.sagepub.com/content/suppl). The third subject (patient 22) was 32 years old, played 8 years in the NFL, had 8 NFL concussions, normal CNS examination, BDI 17, MMSE 26, no history of medical illnesses, and did not carry the APOE4 allele (E3/E3). Figure 2 shows the microbleed. The fourth player (patient 31) was 52 years old, played only 2 years in the NFL as a backup, had 0 concussions in the NFL (or for that matter, at any level of football), completely normal clinical examinations, did not carry the APOE4 allele (E3/E3), and has a history of hypertension and treated CLL. He is one of the subjects designated as having limited NFL exposure in our article. Figure S4 in the supplemental information shows the microbleed (see Appendix, available at http://sph.sagepub.com/content/suppl).

Downloaded from sph.sagepub.com by guest on August 18, 2014



Figure 2. Microbleed in a 32-year-old player (patient 22). Both SWI magnitude and phase images demonstrate a microbleed (arrows) in left superior corona radiata, which conventional MRI (FLAIR and T2-weighted) did not detect. FLAIR, fluid attenuated inversion recovery; MRI, magnetic resonance imaging; SWI, susceptibility weighted imaging.

## Diffusion Tensor Imaging Findings

The average DTI FA mean, peak, and mean/peak for the sample's whole-brain global white matter is given in Table S5 in the supplement (see Appendix).

## Neuropsychology

None of the players had dementia (defined as impairments on 2 or more spheres of cognition that interfere with activities of daily living). Twenty-eight players (62%) had no impairments (score 0 or 1). Eleven (24%) players had impairments on 1 or 2 of the subtests with normal Test of Memory Malingering (TOMM) and verbal IQ (score 2 or 3). Six players (13%) had borderline or impaired performance on 1 or more subtests, but the results are confounded by verbal IQ less than 80 or lack of effort as determined by the TOMM results. The overall results of the written neuropsychological test battery are provided in Tables S4 and S5 in the supplement (see Appendix).

Computerized neuropsychological testing was scored by a computer, and the results generated included raw scores and composite scores on various aspects of memory/cognitive function. In the absence of a control group, we used the composite test scores for statistical analysis.

## Statistical Analysis

In the absence of a control group, we performed a set of statistical analyses aimed at determining if there were associations between a representative group of "epidemiological" variables ($x$) that serve as markers of football exposure, head injury exposure, and non-football- or head injury–related variables such as ethanol use, hereditary factors, and BMI and the results of the diagnostic tests ($y$) performed on the subjects. The football-related variables were chosen as markers of total football exposure, football exposure before college, football exposure at the college level, and football exposure in the NFL. Statistical analyses of the association

between these variables and the results of MRI, neuropsychological testing, clinical neurological testing including mental status, and depression testing can help to elucidate the role of these exposures in causing any abnormalities or other findings detected by the clinical tests.

There was no statistical association between the anatomical MRI findings and any football exposure–related variables. There was a correlation between the presence of findings on SWI MRI and family history of neurological disease, employment status, and number of dings in football at all levels ($\chi^2 = 2.75$, $df = 6$, $Pr > \chi^2 = 0.8399$ for the Hosmer and Lemeshow goodness of fit). This indicates that the presence of findings on SWI MRI might be because of both genetic and environmental (ie, number of dings) factors. SWI microbleeds were related to the number of dings in football ($\chi^2 = 0.276$, $df = 4$, $Pr > \chi^2 = 0.9913$ for the Hosmer and Lemeshow goodness of fit). None of the other "$x$" variables related to playing in the NFL correlated with the presence of microbleeds on SWI MRI.

Peak FA was negatively associated with presence of the APOE4 allele, participation in other contact sports besides football in high school and/or college, and with ever having been "dinged" in football at any level. Peak FA was positively associated with 1 marker of inappropriate ethanol use, employment status, and number of years of participation in pre–high school football. Mean FA was negatively associated with the number of concussions sustained in the NFL.

Depression scores were not statistically associated with any of the markers of football exposure. There was no statistical association between written neuropsychological test results and any football exposure–related variables. Written neuropsychological test results were statistically associated with BMI and ethanol usage.

In regard to computerized neuropsychological subtest results, there were statistical associations with having played a line position (visual memory subtest), years of pre-NFL football play

Downloaded from sph.sagepub.com at HINARI on August 18, 2014

(verbal memory and motor subtests), the number of "dings" sustained in NFL play (motor subtest), BMI (visual memory), and ethanol usage (multiple subtests). Additional discussion of statistical associations is provided in Supplement S7 and Table S6 (see Appendix, available at http://sph.sagepub.com/content/suppl).

## DISCUSSION

This report provides findings of comprehensive neurological, neuropsychological, and neuroradiological evaluations of 45 retired NFL players between the ages of 30 and 60 years. Up until now, there have been 3 mail/telephone surveys of retired NFL players, a number of neuropathological case reports, and 1 clinical evaluation of older retired NFL players in the medical literature.[4,22,23,25,26,31,49-51,60,61,75] There are a number of inherent methodological weaknesses in mail/telephone surveys that cast doubt on their validity and reliability. One major limitation of these surveys is the absence of any objectively verified reports of clinical, neuropsychological, or neuroradiological examinations by physicians on any of the survey respondents. The neuropathological cases that have been reported in the scientific literature have not included detailed reports of clinical, neuropsychological, or neuroradiological findings by physicians on the subjects prior to their demise.[4,22,23,49-51,60,61,75] The medical community is thus confronted by a neuropathological picture without clinical correlation and a dearth of detailed clinical reports of neurological, neuropathological, or neuroradiological findings in living, retired NFL players. The present report is intended to fill in this gap in our knowledge.

The absence of clinical evidence of dementia, dysarthria, parkinsonism, or cerebellar dysfunction in the retired players stands in stark contrast to boxers, who often showed signs of dysarthria, dementia, parkinsonism, pyramidal tract dysfunction, and/or cerebellar dysfunction.[11,13,15,35,45,54,62,70,71] There was a statistical association between the presence of abnormalities on the clinical CNS examination and the total number of football concussions sustained at all levels of football. This suggests that mild clinical abnormalities may be the result of sustaining a relatively greater number of football concussions at all levels of play. Whether this is related to CTE is not demonstrated by these data. For example, Roberts[70] specifically excluded the presence of isolated abnormalities, such as an isolated Babinski sign, as evidence of CTE.

Many more subjects had clinical evidence of PNS dysfunction than CNS dysfunction on clinical examination. The signs of diabetic polyneuropathy found in 3 subjects cannot be attributed to the effects of football-related trauma, but the lumbar and cervical radiculopathies and the ulnar and median nerve compressions found in the subjects most likely are of traumatic origin.

The clinical mental status evaluation did not reveal any subjects with dementia. Among college graduates in the general population, MMSE scores of 24 or lower indicate dementia, and

the lowest score among the study subjects was 25 (subject 25). If one uses a clinical definition of dementia being characterized by disorientation, confusion, and memory loss, there were no study subjects who met these criteria either. If one defines dementia as impairments in multiple spheres of cognitive and memory functions that adversely affect daily activities, there were no study subjects who met these criteria either. There was a statistical association between the presence of abnormalities on clinical mental status testing and the number of years of college football played. This suggests that pre-NFL football exposure might result in mild mental status abnormalities years later.

### Depression

Using the BDI criteria, the 15 subjects (33%) with any severity of depression is higher than the reported prevalence of depression in the general population (15%-20%). The 6 subjects with moderate or severe depression (13.3%) are more in line with the overall population numbers. Nine players (20%) met the PHQ criteria for depression, which is in line with the general population prevalence. The evidence in this study does not support the contention that a career in the NFL is causally related to later-life depression. For further discussion, see Supplement S8 (see Appendix, available at http://sph.sagepub.com/content/suppl).

### APOE Genotyping

It has been suggested that people who carry at least 1 copy of the E4 allele are at increased risk of developing Alzheimer disease as a result of head trauma.[46,79] It has also been suggested that those carriers have poorer outcomes following head trauma than non–E4 carriers.[21,36,76,79] One study found that the E4 allele is a risk factor for chronic brain dysfunction in boxers.[34] Another study reported that older professional football players (still active in the sport), who were E4 carriers, performed poorer on a battery of cognitive tests than those who did not carry the E4 allele.[42] It is well known that people who carry the E4 allele have an increased risk of developing Alzheimer disease and an earlier age of onset than noncarriers.[79] Some studies indicate that the E4 allele enhances brain tau deposition.[56,79] All of these factors suggest that there might be a link between the E4 allele and chronic brain dysfunction in retired NFL players.

In all, 37.7% of the study cohort carried at least 1 copy of the E4 allele. This is higher than the 23.2% to 25.6% of men in the general population who are E4 carriers.[17,52,79] This is also higher than the 26.4% of the 53 active NFL players who carried the E4 allele in another study.[42] One might hypothesize that the APOE4 allele could be associated with athletic prowess and/or improved physical performance. Some studies have demonstrated an effect of APOE allele status on serum lipid responses to exercise and other physical activities.[16,43,59] It is also possible that the APOE gene could be linked to another gene that affects physical performance. These possibilities deserve further investigation.

The absence of a statistical association of the APOE4 genotype with any anatomical MRI, clinical neurologic, depression, or

Downloaded from sph.sagepub.com by guest on August 18, 2014

neuropsychological test results in this sample raises doubts about the possibility that APOE genotype has a clinical expression in retired NFL players 60 years and younger. The statistical association of the APOE4 genotype with FA peak on DTI is consistent with a recent report on the effects of APOE on FA in healthy non–football player volunteers.[83]

## Neuroradiology

Most of the effects of mild TBI, including sports concussion, have been reported to be occult to clinical neuroimaging, including computed tomography and conventional MRI. However, a handful of techniques are sensitive to the subtle changes of the brain after concussion,[5,41] including SWI[41] and DTI.[2,6,41,57,85] For further details on neuroradiology techniques, see Supplement S9 (see Appendix, available at http://sph. sagepub.com/content/suppl).

## Microbleeds

In this study, none of the 4 subjects with microbleeds belonged to the "control" or limited NFL exposure group (see Table 1). One subject had sustained a significant TBI and skull fracture before playing in the NFL. After brain injury, hemorrhagic lesions may undergo a series of temporal evolutions, and macrophage cells may leave hemosiderin in the bleed site.[41] The hemosiderin may stay in the brain for a long time as evidence of previous injuries. Consequently, the microbleed in this case may be attributed to a previous severe brain injury.

The microbleeds in the remaining 3 cases are likely related to head trauma occurring in football at some level. SWI-detected microbleeds can also be related to amyloid angiopathy and/or hypertension,[3,27,37] but in subjects younger than 60 years, it is more likely that they are etiologically related to head trauma. In several other studies covering hundreds of patients, including mild cognitive impairment and normal controls, microbleeds were rarely found.[3] It is not yet known whether the 9% frequency of microbleeds is higher than what might appear in an age-matched normal population; it is unusual to have more than 1 microbleed in a sample our size.[3] Statistical analysis determined an association between total number of dings reported at all levels of football and the presence of microbleeds on SWI, adding further support to the suggestion that head trauma is related to SWI microbleeds in the study subjects.

## Magnetic Resonance Diffusion Tensor Imaging

The association between number of years of pre–high school and high school football and FA findings suggests that head injury occurring before the age of 18 years may result in DTI abnormalities that can still be detected many years later. This is consistent with evidence from some other studies suggesting that younger brains are more susceptible to the deleterious effects of head trauma than mature brains.[18,44,65-67] On the other hand, it has also been suggested that younger brains may be more tolerant to traumatic biomechanical forces than adult brains.[47]

The association between number of NFL concussions and the subject's mean FA suggests that concussions occurring at the

NFL level may result in DTI abnormalities that are detectable after NFL retirement. DTI could detect "microstructural" lesions that account for a patient's neurocognitive symptoms but are invisible on structural MRI.[38,57] The fact that the number of NFL concussions is not correlated with neuropsychological test results raises the possibility that NFL concussions may not result in changes in FA that can be related to clinical or neurocognitive abnormalities. Whether these DTI abnormalities correlate with tau deposition in the brain or other pathological indicators of "CTE" remains a question.

The association between measures of excessive/inappropriate ethanol use and FA results indicates that environmental factors other than trauma can affect FA or that brain-injured subjects could be predisposed to excessive ethanol use or more susceptible to the effects of ethanol. The correlation between presence of the APOE4 allele and FA findings suggests that genetic factors contribute to the amount of anisotropy in the brain.[83] Recent literature suggests that concussion and APOE4 allele are risk factors for neural behavioral impairment.[24] Other studies have demonstrated that axonal injury is a progressive process instead of a single event.[8] This suggests that sports concussion makes those individuals with APOE4 allele genotype more susceptible to WM injury.

## Anatomical MRI

Three subjects had large CSPs on MRI. Large CSPs have been radiologically and neuropathologically associated with CTE in boxers. Interestingly, there was no correlation between the presence of a large CSP and any of the "x" factors related to exposure to football and/or head trauma. The prevalence of large CSPs in this group of retired NFL players (6.6%) is much lower than the prevalence (20%) in prior CAT scan studies of retired boxers.[11,71] This is another important difference between the brains of retired football players and retired boxers. Small CSPs have not been associated with CTE in boxers. The absence of a correlation between a small CSP and any of the "x" factors in this study suggests that football-related head trauma is also not associated with small CSPs. A small CSP in 31 of 42 (74%) MRIs (excluding the 3 MRIs with a large CSP) at first glance seems to be higher than what is seen in MRIs of the general population. However, review of the literature reveals that small CSPs have been seen in up to 76% of healthy subjects on 1.5-T MRIs, as were used in this study.[20,48] The radiologists interpreting the MRIs in the present study paid special attention to the septum region because of the known association between septal abnormalities and CTE of boxers.[11,14,54,71] It is possible that paying special attention to the septal region on all MRIs (not only those of football players) may result in a higher incidence of small CSPs being reported in MRIs of the general population in clinical practice.

## Written Neuropsychological Testing

None of the subjects had dementia using criteria defined as impairments in 2 or more modalities of cognition/memory (verbal and visual memory, executive functions, motor speed,

sustained attention/working memory) along with impairments in functions of daily living. Eleven players (24%) had isolated impairments on 1 or 2 subtests not rising to the level of dementia. Three of these 11 had depression (score 2 or 3 on combined depression score). It is known that depression can impair neuropsychological test performance. Nevertheless, the incidence of isolated impairments seems higher than would be expected in the general population younger than 60 years. It is difficult to be certain how this compares with the general male population in the absence of a control group and validated data on the incidence of similar impairments in a general population of similar-aged males.

Statistical analysis suggests that impaired performance on written neuropsychological test results after retirement from the sport and before the age of 60 years is related to non-football factors. The association of impairments on written neuropsychological tests with BMI is not surprising given the evidence in the medical literature linking midlife obesity with cognitive impairment or dementia.[1,19,84] The association of impairments on written neuropsychological testing with ethanol use is also not surprising as it is well known that excessive ethanol use can impair cognition.[7,81,82] These results should raise a cautionary red flag to those who would ascribe all findings of cognitive and memory dysfunction in retired NFL players to the effects of football-related head trauma.

### Computerized Neuropsychological Testing

In the absence of any association with any football-related factors, the associations between visual memory composite score and those who had played line positions and with higher BMI points more toward an effect of midlife obesity on cognition rather than a football-related etiology. The associations between verbal memory and motor composite scores and years of football play in pre–high school and college suggest that exposure to football before the NFL may impair these cognitive functions later in life. The association between motor scores and the number of NFL "dings" suggests that NFL exposure might impair motor functions later in life. In view of the much higher prevalence of signs of PNS than CNS dysfunction in the study cohort, it is unclear what roles PNS and CNS impairments may play in these motor composite test results. In summary, computerized neuropsychological test scores were related to non-football-, non–head injury–related variables, pre-NFL football exposure, and in regard to motor scores only, the number of dings in the NFL.

Playing football at the pre-NFL level was associated with mild abnormalities on some subtest composites on computerized neuropsychological testing and FA findings on DTI MRI. Playing football in the NFL was associated with FA findings on DTI MRI and abnormalities only on the motor subtest composite of the computerized neuropsychological test battery. Length of NFL career was not associated with any abnormal findings on any part of the diagnostic test battery. In fact, none of the variables used as markers of exposure to football and football head injury were associated with abnormal findings on the great majority of the diagnostic tests that were performed. Non-football-related head trauma was associated with DTI MRI FA findings and abnormalities on some subtest composites of the computerized neuropsychological test battery, indicating that the effects of non-football-related head trauma must be considered when evaluating the neurological status of retired NFL players. Non–head trauma–related variables such as BMI, inappropriate/ excessive ethanol use, hereditary factors, and social factors were associated with at least as many, and perhaps more, abnormal or poorer performances on various parts of the entire test battery than were head trauma– and football-related factors. Others[9] have pointed out the influence of non–head trauma– related factors on neuropsychological test results. They reported poorer test results with obstructive sleep apnea and consequent hypoxemia, which may be a factor in football linemen.

### Is There Chronic Brain Damage?

Some have claimed that there is an "epidemic" of chronic brain injury due to the cumulative effects of head impacts in NFL players.[4,22,23,49-51,60,61,72,75] They have suggested that chronic brain damage is a frequent occurrence in retired NFL players. The MRI scans in this study revealed probable signs of chronic brain injury in 13% (n = 6) of the players and an association between FA and football exposure. However, FA was also associated with non-football factors such as heredity (APOE status), and 87% (n = 39) of the players did not have MRI findings suggesting chronic brain injury. Eleven players (24.4%) had isolated impairments on written neuropsychological testing, which possibly are related to prior brain injuries, but the presence of these impairments was only statistically associated with non-football head injury factors such as BMI and ethanol overuse and not with any measures of football head injury exposure.

Computerized neuropsychological testing results were statistically associated with numerous factors, including both non-football and football exposures. The prevalence of depression in the cohort is similar to that of the general population.

Comprehensive neurological examinations revealed a few isolated signs of CNS dysfunction (eg, Babinski signs), but no players had dementia, dysarthria, parkinsonism, or cerebellar dysfunction. In his classic book on the subject of brain damage in boxers, Roberts[70] excluded using isolated findings such as Babinski signs alone in diagnosing chronic brain damage.

### Is the Study Cohort Representative of All NFL Retired Players?

Whether or not the study cohort is representative of the entire group of retired NFL athletes plays a major role in how these findings are interpreted. If the study group is representative, then there is not a clinical epidemic of objective neurological dysfunction in living, retired NFL players. Furthermore, the neuropathological picture that has been reported has few clinical correlates. NFL players have a significant genetic susceptibility to Alzheimer type pathology and tau pathology by dint of their increased frequency of APOE4 genotypes

Downloaded from sph.sagepub.com by guest on August 18, 2014

compared with the general population and their high frequency of reported family history of Alzheimer disease, dementia, and "senility."[56,79]

If the study group is not representative, then one needs to ask how it may differ from the entire group of retired NFL players. Have the members of the study group been exposed to more or less NFL football or football at other levels than the overall population of retired NFL players? Do the football positions played by the study subjects reflect those played by the entire population of retired players, and, if not, are the positions played by the study group subjects representative of the NFL positions more or less at risk of sustaining concussions? Are the numbers of concussions reported by the study subjects more or less than those reported by the entire group of retired NFL players? Are the members of the study group of similar ages as the entire population of retired NFL players? Did the members of the study cohort report symptoms of cognitive/memory dysfunction and depression/anxiety at similar, higher, or lower rates than the entire group of retired NFL players? Are the medical, social, and family histories reported by the study subjects representative of those of the entire population of retired NFL players?

The evidence suggests that the study cohort is representative of the entire group of retired NFL players in some respects, and when not representative, consists of subjects with an increased exposure to NFL football and an increased incidence of cognitive/memory and depression/anxiety symptoms compared with the entire group of retired NFL players. Additional discussion is provided in Supplement S11 (see Appendix, available at http://sph.sagepub.com/content/suppl).

### Limitations

The authors acknowledge many limitations of the study:

1. Control populations. This study was stopped for nonscientific reasons, limiting the number of available age-matched controls. Ideally, it should have at least 2 groups of controls: 1 group with limited duration of NFL exposure and 1 group of normal and healthy controls. They would be the ideal populations to contrast with the retired NFL players to answer the questions of (1) how an NFL career affects an individual's neurocognitive and imaging profile and (2) how playing football itself affects an individual's neurocognitive and imaging profile. This is particularly true for DTI analysis.
2. DTI analytical approaches. A global histogram approach, which is used in this study, has been reported as being sensitive to brain injury by 2 groups concurrently.[6,55] However, the data sets of both studies are more populated with moderate to severe TBI patients instead of patients with mild TBI. Given the subtle nature of possible concussion, a regional or voxel-based instead of global analysis approach could be more sensitive to microstructural changes of the brain after mild TBI.[57,58]
3. Timing point of MR scan after injury. Studies reported that metabolic levels might be normalized in the chronic stage after brain injury.[32,33] Given the nature of this study design, the subjects are post–playing stage of life, when MRI data may not be sensitive.
4. Magnetic field strength. The imaging community is migrating to 3-T magnets from the 1.5-Tesla platform used in this study. The doubled signal to noise ratio of 3-T over 1.5-T magnets provides greater potential to detect subtle changes of the brain, including possible microbleeds, white matter injury, or abnormal metabolic levels.
5. MRI spectroscopy was intended to be a part of the MRI study performed on each subject. Due to technical difficulties, adequate spectroscopy could only be obtained on 10 subjects. Because of this small number, spectroscopy results are not included in this report.

## CONCLUSION

The present study indicates that MRI detects evidence of probable chronic brain injury related to football in up to 13% of the retired players and neuropsychological testing detects evidence of isolated cognitive impairments not rising to the level of dementia and related to multiple factors, not only football/head trauma, in 24.4% of the retired players. There is no clear evidence of chronic brain damage on depression testing or neurological examination. These results need to be reconciled with the prevailing view that a career in football frequently results in chronic brain damage.

A recent report of autopsy results indicates that 34 of 35 retired professional football players' brains had evidence of "CTE" with a specific pattern of tau pathology, which correlated with a myriad of clinical symptoms ascertained by postmortem interviews with family members and some reviews of medical records.[51] There is clearly a large disconnect between that report and the clinical, neuropsychological, and neuroradiological findings in the 45 living, retired NFL players detailed here. For further details, see Supplement S10 (see Appendix, available at http://sph.sagepub.com/content/suppl).

## ACKNOWLEDGMENT

The authors were involved with the NFL's MTBI (Mild Traumatic Brain Injury) Committee during the clinical examinations conducted in this research. The examinations were sponsored by the National Football League and were coordinated with the NFL Players Association. The study was suspended and not brought to its original conclusion. The existing convenience sample was available for analysis and represents an initial view of brain injury and neuropsychological affects in a sample of retired NFL players. We appreciate the neuroradiological assistance of Thomas Naidich, MD (Professor of Radiology, Mt Sinai School of Medicine, New York, NY); Victor Haughton, MD (Professor and Chief Neuroradiology, University of Wisconsin, Madison, WI); and Chi-Sing Zee, MD (Director of Neuroradiology, USC School of Medicine, Professor of Radiology, Los Angeles, CA). We appreciate the radiology staff at ProHEALTH (Kathleen Finzel, MD, and Patricia Roche, DO)

and MR Research Center of Wayne State University (Yang Xuan, BS; Ramtilak Gattu, MS; and Randall R. Benson, MD) and the neuropsychological expertise and assistance of Mark R. Lovell, PhD; Paul Mattis, PhD; Kenneth Perrine, PhD; Reuben Echemendia, PhD; and Jennifer Manly, PhD, is appreciated. The APOE sample analysis was conducted at Duke University Medical Center. The statistical analysis of the data was performed under the direction of Dr Daniel R. Jeske, Director of Statistical Consulting Collaboratory, University of California, Riverside. Carl St Martin, MD, reviewed the article. The various sources of data were collated, organized, and archived by Chantal Parenteau, PhD, whose assistance is appreciated. Additional acknowledgments can be found in Supplement S12 (see Appendix, available at http://sph.sagepub.com/content/suppl).

## REFERENCES

1. Anstey KJ, Cherbuin N, Budge M, Young J. Body mass index in midlife and late-life as a risk factor for dementia: a meta-analysis of prospective studies. *Obes Rev.* 2011;12:426-437.
2. Arfanakis K, Haughton VM, Carew JD, Rogers BP, Dempsey RJ, Meyerand ME. Diffusion tensor MR imaging in diffuse axonal injury. *AJNR Am J Neuroradiol.* 2002;23:794-802.
3. Ayaz M, Boikov AS, Haacke EM, Kido DK, Kirsch WM. Imaging cerebral microbleeds using susceptibility weighted imaging: one step toward detecting vascular dementia. *J Magn Reson Imaging.* 2010;31:142-148.
4. Baugh CM, Stamm JM, Riley DO, et al. Chronic traumatic encephalopathy: neurodegeneration following repetitive concussive and subconcussive brain trauma. *Brain Imaging Behav.* 2012;6:244-254.
5. Belanger HG, Vanderploeg RD, Curtiss G, Warden DL. Recent neuroimaging techniques in mild traumatic brain injury. *J Neuropsychiatry Clin Neurosci.* 2007;19:5-20.
6. Benson RR, Meda SA, Vasudevan S, et al. Global white matter analysis of diffusion tensor images is predictive of injury severity in traumatic brain injury. *J Neurotrauma.* 2007;24:446-459.
7. Brust JC. Ethanol and cognition: indirect effects, neurotoxicity and neuroprotection; a review. *Int J Environ Res Public Health.* 2010;7:1540-1557.
8. Büki A, Povlishock JT. All roads lead to disconnection? Traumatic axonal injury revisited. *Acta Neurochir (Wien).* 2006;148:181-193.
9. Canessa N, Castronovo V, Cappa SF, et al. Neurocognitive impairment in obstructive sleep apnea. Obstructive sleep apnea: brain structural changes and neurocognitive function before and after treatment. *Chest.* 2012;141:1601-1610.
10. Casson IR, Pellman EJ, Viano DC. Concussion in the National Football League: an overview for neurologists. *Neurol Clin.* 2008;26:217-241.
11. Casson IR, Siegel O, Sham R, Campbell EA, Tarlau M, DiDomenico A. Brain damage in modern boxers. *JAMA.* 1984;251:2663-2667.
12. Casson IR, Viano DC, Powell JW, Pellman EJ. Twelve years of National Football League concussion data. *Sports Health.* 2010;2:471-483.
13. Casson IR. Do the 'facts' really support an association between NFL players' concussions, dementia and depression? *Neurol Today.* 2010;June 3:6-7.
14. Corsellis JA, Bruton CJ, Freeman-Browne D. The aftermath of boxing. *Psychol Med.* 1973;3:270-303.
15. Critchley M. Medical aspects of boxing, particularly from a neurological standpoint. *Br Med J.* 1957;1:357-362.
16. Bray MS, Hagberg JM, Pérusse L, et al. The human gene map for performance and health related fitness phenotypes: the 2006-2007 update. *Med Sci Sports Exerc.* 2009;41:35-73.
17. Eichner JE, Dunn ST, Perveen G, Thompson DM, Stewart KE, Stroehla BC. Apolipoprotein E polymorphism and cardiovascular disease: a huge review. *Am J Epidemiol.* 2002;155:487-495.
18. Field M, Collins MW, Lovell MR, et al. Does age play a role in recovery from sports related concussion? A comparison of high school and collegiate athletes. *J Pediatr.* 2003;142:546-553.
19. Fitzpatrick AL, Kuller LH, Lopez OL, et al. Midlife and late-life obesity and the risk of dementia: cardiovascular health study. *Arch Neurol.* 2009;66:336-342.
20. Flashman LA, Roth RM, Pixley HS, et al. Cavum septum pellucidum in schizophrenia: clinical and neuropsychological correlates. *Psychiatry Res.* 2007;154:147-155.
21. Friedman G, Froom P, Sazbon L, et al. Apolipoprotein E-e4 genotype predicts a poor outcome in survivors of traumatic brain injury. *Neurology.* 1999;52:244-248.
22. Gavett BE, Cantu RC, Shenton M, et al. Clinical appraisal of chronic traumatic encephalopathy: current perspectives and future directions. *Curr Opin Neurol.* 2011;24:525-531.
23. Gavett BE, Stern RA, McKee AC. Chronic traumatic encephalopathy: a potential late effect of sport-related concussive and subconcussive head trauma. *Clin Sports Med.* 2011;30:179-188.
24. Giza CC, Kutcher JS, Ashwal S, et al. Summary of evidence-based guideline update: evaluation and management of concussion in sports: report of the Guideline Development Subcommittee of the American Academy of Neurology. *Neurology.* 2013;80:2250-2257.
25. Guskiewicz KM, Marshall SW, Bailes J, et al. Recurrent concussion and risk of depression in retired professional football players. *Med Sci Sports Exerc.* 2007;39:903-909.
26. Guskiewicz KM, Marshall SW, Jordan BD, et al. Association between recurrent concussion and late-life cognitive impairment in retired professional football players. *Neurosurgery.* 2005;57:719-726.
27. Haacke EM, DelProposto ZS, Chaturvedi S, et al. Imaging cerebral amyloid angiopathy with susceptibility-weighted imaging. *AJNR Am J Neuroradiol.* 2007;28:316-317.
28. Haacke EM, Duhaime AC, Gean AD, et al. Common data elements in radiologic imaging of traumatic brain injury. *J Magn Reson Imaging.* 2010;32:516-543.
29. Haacke EM, Xu Y, Cheng YC, Reichenbach JR. Susceptibility weighted imaging (SWI). *Magn Reson Med.* 2004;52:612-618.
30. Haacke EM. Susceptibility weighted imaging (SWI). *Z Med Phys.* 2006;16:237.
31. Hart J, Kraut M, Womack K, et al. Neuroimaging of cognitive dysfunction and depression in aging retired National Football League players. *JAMA Neurol.* 2013;70:326-335.
32. Holshouser BA, Ashwal S, Luh GY, et al. Proton MR spectroscopy after acute central nervous system injury: outcome prediction in neonates, infants, and children. *Radiology.* 1997;202:487-496.
33. Holshouser BA, Tong KA, Ashwal S, et al. Prospective longitudinal proton magnetic resonance spectroscopy imaging in adult traumatic brain injury. *J Magn Reson Imaging.* 2006;24:33-40.
34. Jordan BD, Relkin NR, Ravdin LD, Jacobs AR, Bennett A, Grandy S. Apolipoprotein E e4 associated with chronic traumatic brain injury in boxing. *J Am Med Soc.* 1997;278:136-140.
35. Jordan BD. Chronic neurologic injuries in boxing. In: Jordan BD, ed. *Medical Aspects of Boxing.* Boca Raton, FL: CRC Press; 1993:177-185.
36. Katzman R, Galasko DR, Saitoh T, et al. Apolipoprotein e4 and head trauma: synergistic or additive risks? *Neurology.* 1996;46:889-892.
37. Kirsch W, McAuley G, Holshouser B, et al. Serial susceptibility weighted MRI measures brain iron and microbleeds in dementia. *J Alzheimers Dis.* 2009;17:599-609.
38. Kou Z, Benson R, Haacke EM. Magnetic resonance imaging biomarkers of mild traumatic brain injury. In: Dambinova SA, Hayes RL, Wang KKW, eds. *Biomarkers for Traumatic Brain Injury.* London, UK: Royal Society of Chemistry; 2012:19-44.
39. Kou Z, Benson RR, Gattu R, Haacke EM, Improving the detection of diffuse axonal injury by a complementary use of advanced MRI. *J Head Trauma Rehabil.* 2008;23:351-352.
40. Kou Z, Benson RR, Haacke EM. Susceptibility weighted imaging in traumatic brain injury. In: Gillard J, Waldman A, Barker P, eds. *Clinical MR Neuroimaging,* 2nd ed. Cambridge, UK: Cambridge University; 2008.
41. Kou Z, Wu Z, Tong KA, et al. The role of advanced magnetic resonance imaging findings as biomarkers of traumatic brain injury. *J Head Trauma Rehabil.* 2010;25:267-282.
42. Kutner KC, Erlanger DM, Tsai J, Jordan B, Relkin NR. Lower cognitive performance of older football players possessing Apolipoprotein E e4. *Neurosurgery.* 2000;47:651-658.
43. Leon AS, Togashi K, Rankinen T, et al. Association of apolipoprotein E polymorphism with blood lipids and maximal oxygen uptake in the sedentary state and after exercise training in the HERITAGE family study. *Metabolism.* 2004;53:108-116.
44. Lovell MR, Collins MW, Iverson GL, et al. Recovery from mild concussion in high school athletes. *J Neurosurg.* 2003;98:296-301.
45. Martland HS. Punch drunk. *JAMA.* 1928;91:1103-1107.
46. Mayeux R, Ottoman R, Maestre G, et al. Synergistic effects of head injury and apolipoprotein e4 in patients with Alzheimer's disease. *Neurology.* 1996;45:555-557.
47. McCrory P, Collie A, Ardsson V, Davis G. Can we manage sport related concussion in children the same as in adults. *Br J Sports Med.* 2004;38:516-519.

Downloaded from sph.sagepub.com by guest on August 18, 2014

48. McCrory P. Cavum septi pellucidii—a reason to ban boxers? *Br J Sports Med.* 2002;36:157-161.

49. McKee AC, Cantu RC, Nowinski CJ, et al. Chronic traumatic encephalopathy in athletes: progressive tauopathy after repetitive head injury. *J Neuropathol Exp Neurol.* 2009;68:709-735.

50. McKee AC, Gavett BE, Stern RA, et al. TDP-43 proteinopathy and motor neuron disease in chronic traumatic encephalopathy. *J Neuropathol Exp Neurol.* 2010;69:918-929.

51. McKee AC, Stein TD, Nowinski CJ, et al. The spectrum of disease in chronic traumatic encephalopathy. *Brain.* 2013;136(pt 1):46-64.

52. Menzel HJ, Kladetzky RG, Assmann G. Apolipoprotein E polymorphism and coronary artery disease. *Arteriosclerosis.* 1983;3:310-315.

53. Morri S. *Introduction to Diffusion Tensor Imaging.* Amsterdam, Netherlands: Elsevier; 2007.

54. Morrison R. Medical and public health aspects of boxing. *JAMA.* 1986;255:2475-2480.

55. Newcombe VF, Williams GB, Nortje J, et al. Analysis of acute traumatic axonal injury using diffusion tensor imaging. *Br J Neurosurg.* 2007;21:340-348.

56. Nicoll JAR, Roberts GW, Graham DI. Apolipoprotein E ε4 allele is associated with deposition of amyloid beta-protein following head injury. *Nat Med.* 1995;1:135-137.

57. Niogi SN, Mukherjee P. Diffusion tensor imaging of mild traumatic brain injury. *J Head Trauma Rehabil.* 2010;25:241-255.

58. Niogi SN, Mukherjee P, Ghajar J, et al. Extent of microstructural white matter injury in postconcussive syndrome correlates with impaired cognitive reaction time: a 3T diffusion tensor imaging study of mild traumatic brain injury. *Am J Neuroradiol.* 2008;29:967-973.

59. Obisesan TO, Ferrell RE, Goldberg AP, Phares DA, Ellis TJ, Hagberg JM. APOE genotype affects black-white responses of high density lipoprotein cholesterol subspecies to aerobic exercise training. *Metabolism.* 2008;57:1669-1676.

60. Omalu BI, DeKosky ST, Hamilton RL, et al. Chronic traumatic encephalopathy in a National Football League player: II. *Neurosurgery.* 2006;58:1086-1092.

61. Omalu BI, DeKosky ST, Minster RL, et al. Chronic traumatic encephalopathy in a National Football League Player: I. *Neurosurgery.* 2005;57:128-134.

62. Payne E. Brains of boxers. *Neurochirurgia (Stuttg).* 1968;11:173-188.

63. Pellman EJ, Lovell MR, Viano DC, Casson IR, Tucker A. Concussion in professional football: neuropsychological testing—part 6. *Neurosurgery.* 2004;55:1290-1305.

64. Pellman EJ, Lovell MR, Viano DC, Casson IR. Concussion in professional football: recovery of NFL and high school athletes assessed by computerized neuropsychological testing—part 12. *Neurosurgery.* 2006;58:263-274.

65. Pellman EJ, Powell JW, Viano DC, et al. Concussion in professional football: epidemiological features of game injuries and review of the literature—part 3. *Neurosurgery.* 2004;54:81-97.

66. Pellman EJ, Viano DC, Casson IR, Arfken C, Powell J. Concussion in professional football: injuries involving 7+ days out—part 5. *Neurosurgery.* 2004;55:1100-1119.

67. Pellman EJ, Viano DC, Casson IR, et al. Concussion in professional football: repeat injuries—part 4. *Neurosurgery.* 2004;55:860-876.

68. Pellman EJ, Viano DC, Tucker AM, Casson IR, Waeckerle JF. Concussion in professional football: reconstruction of game impacts and injuries. *Neurosurgery.* 2003;53:799-814.

69. Reichenbach JR, Venkatesan R, Schillinger DJ, Kido DK, Haacke EM. Small vessels in the human brain: MR venography with deoxyhemoglobin as an intrinsic contrast agent. *Radiology.* 1997;204:272–277.

70. Roberts AH. *Brain Damage in Boxers.* London, UK: Pitman Medical; 1969.

71. Ross RJ, Cole M, Thompson JS, et al. Boxers: computed tomography, EEG and neurological evaluation. *JAMA.* 1983;249:211-213.

72. Saulle M, Greenwald BD. Chronic traumatic encephalopathy: a review. *Rehabil Res Pract.* 2012;2012:816069.

73. Sehgal V, Delproposto Z, Haacke EM, et al. Clinical applications of neuroimaging with susceptibility-weighted imaging. *J Magn Reson Imaging.* 2005;22:439-450.

74. Sehgal V, Delproposto Z, Haddar D, et al. Susceptibility-weighted imaging to visualize blood products and improve tumor contrast in the study of brain masses. *J Magn Reson Imaging.* 2006;24:41-51.

75. Stern RA, Riley DO, Daneshvar DH, Nowinski CJ, Cantu RC, McKee AC. Long-term consequences of repetitive brain trauma: chronic traumatic encephalopathy. *PM R.* 2011;3(suppl 2):S460-S467.

76. Teasdale GM, Nicoll JA, Murray G, Fiddes M. Association of apolipoprotein E polymorphism with outcome after head injury. *Lancet.* 1997;350:1069-1071.

77. Tong KA, Ashwal S, Holshouser BA, et al. Diffuse axonal injury in children: clinical correlation with hemorrhagic lesions. *Ann Neurol.* 2004;56:36-50.

78. Tong KA, Ashwal S, Holshouser BA, et al. Hemorrhagic shearing lesions in children and adolescents with posttraumatic diffuse axonal injury: improved detection and initial results. *Radiology.* 2003;227:332-339.

79. Verghese PB, Castellano JM, Holtzman DM. Apolipoprotein E in Alzheimer's disease and other neurological disorders. *Lancet Neurol.* 2011;10:241-252.

80. Viano DC, Casson IR, Pellman EJ, et al. Concussion in professional football: comparison with boxing head impacts—part 10. *Neurosurgery.* 2005;57:1154-1173.

81. Victor M. Alcoholic dementia. *Can J Neurol Sci.* 1994;21:88-99.

82. Victor M. Persistent altered mentation due to ethanol. *Neurol Clin.* 1993;11:639-661.

83. Westlye L, Reinvang I, Rootwelt H, Espeseth T. Effects of APOE on brain white matter microstructure in healthy adults. *Neurology.* 2012;79:1961-1969.

84. Whitmer RA, Gunderson EP, Quesenberry CP Jr, Zhou J, Yaffe K. Body mass index in midlife and risk of Alzheimer disease and vascular dementia. *Curr Alzheimer Res.* 2007;4:103-109.

85. Wilde EA, McCauley SR, Hunter JV, et al. Diffusion tensor imaging of acute mild traumatic brain injury in adolescents. *Neurology.* 2008;70:948-955.

For reprints and permission queries, please visit SAGE's Web site at http://www.sagepub.com/journalsPermissions.nav.

# EXHIBIT 24

# JRSM Cardiovascular Disease

http://cvd.sagepub.com/

**Cerebral microbleeds: a new dilemma in stroke medicine**
Puneet Kakar, Andreas Charidimou and David J Werring
*JRSM Cardiovascular Disease* 2012 1:
DOI: 10.1177/2048004012474754

The online version of this article can be found at:
http://cvd.sagepub.com/content/1/8/22

Published by:

**⑤SAGE**

http://www.sagepublications.com

Additional services and information for *JRSM Cardiovascular Disease* can be found at:

**Email Alerts:** http://cvd.sagepub.com/cgi/alerts

**Subscriptions:** http://cvd.sagepub.com/subscriptions

**Reprints:** http://www.sagepub.com/journalsReprints.nav

**Permissions:** http://www.sagepub.com/journalsPermissions.nav

>> Version of Record - Nov 1, 2012

What is This?

Downloaded from cvd.sagepub.com by guest on October 1, 2014



# Cerebral microbleeds: a new dilemma in stroke medicine

Puneet Kakar[1] • Andreas Charidimou[2] • David J Werring[2]

[1]Department of Stroke Medicine, Imperial College Healthcare NHS Trust, London W6 8RF, UK
[2]Stroke Research Group, Department of Brain Repair and Rehabilitation, UCL Institute of Neurology and The National Hospital for Neurology and Neurosurgery, Queen Square, London WC1N 3BG, UK
Correspondence to: David J Werring. Email: d.werring@ucl.ac.uk

DECLARATIONS

**Competing interests**
There are no competing interests to declare.

**Funding**
No external funding was sought or granted for this work.

**Ethical approval**
The manuscript did not require clinical or research ethical approval.

**Guarantor**
DJW

**Contributorship**
PK and AC were responsible for manuscript production and preliminary research. DJW has overseen the entire project with primary input into manuscript formulation, editing and methodology.

**Acknowledgements**
None

## Summary

Cerebral microbleeds (CMBs) are an increasingly common neuroimaging finding in the context of ageing, cerebrovascular disease and dementia, with potentially important clinical relevance. Perhaps the most pressing clinical question is whether CMBs are associated with a clinically important increase in the risk of intracerebral haemorrhage (ICH), the most feared complication in patients treated with thrombolytic or antithrombotic (antiplatelet and anticoagulant) drugs. This review will summarize the evidence available regarding CMBs as an indicator of future ICH risk in stroke medicine clinical practice.

## Introduction

In the mid-1990s reports began to appear of small haemorrhagic lesions on magnetic resonance imaging (MRI) studies. Scharf *et al.*[1] described black dots of signal loss on T2-weighted MRI in patients with spontaneous intracerebral haemorrhage (ICH) and termed these 'haemorrhagic lacunes'. Subsequent studies using T2*-weighted gradient-echo (T2*-GRE) MRI – a technique with greater sensitivity to the signal loss from magnetic 'susceptibility' effects of blood breakdown products – detected small round black dots which have become known as 'cerebral microbleeds' (CMBs).[2] Because CMBs reflect small areas of haemorrhage, and are common in both ischaemic stroke and ICH,[3] they have caused concern regarding the risk of future ICH, especially in patients receiving antithrombotic therapy. Although randomized controlled prospective data are lacking, observational data suggest that CMBs are indeed related to an increased future stroke risk, particularly for ICH. Here, we review the available evidence with reference to common clinical

scenarios including those where the optimum management may be uncertain.

## Pathology, detection and definition of CMBs

Before considering their clinical significance, it is necessary to briefly discuss aspects of CMB pathology, detection and classification. CMBs are small perivascular haemosiderin-deposits (usually within macrophages) in the brain, generally associated with local vessel wall damage.[4] Histopathological analyses of the brains of patients with spontaneous ICH or Alzheimer's disease have shown that CMBs are located in proximity to vessels affected by two types of sporadic small vessel disease: (a) hypertensive arteriopathy and (b) cerebral amyloid angiopathy (CAA).[5] CMBs are found throughout the brain, including cortical grey and white matter, the basal ganglia and brainstem (Figure 1). A large number of cross-sectional studies have confirmed important risk factors and associations for CMBs,

JRSM Cardiovasc Dis 2012;1:22. DOI 10.1177/2048004012474754

Downloaded from cvd.sagepub.com by guest on October 1, 2014

Journal of the Royal Society of Medicine Cardiovascular Disease

## Figure 1

(a) A T2*-weighted gradient-echo (T2*-GRE) magnetic resonance imaging (MRI) scan of a patient with cognitive decline, showing multiple strictly lobar cerebral microbleeds (CMBs) meeting the Boston criteria for probable cerebral amyloid angiopathy. Note the posterior/occipital distribution of CMBs, characteristic of amyloid angiopathy. (b) T2*-GRE MRI of a patient with a history of long-standing hypertension: CMBs are predominantly located in deep brain structures including the basal ganglia and thalami, consistent with hypertensive angiopathy (including arteriolosclerosis and fibrohyalinosis). CMBs are also visible in lobar brain regions




## Table 1

Boston criteria for diagnosis of CAA-related haemorrhage

1. Definite CAA
   Full postmortem examination demonstrating:
   - Lobar, cortical or corticosubcortical haemorrhage
   - Severe CAA with vasculopathy
   - Absence of other diagnostic lesion

2. Probable CAA with supporting pathology
   Clinical data and pathological tissue (evacuated haematoma or cortical biopsy) demonstrating:
   - Lobar, cortical or corticosubcortical haemorrhage
   - Some degree of CAA in specimen
   - Absence of other diagnostic lesion

3. Probable CAA
   Clinical data and MRI or CT demonstrating:
   - Multiple haemorrhages restricted to lobar, cortical or corticosubcortical regions (cerebellar haemorrhage allowed)
   - Age ≥ 55 years
   - Absence of other cause of haemorrhage

4. Possible CAA
   Clinical data and MRI or CT demonstrating:
   - Single lobar, cortical or corticosubcortical haemorrhage
   - Age ≥ 55 years
   - Absence of other cause of haemorrhage

Criteria established by the Boston Cerebral Amyloid Angiopathy Group: Steven M Greenberg MD PhD, Daniel S Kanter MD, Carlos S Kase MD and Michael S Pessin MD. See Ref. 11 CAA, cerebral amyloid angiopathy; MRI, magnetic resonance imaging; CT, computed tomography

including age, hypertension, history of stroke (both ischaemic and haemorrhagic) and neuro-imaging markers of small vessel disease including white matter changes and lacunar infarcts.[6,7] There is increasing (albeit largely indirect) evidence that the distribution of CMBs reflects the underlying type of microangiopathy (Figure 1). Strictly lobar CMBs are considered likely to be due to CAA, because of their association with known risk factors for CAA including apolipoprotein E e4 genotype.[8] Furthermore, an *in vivo* positron emission tomography amyloid-β imaging study using the ligand Pittsburgh compound B, found that CMBs in patients with CAA corresponded to local regions of high amyloid-β concentration.[9] By contrast, deep CMBs are considered most likely to be due to hypertensive arteriopathy because of their associations with hypertension and other imaging manifestations of hypertensive small vessel disease.[10] In clinical practice these arteriopathies (CAA and hypertension-related) are frequently likely to coexist and interact. Diagnostic criteria for CAA have been developed (the 'Boston criteria') (Table 1) with the aim of diagnosing CAA *in vivo* without recourse to tissue biopsy. These criteria include the presence of *strictly*

lobar ICH, including CMBs, and have been shown to have very high specificity.[11] However, the sensitivity of these criteria may be lower, and some patients with a mixed deep and lobar distribution of CMBs, although not fulfilling the Boston criteria, are likely to harbour some degree of CAA. New biomarkers for CAA may help improve the sensitivity of these diagnostic criteria without sacrificing their specificity.

The radiological detection of CMBs is reliant on the paramagnetic property of haemosiderin which disrupts the local magnetic field, causing

Downloaded from cvd.sagepub.com by guest on October 1, 2014

**Figure 2**
**(a) Susceptibility-weighted imaging (SWI) is currently the most sensitive means for the detection of cerebral microbleeds (CMBs). Although SWI can detect significantly more CMBs compared with conventional T2\*-weighted gradient-recalled echo (T2\*-GRE) magnetic resonance imaging, whether it has 'added value' in clinical practice is still under investigation**

 

'inhomogeneities' and focal signal loss (known as 'susceptibility effect') on appropriate MRI sequences including T2\*-GRE.[12] Newer MRI techniques to detect CMBs include susceptibility-weighted imaging and its variants, which greatly increases the sensitivity of CMB detection (Figure 2) by combining both the magnitude and phase images to increase susceptibility-related tissue contrast.[13] Detection of CMB is influenced by a variety of sequence parameters including the echo time (TE), field strength and slice thickness.[14] Moreover, most current methods of defining CMBs rely on manual visual rating of scans, leading to substantial variations in agreement between observers. In an effort to improve agreement about CMB presence, number and location, two rating scales have been developed and validated for use in classifying CMB; The Microbleed Anatomical Rating Scale (MARS)[15] and the Brain Observer Microbleed Scale (BOMBS).[16] The MARS rating form (Figure 3) shows the conventional anatomical definition of deep, lobar and infratentorial regions. Lobar regions include cortical and superficial subcortical white matter regions (including subcortical U fibres). Deep regions include the basal ganglia, thalamus, internal capsule, external capsule, corpus callosum, and deep and periventricular white matter. Infratentorial regions include the brainstem and cerebellum. Both of these scales are validated for

inter-observer agreement; the main difference is that MARS allows for the categorization of CMB distribution in different brain lobes. It is important to note that there are a number of radiological 'mimics' of CMBs including vascular flow voids, susceptibility artefacts from surrounding tissue (air, bone), cavernous malformations, haemorrhagic transformation of ischaemic areas, diffuse axonal injury and occasional haemorrhagic cerebral metastases.[4] Recent consensus criteria for the diagnosis of CMBs are summarized in Table 2.

## Clinical significance of CMBs for antithrombotic drug treatments

### How could CMBs affect the risk of ICH on antithrombotic drugs?

Because CMBs are a radiological marker of previous small areas of bleeding from abnormal cerebral small vessels, a key question is whether they are predictive of an increased risk of ICH in individuals treated with antithrombotic medications. It is generally assumed that most CMBs are clinically 'silent' and self-limiting because of haemostatic mechanisms and surrounding tissues. However, it is hypothesized that leakage of blood from an arteriolar rupture may on some occasions not be stemmed, resulting in potentially serious symptomatic ICH. Antithrombotic agents (antiplatelet or anticoagulant drugs) may, by impairing platelet function or the endogenous coagulation cascade, increase the likelihood of ICH resulting from a CMB. For CMBs to have clinical relevance for antithrombotic-related ICH they must first be common in the populations likely to be exposed to these drugs, and second, they must accumulate over time, to allow expansion of microbleeding into a symptomatic ICH during antithrombotic therapy.

### CMBs are common in populations likely to be exposed to antithrombotic drugs

In population-based studies, CMBs have been reported in between about 5% and 25% of older people: this wide range in prevalence is likely to reflect differences in sensitivity of the MRI techniques and age of populations.[4] Evidence is emerging for a different distribution of CMBs depending on ethnicity: in Caucasians most

Downloaded from cvd.sagepub.com by guest on October 1, 2014

3

**Figure 3**
The Microbleed Anatomical Rating Scale, showing lobar, deep and infratentorial regions

CMBs are located in lobar regions,[17,18] suggesting CAA as a dominant cause. By contrast, in Asian cohorts, deep CMBs, probably indicating hypertensive arteriopathy, predominate.[19]

CMBs are also common in populations with neurological disease, including patients with cognitive impairment,[20] ischaemic stroke,[21] ICH,[22] CAA and Alzheimer's disease[23] as well as the rare genetic cause of stroke, cerebral autosomal dominant arteriopathy with subcortical infarcts and leukoencephalopathy (CADASIL).[24] CMBs are more common in recurrent than first-ever

Downloaded from cvd.sagepub.com by guest on October 1, 2014

stroke, suggesting that they may reflect the progression of underlying small vessel disease. In stroke cohorts, the highest prevalence for CMBs is in individuals with recurrent ICH.[25] In ischaemic stroke, the hypothesis that CMBs reflect small vessel disease is supported by preferential associations with ICH and lacunar infarction as compared with atherothrombotic or cardioembolic ischaemic stroke.[26]

## CMBs develop over time

The incidence of new CMB over about three years in the Rotterdam study was 85/831 patients (about 10%).[27] In another study of a cohort of memory clinic patients, the incidence of CMB was 12% over about 2 years.[28] In a small stroke clinic population, new CMBs were noted in five of 21 patients over five years, and their development was strongly related to baseline systolic blood pressure and, as in the other studies (ref 27,28), the presence of baseline CMBs.[29] A larger study of 224 patients with stroke or TIA found that over a mean follow-up period of 27 months new CMBs developed in 10 patients (6.8%). The estimated annual rate of change of CMB numbers was 0.80 lesions per year in all patients, but the rate was more than 5% per year in patients with more than five CMBs at baseline,[30] suggesting a graded increase in risk according to CMB burden.

## CMBs as a predictor of future stroke risk

High-quality prospective data on how CMBs relate to future stroke risk are scarce. Table 3 summarizes key results of the main available prospective cohort studies. These studies, show an increased risk of recurrent stroke, mainly ICH, in patients with CMBs (with a greater risk if CMBs

---

**Table 2**
**Criteria for defining cerebral microbleeds (from Ref. 4)**

1 Black lesions on T2*-weighted MRI
2 Round or ovoid lesions (rather than linear)
3 Blooming effect on T2*-weighted MRI*
4 Devoid of signal hyperintensity on T1- or T2-weighted sequences
5 At least half the lesion surrounded by brain parenchyma
6 Distinct from other potential mimics such as iron or calcium deposits
7 Clinical history excluding traumatic diffuse axonal injury

MRI, magnetic resonance imaging
*The blooming effect on MRI refers to the observation that CMBs as seen on T2*-weighted brain imaging are larger than their actual size (or their size if they are seen on standard structural MRI [e.g. T2-weighted images]). By increasing the TE (Echo Time) on a T2*-weighted GRE, the dephasing period is increased and the blooming effect is increased

---

**Table 3**
**Key studies of CMBs and risk of recurrent stroke (after ischaemic stroke)**

| Study | Year | Proportion of patients with CMB | Follow-up duration | Incidence of ischaemic stroke in individuals with CMBs | Incidence of ICH in individuals with CMBs |
|---|---|---|---|---|---|
| Thijs et al. | 2010 | 129/487 | 2.2 years | 10% ($P = 0.054$) | 0.8% ($P = 0.09$) |
| Fan et al. | 2003 | 43/121 | $27.15 \pm 11.68$ months | 11.6% ($P = 0.841$) | 9.3% ($P = 0.053$) |
| Soo et al. | 2008 | 252/908 | $26.6 \pm 15.4$ months | 9.6% (0 CMB), 5.6% (1 CMB), 21.5% (2–4 CMB) 15.2% ($\geq$5 CMB) ($P = 0.226$) | 0.6% (no CMB), 1.9% (1 CMB), 4.6% (2–4 CMB) 7.6% ($\geq$5 CMB) ($P < 0.001$) |
| Boulanger et al. | 2006 | 45/236 | 14 months (median) | 20.3% ($P = 0.039$) | 3.3% ($P = 0.31$). |

$P$ values are for comparison of risk of stroke in individuals with CMBs compared with those without CMBs at baseline
CMB, cerebral microbleed

JRSM Cardiovasc Dis 2012;1:22. DOI 10.1177/2048004012474754
Downloaded from cvd.sagepub.com by guest on October 1, 2014

5

Journal of the Royal Society of Medicine Cardiovascular Disease



**Figure 4**

Risk of cerebral haemorrhage (ICH) and cerebral infarction (CI) and myocardial infarction (MI) in an Asian cohort of 908 patients with ischaemic stroke treated with an antithrombotic agent (93% of patients received aspirin)[32]. The mean follow-up period was 26 months (from Soo *et al.*, 2008, with permission)

are multiple).[31–33] By contrast, a Canadian study of ischaemic stroke or TIA found an increased risk of ischaemic stroke rather than ICH.[34] In a small prospective study of 21 surviving patients with ischaemic stroke or TIA followed up after a mean interval of 5.5 years, the investigators found only one recurrent ICH among eight patients with CMBs, compared with no ICH in 13 patients without CMBs.[29] A European cohort of 487 patients with a TIA or ischaemic stroke, also found that patients with microbleeds had a higher risk of developing new ischaemic stroke rather than ICH.[35] Interestingly, only strictly lobar CMBs (or combined with deep microbleeds) had an independent effect on the risk of recurrent stroke ($P = 0.018$) in this study, suggesting that CAA may be a risk factor for ischaemic stroke as well as ICH.

The largest prospective study of CMBs in stroke patients to date comes from an Asian population of 908 patients with ischaemic stroke or TIA[32]. The investigators prospectively evaluated patients with pre-existing CMB (27.8%) and compared the risk of developing ICH, ischaemic stroke and mortality. The found an increased risk of ICH which directly correlated with the number of pre-existing CMB (0.6% [no CMB], 1.9% [1 CMB], 4.6% [2–4 CMB] and 7.6% [≥5 CMB]), and also showed a future ischaemic stroke risk of 9.6% (0 CMB), 5.6% (1 CMB), 21.5% (2–4 CMB) and 15.2% (≥5 CMB) (Figure 4).

CMBs also influence future ICH risk after symptomatic ICH. Greenberg *et al.*[36,56] prospectively evaluated a cohort of CAA patients with lobar ICH, and found that the count of microbleeds or macrobleeds on baseline MRI predicted

Downloaded from cvd.sagepub.com by guest on October 1, 2014

**1890**

an increased risk of haemorrhagic stroke (proportional to the count) in survivors. Jeon et al.[37] also noted an elevated risk of recurrent ICHs development associated with CMBs (but not with other clinical and laboratory data), in a prospective study of 112 survivors of ICH.

The predictive value of CMBs for the risk of occurrence of symptomatic cerebrovascular disease in the general population is largely unknown. One recent large-scale prospective study of 2102 healthy elderly individuals followed for a mean interval of 3.6 years in Japan[38] demonstrated a significant association between CMBs and subsequent ICH (hazard ratio: 50.2; 95% confidence interval [CI]: 16.7–150.9) and ischaemic stroke (hazard ratio: 4.48; 95% CI: 2.20–12.2). These findings are of interest, but it should be noted that the CIs around the risk estimates are wide, and the findings await confirmation in other longitudinal population-based studies, ideally in a range of different populations to reflect the spectrum of small vessel disease across ethnic groups.

In summary, increasing evidence suggests that CMBs are a risk factor for the risk of future stroke. Some, but not all studies, adjusted for potential confounding factors (e.g. age, hypertension). The available data suggest that overall the risk may be higher for ICH than for ischaemic stroke, but this balance may depend on the characteristics of the population studied (e.g. Asian versus non-Asian). Further studies are required to clarify this. However the critical question for clinicians is whether the risk of future ICH is increased by the presence of CMBs, and whether any increase in risk is sufficient to tip the balance away from recommending antithrombotic drug treatment.

## CMBs and their implications for antithrombotic therapy

### Antiplatelet drugs, CMBs and ICH risk

In ischaemic stroke from causes other than cardiac embolism (in which anticoagulation is generally preferred), antiplatelet medications are a key component of secondary prevention of future occlusive vascular events. Aspirin is the most widely studied agent, and carries only a small absolute risk of symptomatic ICH of less than 0.5%,[39] though this risk seems to be higher in Asian than in non-Asian cohorts. There has been concern that antiplatelet drugs could not only cause CMBs but also increase the risk of symptomatic ICH.

*Cross-sectional studies.* A number of cross-sectional studies have evaluated associations between antiplatelet exposure and the presence of CMBs, but CMB presence may be confounded by some indications for antiplatelet treatment (e.g. a history of ischaemic stroke). Nevertheless, the Rotterdam Scan study in over 1000 healthy elderly individuals found that prior antiplatelet use was associated with an increased prevalence of CMBs (odds ratio [OR]: 1.71; 95% CI: 1.21–2.41), a finding which persisted after adjusting for potential confounders including history of stroke.[40] The same study also noted that strictly lobar CMBs were more common in aspirin users than those using an alternative antiplatelet drug, carbasalate calcium (OR: 2.7; 95% CI: 1.45–5.04), suggesting that aspirin may specifically aggravate microbleeding in the context of CAA. Our small hospital-based UK case-control study[41] found that CMBs were more likely to be present in ICH patients who were on antiplatelet therapy compared with both ICH patients without antiplatelet therapy and to matched non-ICH patients on antiplatelet therapy; lobar CMBs were found in 69% of the ICH group compared with 33% of the control group of antiplatelet users without ICH ($P = 0.03$). After adjustment for leukoaraiosis, the presence of lobar (but not deep) CMBs was a significant predictor of antiplatelet-related ICH (OR: 1.42), also supporting an interaction between aspirin use and CAA. One small prospective study in CAA showed a high risk of recurrent ICH, with evidence that this risk is increased risk by aspirin treatment.[36] Thus, CAA may be an important risk factor for antiplatelet-related ICH, but because of the small sample sizes to date, further data are required to confirm this.

Three studies in eastern Asian countries have also shown a higher prevalence of CMBs in antiplatelet treated patients. Jeong et al.[42] evaluated 187 patients with primary ICH in order to determine associated risk factors and clinical and radiological correlates. They found the use of antiplatelets and anticoagulation to be associated with an increased risk of ICH in patients with CMBs. In a retrospective study comparing a small Asian cohort of 21 aspirin users who developed ICH

Downloaded from cvd.sagepub.com by guest on October 1, 2014

Journal of the Royal Society of Medicine Cardiovascular Disease

with healthy matched controls, Wong et al.[43] found a much higher proportion of CMBs in the ICH group (CMBs were found in 19 cases compared with only 7 of 21 matched aspirin users without any history of ICH [$P < 0.001$]). Ge et al.[44] retrospectively looked at 150 cases of ischaemic cerebrovascular disease patients on Aspirin and matched controls not taking Aspirin and found an increased frequency of CMB (40% versus 12%; OR: 4.899; $P < 0.0001$) and ICH (28% versus 1%; OR: 28.778; $P < 0.0001$) in Aspirin users. By contrast, in a Japanese cohort of ICH patients with underlying pre-existing white matter changes, there was an association of CMB with ICH but not with antiplatelet use.[45] A systematic review in a mixture of Asian and non-Asian cohorts including data from 1461 patients with ICH and 3817 with TIA or ischaemic stroke also found that CMBs were more common in anti-platelet users than in non-users with both ICH (OR: 1.7; 95% CI: 1.3–2.3) or ischaemic stroke (OR:1.4; 95% CI: 1.2–1.7).[46]

*Prospective studies.* Prospective data on CMB presence and future ICH risk on antiplatelet treatments remain scarce. The largest study published to date, as previously mentioned, is from Asia (Hong Kong), where 908 patients with ischaemic stroke treated with a single antithrombotic agent (in 93% of cases aspirin) were screened for CMBs and followed up for a mean period of 26 months.[32] CMBs were found in 28% of patients, most often in deep regions suggesting hypertensive arteriopathy as the most likely cause. The risk of ICH was higher in individuals with baseline CMBs, and increased with increasing CMB count. These data suggest that CMB presence and number of CMB are relevant for ICH risk in this Asian population. CMBs were also associated with an increased risk of ischaemic stroke, but this did not show a graded relationship with CMB count at baseline. Given that antiplatelet agents have only a modest effect in secondary ischaemic stroke prevention (absolute risk reduction approximately 1–2% per year),[47] an ICH risk of 7.6% in those with >5 CMBs may outweigh the benefit in this subgroup of patients. However, it is not known whether these data are generalizable to non-Asian populations.

In summary, there are robust associations between antiplatelet use and the presence of CMBs, but cross-sectional studies cannot fully adjust for potential confounding factors. The largest available prospective study (in an Asian population) suggests that CMBs may also influence the future risk of ICH in ischaemic stroke patients treated with antithrombotic drugs. However, since the overall benefit of antiplatelet treatment has been established in very large randomized trials and meta-analyses, there is currently insufficient evidence to recommend withholding them in patients with CMBs. There are very few data relating to the use of multiple antiplatelet agents together, but these could pose a greater risk than single antiplatelet treatment in individuals with small vessel disease.[48] Screening for CMBs should be considered for future antiplatelet randomized trials or natural history prognosis studies after stroke.

## Anticoagulant drugs, CMBs and ICH risk

Ischaemic stroke is a common consequence of atrial fibrillation, and the risk increases with the presence of other risk factors including age, hypertension, congestive heart failure and diabetes. Anticoagulation with Warfarin[49] and newer agents including Dabigatran[50] and Rivaroxaban[51] are all very effective in reducing the risk of ischaemic stroke by about 60–70%. Nevertheless all anticoagulants inevitably increase the risk of unwanted bleeding: the most feared of all complications from anticoagulation is ICH. Conventional anticoagulation in ischaemic stroke patients increases the risk of ICH up to 7–10-fold with an absolute risk of about 1% per year.[52] The risk of ICH is generally higher in inception observational cohorts in comparison to clinical trials, from which many high-risk patients are excluded.[53]

Despite the clear efficacy of anticoagulants for stroke prevention, the proportion of ICH related to the use of anticoagulant drugs has increased in recent years: about 15% are currently related to warfarin use.[54] The increasing use of anticoagulants in elderly populations is expected to result in an increasing incidence of anticoagulant-related ICH. There is thus major interest in whether new imaging or genetic biomarkers may help to predict the risk of this rare yet devastating and unpredictable complication. Because oral anticoagulant associated ICH is associated with increased age and previous stroke, and often occurs with anticoagulation intensity within the therapeutic

Downloaded from cvd.sagepub.com by guest on October 1, 2014

Case 2:15-cv-01023-DB Document 72-15 Filed 10/08/2025

Cerebral microbleeds: a new dilemma in stroke medicine

**Figure 5**
(a) Two simultaneous warfarin-related intracerebral haemorrhages in an elderly patient with atrial fibrillation. (b, c) T2*-weighted gradient-recalled echo reveals the presence of multiple strictly lobar cerebral microbleeds (some shown with arrowheads), consistent with underlying cerebral amyloid angiopathy. Note that the symptomatic haematomas are also lobar

range, it is likely that mechanisms underlying high risk relate to individual patient factors, for example an age-related disorder of small brain blood vessels. There is evidence that patients with CAA have a particularly high risk of anticoagulant-related ICH (Figure 5).[55] Patients with symptomatic lobar ICH suggestive of CAA have annual recurrent ICH risk of up to about 20%,[36,56] and anticoagulants appear to increase this risk, as well as increasing the clinical severity and mortality rate from ICH.[52]

Since MRI is the most sensitive way to image the consequences of small vessel disease,[57] some studies have investigated whether it may be useful in risk stratification. Leukoaraiosis – a confluent deep white matter abnormality seen as low attenuation on computed tomography (CT) or high signal on T2-weighted MRI, and a marker of small vessel disease – increases the risk of oral anticoagulant-related ICH.[58] CMBs provide direct evidence of leakage of blood from pathologically fragile small vessels, so might be a better predictor of oral anticoagulant-associated ICH than leukoaraiosis alone. In the current stroke risk scoring systems (CHA2DS2-VASc for thrombotic risk[59] and HAS-BLED for bleeding risk)[60] paradoxically, some of the risk factors for future ischaemic stroke risk are similar to those associated with increased bleeding risk (age, previous stroke, hypertension). Neuroimaging and genetic biomarkers that are more predictive of ICH than ischaemic stroke hold promise for

refining the risk–benefit assessment in this situation.[61] Although CAA defined by symptomatic ICH is generally considered to be a contraindication to anticoagulation, it is not known whether the presence of lobar CMBs alone (without macro-haemorrhage) is a risk factor for ICH. There are few pathological validation studies to confirm whether lobar CMBs are sufficient to diagnose CAA. Below we briefly discuss the limited data relating to CMBs and anticoagulant bleeding risk.

*Cross-sectional studies.* There are few cross-sectional studies addressing the potential role of CMBs in anticoagulant-related ICH. One case-control study included 24 ICH patients with warfarin use compared with 48 warfarin users with no history of ICH and found a greater number of CMBs in the ICH group; prothrombin time and CMB presence were predictive of ICH.[62] A Chinese study also demonstrated an association of CMB in ICH patients previously on Warfarin.[63] By contrast, a Turkish study of anticoagulated patients did not find a significant difference in CMB prevalence between Warfarin users versus non-users.[64] In a systematic review and meta-analysis of cross-sectional data mentioned above[46] the authors found an 8 fold increase in the OR of having at least one CMB in warfarin treated ICH patients compared with ICH patients not taking warfarin.

*Prospective studies.* There are no reliable large-scale prospective data regarding the effect of CMBs on the risk of ICH in patients with

Downloaded from cvd.sagepub.com by guest on October 1, 2014

JR Soc Med Cardiovasc Dis 2012;1:22. DOI 10.1177/2048004012474754          9

**Table 4**
**Key studies of CMBs and the risk of ICH after thrombolysis**

| Study | Year | No. of patients | SICH rate in CMB group | SICH rate in non-CMB group |
|---|---|---|---|---|
| Fiehler et al., BRASIL study | 2007 | 570 | 5.8% (95% CI, 1.9–13.0) | 2.7% (95% CI, 1.4–4.5) |
| Derex et al.[78] | 2004 | 44 | 1/8 patients (12.5%) non-significant | 3/36 patients (8.33%) non-significant |
| Kim et al. | 2006 | 65 | 8/25 (32%) non-significant | 9/40 (22.5%) non-significant |
| Kakuda et al.[79] | 2005 | 70 | 0/11 (0%) non-significant | 7/59 (11.9%) non-significant |
| Kidwell et al.[80] | 2002 | 41 | 1/5 (20%) non-significant | 4/36 (11.1%) non-significant |

CMB, cerebral microbleed; ICH, intracerebral haemorrhage SICH, Symptomatic Intra Cranial Haemorrhage

previous ischaemic stroke and atrial fibrillation treated with warfarin, who in clinical practice pose perhaps the greatest dilemma for treatment. Until high-quality data about the magnitude of risk are available anticoagulation should continue to be recommended for patients with atrial fibrillation regardless of the presence of CMBs, based on the compelling results from large randomized trials and meta-analyses. The question of how CMBs may affect future ICH risk after anticoagulation in the setting of acute cardioembolic stroke is being investigated in UK-wide prospective multicentre inception cohort study, CROMIS-2 (www.ucl.ac.uk/cromis-2). Clinicians are encouraged to participate in this and other observational studies to allow a more definitive recommendation about anticoagulation in patients with CMBs to be made.[65] Although the newer anticoagulants have lower rates of ICH, the effects of small vessel disease on this risk and how the data from trials translate to day-to-day practice remain unknown.

## Statins and CMBs

Some studies have found an association between low serum cholesterol and increased CMB burden,[66] although in patients with acute ischaemic stroke or transient ischaemic attack previous statin therapy was not associated with either the prevalence or the burden of CMBs.[67] A higher risk of ICH was observed in atorvastatin-treated patients in secondary prevention trials of patients with ischaemic cerebrovascular disease (SPARCL): the hazard ratio was 4.1 for those entering

following ICH compared with 1.6 for those enrolled with ischaemic stroke, which suggests a possible relationship between statins and intracerebral bleeding.[68] Although a case-control study found statin use prior to ICH to be associated with reduced mortality and favourable outcome, in line with a meta-analysis,[69] others have noted an association between low LDL cholesterol levels and increased mortality.[70] These inconsistent associations do not allow a definitive recommendation to be given on statin therapy in the context of CMBs. A decision analysis suggests that CMBs in the context of CAA (e.g. multiple areas of strictly lobar cerebral haemorrhage) should lead to avoidance of statins, since they indicate a high risk of future ICH.[71] However, this decision analysis is not a substitute for observational or randomized evidence, both of which are needed to determine the true risk of statins in individuals with CMBs.

## CMBs and Thrombolysis in Acute Ischaemic Stroke

The most widely used effective treatment for acute ischaemic stroke is intravenous thrombolysis. The most devastating complication is ICH,[72] which may have a devastating impact on the patient. Leukoaraiosis, a marker of cerebral small vessel disease, is associated with an increased risk of ICH.[73] CMBs, as a potential marker of bleeding-prone small vessel diseases, have long been suspected as a new risk factor for post-thrombolysis ICH. The available studies on this topic are summarized in Table 4. The largest of these studies

1894-
Downloaded from cvd.sagepub.com by guest on October 1, 2014

(BRASIL),[74] prospectively evaluated the risk of symptomatic ICH (defined as a clinical deterioration with an increase of 4 points on the NIHSS score, and a temporal association with parenchymal haematoma) found a non-significant increase in the risk of symptomatic ICH in patients with CMB (symptomatic ICH risk was 5.8% [95% CI, 1.9 to 13.0] in the CMB group as compared with 2.7% (95% CI, 1.4 to 4.5) in patients without CMBs [$P = 0.170$]). Similarly, Kim et al.[75] investigated 65 patients with varying numbers of CMBs (CMBs were subdivided into four grades: I – [CMB absent], II – [1–2 CMB], III – [3–10 CMB and IV – greater than 10 CMB] and did not demonstrate that the presence or burden of CMBs were independently associated with the risk symptomatic ICH after thrombolysis).

Two recently published meta-analyses suggest a trend towards increased risk of symptomatic ICH in thrombolysed ischaemic stroke patients,[76,77] but acknowledge the limitations of the available studies (e.g. non-standardized or insensitive MRI techniques, small sample sizes, varying ICH definitions). Clearly, further larger and well designed studies are urgently needed to answer this dilemma posed by CMBs.

## Conclusion

CMBs are not just an incidental finding revealed by new neuroimaging technology. Current literature suggests at least two different underlying arteriopathies causing different topographic patterns of CMBs (hypertension, leading to deep CMBs, and CAA, leading to strictly lobar CMBs). In clinical practice the distribution of CMBs is mixed, suggesting that these two arteriopathies often coexist or interact. The core question that persists is whether CMBs are associated with an increased risk of ICH or ischaemic stroke or both? And if so, is this risk modified or enhanced with the concomitant administration of antiplatelets and anticoagulation therapy. Current data, both prospective and cross-sectional, suggest an increased stroke risk in the presence of CMBs. The risk of ICH may be higher than the risk of ischaemic stroke, but population ethnicity (Asian versus non-Asian) may play a role in this balance of risk. There is consistent evidence of an association between antithrombotic use (mainly relating to antiplatelet drugs) and CMBs in cross-sectional studies, and limited prospective data suggesting an increased hazard for antiplatelet drugs if CMBs are present. Few data are available on whether CMBs influence the risk of ICH during anticoagulation after ischaemic stroke. Since cross-sectional data are unable to prove causation there remains an urgent need for larger prospective studies, in a range of populations, to specifically investigate the risks of ICH associated with CMBs. Until clear and consistent data are available to show an increased hazard of CMBs, clinicians should continue to recommend antithrombotic therapy after ischaemic stroke or TIA based on the results of large randomized trial and meta-analyses. In patients with previous symptomatic ICH and evidence of CAA, antithrombotics should be used with particular caution, and only when clear treatment indications, that are judged to outweigh the very high ICH risk, are present.

## Summary points

- CMBs are an important neuroimaging finding on a T2* GRE MRI scan and are indicative of underlying small vessel damage; they correspond to perivascular haemosiderin deposits, which are presumed to be due to small areas of bleeding from small vessels;
- The distribution of CMBs reflects the underlying type of microangiopathy – hypertensive arteriopathy (deep CMBs) or CAA (strictly lobar CMBs);
- People with pre-existing CMBs are likely to develop more CMBs over time;
- In stroke patients (both ischaemic stroke and ICH), CMBs are associated with an increased risk of future ICH and ischaemic stroke, independent of potential confounding factors;
- The presence of CMBs in patients with ischaemic stroke (including those treated with antiplatelet agents) is associated with an increased risk of future stroke (ICH risk>ischaemic stroke risk). CAA may be a particular risk factor for ICH on anticoagulant or antiplatelet drugs. However, current data are insufficient to recommend holding antiplatelet drugs in patients with CMBs. Although CMBs are associated with anticoagulant related ICH in

JR Soc Med Cardiovasc Dis 2012;1:22. DOI 10.1177/2048004012474754
Downloaded from cvd.sagepub.com by guest on October 1, 2014

Journal of the Royal Society of Medicine Cardiovascular Disease

cross-sectional studies, there are no large-scale prospective studies of CMBs and ICH risk after anticoagulation.

- The role of CMBs in predicting thrombolysis-related ICH risk in ischaemic stroke is currently uncertain; there is a non-statistically significant trend towards increased ICH risk if CMBs are present prior to thrombolysis, but the clinical relevance is not yet established and requires further study.

## References

1 Scharf J, Brauherr E, Forsting M, Sartor K. Significance of haemorrhagic lacunes on MRI in patients with hypertensive cerebrovascular disease and intracerebral haemorrhage. Neuroradiology 1994;36:504–8

2 Offenbacher H, Fazekas F, Schmidt R, Koch M, Fazekas G, Kapeller P. MR of cerebral abnormalities concomitant with primary intracerebral hematomas. AJNR Am J Neuroradiol 1996;17:573–8

3 Werring D. Cerebral Microbleeds: Pathophysiology to Clinical Practice. Cambridge, United Kingdom. Cambridge University Press, 2011

4 Greenberg SM, Vernooij MW, Cordonnier C, et al. Cerebral microbleeds: a guide to detection and interpretation. Lancet Neurol 2009;8:165–74

5 Fazekas F, Kleinert R, Roob G, et al. Histopathologic analysis of foci of signal loss on gradient-echo T2*-weighted MR images in patients with spontaneous intracerebral hemorrhage: evidence of microangiopathy-related microbleeds. Am J Neuroradiol 1999;20:637–42

6 Cordonnier C, Al-Shahi Salman R, Wardlaw J. Spontaneous brain microbleeds: systematic review, subgroup analyses and standards for study design and reporting. Brain 2007;130:1988–2003

7 Koennecke HC. Cerebral microbleeds on MRI: prevalence, associations, and potential clinical implications. Neurology 2006;66:165–71

8 Kim M, Bae HJ, Lee J, et al. APOE epsilon2/epsilon4 polymorphism and cerebral microbleeds on gradient-echo MRI. Neurology 2005;65:1474–5

9 Dierksen GA, Skehan ME, Khan MA, et al. Spatial relation between microbleeds and amyloid deposits in amyloid angiopathy. Ann Neurol 2010;68:545–8

10 Vernooij MW, van der Lugt A, Ikram MA, et al. Prevalence and risk factors of cerebral microbleeds: the Rotterdam Scan Study. Neurology 2008;70:1208–14

11 Knudsen KA, Rosand J, Karluk D, Greenberg SM. Clinical diagnosis of cerebral amyloid angiopathy: validation of the Boston criteria. Neurology 2001;56:537–9

12 Atlas SW, Mark AS, Grossman RI, Gomori JM. Intracranial hemorrhage: gradient-echo MR imaging at 1.5 T. Comparison with spin-echo imaging and clinical applications. Radiology 1988;168:803–7

13 Akter M, Hirai T, Hiai Y, et al. Detection of hemorrhagic hypointense foci in the brain on susceptibility-weighted imaging clinical and phantom studies. Acad Radiol 2007;14:1011–9

14 Nandigam RN, Viswanathan A, Delgado P, et al. MR imaging detection of cerebral microbleeds: effect of susceptibility-weighted imaging, section thickness, and field strength. AJNR Am J Neuroradiol 2009;30:338–43

15 Gregoire SM, Chaudhary UJ, Brown MM, et al. The Microbleed Anatomical Rating Scale (MARS): reliability of a tool to map brain microbleeds. Neurology 2009;73:1759–66

16 Cordonnier C, Potter GM, Jackson CA, et al. Improving inter-observer agreement about brain microbleeds: development of the Brain Observer MicroBleed Scale (BOMBS). Stroke 2009;40:94–9

17 Roob G, Schmidt R, Kapeller P, Lechner A, Hartung HP, Fazekas F. MRI evidence of past cerebral microbleeds in a healthy elderly population. Neurology 1999;52:991–4

18 Jeerakathil T, Wolf PA, Beiser A, et al. Cerebral microbleeds: prevalence and associations with cardiovascular risk factors in the Framingham study. Stroke 2004;35:1831–5

19 Lee SH, Bae HJ, Ko SB, Kim H, Yoon BW, Roh JK. Comparative analysis of the spatial distribution and severity of cerebral microbleeds and old lacunes. J Neurol Neurosurg Psychiatry 2004;75:423–7

20 Werring DJ, Frazer DW, Coward LJ, et al. Cognitive dysfunction in patients with cerebral microbleeds on T2*-weighted gradient-echo MRI. Brain 2004;127 (Part 10):2265–75

21 Werring DJ, Coward LJ, Losseff NA, Jäger HR, Brown MM. Cerebral microbleeds are common in ischemic stroke but rare in TIA. Neurology 2005;65:1914–8

22 Fiehler J. Cerebral microbleeds: old leaks and new haemorrhages. Int J Stroke 2006;1:122–30

23 Hanyu H, Tanaka Y, Shimizu S, Takasaki M, Abe K. Cerebral microbleeds in Alzheimer's disease. J Neurol 2003;250:1496–7

24 Dichgans M, Holtmannspötter M, Herzog J, et al. Cerebral microbleeds in CADASIL. A gradient-echo magnetic resonance imaging and autopsy study. Stroke 2002;33:67–71

25 Naka H, Nomura E, Wakabayashi S, et al. Frequency of asymptomatic microbleeds on T2*-weighted MR images of patients with recurrent stroke: association with combination of stroke subtypes and leukoaraiosis. AJNR Am J Neuroradiol 2004;25:714–9

26 Kato H, Izumiyama M, Izumiyama K, Takahashi A, Itoyama Y. Silent cerebral microbleeds on T2*-weighted MRI: correlation with stroke subtype, stroke recurrence, and leukoaraiosis. Stroke 2002;33:1536–40

27 Poels MM, Ikram MA, van der Lugt A, et al. Incidence of cerebral microbleeds in the general population: the Rotterdam Scan Study. Stroke 2011;42:656–61

28 Goos JD, Henneman WJ, Sluimer JD, et al. Incidence of cerebral microbleeds: a longitudinal study in a memory clinic population. Neurology 2010;74:1954–60

29 Gregoire SM, Brown MM, Kallis C, Jäger HR, Yousry TA, Werring DJ. MRI detection of new microbleeds in patients with ischemic stroke: five-year cohort follow-up study. Stroke 2010;41:184–6

30 Lee S-H, Lee S-T, Kim BJ, Park H-K, Kim C-K, et al. Dynamic temporal change of cerebral microbleeds: long-term follow-up MRI study. PLoS ONE 2011;6:e25930 doi:10.1371/journal.pone.0025930

31 Fan YH, Zhang L, Lam WW, Mok VC, Wong KS. Cerebral microbleeds as a risk factor for subsequent intracerebral hemorrhages among patients with acute ischemic stroke. Stroke 2003;34:2459–62

Downloaded from cvd.sagepub.com by guest on October 1, 2014

32  Soo YO, Yang SR, Lam WW, et al. Risk vs benefit of anti-thrombotic therapy in ischaemic stroke patients with cerebral microbleeds. J Neurol 2008;255:1679–86

33  Imaizumi T, Horita Y, Chiba M, et al. Dot-like hemosiderin deposition on T2*-weighted MR imaging associated with nonhypertensive intracerebral hemorrhage. J Neuroimaging 2006;16:39–46

34  Boulanger JM, Coutts SB, Eliasziw M, et al., VISION Study Group. Cerebral microhemorrhages predict new disabling or fatal strokes in patients with acute ischemic stroke or transient ischemic attack. Stroke 2006;37:911–4

35  Thijs V, Lemmens R, Schoofs C, et al. Microbleeds and the risk of recurrent stroke. Stroke 2010;41:2005–9

36  Biffi A, Halpin A, Towfighi A, et al. Aspirin and recurrent intracerebral hemorrhage in cerebral amyloid angiopathy. Neurology 2010;75:693–8

37  Jeon SB, Kang DW, Cho AH, et al. Initial microbleeds at MR imaging can predict recurrent intracerebral hemorrhage. J Neurol 2007;254:508–12

38  Bokura H, Saika R, Yamaguchi T, et al. Microbleeds are associated with subsequent hemorrhagic and ischemic stroke in healthy elderly individuals. Stroke 2011;42:1867–71

39  Hart RG, Silvina B, Pearce LA. Avoiding central nervous system bleeding during antithrombotic therapy: recent data and ideas. Stroke 2005;36:1588–93

40  Vernooij MW, Haag MD, van der Lugt A, et al. Use of antithrombotic drugs and the presence of cerebral microbleeds: the Rotterdam Scan Study. Arch Neurol 2009;66:714–20 Epub 2009 Apr 13

41  Gregoire SM, Jäger HR, Yousry TA, Kallis C, Brown MM, Werring DJ. Brain microbleeds as a potential risk factor for antiplatelet-related intracerebral haemorrhage: hospital-based, case-control study. J Neurol Neurosurg Psychiatry 2010;81:679–84

42  Jeong SW, Jung KH, Chu K, Bae HJ, Lee SH, Roh JK. Clinical and radiologic differences between primary intracerebral hemorrhage with and without microbleeds on gradient-echo magnetic resonance images. Arch Neurol 2004;61:905–9

43  Wong KS, Chan YL, Liu JY, Gao S, Lam WW. Asymptomatic microbleeds as a risk factor for aspirin-associated intracerebral hemorrhages. Neurology 2003;60:511–3

44  Ge L, Niu G, Han X, et al. Aspirin treatment increases the risk of cerebral microbleeds. Can J Neurol Sci 2011;38:863–8

45  Nishikawa T, Ueba T, Kajiwara M, Miyamatsu N, Yamashita K. Cerebral microbleeds in patients with intracerebral hemorrhage are associated with previous cerebrovascular diseases and white matter hyperintensity, but not with regular use of antiplatelet agents. Neurol Med Chir (Tokyo) 2009;49:333–8; discussion 338–9

46  Lovelock CE, Cordonnier C, Naka H, et al. Antithrombotic drug use, cerebral microbleeds, and intracerebral hemorrhage: a systematic review of published and unpublished studies. Stroke 2010;41:1222–8

47  Antithrombotic Trialists' Collaboration. Collaborative meta-analysis of randomised trials of antiplatelet therapy for prevention of death, myocardial infarction, and stroke in high risk patients. BMJ 2002;324:71–86

48  Benavente OR, White CL, Pearce L, et al. (SPS3 Investigators). The Secondary Prevention of Small Subcortical Strokes (SPS3) study. Int J Stroke 2011;6:164–75

49  Singer DE, Albers GW, Dalen JE, et al. Antithrombotic therapy in atrial fibrillation: American College of Chest Physicians Evidence-Based Clinical Practice Guidelines (8th edition). Chest 2008;133(Suppl.):546S–92S

50  Connolly SJ, Ezekowitz MD, Yusuf S, et al. Dabigatran versus warfarin in patients with atrial fibrillation. N Engl J Med 2009;361:1139–51

51  Patel MR, Mahaffey KW, Garg J, et al. Rivaroxaban versus warfarin in nonvalvular atrial fibrillation. N Engl J Med 2011;365:883–91

52  Hart RG, Boop BS, Anderson DC. Oral anticoagulants and intracranial hemorrhage. Facts and hypotheses. Stroke 1995;26:1471–7

53  Hylek EM, Evans-Molina C, Shea C, Henault LE, Regan S. Major hemorrhage and tolerability of warfarin in the first year of therapy among elderly patients with atrial fibrillation. Circulation 2007;115:2689–96

54  Flaherty ML, Kissela B, Woo D, et al. The increasing incidence of anticoagulant-associated intracerebral hemorrhage. Neurology 2007;68:116–21

55  Rosand J, Hylek EM, O'Donnell HC, Greenberg SM. Warfarin-associated hemorrhage and cerebral amyloid angiopathy: a genetic and pathologic study. Neurology 2000;55:947–51

56  Greenberg SM, Eng JA, Ning M, Smith EE, Rosand J. Hemorrhage burden predicts recurrent intracerebral hemorrhage after lobar hemorrhage. Stroke 2004;35:1415–20

57  Gouw AA, Seewann A, van der Flier WM, et al. Heterogeneity of small vessel disease: a systematic review of MRI and histopathology correlations. J Neurol Neurosurg Psychiatry 2011;82:126–35

58  Gorter JW, Algra A, van Gijn J, Kappelle LJ, Koudstaal PJ, Tjeerdsma HC, on behalf of the SPIRIT Study Group. SPIRIT: predictors of anticoagulant-related bleeding complications in patients after cerebral ischemia. Cerebrovasc Dis 1997;7(Suppl. 4):3

59  Lip GY, Nieuwlaat R, Pisters R, Lane DA, Crijns HJ. Refining clinical risk stratification for predicting stroke and thromboembolism in atrial fibrillation using a novel risk factor-based approach: the euro heart survey on atrial fibrillation. Chest 2010;137:263–72

60  Pisters R, Lane DA, Nieuwlaat R, de Vos CB, Crijns HJ, Lip GY. A novel user-friendly score (HAS-BLED) to assess 1-year risk of major bleeding in patients with atrial fibrillation: the Euro Heart Survey. Chest 2010;138:1093–100

61  Charidimou A, Werring DJ. Cerebral microbleeds: detection, mechanisms and clinical challenges. Future Neurol 2011;6:587–611

62  Lee SH, Ryu WS, Roh JK. Cerebral microbleeds as a risk factor for warfarin-related intracerebral hemorrhage. Neurology 2009;72:171–6

63  Ueno H, Naka H, Ohshita T. Association between cerebral microbleeds on T2*-weighted MR images and recurrent hemorrhagic stroke in patients treated with warfarin following ischemic stroke. Am J Neuroradiol 2008;29:1483–6

64  Orken DN, Kenangil G, Uysal E, Forta H. Cerebral microbleeds in ischemic stroke patients on warfarin treatment. Stroke 2009;40:3638–40

65  Clinical Relevance Of Microbleeds In Stroke (CROMIS-2). UKCRN No – 10697. See http://public.ukcrn.org.uk/Search/StudyDetail.aspx?StudyID=10697

Downloaded from cvd.sagepub.com by guest on October 1, 2014

66  Wieberdink RG, Poels MM, Vernooij MW, et al. Serum lipid levels and the risk of intracerebral hemorrhage: the Rotterdam Study. Arterioscler Thromb Vasc Biol 2011;**31**:2982–9

67  Day JS, Policeni BA, Smoker WR Jr, et al. Previous statin use is not associated with an increased prevalence or degree of gradient-echo lesions in patients with acute ischemic stroke or transient ischemic attack. Stroke 2011;**42**:354–8

68  Amarenco P, Bogousslavsky J, Callahan A III, et al. Stroke Prevention by Aggressive Reduction in Cholesterol Levels (SPARCL) Investigators. High-dose atorvastatin after stroke or transient ischemic attack. N Engl J Med 2006;**355**:549–59

69  Biffi A, Devan WJ, Anderson CD, et al. Statin use and outcome after intracerebral hemorrhage: case-control study and meta-analysis. Neurology 2011;**76**:1581–8

70  Ramírez-Moreno JM, Casado-Naranjo I, Portilla JC, et al. Serum cholesterol LDL and 90-day mortality in patients with intracerebral hemorrhage. Stroke 2009;**40**:1917–20

71  Westover MB, Bianchi MT, Eckman MH, Greenberg SM. Statin use following intracerebral hemorrhage: a decision analysis. Arch Neurol 2011;**68**:573–9

72  Tissue plasminogen activator for acute ischemic stroke. The National Institute of Neurological Disorders and Stroke rt-PA Stroke Study Group. N Engl J Med 1995;**333**:1581–7

73  Neumann-Haefelin T, Hoelig S, Berkefeld J, et al. Leukoaraiosis is a risk factor for symptomatic intracerebral hemorrhage after thrombolysis for acute stroke. Stroke 2006;**37**:2463–6

74  Fiehler J, Albers GW, Boulanger JM, et al. Bleeding risk analysis in stroke imaging before thromboLysis (BRASIL): pooled analysis of T2*-weighted magnetic resonance imaging data from 570 patients. Stroke 2007;**38**:2738–44

75  Kim HS, Lee DH, Ryu CW, et al. Multiple cerebral microbleeds in hyperacute ischemic stroke: impact on prevalence and severity of early hemorrhagic transformation after thrombolytic treatment. AJR Am J Roentgenol 2006;**186**:1443–9

76  Charidimou A, Kakar P, Fox Z, Werring DJ. Cerebral microbleeds and the risk of intracerebral haemorrhage after thrombolysis for acute ischaemic stroke: systematic review and meta-analysis. J Neurol Neurosurg Psychiatry 2012 September 28 [Epub ahead of print]. doi:10.1136/jnnp-2012-303379, PMID: 23024352

77  Shoamanesh A, Kwok CS, Lim PA, Benavente OR. Postthrombolysis intracranial hemorrhage risk of cerebral microbleeds in acute stroke patients: a systematic review and meta-analysis. Int J Stroke 2012 September 13 [E-pub ahead of print]. doi: 10.1111/j.1747-4949.2012.00869.x, PMID:22973896

78  Derex L, Nighoghossian N, Hermier M, et al. Thrombolysis for ischemic stroke in patients with old microbleeds on pretreatment MRI. Cerebrovasc Dis 2004;**17**:238–41

79  Kakuda W, Thijs VN, Lansberg MG, et al. Clinical importance of microbleeds in patients receiving IV thrombolysis. Neurology 2005;**65**:1175–8

80  Kidwell CS, Saver JL, Villablanca JP, et al. Magnetic resonance imaging detection of microbleeds before thrombolysis: an emerging application. Stroke 2002;**33**:95–8

© The Author(s) 2013

This is an open-access article distributed under the terms of the Creative Commons Attribution License (http://creativecommons.org/licenses/by-nc/2.0/), which permits non-commercial use, distribution and reproduction in any medium, provided the original work is properly cited.

Downloaded from cvd.sagepub.com by guest on October 1, 2014

# EXHIBIT 25

**From the Birmingham Business Journal**
**:http://www.bizjournals.com/birmingham/stories/2001/07/02/story2.html**

# NFL Europe's injured flown to Birmingham

Jul 1, 2001, 11:00pm CDT

Gilbert Nicholson
Staff

When a player in the NFL Europe League gets seriously injured, he's carted out of the stadium to a jumbo jet for a flight back to the United States. To the Football Capital of the South, to be exact.

The player's destination is HealthSouth, the Birmingham-based national rehabilitation hospital and clinic chain, which has a contract with the spring football league.

"We're real proud we've been able to bring the medical liability of the league down from $2.7 million in 1996 to between $900,000 and $1 million," says HealthSouth's Mayfield Armstrong, head athletic trainer for NFL Europe.

Armstrong has been working with the sports organization since its inception in 1991, when it was first called the World League of American Football, a developmental league for the NFL.

HealthSouth personnel have worked with about 70 players this year from the six-team European league, which this weekend plays the season-ending championship game in Amsterdam, dubbed the World Bowl. Thirty rehabilitated players have rejoined their teammates in Europe this season.

"We're managing the care of 400 professional football players, all employees of the same company who we teach to line up and knock the other guy down so he won't get up. It's a workmen's comp nightmare," Armstrong quips.

Players whose injuries are expected to keep them off the field for more than two weeks typically make the trip to Birmingham.

"Europe has excellent fracture and trauma people, but they're still behind us as far as sports medicine is concerned," Armstrong says.

A player's flight to Birmingham involves more than a comfy seat and a beverage,

"We just don't put a guy on a gurney and fly him back home," Armstrong says. "We don't want to put him on a plane for nine hours with a swollen (knee) joint. We'll immobilize his leg to keep it straight."

**-1900-**

Given the cramped seating aboard airplanes, that can be a challenge.

"The airlines accommodate us well. We have to give them some notice, and with help from the skycaps, they'll usually move a guy to business class."

## Hurt on first play

One such player is Troy State grad Mareno Philyaw, 23, a receiver for the Barcelona Dragons who was allocated to Europe by the Atlanta Falcons.

"It was the first play of the first game of the season," Philyaw says, recalling that April 21 game against the Berlin Thunder. "I was on the kickoff return and a guy got hit and fell back in to my knee. I thought it may have just been a sprain."

An MRI, however, showed that Philyaw's ACL ligament was torn.

"It shook me up a little," he says. "I was a little bit disappointed. But I have to say that's part of the game."

A week later, Philyaw was in Birmingham for surgery and rehab.

Philyaw's toughest rehab exercise involves walking along a balance beam while snagging footballs tossed at him in rapid-fire fashion. Sound tough? It gets worse: A HealthSouth trainer is trying to pull him off with a rope attached to Philyaw's waist.

"Every now and then they'll get me off the beam," he says. "It's a good thing the beam is close to the ground."

Before being released, players undergo a rigorous exam that includes computerized testing. One exam, called the biodex test, measures leg strength in hundredths of percentage points.

"We (expect) the injured leg to be within 85 percent of the strength and agility of the well leg," Armstrong says.

Players are released only after getting the green light from Dr. Larry Lemak, a founding partner of Alabama Sports Medicine and Orthopedic Center who plays a key role with HealthSouth's NFL Europe efforts .

Two weeks ago Philyaw was sent to his home in Atlanta to continue rehabilitation at a HealthSouth facility there.

Armstrong, meanwhile, has just returned from Europe where he conducted exit physicals.

"If anyone is still hurting at the end of the season, they'll come to Birmingham for further treatment before they're allowed to go back to the NFL team that allocated them. Or, if they're a free agent and have no commitment, they're allowed to go home," he says.

"If you spend a little money on a plane ticket and have a good outcome where you can close the door on a complaint, it saves the NFL a lot in liability at the end" of the season," he says.

**-1901-**

Case 2:15-cv-02471-JEO Document 20-1 Filed 04/08/25 Page 1878 of 1878

Contact reporter Gilbert Nicholson at (205) 443-5632 or by e-mail at gnicholson@bizjournals.com.